## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ALEX DOE, Relator, | § § § | |
| | § | |
| THE STATES OF TEXAS, *ex rel.* ALEX DOE, Relator, | § § § | |
| | § | |
| THE STATE OF LOUISIANA, e*x rel.* ALEX DOE, Relator, | § § § | Civil Action No. 2-21-CV-022-Z |
| | § | |
| Plaintiffs, | § § | **CASE FILED UNDER SEAL** |
| v. | § § | |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., PLANNED PARENTHOOD GULF COAST, INC., PLANNED PARENTHOOD OF GREATER TEXAS, INC., PLANNED PARENTHOOD SOUTH TEXAS, INC., PLANNED PARENTHOOD CAMERON COUNTY, INC., PLANNED PARENTHOOD SAN ANTONIO, INC., | § § § § § § § § § § § § | |
| Defendants. | | |

## STATE OF TEXAS'S COMPLAINT IN INTERVENTION

TO THE HONORABLE JUDGE MATTHEW J. KACSMARYK:

The State of Texas, by and through the Attorney General of Texas, Ken

Paxton, ("the State") brings this law enforcement action pursuant to the Texas

Medicaid Fraud Prevention Act ("TMFPA"), Tex. Hum. Res. Code ch. 36. The State files this Complaint in Intervention under Federal Rule of Civil Procedure 24, and would respectfully show the Court as follows:

## I.     INTRODUCTION AND PROCEDURAL BACKGROUND

1.     This is a complaint in intervention and civil law enforcement action to recover taxpayer dollars paid to Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc., (collectively "Defendants" or "Planned Parenthood") that Planned Parenthood was not entitled to receive, and to assess civil remedies against Planned Parenthood under the TMFPA.  Specifically, Planned Parenthood received reimbursement from Texas Medicaid to which it was not entitled.  Planned Parenthood knowingly and improperly avoided its obligation to repay money owed to the Texas Medicaid program.

2.     Planned Parenthood owns and operates abortion facilities and health clinics in Texas with the purported purpose of providing medical services, delivering pharmaceuticals, providing counseling and educational services and materials for family planning and family planning preventative care, and providing medication and surgical abortions.  Planned Parenthood and its clinics are grantees of state and

federal funds provided through state programs and/or directly through federal programs, including the Medicaid program.

3.     From February 1, 2017, and continuing through March 2021, Planned Parenthood Defendants presented or caused to be presented thousands of claims for payment for Medicaid services, received approximately $10 million dollars in payments from state funds for these claims, and failed to repay the money they received from these claims after they knew or should have known that they were not entitled to keep the money.

4.     In October 2015, Texas Health and Human Services Commission Office of Inspector General (HHSC-OIG) initiated proceedings to terminate Planned Parenthood's Medicaid provider credentials.  In December 2016, HHSC-OIG served a final Notice of Termination on Planned Parenthood.  The Notice advised Planned Parenthood of its rights to administrative due process to contest the termination determination.   Planned Parenthood failed to exercise any of its rights to challenge the termination, and by mid-January 2017 all of Planned Parenthood's deadlines to request a hearing had expired.   The HHSC-OIG decision to terminate therefore became final under Texas law by end of January 2017. 1 Tex. Admin. Code § 371.1703(f)(2), (7).

5.     Rather than avail itself of its administrative remedies, Planned Parenthood brought suit in the United States District Court for the Western District of Texas against HHSC-OIG seeking, among other things, temporary, preliminary, and permanent injunctive relief enjoining the State from terminating or threatening to terminate Planned Parenthood's Medicaid provider agreements ("the federal court action").   *See Planned Parenthood of Greater Tex. Family Planning and Preventative Health Servs., Inc., et al. v. Traylor, et al.*, No. 1:15-cv-01058 (W.D. Tex. 2015).   In January 2016, the district court issued a preliminary injunction against Texas, enjoining the State from terminating Planned Parenthood's Medicaid provider agreements.   Texas appealed the district court's order, and in November 2020 the Fifth Circuit issued an *en banc* opinion reversing the district court and vacating the injunction.   In December 2020 the Fifth Circuit mandate issued, effectively ending the federal court action.

6.     On December 15, 2020, the same day the Fifth Circuit's mandate issued vacating the preliminary injunction, Planned Parenthood sent a letter to Texas Medicaid requesting an administrative appeal of Texas's December 2016 decision to terminate its enrollment as a provider.   Texas Medicaid denied Planned Parenthood's request as untimely.   Planned Parenthood also sent a letter to Texas Medicaid requesting a 90-day grace period to transition its patients to other

providers.  On January 4, 2021, HHSC granted a 30-day grace period, through February 3, 2021.

7.    On the last day of the grace period, February 3, 2021, Planned Parenthood filed a Motion for Temporary Restraining Order and a request for mandamus relief in Travis County District Court (the "State court action").  The State court issued a Temporary Restraining Order enjoining HHSC-OIG "from directly or indirectly terminating or otherwise interfering with Providers' participation in the Medicaid program."  The Temporary Restraining Order was subsequently extended twice.  On March 12, 2021, the State Court denied Planned Parenthood's Motion for Preliminary Injunction and dismissed its request for mandamus relief with prejudice.  *See* Exh. 1, final order in *In re Planned Parenthood*, cause no. D-1-GN-21-000528, in the 261st District Court of Travis County, Texas.  Planned Parenthood did not appeal the Order denying its Motion for Preliminary Injunction and dismissing its mandamus action.

8.    Planned Parenthood continued to submit requests for reimbursement by Texas Medicaid and continued to receive payments from Texas Medicaid during the pendency of the federal court action and the State court action, on and between February 1, 2017, and March 12, 2021, when Planned Parenthood knew or should

have known it was not a qualified Texas Medicaid provider by operation of Texas law.

9.     Planned Parenthood received reimbursements in the amount of approximately $10 million for services delivered on and between February 1, 2017, through March 12, 2021.  Planned Parenthood has not made any attempt to repay any of this money to Texas.

10.     On February 5, 2021, Alex Doe ("Relator") filed this lawsuit under seal in the United States District Court for the Northern District of Texas, alleging Planned Parenthood committed violations of the federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.* and the Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. §§ 46:437.1 *et seq.*, as well as the TMFPA.  Relator seeks remedies under all three statutes.  With this complaint in intervention, Texas intervenes only as to the TMFPA allegations discussed herein.

## II.     TEXAS MEDICAID STATUTORY FRAMEWORK

11.     Under the federal Medicaid Act, states use federal and state funds to reimburse healthcare providers' costs in providing medical care to certain categories of individuals.  *See NFIB v. Sebelius*, 567 U.S. 519, 575 (2012).  As a condition of participating in Medicaid, states must provide an administrative process for

providers to challenge their exclusion or termination from the Medicaid program. 42 C.F.R. §§ 1002.210, 1002.213.

12.     Accordingly, Section 32.034(a) of the Texas Human Resources Code requires "reasonable notice and an opportunity for hearing if one is requested" before a Medicaid contract is terminated.   *See also* 1 Tex. Admin. Code § 371.1703(e) (setting out the requirements for a termination notice).

13.     A provider may request an administrative hearing upon receipt of a final notice of termination.   *Id.* § 371.1615(b)(2).   But the provider does not have unlimited time to act—the request for a hearing must be received within 15 days after the provider received its final notice:

> A person may request an administrative hearing after receipt of a final notice of termination in accordance with § 371.1615 of this subchapter (relating to Appeals) unless the termination is required under 42 C.F.R. § 455.416. The OIG must receive the written request for a hearing no later than the 15 days after the date the person receives the notice.

*Id.* § 317.1703(f)(2).

14.     If the provider does not timely request an administrative hearing, the termination becomes "final and unappealable."   *Id.* § 371.1615(c).   Specifically, the termination becomes "final" 30 calendar days after service of the final notice if no request for appeal has been timely received.   *Id.* § 371.1617(a)(1); *see also id.* § 371.1703(g)(8) ("Unless otherwise provided in this section, the termination

becomes final as provided in § 371.1617(a) of this subchapter (relating to Finality and Collections.")).

15.     Accordingly, under Texas law, a Medicaid provider who receives a final notice that its contract will be terminated has 15 days from receipt of the Final Notice to request an administrative appeal.  Otherwise, the termination becomes final 30 days from receipt of the Final Notice. 1 Tex. Admin. Code § 371.1617(a)(1); *see also id.* § 371.1703(g)(8).

16.     A provider whose Medicaid credentials are terminated is no longer a "qualified" provider and is no longer eligible to seek or receive reimbursement from Medicaid. 1 Tex. Admin. Code § 371.1705(e)(5) ("If, after the effective date of an exclusion, an excluded person submits or causes to be submitted claims for services or items furnished within the period of exclusion, the person may be subject to civil monetary penalty liability").

17.     A provider who receives reimbursement from Texas Medicaid to which it is not entitled is obligated to remit the payments back to the State. *See* Exh. 2 (Provider Agreement), § 1.3.7; Exh. 3 (excerpts from Texas Medicaid Provider Procedures Manual), § 1.10, p. 54; *see also* 1 Tex. Admin. Code § 371.1703 (failure to repay overpayments to the Medicaid program is grounds for termination of

provider agreement); *id.* § 371.1655(4) (a provider who fails to repay an overpayment within 60 days is subject to administrative sanctions).

## III.   THE PARTIES

### A.   Plaintiffs

18.   The Plaintiffs are the State of Texas, by and through the Attorney General of Texas, Ken Paxton, ("the State") and relator Alex Doe (collectively, "Plaintiffs").  As intervenor on the TMFPA allegations, Texas is lead plaintiff as to the claims asserted under Texas law.  Tex. Hum. Res. Code § 36.107(a).  The United States and Louisiana have declined intervention; therefore, Relator stands in the shoes of the sovereigns as to federal law and Louisiana law.

### B.   Defendants

19.   Defendants Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc., are a system of affiliated entities operating as and collectively referred to herein as "Planned Parenthood" or "Defendants."  Planned Parenthood provides women's health services and abortion services at clinics in the State of Texas and the State of Louisiana, including Medicaid services that are the subject of this action.

20.     Defendant Planned Parenthood Federation of America, Inc. ("PPFA") is a New York corporation that has over 50 affiliate organizations that provide health care services and abortion services in every State, including the other Defendants in this case.  PPFA provides significant monetary support to these affiliates as well as other types of support and control, such as directives, marketing, communications, requirements, standards, policies, and accreditation for affiliates providing medical care, insurance coverage, legal counsel and representation, and direct support for the provision of healthcare services.

21.     PPFA maintains its executive and corporate administrative offices at 123 Williams Street, Tenth Floor, New York City, New York.

22.     Defendant Planned Parenthood Gulf Coast ("PPGC") maintains its executive and corporate administrative offices at 4600 Gulf Freeway, Houston, Texas, and provides medical services at multiple clinics,  including the following: (1) Fannin Clinic in Houston, Texas; (2) Greenbriar Clinic in Stafford, Texas; (3) 1960 Clinic in Houston, Texas; (4) Southwest Clinic in Houston, Texas;  (5) Greenspoint Clinic in Houston, Texas; (6) Dickinson Clinic in Dickinson, Texas; (7) Rosenberg Clinic in Rosenberg, Texas; (8) Prevention Park clinic; (9) Northwest clinic; (10) Spring clinic; (11) Northville clinic; (12) Southwest clinic; (13) Stafford clinic; (14)

Baton Rouge Clinic in Baton Rouge, Louisiana; and (15) New Orleans Clinic in New Orleans, Louisiana.

23.     Defendant Planned Parenthood of Greater Texas, Inc. ("PPGT") is a Texas corporation and an affiliate of PPFA that provides women's health services and abortion services at clinics in the State of Texas.   PPGT and its clinics are recipients of federal funds provided through Texas.

24.     PPGT maintains its executive and corporate administrative offices at 7424 Greenville Avenue, Dallas, Texas, and provides medical services at the following clinics: (1) Addison Health Center in Addison, Texas; (2) Arlington Health Center in Arlington, Texas; (3) Bedford Health Center in Bedford, Texas; (4) Cedar Hill Health Center in Cedar Hill, Texas; (5) North Dallas Shelburne Health Center in Dallas, Texas; (6) South Dallas Surgical Health Services Center in Dallas, Texas; (7) Lubbock Health Center in Lubbock, Texas; (8) Southeast Fort Worth Health Center in Fort Worth, Texas; (9) Southwest Fort Worth health Center in Fort Worth, Texas; (10) Southwest Fort Worth Surgical Health Services Center in Fort Worth, Texas; (11) Mesquite Health Center in Mesquite, Texas; and (12) Plano Health Center in Plano, Texas.

25.     Defendant Planned Parenthood of South Texas, Inc. is a Texas corporation and affiliate of PPFA that is a parent corporation of three other

corporations, Defendant Planned Parenthood of Cameron County, Defendant Planned Parenthood of San Antonio (hereinafter referred to collectively as "PPST"), and Planned Parenthood South Texas Surgical Center, which provides women's health services and abortion services at clinics in the State of Texas. PPST and its clinics are recipients of federal funds provided through Texas.

26.    PPST maintains its executive and corporate administrative offices at 2140 Babcock Road, San Antonio, Texas and provides medical services at the following clinics: Planned Parenthood-Harlingen in Harlingen, Texas; Planned Parenthood-Southeast in San Antonio, Texas; Planned Parenthood-San Pedro in San Antonio, Texas; Planned Parenthood-Northeast in San Antonio, Texas; Planned Parenthood-Marbach in San Antonio, Texas; Planned Parenthood-South Texas Medical Center in San Antonio, Texas; and Planned Parenthood-Brownsville in Brownsville, Texas.

## IV.    JURISDICTION AND VENUE

27.    This Court has jurisdiction over this action pursuant to Tex. Hum. Res. Code § 36.101 to recover civil remedies, and costs of suit, including reasonable attorneys' fees and expenses. This Court has supplemental jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367.

## V.   BACKGROUND

### A.   Texas Medicaid Program

28.    The state and federal governments fund health care for the poor and mentally ill through public health assistance programs. The Medical Assistance Program in Texas, commonly referred to as Texas Medicaid, was created to provide medical assistance for low-income individuals and families in Texas.  *See generally* Tex. Gov't Code ch. 531.

29.    The Texas Medicaid program is a system that provides medical products and services to qualified recipients.  The program is funded jointly by the State of Texas and the federal government.  The Texas Health and Human Services Commission ("HHSC") administers the Texas Medicaid program and has authority to promulgate rules and other methods of administration governing the program. *See, e.g.*, Tex. Gov't Code § 531.021.

### B.   Texas Medicaid Providers

30.    Healthcare providers such as pharmacies and physicians may elect to participate in the Texas Medicaid program.  To become a Texas Medicaid Provider, a healthcare provider must submit a Provider Enrollment Application and enter into a Medicaid Provider Agreement with HHSC ("Provider Agreement").  *See, e.g.*, Exh. 2.

31.     As a condition for participating in Texas Medicaid, a provider must represent to Texas Medicaid that they will comply with the requirements of the Texas Medicaid Provider Procedures Manual ("Provider Manual").  Providers must further acknowledge their duties to be familiar with the Provider Manual and to ensure that employees acting on behalf of the providers also comply with the requirements set forth in the Provider Manual.  *See, e.g.*, Exh. 3.

32.     Providers further agree under the Provider Agreement that they will comply with applicable state and federal laws governing and regulating Medicaid, and all state and federal laws and regulations related to waste, abuse, and fraud.

33.      When approving a healthcare provider to become a Texas Medicaid Provider, Texas Medicaid must rely upon the representations of the provider that he or she will comply with the terms and conditions of the Provider Agreement and the Provider Manual.  Accordingly, Texas Medicaid Providers have an on-going duty to Texas Medicaid to comply with these terms and conditions and comply with state and federal laws when providing medical services and treatment to Texas Medicaid patients.

## VI.    APPLICABLE TEXAS LAW

34.     Plaintiffs re-allege and reincorporate by reference as set forth herein the allegations contained in Paragraphs 1 through 33 of this Complaint.

35.     A person commits an unlawful act as defined under the Texas Medicaid

Fraud Prevention Act, if the person:

> Knowingly makes, uses, or causes the making or use of a false record or
> statement material to an obligation to pay or transmit money or property to
> this state under the Medicaid program, or knowingly conceals **or knowingly
> and improperly avoids** or decreases **an obligation to pay or transmit money**
> or property **to this state under the Medicaid program**.

Tex. Hum. Res. Code § 36.002(12) (emphasis added).

Hereinafter, references to conduct as constituting "unlawful acts" mean that the

conduct being described was done by Defendants at times when one or more of the

statutory provisions set forth in this Paragraph applied and was done in ways and

through means that satisfy all the required elements of at least one applicable

statutory provision.

## VII.   DEFENDANTS' UNLAWFUL ACTS UNDER TMFPA

36.     Plaintiffs re-allege and reincorporate by reference as set forth herein the

allegations contained in Paragraphs 1 through 35 of this Complaint.

37.     On March 12, 2021, the Hon. Lora J. Livingston of the 261st District

Court of Travis County, Texas issued a final order dismissing Planned Parenthood's

claims for injunctive and mandamus relief in the State court action.   *See* Exh. 1.

Planned Parenthood did not appeal Judge Livingston's decision. Therefore, as of

March 12, 2021, the question whether Planned Parenthood had any legal remedy to

appeal from the State's termination decision was resolved fully and finally as a matter of law.  Indeed, by operation of law, Planned Parenthood was effectively terminated from Texas Medicaid, at the latest, by February 1, 2017, by which date it had failed to exhaust its administrative remedies.  Consequently, Planned Parenthood was not entitled to retain reimbursements from Texas Medicaid for services delivered on or after February 1, 2017.  Planned Parenthood was obligated to repay to Texas Medicaid dollars that it received in reimbursements to which it was not entitled.  *See* 1 Tex. Admin. Code §§ 371.1655(4); 371.1703; 371.1705(e)(5); *see also* Exh. 2; Exh. 3.

38.    Planned Parenthood has received approximately $10 million in reimbursements from Texas Medicaid for services delivered after February 1, 2017, and before March 12, 2021.

39.    Under the TMFPA a person commits an unlawful act if the person "knowingly and improperly avoids an obligation to pay or transmit money . . . to [this] State under the Medicaid program."  Tex. Hum. Res. Code § 36.002(12).

40.    Planned Parenthood has not paid any of the $10 million back to Texas Medicaid.  Planned Parenthood was obligated to repay the overpayment within 60 calendar days of identifying it. 1 Tex. Admin. Code § 371.1655(4). Planned Parenthood identified, or should have identified, the overpayment on March 12,

2021, the date of Judge Livingston's final order.  Exh. 1.  Planned Parenthood should have repaid Texas Medicaid on or before May 12, 2021.  It has not done so. Accordingly, Planned Parenthood knowingly avoided its obligation to pay money to the State and has committed an unlawful act under the TMFPA.  *See* Tex. Hum. Res. Code § 36.002(12).

41.     Each day since May 12, 2021, that Planned Parenthood has avoided its obligation to repay the Texas Medicaid is a separate unlawful act under the TMFPA. Planned Parenthood's unlawful acts under section 36.002(12) began on May 12, 2021 and are continuing on each subsequent day until this obligation is satisfied. Each day Planned Parenthood fails to repay this money to Texas Medicaid, it incurs an additional civil penalty.  *See*, *e.g.*, *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223 (1975); *see also State v. City of Greenville*, 726 S.W.2d 162 (Tex. App.—Dallas 1986, writ ref'd n.r.e.).

## VIII.  CIVIL REMEDIES UNDER THE TMFPA

42.     Under the TMFPA, a defendant who commits an unlawful act is liable to the State of Texas for civil remedies for each unlawful act, in some instances, without regard to whether that violation resulted in "any loss to the Medicaid program."  *In re Xerox Corp.*, 555 S.W.3d 518, 533 (Tex. 2018) (citing Tex. Hum. Res. Code § 36.052(a)(1)).

43.     Defendants are liable to Texas for the amount paid by Texas Medicaid to Planned Parenthood directly or indirectly as a result of each unlawful act committed by Planned Parenthood.  Tex. Hum. Res. Code § 36.052(a)(1).

44.     Defendants are liable to Texas for interest on the amount paid by Texas Medicaid to Planned Parenthood directly or indirectly as a result of each unlawful act committed by Planned Parenthood.  Tex. Hum. Res. Code § 36.052(a)(2). Interest is due at the prejudgment interest rate from the date of the payment by Medicaid resulting from the unlawful act until the State recovers the amount of the payment from Defendants. *Id.*

45.     Defendants are liable to Texas for civil penalties for each unlawful act found by the trier of fact, in an amount not less than $5,500 per unlawful act and not more than $11,000 (or the maximum amount provided by 31 U.S.C. § 3729(a)) per unlawful act.  Tex. Hum. Res. Code § 36.052(a)(3)(B).

46.     Defendants are liable to Texas for two times the amount described in section 36.052(a)(1).  Tex. Hum. Res. Code § 36.052(a)(4).

## IX.   JURY DEMAND

47.     Plaintiffs respectfully request a trial by jury on all claims pursuant to Federal Rule of Civil Procedure 38.

# X.    PRAYER

48.    The State of Texas asks that judgment be entered upon trial of this case in favor of the State and Relator against Defendants to the maximum extent allowed by law.

49.    The State of Texas asks that it recover from Defendants under the TMFPA:

A.    the amount of any payment or the value of any monetary or in-kind benefit provided under the Medicaid program, directly or indirectly, as a result of the unlawful acts, including any payment made to a third party;

B.    two times the amount of the payment or the value of the benefit described above;

C.    civil penalties in an amount not less than $5,500 or more than $11,000 (or the maximum amount provided by 31 U.S.C. § 3729(a)) for each unlawful act committed by Defendants;

D.    interest on the amount of the payment or the value of the benefit described in subsection (A) above at the prejudgment interest rate in effect on the day the payment or benefit was received or paid, for the period from the date the benefit was received or paid to the date that the state recovers the amount of the payment or value of the benefit;

E.    expenses, costs, and attorneys' fees; and

F.    post-judgment interest at the legal rate.

50.    Plaintiffs seek monetary relief in excess of $1,000,000.

51.    The Relator asks that he be awarded:

A.    expenses, costs and attorneys' fees;

*Complaint in Intervention*                                                               19

B.   Relator's share as provided by the TMFPA; and

C.   Such other and further relief to which Relator may show himself entitled, either at law or in equity.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN E. COWLES**
Deputy Attorney General for Civil Litigation

*/s/ Raymond Charles Winter*
**RAYMOND CHARLES WINTER**
Chief, Civil Medicaid Fraud Division
Texas Bar No. 21791950

**AMY SNOW HILTON**
Assistant Attorney General
General Litigation Division
State Bar No. 24097834

**HALIE E. DANIELS**
Assistant Attorney General
General Litigation Division
State Bar No. 24100169

Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 / Fax (512) 320-0667
Raymond.Winter@oag.texas.gov
Amy.Hilton@oag.texas.gov
Halie.Daniels@oag.texas.gov

**ATTORNEYS FOR STATE OF TEXAS**

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2022 a true and correct copy of the foregoing document was served on the following persons via electronic mail:

Yolanda Y. Campbell
Trial Attorney
Civil Division, Fraud Section
U.S. Department of Justice
Yolanda.y.campbell@usdoj.gov

Scott Hogan
Civil Chief
United States Attorney's Office
Northern District of Texas
Scott.Hogan@usdoj.gov

Nicholas J. Diez
Assistant Attorney General
Medicaid Fraud Control Unit
Office of Attorney General Jeff Landry
Attorney General of Louisiana
DiezN@ag.louisiana.gov

Andrew B. Stephens
Heather Gebelin Hacker
Hacker Stephens, LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
Counsel for Relator
Andrew@HackerStephens.com
Heather@HackerStephens.com

*/s/ Raymond C. Winter*
**RAYMOND C. WINTER**
Chief, Civil Medicaid Fraud Division