# EXHIBIT 2

# HHSC Medicaid Provider Agreement

| Name of provider enrolling: |
|---|
| |

| **Medicaid TPI:** *(if applicable)* | **Medicare provider ID number:** *(if applicable)* |
|---|---|
| | |

**Physical address (where health care is rendered):** *Providers MUST enter the physical address where the services are rendered to clients. If the accounting, corporate, or mailing address is entered in this physical address field, the application may be denied.*

| Number | Street | Suite | City | State | ZIP |
|---|---|---|---|---|---|
| | | | | | |

**Accounting/billing address:** *(if applicable)*

| Number | Street | Suite | City | State | ZIP |
|---|---|---|---|---|---|
| | | | | | |

As a condition for participation as a provider under the Texas Medical Assistance Program (Medicaid), the Provider (Provider) agrees to comply with all terms and conditions of this Agreement.

## I.   ALL PROVIDERS

**1.1   Agreement and documents constituting Agreement.**

The current *Texas Medicaid Provider Procedures Manual* (Provider Manual) may be accessed via the internet at www.tmhp.com. Provider has a duty to become educated and knowledgeable with the contents and procedures contained in the Provider Manual. Provider agrees to comply with all of the requirements of the Provider Manual, as well as all state and federal laws governing or regulating Medicaid, and provider further acknowledges and agrees that the provider is responsible for ensuring that all employees and agents of the provider also comply. Provider agrees to acknowledge HHSC's provision of enrollment processes and authority to make enrollment decisions as found in Title 1, Part 15, Chapter 352 of the Texas Administrative Code. Provider is specifically responsible for ensuring that the provider and all employees and agents of the Provider comply with the requirements of Title 1, Part 15, Chapter 371 of the Texas Administrative Code, related to waste, abuse and fraud, and provider acknowledges and agrees that the provider and its principals will be held responsible for violations of this Agreement through any acts or omissions of the provider, its employees, and its agents. For purposes of this Agreement, a principal of the provider includes all owners with a direct or indirect ownership or control interest of five percent or more, all corporate officers and directors, all limited and non-limited partners, and all shareholders of a legal entity, including a professional corporation, professional association, or limited liability company. Principals of the provider further include managing employee(s) or agents who exercise operational or managerial control or who directly or indirectly manage the conduct of day-to-day operations.

**1.2   State and Federal regulatory requirements.**

1.2.1   By signing this Agreement, Provider certifies that the provider and its principals have not been excluded, suspended, debarred, revoked or any other synonymous action from participation in any program under Title XVIII (Medicare), Title XIX (Medicaid), or under the provisions of Executive Order 12549, relating to federal contracting. Provider further certifies that the provider and its principals have also not been excluded, suspended, debarred, revoked or any other synonymous action from participation in any other state or federal health-care program. Provider must notify the Health and Human Services Commission (HHSC) or its agent within 10 business days of the time it receives notice that any action is being taken against Provider or any person defined under the provisions of Section 1128(A) or (B) of the Social Security Act (42 USC §1320a-7), which could result in exclusion from the Medicaid program. Provider agrees to fully comply at all times with the requirements of 48 CFR, Ch. 3, relating to eligibility for federal contracts and grants.

1.2.2   Provider agrees to disclose information on ownership and control, information related to business transactions, and information on persons convicted of crimes in accordance with 42 CFR Part 455, Subpart B, and provide such information on request to the Texas Health and Human Services Commission (HHSC), Department of State Health Services (DSHS), Texas Attorney General's Medicaid Fraud Control Unit, and the United States Department of Health and Human Services. Provider agrees to keep its application for participation in the Medicaid program current at all times by informing HHSC or its agent in writing of any changes to the information contained in its application, including, but not limited to, changes in ownership or control, federal tax identification number, provider licensure, certification, or accreditation, phone number, or provider business addresses. Changes due to a change of ownership or control interest must be reported to HHSC or its designee within 30 days of the change. All other changes must be reported to HHSC or its designee within 90 days of the change.

Provider agrees to disclose all convictions of Provider or Provider's principals within ten business days of the date of conviction. For purposes of this disclosure, Provider must use the definition of "Convicted" contained in 42 CFR 1001.2, which includes all convictions, deferred adjudications, and all types of pretrial diversion programs. Send the information to the Texas Health and Human Services Commission's Office of Inspector General, P.O. Box 85211 – Mail Code 1361, Austin, Texas 78708. Fully explain the details, including the offense, the date, the state and county where the conviction occurred, and the cause number(s).

1.2.3   This Agreement is subject to all state and federal laws and regulations relating to fraud, abuse and waste in health care and the Medicaid program. As required by 42 CFR § 431.107, Provider agrees to create and maintain all records necessary to fully disclose the extent and medical necessity of services provided by the Provider to individuals in the Medicaid program and any information relating to payments claimed by the Provider for furnishing Medicaid services. On request, Provider also agrees to provide these records immediately and unconditionally to HHSC, HHSC's

agent, the Texas Attorney General's Medicaid Fraud Control Unit, the Texas Department of Family and Protective Services (DFPS), the Texas Department of State Health Services (DSHS) and the United States Department of Health and Human Services. The records must be retained in the form in which they are regularly kept by the Provider for a minimum of five years from the date of service (six years for freestanding rural health clinics and ten years for hospital based rural health clinics); or, until all investigations are resolved and closed, or audit exceptions are resolved; whichever period is longest. Provider must cooperate and assist HHSC and any state or federal agency charged with the duty of identifying, investigating, sanctioning, or prosecuting suspected fraud and abuse. Provider must also allow these agencies and their agents unconditional and unrestricted access to its records and premises as required by Title 1 TAC, §371.1667. Provider understands and agrees that payment for goods and services under this Agreement is conditioned on the existence of all records required to be maintained under the Medicaid program, including all records necessary to fully disclose the extent and medical necessity of services provided, and the correctness of the claim amount paid. If provider fails to create, maintain, or produce such records in full accordance with this Agreement, provider acknowledges, agrees, and understands that the public monies paid the provider for the services are subject to 100 percent recoupment, and that the provider is ineligible for payment for the services either under this Agreement or under any legal theory of equity.

1.2.4   The Texas Attorney General's Medicaid Fraud Control Unit, the Texas Health and Human Services Commission's Office of Inspector General, and internal and external auditors for the state and federal government may conduct interviews of Provider employees, agents, subcontractors, and their employees, witnesses, and clients without the Provider's representative or Provider's legal counsel present. Provider's employees, agents, subcontractors and their employees, witnesses, and clients must not be coerced by Provider or Provider's representative to accept representation from or by the Provider, and Provider agrees that no retaliation will occur to a person who denies the Provider's offer of representation. Nothing in this Agreement limits a person's right to counsel of his or her choice. Requests for interviews are to be complied with in the form and the manner requested. Provider will ensure by contract or other means that its agents, employees and subcontractors cooperate fully in any investigation conducted by the Texas Attorney General's Medicaid Fraud Control Unit or the Texas Health and Human Services Commission's Office of Inspector General or its designee. Subcontractors include those persons and entities that provide medical or dental goods or services for which the Provider bills the Medicaid program, and those who provide billing, administrative, or management services in connection with Medicaid-covered services.

1.2.5   <u>Nondiscrimination</u>. Provider must not exclude or deny aid, care, service, or other benefits available under Medicaid or in any other way discriminate against a person because of that person's race, color, national origin, gender, age, disability, political or religious affiliation or belief. Provider must provide services to Medicaid clients in the same manner, by the same methods, and at the same level and quality as provided to the general public. Provider agrees to grant Medicaid recipients all discounts and promotional offers provided to the general public. Provider agrees and understands that free services to the general public must not be billed to the Medicaid program for Medicaid recipients and discounted services to the general public must not be billed to Medicaid for a Medicaid recipient as a full price, but rather the Provider agrees to bill only the discounted amount that would be billed to the general public.

1.2.6   <u>AIDS and HIV</u>. Provider must comply with the provisions of Texas Health and Safety Code Chapter 85, and HHSC's rules relating to workplace and confidentiality guidelines regarding HIV and AIDS.

1.2.7   <u>Child Support</u>. (1) The Texas Family Code §231.006 requires HHSC to withhold contract payments from any entity or individual who is at least 30 days delinquent in court-ordered child support obligations. It is the Provider's responsibility to determine and verify that no owner, partner, or shareholder who has at least 25 percent ownership interest is delinquent in any child support obligation. (2) Under Section 231.006 of the Family Code, the vendor or applicant certifies that the individual or business entity named in the applicable contract, bid, or application is not ineligible to receive the specified grant, loan, or payment and acknowledges that this Agreement may be terminated and payment may be withheld if this certification is inaccurate. A child support obligor who is more than 30 days delinquent in paying child support or a business entity in which the obligor is a sole proprietor, partner, shareholder, or owner with an ownership interest of at least 25 percent is not eligible to receive the specified grant, loan, or payment. (3) If HHSC is informed and verifies that a child support obligor who is more than 30 days delinquent is a partner, shareholder, or owner with at least a 25 percent ownership interest, it will withhold any payments due under this Agreement until it has received satisfactory evidence that the obligation has been satisfied.

1.2.8   <u>Cost Report, Audit and Inspection</u>. Provider agrees to comply with all state and federal laws relating to the preparation and filing of cost reports, audit requirements, and inspection and monitoring of facilities, quality, utilization, and records.

**1.3   Claims and encounter data.**

1.3.1   Provider agrees to submit claims for payment in accordance with billing guidelines and procedures promulgated by HHSC, or other appropriate payer, including electronic claims. Provider certifies that information submitted regarding claims or encounter data will be true, accurate, and complete, and that the Provider's records and documents are both accessible and validate the services and the need for services billed and represented as provided. Further, Provider understands that any falsification or concealment of a material fact may be prosecuted under state and federal laws.

1.3.2   Provider must submit encounter data required by HHSC or any managed care organization to document services provided, even if the Provider is paid under a capitated fee arrangement by a Health Maintenance Organization or Insurance Payment Assistance.

1.3.3   All claims or encounters submitted by Provider must be for services actually rendered by Provider. Physician providers must submit claims for services rendered by another in accordance with HHSC rules regarding providers practicing under physician supervision. Claims must be submitted in the manner and in the form set forth in the Provider Manual, and within the time limits established by HHSC for submission of claims. Claims for payment or encounter data submitted by the provider to an HMO or IPA are governed by the Provider's contract with the HMO or IPA. Provider understands and agrees that HHSC is not liable or responsible for payment for any Medicaid-covered services provided under the HMO or IPA Provider contract, or any agreement other than this Medicaid Provider Agreement.

1.3.4   Federal and state law prohibits Provider from charging a client or any financially responsible relative or representative of the client for Medicaid-covered services, except where a co-payment is authorized under the Medicaid State Plan (42 CFR §447.20).

1.3.5  As a condition of eligibility for Medicaid benefits, a client assigns to HHSC all rights to recover from any third party or any other source of payment (42 CFR §433.145 and Human Resources Code §32.033). Except as provided by HHSC's third-party recovery rules (*Texas Administrative Code* Title 1 Part 15 Chapter 354 Subchapter J), Provider agrees to accept the amounts paid under Medicaid as payment in full for all covered services (42 CFR §447.15).

1.3.6  Provider has an affirmative duty to verify that claims and encounters submitted for payment are true and correct and are received by HHSC or its agent, and to implement an effective method to track submitted claims against payments made by HHSC or its agents.

1.3.7  Provider has an affirmative duty to verify that payments received are for actual services rendered and medically necessary. Provider must refund any overpayments, duplicate payments and erroneous payments that are paid to Provider by Medicaid or a third party as soon as any such payment is discovered or reasonably should have been known.

1.3.8  <u>TMHP EDI and Electronic Claims Submission</u>. Provider may subscribe to the TMHP Electronic Data Interchange (EDI) system, which allows the Provider the ability to electronically submit claims and claims appeals, verify client eligibility, and receive electronic claim status inquiries, remittance and status (R&S) reports, and transfer of funds into a provider account. Provider understands and acknowledges that independent registration is required to receive the electronic funds or electronic R&S report. Provider agrees to comply with the provisions of the Provider Manual and the TMHP EDI licensing agreement regarding the transmission and receipt of electronic claims and eligibility verification data. Provider must verify that all claims submitted to HHSC or its agent are received and accepted. Provider is responsible for tracking claims transmissions against claims payments and detecting and correcting all claims errors. If Provider contracts with third parties to provide claims and/or eligibility verification data from HHSC, the Provider remains responsible for verifying and validating all transactions and claims, and ensuring that the third party adheres to all client data confidentiality requirements.

1.3.9  <u>Reporting Waste, Abuse and Fraud</u>. Provider agrees to inform and train all of Provider's employees, agents, and independent contractors regarding their obligation to report waste, abuse, and fraud. Individuals with knowledge about suspected waste, abuse, or fraud in any State of Texas health and human services program must report the information to the Texas Health and Human Services Commission's Office of Inspector General. To report waste, abuse or fraud, go to **www.hhs.state.tx.us** and select "Reporting Waste, Abuse, or Fraud". Individuals may also call the Office of Inspector General hotline (1-800-436-6184) to report waste, abuse or fraud if they do not have access to the Internet.

## II.  ADVANCE DIRECTIVES – HOSPITAL AND HOME HEALTH PROVIDERS

2.1  The client must be informed of their right to refuse, withhold, or have medical treatment withdrawn under the following state and federal laws:

   (a)  The individual's right to self-determination in making health-care decisions;
   (b)  The individual's rights under the Natural Death Act (Health and Safety Code, Chapter 166) to execute an advance written Directive to Physicians, or to make a non-written directive regarding their right to withhold or withdraw life-sustaining procedures in the event of a terminal condition;
   (c)  The individual's rights under Health and Safety Code, Chapter 166, relating to written Out-of-Hospital Do-Not-Resuscitate Orders; and,
   (d)  The individual's rights to execute a Durable Power of Attorney for Health Care under the Probation Code, Chapter XII, regarding their right to appoint an agent to make medical treatment decisions on their behalf in the event of incapacity.

2.2  The Provider must have a policy regarding the implementation of the individual's rights and compliance with state and federal laws.

2.3  The Provider must document whether or not the individual has executed an advance directive and ensure that the document is in the individual's medical record.

2.4  The Provider cannot condition giving services or otherwise discriminate against an individual based on whether or not the client has or has not executed an advance directive.

2.5  The Provider must provide written information to all adult clients on the provider's policies concerning the client's rights.

2.6  The Provider must provide education for staff and the community regarding advance directives.

## III.  STATE FUND CERTIFICATION REQUIREMENT FOR PUBLIC ENTITY PROVIDERS

3.1  Public providers are those that are owned or operated by a state, county, city, or other local government agency or instrumentality. Public entity providers of the following services are required to certify to HHSC the amount of state matching funds expended for eligible services according to established HHSC procedures:

   (a)  School health and related services (SHARS)
   (b)  Case management for blind and visually impaired children (BVIC)
   (c)  Case management for early childhood intervention (ECI)
   (d)  Service coordination for intellectual and developmental disabilities (IDD)
   (e)  Service coordination for mental health (MH)
   (f)  Mental health rehabilitation (MHR)
   (g)  Tuberculosis clinics
   (h)  State hospitals

## IV.  CLIENT RIGHTS

4.1  Provider must maintain the client's state and federal right of privacy and confidentiality to the medical and personal information contained in Provider's records.

4.2  The client must have the right to choose providers unless that right has been restricted by HHSC or by waiver of this requirement from the Centers for Medicare and Medicaid Services (CMS). The client's acceptance of any service must be voluntary.

4.3  The client must have the right to choose any qualified provider of family planning services.

### V. THIRD PARTY BILLING VENDOR PROVISIONS

5.1 Provider agrees to submit notice of the initiation and termination of a contract with any person or entity for the purpose of billing Provider's claims, unless the person is submitting claims as an employee of the Provider and the Provider is completing an IRS Form W-2 on that person. This notice must be submitted within five working days of the initiation and termination of the contract and submitted in accordance with Medicaid requirements pertaining to Third Party Billing Vendors. Provider understands that any delay in the required submittal time or failure to submit may result in delayed payments to the Provider and recoupment from the Provider for any overpayments resulting from the Providers failure to provide timely notice.

5.2 Provider must have a written contract with any person or entity for the purpose of billing provider's claims, unless the person is submitting claims as an employee of the Provider and the Provider is completing an IRS Form W-2 on that person. The contract must be signed and dated by a Principal of the Provider and the Biller. It must also be retained in the Provider's and Biller's files according with the Medicaid records retention policy. The contract between the Provider and Biller may contain any provisions they deem necessary, but, at a minimum, must contain the following provisions:

  (a) Biller agrees they will not alter or add procedures, services, codes, or diagnoses to the billing information received from the Provider, when billing the Medicaid program.
  (b) Biller understands that they may be criminally convicted and subject to recoupment of overpayments and imposed penalties for submittal of false, fraudulent, or abusive billings.
  (c) Provider agrees to submit to Biller true and correct claim information that contains only those services, supplies, or equipment Provider has actually provided to recipients.
  (d) Provider understands that they may be criminally convicted and subject to recoupment of overpayments and imposed penalties for submittal of false, fraudulent, or abusive billings, directly or indirectly, to the Biller or to Medicaid or its contractor.
  (e) Provider and Biller agree to establish a reimbursement methodology to Biller that does not contain any type of incentive, directly or indirectly, for inappropriately inflating, in any way, claims billed to the Medicaid program.
  (f) Biller agrees to enroll and be approved by the Medicaid program as a Third Party Billing Vendor prior to submitting claims to the Medicaid program on behalf of the Provider.
  (g) Biller and Provider agree to notify the Medicaid program within five business days of the initiation and termination, by either party, of the contract between the Biller and the Provider.

### VI. TERM AND TERMINATION

6.1 If the correspondence/notice of enrollment from HHSC or its agent states a termination date, this Agreement terminates on that date with or without other advance notice of the termination date.

6.2 Provider may terminate this Agreement by providing at least 30 days written notice of intent to terminate.

6.3 HHSC has grounds for terminating this Agreement, including but not limited to, the circumstances listed below, and which may include the actions or circumstances involving the Provider or any person or entity with an affiliate relationship to the Provider:

  (a) the exclusion from participation in Medicare, Medicaid, or any other publically funded health-care program;
  (b) the loss or suspension of professional license or certification;
  (c) any failure to comply with the provisions of this Agreement or any applicable law, rule or policy of the Medicaid program;
  (d) any circumstances indicating that the health or safety of clients is or may be at risk;
  (e) the circumstances for termination listed in 42 C.F.R. § 455.416, as amended; and
  (f) the circumstances for termination listed in 1 T.A.C. §371.1703, as amended.

The Provider will receive written notice of termination, which will include the detailed reasons for the termination. The written notice of termination will also inform the Provider its due process rights.

6.4 HHSC may also cancel this Agreement for reasons, including but not limited to, the following:

  (a) upon further review of the Provider's application, at any time during the term of this Agreement, HHSC or its agent, determines Provider is ineligible to participate in the Medicaid program; and the errors or omission cannot be corrected;
  (b) if the Provider has not submitted a claim to the Medicaid program for at least 24 months; and
  (c) any other circumstances resulting in Provider's ineligibility to participate in the Medicaid program.

The Provider will receive written notification of the cancellation of the Agreement and any rights to appeal HHSC's determination will be included.

### VII. ELECTRONIC SIGNATURES

7.1 Provider understands and agrees that any signature on a submitted document certifies, to the best of the provider's knowledge, the information in the document is true, accurate, and complete. Submitted documents with electronic signatures may be accepted by mail or fax when the sender has met the national and state standards for electronic signatures set by the Health and Human Services and the Texas Uniform Electronic Transactions Act (UETA).

7.2 Provider understands and agrees that both the provider and the provider's representative whose signature is on an electronic signature method bear the responsibility for the authenticity of the information being certified to.

**VIII.   COMPLIANCE PROGRAM REQUIREMENT**

8.1   By signing section VIII, Provider certifies that in accordance with requirement TAC 352.5(b)(11), Provider has a compliance program containing the core elements as established by the Secretary of Health and Human Services referenced in §1866(j)(9) of the Social Security Act (42 U.S.C. §1395cc(j)(9)), as applicable.

I attest that I have a compliance plan.   ☐ Yes   ☐ No

**IX.   INTERNAL REVIEW REQUIREMENT**

9.1   Provider, in accordance with TAC 352.5 (b)(1), has conducted an internal review to confirm that neither the applicant or the re-enrolling provider, nor any of its employees, owners, managing partners, or contractors (as applicable), have been excluded from participation in a program under Title XVIII, XIX, or XXI of the Social Security Act.

I attest that an internal review was conducted to confirm that neither the applicant or the re-enrolling provider nor any of its employees, owners, managing partners, or contractors have been excluded from participation in a program under the Title XVIII, XIX, or XXI of the Social Security Act.   ☐ Yes   ☐ No

**X.   PRIVACY, SECURITY, AND BREACH NOTIFICATION**

10.1   "Confidential Information" means any communication or record (whether oral, written, electronically stored or transmitted, or in any other form) provided to or made available to the Provider electronically or through any other means that consists of or includes any or all of the following:

  (a)   Protected Health Information in any form including without limitation, Electronic Protected Health Information or Unsecured Protected Health Information (as defined in 45 CFR 160.103 and 45 CFR 164.402);
  (b)   Sensitive Personal Information (as defined in Texas Business and Commerce Code section 521.002);
  (c)   Federal Tax Information (as defined in IRS Publication 1075);
  (d)   Personally Identifiable Information (as defined in OMB Memorandum M-07-16);
  (e)   Social Security Administration data;
  (f)   All information designated as confidential under the constitution and laws of the State of Texas and of the United States, including the Texas Health & Safety Code and the Texas Public Information Act, Texas Government Code, Chapter 552.

10.2   Any Confidential Information received by the Provider under this Agreement may be disclosed only in accordance with applicable law. By signing this agreement, the Provider certifies that the Provider is, and intends to remain for the term of this agreement, in compliance with all applicable state and federal laws and regulations with respect to privacy, security, and breach notification, including without limitation the following:

  (a)   The relevant portions of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), 42 U.S.C. Chapter 7, Subchapter XI, Part C;
  (b)   42 CFR Part 2 and 45 CFR Parts 160 and 164;
  (c)   The relevant portions of The Social Security Act, 42 U.S.C. Chapter 7;
  (d)   The Privacy Act of 1974, as amended by the Computer Matching and Privacy Protection Act of 1988, 5 U.S.C. § 552a;
  (e)   Internal Revenue Code, Title 26 of the United States Code, including IRS Publication 1075;
  (f)   OMB Memorandum M-07-16;
  (g)   Texas Business and Commerce Code Chapter 521;
  (h)   Texas Health and Safety Code, Chapters 181 and 611;
  (i)   Texas Government Code, Chapter 552, as applicable; and
  (j)   Any other applicable law controlling the release of information created or obtained in the course of providing the services described in this Agreement.

10.3   The Provider further certifies that the Provider will comply with all amendments, regulations, and guidance relating to those laws, to the extent applicable.

10.4   Provider will ensure that any subcontractor of Provider who has access to HHSC Confidential Information will sign a HIPAA-compliant Business Associate Agreement with Provider and Provider will submit a copy of that Business Associate Agreement to HHSC upon request.

**XI   PROVIDER'S BREACH NOTICE, REPORTING AND CORRECTION REQUIREMENTS**

11.1   For purposes of this section:

Breach has the meaning of the term as defined in 45 C.F.R. §164.402, and as amended.

Discovery/Discovered has the meaning of the terms as defined in 45 C.F.R. §164.410, and as amended.

11.2   <u>Notification to HHSC</u>

  (a)   Provider will cooperate fully with HHSC in investigating, mitigating to the extent practicable and issuing notifications directed by HHSC, for any unauthorized disclosure or suspected disclosure of HHSC Confidential Information to the extent and in the manner determined by HHSC.
  (b)   Provider's obligation begins at discovery of unauthorized disclosure or suspected disclosure and continues as long as related activity continues, until all effects of the incident are mitigated to HHSC's satisfaction (the "incident response period").
  (c)   Provider will require that its employees, owners, managing partners, or contractors or subcontractors (as applicable), comply with all of the following breach notice requirements.

11.3 <u>Breach Notice</u>:

1. Initial Notice.

    (a) For federal information, including without limitation, Federal Tax Information, Social Security Administration Data, and Medicaid Member Information, within the first, consecutive clock hour of discovery, and for all other types of Confidential Information not more than 24 hours after discovery, *or in a timeframe otherwise approved by HHSC in writing*, initially report to HHSC's Privacy and Security Officers via email at: privacy@HHSCC.state.tx.us and to the HHSC division responsible for this UMCC;

    (b) Report all information reasonably available to Provider about the privacy or security incident; and

    (c) Name, and provide contact information to HHSC for, Provider's single point of contact who will communicate with HHSC both on and off business hours during the incident response period.

11.4 <u>48-Hour Formal Notice</u>.

No later than 48 consecutive clock hours after discovery, or a time within which discovery reasonably should have been made by Provider, provide formal notification to HHSC, including all reasonably available information about the incident or breach, and Provider's investigation, including without limitation and to the extent available:

(a) The date the incident or breach occurred;

(b) The date of Provider's and, if applicable, its employees, owners, managing partners, or contractors or subcontractors discovery;

(c) A brief description of the incident or breach; including how it occurred and who is responsible (or hypotheses, if not yet determined);

(d) A brief description of Provider's investigation and the status of the investigation;

(e) A description of the types and amount of Confidential Information involved;

(f) Identification of and number of all individuals reasonably believed to be affected, including first and last name of the individual and if applicable the, legally authorized representative, last known address, age, telephone number, and email address if it is a preferred contact method, to the extent known or can be reasonably determined by Provider at that time;

(g) Provider's initial risk assessment of the incident or breach demonstrating whether individual or other notices are required by applicable law or this DUA for HHSC approval, including an analysis of whether there is a low probability of compromise of the Confidential Information or whether any legal exceptions to notification apply;

(h) Provider's recommendation for HHSC's approval as to the steps individuals and/or Provider on behalf of Individuals, should take to protect the Individuals from potential harm, including without limitation Provider's provision of notifications, credit protection, claims monitoring, and any specific protections for a legally authorized representative to take on behalf of an Individual with special capacity or circumstances;

(i) The steps Provider has taken to mitigate the harm or potential harm caused (including without limitation the provision of sufficient resources to mitigate);

(j) The steps Provider has taken, or will take, to prevent or reduce the likelihood of recurrence;

(k) Identify, describe or estimate of the persons, workforce, subcontractor, or individuals and any law enforcement that may be involved in the incident or breach;

(l) A reasonable schedule for Provider to provide regular updates to the foregoing in the future for response to the incident or breach, but no less than every three (3) business days or as otherwise directed by HHSC, including information about risk estimations, reporting, notification, if any, mitigation, corrective action, root cause analysis and when such activities are expected to be completed; and

(m) Any reasonably available, pertinent information, documents or reports related to an incident or breach that HHSC requests following discovery.

11.5 <u>Investigation, Response and Mitigation</u>.

(a) Provider will immediately conduct a full and complete investigation, respond to the incident or breach, commit necessary and appropriate staff and resources to expeditiously respond, and report as required to and by HHSC for incident response purposes and for purposes of HHSC's compliance with report and notification requirements, to the satisfaction of HHSC.

(b) Provider will complete or participate in a risk assessment as directed by HHSC following an incident or breach, and provide the final assessment, corrective actions and mitigations to HHSC for review and approval.

(c) Provider will fully cooperate with HHSC to respond to inquiries and/or proceedings by state and federal authorities, persons and/or incident about the incident or breach.

(d) Provider will fully cooperate with HHSC's efforts to seek appropriate injunctive relief or otherwise prevent or curtail such incident or breach, or to recover or protect any HHSC Confidential including complying with reasonable corrective action or measures, as specified by HHSC in a Corrective Action Plan if directed by HHSC under the UCCM.

11.6. <u>Breach Notification to Individuals and Reporting to Authorities</u>.

(a) HHSC may direct Provider to provide breach notification to individuals, regulators or third-parties, as specified by HHSC following a breach.

(b) Provider must obtain HHSC's prior written approval of the time, manner and content of any notification to individuals, regulators or third-parties, or any notice required by other state or federal authorities. Notice letters will be in Provider's name and on Provider's letterhead, unless otherwise directed by HHSC, and will contain contact information, including the name and title of Provider's representative, an email address and a toll-free telephone number, for the Individual to obtain additional information.

(c) Provider will provide HHSC with copies of distributed and approved communications.

(d) Provider will have the burden of demonstrating to the satisfaction of HHSC that any notification required by HHSC was timely made. If there are delays outside of Provider's control, Provider will provide written documentation of the reasons for the delay.

(e) If HHSC delegates notice requirements to Provider, HHSC shall, in the time and manner reasonably requested by Provider, cooperate and assist with Provider's information requests in order to make such notifications and reports.

**XII  ACKNOWLEDGEMENTS AND CERTIFICATIONS**

12.1  By signing below, Provider acknowledges and certifies to all of the following:

   (a) Provider agrees to notify TMHP if the Provider files or is the subject of a bankruptcy petition. The Provider must provide TMHP and HHSC with notice of the bankruptcy no later than ten days after the case is filed. TMHP and HHSC also request notice of pleadings in the case.

   (b) Provider has carefully read and understands the requirements of this Agreement, and will comply.

   (c) Provider has carefully reviewed all of the information submitted in connection with its application to participate in the Medicaid program, including the provider information forms (PIF-1) and principal information form (PIF-2), and provider certifies that this information is current, complete, and correct.

   (d) Provider agrees to review and update any information in the application to maintain compliance with and eligibility in the Medicaid program and continued participation therein.

   (e) Provider agrees to inform HHSC or its designee in writing of any changes to the information contained in the application, whether such changes occur before or after enrollment. The written notification must be within 30 calendar days of any changes in the information due to a change in ownership or control interests, and within 90 days of all other changes to the information previously submitted.

   (f) Provider agrees and understands that HHSC or its agent may review Provider's application any time after the application has been accepted and for the term of this Agreement. Provider agrees and understands that upon review, HHSC or its designee may determine that the information contained therein does not meet the Medicaid program enrollment requirements and Provider may no longer be eligible to participate in the Program. Provider will have the opportunity to correct any errors or omissions as determined by HHSC or its agent. Provider agrees and understands that any errors or omissions that are not corrected or cannot be corrected will result in termination of this Agreement.

   (g) Provider understands that falsifying entries, concealment of a material fact, or pertinent omissions may constitute fraud and may be prosecuted under applicable federal and state law. Fraud is a felony, which can result in fines or imprisonment.

   (h) Provider understands and agrees that any falsification, omission, or misrepresentation in connection with the application for enrollment or with claims filed may result in all paid services declared as an overpayment and subject to recoupment, and may also result in other administrative sanctions that include payment hold, exclusion, debarment, termination of this Agreement, and monetary penalties.

   (i) Provider agrees to abide by all Medicaid regulations, program instructions, and Title XIX of the Social Security Act. The Medicaid laws, regulations, and program instructions are available through the Medicaid contractor. Provider understands that payment of a claim by Medicaid is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions (including, but not limited to, the Federal anti-kickback statute and the Stark law), and on the provider's compliance with all applicable conditions of participation in Medicaid.

Name of Applicant: _____

Applicant's Signature: _____  Date: _____

For applicants that are entities, facilities, groups, or organizations, and an authorized representative is completing this application with authority to sign on the applicant's behalf, the authorized representative must sign above and print their name and title where indicated below.

Representative's Name: _____

Representative's Position/Title: _____