**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| United States of America | § | |
| | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| | § | CIVIL ACTION NO. 2:21-CV- |
| | § | 00022-Z |
| The State of Texas | § | |
| | § | Date:      February 14, 2022 |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| | § | |
| The State of Louisiana | § | |
| | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| Planned Parenthood Federation of America, Inc., | § | |
| Planned Parenthood Gulf Coast, Inc., Planned | § | |
| Parenthood of Greater Texas, Inc., Planned | § | |
| Parenthood South Texas, Inc., Planned Parenthood | § | |
| Cameron County, Inc., Planned Parenthood San | § | |
| Antonio, Inc., | § | |
| | § | |
| Defendants. | § | |
| | § | |

**<u>MEMORANDUM IN SUPPORT OF DEFENDANTS' COMBINED
MOTION TO DISMISS RELATOR'S COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................1

BACKGROUND ............................................................................................................... 3

I.      The Medicaid Program ........................................................................................... 3

II.     Procedural History ................................................................................................. 4

III.    Relator's Allegations ............................................................................................. 7

ARGUMENT ..................................................................................................................... 8

I.      Legal Standards...................................................................................................... 8

II.     Relator's Federal FCA Claims (Counts I-II) Are Barred by the Public Disclosure
        Bar............................................................................................................................ 9

        A.      The Information Underlying Relator's FCA Claims Was Publicly
                Disclosed Prior to His Filing This Action............................................. 11

        B.      Relator Is Not an Original Source........................................................... 13

                1.      Relator Does Not Plead That He Disclosed FCA Violations to the
                        Federal Government Before the Public Disclosures............................... 14

                2.      Relator's Complaint Does Not Materially Add to the Public
                        Disclosures ......................................................................................... 15

III.    Relator's Federal FCA Claims (Counts I and II) Should Be Dismissed Under Rule
        12(b)(6) Because He Fails Plausibly to Plead the Elements of a FCA Violation............. 16

        A.      Relator Has Failed to Plausibly Plead a "Reverse False Claim" Based on
                Defendants' Termination From the State Medicaid Programs (Count II) ........... 16

                1.      Defendants Did Not Have an Obligation to Repay the States ................. 17

                2.      The Complaint Does Not Plausibly Allege that Defendants
                        Possessed the Requisite Scienter for Count II ......................................... 21

        B.      Relator Has Not Plausibly Pled a FCA Claim Under 31 U.S.C. §
                3729(a)(1)(A) for the Submission of a False Claim (Count I)............................. 23

i

       1.      The Court Should Dismiss Count I as to PPGT, PPST, PP Cameron County, and PP San Antonio Because Relator Does Not Allege That They Submitted or Caused to Be Submitted Any of the Allegedly False Claims ........................................................................ 23

       2.      The Court Should Dismiss Count I as to PPGC and PPFA Because Relator Fails to Plausibly Plead the Essential Elements of Falsity and Materiality ........................................................................................ 24

IV.    The Relator's Federal FCA Claims Should Be Dismissed Under Rule 9(b) .................... 29

     A.      Relator's Blanket Assertions Regarding Conduct by "Planned Parenthood" Are Insufficient Under Rule 9(b) ............................................................ 29

     B.      Relator's Allegations Against PPFA Do Not Satisfy Rule 9(b) ........................... 31

     C.      Relator Fails to Plead the Presentment of a False Claim With Particularity ........ 32

V.     Relator's State Law Claims (Counts III, IV, and V) Should Also Be Dismissed............ 34

VI.    Relator's Federal Conspiracy to Commit Health Care Fraud Claim (Count V) Should Be Dismissed ........................................................................................................ 35

CONCLUSION .................................................................................................................................. 35

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Alford v. Chevron U.S.A. Inc.*,
   13 F. Supp. 3d 581 (E.D. La. 2014) ...................................................................................... 30

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................................. 8

*Balawajder v. Jacobs*,
   220 F.3d 586 (5th Cir. 2000) ................................................................................................. 35

*Cicalese v. Univ. of Tex. Med. Branch*,
   456 F. Supp. 3d 859 (S.D. Tex. 2020) .................................................................................... 9

*Cox v. Richards*,
   761 F. App'x 244 (5th Cir. 2019) ............................................................................................ 5

*Crosby v. Nat'l Foreign Trade Council*,
   530 U.S. 363 (2000) ............................................................................................................... 15

*Enochs v. Lampasas Cnty.,*
   641 F.3d 155 (5th Cir. 2011) ................................................................................................. 35

*Funk v. Stryker*,
   631 F.3d 777 (5th Cir. 2011) ................................................................................................... 7

*Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*,
   559 U.S. 280 (2010) .................................................................................................................. 9

*Gray v. Beverly Enters. Miss., Inc.*,
   390 F.3d 400 (5th Cir. 2004) ................................................................................................... 5

*Gregory v. Houston Ind. Sch. Dist.*,
   No. 14-cv-2768, 2016 WL 5661701 (S.D. Tex. Sept. 30, 2016) ........................................... 29

*Hope Med. Grp. for Women v. Edwards*,
   63 F.3d 418 (5th Cir. 1995) ................................................................................................... 26

*Little v. Shell Expl. & Prod. Co.*,
   690 F.3d 282 (5th Cir. 2012) ................................................................................................. 11

*Luna v. Am. Nat'l Ins. Co.*,
   No. 21-cv-64, 2021 WL 1911339 (W.D. Tex. May 12, 2021) .................................................. 7

i

*Pharm. Rsch. & Mfrs. of Am. v. Walsh*,
    538 U.S. 644 (2003) ................................................................................................ 3

*Planned Parenthood Gulf Coast, Inc. v. Gee*,
    862 F.3d 445 (5th Cir. 2017) ................................................................................. 5

*Planned Parenthood Gulf Coast, Inc. v. Kliebert*,
    141 F. Supp. 3d 604 (M.D. La. Oct. 18, 2015) ............................................. 5, 18, 19

*Planned Parenthood of Greater Texas v. Kauffman*,
    981 F.3d 347 (5th Cir. 2020) ................................................................................. 7

*Planned Parenthood of Greater Texas v. Smith*,
    913 F.3d 551 (5th Cir. 2019) ................................................................................. 6

*Planned Parenthood of Greater Texas v. Smith*,
    236 F. Supp. 3d 974 (W.D. Tex. 2017) ...................................................... 6, 18, 19

*Safeco Ins. Co. of Am. v. Burr*,
    551 U.S. 47 (2007) .............................................................................................. 22

*Sheppard v. Liberty Mut. Ins. Co.*,
    No. CV 16-2401, 2016 WL 6807400 (E.D. La. Nov. 17, 2016) ............................ 30

*Southland Sec. Corp. v. Inspire Ins. Sols., Inc.*,
    365 F.3d 353 (5th Cir. 2004) ............................................................................... 29

*Tuchman v. DSC Commc'ns Corp.*,
    14 F.3d 1061 (5th Cir. 1994) ............................................................................... 33

*U.S. ex rel. Alcohol Found., Inc. v. Kalmanovitz Charitable Found., Inc.*,
    186 F. Supp. 2d 458 (S.D.N.Y. 2002) ................................................................. 13

*U.S. ex rel. Bennett v. Medtronic, Inc.*,
    747 F. Supp. 2d 745 (S.D. Tex. 2010) ...................................................... 24, 25, 26

*U.S. ex rel. Bonin v. Cmty. Care Ctr. of St. Martinville, LLC*,
    No. 05-cv-1005, 2008 WL 2113055 (W.D. La. May 16, 2008) ............................ 34

*U.S. ex rel. Berg v. Honeywell Int'l, Inc.*,
    740 F. App'x 535 (9th Cir. 2018) ......................................................................... 28

*U.S. ex rel. Carmel v. CVS Caremark Corp.*,
    Nos. 13-cv-5930, 2015 WL 3962532 (N.D. Ill. June 26, 2015) ........................... 12

*U.S. ex rel. Colquitt v. Abbott Lab'ys*,
    858 F.3d 365 (5th Cir. 2017) ............................................................................... 13

*U.S. ex rel. Folliard v. Comstor Corp.*,
  308 F. Supp. 3d 56 (D.D.C. 2018) ................................................................. 33

*U.S. ex rel. Graves v. ITT Educ. Servs., Inc.*,
  284 F. Supp. 2d 487 (S.D. Tex. 2003) ............................................................. 9

*U.S. ex rel. Grubbs v. Kanneganti*,
  565 F. 3d 180 (5th Cir. 2009) ............................................................... *passim*

*U.S. ex rel. Harman v. Trinity Indus. Inc.*,
  872 F.3d 645 (5th Cir. 2017) .................................................................. 27, 28

*U.S. ex rel. Haight v. RRSA (Commercial Div.), LLC*,
  No. 16-cv-1975, 2020 WL 6163139 (N.D. Tex. Oct. 20, 2020) ........................... 32

*U.S. ex rel. Hawkins v. ManTech Int'l Corp.*,
  No. 15-cv-2105, 2020 WL 435490 (D.D.C. Jan. 28, 2020) ................................. 26

*U.S. ex rel. Hebert v. Dizney*,
  295 F. App'x 717 (5th Cir. 2008) ................................................................. 29

*U.S. ex rel. Hendrickson v. Bank of America, N.A.*,
  343 F.Supp.3d 610 (N.D. Tex. 2018) ............................................................ 29

*U.S. ex rel. Ibanez v. Bristol-Myers Squibb Co.*,
  874 F.3d 905 (6th Cir. 2017) .................................................................. 17, 21

*U.S. ex rel. Jamison v. McKesson Corp.*,
  649 F.3d 322 (5th Cir. 2011) ...................................................................... 10

*U.S. ex rel. King v. Solvay Pharms., Inc.*,
  871 F.3d 318 (5th Cir. 2017) ...................................................................... 14

*U.S. ex rel. Lockey v. City of Dallas*,
  576 F. App'x 431 (5th Cir. 2014) ................................................................. 16

*U.S. ex rel. Longhi v. Lithium Power Techs., Inc.*,
  513 F. Supp. 2d 866 (S.D. Tex. 2007) ........................................................... 20

*U.S. ex rel. Longhi v. Lithium Power Techs., Inc.*,
  575 F.3d 458 (5th Cir. 2009)…………………………………………………… 23

*U.S. ex rel. Monsour v. Performance Accts. Receivable, LLC*,
  No. 16-cv-38, 2018 WL 4682343 (S.D. Miss. Sept. 28, 2018) ........................... 15

*U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*,
  812 F.3d 294 (3d Cir. 2016) ...................................................................... 15

iii

*U.S. ex rel. Mosler v. City of Los Angeles*,
    414 F. App'x 10 (9th Cir. 2010) ................................................................. 16

*U.S. ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*,
    519 F. App'x 890 (5th Cir. 2013) ...................................................... 26, 33

*U.S. ex rel. Osheroff v. Humana, Inc.*,
    776 F.3d 805 (11th Cir. 2015) ................................................................. 12

*U.S. ex rel. Park v. Legacy Heart Care, LLC*,
    No. 16-cv-803, 2018 WL 5313884 (N.D. Tex. Oct. 26, 2018) ............... 30

*U.S. ex rel. Petratos v. Genentech, Inc.*,
    855 F.3d 481 (3d Cir. 2017) ............................................................ 27, 28

*U.S. ex rel. Porter v. Magnolia Health Plan, Inc.*,
    810 F. App'x 237 (5th Cir. 2020) ...................................................... 9, 27

*U.S. ex rel. Poteet v. Bahler Med., Inc.*,
    619 F.3d 104 (1st Cir. 2010) ................................................................. 16

*U.S. ex rel. Purcell v. MWI Corp.*,
    807 F.3d 281 (D.C. Cir. 2015) ............................................................... 22

*U.S. ex rel. Reagan v. E. Texas Med. Ctr. Reg'l Healthcare Sys.*,
    274 F. Supp. 2d 824 (S.D. Tex. 2003) .................................................... 14

*U.S. ex rel. Rose v. Stephens Ins.*,
    909 F.3d 1012 (9th Cir. 2018) ............................................................... 25

*U.S. ex rel. Schutte v. Supervalu, Inc.*,
    9 F.4th 455 (7th Cir. 2021) .................................................................... 22

*U.S. ex rel. Schweizer v. Canon, Inc.*,
    9 F.4th 269 (5th Cir. 2021) ............................................................ 10, 11

*U.S. ex rel. Sheldon v. Allergan Sales, LLC*,
    -- F.4th --, 2022 WL 211172 (4th Cir. Jan. 25, 2022) .......................... 22

*U.S. ex rel. Smith v. Wallace*,
    723 F. App'x 254 (5th Cir. 2018) .................................................... 25, 26

*U.S. ex rel. Sonnier v. Standard Fire Ins. Co.*,
    84 F. Supp. 3d 575 (S.D. Tex. 2015) ...................................................... 16

*U.S. ex rel. Steury v. Cardinal Health, Inc.*,
    625 F.3d 262 (5th Cir. 2010) ................................................................. 26

iv

*U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
  125 F.3d 899 (5th Cir. 1997) ........................................................................ 31

*U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*,
  336 F.3d 375 (5th Cir. 2003) .......................................................................... 9

*U.S. ex rel. Vermont Nat'l Tel. Co. v. Northstar Wireless LLC*,
  531 F. Supp. 3d 247 (D.D.C. 2021) ............................................................... 35

*United States v. BNP Paribas SA*,
  884 F. Supp. 2d 589 (S.D. Tex. 2012) ........................................................... 30

*United States v. Dental Health Programs, Inc.*,
  No. 18-cv-463, 2020 WL 3064712 (N.D. Tex. Jun. 8, 2020) ......................... 30

*United States v. Dental Health Programs, Inc.*,
  No. 18-cv-463, 2021 WL 3213709 (N.D. Tex. July 29, 2021) ....................... 34

*United States. v. HCA Health Servs. of Oklahoma, Inc.*,
  No. 09-cv-0992, 2011 WL 4590791 (N.D. Tex. Sept. 30, 2011) .................... 16

*United States v. Lakeway Reg'l Med. Ctr.*,
  No 19-cv-945, 2020 WL 6146571 (W.D. Tex. Feb. 13, 2020) ....................... 30

*United States v. McNinch*,
  356 U.S. 595 (1958) ...................................................................................... 27

*United States v. Tech Refrigeration*,
  143 F. Supp. 2d 1006 (N.D. Ill. 2001) ........................................................... 15

*United States v. Sanford-Brown, Ltd.*,
  840 F.3d 445 (7th Cir. 2016) ......................................................................... 25

*United States v. Southland Mgmt. Corp.*,
  326 F.3d 669 (5th Cir. 2003) ......................................................................... 21

*United States v. Wells Fargo Bank, N.A.*,
  972 F. Supp. 2d 593 (S.D.N.Y. 2013) ............................................................ 15

*Universal Health Servs., Inc. v. U.S. ex rel. Escobar*,
  579 U.S. 176 (2016) ................................................................................. *passim*

*Wenner v. Tex. Lottery Comm'n*,
  123 F.3d 321 (5th Cir. 1997) ................................................................... 19, 20

*Wercinski v. Int'l Bus. Machs. Corp.*,
  982 F. Supp. 449 (S.D. Tex. 1997) .................................................................. 9

*Williams v. WMX Technologies., Inc.,*
  112 F.3d 175 (5th Cir.1997) ............................................................... 34

## **Statutes**

31 U.S.C. § 3729 ................................................................................. *passim*

31 U.S.C. § 3730 ............................................................................. 10, 12, 15

42 U.S.C. § 289g-1 ................................................................................... 32

42 U.S.C. § 1396 ....................................................................................... 18

La. Stat. Ann. § 46:437.11 .................................................................... 4, 18

La. Stat. Ann. § 46:437.14 ......................................................................... 4

La. Stat. Ann. § 46:439.1 ............................................................... 10, 12, 13

Tex. Hum. Res. Code Ann. § 36.107 ........................................................ 34

Tex. Hum. Res. Code Ann. § 36.113 .................................................. *passim*

## **Regulations and Rules**

1 Tex. Admin. Code Ann. § 371.1703 ................................................... 4, 18

1 Tex. Admin. Code Ann. § 371.1707 ........................................................ 4

1 Tex. Admin. Code Ann. § 371.1711 ...................................................... 28

1 Tex. Admin. Code Ann. § 371.1715 ...................................................... 35

42 C.F.R. § 423.752 ................................................................................. 27

42 C.F.R. § 455.23(a) ............................................................................... 28

50 La. Admin. Code Ann. § 4161 ............................................................. 28

5th Cir. R. 41.3 ........................................................................................... 6

Fed. R. Civ. P. 9(b) .......................................................................... *passim*

Fed. R. Civ. P. 12(b)(1) .............................................................................. 1

Fed. R. Civ. P. 12(b)(6) ..................................................................... *passim*

## Other Authorities

Compl., *Planned Parenthood of Greater Texas v. Traylor*,
No. 1:15-cv-1058 (W.D. Tex. Nov. 23, 2015) [Dkt. 1] .................................................. 5

Daniel Conrad, *Fifth Circuit Rules Texas Can Exclude Planned Parenthood From
Medicaid Program,* Courthouse News Service (Nov. 23, 2020) ............................... 13

David Mack, *Texas Cuts Medicaid Funding to Planned Parenthood Over
Undercover Videos*, BuzzFeed News (Oct. 19, 2015) ............................................... 13

First Am. Compl., *Planned Parenthood Gulf Coast, Inc. v. Kliebert*,
No. 3:15-cv-565 (M.D. La. Oct. 7, 2015) [Dkt. 43] ................................................. 7

Kevin Litten, *DHH to File New Medicaid Termination Notice
With Planned Parenthood*, The Times Picayune (Sep. 11, 2015) ............................ 13

Lana Shadwick, *Planned Parenthood 'Violated Law,' Says Texas*,
Breitbart (Dec. 21, 2016) ....................................................................................... 13

Order, *Planned Parenthood Gulf Coast, Inc. v. Kliebert*,
No. 3:15-cv-565 (M.D. La. Oct. 18, 2015) [Dkt. 55] .............................................. 5

Order, *Planned Parenthood Gulf Coast, Inc. v. Kliebert*,
No. 3:15-cv-565 (M.D. La. May 17, 2019) [Dkt. 114] ............................................. 5

Order, *Planned Parenthood Gulf Coast, Inc. v. Kliebert*,
No. 3:15-cv-565 (M.D. La. Apr. 7, 2021) [Dkt. 121] .............................................. 7

Staff of Select Investigative Panel of the Energy & Com. Comm.,
116th Cong., Final Rep. (Dec. 30, 2016) ................................................................ 12

Pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6), Defendants Planned Parenthood Gulf Coast, Inc. ("PPGC"), Planned Parenthood of Greater Texas, Inc. ("PPGT"), Planned Parenthood South Texas, Inc. ("PPST"), Planned Parenthood Cameron County, Inc. ("PP Cameron County"), Planned Parenthood San Antonio, Inc. ("PP San Antonio") (collectively, "Affiliate Defendants"), and Planned Parenthood Federation of America, Inc. ("PPFA") (all collectively, "Defendants") submit this memorandum in support of their combined motion to dismiss Relator's Complaint [Dkt. 2] ("Relator Compl.").

## INTRODUCTION

Despite the parties' long and very public history, this case is not about abortion or reproductive law more broadly.  Instead, it is about whether a private plaintiff relator may bring a fraud claim against a medical provider under the False Claims Act ("FCA") for providing and billing for services under a federal healthcare program in which it lawfully participated at the time of the billings.  Relator Alex Doe brings this FCA action seeking to circumvent a series of injunctions entered by federal courts in Texas and Louisiana and a Texas state court, and now asks this Court to retroactively declare that conduct expressly allowed by those prior orders was actually unlawful and fraudulent.  Relator also seeks to extract a *qui tam* bounty based on allegations that were disclosed publicly years before he filed this action and to impose penalties the government itself declined to pursue.  Whatever the merit of Relator's disagreements with Defendants, a FCA action is not the proper vehicle to pursue them.  For the reasons discussed below, Relator's claims fail under established law and the Court should dismiss Relator's Complaint in its entirety.

***First***, Relator's FCA claims are barred by the statutory public disclosure bar.  His allegations are substantially similar to – indeed, they have been entirely lifted from – information that was publicly disclosed as early as 2015.  Relator's Complaint relies heavily on his "undercover investigation," congressional reports and testimony, and state administrative proceedings – the

1

substance and details of which all were publicly disclosed (by Relator himself as a "journalist," congressional reports, the news media, and litigation).  The FCA's public disclosure bar and its state counterparts prohibit *qui tam* actions based on publicly disclosed information.  Relator cannot avoid the bar as an "original source" because (1) he does not plead that he disclosed FCA violations (as opposed to alleged violations of fetal tissue donation laws) to the government before the public disclosures and (2) his Complaint does not "materially add" to the public disclosures.

*Second*, Relator's Complaint should be dismissed under Rule 12(b)(6) because he fails to plausibly allege the essential elements of a FCA violation.  Relator's principal theory is that Affiliate Defendants violated the "reverse false claims" provision of the FCA by failing to repay Medicaid for amounts they received after their termination from the Texas and Louisiana Medicaid programs became "final" by operation of state law.  Relator ignores, however, that federal and state courts enjoined the terminations.  Those court orders expressly permitted Affiliate Defendants to continue providing and billing for Medicaid services at the time the services were provided and billed.  And even after the injunctions were vacated, Texas Medicaid delayed Affiliate Defendants' termination so they could transition patients to other providers.  Relator's reverse FCA theory fails as a matter of law because Defendants had no "obligation" to repay monies to which they were entitled under state and federal law.  *See* 31 U.S.C. § 3729(a)(G) (2009).

Relator's other FCA theory – that Affiliate Defendants falsely certified their compliance with unspecified federal and state laws even before the termination – also fails because Relator does not plausibly allege the FCA elements of falsity and materiality.  "The [FCA] is not 'an all-purpose antifraud statute.'"  *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 194 (2016) (citing *Allison Engine Co. v. U.S. ex rel. Sanders*, 553 U.S. 662, 672 (2008)).  It attaches liability to the submission of a false claim for payment if the falsehood is material to the

government's payment decision.  Relator, however, fails to allege that Defendants' *claims* were false, and his allegations make clear that Defendants' alleged fraud was not material to payment because the government never sought to recoup any funds paid to Defendants.

*Third*, Relator fails to plead fraud with the particularity required by Rule 9(b) in several important respects.  Relator makes vague and generalized allegations related to "Planned Parenthood," without specifically attributing *any* wrongful conduct to four of the six named defendants.  He also fails to allege how PPFA, which never submitted a bill to Medicaid, is liable for the alleged conduct of its affiliates.  Further, Relator fails to allege reliable indicia that Defendants submitted false claims for payment to Medicaid.

*Fourth*, Relator's Texas and Louisiana state law claims fail for many of the same reasons as his federal FCA claims.  Relator's Texas-specific claim should also be dismissed because Texas has intervened and Texas's "government action bar" bars Relator's claim.  In the event any state law claims remain after the dismissal of Relator's federal claims, the Court should decline to exercise supplemental jurisdiction over them.

For these reasons, the Court should dismiss Relator's Complaint in its entirety.

## BACKGROUND

### I.    The Medicaid Program

The Medicaid program "authorizes federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons."  *Pharm. Rsch. & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 650 (2003).  In Texas, health care providers may service Medicaid patients after executing a Medicaid Provider Agreement, which states that a provider must agree to comply with the Texas Medicaid program's requirements, as set out in Texas's Provider Manual and "state and federal laws governing or regulating Medicaid."  Relator Compl. ¶¶ 37, 39; Ex. 2, Intervenor Complaint of the State of Texas (Jan. 6, 2022) [Dkt. 22] ("Texas Compl.").  Louisiana similarly

requires healthcare providers to enter into a Medicaid Provider Agreement that requires providers to comply with all applicable federal and state laws and all rules, policies, and procedures of the Louisiana Medicaid program. *See* La. Stat. Ann. §§ 46:437.11–12 (1997). Affiliate Defendants executed Provider Agreements with Texas and Louisiana to provide healthcare services to Medicaid patients throughout those States. Relator Compl. ¶¶ 40, 46.

Texas may terminate a Medicaid Provider agreement when it determines "prima facie evidence" exists that a provider committed a "program violation" or is "affiliated with a person who commits a program violation." 1 Tex. Admin. Code Ann. § 371.1707(a)(1)–(2). A provider's "agreement or contract is nullified on the *effective date* of the termination." *Id.* § 371.1703(g)(1) (emphasis added). "*Once a person's agreement or contract is terminated* . . . , no items or services . . . are reimbursed by the Medicaid . . . program during the period of termination . . . ." *Id.* § 371.1703(g)(2) (emphasis added). "If, *after the effective date* of the termination . . . , [that provider] submits or causes to be submitted claims for services or items furnished within the period of termination," Texas may pursue recoupment of those monies. *Id.* § 371.1703(g)(5) (emphasis added). Louisiana law similarly permits that state to revoke a provider's enrollment if the provider is the subject of a sanction for violating federal or state laws related to the Medicaid program, is the subject of a criminal, civil, or department proceeding, or fails to meet a condition of enrollment. La. Stat. Ann. §§ 46:437.11(D)(2), 46:437.14(A)(9), (12). "Unless the provider agreement is terminated . . . , [the] agreement shall be effective . . . ." *Id.* § 46:437.11(D)(1). And Louisiana is required to reimburse compliant providers for covered services while their provider agreements remain in effect. *Id.* § 46:437.11(A).

## II.   Procedural History

On September 15, 2015 and October 15, 2015, Louisiana and Texas, respectively, initiated proceedings to terminate Affiliate Defendants from those States' Medicaid programs. Relator

Compl. ¶ 82 & Ex. A; *id.* ¶ 84 & Ex. B.  Affiliate Defendants and Medicaid patients promptly filed suit in federal court seeking to enjoin Affiliate Defendants' termination from the state Medicaid programs.  *See* First Am. Compl., *Planned Parenthood Gulf Coast, Inc. v. Kliebert*, No. 3:15-cv-565 (M.D. La. Oct. 7, 2015) [Dkt. 43]; Compl., *Planned Parenthood of Greater Texas v. Traylor*, No. 1:15-CV-01058 (W.D. Tex. Nov. 23, 2015) [Dkt. 1].[1]

On October 18, 2015, the Middle District of Louisiana entered a temporary restraining order ("TRO"), prohibiting Louisiana from terminating PPGC's Medicaid Provider Agreement for fourteen days.  *Planned Parenthood Gulf Coast, Inc. v. Kliebert*, No. 3:15-cv-565, 2015 WL 6122984 (M.D. La. Oct. 18, 2015) [Dkt. 55].  On October 29, 2015, the court then entered a preliminary injunction, prohibiting Louisiana from terminating PPGC from Medicaid.  *Planned Parenthood Gulf Coast, Inc. v. Kliebert*, 141 F. Supp. 3d 604, 653 (M.D. La.) [Dkt. 64].  The Fifth Circuit affirmed this decision in June 2017.  *Planned Parenthood Gulf Coast, Inc. v. Gee*, 862 F.3d 445 (5th Cir. 2017), *en banc r'hg denied*.  On remand, the district court stayed the proceedings pending the disposition of the related Texas litigation discussed below.  Order, *Planned Parenthood Gulf Coast, Inc. v. Kliebert*, 3:15-cv-565 (M.D. La. May 17, 2019) [Dkt. 114].

Meanwhile, in the federal suit by Affiliate Defendants and Medicaid patients challenging Affiliate Defendants' termination by Texas Medicaid, Texas advised the court in January 2016 that the lawsuit was premature because Texas "had *not yet actually decided* termination was in

---

[1] Defendants are not seeking summary judgment at this time.  However, a party may refer to certain information outside the bounds of the complaint on a motion to dismiss without converting it to one for summary judgment.  For example, "[a] district court may take judicial notice of public records without converting a Rule 12(b)(6) motion into a motion for summary judgment."  *Cox v. Richards*, 761 F. App'x 244, 248 (5th Cir. 2019) (district court properly considered publicly available records from bankruptcy proceeding) (internal citation omitted); *see also Gray v. Beverly Enters. Miss., Inc.*, 390 F.3d 400, 407 n.7 (5th Cir. 2004) (may take judicial notice of another court's judicial action).

order." *Planned Parenthood of Greater Texas v. Smith*, 236 F. Supp. 3d 974, 985–86 (W.D. Tex. 2017) (citing Letter to Court (Jan. 14, 2016) [Dkt. 38]) (emphasis added). Based on that representation, the court stayed the case pending issuance of a final termination notice. *Id.* at 986 (citing Order (Jan. 27, 2016) [Dkt. 42]).

Nearly a year later, on December 20, 2016, Texas issued a Final Notice of Termination to each Affiliate Defendant. Relator Compl., Ex. C. On January 4, 2017, Affiliate Defendants and Medicaid beneficiary plaintiffs moved for a TRO and preliminary injunction to prevent their termination from the Texas Medicaid program. *Smith*, 236 F. Supp. 3d at 987 (citing Mot. Prelim. Inj. (Jan. 4, 2017) [Dkt. 58]). The court issued a TRO on January 19, 2017, prohibiting the termination of Affiliate Defendants until February 21. *Id.* (citing Order (Jan. 19, 2017) [Dkt. 84]). On February 21, after conducting a three-day evidentiary hearing and concluding there was no evidence to support the terminations, the court held the Medicaid beneficiary plaintiffs likely to succeed on their challenge and entered a preliminary injunction prohibiting Texas "from terminating the [Affiliate Defendants'] Medicaid Provider Agreements," and ordered that the injunction would remain in effect "until further ordered." *Id.* at 1000; *see also* Relator Compl. ¶ 109 ("Federal courts in Texas and Louisiana entered temporary restraining orders followed by preliminary injunctions which required Texas and Louisiana to retain PPGC, PPGT, and PPST as Medicaid providers pending final resolution of [their] federal lawsuits[.]").

Texas appealed to the Fifth Circuit. In January 2019, the Fifth Circuit vacated the preliminary injunction, holding that the district court had not applied the correct standard of review. *See Planned Parenthood of Greater Texas v. Smith*, 913 F.3d 551, 569 (5th Cir. 2019). In February 2019, the Fifth Circuit *sua sponte* granted rehearing *en banc*, thereby vacating the prior panel decision, *see* 5th Cir. R. 41.3, to decide whether Medicaid beneficiary plaintiffs had

6

the ability to enforce Medicaid's Free Choice of Provider provision through a private right of action. In November 2020, the Fifth Circuit held that no private right of action exists and vacated the Texas preliminary injunction. *Planned Parenthood of Greater Texas v. Kauffman*, 981 F.3d 347, 370 (5th Cir. 2020). The Louisiana injunction remains in effect. Order, *Planned Parenthood Gulf Coast, Inc. v. Kliebert*, No. 15-cv-565 (M.D. La. Apr. 7, 2021) [Dkt. 121].

On December 14, 2020, Affiliate Defendants asked Texas Medicaid to reconsider the State's termination decision, or, in the alternative, to grant a 90-day grace period for Medicaid beneficiaries to find new providers. Ex. A, Letter from Ray to Lambrecht (Jan 4, 2021).[2] Texas denied the reconsideration request but granted a 30-day grace period, through February 3, 2021, permitting Affiliate Defendants to continue providing services to existing Medicaid patients. *Id.*

On February 3, 2021, Affiliate Defendants filed a mandamus request and motion for TRO in Travis County District Court. Texas Compl. ¶ 7. The state court issued a TRO enjoining Texas "from directly or indirectly terminating or otherwise interfering with [Affiliate Defendants'] participation in the Medicaid program." *Id.* On March 12, 2021, the state court denied Affiliate Defendants' mandamus request; Affiliate Defendants did not appeal, and so their termination from Texas Medicaid became effective on that date. *Id.* ¶ 7 & Ex. 1.

Relator filed this action on February 5, 2021, and it was unsealed on January 12, 2022.

## III.    Relator's Allegations

Relator alleges that years ago, he launched an "undercover investigation" "to determine whether Planned Parenthood's fetal tissue procurement practices were continuing, and if they were

---

[2] The Court may take judicial notice of official government correspondence because it generally is "not . . . subject to reasonable dispute." *Luna v. Am. Nat'l Ins. Co.*, No. 21-cv-64, 2021 WL 1911339, at *4 (W.D. Tex. May 12, 2021) (citation omitted); *see Funk v. Stryker*, 631 F.3d 777, 782–83 (5th Cir. 2011) (affirming district court's taking judicial notice of FDA letter). Indeed, the Texas's Complaint references and incorporates the same letter. *See* Texas Compl. ¶ 6.

legal and/or ethical." Relator Compl. ¶ 64. Relator alleges that the evidence from his investigation and subsequent government investigations show that PPGC "began violating federal and state law in at least 2010-2011" in connection with fetal tissue research. *Id.* ¶ 105. Relator further alleges that PPGC did not disclose those violations, rendering its claims for Medicaid reimbursement legally false under the FCA. *Id.* Relator also alleges that PPFA "directed and participated in" PPGC's wrongdoing because PPFA "approves all affiliate research programs and research contracts," "sets the medical standard and guidelines each affiliate is required to comply with," and "requires all affiliates to perform abortions." *Id.* ¶¶ 100, 101. Relator further alleges that in 2020, once the Fifth Circuit held there was no private right of action under Medicaid and vacated the preliminary injunction in the Texas case, Affiliate Defendants had retroactive obligations to repay all Medicaid reimbursements received since October 15, 2015 (Louisiana) and January 19, 2017 (Texas), the dates on which Relator alleges the terminations "became final under [State] law." *Id.* ¶¶ 10, 11, 83, 92. Relator alleges that because Defendants did not repay these amounts they violated the FCA's "reverse false claims" provision and the Texas and Louisiana equivalents.[3]

## ARGUMENT

### I. Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a relator's complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). This means that a relator's allegations must let the court "draw the reasonable inference that the defendant is liable for the misconduct alleged"; it is not enough for a complaint to raise

---

[3] Defendants recognize that, at the motion to dismiss stage, the Court must accept Relator's "well pleaded" allegations as true; however, by citing them in its motion, Defendants should not be understood to concede their truth or accuracy. Were the case to proceed, Defendants would vigorously contest these allegations, as they have in multiple other venues.

only the "possibility" that the defendant acted unlawfully. *Id.* (citation omitted).

Although this Court must view allegations in the light most favorable to Relator, it should not accept legal conclusions couched as facts, "conclusory allegations," or "unwarranted deductions of fact." *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (citation omitted). Nor should it accept allegations that are contradicted by documents Relator incorporates into his Complaint, *U.S. ex rel. Graves v. ITT Educ. Servs., Inc.*, 284 F. Supp. 2d 487, 494 (S.D. Tex. 2003), or documents fairly subject to judicial notice, *Cicalese v. Univ. of Tex. Med. Branch*, 456 F. Supp. 3d 859, 871–73 (S.D. Tex. 2020). If an allegation is contradicted by such documents, even on a motion to dismiss, "then indeed the [document] and not the allegation controls." *U.S. ex rel. Porter v. Magnolia Health Plan, Inc.*, 810 F. App'x 237, 241 (5th Cir. 2020) (citation omitted). FCA claims are also subject to Rule 9(b)'s heightened pleading requirement that plaintiffs state "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *U.S. ex rel. Grubbs v. Kanneganti*, 565 F. 3d 180, 185 (5th Cir. 2009).

## II.   Relator's Federal FCA Claims (Counts I-II) Are Barred by the Public Disclosure Bar

The FCA's "public disclosure bar" prevents private parties from bringing *qui tam* actions "when the relevant information has already entered the public domain through certain channels." *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 285 (2010). Congress enacted the bar to prevent the government from paying a *qui tam* bounty to private citizens for "suits which the government is capable of pursuing itself." *Wercinski v. Int'l Bus. Machs. Corp.*, 982 F. Supp. 449, 456 (S.D. Tex. 1997) (quoting *U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 651 (D.C. Cir. 1994)). "[W]here a public disclosure has occurred, [the government] is already in a position to vindicate society's interests, and a *qui tam* action would serve no purpose." *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009) (citation omitted).

The public disclosure bar provides that an action must be dismissed "if substantially the same allegations or transactions as alleged in the action" were "publicly disclosed" in a "criminal, civil, or administrative hearing," "a congressional . . . or other Federal report, hearing, audit, or investigation," or "the news media," unless the relator qualifies as an "original source." 31 U.S.C. § 3730(e)(4)(A) (2010).[4]  In turn, an "original source" is defined as a relator who either "prior to a public disclosure . . . has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or . . . who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing [a FCA] action." *Id.* at § 3730(e)(4)(B).

First, the Court must determine whether the bar is triggered by assessing if information was disclosed through a qualifying source and whether the relator's allegations are substantially similar to the disclosed information. *U.S. ex rel. Schweizer v. Canon, Inc.*, 9 F.4th 269, 275 (5th Cir. 2021).  Courts typically undertake these inquiries in tandem "because it allows the scope of the relator's action . . . to define the 'allegations or transactions' that must be publicly disclosed in step one." *U.S. ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 327 (5th Cir. 2011); *see Schweizer*, 9 F.4th at 275–76.  If each of these requirements is met, the second step is assessing whether a relator qualifies as an "original source." *Schweizer*, 9 F.4th at 275.

As described below, there have been multiple public disclosures that trigger the bar and Relator has not adequately pled he is an original source.

---

[4] The Texas and Louisiana statutes under which Relator has filed suit are modeled on the federal FCA and contain substantially similar public disclosure bars.  *See* Tex. Hum. Res. Code Ann. § 36.113(b) (2013); La. Stat. Ann. § 46:439.1(D) (2011).  Relator's claims under those statutes (Counts III and IV) should be dismissed for the same reasons discussed in this section.

### A. The Information Underlying Relator's FCA Claims Was Publicly Disclosed Prior to His Filing This Action

The allegations Relator now seeks to cast as a FCA violation were publicly disclosed years before he filed this case in February 2021 – *after* congressional and other investigations, substantial coverage in the news media, and years of litigation with Texas and Louisiana relating to Medicaid termination. The Court need not look outside the pleadings to confirm this fact, because Relator admits it throughout his Complaint, repeatedly citing and incorporating public information:

| Public Disclosure Incorporated in Complaint | Reference(s) in Complaint | Date of Disclosure (as alleged in Complaint) |
|---|---|---|
| YouTube Video (partial version) | ¶ 81 | July 14, 2015 |
| YouTube Video (complete version) | ¶ 81 | Aug. 4, 2015 |
| YouTube Video Summary Report | ¶ 81 | Aug. 4, 2015 |
| Louisiana Medicaid Exclusion Letter | ¶¶ 82, 106, 120; Ex. A | Sept. 15, 2015 |
| Texas Medicaid Initial Exclusion Letter | ¶¶ 84, 107; Ex. B | Oct. 15, 2015 |
| House Select Committee Final Report | ¶ 91 | Pre-Dec. 20, 2016 |
| Senate Judiciary Committee Investigation | ¶ 102 | Not Specified |
| Texas Medicaid Final Exclusion Letter | ¶¶ 91, 108, 120; Ex. C | Dec. 20, 2016 |
| Fifth Circuit Opinion (Remanding Injunction) | ¶ 9 | Jan. 17, 2019 |
| Fifth Circuit Opinion (Denying Cause of Action) | ¶¶ 10, 109, 120 | Nov. 23, 2020 |

Because each of these is in the public record, and the Complaint incorporates all of them, the Court may consider them on a motion to dismiss.

The public disclosure bar applies when "a *qui tam* action is 'even *partly based* upon public allegations or transactions.'" *Schweizer*, 9 F.4th at 275 (emphasis added) (citation omitted). "A guiding query is whether 'one could have produced the substance of the complaint merely by synthesizing the public disclosures' description' of a scheme." *Little v. Shell Expl. & Prod. Co.*,

690 F.3d 282, 293 (5th Cir. 2012) (citation omitted).  Here, Relator advances two theories of FCA liability, both of which meet this test and thus are barred.

Relator's first theory – that Affiliate Defendants falsely certified their compliance with federal and state law – relies on information "in the Texas termination letter and reflected in the undercover video obtained by Relator."  Relator Compl. ¶ 99.  Relator admits that the footage from his "journalistic investigation," *id.* ¶ 65, along with other related materials, have been publicly available in the news media – specifically on YouTube and other websites – since July 14, 2015 and was published by the Fifth Circuit itself.  *Id.* ¶¶ 79, 81; *see U.S. ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 813–14 (11th Cir. 2015) (clinics' public websites and advertisements were public disclosures); *U.S. ex rel. Carmel v. CVS Caremark Corp.*, No. 13-cv-5930, 2015 WL 3962532, at *4–5 (N.D. Ill. June 26, 2015) (defendants' website and press coverage were public disclosures).  Relator also admits his first theory of liability is based upon information in a U.S. House of Representatives Select Committee Report.  *Id.* ¶ 91.  The 471-page House Report, which was published in December 2016 and is available online, contains substantially the same information alleged in Relator's Complaint, except at greater length.  *See* Staff of Select Investigative Panel of the Energy & Com. Comm., 116th Cong., Final Rep. (Dec. 30, 2016), https://bit.ly/3B08jDf.  Relator's first liability theory therefore is based entirely upon information that was publicly disclosed "in a congressional . . . report" and the "news media."  31 U.S.C. § 3730(e)(4)(A); Tex. Hum. Res. Code Ann. § 36.113(b); La. Stat. Ann. § 46:439.1(D)(1).  Indeed, Relator does not offer a single allegation that has *not* been publicly disclosed.

Relator's second FCA theory is that "every claim that [Defendants] submitted after" the issuance of final termination notices by Texas and Louisiana "was a false or fraudulent claim" and Defendants violated the FCA by failing "to report or repay . . . the[se] overpayments."  Relator

Compl. ¶ 11.  This claim relies on the termination letters from Texas and Louisiana, *id.* ¶¶ 106–08 (referencing ¶¶ 82, 84, 91 and Exs. A–C), and the Fifth Circuit's November 2020 *en banc* opinion, *id.* ¶ 111 (referencing ¶ 10).  Relator adds no original information, merely citing these public documents and alleging on "information and belief" that Defendants continued to submit claims and failed to "report or return" funds they had already received.  *Id.* ¶ 12.  These allegations, too, are based on information that was publicized widely and therefore publicly disclosed in the "news media."[5]  Indeed, Relator's second theory of FCA liability is precisely the type of "mosaic" of public disclosures the FCA forbids.  *See e.g., U.S. ex rel. Alcohol Found., Inc. v. Kalmanovitz Charitable Found., Inc.*, 186 F. Supp. 2d 458, 461–62 (S.D.N.Y. 2002).[6]

## B.      Relator Is Not an Original Source

Relator cannot escape the public disclosure bar by declaring *ipse dixit* and in conclusory fashion that he "qualifies as an 'original source.'"  *See* Relator Compl. ¶ 25.  As noted above, he does not qualify because he has not alleged that he voluntarily disclosed to the government before

---

[5] *See, e.g.*, Kevin Litten, *DHH to File New Medicaid Termination Notice With Planned Parenthood*, *The Times Picayune* (Sep. 11, 2015), *archived in part at* https://web.archive.org/web/20150914011806/http://www.nola.com/politics/index.ssf/2015/09/d hh_planned_parenthood_court.html (publishing Louisiana Medicaid Exclusion Letter);  David Mack, *Texas Cuts Medicaid Funding to Planned Parenthood Over Undercover Videos*, BuzzFeed News (Oct. 19, 2015), *available at* https://www.buzzfeednews.com/article/davidmack/texas-cuts-medicaid-funding-to-planned-parenthood-over-under  (publishing   Texas   Medicaid   Initial Exclusion Letter); Lana Shadwick, *Planned Parenthood 'Violated Law,' Says Texas*, Breitbart (Dec. 21, 2016), *available at* https://www.breitbart.com/border/2016/12/21/planned-parenthood-violated-law-handling-fetal-tissue-says-texas/ (publishing Texas Medicaid Final Exclusion Letter); Daniel Conrad, *Fifth Circuit Rules Texas Can Exclude Planned Parenthood From Medicaid Program*, *Courthouse News Service* (Nov. 23, 2020), *available at* https://www.courthousenews.com/fifth-circuit-rules-texas-can-exclude-planned-parenthood-from-medicaid-program/ (publishing Fifth Circuit *en banc* opinion).

[6] The Texas and Louisiana Medicaid termination proceedings and related litigation also independently qualify as public disclosures under the state FCA equivalents that further bar Relator from proceeding under those statutes.  *See* Tex. Hum. Res. Code § 36.113(b); La. Rev. Stat. § 46:439.1(D)(1)(a); *see also U.S. ex rel. Colquitt v. Abbott Lab'ys*, 858 F.3d 365, 374 (5th Cir. 2017) (clarifying that "paper" proceedings are "hearings").

the public disclosures the information on which his claim is based nor has he demonstrated that his Complaint materially adds to that which is in the public domain.

### 1. Relator Does Not Plead That He Disclosed FCA Violations to the Federal Government Before the Public Disclosures

To satisfy the first prong of the original source exception, a relator's disclosure to the government "must—at a minimum—connect" allegations about "fraudulent conduct" to "the filing of a claim for reimbursement from the government." *U.S. ex rel. King v. Solvay Pharms., Inc.*, 871 F.3d 318, 326–27 (5th Cir. 2017). In other words, a relator's disclosure must actually "suggest an *FCA violation*," *id.* at 327 (emphasis in original), not the violation of other laws. *Id.* (relators were not original source because their disclosure to FDA "suggest[ed] only Food, Drug, and Cosmetic Act . . . and [Anti-Kickback Statute] violations"). Moreover, when invoking the "original source" exception, "a *qui tam* plaintiff must allege specific facts—as opposed to mere conclusions." *U.S. ex rel. Reagan v. E. Texas Med. Ctr. Reg'l Healthcare Sys.*, 274 F. Supp. 2d 824, 853–54 (S.D. Tex. 2003) (citations omitted).

Here, Relator's conclusory allegations are insufficient. Relator alleges that he voluntarily disclosed "to the United States" "knowledge obtained during and after the investigation of Planned Parenthood." Relator Compl. ¶ 13. But Relator provides no specific information about what he disclosed, to whom, or when. He merely offers that he "provided material non-public information and evidence about Planned Parenthood's violation of medical and ethical standards and state and federal laws." *Id.* ¶ 5. This sort of allegation is precisely what the Fifth Circuit has deemed inadequate. *See King*, 871 F.3d at 327. Relator's failure to allege that his disclosure to the U.S. Government "connected [his] knowledge of [Defendants'] conduct to false claims" prevents him from qualifying as an original source. *See id.* at 326–27.

14

Furthermore, Relator only vaguely alleges that his disclosure was made to "the United States." He does not identify a specific disclosure to a federal agency responsible for enforcing the FCA or Medicaid, such as the Department of Justice ("DOJ") or the Centers for Medicare & Medicaid Services. To the extent he is referencing a disclosure to Members of Congress, this is insufficient. Under the FCA, for example, disclosures that end statute of limitations tolling against the government must be made specifically to DOJ. *E.g.*, *United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 607 (S.D.N.Y. 2013); *United States v. Tech Refrigeration*, 143 F. Supp. 2d 1006, 1009 (N.D. Ill. 2001).[7] There is no reason to treat the public disclosure bar differently.

Moreover, "a relator must also establish his original source status as to each theory of fraud alleged in a complaint." *U.S. ex rel. Monsour v. Performance Accts. Receivable, LLC*, No. 16-cv-38, 2018 WL 4682343, at *13 (S.D. Miss. Sept. 28, 2018) (citing *King*, 871 F.3d at 327). Relator could not possibly have disclosed the facts underlying his second theory of liability (related to Defendants' Medicaid termination) because it is not based on Relator's investigation, but on later actions by State Medicaid officials and the Fifth Circuit's opinion. Relator Compl. ¶¶ 106–12.

### 2. Relator's Complaint Does Not Materially Add to the Public Disclosures

Relator also cannot show his Complaint "materially adds to the publicly disclosed allegations or transactions." 31 U.S.C. § 3730(e)(4)(B). This prong requires that a relator's complaint "contribute[] information—*distinct from what was publicly disclosed*—that adds in a significant way to the essential factual background: 'the who, what, when, where, and how of the events at issue.'" *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294,

---

[7] Individual members do not represent the United States; only DOJ may make that claim in federal court. Indeed, even individual members' floor statements are not binding legislative history when interpreting a statute. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 390–91 (2000) (Scalia, J., concurring).

307 (3d Cir. 2016) (emphasis added) (citation omitted).  Put another way, the relator's complaint must provide "qualitatively different information than what had already been discovered and is not merely the product and outgrowth of publicly disclosed information."  *U.S. ex rel. Lockey v. City of Dallas*, 576 F. App'x 431, 435 (5th Cir. 2014) (citation omitted).

Relator's Complaint adds nothing, let alone something "material," to the information that had already been disclosed publicly prior to the filing of this action.  It simply repackages the information contained in numerous public disclosures, alleging that Defendants violated various laws related to fetal tissue research and submitted false claims as a result.  That some of the public disclosures came from Relator himself does not make him an original source.  Courts have consistently held that a relator can bar himself under the public disclosure bar.  *See, e.g.*, *U.S. ex rel. Sonnier v. Standard Fire Ins. Co.*, 84 F. Supp. 3d 575, 589 (S.D. Tex. 2015) (relator's own prior lawsuit triggered public disclosure bar because "[t]here is no exception for a relator's own prior public disclosures, including a lawsuit"); *U.S. ex rel. Mosler v. City of Los Angeles*, 414 F. App'x 10, 11 (9th Cir. 2010) (relator's testimony to the Army Corps of Engineers and article quoting relator were public disclosures); *U.S. ex rel. Poteet v. Bahler Med., Inc.*, 619 F.3d 104, 114–15 (1st Cir. 2010) (similar).

In short, Relator has pleaded himself out of court under the public disclosure bar.  The Court should dismiss his federal (and state) FCA claims on that basis alone.

## III.    Relator's Federal FCA Claims (Counts I and II) Should Be Dismissed Under Rule 12(b)(6) Because He Fails Plausibly to Plead the Elements of a FCA Violation

### A.    Relator Has Failed to Plausibly Plead a "Reverse False Claim" Based on Defendants' Termination From the State Medicaid Programs (Count II)

The FCA's "reverse false claims" provision imposes liability on any person who "knowingly and improperly" avoids or decreases a "clear" obligation to pay or transmit money or property to the government.  31 U.S.C. § 3729(a)(1)(G); *see United States v. HCA Health Servs.*

16

*of Oklahoma, Inc.*, No. 09-cv-992, 2011 WL 4590791, at *8 (N.D. Tex. Sept. 30, 2011).  "The term 'obligation' means an established duty, whether or not fixed, arising from an express or implied contractual . . . relationship, . . . , from statute or regulation, or from the retention of any overpayment . . . ." 31 U.S.C. § 3729(b)(3).  To state a claim under a reverse FCA theory, a relator must provide facts showing defendants were under an affirmative obligation to repay the government.  *U.S. ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 917 (6th Cir. 2017).

Relator alleges in Count II that Affiliate Defendants violated the FCA's reverse false claims provision by failing to repay Medicaid reimbursements received after the dates on which their terminations became "final."  Relator Compl. ¶ 120.  This theory fails for a simple reason: Defendants had no obligation to repay Medicaid because they remained in the Texas Medicaid program until March 12, 2021, after Relator filed this action, and PPGC *still* is participating in the Louisiana Medicaid program.  Though the States initiated termination proceedings years earlier, federal and state courts enjoined the terminations, which allowed Defendants to provide and bill for Medicaid services under the protection of the injunctions.  And after the expiration of the federal injunction, Texas itself agreed to allow Defendants to continue providing and billing for Medicaid services for an additional thirty day "grace period."  There is no legal basis for Relator's theory that the lifting of the injunctions retroactively rendered false all of the claims that Defendants submitted while they remained in Medicaid.  Relator also fails to plausibly plead scienter because Defendants acted objectively reasonably in relying on the injunctions (and an extension granted by Texas Medicaid officials) in conforming their conduct to the law.

### 1.    Defendants Did Not Have an Obligation to Repay the States

As discussed above, although Texas and Louisiana initiated proceedings to terminate Affiliate Defendants from Medicaid in 2015, a series of injunctions and the aforementioned grace period kept Affiliate Defendants in the Texas Medicaid Programs through at least March 12, 2021

(and indeed, the Louisiana injunction remains in effect today). Relator does not allege that Affiliate Defendants continued to bill Texas Medicaid after March 12, 2021; nor could he given that he filed his Complaint a month earlier. Instead, he alleges that the terminations "became final under state law" thirty days after the final termination notices were issued, Relator Compl. ¶¶ 83, 92, and Affiliate Defendants should have repaid all claims they submitted to Medicaid after that date once the Fifth Circuit vacated the Texas preliminary injunction in 2020, *id.* ¶ 120. In other words, Relator alleges that despite federal court orders expressly permitting Affiliate Defendants to continue operating as Medicaid providers, every claim they submitted for reimbursement for services *actually provided to patients* while the injunctions were in effect can retroactively be deemed false. This theory of falsity is unprecedented – and for good reason, as it would turn settled principles of due process on their head.

A healthcare provider who enters into an approved Medicaid provider agreement with a State remains a Medicaid-eligible provider unless and until that agreement is terminated. 42 U.S.C. § 1396a(kk)(8)(B)(ii); 1 Tex. Admin. Code Ann. § 371.1703(g); La. Stat. Ann. § 46:437.11(D)(1). Such providers may submit claims for payment until the effective date of their termination from the program. 1 Tex. Admin. Code Ann. § 371.1703(g)(5); La. Stat. Ann. 46:437.11(A).

Relator's contention that Affiliate Defendants' termination became final by operation of state law thirty days after the issuance of final notices of termination ignores a series of injunctions that prevented the terminations from taking effect. By federal and state court orders, Texas and Louisiana were prohibited from terminating Affiliate Defendants from Medicaid. *See Smith*, 236 F. Supp. 3d at 1000 ("Defendants . . . are PRELIMINARILY ENJOINED from terminating the Provider Plaintiffs' Medicaid Provider Agreements."); *Kliebert*, 141 F. Supp. 3d at 653

("Defendant . . . [is] PRELIMINARY ENJOINED from terminating any of its Medicaid provider agreements with [PPGC].").  Those injunctions maintained the status quo, allowing Affiliate Defendants to continue to serve Medicaid patients and bill for the services provided.  *See Smith*, 236 F. Supp. 3d at 998-99 (injunction permitted Affiliate Defendants to continue to provide Medicaid services to patients in Texas); *Kliebert*, 141 F. Supp. 3d at 611 (injunction "maintain[ed] the *status quo*" and allowed PPGC to continue to operate under Louisiana Medicaid); *see also Wenner v. Tex. Lottery Comm'n*, 123 F.3d 321, 326 (5th Cir. 1997) ("It is well settled that the issuance of a prohibitory injunction freezes the status quo, and is intended 'to preserve the relative positions of the parties until a trial on the merits can be held.'" (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981))).  Indeed, Relator himself admits that Texas and Louisiana were "forced to continue making payments to Planned Parenthood for these claims pursuant to the preliminary injunctions."  Relator Compl. ¶ 8.  That alone is dispositive.

The Fifth Circuit's decision in *Wenner* is particularly instructive.  There, a Pennsylvania-based lottery company allowed its customers to purchase tickets from any State lottery.  123 F.3d at 323.  Congress later enacted legislation to prohibit that business, requiring that state lottery tickets be purchased in-state.  *Id.*  The Pennsylvania company filed a lawsuit challenging the legislation and a federal district court in Pennsylvania entered an injunction preliminarily enjoining enforcement.  *Id.*  While the injunction was in effect, the plaintiff bought a winning Texas lottery ticket through the Pennsylvania company.  *Id.*  The Third Circuit subsequently rejected the Pennsylvania company's constitutional challenge and dissolved the injunction.  *Id.* at 324.

The out-of-state ticket buyer sought to collect his winnings and sued Texas in Texas federal court when it refused to pay out.  *Id.*  The district court dismissed his complaint, concluding that "despite the pendency of the injunction, [the plaintiff's] purchase of the lottery ticket . . . violated

[federal law]." *Id.* The Fifth Circuit reversed, reaffirming that the "legally issued injunction froze the status quo which existed prior to the enactment of the [new legislation] therefore maintaining the legality of [the Pennsylvania company's] activities performed while the injunction was in effect." *Id.* at 325. The court of appeals further reasoned that because a person is entitled to "operate[] under the protection of [an] injunction" until its challenge is decided or the injunction is lifted, the plaintiff's purchase of the lottery ticket was lawful. *Id.* at 327.[8] Accordingly, notwithstanding the fact that a federal law prohibited the out-of-state sale of a lottery ticket, and a challenge to that law was later rejected, the buyer was entitled to collect on the ticket because he bought it while an injunction permitting the purchase was in effect.

The same reasoning applies here. The injunctions entered by Texas and Louisiana federal courts enjoining the termination of Affiliate Defendants' Medicaid Provider Agreements froze the status quo, maintaining the legality of Affiliate Defendants' participation in Texas and Louisiana Medicaid. Affiliate Defendants were entitled to rely on and operate under the protection of the injunctions, continuing to provide and bill for services to Medicaid patients until their later dissolution. Relator cannot undo the duly-issued orders of two other federal courts through this FCA action. Affiliate Defendants were similarly entitled to rely on the extension granted by Texas Medicaid officials in January 2021 and the TRO entered by the Texas state court in February 2021 in continuing to bill for Medicaid services until March 2021.

"[T]he falsity of a claim is determined at the time of submission." *U.S. ex rel. Longhi v. Lithium Power Techs., Inc.*, 513 F. Supp. 2d 866, 880 (S.D. Tex. 2007) (quoting *United States v.*

---

[8] The Fifth Circuit also rejected the district court's finding that the injunction was "wrongfully issued," noting that "the law has conferred power to grant . . . an injunction to the discretion of the trial court" and "principles of comity and full faith and credit" required the Fifth Circuit to presume the injunction was validly entered. *Id.* at 326.

*Southland Mgmt. Corp.*, 288 F.3d 665, 681 (5th Cir. 2002).  And because "[i]t is only those claims for money or property to which a defendant is not entitled that are 'false' for purposes of the False Claims Act," *United States v. Southland Mgmt. Corp.*, 326 F.3d 669, 674–75 (5th Cir. 2003) (en banc), Affiliate Defendants' claims could not be false while they remained in Texas and Louisiana Medicaid.  For the same reason – because state and federal law permitted Affiliate Defendants to bill Medicaid until their terminations were effective – Affiliate Defendants had no obligation to repay Medicaid for the reimbursements they received.  *See U.S. ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*, 843 F.3d 1033, 1036–40 (5th Cir. 2016) (no obligation to repay under the reverse false claims provision unless there is an "established duty" to pay monies to the government); *Ibanez*, 874 F.3d at 917 (affirming dismissal of reverse FCA claim because "relators provide[d] no facts showing defendants were under an affirmative obligation to the government").

### 2.     The Complaint Does Not Plausibly Allege That Defendants Possessed the Requisite Scienter for Count II

Relator also has failed to plausibly plead scienter under the FCA because it was objectively reasonable for Affiliate Defendants to rely on federal and state injunctions as well as the Texas grace period in continuing to operate in the Texas and Louisiana Medicaid programs.  The Court should dismiss Count II on this additional basis.

The FCA imposes liability only where the defendant acts "knowingly," which the statute defines as acting with actual knowledge, in deliberate ignorance of the truth or falsity of the information, or with reckless disregard for truth or falsity.  31 U.S.C. § 3729(b)(1)(A).  Though the Act itself does not elaborate further as to what constitutes "recklessness," the FCA incorporates the common law meaning of the terms it uses.  *See Escobar*, 579 U.S. at 187 n.2.  And "the common law has generally understood 'recklessness'" – which is the lowest standard of proof for knowledge under the FCA – "as conduct violating an objective standard: action entailing 'an

unjustifiably high risk of harm that is either *known* or so obvious that it *should be known*.'" *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007) (quoting *Farmer v. Brennan*, 551 U.S. 825, 836 (1994)) (emphasis added).  Courts consistently have applied this "objective standard" to the FCA's knowledge requirement, holding that a party does not knowingly violate the FCA if it acted in accordance with an objectively reasonable interpretation of the applicable legal requirements and if no authoritative guidance warned it away from that interpretation.  *See U.S. ex rel. Sheldon v. Allergan Sales, LLC*, -- F.4th --, 2022 WL 211172, at *4 (4th Cir. Jan. 25, 2022) (collecting cases); *U.S. ex rel. Schutte v. Supervalu, Inc.*, 9 F.4th 455, 465 (7th Cir. 2021) (same).

Applying this standard here, Relator has not plausibly alleged that Affiliate Defendants knowingly violated the FCA.  It was objectively reasonable for Affiliate Defendants to rely on federal and state court orders, and the thirty day extension granted by Texas state authorities, in continuing to submit Medicaid claims.  As noted above, Texas and Louisiana law allow a provider to continue to bill for services until a termination becomes effective, and a termination is not effective while it is enjoined.  Relator does not point to any authoritative guidance from either federal agencies or the States that would have warned the Affiliate Defendants away from their understanding of their rights under court orders and agreed-upon extension with Texas.  Indeed, Texas' letter to the Affiliate Defendants on January 4, 2021 allowing the grace period says nothing about a potential obligation to repay after the termination became final.

To the contrary, it is Relator's assertion – that Affiliate Defendants' claims that were properly submitted and paid during the pendency of the termination proceedings became retroactively false on the day the terminations became effective – that is objectively *unreasonable*. *See U.S. ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 287 (D.C. Cir. 2015) ("Strict enforcement of the FCA's knowledge requirement helps to ... avoid[ ] the potential due process problems posed

by penalizing a private party for violating a rule without first providing adequate notice of the substance of the rule." (citation omitted)).

**B.      Relator Has Not Plausibly Pled a FCA Claim Under 31 U.S.C. § 3729(a)(1)(A) for the Submission of a False Claim (Count I)**

Relator also separately alleges in Count I that Defendants violated the FCA by submitting claims for Medicaid reimbursement while failing to disclose "their violations of medical and ethical standards and state and federal laws."  Relator Compl. ¶ 115.  Relator alleges that "PPGC began violating federal and state law in at least 2010-2011, when PPGC began provided [sic] fetal tissue to UTMB." *Id.* ¶ 105.  Relator further alleges that PPGC's failure to disclose these violations rendered every Medicaid claim PPGC subsequently submitted impliedly false. *Id.*

To plead an affirmative FCA claim under Section 3729(a)(1)(A), "a relator must plausibly allege four distinct elements:  (1) there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (*i.e.*, that involved a 'claim')." *U.S. ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 467 (5th Cir. 2009) (citation omitted).  As discussed below, Count I should be dismissed as to all defendants.  The Court should dismiss Count I as to PPGT, PPST, PP Cameron County, and PP San Antonio because Relator does not allege that these entities submitted or caused to be submitted *any* of the allegedly false claims.  The Court should dismiss Count I as to PPGC and PPFA because Relator fails to adequately allege two essential elements of a FCA violation:  falsity and materiality.

**1.      The Court Should Dismiss Count I as to PPGT, PPST, PP Cameron County, and PP San Antonio Because Relator Does Not Allege That They Submitted or Caused to Be Submitted Any of the Allegedly False Claims**

Count I focuses entirely on the allegedly wrongful conduct of PPGC, as allegedly enabled and directed by PPFA.  Relator does not allege that any of the other Affiliate Defendants (PPGT,

PPST, PP Cameron County, and PP San Antonio) participated in fetal tissue research or violated any state or federal law related to fetal tissue research. Nor do the Notices of Termination attached to Relator's Complaint allege wrongdoing by the other Affiliate Defendants. To the contrary, Texas advised PPGT and PPST that they were being terminated from Texas Medicaid solely because of their affiliation with PPGC. *See* Relator Compl., Ex B. Relator's theory requires a plausible and particular allegation that each Affiliate Defendant falsely billed Medicaid without disclosing its own purported violation of underlying fetal tissue regulations. Even if this theory were viable, it fails as to any Defendant where there is no such allegation. Relator does not allege that PPGT, PPST, PP Cameron County, or PP San Antonio falsely billed Medicaid without disclosing any violations, and therefore Count I must be dismissed as to those Defendants.

### 2.      The Court Should Dismiss Count I as to PPGC and PPFA Because Relator Fails to Plausibly Plead the Essential Elements of Falsity and Materiality

#### a.      Relator Fails to Plausibly Plead Falsity

The Court should dismiss Count I as to PPGC and PPFA under Rule 12(b)(6) because Relator fails to plausibly plead that either defendant submitted a false claim for payment.[9]

The FCA recognizes two types of falsity – factual falsity and legal falsity. *U.S. ex rel. Bennett v. Medtronic, Inc.*, 747 F. Supp. 2d 745, 765 (S.D. Tex. 2010). A claim is *factually* false if it facially misrepresents information included in the claim, for example, by stating that a service was provided when in fact it was not. *Id.* A claim is *legally* false if the defendant certified, expressly or impliedly, that it was compliant with a federal statute, regulation, or contractual term,

---

[9] Relator does not allege that PPFA provided medical services or submitted claims for payment. Relator nonetheless alleges that PPFA is liable for the acts of its affiliates because it directed their conduct. As discussed below, Relator's vague allegations of direction and control plainly fail under Rule 9(b)'s heightened pleading standard.

when in fact it was not. *Escobar*, 579 U.S. at 190; *see Bennett*, 747 F. Supp. 2d at 765–66. Relator has failed to adequately plead that PPGC's claims were false under either theory.

Relator has not pled factual falsity because he does not allege that PPGC's Medicaid *claims – i.e.* the reimbursement requests that it submitted to the Medicaid program for payment of covered services provided to Medicaid patients – misrepresented the services provided. Instead, as noted, Count I relies on a theory of implied legal falsity – that PPGC submitted claims for payments under Medicaid "without disclosing [its] violations of medical and ethical standards and state and federal laws." Relator Compl. ¶ 115. The Supreme Court has held that an implied false certification theory is valid "at least where the following conditions are met: first, the claim does not merely request payment, but also *makes specific representations* about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those misrepresentations misleading half-truths." *Escobar*, 579 U.S. at 190 (emphasis added); *accord U.S. ex rel. Smith v. Wallace*, 723 F. App'x 254, 256 (5th Cir. 2018) (per curiam) (affirming judgment for defendant where relator provided no evidence "that the claims included 'specific representations' that were 'misleading half-truths'"); *U.S. ex rel. Rose v. Stephens Ins.*, 909 F.3d 1012, 1018 (9th Cir. 2018) (relator "must satisfy *Escobar*'s two conditions to prove falsity," including that defendant made "specific representations about the goods or services provided" in its bills); *United States v. Sanford-Brown, Ltd.*, 840 F.3d 445, 447 (7th Cir. 2016) (same).

Relator, however, does not identify a single representation that Defendants allegedly made on any claim for payment. Relator identifies a host of federal laws related to fetal tissue that PPGC allegedly violated, but he does not allege what PPGC represented on any actual reimbursement request. As Justice Thomas explained when writing for the Court in *Escobar*, "[t]he [FCA] is not

'an all-purpose antifraud statute.'"  *Escobar*, 579 U.S. at 194.  Nor is it "a blunt instrument to enforce compliance" with other laws or regulations.  *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 268 (5th Cir. 2010).  It "attaches liability . . . to the [false] claim for payment." *Bennett*, 747 F. Supp. 2d at 765.  It is therefore incumbent on Relator to plead that PPGC's *claims for payment* were false.[10]  His failure to identify *any* representations made on those bills – let alone allege how PPGC's alleged noncompliance with federal laws related to medical procedures that have nothing to do with Medicaid[11] rendered those representations misleading half-truths – prevents him from doing so.  *See U.S. ex rel. Hawkins v. ManTech Int'l Corp.*, No. 15-cv-2105, 2020 WL 435490, at *14–15 (D.D.C. Jan. 28, 2020) (dismissing FCA claims for failure to allege that defendants made specific representations on claims for payment); *see also U.S. ex rel. Smith v. Wallace*, 723 F. App'x 254, 256 (5th Cir. 2018) (per curiam) (affirming judgment for defendant where relator failed to show "that the claims included 'specific representations' that were 'misleading half-truths'").  The Court should therefore dismiss Count I as to PPGC for failure to plead falsity.  Because PPFA's alleged liability is derivative of the liability of its affiliate that actually billed Medicaid, the Court should dismiss Count I as to PPFA as well.

---

[10] As discussed below, the Fifth Circuit has held that a non-insider relator may not be required to identify specific representative false claims.  *Grubbs*, 565 F.3d at 188-89.  That does *not* mean, however, that he is absolved of plausibly pleading the essential elements of a FCA violation.  *See U.S. ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 893 (5th Cir. 2013).  Relator still must allege what made Defendants' claims impliedly false; as *Escobar* made clear, that requires him to identify whether specific representations were made.

[11] Under the Hyde Amendment, federal Medicaid funds cannot be used for abortion except in cases of rape, incest, or life endangerment.  *See Hope Med. Grp. for Women v. Edwards*, 63 F.3d 418, 424 (5th Cir. 1995).  Though states have the option to cover abortions in other cases using their own funds, neither Texas nor Louisiana have exercised that option.  The purported violations which Relator identifies have to do with the manner in which abortions were performed. By definition, as these procedures were not covered by Medicaid, there could have been no representations on claims submitted to Medicaid relating to abortion.

**b.      Relator Fails to Plausibly Plead Materiality**

A misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the government's payment decision to be actionable under the FCA. *Escobar*, 579 U.S. at 181. This "demanding" and "rigorous" materiality standard imposes a substantial pleading burden on a relator. *See id.* at 181, 192–94; *Porter*, 810 F. App'x at 241. To plausibly plead materiality, a relator must plead facts showing that the "likely or actual" decision of the government would have been to withhold or recoup payment had it known of the alleged fraud. *Escobar*, 579 U.S at 193. By contrast, "if the [g]overnment pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material." *Id.* at 195. Put another way, "continued payment by the federal government after it learns of the alleged fraud substantially increases the burden on the [plaintiff] in establishing materiality." *U.S. ex rel. Harman v. Trinity Indus. Inc.*, 872 F.3d 645, 663 (5th Cir. 2017). Relator's Complaint fails to meet this exacting burden.

Relator alleges that Defendants' "undisclosed violations were material to the *Plaintiff States*' decisions to pay" Defendants' Medicaid claims. Relator Compl. ¶ 116 (emphasis added). But the FCA is a statute to protect the federal fisc, *United States v. McNinch*, 356 U.S. 595, 599 (1958), and necessarily it is the *United States*' "materiality decision that ultimately matters." *See U.S. ex rel. Petratos v. Genentech, Inc.*, 855 F.3d 481, 491 (3d Cir. 2017) (rejecting argument that "where the fraud is first directed to an intermediary," materiality depends on the actions of "the *initial* recipient of the misrepresentation and not . . . the Government" (emphasis in original)). Here, although Relator alleges that the United States was aware of Defendants' alleged fraud in 2016, Relator Compl. ¶ 91, he does not allege that the United States took any action to recoup Medicaid payments made to Defendants or to impose civil monetary penalties, despite its clear authority to do so. *See* 42 C.F.R. § 423.752(c). That failure prevents Relator from plausibly

pleading materiality for his FCA claims.  *See Harman*, 872 F.3d at 663; *U.S. ex rel. Berg v. Honeywell Int'l, Inc.*, 740 F. App'x 535, 538 & n.5 (9th Cir. 2018); *Petratos*, 855 F.3d at 489–90.

Further, even if the actions of Texas and Louisiana were relevant to the materiality analysis under the federal FCA, Relator's allegations make clear that Defendants' alleged misconduct was *immaterial* to those States' payment decisions.  Federal law provides that if a State Medicaid agency "determines there is a credible allegation of fraud" against a healthcare provider, the State Medicaid Agency "*must* suspend all Medicaid payments to [that] provider." 42 C.F.R. § 455.23(a) (emphasis added).  The State Medicaid Agency must also provide notice to the provider that it is suspending payments under that provision of federal law.  *Id.* § 455.23(b)(1).  Similarly, Texas and Louisiana law permits the States to recoup Medicaid funds improperly paid to fraud or violations of the Medicaid program.  *See* 1 Tex. Admin. Code Ann. § 371.1711; 50 La. Admin. Code Ann. § 4161.  Relator alleges that both States investigated the information underlying his Complaint, and that their only response was to terminate Defendants' participation in Medicaid *prospectively*.  Relator does not allege, as he must, that Texas or Louisiana ever suspended payments to Defendants or sought to recoup payments already made.  And, as already discussed, Texas voluntarily agreed to allow Affiliate Defendants to remain in the Medicaid program for at least a period of time after the injunction had lifted.[12]  Relator thus has failed to plead that Defendants' alleged fraud under Count I – that is, their alleged submission of false claims before the termination notices were issued – was material to the States' decision to pay those claims.

---

[12] Although the government's decision to intervene is afforded only minimal weight in the materiality analysis, it is telling that Texas intervened only as to the termination-related claims, not as to Relator's claims seeking repayment of Medicaid funds before the termination proceedings commenced.  The federal government declined to intervene altogether.

## IV.     The Relator's Federal FCA Claims Should Be Dismissed Under Rule 9(b)

Because the FCA is an anti-fraud statute, FCA claims also are subject to Rule 9(b)'s heightened pleading requirement. *Grubbs*, 565 F. 3d at 185. Despite its length, Relator's Complaint lacks critical details required to plead its FCA claims with the particularity required by law. *Cf. Southland Sec. Corp. v. Inspire Ins. Sols., Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) ("A complaint can be long-winded, even prolix, without pleading with particularity. Indeed, such a garrulous style is not an uncommon mask for an absence of detail."). The Fifth Circuit "strictly interprets Rule 9(b)," *Gregory v. Houston Ind. Sch. Dist.*, No. 14-cv-2768, 2016 WL 5661701, at *3 (S.D. Tex. Sept. 30, 2016), applying it to FCA complaints "with 'bite' and 'without apology.'" *Grubbs*, 565 F. 3d at 185 (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997)). Relator's Complaint fails to satisfy Rule 9(b) in three important respects. *First*, Relator makes generalized assertions regarding fraudulent conduct by "Planned Parenthood" without attributing any wrongful conduct to four of the six named defendants. *Second*, Relator fails to plead with particularity any allegedly fraudulent conduct by PPFA, which does not provide healthcare services or submit claims for Medicaid reimbursement. *Third*, Relator fails to plead with particularity that any defendant submitted a false claim for payment. Each of these pleading defects independently requires dismissal.

### A.     Relator's Blanket Assertions Regarding Conduct by "Planned Parenthood" Are Insufficient Under Rule 9(b)

A FCA claim asserted against multiple defendants must include specific and separate allegations regarding the fraudulent or illegal conduct of each named defendant. *U.S. ex rel. Hebert v. Dizney*, 295 F. App'x 717, 722 (5th Cir. 2008); *see also U.S. ex rel. Hendrickson v. Bank of America, N.A.*, 343 F.Supp.3d 610, 633–35 (N.D. Tex. 2018) (dismissing FCA complaint filed against sixteen defendants because relator failed to distinguish between each

defendant).  An allegation "aimed at 'defendants' as a whole, rather than . . . any . . . specific defendant . . . constitutes impermissible group pleading under Rule 9(b)." *Sheppard v. Liberty Mut. Ins. Co.*, No. CV 16-2401, 2016 WL 6807400, at *3 (E.D. La. Nov. 17, 2016).  Similarly, attributing "discrete actions . . . to [all] defendants without explaining the basis for such grouping or distinguishing between the relevant conduct" is improper under Rule 9(b).  *United States v. Lakeway Reg'l Med. Ctr.*, No 19-cv-945, 2020 WL 6146571, at *2 (W.D. Tex. Feb. 13, 2020).  "[I]nstead, a plaintiff must plead specific facts describing the fraud allegedly committed by *each defendant*."  *Alford v. Chevron U.S.A. Inc.*, 13 F. Supp. 3d 581, 594 (E.D. La. 2014) (emphasis added).  That is true even if the complaint alleges that the defendants are affiliated entities.  *E.g.*, *United States v. Dental Health Programs, Inc.*, No. 18-cv-463, 2020 WL 3064712, *6 (N.D. Tex. Jun. 8, 2020); *United States v. BNP Paribas SA*, 884 F. Supp. 2d 589, 614 (S.D. Tex. 2012).

Here, the only entities to which Relator specifically attributes any wrongful conduct are PPGC and PPFA.  *See, e.g.*, Relator Compl. ¶¶ 72-78, 87-90, 100-105.  Relator otherwise simply lumps all defendants together as "Planned Parenthood."  *See, e.g. id.* ¶ 3 ("From at least 2010 and continuing through 2020, Planned Parenthood Defendants presented or caused to be presented . . . ."), *id.* ¶ 63 ("Upon information and belief, . . . Planned Parenthood abortion clinics began providing fetal tissue to researchers and/or procurement companies, including Planned Parenthood clinics in  . . . Texas."); *id.* ¶ 115 ("By submitting Medicaid claims . . . without disclosing their violations . . . the Planned Parenthood Defendants' claims constituted misrepresentations.").  That falls woefully short of Rule 9(b)'s high bar.  *See U.S. ex rel. Park v. Legacy Heart Care, LLC*, No. 16-cv-803, 2018 WL 5313884, *5 (N.D. Tex. Oct. 26, 2018) (dismissing claims against defendant where "Relator d[id] not allege any specific fraudulent or illegal conduct attributable to [that defendant]" and did "not offer one factual allegation specifically linked [him] to the fraudulent

scheme aside from his" affiliation with other defendant).  Accordingly, claims against PPGT, PPST, PP Cameron County, and PP San Antonio should be dismissed under Rule 9(b).

**B.    Relator's Allegations Against PPFA Do Not Satisfy Rule 9(b)**

Relator does not allege that PPFA provides healthcare services or that it ever submitted a bill to Texas or Louisiana Medicaid.  Instead, Relator alleges that PPFA is liable for the acts of its affiliates because it "directed and participated in affiliates' wrongdoing."  Relator Compl. ¶ 100. But Relator does not plead any facts showing *how* PPFA allegedly did so, let alone with the particularity required by Rule 9(b).

That rule requires a relator to plead the "who, what, when, where, and how of the alleged fraud."  *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997).  Here, Relator does not allege who from PPFA allegedly directed and participated in an affiliate's alleged wrongdoing, what specific actions PPFA took, when it took them, or where it took them.  As to the "how," Relator vaguely alleges that "PPFA policies, including those on research programs and fetal tissue donation, apply to all affiliates"; "PPFA approves all affiliate research programs"; and "PPFA . . . sets the medical standards and guidelines each affiliate is required to comply with."  Relator Compl. ¶ 101.  But Relator does not plead the content of those supposed policies, whether Affiliate Defendants complied with them, or how the policies caused conduct that supposedly violated state and federal law and medical and ethical standards.

Relator's additional allegations related to PPFA have nothing to do with its alleged direction of and participation in Affiliate Defendants' alleged conduct.  Relator alleges that PPFA falsely stated before the Senate Judiciary Committee that only four affiliates engaged in fetal tissue donation.  *Id.* ¶ 102.  Setting aside whether PPFA's statement was true or false, it is entirely surplusage and provides no basis to impose liability on PPFA for the reimbursement claims Affiliate Defendants submitted to State Medicaid programs.  Relator also takes issue with PPFA's

tissue donation form, which allegedly states that "no changes will be made to the abortion procedure" to facilitate fetal tissue collection, an even more exacting standard than the federal requirement to make no "substantive" changes. *See id.* ¶ 103 (citing 42 U.S.C. § 289g-1(b)(2)(A)(ii)). And finally, Relator complains that PPFA has falsely characterized his "undercover videos" as misleading and heavily edited. *Id.* ¶ 104. Whatever the merit of these assertions, they do not show that PPFA directed and controlled its affiliates' activities with respect to their submission of reimbursement requests to Texas and Louisiana Medicaid.[13] For these reasons, Relator's allegations against PPFA are deficiently pled and should be dismissed.

### C.   Relator Fails to Plead the Presentment of a False Claim With Particularity

As noted above, the Fifth Circuit has "traditionally required that a fraud complaint include the time, place, and contents of the false representation, as well as the identity of the person making the misrepresentation and what that person obtained thereby." *Grubbs*, 565 F.3d at 188. The Fifth Circuit has adapted that requirement for one element of a relator's prima facie case under the FCA – presentment of a false claim to the government. It has held that if the relator "cannot allege the details of an actually submitted false claim, [he] may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to strong inference

---

[13] To the extent Relator seeks to hold PPFA liable for the acts of its affiliates based on their mere relationship to one another, he runs afoul of bedrock principles. Even a corporate parent is not held liable for the acts of a subsidiary, without specific allegations that the parent caused the subsidiary's actions. *U.S. ex rel. Haight v. RRSA (Commercial Div.), LLC*, No. 16-cv-1975, 2020 WL 6163139, *4 & n.10 (N.D. Tex. Oct. 20, 2020). And PPFA is not a corporate parent nor are the affiliates its subsidiaries, and Relator does not even allege that to be the case. Relator includes no allegations describing the structure of the Planned Parenthood federation and how precisely PPFA "controls" the affiliates except in the vaguest terms. This is not out of ignorance about the organization's structure, because, as already discussed with respect to the public disclosure bar, it is a matter of public record that the affiliates are "separate organizations," which belong to PPFA, a "membership organization that develops medical and organizational standards to which its affiliates must adhere in order to operate under the Planned Parenthood name and use the Planned Parenthood mark." *Planned Parenthood of Greater Texas*, 236 F. Supp. 3d at 979, *vacated on other grounds*, 981 F.3d 347 (5th Cir. 2020).

that claims were actually submitted." *Id.* at 190.  In other words, a non-insider relator may not be required to identify the specific dates when claims were submitted to the government or the amounts billed.  *See id.* at 189.  *Grubbs* does not, however, "absolve[] *qui tam* relators of the heightened pleading requirements under Rule 9(b)," and in fact "reaffirms the importance of Rule 9(b) in FCA claims." *Nunnally*, 519 F. App'x at 893; *see also Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (relaxed Rule 9(b) pleading standard "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations" (citation omitted)).

Relator fails to adequately allege the presentment of a false claim even under the *Grubbs* standard.  Relator offers the conclusory assertion that "[f]rom at least 2010 and continuing through 2020, Planned Parenthood Defendants presented or caused to be presented thousands of false or fraudulent claims for payment for Medicaid services."  Relator Compl. ¶ 3.  Relator does not provide examples of any specific false claims, so he must provide "reliable indicia that lead to a strong inference that false claims were actually submitted." *Grubbs*, 565 F.3d at 190.  As discussed, Relator's theory is that "Planned Parenthood" violated laws related to fetal tissue donation and the failure to disclose those violations rendered every Medicaid reimbursement request impliedly false.  Setting aside whether that is a viable FCA theory, Relator does not plead the facts to support it.  Relator identifies only one defendant (PPGC) that he alleges ever participated in fetal tissue donation.  *See* Relator Compl. ¶ 87.  And Relator identifies only one study, which he alleges occurred in 2010 and 2011, for which PPGC allegedly provided fetal tissue. *Id.*  This lone allegation of a single violation of federal law that allegedly occurred, at least in part, outside of the FCA's statute of limitations, *see* 31 U.S.C. § 3731(b), does not provide reliable indicia that every claim PPGC submitted for the next decade was false, let alone the claims of other Affiliate Defendants.  *See U.S. ex rel. Folliard v. Comstor Corp.*, 308 F. Supp. 3d 56, 92

(D.D.C. 2018) (dismissing FCA claim under Rule 9(b) because allegations of fraud "should cover the relevant time period" and relator "provided no particularized allegations regarding purported fraudulent transactions from before [a certain date]").  The Court should dismiss Count I.

**V.      Relator's State Law Claims (Counts III, IV, and V) Also Should Be Dismissed**

Relator's claims under the Texas Medicaid Fraud Prevention Act and the Louisiana Medical Assistance Programs Integrity Law (Counts III and IV) should be dismissed for the same reasons discussed above:  they are barred by the state public disclosure bars and Relator fails to plausibly or particularly plead the elements of a violation of those laws.  *See United States v. Dental Health Programs, Inc.*, No. 18-cv-463, 2021 WL 3213709, at *7 (N.D. Tex. July 29, 2021) ("[T]he Fifth Circuit and several federal district courts have considered TMFPA claims analogous to claims brought under the FCA."); *U.S. ex rel. Bonin v. Cmty. Care Ctr. of St. Martinville, LLC*, No. 05-cv-1005, 2008 WL 2113055, at *7 n.4 (W.D. La. May 16, 2008) (Louisiana FCA is construed consistently with its "federal counterpart"); *see also Williams v. WMX Technologies., Inc.,* 112 F.3d 175, 177 (5th Cir.1997) (claims under state FCA analogs are subject to Rule 9(b)).

Relator's Texas law claims also should be dismissed for two additional reasons.  *First*, Texas has intervened as to Count III, and Relator cannot pursue that claim separately from the State.  *See* Tex. Hum. Res. Code Ann. § 36.107 ("If the state proceeds with the action, the state has the primary responsibility for prosecuting the action . . . . The person bringing the action has the right to continue as a party to the action, subject to [] limitations . . . .").

*Second*, Relator's Texas law claim is statutorily barred under the jurisdictional "government action bar."  That bar prevents private parties from bringing *qui tam* actions "based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party."  Tex. Hum. Res. Code Ann. § 36.113(a).  Administrative "civil money penalty proceedings" include any proceedings

where the government had the "capacity to levy" penalties, even if it "chose not to do so." *U.S. ex rel. Vermont Nat'l Tel. Co. v. Northstar Wireless LLC*, 531 F. Supp. 3d 247, 267 (D.D.C. 2021).

More than four years before Relator filed this case, Texas initiated proceedings to terminate Affiliate Defendants from participation in Medicaid, culminating in an *en banc* decision by the Fifth Circuit. Relator Compl. ¶¶ 9-10. Relator claims credit for unearthing the alleged misconduct underlying those termination proceedings, but the proceedings' very existence bars him from bringing a *qui tam* action under Texas law. *See id.* ¶¶ 6, 84, 91 (alleging that Texas participated in "administrative proceedings" in which "Planned Parenthood's termination from the Texas Medicaid program" allegedly "became final under state law on January 19, 2017"); 1 Tex. Admin. Code §§ 371.11, 371.1715(a) (permitting Texas to "assess administrative penalties").

Alternatively, if the Court dismisses Relator's federal FCA claims, it should decline to exercise supplemental jurisdiction over any remaining state claims. *See Enochs v. Lampasas Cnty.,* 641 F.3d 155, 161 (5th Cir. 2011).

## VI. Relator's Federal Conspiracy to Commit Health Care Fraud Claim (Count V) Should Be Dismissed

Relator's claim under 18 U.S.C. § 1347 must be dismissed because "[a] private party has no right to enforce federal criminal statutes." *Balawajder v. Jacobs*, 220 F.3d 586 (5th Cir. 2000).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss Relator's Complaint in its entirety.

Dated: February 14, 2022

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP


By:   */s/ Craig D. Margolis*
      Craig D. Margolis
      Craig.Margolis@arnoldporter.com

35

Murad Hussain
Murad.Hussain@arnoldporter.com
Tirzah Lollar
Tirzah.Lollar@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.6127
Fax: +1 202.942.5999

Christopher M. Odell
Texas State Bar No. 24037205
Christopher.Odell@arnoldporter.com
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: +1 713.576.2400
Fax: +1 713.576.2499

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 14, 2022, the foregoing document was electronically filed with the Clerk of Court using CM/ECF.

<u>*/s/ Craig D. Margolis*</u>
Craig D. Margolis