**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| United States of America | § | |
| | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| | § | CIVIL ACTION NO. 2:21-CV-00022-Z |
| | § | |
| The State of Texas | § | |
| | § | Date:      February 14, 2022 |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| | § | |
| | § | |
| The State of Louisiana | § | |
| | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
|         Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| Planned Parenthood Federation of America, Inc., | § | |
| Planned Parenthood Gulf Coast, Inc., Planned | § | |
| Parenthood of Greater Texas, Inc., Planned | § | |
| Parenthood South Texas, Inc., Planned Parenthood | § | |
| Cameron County, Inc., Planned Parenthood San | § | |
| Antonio, Inc., | § | |
| | § | |
|         Defendants. | § | |
| | § | |

<u>**MEMORANDUM IN SUPPORT OF DEFENDANTS' COMBINED MOTION TO
DISMISS STATE OF TEXAS' COMPLAINT IN INTERVENTION**</u>

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 3

I.     The Texas Medicaid Program .................................................................................. 3

II.    Procedural History .................................................................................................... 4

III.   Texas' Allegations .................................................................................................... 8

ARGUMENT ..................................................................................................................... 8

I.     Legal Standards ........................................................................................................ 8

       A.     Pleading Standards ........................................................................................ 8

       B.     The Texas Medicaid Fraud Prevention Act ................................................ 10

II.    The Court Should Dismiss Texas' Complaint on the Basis of Judicial Estoppel ............ 10

III.   Texas' Complaint Should Be Dismissed Under Rule 12(b)(6) Because It Fails to
       Plausibly Plead the Elements of a "Reverse" TMFPA Violation ..................................... 13

       A.     Defendants Did Not Have an Obligation to Repay Texas for Medicaid
              Payments Received Between 2017 and 2021 ...................................................... 14

       B.     The Complaint Does Not Plausibly Plead That Defendants Acted Knowingly
              and Improperly ........................................................................................... 16

       C.     The Complaint Does Not Plausibly Plead Materiality ................................ 18

IV.    Texas' Claim Against PPFA Should Be Dismissed Under Rule 9(b) ............................ 19

V.     The Court Lacks Original Subject Matter Jurisdiction Over Texas' State Law
       Claim and It Should Decline to Exercise Supplemental Jurisdiction ............................ 21

CONCLUSION ................................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Aggarao v. MOL Ship. Mgmt. Co.*,
    675 F.3d 355 (4th Cir. 2012) ..................................................15

*Alford v. Chevron U.S.A. Inc.*,
    13 F. Supp. 3d 581 (E.D. La. 2014) ..................................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................8, 9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................8

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*,
    447 F.3d 411 (5th Cir. 2016) ..................................................20

*Cell Sci. Sys. Corp. v. La. Health Serv.*,
    804 F. App'x 260 (5th Cir. 2020) ..................................................10

*Cicalese v. Univ. of Tex. Med. Branch*,
    456 F. Supp. 3d 859 (S.D. Tex. 2020) ..................................................9

*Club Escapade 2000, Inc. v. Ticketmaster, L.L.C.*,
    No. 11-cv-166, 2011 WL 5976918 (W.D. Tex. Nov. 29, 2011)..................................................19

*Cox v. Richards*,
    761 F. App'x 244 (5th Cir. 2019) ..................................................4

*Enochs v. Lampasas Cnty.*,
    641 F.3d 155 (5th Cir. 2011) ..................................................21

*Erie R. Co. v. Tompkins*,
    304 U.S. 64 (1938)..................................................19

*Farmer v. Brennan*,
    551 U.S. 825 (1994)..................................................17

*Featherson v. DRRF II SPE, LLC*,
    No. 15-cv-375, 2016 WL 8856642 (W.D. Tex. Sept. 26, 2016) ..................................................11

*Ferrer v. Chevron Corp.*,
    484 F.3d 776 (5th Cir. 2007) ..................................................9

*Funk v. Stryker*,
   631 F.3d 777 (5th Cir. 2011) ..................................................7

*Gray v. Beverly Enters. Miss., Inc.*,
   390 F.3d 400 (5th Cir. 2004) ..................................................4

*Health Choice Group, LLC v. Bayer Corp.*,
   No. 17-cv-126, 2018 WL 3637381 (E.D. Tex. June 29, 2018) .......................9, 19

*In re Superior Crewboats, Inc.*,
   374 F.3d 330 (5th Cir. 2004) ........................................... *passim*

*In re Xerox Corp.*,
   555 S.W.3d 518 (Tex. 2018)..................................................10, 17

*Little v. Shell Expl. & Prod. Co.*,
   690 F.3d 282 (5th Cir. 2012) ..................................................22

*Luna v. Am. Nat'l Ins. Co.*,
   No. 21-cv-64, 2021 WL 1911339 (W.D. Tex. May 12, 2021) ..................................6

*Molinet v. Kimbrell*,
   356 S.W.3d 407 (Tex. 2011)..................................................17

*New Hampshire v. Maine*,
   532 U.S. 742 (2001)..................................................11

*Pharm. Rsch. & Mfrs. of Am. v. Walsh*,
   538 U.S. 644 (2003)..................................................3

*Planned Parenthood of Greater Texas v. Kauffman*,
   981 F.3d 347 (5th Cir. 2020) ..................................................6, 20

*Planned Parenthood of Greater Texas v. Smith*,
   913 F.3d 551 (5th Cir. 2019) ..................................................5

*Planned Parenthood of Greater Texas v. Traylor*,
   236 F. Supp. 3d 974 (W.D. Tex. 2017)..................................................5, 15, 20

*Ramming v. United States*,
   281 F.3d 158 (5th Cir. 2001) ..................................................10

*Rockwell Int'l Corp. v. United States*,
   549 U.S. 457 (2007)..................................................22, 23

*Safeco Ins. Co. of Am. v. Burr*,
   551 U.S. 47 (2007)..................................................17

*Sampson v. Murray*,
    415 U.S. 61 (1974) ........................................................................................................11

*Scott v. Am. Airlines, Inc.*,
    No. 19-cv-688, 2019 WL 7371851 (N.D. Tex. Dec. 31, 2019) ................................11

*Sheppard v. Liberty Mut. Ins. Co.*,
    No. 16-cv-2401, 2016 WL 6807400 (E.D. La. Nov. 17, 2016) ................................20

*Short v. JPMorgan Chase Bank, N.A.*,
    No. 15-cv-1953, 2015 WL 8732206 (N.D. Tex. Nov. 19, 2015) ............................11

*Taylor v. Comhar, Inc.*,
    No. 16-cv-1218, 2022 WL 102334 (E.D. Pa. Jan. 11, 2022)...................................19

*Texas v. EPA*,
    829 F.3d 405 (5th Cir. 2016) ...................................................................................12

*U.S. ex rel. Berg v. Honeywell Int'l, Inc.*,
    740 F. App'x 535 (9th Cir. 2018) ............................................................................19

*U.S. ex rel. Graves v. ITT Educ. Servs., Inc.*,
    284 F. Supp. 2d 487 (S.D. Tex. 2003) .......................................................................9

*U.S. ex rel. Grubbs v. Kanneganti*,
    565 F. 3d 180 (5th Cir. 2009) ....................................................................................9

*U.S. ex rel. Haight v. RRSA (Commercial Div.), LLC*,
    No. 16-cv-1975, 2020 WL 6163139 (N.D. Tex. Oct. 20, 2020) ............................20

*U.S. ex rel. Harman v. Trinity Indus. Inc.*,
    872 F.3d 645 (5th Cir. 2017) ...................................................................................18

*U.S. ex rel. Hebert v. Dizney*,
    295 F. App'x 717 (5th Cir. 2008) ............................................................................20

*U.S. ex rel. Hendrickson v. Bank of America, N.A.*,
    343 F.Supp.3d 610 (N.D. Tex. 2018) ......................................................................20

*U.S. ex rel. Ibanez v. Bristol-Myers Squibb Co.*,
    874 F.3d 905 (6th Cir. 2017) .............................................................................13, 15

*U.S. ex rel. Long v. GSDMIdea City, L.L.C.*,
    798 F.3d 265 (5th Cir. 2015) .........................................................................6, 11, 12, 13

*U.S. ex rel. Longhi v. Lithium Power Techs., Inc.*,
    513 F. Supp. 2d 866 (S.D. Tex. 2007) .....................................................................15

*U.S. ex rel. Petratos v. Genentech, Inc.*,
  855 F.3d 481 (3d Cir. 2017)..................................................................................19

*U.S. ex rel. Porter v. Magnolia Health Plan, Inc.*,
  810 F. App'x 237 (5th Cir. 2020) ...............................................................6, 9, 18

*U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*,
  355 F.3d 370 (5th Cir. 2004) ...................................................................................9

*U.S. ex rel. Schutte v. Supervalu, Inc.*,
  9 F.4th 455 (7th Cir. 2021) ...................................................................................17

*U.S. ex rel. Sheldon v. Allergan Sales, LLC*,
  -- F.4th --, 2022 WL 211172 (4th Cir. Jan. 25, 2022) ........................................17

*U.S. ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*,
  843 F.3d 1033 (5th Cir. 2016) ...............................................................................15

*U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
  125 F.3d 899 (5th Cir. 1997) .................................................................................19

*U.S. ex rel. Vermont Nat'l Tel. Co. v. Northstar Wireless LLC*,
  531 F. Supp. 3d 247 (D.D.C. 2021) .......................................................................22

*U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*,
  336 F.3d 375 (5th Cir. 2003) ...................................................................................9

*U.S. ex rel. Williams v. McKesson Corp.*,
  No. 12-cv-371, 2014 WL 3353247 (N.D. Tex. July 9, 2014).................................10

*United States v. BNP Paribas SA*,
  884 F. Supp. 2d 589 (S.D. Tex. 2012) ...................................................................21

*United States v. Dental Health Programs, Inc.*,
  No. 18-cv-463, 2020 WL 3064712 (N.D. Tex. Jun. 8, 2020).................................20

*United States v. Dental Health Programs, Inc.*,
  No. 18-cv-463, 2021 WL 3213709 (N.D. Tex. July 29, 2021)..........................10, 22

*United States v. Lakeway Reg'l Med. Ctr.*,
  No 19-cv-945, 2020 WL 6146571 (W.D. Tex. Feb. 13, 2020) ...............................20

*United States v. Southland Mgmt. Corp.*,
  326 F.3d 669 (5th Cir. 2003) .................................................................................17

*United States v. Strock*,
  982 F.3d 51 (2d Cir. 2020)......................................................................................15

*Univ. of Texas v. Camenisch*,
  451 U.S. 390 (1981) ...................................................................................................15

*Universal Health Servs., Inc. v. U.S. ex rel. Escobar*,
  579 U.S. 176 (2016) ...................................................................................................18

*Wenner v. Tex. Lottery Comm'n*,
  123 F.3d 321 (5th Cir. 1997) ................................................................................15, 16

*White v. Padgett*,
  475 F.2d 79 (5th Cir. 1973) .........................................................................................11

*Williams v. WMX Tech., Inc.*,
  112 F.3d 175 (5th Cir. 1997) .........................................................................................9

## Statutes

31 U.S.C. § 3729(a)(1)(G) ..................................................................................................10

31 U.S.C. § 3730(e)(3) ......................................................................................................21

42 U.S.C. § 1396A(kk)(8)(B)(ii) .......................................................................................14

Tex. Hum. Res. Code Ann. § 36.001(7-a)(D) ....................................................................13

Tex. Hum. Res. Code Ann. § 36.002(12) ................................................................... *passim*

Tex. Hum. Res. Code Ann. § 36.0011 ...............................................................................17

Tex. Hum. Res. Code Ann. § 36.113(a) .........................................................................17, 21

## Regulations and Rules

1 Tex. Admin. Code Ann. § 371.1703(c)(6) ........................................................................4

1 Tex. Admin. Code Ann. § 371.1703(c)(7) ........................................................................4

1 Tex. Admin. Code Ann. § 371.1703(g) ...........................................................................14

1 Tex. Admin Code Ann. § 371.1703(g)(1) .........................................................................4

1 Tex. Admin Code Ann. § 371.1703(g)(2) .........................................................................4

1 Tex. Admin. Code Ann. § 371.1703(g)(5) ..............................................................4, 14, 18

5th Cir. Rule 41.3 .................................................................................................................5

Fed. R. Civ. P. 9(b) ........................................................................................................ *passim*

Fed. R. Civ. P. 12(b)(1)..................................................................................1, 9

Fed. R. Civ. P. 12(b)(6)............................................................................ *passim*

## Other Authorities

Compl., *Planned Parenthood of Greater Texas v. Traylor*,
   No. 15-CV-01058 (W.D. Tex. Nov. 23, 2015) [Dkt. 1] ............................................4

Order, *In re Planned Parenthood of Greater Texas Family Planning &*
   *Preventative Health Servs., Inc.*,
   No. D-1-GN-21-000528 (Travis Cty. Dist. Ct. Feb. 3, 2021)...................................7

Texas Mot. to Stay Injunction, *Planned Parenthood of Greater Texas Family*
   *Planning & Preventative Health Servs., Inc. v. Smith*,
   No. 17-50282 (5th Cir. Feb. 1, 2019) ...........................................................5, 6, 11

Texas Resp. in Opp'n to Original Petition for Writ of Mandamus, Application for
   Temporary Restraining Order, Temporary Mandatory Injunction, and
   Permanent Mandatory Injunction, *In re Planned Parenthood of Greater Texas*
   *Family Planning & Preventative Health Servs., Inc.*,
   No. D-1-GN-21-000528 (Travis Cty. Dist. Ct. Feb. 23, 2021)...........................7, 12

Pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6), Defendants Planned Parenthood Gulf Coast, Inc. ("PPGC"), Planned Parenthood of Greater Texas, Inc. ("PPGT"), Planned Parenthood South Texas, Inc. ("PPST"), Planned Parenthood Cameron County, Inc. ("PP Cameron County"), Planned Parenthood San Antonio, Inc. ("PP San Antonio") (collectively, "Affiliate Defendants"), and Planned Parenthood Federation of America, Inc. ("PPFA") (all collectively, "Defendants") submit this memorandum in support of their motion to dismiss the State of Texas's Complaint in Intervention ("Texas Complaint") [Dkt. 22].

## **INTRODUCTION**

Texas' Complaint is based on the same flawed theory as Relator Alex Doe's Complaint – that the State may retroactively label fraudulent billings submitted for services rendered while the Affiliate Defendants remained lawful participants in its Medicaid program. That theory is entitled to no more credence simply because it is advanced by the State. Moreover, Texas' foundational allegation – that the State's termination of Affiliate Defendants from Medicaid was effective in 2017 – is flatly contradicted by the State's representations to a Texas state court that the terminations were *not* effective while barred by injunction. Those representations are subject to judicial notice and bind Texas here. Even after a federal injunction was dissolved, the State then allowed a thirty-day grace period and a state court further enjoined the terminations until March 2021, *four years* after the State now claims the terminations became effective. For these reasons, as discussed further below, the Court should dismiss Texas' Complaint.

***First***, the Court should dismiss on the basis of estoppel. In stark contrast to Texas' allegation here that Affiliate Defendants have an "obligation" to repay the State for Medicaid funds received while the federal court injunction was in effect, Texas took the position before the Fifth Circuit that it would be *irreparably harmed* if the injunction was not lifted because it would be forced to continue to pay Affiliate Defendants under Medicaid. Texas could not have made this

1

representation in good faith if it could simply recoup those funds after the injunction dissolved, as it now alleges. Moreover, although Texas alleges here that Affiliate Defendants were terminated from Medicaid effective February 1, 2017, Texas Compl. ¶ 37, Texas argued in state court mandamus proceedings that Affiliate Defendants' termination became effective *after* the Fifth Circuit vacated the injunction, which was not until November 2020 at the earliest. The State thereby conceded a termination is not "effective" while barred by a pending injunction. Texas should not be permitted to "play[] fast and loose with the courts to suit the exigencies of self-interest." *See In re Superior Crewboats, Inc.*, 374 F.3d 330, 334 (5th Cir. 2004).

*Second*, Texas' Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because it fails to plausibly allege the essential elements of a Texas Medicaid Fraud Prevention Act ("TMFPA") claim. Texas has not plausibly pled that Affiliate Defendants had an "obligation" to return payments received through Texas Medicaid between 2017 and 2021 because Affiliate Defendants remained in the Medicaid program for that entire time. *See* Tex. Hum. Res. Code Ann. § 36.002(12). Texas' theory that Affiliate Defendants' terminations were effective as of 2017 ignores critical events: a federal district court injunction that expressly let Affiliate Defendants continue providing and billing for Texas Medicaid services; Texas Medicaid's allowance of a "grace period" after the dissolution of that injunction; and a temporary restraining order ("TRO") entered by a Texas state court. Only after all of these events did the terminations become "effective," and Texas has not alleged a single billing after that date nor has it identified a legal or factual obligation to return monies billed before the terminations were effective. Texas' Complaint also fails to plead scienter, because it was objectively reasonable for Affiliate Defendants to rely on duly-issued orders by state and federal courts in conforming their conduct to the law. And finally, Texas fails to plausibly plead materiality because Texas Medicaid officials

never took steps to recoup the payments that the Texas Attorney General's Office now alleges were owed.

*Third*, Texas fails to plead a TMFPA claim against PPFA with the particularity required by Rule 9(b) because it does not allege how PPFA, which never submitted a bill to Medicaid, is liable for its affiliates' alleged retention of an overpayment.

*Fourth*, the Court lacks original subject matter jurisdiction over Texas' state law claim. If the Court dismisses Relator's Complaint, it should then adopt the usual practice in this Circuit and decline to exercise supplemental jurisdiction over any remaining state law claims.

For all of these reasons, the Court should dismiss Texas' Complaint.

## BACKGROUND

## I.     The Texas Medicaid Program

The Medicaid program "authorizes federal financial assistance to states that choose to reimburse certain costs of medical treatment for needy persons." *Pharm. Rsch. & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 650 (2003). The Medical Assistance Program in Texas, commonly referred to as Texas Medicaid, was created to provide assistance to low-income individuals and families in Texas. Texas Compl. ¶ 28. The Texas Health and Human Services Commission ("HHSC") administers the Texas Medicaid program. *Id.* ¶ 29.

In Texas, health care providers may service Medicaid patients after executing a Medicaid Provider Agreement, which states that a provider must agree to comply with the requirements of the Texas Medicaid program as set out in Texas' Provider Manual and "state and federal laws governing or regulating Medicaid." *Id.* ¶¶ 30-33 & Ex. 2. Affiliate Defendants executed Provider Agreements with Texas to provide healthcare services to Medicaid patients throughout the State. *Id.* ¶ 19.

Texas may terminate a Medicaid Provider Agreement if it determines "prima facie evidence" exists that a provider committed a "program violation" or is "affiliated with a person who commits a program violation." 1 Tex. Admin. Code Ann. §§ 371.1703(c)(6), (7). A provider's "agreement or contract is nullified on the *effective date* of the termination." 1 Tex. Admin Code Ann. § 371.1703(g)(1) (emphasis added). "*Once a person's agreement or contract is terminated* . . . , no items or services . . . are reimbursed by the Medicaid . . . program during the period of termination." *Id.* § 371.1703(g)(2) (emphasis added). "If, *after the effective date* of the termination, [that provider] submits or causes to be submitted claims for services or items furnished within the period of termination . . . , the person may be liable to repay any submitted claims or subject to a civil monetary penalty . . . and criminal liability . . . in addition to sanctions or penalties by the [Office of Inspector General ("OIG")]." *Id.* § 371.1703(g)(5) (emphasis added).

## II.    Procedural History

On October 15, 2015, the Texas HHSC-OIG issued an initial notice to terminate Affiliate Defendants from Texas Medicaid. Texas Compl. ¶ 4. Affiliate Defendants and Medicaid patients promptly filed suit in federal court seeking to enjoin Affiliate Defendants' termination from Medicaid  *See* Compl., *Planned Parenthood of Greater Texas v. Traylor*, No. 1:15-CV-01058 (W.D. Tex. Nov. 23, 2015) [Dkt. 1].[1]

In January 2016, Texas advised the court that the lawsuit was premature because Texas "had not yet actually decided termination was in order." *Planned Parenthood of Greater Texas v.*

---

[1] Defendants are not seeking summary judgment at this time. However, a party may refer to certain information outside the bounds of the complaint on a motion to dismiss without converting it to one for summary judgment. For example, "[a] district court may take judicial notice of public records without converting a Rule 12(b)(6) motion into a motion for summary judgment." *Cox v. Richards*, 761 F. App'x 244, 248 (5th Cir. 2019) (district court properly considered publicly available records from bankruptcy proceeding); *see also Gray v. Beverly Enters. Miss., Inc.*, 390 F.3d 400, 407 n.7 (5th Cir. 2004) (may take judicial notice of another court's judicial action).

*Traylor*, 236 F. Supp. 3d 974, 985-86 (W.D. Tex. 2017) (citing Letter to Court (Jan. 14, 2016) [Dkt. 38]).  Based on that representation, the court stayed the case pending issuance of a final termination notice.  *Id.* at 986 (citing Order (Jan. 27, 2016) [Dkt. 42]).

Nearly a year later, on December 20, 2016, Texas issued a Final Notice of Termination to each Affiliate Defendant.  Texas Compl. ¶ 4.  On January 4, 2017, Affiliate Defendants moved for a TRO and preliminary injunction to prevent their termination from the Texas Medicaid program. *Planned Parenthood of Greater Texas*, 236 F. Supp. 3d at 987 (citing Mot. Prelim. Inj. (Jan. 4, 2017) [Dkt. 58]).  The court issued a TRO on January 19, 2017, prohibiting the termination of Affiliate Defendants until February 21, 2017.  *Id.* (citing Order (Jan. 19, 2017) [Dkt. 84]).  On February 21, the court entered a preliminary injunction, prohibiting Texas "from terminating the [Affiliate Defendants'] Medicaid Provider Agreements," and ordered that the injunction would remain in effect "until further ordered."  *Id.* at 1000; *see also* Texas Compl. ¶ 5.

Texas appealed.  In January 2019, the Fifth Circuit vacated the preliminary injunction holding that the district court had not applied the correct standard of review.  *See Planned Parenthood of Greater Texas v. Smith*, 913 F.3d 551, 554 (5th Cir. 2019).  In February 2019, the Fifth Circuit *sua sponte* granted rehearing *en banc*, thereby vacating the prior panel decision, *see* 5th Cir. Rule 41.3, to decide whether Medicaid beneficiary plaintiffs had the ability to enforce Medicaid's Free Choice of Provider provision through a private right of action.  Texas (in a brief authored by Relator's counsel in this case) filed a motion to stay the district court's injunction pending the Fifth Circuit's *en banc* decision.  Ex. A, Texas Mot. to Stay Injunction, *Planned Parenthood of Greater Texas Family Planning & Preventative Health Servs., Inc. v. Smith*, No. 17-50282 (5th Cir. Feb. 1, 2019) ("Texas Stay Mot.").  Texas stated that "[u]nder the district court's injunctive relief, which was issued in January 2017, the State has been forced to retain

[Affiliate Defendants] as *qualified Medicaid providers* and allow them to provide medical services to Texas Medicaid recipients." *Id.* at 3 (emphasis added).[2]  Texas further stated that it "has already been forced to pay [Affiliate Defendants] millions of dollars in Medicaid service reimbursement funds." *Id.*  Texas sought a stay of the injunction on the basis that it would be *irreparably harmed* if "forced [to] continue to pay [Affiliate Defendants] for Medicaid services" for the period that Affiliate Defendants "remain forcibly qualified Medicaid providers." *Id.* at 10-11.  And Texas argued "[t]here is no justification for continuing to *prevent the State from terminating these providers*" since a Fifth Circuit panel had concluded the district court erred in entering the injunction. *Id.* at 11 (emphasis added).  In November 2020, the Fifth Circuit held that no private right of action exists and vacated the preliminary injunction.  *Planned Parenthood of Greater Texas v. Kauffman*, 981 F.3d 347 (5th Cir. 2020).

On December 14, 2020, Affiliate Defendants asked Texas Medicaid officials to reconsider the State's termination decision, or, in the alternative, to grant a ninety-day grace period for Medicaid beneficiaries to find new providers.  Texas Compl. ¶ 6.  Texas denied the reconsideration request but granted a thirty-day grace period, through February 3, 2021, permitting Affiliate Defendants to continue providing services to existing Medicaid patients.  *Id.*; Ex. B, Letter from Ray to Lambrecht (Jan 4, 2021).[3]

---

[2] Although the Court cannot take judicial notice of Texas' filing to prove the truth of the statements therein, the Court can take judicial notice of the fact that Texas made the statements for purposes of applying judicial estoppel.  *See U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 274 & n.8 (5th Cir. 2015) (district court properly took judicial notice of fact that party had made certain representations in prior bankruptcy filings).

[3] The Court may consider the letter on a motion to dismiss because it is incorporated into Texas' Complaint.  *See U.S. ex rel. Porter v. Magnolia Health Plan, Inc.*, 810 F. App'x 237, 241 (5th Cir. 2020).  The Court may also take judicial notice of official government correspondence because it generally is "not . . . subject to reasonable dispute."  *Luna v. Am. Nat'l Ins. Co.*, No. 21-cv-64,

On February 3, 2021, Affiliate Defendants filed a mandamus request and motion for TRO in Travis County District Court.  Texas Compl. ¶ 7.  The state court issued a TRO enjoining Texas "from directly or indirectly terminating or otherwise interfering with [Affiliate Defendants'] participation in the Medicaid program."  *Id.*  The court ruled that "[t]he status quo between the OIG, HHSC, and [Affiliate Defendants] is that such [Affiliate Defendants] continue to participate in the Medicaid program."  Ex. C, Order, *In re Planned Parenthood of Greater Texas Family Planning & Preventative Health Servs., Inc.*, No. D-1-GN-21-000528 (Travis Cty. Dist. Ct. Feb. 3, 2021).  The TRO was extended twice.  Texas Compl. ¶ 7.

On February 23, 2021, Texas filed a response in opposition to Affiliate Defendants' mandamus petition and TRO request.  *See* Ex. D, Texas Resp. in Opp'n to Original Petition for Writ of Mandamus, Application for Temporary Restraining Order, Temporary Mandatory Injunction, and Permanent Mandatory Injunction, *In re Planned Parenthood of Greater Texas Family Planning & Preventative Health Servs., Inc.*, No. D-1-GN-21-000528 (Travis Cty. Dist. Ct. Feb. 23, 2021) ("Texas Mandamus Opp.").  In defending its decision not to grant Affiliate Defendants relief beyond the grace period, Texas stated that "[b]ut for the federal-court injunction, Planned Parenthood would have ceased receiving Medicaid reimbursements in 2017."  *Id.* at 13.  "*After* the Fifth Circuit vacated the injunction, there was nothing *barring the effectiveness* of the terminations," *id.*, and so "the terminations *became immediately effective* once the mandate issued."  *Id.* at 6-7 (emphases added).  On March 12, 2021, the state court denied Affiliate Defendants' mandamus request; Affiliate Defendants did not appeal.  Texas Compl. ¶ 7; Ex. 1.

---

2021 WL 1911339, at *4 (W.D. Tex. May 12, 2021); *see Funk v. Stryker*, 631 F.3d 777, 782-83 (5th Cir. 2011) (affirming district court's taking judicial notice of FDA letter).

Affiliate Defendants "continued to submit requests for reimbursement by Texas Medicaid and continued to receive payments from Texas Medicaid during the pendency of the federal court action and the State court action."  *Id.* ¶ 8.  Texas does not allege that the HHSC-OIG attempted to recoup Medicaid payments from the Affiliate Defendants received between the issuance of the final notice of termination and the state court's March 12, 2021 order.

Relator filed a *qui tam* action under seal on February 5, 2021.  Texas intervened as to the TMFPA claim on January 6, 2022.

## III.   Texas' Allegations

Texas alleges that Affiliate Defendants were "effectively terminated from Texas Medicaid, at the latest, by February 1, 2017," and thus were "not entitled to retain reimbursements from Texas Medicaid for services delivered after February 1, 2017."  Tex. Compl. ¶ 37.  Texas further alleges that Affiliate Defendants were "obligated to repay Texas Medicaid dollars that [they] received in [those] reimbursements to which [they] w[ere] not entitled."  *Id.*  Texas alleges that because Affiliate Defendants did not do so, they violated the reverse false claims provision of the TMFPA, which prohibits a person from "knowingly and improperly avoid[ing] an obligation to pay or transmit money . . . to the State under the Medicaid program."  *Id.* ¶¶ 38-39 (citing Tex. Hum. Res. Code Ann. § 36.002(12)).

## ARGUMENT

## I.   Legal Standards

### A.   Pleading Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This means that the plaintiff's allegations must allow the court to "draw the reasonable inference that the defendant is liable for the

misconduct alleged"; it is not enough for a complaint to raise only the "possibility" that the defendant acted unlawfully. *Iqbal*, 556 U.S. at 678.

Although this Court must view the allegations in the light most favorable to Texas, it should not accept legal conclusions couched as facts, "conclusory allegations," or "unwarranted deductions of fact." *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (citation omitted); *see also Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). Nor should it accept allegations that are contradicted by documents Texas incorporates into its Complaint, *U.S. ex rel. Graves v. ITT Educ. Servs., Inc.*, 284 F. Supp. 2d 487, 494 (S.D. Tex. 2003), *aff'd*, 111 F. App'x 296 (5th Cir. 2004), or documents fairly subject to judicial notice, *Cicalese v. Univ. of Tex. Med. Branch*, 456 F. Supp. 3d 859, 871-72 (S.D. Tex. 2020). If an allegation is contradicted by such documents, even on a motion to dismiss, "then indeed the [document] and not the allegation controls." *Porter*, 810 F. App'x at 241 (quoting *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004)).

In addition, fraud claims are subject to Rule 9(b)'s heightened pleading requirement, which requires a plaintiff to state "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *U.S. ex rel. Grubbs v. Kanneganti*, 565 F. 3d 180, 185 (5th Cir. 2009). Rule 9(b) applies to complaints alleging violations of the TMFPA. *Health Choice Group, LLC v. Bayer Corp.*, No. 17-cv-126, 2018 WL 3637381, at *55 (E.D. Tex. June 29, 2018) ("Like federal FCA claims, state law FCA claims are also subject to Rule 9(b)." (citing *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)).

Because the TMFPA's government action bar is jurisdictional, Defendants bring that part of this motion pursuant to Federal Rule of Civil Procedure 12(b)(1). "On a Rule 12(b)(1) motion to dismiss, the party asserting jurisdiction bears the burden of proving that jurisdiction exists."

*Cell Sci. Sys. Corp. v. La. Health Serv.*, 804 F. App'x 260, 262 (5th Cir. 2020) (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

### B. The Texas Medicaid Fraud Prevention Act

The TMPFA imposes liability on any person who "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to this state under the Medicaid program. " Tex. Hum. Res. Ann. § 36.002 (12). This provision mirrors the "reverse false claim" provision of the federal False Claims Act ("FCA"). *See* 31 U.S.C. § 3729(a)(1)(G). As the Texas Supreme Court has recognized, the TMFPA is "'analogous' to the federal FCA, explaining that the statutes 'are similar in aim and tactic,'" despite the TMFPA's ability to "reach[] a broader range of false or fraudulent conduct less closely tied to the Medicaid claim submission process." *United States v. Dental Health Programs, Inc.*, No. 18-cv-463, 2021 WL 3213709, at *7 (N.D. Tex. July 29, 2021) (quoting *In re Xerox Corp.*, 555 S.W.3d 518, 535 (Tex. 2018)). Courts have thus applied the FCA's "well-defined legal requirements" to TMFPA claims. *U.S. ex rel. Williams v. McKesson Corp.*, No. 12-cv-371, 2014 WL 3353247, at *4 (N.D. Tex. July 9, 2014); *see also Dental Health*, 2021 WL 3213709, at *7 (collecting cases).

## II.   The Court Should Dismiss Texas' Complaint on the Basis of Judicial Estoppel

The Court should dismiss Texas' Complaint because Texas is barred by the doctrine of judicial estoppel from asserting that (1) Affiliate Defendants have an "obligation" to repay amounts they received through Medicaid while the district court's injunction was in effect, and (2) Affiliate Defendants were terminated from Medicaid in 2017. And without those allegations, Texas has no case.

"Judicial estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation." *Superior Crewboats*, 374 F.3d at 334. Its purpose is "to protect the integrity of the judicial process by preventing parties from playing fast and loose with

the courts." *Id.*  Although judicial estoppel is ordinarily an affirmative defense, it should be applied "at the motion-to-dismiss stage" where the basis for it "appears on the face of the pleadings and in judicially noticeable facts." *Long*, 798 F.3d at 275 (citing *New Hampshire v. Maine*, 532 U.S. 742, 745 (2001)); *see also White v. Padgett*, 475 F.2d 79, 82 (5th Cir. 1973) (claim "subject to dismissal under Rule 12(b)(6) . . . when [an] affirmative defense clearly appears on the face of the complaint"); *see, e.g.*, *Superior Crewboats*, 374 F.3d at 334 (reversing and remanding denial of motion to dismiss and ordering dismissal based on judicial estoppel); *Scott v. Am. Airlines, Inc.*, No. 19-cv-688, 2019 WL 7371851 (N.D. Tex. Dec. 31, 2019) (granting motion to dismiss based on judicial estoppel); *Featherson v. DRRF II SPE, LLC*, No. 15-cv-375, 2016 WL 8856642 (W.D. Tex. Sept. 26, 2016) (same); *Short v. JPMorgan Chase Bank, N.A.*, No. 15-cv-1953, 2015 WL 8732206 (N.D. Tex. Nov. 19, 2015) (same).

Judicial estoppel is appropriate with respect to Texas' two core allegations in this case. *First,* Texas alleges that Affiliate Defendants were "obligated to repay to Texas Medicaid dollars that [they] received in reimbursements" after February 1, 2017, Texas Compl. ¶ 37, and Affiliate Defendants "identified, or should have identified, the overpayment" after the state court mandamus decision.  *Id.* ¶ 40.  But Texas' position is flatly contrary to the position it previously took before the Fifth Circuit.  Texas acknowledged in moving to stay the district court injunction that it "forced the State to retain [Affiliate Defendants] as qualified Medicaid providers and allow them to provide medical services to Texas Medicaid recipients."  Ex. A, Texas Stay Mot. at 3.  Texas argued it would be *irreparably harmed* if it was "forced to continue to pay [Affiliate Defendants] for Medicaid services" while they "remain forcibly qualified Medicaid providers."  *Id.* at 10-11.  Of course, Texas' harm would not have been irreparable if it could simply recoup those funds after the district court's injunction lifted.  *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("[m]ere

11

injuries . . . in terms of money . . . expended in the absence of a stay are not enough" to demonstrate irreparable harm); *Texas v. EPA*, 829 F.3d 405, 433-34 (5th Cir. 2016) (finding harm irreparable because "[n]o mechanism here exists for the [petitioners] to recover the compliance costs they will incur if the [challenged action] is invalidated on the merits").  Having taken this position before the Fifth Circuit, Texas cannot now allege that Affiliate Defendants have an obligation that Texas previously acknowledged does not exist.

*Second*, Texas alleges that Affiliate Defendants were "effectively terminated from Texas Medicaid . . . by February 1, 2017," Texas Compl. ¶ 37, and "knew or should have known" that their terminations were effective as of that date, *id.* ¶¶ 8, 9.  But Texas previously told a state court, in a proceeding to which Affiliate Defendants were parties, that the terminations did not become effective until years later, after the federal court injunction had been lifted.  Ex. D, Texas Mandamus Opp. at 6-7 ("terminations *became immediately effective* once the mandate issued" in 2020) (emphasis added); *id.* at 13 ("*After* the Fifth Circuit vacated the injunctions, there was nothing *barring the effectiveness* of the terminations.") (emphases added).  There is no indication that Texas "act[ed] inadvertently" in making representations to the state court; indeed, Texas repeated its position as to the effective termination date throughout its state court filing.  *See Long*, 798 F.3d at 271-72.  To permit Texas to then pursue a fraud claim against Affiliate Defendants premised on the February 2017 effective termination date flies in the face of its own representations to a state tribunal that the terminations were not effective while an injunction barring them remained in place.

This is precisely the type of case for which the doctrine of judicial estoppel was fashioned – "where intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice."  *Superior Crewboats*, 374 F.3d at 334-35 (citation

omitted).  Texas here "has asserted . . . legal position[s] which [are] plainly inconsistent with [its] prior position[s]," *Long*, 798 F.3d at 271-72, and it should be estopped from taking inconsistent positions "to suit the exigencies of self interest."  *See Superior Crewboats, Inc.*, 374 F.3d at 334. This alone warrants dismissal.

## III.   Texas' Complaint Should Be Dismissed Under Rule 12(b)(6) Because It Fails to Plausibly Plead the Elements of a "Reverse" TMFPA Violation

Like the federal FCA, the TMFPA imposes liability on any person who "knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to [Texas] under the Medicaid program."  Tex. Hum. Res. Code Ann. § 36.002(12).  "The term 'obligation' means an established duty, whether or not fixed, arising from the retention of any overpayment."  *Id.* § 36.001(7-a)(D).  To state a claim under this TMFPA provision, Texas must "provide facts showing defendants were under an affirmative obligation to [repay] the government."  *U.S. ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 917 (6th Cir. 2017) (interpreting federal FCA). It has failed to do so, and thus its Complaint should be dismissed.

Like Relator in his federal *qui tam* case, Texas alleges that Affiliate Defendants violated the TMPFA by failing to repay reimbursements they received through Medicaid after the dates on which their terminations from the Texas Medicaid programs became "final" under state law.  Texas Compl. ¶ 41.  Texas' claim fails for the simple reason that Defendants had no obligation to repay Medicaid for reimbursements received for services rendered while they remained in the Texas Medicaid program, which, because of federal and state court injunctions and the State's own allowance of a grace period, was not until March 12, 2021.  Texas does not allege that Defendants billed Medicaid after that date.  There is no legal basis for Texas' theory that the lifting of the injunctions retroactively rendered false claims that Defendants submitted while they remained in Medicaid.  Texas also fails to plausibly plead scienter because Defendants acted objectively

13

reasonably in relying on the injunctions (and an extension granted by Texas Medicaid officials) in conforming their conduct to the law. Finally, Texas fails to plead materiality because Texas Medicaid officials made no effort to recoup Medicaid payments made to Affiliate Defendants.

### A. Defendants Did Not Have an Obligation to Repay Texas for Medicaid Payments Received Between 2017 and 2021

Although Texas initiated proceedings to terminate Affiliate Defendants from Medicaid in October 2015, Texas admits that a federal court order "enjoin[ed] the State from terminating [Affiliate Defendants'] Medicaid provider agreements" from January 2016 to December 2020. Texas Compl. ¶ 5. Texas further admits that, on January 4, 2021, it voluntarily granted a thirty-day grace period to allow Affiliate Defendants to transition their patients to another Medicaid provider. *Id.* ¶ 6. And finally, Texas admits that before the grace period expired, a Texas state court "enjoin[ed] HHSC-OIG 'from directly or indirectly terminating or otherwise interfering with [Affiliate Defendants'] participation in the Medicaid program'" until March 12, 2021. *Id.* ¶ 7. Despite Texas' admissions that Affiliate Defendants remained in Texas Medicaid until March 12, the State nonetheless alleges that it was unlawful for Affiliate Defendants to retain those payments after March 12. Texas' position flies in the face of the TMFPA's plain language and Fifth Circuit precedent, not to mention fundamental fairness and due process.

A healthcare provider who enters into an approved Medicaid Provider Agreement with a participating State remains a Medicaid-eligible provider unless and until that agreement is terminated. 42 U.S.C. § 1396A(kk)(8)(B)(ii); 1 Tex. Admin. Code Ann. § 371.1703(g). Providers operating under a Medicaid Provider Agreement may submit claims for payment until the effective date of their termination. 1 Tex. Admin. Code Ann. § 371.1703(g)(5). Because Affiliate Defendants remained in Texas Medicaid until March 12, 2021, it was lawful to bill Medicaid for services provided. Those claims for payment were not false. *See United States v. Southland Mgmt.*

14

*Corp.*, 326 F.3d 669, 674-75 (5th Cir. 2003) (en banc) ("It is only those claims for money or property to which a defendant is not entitled that are 'false' for purposes of the False Claims Act."); *see also U.S. ex rel. Longhi v. Lithium Power Techs., Inc.*, 513 F. Supp. 2d 866, 880 (S.D. Tex. 2007) ("falsity of a claim is determined at the time of submission").  Nor did Affiliate Defendants have any "obligation" to repay amounts that were lawfully billed and paid.  *See U.S. ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*, 843 F.3d 1033, 1037-40 (5th Cir. 2016) (no obligation to repay under the reverse false claims provision unless there is an "established duty" based in contract, statute, or regulation to pay monies to the government); *Ibanez*, 874 F.3d at 917 (affirming dismissal of reverse FCA claim because "relators provided no facts showing defendants were under an affirmative obligation to the government").

There is no legal basis for Texas' assertion that Affiliate Defendants were effectively terminated from Texas Medicaid in February 2017.  The federal injunction entered in January 2017 maintained the status quo, preserving Affiliate Defendants' status as qualified Medicaid providers in the State.  *See Planned Parenthood of Greater Texas*, 236 F. Supp. 3d at 998-1000; *Wenner v. Tex. Lottery Comm'n*, 123 F.3d 321, 326 (5th Cir. 1997) ("It is well settled that the issuance of a prohibitory injunction freezes the status quo, and is intended to preserve the relative positions of the parties until a trial on the merits can be held.") (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).  The "legally issued injunction froze the status quo which existed prior to" Texas' issuance of a final termination notice, "therefore maintaining the legality of" Affiliate Defendants' participation in Texas Medicaid "while the injunction was in effect."  *See Wenner*, 123 F.3d at 325; *see also Aggarao v. MOL Ship. Mgmt. Co.*, 675 F.3d 355, 378 (4th Cir. 2012) (status quo to be preserved by a preliminary injunction is the "last uncontested status between the parties which preceded the controversy").

15

Affiliate Defendants were entitled to "operate[] under the protection of the injunction" in continuing to provide and bill for Medicaid services.  *See Wenner*, 123 F.3d at 327.  Texas cannot retroactively penalize such conduct, and indeed, Texas Medicaid officials have made no such effort to do so.  To the contrary, after the Fifth Circuit's decision vacating the injunction, Texas Medicaid agreed that Affiliate Defendants could continue submitting claims for covered services for thirty more days to allow time to transfer their Medicaid patients to other providers.  Indeed, the only reason to grant a grace period would be to allow Affiliate Defendants to continue to bill Medicaid, as they remain licensed healthcare providers in the State and could continue to see patients irrespective of any grace period.  This action too demonstrates the termination was not final and effective in 2017, and it would offend any conception of fairness or due process for the State to invite a health care provider to continue to treat patients and submit bills only then to say "gotcha" after the fact and claim those very bills were fraudulent.

In short, the Court should dismiss Texas' Complaint because its allegations make clear that Affiliate Defendants had *no* obligation to "pay or transmit money or property to th[e] State under the Medicaid program."  *See* Tex. Hum. Res. Code Ann. § 36.002(12).

### B.   The Complaint Does Not Plausibly Plead That Defendants Acted Knowingly and Improperly

Texas also has failed to plausibly plead scienter under the TMFPA because it was objectively reasonable for Affiliate Defendants to rely on injunctions issued by federal and state courts and Texas' 30-day grace period to operate in the Texas Medicaid program.  The Court should dismiss Texas' Complaint on this additional basis.

The TMPFA imposes liability only where the defendant acts "knowingly," which the statute defines as acting with actual knowledge, in conscious indifference of the truth or falsity of the information, or with reckless disregard for truth or falsity.  Tex. Hum. Res. Code Ann.

§ 36.0011.  Though the Act itself does not elaborate further on what is required to show scienter under this standard, the TMFPA incorporates the plain meaning of the undefined terms it uses.  *In re Xerox*, 555 S.W.3d at n. 62 (citing *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011)).  And "the common law has generally understood 'recklessness'" – which is the lowest standard of proof for knowledge under the TMPFA – "as conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either *known* or so obvious that it *should be known*.'" *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007) (quoting *Farmer v. Brennan*, 551 U.S. 825, 836 (1994)) (emphasis added).  Courts consistently have applied this "objective standard" to the federal FCA's knowledge requirement, holding that a party does not knowingly violate the FCA if it acted in accordance with an objectively reasonable interpretation of the applicable legal requirements and if no authoritative guidance warned it away from that interpretation.  *See U.S. ex rel. Sheldon v. Allergan Sales, LLC*, -- F.4th --, 2022 WL 211172, at *4-5 (4th Cir. Jan. 25, 2022) (collecting cases); *U.S. ex rel. Schutte v. Supervalu, Inc.*, 9 F.4th 455, 465 (7th Cir. 2021) (same). There is no reason to apply a different rule to the TMFPA.

Applying this standard here, Texas has not plausibly alleged that Affiliate Defendants knowingly violated the TMFPA.  It was objectively reasonable for Affiliate Defendants to rely on federal and state court orders, and the thirty-day extension granted by Texas state authorities, in continuing to submit Medicaid claims for payment.  Texas does not point to any authoritative guidance from either federal agencies or the State that would have warned Affiliate Defendants away from their understanding of their rights under court orders and an agreed-upon extension with Texas.  Accordingly, Texas has failed to plausibly plead scienter and its Complaint should be dismissed on that basis.

### C.     The Complaint Does Not Plausibly Plead Materiality

Texas also has failed to plausibly plead materiality under the TMFPA.  As the Supreme Court held in interpreting the analogous federal FCA, a falsehood must be material to the government's payment decision to be actionable.  *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 192-95 (2016).  This "demanding" and "rigorous" materiality standard imposes a substantial pleading burden on a plaintiff.  *Id.* at 194, 195 n.6; *see Porter*, 810 F. App'x at 240-41.  To plausibly plead materiality, the plaintiff must plead facts showing that the "likely or actual" decision of the government would have been not to pay had it known of the alleged misconduct.  *Escobar*, 579 U.S. at 193.  By contrast, "if the [g]overnment pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material."  *Id.* at 195.  Put another way, "continued payment by the federal government after it learns of the alleged fraud substantially increases the burden on the [plaintiff] in establishing materiality."  *U.S. ex rel. Harman v. Trinity Indus. Inc.*, 872 F.3d 645, 663 (5th Cir. 2017).

Under Texas law, "[i]f after the *effective date* of the termination, [a Medicaid provider] submits or causes to be submitted claims for services or items furnished within the period of termination, the person may be liable to repay any submitted claims or subject to a civil monetary penalty . . . and criminal liability . . . in addition to sanctions or penalties by the OIG."  Tex. Hum. Res. Code Ann. § 371.1703(g)(5) (emphasis added).  Texas does not allege that the HHSC-OIG took any steps to recoup the Medicaid reimbursements Affiliate Defendants had received during the pendency of the federal court injunction, the thirty-day HHSC grace period, or the state court injunction.  The absence of any such action by HHSC demonstrates that Affiliate Defendants' retention of those payments was not material.  *See Harman*, 872 F.3d at 663; *U.S. ex rel. Berg v.*

*Honeywell Int'l, Inc.*, 740 F. App'x 535, 538 & n.5 (9th Cir. 2018); *U.S. ex rel. Petratos v. Genentech, Inc.*, 855 F.3d 481, 489-90 (3d Cir. 2017).[4]

## IV.   Texas' Claim Against PPFA Should Be Dismissed Under Rule 9(b)

Rule 9(b) requires a plaintiff to plead the "who, what, when, where, and how of the alleged fraud." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997); *see Health Choice Group*, 2018 WL 3637381, at *55 (Rule 9(b) applies to TMFPA claims brought in federal court).[5] Texas' Complaint is utterly devoid of any allegations against PPFA that bear on these questions, and thus its claim against PPFA should be dismissed.

Texas does not allege that PPFA had a provider agreement with Texas or otherwise participated in Texas Medicaid, nor does it identify any wrongful conduct in which PPFA allegedly engaged. Texas does not identify any of the fundamentals of a fraud case – who at PPFA allegedly caused the Affiliate Defendants to submit false claims, what specifically was done by any PPFA employee, or when and where the actions were taken. The sole mention of PPFA is in the "Parties" section and it simply states that "PPFA provides significant monetary support to these affiliates as well as other types of support and control, such as directives, marketing, communications, requirements, standards, policies, and accreditation for affiliates providing medical care, insurance

---

[4]    Texas' intervention in this case has minimal, if any, bearing on the materiality analysis. *See Taylor v. Comhar, Inc.*, No. 16-cv-1218, 2022 WL 102334, at *3 n.4 (E.D. Pa. Jan. 11, 2022). Were the rule otherwise, the government could "manufactur[e]" materiality in every case irrespective of the views of agency decisionmakers responsible for actually overseeing Texas Medicaid. *See United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020).

[5]    Federal courts apply Rule 9(b) to state law claims for which federal jurisdiction exists because pleading standards set forth in the Federal Rules of Civil Procedure are procedural in nature. *Club Escapade 2000, Inc. v. Ticketmaster, L.L.C.*, No. 11-cv-166, 2011 WL 5976918, at *4 n.2 (W.D. Tex. Nov. 29, 2011) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)) (additional citations omitted).

coverage, legal counsel and representation, and direct support for the provision of healthcare services." Texas Compl. ¶ 20.   That is not even close to enough to clear Rule 9(b)'s high bar.[6]

Texas cannot plead a claim against PPFA by lumping all defendants together as "Planned Parenthood."   A claim asserted against multiple defendants must include specific and separate allegations regarding the fraudulent or illegal conduct of each named defendant.   *U.S. ex rel. Hebert v. Dizney*, 295 F. App'x 717, 722 (5th Cir. 2008); *see also U.S. ex rel. Hendrickson v. Bank of America, N.A.*, 343 F. Supp. 3d 610, 633-35 (N.D. Tex. 2018) (dismissing FCA complaint filed against sixteen defendants because relator failed to distinguish between each defendant).   An allegation "aimed at 'defendants' as a whole, rather than . . . any . . . specific defendant . . . constitutes impermissible group pleading under Rule 9(b)." *Sheppard v. Liberty Mut. Ins. Co.*, No. 16-cv-2401, 2016 WL 6807400, at *3 (E.D. La. Nov. 17, 2016).   Similarly, attributing "discrete actions . . . to all or multiple defendants without explaining the basis for the grouping or distinguishing between the relevant conduct" of the defendants is improper under Rule 9(b).   *United States v. Lakeway Reg'l Med. Ctr.*, No 19-cv-945, 2020 WL 6146571, at *2 (W.D. Tex. Feb. 13, 2020) (citation omitted).   "[I]nstead, a plaintiff must plead specific facts describing

---

[6]      To the extent Texas seeks to hold PPFA liable for the acts of its affiliates based on their mere relationship to one another, it runs afoul of bedrock principles.   Even a corporate parent is not held liable for the acts of a subsidiary, without specific allegations that the parent caused the subsidiary's actions.   *U.S. ex rel. Haight v. RRSA (Commercial Div.), LLC*, No. 16-cv-1975, 2020 WL 6163139, *4 & n.10 (N.D. Tex. Oct. 20, 2020) (citing *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006)).   And, as Texas well knows, PPFA is not a corporate parent nor are the affiliates its subsidiaries, and Texas does not even allege that to be the case.   Texas includes no allegations describing the structure of the Planned Parenthood federation and how precisely PPFA "controls" the affiliates except in the vaguest terms.   This is not out of ignorance about the organization's structure, because it is a matter of public record that the affiliates are "separate organizations" which belong to PPFA, a "membership organization that develops medical and organizational standards to which its affiliates must adhere in order to operate under the Planned Parenthood name and use the Planned Parenthood mark."   *Planned Parenthood of Greater Texas*, 236 F. Supp. 3d at 979, *vacated on other grounds*, 981 F.3d 347 (5th Cir. 2020).

the fraud allegedly committed by *each defendant*."  *Alford v. Chevron U.S.A. Inc.*, 13 F. Supp. 3d 581, 594 (E.D. La. 2014) (emphasis added).  That is true even if the complaint alleges that the defendants are affiliated entities.  *See e.g. United States v. Dental Health Programs, Inc.*, No. 18-cv-463, 2020 WL 3064712, *6 (N.D. Tex. Jun. 8, 2020) (dismissing certain corporate and individually named defendants because relator "did not plead factual content that allows the court to draw the reasonable inference that each Defendant is liable for the misconduct alleged." (citation omitted)); *United States v. BNP Paribas SA*, 884 F. Supp. 2d 589, 614 (S.D. Tex. 2012) (dismissing FCA claims against three entities grouped as "BNPP" because complaint did not "adequately distinguish[] between the allegedly fraudulent conduct of the three BNPP defendants").

For these reasons, Texas' lone, generalized assertion about the relationship between PPFA and its affiliates is plainly insufficient under Rule 9(b) to plead that PPFA is liable for its affiliates' alleged failure to repay Medicaid funds.  Texas' claim against PPFA should be dismissed.

## V.     The Court Lacks Original Subject Matter Jurisdiction Over Texas' State Law Claim and It Should Decline to Exercise Supplemental Jurisdiction

As discussed in Defendants' Combined Motion to Dismiss Relator's Complaint, the Court should dismiss Relator's claims under the federal FCA that provide the basis for this Court's original subject matter jurisdiction.  If it does so, it should then decline to exercise supplemental jurisdiction over any remaining state law claims.  *See Enochs v. Lampasas Cnty.*, 641 F.3d 155, 161 (5th Cir. 2011) ("Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed.").

Were the Court to consider the state law claims, however, the TMFPA's statutory government action bar prevents Relator and Texas from proceeding in the action together.  The TMFPA provides that "[a] person may not bring an action under this subchapter that is based on allegations or transactions that are the subject of a civil suit or an administrative penalty proceeding

in which the state is already a party." Tex. Hum. Res. Code Ann. § 36.113(a).  It is virtually identical to the federal FCA's government action bar.  *See* 31 U.S.C. § 3730(e)(3) ("In no event may a person bring an action under [the *qui tam* section] which is based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party.").  As noted above, federal and state courts look to precedent interpreting the FCA when interpreting the TMFPA given their similar wording.  *See Dental Health*, 2021 WL 3213709, at *7.  The federal FCA's government action bar is jurisdictional.  *Little v. Shell Expl. & Prod. Co.*, 690 F.3d 282, 287 (5th Cir. 2012); *see U.S. ex rel. Vermont Nat'l Tel. Co. v. Northstar Wireless LLC*, 531 F. Supp. 3d 247, 267 (D.D.C. 2021).  There is no reason to view the TMFPA's mirrored provision differently.

As discussed in Defendants' Combined Motion to Dismiss Relator's Complaint, Relator's TMFPA claim is barred under the government action bar because the Texas Medicaid termination proceedings were "civil money penalty proceedings."  *See Vermont Nat'l Tel.*, 531 F. Supp. 3d at 267-68 (administrative "civil money penalty proceedings" under government action bar include any proceedings where the government had the "*capacity* to levy" penalties, even if it "chose not to do so" (emphasis added)).

Texas' intervention did not cure this jurisdictional defect because, as the Supreme Court explained in a case analyzing the federal FCA's public disclosure bar at a time when that bar was jurisdictional, "[a]n action brought by a private person does not become one brought by the Government just because the Government intervenes."  *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 477 (2007) (Scalia, J., for the Court).  There, the Court noted the potentially "bizarre result" that the government's own case could be jurisdictionally barred if it intervened in a case where the relator was barred, yet it also identified the solution – the case "becomes an action

22

brought by the [government] once the [relator] has been determined to lack the jurisdictional prerequisites for suit." *Id.* at 478.

*Rockwell* therefore makes it crystal clear that, even when the state intervenes, the action remains one brought by the relator as long as the relator remains in the case. Though *Rockwell* was about the public disclosure bar, there is no textual reason to treat the government action bar differently. When Relator brought a *qui tam* action "based on allegations or transactions" that were being litigated separately by Texas, those claims were jurisdictionally barred, and Texas' intervention cannot cure the defect unless and until Relator's Complaint is dismissed. *See Rockwell*, 549 U.S. at 478 ("The elimination of [relator] leaves in place an action pursued only by the Attorney General, that can reasonably be regarded as being 'brought' by him for purposes of [the public disclosure bar].").

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should dismiss Texas' Complaint.

Dated:  February 14, 2022

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP


By:   */s/ Craig D. Margolis*
Craig D. Margolis
Craig.Margolis@arnoldporter.com
Murad Hussain
Murad.Hussain@arnoldporter.com
Tirzah Lollar
Tirzah.Lollar@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.6000
Fax: +1 202.942.5999

Christopher M. Odell
Texas State Bar No. 24037205
Christopher.Odell@arnoldporter.com
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: +1 713.576.2400
Fax: +1 713.576.2499

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 14, 2022, the foregoing document was electronically filed with the Clerk of Court using CM/ECF.

*/s/ Craig D. Margolis*
Craig D. Margolis