# EXHIBIT A

No. 17-50282

# In the United States Court of Appeals for the Fifth Circuit

---

PLANNED PARENTHOOD OF GREATER TEXAS FAMILY PLANNING
AND PREVENTATIVE HEALTH SERVICES, INC., ET AL.;

*Plaintiffs-Appellees*,

*v.*

CHARLES SMITH, IN HIS OFFICIAL CAPACITY AS EXECUTIVE COMMISSIONER OF HHSC, ET AL.,

*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the Western District of Texas, Austin Division,
No. 1:15-cv-01058

---

## MOTION TO STAY THE DISTRICT COURT'S INJUNCTION PENDING EN BANC CONSIDERATION

---

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

KYLE D. HAWKINS
Solicitor General
kyle.hawkins@oag.texas.gov

HEATHER GEBELIN HACKER
Assistant Solicitor General

ANDREW B. STEPHENS
Assistant Attorney General

*Counsel for Appellants*

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ ii

Introduction .............................................................................................................. 1

Background ............................................................................................................... 2

Argument .................................................................................................................. 3

    I. In Declaring the Injunction Unlawful, This Court Has Already Decided That the State Will Succeed on the Merits of its Appeal. ................................................................................................. 5

    II. The Plaintiffs Will Not Be Irreparably Harmed Absent a Stay. ......... 5

    III.    No Other Parties Will Be Irreparably Harmed. ......................... 7

    IV.    The State Will Be Irreparably Harmed Absent a Stay, and the Public Interest Favors Texas's Ability to Terminate Provider Agreements with an Organization That No Longer Is Qualified Under the Texas Medicaid Program. ......................................... 9

Conclusion ............................................................................................................. 12

Certificate of Conference ..................................................................................... 13

Certificate of Service ............................................................................................ 13

Certificate of Compliance ..................................................................................... 14

# Table of Authorities

**Page(s)**

**Cases**

*Barber v. Bryant*,
   833 F.3d 510 (5th Cir. 2016) .................................................................... 7

*Barsky v. Bd. of Regents of Univ. of N.Y.*,
   347 U.S. 442 (1954) ................................................................................ 10

*City of El Cenizo v. Texas*,
   No. 17-50762, 2017 WL 4250186 (5th Cir. Sept. 25, 2017)
   (per curiam) ............................................................................................. 4

*City of Meridian v. Algernon Blair, Inc.*,
   721 F.2d 525 (5th Cir. 1983) .................................................................... 7

*Deerfield Med. Ctr. v. City of Deerfield Beach*,
   661 F.2d 328 (5th Cir. 1981) .................................................................... 7

*Dennis Melancon, Inc. v. City of New Orleans*,
   703 F.3d 262 (5th Cir. 2012) .................................................................... 7

*Gonzales v. Carhart*,
   550 U.S. 124 (2007) ................................................................................ 10

*Maryland v. King*,
   567 U.S. 1301 (2012) (Roberts, C.J., in chambers) ................................ 10

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*,
   434 U.S. 1345 (1977) (Rehnquist, J., in chambers) ................................ 10

*Nken v. Holder*,
   556 U.S. 418 (2009) ........................................................................*passim*

*ODonnell v. Goodhart*,
   900 F.3d 220 (5th Cir. 2018) .................................................................... 7

*Planned Parenthood of Greater Tex. Surgical Health Servs. v.
   Abbott*,
   734 F.3d 406 (5th Cir. 2013) ............................................................... 4, 5

*Planned Parenthood of Gulf Coast, Inc. v. Gee*,
 862 F.3d 445 (5th Cir. 2017) ................................................................ 1, 2

*Veasey v. Abbott*,
 870 F.3d 387 (5th Cir. 2017) (per curiam) ....................................... 4, 9, 10

*Washington v. Glucksberg*,
 521 U.S. 702 (1997) ............................................................................... 10

**Statutes**

42 U.S.C.A.
 § 1396a(a)(9)(A) ................................................................................... 10
 § 1396a(a)(9)(B) .................................................................................... 10
 § 1396a(a)(23) ........................................................................... 1, 2, 3, 11

**Other Authorities**

Fed. R. App. P. 8(a)(2) .............................................................................. 1, 4

# INTRODUCTION

The district court entered a preliminary injunction to prevent a Texas agency from terminating the Medicaid provider agreements of Texas Planned Parenthood affiliates. This Court has now held, in a unanimous judgment, that the district court's preliminary injunction is unlawful. *See* App. 29. The Court explained that the district court applied the wrong legal standard, and that its "procedure was incompatible with the proper standard." *See* App. 22-29. Further, the district court improperly considered materials outside the record. *See* App. 22, 23, 27, 29. For these reasons, the Court held that "the basis for [the] preliminary injunction cannot be sustained." App. 29.

The State has now sought en banc review of an antecedent question: Whether the qualified-provider provision of the Medicaid Act, 42 U.S.C. § 1396a(a)(23), allows private individuals to bring an action to challenge a state agency's determination that a service provider is not "qualified" under that statute. The State has asked the en banc Court to overrule *Planned Parenthood of Gulf Coast, Inc. v. Gee*, 862 F.3d 445 (5th Cir. 2017).

Whether and how the en banc Court chooses to resolve that threshold question cannot rehabilitate the district court's manifestly unlawful injunction. The State therefore moves the Court to stay that injunction pending resolution of the pending petition for rehearing en banc and any related proceedings that might follow. *See* Fed. R. App. P. 8(a)(2). In light of the panel's decision unequivocally declaring the injunction unlawful, a stay is easily warranted. *See Nken v. Holder*, 556 U.S. 418 (2009).

1

## BACKGROUND

In early 2015, over eight hours of undercover video was filmed at Planned Parenthood Gulf Coast's facility in Houston, Texas. ROA.5846-6208 (video transcript); ROA at DX-2 (video footage). This video footage demonstrated violations of accepted medical and ethical standards in numerous ways, and the Texas Health and Human Services Commission Office of Inspector General (OIG) determined that Texas Planned Parenthood affiliates could no longer could serve as qualified providers in the Texas Medicaid program. *See* ROA.1210-11. As a result, OIG terminated their provider agreements. ROA.1209-14.

The Texas Planned Parenthood affiliates ("Provider Plaintiffs") and several individual plaintiffs brought suit to challenge that termination. Following a hearing, ROA.22-23, the district court below determined that the plaintiffs had satisfied the criteria necessary to obtain a preliminary injunction blocking the termination, ROA.3776-3819. The State appealed, raising two main issues: first, that the plaintiffs lack a private right of action; and second, that the district court's injunction was unlawful. *See* App. 12.

The panel determined that under *Gee*, 862 F.3d at 459-60, the individual plaintiffs have a private right of action under 42 U.S.C. § 1396a(a)(23), and that it was "constrained" by *Gee*'s conclusion, App. 2. But the panel vacated the injunction, holding that the district court abused its discretion by reviewing OIG's termination decision de novo, rather than under arbitrary-and-ca-

2

pricious review, and by considering evidence outside of the administrative record. App. 17, 29. The court remanded the case to the district court for application of the correct standard to the evidence in the administrative record alone. App. 29. Judge Jones wrote a separate concurrence to outline the reasons that *Gee*'s holding was incorrect, and requested rehearing en banc to "reconsider whether Section 1396a(a)(23) creates a private right of action on behalf of Medicaid patients to challenge the termination of their providers' contracts by the States." App. 36 (Jones, J., concurring). The State has requested en banc review for the same issue.

Under the district court's injunctive relief, which was issued in January 2017, the State has been forced to retain the Provider Plaintiffs as qualified Medicaid providers and allow them to provide medical services to Texas Medicaid recipients. ROA.3776-3819. Under the injunction, the State has already been forced to pay the Provider Plaintiffs millions of dollars in Medicaid service reimbursement funds. *See* ROA.4315 (in 2016, Texas paid approximately $3.4 million to the Provider Plaintiffs in Medicaid reimbursements).

# ARGUMENT

The Court should stay the district court's injunction pending the resolution of the en banc petition and any subsequent related proceedings. "An appellate court's power to hold an order in abeyance while it assesses the legality of the order has been described as 'inherent.'" *Nken*, 556 U.S. at 426 (citation omitted). The Supreme Court has set out a four-part test for assessing whether to stay a district court order pending appeal. *See id.*; *Veasey v. Abbott*,

3

870 F.3d 387, 391 (5th Cir. 2017) (per curiam). The first consideration is "whether the stay applicant has made a strong showing that he is likely to succeed on the merits." *Nken*, 556 U.S. at 426. The second is "whether the applicant will be irreparably injured absent a stay." These first two factors "are the most critical." *Id*. at 434. Less "critical," but still relevant, are "whether issuance of the stay will substantially injure the other parties interested in the proceeding," and "where the public interest lies." *Id*. at 426; *see also City of El Cenizo v. Texas*, No. 17-50762, 2017 WL 4250186, at *1-2 (5th Cir. Sept. 25, 2017) (per curiam) (adopting *Nken* four-part test).

In light of the panel decision declaring the district court's preliminary injunction unlawful, the injunction should be stayed while further appellate proceedings unfold. In particular, the panel's decision declaring the injunction invalid establishes that the State—not plaintiffs—are likely to prevail on the merits. Plaintiffs face no irreparable harm if the district court's unlawful order is stayed. No other parties face irreparable injury. And the public interest squarely lies with allowing Texas to immediately remove an unethical and unqualified provider from its Medicaid program.[1]

---

[1] Fed. R. App. P. 8(a)(2) allows the State to seek a stay in this Court where moving in the district court "would be impracticable." *See Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 410-11 (5th Cir. 2013). That standard is met here because this Court already has exercised its appellate jurisdiction and determined that the district court's injunction is unlawful. In addition, the Court is currently considering the State's pending petition to rehear a portion of this case en banc. Under these circumstances, this Court is best positioned to determine whether to stay the district court's unlawful injunction pending the remainder of any appellate proceedings. *See id.* (staying district court's injunction pending appeal despite no request for stay in the district court).

## I. In Declaring the Injunction Unlawful, This Court Has Already Decided That the State Will Succeed on the Merits of its Appeal.

The panel decision already held the district court's injunction is unlawful. The district court strayed from the record, applied the wrong legal standard, and failed to follow proper procedures. *See* App. 22-29. This Court has thus already established not just that the State is *likely* to succeed on the merits of its appeal, but rather, that the State *has succeeded* and *will continue to succeed* in establishing that the injunction cannot stand. *See Nken*, 556 U.S. at 426. As this "most critical" factor is now conclusively resolved, the Court should not permit a clearly unlawful injunction to persist any longer. *See id.*[2]

## II. The Plaintiffs Will Not Be Irreparably Harmed Absent a Stay.

The district court's injunction was issued on behalf of the individual plaintiffs only. ROA.3796, 3932. Even if plaintiffs could make a "strong showing that their interests would be harmed by staying the injunction, given the State's likely success on the merits, this is not enough, standing alone, to outweigh the other factors." *Abbott*, 734 F.3d at 419.

But there is no evidence in the record that the individual plaintiffs will be unable to receive medical care at the facility of their choice if the State ceases to provide Medicaid payments to the Provider Plaintiffs—especially when these providers have not stated that they will refuse to serve these individuals

---

[2] Even if the district court had applied the correct legal standard, the plaintiffs still could not prevail. The only probative evidence in the administrative record is the undercover videos, and that evidence leaves no doubt that the State's termination decision was proper. *See* App. 7-10.

5

or individuals similarly situated if they do not receive Medicaid reimbursement. Thus, the individual plaintiffs cannot establish irreparable harm. *See Nken*, 556 U.S. at 426.

At the preliminary-injunction hearing, Planned Parenthood Greater Texas (PPGT) CEO Ken Lambrecht testified that their doors will stay open even if they do not get Medicaid funds from Texas. ROA.4124. Planned Parenthood South Texas (PPST) CEO Jeffrey Hons was asked directly whether PPST will provide care to Medicaid patients even if Medicaid funds are withheld, and he refused to give a yes or no answer:

> Q. So you will be able to provide care for some of the individuals if Medicaid funds are withheld?
>
> A. We'll just have to wait and see, won't we?

ROA.4297. The Provider Plaintiff CEOs have, at most, testified that they might have to make changes to their operations if their Medicaid provider agreements are terminated. ROA.4114, 4133-34, 4302. That is not enough to establish that the individual plaintiffs will actually suffer irreparable harm should Provider Plaintiffs' termination from Texas Medicaid become effective.

Because this Court has already declared that the State succeeds on the merits of its appeal, and because no individual plaintiff will suffer irreparable harm from a stay of the injunction, the two "most critical" *Nken* factors conclusively favor the State. 556 U.S. at 426; *see also ODonnell v. Goodhart*, 900

F.3d 220, 223 (5th Cir. 2018) ("The first two factors are the most critical." (citing *Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016)).

### III. No Other Parties Will Be Irreparably Harmed.

Nor is there any evidence in the record to demonstrate that Provider Plaintiffs will suffer irreparable harm if the district court's improper preliminary injunction is stayed pending en banc resolution. If the Provider Plaintiffs are terminated from the Texas Medicaid program, they may experience lower revenue, but this Court has squarely held that such "monetary injury" does not support injunctive relief. *See Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies."); *City of Meridian v. Algernon Blair, Inc.*, 721 F.2d 525, 529 (5th Cir. 1983) (same). The fact that an economic injury may be rectified weighs "heavily against a claim of irreparable harm." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012).

That is especially so where, as here, Medicaid plays an insignificant role in the Provider Plaintiffs' finances. In 2013, PPGT had total revenue of $33,922,566 and net assets of $41,839,154. ROA.8688. PPGT received $950,000 in reimbursements from Texas Medicaid in 2016. ROA.4123-24. In 2013, PPST had total revenue of $4,252,525 and net assets of $3,749,103. ROA.8295. PPST received $350,000 in reimbursements from Texas Medicaid in 2016. ROA.4289. In 2013, PPGC had total revenue of $19,667,024 and net assets of $43,548,729. ROA.7966. In 2016, the total revenue for PPGC's

7

research department alone was $2.5 million dollars—more than the $2.2 million that they received that year in reimbursements from Texas Medicaid. ROA.4236, 4135.

Nothing in the record suggests that the loss of this revenue would leave Provider Plaintiffs wholly unable to continue their operations. In fact, Provider Plaintiffs have insisted in sworn testimony that the opposite is true. *See* ROA.4114, 4133-34, 4302 (testimony of Provider Plaintiff CEOs that at most, they might change their operations if their Medicaid provider agreements are terminated); ROA.4124 (testimony that Planned Parenthood Greater Texas will remain in operation even without Texas Medicaid funds).

Nor will Medicaid patients be left without available providers for the services they seek. In Texas, there are 141,000 providers enrolled in the Medicaid program, including 29,000 primary-care physicians and over 3,300 obstetrician/gynecologists. ROA.4511, 4515. These other providers together perform 99.7% of all Medicaid services in the State. ROA.4518.

There are also other health programs funded by the State that Medicaid recipients may participate in. Texas spends an additional $210 million annually on women's-health programs that cover family-planning services for individuals between the ages of 15 and 64, depending on the program. ROA.4442, 4446. In 2016, Texas women's-health programs served approximately 363,000 women. ROA.4446. The providers in these programs offer the same services as Planned Parenthood clinics, including pelvic exams, contracep-

tives, sexually-transmitted-infection screenings, and breast- and cervical-cancer screenings and diagnostic tests. ROA.4443-44. These programs also provide additional services to care for conditions found to affect reproductive health and not provided by Planned Parenthood, such as the screening, diagnosis, and treatment of hypertension, cholesterol, and diabetes. ROA.4444. Provider Plaintiffs are thus not necessary to providing services to Medicaid recipients, and in fact, nearly all Medicaid recipients are already receiving services elsewhere, *see* ROA.4518. No irreparable harm will result from termination of Provider Plaintiffs' Medicaid provider agreements.

## IV. The State Will Be Irreparably Harmed Absent a Stay, and the Public Interest Favors Texas's Ability to Terminate Provider Agreements with an Organization That No Longer Is Qualified Under the Texas Medicaid Program.

By contrast, both the State and Medicaid recipients will suffer irreparable harm if the State is forced to continue complying with an unlawful injunction. And keeping the invalid injunction in place is contrary to the public's interest. "Because the State is the appealing party, its interest and harm merge with that of the public." *Veasey*, 870 F.3d at 391 (citing *Nken*, 556 U.S. at 435).

Unless the preliminary injunction is stayed, the State will be forced to keep the Provider Plaintiffs as Medicaid providers, despite the State's determination that they violated medical and ethical standards, *see* ROA.1209-14, which is likely to be upheld, *see* p.7 n.2 *supra*. When a State is enjoined from enforcing the law, "the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws." *Veasey*, 870 F.3d at 391

9

(citing *Maryland v. King*, 567 U.S. 1301 (2012) (Roberts, C.J., in chambers)); *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers). Medical providers hold a special position of trust in our society and therefore must adhere to the highest standards of accountability. A medical provider that is willing to transgress medical and ethical standards should not continue to receive the benefit of state or federal monies, and staying the preliminary injunction will allow the State to fulfill its obligation under federal law and protect the integrity of the Medicaid program, which is in the public's interest. *See* 42 U.S.C.A. § 1396a(a)(9)(A), (B); *see also Gonzales v. Carhart*, 550 U.S. 124, 157 (2007) ("There can be no doubt the government 'has an interest in protecting the integrity and ethics of the medical profession.'" (quoting *Washington v. Glucksberg*, 521 U.S. 702, 731 (1997)); *Barsky v. Bd. of Regents of Univ. of N.Y.*, 347 U.S. 442, 451 (1954) (the State has "legitimate concern for maintaining high standards of professional conduct" in the practice of medicine).

In addition to the irreparable harm of being unable to protect the integrity of the Medicaid program, and potential harm to Medicaid recipients who may receive services from an unqualified, unethical provider, the State will also be forced continue to pay the Provider Plaintiffs for Medicaid services provided until the petition for rehearing en banc is resolved. Based on the current rate of requests for reimbursement, that could total an additional 1.7 million dollars for every six months the Provider Plaintiffs remain forcibly qualified Medicaid

providers. *See, e.g.*, ROA.4315 (in 2016, Texas paid approximately $3.4 million to the Provider Plaintiffs in Medicaid reimbursements).

There is no justification for continuing to prevent the State from terminating these providers when this Court has already determined that the district court's preliminary-injunction order was improper. *See* App. 29. The State's petition for rehearing en banc, just like Judge Jones's request for rehearing in her concurrence, *see* App. 36, asks the Court to review the issue of whether there is a private right of action under the qualified-provider provision of the Medicaid Act, 42 U.S.C. § 1396a(a)(23). Whether and how the Court might resolve that issue cannot rehabilitate the district court's manifestly unlawful injunction, and thus, the injunction should be stayed to prevent continuing harm to the State, Medicaid recipients, and the public's interest.

## Conclusion

This Court should grant the State's motion and stay the district court's preliminary injunction pending resolution of the petition for en banc review and any subsequent related proceedings.

                                      Respectfully submitted.

| | |
|---|---|
| Ken Paxton<br>Attorney General of Texas | /s/ Kyle D. Hawkins<br>Kyle D. Hawkins<br>Solicitor General |
| Jeffrey C. Mateer<br>First Assistant Attorney General | Heather Gebelin Hacker<br>Assistant Solicitor General |
| Office of the Attorney General<br>P.O. Box 12548 (MC 059)<br>Austin, Texas 78711-2548<br>Tel.: (512) 936-1700<br>Fax: (512) 474-2697 | Andrew B. Stephens<br>Assistant Attorney General<br><br>*Counsel for Appellants* |

### Certificate of Conference

Prior to filing, my office conferred with Jennifer Sandman and Thomas Watkins, counsel for Appellees. Ms. Sandman stated that Appellees oppose this motion and will be filing a written opposition.

/s/ Kyle D. Hawkins
Kyle D. Hawkins

### Certificate of Service

On February 1, 2019, this motion was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Kyle D. Hawkins
Kyle D. Hawkins

### Certificate of Compliance

This Motion complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2729 words, excluding the parts of the brief exempted by Rule 27(a)(2)(B); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Kyle D. Hawkins
Kyle D. Hawkins