# EXHIBIT D

CAUSE NO. D-1-GN-21-000528

| | | |
|---|---|---|
| IN RE: | § § § | IN THE DISTRICT COURT |
| PLANNED PARENTHOOD OF GREATER TEXAS FAMILY PLANNING AND PREVENTATIVE HEALTH SERVICES, INC., PLANNED PARENTHOOD OF GREATER TEXAS, INC., PLANNED PARENTHOOD SAN ANTONIO, PLANNED PARENTHOOD CAMERON COUNTY, PLANNED PARENTHOOD SOUTH TEXAS SURGICAL CENTER, and PLANNED PARENTHOOD GULF COAST, | § § § § § § § § § § § § § § § | TRAVIS COUNTY, TEXAS |
| *Relators.* | § | 261ST JUDICIAL DISTRICT |

**RESPONSE IN OPPOSITION TO ORIGINAL PETITION FOR WRIT OF MANDAMUS, APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY MANDATORY INJUNCTION, AND PERMANENT MANDATORY INJUNCTION**

Respondents Sylvia Hernandez Kauffman, Inspector General; the Office of Inspector General; Cecile Erwin Young, Executive Commissioner of Texas Health and Human Services Commission; and Texas Health and Human Services Commission (collectively "Respondents") file this Response in Opposition to the Original Petition for Writ of Mandamus, Application for Temporary Restraining Order, Temporary Mandatory Injunction, and Permanent Mandatory Injunction (the "Petition") recently filed by the following Relators: Planned Parenthood of Greater Texas Family Planning and Preventative Health Services, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood San Antonio, Planned Parenthood Cameron County,

Page **1** of **19**

Planned Parenthood South Texas Surgical Center, and Planned Parenthood Gulf Coast (collectively "Planned Parenthood").

## I. INTRODUCTION

Planned Parenthood's lawsuit is a transparent and meritless attempt to revive the state administrative process that it deliberately abandoned four years ago. Planned Parenthood was duly notified of its termination from the Medicaid program in 2016. But rather than invoke the administrative process to review that decision, Planned Parenthood chose only to file suit in federal court. Having lost most of its claims there, it now attempts to manufacture a controversy where none exists so it can avail itself of the administrative process that it allowed to expire long ago. Its claim lacks any basis in law or fact. The Court should deny Planned Parenthood's request for a temporary injunction.

## II. BACKGROUND

### A.   Legal Framework

Under the federal Medicaid Act, States use federal and state funds to reimburse healthcare providers' costs in providing medical care to certain categories of individuals. *See NFIB v. Sebelius*, 567 U.S. 519, 575 (2012). As a condition of participating in Medicaid, States must provide an administrative process for providers to challenge their exclusion or termination from the Medicaid program. 42 C.F.R. §§ 1002.210, 1002.213. Texas has done so. Section 32.034(a) of the Texas Human Resources Code requires "reasonable notice and an opportunity for hearing

if one is requested" before a Medicaid contract is terminated. And the Texas Administrative Code sets out the requirements for a termination notice:

> (1) a description of the termination;
>
> (2) the basis for the termination;
>
> (3) the effect of the termination;
>
> (4) the duration of the termination;
>
> (5) whether re-enrollment will be required after the period of termination; and
>
> (6) a statement of the person's right to request an informal resolution meeting or an administrative hearing regarding the imposition of the termination unless the termination is required under 42 C.F.R. § 455.416.

1 Tex. Admin. Code § 371.1703(e).

A provider may request an administrative hearing upon receipt of a final notice of termination. *Id.* § 371.1615(b)(2). But the provider does not have unlimited time to act—the request for a hearing must be received within 15 days after the provider received its final notice:

> A person may request an administrative hearing after receipt of a final notice of termination in accordance with § 371.1615 of this subchapter (relating to Appeals) unless the termination is required under 42 C.F.R. § 455.416. The OIG must receive the written request for a hearing no later than the 15 days after the date the person receives the notice.

*Id.* § 371.1703(f)(2).

If the provider does not timely request an administrative hearing, the termination becomes "final and unappealable." *Id.* § 371.1615(c). Specifically, the termination becomes "final" 30 calendar days after service of the final notice if no request for appeal has been timely received. *Id.* § 371.1617(a)(1); *see also id.* § 371.1703(g)(8) ("Unless otherwise provided in this section, the termination becomes

final as provided in § 371.1617(a) of this subchapter (relating to Finality and Collections).").

Thus, under Texas administrative law, a Medicaid provider who receives a final notice that its contract will be terminated has 15 days from receipt of the Final Notice to request an administrative appeal. Otherwise, the termination becomes final 30 days from receipt of the Final Notice.

## B.    The December 2016 Final Notice of Termination

On December 20, 2016, the Office of Inspector General ("OIG") sent a Final Notice of Termination of Enrollment to the Planned Parenthood entities who are plaintiffs here. PP Ex. B (the "December 2016 Final Notice").[1] As explained in the Final Notice, OIG was terminating the contracts based on evidence showing Planned Parenthood was not qualified to provide medical services in a professionally competent, safe, legal, and ethical manner. *Id.* at 1-4. The Final Notice emphasized the 15-day deadline to appeal OIG's decision in bold, stating:

> You may appeal this enrollment termination. In order to do so, **HHSC-OIG must <u>receive</u> a written request from you asking for an administrative hearing before HHSC's appeals division on or before the 15th calendar day from the date you receive this notice.** 1 Tex. Admin. Code § 371.1703(f)(2).

*Id.* at 4. The Final Notice included the mailing address for HHSC-OIG, as well as instructions regarding what the request for an administrative hearing must contain. *Id.* at 4-5. The Final Notice then repeated the deadline:

---

[1] For clarity of reference, Respondents will cite Exhibits attached to Planned Parenthood's Petition as "PP Ex." and will cite Exhibits attached to this Response as "Resp. Ex."

Page **4** of **19**

> **IF HHSC-OIG DOES NOT RECEIVE A WRITTEN RESPONSE TO THIS NOTICE WITHIN 15 CALENDAR DAYS FROM THE DATE YOU RECEIVE IT, YOUR FINAL NOTICE OF TERMINATION WILL BE UNAPPEALABLE.**

*Id.* at 5.

According to declarations filed in federal district court, the Planned Parenthood entities received the Final Notice as early as December 22, 2016, and no later than December 28, 2016. Resp. Ex. 1 (Planned Parenthood federal declarations) at 2 ¶ 2, 3 ¶ 23, 6 ¶ 34, 10 ¶ 15. Thus, under the law described above regarding the 15-day limit on appealing the termination decision, some Planned Parenthood providers had until January 6, 2017, to request an administrative hearing, and others had until January 12, 2017. *See* 1 Tex. Admin. Code § 371.1703(f)(2). None of them did. Thus, in accordance with Texas law, their terminations from Medicaid became final as a matter of law 30 days from the date they received the notice: January 21, 2017 for some, and January 27, 2017 for others. *See* 1 Tex. Admin. Code § 371.1617(a)(1).

## C. The Federal Lawsuit

Despite being notified of their administrative-appeal options, Planned Parenthood, joined by multiple Jane Does, chose to seek relief only in federal district court, claiming they could challenge OIG's decision under the Medicaid Act. *See Planned Parenthood of Greater Tex. Family Planning & Preventative Health Servs., Inc. v. Smith*, No. 1:15-CV-01058-SS (W.D. Tex.). In their motion for a preliminary injunction, they advised the district court that they needed relief by January 21, 2017, as the termination would take effect that day. Resp. Ex. 2 (Planned Parenthood

federal motion) at 32 ("if Defendants' termination is allowed to take effect (which without order from this Court it will on January 21)"); *see also id.* at 3, 19 (stating Planned Parenthood would have to turn away patients as soon as January 21, 2017).

On January 19, 2017, the district court entered an order that "temporarily enjoined" HHSC and OIG "from terminating the [Planned Parenthood] Plaintiffs' Medicaid provider agreements until February 21, 2017." Resp. Ex. 3 (federal district court order) at 2. On February 21, 2017, the district court preliminarily enjoined HHSC and OIG "from terminating the [Planned Parenthood] Plaintiffs' Medicaid Provider Agreements." *Planned Parenthood of Greater Tex. Family Planning & Preventative Health Servs., Inc. v. Smith*, 236 F. Supp. 3d 974, 1000 (W.D. Tex. 2017). Planned Parenthood did not seek, nor did the district court order, any alteration, stay, or tolling of its state-law administrative deadlines, including the express deadline for requesting an administrative appeal, which had already passed regardless.

The State appealed the injunction to the Fifth Circuit and, following en banc review, the court vacated the district court's preliminary injunction. *Planned Parenthood of Greater Tex. Family Planning & Preventative Health Servs., Inc. v. Kauffman*, 981 F.3d 347, 350 (5th Cir. 2020) (en banc). That decision took effect on December 15, 2020, when the Fifth Circuit's mandate issued, vacating the preliminary injunction. Resp. Ex. 4 (Fifth Circuit mandate). Thus, on December 15, 2020, there was no longer an injunction prohibiting HHSC from implementing the termination of Planned Parenthood's Medicaid provider agreements. Because the

terminations were set to take effect in January 2017 under state law, the terminations became immediately effective once the mandate issued.

**D.     The January 2021 Letter**

Once the termination of a Medicaid contract is final, there is still a practical process for implementing or carrying out the termination that takes time. For example, billing programs must be updated to stop paying bills submitted by the terminated entities after a particular date. Also, Managed Care Organizations ("MCOs") must be notified, so they can begin helping clients transition to new providers. Various other logistical procedures require time and effort before a termination becomes fully implemented as a matter of practical reality.

On December 14, 2020, one day before the Fifth Circuit's mandate issued, Planned Parenthood sent a letter to HHSC making two requests: (1) that it be allowed to remain in Medicaid, and (2) that it be given a 6-month grace period to transition its patients to new providers. PP Ex. C. HHSC responded to Planned Parenthood's requests in a letter dated January 4, 2021. PP Ex. E (the "January 2021 letter"). In it, HHSC (1) denied Planned Parenthood's request to remain in the Medicaid program, (2) advised Planned Parenthood that it could no longer accept new Medicaid clients, and (3) permitted a 1-month grace period, until February 3, 2021, to allow Planned Parenthood's patients to transition to new Medicaid providers. *Id.* at 1-2. It also advised Planned Parenthood that patients who were members of an MCO would be notified by their MCO of the need to transition to a new provider. *Id.* at 2.

**E.     Current Lawsuit**

On February 3, 2021, the last day of the grace period, Planned Parenthood filed this mandamus action against Respondents. Planned Parenthood argued that the January 2021 letter was the real termination letter and that it did not comply with the relevant administrative requirements. Planned Parenthood therefore asks the Court to issue a writ of mandamus, compelling Respondents to issue a new Final Notice of Termination so that Planned Parenthood may take the administrative appeal that it chose not to take in December 2016.

### III.  ARGUMENT & AUTHORITIES

Despite receiving a Final Notice of Termination over four years ago (December 2016) and being notified over four weeks ago that the grace period would end on February 3 (the January 2021 letter), Planned Parenthood waited until February 3 to file its petition for mandamus and request for a TRO and temporary injunction. Its arguments lack merit, and its dilatory conduct should not be rewarded.

To obtain a temporary injunction, Planned Parenthood must plead and prove three elements: (1) a cause of action against Respondents; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). Planned Parenthood is not entitled to relief, as demonstrated by its own evidence.

**A.     Cause of action**

A court may issue mandamus relief to compel a public official to perform a ministerial act. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 793 (Tex. 1991).

Planned Parenthood asks the Court to issue a writ of mandamus commanding Respondents to issue a letter terminating it (again) from the Medicaid program. Pet. at 15-16. Termination notices are issued by OIG, 1 Tex. Admin. Code § 371.1703(a), yet Planned Parenthood has joined HHSC and Executive Commissioner Young as Respondents, Pet. ¶¶ 7-8. Planned Parenthood has not identified any ministerial duty which HHSC or Executive Commissioner Young has failed to perform. Thus, Planned Parenthood has not stated a cause of action against HHSC or Executive Commissioner Young.

### B. Probable right to the relief sought

To be entitled to mandamus relief, Planned Parenthood must show that Respondents failed to perform a ministerial act—not an act that involves the use of discretion. *Anderson*, 806 S.W.2d at 793. Moreover, Planned Parenthood must demonstrate that it diligently sought mandamus relief and did not sleep on its rights. *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993). Planned Parenthood has failed at all levels.

#### 1. Planned Parenthood complains about discretionary acts.

"An act is ministerial when the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion." *Anderson*, 806 S.W.2d at 793. On the face of relevant regulations, whether to terminate the contract of a Medicaid provider is a discretionary act. As the regulations provide, "OIG *may* terminate" a provider's contract. 1 Tex. Admin. Code § 371.1703(a) (emphasis added); *see also id.* § 371.1703(c)(6), (7) ("OIG *may*

terminate") (emphasis added). Thus, Planned Parenthood's demand that OIG send it a termination notice refers to a discretionary duty, not a ministerial one.

Planned Parenthood argues that it may demand the issuance of a new, compliant notice because the December 2016 Final Notice "failed to accurately reflect" the description, effect, and duration of the termination as required by the Texas Administrative Code. Pet. ¶ 31 (citing 1 Tex. Admin. Code § 371.1703(e)). Not only are such charges baseless, *see infra* section III.B.2.a, but they also do not demonstrate a failure to perform a ministerial duty. At most, Planned Parenthood's claim that the December 2016 Final Notice "fail[s] to accurately reflect" certain issues reveals a disagreement over the language used to explain the description, effect, and duration of the termination. But the regulations do not "spell out" the specific words that must be used such that "nothing is left to the exercise of discretion." *See Anderson*, 806 S.W.2d at 793. OIG was free to choose the language it used to comply with the law.

This is not an instance in which Respondents failed to send any notice at all before terminating Medicaid contracts. As Planned Parenthood's own federal filings show, it was fully aware that the December 2016 Final Notice would effectively terminate its Medicaid provider agreements. Resp. Ex. 1 at 2 ¶ 2, 3 ¶ 23, 5 ¶ 2, 6 ¶ 34, 8 ¶ 2, 10 ¶ 15. Planned Parenthood's only claim now is that the December 2016 Final Notice was not "accurately" worded, which identifies nothing more than a discretionary act. Thus, this claim of Planned Parenthood does not show that Respondents failed to perform a ministerial act.

2.  **The December 2016 Final Notice met all legal standards.**

Even if Planned Parenthood were complaining about a ministerial act (which it is not), it would still not be entitled to relief because it can point to no legal deficiency in the December 2016 Final Notice. Respondents properly terminated Planned Parenthood's provider agreements through the December 2016 Final Notice, and Planned Parenthood has no colorable argument to the contrary. Its arguments about HHSC statements in 2021 do not change the legal effect of the Final Notice from 2016. Planned Parenthood's provider agreements were terminated as a matter of law and cannot be revived by this lawsuit.

   a.  **The December 2016 Final Notice satisfies section 371.1703(e).**

Planned Parenthood's argument that the December 2016 Final Notice failed to meet the relevant legal requirements is noticeably short on facts and law. Set next to the requirements, the Final Notice plainly and amply passes legal muster.

| Elements of Final Notice from § 371.1703(e) | December 2016 Final Notice (PP Ex. B) |
|---|---|
| A description of the termination | Pages 1-2, explaining that OIG is terminating specific Medicaid provider agreements because of its conclusion that the providers were not qualified to provide services in a professionally competent, safe, legal, and ethical manner |
| The basis for the termination | Pages 1-4, describing the program violations committed by Planned Parenthood and the affiliation of other providers that warrant termination |
| The effect of the termination | Page 4, numbered list stating what specifically will happen as a result of the termination |

| The duration of the termination | Page 5, stating that "[t]his enrollment termination is permanent" |
|---|---|
| Whether enrollment will be required | Page 5, stating that "[i]f you want to participate as a provider in the Texas Medicaid program in the future, you will be required to submit a new provider enrollment application" |
| A statement of the person's right to request an informal resolution meeting or an administrative hearing regarding the imposition of the termination | Pages 4 & 5, entitled "Appeal Process," and describing the process and timing of any appeal |

Planned Parenthood has no grounds to argue that the December 2016 Final Notice was in any way insufficient. Indeed, to obtain a preliminary injunction in 2017, Planned Parenthood told a federal court that it would be terminated from Medicaid as a result of the Final Notice. Resp. Ex. 1 at 2 ¶ 2, 3 ¶ 23, 5 ¶ 2, 6 ¶ 34, 8 ¶ 2, 10 ¶ 15. Those admissions conclusively demonstrate that Planned Parenthood (1) knew the December 2016 Final Notice was effective to terminate its contracts and (2) voluntarily chose not to appeal the Final Notice. Had Planned Parenthood chosen to request an administrative appeal, the termination would not have become effective in January 2017, as Planned Parenthood told the federal court it would be. If Planned Parenthood would have "timely filed a written request for an administrative hearing, the effective date of termination [would have been] the date the hearing officer's or administrative law judge's decision to uphold the termination [became] final." *See* 1 Tex. Admin. Code § 371.1703(g)(7). The fact that Planned Parenthood told the federal court it would be terminated in January 2017 as a result of the December 2016 Final Notice means that Planned Parenthood both understood the legal effect of the Final Notice and decided not to seek an administrative appeal.

As explained above, Planned Parenthood had 15 days from receipt of the December 2016 Final Notice to request an administrative appeal. 1 Tex. Admin. Code § 371.1703(f)(2). Otherwise, the termination would become final in 30 days. *Id.* § 371.1617(a)(1). Planned Parenthood chose not to request an administrative hearing, those deadlines passed, and the termination became final as a matter of law in January 2017. But for the federal-court injunction, Planned Parenthood would have ceased receiving Medicaid reimbursements in 2017. After the Fifth Circuit vacated the injunction, there was nothing barring the effectiveness of the terminations or preventing HHSC from proceeding to fully implement them.

      **b.    Planned Parenthood's contrary arguments lack merit.**

Planned Parenthood essentially ignores the December 2016 Final Notice and instead argues that (1) the January 2021 letter from HHSC was the real, noncompliant termination notice, and (2) a notification from HHSC to MCOs undermines HHSC's position. Neither argument has any merit.

As to Planned Parenthood's argument that the January 2021 letter was not a Final Notice, Respondents agree—because the January 2021 letter did not need to be a notice of termination, was not intended to be such, and does not even purport to be such on its face. As demonstrated in Planned Parenthood's own exhibits, the January 2021 letter was sent in response to Planned Parenthood's request that it be allowed to remain in Medicaid or else be given a lengthy grace period. PP Exs. C, E.[2] HHSC

---

[2] These exhibits also demonstrate that Planned Parenthood understood the December 2016 Final Notice terminated its Medicaid contracts—there would have been no need

Page **13** of **19**

was under no obligation to reply to Planned Parenthood's request but chose to do so anyway. Its decision to confirm that Planned Parenthood would no longer be in Medicaid and to extend a one-month grace period did not magically reinstate the provider agreements, nor could it possibly have done so. The agreements were terminated as a matter of law as a result of the December 2016 Final Notice. Nothing Planned Parenthood requested and nothing Respondents said in response could undo that.

Planned Parenthood also points to a notice that HHSC sent to the MCOs advising them that Planned Parenthood would be terminated as of January 4, 2021, with a 30-day grace period. PP Ex. G.[3] This simple notice to MCOs was part of HHSC's practical efforts to implement the termination of Planned Parenthood, but it could not have had and was not intended to have any legal effect on the actual termination of Planned Parenthood, which had already become effective long before HHSC took the practical step of communicating that termination to the MCOs.

### 3. Planned Parenthood's delay renders relief unavailable.

Finally, Planned Parenthood's inexplicable and lengthy delay in seeking mandamus relief from the December 2016 Final Notice makes such relief inappropriate. Mandamus is an extraordinary remedy that is not issued as a matter of right, but at the discretion of the court. *Callahan v. Giles*, 137 Tex. 571, 575, 155

---

to ask to remain in Medicaid or for a grace period had Planned Parenthood believed the December 2016 Final Notice was ineffective.

[3] The MCO notice incorrectly stated January 4, "2020" instead of "2021," PP Ex. G, but there is no question that the intended date was 2021.

S.W.2d 793, 795 (1941). That discretion is largely controlled by equitable principles, including the fundamental concept that "[e]quity aids the diligent and not those who slumber on their rights." *Rivercenter Assocs.*, 858 S.W.2d at 367 (quoting *Callahan*, 137 Tex. at 576, 155 S.W.2d at 795).

In *Rivercenter Associates*, the Texas Supreme Court denied mandamus because the party waited over four months before seeking relief. *Id.* at 367-68. Only a few months ago, the Court denied mandamus because the party waited ten weeks. *In re Hotze*, No. 20-0739, 2020 WL 5919726, at *2-3 (Tex. Oct. 7, 2020). Planned Parenthood waited ***over four years***, until the eve of the expiration of the grace period when many patients had likely been transitioned to new providers, to assert for the first time ever that the December 2016 Final Notice was somehow defective. Such an inexcusable and gargantuan delay renders mandamus relief unavailable.

This is especially true given that Planned Parenthood had a state administrative process available to it to challenge any deficiency in the December 2016 Final Notice. But it had to act within 15 days of receipt of the Final Notice. 1 Tex. Admin. Code §§ 371.1615(b)(2), 371.1703(f)(2). Planned Parenthood chose not to do so. Allowing it to raise any alleged deficiencies by mandamus, four years after its administrative-appeal deadline expired, would create a loophole in the exhaustion-of-administrative-remedies doctrine. A party could ignore all administrative deadlines and simply file a mandamus action at some point in the future based on a perceived flaw in the agency's process. This undermines one of the fundamental purposes of requiring exhaustion—to discourage disregard of the agency's

procedures. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Mandamus should not be used to avoid the consequences of missing (deliberately, here) state administrative deadlines.

## C. Probable, imminent, and irreparable injury in the interim

Planned Parenthood has not shown any probable, imminent, or irreparable injury to itself. The main injury about which Planned Parenthood complains is that it believes some of its patients might not have transitioned to a new Medicaid provider yet. PP Ex. K ¶¶ 8, 10; PP Ex. L ¶¶ 11-13; PP Ex. M ¶¶ 8-10. But its evidence consists largely of vague hearsay, speculation, and a news article in which people hypothesize what "may" happen, while doing nothing to determine what "will" happen. *Id.* There is no evidence of how many women would be impacted, especially given that Planned Parenthood and the MCOs spent the month of January (the one-month grace period) transitioning patients to new providers.

Regardless, any alleged injury to remaining clients who perhaps have not yet been transferred to a new provider is plainly not an irreparable injury to *Planned Parenthood*. At most, Planned Parenthood claims that it will lose money and that its "mission" will be impacted by its inability to serve Medicaid clients. Pet. ¶ 49. But the Planned Parenthood entities are not-for-profit organizations, PP Ex. K ¶ 2; PP Ex. L ¶ 2; PP Ex. M ¶ 2, and there is no evidence that the termination of their Medicaid contracts will cause them financial difficulties. Furthermore, Planned Parenthood points to no law that a general sense of "mission" can possibly support an irreparable injury.

## IV. CONCLUSION

Planned Parenthood received ample notice of termination as required by law over four years ago. There is no basis in law or fact to revive those administrative proceedings at this late date. Planned Parenthood cannot show that it meets *any* of the required elements for obtaining the extraordinary mandamus relief it seeks, meaning that temporary injunctive relief should be denied.

For all the foregoing reasons, as well as any additional reasons that may be presented at a hearing on Planned Parenthood's request for a temporary injunction, Respondents request this Court to deny Planned Parenthood's request for a temporary injunction, deny all Planned Parenthood's requests for other relief, and dismiss the Petition with prejudice.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN COWLES**
Deputy Attorney General for Civil Litigation

**THOMAS A. ALBRIGHT**
Chief - General Litigation Division

        */s/ Benjamin S. Walton*
**BENJAMIN S. WALTON**
Texas Bar No. 24075241
Assistant Attorney General
General Litigation Division
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 – Phone
(512) 320-0667 – Fax
benjamin.walton@oag.texas.gov

***Counsel for Respondents***

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document was served on February 23, 2021, via the court's e-service system on the following counsel of record:

Thomas H. Watkins
HUSCH BLACKWELL LLP
111 Congress Avenue, Suite 1400
Austin, Texas 78701
(512) 472-5456 – Phone
(512) 479-1101 – Fax
tom.watkins@huschblackwell.com

*Counsel for Relators*

        */s/ Benjamin S. Walton*
**BENJAMIN S. WALTON**
Assistant Attorney General