## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| THE STATE OF TEXAS, | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| THE STATE OF LOUISIANA, | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 2:21-CV-00022-Z |
| | § | |
| PLANNED PARENTHOOD | § | |
| FEDERATION OF AMERICA, INC., | § | |
| PLANNED PARENTHOOD GULF | § | |
| COAST, INC., PLANNED | § | |
| PARENTHOOD OF GREATER | § | |
| TEXAS, INC., PLANNED | § | |
| PARENTHOOD SOUTH TEXAS, | § | |
| INC., PLANNED PARENTHOOD | § | |
| CAMERON COUNTY, INC., | § | |
| PLANNED PARENTHOOD SAN | § | |
| ANTONIO, INC., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## RELATOR'S RESPONSE IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

i

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................... iii

INTRODUCTION ................................................................................. 1

APPLICABLE LEGAL STANDARDS ..................................................... 1

ARGUMENT ......................................................................................... 3

   I.   Relator's Complaint Adequately Alleges Violations of the Reverse False
      Claims Provisions of the FCA, TMFPA, and LMAPIL. ........................ 3

     A.  Relevant statutory history of the Reverse False Claims provision
        of the FCA ................................................................................. 3

        1.   The Reverse False Claims provision and the 2009 FERA amendment ...... 3

        2.   The 2010 Affordable Care Act overpayment and 60-Day rule provisions... 7

  II.  The Complaint Properly Alleges That Defendants Violated the FCA
      Under the Implied-False Certification Theory of Liability ............................. 16

  III. Relator's FCA Claims Are Not Barred by the Public Disclosure Bar. ............. 22

     A.  Relator's Complaint is not based on publicly disclosed information........... 24

     B.  Even if Relator's Complaint is based on publicly disclosed information, it
        adequately alleges the original-source exception to the public
        disclosure bar. ......................................................................... 26

  IV. Relator's Complaint Has Adequately Alleged Claims Against Each of the
      Planned Parenthood Defendants. ................................................... 28

   V.  Relator's Claims Are Not Barred By Texas' Intervention or the Government
      Action Bar. ................................................................................... 29

  VI. If the Court Determines the Complaint is Inadequately Pleaded, Relator
      Requests Leave to Amend. ............................................................ 31

CONCLUSION ...................................................................................... 32

# TABLE OF AUTHORITIES

## Cases

*American Textile Manufacturers Institute, Inc. v. The Limited, Inc.*,
190 F.3d 729 (6th Cir. 1999) ............................................................................5

*Arkadelphia Milling Co. v. St. Louis S.W. Ry. Co.*,
249 U.S. 134 (1919) ........................................................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................2, 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................2, 11

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*,
343 F.3d 719 (5th Cir. 2003) ...........................................................................2

*Cates v. Int'l. Telephone and Telegraph Corp.*,
756 F.2d 1161 (5th Cir. 1985) ........................................................................31

*Children's Hospital Association of Texas v. Azar*,
507 F. Supp. 3d 249 (D.D.C. 2020) ...............................................................16

*Edgar v. MITE Corp.*,
457 U.S. 624 (1982) ........................................................................................11

*Fed. Recovery Servs., Inc. v. United States*,
72 F.3d 447 (5th Cir. 1995) ...........................................................................30

*Hart v. Bayer Corp.*,
199 F.3d 239 (5th Cir. 2000) ..........................................................................31

*In re Bayou Shores SNF, LLC*,
828 F.3d 1297 (11th Cir. 2016). ....................................................................10

*In re Katrina Canal Breaches Litig.*,
495 F.3d 191 (5th Cir. 2007) .....................................................................1, 16

*Md. Dep't. of Human Res. v. U.S. Dep't of Agric.*,
976 F.2d 1462 (4th Cir. 1992) ........................................................................11

*Nat'l Kidney Patients Asso. v. Sullivan*,
958 F.2d 1127 (D.C. Cir. 1992) ......................................................................10

*Robertson v. Bell Helicopter Textron, Inc.*,
32 F.3d 948 (5th Cir. 1994) .............................................................................2

*United States ex rel. Bain v. Ga. Gulf Corp.*,
386 F.3d 648 (5th Cir. 2004) ...........................................................................4

*United States ex rel. Campbell v. KIC Dev., LLC*,
No. EP-18-CV-193-KC, 2019 WL 6884485 (W.D. Tex. 2019)......................29

*United States ex rel. Colquitt v. Abbott Labs.*,
858 F.3d 365 (5th Cir. 2017) ...........................................................................2

*United States ex rel. Fallon v. Accudyne Corp.,*
  97 F.3d 937 (7th Cir. 1996) ..................................................................30

*United States ex rel. Farmer v. City of Houston,*
  523 F.3d 333 (5th Cir. 2008) ................................................................29

*United States ex rel. Fried v. W. Indep. Sch. Dist.,*
  527 F.3d 439 (5th Cir. 2008) ................................................................24

*United States ex rel. Grubbs v. Kanneganti,*
  565 F.3d 180 (5th Cir. 2009) ........................................................ 2, 3, 29

*United States ex rel. Jamison v. McKesson Corp.,*
  649 F.3d 322 (5th Cir. 2011) ................................................................24

*United States ex rel. Ketroser v. Mayo Found.,*
  729 F.3d 825 (8th Cir. 2013) ................................................................30

*United States ex rel. Landis v. Tailwind Sports Corp.,*
  51 F. Supp. 3d 9 (D.D.C. 2014) ...........................................................30

*United States ex rel. Lemon v. Nurses To Go, Inc.,*
  924 F.3d 155 (5th Cir. 2019) .......................................................... 17, 22

*United States ex rel. Marcy v. Rowan Co.,*
  520 F.3d 384 (5th Cir. 2008) ..................................................................4

*United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.,*
  519 F. App'x 890 (5th Cir. 2013) ............................................................3

*United States ex rel. Ormsby v. Sutter Health,*
  444 F. Supp. 3d 1010 (N.D. Cal. 2020) ................................................31

*United States ex rel. Porter v. HCA Health Services of Oklahoma, Inc.,*
  No. 3:09-cv-0992, 2011 WL 4590791 (N.D. Tex. Sep. 30, 2011)...............6

*United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.,*
  384 F.3d 168 (5th Cir. 2004) ................................................................23

*United States ex rel. Shemesh v. CA, Inc.,*
  89 F. Supp. 3d 36 (D.D.C. 2015).........................................................30

*United States ex rel. Simoneaux v. E.I. DuPont de Nemours & Co.,*
  843 F.3d. 1033 (5th Cir. 2016) ........................................................... 5, 6

*United States v. Bollinger Shipyards, Inc.,*
  775 F.3d 255 (5th Cir. 2014) ................................................................12

*United States v. Lahey Clinic Hosp., Inc.,*
  399 F.3d 1 (1st Cir. 2005).....................................................................11

*United States v. Q Int'l Courier, Inc.,*
  131 F.3d 770 (8th Cir. 1997) ..................................................................5

*Universal Health Servs., Inc. v. United States ex rel. Escobar,*
  136 S.Ct. 1989 (2016) ....................................................17, 19, 20, 22

*Wenner v. Tex. Lottery Comm'n,*
  123 F.3d 321 (5th Cir. 1997) ................................................................11

*Williams v. WMX Techs., Inc.*,
    112 F.3d 175 (5th Cir. 1997) ....................................................................... 2

**Statutes**

31 U.S.C.
    § 3729(a)(1) ................................................................................... 4, 6, 16
    § 3729(a)(1)(C) ...................................................................................... 29
    § 3729(a)(1)(G) ................................................................................... 3, 4
    § 3729(a)(7) ............................................................................................ 4
    § 3729(a)(7) (2000) .............................................................................. 4
    § 3729(b)(1)(A) ................................................................................. 7, 12
    § 3729(b)(1)(B) ................................................................................. 7, 12
    § 3729(b)(3) ........................................................................................ 5, 6
    § 3730(e)(4)(A) ...................................................................................... 23
    § 3730(e)(4)(B) ...................................................................... 23, 26, 27

42 U.S.C.
    § 289g-1 .................................................................................................. 21
    § 289g-2 .................................................................................................. 21
    § 1320a-7k(d) .......................................................................................... 7
    § 1320a-7k(d)(1) ..................................................................................... 7
    § 1320a-7k(d)(2) ..................................................................................... 7
    § 1320a-7k(d)(3) ..................................................................................... 7
    § 1320a-7k(d)(4)(B) ............................................................................... 7

Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, 87 Fed.
    Reg. 2187 (Jan. 13, 2022) .................................................................... 4
Fraud Enforcement and Recovery Act, Pub. Law. 111-21, 123 Stat. 1617 (2009) ...... 4
La. Rev. Stat
    § 46:438.3(A) .......................................................................................... 16
    § 46:438.3(D) .......................................................................................... 29
    § 46:438.3(C) ............................................................................................ 3
Pub. L. No. 111-21 .......................................................................................... 5
Tex. Hum. Res. Code
    § 36.002(12) .............................................................................................. 3
    § 36.002(2) ....................................................................................... 16, 17
    § 36.002(4) ....................................................................................... 16, 17
    § 36.002(9) .............................................................................................. 29

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................................. 1

Fed. R. Civ. P. 8 ........................................................................................................ 1, 3
Fed. R. Civ. P. 9(b) ............................................................................................. 2, 3, 12
Fed. R. Civ. P. 15(a) ................................................................................................... 31

## Regulations

1 Tex. Admin Code

§ 371.1661 ................................................................................................................ 21
§ 371.1603(g)(5) ....................................................................................................... 21
§ 371.1603(g)(7) ....................................................................................................... 21
§ 371.1605(a) ............................................................................................................ 21
§ 371.1659(2) ............................................................................................................ 21
§ 371.1659(6) ............................................................................................................ 21
§ 371.1703(c)(6) ....................................................................................................... 21
§ 371.1703(g)(5) ....................................................................................................... 14

42 C.F.R

§ 422.326 .................................................................................................................... 8
§ 422.326(c) ................................................................................................................ 8
§ 423.360 .................................................................................................................... 8
§ 423.360(c) ................................................................................................................ 8

## Other Authorities

Brief for United States, *United States v. Bourseau*, No. 06-56741 (9th Cir. July 14, 2008) .......................................................................................................................... 6
Douglas Laycock, Federal Interference with State Prosecutions: The Need for Prospective Relief, 1977 Sup. Ct. Rev. 193 (1977) .................................................. 11
S. Rep. No. 111-10 (2009) ..................................................................................... 5, 6
U.S. Dep't of Health & Human Servs., Ctrs. For Medicare & Medicaid Servs., *Medicare Program; Contract Year 2015 Policy and Technical Changes to the Medicare Advantage and the Medicare Prescription Drug Benefit Programs*, 79 Fed. Reg. 29,844 (May 23, 2014) ...................................................................... 8, 9

## INTRODUCTION

Relator Alex Doe brought this lawsuit on behalf of the United States and the States of Texas and Louisiana against Defendants to recover damages and civil penalties pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (FCA), the Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code §§ 36.001 *et seq.* (TMFPA), and the Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat §§ 46:437.1 *et seq.* (LMAPIL). Relator alleges that from at least 2010 and continuing through 2020, the Planned Parenthood Defendants, who own and operate abortion facilities and health clinics in Texas and Louisiana, presented thousands of false or fraudulent claims for payment for Medicaid services, received millions of dollars of payments from state and federal funds for these false or fraudulent Medicaid claims, and failed to report and pay to the government the money that Planned Parenthood received from these false claims after it knew or should have known that it was not entitled to keep the money.

## APPLICABLE LEGAL STANDARDS

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

The purpose of the FCA is "to discourage fraud against the government." *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994). FCA complaints must "state with particularity the circumstances constituting fraud" pursuant to Federal Rule of Civil Procedure 9(b). *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). This typically requires "details such as the time and place of the false representations." *United States ex rel. Colquitt v. Abbott Labs.*, 858 F.3d 365, 371 (5th Cir. 2017). But the Fifth Circuit has cautioned that the "time, place, contents, and identity standard is not a straitjacket." *See id.* at 372 (quoting *Grubbs*, 565 F.3d at 190). The amount of particularity required for pleading fraud differs from case to case. *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003); *see also Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997). The application of Rule 9(b) must be "context specific" and "flexible" "to achieve the remedial purpose of the [FCA]." *See Grubbs*, 565 F.3d at 190. "Depending on the

claim, a plaintiff may sufficiently 'state with particularity the circumstances constituting fraud or mistake' without including all the details of any single court-articulated standard – it depends on the elements of the claim at hand." *Id.* at 188 (internal citations omitted). The standard for pleading fraud under the FCA rests somewhere between the Rule 8 pleading standard and the traditional Rule 9(b) pleading standard. *United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 893 n.3 (5th Cir. 2013). Thus, "claims under the FCA need only show the specifics of a fraudulent scheme and provide an adequate basis for a reasonable inference that false claims were submitted as part of that scheme." *Grubbs*, 565 F.3d at 189. Knowledge, intent, and state of mind "may be alleged generally." Fed. R. Civ. P. 9(b).

## ARGUMENT

## I. Relator's Complaint Adequately Alleges Violations of the Reverse False Claims Provisions of the FCA, TMFPA, and LMAPIL.

Relator alleges claims against Defendants under the reverse false claims provisions of the FCA, 31 U.S.C. § 3729 (a)(1)(G), TMFPA, Tex. Hum. Res. Code § 36.002(12), and LMAPIL, La. Rev. Stat. § 46:438.3(C). Compl. ¶¶ 118-121 (FCA); ¶ 127 (TMFPA); ¶ 133 (LMAPIL).

### A. Relevant statutory history of the Reverse False Claims provision of the FCA

#### 1. The Reverse False Claims provision and the 2009 FERA amendment

Before 2009, the FCA provided that a person who "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease

an obligation to pay or transmit money or property to the Government" was liable to the United States for civil penalties and treble damages. 31 U.S.C. § 3729(a)(7) (2000); *see also United States ex rel. Bain v. Ga. Gulf Corp.*, 386 F.3d 648, 652-53 (5th Cir. 2004) (applying 31 U.S.C. § 3729(a)(7)); *United States ex rel. Marcy v. Rowan Co.*, 520 F.3d 384, 390 (5th Cir. 2008) (same). This provision, referred to as the "reverse false claims" provision, was amended in 2009 when Congress passed the Fraud Enforcement and Recovery Act, Pub. Law. 111-21, 123 Stat. 1617 (2009) (FERA). FERA extensively amended the FCA and amended the reverse false claims provision to create liability for a person who:

> knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, <u>or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government</u>.

31 U.S.C. § 3729(a)(1)(G) (emphasis added to indicate new language included in the FERA-amended provision).

Thus, under the second clause of the amended reverse false claims provision, a party that "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government" is liable to the United States for a civil penalty between $11,803 and $25,076 and treble damages. *See id.* § 3729(a)(1); *see* Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, 87 Fed. Reg. 2187 (Jan. 13, 2022) (announcing updated penalty inflation adjustments for civil monetary penalties for 2022).

Congress also added the following definition of the term "obligation":

> an established duty, whether fixed or not, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, <u>or from the retention of any overpayment</u>.

*See* FERA, Pub. L. No. 111-21, § 4(a)(2), 123 Stat. at 1623 (codified at 31 U.S.C. § 3729(b)(3)) (emphasis added)). Before 2009, "obligation" had not been defined in the FCA, and in adding this definition, Congress noted that "[t]he new definition of 'obligation' includes an express statement that an obligation under the FCA includes 'the retention of an overpayment.' The Department of Justice supported the inclusion of this provision and provided technical advice that the proper place to include overpayments was in the definition of obligation." S. Rep. No. 111-10, at 15 (2009).

In making this amendment, Congress "provid[ed] a definition of 'obligation'" in response to "the judge-made definitions that various courts had devised." *See United States ex rel. Simoneaux v. E.I. DuPont de Nemours & Co.*, 843 F.3d. 1033, 1036-37 (5th Cir. 2016). The definition of "obligation" was also added to correct, among other cases, the Sixth Circuit's decision in *American Textile Manufacturers Institute, Inc. v. The Limited, Inc.*, 190 F.3d 729 (6th Cir. 1999), which narrowly defined "obligation" to include only obligations that were established and fixed in all particulars. S. Rep. No. 111-10, at 14 n.10; *see also* S. Rep. No. 111-10, at 14 (citing with disapproval *United States v. Q Int'l Courier, Inc.*, 131 F.3d 770, 774 (8th Cir. 1997), which held that the obligation "must be for a fixed sum that is immediately due").

Thus, Congress corrected the narrow definition of "obligation" set forth in *The Limited* and *Q International*.[1] Accordingly, as the Senate Judiciary Committee noted, a "reverse" false claim violation is committed "once an overpayment is knowingly and improperly retained, without notice to the Government about the overpayment," S. Rep. No. 111-10, at 15, and "an 'obligation'" exists "'whether or not the amount owed is yet fixed.'" *Id.* at 14 (quoting Brief for United States at 24, *United States v. Bourseau*, No. 06-56741 (9th Cir. July 14, 2008)). This amendment substantially altered the reverse false claims landscape by imposing liability where a party disregarded its obligation to refund an overpayment.

The Fifth Circuit recounted this legislative history and discussed the new statutory text in *Simoneaux,* making "clear" that "the fact that further governmental action is required to collect a fine or penalty does not, standing alone, mean that a duty is not established." *Simoneaux*, 843 F.3d at 1039-40.

Despite broadening the definition of "obligation," FERA did not substantively amend the terms "knowing" or "knowingly." The FCA defines those terms to mean when a person, with respect to information, either has actual knowledge of the

---

[1] Defendants incorrectly state that "[t]he FCA's 'reverse false claims' provision imposes liability on any person who 'knowingly and improperly' avoids or decreases a 'clear' obligation to pay or transmit money or property to the government." Mot. at 16. The reverse false claims provision does not state that there must be a "clear" obligation. *See* 31 U.S.C. § 3729(a)(1)(G). Defendants cite *United States ex rel. Porter v. HCA Health Services of Oklahoma, Inc.*, No. 3:09-cv-0992, 2011 WL 4590791 (N.D. Tex. Sep. 30, 2011), but *HCA* involved conduct that predated the 2009 FERA amendments. *See id.* at *1 (relator worked at the lab from 2002-2005). *HCA* applied the pre-FERA version of the FCA and did not cite or consider FERS's broadened definition of "obligation" as codified in 31 U.S.C. § 3729(b)(3). *See id.* at *7-8.

information, acts in deliberate ignorance of the truth or falsity of the information, or acts in reckless disregard of the ruth or falsity of the information. *See* 31 U.S.C. § 3729(b)(1)(A). The FCA expressly states that no proof of specific intent to defraud is required. 31 U.S.C. § 3729(b)(1)(B).

### 2. The 2010 Affordable Care Act overpayment and 60-Day rule provisions

As part of the 2010 Affordable Care Act (ACA), Congress included a provision requiring recipients of Medicare and Medicaid funds who "received an overpayment" to "report and return the overpayments to HHS or the State. *See* 42 U.S.C. § 1320a-7k(d)(1). In that context, Congress also adopted the following definition of overpayment: "any funds that a person receives or retains under [the Medicare or Medicaid programs] to which the person, after applicable reconciliation, is not entitled." *See id.* § 1320a-7k(d)(4)(B). The ACA additionally sets a deadline for the return of overpayments and provides that an "overpayment must be reported and returned" within "60 days after the date on which the overpayment was identified." *Id.* § 1320a-7k(d)(2). Further, in a provision entitled "Enforcement," the ACA provides that "[a]ny overpayment retained by a person after the deadline for reporting and returning the overpayment . . . is an obligation (as defined in section 3729(b)(3) of [the False Claims Act]) for purposes of section 3729 of such title." *Id.* § 1320a-7k(d)(3). Accordingly, a person who has "received an overpayment" must report and return such overpayment within "60 days after the date on which the overpayment was identified" and if the recipient fails to do so, that recipient has violated the False Claims Act. *Id.* § 1320a-7k(d).

In May 2014, CMS issued its final rule to implement the reporting and return of overpayments provisions of the ACA with respect to the Part C Medicare Advantage program and the Part D Prescription Drug Program. *See* U.S. Dep't of Health & Human Servs., Ctrs. For Medicare & Medicaid Servs., *Medicare Program; Contract Year 2015 Policy and Technical Changes to the Medicare Advantage and the Medicare Prescription Drug Benefit Programs*, 79 Fed. Reg. 29,844 (May 23, 2014). In its final rule, CMS adopted the definition of "overpayment" in the ACA and generally required that Medicare Advantage (MA) organizations and Part D plan sponsors to return "[i]dentified overpayments" within 60 days. *See* 42 C.F.R §§ 422.326, 423.360. CMS defined "[i]dentified overpayment" to mean that the MA organization or Part D sponsor "has identified an overpayment when the [entity] has determined, or should have determined through the exercise of reasonable diligence, that [it] has received an overpayment." *Id*. §§ 422.326(c), 423.360(c). CMS explained that "reasonable diligence might require an investigation conducted in good faith and in a timely manner by qualified individuals in response to credible information of a potential overpayment." 79 Fed. Reg. at 29,923-24. CMS specifically rejected commenters' suggestions that "identify" should be defined to require "actual knowledge," observing that:

> If the requirement to report and return overpayments applied only to situations where the MA organization or Part D sponsor has actual knowledge of the existence of an overpayment, then these entities could easily avoid returning improperly received payments and the purpose of

> the section would be defeated. Thus, we decline to read a narrow actual
> knowledge limitation into the law as suggested by commenters.[2]

*Id.* at 29924. CMS thus indicated that providers cannot seek to avoid their obligation to return overpayments by simply deciding not to investigate. If this were so, entities could easily avoid returning improperly received payments and the purpose of the ACA report-and-return requirements, and the 2009 amendment to the reverse false claim provision, would be defeated.

### B. Relator's Complaint plausibly alleges that Defendants avoided their "obligation" to repay money to the Government.

Relator's Complaint plausibly alleges that Defendants violated the reverse false claims provisions of the FCA, TMFPA, and LMAPIL by failing to repay millions of dollars of Medicaid funds they received from the government. Specifically, the Complaint alleges that: (1) Defendants had an obligation to repay the government; (2) they improperly avoided that obligation by keeping funds owed to the government; and (3) they knew or should have known of their obligation to repay the government.

Defendants contend that they did not have an "obligation" to repay the government because the funds were paid to Defendants under a preliminary injunction. Mot. at 16-21. Put simply, Defendants' argument is that a preliminary injunction is tantamount to a grant of immunity and absolves Defendants of all

---

[2] While the claims at issue in this case are Medicaid claims, the overarching policy objectives articulated by CMS are not limited to the Medicare managed care or Part D prescription drug programs, but instead relate to CMS's construction of the term "identify," which has broad application to Medicare and Medicaid providers. *See* 79 Fed. Reg. at 29,924. These objectives are thus broadly applicable and make clear that a provider cannot bury its head in the sand to avoid repayment obligations. *See id.*

liability. But Defendants ignore the "principle, long established and of general application, that a party against whom an erroneous judgment or decree has been carried into effect is entitled, in the event of a reversal, to be restored by his adversary to that which he lost thereby." *Arkadelphia Milling Co. v. St. Louis S.W. Ry. Co.*, 249 U.S. 134, 145 (1919). Courts have relied on this principle in holding that a party may be liable for funds it receives under a court order or injunction that is vacated. In *National Kidney Patients Association v. Sullivan*, 958 F.2d 1127 (D.C. Cir. 1992), the D.C. Circuit held that a Medicaid provider may be liable for failing to repay government funds that it obtained under a vacated injunction.. The court explained:

> For slightly over 13 months the Department of Health and Human Services made payments to Home Intensive Care, Inc. ("HIC") under a preliminary injunction issued by the district court. As a result of congressional action, that injunction has been modified and the modified injunction has been vacated as moot. While it was in effect, however, HHS paid HIC millions of dollars—HHS says $15 million—more than it otherwise would have. Here it asks that we reverse the district court's injunction prohibiting it from recouping those sums, and instead allow it to both recover on a $750,000 injunction bond and to apply its usual administrative recoupment processes to the transactions with HIC. We agree, and reverse the order of the district court.

958 F.2d at 1127-28. The Eleventh Circuit reached a similar holding in *In re Bayou Shores*, a case involving an injunction preventing the termination of a health care provider from the Medicaid program. *See In re Bayou Shores SNF, LLC*, 828 F.3d 1297, 1327-28 (11th Cir. 2016). The court held, after reversing an injunction preventing the health care provider's termination, that the government could seek to recover the payments it had made pursuant to the injunction. *Id.* And the Fourth Circuit has held that an injunction may not deprive the government of the right to

pursue numerous statutorily provided remedies to recoup improperly paid funds. *See Md. Dep't. of Human Res. v. U.S. Dep't. of Agric.*, 976 F.2d 1462, 1467 (4th Cir. 1992); *see also* Douglas Laycock, Federal Interference with State Prosecutions: The Need for Prospective Relief, 1977 Sup. Ct. Rev. 193, 209 (1977) ("The interlocutory injunction is not a complete remedy. It does not forever prevent prosecution of violations committed under its protection; it temporarily prevents prosecution of all violations described in the order. If the final judgment holds the statute valid, dissolves the interlocutory injunction, and denies permanent relief, state officials would be free to prosecute any violation within that limitations period."); *compare Edgar v. MITE Corp.*, 457 U.S. 624, 648-53 (1982) (Stevens, J., concurring) *with id.* at 656-57 (1982) (Marshall, J., dissenting). Where monies are owed to the government, courts have recognized the "clear congressional intent to provide several avenues for the United States to recover monies owed to it and not to limit the means of recovery to those promulgated by the Secretary in the Medicare Act." *United States v. Lahey Clinic Hosp., Inc.*, 399 F.3d 1, 17 (1st Cir. 2005).

Defendants' reliance on *Wenner v. Tex. Lottery Comm'n*, 123 F.3d 321 (5th Cir. 1997), is misguided. Mot. at 19-20. *Wenner* is distinguishable for many reasons, including that it did not involve the overpayment of government funds, the obligation to repay government funds, or the right to recover overpayments from program participants. *See Wenner*, 123 F.3d 321. It certainly falls well short of showing that Relator's claims are implausible. *See Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at

678. Relator's Complaint plausibly alleges that Defendants had an obligation to repay Medicaid funds to the Government.

### C. Relator's Complaint plausibly alleges that Defendants "knowingly and improperly" avoided their obligation to repay the Government.

Rule 9(b) provides that knowledge, intent, and state of mind "may be alleged generally." Fed. R. Civ. P. 9(b), *see United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 260-61 (5th Cir. 2014). Under the FCA, the term "knowingly" includes (1) actual knowledge of the information; (2) deliberate ignorance of the truth or falsity of the information; or (3) reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b)(1)(A). The FCA expressly states that "the terms 'knowing' and 'knowingly' require no proof of specific intent to defraud." 31 U.S.C. § 3729(b)(1)(B).

Relator's Complaint plausibly alleges that Defendants acted with the requisite scienter—that is, they were aware or should have been aware of their obligation to repay the government, and they knowingly avoided it. Relator alleges that Defendants avoided their obligation to repay the Medicaid funds they received after Louisiana and Texas notified Defendants of their termination from the Medicaid programs. Relator's Complaint alleges that Defendants knew or should have known that they improperly received Medicaid overpayments and had an obligation to repay those funds to the government. Compl. ¶ 120.

Relator's Complaint includes allegations regarding Defendants' knowledge of their termination from the Louisiana Medicaid program and their knowledge of the obligation to repay the Medicaid funds they improperly received from the government while disqualified or terminated from the Louisiana Medicaid program. Specifically,

Relator's Complaint alleges that Louisiana notified Defendants on September 15, 2015 of their termination from the Louisiana Medicaid program and that the termination would be effective October 15, 2015 if Defendants did not file an administrative appeal. Compl. ¶¶ 82, 83, Ex. A ("If you do not request an Informal Hearing or an Administrative Appeal, your termination will become effective thirty (30) days (including Saturdays and Sundays) from the date of your receipt of this letter."). Relator's Complaint alleges that Defendants did not challenge their termination from the Louisiana Medicaid program through the state administrative process and that the termination therefore became final under state law on October 15, 2015. *See* Compl. ¶ 83. Relator's Complaint further alleges that Defendants were aware, or should have become aware, that they received overpayments while disqualified or terminated from the Louisiana Medicaid program, and were aware, or should have become aware of their obligation to repay those funds on November 23, 2020, the date the Fifth Circuit vacated the Texas district court's preliminary injunction. Compl. ¶¶ 106, 110, 111, 120.

Relator's Complaint includes similar allegations regarding Defendants' knowledge of their termination from the Texas Medicaid program and their knowledge of the obligation to repay the Medicaid funds they improperly received from the government while disqualified or terminated from the Texas Medicaid program. Relator's Complaint alleges that Texas sent a final notice of termination to Defendants on December 20, 2016 informing Defendants of their termination from the Texas Medicaid program and that the termination would be final under Texas

13

law on January 19, 2017 if Defendants did not file an administrative appeal. Compl. ¶¶ 91, 92, Ex. C ("If you do not request a hearing as discussed above, the effective date of your enrollment termination will be the 30th calendar day following your receipt of this Final Notice of Termination."). Relator's Complaint further alleges that Defendants did not challenge their termination from the Texas Medicaid program through the state administrative process and that the termination therefore became final under state law on January 19, 2017. Compl. ¶ 108. And Relator further alleges that Defendants were aware, or should have become aware, that they received overpayments while terminated or disqualified from the Texas Medicaid program and were aware, or should have become aware, of their obligation to repay those funds on November 23, 2020, the date the Fifth Circuit vacated the Texas district court's preliminary injunction. Compl. ¶¶ 110, 111, 120.

Finally, Relators' Complaint alleges that Defendants were aware of and certified their obligation to comply with all applicable laws and regulations concerning participation in the Medicaid program, including their obligation to repay funds they received during a period of termination. For example, Relator alleges that by signing the Texas Provider Agreement, Defendants certified and agreed to an affirmative duty to refund any overpayments, duplicate payments and erroneous payments that were paid by Medicaid as soon as such payments were discovered or reasonably should have been known. Compl. ¶ 38. Moreover, State statutes informed Defendants of their obligation to repay the Medicaid funds they received after being notified of their termination or disqualification from the Texas Medicaid program. 1

Texas Administrative Code § 371.1703(g)(5), states that if a Medicaid provider submits, or causes to be submitted, claims after termination or cancellation the provider "may be liable to repay any submitted claims or subject to civil monetary penalty liability under § 1128A(a)(1)(D), and criminal liability under § 1128B(a)(3) of the Social Security Act in addition to sanctions or penalties by the OIG." Relator's Complaint also identifies numerous statutory provisions and Medicaid regulations that informed Defendants of their obligation to repay Medicaid funds within 60 days of November 23, 2020, including the Louisiana Provider Agreement, which expressly states that the provider agrees to report and refund any discovered overpayments within 60 days of discovery, and the TMFPA, which provides that failure to return any overpayment within 60 days after the date on which the overpayment was identified constitutes a reverse false claim. Compl. ¶¶ 43, 55. As a defense to liability, Defendants cannot disclaim knowledge of their obligations under statutes and regulations that governed their participation in the Medicaid program, including statutes and regulations they expressly agreed to comply with as a condition to participating in the Medicaid program.

Defendants' arguments regarding the effective date of their termination from the Medicaid programs ignore the plain language of the termination notices Defendants received from Texas and Louisiana and the effect of the Fifth Circuit's November 23, 2020 ruling vacating the Texas district court's injunction. The States' notices of termination informed Defendants that their termination from the Medicaid programs would be effective 30 days after Defendants received the notices of

15

termination. Compl. ¶¶ 82, 91, Ex. A, Ex. C. Defendants did not challenge the terminations in state administrative proceedings. Compl. ¶¶83, 92. Thus, Relators' Complaint plausibly alleges that Defendants knew or should have known that the terminations were effective 30 days after they received the notices of termination.[3] Defendants may dispute facts related to knowledge or obligation, but at the motion-to-dismiss stage, all facts alleged are to be taken as true. *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205.

## II. The Complaint Properly Alleges That Defendants Violated the FCA Under the Implied-False Certification Theory of Liability

Relator alleges that Defendants knowingly submitted, or caused to be submitted, false claims for payment in violation of the FCA, 31 U.S.C. § 3729(a)(1)(A), TMFPA, Tex. Hum. Res. Code §§ 36.002(2), (4), and LMAPIL, La. Rev. Stat § 46:438.3(A). Compl. ¶¶ 115-16, 123, 125-26, 132.[4] Relator asserts these claims

---

[3] Just one week after the Fifth Circuit vacated the preliminary injunction as to Defendants' termination from the Texas Medicaid program, *Children's Hospital Association of Texas v. Azar*, 507 F.Supp.3d 249 (D.D.C. 2020) held that the effective date of a challenged Medicaid rule was the originally scheduled effective date and not the date on which the mandate issued for the court of appeals' judgment reversing the district court's holding that the rule was invalid.

[4] The FCA and LMAPIL impose liability on a provider who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729 (a)(1)(A); La. Rev. Stat § 46:438.3(A). The TMFPA is broader in scope and imposes liability where a provider "(2) knowingly conceals or fails to disclose information that permits a person to receive a benefit or payment under the Medicaid program that is not authorized or that is greater than the benefit or payment that is authorized" and "(4) knowingly makes, causes to be made, induces, or seeks to induce the making of a false statement or misrepresentation of material fact concerning: (A) the conditions or operation of a facility in order that the facility may qualify for certification or recertification required by the Medicaid program, … or (B) information required to be provided by a federal or state law, rule, regulation, or

under the "implied false certification" theory of liability. Under this theory, liability attaches when two conditions are met: (1) "the claim does not merely request payment, but also makes specific representations about the goods and services provided;" and (2) "the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those misrepresentations misleading half-truths." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S.Ct. 1989, 2001 (2016). Liability does not turn on whether such requirements were expressly designated as conditions of payment. *Id.* at 1996. Rather, liability turns on "whether the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision." *Id.* "Whether a provision is labeled a condition of payment is relevant to but not dispositive of the materiality inquiry." *Id.* at 2001. Thus, "the Supreme Court made clear that defendants could be liable under the FCA for violating statutory or regulatory requirements, whether or not those requirements were designated in the statute or regulation as conditions of payment." *United States ex rel. Lemon v. Nurses To Go, Inc.*, 924 F.3d 155, 159-60 (5th Cir. 2019) (citing *Escobar*). The pertinent inquiry for implied false certification claims, then, is not whether a defendant made an affirmative or express false statement. Rather, it is whether, through the act of submitting a claim, a defendant knowingly and falsely implied that it was entitled to

---

provider agreement pertaining to the Medicaid program." Tex. Hum. Res. Code §§ 36.002(2), (4). Relator's Complaint adequately alleges implied false certification claims under the FCA and LMAPIL, and the analogous provisions of the TMFPA.

payment when it was not because it violated applicable statutes and regulations before submitting the claim, which would disqualify it from payment.

Relator's Complaint alleges that by submitting Medicaid claims for payment for women's health services, Defendants represented that they had complied with core state and federal Medicaid requirements, specifically (1) that Defendants were "qualified" under state and federal law to provide medical services in a safe, legal, and ethical manner, and (2) that Defendants had not violated any medical or ethical standards or state or federal laws in their provision of medical services. Compl. ¶ 115. Relator further alleges that by submitting Medicaid claims that conveyed this information without disclosing their violations of medical and ethical standards and state and federal laws, Defendants' claims constituted misrepresentations that were material to the States' decisions to pay Defendants' Medicaid claims. Compl. ¶¶ 115-116. Relator alleges that Defendants knew or reasonably should have known that the States would deny their Medicaid claims and terminate their enrollment in the Medicaid program if they disclosed the violations. *Id*. Further, Relator alleges that when Relator provided information to the United States and the States disclosing Defendants' violations of medical and ethical standards and state and federal laws, the States determined that Defendants were not qualified to provide Medicaid services and terminated their enrollment in the Medicaid program. Compl. ¶ 116.

Nonetheless, Defendants argue that Relator's claims under the implied false certification theory of liability must be dismissed because they do not sufficiently

allege the elements of falsity and materiality. Mot. at 23-28. The law does not support Defendants' arguments.

### A. Relator's Complaint Plausibly Alleges Falsity.

Relator's Complaint alleges that Defendants falsely certified their compliance with the statutory and regulatory requirements for participating in the Louisiana and Texas Medicaid programs and that compliance with those requirements was a condition of payment. Compl. ¶¶ 98-99. Defendants contend that Relator has not identified any false representation that Defendant made on any specific claim for payment. Mot. at 24-26. But that is not what the law requires for pleading a violation of the FCA under the implied false certification theory.

In *Escobar*, the Supreme Court rejected the same argument that Defendants make here, holding that "misrepresenting compliance with a condition of eligibility to even participate in a federal program when submitting a claim" could expose a defendant to liability under the implied false certification theory. 136 S.Ct. at 2002. Relator's Complaint alleges that "[b]y submitting Medicaid claims for payment for women's health services, the Planned Parenthood Defendants represented that they had complied with core state and federal Medicaid requirements, specifically (1) that the Planned Parenthood Defendants were 'qualified' under state and federal law to provide medical services in a safe, legal, and ethical manner, and (2) that the Planned Parenthood Defendants had not violated any medical or ethical standards or state or federal laws in its provision of medical services. By submitting Medicaid claims that conveyed this information without disclosing their violations of medical and ethical

19

standards and state and federal laws, the Planned Parenthood Defendants' claims constituted misrepresentations." Compl. ¶115. These allegations comply with *Escobar* and plausibly allege the falsity element under the implied false certification theory of liability.

### B. Relator's Complaint Plausibly Alleges Materiality.

"[W]hen evaluating materiality under the False Claims Act, the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive." *Escobar,* 136 S.Ct. at 2002. *Escobar* considered the following evidence relevant to the materiality issue: (1) the Government's decision to expressly identify a provision as a condition of payment, (2) evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement, and (3) materiality cannot be found where noncompliance is minor or insubstantial. *Id*; *see also United States ex rel. Lemon v. Nurses To Go, Inc.*, 924 F.3d 155, 160 (5th Cir. 2019) (citing *Escobar*).

To determine whether the alleged violations are conditions of payment, the Fifth Circuit has held that "if a requirement is labelled a condition of payment and it is violated," … "it is certainly probative evidence of materiality." *Lemon*, 924 F.3d at 160. Here, Relator alleges that Defendants submitted millions of dollars of Medicaid claims for medical services but failed to disclose serious violations of medical and ethical standards and state and federal laws pertaining to Defendants' qualifications to provide these services. *See generally* Compl. ¶¶12. Relator's Complaint alleges that

by signing the Texas Provider Agreement and enrolling in the Texas Medicaid program, Defendants certified that they understood and would comply with all the requirements thereof, including the delivery of healthcare services in accordance with accepted medical community standards. Compl. ¶¶ 37-40. Similarly, Relator's Complaint alleges that by signing the Louisiana Provider Agreement and enrolling in the Louisiana Medicaid program, Defendants certified that they understood and were willing to comply with the terms of the Agreement, all federal or state laws, regulations, policies, rules, criteria, or procedures applicable to the Louisiana Medicaid program. Compl. ¶¶ 41-46. Relator's claims are based on allegations that Defendants falsely certified their compliance with these Medicaid program requirements, which the States have identified as conditions of payment. Compl. ¶¶ 37-46. Specifically, Relator alleges that based on information provided to the States from Relator's investigation, the States determined that Defendants medical practices violated accepted medical and ethical standards, as reflected in federal and state law, and were Medicaid program violations, including violations of 42 U.S.C. § 289g-1; 42 U.S.C. § 289g-2; 1 Tex. Admin. Code § 371.1659(2) and (6); 1 Tex. Admin Code § 371.1661; 1 Tex. Admin. Code § 371.1703(c)(6); 1 Tex. Admin. Code § 371.1605(a); 1 Tex. Admin. Code § 371.1603(g)(5) and (7). Compl. at ¶ 91, Ex. C. Relator's Complaint thus plausibly alleges that compliance with each of these policies and Medicaid program requirements was a condition of payment in the Texas and Louisiana Medicaid programs.

In evaluating materiality, courts also consider whether the government would deny Defendants' claims if it had known of the alleged violations, and whether Defendants' noncompliance is minor or insubstantial. *Lemon*, 924 F.3d at 161, 163. Relator's Complaint alleges that the States terminated Defendants from the Medicaid program when they learned of Defendants' violations of numerous Medicaid requirements that are conditions of payment. Compl. ¶¶ 84, 91. That is sufficient to plausibly allege that the States would have denied payment if they had known of Defendants' failure to comply with these policies and requirements, and thus satisfies materiality. *Escobar,* 136 S.Ct. 1989. The Fifth Circuit has held that "since we determine that the allegations are sufficient to establish that the Government would deny payment here, we also conclude that the Government would 'attach importance' to the underlying violations." *Lemon*, 924 F.3d at 163. Here, because Relator has plausibly alleged that the States would deny payment, it follows that the States would attach importance to the underlying violations.

Accordingly, Relator has plausibly alleged violations of the FCA, TMFPA, and LMAPIL under an implied false certification theory of liability.

### III.   Relator's FCA Claims Are Not Barred by the Public Disclosure Bar.

Defendants argue that Relator's FCA claims are barred by the public disclosure bar because Relator is not an "original source" of the information alleged in Relator's Complaint. Mot. at 9-16. Defendants' argument fails because Relator's Complaint alleges claims based on information that was not publicly known prior to Relator's investigation of Defendants, Relator voluntarily disclosed that information to the

Government prior to any public disclosure, and Relator asserts claims against Defendants based on that information. Compl. ¶¶ 64-99.

The FCA provides that "The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or (iii) from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A). "For purposes of this paragraph, 'original source' means an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) [sic] who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B).

Courts in the Fifth Circuit apply a three-part test to determine whether the public disclosure bar applies: "(1) whether there has been a 'public disclosure' of allegations or transactions, (2) whether the qui tam action is 'based upon' such publicly disclosed allegations, and (3) if so, whether the relator is the 'original source' of the information." *United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 173 (5th Cir. 2004) (quotations omitted). Courts are not required

to rigidly follow these three steps. *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 327 (5th Cir. 2011). Indeed, the Fifth Circuit has recognized that "combining the first two steps can be useful, because it allows the scope of the relator's action in step two to define the 'allegations or transactions' that must be disclosed in step one." *Id.*; *see also United States ex rel. Fried v. W. Indep. Sch. Dist.*, 527 F.3d 439, 442 (5th Cir. 2008) (combining the first two steps).

### A. Relator's Complaint is not based on publicly disclosed information.

Defendants argue that Relators' claims are based on information that was publicly disclosed in the news media, information in a U.S. House of Representatives Select Committee Report, and the final termination letters from Texas and Louisiana. Mot. at 12-13. Defendants contend that Relator's claims are therefore subject to the public disclosure bar.

Relator's Complaint alleges that Relator investigated Defendants and that the facts in ¶¶ 66-78 of Relator's Complaint were uncovered during the investigation and were not publicly known at the time of the investigation. Compl. ¶ 64-65. Relator's Complaint alleges claims based on these facts. Compl. ¶¶ 66-78. Relator's Complaint further alleges that beginning in June 2015, Relator provided these facts to government officials and law enforcement entities, including the Texas Attorney General, which prompted investigations by the U.S. House of Representatives, the U.S. Department of Justice, the FBI, and the State of Texas. Compl. ¶¶ 79-80. Relator alleges that the facts he uncovered and disclosed to the government were the basis for the termination of Defendants from the Louisiana and Texas Medicaid programs. Compl. ¶¶ 82-99. Relator's Complaint further alleges specific facts uncovered in, or

as a result of, Relator's investigation that showed how Defendant PPFA directed and participated in Defendants' alleged wrongdoing. Compl. ¶100-04.

Relator's implied false certification claims are based on information that was not publicly known prior to Relators' investigation and filing of this lawsuit. Specifically, Relator alleges that the facts Relator uncovered in Relator's investigation are evidence of Defendants' failure to disclose to HHS, HHSC, and LDH numerous violations of medical and ethical standards and laws and regulations, yet Defendants continued to falsely certify their compliance with all state and federal laws and regulations every time they submitted Medicaid claims for reimbursement. Compl. ¶¶ 105-06. Relator's implied false certification claims are not based on information that was publicly disclosed prior to Relator filing this lawsuit because Defendants' false certifications were not publicly disclosed.

Relator's claim that Defendants violated the reverse false claims provisions of the FCA, TMFPA, and LMAPIL is similarly based on information that was not publicly known prior to Relator's investigation and filing of this lawsuit. Relators' allegations that Defendants had an obligation to repay the Medicaid funds they received under the preliminary injunction, *see* Part I.B. *supra*, and Relator's allegations that Defendants knowingly and improperly avoided that obligation, *see* Part I.C. *supra*,—the allegations that form the basis for reverse false claim liability— were not made publicly known until this lawsuit was unsealed. Relator further alleges that Relator learned that Defendants did not report or repay any of the Medicaid funds after they became aware, or should have become aware, of their

25

obligation to do so. Compl. ¶ 111. Relator never publicly disclosed that information and does not allege so. Thus, Relator's claim that Defendants violated the reverse false claims provisions of the FCA, TMFPA, and LMAPIL is not based on publicly disclosed information because Defendants' failure to repay Medicaid funds they were obligated to was not publicly disclosed prior to Relator filing this lawsuit.

### B. Even if Relator's Complaint is based on publicly disclosed information, it adequately alleges the original-source exception to the public disclosure bar.

Defendants contend that Relator has not adequately alleged that Relator is the original source of the publicly disclosed information. That argument is meritless. Under the original-source exception to the public disclosure bar, there are two different paths for establishing that Relator is an original source. 31 U.S.C. § 3730(e)(4)(B).[5] Relator must only satisfy one of the two. *Id.* The first method is a bright-line test that automatically grants original-source status if a relator voluntarily disclosed to the government the information on which relator's claims are based prior to a public disclosure of that information. *Id.* Essentially, Relator satisfies the original-source exception if Relator's Complaint alleges claims that are based on information Relator voluntarily disclosed to the government prior to any public disclosure. *Id.* There are four prongs to this standard: (1) the disclosure must be prior to a qualifying public disclosure; (3) the disclosure must be to the government; (3) the disclosure must be voluntary; and (4) the disclosure must include information on

---

[5] The FCA states that: "'original source' means an individual who … prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based." 31 U.S.C. § 3730(e)(4)(B).

which the allegations or transactions in a claim are based. *Id.* Relator's Complaint easily meets this standard.

Defendants contend that Relator's Complaint alleges claims that are based on information that was publicly disclosed in the news media, in the U.S. House of Representatives Select Committee Report, and the final termination letters from Texas and Louisiana. Compl. ¶ 79. But Relator's Complaint alleges that Relator first voluntarily disclosed to the government the information that Defendants identify as publicly disclosed in the news media, in the U.S. House of Representatives Select Committee Report, and the final termination letters from Texas and Louisiana. Compl. ¶ 79. Thus, to the extent that Relator's claims are based on public information from the news media, in the U.S. House Report, and the final termination letters from Texas and Louisiana, Relator has adequately pleaded that Relator is the original source. Put simply, Relator alleges that prior to any public disclosure, Relator voluntarily provided the government the information that Defendants claim triggers the public disclosure bar. *Id.*

Relator's claims are not barred by the public disclosure bar, and Relator is entitled to proceed in this lawsuit, because Relator's Complaint alleges information that was not publicly disclosed, Relator voluntarily disclosed any publicly known information to the Government prior to any public disclosures, and Relator's claims are based on that information. Compl. ¶¶ 64-99.

## IV.     Relator's Complaint Has Adequately Alleged Claims Against Each of the Planned Parenthood Defendants.

Defendants argue that Relator has not adequately alleged FCA, TMFPA, and LMAPIL violations against certain of the Defendants, including Defendants Planned Parenthood South Texas, Planned Parenthood Cameron County, Planned Parenthood San Antonio (collectively referred to in Relator's Complaint and herein as PPST) and Planned Parenthood Federation of America (PPFA). Mot. at 29-32. Relator's Complaint asserts claims under the FCA, TMFPA, and LMAPIL against each of the Planned Parenthood Defendants that submitted claims to the Texas Medicaid program and the Louisiana Medicaid program during the relevant time periods (PPGC, PPGT, PPST), as well as their parent organization (PPFA).

Defendants argue that Relator's Complaint does not allege any wrongful conduct by Defendants PPST. Mot. at 29-31. But Relator's Complaint alleges that PPST violated the FCA, TMFPA, and LMAPIL for the same reasons that the other Planned Parenthood Defendants violated these laws. Compl. ¶¶107-11. Specifically, Relator's Complaint alleges that PPST is liable under the implied false certification theory and the reverse false claim provisions of the FCA, TMFPA, and LMAPIL. *Id.* Each of the specific allegations in Relator's Complaint alleging acts or omissions by the Planned Parenthood Defendants is an allegation against PPST, , as well as PPGC and PPGT. ¶¶ 91-92, 98, 99, 107-11. As to PPFA, Relator's Complaint adequately alleges claims against PPFA by alleging specific facts regarding PPFA's control of the other Planned Parenthood Defendants and its involvement in the underlying violations of medical and ethical standards. Compl. ¶¶ 100-104.

In addition, the FCA, TMFPA, and LMAPIL impose liability on a party who "conspires to commit a violation" of the FCA, TMFPA, and LMAPIL. 31 U.S.C. § 3729(a)(1)(C); Tex. Hum. Res. Code § 36.002(9); La. Rev. Stat. § 46.438.3(D). To allege a conspiracy, a relator must show the existence of an unlawful agreement to get a false or fraudulent claim paid and at least one act performed in furtherance of the agreement. *Grubbs,* 565 F.3d at 193 (citations omitted). The purported conspirators must share a specific intent to defraud the government. *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 343 (5th Cir. 2008). Relator must plead with particularity the conspiracy as well as the overt acts … taken in furtherance of the conspiracy." *Grubbs*, 565 F.3d at 193 (citation and internal quotation marks omitted). The complaint must "at least describe 'particular circumstances' from which agreement may be 'naturally inferred.'" *United States ex rel. Campbell v. KIC Dev., LLC*, No. EP-18-CV-193-KC, 2019 WL 6884485, *7 (W.D. Tex. 2019) (quoting *Grubbs*, 565 F.3d at 194). Accepting Relator's alleged facts that PPFA directed and participated in the alleged wrongdoing as true and viewed in the light most favorable to Relator, Relator has adequately plead a conspiracy between Defendant PPFA and the other Planned Parenthood Defendants. Compl. ¶¶ 100-104.

## V.   Relator's Claims Are Not Barred By Texas' Intervention or the Government Action Bar.

Defendants contend that because Texas has intervened as to Count III, Relator cannot pursue that claim and that Relator's Texas law claims are barred under the "government action bar." Mot. at 34-35. In cases where the government intervenes in part, there are necessarily other claims that only the relator has. Here, Texas has

intervened in part and Relator has additional claims under the FCA, TMFPA, and LMAPIL. Compl. ¶¶ 113-121, 135-138 (FCA claims); ¶¶ 122-128, 135-138 (TMFPA claims); ¶¶ 129-134, 135-138 (LMAPIL claims). Courts regularly allow relators to pursue their separate claims after the government's intervention. *See, e.g. United States ex rel. Ketroser v. Mayo Found.*, 729 F.3d 825, 826 (8th Cir. 2013) (the relator filed an FCA case, the government intervened in part and settled the intervened claim, and the relator then filed an amended complaint asserting additional claims against the defendant); *United States ex rel. Fallon v. Accudyne Corp.*, 97 F.3d 937, 938 (7th Cir. 1996) ("The Attorney General took over prosecution of Count I, *see* 31 U.S.C. § 3730(b)(4)(A), but left Count II in the hands of the relators."); *Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 449 n.1 (5th Cir. 1995) ("The [government] elected to intervene in that portion of the suit against [some] defendants but declined to intervene against [another defendant]. Although the [government's] intervention vested it with control of the litigation against [the first group of defendants], [relator] retained the authority to proceed against [the other defendant] on its own.").

To the extent that Defendants argue that Texas' intervention bars Relator's claims outright, courts reject arguments to dismiss such complaints as a matter of course. *See, e.g., United States ex rel. Shemesh v. CA, Inc.*, 89 F. Supp. 3d 36, 55-56 (D.D.C. 2015) ("[D]ismissal [of the relator's complaint] is not automatically triggered by the government's intervention. '[T]here is no presumption under the statute against allowing both complaints to proceed.'" (quoting *United States ex rel. Landis v. Tailwind Sports Corp.*, 51 F. Supp. 3d 9, 28 (D.D.C. 2014)); *United States ex rel.*

*Ormsby v. Sutter Health*, 444 F.Supp.3d 1010, 1075 (N.D. Ca. 2020) ("The [FCA] and case law thus contemplate that the government can pursue some or all of the relator's claims, and the relator can pursue claims when the government does not."). Relator's claims are not barred by Texas' intervention or by the government action bar and Relator is entitled to pursue the FCA, TMFPA, and LMAPIL claims alleged in Relator's Complaint.

## VI.   If the Court Determines the Complaint is Inadequately Pleaded, Relator Requests Leave to Amend.

Relator respectfully requests that, in the event any of Relator's claims are deemed deficient, Relator be given an opportunity to amend the Complaint to cure the deficiency. Federal Rule of Civil Procedure 15(a)(2) provides that a court should "freely give leave [to amend] when justice so requires." A "plaintiff's failure to meet the specific pleading requirements should not automatically or inflexibly result in dismissal of the complaint." *Hart v. Bayer Corp.*, 199 F.3d 239, n. 6 (5th Cir. 2000) (citing *Cates v. Int'l. Telephone and Telegraph Corp.*, 756 F.2d 1161, 1180 (5th Cir. 1985) ("But such deficiencies do not normally justify dismissal of the suit on the merits and without leave to amend, at least not in the absence of special circumstances."). "Although a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Id.* Here, dismissal of Relator's claims with prejudice – without allowing Relator the benefit of the Court's rulings regarding the pleading requirements – would be inappropriate given the liberality of Rule 15(a).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Relator's Complaint should be denied. Should the Court grant the motion, Relator respectfully requests that any dismissal be without prejudice, and that Relator be permitted to amend the Complaint.

Respectfully submitted.

/s/ Andrew B. Stephens
Andrew B. Stephens
Texas Bar No. 24079396
Heather Gebelin Hacker
Texas Bar No. 24103325
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
(512) 399-3022
andrew@hackerstephens.com
heather@hackerstephens.com

**Attorneys For Relator**

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2022, I electronically filed the foregoing document through the Court's ECF system, which automatically notifies counsel of record for each party.

/s/ Andrew B. Stephens
Andrew B. Stephens