## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| United States of America | § | |
| | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| | § | CIVIL ACTION NO. 2:21-CV- |
| | § | 00022-Z |
| The State of Texas | § | |
| | § | Date:      March 25, 2022 |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| | § | |
| | § | |
| The State of Louisiana | § | |
| | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| Planned Parenthood Federation of America, Inc., | § | |
| Planned Parenthood Gulf Coast, Inc., Planned | § | |
| Parenthood of Greater Texas, Inc., Planned | § | |
| Parenthood South Texas, Inc., Planned Parenthood | § | |
| Cameron County, Inc., Planned Parenthood San | § | |
| Antonio, Inc., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' COMBINED MOTION TO DISMISS RELATOR'S COMPLAINT

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 3

    I.     Relator's Complaint is Barred by the FCA's Public Disclosure Bar...................... 3

            A.     Relator's Allegations Are Substantially Similar to Prior Public
                  Disclosures ................................................................................................ 3

            B.     Relator Is Not an Original Source ............................................................ 5

    II.    Relator Does Not Plausibly Plead an Implied False Certification Theory of
           Liability (Count I) ................................................................................................ 6

            A.     Relator Has Failed to Plausibly Plead Implied Falsity ............................. 6

            B.     Relator Has Failed to Plausibly Plead Materiality ................................... 7

    III.   Relator Fails to Plausibly Plead a Reverse False Claim Theory (Count II)............ 8

            A.     Affiliate Defendants Did Not Have an Obligation to Repay
                  Medicaid ................................................................................................... 8

            B.     Relator Fails to Plead Scienter ............................................................... 12

    IV.   Relator Fails to Plead Fraud With Particularity Under Rule 9(b)........................ 14

    V.    Relator Waived Any Opposition to Dismissal Under the TMFPA
           Government Action Bar ....................................................................................... 15

CONCLUSION................................................................................................................. 15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alford v. Chevron U.S.A. Inc.*,
    13 F. Supp. 3d 581 (E.D. La. 2014)......................................................................14

*Arkadelphia Milling Co. v. St. Louis Sw. Ry. Co.*,
    249 U.S. 134 (1919)...........................................................................................9

*Elec. Workers Pension Fund, Loc. 103, I.B.E.W. v. Six Flags Ent. Corp.*,
    524 F. Supp. 3d 501 (N.D. Tex. 2021) ..................................................................15

*In re Bayou Shores SNF, LLC*,
    828 F.3d 1297 (11th Cir. 2016) ..........................................................................9

*In re Planned Parenthood of Greater Texas*,
    Cause No. D-1-GN-21-000528 (Travis Cty. Dist. Ct. Feb. 3, 2021).......................................4

*Md. Dep't of Human Res. v. U.S. Dep't of Agric.*,
    976 F.2d 1462 (4th Cir. 1992) ............................................................................9

*Nat'l Kidney Patients Ass'n v. Sullivan*,
    958 F.2d 1127 (D.C. Cir. 1992)......................................................................9, 11

*Phalanx Grp. Int'l v. Critical Solutions Int'l*,
    No. 18-cv-244, 2019 WL 954727 (N.D. Tex. Feb. 26, 2019) .................................................15

*Planned Parenthood of Greater Texas v. Smith*,
    236 F. Supp. 3d 974 (W.D. Tex. 2017).................................................................11

*Ruckh v. Salus Rehab., LLC*,
    963 F.3d 1089 (11th Cir. 2020) .........................................................................7

*U.S. ex rel. Branch Consultants v. Allstate Ins. Co.*,
    560 F.3d 371 (5th Cir. 2009) ............................................................................1

*U.S. ex rel. Customs Fraud Investigation, LLC v. Victaulic Co.*,
    839 F.3d 242 (3d Cir. 2016)............................................................................13

*U.S. ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc.*,
    190 F.3d 1156 (10th Cir. 1999) .........................................................................5

*U.S. ex rel. Harper v. Muskingum Watershed Conservancy Dist.*,
    842 F.3d 430 (6th Cir. 2016) ...........................................................................13

i

*U.S. ex rel. Kelly v. Serco, Inc.*,
    846 F.3d 325 (9th Cir. 2017) ...........................................................................7

*U.S. ex rel. King v. Solvay Pharms., Inc.*,
    871 F.3d 318 (5th Cir. 2017) ........................................................................1, 5

*U.S. ex rel. Landis v. Tailwind Sports Corp.*,
    160 F. Supp. 3d 253 (D.D.C. 2016) ................................................................11

*U.S. ex rel. Martino-Fleming v. S. Bay Mental Health Ctr.*,
    No. 15-cv-13065, 2018 WL 4539684 (D. Mass. Sept. 21, 2018) ........................12

*U.S. ex rel. Olson v. Fairview Health Servs. of Minn.*,
    831 F.3d 1063 (8th Cir. 2016) .......................................................................13

*U.S. ex rel. Ondis v. City of Woonsocket*,
    587 F.3d 49 (1st Cir. 2009) ............................................................................3

*U.S. ex rel. Petras v. Simparel, Inc.*,
    857 F.3d 497 (3d Cir. 2017) ....................................................................10, 13

*U.S. ex rel. Phillips v. L-3 Commc'ns Integrated, Sys. L.P.*,
    No. 10-cv-1784, 2012 WL 3649699 (N.D. Tex. Aug. 24, 2012) .........................15

*U.S. ex rel. Reagan v. E. Texas Med. Ctr. Reg'l Healthcare Sys.*,
    274 F. Supp. 2d 824 (S.D. Tex. 2003) ..............................................................5

*U.S. ex rel. Schweizer v. Canon, Inc.*,
    9 F.4th 269 (5th Cir. 2021) ............................................................................3

*U.S. ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*,
    843 F.3d 1033 (5th Cir. 2016) ...............................................................2, 8, 10

*U.S. ex rel. Smith v. Wallace*,
    723 F. App'x 254 (5th Cir. 2019) ..................................................................1, 7

*U.S. ex rel. Solomon v. Lockheed Martin Corp.*,
    878 F.3d 139 (5th Cir. 2017) ..........................................................................4

*U.S. ex rel. Sonnier v. Standard Fire Ins. Co.*,
    84 F. Supp. 3d 575 (S.D. Tex. 2015) .............................................................1, 3

*U.S. ex rel. Steury v. Cardinal Health, Inc.*,
    625 F.3d 262 (5th Cir. 2010) ..........................................................................7

*U.S. ex rel. Whatley v. Eastwick Coll.*,
    657 F. App'x 89 (3d Cir. 2016) .......................................................................7

*U.S. ex rel. Zayas v. Astrazeneca Biopharmaceuticals, Inc.*,
No. 14-cv-1718, 2017 WL 1378128 (E.D.N.Y. Apr. 17, 2017) ............................10

*United States v. Sanford-Brown, Ltd.*,
840 F.3d 447 (7th Cir. 2016) .............................................................................7

*United States v. Strock*,
982 F.3d 51 (2d Cir. 2020).................................................................................10

*Universal Health Services, Inc. v. U.S. ex rel. Escobar*,
579 U.S. 176 (2016) .......................................................................................6, 7

## **Statutes**

31 U.S.C. § 3729(a)(1)(A) ...................................................................................15

31 U.S.C. § 3729(a)(1)(C) ...................................................................................15

31 U.S.C. § 3729(a)(1)(G) .................................................................2, 8, 12, 15

31 U.S.C. § 3729(b)(3) ..........................................................................................8

31 U.S.C. § 3730(e)(4)(A) .................................................................................1, 3

42 U.S.C. § 1320a-7k(d)(1) .................................................................................8

42 U.S.C. § 1320a-7k(d)(4)(B) ...........................................................................8

1 Tex. Admin. Code Ann. § 371.1703(g)(5)......................................................10

## **Rules**

Fed. R. Civ. P. 9(b) .....................................................................................2, 14, 15

## **Other Authorities**

155 Cong. Rec. S 4531 (Apr. 22, 2009)...............................................................12

John. T. Boese, *Civil False Claims and Qui Tam Actions* § 2.01[L] ...............12

Chuck Lindell, *Judge Blocks Texas Plan to Remove Planned Parenthood from
Medicaid*, Austin American-Statesman (Feb. 3, 2021).............................5

S. Rep. No. 111-10 (2009) ....................................................................................13

U.S. Statement of Interest, *Planned Parenthood Gulf Coast, Inc. v. Kliebert*,
No. 15-cv-565 (M.D. La. Aug. 31, 2015) [Dkt. 24] ...................................8

iii

## INTRODUCTION

Relator's opposition confirms that his Complaint is deficiently pled in at least five respects.

***Public Disclosure Bar.*** Relator's FCA claims are barred by the statutory public disclosure bar because "substantially the same allegations [and] transactions" were publicly disclosed before Relator filed this action. *See* 31 U.S.C. § 3730(e)(4)(A). The fact that some of those disclosures came from Relator himself is immaterial. Once the relevant information was in the public domain, the government was capable of pursuing a FCA claim itself and Relator's *qui tam* action "does not benefit the Government." *U.S. ex rel. Sonnier v. Standard Fire Ins. Co.*, 84 F. Supp. 3d 575, 589 (S.D. Tex. 2015) (quoting *U.S. ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 381 (5th Cir. 2009)). Further, Relator's conclusory allegation that he disclosed "to the United States" "knowledge obtained during and after the investigation of Planned Parenthood," Relator Compl. ¶ 13, is insufficient to plead that he is an original source because it does not "connect[] [his] knowledge" of Defendants' allegedly unlawful conduct to "the filing of a claim for reimbursement from the government." *U.S. ex rel. King v. Solvay Pharms., Inc.*, 871 F.3d 318, 326-27 (5th Cir. 2017).

***Implied False Certification (Count I).*** Relator concedes that Count I is not based on any express falsehood, but instead on a theory of "implied" falsity. To plead a claim under that theory, Relator must allege that Defendants made "specific representations" on their Medicaid reimbursement requests that were rendered "misleading half-truths" by failure to disclose alleged non-compliance with program requirements. *U.S. ex rel. Smith v. Wallace*, 723 F. App'x 254, 255-56 (5th Cir. 2019). Contrary to Relator's contention, the mere "act of submitting a claim," Relator Opp. 16-17, is not sufficient to trigger implied false certification liability. Because Relator identifies no specific representations on Defendants' bills, he has not plausibly pled implied falsity. Relator also fails to plead that Defendants' alleged implied falsehoods were material to payment.

***Reverse FCA Claim (Count II).***   Relator's reverse FCA claim (Count II) should be dismissed because Relator has failed to plausibly allege that Defendants had an obligation to repay funds they lawfully received under the preliminary injunctions.[1]   The best Relator can muster is that, under entirely different circumstances, parties that receive government funds under an injunction *may* be required to repay some portion of those funds if a court orders payment from an injunction bond or the government lawfully seeks recoupment through administrative proceedings. Because neither occurred here (and Texas would not be entitled to recoupment in any event), Affiliate Defendants had no "established" repayment obligation and Relator's reverse FCA claim fails.   *See U.S. ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*, 843 F.3d 1033, 1039-41 (5th Cir. 2016).   Relator also fails to plausibly plead that Affiliate Defendants "knowingly and *improperly*" avoided an obligation to pay money to the government, *see* 31 U.S.C. § 3729(a)(1)(G) (emphasis added), because Texas was on notice of the alleged overpayment and took no action.

***Rule 9(b).***   Relator's Count I claims against PPGT, PPST, PP Cameron County, and PP San Antonio should be dismissed under Rule 9(b) because Relator fails to allege that any of those defendants violated an underlying legal requirement such that their Medicaid claims could be impliedly false.   Relator's claims against PPFA should be dismissed under Rule 9(b) because Relator fails to plead *any* particulars about PPFA's participation in the alleged fraud.

***TMFPA Government Action Bar (Count III).***   The Court should dismiss Relator's TMFPA claim under the government action bar because Relator failed to respond to Defendants' argument, thereby waiving any opposition.

---

[1]   As discussed in Defendants' opening brief, the Louisiana injunction remains in effect – a fact of which the Court can take judicial notice but which Relator ignores.   *See* Dkt. 49 at 5 n.1, 7. Therefore, even under Relator's theory, PPGC has no present obligation to repay Louisiana, and Relator's reverse FCA claim related to Louisiana Medicaid (Count IV) should be dismissed.

## ARGUMENT

### I.     Relator's Complaint is Barred by the FCA's Public Disclosure Bar

#### A.     Relator's Allegations Are Substantially Similar to Prior Public Disclosures

Relator argues that his Complaint is not barred by the public disclosure bar because it is "based on" "the facts . . . uncovered during [his] investigation," which "were not publicly known at the time of the investigation." Relator Opp. 23-24. Relator relies on the wrong legal standard. Relator alleges he publicly disclosed the results of his "investigation," Relator Compl. ¶ 81, which were then the subject of congressional hearings, *id.* ¶ 91, state administrative proceedings, *id.* ¶¶ 106-08, and intense media coverage. The threshold inquiry under the public disclosure bar is simply whether Relator's allegations are "substantially the same" as the information that was in the public domain before he filed suit in February 2021. *See* 31 U.S.C. § 3730(e)(4)(A). If they are, the bar applies, irrespective of whether Relator's allegations were "actually derived from" the public disclosures or some other source (such as his own "investigation"). *See U.S. ex rel. Schweizer v. Canon, Inc.*, 9 F.4th 269, 274 n.8 (5th Cir. 2021); *see, e.g.*, *U.S. ex rel. Ondis v. City of Woonsocket*, 587 F.3d 49, 58 (1st Cir. 2009) (applying bar despite "relator's insist[ence] that he did not base his claim on the newspaper accounts . . . but, rather, on his own private investigation" because "the relevant allegations in the relator's complaint bear a substantial similarity to what was journalistically disclosed"); *Sonnier*, 84 F. Supp. 3d at 589 (applying bar where relator was source of public disclosures because "information about the fraud [wa]s already publicly known").

There is no serious dispute that both of Relator's FCA theories are substantially similar to numerous public disclosures. First, Relator asserts that the "the facts uncovered in Relator's investigation," Relator Opp. 24-25 (which he publicly disclosed through the news media, Relator Compl. ¶¶ 79, 81) reflected "Defendants' [alleged] failure to disclose to HHS, [Texas], and [Louisiana] numerous violations of medical and ethical standards and laws and regulations."

Relator Opp. 25.  That is precisely the same alleged conduct on which Relator's implied false certification claim (Count I) is based.  *See* Relator Compl. ¶ 105 ("PPGC began violating federal and state law in at least 2010-2011," but "never disclosed these violations of law").  Relator cannot avoid the bar simply because the disclosures did not expressly reference "Defendants' false certifications."  *See* Relator Opp. 25.  "When the elements of a fraudulent transaction are present in public disclosures"—Affiliate Defendants' alleged violation of Medicaid requirements and alleged failure to disclose those violations—"those public disclosures need not allege fraud in explicit language."  *U.S. ex rel. Solomon v. Lockheed Martin Corp.*, 878 F.3d 139, 145 (5th Cir. 2017).  Relator's complaint is barred because "the facts [that were] publicly available . . . could have been synthesized to form the same inference he now alleges in his complaint."  *See id.*

Second, Relator's reverse FCA claim (Count II) is based entirely on information in the public domain – *i.e.*, the Texas and Louisiana termination letters and the Fifth Circuit's November 2020 opinion vacating the Texas injunction.  *See* Relator Compl. ¶¶ 106-09, 111.  Relator argues the public disclosure bar does not apply because Affiliate Defendants' failure to repay funds received under the injunction had not been publicly disclosed.  *See* Relator Opp. 25-26.  That is simply wrong.  On February 3, 2021, before Relator filed this action, a Texas state court issued a TRO enjoining the State from terminating Affiliate Defendants from Medicaid.  Order, *In re Planned Parenthood of Greater Texas*, Cause No. D-1-GN-21-000528 (Travis Cty. Dist. Ct.).  That order noted that "[t]he status quo between [Texas] and [Affiliate Defendants] is such that [Affiliate Defendants] continue to participate in the Medicaid program" and to receive "reimbursements for services . . . provided."  *Id.* at 2, 3.  This order, and related news media

coverage,[2] thus publicly disclosed that Affiliate Defendants remained in the Medicaid program and would not have returned payments they received under that program.  Relator's conclusory allegation, made "[u]pon information and belief," that Affiliate Defendants had not "report[ed] or return[ed] [Medicaid] funds" as of the filing of his Complaint on February 5, 2021, Relator Compl. ¶ 12, added nothing to the information already in the public domain.

### B.    Relator Is Not an Original Source

Relator argues that his Complaint satisfies the original source exception because it alleges that he voluntarily disclosed "to the United States" the "knowledge obtained during and after the investigation of Planned Parenthood."  Relator Opp. 26; *see* Relator Compl. ¶ 13.  Fifth Circuit precedent (which Relator conveniently ignores) makes clear this allegation is insufficient.

When invoking the original source exception, "a *qui tam* plaintiff must allege specific facts—as opposed to mere conclusions."  *U.S. ex rel. Reagan v. E. Texas Med. Ctr. Reg'l Healthcare Sys.*, 274 F. Supp. 2d 824, 853-54 (S.D. Tex. 2003) (quoting *U.S. ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1162 (10th Cir. 1999)).  In particular, a relator must plead specific facts about his disclosure to show, "at a minimum," that it "connected [his] knowledge" of the defendant's allegedly illegal conduct to "the filing of a claim for reimbursement from the government."  *King*, 871 F.3d at 326-27.  In other words, a relator's disclosure must actually "suggest an *FCA violation*." *Id.* at 327 (emphasis in original).  That a relator may have disclosed to the government a potential violation of other laws does not trigger the original source exception.  *Id.*

Relator's Complaint does not satisfy the *King* standard as to Count I because it does not

---

[2]  *See, e.g.*, Chuck Lindell, *Judge Blocks Texas Plan to Remove Planned Parenthood from Medicaid*, Austin American-Statesman (Feb. 3, 2021), https://tinyurl.com/2p96evbm.

allege any details about the information Relator allegedly disclosed to the federal government, let alone that his disclosure connected Defendants' allegedly unlawful practices to a false claim. As to Count II, Relator does not allege that he disclosed to the government the allegations on which that claim is based prior to filing this action, and thus he is not an original source as to that claim.

## II.    Relator Does Not Plausibly Plead an Implied False Certification Theory of Liability (Count I)

### A.    Relator Has Failed to Plausibly Plead Implied Falsity

Relator concedes that Count I is based only on the "implied false certification" theory of liability. Relator Opp. 16-17. Relator, however, has failed to plausibly plead that theory. Relator argues that "through *the act of submitting a claim*, [Affiliate Defendants] knowingly and falsely implied that [they] w[ere] entitled to payment when [they were] not because [they] violated applicable statutes and regulations before submitting the claim." *Id.* at 17-18 (emphasis added). But courts repeatedly and consistently hold that an implied false certification case cannot be based on the mere submission of a claim. Instead, a relator must identify a *specific representation* on the claim that was rendered a misleading half-truth by the failure to disclose non-compliance with an underlying requirement. Relator has failed to do so, and thus Count I should be dismissed.

In *Universal Health Services, Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 187-88 (2016), the Supreme Court held that an omission can render a claim false "at least where two conditions are satisfied: first, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." *Id.* at 190. Although the Court did not need to reach the question of whether a claim that "merely request[s] payment" can be false on the theory that "all claims for payment implicitly represent that the billing party is legally entitled to payment,"

the Court's reasoning makes clear it cannot. *Id.* at 188. As Justice Thomas explained, at common law, a fraud claim could not be based on mere non-disclosure absent a fiduciary duty or other special relationship. *Id.* at 188 n.3. If, however, a party chooses to speak, "he must disclose enough to prevent his words from being misleading." *Id.* Applying these principles to the FCA, a claimant has no duty to volunteer information in a claim for payment. Only if the claimant chooses to speak (*i.e.*, to make a representation on the claim) can non-disclosure of other information render the claim false. Relator's contention that the mere submission of a claim is enough to trigger implied false certification liability would improperly turn the FCA into "a general enforcement device for federal statutes, regulations, and contracts." *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 268 (5th Cir. 2010).

Consistent with *Escobar*'s reasoning, the overwhelming majority of courts, including the Fifth Circuit, have held that a claim cannot be impliedly false merely because it requests payment. Rather, it must make specific representations that are rendered misleading half-truths by undisclosed noncompliance. *See Wallace*, 723 F. App'x at 255-56; *Ruckh v. Salus Rehab., LLC*, 963 F.3d 1089, 1108-09 (11th Cir. 2020); *U.S. ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 332-333 (9th Cir. 2017); *U.S. ex rel. Whatley v. Eastwick Coll.*, 657 F. App'x 89, 94 (3d Cir. 2016); *United States v. Sanford-Brown, Ltd.*, 840 F.3d 447, 447 (7th Cir. 2016).

Relator does not dispute that he failed to plead any specific representation in Affiliate Defendants' Medicaid claims. Without such an allegation, he cannot plausibly allege that Affiliate Defendants' failure to disclose their alleged noncompliance with state and federal law rendered their claims misleading half-truths. Count I should be dismissed for failure to plead implied falsity.

**B.      Relator Has Failed to Plausibly Plead Materiality**

Relator does not argue that PPGC's alleged noncompliance was material to the *United States*' payment decisions. Instead, Relator focuses entirely on the decisions of Texas and

7

Louisiana.  Relator Opp. 20-22.  Because it is the United States' payment decision that matters under the FCA, Relator's failure to allege that the United States would have denied payment requires dismissal of Count I.  *See* Dkt. 49 at 27-28.[3]  As for the States, although they sought to remove Affiliate Defendants from Medicaid prospectively, their failure to pursue recoupment makes clear that Affiliate Defendants' alleged violations were not material to the States' decision to pay for the services Affiliate Defendants had already rendered to Medicaid patients.

## III.    Relator Fails to Plausibly Plead a Reverse False Claim Theory (Count II)

### A.    Affiliate Defendants Did Not Have an Obligation to Repay Medicaid

The Court should dismiss Relator's reverse FCA claim (Count II) because he has failed to plead that Affiliate Defendants had "an obligation to pay or transmit money or property to the Government."  *See* 31 U.S.C. § 3729(a)(1)(G).  The FCA defines obligation as "an *established* duty, whether or not fixed, arising . . . from the retention of any overpayment."  *Id.* § 3729(b)(3) (emphasis added).  Although the *amount* of the obligation need not be fixed under this definition, the duty to repay must be clearly established.  *Simoneaux*, 843 F.3d at 1038-39.

Contrary to Relator's assertion, the Affordable Care Act's "60-Day Rule" did not create such a duty here.  That statute requires a recipient of Medicaid funds that "received an overpayment" to "report and return the overpayment to HHS or the State" and to provide notification "of the reason for the overpayment."  42 U.S.C. § 1320a-7k(d)(1).  It defines "overpayment" as "any funds that a person receives or retains . . . to which the person, after applicable reconciliation, is not entitled."  *Id.* § 1320a-7k(d)(4)(B).  Here, it is undisputed that while the injunction was in effect, Affiliate Defendants were "entitled" to the Medicaid

---

[3]  In fact, the United States made clear it did not believe the States provided "any justification related to PPGC's qualifications to provide medical services" that would warrant terminating it (or any other Affiliate Defendant) from Medicaid.  U.S. Statement of Interest at 1, *Planned Parenthood Gulf Coast, Inc. v. Kliebert*, No. 15-cv-565 (M.D. La. Aug. 31, 2015) [Dkt. 24].

reimbursements they received at the time those reimbursements were received.  Relator has identified no statute, regulation, or contract term that converted those lawfully obtained funds, paid as reimbursement for the provision of medical care to Texas Medicaid patients, into amounts that Affiliate Defendants were no longer "entitled" to retain once the injunction was vacated.

Relator's cases do not support his argument.  At most, those cases hold that, in very different circumstances than are present here, a party that receives government funds under an injunction that is later vacated *may* have to repay those funds *if* the reviewing court requires repayment or the government successfully pursues recoupment.  *See Arkadelphia Milling Co. v. St. Louis Sw. Ry. Co.*, 249 U.S. 134, 145-46 (1919) (appellate court could, as part of order vacating injunction, require that funds be paid to prevailing party); *Nat'l Kidney Patients Ass'n v. Sullivan*, 958 F.2d 1127, 1137 (D.C. Cir. 1992) (holding that HHS could pursue recoupment of payments made under an injunction to the extent it was statutorily authorized to do so); *In re Bayou Shores SNF, LLC*, 828 F.3d 1297, 1327-28 (11th Cir. 2016) (ruling challenge to bankruptcy court's injunction was not moot, in part, because order holding that bankruptcy court lacked jurisdiction would "allow the Government to try and recover payments made to [the party] since the filing of the . . . action"); *Md. Dep't of Human Res. v. U.S. Dep't of Agric.*, 976 F.2d 1462, 1467 (4th Cir. 1992) (injunction stating that USDA could not "now or in the future, impose any fiscal sanction or other penalties" from issuance of injunction to resolution of matter was unlawful because it interfered with government's "right to pursue" recoupment or other penalties).  Put another way, any obligation to repay monies received under an injunction is not automatically triggered by the vacatur order; it requires subsequent action by the court or the government.

Here, the Fifth Circuit never ordered Affiliate Defendants to repay the Medicaid funds they received while the Texas injunction was in effect.  And although Texas law provides an

administrative recoupment mechanism, the State did not pursue recoupment.  *See* 1 Tex. Admin. Code Ann. § 371.1703(g)(5) (person "*may* be liable to repay submitted claims" submitted after effective date of termination "in addition to sanctions or penalties *by OIG* (emphases added)).[4]  In fact, Texas voluntarily *extended* the period during which Affiliate Defendants could lawfully participate in Medicaid, without any suggestion that Affiliate Defendants would have to turn around and repay the funds Texas authorized them to receive.

Because Affiliate Defendants' alleged obligation to repay was contingent on future events, the Fifth Circuit's decision in *Simoneaux* controls.  That court held that "[w]here . . . a regulatory penalty has not been assessed and the government has initiated no proceeding to assess it, there is no established duty to pay."  843 F.3d at 1039.  The court recognized that "the fact that further government action is required to collect a fine or penalty does not, standing alone, mean that the duty is not established," but where the statute gives the government "discretion to decide to assess no penalty," there can be no obligation absent government enforcement action.  *Id.* at 1039-41.  Other courts have similarly rejected reverse FCA claims where the obligation was contingent on future events.  *See, e.g.*, *U.S. ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497, 506-07 (3d Cir. 2017) (no "obligation" to pay dividends to Small Business Administration where duty was contingent on events that had not yet materialized); *U.S. ex rel. Zayas v. Astrazeneca Biopharmaceuticals, Inc.*, No. 14-cv-1718, 2017 WL 1378128, at *3 (E.D.N.Y. Apr. 17, 2017) (stipulated penalties under corporate integrity agreement were not an "obligation" to pay government because they were "not automatically imposed; rather, the government must choose to impose [them] and defendants may

---

[4]  Texas' intervention in this case does not trigger any repayment obligation.  To hold otherwise would allow it to improperly "manufacture [an obligation] . . . after the fact."  *See United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (government cannot "manufacture materiality" through FCA litigation).

appeal" to an administrative law judge); *U.S. ex rel. Landis v. Tailwind Sports Corp.*, 160 F. Supp. 3d 253, 268-72 (D.D.C. 2016) (alleged breach of contract did not create "obligation" because government would have been required to sue for repayment).

More fundamentally, Relator has failed to plausibly allege that Affiliate Defendants would be obligated to repay funds received under the injunction even if Texas did pursue recoupment. *National Kidney Patients Association* does not support Relator's position. There, the district court enjoined HHS from implementing a rate reduction but required the plaintiff to post a substantial injunction bond. 958 F.2d at 1129. After vacating the injunction, the D.C. Circuit held that HHS could recover damages from the bond to compensate it for the higher amount paid under the injunction. The court further held that because the injunction bond might not be sufficient to make HHS whole, HHS could pursue administrative recoupment "to the extent that [recoupment] . . . [was] properly applicable to overpayments of the sort involved." *Id.* at 1137.

Here, by contrast, Texas did not pay more for Medicaid services than they were ultimately determined to be worth. Texas reimbursed Affiliate Defendants for medical treatment provided to Medicaid patients for which it would have had to pay another healthcare provider in the absence of the injunction. Indeed, the district court declined to require an injunction bond for precisely this reason. *See Planned Parenthood of Greater Texas v. Smith*, 236 F. Supp. 3d 974, 999 (W.D. Tex. 2017) ("Regardless of whether this Court enjoined the termination of [Affiliate Defendants], Texas would still have an obligation to reimburse some providers for the services the . . . Medicaid beneficiaries require. The Court therefore finds the injunction will not harm Texas's budget."). Texas thus suffered no monetary harm from the injunction and it is not entitled to damages, through a recoupment proceeding or otherwise. *See Nat'l Kidney Patients Ass'n*, 958 F.2d at 1134 (only a "defendant injured by a wrongfully issued preliminary injunction" is entitled to recover).

For these reasons, the Court should dismiss Count II because Relator has failed to plead that Affiliate Defendants had any obligation to pay money to the government.

### B.     Relator Fails to Plead Scienter

The FCA's reverse false claim provision includes three distinct prohibitions: (1) "knowingly" making a false statement material to an obligation to pay money to the government; (2) "knowingly" concealing an obligation to pay money to the government; and (3) "knowingly *and improperly*" avoiding or decreasing an obligation to pay money to the government.  31 U.S.C. § 3729(a)(1)(G) (emphasis added).  Relator's reverse FCA claim is based exclusively on Affiliate Defendants' alleged avoidance of an obligation.  *See* Relator Compl. ¶ 120; Relator Opp. 12.  Relator has failed to adequately plead scienter under this subsection.

Concerned about imposing FCA liability for acts of omission, Congress created a heightened scienter standard for reverse FCA claims based on avoiding an obligation to pay money to the government.  To state a claim under that subsection, a relator must plead not only that the defendant acted knowingly, but also that it acted "improperly."  Although the statute does not define this term, the legislative history reflects that Congress intended to limit liability to circumstances in which a person acted with "improper motives" or "inherently improper means." 155 Cong. Rec. S 4531, 4540 (Apr. 22, 2009) (Statement of Sen. Kyl).  As Senator Kyl explained, "improper means" refers to conduct that is "malum in se—that is, . . . inherently wrongful and constitute[s] an intentional tort."  *Id.*; *see U.S. ex rel. Martino-Fleming v. S. Bay Mental Health Ctr.*, No. 15-cv-13065, 2018 WL 4539684, at *6 (D. Mass. Sept. 21, 2018) ("'improperly' denotes 'either improper motive or inherently improper means'" (quoting Boese, *Civil False Claims and Qui Tam Actions* § 2.01[L] at 2-83)).  Relator's Complaint does not allege anything of the sort.

Further, Congress explained that reverse FCA liability would attach only when "an overpayment is knowingly and improperly retained, *without notice to the Government about the*

*overpayment*."  S. Rep. No. 111-10, at 441 (2009) (emphasis added).  That is consistent with the settled principle that the FCA penalizes *fraud*, not breach of contract.  *See Petras*, 857 F.3d at 500 (reverse FCA liability "arises from fraudulent efforts to reduce or avoid an obligation to pay the Government"); *U.S. ex rel. Olson v. Fairview Health Servs. of Minn.*, 831 F.3d 1063, 1074 (8th Cir. 2016) (reverse FCA provision "encompasses fraudulent conduct" arising from "failure to disclose"; "[i]f there is no fraudulent conduct . . . , then there can be no reverse liability"); *U.S. ex rel. Customs Fraud Investigation, LLC v. Victaulic Co.*, 839 F.3d 242, 255-56 (3d Cir. 2016) (reverse FCA liability is intended to "change [the] value proposition" so a defendant with superior knowledge that would otherwise "decline to mention" an overpayment will disclose it).  "Without fraud, punitive [treble] damages . . . [are] an unreasonable levy against individuals guilty only of 'knowingly' receiving an overpayment from the government fisc." *Olson*, 831 F.3d at 1074.

Both Louisiana and Texas knowingly made payments to Affiliate Defendants under the injunctions, Relator Compl. ¶ 8, and were obviously aware of the Fifth Circuit's November 2020 decision that Relator alleges created the repayment obligation.  Relator does not allege that Affiliate Defendants deceived the States or took any other "improper" action to avoid their purported repayment obligation.  Relator simply alleges that Affiliate Defendants retained the amounts they received for providing healthcare services to Medicaid patients under the injunctions. That is insufficient to plead a fraud claim under the reverse FCA provision.

Further, even setting aside the unique scienter pleading requirements for reverse FCA claims, Relator has failed to plead even that Affiliate Defendants *knowingly* avoided an obligation to repay the government.  "The term 'knowingly' must be interpreted to refer to a defendant's awareness of *both* an obligation to the United States *and* his violation of that obligation." *U.S. ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 842 F.3d 430, 436 (6th Cir. 2016)

13

(emphasis in original).  Relator has not pled any facts showing that Affiliate Defendants were aware that they were required to repay the amounts they received under the injunction.

## IV.  Relator Fails to Plead Fraud With Particularity Under Rule 9(b)

Relator fails to satisfy Rule 9(b)'s exacting pleading standard in two important respects.

*First*, Relator does not plausibly plead an implied false certification claim (Count I) as to PPGT, PPST, PP Cameron County, and PP San Antonio.  Citing paragraphs 107 through 111, Relator asserts his Complaint alleges that those defendants violated the FCA "for the same reasons that the other Planned Parenthood Defendants violated these laws."  Relator Opp. 28.  But those paragraphs concern only Relator's reverse FCA claim related to all Affiliate Defendants' termination from Medicaid (Count II).  Relator nowhere alleges that PPGT, PPST, PP Cameron County, or PP San Antonio even participated in fetal tissue research, let alone that they did so in a way that was unlawful.  Accordingly, he has failed to plausibly allege an implied false certification theory as to those defendants—and he certainly has not done so with particularity.  *See Alford v. Chevron U.S.A. Inc.*, 13 F. Supp. 3d 581, 594 (E.D. La. 2014) ("[A] plaintiff must plead specific facts describing the fraud allegedly committed by *each defendant*." (emphasis added)).  Count I should be dismissed under Rule 9(b) as to PPGT, PPST, PP Cameron County, and PP San Antonio.

*Second*, Relator's Rule 9(b) argument regarding PPFA is as conclusory as the allegations in his Complaint.  Relator asserts that he has alleged "specific facts" regarding PPFA's control of Affiliate Defendants and its "involvement in the underlying violations of medical and ethical standards."  Relator Opp. 28 (citing Relator Compl. ¶¶ 100-104).  But the mere five paragraphs Relator cites do not come close to alleging the "who, what, when, where, and how" necessary to plead fraud as to PPFA.  Relator does not identify who from PPFA allegedly participated in the fraud or when they did so.  And while Relator refers to unspecified "PPFA policies" that allegedly

14

"apply to all affiliates," he provides no detail whatsoever as to the content of those policies or explain how they caused Affiliate Defendants to violate the law. *See* Relator Compl. ¶ 101.

Further, contrary to Relator's assertion, he has not pled a FCA conspiracy claim *at all*, let alone with the particularity required by Rule 9(b). Relator asserts FCA claims under 31 U.S.C. § 3729(a)(1)**(A)** (Count I) and 31 U.S.C. § 3729(a)(1)**(G)** (Count II). Relator does not plead a claim under the FCA's conspiracy provision, 31 U.S.C. § 3729(a)(1)**(C)**, which sets out a separate cause of action with discrete elements. *See U.S. ex rel. Phillips v. L-3 Commc'ns Integrated, Sys. L.P.*, No. 10-cv-1784, 2012 WL 3649699, at *8 (N.D. Tex. Aug. 24, 2012). He cannot amend his complaint through briefing. *See Phalanx Grp. Int'l v. Critical Sols. Int'l*, No. 18-cv-244, 2019 WL 954727, at *6 (N.D. Tex. Feb. 26, 2019). Moreover, even if Relator had pled a FCA conspiracy claim, it would fail because he fails to allege its essential elements—"a meeting of the minds of two or more persons," with the "specific intent to defraud the government." *Phillips*, 2012 WL 3649699, at *8.

## V.   Relator Waived Any Opposition to Dismissal Under the TMFPA Government Action Bar

Defendants moved to dismiss Relator's TMFPA claim on two bases: (1) Relator could not simultaneously pursue claims on which Texas has intervened; and (2) Relator's claim is barred by the statutory government action bar. *See* Dkt. 49 at 34-35. Relator's opposition addresses Defendants' first argument, but completely ignores the second. *See* Relator Opp. 29-31. Relator's failure to respond to Defendants' argument that his TMFPA claim is statutorily barred "results in waiver of opposition" and requires dismissal of that claim. *See Elec. Workers Pension Fund, Loc. 103, I.B.E.W. v. Six Flags Ent. Corp.*, 524 F. Supp. 3d 501, 525 (N.D. Tex. 2021).

## CONCLUSION

For the foregoing reasons, the Court should dismiss Relator's Complaint in its entirety.

Dated:  March 25, 2022

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP


By:    */s/ Craig D. Margolis*
Craig D. Margolis
Craig.Margolis@arnoldporter.com
Murad Hussain
Murad.Hussain@arnoldporter.com
Tirzah Lollar
Tirzah.Lollar@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.6127
Fax: +1 202.942.5999

Christopher M. Odell
Texas State Bar No. 24037205
Christopher.Odell@arnoldporter.com
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: +1 713.576.2400
Fax: +1 713.576.2499

Ryan Patrick Brown
Texas State Bar No. 24073967
brown@blackburnbrownlaw.com
1222 S. Fillmore
Amarillo, TX 79101
Tel: (806) 371-8333
Fax: (806) 350-7716

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 25, 2022, the foregoing document was electronically filed with the Clerk of Court using CM/ECF.

*/s/ Craig D. Margolis*
Craig D. Margolis