IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| United States of America §<br>§<br>*ex rel.* ALEX DOE, Relator, §<br>§<br>§<br>§<br>§<br>The State of Texas §<br>§<br>*ex rel.* ALEX DOE, Relator, §<br>§<br>§<br>§<br>§<br>§<br>The State of Louisiana §<br>§<br>*ex rel.* ALEX DOE, Relator, §<br>§<br>    Plaintiffs, §<br>§<br>v. §<br>§<br>Planned Parenthood Federation of America, Inc., §<br>Planned Parenthood Gulf Coast, Inc., Planned §<br>Parenthood of Greater Texas, Inc., Planned §<br>Parenthood South Texas, Inc., Planned Parenthood §<br>Cameron County, Inc., Planned Parenthood San §<br>Antonio, Inc., §<br>§<br>    Defendants. §<br>§ | CIVIL ACTION NO. 2:21-CV-00022-Z<br><br>Date:    March 25, 2022 |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' COMBINED MOTION TO DISMISS STATE OF TEXAS' COMPLAINT IN INTERVENTION**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... i

ARGUMENT ............................................................................................................................. 1

    I.     The Court Should Dismiss Texas' Complaint on the Basis of Judicial Estoppel ... 1

    II.    Texas' Complaint Should Be Dismissed Under Rule 12(b)(6) Because It Fails to Plausibly Plead the Elements of a "Reverse" TMFPA Violation ....................... 4

    III.   Texas' Claim Against PPFA Should Be Dismissed Under Rule 9(b) .................... 7

    IV.   The Court Lacks Jurisdiction Over Texas' State Law Claim ............................... 10

CONCLUSION........................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Dennis Melancon, Inc. v. City of New Orleans*,
    703 F.3d 262 (5th Cir. 2012) ................................................................................................2

*Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*,
    762 F.2d 464 (5th Cir. 1985) ................................................................................................2

*FCC v. Fox Television Stations, Inc.*,
    567 U.S. 239 (2012) ..............................................................................................................6

*Fed. Trade Comm'n ex rel. Yost v. Educare Centre Servs., Inc.*,
    No. 19-cv-196, 2020 WL 4334117 (W.D. Tex. Apr. 3, 2020) ..............................................2

*In re Superior Crewboats*,
    374 F.3d 330 (5th Cir. 2004) ............................................................................................2, 4

*In re Xerox*,
    555 S.W.3d 518 (Tex. 2018) .................................................................................................6

*National Kidney Patients Ass'n v. Sullivan*,
    958 F.2d 1127 (D.C. Cir. 1992) ............................................................................................5

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ..............................................................................................................3

*Phalanx Grp. Int'l v. Critical Solutions Int'l*,
    No. 18-cv-244, 2019 WL 954727 (N.D. Tex. Feb. 26, 2019) ...............................................9

*Planned Parenthood of Greater Tex. Family Planning & Preventative Health
    Servs. v. Smith*,
    236 F. Supp. 3d 974 (W.D. Tex. 2017) .................................................................................9

*Texas v. EPA*,
    829 F.3d 405 (5th Cir. 2016) ................................................................................................2

*U.S. ex rel. Grubbs v. Kanneganti*,
    565 F.3d 180 (5th Cir. 2009) ................................................................................................8

*U.S. ex rel. Haight v. RRSA (Commercial Div.), LLC*,
    No. 16-cv-1975, 2020 WL 6163139 (N.D. Tex. Oct. 20, 2020) ...........................................9

*U.S. ex rel. Long v. GSDMIdea City, L.L.C.*,
    798 F.3d 265 (5th Cir. 2015) ................................................................................................3

*U.S. ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*,
    519 F. App'x 890 (5th Cir. 2013) ............................................................................................8

*U.S. ex rel. Purcell v. MWI Corp.*,
    807 F.3d 281 (D.C. Cir. 2015) ................................................................................................6

*U.S. ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*,
    843 F.3d 1033 (5th Cir. 2016) ............................................................................................4, 6

*U.S. ex rel. Williams v. McKesson Corp.*,
    No. 12-cv-371, 2014 WL 3353247 (N.D. Tex. July 9, 2014) ..................................................4

*U.S. ex rel. Alsaker v. CentraCare Health Sys., Inc.*,
    No. 99-cv-106, 2002 WL 1285089 (D. Minn. June 5, 2022) ..................................................8

*U.S. ex rel. Monda v. Sikorsky Aircraft Corp.*,
    No. 99-cv-1026, 2005 WL 1925903 (D. Conn. Aug. 11, 2005) .............................................8

*U.S. ex rel. Robinson v. Northrop Corp.*,
    149 F.R.D. 142 (N.D. Ill. 1993) ..............................................................................................8

*United States v. Wells Fargo Bank, N.A.*,
    972 F. Supp. 2d 593 (S.D.N.Y. 2013) .....................................................................................8

**Statutes**

1 Tex. Admin. Code § 371.1703 ......................................................................................................6

31 U.S.C. § 3729 .........................................................................................................................4, 7

31 U.S.C. § 3730 ...........................................................................................................................10

42 U.S.C. § 1320a-7k .....................................................................................................................5

Tex. Hum. Res. Code. Ann. § 36.001 .........................................................................................4, 7

Tex. Hum. Res. Code Ann. § 36.113 ............................................................................................10

Tex. Hum. Res. Code § 36.002 ............................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 9(b) .................................................................................................................1, 7, 8

Fed. R. Civ. P. 12(b)(6) ..................................................................................................................4

S. Rep. No. 111-10 (2009) ..............................................................................................................6

Wright & Miller, 18B Fed. Prac. & Proc. Juris § 4477 (2d ed. 2015) ...........................................3

**INTRODUCTION**

Texas' opposition confirms that its Complaint suffers from several incurable pleading deficiencies. *First*, Texas' Complaint should be dismissed on the basis of judicial estoppel because the State is bound to its prior positions that (1) it could not recover funds that it was forced to pay Affiliate Defendants under the district court injunction, and (2) the injunction prevented Affiliate Defendants' terminations from taking effect. *Second*, Texas' Complaint fails to state a claim under Section 36.002(12) of the TMFPA because it does not plausibly plead the essential elements of obligation, scienter, and materiality. Affiliate Defendants had no obligation to repay funds they received under an injunction; they did not "knowingly and improperly" avoid such an obligation given the State's knowledge of those payments; and their retention of those funds was immaterial. *Third*, Texas has not asserted *any* particularized allegations of wrongful conduct by PPFA, so Texas's claim against PPFA must be dismissed under Rule 9(b). And *fourth*, Texas cannot "veto" the application of the government action bar. Thus, the Court lacks jurisdiction over Texas' claim unless and until Relator's Complaint is dismissed in its entirety.

**ARGUMENT**

**I.      The Court Should Dismiss Texas' Complaint on the Basis of Judicial Estoppel**

Texas' judicial estoppel arguments miss the mark. Texas first argues that it "never" took the position that funds paid to Affiliate Defendants under the federal court injunction were not recoverable and that its position "continues to be" that Affiliate Defendants have an obligation to repay those funds. Texas Opp. 6-7. Despite the long history of the dispute concerning Affiliate Defendants' exclusion from the Texas Medicaid program—which included proceedings before three separate courts and dozens of briefs filed by Texas—Texas does not cite a *single* example of it taking the latter position. Because it never did. Instead, Texas told the Fifth Circuit that it would be *irreparably* harmed if forced to continue to pay Affiliate Defendants under Medicaid,

1

meaning that it could not recover amounts paid under the injunction. *See* Dkt. 51-1 at 10-11.

It is settled law that harm is not irreparable if a "mechanism . . . exists . . . to recover the costs . . . incur[red] if the [challenged action] is invalidated on the merits." *Texas v. EPA*, 829 F.3d 405, 433-34 (5th Cir. 2016); *accord Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) ("It is . . . well-established that an injury is irreparable only if it cannot be undone through monetary remedies"); *Fed. Trade Comm'n ex rel. Yost v. Educare Centre Servs., Inc.*, No. 19-cv-196, 2020 WL 4334117, at *3 (W.D. Tex. Apr. 3, 2020) ("[T]he Fifth Circuit recognizes monetary injuries as irreparable when they arise 'in the absence of an available remedy by which the movant can later recover monetary damages.'" (quoting *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 573 (5th Cir. 1985))). Texas surely understands this principle, as the State relied on it to argue that harm *to Affiliate Defendants* was not irreparable. Dkt. 51-1 at 7 (arguing there is no irreparable harm where "an economic injury may be rectified"). By asserting that it would be irreparably harmed if forced to continue to pay Affiliate Defendants under the district court injunction, Texas staked out a clear position that it could not recover those funds once the injunction was vacated. This was not a "mere statement of the effect of the federal district court's injunction" as Texas now suggests. Tex. Opp. 6. It was an affirmative argument made in an effort to obtain favorable judicial action —precisely what the doctrine of estoppel prevents a party from changing to suit the exigencies of the moment. *See In re Superior Crewboats*, 374 F.3d 330, 334 (5th Cir. 2004).

Texas' explanation for its prior statements that the terminations did not "bec[o]me effective" until "the mandate issued" is similarly strained. *See* Dkt. 51-4 at 6-7. Texas states that it was "enjoined **as a matter of <u>fact</u>** from implementing Planned Parenthood's termination from Medicaid until the state court TRO was lifted in 2021" but not enjoined "***as a matter of***

2

**Texas law.**" Tex. Opp. 7.  But, *as a matter of law*, injunctions maintain the status quo, and the status quo was that Affiliate Defendants remained qualified Medicaid providers entitled to payment under *Texas law*.  *See* Dkt. 51 at 3-4, 15.  Moreover, even the explanation Texas now offers confirms that Affiliate Defendants had no obligation to repay funds received under the injunction.  Texas admits it had not "fully implement[ed]" the terminations as of the Fifth Circuit's vacatur order, Tex. Opp. 7-8, meaning that Affiliate Defendants remained in the Texas Medicaid program and were entitled to continue to receive payments.

Texas is not entitled to rewrite history simply because the Fifth Circuit declined to grant its requested stay.  Although courts sometimes consider whether the party prevailed on its position in the prior proceeding, the Supreme Court has made clear that there are no "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001); *accord U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 272 (5th Cir. 2015).  Instead, courts must determine whether invoking judicial estoppel "protect[s] the integrity of the judicial process." *New Hampshire*, 532 U.S. at 751 (citation omitted).  The touchstone is "whether allowing a party to take seemingly inconsistent positions in separate actions would enable the party to gain an unfair advantage, or to impose an unfair disadvantage on its new adversary." *Long*, 798 F.3d at 272 (quoting Wright & Miller, 18B Fed. Prac. & Proc. Juris § 4477 (2d ed. 2015)).  Plainly, that standard is met here.

Texas alleges that Affiliate Defendants committed fraud by "knowingly and improperly" avoiding an obligation to repay money to the State because their terminations were effective in 2017.  *See* Tex. Hum. Res. Code § 36.002(12).  Texas makes this allegation despite its prior statements to a federal court of appeals that no such obligation existed and to a Texas state court that the injunctions barred the effectiveness of the terminations.  It is difficult to imagine a

3

scenario in which a litigant's change of position could more unfairly prejudice its opponent. Affiliate Defendants were entitled to rely on Texas' prior statements, and its about-face is plainly "being used as a means of obtaining unfair advantage." *Superior Crewboats*, 374 F.3d at 334-35. The Court should dismiss Texas' Complaint on the basis of judicial estoppel.

## II. Texas' Complaint Should Be Dismissed Under Rule 12(b)(6) Because It Fails to Plausibly Plead the Elements of a "Reverse" TMFPA Violation

The Court also should dismiss Texas' claim under the TMFPA's reverse false claim provision because Texas has failed to allege: (1) that Affiliate Defendants had an obligation to repay Texas in the first place; (2) that even if Affiliate Defendants had an obligation to repay Texas, they knowingly and improperly failed to do so; and (3) that Affiliate Defendants' alleged failure to repay was material. *See* Tex. Hum. Res. Code § 36.002(12).

***Obligation to Repay.*** Texas has not plausibly alleged that Affiliate Defendants had an obligation to repay funds they lawfully received under the preliminary injunction. Like the FCA, the TMFPA defines obligation as "a duty, whether or not fixed, that arises from . . . the retention of any overpayment." Tex. Hum. Res. Code. Ann. § 36.001(7-a)(D); *see* 31 U.S.C. § 3729(b)(3). Although the *amount* of the obligation need not be fixed under this definition, the duty to repay must be clearly established. *See U.S. ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*, 843 F.3d 1033, 1039-41 (5th Cir. 2016).[1]

Texas has not identified any provision of state or federal law that created a duty for Affiliate Defendants to repay funds they lawfully received under the injunction. Texas points to provisions that require Medicaid participants to refund "overpayments," but Texas offers no

---

[1] Texas does not dispute that § 36.001(7-a)(D) carries the same meaning as its federal counterpart, and indeed relies on federal reverse FCA case law. Tex. Opp. 11. Thus, the court should apply the FCA's "well-defined legal requirements" for reverse FCA claims to Texas' TMFPA claim. *U.S. ex rel. Williams v. McKesson Corp.*, No. 12-cv-371, 2014 WL 3353247, at *4 (N.D. Tex. July 9, 2014).

4

support for its assertion that payments a federal court expressly authorized Affiliate Defendants to receive for medical care provided to Texas Medicaid patients somehow became overpayments—that is, payments to which Affiliate Defendants were not "entitled," 42 U.S.C. § 1320a-7k(d)(4)(B)—when the injunction was vacated. Texas' reliance on *National Kidney Patients Ass'n v. Sullivan*, 958 F.2d 1127, 1137 (D.C. Cir. 1992), is misplaced for many reasons. That case involved an injunction prohibiting a Medicaid reimbursement rate reduction, and the D.C. Circuit held that after the injunction was vacated, HHS could recover damages to compensate it for the higher amount paid under the injunction. 958 F.2d at 1129, 1137. And because there were questions about whether the injunction bond would be insufficient to cover HHS' damages, the court held that HHS could seek administrative recoupment. *Id.* at 1137.

The circumstances here could not be more different. Texas did not pay more for Medicaid services than they were worth. It reimbursed Affiliate Defendants at the correct rate for medical treatment provided to Medicaid patients. Had the injunction not been entered, Texas would have had to pay another healthcare provider for that treatment, and thus it suffered no financial harm from the injunction. Texas is not entitled to a windfall because the injunction was ultimately vacated. Moreover, in *National Kidney Patients Association*, the district court ordered a substantial ($750,000) injunction bond, so the plaintiff was on notice that it would have to pay the rate difference if its challenge was unsuccessful. Here, the district court did not require any bond precisely because the injunction would not cause Texas to pay more in Medicaid reimbursements than it otherwise would have. *See Planned Parenthood of Greater Texas v. Smith*, 236 F. Supp. 3d 974, 999 (W.D. Tex. 2017), *vacated on other grounds*, 981 F.3d 347 (5th Cir. 2020). And as discussed above, Texas advised the Fifth Circuit that it could not recover amounts paid to Affiliate Defendants under the injunction. As a result, Affiliate Defendants

certainly did not have fair notice of any obligation to repay amounts received under the injunction. To find any repayment obligation under these circumstances, let alone one that could trigger fraud liability, would violate due process. *See FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) ("A fundamental principle in our legal system is that laws . . . must give fair notice of conduct that is . . . required."); *U.S. ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 287 (D.C. Cir. 2015) (emphasizing importance of this principle under federal FCA).

Moreover, even if Affiliate Defendants could lawfully be required to repay funds received under the injunction, they would have no obligation to do so unless and until Texas pursued administrative recoupment. Where a Medicaid recipient submits a bill after the effective date of its termination (which did not occur here), Texas law does not define payment of that bill as an "overpayment" subject to mandatory repayment. Instead, it provides that "the person *may* be liable to repay any submitted claims" in addition to sanctions and penalties that Texas may choose to impose. 1 Tex. Admin. Code § 371.1703(g)(5) (emphasis added). It is uncontroverted that Texas did not pursue recoupment or impose penalties here. The Fifth Circuit has clearly held that in such circumstances, "[w]here . . . a regulatory penalty has not been assessed and the government has initiated no proceeding to assess it, there is no established duty to pay" under the reverse false claims provision. *Simoneaux*, 843 F.3d at 1039.

**Scienter.** Texas also fails to plausibly plead that Affiliate Defendants "knowingly *and improperly*" avoided an obligation to pay money to Texas. Tex. Hum. Res. Code § 36.002(12) (emphasis added). The reverse TMFPA provision requires more than the knowing retention of an overpayment; it requires "improper" conduct to "avoid" an obligation to repay the State, i.e., fraud. *See In re Xerox*, 555 S.W.3d 518, 538 (Tex. 2018) (TMFPA prohibits "fraud on the Medicaid system"). There is no fraud when the government is aware of the purported

6

overpayment and does nothing. Texas has known since 2017 that Affiliate Defendants have been receiving what it now alleges are overpayments, Tex. Compl. ¶¶ 4-8, and yet it failed to take any steps to recoup the previous payments and even *continued* paying for a "grace period" once the injunction requiring payment was lifted. Reverse FCA liability should not attach in these circumstances.

*Materiality.* The TMFPA's reverse FCA provision is identical in form and substance to the TMFPA. *Compare* 1 Tex. Hum. Res. Code. Ann. § 36.001(7-a)(D) (emphasis added) *with* 31 U.S.C. § 3729(b)(3). The same is true for the definition of "materiality" under the two statutes. Texas argues that the TMFPA's materiality definition is substantively different from the FCA's because the FCA defines material as "having a natural tendency to influence, or be capable of influencing, *the payment or receipt of money or property*," 31 U.S.C. § 3729(b)(4) (emphasis added), and the TMFPA does not include this italicized language. But Texas fails to explain what, other than the payment or receipt of money or property, could be "influence[d]" such that it falls within a statute that is focused on improper payment benefits under Medicaid. Nor does Texas cite any case interpreting the TMFPA to apply a different standard of materiality than the FCA. In any event, Texas has failed to plead materiality under *any* definition of that term because, to this day, Texas has not taken administrative action to recoup the Medicaid reimbursements Affiliate Defendants received under the federal court injunction, the 30-day grace period, or the state court injunction. *See* Dkt. 51 at 17-18.

### III. Texas' Claim Against PPFA Should Be Dismissed Under Rule 9(b)

Texas does not dispute that Rule 9(b) applies to its Complaint, but it asks this Court to relax Rule 9(b)'s standards in analyzing whether it has stated a claim for relief against PPFA. It is true that the Fifth Circuit has slightly relaxed Rule 9(b) in *non-intervened qui tam* suits for the limited purpose of allowing relators who lack access to billing information to proceed without

7

identifying dates and amounts of specific false claims. *See U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190–92 (5th Cir. 2009). But the policy behind *Grubbs*' relaxed pleading standard for relators is entirely absent where (as here) the government has intervened in the suit. *See United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 619 n.17 (S.D.N.Y. 2013) ("[T]he Government should not be permitted to 'hide behind the relaxed pleading standard courts sometimes apply to *qui tam* relators who rely on inferences rather than facts' . . . . [b]ecause the Government is empowered to investigate allegations of fraud before bringing suit and has access to all of the relevant facts before filing its complaint.") (citation omitted).[2]

Moreover, even for relators, *Grubbs* did *not* relax Rule 9(b)'s requirement to plead "particular details of a scheme to submit false claims." 565 F.3d at 189–90. As the Fifth Circuit has made clear, *Grubbs*' holding "that the contents of a false claim need not always be presented . . . does not absolve [a FCA plaintiff] of the burden of otherwise sufficiently pleading the time, place, or identity details of the traditional [Rule 9(b)] standard." *U.S. ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 895 (5th Cir. 2013) (affirming dismissal of FCA complaint because the relator's "allegations of a scheme to submit fraudulent claims are entirely conclusory"). That is where Texas's Complaint falls woefully short; it fails to plead *any* details about PPFA's participation in an alleged scheme to defraud Texas Medicaid.

Texas does not dispute that the sole mention of PPFA in its Complaint is in the "Parties" section, where it states that "PPFA provides significant monetary support to these affiliates as well as other types of support and control, such as directives, marketing, communications, requirements, standards, policies, and accreditation for affiliates providing medical care,

---

[2] *See also U.S. ex rel. Alsaker v. CentraCare Health Sys., Inc.*, No. 99-cv-106, 2002 WL 1285089, at *3 n.4 (D. Minn. June 5, 2022); *U.S. ex rel. Monda v. Sikorsky Aircraft Corp.*, No. 99-cv-1026, 2005 WL 1925903, at *5-6 (D. Conn. Aug. 11, 2005), *aff'd*, 207 F. App'x 28 (2d Cir. 2006); *U.S. ex rel. Robinson v. Northrop Corp.*, 149 F.R.D. 142, 145 (N.D. Ill. 1993).

8

insurance coverage, legal counsel and representation, and direct support for the provision of healthcare services." Texas Compl. ¶ 20. But Texas' Complaint does not contain a single substantive allegation of wrongdoing by PPFA. Unable to rely on actual allegations in its Complaint, Texas offers a series of unpled assertions. Texas' opposition states that "PPFA directed and participated in Defendants' wrongdoing which led to their termination from the Medicaid Program"; "worked with the other Defendants in this case to continue submitting claims for reimbursement by Texas Medicaid despite being terminated under Texas law"; and "agreed with the other Defendants in this case to retain overpayments despite Defendant's terminations and statutory obligation to repay the overpayments." Texas Opp. 20-21. But none of those conclusory allegations appear anywhere in the Complaint, and a party cannot amend a complaint through briefing in opposition to a motion to dismiss. *See Phalanx Grp. Int'l v. Critical Solutions Int'l*, No. 18-cv-244, 2019 WL 954727, at *6 (N.D. Tex. Feb. 26, 2019).

Texas' reliance on principles of corporate imputation likewise fails. PPFA is not a corporate parent and its affiliates are not subsidiaries. The affiliates are separate, independent 501(c)(3) organizations, and PPFA is a "*membership organization* that develops medical and organizational standards to which its affiliates must adhere in order to operate under the Planned Parenthood name." *Planned Parenthood of Greater Tex. Family Planning & Preventative Health Servs. v. Smith*, 236 F. Supp. 3d 974, 979 (W.D. Tex. 2017), *vacated on other grounds*, 981 F.3d 347 (5th Cir. 2020) (emphasis added). But, even if PPFA *could* be considered a corporate parent of the affiliates (it is not), a corporate parent is not liable for the acts of a subsidiary without specific allegations that the parent caused the subsidiary's actions. *U.S. ex rel. Haight v. RRSA (Commercial Div.), LLC*, No. 16-cv-1975, 2020 WL 6163139, *4 & n.10 (N.D. Tex. Oct. 20, 2020). Texas has not made any such specific allegations here.

9

**IV.     The Court Lacks Jurisdiction Over Texas' State Law Claim**

In arguing that the Court has original subject matter jurisdiction over Texas' state law claim, Texas demonstrates a startling level of confusion about its own statute. Texas conflates the government action bar (which strips the court of jurisdiction over TMFPA actions that were the subject of a State administrative civil money penalty proceeding) with the entirely separate public disclosure bar (which bars actions based on publicly disclosed information). The former has no exceptions and does not allow the State to object to dismissal. *See* 1 Tex. Hum. Res. Code Ann. § 36.113(a); *accord* 31 U.S.C. § 3730(e)(3). The latter creates an exception for a relator who is an original source of the information and allows the State to object to dismissal (though a court can dismiss over the State's objections). *See* 1 Tex. Hum. Res. Code Ann. § 36.113(b); 31 U.S.C. § 3730(e)(4). The plain language of the statute is more than enough to dispose of Texas' argument, but it also makes sense to treat the provisions differently. If the government could oppose dismissal of a TMFPA case that is based on allegations or transactions that were the subject of another action in which it was a party, the government effectively would have two bites of the proverbial apple. The public disclosure bar, by contrast, contemplates the possibility that the government may not have actually known about the public disclosure and lets it object to dismissal of actions that do assist the government in rooting out fraud.

Aside from its confused argument about an inapplicable TMFPA provision, Texas gives no reason why the government action bar should not apply. The Court should dismiss Texas' Complaint for lack of jurisdiction unless Relator's Complaint is dismissed. *See* Dkt. 51 at 21-23.

## CONCLUSION

For these reasons and those set forth in Defendants' opening brief, the Court should dismiss Texas' Complaint.

Dated: March 25, 2022          Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP

By: */s/ Craig D. Margolis*
    Craig D. Margolis
    Craig.Margolis@arnoldporter.com
    Murad Hussain
    Murad.Hussain@arnoldporter.com
    Tirzah Lollar
    Tirzah.Lollar@arnoldporter.com
    601 Massachusetts Ave, NW
    Washington, DC 20001-3743
    Telephone: +1 202.942.6000
    Fax: +1 202.942.5999

    Christopher M. Odell
    Texas State Bar No. 24037205
    Christopher.Odell@arnoldporter.com
    700 Louisiana Street, Suite 4000
    Houston, TX 77002-2755
    Telephone: +1 713.576.2400
    Fax: +1 713.576.2499

    Ryan Patrick Brown
    Texas State Bar No. 24073967
    brown@blackburnbrownlaw.com
    1222 S. Fillmore
    Amarillo, TX 79101
    Tel: (806) 371-8333
    Fax: (806) 350-7716

    *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on March 25, 2022, the foregoing document was electronically filed with the Clerk of Court using CM/ECF.

                                                        */s/ Craig D. Margolis*
                                                        Craig D. Margolis