IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION



| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | 2:21-CV-022-Z |
| § | |
| PLANNED PARENTHOOD § | |
| FEDERATION OF AMERICA, *et al.*, § | |
| § | |
| Defendants. § | |

**ORDER**

Before the Court is Defendants'[1] Motion to Unseal Relator's Notice of Identity and Revoke Relator's Protective Order ("Motion") (ECF No. 67), filed on April 7, 2022. Having considered the Motion, pleadings, and relevant law, the Court **DENIES** the Motion. The Court **DIRECTS** the United States District Clerk to **SEAL** Defendants' Motion and Memorandum in Support (ECF Nos. 67, 68).

**BACKGROUND**

On February 5, 2021, Relator Doe ("Relator") filed a *qui tam* Complaint alleging False Claims Act ("FCA") violations based on an "undercover investigation" revealing fraudulent Medicaid claims submitted to Texas and Louisiana. *See generally* ECF No. 2. As the FCA requires, Relator filed the Complaint under seal to allow the Texas Attorney General, Louisiana Attorney General, and the United States Department of Justice ("DOJ") to decide whether to intervene. Relator filed a Notice of Identity (SEALED ECF No. 9) and Motion for Protective Order

---

[1] Defendants are Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood of South Texas, Inc., Planned Parenthood of Cameron County, Inc., and Planned Parenthood of San Antonio, Inc. The Court will refer to all Planned Parenthood entities as "Defendants."

(SEALED ECF No. 10) under seal. Texas intervened in this litigation. *See* ECF No. 22. DOJ declined to intervene. *See* ECF No. 18. And Louisiana has not responded either way. The Court unsealed this action on January 12, 2022. *See* ECF No. 27. The Notice of Identity and Motion for Protective Order — however — remain under seal pursuant to this Court's Protective Order. *See id.* at 1; SEALED ECF No. 12.

Defendants seek to identify Relator in violation of this Court's Protective Order.[2] *See, e.g.*, ECF No. 68 at 7, 10–11. To combat harassment, threats, intimidation, and retaliation against Relator — or any other person Defendants rightly or wrongly identify — the Court **DIRECTS** the District Clerk to **SEAL** Defendants' Motion and Memorandum in Support (ECF Nos. 67, 68). The Court cautions Defendants: further violations of the Protective Order will be punished with sanctions.

## LEGAL STANDARDS

Although it is within the Court's discretion to issue a protective order to maintain the confidentiality of Relator's identity, the Court recognizes "[t]he public's right of access to judicial

---

[2] Defendants challenge the "absurd impracticality" of the Protective Order, arguing they "cannot cite" the "numerous articles" reflecting Relator's views on "abortion, Defendants, the ongoing litigations . . . and [the] investigation." ECF No. 68 at 11 n.2. This argument is flawed for two reasons. First, Defendants' Memorandum *already* cites to public-domain media identifying Relator — in violation of the Protective Order. *See id.* at 11. Second, attorneys admitted to federal practice are *routinely* tasked with maintaining confidentiality in various categories and to various degrees. *See, e.g.*, FED. R. CIV. P. 5.2(a) ("[I]n an electronic or paper filing with the court that contains an individual's social-security number, taxpayer-identification number, or birth date, the name of an individual known to be a minor, or a financial-account number, a party or nonparty making the filing may include only [certain limited information]."); 35 U.S.C. § 301(e) (person citing "prior art" to the United States Patent and Trademark Office may request redaction of "person's identity."); *United States v. Daoud*, 761 F.3d 678, 680 (7th Cir. 2014) (opinion redacted pursuant to the Foreign Intelligence Surveillance Act, 50 U.S.C. §§ 1801 *et seq.*); *Certain Interested Individuals v. Pulitzer Pub. Co.*, 895 F.2d 460, 461 (8th Cir. 1990) (opinion redacted pursuant to Title III, 18 U.S.C. §§ 2510 *et seq.*); *Resolution Tr. Corp. v. Bright*, 157 F.R.D. 397, 401 (N.D. Tex. 1994) ("Because parts of this document may support a claim of attorney-client privilege, the [plaintiff] may redact any portions that are protected by the privilege."); 45 C.F.R. §§ 160.103, 164.502, 164.514 (prohibiting disclosure of "protected health information" under the Health Insurance Portability and Accountability Act). Here, Defendants are represented by subject-matter experts previously trained by the United States Department of Justice in practice areas involving sensitive, confidential, and classified information. Defendants' counsel should apply the same standards and skillset to this Court's Protective Order.

proceedings is fundamental." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 418 (5th Cir. 2021). There is a "clear and strong First Amendment interest" in public access because "[w]hat transpires in the courtroom is public property." *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981) (quoting *Craig v. Harney*, 331 U.S. 367, 374 (1947)).

In the Fifth Circuit, there is "no hard and fast formula for ascertaining whether a party may sue anonymously." *Id.* at 186. Instead, "[t]he decision requires a balancing of considerations calling for maintenance of a party's privacy against the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Id.* Although there is no strict formula to determine when anonymity is appropriate, the Fifth Circuit considers three *Stegall* factors: (1) whether the plaintiff is "suing to challenge governmental activity"; (2) whether the suit requires the plaintiff to "disclose information 'of the utmost intimacy'"; and (3) whether the suit requires the plaintiff to "admit [an] intention to engage in illegal conduct, thereby risking criminal prosecution." *Id.* at 185. This case involves the second and third factors. *See* SEALED ECF No. 12 at 5 (same).

In addition to the three *Stegall* factors, federal courts consider the specific facts and circumstances of the case. For instance, while the sole threat of a hostile public reaction to litigation will rarely justify anonymity, courts may consider potential threats of violence when determining whether anonymity is appropriate. *See Stegall*, 653 F.2d at 186 (stating parties may expect harassment and violence). The court should "carefully review *all* the circumstances of a given case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns." *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992). If particularized evidence demonstrates disclosure would threaten a litigant's personal privacy or

safety, courts have discretion to maintain anonymity. *See Whole Woman's Health v. Paxton*, No. A-17-CV-690, 2017 WL 11606683, at *2 (W.D. Tex. Aug. 15, 2017).

### ANALYSIS

The Court will analyze the *Stegall* factors, then consider the specific facts and circumstances of this case.

### A. The *Stegall* Factors Favor the Protective Order

Regarding the second *Stegall* factor, Courts often find matters involving "birth control, abortion, homosexuality, transexuality, mental illness, welfare rights of illegitimate children, and prayer and personal religious beliefs" to be "information of the utmost intimacy." *Doe v. Compact Info. Sys., Inc.* No. 3:13-CV-5013-M, 2015 WL 11022761, at *4 (N.D. Tex. Jan. 26, 2015); *see also Wynne v. Jaffe*, 599 F.2d 712, 713 (5th Cir. 1979) (finding "matters of a sensitive and highly personal nature" include "birth control, abortion, homosexuality or the welfare rights of illegitimate children or abandoned families" (internal marks omitted)); *Patton v. Entercom Kan. City, LLC*, No. 13-2186, 2013 WL 3524157, at *1 (D. Kan. July 11, 2013) (finding "highly sensitive and important privacy interests" warranting plaintiff to proceed anonymously usually involve "abortion, birth control or welfare prosecutions involving abandoned or illegitimate children"); *Doe v. United Servs. Life Ins.*, 123 F.R.D. 437, 439 (S.D.N.Y. 1988) (finding courts have allowed parties to use fictious names, especially when necessary to protect privacy, and citing cases dealing with abortion, among other things); *Doe v. Harris*, No. 14-0802, 2014 WL 4207599, at *3 (W.D. La. Aug. 25, 2014) ("[G]enerally, the information of the utmost intimacy standard applies to cases involving issues such as abortion and prayer and personal religious beliefs." (internal marks omitted)). The second *Stegall* factor may be satisfied when the case is abortion related; a specific abortion or potential abortion need not be involved. *Cf. June Med. Servs., LLC*

*v. Phillips*, No. 14-525-JWD-RLB, Order, ECF No. 24 (M.D. La. May 10, 2022) (issuing protective order granted to protect "abortion clinic physicians, staff, and patients"); *Planned Parenthood Ark. & E. Okla. v. Jegley*, No. 4:15-CV-00784-KGB, 2016 WL 7487914, at *2 (E.D. Ark. Feb. 1, 2016) (stating "[t]here is support in the case law for th[e] type of protection" of those who "associate with abortion providers" because they can be "subject to personal and professional stigma and" may "fear for their personal safety and that of their families"); *Jackson v. Women's Health Org. v. Currier*, No. 3:12-CV-436, Protective Order, ECF No. 98 (S.D. Miss. May 22, 2013) (permitting abortion providers challenging admitting privilege to proceed under pseudonyms).

Here, the second *Stegall* factor is satisfied. Relator sues Defendants based on information discovered through an undercover investigation of what Relator believes to be unethical and unlawful abortion practices. Based on the investigation, Relator has endured — and continues to endure — harassment, threats, intimidation, and retaliation by Defendants and their supporters. *See generally* SEALED ECF No. 10-1. Thus, Relator's "personal beliefs and practices" about abortion "are shown to have invited an opprobrium analogous to the infamy associated with criminal behavior." *Stegall*, 653 F.2d at 186; *see also* SEALED ECF No. 12 at 5–6.

Additionally, recent events may subject Relator to even more opprobrium. *See* PRESS RELEASE, THE SUPREME COURT OF THE UNITED STATES (May 3, 2022) (outlining the Supreme Court's response to the leaked draft in *Dobbs v. Jackson Women's Health Organization*, No. 19-1392). Since the *Dobbs* leak, myriad churches, ministries, politicians, and even Supreme Court

Justices have endured invective, verbal harassment, and outright physical violence.[3] The Court takes judicial notice of the aforementioned incidents — all hostile to Relator's views on abortion.

The third *Stegall* factor is also satisfied. Here, the record reflects that the State of California is *currently* prosecuting Relator. *See* SEALED ECF No. 12 at 6. Additionally, Relator was sued by a private party seeking damages allegedly arising from the undercover investigation. *See id.* at 3. When combined, these pending criminal and civil cases are sufficient to "invite[] an opprobrium analogous to the infamy associated with criminal behavior" — and Relator may be compelled to "admit [an] intention to engage in illegal conduct" to settle either or both lawsuits. *Stegall*, 653 F.2d at 185.

For the aforementioned reasons, the second and third *Stegall* factors "tip the balance against the customary practice of judicial openness." *Id.* at 186; *see also* SEALED ECF No. 12 at 6.

---

[3] Dillon Thomas, *Catholic Church In Boulder Vandalized With Abortion-Rights Graffiti*, CBS4 DENVER (May 4, 2022), https://denver.cbslocal.com/2022/05/04/sacred-heart-mary-catholic-church-boulder--vandalism/; Caroline Downey, *Pro-Abortion Group Publicizes Conservative Sup. Ct. Justices' Home Addresses ahead of Planned Protests*, NATIONAL REVIEW (May 5, 2022), https://www.nationalreview.com/news/pro-abortion-group-publicizes-conservative-supreme-court-justices-home-addresses-ahead-of-planned-protests/; Juan Betancourt, *Loreto House vandalized with spray paint*, DENTON RECORD-CHRONICLE (May 7, 2022), https://dentonrc.com/news/crime/loreto-house-vandalized-with-spray-paint/article_6cdfea49-d456-53c5-bea6-6ad2f0e44e5a.html?; Greg Stohr, *Abortion-rights protest targets homes of Kavanaugh, Roberts*, BOSTON GLOBE (May 8, 2022), https://www.bostonglobe.com/2022/05/08/business/abortion-rights-protest-targets-homes-kavanaugh-roberts/; Virginia Barreda, *Police asking for tips on fire during attempted break-in at Or. Right to Life building in Keizer*, AUSTIN AMERICAN-STATESMAN (May 9, 2022), https://www.statesman.com/story/news/2022/05/09/police-investigating-fire-at-the-oregon-right-to-life-building-in-keizer/65354575007/; Sandy Swanson, *West Fort Collins Catholic church vandalized with pro-abortion rights message Saturday*, COLORADOAN (May 9, 2022), https://www.coloradoan.com/story/news/2022/05/09/st-john-xxiii-church-fortcollins-vandalized-pro-abortion-rights-message/9703596002/; Michael Gryboski, *Activists attack Catholic church, spray paint abortion, anarchist graffiti on entrance doors*, CHRISTIAN POST (May 10, 2022), https://www.christianpost.com/news/abortion-activists-attack-catholic-church-graffiti-front-doors.html?msclkid=f7be47f3d13511ec841bb2ee82a48f63; Emmett Jones, *3 Tex. Catholic churches vandalized with pro-choice messages*, FOX NEWS (May 11, 2022), https://www.foxnews.com/us/texas-catholic-churches-vandalized-pro-choice-activists; Matt Smith, *Abortion debate intensifies as police, FBI investigate arson at Wis. Family Action*, WISN 12 (May 11, 2022), https://www.wisn.com/article/abortion-debate-intensifies-arson-wisconsin-family-action/39972045#.

## B. Evidence of Specific Threats of Violence and Retaliation Justify Anonymity

*Stegall* did not establish a "rigid, three-step test for the propriety of party anonymity." 653 F.2d at 185. The Fifth Circuit has instructed courts to engage in a "fact-sensitive" analysis, considering case-specific facts. *Id.* "The threat of hostile public reaction to a lawsuit, standing alone, will only with great rarity warrant public anonymity." *Id.* at 186. Instead, this Court should ascertain whether the Relator and/or Defendants have been subject to specific threats related to the lawsuit in question. *See id.*

There is evidence of specific threats of violence made directly against Relator because of the investigation underlying this case. SEALED ECF No. 10-1 at 4. The evidence of retaliation and harassment against Relator includes conduct by Defendants and their employees. *Id.* Here, Defendants could incur hundreds of millions of dollars in damages and penalties. If the mere *publication* of Relator's undercover videos incited backlash, the possibility of hundreds of millions of dollars in monetary damages and penalties creates a reasonable likelihood that Relator will suffer threats of violence, harassment, and retaliation.[4]

## C. *Qui Tam* Litigants May Proceed Anonymously

Defendants assert there is greater public interest in this case because it is a *qui tam* case that involves taxpayer dollars. *See* ECF No. 68 at 14. Courts — however — often permit relators to proceed under pseudonyms. *See, e.g., Doe A v. Rolling Meadows Hospice LLC*, No. 3:17-CV-050-C (N.D. Tex. Jan. 6, 2017); *U.S. ex rel. Doe v. Heart Sol., PC*, 923 F.3d 308 (3d Cir. 2019);

---

[4] Evidence of specific threats of violence and relation differentiate this case from *Doe v. McKesson*. 945 F.3d 818 (5th Cir. 2019), *vacated on other grounds*, 141 S. Ct. 48 (2020). There, the Fifth Circuit upheld a denial of a motion to proceed anonymously because the plaintiff — a police officer — did not offer any evidence of a particularized threat directed towards himself. The evidence instead reflected the "generalized threat of violence that all police officers face." *Id.* at 835 n.12. By contrast, Relator has made a substantial showing of past threats of violence and the likely possibility of future threats if Relator's identity were revealed in connection with the instant action. *See* SEALED ECF No. 12 at 7 n.1; *see also, e.g., Doe v. Beaumont Indep. Sch. Dist.*, 172 F.R.D. 215, 217 (E.D. Tex. 1997) (declining to allow claimants to proceed anonymously due to lack of personal threats).

*U.S. ex rel. Doe v. N.Y. State Sch. Dists.*, 597 F. App'x 16 (2d Cir. 2015); *cf. U.S. ex rel. Doe v. X Corp.*, 862 F. Supp. 1502 (E.D. Va. 1994). Shielding Relator's identity does not obstruct public scrutiny because *this case* turns on *Defendants'* conduct — not Relator's individual characteristics. *See* SEALED ECF No. 12 at 7–8. This case is not even brought on Relator's behalf; Relator sues on behalf of the United States, Texas, and Louisiana.

### D. The Protective Order Does Not Prejudice Defendants

Because Relator is willing to disclose Relator's identity to Defendants, the Court's Protective Order does not prejudice Defendants. Like *Stegall*, Relator does not object to disclosing Relator's identity to the Court or other parties to facilitate adjudication of this case. SEALED ECF No. 10 at 4–5; *see also Stegall*, 653 F.2d at 182 (noting plaintiffs agreed to disclose identities to defendants and court). In fact, Relator has disclosed Relator's identity to *these* litigants on multiple occasions. *See* ECF Nos. 27, 32, 63, 64. As discussed above, this case turns on questions of law — not Relator's individual characteristics. Consequently, "it is difficult to see how disguising [Relator's] identit[y] will obstruct public scrutiny of the important issues in this case." *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1043 (9th Cir. 2010) (internal marks omitted).

### CONCLUSION

For these reasons, the Court **DENIES** Defendants' Motion and **DIRECTS** the District Clerk to **SEAL** the Motion and Memorandum in Support (ECF Nos. 67, 68).

**SO ORDERED.**

May 20, 2022

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE