**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| United States of America<br>*ex rel.* ALEX DOE, Relator, | § <br> § <br> § | |
| The State of Texas<br>*ex rel.* ALEX DOE, Relator, | § <br> § <br> § | CIVIL ACTION NO. 2:21-CV-00022-Z |
| The State of Louisiana<br>*ex rel.* ALEX DOE, Relator, | § <br> § <br> § | Date:    May 24, 2022 |
| Plaintiffs, | § <br> § | |
| v. | § <br> § | |
| Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc., | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | |
| Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR
RECONSIDERATION, OR, IN THE ALTERNATIVE, CERTIFICATION FOR
INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ......................................................................................................... 1

LEGAL STANDARDS .................................................................................................. 4

I.      Motion for Reconsideration ............................................................................... 4

II.     Certification of Interlocutory Appeal under 28 U.S.C. § 1292(b) ....................... 5

ARGUMENT ................................................................................................................ 6

I.      The Court Should Reconsider Its Order and Grant Defendants' Motions to Dismiss ......... 6

    A.      The Court Should Reconsider Its Conclusion That Plaintiffs Adequately Alleged That Defendants Had an Established Repayment Obligation ..................................... 6

    B.      The Court Should Reconsider Its Conclusion That Plaintiffs Adequately Alleged Scienter for Their Reverse FCA/TMFPA Claims ....................................... 10

    C.      The Court Should Reconsider Its Ruling on the Public Disclosure Bar ................... 13

        1.      The Public Disclosure Bar Applies .............................................................. 13

        2.      Relator Has Not Adequately Pled That He is an Original Source .................. 17

II.     In the Alternative, the Court Should Certify This Matter for an Interlocutory Appeal ..... 19

CONCLUSION ............................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Austin v. Kroger Texas, L.P.*,
864 F.3d 326 (5th Cir. 2017) ....................................................................................4

*In re Bayou Shores SNF, LLC*,
828 F.3d 1297 (11th Cir. 2016) ............................................................................7, 9

*In re BP p.l.c. Sec. Litig.*,
No. 10-MD-2185, 2015 WL 926199 (S.D. Tex. Mar. 4, 2015)............................5, 6

*Corley v. United States*,
556 U.S. 303 (2009)...............................................................................................11

*Glaser v. Wound Care Consultants, Inc.*,
570 F.3d 907 (7th Cir. 2009) ................................................................................14

*Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*,
559 U.S. 280 (2010)...............................................................................................14

*Hopkins v. Cornerstone Am.*,
No. 4:05-CV-332-Y, 2007 WL 9772306 (N.D. Tex. Aug. 1, 2007) .............................5, 6, 21

*Hughes Aircraft Co. v. U.S. ex rel. Schumer*,
520 U.S. 939 (1997)...............................................................................................13

*Little v. Shell Expl. & Prod. Co.*,
690 F.3d 282 (5th Cir. 2012) ................................................................................15

*Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*,
259 F. Supp. 2d 471 (M.D. La. 2002)......................................................................5

*Md. Dep't of Human Resources v. U.S. Dep't of Agriculture*,
976 F.2d 1462 (4th Cir. 1992) ............................................................................7, 9

*McDaniel v. Credit Sols. of Am., Inc.*,
No. 3:08-CV-0928-N, 2012 WL 13102240 (N.D. Tex. Mar. 21, 2012)............................5, 20

*Nat'l Kidney Patients Ass'n v. Sullivan*,
958 F.2d 1127 (D.C. Cir. 1992) .......................................................................7, 8, 9

*In re Natural Gas Royalties*,
562 F.3d 1032 (10th Cir. 2009) ............................................................................14

*Planned Parenthood of Greater Tex. v. Smith*,
  236 F. Supp. 3d 974 (W.D. Tex. 2017)................................................................7

*In re Planned Parenthood of Greater Texas*,
  Cause No. D-1-GN-21-000528 (Travis Cty. Dist. Ct.).........................................16

*Ryan v. Flowserve Corp.*,
  444 F. Supp. 2d 718 (N.D. Tex. 2006) ...........................................................5, 20

*Scott Rose v. Inst.*,
  No. 09-CV-05966-PJH, 2016 WL 6393513 (N.D. Cal. Oct. 28, 2016) .................21

*United States v. Strock*,
  982 F.3d 51 (2d Cir. 2020)...............................................................................8

*United States v. Vora*,
  No. 4:20-CV-66-BJB, 2022 WL 89177 (W.D. Ky. Jan. 7, 2022) ...........................8

*U.S. ex rel. Customs Fraud Investigation, LLC v. Victaulic Co.*,
  839 F.3d 242 (3d Cir. 2016)............................................................................12

*U.S. ex rel. Eisenstein v. City of New York*,
  556 U.S. 928 (2009).......................................................................................13

*U.S. ex rel. King v. Solvay Pharms., Inc.*,
  871 F.3d 318 (5th Cir. 2017) ...............................................................4, 17, 18

*U.S. ex rel. Landis v. Tailwind Sports Corp.*,
  160 F. Supp. 3d 253 (D.D.C. 2016) ................................................................10

*U.S. ex rel. Martino-Fleming v. S. Bay Mental Health Ctr.*,
  No. 15-cv-13065, 2018 WL 4539684 (D. Mass. Sept. 21, 2018)..........................11

*U.S. ex rel. May v. Purdue Pharma L.P.*,
  737 F.3d 908 (4th Cir. 2013) ..........................................................................15

*U.S. ex rel. Memhardt v. Citigroup, Inc.*,
  No. 4:18-cv-1076, 2020 WL 6342666 (E.D. Mo. Oct. 29, 2020)..........................19

*U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*,
  812 F.3d 294 (3d Cir. 2016)............................................................................19

*U.S. ex rel. Mosler v. City of Los Angeles*,
  414 F. App'x 10 (9th Cir. 2010) ......................................................................14

*U.S. ex rel. Olson v. Fairview Health Servs. of Minn.*,
  831 F.3d 1063 (8th Cir. 2016) ........................................................................12

*U.S. ex rel. Petras v. Simparel, Inc.*,
   857 F.3d 497 (3d Cir. 2017)................................................................10, 12

*U.S. ex rel. Poteet v. Bahler Med., Inc.*,
   619 F.3d 104 (1st Cir. 2010)...................................................................14

*U.S. ex rel. Reagan v. E. Tx. Med. Ctr. Reg'l Healthcare Sys.*,
   274 F. Supp. 2d 824 (S.D. Tex. 2003) ...................................................17

*U.S. ex rel. Reagan v. E. Tx. Med. Ctr. Reg'l Healthcare Sys.*,
   384 F.3d 167 (5th Cir. 2004)..................................................................14

*U.S. ex rel. Schweizer v. Canon, Inc.*,
   9 F.4th 269 (5th Cir. 2021) ....................................................................15

*U.S. ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*,
   843 F.3d 1033 (5th Cir. 2016) ..................................................... *passim*

*U.S. ex rel. Solomon v. Lockheed Martin Corp.*,
   878 F.3d 139 (5th Cir. 2017) .......................................................3, 15, 16

*U.S. ex rel. Sonnier v. Standard Fire Ins. Co.*,
   84 F. Supp. 3d 575 (S.D. Tex. 2015) ...............................................3, 14

*U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn*,
   14 F.3d 645 (D.C. Cir. 1994)............................................................14, 15

*U.S. ex rel. Zayas v. Astrazeneca Biopharmaceuticals, Inc.*,
   No. 14-cv-1718, 2017 WL 1378128 (E.D.N.Y. Apr. 17, 2017) .............10

*Universal Health Servs., Inc. v. U.S. ex rel. Escobar*,
   579 U.S. 176 (2016).................................................................................12

*Van Straaten v. Shell Oil Prods. Co.*,
   813 F. Supp. 2d 1005 (N.D. Ill. 2011) .............................................20, 21

*Vt. Agency of Nat. Resources v. U.S. ex rel. Stevens*,
   529 U.S. 765 (2000) (Scalia, J.).............................................................12

*Wercinski v. IBM Corp.*,
   982 F. Supp. 449 (S.D. Tex. 1997) .......................................................15

*In re Xerox*,
   555 S.W.3d 518 (Tex. 2018)...................................................................12

**Statutes**

28 U.S.C. § 1292(b) ............................................................1, 2, 5, 19

iv

31 U.S.C. § 3729(a)(1)(G) ...............................................................................2, 11, 12

31 U.S.C. § 3730(d)(2) ...............................................................................................13

31 U.S.C. § 3730(e) .....................................................................................................14

31 U.S.C. § 3730(e)(4)(A) ......................................................................................2, 15

42 U.S.C. 1320a-7b(g) .................................................................................................18

42 U.S.C. 1320a-7k(d)(1) ..............................................................................................8

42 U.S.C. 1320a-7k(d)(3) ..............................................................................................8

42 U.S.C. 1320a-7k(d)(4)(B) .........................................................................................8

La. Rev. Stat. § 460.73(C) ............................................................................................7

Pub. L. No. 111-148, 124 Stat. 119, 901 (Mar. 23, 2010) ..........................................15

Tex. Admin. Code Ann. § 371.1703(g)(5) ...............................................................7, 10

Tex. Hum. Res. Code § 36.002(12) ........................................................................2, 11

## Other Authorities

16 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Fed. Prac. & Proc.
§ 3930 (3d ed. 2022) ................................................................................................5

81 Fed. Reg. 7654 (2016) .......................................................................................8, 20

155 Cong. Rec. S 4531 (Apr. 22, 2009) .................................................................2, 11

Fed. R. Civ. P. 54(b) .........................................................................................1, 4, 5

Fed. R. Civ. P. 59(e) .....................................................................................................4

Chuck Lindell, Judge Blocks Texas Plan to Remove Planned Parenthood from
Medicaid, Austin American-Statesman (Feb. 3, 2021) .........................................17

S. Rep. No. 111-10 (2009) ......................................................................................2, 12

Shannon Najmabadi, Texas Temporarily Blocked From Kicking Planned
Parenthood Out of Medicaid, Texas Tribune (Feb. 3, 2021) .................................17

Defendants Planned Parenthood Gulf Coast, Inc. ("PPGC"), Planned Parenthood of Greater Texas, Inc. ("PPGT"), Planned Parenthood South Texas, Inc. ("PPST"), Planned Parenthood Cameron County, Inc. ("PP Cameron County"), Planned Parenthood San Antonio, Inc. ("PP San Antonio") (collectively, "Affiliate Defendants"), and Planned Parenthood Federation of America, Inc. ("PPFA") (all collectively, "Defendants") move pursuant to Federal Rule of Civil Procedure 54(b) and 28 U.S.C. § 1292(b) for reconsideration of the Court April 29, 2022 Opinion & Order ("Order") [Dkt. 71], or in the alternative, for certification of interlocutory appeal.

## **INTRODUCTION**

Although Defendants respectfully disagree with many aspects of the Court's Order, they seek reconsideration, or in the alternative, certification, regarding only three discrete issues, each of which is dispositive of some or all claims.

First, the Court's holding that Relator Alex Doe ("Relator") and the State of Texas (collectively, "Plaintiffs") plausibly pled a "reverse violation" of the False Claims Act ("FCA") and Texas Medicaid Fraud Prevention Act ("TMFPA"), is contrary to binding Fifth Circuit precedent. The court of appeals established in *U.S. ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*, 843 F.3d 1033, 1039 (5th Cir. 2016), that "[w]here . . . a regulatory penalty has not been assessed and the government has initiated no proceeding to assess it, there is no established duty to pay" and therefore no reverse FCA violation. Although it is true that (under circumstances very different from those present here) "a party *may* be liable for funds received under a court order or injunction later vacated," Order at 8 (emphasis added), such liability arises *only if* the court that vacates the injunction orders payment on an injunction bond or the government successfully pursues administrative recoupment. Neither occurred here; the Fifth Circuit did not order payment on an injunction bond when it vacated the Texas injunction (and indeed, no injunction bond

1

existed) and neither Texas nor Louisiana pursued administrative recoupment. Because Defendants' alleged obligation to repay was contingent on future events, *Simoneaux* controls and mandates dismissal of Plaintiffs' reverse FCA and TMFPA claims. At a minimum, there are reasonable grounds for disagreement as to *Simoneaux*'s effect here, and the Court should certify the issue for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Second, the Court overlooked the heightened scienter standard applicable to the reverse false claim provisions of the FCA and TMFPA. To adequately plead scienter under those provisions, Plaintiffs must allege that Defendants "knowingly *and improperly*" avoided an obligation to pay money to the government. 31 U.S.C. § 3729(a)(1)(G); Tex. Hum. Res. Code § 36.002(12). As Congress made clear, the addition of "improper" to this provision was intended to limit liability for acts of omission to circumstances in which a person acts with "improper motives" or uses "inherently improper means." 155 Cong. Rec. S 4531, 4540 (Apr. 22, 2009) (Statement of Sen. Kyl). That standard is not met where, as here, the government was on notice of the alleged overpayment, S. Rep. No. 111-10, at 441 (2009), and did not seek to recoup the funds. The Court should reconsider its ruling on scienter and dismiss Plaintiffs' reverse FCA/TMFPA claims for failure to plead that essential element, or, in the alternative, certify this issue for interlocutory appeal.

Third, the Court's holding that the FCA's public disclosure bar does not apply mistakenly relies on an incorrect legal standard contrary to Fifth Circuit precedent. The public disclosure bar applies where a relator's allegations are "substantially the same" as the information in the public domain before he filed suit. 31 U.S.C. § 3730(e)(4)(A). If they are, the bar applies irrespective of whether the relator himself was responsible for putting the information in the public domain. "This result," even if seemingly unfair to the relator, "is consistent with the purpose of the public

disclosure bar" because a *qui tam* action does help the government root out fraud "if the information about the fraud is already publicly known." *U.S. ex rel. Sonnier v. Standard Fire Ins. Co.*, 84 F. Supp. 3d 575, 589 (S.D. Tex. 2015) (quoting *U.S. ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 381 (5th Cir. 2009)).  Likewise, to qualify as an original source under the "material addition" prong, a relator must show that his *complaint* materially added to publicly available information; it is not enough that his *investigation* may have contributed to awareness of the issues.  This Court erred in holding that Relator's prior investigation, the results of which the Court recognized were made public, allowed him to avoid the public disclosure bar.

Further, the Court's conclusions that Relator's implied false certification and reverse FCA theories are not "based on" public information rest on factual and legal errors.  The Court held that Relator's implied false certification theory was not based on public disclosures because "[t]he public disclosures . . . do not detail any false certifications made by Defendants."  Order at 26.  But the Fifth Circuit has made clear that "[w]hen the elements of a fraudulent transaction are present in public disclosures, those public disclosures need not allege fraud in explicit language." *U.S. ex rel. Solomon v. Lockheed Martin Corp.*, 878 F.3d 139, 145 (5th Cir. 2017).  Here, the public disclosures alleged that Affiliate Defendants participated in and submitted bills under Texas Medicaid despite the fact that they were not qualified Medicaid providers due to their alleged violations of federal and state law.  These facts easily "could have been synthesized to form the same inference [Relator] now alleges in his complaint" – that Affiliate Defendants' bills to Texas Medicaid were impliedly false.  *See id.*  As to Relator's reverse FCA claim, the Court held that "information related to Defendants' alleged failure to report or repay Medicaid funds" was not publicly disclosed before Relator filed suit.  Order at 27.  That is factually incorrect.  Before Relator filed his complaint, a Texas state court order and news media coverage disclosed that Affiliate

Defendants continued to receive reimbursements under Texas Medicaid.  The essential elements of Relator's reverse FCA claim – the Fifth Circuit's 2020 decision that allegedly created a repayment obligation and Defendants' nonpayment – were both publicly disclosed.

Finally, the Court alternatively held that Relator qualifies as an original source because he voluntarily disclosed the information on which his allegations were based before any public disclosures.  The Fifth Circuit, however, has set a high bar for this prong of the original source exception.  It held in *U.S. ex rel. King v. Solvay Pharms., Inc.*, 871 F.3d 318, 326-27 (5th Cir. 2017), that a relator must demonstrate that his disclosures to the government "connect[ed] [his] knowledge" of the defendant's allegedly unlawful conduct to "the filing of a claim for reimbursement from the government."  Because Relator has pled no details regarding his alleged disclosures to the government, he has failed to satisfy this standard.

For these reasons, the Court should reconsider its decision as to the public disclosure bar, or, alternatively, certify the question of the bar's applicability for interlocutory appeal.

## LEGAL STANDARDS

### I.    Motion for Reconsideration

A district court may revise an interlocutory order "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017).  "Under Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin*, 864 F.3d at 336 (quotation mark and citation omitted).  Rule 54(b) is "less stringent" and "more flexible" than Rule 59(e), which imposes a "more exacting" standard.  *Id*. at 336-37 (finding abuse of discretion when district court applied Rule 59(e)'s standard).  "An allegation that the

Court, in making an earlier ruling, failed to consider relevant law certainly clears whatever threshold showing Rule 54(b) might place on a party moving for reconsideration." *Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 477 (M.D. La. 2002).

## II.   Certification of Interlocutory Appeal under 28 U.S.C. § 1292(b)

Section 1292(b) allows a district court to certify an order for interlocutory appeal when the order (1) involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation.  28 U.S.C. § 1292(b).

First, a question of law is "controlling" when the "reversal of the district court's opinion would result in dismissal of the action" or "the certified issue has precedential value for a large number of cases."  *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 723 (N.D. Tex. 2006). Questions that "involve the possibility of avoiding trial proceedings, or at least curtailing and simplifying pretrial or trial" are commonly found to be controlling. *See* 16 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Fed. Prac. & Proc. § 3930  (3d ed. 2022).

Second, as to whether there is substantial ground for difference of opinion, courts have found this element met when the applicable law was "unsettled."  *McDaniel v. Credit Sols. of Am., Inc.*, No. 3:08-CV-0928-N, 2012 WL 13102240, at *20 (N.D. Tex. Mar. 21, 2012); *see also In re BP p.l.c. Sec. Litig.*, No. 10-MD-2185, 2015 WL 926199, at *3 (S.D. Tex. Mar. 4, 2015); (noting that courts may certify "novel and difficult" questions).  This includes cases where the issue is a "close call" if "reasonable legal minds may disagree with [the] decision." *Hopkins v. Cornerstone Am.,* No. 4:05-CV-332-Y, 2007 WL 9772306, at *6-7 (N.D. Tex. Aug. 1, 2007).

And third, a "key concern" underlying interlocutory appeals is "institutional efficiency" – that is, to "speed up the litigation."  *Ryan*, 444 F. Supp. 2d at 723 (citations omitted). Thus, courts

have certified questions for appeal because there was "a non-zero chance that the Fifth Circuit [would] reach a different conclusion" and "[a] successful interlocutory appeal by Defendants would very likely terminate [the] litigation." *In re BP p.l.c. Sec. Litig.*, 2015 WL 926199, at *3; *see also Hopkins*, 2007 WL 9772306, at *3 (appeal could materially advance termination of litigation because "[s]hould the appellate court reverse this Court . . . all of Plaintiffs' claims based on [a certain statute] . . . would be dismissed" and "an order affirming this Court's decision would not terminate the litigation, [but] would provide certainty to the parties" regarding the application of law).

## ARGUMENT

**I.    The Court Should Reconsider Its Order and Grant Defendants' Motions to Dismiss**

### A.    The Court Should Reconsider Its Conclusion That Plaintiffs Adequately Alleged That Defendants Had an Established Repayment Obligation

In holding that Plaintiffs "plausibly ple[d] the existence of an obligation" to pay or transmit money to the federal government, this Court reasoned that "a party against whom an erroneous judgment or decree has been carried into effect is entitled, in the event of a reversal, to be restored by his adversary to that which he has lost thereby," Order at 8 (quoting *Arkadelphia Milling Co. v. St. Louis S.W. Ry. Co.*, 249 U.S. 134, 145 (1919)), and "[c]ourts across the country have relied on this longstanding principle to hold that a party may be liable for funds received under a[n] . . . injunction later vacated." *Id.* (collecting cases). None of those courts, however, has held that the vacatur of an injunction *automatically* triggers repayment. To the contrary, they hold that a party damaged by an injunction may recover funds paid under the injunction through payment on an injunction bond or, in the case of payments made to a government agency, through administrative recoupment. Defendants are aware of no authority (and Plaintiffs have cited none) that holds a

6

party that received payments under an injunction must immediately repay those amounts; a court order or a recoupment action is required.

The Court's description of the cases on which it relied makes this point perfectly clear. In *In re Bayou Shores SNF, LLC*, 828 F.3d 1297, 1327-28 (11th Cir. 2016), the court held "after reversing [an] injunction preventing [a] health-care provider's termination[, that] the government *could try* to recover payments made pursuant to [the] injunction." Order at 8 (emphasis added). In *National Kidney Patients Association v. Sullivan*, 958 F.2d 1127, 1127-28 (D.C. Cir. 1992), the court held that a "Medicaid provider *may* be liable" to repay "government funds obtained under [a] vacated injunction." Order at 8-9 (emphasis added). And in *Maryland Department of Human Resources v. U.S. Department of Agriculture*, 976 F.2d 1462, 1467 (4th Cir. 1992), the court held that an "injunction cannot deprive [the] government of [the] *right to seek* statutorily provided remedies to recoup improperly paid funds." Order at 9 (emphasis added). Therefore, to recoup funds paid under an injunction, the government must take affirmative steps, pursuant to statutorily prescribed processes, to recoup the money before there can be any established obligation to repay.[1]

Here, both Texas and Louisiana law provide mechanisms for the States to recoup Medicaid funds that they believe were wrongly paid. *See* 1 Tex. Admin. Code Ann. § 371.1703(g)(5); La. Rev. Stat. § 460.73(C). Neither State initiated recoupment proceedings, or even made a demand for repayment. In fact, Texas voluntarily extended the period during which Affiliate Defendants

---

[1]   As noted above, a party that pays funds under an injunction may also recover on an injunction bond if it was damaged by the injunction. *Nat'l Kidney Patients Ass'n*, 958 F.2d at 1129, 1134. Here, the Fifth Circuit did not order payment on an injunction bond when it vacated the injunction in November 2020. Indeed, there was no injunction bond because the district court found that Texas would not be financially harmed by the injunction because it would have had to reimburse a different healthcare provider for the same services for which it reimbursed Affiliate Defendants under the injunction. *Planned Parenthood of Greater Tex. v. Smith*, 236 F. Supp. 3d 974, 999 (W.D. Tex. 2017), *vacated on other grounds*, 981 F.3d 347 (5th Cir. 2020)). The Fifth Circuit did not disturb this aspect of the district court's decision.

could lawfully participate in Medicaid, without any suggestion that Affiliate Defendants would have to repay the funds Texas was authorizing them to receive.  And PPGC continues to provide Medicaid services in Louisiana to this day.  Nor were the States' decisions not to demand repayment surprising, as the case law provides no support for the idea that repayment can be required where, as here, Texas and Louisiana reimbursed Affiliate Defendants for medical treatments provided to Medicaid patients for which the States would have had to pay another healthcare provider in the absence of the injunction, and there was no dispute over reimbursement rates.  *Cf. Nat'l Kidney Patients Ass'n*, 958 F.2d at 1137 (in context of rate dispute, allowing HHS to recover damages from higher rates paid under injunction).  In any event, absent recoupment proceedings, Defendants were under no obligation to repay the Medicaid funds they received under the injunctions.[2]

Although the Affordable Care Act's "60-Day Rule" may create a repayment obligation even in the absence of a recoupment action, *see* 42 U.S.C. § 1320a-7k(d)(3), the 60-Day Rule does not apply here.  It imposes an affirmative obligation on a Medicaid provider that "received an overpayment" to "report and return the overpayment to [HHS or] the State" and to notify the government about the overpayment.  *Id.* § 1320a-7k(d)(1).  It, in turn, defines "overpayment" as "any funds that a person receives or retains . . . to which the person . . . is not entitled."  *Id.* § 1320a-7k(d)(4)(B).  However, CMS made clear in the preamble to the 60-Day Final Rule that "entitle[ment]" is determined at the time of payment.  *See* 81 Fed. Reg. 7654, 7658 (2016).  In

---

[2]    Neither Relator nor Texas contends that Texas' partial intervention in this case constitutes an administrative recoupment proceeding or triggers any repayment obligation.  Nor could they, as to so hold would improperly allow the State to "manufacture [an FCA violation] . . . after the fact."    *See United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (government cannot "manufacture materiality" through FCA litigation); *see also United States v. Vora*, No. 4:20-CV-66-BJB, 2022 WL 89177, at *5 (W.D. Ky. Jan. 7, 2022) (rejecting government's attempt to "rely on only an after-the-fact rejection of the [claims] it seeks to litigate").

response to CMS' proposed 60-Day Rule, "[s]everal commenters requested that CMS clarify in the final rule that potential overpayments only exist if a provider or supplier retains funds to which it was not entitled *at the time* that it received the funds." *Id.* (emphasis added). In response, CMS "agree[d] that *payments that were proper at the time the payment was made do not become overpayments at a later time*." *Id.* (emphasis added).

Here, because of the injunctions, Affiliate Defendants were "entitled" to the Medicaid funds they received – for the provision of medical care to Texas and Louisiana Medicaid patients – at the time they received them. These payments, legitimate when made, did "not become overpayments at a later time" when the Fifth Circuit vacated the injunction. *See id.* By CMS rule, payments made lawfully to Affiliate Defendants during the pendency of the injunctions were not retroactively rendered "overpayments" because of the ACA's 60-Day Rule.

Accordingly, any repayment obligation was contingent on the States' successful pursuit of recoupment through state administrative processes. Because neither Texas nor Louisiana has pursued recoupment, the Fifth Circuit's decision in *Simoneaux* controls the outcome here. The court of appeals held that "[w]here . . . a regulatory penalty has not been assessed and the government has initiated no proceeding to assess it, there is no established duty to pay" that could subject a defendant to "reverse false claims" liability. 843 F.3d at 1039. The court recognized that "the fact that further governmental action is required to collect a fine or penalty does not, standing alone, mean that the duty is not established," but where (as here) the government has "discretion to decide to assess no penalty," there can be no obligation absent government enforcement action. *Id.* at 1039-41. As already discussed, government payors have discretion to decide whether to seek recoupment of funds paid under an injunction. *See Bayou Shores*, 828 F.3d at 1327-28; *Nat'l Kidney Patients Ass'n*, 958 F.2d at 1127-28; *Md. Dep't of Human Res.*, 976 F.2d

at 1467; *see also* 1 Tex. Admin. Code Ann. § 371.1703(g)(5) (person "*may* be liable to repay . . . claims" submitted after effective date of termination (emphasis added)).

Because Affiliate Defendants' alleged repayment obligation was contingent on events that did not occur, Relator and Texas have failed to plausibly plead the essential "obligation" element of their reverse FCA/TMFPA claims. *See Simoneaux*, 843 F.3d at 1039. And the Fifth Circuit's binding precedent is also consistent with the holdings of several other courts. *See U.S. ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497, 506-07 (3d Cir. 2017) (no "obligation" to pay dividends to Small Business Administration where duty was contingent on events that had not materialized); *U.S. ex rel. Zayas v. Astrazeneca Biopharmaceuticals, Inc.*, No. 14-cv-1718, 2017 WL 1378128, at *3 (E.D.N.Y. Apr. 17, 2017) (stipulated penalties under corporate integrity agreement were not an "obligation" to pay government because they were "not automatically imposed; rather the government must choose to impose [them] and defendants may appeal" to an administrative law judge); *U.S. ex rel. Landis v. Tailwind Sports Corp.*, 160 F. Supp. 3d 253 (D.D.C. 2016) (alleged breach of contract did not create "obligation" because government would have been required to sue for repayment). Defendants respectfully request that the Court reconsider its Order and grant Defendants' motion to dismiss Plaintiffs' reverse FCA/TMFPA claims.

**B.     The Court Should Reconsider Its Conclusion That Plaintiffs Adequately Alleged Scienter for Their Reverse FCA/TMFPA Claims**

Although Defendants raised the issue, Dkt. 65 at 12-14, Dkt. 66 at 6-7, the Court did not consider whether the government's knowledge of, and failure to take any action to recover, the alleged overpayments defeats scienter under the reverse false claim provisions of the FCA and TMFPA. Defendants respectfully request that the Court consider this argument, as set out below.

The reverse false claim provisions of the FCA and TMFPA include three distinct prohibitions: (1) "knowingly" making a false statement material to an obligation to pay money to

10

the government; (2) "knowingly" concealing an obligation to pay money to the government; and (3) "knowingly *and improperly*" avoiding or decreasing an obligation to pay money to the government.   31 U.S.C. § 3729(a)(1)(G) (emphasis added); *accord* Tex. Hum. Res. Code § 36.002(12).   Plaintiffs' reverse FCA/TMFPA claims are based exclusively on Affiliate Defendants' alleged avoidance of an obligation under subsection (3).   *See* Relator Compl. ¶ 120; Relator Opp. 12.   Bedrock principles of statutory construction require the Court to give effect to every word in a statute, *Corley v. United States*, 556 U.S. 303, 314 (2009), and clearly here Congress intended to impose an additional scienter requirement for claims under that subsection. Plaintiffs, however, have failed to adequately plead that Defendants' "knowingly and improperly" avoided an obligation to repay funds received under the Texas and Louisiana injunctions.

Concerned about imposing FCA liability for acts of omission, Congress created a heightened scienter standard for reverse FCA claims based on avoiding an obligation to pay money to the government.   To state a claim under that subsection, a relator must plead not only that the defendant acted knowingly, but also that it acted "improperly."   Although the statute does not define this term, the legislative history reflects that Congress intended to limit liability to circumstances in which a person acted with "improper motives" or "inherently improper means." 155 Cong. Rec. S at 4540 (Statement of Sen. Kyl).   As Senator Kyl explained, "improper means" refers to conduct that is "malum in se—that is, . . . inherently wrongful and constitute[s] an independent tort."   *Id.*; *see U.S. ex rel. Martino-Fleming v. S. Bay Mental Health Ctr.*, No. 15-cv-13065, 2018 WL 4539684, at *6 (D. Mass. Sept. 21, 2018) (adopting same formulation that

11

"'improperly' denotes 'either improper motive or inherently improper means'").[3]   Plaintiffs' complaints do not allege anything of the sort.

Further, Congress explained that liability would attach under subsection (3) of the reverse false claims provision only when "an overpayment is knowingly and improperly retained, *without notice to the Government about the overpayment*."   S. Rep. No. 111-10, at 441 (emphasis added). That is consistent with the settled principle that the FCA penalizes *fraud*, not breach of contract. *See Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 194 (2016) (Thomas, J.) (FCA is not "a vehicle for punishing garden variety breaches of contract or regulatory violations" (citation omitted)).   Knowing retention of an overpayment may be a breach of contract, but it cannot be fraud if the government knows the monies have not been repaid.   *See Petras*, 857 F.3d at 500 (reverse FCA liability "arises from fraudulent efforts to reduce or avoid an obligation to pay the Government"); *U.S. ex rel. Olson v. Fairview Health Servs. of Minn.*, 831 F.3d 1063, 1074 (8th Cir. 2016) (reverse FCA provision "encompasses fraudulent conduct" arising from "fail[ure] to disclose"; "[i]f there is no allegation of fraudulent conduct . . . , then there can be no reverse liability"); *U.S. ex rel. Customs Fraud Investigation, LLC v. Victaulic Co.*, 839 F.3d 242, 255-56 (3d Cir. 2016) (reverse FCA liability is intended to "change[] [the] value proposition" so a defendant with superior knowledge that would otherwise "decline to mention" an overpayment will disclose it).   "Without fraud, punitive [treble] damages . . . [are] an unreasonable levy against individuals guilty only of 'knowingly' receiving an overpayment from the government fisc." *Olson*, 831 F.3d at 1074; *see Vt. Agency of Nat. Resources v. U.S. ex rel. Stevens*, 529 U.S. 765,

---

[3]      There is no reason to interpret the TMFPA's identical language any differently.   *See In re Xerox*, 555 S.W.3d 518, 525 (Tex. 2018); *see also* Relator Compl. ¶ 55 (recognizing that TMFPA reverse false claim provision "mirrors 31 U.S.C. § 3729(a)(1)(G)").

784 (2000) (Scalia, J.) (explaining that FCA's regime of treble damages and per-claim penalties is "essentially punitive").

Both Louisiana and Texas knowingly made payments to Affiliate Defendants under the injunctions and were obviously aware of the Fifth Circuit's November 2020 decision that Plaintiffs allege created the repayment obligation. Plaintiffs do not allege that Affiliate Defendants deceived the States or took any other "improper" action to avoid their purported repayment obligation. Plaintiffs simply allege that Affiliate Defendants retained the amounts they received under the injunctions. That is insufficient to plead fraud under the reverse false claim provisions of the FCA and TMFPA. The Court should reconsider its decision as to the scienter element of Plaintiffs' reverse FCA/TMFPA claims.

> **C.      The Court Should Reconsider Its Ruling on the Public Disclosure Bar**

The Court should also reconsider its ruling regarding the public disclosure bar because it rests on several legal and factual errors.

> **1.      The Public Disclosure Bar Applies**

As an initial matter, the Court's holding that the bar does not apply because Relator's allegations are based on his own prior investigation misapprehends the purpose of the public disclosure bar. A relator does not proceed in his own name. *See U.S. ex rel. Eisenstein v. City of New York*, 556 U.S. 928 (2009). Instead, the FCA's *qui tam* provisions "permit[], in certain circumstances, suits by private parties on behalf of the United States," *Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 941 (1997), and provide substantial financial incentives for doing so. *See* 31 U.S.C. § 3730(d)(2) (permitting relator to recover up to 30 percent of proceeds recovered through *qui tam* action). Because of the potential for abuse, Congress placed restrictions on the circumstances under which private citizens are permitted to proceed in the government's

name.  *See id.* § 3730(e).  One important check is the public disclosure bar, which "attempts to balance 'the promotion of private citizen involvement in exposing fraud against the government'" and the prevention of lawsuits that "add nothing to the exposure of fraud."  *Sonnier*, 84 F. Supp. 3d at 586 (quoting *U.S. ex rel. Reagan v. E. Tx. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 167, 174 (5th Cir. 2004)) (brackets omitted).  It is based upon the notion that once "the relevant information has already entered the public domain," *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 285 (2010), the government "is already in a position to vindicate society's interests, and a *qui tam* action would serve no purpose," *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009) (Sykes, J.).

    For this reason, "[t]here is no exception for a relator's own prior public disclosures."  *Sonnier*, 84 F. Supp. 3d at 589.  Relators can, and often do, bar their own *qui tam* suits through public disclosures.  *Id.*; *see, e.g.*, *Reagan*, 384 F.3d at 174 (relator's earlier state-court lawsuit barred later federal *qui tam* action); *U.S. ex rel. Poteet v. Bahler Med., Inc.*, 619 F.3d 104, 114 (1st Cir. 2010) (relator's earlier *qui tam* complaint barred subsequent *qui tam* action); *In re Natural Gas Royalties*, 562 F.3d 1032, 1040 (10th Cir. 2009) (same); *U.S. ex rel. Mosler v. City of Los Angeles*, 414 F. App'x 10, 11 (9th Cir. 2010) (affirming dismissal under public disclosure bar and finding relator's written testimony to the Army Corps of Engineers and an article quoting relator constituted public disclosures).  "This result is consistent with the purpose of the public disclosure bar," *Sonnier*, 84 F. Supp. 3d at 589, because once information is in the public domain, "the government [is] capable of pursuing [FCA violations] itself," *U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 651 (D.C. Cir. 1994).  Accordingly, to the extent the Court held that the bar does not apply because Relator's allegations were "based on" his investigation, the

14

Court should respectfully reconsider because, as the Court recognized, Relator publicly disclosed the results of his investigation years before filing this action.[4]

To determine whether a relator's allegations are "substantially the same" as "allegations or transactions . . . [that] were publicly disclosed," 31 U.S.C. § 3730(e)(4)(A), the "guiding query is whether one could have produced the substance of the complaint merely by synthesizing the public disclosures." *Little v. Shell Expl. & Prod. Co.*, 690 F.3d 282, 293 (5th Cir. 2012) (quotation marks and citation omitted). The Court held this standard was not met here because (1) for Count I, "Defendants' false certifications were not publicly disclosed until Relator filed this action"; and (2) for Count II, "Relator never publicly disclosed any information related to Defendants' alleged failure to report or repay Medicaid funds." Order at 26-27. Defendants address these holdings in turn.

First, the public disclosure bar "prohibits *qui tam* actions 'when either the allegation of fraud *or the critical elements of the fraudulent transaction* themselves were in the public domain." *Solomon*, 878 F.3d at 145 (quoting *Springfield Terminal*, 14 F.3d at 654) (emphasis added). "When the elements of a fraudulent transaction are present in public disclosures, those public disclosures need not allege fraud in explicit language." *Id.* The Fifth Circuit has "adopted a test

_____

[4] The Court uses the term "based on" throughout its Order. The Fifth Circuit has also recently used that term. *See U.S. ex rel. Schweizer v. Canon, Inc.*, 9 F.4th 269, 274 (5th Cir. 2021). To be clear, however, Congress amended the public disclosure bar in 2010 to replace "based upon the public disclosure of allegations or transactions" with "substantially the same allegations or transactions." *See* Pub. L. No. 111-148, 124 Stat. 119, 901 (Mar. 23, 2010). Some circuits interpreted the "based upon" language to require that the relator "'actually derived' his knowledge of the fraud from the public disclosure." *Schweizer*, 9 F.4th at 274 n.8 (citing *U.S. ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 917 (4th Cir. 2013)). In those circuits, a relator may have been able to avoid the bar by showing that his allegations were "based upon" his own knowledge, even if the same information was in the public domain. The Fifth Circuit never adopted that formulation, *see Wercinski v. IBM Corp.*, 982 F. Supp. 449, 458 (S.D. Tex. 1997), and in any event, all circuits agree that under the *current* version of the bar, a relator need not actually rely on the public disclosures to trigger the bar. *See Schweizer*, 9 F.4th at 274 n.8, 275.

15

embraced by other circuits for determining whether public disclosures contain sufficient indicia of an FCA violation to bar a subsequently filed FCA complaint." *Id.* "Under this approach, 'the combination of X and Y must be revealed, from which the readers or listeners may infer Z. . . . Z is an inference of fraud under the FCA, while X and Y are two required elements for the inference." *Id.* (quoting *U.S. ex rel. Colquitt v. Abbott Labs.*, 858 F.3d 365, 374 (5th Cir. 2017)).  Here, X is Affiliate Defendants' submission of claims for payment under Medicaid and Y is Affiliate Defendants' alleged violation of state and federal laws that rendered them unqualified to provide or bill for Medicaid services in Texas and Louisiana.  As the Court correctly recognized, both X and Y were publicly disclosed years before Relator filed this action.  From these essential elements, an observer could infer Z – that Affiliate Defendants' claims were impliedly false because Affiliate Defendants were not entitled to the payments sought since they were not qualified Medicaid providers.  *See* Dkt. 61 at 16-17.  Accordingly, the public disclosures "sufficiently indicate[] misconduct and lead[] at least to an inference of fraud."  *Solomon*, 878 F.3d at 146.  The Court should therefore reconsider its holding that the absence of "Z" (the allegedly false certifications) in the public domain allowed Relator to avoid the public disclosure bar as to Count I.

Second, Defendants' retention of Medicaid funds after the Fifth Circuit's November 2020 *en banc* decision, in fact, was publicly disclosed.  On February 3, 2021, before Relator filed this action, a Texas state court issued a TRO enjoining the State from terminating Affiliate Defendants from Medicaid.  Order, *In re Planned Parenthood of Greater Texas*, Cause No. D-1-GN-21-000528 (Travis Cty. Dist. Ct.).  That order noted that "[t]he status quo between [Texas] and [Affiliate Defendants] is such that [Affiliate Defendants] continue to participate in the Medicaid program" and to receive "reimbursements for services . . . provided."  *Id.* at 2, 3.  This order, and

16

related news media coverage,[5] thus publicly disclosed that Affiliate Defendants remained in the Medicaid program and would continue to receive payments under that program, and therefore, *ipso facto* would retain those payments.

For these reasons, Defendants respectfully request that the Court reconsider its Order and hold that Relator's allegations for both Counts I and II are substantially similar to public disclosures.

### 2.    Relator Has Not Adequately Pled That He is an Original Source

As the Court recognized, a relator can qualify as an "original source" in two ways – by voluntarily disclosing his allegations to the government before any public disclosures or by demonstrating that he has independent knowledge that "materially adds" to the prior public disclosures.  Order at 27.  The Court held that Relator qualifies as an original source under both prongs.  In fact, he qualifies under neither prong.

First, a relator "must allege specific facts" to meet the original source exception's elements. *U.S. ex rel. Reagan v. E. Tx. Med. Ctr. Reg'l Healthcare Sys.*, 274 F. Supp. 2d 824, 853-54 (S.D. Tex. 2003) (quoting *U.S. ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1162 (10th Cir. 1999)).  As the Fifth Circuit held in *King*, to invoke the voluntary disclosure prong of the original source exception, the relator must show that his disclosures "connected [his] knowledge" of the defendant's allegedly illegal conduct to "the filing of a claim for reimbursement from the government."  871 F.3d at 326-27.  In other words, a relator's disclosure must actually "suggest an *FCA violation*."  *Id.* at 327 (emphasis in original).  This is a high bar.  In *King*, the

---

5    See, e.g., Chuck Lindell, Judge Blocks Texas Plan to Remove Planned Parenthood from Medicaid, Austin American-Statesman (Feb. 3, 2021), https://tinyurl.com/2p96evbm; Shannon Najmabadi, Texas Temporarily Blocked From Kicking Planned Parenthood Out of Medicaid, Texas Tribune (Feb. 3, 2021), https://tinyurl.com/2p8m3u9m.

relator disclosed to the FDA allegations that the defendants engaged in off-label marketing and paid kickbacks, which suggested that defendants violated the Food, Drug, and Cosmetic Act and the Anti-Kickback Statute ("AKS").  *Id.* at 327.  The Fifth Circuit held that this was not enough to "connect direct and independent knowledge of information about [the defendant's] conduct to false claims submitted to the government."  *Id.*  The court reached this conclusion even though the AKS explicitly provides that a violation of that statute is automatically also a violation of the FCA. 42 U.S.C. § 1320a-7b(g).

Here, Relator does not satisfy the *King* standard as to Count I because he does not plead any details about the information he allegedly disclosed to the federal government, let alone that his disclosure connected Defendants' allegedly unlawful practices to a false claim.  Even assuming *arguendo* that Relator disclosed the videos and other fruits of his "investigation" to the government, *King* makes clear that disclosing Defendants' alleged violation of laws related to fetal tissue research (which are far more attenuated from claims for Medicaid reimbursement than AKS violations) is not enough.  He was required to have disclosed to the federal government the fraud claim he makes here, that the alleged violation of laws related to tissue research *resulted* in false claims to Medicaid.  As to Count II, Relator does not even allege that he disclosed to the government the allegations on which that claim is based, and thus he cannot qualify as an original source as to that claim under the voluntary disclosure prong of the original source exception.

Second, the Court held that Relator also qualified as an original source under the "material addition" prong because "*Relator's* journalistic investigation *triggered* [government] inquiries" and thus "put the federal and state governments 'on the trail' of Defendants allegedly fraudulent conduct."  Order at 29 (emphasis in original).  But the question for purposes of the public disclosure bar is not whether Relator at some point materially contributed to the government's

18

knowledge regarding matters addressed in his complaint.  The question is whether *his FCA complaint* itself materially adds to the information already in the public domain.  He must show that *his complaint* "contributes information—*distinct from what was publicly disclosed*—that adds in a significant way to the essential factual background."  *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (emphasis added); *see, e.g.*, *U.S. ex rel. Memhardt v. Citigroup, Inc.*, No. 4:18-cv-1076, 2020 WL 6342666, at *4 (E.D. Mo. Oct. 29, 2020) (dismissing *qui tam* action "[b]ecause Relator has not shown that *her Complaint* 'materially adds to' the publicly disclosed information" (emphasis added)).  Relator cannot meet this test.  His complaint does not identify a single fact that was not publicly disclosed (either by him or in congressional investigations, state termination proceedings, or the news media) before he filed suit, let alone one that materially adds to the public disclosures.

## II. In the Alternative, the Court Should Certify This Matter for an Interlocutory Appeal

In the alternative, if the Court declines to reconsider, it should certify the following questions for interlocutory appeal under 28 U.S.C. § 1292(b):

1. Whether a Medicaid provider that receives payments under a federal court injunction has an obligation to repay those funds once the injunction is vacated, such that failure to do so can trigger liability under the reverse false claim provisions of the False Claims Act and the Texas Medicaid Fraud and Prevention Act.

2. Whether a plaintiff can plausibly plead that an overpayment was "knowingly and improperly" retained under the reverse false claim provisions of the False Claims Act and the Texas Medicaid Fraud and Prevention Act where the government is on notice of the alleged overpayment and takes no action.

3. Whether a plaintiff who publicly discloses his own allegations prior to filing suit can bar his own claim under the public disclosure bar where his claims are based on a prior investigation he conducted and voluntarily made public.

4. Whether a plaintiff may qualify as an original source without pleading specific facts as to his voluntary disclosure to the federal government before bringing suit and

where his complaint, as opposed to his public disclosure of allegations, does not "materially add" to information in the public domain.

Each of these questions satisfies the requirements for certification.

First, each question is a "controlling question of law" that would result in dismissal of the action, in whole or in part. *See Ryan*, 444 F. Supp. 2d at 723. Resolution of Questions 1 or 2 in Defendants' favor would result in the dismissal of Count II of Relator's Complaint and dismissal of Texas' Complaint in its entirety. Resolution of Questions 3 and 4 in Defendants' favor would result in dismissal of Relator's Complaint in its entirety.

Second, as discussed above, there are, at a minimum, substantial grounds for disagreement as to each of these questions. In particular, as to Question 1, Defendants are aware of no court ever to hold that the vacatur of an injunction *automatically* triggers a repayment obligation or, despite CMS' clear statements to the contrary, 81 Fed. Reg. at 7658, that it retroactively converts funds lawfully received under an injunction into "overpayments" for purposes of the ACA's 60-Day Rule. *See McDaniel*, 2012 WL 13102240, at *20 (absence of authority may establish substantial ground for difference of opinion). And the Fifth Circuit has made clear that contingent obligations do not trigger reverse FCA liability. *See Simoneaux*, 843 F.3d at 1039. Similarly, as to Question 2, this Court would be the first to hold that a defendant "knowingly and improperly" avoids a repayment obligation simply by retaining funds received under an injunction that the government knows have not been repaid. Even if the Court "is loath to determine that there is a 'substantial likelihood' that it will be reversed on appeal," *Van Straaten v. Shell Oil Prods. Co.*, 813 F. Supp. 2d 1005, 1021 (N.D. Ill. 2011), certainly, reasonable jurists could disagree with its novel holdings on these issues. As to the public disclosure bar (Questions 3 and 4), this Court's decision conflicts with Fifth Circuit precedent and other in-Circuit district court decisions, as discussed *supra* at 14. The presence of such "conflicting authority" demonstrates that reasonable

20

jurists can disagree about the public disclosure bar issues. *See Van Straaten*, 813 F. Supp. 2d at 1021.

Third, an immediate appeal would materially advance the ultimate termination of the litigation because it would result in the dismissal of some or all claims. Reversal on any of these questions would mean that at least one plaintiff's claims "would be dismissed" (and, alternatively, affirmance "would provide certainty to the parties" regarding the application of unsettled law), so these issues are appropriate for certification. *See Hopkins*, 2007 WL 9772306, at *3; *see also, e.g., Scott Rose v. Inst.*, No. 09-CV-05966-PJH, 2016 WL 6393513, at *3 (N.D. Cal. Oct. 28, 2016) (certifying for interlocutory appeal a disputed materiality issue in a FCA case because "if decided in [the defendant's] favor, [it] could resolve the case").

## CONCLUSION

For the foregoing reasons, this Court should reconsider its Order denying Defendants' motions to dismiss Relator's Complaint and the State of Texas's Complaint in Intervention. In the alternative, the Court should certify for interlocutory appeal the issues listed on pages 19-20, *supra*.

Dated: May 24, 2022                    Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP


By    */s/ Craig D. Margolis*
      Craig D. Margolis
      Craig.Margolis@arnoldporter.com
      Murad Hussain
      Murad.Hussain@arnoldporter.com
      Tirzah Lollar
      Tirzah.Lollar@arnoldporter.com
      601 Massachusetts Ave, NW
      Washington, DC 20001-3743
      Telephone: +1 202.942.6127
      Fax: +1 202.942.5999

21

Christopher M. Odell
Texas State Bar No. 24037205
Christopher.Odell@arnoldporter.com
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: +1 713.576.2400
Fax: +1 713.576.2499

Ryan Patrick Brown
Texas State Bar No. 24073967
brown@blackburnbrownlaw.com
1222 S. Fillmore
Amarillo, TX 79101
Tel: (806) 371-8333
Fax: (806) 350-7716

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 24, 2022, the foregoing document was electronically filed with the Clerk of Court using CM/ECF.


*/s/ Craig D. Margolis*
Craig D. Margolis