**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ALEX DOE, Relator, | § § § | |
| | § | |
| THE STATES OF TEXAS, *ex rel.* ALEX DOE, Relator, | § § § | |
| | § | |
| THE STATE OF LOUISIANA, *ex rel.* ALEX DOE, Relator, | § § § | |
| | § | |
| *Plaintiffs,* | § | Civil Action No. 2-21-CV-022-Z |
| | § | |
| v. | § | |
| | § | |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., PLANNED PARENTHOOD GULF COAST, INC., PLANNED PARENTHOOD OF GREATER TEXAS, INC., PLANNED PARENTHOOD SOUTH TEXAS, INC., PLANNED PARENTHOOD CAMERON COUNTY, INC., PLANNED PARENTHOOD SAN ANTONIO, INC., | § § § § § § § § § § § | |
| | § | |
| *Defendants.* | § § | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR**
**RECONSIDERATION,**
**OR, IN THE ALTERNATIVE, CERTIFICATION FOR INTERLOCUTORY**
**APPEAL**
**PURSUANT TO 28 U.S.C. § 1292(b)**

# TABLE OF CONTENTS

TABLE OF CONTENTS ..........................................................................................ii

TABLE OF AUTHORITIES .................................................................................iii

INTRODUCTION................................................................................................ 1

ARGUMENTS & AUTHORITIES ...................................................................... 1

    I.   Defendants' Motion for Reconsideration Should Be Denied............................ 1

       A.   Standard of Review ................................................................................. 1

       B.   Defendants' motion to reconsider whether they had a repayment obligation should be denied.......................................................................................... 4

          1.   Defendants repeat arguments already considered—and rejected—by the Court................................................................................................... 4

          2.   Defendants' new arguments do not affect the reasons the Court properly denied Defendants' Motions to Dismiss. ........................................... 7

       C.   Defendants' motion to reconsider whether Plaintiffs adequately pled scienter should be denied. ....................................................................... 10

          1.   Defendants repeat arguments already considered—and rejected—by the Court................................................................................................. 10

          2.   Defendants' arguments do not affect the reasons the Court .......properly denied Defendants' Motions to Dismiss. ......................................... 11

       D.   The Court should deny Defendants' attempt to relitigate the denial of Defendants' motions to dismiss under the public disclosure bar............. 12

    II.   The Court Should Deny Defendants' Motion to Certify an Interlocutory Appeal. .................................................................................................... 16

       A.   Immediate appeal would frustrate, not "materially advance" the ultimate termination of this litigation....................................................................... 18

       B.   Defendants' "questions" also fail the other two prongs of the Section 1292(b) analysis......................................................................................... 19

          1.   Defendants' Question 1 ................................................................... 20

          2.   Defendants' Question 2 ................................................................... 21

          3.   Defendants' Questions 3 & 4 .......................................................... 22

CONCLUSION.................................................................................................. 23

CERTIFICATE OF SERVICE ........................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Adhikari v. Daoud & Partners*, No. 09-cv-1237, 2010 WL 744237 (S.D. Tex. Mar. 1, 2010) ........................................................................................................................ 17

*Austin v. Kroger Texas, L.P.*, 864 F.3d 326 (5th Cir. 2017) ........................................... 2, 3

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................... 5

*Bowling v. Dahlheimer*, Civ. A. No. 4:18-cv-00610, 2020 WL 5134771 (E.D. Tex. Aug. 6, 2020) ......................................................................................................................... 7

*Coates v. Brazoria Cnty., Tex.*, 919 F. Supp. 2d 863 (S.D. Tex. 2013) ....................... 18, 19

*Cobell v. Jewell*, 802 F.3d 12 (D.C. Cir. 2015) ............................................................... 2

*Complaint of Ingram Towing Co.*, 59 F.3d 513 (5th Cir. 1995)...................................... 17

*Contango Operators, Inc. v. United States*, 965 F. Supp. 2d 791 (S.D. Tex. 2013) ............. 2

*Contango Operators, Inc. v. Weeks Marine, Inc.*, 613 F. App'x 281 (5th Cir. 2015)............. 2

*Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1 (1980) ............................................ 3

*EEOC v. Hi-Line Elec. Co.*, 805 F. Supp. 2d 298 (N.D. Tex. 2011) ................................. 2

*Flores v. Procunier*, 745 F.2d 338 (5th Cir. 1984) ......................................................... 2

*Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 289 (5th Cir. 1989)............... 7, 12

*Guy v. Crown Equip. Corp.*, 394 F.3d 320 (5th Cir. 2004) ............................................ 10

*Halprin v. Fed. Deposit Ins. Corp.*, Civ. A. No. 5:13-cv-1042, 2017 WL 9808438 (W.D. Tex. Oct. 17, 2017)..................................................................................................... 2, 3

*In re Planned Parenthood of Greater Texas*, Cause No. D-1-GN-21-000528 (Travis Cty. Dist. Ct.) ......................................................................................................................... 14

*In re Xerox Corp.*, 555 S.W.3d 518 (Tex. 2018) ............................................................ 22

*LaFarge v. Kyker*, 2009 WL 4110887 (N.D. Miss. Nov. 23, 2009) ................................. 18

*Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 311 (5th Cir. 2007).......................... 8

*Linton v. Shell Oil Co.*, 563 F.3d 556 (5th Cir. 2009) ...................................................... 16

*Mansfield v. Williamson Cnty.*, Civ. A. No. A-18-CV-49-ML, 2020 WL 13146202 (W.D. Tex. March 18, 2020) ................................................................................................ 8

*Maryland Dep't of Human Res. v. United States Dep't of Ag.*, 976 F.2d 1462 (4th Cir. 1992) ........................................................................................................................................ 5

*Nationalist Movement v. Town of Jena*, 321 F. App'x 359 (5th Cir. 2009) ......................... 7

*Nazari v. State*, 561 S.W.3d 495 (Tex. 2018) .................................................................... 21

*Planned Parenthood of Greater Texas Surgical Health Servs. v. City of Lubbock, Tex.*, 542 F. Supp. 3d 465 (N.D. Tex. 2021) ................................................................................... 4

*Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718 (N.D. Tex. 2006) ............................... passim

*Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563 (5th Cir. 2003) ..................................... 7

*Steinhardt v. Potter*, 326 F. Supp. 2d 449 (S.D.N.Y. 2004) ............................................... 18

*Templet v. HydroChem Inc.*, 367 F.3d 473 (5th Cir. 2004) ......................................... 10, 13

*Thibodeaux v. Vamos Oil & Gas Co.*, 487 F.3d 288 (5th Cir. 2007) ............................. 17, 18

*Turk v. Pershing LLC*, Civ. A. No. 3:09-cv-2199-N, 2019 WL 13074701 (N.D. Tex. Aug. 1, 2019) ......................................................................................................................... 2, 3

*U.S. ex rel. Solomon v. Lockheed Martin* Corp., 878 F.3d 139 (5th Cir. 2017) ............. 13, 14

*United States ex rel. Forney v. Medtronic, Inc.*, 327 F.Supp.3d 831 (E.D. Pa. 2018) .......... 22

*United States v. 89.9270303 Bitcoins*, 2021 WL 5203337 (W.D. Tex. Nov. 8, 2021) ......... 3

*United States v. Garner*, 749 F. 281 (5th Cir. 1978) ......................................................... 17

*Waste Mgmt. of Louisiana, L.L.C. v. Jefferson Parish*, 594 F. App'x 820 (5th Cir. 2014) . 17

**Statutes**

28 U.S.C. § 1292(b) ...................................................................................................... passim

Tex. Hum. Res. Code § 36.001 *et seq.* .............................................................................. 5

Tex. Hum. Res. Code § 36.052(c) ................................................................................... 22

**Other Authorities**

81 Fed. Reg. 7654, 7658 ............................................................................. 8, 9

Tex. Hum. Res. Code § 36.002(12) ................................................................ 10

**Rules**

Fed. R. Civ. P. 54(b) ............................................................................. passim

Fed. R. Civ. P. 59(e) ............................................................................. 2, 3, 10

## INTRODUCTION

Defendants' Motion for Reconsideration or, in the Alternative, Entry of 28 U.S.C. § 1292(b) Certification Order (Dkt. #83) is nothing more than Defendants' attempt to get a second bite at the apple, raising arguments and cases the Court previously considered—and rejected—in its well-reasoned opinion denying Defendants' Motion to Dismiss. The Federal Rules of Civil Procedure do not contemplate giving a party the opportunity to burden the court with unnecessary motions that simply rehash old arguments. Defendants' Motion contains no new facts, evidence, or argument demonstrating that the Court's ruling denying Defendants' Motions to Dismiss was erroneous. Even if there were anything new in Defendants' arguments about the same cases already discussed at length by the Parties and the Court, Rule 54(b) is not a vehicle for a second chance at raising arguments that should have been asserted in the regular course of briefing.

Because the Court correctly decided to deny Defendants' Motions to Dismiss, Defendants necessarily fail to establish grounds for either reconsideration or certification. Accordingly, Plaintiffs hereby file this Response in Opposition and would respectfully show as follows.

## ARGUMENTS & AUTHORITIES

### I.   DEFENDANTS' MOTION FOR RECONSIDERATION SHOULD BE DENIED.

#### A.   Standard of Review

Defendants move for reconsideration of the Court's Order denying their Motions to Dismiss (Dkt. #71), citing Federal Rule of Civil Procedure 54(b). The Federal Rules of Civil Procedure do not explicitly recognize any motion for reconsideration in the context

of a ruling on a motion to dismiss. *EEOC v. Hi-Line Elec. Co.*, 805 F. Supp. 2d 298, 303 (N.D. Tex. 2011) (citing *Flores v. Procunier*, 745 F.2d 338, 339 (5th Cir. 1984)). Nevertheless, Rule 54(b) provides, in pertinent part:

> [A]ny order or other decisions, however designated, that adjudicates fewer than all the claims or rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Although motions to reconsider under Rule 54(b) have "less stringent" requirements than a motion to alter or amend a judgment under Rule 59(e), that "does not mean that [Rule 54(b)] motions should automatically be granted." *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017); *Halprin v. Fed. Deposit Ins. Corp.*, Civ. A. No. 5:13-cv-1042, 2017 WL 9808438, at *2 (W.D. Tex. Oct. 17, 2017). "Rather, a district court's broad discretion under rule 54(b) must be exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays." *Turk v. Pershing LLC*, Civ. A. No. 3:09-cv-2199-N, 2019 WL 13074701, at *1 (N.D. Tex. Aug. 1, 2019).

While reconsideration of an interlocutory decision is available "under the standard 'as justice requires,'" courts consider the same factors as they would in evaluating a motion to reconsider under Rules 59 and 60. *Contango Operators, Inc. v. United States*, 965 F. Supp. 2d 791, 800 (S.D. Tex. 2013), aff'd sub nom. *Contango Operators, Inc. v. Weeks Marine, Inc.*, 613 F. App'x 281 (5th Cir. 2015); *Turk*, 2019 WL 13074701, at *1; *see also Austin*, 864 F.3d at 337 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25–26 (D.C. Cir. 2015)).

For example, the court should consider whether "any subsequent evolution in the case" requires it to reconsider a previous order. *Halprin*, 2017 WL 9808438, at *2. In *Austin*, the Fifth Circuit held that the district court erred when it denied the plaintiff's motion for reconsideration in part due to a newly filed expert report. 864 F.3d at 334–37. The Court held that the district court had discretion to reconsider a motion for surreply when the plaintiff offered a newly filed expert report *and* equitable arguments. *Id.* at 337.

The court need not grant a motion for reconsideration when there is no change in the law, no newly discovered evidence, and "no need to correct any manifest error of law or fact." *United States v. 89.9270303 Bitcoins*, 2021 WL 5203337, at *1–2 (W.D. Tex. Nov. 8, 2021). And courts may decline to exercise their discretion to reconsider when the movant raises an argument it failed to include in its original briefing. *Turk*, 2019 WL 13074701, at *2.

"[L]ike a motion under Rule 59(e), a motion to reconsider may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised before the entry of the judgment or order." *Id.* (quoting 11 Charles A. Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure § 2810.1 at 127–28 (2d ed. 1995)); *see also Bitcoins*, 2021 WL 5203337, at *2. "Plainly, sound judicial administration does not require that Rule 54(b) requests be granted routinely. That is implicit in commending them to the sound discretion of a district court." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10–11 (1980).

Defendants ask this Court to reconsider three issues: (1) whether Plaintiffs adequately pled that Defendants had a repayment obligation, (2) whether Plaintiffs adequately alleged scienter, and (3) whether the public disclosure bar applies. Like Planned Parenthood of Greater Texas's Motion for Reconsideration filed last year in the Northern District, here, Defendants' motion "relies almost exclusively on arguments previously brief, argued, and rejected." Memorandum Opinion and Order Denying Plaintiffs' Motions for Reconsideration and for Leave to Amend at 4, *Planned Parenthood of Greater Texas Surgical Health Servs. v. City of Lubbock, Tex.*, 542 F. Supp. 3d 465 (N.D. Tex. 2021) (No. 5-21-cv-114) (Hendrix, J.). For the reasons detailed below, the Court should deny Defendants' Motion.

## B.   Defendants' motion to reconsider whether they had a repayment obligation should be denied.

### 1.   Defendants repeat arguments already considered—and rejected—by the Court.

Defendants ask this Court to reconsider its determination that Plaintiffs pled facts sufficient to allow the Court to draw the reasonable inference that Defendants had a repayment obligation. Dkt. #83 at 6. In support, Defendants regurgitate the same arguments they made in their Motions to Dismiss and corresponding Replies. *Compare, e.g.*, Dkt. #83 at 6–10, *with* Dkt. #65 at 9.

Defendants contend that while they "*may*" be liable for an overpayment," and the government "*could try* to recover payments," Defendants are not "*automatically*" liable for an overpayment. Dkt. #83 at 12–13 (emphasis in original) (internal quotation marks

omitted). On this basis, it strains credulity to contend Plaintiffs have not *plausibly* pled a repayment obligation—the only burden Plaintiffs have at this stage. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) ("Asking for *plausible* grounds does not impose a *probability* requirement at the pleading stage.") (emphasis added). Defendants themselves cite case law holding that an "injunction cannot deprive [the] government of [the] *right to seek* . . . to recoup improperly paid funds"—exactly what Texas is doing here. Dkt. #83 at 7 (quoting *Maryland Dep't of Human Res. v. United States Dep't of Ag.*, 976 F.2d 1462, 1467 (4th Cir. 1992)) (emphasis in original).

Defendants assert they "are aware of no authority . . . that holds a party that received payments under an injunction must immediately repay those amounts," and contend—as they have before—that Texas was required to initiate an administrative recoupment action before filing suit. Dkt. #83 at 6–7. But Defendants cite no authority for the proposition that Texas was required to initiate an administrative action as a prerequisite to filing suit under the Texas Medicaid Fraud Prevention Act ("TMFPA"), Tex. Hum. Res. Code § 36.001 *et seq.*, and Plaintiffs are aware of none. Indeed, Defendants' contention that "a court order or recoupment action is required" to recover overpayments supports the necessity of this action. Dkt. #83 at 7.

These are the same arguments Defendants made in their previous briefing—some of which Defendants repeat almost verbatim. *Compare* Dkt. #83 at 13 ("Therefore, to recoup funds under an injunction, the government must take affirmative steps, pursuant to statutorily prescribed processes, to recoup the money before there can be any established

obligation to repay."), *with* Dkt. #65 at 15 ("Put another way, any obligation to repay monies received under an injunction is not automatically triggered by the vacatur order; it requires subsequent action by the court or the government."); *compare* Dkt. #83 at 13 ("[B]oth Texas and Louisiana law provide mechanisms for the States to recoup Medicaid funds that they believe were wrongly paid. . . . Neither State initiated recoupment proceedings. . . . In fact, Texas voluntarily extended the period during which Affiliate Defendants could lawfully participate in Medicaid, without any suggestion that Affiliate Defendants would have to repay the funds Texas was authorizing them to receive"), *with* Dkt. #65 at 14–15 ("[A]lthough Texas law provides an administrative recoupment mechanism, the State did not pursue recoupment. . . . In fact, Texas voluntarily *extended* the period during which Affiliate Defendants could lawfully participate in Medicaid, without any suggestion that Affiliate Defendants would have to turn around and repay the funds Texas authorized them to receive.") (emphasis in original).

The Court has already addressed these arguments *and* the cases Defendants cite in support. While Defendants spend several pages discussing *Arkadelphia Milling Co.*, *National Kidney Patients Association*, *Maryland Department of Human Resources*, *Bayou Shores*, and *Simoneaux*, these cases have already been briefed by the Parties and considered by the Court. *Compare* Dkt. #83 at 6–10, 12–16, *with* Dkt. #49 at 31, *and* Dkt. #51 at 23, *and* Dkt. #65 at 7, 13, 15, *and* Dkt. #66 at 8, 10. Defendants do not demonstrate there has been a change in law or a manifest error of law or fact sufficient to support a motion for

reconsideration. *See Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). Nor do they offer any basis in equity to justify rehashing old arguments.

Defendants' recycled arguments and disappointment with the results do not justify a motion for reconsideration. *See Bowling v. Dahlheimer*, Civ. A. No. 4:18-cv-00610, 2020 WL 5134771, at *6 n.8 (E.D. Tex. Aug. 6, 2020) ("Even under a Rule 54(b) standard, a court need not rehash arguments it has already considered") (internal quotation marks omitted); *see also Nationalist Movement v. Town of Jena*, 321 F. App'x 359, 364 (5th Cir. 2009) (holding that motions for reconsideration should not be used to "reurge matters that have already been advanced by a party"). A Rule 54(b) motion is not grounds to "relitigate issues that were resolved to the movant's dissatisfaction." *See Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 289 (5th Cir. 1989).

> 2.   Defendants' new arguments do not affect the reasons the Court properly denied Defendants' Motions to Dismiss.

In their Motion for Reconsideration, Defendants cite—for the first time—a CMS response to a 2016 comment on its proposed 60-Day Rule under the Patient Protection and Affordable Care Act ("ACA"). Dkt. #83 at 8–10. Defendants had an opportunity to respond to Relator's arguments concerning this rule in their Reply in Support of their Motion to Dismiss Relator's Complaint. *See generally* Dkt. #65. Having made the strategic decision not to include this argument in their Reply does not give Defendants grounds to ask this Court to reconsider its Order. *See* Memorandum Opinion and Order Denying Plaintiffs' Motions for Reconsideration and for Leave to Amend at 10, *Planned Parenthood*,

542 F. Supp. 3d 465 (N.D. Tex. 2021) (No. 5-21-cv-114) (holding that "belated authorities cannot be the basis for granting Planned Parenthood's motion"). The Court should disregard Defendants' additional arguments because Defendants have made no effort to demonstrate why they could not have raised these arguments in the regular course of briefing. "A motion to reconsider is not the proper vehicle to raise entirely new arguments that were available when the original motion was filed. Such a practice would negate Rule 12's timing requirement." *Mansfield v. Williamson Cnty.*, Civ. A. No. A-18-CV-49-ML, 2020 WL 13146202, at *5 n.5 (W.D. Tex. March 18, 2020).

Nevertheless, even if the Court were to consider this CMS Response, it would not have any bearing on the issues here. Defendants contend that under the ACA "payments that were proper at the time the payment was made do not become overpayments at a later time." Dkt. #83 at 9 (quoting 81 Fed. Reg. 7654, 7658). This Response is irrelevant to the issues in this case for multiple reasons.

First, the agency's Response to a comment on a proposed rule "is not itself a regulation." *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 311 n.22 (5th Cir. 2007). Even if it were construed as an "interpretation" of a regulation, Defendants do not contend that the regulation is ambiguous; accordingly, no deference is owed to it. *Id.*

Second, Defendants rely on a selective excerpt of CMS's response, and the comment to which this response relates does not support Defendants' position in this case—namely, that a preliminary injunction eliminates the existence of any obligation even

after the injunction is vacated. The comment and CMS's response are reproduced in full below:

> *Comment:* Several commenters requested that CMS clarify in the final rule that potential overpayments only exist if a provider or supplier retains funds to which it was not entitled to at the time that it received the funds. Commenters stated that subsequent changes in law, regulation, or guidance (such as coding rules, carrier edits, and national and local coverage decisions) should not render payments that were proper at the time they were made overpayments at a later date.
>
> *Response*: We agree that payments that were proper at the time the payment was made do not become overpayments at a later time due to changes in law or regulation, unless otherwise required by law. Changes in guidance or coverage policy also usually will not alter whether a prior payment should be considered an overpayment, although there can be circumstances in which guidance is issued to clarify existing law, regulation, or coverage rules that would make clear that a past payment is an overpayment. Typically, overpayments would be determined in accordance with the effective date of any changes in law, regulation, or policy. *Providers and suppliers should analyze the facts and circumstances present in their situation to determine whether an overpayment exists*.

81 Fed. Reg. 7658 (emphasis added). In context, this comment and response illustrate that while changes in coverage decisions may not retroactively render a payment an overpayment, overpayments are identified by the "facts and circumstances present in [providers' and suppliers']" specific situations. *Id.* Overpayment determinations are ultimately determined as required by law. *See id.* at 7657. Accordingly, CMS's response should be read in conjunction with—at a minimum—providers' "duty to investigate"

potential overpayments and "proactive compliance" responsibilities. *Id.* at 7661, 7663; *see also* Dkt. #61 at 13–15 (briefing these issues).

Moreover, the CMS Response on which Defendants rely does not obviate providers' statutory duties. The parties already briefed—and the Court considered—these issues. *See* Dkt. #49 at 12, 26–31; Dkt. #61 at 9–18, Dkt. #65 at 13–16; Dkt. #71 at 6–11. Defendants fail to explain how the Court's thoughtful opinion "complete[ly] disregard[s] . . . the controlling law." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). No matter how strongly Plaintiffs disagree with that reasoning or wish they had argued their points differently, a Rule 54(b) motion is "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the [Court's Order]." *See Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (referencing the impropriety of a Rule 59(e) motion for "arguments that could have been offered or raised before the entry of judgment").

## C. Defendants' motion to reconsider whether Plaintiffs adequately pled scienter should be denied.

### 1. Defendants repeat arguments already considered—and rejected—by the Court.

Defendants contend that "the Court did not consider" whether Plaintiffs alleged facts sufficient to demonstrate that Defendants "knowingly and improperly avoid[ed] or decrease[d] an obligation to pay or transmit money" to the government. Tex. Hum. Res. Code § 36.002(12); *accord* 31 U.S.C. § 3729(a)(1)(G); Dkt. #83 at 17. Defendants offered these same arguments to the Court in their earlier briefing. In fact, many of the arguments

and authorities Defendants include in their Motion for Reconsideration repeat almost verbatim Defendant's arguments in its Reply in Support of its Motion to Dismiss Relator's Complaint. *Compare* Dkt. #83 at 17–18, *with* Dkt. #65 at 17–19. Defendants offer nothing new here. Defendants had the last word on their Motions to Dismiss; they should not be allowed to replough old ground simply because they disagree with the Court's analysis of the issues.

> 2.    Defendants' arguments do not affect the reasons the Court properly denied Defendants' Motions to Dismiss.

Even if the Court were inclined to reconsider whether Plaintiffs pled facts sufficient to support the reasonable inference that Defendants acted "knowingly and improperly," none of the arguments in Defendants' Motion affect the reasons the Court properly denied Defendants' Motions to Dismiss.

Defendants' motion for reconsideration hinges on whether Plaintiffs allege facts sufficient to create the reasonable inference that Defendants acted "improperly." Dkt. #83 at 17. In support of their motion, Defendants contend Plaintiffs failed to plead that Defendants "deceived the States." *Id.* at 19. That is not the relevant inquiry. Neither the Federal False Claims Act ("FCA"), the TMFPA, nor LMAPIL requires plaintiffs to plead "deception."

In their Complaints, Plaintiffs allege Defendants "knowingly and improperly avoided [their] obligation to repay money owed to the Texas Medicaid program." Dkt. #22 at 2; *see also* Dkt. #2 at 5–6, 41–42. Defendants knew by February 1, 2017 that their

provider terminations were effective by operation of law. Dkt. #22 at 16; Dkt. #2 at 5–6. Consequently, Defendants were not entitled to retain reimbursements for services delivered on or after February 1, 2017. Dkt. #22 at 16; Dkt. #2 at 36–37, 39–40.

Defendants "improperly" avoided their obligation to repay the government by failing to remit the reimbursements to which they were not entitled within the 60-day statutorily required time period. Dkt. #2 at 36–37; Dkt. #22 at 16–17; Dkt. #61 at 18–23; Dkt. #62 at 18–23. These issues were previously briefed in Plaintiffs' Responses to Defendants' Motions to Dismiss, and Plaintiffs incorporate them here by reference. Dkt. #61 at 18–23; Dkt. #62 at 18–23. "[N]othing in [Defendants'] motion to reconsider demonstrates that the Court wrongly concluded—let alone manifestly erred in concluding—" that Plaintiffs pled facts sufficient to support the reasonable inference that Defendants acted with the requisite scienter. *See* Memorandum Opinion and Order Denying Plaintiffs' Motions for Reconsideration and for Leave to Amend at 19, *Planned Parenthood*, 542 F. Supp. 3d 465 (N.D. Tex. 2021) (No. 5-21-cv-114).

The Court properly denied Defendants' Motions to Dismiss, and it should deny Defendants' attempt to relitigate this issue in its Motion for Reconsideration. *See Forsythe*, 885 F.2d at 289.

**D.  The Court should deny Defendants' attempt to relitigate the denial of Defendants' motions to dismiss under the public disclosure bar.**

Once again, Defendants advance no new arguments, facts, or law that the Court did not previously consider and address in its well-reasoned opinion denying Defendants'

motions to dismiss. And Defendants do not identify with specificity how the Court erred in its analysis of the public disclosure bar.  Thus, this additional attempt to relitigate issues already argued and ruled on should also be rejected.

1. Defendants contend that the Court misapplied the law concerning the public disclosure bar in its opinion denying Defendants' motion to dismiss Relator's false certification claim. In support of their argument for reconsideration of the public disclosure bar, Defendants rely primarily on the *U.S. ex rel. Solomon v. Lockheed Martin* Corp., 878 F.3d 139 (5th Cir. 2017) ("Solomon"). Defendants did not previously cite or discuss *Solomon*, but give no explanation as to why they could not have done so before. *Templet*, 367 F.3d at 479. *Solomon* is not a new case and does not present any new law on the public disclosure bar that the Court did not previously consider. Regardless, *Solomon* does not support reconsideration of the Court's opinion denying the motions to dismiss.

In *Solomon*, the Fifth Circuit explained that for the public disclosure bar to apply, "the combination of X and Y must be revealed, from which the readers and listeners may infer Z[.] Z is an inference of fraud under the FCA, while X and Y are two required elements for the inference: a misrepresented state of facts and a true state of facts." *Id*. at 145. Defendants do not identify any prior public disclosure of the facts Relator alleges as the basis for the false certification claim. As this Court already found, the "public disclosures cited by Defendants do not detail any false certifications made by Defendants." Dkt. #71 at 14. More specifically, there were no prior public disclosures of Relator's allegations that Defendants falsely certified their compliance with Medicaid rules and regulations when

they submitted claims to Texas and Louisiana Medicaid and that Defendants' certifications were false because they were not in compliance with Medicaid rules and regulations when they submitted the claims. Thus, before Relator filed the Complaint, there was no prior public disclosure of a "misrepresented state of facts" and a "true state of facts" that would give rise to an inference of fraud under the FCA. *Id.* at 145. The Court thus correctly held that the public disclosure bar does not apply to Relator's false certification claim and, contrary to Defendants' assertion in their motion for reconsideration, *Solomon* provides further support for the Court's opinion.

2. Defendants also contend that the Court should reconsider its opinion denying dismissal of Relator's reverse false claim under the public disclosure bar because a Texas state court issued a TRO that purported to allow Defendants to continue to participate in the Texas Medicaid program. Dkt. #83 at 22. Defendants' argument appears to be that the Texas TRO was a prior public disclosure of the factual allegations that are the basis of Relator's reverse false claim. But the TRO did not disclose that Defendants received an overpayment or that Defendants failed to repay money it owed to Texas, and certainly had nothing to do with Louisiana. Order, *In re Planned Parenthood of Greater Texas*, Cause No. D-1-GN-21-000528 (Travis Cty. Dist. Ct.). This argument fails for the same reasons the Court rejected Defendants' arguments concerning the termination letters and Fifth Circuit opinion. Dkt. #71 at 14. The Court correctly concluded that "those alleged disclosures are not allegations forming the basis of Relator's reverse false claim. Relator instead forms his theory based on Defendants' alleged obligation to repay Medicaid funds received under the

preliminary injunction and improper avoidance of that obligation." *Id*. To the extent that Defendants argue that the Texas TRO absolved them of responsibility to repay the overpayment, this argument fails for the same reasons the Court rejected Defendants' arguments regarding the preliminary injunctions. *Id*. at 4–5. Defendants thus provide no reason the Court should reconsider its opinion.

3. Defendants argue that the Court should also reconsider its opinion that Relator qualifies as an "original source" under the FCA. Dkt. #83 at 17–19. But the Court correctly held that Relator voluntarily disclosed his allegations to the government before any public disclosures and Relator has independent knowledge that materially adds to the prior public disclosure. Dkt. #71 at 15. As the Court explained in its opinion denying Defendants' motions to dismiss, Relator alleges that "Relator voluntarily disclosed this information to 'government officials and law enforcement entities, including the Texas Attorney General,' before uploading the information to YouTube." Dkt. #71 at 15 (citing Dkt. #2 at 28–29). And the Court explained that "the uncovered information 'prompted investigations by the U.S. House of Representatives, the U.S. Department of Justice, the FBI, and the State of Texas." Dkt. #71 at 15. Defendants do not dispute Relator's allegations or the Court's finding that Relator disclosed the information to these governmental officials prior to any public disclosure. *See* Dkt. #83 at 17–19. Rather, Defendants claim that Relator's disclosure to the government did not contain sufficient information about Defendant's conduct and therefore does not qualify as prior disclosure to the government. Dkt. #83 at 18. Defendants made this same argument and relied on the

same cases in their motion to dismiss, and Defendants' motion for reconsideration does not raise any new facts or law concerning the "original source" exception to the public disclosure bar. Dkt. #49 at 24–25. Defendants' motion for reconsideration should therefore be denied for the same reasons set forth in the Court's opinion. Dkt. #71 at 15.

4. Lastly, Defendants ask the Court to reconsider its opinion that Relator qualifies as an "original source" because Relator "ha[d] knowledge that is independent of and materially adds to publicly disclosed allegations or transactions" and "ha[d] voluntarily provided the information to the Government before filing an action." Dkt. #83 at 18–19. Defendants again repeat the same arguments they made in their motion to dismiss without any new facts or law that would change the Court's analysis and opinion. The Court should deny Defendants' motion for reconsideration of its opinion and order denying Defendants' motions to dismiss under the FCA's public disclosure bar.

## II.    THE COURT SHOULD DENY DEFENDANTS' MOTION TO CERTIFY AN INTERLOCUTORY APPEAL.

Alternatively, Defendants present four "questions" they ask this Court to certify for interlocutory review pursuant to 28 U.S.C. § 1292(b). Dkt. #83 at 25–26. As a threshold matter, Section 1292(b) authorizes the certification of *orders* for interlocutory appeal, not the certification of *questions. Linton v. Shell Oil Co.*, 563 F.3d 556, 558 (5th Cir. 2009). Indeed, Defendants fail to establish why the denial of their motions to dismiss—wherein this Court made the preliminary finding that Plaintiffs "plausibly pled" their theories of Defendants' liability—constitutes "exceptional" circumstances that would justify an

interlocutory appeal at this juncture. *Waste Mgmt. of Louisiana, L.L.C. v. Jefferson Parish*, 594 F. App'x 820, 821 (5th Cir. 2014); *see also, e.g.*, Dkt. #71 at 17–23. This Court should deny Defendants' request for certification.

Section 1292(b) authorizes immediate appeal of an interlocutory order when the district court finds: (1) that the order "involves a controlling question of law"; (2) "as to which there is substantial ground for difference of opinion"; and (3) that immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Interlocutory appeals are, however, "not favored." *Thibodeaux v. Vamos Oil & Gas Co.*, 487 F.3d 288, 292 (5th Cir. 2007) (citing *Complaint of Ingram Towing Co.*, 59 F.3d 513, 515 (5th Cir. 1995)); *see also United States v. Garner*, 749 F. 281, 286 (5th Cir. 1978) (interlocutory appeals under Section 1292(b) are exception to policy against piecemeal appellate review and should only be granted in "exceptional cases"). The Section 1292(b) authorization "is designed to minimize burdens by accelerating or . . . simplifying trial court proceedings." *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 723 (N.D. Tex. 2006) (citations and internal quotations omitted). Interlocutory appeal, however, "is not a vehicle to question the correctness of a district court's ruling or to obtain a second, more favorable opinion." *Id.* at 722 (citations omitted). The decision to certify an interlocutory appeal is within the district court's discretion, and such appeal should not be certified unless all criteria are satisfied. *Id.*; *Adhikari v. Daoud & Partners*, No. 09-cv-1237, 2010 WL 744237, *1–2 (S.D. Tex. Mar. 1, 2010). Here, Defendants have failed to demonstrate that interlocutory appeal is appropriate. 28 U.S.C. § 1292(b).

## A.    Immediate appeal would frustrate, not "materially advance" the ultimate termination of this litigation.

Immediate appeal of this Court's denial of Defendants' motions to dismiss would not "materially advance the ultimate termination of the litigation"—it would do the opposite. 28 U.S.C. § 1292(b). Section 1292(b)'s "materially advance" requirement seeks to "avoid protracted and expensive litigation." *LaFarge v. Kyker*, 2009 WL 4110887, *1 (N.D. Miss. Nov. 23, 2009) (citing *U.S. ex rel. Hollander v. Clay*, 420 F. Supp. 853 (D.D.C. 1976)). Courts are to consider whether interlocutory appeal will "speed up the litigation." *Flowserve*, 444 F. Supp. 2d at 723 (citation omitted); *see also Steinhardt v. Potter*, 326 F. Supp. 2d 449, 454 (S.D.N.Y. 2004) (considering imminence of trial to deny certification). By contrast, appeals that would merely delay resolution of the case militate against certification. *See Coates v. Brazoria Cnty., Tex.*, 919 F. Supp. 2d 863, 868 (S.D. Tex. 2013).

The current schedule of this case makes clear that interlocutory appeal of a preliminary order of this Court would frustrate the termination of this litigation, not materially advance it. This Court's denial of Defendants' motions to dismiss held that Plaintiffs "plausibly pled" their causes of action. Dkt. #71 at 17–23. Dispositive motions— where this Court will have an opportunity to make ultimate rulings on the law and how it governs Defendants' conduct—are to be filed in less than five months. Dkt. #72 at 1. If such motions do not dispose of this case, trial is a little more than eight months away. *Id.* At that time, any aggrieved party can seek appellate review of a final judgment in this case— the preferred vehicle for seeking such review. *Thibodeaux*, 487 F.3d at 292. Appeal at this

junction would merely delay resolution of this case, and this Court should not certify one. *Coates*, 919 F. Supp. 2d at 868.

> **B.      Defendants' "questions" also fail the other two prongs of the Section 1292(b) analysis.**

Interlocutory appeal under Section 1292(b) also requires Defendants to demonstrate that this Court's denial of their motions to dismiss "involves a controlling question of law as to which there is substantial ground for difference of opinion." 28 U.S.C. § 1292(b). Defendants' four "questions" fail to meet these standards also.

For an issue to involve a "controlling question of law," it must "at the very least mean[ ] a question of law the resolution of which could materially advance the ultimate termination of the litigation—thereby saving time and expense for the court and the litigants." *Flowserve*, 444 F. Supp. 2d at 723. Importantly, resolution of such an issue "should not require the appeals court to go hunting through the record to see whether a genuine issue of material fact may be lurking there." *Id.* at 722 (citation and internal quotations omitted). Similarly, a "substantial ground for difference of opinion" exists where:

> a trial court rules in a manner which appears contrary to the rulings of all Courts of Appeals which have reached the issue, if the circuits are in dispute on the question and the Court of Appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.

*Id.* at 723–24 (citation omitted). "But simply because a court is the first to rule on a question or counsel disagrees on applicable precedent does not qualify the issue as one over which there is substantial disagreement." *Id.* at 724.

1.   Defendants' Question 1

Defendants' first question—which concerns an injunction's role in a Medicaid provider's obligation to tender an overpayment—does not present a "controlling question of law." Dkt. #83 at 25; *see also* 28 U.S.C. § 1292(b). As this Court correctly identified in denying Defendants' motions to dismiss, Plaintiffs' causes of action rely on the interplay between several sources that give rise to Defendants' obligation to return the subject funds, which include: (1) the Texas Medicaid Provider Agreement (which Defendants executed); (2) the Texas Medicaid Provider Manual (by which Defendants agreed to be bound); (3) Texas laws governing provider enrollment and termination; (4) Texas laws governing administrative review of provider termination decisions; (5) Texas laws governing fraud, waste, and abuse in the Texas Medicaid program; and (6) the injunctions on which Defendants rely. Dkt. #71 at 9–16. By reducing their first question to the legal ramifications of the injunctions only, Defendants disregard other program requirements governing Defendants' conduct. Thus, resolution of this first question does not, without more, materially advance the ultimate termination of the litigation. *See Flowserve*, 444 F. Supp. 2d at 723.

Moreover, Defendants claim they "are aware of no court ever to hold that vacatur of an injunction *automatically* triggers a repayment obligation," and as a result, this question

poses substantial ground for difference of opinion. Dkt. #83 at 26. At best, Defendants suggest the absence of any authority on this narrow point (again, relying only on the injunctions and disregarding other program obligations) presents a novel and difficult questions of first impression. *See Flowserve*, 444 F. Supp. 2d at 723–24. However, Defendants fail to argue why this question—concerning an injunction and its impact on a provider's status within the Medicaid program—is novel or difficult to this Court. Dkt. #83 at 26. The absence of controlling authority on an issue does not, by itself, require interlocutory review. *Flowserve*, 444 F. Supp. 2d at 724.

### 2.    Defendants' Question 2

Defendants' second question—which posits that the State's inaction bears on Defendants' liability—is even further from the mark. Dkt. #83 at 25; *see also* 28 U.S.C. § 1292(b). Here, Defendants ask this Court to certify a question for interlocutory review that neither controls in this case nor provides fertile ground for a defendant to avoid TMFPA liability. In *Nazari v. State*, provider defendants argued the State conspired with the state Medicaid contractor to cause the defendants' liability. *Nazari v. State*, 561 S.W.3d 495, 499 (Tex. 2018). The Texas Supreme Court, though, plainly rejected the notion that the State's conduct is relevant to a defendant's liability under the TMFPA:

> In their conspiracy and breach-of-contract counterclaims, the Providers contend, essentially, *that they should not be liable for their fraud because the state let them get away with it.* This argument has nothing to do with whether the Providers violated the Act.

*Id.* at 507 (emphasis added). While TMFPA offenders may mitigate (but not eliminate) statutory liability through voluntary disclosure of wrongdoing prior to the Attorney General commencing an investigation, the Texas Supreme Court held in *In re Xerox Corp.* that "[t]he TMFPA adopts no other fault-mitigation mechanism[,]" including shifting blame onto the State. *In re Xerox Corp.*, 555 S.W.3d 518, 536 (Tex. 2018); Tex. Hum. Res. Code § 36.052(c). On this point, there is no "substantial ground for difference of opinion." 28 U.S.C. § 1292(b).

### 3.      Defendants' Questions 3 & 4

Defendants' third and fourth questions—which address the public disclosure bars—do not present a "controlling question of law." Dkt. #83 at 25–26; *see also* 28 U.S.C. § 1292(b). By themselves, neither question is dispositive of any issue in the case—Defendants readily admit that both questions would need to be resolved in their favor before they could bear on any relevant issues. *Id.* at 26. However, whether the public disclosure bar applies in the first case, and whether someone can avoid the bar as an original source, are questions that require a "fact-intensive inquiry that involves weighing the prior public disclosures against the information relayed to the government[.]" *United States ex rel. Forney v. Medtronic, Inc.*, 327 F.Supp.3d 831, 852 (E.D. Pa. 2018). This is the type of inquiry that would improperly "require the appeals court to go hunting through the record[.]" *Flowserve*, 444 F. Supp. 2d at 722.

Additionally, on the issue of "substantial ground for difference of opinion," Defendants fail to address why this Court is unequipped to rely on the wealth of FCA

precedent interpreting the statute's public disclosure bar and apply it appropriately to the circumstances of this case. *See* 28 U.S.C. § 1292(b). Indeed, Defendants present no compelling reasons for why they need interlocutory review of these issues at this juncture. Dkt. #83 at 26–27. For the reasons set forth herein, this Court should deny Defendants' request to certify an interlocutory appeal. 28 U.S.C. § 1292(b).

## CONCLUSION

For these reasons, and those set forth *supra*, Defendants' Motion for Reconsideration, or, in the Alternative, Certification for Interlocutory Appeal (Dkt. #83) should be denied in its entirety. Plaintiffs further seek any and all other relief, whether at law or in equity, to which they justly may be entitled.

Dated: June 14, 2022                              Respectfully submitted,

                                                  **KEN PAXTON**
                                                  Attorney General of Texas

                                                  **BRENT WEBSTER**
                                                  First Assistant Attorney General

                                                  **GRANT DORFMAN**
                                                  Deputy First Assistant Attorney General

                                                  **SHAWN E. COWLES**
                                                  Deputy Attorney General for Civil Litigation


                                                  */s/ Raymond Charles Winter*
                                                  **RAYMOND CHARLES WINTER**
                                                  Chief, Civil Medicaid Fraud Division
                                                  Texas Bar No. 21791950

                                                  **AMY SNOW HILTON**
                                                  Assistant Attorney General
                                                  General Litigation Division
                                                  State Bar No. 24097834

                                                  Office of the Attorney General
                                                  P.O. Box 12548, Capitol Station
                                                  Austin, Texas 78711-2548
                                                  (512) 463-2120 / Fax (512) 320-0667
                                                  Raymond.Winter@oag.texas.gov
                                                  Amy.Hilton@oag.texas.gov


                                                  **ATTORNEYS FOR STATE OF TEXAS**

/s/ Andrew B. Stephens
**ANDREW B. STEPHENS**
Texas Bar No. 24079396
**HEATHER GEBELIN HACKER**
Texas Bar No. 24103325

HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
(512) 399-3022
heather@hackerstephens.com
andrew@hackerstephens.com

**ATTORNEYS FOR RELATOR**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing document was filed electronically via CM/ECF on June 14, 2022, causing electronic service on all counsel of record

/s/ Raymond C. Winter
**RAYMOND C. WINTER**
Chief, Civil Medicaid Fraud Division