## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| United States of America<br>*ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| The State of Texas | § | CIVIL ACTION NO. 2:21-CV- |
| *ex rel.* ALEX DOE, Relator, | § | 00022-Z |
| | § | |
| The State of Louisiana | § | Date:      June 27, 2022 |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| Planned Parenthood Federation of America, Inc., | § | |
| Planned Parenthood Gulf Coast, Inc., Planned | § | |
| Parenthood of Greater Texas, Inc., Planned | § | |
| Parenthood South Texas, Inc., Planned Parenthood | § | |
| Cameron County, Inc., Planned Parenthood San | § | |
| Antonio, Inc., | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ENTRY OF PROTECTIVE ORDER

Defendants hereby oppose, in part, Plaintiffs' motion for entry of a protective order and respond to the substantive issues identified by the Court in its June 24, 2022 Order, ECF No. 102.[1] Defendants agree that a protective order should be entered in this case in light of the sensitive issues relating to protected health information and the risk of harm to persons whose identities would otherwise be disclosed.  But Defendants differ from Plaintiffs as to the treatment of certain categories of information.  After Plaintiffs filed their motion, Defendants continued to confer in good faith with Plaintiffs and have (i) withdrawn their proposal to create a separate "Confidential Health Information" designation with unique protections for that set of data (although they continue to seek sufficient protection for any patient information produced in this litigation), and (ii) agreed to Plaintiffs' language on the deadline to file motions relating to challenged designations.

Accordingly, this Opposition addresses only three remaining protective order issues:

- Defendants' request that, where the Court orders production of patient-identifying information, any such information be on an "Attorneys' Eyes Only" basis;

- Defendants' request that the names of and identifying information for individuals who are not publicly identified as Planned Parenthood employees be protected on an "Attorneys' Eyes Only" basis; and

- Defendants' request that a party that *receives* a document production may designate certain documents in the production as confidential under the Protective Order, provided that the documents fall within the scope of the Protective Order.

---

[1] A portion of this brief is redacted in accordance with the Court's Order at ECF No. 12.  An unredacted copy of the brief is filed separately under seal.

Defendants also explain why Plaintiffs' position regarding the deadline for Defendants' respective document productions is incorrect.

**ARGUMENT**

Defendants' proposed Protective Order is attached as Exhibit A.  A redline version showing the differences between Defendants' proposal and Plaintiffs' proposal is attached as Exhibit B.

I.      **The Court Should Not Order Production of Non-Redacted "Individually Identifiable Health Information" or "Protected Health Information"—But Any Non-Redacted Production Should Be On An "Attorneys' Eyes Only" Basis.[2]**

The Health Insurance Portability and Accountability Act ("HIPAA") regulations state:

> A covered entity may use or disclose protected health information
> in the course of any judicial or administrative proceeding *[i]n*
> *response to an order of a court* or administrative tribunal, *provided*
> *that the covered entity discloses only the protected health*
> *information expressly authorized by such order*.

45 C.F.R. § 164.512(e)(1)(i) (emphasis added).  While it is appropriate in certain circumstances for courts to order production of non-redacted information that is otherwise protected from disclosure under HIPAA, the circumstances of the particular claims asserted in this litigation do not warrant any such disclosure.

Courts only require the disclosure of HIPAA-protected information if it is actually relevant to the claims at issue.  *See, e.g.*, *Durham v. Ankura Consulting Grp., LLC*, No. 2:20-cv-112-KS-MTP, 2021 WL 6618644, at *2 (S.D. Miss. May 18, 2021) ("The information at issue . . . is both relevant and proportional to the needs of the case[.]"); *Bright v. Tyson*, No. 2:15–CV–08038–SDW–SCM, 2017 WL 2156986, at *4 (D.N.J. May 17, 2017) ("The patient records sought *strike at the heart of this action*." (emphasis added)); *Davidson v. City of Elizabethtown*, No. 3:16-CV-

---

[2] The parties agree that any "Individually Identifiable Health Information" and "Protected Health Information" produced in the litigation should be redacted from any public court filings. *See* Ex. B at ¶¶ 5–6.

429-CRS, 2017 WL 4875278, at *3 (W.D. Ky. Oct. 27, 2017) ("Specifically, the Court limits the scope of the information obtainable by Defendants to such information as is relevant to the claims and defense asserted by the parties in this action."). This common-sense requirement is consistent with the reasoning behind HIPAA's court-order exception. *See Standards for Privacy of Individually Identifiable Health Information*, 65 Fed. Reg. 82461, 82674 (Dec. 28, 2000) (noting that protected health information often may be "critical evidence" in judicial proceedings).

Here, however, "protected health information"—and certainly any information such as patient names and contact information—is wholly irrelevant to the merits of Plaintiffs' False Claims Act and state-law claims—and Plaintiffs have never argued otherwise. Relator's false-certification claim turns on the alleged nondisclosure of violations of federal and state law in connection with fetal-tissue research. Relator Compl., ECF No. 2, ¶¶ 105–108. And Plaintiffs' "reverse" false claims counts turn on allegations that the Affiliate Defendants did not remit Medicaid funds received during the pendency of injunctions permitting the Affiliate Defendants to remain in Medicaid. *Id.* ¶¶ 109–112; Texas Compl., ECF No. 22, ¶¶ 36–41. These claims have no rational connection to the disclosure of "protected health information," and Plaintiffs can diligently prosecute their claims without access to specific patient names or contact information and other protected health information. Indeed, Plaintiffs have impliedly acknowledged as much by—as they emphasize in their motion—expressly carving out of their discovery requests items like patient charts. *See* ECF No. 101, at 3–4. Accordingly, the Court should order that all protected health information be produced in redacted form pursuant to 45 C.F.R. § 164.512, unless and until Plaintiffs make a contrary showing in connection with specific discovery requests.

To the extent the Court ultimately orders any such protected health information to be produced in non-redacted form, it should be on an "Attorneys' Eyes Only" basis. There is no

reason why Relator needs to access confidential, individual health information to prosecute this litigation, and any disclosure beyond a small group of attorneys would needlessly increase the risk that sensitive, personal medical information entitled by law to the utmost protection will be publicly disclosed.  *See Koester v. Young Men's Christian Ass'n of Greater St. Louis*, No. 4:14CV1772 RLW, 2015 WL 3440346, at *1 (E.D. Mo. May 28, 2015) (protective order permitting medical history to be designated as "Confidential Attorneys' Eyes Only"); *Estate of Carrillo v. F.D.I.C.*, No. 11–22668–CIV., 2012 WL 1831596, at *5 (S.D. Fla. May 18, 2012) (holding that "protected health information" produced in response to subpoena "may only be viewed by counsel for the parties").

## II.     For Safety and Privacy Reasons, the "Attorneys' Eyes Only" Designation Should Cover the Names of Non-Publicly-Identified Planned Parenthood Staff, and Those Names Should Be Redacted From Any Public Court Filings

District courts have approved the redaction of identifying information of non-party employees—including names—where "the public's interest in knowing the names of the non-party employees [does] not outweigh the non-party employees' privacy interest." *Carter v. Sw. Airlines Co.*, No. 3:17-cv-02278-X, 2022 WL 283025, at *3 (N.D. Tex. Jan. 31, 2022) (Starr, J.); *see also June Med. Servs. LLC v. Gee*, No. 16-00444-BAJ-RLB, 2022 WL 377978, at *7 (M.D. La. Feb. 7, 2022) (permitting redaction of abortion provider's employees' names not publicly associated with provider).

That is precisely the case here.  Defendants seek merely to ensure that the names of Planned Parenthood employees who are not already publicly identified as such can be produced on an "Attorneys' Eyes Only" basis, and redacted from any public filing.  *See* Ex. A at ¶¶ 2, 5. Defendants' proposed protections are analogous to the terms of the protective order in *Planned Parenthood Federation of America v. Center for Medical Progress*—another case that involved

the Relator and certain Planned Parenthood entities. *See* Protective Order, *Planned Parenthood*

*Federation of America v. Center for Medical Progress*, No. 3:16-cv-0236-WHO (N.D. Cal.), ECF

No. 117, at §§ 2.12(a), 6 (permitting Planned Parenthood to designate as "Highly Confidential –

Attorneys' Eyes Only" disclosed materials containing the "[n]ames of . . . [Planned Parenthood's]

staff").

Defendants' approach would address valid concerns about protecting non-publicly-

identified Planned Parenthood staff from threats and harassment. There is a long history of

harassment, intimidation, retaliation, and violence against abortion providers and their staff.[3]

Courts across the country have accordingly acknowledged that public disclosure of the names of

individuals associated with abortion providers can put those individuals' safety and privacy at risk.

*See, e.g., Planned Parenthood Ark. & E. Okla. v. Jegley*, No. 4:15-cv-00784-KGB, 2016 WL

7487914, at *2 (E.D. Ark. Feb. 1, 2016) (protecting "the identities . . . of Planned Parenthood . . .

staff" because those who "associate with abortion providers are subject to personal and

professional stigma" and "they fear for their personal safety and that of their families"); *Planned*

*Parenthood Southeast, Inc. v. Strange*, 33 F. Supp. 3d 1330, 1334 (M.D. Ala. 2014) ("climate of

violence, harassment, and hostility" justified abortion providers being "referred to by pseudonyms

throughout the case"); *Planned Parenthood of Wis., Inc. v. Van Hollen*, 94 F. Supp. 3d 949, 959

n.11 (W.D. Wis. 2015) (referring to doctors providing abortion services by aliases because "of the

extreme harassment and threats physicians providing abortions face"). The Attorney General of

---

[3] *See, e.g., Columbus Man Pleads Guilty to Threatening Local Reproductive Health Services Facility*, U.S. Dept. of Justice Office of Public Affairs, https://www.justice.gov/opa/pr/columbus-man-pleads-guilty-threatening-local-reproductive-health-services-facility (Feb. 15, 2022); *2020 Violence and Disruption Statistics,* Nat'l Abortion Federation, https://5aa1b2xfmfh2e2mk03kk8rsx-wpengine.netdna-ssl.com/wp-content/uploads/2020_NAF_VD_ Stats.pdf (Dec. 16, 2021) (reporting a 125% increase in assault and battery outside of abortion clinics in 2020).

Texas has likewise recognized these risks in other contexts. In 2012, for example, the Attorney General agreed that a Planned Parenthood in Fort Worth satisfied its burden to keep employee and patient information confidential in response to an Open Records request with evidence of harassment and threats, including two attacks involving explosives at similar locations.[4]

Many of Defendants' staff have actively taken steps to remain anonymous out of concern for their well-being. *See, e.g.*, Ex. C (Decl. of Colon Earl Jordan, Jr.[5]), at ¶ 4 (protestor "approached [a PPGT] Waco clinician after she parked her vehicle in the parking lot" and "call[ed] her by her name and sa[id] he knew where she lived"), ¶ 7 (Pro-Life Waco Director "follow[ed] [a Waco PPGT volunteer] around a local store and she asked him to stop, but he refused"), ¶ 8 (member of Pro-Life Waco had "a list, several pages long, of dozens of then-PPGT employees, along with a description of their vehicles, their license plate numbers, and their home address information"); Ex. D (Decl. of Larissa Lindsay), at ¶¶ 6, 8 (after Relator's videos were released, "multiple Facebook users made death threats" against a PPGC employee, stating for example "[w]hy do I see a lot of killings of PP doctors and bombings in the near future?" and "Kill this murder-b##ch!"), ¶ 9 (threatening letter addressed to PPGC employee stated that sender hoped "she goes to prison until she f##king dies").

The proceedings in this case—to which individual Planned Parenthood employees are not a party—should not risk revealing their names and thereby unnecessarily undermining their

---

[4] *See* Tex. Att. Gen. Open Records Letter Ruling 2012-13509, https://www2.texasattorneygeneral.gov/opinions/openrecords/50abbott/orl/2012/pdf/or20121350 9.pdf (Aug. 24, 2012).

[5] In order to file supporting declarations in the public record, Defendants have anonymized the names of the individuals referenced in the declarations. Planned Parenthood staff are referred to as Doe 1, Doe 2, etc., and the names of individuals who have sought to intimidate or harass Planned Parenthood staff are referred to as Smith 1, Smith 2, etc. Defendants can provide separate, non-anonymized versions of the declarations under seal if the Court so requests.

privacy and safety.  Defendants' request is modest compared to the extent of relief sought and granted by other courts in this circuit.  *See, e.g.*, *June Med. Servs. LLC v. Kliebert*, 158 F. Supp. 3d 473, 498 (M.D. La. 2016) (agreeing that "potential for harassment, intimidation and violence" justified "allowing *individual Plaintiffs* to proceed anonymously." (emphasis added)).

The "Attorneys' Eyes Only" designation—plus redactions in public filings—is appropriate and warranted, moreover, because the Relator can diligently prosecute his claims without specific knowledge of the identity of individual Planned Parenthood employees.[6]  And given the Relator's history of substantial public disclosures relating to the provision of abortion care, *see* Relator Compl. ¶ 81, heightened protections are warranted.  *Cf. Nutratech, Inc. v. Syntech (SSPF) Intern., Inc.*, 242 F.R.D. 552, 555–56 (C.D. Cal. 2007) (limiting disclosure of certain information to "attorney's eyes only" after balancing "risk of disclosure" and "risk that a protective order will impair prosecution or defense of the claims").

Basic fairness also dictates that if the Relator's name merits protection from public disclosure, *see* ECF No. 79, so, too, do the names of non-publicly-identified Planned Parenthood staff who are not even parties to this litigation.  In entering an order protecting the Relator's identity, the Court cited the risk of "opprobrium" due to the Relator's views on abortion.  *Id.* at 5–6.  As shown above, and as recognized consistently by many courts around the country, that same risk exists for Defendants' staff.  Defendants' staff have been subject to similar types of threats, intimidation, and harassment—*see* Ex. C at ¶¶ 4, 7, 8, 12; Ex D. at ¶¶ 6, 8, 9—that the Court pointed to as a basis for permitting Relator to proceed anonymously, *see* ECF No. 12 at 2–3.

---

[6] Defendants' proposed protective order provides that Defendants will disclose to Plaintiffs the identity of any Planned Parenthood witnesses who have been noticed for deposition, identified in any party's Initial Disclosures, or whose names either Plaintiff requests and is able to provide a good faith basis supporting their need to identify the individuals.  Ex. A at ¶ 2 n.1.

Defendants, moreover, seek confidentiality protection only for employees who have to-date remained anonymous. That stands in stark contrast to the actions of Relator, ██████████

██████████████████████████████████████████████████████████████

██████████████████████████████████

The Court should enter a protective order adopting Defendants' proposed language, which would provide the appropriate protections for all individuals involved.

**III.    The Protective Order Should Permit a Receiving Party to Designate Materials Produced as Containing "Confidential Information" and/or "Confidential Attorney Eyes Only Information"**

Defendants' proposed Protective Order also provides for the ability of receiving parties to designate materials as containing "Confidential Information" and/or "Confidential Attorney Eyes Only Information." *See* Ex. A at ¶ 4. This is necessary given the atypical circumstances of this case. For example, Relator or a third party, such as a government entity, could produce materials containing patient or Planned Parenthood employee names or other identifying information. If the producing party decides to not designate the information as confidential, Defendants will need a designation right to ensure their patients' and employees' protection. There would be no over-designation concern associated with this addition to the Protective Order because the designating party would be limited to designating only material that fairly falls within the scope of the Order.

**IV.    Plaintiffs Have Incorrectly Identified Defendants' Discovery Production Deadlines**

In their motion, Plaintiffs state that "Defendants' first production is due on June 27, 2022." ECF No. 101, at 2. That is incorrect. Defendants' *written responses* to Plaintiffs' first discovery

---

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

requests are due today, but "Rule 34 clearly distinguishes between the deadline to provide a written response, including any objections, and the deadline to actually produce (or permit inspection) of documents or ESI if additional time is needed from the provision of the written response." *Lewis v. E. Baton Rouge Par.*, No. 16-352-JWD-RLB, 2018 WL 2921104, at *5 (M.D. La. June 11, 2018).

Rule 34(b)(2)(A) states in relevant part that "[t]he party to whom the request is directed must *respond in writing* within 30 days after being served[.]"   Fed. R. Civ. P. 34(b)(2)(A) (emphasis added).   This provision "requires a written response to document requests within 30 days, but does not specify a specific time for documents to be produced." *Sura v. Zimmer, Inc.*, 768 F. App'x 58, 60 (2d Cir. 2019).   The timeframe for actual production, however, is governed by Rule 34(b)(2)(B), which states "[t]he production must then be completed no later than the time for inspection specified in the request *or another reasonable time specified in the response.*"   Fed. R. Civ. P. 34(b)(2)(B) (emphasis added).   The commentary on the 2015 Amendments to Rule 34 reinforces that actual production is not subject to a 30-day deadline.   *See* Fed. R. Civ. P. 34 Advisory Committee's Note, 2015 Amend. ("When it is necessary to make the production in stages the response should specify the beginning and end dates of the production."); *see also Lewis*, 2018 WL 2921104, at *5 ("Rule 34(b)(2)(B) further provides that a complete production of non-privileged, responsive documents may occur after the provision of written responses.").

Consistent with the requirements of Rule 34, Defendants will serve written responses to Plaintiffs discovery requests today.   As detailed in Defendants' concurrently filed motion for a modest extension of the litigation schedule, Defendants are collecting and reviewing responsive documents and are committed to a good faith effort to complete their respective productions as quickly as possible.   Indeed, all Defendants anticipate beginning a rolling production in the coming

days, and PPFA and Affiliate Defendants have committed to all good faith efforts to complete their

production in response to Plaintiffs' first requests by August 1, 2022.

## CONCLUSION

The Court should deny Plaintiffs' motion for entry of protective order and enter the

proposed protective order as amended by Defendants, *see* Exhibit A.

Dated:    June 27, 2022                                    **O'MELVENY & MYERS LLP**


*/s/  Danny S. Ashby*
DANNY S. ASHBY
Texas Bar No. 01370960
dashby@omm.com
JUSTIN R. CHAPA
Texas Bar No. 24074019
jchapa@omm.com
2501 N. Harwood Street, Suite 1700
Dallas, Texas 75201
T: (972) 360-1900
F: (972) 360-1901

LEAH GODESKY (*pro hac vice*)
lgodesky@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
T: (310) 553-6700
F: (310) 246-6779

**BLACKBURN BROWN LLP**
RYAN PATRICK BROWN
Texas Bar No. 24073967
brown@blackburnbrownlaw.com
1222 S. Fillmore St.
Amarillo, Texas 79101
T: (806) 371-8333
F: (806) 350-7716

*Attorneys for Defendant Planned Parenthood
Federation of America, Inc.*

11

**ARNOLD & PORTER KAYE SCHOLER LLP**

*/s/ Craig D. Margolis*
Craig D. Margolis
Craig.Margolis@arnoldporter.com
Murad Hussain
Murad.Hussain@arnoldporter.com
Tirzah Lollar
Tirzah.Lollar@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.6127
Fax: +1 202.942.5999
Christopher M. Odell
Texas State Bar No. 24037205
Christopher.Odell@arnoldporter.com
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: +1 713.576.2400
Fax: +1 713.576.2499

Ryan Patrick Brown
Texas State Bar No. 24073967
brown@blackburnbrownlaw.com
1222 S. Fillmore
Amarillo, TX 79101
Tel: (806) 371-8333
Fax: (806) 350-7716

*Attorneys for Affiliate Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 27, 2022 the foregoing document was electronically filed

with the Clerk of Court using CM/ECF.


*/s/ Danny S. Ashby*
Danny S. Ashby