## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| United States of America | § | |
| | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| | § | CIVIL ACTION NO. 2:21-CV- |
| | § | 00022-Z |
| The State of Texas | § | |
| | § | Date:      June 27, 2022 |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| | § | |
| | § | |
| The State of Louisiana | § | |
| | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| Planned Parenthood Federation of America, Inc., | § | |
| Planned Parenthood Gulf Coast, Inc., Planned | § | |
| Parenthood of Greater Texas, Inc., Planned | § | |
| Parenthood South Texas, Inc., Planned Parenthood | § | |
| Cameron County, Inc., Planned Parenthood San | § | |
| Antonio, Inc., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## DEFENDANTS' MOTION TO COMPEL

Defendants Planned Parenthood Gulf Coast, Inc. ("PPGC"), Planned Parenthood of

Greater Texas, Inc. ("PPGT"), Planned Parenthood South Texas, Inc. ("PPST"), Planned

Parenthood Cameron County, Inc. ("PP Cameron County"), and Planned Parenthood San Antonio,

Inc. ("PP San Antonio") (together, "Affiliate Defendants") hereby move, pursuant to Federal Rules

of Civil Procedure ("FRCP") 45 to compel production of documents by the U.S. Department of

Health and Human Services ("HHS"), and its constituent agencies, in response to the May 26,

1

US 172084167v12

2022 subpoena served by Defendants (hereinafter, the "Subpoena") (Ex. B).  Affiliate Defendants request that this Court order HHS to produce all of the documents and tangible things requested in the Subpoena on a rolling basis and (1) within ten (10) days of an entry of such an order, or (2) by August 1, 2022, if the Court grants Defendants' concurrently filed motion to extend the schedule by approximately four months.  Affiliate Defendants further request this Court order HHS to produce a privilege log for any documents that they are withholding on the grounds of privilege (or other protection) within 10 days of the completion of their document production.

## BACKGROUND AND PROCEDURAL HISTORY

**The Scheduling Order**

On May 11, 2022, the Court issued its Rule 16 Scheduling Order.  Dkt. 72.  The Scheduling Order provides that the Parties must complete discovery by September 30, 2022.  The Scheduling Order further requires that "[a]ny motion to compel discovery or for a protective order must be filed by 15 days after the discovery response at issue was served or due to be served."  *Id.* § 6(A).

**Defendants' Subpoena to HHS**

On May 26, 2022, Defendants issued a subpoena to HHS with a return date of June 15, 2022 (*i.e.*, 20 days from the date of issuance), given the limited time period for discovery.  The Subpoena seeks documents central to the Relator's and Texas's allegations against Defendants:

- documents and communications related to the termination of certain Planned Parenthood affiliates from Texas Medicaid and Louisiana Medicaid; federal and state court injunctions preventing the termination of Planned Parenthood affiliates from Texas Medicaid and Louisiana Medicaid; whether termination of any Planned Parenthood affiliate violated Medicaid's free choice of provider requirement and why; and whether Medicaid, Texas Medicaid, or Louisiana Medicaid could or

should seek recoupment for amounts reimbursed to any Planned Parenthood affiliate (*see* Document Request Nos. 1, 2, 6);

- documents and communications with the Center for Medical Progress and any documents or communications about the videos related to Planned Parenthood created by or publicized by the Center for Medical Progress (*see* Document Request Nos. 5, 7);

- documents and communications related to congressional hearings regarding Defendants, investigations into any Defendants, or congressional reports regarding fetal tissue donation (*see* Document Request Nos. 8-10);

- documents and communications related to Defendants' qualifications under Medicaid, Texas Medicaid, or Louisiana Medicaid (*see* Document Request Nos. 1, 2, 6, 11, 12);

- documents related to termination by Texas or Louisiana of any Medicaid, Texas Medicaid, or Louisiana Medicaid provider on the basis that the entity was not a qualified provider (*see* Document Request No. 14);

- documents and records related to HHS's understanding of the relationship between affiliated companies under Medicaid laws, and whether a payment can become an overpayment based on a subsequent change in the law (*see* Document Request Nos. 15, 16);

- documents and communications related to fetal tissue studies and/or donations in which any Medicaid, Texas Medicaid, or Louisiana Medicaid provider in which a provider unrelated to Planned Parenthood participated; termination of any Medicaid, Texas Medicaid, or Louisiana Medicaid provider unrelated to Planned

3

US 172084167v12

Parenthood for violations of laws or regulations related to medical research (*see* Document Request Nos. 3, 4, 13);

- documents and records reflecting claims submitted to, and paid by, government healthcare programs that have paid Planned Parenthood affiliates for the provision of healthcare services that HHS deems false or fraudulent or that HHS has concluded that Planned Parenthood affiliates have an obligation to repay (*see* Document Request Nos. 17-20).  (Ex. B)

**Meet-and-Confer Efforts**

By letter dated May 31, 2022, counsel for the Centers for Medicare and Medicaid Studies ("CMS"), a component of HHS, wrote a letter detailing CMS's responses and objections to the Subpoena.  *See* Declaration of Tirzah S. Lollar ¶ 3 (hereinafter "Lollar Decl.") (Ex. A); *see also* May 31, 2022, CMS Letter (Ex. C).  This letter only spoke for CMS, and not any other HHS division.  *Id.* at 1.  Among other things, CMS "object[ed] to the subpoena on the ground that the time provided to produce the requested records is unreasonable…seek up to 12 years' worth of information…[which] may contain information that is privileged, patient-identifiable, or otherwise provided from release or disclosure and we must carefully review potentially responsive documents…."  *Id.*

Defendants have twice conferred telephonically with HHS over the timing and scope of the Subpoena.  Lollar Decl. ¶ 4.  First, on June 3, 2022, Defendants' counsel held an initial teleconference with counsel for CMS and the Department of Justice ("DOJ").  *Id.*  During that call, counsel for CMS expressed concern regarding the time needed to respond to the Subpoena.  *Id.* Defendants' counsel reiterated that Defendants are entitled to the Subpoena requests, because the CMS is the putative federal victim of any allegedly inaccurate Medicaid claims.  *Id.*; *see also Am.*

4

US 172084167v12

*Civil Liberties Union v. Holder*, 673 F.3d 245, 250 (4th Cir. 2011) ("*ACLU v. Holder*") (finding that upon receipt of a *qui tam* complaint, the Department of Justice must investigate in consultation with "personnel within the federal agency that is the alleged fraud victim").

Next, on June 13, 2022, Defendants' counsel participated in a follow-up teleconference with attorneys for CMS, the HHS Office of Inspector General ("HHS-OIG"), and DOJ. *Id*. Counsel for CMS represented that CMS would produce some, but not all, responsive documents by the June 15, 2022, deadline, and that the remaining responsive documents would be produced on a rolling basis, given the amount of internal review required. *Id.* CMS's counsel further represented that CMS would continue to search for responsive documents and remained committed to producing all responsive and non-privileged documents in response to the Subpoena. *Id.* HHS-OIG's counsel did not comment as to HHS-OIG's forthcoming production. *Id.* Later that same day, Defendants' counsel sent an email to the attorneys for CMS, HHS-OIG, and DOJ in order to memorialize the key points discussed on the teleconference and to inquire as to whether CMS and HHS-OIG would agree to log the documents that each agency would be withholding on the grounds of privilege. Lollar Decl. ¶ 5; *see* also June 13, 2022, Email from M. Hussain (Ex. D). As of the date of this filing, Defendants have not received any response to this email.

**Initial Document Productions**

On June 15, 2022, CMS made its initial production of documents. CMS's summary of its 114-page production notes that it responds only to RFPs Nos. 1, 2, 6, 12. *See* Ex. E at 1-2. CMS has not provided either responsive documents or specific objections in response to the Subpoena's remaining 16 requests. Lollar Decl. ¶ 6. Additionally, CMS did not produce a privilege log with its initial response, though it continued to reiterate in its general objections that some otherwise

5

responsive documents are likely to be subject to either attorney-client privilege or deliberative-process privilege.  *See* Ex. E. at 2-3.

Also on June 15, 2022, HHS-OIG made its initial production of documents.  Lollar Decl. ¶ 6.   This production of five pages included: (1) an HHS-OIG "Opening Investigate Memorandum"; (2) an HHS-OIG "Closing Investigative Memorandum"; (3) HHS-OIG "Hotline Complaint Details"; and an (4) HHS-OIG "Hotline Referral Form."  *See* June 15, 2022, HHS-OIG Letter and Attachments (Ex. F); Lollar Decl. ¶ 6.  HHS-OIG also objected to the Subpoena in part on "the grounds that the time required to produce requested documents is unreasonable." Ex F. HHS-OIG did not produce a privilege log with its initial response, but made objections that some of the responsive documents may be protected by privilege.  *Id.* at 2.

Pursuant to this Court's Scheduling Order, Affiliate Defendants now bring the instant motion to compel HHS to produce remaining responsive documents to the Subpoena on a rolling basis and (1) within ten (10) days of an entry of such an order, or (2) by August 1, 2022, if the Court grants Defendants' concurrently filed motion to extend the schedule by approximately four months.  Affiliate Defendants further request this Court order HHS to produce a privilege log for any documents that they are withholding on the grounds of privilege (or other protection) within 10 days of the completion of their document production.

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 26(b)(1), a party "may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…."  Courts will analyze six factors to determine whether discovery requests are proportional to the needs of the case: (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties'

resources; (5) the importance of discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). *MetroPCS v. Thomas*, 327 F.R.D. 600, 609 (N.D. Tex. 2018).

To obtain discovery, Rule 45 "explicitly contemplates the use of subpoenas in relation to non-parties." *Am. Fed'n of Musicians of the United States & Canada v. Skodam Films LLC*, 313 F.R.D. 39, 42 (N.D. Tex. 2015) (quoting *Isenberg v. Chase Bank USA, N.A.*, 661 F. Supp. 2d 627, 629 (N.D. Tex. 2009). At any time, the serving party may move the court for an order compelling production or inspection in the face of an objection. *Williams v. C. Martin Company, Inc. et al.*, 2014 WL 3095161,*5 (E.D. La., July 7, 2014) (holding that a federal agency is subject to a motion to compel compliance in the District of Columbia with a subpoena issued in the Fifth Circuit); *see also* Dkt 72 at § 6(A) ("Any motion to compel discovery or for a protective order must be filed by 15 days after the discovery response at issue was served or due to be served.").

## **ARGUMENT**

This Court should compel HHS to produce all responsive, non-privileged documents in its possession in response to the Subpoena. The Subpoena requests documents and communications that are fundamental to the instant litigation and are specifically tailored to be proportional to the needs of the case. To the extent that HHS claims that any responsive documents are protected by an applicable privilege, it must produce a privilege log in order for Defendants to fairly assess the applicability of the asserted privilege.[1]

---

[1] CMS and HHS-OIG claim that some of the responsive documents may be subject to the deliberative process privilege. Ex. E at 2, Ex. F at 2. Neither CMS nor HHS have produced a privilege log at this time. Deliberative process privilege is a qualified privilege. *Harding v. Cnty. of Dallas, Texas*, 2016 WL 7426127, at *12 (N.D. Tex. Dec. 23, 2016) ("[C]ourts have held that the deliberative process privilege is qualified and can be overcome by a sufficient showing of need." (internal quotation marks omitted)). Defendants do not waive and expressly reserve their

7

I.      **THE COURT SHOULD ORDER PROMPT PRODUCTIONS IN RESPONSE TO THE SUBPOENA.**

The requested documents from HHS are relevant, proportional to the needs of the case, and are essential to allow Defendants to fully investigate Relator's and Texas's allegations against them.

At the outset, HHS does not object to the Subpoena on the basis of relevance, and CMS and OIG have expressly stated that it will work to produce all responsive, non-privileged documents. *See* Exs. A ¶ 6, E, F. Given the limited progress made to date and the looming close-of-discovery deadlines, however, Affiliate Defendants require court intervention to assure that Affiliate Defendants obtain discovery central to their defense. The Subpoena is specifically tailored to request only relevant documents and communications at the heart of the claims at issue in this litigation.

### A.  The Subpoena Seeks Highly Relevant Documents And Information.

> ***1.***  *The Documents Affiliate Defendants Seek Are Critically Relevant To Materiality.*

In a False Claims Act case, discovery from the federal government is essential because the relator must prove that the alleged fraud was material to the federal government's payment decision. *See, e.g., Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 178, 195 (2016); *U.S. ex rel. Harman v. Trinity Indus. Inc.*, 872 F.3d 645, 660-61 (5th Cir. 2017); *U.S. v. Paramedics Plus LLC*, 2018 WL 620776 at *6 (E.D. Tex. Jan. 30, 2018) ("After a review of . . . *Escobar*, the Court finds that allowing discovery relating to the Government's continued payment after discovery of [an alleged non-compliance] is [permissible],); *see also U.S. v. Gilead Scis.,*

---

right to move to show sufficient need to compel the production of any documents protected by this qualified privilege once HHS and CMS have produced privilege logs.

US 172084167v12

*Inc.*, 2019 WL 5722618 at *8 (N.D. Cal. Nov. 5, 2019) (Where materiality is at issue, "discovery into 'exactly what the government knew and when' cannot be avoided[,]" which in this case will "likely entail *extensive* discovery into government witnesses and documents by either or both [relators] and [defendant]." (emphasis added)).

Materiality, in turn, requires an analysis of what the government actually did upon learning of the alleged fraud. *See Universal Health Servs.*, 579 U.S. at 176, 178, 195 ("[I]f the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material[;]" "if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material."); *Harman*, 872 F.3d at 663 ("[C]ontinued payment by the federal government after it learns of the alleged fraud substantially increases the burden on the [plaintiff] in establishing materiality.").

Here, there are substantial grounds to believe that CMS *disagreed* with the determinations by Texas and Louisiana that Defendants were not qualified Medicaid providers. *See* Brief for the United States as Amicus Curiae, *Planned Parenthood Gulf Coast, Inc. v. Gee*, No. 15-30987, 9, 12 (5th Cir. 2016) (Louisiana's "termination letter of September 15, 2015, relied on grounds that would be legally insufficient to exclude a provider under Section 1320a-7 and that letter, standing alone, does not establish that the State has made a proper determination to exclude PPGC for cause or otherwise properly determined that PPGC is unqualified to perform the required services within the meaning of 42 U.S.C. § 1396a(a)(23) and 42 C.F.R. § 431.51(c)(2)."); Letter from Vikki Wachino, Director, CMS to Gary Jessee, Associate Commissioner, Texas Medicaid/CHIP, at 1-2 (Aug. 11, 2016) ("We are unaware of any basis for Texas to terminate PPGC's provider

9

US 172084167v12

agreements [with PPGC] (Ex. H), which would be consistent with [the] limited reasons for excluding providers from Medicaid participation."); Letter from Vikki Wachino, Director, CMS to Jen Steele, Medicaid Director, Louisiana Department of Health and Hospitals, at 1-2 (Aug. 11, 2016) ("We are unaware of any basis for Louisiana to terminate PPGC's provider agreements [with PPGC], which would be consistent with [the] limited reasons for excluding providers from Medicaid participation.") (Ex. I).

Relator here alleges that Defendants submitted materially false or fraudulent claims for medical services causing the government to overpay for reproductive health services from government sponsored health care programs, and that Defendants allegedly continued to possess funds in spite of a supposed to obligation to refund Medicaid payments to the federal government. The Subpoena requests documents and information which will establish whether HHS deemed Defendants' claims for payment to be material, which is an essential element of the claim. Defendants must be permitted to probe these issues in discovery.

> 2.      *The Subpoena Seeks Documents And Information That Is Squarely*
> *Relevant to Plaintiffs' State-Law Claims.*

The Subpoena also seeks information relevant to Texas's claims under the Texas Medicaid Fraud Prevention Act and Relator's claims under the Louisiana Medical Assistance Programs Integrity Law. These claims are premised on the theory that Defendants knowingly avoided an obligation to repay money that had been reimbursed for services under Texas Medicaid and Louisiana Medicaid. *See* Rel.'s Compl. ¶¶ 130-133; Texas's Compl. ¶¶ 39-41.[2]   Document Request Nos. 1-4 request documents and communications with Texas Medicaid and Louisiana

---

[2] Relator also alleges under the Louisiana Medical Assistance Programs Integrity Law that Defendants knowingly presented or caused to be presented false or fraudulent claims to the State of Louisiana. Rel.s' Compl. ¶ 132.

Medicaid aimed in part in discovering (i) the contemporaneous views of Texas and Louisiana regarding whether Defendants indeed were under an obligation to repay, (ii) the effect of federal and state court injunctions preventing the termination of Defendants from Texas Medicaid and Louisiana Medicaid, (iii) whether Texas Medicaid or Louisiana Medicaid could or should seek recoupment for amounts reimbursed to any Defendant, (iv) Texas Medicaid's decision to grant Planned Parenthood affiliates in Texas a 30-grace period to assist their Medicaid patients find replacement Medicaid providers, and (v) the continued participation of any Defendant in Louisiana Medicaid.  There is evidence that CMS was in discussions with Texas and Louisiana regarding the terminations, (*see* Exs. H, I), so it is reasonable to suspect that these issues were discussed.

Texas's views about its ability or lack of ability to recoup amounts Defendants were properly reimbursed for Medicaid claims submitted under the injunction is relevant to whether Defendants were under an obligation to repay those amounts.  Louisiana's decision to permit Planned Parenthood to continue providing services under Louisiana Medicaid and its reasons and communications for that decision is similarly relevant to whether Defendants have an affirmative obligation to repay amounts they received in the past and continue to receive today.  In addition, Louisiana sent a response to CMS's August 11, 2016 letter stating that Louisiana "terminated other types of providers for similar violations of [Louisiana statutes cited in Louisiana's termination notices to Planned Parenthood Gulf Coast, Inc.]."  Email from Kimberly Sullivan, Louisiana Department of Health and Hospitals Deputy General Counsel at 1 (Sept. 27, 2016) (Ex. J). Defendants must be allowed to take discovery about these other terminations because that information is directly relevant to the materiality of Relator's claims under the Louisiana Medical Assistance Programs Integrity Law.  *See* La. Rev. Stat. § 437.3(8).

US 172084167v12

### B.  The Subpoena Is Proportional To The Needs of the Case.

The scope of the Subpoena is appropriate in view of the scope and stakes of this litigation. The Subpoena requests documents and communications that are uniquely in the HHS's possession, and concern claims submitted by numerous healthcare providers in two states, making it impracticable to request this information from other means.  The Department of Justice likely consulted with CMS as "the alleged fraud victim."  *See ACLU v. Holder*, 673 F.3d at 250.  Even before Defendants served the Subpoena, standard government practice would have been for HHS to review the information sought by the Subpoena, to help DOJ assess the merits of Relator's allegations.  *See* DOJ Justice Manual § 4-4.110 ("In any False Claims Act matter, the USAO or Fraud Section attorneys *will confer* with the relevant agency during the investigative, litigation, and settlement phases of the matter.  The Department's attorneys *will solicit* the agency's views on the False Claims Act matter, including, for example, on the falsity and materiality aspects of any alleged violations of the relevant agency requirements, in order to assist the Department in determining whether the elements of the False Claims Act can be established." (emphasis added)).[3] Accordingly, the Subpoena is not unduly burdensome and requests information that HHS likely has already collected and reviewed to aid the Department of Justice's prior investigation into Relator's Complaint.

To the extent the Subpoena seeks information that was not previously collected and reviewed, the Subpoena is still proportional to the needs of the case.  The stakes in this case are high.  According to the Court, Defendants in this case "could incur hundreds of millions of dollars in damages and penalties."  Dkt. 79 at 7.

---

[3] *See* https://www.justice.gov/jm/jm-4-4000-commercial-litigation#4-4.110.

### C.  A Privilege Log Is A Critical Component Of Any Subpoena Response From HHS.

HHS must be required to produce a privilege log detailing any privileges that it wishes to assert in response to the Subpoena.  Rule 45(e)(2)(i-ii) requires that if subpoenaed information is withheld under a claim of privilege the non-party asserting the privilege must: (1) expressly make the claim; and (2) describe the nature of the withheld documents, communications or other tangible things in a manner that, without revealing the information itself that is privileged or protected, will enable the parties to assess the claim.  When a subpoenaed party fails to provide a privilege log, courts in this Circuit routinely have found that all assertions of privileges or other protections are waived.  *See e.g. Beasley v. Lang*, 2018 WL 2072856, at *4 (S.D. Miss. May 2, 2018) (finding that a party that failed to produce a privilege log was subject to waiver of the privilege); *Jordan v. Aries Marine Corp.*, 2015 WL 151336, at *2 (E.D. La. Jan. 12, 2015).  !!

As CMS and HHS-OIG have both stated in their response letters, they believe some responsive material may be subject to privileges.  *See* Exs. E, F.  Yet, to date, neither has produced a log substantiating that commentary.  Lollar Decl. ¶ 5.  Defendants must be able to evaluate whether HHS is asserting any qualified privileges and must have sufficient time to show need to overcome any such qualified privileges. At the time of filing the instant motion, HHS (whether through CMS, HHS-OIG, or any other division) has not responded to Defendants' counsel's request for a privilege log.  Lollar Decl. ¶ 5.

## II.  THE TIME PRESCRIBED FOR HHS TO RESPOND TO THE SUBPOENA IS NECESSARY UNDER THE CURRENT SCHEDULING ORDER.

As detailed in Defendants' concurrently filed extension motion, Affiliate Defendants respectfully request a modest extension of time so that the parties and third parties can complete their respective document productions before taking depositions and disclosing experts.  If the

13

Court grants that extension, it is reasonable to expect HHS to complete its production by August 1, 2022—more than two months after Defendants served the subpoena.

If the Court does not extend the schedule, HHS needs to complete its production within 10 days.  In those very-accelerated circumstances, Affiliate Defendants cannot permit HHS to respond to the Subpoena on a rolling basis, as proposed, because it would not afford Affiliate Defendants time to review or investigate the documents produced by HHS with enough time for the evidence to be useful for depositions, expert work, or dispositive motions.

## CONCLUSION

For the foregoing reasons, Affiliate Defendants respectfully request that this Court grant their motion to compel HHS to produce documents in response to the Subpoena on a rolling basis and (1) within ten (10) days of an entry of such an order, or (2) by August 1, 2022, if the Court grants Defendants' concurrently filed motion to extend the schedule by approximately four months.  Affiliate Defendants further request this Court order HHS to produce a privilege log for any documents that they are withholding on the grounds of privilege (or other protection) within 10 days of the completion of their document production

US 172084167v12

Dated:  June 27, 2022,

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER
LLP

By:    */s/ Tirzah S. Lollar*
       Craig D. Margolis
       Craig.Margolis@arnoldporter.com
       Tirzah S. Lollar
       Tirzah.Lollar@arnoldporter.com
       Christian Sheehan
       Christian.Sheehan@arnoldporter.com
       601 Massachusetts Ave, NW
       Washington, DC 20001-3743
       Telephone: +1 202.942.6127
       Fax: +1 202.942.5999

       Christopher M. Odell
       Texas State Bar No. 24037205
       Christopher.Odell@arnoldporter.com
       700 Louisiana Street, Suite 4000
       Houston, TX 77002-2755
       Telephone: +1 713.576.2400
       Fax: +1 713.576.2499

       Ryan Patrick Brown
       Texas State Bar No. 24073967
       brown@blackburnbrownlaw.com
       1222 S. Fillmore
       Amarillo, TX 79101
       Tel: (806) 371-8333
       Fax: (806) 350-7716

       *Attorneys for Defendants Planned*
       *Parenthood Gulf Coast, Inc., Planned*
       *Parenthood of Greater Texas, Inc.,*
       *Planned Parenthood South Texas, Inc.,*
       *Planned Parenthood Cameron County,*
       *and Planned Parenthood San Antonio*

15

US 172084167v12

**CERTIFICATE OF CONFERENCE**

On June 21, 2022, in accordance with Local Rule 7.1(b), counsel for Defendants certify that they conferred with counsel for Relator and counsel for Texas regarding the relief requested in this motion.  Several attorneys for Texas participated, but Raymond Winter from the Office of the Texas Attorney General spoke for Texas.  Relator's counsel Heather Hacker participated in the conference.  Mr. Winter and Ms. Hacker stated that Relator and Texas are opposed.

*/s/ Tirzah S. Lollar*
Tirzah S. Lollar

16

US 172084167v12

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 27, 2022, the foregoing document was electronically filed with the Clerk of Court using CM/ECF.

                                                          */s/ Tirzah S. Lollar*

                                                          Tirzah S. Lollar

US 172084167v12