**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| United States of America | § | |
| | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| | § | CIVIL ACTION NO. 2:21-CV- |
| | § | 00022-Z |
| The State of Texas | § | |
| | § | Date:      June 27, 2022 |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| | § | |
| | § | |
| The State of Louisiana | § | |
| | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| Planned Parenthood Federation of America, Inc., | § | |
| Planned Parenthood Gulf Coast, Inc., Planned | § | |
| Parenthood of Greater Texas, Inc., Planned | § | |
| Parenthood South Texas, Inc., Planned Parenthood | § | |
| Cameron County, Inc., Planned Parenthood San | § | |
| Antonio, Inc., | § | |
| | § | |
| Defendants. | § | |
| | § | |

**DEFENDANTS' MOTION FOR EXTENSION OF SCHEDULE**

Defendants hereby move, pursuant to Federal Rule of Civil Procedure ("FRCP") 16(b)(4),

for a modest, four-month extension of the schedule.[1]

---

[1] Pursuant to Local Rule CV-7(h), the parties have met and conferred regarding the relief requested by this motion; Plaintiffs have indicated that they are opposed to extending the discovery deadline. In addition, Defendants suggest that it would be appropriate to enter an expedited briefing schedule, similar to the briefing schedule ordered by the Court regarding the terms of the Protective Order Regarding Confidential Information.  Dkt. 102.  This would allow for prompt adjudication of this dispute regarding the schedule and provide certainty to the parties and third parties

US 171936185v15

## INTRODUCTION[2]

The Court ruled on March 7, 2022 that Defendants' then-pending motion to dismiss constituted "good cause for delay" in issuing a scheduling order, and all parties operated from March 7 to May 11, 2022 with the understanding that discovery was stayed pending rulings on the dispositive motion, and accordingly served no discovery requests.  After largely denying Defendants' dispositive motions, the Court entered a May 11, 2022 Scheduling Order that largely adopted the schedule that the parties had proposed in early-March 2022—without accounting for the more-than-two-month period that passed in the meantime with no discovery taken by any party. To be clear, Defendants did not agree to the schedule that was ultimately set; when they agreed to the schedule that the parties proposed, they anticipated that discovery would begin in early March 2022.

The operative scheduling order, which has a September 30, 2022 deadline for the close of all discovery, contemplates an accelerated discovery schedule that is not feasible for any party. Because the parties all served their respective initial discovery requests in late-May and early-June 2022, no party will even *begin* producing documents until late June 2022 at the earliest.  And while Defendants are working diligently to negotiate the scope of various entities' productions in response to the Plaintiffs' subpoenas, those responsive productions will not be complete for several months.  Under the current schedule, Defendants—and Plaintiffs for that matter—would be forced

---

regarding the time period in which they must complete their document productions and complete other discovery.

[2] This brief refers to (i) Defendants Planned Parenthood Gulf Coast, Inc. ("PPGC"), Planned Parenthood of Greater Texas, Inc. ("PPGT"), Planned Parenthood South Texas, Inc. ("PPST"), Planned Parenthood Cameron County, Inc. ("PP Cameron County"), and Planned Parenthood San Antonio, Inc. ("PP San Antonio") collectively as "Affiliate Defendants"; and (ii) the Affiliate Defendants together with Planned Parenthood Federation of America, Inc. ("PPFA") as the "Defendants."

US 171936185v15

to proceed to take depositions and serve expert reports without the relevant documents on which they need to take testimony and have experts opine. Moreover, lead counsel for Affiliate Defendants and lead counsel for PPFA are not available for the February 27, 2023 trial date contemplated in the operative scheduling order. Defendants would therefore be substantially prejudiced if they are forced to proceed according to the current schedule. Plaintiffs, on the other hand, would suffer no prejudice from a modest, four-month extension. To the contrary, Plaintiffs would likewise benefit from additional time; in opposing Defendants' request for additional time, Plaintiffs insist that Defendants can collect, review, log, and produce all responsive documents in 30-days' time. That insistence is wholly divorced from the realities of modern discovery and an order requiring it would be unprecedented in a litigation of this magnitude. Defendants are committed to a relatively short discovery period and a near-term trial. Given the insurmountable obstacles associated with the current schedule, however, they respectfully request a modest adjournment of the schedule so that all parties can obtain the discovery they need to pursue their claims and defenses.

## PROCEDURAL HISTORY

1.      **All Parties Agreed At The Outset That This Litigation Would Require Nearly Seven Months Of Discovery**

On February 9, 2022, this Court ordered the parties to propose a scheduling order in this action on or before March 2, 2022. Dkt. 43. Shortly thereafter, on February 14, 2022, Defendants filed motions to dismiss the Relator's complaint (Dkt. 48) and Texas' complaint in intervention (Dkt. 50). On March 2, 2022, the parties submitted their joint proposed scheduling order ("JPSO"). Dkt. 56. Plaintiffs proposed a discovery period in excess of six months, with a discovery cut-off of October 13, 2022. *Id.* at 5. Defendants advised that they were filing a motion to stay discovery pending the resolution of Defendants' motions to dismiss, but that Defendants would join Plaintiffs

in proposing a discovery period of six and a half months if the Court declined to stay discovery. *Id.* at 4, 6. Defendants moved to stay discovery on the same day the JPSO was filed. Dkt. 57.

On March 7, 2022, the Court entered an order declining to "grant . . . a Rule 26(c) protective order" staying discovery. Dkt. 59. The Court explained, however, that Defendants' "outstanding Motion to Dismiss constitutes 'good cause for delay'" in issuing a scheduling order. *Id.* (citing Fed. R. Civ. P. 16(b)(2)). The Court continued that it "anticipate[d] it w[ould] rule on the pending Motions to Dismiss . . . before it issues a Scheduling Order that includes Rule 34 production and other relevant discovery deadlines." *Id.* In reliance on the Court's order, before the issuance of the May 11, 2022 Scheduling Order (Dkt. 72), the Defendants did not issue requests for production or engage in any discovery other than initial disclosures. *See* Fed. R. Civ. P. 16(b)(1)(A); Fed. R. Civ. P. 26(f) (timing of initial disclosures not based on issuance of Rule 16 scheduling order). Plaintiffs apparently operated from a shared understanding, as they likewise did not serve any discovery requests until May 27, 2022—more than two weeks after the Scheduling Order issued.

**2.     No Party Served Discovery Requests Until May 27, 2022, and All Parties Have Worked Expeditiously Since Then To Advance Discovery**

The Court largely denied Defendants' motions to dismiss on April 29, 2022. Dkt. 71.[3] The Court issued its Rule 16 Scheduling Order on May 11, 2022, with a September 30, 2022 date for the close of all discovery and a February 27, 2023 trial date. Dkt. 72. While Defendants believed those dates may have been workable if the Court had entered the schedule around the same time the parties submitted their Joint Proposed Scheduling Order in early March 2022, the deadlines have proved untenable, given the complete absence of any discovery between March and May

---

[3] Defendants filed a motion for reconsideration, or in the alternative, certification for interlocutory appeal on May 24, 2022. Dkt. 82. Defendants, however, do not seek to delay discovery pending the resolution of that motion.

4

2022. Indeed, because no party began serving discovery requests before the end of May, there is currently only an approximately four-month period in which to take and produce all necessary document discovery, serve interrogatory responses, serve responses to requests for admission, serve opening and rebuttal expert reports, and take depositions.

Nevertheless, and keeping in mind the Court's admonition that the deadlines in the May 11, 2022 Order would be viewed as "firm" (*see id.*), Defendants have moved their offensive-discovery efforts forward expeditiously:

- Defendants issued a subpoena to the U.S. Department of Health and Human Services ("HHS") with a return date of June 15, 2022 (20 days from issuance) given the limited time period for discovery. Ex. B.

- Defendant Planned Parenthood Gulf Coast, Inc. (the only Affiliate Defendant that provided Medicaid services in Louisiana) issued a subpoena to Louisiana with a return date of July 11, 2022 (Ex. G).

- The Affiliate Defendants issued requests for production and interrogatories to Texas on June 1, 2022. Declaration of Tirzah S. Lollar ("Lollar Decl.") at ¶ 7 (Ex. A).

- The Affiliate Defendants issued requests for admission to Texas on June 3, 2022. *Id.*

- Defendant Planned Parenthood Gulf Coast, Inc. issued requests for production and interrogatories to Relator on June 13, 2022. Lollar Decl. ¶ 10.

- Around the same time, PPFA retained separate counsel at O'Melveny & Myers, who then worked diligently to ensure that the change in counsel would not unduly delay the service of discovery requests. Declaration of Leah Godesky ("Godesky Decl.") ¶ 5 (Ex. K). PPFA served its requests for production and interrogatories to Relator and Texas on June 3, 2022. Godesky Decl. ¶ 6.

Simultaneously, Defendants are diligently working to identify and collect documents responsive to the Relator's and Texas's May 27 document requests and interrogatories served by Relator and Texas. Lollar Decl. ¶ 12; Godesky Decl. ¶ 7. The Relator and Texas also served supplemental requests to which responses are due in mid-July 2022. Lollar Decl. ¶ 12; Godesky Decl. ¶ 8. Consistent with Federal Rule of Civil Procedure 34(b)(2)(A), Defendants will respond

US 171936185v15

in writing to those requests within the 30-day response period provided by the Federal Rules.  It is not feasible, however, for Defendants to respond in writing *and* identify collect, review, log, and produce all documents responsive to those requests within a 30-day period.  Lollar Decl. ¶ 12; *see also* Godesky Decl. ¶ 8.

### 3.   Third-Party Document Discovery Is Proceeding On A Rolling Basis

Defendants issued a document subpoena in this case to HHS and its constituent agencies on May 26, 2022.  Ex. B.  The Centers for Medicare and Medicaid Services ("CMS") sent a letter in response on May 31, 2022 stating certain objections, but noting that it is "committed to working with [Defendants] to resolve [CMS's] concerns and produce responsive, non-privileged, documents."  Ex. C.  Defendants and attorneys for CMS and the U.S. Department of Justice ("DOJ") met and conferred on June 2 and June 13 to discuss CMS's efforts to respond to the subpoena.  Lollar Decl. ¶ 4.  HHS attorneys were also present during the June 13 conference.  *Id*. During the June 13 conference, CMS counsel stated that CMS expected to produce some documents on the June 15 return date, but CMS would not be producing all responsive documents on that date and would need to produce on a rolling basis.  *Id*.  CMS counsel also stated that CMS intends to assert deliberative process privilege over a large volume of otherwise responsive documents.  *Id*.  Defendants sent CMS and HHS an email on June 13 advising them that Defendants reserve all rights to challenge withheld documents, including those withheld on the grounds of deliberative process privilege.  Ex. D.  Defendants asked if CMS and HHS would agree to log documents they withhold on the basis of that privilege.  Lollar Decl. ¶ 5.  CMS and HHS have not responded as to whether they would agree to provide a  privilege log at the time of filing. *Id.*

US 171936185v15

On June 15, HHS and CMS made initial, limited productions of documents in response to the subpoena. Exs. E. F.  HHS produced five pages of documents and CMS produced 114 pages. Lollar Decl. ¶ 6.  Both HHS and CMS noted certain objections to some of Defendants' document requests, and Defendants intend to meet and confer with the agencies regarding their objections. Exs. E, F; Lollar Decl. ¶ 6.  In an accompanying response letter, CMS counsel reiterated her intention to "continue to work with CMS to identify and collect all relevant, responsive, and non-privileged documents within CMS's custody and control and expect to produce additional documents on a rolling basis." Ex. E.  Similarly, HHS stated that it is "committed to working with [Defendants] to resolve [its] concerns and produce responsive, non-privileged, documents in a manner consistent with federal law, regulations, and procedure" and stated that it "will provide any responsive documents in a rolling production as [it] locate[s] them."  Ex. F.

As discussed in greater detail in Defendants' motion to compel production of documents from HHS, both CMS and the HHS Office of Inspector General ("HHS-OIG") have claimed that some responsive documents may be subject to deliberative process privilege.  Neither CMS nor HHS have produced a privilege log at this time.  Lollar Decl. ¶ 5.  Deliberative process privilege is a qualified privilege.  *Harding v. Cnty. of Dallas, Texas*, 2016 WL 7426127, at *12 (N.D. Tex. Dec. 23, 2016) ("[C]ourts have held that the deliberative process privilege is qualified and can be overcome by a sufficient showing of need." (internal quotation marks omitted)).  Defendants expressly reserve their right to move to show sufficient need to compel the production of any documents protected by this alleged privilege once HHS and CMS have produced privilege logs.

On June 20, 2022, Planned Parenthood Gulf Coast, Inc. served a subpoena on the State of Louisiana.  Ex. G.  The return date on the subpoena is July 11, 2022.  As of the time of filing, Louisiana has not responded to the subpoena.  Lollar Decl. ¶ 8.

US 171936185v15

4.    **There is a Dispute Regarding a Protective Order for Confidential Information and Negotiations are Ongoing Regarding a Stipulation and Order Regarding Production of Electronically Stored Information and Hard Copy Documents**

The parties stated in their Joint Proposed Scheduling Order that they "anticipate the need for a protective order regarding confidential information and will draft and submit a proposed agreed protective order for consideration." Dkt. 56 ¶ 5(D). As described in greater detail in the briefing filed with the Court (Dkt. 101, 103, 104), there is a dispute regarding the terms of the protective order that the Court will need to adjudicate.

The parties stated in their Joint Proposed Scheduling Order that they "anticipate discovery of electronically stored information and will attempt to reach an agreement regarding the form or forms in which it should be produced." Dkt. 56 ¶ 5(D). Defendants sent a draft stipulation and proposed order regarding confidential information to Relator and Texas on June 21, 2022. Lollar Decl. ¶ 14. As of the time of filing, neither Relator nor Texas have responded to Defendants' draft. *Id.*

## STANDARD OF REVIEW

Once a district court has entered a scheduling order, a litigant may move to modify the order upon a showing of good cause pursuant to Rule 16(b)(4), which requires the party seeking relief to show that fact discovery deadlines cannot be reasonably met despite the diligence of the party needing the extension. *See* Scheduling Order ¶ 10 (Dkt. 721); Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment) (a court may modify a pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension."); *see also Southwestern Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 535 (5th Cir. 2003) ("The good cause standards requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the

US 171936185v15

diligence of the party needing the extension.'" (quoting 6A Charles Allen Wright, et al., *Federal Practice and Procedure* § 1522.1 (2d ed. 1990)).

## ARGUMENT

Good cause exists to extend the deadlines set by the Court in this matter for several reasons.

### 1.    Discovery Only Began in May 2022

As an initial matter, absent agreement between the parties to begin discovery earlier, discovery does not commence until the parties confer pursuant to Rule 26(f) *and* the court enters a Rule 16 scheduling order.  *See D&S Marine Transp., LLC v. S&K Marine, LLC*, No. 14-2048, 2014 WL 12925496, at *3 (E.D. La. Dec. 23, 2014) (discovery propounded before the parties have conferred pursuant to Rule 26(f) *and* a scheduling order has been issued pursuant to Rule 16(b) is premature); *Kennedy v. Jackson*, No. 21-cv-4247, 2022 WL 1294549, at *2 (W.D. La. Apr. 29, 2022) (Rules 26(f) and 26(d)(1), with regard to the start of discovery, "are generally implemented . . . by the court's scheduling order process"); *Molina v. Vilsack*, No. V-09-40, 2009 WL 5214098, at *4 (S.D. Tex. Dec. 23, 2009) (no undue delay or prejudice in transferring case where Court has yet to hold Rule 16 scheduling conference and discovery has not commenced); *Elderkin v. Flour Bluff ISD*, No. 06:06-cv-64, 2008 WL 5101561, at *4 (S.D. Tex. Nov. 26, 2008) (same).

The Court declined to immediately issue a Rule 16 scheduling order, finding that Defendants' motions to dismiss presented "good cause for delay."  Dkt. 59.  Although Defendants appreciate the Court's "attempt[] to adhere to the schedule requested by the parties" (Dkt. 72), the parties' proposed schedule assumed a scheduling order would issue shortly after it was filed.  As noted above, that would have afforded the parties more than six months to take discovery.  Because the Court found there was "good cause" to delay in issuing a scheduling order (Dkt. 59), more than two months passed during which time the parties were not taking discovery.  *See supra*.  In reliance

US 171936185v15

on this order, Defendants (and apparently Plaintiffs) did not take discovery between March 2022 and May 11, 2022.  In light of the foregoing, good cause exists here to extend the schedule by a total of four months—still a modest extension under the circumstances.

> **2.**    **The Parties Have Issued Extensive Discovery Requests and Would Be Required to Take Depositions And Plan For Expert Disclosures Before Significant Document Productions Have Been Made Under the Current Schedule**

Discovery in any False Claims Act ("FCA") action is complex and time consuming.  *U.S. ex rel. Thomas v. St. Joseph Hospice, LLC*, Civ. A. No. 2:16-cv-143, 2020 WL 1249907, *4 (S.D. Miss. Mar. 16, 2020) ("Surviving a motion to dismiss, alone, does not justify the burden and expense associated with expansive, unfettered discovery.  Courts have recognized that qui tam actions come with a high risk for discovery that imposes undue burden and expense.").  This case is no exception, given the (i) need to take third-party discovery from the federal government, (ii) critical nature of yet-to-be-obtained discovery from Texas and Louisiana, and (iii) limited progress to date with regard to the parties' own document productions.  Dkt. 58 at 7-9.

Once discovery began, Defendants moved quickly to issue a subpoena to HHS and  to propound discovery requests to Relator and the State of Texas.  The broad scope of Relator's allegations—which span more than a decade—means that Defendants' discovery requests to HHS are likewise relatively extensive.  Defendants are entitled to obtain, for example, documents related to HHS and its constituent agencies' consideration of and positions regarding the Texas and Louisiana terminations of the Planned Parenthood Affiliates, the impact of the federal and state court injunctions on the Medicaid provider status of the Planned Parenthood Affiliates, whether the termination of the Planned Parenthood Affiliates violated Medicaid's free choice of provider status, whether the Planned Parenthood Affiliates are required to repay amounts paid when the Affiliates were providing services when the terminations had been enjoined or pursuant to the

thirty-day Grace Period permitted by Texas.   Ex. B.   Defendants' HHS subpoena also seeks documents related to potential termination of other Medicaid providers to assess whether HHS has terminated a Medicaid provider for the reasons cited by Texas or Louisiana for their terminations of the Planned Parenthood Affiliates and how HHS treats companies that do not share any ownership or control under Medicaid, including whether and how a finding that one company is not a qualified company may affect another company's qualifications as a provider.   *Id.*

Affiliate Defendants' discovery requests for Texas similarly and necessarily mirror Texas's and Relator's broad claims.   For example, Affiliate Defendants seek from Texas documents and information on similar topics from the Texas Health and Human Services Commission, the Texas Office of Inspector General, and the Texas Ranger Division of the Texas Department of Public Safety.   Lollar Decl. ¶ 9.   Defendants also seek discovery from Relator regarding his pre-suit investigation; communications he had with HHS, Texas, and Louisiana regarding his investigation and claims against Planned Parenthood; and the basis for his claims that Affiliate Defendants were aware or should have been aware of their obligation to repay the government when neither Texas nor Louisiana initiated an action to recoup any amounts that had been paid.   Lollar Decl. ¶ 10.

Under the current schedule, the parties would need to issue deposition notices and subpoenas to begin taking depositions and working on expert disclosures in July -- well before the majority of the responsive documents will have been produced.

a.   <u>Discovery From HHS</u>.   HHS has adopted procedures for responding to subpoenas and other requests for testimony and documents after the Supreme Court decision *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 71 S. Ct. 416, 95 L. Ed. 417 (1951).   *U.S. ex rel. Pogue v. Diabetes Treatment Centers of America*, 474 F. Supp. 2d 75, 79 (D.D.C. 2007).   Under HHS's Touhy regulations, "[n]o employee or former employee" of HHS "may provide testimony or produce

11

documents in any proceedings to which this part applies concerning information acquired in the course of performing official duties or because of the person's official relationship with the Department unless authorized by the Agency head" pursuant to the process set forth in the *Touhy* regulations, and upon the Agency head's determination "that compliance with the request would promote the objectives of the Department." 45 C.F.R. § 2.3.

The *Touhy* process is onerous.  A subpoena to HHS must be referred to the Office of the General Counsel of HHS, which determines if the subpoena is legally sufficient, if the subpoena was properly served, and if the tribunal has jurisdiction over the Department.  45 CFR § 2.5.  If the Office of the General Counsel determines the subpoena is legally sufficient and was properly served, the terms of the subpoena shall be complied with unless affirmative action is taken by the Department to modify or quash the subpoena.  *Id.*  To obtain testimony from HHS, a party must submit a letter addressed to the agency head stating the nature of the requested testimony, why the information is unavailable by any other means, and why the testimony would be in the interest of DHHS or the Government.  45 CFR § 2.4.

Undersigned counsel collectively have litigated three dozen or more FCA cases, many of which have involved extensive discovery from federal agencies, including HHS.  Based on counsel's experience and discussions with HHS in this case, there is virtually no chance that HHS will be able to respond to any subpoena and *Touhy* request sufficiently in advance of the current September 30, 2022 discovery cut-off for the parties to be able to take any follow-up discovery, such as depositions, based on the documents received from HHS.  In addition, HHS has stated that it intends to withhold large volumes of responsive documents based on its assertion of deliberative process privilege.  Lollar Decl ¶ 4. Defendants and HHS are meeting and conferring about HHS's assertion of the privilege, but if they cannot agree, this dispute will result in motions practice,

providing another reason to extend the schedule to permit time for the meet and confer, and potential motions briefing, to occur.

This is important because discovery from the federal government is essential in any FCA case because the plaintiff must prove that the alleged fraud was material to the federal government's payment decision. *See, e.g., Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 178, 195 (2016); *U.S. ex rel. Harman v. Trinity Indus. Inc.*, 872 F.3d 645, 660-61 (5th Cir. 2017) (internal citations omitted); *U.S. v. Paramedics Plus LLC*, Civ. A. No. 4:14-CV-00203, 2018 WL 620776 at *6 (E.D. Tex. Jan. 30, 2018) ("After a review of . . . *Escobar*, the Court finds that allowing discovery relating to the Government's continued payment after discovery of [an alleged non-compliance] is [permissible],); *see also U.S. v. Gilead Scis., Inc.*, No. aa-CV-00941, 2019 WL 5722618 at *8 (N.D. Cal. Nov. 5, 2019) (Where materiality is at issue, "discovery into 'exactly what the government knew and when' cannot be avoided[,]" which in this case will "likely entail *extensive* discovery into government witnesses and documents by either or both [relators] and [defendant]." (emphasis added)).).

Materiality, in turn, requires an analysis of what the government actually did upon learning of the alleged fraud. *See Universal Health Servs.*, 579 U.S. at 176, 178, 195 ("[I]f the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material[;]" "if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material."); *Harman*, 872 F.3d at 663 ("[C]ontinued payment by the federal government after it learns of the alleged fraud substantially increases the burden on the [plaintiff] in establishing materiality.").

13

As discussed in greater detail in Defendants' motion to compel, there are substantial grounds to believe that CMS *disagreed* with the determinations by Texas and Louisiana that Affiliate Defendants were not qualified Medicaid providers. (Ex. H, Letter from Vikki Wachino, Director, CMS to Gary Jessee, Associate Commissioner, Texas Medicaid/CHIP, at 1-2 (Aug. 11, 2016) ("We are unaware of any basis for Texas to terminate PPGC's provider agreements [with PPGC], which would be consistent with [the] limited reasons for excluding providers from Medicaid participation."); Ex. I, Letter from Vikki Wachino, Director, CMS to Jen Steele, Medicaid Director, Louisiana Department of Health and Hospitals, at 1-2 (Aug. 11, 2016) ("We are unaware of any basis for Louisiana to terminate PPGC's provider agreements [with PPGC], which would be consistent with [the] limited reasons for excluding providers from Medicaid participation."). Defendants must be permitted to probe these issues in discovery.

b. Discovery From the States of Texas and Louisiana. Defendants cannot defend this lawsuit without critically important discovery from Texas and Louisiana. Although Texas terminated Affiliate Defendants from Medicaid, it voluntarily granted Affiliate Defendants a grace period, allowing them to continue to participate in Medicaid after the Fifth Circuit's 2020 decision. And Texas *never* issued an administrative recoupment action, or even made a demand for repayment of the monies Affiliate Defendants received under the district court's injunction. Discovery regarding Texas' reasons for granting the grace period and declining to request repayment are relevant to both scienter and materiality. If, for example, the Texas Health and Human Services Commission did not believe it could recoup payments made under the injunctions, that would support Affiliate Defendants' defense that they acted based on an objectively reasonable belief that repayment was not required. Similarly, if Texas HHS decided not to request repayment because they believed that Affiliate Defendants were properly reimbursed for Medicaid

14

claims submitted under the injunction for the medical services provided to Texas residents (given that those services would have been provided by another Medicaid provider and paid for by Texas in the absence of the injunction), that is relevant to materiality.[4]  Discovery from Louisiana is also important to establish that PPGC *remains* a qualified Medicaid provider in that State under the district court injunction, which the district court declined to lift after the Fifth Circuit's decision in the Texas matter.  In addition, as Justice Thomas explained in *Escobar*, how the States treated other Medicaid providers is important evidence regarding materiality.  *Universal Health Services, Inc.*, 579 U.S. at 194-95.

It is essential that Defendants be permitted to take discovery from HHS, Texas, and Louisiana when facing the FCA's "essentially punitive," regime of treble damages and per-claim penalties.  *See Vermont Agency of Natural Resources v. U.S. ex rel. Stevens*, 529 U.S. 765, 784-85 (2000); *see also U.S. ex rel. Sheldon v. Allergan Sales, LLC*, 24 F.4th 340, 350 (4th Cir. 2022) ("Such clarity in regulation is essential to protections provided by the Due Process Clause . . . especially when, as here, defendants are faced with damages that are essentially punitive in nature." (internal citations and quotations omitted)).  The compressed discovery period in the Court's scheduling order will significantly impede Affiliate Defendants' ability to take the discovery needed to mount an effective defense.  Defendants are doing their best to press for timely and complete discovery responses, but the reality is that obtaining discovery from government agencies takes time.  Even if Defendants successfully move to compel discovery,[5] the agencies must identify and collect relevant documents (including custodial data), which may or may not be

---

[4] This is true irrespective of whether there is a materiality element under the Texas Medicaid Fraud Prevention Act because the Court relied on Texas' decisions in holding that Relator sufficiently pled materiality under the *federal* FCA.

[5] If the schedule is not extended, Defendants anticipate that the Court will be forced to adjudicate numerous motions to compel regarding the sufficiency and timeliness of discovery responses.

US 171936185v15

archived, search and review those documents and other data, and produce responsive materials. Defendants must then have enough time to review that data to take meaningful depositions or issue follow-up discovery requests.  It is simply not possible to accomplish all of this in a matter of mere months.

  C. <u>Defendants' Responses to Discovery</u>.  Defendants will respond in writing to the Relator's and Texas's document requests and interrogatories within the 30-day deadline required under the Federal Rules, such that Defendants responses will be served between June 27 and mid-July 2022.  Lollar Decl. ¶ 12; Godesky Decl. ¶ 8.  While they are also working diligently to collect, review, and log responsive documents, Defendants will need to produce documents on a rolling basis.  Although it is still too early to determine a date certain by which their respective productions will be complete, Defendants anticipate that they will likely need at least several months to review many thousands of documents.  Lollar Decl. ¶ 12; Godesky Decl. ¶ 8.  Given the scope of the issues raised in the Relator's and Texas's discovery requests, and the more-than-decade-long period at issue, a several-month rolling production is reasonable and appropriate.  *See Lewis v. E. Baton Rouge Par.*, 2018 WL 2921104, at \*5 (M.D. La. June 11, 2018) ("Rule 34 clearly distinguishes between the deadline to provide a written response, including any objections, from the deadline to actually produce (or permit inspection) of documents or ESI if additional time is needed from the provision of the written response."); *see also Sura v. Zimmer, Inc.*, 768 F. App'x 58, 60 (2d Cir. 2019) (Rule 34 "requires a written response to document requests within 30 days, but does not specify a specific time for documents to be produced.").

  In addition, there is a dispute regarding the terms of the Protective Order Regarding Confidential Information to be filed with the Court (Dkts. 101, 103, 104) and the parties are still negotiating the terms of a Stipulation and Proposed Order Regarding the Production of

Electronically Stored Information and Hard Copy Documents.  Lollar Decl. ¶ 14.  Document productions cannot begin before these Orders are entered by the Court.

### 3.   The Current Discovery Period Is Half the Length of the Average Discovery Period in this Court and in False Claims Act Cases in this Circuit

For purposes of comparison, Defendants determined that the average discovery period for cases in this Court and for FCA cases in this Circuit is significantly longer than the schedule set in this case.  Lollar Decl. at ¶¶ 15, 16.  Based on Defendants' review of the public record, the average discovery period in this Court is approximately eight and one-half months.  *Id.* ¶ 15.  Review of scheduling orders issued in FCA cases by district courts in the Fifth Circuit since the *Escobar* opinion demonstrate that the average discovery period in FCA cases is approximately nine months, while many courts permit longer periods for discovery, and three in this District have set discovery for 15.5 months.  *Id.* ¶¶ 16, 17 (citing *U.S. v. Healthcare Assocs, of Tex. LLC*, Case No. 3:19-cv-2486 (N.D.T.X.) (discovery period of 15.5 months, from January 20, 2022 to May 14, 2023); *U.S. ex rel. Grynberg Prod. Corp. v. Kinder Morgan CO2 Co.*, Case No. 3:18-CV-1775 (N.D.T.X.) (discovery period of 15.5 months, from February 19, 2020 to June 9, 2021); *U.S. ex rel. Beck v. St. Joseph Health Sys.*, Case No. 5:17-CV-052 (N.D.T.X.) (discovery period of 15.5 months, from December 16, 2019 to April 12, 2021)).  Undersigned counsel has been involved in FCA cases where discovery has stretched on for significantly longer than that, particularly where it has been necessary to navigate *Touhy* regulations in seeking third-party discovery from the federal government.  There is no reason to adopt a significantly shorter discovery period in this case.

### 4.   Lead Counsel for the Planned Parenthood Affiliates and Planned Parenthood Federation of America, Inc. Have Conflicts with the Current Trial Date

Under the Scheduling Order, trial in this matter will begin during the week of February 27, 2023.  [Dkt. 72] at 2.  The parties jointly stated that they expect trial will last ten trial days, which

would mean that trial would end sometime in mid-March 2023. [Dkt. 56]. However, lead outside counsel for Defendants are not available on that date:

- Lead counsel for PPFA is scheduled for a February 20, 2023 jury trial in *Gottwald v. Sebert*, Case No. 653118/2014 (N. Y. Sup. Ct.). The case has been pending for nearly eight years and the trial date was long-ago scheduled. Godesky Decl. ¶ 9. Trial is expected to last through the end of March 2023. *Id.*

- Planned Parenthood Affiliates and two other members of the Planned Parenthood Affiliates outside-counsel team are scheduled for a jury trial in another FCA case on March 20, 2023 in *U.S. ex rel. Romero v. AECOM*, 16-cv-15092 (E.D. La.). Lollar Decl. ¶ 18. A final pretrial conference in *Romero* is scheduled for March 6, 2023. *Id.*

Defendants would suffer significant prejudice if lead counsel for PPFA is unable to attend the trial in this matter, and if lead counsel for the Affiliate Defendants and the other members of the team are required to prepare for two significant FCA trials back-to-back.

### 5.      Extending the Schedule Will Not Prejudice Relator or Texas

Defendants are aware of no prejudice to the Plaintiffs that would result from the modest extension they seek here. When asked during the meet and confer if they contend that Texas or Relator would suffer any prejudice if Defendants' motion to extend the schedule by four months is granted, counsel for Texas stated that delay is unnecessary and expressed a concern since Texas is seeking to recover taxpayer dollars in this case. Lollar Decl. ¶ 11. Relator's counsel did not have anything to add regarding prejudice. *Id.*

But "delay alone" does not justify denial of a motion. *See Mayeaux v. Louisiana Health Service and Indem. Co.*, 376 F.3d 420 (5th Cir. 2004) ("[W]e know that delay alone is an insufficient basis for denial of leave to amend."); *Cruz v. Hauck*, 762 F.2d 1230, 1237 (5th Cir. 1985) (granting motion to reopen case and stating "we do not believe that the fact of delay alone justifies denial of the motion."); *Yeates v. Marsden*, No. 4:98-CV-685-E, 2001 WL 1645191, at *2 (N.D. Tex. Dec. 19, 2001) (In context of excusing default, "[p]rejudice may not be found from

18

delay alone, but rather from more concrete barriers such as loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion."); *see also Cut-Heal Animal Care Products, Inc. v. Agri-Sales Assocs., Inc.*, No. 3:07-CV-1816-D, 2009 WL 305994 (N.D. Tex. Feb. 9, 2009) (granting motion to modify scheduling order and extend time and noting that "the court can grant a trial continuance, if necessary, to cure any prejudice" to the nonmovant).  To show prejudice, nonmovants must demonstrate "that [granting the motion would] result[] in unfair surprise or prejudice."  *Cruz*, 762 F.2d. at 1237–38.  Here, Defendants have moved for a modest extension of discovery more than three months before the close of discovery.  Plaintiffs cannot reasonably claim that they are surprised, nor that they are prejudiced by an extension of time for discovery.  Nor will an extension to conduct discovery burden this Court.

For the reasons discussed above, Defendants respectfully request the Court extend the schedule by four months.  A table comparing this Court's discovery schedule to the newly proposed discovery schedule is included in Exhibit N.  This extension is not sought for the purposes of delay, but rather to allow Defendants to take the discovery needed to mount an effective defense to serious claims of fraud, while promoting judicial economy by reducing the number of discovery disputes.

## **CONCLUSION**

WHEREFORE, Defendants respectfully request a four month extension to the schedule. A proposed Order is attached.

US 171936185v15

Dated:  June 27, 2022,                          Respectfully submitted,

                                                ARNOLD & PORTER KAYE SCHOLER
                                                LLP

                                                By:     */s/ Tirzah S. Lollar*
                                                        Craig D. Margolis
                                                        Craig.Margolis@arnoldporter.com
                                                        Tirzah Lollar
                                                        Tirzah.Lollar@arnoldporter.com
                                                        Christian Sheehan
                                                        Christian.Sheehan@arnoldporter.com
                                                        601 Massachusetts Ave, NW
                                                        Washington, DC 20001-3743
                                                        Telephone: +1 202.942.6127
                                                        Fax: +1 202.942.5999

                                                        Christopher M. Odell
                                                        Texas State Bar No. 24037205
                                                        Christopher.Odell@arnoldporter.com
                                                        700 Louisiana Street, Suite 4000
                                                        Houston, TX 77002-2755
                                                        Telephone: +1 713.576.2400
                                                        Fax: +1 713.576.2499

                                                        Ryan Patrick Brown
                                                        Texas State Bar No. 24073967
                                                        brown@blackburnbrownlaw.com
                                                        1222 S. Fillmore
                                                        Amarillo, TX 79101
                                                        Tel: (806) 371-8333
                                                        Fax: (806) 350-7716

                                                        *Attorneys for Defendants Planned*
                                                        *Parenthood Gulf Coast, Inc., Planned*
                                                        *Parenthood Greater Texas, Inc., Planned*
                                                        *Parenthood South Texas, Inc., Planned*
                                                        *Parenthood Cameron County, Inc.,*
                                                        *Planned Parenthood San Antonio, Inc.*

US 171936185v15

**O'MELVENY & MYERS LLP**

*/s/ Danny S. Ashby*
Danny S. Ashby
Texas State Bar No. 01370960
     dashby@omm.com
Justin R. Chapa
Texas State Bar No. 24074019
     jchapa@omm.com
2501 N. Harwood Street
Suite 1700
Dallas, TX 75201
T: (972) 360-1900
F: (972) 360-1901

Leah Godesky (*pro hac vice*)
     lgodesky@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
T: (310) 553-6700
F: (310) 246-6779

*Attorneys for Defendant Planned Parenthood Federation of America, Inc.*

21

A&P Draft
June 27, 2022

Attorney-Client Privilege
Attorney Work Product

## <u>CERTIFICATE OF CONFERENCE</u>

On June 21, 2022, in accordance with Local Rule 7.1(b), counsel for Defendants certify that they conferred with counsel for Relator and counsel for Texas regarding the relief requested in this motion. Several attorneys for Texas participated, but Raymond Winter from the Office of the Texas Attorney General spoke for Texas. Relator's counsel Heather Hacker participated in the conference. Mr. Winter and Ms. Hacker stated that Relator and Texas are opposed.

*/s/ Tirzah S. Lollar*
Tirzah S. Lollar

US 171936185v15

A&P Draft                                                                  Attorney-Client Privilege
June 14, 2022                                                              Attorney Work Product

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on June 27, 2022, the foregoing document was electronically filed with

the Clerk of Court using CM/ECF.


                                          */s/ Tirzah S. Lollar*
                                          Tirzah S. Lollar