# EXHIBIT G

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Northern District of Texas

| | | |
|---|---|---|
| U.S. ex rel. ALEX DOE et al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   NO. 2:21-CV-00022-Z |
| Planned Parenthood Federation of America, Inc., et al. | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:          Attorney General James D. Caldwell

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: described in Attachment A

| Place: 601 Massachusetts Ave. NW Washington, DC 20001 | Date and Time: 07/11/2022 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:          06/20/2022

*CLERK OF COURT*

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*

Planned Parenthood Gulf Coast, Inc.          , who issues or requests this subpoena, are:

Tirzah Lollar, 601 Massachusetts Ave. NW, Washington, DC 20001, 202-942-6199, tirzah.lollar@arnoldporter.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Case 2:21-cv-00022-Z   Document 107-8   Filed 06/27/22   Page 3 of 45   PageID 1852

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c)  Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d)  Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e)  Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g)  Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**ATTACHMENT A TO SUBPOENA TO STATE OF LOUISISANA**

**<u>DEFINITIONS AND TERMS</u>**

1.      The terms "Louisiana," "you," and "your" refer to the government of the State of Louisiana; any agency, office, division, or department of the Louisiana Government, including but not limited to the Louisiana Department of Health, Louisiana Office of State Inspector General, and Louisiana Attorney General's Office; and any attorneys, agents, representatives (including any auditors or investigators hired by the Louisiana Government) acting or purporting to act on its behalf.

2.      The term "Texas" "refers to the government of the State of Texas; any agency, office, division, or department of the Texas Government, including but not limited to the Texas Health & Human Services Commission, Texas Office of the Inspector General, Texas Attorney General's Office, Texas Department of State Health Services, and the Texas Department of Public Safety; and any attorneys, agents, representatives (including any auditors or investigators hired by the Texas Government) acting or purporting to act on its behalf.

3.      The term "Relator" refers to Relator Alex Doe, his agents, legal representatives, or anyone purporting to act on the named Relator's behalf.

4.      The term "Planned Parenthood Defendants" refers to Defendants Planned Parenthood Gulf Coast, Inc. ("PPGC"), Planned Parenthood of Greater Texas, Inc. ("PPGT"), Planned Parenthood South Texas, Inc. ("PPST"), Planned Parenthood Cameron County, Inc. ("PP Cameron County"), Planned Parenthood San Antonio,

Inc. ("PP San Antonio") and Planned Parenthood Federation of America, Inc. ("PPFA").

5.   The term "Affiliate Defendants" refers to Defendants PPGC, PPGT, PPST, PP Cameron County, and PP San Antonio.

6.   The term "Relator's Complaint" refers to Relator's Complaint filed on February 5, 2021.

7.   The term "Texas's Complaint" refers to Texas's Complaint filed on January 6, 2022.

8.   The term "Center for Medical Progress" refers to the entity headquartered in Irvine, California, including all predecessors, subsidiaries, parents and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, and others acting on its behalf.

9.   The term "Center for Medical Progress videos" refers to videos related to any Planned Parenthood Defendant or other Planned Parenthood entity created by the Center for Medical Progress and/or currently or previously posted to the website of the Center for Medical Progress and/or Center for Medical Progress's YouTube Channel from 2013 to the present.

10.  The term "David Daleiden" refers to the founder and president of the Center for Medical Progress, including but not limited to any agents, representatives, employees, consultants, attorneys, or others acting on his behalf.

11.  The terms "Person" and "Persons" include without limitation, natural persons, corporations, associations, unincorporated associations, partnerships, and any other governmental or non-governmental entity.

2

12.     The term "Government" refers to the government of the United States of America; any agency, office, or military branch of the U.S. Government; and any attorneys, agents, representatives (including any auditors or investigators hired by the U.S. Government) acting or purporting to act on its behalf.

13.     The term "Medicaid" refers to the federal Centers for Medicare & Medicaid Services administered Medicaid program and any officers, officials, employees, agents, attorneys, or other representatives acting or purporting to act on its behalf, including any Managed Care Organization.

14.     The term "Texas Medicaid" refers to the State of Texas administered Medicaid program and any officers, officials, employees, agents, attorneys, or other representatives acting or purporting to act on its behalf, including any Managed Care Organization.

15.     The term "Louisiana Medicaid" refers to the State of Louisiana administered Medicaid program and any officers, officials, employees, agents, attorneys, or other representatives acting or purporting to act on its behalf, including any Managed Care Organization.

16.     The term "generally accepted medical standards" has the meaning used in the Final Notice of Termination of Enrollment dated December 20, 2016.  Relator's Compl. [Dkt. 2] Ex. C.

17.     The term "fetal tissue procurement" and has the meaning used in the Final Notice of Termination of Enrollment issued by the Office of Inspector General, Texas Health & Human Service Commission dated December 20, 2016.  Relator's Compl. [Dkt. 2] Ex. C (referring to Planned Parenthood's alleged "policy of agreeing to

3

procure fetal tissue, potentially for valuable consideration, even it means altering the timing or method of abortion" and Planned Parenthood's alleged "misrepresentation about [its] activity related to fetal tissue procurements").

18.   The term "Medicaid's free choice of provider requirement" refers to the requirement for a state plan to allow a beneficiary to obtain Medicaid services from any institution, agency, pharmacy, person, or organization, including family planning services, that is qualified to furnish services and willing to furnish them to that particular beneficiary. *See* 42 CFR § 431.51.

19.   The term "including" shall mean "including, but not limited to."

20.   The term "overpayment" has the meaning as used in Paragraphs 17 and 40 of the Texas Complaint.

21.   The term "Grace Period" refers to the thirty-day period granted by Texas Health and Human Services Commission to Planned Parenthood through February 3, 2021, referenced in Texas's Complaint.  Tex. Compl. ¶ 6.

22.   The term "the Media" refers to any news organization or mass media organization, including print, internet, television, radio, or other media.

23.   "Documents" as used herein shall be construed to the full extent of Fed. R. Civ. P. 34, and shall include every original and every non-identical copy of any original of all mechanically written, handwritten, typed or printed material, electronically stored data, microfilm, microfiche, sound recordings, films, photographs, videotapes, slides, and other physical objects or tangible things of every kind and description containing stored information, including but not limited to, transcripts, letters, correspondence, notes, memoranda, tapes, records, telegrams, electronic

4

mail, facsimiles, periodicals, pamphlets, brochures, circulars, advertisements, leaflets, reports, research studies, test data, working papers, drawings, maps, sketches, diagrams, blueprints, graphs, charts, diaries, logs, manuals, agreements, contracts, rough drafts, analyses, ledgers, inventories, financial information, bank records, receipts, books of account, understandings, minutes of meetings, minute books, resolutions, assignments, computer printouts, purchase orders, invoices, bills of lading, written memoranda or notes of oral communications, and any other tangible thing of whatever nature.

24.   The terms "relate to," "related to," "relating to," and "concerning" shall mean mentioning, comprising, consisting, indicating, describing, reflecting, referring, evidencing, regarding, pertaining to, showing, discussing, connected with, memorializing, or involving in any way whatsoever the subject matter of the request, including having a legal, factual or logical connection, relationship, correlation, or association with the subject matter of the request. A document may "relate to" or an individual or entity without specifically mentioning or discussing that individual or entity by name.

25.   The terms "communication" and "communications" shall mean all meetings, interviews, conversations, conferences, discussions, correspondence, messages, telegrams, telefax, electronic mail, mailgrams, telephone conversations, and all oral, written and electronic expressions, or other occurrences whereby thoughts, opinions, information, or data are transmitted between two or more persons.

26.   The terms "communication" and "communications" shall mean all meetings, interviews, conversations, conferences, discussions, correspondence, messages,

telegrams, telefax, electronic mail, mailgrams, telephone conversations, and all oral, written, and electronic expressions, or other occurrences whereby thoughts, opinions, information, or data are transmitted between two or more persons.

## **INSTRUCTIONS**

1.    Furnish all documents and things within the possession, custody, or control of Louisiana that are responsive to these Requests, including information or items in the possession of their assignees, agents, legal representatives, employees, representatives, attorneys, other personnel thereof, or anyone purporting to act on behalf of Louisiana.

2.    If an objection is made to any request herein, all documents and things responsive to the request not subject to the objection should be produced. Similarly, if any objection is made to the production of a document, the portion(s) of that document not subject to the objection should be produced with the portion(s) objected to redacted and indicated clearly as such. Otherwise, no communication, document, file, or thing requested should be altered, changed, or modified in any respect. All communications, documents, and files shall be produced in full and unexpurgated form, including all attachments and enclosures either as they are kept in the ordinary course or organized to correspond with those requests.

3.    No communication, document, file, or thing requested should be disposed of or destroyed.

4.    If you object to any Document Request, or otherwise withhold responsive information because of a claim of privilege, work product, or other grounds:

a.       identify the Document Request to which objection or claim of privilege is

6

made;

    b.    identify every document withheld; the author, the date of creation, and all recipients;

    c.    identify all grounds for objection or assertion of privilege, and set forth the factual basis for assertion of the objection or claim of privilege; and

    d.    identify the information withheld by description of the topic or subject matter, the date of the communication, and the participants.

5. Unless otherwise specified, the relevant time period for these Document Requests is 2010 to the present.

6. You are under an affirmative duty to supplement your responses to these Document Requests with documents you may acquire or discover after completing your production, if you learn your response is in some material respect incomplete or incorrect and the additional or corrective information has not been made known to Planned Parenthood.

## DOCUMENTS TO BE PRODUCED

1. All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to PPGC's Louisiana Medicaid status from 2010 to the present including but not limited to:

    a.    documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to whether PPGC remains a Louisiana Medicaid Provider after November 23, 2020; and

    b.    documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to whether PPGC remains a Louisiana Medicaid Provider after January 20, 2022.

2. All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to Louisiana's consideration and decision to terminate any Planned Parenthood Defendant from Louisiana Medicaid based on grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about August 3, 2015 (attached as Ex. A) or grounds asserted in the termination notices issued to Planned Parenthood by the

Louisiana Department of Health and Hospitals on or about September 15, 2015 (attached as Ex. B) including but not limited to:

    a.  documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to the August 11, 2016 letter from Vikki Wachino, Director, Centers for Medicare & Medicaid Services, addressed to Jen Steele, Medicaid Director, State of Louisiana, Department of Health and Hospitals (attached as Ex. C).and Louisiana's response to that letter on September 27, 2016 (attached as Ex. D); and

    b.  documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to the basis for Louisiana's termination/revocation of the Louisiana Medicaid Provider Agreements with PPGC, including but not limited to the alleged "mispresentations" by PPGC referenced in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about September 15, 2015 (attached as Ex. B).

3.    Documents sufficient to identify the instances when Louisiana "terminated other types of providers for similar violations of these provisions" as referenced in Louisiana's response to Question No. 2 in its September 27, 2016 response (attached as Ex. D).  Your response should include for each termination, documents sufficient to identify the provider that was terminated, the date of the termination, the reason for the termination, the date of the conduct that resulted in the termination, whether the provider was asked or obligated to return any amounts reimbursed under Medicaid or Louisiana Medicaid, whether the provider did return any amounts reimbursed under Medicaid or Louisiana Medicaid, and the amount of any reimbursements that were returned.

4.    All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about August 3, 2015 (Ex. A).

5.    All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to Louisiana's decision to rescind the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about August 3, 2015 (Ex. A).

6.    All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about September 15, 2015 (Ex. B).

7.    All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to Texas's consideration and decision to terminate any Planned Parenthood Defendant from Texas Medicaid based on grounds asserted in the termination notices issued to Planned Parenthood by the Office of Inspector

General, Texas Health & Human Services Commission on or about October 19, 2015 and December 20, 2016 (Relator's Compl. [Dkt. 2] Exs. B, C).

8.  All documents relating to or reflecting communications with the Center for Medical Progress and/or David Daleiden from 2013 to present.

9.  All documents related to your decision to not intervene in Relator Doe's case.

10. All documents relating to or reflecting communications with any staff, attorneys, or investigators for Louisiana regarding the matters alleged Relator's Complaint, including but not limited to (i) information about any Planned Parenthood Defendant provided to the State of Louisiana by Relator, (ii) the termination of any Planned Parenthood Defendant from Louisiana Medicaid, and (iii) the litigation initiated by any Planned Parenthood Defendant regarding its potential termination from Medicaid, Texas Medicaid, and/or Louisiana Medicaid.

11. All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to any fetal tissue procurement or donation in which any Medicaid, Texas Medicaid, or Louisiana Medicaid provider unrelated to Planned Parenthood participated or facilitated or agreed to participate or facilitate.

12. All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to the participation or facilitation or alleged participation or facilitation of any Planned Parenthood Defendant in any fetal tissue procurement or donation.

13. All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to whether participation or an agreement to participate in any fetal tissue procurement or donation renders a Medicaid provider unqualified to provide service under Medicaid, Texas Medicaid, or Louisiana Medicaid.

14. All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to federal court injunctions and/or the effects of federal court injunctions related to the potential termination of any Planned Parenthood Defendant's participation in Medicaid, Texas Medicaid, and/or Louisiana Medicaid.

15. All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to state court injunctions and/or the effects of a state court injunction related to the potential termination of any Planned Parenthood Defendant's participation in Medicaid, Texas Medicaid, and/or Louisiana Medicaid.

16. All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to whether termination of PPGC violated Medicaid's free choice of provider requirement and why or why not.

17.     All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to the continued participation of any Planned Parenthood Defendant in Medicaid, Texas Medicaid, and/or Louisiana Medicaid.

18.     All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to whether any Planned Parenthood Defendant had an obligation to repay any amount paid by Medicaid, Texas Medicaid, and/or Louisiana Medicaid to any Planned Parenthood Affiliate.

19.     All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to whether Medicaid, Texas Medicaid, and/or Louisiana Medicaid could or should seek recoupment of amounts reimbursed to any Planned Parenthood Defendant from 2010 to the present.

20.     All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to termination by the United States, Texas, or Louisiana of any Medicaid provider unrelated to Planned Parenthood for violations of laws or regulations related to medical research, fetal tissue procurement or donation, or an agreement to engage in fetal tissue procurement or donation, including but not limited to whether any terminated federal, Texas, or Louisiana Medicaid provider was asked or obligated to return amounts reimbursed under federal, Texas, or Louisiana Medicaid.

21.     All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to termination by the United States, Texas, and/or Louisiana of any Medicaid, Texas Medicaid, or Louisiana Medicaid provider on basis that the entity was not a qualified provider, including but not limited to whether any terminated Medicaid provider was asked or obligated to return amounts reimbursed under Medicaid.

22.     All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to your understanding of relationships between affiliated companies under Medicaid, Texas Medicaid, or Louisiana Medicaid and any laws, regulations, policies, or guidance regarding whether and how a finding that one company is not a qualified provider may affect an affiliated company's qualifications as a provider.

23.     All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to your views regarding whether a payment, to which a Medicaid provider is entitled at the time of payment, can become an overpayment based on a subsequent change in law and/or a judicial decision. *See, e.g.*, Centers for Medicare & Medicaid Services, Medicare Program; Reporting and Returning of Overpayments, 81 Fed. Reg. 7653, 7658 (Feb. 12, 2016) ("We agree that payments that were proper at the time the payment was made do not become overpayments at a later time due to changes in law or regulation, unless otherwise required by law.").

24.     All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to any Planned Parenthood Affiliate's qualifications to provide services under Medicaid, Texas, Medicaid, and/or Louisiana Medicaid.

25.     All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to information provided by you to the U.S. Congress related to any Planned Parenthood Defendant from 2015 to present regarding any Planned Parenthood Defendant's qualifications to provide service under Medicaid, Texas Medicaid, and/or Louisiana Medicaid; any Planned Parenthood Defendant's termination in Texas and/or Louisiana; continued participation of any Planned Parenthood Defendant in Louisiana Medicaid; whether participation in fetal tissue procurement or donation or agreeing to participate in fetal tissue procurement or donation renders a Medicaid provider unqualified to provide service under Medicaid, Texas Medicaid, or Louisiana Medicaid; and whether Medicaid, Texas Medicaid, and/or Louisiana Medicaid could or should seek recoupment for amounts reimbursed to any Planned Parenthood Defendant from 2010 to the present.

26.     All communications between Louisiana and the Media relating to any Planned Parenthood Defendant's qualifications to provide service under Medicaid, Texas Medicaid, and/or Louisiana Medicaid; any Planned Parenthood Defendant's termination in Texas and/or Louisiana; continued participation of any Planned Parenthood Defendant in Louisiana Medicaid; whether participation in fetal tissue procurement or donation or an agreement to participate in fetal tissue procurement or donation renders a Medicaid provider unqualified to provide service under Medicaid, Texas Medicaid, or Louisiana Medicaid; and whether Medicaid, Texas Medicaid, and/or Louisiana Medicaid could or should seek recoupment for amounts reimbursed to any Planned Parenthood Defendant from 2010 to the present.

27.     All documents or videos (both edited and unedited) provided to Louisiana by Relator, the Center for Medical Progress, or third parties acting on Relator's behalf, including staff, attorneys, or investigators.

28.     All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to Louisiana's evaluation of the Center for Medical Progress videos, including but not limited to your response(s) to those videos and any public official or other public agency's response(s) to those videos.

29.   All communications between Louisiana and the Media relating to the Center for Medical Progress videos.

30.   All communications between Louisiana and members of the United States Congress (including their staff) related to the Center for Medical Progress videos.

31.   All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to allegations that Planned Parenthood submitted claims to the United States, Texas, or Louisiana in violation of the Louisiana Medical Assistance Programs Integrity Law based on grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about August 3, 2015 (Ex. A) or grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about September 15, 2015 (Ex. B).

32.   Documents sufficient to identify the Louisiana Medicaid claims for which Louisiana Medicaid paid any Planned Parenthood Defendant from 2010 to present, for which (a) you have concluded that the claim was submitted in violation of the Louisiana Medical Assistance Programs Integrity Law based on grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about August 3, 2015 (Ex. A) or grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about September 15, 2015 (Ex. B); and/or (b) you believe that the claim was submitted in violation of the Louisiana Medical Assistance Programs Integrity Law based on grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about August 3, 2015 (Ex. A) or grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about September 15, 2015 (Ex. B), excluding patient names, patient dates of birth, patient marital status, insured names, insured dates of birth, insured marital status, or other patient information.

33.   Documents sufficient to identify all unpaid Louisiana Medicaid claims that any Planned Parenthood Defendant presented or caused to be presented to Louisiana Medicaid from 2010 to present, for which (a) you have concluded that the claim was submitted in violation of the Louisiana Medical Assistance Programs Integrity Law based on grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about August 3, 2015 (Ex. A) or grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about September 15, 2015 (Ex. B); and/or (b) you believe that the claim was submitted in violation of the Louisiana Medical Assistance Programs Integrity Law based on grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about August 3, 2015 (Ex. A) or grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about September 15, 2015 (Ex. B), excluding patient names, patient dates of birth, patient marital status, insured names, insured dates of birth, insured marital status, or other patient information.

34. Documents sufficient to identify all Medicaid claims for which Medicaid paid any Planned Parenthood Defendant from 2010 to present, for which: (a) you have concluded that the Planned Parenthood Defendant has an obligation to repay the claim(s); and/or (b) you believe the Planned Parenthood Defendant has an obligation to repay the claim(s), excluding patient names, patient dates of birth, patient marital status, insured names, insured dates of birth, insured marital status, or other patient information.

35. Documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to the materiality of the alleged participation of any Medicaid, Texas Medicaid, or Louisiana Medicaid provider in fetal tissue procurement or donation or agreement to participate in fetal tissue procurement or donation to the payment of claims to that provider under Medicaid, Texas Medicaid, or Louisiana Medicaid.

\*   \*   \*

# Exhibit A

Bobby Jindal
GOVERNOR

Kathy H. Kliebert
SECRETARY

# State of Louisiana

## Department of Health and Hospitals
### Bureau of Legal Services

#### BUREAU OF LEGAL SERVICES — FAX TRANSMITTAL

| DATE: | 8·3·15 | | |
|---|---|---|---|
| TO: | Melaney Linton | | |
| | | | |
| FROM: | Steve Russo | | |
| RE: | Planned Parenthood | | |
| FAX NUMBERS: | 713 535 2618 | | |
| | | | |

**COMMENTS:**

**PAGES:** (INCLUDING COVER SHEET)   9

### PRIVACY AND CONFIDENTIALITY WARNING:

This facsimile is from an attorney and may contain information that is confidential or legally privileged. Further, this facsimile may contain Protected Health Information (PHI), Individually Identifiable Health Information (IIHI) and other information which is protected by law.

This message is only for the use of the intended recipient. Use by an erroneous recipient or any other unauthorized individual or entity of information contained in, or attached to, this or any other facsimile message may result in legal action.

If you are not the intended recipient, you are hereby notified any review, disclosure/re-disclosure, copying, storing, distributing or the taking of action in reliance on the content of this facsimile and any attachments thereto, is strictly prohibited.

If you are not the intended recipient and/or have received this facsimile in error, please (1) immediately advise the sender by telephone that this message has been inadvertently transmitted to you, and (2) destroy the contents of this facsimile and its attachments by deleting any and all electronic copies and any and all hard copies regardless of where they are maintained or stored.

Bobby Jindal
GOVERNOR

Kathy H. Kliebert
SECRETARY

# State of Louisiana
Department of Health and Hospitals
Office of the Secretary

August 3, 2015

Planned Parenthood of Louisiana
ATTN: Melaney Linton
4018 Magazine St.
New Orleans, LA 70115

**Certified Mail, Return Receipt Requested (7012 1640 0001 7222 5655)**

Re:     Medicaid Provider Agreement
        Provider Number 91338

Dear Mrs. Linton:

As you are aware, in order to participate in the Louisiana Medicaid Program (Medicaid), providers are required to sign a Medicaid provider agreement with the Louisiana Department of Health and Hospitals (LDHH). Pursuant to La. R.S. 46:437.11, each such provider agreement shall be a voluntary contract between LDHH and the applicable health care provider. According to subsection (D)(1) of the statute, a provider agreement **SHALL** be terminable by either party 30 days after receipt of written notice. In accordance with this statute, please consider this your written notice that LDHH is exercising its right to terminate your provider agreement effective 30 days after your receipt of this notice.

After any and all local, state, or federal investigations of your entity have been concluded, LDHH expressly reserves the right to amend this notice and terminate your provider agreement immediately, and without written notice, if you become the subject of a sanction or of a criminal, civil, or departmental proceeding.

Pursuant to La. R.S. 46:107, you have an opportunity for a hearing at the state level based on this termination of your provider agreement. All final decisions in cases of appeal are rendered by the office of the secretary at the state level and such decisions exhaust your administrative remedy. Your request for an Administrative Appeal must be in writing and must set out the reasons for which you are seeking an appeal and the basis on which you disagree with the department's decision. All requests for an Administrative Appeal must be received within 30 calendar days of receipt of this letter.

August 3, 2015
Page 2

Any such request must be sent to the address below:

Division of Administrative Law – HH Section
P.O. Box 4189
Baton Rouge, Louisiana 70821-4189
Phone: (225) 342-0443
Fax: (225) 219-9823

Please send a copy of any request for appeal to the Bureau of Legal Services at P.O. Box 3836, Baton Rouge, Louisiana 70821, Attention: Stephen Russo.

You may be represented by an attorney or authorized representative at the Administrative Appeal. Your attorney or authorized representative must file a written notice of representation identifying his/her name, address, and telephone number at the address given above.

If you have any questions regarding this correspondence, you may contact Stephen R. Russo, Executive Counsel at 225-342-1128.

Sincerely,

Kathy Kliebert
Secretary

Cc:  Planned Parenthood Gulf Coast (7099 3400 0002 6023 8151)

**Bobby Jindal**
GOVERNOR

**Kathy H. Kliebert**
SECRETARY

# State of Louisiana

Department of Health and Hospitals
Office of the Secretary

August 3, 2015

Planned Parenthood of Houston
ATTN: Melaney Linton
4600 Gulf Fwy.
Houston, TX 77023

**Certified Mail, Return Receipt Requested (7012 1640 0001 7222 5594)**

Re:     Medicaid Provider Agreement
        Provider Number 45802

Dear Mrs. Linton:

As you are aware, in order to participate in the Louisiana Medicaid Program (Medicaid),
providers are required to sign a Medicaid provider agreement with the Louisiana
Department of Health and Hospitals (LDHH). Pursuant to La. R.S. 46:437.11, each such
provider agreement shall be a voluntary contract between LDHH and the applicable
health care provider. According to subsection (D)(1) of the statute, a provider agreement
**SHALL** be terminable by either party 30 days after receipt of written notice. In
accordance with this statute, please consider this your written notice that LDHH is
exercising its right to terminate your provider agreement effective 30 days after your
receipt of this notice.

After any and all local, state, or federal investigations of your entity have been
concluded, LDHH expressly reserves the right to amend this notice and terminate your
provider agreement immediately, and without written notice, if you become the subject of
a sanction or of a criminal, civil, or departmental proceeding.

Pursuant to La. R.S. 46:107, you have an opportunity for a hearing at the state level based
on this termination of your provider agreement. All final decisions in cases of appeal are
rendered by the office of the secretary at the state level and such decisions exhaust your
administrative remedy. Your request for an Administrative Appeal must be in writing
and must set out the reasons for which you are seeking an appeal and the basis on which
you disagree with the department's decision. All requests for an Administrative Appeal
must be received within 30 calendar days of receipt of this letter.

August 3, 2015
Page 2

Any such request must be sent to the address below:

Division of Administrative Law – HH Section
P.O. Box 4189
Baton Rouge, Louisiana 70821-4189
Phone: (225) 342-0443
Fax: (225) 219-9823

Please send a copy of any request for appeal to the Bureau of Legal Services at P.O. Box 3836, Baton Rouge, Louisiana 70821, Attention: Stephen Russo.

You may be represented by an attorney or authorized representative at the Administrative Appeal. Your attorney or authorized representative must file a written notice of representation identifying his/her name, address, and telephone number at the address given above.

If you have any questions regarding this correspondence, you may contact Stephen R. Russo, Executive Counsel at 225-342-1128.

Sincerely,

Kathy Kliebert
Secretary

Cc: Planned Parenthood Gulf Coast (7012 1640 0001 7222 5693)

Bobby Jindal
GOVERNOR

Kathy H. Kliebert
SECRETARY

# State of Louisiana
Department of Health and Hospitals
Office of the Secretary

August 3, 2015

Planned Parenthood
ATTN: Melaney Linton
4018 Magazine St.
New Orleans, LA 70115

## Certified Mail, Return Receipt Requested (7012 1640 0001 7222 5686)

Re:    Medicaid Provider Agreement
       Provider Number 133673

Dear Mrs. Linton:

As you are aware, in order to participate in the Louisiana Medicaid Program (Medicaid), providers are required to sign a Medicaid provider agreement with the Louisiana Department of Health and Hospitals (LDHH). Pursuant to La. R.S. 46:437.11, each such provider agreement shall be a voluntary contract between LDHH and the applicable health care provider. According to subsection (D)(1) of the statute, a provider agreement **SHALL** be terminable by either party 30 days after receipt of written notice. In accordance with this statute, please consider this your written notice that LDHH is exercising its right to terminate your provider agreement effective 30 days after your receipt of this notice.

After any and all local, state, or federal investigations of your entity have been concluded, LDHH expressly reserves the right to amend this notice and terminate your provider agreement immediately, and without written notice, if you become the subject of a sanction or of a criminal, civil, or departmental proceeding.

Pursuant to La. R.S. 46:107, you have an opportunity for a hearing at the state level based on this termination of your provider agreement. All final decisions in cases of appeal are rendered by the office of the secretary at the state level and such decisions exhaust your administrative remedy. Your request for an Administrative Appeal must be in writing and must set out the reasons for which you are seeking an appeal and the basis on which you disagree with the department's decision. All requests for an Administrative Appeal must be received within 30 calendar days of receipt of this letter.

August 3, 2015
Page 2

Any such request must be sent to the address below:

Division of Administrative Law – HH Section
P.O. Box 4189
Baton Rouge, Louisiana 70821-4189
Phone: (225) 342-0443
Fax: (225) 219-9823

Please send a copy of any request for appeal to the Bureau of Legal Services at P.O. Box 3836, Baton Rouge, Louisiana 70821, Attention: Stephen Russo.

You may be represented by an attorney or authorized representative at the Administrative Appeal. Your attorney or authorized representative must file a written notice of representation identifying his/her name, address, and telephone number at the address given above.

If you have any questions regarding this correspondence, you may contact Stephen R. Russo, Executive Counsel at 225-342-1128.

Sincerely,

Kathy Kliebert
Secretary

Cc:  Planned Parenthood Gulf Coast (7012 1640 0001 7222 5679)

**Bobby Jindal**
GOVERNOR

**Kathy H. Kliebert**
SECRETARY

# State of Louisiana

Department of Health and Hospitals
Office of the Secretary

August 3, 2015

Planned Parenthood
ATTN: Melaney Linton
3955 Government Street, Ste. 2
Baton Rouge, LA 70806

## Certified Mail, Return Receipt Requested (7012 1640 0001 7222 5662)

Re:     Medicaid Provider Agreement
        Provider Number 133689

Dear Mrs. Linton:

As you are aware, in order to participate in the Louisiana Medicaid Program (Medicaid), providers are required to sign a Medicaid provider agreement with the Louisiana Department of Health and Hospitals (LDHH). Pursuant to La. R.S. 46:437.11, each such provider agreement shall be a voluntary contract between LDHH and the applicable health care provider. According to subsection (D)(1) of the statute, a provider agreement **SHALL** be terminable by either party 30 days after receipt of written notice. In accordance with this statute, please consider this your written notice that LDHH is exercising its right to terminate your provider agreement effective 30 days after your receipt of this notice.

After any and all local, state, or federal investigations of your entity have been concluded, LDHH expressly reserves the right to amend this notice and terminate your provider agreement immediately, and without written notice, if you become the subject of a sanction or of a criminal, civil, or departmental proceeding.

Pursuant to La. R.S. 46:107, you have an opportunity for a hearing at the state level based on this termination of your provider agreement. All final decisions in cases of appeal are rendered by the office of the secretary at the state level and such decisions exhaust your administrative remedy. Your request for an Administrative Appeal must be in writing and must set out the reasons for which you are seeking an appeal and the basis on which you disagree with the department's decision. All requests for an Administrative Appeal must be received within 30 calendar days of receipt of this letter.

August 3, 2015
Page 2


Any such request must be sent to the address below:

Division of Administrative Law – HH Section
P.O. Box 4189
Baton Rouge, Louisiana 70821-4189
Phone: (225) 342-0443
Fax: (225) 219-9823

Please send a copy of any request for appeal to the Bureau of Legal Services at P.O. Box 3836, Baton Rouge, Louisiana 70821, Attention: Stephen Russo.

You may be represented by an attorney or authorized representative at the Administrative Appeal. Your attorney or authorized representative must file a written notice of representation identifying his/her name, address, and telephone number at the address given above.

If you have any questions regarding this correspondence, you may contact Stephen R. Russo, Executive Counsel at 225-342-1128.

Sincerely,

Kathy Kliebert
Secretary

Cc:  Planned Parenthood Gulf Coast (7012 1640 0001 7222 5549)

Exhibit B



**Bobby Jindal**
GOVERNOR

**Kathy H. Kliebert**
SECRETARY

**State of Louisiana**
Department of Health and Hospitals
Office of the Secretary

September 15, 2015

Planned Parenthood
ATTN: Melaney Linton
4018 Magazine Street
New Orleans, LA 70115

**Certified Mail, Return Receipt Requested (7012 2210 0001 6260 0080)**

Re:     Termination / Revocation of Louisiana Medicaid Provider Agreement
        Provider Number 91338

Dear Mrs. Linton:

Based on the initial findings of Louisiana's investigation into Planned Parenthood Gulf Coast (PPGC), you are hereby notified that the Department of Health and Hospitals (DHH) is hereby terminating / revoking the PPGC provider agreement referenced above. This action is being taken pursuant to La. R.S. 46:437.11 and 46:437.14. This action will take effect following final determination, judgment, completion, withdrawal from, or termination of all administrative and/or legal proceedings in this matter. Such proceedings include, but are not limited to, informal hearings, administrative appeals, appeals for judicial review, appellate judgments, and/or denials of writ applications.

Specifically, it is clear that PPGC entered into a Federal False Claims Act settlement signed on July 25, 2013, by Melaney A. Linton, President and CEO of PPGC agreeing to pay $4,300,000 to the United States who "contend[ed] that PPGC submitted false claims." Settlement Agreement, *Reynolds v. Planned Parenthood Gulf Coast*, No. 9:09-cv-124 (E.D. TX, Lufkin Div.)(July 25, 2013). In accordance with the Louisiana Administrative Code, Title 50, this is a violation. Further, under that same administrative code, PPGC had an affirmative duty to inform BHSF in writing of this violation. Since DHH, through BHSF, was not informed within ten (10) working days of when the provider knew or should have known of the violation, this constitutes a separate violation. Also under consideration in our departmental proceedings are provider audits and federal false claims cases against Planned Parenthood of America (PPFA) affiliates. Included among these are pending federal false claims cases against PPGC, one in which the presiding judge found that the information already provided "allows the court to draw the reasonable inference that Planned Parenthood knowingly filed false claims." Memorandum Opinion and Order at 17, *Carroll v. Planned Parenthood Gulf Coast*, 4:12-cv-03505 (S.D. TX, Houston Div.) (May 14, 2014). Providers and providers-in-fact are required to ensure that all their agents and affiliates are in compliance with all federal and state laws as well as rules, policies and procedures of the Medicaid program. PPGC and its parent organization PPFA has failed to do so and has failed to notify DHH of violations and misconduct by affiliates and providers-in-fact. These are also violations of La. Admin. Code, Title 50.

Further, in regard to the Center for Medical Progress (CMP) videos, DHH reviewed responses received from PPGC via letters dated July 24, 2015, and August 14, 2015, from Melaney Linton in response to DHH letters dated July 15, 2015, and August 4, 2015. After said review, DHH believes that PPGC misrepresented its actions therein and had contradictions within the body of the letter and with the statements and admissions made in the CMP videos, including but not limited to the video released on August 4, 2015 and taped in April of this year, containing conversations with PPGC senior management, including the PPGC director of research and PPCFC facility director.

According to La. R.S. 46:437.11(D)(2), the Secretary may terminate a provider agreement immediately and without written notice if a health care provider is the subject of a sanction or of a criminal, civil, or departmental proceeding. The Department determines that PPGC currently fits within this statute due to the investigations of PPGC by both DHH and the Louisiana Office of Inspector General. DHH expressly reserves the right to amend this notice and to terminate your provider agreement immediately and without written notice based on the further findings of the pending investigations by any department of Louisiana, any other State or state agency, or the pending investigations in the congressional committees. DHH has elected to provide PPGC with full due process rights as mentioned above and will not pursue immediate termination pursuant to this notice.

According to 46:437.14(A)(1), DHH may deny or revoke enrollment in the Medicaid program in cases of misrepresentation. As alleged above, DHH believes PPGC's responses to inquiries, when compared to clear representations in various videos, rises to the level of misrepresentation. Further, according to La. R.S. 46:437.14(A)(10) and (12), DHH may move to revoke enrollment if a provider is found in violation of licensing or certification conditions or professional standards relating to the licensure or certification of health care providers or the required quality of goods, services, or supplies provided. Also, a provider agreement can be revoked for failure to meet any condition of enrollment. As a Medicaid provider, PPGC is charged with maintaining compliance with all state statutes, rules and regulations, including the Louisiana Administrative Code mentioned above. PPGC's actions mentioned above are clear violations of applicable administrative code provisions and are clear violations of the statutes mentioned. Based on the conduct described, the above provider number is hereby being terminated / revoked.

You are entitled to an administrative review of this action and it is suspensive if you avail yourself of same. Initially, you should request an Informal Hearing at which you are entitled to both present information in writing or orally, present documents, and to further inquire as to the reasons for our determination. You must make your request for an Informal Hearing in writing and within fifteen (15) calendar days (including Saturdays and Sundays) of receipt of this notice. Your written request should be sent to:

Louisiana DHH, Office of Secretary
P.O. Box 3836
Baton Rouge, Louisiana 70821

15-31987.358

You may be represented by an attorney or authorized representative at the Informal Hearing. Your attorney or authorized representative must file a written notice of representation identifying himself by name, address, and telephone number at the address given above.

Following the Informal Hearing you will receive a written Notice of the Results of the Informal Hearing from which you are entitled to seek an appeal before the Division of Administrative Law. This hearing will also be suspensive in nature. Your request for Administrative Appeal must be in writing and set out the reasons for which you are seeking an appeal and the basis upon which you disagree with the results of the Informal Hearing. All requests for an Administrative Appeal must be received within thirty (30) calendar days (including Saturdays and Sundays) of the receipt of this notice. Request for Administrative Appeal must be sent to the address given below.

Division of Administrative Law – HH Section
P.O. Box 4189
Baton Rouge, Louisiana  70821-4189
Phone (225) 342-0443
Fax (225) 219-9823

You may be represented by an attorney or authorized representative at the Administrative Appeal. Your attorney or authorized representative must file a written notice of representation identifying himself by name, address, and telephone number at the address above.

You may choose to forego the Informal Hearing and instead request an Administrative Appeal of this action. If you choose this alternative, please follow the procedure described above for scheduling an Administrative Appeal.

If you do not request an Informal Hearing or an Administrative Appeal, your termination will become effective thirty (30) days (including Saturdays and Sundays) from the date of your receipt of this letter.

If you have any questions regarding this correspondence, you may contact Stephen R. Russo, Executive Counsel, at (225) 342-1115.

Sincerely,

Kathy Kliebert, Secretary
Louisiana Department of Health and Hospitals

Cc:  Planned Parenthood Gulf Coast

15-31087.350



**Bobby Jindal**
GOVERNOR

**Kathy H. Kliebert**
SECRETARY

### State of Louisiana
Department of Health and Hospitals
Office of the Secretary

September 15, 2015

Planned Parenthood
ATTN:Melaney Linton
3955 Government Street, Suite 2
Baton Rouge, Louisiana 70806

**Certified Mail, Return Receipt Requested (7012 2210 0001 6260 0097)**

Re:    Termination / Revocation of Louisiana Medicaid Provider Agreement
       Provider Number 133689

Dear Mrs. Linton:

Based on the initial findings of Louisiana's investigation into Planned Parenthood Gulf Coast
(PPGC), you are hereby notified that the Department of Health and Hospitals (DHH) is hereby
terminating / revoking the PPGC provider agreement referenced above. This action is being
taken pursuant to La. R.S. 46:437.11 and 46:437.14. This action will take effect following final
determination, judgment, completion, withdrawal from, or termination of all administrative
and/or legal proceedings in this matter. Such proceedings include, but are not limited to,
informal hearings, administrative appeals, appeals for judicial review, appellate judgments,
and/or denials of writ applications.

Specifically, it is clear that PPGC entered into a Federal False Claims Act settlement signed on
July 25, 2013, by Melaney A. Linton, President and CEO of PPGC agreeing to pay $4,300,000 to
the United States who "contend[ed] that PPGC submitted false claims." Settlement Agreement,
*Reynolds v. Planned Parenthood Gulf Coast*, No. 9:09-cv-124 (E.D. TX, Lufkin Div.)(July 25,
2013). In accordance with the Louisiana Administrative Code, Title 50, this is a violation.
Further, under that same administrative code, PPGC had an affirmative duty to inform BHSF in
writing of this violation. Since DHH, through BHSF, was not informed within ten (10) working
days of when the provider knew or should have known of the violation, this constitutes a
separate violation. Also under consideration in our departmental proceedings are provider audits
and federal false claims cases against Planned Parenthood of America (PPFA) affiliates.
Included among these are pending federal false claims cases against PPGC, one in which the
presiding judge found that the information already provided "allows the court to draw the
reasonable inference that Planned Parenthood knowingly filed false claims." Memorandum
Opinion and Order at 17, *Carroll v. Planned Parenthood Gulf Coast*, 4:12-cv-03505 (S.D. TX,
Houston Div.) (May 14, 2014). Providers and providers-in-fact are required to ensure that all
their agents and affiliates are in compliance with all federal and state laws as well as rules,
policies and procedures of the Medicaid program. PPGC and its parent organization PPFA has
failed to do so and has failed to notify DHH of violations and misconduct by affiliates and
providers-in-fact. These are also violations of La. Admin. Code, Title 50.

15-30087.3(n)

Further, in regard to the Center for Medical Progress (CMP) videos, DHH reviewed responses received from PPGC via letters dated July 24, 2015, and August 14, 2015, from Melaney Linton in response to DHH letters dated July 15, 2015, and August 4, 2015. After said review, DHH believes that PPGC misrepresented its actions therein and had contradictions within the body of the letter and with the statements and admissions made in the CMP videos, including but not limited to the video released on August 4, 2015 and taped in April of this year, containing conversations with PPGC senior management, including the PPGC director of research and PPCFC facility director.

According to La. R.S. 46:437.11(D)(2), the Secretary may terminate a provider agreement immediately and without written notice if a health care provider is the subject of a sanction or of a criminal, civil, or departmental proceeding. The Department determines that PPGC currently fits within this statute due to the investigations of PPGC by both DHH and the Louisiana Office of Inspector General. DHH expressly reserves the right to amend this notice and to terminate your provider agreement immediately and without written notice based on the further findings of the pending investigations by any department of Louisiana, any other State or state agency, or the pending investigations in the congressional committees. DHH has elected to provide PPGC with full due process rights as mentioned above and will not pursue immediate termination pursuant to this notice.

According to 46:437.14(A)(1), DHH may deny or revoke enrollment in the Medicaid program in cases of misrepresentation. As alleged above, DHH believes PPGC's responses to inquiries, when compared to clear representations in various videos, rises to the level of misrepresentation. Further, according to La. R.S. 46:437.14(A)(10) and (12), DHH may move to revoke enrollment if a provider is found in violation of licensing or certification conditions or professional standards relating to the licensure or certification of health care providers or the required quality of goods, services, or supplies provided. Also, a provider agreement can be revoked for failure to meet any condition of enrollment. As a Medicaid provider, PPGC is charged with maintaining compliance with all state statutes, rules and regulations, including the Louisiana Administrative Code mentioned above. PPGC's actions mentioned above are clear violations of applicable administrative code provisions and are clear violations of the statutes mentioned. Based on the conduct described, the above provider number is hereby being terminated / revoked.

You are entitled to an administrative review of this action and it is suspensive if you avail yourself of same. Initially, you should request an Informal Hearing at which you are entitled to both present information in writing or orally, present documents, and to further inquire as to the reasons for our determination. You must make your request for an Informal Hearing in writing and within fifteen (15) calendar days (including Saturdays and Sundays) of receipt of this notice. Your written request should be sent to:

Louisiana DHH, Office of Secretary
P.O. Box 3836
Baton Rouge, Louisiana 70821

You may be represented by an attorney or authorized representative at the Informal Hearing. Your attorney or authorized representative must file a written notice of representation identifying himself by name, address, and telephone number at the address given above.

Following the Informal Hearing you will receive a written Notice of the Results of the Informal Hearing from which you are entitled to seek an appeal before the Division of Administrative Law. This hearing will also be suspensive in nature. Your request for Administrative Appeal must be in writing and set out the reasons for which you are seeking an appeal and the basis upon which you disagree with the results of the Informal Hearing. All requests for an Administrative Appeal must be received within thirty (30) calendar days (including Saturdays and Sundays) of the receipt of this notice. Request for Administrative Appeal must be sent to the address given below.

Division of Administrative Law – HH Section
P.O. Box 4189
Baton Rouge, Louisiana 70821-4189
Phone (225) 342-0443
Fax (225) 219-9823

You may be represented by an attorney or authorized representative at the Administrative Appeal. Your attorney or authorized representative must file a written notice of representation identifying himself by name, address, and telephone number at the address above.

You may choose to forego the Informal Hearing and instead request an Administrative Appeal of this action. If you choose this alternative, please follow the procedure described above for scheduling an Administrative Appeal.

If you do not request an Informal Hearing or an Administrative Appeal, your termination will become effective thirty (30) days (including Saturdays and Sundays) from the date of your receipt of this letter.

If you have any questions regarding this correspondence, you may contact Stephen R. Russo, Executive Counsel, at (225) 342-1115.

Sincerely,

*Kathy Kliebert*

Kathy Kliebert, Secretary
Louisiana Department of Health and Hospitals

Cc: Planned Parenthood Gulf Coast



**Bobby Jindal**
GOVERNOR

**Kathy H. Kliebert**
SECRETARY

**State of Louisiana**
Department of Health and Hospitals
Office of the Secretary

September 15, 2015

Planned Parenthood
ATTN: Melaney Linton
4600 Gulf Hwy.
Houston, TX 77023

**Certified Mail, Return Receipt Requested (7012 2210 0001 6260 0073)**

Re:   Termination / Revocation of Louisiana Medicaid Provider Agreement
      Provider Number 45802

Dear Mrs. Linton:

Based on the initial findings of Louisiana's investigation into Planned Parenthood Gulf Coast (PPGC), you are hereby notified that the Department of Health and Hospitals (DHH) is hereby terminating / revoking the PPGC provider agreement referenced above. This action is being taken pursuant to La. R.S. 46:437.11 and 46:437.14. This action will take effect following final determination, judgment, completion, withdrawal from, or termination of all administrative and/or legal proceedings in this matter. Such proceedings include, but are not limited to, informal hearings, administrative appeals, appeals for judicial review, appellate judgments, and/or denials of writ applications.

Specifically, it is clear that PPGC entered into a Federal False Claims Act settlement signed on July 25, 2013, by Melaney A. Linton, President and CEO of PPGC agreeing to pay $4,300,000 to the United States who "contend[ed] that PPGC submitted false claims." Settlement Agreement, *Reynolds v. Planned Parenthood Gulf Coast*, No. 9:09-cv-124 (E.D. TX, Lufkin Div.)(July 25, 2013). In accordance with the Louisiana Administrative Code, Title 50, this is a violation. Further, under that same administrative code, PPGC had an affirmative duty to inform BHSF in writing of this violation. Since DHH, through BHSF, was not informed within ten (10) working days of when the provider knew or should have known of the violation, this constitutes a separate violation. Also under consideration in our departmental proceedings are provider audits and federal false claims cases against Planned Parenthood of America (PPFA) affiliates. Included among these are pending federal false claims cases against PPGC, one in which the presiding judge found that the information already provided "allows the court to draw the reasonable inference that Planned Parenthood knowingly filed false claims." Memorandum Opinion and Order at 17, *Carroll v. Planned Parenthood Gulf Coast*, 4:12-cv-03505 (S.D. TX, Houston Div.) (May 14, 2014). Providers and providers-in-fact are required to ensure that all their agents and affiliates are in compliance with all federal and state laws as well as rules, policies and procedures of the Medicaid program. PPGC and its parent organization PPFA has failed to do so and has failed to notify DHH of violations and misconduct by affiliates and providers-in-fact. These are also violations of La. Admin. Code, Title 50.

15-30987-363

Further, in regard to the Center for Medical Progress (CMP) videos, DHH reviewed responses received from PPGC via letters dated July 24, 2015, and August 14, 2015, from Melaney Linton in response to DHH letters dated July 15, 2015, and August 4, 2015. After said review, DHH believes that PPGC misrepresented its actions therein and had contradictions within the body of the letter and with the statements and admissions made in the CMP videos, including but not limited to the video released on August 4, 2015 and taped in April of this year, containing conversations with PPGC senior management, including the PPGC director of research and PPCFC facility director.

According to La. R.S. 46:437.11(D)(2), the Secretary may terminate a provider agreement immediately and without written notice if a health care provider is the subject of a sanction or of a criminal, civil, or departmental proceeding. The Department determines that PPGC currently fits within this statute due to the investigations of PPGC by both DHH and the Louisiana Office of Inspector General. DHH expressly reserves the right to amend this notice and to terminate your provider agreement immediately and without written notice based on the further findings of the pending investigations by any department of Louisiana, any other State or state agency, or the pending investigations in the congressional committees. DHH has elected to provide PPGC with full due process rights as mentioned above and will not pursue immediate termination pursuant to this notice.

According to 46:437.14(A)(1), DHH may deny or revoke enrollment in the Medicaid program in cases of misrepresentation. As alleged above, DHH believes PPGC's responses to inquiries, when compared to clear representations in various videos, rises to the level of misrepresentation. Further, according to La. R.S. 46:437.14(A)(10) and (12), DHH may move to revoke enrollment if a provider is found in violation of licensing or certification conditions or professional standards relating to the licensure or certification of health care providers or the required quality of goods, services, or supplies provided. Also, a provider agreement can be revoked for failure to meet any condition of enrollment. As a Medicaid provider, PPGC is charged with maintaining compliance with all state statutes, rules and regulations, including the Louisiana Administrative Code mentioned above. PPGC's actions mentioned above are clear violations of applicable administrative code provisions and are clear violations of the statutes mentioned. Based on the conduct described, the above provider number is hereby being terminated / revoked.

You are entitled to an administrative review of this action and it is suspensive if you avail yourself of same. Initially, you should request an Informal Hearing at which you are entitled to both present information in writing or orally, present documents, and to further inquire as to the reasons for our determination. You must make your request for an Informal Hearing in writing and within fifteen (15) calendar days (including Saturdays and Sundays) of receipt of this notice. Your written request should be sent to:

Louisiana DHH, Office of Secretary
P.O. Box 3836
Baton Rouge, Louisiana 70821

15-30087.304

You may be represented by an attorney or authorized representative at the Informal Hearing. Your attorney or authorized representative must file a written notice of representation identifying himself by name, address, and telephone number at the address given above.

Following the Informal Hearing you will receive a written Notice of the Results of the Informal Hearing from which you are entitled to seek an appeal before the Division of Administrative Law. This hearing will also be suspensive in nature. Your request for Administrative Appeal must be in writing and set out the reasons for which you are seeking an appeal and the basis upon which you disagree with the results of the Informal Hearing. All requests for an Administrative Appeal must be received within thirty (30) calendar days (including Saturdays and Sundays) of the receipt of this notice. Request for Administrative Appeal must be sent to the address given below.

Division of Administrative Law – HH Section
P.O. Box 4189
Baton Rouge, Louisiana 70821-4189
Phone (225) 342-0443
Fax (225) 219-9823

You may be represented by an attorney or authorized representative at the Administrative Appeal. Your attorney or authorized representative must file a written notice of representation identifying himself by name, address, and telephone number at the address above.

You may choose to forego the Informal Hearing and instead request an Administrative Appeal of this action. If you choose this alternative, please follow the procedure described above for scheduling an Administrative Appeal.

If you do not request an Informal Hearing or an Administrative Appeal, your termination will become effective thirty (30) days (including Saturdays and Sundays) from the date of your receipt of this letter.

If you have any questions regarding this correspondence, you may contact Stephen R. Russo, Executive Counsel, at (225) 342-1115.

Sincerely,

Kathy Kliebert, Secretary
Louisiana Department of Health and Hospitals

Cc: Planned Parenthood Gulf Coast

Bienville Building • 628 N. 4th Street • P.O. Box 629 • Baton Rouge, Louisiana 70821-0629
Phone #: 225/342-9509 • Fax #: 225/342-5568 • WWW.DHH.LA.GOV
"An Equal Opportunity Employer"

Exhibit C

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard
Baltimore, Maryland 21244-1850

**CMS**
CENTERS FOR MEDICARE & MEDICAID SERVICES
CENTER FOR MEDICAID & CHIP SERVICES

---

August 11, 2016

Ms. Jen Steele, Medicaid Director
State of Louisiana
Department of Health and Hospitals
628 N. 4th Street
PO Box 91030
Baton Rouge, LA  70821-9030

Dear Director Steele:

This letter is in response to recent actions taken by the State of Louisiana to terminate its Medicaid provider agreements with Planned Parenthood Gulf Coast (PPGC).  As previously discussed with the state on August 4, 2016, the Centers for Medicare & Medicaid Services (CMS) would like to remind the state of its obligation to remain in compliance with the "free choice of provider" requirements specified in section 1902(a)(23) of the Social Security Act (the Act).  In addition, the state is obligated to ensure beneficiary access to covered services under section 1902(a)(30)(A) of the Act.  As highlighted below, CMS seeks a response from the state detailing its compliance with those requirements.

Under federal law, at section 1902(a)(23) of the Act, a Medicaid beneficiary may obtain medical services "from any institution, agency, community pharmacy, or person, qualified to perform the service or services required . . . who undertakes to provide him such services."  This provision is often referred to as the "any willing provider" or "free choice of provider" provision.  While states maintain the authority to establish reasonable standards for provider qualifications (in accordance with 42 C.F.R. § 431.51(c)(2)), any willing provider that is qualified to provide covered services according to the reasonable standards established by the state must be allowed to provide such services to Medicaid beneficiaries.  For further discussion of the "Free Choice of Provider Provisions," see State Medicaid Director Letter #16-005, published on April 19, 2016.

In addition, CMS is concerned about the effect the termination of the provider agreement with PPGC would have on Louisiana Medicaid beneficiaries' access to women's health services within the state.  Section 1902(a)(30)(A) of the Act requires that states have methods and procedures to ensure that there are sufficient providers so that care and services are available to Medicaid beneficiaries "at least to the extent that such care and services are available to the general population in the area."  It is not clear that this access requirement would be met for beneficiaries in several areas in Louisiana without the participation of PPGC, absent other changes in Louisiana's program.

Although states have authority to terminate providers from participating in Medicaid, this authority is limited to circumstances implicating the fitness of the provider to perform covered medical services or appropriately bill for them.  States must terminate those providers that have

Page 2 – Ms. Jen Steele, Medicaid Director

committed certain types of fraud or other criminal acts related to involvement with the Medicare, Medicaid or the Children's Health Insurance Program (CHIP) programs. States must also terminate providers subject to federal disbarment or exclusion determinations. As explained in the April 2016 guidance, states must have a valid reason for terminating a provider, related to the provider's ability to render covered services or to properly bill for those services – reasons, for instance, that bear on the individual's or entity's professional competence, professional performance, or financial integrity.

We are unaware of any basis for Louisiana to terminate PPGC's provider agreements, which would be consistent with these limited reasons for excluding providers from Medicaid participation. Therefore, we ask that you provide information to CMS documenting the state's basis for termination, including documentation and supporting evidence that answers the following questions:

1. Why does the state believe that there were violations of La R.S. 46:437.11 and 46:437.14?

2. Has the state terminated other types of providers for similar violations of these provisions?

3. How do the state provisions located at La R.S. 46:437.11 and 46:437.14 relate to the fitness of the providers to furnish covered services or its ability to appropriately bill for them in accordance with the approved state plan?

4. Why does the state believe that there were violations of the State's Administrative Code Title 50?

5. How does the State's Administrative Code Title 50 relate to the fitness of the providers to furnish covered services or its ability to appropriately bill for them in accordance with the approved state plan?

6. Does the state have evidence that the provider has committed fraud or criminal action, was in material non-compliance with relevant requirements, or had material issues concerning its fitness to perform covered services or appropriately bill for them? If so, please provide that evidence.

7. How will the state's actions affect access to women's health services in the state, including the state's ability to comply with the requirements set forth in section 1902(a)(30)(A)?

To the extent that Louisiana's actions conflict with federal law, CMS may take further actions to protect Medicaid beneficiaries using its authority under section 1904 of the Act, as implemented at 42 Code of Federal Regulations (CFR) 430.35 and 42 CFR Part 430, Subpart D. Please submit a response to this letter explaining the reasons for the termination of PPGC, and the state's analysis of access issues, by September 6, 2016. Absent a response by this date indicating how Louisiana is in compliance with section 1902(a)(23), CMS may initiate a compliance action that could result in the withholding of federal funds.

Page 2 – Ms. Jen Steele, Medicaid Director


Should the state have any questions or wish to discuss the federal requirements applicable to this matter, please feel free to contact me at (410)786-3870.



Sincerely,


Vikki Wachino
Director

Exhibit D

**Williams, Reynaldo (CMS/OSORA)**

| | |
|---|---|
| **From:** | Kimberly Sullivan <Kimberly.Sullivan@LA.GOV> |
| **Sent:** | Tuesday, September 27, 2016 12:19 PM |
| **To:** | Schubel, Jessica L. (CMS/CMCS); Kress, Marielle J. (CMS/CMCS); Wachino, Victoria (CMS/CMCS) |
| **Cc:** | Lee, Gia (OS/OGC); Kimberly Humbles; Stephen Russo; Steele, Jen |
| **Subject:** | RE: CMS letter dated 8/11/16 to Louisiana |
| **Attachments:** | PPGC ltrs 9.15.15.pdf |

Ms. Wachino,

The Louisiana Department of Health (LDH) is in receipt of your letter of August 11, 2016 in regards to the actions taken on the Medicaid provider agreements with Planned Parenthood Gulf Coast (PPGC). We appreciate the extra time given to LDH to respond to the letter in light of the flooding event.

First, LDH takes its responsibility to administer the Medicaid Program in accordance with all federal and state laws very seriously. Cooperation by a Medicaid provider during an investigation into potential wrongdoing is a cornerstone to fulfilling this obligation. Second, LDH is well aware of the right of a Medicaid recipient to choose a Medicaid provider from the pool of eligible, qualified providers. However, a Medicaid provider that is disqualified from the program must exhaust the required administrative review process before seeking judicial review. Louisiana's Administrative Code protects the Medicaid recipients during the review by making the process suspensive, effectively staying the administrative action until the process concludes. The ruling by the Court to allow Medicaid recipients to challenge a disqualification decision in federal court during the administrative process, or after a provider abandons that process, will have a grave impact on Medicaid administration. Based on this recent Court decision, it is only a matter of time before disqualified Medicaid providers attempt to recruit Medicaid recipients to file lawsuits that a Medicaid provider may not be allowed to file.

With regard to the action referenced in the August 11, 2016 letter, LDH had a good faith basis to investigate PPGC following the revelations, in which you are aware. Any reasonable person would agree that the information in the video was concerning and warranted further investigation. Based in part on the position of CMS regarding the at-will termination, LDH voluntarily withdrew that action and proceeded with a termination for-cause. LDH fully anticipated that PPGC would proceed with the administrative review process, during which its Medicaid recipients were assured access. Regrettably, PPGC instead chose to abandon the administrative appeal process, risking the care to all of its Medicaid recipients and brought a lawsuit by three Medicaid recipients recruited by PPGC.

With regard to your specific questions, we offer the following:

1. Why does the state believe that there were violations of La R.S. 46:437.11 and 46:437.14?

   *Please see attached letters sent to PPGC on September 15, 2015.*

2. Has the state terminated other types of providers for similar violations of these provisions?

   *Yes.*

3. How do the state provisions located at La R.S. 46:437.11 and 46:437.14 relate to the fitness of the providers to furnish covered services or its ability to appropriately bill for them in accordance with the approved state plan?

*Please see attached letters sent to PPGC sent on September 15, 2015. The provisions of La R.S. 46:437.11 and 46:437.14 are an important part of the authority structure that enables LDH to administer the state plan in a fiscally, professionally, and morally responsible manner that protects Medicaid recipients and public resources.*

4. Why does the state believe that there were violations of the State's Administrative Code Title 50?

*Please see attached letters sent to PPGC on September 15, 2015.*

5. How does the State's Administrative Code Title 50 relate to the fitness of the providers to furnish covered services or its ability to appropriately bill for them in accordance with the approved state plan?

*Please see attached letters sent to PPGC on September 15, 2015.*

6. Does the state have evidence that the provider has committed fraud or criminal action, was in material non-compliance with relevant requirements, or had material issues concerning its fitness to perform covered services or appropriately bill for them? If so, please provide that evidence.

*Please see attached letters sent to PPGC on September 15, 2015.*

7. How will the state's actions affect access to women's health services in the state's ability to comply with the requirements set forth in section 1902(a)(30)(A)?

*The action taken by the state regarding PPGC did not affect Medicaid recipient access to health care because the action was not final and was subject to a fully suspensive administrative review. PPGC inexplicably abandoned that process and, instead, obtained a preliminary injunction. The result to the Medicaid recipient is the same; access to women's health services has not been disturbed.*

LDH believes this adequately addresses the issues raised in the letter of August 11, 2016. As always, LDH's primary concern is the care and health of the Medicaid recipients it serves through the Louisiana Medicaid program. None of the actions taken against PPGC affected the health or access to health care services of any Louisiana Medicaid recipients.

Sincerely,

*Kimberly Sullivan*
*LDH Deputy General Counsel*
*628 N. 4ᵗʰ Street*
*P.O. Box 3836*
*Baton Rouge, LA 70821*
*(225) 342-1128*
*Fax: (225) 342-2232*
*kimberly.sullivan@la.gov*



---

**From:** Schubel, Jessica L. (CMS/CMCS) [mailto:Jessica.Schubel@cms.hhs.gov]
**Sent:** Sunday, September 18, 2016 6:35 PM
**To:** Kimberly Sullivan; Kress, Marielle J. (CMS/CMCS); Wachino, Victoria (CMS/CMCS)
**Cc:** Lee, Gia (OS/OGC); Kimberly Humbles; Stephen Russo
**Subject:** RE: CMS letter dated 8/11/16 to Louisiana

Ms. Sullivan,

Apologies for the delayed response, but we will provide a one-week extension.  Your response is due Tuesday, September 27th.

Thanks,
Jessica

Jessica Schubel
Senior Policy Advisor
Office of the Director, Center for Medicaid and CHIP Services

---

**From:** Kimberly Sullivan [mailto:Kimberly.Sullivan@LA.GOV]
**Sent:** Thursday, September 15, 2016 10:30 AM
**To:** Kress, Marielle J. (CMS/CMCS) <Marielle.Kress@cms.hhs.gov>; Wachino, Victoria (CMS/CMCS) <Victoria.Wachino1@cms.hhs.gov>
**Cc:** Lee, Gia (OS/OGC) <Gia.Lee@hhs.gov>; Schubel, Jessica L. (CMS/CMCS) <Jessica.Schubel@cms.hhs.gov>; Kimberly Humbles <Kimberly.Humbles@LA.GOV>; Stephen Russo <Stephen.Russo@LA.GOV>
**Subject:** RE: CMS letter dated 8/11/16 to Louisiana

Ms. Kress and Ms. Wachino,

In light of the 5th Circuit ruling in the Planned Parenthood case yesterday, we are asking for a further extension to respond to this letter so the State can re-evaluate the actions taken in this case.

Sincerely,

*Kimberly Sullivan*
*LDH Deputy General Counsel*
*628 N. 4th Street*
*P.O. Box 3836*
*Baton Rouge, LA  70821*
*(225) 342-1128*
*Fax: (225) 342-2232*
*kimberly.sullivan@la.gov*



**From:** Kress, Marielle J. (CMS/CMCS) [mailto:Marielle.Kress@cms.hhs.gov]
**Sent:** Friday, September 02, 2016 2:59 PM
**To:** Kimberly Sullivan; Kimberly Humbles; Stephen Russo; Jen Steele
**Cc:** Wachino, Victoria (CMS/CMCS); Lee, Gia (OS/OGC); Schubel, Jessica L. (CMS/CMCS)
**Subject:** RE: CMS letter dated 8/11/16 to Louisiana

Ms. Sullivan,

Vikki asked me to respond to you on her behalf. We are granting you the two week extension you requested. Your response is due on Tuesday, September 20th.

Thanks,
Marielle


**Marielle Kress**
Senior Advisor
Office of the Director, Center for Medicaid and CHIP Services
224-234-7913 (blackberry) | marielle.kress@cms.hhs.gov


**From:** Kimberly Sullivan [mailto:Kimberly.Sullivan@LA.GOV]
**Sent:** Friday, September 2, 2016 1:18 PM
**To:** Wachino, Victoria (CMS/CMCS) <Victoria.Wachino1@cms.hhs.gov>
**Cc:** Kimberly Humbles <Kimberly.Humbles@LA.GOV>; Stephen Russo <Stephen.Russo@LA.GOV>; Steele, Jen <Jen.Steele@LA.GOV>
**Subject:** CMS letter dated 8/11/16 to Louisiana

Ms. Wachino,

The Department is in receipt of your letter dated August 11, 2016 in regards to the State's decision to terminate its Medicaid provider agreements with Planned Parenthood Gulf Coast. Currently, our response is due on September 6, 2016. Due to recent flooding events and the fact that this issue is currently in litigation, we would like to request a two week extension in which to respond.

Sincerely,

*Kimberly Sullivan*
*LDH Deputy General Counsel*
*628 N. 4th Street*
*P.O. Box 3836*
*Baton Rouge, LA 70821*
*(225) 342-1128*
*Fax: (225) 342-2232*
*kimberly.sullivan@la.gov*

