## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| United States of America<br>*ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| The State of Texas | § | CIVIL ACTION NO. 2:21-CV-<br>00022-Z |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | Date:    June 28, 2022 |
| The State of Louisiana | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| Planned Parenthood Federation of America, Inc., | § | |
| Planned Parenthood Gulf Coast, Inc., Planned | § | |
| Parenthood of Greater Texas, Inc., Planned | § | |
| Parenthood South Texas, Inc., Planned Parenthood | § | |
| Cameron County, Inc., Planned Parenthood San | § | |
| Antonio, Inc., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION, OR, IN THE ALTERNATIVE, CERTIFICATION FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

## INTRODUCTION

Rather than grapple with Defendants' arguments, Plaintiffs urge the Court to ignore them, arguing that Defendants' motion either rehashes arguments on which the Court has already ruled or raises new arguments that should have been raised in prior briefing.  It does neither.  Defendants seek reconsideration because the Court "failed to consider relevant law," *Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 477 (M.D. La. 2002), and made several clear errors of law.  That "certainly clears whatever threshold showing Rule 54(b) might place on a party moving for reconsideration." *Id.*  There is thus no procedural impediment to the Court's considering Defendants' motion.

Plaintiffs' arguments on the merits are unavailing.  *First*, Plaintiffs wrongly frame the existence of an "obligation" under the reverse false claim provisions of the FCA and TMFPA as a factual question subject to the "plausibility" pleading standard.  But whether Affiliate Defendants had a legal obligation to return monies received under then-valid injunctions and absent a repayment demand by the States is a question of law that can and should be decided on the pleadings.   As discussed below, as a matter of law, Defendants had no such obligation under controlling Fifth Circuit precedent.  *Second*, Plaintiffs' interpretation of the scienter element of the reverse FCA/TMPFA provision violates the canon against superfluity by rendering the statutory term "improperly" meaningless.  As Congress made clear, the reverse FCA provision (on which the TMFPA provision is based) requires a plaintiff to plead factual allegations of *malum in se* conduct by the defendant, which Plaintiffs here have failed to do.  *Third*, the Court's public disclosure bar ruling rests on several clear legal errors, none of which Plaintiffs make any meaningful attempt to defend.  For these reasons, the Court should reconsider its Order and grant Defendants' motion to dismiss.

1

In the alternative, if the Court chooses not to reconsider its Order, it should certify this matter for an interlocutory appeal.

## ARGUMENT

### I.   As a Matter of Law, Affiliate Defendants Had No Repayment Obligation under the Reverse False Claim Provisions of the FCA and TMFPA

Contrary to Plaintiffs' assertion, whether Affiliate Defendants had a repayment obligation is a legal question for the Court to resolve – it is not a factual question subject to the plausibility pleading standard.  "The plausibility standard is about how to assess the factual allegations supporting a claim . . . [b]ut where the relevant facts are not in question and the dispute is a legal one, as here, this standard has no application." *Laurienti v. Am. Alternative Ins. Corp.*, No. 19-CV-01725-DDD-KLM, 2020 WL 9424250, at *3 (D. Colo. Jan. 3, 2020); *cf. Raybourne & Dean Consulting, Ltd. v. Metrica, Inc.*, No. CV SA-14-CA-918-OLG, 2015 WL 12866335, at *5 (W.D. Tex. Aug. 11, 2015), *report and recommendation adopted sub nom.*, 2015 WL 12867470 (W.D. Tex. Sept. 8, 2015) (stating that courts should "separate factual allegations from legal conclusions" and that the plausibility standard is applied to only factual allegations).  Here, there is no dispute that: Texas and Louisiana issued Affiliate Defendants notices of termination from Texas and Louisiana Medicaid; Affiliate Defendants sued in federal district court to enjoin the terminations; the district courts entered injunctions pursuant to which Affiliate Defendants continued to provide services to Texas and Louisiana Medicaid patients and billed Medicaid for those services; Texas and Louisiana paid those bills; the Fifth Circuit vacated the Texas injunction; the Louisiana injunction remains in effect; neither Texas nor Louisiana ever requested repayment of the funds paid; and Affiliate Defendants did not return the funds.  It is for the Court to determine, as a matter of law, whether, absent a demand to repay by the States, Defendants had an "obligation" to pay money to Texas and Louisiana for purposes of the reverse FCA and TMFPA provisions.

2

Plaintiffs have identified two supposed sources of such an obligation. First, Plaintiffs rely on the principle "that a party against whom an erroneous judgment or decree has been carried into effect is entitled, in the event of a reversal, to be restored by his adversary to which he lost thereby." Dkt. 61 at 10 (quoting *Arkadelphia Milling Co. v. St. Louis S.W. Ry. Co.*, 249 U.S. 134, 145 (1919)). But that principle merely creates a right on the part of the prevailing party to seek a remedy, for example, by recovering on an injunction bond (if there is one). *See* Dkt. 83 at 7-8 (discussing *Bayou Shores*, *National Kidney Patients Association*, and *Maryland Department of Human Resources*). It is not a self-executing right, and no court has *ever* held that, in the absence of an injunction bond or a judicial or administrative order requiring repayment, the non-prevailing party has an obligation to repay amounts received as a result of the "erroneous judgment or decree."[1] Indeed, even where a subsequent proceeding is brought, courts have made clear that the prevailing party is entitled to recover only to the extent it was "damaged" by the erroneous order – a fact that may well be subject to dispute and cannot be determined in the absence of a separate proceeding (or a concession by the non-prevailing party). *See Nat'l Kidney Patients Ass'n v. Sullivan*, 958 F.2d 1127, 1134 (D.C. 1992) (prevailing party can only recover damages); *cf. Silvers v. TTC Indus., Inc.*, 484 F.2d 194, 199 (6th Cir. 1973) (noting that a party can only recover damages on an injunction bond in the amount "actually suffered" and remanding for findings on the amount of damages).

Because any duty to repay amounts received under the injunctions was "contingent" on events that did not occur, the rule articulated in *U.S. ex rel. Simoneaux v. E.I. duPont de Nemours*

---

[1] Although the Court need not reach scienter, the lack of any legal authority so much as suggesting that Affiliate Defendants had an obligation to return funds received under the injunctions plainly negates the scienter necessary to impose FCA liability. *See Safeco Ins. Co. v. Burr*, 551 U.S. 47, 70 & n.20 (2007).

3

*& Co.*, 843 F.3d 1033, 1037 (5th Cir. 2016), applies with full force here.  As a matter of law,

*potential* liability for amounts received under the injunctions "w[as] *not* [an] obligation[] under

the FCA."  *Id.* (emphasis in original).  To analogize to a more familiar context, "the mere breach

of contract – even a 'total' breach – can never create an 'obligation'" under the reverse false claim

provision because "liability arises only 'after the exercise of government discretion' to sue for

restitution or damages (*and* after a court enters a favorable judgment)."  *U.S. ex rel. Landis v.*

*Tailwind Sports Corp.*, 160 F. Supp. 3d 253, 268-69 (D.D.C. 2016) (emphasis added); *see also*

*U.S. ex rel. Graves v. ITT Educ. Servs.*, 284 F. Supp. 2d 487, 508-09 (S.D. Tex. 2003), *aff'd*, 111

F. App'x 296 (5th Cir. 2004) ("Even if the government's sanctions for noncompliance could

include the ability to sue for reimbursement of previously funded moneys, that potential does not

rise to an 'obligation to pay' that would support a reverse False Claims Act claim."); *U.S. ex rel.*

*Mason v. State Farm Mut. Auto Ins. Co.*, 398 F. App'x 233, 235 (9th Cir. 2010) (defendant "had

no obligation to reimburse Medicare" for allegedly fraudulent payments and would "become[]

liable to Medicare only when . . . liability is established by judgment, concession, or other means");

*U.S. ex rel. Reagan v. East Tex. Mede. Ctr. Reg'l Healthcare Sys.*, 274 F. Supp. 2d 824, 854-55

(S.D. Tex. 2003), *aff'd*, 384 F.3d 168 (5th Cir. 2004) (retention of "excessive" Medicare payments

created, at most, a "contingent" obligation).  The same is true here:  The Fifth Circuit's vacatur of

the Texas injunction may have permitted the State to try to seek to recover damages it sustained

as a result of the injunction, but "the Government's ability to pursue reimbursement . . . does not

constitute an 'obligation.'"  *Landis*, 160 F. Supp. 3d at 269.

Second, Plaintiffs argue that Defendants had an affirmative obligation under the ACA's

60-Day Rule to return Medicaid payments received during the pendency of the injunctions because

those payments became "overpayments" after the Fifth Circuit vacated the Texas injunction.

However, this argument is directly contrary to CMS guidance.  During rulemaking proceedings on the 60-Day Rule, CMS clearly and unequivocally rejected the idea that a payment that is lawful when received can become an overpayment at a later date:  "We agree that payments that were proper at the time the payment was made do not become overpayments at a later time due to changes in law or regulation, unless otherwise required by law."  81 Fed. Reg. 7654, 7658 (2016).

Plaintiffs urge the Court to ignore CMS's statement because it "is not itself a regulation." Dkt. 95 at 8.  Although an agency's statement in the preamble to a final rule is not itself codified, courts will treat such a statement as binding if it "is sufficiently clear."  *Kennecott Utah Copper Corp. v. U.S. Dep't of Interior*, 88 F.3d 1191, 1223 (D.C. Cir. 1996); *see, e.g.*, *Natural Resources Defense Council v. E.P.A.*, 571 F.3d 1245, 1252 & n.2 (D.C. Cir. 2009) (statements in preamble to final rule "represent the consummation of the agency's decision-making process and establish rights and obligations or create binding legal consequences" (cleaned up)); *UnitedHealthcare Ins. Co. v. Becerra*, 16 F.4th 867, 892 (D.C. Cir. 2021) (considering APA challenge to CMS comments in preamble).  Here, CMS could not have been clearer that subsequent events cannot convert a lawful payment into an "overpayment," and, thus, its statement in the 60-Day Final Rule preamble carries the force of law.  At a minimum, CMS's statement should be afforded deference.  Even assuming the 60-Day Rule is ambiguous on this point, CMS's guidance therefore should control. *See Forrest Gen. Hosp. v. Azar*, 926 F.3d 221, 230 (5th Cir. 2019).[2]

As for the substance of CMS's statement, Plaintiffs' arguments miss the mark.  Plaintiffs argue that CMS's statement that "[p]roviders and suppliers should analyze the facts and

---

[2]    Once again, the fact that the only authoritative guidance, indeed, the only regulatory guidance of any kind on this point, makes patent that there was no duty to repay the monies lawfully received during the pendency of the injunctions negates the scienter required under the FCA.

5

circumstances present in their situation to determine whether an overpayment exists" leaves open the possibility that payments that were lawful when made can become unlawful overpayments after the fact. That is not what CMS said. CMS made clear that "payments that were proper at the time the payment was made do not become overpayments at a later time due to changes in law or regulation." 81 Fed. Reg. at 7658. CMS went on to state that "[c]hanges in guidance . . . also usually will not alter whether a prior payment should be considered an overpayment" but recognized that there "can be circumstances in which guidance is issued to clarify existing law, regulation, or coverage rules that would make clear that a past payment is an overpayment." *Id.* at 7658. *In that situation*, providers "should analyze the facts and circumstances . . . to determine whether an overpayment exists." *Id.*

Here, there were no "circumstances" that "clarif[ied]" existing law. A federal district court issued injunctions that permitted Affiliate Defendants to provide and bill for Texas Medicaid services. Affiliate Defendants provided those services and were reimbursed by Medicaid. Those reimbursements were not overpayments when made. Only later did the Fifth Circuit vacate the injunction based on a lack of standing for patients to challenge "free choice of provider" principles under Medicaid; the Fifth Circuit did not reach the merits. Pursuant to CMS's binding statements in the 60-Day Final Rule preamble, those reimbursements were not converted into overpayments when the injunction was vacated on procedural grounds.

For these reasons, the Court should reconsider its Order and dismiss Plaintiffs' reverse FCA and TMFPA claims.

## II.    Plaintiffs Have Not Adequately Alleged Scienter for Their Reverse FCA/TMFPA Claims

Plaintiffs' interpretation of the reverse FCA and TMFPA provisions violates the "cardinal principle of statutory construction" that the court must "give effect . . . to every . . . word of a

6

statute," *Tex. Educ. Agency v. U.S. Dep't of Educ.*, 908 F.3d 127, 133 (5th Cir. 2018), because it would write the word "improperly" entirely out of the statutes. The Court did not address this issue when Defendants raised it in their initial briefing, and Defendants respectfully request that the Court consider it now.

The reverse FCA/TMFPA provisions require Plaintiffs to plead that Affiliate Defendants "knowingly *and improperly*" avoided or decreased an obligation to pay money to the government. 31 U.S.C. § 3729(a)(1)(G) (emphasis added); Tex. Hum. Res. Code § 36.002(12).[3] Plaintiffs argue that "Defendants 'improperly' avoided their obligation to repay the government by failing to remit the reimbursements to which they were not entitled within the 60-day statutorily required time period." Dkt. 95 at 12. In other words, under Plaintiffs' view, the mere failure to return an overpayment satisfies the "improperly" element of the reverse FCA/TMFPA provisions. But every "avoid[ance] of an obligation to pay money to the government" is "improper" in the sense that it is unlawful, and thus, under Plaintiffs' interpretation, the word "improperly" is entirely meaningless. By contrast, interpreting "improperly" consistent with congressional intent to require proof that the defendant engaged in conduct that was "malum in se – that is, . . . inherently wrongful and constitute[s] an independent tort," 155 Cong. Rec. S. at 4540 (Statement of Sen. Kyl), would give effect to every word in the statute. Plaintiffs do not dispute that their allegations fail to meet this standard.

Further, at least under the federal FCA, reverse FCA liability cannot attach unless the government is unaware of the overpayment. Dkt. 83 at 12-13. Here, Texas was well aware that it

---

[3]     This is a departure from the scienter requirement generally applicable under the FCA/TMFPA, which requires only "knowing" conduct. *See* 31 U.S.C. § 3729(a)(1)(A)-(B). The drafters of the FCA/TMFPA clearly intended to impose an additional scienter requirement through use of the word "improperly" for reverse FCA claims.

7

paid Affiliate Defendants under the injunctions, that the Fifth Circuit vacated the Texas injunction, and that Affiliate Defendants did not return those payments.  There can be no reverse FCA liability on these undisputed facts.

## III.   The Court Should Reconsider Its Ruling on the Public Disclosure Bar

The Court's public disclosure bar ruling applied the wrong legal test.  Prior public disclosures need only reveal facts necessary for an observer to make "an *inference* of fraud under the FCA."  *U.S. ex rel. Solomon v. Lockheed Martin Corp.*, 878 F.3d 139, 144 (5th Cir. 2017) (emphasis added).[4]  The prior public disclosures here easily meet this test.

As to Relator's implied false certification claim, he admits that "[t]he findings outlined in the Texas termination letter and reflected in the undercover video obtained by Relator" – both of which were publicly disclosed years before Relator's Complaint was filed, Relator Compl ¶ 81, Ex. C – were "sufficient to implicate [Defendants'] provision of Medicaid services in a safe, competent, legal, and ethical manner."  *Id.* ¶ 99.  The same is true for the Louisiana termination letter.  *See id.*, Ex. A.  The Texas and Louisiana termination letters also indicated that, as a condition of participation in the states' Medicaid programs, Affiliate Defendants had an ongoing duty to maintain compliance with all state statutes, rules, and regulations, *see id.*, Ex. A at 1, Ex. C at 2, and that during the relevant period, Affiliate Defendants actually submitted claims for Medicaid reimbursement, *see id.*, Ex. A at 1, Ex. B at 3.  Taken together, these facts permit an observer to infer implied false certifications in the submission of those claims.

---

[4]      Relator urges the Court to ignore the binding precedent of *Solomon* because it was not cited in Defendants' initial briefing.  Dkt. 95 at 13.  On a reconsideration motion, a party can offer any authority that demonstrates why the court's prior legal ruling was clearly erroneous.  *See Chem. Mfrs. Ass'n v. U.S. E.P.A.*, 870 F.2d 177, 266 (5th Cir.), *decision clarified on reh'g*, 885 F.2d 253 (5th Cir. 1989) (noting petitions for reconsideration should identify specific alleged errors and provide citations to authority for support).  *Solomon* does that.  Indeed, because it is binding circuit authority, the Court must consider it.

The same reasoning applies to Relator's reverse FCA claim.  Any reasonable observer would infer from public filings in the state mandamus proceedings involving Affiliate Defendants' continued challenge to their termination from Texas Medicaid and related news media coverage that, as of the date Relator filed his Complaint, Affiliate Defendants had not repaid the funds they received under the injunctions.

Turning to the original source exception, despite numerous opportunities over the course of several rounds of briefing, Relator has made no effort to demonstrate how his Complaint satisfies the Fifth Circuit's standard set out in *U.S. ex rel. King v. Solvay Pharmaceuticals, Inc.*, 871 F.3d 318, 327 (5th Cir. 2017).  It clearly does not, and thus, *King* requires this Court to find Relator is not an original source under the voluntary disclosure prong.  Relator likewise fails to meet the material addition prong of the original source exception.  Even if "Relator's journalistic investigation triggered inquiries" by various government entities, Order at 29 (emphasis omitted), Relator has not shown "that, through the additional allegations in . . . *[the] complaint*, [he] . . . materially adds to, the publicly disclosed allegations or transactions."  *U.S. ex rel. Sullivan v. Atrium Medical Corporation*, No. SA-13-CA-244-OLG, 2015 WL 13799759, at *16 (W.D. Tex. June 15, 2015) (emphasis added).

## IV.   In the Alternative, the Court Should Certify Its Order for Interlocutory Appeal

If the Court declines to reconsider its Order, it should certify this matter for interlocutory appeal.  *See* Dkt. 83 at 19-21 (listing four issues for certification).  Notwithstanding a near-term trial date, appellate resolution of one or more of the identified issues in Defendants' favor would result in dismissal of some or all claims, thus substantially narrowing the scope and complexity of any such trial.  That, in turn, would materially advance the ultimate termination of the litigation. *See Hopkins v. Cornerstone America*, No. 4:05-CV-332-Y, 2007 WL 9772306, at *3 (N.D. Tex.

9

Aug. 1, 2007).  For the same reasons, all four issues involve controlling questions of law.  *See id.* at \*2 (inquiry is "in practice . . . closely connected" to material advancement question).  And for each issue, there are substantial grounds for disagreement – either due to contrary court of appeals precedent (Issues 1, 3, and 4) or a difficult question of first impression (Issue 2).  *See Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 723–24 (N.D. Tex. 2006).

## CONCLUSION

This Court should reconsider its Order denying Defendants' motions to dismiss Relator's Complaint and the State of Texas's Complaint in Intervention.  In the alternative, the Court should certify the issues for interlocutory appeal.

Dated: June 28, 2022

Respectfully submitted,

**ARNOLD & PORTER KAYE SCHOLER LLP**

By      /s/ *Craig D. Margolis*
CRAIG D. MARGOLIS (*pro hac vice*)
Craig.Margolis@arnoldporter.com
TIRZAH S. LOLLAR (*pro hac vice*)
Tirzah.Lollar@arnoldporter.com
CHRISTIAN D. SHEEHAN (*pro hac vice*)
Christian.Sheehan@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Tel: (202) 942-6000
Fax: (202) 942-5999

CHRISTOPHER M. ODELL
Texas State Bar No. 24037205
Christopher.Odell@arnoldporter.com
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: +1 713.576.2400
Fax: +1 713.576.2499

10

**BLACKBURN BROWN LLP**
RYAN PATRICK BROWN
Texas State Bar No. 24073967
brown@blackburnbrownlaw.com
1222 S. Fillmore
Amarillo, TX 79101
Tel: (806) 371-8333
Fax: (806) 350-7716

*Attorneys for Affiliate Defendants*

**O'MELVENY & MEYERS LLP**

*/s/ Danny S. Ashby*
DANNY S. ASHBY
Texas Bar No. 01370960
dashby@omm.com
JUSTIN R. CHAPA
Texas Bar No. 24074019
jchapa@omm.com
2501 N. Harwood Street, Suite 1700
Dallas, TX 75201
Tel: (972) 360-1900
Fax: (972) 360-1901

LEAH GODESKY (*pro hac vice*)
lgodesky@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Tel: (310) 553-6700
Fax: (310) 246-6779

**BLACKBURN BROWN LLP**
RYAN PATRICK BROWN
Texas Bar No. 24073967
brown@blackburnbrownlaw.com
1222 S. Fillmore Street
Amarillo, TX 79101
Tel: (806) 371-8333
Fax: (806) 350-7716

*Attorneys for Defendant Planned
Parenthood Federation of America, Inc.*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 28, 2022 the foregoing document was electronically filed with the Clerk of Court using CM/ECF.


/s/ *Craig D. Margolis*
Craig D. Margolis