IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION



| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 2:21-CV-022-Z |
| | § | |
| PLANNED PARENTHOOD FEDERATION | § | |
| OF AMERICA, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION & ORDER

Before the Court is Defendants'[1] Motion for Reconsideration, or, in the Alternative, Certification for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) ("Motion") (ECF No. 82), filed on May 24, 2022. Having considered the parties' briefing and relevant law, the Court finds Defendants' Motion should be and hereby is **DENIED**.

### BACKGROUND

The Court's earlier Order describes the facts and circumstances leading to this lawsuit and the reasons for granting in part and denying in part Defendants' Motions to Dismiss Relator Alex Doe's and the State of Texas's ("Plaintiffs" collectively) Complaints. *See generally* ECF No. 71. Rather than reiterate the history of this case and the Court's reasoning, the Court will include only the information necessary to rule on the instant Motion.

Relator filed the instant *qui tam* action against Defendants, seeking civil penalties and treble damages under the False Claims Act ("FCA"), the Texas Medicaid Fraud Prevention

---

[1] Defendants are Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood of South Texas, Inc., Planned Parenthood of Cameron County, Inc., and Planned Parenthood of San Antonio, Inc. The Court will refer to all Planned Parenthood entities as "Defendants" collectively.

1

Act ("TMFPA"), and the Louisiana Medical Assistance Programs Integrity Law ("LMAPIL") on behalf of the United States, Texas, and Louisiana. *See generally* ECF No. 2. Texas elected to intervene in the suit, the United States declined to intervene, and Louisiana neither elected nor declined to intervene. *See generally* ECF Nos. 16, 18. On February 14, 2022, Defendants moved to dismiss Plaintiffs' Complaints for improper service of process and on a variety of grounds. *See generally* ECF Nos. 44, 46, 48, 50. Parties informed the Court service was properly affected and, therefore, the Court denied the Motions to Dismiss on that ground. ECF No. 69.

The Court then considered the Parties' written arguments, concluding Defendants' Motions to Dismiss must be granted in part and denied in part. *See generally* ECF No. 71. The Court dismissed Relator's federal conspiracy to commit health-care fraud claim and denied dismissal of Plaintiffs' remaining claims. *Id.* In particular, the Court found the following:

1. Plaintiffs' Complaints comply with Federal Rule of Civil Procedure 12(b)(6). Relator plausibly pleads the elements of a "reverse false claim" under the FCA, TMFPA, and LMAPIL, and Texas plausibly pleads the elements of a "reverse" TMFPA violation. *Id.* at 4–16.

2. Plaintiffs' Complaints comply with Federal Rule of Civil Procedure 9(b), as Plaintiffs plausibly plead fraud with particularity. *Id.* at 17–23.

3. The FCA's, TMFPA's, and LMAPIL's "public disclosure bars" do not prohibit Counts I–IV of Relator's Complaint because Relator's Complaint is not based on publicly disclosed information and Relator qualifies as an "original source." *Id.* at 23–29.

4. Judicial estoppel does not bar Texas's "reverse false claim." *Id.* at 29–32.

5. TMFPA's "government-action bar" does not require dismissal of Plaintiffs' claims under Texas law. *Id.* at 33–34.

**ANALYSIS**

Defendants now ask the Court to reconsider on three grounds. *See generally* ECF No. 82. Defendants assert: (1) "Defendants' alleged obligation to repay was contingent on future events, *Simoneaux* controls and mandates dismissal of Plaintiffs' reverse FCA and TMFPA claims"; (2)

"[t]he Court should reconsider its ruling on scienter and dismiss Plaintiffs' reverse FCA/TMFPA claims for failure to plead that essential element"; and (3) "the Court should reconsider its decision as to the public disclosure bar" as the Court's decision "mistakenly relies on an incorrect legal standard contrary to Fifth Circuit precedent," and because "Relator has pled no details regarding his alleged disclosures to the government" to qualify as an "original source." ECF No. 83 at 7–10. In response, Plaintiffs note "Defendants' Motion contains no new facts, evidence, or argument demonstrating that the Court's ruling denying Defendants' Motions to Dismiss was erroneous." ECF No. 95 at 6. Alternatively, Defendants request the Court certify four questions for interlocutory appeal under 28 U.S.C. § 1292(b). ECF No. 83 at 25. The Court has received Defendants' Reply — ECF No. 110 — and the Motion is ripe for the Court's decision.

### A. District Courts Grant Motions to Reconsider in Limited Circumstances

The Federal Rules of Civil Procedure do not officially provide for a motion for reconsideration. *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004). A request to reconsider an interlocutory order has been construed to fall under Federal Rule of Civil Procedure 54(b). *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 n.92 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994) (en banc). Rule 54(b) states: "any order or other decision, however designated, that adjudicates fewer than all the claims or rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims."

"Although the precise standard for evaluating a motion to reconsider under Rule 54(b) is unclear, whether to grant such a motion rests within the discretion of the court." *Dos Santos v. Bell Helicopter Textron, Inc.*, 651 F. Supp. 2d 550, 553 (N.D. Tex. 2009). "[C]onsiderations similar to those under Rule 59 and 60 inform the Court's analysis." *Id.* The Fifth Circuit has held Rule 54(b)

is "less stringent" and "more flexible" than Rule 59 (e). *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336–37 (5th Cir. 2017) (citing *Cobell v. Jewell*, 802 F.3d 12, 25–26 (D.C. Cir. 2015)). "For the Courts to [grant a motion to reconsider], a movant must demonstrate that the motion is necessary to (1) correct manifest errors of law or fact upon which the judgment is based; (2) allow for consideration of newly discovered or previously unavailable evidence; (3) prevent a manifest injustice, such as that arising from serious misconduct by counsel; or (4) address an intervening change in controlling law." *Planned Parenthood of Greater Tex. Surgical Health Servs. v. City of Lubbock, Tex.*, No. 5-21-CV-114, 2021 WL 4775135, at * 2 (N.D. Tex. 2021). A manifest error is an "error that is plain and indisputable, and that amounts to a complete disregard of the controlling law." *Id.* (internal marks omitted).

However, "the mere fact that that Rule 54(b) provides for a more flexible approach to reviewing motions for reconsideration does not mean that such motions should automatically be granted." *Halprin v. Fed. Deposit Ins. Corp.*, Civ. A. No. 5:13-CV-1042, 2017 WL 9808438, at *2 (W.D. Tex. Oct. 17, 2017). "[A] district court's broad discretion under [R]ule 54(b) must be exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays." *Turk v. Pershing LLC*, Civ. A. No. 3:09-CV-2199-N, 2019 WL 13074701, at *1 (N.D. Tex. Aug. 1, 2019). A motion to reconsider may not be used to relitigate old matters or to present evidence or arguments that should have been offered before judgment was entered. 11 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2810.1. 157–62 (3d ed. 2012).

### B. Defendants Fail to Demonstrate a Manifest Error of Law or Fact

Defendants seek reconsideration on three "discrete issues" which the Court will address in turn. ECF No. 83 at 7. For each of these issues, Defendants argue the Court misapplied relevant

law and precedent. *See id.* at 7–10. Nowhere do Defendants argue the Court should reconsider its previous Order based on newly discovered or unavailable evidence, to prevent a manifest injustice, or because of some intervening change in controlling law. And the Court agrees these three circumstances are not prevalent here. Therefore, the Court will only grant the Motion to correct a manifest error of law or fact in its previous Order. In short, because the Court finds that it did not manifestly err in its previous Order, the Court **DENIES** Defendants' Motion to Reconsider.

### 1. The Court will not reconsider its determination that Plaintiffs adequately pled the existence of a repayment obligation.

Defendants first request the Court reconsider its determination Plaintiffs adequately alleged the existence of a repayment obligation. ECF No. 83 at 12–16. Defendants aver the Court made several mistakes in making this finding. First, Defendants argue the Court incorrectly reasoned Plaintiffs sufficiently alleged Defendants are liable for the Medicaid funds received under a later-vacated injunction. They contend the Court improperly relied on the principle that "a party against whom an erroneous judgment or decree has been carried into effect is entitled, in the event of a reversal, to be restored by his adversary to that which he has lost thereby." *Arkadelphia Milling Co. v. St. Louis Sw. Ry. Co.*, 249 U.S. 134, 145 (1919). Specifically, Defendants argue no court — based on this principle — "has held that the vacatur of an injunction *automatically* triggers repayment." ECF No. 83 at 12. Because neither Texas nor Louisiana took "affirmative steps" nor "initiated recoupment proceedings," Defendants state they "were under no obligation to repay the Medicaid funds they received under the injunctions." *Id.* at 13–14.

The Court will not reconsider its earlier Order on these points because a Rule 54(b) motion is not the instrument to "relitigate issues that were resolved to the movant's dissatisfaction." *See Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 289 (5th Cir. 1989). As pointed out by Plaintiffs, the Court already considered these arguments and was well briefed on the applicable

5

case law by all parties. *Compare* ECF No. 83 at 12–16, *with* ECF No. 65 at 9; *also compare* ECF No. 83 at 12–16, *with* ECF No. 49 at 31, *and* ECF No. 51 at 23, *and* ECF No. 65 at 7, 13, 15, *and* ECF No. 66 at 8, 10. Furthermore, Plaintiffs were only required to *plausibly* plead the existence of an obligation at the motion-to-dismiss stage, and Plaintiffs easily satisfied that burden here.

Also, Defendants already argued — and the Court considered — whether Texas was required to initiate an administrative recoupment action before filing suit. Defendants rely heavily on the rule in *U.S. ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*, holding that an obligation to repay arises only where there is an "established" duty. 843 F.3d 1033, 1036–40 (5th Cir. 2016). But the Fifth Circuit also recognized "the fact that further governmental action is required to collect a fine or penalty does not, standing alone, mean that a duty is not established." *Id.* at 1040. And as the Court previously found, Relator plausibly pled the existence of an obligation in their allegation of a reverse false claim. ECF No. 71 at 6–9. Specifically, Relator plausibly pled that Defendant's obligation arose under the Affordable Care Act's ("ACA") 60-Day Rule. *Id.* at 6–7.

Though never raised in their Reply, Defendants now aver the ACA's "60-Day Rule" does not apply in this situation to create a repayment obligation, citing a Centers for Medicare and Medicaid Services ("CMS") response to public comments made concerning the proposed 60-Day Rule. *See* ECF No. 83 at 14–16. This new argument is irrelevant. Defendants selectively extract from the relevant CMS response. Yes, CMS "agree[d] that payments that were proper at the time payment was made do not become overpayments at a later time." 81 Fed. Reg. 7654, 7658 (2016). However, CMS also noted "[p]roviders and suppliers should analyze the facts and circumstances present in their situation to determine whether an overpayment exists." *Id.* Ultimately, the Court agrees with Plaintiffs: "this comment and response illustrate that while changes in coverage decisions may not retroactively render a payment an overpayment, overpayments are identified by

6

the facts and circumstances present in providers' and suppliers' specific situations." ECF No. 95 at 14. Defendants' arguments do not warrant reconsideration.

### 2. The Court will not reconsider its determination that Plaintiffs adequately pled scienter for their reverse FCA and TMFPA claims.

Defendants next ask the Court to reconsider its determination that Plaintiffs adequately alleged scienter for their reverse FCA and TMFPA claims. ECF No. 83 at 16. They state, "the Court did not consider whether the government's knowledge of, and failure to take any action to recover, the alleged overpayments defeats scienter under the reverse false claim provisions of the FCA and TMFPA." *Id.* Defendants argue that such circumstances prevented Plaintiffs from pleading an improper avoidance of an obligation to pay money to the government as required under the FCA and TMFPA. *See* 31 U.S.C. § 3729(a)(1)(G); *see also* TEX. HUM. RES. CODE § 36.002(12).

Defendants rely heavily on the legislative history of the FCA in arguing the meaning of the term "improperly" since the statute does not provide a definition. ECF No. 83 at 11–12. Of relevance are the statements of Senator Jon Kyl and the Senate Report that accompanied the passage of the FCA. Senator Kyl explained that the statute was meant to punish persons who acted with "improper motives" or "inherently improper means." 155 Cong. Rec. S4531-01 at 4540. "Improper means" — according to Senator Kyl — means conduct that is "inherently wrongful and constitute[s] an independent tort." *Id.* Based on this understanding, Defendants argue Plaintiffs could not plead the requisite "improperly" requirement, as "[b]oth Louisiana and Texas knowingly made payments to Affiliate Defendants under the injunctions and were obviously aware of the Fifth Circuit's November 2020 decision that Plaintiffs allege created the repayment obligation." ECF No. 83 at 19. Therefore — Defendants argue — Plaintiffs do not allege any improper action by Defendants to avoid a repayment obligation. *Id.*; *see also* ANTONIN SCALIA & BRYAN A.

GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 383 (2012) ("[W]e are governed not by unexpressed or inadequately expressed 'legislative goals' but by the *law*.").

This argument is well briefed, but ultimately unresponsive. First, the Court hesitates to rely on the legislative statements cited by Defendants. "[I]nquiries into legislative motives are a hazardous matter." *Dobbs v. Jackson Women's Health Org.*, No. 19-1392, 597 U.S. ___, 2022 WL 2276808, at *18 (2022) (internal marks omitted). This Court joins other courts in their reluctance to attribute the statements of a legislator to the whole legislative body because "[w]hat motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it." *Id.*

Second, Defendants again rehash arguments already considered — and rejected — when the Court adjudicated their Motions to Dismiss. *Compare* ECF No. 83 at 17–19, *with* ECF No. 65 at 17–19. And based on the applicable law and facts, the Court is convinced Plaintiffs adequately pled Defendants "knowingly and improperly" avoided a repayment obligation. Plaintiffs pled Defendants knew by February 1, 2017, their provider terminations were effective, and were therefore not entitled to retain reimbursements for services provided on or after that date. ECF No. 2 at 5–6, 36–37, 39–40. Plaintiffs also pled Defendants improperly avoided the obligation to repay the government by failing to return reimbursements for those services within the statutory 60-day period. *Id.* at 36–37.

In their reply, Defendants assert "the Court did not address this issue when Defendants raised it in their initial briefing." ECF 110 at 8. Far from it. The Court acknowledged "Relator also alleges Defendants knew they *improperly* received Medicaid overpayments." ECF No. 71 at 9–10 (emphasis added). The Court then listed eight instances in Relator's complaint forming the bulwark of Relator's "improperly" allegation. *Id.* at 10. As with Defendants' first request, the

Court will not permit Defendants to relitigate an issue which was resolved to their dissatisfaction at the motion-to-dismiss-stage.

### 3. The Court will not reconsider its rulings on the Public Disclosure Bar.

In its Order, the Court determined (1) the Public Disclosure Bar does not apply; and (2) even if it did apply, Relator qualifies as an "original source." Defendants now ask the Court to reconsider those determinations. The Court stands by its original findings.

*a. Application of Public Disclosure Bar.*

Defendants make two arguments why the Court should reconsider its determination that the Public Disclosure Bar does not apply. First, citing *U.S. ex rel. Solomon v. Lockheed Martin Corp.*, 878 F.3d 139 (5th Cir. 2017), Defendants argue it was already publicly disclosed Defendants submitted claims for payment under Medicaid, and Defendants' alleged violation of state and federal laws rendered them unqualified to bill for Medicaid services in Texas and Louisiana. ECF No. 83 at 15–16. But the Court already determined — after thorough examination of the Complaint and the motion-to-dismiss briefing — the "public disclosures cited by Defendants do not detail any false certifications made by Defendants." ECF No. 71 at 14. Furthermore, the Court agrees with Plaintiffs that *Solomon* supports the Court's earlier determination, as "before Relator filed the complaint, there was no prior public disclosure of a 'misrepresented state of facts' and a 'true state of facts' that would give rise to an inference of fraud under the FCA." ECF No. 95 at 19 (citing *Solomon*, 878 F.3d at 144–45).

Second, Defendants aver their "retention of Medicaid funds after the Fifth Circuit's November 2020 *en banc* decision . . . was publicly disclosed" by a Texas state court temporary restraining order ("TRO") enjoining the State of Texas from terminating Affiliate Defendants from Medicaid. ECF No. 83 at 22. Yet, this argument fares no better than Defendants' arguments that

the Texas and Louisiana termination letters and the *en banc* Fifth Circuit opinion from November 2020 also publicly disclosed Defendants' retention of overpayments. As with those alleged disclosures, the TRO does not "form[] the basis of Relator's reverse false claim." ECF No. 71 at 14. Instead, Relator's theory is based on "Defendants' alleged obligation to repay Medicaid funds received under the preliminary injunction and improper avoidance of that obligation." *Id.* Again, the Court will not reconsider its prior Order based on rehashed arguments presented and rejected at the motion-to-dismiss stage.

### b. The Original Source Exception.

Defendants' only argument regarding reconsideration of the application of the "original source" exception is the Court did not hold Relator to the high bar established by *U.S. ex rel. King v. Solvay Pharms., Inc.*, 871 F.3d 318, 326–27 (5th Cir. 2017). Specifically, Defendants assert Relator failed to suggest an FCA violation because Relator did not "plead any details about the information he allegedly disclosed to the federal government." ECF No. 83 at 23–24. Therefore — Defendants argue — Relator's complaint failed to materially add to any information already in the public domain. *Id.* at 25.

Defendants again raise the same argument made in their Motions to Dismiss. And, again, the Court rejects the argument because "Relator's investigation put the federal and state governments 'on the trail' of Defendants' allegedly fraudulent conduct." ECF No. 71 at 29. Defendants have brought forward no new facts or law concerning the "original source" exception, and the Court will not reconsider its earlier decision.

### C. The Court Will Not Certify Any Matter for Interlocutory Appeal

Alternatively, Defendants ask the court to certify four questions for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). *See* ECF No. 83 at 25. A district court may certify an order for

10

interlocutory appeal when the order: (1) involves a controlling question of law; (2) "as to which there is a substantial ground for difference of opinion"; and (3) that immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Interlocutory appeals are disfavored. *Thibodeaux v. Vamos Oil & Gas Co.*, 487 F.3d 288, 292 (5th Cir. 2007). An interlocutory appeal "is not a vehicle to question the correctness of a district court's ruling or to obtain a second, more favorable opinion." *Ryan v. Flowserve Corp.*, No. 3:03-CV-1769-B, 444 F. Supp. 2d 718, 722 (N.D. Tex. 2006) (internal marks omitted). Here, Defendants' questions do not meet all the requirements set under 28 U.S.C. 1292(b). Therefore, the Court will not certify them for interlocutory appeal.

### 1. Defendants' first, third, and fourth questions do not present a "controlling question of law."

A "controlling question of law" "at the very least means a question of law the resolution of which could materially advance the ultimate termination of the litigation — thereby saving time and expense for the court and the litigants." *Flowserve*, 444 F. Supp. 2d at 723. A question of law is "controlling" when the "reversal of the district court's opinion would result in dismissal of the action" or "the certified issue has precedential value for a large number of cases." *Id.* But the determination of such a question "should not require the appeals court to go hunting through the record to see whether a genuine issue of material fact may be lurking there." *Id.* at 722 (internal marks omitted).

Defendants' first question does not amount to a "controlling question of law." Noted in Plaintiffs' Response, Defendants' first question focuses solely on the effect of an injunction in a Medicaid provider's obligation to return an overpayment. ECF No. 95 at 25. Fixated on the effect of the cited injunctions, Defendants fail to consider how "Plaintiffs' causes of action rely on the interplay between several sources that give rise" to Defendants' alleged obligation, including the

Texas Medicaid Provider Agreement, the Texas Medicaid Provider Manual, various Texas laws, and the cited injunctions. *Id.* Resolving the first question would only resolve a small portion of the various program requirements at issue here. Therefore, certification of question one would not materially advance the ultimate termination of the litigation — and thus it is not a "controlling question of law."

Defendants' third and fourth questions fare no better. The Court agrees with Plaintiffs: resolution of these questions would require an in-depth, fact-intensive inquiry by the appeals court. An inquiry of this sort would "require the appeals court to go hunting through the record," at least of every alleged disclosure. *Flowserve*, 444 F. Supp. 2d at 722. Therefore, Defendant's third and fourth questions are not "controlling questions of law."

### 2. Defendants' first and second questions are not questions as to which there is a substantial difference of opinion.

Courts have found "substantial ground for difference of opinion" where:

> a trial court rules in a manner which appears contrary to the rulings of all Courts of Appeals which have reach the issue, if the circuits are in dispute on the question and the Court of Appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.

*Id.* at 724 (citing 4 AM. JUR. 2d *Appellate Review* § 128 (2005)). "But simply because a court is first to rule on a question or counsel disagrees on applicable precedent does not qualify the issue as one over which there is substantial disagreement." *Id.* at 724. Substantial disagreement does not arise from a party's claim the district court ruled incorrectly. *Id.*

There is no "substantial ground for difference of opinion" as to Defendants' first question. Defendants argue they "are aware of no court ever to hold that the vacatur of an injunction *automatically* triggers a repayment obligation or . . . that it retroactively converts funds lawfully received under an injunction into overpayments for purposes of the ACA's 60-Day Rule."

12

ECF No. 83 at 26 (internal marks omitted). Again though, simply because a court is first to rule on a question does not mean there exists "substantial ground for difference of opinion."

As for the second question: it can't be a question as to which there is a substantial difference of opinion because the Texas Supreme Court has foreclosed the issue. Defendants' second question asks:

> Whether a plaintiff can plausibly plead that an overpayment was 'knowing and improperly' retained under the reverse false claim provisions of the False Claims Act and the Texas Medicaid Fraud and Prevention Act where the government is on notice of the alleged overpayment and takes no action.

ECF No. 83 at 25. Yet the Supreme Court of Texas has previously held the States' conduct is irrelevant to a finding of liability under TMFPA. *See Nazari v. State*, 561 S.W.3d 495, 507 (Tex. 2018). And the same court has also held "TMFPA adopts no other fault-mitigation mechanism," which Plaintiffs argue includes "shifting blame onto the State." *In re Xerox Corp.*, 555 S.W.3d 518, 536 (Tex. 2018) (orig. proceeding); ECF No. 95 at 27. Because this issue is settled under Texas law, there is "no substantial ground for difference of opinion."

### 3. Immediate appeal would not materially advance the ultimate termination of this litigation.

The "materially advance" requirement of Section 1292(b) seeks to avoid protracted and expensive litigation. *LaFarge v. Kyker*, No. 1:08-CV-185-SA-JAD, 2009 WL 4110887, at *1 (N.D. Miss. Nov. 2009). The Court's concern is whether interlocutory appeal will speed up the litigation. *Flowserve*, 444 F. Supp. 2d at 723. The Court finds interlocutory appeal in this instance will do the opposite.

Defendants argue "immediate appeal would materially advance the ultimate termination of the litigation because it would result in the dismissal of some or all claims." ECF No. 83 at 27. But this dispute is already on its way to speedy resolution. Dispositive motions are to be filed by

December 27, 2022 — a date only six months away — and trial scheduled another four months on for April 24, 2023.[2] Interlocutory appeal here would only delay resolution of this case. Following final judgment in this case, any party can seek appellate review.

CONCLUSION

For the reasons stated above, Defendant's Motion for Reconsideration, or, in the Alternative, Certification for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) is **DENIED**.

**SO ORDERED**.

July 13, 2022

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

---

[2] The Court has adjudicated Defendants' Motion for Extension of Schedule (ECF No. 107) and these dates are consistent with the Court's Amended Scheduling Order.