## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| United States of America | § | |
| | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| | § | CIVIL ACTION NO. 2:21-CV-00022-Z |
| | § | |
| The State of Texas | § | |
| | § | Date:      July 18, 2022 |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| | § | |
| | § | |
| The State of Louisiana | § | |
| | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| Planned Parenthood Federation of America, Inc., | § | |
| Planned Parenthood Gulf Coast, Inc., Planned | § | |
| Parenthood of Greater Texas, Inc., Planned | § | |
| Parenthood South Texas, Inc., Planned Parenthood | § | |
| Cameron County, Inc., Planned Parenthood San | § | |
| Antonio, Inc., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## AFFILIATE DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO COMPEL TO THE STATE OF TEXAS

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ............................................................................................................... 3

I.      Allegations in Relator's and Texas' Complaint ................................................. 3

II.     Affiliate Defendants' Discovery Requests ........................................................ 4

III.    Texas' Responses ............................................................................................... 6

LEGAL STANDARD ........................................................................................................ 8

ARGUMENT .................................................................................................................... 9

IV.     Affiliate Defendants' Discovery Requests Call for Information and Documents Within
        the Scope of Discovery ...................................................................................... 9

V.      Texas' Objections to Affiliate Defendants' Discovery Requests Should be Overruled... 17

VI.     Texas Must Verify its Responses to Interrogatories. ...................................... 20

CONCLUSION ............................................................................................................... 20

CERTIFICATE OF CONFERENCE ............................................................................ 22

CERTIFICATE OF SERVICE ...................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*United States ex rel. Bachert v. Triple Canopy, Inc.*,
  321 F. Supp. 3d 613 (E.D. Va. 2018) .....................................................................13

*Barkley v. Life Ins. Co. of N. Am.*,
  No. 3-07-CV-1498-M, 2008 WL 450138 (N.D. Tex. Feb. 19, 2008) .............................17, 18

*Booth v. City of Dallas*,
  312 F.R.D. 427 (N.D. Tex. 2015) .......................................................................17, 18

*Chemtech Royalty Assocs., L.P. v. United States*,
  No. 06-258-RET-DLD, 2009 WL 854358 (M.D. La. Mar. 30, 2009)..................................19

*Dugas v. Mercedes-Benz USA, LLC*,
  No. 6:12-CV-02885, 2014 WL 458083 (W.D. La. Feb. 3, 2014).........................................20

*United States ex rel. Goodman v. Arriva Med., LLC*,
  471 F. Supp. 3d 830 (M.D. Tenn. 2020)....................................................................15

*Heller v. City of Dallas*,
  303 F.R.D. 466 (N.D. Tex. 2014) ............................................................................19

*Jorge v. Atl. Hous. Found., Inc.*,
  No. 3:20-CV-2782-N, 2022 WL 1082345 (N.D. Tex. Apr. 11, 2022) ..................................20

*United States ex rel. McBride v. Halliburton Co.*,
  848 F.3d 1027 (D.C. Cir. 2017) ..............................................................................12

*MetroPCS v. Thomas*,
  327 F.R.D. 600 (N.D. Tex. 2018) ..............................................................................9

*Olhausen v. Arriva Med., LLC*,
  No. 21-10366, 2022 WL 1203023 (11th Cir. Apr. 22, 2022)..............................................14

*Perez v. Bodega Latina Corp.*,
  No. EP-19-CV-00360-DCG, 2021 WL 3272211 (W.D. Tex. July 30, 2021) .........................18

*United States ex rel. Porter v. Magnolia Health Plan, Inc.*,
  810 F. App'x 237 (5th Cir. 2020) ............................................................................12

*United States ex rel. Purcell v. MWI Corp.*,
  807 F.3d 281 (D.C. Cir. 2015) ...............................................................................13

*United States Ex Rel. Rose v. Stephens Inst.*,
  909 F.3d 1012 (9th Cir. 2018) ...................................................................15

*S.E.C. v. Brady*,
  238 F.R.D. 429 (N.D. Tex. 2006) .....................................................9, 17, 18

*Safeco Ins. Co. of Am. v. Burr*,
  551 U.S. 47 (2007)....................................................................................14

*In re Santa Fe Int'l Corp.*,
  272 F.3d 705 (5th Cir. 2001) ....................................................................19

*Signal Fin. Holdings LLC v. Looking Glass Fin. LLC*,
  No. 17 C 8816, 2021 WL 4935162 (N.D. Ill. June 10, 2021) ..................18

*United States ex rel. Streck v. Allergan*,
  746 F. App'x 101 (3d Cir. 2018) ...............................................................13

*United States v. Comstor Corp.*,
  308 F. Supp. 3d 56 (D.D.C. 2018) ............................................................13

*United States v. Dialysis Clinic, Inc.*,
  No. 5:09-CV-00710, 2011 WL 167246 (N.D.N.Y. Jan. 19, 2011)...........11

*United States v. Supervalu Inc.*,
  9 F.4th 455 (7th Cir. 2021) ......................................................................13

*Universal Health Services v. United States, ex rel. Escobar*,
  579 U.S. 176 (2016)........................................................2, 12, 13, 15

*United States ex rel. Zissa v. Santa Barbara Cty. Alcohol, Drug, & Mental Health Servs.*,
  No. 14-cv-6891, 2019 WL 3291579 (C.D. Cal. Mar. 12, 2019)...............12

**Statutes**

31 U.S.C. § 3729(a)(1)(G) .................................................................................13

False Claims Act ................................................................................. *passim*

Louisiana Medical Assistance Programs Integrity Law ........................................4

Tex. Hum. Res. Code § 36.002(12) ...................................................4, 7, 8, 13

Tex. Hum. Res. Code § 36.052(a)(3)..................................................................14

Tex. Hum. Res. Code § 36.113(a) ......................................................................16

Texas Medicaid Fraud Prevention Act sections 36.002(2), (4), and (12)........................4

U.S. Code § 3730(e)(4) ...................................................................................................16

**Other Authorities**

81 Fed. Reg. 7654, 7658 (2016) ....................................................................................14

1 Tex. Admin. Code Sec. 371.1703(c)(7) .......................................................................16

Fed. R. Civ. P. 16 ............................................................................................................5

Fed. R. Civ. P. 26 ............................................................................................................2

Fed. R. Civ. P. 26(b)(1) ..........................................................................................1, 8, 9, 17

Fed. R. Civ. P. 26(b)(5)(A) .............................................................................................19

Fed. R. Civ. P. 33 ............................................................................................................8

Fed. R. Civ. P. 33(b)(3) ...................................................................................................20

Fed. R. Civ. P. 37(a)(3)(B) ..............................................................................................9

Defendants Planned Parenthood Gulf Coast, Inc. ("PPGC"), Planned Parenthood of Greater Texas, Inc. ("PPGT"), Planned Parenthood South Texas, Inc. ("PPST"), Planned Parenthood Cameron County, Inc. ("PP Cameron County"), and Planned Parenthood San Antonio, Inc. ("PP San Antonio") (together, "Affiliate Defendants") respectfully move the Court pursuant to Federal Rule of Civil Procedure ("FRCP") 37 for an order compelling Texas' production of complete written responses and responsive documents in response to Affiliate Defendants' Interrogatories and Requests for Production (collectively, "Discovery Requests").

## **INTRODUCTION**

Texas chose to intervene in this case, making itself a party to the litigation as a plaintiff, and has produced an expert report seeking potentially over $1 billion in damages and penalties. Yet, at the same time, it has made only the most perfunctory and paltry response to Affiliate Defendants' discovery requests, producing a grand total of approximately 90 documents (much of which consist of procedural manuals and court orders) while lodging a series of boilerplate relevance objections. Its overarching argument is that, because Texas has intervened only as to the reverse false claims allegations, it may take the obligation to repay as a *given* and need not produce anything relating to the underlying basis for the termination that gave rise to this case. At the same time, the State's co-plaintiff, Relator Alex Doe, continues to press his claim that he may recover for alleged false claims submitted *before* the Affiliate Defendants were purportedly "terminated" from Medicaid, which of course cannot take the yet-to-have-occurred termination as a fait accompli.

Affiliate Defendants are entitled under Federal Rule of Civil Procedure 26(b)(1) to discovery of any "nonprivileged matter that is relevant to *any party's* claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action,

1

the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." (emphasis added). Here, each of these factors weighs in Affiliate Defendants' favor – the claimed damages threaten Affiliate Defendants' very existence; the information sought is entirely within the State's custody and control; the State of Texas has vast resources, particularly relative to the non-profit entities it has targeted in this litigation; and underlying discovery as to the basis for the terminations and whether Texas has treated similarly situated providers in the same manner as it has the Defendants here is highly relevant. It also rings hollow for the State to claim that it need only produce documents relevant to its own claim, given that it has been joined at the hip with Relator, speaking with one voice throughout the litigation. Even if the two were not inseparable, Rule 26 permits Affiliate Defendants to take discovery from "*any party*" relevant to any party's claims or defenses. Accordingly, Affiliate Defendants may take discovery from Texas relevant to Relator's claims and vice versa.

Texas' boilerplate objections seem directed mostly at relevance, without any showing of corresponding burden to the State. But, information need not be finally adjudged relevant or admissible to be discoverable. And, as explained in greater detail below, the information is undoubtedly relevant. For example, should Texas in the ordinary course never seek to recoup money from terminated providers, the disparate treatment of Affiliate Defendants here would be highly probative of materiality under the Supreme Court's seminal opinion in *Escobar*. *See Universal Health Services v. United States, ex rel. Escobar*, 579 U.S. 176, 191-92 (2016). Similarly, because in a reverse false claims case, the State must show the Affiliate Defendants acted "knowingly and improperly," that is, took an *objectively unreasonable* position, the views

of State officials in deciding whether or not to recoup monies administratively from the affiliates would be highly relevant. Affiliate Defendants strongly suspect that the relevant State agencies knew that they were unable properly to force repayment from medical providers for services provided to thousands of patients at a time when the providers lawfully remained in Medicaid. Production of documents (including email communications) would be highly probative therefore of both materiality and Affiliate Defendants' defense that it was objectively reasonable for them not to repay the monies absent an administrative demand for recoupment. Finally, Affiliate Defendants expect both Relator and the State will seek to present evidence at trial of the underlying basis for the terminations, including the videos taken by Relator and the administrative record for the State's termination. Indeed, these issues take up broad swaths of Relator's complaint. *See* Dkt. 2 at ¶¶ 3-6, 62-68, 72-108. Fundamental fairness and the Federal Rules dictate that the Affiliate Defendants therefore have full access to discovery in order to rebut and refute these accusations. For all of these reasons, the State's meritless objections should be overruled and the State should be compelled to provide discovery.

Affiliate Defendants respectfully request an order requiring Texas to provide complete and verified responses to Affiliate Defendants' interrogatories 2, and 4-18, as well as Affiliate Defendants' requests for production 3, 4, 6, 9-18, 21-39, 41-43, and 45.[1] This Court should also order Texas to produce a privilege log for any of its privilege assertions.

## **BACKGROUND**

I.   **Allegations in Relator's and Texas' Complaint**

On February 5, 2021, Relator filed this instant *qui tam* action, alleging that Defendants had violated the False Claims Act ("FCA") in connection with Affiliate Defendants' participation in

---

[1] Affiliate Defendants reserve their right to move to compel as to other requests depending on the documents that Texas produces subsequent to this filing and any orders issued by the Court.

Louisiana and Texas Medicaid programs. Dkt. 2. Relator alleges that Defendants violated the FCA by knowingly submitting false claims for payment to Medicaid and making material misrepresentations that Defendants were qualified under state and federal law to provide medical services and had not violated any medical or ethical standards in provision of medical services. *See id.* ¶¶ 115-117. Additionally, Relator alleges that Defendants received and retained millions of dollars in Medicaid overpayments to which they are not entitled. *See id.* ¶¶ 118-121. Relator also alleges violations of sections 36.002(2), (4), and (12) of the Texas Medicaid Fraud Prevention Act ("TMFPA") and the Louisiana Medical Assistance Programs Integrity Law. *Id.* at ¶¶ 122-134.

Specifically, Relator alleges that "from the period of 2010 through 2020, Defendants presented . . . thousands of false claims for Medicaid services, received millions of dollars of payments from state and federal funds . . . and failed to report and pay to the government money that [Defendants] received from these false claims." *See id.* ¶ 3. As to his claim for overpayment, Relator further alleges that as of October 2015, Defendants were aware that Texas had initially determined that they were not qualified to participate in Medicaid and would be terminated from the Texas Medicaid program. *See id.* ¶ 107.

Both the United States and the State of Louisiana have declined to intervene. Dkts. 18, 27. On January 6, 2022, Texas filed its Complaint in Intervention for the Section 36.002(12) TMFPA claim. Dkt. 22. Texas alleges that Defendants violated the TMFPA by improperly avoiding an obligation to repay payments received under the injunctions. *See id.* ¶¶ 40-41

## II.    Affiliate Defendants' Discovery Requests

Per the Court's Rule 16 Order, a party must file "[a]ny motion to compel discovery or for a protective order . . . 15 days after the discovery response at issue was served or due to be served." Dkt. 123 § 6(A).

On June 1, 2022, Affiliate Defendants served their First Set of Interrogatories and Requests for Production of Documents to Texas.  *See* Affiliate Defendants' Interrogatories at **Exhibit A** and Affiliate Defendants' Requests for Production at **Exhibit B**.  The Discovery Requests at issue request five categories of information relevant to the claims and defenses in this litigation: (1) information regarding Affiliate Defendants' termination from Texas Medicaid; (2) information regarding Texas' treatment of other health care providers enrolled or terminated from Texas Medicaid; (3) information pertaining to overpayments; (4) information relevant to the public disclosure bar; and (5) information related to the contentions made by Texas in this case.

**Termination from Medicaid Programs.**  Interrogatories 4-5, 7-9, and 16-17 call for a description of facts related to Affiliate Defendants' termination from Texas Medicaid and eligibility for Texas Medicaid.  *See* Ex. A.  Requests for Production 9-12, 14, 18, 21-24, 31-39, and 45 request documents related to Affiliate Defendants' Medicaid status, eligibility, and termination from Medicaid, Texas Medicaid, and Louisiana Medicaid.  *See* Ex. B.

**Health Care Providers.**  Interrogatories 12-14 request information pertaining to Texas' treatment of other healthcare providers under Texas Medicaid.  *See* Ex. A.  Requests for Production 16-17, 27-28 similarly request documents related to eligibility or termination of any other health care providers from Texas Medicaid.  *See.* Ex. B.  Request for Production 29 also seeks information related to Texas' policies and understanding regarding affiliated companies under federal and state Medicaid programs.  *Id.*

**Overpayments.**  Interrogatories 2, 11, and 17 request information pertaining to overpayments and those overpayments allegedly received by Affiliate Defendants.  *See* Ex. A. Requests for Production 25-26, 30, and 42-44 request information related to whether Affiliate Defendants had an obligation to repay Medicaid payments, whether Texas considered or sought

recoupment for those payments, and other information pertaining to alleged overpayments.  *See* Ex. B.

      **Public Disclosure Bar.**  Interrogatories 6 and 10 request information pertaining to the sources from which Texas learned information and allegations related to this case.  *See* Ex. A. Requests for Production 4, 12, 14, and 34-39 request information regarding individuals that may have knowledge over the allegations made in Texas' Complaint or Relator's Complaint, including communications with Members of Congress, the Media, and the Center for Medical Progress. Likewise, Request for Production 41 seeks information related to allegations that Defendants submitted false claims to the United States, Texas, or Louisiana.  *See* Ex. B.

      **Contention Interrogatories.**  Interrogatories 3-5, 10, 11, 15, 17-18 request information pertaining to the contentions made in Texas' Complaint and the factual allegations related to this case.  *See* Ex. A.

## III.  Texas' Responses

      On July 1, 2022, Texas submitted its responses to the Discovery Requests.  *See* Texas' Responses to Interrogatories at **Exhibit C** and Texas' Responses to Requests for Productions at **Exhibit D**.  Texas also produced 90 documents, the majority of which are publicly available Texas Medicaid provider procedure manuals, and also include court orders and copies of parts of the Texas code.

      Texas' July 1 Discovery Responses were grossly inadequate.  Many of the objections are boilerplate and include little or no substantive explanation.  For example, Texas lodged "overbreadth" objections to *all* of Affiliate Defendants' requests for production without differentiation.  *See e.g.,* Ex. D at 1-20.  Texas also includes a general objection which states that Texas objects to all "RFPs where they are not properly limited to an appropriate time period" because "[a]nswering RFPs outside of the State's Specified Time Period from February 1, 2017,

to the present will be overly broad, unduly burdensome" as well as objections based on relevance and proportionality. *Id* at p. 2. Texas made no effort, however, to explain the particular burdens posed by any particular request. Further, Texas' objections wholly ignore the fact that Relator's allegations date back to 2010 and are also a proper subject of discovery in this litigation.

Similarly, Texas objected to nearly all of Affiliate Defendants' requests for production on the basis that they are "not relevant." *See* Ex. D at RFP 1-20. In its explanation, Texas stated that "[t]he State's Complaint in intervention is brought under Section 36.002(12) of the TMFPA, alleging Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid," and that the documents sought by Affiliate Defendants are "neither relevant to the State's claim or to Defendants' defenses" of Texas' TMFPA claim. *See e.g.,* Ex. D at RFP 1. Texas reasserts this same objection to a number of the interrogatory requests as well. *See e.g.,* Ex. C at Interrogatories 2, 4-5. Texas asserted various other objections with similarly limited or inadequate support. For example, Texas argues that discovery related to terminations is a "collateral attack" on the terminations; however, Affiliate Defendants are entitled to probe the terminations from the Medicaid program if Relator or Texas will use the terminations in proving their claims.[2]

On July 7, 2022, counsel for the parties met and conferred by telephone regarding Texas' responses. Primarily at issue was whether Relator was still pursuing his implied false certification claim under the FCA going back to 2010. Affiliate Defendants explained that if Relator was not pursuing those claims, they might be able to narrow several of their discovery requests. Plaintiffs agreed to consider this issue and the parties agreed to resume their conference the following day.

---

[2] And as discussed below, the circumstances surrounding terminations are directly probative of materiality and scienter. So, even if Relator and Texas do not intend to introduce evidence or argument about the terminations, Affiliate Defendants are entitled to the discovery.

Counsel for the parties met and conferred again via telephone on July 8, 2022, and Relator stated he would continue to pursue the implied false certification claims. For its part, Texas continued to assert that because it is only pursuing a claim under § 36.002(12) of the TMFPA from 2017 to the present, Texas is only required to produce discovery relevant to that claim. Once again, the State made no effort to establish why it would be burdensome to respond to the Affiliate Defendants' discovery requests, particularly in light of the millions of dollars in *single* damages it is seeking (which of course is subject to trebling and penalties under the TMFPA). On July 13, 2022, Affiliate Defendants requested that Texas provide verified interrogatory responses as required by Rule 33 and when Texas would provide a supplemental response to Interrogatory 18 (basis for any denial of a request for admission) now that Texas has responded to Affiliate Defendants' First Set of Requests for Admission. As of filing, Texas has not responded to these July 13 requests.

The parties have reached an impasse. Texas continues to assert its objections and will not produce several categories of responsive documents or written responses to several interrogatories. This Motion now follows and seeks an order compelling full and complete responses to interrogatories 2, and 4-18, as well as requests for production 3, 4, 6, 9-18, 21-39, 41-43, and 45. Affiliate Defendants also seek to compel Texas to verify its responses to interrogatories and produce a privilege log for any information withheld on the basis of privilege.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), a party "may obtain discovery regarding any non-privileged matter that is relevant to *any party's* claim or defense and proportional to the needs of the case." (emphasis added). Courts analyze six factors to determine whether discovery requests are proportional to the needs of the case: (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4)

the parties' resources; (5) the importance of discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(1); *MetroPCS v. Thomas*, 327 F.R.D. 600, 609 (N.D. Tex. 2018).

"A party seeking discovery may move for an order compelling an answer, designation, production, or inspection."  Fed. R. Civ. P. 37(a)(3)(B).  Among other things, failure to answer interrogatories or to produce documents or respond whether inspection will be permitted are all appropriate bases for a motion to compel.  *Id.*  On a motion to compel, once the moving party establishes the materials requested are within the scope of permissible discovery, the party resisting discovery bears the burden of specifically objecting and showing that a discovery request would impose an undue burden or expense or is otherwise objectionable.  *See S.E.C. v. Brady*, 238 F.R.D. 429, 436-37 (N.D. Tex. 2006).

## ARGUMENT

The Court should order Texas to provide complete responses to Affiliate Defendants' interrogatories and produce responsive documents because Affiliate Defendants' Discovery Requests call for information squarely within the scope of discovery and none of Texas' objections have any merit.

## IV.   Affiliate Defendants' Discovery Requests Call for Information and Documents Within the Scope of Discovery

Each of Affiliate Defendants' interrogatories and document requests seek information within the scope of permissible discovery.[3]

---

[3] Relator certainly takes an expansive view of the types of information relevant to his claims. Indeed, in his second request for production, Relator seeks all documents and communications "concerning" Texas or Louisiana Medicaid, not in any way limited to the topics at issue in the suit. And in his first requests for production, Relator seeks all communications between any Defendant and any employee of Texas or Louisiana concerning their Medicaid programs.  Relator's broad view of the scope of appropriate discovery only supports that Affiliate Defendants are entitled to the comparatively narrow information they seek.

**Termination from Medicaid Programs.**   Texas refuses to provide responses and documents related to Affiliate Defendants' claimed improper conduct in connection with facilitating fetal tissue donation underlying the Affiliate Defendants' termination from Medicaid; its basis for sanctioning other Affiliate Defendants for supposed conduct by Defendant PPGC; or anything else to do with the Affiliate Defendants' termination from Texas Medicaid, arguing that the relevant requests are an "improper collateral attack of Defendants' termination from Texas Medicaid, which has been decided as a matter of law and which is not an issue in this case."  Ex. C at 4.  However, these documents and communications are relevant to Affiliate Defendants' defense of both Relator's and Texas' claims.  More specifically, information related to Affiliate Defendants' termination from Texas Medicaid and eligibility for Texas Medicaid, including the use of fetal tissue in medical research and whether Affiliate Defendants provided care against the generally accepted medical standards (sought by interrogatories 4-5, 7-9, and 15-17 and requests for production 9-12, 14, 18, 21-24, 31-39, and 45) are within the scope of discovery for several reasons.

Termination information is relevant to Affiliate Defendants' defense against Relator's implied false certification claims.  Relator alleges that Affiliate Defendants began submitting false claims in 2010 because, under Relator's theory, PPGC's claimed wrongdoing in connection with fetal tissue donation rendered all Affiliate Defendants unqualified to participate in Medicaid.  *See* Dkt. 2 at ¶¶ 3, 115.  Relator further alleges that he provided information to Texas about Affiliate Defendants' participation in fetal tissue research, which caused the States of Texas and Louisiana to terminate Affiliate Defendants' participation in Medicaid.  *See id.* ¶116.

To prevail on his implied false certification claim, Relator must show not only that each Affiliate Defendant took illegal actions that rendered their claims for payment "false" but also,

*inter alia*, that (1) they knowingly submitted false claims and (2) that the alleged falsity was material to the government's decision to pay.  Communications related to PPGC's claimed wrongdoing, and the other Affiliate Defendants' "affiliation" with PPGC would render an organization unqualified, guidance Texas has issued related to Medicaid qualifications, and Texas' efforts to communicate with Medicaid providers about these requirements are all relevant to scienter — that is, whether any Affiliate Defendant *knowingly* submitted "false" claims.  In addition, Texas' communications related to Affiliate Defendants' alleged fetal tissue research prior to the termination, as well as information regarding the generally accepted medical standards in Texas is relevant to the materiality of Relator's claim—whether the government would have declined payment.  *See, e.g., United States v. Dialysis Clinic, Inc.*, No. 5:09-CV-00710, 2011 WL 167246, at *19 (N.D.N.Y. Jan. 19, 2011) ("Regulations that permit the sanction of terminating supplier eligibility make it evident that violations of quality-of-care standards is directed at the provider's continued eligibility in the Medicaid program, rather than any individual incident of noncompliance." (internal quotation marks omitted)).  Likewise, communications and information about Texas' efforts to terminate Affiliate Defendants' participation in the Texas Medicaid program – but *not* to claw back funds already paid to Affiliate Defendants – go to whether the alleged violations would have been material to Texas' decision to pay for the services Affiliate Defendants provided.  Affiliate Defendants are entitled to this discovery from Texas (a party to this action) because it is relevant to their defense of Relator's implied false certification claims.

Texas' argument that Affiliate Defendants are seeking to "collateral[ly] attack" the terminations misses the mark.  If Texas or Relator intends to introduce evidence of the terminations, then Affiliate Defendants must be able to examine the circumstances surrounding the terminations.  And regardless of what evidence or arguments Relator or Texas intend to

introduce, Affiliate Defendants are entitled to know the precise timing surrounding Texas'

knowledge of PPGC's supposed wrongdoing in connection with fetal tissue donation' and the other

Affiliate Defendants' relationship with PPGC, Texas's communications related to those topics

(including with Relator and the Center for Medical Progress), and its motivations for its decision

to seek termination.  This chronology is central to the materiality analysis.  For example, if Texas'

communications with Relator and the Center for Medical Progress occurred well before Texas

sought termination of Affiliate Defendants' participation in the program and Texas continued to

make payments at that time, the timeline surrounding Texas' decision-making would weigh against

a finding of materiality.  *See, e.g., United States ex rel. Porter v. Magnolia Health Plan, Inc.*, 810

F. App'x 237, 242 (5th Cir. 2020) ("continued payments to and contracts with" a defendant, despite

knowledge of alleged falsehoods "substantially increase the burden on [a plaintiff] in establishing

materiality").

Moreover, although Texas terminated Affiliate Defendants from Medicaid, the State did

not seek to recoup payments already made to Affiliate Defendants for claims (dating back to 2010)

that Relator alleges were false.  This failure to demand repayment is highly probative of materiality

as to Relator's implied false certification claim.  *See, e.g., United States ex rel. McBride v.

Halliburton Co.*, 848 F.3d 1027, 1029 (D.C. Cir. 2017) ("[N]either DCAA nor any other

Government agency disallowed or challenged any of the amounts [contractor] *had billed*."

(emphasis added)); *United States ex rel. Bachert v. Triple Canopy, Inc.*, 321 F. Supp. 3d 613, 620-

21 (E.D. Va. 2018) (granting partial summary judgment for defendant under *Escobar* where

government reviewed the alleged fraud and "never asked for any money back from defendant");

*United States ex rel. Zissa v. Santa Barbara Cty. Alcohol, Drug, & Mental Health Servs.*, No. 14-

cv-6891, 2019 WL 3291579, at *6 (C.D. Cal. Mar. 12, 2019) (dismissing FCA case for lack of

materiality where government did not attempt to "recoup funds").[4]  Affiliate Defendants are therefore entitled to probe why, in the course of deciding to prevent Affiliate Defendants from participating in Medicaid prospectively, Texas did not also seek to recoup amounts it already paid them during a period when they allegedly were in violation of state and federal law and medical and ethical standards.

Similarly, discovery relating to the underlying basis for the terminations is relevant to Affiliate Defendants' defense of Texas' TMFPA claim and Relator's reverse FCA claim.  Texas and Relator must show that Affiliate Defendants acted "knowingly and improperly." 31 U.S.C. § 3729(a)(1)(G); Tex. Hum. Res. Code § 36.002(12).  Setting aside the additional showing of "improper" conduct required for a reverse TMFPA/FCA action, to prove even a "knowing" violation, Texas and Relator must demonstrate that it was *objectively* unreasonable for Affiliate Defendants not to repay the monies received for the treatment of thousands of patients at a time when Affiliate Defendants' lawfully remained in the program and absent a request for recoupment. *See United States v. Supervalu Inc.*, 9 F.4th 455, 465 (7th Cir. 2021) (collecting cases holding that in FCA case predicated on alleged noncompliance with legal obligation, the plaintiff must prove the defendant's position was objectively unreasonable); *see also, e.g.*, *United States ex rel. Streck v. Allergan*, 746 F. App'x 101, 106 (3d Cir. 2018); *United States ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 284 (D.C. Cir. 2015). If Texas agencies also believed the State could not lawfully recoup the monies, or even failed to consider recoupment following termination, this evidence would be highly probative of the objective reasonableness of Defendants' position that it had no obligation

---

[4]     Indeed, even in this litigation, Texas has intervened only as to Relator's reverse TMFPA claim related to post-2017 conduct.  It notably declined to intervene as to Relator's implied false certification claim.  *See United States v. Comstor Corp.*, 308 F. Supp. 3d 56, 86 (D.D.C. 2018) ("requirement of demonstrating materiality" is "especially crucial . . . where the government declined to intervene after . . . years of investigation").

to repay.  So too would evidence reflecting Texas' consideration of CMS guidance discussing whether payments that were lawful when made can later become overpayments.  *See* 81 Fed. Reg. 7654, 7658 (2016); *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 n.20 (2007) (if "the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation," then "a defendant who merely adopts one such interpretation" has not acted knowingly); *Olhausen v. Arriva Med., LLC,* No. 21-10366, 2022 WL 1203023, at *2 (11th Cir. Apr. 22, 2022) (no scienter when the applicable "Medicare rules . . . are susceptible to multiple reasonable interpretations").

Moreover, when determining whether to impose a civil penalty under the TMFPA, the "trier of fact" must consider, among other factors, "the seriousness of the unlawful act committed by the person, including the nature, circumstances, extent, and gravity of the unlawful act" and "whether the person acted in bad faith when the person engaged in the conduct that formed the basis of the unlawful act."  Tex. Hum. Res. Code § 36.052(a)(3).  Accordingly, discovery that would go to scienter, discussed above, would also be probative of whether any Affiliate Defendant acted in "bad faith" for purposes of TMFPA penalties.  Documents from the State related to medical research and generally accepted medical standards may also provide important context for the jury to consider when evaluating the nature and circumstances of any unlawful act.  Similarly, circumstances and communications surrounding Affiliate Defendants' terminations—whether those communications occurred solely between persons in Texas' employ, or are communications with Relator or the Center for Medical Progress—could also provide key context to evaluate the nature and circumstances of any unlawful act.

**Health Care Providers.**  The Discovery Requests that seek information pertaining to Texas' treatment of health care providers other than Affiliate Defendants are relevant and within the scope of permissible discovery.  *See* Ex.  A at 12-14; Ex. B at 16-17, 27-28.  In *Escobar*, Justice

14

Thomas writing for the Court noted that evidence of how the government acts in the "mine run" in similar circumstances is "very strong evidence" of whether requirements are material.  579 U.S. at 195.  "*Escobar* made clear that the government's treatment of other similarly situated healthcare providers is relevant to the issue of materiality in an FCA healthcare case."  *United States ex rel. Goodman v. Arriva Med., LLC,* 471 F. Supp. 3d 830, 840 (M.D. Tenn. 2020) (discussing differences in enforcement scheme under Anti-Kickback Statute).  Therefore, if, for example, Texas has never sought recoupment in remotely similar circumstances, this fact would be highly probative of materiality.  *See United States Ex Rel. Rose v. Stephens Inst.*, 909 F.3d 1012, 1022 (9th Cir. 2018) ("full examination of the Department's past enforcement habits in similar cases" is relevant to materiality).

**Overpayments.**  Information related to alleged "overpayments" received by Affiliate Defendants, including discovery on the effect of the injunction and prior litigation, are also relevant to Affiliate Defendants' defense of Relator's and Texas' reverse false claims theories.  *See* Ex. A 2, 11, 15, 17; Ex. B 25-26, 30, and 42-44.  Relator and Texas both allege that Affiliate Defendants received payments they should not have during the pendency of certain federal and state injunctions, and that the Affiliate Defendants violated the FCA when they did not return the alleged overpayments.  *See* Dkt. 2 ¶ 120.  Affiliate Defendants are entitled to discovery of information and documents related to this theory, including Texas' view of when a payment becomes an overpayment, the effect of the grace period on this litigation, the precise timing and effect of the prior litigations, and the effect of the injunction.  Indeed, this Court recently stated that "overpayments are identified by the facts and circumstances present in providers' and suppliers' specific situations," *see* Dkt. 121 at 6-7, which supports that Affiliate Defendants should

receive discovery on those "facts and circumstances" to defend against Relator's reverse false claims theory.

**Public Disclosure Bar**.  Several categories of documents at issue also go to whether the public disclosure bar applies., Ex. A 6, 10; Ex. B 12, 14, 34, 35, 36, 37, 38, 39, which is a defense to both Relator's and the Texas' claims.  *See* 31 U.S. Code § 3730(e)(4); Tex. Hum. Res. Code § 36.113(a).  Therefore, the requests may uncover information that was disclosed in a Congressional hearing or investigation, a public report, or through the news media and thus seek relevant, discoverable information.  Communications between the Center for Medical Progress and Texas, information that Texas received from Relator, information provided to the U.S. Congress as part of a federal investigation, and communications with the media may contain publicly disclosed information that would directly support a public disclosure bar defense. Affiliate Defendants are accordingly entitled to this information.

**Contention Interrogatories.**  Finally, some of the Affiliate Defendants' requests seek the factual basis of claims in opposing parties' pleadings.  *See* Ex. A. at 3-5, 10, 11, 15, 17-18. Contention interrogatories are squarely within the scope of permissible discovery under the Federal Rules.  *See e.g., Barkley v. Life Ins. Co. of N. Am.*, No. 3-07-CV-1498-M, 2008 WL 450138, at *1 (N.D. Tex. Feb. 19, 2008) ("It is widely accepted that 'contention interrogatories,' which ask a party to state the facts upon which it bases a claim or defense, are a permissible form of written discovery.").  For example, Interrogatory No. 5 requests "the principal and material facts that form the basis of the contention that PPGT, PPST, PP Cameron County, and PP San Antonio are each a "person that is affiliated with a person who commits a program violation" under 1 Tex. Admin. Code Sec. 371.1703(c)(7) and/or are otherwise not qualified to provide medical services

under Texas Medicaid." *See* Ex. A at 5. This request is plainly relevant to Texas' allegation and it has categorically refused to answer. *See* Dkt. 22 ¶ 37; Ex. C at 10-11.

In addition, some of Affiliate Defendants' requests ask about the application of law to fact, which is within the scope of permissible discovery. *See Barkley*, 2008 WL 450138, at *1 ("[A]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact") . Given the short scheduling order in this case, such interrogatories are necessary to move discovery forward by requiring Texas to state the basis for its allegations and claims. For example, Interrogatory No. 11 requests Texas' detailed views "regarding whether a payment, to which a Medicaid provider is entitled at the time of payment, can become an overpayment based on a subsequent change in the law . . . ." Ex. A. This interrogatory is relevant to show Texas' application of law to the facts in its case which form the basis of their allegations against Affiliate Defendants.

## V.   Texas' Objections to Affiliate Defendants' Discovery Requests Should be Overruled.

Because Affiliate Defendants' discovery requests are within the scope of discovery, the burden shifts to Texas to demonstrate undue burden or expense or why the discovery should otherwise not be permitted. *Brady*, 238 F.R.D. at 436-37. Texas has not come close to making the necessary showing.

**Relevance Objections.** Texas objects to nearly all of the Discovery Requests on the basis that the information requested is not relevant because it is not relevant to Texas' TMFPA claim or potential defenses to that claim. *See e.g. See* Ex. D at 2, 4, 5, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17. The plain language of Rule 26(b)(1), however, provides clear instruction on the scope of discovery stating that a party is entitled to discovery over "any nonprivileged matter that is relevant to **any party's claim or defense**." *See Booth v. City of Dallas*, 312 F.R.D. 427, 433 (N.D. Tex. 2015)

(holding that Defendant was entitled to seek discovery relevant to another party's defense).  At the discovery stage, relevance is broadly construed: information is relevant if there is any possibility that it may be relevant to the claim or defense of any party.  *Perez v. Bodega Latina Corp.*, No. EP-19-CV-00360-DCG, 2021 WL 3272211, at *3 (W.D. Tex. July 30, 2021).  Accordingly, unless it is clear that the information sought can have no possible bearing on the claim or defense of a party, the request for discovery should be allowed.  *Brady*, 238 F.R.D. at 436–37 (overruling objection where party did not meet the burden of showing the discovery had no possible bearing on the outcome of the case).  Texas has failed to give any support for its position that it only is required to produce documents and information relevant to its own claims and defenses.

Moreover, Texas has been joined at the hip with Relator in this litigation.  *See, e.g.*, Dkt. 37 (joint opposition to motion for extension); Dkt. 63 (joint opposition to motion to dismiss for improper service), Dkt. 76 (joint opposition to motion for extension); Dkt. 101 (joint motion for protective order); Dkt. 116 (joint expert designation).  And, even if Texas were a true third party, which it most certainly is not, it would be required to produce discovery.  For example, the Federal Government must provide discovery pursuant to subpoena relevant to materiality in FCA cases that it has declined to join.  *See, e.g., Signal Fin. Holdings LLC v. Looking Glass Fin. LLC*, No. 17 C 8816, 2021 WL 4935162, at *1 (N.D. Ill. June 10, 2021) (noting that "one may obtain from a third party 'any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case'" via subpoena).  But here, because Texas is a party, there is no need for Defendants to subpoena the State to obtain discovery related to Relator's claims. Texas' relevance objection should be overruled.

**Vagueness and Overbreadth.**  Texas objects to nearly all of the Discovery Requests on the basis that the requests are "overbroad."  *See* Exs. C, D.  Texas' objections, however, fail to

specify how each question is overly broad, burdensome, or oppressive, and therefore are inadequate. *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014)(quoting *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1486 (5th Cir.1990) (holding that simply objecting to requests as "overly broad, burdensome, oppressive and irrelevant," without showing "specifically how each [request] is not relevant or how each question is overly broad, burdensome or oppressive," is inadequate to "voice a successful objection"). Texas has not provided any meaningful additional specificity during the parties' meet-and-confer teleconferences, other than to note that Affiliate Defendants' requests span a significant time period. It is necessary for Affiliate Defendants to take discovery for this entire time period, however, because Relator has stated that the relevant time frame for its allegations is from 2010 to the present. Accordingly, Texas' overbreadth/burden objections should be overruled.

**Privilege Objections.** Texas has made a number of objections on the basis of various privileges. Pursuant to Federal Rule of Civil Procedure 26(b)(5)(A), when a party withholds information otherwise discoverable by claiming that the information is privileged the party must (1) expressly make the claim; and (2) describe the nature of the documents, communications, or tangible things not produced or disclosed. *See In re Santa Fe Int'l Corp.,* 272 F.3d 705, 710 (5th Cir. 2001) (holding that a party asserting a privilege bears the burden of demonstrating its applicability). Texas is required to produce a privilege log detailing any privileges that it wishes to assert in response to the Discovery Requests. *See Chemtech Royalty Assocs., L.P. v. United States*, No. 06-258-RET-DLD, 2009 WL 854358, at *3 (M.D. La. Mar. 30, 2009)("[A] privilege log must contain sufficient information that would allow a court or party to assess the applicability of the privilege or protection."). To date, Texas has not produced a log appropriately categorizing its privilege assertions. Affiliate Defendants must be able to evaluate whether Texas is asserting

any qualified privileges and to evaluate the sufficiency of their privilege assertion in light of the Federal Rules.

**VI.     Texas Must Verify its Responses to Interrogatories.**

Finally, Texas failed to verify its responses to Affiliate Defendants' interrogatories.  Rule 33(b)(3) requires that parties answer interrogatories "fully in writing under oath."  Accordingly, a party must "serve interrogatory verifications to their . . . that state: 'I hereby declare under penalty of perjury that the foregoing is true and correct'" in order comply with the Federal Rules.  *Jorge v. Atl. Hous. Found., Inc.*, No. 3:20-CV-2782-N, 2022 WL 1082345, at *4 (N.D. Tex. Apr. 11, 2022); *See also, e.g., Dugas v. Mercedes-Benz USA, LLC*, No. 6:12-CV-02885, 2014 WL 458083, at *2 (W.D. La. Feb. 3, 2014) ("verification of discovery responses is required by Fed. R. Civ. P. 33(b)(3)").  Since Texas has not properly verified its interrogatories, Affiliate Defendants request that this Court order that Texas verify its responses to their interrogatories.

## <u>CONCLUSION</u>

Affiliate Defendants' Discovery Requests call for information and documents within the appropriate scope of discovery, and none of Texas' objections show otherwise.  Accordingly, this Court should overrule Texas' objections to interrogatories 2, and 4-18, as well as requests for production 3, 4, 6, 9-18, 21-39, 41-43, and 45 and order Texas to provide complete verified responses and produce all responsive documents.  This Court should also order Texas to produce a privilege log for any of its assertions of privileges.

Dated:  July 18, 2022                                 Respectfully submitted,

                                                                     ARNOLD & PORTER KAYE SCHOLER
                                                                     LLP

                                                                     By:     */s/ Tirzah S. Lollar*

Craig D. Margolis
Craig.Margolis@arnoldporter.com
Tirzah S. Lollar
Tirzah.Lollar@arnoldporter.com
Christian Sheehan
Christian.Sheehan@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.6127
Fax: +1 202.942.5999

Christopher M. Odell
Texas State Bar No. 24037205
Christopher.Odell@arnoldporter.com
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: +1 713.576.2400
Fax: +1 713.576.2499

Ryan Patrick Brown
Texas State Bar No. 24073967
brown@blackburnbrownlaw.com
1222 S. Fillmore
Amarillo, TX 79101
Tel: (806) 371-8333
Fax: (806) 350-7716

*Attorneys for Defendants Planned
Parenthood Gulf Coast, Inc., Planned
Parenthood of Greater Texas, Inc.,
Planned Parenthood South Texas, Inc.,
Planned Parenthood Cameron County,
and Planned Parenthood San Antonio*

## **CERTIFICATE OF CONFERENCE**

On July 6 and July 7, in accordance with Local Rule 7.1(b), counsel for Defendants certify that they conferred with counsel for Relator and counsel for Texas regarding the relief requested in this motion.  Several attorneys for Texas participated, but Raymond Winter from the Office of the Texas Attorney General spoke for Texas.  Relator's counsel Andrew Stephens participated in the conference.  Mr. Winter and Mr. Stephens stated that Relator and Texas are opposed.


*/s/ Tirzah S. Lollar*
Tirzah S. Lollar

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 18, 2022, the foregoing document was electronically filed with the Clerk of Court using CM/ECF.

*/s/ Tirzah S. Lollar*
Tirzah S. Lollar

23