## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

United States of America

*ex rel.* ALEX DOE, Relator,


The State of Texas

*ex rel.* ALEX DOE, Relator,


The State of Louisiana

*ex rel.* ALEX DOE, Relator,

      Plaintiffs,

v.

Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc.,

     Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

CIVIL ACTION NO. 2:21-CV-00022-Z

Date:    July 20, 2022

## STIPULATION AND [PROPOSED] ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS

WHEREAS, Plaintiff State of Texas, Relator Alex Doe, and Defendants

Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast,

Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas,

Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc. (each a "Party" and together, the "Parties") have conferred and agreed upon this Stipulation and Proposed Order Regarding the Production of Electronically Stored Information (the "Protocol");

IT IS HEREBY STIPULATED AND AGREED by the Parties hereto, as of the date hereof, through their undersigned counsel, subject to the approval of the Court, that:

## I.   DEFINITIONS

A.   **"Electronically stored information"** or **"ESI,"** as used herein, means any type of information that is stored, created, retrieved, processed, or used in an electronic, magnetic, or digital form, including but not limited to: all web-based communications; e-mail and other electronic communications; text or other instant messages; and electronically, magnetically, or digitally stored documents, photographs, records, images, graphics, recordings, files, logs, word processing documents, unique drafts, reports, power-point presentations, databases, spreadsheets, videos, messages, and any other electronic, magnetic, or digital files of any kind. ESI includes all types of information described above contained on any media, including but not limited to: computers, file servers, disks, tapes, USB flash

drives, on a remote electronic server, personal or common cloud storage service, file-hosting service, or some other storage technology.

B.    **"Media"** means any object or device, including but not limited to a disk, tape, computer, drive, remote electronic server, cloud storage service, file-hosting service, or other device, system, or application, whether or not in the Producing Party's physical possession, on which data is or was stored or available.

C.    **"Producing Party"** means or refers to any Party or non-party producing ESI or hard copy documents as discussed in this Protocol.

D.    **"Receiving Party"** means or refers to any Party receiving the production of ESI or hard copy documents as discussed in this Protocol.

E.    "**Metadata**" means the structured information about ESI that includes data created by the file system or application, embedded in the Document or email and sometimes modified through ordinary business use.  Metadata also includes data about ESI and hard copy documents that describes, inter alia, the characteristics, origins, usage, and validity of the collected ESI.

F.    "**Native Format**" means the format of ESI in the application in which such ESI was originally created or stored.

G.    "**OCR**" means the optical character recognition technology used to read paper documents or electronic images of documents and output such documents to a searchable text format.  The latter text is also referred to as the "OCR text" or

simply "OCR."

**H.** "**TIFF**" or "**Tagged Image File Format**" refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or hard copy documents.

## II.   GENERAL PRINCIPLES

**A.**     The procedures and protocols set forth in this Protocol shall govern the production of hard copy documents and ESI in this litigation, unless the Parties agree in writing to change them, or they are changed by the Court at the request of a Party.

**B.**     Nothing in this Protocol shall be interpreted to require the disclosure of any hard copy documents or ESI that a Party contends are protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable privilege or protection, nor shall this Protocol require the production of hard copy documents or ESI that are not discoverable under applicable law.  Nothing in this Protocol, including any production of hard copy documents or ESI under this Protocol, shall constitute a waiver by any Party of any claim of privilege or other protection from discovery.

**C.**     Nothing in this Protocol will be interpreted as an agreement regarding the subject matter or scope of discovery in this action, or the relevance or admissibility of any hard copy documents or ESI.

**D.**     The Parties incorporate the provisions of any confidentiality stipulation or protective order governing confidential information as may be entered by this

Court. For the avoidance of doubt, nothing in this Protocol shall contradict the Parties' rights and obligations with respect to any information designated with a particular confidentiality designation pursuant to the terms of any such stipulation or order.

## III.   PRODUCTION OF ESI AND HARD-COPY DOCUMENTS

Unless the Parties agree otherwise, the provisions set forth in this Protocol shall govern the format for production of hard-copy documents and ESI, to the extent reasonably practical and not unduly burdensome. If a particular Document or type of Document warrants a different format, the Parties will meet and confer to determine a mutually acceptable production format for such Documents. Nothing in this Protocol shall be construed to alter the Producing Party's rights arising under applicable law or otherwise to withhold the production of hard-copy documents or ESI because the source of the hard-copy documents or ESI is not reasonably accessible, or its production would be unduly burdensome, duplicative, non-proportional, or cumulative.

**A.    Production Format of ESI.** Documents should be produced in the form of single-page, Group IV TIFFs imaged at 300 dpi. Each TIFF image should be named in accordance with its corresponding Bates number. Original document orientation should be maintained (*i.e.*, portrait to portrait and landscape to landscape). TIFF image files should be provided in a self-identified "Images" folder.

An .opt image cross reference file will also be provided for all TIFF images.

**B.     Bates Numbering.**  Each TIFF image should be assigned a Bates number that: (1) is unique across the entire document production, (2) maintains a constant length across the entire production *(i.e.,* padded to the same number of characters), (3) contains no special characters or embedded spaces, and (4) is sequential within a given document.  If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production.  Parties will make reasonable efforts to avoid obscuring any part of the underlying image or text with the Bates number.

**C.     Parent-Child Relationships.**  Parent-child relationships (*i.e.*, the association between an attachment and its parent document) must be preserved.  For example, electronic documents attached to an email are to be produced contemporaneously and sequentially, immediately after the parent document.  Similarly, if a party produces a hard-copy document with attachments, appendices or indices, those documents should be produced behind the document in the order in which they were attached (i.e., reasonable efforts must be used to unitize documents; *see also* Section III.O., below).  The Parties agree that if any part of an Email or its attachments is responsive, the entire Email and attachments will be produced, except for any attachments that must be withheld or redacted on the basis of privilege, immunity, or applicable privacy laws.  Where an Email or an attachment or

-6-

attachments must be withheld in their entirety for privilege and another document or series of documents in their family must be produced without redactions, the privileged document or documents will either be redacted in full and produced or a slip sheet bearing only a Bates number and the text "Withheld for Privilege" will be produced in place of each such privileged document, and the non-privileged portions of the family will be produced in their entirety.

**D.    De-Duplication.**   To the extent a party has duplicative ESI, the Producing Party need only produce a single copy of a responsive ESI, unless the Receiving Party reasonably requests the duplicate ESI for a legitimate reason. Removal of duplicate ESI should only be done on exact duplicate documents (based on MD5 or SHA-1 has values or a similar industry-standard algorithm, at the family level only).  Attachments should not be eliminated as duplicates for purposes for production, unless the parent e-mail and all attachments are also duplicates.  De-duplication may be done across the entire collection (i.e., both within a particular custodian's files and across all custodians).  The Producing Party shall identify in the All Custodians field of each Document the name(s) of the custodians who had duplicates of the document removed during processing.

**E.    Metadata Fields and Processing.**  To the extent reasonably collectable and available, each of the metadata and coding fields set forth in Appendix I shall be produced for that document.  For a document where the metadata fields in

Appendix I are not reasonably collectable or available, and for Hard Copy documents, the Parties are not obligated to populate manually any of the fields in Appendix I, with the exception of the following: (1) BegProd; (2) EndProd; (3) BegAttach; (4) EndAttach; (5) Custodian; (6) NativeLink fields; (7) Record Type (which may be populated by the party or the party's e-discovery vendor); (7) Confidentiality; and (10) Redacted.  ESI items shall be processed in a manner that preserves the source native file and metadata without modification, including time, date and time-zone metadata, except that ESI must be processed in Central Standard Time.  ESI items shall be processed in a manner that maintains and displays hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes and comments.

     **F.    OCR Text Files.**  Optical Character Recognition ("OCR") text files shall be provided as a single text file for each hard-copy document, not one text file per page.  Each file should be named with the beginning Bates number that is assigned to its corresponding hard-copy document, followed by .txt.  OCR text files should be provided in a self-identified "Text" directory.  To the extent a hard-copy document is redacted, OCR text files for such a document shall not contain text for redacted portions.  The parties will make reasonable efforts to ensure that all technologies and processes used to collect, process, and produce the text of any hard-copy document, including all TIFF conversion and OCR processes, and the

extraction of text from native files, preserve all foreign language text, punctuation, and other characteristics as they exist in the source native file.

G.    **Extracted Text Files.**  For each document, an extracted text file should be provided along with its corresponding TIFF image file(s) and metadata.  The file name of each extracted text file should be identical to that of the first image page of its corresponding document, followed by .txt.  File names should not contain any special characters or embedded spaces.  The text of native files should be extracted directly from the native file.  However, if a document has been redacted, OCR of the redacted document will suffice in lieu of extracted text.

H.    **Database Load Files and Cross-Reference Files.**  Accompanying each production should be a metadata file (DAT file) using standard Concordance delimiters or caret-pipe (^|^) delimiters.  Each production should also include an image load file in Opticon format (OPT).  The metadata file and image load file (*i.e.*, DAT and OPT files) should be provided in a self-identified "Data" folder.

I.    **Production Media.** The Producing Party shall produce documents via secure FTP site.  The Producing Party shall accompany all document productions with a transmittal cover letter identifying by Bates number the documents produced and whether the production contains documents subject to the Protective Order.

J.    **Appearance and Content.**  No document may be intentionally manipulated to change how the source document would have appeared if printed out

to a printer attached to a computer viewing the file, without prior agreement of the Receiving Party.  Therefore, subject to any appropriate redaction, each document's electronic image shall convey the same information and image as the original document.  Responsive ESI that presents imaging or formatting problems shall be promptly identified and the Parties shall meet and confer in an attempt to resolve the problems.  If legibility is found to have been degraded, the receiving party may make reasonable requests for re-production of these documents.

     **K.**    **Native Files.**    Absent special circumstances, source code, large diagrams, Excel files, .csv files, and other files that cannot conveniently be produced as TIFF images should be produced in native format ("Native Files"), unless they have redactions.  Native Files should be provided in a self-identified "Natives" directory.  Each Native File should be produced with a corresponding single-page TIFF placeholder image, which will contain language indicating that the document is being produced as a Native File, a Bates number, and any confidentiality endorsements.  Native Files should be named with the beginning Bates number that is assigned to that specific record in the production and include a corresponding confidentiality endorsement, as applicable.  A "NativeLink" entry for each spreadsheet should be included in the .DAT load file indicating the relative file path to each Native File on the production media.  Native Files should be produced with extracted text and applicable metadata fields as set forth in Appendix I.  If a

document to be produced as a Native File contains privileged information, the document will be redacted to the extent reasonably and technically possible, and Producing Party will provide the basis for each redaction.  Redacted documents may be produced with TIFF image files and OCR in lieu of a Native File, TIFF placeholder image and extracted text file.   Any metadata fields for redacted documents that would reveal privileged information shall be excluded.   Each Producing Party will make reasonable efforts to ensure that its e-discovery vendor, before conversion to TIFF, reveals hidden data from redacted Native Files that are produced as TIFF image files and will be formatted so as to be readable.  (For example, in Excel files, column widths should be formatted so that the content does not appear as "#########.")  To the extent documents that fall under this section contain privileged information and cannot be redacted or produced with TIFF image files, the Producing Party shall provide a list of each such document, and the parties shall meet and confer to agree to a protocol for redaction of such items.

     **L.**    **Color.** Productions will be in black and white, except each Party will produce (i) PowerPoint-type presentations and Excel files in color (to the extent not produced in native format); (ii) any document containing track changes or reflecting similar comments must be produced in color; and (iii) each party may request that specifically identified documents produced in black and white be re-produced in color, which request will be satisfied unless such production would be unduly

burdensome.

      **M.**    **Redactions.** To the extent that a document is produced in redacted form, any redaction shall be clearly indicated on the face of the document with text boxes bearing the text identifying the reason for the redaction wherever text has been redacted. The production of a document in a redacted form does not affect the Producing Party's obligation, if any, to properly document and substantiate the assertion of privilege over the content on a privilege log. If a Document is redacted, the Producing Party shall produce document-level OCR text only for those portions of the Document that are not redacted, and the Producing Party may withhold any metadata associated with the redaction. The Producing Party's failure to withhold privileged or protected OCR text and/or metadata for a redacted Document shall not be deemed a waiver of the asserted privilege or other asserted protection associated with that Document, and any metadata or text file containing the text of redacted portions of a redacted Document or other privileged or protected information shall be treated as inadvertently produced.

      **N.**    **Hard-Copy Documents.** In scanning paper documents, distinct documents should not be merged into a single record and single documents should not be split into multiple records (e.g., paper documents should be logically unitized). In the case of an organized compilation of separate documents (e.g., a binder containing several separate documents behind numbered tabs), the document

behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The Parties will make their best efforts to unitize the documents correctly. The Parties shall produce documents that exist solely in physical hard-copy format following the ESI Protocol. The ".tiff" files shall be subject to an OCR process.

      **O.**    **Search Terms and TAR**. The parties recognize that there exist a variety of search tools and culling methodologies including but not limited to the use of search terms and technology assisted review ("TAR") tools.

      Where potentially responsive ESI shall be searched using search terms, the Producing Party shall provide proposed search terms they intend to employ to search for relevant and responsive documents. Proposed search terms will be subject to negotiation with and input from the Receiving Party.

      If the Producing Party intends to use TAR to eliminate collected documents from a review set, it will disclose to the Receiving Party the type of technology being used and a general description of the TAR methodology to be used, prior to implementation of any such technology. The Receiving Party reserves the right to object to use for TAR, or to specific TAR methodology proposed by the Producing Party. Requests for data used to evaluate the utility of the search terms shall not be unreasonably withheld, including hit counts, precision and recall calculations, and

similar statistically-based metrics.

## IV.    PRIVILEGE LOG

A.     The parties do not waive the right to conduct a full and comprehensive review for privilege and other protections.

B.     **Contents of privilege log**

1.     The privilege log will contain, to the extent reasonably available and accurate for each document, the following fields: "To," "From/Author," "CC," "BCC," and "Date" as well as the specific privilege or protection claimed, the type of document (*e.g.*, "email reflecting legal advice . . . ") and general subject matter of the document (*e.g.*, ". . . legal advice regarding [topic]." Any asserted attorney-client privilege must identify the attorney, attorney's representative, or source of the legal advice or target of a request for legal advice.

2.     Privileged and/or work-product immune documents that were created after the filing of Texas's Complaint in Intervention need not be placed on a privilege log unless the Parties agree or the Court orders otherwise.

3.     To the extent the privilege asserted concerns earlier-in-time emails reflected in the body text the privilege description provided must accurately describe that privileged information.

4.     If a family of documents is entirely privileged, each document in the family shall be listed on the log separately.  The family relationship for all

documents on the log shall be indicated on the log.  If a family of documents exists that contains both privileged and non-privileged documents, the parties agree that the privileged documents in the family may be replaced with a slip sheet indicating, "Withheld for Privilege."  The withheld document shall be logged and the remaining non-privileged documents in the family shall be produced. The Bates number of the slip sheet for the withheld document shall be provided on the log.

## V.    PROCESSING OF THIRD-PARTY DOCUMENTS

A.    The Party issuing the third-party document subpoena (the "Issuing Party") is responsible for re-producing any documents obtained pursuant to a non-party subpoena to all other Parties as soon as possible and no later than five business days of receipt.

B.    The Issuing Party shall include a copy of this Protocol with the subpoena and state that the Parties to the litigation have requested that third parties produce documents in accordance with the specifications set forth herein.  To the extent that subpoenas have been issued to third parties prior to execution of this Protocol, the Issuing Party shall promptly deliver to such third parties a copy of this Protocol with the subpoena and state that the Parties to the litigation have requested that third parties produce documents in accordance with the specifications set forth herein.

C.    If the non-party production is not Bates-stamped, the Issuing Party will

brand the non-party production images with unique prefixes and Bates numbers, or otherwise identify Native Files prior to producing them to the other Parties, per the technical specifications outlined in this Protocol, including provision of all relevant metadata received.

## VI.    MISCELLANEOUS PROVISIONS

A.    Where disputes arise concerning any issues addressed in this protocol, the Parties shall promptly meet and confer in an effort to reach agreement prior to seeking leave of the Court to resolve any disputed issues.    If the Parties' disagreement persists after meeting and conferring in good faith, the Parties shall notify the Court of their unresolved dispute(s) and seek resolution from the Court.

B.    All Parties reserve all rights under applicable law for matters relating to the production of documents or ESI that are not specifically addressed in this Protocol, including the right to object to production of any documents or ESI. Nothing in this Protocol shall be construed to affect in any way the rights of any Party to object to the admissibility of any materials into evidence at the trial of this Action.

C.    All hard-copy documents or ESI, including the procedure for clawback of any hard-copy documents or ESI, shall be governed by any applicable scheduling, confidentiality, protective, and/or clawback orders entered in this Action. Responsive documents in TIFF format will be stamped with the appropriate

-16-

confidentiality designation in accordance with any order regarding confidential information in this Action. Each document produced in native format will have its confidentiality designation reflected on the endorsement on the bottom left-hand corner or bottom right-hand corner of the corresponding TIFF image slip sheet and in the file name (*see also* Section III.L., above).

**D.** Nothing in this Protocol is intended or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third parties to object to a subpoena or discovery request.

**E.** The Parties will make reasonable efforts to ensure that all documents or ESI they produce is decrypted, although the Parties may produce documents or ESI via FTP in encrypted format for security purposes provided that appropriate password information is provided to all Parties to which such productions are produced.

**F.** By stipulating to the entry of this Protocol, no Producing Party waives any right it otherwise might have to object to disclosing or producing any information or item.

**G.** Nothing in this Protocol alters a party's legal obligation to retain documents and data.

Dated: July 20, 2022

/s/   *Andrew B. Stephens*
*Attorneys for Relator Alex Doe*
Andrew B. Stephens
Texas Bar No. 24079396
Heather Gebelin Hacker
Texas Bar No. 24103325
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
(512) 399-3022
andrew@hackerstephens.com
heather@hackerstephens.com


KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN E. COWLES
Deputy Attorney General for Civil Litigation

*/s/Raymond C. Winter*
RAYMOND CHARLES WINTER
Chief, Civil Medicaid Fraud Division
Texas Bar No. 21791950

AMY S. HILTON
Assistant Attorney General
General Litigation Division
State Bar No. 24097834

Office of the Attorney General P.O. Box
12548, Capitol Station Austin, Texas
78711-2548 (512) 463-2120 / Fax (512)
320-0667
Raymond.Winter@oag.texas.gov
Amy.Hilton@oag.texas.gov
*Attorneys for Plaintiff State of Texas*

/s___*Tirzah S. Lollar* _____
Craig D. Margolis (*pro hac vice* pending)
Craig.Margolis@arnoldporter.com
Tirzah S. Lollar (*pro hac vice* pending)
Tirzah.Lollar@arnoldporter.com
Christian Sheehan (*pro hac vice* pending)
Christian.Sheehan@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.6199
Fax: +1 202.942.5999

Christopher M. Odell
Texas State Bar No. 24037205
Christopher.Odell@arnoldporter.com
700 Louisiana Street,
Suite 4000
Houston, TX 77002-2755
Telephone: +1 713.576.2400
Fax: +1 713.576.2499

Ryan Patrick Brown
Texas State Bar. No.  24073967
brown@blackburnbrownlaw.com
Blackburn & Brown, L.L.P.
1222 S. Fillmore
Amarillo, TX 79101
 Tel: (806) 371-8333
 Fax: (806) 350-7716

*Attorneys for Defendants Planned*
*Parenthood Gulf Coast, Inc., Planned*
*Parenthood South Texas, Planned*
*Parenthood Cameron County, Planned*
*Parenthood San Antonio, and Planned*
*Parenthood of Greater Texas*

*/s/ Danny S. Ashby*
Danny S. Ashby
Texas State Bar No. 01370960
dashby@omm.com
Justin R. Chapa
Texas State Bar No. 24074019
jchapa@omm.com
2501 N. Harwood Street
Suite 1700
Dallas, TX 75201
T: (972) 360-1900
F: (972) 360-1901

Leah Godesky (*pro hac vice* pending)
lgodesky@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
T: (310) 553-6700
F: (310) 246-6779
*Attorneys for Defendant Planned Parenthood*
*Federation of America*

**IT IS SO ORDERED** this _____ day of _____, 2022.

_____

**Appendix I**

| Field | Sample Data | Description |
|---|---|---|
| BEGPROD | DOC_000001 | Beginning document number |
| ENDPROD | DOC_000002 | Ending document number |
| BEGATTACH | DOC_000001 | Beginning document number of family unit |
| ENDATTACH | DOC_000003 | Ending document number of family unit |
| PAGECOUNT | 2 | Number of pages in the item |
| CONFIDENTIALITY | Confidential or Highly Confidential | Indicating whether the document is confidential or highly confidential |
| ALLCUSTODIAN | Smith_John or Smith, John | For globally de-duplicated productions only.  Full name of all custodians for whom the document is being produced. |
| TO | Jane Smith | Main recipient(s) of an e-mail message or calendar item |
| FROM | John Smith | Author of an e-mail or calendar item message or author of a loose electronic document |
| CC | Frank Thompson | Carbon Copy recipient(s) of an email message or calendar item |
| BCC | John Cain | Blind Carbon Copy recipient(s) of an e-mail message or calendar item |
| SUBJECT | Chain Letters | Subject field value or title field value extracted from metadata of Native File |

| Field | Sample Data | Description |
|---|---|---|
| AUTHOR | Smith_John or Smith, John | Individual(s) who created the document, if reasonably available |
| DATECREATED | 07/03/2009 | Date the Native File was created |
| TIMECREATED | 7:13:29 PM | Time the Native File was created |
| DATEMODIFIED | 07/03/2009 | Date the Native File was last modified |
| TIMEMODIFIED | 7:13:29 PM | Time the Native File was last modified |
| DATESENT | 07/03/2009 | Date an e-mail message or calendar item was sent |
| TIMESENT | 7:13:29 PM | Time an e-mail message or calendar item was sent |
| DATERECEIVED | 07/03/2009 | Date an e-mail message or calendar item was received |
| TIMERECEIVED | 7:13:29 PM | Time an e-mail message or calendar item was received |
| TIMEZONE | EST | Time zone of documents – Eastern Standard Time |
| SIZE | 765,952 | File size in Bytes |
| IMPORTANCE RANKING | "High Priority" | Level of importance or sensitivity of messages or calendar items |
| ATTACHMENTS | 2 | Number of attachments |
| NATIVELINK | \\192.168.1.6\Unicron\TiffTester\XYZ\B018\Extracted\FSF01_1\aea\1d0cbe9510845fbfbe235 19 a8902d.mail | Path where Native File is stored |
| EXTENSION | .mail | File extension |
| HASH | 145629GI9875HG98SKJA9A KJD 98AK4 | Unique identifier |

| Field | Sample Data | Description |
|---|---|---|
| ORIGINALNAME | 1d0cbe9510845fbfbe2351 9a8 902d.mail | Original file name |
| ORIGINALPATH | C:\Documents and Settings\user1\My Documents\General | Original file path |
| REDACTED | Yes/No | Indicating whether the document is redacted |
| TEXT | "testing text extraction utility" OR \Volume0001\DOC_0000 01.T XT | Extracted/OCR text (OR) path to multipage text file |
| APPLICATION | Outlook, Word, PowerPoint | Indicates software application that generated the ESI item |
| RECORDTYPE | "Paper," "Hard Copy" or "HC," if a hard copy document, and "ESI" if ESI | To indicate whether hard copy or ESI item |
| TITLE | "Sample" | Title of the original document |
| LAST SAVED BY | John Smith | Last Saved By field value extracted from metadata |
| COMPANY | "ExCo" | Company field extracted from the metadata of a native file |
| DATEACCESSED | 07/03/2009 | Date document was last accessed |
| TIMEACCESSED | 7:13:29 PM | Time document was last accessed |
| MEETINGSTARTDAT EANDTIME | 07/03/2009 7:13:29 PM | Start date and time of calendar appointment |
| MEETINGENDDATE ANDTIME | 07/03/2009 7:13:29 PM | End date and time of calendar appointment |

| Field | Sample Data | Description |
|---|---|---|
| MESSAGEID | <0E6648D558F33817952 4D555@m1p.contoso.net | Globally unique identifier for a message which typically includes messageid and a domain |
| CONVERSATIONIND EX | 01019C5D8749794F5A4 C0DFB9FD6A49DC03C 5E817746 | Email thread identification |
| HIDDENCONTENT | YES/NO | Denotes if file contains hidden content |