# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

United States of America
*ex rel.* ALEX DOE, Relator,

§
§
§
§

The State of Texas
*ex rel.* ALEX DOE, Relator,

§
§
§

NO. 2:21-CV-00022-Z

The State of Louisiana
*ex rel.* ALEX DOE, Relator,

§
§
§

Date:      July 20, 2022

§

          Plaintiffs,

§
§
§

v.

§
§

Planned Parenthood Federation of America, Inc.,
Planned Parenthood Gulf Coast, Inc., Planned
Parenthood of Greater Texas, Inc., Planned
Parenthood South Texas, Inc., Planned Parenthood
Cameron County, Inc., Planned Parenthood San
Antonio, Inc.,

§
§
§
§
§
§
§
§

          Defendants.

§
§
§

## DEFENDANT PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.'S MOTION TO COMPEL TO THE STATE OF TEXAS AND BRIEF IN SUPPORT

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................... 1

BACKGROUND ............................................................................................... 3

LEGAL STANDARD........................................................................................ 3

     I.      Texas is Unreasonably Obstructing PPFA's Ability to Discover
           Documents and Information Relevant to the Claims and Defenses in this
           Action.......................................................................................................... 4

     II.     Texas is Subject to Discovery Regarding All Claims and Defenses in this
           Action.......................................................................................................... 5

     III.    Texas's Overbreadth Objections Are Unfounded And, In Any Event, Do
           Not Excuse Texas From Producing Relevant Documents within the Scope
           of the Requests. ......................................................................................... 8

     IV.    Texas Is Withholding Discovery Based on Inapplicable Privilege
           Assertions................................................................................................. 10

          A.     Texas Cannot Assert a Blanket Privilege Over All
                 Communications with Relator or CMP...................................... 11

          B.     The State-Law Medicaid Investigative Privilege is Inapplicable. ........... 13

     V.     Texas Should Also Be Compelled to Provide Complete Answers to the
           Interrogatories. ........................................................................................ 17

CONCLUSION................................................................................................ 19

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*ACLU of Miss. v. Finch*,
   638 F.2d 1336 (5th Cir. 1981) ................................................................. 15

*Auto Club Fam. Ins. Co. v. Ahner*,
   2007 WL 9780352 (E.D. La. Aug. 23, 2007) ........................................... 10

*Booth v. City of Dallas*,
   312 F.R.D. 427 (N.D. Tex. 2015) ............................................................. 6

*Cartel Asset Mgmt. v. Ocwen Fin. Corp.*,
   2010 WL 502721 (D. Colo. Feb. 8, 2010) ................................................ 8

*Cary v. Soileau*,
   125 F.R.D. 432 (W.D. La. 1989) .............................................................. 14

*Consumer Elecs. Ass'n v. Compras & Buys Mag., Inc.*,
   2008 WL 4327253 (S.D. Fla. Sept. 18, 2008) .......................................... 9

*Coughlin v. Lee*,
   946 F.2d 1152 (5th Cir. 1991) .................................................................. 3

*Crosby v. Louisiana Health Serv. & Indem. Co.*,
   647 F.3d 258 (5th Cir. 2011) ................................................................... 3

*Export Worldwide, Ltd. v. Knight*,
   241 F.R.D. 259 (W.D. Tex. 2006) ............................................................ 4

*Ferko v. Nat'l Ass'n For Stock Car Auto Racing, Inc.*,
   219 F.R.D. 396 (E.D. Tex. 2003) ............................................................. 11

*Garg. v. VHS Acquis. Sub. No. 7, Inc.*,
   2021 WL 5817446 (W.D. Okla. Dec. 7, 2021) ......................................... 6

*Gregg v. Am. Tower Corp.*,
   2014 WL 12591885 (N.D. Tex. Sept. 16, 2014) ....................................... 6

*Hancock v. Dodson*,
   958 F.2d 1367 (6th Cir. 1992) ................................................................. 14

*Hancock v. Hobbs*,
   967 F.2d 462 (11th Cir. 1992) ................................................................. 14

*Heller v. City of Dallas*,
   303 F.R.D. 466 (N.D. Tex. 2014) ............................................................ 8

ii

**TABLE OF AUTHORITIES**

**Page(s)**

*In re Commercial Money Ctr., Inc. Equip. Lease Litig.*,
  248 F.R.D. 532 (N.D. Ohio 2008) ........................................................................ 12

*In re Qwest Commc'ns Int'l Inc.*,
  450 F.3d 1179 (10th Cir. 2006) ........................................................................... 14

*In re Sealed Case (Med. Records)*,
  381 F.3d 1205 (D.C. Cir. 2004) ........................................................................... 14

*Janvey v. Greenberg Traurig*,
  2019 WL 13175533 (N.D. Tex. Feb. 12, 2019) .................................................... 18

*Lopez v. Don Herring Ltd.*,
  327 F.R.D. 567 (N.D. Tex. 2018) .................................................................... 7, 18

*McKinney/Pearl Restaurant Partners, L.P. v. Metro. Life Ins. Co.*,
  2016 WL 2997744 (N.D. Tex. May 15, 2016) ..................................................... 18

*Memorial Hosp. for McHenry County v. Shadur*,
  664 F.2d 1058 (7th Cir. 1981) ............................................................................. 14

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978) ............................................................................................... 3

*Pearson v. Miller*,
  211 F.3d 57 (3d Cir. 2000) ................................................................................... 14

*Provost v. Kia Motors America*,
  2006 WL 8432930 (M.D. La. June 27, 2006) ........................................................ 8

*Religious Tech. Ctr. v. Wollersheim*,
  971 F.2d 364 (9th Cir. 1992) ............................................................................... 14

*Robertson v. Neuromedical Ctr.*,
  169 F.R.D. 80 (M.D. La. 1996) ............................................................................ 15

*Sierra Club v. Woodville Pellets, LLC*,
  553 F. Supp. 3d 378 (E.D. Tex. 2021) ............................................................ 15, 16

*Tonti Mgmt. Co. v. Soggy Doggie, LLC*,
  2020 WL 9172077 (E.D. La. June 25, 2020) ................................................... 14, 15

*United States ex rel. Fisher v. JPMorgan Chase Bank N.A.*,
  2020 WL 3265060 (E.D. Tex. June 17, 2020) ........................................................ 4

iii

**Page(s)**

*United States ex rel. Landis v. Tailwind Sports Corp.,*
  303 F.R.D. 419 (D.D.C. 2014) ............................................................................. 11, 13

*United States ex rel. Scott v. Humana Inc.,*
  2021 WL 3909906 (W.D. Ky. Aug. 31, 2021) ............................................................ 12

*United States v. Cameron-Ehlen Grp.,*
  2019 WL 6875354 (D. Minn. Dec. 17, 2019) ...................................................... 11, 12

*United States v. Davis,*
  636 F.2d 1028 (5th Cir. 1981) .................................................................................. 4

*United States v. Homeward Residential, Inc.,*
  2016 WL 1031154 (E.D. Tex. Mar. 15, 2016) .................................................... 11, 13

*United States v. Mass. Gen. Hosp., Inc.,*
  498 F. Supp. 3d 186 (D. Mass. 2020) ................................................................. 15, 16

*Virmani v. Novant Health Inc.,*
  259 F.3d 284 (4th Cir. 2001) ................................................................................... 14

*von Bulow v. von Bulow,*
  811 F.2d 136 (2d Cir. 1987) .................................................................................... 14

*Wm. T. Thompson Co. v. General Nutrition Corp.,*
  671 F.2d 100 (3d Cir. 1982) .................................................................................... 14

**Statutes**

8 Fed. Prac. & Proc. Civ. § 2011 (3d ed.) ..................................................................... 13

Texas Government Code § 531.1021(g) ................................................................... 19, 22

**Rules**

Fed. R. Civ. P. 26(b)(1) ............................................................................................. 9, 12

Fed. R. Civ. P. 26(b)(5)(A) ........................................................................................... 19

Fed. R. Civ. P. 33 ........................................................................................................ 13

Fed. R. Civ. P. 33(d) .................................................................................................... 23

Fed. R. Civ. P. 34 ........................................................................................................ 13

Fed. R. Civ. P. 37(a)(1) .................................................................................................. 9

**TABLE OF AUTHORITIES**

**Page(s)**

Fed. R. Evid. 501 ..................................................................................................................... 20

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, Defendant Planned Parenthood Federation of America, Inc. ("PPFA") hereby moves to compel the State of Texas ("Texas") to (a) respond to Requests for Production Nos. 1–17 and 20 in PPFA's First Set of Requests for Production ("RFPs"); and (b) provide complete, verified answers to Interrogatory Nos. 1–13 in PPFA's First Set of Interrogatories ("Interrogatories," and with the RFPs, the "Discovery Requests") and submits this brief in support.

## PRELIMINARY STATEMENT

PPFA served Texas with 20 RFPs and 13 Interrogatories that sought discovery relevant to Relator's claims under the False Claims Act ("FCA"), Texas Medicaid Fraud Prevention Act ("TMFPA"), and the Louisiana Medical Assistance Programs Integrity Law ("LMAPIL"), as well as the TMFPA claim asserted by Texas. In response, Texas stonewalled PPFA's discovery efforts by improperly asserting relevancy, overbreadth, and privilege objections to withhold documents and information that are relevant to the claims and defenses in this case. PPFA therefore respectfully seeks the Court's intervention to overrule Texas's objections and to compel it to properly respond to PPFA's Discovery Requests.

*First*, Texas objects that the Discovery Requests seek discovery that is "not relevant" because PPFA may only seek discovery from Texas that relates to *Texas*'s specific TMFPA claim (and not the other theories of liability asserted by Relator). But Federal Rule of Civil Procedure 26 flatly contradicts Texas's position by expressly permitting parties to undertake discovery of information and documents that are relevant to *any* claim or defense in the action.

*Second*, Texas contends that it need not provide any responsive discovery in connection with requests that it deems overbroad because, for example, the requests use defined terms for words like "you," "documents," and "communications." Even assuming that Texas's objections

were well-founded (and they are not), legal precedent does not allow Texas to simply refuse to provide any discovery in response to the Discovery Requests. Texas must still produce any discovery that is concededly relevant under a narrower construction of the requests, but Texas refuses to do so.

*Third*, Texas asserts facially inapplicable privileges—under the common-interest privilege and a state "Medicaid investigative privilege"—to withhold discovery. Texas claims that the common interest privilege extends to any and all information and documents exchanged with Relator and the Center for Medical Progress ("CMP"). But Texas is wrong. The common-interest privilege does not extend to CMP, which is a third-party with whom Texas has no shared legal interest. And Texas cannot assert a common-interest privilege over its interactions with Relator prior to February 5, 2021, when Relator says they made the pre-filing disclosure to Texas that triggered the parties' shared legal interest. As for the "Medicaid investigative privilege," that state-law privilege is simply inapplicable to this action under the federal common law of privilege.

*Fourth*, and finally, Texas refuses to provide complete answers to PPFA's Interrogatories. Instead, Texas vaguely points PPFA to documents (*e.g.*, the "State's filing in this case") in response, which is patently improper under Rule 33.

Such evasive tactics—in a multi-billion dollar case, no less—cannot be sustained. Texas chose to intervene in this case. Accordingly, it must engage in discovery in good faith, as the Federal Rules of Civil Procedure require. Texas's failure to do so—despite PPFA's attempts to reason with it—necessitates this motion to compel Texas to respond to PPFA's Discovery Requests.

## BACKGROUND

On June 3, 2022, PPFA served Texas with the First Requests for Production (**Exhibit A**) and the First Set of Interrogatories (**Exhibit B**).  Texas responded on July 5, 2022 (*see* **Exhibits C and D**) with boilerplate objections of relevance and overbreadth, as well as facially inapplicable privilege assertions and evasive interrogatory responses.  Texas refused to produce any documents in response to 14 of the 20 RFPs propounded by PPFA and offers only a partial production in response to three other RFPs.  Texas also declined to provide substantive answers to any of PPFA's Interrogatories.  So, on July 15, 2022, counsel for PPFA met and conferred with Texas regarding the responses, but Texas was generally uncompromising in its refusal to meaningfully supplement or amend its responses and objections.  PPFA therefore moves for an order overruling Texas's objections and compelling it to respond to the Discovery Requests.

## LEGAL STANDARD

Under Rule 26, a party may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense.  *See* Fed. R. Civ. P. 26(b)(1).  A discovery request is considered "relevant when the request seeks admissible evidence or 'is reasonably calculated to lead to the discovery of admissible evidence.'"  *Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011) (citations omitted).  At the discovery stage, relevancy is broadly construed, and "information is relevant if it 'encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  Should one party resist a relevant discovery request, Rule 37 permits the discovering party to "move for an order compelling disclosure or discovery."  Fed. R. Civ. P. 37(a)(1).

3

The moving party on a motion to compel bears the burden of showing that the discovery sought is relevant to the action or will lead to the discovery of admissible evidence.  *See Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006).  Once it is established that the materials requested are within the scope of permissible discovery, "the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted."  *United States ex rel. Fisher v. JPMorgan Chase Bank N.A.*, 2020 WL 3265060, at *3 (E.D. Tex. June 17, 2020).  This burden shifting also occurs where the resisting party has asserted privilege as a basis to withhold otherwise discoverable materials.  "Blanket assertions of privilege before a district court are usually unacceptable." *United States v. Davis*, 636 F.2d 1028, 1044 n.20 (5th Cir. 1981).

## ARGUMENT

The Court should compel Texas's responses to the Discovery Requests, because Texas is improperly asserting relevancy, overbreadth, and privilege objections to withhold documents and information that are relevant to the claims and defenses in this case.

## I.   Texas is Unreasonably Obstructing PPFA's Ability to Discover Documents and Information Relevant to the Claims and Defenses in this Action.

PPFA's discovery requests to Texas target information, documents, and communications that are relevant to this case and could reasonably lead to the disclosure of admissible evidence. PPFA seeks documents and information concerning:

1. The Texas Medicaid claims submitted by the Affiliate Defendants, and the Texas Medicaid payments received by the Affiliate Defendants, which are the subject of the FCA claims and the TMFPA claims.  *See* Ex. A (RFP Nos. 1, 3); Ex. B (Interrogatory Nos. 2, 3); *see also* Compl. ¶¶ 107–112.

2. Whether the Affiliate Defendants could receive and retain the Medicaid payments that are the subject of Relator's and Texas's claims.  *See*  Ex. A (RFP Nos. 9–12); *see also* Compl. ¶ 111; Texas Compl. ¶ 9.

4

3. Relator's and Texas's allegations that PPFA directly participated in—or controlled the Affiliates' actions regarding—the submission of claims and/or the withholding of repayment. *See* Ex. A (RFP Nos. 2, 4, 15); Ex. B (Interrogatory Nos. 3, 10, 11, 12); *see also* Compl. ¶¶ 16, 100–104; Texas Compl. ¶ 20.

4. The underlying factual allegations and the public-disclosure and government-action-bar defenses, including (a) Texas's communications with Relator and CMP, (b) Texas's communications concerning Relator, (c) Texas's communications with Louisiana concerning PPFA or the Affiliate Defendants, (d) Texas's communications with the media regarding the claims and allegations in this litigation, and (e) documents that reflect, or relate to, statements made by any person that concern the claims alleged against PPFA. *See* Ex. A (RFP Nos. 5–7, 13–14, 16); Ex. B (Interrogatory Nos. 4–9); *see also* Compl. ¶¶ 79–80, 84, 99.

5. The issue of materiality, such as documents concerning any fetal tissue study in which any Texas Medicaid provider other than the Affiliate Defendants participated. *See* Ex. A (RFP No. 8); *see also* Compl. ¶¶ 115–116.

6. Texas's claim for damages or penalties. *See* Ex. A (RFP No. 17); Ex. B (Interrogatory No. 13); *see also* Texas Compl. ¶¶ 49–51.

7. Witnesses with relevant knowledge, *see* Ex. B (Interrogatory No. 1), and documents related to Texas's responses to the Interrogatories, *see* Ex. B (RFP No. 20); *see also* Texas Compl. ¶ 36–41.

Yet, over and over again, Texas objected to providing information or documents relevant to this action by improperly and categorically claiming that the discovery sought was not relevant, overbroad, or subject to inapplicable privileges. *See generally* Ex. C; Ex. D. For the reasons explained below, Texas's objections cannot be sustained, and Texas should be compelled to provide answers and documents responsive to PPFA's reasonable Discovery Requests.

## II. Texas is Subject to Discovery Regarding All Claims and Defenses in this Action.

Texas's primary line of defense is its position that it need not produce documents or information concerning any claims or defenses in this case other than its specific TMFPA claim. *See, e.g.*, Ex. C at 7 (objecting to Request for Production No. 1 because "documents, communications, etc., related to 'presentment of false or fraudulent claims' is neither relevant to the State's claims or to Defendants' defenses"); *see generally* Ex. C (similar objections to Request

5

for Production Nos. 2–14, 16, 17, 20); Ex. D (similar objections to Interrogatory Nos. 3–10).  For example, Texas asserts that it need not produce documents going back to 2010 (even though Relator asserts FCA claims dating back to 2010) because *Texas*'s TMFPA claim only goes back to 2017 (even though the underlying termination proceedings giving rise to Texas's claim began in 2015).  *See* Ex. C at 16–17 (RFP No. 8).  Likewise, Texas contends that it need not produce information or documents concerning the presentment of false Medicaid claims—even though Relator is asserting FCA claims for the presentment of a false Medicaid claim, *see* Compl. ¶ 115—because those documents are not facially relevant to *Texas*'s TMFPA claim.  *See, e.g.*, Ex. C. at 7 (RFP No. 1).

Texas's position is flatly contradicted by the plain language of Rule 26(b)(1), which states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to *any* party's claim or defense."  Fed. R. Civ. P. 26(b)(1) (emphasis added); *see Booth v. City of Dallas*, 312 F.R.D. 427, 433 (N.D. Tex. 2015) (Rule 26(b)(1) permits a party to obtain discovery, even from non-parties, regarding another party's claims or defenses.); *see also Gregg v. Am. Tower Corp.*, 2014 WL 12591885, at *1 (N.D. Tex. Sept. 16, 2014) ("Relevancy has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, *any issue that is or may be in this case*." (cleaned up) (emphasis added)); *Garg. v. VHS Acquis. Sub. No. 7, Inc.*, 2021 WL 5817446, at *3 (W.D. Okla. Dec. 7, 2021) (When evaluating discovery disputes, "[c]ourts should liberally construe the scope of discovery under rule 26.").

Here, Relator asserts claims for (1) implied false certification and avoiding an obligation to return overpayments to the United States under the FCA, (2) presenting a false or fraudulent claim, avoiding an obligation to return overpayments to Louisiana Medicaid, and conspiracy to

commit both violations under the LMAPIL, and (3) violations of subsection 2 (concealing or failing to disclose information that permits a person to receive an unauthorized Medicaid payment), subsection 4 (making or causing false statements to be made concerning the conditions or operations of a facility in order to qualify for Medicaid certification or recertification), and subsection 9 (for conspiracy) under the TMFPA. *See* Compl. ¶¶ 114–138. When it intervened, Texas only asserted a claim under subsection 12 of the TMFPA for failure to return an overpayment. *See generally* Texas Compl. It did not intervene as to any other claim, nor has it moved to dismiss the other TMFPA claims retained by Relator. Rule 26 thus entitles PPFA to discover relevant information relating to all of the claims in the case—not just the one claim as to which Texas intervened.

PPFA did so pursuant to Rules 33 and 34, which in turn, permit a party (here, PPFA) to serve interrogatories and requests for production of documents that fall within the scope of Rule 26(b) on any other party to the case (here, Texas). *See* Fed. R. Civ. P. 33, 34; *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 579 (N.D. Tex. 2018) ("Generally, an interrogatory may relate to any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."); *see also* 8 Fed. Prac. & Proc. Civ. § 2011 (3d ed.) (noting that even "[a] third-party defendant may examine plaintiff although neither party asserts a claim against the other").

Texas's cramped position—that its discovery obligations only extend to its specific TMFPA claim—is not supported by any applicable rule or legal precedent. By joining this litigation as a plaintiff, Texas is subject to the Federal Rules of Civil Procedure—just like any other litigant. Accordingly, PPFA respectfully requests that the Court overrule Texas's opportunistic "relevancy" objections and compel Texas to produce documents and information that bear on any of the claims, defenses, or factual allegations in this case.

7

**III.   Texas's Overbreadth Objections Are Unfounded And, In Any Event, Do Not Excuse Texas From Producing Relevant Documents within the Scope of the Requests.**

Texas next repeatedly asserts that PPFA's requests are overbroad and, therefore, Texas need not answer the Interrogatories or produce documents in response to the RFPs.  *See generally* Ex. C (objecting to RFP Nos. 1–17, 20); Ex. D (objecting to Interrogatory Nos. 4–9).  Texas is wrong.

To start, Texas fails to explain how the Discovery Requests are overbroad, given that each of the RFPs and Interrogatories are tailored to the time period, factual allegations, and the claims and defenses in this case.  Although Texas asserts (without explanation) that PPFA's defined terms—such as "you," "documents," "communications," and "relating to"—are overbroad, Texas also stated that it would interpret those terms "consistent with applicable FRCPs, rules, law, and common usage" in responding to PPFA's Discovery Requests.  *See* Ex. C at 4; Ex. D at 3–4.  Texas does not explain how or why the Discovery Requests are overbroad if interpreted according to "common usage," as Texas committed to do.

In any event, even if Texas convincingly established that the Discovery Requests are actually "overbroad" (they are not), such a showing does not relieve Texas of its obligation to produce relevant information and documents.  *See Heller v. City of Dallas*, 303 F.R.D. 466, 488 (N.D. Tex. 2014) ("If a discovery request is overbroad, the responding party must, to comply with Rule 33 or Rule 34, explain the extent to which it is overbroad and answer or respond to the extent that it is not—and explain the scope of what the responding party is answering or responding to."); *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, 2010 WL 502721, at *10 (D. Colo. Feb. 8, 2010) ("Discovery requests must be given a reasonable construction, and a responding party is not permitted to conjure up ambiguity where there is none."); *Provost v. Kia Motors America*, 2006 WL 8432930, at *3 (M.D. La. June 27, 2006) ("While certain of these requests are overbroad,

8

KMA nevertheless had an obligation to produce information responsive to those requests subject to that objection.").

Texas has made no effort whatsoever to satisfy its discovery obligations.  For example, Request for Production No. 5 requests "[a]ll 2013-to-present communications with the Relator, including without limitation any communications between the Texas Attorney General and the Relator." Ex. C at 13.  Texas objected that the time period and the term "communications" were overbroad.  *Id.*  But rather than at least agree to produce documents and communications within a more limited time period and according to an alternative definition of "communication" that ostensibly comports with the Rules, Texas refused to produce *any* documents in response to the RFP.  *Id.* at 14.  Responding in this manner is entirely inappropriate.  *See, e.g.*, *Consumer Elecs. Ass'n v. Compras & Buys Mag., Inc.*, 2008 WL 4327253, at *2 (S.D. Fla. Sept. 18, 2008) ("If there is an objection based upon an unduly broad scope, such as time frame or geographic location, discovery should be provided as to those matters within the scope which is not disputed. For example, if discovery is sought nationwide for a ten-year period, and the responding party objects on the grounds that only a five-year period limited to activities in the state of Florida is appropriate, the responding party shall provide responsive discovery falling within the five-year period as to the State of Florida.").

While PPFA has attempted to resolve these issues through meet and confer, Texas has chosen to rest on its boilerplate accusations of overbreadth to avoid producing even indisputably relevant discovery.  Because such stonewalling undermines PPFA's ability to build its defense, PPFA requests that the Court overrule Texas's "overbreadth" objections and compel Texas to tender the documents and answers responsive to PPFA's Discovery Requests.

**IV.    Texas Is Withholding Discovery Based on Inapplicable Privilege Assertions.**

Texas is also resisting discovery by asserting two inapplicable privileges. *See generally* Ex. C (RFP Nos. 1–13, 15–18, 20); Ex. D (Interrogatory Nos. 4–9). *First*, Texas refuses to answer interrogatories or produce documents concerning its communications with Relator—no matter when the communication occurred—based on an asserted common-interest privilege. *See* Ex. C at 13–14 (RFP Nos. 5, 6); Ex. D at 10–12 (Interrogatory Nos. 6, 7). Relator, however, served an interrogatory response stating that Relator's first communication with Texas concerning the claims in this case occurred on February 5, 2021. Ex. E at 12 ("Relator states that Relator disclosed the material facts alleged in Relator's Complaint to the State of Texas on February 5, 2021 prior to filing Relator's Complaint."). Texas fails to explain how, then, it can claim a common-interest privilege with Relator prior to that date. In addition, Texas refuses to produce documents or answer interrogatories concerning its interactions with CMP based on the common-interest privilege, but that privilege does not extend to third parties, such as CMP, which have no shared legal interest with Texas. *See* Ex. C at 15–16 (RFP No. 7); Ex. D at 12–15 (Interrogatory Nos. 8, 9)

*Second*, Texas is also purporting to withhold information and documents based on a state-law "Medicaid investigative privilege." But this privilege has never been recognized in the federal common law of privilege, and there is no reason why it should apply in this case.

As the party asserting privilege, Texas bears the burden of establishing that a privilege applies to the communications and documents that Texas shared with Relator or CMP. *See Auto Club Fam. Ins. Co. v. Ahner*, 2007 WL 9780352, at *3 (E.D. La. Aug. 23, 2007) ("The party resisting discovery by asserting any privilege bears the burden of proof sufficient to substantiate its privilege claim and cannot rely merely on a blanket assertion of privilege."). Texas cannot do

10

so.  So, for all the reasons detailed below, the Court should overrule Texas's attempt to shield relevant documents and communications from discovery with unfounded privilege claims.

     A.    <u>Texas Cannot Assert a Blanket Privilege Over All Communications with Relator or CMP.</u>

Texas cannot claim a common-interest privilege with Relator prior to February 5, 2021—when Relator made its pre-filing disclosure—or with third-party CMP at any time.  "Despite its name, the common interest privilege is neither common nor a privilege.  Instead, it is an extension of the attorney-client privilege and of the work-product doctrine." *Ferko v. Nat'l Ass'n For Stock Car Auto Racing, Inc.*, 219 F.R.D. 396, 401 (E.D. Tex. 2003).  The mere fact that two entities have a common interest or goal does not, in and of itself, create a protection against disclosure.  "In the civil context, the common interest privilege protects two types of communications: (1) communications between co-[parties] in actual litigation and their counsel; and (2) communications between potential co-[parties] and their counsel." *United States v. Homeward Residential, Inc.*, 2016 WL 1031154, at \*5–6 (E.D. Tex. Mar. 15, 2016).  Thus, "the common interest doctrine protects communications between two parties or attorneys that share a common legal interest.  'A shared rooting interest in the "successful outcome of a case"… is not a common *legal* interest.'" *Id.* at \*6 (cleaned up).

Here, then, Texas's common-interest privilege with Relator "is properly asserted only once [Relator] made [its] pre-filing disclosure to the Government." *United States v. Cameron-Ehlen Grp.*, 2019 WL 6875354, at \*1 (D. Minn. Dec. 17, 2019).  As the court in *Cameron-Ehlen* explained, "[t]he very nature of the pre-filing disclosure makes the date it occurred a clear point of demarcation" for when the common-interest privilege arises in an FCA case.  *Id.*; *see also United States ex rel. Landis v. Tailwind Sports Corp.*, 303 F.R.D. 419, 427 (D.D.C. 2014) ("A common interest privilege can exist 'so long as [the] transferor and transferee anticipate litigation

against a common adversary on the same issue or issues.'" (citation omitted)).  At that point, there is a sufficient unity of interest and common legal strategy to support a common-interest privilege. But prior to that date, there is no unity of interest—the individual may only be a cooperating witness, interested party, or informant to the government with no shared litigation interest.  *See Cameron-Ehlen Grp.*, 2019 WL 6875354, at \*1–2 ("Because [Relator] was cooperating in the criminal investigation when he hired an attorney, it is far from obvious that any subsequent communication was made in furtherance of a common interest, rather than as a cooperating witness.").

According to Relator's interrogatory responses, the point of demarcation in this case falls on February 5, 2021, *see* Ex. E at 12, such that communications and documents between Texas and Relator may be subject to the common-interest privilege on and *after* that date (assuming those communications concern the parties' shared legal interest in this case), and then only if the communications or documents would have been privileged themselves.  *See also United States ex rel. Scott v. Humana Inc*., 2021 WL 3909906, at \*7 (W.D. Ky. Aug. 31, 2021) (noting that, even if relator and government shared a community legal interest, "the common interest rule still would only protect communications designed to further that shared interest"); *In re Commercial Money Ctr., Inc. Equip. Lease Litig.*, 248 F.R.D. 532, 536 (N.D. Ohio 2008) ("If a communication or document is not otherwise protected by the attorney-client privilege or work product doctrine, the common interest doctrine has no application.").

The common-interest privilege does not, however, shield pre-February 5, 2021 communications and documents.  Prior to that date, Relator had not apprised Texas of the material facts underlying Relator's Complaint, so Relator could not have had a common legal interest with Texas.  *See Cameron-Ehlen Grp., Inc.*, 2019 WL 6875354, at \*1; *see also Tailwind Sports Corp.*,

303 F.R.D. at 427.  Therefore, the Court should overrule Texas's privilege objection and compel Texas to produce all communications and documents that were exchanged between Relator and Texas prior to February 5, 2021.  Meanwhile, any communications or documents on or after that date that are withheld based on a purported common-interest privilege should be logged on Texas's privilege log so that the basis for the privilege assertion can be evaluated.  *See* Fed. R. Civ. P. 26(b)(5)(A).

As for Texas's communications with CMP, the common-interest privilege does not apply at all.  Unlike with Relator, Texas has no unity of interest with CMP with respect to any legal claim or issue.  *See Homeward Residential, Inc.*, 2016 WL 1031154, at *6 ("A shared rooting interest in the successful outcome of a case . . . is not a common *legal* interest." (cleaned up)).  The Court should thus compel Texas to also produce documents in response to RFP No. 7 and to respond to Interrogatory Nos. 8 and 9.

B.    The State-Law Medicaid Investigative Privilege is Inapplicable.

Texas also attempts to leverage a "Medicaid investigative privilege" under Texas Government Code § 531.1021(g), to shield documents, communications, and other information from disclosure.  *See generally* Ex. C (RFP Nos. 1–13, 15–17, 20); Ex. D (Interrogatory Nos. 4–9).  Texas seeks to assert the privilege to avoid producing, for example, information "relating to PPFA's alleged involvement in, control over, or knowledge of any 2017-to-present paid or unpaid Texas Medicaid claims," Ex. C at 8–9 (RFP No. 2); information "relating to a Texas Medicaid provider's obligation or lack of obligation to repay claims received during the pendency of a [TRO] or preliminary injunction barring termination from the Texas Medicaid program," *id.* at 22–23 (RFP No. 12); and documents relating to the allegation in Texas's Complaint that PPFA "provides significant monetary support to [the Affiliate Defendants] as well as other types of support and

13

control," *id.* at 25–26 (RFP No. 15).  How or why the Medicaid investigative privilege would extend to documents responsive to the aforementioned requests—or to claims that Texas does not contend were false or fraudulent, *see, e.g.*, Ex. C at 8 (Response to RFP No. 1)—is unclear.  But, in any event, the Medicaid investigative privilege is not applicable under federal privilege law.

"Although the Fifth Circuit has not addressed th[e] issue, most other circuit courts have held that *federal law of privilege* governs determination of *all* privilege issues raised in a federal question case involving pendent state law claims, even where the evidence sought is relevant to a pendent state law claim to which a contrary state privilege law would otherwise apply."  *Tonti Mgmt. Co. v. Soggy Doggie, LLC*, 2020 WL 9172077, at *2 (E.D. La. June 25, 2020) (emphasis added) (citing *In re Sealed Case (Med. Records)*, 381 F.3d 1205, 1212–13 (D.C. Cir. 2004); *Virmani v. Novant Health Inc.*, 259 F.3d 284, 287 n.3 (4th Cir. 2001); *Pearson v. Miller*, 211 F.3d 57, 61 (3d Cir. 2000); *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 n.10 (9th Cir. 1992); *Hancock v. Hobbs*, 967 F.2d 462 (11th Cir. 1992); *Hancock v. Dodson*, 958 F.2d 1367 (6th Cir. 1992); *von Bulow v. von Bulow*, 811 F.2d 136, 140 (2d Cir. 1987); *Wm. T. Thompson Co. v. General Nutrition Corp.*, 671 F.2d 100, 104 (3d Cir. 1982); *Memorial Hosp. for McHenry County v. Shadur*, 664 F.2d 1058, 1061 n.3 (7th Cir. 1981)).

That approach is consistent with the general rule that privileges, as exceptions to otherwise appropriate requests for relevant evidence, are strictly construed.  *See In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006).  It is also supported by the legislative history and advisory comments to Rule 501, which governs evidentiary privileges asserted in federal court. *See Cary v. Soileau*, 125 F.R.D. 432, 434 (W.D. La. 1989) (citing Fed. R. Evid. 501 advisory committee notes ("It is also intended that the Federal law of privileges should be applied with respect to pendent State law claims when they arise in a Federal question case.")).  Thus, "the

weight of authority among courts that have confronted this issue in the context of discovery is that the federal law of privilege governs even where the evidence sought might be relevant to pendent state law claims." *Robertson v. Neuromedical Ctr.*, 169 F.R.D. 80, 82–83 (M.D. La. 1996) (citations omitted).

Because this is a federal-question case involving pendent state-law claims, the federal law of privilege governs. *See Tonti Mgmt. Co.*, 2020 WL 9172077, at *3.  No Medicaid investigative privilege exists in the federal rules, and courts only recognize a state evidentiary privilege in the federal common law if the privilege is "intrinsically meritorious." *See Sierra Club v. Woodville Pellets, LLC*, 553 F. Supp. 3d 378, 384 (E.D. Tex. 2021) (citing *ACLU of Miss. v. Finch*, 638 F.2d 1336, 1343 (5th Cir. 1981)); *United States v. Mass. Gen. Hosp., Inc.*, 498 F. Supp. 3d 186, 189–93 (D. Mass. 2020) (declining to recognize under federal common law a state-law "medical peer review privilege" in an FCA and Massachusetts False Claim Act *qui tam* action); *see also Robertson*, 169 F.R.D. at 83 (noting that "courts are not inclined to exercise this authority [to recognize state privileges] expansively").

To determine whether a federal court should recognize a state privilege, a court must answer four inquiries favorably to the party seeking to invoke the privilege: "1) whether [the] communications originate in a confidence that they will not be disclosed, 2) whether confidentiality is essential to the full and satisfactory maintenance of the relation between the parties, 3) whether the relation is one which in the opinion of the community ought to be sedulously fostered, and 4) whether the injury that would inure to the relation by the disclosure of the communications is greater than the benefit thereby gained for the correct disposal of litigation." *Sierra Club*, 553 F. Supp. 3d at 384.  "An asserted state privilege should be recognized *only if all four conditions are met*." *Id.* (emphasis added).

15

Applied here, the answer to the first inquiry is possibly yes,[1] *see* Tex. Gov't Code § 531.1021(g) (noting confidentiality), but none of the other three factors favors federal recognition of the Medicaid investigative privilege.  Confidentiality is not essential to the maintenance of the relationship between the Texas Office of Inspector General ("OIG") and the entities and individuals from whom the OIG receives information in connection with a Medicaid fraud investigation.  As section 531.1021(g) indicates, in cases where voluntary cooperation is lacking, the Texas OIG has the authority to simply subpoena relevant information pursuant to an investigation.  Nor is the relationship one that ought to be "sedulously fostered."  Unlike in *Massachusetts General Hospital*, the relationship at issue here does not implicate an interest comparable to the "promot[ion] [of] patient safety."  498 F. Supp. 3d at 190.  Finally, the benefit gained for the correct disposition of this case is clearly greater than the cost of disclosure.  Texas asserts the Medicaid investigative privilege to shield from disclosure myriad documents and communications that could provide the factual background for Plaintiffs' claims as well as crucial support for Defendants' defenses.  *See, e.g.*, Ex. C at 11 (seeking documents and communications "relating to PPFA's alleged involvement in, control over, or knowledge of any 2017-to-present paid Texas Medicaid claims that [Texas] contend[s] should have been repaid").  Such documents are essential to the proper resolution of this case.  On the other hand, the cost of disclosure is low when Texas may rely on other tools besides confidentiality (e.g., subpoena authority) to facilitate the production of information pursuant to a Medicaid fraud investigation.

Because Texas's Medicaid investigative privilege is not "intrinsically meritorious," *Sierra Club*, 553 F. Supp. 3d at 384, the Court should decline to recognize the privilege as a matter of

---

[1] At the parties' meet-and-confer on July 11, 2022, counsel for Texas—consistent with the State's position that the Medicaid claims at issue were not false or fraudulent—was unable to identify any underlying Medicaid fraud investigation that could support the privilege.

federal common law.  Texas chose to intervene in this action because it purportedly wants to recover millions in Medicaid funds from Defendants; it should not now be permitted to use state-law privilege to shield discovery relevant to its claims.  Instead, the Court should compel Texas to produce all responsive information and documents that it is purporting to withhold based on the inapplicable Medicaid investigative privilege.

## V.   Texas Should Also Be Compelled to Provide Complete Answers to the Interrogatories.

Texas has also failed to properly answer Interrogatory Nos. 1–3 and 11–13.  In lieu of providing complete answers, Texas instead generally directs PPFA to search through vaguely defined documents to find its answers.  But Rule 33(d) only permits a party to produce business records in lieu of an answer if (1) "the burden of deriving or ascertaining the answer will be substantially the same for either party," and (2) the responding party specifies the records "in sufficient detail to enable the [other] party to locate and identify [the information] as readily as the responding party could." Fed. R. Civ. P. 33(d).  Texas has not made either showing in its responses to the Interrogatories.

For example, Interrogatory No. 1 requests that Texas identify each person with knowledge of relevant facts and the facts of which that person has knowledge.  In response, Texas obliquely refers PPFA to "the State's Filings in this case including, but not limited to, the State's Initial Disclosures," which are no less vague (and equally uninformative).  *See* Ex. D at 6; Ex. F (Texas's Initial Disclosures) at 2–3 (identifying a Texas Health & Human Services Commission custodian of records and incorporating by reference the individuals listed on Defendants' and Relator's Initial Disclosures, "any individual who is deposed in this case, any expert designated by any party in this case, and any individual who is mentioned in any of the discovery responses or documents produced in this case").  Texas also directs PPFA to the "Expert Reports, Expert Discovery

17

Production including claims data" and "the State's Filings, and Discovery Responses in this case" in lieu of identifying the facts that form the basis for its contentions regarding PPFA's alleged knowledge, involvement in, or control over the Affiliate Defendants' alleged misconduct. *See* Ex. D at 6–7 (Interrogatory Nos. 2, 3). Texas follows the same patterns in its responses to Interrogatory Nos. 11 and 12 by merely pointing PPFA to "the State's additional filings" and responses to an RFP served on Texas by the Affiliates. *Id*. at 16 (Interrogatory Nos. 11, 12). Likewise, Texas directs PPFA to its "Expert Report and Expert discovery production" rather than articulate the amount or basis for the penalties it seeks in this case, as requested in Interrogatory No. 13. *Id*. at 17 (Interrogatory No. 13).

Texas's answers are insufficient and incomplete under Rule 33. Texas does not explain how the burden of ascertaining the answers to PPFA's Interrogatories is substantially the same between the parties (aside from making that conclusory assertion). *See Lopez*, 327 F.R.D. at 592 (compelling responding party to answer interrogatories where responding party failed to show that moving party could locate and identify relevant information at least as readily as responding party from the referenced documents). And broadly gesturing to documents—like the "expert reports," "expert production," and the "State's Filings and Discovery Responses in this case"—does not provide PPFA with details sufficient to locate the information as readily as Texas. *See McKinney/Pearl Restaurant Partners, L.P. v. Metro. Life Ins. Co*., 2016 WL 2997744, at *10 (N.D. Tex. May 15, 2016) (concluding that "Plaintiff's pointing Defendants generally to document productions and expert reports does not properly invoke Rule 33(d)"); *Janvey v. Greenberg Traurig, LLP*, 2019 WL 13175533, at *3 (N.D. Tex. Feb. 12, 2019) (concluding that responding party could not merely cite to forthcoming expert report on damages but must instead provide

answer articulating damages amount and method of calculation based on the information available to it).

PPFA therefore requests that the Court compel Texas to provide full and complete answers to PPFA's Interrogatories in accordance with Rule 33.

<u>**CONCLUSION**</u>

PPFA served targeted discovery in an effort to understand the basis for the claims in this case and to discover information relevant to PPFA's defenses.  Texas's objections and claimed privileges are improper, and thus provide no basis to withhold discovery from PPFA.  Therefore, PPFA respectfully requests that the Court overrule Texas's objections and compel Texas to provide complete answers to Interrogatory Nos. 1–13 and produce documents responsive to Requests for Production Nos. 1–17 and 20.

Dated:   July 20, 2022

**O'MELVENY & MYERS LLP**

*/s/  Danny S. Ashby*
DANNY S. ASHBY
Texas Bar No. 01370960
dashby@omm.com
JUSTIN R. CHAPA
Texas Bar No. 24074019
jchapa@omm.com
2501 N. Harwood Street, Suite 1700
Dallas, Texas 75201
T: (972) 360-1900
F: (972) 360-1901

LEAH GODESKY (*pro hac vice*)
lgodesky@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
T: (310) 553-6700
F: (310) 246-6779

**BLACKBURN BROWN LLP**
RYAN PATRICK BROWN
Texas Bar No. 24073967
brown@blackburnbrownlaw.com
1222 S. Fillmore St.
Amarillo, Texas 79101
T: (806) 371-8333
F: (806) 350-7716

*Attorneys for Defendant Planned Parenthood*
*Federation of America, Inc.*

20

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2022, the foregoing Motion to Compel was filed via the Court's CM/ECF system and, therefore, was served electronically on all counsel of record.

*/s/ Danny S. Ashby*
Danny S. Ashby

## **CERTIFICATE OF CONFERENCE**

I certify that on July 15, 2022, counsel for PPFA and counsel for Texas discussed the propriety of Texas's objections and responses to PPFA's discovery requests, but were unable to make meaningful progress towards resolving their disputes, and Texas has not since served amended objections and responses to PPFA's discovery requests.

*/s/ Justin R. Chapa*
Justin R. Chapa

21