**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| THE STATE OF TEXAS, | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| THE STATE OF LOUISIANA, | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 2:21-CV-00022-Z |
| | § | |
| PLANNED PARENTHOOD | § | |
| FEDERATION OF AMERICA, INC., | § | |
| PLANNED PARENTHOOD GULF | § | |
| COAST, INC., PLANNED | § | |
| PARENTHOOD OF GREATER | § | |
| TEXAS, INC., PLANNED | § | |
| PARENTHOOD SOUTH TEXAS, | § | |
| INC., PLANNED PARENTHOOD | § | |
| CAMERON COUNTY, INC., | § | |
| PLANNED PARENTHOOD SAN | § | |
| ANTONIO, INC., | § | |
| | § | |
| Defendants. | § | |
| | § | |

**STATE OF TEXAS'S OPPOSITION TO AFFILIATE DEFENDANTS'**
**MOTION TO COMPEL TO THE STATE OF TEXAS AND BRIEF IN**
**SUPPORT**

i

# TABLE OF CONTENTS

SUMMARY......................................................................................................... 1

ARGUMENT & AUTHORITIES........................................................................ 5

    A.    Defendants' Motion to Compel is moot as to Interrogatories 4-7, 9, 14, and 15 and Requests for Production 3, 4, 6, 9-13, 15-18, 24, 33-39, and 41-43..... 6

    B.    Texas objects to the remaining requests......................................................... 7

        1.    Interrogatories 2, 8, 11-13, and 17, and Requests for Production 21-23, 25, 27, 28, 30, 31, and 45 seek plainly irrelevant information. ......................... 8

        2.    Interrogatories 10, 12, 13, and 16, and Requests for Production 14, 21-23, 25-32, and 45 are overbroad and unduly burdensome............................... 13

        3.    Interrogatories 8, 10, 11, 16, and 17, and Requests for Production 14, 21-23 and 25-32 target privileged information. ............................................... 17

CONCLUSION................................................................................................... 20

CERTIFICATE OF SERVICE ......................................................................... 22

# TABLE OF AUTHORITES

## Cases

*ABA, Inc. v. D.C.*, 40 F. Supp. 3d 153 (D.D.C. 2014) .................................................. 10

*Andra Grp., LP v. JDA Software Grp., Inc.*, 312 F.R.D. 444 (N.D. Tex. 2015) ......... 13

*Boudreaux v. Swift Transp. Co.*, 402 F.3d 536 (5th Cir. 2005) ................................... 5

*Central Pines Land Co. v. United States*, 274 F.3d 881 (5th Cir. 2001) ................... 19

*Concerned Citizens of Belle Haven v. Belle Haven Club*, 2004 WL 1699009, at *6
(D.Conn Apr. 28, 2004) ............................................................................................. 8

*Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.,* 315 F.R.D. 191 (E.D. Tex.
2016) .......................................................................................................................... 8

*Exp. Worldwide, Ltd. v. Knight*, 241 F.R.D. 259 (W.D. Tex. 2006) ............................ 5

*Grecia Est. Holdings LLC v. Meta Platforms, Inc.*, 2022 WL 2019296, at *5 (W.D.
Tex 2022) ................................................................................................................ 10

*Hayes v. Royala, Inc.*, 180 B.R. 476 (E.D. Tex. 1995) ............................................... 10

*Heller v. City of Dallas*, 303 F.R.D. 466 (N.D. Tex. 2014) ............................ 13, 15, 16

*In re* Keaty, 397 F.3d 264 (5th Cir. 2003) ............................................................ 10, 20

*In re O'Hare¸* 2012 WL 1377891, at *2, (S.D. Tex. 2012) ........................................ 14

*King v. Dogan*, 31 F.3d 344 (5th Cir. 1994) ............................................................ 2, 5

*Moses v. Halstead*, 236 F.R.D. 667 (D. Kan. 2006) ................................................... 13

*Physicians Comm. for Responsible Med. v. Glickman*, 117 F. Supp. 2d 1 (D.D.C.
2000) ......................................................................................................................... 4

*S.E.C. v. Brady*, 238 F.R.D. 429 (N.D. Tex. 2006) ....................................... 14, 17, 19

*Safeco of Am. v. Rawstron*, 181 F.R.D. 441 (C.D.Cal.1998) ....................................... 8

*Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250 (N.D. Tex. 2017) ...... 8

*SSL Servs., LLC v. Citrix Sys.*, 2010 WL 547478, at *1 (E.D. Tex. 2010) .................. 5

*Thompson v. Mueller*, 976 F. Supp. 762, 764 (N.D. Ill. 19970 .................................. 10

*Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377 (5th
Cir. 2009) ................................................................................................................. 9

*Transamerica Life Ins. Co. v. Moore*, 274 F.R.D. 602 (E.D. Ky. 2011) ..................... 13

*United State ex rel. Goodman v. Arriva Med., LLC*, 471 F. Supp. 3d 830 (M.D. Tenn.
2020) ........................................................................................................................ 11

*Universal Health Servs. v. United States ex rel. Escobar*, 579 U.S. 176 (2016) .. 11, 12

*Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812 (5th Cir. 2004) .................... 14, 18

**Statutes**

1 Tex. Admin. Code § 357.3(b)(1)(A) ............................................................. 10

1 Tex. Admin. Code § 357.703(c) ................................................................. 10

Tex. Gov't Code § 311.011(a) ...................................................................... 18

Tex. Gov't Code § 531.102(k) .................................................................. 17,18

Tex. Gov't Code § 531.1021(g) ............................................................... 17,18

Tex. Hum. Res. Code § 36.002(12) ................................................. 1, 2, 10, 13

Tex. Hum. Res. Code § 36.053(c) ................................................................ 18

Tex. Hum. Res. Code § 36.104(a)(1) ............................................................. 2

Tex. Hum. Res. Code § 36.104(b) ................................................................. 2

Tex. Hum. Res. Code § 36.107(a) ................................................................. 2

Tex. Hum. Res. Code §§ 531.102(k), 531.1021(g) .................................... 17,18

**Other Authorities**

https://www.hhs.texas.gov/sites/default/files/documents/laws-regulations/reports-presentations/2020/medicaid-chip-perspective-13th-edition/13th-edition-complete.pdf ............................................................................................. 16

https://www.hhs.texas.gov/sites/default/files/documents/laws-regulations/reports-presentations/2021/staff-compensation-report-jan-2021.pd .................................. 3

*Webster's New Collegiate Dictionary* (1990) .............................................. 18

**Rules**

Fed. R. Civ. P. 15(a) .................................................................................. 2

Fed. R. Civ. P. 26(b)(1) ....................................................................... 5, 9, 20

Fed. R. Civ. P. 26(b)(5)(A) ........................................................................ 16

Fed. R. Civ. P. 33(a) .............................................................................. 7, 8

Fed. R. Civ. P. 33(a)(1) ............................................................................. 7

Fed. R. Civ. P. 34 ..................................................................................... 4

Tex. R. Civ. P. 65 ..................................................................................... 2

The State of Texas ("Texas") submits this Opposition to Affiliate Defendants' Motion to Compel to the State of Texas and Brief in Support (Dkts. 127, 128).  For the reasons set forth herein, this Court should DENY AS MOOT Defendants' Motion to Compel as to Interrogatories 4-7, 9, 14, and 15 and Requests for Production 3, 4, 6, 9-13, 15-18, 24, 33-39, and 41-43.  Additionally, this Court should DENY Defendants' Motion to Compel as to Interrogatories 2, 8, 10-13, and 16-18 and Requests for Production 14, 21-23, 25-32, and 45 because these requests seek information and materials that are beyond the scope of discovery and/or categorically privileged.

## SUMMARY

As this Court is by now familiar, Texas's cause of action is a narrow one.  Texas alleges that Defendants violated the Texas Medicaid Fraud Prevention Act ("TMFPA") by "knowingly and improperly avoid[ing] or decreas[ing] an obligation to pay or transmit money or property to [the State of Texas] under the Medicaid program." Tex. Hum. Res. Code § 36.002(12).  Specifically, Texas alleges that Defendants failed to exercise their administrative remedies to appeal from final notice of termination letters issued by the Texas Health and Human Services Commission—Office of Inspector General ("HHSC-OIG") in December 2016, rendering Defendants' terminations final and unappealable under Texas law by the end of January 2017. Dkt. 22 at 2-6.  Defendants instead sought relief in both the Western District of Texas and the state district court of Travis County, Texas where they obtained now-vacated injunctive relief which temporarily prevented Texas from implementing the final and unappealable terminations. *Id.*  Defendants received

more than $10 million for services delivered to Medicaid patients between February 1, 2017 (the date by which Defendants' terminations were final and unappealable by operation of Texas law) and March 12, 2021 (the date of the state court's final order) and have failed to pay or transmit those funds back to Texas despite the obligation to do so. *Id.*

On November 11, 2021, Texas intervened in this action pursuant to Section 36.104(a)(1) of the TMFPA. Dkt. 16.  By intervening in this action, Texas has "the primary responsibility for prosecuting" the state TMFPA claims. Tex. Hum. Res. Code § 36.107(a); *see also* Dkt. 71 at 33 (recognizing that Texas takes primary responsibility for the prosecution of Relator's TMFPA Count III).  Moreover, the TMFPA permits a relator to proceed with a TMFPA action only "[i]f the state declines to take over the action," which did not happen here. Tex. Hum. Res. Code § 36.104(b). Texas's January 6, 2022, Complaint in Intervention supersedes Relator's TMFPA complaint and asserts the only live TMFPA claim in this action—Texas's 36.002(12) allegation.[1]

Despite the narrow scope of Texas's TMFPA action, Defendants seek sweeping discovery from Texas far beyond what is necessary for this action or contemplated by the Federal Rules of Civil Procedure (even as to Relator's False Claims Act

---

[1] Texas's interpretation of the TMFPA is consistent with both the Texas and federal rules of civil procedure, which prohibit two live complaints by the same plaintiffs (here, "The State of Texas *ex rel.* Alex Doe") against the same defendants in the same action. *See* Tex. R. Civ. P. 65 (upon a "substituted" pleading, "the instrument for which it is substituted shall no longer be regarded as a part of the pleading in the record of the cause"); Fed. R. Civ. P. 15(a); *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect[.]").

2

allegations).  For example, Defendants define "Texas" to encompass any agency or arm of the State of Texas, including counsel:

> [T]he **government of the State of Texas**; **any** agency, office, division, or department of the Texas Government, **including but not limited to** the Texas Health & Human Services Commission, Texas Office of the Inspector General, **Texas Attorney General's Office**, Texas Department of State Health Services, and the Texas Department of Public Safety; **and any attorneys**, agents, representatives (including any auditors or investigators **hired by the Texas Government**) acting or purporting to act on its behalf.

Dkt. 128-1 at 3; Dkt. 128-2 at 3 (emphasis added).  Defendants' definition of "Texas" is grossly overbroad, and, on its face, would impose an extraordinary burden on Texas to respond to discovery in this action on behalf of every arm of Texas state government.  The Texas Health and Human Services Commission ("HHSC") alone employs well more than 30,000 employees.[2]

Similarly, Defendants contend that a document is discoverable if it "relates to" the subject matter of the request, with Defendants defining "relates to" as:

> [M]entioning, comprising, consisting, indicating, describing, reflecting, referring, evidencing, regarding, pertaining to, showing, discussing, connected with, memorializing, or **involving in any way whatsoever the subject matter of the request**, including having a legal, factual or logical connection, relationship, correlation, or association with the subject matter of the request.  A document may "relate to" [ ] an individual or entity **without specifically mentioning or discussing that individual or entity by name**.

Dkt. 128-1 at 6-7; Dkt. 128-2 at 6-7 (emphasis added).  Even just as to the more than 30,000 current HHSC employees (not considering former employees or current/former

---

[2] https://www.hhs.texas.gov/sites/default/files/documents/laws-regulations/reports-presentations/2021/staff-compensation-report-jan-2021.pdf

employees of other state agencies), such a search could take a substantial amount of time.

Nevertheless, Texas has faithfully engaged in discovery, to date producing more than 160,000 pages of documents within Texas's possession—a response the Defendants call "perfunctory and paltry." Dkt. 128 at 1.  Texas continues to make rolling productions of documents (as contemplated by Fed. R. Civ. P. 34) and has remained available to meet and confer with Defendants regarding discovery.  Texas has complied with its discovery obligations.

Notwithstanding Texas's efforts, Defendants' Motion to Compel accuses Texas of depriving Defendants of "full access to discovery," Dkt. 128 at 8, based on little more than speculation and conjecture:

- "Defendants strongly suspect that the relevant state agencies" knew something (Dkt. 128 at 3, 8); and

- "Defendants expect both Relator and the State will seek to present evidence of the underly basis for the terminations" (Dkt. 128 at 3, 8).[3]

These suspicions and expectations are not sufficient to compel Texas to search for, and provide, the documents sought by Defendants' sweeping discovery requests. *See, e.g.*, *Physicians Comm. for Responsible Med. v. Glickman*, 117 F. Supp. 2d 1, 4 (D.D.C. 2000) ("Discovery to pursue a suspicion or a hunch is unwarranted.").

As part of its ongoing efforts to comply with its discovery obligations, Texas met and conferred with Defendants on August 1 and 2, 2022.  As detailed herein,

---

[3] The reasons behind Texas's decision to terminate Defendants' Medicaid provider contracts are not relevant to the issues in this TMFPA action.  Texas will *not* seek to present evidence in this litigation relating to the rationale for the underlying terminations.

4

Texas has, in the spirit of compromise, agreed—without waiving its objections or claims of privilege—to provide Defendants with certain amended and/or supplemental discovery responses and perform additional searches for responsive, non-privileged documents in relevant HHSC and HHSC-OIG electronic custodial files pursuant to agreed search terms. *See* Ex. A (Ltr. from R. Winter to T. Lollar, 8/3/2022); Ex. B (Texas's search term list). In Texas's view, this moots Defendants' Motion to Compel as to certain requests. Texas continues to object to specific Defendants' discovery requests and asks this Court to deny Defendants' Motion to Compel as to those requests for the reasons set forth herein.

## ARGUMENT & AUTHORITIES

"[A] district court has broad discretion in all discovery matters . . ." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 545 (5th Cir. 2005). Federal Rule of Civil Procedure 37 "empowers the court to compel the production of documents and complete responses to interrogatories upon motion by the party seeking discovery." *Exp. Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006). "The party requesting discovery may move to compel the disclosure of any materials requested so long as such discovery is relevant and otherwise discoverable." *SSL Servs., LLC v. Citrix Sys.*, 2010 WL 547478, at *1 (E.D. Tex. 2010). "The moving party bears the burden of showing that the materials and information sought are 'relevant to any party's claim or defense' or 'appear[ ] reasonably calculated to lead to the discovery of admissible evidence.'" *Id.* (citing Fed. R. Civ. P. 26(b)(1); *Knight*, 241 F.R.D. at 263).

### A. Defendants' Motion to Compel is moot as to Interrogatories 4-7, 9, 14, and 15 and Requests for Production 3, 4, 6, 9-13, 15-18, 24, 33-39, and 41-43.

Pursuant to the August 1 and 2, 2022 conferences between the parties, Texas has agreed—without waiving its objections or claims of privilege—to amend and/or supplement the following responses: (1) Texas will amend its responses to Interrogatories 4-7, 9, 14, and 15 to provide additional details, provide additional evidence, and/or identify additional witnesses; (2) Texas will amend its responses to Requests for Production 4, 13, and 41-43 to indicate that it possesses no responsive documents; (3) Texas will amend its response to Request for Production 6 to clarify that it is producing all expert documents required by the Federal Rules of Civil Procedure; (4) Texas will amend its responses to Requests for Production 36 and 37 to indicate that Relator has produced, or will produce, the requested documents to Defendants; and (5) Texas will supplement its responses to Requests for Production 3, 9-12, 15-18, 24, 33-35, 38, and 39 by performing additional searches for responsive, non-privileged documents in relevant HHSC and HHSC-OIG electronic custodial files (including any available private and/or shared electronic drives to which those custodians have/had access) pursuant to agreed search terms. *See* Ex. A; Ex. B. Those additional searches for responsive, non-privileged documents are underway and ongoing.

These amendments to the State's response render moot the Defendants' Motion to Compel on Interrogatories 4-7, 9, 14, and 15 and Requests for Production 3, 4, 6, 9-13, 15-18, 24, 33-39, and 41-43.

**B.      Texas objects to the remaining requests.**

Texas continues to stand on its objections and claims of privilege as to Interrogatories 2, 8, 10-13, and 16-18 and Requests for Production 14, 21-23, 25-32, and 45.  For the reasons set forth in Texas's Responses to Defendants' First Set of Interrogatories (Dkt. 128-3), Texas's Responses to Defendants' First Set of Requests for Production (Dkt. 128-4), and herein, Texas asks this Court to deny Defendants' Motion to Compel as to the remaining discovery requests.

As a preliminary matter, Texas stands on its objections to Interrogatory 18 (asking Texas to explain each of its denials to Defendants' Requests for Admission) because to answer it completely would exceed the 25-interrogatory limit set forth in Rule 33 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 33(a)(1).  Parties may only serve more than 25 interrogatories with leave of court. *Id.*   The Advisory Committee on Rule 33 of the Federal Rules of Civil Procedure has stated:

> Parties cannot evade this presumptive limitation through the device of joining as "subparts" questions that seek information about discrete separate subjects. However, a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication.

Fed. R. Civ. P. 33(a), advisory committee's note (1993).

Texas has indicated that it will respond to Interrogatory 18, but it will treat each explanation for a denied Request for Admission as a separate and discrete interrogatory or "subpart" and respond only to the 25-interrogatory limit. Dkt. 128-3 at 25.  This position is consistent with federal law.  Texas previously denied 66 of Defendants' 129 Requests for Admission. *See* Ex. C (Texas's Responses to Defendants'

7

Requests for Admission, 7/5/2022). Each request to explain a denied Request for Admission implicates a "discrete separate subject" that must be counted as a separate interrogatory. *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.,* 315 F.R.D. 191, 194 (E.D. Tex. 2016). The fact that Defendants disguise 66 separate requests as one interrogatory is of no consequence—the number of subparts does not turn on the exact labeling. *Id.* (citing 7 James Wm. Moore, Moore's Federal Practice § 33.30[2], at 33-33 (3d ed. 2016); *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 443 (C.D.Cal.1998) (use of explicit or implicit subparts defeats the purposes of the numerical limit contained in Rule 33(a))). Defendants' joining of discrete subparts into a single interrogatory is improper. *Concerned Citizens of Belle Haven v. Belle Haven Club*, 2004 WL 1699009, at *6 (D.Conn Apr. 28, 2004). Therefore, this Court should deny Defendants' Motion to Compel with respect to Interrogatory 18.

1. **Interrogatories 2, 8, 11-13, and 17, and Requests for Production 21-23, 25, 27, 28, 30, 31, and 45 seek plainly irrelevant information.**

Interrogatories 2, 8, 11-13, and 17, and Requests for Production 21-23, 25, 27, 28, 30, 31, and 45 seek plainly irrelevant information. Despite Defendants' claims of broad discovery, discovery is not without limits. Discovery requests must be "relevant to any party's claim or defense and proportional to the needs of the case." *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Proportionality is a "related but distinct requirement[]." *Id.* As *Samsung* explained:

> A court can—*and must*—limit proposed discovery that it determines is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, *the*

8

> *importance of the discovery in resolving the issues*, and whether the burden or expense of the proposed discovery outweighs its likely benefit[.]

*Id.* at 284 (emphasis added).

> *Samsung* provided this guidance:

> Thus . . . the court must limit the frequency or extent of discovery . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

*Id.* (internal quotation marks omitted).  The role of discovery, therefore, "is to find support for properly pleaded claims, not to find the claims themselves." *Id.* (quoting *Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 392 (5th Cir. 2009)).  Many of Defendants' discovery requests seek information beyond the proportional needs of this action, and therefore, beyond the scope of discovery.

For example, Requests for Production 21-23, 25, 30, 31, and Interrogatories 8, 11, and 17 seek—directly or indirectly—documents or information related to Defendants' terminations from the Medicaid program and the effect of the federal and state injunctions on the terminations. Dkt. 128-4 at 34-38.  While these issues may have been relevant to previous litigation, they are now settled and have no bearing on the present action.  This Court has already recognized that, as far as Texas law is concerned, Defendants' terminations from the Medicaid program were both uncontested and final on January 19, 2017. Dkt. 71 at 2.  Because Defendants did not

contest their terminations in accordance with state law,[4] Defendants' efforts to obtain information regarding the reasons underpinning those decisions are an impermissible collateral attack on the terminations themselves because they seek to relitigate an issue that was already decided: that Planned Parenthood was terminated from Texas Medicaid for cause. *See Thompson v. Mueller*, 976 F. Supp. 762, 764 (N.D. Ill. 19970 (finding of probable cause in earlier forum was sufficient to bar § 1983 claims in new forum at summary judgment stage); *Grecia Est. Holdings LLC v. Meta Platforms, Inc.*, 2022 WL 2019296, at *5 (W.D. Tex 2022) ("Under Fifth Circuit precedent, an issued is 'actually litigated' for collateral estoppel purposes when 'the issue is raised, contested by the parties, submitted for determination by the court, and determined.'") (quoting *In re Keaty*, 397 F.3d 264, 273 (5th Cir. 2003)). As far as the effect of the injunctions on the terminations, this Court will decide that issue. *See Hayes v. Royala, Inc.*, 180 B.R. 476, 477 (E.D. Tex. 1995) ("Issues of law, by their very nature, are within the exclusive purview of the court."). Documents or information concerning either the effect of the injunctions on the terminations or the opinions of state employees on the injunctions or terminations are irrelevant, and do not supersede this Court's role in deciding how the law will apply.

Requests for Production 27, 28, and 45 and Interrogatories 12 and 13 seek documents and information related to Medicaid providers *other than* Defendants.

---

[4] Planned Parenthood also had ample opportunity to defend the termination on the merits in accordance with Texas state law and did not. 1 Tex. Admin. Code § 357.3(b)(1)(A) (providing administrative remedy for denial of eligibility from the Medicaid program); 1 Tex. Admin. Code § 357.703(c) (providing for judicial review of an adverse administrative determination); *see also ABA, Inc. v. D.C.*, 40 F. Supp. 3d 153, 172 (D.D.C. 2014) ("The purpose of exhaustion is to give notice of the claim, to narrow the issues for prompt adjudication, to afford the agency an opportunity to resolve the matter internally, and *to avoid burdening the courts*.") (emphasis added).

Defendants incorrectly cite *Universal Health Servs. v. United States ex rel. Escobar*, 579 U.S. 176, 191-92 (2016), to support the notion that every provider in the Texas Medicaid program is fair game for discovery. *Escobar*, 579 U.S. 176, 191-92 (2016). Not so.  As this Court has already noted, *Escobar* has no bearing on Texas's cause of action under the TMFPA since Section 36.002(12) does not have a "materiality" element. Dkt. 71 at 16.  Nor does *Escobar* permit Defendants virtually limitless discovery of the Texas Medicaid program because of Relator's False Claims Act allegations.  One of the cases Defendants cite, *United State ex rel. Goodman v. Arriva Med., LLC*, 471 F. Supp. 3d 830 (M.D. Tenn. 2020), is illustrative.

In *Goodman*, the government brought False Claims Act allegations against defendants in connection with defendants' sale of diabetes supplies. *Goodman*, 471 F. Supp. 3d at 834.  The government pursued several theories of liability, including non-compliance with the Anti-Kickback Statute, submission of claims for dead patients, and violations the "five-year rule."[5] *Id.* at 834-35.  At issue were three of defendants' discovery requests seeking information and documents about the government's dealings with other suppliers. *Id.* at 835.  As the court noted, "[t]he purpose of the defendants' requests was to reveal whether the Medicare program actually, as a matter of practice, treats actions like [defendants'] as grounds for refusing to pay Medicare claims." *Id.*  The government resisted these requests, in part, because "the information sought is either wholly irrelevant or of such minimal relevance that the hardship of the discovery would outweigh its value." *Id.* at 839-40.

---

[5] The "five-year rule" makes patients ineligible for a new glucose meter after Medicare has paid for a glucose meter in the prior five years. *Goodman*, 471 F. Supp. 3d at 834.

11

After concluding that *Escobar* did not apply to the government's theories premised on the Anti-Kickback Statute ("AKS") and billing for services provided to dead patients, the court considered the defendants' discovery requests into the "Medicare program's actual enforcement of the five-year rule[.]" *Goodman*, 471 F. Supp. 3d at 844.   Recognizing that all discovery requests are limited to the proportional needs of the action, *id.* at 839, the court permitted defendants to have limited discovery regarding other providers because:

> According to the briefing, the government was able to document much of [defendants'] history under the five-year rule through historical Medicare data.  It presumably would be possible to do the same for other companies.  **Other documents or information may be legitimately discoverable as well, but this court finds it likely that a government review related to the five-year rule may not need to be as broad as, for example, an audit regarding AKS compliance, which could implicate issues far more complicated than the distance of time between two dates.**

*Id.* at 845 (emphasis added).  Thus, even the *Goodman* court—which Defendants cite approvingly—would undoubtedly look with disfavor on the sweeping discovery requests at issue here.  Defendants' requests would require Texas to search for, and produce, information and materials far beyond the simple claims data at issue in *Goodman*, including specific details about **every** Medicaid termination proceeding dating back more than a decade.  Defendants offer no authority to suggest that is Texas's obligation in this action.

Texas has responded to Interrogatory 2 insofar as it has produced, or will produce, claims data identifying each of Defendants' claims that are at issue in this action.  Defendants, however, seek to compel Texas to provide additional responses

on irrelevant matters premised on a flawed assumption—i.e., that Texas has alleged Defendants submitted "fraudulent" claims.  As previously set forth, Texas alleges only that Defendants "knowingly and improperly avoid[ed] or decreas[ed] an obligation to pay or transmit money or property to [the State of Texas] under the Medicaid program." Tex. Hum. Res. Code § 36.002(12).  Accordingly, Texas has completely responded to Interrogatory 2 within the confines of what is relevant to Texas's cause of action.

### 2. Interrogatories 10, 12, 13, and 16, and Requests for Production 14, 21-23, 25-32, and 45 are overbroad and unduly burdensome.

Interrogatories 10, 12, 13, and 16, and Requests for Production 14, 21-23, 25-32, and 45 are overbroad and unduly burdensome.  "If a discovery request is overbroad, the responding party must . . . explain the extent to which it is overbroad and answer or respond to the extent that it is not." *Heller v. City of Dallas*, 303 F.R.D. 466, 488 (N.D. Tex. 2014). "Generally, a discovery request is considered overly broad or unduly burdensome on its face if it '(1) uses an omnibus term . . . and (2) applies to a general category or group of documents or a broad range of information." *Transamerica Life Ins. Co. v. Moore*, 274 F.R.D. 602, 609 (E.D. Ky. 2011) (quoting *Moses v. Halstead*, 236 F.R.D. 667, 672 (D. Kan. 2006)).

Further, facially overbroad requests may also present an undue burden. *Andra Grp., LP v. JDA Software Grp., Inc.*, 312 F.R.D. 444, 450 (N.D. Tex. 2015).  This undue burden occurs when "requests are not particularized," or a party is requesting "all documents concerning the parties to [the underlying] action." *Id.* (quoting *In re*

*O'Hare*¸ 2012 WL 1377891, at *2, (S.D. Tex. 2012)) (internal quotation marks omitted).  "In determining whether a subpoena is unduly burdensome, courts consider '(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the documents; and (6) the burden imposed.'" *Brady*, 238 F.R.D at 466 (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).  This inquiry requires the court to "balance the need for discovery by the requesting party and the relevance of the discovery to the case against the harm, prejudice, or burden to the other party." *Id.*

Interrogatories 10 and 16, and Request for Production 14 and 29 ask Texas for information and documents about Texas's collective understanding of certain factual aspects of this action, including what it "learned" about the allegations in this action, what its "view" is on Defendants' status as Texas Medicaid providers, and any communications regarding "information" received from Relator or, more broadly, "the termination" and "the litigation."  These are overbroad and unduly burdensome.  As previously noted, Defendants define "Texas" as any agency or arm of the State of Texas, including **all** its attorneys, agents, and representatives. Dkt. 128-1 at 3; Dkt. 128-2 at 3.  To fully comply with these Interrogatories, as drafted, Texas would be duty-bound to ask all state employees (and search each's custodial file) about what they "learned," what their "views" are, and/or whether they ever communicated about the action.  Such an undertaking would be an incredible burden.  Instead, Texas responded by identifying the sources of information on which its allegations rest, as

14

well as its Complaint in Intervention which explains in full Texas's position about Defendants' status as Texas Medicaid providers. Dkt. 128-3 at 17-18, 22-23; Dkt. 128-4 at 23-25. Texas has complied with its obligation to respond to these interrogatories given their overbreadth. *Heller*, 303 F.R.D. at 488.

Likewise, Requests for Production 21-23, 25, 26, and 29-32 seek documents (including communications) about Texas's collective understanding of certain legal issues in this action. These include: the effect of the federal and state court injunctions (Requests 21 and 22); the effect of the terminations on "Medicaid's free choice of provider requirement" (Request 23); Defendants' obligations to repay (Request 25); whether Medicaid "could or should" seek recoupment of the funds at issue in this action (Request 26); Texas's "understanding of relationships between affiliated companies" (Request 29); how changes in the law or judicial decisions affect overpayments (Request 30); and Defendants' qualifications as Medicaid providers (Requests 31 and 32). Each of these requests specifically seek "communications involving one of [Texas's] personnel and any other person or persons." Aside from the obvious argument that these types of requests—what any Texas agency, employee, or agent—believes the law requires do not go to any relevant issue in this action, *see* Sect. (B)(1) *supra*, these requests are nevertheless overbroad and unduly burdensome. Again, these requests ask Texas to search the records of **every** state employee for **every** communication with **any** person, including attorneys, about **any** legal issue in this action. Given the stunning breadth of these requests, that burden is substantial. Moreover, the publicity surrounding this dispute—a fact this Court

15

has already acknowledged, *see* Dkt. 71 at 1-2—makes it more likely that state employees from agencies unrelated to Texas Medicaid communicated about these issues.  It would be virtually impossible to identify every communication every state employee had about Defendants and/or the legal questions involved in this action, and none of those would be relevant.

Interrogatories 12 and 13, and Requests for Production 27, 28, and 45 seek information and documents related to Medicaid providers *other than* Defendants. With these requests, Defendants seek to compel Texas to open the books to the Medicaid program and allow Defendants an opportunity to relitigate not only their terminations from Texas Medicaid, but Texas's relationship with every Medicaid provider in the program for more than a decade.  These requests are overbroad and unduly burdensome.   Currently, more than 4.3 million Texans are enrolled in Medicaid, and the program accounts for more than a quarter of the entire state budget.[6]  This is a massive program, and to permit Defendants to fish around in it at Texas's expense is not consistent with, or proportional to, the discovery requirements in this action. *Heller*, 303 F.R.D. at 488; Ex. D (Decl. of C. Fee, 8/5/2022) at ¶¶ 3, 9. Moreover, HHSC-OIG does not have ready access to the categories of information Defendants' request. *Id.* at ¶¶ 7, 8.  Given the length of time Defendants' request cover (back to 2010), it unduly burdensome for HHSC-OIG to gather information that would completely respond to these requests. *Id.* at ¶¶ 3-9.

---

[6] https://www.hhs.texas.gov/sites/default/files/documents/laws-regulations/reports-presentations/2020/medicaid-chip-perspective-13th-edition/13th-edition-complete.pdf

### 3. Interrogatories 8, 10, 11, 16, and 17, and Requests for Production 14, 21-23 and 25-32 target privileged information.

Interrogatories 8, 10, 11, 16, and 17, and Requests for Production 14, 21-23, and 25-32 target plainly privileged information.  A party can withhold privileged information in response to a discovery request by "(i) expressly mak[ing] the claim; and (ii) describ[ing] the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A).  "If a party meets this burden and proves that the materials sought warrant work product protection, the party seeking discovery must prove why those materials should still be produced." *S.E.C. v. Brady*, 238 F.R.D. 429, 443 (N.D. Tex. 2006).

Interrogatories 8, 10, and Request for Production 14 target information and documents covered by the HHSC-OIG and Office of the Attorney General ('OAG") Investigative Privilege. Tex. Hum. Res. Code §§ 531.102(k), 531.1021(g).  They seek information and documents concerning: "investigations, reviews, or other inquiries" related to the terminations (Interrogatory 8); the "sources of all information underlying [Texas's] allegations" (Interrogatory 10); and "communications with any staff, attorneys, or investigators for Texas regarding the matters alleged" (Request 14).   These requests drive right to the heart of Texas's investigative efforts underpinning Defendants' terminations, and those efforts are not discoverable.

17

Section 531.1021(g) of the Texas Government Code shields from discovery[7] the information and materials compiled by the HHSC-OIG or the OAG during an investigation and/or audit:

> All information and materials subpoenaed or compiled by the [HHSC-OIG] in connection with an audit, inspection, or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under [the Texas Public Information Act], and **not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone**[.]

Tex. Gov't Code § 531.1021(g) (emphasis added); *see also* Tex. Gov't Code § 531.102(k) (stating that only a "final report on an audit, inspection, or investigation is subject to required disclosure"); *see also Paxton v. Tex. Dep't of State Health Servs.*, 500 S.W.3d 702, 708 (Tex. App.—Austin 2016, no pet.).   The Texas Legislature's decision to protect "all information" without limitation—with "information" commonly defined as "the communication or reception of knowledge or intelligence"[8]—evidences an intent to broadly shield **all** details about HHSC-OIG investigations and/or audits. *See* Tex. Gov't Code § 311.011(a) (requiring that statutory words and phrases "be read in context and construed according to the rules of grammar and common usage").   This includes not only tangible information acquired from investigated and/or audited

---

[7] Because of the overbroad nature of the discovery requests targeting HHSC-OIG and OAG investigative materials, sbsent a court order, Texas will not log the materials covered by the Investigative Privilege.   These HHSC-OIG and OAG materials are shielded from all "means of legal compulsion for their release to anyone"—this includes demands that privileged materials be revealed on a log in accordance with the Federal Rules of Civil Procedure. Tex. Gov't Code § 531.1021(g). Indeed, Texas law favors the complete confidentiality of materials compiled during Medicaid fraud investigations. *See, e.g.*, Tex. Hum. Res. Code § 36.053(c).

[8] *Webster's New Collegiate Dictionary* (1990).

parties, but also the mental impressions, opinions, and conclusions of HHSC-OIG investigators during those proceedings. *See* Tex. Gov't Code §§ 531.102(k), 531.1021(g).

Defendants offer no reason—let alone a compelling one—why this Court should dispense with the express protections of HHSC-OIG investigative materials afforded by the Texas Government Code. State law governing the confidentiality of HHSC-OIG investigative materials should supply the federal rule absent an expression of federal legislative intent to the contrary. *Central Pines Land Co. v. United States*, 274 F.3d 881, 890 (5th Cir. 2001). Defendants have not, and cannot, make such a showing. *Brady*, 238 F.R.D. at 443 (holding that upon showing by non-moving party that materials are privileged, burden shifts to moving party to demonstrate why materials should still be produced).

Similarly, Interrogatories 8, 10, 11, 16, and 17, and Requests for Production 14, 21-23, and 25-32 target information and documents covered by attorney-client, attorney work product, and common interest privileges. They seek information and documents concerning: investigations in contemplation of litigation (Interrogatories 8 and 10, and Request 14); communications with attorneys (Request 14); communications between Texas and the Relator regarding this action (Request 14); and discussions of purely legal questions (Interrogatory 11, 16, and 17, Requests 21-23, 25-32). These requests do not merely *implicate* privileged materials—they strike at the very issues covered by the respective privileges. They are thus impermissible.

19

Rule 26 of the Federal Rules of Civil Procedure forbids Defendants from propounding these discovery requests for at least two reasons.  First, Rule 26(b)(1) limits the scope of discovery to "nonprivileged" matters. Fed. R. Civ. P. 26(b)(1). Inherently privileged matters are not discoverable. *Id.*   Second, Defendants are prohibited from discovering "documents … prepared in anticipation of litigation" unless: "(i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A).  Defendants fail on both counts, as the requested materials are not otherwise discoverable, and Defendants have made no showing of a "substantial need." *Id.*

## CONCLUSION

For the reasons set forth above, Texas respectfully requests that this Court: (1) DENY AS MOOT Defendants' Motion to Compel as to Interrogatories 4-7, 9, 14, and 15 and Requests for Production 3, 4, 6, 9-13, 15-18, 24, 33-39, and 41-43; and (2) DENY Defendants' Motion to Compel as to Interrogatories 2, 8, 10-13, and 16-18 and Requests for Production 14, 21-23, 25-32, and 45 because these requests seek information and materials that are patently irrelevant to this action and/or seek information and materials that are categorically privileged and not discoverable.

DATED: August 8, 2022

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN E. COWLES**
Deputy Attorney General for Civil Litigation

*/s/ Raymond Charles Winter*
**RAYMOND CHARLES WINTER**
Chief, Civil Medicaid Fraud Division
Texas Bar No. 21791950

**AMY S. HILTON**
Assistant Attorney General
General Litigation Division
State Bar No. 24097834

Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 / Fax (512) 320-0667
Raymond.Winter@oag.texas.gov
Amy.Hilton@oag.texas.gov

**Attorneys for State of Texas**

21

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was filed electronically via CM/ECF on August 8, 2022, causing electronic service on all counsel of record.

*/s/ Raymond Charles Winter*
**Raymond Charles Winter**
