# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>*ex rel.* ALEX DOE, Relator, | § <br> § <br> § | |
| THE STATE OF TEXAS,<br>*ex rel.* ALEX DOE, Relator, | § <br> § <br> § | |
| THE STATE OF LOUISIANA,<br>*ex rel.* ALEX DOE, Relator, | § <br> § <br> § <br> § | |
| Plaintiffs, | § <br> § | |
| v. | § <br> § | Civil Action No. 2:21-CV-00022-Z |
| PLANNED PARENTHOOD<br>FEDERATION OF AMERICA, INC.,<br>PLANNED PARENTHOOD GULF<br>COAST, INC., PLANNED<br>PARENTHOOD OF GREATER<br>TEXAS, INC., PLANNED<br>PARENTHOOD SOUTH TEXAS,<br>INC., PLANNED PARENTHOOD<br>CAMERON COUNTY, INC.,<br>PLANNED PARENTHOOD SAN<br>ANTONIO, INC., | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | |
| Defendants. | § <br> § | |

## STATE OF TEXAS'S OPPOSITION TO DEFENDANT PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.'S MOTION TO COMPEL TO THE STATE OF TEXAS AND BRIEF IN SUPPORT

# TABLE OF CONTENTS

SUMMARY ............................................................................................................ 1

ARGUMENT & AUTHORITIES ........................................................................ 5

   A.   Defendant's Motion to Compel is moot as to Interrogatories 1-3
       and 6-13 and Request for Production 1-9, 13-17 ............................ 6

   B.   Texas objects to the remaining requests ........................................ 6

      1.   Interrogatories 4 and 5 and Request for Production 10-12 seek
          plainly irrelevant information .................................................... 7

      2.   Interrogatories 4 and 5, and Requests for Production 10-12 are
          are overbroad and unduly burdensome ...................................... 9

      3.   Interrogatories 4 and 5, and Requests for Production 10-12 target
          privileged information ............................................................. 12

CONCLUSION ................................................................................................... 15

CERTIFICATE OF SERVICE ........................................................................ 17

# TABLE OF AUTHORITES

## Cases

*ABA, Inc. v. D.C.*, 40 F. Supp. 3d 153 (D.D.C. 2014) .................................................. 8

*Andra Grp., LP v. JDA Software Grp., Inc.*, 312 F.R.D. 444 (N.D. Tex. 2015) .......... 10

*Boudreaux v. Swift Transp. Co.*, 402 F.3d 536 (5th Cir. 2005) ................................... 5

*Brady*, 238 F.R.D at 443. 466 ....................................................................... 10, 12, 14

*Browning v. Prostok*, 165 S.W.3d 336 (Tex. 2005) ..................................................... 8

*Central Pines Land Co. v. United States*, 274 F.3d 881 (5th Cir. 2001) ................... 14

*King v. Dogan*, 31 F.3d 344 (5th Cir. 1994) ............................................................... 3

*Exp. Worldwide, Ltd. v. Knight*, 241 F.R.D. 259 (W.D. Tex. 2006) ............................ 5

*Hayes v. Royala, Inc.*, 180 B.R. 476 (E.D. Tex. 1995) ............................................... 9

*Heller v. City of Dallas*, 303 F.R.D. 466 (N.D. Tex. 2014) ......................................... 9

*In re O'Hare¸* 2012 WL 1377891, at *2, (S.D. Tex. 2012) .......................................... 10

*Knight,* 241 F.R.D. 259 (W.D. Texas 2006) ................................................................. 6

*Moses v. Halstead*, 236 F.R.D. 667 (D. Kan. 2006) .................................................. 10

*Paxton v. Tex. Dep't of State Health Servs.*, 500 S.W.3d 702
(Tex. App.—Austin 2016, no pet.) .............................................................................. 13

*Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250 (N.D. Tex. 2017) ....... 7

*S.E.C. v. Brady*, 238 F.R.D. 429 (N.D. Tex. 2006) ..................................................... 12

*Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill,*
     561 F.3d 377 (5th Cir. 2009) .................................................................................. 7

*Transamerica Life Ins. Co. v. Moore*, 274 F.R.D. 602 (E.D. Ky. 2011) ....................... 9

*United States v. Shepherd*, 23 F.3d.923 (5th Cir. 1994) ............................................. 8

*Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812 (5th Cir. 2004) ........................... 10

**Statutes**

1 Tex. Admin. Code § 357.3(b)(1)(A) ................................................................8

1 Tex. Admin. Code § 357.703(c) ....................................................................8

31 U.S.C. § 3730(e)(4)(A) ...............................................................................9

Tex. Gov't Code § 311.011(a) .......................................................................13

Tex. Gov't Code § 531.102(k) .......................................................................12

Tex. Gov't Code §§ 531.102(k), 531.1021(g) ...............................................12

Tex. Hum. Res. Code § 36.002(12) .................................................................2

Tex. Hum. Res. Code § 36.053(c) .................................................................13

Tex. Hum. Res. Code § 36.104(b) ...................................................................2

Tex. Hum. Res. Code § 36.107(a) ...................................................................2

**Other Authorities**

*Webster's New Collegiate Dictionary* (1990) ..............................................13

**Rules**

Tex. R. Civ. P. 65 ............................................................................................3

Fed. R. Civ. P. 26(b)(1) ........................................................................ 6, 9, 15

Fed. R. Civ. P. 26(b)(3)(A) ...........................................................................15

Fed. R. Civ. P. 26(b)(5)(A) ...........................................................................12

Fed. R. Civ. P. 34 ............................................................................................4

The State of Texas ("Texas") submits this Opposition to Defendant's Motion to Compel to the State of Texas and Brief in Support (Dkt. 132).  For the reasons set forth herein, this Court should DENY AS MOOT Defendant's Motion to Compel as to Interrogatories 1-3 and 6-13 and Requests for Production 1-9, 13-17 and 20. Additionally, this Court should DENY Defendant's Motion to Compel as to Interrogatories 4 and 5 and Requests for Production 10-12 because these requests seek information and materials that are beyond the scope of discovery and/or categorically privileged.

## SUMMARY

Defendant Planned Parenthood Federation of America, Inc. ("PPFA" or "Defendant") is a New York corporation that has over fifty affiliate organizations that provide healthcare services and abortion services in every state, including the other Defendants in this case (the "Affiliate Defendants").[1]  PPFA provides significant monetary support to its affiliates (including Affiliate Defendants) as well as other types of support and control, such as directives, marketing, communications, requirements, standards, policies, and accreditation for affiliates providing medical care, insurance coverage, legal counsel and representation, and direct support for the provision of health care services. Dkt. 22 at ¶ 20.

As detailed in Texas's Complaint in Intervention, the Affiliate Defendants failed to exercise their administrative remedies to appeal from final notice of termination letters issued by the Texas Health and Human Services Commission—

---

[1] Collectively, PPFA and the Affiliate Defendants will be referred to as the "Planned Parenthood Defendants."

Office of Inspector General ("HHSC-OIG") in December 2016, rendering Affiliate Defendants' terminations final and unappealable under Texas law by the end of January 2017. Dkt. 22 at 2-6; Dkt. 71 at 2.  The Planned Parenthood Defendants instead sought relief in both federal and state court, where they obtained now-vacated injunctive relief which temporarily prevented Texas from implementing the final and unappealable terminations. *Id.*  The Planned Parenthood Defendants received more than $10 million for services delivered to Medicaid patients between February 1, 2017 (the date by which Defendants' terminations were final and unappealable by operation of Texas law) and March 12, 2021 (the date of the state court's final order) and have failed to pay or transmit back to Texas despite the obligation to do so. *Id.* The Planned Parenthood Defendants, including PPFA, have violated the Texas Medicaid Fraud Prevention Act ("TMFPA") by "knowingly and improperly avoid[ing] or decreas[ing] an obligation to pay or transmit money or property to [the State of Texas] under the Medicaid program." Tex. Hum. Res. Code § 36.002(12).

On November 1, 2021, Texas intervened in this action pursuant to Section 36.104(a)(1) of the TMFPA. Dkt. 16.  By intervening in this action, Texas has "the primary responsibility for prosecuting" the state TMFPA claims. Tex. Hum. Res. Code § 36.107(a); *see also* Dkt. 71 at 33 (recognizing that Texas takes primary responsibility for the prosecution of Relator's TMFPA Count III).  Moreover, the TMFPA permits a relator to proceed with a TMFPA action only "[i]f the state declines to take over the action," which did not happen here. Tex. Hum. Res. Code § 36.104(b). Texas's January 6, 2022, Complaint in Intervention supersedes Relator's TMFPA

complaint and asserts the only live TMFPA claim in this action—Texas's 36.002(12) allegation.[2]   For this reason, and notwithstanding Defendant's argument to the contrary, the TMFPA claims originally brought by Relator that Texas did not include in its Complaint in Intervention are no longer viable and cannot be a basis for this Court to grant Defendant's Motion to Compel.

Despite the narrow scope of Texas's TMFPA action, Defendant seeks sweeping discovery from Texas far beyond what is necessary for this action or contemplated by the Federal Rules of Civil Procedure.   For example, Defendant defines "Texas" to encompass any agency or arm of the State of Texas, including counsel:

> [T]he **government of the State of Texas**, and **any** current or former subsidiary, division, affiliate, predecessor entity, agency, office, or department of the Texas government, **including without limitation** the Texas Health & Human Services Commission, the Texas Office of the Inspector General, the **Texas Attorney General's Office**, the Texas Department of State Health Services, and the Texas Department of Public Safety, as well as any current and former directors, employees, agents, **attorneys**, accountants, representatives, and **any other person** acting or purporting to act on behalf of the government of the State of Texas (including any auditors or investigators **hired by the Texas Government**).

Dkt. 132-1 at 4; Dkt. 132-2 at 5 (emphasis added).   Defendant's definition of "Texas" is grossly overbroad, and, on its face, would impose an extraordinary burden on Texas to respond to discovery in this action on behalf of every arm of Texas state government.   The Texas Health and Human Services Commission ("HHSC") alone

---

[2] Texas's interpretation of the TMFPA is consistent with both the Texas and federal rules of civil procedure, which prohibit two live complaints by the same plaintiffs (here, "The State of Texas *ex rel.* Alex Doe") against the same defendants in the same action. *See* Tex. R. Civ. P. 65 (upon a "substituted" pleading, "the instrument for which it is substituted shall no longer be regarded as a part of the pleading in the record of the cause"); Fed. R. Civ. P. 15(a); *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect[.]").

employs more than 32,000 persons. Ex. A (Decl. of G. Cisneros, 8/10/2022) at ¶ 3.  It would be a tremendous burden—and one far beyond the proportional requirements of this action—if Texas were compelled to search all 32,000 HHSC custodial files for information responsive to Defendant's requests. *Id.*  Yet that is what is plainly called for by the requests as written.

Similarly, Defendant contends that a document is discoverable if it "relates to" the subject matter of the request, with Defendant defining "relates to" as:

> [R]elating in any way to, referring to, arising from, dealing with, consisting of, mentioning, discussing, describing, reflecting, concerning, memorializing, supporting, constituting, evidencing, comprising, recording, or **in any other way pertaining to the subject**, either in whole or in part, whether directly or indirectly.

Dkt. 132-1 at 4; Dkt. 132-2 at 4 (emphasis added).  Not surprisingly, representatives from HHSC indicate that a search for documents responsive to Defendant's requests as written could last **years**. Ex. A at ¶ 5 (describing that one million responsive documents would take 625 full-time employee work days to review).

Despite Defendant's accusation that Texas "simply refuse[s] to provide any discovery in response to the Discovery Requests," Dkt. 132 at 2, Texas has faithfully engaged in discovery.  Texas has produced more than 160,000 pages of documents within Texas's possession, continues to make rolling productions of documents (as contemplated by Fed. R. Civ. P. 34), and has remained available to meet and confer with Defendant regarding discovery.  Texas has complied with its discovery obligations.

As part of its ongoing efforts to comply with its discovery obligations, Texas met and conferred with Defendant on August 1 and 2, 2022.  As detailed herein, Texas has, in the spirit of compromise, agreed—without waiving its objections or claims of privilege—to provide Defendant with certain amended and/or supplemental discovery responses and perform additional searches for responsive, non-privileged documents in relevant HHSC and HHSC-OIG electronic custodial files pursuant to agreed search terms. Ex. B (Ltr. from R. Winter to D. Ashby, 8/3/2022); Ex. C (Texas's search term list).  In Texas's view, this moots Defendant's Motion to Compel as to certain requests.  Texas continues to object to certain of Defendant's discovery requests and asks this Court to deny Defendant's Motion to Compel as to those requests for the reasons set forth herein.

## ARGUMENT & AUTHORITIES

"[A] district court has broad discretion in all discovery matters . . ." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 545 (5th Cir. 2005).  Federal Rule of Civil Procedure 37 "empowers the court to compel the production of documents and complete responses to interrogatories upon motion by the party seeking discovery." *Exp. Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006).  "The party requesting discovery may move to compel the disclosure of any materials requested so long as such discovery is relevant and otherwise discoverable." *Id.* at *1 (citations omitted).  "The moving party bears the burden of showing that the materials and information sought are 'relevant to any party's claim or defense' or 'appear[ ]

5

reasonably calculated to lead to the discovery of admissible evidence.'" *Id.* at *1 (citing Fed. R. Civ. P. 26(b)(1); *Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006)).

### A.    Defendant's Motion to Compel is moot as to Interrogatories 1-3 and 6-13 and Requests for Production 1-9, 13-17

Pursuant to the August 1 and 2, 2022 conferences between the parties, Texas has agreed—without waiving its objections or claims of privilege—to amend and/or supplement the following responses: (1) Texas will amend its responses to Interrogatories 1-3 and 6-13 to provide additional details, provide additional evidence, and/or identify additional witnesses; (2) Texas will amend its responses to Requests for Production 1 and 2 to indicate that it possesses no responsive documents;  (3) Texas will supplement its responses to Requests for Production 3-9, 13-17 and 20 by performing additional searches for responsive, non-privileged documents in relevant HHSC and HHSC-OIG electronic custodial files (including any available private and/or shared electronic drives to which those custodians have/had access) pursuant to agreed search terms. *See* Ex. B; Ex. C.  Those additional searches for responsive, non-privileged documents are underway and ongoing.

These amendments to Texas's responses render moot Defendant's Motion to Compel on Interrogatories 1-3 and 6-13 and Requests for Production 1-9, 13-17.

### B.    Texas objects to the remaining requests.

Texas continues to stand on its objections and claims of privilege as to Interrogatories 4 and 5 and Requests for Production 10-12.  For the reasons set forth in Texas's Responses to Defendant's First Set of Requests for Production (Dkt. 132-3), Texas's Responses to Defendant's First Set of Interrogatories (Dkt. 132-4), and

6

herein, Texas asks this Court to deny Defendant's Motion to Compel as to the remaining discovery requests.

### 1. Interrogatories 4 and 5 and Requests for Production 10-12 seek plainly irrelevant information.

Interrogatories 4 and 5, and Requests for Production 10-12 seek plainly irrelevant information.  Despite Defendant's claims of broad discovery, discovery is not without limits.  Discovery requests must be "relevant to any party's claim or defense and proportional to the needs of the case." *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017).  Proportionality is a "related but distinct requirement[]." *Id.*  As *Samsung* explained:

> A court can—*and must*—limit proposed discovery that it determines is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, *the importance of the discovery in resolving the issues*, and whether the burden or expense of the proposed discovery outweighs its likely benefit[.]

*Id.* at 284 (emphasis added).

*Samsung* provided this guidance:

> Thus . . . the court must limit the frequency or extent of discovery . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

*Id.* (internal quotation marks omitted).  The role of discovery, therefore, "is to find support for properly pleaded claims, not to find the claims themselves." *Id.* (quoting *Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 392

(5th Cir. 2009)).  Many of Defendant's discovery requests seek information beyond the proportional needs of the action, and therefore, beyond the scope of discovery.

For example, Requests for Production 10-12 seek—directly or indirectly— documents or information related to the Affiliate Defendants' terminations from the Medicaid program and the effect of the federal and state injunctions on the terminations. Dkt. 132-3 at 19-24.  While these issues may have been relevant to previous litigation, they have no bearing on the present action.  This Court has already recognized that, as far as Texas law is concerned, the Affiliate Defendants' terminations from the Medicaid program were both uncontested and final by the end of January 2017. Dkt. 22 at 2-6; Dkt. 71 at 2.  Because the Affiliate Defendants did not contest their terminations in accordance with state law,[3] Defendant's efforts to obtain information regarding the terminations are an impermissible collateral attack on the terminations themselves because they seek to relitigate an issue that was already decided: that Affiliate Defendants were terminated from Texas Medicaid for cause. *United States v. Shepherd*, 23 F.3d.923, 924 (5th Cir. 1994) (noting that "federal district courts lack jurisdiction to entertain collateral attacks on state judgments") (citations omitted); *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005) ("A collateral attack is an attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the

---

[3] Affiliate Defendants also had ample opportunity to defend against the terminations on the merits in accordance with Texas state law and did not. 1 Tex. Admin. Code § 357.3(b)(1)(A) (providing administrative remedy for denial of eligibility from the Medicaid program); 1 Tex. Admin. Code § 357.703(c) (providing for judicial review of an adverse administrative determination); *see also ABA, Inc. v. D.C.*, 40 F. Supp. 3d 153, 172 (D.D.C. 2014) ("The purpose of exhaustion is to give notice of the claim, to narrow the issues for prompt adjudication, to afford the agency an opportunity to resolve the matter internally, and *to avoid burdening the courts*.") (emphasis added).

judgment[.] … Only a void judgment may be collaterally attacked.") (citations omitted).

As far as the effect of the injunctions on the terminations, this Court will decide that issue. *See Hayes v. Royala, Inc.*, 180 B.R. 476, 477 (E.D. Tex. 1995) ("Issues of law, by their very nature, are within the exclusive purview of the court."). Documents or information concerning the effect of the injunctions or any other legal proceeding on the terminations are irrelevant, and do not supersede this Court's role in deciding how the law will apply.

Interrogatories 4 and 5 seek information appearing to further Defendant's arguments that Relator's *qui tam* action is barred on public disclosure grounds. These interrogatories seek plainly irrelevant information.   Whether Texas had knowledge about particular facts prior to February 5, 2021 is irrelevant to whether certain "allegations or transactions" had been "publicly disclosed" prior to the filing of Relator's *qui tam* action. 31 U.S.C. § 3730(e)(4)(A).  To the extent Defendant wants to discover "publicly disclosed" information, it certainly has the same "relative access" to the information, and Texas should not be compelled to undertake expensive and laborious discovery to produce such information. Fed. R. Civ. P. 26(b)(1).

### 2. Interrogatories 4 and 5, and Requests for Production 10-12 are overbroad and unduly burdensome.

Interrogatories 4 and 5, and Requests for Production 10-12 are overbroad and unduly burdensome.  "If a discovery request is overbroad, the responding party must . . . explain the extent to which it is overbroad and answer or respond to the extent that it is not." *Heller v. City of Dallas*, 303 F.R.D. 466, 488 (N.D. Tex. 2014).

9

"Generally, a discovery request is considered overly broad or unduly burdensome on its face if it '(1) uses an omnibus term . . . and (2) applies to a general category or group of documents or a broad range of information." *Transamerica Life Ins. Co. v. Moore*, 274 F.R.D. 602, 609 (E.D. Ky. 2011) (quoting *Moses v. Halstead*, 236 F.R.D. 667, 672 (D. Kan. 2006)).

Further, facially overbroad requests may also present an undue burden. *Andra Grp., LP v. JDA Software Grp., Inc.*, 312 F.R.D. 444, 450 (N.D. Tex. 2015). This undue burden occurs when "requests are not particularized," or a party is requesting "all documents concerning the parties to [the underlying] action." *Id.* (quoting *In re O'Hare¸* 2012 WL 1377891, at *2, (S.D. Tex. 2012)) (internal quotation marks omitted). "In determining whether a subpoena is unduly burdensome, courts consider '(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the documents; and (6) the burden imposed.'" *Brady*, 238 F.R.D at 466 (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004)). This inquiry requires the court to "balance the need for discovery by the requesting party and the relevance of the discovery to the case against the harm, prejudice, or burden to the other party." *Id.*

Requests for Production 10-12 seek documents (including communications) about Texas's collective understanding of certain legal issues in this action, namely, the effect of the prior litigation and the injunctions on a Texas Medicaid provider's duties with respect to payments received during those periods of time. Each of these

10

requests specifically seek communications involving any Texas employee and any other person.  In addition to the obvious argument that these types of requests—for information about what any Texas agency, employee, or agent believes the law requires—do not go to any relevant issue in this action, *see* Sect. (B)(1) *supra*, these requests are also overbroad and unduly burdensome.  Again, these requests ask Texas to search the records of **every** state employee for **every** communication with **any** person, including attorneys, about legal issues in this action.  Given the stunning breadth of these requests, that burden is substantial.  Moreover, the publicity surrounding this dispute—a fact this Court has already acknowledged, *see* Dkt. 71 at 1-2—makes it more likely that state employees from agencies unrelated to Texas Medicaid communicated about these issues.  It would be virtually impossible to identify every communication every state employee had about Defendants and/or the legal questions involved in this action, and none of those would be relevant. *See* Ex. A at ¶¶ 3-5.

Interrogatories 4 and 5 ask Texas to identify "all facts" in the pleadings that Relator "disclosed to" Texas prior to February 5, 2021, as well as additional details about such disclosures.  These requests are overbroad and unduly burdensome.  As previously noted, Defendant defines "Texas" as any agency or arm of the State of Texas, including <u>all</u> its attorneys, agents, and representatives. Dkt. 132-1 at 4; Dkt. 132-2 at 5.  To fully comply with these Interrogatories, as drafted, Texas would be duty-bound to ask all state employees (and search each's custodial file) about what disclosures Relator has made to each of them.  This would necessarily include

11

exploring which of the legions of state employees viewed Relator's YouTube content prior to February 5, 2021. *See* Dkt. 71 at 2. Such an undertaking would be virtually impossible. *See* Ex. A at ¶¶ 3-5.

### 3. Interrogatories 4 and 5, and Requests for Production 10-12 target privileged information.

Interrogatories 4 and 5, and Requests for Production 10-12 target plainly privileged information. A party can withhold privileged information in response to a discovery request by "(i) expressly mak[ing] the claim; and (ii) describ[ing] the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). "If a party meets this burden and proves that the materials sought warrant work product protection, the party seeking discovery must prove why those materials should still be produced." *S.E.C. v. Brady*, 238 F.R.D. 429, 443 (N.D. Tex. 2006).

Interrogatories 4 and 5 target information and documents covered by the HHSC-OIG and Office of the Attorney General ("OAG") Investigative Privilege. Tex. Gov't Code §§ 531.102(k), 531.1021(g). They seek information and documents concerning facts that Relator disclosed to Texas (Interrogatory 4) and the "sources of the information" (Interrogatory 5). These requests drive right to the heart of Texas's investigative efforts, and those efforts are not discoverable.

Section 531.1021(g) of the Texas Government Code shields from discovery[4] the information and materials compiled by the HHSC-OIG and the OAG during an investigation and/or audit:

> All information and materials subpoenaed or compiled by the [HHSC-OIG] in connection with an audit, inspection, or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under [the Texas Public Information Act], and **not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone**[.]

Tex. Gov't Code § 531.1021(g) (emphasis added); *see also* Tex. Gov't Code § 531.102(k) (stating that only a "final report on an audit, inspection, or investigation is subject to required disclosure"); *see also Paxton v. Tex. Dep't of State Health Servs.*, 500 S.W.3d 702, 708 (Tex. App.—Austin 2016, no pet.).  The Texas Legislature's decision to protect "all information" without limitation—with "information" commonly defined as "the communication or reception of knowledge or intelligence"[5]—evidences an intent to broadly shield **all** details about HHSC-OIG investigations and/or audits. *See* Tex. Gov't Code § 311.011(a) (requiring that statutory words and phrases "be read in context and construed according to the rules of grammar and common usage").  This includes not only tangible information acquired from investigated and/or audited parties, but also the mental impressions, opinions, and conclusions of HHSC-OIG and

---

[4] Absent a court order, Texas will not log the materials covered by the HHSC-OIG Investigative Privilege.  These HHSC-OIG materials are shielded from all "means of legal compulsion for their release to anyone"—this includes demands that privileged materials be revealed on a log in accordance with the Federal Rules of Civil Procedure. Tex. Gov't Code § 531.1021(g).  Indeed, Texas law favors the complete confidentiality of materials compiled during Medicaid fraud investigations. *See, e.g.*, Tex. Hum. Res. Code § 36.053(c).

[5] *Webster's New Collegiate Dictionary* (1990).

OAG investigators during those proceedings. *See* Tex. Gov't Code §§ 531.102(k), 531.1021(g).

There is no reason why this Court should dispense with the express protections of HHSC-OIG and OAG investigative materials afforded by the Texas Government Code. State law governing the confidentiality of HHSC-OIG and OAG investigative materials should supply the federal rule absent an expression of federal legislative intent to the contrary. *Central Pines Land Co. v. United States*, 274 F.3d 881, 890 (5th Cir. 2001). Defendant has not, and cannot, make such a showing. *Brady*, 238 F.R.D. at 443 (holding that upon showing by non-moving party that materials are privileged, burden shifts to moving party to demonstrate why materials should still be produced).

Similarly, Interrogatories 4 and 5, and Requests for Production 10-12 target information and documents covered by attorney-client, attorney work product, and common interest privileges. They seek information and documents concerning investigations in contemplation of litigation (Interrogatories 4 and 5)[6]; communications with attorneys (Interrogatories 4 and 5, and Requests 10-12); communications between Texas and Relator regarding this action (Interrogatories 4 and 5); and discussions of purely legal questions (Requests 10-12). These requests do

---

[6] Defendant argues that Interrogatories 4 and 5 target Texas's communications with Relator and others before Relator filed the instant *qui tam* action, and, as a result, there is no common interest or work product privilege as to those pre-suit communications. Defendant is not entitled to the requested information for two reasons. First, as discussed previously, that information is nevertheless shielded by Section 531.102(g) of the Texas Government Code. Second, the TMFPA is silent as to when a relator must serve on the attorney general "a written disclosure of substantially all material evidence and information the person possesses." Tex. Hum. Res. Code § 36.102(a). The TMFPA permits a relator to serve materials on the attorney general prior to commencing suit, thereby establishing a common interest privilege before the date a *qui tam* action is filed. *See id.*

not merely *implicate* privileged materials—they strike at the very issues covered by the respective privileges.  They are thus impermissible.

Rule 26 of the Federal Rules of Civil Procedure forbids Defendant from propounding these discovery requests for at least two reasons.  First, Rule 26(b)(1) limits the scope of discovery to "nonprivileged" matters. Fed. R. Civ. P. 26(b)(1). Inherently privileged matters are not discoverable. *Id.*  Second, Defendant is prohibited from discovering "documents … prepared in anticipation of litigation" unless: "(i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A).  Defendant fails on both counts, as the requested materials are not otherwise discoverable, and Defendant has made no showing of a "substantial need." *Id.*

## CONCLUSION

For the reasons set forth herein, Texas respectfully requests that this Court: (1) DENY AS MOOT Defendant's Motion to Compel as to Interrogatories 1-3 and 6-13 and Requests for Production 1-9, 13-17 and 20; and (2) DENY Defendant's Motion to Compel as to Interrogatories 4 and 5 and Requests for Production 10-12 because these requests seek information and materials that are patently irrelevant to this action and/or seek information and materials that are categorically privileged and not discoverable.

DATED: August 10, 2022

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN E. COWLES**
Deputy Attorney General for Civil Litigation

*/s/ Raymond Charles Winter*
**RAYMOND CHARLES WINTER**
Chief, Civil Medicaid Fraud Division
Texas Bar No. 21791950

**AMY S. HILTON**
Assistant Attorney General
General Litigation Division
State Bar No. 24097834

Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 / Fax (512) 320-0667
Raymond.Winter@oag.texas.gov
Amy.Hilton@oag.texas.gov

**Attorneys for State of Texas**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and accurate copy of the foregoing document was filed electronically via CM/ECF on August 10, 2022, causing electronic service on all counsel of record.

*/s/ Raymond Charles Winter*
**Raymond Charles Winter**
