# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| United States of America<br>*ex rel.* ALEX DOE, Relator, | § § § | |
| | § | |
| The State of Texas<br>*ex rel.* ALEX DOE, Relator, | § § § | CIVIL ACTION NO. 2:21-CV-00022-Z |
| | § | |
| The State of Louisiana<br>*ex rel.* ALEX DOE, Relator, | § § § | |
| | § | |
| Plaintiffs, | § § | |
| | § | |
| v. | § | |
| | § | |
| Planned Parenthood Federation of America,<br>Inc., Planned Parenthood Gulf Coast, Inc.,<br>Planned Parenthood of Greater Texas, Inc.,<br>Planned Parenthood South Texas, Inc.,<br>Planned Parenthood Cameron County, Inc.,<br>Planned Parenthood San Antonio, Inc., | § § § § § § § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' MOTION TO TRANSFER VENUE AND BRIEF IN SUPPORT

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND ...................................................................................................................2

I.     FACTUAL BACKGROUND.............................................................................2

      A.    Relator's Investigation & Affirmative False Claims Act
Allegations ...............................................................................................2

      B.    The Louisiana Termination Proceedings & Litigation ...............................3

      C.    The Texas Termination Proceedings & Litigation.....................................4

      D.    The Providers' Participation in Texas & Louisiana Medicaid
Following *Kauffman* ...............................................................................6

II.    PROCEDURAL BACKGROUND.......................................................................7

LEGAL STANDARD...........................................................................................................8

ARGUMENT ......................................................................................................................9

I.     THIS ACTION COULD HAVE BEEN BROUGHT IN THE AUSTIN
DIVISION...................................................................................................10

II.    THE PRIVATE INTEREST FACTORS OVERWHELMINGLY
SUPPORT A TRANSFER TO THE WESTERN DISTRICT OF TEXAS...........10

      A.    The Relative Ease of Access to Sources of Proof Strongly Favors
Transfer....................................................................................................11

      B.    Availability of Compulsory Process for Attendance of Witnesses
Favors Transfer. ......................................................................................12

      C.    The Cost of Attendance for Willing Witnesses Substantially Favors
Transfer....................................................................................................14

            1.    *State of Texas Party & Non-Party Witnesses* ...............................15

            2.    *Relator*....................................................................................17

            3.    *United States & Louisiana Non-Party Witnesses* .........................17

            4.    *Defendants' Party & Non-Party Witnesses* ..................................18

      D.    Other Practical Problems That Make Trial of a Case Easy,
Expeditious, and Inexpensive Favor Transfer. ..........................................20

            1.    *The Austin Division is a More Convenient Forum for
Unwilling Witnesses.*................................................................21

            2.    *The Austin Division's Familiarity with the Issues Favors
Transfer.*..................................................................................21

III.   THE PUBLIC INTEREST FACTORS STRONGLY SUPPORT A
TRANSFER TO THE WESTERN DISTRICT OF TEXAS. ...............................22

i

## TABLE OF CONTENTS
### (continued)

Page

A. The Administrative Difficulties Flowing from Court Congestion Favors Transfer. ...................................................................22

B. Local Interest in Having Localized Interests Decided at Home Favors Transfer. ...........................................................................24

C. The Familiarity of the Forum with the Governing Law Favors Transfer. ...................................................................................24

D. The Avoidance of Unnecessary Problems of Conflicts of Laws Or the Application of Foreign Law is Neutral. ..............................................25

CONCLUSION ...................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACQIS LLC v. EMC Corp.*,
   67 F. Supp. 3d 769 (E.D. Tex. 2014) .................................................................... 15

*C2 Commc'ns Techs., Inc. v. PAETEC Corp.*,
   2009 WL 5204266 (E.D. Okla. Dec. 22, 2009) ...................................................... 23

*ExpressJet Airlines, Inc. v. RBC Capital Markets Corp.*,
   2009 WL 2244468 (S.D. Tex. July 27, 2009) ................................................. 14, 23

*Fintiv Inc. v. Apple Inc.*,
   2019 WL 4743678 (W.D. Tex. Sept. 10, 2019) ...................................................... 11

*Garrett v. Hanson*,
   429 F. Supp. 3d 311 (E.D. Tex. 2019) .................................................................... 21

*Haworth, Inc. v. Herman Miller, Inc.*,
   821 F. Supp. 1476 (N.D. Ga. 1992) ........................................................................ 23

*Houston Fed'n of Teachers v. Tex. Educ. Agency*,
   2020 WL 12584275 (W.D. Tex. May 28, 2020) ......................................... 12, 15, 24

*In re Nat'l Presto Indus.*,
   347 F.3d 662 (7th Cir. 2003) ................................................................................. 15

*In re Radmax, Ltd.*,
   720 F.3d 285 (5th Cir. 2013) ............................................................................. 2, 14

*In re Subpoena Served on Affiliated Foods, Inc.*,
   2021 WL 4439796 (N.D. Tex. Sept. 28, 2021) ....................................................... 13

*In re Volkswagen AG,*
   371 F.3d 201 (5th Cir. 2004) .................................................................. 2, 8, 14, 15

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) (*en banc*) ........................................................... passim

*InfoGation Corp. v. Google LLC*,
   2021 WL 5547070 (W.D. Tex. Apr. 29, 2021) ................................................. 14, 22

*May v. Texaco Inc.*,
   1998 WL 34350028 (W.D. La. Nov. 25, 1998) ...................................................... 25

*McPeters v. LexisNexis, a Div. of Reed Elsevier, Inc.*,
   2011 WL 13253948 (W.D. Tex. May 27, 2011) ...................................................... 23

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Med. Dev. Int'l v. Cal. Dept. of Corr. & Rehab.*,
  2010 WL 347901 (E.D. Cal. Jan. 22, 2010) ........................................................ 25

*Planned Parenthood Gulf Coast, Inc. v. Kliebert*,
  141 F. Supp. 3d 604 (M.D. La. 2015) ............................................................ 3, 4

*Planned Parenthood Gulf Coast, Inc. v. Phillips*,
  24 F.4th 442 (5th Cir. 2022) ........................................................................ 7

*Planned Parenthood Gulf Coast, Inc. v. Phillips*,
  No. 18-30699 (5th Cir.) ............................................................................... 7

*Planned Parenthood of Greater Tex. Family Plan. & Preventative Health Servs. v. Kauffman*,
  981 F.3d 347 (2020) (*en banc*) ..................................................................... 6

*Planned Parenthood of Greater Tex. Family Plan. & Preventative Health Servs. v. Smith*,
  236 F. Supp. 3d 974 (W.D. Tex. 2017) ....................................................... 5, 22

*Planned Parenthood of Greater Tex. Family Plan. & Preventative Health Servs. v. Smith*,
  No. 1:15-cv-1058 (W.D. Tex. Nov. 23, 2015) .................................................. 5

*Planned Parenthood of Gulf Coast, Inc. v. Gee*,
  862 F.3d 445 (5th Cir. 2017) ...................................................................... 3, 4

*Qualls v. Prewett Enters.*,
  2022 WL 889034 (S.D. Tex. Mar. 25, 2022) ............................................... 14, 22

*Roco v. Am. Airlines, Inc.*,
  2022 WL 658566 (N.D. Tex. Mar. 4, 2022) ................................................ 14, 24

*Save Power Ltd. v. Syntek Fin. Corp.*,
  121 F.3d 947 (5th Cir. 1997) ....................................................................... 25

*SEC v. Christian Stanley, Inc.*,
  2012 WL 13012496, (C.D. Cal. Apr. 4, 2012) ................................................. 16

*United States ex rel. Beck v. St. Joseph Health Sys.*,
  2020 WL 10786540 (N.D. Tex. Feb. 10, 2020) ................................................. 20

*United States v. Burns*,
  2008 WL 5263743 (N.D. W. Va. Dec. 18, 2008) .............................................. 25

*United States v. Velazquez*,
  2014 WL 6977899 (S.D. Ill. Dec. 10, 2014) .................................................... 16

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*USPG Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.*,
   2011 WL 1103372 (N.D. Tex. 2011) ................................................................. 23

*Vollara LLC v. Ectotechworld, Inc.*,
   2019 WL 1746069 (N.D. Tex. Apr. 17, 2019) ................................................... 20

*Wilhelm v. Evolved Ingenuity, LLC*,
   2015 WL 13861106 (N.D. Tex. July 1, 2015) ..................................................... 9

*Word to Info, Inc. v. Facebook, Inc.*,
   2015 WL 13870507 (N.D. Tex. July 23, 2015) ............................................ 11, 13

*Zoltar Satellite Sys., Inc. v. LG Electronics Mobile Commc'ns Co.*,
   402 F. Supp. 2d 731 (E.D. Tex. 2005) .............................................................. 23

**Statutes**

1 Tex. Admin. Code § 371.1617(a) ........................................................................ 5

28 U.S.C. § 1404(a) ............................................................................................. 10

31 U.S.C. § 3732(a) ............................................................................................. 10

42 U.S.C. § 1396a(a)(23) ....................................................................................... 4

LSA-RS 46:437-11-46:437:14 ............................................................................... 4

**Other Authorities**

FED. COURT MGMT. STATISTICS, JUDICIAL CASELOAD PROFILE: DISTRICT
   COURTS (2022), available at https://www.uscourts.gov/statistics/table/na/federal-court-
   management-statistics/2022/03/31-1 ................................................................ 23

**Rules**

Fed. R. Civ. P. 45 ................................................................................................. 21

Fed. R. Civ. P. 45(c) ............................................................................................ 13

Fed. R. Civ. P. 45(g) ............................................................................................ 13

Fed. R. Evid. 804(a)(5) ........................................................................................ 21

Defendants Planned Parenthood Federation of America, Inc. ("PPFA"), Planned Parenthood Gulf Coast, Inc. ("PPGC"), Planned Parenthood of Greater Texas, Inc. ("PPGT"), Planned Parenthood South Texas, Inc. ("PPST"), Planned Parenthood Cameron County, Inc. ("PPCC"), and Planned Parenthood San Antonio, Inc. ("PPSA") (collectively, "Defendants")[1] hereby move to transfer venue to the Austin Division of the Western District of Texas pursuant to 28 U.S.C. § 1404(a) and submit this brief in support.

## PRELIMINARY STATEMENT

Relator, a California resident, filed this action against Defendants on behalf of the United States, the State of Texas, and the State of Louisiana in the Amarillo Division for the Northern District of Texas.  But the only apparent connection between this case and the Amarillo Division is that Relator chose to file suit here.  No party or witness resides in or has any connection to the Amarillo Division.  Defendants do not have any offices or clinics in the Amarillo Division, and none of the events giving rise to Relator's and Texas's claims took place here.  That, in turn, means that no Medicaid claims were submitted from the Amarillo Division, and none of the Medicaid payments that Relator and Texas seek to recover were received in the Amarillo Division.

By contrast, an analysis of the § 1404(a) factors establishes that the Austin Division in the Western District of Texas is a far more convenient venue to bring this case to trial.  Among other things, parties and witnesses reside in the Western District of Texas and Austin specifically; the agency that oversees the Texas Medicaid program—the Texas Health & Human Services Commission ("HHSC")—is headquartered in Austin; the HHSC Office of Inspector General ("HHSC-OIG") that purportedly investigated and sought to terminate the Providers' Medicaid Provider Agreements is headquartered in Austin; several clinics in Austin submitted the Medicaid

---

[1] PPGC, PPGT, PPST, PPCC, and PPSA are collectively referred to herein as the "Providers."

1

claims and received Medicaid funds at issue in this case; and the Austin Division issued the preliminary injunction central to this case following a three-day evidentiary hearing that addressed many of the same factual and legal issues raised by Relator's and Texas's claims.

Because the factors favoring transfer substantially outweigh the single consideration in favor of retaining venue in Amarillo—that is, Relator's choice to file suit here—Fifth Circuit precedent is clear that the Motion to Transfer Venue should be granted. *See In re Volkswagen AG,* 371 F.3d 201, 206 (5th Cir. 2004) ("*Volkswagen I*") (granting mandamus to correct denial of motion to transfer venue); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 318 (5th Cir. 2008) (*en banc*) ("*Volkswagen II*") (denial of transfer motion resulted in a "patently erroneous result" where the only connection to the original venue was plaintiff's choice to file there); *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013) ("The main guidance from the *en banc* court in *Volkswagen II . . .* is that the district court should have been fully aware of the inadvisability of denying transfer where only the plaintiff's choice weighs in favor of denying transfer and where the case has no connection to the transferor forum and virtually *all* of the events and witnesses regarding the case . . . are in the transferee forum.").

## **BACKGROUND**

### I.    FACTUAL BACKGROUND

#### A.    Relator's Investigation & Affirmative False Claims Act Allegations

Relator alleges that the Providers submitted Medicaid claims for services rendered at their clinics—none of which are located in the Amarillo Division[2]—to the Texas Medicaid program,

---

[2] *See* Appendix ("App.") 6–7 (PPGT offices and clinics); App. 28 (PPST laboratory); App. 32 (PPSA clinics); App. 36 (PPCC clinics); App. 46 (PPGC clinics).  PPGT is headquartered in Dallas, *see* App. 6; PPST, PPCC, and PPSA are headquartered in San Antonio, *see* App. 28, 32, 36; PPGC is headquartered in Houston, *see* App. 46; and PPFA is headquartered in New York, *see* App. 64; *see also* Compl. ¶¶ 13, 16–23.

which is administered by HHSC in Austin, Texas, and the Louisiana Medicaid program, which is administered by the Louisiana Department of Health ("LDH") in Baton Rouge, Louisiana.[3]  The Centers for Medicare & Medicaid Services ("CMS"), located in Baltimore, Maryland, administers the Medicaid programs on behalf of the U.S. Department of Health and Human Services ("DHHS"), headquartered in Washington, D.C.[4]

In 2015, Relator conducted an undercover "investigation" of PPGC in Houston, during which he purportedly discovered that PPGC was allegedly engaged in fetal tissue procurement practices that violated "medical and ethical standards and state and federal laws."[5]  As support, Relator cites a research study with the University of Texas Medical Branch ("UTMB"), located in Galveston, Texas, and PPGC's discussions regarding a potential research study with Baylor College of Medicine ("BCM"), located in Houston, Texas.[6]  Relator alleges that he shared his "investigatory" findings with Louisiana and Texas in 2015, and LDH and HHSC-OIG thereafter initiated proceedings to terminate the Providers' Medicaid Provider Agreements.[7]

### B. The Louisiana Termination Proceedings & Litigation

On August 3, 2015, LDH notified PPGC that it was terminating PPGC's Medicaid Provider Agreements, which LDH contended could be terminated at will upon 30 days written notice.  *See Planned Parenthood of Gulf Coast, Inc. v. Gee*, 862 F.3d 445, 451–52 (5th Cir. 2017); *Planned Parenthood Gulf Coast, Inc. v. Kliebert*, 141 F. Supp. 3d 604, 613 (M.D. La. 2015).  Later that month, PPGC and three of its patients sued to enjoin the termination of PPGC's Medicaid Provider Agreements.  *See Kliebert*, 141 F. Supp. 3d at 614.  After the United States Department of Justice,

---

[3] *See* Compl. ¶¶ 37, 41; App. 260–261 (HHSC); App. 266 (LDH).
[4] *See* App. 270 (CMS); App. 272 (DHHS).
[5] *See* Compl. ¶¶ 4, 64, 72–78.
[6] *See* Compl. ¶¶ 87, 89; App. 275, 278 (UTMB); App. 281 (BCM).
[7] *See* Compl. ¶¶ 82–84, 91.

on behalf of DHHS and CMS, filed a Statement of Interest, agreeing that LDH's "at will" termination violated the Medicaid Act, 42 U.S.C. § 1396(a)(23), LDH voluntarily rescinded the "at will" termination letter, but notified PPGC the very next day that LDH was again terminating the Medicaid Provider Agreements, this time for cause. *See id.* at 616–19. The district court, however, granted the individual plaintiffs' request for a preliminary injunction, finding that LDH presented "no actual evidence of a MAPIL-worthy misdeed"[8] to warrant termination of the Medicaid Provider Agreements, and "preliminarily enjoining [LDH] from terminating any of [the] Medicaid provider agreements." *Id.* at 649.

LDH appealed the preliminary injunction, arguing that the individual plaintiffs did not have a private right of action to challenge LDH's termination of the Medicaid Provider Agreements. *Gee*, 862 F.3d at 457–62. But the Fifth Circuit affirmed. The Court held that 42 U.S.C. § 1396(a)(23) supplied a private right of action that the individual plaintiffs could enforce through a § 1983 claim. *See id.* at 458. The Court further concluded that the individual plaintiffs were likely to succeed on their claim that LDH's termination of the Medicaid Provider Agreements violated § 1396(a)(23) because LDH had not called into question PPGC's qualifications to offer medical care. *See id.* at 465–66.

C.      The Texas Termination Proceedings & Litigation

On October 19, 2015, the then-Inspector General for HHSC-OIG, Stuart Bowen, sent a Notice of Termination to the Providers to terminate their enrollment in the Texas Medicaid Program because, he asserted, PPGC had purportedly violated minimum standards of care and the other Providers were "legal affiliates" of PPGC.[9] A month later, the Providers, along with several

---

[8] "MAPIL" refers to Louisiana's Medical Assistance Program Integrity Law. LSA-RS 46:437-11- 46:437:14

[9] *See* Compl. Ex. B at 1–3.

individual plaintiff patients, sued HHSC and HHSC-OIG in the United States District Court for the Western District of Texas, Austin Division, to enjoin the termination of the Texas Medicaid Provider Agreements.  *See* Compl. [DE 1], *Planned Parenthood of Greater Tex. Family Plan. & Preventative Health Servs. v. Smith*, No. 1:15-cv-1058 (W.D. Tex. Nov. 23, 2015).

After HHSC-OIG issued the Final Notice of Termination in December 2016,[10] Judge Sparks held a three-day evidentiary hearing from January 17–19, 2017, during which 14 witnesses were called and 397 exhibits were admitted into evidence (including video footage of Relator's investigation).  *See* Witness List [DE 86] & Exhibit List [DE 87], *Smith*, No. 1:15-cv-1058.  On February 21, 2017, Judge Sparks issued a 42-page opinion and order, granting the individual plaintiffs' motion to preliminarily enjoin HHSC-OIG from terminating the Providers' Medicaid Provider Agreements.[11]  *See Planned Parenthood of Greater Tex. Family Plan. & Preventative Health Servs. v. Smith*, 236 F. Supp. 3d 974 (W.D. Tex. 2017).  Among other things, Judge Sparks concluded that HHSC-OIG "likely acted to disenroll the Providers from Medicaid without cause" since HHSC-OIG did not have "even a scintilla of evidence" to conclude that the Providers were violating any federal or state laws.  *Id*. at 978, 998.

HHSC-OIG appealed the Texas preliminary injunction, again arguing that the individual plaintiffs lacked a private right of action to challenge the terminations.[12]  *Planned Parenthood of Greater Tex. Family Plan. & Preventative Health Servs. v. Kauffman*, 981 F.3d 347, 353 (2020)

---

[10] *See* Compl. Ex. C.

[11] Because the terminations of the Texas Medicaid Provider Agreements would have taken effect by operation of law on January 19, 2017—that is, 30 days after the Final Notice of Termination, *see* 1 Tex. Admin. Code § 371.1617(a)—the court entered a temporary injunction at the conclusion of the evidentiary hearing to prevent Texas from terminating the Medicaid Provider Agreements pending its ruling on the motions for preliminary injunction.  *See Smith*, 236 F. Supp. 3d at 987.

[12] The preliminary injunction rested on the individual plaintiffs' claims only, not the Providers' claims, which Judge Sparks declined to reach after concluding that the individual plaintiffs had a private right of action. *See Smith*, 236 F. Supp. 3d at 988.

(*en banc*). Although the Fifth Circuit panel initially affirmed the individual plaintiffs' private right of action following *Gee*, the Court subsequently agreed to hear the case *en banc* and ultimately reached a contrary conclusion, holding that the individual plaintiffs did *not* have a private right of action and, thus, overruling *Gee*. *See id*. By extension, then, the Court further concluded that the individual plaintiffs "[were] not likely to prevail on the merits of their § 1983 claims and, as a result, [were] not entitled to a preliminary injunction." *Id*. at 357–58.

> D.   The Providers' Participation in Texas & Louisiana Medicaid Following *Kauffman*

Since the preliminary injunctions enjoined Texas and Louisiana from terminating the Providers' Medicaid Provider Agreements, the Providers continued to provide services to Medicaid patients and submitted Medicaid claims to Texas and Louisiana for reimbursement during the pendency of the *Gee* and *Kauffman* proceedings.

When the *Kauffman* mandate issued on December 15, 2020, vacating the Texas preliminary injunction, the Providers sent a letter to Texas Medicaid that same day to request an administrative appeal of Texas's termination decision, which Texas denied.[13] The Providers next requested a 90-day grace period to transition patients to other providers, but HHSC only granted the Providers a 30-day extension, through February 3, 2021.[14] The Providers then secured a temporary restraining order from the Travis County District Court in Austin, Texas ("State Court"),[15] which enjoined HHSC-OIG from terminating or interfering with the Providers' participation in Texas Medicaid through March 12, 2021.[16] However, the State Court subsequently denied the Providers' motion for preliminary injunction and dismissed the case.[17]

---

[13] *See* Texas Compl. ¶ 6.
[14] *See id*.
[15] *See* App. 287 (261st Civil District Court, Travis County).
[16] *See* Tex. Compl. ¶ 7.
[17] *See* Tex. Compl. ¶ 7 & Ex. 1.

In contrast to the Texas proceedings, the Louisiana preliminary injunction—enjoining LDH from terminating PPGC's Medicaid Provider Agreements with Louisiana—remains in place after the Louisiana district court denied LDH's motion to vacate the preliminary injunction pending a decision in *Planned Parenthood Gulf Coast, Inc. v. Phillips*, No. 18-30699 (5th Cir.). *See* Order [DE 121], No. 15-cv-565 (M.D. La. Apr. 7, 2021).[18]

## II.   PROCEDURAL BACKGROUND

On February 5, 2021, Relator filed the Complaint under seal in the Amarillo Division for the Northern District of Texas, asserting affirmative and reverse false claims under the federal False Claims Act ("FCA"), the Texas Medicaid Fraud Prevention Act ("TMFPA"), and the LMAPIL based on two principal theories. First, Relator alleges an implied certification theory— that is, that the Providers violated state and federal law by engaging in illegal fetal tissue procurement practices, and they submitted false Medicaid claims that impliedly certified compliance with state and federal law.[19] Second, Relator alleges a reverse false claim theory— namely, that (1) Texas and Louisiana paid the Providers' Medicaid claims in accordance with the preliminary injunctions that enjoined them from terminating the Medicaid Provider Agreements; (2) *Kauffman* reversed and vacated the preliminary injunction as to Texas; (3) the Providers knew or should have known that they were obligated to repay any Medicaid payments because— notwithstanding the preliminary injunctions—the Medicaid Provider Agreements were purportedly terminated as a matter of law on October 15, 2015, for Louisiana, and on February 1, 2017, for Texas, and (4) the Providers violated the federal and state reverse false claim provisions when they failed to remit the alleged Medicaid "overpayments" to Texas and Louisiana.[20]  The

---

[18] Although *Phillips* was decided in January 2022, *see* 24 F.4th 442 (5th Cir. 2022), there have been no further proceedings in the Louisiana district court as of the date of this filing.
[19] *See generally* Compl. ¶¶ 4, 114–117, 123–126, 130–132.
[20] *See generally* Compl. ¶¶ 109–112, 119–121, 123, 125, 127, 130, 133.

United States and Louisiana declined to intervene.  Texas filed a Complaint in Intervention [DE 22] on January 6, 2022, asserting a single reverse false claim under the TMFPA concerning the Providers' alleged failure to remit Texas Medicaid "overpayments" following *Kauffman*.[21]

The Court ordered the case unsealed on January 12, 2022 [DE 27], and the Defendants moved to dismiss Relator's and Texas's Complaints for failure to state a claim under Rule 12(b)(6) [DE 48 & 50], which the Court granted in part and denied in part on April 29, 2022 [DE 71]. Defendants sought reconsideration of the motion to dismiss or, in the alternative, that the matter be certified for interlocutory appeal [DE 82].  But the Court denied that motion on July 13, 2022 [DE 121].  Because it is now clear that this case will not be dismissed on the pleadings—and thus a trial may be necessary—Defendants respectfully move to transfer venue to the Austin Division.

## LEGAL STANDARD

By enacting 28 U.S.C. § 1404, Congress sought to prevent plaintiffs from "abusing the[] privilege" that general venue statutes grant them "by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)."  *Volkswagen II*, 545 F.3d at 313.  Section 1404(a) first requires a court to evaluate whether the suit could have been brought in the district or division to which the moving party proposes transferring it.  *Volkswagen I*, 371 F.3d at 203.  If so, then the court next considers several private and public interest factors to determine whether a transfer should be granted for the convenience of the parties and witnesses and in the interest of justice. *See Volkswagen II*, 545 F.3d at 315.  "The private interest factors are: '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.'"  *Id.* (citation omitted).  "The public

---

[21] *See generally* Tex. Compl. ¶¶ 36–46.

interest factors are: '(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.'" *Id.* (citation omitted).   These factors are not necessarily exhaustive or exclusive, and no single factor is of dispositive weight. *Id.* "When [a] movant demonstrates that the transferee venue is clearly more convenient," then "it has shown good cause and the district court should therefore grant the transfer." *Id.*

Notably, the plaintiff's choice of venue is not a factor under § 1404(a); rather, it merely informs the movant's burden to show that the proposed venue is "clearly more convenient" than the venue chosen by the plaintiff. *Id.* at 314–15.[22]   Accordingly, a court commits "extraordinary error" if the court "appl[ies] the stricter *forum non conveniens* dismissal standard, misconstru[es] the weight of the plaintiffs' choice of venue, treating choice of venue as a § 1404(a) factor, misappl[ies] the *Gilbert* factors, disregard[s] the specific precedents of [the] Court in *In re Volkswagen I,* [or] gloss[es] over the fact that not a single relevant factor favors the [plaintiff's] chosen venue" in denying a motion to transfer venue. *Id.* at 318.

## ARGUMENT

The Amarillo Division of the Northern District of Texas does not have any connection to the parties, the witnesses, or the facts of this case.  By contrast, three parties reside in the Western District of Texas; several party and non-party witnesses are local to Austin; Austin is a more convenient, centralized location for trial for party and non-party witnesses from the San Antonio, Houston, and Dallas areas and witnesses located outside of Texas; and a substantial portion of the

---

[22] A plaintiff's choice of forum is also afforded less deference when, as here, the plaintiff is not a resident of the forum he chose and the events giving rise to his claims did not occur there. *See Wilhelm v. Evolved Ingenuity, LLC,* 2015 WL 13861106, at *5 (N.D. Tex. July 1, 2015).

events giving rise to the claims in this case arose out of the Western District of Texas (and Austin specifically).   It is unsurprising, then, that the private and public interest factors here overwhelmingly favor transfer to the Austin Division in the Western District of Texas, whereas "not a *single* relevant factor favors [Relator's] chosen venue."   *Volkswagen II*, 545 F.3d at 318 (emphasis added).   Because the Austin Division is clearly a more convenient forum than the Amarillo Division for this case, Defendants respectfully request that the Court grant this Motion to Transfer Venue for the convenience of the parties and witnesses and in the interest of justice.

## I.      THIS ACTION COULD HAVE BEEN BROUGHT IN THE AUSTIN DIVISION.

The preliminary question under § 1404(a)—whether "a civil action might have been brought" in the destination venue—is easily satisfied here.   28 U.S.C. § 1404(a).   An FCA case may be "brought in any district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred."   31 U.S.C. § 3732(a).   The Austin Division meets this test:   (1) PPGT operates several clinics in Austin,[23] (2) Relator alleges that the retention of the Medicaid payments by PPGT—including its Austin clinics—violated 31 U.S.C. § 3729(a)(1)(G),[24] and (3) Relator alleges that the Providers presented false claims for payment to Texas Medicaid, which is administered in Austin, in violation of 31 U.S.C. § 3729(a)(1)(A).[25]

## II.     THE PRIVATE INTEREST FACTORS OVERWHELMINGLY SUPPORT A TRANSFER TO THE WESTERN DISTRICT OF TEXAS.

The four private interest factors overwhelmingly favor transfer to the Austin Division, where sources of proof may be found, party and non-party witnesses are located, the location for trial would be more convenient for non-resident witnesses, and the court has absolute subpoena

---

[23] *See* App. 6–7.
[24] *See id*.; Compl. ¶¶ 119–121.
[25] *See* Compl. ¶¶ 114–117; App. 260–261; App. 291–292; App. 291–294.

power and greater familiarity with the underlying facts and issues in this case.

    A.    <u>The Relative Ease of Access to Sources of Proof Strongly Favors Transfer.</u>

The first private interest factor—the relative ease of access to sources of proof—favors transfer when, as here, evidence can be more readily accessed from the transferee district.  This factor focuses on the *relative* ease of access to sources of proof—not *absolute* access—based on "where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc*., 2019 WL 4743678, at \*2 (W.D. Tex. Sept. 10, 2019).  "Although the technological convenience of e-discovery may diminish concerns associated with the location of evidence," Fifth Circuit precedent is clear that such developments "do[] not negate the significance or eliminate consideration of this factor in a section 1404(a) transfer analysis." *Word to Info, Inc. v. Facebook, Inc*., 2015 WL 13870507, at \*3 (N.D. Tex. July 23, 2015); *see Volkswagen II*, 545 F.3d at 316 ("That access to some sources of proof presents a lesser inconvenience now than it may have absent recent developments does not render this factor superfluous.").

Although some limited documentary evidence may be found in other divisions within the Northern District of Texas,[26] Defendants are unaware of *any* evidence in the Amarillo Division.  By contrast, a considerable amount of evidence may be found in the Austin Division, including:

    1.    Documentary evidence concerning the services provided by PPGT's Austin-based clinics, the Medicaid claims they submitted, and the Medicaid payments they received.[27]

    2.    Documentary evidence in the possession of HHSC in Austin, including the Texas Medicaid Provider Agreements, the Texas Medicaid Provider Procedure Manuals, and the letters exchanged with the Providers and CMS concerning the terminations.[28]

---

[26] PPGT maintains its headquarters and operates clinics in other areas of the Northern District of Texas where documentary evidence may be found as to that entity alone. *See* App. 6–7.

[27] *See* App. 6–8 ("Relevant records concerning the reimbursement of Medicaid claims by PPGT are maintained at . . . the above-identified clinics," including PPGT's clinics in Austin).

[28] *See* App. 260–261; App. 341–342; Tex. Compl. ¶ 6.

3.    Documentary evidence in the possession of HHSC-OIG in Austin, including the termination notices sent to the Providers and the underlying documentation and evidence relating to its investigation and decision to terminate.[29]

4.    Documentary evidence related to the lawsuit filed in the Western District of Texas and the preliminary injunction issued by the Austin Division, which Relator and Texas acknowledge are relevant to the claims in this case.[30]

5.    Documentary evidence related to the lawsuit filed in State Court, which Relator and Texas also identified as relevant documents.[31]

6.    Documents and data in the possession of the Texas Medicaid & Healthcare Partnership ("TMHP") in Austin that relate to the Medicaid claims that the Providers submitted to, and the payments they received from, the Texas Medicaid program.[32]

7.    Other documents bearing on scienter and materiality that are in the possession of HHSC and/or HHSC-OIG, which may include documents that reflect:  (a) when and under what circumstances Texas considers a Medicaid payment an "overpayment"; (b) Texas's understanding of the effect of the preliminary injunction on the Medicaid Provider Agreements; and (c) whether Texas has knowingly declined to seek repayment of Medicaid payments from other Medicaid providers under similar circumstances.

Given the absence of *any* relevant documentary evidence in Amarillo, the relative ease of access to sources of proof strongly favors transfer of this case to the Austin Division.  *See Houston Fed'n of Teachers v. Tex. Educ. Agency*, 2020 WL 12584275, at *3 (W.D. Tex. May 28, 2020) (concluding first factor "strongly" favored transfer since "[t]he case has no ties to San Antonio, and all the events occurred and thus sources of proof are in Austin (or Houston)").

B.    <u>Availability of Compulsory Process for Attendance of Witnesses Favors Transfer.</u>

The second factor—the availability of compulsory process for attendance of witnesses—

---

[29] *See* App. 264; *see, e.g.,* Compl. Ex. B (HHSG-OIG termination letter).

[30] *See, e.g.*, App. 341.

[31] *See, e.g.*, App. 341–342.

[32] *See* Tex. Compl. Ex. 3 at 1 (stating that TMHP is the claims administrator for Texas Medicaid under contract with HHSC); App. 354 (Expert Report of Don Lochabay, stating in FN 14 that TMHP provided the aggregated Fee-For-Service claims data for his analysis); App. 291–294, (identifying Austin addresses for TMHP).

also favors transfer to the Austin Division.  "A venue that has absolute subpoena power for both deposition and trial is favored over one that does not."  *Facebook*, 2015 WL 13870507, at *3.  Here, the Amarillo Division and the Austin Division both enjoy nationwide power to subpoena witnesses to *trial or a hearing* under 31 U.S.C. § 3731(a).  But that provision does not govern a court's power to compel or quash subpoenas for depositions.  *See id.*  Rather, that power is governed by Federal Rule of Civil Procedure 45.  And under Rule 45, Austin is the indisputably superior venue because there is not a *single* identifiable witness who would fall within the scope of this Court's Rule 45 subpoena power in Amarillo.  *See* Fed. R. Civ. P. 45(c), (g); *In re Subpoena Served on Affiliated Foods, Inc.*, 2021 WL 4439796, at *3 (N.D. Tex. Sept. 28, 2021) (noting that Rule 45 subpoenas are decided by the district court where compliance is required).

By contrast, there are several key, non-party witnesses in the Austin and San Antonio areas over whom the Austin Division would enjoy Rule 45 subpoena power, including (1) Mr. Bowen, who may be subpoenaed for deposition regarding his conduct as the then-Inspector General for HHSC-OIG[33]; (2) Charles Smith, the former Executive Commissioner for HHSC, who may be subpoenaed for deposition regarding his role in the termination proceedings[34]; (3) TMHP, which may be subpoenaed for deposition and documents related to the Texas Medicaid claims data[35]; and (4) Jeffrey Hons, who recently retired from his position as President and CEO for PPST.[36]  Because the Austin Division enjoys "absolute" subpoena power over critical witnesses for trial *and deposition*—unlike the Amarillo Division—this factor favors transfer to the Austin Division.

---

[33] According to his Texas State Bar profile, Mr. Bowen practices in the Austin area.  *See* App. 296.
[34] Mr. Smith appears to reside in the Austin area according to his LinkedIn Profile.  *See* App. 299.
[35] *See* App. 354; App. 291–294.
[36] S*ee* App. 39–40.  Although Mr. Hons resides in San Antonio, the Austin Division also enjoys Rule 45 subpoena power over much of the San Antonio area given its close proximity to Austin.

C.      The Cost of Attendance for Willing Witnesses Substantially Favors Transfer.

A transfer of venue to the Austin Division would also be more convenient for all parties and their witnesses under this third factor, which is often deemed the single most important factor in the transfer analysis. *See Qualls v. Prewett Enters.*, 2022 WL 889034, at *6 (S.D. Tex. Mar. 25, 2022). In considering the cost of attendance for willing party and non-party witnesses, the convenience of non-party witnesses is generally accorded greater weight. *See Roco v. Am. Airlines, Inc.*, 2022 WL 658566, at *3 (N.D. Tex. Mar. 4, 2022); *InfoGation Corp. v. Google LLC*, 2021 WL 5547070, at *3 (W.D. Tex. Apr. 29, 2021) ("Although more weight is given to the convenience of non-party witnesses, 'the convenience of the party witnesses is still a part of the analysis'" (citation omitted)). But courts have "temper[ed] this line of reasoning by observing that, merely because a prospective witness is *currently* employed by a party, there is no assurance that the employee will remain in the employ of the party at the time of trial."[37] *ExpressJet Airlines, Inc. v. RBC Capital Markets Corp.*, 2009 WL 2244468, at *8 (S.D. Tex. July 27, 2009). And when, as here, "the distance between an existing venue for trial of a matter and proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen II*, 545 F.3d at 317.[38]

The Austin Division unquestionably provides a far more convenient forum for all witnesses—party and non-party alike—to testify in this case, as summarized in the chart below.[39]

---

[37] Indeed, one key witness—Jeffrey Hons—recently retired from PPST. *See* App. 39.

[38] That is because "additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment" and other personal commitments and responsibilities. *Volkswagen I*, 371 F.3d at 205. Even then, the Fifth Circuit granted mandamus when the factors weighed in favor of an intra-district transfer despite there only being a 60-mile distance between divisions. *See Radmax*, 720 F.3d at 289.

[39] **Exhibit 2** summarizes the mileage, number of direct flights, and the cost of the least expensive flight for travel to Austin and Amarillo from the areas where witnesses are likely to reside, including those addressed below, based on a defined search of Expedia and Southwest Airlines.

| Witness Travel to Austin and Amarillo | | |
|---|---|---|
| **Witness's Area of Residence** | **Austin** | **Amarillo** |
| Austin | 0 (Local) | 500 miles |
| San Antonio | 80 miles | 500 miles |
| Houston | 160 miles | 600 miles |
| Dallas | 200 miles | 365 miles |
| Out-of-State | Direct Flights | No Direct Flights |

All the Texas resident witnesses either reside in Austin or other metropolitan areas in Texas (such as San Antonio, Houston, and Dallas-Fort Worth) that are considerably closer to Austin than Amarillo.[40]  In addition, there are substantially more options for witnesses to fly direct to Austin than Amarillo, which impacts the time and cost for those witnesses to attend trial.[41]  *See Volkswagen I*, 371 F.3d at 204 n.3 (lack of direct flights between San Antonio and Marshall was pertinent to the transfer analysis); *ACQIS LLC v. EMC Corp.*, 67 F. Supp. 3d 769, 776 (E.D. Tex. 2014) ("[T]he existence or non-existence of direct flights can impact the analysis of travel time").

1.    *State of Texas Party & Non-Party Witnesses*

The State of Texas—and its witnesses who reside in the Austin area—stands to benefit the most from a transfer to the Austin Division.  *See Volkswagen*, 545 F.3d at 317 ("[I]t is an 'obvious conclusion' that it is more convenient for witnesses to testify at home."); *Houston Fed'n of Teachers*, 2020 WL 12584275, at *3.  And for those who travel at the expense of Texas, the extra cost associated with travel to Amarillo would not be a prudent expenditure of taxpayer money, particularly in a case with substantial connections to Austin.  *See In re Nat'l Presto Indus.*, 347 F.3d 662, 665 (7th Cir. 2003) ("When government lawyers and investigators incur time and travel costs to litigate in a remote forum, the burden falls on the taxpayer, who finances the [] government…."); *SEC v. Christian Stanley, Inc.*, 2012 WL 13012496, at *2 (C.D. Cal. Apr. 4,

---

*See* App. 72–73 (explaining search parameters); App. 82 (Exhibit 2).
[40] *See* App. 82.
[41] *See* App. 82.

2012) ("Because the SEC is funded by taxpayers and prosecutes securities fraud on behalf of the public and the relevant investors, inconvenience to the SEC in the form of increased litigation expenses affects the public at large."); *cf. United States v. Velazquez*, 2014 WL 6977899, at *5 (S.D. Ill. Dec. 10, 2014) (denying transfer because "[t]ransfer of the case to Florida will cost the Government (and ultimately the taxpayers) more than trial in the Southern District of Illinois").

**HHSC**.  HHSC witnesses that may testify at trial will likely come from the Austin area since HHSC is headquartered in Austin.[42]  For example, Executive Commissioner, Cecile Erwin Young, and the Chief Medicaid and CHIP Services Officer, Stephanie Stephens, both appear to reside in the Austin area.[43]  In addition, Mr. Smith is a resident of Austin and a non-party witness likely to provide testimony at trial as the former Executive Commissioner for HHSC.[44]

**HHSC-OIG**.  Since HHSC-OIG is also headquartered in Austin, the HHSC-OIG witnesses who may testify at trial are also likely to reside in the Austin area.[45]  For example, Ted Spears, the Chief Medical Officer who participated in the decision to terminate the Texas Medicaid Provider Agreements, resides in the Austin area.[46]  Likewise, Mr. Bowen is a resident of Austin and a key non-party witness likely to testify at trial as the former Inspector General for HHSC-OIG.[47]

**TMHP**.  As the claims administrator for Texas Medicaid, TMHP will likely be subpoenaed to testify regarding the Texas Medicaid claims and reimbursements at issue in this case, and TMHP's witnesses are likely to reside in the Austin area where TMHP is located.[48]

---

[42] *See* App. 260–261.

[43] *See* App. 313; App. 326.

[44] *See* App. 299.

[45] *See* App. 264.

[46] *See* App. 336.  Indeed, Dr. Spears testified at the preliminary injunction hearing in *Smith*.  *See* Witness List [DE 86], No. 1:15-cv-1058 (W.D. Tex. Jan. 19, 2017).

[47] *See* App. 296.  Mr. Bowen also testified at the preliminary injunction hearing in *Smith*.  *See* Witness List [DE 86], No. 1:15-cv-1058 (W.D. Tex. Jan. 19, 2017).

[48] *See* App. 291–294.

2.      *Relator*

Relator is a resident of California and, like the other non-resident witnesses addressed below, there are likely few (if any) direct flights for Relator to travel from California to Amarillo and far better travel options to Austin.[49]  That means that Austin, too, is a more convenient forum for Relator to appear at trial.

3.      *United States & Louisiana Non-Party Witnesses*

Non-party witnesses appearing on behalf of Louisiana and the United States will also be required at trial, and those witnesses would also benefit from a transfer to the Austin Division.

**United States**.  Since DHHS and CMS are based in Washington, D.C. and Baltimore, Maryland, respectively, it stands to reason that witnesses from those two agencies will likely come from those areas.[50]  Although there are several direct flights between the Baltimore/Washington, D.C. area and Austin, there do not appear to be *any* direct flights to and from Amarillo.[51]  To attend trial in Amarillo, then, these out-of-state witnesses would have to take an indirect flight and (very likely) stay overnight in Amarillo in order to provide testimony at trial (even of a limited nature).  By contrast, a trial in Austin would likely decrease travel time, present more travel options (including several direct flights), and potentially eliminate the need for an overnight stay.

**Louisiana**.  The same is true for LDH, which is based in Baton Rouge, Louisiana.[52]  There do not appear to be any direct flights from the Baton Rouge/New Orleans area to Amarillo, which means that any Louisiana Medicaid witnesses traveling from that area would have to take an

---

[49] *See* Compl. ¶ 13.  Relator does not allege his city of residence, but an Expedia search revealed direct flights between Austin and, at minimum, the following California cities:  San Francisco, San Jose, Santa Ana, Los Angeles, and San Diego.  However, the same search revealed no direct flights to Amarillo from those same cities.

[50] *See* App. 270 (CMS); App. 272 (DHHS).

[51] *See* App. 183–195; App. 197–206; App. 208–216; App. 219–223.

[52] *See* App. 266 (LDH).

indirect flight and stay overnight in Amarillo in order to provide testimony at trial.[53]  By contrast, there are direct flights available between Austin and New Orleans that would decrease travel time, and thus make it more convenient, for these witnesses to appear at trial in Austin.[54]

###### 4.   *Defendants' Party & Non-Party Witnesses*

The Austin Division would also be more convenient for all the party and non-party witnesses that Defendants have identified as likely witnesses for trial.[55]

**PPGT**.  PPGT anticipates presenting five of its current employees as witnesses at trial. [56] *See* App. 2 (Ken Lambrecht, Dan Sannes, Kasia White, Sheila McKinney, Beth Watson); App. 9–11.  Mr. Lambrecht, Mr. Sannes, and Ms. White reside in the Austin area, which makes Austin an indisputably more convenient location for them to appear at trial.[57]  Meanwhile, Ms. McKinney, who resides in Katy, Texas, and Ms. Watson, who resides in Dallas, Texas, both consider Austin a more convenient forum to appear at trial, compared to Amarillo.[58]  Ms. Watson regularly travels to Austin on behalf of PPGT, and Austin is closer to Houston and Dallas, than Amarillo, and thus a quicker drive from both destinations.[59]  In addition, there are far more flight options for travel to

---

[53] *See* App. 246–254; App. 256–257.

[54] *See* App. 226–238; App. 241–243.

[55] Indeed, there are no potential Defendant witnesses in the Amarillo Division.  *See* App. 11, 30, 34, 38, 50, 64.  If Texas or Relator identify any Defendant employees as potential witnesses for trial (as Relator did in his Rule 26 disclosures), those witness would likely reside in the same areas, addressed below, where Defendants maintain offices and clinics—none of which are located in the Amarillo Division.  *See* App. 7, 28, 32, 36, 47, 64.

[56] For the convenience of the Court, Defendants have identified those current and former employees that they anticipate presenting at trial in a table, attached hereto as **Exhibit 1**, which identifies the individual, their relationship to Defendants, the individual's status as a party or non-party witness, the scope of their anticipated testimony, and where they reside.  *See* App. 2–4.

[57] *See* App. 13–14; App. 16–17; App. 19–20.

[58] *See* App. 22–23; App. 25–26.

[59] *See* App. 26; *compare* App. 179 (appx. 365 miles from Dallas to Amarillo) *with* App. 181 (appx. 200 miles from Dallas to Austin); *compare* App. 152 (appx. 600 miles from Houston to Amarillo) *with* App. 154 (appx. 162 miles from Houston to Austin).

Austin than Amarillo, based on flight availability and direct flights in particular.[60]

**PPST**.  PPST anticipates presenting one former employee and one current employee as witnesses at trial, both of whom reside in the San Antonio area and consider Austin a far more convenient location to appear for trial.  *See* App. 3 (Jeffrey Hons, Polin Barraza); App. 38;  App. 41.  As reflected in the Declarations of Jeffrey Hons and Polin Barraza, Austin is an overwhelmingly more convenient location for them to attend trial because Austin is a mere 80 miles away—a distance that they can easily travel by car—whereas Amarillo is over 500 miles away and would require an indirect flight, and likely an overnight stay, to appear at trial.[61]

**PPGC**.  PPGC anticipates presenting one former employee and three current employees, all of whom reside in the Houston area.  *See* App. 3–4 (Melissa Farrell, Melaney Linton, Ronda Exnicious, Alfred Curtis); App. 48–50.  As reflected in the Declarations of Melissa Farrell, Melaney Linton, Ronda Exnicious, and Alfred Curtis, the Austin Division presents a significantly more convenient venue for these Houston-based witnesses to appear for trial, because Austin is a mere 165 miles from Houston, whereas Amarillo is over 600 miles away.[62]  Further, there are thirteen direct flights to Austin while there are only two direct flights to Amarillo.[63]

**PPFA**.  PPFA anticipates presenting two current employees, both of whom are non-resident witnesses.  *See* App. 4 (Kimberly Custer, Vickie Barrow-Klein).  As reflected in the Declarations of Kimberly Custer and Vickie Barrow-Klein, Austin would be a more convenient forum for them to appear and testify at trial, compared to Amarillo, based on the available flight

---

[60] *Compare* App. 156–168 (Austin flights) *with* App. 171–177 (Amarillo flights).

[61] *See* App. 41; App. 44; *compare* App. 113 (appx. 500 miles to Amarillo) *with* App. 115 (appx. 80 miles to Austin); *see also* App. 102–110 (flights to Amarillo).

[62] *See* App. 52–53; App. 55–56; App. 58–59; App. 61–62; *compare* App. 113 (appx. 500 miles to Amarillo) *with* App. 115 (appx. 80 miles to Austin).

[63] *See* App. 82; c*ompare* App. 117–134 (Austin flights) *with* App. 137–149 (Amarillo flights).

options (with no direct flights to Amarillo versus several daily, non-stop flights to Austin).[64]

**Other Non-Party Witnesses**.  Defendants also may need to call witnesses from UTMB and BCM to testify at trial regarding Relator's contentions about the alleged fetal tissue research studies with those institutions.[65]  Since UTMB and BCM are located in the Houston area, there is a significant likelihood that those witnesses will reside in the Houston area, and the Austin Division would provide a more convenient location for them to appear and provide testimony at trial.[66]

*     *     *     *     *

In short, this is not a situation where a transfer of venue would simply shift the expense and inconvenience from one party to another, because the Amarillo Division is not convenient for *any* party to this case.  *Cf. Vollara LLC v. Ectotechworld, Inc*., 2019 WL 1746069, at *4 (N.D. Tex. Apr. 17, 2019).  There is not a *single* identifiable party or witness who would benefit from maintaining this action in the Amarillo Division.  Indeed, the closest clinic is located in Lubbock, Texas, approximately 120 miles away, which—as another court noted—is hardly a negligible distance.  *United States ex rel. Beck v. St. Joseph Health Sys*., 2020 WL 10786540, at *2 (N.D. Tex. Feb. 10, 2020).  By contrast, the Austin Division provides a far more convenient, centralized location for trial for all party and willing non-party witnesses likely to originate from the Austin, San Antonio, Houston, and Dallas-Fort Worth areas or locations outside of Texas.  Because the Austin Division would be significantly more convenient for every party—and willing witness—to this case, this "most important" factor *overwhelmingly* supports a transfer to the Austin Division.

D.   <u>Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive Favor Transfer.</u>

Under the fourth private interest factor, a court considers "all other practical problems that

---

[64] *See* App. 65–66; App. 68–71.
[65] *See* Compl. ¶¶ 87–90.
[66] *See* App. 275–278 (UTMB); App. 281 (BCM).

make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315.  At least

two considerations support transfer of this case to the Austin Division under this factor:  (1) the

cost of attendance for *unwilling* witnesses to appear at trial and (2) the Austin Division's familiarity

with the facts and issues relevant to Relator's and Texas's claims.

>       1.       *The Austin Division is a More Convenient Forum for Unwilling Witnesses.*

Although not a traditional § 1404(a) factor, the Court should also consider the

(in)convenience for any *unwilling* witnesses who may be compelled to testify at trial, given the

nationwide scope of the FCA subpoena power under 31 U.S.C. § 3731(a).  In a non-FCA case,

Rule 45 would normally limit the inconvenience and cost to which an unwilling, non-party witness

could be subjected to attend trial.  *See* Fed. R. Civ. P. 45 (non-party witnesses may not be forced

to travel more than 100 miles—or incur substantial expense—to provide testimony at trial); Fed.

R. Evid. 804(a)(5) (deeming witnesses that cannot be procured through process "unavailable" and

permitting use of deposition testimony in lieu of live testimony).  But the FCA lacks these

limitations, which means that any witness who resides in the United States may be compelled to

testify at trial, regardless of the inconvenience or cost that the witness may incur.

In light of these circumstances, the Court should consider the Austin Division's more

convenient and centralized location for any *unwilling* witnesses who may be subpoenaed from the

Austin, San Antonio, Dallas-Fort Worth, and Houston areas (where most of the parties and

witnesses are located and events took place) or outside Texas, particularly given the available

flight options for travel to Amarillo versus Austin.

>       2.       *The Austin Division's Familiarity with the Issues Favors Transfer.*

The Court should also transfer this case because it concerns facts, witnesses, and issues

with which the Austin Division is already familiar.  *See Garrett v. Hanson*, 429 F. Supp. 3d 311,

319 (E.D. Tex. 2019) ("[T]he existence of duplicative suits involving the same or similar issues

may create practical difficulties that will weigh heavily in favor or against transfer.").  Over 40

paragraphs of Relator's Complaint describe his undercover investigation, the Providers' alleged

violations of medical and ethical standards, and HHSC-OIG's efforts to terminate the Providers

from Texas Medicaid.[67]  The specifics of those very same allegations were the subject of a three-

day evidentiary hearing and substantial briefing before the Austin Division.  *See Smith*, 236 F.

Supp. 3d at 990–94, 987 (addressing, among other things, Relator's undercover investigation,

HHSC-OIG's subsequent investigation and termination proceedings, and allegations of violations

of "ethical and medical standards" and "state and federal laws").  There is thus no good reason

why this Court should expend its limited judicial resources familiarizing itself with witnesses,

evidence, and the relevant state and federal laws when the Austin Division has already done so.

*See InfoGation*, 2021 WL 5547070 at *4 (holding "significant factual overlap between this case"

and a prior case supported transfer because "work already performed by Judge Huff would likely

need to be duplicated by this Court, which would unnecessarily consume judicial resources").

## III.    THE PUBLIC INTEREST FACTORS STRONGLY SUPPORT A TRANSFER TO THE WESTERN DISTRICT OF TEXAS.

Of the four public interest factors, the first three factors also favor transfer to the Austin

Division while the remaining factor is neutral.  Taken together, then, the public interest factors

provide further support for Defendants' application for a transfer to the Austin Division.

### A.    The Administrative Difficulties Flowing from Court Congestion Favors Transfer.

The first public interest factor asks "'whether there is an appreciable difference in docket

congestion between the two forums.'"  *InfoGation*, 2021 WL 5547070, at *5 (citation omitted).

"When evaluating this factor, courts often look to the median interval time between filing a case

to disposition in considering this factor."  *Qualls*, 2022 WL 889034, at *6; *see USPG Portfolio*

---

[67] *See* Compl. ¶¶ 62–104, 116.

*Two, LLC v. John Hancock Real Estate Fin., Inc.*, 2011 WL 1103372, at *5 (N.D. Tex. 2011) ("[C]ourts commonly consider the Federal judicial caseload statistics.").  Here, the median time between filing and disposition in the Northern District is 20.2 months, while it is 8.5 months in the Western District, thus favoring the Western District.[68]  The median time from filing to trial is neutral between the two forums, at 25.1 months in the Northern District and 27.2 months in the Western District.[69]  *See Qualls*, 2022 WL 889034, at *6.  But the number of pending cases per judgeship favors the Western District, at 780 cases per judgeship, versus the Northern District, at 841 cases per judgeship.[70]

Administrative congestion also takes into account the availability of a venue that is already "familiar with the factual background and legal issues pertinent to th[e] litigation," and that too favors the Western District, given its familiarity with the underlying facts and law, as discussed above.  *ExpressJet*, 2009 WL 2244468, at *12; *see, e.g., Haworth, Inc. v. Herman Miller, Inc.*, 821 F. Supp. 1476, 1479 n.3 (N.D. Ga. 1992) (transferring case because transferee district was "most familiar with the Haworth patents, having presided over the original Steelcase litigation"); *Zoltar Satellite Sys., Inc. v. LG Electronics Mobile Commc'ns Co.*, 402 F. Supp. 2d 731, 735–37 (E.D. Tex. 2005) (considerations of judicial economy strongly favored transfer to court already familiar with the issues); *McPeters v. LexisNexis, a Div. of Reed Elsevier, Inc.*, 2011 WL 13253948, at *6 (W.D. Tex. May 27, 2011); *C2 Commc'ns Techs., Inc. v. PAETEC Corp.*, 2009 WL 5204266, at *3 (E.D. Okla. Dec. 22, 2009).

---

[68]  FED. COURT MGMT. STATISTICS, JUDICIAL CASELOAD PROFILE: DISTRICT COURTS (2022), available at https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2022/03/31-1 (12-month period ending March 31, 2022).
[69] *Id*.
[70] *Id*.

B.      Local Interest in Having Localized Interests Decided at Home Favors Transfer.

The second public interest factor favors transfer if "the events that gave rise to this suit" occurred in the transferee district or division. *Volkswagen II*, 545 F.3d at 318. "This factor is based on the premise that jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Roco*, 2022 WL 658566, at *4 (citations omitted). Austin once again prevails over Amarillo under this factor. Whereas the citizens of Amarillo have no specific local interest in this case, the citizens of Austin have a particularly strong interest in this litigation. Relator's and Texas's claims concern clinics that operate in the Austin Division that submit Medicaid claims and receive reimbursements from Texas Medicaid. TMHP administers Texas Medicaid claims in Austin, Texas. And the underlying termination investigation and proceedings by HHSC and HHSC-OIG, as well as the related litigation in the Austin Division and the State Court, took place in Austin.

C.      The Familiarity of the Forum with the Governing Law Favors Transfer.

The third public interest factor considers the relative familiarity of the two forums with the law that will govern the case. "Although both courts are equally capable of applying the relevant law, the Austin Division (specifically Judge [Sparks]) has already held a preliminary injunction hearing on similar issues, heard [Relator's] arguments, and is familiar with the general issues." *See Houston Fed'n of Teachers*, 2020 WL 12584275, at *4. Accordingly, the Austin Division's familiarity with the underlying factual and legal arguments again supports transfer. *See id*.

But the fact that this litigation involves a dispute over *the effect* of a preliminary injunction issued by the Austin Division provides even further support for a transfer of this case. *Compare* Defs' Memo. [DE 83] at 9 ("[B]ecause of the injunctions, Affiliate Defendants were 'entitled' to the Medicaid funds they received. . . ."), *with* Plfs' Resp. [DE 95] at 5 (arguing that Texas could seek to recoup Medicaid funds despite the preliminary injunction). As the court that issued the

24

preliminary injunction, Judge Sparks is best positioned to adjudicate its effect in this case.  *See May v. Texaco Inc.*, 1998 WL 34350028, at *3–4 (W.D. La. Nov. 25, 1998) (finding transferee court was "best suited to interpret its own order"); *Med. Dev. Int'l v. Cal. Dept. of Corr. & Rehab.*, 2010 WL 347901, at *3–4 (E.D. Cal. Jan. 22, 2010) (granting transfer where the transferee court's order was "a significant source of disagreement between the parties" and would "likely be dispositive in this action"); *United States v. Burns*, 2008 WL 5263743, at *3 (N.D. W. Va. Dec. 18, 2008) (granting transfer because "the issues arising in the complaint filed here have already been before the Western District of Kentucky" and "deciding issues . . . including the effect of earlier dismissals without prejudice, can be best addressed by the district court judge and magistrate judge in that district.").  Considerations of judicial comity and conservation of judicial resources thus support transfer here.  *See Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) ("'The federal courts long have recognized that the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs.'" (citation omitted)).

      D.    <u>The Avoidance of Unnecessary Problems of Conflicts of Laws Or the Application of Foreign Law is Neutral.</u>

The fourth and final public interest factor—which concerns the avoidance of unnecessary problems with conflicts of laws or the application of foreign law—is neutral between the forums.

## **<u>CONCLUSION</u>**

*Volkswagen I*, *Volkswagen II*, and *Radmax* control the disposition of this Motion.  When, as here, virtually all of the private and public interest factors weigh in favor of transfer, and none favor the Relator's chosen forum, transfer is required.  Defendants respectfully request that the Court grant this Motion to Transfer Venue to the Austin Division of the Western District of Texas.

Dated: August 12, 2022                  Respectfully submitted,

**O'MELVENY & MEYERS LLP**

/s/ *Danny S. Ashby*
DANNY S. ASHBY
Texas Bar No. 01370960
dashby@omm.com
JUSTIN R. CHAPA
Texas Bar No. 24074019
jchapa@omm.com
MEGAN R. WHISLER
Texas Bar No. 24079565
mwhisler@omm.com
2501 N. Harwood Street, Suite 1700
Dallas, TX 75201
Tel: (972) 360-1900
Fax: (972) 360-1901

LEAH GODESKY
(admitted *pro hac vice*)
lgodesky@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Tel: (310) 553-6700
Fax: (310) 246-6779

**BLACKBURN BROWN LLP**
RYAN PATRICK BROWN
Texas Bar No. 24073967
brown@blackburnbrownlaw.com
1222 S. Fillmore Street
Amarillo, TX 79101
Tel: (806) 371-8333
Fax: (806) 350-7716

*Attorneys for Planned Parenthood
Federation of America, Inc.*

**ARNOLD & PORTER KAYE SCHOLER
LLP**

/s/ *Craig D. Margolis*
CRAIG D. MARGOLIS
(admitted *pro hac vice*)
Craig.Margolis@arnoldporter.com

26

TIRZAH S. LOLLAR
(admitted *pro hac vice*)
Tirzah.Lollar@arnoldporter.com
CHRISTIAN D. SHEEHAN
(admitted *pro hac vice*)
Christian.Sheehan@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Tel: (202) 942-6000
Fax: (202) 942-5999

CHRISTOPHER M. ODELL
Texas State Bar No. 24037205
Christopher.Odell@arnoldporter.com
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: +1 713.576.2400
Fax: +1 713.576.2499

**BLACKBURN BROWN LLP**
RYAN PATRICK BROWN
Texas State Bar No. 24073967
brown@blackburnbrownlaw.com
1222 S. Fillmore
Amarillo, TX 79101
Tel: (806) 371-8333
Fax: (806) 350-7716

*Attorneys for  Planned Parenthood Gulf
Coast, Inc., Planned Parenthood of
Greater Texas, Inc., Planned Parenthood
South Texas, Inc., Planned Parenthood
Cameron County, Inc., Planned
Parenthood San Antonio, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2022, the foregoing document was electronically filed and served upon all parties and counsel of record via the Court's CM/ECF system.

/s/ *Danny S. Ashby*
Danny S. Ashby

## CERTIFICATE OF CONFERENCE

I hereby certify that on August 12, 2022, counsel for Defendants conferred with counsel for Relator and the State of Texas and they stated that they were opposed to Defendants' request to transfer venue to the Austin Division of the Western District of Texas.

/s/ *Danny S. Ashby*
Danny S. Ashby