IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| United States of America<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Texas<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Louisiana<br>*ex rel.* ALEX DOE, Relator,<br>      Plaintiffs,<br>v.<br><br>Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc.,<br><br>      Defendants. | CIVIL ACTION NO. 2:21-CV-00022-Z<br><br>Date:     August 22, 2022 |

**AFFILIATE DEFENDANTS' REPLY IN SUPPORT OF ITS
<u>MOTION TO COMPEL THE STATE OF TEXAS</u>**

Texas has repeatedly asserted the discovery it provides in this litigation should be narrow because it is asserting only a single claim for an alleged violation of Section 36.002(12) of the TMFPA.  But Texas intervened in this case where Relator maintains sweeping claims under the False Claims Act, including an implied false certification claim back to 2010, not to mention other claims under Texas and Louisiana state law.  As a party, Texas is bound to produce discovery relevant to Relator's claims.  And, while Texas is pursuing only one claim, it seeks more than a billion dollars in damages and penalties, while Relator seeks more than a billion additional dollars in damages and penalties on the claims Relator is pursuing.  There is no legitimate argument that the discovery Affiliate Defendants seek is disproportional to the needs of the case.

Texas produced roughly 160,000 pages to date, the vast majority of which are Texas Medicaid procedure manuals, which are thousands of pages each and irrelevant to the substance of the claims in this case. Texas has yet to produce documents from the custodial files of any relevant witnesses. By contrast, Affiliate Defendants have searched the documents of eight custodians, reviewed over 62,000 documents and have produced over 190,000 pages with new documents being produced on a consistent, rolling basis. Requiring Texas to review and produce documents from relevant custodians is not unduly burdensome; it is the inevitable result of Relator's far-reaching accusations and Texas's decision to intervene in this case.

The Court should grant Affiliate Defendants' Motion to Compel as to Interrogatories 2, and 4-17, Requests for Production ("RFPs") 3, 4, 6, 9-18, 21-35, 37-39, 41-43, and 45, and Affiliate Defendants' request that Texas provide verified responses to Interrogatories 1-17. Affiliate Defendants will provide an amended proposed order. (Ex. F).

### I. Affiliate Defendants' Motion to Compel is Not Moot as to Interrogatories 2, 4-17 and RFPs 3, 4, 6, 9-13, 15-18, 24, 33-35, 37-39, 41-43.[1]

In a letter Texas did not include in its filing, Affiliate Defendants made clear that they disagree that their motion is moot as it relates to several of its interrogatories and requests for production. T. Lollar Letter to R. Winter (August 5, 2022) (Ex. E). Since Affiliate Defendants filed their motion to compel, Texas has finally begun the process of engaging in meaningful discussions with Affiliate Defendants to narrow the scope of discovery, respond to interrogatories, and produce relevant responsive documents. Texas has agreed to respond to Interrogatories 4-7, 9, 14, 15, but as of filing, has yet to respond. Texas has not agreed to verify its interrogatory

---

[1] Affiliate Defendants agree that once Texas serves amended responses to RFPs 4 and 41-43 stating that Texas has no responsive documents, their motion will be moot as to these requests. Affiliate Defendants are withdrawing Interrogatory 18 and no longer seek to compel a response to that interrogatory. Affiliate Defendants also no longer seek to compel production as to RFP 36 and have submitted a revised proposed order reflecting that change. (Ex. F).

2

responses, but by failing to respond to Affiliate Defendants' motion to compel verified responses, Texas waived it objections. *Kellam v. Servs.*, No. 12-352, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013), *aff'd sub nom* (citing *United States v. Reagan*, 596 F.3d 251, 254 (5th Cir. 2010) (holding that failure to adequately brief an argument results in waiver)). Accordingly, Affiliate Defendants' motion to compel is not moot as to *any* of their interrogatories. The Court should order Texas to provide verified interrogatory responses to Interrogatories 1-17 within 10 days of entry of the Court's order.

As to documents, Texas proposed a list of search terms for the first time more than two months after Affiliate Defendants propounded their requests for production. While it appears that Texas is now engaging to resolve some disputes between the parties, Texas has not identified the custodians whose data it plans to search, and Affiliate Defendants have not had the opportunity to evaluate whether Texas's proposed search terms will resolve their concerns. Nor has Texas produced a single custodial document since the parties met and conferred on August 1 and 2, 2022. Affiliate Defendants request that Texas be ordered to produce documents responsive to RFPs 3, 4, 6, 9-18, 21-35, 37-39, 41-43, and 45, within 10 days of entry of the Court's order.[2]

In addition, Texas mischaracterizes the agreement reached in the parties meet and confer related to RFPs 13, 6, and 37 as outlined in Affiliate Defendants' response letter (Ex. E):

- **Decision to Intervene (RFP 13).** RFP 13 seeks documents related to Texas's decision to intervene in this litigation. Texas claims that it has "no responsive documents," but that is surely not the case. This request is not moot.

- **Expert Discovery (RFP 6).** RFP 6 seeks information related to expert compensation, and information provided to experts by Texas and Relator. Texas responded that it would produce information in compliance with the Federal Rules of Civil Procedure, but has not agreed to produce the specific documents requested

---

[2] Given Texas's recent agreement to produce documents responsive to Requests for Production 3, 4, 9-12, 15-18, 24, 33-35, 38, 39, 41-43, Affiliate Defendants are alternatively willing to meet and confer with Texas regarding a reasonable schedule for production of responsive documents.

3

>    by Affiliate Defendants, *all* of which are consistent with Rule 26.[3] This request is not moot.

- **Center for Medical Progress Videos (RFP 37).** RFP 37 seeks documents relating to Texas's evaluation of the Center for Medical Progress videos, including Texas's response, if any, to those videos. During the meet and confer, Texas stated that it would get back to Affiliate Defendants with Texas's position on RFP 37, but Texas has not done so. This request is not moot.

## II.     The Court Should Overrule Texas's Objections.

### A.     Relevance Objections

The Court should overrule Texas's objections to Interrogatories 2, 8, 11-13, 16-17, and RFPs 14, 21-23, 25-28, 30, 31, 32 and 45.

**Termination of Affiliate Defendants and Failure to Recoup (Interrogatories 8, 16, 17 RFPs 14, 21-23, 31, 32 45)**. Information about the terminations such as Texas's determination that Affiliate Defendants were unqualified providers and Texas's subsequent failure to seek to recoup Medicaid payments is directly relevant to Relator's implied false certification claim because it is probative of materiality. *See* Dkt. 128 at 10-13. This is not a "collateral attack" or "attempt to relitigate" the terminations, but rather are justified requests to probe Texas's decision-making process related to terminations, the Affiliate Defendants' qualifications to provide Medicaid services, Texas's decision not to recoup any payments, and documents or communications related to Medicaid payments made to the Affiliate Defendants after Texas sought termination in 2015-2016, including during the pendency of the injunctions.

These requests also go to scienter, which is a critical to Affiliate Defendants' defense of both the reverse FCA and TMPFA claims. *See* Dkt. 128 at 13-14. To prevail on a reverse FCA claim, Relator must prove that Affiliate Defendants "knowingly and improperly" retained

---

[3] Affiliate Defendants seek all documents and communications between Texas or Relator that relate to compensation for any expert's study or testimony, identify facts or data that Texas or Relator provided and that the expert considered in forming the opinions to be expressed by the expert, and/or identify assumptions that Texas or Relator provided and that the expert relied on in forming his opinions.

payments. If Texas's documents or communications address whether payments made pursuant to an injunction can later become overpayments, that Texas was concerned about or questioned whether the terminations violated Medicaid's free choice of provider requirement, or that Texas chose not to seek recoupment because it did not believe it was entitled to do so, those documents would support that Affiliate Defendants could not have acted knowingly. Likewise, since whether Affiliate Defendants acted in bad faith is relevant to penalties under the TMFPA, communications showing Texas's perspective on how the termination might affect the payment or recoupment of claims would be relevant to the TMFPA claims as well.

To be clear, there has been no prior litigation on the issues of materiality or scienter. Texas's arguments that these issues have already been decided miss the mark.

**Other Providers (Interrogatories 12, 13, RFPs 27, 28).** Information pertaining to Texas's treatment of other health care providers is probative of materiality. *See* Dkt. 128 at 10-13. Texas's discussion of *Goodman* is misplaced. There, the court found that information related to other healthcare providers was relevant, noting "materiality is better demonstrated in both the government's words and its deeds" and that "*Escobar* made clear that the government's treatment of other similarly situated healthcare providers is relevant to the issue of materiality in an FCA healthcare case." *United States ex rel. Goodman v. Arriva Med.*, LLC, 471 F. Supp. 3d 830, 839, 840 (M.D. Tenn. 2020). However, as to the government's overarching theory of FCA liability — which hinged on Anti-Kickback Statute violations (a theory not at issue here) — materiality was "not contestable" because AKS violations triggered liability "as a matter of law." *Id.* at 842. And because "billing for dead patients" was "facially false," the government's FCA claim predicated on billing for services "provided to a dead person" was not governed by *Escobar*, which addressed an *implied* false certification claim. *Id.* at 843. But the government's implied certification theory

related to the "five-year rule"[4] "fit[] fairly neatly into the *Escobar* mold." *Id.* at 834, 843-44. Because the class of claims where relevance was in dispute had been "narrow[ed]" to the "five-year rule" theory, the court ordered the parties to meet and confer and come to an agreement on the scope of discovery that would provide defendants with information about other healthcare providers relevant to the five-year rule claim. *Id.* at 845.

Here, just as with the government's "five-year-rule" theory in *Goodman*, materiality is at issue for Relator's implied certification FCA claim. Unlike FCA brought based on AKS violations, where materiality can be presumed if a kickback is established, the Court cannot presume materiality in this action. Importantly, *Goodman* unwaveringly supports that discovery related to the government's treatment of other healthcare providers is relevant under *Escobar*, and that defendants are entitled to this discovery when materiality is at issue.

To the extent the State has legitimate limitations on its ability to provide all of the responsive information requested, for example accessing data going back to 2010, Affiliate Defendants are willing to meet and confer with the State just as the *Goodman* district court ordered there. What Texas cannot do is simply say that it does "not maintain data in a form that readily captures all elements of Interrogatory 12" (information about terminations of any Texas Medicaid provider) (Dkt. 137-1, Appx. 43) without engaging with Affiliate Defendants about the elements of Interrogatory 12 that Texas *does* maintain data for and discussing what responsive information Texas can provide.

**Overpayments (Interrogatories 2, 11, 17, RFPs 25, 26, 30).** Texas nonsensically objects to providing information beyond claims data in response to Interrogatory 2 on relevance grounds.

---

[4] Goodman alleged that the defendant billed for glucose meters that it knew were likely to be disallowed under Medicare because the program had paid for a glucose meter for that patient in the last five years, which, according to the so-called "five-year rule," made the patient ineligible for a new meter. *Id.* at 834.

Interrogatory 2, however, seeks information related to claims that allegedly became overpayments (including for example what was allegedly fraudulent about the claim), which are relevant to Affiliate Defendants' defense of Relator's reverse false claims claim and Texas's TMFPA Section 12 claim, which are premised on the theory that Defendants improperly retained payments. *See* Dkt. 128 at 15-16. Texas's response it "completely responded to Interrogatory 2 within the confines of what is relevant to Texas's cause of action" is wrong: Texas has not identified each overpayment it alleges Affiliate Defendants improperly retained, nor has it identified why retaining those payments was fraudulent. To the extent that Texas avers *no* claims allegedly retained by Affiliate Defendants were retained fraudulently, *see* Dkt. 137 at 13, Texas should make its position that Affiliate Defendants did not fraudulently retain any payments clear.

Similarly, Affiliate Defendants are entitled to discover Texas's views, documents and communications regarding when a payment can become an overpayment based on a subsequent change in law or judicial decision, as well as documents and communications regarding whether the Affiliate Defendants had an obligation to repay amounts they had received. This is relevant even to Texas's TMPFA Section 12 claim and is key evidence for Affiliates Defendants' defense.

### B.   Overbreadth Objections

Affiliate Defendants' Interrogatories 10, 12, 13, and 16 as well as RFPs 14, 21-23, 25-32, and 45 are not overbroad or unduly burdensome. To the extent Texas has specific objections, Texas — as the party asserting the objection — has the burden to "explain the extent to which [the request] is overbroad and answer or respond to the extent that it is not." *Heller v. City of Dallas*, 303 F.R.D. 466, 488 (N.D. Tex. 2014). Texas has not done so. Rather, Texas continues only to assert that the Affiliate Defendants' definition of "the State of Texas" and requests asking about Texas's understanding of the facts are overbroad. *See* Dkt. 137 at 13-14. It must do more. *Id.* at

498 ("if answering or responding to a discovery request would impose an undue burden, the responding party must . . . properly substantiate that assertion and then should only answer or respond to the part or extent, if any, of the request that would not involve an undue burden") (internal citation omitted).

To date, the Parties have participated in four separate meet and confer conferences to resolve disputes related to Texas's responses. At no time have Affiliate Defendants suggested that they expect the State to "ask all state employees" or "search each's custodial files" (Dkt. 137 at 14). Rather, Affiliate Defendants suggested, as is customary, that Texas would identify custodians likely to have responsive information and propose search terms to be used, and the parties would confer. The State cannot assert boilerplate objections of burden and overbreadth without engaging to see if the parties can come to agreement on a reasonable search.

### C.     Privilege Objections

Finally, Texas attempts to rely on a privilege under Texas law that is wholly inapplicable in this case in objecting to Interrogatories 8, 10, 17 and RFP 14. The "federal law of privilege governs determination of *all* privilege issues raised in a federal question case involving pendent state law claims, even where the evidence sought is relevant to a pendent state law claim to which a contrary state privilege law would otherwise apply." *Tonti Mgmt. Co., Inc. v. Soggy Doggie, LLC*, Civ. A. No. 19-13134, 2020 WL 9172077, at *2 (E.D. La. June 25, 2020) (emphasis in original). Therefore, courts apply only federal common law in cases brought under the FCA and corollary state false claims acts; where a party seeks to withhold documents based on a state-law privilege, courts compel the production of those documents. *See, e.g., United States ex rel. Wollman v. Massachusetts Gen. Hosp., Inc.*, 475 F. Supp. 3d 45, 60 (D. Mass. 2020); *Stein v. Tri-City Healthcare Dist.*, No. 12CV2524 BTM(BGS), 2014 WL 12695385, at *1 n.1 (S.D. Cal. Dec.

8

5, 2014). Accordingly, Texas cannot withhold documents under Section 531.1021(g) of the Texas Government Code.

Moreover, Texas cannot lodge blanket privilege objections as to Interrogatories 8 10, 11, 16, 17, and RFPs 14, 21-23, and 25-32. Surely there is non-privileged information responsive to these requests that Texas can provide. For example, it can identify sources of information underlying its allegations in the case (Interrogatory 10), describe Texas's factual views on whether Affiliate Defendants were qualified Texas Medicaid providers at certain specified times (Interrogatory 16), and produce non-privileged documents related to termination of other providers (RFPs 27, 28) and the impact of the federal and state court injunctions (RFP 21).

To the extent any potentially applicable privileges apply, Texas cannot blanketly refuse to produce information or documents. Instead, it must properly log the privileged documents and produce a privilege log. *See Chemtech Royalty Assocs., L.P. v. United States*, No. 06-258-RET-DLD, 2009 WL 854358, at *3 (M.D. La. Mar. 30, 2009) ("[A] privilege log must contain sufficient information that would allow a court or party to assess the applicability of the privilege or protection."). Texas to date has refused to produce a privilege log.

## CONCLUSION

The Court should overrule Texas's objections to Interrogatories 2, and 4-17, as well as RFPs 3, 4, 6, 9-18, 21-35, 37-39, 41-43, and 45, and order Texas to provide verified interrogatory responses and produce all responsive documents. This Court should also order Texas to produce a privilege log for any of its assertion of privilege.

Dated: August 22, 2022

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP

By: */s/ Tirzah Lollar*

9

        Craig D. Margolis
        Craig.Margolis@arnoldporter.com
        Tirzah S. Lollar
        Tirzah.Lollar@arnoldporter.com
        Christian Sheehan
        Christian.Sheehan@arnoldporter.com
        601 Massachusetts Ave, NW
        Washington, DC 20001-3743
        Telephone: +1 202.942.6127
        Fax: +1 202.942.5999

        Christopher M. Odell
        Texas State Bar No. 24037205
        Christopher.Odell@arnoldporter.com
        700 Louisiana Street, Suite 4000
        Houston, TX 77002-2755
        Telephone: +1 713.576.2400
        Fax: +1 713.576.2499

        Ryan Patrick Brown
        Texas State Bar No. 24073967
        brown@blackburnbrownlaw.com
        1222 S. Fillmore
        Amarillo, TX 79101
        Tel: (806) 371-8333
        Fax: (806) 350-7716

        *Attorneys for Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, and Planned Parenthood San Antonio*

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2022, the foregoing document was electronically filed with the Clerk of Court using CM/ECF.

        */s/ Tirzah S. Lollar*
        Tirzah S. Lollar