## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| United States of America<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Texas<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Louisiana<br>*ex rel.* ALEX DOE, Relator,<br><br>Plaintiffs,<br><br>v.<br><br>Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc.,<br><br>Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § | NO. 2:21-CV-00022-Z |

## DEFENDANT PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL TO THE STATE OF TEXAS

**PRELIMINARY STATEMENT**

Texas's declaration that Relator's TMFPA claims "are no longer viable," and only Texas's reverse false claim under § 36.002(12) remains in this case, comes as a surprise to PPFA, because Plaintiffs insisted that Relator was still pursuing the TMFPA claims when Defendants raised that precise issue during a prior meet-and-confer.[1] Ultimately, however, neither Texas's begrudging acknowledgement that the TMFPA claims are not in the case,[2] nor the other arguments advanced in its Response, overcome PPFA's showing that Texas must produce additional documents.

To start, Texas overstates the consequences of the parties' meet-and-confer on the Motion. Although Texas and PPFA agreed on a path forward to resolve Texas's relevancy and overbreadth concerns, the parties' agreement did not "moot" all the other issues concerning those discovery requests, such as Texas's privilege assertions and inadequate responses to Interrogatories. On the former, the Response offers no meaningful response to PPFA's authority challenging Texas's assertion of a state "Medicaid investigative privilege" or its purported "common interest" privilege with Relator (prior to February 5, 2021) or with CMP (at any time). Meanwhile, Texas still refuses to provide any discovery in response to three RFPs (RFP Nos. 10–12) that drive at the heart of Texas's theory of liability, or Interrogatories Nos. 4 and 5, which facially concern the public disclosure bar. Texas's position seems to be that it should be excused from participating in discovery because it would purportedly have to canvas every state employee for information or documents. But that is simply not true. PPFA merely seeks a reasonably diligent search for documents and information (consistent with the parties agreement as to the other discovery

---

[1] Capitalized terms not defined herein have the meaning ascribed to such terms in the Motion.

[2] For example, Relator continues to assert affirmative and reverse false claim theories under the FCA for Medicaid claims that were submitted and paid through Texas Medicaid.

1

requests) within the reasonable control of the Office of the Attorney General ("OAG") and HHSC.

Texas's blanket refusal to provide discovery on critical issues in this case cannot be sustained. The Court should compel Texas to comply with its obligations to undertake a reasonable investigation and provide responsive documents and answers to the Discovery Requests.[3]

## ARGUMENT

### I. There Are Unresolved Issues Surrounding The Interrogatories And RFPs That Have Not Been "Mooted" By Texas.

#### A. <u>PPFA's Motion Is Not Moot As To Interrogatory Nos. 1–3 and 6–13.</u>

Texas's promise to amend its responses to Interrogatory Nos. 1–3 and 6–13 does not moot PPFA's Motion to Compel on those discovery requests. Neither Texas's meet-and-confer letter nor the Response explains how Texas proposes to amend its responses to resolve the concerns and deficiencies raised in the Motion. *See generally* Resp. Ex. B. For example, the Motion notes— and Texas fails to address—numerous instances where Texas responded to PPFA's interrogatories by improperly and vaguely directing PPFA to a broad assortment of documents in lieu of providing the information requested. *See* Mot. 17–18. In addition, Texas interposed various objections to the Interrogatories in its Discovery Responses (including relevancy, overbreadth, common-interest privilege, and a state law Medicaid investigative privilege) that the Motion also challenged. But Texas does not explain what, if any, of these objections it proposes to resolve or reassert through its amended responses. *See generally* Resp. Ex. B.

Indeed, counsel for PPFA raised these very concerns to Texas, and received no response suggesting any intent by Texas to resolve these deficiencies. *See* Reply Ex. G. The Response is

---

[3] Texas asserts that it has produced "thousands" of documents in this case, but the vast majority of its production is comprised of Medicaid claims data (on which its damages expert relied) and a reproduction of filings from the termination litigation. In any event, the size of a party's production is not a valid basis on which to refuse to respond to reasonable discovery requests.

no less vague in its unspecified suggestion that Texas will amend its responses. Absent any assurance from Texas that it intends to comply with Rule 33, PPFA respectfully requests that the Court compel Texas to amend its responses to Interrogatory Nos. 1–3 and 6–13 to resolve the issues raised in the Motion and to which Texas offered no compelling response.

        B.        <u>PPFA's Motion Is Not Moot As To RFP Nos. 1–9, 13, 15–17, and 20.</u>

Texas and PPFA agreed to resolve Texas's overbreadth and relevancy objections by engaging in good faith negotiations to identify custodians and search terms for the collection and production of documents for RFP Nos. 3–9, 13–17 and 20.[4] But, as PPFA already explained to Texas, that agreement does not moot the Motion as to these RFPs because (1) Texas only committed to producing "non-privileged" documents, and (2) Texas is still asserting inapplicable "common interest" and "Medicaid investigative" privileges as a basis to withhold responsive documents. *See* Reply Ex. G. Because those privileges do not apply for the reasons explained below, the Court should overrule those objections for RFP Nos. 1–9, 13, 15–17, and 20.

**II.**     **Texas Cannot Withhold Discovery Based on a Medicaid Investigative Privilege Not Recognized by Federal Privilege Law.**

Texas still maintains (at 12–14) that information and documents requested in Interrogatory Nos. 4 and 5 and RFP Nos. 10–12 are not discoverable in this case because they are covered by the "Medicaid investigative privilege."[5] But Texas fails to engage in the requisite analysis for determining whether that purported state-law privilege could apply in this case. As PPFA's Motion explained, federal privilege law governs federal-question cases involving pendant state-law claims. *See* Mot. at 14-15. This is plainly one of those cases. *See* Tex. Compl. [DE 22] ¶ 27

---

[4] The Motion is only moot as to RFP No. 14 to which Texas interposed no privilege objections.

[5] Texas also asserted the Medicaid investigative privilege as grounds for withholding documents for RFP Nos. 1–9, 13, 15–17 and 20 and withholding information responsive to Interrogatory Nos. 6–9. *See* Mot. Ex. C & Ex. D.

("This Court has supplemental jurisdiction over [Texas'] state law claims pursuant to 28 U.S.C. § 1367."). Under federal privilege law, an asserted state-law privilege not already acknowledged in the federal rules may be recognized only if the privilege is "intrinsically meritorious." *See Sierra Club v. Woodville Pellets, LLC*, 553 F. Supp. 3d 378, 384 (E.D. Tex. 2021).

Even though Texas bears the burden of showing that privilege's applicability here, the Response wholly ignores the test prescribed by the Fifth Circuit for the recognition of state-law privileges. Instead, Texas simply asserts (at 14) that "[s]tate law governing the confidentiality of HHSC-OIG and OAG investigative materials should supply the federal rule absent an expression of federal legislative intent to the contrary." But the only case it cites, *Central Pines Land Co. v. United States*, has nothing to do with the application of privilege. *See* 274 F.3d 881, 890–92 (5th Cir. 2001) (discussing the applicable law of mineral rights in a diversity case). And in any event, even Texas's preferred rule does not permit the invocation of the Medicaid investigative privilege. The "expression of federal legislative intent to the contrary" is manifest in the commentary to Federal Rule of Evidence 501, which states that "the Federal law of privileges should be applied with respect to pendent State law claims when they arise in a Federal question case." Fed. R. Evid. 501 advisory comm. notes.

Because federal privilege law ultimately controls the inquiry regardless of which rule the Court applies, Texas cannot properly assert the Medicaid investigative privilege in this action.[6] The Court should thus overrule Texas's assertion of the Medicaid investigative privilege in its Discovery Responses and compel Texas to provide any discovery that it is purporting to withhold

---

[6] Texas further contends (at 13 n.4) that it need not log materials subject to the Medicaid investigative privilege. Not only does Texas's position lack legal support, it also defies common sense. To read Tex. Gov't Code § 531.1021(g) to eliminate the privilege log requirement would leave PPFA with no means of challenging Texas's claims of privilege. Accordingly, at minimum, the Court should order Texas to log any materials that it is purporting to withhold on that basis.

on that basis in response to RFP Nos. 1–13, 15–17 and 20 and Interrogatory Nos. 6–9.

**III.     The Common Interest Privilege Does Not Shield Information That Texas Exchanged with Relator Before February 5, 2021 or CMP At Any Time.**

The Response similarly fails to establish any privilege between Texas and Relator prior to February 5, 2021—when Relator made the pre-filing disclosure to Texas—or with third-party CMP at any time that would permit it to withhold discovery.  *See* Mot. at 11–13.

   A.     Relator

Texas claims that information and documents exchanged with Relator are privileged for two reasons, neither of which is availing.  First, Texas falls back on its assertion of a Medicaid investigative privilege.  *See* Resp. at 14 n.6.  Once again, though, that privilege may not be invoked in this case.  Second, Texas submits that "[t]he TMFPA permits a relator to serve materials on the attorney general prior to commencing suit, thereby establishing a common interest privilege before the date a *qui tam* action is filed."  *Id.*  But that is entirely beside the point.  PPFA does not claim that the common-interest privilege can never be established prior to a *qui tam* action's filing date.  Rather, PPFA argues that the privilege only attaches once the relator makes his pre-filing disclosure to the government.  Mot. at 11–12 (citing *United States v. Cameron-Ehlen Grp.*, 2019 WL 6975354, at *1 (D. Minn. Dec. 17, 2019)).  Here, by Relator's own admission, Relator made his pre-filing disclosure to Texas on February 5, 2021 (which also happens to be the *qui tam* filing date here).  *See* Mot. Ex. E at 12.  Texas does not argue for a different pre-filing disclosure date, so Texas cannot assert a common-interest privilege with Relator prior to that date.

Because Texas has failed to carry its burden of establishing any privilege with Relator prior to February 5, 2021, the Court should overrule Texas's assertion of a pre-disclosure common interest privilege with Relator and compel Texas to provide any discovery that it is purporting to withhold on that basis for RFP Nos. 1–13, 15–17 and 20 and Interrogatory Nos. 6–9.

5

B.  CMP

As for Texas's dealings with CMP, the common-interest privilege does not apply because Texas has no unity of interest with CMP with respect to any legal claim or issue. *See United States v. Homeward Residential, Inc.*, 2016 WL 1031154, at *6 (E.D. Tex. Mar. 15, 2016) ("A shared rooting interest in the successful outcome of a case . . . is not a common legal interest." (cleaned up)). Texas outright fails to respond to this straightforward point, thus conceding the issue. The Court should therefore overrule Texas's assertion of privilege as to CMP and compel Texas to produce any documents and information that Texas is purporting to withhold on that basis for RFP Nos. 1–13, 15–17 and 20 and Interrogatory Nos. 6–9.

**IV.   The Court Should Compel Texas to Produce Documents Responsive to RFP Nos. 10–12, Which Seek Relevant Information Central to Texas's Theory of Liability.**

Texas asserts relevancy and overbreadth objections in refusing to produce any documents in response to RFP Nos. 10–12, which seek documents that relate to:

> Whether a Texas Medicaid provider may receive and retain Medicaid payments when (a) there is pending litigation or administrative proceedings that concern the provider's qualifications under the Texas Medicaid program, *see* Ex. A (RFP No. 10), or (b) there is a pending TRO or preliminary injunction barring the provider's termination from the Texas Medicaid program, *see* Ex. A (RFP No. 11).
>
> Whether a Texas Medicaid provider is obligated to repay Medicaid payments received during the pendency of a TRO or preliminary injunction barring the provider's termination from the Texas Medicaid program, *see* Ex. A (RFP 12).

Given the nature of Texas's claims, it is hard to say how documents bearing on these issues could be any *more* relevant to Texas's claim—let alone *irrelevant*, as Texas asserts (at 8). The requests facially seek documents concerning Texas's allegations that the Affiliate Defendants could not retain, and were obligated to repay, any Medicaid funds that they received during the pending litigation and injunctions. *See* Tex. Compl. ¶¶ 8–9, 37. To the extent Texas possesses documents bearing on these issues, they indisputably concern Texas's theory of liability and, thus,

6

are relevant to this case.

The three arguments advanced by Texas do not counsel otherwise. First, Texas argues (at 8) that "[t]his Court has already recognized that, as far as Texas law is concerned, the Affiliate Defendants' terminations from the Medicaid program were both uncontested and final by the end of January 2017." But this Court has made no such finding. Texas merely cites to the Court's opinion on the motions to dismiss, wherein the Court recounts Plaintiffs' background allegations, accepting them as true as the motion-to-dismiss standard requires. *See id*. (citing Opinion and Order [DE 71] at 2). But even assuming that the Affiliate Defendants' terminations were final as of January 2017, that does not resolve (or render irrelevant) any of the issues addressed by RFP Nos. 10–12, including whether (1) a Texas Medicaid provider may retain Medicaid funds under circumstances similar to those here, or (2) the Affiliate Defendants should have known that they were obligated to return the Medicaid payments.

Second, Texas contends (at 8) that PPFA's "efforts to obtain information regarding the terminations are an impermissible collateral attack on the terminations because they seek to relitigate an issue that was already decided: that Affiliate Defendants were terminated from Texas Medicaid for cause." But again, no issue has been "decided" regarding the Affiliate Defendants' termination from Texas Medicaid (let alone in a final judgment subject to collateral attack). Moreover, RFP Nos. 10–12 do not even concern whether the Affiliate Defendants were terminated from Texas Medicaid with or without cause.

Third, Texas asserts (at 9) that the requests are irrelevant because the injunction's effect on the terminations is an issue of law for the Court to decide. But that, too, is beside the point. Even if the Court agreed with Texas—that the Medicaid Provider Agreements terminated as matter of law in January 2017, notwithstanding the preliminary injunction—Texas must still show that the

Affiliate Defendants' "knowingly and improperly" avoided an obligation to reimburse Texas Medicaid.  If Texas possesses any documents indicating that a Texas Medicaid provider had or could retain Medicaid funds under the circumstances outlined in RFP Nos. 10 and 11, such discovery would undercut Texas's claim that the Affiliate Defendants were obligated to remit the Medicaid funds here.  Likewise, if Texas's documents show that Texas Medicaid did not view those payments as "overpayments" (or if Texas Medicaid has treated other providers differently), such discovery would also be highly relevant to Defendants' defenses.

Texas similarly overstates its "overbreadth" and "burden" objections to RFP Nos. 10–12. Although Texas claims that it would have "to search the records of **every** state employee for **every** communication with **any** person, including attorneys, about legal issues in this action," Resp. at 11 (emphasis in original), PPFA understood from the Discovery Responses that Texas would "only provide responses to RFPs on behalf of the Texas Medicaid Program and within the reasonable control of the Office of Attorney General as counsel for the HHSC; within the reasonable control of the HHSC; or within the reasonable control of the state agencies under the HHSC's organizational umbrella, or their successor agencies."  *See* Mot. Ex. C at 4–5.  PPFA has not objected to Texas so limiting its collection and production at this stage.  To the contrary, when Texas raised these very same concerns for RFP Nos. 3–9, 13–17, and 20, the parties agreed to resolve them through negotiated custodians and search terms.  There is no reason why that same approach would not work equally well for RFPs No. 10–12.[7]

Texas's flat out refusal to produce documents cannot be sustained, not when RFP Nos. 10–12 seek discovery concerning issues that are central to Texas's (and Relator's) claims in this case.

---

[7] Although Texas claims (at 14–15) that the RFPs will capture communications subject to attorney-client privilege, that does not excuse Texas from producing responsive, non-privileged documents.

PPFA therefore requests that the Court grant its Motion to Compel as to RFP Nos. 10–12.

V.  **The Court Should Compel Texas to Respond to Interrogatories 4 and 5, Which Seek Relevant Information Concerning the Public Disclosure Bar.**

Texas also refuses to answer Interrogatory Nos. 4 and 5, which ask Texas to:

Identify the facts in Relator and Texas's complaints that Relator disclosed to Texas and of which Texas lacked knowledge before February 5, 2021, *see* Mot. Ex. B. (Interrogatory No. 4); and

For each fact identified, identify the date on which Texas obtained knowledge of the information, the source of the information, and why Texas could not have obtained such information before February 5, 2021, *see* Mot. Ex. B (Interrogatory No. 5).

Confusingly, the Response concedes, on one hand, that "Interrogatories 4 and 5 seek information appearing to further Defendants' arguments that Relator's *qui tam* action is barred on public disclosure grounds," but nevertheless contends, on the other hand, that the "interrogatories seek plainly irrelevant information" because Texas's prior knowledge of those facts has no bearing on the public disclosure bar. Resp. at 9. The other hand is wrong. If Texas had knowledge of the facts identified in Relator's complaint prior to February 5, 2021, and Texas traces that knowledge back to a publicly-available source, then that information would indisputably support the public disclosure bar. *See United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 329 (5th Cir. 2011). The Response (at 9) also argues that PPFA can discover any "publicly disclosed" information itself, but nothing in the discovery rules permits Texas to avoid producing relevant information on the ground that the same information theoretically may be obtained through alternative sources. *See Strobel v. Rusch*, 2020 WL 8079786, at *5 (D.N.M. Jan. 23, 2020). And even if it could, PPFA is entitled to obtain discovery of the information and sources of which *Texas* had actual prior notice to support its public-disclosure-bar defense, which PPFA can only obtain from Texas. *See Jamison*, 649 F.3d at 329 (inquiring whether public disclosures were "sufficient to 'set the government on the trail of the fraud'" (citation omitted)).

9

Texas also refuses to answer Interrogatory Nos. 4 and 5 on the ground that they are "overbroad and unduly burdensome" and would require Texas to "ask all state employees (and search each's custodial file) about what disclosures Relator has made to each of them," including "exploring which of the legions of state employees viewed Relator's YouTube content prior to February 5, 2021." Resp. at 11–12. But again, Texas already committed to "provid[ing] responses to Interrogatories on behalf of the Texas Medicaid Program and within the reasonable control of the Office of Attorney General as counsel for the HHSC." Mot. Ex. D at 4. And Texas fails to explain why it cannot undertake a reasonable investigation to provide answers in the precise manner it identified. Indeed, PPFA has never demanded that Texas canvas all Texas employees—or even all HHSC employees—in answering these Interrogatories. Texas should be able to ascertain whether relevant individuals at HHSC, HHSC-OIG, and/or the OAG were on notice of the alleged facts prior to February 5, 2021 and identify how they came to learn those facts.[8] *See Areizaga v. ADW Corp.*, 314 F.R.D. 428, 437 (N.D. Tex. 2016) (noting that a party "is not required to make an extensive investigation in responding to an interrogatory, but he must pull together a verified answer by reviewing all sources of responsive information reasonably available to him").

Because the information sought through Interrogatory Nos. 4 and 5 is relevant, and Texas has not identified any practical obstacle to providing information reasonably available to it, the Court should overrule Texas's objections and compel it to answer Interrogatory Nos. 4 and 5.

## CONCLUSION

For the reasons advanced in the Motion and herein, PPFA respectfully requests that the Court grant PPFA's Motion to Compel to the State of Texas.

---

[8] And contrary to Texas's claims (at 14–15), Texas cannot assert attorney-client or work product privileges to avoid disclosing purely factual information concerning when and how it learned the facts alleged. *See Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981).

| | |
|---|---|
| Dated:   August 24, 2022 | **O'MELVENY & MYERS LLP**<br><br>*/s/ Danny S. Ashby*<br>DANNY S. ASHBY<br>Texas Bar No. 01370960<br>dashby@omm.com<br>JUSTIN R. CHAPA<br>Texas Bar No. 24074019<br>jchapa@omm.com<br>MEGAN R. WHISLER<br>Texas Bar No. 24079565<br>mwhisler@omm.com<br>2501 N. Harwood Street, Suite 1700<br>Dallas, Texas 75201<br>T: (972) 360-1900<br>F: (972) 360-1901<br><br>LEAH GODESKY (*pro hac vice*)<br>lgodesky@omm.com<br>1999 Avenue of the Stars, 8th Floor<br>Los Angeles, California 90067<br>T: (310) 553-6700<br>F: (310) 246-6779<br><br>**BLACKBURN BROWN LLP**<br>RYAN PATRICK BROWN<br>Texas Bar No. 24073967<br>brown@blackburnbrownlaw.com<br>1222 S. Fillmore St.<br>Amarillo, Texas 79101<br>T: (806) 371-8333<br>F: (806) 350-7716<br><br>*Attorneys for Defendant Planned Parenthood Federation of America, Inc.* |

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2022, the foregoing Reply in Support of Motion to Compel was filed via the Court's CM/ECF system and, therefore, was served electronically on all counsel of record.

*/s/ Danny S. Ashby*
Danny S. Ashby