**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ALEX DOE, Relator, | § § § | |
| THE STATE OF TEXAS, *ex rel.* ALEX DOE, Relator, | § § § | |
| THE STATE OF LOUISIANA, *ex rel.* ALEX DOE, Relator, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 2:21-CV-00022-Z |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., PLANNED PARENTHOOD GULF COAST, INC., PLANNED PARENTHOOD OF GREATER TEXAS, INC., PLANNED PARENTHOOD SOUTH TEXAS, INC., PLANNED PARENTHOOD CAMERON COUNTY, INC., PLANNED PARENTHOOD SAN ANTONIO, INC., | § § § § § § § § § § § § § | |
| Defendants. | § | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'**
**MOTION TO TRANSFER VENUE**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ............................................................................................... 1

ARGUMENT ....................................................................................................... 2

I.     Defendants' Motion Is Inexcusably Delayed. ............................................ 4

II.    The Remaining Private Interest Factors Do Not Support Transfer of
Venue. ......................................................................................................... 8

       a.    The first private interest factor does not support transfer
because all evidence here is electronic. ........................................ 8

       b.    Because Defendants have not alleged that there is even a *single*
witness unwilling to testify, the second private interest factor is
neutral. ......................................................................................... 12

       c.    The differences in the cost of attendance for willing non-party
witnesses in the Amarillo Division and the Austin Division of
the Western District of Texas is negligible. ................................ 13

       d.    Other practical problems favor this case remaining in the
Amarillo Division. ....................................................................... 17

              i.    The convenience of theoretical unwilling witnesses should
not be considered. ............................................................. 18

              ii.    This Court is familiar with the facts and issues involved
here and no active judge in the Western District is. .................. 18

              iii.   Defendants' motive to transfer is likely due to their
demonstrated preference for the Western District of
Texas. ............................................................................... 20

III.   The Public Interest Factors Do Not Support Transfer of Venue. ..................... 21

       a.    Administrative congestion favors the Amarillo Division. ....................... 21

       b.    Localized interests do not support transfer. ................................ 23

       c.    This Court gives little weight to the factor considering
familiarity with governing law. .................................................. 24

CONCLUSION .................................................................................................. 25

i

## <u>TABLE OF AUTHORITIES</u>

<u>Cases:</u>

*All. Transp. Logistics, LLC v. G&J Truck Sales, Inc.*,
    2021 WL 5882820 (N.D. Tex. Dec. 13, 2021) .................................................. 12

*Aloft Media, LLC v. Adobe Sys. Inc.*,
    2008 WL 819956 (E.D. Tex. Mar. 25, 2008) ........................................... 8, 9, 10

*Barton v. C.R. Bard, Inc.*
    2020 WL 1809702 (N.D. Tex. Apr. 9, 2020) .................................. 13, 15, 16, 22

*Battee v. Ben E. Keith Co.*,
    2017 WL 1832043 (E.D. Tex. May 5, 2017) ...................................................... 3

*Chapman v. Dell, Inc.*,
    No. EP-09-CV-7-KC, 2009 WL 1024635 (W.D. Tex. Apr. 15, 2009) ................ 3

*Crestview Farms, LLC v. Cambiaso*,
    2021 WL 2434845 (N.D. Tex. June 15, 2021)........................................... 10, 24

*Def. Distributed v. Bruck*,
    30 F.4th 414 (5th Cir. 2022) ....................................................................... 3, 13

*F.T.C. v. Multinet Marketing, LLC*,
    959 F. Supp. 394 (N.D. Tex. 1997)............................................................ 4, 5, 6

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947) ........................................................................................ 7

*In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*,
    821 F.2d 1147 (5th Cir. 1987)...................................................................... 6, 7

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004)........................................................................ 3, 9

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008)..................................................................*passim*

*InfoGation Corp. v Google, LLC*,
    2021 WL 5547070 (W.D. Tex. Apr. 29, 2021)........................................... 19, 20

*Koss Corp. v. Plantronics, Inc.*,
    2021 WL 2075685 (W.D. Tex. May 20, 2021)...................................................... 12

*McNew v. C.R. Bard, Inc.*,
    No. 1:19-CV-195-H, 2020 WL 759299 (N.D. Tex. Feb. 14, 2020) .................. 13

*MCR Oil Tools, LLC v. Wireline Well Services Tunisia*,
    No. 3:19-cv-2536-E, 2021 WL 1086995 (N.D. Tex. Mar. 22, 2021). .................. 7

*Network-1 Sec. Solutions, Inc. v. D-Link Corp.*,
    433 F.Supp.2d 795 (E.D. Tex. 2006)..................................................................... 9

*Odom v. Microsoft Corp.*,
    596 F.Supp.2d 995 (E.D. Tex. 2009)................................................................. 8, 9

*Peteet v. Dow Chem. Co.*,
    868 F.2d 1428 (5th Cir. 1989) ............................................................................. 4

*Planned Parenthood Ctr. for Choice v. Abbott*,
    No. A-20-cv-323-LY (filed W.D. Tex. Mar. 25, 2020) ....................................... 21

*Planned Parenthood Greater Texas Family Plan. & Preventative Health*
    *Servs. v. Smith*, No. 1:15-cv-1058 (W.D. Tex. Nov. 23, 2015).................... 18, 21

*Planned Parenthood of Cent. Texas v. Sanchez*,
    No. 03-cv-415 (filed W.D. Tex. June 26, 2003)................................................. 20

*Planned Parenthood of Greater Texas Surgical Health Servs. v. Abbott*,
    No. 1:13-cv-862-LY (filed W.D. Tex. Sept. 27, 2013) ....................................... 20

*Pride Int'l, Inc. v. Tesco Corp. (US)*,
    2014 WL 72212, (S.D. Tex. Feb. 24, 2014) ........................................................ 4

*R2 Sols. LLC v. Target Corp.*,
    2021 WL 2550908 (E.D. Tex. June 22, 2021)................................................... 12

*Roco v. American Airlines*,
    2022 WL 658566 (N.D. Tex. Mar. 4, 2022)........................................ 13, 14, 15

*Says v. M/V David C Devall*,
    161 F.Supp.2d 752 (S.D. Tex. 2001) ................................................................. 4

*Starpay.com, LLC v. Via Intern. Service Ass'n*,
    514 F. Supp.2d 883 (N.D. Tex. 2007)............................................................... 19

*Turner v. Cincinnati Ins. Co.*,
  2020 WL 210809 (W.D. Tex. Jan. 14, 2020) ..................................................... 12

*United States v. Asibor*,
  109 F.3d 1023 (5th Cir. 1997) ............................................................................ 3

*Utterback v. Trustmark Nat'l Bank*,
  716 Fed. Appx. 241 (5th Cir. 2017) .................................................................. 21

*Venables's Construction Inc. v. OneOak Arbuckle II Pipeline, LLC*,
  2020 WL 2841398 ............................................................................................. 22

*Whole Woman's Health v. Jackson*,
  No. 1:21-cv-00616 (filed W.D. Tex. July 13, 2021) .......................................... 21

*Whole Woman's Health v. Paxton*,
  No. A-17-cv-690-LY (filed W.D. Tex. July 20, 2017) ....................................... 21

*Woolery v. Peery*,
  2022 WL 19700 (N.D. Tex. Jan. 3, 2022) ................................................... 12, 18

**Statutes:**

28 U.S.C. § 1404(a) ............................................................................................ 6, 9

**Other Sources:**

Census Reporter, Amarillo-Pampa-Borger, TX CSA,
  https://censusreporter.org/profiles/33000US108-amarillo-pampa-
  borger-tx-csa/ .................................................................................................. 23

Planned Parenthood, Health Centers in Texas,
  https://www.plannedparenthood.org/health-center/tx/ .................................. 11

Texas Health and Human Services Commission, Texas Department of State
  Health Services, Public Health Regions
  https://www.dshs.texas.gov/regions/default.shtm ........................................... 11

ThoughtCo., *Most Populous Metropolitan Areas in the United States* (Apr. 7,
  2022), https://www.thoughtco.com/largest-metropolitan-areas-1435135 ....... 22

U.S. Courts, Table—U.S. District Courts–Combined Civil and Criminal
  Federal Court Management Statistics (June 30, 2022),

iv

https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.20 22_0.pdf ............................................................................................... 21

## INTRODUCTION

Seven months after this case was unsealed, after the resolution of substantive motions, while the parties are more than halfway done with discovery, after tens of thousands of documents have been exchanged, and while several motions to compel have been decided and several more are pending, Defendants now raise their first objection to venue, despite having many opportunities to do so earlier. Defendants' requested transfer would unnecessarily disrupt ongoing discovery, upend deadlines set forth in the Amended Scheduling Order, and push the trial date. Defendants do offer no excuse for this delay. This Court should deny Defendants' motion for this reason alone.

Aside from their inexcusable delay, Defendants have not met their burden to show that the Western District of Texas is "clearly" more convenient than the Northern District. *In re Volkswagen of Am., Inc.* ("*Volkswagen II*"), 545 F.3d 304, 315 (5th Cir. 2008). Neither the private nor public interest factors that this Court must consider favor transfer to the Western District. As to the private interest factors, the relative ease of access to evidence does not favor transfer because discovery here is almost entirely electronic. Defendants have failed to identify even one witness unwilling to testify, so this Court should not consider the availability of compulsory process in considering transfer. Austin is not a "clearly" more convenient location for non-party and party witnesses. And the fact that this Court is now deeply familiar with this case and the issues involved, especially Plaintiffs' false claim theories of liability which have not previously been litigated in the Western District, favors remaining in the Northern District. As for the public interest factors, administrative

congestion favors remaining in the Northern District. There is also localized interest in this case, as roughly 30% of the funds at issue were paid to Defendant Planned Parenthood of Greater Texas, Inc. ("PPGT"), which does significant business in the Northern District of Texas. This Court gives little weight to a court's familiarity with governing law, but this Court is familiar with the federal False Claims Act and the state statutes at issue in any event. The Court should thus deny Defendants' Motion to Transfer Venue.

## ARGUMENT

"When the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Volkswagen II*, 545 F.3d at 315.[1] In making this determination, the Court looks at a variety of private and public interest factors:

> The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

> The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.

---

[1] The "preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Volkswagen II*, 545 F.3d at 312. Plaintiffs do not challenge Defendants' contention that this action could have been brought in the Western District of Texas.

*Volkswagen II*, 545 F.3d at 315 (cleaned up).[2] These factors "are not necessarily exhaustive or exclusive" and no one factor is dispositive. *Id*. "The trial court is entitled to broad discretion in ruling on motions to transfer venue, and its decision will be upheld absent an abuse of discretion." *United States v. Asibor*, 109 F.3d 1023, 1037 (5th Cir. 1997) (internal citations omitted).

"When a defendant is haled into court, some inconvenience is expected and acceptable." *Def. Distributed v. Bruck,* 30 F.4th 414, 433 (5th Cir. 2022). The "fact that litigating would be more convenient for that defendant elsewhere is not enough to justify transfer." *Id*. Thus, "the standard is not met by showing one forum is more likely than not to be more convenient, but instead the party must adduce evidence and arguments that *clearly* establish good cause for transfer based on convenience and justice." *Id*. (emphasis added). Defendants have not met this burden. The transferee venue is not "clearly" more convenient, and Relator's choice of forum should be honored.

Throughout their motion, Defendants focus on the Amarillo Division—and not the entire Northern District—when arguing that the Western District is more convenient. *See, e.g.,* Defs.' Mot. to Transfer at 9, 11, 13, 15, 24. But venue is proper in any division of a district where the general venue statute allows venue to lie. *Volkswagen II*, 545 F.3d at 313; *Battee v. Ben E. Keith Co.*, 2017 WL 1832043 (E.D. Tex. May 5, 2017) (the general "venue statute does not distinguish between the

---

[2] "[C]onvenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a)." *In re Volkswagen AG* ("*Volkswagen I*"), 371 F.3d 201, 206 (5th Cir. 2004) (internal citations omitted).

divisions of a judicial district, venue properly lies in any division" of the District); *accord Says v. M/V David C Devall*, 161 F.Supp.2d 752, 753 (S.D. Tex. 2001); *Chapman v. Dell, Inc.,* No. EP-09-CV-7-KC, 2009 WL 1024635, at *2 (W.D. Tex. Apr. 15, 2009). This Court should accordingly consider the factors favoring remaining in the Northern District, and not focus solely on the Amarillo Division.

## I.   Defendants' Motion Is Inexcusably Delayed.

Defendants filed their motion seven months after this case was unsealed, while the parties are deep in the discovery process, after the resolution of multiple substantive motions, and well into the deadlines in this Court's Amended Scheduling Order. Motions to transfer venue must be filed with "reasonable promptness." *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (citing 15 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3844, at 335–37). "Courts have considered a party's delay in denying a motion to transfer." *Id.* (internal citations omitted). Consideration of the timing of Defendants' motion—accounting for the status of the action—is considered in the fourth private interest factor, all other practical problems that make trial of a case easy, expeditious, and inexpensive. *See Pride Int'l, Inc. v. Tesco Corp. (US)*, No. CIV.A. H-12-2889, 2014 WL 722129, at *4 (S.D. Tex. Feb. 24, 2014) ("[T]he Fifth Circuit classifies these timeliness questions as private interest factors, or practical problems to be considered….") (internal citations omitted).

"Defendants offer no reason for the delay in moving for a change of venue," despite having had ample opportunity to file such a motion. *See F.T.C. v. Multinet Marketing, LLC*, 959 F. Supp. 394, 395 (N.D. Tex. 1997). Defendants' motion comes

after this Court denied Defendants' Motions to Dismiss and Motion for Reconsideration, and months into the discovery period under the Court's Amended Scheduling Order—which the Court amended at Defendants' request. Dkt. 122. Defendant should have been aware of all the facts it claims support transfer soon after this case was unsealed. "A change of venue now is likely to upset the discovery and trial schedule and waste judicial resources." *Id*. at 395–96.

The discovery process is well underway: the parties have served many discovery requests and responses; produced tens of thousands of documents; responded to hundreds of interrogatories and requests for admission; engaged in significant discovery-related motions practice, including negotiating and briefing a comprehensive protective order for the production of discovery materials, as well as an ESI agreement governing electronic discovery; and have filed several motions to compel which are pending in this Court. This Court recently compelled Defendant Planned Parenthood Federation of America ("PPFA") to produce documents requested by Relator, Dkt. 153, and Relator is now awaiting this discovery, which will greatly advance this case. Any delay due to Defendants' untimely transfer motion will also inevitably lead to Defendants requesting yet another of extension in the deadlines already set.

Defendants had multiple opportunities to object to venue. Defendants did not object to venue in the multiple motions to dismiss they filed. Dkt. 45, 47, 49, 51. Defendants did not object to venue in their motion to stay discovery, Dkt. 58, nor did they object to venue in their various motions for extensions of time. Dkt. 35, 74, 107.

5

Defendants also did not object to venue in their Answer to Relator's Complaint or the State of Texas's Complaint. Dkt. 80, 81. Nor did Defendants object to venue in the parties' Joint Proposed Scheduling Order. Dkt. 56. And Defendants did not communicate any venue objection or venue concerns to counsel for Relator or the State of Texas until August 12, 2022, the day that Defendants filed their motion. This case bears striking resemblance to *Multinet Marketing*, where this Court denied a motion to transfer where Defendants "waited nearly seven months" after the start of the action and "failed to raise venue objections in their Answer" or in a Joint Status Report. 959 F. Supp. at 395. The Defendants' delay in *Multinet* was the primary factor in this Court's denial of the motion to transfer. *Id*.

In the similar *forum non conveniens* context—where a court is tasked with deciding whether an action should be dismissed (rather than transferred) based on the availability of a more convenient forum—a defendant must file the motion "within a reasonable time after the facts or circumstances which serve as the basis for the motion have developed and become known or reasonably knowable to the defendant." *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1165 (5th Cir. 1987), *cert. granted, judgment vacated sub nom. Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032 (1989). Because the private and public interest factors involved in considering a motion to transfer venue under 28 U.S.C. § 1404(a) and a motion to dismiss under the *forum non conveniens* doctrine are the same, this Circuit's *forum non conveniens* cases are instructive in the § 1404(a) context. *See Volkswagen II*, 545 F.3d at 315 (The Fifth Circuit has "adopted the private and public

interest factors first enunciated in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 . . . (1947), a *forum non conveniens* case, as appropriate for the determination of whether a § 1404(a) venue transfer is for the convenience of parties and witnesses and in the interest of justice.") (citation omitted).

The Fifth Circuit has noted that "[t]he status of the case when a *forum non conveniens* motion is decided is *most significant* in the resolution of the motion." *In re Air Crash Disaster*, 821 F.2d at 1166 (emphasis added). Accordingly, the Court "should review the motion in light of the status of the case at the time the motion is filed," considering factors such as "discovery, stipulations, admissions, the joinder or dismissal of parties, which frequently develop or occur after the action commences." *Id.* And "the relevant circumstances at the time the motion is filed should serve as the factual backdrop of the court's decision." *Id.* Untimeliness "should weigh heavily against the granting of the motion because a defendant's dilatoriness promotes and allows the very incurrence of costs and inconvenience the doctrine is meant to relieve." *MCR Oil Tools, LLC v. Wireline Well Services Tunisia*, No. 3:19-cv-2536-E, 2021 WL 1086995, at *4 (N.D. Tex. Mar. 22, 2021) (citing *In re Air Crash Disaster*, 821 F.2d at 1165). In this case, Plaintiffs have had to expend significant resources responding to Defendants' numerous motions and compelling discovery responses. It would be unfair to allow Defendants to now claim another venue is more convenient as yet another gambit to delay this case. Defendants' untimeliness and the disruption of the proceedings and waste of judicial resources that will result thus weigh heavily against granting Defendants' motion.

## II.   The Remaining Private Interest Factors Do Not Support Transfer of Venue.

### a.   The first private interest factor does not support transfer because all evidence here is electronic.

All discovery thus far has been electronic,and a vast majority (if not all) remaining discovery will be done electronically,so the first private interest factor does not support transfer. "Because electronic information can be accessed conveniently in any number of locations, not simply the location where the information is 'stored,' it does not follow that transfer to the location of the stored information is more convenient for anyone." *Odom v. Microsoft Corp.*, 596 F.Supp.2d 995, 1000 (E.D. Tex. 2009). "Any convenience or burden associated with electronic discovery bears little, if any, relation to the physical location of the underlying document." *Aloft Media LLC v. Adobe Sys. Inc.*, 2008 WL 819956, *4 (E.D. Tex. Mar. 25, 2008). Defendants have pointed to no evidence unavailable in an electronic format. Still, significant documentary evidence is located within the Northern District. Defendants thus cannot meet their burden to show that transfer to the Western District is "clearly" more convenient than the Northern District.

Relator has already produced over 48,000 pages of documents electronically and the State of Texas has produced more than 165,000 pages electronically. A vast majority of remaining discovery is expected to be done electronically, and Defendants identify no piece of evidence that cannot be produced electronically. Moreover, even depositions are now frequently conducted electronically with witnesses and lawyers appearing via Zoom from different locations and offices across the country. Because almost all evidence is accessible electronically, it is not *more* convenient for the

8

parties to litigate in the Western District than the Northern District. *See Odom*, 596 F.Supp.2d at 1000; *Aloft Media LLC*, 2008 WL 819956, \*4. The first private interest factor thus does not support transfer. *See Network-1 Sec. Solutions, Inc. v. D-Link Corp.*, 433 F.Supp 2d 795, 799 (E.D. Tex. 2006) (finding that this factor did not support transfer where "the documents can (and will likely) be exchanged electronically.").

This case is easily distinguished from *Volkswagen I* and *Volkswagen II*, both of which held that the first private interest factor supported transfer under § 1404(a). Both *Volkswagen I* and *Volkswagen II* involved tort claims arising from a car accident, which necessarily involves significant physical evidence. *Volkswagen II* involved an accident that took place in the Dallas Division of the Northern District of Texas (where Defendants sought to transfer). There, all tangible physical evidence and the physical site of the accident at issue in the case were in the Dallas Division, supporting transfer. 545 F.3d at 316. Similarly, in *Volkswagen I*, the car accident at issue occurred in the Western District of Texas (San Antonio), but Plaintiffs sued in the Eastern District. 371 F.3d at 202. There, "the numerous fact witnesses," including police officers, emergency medical personnel, hospital personnel, treating physicians, and eyewitnesses were located in San Antonio and the physical site of the accident was in San Antonio, again supporting transfer. *Id.* at 204–05.

In contrast, there is little need here for physical evidence, the witnesses are located largely throughout Texas and Louisiana (rather than in one judicial district), and many events underlying the claims occurred in the Northern District. As to

9

physical evidence, a car accident case is much different from the claims involved in a False Claims Act case. A car accident tort case typically concerns evidence only observable at a physical location (such as an accident site). Discussing the panel decision before the en banc decision in *Volkswagen II*, the Eastern District noted that "[a]lthough the Fifth Circuit warned that technological improvements do not render the location of evidence a nullity, the court focused on *the documents and physical evidence relating to an accident scene.*" *Aloft Media, LLC*, 2008 WL 819956, at *4 (emphasis added) (discussing *In re Volkswagen of America, Inc.*, 506 F.3d 376 (5th Cir. 2007), *rev'd on reh'g on other grounds*, *Volkswagen II*, 545 F.3d 304). "Physical evidence of this nature presumably would be difficult to convert to an electronic medium and would be extremely burdensome, if not impossible due to its delicate nature, to transport." *Id*. Similar concerns are not implicated here.

In any event, the Northern District contains several sources of proof. "Where important documents are in both venues, this factor does not weigh in favor of transfer." *Crestview Farms, LLC v. Cambiaso*, 2021 WL 2434845, at *7 (N.D. Tex. June 15, 2021) (citations omitted). Defendants admit that PPGT maintains it headquarters and operates clinics in the Northern District, and that documentary evidence may be found at these locations. Defs.' Mot. to Transfer at 11 & n. 26. PPGT received, and continues to retain, roughly 30% of the Medicaid funds at issue in this case. Exh. 2, ¶ 5. PPGT, its headquarters, and its many clinics in the Northern District are crucial sources of evidence. PPGT headquarters is likely a significant source of documentary evidence, including information about PPGT clinics' Medicaid

billing, practices, and claims. The clinics likely maintain records for that location's Medicaid billing, relevant patient records, and other information pertinent to this case. PPGT currently operates 13 clinics in the Northern District of Texas.[3] *See* Planned Parenthood, Health Centers in Texas, https://www.plannedparenthood.org /health-center/tx (last accessed Aug. 29, 2022). In contrast, the Austin Division of the Western District is home to only 5 clinics, 4 of which are operated by PPGT (the remaining one is operated by Planned Parenthood of Greater Texas Surgical Health Services). *Id.* PPGT's headquarters in the Northern District is likely a significant source of information about these Austin clinics. Additionally, the Texas Health and Human Services Commission maintains offices throughout the State of Texas, including regional headquarters locations in Lubbock and Arlington, both of which are within the Northern District.[4] Because substantial evidence is found within the Northern District, the Western District is not a "clearly" more convenient venue.

Defendants argue that there is "[d]ocumentary evidence related to the [Medicaid termination] lawsuit filed in the Western District of Texas and the preliminary injunction issued by the Austin Division" in the Austin division, Defs.' Mot. to Transfer at 12, but the evidence from that case has already been provided

---

[3] PPGT operates clinics in each of the following cities within the Northern District: Lubbock (two locations), Plano, Mesquite, Dallas (two locations), Addison, Bedford, Cedar Hill, Arlington, and Fort Worth (three locations). This includes Lubbock, Dallas, and Fort Worth abortion clinics, which appear to now be closed.

[4] Texas Health and Human Services Commission, Texas Department of State Health Services, Public Health Regions, https://www.dshs.texas.gov/regions/default.shtm (last accessed Aug. 29, 2022).

(electronically) to Defendants by Plaintiffs. There is therefore no need to consider this evidence under this factor.

### b. Because Defendants have not alleged that there is even a *single* witness unwilling to testify, the second private interest factor is neutral.

In considering the second private interest factor—which examines compulsory process over witnesses—this Court mainly considers compulsory process over *unwilling* witnesses, and gives "little weight" to this factor when (as here) the moving party does not identify a single witness unwilling to testify. *All. Transp. Logistics, LLC v. G&J Truck Sales, Inc.*, 2021 WL 5882820, at *3 (N.D. Tex. Dec. 13, 2021); *see also Koss Corp. v. Plantronics, Inc.*, 2021 WL 2075685, at *4 (W.D. Tex. May 20, 2021) (The Court "attaches weight to this factor to the extent that the third-party witnesses are unwillingly to testify."); *Turner v. Cincinnati Ins. Co.*, 2020 WL 210809, at *3 (W.D. Tex. Jan. 14, 2020) ("When no party has alleged or shown any witness's unwillingness [to testify], a court should not attach much weight to the compulsory process factor.").

As the party seeking transfer, Defendants have "the burden to establish that the [Western District of Texas Austin Division] has subpoena power over more *unwilling* witnesses than" this Court. *See R2 Sols. LLC v. Target Corp.*, 2021 WL 2550908, at *3 (E.D. Tex. June 22, 2021) (emphasis added). Judge Fitzwater recently noted that judges in this district (and other districts within the Fifth Circuit) "have found that the compulsory process factor should be given little weight when no party has shown that any witness is unwilling to testify." *Woolery v. Peery*, 2022 WL 19700, at *3 (N.D. Tex. Jan. 3, 2022) (listing cases).

12

Defendants have not alleged that there is even a *single* witness who would be unwilling to testify. Nor could they, as Defendants have not even attempted to get a witness to testify. As this Court recently admonished, it "will not rely on blanket speculation" in considering the factors bearing on venue transfer. *Barton v. C.R. Bard, Inc.*, No. 2:19-CV-181-Z, 2020 WL 1809702, at *3 (N.D. Tex. Apr. 9, 2020). This Court should accordingly find this factor "neutral" in the transfer analysis. *Id.* at *4 (citing *McNew v. C.R. Bard, Inc.*, No. 1:19-CV-195-H, 2020 WL 759299, at *3 (N.D. Tex. Feb. 14, 2020) (Hendrix, J.).

### c. The differences in the cost of attendance for willing non-party witnesses in the Amarillo Division and the Austin Division of the Western District of Texas is negligible.

The third private interest factor examines the cost of attendance of willing witnesses. In considering this factor, "[t]he convenience of *non-party* witnesses is accorded the greatest weight . . . while the convenience of employee witnesses of the party seeking transfer is given less weight because the party will be able to compel their testimony at trial." *Roco v. American Airlines*, 2022 WL 658566, at *3 (N.D. Tex. Mar. 4, 2022) (citations omitted) (emphasis added). Defendants' scant and unpersuasive evidence does not establish that Austin is a "clearly" more convenient venue than Amarillo. *See Def. Distributed v. Bruck,* 30 F.4th at 433 (noting that, in litigation, "some inconvenience [to a defendant] is expected and acceptable").

First, Defendants obscure a basic reality of this case. There are six defendants, and none of them is headquartered in Austin.[5] By Defendants' own admission, their

---

[5] PPFA is headquartered in New York. Dkt. 143 at 68. PPGT is headquartered in Dallas. *Id.* at 10. Defendants Planned Parenthood South Texas ("PPST"), Planned Parenthood San

13

personnel and evidence are scattered throughout Texas and beyond. The 19 declarations they append in support of their Motion were executed in the following locations: San Antonio, TX (5); Cloudcroft, NM (2); Dallas, TX (2); Austin, TX (2); Chicago, IL (2); Katy, TX (1); Manvel, TX (1); Seabrook, TX (1); Houston, TX (1); Mechanicsville, MD (1); and Lehigh Valley, PA (1). *See* Dkt. 143 at 9-84. On its face, Defendants' Motion begins from the flawed premise that the Austin Division of the Western District is "clearly" more convenient than the current venue.

Second, Defendants attempt to create the illusion of convenience in Austin by relying heavily on the declarations of Mr. Lambrecht, Ms. White, and Mr. Sannes, senior-level PPGT employee witnesses who all claim to reside in Austin. Dkt. 143 at 9–24. But PPGT is headquartered in Dallas and does significant business in North Texas. It operates at least 10 clinics located within the Northern District of Texas. *Id.* at 10–11. Defendants also concede that PPGT "perform[s] telehealth services for patients that may be located outside PPGT's service area." *Id.* at 11. Defendants do not claim that PPGT does not provide services to patients residing in and around Amarillo. *See id.* at 10–11. It is not inconvenient for these senior-level PPGT employee witnesses to participate in litigation in a district where their company does significant business. *Roco*, 2022 WL 658566, at *3.

Third, as to witnesses outside Austin, Defendants identify only two Planned Parenthood-affiliated non-party witnesses—Mr. Hons and Ms. Farrell. The

---

Antonio ("PPSA"), and Planned Parenthood Cameron County ("PPCC") are headquartered in San Antonio. *Id.* at 32, 36, 40. Defendant Planned Parenthood Gulf Coast ("PPGC") is headquartered in Houston. *Id.* at 50.

consideration of these non-party witnesses is accorded the greatest weight. *Roco*, 2022 WL 658566, at *3. As to Mr. Hons and Ms. Farrell, however, Defendants' evidence *undercuts* their argument that Austin is more convenient. Mr. Hons resides in San Antonio. Dkt. 143 at 44. But based on Defendant's airfare evidence—which is the only evidence they rely on to claim that litigating in Austin would be cheaper than Amarillo—a flight from San Antonio to Austin would be *more than double* the cost of a flight from San Antonio to Amarillo. *Id.* at 86 ($526 flight to Austin vs. $222 flight to Amarillo). Similarly, Ms. Farrell resides in the Houston area. *Id.* at 56. The difference in airfare for a flight from Houston to either Austin or Amarillo is negligible. *Id.* at 86 ($218 flight to Austin vs. $255 flight to Amarillo). This is especially true when considering other costs of travel, which Defendants failed to do. Not only do Defendants fail to consider any other costs, but they also fail to consider the convenience of air travel into and out of Amarillo. In *Barton*, this Court noted that:

> Amarillo has its own international airport. The Rick Husband Amarillo International Airport serves the Amarillo metropolitan population (approximately 310,000), the Texas Panhandle, the Oklahoma Panhandle, and Eastern New Mexico with *dozens* of daily flights on major carriers: Southwest Airlines, American Airlines, and United Airlines. . . . Additionally, when it comes to airport security, the shorter and more efficient TSA checkpoints in Amarillo are more convenient than those at the crowded international airports in Dallas[.]

*Barton*, 2020 WL 1809702, at *4 (emphasis in original). Contrast that with Austin-Bergstrom International Airport, which is notoriously inconvenient for travelers.[6]

---

[6] *See, e.g.*, https://www.kut.org/transportation/2022-05-16/tsa-lines-out-the-door-return-to-abia (last accessed September 2, 2022) (noting that "people who showed up well in advance missed their flights").

Additionally, the bulk of Planned Parenthood employee witnesses outside of Austin will fly from origin cities where Defendants' airfare evidence does not "clearly" establish that Austin is a more convenient venue.[7]

Fourth, Defendants rely exclusively on evidence of airfare and wholly disregard other costs associated with litigating in Amarillo versus Austin. In *Barton*, this Court wisely recognized that airfare is not the only expense borne by witnesses having to travel for litigation. When comparing the cost of Amarillo versus another of Texas's major cities—Dallas—this Court found:

> As noted in the previous section, Plaintiff has not shown, other than by vague and non-specific claims, that the cost of attendance for willing witnesses will either be the same, or less, if transferred to the Dallas Division. On the contrary, cost of attendance in Dallas is likely *higher* for willing witnesses because food, lodging, local travel, and almost everything else is less expensive in Amarillo. Notably, 72-ounce steak dinners are *free*.

*Barton*, 2020 WL 1809702, at *4 (footnote omitted).

Indeed, this Court's analysis in *Barton* holds here as well—Amarillo is cheaper than Austin. On average, traveling to Austin is roughly 60% more expensive than traveling to Amarillo. App.003 (noting that it costs $1,306 to travel to Amarillo for seven days versus $2,116 to travel to Austin for seven days); App.007–018; App.019–031. Considering only transportation and local dining, travelers usually spend

---

[7] Ms. Barraza will travel from San Antonio, which makes it significantly more expensive to fly to Austin over Amarillo. Dkt. 143 at 86 ($526 to fly to Austin versus $222 to fly to Amarillo). Ms. Linton, Ms. Exnicious, Mr. Curtis, and Ms. McKinney will travel from Houston, which is relatively cost-neutral when considering the other costs associated with travel. *Id.* ($218 to fly to Austin versus $255 to fly to Amarillo). Ms. Watson will travel from Dallas/Fort Worth, which requires a $218 flight whether she travels to Austin or Amarillo. *Id.*

16

between $31 to $71 per day in Amarillo compared to $66 to $127 per day in Austin. App.003; App.007–018; App.019–031. Hotels are also more expensive in Austin. The Office of the Attorney General sometimes must spend close to 70% more to lodge agency employees traveling to Austin than it does to lodge agency employees traveling to Amarillo. App.003. Additionally, among the most inexpensive times to travel to Amarillo is between March 26 and May 6—which covers the current trial setting in this case (i.e., April 24, 2023). App.003; App.007–018.

Finally, considerations of convenience for Plaintiffs' witnesses do not warrant transfer of venue. Relator chose this forum and obviously intends to litigate this action in the current venue. Likewise, transfer of venue is not necessary to accommodate Plaintiffs' expert witness or any HHSC/TMHP witnesses. App.034; App.036–037; App.040. As to Mr. Bowen and Mr. Smith—two former HHSC employees Defendants identify—Defendants present no evidence that either Mr. Bowen or Mr. Smith find Austin to be a more convenient venue than Amarillo. *See Barton*, 2020 WL 1809702, at *3 (this Court "will not rely on blanket speculation" in considering the factors bearing on venue transfer). Defendants have not met their burden of proving that Austin is clearly more convenient than Amarillo under the third private interest factor.

### d. Other practical problems favor this case remaining in the Amarillo Division.

The final private interest factor considers "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. Plaintiffs already discussed a major issue under this factor—timeliness and the

status of the case at the time Defendants' motion was filed—and this alone warrants remaining in the Northern District. *See* Section I. Defendants assert two additional "problems," but neither support transfer to the Western District.

> ### i.   The convenience of theoretical unwilling witnesses should not be considered.

Without identifying a single witness unwilling to testify, Defendants argue that the convenience of these non-existent witnesses should be considered in deciding this motion. Defs.' Mot. to Transfer at 21. This is improper. This Court has held that the compulsory process private interest factor is given little weight where Defendants cannot identify unwilling witnesses. *See Woolery*, 2022 WL 19700, at *3; *see also* Section II.b. Likewise, this Court should not consider the convenience of unwilling witnesses in making a venue transfer determination when Defendants can identify no such unwilling witnesses.

> ### ii.   This Court is familiar with the facts and issues involved here and no active judge in the Western District is.

Defendants argue that, because now-Senior Judge Sparks of the Western District of Texas presided over a case dealing with some of the Affiliate Defendants' termination from the Texas Medicaid program, *Planned Parenthood Greater Tex. Family Plan. & Preventative Health Servs. v. Smith*, No. 1:15-cv-1058 (filed W.D. Tex. Nov. 23, 2015), this case would be better suited in the Western District. Defs.' Mot. to Trans. at 21–22. But Judge Sparks has taken Senior status and, to the best of

counsel's knowledge, is no longer taking cases.[8] No other judge within the Western District has familiarity with the Medicaid termination litigation, and Defendants do not assert otherwise. This factor does not support transfer.

Regardless of the Western District's familiarity (or lack thereof) with a similar case, this litigation involves distinct legal issues and is not a duplicative suit. *Smith* involved a claim challenging the termination of Defendant Affiliates from the Texas Medicaid program under the Medicaid Act; this case alleges that Defendants have improperly retained payments, including from false or fraudulent Medicaid claims, under the federal False Claims Act and similar Texas and Louisiana laws. This case is thus far different than *InfoGation Corp. v Google, LLC*, which held that the existence of a previous case with "significant factual overlap between this case" "*slightly*" favored transfer. 2021 WL 5547070, at *4–*5 (W.D. Tex. Apr. 29, 2021) (emphasis added). *InfoGation* dealt with the same patent at issue in prior litigation in the Southern District of California. Patent claims are complicated, and the court noted that the judge from the substantially similar prior litigation in California had "reviewed tutorials on the technology at issue, conducted a claim construction proceeding, and issued a claim construction order." *Id.* at *4.[9] *InfoGation* also found it significant that the judge in the previous litigation was "likely to be assigned to the

---

[8] Judge Sparks is the only Austin Division judge who does not have a calendar posted on the Court's website.  https://www.txwd.uscourts.gov/judges-information/judges-calendars/  (last accessed Sept. 2, 2022).

[9] Claim construction proceedings are also technically complex and requires a court to determine "the proper construction of the patent claims by establishing, as a matter of law, the scope and boundaries of the subject matter that is patented." *starpay.com, LLC v. Via Intern. Service Ass'n*, 514 F. Supp.2d 883, 889 (N.D. Tex. 2007).

case" if it were transferred, based on the local rules of the Southern District of California. 2021 WL 5547070, at *5. With all of those considerations, the Eastern District still only found that these facts "slightly" favored transfer. *Id.*

Contrary to Defendants' arguments, it is *this Court* that has the most familiarity with this case and the relevant law. This Court has already devoted significant judicial resources to deciding multiple comprehensive motions to dismiss, a motion for reconsideration of the ruling on the motions to dismiss, a motion to certify an interlocutory appeal, the Court contemplated the needs of the case in setting a scheduling order, and the Court has considered the scope of discovery in resolving multiple motions to compel. The parties have filed numerous motions, oppositions, pleadings, and other materials discussing the factual background and legal issues involved here. While there is some overlap between the factual background here and that in *Smith*, this Court is now familiar with those facts. This factor therefore favors remaining in the Northern District.

### iii. Defendants' motive to transfer is likely due to their demonstrated preference for the Western District of Texas.

Defendants, as abortion providers, have often filed lawsuits in Texas challenging Texas laws restricting abortion or the availability of state funds to abortion providers. Defendants exclusively select the Western District of Texas when filing these suits.[10] As discussed in Section I, Defendants never once expressed an

---

[10] *See e.g. Planned Parenthood of Central Texas v. Sanchez*, No. 03-cv-415 (filed W.D. Tex. June 26, 2003) (various Planned Parenthood entities, including some Defendant Affiliates, as plaintiffs); *Planned Parenthood of Greater Texas Surgical Health Servs. v. Abbott*, No. 1:13-cv-862-LY (filed W.D. Tex. Sept. 27, 2013) (various Planned Parenthood entities, including

objection to venue—despite being given multiple opportunities to do so—before this. Defendants cannot get a "second bite at the apple" in Austin following the denial of their motion to dismiss by requesting a transfer to their favored venue. *See Utterback v. Trustmark Nat'l Bank*, 716 Fed. Appx. 241, 245 (5th Cir. 2017) (cleaned up).

## III.   The Public Interest Factors Do Not Support Transfer of Venue.

### a.   Administrative congestion favors the Amarillo Division.

Current district-wide case statistics favor remaining in the Northern District of Texas. In the 12-month period ending June 30, 2022, the Western District of Texas had 841 cases pending per judgeship, while the Northern District had only 570.[11] The median time from filing to trial in civil cases in the Western District is 28.3 months, while it is 25.1 months in the Northern District.[12] The overall pending caseload for the Western District is 10,933 cases, while the Northern District has only 6,836 pending cases.[13] All three statistics favor remaining in the Northern District of Texas. Defendant does not cite these current statistics, instead citing statistics for the 12-month period ending March 31, 2022. Defs.' Mot. to Transfer at 23 & ns. 68–70.

---

abortion clinics operated by Defendant Affiliates, as Plaintiffs); *Planned Parenthood Greater Texas Family Plan. & Preventative Health Servs. v. Smith*, No. 1:15-cv-1058 (filed W.D. Tex. Nov. 23, 2015); *Whole Woman's Health v. Paxton*, No. A-17-cv-690-LY (filed W.D. Tex. July 20, 2017) (various Planned Parenthood entities, including abortion clinics operated by Defendant Affiliates, as Plaintiffs); *Planned Parenthood Center for Choice v. Abbott*, 450 F.Supp.3d 753, No. A-20-cv-323-LY (filed W.D. Tex. Mar. 25, 2020) (various Planned Parenthood entities, including abortion clinics operated by Defendant Affiliates, as Plaintiffs); *Whole Woman's Health v. Jackson*, No. 1:21-cv-00616 (filed W.D. Tex. July 13, 2021) (various Planned Parenthood entities, including abortion clinics operated by Defendant Affiliates, as Plaintiffs).

[11] U.S Courts, Table—U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (June 30, 2022), https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf (last accessed Aug. 29, 2022).

[12] *Id.*

[13] *Id.*

Additionally, the Austin Division of the Western District of Texas is likely more congested that the Amarillo Division of the Northern District of Texas. Defendants quote statistics for cases filed district-wide in the Northern District of Texas, and do not consider the differences between the Amarillo Division and the other divisions within the Northern District. As this Court recently found, "the Amarillo Division is not strained or backlogged with civil actions waiting to be set for trial." *Venables's Construction Inc. v. OneOak Arbuckle II Pipeline, LLC*, 2020 WL 2841398, *8 (quoting *Barton*, 2020 WL 1809702, at *5). The Court has set this case for trial in April 2023 and the Court has expeditiously ruled on every motion filed in this case in order to move the case to trial early next year.

The federal judiciary does not appear to publicly release statistics for specific divisions—it only releases numbers that are district-wide—but the relative populations of the metropolitan areas in these divisions helps determine the likely relative congestion in the different divisions. The Northern District of Texas includes both the Dallas and Fort Worth divisions, and the DFW area is the fourth most populous metropolitan area in the United States, with around 7,451,858 residents.[14] The Austin-Round Rock-Georgetown area is the thirtieth most populous metropolitan area with about 2,173,804 residents.[15] But the Amarillo-Pampa-Borger area has a population of around 308,297 people—a mere fraction of the populations of the DFW

---

[14] ThoughtCo., *Most Populous Metropolitan Areas in the United States* (Apr. 7, 2022), https://www.thoughtco.com/largest-metropolitan-areas-1435135(compiling data from the United States Census) (last accessed Aug. 29, 2022).
[15] *Id.*

or Austin areas.[16] Though division-specific statistics are unavailable, it is reasonable to conclude that the Amarillo Division is less congested than the Austin Division. It is also reasonable to conclude that the Dallas and Fort Worth Divisions are busier than the Amarillo Division—but even given the higher populous in the DFW region, the statistics favor the Northern District of Texas as a whole.

Defendants repeat the erroneous argument that the Austin Division is somehow more familiar with the factual background and legal issues involved here. Defs.' Mot. to Transfer at 23. But again, this Court is already familiar with the factual background and legal issues involved here, having already decided multiple motions to dismiss—and a motion for reconsideration—all of which involved the factual background here. *See* Dkt. 44–50, 69, 82–83, 121. The issues here involve claims from not only Texas (which is the only state considered in the termination suit before the Western District), but from the United States and Louisiana. Furthermore, as discussed in Section II.d.ii, the only judge within the Western District of Texas that had any familiarity with some of the underlying facts is Judge Sparks, who does not appear to be taking cases. This factor thus does not favor transfer.

### b. Localized interests do not support transfer.

The events that lead to this case occurred throughout Texas and Louisiana. Relator's investigation of Defendant Affiliates spans the entire states of Texas and Louisiana. The residents of the Amarillo area—and the Northern District of Texas in

---

[16] *Id.*; *see also* Census Reporter, Amarillo-Pampa-Borger, TX CSA, https://censusreporter.org/profiles/33000US108-amarillo-pampa-borger-tx-csa/ (compiling data from the United States Census) (last accessed Aug. 29, 2022).

general—have an interest in the outcome of this litigation, as it deals with a nationwide healthcare provider that operates clinics throughout the State of Texas, including in West Texas, affecting the Amarillo Division. The Northern District also has a localized interest in the outcome of this litigation, as it serves as the corporate home of PPGT, who received, and continues to retain, 30% of the Medicaid funds at issue in this case. Exh. 2, ¶ 5. PPGT also operates at least 10 clinical locations in the Northern District. Dkt. 143 at 10–11. It should not go unnoticed, however, that the Amarillo Division and the Northern District at large have an interest in decisions about Texas Medicaid claims, as decisions about such claims impact the provision of Medicaid throughout the state of Texas.

### c. This Court gives little weight to the factor considering familiarity with governing law.

"[I]n federal court, familiarity with the governing law is generally given little weight when considering transfer of venue." *Crestview Farms, LLC*, 2021 WL 2434845, at *9 (N.D. Tex. June 15, 2021). This Court is already familiar with the facts and legal issues involved here. And both this Court and the Western District of Texas are just as capable of applying the terms of the federal False Claims Act and the Texas and Louisiana Medicaid fraud statutes. That a now-senior judge within the Western District once presided over a case involving some of the same facts does not support transferring this action.

Defendants yet again erroneously claim that the Western District of Texas is more knowledgeable about the applicable law because Judge Sparks (who has since taken Senior status) once considered the termination of the Defendant Affiliates from

24

the Texas Medicaid program and ordered a preliminary injunction. As discussed in Section II.d.ii, this factor does not weigh in favor of transfer.[17] Even so, while the effect of the preliminary injunction issued by the Western District is an issue here, this Court is able to apply the law governing the legal implications of a vacated injunction. The specific terms of the injunction—prohibiting Texas from removing Defendant Affiliates from Medicaid—is not at issue.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court deny Defendants' Motion to Transfer Venue.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN E. COWLES**
Deputy Attorney General for Civil Litigation

/s/ Raymond Charles Winter
**RAYMOND CHARLES WINTER**
Chief, Civil Medicaid Fraud Division
Texas Bar No. 21791950

**AMY S. HILTON**
Assistant Attorney General
General Litigation Division
State Bar No. 24097834

---

[17] Defendants admit that the final public interest factor—the avoidance of unnecessary problems of conflicts of laws or the application of foreign law—is neutral. Plaintiffs agree that this factor does not support transfer.

25

Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 / Fax (512) 320-0667
Raymond.Winter@oag.texas.gov
Amy.Hilton@oag.texas.gov

**Attorneys for State of Texas**


/s/ Andrew B. Stephens
Andrew B. Stephens
Texas Bar No. 24079396
Heather Gebelin Hacker
Texas Bar No. 24103325
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
(512) 399-3022
andrew@hackerstephens.com
heather@hackerstephens.com

***Attorneys For Relator***

26

**CERTIFICATE OF SERVICE**

I hereby certify that on September 2, 2022, this document was electronically filed and served via the Court's CM/ECF system.

/s/ Andrew B. Stephens
Andrew B. Stephens

27