# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# AMARILLO DIVISION

| | |
|---|---|
| United States of America §§§ *ex rel.* ALEX DOE, Relator, §§§§§ The State of Texas § *ex rel.* ALEX DOE, Relator, §§§§ The State of Louisiana § *ex rel.* ALEX DOE, Relator, §§§ Plaintiffs, §§§ v. §§ Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc., §§§§§§§§ Defendants. §§ | NO. 2:21-CV-00022-Z |

### PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.'S RESPONSE TO POTENTIAL RULE 37(a)(5)(A) SANCTIONS

Relator moved to compel ("Motion") [DE 120] as to three of the 16 requests for production (the "Three RFPs") he had at that time served on Defendant Planned Parenthood Federation of America, Inc. ("PPFA"). (Relator has since then served four additional sets of RFPs). Although the Court granted the Motion, there is no basis for cost shifting under Rule 37. PPFA's Responses to the Three RFPs reflected genuine and reasonable disputes over the allowable scope of Relator's discovery requests, and PPFA was substantially justified in its view that the requests were, among other things, facially overbroad relative to Relator's asserted claims. PPFA agreed to produce documents based on PPFA's good-faith understanding of its obligations under the law and the language of the RFPs.

It would be unjust, moreover, to impose sanctions in circumstances where PPFA sought in good faith to resolve Relator's concerns without court intervention. From the beginning, PPFA agreed to produce documents in response to the Three RFPs, and it volunteered during the parties' meet-and-confer session to search for and produce any further responsive categories of documents identified by Relator's counsel, as well as to consider any custodians or search terms that Relator's counsel might propose. Relator's counsel, however, could not specifically identify during the meet and confer any category of documents he believed fell within the scope of the Three RFPs but outside what PPFA had already committed to produce, and he indicated the parties should reconvene after Relator's receipt of PPFA's production to discuss further areas of inquiry based on mutually-agreed search terms.

Relator then surprised PPFA by changing his position and filing his Motion the very next day, before PPFA had even completed producing the universe of documents that it had agreed to produce. If Relator had instead waited to receive and review PPFA's production and worked in good faith with PPFA to identify additional custodians and search terms, the need for motion

1

practice and Court intervention would potentially have been obviated. The imposition of sanctions would reward a strategy of unnecessarily rushing to the courthouse to litigate good-faith discovery disputes that arise when parties take positions grounded in the applicable law and rules.

PPFA respectfully requests that the Court decline to impose sanctions in these circumstances.

## RELATOR'S DISCOVERY REQUESTS AND PPFA'S RESPONSES

Relator's Motion addressed three RFPs from Relator's first two sets of RFPs to PPFA. On July 11, counsel for PPFA, Texas, and Relator conferred over PPFA's responses to discovery requests from Texas and Relator, as well as Relator's responses to PPFA's requests to Relator (the "Conference").

The requests and responses at issue in the Motion are reproduced below for the Court's convenience. Relator first challenged PPFA's response to RFP No. 7 from Relator's First RFPs:

> **REQUEST FOR PRODUCTION NO. 7:**
> All documents and communications which Defendants have made or obtained concerning Texas Medicaid and/or Louisiana Medicaid, excluding patient charts, and including but not limited to statements, declarations, audio recordings, and video recordings, in any form, from any person concerning Texas Medicaid and/or Louisiana Medicaid.
>
> **RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**
> PPFA objects that this Request (a) is vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case as to PPFA, and (b) seeks irrelevant information. The Request purports to seek the production of all documents and communications from a 12-year period that relate in any way for any reason to Texas or Louisiana Medicaid without regard to whether such documents and communications have anything to do with the parties' claims and defenses in this action. The Request also (i) does not differentiate between the six Defendants, (ii) is duplicative of the Relator's discovery requests to the other five Defendants, and (iii) purports to seek from PPFA documents that are not within PPFA's possession, custody, or control.
> PPFA will conduct a reasonable search for and produce any non-duplicative, non-privileged 2010-present documents exchanged between (i) PPFA and (ii) Planned Parenthood Gulf Coast, Inc., Planned Parenthood

> Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., or Planned Parenthood San Antonio, Inc. (collectively, the "Affiliate Defendants") concerning the Affiliate Defendants' submission of Medicaid claims through, receipt of Medicaid payments from, or actual or potential repayment of Medicaid funds to Texas or Louisiana Medicaid. Under Federal Rule of Civil Procedure 34(b)(2)(B), PPFA will produce documents on a rolling basis, using good-faith and reasonable efforts to be complete by August 1, 2022.

Mot. Ex. B at 9–10 [DE 120-3].

Relator also challenged PPFA's responses to RFP Nos. 2 and 3 from his Second RFPs:

> **REQUEST FOR PRODUCTION NO. 2:**
> All documents and communications between Planned Parenthood Federation of America, Inc. and any Planned Parenthood Affiliate concerning affiliation with Planned Parenthood Federation of America, Inc. and/or with any other person or entity affiliated with Planned Parenthood Federation of America, Inc.
>
> **RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**
> PPFA refers to and incorporates its Preliminary Statement, General Objections, and Objections to Definitions and Instructions as though set forth fully in this Response. In addition, PPFA objects to this Request to the extent it seeks PPFA's sensitive, confidential, or proprietary business information, or PHI. PPFA further objects to this Request as overly broad and unduly burdensome because it purports to seek the production of all documents and communications over a 12-year period that relate in any way to any unspecified "affiliation" between PPFA and any Affiliate Defendant, without regard to whether such documents and communications have anything to do with the parties' claims and defenses in this case.
> Subject to and without waiving its objections herein, PPFA responds as follows: Following a reasonable inquiry and diligent search, PPFA will produce (i) 2010-present accreditation-application materials and other accreditation documents for the Affiliate Defendants, and (ii) non-privileged 2010-present communications relating to the accreditation process for the Affiliate Defendants. Under Federal Rule of Civil Procedure 34(b)(2)(B), PPFA will produce documents on a rolling basis, with all good-faith efforts to ensure that production is complete by August 5, 2022.
>
> **REQUEST FOR PRODUCTION NO. 3:**
> All documents and communications concerning Planned Parenthood Federation of America, Inc.'s relationship with any Planned Parenthood Affiliate, including but not limited to all documents and communications concerning Planned Parenthood Federation of America, Inc.'s support, control, oversight, involvement, direction, management, directives,

3

marketing, communications, requirements, standards, guidelines, policies, accreditation, affiliation, certification, minimum legal requirements, insurance coverage, legal services, legal representation, monetary support, medical services, activities, programs, and/or pronouncements concerning any Planned Parenthood Affiliate.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

PPFA refers to and incorporates its Preliminary Statement, General Objections, and Objections to Definitions and Instructions as though set forth fully in this Response. In addition, PPFA objects to this Request to the extent it (i) seeks PPFA's sensitive, confidential, or proprietary business information, or PHI, or (ii) is duplicative of Request Nos. 1 and 2. PPFA further objects to this Request as overly broad and unduly burdensome because it purports to seek the production of all documents and communications over a 12-year period that relate in any way to any unspecified formal or informal "relationship" between PPFA and any Affiliate Defendant, without regard to whether such documents and communications have anything to do with the parties' claims and defenses in this case.

Subject to and without waiving its objections herein, PPFA responds as follows: Following a reasonable inquiry and diligent search, PPFA will produce:

- Non-privileged, final 2010-present PPFA bylaws, as well as PPFA's non-privileged, final business-associate agreements with the Affiliate Defendants, PPFA's contracts for services with the Affiliate Defendants, and PPFA's revenue-sharing documents applicable to the Affiliate Defendants.

- 2010-present accreditation-application materials and other accreditation documents for the Affiliate Defendants, and non-privileged 2010-present communications relating to the accreditation process for the Affiliate Defendants.

- Non-privileged 2010-present communications between PPFA and the Affiliate Defendants relating to or reflecting any PPFA control over or management of the Affiliate Defendants' submission of Medicaid claims through, receipt of Medicaid payments from, or actual or potential repayment of Medicaid funds to Texas or Louisiana Medicaid.

Under Federal Rule of Civil Procedure 34(b)(2)(B), PPFA will produce documents on a rolling basis, with all good-faith efforts to ensure that production is complete by August 5, 2022.

Mot. Ex. D at 7–9 [DE 120-5].

4

**THE CONFERENCE BETWEEN PPFA'S and RELATOR'S COUNSEL**

At the July 11 Conference, PPFA's and Relator's counsel discussed a number of objections to each side's discovery requests, including PPFA's concern that Relator had not agreed to produce a single document in response to PPFA's RFPs—a position Relator abandoned only after PPFA invested substantial time and resources in moving to compel amended responses and documents. Relator's counsel focused during the meet and confer on PPFA's responses to Relator's interrogatories, but also raised concerns with PPFA's responses to Relator's RFPs—primarily whether PPFA has possession, custody, or control over documents relevant to the provision of healthcare services, something PPFA does not provide. *See* Declaration of Justin R. Chapa ("Chapa Declaration") ¶¶ 2–5.

With regard to the Three RFPs, Relator's counsel raised a specific concern with PPFA's response to First RFP No. 7. Because the RFP sought "[a]ll documents and communications which Defendants have made or obtained . . . in any form, from any person concerning Texas Medicaid and/or Louisiana Medicaid," Relator's counsel asked whether PPFA intended to produce documents internal to PPFA and not only those "exchanged between" PPFA and the Affiliate Defendants. PPFA's counsel clarified that the phrase "exchanged between" was not intended to foreclose production of internal PPFA documents that also "concern[ed] the Affiliate Defendants' submission of Medicaid claims through, receipt of Medicaid payments from, or actual or potential repayment of Medicaid funds to Texas or Louisiana Medicaid." Accordingly, PPFA's counsel confirmed during the Conference that PPFA would search for and produce such internal documents and communications. *See* Chapa Decl. ¶¶ 6–9.

Beyond RFP No. 7, Relator's counsel generally discussed Relator's demands that PPFA produce all relevant and responsive documents concerning Texas or Louisiana Medicaid and to

5

comply with Relator's RFPs "as written." As to that dispute, PPFA reiterated that it did not believe that a request for all documents that in any way "concern" Texas or Louisiana Medicaid to be sufficiently tailored to the claims in the case; and the Rules do not permit fishing-expedition requests. Nonetheless, PPFA reiterated that it was conducting a diligent search for documents and communications related to PPFA's alleged control over and involvement in the Affiliate Defendants' Medicaid-claims processes, including:

- all documents and communications "concerning the Affiliate Defendants submission of Medicaid claims through, receipt of Medicaid payments from, or actual or potential repayment of Medicaid funds to Texas or Louisiana Medicaid," Resp. to First RFP No. 7;

- all documents and communications "between (i) PPFA and (ii) employees of the State of Texas or the State of Louisiana concerning the Affiliate Defendants' submission of Medicaid claims through, receipt of Medicaid payments from, or actual or potential repayment of Medicaid funds to Texas or Louisiana Medicaid," Resp. to First RFP No. 8;

- all "2010-present PPFA bylaws, as well as PPFA's non-privileged, final business-associate documents applicable to the Affiliate Defendants, PPFA's contracts for services with the Affiliate Defendants, and PPFA's revenue-sharing agreements with the Affiliate Defendants," Resp. to Second RFP No. 1;

- all "non-privileged 2010-present communications between PPFA and the Affiliate Defendants concerning the Affiliate Defendants' submission of Medicaid claims through, receipt of Medicaid payments from, or actual or potential repayment of Medicaid funds to Texas Medicaid" or Louisiana Medicaid, Resp. to Second RFP Nos. 4–5; and

- all internal PPFA documents relevant to the above requests (and Second RFP Nos. 2–3).

*See* Chapa Decl. ¶¶ 10–12.

PPFA emphasized that it would consider any additional categories of relevant documents that Relator believed were not covered by PPFA's production commitments, and PPFA's counsel asked Relator's counsel whether there were additional areas of inquiry and production responsive

6

to Relator's claims regarding PPFA's alleged control over the Affiliate Defendants' Medicaid submissions. Notably, Relator's counsel stated that he could not think of any relevant category of documents not included within PPFA's agreed-to collection, and said that he would consider additional potential search terms and reconnect with PPFA's counsel if needed. PPFA's counsel thus was surprised when Relator filed the Motion to Compel the day after the Conference instead of following up directly with PPFA's counsel to further meet and confer in good faith. *See* Chapa Decl. ¶¶ 13–16. In opposing the Motion to Compel, PPFA explained again that it remained willing to meet and confer regarding additional custodians and search terms after Relator reviewed PPFA's initial rolling production. PPFA's Resp. to Mot. at 10.

## LEGAL STANDARD

Rule 37(a)(5)(A) states that sanctions in connection with a motion to compel are not permitted if "the opposing party's nondisclosure, response, or objection was substantially justified," or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(ii), (iii). "A party's discovery conduct is considered 'substantially justified' if it is 'a response to a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'" *Kaneka Corp. v. JBS Hair, Inc.*, 2012 WL 12941120, at *1 (N.D. Tex. Oct. 19, 2012). An objection "need not be correct" to be substantially justified. *Rockhill Ins. Co. v. CFI-Glob. Fisheries Mgmt.*, 2018 WL 10932794, at *2 (D. Colo. Apr. 3, 2018); *Snyder v. Fred Meyer Stores, Inc.*, 2013 WL 3089405, at *5 (W.D. Wash. June 18, 2013) (substantial justification existed when opposing party "had a colorable argument for resisting disclosure"); *see also Hoden v. State Farm Mut. Auto. Ins. Co.*, 2021 WL 4264058, at *3 (D. Colo. Sept. 20, 2021) (similar); *Hill-Rom Servs. v. Tellisense Med., LLC*, 2020 WL 887773, at *5 (S.D. Ind. Feb. 24, 2020)

(similar); *Frazier v. Se. Penn. Transp. Auth.*, 161 F.R.D. 309, 314 (E.D. Pa. 1995) (declining to impose sanctions when opposing party's position was "not completely without basis in the law").

In addition, Rule 37 empowers courts to address situations in which an award of expenses and/or attorney's fees would be unjust, such as when "the movant filed the [Rule 37] motion before attempting in good faith to obtain the disclosure or discovery without court intervention" or when "the prevailing party also acted unjustifiably." Fed. R. Civ. P. 37(a)(5)(A)(i), (Advisory Comm. Notes to 1970 Amendment).

## ARGUMENT

### A.    PPFA's Discovery Responses Were Substantially Justified

PPFA acted in good faith in response to a genuine discovery dispute, and it had a substantial justification for its responses to the Three RFPs.  Before objecting, PPFA carefully considered the disputed issues in the case, the text of the RFPs, and relevant case law.  It concluded in good faith that the disputed requests were facially overbroad, and objected on that basis.  PPFA not only met and conferred in an attempt to resolve any disagreement over the Three Requests, but it also agreed to work with Relator to identify potential additional custodians and search terms.  Relator, however, filed the Motion to Compel before exhausting the meet-and-confer effort.

Federal courts have consistently held that a "request is facially overbroad insofar as it is not limited to the issues in th[e] lawsuit," *Lee v. Aramark Facility Servs.*, 2021 WL 6070448, at *7 (E.D. La. July 15, 2021), and in the context of FCA claims, that "[d]iscovery in *qui tam* actions must be limited and tailored to the specificity of the complaint," *United States ex rel. Grubbs v. Kanneganti*, 2012 WL 13094355, at *5 (E.D. Tex. Mar. 12, 2012); *see also* PPFA's Resp to Mot. at 4–9 [DE 136] (discussing authorities).  For example, as noted in PPFA's Response to the Motion (at 5), a court in the Eastern District of Texas recently denied a plaintiff's motion to compel production of *all* the defendant's "training documents" on the ground that it was facially

8

overbroad. *See Nava v. Allstate Tex. Lloyds*, 2021 WL 7906872, at *8 (E.D. Tex. July 14, 2021). The court concluded that the plaintiff's request should have been more specifically limited to training documents concerning "training specifically designed for claims-handling" in a case where the plaintiff alleged mishandling of an insurance claim. *Id*.; *see also Innovation Scis., LLC v. Amazon.com, Inc.*, 2020 WL 3288082, at *3 (E.D. Tex. June 18, 2020) (refusing to "compel production of a plethora of documents spanning fourteen years" where party's request was not "narrowly tailored" to the articulated issues in the case). Other district courts in the Fifth Circuit agree that it generally is improper to request documents at the highest level of generality. *McPherson v. Bank of Am., N.A.*, 2014 WL 12596464, at *2–3 (N.D. Tex. May 22, 2014) (similar); *Lucero v. Target Corp.*, 2011 WL 13273660, at *3 (W.D. Tex. Jan. 25, 2011) (similar); *Steinberg v. BPO Mgmt. Servs.*, 2010 WL 11618166, at *5 (N.D. Tex. Nov. 8, 2010) (similar).

Courts outside the Fifth Circuit have applied the same principle. In *Gulfside, Inc. v. Lexington Insurance Co.*, for instance, the defendant insurance company sought "all records and electronic media relating to maintenance and repair at the Insured Location," arguing that responsive documents would reveal any pre-existing damage. 2021 WL 1818004, at *5 (M.D. Fla. Mar. 15, 2021). The court found the request "facially overbroad, potentially burdensome, and not proportional to the needs of th[e] litigation insofar is it command[ed] production" of responsive materials regarding "buildings and components *not* subject to [the insurance] claim." *Id.* (emphasis added). Similarly, the court in *Reilly v. Chipotle Mexican Grill, Inc.* held that a request for "*any* documents relating to the 'verification by the Non-GMO Project of *any* of Chipotle's ingredients as non-GMO'" was overbroad because the complaint alleged specifically that Chipotle misled consumers into thinking that its *meat and dairy* products contained only non-GMO ingredients. 2016 WL 10646561, at *16 (S.D. Fla. Sept. 22, 2016) (emphasis added). The court

9

"d[id] not see why verifications on [Chipotle's] other ingredients [were] relevant or relate[d] to the parties' claims or defenses," so it declined to compel disclosures regarding those ingredients. *Id.*

PPFA's thus felt that its objections were well supported, even if the Court ultimately disagreed with PPFA's position. PPFA reasonably relied on such authorities when it objected to Relator's sweeping requests as facially overbroad. Although this case concerns Medicaid, Relator's allegations, claims, and defenses are not about the Medicaid program broadly. As to PPFA, Relator's claims address PPFA's alleged control over tissue-related research conducted by the Affiliate Defendants, their submission of Medicaid claims in the period after one Affiliate Defendant is alleged to have engaged in misconduct involving tissue research, and the Affiliate Defendants' retention of Medicaid reimbursements for services provided under a series of federal and state injunctions. Yet First RFP No. 7 sought from PPFA "*[a]ll* documents and communications" that "concern Texas Medicaid and/or Louisiana Medicaid"—without any limitation.

Read plainly, that request covered a twelve-year period and encompassed *every* document or communication that concerns Texas Medicaid or Louisiana Medicaid to any extent for any reason, even if the subject document or communication has nothing to do with the Affiliate Defendants' submission or payment of Medicaid claims or tissue research—i.e., the predicates for Relator's allegations. *See* Compl. at ¶¶ 1–23 [DE 2]. PPFA reasonably objected under the circumstances. *See, e.g.*, *Kanneganti*, 2012 WL 13094355, at *8 (FCA case; denying in part on overbreadth grounds motion to compel as to requests for complaints about types of physician conduct and billing practices not alleged in the complaint); *see also United States v. Eisenhower Med. Ctr.*, 2020 WL 6826417, at *4 (C.D. Cal. Nov. 20, 2020) (FCA case; denying in part motion

10

to compel to extent it sought Medicaid data for procedures beyond conduct specifically pled in complaint); *Dalitz v. AmSurg Corp.*, 2015 WL 8717398, at *2–3 (E.D. Cal. Dec. 15, 2015) (same); *cf. Valenzuela v. City of Calexico*, 2015 WL 926149, at *3 (S.D. Cal. Mar. 4, 2015) (denying motion to compel discovery about unpled, but similar incidents of alleged harassment and retaliation); *Martin v. Allstate Ins. Co.*, 292 F.R.D. 361, 367 (N.D. Tex. 2013) (observing the Rules have "never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition" and limiting as-written deposition topics to those directly related to the time-period and allegations relevant to plaintiff's alleged termination); *Benge v. Highgate Hldgs.*, 2011 WL 13290463, at *3 (N.D. Tex. Apr. 5, 2011) (denying as "fishing expedition" request for *all* phone records over 13-month period because request wasn't targeted to specific and relevant individuals).

The same is true for PPFA's responses to Second RFP Nos. 2 and 3. Together, those RFPs sought *all* documents or communications that to any extent touch on PPFA's "affiliation" or undefined "relationship" with not just the Affiliate Defendants, but also "any other person or entity affiliated with" PPFA and any "pronouncement concerning any Planned Parenthood Affiliate." PPFA objected to the scope as facially overbroad because the RFPs seemingly sought *every* document or communication that PPFA *ever* exchanged with or about the Affiliate Defendants *or anyone else* generally "affiliated" with PPFA over a twelve-year period. The Motion conspicuously retreated from RFP Nos. 2 and 3 as written, and did not address documents with anyone "affiliated" with PPFA beyond the Affiliate Defendants, *see* Mot. at 5–6 & n.3, tacitly conceding PPFA's overbreadth objection. Because Relator's requests tracked those deemed overbroad in prior cases, PPFA's objections were substantially justified. *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988) ("substantially justified" requires only a "reasonable basis in both law

11

and fact" or "genuine issue" over which "reasonable people could differ as to [the appropriateness of the contested action]"—not "justified to a high degree" (alterations original) (collecting cases).

But PPFA did not stop there and simply stand on its objections. Consistent with its obligations under Rules 26 and 37, PPFA made a point to "answer or respond to the extent that [Relator's requests were] not [facially overbroad]—and explain the scope of what [it was] answering or responding to." *Heller v. City of Dallas*, 303 F.R.D. 466, 488 (N.D. Tex. 2014). In response to Relator's request for documents concerning Texas Medicaid and Louisiana Medicaid, PPFA agreed to conduct a diligent search for and produce any non-privileged documents and communications that concern (1) the Affiliates' submission of Medicaid claims; (2) the Affiliates' receipt of Medicaid payments; or (3) the actual or potential repayment of Medicaid funds to Texas or Louisiana Medicaid. To address Relator's request for documents concerning PPFA's "affiliation" with the Affiliates, PPFA agreed to produce (1) accreditation-application materials and other accreditation documents for all the Affiliates over a twelve-year period (2010 to present), and (2) all non-privileged communications related to the Affiliates' accreditation during that same time period that could be located after a reasonable search. And as for Relator's request for documents concerning PPFA's "relationship" with the Affiliates, PPFA further agreed to produce (1) all 2010-to-present PPFA bylaws, and any business-associate agreements, contracts for services, and revenue-sharing documents between PPFA and the Affiliates from 2010 to present, and (2) all non-privileged PPFA communications with the Affiliates that relate to or reflect PPFA's alleged control over the Affiliates' submission of Medicaid claims, receipt of Medicaid payments, or actual or potential repayment of Medicaid funds to Texas or Louisiana Medicaid, that could be located after a reasonable search.

These commitments to produce responsive materials—and PPFA's repeated offers to consider further production of categories of documents that Relator believed were not encompassed within those already identified by PPFA—demonstrate PPFA's thoughtful efforts to limit its objections to only those aspects of Relator's requests that PPFA believed in good faith ran afoul of well-established restrictions on the scope of discovery.  PPFA also, through its responses to other RFPs that were not the subject of the Motion, reasonably believed that it had addressed the categories of documents relevant to Relator's allegations about PPFA's alleged control over relevant aspects of the Affiliate Defendants Medicaid- and research-related conduct.  Again, Relator's counsel did not identify any specific categories of documents that PPFA did not agree to produce, despite generic assertions in Relator's Motion and Reply [DE 147] that PPFA refused to produce responsive documents.

PPFA's conduct is thus readily distinguishable from the conduct typically sanctioned under Rule 37(a)(5)(A) by courts in the Fifth Circuit.  PPFA did not fail to respond to Relator's discovery requests or to produce documents.  *See, e.g.*, *McAfee v. Schneider Nat'l Carriers, Inc.*, 2015 WL 9319178 (N.D. Tex. Dec. 23, 2015); *Johnson v. City of Baton Rouge*, 2011 WL 709186 (M.D. La. Feb. 18, 2011); *Lechuga v. Magallanes*, 2017 WL 8180782 (W.D. Tex. July 28, 2017); *Hillcrest Ests., LLC v. Nationwide Mut. Ins. Co.*, 2009 WL 605074 (N.D. Miss. Mar. 6, 2009); *Lewis v. Maritech Res., Inc.*, 2009 WL 10678959 (M.D. La. Jan. 26, 2009).  Nor did PPFA use discovery as an opportunity to retaliate against Relator's counsel or engage in *quid pro quo* discussions as a necessary condition to fulfilling its discovery obligations.  *See Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585 (S.D. Tex. 2011) (defendant's counsel canceled deposition as retaliation for termination and cancellation of plaintiffs' depositions); *Todd v. Am. Alternative Ins. Corp.*, 2009 WL 1690521 (S.D. Miss. June 17, 2009) (defendant repeatedly refused to serve privilege log);

13

*Hitachi Med. Sys. Am., Inc. v. Sw. Mississippi Anesthesia, P.A., Inc.*, 2013 WL 3972296 (M.D. La. July 31, 2013) (plaintiff refused to disclose responsive documents unless defendant agreed to last-minute stipulation related to designation of confidential material and non-waiver of protected material); *RPM Pizza, LLC v. Argonaut Great Cent. Ins. Co.*, 2013 WL 5772960 (M.D. La. Oct. 24, 2013) (defendant produced documents only after motion to compel filed).

The common thread across the cases in which sanctions are imposed is a party's objective disregard for the Rules governing its responsibilities during discovery. That comports with the plain text of Rule 37, which specifies that motions to compel "may be made if" a party "fails to answer an interrogatory" or "to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection." Fed. R. Civ. P. 37(a)(3)(B)(iii)–(iv). PPFA did none of those things. Nor can it be said on this record that PPFA acted "evasive[ly]" in its responses or that PPFA made materially "incomplete" disclosures or responses. *See* Fed. R. Civ. P. 37 (a)(4). PPFA forthrightly identified what categories of documents it would produce, and Relator's counsel did not identify any further categories of documents he wished to place at issue.

At bottom, PPFA made good-faith objections to the scope of the Three RFPs and produced documents in response to those and other RFPs. The Court's subsequent granting of Relator's Motion does not establish that PPFA was not substantially justified in its course of conduct, and the applicable case law and Rules indicate that PPFA acted appropriately under the circumstances.

### B. Imposing Sanctions Would Be Unjust In These Circumstances

For similar reasons, it also would be unjust to impose sanctions on PPFA under the circumstances presented here. *See* Fed. R. Civ. P. 37(a)(5)(A)(iii). The prior course of communication between the parties is among the "other circumstances" that courts may consider under Rule 37, *see In re Heparin Prod. Liab. Litig.*, 273 F.R.D. 399, 411 (N.D. Ohio 2011), and here, that consideration militates strongly against sanctions.

During the July 11 Conference, PPFA told Relator it was willing to consider expanding the scope of its production in response to the Three RFPs if Relator identified any other categories of relevant documents that should be collected and produced. PPFA also told Relator it was willing to consider specific search terms that might yield further responsive documents. Counsel for Relator seemed to agree with that approach, which was consistent with the parties' ESI Protocol [DE 130–1], as well as the parties' "collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes," *Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 467 (N.D. Tex. 2015).

PPFA was negotiating in good faith in an effort to resolve any disputes without the Court's intervention. Relator nonetheless—and unexpectedly, from PPFA's perspective—filed the Motion despite PPFA's commitments at the Conference and Relator's seeming acceptance of further mutual efforts to resolve Relator's concerns. To impose sanctions here would inappropriately penalize PPFA for taking a good-faith position regarding the scope of discovery, and encourage parties to take short cuts to Court intervention rather than working through the parties' respective positions during the meet-and-confer process.

## **CONCLUSION**

For the foregoing reasons, PPFA respectfully requests that the Court order that PPFA and Relator bear their own expenses in connection with the Motion.

Dated:   September 7, 2022                              **O'MELVENY & MYERS LLP**

*/s/ Danny S. Ashby*
DANNY S. ASHBY
Texas Bar No. 01370960
dashby@omm.com
JUSTIN R. CHAPA
Texas Bar No. 24074019
jchapa@omm.com
MEGAN R. WHISLER
Texas Bar No. 24079565
mwhisler@omm.com
2501 N. Harwood Street, Suite 1700
Dallas, Texas 75201
T: (972) 360-1900
F: (972) 360-1901

LEAH GODESKY (*pro hac vice*)
lgodesky@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
T: (310) 553-6700
F: (310) 246-6779

**BLACKBURN BROWN LLP**

RYAN PATRICK BROWN
Texas Bar No. 24073967
brown@blackburnbrownlaw.com
1222 S. Fillmore St.
Amarillo, Texas 79101
T: (806) 371-8333
F: (806) 350-7716

*Attorneys for Defendant Planned Parenthood Federation of America, Inc.*

16

## CERTIFICATE OF SERVICE

I certify that on September 7, 2022, the foregoing Response to Relator's Motion for Rule 37(a)(5)(A) Sanctions was filed via the Court's CM/ECF system and, therefore, was served electronically on all counsel of record.

*/s/ Danny S. Ashby*
Danny S. Ashby
