# Exhibit G

**Affiliate Defendants' Opposition to Relator's Motion to Compel
No. 2:21-CV-00022**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| United States of America<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Texas<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Louisiana<br>*ex rel.* ALEX DOE, Relator,<br><br>    Plaintiffs,<br><br>v.<br><br>Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc.,<br><br>    Defendants. | § § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 2:21-CV-00022-Z |

## DECLARATION OF ALFRED CURTIS

I, Alfred Curtis declare and state as follows:

1. I am currently employed by Planned Parenthood Gulf Coast, Inc. ("PPGC") as Chief Operating Officer. I have held this position since September 2020, and prior to that, I served as Chief Financial Officer of PPGC since December 2016. I am over the age of 18 and have personal knowledge of the matters herein or have acquired such knowledge by personally examining the business records kept in the normal course of business by PPGC. If called upon to testify, I could and would testify thereto.

2. I make this declaration in support of Affiliate Defendants' Oppositions to Relator's Second Motion to Compel and Third Motion to Compel ("Motions to Compel") in the

above-captioned case. I am familiar with the scope of discovery sought by Relator's First and Third Set of Requests for Production to PPGC and the Motions to Compel.

3. PPGC maintains documents in a variety of locations and formats, including current data that resides in the email PST files and personal computer drives of 198 current employees, historical data of any one of its 1,294 employees that it has employed since 2010, nearly 1,000 gigabytes of data stored on network drives, and hundreds of boxes and file cabinets containing hard copy documents that are maintained on-site.

4. PPGC has an email retention policy which allows current employees to manually delete emails older than 180 days unless the employee is under a litigation hold. PPGC's IT department typically reviews former employees' emails twice a year and if the user account associated with the emails has been inactive for more than six months, that account may be deleted with approval from the senior leadership team. User accounts for former employees under a litigation hold are not deleted until the hold is lifted.

5. PPGC has no reasonable means of searching across *all* of these available documents, particularly given the unknown likelihood of finding potentially relevant data in the custodial data of every one of its employees or former employees, the likelihood of searching through largely duplicative data between and among custodial and non-custodial files, and the associated costs of collecting, processing, and reviewing such a vast amount of data.

6. In response to Relator's First Requests for Production, PPGC searched for and collected the reasonably accessible custodial data of employees—both current and former—most likely to have relevant and responsive information, and it searched for and collected reasonably accessible, responsive non-custodial data. PPGC collected documents from

its current Vice President for Revenue Cycle Management, who was likely to have documents related to First Set of RFP Nos. 1-8, 11; its former Affiliate Credentialing & Licensing Specialist, whose job responsibilities were assumed by PPGC's Vice President for Revenue Cycle Management upon that former employee's retirement and who was likely to have documents related to First Set of RFP Nos. 1-8, 11; its current Chief Executive Officer, who was likely to have documents related to First Set of RFP Nos. 1, 7, 8, 9; its current Director of Compliance, Risk and Quality Management, who was likely to have documents related to Third Set of RFPs 1-7; and its former Director of Research, who was likely to have documents related to Third Set of RFP No. 8.

7. Through that process, PPGC has already incurred approximately $33,000 in costs in just two months for its e-discovery vendor to collect, process, and produce that data. This figure does not include PPGC's internal costs to collect and produce the data.

8. That figure would grow exponentially if PPGC were required to collect the additional data sought by Relator's Motions to Compel, and it would impose a significant burden on PPGC staff in terms of time and resources, as well. The time it takes to collect a single PPGC custodian's entire custodial email file depends on the length of the custodian's tenure with PPGC, but, for longer-term employees, the collection would take approximately five to nine hours, on average. For 357 custodians, assuming an average of five hours across all employees, regardless of tenure, that would mean nearly 1,785 hours dedicated to the collection, in addition to the vendor costs for the collection, processing, and production of that data. And it would require significant additional time and resources to collect, process, and produce any responsive data

      housed on PPGC's network drives or maintained in hard copy, given the sheer volume of those document repositories.

9. Further, PPGC would need to review for privilege, attorney work product protection, and confidentiality: (1) any newly collected documents, communications, and families of those communications, and (2) if PPGC is required to produce all documents and communications that hit on PPGC's broad search terms, regardless of responsiveness, any documents, communications, and families of those communications that were previously collected and reviewed but determined to be nonresponsive. This would require significant time and resources to complete.

10. For all of these reasons, producing "all documents and communications" responsive to Relator's First and Third Requests for Production dating back to 2010 would be impossible in the time remaining for discovery and the vast majority of these documents would be irrelevant to the issues alleged in the Complaint.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on September 13, 2022 in New York, New York.

_____
Alfred Curtis