# Exhibit I

**Affiliate Defendants' Opposition to Relator's Motion to Compel**
**No. 2:21-CV-00022**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| United States of America<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Texas<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Louisiana<br>*ex rel.* ALEX DOE, Relator,<br><br>    Plaintiffs,<br><br>v.<br><br>Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc.,<br><br>    Defendants. | § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 2:21-CV-00022-Z |

## DECLARATION OF SHEILA MCKINNEY

I, Sheila McKinney, declare and state as follows:

1. I am a current employee and former Chief Operating Officer of Planned Parenthood of Greater Texas, Inc. ("PPGT"). I served as Chief Operating Officer from 2013 to April 2022. I am over the age of 18 and have personal knowledge of the matters herein or have acquired such knowledge by personally examining the business records kept in the normal course of business by PPGT. If called upon to testify, I could and would testify thereto.

2. I make this declaration in support of Affiliate Defendants' Oppositions to Relator's Second Motion to Compel and Third Motion to Compel ("Motions to Compel") in the

above-captioned case. I am familiar with the scope of discovery sought by Relator's First and Third Set of Requests for Production to PPGT and the Motions to Compel.

3. PPGT maintains documents in a variety of locations and formats, including current data that resides in the email PST files and personal computer drives of 208 current employees, historical data of any one of its 987 employees that it has employed since 2012, and an unknown volume of hard copy documents that are maintained in PPGT's Dallas and Austin administrative offices as well as at offsite storage facilities through two separate companies.

4. PPGT does not have an email retention policy. All emails are retained indefinitely unless manually deleted. However, employees under a litigation hold are not permitted to manually delete email.

5. PPGT has no reasonable means of searching across *all* of these available documents, particularly given the unknown likelihood of finding potentially relevant data in the custodial data of every one of its employees or former employees, the likelihood of searching through largely duplicative data between and among custodial and non-custodial files, and the associated costs of collecting, processing, and reviewing such a vast amount of data.

6. In response to Relator's First Requests for Production, PPGT searched for and collected the reasonably accessible custodial data of employees—both current and former—most likely to have relevant and responsive information, and it searched for and collected reasonably accessible, responsive non-custodial data. PPGT collected documents from me, its former Chief Operating Officer, who was likely to have documents related to First Set of RFP Nos. 1, 2, 3, 7, 8, 11 and Third Set of RFPs Nos. 1-7; its current Chief

Executive Officer, who was likely to have documents related to First Set of RFP Nos. 1, 7, 8, 9; and its former Director of Revenue Management , who was likely to have documents related to First Set of RFP Nos. 1, 2, 3, 7, 8, 11.

7. Through that process, PPGT has already incurred approximately $33,000 in costs in just two months for its e-discovery vendor to collect, process, and produce that data. This figure does not include PPGT's internal costs to collect and produce the data.

8. That figure would grow exponentially if PPGT were required to collect the additional data sought by Relator's Motions to Compel, and it would impose a significant burden on PPGT staff in terms of time and resources, as well. It takes approximately 8 hours, on average, to collect a single PPGT custodian's entire custodial email file. For 987 custodians, that would mean almost 8,000 hours dedicated to the collection, in addition to the vendor costs for the collection, processing, and production of that data. And it would require significant additional time and resources to collect, process, and produce any responsive data maintained in hard copy, including the time and expense that PPGT would have to incur to work with the two offsite storage companies to locate and provide hard copy documents to PPGT for collection, processing, and review.

9. Further, PPGT would need to review for privilege, attorney work product protection, and confidentiality: (1) any newly collected documents, communications, and families of those communications, and (2) if PPGT is required to produce all documents and communications that hit on PPGT's broad search terms, regardless of responsiveness, any documents, communications, and families of those communications that were

previously collected and reviewed but determined to be nonresponsive. This would require significant time and resources to complete.

10. For all of these reasons, producing "all documents and communications" responsive to Relator's First and Third Requests for Production dating back to PPGT's inception in 2012 would be impossible in the time remaining for discovery, and the vast majority of these documents would be irrelevant to the issues alleged in the Complaint.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on September 13, 2022 in Katy, Texas.

*Sheila McKinney*
Sheila McKinney