## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| United States of America<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Texas<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Louisiana<br>*ex rel.* ALEX DOE, Relator,<br>        Plaintiffs,<br>v.<br><br>Planned Parenthood Federation of America, Inc.,<br>Planned Parenthood Gulf Coast, Inc., Planned<br>Parenthood of Greater Texas, Inc., Planned<br>Parenthood South Texas, Inc., Planned Parenthood<br>Cameron County, Inc., Planned Parenthood San<br>Antonio, Inc.,<br><br>        Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 2:21-CV-<br>00022-Z<br><br>Date:        September 14, 2022 |

## AFFILIATE DEFENDANTS' OPPOSITION TO
## RELATOR'S THIRD MOTION TO COMPEL DISCOVERY RESPONSES

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 3

LEGAL STANDARD.......................................................................................................... 7

ARGUMENT ...................................................................................................................... 8

I.     Relator's Motion to Compel Is Untimely as to Relator's Request for Documents Outside the Statute of Limitations and RFPs 7, 9, 10, and 11......................................................... 8

II.    Relator Has Not Shown that Affiliate Defendants' Document Productions Are Deficient ............................................................................................................................... 10

III.   The Discovery Sought by Relator Is Unduly Burdensome and Disproportionate to the Needs of the Case............................................................................................. 16

CONCLUSION.................................................................................................................. 19

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Carr v. State Farm Mut. Auto. Ins. Co.*,
    312 F.R.D. 459 (N.D. Tex. 2015) ..........................................................................16

*Days Inn Worldwide, Inc. v. Sonia Invs.*,
    237 F.R.D. 395 (N.D. Tex. 2006) ............................................................................8

*Firefighters' Ret. Sys. v. Citco Grp. Ltd.*,
    Civ. A. 13-373-SDD-EWD, 2018 WL 276941 (M.D. La. Jan. 3, 2018) ................13

*Freedman v. Weatherford Int'l Ltd.*,
    No. 12 Civ. 2121 (LAK) (JCF), 2014 WL 4547039 (S.D.N.Y. Sept. 12, 2014) ....13

*MetroPCS v. Thomas*,
    327 F.R.D. 600 (N.D. Tex. 2018) .............................................................................7

*Moore v. Publicis Groupe*,
    287 F.R.D. 182 (S.D.N.Y. 2012), *adopted sub nom. Moore v. Publicis Groupe
    SA*, No. 11 CIV. 1279 ALC AJP, 2012 WL 1446534 (S.D.N.Y. Apr. 26, 2012)....15

*Rimkus Consulting Grp., Inc. v. Cammarata*,
    688 F. Supp. 2d 598 (S.D. Tex. 2010) ...................................................................16

*Rotstain v. Trustmark Nat. Bank*,
    No. 3:09-CV-2384-N-BQ, 2020 WL 1697990 (N.D. Tex. Jan. 21, 2020),
    *objections overruled*, No. 3:09-CV-2384-N-BQ, 2020 WL 1227063 (N.D.
    Tex. Feb. 20, 2020).............................................................................................7, 10

*VeroBlue Farms USA Inc. v. Wulf*,
    No. 3:19-cv-764-X, 2021 WL 5176839 (N.D Tex. Nov. 8, 2021) ................. *passim*

*Williams v. Las Vegas Metro. Police Dep't*,
    2015 WL 3489553 (D. Nev. June 3, 2015)............................................................8, 9

*Winfield v. City of New York*,
    No. 15-CV-05236 (LTS) (KHP), 2017 WL 5664852 (S.D.N.Y. Nov. 27,
    2017) ................................................................................................................13, 15

**Statutes**

False Claims Act ................................................................................................................8

**Other Authorities**

Fed. R. Civ. P. 26(b)(1) ............................................................................................7

Fed. R. Civ. P.37(a)(3)(B) .......................................................................................7

Fed. R. Civ. P. 37(a)(5)(A)(ii), (iii) ........................................................................7

Sedona Conference, *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 SEDONA CONF. J. 1 (2018) ..........................................................13, 15, 16

Sedona Conference, *The Sedona Conference Best Practices Commentary on the Use of Search & Information Retrieval Methods in E-Discovery,* 15 SEDONA CONF. J. 217, 233 (2014) ...........................................................................................15

Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc. ("Affiliate Defendants") submit this brief in opposition to Relator's Third Motion to Compel Discovery Responses ("Motion to Compel"), Dkt. 154.

## INTRODUCTION

Relator's Motion to Compel hinges entirely on Relator's speculative assertion that, because Affiliate Defendants produced only 857 emails, Affiliate Defendants *must* have failed in some unspecified way to comply with their discovery obligations. But Affiliate Defendants have worked in good faith to meet their discovery obligations despite Relator's overbroad discovery requests, and Relator is unable to identify deficiencies in Affiliate Defendants' search terms or any other aspect of the process by which they identified responsive and relevant documents proportional to the needs of the case. Relator's conclusory Motion to Compel—which is the result of Relator's refusal to participate meaningfully in the meet-and-confer process—does not come close to meeting Relator's burden to identify specific deficiencies in Affiliate Defendants' responses to Relator's First Requests for Production ("First RFPs") before seeking court intervention. The Court should deny Relator's Motion, for the reasons discussed below.

As an initial matter, Relator's Motion is untimely with respect to Relator's request for documents from January 1, 2010 to February 4, 2011 and as to RFPs 7, 9, 10, and 11. This Court's Amended Scheduling Order requires that any motion to compel "be filed by 15 days after the discovery response at issue was served or due to be served." Dkt. 123 at 5. Affiliate Defendants served their responses to Relator's First RFPs on June 27, 2022. The parties met and conferred on July 11, 2022, and Affiliate Defendants made clear they would not produce certain broad categories of documents Relator sought through those RFPs. Yet, Relator did not move to compel

1

until August 31—more than *60 days* after Affiliate Defendants' responses were served and more than 45 days after the meet and confer.  Relator's Motion thus is untimely as to the roughly 13-month time period and those RFPs, and should be summarily denied on that basis.

As to the remainder of Relator's Motion, it lacks any basis in fact or law.  To begin, Relator's description of Affiliate Defendants' productions is incomplete at best.  Affiliate Defendants produced more than 6,000 documents (spanning 175,000 pages), which consist of the 857 emails that Relator mentions as well as 5,143 attachments to those emails and standalone documents that Relator declines to mention.  Affiliate Defendants also have identified at least nearly *1,000 additional responsive emails* but have not produced them because they have been flagged as potentially privileged and are undergoing a further privilege review—a fact of which Relator is also aware.  Any emails in that set that are determined not to be privileged will be produced promptly and privileged documents will be included on a privilege log.  Relator's Motion thus paints a highly misleading picture of Affiliate Defendants' discovery efforts to date.

As described in more detail below, Affiliate Defendants have produced the responsive, non-privileged documents that were located after a reasonable search in the custodial files of Affiliate Defendants' employees identified as most likely to possess relevant information.  When that production was substantially complete, Affiliate Defendants met and conferred with Relator's counsel to discuss any concerns he had with the production.  During that teleconference, Affiliate Defendants offered both to reassess their productions if Relator believed that particular topics or date ranges were missing and to consider including any additional custodians that Relator requested.  Relator, however, did not identify any deficiencies.  And before Affiliate Defendants could even provide their custodian list, Relator filed this Motion to Compel the very next day.

Relator's failure to undertake even the most basic assessment of the sufficiency of Affiliate Defendants' productions is apparent from the face of Relator's Motion. It contains no details whatsoever regarding the categories of documents, date ranges, subject matters, or custodians that Relator believes Relator is entitled to but has not received. Relator cannot have it both ways: either a responding party is best situated to preserve, search and produce its own discovery "unless a specific deficiency is shown in a party's production," *VeroBlue Farms USA Inc. v. Wulf*, No. 3:19-cv-764-X, 2021 WL 5176839, at *9 (N.D Tex. Nov. 8, 2021), or it is not. *See* Relator's Opp'n to PPGC's Mot. to Compel, Dkt. 148 at 4-5 (urging the Court to adopt the *VeroBlue* standard); Court's Order on PPGC's Mot. to Compel, Dkt. 166 at 7 (applying the *VeroBlue* standard). If Relator is entitled to a presumption of good faith in discovery, Affiliate Defendants are, too. Affiliate Defendants have lived up to their discovery obligations, and Relator has failed to identify a single concrete deficiency in their response to Relator's First RFPs.

In addition, the discovery that Relator now asks this Court to compel is wildly disproportionate to the needs of the case. As described in the declarations attached as exhibits to this brief, if Affiliate Defendants were required to produce Relator's desired discovery, the transaction costs of electronic discovery will overwhelm them and disrupt the fair resolution of the parties' dispute in this litigation.

For these reasons and as discussed further below, the Court should deny Relator's Motion to Compel.

## **BACKGROUND**

Relator's First RFPs were served on May 27, 2022. Dkt. 154-1. Affiliate Defendants served Objections and Responses to Relator's First RFPs ("First Responses") on June 27, 2022. Dkt. 154-2. With respect to RFPs 1, 2, 3, 4, 5, 6, 7, 8, 9, and 11, Affiliate Defendants agreed to

3

produce non-privileged, responsive documents—subject to objections related to time period, relevance, and scope—that could be located through a reasonable search. *See, e.g.*, Dkt. 154-2 at 5-14. Affiliate Defendants agreed to produce documents on a rolling basis and committed to all good faith efforts to substantially complete production by August 1, 2022. *Id.* Affiliate Defendants stated that they would not provide documents responsive to RFP 10 because it sought information that was not relevant to any party's claim or defense. *See, e.g.*, *id.* at 14.

On July 11, 2022, the parties met and conferred regarding Affiliate Defendants' First Responses. During that meet and confer, Relator's counsel raised issues regarding Affiliate Defendants' responses to RFPs 7, 9, 10, and 11. With respect to RFPs 7 and 9, which sought documents and communications concerning Texas or Louisiana Medicaid, Affiliate Defendants had agreed to produce "non-privileged documents and communications related to the submission of Medicaid claims to, receipt of Medicaid payments from, or actual or potential repayment of Medicaid funds to Texas or Louisiana Medicaid that [could] be located through a reasonable search." *See* Dkt. 154-2 at 13, 15, 38, 30, 44, 45, 60, 61, 76, 77. Relator's counsel inquired whether Affiliate Defendants would produce all documents and communications that fell within the scope of the RFPs as written. Affiliate Defendants asked Relator's counsel to clarify what documents and communications he believed Relator was entitled to that fell outside the scope of what Affiliate Defendants agreed to provide. Relator's counsel stated that he believed documents related to Affiliate Defendants' enrollment and participation in Texas and Louisiana Medicaid also should be produced and Affiliate Defendants agreed to consider the request. Relator's counsel did not point to any other category of documents that he believed Relator was entitled to that Affiliate Defendants had not agreed to provide, and Affiliate Defendants therefore stated that they were otherwise standing on their objections to RFPs 7 and 9.

4

Affiliate Defendants further confirmed that, consistent with their written objections and responses, they were standing on their objections to RFP 10 and would not produce any documents. *See, e.g., id.* at 15.  They also stated that they were standing on their objections to RFP 11, which seeks all documents and communications regarding each payment Affiliate Defendants received from *any* state or federal program that Affiliate Defendant returned or refunded to the state or federal government. *See, e.g., id.* at 15-16.  Affiliate Defendants stated that, consistent with their written objections and responses, they would limit their response to payments received from federal, Texas, and/or Louisiana Medicaid, but would not produce documents related to other state or federal government programs because only Medicaid is relevant in this litigation.  Relator did not file a motion to compel related to RFPs 7, 9, 10, or 11 (or any of Relator's First RFPs) within 15 days of Affiliate Defendants' First Responses or even within 15 days of the July 11, 2022 meet and confer.

Affiliate Defendants then proceeded to finalize the collection of documents from custodians identified as most likely to have responsive information, run broad search terms (such as "CMS," "managed care", "health w/2 'human services,'" to name a few), and review the resulting documents (which included approximately 18,000 emails plus their family members), that hit on those terms.  Affiliate Defendants also identified and collected non-custodial responsive documents.  Affiliate Defendants ultimately produced approximately 6,000 documents responsive to Relator's First RFPs, spanning more than 175,000 pages.[1]

---

[1] As of filing, Affiliate Defendants completed additional validation of their predictive coding model and are preparing to produce a limited number of additional documents.  Affiliate Defendants informed Plaintiffs about the additional validation by email dated September 7, 2022.

After Affiliate Defendants substantially completed their productions, the parties again met and conferred on August 30, 2022 to discuss the search terms and methodology that Affiliate Defendants utilized.  Relator's counsel acknowledged that he had no concerns about Affiliate Defendants' search terms, but he accused Affiliate Defendants of withholding responsive documents based on the percentage of documents identified as responsive, which he incorrectly believed to be 1%.  Affiliate Defendants explained that Relator's counsel seemed to misunderstand the search methodology they had employed, and they agreed to promptly provide additional information.  Affiliate Defendants stated that the data they collected, reviewed, and produced consisted of emails, non-email family members, and other standalone non-email documents, and that the responsiveness rate was higher than 1%.

Affiliate Defendants asked Relator's counsel what types of documents or date ranges he thought were missing so that Affiliate Defendants could look into whether there were gaps in their production.  Relator's counsel could not identify what, if anything, was missing from the production, again simply stating that the size of the production suggested that relevant documents had been withheld.  Affiliate Defendants agreed to provide Relator with a list of custodians from which Affiliate Defendants collected data and to consider any additional custodians Relator requested.   Notwithstanding Affiliate Defendants' willingness to provide this additional information and to consider expanded search methods, Relator filed a motion to compel the next day.[2]

---

[2]  Relator's refusal to meaningfully engage in the meet and confer process stands in stark contrast to his co-plaintiff, the State of Texas.  Although Affiliate Defendants and Texas disagree on many discovery issues, they have attempted in good faith to resolve them without judicial intervention— sometimes successfully, sometimes not.  For example, Texas requested additional information regarding Affiliate Defendants' search and production methodology, some of which Affiliate Defendants have provided and some of which they are still working to provide.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 26(b)(1), a party "may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Courts analyze six factors to determine whether discovery requests are proportional to the needs of the case: (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(1); *MetroPCS v. Thomas*, 327 F.R.D. 600, 609 (N.D. Tex. 2018) (citation omitted).

Federal Rule of Civil Procedure 37(a)(3)(B) provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection."  Per this Court's Amended Scheduling Order, a party must file "[a]ny motion to compel discovery or for a protective order . . . 15 days after the discovery response at issue was served or due to be served."  Dkt. 123 § 6(A).  "The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence." *Rotstain v. Trustmark Nat. Bank*, No. 3:09-CV-2384-N-BQ, 2020 WL 1697990, at *3 (N.D. Tex. Jan. 21, 2020) (citation omitted), *objections overruled*, No. 3:09-CV-2384-N-BQ, 2020 WL 1227063 (N.D. Tex. Feb. 20, 2020).  But even if the moving party meets that burden and a motion to compel is granted, the moving party is not entitled to its fees and costs if the responding party's nondisclosure, response, or objection was "substantially justified" or if the "circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(A)(ii), (iii).

## ARGUMENT

I. **Relator's Motion to Compel Is Untimely as to Relator's Request for Documents Outside the Statute of Limitations and RFPs 7, 9, 10, and 11**

The Court's Amended Scheduling Order provides that "any motion to compel discovery . . . must be filed by 15 days after the discovery response at issue was served or due to be served." Dkt. 123 at 5. Relator filed his motion to compel on August 31, more than two months after Affiliate Defendants' June 27 responses and more than seven weeks after the parties' July 11 meet and confer regarding those responses. Accordingly, Relator's motion is untimely with respect to certain requests. *See, e.g.*, *Days Inn Worldwide, Inc. v. Sonia Invs.*, 237 F.R.D. 395, 396–99 (N.D. Tex. 2006) (denying motion to compel as untimely because it was filed after deadline set in scheduling order); *see also Williams v. Las Vegas Metro. Police Dep't*, 2015 WL 3489553, at *1 (D. Nev. June 3, 2015) ("Untimeliness is sufficient ground, standing alone, to deny a discovery motion." (citations omitted)).

Though his motion only specifically mentions RFP 7, Relator appears to be seeking an order compelling Affiliate Defendants to produce all documents and communications responsive to each and every one of his First RFPs, dating back to 2010. Regarding the time period for discovery, Affiliate Defendants clearly stated in their First Responses that they would not produce documents from January 1, 2010 to February 4, 2011 because "the greatest statute of limitations applicable to a False Claims Act case is ten (10) years, and Relator filed his Complaint on February 5, 2021." Dkt. 154-2 at 4, 21, 36, 52-53, 68-69. Similarly, Affiliate Defendants' First Responses made clear that they were refusing to produce documents in response to RFP 10. *See id.* at 15, 30-31, 46, 62, 78. Therefore, the deadline for Relator to file a motion to compel on the time period and on RFP 10 was July 12. That deadline came and went without a motion to compel from Relator; his current motion is untimely as to those issues.

8

As for RFPs 7 and 9, Affiliate Defendants' First Responses made clear that Affiliate Defendants would limit their production to "non-privileged responsive documents and communications related to the submission of Medicaid claims through, receipt of Medicaid payments from, or actual or potential repayment of Medicaid funds to Texas or Louisiana Medicaid" that could be located through a reasonable search. *Id.* at 13, 15, 38, 30, 44, 45, 60, 61, 76, 77.[3] Therefore, the deadline for Relator to file a motion to compel on RFPs 7 and 9 was July 12. Relator did not file by that deadline, so his current Motion to Compel is untimely as to those RFPs.

With respect to RFP 11, Affiliate Defendants made clear during the meet and confer that they would produce documents responsive to RFP 11 only to the extent they related to federal, Texas, or Louisiana Medicaid. Therefore, at best, the deadline to move to compel on RFP 11 was July 26 (15 days after the meet and confer). That deadline too came and went without a motion to compel from Relator, so his current motion is untimely as to those RFPs.

Accordingly, the Court should deny Relator's Motion as untimely to the extent it seeks to compel production of (1) documents dated February 4, 2011 or earlier; (2) documents responsive to RFP 10; (3) documents responsive to RFPs 7 or 9 other than those categories of documents Affiliate Defendants agreed to produce in their First Responses; and (4) documents responsive to RFP 11 other than those categories Affiliate Defendants agreed to produce in their First Responses and as discussed during the parties' July 11 meet and confer.

---

[3] In response to Relator's request during the July 12 meet and confer, Affiliate Defendants also produced documents related to their enrollment and participation in Texas and Louisiana Medicaid.

9

## II.   Relator Has Not Shown that Affiliate Defendants' Document Productions Are Deficient

Relator has failed to identify a single actual deficiency in Affiliate Defendants' productions, let alone done so with the specificity that this Court has made clear is required. Relator's Motion should therefore be denied in its entirety.

As an initial matter, Relator's Motion fails because Relator does not satisfy his threshold burden to establish relevance. *See Rotstain*, 2020 WL 1697990, at *3 (moving party must establish relevance); *see also* Court's Order on PPGC's Mot. to Compel to Relator, Dkt. 166 at 6 (same). Although Relator appears to be moving to compel production of every document responsive to each of Relator's RFPs, the only RFP Relator mentions is RFP 7.  And even then, Relator does not argue that *every* document related to Texas and Louisiana Medicaid, which is what RFP 7 requests, is relevant to Relator's claims.  Instead, Relator's Motion effectively concedes that only documents related to the following topics are relevant: "(1) the terms and conditions of [Affiliate Defendants'] enrollment and participation in Texas Medicaid and/or Louisiana Medicaid; (2) [Affiliate Defendants] submission of claims for payment from Texas Medicaid and/or Louisiana Medicaid; [and] (3) [Affiliate Defendants'] knowledge of violations of Texas and/or Louisiana Medicaid rules, including the obligation to repay the government Medicaid funds received from Texas Medicaid and/or Louisiana Medicaid."  Dkt. 154 at 6.[4]

---

[4] Relator also contends that documents related to "PPFA's direction and control of the business and operations of [Affiliate Defendants], including their participation in Texas and/or Louisiana Medicaid; and . . . the significant financial relationship between PPFA and [Affiliate Defendants]" are relevant. *Id.*  But Relator's First Requests do not request those documents, and Relator cannot move to compel something Relator has not asked for.

Affiliate Defendants have fully satisfied their obligation to produce non-privileged responsive documents related to those three categories.  Affiliate Defendants produced every non-privileged relevant document that hit on the search terms Affiliate Defendants employed (to which Relator did not object) that was reviewed.[5]  Contrary to Relator's speculative accusation, Affiliate Defendants are not withholding any non-privileged, relevant documents that hit on those search terms.  The reality is that there is a host of documents "related to Medicaid" or that otherwise hit on Affiliate Defendants' broad search terms that have *nothing* to do with the issues in this case.  Production of those documents is not in any party's interest and plainly is not required by the Federal Rules.  To name just a few examples, "false positive" hits included (a) emails about unrelated litigation, such as employment matters and challenges to Texas's Senate Bill 8 or other abortion bans; (b) documents related to COVID-19, including guidance from HHS and Texas regarding COVID-19 testing and vaccinations; (c) third-party company newsletters and advertisements; and (d) documents related to routine enrollment of providers other than Affiliate Defendants in Texas and Louisiana Medicaid.  While those documents may fall within Relator's RFP 7 as written given its overbreadth, they are wholly irrelevant to this case and should not be produced.

Relator's other RFPs, as written, similarly call for production of irrelevant information.  For example, RFP 1 seeks all documents and communications related to Affiliate Defendants' provision of services billed to Texas Medicaid, irrespective of whether those documents reflect the

---

[5] As noted above and as Plaintiffs are aware, Affiliate Defendants used predictive coding to identify certain documents for review and are preparing to produce a small number of additional documents identified as part of the validation process of their predictive coding model.  Affiliate Defendants also are preparing information they agreed to share with Plaintiffs regarding their predictive coding model now that the validation is complete.

submission of claims or Fee for Service billing.[6]  Dkt. 154-1 at 10.  RFPs 8 and 9 call for all documents and communications between Affiliate Defendants and any former or current employee of Texas or Louisiana "concerning Texas Medicaid and Louisiana Medicaid."  *Id.* at 11.  Both of these RFPs, as written, suffer from the same overbreadth flaws as RFP 7 and would bring in a host of irrelevant information that may reference "Medicaid" but that has no relevance to the claims and defenses in this case.  And RFP 11 seeks information related to payments from *any* state and federal program, but only payments received from the federal government or the States of Texas and Louisiana related to *Medicaid* are relevant to this case.  *Id.* at 12.  Affiliate Defendants agreed to produce documents responsive to these RFPs that were relevant to the parties' claims and defenses, and they have done so.  They have also produced relevant documents responsive to Relator's other RFPs.

Relator asserts that Affiliate Defendants' productions were deficient, but Relator does not point to a single category of documents that Relator believes Relator is entitled to but has not received.  Instead, Relator's position boils down to a purely speculative belief that Affiliate Defendants' document collection and production was incomplete because of the size of the production (which Relator misstates in any event).  Relator's complaint thus appears not to be about the substantive scope of Affiliate Defendants' productions, but instead the methods they used to locate, review, and produce documents.  This Court's prior decisions control the outcome of such "discovery process" disputes.

As Relator argued in his Response to PPGC's Motion to Compel Discovery Responses to Relator, Dkt. 148 at 4-5 ("Response to PPGC's Motion"), it is "not the court's role to dictate how

---

[6] Affiliate Defendants have already produced all available reports of their Medicaid claims submitted to Texas and Louisiana during the relevant time period.

12

a party should search for relevant information absent a showing that the party has abdicated its responsibility," *VeroBlue Farms*, 2021 WL 5176839, at *9 (cleaned up), because "the producing party is better equipped than the court to identify and utilize the best process for producing their own ESI consistent with their obligations under the Federal Rules of Civil Procedure," *Winfield v. City of New York*, No. 15-CV-05236 (LTS) (KHP), 2017 WL 5664852, at *9 (S.D.N.Y. Nov. 27, 2017). *See also, e.g.*, *VeroBlue Farms*¸ 2021 WL 5176839, at *9 ("A responding party is best situated to preserve, search, and produce its own [electronically stored information]," (cleaned up and quoting *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 SEDONA CONF. J. 1 (2018) ("The Sedona Principles"))); *cf. Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, Civ. A. 13-373-SDD-EWD, 2018 WL 276941, at *4 (M.D. La. Jan. 3, 2018) ("A responding party is generally entitled to select the custodians most likely to possess responsive information."). To that end, as the Court explained in its Order on PPGC's Motion to Compel to Relator, Dkt. 166 at 6-7, a party challenging the sufficiency of the opposing party's production must "make [a] showing of a *specific or material deficiency* in the other party's production . . . 'through the documents that have been produced'" that (1) "allows the Court to make 'a reasonable deduction that other documents may exist or did exist and have been destroyed'" or (2) shows "the existence of additional responsive material,'" *VeroBlue Farms*, 2021 WL 5176839, at *9 (emphasis added) (quoting *Hubbard v. Potter*, 247 F.R.D. 27, 29, 31 (D.D.C. 2008); *see also, e.g.*, *Freedman v. Weatherford Int'l Ltd.*, No. 12 Civ. 2121 (LAK) (JCF), 2014 WL 4547039, at *2 (S.D.N.Y. Sept. 12, 2014) (a party must make "*some showing* that a producing party's production has been incomplete" before "a court may order discovery designed to test the sufficiency of that party's discovery efforts in order to capture additional relevant material." (emphasis added)).

13

Relator has not made this showing.  Relator has not pointed to a single type of document or date range that Relator has not received, nor has Relator pointed to a single custodian that Relator believes should have been collected from but was not.  Relator's argument is simply that since 857 emails is less than Relator apparently was expecting (again, ignoring the many other documents produced and the fact that at least nearly 1,000 additional emails were identified as responsive but potentially privileged),[7] there must be something wrong with Affiliate Defendants' document production.  Dkt. 154 at 3.  This does not come close to showing a "specific or material deficiency in the production," *VeroBlue Farms*, 2021 WL 5176839, at *9.  Instead, it is only "speculat[ion] that responsive documents" have been missed.  *See* Court's Order on PPGC's Mot. to Compel to Relator, Dkt. 166 at 7.

Relator's failure to make the necessary showing is not due to a lack of information. Affiliate Defendants have already provided to Relator (and Texas) information about the processes they followed to search for, collect, and produce responsive documents, and Relator has pointed to no purported deficiency in those processes.  More specifically:

- Affiliate Defendants identified custodians believed to have responsive documents, and Relator has not identified any custodian that Relator believes should have been identified but was not.

- Affiliate Defendants used Relator's First RFPs to create a list of broad search terms and Relator has not objected to the search terms.

---

[7] Affiliate Defendants' validation process, *see supra* n.1, also identified additional responsive but potentially privileged documents that will be reviewed and logged or produced appropriately.

- Affiliate Defendants reviewed the resulting universe of documents that hit on search terms plus their family members, as well as a separate set of documents that were identified for review using predictive coding.

- Affiliate Defendants produced responsive non-privileged documents.

- Affiliate Defendants withheld potentially privileged documents for further review and production (in full or redacted form) or privilege logging.

As expected when using broad search terms, there was a substantial volume of "false positive" hits, meaning that documents were included in the review pool because they hit on a search term but, upon review, were entirely irrelevant and thus not produced. *See supra* at 11 (describing irrelevant documents that hit on search terms and were not produced); *Moore v. Publicis Groupe*, 287 F.R.D. 182, 191 (S.D.N.Y. 2012), *adopted sub nom. Moore v. Publicis Groupe SA*, No. 11 CIV. 1279 ALC AJP, 2012 WL 1446534 (S.D.N.Y. Apr. 26, 2012) (noting the problem that keywords are often "over-inclusive, that, is, they find responsive documents but also large numbers of irrelevant documents" causing review to be "quite costly"); The Sedona Conference, *The Sedona Conference Best Practices Commentary on the Use of Search & Information Retrieval Methods in E-Discovery*, 15 SEDONA CONF. J. 217, 233 (2014) (discussing the "potentially huge" problem of false positives with traditional keyword searches). Relator has provided no support for his position that Affiliate Defendants are withholding responsive documents. Granting Relator's Motion to Compel "without any factual reason to believe that any [responsive] documents . . . have been withheld would send us off on a tangent that might never end." *Winfield*, 2017 WL 5664852, at *9. Consistent application of the law requires denial of Relator's Motion.

### III.    The Discovery Sought by Relator Is Unduly Burdensome and Disproportionate to the Needs of the Case

"Electronic discovery burdens should be proportional to the amount in controversy and the nature of the case. Otherwise, transaction costs due to electronic discovery will overwhelm the ability to resolve disputes fairly in litigation." *Winfield*, 2017 WL 5664852, at *9 (quoting The Sedona Principles).  Relator argues that Relator "'reasonably limited the scope of discovery' to the time period alleged in Relator's Complaint, the parties to this lawsuit, the Texas and Louisiana Medicaid programs, and Relator's allegations." Dkt. 154 at 8.  But, as discussed above, even if Relator had timely moved to compel the production of documents dated before February 2011, every such document would relate to matters outside the FCA's statute of limitations, and thus their production is plainly disproportional to the needs of the case, given the substantial burden involved in their collection.  Similarly, Relator's request for "all documents and communications" related to Texas and Louisiana Medicaid is not reasonably limited to only documents relevant to a party's claim or defense, and again would result in undue burden on Affiliate Defendants.[8]

If Affiliate Defendants were required to produce Relator's desired discovery, the transaction costs of electronic discovery will disrupt the fair resolution of the parties' dispute in this litigation.  *See Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 613 n.8

---

[8]  Relator's insistence that Affiliate Defendants produce *all* documents related to Medicaid, even if they do not actually relate to any of the claims or defenses in this case, is difficult to square with Relator's prior representations to this Court in opposition to the Defendants' Motion to Extend the Schedule that Relator has "made efforts to limit the issues in this case and . . . worked to refine and limit the discovery [he has] propounded." Dkt. 117 at 8.  It is also worth noting that Relator's Motion to Compel focuses on only the first of what is now *six* sets of RFPs Relator has served on Affiliate Defendants over the last three months spanning 36 broad categories of documents, each set requiring Affiliate Defendants to revisit their document identification, collection, and production efforts and thus compounding the cost and burden of responding.

(S.D. Tex. 2010) (citing The Sedona Principles).  Consistent with the requirement that "[a] party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request," *Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 468 (N.D. Tex. 2015) (quoting *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006)), each Affiliate Defendant has provided the Court with a declaration from a representative knowledgeable about the cost and burden of complying with Relator's First RFPs that explains the undue burden each Affiliate Defendant would suffer if Relator's Motion is granted.  Those declarations explain that:

- PPGC, PPGT, and PPST[9] have already incurred in just two months more than $33,000 each—meaning nearly $100,000 total—in vendor costs associated with the collection, processing, review, and production of documents responsive to Relator's RFPs, and that figure will only continue to grow as Affiliate Defendants respond to Relator's five additional sets of RFPs served to date.  *See* Ex. A at ¶¶ 7-8; Ex. B at ¶¶ 7-8; Ex. C at ¶¶ 7-8; Ex. D at ¶¶ 7-8; Ex. E at ¶¶ 7-8.  That figure will increase exponentially if Relator's Motion to Compel is granted, given the custodial and non-custodial data Affiliate Defendants would have to search for, collect, process, review, and produce, as discussed next.

- Each Affiliate Defendant has hundreds of current and former employees, and it would take each Affiliate Defendants hundreds to *thousands* of hours just to collect their employees'

---

[9]  PPST covers the vendor costs of its subsidiaries PPCC and PPSA.  In addition, PPCC and PPSA do not have employees.  All administrative and clinical staff for those two affiliates are PPST employees.

entire custodial email files for processing and review.  *See* Ex. A at ¶¶ 3, 8; Ex. B at ¶¶ 3, 8; Ex. C at ¶¶ 3, 8; Ex. D at ¶¶ 3, 8; Ex. E at ¶¶ 3, 8.

- Each Affiliate has a significant volume of hard copy documents that would have to be searched, collected, processed, reviewed, and produced if the Court grants Relator's Motion to Compel, and the search and collection alone would impose a significant burden on the Affiliate Defendants' time and resources that is difficult to adequately quantify.  *See* Ex. A at ¶¶ 3, 8-9; Ex. B at ¶¶ 3, 8-9; Ex. C at ¶¶ 3, 8-9; Ex. D at ¶¶ 3, 8-9; Ex. E at ¶¶ 3, 8-9. It would be impossible for Affiliate Defendants to comply with such an Order and produce Relator's requested discovery within the time remaining for discovery.  Ex. A at ¶¶ 9-10; Ex. B at ¶¶ 9-10; Ex. C at ¶¶ 9-10; Ex. D at ¶¶ 9-10; Ex. E at ¶¶ 9-10.

Thus, the discovery Relator seeks in his Motion to Compel is not proportional to the needs of the case.  Relator's RFPs will undoubtedly capture tens of thousands, if not hundreds of thousands, of documents that bear no relation to the claims and defenses in this case, as well as materials that are duplicative of what has already been collected and produced.  If Affiliate Defendants were required to add even just a few additional custodians or produce all documents that hit on its broad search terms regardless of whether they are actually responsive to Relator's RFPs or relevant to this litigation, those documents would still require a privilege and confidentiality review.  This would be a significant undertaking in terms of both time and money, and it would incredibly burdensome, if not impossible, to accomplish within the current discovery schedule, particularly given that Affiliate Defendants also are working to respond to and produce documents responsive to Relator's five other sets of RFPs served in the last two months.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny Relator's Third Motion to Compel

Discovery, Dkt. 154.

Dated:  September 14, 2022

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER
LLP

By:    */s/ Tirzah S. Lollar*
Craig D. Margolis
Craig.Margolis@arnoldporter.com
Tirzah S. Lollar
Tirzah.Lollar@arnoldporter.com
Christian Sheehan
Christian.Sheehan@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.6127
Fax: +1 202.942.5999

Christopher M. Odell
Texas State Bar No. 24037205
Christopher.Odell@arnoldporter.com
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: +1 713.576.2400
Fax: +1 713.576.2499

Ryan Patrick Brown
Texas State Bar No. 24073967
brown@blackburnbrownlaw.com
1222 S. Fillmore
Amarillo, TX 79101
Tel: (806) 371-8333
Fax: (806) 350-7716

*Attorneys for Defendants Planned
Parenthood Gulf Coast, Inc., Planned
Parenthood of Greater Texas, Inc.,
Planned Parenthood South Texas, Inc.,
Planned Parenthood Cameron County,
and Planned Parenthood San Antonio*

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 14, 2022, the foregoing document was electronically

filed with the Clerk of Court using CM/ECF.


*/s/ Tirzah S. Lollar*
Tirzah S. Lollar