# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# AMARILLO DIVISION

| | | |
|---|---|---|
| United States of America<br>*ex rel.* ALEX DOE, Relator, | § § § | |
| The State of Texas<br>*ex rel.* ALEX DOE, Relator, | § § § § | NO. 2:21-CV-22-Z |
| The State of Louisiana<br>*ex rel.* ALEX DOE, Relator, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | |
| Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc., | § § § § § § § § | |
| Defendants. | § | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE**

## TABLES OF CONTENTS

                                                                                                                                                           Page

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT ...................................................................................................................................1

      I.      A DIVISION-LEVEL ANALYSIS OF THE § 1404(A) FACTORS IS REQUIRED. ...............................................................................................................1

      II.     PLAINTIFFS IDENTIFY NO DILATORY MOTIVE OR PREJUDICE. .............2

      III.    THE PRIVATE AND PUBLIC INTEREST FACTORS FAVOR TRANSFER. ....................................................................................................................4

            A.      The Relative Ease of Access to Sources of Proof Favors the Austin Division. ....................................................................................................................4

            B.      Only the Austin Division Has Absolute Subpoena Power ...........................5

            C.      Austin Is a Clearly-More-Convenient Forum For All Identified Witnesses. ...................................................................................................6

            D.      Citizens of the Amarillo Division Do Not Have a Localized Interest in This Case ..................................................................................9

            E.      The Austin Division's Familiarity and Involvement Favor Transfer. ......................................................................................................9

            F.      The June 2022 Judicial Caseload Statistics Support Transfer. ...................10

CONCLUSION ..............................................................................................................................10

**PRELIMINARY STATEMENT**

Plaintiffs ask this Court to exercise its "discretion" to deny transfer to a clearly more convenient forum, yet that discretion is bounded "by the text of § 1404(a) and by the precedents of the Supreme Court and of [the Fifth Circuit] that interpret and apply [it]." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (*en banc*) ("*Volkswagen II*"). A division-specific analysis of the § 1404(a) factors is required, and Plaintiffs have not identified a single tie to the Amarillo Division that outweighs the numerous ties to the Austin Division. Plaintiffs offer no good reason for hauling every witness to Amarillo when *one third* of the identified witnesses live in Austin,[1] and every Texas-resident witness is *hundreds of miles* closer to Austin. Plaintiffs' delay-based arguments are not supported by precedent or evidence. And this Court's adjudication of motions to dismiss and discovery disputes does not outweigh the familiarity gained by the Austin Division following an evidentiary hearing that resulted in the preliminary injunction at issue here. The Court should grant the Motion to protect the parties, witnesses, and Texas taxpayers against the unnecessary inconvenience of litigating in a remote forum with no relationship to this case.

**ARGUMENT**

**I.    A DIVISION-LEVEL ANALYSIS OF THE § 1404(A) FACTORS IS REQUIRED.**

Plaintiffs argue (at 3) that a district-level analysis of the § 1404(a) factors is required because "venue is proper in any division of a district where the general venue statute allows venue to lie." But Defendants are challenging the *convenience*—not the propriety—of venue. Plaintiffs wrongly conflate the "preliminary question" under § 1404 with the eight-factor analysis required

---

[1] And there are likely far more. As of the Motion's filing, Texas had not identified witnesses with relevant knowledge at HHSC or HHSC-OIG. *See* Mot. App. 340–41. However, Texas has since provided Defendants with a list of 21 proposed HHSC and HHSC-OIG custodians for document discovery, which included (among others) the Austin-based individuals identified in the Motion: Stephanie Stephens, Charles Smith, Cecile Young, Stuart Bowen, and Ted Spears.

1

by § 1404(a). Only the latter is at issue.[2] While the venue statute may "speak[] in terms of *districts not divisions*," "[w]hether the case might be more conveniently prosecuted in one *division* versus another [*division*] is a question left to analysis under 28 U.S.C. § 1404(a)." *Says v. M/V David C. Devall*, 161 F. Supp. 2d 752, 753 (S.D. Tex. 2001). As *Volkswagen II* instructs, this Court must determine which division—the Austin Division or the Amarillo Division—would be more convenient. *See* 545 F.3d at 315–18 (comparing Marshall Division to Dallas Division); *see also, e.g., Venable's Constr. Inc. v. Oneok Arbuckle II Pipeline, LLC*, 2020 WL 2841398, at *1 (N.D. Tex. June 1, 2020) (Kacsmaryk, J.) (similar). Any ties to *other* divisions are irrelevant.

## II. PLAINTIFFS IDENTIFY NO DILATORY MOTIVE OR PREJUDICE.

Plaintiffs' timeliness challenge is equally unfounded. Section 1404 "does not contain a deadline for filing the motion to transfer venue, and a motion to transfer venue under § 1404 can be made at any time."[3] *Watson v. Fieldwood Energy Offshore, LLC*, 181 F. Supp. 3d 402, 411 n.7 (S.D. Tex. 2016). "The only jurisprudential limitation is that the motion be filed with reasonable promptness." *Id*. Claims of delay are only deemed "relevant 'in rare and special circumstances'" where the non-movant shows "by clear and convincing evidence" that the motion was filed as a dilatory tactic or that the non-movant will be prejudiced by the alleged delay. *In re Radmax, Ltd.*, 720 F.3d 285, 289 (5th Cir. 2013); *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003). Such circumstances are "present where 'a transfer [of] venue would cause[] yet another delay in [an already] protracted litigation,'" *Radmax*, 720 F.3d at 289, or the motion is filed on the "eve of trial," *United Galvanizing, Inc. v. Imperial Zinc Corp.*, 2010 WL 4393990, at *3–5 (S.D. Tex. Oct. 29,

---

[2] Plaintiffs concede (at 2 n.2) that this case could have been brought in the Austin Division.

[3] "[U]nlike a motion to dismiss for improper venue, there is absolutely no reason why a litigant seeking a Section 1404(a) transfer must move before the original answer." *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 760 (E.D. Tex. 2000). Nor have Plaintiffs pointed to any authority requiring Defendants to seek a venue transfer in an answer or any prior filing.

2010). Plaintiffs have not shown that such "rare and special circumstances" exist here.

The Motion was not filed on the eve of trial and this litigation is not "protracted" in the manner contemplated by the Fifth Circuit. The transfer motion in *Peteet v. Dow Chemical Co.* was filed *18 months* after the case was remanded, 868 F.2d 1428, 1436 (5th Cir. 1989), and "after almost two years of litigation" in *Utterback v. Trust National Bank*, 716 F. App'x 241, 245 (5th Cir. 2017). The Motion here was filed in less than half that time, most of which was spent addressing whether Plaintiffs' claims could proceed past the pleading stage. The Court ruled on the motions to dismiss on April 29, 2022 [DE 71], and Defendants filed the Motion within 30 days after the Court denied reconsideration of that decision on July 13, 2022 [DE 121]. At that time, the parties were only a few months into discovery with trial over eight months away.[4] Numerous courts have granted transfer motions under substantially similar—and much lengthier—circumstances. *See*, *e.g.*, *PrevMed, Inc. v. MNM-1997, Inc.*, 2015 WL 5771822, at *6–7 (N.D. Tex. Sept. 30, 2015) (transfer motion filed after motion-to-dismiss ruling and nine months after case filed); *Walsh v. Microsoft Corp.*, 2014 WL 12600740, at *1 (S.D. Tex. Mar. 21, 2014) (same; six months after case filed).[5]

The decades-old case that Plaintiffs rely upon does not reflect the burden or evidentiary requirements of current precedent.[6] *Compare FTC v. Multinet Mktg., LLC*, 959 F. Supp. 394 (N.D. Tex. 1997), *with Radmax*, 720 F.3d at 289. Nor is Plaintiffs' *forum non conveniens* case law

---

[4] Discovery did not commence—other than initial disclosures—until after entry of the Scheduling Order on May 11, 2022 [DE 72], and FCA cases "requir[e] extensive discovery," Order [DE 122].
[5] *See also Watson*, 181 F. Supp. 3d at 411 n.7 (five months); *Davis v. Soc. Serv. Coords.*, 2013 WL 4483067, at *10–11 (E.D. Cal. Aug. 19, 2013) (two years); *Bankers Ins. Co. v. DLJ Mortg.*, 2012 WL 515879, at *4 (M.D. Fla. Jan. 26, 2012) (two years); *Fluid Control Prods. v. Aeromotive, Inc.*, 2011 WL 620115, at *5 (E.D. Mo. Feb. 11, 2011) (16 months); *Talent Tree Crystal, Inc. v. DRG, Inc.*, 2005 WL 3312554, at *4 (W.D. Mich. Dec. 7, 2005) (11 months).
[6] *See Fieldwood Energy LLC v. Ocean Marine Contractors*, 2016 WL 8458083, at *14 n.109 (S.D. Tex. Aug. 24, 2016) (*Multinet's* "more stringent standard" does not reflect current precedent). Also, the *Multinet* court specifically asked the parties to raise venue issues in a joint status report and the movant failed to do so, only to file a transfer motion months later. 959 F. Supp. at 395.

availing. The "status of a case" is "most significant" for a *forum non conveniens* motion, Opp. at 7, because such motions "involve[] the outright dismissal of a case," *Volkswagen II*, 545 F.3d at 308–09, meaning any efforts expended prior to dismissal are wasted. By contrast, § 1404(a) "involves only a transfer of venue within the same federal forum," *id*., and thus preserves any progress in litigation, *see Danner v. Himmelfarb*, 858 F.2d 515, 521 (9th Cir. 1988) ("'[W]hen an action is transferred, it remains what it was; all further proceedings in it are merely referred to another tribunal, leaving untouched what has already been done.'" (citation omitted)).

Plaintiffs have not shown dilatory motive, and any resources purportedly expended here do not establish prejudice.[7] The protective order, ESI protocol, discovery motion practice, and "any discovery conducted will ultimately be useful in the case regardless of the forum in which the case ultimately proceeds." *Alpha Chi Omega v. Hair Spa, Inc*., 2008 WL 3833647, at *2 (S.D. Ind. Aug. 12, 2008); *see also Nat'l Prods., Inc. v. Arkon Resources, Inc.*, 2018 WL 1457254, at *5 (W.D. Wash. Mar. 23, 2018). No witness has provided testimony, and ample time remains to transfer this case before witnesses—party and non-party alike—are needlessly inconvenienced.

### III. THE PRIVATE AND PUBLIC INTEREST FACTORS FAVOR TRANSFER.

#### A. The Relative Ease of Access to Sources of Proof Favors the Austin Division.

Plaintiffs do not dispute that there are numerous sources of proof in the Austin Division, and none in the Amarillo Division. Instead, Plaintiffs (at 8) ask the Court to discount this factor on the ground that "[a]ll discovery thus far has been electronic, and a vast majority (if not all) remaining discovery will be done electronically." But, as the Fifth Circuit has "reiterated," the fact

---

[7] Regardless, "a significant delay in filing a section 1404(a) motion is rarely, if ever, dispositive." *W. Coast Trends, Inc. v. Ogio Int'l, Inc*., 2011 WL 5117850, at *4 (E.D. Tex. Oct. 27, 2011). Any purported delay merely weighs against transfer under the fourth private-interest factor, and when (as here) substantially all the § 1404(a) factors weigh in favor of transfer, not even a significant delay will merit denial of a transfer motion. *See id*. at *5 (holding any prejudice from delayed transfer motion did not outweigh fact that most evidence and witnesses were in transferee forum).

4

"[t]hat access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous."[8] *Volkswagen II*, 545 F.3d at 316; *see In re Dish Network*, 2021 WL 4911981, at *2 (Fed. Cir. Oct. 21, 2021). That this case may not involve significant "physical evidence" does not matter. Several courts—including *Volkswagen II,* 545 F.3d at 316—have looked to the location of documentary evidence (including electronically-stored documents) under this factor. *See, e.g.*, *Qualls v. Prewett Enters.*, 2022 WL 889034, at *5 (S.D. Tex. Mar. 25, 2022); *Sandbox Logistics LLC v. Grit Energy Sols. LLC*, 2016 WL 4400312, at *3 (S.D. Tex. Aug. 17, 2016); *PrevMed*, 2015 WL 5771822, at *3 (collecting cases). And, like *In re Volkswagen AG* ("*Volkswagen I*"), Defendants have identified "numerous fact witnesses" in Austin.[9] 371 F.3d 201, 204–05 (5th Cir. 2004).

### B. Only the Austin Division Has Absolute Subpoena Power.

Plaintiffs say (at 12) that no weight should be given to the second private interest factor because Defendants did not indicate whether any of the identified witnesses are unwilling witnesses. But this factor considers the "availability of compulsory process," and in this FCA case, both venues enjoy the *same* power to subpoena the *same* unwilling witnesses to trial under 31 U.S.C. § 3731(a). When Rule 45 governs a court's power to subpoena witnesses to trial—as in the cases cited by Plaintiffs—the identification of unwilling witnesses is necessary to determine which forum "has subpoena power over *more* unwilling witnesses" based on witness location. *R2 Sols. LLC v. Target Corp.*, 2021 WL 2550908, at 3 (E.D. Tex. June 22, 2021) (emphasis added). That analysis is not required here because any unwilling witnesses (wherever they may be found) may be compelled to appear for trial in either Amarillo or Austin under § 3731(a). That said, the Motion

---

[8] The Opposition (at 8–9)—and *Odom v. Microsoft Corp*, 596 F. Supp. 2d 995 (E.D. Tex. 2009), cited therein—principally relies on decisions pre-dating *Volkswagen II* for a contrary conclusion.
[9] The existence of sources of proof in *other* divisions in the Northern District does not weigh against transfer. *See In re Juniper Networks*, 14 F.4th 1313, 1321 (Fed. Cir. 2021).

5

argued (at 13)—and Plaintiffs do not contest—that a venue that "enjoy[s] absolute subpoena power for *both* depositions and trial" is favored, *Volkswagen II*, 545 F.3d at 316 (emphasis added), and only the Austin Division enjoys subpoena power for *both* depositions and trial in this case.

      C.      <u>Austin Is a Clearly-More-Convenient Forum For All Identified Witnesses.</u>

Austin is indisputably the most convenient forum for witnesses in this case.[10] Not one identifiable witness resides within 350 miles of Amarillo, whereas *every single* Texas-resident witness resides within 200 miles of Austin. *One third* of the identified witnesses are "at home" in Austin,[11] two witnesses reside in nearby San Antonio, and the remaining Texas-resident witnesses are *hundreds of miles* closer to Austin than Amarillo.[12] *Volkswagen I* and *Volkswagen II* thus dictate a finding in favor of transfer. *See Volkswagen II*, 545 F.3d at 317; *Volkswagen I*, 371 F.3d at 204–05. Plaintiffs' bid to retain the case here cannot overcome binding precedent.

First, Plaintiffs contend (at 13–14) that Defendants are not headquartered in Austin and Defendants' declarations were executed in various locations. But Plaintiffs' point is unclear. Defendants also are not headquartered in Amarillo; nor do they maintain any clinics there (but they do in Austin). While some declarations were executed in Austin, none were executed in Amarillo.

Second, Plaintiffs argue (at 14) that it would not be inconvenient for PPGT's *Austin-based* witnesses "to participate in litigation in a district where their company does significant business," because "PPGT is headquartered in Dallas and does significant business in North Texas." But this case is not pending in the Dallas Division, and the Fifth Circuit has deemed it an "obvious

---

[10] Because all the identified witnesses will appear at trial—willingly or pursuant to a § 3731(a) subpoena—Defendants argued (at 14 & 21) that (in)convenience to *all* witnesses should be considered under the third and fourth private-interest factors. Differentiating witnesses based on willingness to appear is simply not necessary here.

[11] Defendants treat any identified agency, department, or entity as a single witness, even though several witnesses may appear on their behalf (for HHSC, TMHP, or UTMB, for example).

[12] Plaintiffs do not dispute that the availability of *direct* flights to Austin versus *indirect* flights to Amarillo also makes Austin more convenient for out-of-state witnesses. *See* Mot. at 15.

conclusion" that it would be more convenient for any Austin-based witnesses to appear at trial "at home" in Austin. *See Volkswagen II*, 545 F.3d at 317; *Volkswagen I*, 371 F.3d at 205.

Third, Plaintiffs assert (at 14–15) that Amarillo would be more convenient for two non-party witnesses who reside in San Antonio and the Houston area.[13] Plaintiffs say that Amarillo is more convenient for Mr. Hons because "a flight from San Antonio to Austin would be *more than double* the cost of a flight . . . to Amarillo." But San Antonio is a mere 80 miles from Austin. *See* Mot. App. 115. Mr. Hons would, of course, *drive*—not *fly*—from San Antonio to Austin. *See* Mot. App. 41. Plaintiffs also contend that Amarillo is convenient for Ms. Farrell because the difference in airfare to fly *direct* to Austin ($218) and *indirect* to Amarillo ($255) is negligible. But Plaintiffs fail to mention the two *direct* flights to Amarillo—the least expensive of which is $481 and *double* the cost of a direct flight to Austin. *See* Mot. App. 137. Even then, Ms. Farrell expressed a preference for driving to Austin, because it would be easier for her to return home if an emergency arose with her daughter (who resides with her and has special needs). *See* Mot. App. 52–53. Thus, any perceived inconvenience with the Austin airport has no application to Mr. Hons or Ms. Farrell.

Fourth, Plaintiffs claim (at 15–16) that, like the plaintiff in *Barton v. C.R. Bard, Inc.*, 2020 WL 1809702 (N.D. Tex. Apr. 9, 2020), Defendants "rely exclusively on evidence of airfare" in disregard of Amarillo's relatively lower local costs. But *Barton* does not support Plaintiffs. In seeking transfer from Amarillo to Dallas, the *Barton* plaintiff only offered "vague and non-specific claims" that a transfer would save witnesses expense even though the only witnesses "even remotely identified" resided in Amarillo. *See id.* at *4. By contrast, no witness resides in (or within 350 miles of) Amarillo, and Defendants *have* identified numerous witnesses who would incur less

---

[13] Notably, Plaintiffs do not disagree that the Austin Division is more convenient for the other non-party witnesses that Defendants identified (*i.e.*, DHHS, CMS, LDH, UTMB, and BCM).

cost and inconvenience if the case were transferred. Almost half the witnesses would not incur *any* (or minimal) expense to appear at trial in Austin because they are "at home" in Austin or nearby San Antonio.[14] In fact, a transfer to Austin would result in cost *savings* for Texas (and its taxpayers). Defendants also submitted declarations from several witnesses in Houston, Dallas, and outside Texas that explained Austin's convenience to them. While Plaintiffs focus on the two venues' local costs, this factor concerns witness *convenience*, including the "personal costs associated with being away from work, family, and community," *Volkswagen II*, 545 F.3d at 317, and "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled," *id*.; *Volkswagen I*, 371 F.3d at 204–05. Amarillo's putatively lower local costs do not merit retaining this case in a forum that would require most witnesses to travel an additional 400-500 miles to attend trial. *See Volkswagen I*, 371 F.3d at 205. Indeed, higher airfare costs to Amarillo and the need for overnight lodging for *all* witnesses would almost certainly swallow any purported costs savings in local food and transportation in Amarillo.[15] *See id*.

Finally, Plaintiffs' disregard (at 17) for the forums' relative (in)convenience to their witnesses—most of whom reside in Austin—should not be countenanced. Plaintiffs have not proffered *one* declaration from a witness who considers Amarillo more convenient than Austin. Not even from Relator, whose venue preferences merit "'close scrutiny'" because Relator "'does not live in the judicial district in which [Relator] has filed suit.'" *Alaniz v. Liberty Life Ins. Co. of Boston*, 2018 WL 11428242, at *6 (E.D. Tex. Oct. 4, 2018) (citation omitted). Plaintiffs' declarations address only the *willingness* of Plaintiffs' expert and HHSC witnesses to appear at trial in Amarillo, not venue *convenience*. Likewise, while TMHP has a "duty . . . to support OAG

---

[14] Austin's convenience to Mr. Bowen and Mr. Smith is obvious. *Volkswagen II*, 545 F.3d at 317.
[15] A transfer to Austin would save on lodging costs for numerous Austin-based witnesses, including HHSC and HHSC-OIG witnesses who (Plaintiffs do not dispute) likely reside there.

8

litigation, such as this case," Opp. App. 37, TMHP's obligation (or willingness) to appear at trial is beside the point. And notably, Plaintiffs did not submit any declaration from TMHP here.

      D.    <u>Citizens of the Amarillo Division Do Not Have a Localized Interest in This Case.</u>

Although Plaintiffs argue (at 23–24) that their claims "span[] the entire states of Texas and Louisiana," they do not identify a single event that occurred in the Amarillo Division. Plaintiffs merely assert that Amarillo citizens have an interest in "decisions about Texas Medicaid claims" because they "impact the provision of Medicaid throughout the state." But that asserted interest in "statewide" Medicaid services would apply to any judicial district in Texas and is thus foreclosed by *Volkswagen II*, 545 F.3d at 318. Meanwhile, Austin's localized interest is wholly unchallenged.

      E.    <u>The Austin Division's Familiarity and Involvement Favor Transfer.</u>

The Austin Division's familiarity with the underlying termination litigation favors transfer.[16] *See TitanUrbi21, LLC v. GS Oilfield Servs.,* 2020 WL 5066943, at *6 (N.D. Tex. Aug. 27, 2020) (Kacsmaryk, J.). The absence of an online calendar for Judge Sparks hardly suggests that he is no longer taking cases or, even if true, that he would not take *this* case, concerning the effect of a preliminary injunction that *he* entered in related litigation. In addition to substantial factual overlap, the two cases share key legal issues, including whether PPGC violated any ethical or medical standards or state or federal law, which was a focus of the preliminary injunction hearing and is the basis of Relator's affirmative false claims here.[17] By contrast, any familiarity gained by this Court is "irrelevant"—since "[m]otions to transfer venue are to be decided based on 'the situation which existed when suit was instituted,'" *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed.

---

[16] Plaintiffs speculate about Defendants' purported "motive" in requesting transfer to a venue with *numerous* objective ties to this case, but they have not articulated a *single* tie to the Amarillo Division that explains Relator's decision to file (or Plaintiffs' desire to remain) here.

[17] These issues involve Medicaid's "complex" statutory and regulatory scheme. *See In re Madeline Marie Nursing Homes*, 694 F.2d 433, 434 (6th Cir. 1982). And, if transferred, the parties would be required to file a notice of related cases. *See* W.D. Tex. Local Civil Rule CV-3(a).

9

Cir. 2013) (citation omitted)—and limited to the complaints' allegations and discovery disputes.

      F.      <u>The June 2022 Judicial Caseload Statistics Support Transfer.</u>

Transfer motions are evaluated as of case commencement. *See id*. Defendants thus properly relied on March 2022 statistics, but the June 2022 statistics also support transfer because the median time to disposition ("the most critical statistic") favors the Western District, at 8.4 months, over the Northern District, at 65 months.[18] *Atchafalaya Basinkeeper v. Bernhardt*, 2021 WL 3463904, at *3 (M.D. La. Mar. 12, 2021); *Mckinnis v. Digital Intel. Sys.*, 2015 WL 7424778, at *4 (N.D. Tex. Nov. 23, 2015). "[C]ongestion is better measured by the median time of proceedings in the two locations, not simply by the number of cases pending."[19] *Neylon v. BNSF Ry.*, 2017 WL 5634712, at *4 (N.D. Tex. Nov. 7, 2017). While Plaintiffs speculate that the Austin Division is "likely more congested" than the Amarillo Division, citing the Court's assessment of its docket and the April 2023 trial date, neither is an appropriate consideration. *See In re Apple Inc.*, 979 F.3d 1332, 1344 (Fed. Cir. 2020) ("Nothing about the court's general ability to set a schedule directly speaks to that issue."). Nor does population density "necessarily equate to court congestion." *Best Aviation Ltd. v. Chowdry*, 2012 WL 5457439, at *7 (C.D. Cal. Nov. 7, 2012). Regardless, the "speed of disposition of lawsuits without any [Amarillo] connection is not a valid reason for forum shopping," *Alaniz*, 2018 WL 11428242, at *7 (cleaned up), or outweigh the myriad other factors that support transfer, *see Correct Trans. LLC v. ADTRAN, Inc.*, 2021 WL 1967985, at *6 (W.D. Tex. May 17, 2021).

## **CONCLUSION**

The Court should grant the Motion to Transfer Venue to the Austin Division.

---

[18] U.S Courts, Table—U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (June 30, 2022), https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2022/06/30-3.

[19] The difference in median time to trial under the March statistics (25.1 months vs. 27.2 months) and June statistics (25.2 months vs. 28.3 months) is negligible and thus neutral. *See* Mot. at 23.

Dated: September 16, 2022

Respectfully submitted,

**O'MELVENY & MEYERS LLP**

/s/ *Danny S. Ashby*
DANNY S. ASHBY
Texas Bar No. 01370960
dashby@omm.com
JUSTIN R. CHAPA
Texas Bar No. 24074019
jchapa@omm.com
MEGAN R. WHISLER
Texas Bar No. 24079565
mwhisler@omm.com
2501 N. Harwood Street, Suite 1700
Dallas, TX 75201
Tel: (972) 360-1900
Fax: (972) 360-1901

LEAH GODESKY
(admitted *pro hac vice*)
lgodesky@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Tel: (310) 553-6700
Fax: (310) 246-6779

**BLACKBURN BROWN LLP**
RYAN PATRICK BROWN
Texas Bar No. 24073967
brown@blackburnbrownlaw.com
1222 S. Fillmore Street
Amarillo, TX 79101
Tel: (806) 371-8333
Fax: (806) 350-7716

*Attorneys for Planned Parenthood Federation of America, Inc.*

**ARNOLD & PORTER KAYE SCHOLER LLP**

/s/ *Craig D. Margolis*
CRAIG D. MARGOLIS
(admitted *pro hac vice*)
Craig.Margolis@arnoldporter.com
TIRZAH S. LOLLAR
(admitted *pro hac vice*)

11

Tirzah.Lollar@arnoldporter.com
CHRISTIAN D. SHEEHAN
(admitted *pro hac vice*)
Christian.Sheehan@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Tel: (202) 942-6000
Fax: (202) 942-5999

CHRISTOPHER M. ODELL
Texas State Bar No. 24037205
Christopher.Odell@arnoldporter.com
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: +1 713.576.2400
Fax: +1 713.576.2499

**BLACKBURN BROWN LLP**
RYAN PATRICK BROWN
Texas State Bar No. 24073967
brown@blackburnbrownlaw.com
1222 S. Fillmore
Amarillo, TX 79101
Tel: (806) 371-8333
Fax: (806) 350-7716

*Attorneys for Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc.*

12

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2022, the foregoing document was electronically filed and served upon all parties and counsel of record via the Court's CM/ECF system.

/s/ *Danny S. Ashby*
Danny S. Ashby