IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| United States of America<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Texas<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Louisiana<br><br>*ex rel.* ALEX DOE, Relator,<br><br>    Plaintiffs,<br><br>v.<br><br>Planned Parenthood Federation of America,<br>Inc., Planned Parenthood Gulf Coast, Inc.,<br>Planned Parenthood of Greater Texas, Inc.,<br>Planned Parenthood South Texas, Inc.,<br>Planned Parenthood Cameron County, Inc.,<br>Planned Parenthood San Antonio, Inc.,<br><br>    Defendants. | NO. 2:21-CV-22-Z |

## DEFENDANT PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.'S EMERGENCY MOTION FOR PROTECTIVE ORDER, EXPEDITED BRIEFING, AND STAY OF DEADLINE TO MOVE TO PRESERVE CONFIDENTIALITY

Relator has left Defendant Planned Parenthood Federation, Inc. ("PPFA") with no choice but to file this emergency motion seeking protection from Relator's bad-faith and vexatious discovery conduct. The Court's Protective Order [DE 133] allows parties to designate information as Confidential or Attorneys' Eyes Only ("AEO") to facilitate the flow of documents in discovery. It also allows receiving parties to challenge designations if the receiving party believes the designations are inappropriate, but only ***after*** making a good faith attempt to resolve concerns without court intervention.

1

Relator has refused to do that time and time again, choosing instead to blanket challenge essentially ***every document*** designated Confidential or AEO soon after ***every PPFA production***—even productions that Relator admits that they have not yet reviewed.  Each time, Relator objects by sending PPFA a generic message that does not even attempt to tie Relator's "challenge" to the documents and information in PPFA's production.  Then, when the parties meet and confer, Relator refuses to say why they have challenged any document, regardless of whether PPFA's productions contained tens or tens-of-thousands of designations.  Relator also refuses to identify any particular designated document that Relator intends to use in a forthcoming court filing that might support de-designation on open-court principles.  Thus, rather than use the meet-and-confer period contemplated in the Protective Order to resolve any good-faith disputes, Relator has chosen to instead weaponize the Protective Order, knowing that as-written, each boilerplate challenge to PPFA's designations will cause PPFA to devote extensive attorney and client hours to defending—by motion practice and witness declarations—the designation of each and every document.

Relator's approach violates the Rules and the Protective Order both in letter and spirit by rendering the meet-and-confer requirement superfluous, imposing great expense on PPFA as the designating party, and ensuring that designation challenges require court intervention—even as to documents that are sensitive on their face or that will never be used in depositions or motion practice.  Other courts in this district and around the country regularly reject such exploitation of mass, unelaborated designation challenges.  Judge Horan reached the same conclusion when considering a similar situation where the challenging party admittedly had "not reviewed any of the [materials] that it claim[ed] should not be designated as" AEO, and ultimately ordered that the challenging party renew its objections "after properly conferring as to *each item* in dispute" and "address[ing] designations as to *specific materials*." *Samsung Elec. Am., Inc. v. Yang Kun Chung*,

321 F.R.D. 250, 261, 287 (N.D. Tex. 2017); *see also Giddy Up, LLC v. Prism Graphics, Inc.*, 2007 WL 2460646, at *2 (N.D. Tex. Aug. 29, 2007) ("[I]mplicit in" the conference requirement is the "obligation of the party challenging a designation to identify the *specific* documents at issue so the attorneys can attempt to negotiate an acceptable resolution of the matter."); *SmithKline Beecham Corp. v. Synthon Pharms., Ltd.*, 210 F.R.D. 163, 168 (M.D.N.C. 2002) ("The burden of reviewing such a wholesale request [to remove confidentiality protections] constitutes grounds for denying the same.").

PPFA respectfully asks this Court to do so, too, and to order that PPFA's designations for all productions to date be preserved and that designation challenges must be document-specific and reasoned before Relator may invoke the provisions of the Protective Order.  **Given that PPFA's time to (for the third time) move for a protective order in response to Relator's September 13 challenge expires on September 28, 2022, PPFA requests (1) expedited briefing on this Emergency Motion, and (2) that the Court stay PPFA's September 28, 2022 deadline pending a ruling on this Motion and guidance from the Court regarding Relator's instant challenge.**

I. **RELATOR'S HISTORY OF IMPROPER DESIGNATION CHALLENGES**

    A. **PPFA'S First Motion for Protective Order**

PPFA began its rolling document production on August 1, 2022, and completed its third production on August 8, 2022.  *See* Chapa Decl. ¶ 2 (Ex. A).  On August 18, Relator notified PPFA that they objected to all of PPFA's confidentiality designations, including designations for documents containing one of the seven express categories of Personally Identifying Information ("PII") under the Protective Order.  *See* Ex. B at 2.  PPFA promptly responded to get further clarity on Relator's concerns and to narrow the volume of documents potentially implicated by Relator's

3

objection. *Id.* at 1. Relator refused to provide any clarification of their concerns and simply reiterated their blanket objection. *Id.*

To resolve the dispute without court intervention, PPFA conducted a document-by-document review of its designations, prepared a detailed chart to explain its designations, and met and conferred with Relator's counsel. Chapa Decl. ¶ 4; Ex. C. All to no avail. Although Relator agreed to withdraw their objections to documents containing PII or Protected Health Information ("PHI"), Relator maintained their objections to every other document designated as Confidential or AEO, without further explanation. Chapa Decl. ¶ 4. Relator took that position notwithstanding the obvious sensitivity of the documents about which the parties were meeting and conferring. For example, the AEO-designated documents included information about sensitive business and financial information available to only about 5% of PPFA employees, as well as information about PPFA's physical- and cyber-security efforts. *See* Barrow-Klein Decl. ¶¶ 8, 13 [DE 157-4].

PPFA thus had no choice but to file its first Motion for Protective Order and for Clarification on August 31 [DE 157]. In an effort to not burden the docket and the Court with thousands of pages of documents (and in the face of Relator's nonspecific objection), PPFA provided categorial descriptions of the types of confidential materials in its productions and filed sealed copies of exemplar documents with the Court [DE 158]. Chapa Decl. ¶ 5. Relator's counsel initially indicated their willingness to consider the documents further while drafting their response to PPFA's Motion for Protective Order, but PPFA has received no further communication from Relator. *Id.*

B.     **PPFA's Second Protective Order Motion**

PPFA served its fourth production on August 22 and its fifth production on August 30, which totaled 83 documents spanning 1,420 pages, including 55 AEO documents. Chapa Decl. ¶ 7. PPFA transmitted the password to its fifth production at 2:37 PM (CT) on August 30. Ex. D.

4

Relator's counsel emailed PPFA's counsel less than five hours later, stating: "This email serves as our written objection and request under Paragraph 7 of the Protective Order that PPFA change the designations of the following documents marked 'Confidential' and/or 'Attorney's Eyes Only,'" and listing the Bates numbers of 54 of 55 documents PPFA designated AEO across its fourth and fifth productions. *See* Ex. E. The email did not provide additional explanation or elaboration about Relator's purported basis for the challenge—or why the email referenced "Confidential" designations, when PPFA had no such documents in its production.

PPFA again reviewed its designations, clarified with Relator's counsel that 11 of the challenged documents contained PII, and again created a detailed chart identifying each designated document by Bates number and the reason each document qualified for protection. Chapa Decl. ¶ 9. PPFA provided this chart to Relator's counsel on September 13. Ex. F.

That day, counsel for Relator and PPFA met and conferred. Relator's counsel agreed not to challenge PPFA's confidentiality designations with respect to the 11 documents that PPFA identified as containing PII, but never explained why Relator had challenged in the first place documents that clearly qualified as AEO under the Protective Order's express terms. Chapa Decl. ¶ 10. As to the remaining 43 documents, Relator's counsel again declined to provide any additional explanation for Relator's challenge except to accuse PPFA of generally applying confidentiality designations inappropriately. Chapa Decl. ¶ 11. Relator's counsel also would not agree to extend PPFA's deadline to file for a protective order so that the parties could discuss the limited number of documents at issue and narrow the dispute ultimately presented to the Court. *Id*. Relator again took that position notwithstanding the obvious sensitivity of the documents about which the parties were meeting and conferring. For example, the AEO documents at issue generally concern non-public information about the operations of PPFA and several of its Affiliates, analysis of the

5

financial and other performance of PPFA Affiliates, PPFA's assessment of the success and performance of PPFA's Affiliates, and the strategic or programmatic priorities of PPFA and its Affiliates. *See* Second Mot. for Protective Order Ex. D Barrow-Klein Decl. ¶ 8 [DE 174-4].

PPFA filed its Second Motion for Protective Order [DE 174] on September 13, 2002.

## C.   Relator's Pending September 13, 2022 Confidentiality Challenge

On Friday, September 9, 2022, PPFA produced 74,845 documents, comprised of 313,613 pages, of which 9,133 documents were designated as Confidential, 55,207 as AEO, and 10,505 as public; approximately 7,400 documents were found to reference medically-sensitive information. Chapa Decl. ¶ 12. To meet the Court's September 9 production deadline [DE 153 at 6], PPFA deployed more than 20 attorneys to individually review documents, as well as artificial-intelligence document-review software contemplated under the Protective Order. Chapa Decl. ¶ 13. Collectively, PPFA's attorneys and vendors spent at least 2,000 hours preparing the production. *Id.*

The following Tuesday, September 13, Relator asserted yet another blanket objection to every one of PPFA's AEO and confidentiality designations, with no detail whatsoever explaining Relator's concerns. Ex. G. Nor **_could_** Relator have provided any basis for Relator's challenge— electronic records show that the individual productions within the September 9 production were not downloaded until September 12 and 13, and that one of the individual productions could not be accessed until September 14 due to an inadvertent password error. Chapa Decl. ¶ 16.

At the September 13 conference between PPFA and Relator, Relator's counsel refused to identify any specific documents of concern from the September 9 production, focusing instead on the total number of designated documents. Chapa Decl. ¶ 17. Notably, Relator's counsel **_confirmed_** that they had not yet reviewed the September 9 production. *Id.* PPFA's counsel explained that the high number of designations likely was due to documents containing PII and

6

also explained some of the reasons why PPFA categorized certain types of documents as Confidential versus AEO. Chapa Decl. ¶ 18. Of the 55,207 AEO documents in the September 9 production, 46,781 (or about 85%) contain PII. Chapa Decl. ¶ 19.

Relator's counsel indicated that, although PPFA's distinctions and explanations made sense, Relator would not withdraw their blanket objection. Chapa Decl. ¶ 20. Relator's counsel also stated their belief that the Protective Order allows Relator to make blanket objections—without explanation, to every designation—and yet requires PPFA to explain every one of its designations to the Court for them to be valid. *Id*. Relator's counsel further explained that they intentionally drafted the Protective Order to impose this one-sided burden, but that intent was never expressed to PPFA during the parties' numerous discussions about the draft protective order ultimately submitted to the Court. Chapa Decl. ¶ 21. Nor does it even remotely comport with the language of the Protective Order, in particular its requirement to meet and confer in good-faith about the designations of documents prior to any party having to seek the Court's intervention. *See* Protective Order at 5.

PPFA's counsel emailed Relator's counsel on September 14 in a further effort to avoid court intervention. Ex. H. PPFA reiterated its belief that Relator's blanket objections are not in good faith and prevent meaningful dialogue about Relator's putative concerns. Relator's counsel again rejected PPFA's request for any measure of specificity regarding the basis for Relator's challenge, and stood on Relator's objection with a message that PPFA would have to now assume the burden of defending on an individual basis each of its AEO and Confidential designations, Ex. I—even though the vast majority of those documents contain PII that Relator had previously acknowledged are properly designated AEO under the Protective Order, Chapa Decl. ¶ 4.

7

PPFA cannot reasonably compile and submit to the Court a "document-by-document" evidentiary record for tens of thousands of documents within the 15 days allotted in the Protective Order. *See* Protective Order at 5; Chapa Decl. ¶ 22. But even if PPFA could, the compilation of that record also would be extremely burdensome and require hundreds of hours of attorney and client review time. *Id.*

PPFA therefore files this emergency motion to obtain timely relief from the Court and put an end to Relator's abusive tactics.

## II.   THE DEFINITIONS FOR CONFIDENTIAL AND AEO DOCUMENTS

Paragraph 2 of the Protective Order governs what information or documents may be designated "Confidential Information" or "Confidential Attorney Eyes Only Information."

The "Confidential Information" designation means:

> [T]he document is comprised of trade secrets or commercial information that is not publicly known and is of technical or commercial advantage to its possessor, in accordance with Federal Rule of Civil Procedure 26(c)(1)(G), or other information required by law or agreement to be kept confidential, including 'protected health information' as the such term is defined by the Standards for Privacy of Individually Identifiable Health Information, 45 C.F.R. Parts 160 and 164, promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996 ('HIPAA').

Protective Order at 2.

The "Confidential Attorney Eyes Only Information" designation means:

> [T]he document is comprised of information that the producing party deems especially sensitive, which may include, but is not limited to, confidential research and development, financial, technical, marketing, or any other sensitive trade secret information and Personal Identification Information, which includes: (1) social security numbers of Relator, Planned Parenthood staff, or State employees; (2) any financial account numbers of Relator, Planned Parenthood and/or its staff, and the State and/or its employees; (3) birthdates of Relator, Planned Parenthood staff, or State employees; (4) drivers' license numbers of Relator, Planned Parenthood staff, or State employees; (5) home addresses of Relator, Planned Parenthood staff, or State employees; (6) personal email addresses of Relator, Planned

8

>Parenthood staff, or State employees; and (7) the names of non-publicly identified Planned Parenthood employees.

Protective Order at 2.

### III. PPFA HAS ACTED IN GOOD FAITH; RELATOR HAS NOT.

Relator's conduct can only be explained by a desire to abuse the Protective Order's provisions to harass PPFA and create unnecessary litigation expense. As the chronology of the parties' dispute reflects, PPFA has attempted in good faith to ensure that it designates only protectable documents and to resolve Relator's designation challenges without court intervention. Faced with Relator's obstructionist tactics, PPFA nonetheless re-reviewed designations for its first five productions, modified some designations, and provided Relator with charts identifying the reasoning for each designation. *See supra* at 4–5. PPFA has to date supported each of its challenged AEO and Confidentiality designations in court filings supported by sworn testimony from a PPFA executive. *See supra* 4, 6. PPFA has also offered to let Relator temporarily withdraw its objections without prejudice to reasserting them so that the parties could narrow the number of documents at issue before PPFA filed protective motions with the court. *See supra* 7.

PPFA's conduct exemplifies what courts consider to be good-faith discovery conduct: "'honesty in one's purpose to meaningfully discuss the discovery dispute, freedom from the intention to defraud or abuse the discovery process, and faithfulness to one's obligation to secure information without court action.'" *Wooten v. Fed. Exp. Corp.*, 2004 WL 7334011, at *1 (N.D. Tex. Oct. 27, 2004) (citation omitted); *see also Patrick v. Teays Valley Trs., LLC*, 297 F.R.D. 248, 266–67 (N.D. W. Va. 2013) (Good faith "'mandates a genuine attempt to resolve the discovery dispute through non-judicial means.'" (citation omitted)).

Relator has refused to act in kind at each turn. Relator has never explained why any single designated document does not qualify for the indicated level of protection. Instead, Relator has

9

challenged every designation, even where cursory examination of documents would reveal that the designations are facially appropriate or applied to indisputably protected information like PII.

Relator has taken the position that (1) they have no obligation whatsoever to explain the reasons for their designation challenges or even to examine documents before making a challenge, and (2) that the Protective Order condones Relator's approach because Relator believes that it was drafted to support this exact course of strategic conduct. That, of course, explains why the meet-and-confer process between the parties has been futile; PPFA cannot meaningfully or substantively discuss the resolution of any designation challenges when Relator has no actual dispute with any of them. Instead, Relator is merely challenging the fact that PPFA has designated documents at all. That is not good faith. *Teays Valley*, 297 F.R.D. at 267 (denying motion to compel and ordering sanctions where party "went through the motions of conferring . . . but it made no *good faith* attempt to actually resolve the dispute"); *cf. Barrington*, 339 F.R.D. at 650 (concluding that early, "preemptive" court review of proposed confidential documents "would impede the goal that civil discovery be largely self-regulating"); *Dondi Props. Corp. v. Comm. Sav. & Loan Ass'n*, 121 F.R.D. 284, 289 (N.D. Tex. 1988) ("The purpose of the conference requirement is to promote a frank exchange between counsel to resolve issues by agreement or to at least narrow and focus the matters in controversy before judicial resolution is sought."). It also comes at great cost to PPFA, which has been forced to date to invest significant attorney and client time defending Relator's blanket challenges. Undertaking the same review in response to Relator's pending challenge would require staggering amounts of attorney and client time. *See supra* at 6; *see also* Fed. R. Civ. P. 26 (b)(1); *Procaps S.A. v. Patheon Inc.*, 2013 WL 4773433, at *8 (S.D. Fla. Sept. 4, 2013) ("Under this approach, a party who issued "highly confidential" designations on 1 million documents would be forced to re-review every single page of those 1 million documents (totaling

perhaps 10 or 20 million pages) if the other party found a handful of documents which might not be entitled to the more-protective type of designation. The Court does not find this approach workable, logical, or persuasive.").

Relator's approach also lacks legal support. Relator apparently believes that the existence of a significant number of designated documents demonstrates bad faith by PPFA. Although "indiscriminate" designation of a production as confidential under a protective order is improper, *see Healthtrio, LLC v. Aetna, Inc.*, 2014 WL 6886923, at *3 (D. Colo. Dec. 5, 2014), courts have clarified that the mere number or proportion of designated documents in a production is not determinative of bad faith or improper designations. *See, e.g.*, *Procaps*, 2013 WL 4773433, at *8 (finding "unpersuasive" challenging party's "emphasis on the percentage of" designated documents as evidence of bad faith); *Eisai Inc. v. Sanofi-Aventis U.S., LLC*, 2012 WL 1299701, at *10 (D.N.J. Apr. 16, 2012) (ruling that the designation of a "significant percentage" of documents alone is "insufficient" to warrant modification of a protective order; party designated two million documents as confidential). For example, courts have considered as evidence of good faith a producing party's efforts to separate documents between different levels of protection, and explained that the propriety of designations should also be determined by reference to the scope of the applicable protective-order definitions and the nature of the allegations and claims at issue. *See, e.g.*, *Eisai*, 2012 WL 1299701, at *10 (nature of allegations "necessarily require[d]" exchange of large number of confidential documents); *Medcorp, Inc. v. Pinpoint Techs., Inc.*, 2009 WL 3588362, at *3–4 (D. Colo. Oct. 23, 2009) (denying challenge to blanket designations because, among other things, the protective order "contain[ed] a broad definition of those materials that a party is allowed to designate").

Here, PPFA has made substantial efforts to properly designate documents under the Protective Order. It has assigned documents to both levels of protection and produced nearly 11,000 documents without restriction. Although the number of designated documents is no doubt large, so is PPFA's production, and the Protective Order expansively applies protection to any document containing PHI or PII. And the vast majority of PPFA's designations cover documents that include PII, which Relator at least previously conceded are protectable. Of the approximately 55,000 AEO documents in the September 9 production, nearly 47,000 were so designated because they contained PII. Removing those documents brings the number of designated documents well below the threshold that some courts have used as a rough measure of when to apply stricter scrutiny to designations. *See Medcorp.*, 2009 WL 3588362, at *3 (designated documents not over 50% of production). Relator thus cannot avoid the obligation to analyze PPFA's designations and confer in good faith simply by pointing to the volume of designated documents in PPFA's productions.

Relator's counsel have suggested in discussions that PPFA's AEO designations inhibit the preparation of their case because their client cannot view AEO documents. But that generic assertion does not justify Relator's blanket objections, especially for documents that counsel themselves have not even reviewed. Relator's counsel and those assisting them can review all AEO documents under the Protective Order, and Relator can review documents designated as Confidential (which Relator inexplicably also has challenged). Relator's counsel, moreover, have not identified a single relevant AEO document that they wish to show their client that they believe is improperly designated. Nor has Relator identified any designated documents that they wish to file on the public record, but cannot with PPFA's designations.

Courts considering blanket objections like Relator's have held them to be "entirely premature" where there is no plausible argument that the designation "makes the discovery process unworkable" or frustrates "public right of access to that document" in a court filing. *See Havana Docks Corp. v. Carnival Corp.*, 2020 WL 12814851, at *2–3 (S.D. Fla. Nov. 12, 2020); *In re Photochromic Lens Antitrust Litig.*, 2014 WL 12618104, at *1–2 (M.D. Fla. May 29, 2014) ("Certainly, a review of challenged designations should be conducted if necessary to enable the parties to file motions and make argument referencing designated documents, but *not* because of a controversy over *whether* a particular document was properly designated as confidential"; declining request to review nearly 2500 documents as seeking an "advisory opinion" (emphasis added)). Relator has not offered any plausible or valid reason for their resource-consuming conduct, and there is none.

## IV.   RELATOR MUST MAKE DOCUMENT-SPECIFIC OBJECTIONS.

PPFA's request for relief is supported by the Protective Order's plain text and federal court precedent. Paragraph 7 envisions Relator (and every other party) disputing specific documents to properly raise an objection and trigger the procedural mechanisms under the Protective Order. *See SEC v. Merrill Scott & Assocs.*, 600 F.3d 1262, 1272 (10th Cir.2010) ("The starting point for interpretation of a protective order lies in its plain language."). Paragraph 7 states, in relevant part, that:

> A receiving party may challenge a producing party's designation at any time. Any receiving party disagreeing with a designation may request in writing that the producing party change the designation. The parties shall promptly meet and confer and attempt in good faith to dispose of such dispute in accordance with Local Rule 7.l(a). If the parties are unable to reach an agreement through the meet and confer process, the producing party shall be required to move the court for an order preserving the designated status of the disputed information. Failure to file a motion with the Court within fourteen (14) days of the written objection shall terminate any restrictions and nullify any designation of "Confidential Information"

13

>or "Confidential Attorney Eyes Only Information" on the use of such information.

Protective Order at 5.

This language plainly provides for a document-specific approach to designation challenges. It addresses disagreements with "<u>a</u> designation" and written requests to "change <u>the</u> designation." *Id.* (emphasis added). It also requires the parties to "promptly meet and confer and attempt in good faith to dispose of <u>such dispute</u> in accordance with Local Rule 7.1(a)." *Id.* (emphasis added). And any motion to protect the confidentiality of the documents must ask "for an order preserving the designated status of <u>the</u> disputed information." *Id.* (emphasis added).

This language does not permit parties to blanketly challenge a producing party's use of designations. That interpretation would vitiate the purposes for requiring the parties to confer in the first place because parties cannot reasonably resolve a dispute over a designating party's decision to avail itself of the Protective Order's express provisions. Such an approach inevitably results in the designating party paying a high price to defend good-faith and correct designations and is flatly "inconsistent with the policies underlying the Federal Rules of Civil Procedures, the Local Rules, and the Court's Scheduling Order." *Procaps*, 2013 WL 4773433, at *7–8. As the *Procaps* court explained:

>[T]he only way [the Protective Order's confidentiality provision] makes sense is if the challenging party specifies *which* documents it is challenging. Otherwise, there is no practical way for the parties to have a meaningful dialogue, as required, about the propriety of the designations . . . . [H]ow are parties expected to confer in good faith about the propriety of designations when the challenging party refuses to tell the designating party *which* documents it is challenging and simply demands that the designating party justify *every* single designation?

*Id.* at *7 (citing, *inter alia*, *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987)); *cf. Dondi*, 121 F.R.D. at 286 ("Our system of justice can ill-afford to devote scarce resources to supervising matters that do not advance the resolution of the merits of a case; nor can justice long

14

remain available to deserving litigants if the costs of litigation are fueled unnecessarily to the point of being prohibitive.").

Yet that is what Relator demands here by effectively requiring PPFA to substantiate, and this Court to rule on, every document that PPFA designates "Confidential" or "AEO," even though Relator does not dispute any specific document's qualification for protection. Under Relator's approach, PPFA must (1) apply the appropriate designation; (2) produce supporting evidence to substantiate every one of tens of thousands of designations immediately following production; (3) participate in a meet-and-confer with Relator's counsel for which no resolution is possible because Relator does not dispute any specific designation or identify a substantive basis for their challenge; and (4) thereafter file a motion asking the Court to review and preserve PPFA's designations supported by a detailed client declaration. In short, Relator's approach requires PPFA to submit every designated document for review and decision, even though (1) there is no actual dispute between the parties concerning the merits of PPFA's designations for any of the documents under the Protective Order, (2) Relator has not reviewed most (or any) of the documents, and (3) Relator has not articulated any need or use for any of them in this litigation. Courts have refused to interpret designation-challenge provisions in protective orders to support such a process. *See, e.g.*, *In re Seroquel Prods. Liab. Litig.*, 2008 WL 508393, at *2 (M.D. Fla. Feb. 21, 2008) (holding that protective order's inclusion of designation-challenge provision did not give parties "free reign to obtain rulings on 'confidential' designations" because there must exist "a controversy" about the designations that involves more than their "status as confidential").

Relator's approach subverts the very purpose of standing protective orders in a particular case: to "conserve[] judicial resources-and taxpayer money-by eliminating the requirement that a party move for a protective order every time that party produces documents they contend are

15

confidential." *Van v. Wal-Mart Stores, Inc.*, 2011 WL 62499, at *2 (N.D. Cal. Jan. 7, 2011) (citing *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003)); *see also Estate of Graves ex rel. Graves v. Nye Cnty., Nev.*, 2022 WL 902366, at *2 (D. Nev. Mar. 28, 2022) (explaining that protective orders "are intended to facilitate the exchange of discovery documents" by, among other things, "permitting litigants to freely exchange sensitive information without the risk of disclosure"). As the Third Circuit long ago explained, the fact that an "umbrella" protective order like the one at issue here places the burden of proof on the designating party to substantiate a designation does not nullify the receiving party's duty in the first instance to "indicate precisely which documents it believe[s] to be not confidential." *Cipollone v. Liggett Grp.*, 785 F.2d 1108, 1122 (3d Cir.1986); *see also S2 Automation LLC v. Micron Tech., Inc.*, 283 F.R.D. 671, 682–83 (D.N.M. 2012) (declining to adopt approach to confidentiality designations that would in effect have required court to initially determine whether there was good cause for each designation). Even if a party allegedly has "blanketly marked" documents, it is nonetheless improper to respond in kind because "there must be some concrete challenge to begin the debate." *Muslow v. Bd. of Supers. of La. State Univ.*, 2021 WL 4243354, at *3 (E.D. La. May 25, 2021) (collecting cases).

That is why courts have repeatedly endorsed a document-specific approach to designation challenges, including at least two courts in this district. The *Giddy Up* court rejected the exact approach advocated by Relator here. There, the receiving party made a blanket challenge to all documents designated as AEO, without identifying any specific documents of concern. The court held that such an approach was inconsistent with the duty to meet and confer in good faith before seeking court intervention, reasoning that "implicit in" the conference requirement is the "obligation of the party challenging a designation to identify the *specific* documents at issue so the attorneys can attempt to negotiate an acceptable resolution of the matter." 2007 WL 2460646, at

16

\*2. Judge Horan reached the same conclusion in *Samsung*. *See* 321 F.R.D. at 261, 287 (ordering challenging party to direct objections to specific materials and confer "as to each item in dispute" before seeking court intervention).

Courts across the country regularly require the same document-specific framework to designation challenges. *See, e.g.*, *FDIC v. Cuttle*, 2013 WL 878773, at \*4 (E.D. Mich. Mar. 8, 2013) (requiring "the challenging party [to] object to the designation of *particular material* and provide written notice of same to the designating party"); *Bank of Montreal v. Optionable, Inc.*, 2011 WL 6259668, at \*1–4 (S.D.N.Y. Dec. 15, 2011) (denying request to de-designate entire production marked confidential where challenging party had not completed document review or identified specific documents of concern; holding that blanket objection "to *every*" designated document "does not constitute an objection sufficient to trigger the challenge procedure"); *Great Lakes Gas Trans. L.P. v. Essar Steel Minn., LLC*, 2011 WL 13135650, at \*10–11 (D. Minn. Mar. 3, 2011) (declining to order re-review of 88,000 documents based on blanket objection where there was no evidence of bad faith or "widespread intentional misuse of the confidentiality designation"); *Medcorp*, 2009 WL 3588362, at \*3 (denying challenge where challenging party had not identified any specific documents of concern, let alone ones that it wished to file of record).

Relator's blanket objections are meritless and indicative of bad faith. The Court should not condone such gamesmanship.

## **CONCLUSION**

PPFA respectfully requests that the Court order that PPFA's designations for all productions to date be preserved and that all future designation challenges be document-specific and reasoned to be valid under the Protective Order. And given the facts and circumstances laid out here, PPFA asks the Court to stay the deadline for it to file a motion to preserve the

confidentiality of the documents designated in its September 9 production and order Relator to pay PPFA's expenses incurred in bringing this Motion.

Dated: September 21, 2022          **O'MELVENY & MYERS LLP**

/s/ *Danny S. Ashby*
DANNY S. ASHBY
Texas Bar No. 01370960
dashby@omm.com
JUSTIN R. CHAPA
Texas Bar No. 24074019
jchapa@omm.com
MEGAN R. WHISLER
Texas Bar No. 24079565
mwhisler@omm.com
2501 N. Harwood Street, Suite 1700
Dallas, Texas 75201
T: (972) 360-1900
F: (972) 360-1901

LEAH GODESKY (*pro hac vice*)
lgodesky@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
T: (310) 553-6700
F: (310) 246-6779

**BLACKBURN BROWN LLP**
RYAN PATRICK BROWN
Texas Bar No. 24073967
brown@blackburnbrownlaw.com
1222 S. Fillmore St.
Amarillo, Texas 79101
T: (806) 371-8333
F: (806) 350-7716

*Attorneys for Defendant Planned Parenthood Federation of America, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2022, the foregoing document was electronically filed and served upon all parties and counsel of record via the Court's CM/ECF system.

/s/ *Danny S. Ashby*
Danny S. Ashby

## CERTIFICATE OF CONFERENCE

I hereby certify that on September 13 and 14, 2022, counsel for PPFA attempted to confer in good faith with counsel for Relator regarding the Relator's objections to the confidentiality designations in PPFA's September 9, 2022 production. Counsel for Relator stated that Relator opposes maintaining the designations addressed in this Motion and that Relator interprets the Court-entered Protective Order to permit Relator to make blanket challenges to PPFA's confidentiality designations, with no duty on Relator to identify any concrete concern about any specific designation.

> /s/ *Danny S. Ashby*
> Danny S. Ashby