IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ALEX DOE, Relator, | § § § | |
| THE STATE OF TEXAS, *ex rel.* ALEX DOE, Relator, | § § § | |
| THE STATE OF LOUISIANA, *ex rel.* ALEX DOE, Relator, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 2:21-CV-00022-Z |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., PLANNED PARENTHOOD GULF COAST, INC., PLANNED PARENTHOOD OF GREATER TEXAS, INC., PLANNED PARENTHOOD SOUTH TEXAS, INC., PLANNED PARENTHOOD CAMERON COUNTY, INC., PLANNED PARENTHOOD SAN ANTONIO, INC., | § § § § § § § § § § § § § § | |
| Defendants. | § § | |

**RELATOR'S OPPOSITION TO PPFA'S MOTION FOR PROTECTIVE ORDER AND FOR CLARIFICATION**

1

Relator Alex Doe files this opposition to Defendant Planned Parenthood Federation of America (PPFA)'s Motion for Protective Order and for Clarification. Dkt. 157. For the reasons set forth below, Relator respectfully requests the Court deny PPFA's motion and affirm the language of the agreed-upon Protective Order, which places the burden of preserving confidentiality designations on the designating party, and which expressly warns against the abuse or prophylactic use of confidential designations.

## INTRODUCTION

In the first four volumes of its production, PPFA produced a total of 600 documents. It designated over three-quarters of those documents—471—as "Attorney Eyes Only," ("AEO") the highest level of confidentiality under the Protective Order, which restricts their accessibility to anyone but the attorneys in this case. It designated an additional 103 documents as "Confidential." Thus, 96% of PPFA's first four volumes of production were designated as confidential. But the Protective Order sternly warns against the abuse of confidentiality designations and the use of such designations in a prophylactic manner. Dkt. 133 at 6. In response to Relator's objections to these blanket designations, PPFA "downgraded" some of the designations from AEO to Confidential. But Relator's review of the documents shows that many of the documents should not be even labeled Confidential, let alone AEO, and PPFA has designated documents for reasons beyond what is permitted in the Protective Order.

2

What's more, PPFA has continued their practice of prophylactic designations. To date, PPFA has produced a total of 77,876 documents. It has designated nearly three-fourths of those documents—56,425—AEO, and an additional 10,810 documents as "Confidential." Thus, 86% of PPFA's *entire production to date* cannot even be viewed by the parties to this case, including Relator, whose investigation of Defendants and underlying knowledge of their practices is important to the prosecution of the case. PPFA now complains that it has to justify these designations, but the Protective Order clearly places the burden on the designating party to "demonstrate[] the propriety of its designation." Dkt. 133 at 6. In PPFA's view, because it views its own documents as "private" or "sensitive," it may designate nearly all of its production as confidential or AEO, then force Relator's counsel to go document-by-document through 67,235 documents guessing at why the designation was asserted and challenging those assertions. Obviously, that is impossible with the time constraints here, and it would result in most of the documents produced by PPFA being unavailable to the parties to the litigation—documents this Court has already found are "probative of every issue in this case." Dkt. 153 at 3. If the process for retaining designations is onerous, that is because it was meant to be, given the presumption of the openness of court proceedings. And if such large numbers of documents were not designated—i.e., if PPFA had been properly judicious about its designations—the process would not be onerous for either party. The Court should deny the motion. It should also apply the consequence given in the Protective Order

3

for designation abuse or prophylactic designation and hold that "all such designations" are "waived." Dkt. 133 at 6.

## BACKGROUND

PPFA produced four volumes of documents in July and early August. After reviewing the documents, Relator's counsel sent the following written objection to PPFA's counsel on August 17, 2022:

> We have reviewed PPFA's document productions and this email serves as our written objection and request under Paragraph 7 of the Protective Order that you change the designations of (1) all documents marked "Confidential" that do not contain "protected health information" as defined by Paragraph 2 of the Protective Order and (2) all documents marked "Attorney Eyes Only" that do not contain Personal Identification Information listed in examples 1-6 of Paragraph 2 of the Protective Order.
>
> In addition, it appears that almost every non-public document that PPFA produced is designated either "Confidential" or "Attorney Eyes Only," with a significant majority being designated "Attorney Eyes Only." Thus, it appears that you have "used such designations in a purely prophylactic manner," which violates Paragraph 8 of the Protective Order.
>
> We are available to meet and confer on this issue pursuant to Paragraph 7 of the Protective Order.

Ex. A.

PPFA's counsel responded:

> I'm afraid I'm not following your objection. The "Confidential" designation in the protective order includes other information beyond "protected health information," and the "Attorneys Eyes Only" designation extends to other information beyond the personally identifying information listed in examples 1-6 of Paragraph 2 of the Protective Order. Also, we did not use those designations in a purely prophylactic manner, as you suggest, so if there are specific documents that you believe are mismarked, we would ask that you please identify those (or at least provide some examples as a starting point) so we can address any concerns.

4

Ex. A.

Relator's counsel reiterated the written objection:

> Our objection is to every document you have designated as confidential or AEO other than those that contain protected health information or personal identifying information listed in example (1)-(6) in Paragraph 2 of the Protective order. If you can provide us with the basis for your designations of documents not containing those items, we may be able to withdraw our objections to some of the documents. Let us know when you want to meet and confer.

Ex. A.

Relator's counsel subsequently heard nothing from PPFA's counsel until the afternoon of August 30, the day before PPFA's motion for protective order was due, when PPFA's counsel proposed a meet-and-confer. Ex. A. Counsel conferred by telephone and PPFA's counsel stated that they believed about 250 documents were in dispute based on Relator's objections, PPFA had reviewed its designations, and was prepared to offer the reasons for the designations of those documents. Counsel also stated that while PPFA upgraded a few documents to AEO during its review, it would also downgrade some to "Confidential" that were previously marked AEO. Most of the documents retained their initial designation, however. Counsel for PPFA stated that they would provide this information to Relator's counsel that evening and asked if Relator would temporarily withdraw the objections. Relator's counsel declined to withdraw the objections, as there was not enough time to review the documents because he did not yet have PPFA's reasons for the designations. Relator's counsel stated, however, that he would continue to review the documents based on the information provided by PPFA and would notify PPFA's counsel if there were any objections that could be withdrawn. PPFA filed this Motion for Protective Order and

5

Clarification the following day, on August 31, 2022. Dkt. 157. In response to the Court's Order compelling PPFA to produce additional documents entered on August 30, 2022, PPFA has since produced a significant number of additional documents, nearly three-quarters of which have been designated AEO.

## LEGAL STANDARD

The rules governing discovery in federal court are designed to "accomplish full disclosure of the facts, eliminate surprise, and promote settlement." *S. Ry. Co. v. Lanham*, 403 F.2d 119, 127 (5th Cir.1968) (discussing Federal Rule of Civil Procedure 34). As a result, the "deposition-discovery rules are to be accorded a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Protective orders serve as narrow exceptions to this general rule of disclosure and allow parties to keep specific categories of documents confidential by agreement. *See* 8A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2043 (3d ed.) ("It is well settled that there is no absolute privilege for trade secrets and similar confidential information.").

The parties' agreement in a protective order governs not only what materials are protected, but also the method of contesting a confidentiality determination. "The starting point for interpretation of a protective order lies in its plain language." *S.E.C. v. Merrill Scott & Associates, Ltd.*, 600 F.3d 1262, 1271–72 (10th Cir. 2010) (citations omitted). When a protective order is "part of a court-approved agreement, it must be construed according to general principles of contract law." *See City of Hartford v. Chase*, 942 F.2d 130, 134–35 (2d Cir. 1991) (citations omitted). "Thus, deference is to be paid to the plain meaning of the language . . . and the normal usage of the terms

6

selected." *Id.* (alteration in original). "An agreed protective order may be viewed as a contract, and once parties enter an agreed protective order they are bound to its terms." *Orthoflex, Inc. v. ThermoTek, Inc.*, 3:11–CV–0870–D, 2013 WL 3095106, at *3 (N.D. Tex. June 20, 2013) (citations omitted).

"Rule 26(c)'s requirement of a showing of good cause to support the issuance of a protective order indicates that 'the burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n. 3 (5th Cir.1978)). In determining whether to grant a protective order, the court must balance the requesting party's need for the information against the injury that might result if uncontrolled disclosure is compelled. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994). Through this balancing process, courts should afford due weight to the affected party's privacy interests. *See id.* (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34–36 (1984)). Significantly, however, "privacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny." *Id.* Thus, courts should consider for what purpose the information is being sought—if the case involves matters of legitimate public concern or issues relating to public health or safety, those are factors weighing against a protective order. *Id.* at 787–88; *see also Morrow v. City of Tenaha*, No. 2–08–cv–288–TJW, 2010 WL 3927969, at *4 (E.D. Tex. Oct. 5, 2010).

## ARGUMENT

### I. PPFA's Prophylactic Designations Are Improper.

PPFA disputes that it used prophylactic designations, *see* Ex. A. But how else can it explain the fact that it designated 96% of its production, except for clearly public documents, as confidential? Moreover, designating three-quarters of a production AEO is blatantly abusive, as that designation should be used very sparingly since it prevents even the parties to the litigation from reviewing the documents. *See* Dkt. 133 at 7. The Protective Order expressly prohibits such conduct: "If the Court should find that a litigant and/or its counsel have unfairly and without reasonable justification abused the process of designating any discovery materials or testimony as "Confidential" or has used such designation in a purely prophylactic manner, the Court may hold some or all such designations as having been waived." Dkt. 133 at 6.

The consequences of PPFA's overdesignation (both in the production at issue here and in subsequent productions) are clear: Relator's counsel is unable to show almost three-quarters of PPFA's documents to the Relator, which will impede the discovery process in this case, resulting in prejudice to Relator. PPFA's overdesignation has already resulted in unnecessary briefing over documents that should not have been designated in this fashion and will result in yet more wasteful briefing over the designations of the tens of thousands of additional documents PPFA has designated Confidential or AEO. It will also waste the parties' and the Court's resources because the parties will have to file and brief motions to seal should any of

8

these documents be needed to support court filings. Given the quick litigation track this case is on, it will be extremely burdensome for the parties to have to brief additional motions for protective orders and sealing motions while also preparing for and briefing dispositive motions. And if the Court does not put a stop to Planned Parenthood's abusive designations, the PPFA Affiliates may follow the same tactic, and as the Court just granted Relator's Motion to Compel against the PPFA Affiliates, they will presumably be producing large volumes of documents very soon, multiplying the waste and the prejudice to Relator.

## II. PPFA's AEO Designations are Overbroad.

PPFA appears to believe that nearly all of its documents are "sensitive" or "private" because it does not disclose them to the public, but that belief does not warrant special protection under the protective order or in the discovery process itself, nor does it qualify as a "particular and specific demonstration of fact" justifying a protective order. *In re Terra Int'l, Inc.*, 134 F.3d at 306.

The agreed Protective Order allows for "Confidential" or "AEO" designations in only a few discrete instances, with the "Confidential" designation intended to be a broader category covering trade secrets[1] or Protected Health Information (PHI) under the Health Insurance Portability and Accountability Act of 1996 (HIPAA). Dkt. 133 at 2. The AEO designation is intended to be far narrower, reserved only for

---

[1] The Protective Order defines this as "trade secrets or commercial information that is not publicly known and that is of technical or commercial advantage to its possessor, in accordance with Federal Rule of Civil Procedure 26(c)(1)(G)," or "other information required by law to be kept confidential." Dkt. 133 at 2.

9

information that is "especially sensitive" trade-secret-type information,[2] and Personal Identification Information (PII), which includes only (1) social security numbers; (2) financial account numbers; (3) birthdates; (4) drivers' license numbers; (5) home addresses; (6) personal email addresses; and (7) "the names of non-publicly identified Planned Parenthood employees." Dkt. 133 at 2. PPFA has made up several additional categories on its own, which it believes warrant AEO designation: "strategic/programmatic information," "internal market/financial information," "PII-Cell [number]," "PII- Cell or Email," "PII- Contains Employee Contact Information," "proprietary collaborative fundraising strategy," and "financial data and analysis." But PPFA cannot make up its own categories and rewrite the protective order it agreed to. *See Orthoflex,* No. 3:11–CV–0870–D, 2013 WL 3095106, at *3.

Nor can PPFA attempt to shoehorn its special categories into the category of trade secrets. The Fifth Circuit defines "trade secret" as "information that derives independent economic value from being not generally known or readily ascertainable through proper means." *CAE Integrated, L.L.C. v. Moov Technologies, Inc.*, 44 F.4th 257, 262 (5th Cir. 2022) (emphasis added). The federal Defend Trade Secrets Act defines a trade secret as:

> [A]ll forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—

---

[2] The Protective Order defines this type of information as "confidential research and development, financial, technical, marketing, or any other sensitive trade secret information." Dkt. 133 at 2. That definition is like that in the form protective order for the Northern District of Texas.

>    (A) the owner thereof has taken reasonable measures to keep such information secret; and
>    (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3). Thus, a trade secret must have economic value, but PPFA and all its Affiliates claim to be nonprofit organizations which receive public funds for the provision of ordinary medical services to the underserved public. To the extent that PPFA argues that its information will provide an advantage to its "competitors," that also seems strange given that a public charity providing medical care for underserved populations is not really "competing" with anyone.[3] Most cases reviewed by Relator about trade secrets involve for-profit companies. *See, e.g.,* See, e.g. *Samsung Electronics America, Inc. v. Yang Kun Chung*, 321 F.R.D. 250 (N.D. Tex. 2017) (suit brought by Samsung against former employees and a distributor of cell phone parts); *SmithKline Beecham Corp. v. Synthon Pharmaceuticals, Ltd.*, 210 F.R.D. 163 (M.D. N.C. 2002) (patent litigation involving for-profit pharmaceutical companies).

In the context of a nonprofit, donor communications and fundraising strategy could come close to the idea of a trade secret. Thus, Relator believes that documents such as PPFA's fundraising policies, *see* App.0167-0174, would fall into that category,

---

[3] At minimum, PPFA and its Affiliates are not competing with the other parties in this case to provide these services, so it is unclear how hiding these documents from the parties in the litigation under an AEO designation would protect PPFA in this regard. *See Planned Parenthood Fed'n of Am.*, Inc. v. Ctr. for Med. Progress, No. 16-CV-00236-WHO(DMR), 2018 WL 2441518, at *26 (N.D. Cal. May 31, 2018) ("Here, Defendants do not assert that the information confers "an actual or potential commercial advantage" over their competitors. Plaintiffs are the subjects of Defendants' investigations; they are not Defendants' competitors. Defendants cite no authority holding that a "confidential compilation of information" through which an organization "carr[ied] out its successful investigative work" is a protectable trade secret under California law. (citation omitted)).

11

(though would be adequately protected with a "Confidential" designation, which suffices to protect most trade-secret-type information). But documents like eight-year-old Affiliate financial reports, *see* App.0077-0089, which PPFA has labeled "internal market/financial information," PPFA Ex. B, would not.[4] Indeed, as public charities, information about PPFA and PPFA Affiliate finances is publicly available in their IRS Form 990s, including how much government funding they receive and how much money they receive from Planned Parenthood entities.[5] They even publicize this information.[6] It is similar with documents labeled "sensitive strategic/programmatic information," which generally consist of grant agreements between PPFA and Affiliates. *See* App.0090; PPFA Ex. B.[7] The money each Affiliate receives from PPFA is supposed to be reported on the Form 990 under "contributions and grants." The same goes for services provided. PPFA designated such documents AEO, *see* App.0076,[8] but PPFA and PPFA'a Affiliates publish the numbers of services provided in their Annual Reports, which are available online.[9]

---

[4] Even if at one point this information could conceivably been considered a trade secret, it is unclear how such outdated information would aid competitors.

[5] *See, e.g.*, https://projects.propublica.org/nonprofits/organizations/131644147/202100679349300840/full (PPFA Form 990); https://projects.propublica.org/nonprofits/display_990/741100163/download990pdf_05_2022_prefixes_47-81%2F741100163_202006_990_2022051720066807 (PPGC Form 990).

[6] *See, e.g.,* Planned Parenthood Federation of Am., *About Us: Facts and Figures*, https://www.plannedparenthood.org/about-us/facts-figures ("Financial Data Accountability and transparency — it's the Planned Parenthood way. Access our IRS Form 990 and most recent audited financial statement here."); Planned Parenthood Gulf Coast, *About Us*, https://www.plannedparenthood.org/planned-parenthood-gulf-coast/who-we-are (linking to Form 990 and stating that "Our audited financial statement is available upon request. Submit a request to information@ppgulfcoast.org.")

[7] Like PPFA, Relator uses exemplars to illustrate the overdesignation at issue. But Relator's objections are not limited to the exemplars.

[8] This document was produced in Native form and therefore does not contain a Bates stamp in its printed version, but it is PPFA00003124 and is designated AEO.

[9] *See, e.g.,* https://www.plannedparenthood.org/uploads/filer_public/67/30/67305ea1-8da2-4cee-9191-19228c1d6f70/210219-annual-report-2019-2020-web-final.pdf (PPFA Annual Report);

Most of PPFA's AEO documents, however, appear to fall under the category of PII that they added to categories in the Protective Order. While cell phone numbers are not PII under the Protective Order, even if the Order were construed to protect private cell phone numbers, PPFA's documents contain none. Rather, they contain only business cell phones that employees include as part of their email signature blocks. *See, e.g.,* App.0058-61; 0069-73. Some documents contain *no* cell numbers at all. *See* App.0054-55; App. 0056-57; App.0062-68; 0074-75[10]. Relator identified two documents out of the entire production which do appear to include personal email addresses and are permitted to be designated AEO under the Protective Order. *See, e.g.*, App.0166; Dkt. 133 at 2. While PPFA's added categories do not seem to be protecting PII or trade secrets as defined by the Protective Order, in some cases, they do seem to be protecting damaging documents, which is obviously an abuse of the designation process. *See, e.g.,* App.0007, 0029; 0058, 0062, 0069-73; 0074-75.

### III. PPFA's Confidential Designations Are Overbroad.

PPFA's Confidential designations fare no better. These are all documents that a party will have to file under seal if used in support of court filings, *see* Dkt. 133 at 8, yet seem to contain no confidential information. For instance, PPFA00005187-5206, and PPFA00003374-3375, which are designated "Confidential" but do not contain PHI and do not seem to be included in PPFA Exhibit B, are documents

---

https://www.plannedparenthood.org/uploads/filer_public/7c/09/7c09c93e-435e-4846-bb5a-3a882f279121/fy21_ppgcppcfc_impact_report_final.pdf (PPGC).

[10] PPFA00003184 does not appear to be included in PPFA Ex. B as a disputed designation. But the document clearly contains no PII nor falls under any conceivable category under the Protective Order yet is designated AEO.

containing information that seems intended to be distributed widely to the public. App.0094-0115. PPFA also argues that business relationships are "sensitive," yet designated Business Associate Agreements and Memoranda of Understanding between PPFA and its own Affiliates as "Confidential." *See, e.g.,* App.0016-0122, 0129-0134; Dkt. 158-6. It also designated similar agreements between its Affiliates and one of its other corporate entities as "Confidential."[11] *See, e.g.,* App.0123-0128. It designated an eight-year-old report detailing efforts to maximize Medicaid funds received by Affiliates as "Confidential" because it contains "strategic/programmatic information," even though it largely appears to analyze public programs and contracts. *See, e.g.,* App.0135-0164. As for "safety and security information," Relator would agree that if the documents at issue contained information like the location of security cameras, the number of armed guards, or alarm codes, that would justify confidential treatment, though there appears to be no applicable category for this in the agreed Protective Order. But the documents PPFA produced do not contain such information. *See, e.g.,* Dkt. 185-5. The fact that PPFA Affiliates do take security precautions or restrict access to their facilities is not a secret.

---

[11] Without divulging sealed information, the other party to this agreement is a Planned Parenthood entity, which can be verified by a quick Google search.

## CONCLUSION

Relator respectfully requests that the Court deny PPFA's Motion for Protective Order. It should also apply the consequence given in the Protective Order for designation abuse or prophylactic designation and hold that "all such designations" are "waived." Dkt. 133 at 6.

                Respectfully submitted.

                /s/ Heather Gebelin Hacker
                Heather Gebelin Hacker
                Texas Bar No. 24103325
                Andrew B. Stephens
                Texas Bar No. 24079396
                HACKER STEPHENS LLP
                108 Wild Basin Road South, Suite 250
                Austin, Texas 78746
                (512) 399-3022
                heather@hackerstephens.com
                andrew@hackerstephens.com

                **Attorneys for Relator**

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2022, this document was electronically filed and served via the Court's CM/ECF system.

<u>/s/ Heather Gebelin Hacker</u><br>
Heather Gebelin Hacker