IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| United States of America<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Texas<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Louisiana<br><br>*ex rel.* ALEX DOE, Relator,<br><br>　　　Plaintiffs,<br><br>v.<br><br>Planned Parenthood Federation of America,<br>Inc., Planned Parenthood Gulf Coast, Inc.,<br>Planned Parenthood of Greater Texas, Inc.,<br>Planned Parenthood South Texas, Inc.,<br>Planned Parenthood Cameron County, Inc.,<br>Planned Parenthood San Antonio, Inc.,<br><br>　　　Defendants. | NO. 2:21-CV-22-Z |

### DEFENDANT PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.'S THIRD MOTION FOR PROTECTIVE ORDER

Pursuant to Paragraph 7 of the Protective Order [DE 133], Planned Parenthood Federation of America, Inc. ("PPFA") moves for an order "to preserv[e] the designated status of [] disputed information" in PPFA's September 9, 2022 document production. As with PPFA's prior productions, Relator has generically objected to broad swaths of documents that PPFA designated "Confidential" or "Confidential Attorney Eyes Only Information" ("AEO"). And as PPFA previewed in its recently filed Emergency Motion for Protective Order, Expedited Briefing, and Stay of Deadline to Move to Preserve Confidentiality ("Emergency Motion") [DE 188]—which PPFA expressly incorporates herein by reference—this fourth round of protective-order briefing involves yet another blanket and harassing challenge to tens of thousands of documents, most of

1

which will never be used at deposition or in motion practice. Relator's approach to these challenges is not in good faith, and courts in this District have specifically rejected this kind of unspecified approach to confidentiality challenges as wasteful of judicial and party resources. *See Samsung Elec. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 261, 287 (N.D. Tex. 2017) (challenging party admittedly had "not reviewed any of the [materials] that it claim[ed] should not be designated as" AEO, so court ordered challenging party could renew its objections "after properly conferring as to each item in dispute" and "address[ing] designations as to specific materials"); *see also Giddy Up, LLC v. Prism Graphics, Inc.*, 2007 WL 2460646, at *2 (N.D. Tex. Aug. 29, 2007) ("[I]mplicit in" the conference requirement is the "obligation of the party challenging a designation to identify the specific documents at issue so the attorneys can attempt to negotiate an acceptable resolution of the matter."); *SmithKline Beecham Corp. v. Synthon Pharms., Ltd.*, 210 F.R.D. 163, 168 (M.D.N.C. 2002) ("The burden of reviewing such a wholesale request [to remove confidentiality protections] constitutes grounds for denying the same.").

Relator does not dispute that any particular document fails to qualify for the indicated level of protection under the Protective Order. Instead, Relator merely claims that the volume of designated documents somehow evidences bad faith, and objects on that basis. But the vast majority of the designated documents (approximately 80%) are designated AEO or Confidential to protect Personal Health Information ("PHI") or Personal Identification Information ("PII") as specifically authorized by the Protective Order. And the remaining documents were designated AEO or Confidential based on a document-by-document review for sensitive material and following substantial consultation with PPFA and the Affiliate Defendants to identify specific types of documents, projects, or information that qualify for such protection under the Protective Order. Those designations were applied either by the 50+ attorneys that PPFA deployed in its

effort to meet the September 9, 2022 production deadline or by PPFA's e-discovery vendor based on vetted search-term criteria.

PPFA expended considerable time, effort, and expense in a good-faith effort to timely produce documents in accordance with this Court's Order and the Protective Order. Relator's vague and improper objections to the confidentiality of tens of thousands of documents that Relator did not even review continue to waste party and judicial resources on motion practice—including the instant motion—where Relator has not identified a dispute about the designation of any particular document. PPFA respectfully requests that the Court order Relator to meet and confer with PPFA in good faith regarding all of Relator's confidentiality challenges to date and preserve all of PPFA's good-faith designations in the meantime.

## I.   BACKGROUND

On August 25, 2022, the Court entered an Order [DE 153] granting Relator's motion to compel PPFA to produce documents concerning Texas or Louisiana Medicaid and its relationship with the Affiliate Defendants by September 9, 2022.

In short order, PPFA collected more than 275,000 documents, and deployed nearly 60 attorneys[1] and used document-analysis tools (as expressly contemplated by the parties' ESI protocol [DE 130–1 at 13]) to review documents for responsiveness, confidentiality, and privilege. Kopczynski Decl. ¶ 4. A document-by-document review of every document collected was not reasonably possible given the number of documents—more than a quarter million—at issue and the 9 business days that PPFA had to assemble an attorney review team, collect, transfer, review,

---

[1] In filing its Emergency Motion, PPFA provided conservative estimates of the time and resources expended to meet the September 9 production deadline. Since that time, PPFA has further investigated—and received a far more detailed accounting of—the exact number of attorneys employed for the document-by-document review and attorney hours expended on that review, as discussed herein.

3

and produce documents by the September 9 deadline. *Id*. ¶ 6. PPFA's attorneys individually reviewed approximately 79,000 documents, while the remaining documents were evaluated using technology-assisted review tools. *Id*. ¶ 4. Once documents were available for review, PPFA's attorneys spent more than 3,000 hours reviewing and analyzing the documents over a 7-day period in order to meet the Court-ordered production deadline.[2] *Id*.

On September 9, 2022, PPFA produced 74,845 documents (comprised of 313,613 pages) of which (a) 9,133 documents were designated Confidential, (b) 55,207 documents were designated AEO, (c) and 10,505 bore no designation under the terms of the Protective Order. *Id*. ¶ 5. The vast majority of the designations were applied to protect PII (43,750 AEO documents)[3] and PHI (7,379 Confidential documents). *Id*. ¶¶ 7, 11. PPFA's designations for the Confidential and AEO documents in its September 9 production were made in good faith and in accordance with the terms of the Protective Order and the ESI protocol, as further detailed below and the accompanying Declaration. *Id*. ¶¶ 7–14.

On September 13, 2022, counsel for Relator sent an email to PPFA's counsel stating:

> As to the documents produced by PPFA on September 9, 2022, this email serves as our written objection and request under Paragraph 7 of the Protective Order that you change the designations of (1) all documents marked "Confidential" that do not contain "protected health information" as defined by Paragraph 2 of the Protective Order and (2) all documents marked "Attorney Eyes Only" that do not contain Personal Identification Information listed in examples 1-6 of Paragraph 2

---

[2] Conducting a linear review of all the documents collected would have required, at minimum, more than 8,500 hours of additional attorney review time. Kopczynski Decl. ¶ 6.

[3] Based on information provided at the time, Mr. Chapa's September 21, 2022 declaration [DE 188–1] stated that 46,781 of the 55,207 AEO documents contain PII. Mr. Kopczynski's declaration reflects the correct number—that 43,750 of the AEO documents contain PII. Because Mr. Chapa had to undergo unexpected emergency surgery today in response to a medical issue that arose on Monday, September 26, Mr. Chapa is unable to submit a corrected declaration immediately, but will do so as soon as possible. PPFA investigated the source of the error and believes it stemmed from an inadvertent clerical error in communications with PPFA's e-discovery vendor.

>of the Protective Order.  We are available to meet and confer on this issue pursuant to Paragraph 7 of the Protective Order.

DE 188–7.  Relator's counsel declined to provide any grounds for their objection.  Nor could Relator have provided any basis; electronic records show that the individual productions were not downloaded until September 12 and 13, and one production could not be accessed until September 14 due to an inadvertent password error.  DE 188–1, Chapa Decl. ¶¶ 15–16.  Indeed, Relator's counsel later confirmed that Relator had not reviewed the September 9 production before making their designation objection.  *Id.* ¶ 17.

The parties met and conferred on September 13, and Relator's counsel again refused to identify any specific documents that purportedly failed to qualify for protection under the Protective Order.  *Id.* ¶ 17.  Instead, Relator focused on the total number of designated documents as alone indicative of bad faith designation.  *Id.* ¶ 17.  PPFA's counsel explained that, to the contrary, the high number of designations likely was due to documents containing PII, and also explained some of the reasons why PPFA categorized certain types of documents as Confidential versus AEO.  *Id.* ¶ 18.  Relator's counsel indicated that PPFA's distinctions and explanations made sense, but Relator would not withdraw their blanket objection.  *Id.* ¶ 20.  The next day, PPFA's counsel emailed Relator's counsel in a further effort to avoid unnecessary motion practice.  *See* DE 188–8.  But Relator's counsel again rejected PPFA's request for any specific basis for Relator's objection and stood on Relator's assertion that the number of documents designated Confidential or AEO was, alone, evidence of bad faith designations.  *See* DE 188–9.

Pursuant to Paragraph 7 of the Protective Order, PPFA must "file a motion with the Court within fourteen (14) days of the written objection" or risk nullification of its designations.  Because Relator lodged their written objection on September 13, the Protective Order requires PPFA to move by September 27, 2022 to preserve its designations for its September 9 production.  On

September 21, 2022, PPFA filed the Emergency Motion in the hope of avoiding burdening the Court with another round of duplicative briefing. The Court declined to stay PPFA's September 27 deadline, so PPFA now timely moves for an order to preserve its designations in accordance with Paragraph 7 of the Protective Order.

## II.     THE PROTECTIVE ORDER'S RELEVANT PROVISIONS

Paragraph 2 of the Protective Order governs what information or documents may be designated "Confidential Information" or "Confidential Attorney Eyes Only Information."

The "Confidential Information" designation means:

> [T]he document is comprised of trade secrets or commercial information that is not publicly known and is of technical or commercial advantage to its possessor, in accordance with Federal Rule of Civil Procedure 26(c)(1)(G), or other information required by law or agreement to be kept confidential, including 'protected health information' as the such term is defined by the Standards for Privacy of Individually Identifiable Health Information, 45 C.F.R. Parts 160 and 164, promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996 ('HIPAA').

Protective Order at 2.

The "Confidential Attorney Eyes Only Information" designation means:

> [T]he document is comprised of information that the producing party deems especially sensitive, which may include, but is not limited to, confidential research and development, financial, technical, marketing, or any other sensitive trade secret information and Personal Identification Information, which includes: (1) social security numbers of Relator, Planned Parenthood staff, or State employees; (2) any financial account numbers of Relator, Planned Parenthood and/or its staff, and the State and/or its employees; (3) birthdates of Relator, Planned Parenthood staff, or State employees; (4) drivers' license numbers of Relator, Planned Parenthood staff, or State employees; (5) home addresses of Relator, Planned Parenthood staff, or State employees; (6) personal email addresses of Relator, Planned Parenthood staff, or State employees; and (7) the names of non-publicly identified Planned Parenthood employees.

Protective Order at 2.

Paragraph 7 of the Protective Order outlines the procedure for challenging and preserving the above-identified designations and provides, in relevant part, that:

> A receiving party may challenge a producing party's designation at any time. Any receiving party disagreeing with a designation may request in writing that the producing party change the designation. The parties shall promptly meet and confer and attempt in good faith to dispose of such dispute in accordance with Local Rule 7.l(a). If the parties are unable to reach an agreement through the meet and confer process, the producing party shall be required to move the court for an order preserving the designated status of the disputed information. Failure to file a motion with the Court within fourteen (14) days of the written objection shall terminate any restrictions and nullify any designation of "Confidential Information" or "Confidential Attorney Eyes Only Information" on the use of such information.

Protective Order at 5.

### III. PPFA'S DESIGNATIONS WERE MADE IN GOOD FAITH AND SHOULD BE PRESERVED.

Relator does not dispute that any specific document fails to qualify for the stated level of protection under the Protective Order. Rather, Relator only objects to PPFA's designations on the stated belief that the existence of a significant percentage of designated documents demonstrates bad faith by PPFA. That is incorrect. Relator's position has no legal or factual support, as PPFA explained in its Emergency Motion (at 11–13). In addition, PPFA further submits the attached Declaration of Jeffrey A.N. Kopczynski, Esq. to substantiate that PPFA undertook considerable time, effort, and expense to properly apply designations in good faith and in accordance with standard eDiscovery practice, the Federal Rules, and the Protective Order in making its September 9 production.

As the Declaration explains, approximately 80% of PPFA's designations were applied to protect PII (43,750 AEO documents) and PHI (7,379 Confidential documents). Kopczynski Decl. ¶¶ 7, 11. Those designations were made using two workflows. *Id*. ¶¶ 7–14. First, PPFA's attorney review team tagged PII as "AEO" and PHI as "Confidential" as it was identified by attorneys in

the document-by-document review. *Id*. ¶¶ 7, 11. Second, consistent with eDiscovery standard practices, PPFA used RegEx and search modeling to identify PII and PHI. *Id*. ¶¶ 7, 10, 11, 14. Consistent with the Protective Order, PPFA's PII model was designed to identify any documents containing personal e-mail addresses, social security numbers, mobile-phone numbers, credit-card numbers, dates of birth, and bank account or routing numbers, and the name of Relator and of non-publicly identified employees of PPFA or the Affiliate Defendants. *Id*. ¶ 7. After validation using statistically significant samples, documents that the PII model identified as containing PII were coded as AEO. *Id*. Similarly, PPFA's PHI model was designed to identify personal health information contemplated in the Protective Oder. *Id*. ¶ 11. After validation and testing, any document that the model identified as containing PHI were coded Confidential.

PPFA also acted reasonably and in good faith with respect to its designation of the remaining AEO documents and Confidential documents. *Id*. ¶¶ 8, 12. The remaining 11,457 AEO documents were identified by PPFA as containing or likely containing especially sensitive material that qualifies as AEO under the Protective Order, including financial, marketing, research and development, and trade-secret information that PPFA or the Affiliate Defendants consider especially sensitive and to which they restrict access even internally. *Id*. ¶¶ 8–9. The remaining 1,754 Confidential documents contain or likely contain sensitive material that qualifies as "Confidential" under the Protective Order because the communications reflect (a) trade-secret or commercial information that is of technical or commercial advantage to PPFA or the Affiliate Defendants and which is not public; or (b) material that PPFA is required by law or agreement to keep confidential. *Id*. ¶ 12.

Identifying those documents consisted of two steps. *Id*. ¶¶ 9–10, 13–14. First, PPFA's counsel spent hours consulting with PPFA's senior executives, in-house counsel, and other

8

personnel to identify specific matters, projects, and categories of documents that PPFA treats as confidential or considers especially sensitive information, and to which PPFA restricts access, within the meaning of the Protective Order. *Id*. ¶¶ 9, 13. Many of the identified categories of documents were the same or similar to the types of information identified in PPFA's First Motion for Protective Order [DE 157] and Second Motion for Protective Order [DE 174], both of which are supported by sworn testimony from PPFA's Chief Operating Officer, which PPFA also incorporates here by reference. *See* DE 157–4; DE 174–4. In addition, counsel for PPFA consulted with the Affiliate Defendants to assist with the identification of any Affiliate-specific matters, projects, or documents that may be discussed in documents in PPFA's possession and warrants protection under the Protective Order. Kopczynski Decl. ¶¶ 9, 13. Second, using the information learned during those discussions, PPFA consulted with data retrieval and identification specialists to generate RegEx and search models, and those models were used (a) to identify certain documents for review and designation by attorneys in a document-by-document review and (b) to identify and designate discrete categories of documents as "AEO" or "Confidential" as appropriate. *Id*. ¶¶ 10, 14.

PPFA did not "indiscriminate[ly]" or "prophylactically" apply designations in its September 9 production. *Cf. Healthtrio, LLC v. Aetna, Inc*., 2014 WL 6886923, at *3 (D. Colo. Dec. 5, 2014). To the contrary, PPFA employed a good-faith process supervised by eDiscovery specialists for the designation of documents that, among other things, differentiated across levels of protection provided in the Protective Order and necessarily resulted in a significant number of PII and PHI confidentiality designations. *See, e.g., Eisai Inc. v. Sanofi-Aventis U.S., LLC*, 2012 WL 1299701, at *10 (D.N.J. Apr. 16, 2012) (nature of allegations "necessarily require[d]" exchange of large number of confidential documents); *Medcorp, Inc. v. Pinpoint Techs., Inc*., 2009

9

WL 3588362, at *3–4 (D. Colo. Oct. 23, 2009) (denying challenge to blanket designations because, among other things, the protective order "contain[ed] a broad definition of those materials that a party is allowed to designate"). Because PPFA acted reasonably and in good faith, and Relator has provided no document-specific challenge—let alone articulated a reason why PPFA's designations should be downgraded—PPFA's designations should be preserved. *See, e.g., Procaps S.A. v. Patheon Inc.*, 2013 WL 4773433, at *8 (S.D. Fla. Sept. 4, 2013) (finding "unpersuasive" challenging party's "emphasis on the percentage of" designated documents as evidence of bad faith); *Eisai Inc. v. Sanofi-Aventis U.S., LLC,* 2012 WL 1299701, at *10 (D.N.J. Apr. 16, 2012) (ruling that the designation of a "significant percentage" of documents alone is "insufficient" to warrant modification of a protective order; party designated two million documents as confidential).

Given the nature of Relator's objections and the volume of documents at issue, substantiation of tens of thousands of designations on a document-by-document basis would impose an undue burden on PPFA and needlessly waste party and judicial resources. But to the extent the Court would like additional information supporting PPFA's designations, PPFA respectfully requests that the Court provide PPFA the opportunity to supplement the record.

## CONCLUSION

PPFA respectfully requests that the Court enter an order preserving the confidentiality designations at issue and resolving PPFA's three pending motions on this issue [DE 157, 174, and 188] by requiring Relator to meet and confer in good faith and on an individual-document basis to assert any further designation challenge. *See Samsung*, 321 F.R.D. at 287 (challenge permitted only "after properly conferring as to each item in dispute" and "address[ing] designations as to

specific materials" in a manner that will "provide[] the Court with a basis under the Agreed Protective Order to evaluate each specific document or recording at issue").

Dated: September 27, 2022         **O'MELVENY & MYERS LLP**

/s/ *Danny S. Ashby*
DANNY S. ASHBY
Texas Bar No. 01370960
dashby@omm.com
JUSTIN R. CHAPA
Texas Bar No. 24074019
jchapa@omm.com
MEGAN R. WHISLER
Texas Bar No. 24079565
mwhisler@omm.com
2501 N. Harwood Street, Suite 1700
Dallas, Texas 75201
T: (972) 360-1900
F: (972) 360-1901

LEAH GODESKY (*pro hac vice*)
lgodesky@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
T: (310) 553-6700
F: (310) 246-6779

**BLACKBURN BROWN LLP**
RYAN PATRICK BROWN
Texas Bar No. 24073967
brown@blackburnbrownlaw.com
1222 S. Fillmore St.
Amarillo, Texas 79101
T: (806) 371-8333
F: (806) 350-7716

*Attorneys for Defendant Planned Parenthood Federation of America, Inc.*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 27, 2022, the foregoing document was electronically filed and served upon all parties and counsel of record via the Court's CM/ECF system.

/s/ *Danny S. Ashby*
Danny S. Ashby

## **CERTIFICATE OF CONFERENCE**

I hereby certify that on September 13, 2022, counsel for PPFA conferred with counsel for Relator regarding the substance of the foregoing.  Counsel for Relator stated that Relator opposes maintaining the designations addressed in this motion.

/s/ *Danny S. Ashby*
Danny S. Ashby