**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

United States of America
*ex rel.* ALEX DOE, Relator,

The State of Texas
*ex rel.* ALEX DOE, Relator,

The State of Louisiana
*ex rel.* ALEX DOE, Relator,
     Plaintiffs,
v.

    Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

CIVIL ACTION NO. 2:21-CV-00022-Z

Date:    September 29, 2022

**MEMORANDUM IN SUPPORT OF**
**AFFILIATE DEFENDANTS' MOTION FOR RECONSIDERATION**
**OR CLARIFICATION OF ORDER ON AFFILIATE DEFENDANTS'**
**MOTION TO COMPEL TO TEXAS**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

LEGAL STANDARDS ...................................................................................................... 2

    I.   Motion for Reconsideration .................................................................................. 2

    II.   Motion for Clarification ....................................................................................... 2

ARGUMENT ...................................................................................................................... 3

    I.   The Court Should Reconsider its Ruling on Interrogatories 12 and 13 Because The Importance of The Requested Information Outweighs Any Burden ................................................... 3

    II.   The Court Should Reconsider or Clarify The Scope of Its Ruling on The Medicaid Investigative Privilege Based on The Privilege's Narrow Applicability ................................. 6

        A.   The Medicaid Investigative Privilege Should Not Apply ....................................... 7

        B.   The Medicaid Investigative Privilege is Narrow in Scope ...................................... 9

        i.   Interrogatories 11, 16, and 17 ............................................................................. 10

        ii.   Requests for Production 27 and 28 .................................................................... 12

        iii..   Requests for Production 29 and 30 .................................................................... 13

        iv.   Requests for Production 21, 22, 23, 25, and 26 ................................................. 13

CONCLUSION .................................................................................................................. 14

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A & R Body Specialty & Collision Works, Inc. v. Progressive Cas. Ins. Co.*,
  No. 3:07CV929 WWE, 2013 WL 6044333 (D. Conn. Nov. 14, 2013)....................................4

*In re Air Passenger Computer Rsrv. Sys. Antitrust Litig.*,
  116 F.R.D. 390 (C.D. Cal. 1986) ...................................................................................7

*APL Logistics Americas, Ltd. v. TTE Tech., Inc.*,
  No. 3:10-CV-02234-P, 2013 WL 12124588 (N.D. Tex. Mar. 5, 2013) ...............................2

*Austin v. Kroger Texas, L.P.*,
  864 F.3d 326 (5th Cir. 2017) ........................................................................................2

*Black Card, LLC v. Visa U.S.A., Inc.*,
  No. 15-CV-027-S, 2016 WL 7344061 (D. Wyo. Sept. 12, 2016) .............................5

*Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*,
  No. 1:13-CV-1053-RCL, 2019 WL 5864595 (D.D.C. Nov. 8, 2019) .......................5

*Fed. Trade Comm'n v. Liberty Supply Co.*,
  No. 4:15-CV-829, 2016 WL 4272706 (E.D. Tex. Aug. 15, 2016) ............................7

*United States ex rel. Goodman v. Arriva Med.*,
  LLC, 471 F. Supp. 3d 830 (M.D. Tenn. 2020) ........................................................4

*Jacquez v. GEO Int'l Mgmt., LLC*,
  No. EP-20-CV-183-KC, 2022 WL 4127517 (W.D. Tex. Sept. 9, 2022)..................7

*Kaye v. Lone Star Fund V (U.S.), L.P.*,
  No. 3:09-CV-02263-M-BK, 2012 WL 13093400 (N.D. Tex. Mar. 23, 2012) .......10

*Paxton v. Texas Dep't of State Health Servs.*,
  500 S.W.3d 702 (Tex. App. 2016)...........................................................................9

*United States ex rel. Poehling v. UnitedHealth Grp., Inc.*,
  No. CV 16-8697 MWF (SSX), 2018 WL 11350603 (C.D. Cal. Oct. 23, 2018) .....4

*S. Ill. Laborers' & Emps. Health & Welfare Fund v. Pfizer Inc.*,
  No. 06 C 1818, 2007 WL 4557100 (N.D. Ill. Dec. 21, 2007) ..................................5

*S.E.C. v. Sells*,
No. 11-CV-04941 CW NC, 2013 WL 450844 (N.D. Cal. Feb. 4, 2013) ..............................11

*United States v. Chevron U.S.A., Inc.*,
186 F.3d 644 (5th Cir. 1999) ..............................................................................................7

*Universal Health Services, Inc. v. U.S. ex rel. Escobar*,
579 U.S. 176 (2016).....................................................................................................1, 3

*Wi-Lan, Inc. v. Acer, Inc.*,
No. 2:07-CV-473-TJW-CE, 2010 WL 5559546 (E.D. Tex. Dec. 30, 2010).........................2

*Williams v. C. Martin Co. Inc.*,
No. CIV.A. 07-6592, 2014 WL 3095161 (E.D. La. July 7, 2014) ...........................................4

*Zamperla, Inc. v. I.E. Park SRL*,
No. 613CV1807ORL37KRS, 2015 WL 12836001 (M.D. Fla. Sept. 22, 2015).....................11

## Statutes

5 U.S.C. § 552..........................................................................................................................7

False Claims Act ......................................................................................................................3

Freedom of Information Act ..................................................................................................7, 8

Tex. Gov't Code Ann. § 531.102 ............................................................................................12

Tex. Gov't Code § 531.1021(g) ...........................................................................8, 9, 12, 13

Texas Public Information Act ..................................................................................................8

## Other Authorities

Fed. R. Civ. P. 26(b)(1)............................................................................................................7

Fed. R. Civ. P.  33(b)(4)...........................................................................................................9

Fed. R. Civ. P.  54(b) ...........................................................................................................1, 2

Fed. R. Civ. P.  59(e) ...............................................................................................................2

iii

Defendants Planned Parenthood Gulf Coast, Inc. ("PPGC"), Planned Parenthood of Greater Texas, Inc. ("PPGT"), Planned Parenthood South Texas, Inc. ("PPST"), Planned Parenthood Cameron County, Inc. ("PP Cameron County"), Planned Parenthood San Antonio, Inc. ("PP San Antonio") (collectively, "Affiliate Defendants") move pursuant to Federal Rule of Civil Procedure 54(b) for reconsideration of the Court's September 1, 2022 Order [Dkt. 161] on Affiliate Defendants' Motion to Compel to the State of Texas [Dkt. 127 and 128].

## <u>INTRODUCTION</u>

In its Order, this Court held that Affiliate Defendants' discovery requests were relevant but nonetheless excused Texas from compliance (by answering Interrogatories 12 and 13) based on the asserted burden to the State for compliance.  Defendants respectfully suggest that the Court gave short shrift to the importance of the materiality element set forth in *Escobar*, which must be weighed in the proportionality calculus, as well as the significant damages sought in this case. Accordingly, this Court should reconsider its Order related to Interrogatories 12 and 13 and compel Texas to respond.

In addition, this Court held that Texas can withhold documents under a Medicaid investigative privilege, which does not apply in federal court.  Moreover, this statute applies only to materials subpoenaed or compiled in the course of a Medicaid fraud investigation.  The Court stated that the privilege applies to a broad swath of Affiliate Defendants' discovery requests, even though many of these requests do not seek information subpoenaed or compiled during an investigation.  Accordingly, Affiliate Defendants respectfully request that this Court reconsider its decision or clarify the scope of its Order to reflect the privilege's narrow scope.

## LEGAL STANDARDS

### I.    Motion for Reconsideration

A district court may revise an interlocutory order "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017).  "Under Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." Austin, 864 F.3d at 336 (internal quotations and citation omitted).  Rule 54(b) is "less stringent" and "more flexible" than Rule 59(e), which imposes a "more exacting" standard.  *Id.* at 336-37 (finding abuse of discretion when district court applied Rule 59(e)'s standard).  "Although the precise standard for evaluating a motion to reconsider under Rule 54(b) is unclear, whether to grant such a motion rests within the discretion of the court."  *Dos Santos v. Bell Helicopter Textron, Inc.* Dist., 651 F. Supp. 2d 550, 553 (N.D. Tex. 2009).  Courts will grant reconsideration when, in reviewing a prior order, the court determines it erred.  *See, e.g.*, *Wi-Lan, Inc. v. Acer, Inc.*, No. 2:07-CV-473-TJW-CE, 2010 WL 5559546, at *2 (E.D. Tex. Dec. 30, 2010).

### II.    Motion for Clarification

"While motions to clarify do not espouse an exacting legal standard, district courts possess the inherent procedural authority to clarify a prior order for causes seen by it to be sufficient." *APL Logistics Americas, Ltd. v. TTE Tech., Inc*., No. 3:10-CV-02234-P, 2013 WL 12124588, at *2 (N.D. Tex. Mar. 5, 2013).  Because clarification is "a discretionary area, a court may modify or clarify 'as justice requires.'"  *Id.* (internal quotations omitted).

2

## ARGUMENT

**I.     The Court Should Reconsider its Ruling on Interrogatories 12 and 13 Because The Importance of The Requested Information Outweighs Any Burden**

In its Order, this Court correctly held the information Affiliate Defendants seek about the State's treatment of other healthcare providers is relevant to materiality.  *See* Dkt. 161 at 9-10.  In its unanimous opinion in *Universal Health Services, Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176 (2016), the Supreme Court spoke loudly about the importance of the materiality element in False Claims Act litigation.  Its opinion *three times* calls the materiality requirement "rigorous," *id.* at 181, 192, 195 n.6; otherwise refers to it as "demanding," *id.* at 194; and calls for it to be "enforced," *id.* at 181, 192.  The Court further offered a lengthy disquisition of the types of evidence that would establish materiality, holding that:

> if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is *very strong* evidence that those requirements are not material. Or, if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is *strong evidence* that the requirements are not material.

*Id.* at 195 (emphasis added).  Here too, the Court emphasized the centrality of the above types of evidence to prove or *disprove* materiality, calling it "strong" *twice*.

Affiliate Defendants here request information and evidence directly within this wheelhouse, attempting to ascertain whether the State has treated other terminated providers similarly to how it purports to treat the Defendants in this litigation.  If the State has not and does not terminate providers for similar alleged conduct that is alleged against Defendants here, that is undoubtedly "very strong evidence" of a lack of materiality.  Similarly, if the State does not seek administrative recoupment or bring FCA litigation against other providers based on payments

made subsequent to a notice of termination, that too is "very strong evidence" going to materiality. What Defendants seek here goes to the heart of this dispute.

Accordingly, the burden claimed by the party resisting discovery must be weighed against the critical nature of the evidence sought. *See, e.g.*, *A & R Body Specialty & Collision Works, Inc. v. Progressive Cas. Ins. Co.*, No. 3:07CV929 WWE, 2013 WL 6044333, at *12 (D. Conn. Nov. 14, 2013) (requiring compliance with subpoena over undue burden objection because the "information [was] probative of central issues in the case"). Thus, when "documents at issue are not . . . trivial," "any burden on the [government] is outweighed by [an FCA defendant's] need to fully explore the importance of these documents." *Williams v. C. Martin Co. Inc.*, No. CIV.A. 07-6592, 2014 WL 3095161, at *3 (E.D. La. July 7, 2014).

Claims of burden are particularly underwhelming where, as here, the party from which discovery is sought is both a government agency and a plaintiff. *See U.S. ex rel. Poehling v. UnitedHealth Grp., Inc.*, No. CV 16-8697 MWF (SSX), 2018 WL 11350603, at *7 (C.D. Cal. Oct. 23, 2018) (noting, in the context of a privilege dispute, that the "effort" involved in complex document productions "is a very ordinary aspect of this type of litigation" and "[t]he government should have anticipated this burden when it filed the action"); *United States ex rel. Goodman v. Arriva Med.*, LLC, 471 F. Supp. 3d 830, 845 (M.D. Tenn. 2020) ("[T]he government, for its part, is encouraged to remember that, given that it chose to spend . . . resources on its one-sided investigation, it bears a heavy burden in arguing that, now that the defendants have a turn, the government's means are too scant to cooperate."). Texas is a plaintiff in this action, and it chose to investigate Affiliate Defendants and then join in a lawsuit where Relator has sweeping claims

under the FCA, which only underscores that any burden imposed on Texas is outweighed by Affiliate Defendants' need for discovery on materiality.[1]

That Plaintiffs seek upwards of a billion dollars in damages further demonstrates that any burden claimed by Texas is outweighed by the need for Texas to provide discovery relevant to materiality.  That is, because the "stakes are clearly quite high," the volume of damages claimed should be considered.  *See Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*, No. 1:13-CV-1053-RCL, 2019 WL 5864595, at *4 (D.D.C. Nov. 8, 2019).  Stated differently, no burden on Texas is "undue" in responding to interrogatories 12 and 13, given the volume of damages Texas seeks.  Indeed, courts have held that when a plaintiff seeks "hundreds of millions of dollars in damages," any discovery that "would subject Plaintiff to even a significant amount of expense and time does not create an undue burden" especially "given the relevance of the requests."  *Black Card, LLC v. Visa U.S.A., Inc.*, No. 15-CV-027-S, 2016 WL 7344061, at *3 (D. Wyo. Sept. 12, 2016).  That is, even if "requests may be burdensome," they are "not unduly burdensome" in light of the damages claimed.  *Id.; see also S. Ill. Laborers' & Emps. Health & Welfare Fund v. Pfizer Inc.*, No. 06 C 1818, 2007 WL 4557100, at *6 (N.D. Ill. Dec. 21, 2007) (burden not undue because, among other things, plaintiffs sought "billions of dollars in damages").

---

[1] As the Court has held, it is also no answer for Texas to assert that its own statutory claims do not require materiality.  Dkt. 161 at 10 ("the fact that Texas has only alleged Defendants violated TMFPA does not render discovery requests related to Relator's claims under the False Claims Act irrelevant").  Texas is no "third party" in this case, it is a co-plaintiff, and the Relator's claims are targeted heavily at the alleged fraud perpetuated on Texas Medicaid.  And, should Relator prevail, Texas would share in any recovery.

Texas's assertions relating to burden simply cannot outweigh the critical nature of evidence on materiality.[2]  While Texas provided a declaration saying that it would be "unduly burdensome" to respond to the information because the interrogatory does not limit the information sought (for example, by the type of provider) and Texas does not maintain its data in an easily accessible form to capture all parts of the interrogatories, *see* Dkt. 137-1 at 44-46, the declarant does not even attempt to make any particular showing.  Texas also never offered any alternative or compromise as to what information could be reasonably accessible, nor did it provide particulars as to what information is not reasonably accessible.  It simply refused to engage at all, instead making the blanket *ipse dixit* assertion that it would be too burdensome to make any substantive answer whatsoever.

In sum, Affiliate Defendants' Interrogatories 12 and 13 seek information that is not only relevant, it goes to a central issue in this case — materiality.  Any burden on Texas is not undue, both because Texas should have anticipated this type of discovery, as discovery on materiality is par for the course in FCA cases and because Texas seeks significant damages, which underscores the need for it to produce the requested information.

## II.   The Court Should Reconsider or Clarify The Scope of Its Ruling on The Medicaid Investigative Privilege Based on The Privilege's Narrow Applicability

In addition, Affiliate Defendants ask this Court to reconsider or clarify the scope of its Order.  This Court determined that a Medicaid investigative privilege applies; however, this is a state court privilege that does not apply in federal court.  Federal law does not recognize a similar "basic privilege," and sufficient safeguards already exist to protect the confidentiality of the

---

[2] Plaintiffs of course have the burden to establish — and must produce evidence of — materiality, and they cannot surprise Defendants with any relevant evidence.  Affiliate Defendants are entitled, as well, to obtain evidence that may show a *lack* of materiality in preparing their defense.

investigative materials.  Moreover, this Court determined that pursuant to the privilege, Texas need not answer Interrogatories 8, 10, 11, 16, 17, nor produce documents (beyond a categorical privilege log) in response to Requests for Production 14, 21-23, and 25-32.  *See* Dkt. 161 at 5.  These Requests span a broad range of information, and many do not target information subpoenaed or compiled as part of a Texas Medicaid investigation.

### A.     The Medicaid Investigative Privilege Should Not Apply

As an initial matter, the Medicaid investigative privilege should not apply.  This Court noted that just because Texas law recognizes a privilege would not itself be a "good reason for respecting the privilege in federal court," because of the "cost to the hindrance of finding the truth in a federal proceeding."  Dkt. 161 at 6-7.  But the Court went against this logic, which weighs *against* recognizing the privilege, by stating that the United States and Texas recognize the "same basic privilege" because the FCA makes "any documentary material, answers to written interrogatories, or oral testimony provided under civil investigative demand exempt from disclosure under section 552 of Title 5."  Dkt. 161 at 7.  However, 5 U.S.C. § 552 is the Freedom of Information Act ("FOIA").  FOIA exemptions apply only to what evidence is shielded from the *general public* but do not limit the types of evidence available in discovery.  *See United States v. Chevron U.S.A., Inc.*, 186 F.3d 644, 649 (5th Cir. 1999).  FOIA has no bearing on whether information is discoverable in federal court *litigation*, and it provides no applicable privilege.  To the contrary, courts have made clear that, since the "law enforcement privilege does not apply" to civil investigations, documents compiled during a civil investigation are discoverable in federal court.  *Fed. Trade Comm'n v. Liberty Supply Co.*, No. 4:15-CV-829, 2016 WL 4272706, at *9 (E.D. Tex. Aug. 15, 2016).

In fact, CID testimony, interrogatory responses, and documents gathered during an investigation conducted by the Department of Justice (or other federal agencies) are routinely produced in litigation. *See, e.g.*, *Jacquez v. GEO Int'l Mgmt., LLC*, No. EP-20-CV-183-KC, 2022 WL 4127517, at *5 (W.D. Tex. Sept. 9, 2022) (discussing FCA Civil Investigative Demand ("CID") records that had been produced and entered into evidence in subsequent litigation); *cf. In re Air Passenger Computer Rsrv. Sys. Antitrust Litig.*, 116 F.R.D. 390, 393 (C.D. Cal. 1986) (noting, in the antitrust context, that Congress intended for "defendants [to] have full discovery rights and . . . obtain all relevant CID information pursuant to Federal Rule of Civil Procedure 26(b)(1)"). Thus, while this Court's opinion invokes a "basic privilege" under federal law, investigative materials are routinely provided in federal FCA litigation, even if unavailable under FOIA.

Moreover, sufficient provisions already exist to safeguard protected health information, which is an "important policy" that this Court relied on in its opinion. *See* Dkt. 161 at 7. Indeed, the parties' agreed protective order, which governs information in this case, already protects health information, so Texas can produce documents reflecting health information consistent with the protective order, and such protected health information may be designated "confidential." *See* Dkt. 133 at 2.

Finally, this Court should reconsider its determination that Texas need only produce a categorical privilege log. This determination goes against the parties' agreement. In their ESI Protocol, the parties agreed to produce document-by-document logs including certain agreed-upon fields and identifying the specific privilege or protection claimed, the type of document, and the general subject matter of the document. *See* Dkt. 130-1 at 14. A document-by-document analysis is necessary given the significant issues regarding the privilege's scope, which are further

8

discussed below.  Because a categorical log is unlikely to provide sufficient information to assess privilege's applicability, Affiliate Defendants believe *in camera* review is likely to become necessary in the absence of a detailed, document-by-document log.

>    **B.    The Medicaid Investigative Privilege is Narrow in Scope**

By its own terms, the Texas Medicaid privilege protects "information and materials subpoenaed or compiled by the [Texas HHSC-OIG] in connection with an audit, inspection, or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under [the Texas Public Information Act]." Tex. Gov't Code § 531.1021(g).  Based on a plain reading of the statute, this means Texas can withhold *only* information subpoenaed or compiled "in connection with an audit, inspection, or investigation."  The Texas court of appeals has noted there are limits on the privilege, so communications and documents that were not compiled for a specific investigation are not privileged. *See Paxton v. Tex. Dep't of State Health Servs.*, 500 S.W.3d 702, 707 (Tex. App. 2016) (noting that "section 531.1021(g) of Subchapter C is limited to the subject matter of the OIG's responsibilities under Subchapter C generally—preventing, detecting, auditing, and investigating 'fraud, waste, and abuse in the provision and delivery of all health and human services in the state'").

As discussed below, many of the documents Texas plans to withhold are not information subpoenaed or compiled for an investigation.  Accordingly, this Court's Order permits Texas to withhold information and documents that are outside the scope of the privilege.  Because many of these documents cannot be properly withheld under section 531.1021(g), Affiliate Defendants request that this Court reconsider or clarify the scope of its Order, in particular as to Interrogatories 11, 16, and 17, and Document Requests 21, 22, 23, 25, 26, 27, 28, 29, and 30.

9

i.      **Interrogatories 11, 16, and 17**

This Court held that the privilege applies as to Interrogatories 11, 16, and 17.  *See* Dkt. 161 at 5.  However, Texas did not raise *any* privileges in objection to these interrogatories.  *See* Dkt. 128-3 at 18-24.  Therefore, any assertion of privilege was waived, and Federal Rule of Civil Procedure 33(b)(4) bars Texas's untimely objections.  The Court should reconsider its ruling for this reason alone.

Moreover, these Interrogatories do not seek information related to an investigation and do not call for privileged materials subpoenaed or compiled by OIG.  Each of these interrogatories simply seek support for Texas's contentions related to when payments may become overpayments, its views on whether Planned Parenthood Affiliate Defendants were qualified providers on certain dates, and its contention that termination did not violate free choice of provider requirements.[3] "Requests for such 'contentions,' i.e., theories and legal bases of a . . . party for bringing suit, are often best explored via contention interrogatories," so it is critical that Texas respond to these interrogatories.  *Kaye v. Lone Star Fund V (U.S.), L.P.*, No. 3:09-CV-02263-M-BK, 2012 WL 13093400, at *3 (N.D. Tex. Mar. 23, 2012).  Surely Texas has *some* bases for positions taken in its allegations, and Affiliate Defendants are entitled to learn and probe Texas's bases for these

---

[3] More specifically, Interrogatory 11 seeks Texas's basis for its views "regarding whether a payment, to which a Medicaid provider is entitled at the time of payment, can become an overpayment based on a subsequent change in law and/or a judicial decision."  Interrogatory 16 asks Texas to describe its views and the basis for its views "on whether each of the Planned Parenthood Affiliates was a Texas Medicaid provider prior to January 4, 2021, whether each of the Planned Parenthood Affiliates was a Texas Medicaid provider between January 4, 2021 and February 3, 2021, and whether each of the Planned Parenthood Affiliates was a Texas Medicaid provider after February 3, 2021."  And Interrogatory 17 asks Texas to "[d]escribe in detail why Texas believes that the termination of each of the Planned Parenthood Affiliates from Texas Medicaid does not violate Medicaid's free choice of provider requirement."

10

contentions.  It cannot bring a fraud claim against a defendant and then hide behind a privilege when asked the basis for its contention that the defendant committed fraud.

These interrogatories are not asking for information "subpoenaed or compiled" during an investigation.  Even if the bases for Texas's positions came from guidance from HHSC, the OAG, or other governmental entities inside the State, the asserted privilege is not broad enough to cover *all* communications between State entities: it only covers information subpoenaed or compiled during the course of a Medicaid fraud investigation.

And even if some underlying materials were subpoenaed or compiled during an investigation, that would not support Texas's assertion of privilege in response to contention interrogatories.  Boilerplate assertions of privilege — including governmental investigative privileges or any other privileges Texas might seek to assert — are not a basis to decline to answer a contention interrogatory.  Indeed, courts have declined objections to interrogatories based on governmental privileges when the agency put forth "no evidence . . . that [information sought] was gleaned through [interviews conducted as part of investigation]."  *S.E.C. v. Sells*, No. 11-CV-04941 CW NC, 2013 WL 450844, at *1 (N.D. Cal. Feb. 4, 2013); *cf. Zamperla, Inc. v. I.E. Park SRL*, No. 613CV1807ORL37KRS, 2015 WL 12836001, at *4 (M.D. Fla. Sept. 22, 2015) ("a contention interrogatory does not intrude upon any asserted privilege or protection").  At a minimum, then, Texas was required to put forth some evidence to support its claim that the Medicaid investigative privilege applies, *i.e.*, that responding to these interrogatories would require producing information subpoenaed or compiled by OIG or OAG in connection with a Medicaid fraud investigation.  Because it has failed to do so — and indeed failed to timely raise any privilege

objection at all, the Court should reconsider its order holding that the Medicaid investigative privilege applies to Interrogatories 11, 16, and 17.

### ii.    Requests for Production 27 and 28

Requests 27 and 28 seek documents related to other healthcare providers. Request 27 asks for documents "related to termination by the United States, Texas, or Louisiana of any Medicaid provider unrelated to Planned Parenthood for violations of laws or regulations related to medical research, fetal tissue procurement, or an agreement to engage in fetal tissue procurement." Dkt. 128-4 at 40. Request 28 seeks documents "related to termination by the United States, Texas, and/or Louisiana of any Medicaid, Texas Medicaid, or Louisiana Medicaid provider on basis that the entity was not a qualified provider." Dkt. 128-4 at 41.

Section 531.1021(g) does not preclude all discovery related to other healthcare providers, as any final terminations or reports related to other HCPs are plainly discoverable, even if the underlying investigations are not. Texas law makes clear that final reports from Medicaid investigations are subject to disclosure and not privileged. *See* Tex. Gov't Code Ann. § 531.102 ("A final report on an audit, inspection, or investigation is subject to required disclosure under Chapter 552."). Accordingly, to the extent there have been any investigations or audits related to termination of a healthcare provider due to fetal tissue procurement or a determination that the provider was not qualified, Texas must produce the final report, which is discoverable. If no such reports exist because Texas has *never* investigated or terminated any other provider for fetal tissue donations nor terminated any other provider after determining it was not qualified, Texas should make clear that responsive documents do not exist.

### iii.     Requests for Production 29 and 30

Requests 29 and 30 do not seek documents specific to any Defendant or particular investigation.  Request 29 seeks documents "related to [Texas's] understanding of relationships between affiliated companies under Medicaid, Texas Medicaid, or Louisiana Medicaid and any laws, regulations, policies, or guidance regarding whether and how a finding that one company is not a qualified provider may affect an affiliated company's qualifications as a provider."  Dkt. 128-4 at 43.  Request 30 seeks documents "related to [Texas's] views regarding whether a payment, to which a Medicaid provider is entitled at the time of payment, can become an overpayment based on a subsequent change in law and/or a judicial decision." Dkt. 128-4 at 44.

Any responsive documents would not have been compiled in the course of a particular investigation.  For example, any internal guidance or document's reflecting a Texas entity's position on these issues would be outside the scope of an investigation.  Since these Requests target information outside the scope of section 531.1021(g), responsive documents are not privileged.

### iv.     Requests for Production 21, 22, 23, 25, and 26

These Requests ask for documents showing Texas's opinions and views on various topics related to Affiliate Defendants— including documents related to the free choice of provider requirement, recoupment proceedings, and the effect of injunctions.[4]  Texas may have documents

---

[4] Requests 21 and 22 seek documents relating to the effect of injunctions related to the potential termination of any Planned Parenthood Defendant's participation in Medicaid, Texas Medicaid, and/or Louisiana Medicaid.  Request 23 seeks documents relating to whether termination violated free choice of provider requirements.  Request 25 seeks documents "related to whether any Planned Parenthood Defendant had an obligation to repay any amount paid by Texas Medicaid to any Planned Parenthood Affiliate."  Dkt. 128-4 at 38.  Request 26 seeks documents "relating to whether Medicaid, Texas Medicaid and/or Louisiana Medicaid could or should seek recoupment of amounts reimbursed to any Planned Parenthood Defendant from 2010 to the present." Dkt. 128-4 at 39.

13

in its possession responsive to these RFPs that were not subpoenaed or compiled *for an investigation*.  As stated, communications within the Texas government that are not specifically compiled during an investigation are not protected by section 531.1021(g).  If, for example, Texas HHSC or OAG issued opinions or had communications related to the legal impact or propriety of injunctions, those opinions or communications would be outside of the process of *investigating* a particular provider for fraud, and they should not be shielded from discovery.  Similarly, opinions or communications related to determining whether the State could seek recoupment or whether there was an obligation to repay is not compiled during an investigation, especially since many of these communications likely occurred well after any investigation was complete and well after Texas's initial termination notices had been sent.

<u>**CONCLUSION**</u>

For the foregoing reasons, Affiliate Defendants request that this court reconsider or clarify its September 1, 2022 Order [Dkt. 161].

s/ *Craig D. Margolis*_____
Craig D. Margolis
Craig.Margolis@arnoldporter.com
Tirzah S. Lollar
Tirzah.Lollar@arnoldporter.com
Christian Sheehan
Christian.Sheehan@arnoldporter.com
Emily Reeder-Ricchetti
Emily.Reeder-Ricchetti@arnoldporter.com
Megan Pieper
Megan.Pieper@arnoldporter.com
Alyssa Gerstner
Alyssa.Gerstner@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.5000
Fax: +1 202.942.5999

14

Christopher M. Odell
Texas State Bar No. 24037205
Christopher.Odell@arnoldporter.com
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: +1 713.576.2400
Fax: +1 713.576.2499

Paula Ramer
250 West 55th Street
New York, New York 10019-9710
T: +1 212.836.8474
Paula.Ramer@arnoldporter.com

Ryan Patrick Brown
Texas State Bar No. 24073967
brown@blackburnbrownlaw.com
1222 S. Filmore
Amarillo, TX 79101
Tel: (806) 371-8333
Fax: (806) 350-7716

*Attorneys for Defendants Planned
Parenthood Gulf Coast, Inc., Planned
Parenthood of Greater Texas, Inc.,
Planned Parenthood of South Texas, Inc.,
Planned Parenthood Cameron County,
Inc., and Planned Parenthood San
Antonio, Inc.*

September 29, 2022

**<u>CERTIFICATE OF SERVICE</u>**

       I hereby certify that on  September 29, 2022, the foregoing document was electronically filed with the Clerk of Court using CM/ECF.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

*/s/ Craig D. Margolis*___                

## **CERTIFICATE OF CONFERENCE**

On September 29, in accordance with Local Rule 7.1(b), counsel for Defendants certify that they conferred with counsel for Texas regarding the relief requested in this motion.  Texas's counsel Raymond Winter participated in the conference and stated that Texas is opposed.

*/s/ Craig D. Margolis*___