## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ALEX DOE, Relator, | § § § | |
| THE STATE OF TEXAS, *ex rel.* ALEX DOE, Relator, | § § § | |
| THE STATE OF LOUISIANA, *ex rel.* ALEX DOE, Relator, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 2:21-CV-00022-Z |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., PLANNED PARENTHOOD GULF COAST, INC., PLANNED PARENTHOOD OF GREATER TEXAS, INC., PLANNED PARENTHOOD SOUTH TEXAS, INC., PLANNED PARENTHOOD CAMERON COUNTY, INC., PLANNED PARENTHOOD SAN ANTONIO, INC., | § § § § § § § § § § § § § § | |
| Defendants. | § | |

## RELATOR'S OPPOSITION TO PPFA'S EMERGENCY MOTION FOR PROTECTIVE ORDER, EXPEDITED BRIEFING, AND STAY OF DEADLINE TO MOVE TO PRESERVE CONFIDENTIALITY

1

Relator Alex Doe files this opposition to Defendant Planned Parenthood Federation of America (PPFA)'s Emergency Motion for Protective Order, Expedited Briefing, and Stay of Deadline to Move to Preserve Confidentiality. Dkt. 188. The Court already denied the aspects of PPFA's motion seeking emergency relief and a stay of the deadline. For the reasons set forth below, Relator respectfully requests the Court deny PPFA's motion and affirm the language of the agreed-upon Protective Order, which places the burden of preserving confidentiality designations on the designating party, and which expressly warns against the abuse or prophylactic use of confidential designations. The Court should also apply the consequence given in the Protective Order for designation abuse or prophylactic designation and hold that "all such designations"—all confidential designations of documents not actually containing Protected Health Information (PHI) or Personal Identifying Information (PII) as defined by the Protective Order[1]—are "waived." Dkt. 133 at 6. The Court should also award Relator attorneys' fees for the cost of reviewing PPFA's designations and responding to their motions for protective orders.

**INTRODUCTION**

PPFA has engaged in clearly prophylactic designations in direct contravention of the Protective Order. To date, PPFA has produced a total of 77,878 documents. It has designated nearly three-quarters of those documents—56,108—AEO, and an

---

[1] The one exception is "the names of non-publicly identified Planned Parenthood employees," which the Protective Order defines as PII. But given PPFA's abuse of that category, *see* Dkt. 189-2, it should lose that special category of PII. PPFA also claimed that some documents had PII as defined by the Protective Order but did not, and cell phone numbers are not covered by the protective order. *See* Dkt. 133; Dkt. 189 at 13.

additional 10,942 documents as "Confidential." Thus, nearly three-quarters of PPFA's *entire production* cannot even be viewed by the parties, including Relator, whose investigation of Defendants and underlying knowledge of their practices is important to the prosecution of the case. PPFA is outraged that it has to justify these designations, but the Protective Order clearly places the burden on the designating party to "demonstrate[] the propriety of its designation." Dkt. 133 at 6. In PPFA's view, because it views its own documents as "private" or "sensitive," it may designate nearly all of its production as confidential or AEO, then force Relator's counsel to go document-by-document through 67,050 documents guessing at why the designation was asserted and challenging those assertions, even though there is blatant evidence of prophylactic or blanket designation in violation of the Protective Order. Obviously, that is impossible with the time constraints here, and it would result in most of the documents produced by PPFA being unavailable to the parties to the litigation— documents this Court has already found are "probative of every issue in this case." Dkt. 153 at 3. If the process for retaining designations is onerous, that is because it was meant to be, given the presumption of the openness of court proceedings. And if such large numbers of documents were not designated—i.e., if PPFA had been properly judicious about its designations—the process would not be onerous for either party. The Court should deny the motion. It should also apply the consequence given in the Protective Order for designation abuse or prophylactic designation.

## BACKGROUND

PPFA produced three volumes of documents in July and early August.[2] After reviewing the documents, Relator's counsel sent the following written objection to PPFA's counsel on August 17, 2022:

> We have reviewed PPFA's document productions and this email serves as our written objection and request under Paragraph 7 of the Protective Order that you change the designations of (1) all documents marked "Confidential" that do not contain "protected health information" as defined by Paragraph 2 of the Protective Order and (2) all documents marked "Attorney Eyes Only" that do not contain Personal Identification Information listed in examples 1-6 of Paragraph 2 of the Protective Order.
>
> In addition, it appears that almost every non-public document that PPFA produced is designated either "Confidential" or "Attorney Eyes Only," with a significant majority being designated "Attorney Eyes Only." Thus, it appears that you have "used such designations in a purely prophylactic manner," which violates Paragraph 8 of the Protective Order.
>
> We are available to meet and confer on this issue pursuant to Paragraph 7 of the Protective Order.

Ex. A.

PPFA's counsel responded:

> I'm afraid I'm not following your objection. The "Confidential" designation in the protective order includes other information beyond "protected health information," and the "Attorneys Eyes Only" designation extends to other information beyond the personally identifying information listed in examples 1-6 of Paragraph 2 of the Protective Order. Also, we did not use those designations in a purely prophylactic manner, as you suggest, so if there are specific documents that you believe are mismarked, we would ask that you please identify those (or at least provide some examples as a starting point) so we can address any concerns.

---

[2] In Relator's Opposition to PPFA's first Motion for Protective Order, Relator stated there were four volumes produced at this time. Dkt. 189 at 4. Relator regrets the error.

Ex. A.

Relator's counsel reiterated the written objection:

> Our objection is to every document you have designated as confidential
> or AEO other than those that contain protected health information or
> personal identifying information listed in example (1)-(6) in Paragraph
> 2 of the Protective order. If you can provide us with the basis for your
> designations of documents not containing those items, we may be able
> to withdraw our objections to some of the documents. Let us know when
> you want to meet and confer.

Ex. A.

Relator's counsel subsequently heard nothing from PPFA's counsel until the
afternoon of August 30, the day before PPFA's motion for protective order was due,
when PPFA's counsel proposed a meet-and-confer. Ex. A. Counsel conferred by
telephone and PPFA's counsel stated that they believed about 250 documents were
in dispute based on Relator's objections, PPFA had reviewed its designations, and
was prepared to offer the reasons for the designations of those documents. Counsel
also stated that while PPFA upgraded a few documents to AEO during its review, it
would also downgrade some to "Confidential" that were previously marked AEO.
PPFA filed a Motion for Protective Order and Clarification the following day, August
31, 2022. Dkt. 157.

PPFA produced two additional volumes of documents in late August, which
included 83 documents. Relator provided written objections to specific confidentiality
designations in that production. Ex. A. The parties met and conferred on those
objections at PPFA's request the same day their motion for protective order was due
on September 13, 2022. PPFA provided another chart purporting to explain its
designations of the disputed documents that evening about two hours before it filed

its second motion for protective order. Dkt. 174. Relator's response to that motion is due on October 4, 2022.

In response to the Court's Order compelling PPFA to produce additional documents entered on August 30, 2022, PPFA has produced a significant number of additional documents, nearly three-quarters of which have been designated AEO. Ex. B. Rather than taking seriously Relator's continued concerns about prophylactic designations, PPFA ramped up its designations in subsequent productions, designating nearly 100% of subsequent large productions as either AEO or Confidential, and over three-quarters AEO. Ex. B. at Ex. 1. Given the huge numbers of AEO and Confidential designations in these productions, and based on Relator's review and identification of designation abuses in the previous production sets, Relator objected to the designations "of (1) all documents marked 'Confidential' that do not contain 'protected health information' as defined by Paragraph 2 of the Protective Order and (2) all documents marked 'Attorney Eyes Only' that do not contain Personal Identification Information listed in examples 1-6 of Paragraph 2 of the Protective Order. Dkt. 188-9 at 4. After PPFA's counsel protested that PPFA would have to justify this massive number of designated documents, Relator's counsel informed PPFA's counsel that Relator stood on the objection to PPFA's blanket designations. Dkt. 188-9 at 2.

PPFA's motion for protective order in response to this objection was due on September 28, 2022. On September 21, 2022, PPFA filed the instant motion. Dkt. 188. The Court denied PPFA's motion to expedite and stay its deadline but asked

Relator to respond to the motion by September 29. Dkt. 193. PPFA filed its third motion for protective order on September 28, 2022. Dkt. 195.

## LEGAL STANDARD

The rules governing discovery in federal court are designed to "accomplish full disclosure of the facts, eliminate surprise, and promote settlement." *S. Ry. Co. v. Lanham*, 403 F.2d 119, 127 (5th Cir. 1968) (discussing Federal Rule of Civil Procedure 34). As a result, the "deposition-discovery rules are to be accorded a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Protective orders serve as narrow exceptions to this general rule of disclosure and allow parties to keep specific categories of documents confidential by agreement. *See* 8A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2043 (3d ed.) ("It is well settled that there is no absolute privilege for trade secrets and similar confidential information.").

The parties' agreement in a protective order governs not only what materials are protected, but also the method of contesting a confidentiality determination. "The starting point for interpretation of a protective order lies in its plain language." *S.E.C. v. Merrill Scott & Associates, Ltd.*, 600 F.3d 1262, 1271–72 (10th Cir. 2010) (citations omitted). When a protective order is "part of a court-approved agreement, it must be construed according to general principles of contract law." *See City of Hartford v. Chase*, 942 F.2d 130, 134–35 (2d Cir. 1991) (citations omitted). "Thus, deference is to be paid to the plain meaning of the language . . . and the normal usage of the terms selected." *Id*. (alteration in original). "An agreed protective order may be viewed as a

contract, and once parties enter an agreed protective order they are bound to its terms." *Orthoflex, Inc. v. ThermoTek, Inc.*, 3:11–CV–0870–D, 2013 WL 3095106, at *3 (N.D. Tex. June 20, 2013) (citations omitted).

"Rule 26(c)'s requirement of a showing of good cause to support the issuance of a protective order indicates that 'the burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir.1978)). In determining whether to grant a protective order, the court must balance the requesting party's need for the information against the injury that might result if uncontrolled disclosure is compelled. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994). Through this balancing process, courts should afford due weight to the affected party's privacy interests. *See id.* (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34–36 (1984)). Significantly, however, "privacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny." *Id*. Thus, courts should consider for what purpose the information is being sought—if the case involves matters of legitimate public concern or issues relating to public health or safety, those are factors weighing against a protective order. *Id*. at 787–88; *see also Morrow v. City of Tenaha*, No. 2–08–cv–288–TJW, 2010 WL 3927969, at *4 (E.D. Tex. Oct. 5, 2010). Here, "the [contested confidential] materials concern an issue of acute and substantial public interest, the hotly contested public debate concerning the "right to life" as opposed to

the "pro-choice" right to an abortion." *Gee v. Women's Health Care Ctr*., No. MC 18-4793, 2019 WL 2617109, at *6 (E.D. La. June 25, 2019). This case also involves government programs and taxpayer money. "In these circumstances of extreme public interest, openness and transparency are the higher value . . ." *Id.*

## ARGUMENT

### I.   PPFA's Prophylactic Designations Are Improper.

PPFA disputes that it used prophylactic designations, *see* Ex. A. But how else can it explain the fact that it designated such large percentages of its production as confidential? "Such a blanket confidentiality designation is, by itself, *prima facie* evidence of bad faith." *PPD Enterprises, LLC v. Stryker Corp*., No. CV H-16-0507, 2017 WL 3264001, at *1 (S.D. Tex. June 13, 2017), *clarified on denial of reconsideration*, No. CV H-16-0507, 2017 WL 3263469 (S.D. Tex. June 27, 2017). Moreover, designating three-quarters of a production AEO is blatantly abusive, as that designation should be used very sparingly since it prevents even the parties to the litigation from reviewing the documents. *See* Dkt. 133 at 7. *See E-Z Line Pipe Support, LLC, v. Piping Tech. & Prods., Inc*., No. 3:20-CV-00176, 2021 WL 2006604 (S.D. Tex. Jan. 26, 2021) (expressing concern that allowing blanket AEO designation "would put [plaintiff] at a severe disadvantage in this case, rendering its lawyers unable to confer with its client to meaningfully discuss settlement value and case strategy."); *see also Glob. Material Techs., Inc. v. Dazheng Metal Fibre Co*., 133 F. Supp. 3d 1079, 1084 (N.D. Ill. 2015) (The "Attorney's Eyes Only" designation "should only be used on a relatively small and select number of documents whe[n] a genuine

threat of competitive or other injury dictates such extreme measures . . . because discovery and trial preparation are made significantly more difficult and expensive when an attorney cannot make a complete disclosure of relevant facts to a client." (citation omitted)); *Ragland v. Blue Cross Blue Shield of N.D.*, No. 1:12-cv-080, 2013 WL 3776495, at *2 (D.N.D. June 25, 2013) ("[A]ny designation of material as 'attorneys' eyes only' should be reserved for only those rare instances in which it is truly justified, i.e., when there is a real expectation and entitlement to confidentiality under the law that has been preserved and not waived and there is no other effective alternative.").

Moreover, the Protective Order expressly prohibits prophylactic or blanket designations and warns of the consequence of that conduct: "If the Court should find that a litigant and/or its counsel have unfairly and without reasonable justification abused the process of designating any discovery materials or testimony as "Confidential" or has used such designation in a purely prophylactic manner, the Court may hold some or all such designations as having been waived." Dkt. 133 at 6.

## A. PPFA's overuse of the AEO designation will prejudice Relator and impede the prosecution of this case, as many courts have held.

The consequences of PPFA's overdesignation are clear: Relator's counsel is unable to show almost three-quarters of PPFA's documents to Relator, which will impede the discovery process in this case, resulting in prejudice to Relator. Courts have recognized this abuse and its implications on the prosecution of the case when parties have attempted to do what PPFA has done here:

10

> Many courts have held that the indiscriminate use of an AEO designation poses 'a significant handicap on the restricted litigant' because '[d]iscovery, trial preparation, and trial are made more difficult and expensive if an attorney cannot make complete disclosure of the facts to the litigant.' In addition, 'courts cannot ignore the fact that ninety-eight percent of cases are not tried, but are resolved in mediation and other settlement methods.' *Id.* Consequently, 'it is difficult, and perhaps impossible, for an attorney to counsel a client to compromise or even abandon a case on the basis of information kept secret from the client.'

*Procaps S.A. v. Patheon Inc.,* 2015 WL 4430955, *6 (S.D. Fla. July 20, 2015) (footnote omitted) (quoting *Arvco Container Corp. v. Weyerhaeuser*, No. 1:08–cv–548, 2009 WL 311125, at *6 (W.D. Mich. Feb. 9, 2009)); *see also Nvision Biomed. Techs. v. Jalex Med. LLC*, No. 5:15-CV-284 RP, 2016 WL 8259076, *4 (W.D. Tex. Feb. 1, 2016) ("Maintaining the AEO designation would likely significantly undermine Nvision's ability to prosecute the claims it raises in its First Amended Complaint."); *K & M Int'l, Inc. v. NDY Toy, L.L.C.,* No. 1:13CV771, 2015 WL 520969 (N.D. Ohio Feb. 9, 2015) (noting that preventing counsel from sharing and discussing discovery with their client "creates a substantial impediment" to the client's "ability to prepare and litigate" the claim); *see also, e.g., hibu Inc. v. Peck*, No. 16-cv-1055-JTM-TJJ, 2017 WL 957445, *2 (D. Kan. Mar. 13, 2017) ("In reviewing a challenge, the Court must balance the risk of inadvertent disclosure to competitors against the risk of prejudice to the other party's ability to prosecute or defend the present action." (citation omitted)); *Healthtrio, LLC v. Aetna*, 2014 WL 6886923, *4 (D. Colo. Dec. 5, 2014) (noting that "the risks [of disclosure] identified by Defendants must be balanced against the harm to Plaintiff in forcing its attorneys to try the case without the assistance of their

client," and "[t]he burden is on Defendants to justify restrictions on the use of information.").

PPFA's overdesignation has already resulted in unnecessary briefing over documents that should not have been designated in this fashion. It will also waste the parties' and the Court's resources because the parties will have to file and brief motions to seal should any of these documents be needed to support court filings. Given the quick litigation track this case is on, it will be extremely burdensome for the parties to have to brief additional motions for protective orders and sealing motions while also preparing for and briefing dispositive motions. And if the Court does not put a stop to Planned Parenthood's abusive designations, the PPFA Affiliates may follow the same tactic. As the Court just granted Relator's Motion to Compel against the PPFA Affiliates, they will presumably be producing large volumes of documents very soon, multiplying the waste and the prejudice to Relator.

**B. Courts have held that designating high percentages of productions AEO indicates bad faith and the burden to justify designations falls on the designating party.**

Contrary to PPFA's arguments, courts often rely on high percentages of AEO/Confidential designations when finding that a party acted in bad faith and do not shift the burden to the objecting party to respond on a document-by-document basis when large numbers of documents have been designated in obvious bad faith. In *United States ex rel. University Loft Company v. AGS Enterprises, Inc.*, 2016 WL 9461752 (W.D. Tex. Aug. 4, 2016), the defendants produced "a large number of documents—at least 90,000 pages—designated as AEO." *Id.* at *1. The plaintiffs

objected "to the 'mass' or 'global' designations of AEO," and asked defendants to either remove the improper AEO designations or, alternatively, re-review their production and redesignate the documents. *Id*. Defendants instead asked that the plaintiff provide an "itemized list of the documents that should not be classified as AEO." *Id*. The plaintiff moved to strike the AEO designations on the basis that they were not made in good faith. *Id*. The court held that "defendants must provide a 'good faith' basis to designate information as AEO and have not done so." *Id*. at *2. The court noted that "[o]ther courts have found that parties acted in bad faith by indiscriminately designating nearly their entire production of documents." *Id*. at *3 (citing *Healthtrio,* 2014 WL 6886923, at *2–3; *In re ULLICO Inc. Litig*., 237 F.R.D. 314, 317 (D.D.C. 2006)). "In similar circumstances, courts have required the designating party to re-designate documents that have been improperly designated, or provide 'a log explaining its justification for designating a document as AEO' and *have not shifted the burden of confidentiality review to the party challenging a designation made by the producing party*." *Id*. (emphasis added) (citations omitted). The court further noted that "some courts in analogous circumstances have awarded monetary sanctions for improper designation of documents." *Id*. Thus, the *producing* party bears the initial burden of justifying AEO designations, even upon the other party's objection, and the producing party can be forced to redesignate documents or provide a log explaining the justification for each AEO-designated document.

In *Healthtrio*, 2014 WL 6886923,[3] the protective order allowed "confidential" and two separate "outside attorneys' eyes only (OAEO)" designations. Approximately "90% of the production" was designated OAEO. *Id*. at *3. PPFA argues that percentage alone isn't enough to show "bad faith or improper designations," but the court relied heavily on the percentage of designated documents in holding "that Defendants acted in bad faith by indiscriminately designating nearly their entire production of documents as OAEO." *Id*. at *3. The court noted that "90% is an absurd number." *Id*. As a remedy, the court ordered (1) "that Defendants be compelled to re-review and re-designate its production of document," and (2) "attorneys' fees related to the motion for sanctions." *Id*. at *4.

In *In re ULLICO Inc. Litigation*, 237 F.R.D. 314, the court held that the defendant "acted in bad faith regarding its designation of documents as 'confidential' where it designated "over 99% of the roughly 60,000 documents as confidential" and "grossly abused the use of the confidential designation." *Id*. at 317 (internal citations omitted). The court ordered that the defendant "remove the 'confidential' designation from all of the documents it produced during discovery and review and re-label them in good faith according to the conditions set forth in the Protective Order within a period of 20 days," and that the defendant pay reasonable expenses and fees for the motion. *Id*. at 318–19. The court relied on both the percentage and the fact that many of the documents at issue were clearly not confidential (such as newspaper articles, press releases, annual reports, blank pages, and similar). *Id*.

---

[3] PPFA cites this case, admitting that "'indiscriminate' designation of a production as confidential under a protective order is improper." Dkt. 188 at 11.

In *Procaps,* 2015 WL 4430955, the defendant classified approximately 95% of its documents as "highly confidential." *Id*. at *1.  The court noted that "[i]t is difficult to believe that 95% of the documents produced in a court-ordered forensic examination of Procaps' electronically stored information ("ESI") are all actually worthy of the 'highly confidential' designation." *Id*. at *1. The court allowed plaintiffs to "use all the recently-produced . . . documents, even if marked "confidential" or "highly confidential," unless Procaps re-designates in good faith documents into one of these two categories" within 10 days. *Id*. The court also noted:

> Although federal courts do not seem to have established a specific bright line test to determine when a party's designation of discovery as AEO in excess of a certain percentage is deemed presumptively improper, designation percentages of 95%—such as the rate used here by Procaps—have frequently been condemned. In fact, many courts confronted with this level of designations (and *lower designations*) brand the percentage as 'absurd.'

*Id*. at *7.

Likewise, in *Paradigm All., Inc. v. Celeritas Techs., LLC*, 248 F.R.D. 598, 605 (D. Kan. 2008), the defendant's initial production of documents was designated 70% AEO, and second production was 80% AEO.  The plaintiffs challenged these blanket designations. Like PPFA here, the defendant argued that the plaintiff's "general" attack on its AEO designations is a violation of the protective order and that [plaintiff] must list each designation that it challenges in its motion." *Id*. at 605. But the court granted the plaintiffs' motion and required that the defendant provide "replacement documents and log." *Id*. at 606.

## II.    PPFA's AEO Designations are Overbroad.

PPFA appears to believe that nearly all of its documents are "sensitive" or "private", but that belief does not warrant special protection under the protective order or in the discovery process itself, nor does it qualify as a "particular and specific demonstration of fact" justifying a protective order. *In re Terra Int'l, Inc.*, 134 F.3d at 306. PPFA argues that it "deployed more than 20 attorneys to individually review documents," and "spent significant time communicating with . . . PPFA personnel about document review matters." Dkt. 188-1 at 5. But this is not a showing of good faith. And the documents themselves demonstrate that *thousands* were designated in blatant violation of the Protective Order and are not confidential.

### A. The Protective Order's categories for confidential designation are narrow and trade-secret protection largely does not apply here.

The agreed Protective Order allows for "Confidential" or "AEO" designations in only a few discrete instances, with the "Confidential" designation intended to be a broader category covering trade secrets[4] or Protected Health Information (PHI) under the Health Insurance Portability and Accountability Act of 1996 (HIPAA). Dkt. 133 at 2. The AEO designation is intended to be far narrower, reserved only for information that is "especially sensitive" trade-secret-type information,[5] and Personal Identification Information (PII), which includes only (1) social security

---

[4] The Protective Order defines this as "trade secrets or commercial information that is not publicly known and that is of technical or commercial advantage to its possessor, in accordance with Federal Rule of Civil Procedure 26(c)(1)(G)," or "other information required by law to be kept confidential." Dkt. 133 at 2.

[5] The Protective Order defines this type of information as "confidential research and development, financial, technical, marketing, or any other sensitive trade secret information." Dkt. 133 at 2. That definition is like the definition in the form protective order for the Northern District of Texas.

numbers; (2) financial account numbers; (3) birthdates; (4) drivers' license numbers; (5) home addresses; (6) personal email addresses; and (7) "the names of non-publicly identified Planned Parenthood employees." Dkt. 133 at 2. PPFA cannot make up its own additional categories and rewrite the protective order it agreed to. *See Orthoflex,* No. 3:11–CV–0870–D, 2013 WL 3095106, at *3. Nor can PPFA attempt to shoehorn its special categories into the category of trade secrets. The Fifth Circuit defines "trade secret" as "information that derives independent economic value from being *not* generally known or readily ascertainable through proper means." *CAE Integrated, L.L.C. v. Moov Technologies, Inc.,* 44 F.4th 257, 262 (5th Cir. 2022) (emphasis added). The federal Defend Trade Secrets Act defines a trade secret as:

> [A]ll forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>    (A) the owner thereof has taken reasonable measures to keep such information secret; and
>    (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3). Thus, a trade secret must have economic value, but PPFA and all its Affiliates claim to be nonprofit organizations which receive public funds for the provision of ordinary medical services to the underserved public.

Providing an advantage to "competitors," one reason that can sometimes justify AEO or Confidential designation, would not apply here given that a public charity providing medical care for underserved populations is not really "competing"

with anyone.[6] *Cf. Sioux Pharm, Inc. v. Eagle Labs. Inc.*, 865 N.W.2d 528, 538 (Iowa 2015) ("The main concern of parties seeking to impose [Attorney's Eyes Only] restrictions is fear that dissemination of sensitive information, particularly to decision-makers of its competitors, would threaten serious competitive harm."). In the context of a nonprofit, donor communications and fundraising strategy could come close to the idea of a trade secret. Thus, Relator believes that documents such as PPFA's fundraising policies, *see* Dkt. 190-1 (App.0167-0174), would fall into that category (though would be adequately protected with a "Confidential" designation, which suffices to protect most trade-secret information).

## B. PPFA's AEO designations are abusive, as thousands of documents demonstrate.

PPFA "must provide a 'good faith' basis to designate information as AEO" and cannot do so here. *United States ex rel. Univ. Loft Co.*, 2016 WL 9461752, *2. There are *thousands* of documents in PPFA's production that are designated AEO for no conceivable reason. Ex. C; *see also generally* App.001-0454. For example, PPFA designated AEO publicly available news articles, such as a *Texas Monthly* article, App. 318-332, *Dallas Morning News* articles, App. 0100-0103, and a *Houston Press* article, App. 135-136. Other generic news articles or email news digests were marked

---

[6] At minimum, PPFA and its Affiliates are not competing with the other parties in this case to provide these services, so it is unclear how hiding these documents from the parties in the litigation under an AEO designation would protect PPFA in this regard. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, No. 16-CV-00236-WHO(DMR), 2018 WL 2441518, at *26 (N.D. Cal. May 31, 2018) ("Here, Defendants do not assert that the information confers "an actual or potential commercial advantage" over their competitors. Plaintiffs are the subjects of Defendants' investigations; they are not Defendants' competitors. Defendants cite no authority holding that a 'confidential compilation of information' through which an organization 'carr[ied] out its successful investigative work' is a protectable trade secret under California law. (citation omitted)).

AEO. *See, e.g.*, App. 0062-0095; 0104-0106; 0333-0375 (digests); App. 0002-0004; 0043-0045; 0107-09; 0110-15; 0116-21; 0122-24 (Bloomberg News emails and articles); App. 0125-29 (*Daily Signal* article); App. 0130-33 (*Guardian* article and emails); App. 0139-40; 0141-43 (Law360 articles); App. 0096-0099 (news article and emails); App. 0137-38 (Rh Reality Check article). PPFA even designated AEO general announcements and resources from federal HHS. *See, e.g.,* App.0174-0206. When Relator's counsel searched the documents marked AEO for similar news articles and emails, thousands of documents hit, so these are not isolated instances. *See* Ex. C. PPFA designated AEO a document with brief bios of Affiliate CEOs from 2017, even though those CEOs are publicly known and frequently speak to the media. App. 0047-0061. There are numerous other examples of egregious violations of the Protective Order throughout PPFA's document production. *See generally* App.001-0454. Moreover, PPFA's production is inconsistent in its designations, with certain similar documents being designated Confidential. *See, e.g.* App. 0455-61.

## III.   PPFA's Confidential Designations Are Overbroad.

PPFA's Confidential designations fare no better. These are all documents that a party will have to file under seal if used in support of court filings, *see* Dkt. 133 at 8, yet do not even arguably contain confidential information. Among the examples of abusive "Confidential" designations: an email sending part of the trial transcript from an abortion case Relator's counsel litigated in federal court, App.0464-0693; a notice of a message board posting to anonymous recipients, App. 0462; an email notification of a clinic closure due to inclement weather, App. 0463; a printed copy of a public website listing the names of doctors, App. 0694-97; an email from an Assistant

Attorney General in Texas to Planned Parenthood lawyers, App.0698; and an amicus curiae brief that Planned Parenthood filed in the U.S. Supreme Court, App. 0699-0744.

## CONCLUSION

Relator respectfully requests that the Court deny PPFA's Emergency Motion for Protective Order. It should also apply the consequence given in the Protective Order for designation abuse or prophylactic designation and hold that "all such designations"—all confidential designations of documents that do not *actually* contain Protected Health Information (PHI) or Personal Identifying Information (PII) as defined by the Protective Order[7]—are "waived." Dkt. 133 at 6. The Court should also award Relator attorneys' fees for the cost of reviewing PPFA's designations and responding to their motions for protective orders.

Respectfully submitted.

/s/ Heather Gebelin Hacker
Heather Gebelin Hacker
Texas Bar No. 24103325
Andrew B. Stephens
Texas Bar No. 24079396
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
(512) 399-3022
heather@hackerstephens.com
andrew@hackerstephens.com

**Attorneys for Relator**

---

[7] The one exception is "the names of non-publicly identified Planned Parenthood employees," which the Protective Order defines as PII. But given PPFA's abuse of that category, *see* Dkt. 189-2, it should lose that special category of PII. PPFA also claimed that some documents had PII as defined by the Protective Order but did not, and cell phone numbers are not covered by the protective order. *See* Dkt. 133; Dkt. 189 at 13.

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2022, this document was electronically filed and served via the Court's CM/ECF system.

/s/ Heather Gebelin Hacker
Heather Gebelin Hacker