# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| THE STATE OF TEXAS, | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| THE STATE OF LOUISIANA, | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 2:21-CV-00022-Z |
| | § | |
| PLANNED PARENTHOOD | § | |
| FEDERATION OF AMERICA, INC., | § | |
| PLANNED PARENTHOOD GULF | § | |
| COAST, INC., PLANNED | § | |
| PARENTHOOD OF GREATER | § | |
| TEXAS, INC., PLANNED | § | |
| PARENTHOOD SOUTH | § | |
| TEXAS, INC., PLANNED | § | |
| PARENTHOOD CAMERON | § | |
| COUNTY, INC., PLANNED | § | |
| PARENTHOOD SAN ANTONIO, | § | |
| INC., | § | |
| | § | |
| Defendants. | § | |

## RELATOR'S OPPOSITION TO PPFA'S
## SECOND MOTION FOR PROTECTIVE ORDER

## INTRODUCTION

The Court should deny Defendant Planned Parenthood Federation of America (PPFA)'s Second Motion for Protective Order. Dkt. 174. As the Court has already noted, the issues raised in this Motion have largely already been briefed by the parties in regard to PPFA's first Motion for Protective Order (Dkt. 157). Dkt. 193. They are further addressed in the briefing for PPFA's Emergency Motion for Protective Order, Expedited Briefing, and Stay of Deadline to Move to Preserve Confidentiality (Dkt. 188). *See* Dkt. 198, 199. To the extent that the Court considers the specific documents at issue in PPFA's Second Motion, Relator files this opposition to add additional detail. For the reasons set forth below, Relator respectfully requests that the Court deny PPFA's motion.

## BACKGROUND

PPFA produced two volumes of documents in late August, which included 83 documents. Most of these documents were designated either Attorney's Eyes Only (AEO) or Confidential, including all of the fourth production. Dkt. 198-2 at 5. Relator provided written objections to specific confidentiality designations in that production. Dkt. 198-1. The parties met and conferred on those objections at PPFA's request the same day its motion for protective order was due on September 13, 2022. PPFA provided another chart purporting to explain its designations of the disputed documents that evening about two hours before it filed its second motion for protective order. Dkt. 174.

## LEGAL STANDARD

The rules governing discovery in federal court are designed to "accomplish full disclosure of the facts, eliminate surprise, and promote settlement." *S. Ry. Co. v. Lanham*, 403 F.2d 119, 127 (5th Cir. 1968) (discussing Federal Rule of Civil Procedure 34). As a result, the "deposition-discovery rules are to be accorded a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Protective orders serve as narrow exceptions to this general rule of disclosure and allow parties to keep specific categories of documents confidential by agreement. *See* 8A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2043 (3d ed.) ("It is well settled that there is no absolute privilege for trade secrets and similar confidential information.").

The parties' agreement in a protective order governs not only what materials are protected, but also the method of contesting a confidentiality determination. "The starting point for interpretation of a protective order lies in its plain language." *S.E.C. v. Merrill Scott & Associates, Ltd.*, 600 F.3d 1262, 1271–72 (10th Cir. 2010) (citations omitted). When a protective order is "part of a court-approved agreement, it must be construed according to general principles of contract law." *See City of Hartford v. Chase*, 942 F.2d 130, 134–35 (2d Cir. 1991) (citations omitted). "Thus, deference is to be paid to the plain meaning of the language . . . and the normal usage of the terms selected." *Id*. (alteration in original). "An agreed protective order may be viewed as a contract, and once parties enter an agreed protective order they are bound to its

3

terms." *Orthoflex, Inc. v. ThermoTek, Inc.*, 3:11–CV–0870–D, 2013 WL 3095106, at *3 (N.D. Tex. June 20, 2013) (citations omitted).

"Rule 26(c)'s requirement of a showing of good cause to support the issuance of a protective order indicates that 'the burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir.1978)). In determining whether to grant a protective order, the court must balance the requesting party's need for the information against the injury that might result if uncontrolled disclosure is compelled. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994). Through this balancing process, courts should afford due weight to the affected party's privacy interests. *See id.* (citing *Seattle Times Co. v. Rinehart*, 467 U.S. 20, 34–36 (1984)). Significantly, however, "privacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny." *Id*. Thus, courts should consider for what purpose the information is being sought—if the case involves matters of legitimate public concern or issues relating to public health or safety, those are factors weighing against a protective order. *Id*. at 787–88; *see also Morrow v. City of Tenaha*, No. 2–08–cv–288–TJW, 2010 WL 3927969, at *4 (E.D. Tex. Oct. 5, 2010). Here, "the [contested confidential] materials concern an issue of acute and substantial public interest, the hotly contested public debate concerning the "right to life" as opposed to the "pro-choice" right to an abortion." *Gee v. Women's Health Care Ctr.*, No. MC 18-

4

4793, 2019 WL 2617109, at *6 (E.D. La. June 25, 2019). This case also involves government programs and taxpayer money. "In these circumstances of extreme public interest, openness and transparency are the higher value . . ." *Id.*

## ARGUMENT

Relator has already explained at length that PPFA's prophylactic and excessive confidentiality designations are improper and violate the Protective Order, Dkt. 133. *See* Dkt. 189, 190, 198, 199. The designations are also improper as to the documents challenged in PPFA's fourth and fifth productions.

PPFA appears to believe that nearly all of its documents are "sensitive" or "private", but that belief does not warrant special protection under the protective order or in the discovery process itself, nor does it qualify as a "particular and specific demonstration of fact" justifying a protective order. *In re Terra Int'l, Inc.*, 134 F.3d at 306. The agreed Protective Order allows for "Confidential" or "AEO" designations in only a few discrete instances, with the "Confidential" designation intended to be a broader category covering trade secrets[1] or Protected Health Information (PHI) under the Health Insurance Portability and Accountability Act of 1996 (HIPAA). Dkt. 133 at 2. The AEO designation is intended to be far narrower, reserved only for information that is "especially sensitive" trade-secret-type information,[2] and Personal Identification Information (PII), which includes only (1) social security

---

[1] The Protective Order defines this as "trade secrets or commercial information that is not publicly known and that is of technical or commercial advantage to its possessor, in accordance with Federal Rule of Civil Procedure 26(c)(1)(G)," or "other information required by law to be kept confidential." Dkt. 133 at 2.

[2] The Protective Order defines this type of information as "confidential research and development, financial, technical, marketing, or any other sensitive trade secret information." Dkt. 133 at 2. That definition is like the definition in the form protective order for the Northern District of Texas.

numbers; (2) financial account numbers; (3) birthdates; (4) drivers' license numbers; (5) home addresses; (6) personal email addresses; and (7) "the names of non-publicly identified Planned Parenthood employees." Dkt. 133 at 2. PPFA has made up several additional categories on its own—*in addition* to the categories it made up with respect to the documents at issue in their first Motion for Protective Order[3]—which it believes warrant AEO designation: "personal contact information," "contains highly sensitive financial, competi[ti]ve, strategic and operating information," and an additional category it believes warrant "Confidential" designation: "contains sensitive competitive information." Dkt. 174-2. But PPFA cannot make up its own categories and rewrite the protective order it agreed to. *See Orthoflex,* No. 3:11–CV–0870–D, 2013 WL 3095106, at *3.

Here, PPFA designated four documents (PPFA00005337, PPFA00005342, PPFA00005480, and PPFA00005546) AEO because it they contain "personal contact information." Dkt. 174-2. These documents, however, contain only business cell phones that employees include as part of their email signature blocks. *See, e.g.,* App.0002-06. While cell phone numbers are not PII under the Protective Order, *see* Dkt. 133 at 2, even if the Order were construed to protect private cell phone numbers, PPFA's documents appear to contain none.

PPFA also designated seven documents (PPFA00005346, PPFA00005398, PPFA00005450, PPFA00005484, PPFA00005540, PPFA00005547, and

---

[3] The categories PPFA asserted in its first Motion that deserve AEO designation (despite not being in the Protective Order) are "strategic/programmatic information," "internal market/financial information," "PII- Cell [number]," "PII- Cell or Email," "PII- Contains Employee Contact Information," "proprietary collaborative fundraising strategy," and "financial data and analysis."

PPFA00005621) AEO because they contain "non-publicly identified [employees],"
Dkt. 174-2, which is permitted under the Protective Order, Dkt. 133 at 2. But as with
the other documents PPFA designated in this fashion, *see* Dkt. 189-2, a simple Google
search of the employees' names along with "Planned Parenthood" or "PPFA" publicly
identifies them as current or former employees. There are two exceptions. There is
one name in PPFA00005450 that does not appear to be publicly associated with
Planned Parenthood, so that designation appears to be consistent with the Protective
Order. App.0092. There is another name that appears in the rest of the documents
that is not publicly associated with Planned Parenthood, *see, e.g.,* App.0086, but that
person did not appear to be a PPFA employee during the time in question according
to their LinkedIn page, App. 0093-94. Instead, it appears that they were a consultant,
which would not be covered by the Protective Order.

    Otherwise, the documents at issue that are designated AEO are either (1)
generated as part of the affiliate accreditation process for PPGC several years ago
(PPFA00005451, PPFA00005481, PPFA00005536, PPFA00005599, PPFA00005603,
PPFA00005613, PPFA00005627, PPFA00005628, PPFA00005637, PPFA00005643);
*see, e.g.*, App.0071-91, or (2) are final accreditation reports for PPGC and PPST from
various past years (PPFA00005647, PPFA00005711, PPFA00005802,
PPFA00005881, PPFA00005922, PPFA00005986, PPFA00006041, PPFA00006106),
*see, e.g.,* App.0007-70. But as Relator explained previously, as public charities,
information about PPFA and PPFA Affiliates—particularly the services they provide
and their finances, *see* App.0082-91; *see also* App.0143 (Confidential)—is publicly

available in their IRS Form 990s, including how much government funding they receive and how much money they receive from Planned Parenthood entities.[4] They even publicize this information.[5] PPFA and PPFA's Affiliates publish the numbers of services provided in their Annual Reports, which are available online.[6] Nor can PPFA attempt to shoehorn these documents into the category of trade secrets. The Fifth Circuit defines "trade secret" as "information that derives independent economic value from being not generally known or readily ascertainable through proper means." *CAE Integrated, L.L.C. v. Moov Technologies, Inc.*, 44 F.4th 257, 262 (5th Cir. 2022) (emphasis added). The federal Defend Trade Secrets Act defines a trade secret as:

> [A]ll forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>     (A) the owner thereof has taken reasonable measures to keep such information secret; and
>     (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily

---

[4] *See, e.g.*, https://projects.propublica.org/nonprofits/organizations/131644147/202100679349300840/full (PPFA Form 990); https://projects.propublica.org/nonprofits/display_990/741100163/download990pdf_05_2022_prefixes_47-81%2F741100163_202006_990_2022051720066807 (PPGC Form 990).

[5] *See, e.g.,* Planned Parenthood Federation of Am., *About Us: Facts and Figures*, https://www.plannedparenthood.org/about-us/facts-figures ("Financial Data Accountability and transparency — it's the Planned Parenthood way. Access our IRS Form 990 and most recent audited financial statement here."); Planned Parenthood Gulf Coast, *About Us*, https://www.plannedparenthood.org/planned-parenthood-gulf-coast/who-we-are (linking to Form 990 and stating that "Our audited financial statement is available upon request. Submit a request to information@ppgulfcoast.org.")

[6] *See, e.g.*, https://www.plannedparenthood.org/uploads/filer_public/67/30/67305ea1-8da2-4cee-9191-19228c1d6f70/210219-annual-report-2019-2020-web-final.pdf (PPFA Annual Report); https://www.plannedparenthood.org/uploads/filer_public/7c/09/7c09c93e-435e-4846-bb5a-3a882f279121/fy21_ppgcppcfc_impact_report_final.pdf (PPGC).

ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3). Thus, a trade secret must have economic value, but PPFA and all its Affiliates claim to be nonprofit organizations which receive public funds for the provision of ordinary medical services to the underserved public.

Providing an advantage to "competitors," one reason that can sometimes justify AEO or Confidential designation, would not apply here given that a public charity providing medical care for underserved populations is not really "competing" with anyone.[7] *Cf. Sioux Pharm, Inc. v. Eagle Labs. Inc.*, 865 N.W.2d 528, 538 (Iowa 2015) ("The main concern of parties seeking to impose [Attorney's Eyes Only] restrictions is fear that dissemination of sensitive information, particularly to decision-makers of its competitors, would threaten serious competitive harm."). Nor can PPFA identify any similar nonprofit seeking to provide the same services using an affiliation model like PPFA's, so it is unclear how these particular documents would give a competitive advantage to anyone. In the context of a nonprofit, donor communications and fundraising strategy could come close to the idea of a trade secret. Thus, Relator believes that documents such as PPFA's fundraising policies, *see* Dkt. 190-1 (App.0167-0174), would fall into that category (though would be

---

[7] At minimum, PPFA and its Affiliates are not competing with the other parties in this case to provide these services, so it is unclear how hiding these documents from the parties in the litigation under an AEO designation would protect PPFA in this regard. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, No. 16-CV-00236-WHO(DMR), 2018 WL 2441518, at *26 (N.D. Cal. May 31, 2018) ("Here, Defendants do not assert that the information confers "an actual or potential commercial advantage" over their competitors. Plaintiffs are the subjects of Defendants' investigations; they are not Defendants' competitors. Defendants cite no authority holding that a 'confidential compilation of information' through which an organization 'carr[ied] out its successful investigative work' is a protectable trade secret under California law. (citation omitted)).

adequately protected with a "Confidential" designation, which suffices to protect most trade-secret information). But affiliation documents for public charities would not.

Finally, PPFA also designated numerous documents "Confidential," presumably because they relate to Affiliate accreditation review, but these are just blank forms. (PPFA00006182, PPFA00006228, PPFA00006273, PPFA00006309, PPFA00006360, PPFA00006361, PPFA00006412, PPFA00006413, PPFA00006414, PPFA00006515, PPFA00006611, PPFA00006654, PPFA00006656, PPFA00006713, PPFA00006718, PPFA00006719, PPFA00006720, PPFA00006721, PPFA00006722, PPFA00006735, PPFA00006743, PPFA00006747, PPFA00006752, PPFA00006753, PPFA00006756). *See, e.g.,* App.0096-0143. It is unclear why a blank form would warrant confidentiality protection as a trade secret.

## CONCLUSION

Relator respectfully requests that the Court deny PPFA's Second Motion for Protective Order.

Respectfully submitted.

/s/ Heather Gebelin Hacker
Heather Gebelin Hacker
Texas Bar No. 24103325
Andrew B. Stephens
Texas Bar No. 24079396
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
(512) 399-3022
heather@hackerstephens.com
andrew@hackerstephens.com

**Attorneys for Relator**

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2022, this document was electronically filed and served via the Court's CM/ECF system.

/s/ Heather Gebelin Hacker
Heather Gebelin Hacker