## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| United States of America<br>*ex rel.* ALEX DOE, Relator, | § <br> § <br> § | |
| The State of Texas<br>*ex rel.* ALEX DOE, Relator, | § <br> § <br> § | NO. 2:21-CV-22-Z |
| The State of Louisiana | § <br> § | |
| *ex rel.* ALEX DOE, Relator, | § <br> § | |
| Plaintiffs, | § <br> § | |
| v. | § <br> § | |
| Planned Parenthood Federation of America,<br>Inc., Planned Parenthood Gulf Coast, Inc.,<br>Planned Parenthood of Greater Texas, Inc.,<br>Planned Parenthood South Texas, Inc.,<br>Planned Parenthood Cameron County, Inc.,<br>Planned Parenthood San Antonio, Inc., | § <br> § <br> § <br> § <br> § <br> § <br> § | |
| Defendants. | | |

## DEFENDANT PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.'S OMNIBUS REPLY IN SUPPORT OF ITS MOTIONS FOR PROTECTIVE ORDER

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................. 1

ARGUMENT ......................................................................................................... 3

    A.    Relator's Conduct Contravenes the Protective Order. .......................... 3

    B.    PPFA Designated Its Documents In Good Faith. .................................. 4

    C.    Relator Misreads The Protective Order. ............................................... 7

    D.    That PPFA Is A Non-Profit Corporation Does Not Deprive It Of The
        Protections Afforded By The Protective Order. .................................... 9

    E.    The Oppositions' Document-Specific Challenges Demonstrate Why
        Clarification Of The Protective Order Is Needed. .............................. 10

CONCLUSION .................................................................................................... 15

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Advanced Magnesium Alloys Corp. v. Dery*,
   2022 WL 3139391 (S.D. Ind. Aug. 5, 2022) ................................................. 7, 11, 15

*Dondi Props. Corp. v. Comm. Sav. & Loan Ass'n*,
   121 F.R.D. 284 (N.D. Tex. 1988) ............................................................................ 3

*Eisai Inc. v. Sanofi-Aventis, U.S., LLC*,
   2012 WL 1299701 (D.N.J. 2012) ............................................................................ 5

*Giddy Up, LLC v. Prism Graphics, Inc.*,
   2007 WL 2460646 (N.D. Tex. Aug. 29, 2007) ........................................................ 3

*Healthtrio, LLC v. Aetna, Inc.*,
   2014 WL 6886923 (D. Colo. Dec. 5, 2014) ....................................................... 6, 11

*In re ULLICO Inc. Litig.*,
   237 F.R.D. 314 (D.D.C. 2006) ................................................................................ 5

*Krueger v. Ameriprise Financial, Inc.*,
   2013 WL 12139425 (D. Minn. Aug. 15, 2013) ..................................................... 11

*Long v. Fairbanks Farms, Inc.*,
   2011 WL 2219420 (D. Me. May 31, 2011) ............................................................ 6

*MasterObjects, Inc. v. Yahoo! Inc.*,
   2012 WL 2705018 (N.D. Cal. July 6, 2012) .................................................... 11, 15

*Medcorp, Inc. v. Pinpoint Techs., Inc.*,
   2009 3588362 (D. Colo. Oct. 23, 2009) ................................................................. 5

*Moore v. Publicis Groupe*,
   287 F.R.D. 182 (S.D.N.Y. 2012) .......................................................................... 15

*Morrow v. City of Tenaha*,
   2010 WL 3927969 (E.D. Tex. Oct. 5, 2010) ........................................................ 10

*Orthoflex, Inc. v. ThermoTek, Inc.*,
   2013 WL 3095106 (N.D. Tex. June 20, 2013) ....................................................... 7

*Pansy v. Borough of Stroudsburg*,
   23 F.3d 733 (3rd Cir. 1994) .................................................................................. 10

*Paradigm Alliance, Inc. v. Celeritas Techs., LLC*,
   248 F.R.D. 598 (D. Kan. 2008) .............................................................................. 6

*Phyllis Schlafly Revocable Trust v. Cori*,
   512 F.Supp.3d 916 (E.D. Mo. 2021) ..................................................................... 10

**TABLE OF AUTHORITIES**
*(continued)*

**Page(s)**

*Plains Cotton Co-op. Ass'n of Lubbock, Tex. v. Goodpasture Computer Serv.*,
  807 F.2d 1256 (5th Cir. 1987) ................................................................................... 10

*Procaps S.A. v. Patheon Inc*.,
  2015 WL 4430955 (S.D. Fla. July 20, 2015) .............................................................. 5

*Religious Technology Center v. F.A.C.T.NET, Inc*.,
  901 F. Supp. 1519 (D. Colo. 1995) ........................................................................... 10

*Samsung Electronics Am., Inc. v. Yang Kun Chung*,
  321 F.R.D. 250 (N.D. Tex. 2017) .......................................................................... 3, 4

*United States ex. rel. Univ. Loft Co. v. AGS Enterprises*,
  2016 WL 9461752 (W.D. Tex. Aug. 4, 2016) ............................................................ 6

## PRELIMINARY STATEMENT

Relator timely filed their Oppositions to PPFA's Motion for Protective Order (the "First Motion" (DE 157) and "First Opposition" (DE 189)) on September 21, 2022, and the Emergency Motion for Protective Order ("Emergency Motion" (DE 188) and "Emergency Opposition" (DE 198)) on September 29, 2022.  Although the Court indicated that the "parties should address PPFA's Second Motion [for Protective Order] in their expedited briefs [to the Emergency Motion] if they choose to file additional briefing," Order (DE 193 at 2), Relator failed to do so and, instead, filed their Opposition to PPFA's Second Motion for Protective Order (the "Second Motion" (DE 174) and "Second Opposition" (DE 205)) only yesterday—on October 4, 2022.  The Second Opposition should be disregarded as untimely filed and prejudicial to PPFA given the October 5, 2022, Court-ordered deadline for PPFA to file its reply briefs in support of the First Motion, Second Motion, and Emergency Motion (the "Motions").[1]

The Court should also grant PPFA's Motion to preserve PPFA's confidentiality designations and issue an order clarifying that Paragraph 7 of the Protective Order contemplates that designation challenges, and motions for protective orders, will be addressed to specific document designations.  Indeed, the Oppositions demonstrate the need for such clarification here. PPFA has no interest in preserving false-positive confidentiality designations that PPFA's RegEx and search modeling applied to publicly-available news articles, for example.  PPFA does not dispute that such documents should be downgraded, and PPFA would have already done so had Relator simply identified those documents to PPFA, as the Protective Order contemplates.  But the fact that some mistakes were made is not a surprise—nor is it evidence of bad faith.  Notably, any

---

[1] Although PPFA has done its best to respond to the Second Opposition in this reply, Relator's late filing has prejudiced PPFA's ability to fully address the document-specific arguments. If the Court chooses to consider them, PPFA respectfully requests that it be granted leave to file a supplemental reply to Relator's untimely arguments.

errors in PPFA's designations are well within reasonable limits and a normal part of any eDiscovery process. Nothing in PPFA's process suggests it designated documents in bad faith. Indeed, any perceived or identified errors in PPFA's designations is why the Protective Order includes a mechanism for parties to raise and resolve such issues among themselves (and to reserve only actual disputes for the Court).

PPFA has undertaken significant measures to efficiently produce and designate tens-of-thousands of documents in good faith and in accordance with the Protective Order. Relator's Oppositions do not indicate otherwise. Relator complains that Relator cannot view AEO documents, but—as PPFA already explained—a substantial majority of those documents include PII that Relator agreed should be subject to AEO and not shared with Relator. When PII and PHI designated documents are removed from the September 9 production, that leaves 11,457 AEO documents (approximately 15.3 % of that production) and 1,754 Confidential documents (approximately 2.3 % of that production)—together, they only comprise 18 % of that production, and thus fall far short of the voluminous percentages in the cases that Relator relies upon.[2]

The only thing that the Oppositions establish is Relator's apparent dissatisfaction with the terms of the Protective Order to which Relator agreed. Relator has not sought to amend the Protective Order and should not be permitted to do so through selective interpretation. PPFA's designations comply with the terms of the Protective Order and should be upheld. Before challenging any designation, Relator should be required to comply with Paragraph 7 of the Protective Order by making document-specific objections to PPFA's designations and meeting and conferring with PPFA in good faith about them.

---

[2] PPFA does not have the information to provide these statistics across all its productions at this time, but the September 9 production (of 74,845 documents) comprises a substantial majority of the documents produced to date. *See* DE 198–2, Hacker Decl. (Ex. 1).

## ARGUMENT

### A.      Relator's Conduct Contravenes the Protective Order.

Having refused to meaningfully participate in the meet and confer process, to explain the basis for Relator's challenge to a *single* designation, or even to explain why *any single* document was improperly designated, Relator now seeks for the first time to do that in its Oppositions.  Given Relator's refusal to participate meaningfully in the meet-and-confer process, Relator should not be permitted to put specific documents before the Court that it has never presented to PPFA for re-designation and to which PPFA might well agree should be re-designated.

The Opposition do not dispute PPFA's interpretation of Paragraph 7's plain text to require document-specific challenges to trigger its provisions.  *See, e.g.*, DE 157–2 at 11 (observing that "Paragraph 7 addresses disagreements with '<u>a</u> designation' and written requests to 'change <u>the</u> designation'").  Paragraph 7 of the Protective Order was included as a means for resolving legitimate disputes regarding the confidentiality of information before a producing party must seek Court intervention to preserve the designated-status of that information.  *See Dondi Props. Corp. v. Comm. Sav. & Loan Ass'n*, 121 F.R.D. 284, 289 (N.D. Tex. 1988) ("The purpose of a conference requirement is to promote a frank exchange between counsel to resolve issues by agreement or at least narrow and focus the matters in controversy before judicial resolution is sought."); *see also Giddy Up, LLC v. Prism Graphics, Inc.*, 2007 WL 2460646, at *2 (N.D. Tex. Aug. 29, 2007) ("Implicit in this [protective] order is the obligation of the party challenging a designation to identify the specific documents at issue so the attorneys can attempt to negotiate an acceptable resolution of the matter.").  It is "not intended to be an exercise for revealing how much information [PPFA] designated as confidential or AEO with absolute indifference to whether the information actually falls into such categories."  *See Samsung Electronics Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 287 (N.D. Tex. 2017).

To the extent Relator asks this Court to alter the confidential status of designated information, the Court should deny that request and compel Relator to first address any document-specific disputes to PPFA and meet and confer about them, as the Protective Order requires. To allow Relator to persist in this conduct will continue to waste judicial and party resources addressing and briefing issues that could easily be resolved in the meet-and-confer process and for which there is no real dispute.

### B.  PPFA Designated Its Documents In Good Faith.

Relator maintains that the "large percentage" of designated documents alone suggests that PPFA "used prophylactic designations." But, as PPFA explained in its Motions for Protective Order, the Protective Order expressly permits parties to apply the AEO tag to documents that either contain "especially sensitive" information *or* PII. *See* DE 133 at 2. And, as PPFA has informed Relator, most of PPFA's AEO designations were made because the documents at issue contain PII. *See* DE 195-1, Kopczynski Decl. ¶ 7 ("Of the 55,207 AEO documents in the September 9 production, PPFA determined that 43,750—or almost 80%—contain [PII]"). As for the remaining documents, PPFA has submitted numerous declarations from both PPFA executive and PPFA's counsel explaining PPFA's efforts to adhere to the Protective Order in designating those documents.. *See* DE 157-4 (Declaration of Vickie Barrow-Klein, PPFA's Chief Financial Officer and Chief Operating Officer); DE 174-4 (same); DE 188-1 (Declaration of Justin R. Chapa); DE 195-1 (Declaration of Jeffrey A.N. Kopczynski).

Relator does not meaningfully engage with any of those points. Instead, the Opposition complains that Relator's counsel cannot show those documents to Relator. But that is not a consequence of bad-faith designations. *See Samsung*, 321 F.R.D. at 286 ("All Pro complains of the collateral effect of Samsung's AEO designations, but Samsung's making those designations— even as to all of these produced materials—does not establish that any particular confidentiality

designation was improper."). It is a consequence of the Protective Order terms to which Relator agreed. Relator cannot view the 40,000+ documents that contain PII, because Relator agreed that such information qualified for AEO protection. And Relator cannot view the approximately 12,000 remaining AEO documents because those documents contain information that "the producing party [*i.e.*, PPFA] deems especially sensitive" and Relator agreed those documents would not be shared with Relator.

Nor are Relator's bad-faith allegations supported by their cases. For one, they do not account for the broader scope of the Protective Order here, which subjects PII to AEO protection, and a substantial portion of the AEO designations protect PII. *See Medcorp, Inc. v. Pinpoint Techs., Inc.*, 2009 3588362, at *3–4 (D. Colo. Oct. 23, 2009) (denying challenge to blanket designations because, among other things, the protective order "contain[ed] a broad definition of those materials that a party is allowed to designate"); *Eisai Inc. v. Sanofi-Aventis, U.S., LLC*, 2012 WL 1299701, at *10 (D.N.J. 2012) (holding designation of a "significant percentage" of documents was "insufficient" to warrant modification of protective order where nature of allegations "necessarily require[d]" exchange of large number of confidential documents).

Removing the 43,750 PII documents from the September 9 production means that only 11,457 documents were designated AEO because PPFA deems them "especially sensitive," and that volume of documents—comprising only 15.3% of the documents produced—falls far short of the volumes that courts have criticized in other cases. *See, e.g., In re ULLICO Inc. Litig.*, 237 F.R.D. 314, 317 (D.D.C. 2006) (defendant designated over "99% of the roughly 60,000 documents as confidential"); *Procaps S.A. v. Patheon Inc.*, 2015 WL 4430955, at *4–5 (S.D. Fla. July 20, 2015) (court denied plaintiff's motion for re-designation where defendant designated 35% of its documents "highly confidential" but granted defendant's motion for re-designation where plaintiff

designated 95% of its production "highly confidential" and statistical sampling showed significant error rate); *Paradigm Alliance, Inc. v. Celeritas Techs., LLC*, 248 F.R.D. 598, 604 (D. Kan. 2008) (70% of first production of 40,000 documents designated AEO and 80% of second production of 27,000 documents designated AEO).[3]

PPFA's conduct also shares no similarities to *United States ex. rel. Univ. Loft Co. v. AGS Enterprises*, where the producing parties essentially admitted to prophylactically designating documents AEO with the stated intent of going back and de-designating documents later.  2016 WL 9461752, at *1 n.12 (W.D. Tex. Aug. 4, 2016).  Because the "de-designation of documents [] never occurred," the court there ordered the producing parties to review the documents they produced, re-designate them in accordance with the protective order, and provide a log of AEO documents explaining the designations.  *Id*. at *1 n.12 & *3.

And here PPFA differentiated between the two levels of protection provided under the Protective Order in designating documents—unlike the defendants who failed to distinguish between "Confidential" and "OAEO" documents in designating 90% of their production OAEO in *Healthtrio, LLC v. Aetna, Inc.*, 2014 WL 6886923 (D. Colo. Dec. 5, 2014).  The court there found that the defendants acted in bad faith in designating documents because the defendants did not "provide any satisfactory explanation as to why 90% of its production of documents belongs in a category 'reserved for *extremely sensitive* "Confidential" information' raising a '*substantial risk* of [competitive] harm'" or "Defendants' failure to designate a single document as Confidential but not OAEO."  *Id*. at *3.

Another court recently rejected the precise approach (and authority) that Relator urges here,

---

[3] And, unlike here, the producing party in *Paradigm* "appeared to have made no review whatsoever."  *Long v. Fairbanks Farms, Inc*., 2011 WL 2219420, at *5-6 & n.5 (D. Me. May 31, 2011) (denying motion to de-designate based on volume of confidential documents; reading Paradigm as a case about a designating party that "appeared to have made no review whatsoever").

finding:

> Whether AEO designations are appropriate must be determined on a document-by-document basis; the Court simply cannot establish a percentage or absolute number of AEO designations that are appropriate in this case in a vacuum.  Other than pointing to the large number of designations, Plaintiff has not even attempted to demonstrate that any particular designation is inappropriate, beyond five documents Plaintiff identifies in its brief as examples.  It is certainly not surprising that Alliance's AEO designations are less than perfect; that is why the protective order provides a mechanism for challenging them.  And if Alliance has abused the AEO designation process by improperly designating a large number of documents without a reasonable basis for believing the designations were appropriate, then Alliance will be subject to sanctions, perhaps including the elimination of the AEO designation.  But Plaintiff cannot demonstrate that to be the case by simply pointing to the number of AEO designations Alliance has made.

*Advanced Magnesium Alloys Corp. v. Dery*, 2022 WL 3139391, at *4 (S.D. Ind. Aug. 5, 2022).

The Court should reject Relator's approach for the same reason.

### C.        Relator Misreads The Protective Order.

That Relator is dissatisfied with the terms to which they agreed is evident.  Although Relator states that PPFA cannot "rewrite the protective order it agreed to," that is precisely what Relator seeks to do here.  DE 189 at 10 (*citing Orthoflex, Inc. v. ThermoTek, Inc.*, 2013 WL 3095106, at *3 (N.D. Tex. June 20, 2013)).  But, as the court in *Orthoflex* stated, an "agreed protective order may be viewed as a contract, and once parties enter an agreed protective order they are bound by its terms, absent good cause to modify or vacate the protective order." *Orthoflex, Inc.*, 2013 WL 3095106, at *3.  "As with all contracts, the ultimate question is what was the parties' mutual intent.  The answer to that question is to be found within the protective order's four corners, and not by reference to what might satisfy the purposes of one of the parties to it."  *Id*.  The four corners of the Protective Order support PPFA's designations, not Relator's selective reading.

Relator argues that the "AEO designation is intended to be [narrow], reserved only for information that is 'especially sensitive' trade-secret-type information, and Personal Identification Information (PII), which includes only" the seven items listed as PII in the Protective Order.  DE

7

189 at 9–10. But the Protective Order's terms do not support Relator's reading and *expressly include* the so-called "additional categories" that Relator contends PPFA "made up . . . on its own." *Id.* at 10.

The Protective Order permits the parties to designate documents AEO if they contain "information that the producing party deems especially sensitive" and provides a non-exhaustive list of examples of information that a producing party may deem especially sensitive, including "Personal Identification Information." Specifically, the Protective Order states that the "Confidential Attorney Eyes Only Information" designation:

> "means that the document is comprised of information that the producing party deems especially sensitive, which may include, but is not limited to, confidential research and development, financial, technical, or any other sensitive trade secret information and Personal Identification Information, which includes: (1) social security numbers of Relator, Planned Parenthood staff, or State employees; (2) any financial account numbers of Relator, Planned Parenthood and/or its staff, and the State and/or its employees; (3) birthdates of Relator, Planned Parenthood staff, or State employees; (4) drivers' license numbers of Relator, Planned Parenthood staff, or State employees; (5) home addresses of Relator, Planned Parenthood staff, or State employees; (6) personal email addresses of Relator, Planned Parenthood staff, or State employees; and (7) the names of non-publicly identified Planned Parenthood employees."

DE 133 at ¶ 2 (emphasis added).

Comparing Relator's examples of "made up" categories to those examples in the Protective Order shows that these categories are well within the parties' agreed-to definition of "especially sensitive" information. "[I]nternal market/financial information" and "financial data and analysis" are types of "financial" information that PPFA deems especially sensitive, as contemplated by the Protective Order. Similarly, "strategic/programmatic information" and "proprietary collaborative fundraising strategy" implicate "confidential research and development" or "marketing" or "sensitive trade secret" information that PPFA deems "especially sensitive," because they concern confidential information about grants, strategic or programming priorities, key relationships with

business partners, donor and fundraising strategy, and other similar categories.  *See* DE 157–4, Barrow-Klein Decl. ¶¶ 8, 10.  In providing those descriptive designations, PPFA did not "make up" any new categories; it endeavored to show that the information that it deemed "especially sensitive" accords with the examples in the Protective Order.

Relator also takes issue with the fact that PPFA deems its employees' personal contact information "especially sensitive," but the Protective Order explicitly identifies "Personal Identification Information" as information that a party may deem "especially sensitive" and designate AEO.  The Protective Order also provides seven examples of PII, two of which are "home addresses of Relator, Planned Parenthood staff, or State employees" and "personal email addresses of Relator, Planned Parenthood staff, or State employees."  DE 133 at ¶ 2.  Personal cell phone numbers are not so different from private email addresses and home addresses, and the Protective Order can and should be read to protect employee cell phone numbers.  And the fact that an employee uses and shares her personal cell phone number in conducting her job duties makes it no less "personal."  Although Relator seems to suggest that PII "includes only" the seven listed examples, that interpretation is contrary to the language of the Protective Order.  The Protective Order indicates that PII *includes* the seven identified examples, not that PII "means" or "includes only" the examples listed there.  Surely Relator presumably would not claim that an individual's passport or visa identification numbers fails to qualify for AEO protection merely because the Protective Order expressly identifies only drivers' license numbers.

     **D.**    **That PPFA Is A Non-Profit Corporation Does Not Deprive It Of The Protections Afforded By The Protective Order.**

Relator also misleadingly equates PPFA—a private, not-for-profit organization—with public officials and government entities as grounds for challenging its designations.  Relator suggests that PPFA's privacy interests in its documents should be judged by a harsher standard

9

because "privacy interests are diminished when the party seeking protection is a public person." *See Pansy v. Borough of Stroudsburg*, 23 F.3d 733, 787 (3rd Cir. 1994). But Relator's cases are inapposite. PPFA is not a "public person," which *Borough of Stroudsburg* explained was "a public entity or official." *Id*. at 788. The defendants there were a municipal government and a high ranking government official. *See id*. Similarly, the defendants in *Morrow v. City of Tenaha*, 2010 WL 3927969, at *1 (E.D. Tex. Oct. 5, 2010), were "law enforcement officers and the mayor."

Relator further argues, erroneously, that as a not-for-profit organization, PPFA cannot have trade secrets and does not "compete" with anyone. Relator cites two cases involving trade secrets of for-profit companies, while noting that "most" of the cases reviewed fell into this for-profit category. DE 189 at 11. But several courts have recognized that non-profit organizations may possess trade secrets and confidential information. *See, e.g.*, *Plains Cotton Co-op. Ass'n of Lubbock, Tex. v. Goodpasture Computer Serv.*, 807 F.2d 1256, 1262–64 (5th Cir. 1987) (examining non-profit's motion for preliminary injunction to protect its trade secrets); *Phyllis Schlafly Revocable Trust v. Cori*, 512 F.Supp.3d 916, 931–33 (E.D. Mo. 2021) (examining whether non-profit had misappropriated trade secrets); *Religious Technology Center v. F.A.C.T.NET, Inc.*, 901 F. Supp. 1519, 1526–27 (D. Colo. 1995).

**E.      The Oppositions' Document-Specific Challenges Demonstrate Why Clarification Of The Protective Order Is Needed.**

PPFA acted reasonably and in good faith in designating documents. While Relator has provided a sealed appendix of cherry-picked documents that it contends do not qualify for protection under the Protective Order, *see* DE 199-1 & DE 206–1, that does not mean that PPFA's designations were not made in good faith.[4] As Relator's own authority acknowledges, "mistakes

---

[4] Due to Relator's untimely filing, PPFA's ability to review and respond to the documents identified in the Appendix to the Second Opposition (DE 206–1) has been severely prejudiced.

will occur" in document designations, particularly when voluminous documents are produced on an expedited basis, as was done here. *Healthtrio, LLC*, 2014 WL 6886923, at *3. "It is certainly not surprising that [PPFA's] AEO designations are less than perfect," which is precisely "why the protective order provides a mechanism for challenging them" on a document-by-document basis. *Advanced Magnesium*,  2022 WL 3139391, at *4; *see also, e.g.*, *MasterObjects, Inc. v. Yahoo! Inc.*, 2012 WL 2705018, at *3 (N.D. Cal. July 6, 2012) ("To be sure, if [plaintiff] did designate as confidential 'a picture of a cake,' as [defendant] states, the court doubts that the confidential designation is warranted.  But no production is perfect, and some documents may be designated in error" and the "Protective Order has a process for resolving these kinds of errors[.]").

To be sure, PPFA does not intend to maintain designations for publicly-available documents, like news articles, and it would have promptly addressed them had Relator simply identified those documents to PPFA as requested (and as contemplated by Paragraph 7 of the Protective Order).[5]  The fact that Relator has identified some mistakes by PPFA—"i.e., marking documents AEO or Confidential when they were in the public domain—[does] not warrant the removal of the AEO designation all together as a sanction." *Krueger v. Ameriprise Financial, Inc.*, 2013 WL 12139425, at 1 (D. Minn. Aug. 15, 2013).

1. The First and Second Motions for Protective Order

For the reasons stated above, most of Relator's challenges to the designations addressed by the First Motion and Second Motion simply miss the mark.  Relator contends that the documents do not contain "trade secrets," but the Protective Order facially contemplates that other types of information may be deemed "especially sensitive."   And the fact that PPFA is a non-profit

---

[5] The fact that Mr. Stephens's searches returned hundreds of documents that hit on search terms, like "Bloomberg" or "hhs.gov," is no indication that the documents containing those terms are themselves public documents. *See* DE 198–3, Decl. Stephens ¶¶ 2–3.  Links and articles may be contained or discussed in correspondence or documents that contain other information that qualifies for AEO protection, such as employee PII.

corporation does not make its documents "public," as Relator seems to believe.[6]  PPFA can—and does—generate documents that contain financial, marketing, and other commercially competitive information that it considers confidential or extremely sensitive and to which it restricts access.[7] And the fact that some of the documents *concern* publicly-available information does not mean that the documents themselves *contain only* publicly-available information.  PPFA's Form 990s do not disclose the terms of PPFA's grant agreements or the detailed financial figures in its affiliates' financial reports.  And while Relator questions why some documents were designated AEO and others Confidential (a question that would have been better addressed through meet-and-confer), the fact that PPFA differentiated between the two levels of protection in designating documents AEO and Confidential *supports*—rather than undermines—PPFA's designations.

Relator's non-sensical and speculative arguments do not overcome Ms. Barrow-Klein's sworn declaration to the First Motion, which affirms that (1) PPFA treats affiliate financial information, like PPFA00003138 (DE 190–1, App. 0077), as extremely sensitive information that it protects from public disclosure and limits distribution even internally, *see* DE 157–4, Barrow-Klein Decl. ¶¶ 7–8; and (2) PPFA treats strategic programing information (*e.g.*, PPFA00004872, DE 190–1, App. 0135) and the terms of its business associate agreements—like PPFA00002886 (DE 190–1, App. 0116), PPFA00002972 (DE 190–1, App. 0123), and PPFA00002840 (DE 190–1, App. 0129)—as its competitive and confidential information, *see* DE 157–4, Barrow-Klein Decl. ¶¶ 11–12, 14, the disclosure of which could cause PPFA or its affiliates financial harm, *see id*. ¶¶ 8, 12, 14.  And they do not overcome Ms. Barrow-Klein's declaration to the Second Motion,

---

[6] That includes the documents concerning its affiliate accreditation process that Relator identified in the Second Opposition.  *See* DE 205 at 7.

[7] Although mistakenly identified as a document containing "PII-employee contact information," DE 157–2, it is clear from the face of PPFAA00004726 (DE 190–1, App. 002) that that document includes highly sensitive confidential and propriety information regarding an affiliate's financial and strategic performance and strategy, similar to other documents that PPFA has designated AEO on that basis.  *See, e.g.,* DE 158–2 (Exhibit 3).

which affirms that PPFA treats certain accreditation materials as especially sensitive and other materials (such as the PPFA "blank" accreditation forms identified by Relator, *see* DE 205 at 10)[8] confidential, propriety or competitively sensitive information, to which PPFA restricts access. *See* DE 174–4, Barrow-Klein Decl. ¶¶ 7–12.

Nor does the fact that an employee uses and shares her cell phone number in the course of performing her job duties mean that her cell phone number is no longer "personal identification information" equivalent to her home address or personal email address. Although Relator's Appendix includes four documents that they contend "contain *no* cell numbers at all," DE 189 at 13 (emphasis in original), Relator is simply mistaken. The signature blocks in PPFA00003151 (App. 0057), PPFA00005168 (App. 0058), PPFA00004691 (App. 0065), PPFA00004632 (App. 0070) contain employee cell phone numbers.[9] *See* DE 190–1. Again, if Relator had followed Paragraph 7's terms by specifically identifying these documents to PPFA, then PPFA could have met and conferred about them and directed Relator's counsel to the protected information. Instead, these issues are being raised and addressed for the first time in briefing before the Court.

PPFA also has not unreasonably refused to downgrade or de-designate documents that do not qualify for protection. Indeed, Relator identifies five documents—PPFA00005185 (DE 190–1, App. 0054), PPFA00003184 (DE 190–1, App. 0074), PPFA00002646 (DE 190–1, App. 0090), PPFA00005187 (DE 190–1, App. 0094), PPFA00003374 (DE 190–1, App. 0114)—that PPFA agreed weeks ago to reproduce without a confidentiality designation.[10] And PPFA made those

---

[8] PPFA's accreditation forms disclose PPFA accreditation questions, indicators and elements of performance and thus reflect PPFA's confidential and operational and competitive priorities, including how PPFA analyzes those priorities. *See* DE 174–4, Barrow-Klein Decl. ¶ 11.

[9] As with the First Opposition, the Second Opposition likewise characterizes the personal cell phone numbers as "business cell phones," *see* DE 205 at 6, but the fact that an employee uses her personal cell phone number in conducting her business does not make it any less personal.

[10] That is why these documents do not appear on Exhibit B to the First Motion. *Cf.* DE 189 at 13 (noting that "PPFA0003184 does not appear to be included in PPFA Ex. B. as a disputed designation"). And PPFA has also re-reviewed documents and downgraded some from AEO to Confidential (and vice versa).

reproductions, as promised, on September 23, 2022.

As PPFA has (repeatedly) stated, PPFA is willing to review and address any issues that Relator identifies during its document review.  That includes, for example, the 14 documents that PPFA indicated were designated AEO because they included non-publicly identified employees. The First Opposition argues that the employees in those documents were publicly identifiable.[11] After further investigation, however, PPFA discovered that nine of the documents were financial grant documents—similar to PPFA00001652 (DE 158–1 at 8)—that were properly designated AEO but mis-identified as PII (non-public employee names) on Exhibit B (157–2).[12]  As for the remaining five documents—which include *numerous* employees—PPFA determined that three may be downgraded, but that two include employees that could not be publicly identified.  That said, if Relator's counsel shares the "saved [] pages showing the public identification" of those employees, DE 189–2, Hacker Decl. ¶ 6, with PPFA, then PPFA may be able to reconsider.

> ### 2.   The Emergency Motion and September 9 Productions (Subject to Third Motion for Protective Order)[13]

As PPFA previously explained, PPFA employed nearly 60 attorneys (for thousands of hours) and TAR models to review, designate, and produce 74,845 documents by the Court-ordered September 9 deadline.  That Relator may have identified some mis-designated documents is not particularly surprising.[14]  Although "statistics clearly show that computerized searches are at least

---

[11] *See* DE 189-2, Hacker Decl. ¶¶ 3–5.  Relator indicates in the Second Opposition their belief that some additional documents do not warrant AEO designation on this basis.  *See* DE 205 at 6–7.  PPFA has not had sufficient time to confirm Relator's representations, given the Second Opposition's untimely filing yesterday, but most of these documents include subject matter that PPFA deems especially sensitive, including PPFA00005346, PPFA00005398, PPFA00005484, PPFA00005547, PPFA00005540, PPFA00005621.

[12] Mistakes such as these also demonstrate the flaws with Relator's blanket challenges and requiring PPFA to substantiate *all* its designations within 14 days of that "objection."

[13] In an abundance of caution, PPFA filed its Third Motion for Protective Order (DE 195) on September 27, 2022, to preserve the designations of documents produced on September 9, 2022.

[14] To be sure, some news articles were mis-designated, but a cursory review also shows that some of these documents facially qualify for (and were properly designated) AEO because, for example, they include employee cell phone numbers. *See, e.g.*, DE 199–1 (App. 050, App. 145).  But again, Paragraph 7 was included in the Protective Order for precisely this reason—for parties to raise and resolve such matters through the meet-and-confer process, as

as accurate, if not more so, than manual review," "computer-assisted review is not perfect"—but "the Federal Rules of Civil Procedure do not require perfection." *Moore v. Publicis Groupe*, 287 F.R.D. 182, 191 (S.D.N.Y. 2012).

However, again, PPFA undertook measures to confirm that the models it employed were consistent with industry-standard eDiscovery practice, as reflected in the attached Declaration of Jeffrey A.N. Kopczynski. PPFA conducted a statistical sampling of the produced documents using a 95% confidence interval and a 5% margin of error to verify the accuracy and reasonableness of PPFA's designation process—which is generally accepted as a reasonable method for validating an eDiscovery review and production process. *See id.* ¶¶ 8–10. The results of that statistical sampling and calculations showed that PPFA's actual designations were almost identical to (within 1% of) the predicted percentages, thus confirming that, with a reasonable degree of certainty, PPFA's review and designation process was successful and well within reasonable eDiscovery Practices. *See id.* ¶¶ 10–11. In addition, PPFA calculated the overall designation error rate using the same statistical sampling and found that its designation process coded approximately 83% of the documents accurately (within a 5% margin of error), resulting in a 16.7% error rate (with a 5% margin of error), which is a reasonable error rate for this eDiscovery process. *See id.* ¶¶ 14–15. Notably, in conducting this analysis, PPFA found that nearly half of the identified errors in its 383 document random sample evidenced an *under*-designation of documents (*i.e.*, the document merited a *higher* designation under the Protective Order). *See id.* ¶ 14.

## <u>CONCLUSION</u>

The Court should grant the First, Second, and Emergency Motions for Protective Order.[15]

---

appropriate, and only submit actual disputes to the Court for resolution. *See Advanced Magnesium*, 2022 WL 3139391, at *4; *MasterObjects,* 2012 WL 2705018, at *3.

[15] In lieu of filing multiple 10-page reply briefs, PPFA has opted to file one omnibus reply of 15-pages.

Dated:    October 5, 2022                    **O'MELVENY & MYERS LLP**


_/s/  Danny S. Ashby_
DANNY S. ASHBY
Texas Bar No. 01370960
dashby@omm.com
JUSTIN R. CHAPA
Texas Bar No. 24074019
jchapa@omm.com
MEGAN R. WHISLER
Texas Bar No. 24079565
mwhisler@omm.com
2501 N. Harwood Street, Suite 1700
Dallas, Texas 75201
T: (972) 360-1900
F: (972) 360-1901

LEAH GODESKY (_pro hac vice_)
lgodesky@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
T: (310) 553-6700
F: (310) 246-6779

**RYAN BROWN ATTORNEY AT LAW**
RYAN PATRICK BROWN
Texas Bar No. 24073967
ryan@ryanbrownattorneyatlaw.com
1222 S. Fillmore St.
Amarillo, Texas 79101
T: (806) 372-5711
F: (806) 350-7716

_Attorneys for Defendant Planned Parenthood
Federation of America, Inc._

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 5, 2022, the foregoing document was electronically filed and served upon all parties and counsel of record via the Court's CM/ECF system.

<u>*/s/ Danny S. Ashby*</u>
Danny S. Ashby