IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| United States of America<br><br>*ex rel.* ALEX DOE, Relator,<br><br><br>The State of Texas<br><br>*ex rel.* ALEX DOE, Relator,<br><br><br>The State of Louisiana<br><br>*ex rel.* ALEX DOE, Relator,<br><br>    Plaintiffs,<br><br>v.<br><br>Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc.,<br><br>    Defendants. | NO. 2:21-CV-22-Z |

## DECLARATION OF JEFFREY A. N. KOPCZYNSKI

I, Jeffrey A. N. Kopczynski, declare and state as follows:

1. I am a counsel at O'Melveny & Myers LLP and, under supervision of partners at O'Melveny, represent Defendant Planned Parenthood Federation of America, Inc. ("PPFA") in the above-captioned action (the "Litigation"). I am a senior attorney in O'Melveny's eDiscovery and Data Retention Practice. I have advised on or managed eDiscovery strategy in over five hundred adversarial matters. In a typical year I design and supervise the search, culling, and production of tens of millions of documents for O'Melveny's clients.

1

2. I am familiar with the claims and allegations in the Litigation. I am over the age of 18 and have personal knowledge of the matters herein. If called upon to testify, I could and would testify to the facts in this declaration.

3. On August 25, 2022, the Court entered an Order [DE 153] granting Relator's Motion to Compel PPFA to produce documents responsive to Relator's request for documents concerning Texas or Louisiana Medicaid, or PPFA's relationship with the Affiliate Defendants.

4. On September 9, 2022, PPFA produced 74,845 documents (comprised of 313,613 pages). Of those documents, PPFA designated under the terms of the Protective Order (i) 9,133 documents "Confidential," (ii) 55,207 documents "Confidential Attorney Eyes Only Information" ("AEO"), and (iii) 10,505 documents as requiring no confidentiality designation.

5. The 9,133 Confidential documents were approximately 12.2% of the entire production. The 55,207 AEO documents were approximately 73.8% of the entire production. The 10,505 documents without any confidentiality designation were approximately 14% of the entire production.

6. As explained in my prior declaration, to designate the confidentiality of these documents under the Protective Order a combination of attorney review and RegEx and search modeling was used.

7. Consistent with industry-standard eDiscovery practices, we conducted sampling of discrete sets of documents to evaluate the accuracy of our designation process over the course of our review and before production. In connection with this challenge and with the benefit now of having a static set of documents—the production set is a fixed set of documents not being coded in real-time—we have conducted statistical sampling of the produced documents using a 95% confidence interval and a 5% margin of error. Our purpose in conducting this analysis was to

verify the accuracy and reasonableness of our designation process. This is generally accepted among eDiscovery lawyers and other eDiscovery professionals as a reasonable method for validating an eDiscovery review and production process.

8. At my direction and under my supervision PPFA attorneys conducted a statistical sampling of all three possible designations in PPFA's September 9, 2022 production set: Attorney Eyes Only ("AEO"), Confidential, and No Designation ("Public"). PPFA conducted this statistical calculation to ascertain the incidence—often referred to as the richness—of the production set as-to each potential designation. Said another way, we used statistical calculations to project with a reasonable degree of certainty the number of documents qualifying for designation in each of the three categories provided under the Protective Order.

9. To achieve a 95% confidence level with a 5% margin of error, PPFA attorneys reviewed 383 randomly selected documents from the production population. The 383 documents were identified at random using Relativity's built-in random-sampling tool often used in this type of validation.

10. Next, we calculated the percentage of documents PPFA produced on September 9 and designated AEO, Confidential, or Public. The results of our statistical sampling calculation and actual designations are presented in the following table.

| Designation | Statistical Sampling Count | Predicted Percentage of September 9 Production (+/- 5% MOE) | PPFA's Actual Designation of September 9 Production |
|---|---|---|---|
| AEO | 280 | 73.1% | 73.8% |
| Confidential | 49 | 12.8% | 12.2% |
| Public | 54 | 14.1% | 14.0% |

11. As illustrated above, the calculated percentages based on statistical sampling are nearly identical to the percentages of the designations PPFA actually applied to the production

3

using its reasonable designation process. This analysis confirms that, with a reasonable degree of certainty, PPFA's review and designation process was successful and well within reasonable eDiscovery practices.

12.     To provide the Court with additional detail and background on certain errors Plaintiffs have highlighted in their briefing, we also used statistical sampling to analyze some of those errors. Using the same sample population identified for the calculations illustrated above, we compared the designations of documents reviewed for the sampling exercise against the designations used at production. Our analysis of that data further confirmed that PPFA's process was reasonable and well with the expected ranges calculated using the 5% margin of error.

13.     For example, in the group of 383 documents randomly sampled, PPFA decided 31 documents were mistakenly designated AEO. Importantly, however, PPFA attorneys identified 19 documents that should have been coded AEO but were instead coded Public or Confidential. The net of that calculation is 12 documents over-designated, or 3% of the overall population – well within the 5% margin of error our statistical sampling predicted.

14.     We also calculated PPFA's overall designation error rate. Again, using a statistical sample under the same structure described above, we counted the number of documents coded Confidential when they should have been coded AEO; documents not designated at all (i.e., Public) when they should have been designated Confidential; documents designated AEO when they should have been designated Confidential; and so forth. We identified 64 documents coded in error of our 383 document random sample. Notably, nearly half of those mistakes were documents under-designated: PPFA identified 28 documents that were designated, e.g., Confidential when they should have been coded AEO.

15. We calculated PPFA's overall designation error rate to be 16.7% with a 5% margin of error. Said another way, our statistical sampling calculation indicates that PPFA's designation process coded approximately 83.3% of the documents accurately (with a 5% margin of error). This is a reasonable error rate for this eDiscovery process, as described in my prior declaration.

\* \* \*

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on October 5, 2022 in Hoboken, New Jersey.

_____
Jeffrey Kopczynski