**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| United States of America<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Texas<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Louisiana<br>*ex rel.* ALEX DOE, Relator,<br>     Plaintiffs,<br>v.<br><br>Planned Parenthood Federation of America, Inc.,<br>Planned Parenthood Gulf Coast, Inc., Planned<br>Parenthood of Greater Texas, Inc., Planned<br>Parenthood South Texas, Inc., Planned Parenthood<br>Cameron County, Inc., Planned Parenthood San<br>Antonio, Inc.,<br><br>     Defendants. | § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 2:21-CV-<br>00022-Z<br><br>Date:     October 5, 2022 |

**AFFILIATE DEFENDANTS' RESPONSE TO
POTENTIAL RULE 37(a)(5)(A) SANCTIONS**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ......................................................................................................... 1

BACKGROUND ......................................................................................................... 4

I.    Relators' First Set of RFPs and Affiliate Defendants' Responses..................................... 4

II.   Relator's Motion to Compel and the Court's September 20, 2022 Order ......................... 6

III.  Affiliate Defendants' Good Faith Efforts to Comply
      with the September 20, 2022 Order ....................................................................... 7

LEGAL STANDARD..................................................................................................... 9

ARGUMENT ............................................................................................................ 10

I.    Affiliate Defendants' Discovery Responses Were Substantially Justified ...................... 10

II.   Cost-Shifting for Relator's Motion to Compel Would be Unjust..................................... 16

III.  There is No Basis for an Award of Sanctions Based on Affiliate Defendants'
      Good Faith Efforts to Comply with the September 20 Order .......................................... 18

CONCLUSION............................................................................................................ 19

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AIDS Healthcare Found., Inc. v. City of Baton Rouge*,
   2018 WL 5259465 (M.D. La. Oct. 22, 2018) ........................................................12

*BancPass, Inc. v. Highway Toll Admin., LLC*,
   2016 WL 4031417 (W.D. Tex. July 26, 2016) ......................................................14

*Benge v. Highgate Hldgs.*,
   2011 WL 13290463 (N.D. Tex. Apr. 5, 2011) ......................................................16

*F.T.C. v. Turner*,
   609 F.2d 743 (5th Cir. 1980) ................................................................................16

*Firefighters' Ret. Sys. v. Citco Grp. Ltd.*,
   2018 WL 276941 (M.D. La. Jan. 3, 2018)........................................................11, 12

*Hill-Rom Servs. v. Tellisense Med., LLC*,
   2020 WL 887773 (S.D. Ind. Feb. 24, 2020) .........................................................10

*Hoden v. State Farm Mut. Auto. Ins. Co.*,
   2021 WL 4264058 (D. Colo. Sept. 20, 2021) ..........................................................9

*Holden v. Perkins*,
   2021 WL 4268737 (E.D. La. Mar. 19, 2021) ........................................................17

*Kaneka Corp. v. JBS Hair, Inc.*,
   2012 WL 12941120 (N.D. Tex. Oct. 19, 2012)........................................................9

*Lechuga v. Magallanes*,
   2017 WL 8180782 (W.D. Tex. July 27, 2017) ......................................................10

*Lee v. Aramark Facility Servs.*,
   2021 WL 6070448 (E.D. La. July 15, 2021) .........................................................11

*Lewis v. East Baton Rouge Parish*,
   2018 WL 3785430 (M.D. La. Aug. 9, 2018) .........................................................16

*Martin v. Allstate Co.*,
   292 F.R.D. 361 (N.D. Tex. 2013) ....................................................................11, 16

*McAfee v. Shneider Nat'l Carriers, Inc.*,
   2015 WL 9319178 (N.D. Tex. Dec. 23 2015) .......................................................10

*Mort. Resols. Serv., LLC v. JP Morgan Chase Bank N.A.,*
 2017 WL 2305398 (S.D.N.Y. May 18, 2017) ..........................................................................12

*O'Donnell/Salvatori Inc. v. Microsoft Corp.,*
 339 F.R.D. 275 (W.D. Wash. 2021) ...................................................................................14

*Palmer v. Cognizant Tech. Solutions Corp.,*
 2021 WL 3145982 (C.D. Cal. July 9, 2021)..........................................................................14

*Richmond v. SW Closeouts, Inc.,*
 2016 WL 3090672 (N.D. Tex. June 2, 2016) ...........................................................10, 11, 15

*Rivas v. Greyhound Lines, Inc.,*
 2016 WL 11164796 (W.D. Tex. Jan. 11, 2016) ......................................................................9

*Roberts v. Lessard,*
 2018 WL 1547342 (M.D. La. Mar. 29, 2018) ........................................................................16

*Rockhill Ins. Co. v. CFI-Glob. Fisheries Mgmt.,*
 2018 WL 10932794 (D. Colo. Apr. 3, 2018) ..........................................................................9

*S.E.C. v. Kiselak Capital Grp., LLC,*
 2012 WL 369450 (N.D. Tex. Feb. 3, 2012).............................................................................10

*Snyder v. Fred Meyer Stores, Inc.,*
 2013 WL 3089405 (W.D. Wash. June 18, 2013).....................................................................9

*Stinson v. New York,*
 2015 WL 4610422 (S.D.N.Y. Jul. 23, 2015) ..........................................................................12

*Topalian v. Ehrman,*
 1996 WL 248995 (5th Cir. Apr. 12 1996) ...............................................................................16

*VeroBlue Farms USA Inc. v. Wulf,*
 2021 WL 5176839 (N.D Tex. Nov. 8, 2021)....................................................................12, 16

Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc. ("Affiliate Defendants") respectfully submit this response to the Court's September 20, 2022 Order ("September 20 Order") requesting that Affiliate Defendants "fully explain whether their incomplete discovery requests were 'substantially justified' or whether other circumstances make an award of expenses under Rule 37(a)(5)(A) unjust." ECF No. 184 at 8.

## INTRODUCTION

Cost-shifting for Relator's Motion to Compel (ECF No. 154) is not merited here because Affiliate Defendants' objections to Relator's First Request for Production ("First Responses") reflected reasonable disputes between the parties regarding the appropriate scope of discovery. Affiliate Defendants were substantially justified in their view that their objections based on relevance, proportionality, and burden were reasonable and appropriate given that Relator's claims that are expressly focused on Texas and Louisiana Medicaid. When Relator identified specific categories of documents related to Medicaid that Affiliate Defendants had not previously agreed to produce, *i.e.*, documents related to Medicaid enrollment and participation, they produced them. Despite an invitation from Affiliate Defendants, Relator never identified other specific categories of Medicaid documents Relator felt were lacking, instead choosing to file a motion to compel. Under these circumstances, an award of sanctions would be unjust.[1]

---

[1] Affiliate Defendants understand the Court's September 20 Order as directing them to respond by October 5 to Relator's request for cost-shifting in connection with the filing of Relator's August 31 Motion to Compel. Affiliate Defendants address briefly their good faith efforts to comply with the September 20 Order after it was issued, but to the extent Relator raises concerns regarding these efforts, Affiliate Defendants request an opportunity to address those concerns after Relator has raised them with the Court.

Affiliate Defendants reasonably objected to Relator's broad discovery requests seeking all documents related to Texas or Louisiana Medicaid (RFPs 1-9) and limited production of documents to "non-privileged responsive documents and communications related to the submission of Medicaid claims through, receipt of Medicaid payments from, or actual or potential repayment of Medicaid funds to Texas or Louisiana Medicaid." *See, e.g.*, ECF No. 154-2 at 13, 15. Relator asked Affiliates during a July 11 meet and confer to also produce documents related to their enrollment or participation in Texas or Louisiana Medicaid, and Affiliate Defendants did so. Relator did not identify other categories of documents relating to "Medicaid" that Relator believed should be produced.

Affiliate Defendants also reasonably declined to produce general financial and accounting documents (RFP 10), unless otherwise responsive to the Medicaid requests, as well as documents concerning payments that were returned or refunded from any federal or state program other than Medicaid (RFP 11) on the basis that these documents were not relevant to the parties' claims and defenses. Relator's briefing on the subsequently filed Motion to Compel and the Court's September 20 Order focused solely on the requests regarding Texas and Louisiana Medicaid, and Affiliate Defendants are now appropriately seeking clarification regarding the September 20 Order, including whether it requires production of documents responsive to RFPs 10 or 11 that are unrelated to Medicaid and thus irrelevant to the case. *See* ECF No. 201.

Further, consistent with the Court's September 20, 2022 Order granting Relator's Motion to Compel (ECF No. 184), Affiliate Defendants are working diligently and in good faith to supplement their initial Medicaid-related productions. Soon after receiving the Court's Order requiring a broader production of documents "concerning Medicaid," Affiliate Defendants ran the broad term "Medicaid" across the entire universe of Affiliate Defendants' already-collected

2

custodians, and have since produced more than 13,000 documents identified through that search. Affiliate Defendants are running searches and reviewing for confidentiality and privilege the approximately 78,000 additional documents from their initial custodians containing "Medicaid" and intend to produce or privilege log all such documents and their families. Affiliate Defendants also have collected available data for nineteen additional custodians that were determined most likely to have information relevant to "Medicaid" (construing relevancy broadly).[2]  Once this data is processed by Affiliate Defendants' e-discovery vendor (which takes time given the volume), the vendor will run the "Medicaid" term search across that data and the "hits" plus family members will be searched and reviewed for confidentiality and privilege.  Given the active discovery needs of the case, for the month of September, Affiliate Defendants incurred approximately $48,000 in e-discovery fees that are in addition to the approximately $100,000 incurred in July and August. *See* ECF Nos. 177 (Exs. A-E).  These figures will balloon in October as the additional custodial data is loaded, processed, and searched.

    Imposing sanctions on Affiliate Defendants would also be unjust in light of Relator's continued discovery conduct.  Relator has filed a barrage of motions to compel and for sanctions and has often done so without engaging in a good faith meet and confer process.  Instead, Relator frequently has made only a *pro forma* request for Affiliate Defendants' position, and then been unwilling to confer at all, much less in a meaningful way.  Affiliate Defendants have done their best to participate in the discovery process in good faith, assert only reasonable and defensible objections, promptly identify and produce responsive documents, and engage with Relator's counsel to try to negotiate appropriate resolutions to any concerns Relator has raised.  Affiliate

---

[2] These custodians are from Affiliate Defendants' revenue, medical services, communications, and finance departments during the relevant time period.

Defendants did so here and will continue to diligently participate in discovery in good faith. However, Affiliate Defendants are increasingly concerned that Relator's continued pursuit of extraordinarily broad productions is not motivated by an interest in obtaining useful documents relevant to the claims and defenses in this litigation, but rather to play a game of "gotcha." Affiliate Defendants are seemingly unable to meet Relator's shifting and, at times, unreasonable demands (no matter how hard Affiliate Defendants attempt to do so), and Relator has repeatedly and baselessly accused Affiliate Defendants, both in court filings and during the parties' conversations, of intentionally withholding relevant documents. *See* ECF No. 204 at 7-8; ECF No. 180 at 4-5; *id.* at 5-6. An award of costs or other sanctions is not justified in these circumstances and those specified in more detail herein. Affiliate Defendants also respectfully urge the Court to direct the parties—*all* parties—to proceed with discovery as zealous advocates but also in good faith, as the law requires.

## **BACKGROUND**

### I.    **Relators' First Set of RFPs and Affiliate Defendants' Responses**

The Court has received substantial briefing regarding these requests, *see* ECF Nos. 177, 201, & 207, so Affiliate Defendants provide only a brief summary here. Nine out of the eleven requests in Relator's First RFPs seek documents and communications expressly related to Texas and Louisiana Medicaid, *see* ECF No. 154-1 at 9-10 (RFPs 1, 2, 3, 4, 5, 6, 7, 8, and 9), and one additional RFP seeks some documents and communications related to Medicaid, *see* ECF No. 154-1 at 11 (RFP 11) (collectively, the "Medicaid Requests"). The remaining request, RFP 10, seeks:

> "[a]ll documents and communications concerning financial analysis, financial models, financial projections, accounting documents, accounting statements, balance sheets, cash flow statements, income statements, expense statements, revenue statements, and any other document concerning Defendants' assets, liabilities, income, expenses, loan, debt, credit facilities, or financial position."

*See* ECF No. 154-1 at 10.

In their June 27 written responses to the Medicaid Requests, Affiliate Defendants agreed to produce "non-privileged documents and communications related to the submission of Medicaid claims to, receipt of Medicaid payments from, or actual or potential repayment of Medicaid funds to Texas or Louisiana Medicaid that [could] be located through a reasonable search." *See, e.g.*, Dkt. 154-2 at 5-14. Affiliate Defendants stated that they would not provide documents responsive to RFP 10 or documents responsive to RFP 11 beyond federal, Texas, or Louisiana Medicaid because they sought information that was not relevant to any party's claim or defense. *See, e.g., id.* at 14.

During a July 11 meet and confer, Relator stated that documents related to Affiliate Defendants' enrollment and participation in Texas and Louisiana Medicaid also should be produced. Affiliate Defendants agreed to consider the request and ultimately revised their search terms to account for these topics. Relator did not raise any other specific objections or concerns regarding what other categories of documents that Relator believed should be produced in response to Relator's First Set of RFPs. Affiliate Defendants also confirmed during the meet and confer that they were standing on their objections to RFPs 10 and 11.

Following that meeting, Affiliate Defendants proceeded to finalize the collection of documents from custodians identified as most likely to have responsive information, run broad search terms, and review the resulting documents (which included around 18,000 emails plus their family members) that hit on those terms. Affiliate Defendants also identified and collected non-custodial responsive documents. Affiliate Defendants ultimately produced approximately 6,000 documents responsive to Relator's First RFPs, spanning more than 175,000 pages. Affiliate Defendants have also produced a privilege log containing approximately 1,100 documents responsive to Relator's First RFPs.

After Affiliate Defendants substantially completed their productions, the parties again met and conferred on August 30 to discuss Affiliate Defendants' search terms and methodology. Relator acknowledged that Relator had no specific concerns about Affiliate Defendants' search terms, but accused Affiliate Defendants of withholding documents responsive to the Medicaid Requests. Affiliate Defendants further explained their process for collecting and identifying responsive custodial and non-custodial data, and asked what types of documents or date ranges Relator believed were missing so that Affiliate Defendants could look into potential gaps in their production. Affiliate Defendants also invited Relator to review Affiliate Defendants' list of custodians so that the parties could meet and confer further regarding what additional custodians Relator believed were necessary for Affiliate Defendants' responses. Rather than engage with Affiliate Defendants in a meaningful meet and confer process, Relator filed a Motion to Compel the next day.

## II.   Relator's Motion to Compel and the Court's September 20, 2022 Order

In support of the motion to compel, Relator argued that "Affiliates' documents and communications concerning Texas Medicaid and Louisiana Medicaid are 'probative of every issue in this case,'" ECF No. 154 at 5. Relator only cited to one RFP specifically (RFP 7), *id.* at 5, n.2, and Relator's substantive arguments focused exclusively on the Texas Medicaid and Louisiana Medicaid requests (RFPs 1, 2, 3, 4, 5, 6, 7, 8, and 9). *See id.* at 4. Notwithstanding that Relator's papers focused solely on the Texas and Louisiana Medicaid aspects of Relator's First Set of RFPs, Relator requested an Order broadly compelling Affiliates "to provide full and complete responses to Relator's First Requests for Production," without exception. *See* ECF Nos. 154 & 180.

On September 20, the Court entered an Order granting Relator's Motion to compel "full and complete responses to Relator's First RFP." ECF No. 184. As with Relator's briefing, the Court's Order focused on the Medicaid-related requests, explaining that "Relator seeks documents

concerning Texas Medicaid and Louisiana Medicaid which the Court has already determined are 'probative of every issue in this case.'"  ECF No. 184 at 6 (quoting ECF No. 153 at 3); *see also* ECF No. 201.  The Court further stated that Relator demonstrated that Affiliate Defendants' response was insufficient through Relator's by-the-numbers comparison of Affiliate Defendants' production of documents "concerning Medicaid" to PPFA's production of such documents.  *Id.* at 5.  As noted, the Court's Order did not specifically discuss the non-Medicaid requests, RFPs 10 and 11, or reference the topics of these requests, so Affiliate Defendants have filed a motion seeking clarification regarding the scope of the Order.  ECF Nos. 200 & 201.  Should the Court grant the motion for clarification in whole or in part, it would provide an independent basis not to impose cost-shifting.  *See* ECF No. 161 at 13-14 (finding award under Rule 37 not justified because the motion to compel was denied in part; ECF No. 165 at 7 (same); ECF No. 166 at 7 (same).

### III.   Affiliate Defendants' Good Faith Efforts to Comply with the September 20, 2022 Order

Upon receipt of the September 20 Order, Affiliate Defendants promptly began working on supplemental rolling productions of documents and family members hitting on the term "Medicaid," without any responsiveness review.  In total, Affiliate Defendants are searching available data for twenty-eight custodians, which includes nineteen new custodians who were identified through a comprehensive, good faith effort by each Affiliate Defendant to determine which of its current or former employees were most likely to have documents relevant to Medicaid (construing relevancy broadly).[3]

---

[3] Affiliate Defendants had agreed to collect and search the data of thirty custodians in total, but the relevant Affiliate does not have data for two of the thirty custodians because they left the Affiliate's employment at a time when they were not on any litigation hold (which was also before Relator's complaint was filed).  *See, e.g.,* ECF No. 154-2 at 10 (describing Affiliate's email retention policies).

7

On September 26, Relator asked Affiliate Defendants to "confirm that [Affiliates] will be producing all non-privileged documents and emails for those custodians that hit for the search term 'Medicaid.'" *See* ECF Nos. 201 & 201-2.  Affiliate Defendants subsequently explained to Relator that they were working diligently to identify and produce all non-privileged documents and communications that contained the word "Medicaid" from Affiliate Defendants' custodial data. *See* ECF Nos. 201 & 201-3.  In response, Relator stated—for the first time—Relator's position that the First RFPs required Affiliate Defendants to produce *every* document or communication from *every* individual or database associated with Affiliate Defendants.  *Id.*  Affiliate Defendants informed Relator that they would not use Relator's proposed process due to the significant burdens such an approach would place on Affiliate Defendants, and reiterated their good faith, comprehensive attempts to identify the custodians most likely to have documents related broadly to "Medicaid," as well as their willingness to meet and confer if Relator identified deficiencies with Affiliate Defendants' list of supplemental custodians.  *See* ECF No. 201-3 (inviting Relator to meet and confer "regarding any specific custodians or even positions of custodians the Relator may think should be added.").  Relator did not even wait to receive Affiliate Defendants' list of additional custodians before rejecting the invitation to meet and confer and stating Relator's intent to "raise these issues in [Relator's] sanction and show cause motion.  ECF No. 201-4.  When asked during the September 29 meet and confer if Relator was seeking documents responsive to RFPs 10 and 11 given Relator's exclusive focus on the Medicaid Requests up to that time, Relator stated that although Relator had not looked "specifically" at these requests and that production of documents related to Medicaid were "most significant" to Relator, Relator's position was that the Order applies to all of the First RFPs.  Affiliate Defendants subsequently moved for clarification from the Court regarding the scope of its September 20 Order.  *See* ECF Nos. 200 & 201.

**LEGAL STANDARD**

"Upon granting a motion to compel discovery a court must order the opposing party to pay the moving party's 'reasonable expenses incurred in making the motion, including attorney's fees,' unless the opposing party was 'substantially justified' in its resistance to discovery, the prevailing party did not attempt to obtain discovery in good faith before moving to compel, or an award would be otherwise unjust."  ECF No. 184 at 2 (quoting *Parsi v. Daioleslam*, 778 F.3d 116, 126 (D.C. Cir. 2015)); *see also* Fed. R. Civ. P. 37(a)(5)(A)(ii),(iii) (stating that sanctions in connection with a motion to compel are not permitted if "the opposing party's nondisclosure, response, or objection was substantially justified," or "other circumstances make an award of expenses unjust.").  "A party's discovery conduct is considered 'substantially justified' if it is 'a response to a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'" *Kaneka Corp. v. JBS Hair, Inc.*, 2012 WL 12941120, at *1 (N.D. Tex. Oct. 19, 2012); *see also Rivas v. Greyhound Lines, Inc.*, 2016 WL 11164796, at *4 (W.D. Tex. Jan. 11, 2016) ("To be substantially justified, a party's nondisclosure of information requested in discovery does not need to be 'justified to a high degree.'") (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).  An objection 'need not be correct' to be substantially justified.  *Rivas*, 2016 WL 11164796, at *4 (noting that "[a] court should examine "the quality of the justification and genuineness of the dispute.") (internal citations omitted); *Rockhill Ins. Co. v. CFI-Glob. Fisheries Mgmt.*, 2018 WL 10932794, at *2 (D. Colo. Apr. 3, 2018) ("Substantial justification requires that an argument or response is justified to a degree that could satisfy a reasonable person, but it need not be correct.") (internal quotation and citation omitted); *Snyder v. Fred Meyer Stores, Inc.*, 2013 WL 3089405, at *5 (W.D. Wash. June 18, 2013) (substantial justification existed when opposing party 'had a colorable argument for resisting disclosure"); *Hoden v. State Farm Mut. Auto. Ins. Co.*, 2021 WL

4264058, at *3 (D. Colo. Sept. 20, 2021) (similar); *Hill-Rom Servs. v. Tellisense Med., LLC*, 2020 WL 887773, at *5 (S.D. Ind. Feb. 24, 2020) (similar).

In addition, Rule 37 empowers courts to address situations in which an award of expenses and/or attorney's fees would be unjust, such as when "'the movant filed the [Rule 37] motion before attempting in good faith to obtain the disclosure or discovery without court intervention" or when "the prevailing party also acted unjustifiably." Fed. R. Civ. P. 37(a)(5)(A)(i), (Advisory Comm. Notes to 1970 Amendment).

<u>ARGUMENT</u>

## I.   Affiliate Defendants' Discovery Responses Were Substantially Justified

Affiliate Defendants' conduct since the initial service of Relator's First RFPs evidences Affiliate Defendants' intent to meet their obligations under the Federal Rules, and Affiliate Defendants had a substantial justification for their First Responses. This was not a situation where Affiliate Defendants refused to consider Relator's requests, produce any relevant documents, or rebuffed attempts to engage in the meet and confer process. *Compare Richmond v. SW Closeouts, Inc.*, 2016 WL 3090672, at *5-6 (N.D. Tex. June 2, 2016) (imposing fees and costs where defendants did not respond to discovery requests); *Lechuga v. Magallanes*, 2017 WL 8180782 (W.D. Tex. July 27, 2017) (awarding fees and expenses where party did not respond to court's order compelling responses); *McAfee v. Shneider Nat'l Carriers, Inc.*, 2015 WL 9319178 (N.D. Tex. Dec. 23 2015) (awarding fees where party did not file a response explaining their failure to previously serve documents and answers); *S.E.C. v. Kiselak Capital Grp., LLC,* 2012 WL 369450, at *8-9 (N.D. Tex. Feb. 3, 2012) (granting attorney's fees based on a finding that counsel lacked good faith in advising their client to ignore discovery request). Rather, Affiliate Defendants' First Responses and their related production of documents were rooted in a reasonable understanding of the disputed issues in this case and Relator's specifically articulated concerns regarding the First

RFPs.  Affiliate Defendants' responses also complied with the parties' agreed procedures for discovery, *see* ECF Nos. 130-1 and 133, and governing case law.

### a.  Affiliate Defendants' Responses to the Medicaid Requests

With respect to Relator's requests seeking all documents "concerning Texas Medicaid and/or Louisiana Medicaid" (RFPs 1, 2, 3, 4, 5, 6, 7, 8, and 9), and the additional RFP that seeks some documents and communications related to Medicaid (RFP 11), Affiliate Defendants made a reasonable interpretation of Relators' broad set of discovery requests.  *See, e.g.*, ECF No. 154-1 at 9-11.  Affiliate Defendants' initial productions were based on their identification and collection of relevant non-custodial documents and custodial data from individuals that Affiliate Defendants believed were most likely to have documents relating to the Medicaid issues identified in Relator's complaint, *i.e.*, those relating to the submission of Medicaid claims through, receipt of Medicaid payments from, and actual or potential repayment of Medicaid funds to Texas or Louisiana Medicaid (as well as Affiliate Defendants' participation and enrollment in Texas or Louisiana Medicaid after Relator requested these documents).

In so limiting Affiliate Defendants' responses, Affiliate Defendants relied on well-established case law in this Circuit and elsewhere that a discovery request is "facially overbroad insofar as it is not limited to the issues in th[e] lawsuit," *Lee v. Aramark Facility Servs.*, 2021 WL 6070448, at *7 (E.D. La. July 15, 2021),[4] and that a responding party is not expected to search a

---

[4] *See also Martin v. Allstate Co.*, 292 F.R.D. 361, 367 (N.D. Tex. 2013) (limiting written deposition topics and stating that discovery has "never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition"); *Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, 2018 WL 276941, at *4 (M.D. La. Jan. 3, 2018) (explaining that "[t]here is no obligation on the part of a responding party to examine every scrap of paper in its potentially voluminous files, and in an era where vast amounts of electronic information is available for review, courts cannot and do not expect that any party can meet a standard of perfection.") (internal quotations omitted); *Richmond v. SW Closeouts, Inc.*, 2016 WL 3090672, at *3 (N.D. Tex. June 2, 2016) ("[T]he party seeking discovery is required to comply with Rule 26(b)(1)'s proportionality limits on discovery requests").

seemingly unlimited universe of documents, but can instead collect data from custodians that it identifies as most likely to have relevant information.  *See, e.g.*, *Firefighters' Ret. Sys. v. Citco Grp. Ltd*., 2018 WL 276941, at *4 (M.D. La. Jan. 3, 2018); *Mort. Resols. Serv., LLC v. JP Morgan Chase Bank N.A.*, 2017 WL 2305398, at *2 (S.D.N.Y. May 18, 2017) (denying motion to compel five additional custodians in False Claims Act litigation, stating that the responding party is "entitled to select the custodians most likely to possess responsive information and to search the files of those individuals'"); *Stinson v. New York*, 2015 WL 4610422, at *4-5 (S.D.N.Y. Jul. 23, 2015) (describing plaintiffs' request to search "all NYPD officers and their supervisors who are alleged to have engaged in the conduct" as "overbroad on its face" and that "requiring a search of every email or electronic custodian over the entire time period at issue-more than ten years [. . . ] would be unreasonably burdensome."); *see also* ECF 130-1 at 7 (the parties' agreed discovery protocol discussing treatment of data collected from "particular custodian's files").

Affiliate Defendants also relied on well-established case law when, in response to Relator's broad complaints regarding the sufficiency of Affiliate Defendants' productions, Affiliate Defendants asked Relator to identify specific deficiencies with their existing custodian list.  *See VeroBlue Farms USA Inc. v. Wulf*, 2021 WL 5176839, at *9 (N.D Tex. Nov. 8, 2021) (stating that the requesting party must make a showing of a "specific or material deficiency" in the existing production before requiring the responding party to engage in additional discovery efforts); *see also AIDS Healthcare Found., Inc. v. City of Baton Rouge,* 2018 WL 5259465, at *8 (M.D. La. Oct. 22, 2018) (denying motion for additional searches where electronically stored information was already collected from identified custodians and movant did not "adequately explain[]" alleged deficiencies).  Relator, however, declined to identify any specific deficiencies in Affiliate

Defendants selected custodians, and later again refused to do so with respect to Affiliate Defendants' plan generally to comply with the September 20 Order.

Similarly, Affiliate Defendants reasonably utilized search terms to identify documents for the first production. The use of search terms for the production of electronically stored information is a routine and accepted method in modern discovery. *See, e.g.*, *The Sedona Principles, Third Ed.: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, Cmt. 11. A, 164 (2018) ("A responding party may satisfy its good faith obligations to produce relevant electronically stored information by using technology and processes such as sampling, searching, or the use of selection criteria."). The terms utilized in Affiliate Defendants' search were broad, including phrases such as "CMS," "managed care," "health [within two words of] 'human services," and "Medicaid" where it appeared in the same document as another relevant term (variations of enroll, participate, eligibility, and accreditation, amongst others).[5] Affiliate Defendants provided Relator their search terms in compliance with the parties' agreed discovery procedure, *see* ECF No. 130-1 at 13-14, and Relator did not offer any specific objections to Affiliate Defendants' search terms or their description of the process used.

Affiliate Defendants subsequently produced the non-privileged relevant documents hitting on the search terms plus their family members. *See* ECF No. 177 at 5. Affiliate Defendants appropriately omitted privileged documents and those it deemed irrelevant to this litigation, such as documents related to COVID-19 and third-party company newsletters and advertisements. This

---

[5] Although Relator received Affiliate Defendants' search terms on August 25 (ECF No. 180, Ex. A), Relator has claimed that Affiliate Defendants did not run the search term "Medicaid." To the contrary, Affiliate Defendants ran this term, though in conjunction with other terms, consistent with their good faith attempts to identify relevant documents and their express written responses. Following the Court's September 20 Order, Affiliate Defendants agreed to run the term "Medicaid" without restriction.

methodology, too, is common in civil litigation and consistent with Affiliate Defendants' obligations under the Federal Rules and the parties' agreed procedures.   *See, e.g.* *O'Donnell/Salvatori Inc. v. Microsoft Corp.*, 339 F.R.D. 275, 277 (W.D. Wash. 2021) (holding that "a party's agreement to run search terms does not waive its right to review the resulting documents for relevance so long as the review can be done in a reasonably timely manner"); *Palmer v. Cognizant Tech. Solutions Corp.*, 2021 WL 3145982, at \*9 (denying motion to produce all documents that contained a search term without a responsiveness review, explaining that it would be improper to require production of a document "simply because it contains a search term[,] whether or not it is responsive to the discovery request, or, by extension, whether or not it is relevant and proportional to the needs of the action."); *BancPass, Inc. v. Highway Toll Admin., LLC*, 2016 WL 4031417, at \*3 (W.D. Tex. July 26, 2016) (holding that the parties were not obligated to produce documents that contained search terms, but were determined to be non-responsive).

Given these circumstances, the limitations on Affiliate Defendants' initial responses were a good-faith attempt to narrow discovery to the issues relevant to this litigation and mitigate the significant costs and burden imposed by the expansive requests in Relator's First RFPs.  *See* ECF No. 177, Exs. A-E.   Although the Court ultimately determined that Affiliate Defendants nonetheless needed to supplement their initial productions, reasoning that "the discovery burdens for parties in this case were bound to be difficult and burdensome because the allegations span a 12-year period," the Court did not discredit Affiliate Defendants' underlying concerns.  *See* ECF No. 184 at 7 (noting that declarations submitted by Affiliate Defendants regarding the substantial costs and burdens of responding to Relator's First RFPs were "more than unsustainable boilerplate."); *accord* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding an

14

nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," considering factors including "whether the burden or expense of the proposed discovery outweighs its likely benefit."); *Richmond v. SW Closeouts, Inc.*, 2016 WL 3090672, at *2 (N.D. Tex. June 2, 2016) (noting that "[a] party resisting discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.").

### b. Affiliate Defendants' Responses to RFP 10 & 11

As noted above, Relator's First RFPs also included two requests that were not specifically limited to Medicaid: RFP 10, which demanded production of all documents and communications concerning Affiliate Defendants' finances, and RFP 11, seeking production of all documents and communications concerning *any* payments received from *any* state or federal program between 2010 to present that Affiliate Defendants later returned or refunded.  *See* ECF No. 154-2 at 14-16; ECF No. 177 at 8-9.  With respect to RFP 10, Affiliate Defendants responded they would not produce responsive documents because sensitive information regarding Affiliate Defendants' finances generally (unrelated to Texas or Louisiana Medicaid) are not relevant to any party's claim or defense, let alone from over a 12-year period.  *See, e.g.*, ECF No. 154-2 at 15.  Affiliate Defendants' response was substantially justified as Relator's Medicaid requests already encompassed any arguably relevant financial data, reports, and analysis —*i.e.*, the information relating to Medicaid.  Similarly, Affiliate Defendants reasonably limited their response to RFP 11 to documents and communications relating to the *sole* state or federal program at issue in this case: Medicaid.  If anything, Relator's recent briefing regarding these requests—in which Relator finally articulates the purported justification for these RFPs —make abundantly clear that RFPs 10 and 11 seek highly sensitive information that is neither relevant nor proportionate to the needs of the

case.[6]  *See Martin v. Allstate Co*., 292 F.R.D. 361, 367 (N.D. Tex. 2013) (limiting written deposition topics and stating that discovery has "never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition"); *Benge v. Highgate Hldgs.*, 2011 WL 13290463, at *3 (N.D. Tex. Apr. 5, 2011) (denying as "fishing expedition" request for all phone records over 13-month period).  Should the Court agree and grant Affiliate Defendants' Motion for Clarification and deny Relator's Motion to Compel with respect to these requests, it would be unjust for the Court to grant Relator sanctions in connection with the Motion to Compel, as the Court has consistently determined that parties in this litigation must bear their own expenses where a Motion to Compel is denied in part.  *See* ECF No. 161 at 13-14 (citing *VeroBlue Farms USA*, 2022 WL 1644442, at *23); ECF No. 165 at 7 (same); ECF No. 166 at 7 (same).

## II.   Cost-Shifting for Relator's Motion to Compel Would be Unjust

"The primary purpose of sanctions is to deter frivolous litigation and abusive tactics," *Topalian v. Ehrman*, 1996 WL 248995, at *4 (5th Cir. Apr. 12 1996), and the prior course of communication between the parties is among the 'other circumstances' that courts may consider

---

[6] *See* ECF No. 204 at 7-8 (arguing that Relator needs financial documents to determine if Affiliate Defendants can pay a judgment).  As discussed in the Motion for Clarification, discovery about a litigant's ability to pay a judgment is not permissible where punitive damages are not at issue until a judgment is entered.  *F.T.C. v. Turner*, 609 F.2d 743, 745 (5th Cir. 1980) ("Under most circumstances. . . a private plaintiff may not discovery an opponent's asset until after a judgment against the opponent has been rendered"); *see also* ECF No. 207 at 4-5 (citing cases).  Affiliate Defendants are separately working to respond to Relator's Fifth Set of RFPs seeking documents related to Affiliate Defendants' communications with PPFA, so there is no need for Affiliate Defendants to produce all their sensitive financial documents for Relator to fish through to discover whether there is a "significant financial relationship between PPFA and the Affiliates." ECF No. 204 at 7.  Similarly, Relator implies that discovery into state and federal programs other than Medicaid is somehow warranted based upon speculation that Affiliate Defendants failed to repay loans under an entirely irrelevant, distinguishable program.  This is a case about whether Affiliate Defendants, as health care providers, knowingly failed to repay amounts under *Medicaid*, and Relator's statements make clear that RFP 11 is at least in part a fishing expedition that is not permissible under the Federal Rules.  *See supra* at 11, 16 (citing cases).

16

under Rule 37.  *See, e.g.*, *Holden v. Perkins*, 2021 WL 4268737, at \*5-6 (E.D. La. Mar. 19, 2021) (granting motion to compel in part and denying request for fees based on the parties' prior communications); *Roberts v. Lessard*, 2018 WL 1547342, at \*2 (M.D. La. Mar. 29, 2018) (denying award of expenses because the communications between the parties "demonstrate[d] a willingness on behalf of defense counsel" to meet and confer, and plaintiff's counsel's actions fell short of Rule 37's requirements for a good faith attempt to resolve the dispute without court intervention); *accord Lewis v. East Baton Rouge Parish*, 2018 WL 3785430, at \*2-3 (M.D. La. Aug. 9, 2018) (denying motion to compel where counsel filed the motion while "discussions between counsel regarding ESI searches and protocol were ongoing when the instant motion [w]as filed.").

Here, Affiliate Defendants' continued willingness to re-evaluate and revise their methodology to address specific concerns articulated by Relator during the meet and confer process and Relator's refusal to participate meaningfully in that process further underscores that sanctions are not justified, without regard to the Court's ultimate ruling on Affiliate Defendants' motion for clarification.  For example, following the parties' July 10, 2022 meet and confer, Affiliate Defendants revised their methodology to also include communications and documents related to Affiliate Defendants' enrollment and participation in Texas and Louisiana Medicaid. When Relator continued to articulate broad concerns about the sufficiency of Affiliate Defendants' productions, Affiliate Defendants similarly offered to re-evaluate their custodian list, but Relator chose to file a Motion to Compel rather than identify specific deficiencies in that custodian list or otherwise engage in the meet and confer process.  Sanctions are thus unwarranted and would be unjust particularly since Affiliate Defendants' conduct in the underlying dispute stands in sharp contrast to that of Relator who has *not* faced sanctions for Relator's discovery conduct.  *See* ECF No. 135 at 2-5 (describing Relator's blanket invocation of privilege and refusal to explain the

assertions of privilege during a meet and confer prior to Affiliate Defendants' filing a motion to compel, failure to provide a complete answer to any of Affiliate Defendants' interrogatories or verify the responses prior to the filing of a motion to compel, and an assertion during a meet and confer by Relator that Relator "may decide to withhold not-yet-produced documents if [Relator] is dissatisfied with the scope of [Affiliate Defendants'] document productions").

### III.    There is No Basis for an Award of Sanctions Based on Affiliate Defendants' Good Faith Efforts to Comply with the September 20 Order

As noted above, Affiliate Defendants request an opportunity to respond to any specific concerns that Relator may raise regarding their efforts to comply with the September 20 Order. But given Relator's statement that Relator plans to file a sanctions and show cause motion (ECF No. 201-4 at 4), Affiliate Defendants briefly describe their good faith efforts to comply here.

As detailed in the Motion for Clarification, until Affiliate Defendants posed the question regarding RFPs 10 and 11, Relator's requests, both formal and informal, have been exclusively focused on the Medicaid Requests.  *See* ECF No. 201 at 2-5 (detailing Relator's requests for documents relating to Medicaid and Relator's briefing on those requests).  Once it became clear that Relator also expects production of RFP 10 and 11 documents unrelated to Medicaid, Affiliate Defendants promptly filed a motion for clarification, having reasonably interpreted both Relator and the Court to have been focused on the Medicaid requests only.  *See* ECF No. 201 at 2-5 (detailing Relator's requests); *see also id.* at 5 (citing the Court's Order compelling production of documents related to Texas Medicaid and Louisiana Medicaid).  As for the Medicaid Requests, Affiliate Defendants submitted detailed declarations explaining that it would be impossible to produce all documents hitting on the term "Medicaid" for the over 2,000 employees who have worked for the collective Affiliate Defendants in the 12 year time period.  *See* ECF No. 177 (Exs. A-E).  However, upon receipt of the September 20 Order, Affiliate Defendants immediately began

18

the process for producing documents from their existing custodians that contained the term "Medicaid," and identified a broad list of additional custodians most likely to have documents related to Medicaid, construed broadly.  *See supra* at 10-12 (citing cases that state that the responding party is in the best position to identify custodians).

<u>**CONCLUSION**</u>

For the foregoing reasons, Affiliate Defendants respectfully request that the Court order the Affiliate Defendants and Relator to bear their own expenses in connection with the Motion to Compel.

Dated: October 5, 2022                                Respectfully submitted,

                                                      ARNOLD & PORTER KAYE SCHOLER LLP

                                                      By:    */s/ Tirzah S. Lollar*
                                                             Craig D. Margolis
                                                             Craig.Margolis@arnoldporter.com
                                                             Tirzah S. Lollar
                                                             Tirzah.Lollar@arnoldporter.com
                                                             Christian Sheehan
                                                             Christian.Sheehan@arnoldporter.com
                                                             Emily Reeder-Ricchetti
                                                             Emily.Reeder-Ricchetti@arnoldporter.com
                                                             Megan Pieper
                                                             Megan.Pieper@arnoldporter.com
                                                             Alyssa Gerstner
                                                             Alyssa.Gerstner@arnoldporter.com
                                                             601 Massachusetts Ave, NW
                                                             Washington, DC 20001-3743
                                                             Telephone: +1 202.942.6127
                                                             Fax: +1 202.942.5999

                                                             Christopher M. Odell
                                                             Texas State Bar No. 24037205
                                                             Christopher.Odell@arnoldporter.com
                                                             700 Louisiana Street, Suite 4000
                                                             Houston, TX 77002-2755
                                                             Telephone: +1 713.576.2400
                                                             Fax: +1 713.576.2499

19

Ryan Patrick Brown
Texas State Bar No. 24073967
brown@blackburnbrownlaw.com
1222 S. Fillmore
Amarillo, TX 79101
Tel: (806) 371-8333
Fax: (806) 350-7716

*Attorneys for Defendants Planned*
*Parenthood Gulf Coast, Inc., Planned*
*Parenthood of Greater Texas, Inc.,*
*Planned Parenthood South Texas, Inc.,*
*Planned Parenthood Cameron County,*
*and Planned Parenthood San Antonio*

## <u>CERTIFICATE OF SERVICE</u>

  I hereby certify that on October 5, 2022, the foregoing document was electronically filed with the Clerk of Court using CM/ECF.

*/s/ Tirzah S. Lollar*  
Tirzah S. Lollar
