**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ALEX DOE, Relator, | § § § | |
| THE STATE OF TEXAS, *ex rel.* ALEX DOE, Relator, | § § § | |
| THE STATE OF LOUISIANA, *ex rel.* ALEX DOE, Relator, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 2:21-CV-00022-Z |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., PLANNED PARENTHOOD GULF COAST, INC., PLANNED PARENTHOOD OF GREATER TEXAS, INC., PLANNED PARENTHOOD SOUTH TEXAS, INC., PLANNED PARENTHOOD CAMERON COUNTY, INC., PLANNED PARENTHOOD SAN ANTONIO, INC., | § § § § § § § § § § § § § | |
| Defendants. | § | |

**RELATOR'S MOTION TO COMPEL PRODUCTION AND APPOINTMENT**
**OF FORENSIC EXAMINER TO CONDUCT A REVIEW AND EXAMINATION**
**OF DEFENDANTS' COMPUTER SYSTEMS AND ELECTRONIC DATA, AND**
**FOR EXPEDITED CONSIDERATION**

**INTRODUCTION**

PPFA and the PPFA Affiliates have repeatedly failed to comply with their discovery obligations and the Court's orders granting Relator's motions to compel. As described below, PPFA has failed to produce responsive documents that are in its possession, custody or control, has failed to search known sources for responsive documents, and has used search terms that exclude responsive documents. The PPFA Affiliates have similarly failed to collect documents from custodians who have responsive documents and emails, and have used search terms that exclude responsive documents. These productions are "materially deficien[t]." Dkt. 213 at 5. PPFA and the PPFA Affiliates' discovery violations and ongoing failure to comply with the Court's orders is sanctionable conduct and has prejudiced Relator with only weeks left before the end of discovery. The Court has already compelled Defendants to "broadly produce documents related to Texas and Louisiana Medicaid." Dkt. 215 at 7; *see also* Dkt. 184 at 8, and it is evident that Defendants are not complying with this order. Time is running short and depositions have been noticed, but Relator is still without necessary documents.

Given Defendants' noncompliance and evasive tactics designed to run out the clock, Relator respectfully requests that the Court (1) order the appointment of an independent forensic examiner to conduct a comprehensive review and search of Defendants' computer systems, networks, and electronic databases to identify all responsive documents and sources of electronic information and data that Defendants have failed to produce in response to Relator's discovery requests and

the Court's orders granting Relator's motions to compel, and (2) order Defendants to pay all costs of conducting the forensic examination. Even though Defendants are not in compliance with the Court's orders, the forensic examination is a lesser consequence than the sanctions listed under Rule 37(b) and provides the best opportunity for Relator to obtain needed documents. Because of the limited time remaining, Relator respectfully requests that the Court expedite briefing and consideration of this motion. Relator proposes that the Court order Defendants to file a response to this motion by October 19, 2022, and Relator will file any reply by October 21, 2022.

## BACKGROUND

Relator's First Set of Requests for Production of Documents were served on Defendants on May 27, 2022. Relator subsequently served additional sets of requests on June 2 (PPFA), June 16 (all Defendants), July 7 (all Defendants), August 3 (PPFA), August 23 (PPFA Affiliates), August 31 (PPFA Affiliates), and September 1 (all Defendants). *See* App. 0002-0130. After Defendants failed to comply with their discovery obligations, Relator filed three motions to compel against PPFA and the PPFA Affiliates, Dkt. 120, 150, 154, which the Court granted, Dkt. 153, 184, 215. Specifically, the Court ordered PPFA to "provide full and complete responses to Relator's First Requests for Production and Relator's Second Requests for Production, and to produce to Relator all requested non-privileged documents in its possession, custody, or control **on or before September 9, 2022**." Dkt. 153 at 6. The Court has also ordered PPFA to "produce documents responsive

to Relator's Third RFP No. 1." Dkt. 215 at 7.  On September 20, the Court ordered the PPFA Affiliates to "provide full and complete responses to Relator's First RFP[s]." Dkt. 184 at 8.

The parties have conferred numerous times with respect to the Defendants' production. Most recently, on September 27 and 29, 2022, the parties conferred again regarding Defendants' compliance with this Court's orders. Based on those conversations and the limited time remaining in discovery and before depositions, it has become necessary to request further action to get Defendants to comply with their obligations, as the Court's previous orders compelling production have not resulted in substantial compliance.

## LEGAL STANDARD

Pursuant to Rule 37(a)(3) of the Federal Rules of Civil Procedure, a party seeking discovery may move for an order compelling a discovery response against another party when the latter has failed to answer an interrogatory submitted under Rule 33 or failed to produce documents requested under Rule 34. *See* Fed. R. Civ. P. 37(a)(3)(iii)-(iv). "The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable." *Fath v. Tex. Dep't of Transp.*, No. 1:16-CV-234-LY, 2016 WL 7442870, at *1 (W.D. Tex. Oct. 19, 2016) (citing *McLeod, Alexander, Powel & Apffel, P.C., v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)). In the event a motion to compel is granted or responses are provided after filing of said motion, a "court *must* . . . require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct,

4

or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A) (emphasis added). "'To make [a] showing of a specific or material deficiency in the other party's production to require the responding party to engage in additional searches or discovery efforts,' the requesting party 'should make a showing, including through the documents that have been produced, that allows the Court to make a reasonable deduction that other documents may exist or did exist and have been destroyed or must point to the existence of additional responsive material.'" Dkt. 213 at 4 (quoting *VeroBlue Farms USA Inc. v. Wulf*, No. 3:19-CV-764-X, 2021 WL 5176839, at *9 (N.D. Tex. Nov. 8, 2021)).

Federal Rule of Civil Procedure 34(a) requires that a party search their electronic data to produce relevant discovery materials. When the "responding party's production 'has been inadequate'" the district court may authorize direct access to an opposing party's electronic storage device. *Realpage, Inc. v. Enter. Risk Control, LLC*, No. 4:16-CV-00737, 2017 WL 1180420, at *1 (E.D. Tex. Mar. 30, 2017) (quoting *Diepenhorst v. City of Battle Creek*, No. 1:05-CV-734, 2006 WL 1851243, at *3 (W.D. Mich. June 30, 2006). Courts have allowed "mirror imaging" access of a party's electronic databases "based on evidence that requesting the data from the responding party would not be useful given the party's past discovery history." *Cory v. George Carden Int'l Circus, Inc.*, No. 4:13-CV-760, 2016 WL 3460781, at *2 (E.D. Tex. Feb. 5, 2016); *see, e.g., Simon Prop. Grp. LP v. mySimon, Inc.*, 194 F.R.D. 639, 641 (S.D. Ind. 2000) (noting "troubling discrepancies with respect to [the responding

5

party's] document production); *Playboy Enters., Inc. v. Welles*, 60 F. Supp. 2d 1050, 1051 (S.D. Cal. 1999) (allowing direct access to the plaintiff's computer system based on evidence that plaintiff was deleting emails that should have been produced).

When determining whether to permit forensic examination of electronic devices, courts consider whether the party whose devices are to be examined "withheld discovery; whether the party cannot or will not search for requested discovery; and the extent to which the party complied with past discovery requests." *Bradfield v. Mid-Continent Cas. Co.*, No. 5:13CV-222-Oc-10PRL, 2014 WL 4626864, at *4 (M.D. Fla. Sept. 15, 2014). A court may also consider whether the requesting party had received documents from other entities that should have been, but were not, produced by defendants as evidence of a party's unwillingness to comply with discovery requests and the need for forensic examinations. *Bank of Magnolia v. M&P Global Fin. Servs., Ins.*, 258 F.R.D. 514 (S.D. Fla. 2009); *see also Schreiber v. Friedman*, No. 15-CV-6861, 2017 WL 11508067, at *5 (E.D.N.Y. Aug. 15, 2017) (quotations omitted) ("[i]t is well-settled that discrepancies or inconsistencies in the responding party's discovery responses may justify a party's request to allow an expert to create and examine a mirror image of a hard drive"). "Courts have also ordered computer imaging when there is reason to believe that a litigant has tampered with the computer or hidden relevant materials that are the subject of court orders." *Id.*

6

"[Fed. R. Civ. P.] 37(b) empowers the courts to impose sanctions for failures to obey discovery orders. In addition to a broad range of sanctions, including contempt, [Rule] 37(b)(2) authorizes the court to impose a concurrent sanction of reasonable expenses, including attorney's fees, caused by the failure to obey a discovery order." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012) (quoting *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir. 1983)). A district court "has broad discretion under Rule 37(b) to fashion remedies suited to the misconduct." *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir. 1990). "[U]sually, ... a finding of bad faith or willful misconduct [is required] to support the severest remedies under Rule 37(b)—striking pleadings or dismissal of a case." *Id.* at 1021. Lesser sanctions do not require a finding of willfulness. *See Chilcutt v. United States*, 4 F.3d 1313, 1323 n. 23 (5th Cir. 1993) (stating that district courts "have authority to grant a broad spectrum of sanctions" under Rule 37(b), and "neither this Court nor the Supreme Court has ever determined that the lack of willful, contumacious, or prolonged misconduct prohibits all sanctions").

## ARGUMENT

### I.   Evidence of PPFA's Noncompliance.

PPFA claims to have conducted an extensive search for all responsive documents, but its document production reveals otherwise. For example, neither PPFA nor the PPFA Affiliates have produced any Planned Parenthood Medical Director Orientation Manual or any similar documents, even though they are

directly relevant to the claims and issues in this case. *See* App. 0132-0165.[1] The Medical Director Orientation Manual explains that "affiliate operations must comply with PPFA Accreditation Indicators as well as all applicable federal, state, and local laws and regulations," App. 0145, and informs Medical Directors of the Affiliates of their responsibility to ensure compliance with Medicaid regulations, *id.* at 12, 30. It specifically warns Medical Directors of potential liability under the False Claims Act for fines and damages, App. 0164, and warns that "[c]laims submitted to Medicare or Medicaid for services rendered by an excluded party are violations of the False Claims Act," App. 0165. It also outlines the accreditation process and the function of PPFA departments and divisions, such as the PPFA Affiliate Services/Business Operations Team, as well as other PPFA-affiliated entities, such as Affiliate Risk Management Services (ARMS) and the Affiliates Chief Executives Council, which impact the operations of the PPFA Affiliates. App. 0145-0161. In particular, ARMS, the centralized risk management organization for Planned Parenthood, maintains ARMS Connect and the Center for Affiliated Learning (CAL), which are online learning and training centers that provide information and resources to Affiliates and Planned Parenthood staff. *Id.* at App.0148. The Medical Director Orientation Manual is thus responsive to Relator's requests and is compelling evidence of PPFA's control over the PPFA Affiliates, PPFA's direct involvement and oversight of the PPFA Affiliates' participation in

---

[1] Relator obtained a copy of the Medical Director Orientation Manual through Relator's investigation of Defendants, as described in Relator's Complaint. Relator produced the Medical Director Orientation Manual in response to Defendants' discovery requests in this lawsuit.

Medicaid, and PPFA and the PPFA Affiliates' knowledge of their obligation to comply with all state and federal Medicaid rules and regulations, as well as potential liability under the False Claims Act.

This document also demonstrates the inadequacy of PPFA's search terms. PPFA did not search for "Medicaid," but instead searched for "Medicaid & Texas OR Medicaid & Louisiana." But these terms do not capture all responsive documents because there are Medicaid documents in PPFA's possession, custody or control that clearly apply to the PPFA Affiliates but do not contain the terms "Texas" or "Louisiana". The Medical Director Orientation Manual is one example—it does not contain either "Texas" or "Louisiana." *See id*. Because of PPFA's limited search terms, PPFA either did not find this document, it is housed in a part of PPFA's system or network that was never collected or searched, or the document was purposely withheld. In any case, this document is an example of PPFA's noncompliance with its discovery obligations and the Court's orders. It "casts . . . doubt on [PPFA]'s methodology (or lack thereof) for identifying responsive documents. And it underscores the utility in employing a search methodology like that suggested" by Relator below in Part III. *Tera II, LLC v. Rice Drilling D, LLC*, No. 2:19-CV-2221, 2022 WL 1114943, at \*5 (S.D. Ohio Apr. 14, 2022).

Another example is PPFA's "Medicaid Toolkit." Sealed App. 0001-0134.[2] This is a document that PPFA apparently prepares and distributes to Affiliates for

---

[2] Documents in the sealed appendix ("Sealed App.") are designated AEO or Confidential. Dkt. 133. The Court recently ordered PPFA to redesignate its documents, Dkt. 214, but because these

purposes of training and education on Medicaid participation. Clearly, it is responsive and is highly relevant to both PPFA's and the PPFA Affiliates' liability. PPFA produced a 2011 version, a 2019 draft, and what appears to be a 2020 final version, Sealed App.0001-0044, 0048-0091, 0092-0134, but no other drafts or communications that relate to the Toolkit, like PPFA's drafting, research, preparation, and distribution of the Toolkit to the PPFA Affiliates. These other documents are apparently either stored in a part of PPFA's system or network that was not searched (for instance, both of these documents were email attachments, so perhaps only email was searched) or were purposely withheld. Either way, these documents are responsive and should have been produced, along with other documents like them.

Notably, the PPFA employees drafting and revising the Medicaid Toolkit would obviously have responsive documents yet—except for one—were not on PPFA's list of custodians. *See* Sealed App. 0002-003, 0046, 0049; App. 0169. Documents regarding PPFA's Health Care Investment Program—a program designed to help PPFA Affiliates boost their Medicaid revenue—show that the individuals involved in this program would have highly relevant and responsive documents as well. *See, e.g.,* Sealed App. 0135-0164. But PPFA only collected documents from one director of this program, not the former directors or deputy directors, nor other individuals involved. *See* App. 0169. Nor has PPFA searched the documents of other employees extremely likely to have responsive documents—for

documents still appear to have confidentiality designations, Relator's counsel files them with a motion to seal pursuant to the protective order.

instance, PPFA's "Senior Director- Affiliate Financial Consulting," "VP Health Outcomes and Performance Optimization," and "Associate Director- Affiliate Clinical Operations Consulting- Business Operations Team"— who have appeared in several emails discussing Medicaid.[3] Nor did PPFA search the documents of individuals who replaced the listed custodians. *See* App. 0169 (indicating only "former" employees for certain positions). During the parties' meet-and-confer, Relator's counsel explained why the search terms and custodians were inadequate using some of these examples and drawing counsel's attention to PPFA documents produced by Relator that were not produced by PPFA yet are responsive.

When Relator's counsel brought some of these issues to PPFA's attention during the parties' meet-and-confer, PPFA attempted to shift the burden to Relator to identify every document that PPFA has failed to produce—a discovery tactic that PPFA has attempted to use throughout this case. But PPFA's counsel admitted that PPFA did not search or collect documents from PPFA's intranet. This is a critical failure in complying with discovery obligations, as the PPFA intranet is highly likely to contain significant numbers of responsive documents. As PPFA describes it:

> The PPFA intranet is a private, secure website that is internal to the Planned Parenthood family. The site is provided as a service to all Planned Parenthood staff. The intranet is divided into subsections that contain data about affiliates, historical information about the organization, and other PPFA-based sites. It also contains information

---

[3] It has also been difficult for Relator to assess the adequacy of PPFA's and the PPFA Affiliates' custodians—even if relevant, given whatever method used for locating responsive documents was clearly inadequate—because of Defendants' refusal to produce all organizational charts for the relevant time period before the Court granted Relator's Second Motion to Compel. Dkt. 215.

on upcoming events, conferences and trainings, PPFA branding and communications materials, and public policy and advocacy materials.

App. 0147. The PPFA intranet apparently was referred to as the "extranet" at some point. Emails received by the custodians from the PPFA extranet show that there is a bulletin board or communications system housed within the extranet. Sealed App.0165-0169. And other documents reference PPFA's use of Google Docs, a cloud-based system. Sealed App. 0170-0171.

It is clear from these deficiencies in PPFA's discovery process and document production that PPFA has failed to produce all documents and communications in its possession, custody or control responsive to Relator's requests as ordered by the Court.

## II.     Evidence of the PPFA Affiliates' Noncompliance.

For the same reasons as above, the PPFA Affiliates should have produced documents like the PPFA Medical Director Orientation Manuals and the Medicaid Toolkit, in addition to responsive documents on the PPFA intranet, ARMS Connect, and the Center for Affiliated Learning, which are undoubtedly within the PPFA Affiliates' possession, custody, or control. This demonstrates that regardless of the process, search terms, or custodians used, the Affiliates' methods for gathering responsive documents are inadequate. Nor did the Affiliates produce documents from training courses they are required to complete by managed care organizations reimbursing for Medicaid services. *See* Sealed App. 0172-0174. While it has been difficult for Relator to assess the Affiliates' chosen custodians because of their failure to produce the requested organizational charts, missing from their list of

custodians are the Affiliates' Medical Directors, even though, as the Medical Director Orientation Manual shows, the Medical Directors are involved in the Affiliates' compliance with Medicaid rules regulations. App. 0145-0146, 0164-0165.

To the extent that search terms matter, the PPFA Affiliates similarly limited their search terms, *see* App. 0173, not searching for "Medicaid," but instead limiting it by searching only for "Medicaid" in combination with certain terms. Those terms do not include obvious ones like "claim," "bill*," "defund," "fraud," "reimburs*," "pay," "pay back," "compliance," and "training," nor did the Affiliates search for "false claims," "LDH,"[4] the correct web addresses for Texas and Louisiana entities administering Medicaid,[5] the PPFA CEOs since Cecile Richards left PPFA, or the CMS Deputy Administrators since Vikki Wachino left in 2017, as examples.

Regardless, the PPFA Affiliates did not even produce the documents that hit for their inadequate search terms. A Search Term Report created by the PPFA Affiliates on September 7, 2022 illustrates the problem. For instance, for custodian Sheila McKinney, who is the COO of Planned Parenthood Greater Texas (PPGT), approximately 86,870 files, emails, and attachments hit for the search terms and were "promoted to review." App. 0172. But only *eighteen* documents were ultimately produced, with 131 being withheld for privilege review. *Id.* What legitimate process could narrow nearly 87,000 files to a mere 18? It is a similar story for custodian Ken

---

[4] The PPFA Affiliates searched for "DHH" and "dhh.louisiana.gov," but Louisiana Medicaid is administered by the Louisiana Department of Health (LDH). *See, e.g.*, https://ldh.la.gov/page/220.
[5] "dhh.Louisiana.gov" redirects to "ldh.louisiana.gov," and would not hit for many documents if the search is case sensitive because of the uppercase L. The PPFA Affiliates also searched for "hhs.tx.gov," which does not exist. The correct web address is "hhs.texas.gov."

Lambrecht, CEO of PPGT. Approximately 69,058 documents hit for the search terms, yet only *ten* documents were produced and 98 were withheld for privilege review. *Id.* While both of these custodians are from PPGT, the same is true for the other affiliates. Despite tens of thousands of documents hitting for the search terms, only a comparative handful were produced. *Id.* PPGT's production is particularly inadequate. Even though PPGT is a large affiliate like PPGC and received a similar amount of money from Medicaid, it somehow only had 184 non-custodial files collected versus 6,718 from PPGC and 1,182 from PPST (even though PPST is a much smaller affiliate). *Id.* The PPFA Affiliates have produced more documents since September 7, but PPGT has produced (as of last count) only about half the number of pages of documents that PPGC has produced.

Further raising questions about the collection process, as of last week, a date trend analysis of all the Affiliates' production received by that point showed that very few emails or documents were produced from 2017, even though that was the year that the Affiliates were terminated from Medicaid. *See* App. 0175. It is unclear what process the Affiliates could be following that would have excluded many documents from a particular year from production. And as noted above, their productions are still missing documents like the Medical Director Orientation Manual and Medicaid Toolkit, which are both responsive and in the Affiliates' possession, custody, or control. Their productions are also missing documents that PPFA produced but that the Affiliates should also have produced, like responsive emails to/from PPFA and Affiliate employees. *See, e.g.,* Sealed App. 0176-0177.

14

## III.    Proposed Forensic Examination Process

"Courts have recognized that discrepancies or inconsistencies in the responding party's discovery responses may justify a party's request to allow an expert to create and examine a mirror image of a hard drive." *Hawkins v. Ctr. For Spinal Surgery*, No. 3:12-1125, 2015 WL 3795297, at *1 (M.D. Tenn. June 18, 2015). Other courts have compelled forensic imaging under similar circumstances. *E.g.,* *Simon Prop.*, 194 F.R.D. at 641 (permitting plaintiff to mirror image defendant's computers in light of "troubling discrepancies with respect to defendant's document production"); *Ameriwood Indus., Inc. v. Liberman*, No. 4:06CV524-DJS, 2006 WL 3825291, at *1 (E.D. Mo. Dec. 27, 2006), as amended on clarification, No. 4:06CV524-DJS, 2007 WL 685623 (E.D. Mo. Feb. 23, 2007) (allowing an independent expert to obtain and search a mirror image of defendants' computers after court had "cause to question whether defendants have produced all responsive documents"). This Court should "follow[] the trend of finding that forensic [inspection] may be appropriate 'based upon discrepancies or inconsistencies in a response to a discovery request or the responding party's unwillingness or failure to produce relevant information.'" *Delta T, LLC v. Williams*, 337 F.R.D. 395, 403 (S.D. Ohio 2021) (quoting *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, No. CIV.A. 07-2319-CM, 2009 WL 722056, at *7 (D. Kan. Mar. 18, 2009)).

Relator proposes the following process for the forensic examination, which is like that ordered by other courts. *See, e.g., Tera II,* 2022 WL 1114943, at *6

(ordering forensic examiner search of plaintiffs' emails at plaintiffs' expense); *Delta T,* 337 F.R.D. at 404 (ordering forensic imaging and examination of defendants' computer systems at defendants' expense).

(1) Relator proposes that Jeffrey L. Johnson, CCE, of Quantum eDiscovery, *see* App. 0177-0180, (the "Examiner") be appointed independent forensic examiner. Mr. Johnson is qualified to perform the examination and is willing and able to complete the examination in the short time frame in this case.

(2) The Examiner, and any supporting staff, shall sign the confidentiality agreement at Dkt. 129-1 and shall comply with the terms of the Protective Order entered in this case. To the extent the Examiner and any additional staff have direct or indirect access to information protected by attorney-client privilege, such disclosure shall not result in any waiver of that privilege.

(3) Defendants Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., and Planned Parenthood South Texas, Inc. shall make all on-premises and cloud-based computer systems, file storage locations, and databases available, including personal computers and storage devices to the Examiner for inspection, copying, and imaging at a mutually agreeable and non-disruptive time, but no later than October 26, 2022. By the same date, Defendants shall provide to Plaintiffs (a) a detailed report of all on-

premise and cloud-based computer systems, file storage locations and databases, and any other sources of electronic data that were collected and searched by Defendants prior to October 14, 2022, and (b) a Data Map identifying all on-premise and cloud-based computer systems, file storage locations and databases, and any other sources of electronic data that are in Defendants' possession, custody or control.

(4) The Examiner shall then retrieve responsive documents, files, and related material by performing a search limited to the search terms "Medicaid," "overpa*," and "repay*," for the time period of January 1, 2010 through January 6, 2022.

(5) Defendants shall pay the Examiner's fees and expenses for time and services provided pursuant to this Order.

(6) Defendants shall review the responsive documents, files, and material for privilege, create a privilege log, and produce the non-privileged documents, files, and material to Plaintiffs. The deadline to produce shall be within 14 days of the examination or November 9, 2022, whichever is sooner. If Plaintiffs object to Defendants' withholding of any document as privileged, the parties shall meet and confer in good faith to resolve their differences. If they fail to resolve the matter between themselves, they shall follow the procedure set forth in the Local Rules.

(7) Defendants are not required to authorize their mobile phone or internet carriers to provide the Examiner with access to Defendants' stored records.

The information Relator seeks—documents and communications about PPFA's control and oversight of the PPFA Affiliates and documents and communications regarding the PPFA Affiliates' participation in Texas and Louisiana Medicaid—is both relevant and proportional to this case, as this Court has already determined. Dkt. 153. That is also the relevant standard here. *Tera II*, 2022 WL 1114943, at *6. This proposed procedure also sufficiently protects privacy and confidentiality concerns because it is "designed to generate relevant" documents, is limited to a particular time period, and permits Defendants to review for privilege before producing. *Delta T,* 337 F.R.D. at 403-04. It will also provide the most efficient means to gather responsive documents and provide them to Relator. Further, "'[t]he costs of preserving and producing relevant and proportionate electronically stored information ordinarily should be borne by the responding party,'" and "there is no reason to depart from the ordinary course here." *Tera II*, 2022 WL 1114943, at *6 (quoting *The Sedona Principles, Third Ed.*, 19 Sedona Conf. J. 53 (2018)).

## CONCLUSION

For the reasons stated above, Relator respectfully requests that the Court grant Relator's motion and (1) order a forensic examination of Defendants' computer systems, networks, and databases to identify all responsive documents and sources

of electronic information and data that Defendants have failed to produce in response to Relator's discovery request and the Court's orders granting Relator's motions to compel, and (2) order Defendants to pay all costs of the forensic examination. Because of the limited time remaining, Relator also respectfully requests that the Court expedite briefing and consideration of this motion. Relator proposes that the Court order Defendants to file a response to this motion by October 19, 2022, and Relator will file any reply by October 21, 2022.

Respectfully submitted.

/s/ Andrew B. Stephens
Andrew B. Stephens
Texas Bar No. 24079396
Heather Gebelin Hacker
Texas Bar No. 24103325
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
(512) 399-3022
andrew@hackerstephens.com
heather@hackerstephens.com

**Attorneys for Relator**

## CERTIFICATE OF CONFERENCE

On September 27 and 29, 2022, counsel for Relator conferred with counsel for the PPFA Affiliates regarding their compliance with the Court's orders. On October 14, in accordance with Local Rule 7.1(b), Relator's counsel conferred with counsel for PPFA and the PPFA Affiliates about the relief requested in this motion. Counsel for PPFA and the PPFA Affiliates stated that their clients are opposed.

<u>/s/ Andrew B. Stephens</u>
Andrew B. Stephens

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2022, the foregoing document was filed and served via CM/ECF.

<u>/s/ Andrew B. Stephens</u>
Andrew B. Stephens