## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>*ex rel.* ALEX DOE, Relator, | § § § | |
| THE STATE OF TEXAS,<br>*ex rel.* ALEX DOE, Relator, | § § § | |
| THE STATE OF LOUISIANA,<br>*ex rel.* ALEX DOE, Relator, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 2:21-CV-00022-Z |
| PLANNED PARENTHOOD<br>FEDERATION OF AMERICA, INC.,<br>PLANNED PARENTHOOD GULF<br>COAST, INC., PLANNED<br>PARENTHOOD OF GREATER<br>TEXAS, INC., PLANNED<br>PARENTHOOD SOUTH<br>TEXAS, INC., PLANNED<br>PARENTHOOD CAMERON<br>COUNTY, INC., PLANNED<br>PARENTHOOD SAN ANTONIO,<br>INC., | § § § § § § § § § § § | |
| Defendants. | § § | |

## APPENDIX IN SUPPORT OF RELATOR'S MOTION TO COMPEL PRODUCTION AND APPOINTMENT OF FORENSIC EXAMINER TO CONDUCT A REVIEW AND EXAMINATION OF DEFENDANTS' COMPUTER SYSTEMS AND ELECTRONIC DATA, AND FOR EXPEDITED CONSIDERATION

| Exhibit | Description | Page Numbers |
|---------|-------------|--------------|
| 1 | Relator's First Requests for Production (PPFA, Affiliates) | App. 0001-0013 |
| 2 | Relator's Second Requests for Production (Affiliates) | App. 0014-0025 |
| 3 | Relator's Second Requests for Production (PPFA) | App. 0026-0037 |
| 4 | Relator's Third Requests for Production (PPFA) | App. 0038-0049 |
| 5 | Relator's Third Requests for Production (Affiliates) | App. 0050-0062 |
| 6 | Relator's Fourth Requests for Production (PPFA) | App. 0063-0075 |
| 7 | Relator's Fifth Requests for Production (PPFA) | App. 0076-0088 |
| 8 | Relator's Fourth Requests for Production (Affiliates) | App. 0089-0101 |
| 9 | Relator's Fifth Requests for Production (Affiliates) | App. 0102-0115 |
| 10 | Relator's Sixth Requests for Production (PPFA, Affiliates) | App. 0116-0130 |
| 11 | Medical Director Orientation Manual | App. 0131-0165 |
| 12 | Document Production Cover Letter 9/9/2022 | App. 0166-0170 |
| 13 | Search Term Report 9/7/2022 | App. 0171-0173 |
| 14 | Date Trend Analysis | App. 0174-0175 |
| 15 | Jeffrey L. Johnson CV | App. 0176-0180 |

# EXHIBIT 1

App. 0001

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *EX REL.* DOE, *et al.,* | § § § | |
| | § | |
| *Plaintiffs,* | § § | |
| v. | § § | Civil Action No. 2:21-CV-00022-Z |
| | § | |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., *et al.,* | § § § | |
| | § | |
| *Defendants.* | § | |

## RELATOR'S FIRST REQUESTS FOR PRODUCTION

To:   Defendants Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc., c/o Craig Margolis, Murad Hussain, Tirzah Lollar, Christopher Odell, Arnold & Porter Kaye Scholer LLP, 601 Massachusetts Ave., NW, Washington, DC 20001-3747, Attorneys for Defendants.

Pursuant to Federal Rules of Civil Procedure 26 and 34, Relator Alex Doe hereby requests that Defendants produce the following documents in accordance with the definitions and instructions set forth below at the office of Hacker Stephens LLP, c/o Andrew B. Stephens, 108 Wild Basin Road South, Suite 250, Austin, Texas 78746, within thirty (30) days after service of same.

App. 0002

## INSTRUCTIONS

1.      In responding to these document requests, Defendants are required to furnish all responsive documents in their possession, custody, or control, or in the possession, custody, or control of their attorneys, agents, employees, independent contractors, and all other persons acting on behalf of each of them or any of them.

2.      Each document request shall be responded to separately and fully, unless it is in good faith objected to, in which event the reasons for the objection shall be stated with specificity. If an objection pertains to only a portion of the request, or to a word, phrase, or clause contained therein, Defendants shall state the objection to that portion only and respond to the remainder of the request.

3.      If, in responding to these document requests, Defendants claim any ambiguity in a document request, or in a definition or instruction applicable thereto, Defendants shall not rely upon the ambiguity as a basis for refusing to respond, but shall set forth as part of their response the language deemed to be ambiguous and the interpretation used in responding to the request.

4.      An original or one copy of each responsive document shall be produced. Any copy of a document that varies in any way from the original or from any other copy of the document, whether by reason of handwritten or other notation, highlighting, underlining, or other marks, or a draft or successive iteration thereof and all modifications thereto, shall constitute a separate document and must be produced, whether or not the original of such document is within Defendants' possession, custody, or control. If the same document exists in both electronic and

App. 0003

non-electronic format, the electronically maintained document must be produced; provided, if the non-electronically maintained document varies in any way from the electronically maintained document as described above, both the electronically maintained and non-electronically maintained documents shall be produced.

5.    Documents shall be produced as they are kept in the ordinary course of business.

6.    If there are no documents responsive to any particular request, Defendants shall state so in writing.

7.    A request for documents includes a request for all transmittal sheets, cover letters, exhibits, enclosures, and attachments to the documents, in addition to the document itself. Documents attached to other documents or materials shall not be separated unless information is provided sufficient to permit reconstruction of the grouping or context in which the document is maintained in the ordinary course of business.

8.    If the documents requested differ from one office, division, or location to another, the requests require production of documents for each office, division, or location.

9.    Each document requested shall be produced in its entirety and without redactions, deletions, or excisions, regardless of whether Defendants consider the entire document to be relevant or responsive to these requests.

10.    For any document withheld under a claim of privilege, submit a privilege log that complies with FRCP 26(b)(5)(A) with your response to these requests.

11. These document requests are continuing in nature. Any document obtained, created, identified, or located after service of any response to these requests that would have been included in the responses had the document been available or had its existence been known at that time should be produced immediately.

12. For any document responsive to these requests that has been destroyed, lost, is otherwise unavailable, or is no longer in Defendants' present possession, custody, or control, identify with respect to each document: the author, addressee, date, number of pages, and subject matter; and explain in detail the events leading to the destruction or loss, or the reason for the unavailability of such document, including the location of such document when last in your possession, custody, or control, and the date and manner of its disposition.

13. The relevant time period for these document requests is January 1, 2010, through the time of trial, unless otherwise stated.

14. You are hereby notified that your answers to these discovery requests may be used in evidence upon the trial of this case, or in support of pleadings and motions, or for other purposes.

15. In light of the scheduling order entered by the Court, you are further notified that if you fail to produce the requested documents and information by the deadline set forth above, Relator intends to file a motion to compel and may seek sanctions.

App. 0005

## DEFINITIONS

1.      "Concerning" means having any relationship or connection to, regarding, relating, constituting, discussing, considering, being connected to, commenting on, responding to, addressed to, sent to, containing, evidencing, showing, memorializing, describing, modifying, amending, confirming, endorsing, representing, supporting, substantiating, qualifying, negating, refuting, analyzing, reflecting, pertaining to, comprising, constituting, or otherwise establishing any reasonable, logical, or causal connection.

2.      "Document" and "documents" are synonymous in meaning and equal in scope to the usage of the terms as defined in Federal Rule of Civil Procedure 34(a)(1)(A) and shall include all items subject to inspection and copying under those Rules, including any original, reproduction, copy, or draft of any kind of written or documented material, stored in any medium, including but not limited to audio and video tapes, correspondence, memoranda, interoffice communications, electronic mail, text messages, notes, diaries, calendars, personal digital assistant device entries, contract documents, estimates, vouchers, minutes of meetings, invoices, checks, reports, notes of telephone conversations, notes of oral communications, computer-stored information that is retrievable in any form, writings, drawings, graphs, charts, photographs, and other data compilations, from which information can be obtained, and electronically stored information that is retrievable in any form, or translated if necessary, by Defendants through detection devices into a reasonably usable form, except that neither electronically stored voicemails nor the information

5

stored in the memories of copiers, printers, and fax machines are "documents" under this definition.

3.     The connectives "and" and "or" and the phrase "and/or" shall be construed either disjunctively or conjunctively to bring within the scope of each request all documents that might otherwise be construed as nonresponsive to the request. The word "and" shall be construed to mean both "and" and "or," and vice versa, as necessary to bring within the scope of each request all documents that might otherwise be construed as nonresponsive to the request.

4.     "Person" means the plural as well as the singular and includes natural persons, corporations, firms, associations, partnerships, joint ventures, trusts, estates, or any other form of organization or legal entity; and governmental agencies, departments, units, or subdivisions thereof.

5.     "Defendants" means Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc., and all representatives, employees, agents, officers, consultants, attorneys, adjustors, investigators, representatives, or any other person acting or purporting to act on behalf of Defendants, including but not limited to any and all healthcare providers that provided services to persons enrolled in Texas Medicaid and/or Louisiana Medicaid during the relevant time period at any clinic or other facility owned, operated, leased or managed by any of the Defendants or any entity in any way associated with Defendants.

App. 0007

6.      "Identify" or "identity of" when referring:

(a)      to a person who is an individual or healthcare provider, means to state his or her full name and present, or last known, business or residential street address, city, state, and phone number;

(b)      to a person who is a corporation, firm, partnership, association, joint venture, trust, estate or any other form of organization or legal entity or to a governmental agency (including any department, unit, or subdivision thereof) means to state its full name and present or last known pertinent business street address, city, state, and phone number;

(c)      to a communication, means to state the substance of the communication, the date or which the communication occurred, and the name of each person who was either a participant in the communication or was present when said communication occurred.

7.      "Statement" includes any written or graphic statement signed or otherwise adopted or approved by the person making it, and any stenographic, mechanical, electrical, or other record or transcription thereof which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

8.      "Texas Medicaid" means the Texas Medicaid Assistance Program implemented by the State of Texas, under the provisions of Title XIX of the Social Security Act.

App. 0008

9.     "Louisiana Medicaid" means the Louisiana Medicaid implemented by the State of Louisiana, under the provisions of Title XIX of the Social Security Act.

10.     "Patient charts" means the medical record containing clinical data and documentation of medical and/or health history of individual patients, excluding financial or billing documents or information.

8

# REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All documents and communications concerning Defendants' provision of services billed to Texas Medicaid, excluding patient charts.

**REQUEST FOR PRODUCTION NO. 2:**

All documents and communications concerning claims submitted by Defendants to Texas Medicaid for Fee For Service delivered on and between January 1, 2010 and the present, including but not limited to: (a) the date the service was provided; (b) the amount of the claim submitted to Texas Medicaid; (c) the Texas Provider Identification Number of the Defendant that submitted the claim (the suffix as well as the base); (d) the address of the Defendant that submitted the claim; (e) the address of the location where the service was provided; (f) the amount of the payment you received for the claim and the identity of the payor; (g) the date you received the payment for the claim.

**REQUEST FOR PRODUCTION NO. 3:**

All documents and communications concerning claims submitted through a managed care organization for services provided by Defendants on and between January 1, 2010 and the present, including but not limited to: (a) the date the service was provided; (b) the amount of the claim submitted to the managed care organization; (c) the Texas Provider Identification Number of the Defendant that submitted the claim (the suffix as well as the base); (d) the address of the Defendant that submitted the claim; (e) the address of the location where the service was provided; (f) the amount of the payment you received for the claim and the identity of the payor; (g) the date you received the payment for the claim.

**REQUEST FOR PRODUCTION NO. 4:**

All documents and communications concerning Defendants' provision of services billed to Louisiana Medicaid, excluding patient charts.

**REQUEST FOR PRODUCTION NO. 5:**

All documents and communications concerning claims submitted by Defendants to Louisiana Medicaid for Fee For Service delivered on and between January 1, 2010 and the present, including but not limited to: (a) the date the service was provided; (b) the amount of the claim submitted to Louisiana Medicaid; (c) the National Provider Identification Number and/or the Louisiana Provider Identification Number of the Defendant that submitted the claim (the suffix as well as the base); (d) the

App. 0010

address of the Defendant that submitted the claim; (e) the address of the location where the service was provided; (f) the amount of the payment you received for the claim and the identity of the payor; (g) the date you received the payment for the claim.

**REQUEST FOR PRODUCTION NO. 6:**

All documents and communications concerning claims submitted through a managed care organization for services provided by Defendants on and between January 1, 2010 and the present, including but not limited to: (a) the date the service was provided; (b) the amount of the claim submitted to Louisiana Medicaid; (c) the National Provider Identification Number and/or the Louisiana Provider Identification Number of the Defendant that submitted the claim (the suffix as well as the base); (d) the address of the Defendant that submitted the claim; (e) the address of the location where the service was provided; (f) the amount of the payment you received for the claim and the identity of the payor; (g) the date you received the payment for the claim.

**REQUEST FOR PRODUCTION NO. 7:**

All documents and communications which Defendants have made or obtained concerning Texas Medicaid and/or Louisiana Medicaid, excluding patient charts, and including but not limited to statements, declarations, audio recordings, and video recordings, in any form, from any person concerning Texas Medicaid and/or Louisiana Medicaid.

**REQUEST FOR PRODUCTION NO. 8:**

All documents and communications by and between Defendants and any former or current employee of the State of Texas and/or the State of Louisiana concerning Texas Medicaid and Louisiana Medicaid.

**REQUEST FOR PRODUCTION NO. 9:**

All documents and communications by and between Kenneth Lambrecht, Jeffrey Hons, and Melanie Linton, Cecile Richards, and any other person concerning Texas Medicaid and/or Louisiana Medicaid.

**REQUEST FOR PRODUCTION NO. 10:**

All documents and communications concerning financial analysis, financial models, financial projections, accounting documents, accounting statements, balance sheets, cash flow statements, income statements, expense statements, revenue statements, and any other document containing information concerning Defendants' assets,

App. 0011

liabilities, income, expenses, loans, debt, credit facilities, or financial position.

**REQUEST FOR PRODUCTION NO. 11:**

All documents and communications concerning each payment you received from any state or federal program from January 1, 2010 to present that you returned or refunded to the state or federal government at any time.

Respectfully submitted.

/s/ Andrew B. Stephens
Andrew B. Stephens
Texas Bar No. 24079396
Heather Gebelin Hacker
Texas Bar No. 24103325
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
(512) 399-3022
andrew@hackerstephens.com
heather@hackerstephens.com

**Attorneys For Relator**

11

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2022, a true and correct copy of the foregoing

document was sent by electronic mail to Defendants' counsel to the e-mail addresses

below:

Craig Margolis
Murad Hussain
Tirzah Lollar
Christopher Odell
ARNOLD PORTER
Craig.Margolis@arnoldporter.com
Murad.Hussain@arnoldporter.com
Tirzah.Lollar@arnoldporter.com
Christopher.Odell@arnoldporter.com

**Attorneys for Defendants**

/s/ Andrew B. Stephens
Andrew B. Stephens

# EXHIBIT 2

App. 0014

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *EX REL.* DOE, *et al.,* | § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | Civil Action No. 2:21-CV-00022-Z |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., *et al.,* | § § § § | |
| *Defendants.* | § | |

---

### RELATOR'S SECOND REQUESTS FOR PRODUCTION

---

To:   Defendant Planned Parenthood Federation of America, Inc., c/o Leah Godesky, O'Melveny & Myers LLP, 1999 Avenue of the Stars, 8th Floor, Los Angeles California 90067, Amanda Santella, O'Melveny & Myers LLP, 1625 Eye Street NW, Washington, DC 20006, Danny S. Ashby, Justin R. Chapa, O'Melveny & Myers LLP, 2501 North Harwood Street, Suite 1700, Craig Margolis, Murad Hussain, Tirzah Lollar, Christopher Odell, Arnold & Porter Kaye Scholer LLP, 601 Massachusetts Ave. NW, Washington, DC 20001-3747, Attorneys for Defendant Planned Parenthood Federation of America, Inc.

Pursuant to Federal Rules of Civil Procedure 26 and 34, Relator Alex Doe hereby requests that Defendant Planned Parenthood Federation of America, Inc. produce the following documents in accordance with the definitions and instructions set forth below at the office of Hacker Stephens LLP, c/o Andrew B. Stephens, 108 Wild Basin Road South, Suite 250, Austin, Texas 78746, within thirty (30) days after service of same.

1

App. 0015

## INSTRUCTIONS

1. In responding to these document requests, Defendants are required to furnish all responsive documents in their possession, custody, or control, or in the possession, custody, or control of their attorneys, agents, employees, independent contractors, and all other persons acting on behalf of each of them or any of them.

2. Each document request shall be responded to separately and fully, unless it is in good faith objected to, in which event the reasons for the objection shall be stated with specificity. If an objection pertains to only a portion of the request, or to a word, phrase, or clause contained therein, Defendants shall state the objection to that portion only and respond to the remainder of the request.

3. If, in responding to these document requests, Defendants claim any ambiguity in a document request, or in a definition or instruction applicable thereto, Defendants shall not rely upon the ambiguity as a basis for refusing to respond, but shall set forth as part of their response the language deemed to be ambiguous and the interpretation used in responding to the request.

4. An original or one copy of each responsive document shall be produced. Any copy of a document that varies in any way from the original or from any other copy of the document, whether by reason of handwritten or other notation, highlighting, underlining, or other marks, or a draft or successive iteration thereof and all modifications thereto, shall constitute a separate document and must be produced, whether or not the original of such document is within Defendants' possession, custody, or control. If the same document exists in both electronic and

2

non-electronic format, the electronically maintained document must be produced; provided, if the non-electronically maintained document varies in any way from the electronically maintained document as described above, both the electronically maintained and non-electronically maintained documents shall be produced.

5.     Documents shall be produced as they are kept in the ordinary course of business.

6.     If there are no documents responsive to any particular request, Defendants shall state so in writing.

7.     A request for documents includes a request for all transmittal sheets, cover letters, exhibits, enclosures, and attachments to the documents, in addition to the document itself. Documents attached to other documents or materials shall not be separated unless information is provided sufficient to permit reconstruction of the grouping or context in which the document is maintained in the ordinary course of business.

8.     If the documents requested differ from one office, division, or location to another, the requests require production of documents for each office, division, or location.

9.     Each document requested shall be produced in its entirety and without redactions, deletions, or excisions, regardless of whether Defendants consider the entire document to be relevant or responsive to these requests.

10.     For any document withheld under a claim of privilege, submit a privilege log that complies with FRCP 26(b)(5)(A) with your response to these requests.

3

11.    These document requests are continuing in nature. Any document obtained, created, identified, or located after service of any response to these requests that would have been included in the responses had the document been available or had its existence been known at that time should be produced immediately.

12.    For any document responsive to these requests that has been destroyed, lost, is otherwise unavailable, or is no longer in Defendants' present possession, custody, or control, identify with respect to each document: the author, addressee, date, number of pages, and subject matter; and explain in detail the events leading to the destruction or loss, or the reason for the unavailability of such document, including the location of such document when last in your possession, custody, or control, and the date and manner of its disposition.

13.    The relevant time period for these document requests is January 1, 2010, through the time of trial, unless otherwise stated.

14.    You are hereby notified that your answers to these discovery requests may be used in evidence upon the trial of this case, or in support of pleadings and motions, or for other purposes.

15.    In light of the scheduling order entered by the Court, you are further notified that if you fail to produce the requested documents and information by the deadline set forth above, Relator intends to file a motion to compel and may seek sanctions.

App. 0018

## DEFINITIONS

1.     "Concerning" means having any relationship or connection to, relating to, mentioning, comprising, consisting, indicating, describing, reflecting, referring, containing, evidencing, regarding, pertaining to, showing, discussing, considering, connected with, memorializing, commenting on, responding to, addressed to, sent to, modifying, amending, confirming, endorsing, representing, supporting, substantiating, qualifying, negating, refuting, analyzing, consisting, indicating, or involving in any way whatsoever the subject matter of the request, including having a legal, factual or logical connection, relationship, correlation, or association with the subject matter of the request.

2.     "Document" and "documents" are synonymous in meaning and equal in scope to the usage of the terms as defined in Federal Rule of Civil Procedure 34(a)(1)(A) and shall include all items subject to inspection and copying under those Rules, including any original, reproduction, copy, or draft of any kind of written or documented material, stored in any medium, including but not limited to audio and video tapes, correspondence, memoranda, interoffice communications, electronic mail, text messages, notes, diaries, calendars, personal digital assistant device entries, contract documents, estimates, vouchers, minutes of meetings, invoices, checks, reports, notes of telephone conversations, notes of oral communications, computer-stored information that is retrievable in any form, writings, drawings, graphs, charts, photographs, and other data compilations, from which information can be obtained, and electronically stored information that is retrievable in any form,

5

or translated if necessary, by Defendants through detection devices into a reasonably usable form, except that neither electronically stored voicemails nor the information stored in the memories of copiers, printers, and fax machines are "documents" under this definition.

3.   "Communication" and "communications" shall mean all meetings, interviews, conversations, conferences, discussions, correspondence, messages, telegrams, telefax, electronic mail, mailgrams, telephone conversations, text messages, and all oral, written and electronic expressions, or other occurrences whereby thoughts, opinions, information, or data are transmitted between two or more persons.

4.   The connectives "and" and "or" and the phrase "and/or" shall be construed either disjunctively or conjunctively to bring within the scope of each request all documents that might otherwise be construed as nonresponsive to the request. The word "and" shall be construed to mean both "and" and "or," and vice versa, as necessary to bring within the scope of each request all documents that might otherwise be construed as nonresponsive to the request.

5.   "Person" means the plural as well as the singular and includes without limitation natural persons, corporations, firms, associations, unincorporated associations, partnerships, joint ventures, affiliates, trusts, estates, or any other form of organization or legal entity, and any other governmental or non-governmental entity, agency, department, unit, or subdivision thereof.

App. 0020

6.     "Defendants" means Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc., and all representatives, employees, agents, officers, consultants, attorneys, adjustors, investigators, representatives, or any other person acting or purporting to act on behalf of Defendants, including but not limited to any and all healthcare providers that provided services to persons enrolled in Texas Medicaid and/or Louisiana Medicaid during the relevant time period at any clinic or other facility owned, operated, leased or managed by any of the Defendants or any entity in any way associated with Defendants.

7.     "Statement" includes any written or graphic statement signed or otherwise adopted or approved by the person making it, and any stenographic, mechanical, electrical, or other record or transcription thereof which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

8.     "Texas Medicaid" means the Texas Medicaid Assistance Program implemented by the State of Texas, under the provisions of Title XIX of the Social Security Act.

9.     "Louisiana Medicaid" means the Louisiana Medicaid program implemented by the State of Louisiana, under the provisions of Title XIX of the Social Security Act.

App. 0021

10.    "Planned Parenthood Affiliates" means Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc., and all representatives, employees, agents, officers, consultants, attorneys, adjustors, investigators, representatives, or any other person acting or purporting to act on behalf of Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc., including but not limited to any and all healthcare providers that provided services to persons enrolled in Texas Medicaid and/or Louisiana Medicaid during the relevant time period at any clinic or other facility owned, operated, leased or managed by any of Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc., or any entity in any way associated with any of Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc.

App. 0022

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All documents and communications concerning any agreements between Planned Parenthood Federation of America, Inc. and any Planned Parenthood Affiliate, including but not limited to any affiliation agreements, bylaws, contracts, governing documents, and/or other corporate documents.

**REQUEST FOR PRODUCTION NO. 2:**

All documents and communications between Planned Parenthood Federation of America, Inc. and any Planned Parenthood Affiliate concerning affiliation with Planned Parenthood Federation of America, Inc. and/or with any other person or entity affiliated with Planned Parenthood Federation of America, Inc.

**REQUEST FOR PRODUCTION NO. 3:**

All documents and communications concerning Planned Parenthood Federation of America, Inc.'s relationship with any Planned Parenthood Affiliate, including but not limited to all documents and communications concerning Planned Parenthood Federation of America, Inc.'s support, control, oversight, involvement, direction, management, directives, marketing, communications, requirements, standards, guidelines, policies, accreditation, affiliation, certification, minimum legal requirements, insurance coverage, legal services, legal representation, monetary support, medical services, activities, programs, and/or pronouncements concerning any Planned Parenthood Affiliate.

**REQUEST FOR PRODUCTION NO. 4:**

All documents and communications between Planned Parenthood Federation of America, Inc. and any Planned Parenthood Affiliate concerning Texas Medicaid.

**REQUEST FOR PRODUCTION NO. 5:**

All documents and communications between Planned Parenthood Federation of America, Inc. and any Planned Parenthood Affiliate concerning Louisiana Medicaid.

App. 0023

Respectfully submitted.

/s/ Andrew B. Stephens
Andrew B. Stephens
Texas Bar No. 24079396
Heather Gebelin Hacker
Texas Bar No. 24103325
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
(512) 399-3022
andrew@hackerstephens.com
heather@hackerstephens.com

**Attorneys For Relator**

10

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2022, a true and correct copy of the foregoing document was sent by electronic mail to Defendants' counsel to the e-mail addresses below:

Leah Godesky
Danny Ashby
Justin Chapa
Amanda Santella
O'MELVENY & MYERS LLP
lgodesky@omm.com
dashby@omm.com
jchapa@omm.com
asantella@omm.com

**Attorneys for Defendant Planned Parenthood
Federation of America, Inc.**

Craig Margolis
Murad Hussain
Tirzah Lollar
Christopher Odell
ARNOLD PORTER KAY SCHOLER LLP
Craig.Margolis@arnoldporter.com
Murad.Hussain@arnoldporter.com
Tirzah.Lollar@arnoldporter.com
Christopher.Odell@arnoldporter.com

**Attorneys for Defendants Planned Parenthood
Federation of America, Inc., Planned Parenthood
Gulf Coast, Inc., Planned Parenthood of Greater
Texas, Inc., Planned Parenthood South Texas,
Inc., Planned Parenthood Cameron County, Inc.,
and Planned Parenthood San Antonio, Inc.**

/s/ Andrew B. Stephens
Andrew B. Stephens

App. 0025

# EXHIBIT 3

App. 0026

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *EX REL.* DOE, *et al.*, | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § § | Civil Action No. 2:21-CV-00022-Z |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., *et al.*, | § § § § | |
| *Defendants*. | § | |

---

## RELATOR'S SECOND REQUESTS FOR PRODUCTION

---

To:   Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc., c/o Craig Margolis, Murad Hussain, Tirza Lollar, Christopher Odell, Arnold & Porter Kaye Scholer LLP, 601 Massachusetts Ave., NW, Washington, DC 20001, Attorneys for Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc.

Pursuant to Federal Rules of Civil Procedure 26 and 34, Relator Alex Doe hereby requests that Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc., produce the following documents in accordance with the definitions and instructions set forth below at the office of Hacker Stephens LLP, c/o Andrew B. Stephens, 108 Wild Basin Road South, Suite 250, Austin, Texas 78746, within thirty (30) days after

App. 0027

service of same.

## INSTRUCTIONS

1.      In responding to these document requests, Defendants are required to furnish all responsive documents in their possession, custody, or control, or in the possession, custody, or control of their attorneys, agents, employees, independent contractors, and all other persons acting on behalf of each of them or any of them.

2.      Each document request shall be responded to separately and fully, unless it is in good faith objected to, in which event the reasons for the objection shall be stated with specificity. If an objection pertains to only a portion of the request, or to a word, phrase, or clause contained therein, Defendants shall state the objection to that portion only and respond to the remainder of the request.

3.      If, in responding to these document requests, Defendants claim any ambiguity in a document request, or in a definition or instruction applicable thereto, Defendants shall not rely upon the ambiguity as a basis for refusing to respond, but shall set forth as part of their response the language deemed to be ambiguous and the interpretation used in responding to the request.

4.      An original or one copy of each responsive document shall be produced. Any copy of a document that varies in any way from the original or from any other copy of the document, whether by reason of handwritten or other notation, highlighting, underlining, or other marks, or a draft or successive iteration thereof and all modifications thereto, shall constitute a separate document and must be produced, whether or not the original of such document is within Defendants'

App. 0028

possession, custody, or control. If the same document exists in both electronic and non-electronic format, the electronically maintained document must be produced; provided, if the non-electronically maintained document varies in any way from the electronically maintained document as described above, both the electronically maintained and non-electronically maintained documents shall be produced.

5. Documents shall be produced as they are kept in the ordinary course of business.

6. If there are no documents responsive to any particular request, Defendants shall state so in writing.

7. A request for documents includes a request for all transmittal sheets, cover letters, exhibits, enclosures, and attachments to the documents, in addition to the document itself. Documents attached to other documents or materials shall not be separated unless information is provided sufficient to permit reconstruction of the grouping or context in which the document is maintained in the ordinary course of business.

8. If the documents requested differ from one office, division, or location to another, the requests require production of documents for each office, division, or location.

9. Each document requested shall be produced in its entirety and without redactions, deletions, or excisions, regardless of whether Defendants consider the entire document to be relevant or responsive to these requests.

App. 0029

10.     For any document withheld under a claim of privilege, submit a privilege log that complies with FRCP 26(b)(5)(A) with your response to these requests.

11.     These document requests are continuing in nature. Any document obtained, created, identified, or located after service of any response to these requests that would have been included in the responses had the document been available or had its existence been known at that time should be produced immediately.

12.     For any document responsive to these requests that has been destroyed, lost, is otherwise unavailable, or is no longer in Defendants' present possession, custody, or control, identify with respect to each document: the author, addressee, date, number of pages, and subject matter; and explain in detail the events leading to the destruction or loss, or the reason for the unavailability of such document, including the location of such document when last in your possession, custody, or control, and the date and manner of its disposition.

13.     The relevant time period for these document requests is January 1, 2010, through the time of trial, unless otherwise stated.

14.     You are hereby notified that your answers to these discovery requests may be used in evidence upon the trial of this case, or in support of pleadings and motions, or for other purposes.

15.     In light of the scheduling order entered by the Court, you are further notified that if you fail to produce the requested documents and information by the deadline set forth above, Relator intends to file a motion to compel and may seek sanctions.

## DEFINITIONS

1.      "Concerning" means having any relationship or connection to, relating to, mentioning, comprising, consisting, indicating, describing, reflecting, referring, containing, evidencing, regarding, pertaining to, showing, discussing, considering, connected with, memorializing, commenting on, responding to, addressed to, sent to, modifying, amending, confirming, endorsing, representing, supporting, substantiating, qualifying, negating, refuting, analyzing, consisting, indicating, or involving in any way whatsoever the subject matter of the request, including having a legal, factual or logical connection, relationship, correlation, or association with the subject matter of the request.

2.      "Document" and "documents" are synonymous in meaning and equal in scope to the usage of the terms as defined in Federal Rule of Civil Procedure 34(a)(1)(A) and shall include all items subject to inspection and copying under those Rules, including any original, reproduction, copy, or draft of any kind of written or documented material, stored in any medium, including but not limited to audio and video tapes, correspondence, memoranda, interoffice communications, electronic mail, text messages, notes, diaries, calendars, personal digital assistant device entries, contract documents, estimates, vouchers, minutes of meetings, invoices, checks, reports, notes of telephone conversations, notes of oral communications, computer-stored information that is retrievable in any form, writings, drawings, graphs, charts, photographs, and other data compilations, from which information can be obtained, and electronically stored information that is retrievable in any form,

App. 0031

or translated if necessary, by Defendants through detection devices into a reasonably usable form, except that neither electronically stored voicemails nor the information stored in the memories of copiers, printers, and fax machines are "documents" under this definition.

3.     "Communication" and "communications" shall mean all meetings, interviews, conversations, conferences, discussions, correspondence, messages, telegrams, telefax, electronic mail, mailgrams, telephone conversations, text messages, and all oral, written and electronic expressions, or other occurrences whereby thoughts, opinions, information, or data are transmitted between two or more persons.

4.     The connectives "and" and "or" and the phrase "and/or" shall be construed either disjunctively or conjunctively to bring within the scope of each request all documents that might otherwise be construed as nonresponsive to the request. The word "and" shall be construed to mean both "and" and "or," and vice versa, as necessary to bring within the scope of each request all documents that might otherwise be construed as nonresponsive to the request.

5.     "Person" means the plural as well as the singular and includes without limitation natural persons, corporations, firms, associations, unincorporated associations, partnerships, joint ventures, affiliates, trusts, estates, or any other form of organization or legal entity, and any other governmental or non-governmental entity, agency, department, unit, or subdivision thereof.

App. 0032

6.     "Defendants" means Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc., together with their current and former parent corporations, affiliates, direct and indirect subsidiaries, brother or sister corporations, divisions, current or former corporate owners, and the corporate successors and assigns of any of them, and all representatives, employees, agents, officers, consultants, attorneys, adjustors, investigators, or any other person acting or purporting to act on behalf of any of them, including but not limited to any and all persons that provided services to persons enrolled in Texas Medicaid and/or Louisiana Medicaid during the relevant time period at any clinic or other facility owned, operated, leased or managed by any of Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc., or any entity in any way associated with Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc.

7.     "Statement" includes any written or graphic statement signed or otherwise adopted or approved by the person making it, and any stenographic, mechanical, electrical, or other record or transcription thereof which is a

7

substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

8.     "Texas Medicaid" means the Texas Medicaid Assistance Program implemented by the State of Texas, under the provisions of Title XIX of the Social Security Act.

9.     "Louisiana Medicaid" means the Louisiana Medicaid program implemented by the State of Louisiana, under the provisions of Title XIX of the Social Security Act.

10.     "Planned Parenthood" means Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc., together with their current and former parent corporations, affiliates, direct and indirect subsidiaries, brother or sister corporations, divisions, current or former corporate owners, and the corporate successors and assigns of any of them, and all representatives, employees, agents, officers, consultants, attorneys, adjustors, investigators, or any other person acting or purporting to act on behalf of any of them, including but not limited to any and all persons that provided services to persons enrolled in Texas Medicaid and/or Louisiana Medicaid during the relevant time period at any clinic or other facility owned, operated, leased or managed by any of Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron

App. 0034

County, Inc., Planned Parenthood San Antonio, Inc., or any entity in any way associated with Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc.

App. 0035

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

All documents and communications concerning any employee lists and/or organizational charts of Defendants Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc., including but not limited to all documents identifying each employee and the employee's position and/or job title, the employee hierarchy, the organizational hierarchy, the chain of command, and/or the lines of organizational communication.

This request is limited to the time period of January 1, 2015 to present. You are to produce all responsive documents, including any and all versions of responsive documents, during this time period.

Respectfully submitted.

/s/ Andrew B. Stephens
Andrew B. Stephens
Texas Bar No. 24079396
Heather Gebelin Hacker
Texas Bar No. 24103325
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
(512) 399-3022
andrew@hackerstephens.com
heather@hackerstephens.com

**Attorneys For Relator**

App. 0036

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2022, a true and correct copy of the foregoing document was sent by electronic mail to Defendants' counsel to the e-mail addresses below:

Leah Godesky
Danny Ashby
Justin Chapa
Amanda Santella
O'MELVENY & MYERS LLP
lgodesky@omm.com
dashby@omm.com
jchapa@omm.com
asantella@omm.com

**Attorneys for Defendant Planned Parenthood Federation of America, Inc.**

Craig Margolis
Murad Hussain
Tirzah Lollar
Christopher Odell
ARNOLD PORTER KAY SCHOLER LLP
Craig.Margolis@arnoldporter.com
Murad.Hussain@arnoldporter.com
Tirzah.Lollar@arnoldporter.com
Christopher.Odell@arnoldporter.com

**Attorneys for Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc.**

/s/ Andrew B. Stephens
Andrew B. Stephens

# EXHIBIT 4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *EX REL.* DOE, *et al.,* § § § § | |
| *Plaintiffs,* § § | |
| v. § § | Civil Action No. 2:21-CV-00022-Z |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., *et al.,* § § § § | |
| *Defendants.* § | |

---

### RELATOR'S THIRD REQUESTS FOR PRODUCTION

---

To:   Defendant Planned Parenthood Federation of America, Inc., c/o Leah Godesky, O'Melveny & Myers LLP, 1999 Avenue of the Stars, 8th Floor, Los Angeles California 90067, Amanda Santella, O'Melvany & Myers LLP, 1625 Eye Street NW, Washington, DC 20006, Danny S. Ashby, Justin R. Chapa, O'Melveny & Myers LLP, 2501 North Harwood Street, Suite 1700, Dallas, Texas 75201, Attorneys for Defendant Planned Parenthood Federation of America, Inc.

Pursuant to Federal Rules of Civil Procedure 26 and 34, Relator Alex Doe hereby requests that Defendant Planned Parenthood Federation of America, Inc. produce the following documents in accordance with the definitions and instructions set forth below at the office of Hacker Stephens LLP, c/o Andrew B. Stephens, 108 Wild Basin Road South, Suite 250, Austin, Texas 78746, within thirty (30) days after service of same.

1

## INSTRUCTIONS

1.      In responding to these document requests, Defendants are required to furnish all responsive documents in their possession, custody, or control, or in the possession, custody, or control of their attorneys, agents, employees, independent contractors, and all other persons acting on behalf of each of them or any of them.

2.      Each document request shall be responded to separately and fully, unless it is in good faith objected to, in which event the reasons for the objection shall be stated with specificity. If an objection pertains to only a portion of the request, or to a word, phrase, or clause contained therein, Defendants shall state the objection to that portion only and respond to the remainder of the request.

3.      If, in responding to these document requests, Defendants claim any ambiguity in a document request, or in a definition or instruction applicable thereto, Defendants shall not rely upon the ambiguity as a basis for refusing to respond, but shall set forth as part of their response the language deemed to be ambiguous and the interpretation used in responding to the request.

4.      An original or one copy of each responsive document shall be produced. Any copy of a document that varies in any way from the original or from any other copy of the document, whether by reason of handwritten or other notation, highlighting, underlining, or other marks, or a draft or successive iteration thereof and all modifications thereto, shall constitute a separate document and must be produced, whether or not the original of such document is within Defendants' possession, custody, or control. If the same document exists in both electronic and

App. 0040

non-electronic format, the electronically maintained document must be produced; provided, if the non-electronically maintained document varies in any way from the electronically maintained document as described above, both the electronically maintained and non-electronically maintained documents shall be produced.

5.      Documents shall be produced as they are kept in the ordinary course of business.

6.      If there are no documents responsive to any particular request, Defendants shall state so in writing.

7.      A request for documents includes a request for all transmittal sheets, cover letters, exhibits, enclosures, and attachments to the documents, in addition to the document itself. Documents attached to other documents or materials shall not be separated unless information is provided sufficient to permit reconstruction of the grouping or context in which the document is maintained in the ordinary course of business.

8.      If the documents requested differ from one office, division, or location to another, the requests require production of documents for each office, division, or location.

9.      Each document requested shall be produced in its entirety and without redactions, deletions, or excisions, regardless of whether Defendants consider the entire document to be relevant or responsive to these requests.

10.     For any document withheld under a claim of privilege, submit a privilege log that complies with FRCP 26(b)(5)(A) with your response to these requests.

App. 0041

11.    These document requests are continuing in nature. Any document obtained, created, identified, or located after service of any response to these requests that would have been included in the responses had the document been available or had its existence been known at that time should be produced immediately.

12.    For any document responsive to these requests that has been destroyed, lost, is otherwise unavailable, or is no longer in Defendants' present possession, custody, or control, identify with respect to each document: the author, addressee, date, number of pages, and subject matter; and explain in detail the events leading to the destruction or loss, or the reason for the unavailability of such document, including the location of such document when last in your possession, custody, or control, and the date and manner of its disposition.

13.    The relevant time period for these document requests is January 1, 2010, through the time of trial, unless otherwise stated.

14.    You are hereby notified that your answers to these discovery requests may be used in evidence upon the trial of this case, or in support of pleadings and motions, or for other purposes.

15.    In light of the scheduling order entered by the Court, you are further notified that if you fail to produce the requested documents and information by the deadline set forth above, Relator intends to file a motion to compel and may seek sanctions.

App. 0042

**DEFINITIONS**

1.     "Concerning" means having any relationship or connection to, relating to, mentioning, comprising, consisting, indicating, describing, reflecting, referring, containing, evidencing, regarding, pertaining to, showing, discussing, considering, connected with, memorializing, commenting on, responding to, addressed to, sent to, modifying, amending, confirming, endorsing, representing, supporting, substantiating, qualifying, negating, refuting, analyzing, consisting, indicating, or involving in any way whatsoever the subject matter of the request, including having a legal, factual or logical connection, relationship, correlation, or association with the subject matter of the request.

2.     "Document" and "documents" are synonymous in meaning and equal in scope to the usage of the terms as defined in Federal Rule of Civil Procedure 34(a)(1)(A) and shall include all items subject to inspection and copying under those Rules, including any original, reproduction, copy, or draft of any kind of written or documented material, stored in any medium, including but not limited to audio and video tapes, correspondence, memoranda, interoffice communications, electronic mail, text messages, notes, diaries, calendars, personal digital assistant device entries, contract documents, estimates, vouchers, minutes of meetings, invoices, checks, reports, notes of telephone conversations, notes of oral communications, computer-stored information that is retrievable in any form, writings, drawings, graphs, charts, photographs, and other data compilations, from which information can be obtained, and electronically stored information that is retrievable in any form,

App. 0043

or translated if necessary, by Defendants through detection devices into a reasonably usable form, except that neither electronically stored voicemails nor the information stored in the memories of copiers, printers, and fax machines are "documents" under this definition.

3. "Communication" and "communications" shall mean all meetings, interviews, conversations, conferences, discussions, correspondence, messages, telegrams, telefax, electronic mail, mailgrams, telephone conversations, text messages, and all oral, written and electronic expressions, or other occurrences whereby thoughts, opinions, information, or data are transmitted between two or more persons.

4. The connectives "and" and "or" and the phrase "and/or" shall be construed either disjunctively or conjunctively to bring within the scope of each request all documents that might otherwise be construed as nonresponsive to the request. The word "and" shall be construed to mean both "and" and "or," and vice versa, as necessary to bring within the scope of each request all documents that might otherwise be construed as nonresponsive to the request.

5. "Person" means the plural as well as the singular and includes without limitation natural persons, corporations, firms, associations, unincorporated associations, partnerships, joint ventures, affiliates, trusts, estates, or any other form of organization or legal entity, and any other governmental or non-governmental entity, agency, department, unit, or subdivision thereof.

App. 0044

6.    "Defendants" means Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc., together with their current and former parent corporations, affiliates, direct and indirect subsidiaries, brother or sister corporations, divisions, current or former corporate owners, and the corporate successors and assigns of any of them, and all representatives, employees, agents, officers, consultants, attorneys, adjustors, investigators, or any other person acting or purporting to act on behalf of any of them, including but not limited to any and all persons that provided services to persons enrolled in Texas Medicaid and/or Louisiana Medicaid during the relevant time period at any clinic or other facility owned, operated, leased or managed by any of Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc., or any entity in any way associated with Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc.

7.    "Statement" includes any written or graphic statement signed or otherwise adopted or approved by the person making it, and any stenographic, mechanical, electrical, or other record or transcription thereof which is a

App. 0045

substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

8.     "Texas Medicaid" means the Texas Medicaid Assistance Program implemented by the State of Texas, under the provisions of Title XIX of the Social Security Act.

9.     "Louisiana Medicaid" means the Louisiana Medicaid program implemented by the State of Louisiana, under the provisions of Title XIX of the Social Security Act.

10.     "Planned Parenthood" means Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc., together with their current and former parent corporations, affiliates, direct and indirect subsidiaries, brother or sister corporations, divisions, current or former corporate owners, and the corporate successors and assigns of any of them, and all representatives, employees, agents, officers, consultants, attorneys, adjustors, investigators, or any other person acting or purporting to act on behalf of any of them, including but not limited to any and all persons that provided services to persons enrolled in Texas Medicaid and/or Louisiana Medicaid during the relevant time period at any clinic or other facility owned, operated, leased or managed by any of Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron

App. 0046

County, Inc., Planned Parenthood San Antonio, Inc., or any entity in any way associated with Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc.

App. 0047

# REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All documents and communications concerning any employee lists and/or organizational charts of Defendants Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc., including but not limited to all documents identifying each employee and the employee's position and/or job title, the employee hierarchy, the organizational hierarchy, the chain of command, and/or the lines of organizational communication.

This request is limited to the time period of January 1, 2015 to present. You are to produce all responsive documents, including any and all versions of responsive documents, during this time period.

Respectfully submitted.

/s/ Andrew B. Stephens
Andrew B. Stephens
Texas Bar No. 24079396
Heather Gebelin Hacker
Texas Bar No. 24103325
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
(512) 399-3022
andrew@hackerstephens.com
heather@hackerstephens.com

**Attorneys For Relator**

10

App. 0048

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2022, a true and correct copy of the foregoing document was sent by electronic mail to Defendants' counsel to the e-mail addresses below:

Leah Godesky
Danny Ashby
Justin Chapa
Amanda Santella
O'MELVENY & MYERS LLP
lgodesky@omm.com
dashby@omm.com
jchapa@omm.com
asantella@omm.com

**Attorneys for Defendant Planned Parenthood Federation of America, Inc.**

Craig Margolis
Murad Hussain
Tirzah Lollar
Christopher Odell
ARNOLD PORTER KAY SCHOLER LLP
Craig.Margolis@arnoldporter.com
Murad.Hussain@arnoldporter.com
Tirzah.Lollar@arnoldporter.com
Christopher.Odell@arnoldporter.com

**Attorneys for Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc.**

/s/ Andrew B. Stephens
Andrew B. Stephens

App. 0049

# EXHIBIT 5

App. 0050

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA *EX REL.* DOE, *et al.*, | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No. 2:21-CV-00022-Z |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., *et al.*, | § § § § | |
| *Defendants.* | § § | |

## RELATOR'S THIRD REQUESTS FOR PRODUCTION

To: Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc., c/o Craig Margolis, Murad Hussain, Tirzah Lollar, Christopher Odell, Arnold & Porter Kaye Scholer LLP, 601 Massachusetts Ave., NW, Washington, DC 20001, Attorneys for Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc.

Pursuant to Federal Rules of Civil Procedure 26 and 34, Relator Alex Doe hereby requests that Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc., produce the following documents in accordance with the definitions and instructions set forth below at the office of Hacker Stephens LLP, c/o Andrew B. Stephens, 108 Wild Basin Road South, Suite 250, Austin, Texas 78746, within thirty (30) days after

App. 0051

service of same.

## INSTRUCTIONS

1.       In responding to these document requests, Defendants are required to furnish all responsive documents in their possession, custody, or control, or in the possession, custody, or control of their attorneys, agents, employees, independent contractors, and all other persons acting on behalf of each of them or any of them.

2.       Each document request shall be responded to separately and fully, unless it is in good faith objected to, in which event the reasons for the objection shall be stated with specificity. If an objection pertains to only a portion of the request, or to a word, phrase, or clause contained therein, Defendants shall state the objection to that portion only and respond to the remainder of the request.

3.       If, in responding to these document requests, Defendants claim any ambiguity in a document request, or in a definition or instruction applicable thereto, Defendants shall not rely upon the ambiguity as a basis for refusing to respond, but shall set forth as part of their response the language deemed to be ambiguous and the interpretation used in responding to the request.

4.       An original or one copy of each responsive document shall be produced. Any copy of a document that varies in any way from the original or from any other copy of the document, whether by reason of handwritten or other notation, highlighting, underlining, or other marks, or a draft or successive iteration thereof and all modifications thereto, shall constitute a separate document and must be produced, whether or not the original of such document is within Defendants'

2

possession, custody, or control. If the same document exists in both electronic and non-electronic format, the electronically maintained document must be produced; provided, if the non-electronically maintained document varies in any way from the electronically maintained document as described above, both the electronically maintained and non-electronically maintained documents shall be produced.

5.      Documents shall be produced as they are kept in the ordinary course of business.

6.      If there are no documents responsive to any particular request, Defendants shall state so in writing.

7.      A request for documents includes a request for all transmittal sheets, cover letters, exhibits, enclosures, and attachments to the documents, in addition to the document itself. Documents attached to other documents or materials shall not be separated unless information is provided sufficient to permit reconstruction of the grouping or context in which the document is maintained in the ordinary course of business.

8.      If the documents requested differ from one office, division, or location to another, the requests require production of documents for each office, division, or location.

9.      Each document requested shall be produced in its entirety and without redactions, deletions, or excisions, regardless of whether Defendants consider the entire document to be relevant or responsive to these requests.

10.     For any document withheld under a claim of privilege, submit a privilege log that complies with FRCP 26(b)(5)(A) with your response to these requests.

11.     These document requests are continuing in nature. Any document obtained, created, identified, or located after service of any response to these requests that would have been included in the responses had the document been available or had its existence been known at that time should be produced immediately.

12.     For any document responsive to these requests that has been destroyed, lost, is otherwise unavailable, or is no longer in Defendants' present possession, custody, or control, identify with respect to each document: the author, addressee, date, number of pages, and subject matter; and explain in detail the events leading to the destruction or loss, or the reason for the unavailability of such document, including the location of such document when last in your possession, custody, or control, and the date and manner of its disposition.

13.     The relevant time period for these document requests is January 1, 2010, through the time of trial, unless otherwise stated.

14.     You are hereby notified that your answers to these discovery requests may be used in evidence upon the trial of this case, or in support of pleadings and motions, or for other purposes.

15.     In light of the scheduling order entered by the Court, you are further notified that if you fail to produce the requested documents and information by the deadline set forth above, Relator intends to file a motion to compel and may seek sanctions.

App. 0054

## DEFINITIONS

1.      "Concerning" means having any relationship or connection to, relating to, mentioning, comprising, consisting, indicating, describing, reflecting, referring, containing, evidencing, regarding, pertaining to, showing, discussing, considering, connected with, memorializing, commenting on, responding to, addressed to, sent to, modifying, amending, confirming, endorsing, representing, supporting, substantiating, qualifying, negating, refuting, analyzing, consisting, indicating, or involving in any way whatsoever the subject matter of the request, including having a legal, factual or logical connection, relationship, correlation, or association with the subject matter of the request.

2.      "Document" and "documents" are synonymous in meaning and equal in scope to the usage of the terms as defined in Federal Rule of Civil Procedure 34(a)(1)(A) and shall include all items subject to inspection and copying under those Rules, including any original, reproduction, copy, or draft of any kind of written or documented material, stored in any medium, including but not limited to audio and video tapes, correspondence, memoranda, interoffice communications, electronic mail, text messages, notes, diaries, calendars, personal digital assistant device entries, contract documents, estimates, vouchers, minutes of meetings, invoices, checks, reports, notes of telephone conversations, notes of oral communications, computer-stored information that is retrievable in any form, writings, drawings, graphs, charts, photographs, and other data compilations, from which information can be obtained, and electronically stored information that is retrievable in any form,

5

App. 0055

or translated if necessary, by Defendants through detection devices into a reasonably usable form, except that neither electronically stored voicemails nor the information stored in the memories of copiers, printers, and fax machines are "documents" under this definition.

3.     "Communication" and "communications" shall mean all meetings, interviews, conversations, conferences, discussions, correspondence, messages, telegrams, telefax, electronic mail, mailgrams, telephone conversations, text messages, and all oral, written and electronic expressions, or other occurrences whereby thoughts, opinions, information, or data are transmitted between two or more persons.

4.     The connectives "and" and "or" and the phrase "and/or" shall be construed either disjunctively or conjunctively to bring within the scope of each request all documents that might otherwise be construed as nonresponsive to the request. The word "and" shall be construed to mean both "and" and "or," and vice versa, as necessary to bring within the scope of each request all documents that might otherwise be construed as nonresponsive to the request.

5.     "Person" means the plural as well as the singular and includes without limitation natural persons, corporations, firms, associations, unincorporated associations, partnerships, joint ventures, affiliates, trusts, estates, or any other form of organization or legal entity, and any other governmental or non-governmental entity, agency, department, unit, or subdivision thereof.

App. 0056

6.     "Defendants" means Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc., together with their current and former parent corporations, affiliates, direct and indirect subsidiaries, brother or sister corporations, divisions, current or former corporate owners, and the corporate successors and assigns of any of them, and all representatives, employees, agents, officers, consultants, attorneys, adjustors, investigators, or any other person acting or purporting to act on behalf of any of them, including but not limited to any and all persons that provided services to persons enrolled in Texas Medicaid and/or Louisiana Medicaid during the relevant time period at any clinic or other facility owned, operated, leased or managed by any of Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc., or any entity in any way associated with Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc.

7.     "Statement" includes any written or graphic statement signed or otherwise adopted or approved by the person making it, and any stenographic, mechanical, electrical, or other record or transcription thereof which is a

App. 0057

substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

8.     "Medicaid" means the Medicaid program administered by the federal Centers for Medicare & Medicaid Services.

9.     "Texas Medicaid" means the Texas Medicaid Assistance Program administered by the State of Texas, under the provisions of Title XIX of the Social Security Act.

10.    "Louisiana Medicaid" means the Louisiana Medicaid program administered by the State of Louisiana, under the provisions of Title XIX of the Social Security Act.

11.    "Planned Parenthood" means Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc., together with their current and former parent corporations, affiliates, direct and indirect subsidiaries, brother or sister corporations, divisions, current or former corporate owners, and the corporate successors and assigns of any of them, and all representatives, employees, agents, officers, consultants, attorneys, adjustors, investigators, or any other person acting or purporting to act on behalf of any of them, including but not limited to any and all persons that provided services to persons enrolled in Texas Medicaid and/or Louisiana Medicaid during the relevant time period at any clinic or other facility owned, operated, leased or managed by any of Planned Parenthood Federation of

8

America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc., or any entity in any way associated with Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc.

App. 0059

# REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

All documents and communications concerning policies and procedures for the prevention, detection and reporting of health care fraud and abuse by Planned Parenthood.

### REQUEST FOR PRODUCTION NO. 2:

All documents and communications concerning training provided to staff for the prevention, detection and reporting of health care fraud and abuse by Planned Parenthood.

### REQUEST FOR PRODUCTION NO. 3:

All documents and communications concerning oversight, review, and evaluation of compliance with laws, regulations, and requirements of Medicaid, Texas Medicaid, and Louisiana Medicaid by Planned Parenthood.

### REQUEST FOR PRODUCTION NO. 4:

All documents and communications concerning internal audits to identify fraud risk exposure by Planned Parenthood, including but not limited to internal audits concerning Medicaid, Texas Medicaid, and Louisiana Medicaid.

### REQUEST FOR PRODUCTION NO. 5:

All documents and communications concerning internal audits of services rendered, charges posted, and coding compliance by Planned Parenthood, including but not limited to internal audits of services rendered, charges posted, and coding compliance concerning Medicaid, Texas Medicaid, and Louisiana Medicaid.

### REQUEST FOR PRODUCTION NO. 6:

All documents and communications concerning maintaining and implementing a Health Care Compliance Program that focuses on prevention, detection, and correction of health care fraud and abuse, including all documents, communications, and reports of program activities provided by a Health Care Compliance Officer to the board, member of the board, or committee of the board of Planned Parenthood.

### REQUEST FOR PRODUCTION NO. 7:

All documents and communications concerning plans considered or incorporated by

10

App. 0060

Planned Parenthood to increase Medicaid services or increase Medicaid volume under Medicaid, Texas Medicaid, and Louisiana Medicaid.

### REQUEST FOR PRODUCTION NO. 8:

All documents and communications concerning the registration, review, or reports of any research projects, studies, or research-related activities of Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc. with Planned Parenthood Federation of America, Inc., including but not limited to all documents and communications concerning the same with the Planned Parenthood Federation of America, Inc. Research Department.

Respectfully submitted.

/s/ Andrew B. Stephens
Andrew B. Stephens
Texas Bar No. 24079396
Heather Gebelin Hacker
Texas Bar No. 24103325
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
(512) 399-3022
andrew@hackerstephens.com
heather@hackerstephens.com

**Attorneys For Relator**

App. 0061

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2022, a true and correct copy of the foregoing document was sent by electronic mail to Defendants' counsel to the e-mail addresses below:

Leah Godesky
Danny Ashby
Justin Chapa
Amanda Santella
O'MELVENY & MYERS LLP
lgodesky@omm.com
dashby@omm.com
jchapa@omm.com
asantella@omm.com

**Attorneys for Defendant Planned Parenthood Federation of America, Inc.**

Craig Margolis
Murad Hussain
Tirzah Lollar
Christopher Odell
ARNOLD PORTER KAY SCHOLER LLP
Craig.Margolis@arnoldporter.com
Murad.Hussain@arnoldporter.com
Tirzah.Lollar@arnoldporter.com
Christopher.Odell@arnoldporter.com

**Attorneys for Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc.**

/s/ Andrew B. Stephens
Andrew B. Stephens

App. 0062

# EXHIBIT 6

App. 0063

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *EX REL.* DOE, *et al.,* § | |
| § | |
| § | |
| § | |
| *Plaintiffs,* § | |
| § | |
| v.                                  § | Civil Action No. 2:21-CV-00022-Z |
| § | |
| PLANNED PARENTHOOD FEDERATION § | |
| OF AMERICA, INC., *et al.,*          § | |
| § | |
| *Defendants.*                        § | |

---

### RELATOR'S FOURTH REQUESTS FOR PRODUCTION

---

To:   Defendant Planned Parenthood Federation of America, Inc., c/o Leah Godesky, O'Melveny & Myers LLP, 1999 Avenue of the Stars, 8th Floor, Los Angeles California 90067, Amanda Santella, O'Melvany & Myers LLP, 1625 Eye Street NW, Washington, DC 20006, Danny S. Ashby, Justin R. Chapa, O'Melveny & Myers LLP, 2501 North Harwood Street, Suite 1700, Dallas, Texas 75201, Attorneys for Defendant Planned Parenthood Federation of America, Inc.

Pursuant to Federal Rules of Civil Procedure 26 and 34, Relator Alex Doe hereby requests that Defendant Planned Parenthood Federation of America, Inc. produce the following documents in accordance with the definitions and instructions set forth below at the office of Hacker Stephens LLP, c/o Andrew B. Stephens, 108 Wild Basin Road South, Suite 250, Austin, Texas 78746, within thirty (30) days after service of same.

App. 0064

## INSTRUCTIONS

1.     In responding to these document requests, Defendants are required to furnish all responsive documents in their possession, custody, or control, or in the possession, custody, or control of their attorneys, agents, employees, independent contractors, and all other persons acting on behalf of each of them or any of them.

2.     Each document request shall be responded to separately and fully, unless it is in good faith objected to, in which event the reasons for the objection shall be stated with specificity. If an objection pertains to only a portion of the request, or to a word, phrase, or clause contained therein, Defendants shall state the objection to that portion only and respond to the remainder of the request.

3.     If, in responding to these document requests, Defendants claim any ambiguity in a document request, or in a definition or instruction applicable thereto, Defendants shall not rely upon the ambiguity as a basis for refusing to respond, but shall set forth as part of their response the language deemed to be ambiguous and the interpretation used in responding to the request.

4.     An original or one copy of each responsive document shall be produced. Any copy of a document that varies in any way from the original or from any other copy of the document, whether by reason of handwritten or other notation, highlighting, underlining, or other marks, or a draft or successive iteration thereof and all modifications thereto, shall constitute a separate document and must be produced, whether or not the original of such document is within Defendants' possession, custody, or control. If the same document exists in both electronic and

2

non-electronic format, the electronically maintained document must be produced; provided, if the non-electronically maintained document varies in any way from the electronically maintained document as described above, both the electronically maintained and non-electronically maintained documents shall be produced.

5.      Documents shall be produced as they are kept in the ordinary course of business.

6.      If there are no documents responsive to any particular request, Defendants shall state so in writing.

7.      A request for documents includes a request for all transmittal sheets, cover letters, exhibits, enclosures, and attachments to the documents, in addition to the document itself. Documents attached to other documents or materials shall not be separated unless information is provided sufficient to permit reconstruction of the grouping or context in which the document is maintained in the ordinary course of business.

8.      If the documents requested differ from one office, division, or location to another, the requests require production of documents for each office, division, or location.

9.      Each document requested shall be produced in its entirety and without redactions, deletions, or excisions, regardless of whether Defendants consider the entire document to be relevant or responsive to these requests.

10.     For any document withheld under a claim of privilege, submit a privilege log that complies with FRCP 26(b)(5)(A) with your response to these requests.

3

11.     These document requests are continuing in nature. Any document obtained, created, identified, or located after service of any response to these requests that would have been included in the responses had the document been available or had its existence been known at that time should be produced immediately.

12.     For any document responsive to these requests that has been destroyed, lost, is otherwise unavailable, or is no longer in Defendants' present possession, custody, or control, identify with respect to each document: the author, addressee, date, number of pages, and subject matter; and explain in detail the events leading to the destruction or loss, or the reason for the unavailability of such document, including the location of such document when last in your possession, custody, or control, and the date and manner of its disposition.

13.     The relevant time period for these document requests is January 1, 2010, through the time of trial, unless otherwise stated.

14.     You are hereby notified that your answers to these discovery requests may be used in evidence upon the trial of this case, or in support of pleadings and motions, or for other purposes.

15.     In light of the scheduling order entered by the Court, you are further notified that if you fail to produce the requested documents and information by the deadline set forth above, Relator intends to file a motion to compel and may seek sanctions.

App. 0067

## DEFINITIONS

1.      "Concerning" means having any relationship or connection to, relating to, mentioning, comprising, consisting, indicating, describing, reflecting, referring, containing, evidencing, regarding, pertaining to, showing, discussing, considering, connected with, memorializing, commenting on, responding to, addressed to, sent to, modifying, amending, confirming, endorsing, representing, supporting, substantiating, qualifying, negating, refuting, analyzing, consisting, indicating, or involving in any way whatsoever the subject matter of the request, including having a legal, factual or logical connection, relationship, correlation, or association with the subject matter of the request.

2.      "Document" and "documents" are synonymous in meaning and equal in scope to the usage of the terms as defined in Federal Rule of Civil Procedure 34(a)(1)(A) and shall include all items subject to inspection and copying under those Rules, including any original, reproduction, copy, or draft of any kind of written or documented material, stored in any medium, including but not limited to audio and video tapes, correspondence, memoranda, interoffice communications, electronic mail, text messages, notes, diaries, calendars, personal digital assistant device entries, contract documents, estimates, vouchers, minutes of meetings, invoices, checks, reports, notes of telephone conversations, notes of oral communications, computer-stored information that is retrievable in any form, writings, drawings, graphs, charts, photographs, and other data compilations, from which information can be obtained, and electronically stored information that is retrievable in any form,

5

or translated if necessary, by Defendants through detection devices into a reasonably usable form, except that neither electronically stored voicemails nor the information stored in the memories of copiers, printers, and fax machines are "documents" under this definition.

3.　　"Communication" and "communications" shall mean all meetings, interviews, conversations, conferences, discussions, correspondence, messages, telegrams, telefax, electronic mail, mailgrams, telephone conversations, text messages, and all oral, written and electronic expressions, or other occurrences whereby thoughts, opinions, information, or data are transmitted between two or more persons.

4.　　The connectives "and" and "or" and the phrase "and/or" shall be construed either disjunctively or conjunctively to bring within the scope of each request all documents that might otherwise be construed as nonresponsive to the request. The word "and" shall be construed to mean both "and" and "or," and vice versa, as necessary to bring within the scope of each request all documents that might otherwise be construed as nonresponsive to the request.

5.　　"Person" means the plural as well as the singular and includes without limitation natural persons, corporations, firms, associations, unincorporated associations, partnerships, joint ventures, affiliates, trusts, estates, or any other form of organization or legal entity, and any other governmental or non-governmental entity, agency, department, unit, or subdivision thereof.

App. 0069

6.      "Defendants" means Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc., together with their current and former parent corporations, affiliates, direct and indirect subsidiaries, brother or sister corporations, divisions, current or former corporate owners, and the corporate successors and assigns of any of them, and all representatives, employees, agents, officers, consultants, attorneys, adjustors, investigators, or any other person acting or purporting to act on behalf of any of them, including but not limited to any and all persons that provided services to persons enrolled in Texas Medicaid and/or Louisiana Medicaid during the relevant time period at any clinic or other facility owned, operated, leased or managed by any of Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc., or any entity in any way associated with Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc.

7.      "Statement" includes any written or graphic statement signed or otherwise adopted or approved by the person making it, and any stenographic, mechanical, electrical, or other record or transcription thereof which is a

7

substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

8.    "Medicaid" means the Medicaid program administered by the federal Centers for Medicare & Medicaid Services.

9.    "Texas Medicaid" means the Texas Medicaid Assistance Program administered by the State of Texas, under the provisions of Title XIX of the Social Security Act.

10.    "Louisiana Medicaid" means the Louisiana Medicaid program administered by the State of Louisiana, under the provisions of Title XIX of the Social Security Act.

11.    "Planned Parenthood" means Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc., together with their current and former parent corporations, affiliates, direct and indirect subsidiaries, brother or sister corporations, divisions, current or former corporate owners, and the corporate successors and assigns of any of them, and all representatives, employees, agents, officers, consultants, attorneys, adjustors, investigators, or any other person acting or purporting to act on behalf of any of them, including but not limited to any and all persons that provided services to persons enrolled in Texas Medicaid and/or Louisiana Medicaid during the relevant time period at any clinic or other facility owned, operated, leased or managed by any of Planned Parenthood Federation of

8

America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc., or any entity in any way associated with Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc.

9

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

All documents and communications concerning policies and procedures for the prevention, detection and reporting of health care fraud and abuse by Planned Parenthood.

### REQUEST FOR PRODUCTION NO. 2:

All documents and communications concerning training provided to staff for the prevention, detection and reporting of health care fraud and abuse by Planned Parenthood.

### REQUEST FOR PRODUCTION NO. 3:

All documents and communications concerning oversight, review, and evaluation of compliance with laws, regulations, and requirements of Medicaid, Texas Medicaid, and Louisiana Medicaid by Planned Parenthood.

### REQUEST FOR PRODUCTION NO. 4:

All documents and communications concerning internal audits to identify fraud risk exposure by Planned Parenthood, including but not limited to internal audits concerning Medicaid, Texas Medicaid, and Louisiana Medicaid.

### REQUEST FOR PRODUCTION NO. 5:

All documents and communications concerning internal audits of services rendered, charges posted, and coding compliance by Planned Parenthood, including but not limited to internal audits of services rendered, charges posted, and coding compliance concerning Medicaid, Texas Medicaid, and Louisiana Medicaid.

### REQUEST FOR PRODUCTION NO. 6:

All documents and communications concerning maintaining and implementing a Health Care Compliance Program that focuses on prevention, detection, and correction of health care fraud and abuse, including all documents, communications, and reports of program activities provided by a Health Care Compliance Officer to the board, member of the board, or committee of the board of Planned Parenthood.

### REQUEST FOR PRODUCTION NO. 7:

All documents and communications concerning plans considered or incorporated by

App. 0073

Planned Parenthood to increase Medicaid services or increase Medicaid volume under Medicaid, Texas Medicaid, and Louisiana Medicaid.

## REQUEST FOR PRODUCTION NO. 8:

All documents and communications concerning the registration, review, or reports of any research projects, studies, or research-related activities of Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc. with Planned Parenthood Federation of America, Inc., including but not limited to all documents and communications concerning the same with the Planned Parenthood Federation of America, Inc. Research Department.

Respectfully submitted.

/s/ Andrew B. Stephens
Andrew B. Stephens
Texas Bar No. 24079396
Heather Gebelin Hacker
Texas Bar No. 24103325
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
(512) 399-3022
andrew@hackerstephens.com
heather@hackerstephens.com

**Attorneys For Relator**

App. 0074

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2022, a true and correct copy of the foregoing document was sent by electronic mail to Defendants' counsel to the e-mail addresses below:

Leah Godesky
Danny Ashby
Justin Chapa
Amanda Santella
O'MELVENY & MYERS LLP
lgodesky@omm.com
dashby@omm.com
jchapa@omm.com
asantella@omm.com

**Attorneys for Defendant Planned Parenthood Federation of America, Inc.**

Craig Margolis
Murad Hussain
Tirzah Lollar
Christopher Odell
ARNOLD PORTER KAY SCHOLER LLP
Craig.Margolis@arnoldporter.com
Murad.Hussain@arnoldporter.com
Tirzah.Lollar@arnoldporter.com
Christopher.Odell@arnoldporter.com

**Attorneys for Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc.**

/s/ Andrew B. Stephens
Andrew B. Stephens

App. 0075

# EXHIBIT 7

App. 0076

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *EX REL.* DOE, *et al.,* | § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | Civil Action No. 2:21-CV-00022-Z |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., *et al.,* | § § § § | |
| *Defendants.* | § § | |

### RELATOR'S FIFTH REQUESTS FOR PRODUCTION

To:    Defendant Planned Parenthood Federation of America, Inc., c/o Leah Godesky, O'Melveny & Myers LLP, 1999 Avenue of the Stars, 8th Floor, Los Angeles California 90067, Amanda Santella, O'Melvany & Myers LLP, 1625 Eye Street NW, Washington, DC 20006, Danny S. Ashby, Justin R. Chapa, O'Melveny & Myers LLP, 2501 North Harwood Street, Suite 1700, Dallas, Texas 75201, Attorneys for Defendant Planned Parenthood Federation of America, Inc.

Pursuant to Federal Rules of Civil Procedure 26 and 34, Relator Alex Doe hereby requests that Defendant Planned Parenthood Federation of America, Inc. produce the following documents in accordance with the definitions and instructions set forth below at the office of Hacker Stephens LLP, c/o Andrew B. Stephens, 108 Wild Basin Road South, Suite 250, Austin, Texas 78746, within thirty (30) days after service of same.

App. 0077

## INSTRUCTIONS

1.     In responding to these document requests, Defendants are required to furnish all responsive documents in their possession, custody, or control, or in the possession, custody, or control of their attorneys, agents, employees, independent contractors, and all other persons acting on behalf of each of them or any of them.

2.     Each document request shall be responded to separately and fully, unless it is in good faith objected to, in which event the reasons for the objection shall be stated with specificity. If an objection pertains to only a portion of the request, or to a word, phrase, or clause contained therein, Defendants shall state the objection to that portion only and respond to the remainder of the request.

3.     If, in responding to these document requests, Defendants claim any ambiguity in a document request, or in a definition or instruction applicable thereto, Defendants shall not rely upon the ambiguity as a basis for refusing to respond, but shall set forth as part of their response the language deemed to be ambiguous and the interpretation used in responding to the request.

4.     An original or one copy of each responsive document shall be produced. Any copy of a document that varies in any way from the original or from any other copy of the document, whether by reason of handwritten or other notation, highlighting, underlining, or other marks, or a draft or successive iteration thereof and all modifications thereto, shall constitute a separate document and must be produced, whether or not the original of such document is within Defendants' possession, custody, or control. If the same document exists in both electronic and

App. 0078

non-electronic format, the electronically maintained document must be produced; provided, if the non-electronically maintained document varies in any way from the electronically maintained document as described above, both the electronically maintained and non-electronically maintained documents shall be produced.

5.     Documents shall be produced as they are kept in the ordinary course of business.

6.     If there are no documents responsive to any particular request, Defendants shall state so in writing.

7.     A request for documents includes a request for all transmittal sheets, cover letters, exhibits, enclosures, and attachments to the documents, in addition to the document itself. Documents attached to other documents or materials shall not be separated unless information is provided sufficient to permit reconstruction of the grouping or context in which the document is maintained in the ordinary course of business.

8.     If the documents requested differ from one office, division, or location to another, the requests require production of documents for each office, division, or location.

9.     Each document requested shall be produced in its entirety and without redactions, deletions, or excisions, regardless of whether Defendants consider the entire document to be relevant or responsive to these requests.

10.     For any document withheld under a claim of privilege, submit a privilege log that complies with FRCP 26(b)(5)(A) with your response to these requests.

3

App. 0079

11.     These document requests are continuing in nature. Any document obtained, created, identified, or located after service of any response to these requests that would have been included in the responses had the document been available or had its existence been known at that time should be produced immediately.

12.     For any document responsive to these requests that has been destroyed, lost, is otherwise unavailable, or is no longer in Defendants' present possession, custody, or control, identify with respect to each document: the author, addressee, date, number of pages, and subject matter; and explain in detail the events leading to the destruction or loss, or the reason for the unavailability of such document, including the location of such document when last in your possession, custody, or control, and the date and manner of its disposition.

13.     The relevant time period for these document requests is January 1, 2010, through the time of trial, unless otherwise stated.

14.     You are hereby notified that your answers to these discovery requests may be used in evidence upon the trial of this case, or in support of pleadings and motions, or for other purposes.

15.     In light of the scheduling order entered by the Court, you are further notified that if you fail to produce the requested documents and information by the deadline set forth above, Relator intends to file a motion to compel and may seek sanctions.

App. 0080

## DEFINITIONS

1.      "Concerning" means having any relationship or connection to, relating to, mentioning, comprising, consisting, indicating, describing, reflecting, referring, containing, evidencing, regarding, pertaining to, showing, discussing, considering, connected with, memorializing, commenting on, responding to, addressed to, sent to, modifying, amending, confirming, endorsing, representing, supporting, substantiating, qualifying, negating, refuting, analyzing, consisting, indicating, or involving in any way whatsoever the subject matter of the request, including having a legal, factual or logical connection, relationship, correlation, or association with the subject matter of the request.

2.      "Document" and "documents" are synonymous in meaning and equal in scope to the usage of the terms as defined in Federal Rule of Civil Procedure 34(a)(1)(A) and shall include all items subject to inspection and copying under those Rules, including any original, reproduction, copy, or draft of any kind of written or documented material, stored in any medium, including but not limited to audio and video tapes, correspondence, memoranda, interoffice communications, electronic mail, text messages, notes, diaries, calendars, personal digital assistant device entries, contract documents, estimates, vouchers, minutes of meetings, invoices, checks, reports, notes of telephone conversations, notes of oral communications, computer-stored information that is retrievable in any form, writings, drawings, graphs, charts, photographs, and other data compilations, from which information can be obtained, and electronically stored information that is retrievable in any form,

App. 0081

or translated if necessary, by Defendants through detection devices into a reasonably usable form, except that neither electronically stored voicemails nor the information stored in the memories of copiers, printers, and fax machines are "documents" under this definition.

3.      "Communication" and "communications" shall mean all meetings, interviews, conversations, conferences, discussions, correspondence, messages, telegrams, telefax, electronic mail, mailgrams, telephone conversations, text messages, and all oral, written and electronic expressions, or other occurrences whereby thoughts, opinions, information, or data are transmitted between two or more persons.

4.      The connectives "and" and "or" and the phrase "and/or" shall be construed either disjunctively or conjunctively to bring within the scope of each request all documents that might otherwise be construed as nonresponsive to the request. The word "and" shall be construed to mean both "and" and "or," and vice versa, as necessary to bring within the scope of each request all documents that might otherwise be construed as nonresponsive to the request.

5.      "Person" means the plural as well as the singular and includes without limitation natural persons, corporations, firms, associations, unincorporated associations, partnerships, joint ventures, affiliates, trusts, estates, or any other form of organization or legal entity, and any other governmental or non-governmental entity, agency, department, unit, or subdivision thereof.

App. 0082

6.     "Defendants" means Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc., together with their current and former parent corporations, affiliates, direct and indirect subsidiaries, brother or sister corporations, divisions, current or former corporate owners, and the corporate successors and assigns of any of them, and all representatives, employees, agents, officers, consultants, attorneys, adjustors, investigators, or any other person acting or purporting to act on behalf of any of them, including but not limited to any and all persons that provided services to persons enrolled in Texas Medicaid and/or Louisiana Medicaid during the relevant time period at any clinic or other facility owned, operated, leased or managed by any of Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc., or any entity in any way associated with Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc.

7.     "Statement" includes any written or graphic statement signed or otherwise adopted or approved by the person making it, and any stenographic, mechanical, electrical, or other record or transcription thereof which is a

App. 0083

substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

8.    "Medicaid" means the Medicaid program administered by the federal Centers for Medicare & Medicaid Services.

9.    "Texas Medicaid" means the Texas Medicaid Assistance Program administered by the State of Texas, under the provisions of Title XIX of the Social Security Act.

10.    "Louisiana Medicaid" means the Louisiana Medicaid program administered by the State of Louisiana, under the provisions of Title XIX of the Social Security Act.

11.    "Planned Parenthood" means Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc., together with their current and former parent corporations, affiliates, direct and indirect subsidiaries, brother or sister corporations, divisions, current or former corporate owners, and the corporate successors and assigns of any of them, and all representatives, employees, agents, officers, consultants, attorneys, adjustors, investigators, or any other person acting or purporting to act on behalf of any of them, including but not limited to any and all persons that provided services to persons enrolled in Texas Medicaid and/or Louisiana Medicaid during the relevant time period at any clinic or other facility owned, operated, leased or managed by any of Planned Parenthood Federation of

8

America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc., or any entity in any way associated with Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc.

App. 0085

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

All documents and communications that were sent to or addressed to any person other than an attorney for Planned Parenthood and that also include an in-house attorney or in-house lawyer for Planned Parenthood as a recipient, carbon copy recipient ("Cc"), or blind carbon copy recipient ("Bcc"), concerning any funds or payments received by Planned Parenthood from Medicaid, Texas Medicaid, and/or Louisiana Medicaid after October 15, 2015.

### REQUEST FOR PRODUCTION NO. 2:

All documents and communications that were sent to or addressed to any person other than an attorney for Planned Parenthood and that also include an in-house attorney or in-house lawyer for Planned Parenthood as a recipient, carbon copy recipient ("Cc"), or blind carbon copy recipient ("Bcc"), concerning the following:

(a)   fetal tissue donation in connection with BioMax Procurement Services LLC;

(b)   Planned Parenthood interactions with representatives of BioMax Procurement Services LLC;

(c)   Center for Medical Progress ("CMP") editing of videos;

(d)   Planned Parenthood Federation of America's response to Congressional and state investigations related to the CMP videos;

(e)   communications with representatives of BioMax Procurement Services LLC;

(f)   affiliate knowledge of the CMP videos;

(g)   contents of emails to Planned Parenthood board members about CMP videos;

(h)   Planned Parenthood Federation of America's response to Louisiana Department of Health & Human Services;

(i)   language for use in response to legislative inquiries;

(j)   Planned Parenthood testimony in response to Texas legislative inquiry and/or Texas Committee;

(k)   follow-up to Planned Parenthood Federation of America's response to U.S. House Committee inquiry into CMP videos;

(l)   response to Congressional committee request for testimony; and/or

(m)   guidelines for external communication related to CMP videos.

App. 0086

**REQUEST FOR PRODUCTION NO. 3:**

All communications with any member or committee of Congress, the United States Department of Health and Human Services, the Federal Bureau of Investigation, and/or the United States Attorney's Office, concerning the facts alleged in Relator's Complaint.

**REQUEST FOR PRODUCTION NO. 4:**

All documents provided to and/or received from any member or committee of Congress, the United States Department of Health and Human Services, the Federal Bureau of Investigation, and/or the United States Attorney's Office, concerning the facts alleged in Relator's Complaint.

**REQUEST FOR PRODUCTION NO. 5:**

All documents and communications provided to or presented to participants or attendees of the March 2015 national meeting of Planned Parenthood affiliates, concerning fetal tissue procurement, fetal tissue research, fetal tissue harvesting, and/or fetal tissue sale, including but not limited to all documents prepared, provided, or presented by Roger Evans and/or Kristin Flood concerning fetal tissue.

Respectfully submitted.

/s/ Andrew B. Stephens
Andrew B. Stephens
Texas Bar No. 24079396
Heather Gebelin Hacker
Texas Bar No. 24103325
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
(512) 399-3022
andrew@hackerstephens.com
heather@hackerstephens.com

**Attorneys For Relator**

App. 0087

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2022, a true and correct copy of the foregoing document was sent by electronic mail to Defendants' counsel to the e-mail addresses below:

Leah Godesky
Danny Ashby
Justin Chapa
Amanda Santella
O'MELVENY & MYERS LLP
lgodesky@omm.com
dashby@omm.com
jchapa@omm.com
asantella@omm.com

**Attorneys for Defendant Planned Parenthood Federation of America, Inc.**

Craig Margolis
Murad Hussain
Tirzah Lollar
Christopher Odell
ARNOLD PORTER KAY SCHOLER LLP
Craig.Margolis@arnoldporter.com
Murad.Hussain@arnoldporter.com
Tirzah.Lollar@arnoldporter.com
Christopher.Odell@arnoldporter.com

**Attorneys for Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc.**

/s/ Andrew B. Stephens
Andrew B. Stephens

App. 0088

# EXHIBIT 8

App. 0089

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# AMARILLO DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA *EX REL.* DOE, *et al.,* | § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § § | Civil Action No. 2:21-CV-00022-Z |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., *et al.,* | § § § § | |
| *Defendants.* | § | |

## RELATOR'S FOURTH REQUESTS FOR PRODUCTION

To:   Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc., c/o Craig Margolis, Murad Hussain, Tirza Lollar, Christopher Odell, Arnold & Porter Kaye Scholer LLP, 601 Massachusetts Ave., NW, Washington, DC 20001, Attorneys for Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc.

Pursuant to Federal Rules of Civil Procedure 26 and 34, Relator Alex Doe

hereby requests that Defendants Planned Parenthood Gulf Coast, Inc., Planned

Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned

Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc., produce

the following documents in accordance with the definitions and instructions set forth

below at the office of Hacker Stephens LLP, c/o Andrew B. Stephens, 108 Wild Basin

Road South, Suite 250, Austin, Texas 78746, within thirty (30) days after service of

same.

1

App. 0090

## INSTRUCTIONS

1.      In responding to these document requests, Defendants are required to furnish all responsive documents in their possession, custody, or control, or in the possession, custody, or control of their attorneys, agents, employees, independent contractors, and all other persons acting on behalf of each of them or any of them.

2.      Each document request shall be responded to separately and fully, unless it is in good faith objected to, in which event the reasons for the objection shall be stated with specificity. If an objection pertains to only a portion of the request, or to a word, phrase, or clause contained therein, Defendants shall state the objection to that portion only and respond to the remainder of the request.

3.      If, in responding to these document requests, Defendants claim any ambiguity in a document request, or in a definition or instruction applicable thereto, Defendants shall not rely upon the ambiguity as a basis for refusing to respond, but shall set forth as part of their response the language deemed to be ambiguous and the interpretation used in responding to the request.

4.      An original or one copy of each responsive document shall be produced. Any copy of a document that varies in any way from the original or from any other copy of the document, whether by reason of handwritten or other notation, highlighting, underlining, or other marks, or a draft or successive iteration thereof and all modifications thereto, shall constitute a separate document and must be produced, whether or not the original of such document is within Defendants' possession, custody, or control. If the same document exists in both electronic and

2

non-electronic format, the electronically maintained document must be produced; provided, if the non-electronically maintained document varies in any way from the electronically maintained document as described above, both the electronically maintained and non-electronically maintained documents shall be produced.

5.  Documents shall be produced as they are kept in the ordinary course of business.

6.  If there are no documents responsive to any particular request, Defendants shall state so in writing.

7.  A request for documents includes a request for all transmittal sheets, cover letters, exhibits, enclosures, and attachments to the documents, in addition to the document itself. Documents attached to other documents or materials shall not be separated unless information is provided sufficient to permit reconstruction of the grouping or context in which the document is maintained in the ordinary course of business.

8.  If the documents requested differ from one office, division, or location to another, the requests require production of documents for each office, division, or location.

9.  Each document requested shall be produced in its entirety and without redactions, deletions, or excisions, regardless of whether Defendants consider the entire document to be relevant or responsive to these requests.

10.  For any document withheld under a claim of privilege, submit a privilege log that complies with FRCP 26(b)(5)(A) with your response to these requests.

3

11.    These document requests are continuing in nature. Any document obtained, created, identified, or located after service of any response to these requests that would have been included in the responses had the document been available or had its existence been known at that time should be produced immediately.

12.    For any document responsive to these requests that has been destroyed, lost, is otherwise unavailable, or is no longer in Defendants' present possession, custody, or control, identify with respect to each document: the author, addressee, date, number of pages, and subject matter; and explain in detail the events leading to the destruction or loss, or the reason for the unavailability of such document, including the location of such document when last in your possession, custody, or control, and the date and manner of its disposition.

13.    The relevant time period for these document requests is January 1, 2010, through the time of trial, unless otherwise stated.

14.    You are hereby notified that your answers to these discovery requests may be used in evidence upon the trial of this case, or in support of pleadings and motions, or for other purposes.

15.    In light of the scheduling order entered by the Court, you are further notified that if you fail to produce the requested documents and information by the deadline set forth above, Relator intends to file a motion to compel and may seek sanctions.

App. 0093

## DEFINITIONS

1.      "Concerning" means having any relationship or connection to, relating to, mentioning, comprising, consisting, indicating, describing, reflecting, referring, containing, evidencing, regarding, pertaining to, showing, discussing, considering, connected with, memorializing, commenting on, responding to, addressed to, sent to, modifying, amending, confirming, endorsing, representing, supporting, substantiating, qualifying, negating, refuting, analyzing, consisting, indicating, or involving in any way whatsoever the subject matter of the request, including having a legal, factual or logical connection, relationship, correlation, or association with the subject matter of the request.

2.      "Document" and "documents" are synonymous in meaning and equal in scope to the usage of the terms as defined in Federal Rule of Civil Procedure 34(a)(1)(A) and shall include all items subject to inspection and copying under those Rules, including any original, reproduction, copy, or draft of any kind of written or documented material, stored in any medium, including but not limited to audio and video tapes, correspondence, memoranda, interoffice communications, electronic mail, text messages, notes, diaries, calendars, personal digital assistant device entries, contract documents, estimates, vouchers, minutes of meetings, invoices, checks, reports, notes of telephone conversations, notes of oral communications, computer-stored information that is retrievable in any form, writings, drawings, graphs, charts, photographs, and other data compilations, from which information can be obtained, and electronically stored information that is retrievable in any form,

App. 0094

or translated if necessary, by Defendants through detection devices into a reasonably usable form, except that neither electronically stored voicemails nor the information stored in the memories of copiers, printers, and fax machines are "documents" under this definition.

3.      "Communication" and "communications" shall mean all meetings, interviews, conversations, conferences, discussions, correspondence, messages, telegrams, telefax, electronic mail, mailgrams, telephone conversations, text messages, and all oral, written and electronic expressions, or other occurrences whereby thoughts, opinions, information, or data are transmitted between two or more persons.

4.      The connectives "and" and "or" and the phrase "and/or" shall be construed either disjunctively or conjunctively to bring within the scope of each request all documents that might otherwise be construed as nonresponsive to the request. The word "and" shall be construed to mean both "and" and "or," and vice versa, as necessary to bring within the scope of each request all documents that might otherwise be construed as nonresponsive to the request.

5.      "Person" means the plural as well as the singular and includes without limitation natural persons, corporations, firms, associations, unincorporated associations, partnerships, joint ventures, affiliates, trusts, estates, or any other form of organization or legal entity, and any other governmental or non-governmental entity, agency, department, unit, or subdivision thereof.

6

6.      "Defendants" means Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc., together with their current and former parent corporations, affiliates, direct and indirect subsidiaries, brother or sister corporations, divisions, current or former corporate owners, and the corporate successors and assigns of any of them, and all representatives, employees, agents, officers, consultants, attorneys, adjustors, investigators, or any other person acting or purporting to act on behalf of any of them, including but not limited to any and all persons that provided services to persons enrolled in Texas Medicaid and/or Louisiana Medicaid during the relevant time period at any clinic or other facility owned, operated, leased or managed by any of Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc., or any entity in any way associated with Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc.

7.      "Statement" includes any written or graphic statement signed or otherwise adopted or approved by the person making it, and any stenographic, mechanical, electrical, or other record or transcription thereof which is a

7

substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

8.    "Medicaid" means the Medicaid program administered by the federal Centers for Medicare & Medicaid Services.

9.    "Texas Medicaid" means the Texas Medicaid Assistance Program administered by the State of Texas, under the provisions of Title XIX of the Social Security Act.

10.    "Louisiana Medicaid" means the Louisiana Medicaid program administered by the State of Louisiana, under the provisions of Title XIX of the Social Security Act.

11.    "Planned Parenthood" means Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc., together with their current and former parent corporations, affiliates, direct and indirect subsidiaries, brother or sister corporations, divisions, current or former corporate owners, and the corporate successors and assigns of any of them, and all representatives, employees, agents, officers, consultants, attorneys, adjustors, investigators, or any other person acting or purporting to act on behalf of any of them, including but not limited to any and all persons that provided services to persons enrolled in Texas Medicaid and/or Louisiana Medicaid during the relevant time period at any clinic or other facility owned, operated, leased or managed by any of Planned Parenthood Federation of

8

America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc., or any entity in any way associated with Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc.

App. 0098

# REQUESTS FOR PRODUCTION

## REQUEST FOR PRODUCTION NO. 1:

All documents and communications that were sent to or addressed to any person other than an attorney for Planned Parenthood and that also include an in-house attorney or in-house lawyer for Planned Parenthood as a recipient, carbon copy recipient ("Cc"), or blind carbon copy recipient ("Bcc"), concerning any funds or payments received by Planned Parenthood from Medicaid, Texas Medicaid, and/or Louisiana Medicaid after October 15, 2015.

## REQUEST FOR PRODUCTION NO. 2:

All documents and communications that were sent to or addressed to any person other than an attorney for Planned Parenthood and that also include an in-house attorney or in-house lawyer for Planned Parenthood as a recipient, carbon copy recipient ("Cc"), or blind carbon copy recipient ("Bcc"), concerning the following:

(a)  fetal tissue donation in connection with BioMax Procurement Services LLC;

(b)  Planned Parenthood interactions with representatives of BioMax Procurement Services LLC;

(c)  Center for Medical Progress ("CMP") editing of videos;

(d)  Planned Parenthood Federation of America's response to Congressional and state investigations related to the CMP videos;

(e)  communications with representatives of BioMax Procurement Services LLC;

(f)  affiliate knowledge of the CMP videos;

(g)  contents of emails to Planned Parenthood board members about CMP videos;

(h)  Planned Parenthood Federation of America's response to Louisiana Department of Health & Human Services;

(i)  language for use in response to legislative inquiries;

(j)  Planned Parenthood testimony in response to Texas legislative inquiry and/or Texas Committee;

(k)  follow-up to Planned Parenthood Federation of America's response to U.S. House Committee inquiry into CMP videos;

(l)  response to Congressional committee request for testimony; and/or

(m)  guidelines for external communication related to CMP videos.

App. 0099

**REQUEST FOR PRODUCTION NO. 3:**

All communications with any member or committee of Congress, the United States Department of Health and Human Services, the Federal Bureau of Investigation, and/or the United States Attorney's Office, concerning the facts alleged in Relator's Complaint.

**REQUEST FOR PRODUCTION NO. 4:**

All documents provided to and/or received from any member or committee of Congress, the United States Department of Health and Human Services, the Federal Bureau of Investigation, and/or the United States Attorney's Office, concerning the facts alleged in Relator's Complaint.

**REQUEST FOR PRODUCTION NO. 5:**

All documents and communications provided to or presented to participants or attendees of the March 2015 national meeting of Planned Parenthood affiliates, concerning fetal tissue procurement, fetal tissue research, fetal tissue harvesting, and/or fetal tissue sale, including but not limited to all documents prepared, provided, or presented by Roger Evans and/or Kristin Flood concerning fetal tissue.

Respectfully submitted.

/s/ Andrew B. Stephens
Andrew B. Stephens
Texas Bar No. 24079396
Heather Gebelin Hacker
Texas Bar No. 24103325
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
(512) 399-3022
andrew@hackerstephens.com
heather@hackerstephens.com

**Attorneys for Relator**

App. 0100

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2022, a true and correct copy of the foregoing document was sent by electronic mail to Defendants' counsel to the e-mail addresses below:

Leah Godesky
Danny Ashby
Justin Chapa
Amanda Santella
O'MELVENY & MYERS LLP
lgodesky@omm.com
dashby@omm.com
jchapa@omm.com
asantella@omm.com

**Attorneys for Defendant Planned Parenthood Federation of America, Inc.**

Craig Margolis
Murad Hussain
Tirzah Lollar
Christopher Odell
ARNOLD PORTER KAY SCHOLER LLP
Craig.Margolis@arnoldporter.com
Murad.Hussain@arnoldporter.com
Tirzah.Lollar@arnoldporter.com
Christopher.Odell@arnoldporter.com

**Attorneys for Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc.**

/s/ Andrew B. Stephens
Andrew B. Stephens

App. 0101

# EXHIBIT 9

App. 0102

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *EX REL.* DOE, *et al.*, | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No. 2:21-CV-00022-Z |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., *et al.*, | § § § | |
| *Defendants*. | § § § | |

## RELATOR'S FIFTH REQUESTS FOR PRODUCTION

To:   Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc., c/o Craig Margolis, Murad Hussain, Tirzah Lollar, Christopher Odell, Arnold & Porter Kaye Scholer LLP, 601 Massachusetts Ave., NW, Washington, DC 20001, Attorneys for Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc.

Pursuant to Federal Rules of Civil Procedure 26 and 34, Relator Alex Doe hereby requests that Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc., produce the following documents in accordance with the definitions and instructions set forth below at the office of Hacker Stephens LLP, c/o Andrew B. Stephens, 108 Wild Basin

App. 0103

Road South, Suite 250, Austin, Texas 78746, within thirty (30) days after service of same.

## INSTRUCTIONS

1.     In responding to these document requests, Defendants are required to furnish all responsive documents in their possession, custody, or control, or in the possession, custody, or control of their attorneys, agents, employees, independent contractors, and all other persons acting on behalf of each of them or any of them.

2.     Each document request shall be responded to separately and fully, unless it is in good faith objected to, in which event the reasons for the objection shall be stated with specificity. If an objection pertains to only a portion of the request, or to a word, phrase, or clause contained therein, Defendants shall state the objection to that portion only and respond to the remainder of the request.

3.     If, in responding to these document requests, Defendants claim any ambiguity in a document request, or in a definition or instruction applicable thereto, Defendants shall not rely upon the ambiguity as a basis for refusing to respond, but shall set forth as part of their response the language deemed to be ambiguous and the interpretation used in responding to the request.

4.     An original or one copy of each responsive document shall be produced. Any copy of a document that varies in any way from the original or from any other copy of the document, whether by reason of handwritten or other notation, highlighting, underlining, or other marks, or a draft or successive iteration thereof and all modifications thereto, shall constitute a separate document and must be

2

produced, whether or not the original of such document is within Defendants'
possession, custody, or control. If the same document exists in both electronic and
non-electronic format, the electronically maintained document must be produced;
provided, if the non-electronically maintained document varies in any way from the
electronically maintained document as described above, both the electronically
maintained and non-electronically maintained documents shall be produced.

5.     Documents shall be produced as they are kept in the ordinary course of
business.

6.     If there are no documents responsive to any particular request,
Defendants shall state so in writing.

7.     A request for documents includes a request for all transmittal sheets,
cover letters, exhibits, enclosures, and attachments to the documents, in addition to
the document itself. Documents attached to other documents or materials shall not
be separated unless information is provided sufficient to permit reconstruction of the
grouping or context in which the document is maintained in the ordinary course of
business.

8.     If the documents requested differ from one office, division, or location to
another, the requests require production of documents for each office, division, or
location.

9.     Each document requested shall be produced in its entirety and without
redactions, deletions, or excisions, regardless of whether Defendants consider the
entire document to be relevant or responsive to these requests.

App. 0105

10.    For any document withheld under a claim of privilege, submit a privilege log that complies with FRCP 26(b)(5)(A) with your response to these requests.

11.    These document requests are continuing in nature. Any document obtained, created, identified, or located after service of any response to these requests that would have been included in the responses had the document been available or had its existence been known at that time should be produced immediately.

12.    For any document responsive to these requests that has been destroyed, lost, is otherwise unavailable, or is no longer in Defendants' present possession, custody, or control, identify with respect to each document: the author, addressee, date, number of pages, and subject matter; and explain in detail the events leading to the destruction or loss, or the reason for the unavailability of such document, including the location of such document when last in your possession, custody, or control, and the date and manner of its disposition.

13.    The relevant time period for these document requests is January 1, 2010, through the time of trial, unless otherwise stated.

14.    You are hereby notified that your answers to these discovery requests may be used in evidence upon the trial of this case, or in support of pleadings and motions, or for other purposes.

15.    In light of the scheduling order entered by the Court, you are further notified that if you fail to produce the requested documents and information by the deadline set forth above, Relator intends to file a motion to compel and may seek sanctions.

App. 0106

## DEFINITIONS

1.     "Concerning" means having any relationship or connection to, relating to, mentioning, comprising, consisting, indicating, describing, reflecting, referring, containing, evidencing, regarding, pertaining to, showing, discussing, considering, connected with, memorializing, commenting on, responding to, addressed to, sent to, modifying, amending, confirming, endorsing, representing, supporting, substantiating, qualifying, negating, refuting, analyzing, consisting, indicating, or involving in any way whatsoever the subject matter of the request, including having a legal, factual or logical connection, relationship, correlation, or association with the subject matter of the request.

2.     "Document" and "documents" are synonymous in meaning and equal in scope to the usage of the terms as defined in Federal Rule of Civil Procedure 34(a)(1)(A) and shall include all items subject to inspection and copying under those Rules, including any original, reproduction, copy, or draft of any kind of written or documented material, stored in any medium, including but not limited to audio and video tapes, correspondence, memoranda, interoffice communications, electronic mail, text messages, notes, diaries, calendars, personal digital assistant device entries, contract documents, estimates, vouchers, minutes of meetings, invoices, checks, reports, notes of telephone conversations, notes of oral communications, computer-stored information that is retrievable in any form, writings, drawings, graphs, charts, photographs, and other data compilations, from which information can be obtained, and electronically stored information that is retrievable in any form,

App. 0107

or translated if necessary, by Defendants through detection devices into a reasonably usable form, except that neither electronically stored voicemails nor the information stored in the memories of copiers, printers, and fax machines are "documents" under this definition.

3.      "Communication" and "communications" shall mean all meetings, interviews, conversations, conferences, discussions, correspondence, messages, telegrams, telefax, electronic mail, mailgrams, telephone conversations, text messages, and all oral, written and electronic expressions, or other occurrences whereby thoughts, opinions, information, or data are transmitted between two or more persons.

4.      The connectives "and" and "or" and the phrase "and/or" shall be construed either disjunctively or conjunctively to bring within the scope of each request all documents that might otherwise be construed as nonresponsive to the request. The word "and" shall be construed to mean both "and" and "or," and vice versa, as necessary to bring within the scope of each request all documents that might otherwise be construed as nonresponsive to the request.

5.      "Person" means the plural as well as the singular and includes without limitation natural persons, corporations, firms, associations, unincorporated associations, partnerships, joint ventures, affiliates, trusts, estates, or any other form of organization or legal entity, and any other governmental or non-governmental entity, agency, department, unit, or subdivision thereof.

6.     "Defendants" means Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc., together with their current and former parent corporations, affiliates, direct and indirect subsidiaries, brother or sister corporations, divisions, current or former corporate owners, and the corporate successors and assigns of any of them, and all representatives, employees, agents, officers, consultants, attorneys, adjustors, investigators, or any other person acting or purporting to act on behalf of any of them, including but not limited to any and all persons that provided services to persons enrolled in Texas Medicaid and/or Louisiana Medicaid during the relevant time period at any clinic or other facility owned, operated, leased or managed by any of Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc., or any entity in any way associated with Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc.

7.     "Statement" includes any written or graphic statement signed or otherwise adopted or approved by the person making it, and any stenographic, mechanical, electrical, or other record or transcription thereof which is a

App. 0109

substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

8.  "Medicaid" means the Medicaid program administered by the federal Centers for Medicare & Medicaid Services.

9.  "Texas Medicaid" means the Texas Medicaid Assistance Program administered by the State of Texas, under the provisions of Title XIX of the Social Security Act.

10.  "Louisiana Medicaid" means the Louisiana Medicaid program administered by the State of Louisiana, under the provisions of Title XIX of the Social Security Act.

11.  "Planned Parenthood" means Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc., together with their current and former parent corporations, affiliates, direct and indirect subsidiaries, brother or sister corporations, divisions, current or former corporate owners, and the corporate successors and assigns of any of them, and all representatives, employees, agents, officers, consultants, attorneys, adjustors, investigators, or any other person acting or purporting to act on behalf of any of them, including but not limited to any and all persons that provided services to persons enrolled in Texas Medicaid and/or Louisiana Medicaid during the relevant time period at any clinic or other facility owned, operated, leased or managed by any of Planned Parenthood Federation of

8

America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc., or any entity in any way associated with Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc.

12.    "PPFA" means Planned Parenthood Federation of America, Inc., together with its current and former parent corporations, affiliates, direct and indirect subsidiaries, brother or sister corporations, divisions, current or former corporate owners, and the corporate successors and assigns of any of them, and all representatives, employees, agents, officers, consultants, attorneys, adjustors, investigators, or any other person acting or purporting to act on behalf of any of them, including but not limited to any and all persons that provided services to persons enrolled in Texas Medicaid and/or Louisiana Medicaid during the relevant time period at any clinic or other facility owned, operated, leased or managed by Planned Parenthood Federation of America, Inc., or any entity in any way associated with Planned Parenthood Federation of America, Inc.

13.    "PPFA Affiliates" means Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc., together with their current and former parent corporations, affiliates, direct and

9

indirect subsidiaries, brother or sister corporations, divisions, current or former corporate owners, and the corporate successors and assigns of any of them, and all representatives, employees, agents, officers, consultants, attorneys, adjustors, investigators, or any other person acting or purporting to act on behalf of any of them, including but not limited to any and all persons that provided services to persons enrolled in Texas Medicaid and/or Louisiana Medicaid during the relevant time period at any clinic or other facility owned, operated, leased or managed by any of Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc., or any entity in any way associated with Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc.

App. 0112

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All documents and communications concerning any agreements between PPFA and each PPFA Affiliate, including but not limited to any affiliation agreements and/or bylaws.

**REQUEST FOR PRODUCTION NO. 2:**

All documents and communications between PPFA and each PPFA Affiliate, concerning affiliation with PPFA and/or affiliation with any other person or entity affiliated with PPFA.

**REQUEST FOR PRODUCTION NO. 3:**

All documents and communications concerning PPFA's control and/or direction of each PPFA Affiliate, including but not limited to all documents and communications concerning PPFA's support, control, oversight, involvement, direction, management, directives, marketing, communications, requirements, standards, guidelines, policies, accreditation, affiliation, certification, minimum legal requirements, insurance coverage, legal services, legal representation, monetary support, medical services, activities, programs, and/or pronouncements concerning each PPFA Affiliate.

**REQUEST FOR PRODUCTION NO. 4:**

All documents and communications between PPFA and each PPFA Affiliate concerning Medicaid, Texas Medicaid, and/or Louisiana Medicaid.

**REQUEST FOR PRODUCTION NO. 5:**

All documents and communications concerning PPFA Clinical Research Standard Operating Procedures (SOPs), Research Conduct Guidelines, Forms, Clinical Research Network, and/or Memorandum of Understanding.

App. 0113

Respectfully submitted.

/s/ Andrew B. Stephens
Andrew B. Stephens
Texas Bar No. 24079396
Heather Gebelin Hacker
Texas Bar No. 24103325
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
(512) 399-3022
andrew@hackerstephens.com
heather@hackerstephens.com

**Attorneys for Relator**

App. 0114

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2022, a true and correct copy of the foregoing document was sent by electronic mail to Defendants' counsel to the e-mail addresses below:

Leah Godesky
Danny Ashby
Justin Chapa
Amanda Santella
O'MELVENY & MYERS LLP
lgodesky@omm.com
dashby@omm.com
jchapa@omm.com
asantella@omm.com

**Attorneys for Defendant Planned Parenthood Federation of America, Inc.**

Craig Margolis
Murad Hussain
Tirzah Lollar
Christopher Odell
ARNOLD PORTER KAY SCHOLER LLP
Craig.Margolis@arnoldporter.com
Murad.Hussain@arnoldporter.com
Tirzah.Lollar@arnoldporter.com
Christopher.Odell@arnoldporter.com

**Attorneys for Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc.**

/s/ Andrew B. Stephens
Andrew B. Stephens

App. 0115

# EXHIBIT 10

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *EX REL.* DOE, *et al.,* §§§§ | |
| *Plaintiffs,* §§ | |
| v. § | Civil Action No. 2:21-CV-00022-Z |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., *et al.,* §§§§ | |
| *Defendants.* § | |

## RELATOR'S SIXTH REQUESTS FOR PRODUCTION

To:   Defendants Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc., c/o Leah Godesky, O'Melveny & Myers LLP, 1999 Avenue of the Stars, 8th Floor, Los Angeles California 90067, Amanda Santella, O'Melveny & Myers LLP, 1625 Eye Street NW, Washington, DC 20006, Danny S. Ashby, Justin R. Chapa, O'Melveny & Myers LLP, 2501 North Harwood Street, Suite 1700, Attorneys for Defendant Planned Parenthood Federation of America, Inc., c/o Craig Margolis, Murad Hussain, Tirzah Lollar, Christopher Odell, Arnold & Porter Kaye Scholer LLP, 601 Massachusetts Ave., NW, Washington, DC 20001, Attorneys for Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc.

Pursuant to Federal Rules of Civil Procedure 26 and 34, Relator Alex Doe hereby requests that Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc., produce the following documents in accordance with the definitions and instructions set forth

App. 0117

below at the office of Hacker Stephens LLP, c/o Andrew B. Stephens, 108 Wild Basin Road South, Suite 250, Austin, Texas 78746, within thirty (30) days after service of same.

## INSTRUCTIONS

1.     In responding to these document requests, Defendants are required to furnish all responsive documents in their possession, custody, or control, or in the possession, custody, or control of their attorneys, agents, employees, independent contractors, and all other persons acting on behalf of each of them or any of them.

2.     Each document request shall be responded to separately and fully, unless it is in good faith objected to, in which event the reasons for the objection shall be stated with specificity. If an objection pertains to only a portion of the request, or to a word, phrase, or clause contained therein, Defendants shall state the objection to that portion only and respond to the remainder of the request.

3.     If, in responding to these document requests, Defendants claim any ambiguity in a document request, or in a definition or instruction applicable thereto, Defendants shall not rely upon the ambiguity as a basis for refusing to respond, but shall set forth as part of their response the language deemed to be ambiguous and the interpretation used in responding to the request.

4.     An original or one copy of each responsive document shall be produced. Any copy of a document that varies in any way from the original or from any other copy of the document, whether by reason of handwritten or other notation, highlighting, underlining, or other marks, or a draft or successive iteration thereof

App. 0118

and all modifications thereto, shall constitute a separate document and must be produced, whether or not the original of such document is within Defendants' possession, custody, or control. If the same document exists in both electronic and non-electronic format, the electronically maintained document must be produced; provided, if the non-electronically maintained document varies in any way from the electronically maintained document as described above, both the electronically maintained and non-electronically maintained documents shall be produced.

5.      Documents shall be produced as they are kept in the ordinary course of business.

6.      If there are no documents responsive to any particular request, Defendants shall state so in writing.

7.      A request for documents includes a request for all transmittal sheets, cover letters, exhibits, enclosures, and attachments to the documents, in addition to the document itself. Documents attached to other documents or materials shall not be separated unless information is provided sufficient to permit reconstruction of the grouping or context in which the document is maintained in the ordinary course of business.

8.      If the documents requested differ from one office, division, or location to another, the requests require production of documents for each office, division, or location.

App. 0119

9.      Each document requested shall be produced in its entirety and without redactions, deletions, or excisions, regardless of whether Defendants consider the entire document to be relevant or responsive to these requests.

10.     For any document withheld under a claim of privilege, submit a privilege log that complies with FRCP 26(b)(5)(A) with your response to these requests.

11.     These document requests are continuing in nature. Any document obtained, created, identified, or located after service of any response to these requests that would have been included in the responses had the document been available or had its existence been known at that time should be produced immediately.

12.     For any document responsive to these requests that has been destroyed, lost, is otherwise unavailable, or is no longer in Defendants' present possession, custody, or control, identify with respect to each document: the author, addressee, date, number of pages, and subject matter; and explain in detail the events leading to the destruction or loss, or the reason for the unavailability of such document, including the location of such document when last in your possession, custody, or control, and the date and manner of its disposition.

13.     The relevant time period for these document requests is January 1, 2010, through the time of trial, unless otherwise stated.

14.     You are hereby notified that your answers to these discovery requests may be used in evidence upon the trial of this case, or in support of pleadings and motions, or for other purposes.

15.     In light of the scheduling order entered by the Court, you are further notified that if you fail to produce the requested documents and information by the deadline set forth above, Relator intends to file a motion to compel and may seek sanctions.

## DEFINITIONS

1.     "Concerning" means having any relationship or connection to, relating to, mentioning, comprising, consisting, indicating, describing, reflecting, referring, containing, evidencing, regarding, pertaining to, showing, discussing, considering, connected with, memorializing, commenting on, responding to, addressed to, sent to, modifying, amending, confirming, endorsing, representing, supporting, substantiating, qualifying, negating, refuting, analyzing, consisting, indicating, or involving in any way whatsoever the subject matter of the request, including having a legal, factual or logical connection, relationship, correlation, or association with the subject matter of the request.

2.     "Document" and "documents" are synonymous in meaning and equal in scope to the usage of the terms as defined in Federal Rule of Civil Procedure 34(a)(1)(A) and shall include all items subject to inspection and copying under those Rules, including any original, reproduction, copy, or draft of any kind of written or documented material, stored in any medium, including but not limited to audio and video tapes, correspondence, memoranda, interoffice communications, electronic mail, text messages, notes, diaries, calendars, personal digital assistant device entries, contract documents, estimates, vouchers, minutes of meetings, invoices,

5

App. 0121

checks, reports, notes of telephone conversations, notes of oral communications, computer-stored information that is retrievable in any form, writings, drawings, graphs, charts, photographs, and other data compilations, from which information can be obtained, and electronically stored information that is retrievable in any form, or translated if necessary, by Defendants through detection devices into a reasonably usable form, except that neither electronically stored voicemails nor the information stored in the memories of copiers, printers, and fax machines are "documents" under this definition.

3.      "Communication" and "communications" shall mean all meetings, interviews, conversations, conferences, discussions, correspondence, messages, telegrams, telefax, electronic mail, mailgrams, telephone conversations, text messages, and all oral, written and electronic expressions, or other occurrences whereby thoughts, opinions, information, or data are transmitted between two or more persons.

4.      The connectives "and" and "or" and the phrase "and/or" shall be construed either disjunctively or conjunctively to bring within the scope of each request all documents that might otherwise be construed as nonresponsive to the request. The word "and" shall be construed to mean both "and" and "or," and vice versa, as necessary to bring within the scope of each request all documents that might otherwise be construed as nonresponsive to the request.

5.      "Person" means the plural as well as the singular and includes without limitation natural persons, corporations, firms, associations, unincorporated

6

associations, partnerships, joint ventures, affiliates, trusts, estates, or any other form of organization or legal entity, and any other governmental or non-governmental entity, agency, department, unit, or subdivision thereof.

6.      "Defendants" means Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc., together with their current and former parent corporations, affiliates, direct and indirect subsidiaries, brother or sister corporations, divisions, current or former corporate owners, and the corporate successors and assigns of any of them, and all representatives, employees, agents, officers, consultants, attorneys, adjustors, investigators, or any other person acting or purporting to act on behalf of any of them, including but not limited to any and all persons that provided services to persons enrolled in Texas Medicaid and/or Louisiana Medicaid during the relevant time period at any clinic or other facility owned, operated, leased or managed by any of Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc., or any entity in any way associated with Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc.

7

7.     "Statement" includes any written or graphic statement signed or otherwise adopted or approved by the person making it, and any stenographic, mechanical, electrical, or other record or transcription thereof which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

8.     "Medicaid" means the Medicaid program administered by the federal Centers for Medicare & Medicaid Services.

9.     "Texas Medicaid" means the Texas Medicaid Assistance Program administered by the State of Texas, under the provisions of Title XIX of the Social Security Act.

10.    "Louisiana Medicaid" means the Louisiana Medicaid program administered by the State of Louisiana, under the provisions of Title XIX of the Social Security Act.

11.    "Planned Parenthood" means Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc., together with their current and former parent corporations, affiliates, direct and indirect subsidiaries, brother or sister corporations, divisions, current or former corporate owners, and the corporate successors and assigns of any of them, and all representatives, employees, agents, officers, consultants, attorneys, adjustors, investigators, or any other person acting or purporting to act on behalf of any of them, including but not limited to any

8

and all persons that provided services to persons enrolled in Texas Medicaid and/or Louisiana Medicaid during the relevant time period at any clinic or other facility owned, operated, leased or managed by any of Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc., or any entity in any way associated with Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc.

12.   "PPFA" means Planned Parenthood Federation of America, Inc., together with its current and former parent corporations, affiliates, direct and indirect subsidiaries, brother or sister corporations, divisions, current or former corporate owners, and the corporate successors and assigns of any of them, and all representatives, employees, agents, officers, consultants, attorneys, adjustors, investigators, or any other person acting or purporting to act on behalf of any of them, including but not limited to any and all persons that provided services to persons enrolled in Texas Medicaid and/or Louisiana Medicaid during the relevant time period at any clinic or other facility owned, operated, leased or managed by Planned Parenthood Federation of America, Inc., or any entity in any way associated with Planned Parenthood Federation of America, Inc.

App. 0125

13.    "PPFA Affiliates" means Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc., together with their current and former parent corporations, affiliates, direct and indirect subsidiaries, brother or sister corporations, divisions, current or former corporate owners, and the corporate successors and assigns of any of them, and all representatives, employees, agents, officers, consultants, attorneys, adjustors, investigators, or any other person acting or purporting to act on behalf of any of them, including but not limited to any and all persons that provided services to persons enrolled in Texas Medicaid and/or Louisiana Medicaid during the relevant time period at any clinic or other facility owned, operated, leased or managed by any of Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc., or any entity in any way associated with Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and/or Planned Parenthood San Antonio, Inc.

14.    "Affiliate Risk Management Services, Inc." and "ARMS" mean Affiliate Risk Management Services, Inc., together with its current and former parent corporations, affiliates, direct and indirect subsidiaries, brother or sister corporations, divisions, current or former corporate owners, and the corporate successors and assigns of any of them, and all representatives, employees, agents,

10

officers, consultants, attorneys, adjustors, investigators, or any other person acting

or purporting to act on behalf of any of them.

App. 0127

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All documents and communications with Affiliates Risk Management Services, Inc. (ARMS) concerning Texas Medicaid, Louisiana Medicaid, and/or any of the PPFA Affiliates from January 1, 2010 through present.

**REQUEST FOR PRODUCTION NO. 2:**

All documents and communications with Policyholders Trust concerning Texas Medicaid, Louisiana Medicaid, and/or the PPFA Affiliates from January 1, 2010 through present.

**REQUEST FOR PRODUCTION NO. 3:**

All documents and communications concerning compliance programs of the PPFA Affiliates, including but not limited to all documents and communications concerning (a) compliance program oversight by a compliance officer, internal compliance committee, and board of directors; (b) written standard of conduct and policies and procedures; (c) compliance education and training for employees and contracted individuals; (d) reporting mechanisms for communicating concerns and suspected violations of applicable laws or internal policies; (e) routine auditing and monitoring of compliance-related areas of risk; (f) investigations of allegations of non-compliance, and corrective action implemented; and/or (g) uniform disciplinary action to properly address non-compliant behavior.

**REQUEST FOR PRODUCTION NO. 4:**

All documents and communications concerning ARMS Connect and the Center for Affiliated Learning concerning Medicaid, Texas Medicaid, and/or Louisiana Medicaid, including but not limited to all documents and communications concerning learning or training courses and/or learning or training materials concerning Medicaid, Texas Medicaid, and/or Louisiana Medicaid rules and regulations.

**REQUEST FOR PRODUCTION NO. 5:**

All documents and communications from the PPFA Medical Services intranet site concerning Medicaid, Texas Medicaid, and/or Louisiana Medicaid, including but not limited to Medicaid, Texas Medicaid, and/or Louisiana Medicaid rules and regulations.

App. 0128

**REQUEST FOR PRODUCTION NO. 6:**

All documents and communications from the Medical Services blog concerning newly released materials, items of note, and information concerning Medicaid, Texas Medicaid, and/or Louisiana Medicaid.

Respectfully submitted.

/s/ Andrew B. Stephens
Andrew B. Stephens
Texas Bar No. 24079396
Heather Gebelin Hacker
Texas Bar No. 24103325
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
(512) 399-3022
andrew@hackerstephens.com
heather@hackerstephens.com

**Attorneys for Relator**

App. 0129

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2022, a true and correct copy of the foregoing document was sent by electronic mail to Defendants' counsel to the e-mail addresses below:

Leah Godesky
Danny Ashby
Justin Chapa
Amanda Santella
O'MELVENY & MYERS LLP
lgodesky@omm.com
dashby@omm.com
jchapa@omm.com
asantella@omm.com

**Attorneys for Defendant Planned Parenthood Federation of America, Inc.**

Craig Margolis
Murad Hussain
Tirzah Lollar
Christopher Odell
ARNOLD PORTER KAY SCHOLER LLP
Craig.Margolis@arnoldporter.com
Murad.Hussain@arnoldporter.com
Tirzah.Lollar@arnoldporter.com
Christopher.Odell@arnoldporter.com

**Attorneys for Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc.**

/s/ Andrew B. Stephens
Andrew B. Stephens

14

# EXHIBIT 11

App. 0131

REL_048421



Medical Services

# Medical Director Orientation Manual

*Revised July 2015*

The following publications were used in the preparation of this manual.

*PPFA Manual of Medical Standards and Guidelines* (Effective March 31, 2015)

*PPFA Bylaws* (Effective March 20, 2010)

*PPFA Accreditation Indicators and Elements of Performance* (Effective July 1, 2015)

REL_048422

REL_048423

# TABLE OF CONTENTS

**1  Introduction**

**2  Mission Statement of Planned Parenthood**

**3  Role of the Affiliate Medical Director**

**5  The PPFA Medical Standards and Guidelines**

- Creation of the PPFA MS&Gs
- National Medical Committee (NMC) Participation in Development and Revisions of MS&Gs
- Practicing within the MS&Gs
- Administrative Aspects of Clinical Care
- Privileging of the Medical Director

**9  The PPFA National Medical Committee (NMC)**

- Structure of the NMC
- Dissemination of NMC Recommendations to the Federation

**10  Regulatory and Compliance Issues**

- Accreditation Process
- Regulations Impacting Clinical Care
- Regulations Impacting Operations Supporting Clinical Care

**13  Communication, Resources, and Support**

- The PPFA Medical Services intranet site
- ARMS Connect
- Medical Directors Council (MeDC)
- Regional Medical Representatives
- National Patient Services Council
- Affiliate Chief Executives Council (ACEC)

**17  Meetings, Conferences, and Other Continuing Education Opportunities**

- PPFA National Medical Conference
- The North American Forum on Family Planning
- MeDC Annual Update on Reproductive Health and Medical Leadership

**19  Working with the PPFA National Office**

- Education
- Medical Affairs
- Health Care Innovation
- Affiliate Services/Business Operations
- Health Outcomes & Performance Optimization
- Affiliates Risk Management Services
- Katherine Dexter McCormack Library

**28  Contact List**

**30  Government Regulations & Examples of Non-Compliant Behavior**

App. 0134

# Introduction

Welcome to your new position with Planned Parenthood. This manual is one of several resources designed to orient you to your role as an affiliate Medical Director.

Planned Parenthood traces its history to 1916, when Margaret Sanger, Ethel Byrne, and Fania Mindell opened America's first birth control clinic in Brooklyn, New York. Despite ensuing convictions for violations of the Comstock Laws, jail terms, clinic raids, and years of court battles, Sanger persevered to lead the movement that eventually overturned the Comstock Laws and established the American Birth Control League. It was later re-named Birth Control Federation of America and, in 1942, became known as the Planned Parenthood Federation of America (PPFA).

Today PPFA remains a non-profit organization dedicated to the support of women's reproductive rights. In its present structure it exists as a national organization with 59 affiliates, operating approximately 700 health centers, and serving 2.7 million clients in the United States each year. There is an affiliate presence in each of the fifty states. The official website of PPFA is www.plannedparenthood.org.

The national organization is comprised of the PPFA Board of Directors and national office staff. The principal roles of the national organization are to

- provide leadership to the organization and to the field of reproductive rights
- educate and provide information to the public
- advocate for, represent, and promote the mission (see below)
- provide services to affiliates

The national organization has offices in New York City, Washington D.C., Miami, and Nairobi.

Each affiliate is its own non-profit organization with its own chief executive officer and its own board of directors. In order to use the PPFA trademark and obtain voting membership in the Federation, an affiliate must conform to the purposes, written policies, and standards of PPFA. To be granted affiliate status, an affiliate must fulfill the requirements set forth in the Standards of Affiliation (Article X of the PPFA Bylaws).

REL_048424

App. 0135

Affiliates vary greatly in size. Some affiliates have a few small health centers while others have many large sites spread over several states. Affiliates also vary greatly in the scope of services they offer. There are a set of core services that must be provided by all affiliates. Many offer additional services such as vasectomy, primary care, and healthcare for transgender persons.

## MISSION STATEMENT OF PLANNED PARENTHOOD

Planned Parenthood believes in the fundamental right of each individual, throughout the world, to manage his or her fertility, regardless of the individual's income, marital status, race, ethnicity, sexual orientation, age, national origin or residence. We believe that respect and value for diversity in all aspects of our organization are essential to our well-being. We believe that reproductive self-determination must be voluntary and preserve the individual's right to privacy. We further believe that such self- determination will contribute to an enhancement of the quality of life, strong family relationships, and population stability.

Based on these beliefs, and reflecting the diverse communities in which we operate, the mission of Planned Parenthood is

To provide comprehensive reproductive and complementary health services in settings which preserve and protect the essential privacy and rights of each individual

- To advocate public policies that guarantee these rights and ensure access to such services
- To provide educational programs which enhance understanding of individual and societal implications of human sexuality
- To promote research and the advancement of technology in reproductive health care and encourage understanding of their inherent bioethical, behavioral, and social implications

REL_048425

# ROLE OF THE AFFILIATE MEDICAL DIRECTOR

A licensed physician must supervise and be responsible for the medical care provided by each affiliate. At some affiliates the lead medical position is called Vice President of Medical Affairs or Chief Medical Officer.

The position often involves some combination of clinical care and management/administrative activities. Differences in the specifics of Medical Director duties between affiliates are determined by variables such as whether or not the patient services director (PSD) is medically trained and/or if the Medical Director is full-time or part-time.  Depending on affiliate organizational structure, many of the responsibilities below may be shared with the PSD. Some may even be performed by the PSD with minimal Medical Director involvement. **It is important for new Medical Directors to determine, through conversation with the CEO, COO and/or the PSD, how medical duties are assigned and shared in the affiliate.**

The Medical Director is ultimately responsible for

- Biennial update of the affiliate *Medical Standards and Guidelines* (*MS&Gs*, based on the *PPFA MS&Gs*)
- Orientation, education, privileging, periodic chart review, and annual performance review of affiliate clinicians, whether advance practice clinicians or physicians
- Establishment/maintenance of relationships within the medical community (especially if no affiliate medical committee exists) and participation in formulation of the affiliate referral list(s)

Other responsibilities may include

- Direct provision of patient care and internal consultation with affiliate clinicians
- Directing specialized services (such as surgical services including abortion, sterilization, colposcopy, etc.) where appropriate
- Determination of appropriate affiliate participation in educational, training and research activities
- Quality assurance, risk management, and client safety activities such as
  - Participation on the affiliate's risk and quality management committee and/or compliance committee
  - Determination of topics for periodic medical care audits evaluating adherence to MS&Gs and conduct of those audits
  - Completion and analysis of incident reports in the Affiliated Incident Management System (AIMS) for reporting to ARMS as well as for internal affiliate use (identification of deficiencies in clinical systems or clinician knowledge based on audit activities and completion of indicated corrective action)

REL_048426

App. 0137

- Oversight of tracking and review of lab results, follow up and complication logs, and medical record audits, and recommendations concerning remediation in any problem areas
- Preparation for and participation in PPFA accreditation reviews

REL_048427

# THE PPFA MEDICAL STANDARDS AND GUIDELINES (MS&GS)

Planned Parenthood is a self-insured organization. Malpractice insurance is provided through the National Insurance Program administered by Affiliates Risk Management Services, Inc. (ARMS). In order to negotiate the lowest premiums and to assure the delivery of consistent medical care of good quality, PPFA regulates the medical services that can be provided.  An important mechanism for achieving this regulation is the MS&Gs.  Every affiliate must be able to easily access the most current version of the PPFA MS&Gs.  These standards and guidelines also serve as the template for affiliate medical protocols.

## Creation of the PPFA MS&Gs

The PPFA MS&Gs undergo a continual updating process to incorporate the latest clinical evidence, create new standards for services where no PPFA standards exist, and improve usability to eliminate potential barriers to care for clients and unnecessary burdens on affiliate staff.

The staff of the Medical Services Department is responsible for the above processes. In order to accomplish this, input from the following sources are used:

- Medical literature and medical news
- Published information and guidelines from authoritative bodies, such as the federal government (e.g., CDC, FDA, USPSTF), non-governmental agencies (e.g., World Health Organization), medical organizations (e.g., the American Congress of Obstetricians and Gynecologists (ACOG), the American Society for Colposcopy and Cervical Pathology (ASCCP), and corporate entities such as pharmaceutical companies
- Affiliate questions and suggestions
- Input from other PPFA divisions, departments, and services such as the Health Care Division, ARMS, Communications, Consortium of Abortion Providers (CAPS), Office of the General Council, and others.
- PPFA's mission, vision, and strategic goals
- Affiliate requests for waivers to existing standards
- Consultation with the National Medical Committee
- Consultation with other medical experts

Some new standards and revisions can be implemented without any review or approval beyond Medical Services. Others require a process of review and approval beyond Medical Services. In the latter case, the National Medical Committee is often the starting point for the review and approval process.

REL_048428

# National Medical Committee (NMC) Participation in Development and Revisions of MS&Gs

The National Medical Committee is charged with working in collaboration with Medical Services to create, review, and update the PPFA MS&Gs. They do this by considering a series of questions that have been developed by the staff of the Medical Services Department. The process is outlined below.



**Input**
- Affiliate questions and suggestions
- Medical Services staff

**Materials for deliberation**
- Medical Services prepares a series of questions for consideration by the NMC with background materials
- Affiliates may be asked to assist in providing back-up documentation to support the requests and suggestions they have made

**Deliberation by NMC**
- Work Group meets to discuss issues at hand, answer the questions, and vote.
- PPFA staffers provide support, additional information as needed, and keep minutes

**Implementation of recommendations in MS&Gs**
- update current MS&Gs
- develop standards for new services or methods
- finalize administrative procedures for implementation
- Produce NMC Summary Report and send via e-mail to NMC members, affiliates, and interested parties in the national organization

**PPFA review and approval**
- May be subject to the review and approval of the CEO of ARMS, ARMS Board of Directors, and/or PPFA Board of Directors
- Timing and level of approvals needed depend on
- medical and insurance risk issues
- novelty of the services being recommended
- issues related to PPFA's mission, goals, and vision

**NMC recommendations to PPFA**
- Work Group chair with PPFA staff produce a report with recommendations
- Recommendations are put forth for voting by the NMC (in-person) or NMC Executive Subcommittee (virtual meeting)
- Final decisons and recommendations provided to PPFA Medical Services.

REL_048429

The MS&Gs are updated biennially, although not every section is revised. The new "edition" of the MS&Gs is posted to the PPFA Intranet – usually at the end of June. PPFA uses a standardized implementation schedule. With few exceptions, there are at least six months allowed for the implementation of revisions by affiliates. There may be occasional updates to the MS&Gs between distributions. This would be in response to a special event like an FDA-mandated change to product package labeling or the release of updated national guidelines affecting clinical care at Planned Parenthood.

## Creation of Affiliate MS&Gs

As mentioned previously in this guide, the Medical Director is ultimately responsible for biennial update of affiliate MS&Gs. These are developed by each affiliate using the PPFA MS&Gs as a starting point. In many affiliates the development or modification of the affiliate protocols is performed by the Medical Director, often with the participation of affiliate clinicians and administrators. The affiliate's own MS&Gs are tailored to include the specific services offered at the affiliate. The content of affiliate protocols must be consistent with the PPFA MS&Gs. They may be more conservative but not more relaxed (unless a waiver has been given for the modification – see waivers in waivers in PPFA MS&Gs Administrative Chapter 1.1.4). More conservative practices must be evidence-based, cause no harm, and not add additional barriers to care. State and local regulations must be added where indicated.

An assessment of affiliate medical protocols is part of the accreditation review process. Medical Directors should advocate at their affiliates for adequate resources to update affiliate MS&Gs to ensure they reflect the current PPFA standards and are of suitable quality to support good clinical services.

## Tools for Updating and Rolling-Out of Affiliate MS&Gs

PPFA's Medical Services department provides affiliates with a variety of resources to support the local update and roll out of the MS&Gs.

- Update
  - Definition: process by which the affiliates take PPFA MS&Gs and create or update Affiliate MS&Gs. Requires both technical/formatting expertise and medical expertise.
  - Resources
    - Revision Sheets – detail all the important changes/additions/deletions that were made
    - Master List of Files with Revision Dates
    - Tips for Updating
    - MS&G Style Guide
    - One-on-One coaching sessions on the technical/formatting aspects

REL_048430

- Roll out
  - Definition: process by which affiliates distribute and train their staff on the new edition of the Affiliate MS&Gs
  - Resources
    - PowerPoint and video presentation library on relevant topics that are consistent with the PPFA MS&Gs
    - Case Study Exercises
    - Other tracking and training tools

## Practicing within the MS&Gs

Note that the MS&Gs contain both *standards* and *guidelines*. Medical standards are mandated practices and are directed by the bolded word **must**. Statements directed by the word "should" denote a guideline (usually a best practice) that may be included in affiliate practices if desired.

## Administrative Aspects of Clinical Care

As Medical Director, you need to be familiar with administrative aspects of the clinical services provided at your affiliate. Much of this information can be found in the MS&Gs Part 1: Administrative. Among other topics, this part covers

- Detailed information about requirements that must be met for initiating/providing services
- Client education and informed consent
- Personnel requirements including privileging of licensed staff
- Systems for notification and follow-up of abnormal results and referrals

## Privileging of the Medical Director

Like all other clinicians who provide care at an affiliate, the Medical Director must be privileged. This requires an assessment of the Medical Director's clinical competency when they start at the affiliate and this assessment should be repeated on an annual basis as part of the annual performance evaluation. Affiliates may accomplish this assessment in a variety of ways including using an affiliate physician, requesting the assistance of the Medical Director of a nearby affiliate or involving community physicians to perform the assessments. Helpful tools to perform the performance evaluation are available on the intranet here.

REL_048431

App. 0142

# THE PPFA NATIONAL MEDICAL COMMITTEE

The National Medical Committee (NMC) is a standing advisory committee to PPFA. It works most closely with PPFA Medical Services and is charged with

- Providing expertise and guidance
  - related to the content of the *PPFA Manual of Medical Standards and Guidelines*
  - on non-clinical Planned Parenthood policies that affect clinical services
  - on selected affiliate waiver requests and research requests
- Selecting the winner of the Sylvia Clark Award for Creativity in Clinical Services, an annual award that honors a provider or team of providers from a Planned Parenthood affiliate who through their creativity in clinical services have demonstrated commitment to PPFA's mission to ensure access to reproductive and sexual health care for all.
- Serving as an advocate for Planned Parenthood throughout the wider medical community
- Serving as spokespersons to the media when requested by PPFA and acceptable to the NMC member
- Promoting communication and collaboration between Planned Parenthood and medical and other professional disciplines as well as governmental bodies, public health and hospital services, and physicians in private practice

The NMC holds its annual in-person business meeting at the PPFA National Medical Conference.

## Structure of the NMC

The NMC consists of at least 20 and no more than 40 members. Members are volunteers who are elected. They are primarily physicians, scientists, or health professionals in the fields of women's health and primary care. Affiliate Medical Directors and other affiliate clinicians may be elected to the NMC but may not comprise more than 49 percent of the committee. There must be at least one advanced practice clinician on the NMC.

When there are open seats, a call for nominations is sent in the spring. Candidates are typically nominated by a member of the NMC or by PPFA or affiliate staff. The NMC's Nominating Subcommittee chooses a slate of candidates based on the background and expertise of the candidates, the need for representation of certain specialties, and the number of openings available. Not all individuals nominated will make it onto the slate. In consultation with PPFA Medical Services, a Chair and Vice Chair are also nominated. The entire NMC votes upon the slate of candidates. Members are elected for a three-year term and may be eligible for re-election for a second consecutive term.

App. 0143

REL_048432

Voting representatives to the NMC also come from each of the following Planned Parenthood affinity groups:

- Affiliate Chief Executives Council (ACEC) (1) — member organization for affiliate CEOs
- Medical Directors Council (MeDC) (4) — member organization providing support and education for affiliate Medical Directors
- National Patient Services Council (NPSC) (1) — member organization for senior staff responsible for affiliate clinical services

A wide range of national organizations are invited to be liaisons to the NMC to share their expertise and experience with PPFA and also to keep their respective organizations informed as to happenings within PPFA. Each organization assigns an individual to be its representative. Liaisons actively participate in work group meetings but they cannot vote. There are currently approximately 25 active liaison organizations including the American College of Obstetricians and Gynecologists (ACOG), American Society for Colposcopy and Cervical Pathology (ASCCP), American Social Health Association (ASHA), Centers for Disease Control and Prevention (CDC), the Guttmacher Institute, Gynuity Health Projects, National Abortion Federation (NAF), National Association of Nurse Practitioners in Women's Health (NPWH), Society of Family Planning (SFP), and the Society for Adolescent Health and Medicine (SAHM).

## Dissemination of NMC Recommendations to the Federation

Medical Services produces an NMC Summary Report and sends a memo to affiliates that summarizes, item by item, the recommendations made by the NMC. The same information is used to prepare reports for the ARMS Board of Directors and the PPFA Board of Directors. Memos are generally posted shortly after the NMC meeting in the fall. A copy of the memo is posted to the Updates from Medical Services Memos Archive on the intranet.

REL_048433

# REGULATORY AND COMPLIANCE ISSUES

In addition to providing clinical care in accordance with the *PPFA MS&Gs*, affiliate operations must comply with the PPFA Accreditation Indicators as well as all applicable federal, state, and local laws and regulations. Medical Directors should be familiar with their affiliate's clinical policies and procedures to ensure compliance with these requirements. In some cases the Medical Director will participate in writing those policies.

## Accreditation Process

Accreditation is critical to protecting the trademark name and ensuring that affiliates are in compliance with *PPFA Standards of Affiliation*. Accreditation Indicators come directly from the PPFA MS&Gs, PPFA Bylaws, and other regulatory entities. A critical aspect of any successful accreditation program is to define exactly how each indicator is measured in order to promote self-monitoring for compliance and outcome measurement. As of 2010, each indicator now has one or more core competencies or performance outcomes that must be addressed. These components are referred to as the Elements of Performance or EOPs.

The PPFA accreditation process is based on a three year cycle. If an affiliate receives a recommendation for fully accredited status and maintains compliance, an accreditation site visit is conducted every three years. If an affiliate receives a probationary accreditation, a site visit will be conducted within 6-12 months. As Medical Director it is very important to be familiar with the accreditation indicators found on the Accreditation area of the intranet. A training module on the PPFA accreditation process is also available on the Center for Affiliated Learning, an online learning platform maintained by ARMS. If you have any questions about your role in the accreditation process, please contact the National Director, Accreditation and Evaluation Department.

## Regulations Impacting Clinical Care

In addition to the PPFA Accreditation criteria, there are some key regulations and regulatory agencies that affect the clinical operations of all affiliates. They include, but are not limited to

- Occupational Safety and Health Administration (OSHA)
- Clinical Laboratory Improvement Amendment (CLIA)
- Health Insurance Portability and Accountability Act (HIPAA)
- Title X and Title XX
- State Departments of Health

Other state regulations which apply include pharmacy laws and professional practice laws.

REL_048434

## Regulations Impacting Operations Supporting Clinical Care

The provision of high quality clinical care requires support by staff and departments providing services to support that care. Examples include billing, coding, medical record documentation, hiring and contracting of clinicians, interactions with suppliers of pharmaceuticals and medical devices, and client referrals. Though these services are typically performed by staff from multiple departments within an affiliate, the affiliate's Compliance Department and Compliance Officer collaborates with these departments to foster adherence with applicable government regulations and the affiliate's standards for ethical conduct.

For many years, the federal government has encouraged healthcare providers to establish a compliance program that focuses on adherence to regulations applicable to activities supporting the provision of patient care – particularly when that care is reimbursable by Medicare, Medicaid, or other federally-funded programs. The Affordable Care Act now requires that all healthcare providers participating in federally-funded healthcare programs (such as Medicare and Medicaid) establish a compliance program. While the scope of each affiliate's compliance program may vary, the government recommends that at a minimum, the compliance program consists of the following elements:

- Compliance program oversight by a compliance officer, internal compliance committee, and board of directors
- Written, detailed standards of conduct and policies and procedures
- Compliance education and training for employees and contracted individuals (to include clinicians)
- Reporting mechanisms for communicating concerns and suspected violations of applicable laws or internal policies
- Routine auditing and monitoring of compliance-related areas of risk (e.g., billing, coding, clinician contracts)
- Investigation of allegations of non-compliance, with corrective action implemented
- Uniform disciplinary action to properly address non-compliant behavior

The following government agencies and regulations typically apply to most affiliates:

- Office of Inspector General (OIG), Department of Health & Human Services
- Centers for Medicare & Medicaid Services (CMS)
- State Medicaid Agencies

See page 30 for Government Regulations & Examples of Non-Compliant Behavior.

More information about the government's view of the physician's role in compliance is available here.

REL_048435

## COMMUNICATION, RESOURCES, AND SUPPORT

The primary method of communication to Medical Directors from the PPFA National Office, and in particular the Medical Services Department, is via the Medical Directors e-mail distribution list. It is critical that you obtain a Planned Parenthood e-mail address through your affiliate and have it listed in the PPFA Global Address list (GAL) and on your affiliate's profile in the Data Analytics Database (DAD). Due to the potential sensitivity of communications to the Medical Directors distribution list, only those with Planned Parenthood e-mail addresses can be added to the list.

Once you have a Planned Parenthood e-mail address, you may sign up for a PPFA intranet account. The PPFA intranet is a private, secure website that is internal to the Planned Parenthood family. The site is provided as a service to all Planned Parenthood staff. The intranet is divided into subsections that contain data about affiliates, historical information about the organization, and other PPFA-based sites. It also contains information on upcoming events, conferences and trainings, PPFA branding and communications materials, and public policy and advocacy materials. Contact ApplicationSupport@ppfa.org to register for the intranet.

The PPFA Medical Services intranet site is a resource site for Affiliate staff with content developed and/or distributed by PPFA Medical Services. The site includes many resources such as

- Medical Director support materials — the resources include a directory of current Medical Directors, resources for recruitment and orientation of new Medical Directors, information on the Medical Director Mentoring program, and other useful references.
- The PPFA Medical Standards & Guidelines (MS&Gs) — the MS&Gs are posted on this site with supporting resources.
- Medical Conference details — provides information the PPFA National Medical Conference/National Medical Committee Meeting and the annual MeDC Update on Reproductive Health and Medical Leadership. The site includes archived presentations from previous meetings.
- Upcoming Events and Trainings Calendar — a calendar of upcoming events and trainings of special interest to affiliate clinical staff. The events listed include both PPFA hosted events as well as external opportunities
- Updates from Medical Services blog — a communications channel from PPFA Medical services for updates regarding newly released materials, items of note, and important information affecting affiliate medical practice.
- Updates from Medical Services archive — an archive of memos sent to the field from PPFA Medical Services that include important information affecting affiliate medical practice.

REL_048436

ARMS Connect and the Center for Affiliated Learning (CAL) are resources maintained by ARMS, the centralized risk management organization for Planned Parenthood affiliates.  Log into ARMS Connect and the CAL with your Intranet username and password.

The Center for Affiliated Learning (CAL) is an all inclusive online learning and training center available to all Planned Parenthood staff and volunteers.  The CAL's online learning management system, theCAL.org, is a virtual campus that houses eLearning courses and training materials as well as information, scheduling tools and reports for training being conducted throughout Planned Parenthood. It is accessible 24-hours a day, seven days a week and offers more than 500 learning opportunities, including a growing number with continuing medical education (CME) credits. The CAL also offers the ARMS PelvicSim™, a mobile simulation program that provides hands-on training for IUC insertion, basic hysteroscopy, and Essure. Visit www.theCAL.org for more information and available education opportunities.

ARMS Connect provides information and resources on ARMS's programs and services – the National Insurance Program; Risk, Quality, and Patient Safety program, and the Center for Affiliated Learning.  As a service to Medical Directors, ARMS Connect hosts a secure web-based bulletin board for Medical Directors to communicate clinical and other logistical questions and opinions among the group.  You must request access to the bulletin board.  Please contact us at MedicalServices@ppfa.org to request access.

## Medical Directors Council (MeDC)

MeDC is comprised of the Medical Director(s) from each Planned Parenthood affiliate.  The president of MeDC and three regional trustees are voting members of the NMC.  Annual dues are $1,000 and should be paid by your affiliate. The annual MeDC business meeting and dinner are held during the PPFA National Medical Conference. During the meeting members discuss clinical and administrative issues and work on solutions.  The PPFA National Medical Conference and the MeDC dinner are excellent networking opportunities. MeDC also works with Medical Services to produce a CME meeting annually each spring, the MeDC Annual Update on Reproductive Health and Medical Leadership. For more information about this meeting, see page 18. Medical Directors are strongly encouraged to become active members of MeDC.

Members are encouraged to communicate with their colleagues via the ARMS Connect bulletin board.  Most other MeDC communication occurs by e-mail.

REL_048437

Working in conjunction with Medical Services, MeDC members serve as mentors for new Medical Directors. When Medical Services is notified of a new Medical Director, they send that individual a welcome e-mail which includes links to orientation materials and the name of their mentor. Mentor responsibilities include

- Representing PPFA when acting as a mentor. Together the mentor and mentee define and agree to the goals and objectives of the mentoring relationship.

- Listening to the mentee, helping plan strategies, and encouraging exploration of goals/ideas.

- Exchanging information, knowledge and experiences with the mentee.

- Providing feedback, teaching, reinforcing the high standards set by affiliates and PPFA, and acting as a role model.

- Communicating realities and recommending learning and training opportunities, resources, and open doors.

- Ensuring that the following are explained:
  - National Medical Committee (NMC)
  - PPFA National Medical Conference
  - PPFA MS&Gs
  - Medical Directors Council (MeDC)

Associate/Assistant Medical Directors may request a mentor to be assigned based upon availability. Interim Medical Directors are mentored by the Senior Director, Medical Services.

**Regional Medical Representatives**

Affiliates belong to one of three national regions. A Medical Director from each region is elected to be trustee for that region. Your regional trustee serves as a voting member on the NMC and also works with the Medical Services Department to facilitate the orientation and mentoring of new Medical Directors.

**National Patient Services Council (NPSC)**

The NPSC is the Patient Services organization that provides a means to support, network, share ideas, and represent Patient Services across all Affiliates. The NPSC is a resource for Planned Parenthood colleagues having shared interests and facing the same complexities and challenges. The NPSC is headed by a Steering Committee with broad regional representation.

In addition to providing support and a voice for Patient Services, the NPSC also

- Provides a forum for Patient Service Directors to share ideas and collaborate on common issues and challenges

15

REL_048438

App. 0149

- Coordinates the Patient Service Directors Mentoring Program to match new Patient Service Directors with experienced mentors
- Plans and sponsors our Patient Services Affinity Day meeting, aka the Patient Services Retreat, at the National Conference
- Plans the Patient Services workshops for the National Conference
- Represents Patient Service Directors' interests and provides input to PPFA, Affiliate Services, the National Medical Committee, and Special Projects

**Affiliate Chief Executives Council**

The Affiliate Chief Executives Council (ACEC) is an independently established 501(c)(3) membership organization of all the Planned Parenthood affiliate Chief Executive Officers. ACEC works to strengthen PPFA and improve the competence and excellence of affiliate Chief Executives. Eleven CEOs are elected to the ACEC Steering Committee to develop and implement an annual work plan advancing ACEC's mission, including the following objectives:

- Integrate CEOs into ACEC community by connecting incoming CEOs with CEO mentors
- Foster and maintain productive partnerships among CEOs, national staff, national Board members, and affinity groups
- Identify CEO/affiliate needs and provide appropriate resources and information
- Represent affiliate opinions and interests when communicating with PPFA's national office and Board
- Enhance the effectiveness of the Chief Executive - affiliate Board relationship
- Strengthen the ability of affiliates to provide affordable contraceptives and health care

Membership to ACEC is limited to affiliate Chief Executives, either Chief Executive Officers or Executive Directors, who have paid their annual PPFA and ACEC dues. Annual membership dues are raised to support membership meetings and programs as well as ACEC related committee work and membership scholarship opportunities. ACEC hosts three in-person meetings a year at various locations, monthly membership conference calls, and distributes an electronic newsletter on timely issues.

Dues paying members of ACEC are eligible to attend and vote at all ACEC meetings. ACEC members are also eligible to receive scholarship support for ACEC conferences, professional development, and committee participation.

16

REL_048439

# MEETINGS, CONFERENCES, AND OTHER CONTINUING EDUCATION OPPORTUNITIES

## PPFA National Medical Conference

Each fall, PPFA Medical Services holds a federation-wide meeting, the PPFA National Medical Conference. The conference consists of clinical issues presentations, interactive discussion sessions, and the business meetings of MeDC and the NMC. We strongly encourage you and your clinical staff to attend. It is a key opportunity to hear valuable updates from PPFA and the medical field, interact with your fellow Medical Directors, participate in collegial networking and social opportunities, and receive free CME/CEUs.

Sessions specifically for Medical Directors include the annual MeDC business meeting and dinner. Additionally, there is a special orientation meeting which not only provides an excellent introduction for new Medical Directors but has also been very useful to established Medical Directors.

There is no fee for Planned Parenthood staff and volunteers to attend the PPFA National Medical Conference. Announcements and advertising for the meeting usually begin by late spring.

## The North American Forum on Family Planning

The PPFA National Medical Conference is held in conjunction with the North American Forum on Family Planning (the Forum), which is produced jointly by PPFA and the Society of Family Planning (SFP). SFP advances family planning research and education, providing evidence-based insight to improve clinical care in the areas of contraception and abortion. SFP also seeks to cultivate a collaborative and supportive environment to foster scholarly activity and leadership in the area of reproductive health and family planning.

The Forum is the primary scientific and educational family planning conference for medical and social scientists, clinical providers and staff, and features CME-accredited sessions that address a full range of services and research interests. This gathering represents the intersection of leaders and practitioners in family planning and abortion who are seeking to engage the most current and innovative dialogue related to safe, convenient, high-quality reproductive health care through research, discussion, and sharing of robust evidence-based practice recommendations.

REL_048440

PPFA works diligently to ensure that presentations are of interest and relevant to the Planned Parenthood community. Medical Directors are strongly encouraged to attend and in turn should support and encourage affiliate clinical staff to attend. There is a registration fee to attend the Forum; Planned Parenthood staff and volunteers qualify for a discounted rate.

**MeDC Annual Update on Reproductive Health and Medical Leadership**

MeDC holds an annual CME conference on reproductive health and medical leadership in the spring. Another excellent opportunity for networking with Medical Director colleagues and PPFA National Office staff, this meeting provides updates on reproductive health topics that are core to the role of the affiliate Medical Director as well as management and leadership training. There is no cost for Medical Directors to attend. In addition, one clinician in a leadership role from each affiliate may attend for a nominal fee.

REL_048441

# WORKING WITH THE PPFA NATIONAL OFFICE

## Health Care Division

The Health Care Division (HCD) fosters collaboration and integrates divisions in the national office that support affiliates' health care operations. HCD continues to undergo reorganization and transformation to provide better support to the affiliates. The HCD division is made up of five separate teams: Education, Medical Affairs, Health Care Innovation, Affiliate Services, and Health Outcomes and Performance Operations.



**Education** provides high leverage technical assistance to affiliates with the goal of strengthening education departments and encouraging more rigorous program evaluation. Technical assistance efforts include customized support to individual or groups of affiliates as well as professional development activities that are available to all affiliates.

**Medical Affairs** serves as a knowledge resource and consultant for affiliates as well as other divisions within the national office. Medical Affairs is made up of two departments that each specialize in different support for affiliates. The departments within Medical Affairs are Consortium of Abortion Providers (CAPS) and Medical Services.

19

REL_048442

- **CAPS** — The CAPS mission is to improve access to high-quality abortion care by encouraging and assisting Planned Parenthood affiliates to start or expand the provision of abortion services by offering training and consultation in several areas of abortion care. CAPS provides assistance with the implementation, expansion and improvement of affiliate abortion services with little or no cost to affiliates through technical assistance and/or e-learning programs. Additionally, CAPS collects information on medical abortion adverse events, administers the Justice Funds, and coordinates Provider Share Workshops.

- **Medical Services** — The Medical Services Department is PPFA's primary connection to affiliate physicians and clinical staff. The Senior Director, Medical Services is particularly interested in developing and maintaining relationships with affiliate medical directors. Medical Services is also actively involved in the recruitment and orientation of affiliate medical leadership and clinical staff.

  - The Medical Services Department is dedicated to support affiliates' delivery of high-quality health care. To do this they pursue three primary goals:
    - o Produce evidence-based Medical Standards and Guidelines
    - o Support affiliate implementation of the Medical Standards and Guidelines
    - o Collaborate with internal and external partners to enhance affiliate delivery of care
  - Production of evidence-based Standards and Guidelines - The Medical Services Department develops the PPFA MS&Gs to ensure the delivery of consistent, quality medical care by PPFA affiliates. It is not intended to create a standard of care. Because PPFA's belief in inclusion and diversity is a strongly held value, the MS&Gs promote delivery of culturally and linguistically competent services to the diverse communities we serve. See page 5 for details on the development of the MS&Gs.
  - Clinical resources and educational opportunities - The Medical Services Department develops comprehensive education programs for affiliate clinicians and non-licensed staff designed to update and improve affiliate medical services. These programs may be presented at the PPFA National Medical Conference, the *Forum*, hosted on the Center for Affiliate Learning (CAL) or distributed by Medical Services using various other channels. Some of the most recent resources that have been developed include
    - o The Clinical Breast Exam Train-the-Trainer program and accompanying Clinical Breast Exam Trainer Toolkit and Clinician Workbook, an initiative to increase clinician knowledge and comfort providing breast health services
    - o EC4U, a three-phase campaign to educate affiliate clinical staff and clients so together they choose the most effective methods of emergency contraception
    - o Miscarriage management resources to orient or enhance miscarriage services at an affiliate, including Miscarriage: A Toolkit for Providers, prepared in collaboration with CAPS, CAL courses, and recordings from the National Medical Conference.

20

REL_048443

**Health Care Innovation** focuses on identifying strategies and opportunities to generate new economic opportunities through new services, products, and delivery models that are critical to the Planned Parenthood mission to serve clients across the country.

- **Business Model Evaluation and Development** seeks to build organizational capacity and a culture of innovation across the Federation. Included in this initiative is developing the Planned Parenthood Accelerator to steward innovation across the Federation, creating resources and tools to support affiliates considering new business models, including expansion of services, and evaluating changes in business models to provide quick feedback to the Federation on successful strategies.

- **Online Health Services** works to give potential and current patients increased accessibility to Planned Parenthood's health care services. At the time of this publication, through pilot projects at two affiliates (Planned Parenthood of the Great Northwest and Hawaiian Islands and Planned Parenthood of Minnesota, North Dakota, South Dakota), patients are able to connect with a clinician via desktop or mobile device in real time video visits. The pilot services includes birth control (the pill, the patch, and the ring) and STI testing and treatment (for Chlamydia and Gonorrhea). In June 2015, all of the California affiliates rolled out a mobile app that allows for patients to get an STI test and treatment for chlamydia and gonorrhea.

**Affiliate Services/Business Operations Team** acts as the consulting arm of the Health Care Division of PPFA, working with affiliates to provide support in a number of areas including clinical operations, finance, governance, human resources, IT, leadership development, revenue cycle, restructuring, and security. ASD/BOT works to drive improvement in affiliate performance through effective, outcomes focused, consulting engagements.



REL_048444

- **Clinical Operations** serves as a resource on issues pertaining to medical practice, health center efficiency and productivity, staffing models and health services merger integration and supports the following programs:
  - Move the Dot / Move the Dot 2.0
  - Patient Activity Tracker (PAT)
  - Online Appointment Scheduling
  - Online Health Services
  - Productivity and Abortion Cohorts
  - Southern Access Project

- **Financial Operations** supports Affiliate Financial Operations in the following areas:
  - Financial turnaround (ADA Affiliate Financial Assessment and Assistance Process) for affiliates in declining financial health.
  - Assessments of Financial Operations and Financial Health & Performance.
  - Accounting standards and metrics
  - Mergers/Restructuring - Financial assessments, financial integration and support to board merger committee around due diligence and pro formas.

- **Governance** offers support to affiliate boards of directors which includes:
  - Governance consulting to strengthen board composition and diversity, enhance board performance, and support governance integration during merger
  - Board education at the National Conference and via webinars to enhance board performance and build board member skills
  - Partnership in Leadership, a weekend long conference, to strengthen the partnership between the CEO and board chair in leading the affiliate
  - Resources on CEO succession planning and resources and consultative guidance for affiliate boards undertaking CEO transition and search

- **Human Resources** provides limited HR resources to affiliates in the following areas:
  - Contracted HR professionals will provide input for PPFA initiatives and engagements with affiliates requiring HR expertise, including strategic consolidation and integration requirements post merger.
  - Direct HR guidance and CEOs, Board Chairs, and affiliate HR staff will be available on a very limited basis through December 2015, after which time the on-going need for these services will be re-evaluated.

REL_048445

- PPFA will fund 50% of the cost to renew a cost-share contract with PayScale through 2018. PayScale provides market specific compensation data and additional useful tools.
- For any questions related to the new structure of HR consulting, please reach out to Ellen Gertzog (ellen.gertzog@ppfa.org).

- IT **Operations** offers support to affiliate IT professionals in the following areas:
  - assess and advise affiliates regarding IT infrastructure, staffing and security
  - crisis management

- **Leadership Development** provides leadership development support to affiliates including:
  - Resources and consultative guidance for affiliate boards undertaking CEO transition and search
  - Onboarding and orientation for new CEOs in partnership with ACEC

- **Move the Dot 1.0** was a broad and deep consulting engagement with affiliates designed to drive improvement in the following areas: clinical operations, finance, human resources, information technology, and revenue cycle. For more information on the outcomes of this program, check out the final Move the Dot Report here.

- **Move the Dot 2.0** is a new program that uses data analysis to drive targeted operational interventions with the goal of reducing patient throughput time in the health center. The Patient Activity Tracker (PAT) is a tool to measure and report on throughput times. Team Centered Patient Care (TCPC) is an intensive intervention targeting health centers with low productivity, high unavailability, and long throughput times. Click here for MTD 2.0 resources.

REL_048446

- **Revenue Cycle** supports Affiliate Revenue Cycle Operations and acts as a resource on issues pertaining to the following:
  - Billing and coding
  - Front and back office processes
  - EPM optimization
  - ICD-10 transition

- **Security** provides technical assistance to affiliate staff responsible for managing security. Among the services offered are
  - sample policies, manuals and procedures
  - security site reviews
  - on-site crisis response
  - opposition research
  - security advisories and alerts, as needed
  - incident reporting system and review
  - monthly publication of key affiliate security incidents (HotSpots)
  - annual security conference for educational development
  - quarterly webinars
  - e-learning modules around security issues
  - management of affinity group listserv
  - CEO and security director orientations
  - grants to affiliates for security purposes

- **Strategic Restructuring** offers support to affiliates exploring various forms of restructuring including collaboration and merger. This support includes: analysis to determine if restructuring is the most strategic option for the affiliate; assistance in identifying the most appropriate partner; and tools, facilitation, and support during the exploration and implementation process.

24

REL_048447

**Health Outcomes and Performance Optimization** helps affiliates operate efficiently and effectively through a focus on research, data, and medical standards while supporting affiliates to meet those standards. A key priority is to expand the collection of standardized patient data in the Quality Information Warehouse and to ensure that affiliates can get real value from the comparative data across multiple levels of the federation.

- **Accreditation and Evaluation Department (AED)** oversees the PPFA accreditation process. For more detailed information about the accreditation process see the PPFA Accreditation Process on the CAL or refer to the **Accreditation Process FAQs** on the Intranet.

- **Business Intelligence (BI)** is a team of skilled data analysts working directly with affiliates, other PPFA departments and our shared data. Surveys and reports are administered through BI, as well as larger ad hoc requests. Data are collected and aggregated quarterly and annually at a minimum, then stored in the Data Analytics Database (DAD). BI maintains the DAD. Contact BI via e-mail at data.analytics@ppfa.org.

- **Clinical Quality Improvement (CQI)** aims to utilize electronic data captured by affiliates to initiate or expand quality improvement projects. The team works with Voxent to develop and maintain reports on clinical quality measures, provides technical assistance and support to affiliates in the CQI program to track and use data, and creates opportunities for sharing best practices across the federation.

- **Research** expands and enhances research across the federation and provides technical support to affiliate and national staff engaged in research. The department comprises a multi-disciplinary team including clinical and public health researchers and project managers and
  - Provides capacity-building for affiliate research departments, including technical assistance, training webinars, templates, and a research and clinical quality newsletter.
  - With input from key organizational stakeholders including ARMS, Litigation and Law, and others, reviews and approves approximately 70 affiliate studies per year.
  - Coordinates and oversees affiliate-based clinical trials, including industry- and grant-funded studies, and works to identify new research opportunities and sponsors for collaboration. Manages the Clinical Research Network (CRN), a network of 32 affiliate partners.
  - Convenes the CRN Advisory Group, a group of affiliate research leaders, to guide the organization's research portfolio and assist in training and capacity-building for all affiliates.

REL_048448

App. 0159

- Conducts original research using electronic health records data and through investigator-initiated research or co-investigator participation with external research partners.
- Collaborates with other PPFA departments through cross-divisional research, providing technical assistance and serving as an internal evaluator of Planned Parenthood programs.

## Affiliates Risk Management Services Inc. (ARMS)

### Mission Statement
*Affiliates Risk Management Services, Inc. provides comprehensive, stable, and affordable insurance, educational, and risk and quality management services to assist its clients to enhance patient safety, improve health outcomes, and minimize the risk of loss.*

ARMS is the centralized risk management organization for the affiliates of the Planned Parenthood Federation of America, Inc. ARMS was formed as a separate not-for-profit organization in 2001, and appointed as the administrator of the National Insurance Program and the Risk, Quality, and Patient Safety Program. ARMS provides critical insurance, risk and quality management, and educational and training services to all Planned Parenthood affiliates. Some of these services include

- designing and implementing the National Insurance Program (NIP), including the purchase of insurance coverages
- directing the Risk, Quality, and Patient Safety Program
- producing resources, tools, and manuals, including *Risk Management: The Path to Patient Safety*, the *Infection Prevention Manual*, and the *Emergency Care Manual*
- publishing the *ARMS Reach* newsletter and *A Call to ARMS* e-Blast
- maintaining ARMS Connect (www.armsconnect.org) and the Center for Affiliated Learning (CAL)
- facilitating the Federation Patient Safety Committee to review trends of incidents and affiliate issues
- working collegially with national office departments, particularly Medical Affairs, to address clinical issues
- providing enhanced on-and off-site consultative services and assistance.
- coordinating certificates of insurance
- providing insurance liability claims administration and management, including the coordination of legal defense
- administering STARS Audit, an online auditing program designed to automate audit processes, from inspection and review to action planning and tracking and the Affiliated Incident Management System (AIMS), the online incident reporting system
- administering the Credentials Verification Program (Medversant)

26

REL_048449

- coordinating third party requests for credential verification
- managing the Medical Directors' discussion board located on ARMS Connect and offering a secure environment for discussion of sensitive issues among Medical Directors.

Many of these programs and services directly impact the role of affiliate Medical Directors. For instance, every licensed health care professional performing patient examinations is required to undergo credentials verification as promulgated by ARMS, and all affiliate staff, independent contractors, and volunteers are covered by the National Insurance Program policies as applicable to their functions in the affiliate.

Two of the key Standards of Affiliation involve ARMS services. These are

- Each Affiliate shall participate in the Risk, Quality, and Patient Safety Programs approved by the Membership.
- Except to the extent state law requires otherwise, each Affiliate shall participate in the National Insurance Program approved by the Membership. If an Affiliate is seeking to provide an approved specialty service, and insurance for that service is not offered by the National Insurance Program, the Affiliate shall obtain insurance elsewhere and submit a statement supporting the sufficiency of such coverage. Sufficiency of such coverage shall be determined by the ADA Committee or its designee.

Medical Professional Liability Coverage through the National Insurance Program covers affiliates, their staff and all medical professionals providing PPFA-approved services at a Planned Parenthood location (or in limited circumstances, off-site locations) to Planned Parenthood clients. Currently the National Insurance Program provides total medical professional liability insurance limits of $20 million that are divided into several layers of coverage. These limits are subject to a $3 million per occurrence cap on each claim.

Visit ARMS Connect to view detailed descriptions of the many programs and services of ARMS.

**Katherine Dexter McCormack Library** (Communications/Media Division) — Located in the New York office, this library is a wealth of old and new reproductive health care, sexuality, and women's health information. The Katherine Dexter McCormack Library can be reached at 212-261-4716.

27

REL_048450

App. 0161

## CONTACT LIST

| PPFA National Offices | New York 212-541-7800 | Washington, DC 202-973-4800 |
|---|---|---|
| **Medical Affairs** | **Raegan McDonald-Mosley** Chief Medical Officer Raegan.McDonald-Mosley@ppfa.org 212-261-4799 | |
| **Medical Services Department** For general inquiries, please e-mail MedicalServices@ppfa.org. Click here for detailed contact information for all Medical Services Staff. | **Deborah Nucatola, MD, Senior Director** Deborah.Nucatola@ppfa.org 212-261-4632 **Karen Shea, MSN, WHNP-BC, Director, Medical Standards** Karen.Shea@ppfa.org | 212-261-4791 | **Vikky Graziani, Administrative Manager** Vikky.Graziani@ppfa.org | 212-261-4724 |
| **Research Department** | **Julia Kohn, PhD, MPA National Director** Julia.Kohn@ppfa.org | 212-261-4636 **Johanna Morfesis, MSN, WHNP-BC, Director of Research** Johanna.Morfesis@ppfa.org | 212-261-4703 | **Zoe Unger, Research Program Manager** Zoe.Unger@ppfa.org | 212-261-4702 |
| **Consortium of Abortion Providers (CAPS)** | **Deborah VanDerhei, National Director** Deborah.VanDerhei@ppfa.org 206-579-0475 | **Aisha Russell, Administrative Manager** Aisha.Russell@ppfa.org | 212-261-4530 |

REL_048451

App. 0162

## CONTACT LIST

| | |
|---|---|
| Affiliate Risk Management Services (ARMS) | **Jill Cobrin, Esq., President and CEO** Jill.Cobrin@armsinc.org \| 212-261-4706<br><br>**Bernadette Dono, Esq., Director of Insurance** Bernadette.Dono@armsinc.org 212-261-4717 | **Evelyn Intondi, CNM, Director of Risk, Quality and Patient Safety** Evelyn.Intondi@armsinc.org 212-261-4306<br><br>**Sara Voit, Director of Learning, PhD, MSPH** Sara.Voit@armsinc.org \| 212-261-4494 |
| Accreditation and Evaluation | **Emily Schifrin, National Director** Emily.Schifrin@ppfa.org \| 202-973-4879<br><br>**Berta Portigiani, Director** Berta.Portigiani@ppfa.org \| 631-286-3507 | **Deborah McHugh, WHNP-BC, MHA, Senior Director** Deborah.McHugh@ppfa.org 212-261-4633<br><br>**Jennifer Mroczek, Manager, Projects and Administration** Jennifer.Mroczek@ppfa.org 212-261-4673 |
| Security | **Kelley Hardwick, Chief Security Officer** Kelley.Hardwick@ppfa.org 347-541-1010 (c) 212-261-4682 (o)<br><br>**Warren Glover, Director, National Security** Warren.Glover@ppfa.org 347-501-0256 (c) 212-261-4318 (o) | **Ellen Gertzog, Senior Director, Affiliate Administrative Operations & Security** Ellen.Gertzog@ppfa.org \| 917-494-8977<br><br>**Krista Noah, Director, Affiliate Security** Krista.Noah@ppfa.org \| 212-261-4517 |

29

REL_048452

App. 0163

# GOVERNMENT REGULATIONS & EXAMPLES OF NON-COMPLIANT BEHAVIOR

| Government Regulation | Examples of Non-Compliant Behavior |
|---|---|
| **False Claims Act (Federal and State)**<br>*Improper billing to Medicare & Medicaid*<br><br>Violation results in fines of $5k - $11k per claim, plus treble damages (repayment of three times the amount improperly received) | ▪ Billing for services not provided<br>▪ Billing for a higher level of service than actually provided<br>▪ Billing services performed by a nurse practitioner or physician assistant using the physician's ID – in order to seek higher reimbursement or because the non-physician practitioner cannot bill Medicare or Medicaid |
| **Federal Anti-Kickback Statute**<br>*Improper remuneration for referrals of patients, drugs, or health services covered by Medicare or Medicaid* | ▪ Receipt or payment of cash, items of significant value, or the opportunity to earn money in exchange for referring a patient, or using or referring a medical product/service reimbursable by Medicare or Medicaid<br>▪ Routinely foregoing attempts to collect co-pays or co-insurance from patients<br>▪ Acceptance of a charitable donation from a birth control manufacturer in exchange for using the manufacturer's product<br>▪ Accepting an IUD manufacturer's offer of a consulting arrangement or all-expense paid trip to the Super Bowl in exchange for using or referring the manufacturer's product.<br>▪ A health center paying a contracted Medical Director a rate exceeding fair market value, in exchange for the Medical Director's referral of patients to Planned Parenthood |
| **Stark Law**<br>*Physician self-referral, based on a physician's financial relationship in a medical product or service* | ▪ A physician routinely refers patients to a radiology  center partially owned by the physician, without advising the patient of her ownership in the facility<br>▪ A physician recommends the use of a birth control manufactured by the company where his partner is Vice-President of Sales |
| **HIPAA**<br>*Privacy and security of protected health information (PHI)* | ▪ Employees and physicians share personal passwords to systems containing PHI<br>▪ PHI is transmitted via email without encryption<br>▪ PHI is stored on laptops and thumb drives without being encrypted<br>▪ The facility does not have a designated Privacy Officer |

30

App. 0164

REL_048453

# GOVERNMENT REGULATIONS & EXAMPLES OF NON-COMPLIANT BEHAVIOR

| Government Regulation | Examples of Non-Compliant Behavior |
|---|---|
| **Government Exclusion and Sanctions Lists** *Individuals and entities currently on the OIG Exclusion List cannot provide services that will be billed to Medicare or Medicaid. Claims submitted to Medicare or Medicaid for services rendered by an excluded party are violations of the False Claims Act.* *An entity hiring or contracting an individual currently excluded will be assessed a $100k civil fine.* | ▪ The facility does not check the OIG Exclusion List to determine the exclusion status of current employees and contracted individuals ▪ The facility determined that a physician is currently excluded and is allowing her to continue treating patients, with her services billed under another physician |

*Concerns about adherence with the above regulations should always be addressed with the affiliate's compliance officer.*

31

REL_048454

# EXHIBIT 12

App. 0166

**O'Melveny**

O'Melveny & Myers LLP
1999 Avenue of the Stars
8th Floor
Los Angeles, CA 90067-6035

T: +1 310 553 6700
F: +1 310 246 6779
omm.com

File Number: 0674061-00003

September 9, 2022

**Leah Godesky**
D: +1 310 246 8501
lgodesky@omm.com

**BY EMAIL**

Andrew Stephens
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746

Dear Andrew:

Pursuant to the Court's August 25, 2022 Order, Defendant Planned Parenthood Federation of America, Inc. ("PPFA") is providing amended responses to Relator's First (No. 7) and Second (Nos. 2-3) Requests for Production, and supplementing its production in response to those requests with documents bearing Bates numbers PPFA00036309 through PPFA00349922. You will shortly receive a link and log-in information to a website that is hosting these documents. Under Paragraph 2(a) of the July 25, 2022 Protective Order, 9,133 documents are designated as containing "Confidential Information." 55,207 documents are designated "Confidential Attorney Eyes Only Information" under Paragraph 2(b) of the Protective Order.

After the Court's August 25, 2022 order on Relator's motion to compel, PPFA immediately began collecting documents for a supplemental production, with more than 275k custodial and non-custodial documents initially collected and processed. The 16 custodians from whom PPFA collected, processed, reviewed, and produced data are identified in Table 1 of Exhibit A. In collecting electronically stored information, PPFA used the search terms listed in Table 2 of Exhibit A. To meet the Court's September 9, 2022 production deadline, and as PPFA previously informed Plaintiffs, PPFA utilized a combination of individual-document review and a TAR/Continuous Active Learning review using Brainspace as the tool. Thousands of documents, across both diversity and stratified samples were used to train the model. PPFA assessed model stability using statistically drawn Control Set and Validation samples and established a cut-off score. All documents above the cut-off score and their respective families were screened for privilege and confidentiality before production.

PPFA will provide a privilege log as soon as practicable. Under Paragraph 6 of the Protective Order, the inadvertent failure to designate or withhold any information as confidential or privileged will not be deemed to waive the claim of confidentiality or privilege. Consistent with that, PPFA reserves the right to designate at a later date any confidential or privileged information inadvertently produced or inadvertently not appropriately designated as confidential. Due to the inclusion of two attorney custodians and the substantial volume of documents in this production, PPFA may supplement its production with documents currently withheld as privileged if they are downgraded during the logging process.

App. 0167

O'Melveny

PPFA reserves all rights, privileges, and objections.

Very truly yours,

Leah Godesky

_cc:_
Tirzah Lollar, et al.
ARNOLD & PORTER LLP
Tirzah.Lollar@arnoldporter.com

Raymond Winter, et al.
OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Raymond.Winter@oag.texas.gov

2

## EXHIBIT A

### Table 1

| Custodian Name | Title |
|---|---|
| Vickie Barrow-Klein | Executive Vice President, Chief Operating Officer, and Chief Financial Officer |
| Meagan Cavanaugh | (Former) National Director, Affiliate Services |
| Kim Custer | Executive Vice President and Chief Federation Engagement & Impact Officer |
| Tamara Kramer | Director, Health Care Investment Program |
| Cecile Richards | (Former) President, CEO |
| Stephanie Shaw | (Former) Strategic Manager for Health Finance |
| Emily Stewart | (Former) Vice President of Public Policy |
| Teri Trivisonno | Vice President, Health Care Operations |
| Kelley Wall | National Director, Health Care Operations |
| Eric Ferrero | (Former) Vice President, Communications |
| Adrienne Verilli | Vice President, Communications & Culture |
| Emily Shifrin | National Director, Accreditation |
| Gillian Dean | (Former) Chief Medical Officer |
| Krishna Upadhya | Vice President, Quality Care and Health Equity |
| Carrie Flaxman | Senior Director, Public Policy Litigation & Law |
| Jennifer Sandman | Senior Director, Public Policy Litigation & Law |

**Table 2**

| |
|---|
| Medicaid and (LA or TX or Louisiana or Texas) |
| "@ppgulfcoast.org" or "@ppgt.org" or "@ppsouthtexas.org" |
| "Gulf Coast" or gulf /2 coast |
| "Greater Texas" or greater /2 Texas |
| "South Texas" or south /2 Texas |
| "Cameron County" or Cameron /2 County |
| "San Antonio" or San /2 Antonio |
| Ken or Kenneth or (Ken! /2 Lambrecht) |
| Jeff or Jeffrey or (Jeff! /2 Hons) |
| Melaney or (Melaney /2 Linton) |
| Lambrecht |
| Hons |
| Linton |
| PPGT |
| PPGC |
| PPST |
| PPCC |
| PPSA |

# EXHIBIT 13

Affiliate Defendants' Search Term Report - Texas and Relator's First Sets of RFPs
September 7 2022

| CUSTODIAN* | DATA PROCESSED | DOCUMENTS REMOVED THROUGH CULLING (transfer files, system files) | DOCUMENTS REMOVED THROUGH DE-DUPLICATION | SEARCH TERM HITS PROMOTED TO REVIEW | | | | | | RECORDS PRODUCED | RECORDS WITHHELD FOR FURTHER PRIVILEGE REVIEW & LOGGING |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | FILES | FILES | FILES | FILES | EMAIL | EMAIL ATTACHMENT | EMBEDDED FILES | CALENDAR APPT | CALENDAR ATTACHMENT | FILES | FILES |
| Bascarg, Piotr | 124,180 | 0 | 2,985 | 9,423 | 2,016 | 2,174 | 311 | 25 | 44 | 73 | 136 |
| Fewer, Debra | 13,551 | 0 | 0 | 2,163 | 1,292 | 987 | 12 | 28 | 13 | 623 | 34 |
| Kretsinger, Amanda | 143,521 | 0 | 2,027 | 13,659 | 2,793 | 4,305 | 1,570 | 180 | 168 | 329 | 141 |
| Petro, Jeffrey | 46,317 | 0 | 859 | 3,684 | 1,724 | 1,711 | 126 | 46 | 61 | 7 | 136 |
| Lambrecht, Ken | 403,544 | 202 | 14,074 | 22,035 | 10,631 | 14,371 | 808 | 113 | 95 | 10 | 88 |
| Linton, Melaney | 118,400 | 0 | 6,101 | 6,086 | 3,242 | 2,108 | 71 | 93 | 290 | 25 | 123 |
| Luck, Kathy | 51,184 | 0 | 398 | 5,711 | 958 | 705 | 13 | 33 | 13 | 8 | 14 |
| McKinney, Sheila | 473,044 | 111 | 73,606 | 44,761 | 17,039 | 2,553 | 2,313 | 207 | 302 | 225 | 130 |
| TOTAL | | | | | | | | | | 1,292 | 918 |

| NON-CUSTODIAL DATA | FILES | FILES | FILES | FILES | EMAIL | EMAIL ATTACHMENT | EMBEDDED FILES | CALENDAR APPT | CALENDAR ATTACHMENT | FILES | FILES |
|---|---|---|---|---|---|---|---|---|---|---|---|
| [name] | 54 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 54 | 0 |
| [PPD] | 6,738 | 0 | 27 | 0 | 0 | 0 | 0 | 0 | 0 | 4,205 | 0 |
| [PHD] | 144 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 131 | 0 |
| [PFS] | 1,421 | 0 | 198 | 65 | 0 | 0 | 0 | 0 | 0 | 1,129 | 0 |
| | | | | | | | | | | 5,548 | |

*Custodian value identifies a single
custodian (custodian metadata field),
not all custodians included on the
communication (custodian/s and
Expecustodian metadata fields)

App. 0172

**DATE CULL January 31, 2011 to January 6, 2022**

| Search Term | Total Documents Hit | Unique Hits |
|---|---|---|
| Medi-caid | 8 | 0 |
| hhs.tx.gov | 0 | 0 |
| dhh.Louisiana.gov | 31 | 0 |
| Wachino | 18 | 0 |
| Kleibert | 3 | 1 |
| DHH | 415 | 146 |
| "qualified provider" | 603 | 4 |
| FFS | 785 | 76 |
| "provider agreement" | 1,410 | 234 |
| HHSC-OIG | 530 | 0 |
| MCO | 1,678 | 54 |
| Overpayment | 1,817 | 109 |
| "Cecile Richards" AND (termination OR medicaid OR texas OR louisiana) | 6,862 | 3,592 |
| "grace period" | 1,163 | 254 |
| "en banc" | 1,505 | 75 |
| repay* | 3,367 | 1,174 |
| revocation OR revoke | 3,510 | 575 |
| "Fee for service" OR fee-for-service | 2,905 | 530 |
| OIG | 5,174 | 1,112 |
| TRO | 2,926 | 731 |
| Centers w/5 (Medicare OR "Medicaid services") | 4,569 | 5 |
| Recoup* | 2,318 | 431 |
| "Managed care" | 11,138 | 2,335 |
| "fifth circuit" | 5,127 | 1,026 |
| HHS | 12,794 | 2,452 |
| TMHP | 5,336 | 1,431 |
| HHSC | 7,265 | 897 |
| CMS | 12,607 | 3,525 |
| Health w/2 "human services" | 15,950 | 3,079 |
| injunct* | 11,138 | 2,284 |
| (Medicaid AND (enroll* OR participat* OR eligibil* OR accred* OR submit* OR submission OR receiv* OR receipt OR terminat* OR qualif* OR refund*)) | 42,726 | 25,120 |
| | | 51,252 |

# EXHIBIT 14

App. 0174





App. 0175

# EXHIBIT 15

App. 0176

# JEFFREY L. JOHNSON

12851 Foster St, Overland Park, KS 66213  |  jjohnson@quantumediscovery.com
Computer Forensics and Electronic Discovery

## Summary

During his 22-year career in legal discovery, Mr. Johnson has managed the electronic discovery aspects of a wide range of litigation and regulatory investigations.  His early work as a litigation analyst with Shook, Hardy & Bacon led to senior software design and leadership roles in eDiscovery automation and computer forensics.  As a consultant, he has provided counsel with guidance in major product liability, fraud, commercial, employment, contract, antitrust, trademark, and intellectual property disputes.  As computer forensics and e-discovery expert, Mr. Johnson has collected and analyzed evidence from hundreds of sources ranging from computer hard drives to web-based ESI repositories. Mr. Johnson has supported the role of Special Discovery Master (see enclosed "Jeff Johnson Recommendation Letter (Special Master).pdf") as a neutral third-party expert.

## Certifications

### Current

Certified Computer Examiner (CCE) - International Society of Forensic Computer Examiners

### Past

CIPT (Certified Information Privacy Technologist) - The International Association of Privacy Professionals
ACE (Access Data Certified Examiner) - Access Data/Exterro

## Articles and Publications

Johnson, Jeffrey.  "Seven Elements of Bulletproof Internal Investigations".  Ingram's Magazine. Volume 40, Issue 4: April 2014.

Johnson, Jeffrey.  "The Proportionality Triangle – A Strategic Model for Negotiating E-Discovery". ABA E-Discovery and Digital Evidence Journal.  Volume 4, Issue 1:  Winter 2013.

Babcock, Brent and Johnson, Jeffrey.  "Business Databases:  Potential E-Discovery Bonanzas." Managing Intellectual Property Magazine.  managingip.com:  July/August 2011.

Johnson, Jeffrey.  "The Proportionality Triangle:  A Strategic Model for Negotiating Proportional E-Discovery Responses".  The Metropolitan Corporate Counsel.  January 2013, P. 27.

Johnson, Jeffrey.  "Doing De-Duping Justice".  ALSP Update Newsletter.  Volume 3, Issue 8: August 2009.

App. 0177

**Select Testimony**

*Applied Medical Resources Corporation et al v. Ethicon Endo-Surgery*
Case Number:  2:09-CV-3605 PA (VBKx)
Court:  United States District Court for the Central District of California

*Dernovish et al v. AT&T Operations, Inc.*
Case Number:  CV 09-00015-ODS
Court:  United States District Court for the Western District of Missouri

*D2K, INC. d/b/a Suzuki of Huntsville, Shoals Suzuki, Inc., Varsity Suzuki, Inc., and Gary Linam, v. American Suzuki Motor Corp.*
Case Number:  CV 09-S-2436-NE
Court:  United States District Court for the Northern District of Alabama

*Stephen A. Oliver, et al. v. Mazda North American Operations, Inc.*
Case No: 0916-CV06023
Court:  Circuit Court of Jackson County, Missouri

App. 0178



BRYAN CAVE LLP  One Kansas City Place, 1200 Main Street, Suite 3800, Kansas City, MO 64105-2122

T: 816 374 3200  F: 816 374 3300  **bryancave.com**

James Wicks
Direct: 816/374-3386
Fax: 816/855-3386
james.wicks@bryancave.com

May 2, 2016

Re:  Recommendation of Jeffrey L. Johnson of Quantum eDiscovery

To Whom It May Concern:

I am Counsel in the law firm of Bryan Cave, LLP, in the firm's Kansas City, Missouri office.  I received my law degree from Harvard Law School in 1987 and practiced law for a number of years in New York City.  I have been with Bryan Cave's Kansas City office since 2007.

On October 6, 2014, the Circuit Court of Jackson County, Missouri, at Kansas City entered an order appointing Bryan Cave partner Robert M. Thompson a Special Master in a civil case captioned *USA 800, Inc. v. Republic Telcom Worldwide, LLC*, Case No. 1316-CV17151.  USA 800 had sued Republic for payment on a service agreement under which USA 800 was to provide call center services for Republic.  The agreement also required USA 800 to record all calls it answered for Republic.  The October 6, 2014 order gave Mr. Thompson authority to resolve all outstanding discovery disputes in the case, the foremost of which was USA 800's inability to respond to Republic's discovery requests seeking information about when a number of the calls USA 800 had recorded for Republic had been purged and whether they could be recovered.

I assisted Mr. Thompson to perform his Special Master tasks.  Our first step was to seek out the help of Jeff Johnson and Quantum, e-discovery and computer forensics experts who were highly recommended by other lawyers in my firm.  I worked closely with Mr. Johnson for a number of months, and I found his work to be meticulous, painstaking, and thorough.  In the end, Mr. Johnson and Quantum were able to identify records of 16 million customer calls and 6.6 million deleted and fragmented .WAV files of calls on an image of USA 800's server, and Mr. Johnson was able to identify a significant portion of those calls as having been received on behalf of Republic.

Mr. Johnson uploaded the pertinent files and a handful of usable audio files to a secure website so the parties and their counsel were able to inspect them.  Amazingly to me, Mr. Johnson was also able to confirm when USA 800 had changed retention policies, how often current audio files were being overwritten by new files, and how likely it was that further efforts to recover usable audio files would yield results that would justify the expense to the parties in the case.

I found Mr. Johnson able to work long hours and to perform very well under tight pressure.  He made every court-imposed deadline with time to spare, dealt directly, respectfully, and neutrally

May 3, 2016
Page 2

with the parties in the case, and understood and flawlessly performed his role as an advisor to the Special Master and the court rather than an advocate for a party. He was also able to adapt the technology at his disposal to the limited resources of the parties. On top of his technical excellence, Mr. Johnson was a pleasure to work with, always collegial, congenial, and willing to patiently explain things to those of us who did not share his expertise.

I would not hesitate to recommend Mr. Johnson or Quantum for any e-discovery or computer forensics project. If I can be of any further assistance or can answer any questions, please do not hesitate to call me at 816-374-3386.

Sincerely,

James T. Wicks