**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| United States of America<br><br>*ex rel.* ALEX DOE, Relator,<br><br><br>The State of Texas<br><br>*ex rel.* ALEX DOE, Relator,<br><br><br>The State of Louisiana<br><br>*ex rel.* ALEX DOE, Relator,<br><br>        Plaintiffs,<br><br>v.<br><br>Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc.,<br><br>        Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | NO. 2:21-CV-22-Z |

**<u>DECLARATION OF MEGAN WHISLER</u>**

I, Megan Whisler, declare and state as follows:

    1.     I am a counsel at O'Melveny & Myers LLP and, under supervision of partners at O'Melveny, represent Defendant Planned Parenthood Federation of America, Inc. ("PPFA") in the above-captioned action (the "Litigation").

2.      I am familiar with the claims and allegations in the Litigation.  I am over the age of 18 and have personal knowledge of the matters herein.  If called upon to testify, I could and would testify to the facts in this declaration.

3.      Attached as **Exhibit 1** is a true and accurate copy of Relator's First Requests for Production, dated May 27, 2022.

4.      Attached as **Exhibit 2** is a true and accurate copy of Relator's First Interrogatories, dated May 27, 2022.

5.      Attached as **Exhibit 3** is a true and accurate copy of PPFA's First Set of Interrogatories to Relator, dated June 3, 2022.

6.      Attached as **Exhibit 4** is a true and accurate copy of PPFA's First Set of Interrogatories to the State of Texas, dated June 3, 2022.

7.      Attached as **Exhibit 5** is a true and accurate copy of PPFA's First Requests for Production to Relator, dated June 3, 2022.

8.      Attached as **Exhibit 6** is a true and accurate copy of PPFA's First Requests for Production to the State of Texas, dated June 3, 2022.

9.      Attached as **Exhibit 7** is a true and accurate copy of Relator's Objections and Responses to PPFA's First Set of Interrogatories to Relator, dated July 5, 2022.

10.     Attached as **Exhibit 8** is a true and accurate copy of Relator's Objections and Responses to PPFA's First Set of Requests for Production to Relator, dated July 5, 2022.

11.     Attached as **Exhibit 9** is a true and accurate copy of the State of Texas's Objections, Statements of Privileges, and Responses to PPFA's First Set of Requests for Production, dated July 5, 2022.

12.     Attached as **Exhibit 10** is a true and accurate copy of the State of Texas's Objections, Statements of Privilege, and Answers to PPFA's First Set of Interrogatories, dated July 5, 2022.

13.     Attached as **Exhibit 11** is a true and accurate copy of Relator's Supplemental Objections and Responses to PPFA's First Set of Interrogatories to Relator, dated August 15, 2022.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on October 18, 2022 in Dallas, Texas.

Megan Whisler

3

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *EX REL.* DOE, *et al.,* | § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | Civil Action No. 2:21-CV-00022-Z |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., *et al.,* | § § § § | |
| *Defendants.* | § § | |

---

### RELATOR'S FIRST REQUESTS FOR PRODUCTION

---

To:   Defendants Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc., c/o Craig Margolis, Murad Hussain, Tirzah Lollar, Christopher Odell, Arnold & Porter Kaye Scholer LLP, 601 Massachusetts Ave., NW, Washington, DC 20001-3747, Attorneys for Defendants.

Pursuant to Federal Rules of Civil Procedure 26 and 34, Relator Alex Doe hereby requests that Defendants produce the following documents in accordance with the definitions and instructions set forth below at the office of Hacker Stephens LLP, c/o Andrew B. Stephens, 108 Wild Basin Road South, Suite 250, Austin, Texas 78746, within thirty (30) days after service of same.

## INSTRUCTIONS

1.      In responding to these document requests, Defendants are required to furnish all responsive documents in their possession, custody, or control, or in the possession, custody, or control of their attorneys, agents, employees, independent contractors, and all other persons acting on behalf of each of them or any of them.

2.      Each document request shall be responded to separately and fully, unless it is in good faith objected to, in which event the reasons for the objection shall be stated with specificity. If an objection pertains to only a portion of the request, or to a word, phrase, or clause contained therein, Defendants shall state the objection to that portion only and respond to the remainder of the request.

3.      If, in responding to these document requests, Defendants claim any ambiguity in a document request, or in a definition or instruction applicable thereto, Defendants shall not rely upon the ambiguity as a basis for refusing to respond, but shall set forth as part of their response the language deemed to be ambiguous and the interpretation used in responding to the request.

4.      An original or one copy of each responsive document shall be produced. Any copy of a document that varies in any way from the original or from any other copy of the document, whether by reason of handwritten or other notation, highlighting, underlining, or other marks, or a draft or successive iteration thereof and all modifications thereto, shall constitute a separate document and must be produced, whether or not the original of such document is within Defendants' possession, custody, or control. If the same document exists in both electronic and

non-electronic format, the electronically maintained document must be produced; provided, if the non-electronically maintained document varies in any way from the electronically maintained document as described above, both the electronically maintained and non-electronically maintained documents shall be produced.

5.      Documents shall be produced as they are kept in the ordinary course of business.

6.      If there are no documents responsive to any particular request, Defendants shall state so in writing.

7.      A request for documents includes a request for all transmittal sheets, cover letters, exhibits, enclosures, and attachments to the documents, in addition to the document itself. Documents attached to other documents or materials shall not be separated unless information is provided sufficient to permit reconstruction of the grouping or context in which the document is maintained in the ordinary course of business.

8.      If the documents requested differ from one office, division, or location to another, the requests require production of documents for each office, division, or location.

9.      Each document requested shall be produced in its entirety and without redactions, deletions, or excisions, regardless of whether Defendants consider the entire document to be relevant or responsive to these requests.

10.     For any document withheld under a claim of privilege, submit a privilege log that complies with FRCP 26(b)(5)(A) with your response to these requests.

11. These document requests are continuing in nature. Any document obtained, created, identified, or located after service of any response to these requests that would have been included in the responses had the document been available or had its existence been known at that time should be produced immediately.

12. For any document responsive to these requests that has been destroyed, lost, is otherwise unavailable, or is no longer in Defendants' present possession, custody, or control, identify with respect to each document: the author, addressee, date, number of pages, and subject matter; and explain in detail the events leading to the destruction or loss, or the reason for the unavailability of such document, including the location of such document when last in your possession, custody, or control, and the date and manner of its disposition.

13. The relevant time period for these document requests is January 1, 2010, through the time of trial, unless otherwise stated.

14. You are hereby notified that your answers to these discovery requests may be used in evidence upon the trial of this case, or in support of pleadings and motions, or for other purposes.

15. In light of the scheduling order entered by the Court, you are further notified that if you fail to produce the requested documents and information by the deadline set forth above, Relator intends to file a motion to compel and may seek sanctions.

## DEFINITIONS

1.    "Concerning" means having any relationship or connection to, regarding, relating, constituting, discussing, considering, being connected to, commenting on, responding to, addressed to, sent to, containing, evidencing, showing, memorializing, describing, modifying, amending, confirming, endorsing, representing, supporting, substantiating, qualifying, negating, refuting, analyzing, reflecting, pertaining to, comprising, constituting, or otherwise establishing any reasonable, logical, or causal connection.

2.    "Document" and "documents" are synonymous in meaning and equal in scope to the usage of the terms as defined in Federal Rule of Civil Procedure 34(a)(1)(A) and shall include all items subject to inspection and copying under those Rules, including any original, reproduction, copy, or draft of any kind of written or documented material, stored in any medium, including but not limited to audio and video tapes, correspondence, memoranda, interoffice communications, electronic mail, text messages, notes, diaries, calendars, personal digital assistant device entries, contract documents, estimates, vouchers, minutes of meetings, invoices, checks, reports, notes of telephone conversations, notes of oral communications, computer-stored information that is retrievable in any form, writings, drawings, graphs, charts, photographs, and other data compilations, from which information can be obtained, and electronically stored information that is retrievable in any form, or translated if necessary, by Defendants through detection devices into a reasonably usable form, except that neither electronically stored voicemails nor the information

5

stored in the memories of copiers, printers, and fax machines are "documents" under this definition.

3.      The connectives "and" and "or" and the phrase "and/or" shall be construed either disjunctively or conjunctively to bring within the scope of each request all documents that might otherwise be construed as nonresponsive to the request. The word "and" shall be construed to mean both "and" and "or," and vice versa, as necessary to bring within the scope of each request all documents that might otherwise be construed as nonresponsive to the request.

4.      "Person" means the plural as well as the singular and includes natural persons, corporations, firms, associations, partnerships, joint ventures, trusts, estates, or any other form of organization or legal entity; and governmental agencies, departments, units, or subdivisions thereof.

5.      "Defendants" means Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc., and all representatives, employees, agents, officers, consultants, attorneys, adjustors, investigators, representatives, or any other person acting or purporting to act on behalf of Defendants, including but not limited to any and all healthcare providers that provided services to persons enrolled in Texas Medicaid and/or Louisiana Medicaid during the relevant time period at any clinic or other facility owned, operated, leased or managed by any of the Defendants or any entity in any way associated with Defendants.

6

6.     "Identify" or "identity of" when referring:

(a)     to a person who is an individual or healthcare provider, means to state his or her full name and present, or last known, business or residential street address, city, state, and phone number;

(b)     to a person who is a corporation, firm, partnership, association, joint venture, trust, estate or any other form of organization or legal entity or to a governmental agency (including any department, unit, or subdivision thereof) means to state its full name and present or last known pertinent business street address, city, state, and phone number;

(c)     to a communication, means to state the substance of the communication, the date or which the communication occurred, and the name of each person who was either a participant in the communication or was present when said communication occurred.

7.     "Statement" includes any written or graphic statement signed or otherwise adopted or approved by the person making it, and any stenographic, mechanical, electrical, or other record or transcription thereof which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

8.     "Texas Medicaid" means the Texas Medicaid Assistance Program implemented by the State of Texas, under the provisions of Title XIX of the Social Security Act.

9.      "Louisiana Medicaid" means the Louisiana Medicaid implemented by the State of Louisiana, under the provisions of Title XIX of the Social Security Act.

10.     "Patient charts" means the medical record containing clinical data and documentation of medical and/or health history of individual patients, excluding financial or billing documents or information.

# REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All documents and communications concerning Defendants' provision of services billed to Texas Medicaid, excluding patient charts.

**REQUEST FOR PRODUCTION NO. 2:**

All documents and communications concerning claims submitted by Defendants to Texas Medicaid for Fee For Service delivered on and between January 1, 2010 and the present, including but not limited to: (a) the date the service was provided; (b) the amount of the claim submitted to Texas Medicaid; (c) the Texas Provider Identification Number of the Defendant that submitted the claim (the suffix as well as the base); (d) the address of the Defendant that submitted the claim; (e) the address of the location where the service was provided; (f) the amount of the payment you received for the claim and the identity of the payor; (g) the date you received the payment for the claim.

**REQUEST FOR PRODUCTION NO. 3:**

All documents and communications concerning claims submitted through a managed care organization for services provided by Defendants on and between January 1, 2010 and the present, including but not limited to: (a) the date the service was provided; (b) the amount of the claim submitted to the managed care organization; (c) the Texas Provider Identification Number of the Defendant that submitted the claim (the suffix as well as the base); (d) the address of the Defendant that submitted the claim; (e) the address of the location where the service was provided; (f) the amount of the payment you received for the claim and the identity of the payor; (g) the date you received the payment for the claim.

**REQUEST FOR PRODUCTION NO. 4:**

All documents and communications concerning Defendants' provision of services billed to Louisiana Medicaid, excluding patient charts.

**REQUEST FOR PRODUCTION NO. 5:**

All documents and communications concerning claims submitted by Defendants to Louisiana Medicaid for Fee For Service delivered on and between January 1, 2010 and the present, including but not limited to: (a) the date the service was provided; (b) the amount of the claim submitted to Louisiana Medicaid; (c) the National Provider Identification Number and/or the Louisiana Provider Identification Number of the Defendant that submitted the claim (the suffix as well as the base); (d) the

address of the Defendant that submitted the claim; (e) the address of the location where the service was provided; (f) the amount of the payment you received for the claim and the identity of the payor; (g) the date you received the payment for the claim.

**REQUEST FOR PRODUCTION NO. 6:**

All documents and communications concerning claims submitted through a managed care organization for services provided by Defendants on and between January 1, 2010 and the present, including but not limited to: (a) the date the service was provided; (b) the amount of the claim submitted to Louisiana Medicaid; (c) the National Provider Identification Number and/or the Louisiana Provider Identification Number of the Defendant that submitted the claim (the suffix as well as the base); (d) the address of the Defendant that submitted the claim; (e) the address of the location where the service was provided; (f) the amount of the payment you received for the claim and the identity of the payor; (g) the date you received the payment for the claim.

**REQUEST FOR PRODUCTION NO. 7:**

All documents and communications which Defendants have made or obtained concerning Texas Medicaid and/or Louisiana Medicaid, excluding patient charts, and including but not limited to statements, declarations, audio recordings, and video recordings, in any form, from any person concerning Texas Medicaid and/or Louisiana Medicaid.

**REQUEST FOR PRODUCTION NO. 8:**

All documents and communications by and between Defendants and any former or current employee of the State of Texas and/or the State of Louisiana concerning Texas Medicaid and Louisiana Medicaid.

**REQUEST FOR PRODUCTION NO. 9:**

All documents and communications by and between Kenneth Lambrecht, Jeffrey Hons, and Melanie Linton, Cecile Richards, and any other person concerning Texas Medicaid and/or Louisiana Medicaid.

**REQUEST FOR PRODUCTION NO. 10:**

All documents and communications concerning financial analysis, financial models, financial projections, accounting documents, accounting statements, balance sheets, cash flow statements, income statements, expense statements, revenue statements, and any other document containing information concerning Defendants' assets,

liabilities, income, expenses, loans, debt, credit facilities, or financial position.

**REQUEST FOR PRODUCTION NO. 11:**

All documents and communications concerning each payment you received from any state or federal program from January 1, 2010 to present that you returned or refunded to the state or federal government at any time.

Respectfully submitted.

/s/ Andrew B. Stephens
Andrew B. Stephens
Texas Bar No. 24079396
Heather Gebelin Hacker
Texas Bar No. 24103325
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
(512) 399-3022
andrew@hackerstephens.com
heather@hackerstephens.com

**Attorneys For Relator**

11

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2022, a true and correct copy of the foregoing document was sent by electronic mail to Defendants' counsel to the e-mail addresses below:

Craig Margolis
Murad Hussain
Tirzah Lollar
Christopher Odell
ARNOLD PORTER
Craig.Margolis@arnoldporter.com
Murad.Hussain@arnoldporter.com
Tirzah.Lollar@arnoldporter.com
Christopher.Odell@arnoldporter.com

**Attorneys for Defendants**

/s/ Andrew B. Stephens
Andrew B. Stephens

# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *EX REL.* DOE, *et al.,* | § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | Civil Action No. 2:21-CV-00022-Z |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., *et al.,* | § § § | |
| *Defendants.* | § § | |

---

### RELATOR'S FIRST INTERROGATORIES

---

To:     Defendants Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc., c/o Craig Margolis, Murad Hussain, Tirzah Lollar, Christopher Odell, Arnold & Porter Kaye Scholer LLP, 601 Massachusetts Ave., NW, Washington, DC 20001-3747, Attorneys for Defendants.

Pursuant to Federal Rules of Civil Procedure 26 and 33, Relator Alex Doe hereby requests that Defendants answer in writing and under oath each of the following interrogatories and provide their written answers at the office of Hacker Stephens LLP, c/o Andrew B. Stephens, 108 Wild Basin Road South, Suite 250, Austin, Texas 78746, within thirty (30) days after service of same.

## INSTRUCTIONS

1.      In responding to these interrogatories, Defendants are required to furnish all responsive information in their possession, custody, or control, or in the possession, custody, or control of their attorneys, agents, employees, independent contractors, and all other persons acting on behalf of each of them or any of them.

2.      Each interrogatory is to be answered separately, in writing, and as fully as possible. State the name of the person answering that interrogatory, whether information furnished is within the personal knowledge of that person and, if not, the name of the person assisting in the preparation of, or furnishing of, information used in the answer to that interrogatory, and the name of the person to whom such information is a matter of personal knowledge.

3.      The omission of any name, fact, or other item of information from the answers shall be deemed an admission that such name, fact, or item is not known to you or your counsel at the time of the service of your answer to the interrogatory.

4.      If any interrogatory herein cannot be answered in full after exercising due diligence to secure the information to do so, it shall be answered with an explanation as to why a complete answer is not possible.

5.      Answer each interrogatory fully. If you object to any interrogatory, state the reasons for objection and answer to the extent the interrogatory is not objectionable. If you are unable to answer an interrogatory fully, submit as much information as is available, explain why your answer is incomplete, and identify or describe all other sources of more complete or accurate information.

6. For any interrogatory or part of an interrogatory which you refuse to answer under a claim of privilege, submit a sworn or certified statement from your counsel in which you identify the nature of the information withheld; specify the grounds of the claimed privilege and the paragraph of these interrogatories to which the information is responsive; and identify each person to whom the information, or any part thereof, has been disclosed.

7. For any record or document responsive or relating to these interrogatories which is known to have been destroyed or lost, or is otherwise unavailable, identify each such document by author, addressee, date, number of pages, and subject matter; and explain in detail the events leading to the destruction or loss, or the reason for the unavailability of such document.

8. To the extent you believe any interrogatory is ambiguous, your answer should set forth the matter deemed ambiguous and the construction used in responding.

9. Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, you are under a duty to amend any answer to these interrogatories for which you learn that the answer is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to us during the discovery process or in writing.

10. These interrogatories are continuing in nature and must be supplemented promptly if you obtain additional or different information related to any response at any time before the termination of this action.

11.     In lieu of providing a full description of a document, you may attach a copy of the document for which a description is requested, and in your answer to the interrogatory.

12.     When interpreting these interrogatories, words in the singular also include their plural.  Words used in the plural also include their singular.

13.     The relevant time period for these interrogatories is January 1, 2010, through the time of trial, unless otherwise stated.

14.     You are hereby notified that your answers to these discovery requests may be used in evidence upon the trial of this case, or in support of pleadings and motions, or for other purposes.

15.     In light of the scheduling order entered by the Court, you are further notified that if you fail to produce the requested documents and information by the deadline set forth above, Relator intends to file a motion to compel and may seek sanctions.

## DEFINITIONS

1.     "Concerning" means having any relationship or connection to, regarding, relating, constituting, discussing, considering, being connected to, commenting on, responding to, addressed to, sent to, containing, evidencing, showing, memorializing, describing, modifying, amending, confirming, endorsing, representing, supporting, substantiating, qualifying, negating, refuting, analyzing, reflecting, pertaining to, comprising, constituting, or otherwise establishing any reasonable, logical, or causal connection.

2.      "Document" and "documents" are synonymous in meaning and equal in scope to the usage of the terms as defined in Federal Rule of Civil Procedure 34(a)(1)(A) and shall include all items subject to inspection and copying under those Rules, including any original, reproduction, copy, or draft of any kind of written or documented material, stored in any medium, including but not limited to audio and video tapes, correspondence, memoranda, interoffice communications, electronic mail, text messages, notes, diaries, calendars, personal digital assistant device entries, contract documents, estimates, vouchers, minutes of meetings, invoices, checks, reports, notes of telephone conversations, notes of oral communications, computer-stored information that is retrievable in any form, writings, drawings, graphs, charts, photographs, and other data compilations, from which information can be obtained, and electronically stored information that is retrievable in any form, or translated if necessary, by Defendants through detection devices into a reasonably usable form, except that neither electronically stored voicemails nor the information stored in the memories of copiers, printers, and fax machines are "documents" under this definition.

3.      The connectives "and" and "or" and the phrase "and/or" shall be construed either disjunctively or conjunctively to bring within the scope of each request all documents that might otherwise be construed as nonresponsive to the request. The word "and" shall be construed to mean both "and" and "or," and vice versa, as necessary to bring within the scope of each request all documents that might otherwise be construed as nonresponsive to the request.

4.    "Person" means the plural as well as the singular and includes natural persons, corporations, firms, associations, partnerships, joint ventures, trusts, estates, or any other form of organization or legal entity; and governmental agencies, departments, units, or subdivisions thereof.

5.    "Defendants" means Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc., and all representatives, employees, agents, officers, consultants, attorneys, adjustors, investigators, representatives, or any other person acting or purporting to act on behalf of Defendants, including but not limited to any and all healthcare providers that provided services to persons enrolled in Texas Medicaid and/or Louisiana Medicaid during the relevant time period at any clinic or other facility owned, operated, leased or managed by any of the Defendants or any entity in any way associated with Defendants.

6.    "Identify" or "identity of" when referring:

(a)    to a person who is an individual or healthcare provider, means to state his or her full name and present, or last known, business or residential street address, city, state, and phone number;

(b)    to a person who is a corporation, firm, partnership, association, joint venture, trust, estate or any other form of organization or legal entity or to a governmental agency (including any department, unit, or subdivision thereof) means to state its full name and present or last known pertinent

6

business street address, city, state, and phone number;

    (c)    to a communication, means to state the substance of the communication, the date or which the communication occurred, and the name of each person who was either a participant in the communication or was present when said communication occurred.

7.    "Statement" includes any written or graphic statement signed or otherwise adopted or approved by the person making it, and any stenographic, mechanical, electrical, or other record or transcription thereof which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

8.    "Texas Medicaid" means the Texas Medicaid Assistance Program implemented by the State of Texas, under the provisions of Title XIX of the Social Security Act.

9.    "Louisiana Medicaid" means the Louisiana Medicaid implemented by the State of Louisiana, under the provisions of Title XIX of the Social Security Act.

# INTERROGATORIES

### INTERROGATORY NO. 1:

Identify each claim submitted by Defendants to Texas Medicaid for Fee For Service delivered on and between January 1, 2010 and the present, including but not limited to: (a) the date the service was provided; (b) the amount of the claim submitted to Texas Medicaid; (c) the Texas Provider Identification Number of the Defendant that submitted the claim (the suffix as well as the base); (d) the address of the Defendant that submitted the claim; (e) the address of the location where the service was provided; (f) the amount of the payment you received for the claim and the identity of the payor; (g) the date you received the payment for the claim.

### INTERROGATORY NO. 2:

Identify each claim submitted through a managed care organization for services provided by Defendants on and between January 1, 2010 and the present, including but not limited to: (a) the date the service was provided; (b) the amount of the claim submitted to the managed care organization; (c) the Texas Provider Identification Number of the Defendant that submitted the claim (the suffix as well as the base); (d) the address of the Defendant that submitted the claim; (e) the address of the location where the service was provided; (f) the amount of the payment you received for the claim and the identity of the payor; (g) the date you received the payment for the claim.

### INTERROGATORY NO. 3:

Identify each claim submitted by Defendants to Louisiana Medicaid for Fee For Service delivered on and between January 1, 2010 and the present, including but not limited to: (a) the date the service was provided; (b) the amount of the claim submitted to Louisiana Medicaid; (c) the National Provider Identification Number and/or the Louisiana Provider Identification Number of the Defendant that submitted the claim (the suffix as well as the base); (d) the address of the Defendant that submitted the claim; (e) the address of the location where the service was provided; (f) the amount of the payment you received for the claim and the identity of the payor; (g) the date you received the payment for the claim.

### INTERROGATORY NO. 4:

Identify each claim submitted through a managed care organization for services provided by Defendants on and between January 1, 2010 and the present, including but not limited to: (a) the date the service was provided ; (b) the amount of the claim submitted to Louisiana Medicaid; (c) the National Provider Identification Number and/or the Louisiana Provider Identification Number of the Defendant that

submitted the claim (the suffix as well as the base); (d) the address of the Defendant that submitted the claim; (e) the address of the location where the service was provided; (f) the amount of the payment you received for the claim and the identity of the payor; (g) the date you received the payment for the claim.

### INTERROGATORY NO. 5:

Identify each payment you received from any state or federal program from January 1, 2010 to present that you returned or refunded to the state or federal government, including in your answer (a) the name of the federal program, (b) the date you received the payment, and (c) the date you returned the payment.

Respectfully submitted.

/s/ Andrew B. Stephens
Andrew B. Stephens
Texas Bar No. 24079396
Heather Gebelin Hacker
Texas Bar No. 24103325
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
(512) 399-3022
andrew@hackerstephens.com
heather@hackerstephens.com

**Attorneys For Relator**

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2022, a true and correct copy of the foregoing document was sent by electronic mail to Defendants' counsel to the e-mail addresses below:

Craig Margolis
Murad Hussain
Tirzah Lollar
Christopher Odell
ARNOLD PORTER
Craig.Margolis@arnoldporter.com
Murad.Hussain@arnoldporter.com
Tirzah.Lollar@arnoldporter.com
Christopher.Odell@arnoldporter.com

**Attorneys for Defendants**

/s/ Andrew B. Stephens
Andrew B. Stephens

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| United States of America | § | |
| | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| | § | CIVIL ACTION NO. 2:21-CV- |
| | § | 00022-Z |
| The State of Texas | § | |
| | § | Date:      June 3, 2022 |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| | § | |
| | § | |
| The State of Louisiana | § | |
| | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| Planned Parenthood Federation of America, Inc., | § | |
| Planned Parenthood Gulf Coast, Inc., Planned | § | |
| Parenthood of Greater Texas, Inc., Planned | § | |
| Parenthood South Texas, Inc., Planned Parenthood | § | |
| Cameron County, Inc., Planned Parenthood San | § | |
| Antonio, Inc., | § | |
| | § | |
| Defendants. | § | |
| | § | |

**<u>DEFENDANT PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.'S
FIRST SET OF INTERROGATORIES TO THE RELATOR</u>**

Under Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Planned

Parenthood Federation of America, Inc. ("PPFA") requests that Relator Alex Doe provide

answers to the following First Set of Interrogatories (each, "Interrogatory," and, collectively,

"Interrogatories") within the time and in the manner provided by the Federal Rules of Civil

Procedure and any other applicable legal authority.  Please note that there is a continuing

obligation to amend and supplement the Relator's answers as additional information becomes available.  PPFA reserves the right to serve supplemental and additional interrogatories.

## **DEFINITIONS**

Unless the terms of a particular Interrogatory specifically indicate otherwise, the following definitions are applicable throughout these Interrogatories and are incorporated into each specific Interrogatory.

1.      "And" and "or" means both and shall always be read to require the more inclusive answer.

2.      "Any" means "all" and vice versa.

3.      "Affiliate Defendants" means Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood of South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc., and "Affiliate Defendant" means any one of the Affiliate Defendants.

4.      "Center for Medical Progress" means the non-profit organization by that name founded in or around 2013 and any current or former associated corporation or entity, as well as any current and former officers, directors, employees, agents, attorneys, accountants, representatives, and any other person acting or purporting to act on behalf of the Center for Medical Progress.

5.      "Communication" means the transmission or expression of any thought, word, statement, fact, thing, idea, opinion, document, instruction, demand, or question, whether written or oral, whether made in person, by telephone, in a meeting, transmitted electronically or telegraphically, or transmitted in any other fashion.

6.     "Date" means the exact day, month, and year, if known or ascertainable, or if not, the best approximation (including relationship to other events).

7.     "Describe" means to identify any document or communication concerning the item in question and to provide a complete factual summary chronologically setting forth the substance of, and identifying any person participating in, witnessing, or having knowledge of, whether firsthand or otherwise, any fact, action, occurrence, conduct, event, condition, or circumstance concerning the information in question.

8.     "Document" is used in its broadest sense to mean all materials within the scope of Federal Rule of Civil Procedure 34(a), including without limitation any designated tangible things, documents, or electronically stored information (including without limitation communications, writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations) stored in any medium from which information can be obtained either directly or, if necessary, after translation into a reasonably usable form, that are in the possession, custody, or control of You or Your counsel.  "Document" further includes originals and all drafts and copies that differ in any respect from the original.

9.     "Identify" when used with respect to documents means that, for each and every document, the following information must be provided:

a.     the location of any file or files where the document, or any copy thereof, is normally or presently kept, and identify the custodian thereof; and

b.     a general description of the document.

10.     "Identify" when used with respect to persons means that, for each and every person, the following information must be provided:

a.     the name and current address of any and all natural persons;

3

    b.      the employer and job title of any and all natural persons, if known, or the last-known place of employment of any and all natural persons, if current employment information is unknown; and

    c.      the full name and address of the entity, if other than a natural person, and the name, last-known address, and place of employment and employer, if different from the entity, of each and every natural person employed by or representing such entity having knowledge of or with whom communications have occurred relating to the subject matter of the Interrogatory.

11.     "Louisiana" and "State of Louisiana" mean the government of the State of Louisiana, and any current or former subsidiary, division, affiliate, predecessor entity, agency, office, or department of the Louisiana government (including without limitation the Louisiana Department of Health), as well as any current and former directors, employees, agents, attorneys, accountants, representatives, and any other person acting or purporting to act on behalf of the government of the State of Louisiana (including without limitation any auditors or investigators hired by the Louisiana government).

12.     "Louisiana Medicaid" means the Medicaid program administered by the State of Louisiana, as well as any current and former directors, employees, agents, attorneys, accountants, representatives, and any other person acting or purporting to act on behalf of Louisiana's Medicaid program.

13.     "Person" or "Persons" means a natural person, corporation, firm, proprietorship, partnership, association, company, joint venture, group, estate, trust, organization, business, and/or governmental entity or agency having a separate identification, recognized in law or in fact, or any other type of organization or entity.

14.    "PPFA" means Planned Parenthood Federation of America, Inc.

15.    "Regarding," "relating to," "related to," "in relation to," or "relates to" means relating in any way to, referring to, arising from, dealing with, consisting of, mentioning, discussing, describing, reflecting, concerning, memorializing, supporting, constituting, evidencing, comprising, recording, or in any other way pertaining to the subject, either in whole or in part, whether directly or indirectly.

16.    "Relator," "You," or "Your" means Relator Alex Doe individually, and any current or former associated corporation or entity, as well as any current and former employees, agents, attorneys, accountants, representatives, and any other person acting or purporting to act on behalf of Relator.

17.    "Relator's Complaint" means the Complaint that Relator Alex Doe filed in this matter on or about February 5, 2021 (Dkt. No. 2).

18.    "Texas" and "State of Texas" mean the government of the State of Texas, and any current or former subsidiary, division, affiliate, predecessor entity, agency, office, or department of the Texas government (including without limitation the Texas Health & Human Services Commission, the Texas Office of the Inspector General, the Texas Attorney General's Office, the Texas Department of State Health Services, and the Texas Department of Public Safety), as well as any current and former directors, employees, agents, attorneys, accountants, representatives, and any other person acting or purporting to act on behalf of the government of the State of Texas (including without limitation any auditors or investigators hired by the Texas government).

19.    "Texas's Complaint" means the State of Texas's Complaint In Intervention filed in this matter on or about January 6, 2022 (Dkt. No. 22).

5

20.    "Texas Medicaid" means the Medicaid program administered by the State of Texas, as well as any current and former directors, employees, agents, attorneys, accountants, representatives, and any other person acting or purporting to act on behalf of Texas's Medicaid program.

21.    "United States" shall mean the government of the United States of America, including any current or former subsidiary, division, affiliate, predecessor entity, office, or department of the United States government (including without limitation the United States Department of Health and Human Services, the Centers for Medicare and Medicaid Services, and the United States Department of Justice), as well as any current or former directors, employees, agents, attorneys, accountants, representatives, and any other person acting or purporting to act on behalf of the government of the United States (including without limitation any auditors or investigators hired by the United States government).

## **INSTRUCTIONS**

The following general instructions apply to each of the Interrogatories:

1.    You must respond to these Interrogatories to the fullest extent required by the applicable law, including without limitation Federal Rules of Civil Procedure 26 and 33.

2.    You are required, in responding to these Interrogatories, to obtain and furnish all information available to You and any of Your departments, divisions, affiliates, representatives, employees, agents, consultants, experts, or attorneys, and to obtain and to furnish all information that is in Your possession or under Your control, or in the possession or under the control of any of Your departments, divisions, affiliates, representatives, employees, agents, consultants, experts, or attorneys.

6

3.      Each Interrogatory, including subparts, is to be answered by You separately, completely, fully, and under oath.  Any objections should clearly indicate to which part or portion of the Interrogatory it is directed, and You must answer any portion of the Interrogatory to which You do not object.

4.      If You are unable to answer any Interrogatory in full after exercising due diligence to secure the requested information, please so state, answer to the fullest extent possible, and explain why the Interrogatory cannot be answered in full.

5.      Any Interrogatory propounded in the present tense shall also be read as if propounded in the past tense, and vice versa.  Any Interrogatory propounded in the singular shall also be read as if propounded in the plural, and vice versa.  A conjunctive word shall be interpreted as a disjunctive word, and vice versa.  Any Interrogatory propounded in the masculine shall also be read as if propounded in the feminine, and vice versa.  The foregoing four sentences apply whenever appropriate in order to bring within the scope of these Interrogatories any information which otherwise might be considered to be beyond their scope.

6.      If You refuse to provide any information requested on the grounds of privilege or otherwise, please provide the information required by Federal Rule of Civil Procedure 26 and specify: (1) the nature of the privilege that is claimed; (2) the exact basis for the claim of privilege; (3) whether any documents exist or any oral communications took place with regard to the requested information, and, if so, identify: (i) the name of the person making the communication and the names of persons present while the communication was made; (ii) the date and place of the communication; and (iii) the general subject matter of the communication.

7.      If, in answering any of these Interrogatories, You claim any ambiguity in interpreting an Interrogatory, or a definition or instruction applicable thereto, such claim shall not be utilized as a basis for refusing to answer, and there shall be set forth as part of the answer the language deemed to be ambiguous and the interpretation chosen or used in responding to the Interrogatory.

8.      Whenever a date, amount, or other computation or figure is requested, the exact date and time, amount, computation, or figure is to be given unless it is not known.  If it is not known, then the approximate date and time, amount, computation, or figure should be given or the best estimate thereof, and the answer shall state that the date, amount, computation, or figure is an estimate or approximation, as well as the basis for making the estimate or approximation.

9.      No answer shall be left blank.  If the answer to an Interrogatory or subpart of an Interrogatory is "none" or "unknown," the word "none" or "unknown" must be written in the answer.

10.      If any identified document included or referenced in any answer to any Interrogatory is subject to destruction under any document retention or destruction program, the document should be exempted from any scheduled destruction until the conclusion of this lawsuit unless otherwise permitted by the Court.

11.      These Interrogatories are continuing in nature.  If, after answering these Interrogatories, You or any person acting on Your behalf obtain(s) or become(s) aware of additional information or document responsive to these Interrogatories, You are required to serve a supplemental answer reflecting all such subsequently acquired information or document.  Supplemental answers are to be served as soon as reasonably possible after receipt of such information.

12.     When answering these Interrogatories, please provide as much detail and specificity as possible and provide detailed explanations for all contentions asserted in Your answers, including (without limitation) all facts that support and/or refute Your contentions.

## INTERROGATORIES

### INTERROGATORY NO. 1

Identify each person with knowledge of the facts relevant to the allegations in the Relator's Complaint.  Your response should identify the facts about which each person has knowledge.

### INTERROGATORY NO. 2

For each 2010-to-present Texas Medicaid claim submitted by an Affiliate Defendant that You contend was a false or fraudulent claim, identify all facts that You contend demonstrate PPFA's knowledge of, involvement in, or control over the claim.

### INTERROGATORY NO. 3

For each 2010-to-present Texas Medicaid overpayment received by an Affiliate Defendant that You contend the Affiliate Defendant was obligated to report and repay, identify all facts that You contend demonstrate PPFA's knowledge of, involvement in, or control over the nonpayment of the claim, as well as all facts that You contend demonstrate that PPFA directed or controlled the Affiliate Defendant's alleged concealment of any overpayment or decision to not report or repay an overpayment.

### INTERROGATORY NO. 4

For each 2010-to-present Louisiana Medicaid claim submitted by an Affiliate Defendant that You contend was a false or fraudulent claim, identify all facts that You contend demonstrate PPFA's knowledge of, involvement in, or control over such claim.

### INTERROGATORY NO. 5

For each 2010-to-present Louisiana Medicaid overpayment received by an Affiliate Defendant that You contend the Affiliate Defendant was obligated to report and repay, identify all facts that You contend demonstrate PPFA's knowledge of, involvement in, or control over the nonpayment of the claim, as well as all facts that You contend demonstrate that PPFA directed or controlled the Affiliate Defendant's alleged concealment of any overpayment or decision to not report or repay an overpayment.

**INTERROGATORY NO. 6**

Identify the first date on which the Relator communicated with the State of Texas regarding any of the Affiliate Defendants' submission of claims to Texas Medicaid that You contend were false or fraudulent, and describe, in detail, the Relator's communication with the State of Texas regarding such claims (including without limitation the nature, circumstances, participants, and contents of the communication).

**INTERROGATORY NO. 7**

Identify the first date on which the Relator communicated with the State of Texas regarding PPFA's alleged knowledge of, involvement in, or control over any claim that You contend was false or fraudulent, and describe, in detail, the Relator's communication with the State of Texas regarding such claim (including without limitation the nature, circumstances, participants, and contents of the communication).

**INTERROGATORY NO. 8**

Identify the first date on which the Relator communicated with the State of Louisiana regarding any of the Affiliate Defendants' submission of claims to Louisiana Medicaid that You contend were false or fraudulent, and describe, in detail, the Relator's communication with the State of Louisiana regarding such claims (including without limitation the nature, circumstances, participants, and contents of the communication).

**INTERROGATORY NO. 9**

Identify the first date on which the Relator communicated with the State of Louisiana regarding PPFA's alleged knowledge of, involvement in, or control over any claim that You contend was false or fraudulent, and describe, in detail, the Relator's communication with the State of Louisiana regarding such claim (including without limitation the nature, circumstances, participants, and contents of the communication).

**INTERROGATORY NO. 10**

Identify the first date on which the Relator communicated with the United States regarding any of the Affiliate Defendants' submission of claims to Texas or Louisiana Medicaid that You contend were false or fraudulent, and describe, in detail, the Relator's communication with the United States regarding such claims (including without limitation the nature, circumstances, participants, and contents of the communication).

**INTERROGATORY NO. 11**

Identify the first date on which the Relator communicated with the United States regarding PPFA's alleged knowledge of, involvement in, or control over any claim that You contend was false or fraudulent, and describe, in detail, the Relator's communication with the

United States regarding such claim  (including without limitation the nature, circumstances, participants, and contents of the communication).

## INTERROGATORY NO. 12

Identify all facts in Texas's Complaint of which You contend the State of Texas did not have knowledge before February 5, 2021, and describe, in detail, why the State of Texas could not have obtained knowledge of those facts before February 5, 2021.

## INTERROGATORY NO. 13

Identify all facts in Texas's Complaint of which You contend the State of Louisiana did not have knowledge before February 5, 2021, and describe, in detail, why the State of Louisiana could not have obtained knowledge of those facts before February 5, 2021.

## INTERROGATORY NO. 14

Identify all facts in Texas's Complaint of which You contend You had knowledge and the United States had no knowledge before February 5, 2021, and describe, in detail, why the United States could not have obtained knowledge of those facts before February 5, 2021.

## INTERROGATORY NO. 15

Identify all facts in the Relator's Complaint of which You contend the State of Texas did not have knowledge before February 5, 2021, and describe, in detail, why the State of Texas could not have obtained knowledge of those facts before February 5, 2021.

## INTERROGATORY NO. 16

Identify all facts in the Relator's Complaint of which You contend the State of Louisiana did not have knowledge before February 5, 2021, and describe, in detail, why the State of Louisiana could not have obtained knowledge of those facts before February 5, 2021.

## INTERROGATORY NO. 17

Identify all facts in the Relator's Complaint of which You contend You had knowledge and the United States had no knowledge before February 5, 2021, and describe, in detail, why the United States could not have obtained knowledge of those facts before February 5, 2021.

## INTERROGATORY NO. 18

If you contend that PPFA had or has an obligation to repay 2010-to-present Texas or Louisiana Medicare overpayments made to any Affiliate Defendant, describe all facts (and identify all statutes, regulations and judicial decisions) supporting Your contention, including all facts supporting Your belief that PPFA should have made such payments despite the injunctions

against the termination of provider status that are described in Texas's Complaint and the Relator's Complaint.

## INTERROGATORY NO. 19

Identify all 2010-to-present facts demonstrating PPFA's alleged involvement in or knowledge of the alleged provision of fetal tissue by Defendant Planned Parenthood Gulf Coast, Inc. to the University of Texas Medical Branch.

## INTERROGATORY NO. 20

Identify all 2010-to-present facts demonstrating PPFA's alleged knowledge of, involvement in, or control of any alleged violation of medical and ethical standards or state or federal law by any Affiliate Defendant in connection with the provision of fetal tissue to any third parties, including without limitation:

     i.    the date of any alleged knowledge of, involvement in, or control by PPFA;

     ii.    the specific persons that You allege acted on behalf of PPFA; and

     iii.    the medical and/or ethical standard or state or federal law that You allege was violated by the Affiliate Defendant.

## INTERROGATORY NO. 21

Identify and describe all facts demonstrating that PPFA knowingly and improperly avoided or decreased an obligation to pay money under the Texas Medicaid program.

## INTERROGATORY NO. 22

Identify and describe all facts demonstrating that PPFA knowingly and improperly avoided or decreased an obligation to pay money under the Louisiana Medicaid program.

## INTERROGATORY NO. 23

For each false or fraudulent claim that You allege PPFA had knowledge of, involvement in, or control over, state the damages that You contend are associated with such claim, the basis for calculating those damages, and the amount of any penalties that You contend should be assessed for the claim.

Dated:   June 3, 2022

**O'MELVENY & MYERS LLP**

*/s/ Danny S. Ashby*
Danny S. Ashby
   Texas Bar No. 01370960
   dashby@omm.com
Justin R. Chapa
   Texas Bar No. 24074019
   jchapa@omm.com
2501 North Harwood Street, Suite 1700
Dallas, Texas 75201
T: (972) 360-1900
F: (972) 360-1901

Leah Godesky (*pro hac vice* forthcoming)
   lgodesky@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
T: (310) 553-6700
F: (310) 246-6779

*Attorneys for Defendant Planned Parenthood
Federation of America, Inc.*

13

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 3, 2022, a true and correct copy of the foregoing Defendant Planned

Parenthood Federation of America, Inc.'s First Set of Interrogatories to the Relator was served

by electronic mail on all counsel of record.



*/s/ Danny S. Ashby*

14

# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | |
|---|---|
| United States of America | §<br>§ |
| *ex rel.* ALEX DOE, Relator, | §<br>§ |
| | §<br>§ CIVIL ACTION NO. 2:21-CV-<br>§ 00022-Z |
| The State of Texas | §<br>§ |
| *ex rel.* ALEX DOE, Relator, | § Date:      June 3, 2022<br>§ |
| | §<br>§ |
| The State of Louisiana | §<br>§ |
| *ex rel.* ALEX DOE, Relator, | §<br>§ |
|      Plaintiffs, | §<br>§ |
| v. | §<br>§ |
| Planned Parenthood Federation of America, Inc.,<br>Planned Parenthood Gulf Coast, Inc., Planned<br>Parenthood of Greater Texas, Inc., Planned<br>Parenthood South Texas, Inc., Planned Parenthood<br>Cameron County, Inc., Planned Parenthood San<br>Antonio, Inc., | §<br>§<br>§<br>§<br>§<br>§<br>§ |
|      Defendants. | §<br>§ |

## DEFENDANT PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.'S FIRST SET OF INTERROGATORIES TO THE STATE OF TEXAS

Under Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Planned

Parenthood Federation of America, Inc. ("PPFA") requests that the State of Texas provide

answers to the following First Set of Interrogatories (each, "Interrogatory," and, collectively,

"Interrogatories") within the time and in the manner provided by the Federal Rules of Civil

Procedure and any other applicable legal authority.  Please note that there is a continuing

obligation to amend and supplement the State of Texas's answers as additional information

becomes available.  PPFA reserves the right to serve supplemental and additional interrogatories.

## **DEFINITIONS**

Unless the terms of a particular Interrogatory specifically indicate otherwise, the following definitions are applicable throughout these Interrogatories and are incorporated into each specific Interrogatory.

1. "And" and "or" means both and shall always be read to require the more inclusive answer.

2. "Any" means "all" and vice versa.

3. "Affiliate Defendants" means Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood of South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc., and "Affiliate Defendant" means any one of the Affiliate Defendants.

4. "Center for Medical Progress" means the non-profit organization by that name founded in or around 2013 and any current or former associated corporation or entity, as well as any current and former officers, directors, employees, agents, attorneys, accountants, representatives, and any other person acting or purporting to act on behalf of the Center for Medical Progress.

5. "Communication" means the transmission or expression of any thought, word, statement, fact, thing, idea, opinion, document, instruction, demand, or question, whether written or oral, whether made in person, by telephone, in a meeting, transmitted electronically or telegraphically, or transmitted in any other fashion.

2

6.      "Date" means the exact day, month, and year, if known or ascertainable, or if not, the best approximation (including relationship to other events).

7.      "Describe" means to identify any document or communication concerning the item in question and to provide a complete factual summary chronologically setting forth the substance of, and identifying any person participating in, witnessing, or having knowledge of, whether firsthand or otherwise, any fact, action, occurrence, conduct, event, condition, or circumstance concerning the information in question.

8.      "Document" is used in its broadest sense to mean all materials within the scope of Federal Rule of Civil Procedure 34(a), including without limitation any designated tangible things, documents, or electronically stored information (including without limitation communications, writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations) stored in any medium from which information can be obtained either directly or, if necessary, after translation into a reasonably usable form, that are in the possession, custody, or control of You or Your counsel.  "Document" further includes originals and all drafts and copies that differ in any respect from the original.

9.      "Identify" when used with respect to documents means that, for each and every document, the following information must be provided:

    a.      the location of any file or files where the document, or any copy thereof, is normally or presently kept, and identify the custodian thereof; and

    b.      a general description of the document.

10.     "Identify" when used with respect to persons means that, for each and every person, the following information must be provided:

    a.      the name and current address of any and all natural persons;

3

      b.      the employer and job title of any and all natural persons, if known, or the last-known place of employment of any and all natural persons, if current employment information is unknown; and

      c.      the full name and address of the entity, if other than a natural person, and the name, last-known address, and place of employment and employer, if different from the entity, of each and every natural person employed by or representing such entity having knowledge of or with whom communications have occurred relating to the subject matter of the Interrogatory.

11.    "Person" or "Persons" means a natural person, corporation, firm, proprietorship, partnership, association, company, joint venture, group, estate, trust, organization, business, and/or governmental entity or agency having a separate identification, recognized in law or in fact, or any other type of organization or entity.

12.    "PPFA" means Planned Parenthood Federation of America, Inc.

13.    "Regarding," "relating to," "related to," "in relation to," or "relates to" means relating in any way to, referring to, arising from, dealing with, consisting of, mentioning, discussing, describing, reflecting, concerning, memorializing, supporting, constituting, evidencing, comprising, recording, or in any other way pertaining to the subject, either in whole or in part, whether directly or indirectly.

14.    "Relator" means Relator Alex Doe individually, and any current or former associated corporation or entity, as well as any current and former employees, agents, attorneys, accountants, representatives, and any other person acting or purporting to act on behalf of Relator.

4

15.     "Relator's Complaint" means the Complaint that Relator Alex Doe filed in this matter on or about February 5, 2021 (Dkt. No. 2).

16.     "Texas," "State of Texas," "You," and "Your" mean the government of the State of Texas, and any current or former subsidiary, division, affiliate, predecessor entity, agency, office, or department of the Texas government (including without limitation the Texas Health & Human Services Commission, the Texas Office of the Inspector General, the Texas Attorney General's Office, the Texas Department of State Health Services, and the Texas Department of Public Safety), as well as any current and former directors, employees, agents, attorneys, accountants, representatives, and any other person acting or purporting to act on behalf of the government of the State of Texas (including without limitation any auditors or investigators hired by the Texas government).

17.     "Texas's Complaint" means the State of Texas's Complaint In Intervention filed in this matter on or about January 6, 2022 (Dkt. No. 22).

18.     "Texas Medicaid" means the Medicaid program administered by the State of Texas, as well as any current and former directors, employees, agents, attorneys, accountants, representatives, and any other person acting or purporting to act on behalf of Texas's Medicaid program.

## **INSTRUCTIONS**

The following general instructions apply to each of the Interrogatories:

1.     You must respond to these Interrogatories to the fullest extent required by the applicable law, including without limitation Federal Rules of Civil Procedure 26 and 33.

2.     You are required, in responding to these Interrogatories, to obtain and furnish all information available to You and any of Your departments, divisions, affiliates, representatives,

employees, agents, consultants, experts, or attorneys, and to obtain and to furnish all information that is in Your possession or under Your control, or in the possession or under the control of any of Your departments, divisions, affiliates, representatives, employees, agents, consultants, experts, or attorneys.

3.      Each Interrogatory, including subparts, is to be answered by You separately, completely, fully, and under oath.  Any objections should clearly indicate to which part or portion of the Interrogatory it is directed, and You must answer any portion of the Interrogatory to which You do not object.

4.      If You are unable to answer any Interrogatory in full after exercising due diligence to secure the requested information, please so state, answer to the fullest extent possible, and explain why the Interrogatory cannot be answered in full.

5.      Any Interrogatory propounded in the present tense shall also be read as if propounded in the past tense, and vice versa.  Any Interrogatory propounded in the singular shall also be read as if propounded in the plural, and vice versa.  A conjunctive word shall be interpreted as a disjunctive word, and vice versa.  Any Interrogatory propounded in the masculine shall also be read as if propounded in the feminine, and vice versa.  The foregoing four sentences apply whenever appropriate in order to bring within the scope of these Interrogatories any information which otherwise might be considered to be beyond their scope.

6.      If You refuse to provide any information requested on the grounds of privilege or otherwise, please provide the information required by Federal Rule of Civil Procedure 26 and specify: (1) the nature of the privilege that is claimed; (2) the exact basis for the claim of privilege; (3) whether any documents exist or any oral communications took place with regard to the requested information, and, if so, identify: (i) the name of the person making

the communication and the names of persons present while the communication was made; (ii) the date and place of the communication; and (iii) the general subject matter of the communication.

7.      If, in answering any of these Interrogatories, You claim any ambiguity in interpreting an Interrogatory, or a definition or instruction applicable thereto, such claim shall not be utilized as a basis for refusing to answer, and there shall be set forth as part of the answer the language deemed to be ambiguous and the interpretation chosen or used in responding to the Interrogatory.

8.      Whenever a date, amount, or other computation or figure is requested, the exact date and time, amount, computation, or figure is to be given unless it is not known.  If it is not known, then the approximate date and time, amount, computation, or figure should be given or the best estimate thereof, and the answer shall state that the date, amount, computation, or figure is an estimate or approximation, as well as the basis for making the estimate or approximation.

9.      No answer shall be left blank.  If the answer to an Interrogatory or subpart of an Interrogatory is "none" or "unknown," the word "none" or "unknown" must be written in the answer.

10.     If any identified document included or referenced in any answer to any Interrogatory is subject to destruction under any document retention or destruction program, the document should be exempted from any scheduled destruction until the conclusion of this lawsuit unless otherwise permitted by the Court.

11.     These Interrogatories are continuing in nature.  If, after answering these Interrogatories, You or any person acting on Your behalf obtain(s) or become(s) aware of additional information or document responsive to these Interrogatories, You are required to

7

serve a supplemental answer reflecting all such subsequently acquired information or document.  Supplemental answers are to be served as soon as reasonably possible after receipt of such information.

12.     When answering these Interrogatories, please provide as much detail and specificity as possible and provide detailed explanations for all contentions asserted in Your answers, including (without limitation) all facts that support and/or refute Your contentions.

## INTERROGATORIES

## INTERROGATORY NO. 1

Identify each person with knowledge of the facts relevant to the allegations in Texas's Complaint.  Your response should identify the facts about which each person has knowledge.

## INTERROGATORY NO. 2

For each 2017-present Texas Medicaid claim submitted by an Affiliate Defendant that You contend was a false or fraudulent claim, identify all facts that You contend demonstrate PPFA's knowledge of, involvement in, or control over such claim.

## INTERROGATORY NO. 3

For each 2017-present Texas Medicaid overpayment received by an Affiliate Defendant that You contend the Affiliate Defendant was obligated to report and repay, identify all facts that You contend demonstrate PPFA's knowledge of, involvement in, or control over the nonpayment of the claim, as well as all facts that You contend demonstrate that PPFA directed or controlled the Affiliate Defendant's alleged concealment of any overpayment or decision to not report or repay an overpayment.

## INTERROGATORY NO. 4

Identify all facts in Texas's Complaint or the Relator's Complaint that the Relator disclosed to You and of which You did not have knowledge before February 5, 2021.

## INTERROGATORY NO. 5

For each fact identified in response to Interrogatory No. 4, please:
   i.   identify the date on which You obtained knowledge of the information;
   ii.  identify the source of the information; and
   iii. describe, in detail, why You could not have obtained such information before February 5, 2021.

8

**INTERROGATORY NO. 6**

Identify the first date on which the State of Texas communicated with the Relator regarding any of the Affiliate Defendants' submission of claims to Texas Medicaid that You contend were false or fraudulent, and describe, in detail, the State of Texas's communication regarding such claims (including without limitation the nature, circumstances, participants, and contents of the communication).

**INTERROGATORY NO. 7**

Identify the first date on which the State of Texas communicated with the Relator regarding PPFA's alleged knowledge of, involvement in, or control over any claim that You contend was false or fraudulent, and describe, in detail, the State of Texas's communication regarding such claim (including without limitation the nature, circumstances, participants, and contents of the communication).

**INTERROGATORY NO. 8**

Identify the first date on which the State of Texas communicated with the Center for Medical Progress regarding any of the Affiliate Defendants' submission of claims to Texas Medicaid that You contend were false or fraudulent, and describe, in detail, the State of Texas's communication regarding such claims (including without limitation the nature, circumstances, participants, and contents of the communication).

**INTERROGATORY NO. 9**

Identify the first date on which the State of Texas communicated with the Center for Medical Progress regarding PPFA's alleged knowledge of, involvement in, or control over any claim that You contend was false or fraudulent, and describe, in detail, the State of Texas's communication regarding such claim (including without limitation the nature, circumstances, participants, and contents of the communication).

**INTERROGATORY NO. 10**

If you contend that PPFA had or has an obligation to repay Medicare overpayments made to any Affiliate Defendant, describe all facts (and identify all statutes, regulations and judicial decisions) supporting Your contention, including all facts supporting Your belief that PPFA should have made such payments despite the injunctions against the termination of provider status that are described in Texas's Complaint and/or the Relator's Complaint.

**INTERROGATORY NO. 11**

Describe all facts supporting the allegation in Paragraph 20 of Texas's Complaint that PPFA "provides significant monetary support to [the Affiliate Defendants] as well as other types of support and control."

**INTERROGATORY NO. 12**

Identify and describe all facts demonstrating that PPFA knowingly and improperly avoided or decreased an obligation to pay money under the Texas Medicaid program.

**INTERROGATORY NO. 13**

For each false or fraudulent claim that You allege PPFA had knowledge of, involvement in, or control over, state the damages that You contend are associated with the claim, the basis for calculating those damages, the amount, if any, of Texas's contribution (as opposed to federal contribution) to the associated Medicaid payment, and the amount of any penalties that You contend should be assessed for the claim.

Dated:   June 3, 2022                    **O'MELVENY & MYERS LLP**

*/s/ Danny S. Ashby*
Danny S. Ashby
    Texas Bar No. 01370960
    dashby@omm.com
Justin R. Chapa
    Texas Bar No. 24074019
    jchapa@omm.com
2501 North Harwood Street, Suite 1700
Dallas, Texas 75201
T: (972) 360-1900
F: (972) 360-1901

Leah Godesky (*pro hac vice* forthcoming)
    lgodesky@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
T: (310) 553-6700
F: (310) 246-6779

*Attorneys for Defendant Planned Parenthood Federation of America, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on June 3, 2022, a true and correct copy of the foregoing Defendant Planned

Parenthood Federation of America, Inc.'s First Set of Interrogatories to the State of Texas was

served by electronic mail on all counsel of record.

*/s/ Danny S. Ashby*

# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

United States of America

*ex rel.* ALEX DOE, Relator,

The State of Texas

*ex rel.* ALEX DOE, Relator,

The State of Louisiana

*ex rel.* ALEX DOE, Relator,

     Plaintiffs,

v.

Planned Parenthood Federation of America, Inc.,
Planned Parenthood Gulf Coast, Inc., Planned
Parenthood of Greater Texas, Inc., Planned
Parenthood South Texas, Inc., Planned Parenthood
Cameron County, Inc., Planned Parenthood San
Antonio, Inc.,

     Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

CIVIL ACTION NO. 2:21-CV-00022-Z

Date:    June 3, 2022

## DEFENDANT PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.'S FIRST REQUESTS FOR PRODUCTION TO THE RELATOR

Under Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant Planned

Parenthood Federation of America, Inc. ("PPFA") requests that Relator Alex Doe (i) respond

to these Requests for Production fully, and in writing, within 30 days after service, and (ii)

produce electronic copies of the documents to be delivered in accordance with the definitions

1

and instructions set forth below.[1]  These Requests for Production (each, "Request," and, collectively, "Requests") are continuing, and there is a continuing obligation on the Relator to amend and supplement its responses as additional documents and information become available.  PPFA reserves the right to serve supplemental and additional requests for production of documents.

## DEFINITIONS

Unless the terms of a particular Request specifically indicate otherwise, the following definitions are applicable throughout these Requests and are incorporated into each specific Request.

1.      "And" and "or" mean both and shall always be read to require the more inclusive answer.

2.      "Any" means "all" and vice versa.

3.      "Affiliate Defendants" mean Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood of South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc., and "Affiliate Defendant" means any one of the Affiliate Defendants.

4.      "Communication" means the transmission or expression of any thought, word, statement, fact, thing, idea, opinion, document, instruction, demand, or question, whether written or oral, whether made in person, by telephone, in a meeting, transmitted electronically or telegraphically, or transmitted in any other fashion.

5.      "Center for Medical Progress" means the non-profit organization by that name founded in or around 2013 and any current or former associated corporation or entity, as well as

---

[1] To the extent that the parties enter an agreement regarding the production of electronically stored information ("ESI"), the ESI agreement shall supersede these instructions.

any current and former officers, directors, employees, agents, attorneys, accountants, representatives, and any other person acting or purporting to act on behalf of the Center for Medical Progress.

6.      "Document" is used in its broadest sense to mean all materials within the scope of Federal Rule of Civil Procedure 34(a), including without limitation any designated tangible things, documents, or electronically stored information (including without limitation communications, writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations) stored in any medium from which information can be obtained either directly or, if necessary, after translation into a reasonably usable form, that are in the possession, custody, or control of You or Your counsel (as defined below).  "Document" further includes originals and all drafts and copies that differ in any respect from the original.

7.      "Louisiana" and "State of Louisiana" mean the government of the State of Louisiana, and any current or former subsidiary, division, affiliate, predecessor entity, agency, office, or department of the Louisiana government (including without limitation the Louisiana Department of Health and Louisiana Attorney General's Office) as well as any current and former directors, employees, agents, attorneys, accountants, representatives, and any other person acting or purporting to act on behalf of the government of the State of Louisiana (including any auditors or investigators hired by the Louisiana government).

8.      "Louisiana Medicaid" means the Medicaid program administered by the State of Louisiana, as well as any current and former directors, employees, agents, attorneys, accountants, representatives, and any other person acting or purporting to act on behalf of Louisiana's Medicaid program.

9.      "Media" means any news organization, application, or platform (including without limitation newspapers, websites, television networks, radio stations, podcasts, blogs, and social-media outlets) and their respective employees, agents, representatives, and any other person acting or purporting to act on behalf of a news organization, application, or platform.

10.      "Person" or "Persons" means a natural person, corporation, firm, proprietorship, partnership, association, company, joint venture, group, estate, trust, organization, business, and/or governmental entity or agency having a separate identification, recognized in law or in fact, or any other type of organization or entity.

11.      "PPFA" means Planned Parenthood Federation of America, Inc.

12.      "Regarding," "relating to," "related to," "in relation to," or "relates to" means relating in any way to, referring to, arising from, dealing with, consisting of, mentioning, discussing, describing, reflecting, concerning, memorializing, supporting, constituting, evidencing, comprising, recording, or in any other way pertaining to the subject, either in whole or in part, whether directly or indirectly.

13.      "Relator," "You," and "Your" mean Relator Alex Doe individually, and any current or former associated corporation or entity, as well as any current and former officers, directors, employees, agents, attorneys, accountants, representatives, and any other person acting or purporting to act on behalf of Relator.

14.      "Relator's Complaint" means the Complaint that Relator Alex Doe filed in this matter on or about February 5, 2021 (Dkt. No. 2).

15.      "Texas" and "State of Texas" mean the government of the State of Texas, and any current or former subsidiary, division, affiliate, predecessor entity, agency, office, or department of the Texas government, including without limitation the Texas Health & Human Services

Commission, the Texas Office of the Inspector General, the Texas Attorney General's Office, the Texas Department of State Health Services, and the Texas Department of Public Safety, as well as any current and former directors, employees, agents, attorneys, accountants, representatives, and any other person acting or purporting to act on behalf of the government of the State of Texas (including any auditors or investigators hired by the Texas government).

16.     "Texas's Complaint" means the State of Texas's Complaint In Intervention filed on or about January 6, 2022 (Dkt. No. 22).

17.     "Texas Medicaid" means the Medicaid program administered by the State of Texas, as well as any current and former directors, employees, agents, attorneys, accountants, representatives, and any other person acting or purporting to act on behalf of Texas's Medicaid program.

18.     "United States" shall mean the government of the United States of America, including any current or former subsidiary, division, affiliate, predecessor entity, office, or department of the United States government (including without limitation the United States Department of Health and Human Services, the Centers for Medicare and Medicaid Services, and the United States Department of Justice), as well as any current or former directors, employees, agents, attorneys, accountants, representatives, and any other person acting or purporting to act on behalf of the government of the United States (including without limitation any auditors or investigators hired by the United States government).

## **INSTRUCTIONS**

1.     You must respond to these Requests to the fullest extent required by the applicable law, including without limitation Federal Rules of Civil Procedure 26 and 34.

2.      You must produce documents as they are kept in the usual course of business or you must organize and label them to correspond to the categories in each Request.  Please produce all documents (including electronically stored information) with metadata intact in native form.

3.      Any Request propounded in the disjunctive shall also be read as if it is propounded in the conjunctive, and vice versa. Any Request propounded in the masculine shall also be read as if propounded in the feminine, and vice versa.  Any Request propounded in the singular shall also be read as if propounded in the plural, and vice versa.  Any Request propounded in the present tense shall also be read as if propounded in the past tense and vice versa.  The foregoing four sentences apply whenever appropriate in order to bring within the scope of these Requests any information that otherwise might be considered to be beyond their scope.

4.      You are required, in responding to these Requests, to obtain and furnish all non-privileged documents in your possession, custody, or control, including any documents in the possession of your attorneys, agents, and/or any other persons or entities acting, or purporting to act, on Your behalf or pursuant to Your direction or control.

5.      Your refusal to produce any document, or Your objection to any Request, in no way excuses You from the timely production of all other documents requested herein.

6.      These Requests are of a continuing nature, and You are required to serve supplemental productions if You obtain or become aware of additional or different responsive documents.

7.      For any documents You withhold because of a claim of privilege or immunity, please provide the information required by Federal Rule of Civil Procedure 26 and applicable case law.

8.     If any requested document is known to have existed and cannot now be located, or has been destroyed or discarded, please identify each such document by setting forth:

a. the name and identification by position, title, affiliation, or other appropriate information of the current or last-known custodian of each such document;

b. whether the document is lost or was destroyed or discarded;

c. the date of loss, destruction, or discard;

d. the manner of and reason for destruction or discard, if any;

e. the efforts made to locate lost or misplaced documents; and

f. a statement describing the document, including a summary of its contents, the identity of its author and the persons to whom it was sent or shown, or who had possession, custody, or control of the document.

9.     If any documents that are no longer in existence contained information responsive to any Request, then in the answer to that Request:

a. identify all information contained in the documents;

b. identify each type of document (e.g., letters, ledgers) that contained the information;

c. state the time period during which the documents were maintained;

d. state the circumstances under which the documents ceased to exist;

e. identify all persons who have knowledge of the circumstances under which the documents ceased to exist; and

f. identify all persons who have knowledge or had knowledge of the documents and their contents.

10.     The time period that applies to these Requests is 2010-to-present unless otherwise stated in a specific Request.

7

11.     If any requested document is subject to destruction under any document retention or destruction program, the document should be exempted from any scheduled destruction until the full and final resolution of this litigation unless otherwise permitted by the Court.

12.     It is not grounds for objection that the documents sought are in the possession of the party serving these Requests.  It is not grounds for objection that the documents sought may be inadmissible at trial.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1

Documents sufficient to show and all communications relating to all paid and unpaid Medicaid claims that You contend were false or fraudulent and which any Affiliate Defendant presented or caused to be presented to Medicaid, including without limitation Medicaid claim documents, internal communications, and communications with third parties.

### REQUEST FOR PRODUCTION NO. 2

All documents and communications relating to PPFA's alleged involvement in, control over, or knowledge of any paid or unpaid Medicaid claims that You contend were false or fraudulent and which any Affiliate Defendant presented or caused to be presented to Medicaid, including without limitation Medicaid claim documents, internal communications, and communications with third parties.

### REQUEST FOR PRODUCTION NO. 3

Documents sufficient to show and all communications relating to all paid Medicaid claims that You contend should have been repaid to Medicaid and which any Affiliate Defendant presented or caused to be presented to Medicaid, including without limitation Medicaid claim documents, internal communications, and communications with third parties.

### REQUEST FOR PRODUCTION NO. 4

All documents and communications relating to PPFA's alleged involvement in, control over, or knowledge of any paid Medicaid claims that You contend should have been repaid to Medicaid and which any Affiliate Defendant presented or caused to be presented to Medicaid, including without limitation Medicaid claim documents, internal communications, and communications with third parties.

**REQUEST FOR PRODUCTION NO. 5**

All communications with the State of Texas relating to PPFA or Your allegations and claims in this litigation, including without limitation all documents provided to the State of Texas before the filing of the Relator's Complaint..

**REQUEST FOR PRODUCTION NO. 6**

All communications with the State of Louisiana relating to PPFA or Your allegations and claims in this litigation, including without limitation all documents provided to the State of Louisiana before the filing of the Relator's Complaint.

**REQUEST FOR PRODUCTION NO. 7**

All communications with the United States relating to PPFA or Your allegations and claims in this litigation, including without limitation all documents provided to the United States before the filing of the Relator's Complaint.

**REQUEST FOR PRODUCTION NO. 8**

All communications with the Center for Medical Progress relating to PPFA or Your allegations and claims in this litigation.

**REQUEST FOR PRODUCTION NO. 9**

All communications between You and the Media relating to PPFA or your allegations and claims in this litigation.

**REQUEST FOR PRODUCTION NO. 10**

All documents relating to PPFA's alleged involvement in or knowledge of any alleged violation of medical and/or ethical standard or state or federal law by any Affiliate Defendant in connection with the provision of fetal tissue to any third parties.

**REQUEST FOR PRODUCTION NO. 11**

All documents relating to PPFA's alleged involvement in or knowledge of the alleged provision of fetal tissue by Defendant Planned Parenthood Gulf Coast, Inc. to the University of Texas Medical Branch.

**REQUEST FOR PRODUCTION NO. 12**

All documents relating to any formal or informal statements regarding Your allegations and claims against PPFA in this litigation by any person who claims to have or You claim to have knowledge of facts relevant to this case, including without limitation any notes relating to such statements.

**REQUEST FOR PRODUCTION NO. 13**

All documents relating to Your claim for damages or penalties.

**REQUEST FOR PRODUCTION NO. 14**

To the extent not already produced in response to the above Requests, all documents on which the Relator relies to support any of the allegations relating to PPFA in Relator's Complaint.

**REQUEST FOR PRODUCTION NO. 15**

All documents provided by or on behalf of You to any person that You designate as an expert witness in this litigation.

**REQUEST FOR PRODUCTION NO. 16**

To the extent not already produced in response to the above Requests, all documents that relate to any of the matters referenced in PPFA's First Set of Interrogatories to the Relator or Your responses to PPFA's First Set of Interrogatories.

Dated:   June 3, 2022

**O'MELVENY & MYERS LLP**

*/s/ Danny S. Ashby*

Danny S. Ashby
Texas State Bar No. 01370960
  dashby@omm.com
Justin R. Chapa
Texas State Bar No. 24074019
  jchapa@omm.com
2501 N. Harwood Street
Suite 1700
Dallas, TX 75201
T: (972) 360-1900
F: (972) 360-1901

Leah Godesky (*pro hac vice* forthcoming)
  lgodesky@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
T: (310) 553-6700
F: (310) 246-6779

*Attorneys for Defendant Planned Parenthood
Federation of America, Inc.*

11

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 3, 2022, a true and correct copy of the foregoing Defendant Planned

Parenthood Federation of America, Inc.'s First Requests of Production to the Relator was served

by electronic mail on all counsel of record.

*/s/ Danny S. Ashby*

# EXHIBIT 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| United States of America | § | |
| | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| | § | CIVIL ACTION NO. 2:21-CV-00022-Z |
| | § | |
| The State of Texas | § | |
| | § | Date:      June 3, 2022 |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| | § | |
| | § | |
| The State of Louisiana | § | |
| | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| Planned Parenthood Federation of America, Inc., | § | |
| Planned Parenthood Gulf Coast, Inc., Planned | § | |
| Parenthood of Greater Texas, Inc., Planned | § | |
| Parenthood South Texas, Inc., Planned Parenthood | § | |
| Cameron County, Inc., Planned Parenthood San | § | |
| Antonio, Inc., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## DEFENDANT PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.'S FIRST REQUESTS FOR PRODUCTION TO THE STATE OF TEXAS

Under Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant Planned

Parenthood Federation of America, Inc. ("PPFA") requests that the State of Texas (i) respond

to these Requests for Production fully and in writing, within 30 days after service, and (ii)

produce electronic copies of the documents to be delivered in accordance with the definitions

1

and instructions set forth below.[1]  These Requests for Production (each, "Request," and, collectively, "Requests") are continuing, and there is a continuing obligation on the State of Texas to amend and supplement its responses as additional documents and information become available.  PPFA reserves the right to serve supplemental and additional requests for production of documents.

## DEFINITIONS

Unless the terms of a particular Request specifically indicate otherwise, the following definitions are applicable throughout these Requests and are incorporated into each specific Request.

1.     "And" and "or" mean both and shall always be read to require the more inclusive answer.

2.     "Any" means "all" and vice versa.

3.     "Affiliate Defendants" mean Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood of South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc., and "Affiliate Defendant" means any one of the Affiliate Defendants.

4.     "Communication" means the transmission or expression of any thought, word, statement, fact, thing, idea, opinion, document, instruction, demand, or question, whether written or oral, whether made in person, by telephone, in a meeting, transmitted electronically or telegraphically, or transmitted in any other fashion.

5.     "Center for Medical Progress" means the non-profit organization by that name founded in or around 2013 and any current or former associated corporation or entity, as well as

---

[1] To the extent that the parties enter an agreement regarding the production of electronically stored information ("ESI"), the ESI agreement shall supersede these instructions.

any current and former officers, directors, employees, agents, attorneys, accountants, representatives, and any other person acting or purporting to act on behalf of the Center for Medical Progress.

6.     "Document" is used in its broadest sense to mean all materials within the scope of Federal Rule of Civil Procedure 34(a), including without limitation any designated tangible things, documents, or electronically stored information (including without limitation communications, writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations) stored in any medium from which information can be obtained either directly or, if necessary, after translation into a reasonably usable form, that are in the possession, custody, or control of You or Your counsel (as defined below).  "Document" further includes originals and all drafts and copies that differ in any respect from the original.

7.     "Louisiana" means the government of the State of Louisiana, and any current or former subsidiary, division, affiliate, predecessor entity, agency, office, or department of the Louisiana government (including without limitation the Louisiana Department of Health and Louisiana Attorney General's Office) as well as any current and former directors, employees, agents, attorneys, accountants, representatives, and any other person acting or purporting to act on behalf of the government of the State of Louisiana (including any auditors or investigators hired by the Louisiana government).

8.     "Media" means any news organization, application, or platform (including without limitation newspapers, websites, television networks, radio stations, podcasts, blogs, and social-media outlets) and their respective employees, agents, representatives, and any other person acting or purporting to act on behalf of a news organization, application, or platform.

9.      "Person" or "Persons" means a natural person, corporation, firm, proprietorship, partnership, association, company, joint venture, group, estate, trust, organization, business, and/or governmental entity or agency having a separate identification, recognized in law or in fact, or any other type of organization or entity.

10.      "PPFA" means Planned Parenthood Federation of America, Inc.

11.      "Regarding," "relating to," "related to," "in relation to," or "relates to" means relating in any way to, referring to, arising from, dealing with, consisting of, mentioning, discussing, describing, reflecting, concerning, memorializing, supporting, constituting, evidencing, comprising, recording, or in any other way pertaining to the subject, either in whole or in part, whether directly or indirectly.

12.      "Relator" means Relator Alex Doe individually, and any current or former associated corporation or entity, as well as any current and former officers, directors, employees, agents, attorneys, accountants, representatives, and any other person acting or purporting to act on behalf of Relator.

13.      "Texas," "State of Texas," "You," and "Your" mean the government of the State of Texas, and any current or former subsidiary, division, affiliate, predecessor entity, agency, office, or department of the Texas government, including without limitation the Texas Health & Human Services Commission, the Texas Office of the Inspector General, the Texas Attorney General's Office, the Texas Department of State Health Services, and the Texas Department of Public Safety, as well as any current and former directors, employees, agents, attorneys, accountants, representatives, and any other person acting or purporting to act on behalf of the government of the State of Texas (including any auditors or investigators hired by the Texas government).

4

14.    "Texas's Complaint" means the State of Texas's Complaint In Intervention filed on or about January 6, 2022 (Dkt. No. 22).

15.    "Texas Medicaid" means the Medicaid program administered by the State of Texas, as well as any current and former directors, employees, agents, attorneys, accountants, representatives, and any other person acting or purporting to act on behalf of Texas's Medicaid program.

## INSTRUCTIONS

1.    You must respond to these Requests to the fullest extent required by the applicable law, including without limitation Federal Rules of Civil Procedure 26 and 34.

2.    You must produce documents as they are kept in the usual course of business or you must organize and label them to correspond to the categories in each Request.  Please produce all documents (including electronically stored information) with metadata intact in native form.

3.    Any Request propounded in the disjunctive shall also be read as if it is propounded in the conjunctive, and vice versa. Any Request propounded in the masculine shall also be read as if propounded in the feminine, and vice versa.  Any Request propounded in the singular shall also be read as if propounded in the plural, and vice versa.  Any Request propounded in the present tense shall also be read as if propounded in the past tense and vice versa.  The foregoing four sentences apply whenever appropriate in order to bring within the scope of these Requests any information that otherwise might be considered to be beyond their scope.

4.    You are required, in responding to these Requests, to obtain and furnish all non-privileged documents in your possession, custody, or control, including any documents in the possession of your attorneys, agents, and/or any other persons or entities acting, or purporting to act, on Your behalf or pursuant to Your direction or control.

5

5.      Your refusal to produce any document, or Your objection to any Request, in no way excuses You from the timely production of all other documents requested herein.

6.      These Requests are of a continuing nature and You are required to serve supplemental productions if You obtain or become aware of additional or different responsive documents.

7.      For any documents You withhold because of a claim of privilege or immunity, please provide the information required by Federal Rule of Civil Procedure 26 and applicable case law.

8.      If any requested document is known to have existed and cannot now be located, or has been destroyed or discarded, please identify each such document by setting forth:

   a.   the name and identification by position, title, affiliation, or other appropriate information of the current or last-known custodian of each such document;

   b.   whether the document is lost or was destroyed or discarded;

   c.   the date of loss, destruction, or discard;

   d.   the manner of and reason for destruction or discard, if any;

   e.   the efforts made to locate lost or misplaced documents; and

   f.   a statement describing the document, including a summary of its contents, the identity of its author and the persons to whom it was sent or shown, or who had possession, custody, or control of the document.

9.      If any documents that are no longer in existence contained information responsive to any Request, then in the answer to that Request:

   a.   identify all information contained in the documents;

   b.   identify each type of document (e.g., letters, ledgers) that contained the information;

c. state the time period during which the documents were maintained;

d. state the circumstances under which the documents ceased to exist;

e. identify all persons who have knowledge of the circumstances under which the documents ceased to exist; and

f. identify all persons who have knowledge or had knowledge of the documents and their contents.

10.     If any requested document is subject to destruction under any document retention or destruction program, the document should be exempted from any scheduled destruction until the full and final resolution of this litigation unless otherwise permitted by the Court.

11.     It is not grounds for objection that the documents sought are in the possession of the party serving these Requests.  It is not grounds for objection that the documents sought may be inadmissible at trial.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1

Documents sufficient to show and all communications relating to all 2017-to-present paid and unpaid Texas Medicaid claims that You contend were false or fraudulent and which any Affiliate Defendant presented or caused to be presented to Texas Medicaid, including without limitation Medicaid claim documents, internal communications, and communications with third parties.

### REQUEST FOR PRODUCTION NO. 2

All documents and communications relating to PPFA's alleged involvement in, control over, or knowledge of any 2017-to-present paid or unpaid Texas Medicaid claims that You contend were false or fraudulent and which any Affiliate Defendant presented or caused to be presented to Texas Medicaid, including without limitation Medicaid claim documents, internal communications, and communications with third parties.

### REQUEST FOR PRODUCTION NO. 3

Documents sufficient to show and all communications relating to all 2017-to-present paid Texas Medicaid claims that You contend should have been repaid to Texas Medicaid and which

any Affiliate Defendant presented or caused to be presented to Texas Medicaid, including without limitation Medicaid claim documents, internal communications, and communications with third parties.

## REQUEST FOR PRODUCTION NO. 4

All documents and communications relating to PPFA's alleged involvement in, control over, or knowledge of any 2017-to-present paid Texas Medicaid claims that You contend should have been repaid to Texas Medicaid and which any Affiliate Defendant presented or caused to be presented to Texas Medicaid, including without limitation Medicaid claim documents, internal communications, and communications with third parties.

## REQUEST FOR PRODUCTION NO. 5

All 2013-to-present communications with the Relator, including without limitation any communications between the Texas Attorney General and the Relator.

## REQUEST FOR PRODUCTION NO. 6

All 2013-to-present documents and communications relating to the Relator, including without limitation all internal communications and communications with third parties.

## REQUEST FOR PRODUCTION NO. 7

All 2013-to-present communications with the Center for Medical Progress, including without limitation any communications between the Texas Attorney General and the Center for Medical Progress.

## REQUEST FOR PRODUCTION NO. 8

All 2010-to-present documents relating to any fetal-tissue study in which any Texas Medicaid provider other than the Affiliate Defendants participated.

## REQUEST FOR PRODUCTION NO. 9

All 2013-to-present documents relating to whether Texas Medicaid did, could, or should seek repayment of claims from any Affiliate Defendant, including without limitation internal communications and communications with Texas Medicaid.

## REQUEST FOR PRODUCTION NO. 10

All 2010-to-present documents relating to a Texas Medicaid provider's ability or inability to receive and retain payments for Texas Medicaid claims during the pendency of a litigation or administrative proceeding regarding the provider's qualifications under the Texas Medicaid program.

**REQUEST FOR PRODUCTION NO. 11**

All 2010-to-present documents relating to a Texas Medicaid provider's ability or inability to receive and retain payments for Texas Medicaid claims during the pendency of a temporary restraining order or preliminary injunction barring termination of the provider from the Texas Medicaid program.

**REQUEST FOR PRODUCTION NO. 12**

All 2010-to-present documents relating to a Texas Medicaid provider's obligation or lack of obligation to repay claims received during the pendency of a temporary restraining order or preliminary injunction barring termination of the provider from the Texas Medicaid program.

**REQUEST FOR PRODUCTION NO. 13**

All 2013-to-present communications with Louisiana relating to PPFA or any of the Affiliate Defendants.

**REQUEST FOR PRODUCTION NO. 14**

All 2013-to-present communications between You and the Media relating to Your or Relator's allegations and claims in this litigation.

**REQUEST FOR PRODUCTION NO. 15**

All documents relating to the allegation in Paragraph 20 of Texas's Complaint that PPFA "provides significant monetary support to [the Affiliate Defendants] as well as other types of support and control."

**REQUEST FOR PRODUCTION NO. 16**

All documents relating to any formal or informal statements regarding Your allegations and claims against PPFA in this litigation by any person who claims to have or You claim to have knowledge of facts relevant to this case, including without limitation any notes relating to such statements.

**REQUEST FOR PRODUCTION NO. 17**

All documents relating to Your claim for damages or penalties.

**REQUEST FOR PRODUCTION NO. 18**

To the extent not already produced in response to any of the above Requests, all documents on which the State of Texas relies to support any of the allegations in Texas's Complaint relating to PPFA.

**REQUEST FOR PRODUCTION NO. 19**

All documents provided by or on behalf of You to any person that You designate as an expert witness in this litigation.

**REQUEST FOR PRODUCTION NO. 20**

To the extent not already produced in response to any of the above Requests, all documents that relate to any of the matters referenced in PPFA's First Set of Interrogatories to the State of Texas or Your responses to PPFA's First Set of Interrogatories.

Dated:    June 3, 2022                              **O'MELVENY & MYERS LLP**

                                                   */s/ Danny S. Ashby*

                                                   Danny S. Ashby
                                                   Texas State Bar No. 01370960
                                                        dashby@omm.com
                                                   Justin R. Chapa
                                                   Texas State Bar No. 24074019
                                                        jchapa@omm.com
                                                   2501 N. Harwood Street
                                                   Suite 1700
                                                   Dallas, TX 75201
                                                   T: (972) 360-1900
                                                   F: (972) 360-1901

                                                   Leah Godesky (*pro hac vice* forthcoming)
                                                        lgodesky@omm.com
                                                   1999 Avenue of the Stars, 8th Floor
                                                   Los Angeles, CA 90067
                                                   T: (310) 553-6700
                                                   F: (310) 246-6779

                                                   *Attorneys for Defendant Planned Parenthood*
                                                   *Federation of America, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on June 3, 2022, a true and correct copy of the foregoing Defendant Planned

Parenthood Federation of America, Inc.'s First Requests of Production to the State of Texas was

served by electronic mail on all counsel of record.

*/s/ Danny S. Ashby*

# EXHIBIT 7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *EX REL.* DOE, *et al.,* § § § § | |
| *Plaintiffs,* § § | |
| v. § § | Civil Action No. 2:21-CV-00022-Z |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., *et al.,* § § § § | |
| *Defendants.* § | |

---

**RELATOR'S OBJECTIONS AND RESPONSES TO PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.'S FIRST SET OF INTERROGATORIES TO RELATOR**

---

To:   Leah Godesky, O'Melveny & Myers LLP, 1999 Avenue of the Stars, 8th Floor, Los Angeles, California 90067, Amanda Santella, O'Melvany & Myers LLP, 1625 Eye Street NW, Washington, DC 20006, Danny S. Ashby, Justin R. Chapa, O'Melveny & Myers LLP, 2501 North Harwood Street, Suite 1700, Dallas, Texas 75201, Attorneys for Defendant Planned Parenthood Federation of America, Inc.

Relator Alex Doe serves these Objections and Responses to Planned Parenthood Federation of America, Inc.'s First Set of Interrogatories to Relator.

## OBJECTIONS

1.      Relator objects to the Interrogatories, including the "Definitions" and "Instructions," where they exceed the requirements imposed by Federal Rule of Civil Procedure (FRCP) 33, other FRCPs, or elsewhere. Relator will respond to the Interrogatories in accordance with FRCP 33, other FRCPs, and applicable law.

1

2.     Relator objects to the Interrogatories where they seek disclosure of information protected by the attorney-client privilege, the work-product doctrine, the investigative-communications privilege, the common-interest privilege, and/or any other privileges and exemptions set forth in applicable law.

3.     Relator objects to the Interrogatories where they seek information not within Relator's possession, custody, or control.

4.     Relator objects to the Interrogatories where they call for information to be disclosed that is protected by the HIPAA Privacy Rule or is confidential by law.

5.     Relator objects to the Interrogatories where they are not properly limited to an appropriate time period. Answering Interrogatories outside of an appropriate time period will be overly broad, unduly burdensome, and neither relevant to any party's claim or defense, nor proportional to the needs of the case, under FRCP 26(b)(1).

6.     Defendants' definition of the term "Communication" is overly broad, vague, and answering Interrogatories by using this definition would be unduly burdensome. Defendants' definition of the term includes "the transmission or expression of any thought, word, statement, fact, thing, idea, opinion, document, instruction, demand, or question, whether written or oral, whether made in person, by telephone, in a meeting, transmitted electronically or telegraphically, or transmitted in any other fashion." Relator will interpret the terms "communication" consistent with applicable FRCPs, rules, law, and common usage.

2

7.     Defendants' definition of the term "Describe" is overly broad, vague, and answering Interrogatories by this definition or searching for and identifying "any document or communication" with this definition would be unduly burdensome. Defendants' definition of the term includes "to identify any document or communication concerning the item in question and to provide a complete factual summary chronologically setting forth the substance of, and identifying any person participating in, witnessing, or having knowledge of, whether firsthand or otherwise, any fact, action, occurrence, conduct, event, condition, or circumstance concerning the information in question." Relator will interpret the terms "describe" consistent with applicable FRCPs, rules, law, and common usage.

8.     Defendants' definition of the term "Document" is overly broad, vague, and answering Interrogatories using that definition would be unduly burdensome where the definition departs from the FRCPs and other applicable law; including but not limited to, for example, adding "any designated tangible things," to the definition of "document." Relator will interpret the term "document" consistent with FRCP 33 and other applicable FRCPs, rules, and law.

9.     Defendants' definition of the terms "Regarding," "relating to," "related to," "in relation to," or "relates to" is overly broad, vague, and answering Interrogatories using that definition would be unduly burdensome. Defendants' definition of the terms includes these unlimited descriptions: "relating in any way to, referring to, arising from, dealing with, consisting of, mentioning, discussing, describing, reflecting, concerning, memorializing, supporting, constituting,

evidencing, comprising, recording, or in any other way pertaining to the subject, either in whole or in part, whether directly or indirectly." Relator will interpret the terms "Regarding," "relating to," "related to," "in relation to," or "relates to" consistent with applicable FRCPs, rules, law, and common usage.

10. Defendants' definition and use of the terms "Relator," "You," and "Your" is overly broad and neither relevant to any party's claim or defense, nor proportional to the needs of the case, under FRCP 26(b)(1). Answering Interrogatories using that definition would be unduly burdensome. These terms as defined by Defendants include persons and entities with no relation to this matter. The terms' vagueness and overbreadth make any Interrogatory with the terms as defined by Defendants exceed the scope of the specific claims and issues in this case and therefore makes those Interrogatories objectionable. Relator will interpret and respond to Interrogatories consistent with applicable FRCPs, rules, law, and common usage.

11. Relator objects to all of Defendants' Instructions which exceed the requirements of FRCP 33, or other applicable Rules or law. Relator will answer the Interrogatories as required by FRCP 33, and other applicable Rules and law.

12. The answers made at this time are without prejudice to Relator's rights to amend or supplement its answers as appropriate under the FRCPs or other rules or law.

13.     By answering these Interrogatories, Relator does not concede the relevance or admissibility of the information. Relator further does not waive, but instead, expressly preserves, the objections here.

14.     Relator incorporates by reference the objections above into the answers set forth below. The failure to repeat any of the objections above does not waive any objection to the specific Interrogatory.

15.     Relator intends to not produce documents which are privileged under the attorney-client, common interest, work-product, and government investigative privileges and protections. Any production of documents which are covered by the attorney-client, common interest, work product and government investigative privileges and protections is inadvertent under Federal Rule of Evidence (FRE) 502.

## INTERROGATORIES

### INTERROGATORY NO. 1

Identify each person with knowledge of the facts relevant to the allegations in the Relator's Complaint. Your response should identify the facts about which each person has knowledge.

**ANSWER**:

Relator refers Defendants to the persons listed in the parties' Initial Disclosures and the facts set forth therein.

### INTERROGATORY NO. 2:

For each 2010-to-present Texas Medicaid claim submitted by an Affiliate Defendant that You contend was a false or fraudulent claim, identify all facts that

You contend demonstrate PPFA's knowledge of, involvement in, or control over the claim.

**ANSWER:**

Relator refers Defendants to the Expert Reports of Donald Lochabay and the documents cited therein and produced to Defendants, and further refers Defendants to the documents contained in the trial and appellate record in the federal court litigation involving Defendants referenced in Relator's Complaint, including but not limited to documents and facts regarding the control and relationship between PPFA and PPFA Affiliates. Relator further states that PPFA provides medical services through approximately 50 affiliates nationwide, including the PPFA Affiliates. PPFA Affiliates pay dues to PPFA and in exchange for these payments and provided that PPFA Affiliates comply with PPFA's policies, PPFA Affiliates can hold themselves out to the public using the named "Planned Parenthood" and receive other benefits like monetary support and legal representation. PPFA provided legal representation to the PPFA Affiliates in federal court litigation involving the PPFA Affiliates termination from Medicaid. PPFA also exercises functional control over the PPFA Affiliates. It sets medical and operational standards for PPFA Affiliates and requires all PPFA Affiliates to provide certain core medical services. PPFA must review and approve all PPFA Affiliate research projects and PPFA sets policies that govern their medical practices, mandates certain informed consent forms to be used by PPFA Affiliates, and works with PPFA Affiliates to share best practices and industry information. PPFA Affiliates' medical services, including their enrollment and participation in Medicaid, are

controlled by PPFA through PPFA's mandatory medical standards and guidelines, financial support, PPFA's counsel providing representation to the PPFA Affiliates in litigation over their termination from Medicaid, PPFA's leadership and managerial influence and control of the PPFA Affiliates, and PPFA's organizational structure.

**INTERROGATORY NO. 3:**

For each 2010-to-present Texas Medicaid overpayment received by an Affiliate Defendant that You contend the Affiliate Defendant was obligated to report and repay, identify all facts that You contend demonstrate PPFA's knowledge of, involvement in, or control over the nonpayment of the claim, as well as all facts that You contend demonstrate that PPFA directed or controlled the Affiliate Defendant's alleged concealment of any overpayment or decision to not report or repay an overpayment.

**ANSWER:**

Relator refers Defendants to the Expert Reports of Donald Lochabay and the documents cited therein and produced to Defendants, and further refers Defendants to the documents contained in the trial and appellate record in the federal court litigation involving Defendants referenced in Relator's Complaint, including but not limited to documents and facts regarding the control and relationship between PPFA and PPFA Affiliates. Relator further states that PPFA provides medical services through approximately 50 affiliates nationwide, including the PPFA Affiliates. PPFA Affiliates pay dues to PPFA and in exchange for these payments and provided that PPFA Affiliates comply with PPFA's policies, PPFA Affiliates can hold themselves out to the

public using the named "Planned Parenthood" and receive other benefits like monetary support and legal representation. PPFA provided legal representation to the PPFA Affiliates in federal court litigation involving the PPFA Affiliates termination from Medicaid. PPFA also exercises functional control over the PPFA Affiliates. It sets medical and operational standards for PPFA Affiliates and requires all PPFA Affiliates to provide certain core medical services. PPFA must review and approve all PPFA Affiliate research projects and PPFA sets policies that govern their medical practices, mandates certain informed consent forms to be used by PPFA Affiliates, and works with PPFA Affiliates to share best practices and industry information. PPFA Affiliates' medical services, including their enrollment and participation in Medicaid, are controlled by PPFA through PPFA's mandatory medical standards and guidelines, financial support, PPFA's counsel providing representation to the PPFA Affiliates in litigation over their termination from Medicaid, PPFA's leadership and managerial influence and control of the PPFA Affiliates, and PPFA's organizational structure.

**INTERROGATORY NO. 4:**

For each 2010-to-present Louisiana Medicaid claim submitted by an Affiliate Defendant that You contend was a false or fraudulent claim, identify all facts that You contend demonstrate PPFA's knowledge of, involvement in, or control over such claim.

**RESPONSE:**

Relator refers Defendants to the Expert Reports of Donald Lochabay and the documents cited therein and produced to Defendants, and further refers Defendants to

the documents contained in the trial and appellate record in the federal court litigation involving Defendants referenced in Relator's Complaint, including but not limited to documents and facts regarding the control and relationship between PPFA and PPFA Affiliates. Relator further states that PPFA provides medical services through approximately 50 affiliates nationwide, including the PPFA Affiliates. PPFA Affiliates pay dues to PPFA and in exchange for these payments and provided that PPFA Affiliates comply with PPFA's policies, PPFA Affiliates can hold themselves out to the public using the named "Planned Parenthood" and receive other benefits like monetary support and legal representation. PPFA provided legal representation to the PPFA Affiliates in federal court litigation involving the PPFA Affiliates termination from Medicaid. PPFA also exercises functional control over the PPFA Affiliates. It sets medical and operational standards for PPFA Affiliates and requires all PPFA Affiliates to provide certain core medical services. PPFA must review and approve all PPFA Affiliate research projects and PPFA sets policies that govern their medical practices, mandates certain informed consent forms to be used by PPFA Affiliates, and works with PPFA Affiliates to share best practices and industry information. PPFA Affiliates' medical services, including their enrollment and participation in Medicaid, are controlled by PPFA through PPFA's mandatory medical standards and guidelines, financial support, PPFA's counsel providing representation to the PPFA Affiliates in litigation over their termination from Medicaid, PPFA's leadership and managerial influence and control of the PPFA Affiliates, and PPFA's organizational structure.

9

**INTERROGATORY NO. 5:**

For each 2010-to-present Louisiana Medicaid overpayment received by an Affiliate Defendant that You contend the Affiliate Defendant was obligated to report and repay, identify all facts that You contend demonstrate PPFA's knowledge of, involvement in, or control over the nonpayment of the claim, as well as all facts that You contend demonstrate that PPFA directed or controlled the Affiliate Defendant's alleged concealment of any overpayment or decision to not report or repay an overpayment.

**RESPONSE:**

Relator refers Defendants to the Expert Reports of Donald Lochabay and the documents cited therein and produced to Defendants, and further refers Defendants to the documents contained in the trial and appellate record in the federal court litigation involving Defendants referenced in Relator's Complaint, including but not limited to documents and facts regarding the control and relationship between PPFA and PPFA Affiliates. Relator further states that PPFA provides medical services through approximately 50 affiliates nationwide, including the PPFA Affiliates. PPFA Affiliates pay dues to PPFA and in exchange for these payments and provided that PPFA Affiliates comply with PPFA's policies, PPFA Affiliates can hold themselves out to the public using the named "Planned Parenthood" and receive other benefits like monetary support and legal representation. PPFA provided legal representation to the PPFA Affiliates in federal court litigation involving the PPFA Affiliates termination from Medicaid. PPFA also exercises functional control over the PPFA Affiliates. It sets

medical and operational standards for PPFA Affiliates and requires all PPFA Affiliates to provide certain core medical services. PPFA must review and approve all PPFA Affiliate research projects and PPFA sets policies that govern their medical practices, mandates certain informed consent forms to be used by PPFA Affiliates, and works with PPFA Affiliates to share best practices and industry information. PPFA Affiliates' medical services, including their enrollment and participation in Medicaid, are controlled by PPFA through PPFA's mandatory medical standards and guidelines, financial support, PPFA's counsel providing representation to the PPFA Affiliates in litigation over their termination from Medicaid, PPFA's leadership and managerial influence and control of the PPFA Affiliates, and PPFA's organizational structure.

**INTERROGATORY NO. 6:**

Identify the first date on which the Relator communicated with the State of Texas regarding any of the Affiliate Defendants' submission of claims to Texas Medicaid that You contend were false or fraudulent, and describe, in detail, the Relator's communication with the State of Texas regarding such claims (including without limitation the nature, circumstances, participants, and contents of the communication).

**RESPONSE:**

This Interrogatory is overbroad because of the objectionably very broad definition of "communications." This Interrogatory asks for communications between Relator and the State of Texas and seeks information which is covered by the attorney-client, common interest, work product, and government investigative privileges and

protections. This is especially true with the broad definition of "communications." Subject to Relator's objections and statements of privileges, Relator states that Relator disclosed the material facts alleged in Relator's Complaint to the State of Texas on February 5, 2021 prior to filing Relator's Complaint.

**INTERROGATORY NO. 7:**

Identify the first date on which the Relator communicated with the State of Texas regarding PPFA's alleged knowledge of, involvement in, or control over any claim that You contend was false or fraudulent, and describe, in detail, the Relator's communication with the State of Texas regarding such claim (including without limitation the nature, circumstances, participants, and contents of the communication).

**RESPONSE:**

This Interrogatory is overbroad because of the objectionably very broad definition of "communications." This Interrogatory asks for communications between Relator and the State of Texas and seeks information which is covered by the attorney-client, common interest, work product, and government investigative privileges and protections. This is especially true with the broad definition of "communications." Subject to Relator's objections and statements of privilege, Relator states that Relator disclosed the material facts alleged in Relator's Complaint to the State of Texas on February 5, 2021 prior to filing Relator's Complaint.

**INTERROGATORY NO. 8:**

Identify the first date on which the Relator communicated with the State of Louisiana regarding any of the Affiliate Defendants' submission of claims to Louisiana Medicaid that You contend were false or fraudulent, and describe, in detail, the Relator's communication with the State of Louisiana regarding such claims (including without limitation the nature, circumstances, participants, and contents of the communication).

**RESPONSE:**

This Interrogatory is overbroad because of the objectionably very broad definition of "communications." This interrogatory asks for communications between Relator and the State of Louisiana and seeks information which is covered by the attorney-client, common interest, work product, and government investigative privileges and protections. This is especially true with the broad definition of "communications." Subject to Relator's objections and statements of Privilege, Relator states that Relator disclosed the material facts alleged in Relator's Complaint to the State of Louisiana on February 5, 2021 prior to filing Relator's Complaint.

**INTERROGATORY NO. 9:**

Identify the first date on which the Relator communicated with the State of Louisiana regarding PPFA's alleged knowledge of, involvement in, or control over any claim that You contend was false or fraudulent, and describe, in detail, the Relator's communication with the State of Louisiana regarding such claim (including without

limitation the nature, circumstances, participants, and contents of the communication).

**RESPONSE:**

This Interrogatory is overbroad because of the objectionably very broad definition of "communications." This Interrogatory asks for communications between Relator and the State of Louisiana and seeks information which is covered by the attorney-client, common interest, work product, and government investigative privileges and protections. This is especially true with the broad definition of "communications." Subject to Relator's objections and statements of privilege, Relator states that Relator disclosed the material facts alleged in Relator's Complaint to the State of Louisiana on February 5, 2021 prior to filing Relator's Complaint.

**INTERROGATORY NO. 10:**

Identify the first date on which the Relator communicated with the United States regarding any of the Affiliate Defendants' submission of claims to Texas or Louisiana Medicaid that You contend were false or fraudulent, and describe, in detail, the Relator's communication with the United States regarding such claims (including without limitation the nature, circumstances, participants, and contents of the communication).

**RESPONSE:**

This Interrogatory is overbroad because of the objectionably very broad definition of "communications." This interrogatory asks for communications between Relator and the United States and seeks information which is covered by the attorney-

client, common interest, work product, and government investigative privileges and protections. This is especially true with the broad definition of "communications." Subject to Relator's objections and statements of privilege, Relator states that Relator disclosed the material facts alleged in Relator's Complaint to the United States on February 5, 2021 prior to filing Relator's Complaint.

**INTERROGATORY NO. 11:**

Identify the first date on which the Relator communicated with the United States regarding PPFA's alleged knowledge of, involvement in, or control over any claim that You contend was false or fraudulent, and describe, in detail, the Relator's communication with the United States regarding such claim (including without limitation the nature, circumstances, participants, and contents of the communication).

**RESPONSE:**

This Interrogatory is overbroad because of the objectionably very broad definition of "communications." This Interrogatory asks for communications between Relator and the United States and seeks information which is covered by the attorney-client, common interest, work product, and government investigative privileges and protections. This is especially true with the broad definition of "communications." Subject to Relator's objections and statements of privilege, Relator states that Relator disclosed the material facts alleged in Relator's Complaint to the United States on February 5, 2021 prior to filing Relator's Complaint.

**INTERROGATORY NO. 12:**

Identify all facts in Texas's Complaint of which You contend the State of Texas did not have knowledge before February 5, 2021, and describe, in detail, why the State of Texas could not have obtained knowledge of those facts before February 5, 2021.

**RESPONSE:**

This Interrogatory seeks information that is within the knowledge, custody or control of the State of Texas and calls for speculation regarding how or why another person or party could or could not have obtained knowledge. This Interrogatory asks for communications between Relator and the State of Texas and seeks information which is covered by the attorney-client, common interest, work product, and government investigative privileges and protections. Relator stands on Relator's objections to this Interrogatory.

**INTERROGATORY NO. 13:**

Identify all facts in Texas's Complaint of which You contend the State of Louisiana did not have knowledge before February 5, 2021, and describe, in detail, why the State of Louisiana could not have obtained knowledge of those facts before February 5, 2021.

**RESPONSE:**

This Interrogatory seeks information that is within the knowledge, custody or control of the State of Louisiana and calls for speculation regarding how or why another person or party could or could not have obtained knowledge. This Interrogatory asks

for communications between Relator and the State of Louisiana and seeks information which is covered by the attorney-client, common interest, work product, and government investigative privileges and protections. Relator stands on Relator's objections to this Interrogatory.

**INTERROGATORY NO. 14:**

Identify all facts in Texas's Complaint of which You contend You had knowledge and the United States had no knowledge before February 5, 2021, and describe, in detail, why the United States could not have obtained knowledge of those facts before February 5, 2021.

**RESPONSE:**

This Interrogatory seeks information that is within the knowledge, custody or control of the United States and calls for speculation regarding how or why another person or party could or could not have obtained knowledge. This Interrogatory asks for communications between Relator and the United States and seeks information which is covered by the attorney-client, common interest, work product, and government investigative privileges and protections. Relator stands on Relator's objections to this Interrogatory.

**INTERROGATORY NO. 15:**

Identify all facts in the Relator's Complaint of which You contend the State of Texas did not have knowledge before February 5, 2021, and describe, in detail, why the State of Texas could not have obtained knowledge of those facts before February 5, 2021.

**RESPONSE:**

This Interrogatory seeks information that is within the knowledge, custody or control of the State of Texas and calls for speculation regarding how or why another person or party could or could not have obtained knowledge. This Interrogatory asks for communications between Relator and the State of Texas and seeks information which is covered by the attorney-client, common interest, work product, and government investigative privileges and protections. Relator stands on Relator's objections to this Interrogatory.

**INTERROGATORY NO. 16:**

Identify all facts in the Relator's Complaint of which You contend the State of Louisiana did not have knowledge before February 5, 2021, and describe, in detail, why the State of Louisiana could not have obtained knowledge of those facts before February 5, 2021.

**RESPONSE:**

This Interrogatory seeks information that is within the knowledge, custody or control of the State of Louisiana and calls for speculation regarding how or why another person or party could or could not have obtained knowledge. This Interrogatory asks for communications between Relator and the State of Louisiana and seeks information which is covered by the attorney-client, common interest, work product, and government investigative privileges and protections. Relator stands on Relator's objections to this Interrogatory.

**INTERROGATORY NO. 17:**

Identify all facts in the Relator's Complaint of which You contend You had knowledge and the United States had no knowledge before February 5, 2021, and describe, in detail, why the United States could not have obtained knowledge of those facts before February 5, 2021.

**RESPONSE:**

This Interrogatory seeks information that is within the knowledge, custody or control of the United States and calls for speculation. This Interrogatory asks for communications between Relator and the United States and seeks information which is covered by the attorney-client, common interest, work product, and government investigative privileges and protections. Subject to Relator's objections and statements of privilege, Relator states that Relator disclosed the material facts alleged in Relator's Complaint to the United States prior to filing Relator's Complaint and that the United States did not have knowledge of those material facts prior to Relator's disclosure.

**INTERROGATORY NO. 18:**

If you contend that PPFA had or has an obligation to repay 2010-to-present Texas or Louisiana Medicare overpayments made to any Affiliate Defendant, describe all facts (and identify all statutes, regulations and judicial decisions) supporting Your contention, including all facts supporting Your belief that PPFA should have made such payments despite the injunctions against the termination of provider status that are described in Texas's Complaint and the Relator's Complaint.

**RESPONSE:**

This Interrogatory calls for a legal conclusion and is an improper contention interrogatory. This Interrogatory asks for communications between Relator and the State of Texas and the State of Louisiana and seeks information which is covered by the attorney-client, common interest, work product, and government investigative privileges and protections. Subject to Relator's objections and statements of privilege, Relator refers Defendants to the facts alleged in Relator's Complaint.

**INTERROGATORY NO. 19:**

Identify all 2010-to-present facts demonstrating PPFA's alleged involvement in or knowledge of the alleged provision of fetal tissue by Defendant Planned Parenthood Gulf Coast, Inc. to the University of Texas Medical Branch.

**RESPONSE:**

This Interrogatory seeks information that is within the knowledge, custody or control of Defendants and calls for speculation. This Interrogatory asks for communications between Relator and the United States, the State of Texas, and the State of Louisiana, and seeks information which is covered by the attorney-client, common interest, work product, and government investigative privileges and protections. Subject to Relator's objections and statements of privilege, Relator refers Defendants to the documents contained in the trial and appellate record in the federal court litigation involving Defendants referenced in Relator's Complaint, including statements by Melissa Farrell. Relator further states that all fetal tissue research had to be reviewed and approved by PPFA so PPFA was aware of the PPFA Affiliates'

research projects.

**INTERROGATORY NO. 20:**

Identify all 2010-to-present facts demonstrating PPFA's alleged knowledge of, involvement in, or control of any alleged violation of medical and ethical standards or state or federal law by any Affiliate Defendant in connection with the provision of fetal tissue to any third parties, including without limitation:

i.   the date of any alleged knowledge of, involvement in, or control by PPFA;

ii.  the specific persons that You allege acted on behalf of PPFA; and

iii. the medical and/or ethical standard or state or federal law that You allege was violated by the Affiliate Defendant.

**RESPONSE:**

This Interrogatory seeks information that is within the knowledge, custody or control of Defendants. This Interrogatory asks for communications between Relator and the United States, the State of Texas, and the State of Louisiana, and seeks information which is covered by the attorney-client, common interest, work product, and government investigative privileges and protections. Subject to Relator's objections and statements of privilege, Relator refers Defendants to the documents contained in the trial and appellate record in the federal court litigation involving Defendants referenced in Relator's Complaint, including but not limited to documents and facts in the record regarding the organizational structure and relationship between PPFA and PPFA Affiliates. Relator further states that all fetal tissue research had to be approved by PPFA, so the date of alleged knowledge of, involvement in, or

control by PPFA was the date research projects were reviewed and approved by PPFA, Johanna Morfesis was in charge of research at PPFA during the relevant time period, and the numerous medical and ethical standards and state or federal laws that were violated are described in trial and appellate record in the federal court litigation involving Defendants' termination from Medicaid.

**INTERROGATORY NO. 21:**

Identify and describe all facts demonstrating that PPFA knowingly and improperly avoided or decreased an obligation to pay money under the Texas Medicaid program.

**RESPONSE:**

This Interrogatory seeks information that is within the knowledge, custody or control of Defendants and calls for a legal conclusion. This Interrogatory asks for communications between Relator and the United States, the State of Texas, and the State of Louisiana, and seeks information which is covered by the attorney-client, common interest, work product, and government investigative privileges and protections. Subject to Relator's objections and statements of privilege, Relator refers Defendants to the documents contained in the trial and appellate record in the federal court litigation involving Defendants referenced in Relator's Complaint, including but not limited to documents and facts regarding the control and relationship between PPFA and PPFA Affiliates. Relator further states that PPFA provides medical services through approximately 50 affiliates nationwide, including Defendants PPFA Affiliates. PPFA Affiliates pay dues to PPFA and in exchange for these payments and provided

that PPFA Affiliates comply with PPFA's policies, PPFA Affiliates can hold themselves out to the public using the named "Planned Parenthood" and receive other benefits like monetary support and legal representation. PPFA provided legal representation to the PPFA Affiliates in federal court litigation involving the PPFA Affiliates termination from Medicaid. PPFA also exercises functional control over the PPFA Affiliates. It sets medical and operational standards for PPFA Affiliates and requires all PPFA Affiliates to provide certain core medical services. PPFA must review and approve all PPFA Affiliate research projects and PPFA sets policies that govern their medical practices, mandates certain informed consent forms to be used by PPFA Affiliates, and works with PPFA Affiliates to share best practices and industry information. PPFA Affiliates' medical services, including their enrollment and participation in Medicaid, are controlled by PPFA through PPFA's mandatory medical standards and guidelines, financial support, PPFA's counsel providing representation to the PPFA Affiliates in litigation over their termination from Medicaid, PPFA's leadership and managerial influence and control of the PPFA Affiliates, and PPFA's organizational structure.

**INTERROGATORY NO. 22:**

Identify and describe all facts demonstrating that PPFA knowingly and improperly avoided or decreased an obligation to pay money under the Louisiana Medicaid program.

**RESPONSE:**

This Interrogatory seeks information that is within the knowledge, custody or control of Defendants and calls for a legal conclusion. This Interrogatory asks for

communications between Relator and the United States, the State of Texas, and the State of Louisiana, and seeks information which is covered by the attorney-client, common interest, work product, and government investigative privileges and protections. Subject to Relator's objections and statements of privilege, Relator refers Defendants to the documents contained in the trial and appellate record in the federal court litigation involving Defendants referenced in Relator's Complaint, including but not limited to documents and facts regarding the control and relationship between PPFA and PPFA Affiliates. Relator further states that PPFA provides medical services through approximately 50 affiliates nationwide, including Defendants PPFA Affiliates. PPFA Affiliates pay dues to PPFA and in exchange for these payments and provided that PPFA Affiliates comply with PPFA's policies, PPFA Affiliates can hold themselves out to the public using the named "Planned Parenthood" and receive other benefits like monetary support and legal representation. PPFA provided legal representation to the PPFA Affiliates in federal court litigation involving the PPFA Affiliates termination from Medicaid. PPFA also exercises functional control over the PPFA Affiliates. It sets medical and operational standards for PPFA Affiliates and requires all PPFA Affiliates to provide certain core medical services. PPFA must review and approve all PPFA Affiliate research projects and PPFA sets policies that govern their medical practices, mandates certain informed consent forms to be used by PPFA Affiliates, and works with PPFA Affiliates to share best practices and industry information. PPFA Affiliates' medical services, including their enrollment and participation in Medicaid, are controlled by PPFA through PPFA's mandatory medical standards and guidelines,

financial support, PPFA's counsel providing representation to the PPFA Affiliates in litigation over their termination from Medicaid, PPFA's leadership and managerial influence and control of the PPFA Affiliates, and PPFA's organizational structure.

**INTERROGATORY NO. 23:**

For each false or fraudulent claim that You allege PPFA had knowledge of, involvement in, or control over, state the damages that You contend are associated with such claim, the basis for calculating those damages, and the amount of any penalties that You contend should be assessed for the claim.

**RESPONSE:**

This Interrogatory seeks information that is within the knowledge, custody or control of Defendants and calls for a legal conclusion. This Interrogatory asks for communications between Relator and the United States, the State of Texas, and the State of Louisiana, and seeks information which is covered by the attorney-client, common interest, work product, and government investigative privileges and protections. Subject to Relator's objections and statements of privilege, Relator refers Defendants to the Expert Reports of Donald Lochabay and the documents cited therein and produced to Defendants.

Respectfully submitted.

/s/ Andrew B. Stephens
Andrew B. Stephens
Texas Bar No. 24079396
Heather Gebelin Hacker
Texas Bar No. 24103325
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
(512) 399-3022
andrew@hackerstephens.com
heather@hackerstephens.com

**Attorneys For Relator**

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2022, a true and correct copy of the foregoing document was sent by electronic mail to Defendants' counsel to the e-mail addresses below:

Leah Godesky
Danny Ashby
Justin Chapa
Amanda Santella
O'MELVENY & MYERS LLP
lgodesky@omm.com
dashby@omm.com
jchapa@omm.com
asantella@omm.com

**Attorneys for Defendant Planned Parenthood Federation of America, Inc.**

Craig Margolis
Murad Hussain
Tirzah Lollar
Christopher Odell
ARNOLD PORTER KAY SCHOLER LLP
Craig.Margolis@arnoldporter.com
Murad.Hussain@arnoldporter.com
Tirzah.Lollar@arnoldporter.com
Christopher.Odell@arnoldporter.com

**Attorneys for Defendants Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc.**

/s/ Andrew B. Stephens
Andrew B. Stephens

27

# EXHIBIT 8

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA *EX REL.* DOE, *et al.,* | § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | Civil Action No. 2:21-CV-00022-Z |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., *et al.,* | § § § | |
| *Defendants.* | § § | |

---

**RELATOR'S OBJECTIONS AND RESPONSES TO PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION TO RELATOR**

---

To:   Leah Godesky, O'Melveny & Myers LLP, 1999 Avenue of the Stars, 8th Floor, Los Angeles, California 90067, Amanda Santella, O'Melvany & Myers LLP, 1625 Eye Street NW, Washington, DC 20006, Danny S. Ashby, Justin R. Chapa, O'Melveny & Myers LLP, 2501 North Harwood Street, Suite 1700, Dallas, Texas 75201, Attorneys for Defendant Planned Parenthood Federation of America, Inc.

Relator Alex Doe serves these Objections and Responses to Planned Parenthood Federation of America, Inc.'s First Set of Requests for Production to Relator.

## OBJECTIONS

1.     Relator objects to the Requests for Production, including the "Definitions" and "Instructions," where they exceed the requirements imposed by Federal Rule of Civil Procedure (FRCP) 34, other FRCPs, or elsewhere. Relator will

1

respond to the Requests in accordance with FRCP 34, other FRCPs, and applicable law.

2.      Relator objects to the Requests where they seek disclosure of information protected by the attorney-client privilege, the work-product doctrine, the investigative-communications privilege, the common-interest privilege, and/or any other privileges and exemptions set forth in applicable law.

3.      Relator objects to the Requests where they seek information not within Relator's possession, custody, or control.

4.      Relator objects to the Requests where they call for information to be disclosed that is protected by the HIPAA Privacy Rule or is confidential by law.

5.      Relator objects to the Requests where they are not properly limited to an appropriate time period. Answering Requests outside of an appropriate time period will be overly broad, unduly burdensome, and neither relevant to any party's claim or defense, nor proportional to the needs of the case, under FRCP 26(b)(1).

6.      Defendants' definition of the term "Communication" is overly broad, vague, and answering Requests by searching for and producing documents with this definition would be unduly burdensome. Defendants' definition of the term includes "the transmission or expression of any thought, word, statement, fact, thing, idea, opinion, document, instruction, demand, or question, whether written or oral, whether made in person, by telephone, in a meeting, transmitted electronically or telegraphically, or transmitted in any other fashion." Relator will interpret the terms "communication" consistent with applicable FRCPs, rules, law, and common usage.

7.      Defendants' definition of the term "Document" is overly broad, vague, and answering Requests with that definition would be unduly burdensome where the definition departs from the FRCPs and other applicable law; including but not limited to, for example, adding "any designated tangible things," to the definition of "document." Relator will interpret the term "document" consistent with FRCP 34 and other applicable FRCPs, rules, and law.

8.      Defendants' definition of the terms "Regarding," "relating to," "related to," "in relation to," or "relates to" is overly broad, vague, and answering Requests by searching for and producing documents with that definition would be unduly burdensome. Defendants' definition of the terms includes these unlimited descriptions: "relating in any way to, referring to, arising from, dealing with, consisting of, mentioning, discussing, describing, reflecting, concerning, memorializing, supporting, constituting, evidencing, comprising, recording, or in any other way pertaining to the subject, either in whole or in part, whether directly or indirectly." Relator will interpret the terms "Regarding," "relating to," "related to," "in relation to," or "relates to" consistent with applicable FRCPs, rules, law, and common usage.

9.      Defendants' definition and use of the terms "Relator," "You," and "Your" is overly broad and neither relevant to any party's claim or defense, nor proportional to the needs of the case, under FRCP 26(b)(1). Answering Requests, and identifying and producing documents, with those terms as defined would be unduly burdensome. These terms as defined by Defendants include persons and entities

with no relation to this matter. The terms' vagueness and overbreadth make any Request with the terms as defined by Defendant exceed the scope of the specific claims and issues in this case and therefore makes those Requests objectionable. Relator will respond to Requests and produce responsive documents in Relator's possession, custody or control in accordance with the applicable FRCPs.

10.     Relator objects to all of Defendants' Instructions which exceed the requirements of FRCP 34, or other applicable Rules or law. Relator will answer the Requests as required by FRCP 34, and other applicable Rules and law.

11.     The responses made at this time are without prejudice to Relator's rights to amend or supplement its responses as appropriate under FRCP 34 or other rules or law.

12.     By answering these Requests and producing documents responsive to these Requests, Relator does not concede the relevance or admissibility of the documents, materials, or information. Relator further does not waive, but instead, expressly preserves, the Objections here.

13.     Relator incorporates by reference the objections above into the responses set forth below. The failure to repeat any of the objections above does not waive any objection to the specific Request.

14.     Relator intends to not produce documents which are privileged under the attorney-client, common interest, work-product, and government investigative privileges and protections. Any production of documents which are covered by the

attorney-client, common interest, work product and government investigative privileges and protections is inadvertent under Federal Rule of Evidence 502.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1

Documents sufficient to show and all communications relating to all paid and unpaid Medicaid claims that You contend were false or fraudulent and which any Affiliate Defendant presented or caused to be presented to Medicaid, including without limitation Medicaid claim documents, internal communications, and communications with third parties.

### RESPONSE:

This Request is overbroad because of the request of "[a]ll documents and communications relating to" presentment of "false or fraudulent" claims, the almost unlimited definition of "relating to" as "involving in any way whatsoever the subject matter of the request" and the further definition that a "document may 'relate to' or [sic.] an individual or entity without specifically mentioning or discussing that individual or entity by name." Defendant's definitions of the terms "communications" and "You" is also overly broad, as is seeking "internal communications" and "communications with third parties." This Request asks for documents and communications which are covered by the attorney-client, common interest, work product, and government investigative privileges and protections. This is especially true with the almost unlimited definitions of "documents," "communications," "You"

and the inclusion of "internal communications" and "communications with third parties." Subject to Relator's objections and statements of privileges, Relator refers Defendants to the Expert Reports of Donald Lochabay and the documents cited therein and produced to Defendants, and further refers Defendants to the documents contained in the trial and appellate record in the federal court litigation involving Defendants referenced in Relator's Complaint which are in the possession, custody or control of Defendants.

**REQUEST FOR PRODUCTION NO. 2:**

All documents and communications relating to PPFA's alleged involvement in, control over, or knowledge of any paid or unpaid Medicaid claims that You contend were false or fraudulent and which any Affiliate Defendant presented or caused to be presented to Medicaid, including without limitation Medicaid claim documents, internal communications, and communications with third parties.

**RESPONSE:**

This Request is overbroad because of the request of "[a]ll documents and communications relating to" presentment of "false or fraudulent" claims, the almost unlimited definition of "relating to" as "involving in any way whatsoever the subject matter of the request" and the further definition that a "document may 'relate to' or [sic.] an individual or entity without specifically mentioning or discussing that individual or entity by name." Defendant's definitions of the terms "communications" and "You" is also overly broad, as is seeking "internal communications" and "communications with third parties." This Request asks for documents and

communications which are covered by the attorney-client, common interest, work product, and government investigative privileges and protections. This is especially true with the almost unlimited definitions of "documents," "communications," "You" and the inclusion of "internal communications" and "communications with third parties." Subject to Relator's objections and statements of privileges, Relator refers Defendants to the Expert Reports of Donald Lochabay and the documents cited therein and produced to Defendants, and further refers Defendants to the documents contained in the trial and appellate record in the federal court litigation involving Defendants referenced in Relator's Complaint which are in the possession, custody or control of Defendants.

**REQUEST FOR PRODUCTION NO. 3:**

Documents sufficient to show and all communications relating to all paid Medicaid claims that You contend should have been repaid to Medicaid and which any Affiliate Defendant presented or caused to be presented to Medicaid, including without limitation Medicaid claim documents, internal communications, and communications with third parties.

**RESPONSE:**

This Request is overbroad because of the request for "[a]ll documents and communications relating to" presentment of "false or fraudulent" claims, the almost unlimited definition of "relating to" as "involving in any way whatsoever the subject matter of the request" and the further definition that a "document may 'relate to' or [sic.] an individual or entity without specifically mentioning or discussing that

individual or entity by name." Defendant's definitions of the terms "communications" and "You" is also overly broad, as is seeking "internal communications" and "communications with third parties." This Request asks for documents and communications which are covered by the attorney-client, common interest, work product, and government investigative privileges and protections. This is especially true with the almost unlimited definitions of "documents," "communications," "You" and the inclusion of "internal communications" and "communications with third parties." Subject to Relator's objections and statements of privileges, Relator refers Defendants to the Expert Reports of Donald Lochabay and the documents cited therein and produced to Defendants.

## REQUEST FOR PRODUCTION NO. 4:

All documents and communications relating to PPFA's alleged involvement in, control over, or knowledge of any paid Medicaid claims that You contend should have been repaid to Medicaid and which any Affiliate Defendant presented or caused to be presented to Medicaid, including without limitation Medicaid claim documents, internal communications, and communications with third parties.

## RESPONSE:

This Request is overbroad because of the request of "[a]ll documents and communications relating to" presentment of "false or fraudulent" claims, the almost unlimited definition of "relating to" as "involving in any way whatsoever the subject matter of the request" and the further definition that a "document may 'relate to' or [sic.] an individual or entity without specifically mentioning or discussing that

individual or entity by name." Defendant's definitions of the terms "communications" and "You" is also overly broad, as is seeking "internal communications" and "communications with third parties." This Request asks for documents and communications which are covered by the attorney-client, common interest, work product, and government investigative privileges and protections. This is especially true with the almost unlimited definitions of "documents," "communications," "You" and the inclusion of "internal communications" and "communications with third parties." Relator further responds that this Request seeks documents concerning PPFA's knowledge, control, and involvement, and therefore seeks documents that would be in the possession, custody, or control of Defendants.

**REQUEST FOR PRODUCTION NO. 5:**

All communications with the State of Texas relating to PPFA or Your allegations and claims in this litigation, including without limitation all documents provided to the State of Texas before the filing of the Relator's Complaint.

**RESPONSE:**

This Request asks for communications with the State of Texas, especially "all documents provided to the State of Texas before the filing of the Relator's Complaint," which are covered by the attorney-client, common interest, work product, and government investigative privileges and protections. This is especially true with the almost unlimited definition of "communications" and "documents." Relator will stand on the objections and statement of privileges and will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 6:**

All communications with the State of Louisiana relating to PPFA or Your allegations and claims in this litigation, including without limitation all documents provided to the State of Louisiana before the filing of the Relator's Complaint.

**RESPONSE:**

This Request asks for communications with the State of Louisiana, especially "all documents provided to the State of Louisiana before the filing of the Relator's Complaint," which are covered by the attorney-client, common interest, work product and government investigative privileges and protections. This is especially true with the almost unlimited definition of "communications" and "documents." Relator will stand on the objections and statement of privileges and will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 7:**

All communications with the United States relating to PPFA or Your allegations and claims in this litigation, including without limitation all documents provided to the United States before the filing of the Relator's Complaint.

**RESPONSE:**

This Request asks for communications with the United States, especially "all documents provided to the United States before the filing of the Relator's Complaint," which are covered by the attorney-client, common interest, work product and government investigative privileges and protections. This is especially true with the almost unlimited definition of "communications" and "documents." Relator will stand

on the objections and statement of privileges and will not produce documents in response to this Request.

## REQUEST FOR PRODUCTION NO. 8:

All communications with the Center for Medical Progress relating to PPFA or Your allegations and claims in this litigation.

## RESPONSE:

Relator has not communicated with the Center for Medical Progress relating to this lawsuit and therefore has no documents responsive to this Request.

## REQUEST FOR PRODUCTION NO. 9:

All communications between You and the Media relating to PPFA or your allegations and claims in this litigation.

## RESPONSE:

Relator has not communicated with the Media relating to this lawsuit and therefore has no documents responsive to this Request.

## REQUEST FOR PRODUCTION NO. 10:

All documents relating to PPFA's alleged involvement in or knowledge of any alleged violation of medical and/or ethical standard or state or federal law by any Affiliate Defendant in connection with the provision of fetal tissue to any third parties.

## RESPONSE:

This Request asks for documents which are covered by the attorney-client, common interest, and work product privileges and protections. This is especially true

with the almost unlimited definitions of "relating to" and "documents." Subject to Relator's objections and statements of privileges, Relator refers Defendants to the documents contained in the trial and appellate record in the federal court litigation involving Defendants referenced in Relator's Complaint which are in the possession, custody or control of Defendants.

## REQUEST FOR PRODUCTION NO. 11:

All documents relating to PPFA's alleged involvement in or knowledge of the alleged provision of fetal tissue by Defendant Planned Parenthood Gulf Coast, Inc. to the University of Texas Medical Branch.

## RESPONSE:

This Request asks for documents which are covered by the attorney-client, common interest, and work product privileges and protections. This is especially true with the almost unlimited definitions of "relating to" and "documents." Subject to Relator's objections and statements of privileges, Relator refers Defendants to the documents contained in the trial and appellate record in the federal court litigation involving Defendants referenced in Relator's Complaint which are in the possession, custody or control of Defendants.

## REQUEST FOR PRODUCTION NO. 12:

All documents relating to any formal or informal statements regarding Your allegations and claims against PPFA in this litigation by any person who claims to have or You claim to have knowledge of facts relevant to this case, including without limitation any notes relating to such statements.

12

**RESPONSE:**

This Request for "[a]ll documents relating to any formal or informal statements regarding Your" claims in this case is overbroad because of the almost unlimited definition of "relating to" as "involving in any way whatsoever the subject matter of the request" and the further definition that a "document may 'relate to' or [sic.] an individual or entity without specifically mentioning or discussing that individual or entity by name." This Request is also overbroad because it has no time limit, and because of the broad phrase "by any person who claims to have or You claim to have knowledge of facts relevant to this case, including without limitation any notes relating to such statements." Additionally, this RFP is overbroad because of the very broad definitions of "Your" and documents. This Request for "[a]ll documents relating to any formal or informal statements regarding Your" claims in this case necessarily asks for documents which are covered by the attorney-client, common interest, work product and government investigative privileges and protections. This is especially true with the almost unlimited definitions of "relating to" and "documents," and the very broad phrase "by any person who claims to have or You claim to have knowledge of facts relevant to this case, including without limitation any notes relating to such statements." Subject to Relator's objections and statements of privileges, Relator refers Defendants to the documents contained in the trial and appellate record in the federal court litigation involving Defendants referenced in Relator's Complaint which are in the possession, custody or control of Defendants.

**REQUEST FOR PRODUCTION NO. 13:**

All documents relating to Your claim for damages or penalties.

**RESPONSE:**

This Request for "[a]ll documents relating to Your claim for damages or penalties" in this case is overbroad because of the almost unlimited definition of "relating to" as "involving in any way whatsoever the subject matter of the request" and the further definition that a "document may 'relate to' or [sic.] an individual or entity without specifically mentioning or discussing that individual or entity by name." This Request is also overbroad because of the very broad definitions of "Your" and "documents." This Request for "[a]ll documents relating to Your claim for damages or penalties" necessarily asks for documents which are covered by the attorney-client, common interest, work product and government investigative privileges and protections. This is especially true with the almost unlimited definitions of "relating to, "documents," and "Your." Subject to Relator's objections and statements of privileges, Relator refers Defendants to the Expert Reports of Donald Lochabay and the documents cited therein and produced to Defendants.

**REQUEST FOR PRODUCTION NO. 14:**

To the extent not already produced in response to the above Requests, all documents on which the Relator relies to support any of the allegations relating to PPFA in Relator's Complaint.

**RESPONSE:**

This Requests for "all documents on which the Relator relies to support any of

the allegations relating to PPFA in Relator's Complaint" is overbroad because of the broad definition of "documents." This Request for "all documents on which the Relator relies to support any of the allegations in relating to PPFA in Relator's Complaint" necessarily asks for documents which are covered by the attorney-client, common interest, work product and government investigative privileges and protections. This is especially true with the almost unlimited definitions of "documents." Subject to Relator's objections and statements of privileges, Relator refers Defendants to the Expert Reports of Donald Lochabay and the documents cited therein and produced to Defendants, and further refers Defendants to the documents contained in the trial and appellate record in the federal court litigation involving Defendants referenced in Relator's Complaint which are in the possession, custody or control of Defendants.

**REQUEST FOR PRODUCTION NO. 15:**

All documents provided by or on behalf of You to any person that You designate as an expert witness in this litigation.

**RESPONSE:**

Relator refers Defendants to the Expert Reports of Donald Lochabay and the documents cited therein and produced to Defendants.

**REQUEST FOR PRODUCTION NO. 16:**

To the extent not already produced in response to the above Requests, all documents that relate to any of the matters referenced in PPFA's First Set of Interrogatories to the Relator or Your responses to PPFA's First Set of Interrogatories.

**RESPONSE:**

This Request for "all documents that relate to any of the matters referenced in PPFA's First Set of Interrogatories to the Relator or Your responses to PPFA's First Set of Interrogatories" is overbroad because of the almost unlimited definition of "relate to" as "involving in any way whatsoever the subject matter of the request" and the further definition that a "document may 'relate to' or [sic.] an individual or entity without specifically mentioning or discussing that individual or entity by name." This Request is also overbroad because of the broad the very broad definitions of "documents." This Request for "[A]ll documents that relate to any of the matters referenced in the claims in PPFA's First Set of Interrogatories to the Relator or Your responses to PPFA's First Set of Interrogatories" not already produced necessarily asks for documents which are covered by the attorney-client, common interest, work product, and government investigative privileges and protections. This is especially true with the almost unlimited definitions of "documents." Subject to Relator's objections and statements of privileges, Relator refers Defendants to the Expert Reports of Donald Lochabay and the documents cited therein and produced to Defendants, and further refers Defendants to the documents contained in the trial and appellate record in the federal court litigation involving Defendants referenced in Relator's Complaint which are in the possession, custody or control of Defendants.

Respectfully submitted.

/s/ Andrew B. Stephens
Andrew B. Stephens
Texas Bar No. 24079396
Heather Gebelin Hacker
Texas Bar No. 24103325
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
(512) 399-3022
andrew@hackerstephens.com
heather@hackerstephens.com

**Attorneys For Relator**

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2022, a true and correct copy of the foregoing document was sent by electronic mail to Defendants' counsel to the e-mail addresses below:

Leah Godesky
Danny Ashby
Justin Chapa
Amanda Santella
O'MELVENY & MYERS LLP
lgodesky@omm.com
dashby@omm.com
jchapa@omm.com
asantella@omm.com

**Attorneys for Defendant Planned Parenthood Federation of America, Inc.**

Craig Margolis
Murad Hussain
Tirzah Lollar
Christopher Odell
ARNOLD PORTER KAY SCHOLER LLP
Craig.Margolis@arnoldporter.com
Murad.Hussain@arnoldporter.com
Tirzah.Lollar@arnoldporter.com
Christopher.Odell@arnoldporter.com

**Attorneys for Defendants Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc.**

/s/ Andrew B. Stephens
Andrew B. Stephens

18

# EXHIBIT 9

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ALEX DOE, Relator, | § § § | |
| THE STATE OF TEXAS, *ex rel.* ALEX DOE, Relator, | § § § | |
| THE STATE OF LOUISIANA, *ex rel.* ALEX DOE, Relator, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 2:21-CV-00022-Z |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., PLANNED PARENTHOOD GULF COAST, INC., PLANNED PARENTHOOD OF GREATER TEXAS, INC., PLANNED PARENTHOOD SOUTH TEXAS, INC., PLANNED PARENTHOOD CAMERON COUNTY, INC., PLANNED PARENTHOOD SAN ANTONIO, INC., | § § § § § § § § § § § § § | |
| Defendants. | § § | |

## STATE OF TEXAS'S OBJECTIONS, STATEMENTS OF PRIVILEGES, AND RESPONSES TO PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION

To:   Danny S. Ashby and Justin R. Chapa, O'Melveny & Myers LLP, 2501 N. Harwood Street Suite 1700, Dallas, Texas 75201 and Leah Godesky, O'Melveny & Myers LLP, 1999 Avenue of the Stars, 8th Floor, Los Angeles, California 90067.

The State of Texas serves these Objections, Statements of Privileges, and Responses to Planned Parenthood Federation of America, Inc.'s First Set of Requests for Production.

## OBJECTIONS

1.    The State objects to the Requests for Production (RFPs), including the "Definitions" and "Instructions," where they exceed the requirements imposed by Federal Rule of Civil Procedure (FRCP) 34, other FRCPs, or elsewhere. The State will respond to the RFPs in accordance with FRCP 34, other FRCPs, and applicable law.

2.    The State objects to the RFPs where they seek disclosure of information protected by the attorney-client privilege, the work-product doctrine, the investigative-communications privilege, the common-interest privilege, and/or any other privileges and exemptions set forth in applicable law.

3.    The State objects to the RFPs where they seek information not within the State's possession, custody, or control.

4.    The State objects to the RFPs where they call for information to be disclosed that is protected by the HIPAA Privacy Rule or is confidential by law.

5.    The State objects to the RFPs where they are not properly limited to an appropriate time period. Answering RFPs outside of the State's Specified Time Period from February 1, 2017 will be overly broad, unduly burdensome, and neither relevant to any party's claim or defense, nor proportional to the needs of the case, under FRCP 26(b)(1). Texas claims are only for the time period February 1, 2017 to the present.

6.    The responses made at this time are without prejudice to the State's rights to amend or supplement its responses as appropriate under FRCP 34 or other rules or law.

7.    By answering these RFPs and producing documents responsive to these RFPs, the State does not concede the relevance or admissibility of the documents, materials, or information. The State further does not waive, but instead, expressly preserves, the Objections here.

8.    The State incorporates by reference the Objections above into the responses set forth below. The failure to repeat any of the Objections above does not waive any Objection to the specific RFP.

9.    The State intends to not produce documents which are privileged under the attorney-client privilege or work-product protection. Any production of documents

which are privileged under the attorney-client privilege or work-product protection is inadvertent under Federal Rule of Evidence (FRE) 502.

10.     The State reserves its rights to object under Texas Government Code 402.004 to any Response to these RFPs – or to any response to discovery – being used in this suit, either at trial, in hearings, or otherwise. Texas Government Code 402.004 reads: "An admission, agreement, or waiver made by the attorney general in an action or suit to which the state is a party does not prejudice the rights of the state."

11.     The State objects to all uses by Defendants of a Time Period which is irrelevant to the claims in this case.

## OBJECTIONS TO DEFENDANTS' DEFINITIONS

1.      **Defendant's Definition 4.** Defendants' definition of the term "Communication" is overly broad, vague, and answering RFPs by searching for and producing documents with this definition would be unduly burdensome. Defendants' definition of the term includes "the transmission or expression of any thought, word, statement, fact, thing, idea, opinion, document, instruction, demand, or question, whether written or oral, whether made in person, by telephone, in a meeting, transmitted electronically or telegraphically, or transmitted in any other fashion." The State will interpret the terms "communication" consistent with applicable FRCPs, rules, law, and common usage.

2.      **Defendant's Definition 6.** Defendants' definition of the term "Document" is overly broad, vague, and answering RFPs with that definition would be unduly burdensome where the definition departs from the FRCPs and other applicable law; including but not limited to, for example, adding "any designated tangible things," to the definition of "document." The State will interpret the term "document" consistent with FRCP 34 and other applicable FRCPs, rules, and law.

3.      **Defendant's Definition 11.** Defendants' definition of the terms "Regarding," "relating to," "related to," "in relation to," or "relates to" is overly broad, vague, and answering RFPs by searching for and producing documents with that definition would be unduly burdensome. Defendants' definition of the terms includes these unlimited descriptions: "relating in any way to, referring to, arising from, dealing with, consisting of, mentioning, discussing, describing, reflecting, concerning, memorializing, supporting, constituting, evidencing, comprising, recording, or in any other way pertaining to the subject, either in whole or in part, whether directly or indirectly." The State will interpret the terms "Regarding," "relating to," "related to," "in relation to," or "relates to" consistent with applicable FRCPs, rules, law, and common usage.

4.      **Defendant's Definition 13.** Defendants' definition and use of the terms "Texas," "State of Texas," "You," and "Your" is overly broad and neither relevant to any party's claim or defense, nor proportional to the needs of the case, under FRCP 26(b)(1). Answering RFPs, and identifying and producing documents, with those terms as defined would be unduly burdensome. These terms as defined by Defendants include persons and entities with no relation to this matter. The terms' vagueness and overbreadth make any RFP with the terms as defined by Defendant

exceed the scope of the specific claims and issues in this case and therefore makes those RFPs objectionable. The Attorney General of Texas brings this suit on behalf of the Texas Medicaid program, which is part of the Texas Health and Human Services Commission ("HHSC"). In this suit, the plaintiff, the "State," does not represent any other "current or former subsidiary, division, affiliate, predecessor entity, agency, office, or department of the Texas Government," or individuals. Where Defendant uses those terms and overbroad definitions of the terms to seek information that is beyond the possession and reasonable control of the Office of the Attorney General as counsel for the HHSC; beyond the possession and reasonable control of the HHSC; or beyond the possession and reasonable control of the state agencies under the HHSC's organizational umbrella, or their successor agencies, the State requests that Defendant show cause as to why such information should be provided. Until such cause is shown, the State will only provide responses to RFPs on behalf of the Texas Medicaid Program and within the reasonable control of the Office of the Attorney General as counsel for the HHSC; within the reasonable control of the HHSC; or within the reasonable control of the state agencies under the HHSC's organizational umbrella, or their successor agencies. The State further objects to this definition to the extent its use in an RFP seeks information protected by the attorney-client or work product privileges.

5

## OBJECTIONS TO DEFENDANT'S INSTRUCTIONS

1.      The State objects to all of Defendant's Instructions which exceed the requirements of FRCP 34, or other applicable Rules or law. The State will answer these RFPs as required by FRCP 34, and other applicable Rules and law.

2.      Any production of documents which are privileged under the attorney-client privilege or work-product protection is inadvertent under Federal Rule of Evidence 502.

Designated discovery in this case has not been completed.

The State is ready to confer or attempt to confer, in good faith, to resolve any disputes related to objections, claims of privilege, or other matters.

# REQUESTS FOR PRODUCTION

## REQUEST FOR PRODUCTION NO. 1

Documents sufficient to show and all communications relating to all 2017-to-present paid and unpaid Texas Medicaid claims that You contend were false or fraudulent and which any Affiliate Defendant presented or caused to be presented to Texas Medicaid, including without limitation Medicaid claim documents, internal communications, and communications with third parties.

**OBJECTIONS:**

**Not Relevant. The State's Complaint in Intervention here is brought under section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. Presentment of "false or fraudulent claims" is not an element of this TMFPA claim, and documents, communications, etc., related to "presentment of false or fraudulent claims" is neither relevant to the State's claims or to Defendants' defenses. Additionally, "internal communications" of Texas Medicaid are neither relevant to the State's claims or to Defendants' defenses.**

**Overbroad. This RFP is overbroad because of the request of "[d]ocuments sufficient to show any and all communications," the almost unlimited definition of "relating to" as "involving in any way whatsoever the subject matter of the request" and the further definition that a "document may 'relate to' or [sic.] an individual or entity without specifically mentioning or discussing that individual or entity by name." Defendant's definitions of the terms "communications" and "You" is also overly broad, as is seeking "internal communications" and "communications with third parties."**

**STATEMENT OF PRIVILEGES:**

**Attorney-client, Common Interest, and Work Product. This request asks for documents and/or communications which are covered by the attorney-client, common interest, and work product privileges and protections. This is especially true with the almost unlimited definitions of "documents," "communications," "You" and the inclusion of "internal communications" and "communications with third parties."**

Government Code Medicaid Investigative Privilege. This request, especially with its overbroad definitions, calls for documents which are privileged under the Government Code Medicaid Investigative Privilege. Texas Government Code § 531.102(k) and Texas Government Code § 531.1021 (g) ("All information and materials subpoenaed or compiled by the [OIG] office in connection with an audit or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under Chapter 552, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or the attorney general or their employees or agents involved in the audit or investigation conducted by the office or the attorney general, except that this information may be disclosed to the state auditor's office, law enforcement agencies, and other entities as permitted by other law.").

**RESPONSE:**

Subject to the State's Objections and Statements of Privileges, the State does not contend that there were "false or fraudulent" claims which were "presented or caused to be presented to Texas Medicaid" as the basis for this suit.

**REQUEST FOR PRODUCTION NO. 2**

All documents and communications relating to PPFA's alleged involvement in, control over, or knowledge of any 2017-to-present paid or unpaid Texas Medicaid claims that You contend were false or fraudulent and which any Affiliate Defendant presented or caused to be presented to Texas Medicaid, including without limitation Medicaid claim documents, internal communications, and communications with third parties.

**OBJECTIONS:**

Not Relevant. The State's Complaint in Intervention here is brought under section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. Presentment of "false or fraudulent claims" is not an element of this TMFPA claim, and documents, communications, etc., related to "presentment of false or fraudulent claims" is neither relevant to the State's claims or to Defendants' defenses. Additionally, "internal communications" of Texas Medicaid are neither relevant to the State's claims or to Defendants' defenses.

**Overbroad.** This RFP is overbroad because of the request of "[a]ll documents and communications relating to" presentment of "false or fraudulent" claims, the almost unlimited definition of "relating to" as "involving in any way whatsoever the subject matter of the request" and the further definition that a "document may 'relate to' or [sic.] an individual or entity without specifically mentioning or discussing that individual or entity by name." Defendant's definitions of the terms "communications" and "You" is also overly broad, as is seeking "internal communications" and "communications with third parties."

**STATEMENT OF PRIVILEGES:**

**Attorney-client, Common Interest, and Work Product.** This request asks for documents and communications which are covered by the attorney-client, common interest, and work product privileges and protections. This is especially true with the almost unlimited definitions of "documents," "communications," "You" and the inclusion of "internal communications" and "communications with third parties."

**Government Code Medicaid Investigative Privilege.** This request, especially with its overbroad definitions, calls for documents which are privileged under the Government Code Medicaid Investigative Privilege. Texas Government Code § 531.102(k) and Texas Government Code § 531.1021 (g) ("All information and materials subpoenaed or compiled by the [OIG] office in connection with an audit or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under Chapter 552, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or the attorney general or their employees or agents involved in the audit or investigation conducted by the office or the attorney general, except that this information may be disclosed to the state auditor's office, law enforcement agencies, and other entities as permitted by other law.").

**RESPONSE:**

Subject to the State's Objections and Statements of Privileges, the State does not contend that there were "false or fraudulent" claims which were "presented or caused to be presented to Texas Medicaid" as the basis for this suit.

## REQUEST FOR PRODUCTION NO. 3

Documents sufficient to show and all communications relating to all 2017-to-present paid Texas Medicaid claims that You contend should have been repaid to Texas Medicaid and which any Affiliate Defendant presented or caused to be presented to Texas Medicaid, including without limitation Medicaid claim documents, internal communications, and communications with third parties.

## OBJECTIONS:

**Not Relevant. The State's Complaint in Intervention here is brought under section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. While the State does contend Defendants should have repaid money paid to them, presentment of claims is not an element of this TMFPA claim, and documents, communications, etc., related to presentment of claims is neither relevant to the State's claims or to Defendants' defenses. Additionally, "internal communications" of Texas Medicaid are neither relevant to the State's claims or to Defendants' defenses.**

**Overbroad. This RFP is overbroad because of the request of "[d]ocuments sufficient to show and all communications relating to" claims which were "presented or caused to be presented" which the State claims should have been repaid, the definition that a "document may 'relate to' or [sic.] an individual or entity without specifically mentioning or discussing that individual or entity by name." Defendant's definitions of the terms "communications" and "You" is also overly broad, as is seeking "internal communications" and "communications with third parties."**

## STATEMENT OF PRIVILEGES:

**Attorney-client, Common Interest, and Work Product. This request asks for documents and communications which are covered by the attorney-client, common interest, and work product privileges and protections. This is especially true with the almost unlimited definitions of "documents," "communications," "You" and the inclusion of "internal communications" and "communications with third parties."**

**Government Code Medicaid Investigative Privilege. This request, especially with its overbroad definitions, calls for documents which are privileged under the**

**Government Code Medicaid Investigative Privilege. Texas Government Code § 531.102(k) and Texas Government Code § 531.1021 (g) ("All information and materials subpoenaed or compiled by the [OIG] office in connection with an audit or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under Chapter 552, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or the attorney general or their employees or agents involved in the audit or investigation conducted by the office or the attorney general, except that this information may be disclosed to the state auditor's office, law enforcement agencies, and other entities as permitted by other law.").**

**RESPONSE:**

**Subject to the State's Objections and Statements of Privileges, we are producing claims data, related Expert discovery production, and relevant communications between Texas Medicaid and the Defendants.**

**REQUEST FOR PRODUCTION NO. 4**

All documents and communications relating to PPFA's alleged involvement in, control over, or knowledge of any 2017-to-present paid Texas Medicaid claims that You contend should have been repaid to Texas Medicaid and which any Affiliate Defendant presented or caused to be presented to Texas Medicaid, including without limitation Medicaid claim documents, internal communications, and communications with third parties.

**OBJECTIONS:**

**Not Relevant. The State's Complaint in Intervention here is brought under section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. While the State does contend Defendants should have repaid money paid to them, presentment of claims is not an element of this TMFPA claim, and documents, communications, etc., related to presentment of claims is neither relevant to the State's claims or to Defendants' defenses. Additionally, "internal communications" of Texas Medicaid are neither relevant to the State's claims or to Defendants' defenses.**

**Overbroad. This RFP is overbroad** because of the request of "[a]ll documents and communications relating to" claims which were "presented or caused to be presented," the almost unlimited definition of "relating to" as "involving in any way whatsoever the subject matter of the request" and the further definition that a "document may 'relate to' or [sic.] an individual or entity without specifically mentioning or discussing that individual or entity by name." Defendant's definitions of the terms "communications" and "You" is also overly broad, as is seeking "internal communications" and "communications with third parties."

**STATEMENT OF PRIVILEGES:**

**Attorney-client, Common Interest, and Work Product.** This request asks for documents and communications which are covered by the attorney-client, common interest, and work product privileges and protections. This is especially true with the almost unlimited definitions of "documents," "communications," "You" and the inclusion of "internal communications" and "communications with third parties."

**Government Code Medicaid Investigative Privilege.** This request, especially with its overbroad definitions, calls for documents which are privileged under the Government Code Medicaid Investigative Privilege. Texas Government Code § 531.102(k) and Texas Government Code § 531.1021 (g) ("All information and materials subpoenaed or compiled by the [OIG] office in connection with an audit or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under Chapter 552, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or the attorney general or their employees or agents involved in the audit or investigation conducted by the office or the attorney general, except that this information may be disclosed to the state auditor's office, law enforcement agencies, and other entities as permitted by other law.").

**RESPONSE:**

Subject to the State's Objections and Statements of Privileges, we are producing claims data, related Expert discovery production, and relevant communications between Texas Medicaid and the Defendants.

## REQUEST FOR PRODUCTION NO. 5

All 2013-to-present communications with the Relator, including without limitation any communications between the Texas Attorney General and the Relator.

**OBJECTIONS:**

**Not Relevant. The State's Complaint in Intervention here is brought under section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. Communications with the Relator at any time are not relevant to either the State's claims, or to defenses to the State's claims here. Documents going back to 2013 are outside the temporal scope of discovery for the claims and defenses of this case.**

**Overbroad. This RFP is overbroad because of the request of "[a]ll 2013-to-present communications" especially with the overbroad definition of "communications."**

**STATEMENT OF PRIVILEGES:**

**Attorney-client, Common Interest, and Work Product. This request asks for communications with the Relator, especially "any communications between the Texas Attorney general and the Relator," which are covered by the attorney-client, common interest, and work product privileges and protections. This is especially true with the almost unlimited definition of "communications."**

**Government Code Medicaid Investigative Privilege. This request, especially with its overbroad definition of "communications," calls for documents which are privileged under the Government Code Medicaid Investigative Privilege. Texas Government Code § 531.102(k) and Texas Government Code § 531.1021 (g) ("All information and materials subpoenaed or compiled by the [OIG] office in connection with an audit or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under Chapter 552, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or the attorney general or their employees or agents involved in the audit or investigation conducted by the office or the attorney general, except that this information may be disclosed to the state auditor's office, law enforcement agencies, and other entities as permitted by other law.").**

**RESPONSE:**

**The State will stand on its Objections and Statements of Privileges and will not produce documents in response to this RFP.**

**REQUEST FOR PRODUCTION NO. 6**

All 2013-to-present documents and communications relating to the Relator, including without limitation all internal communications and communications with third parties.

**OBJECTIONS:**

**Not Relevant. The State's Complaint in Intervention here is brought under section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. "Documents and communications relating to the Relator" at any time are not relevant to either the State's claims, or to defenses to the State's claims here. Documents going back to 2013 are outside the temporal scope of discovery for the claims and defenses of this case.**

**Overbroad. This RFP is overbroad because of the request of "[a]ll 2013-to-present communications," the almost unlimited definition of "related to" as "involving in any way whatsoever the subject matter of the request" and the further definition that a "document may 'relate to' or [sic.] an individual or entity without specifically mentioning or discussing that individual or entity by name." The definition of "communications" is also overbroad, "especially with the overbroad definition of "communications" and the phrase "including without limitation all internal communications and communications with third parties.:**

**STATEMENT OF PRIVILEGES:**

**Attorney-client, Common Interest, and Work Product. This request asks for "documents and communications relating to the Relator," especially "all internal communications and communications with third parties," which are covered by the attorney-client, common interest, and work product privileges and protections. This is especially true with the almost unlimited definitions of "documents" and "communications."**

**Government Code Medicaid Investigative Privilege. This request, especially with its overbroad definition of "communications," calls for documents which are privileged under the Government Code Medicaid Investigative Privilege. Texas Government Code § 531.102(k) and Texas Government Code § 531.1021 (g) ("All information and materials subpoenaed or compiled by the [OIG] office in connection with an audit or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under Chapter 552, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or the attorney general or their employees or agents involved in the audit or investigation conducted by the office or the attorney general, except that this information may be disclosed to the state auditor's office, law enforcement agencies, and other entities as permitted by other law.").**

**RESPONSE:**

**The State will stand on its Objections and Statements of Privileges and will not produce documents in response to this RFP.**

**REQUEST FOR PRODUCTION NO. 7**

All 2013-to-present communications with the Center for Medical Progress, including without limitation any communications between the Texas Attorney General and the Center for Medical Progress.

**OBJECTIONS:**

**Not Relevant. The State's Complaint in Intervention here is brought under section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. Communications with the Center for Medical Progress at any time are not relevant to either the State's claims, or to defenses to the State's claims here. Documents going back to 2013 are outside the temporal scope of discovery for the claims and defenses of this case.**

**Overbroad. This RFP is overbroad because of the request of "[a]ll 2013-to-present communications" especially with the overbroad definition of "communications."**

**STATEMENT OF PRIVILEGES:**

**Attorney-client, Common Interest, and Work Product. This request asks for communications with the Center for Medical Progress, especially "any communications between the Texas Attorney general and the Center for Medical Progress," which are covered by the attorney-client, common interest, and work product privileges and protections. This is especially true with the almost unlimited definition of "communications."**

**Government Code Medicaid Investigative Privilege. This request, especially with its overbroad definition of "communications," calls for documents which are privileged under the Government Code Medicaid Investigative Privilege. Texas Government Code § 531.102(k) and Texas Government Code § 531.1021 (g) ("All information and materials subpoenaed or compiled by the [OIG] office in connection with an audit or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under Chapter 552, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or the attorney general or their employees or agents involved in the audit or investigation conducted by the office or the attorney general, except that this information may be disclosed to the state auditor's office, law enforcement agencies, and other entities as permitted by other law.").**

**RESPONSE:**

**The State will stand on its Objections and Statements of Privileges and will not produce documents in response to this RFP.**

**REQUEST FOR PRODUCTION NO. 8**

All 2010-to-present documents relating to any fetal-tissue study in which any Texas Medicaid provider other than the Affiliate Defendants participated.

**OBJECTIONS:**

**Not Relevant. The State's Complaint in Intervention here is brought under section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. Documents, communications, or anything else "relating to any fetal-tissue study" at any time are not relevant to either the State's claims, or to defenses to the**

State's claims here. Documents going back to 2010 are outside the temporal scope of discovery for the claims and defenses of this case.

**Overbroad.** This RFP is overbroad because of the request of "[a]ll 2010-to-present documents," the almost unlimited definition of "related to" as "involving in any way whatsoever the subject matter of the request" and the further definition that a "document may 'relate to' or [sic.] an individual or entity without specifically mentioning or discussing that individual or entity by name."

**STATEMENT OF PRIVILEGES:**

**Attorney-client, Common Interest, and Work Product.** This request asks for "[a]ll 2010-to-present documents relating to any fetal-tissue study," especially with the overbroad definition of "relating to," which are covered by the attorney-client, common interest, and work product privileges and protections. This is especially true with the almost unlimited definitions of "documents."

**Government Code Medicaid Investigative Privilege.** This request, especially with its overbroad definitions of "documents" and "relating to," calls for documents which are privileged under the Government Code Medicaid Investigative Privilege. Texas Government Code § 531.102(k) and Texas Government Code § 531.1021 (g) ("All information and materials subpoenaed or compiled by the [OIG] office in connection with an audit or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under Chapter 552, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or the attorney general or their employees or agents involved in the audit or investigation conducted by the office or the attorney general, except that this information may be disclosed to the state auditor's office, law enforcement agencies, and other entities as permitted by other law.").

**RESPONSE:**

The State will stand on its Objections and Statements of Privileges and will not produce documents in response to this RFP.

## REQUEST FOR PRODUCTION NO. 9

All 2013-to-present documents relating to whether Texas Medicaid did, could, or should seek repayment of claims from any Affiliate Defendant, including without limitation internal communications and communications with Texas Medicaid.

**OBJECTIONS:**
**Not Relevant. Texas's Complaint in Intervention is brought under Section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. Whether Texas Medicaid "could" or "should" seek recoupment is not an element or defense to this TMFPA claim. The law concerning recoupment by, and reimbursement of, Texas Medicaid speaks for itself, and "internal communications and communications with Texas Medicaid" cannot change the law. Documents going back to 2013 are outside the temporal scope of discovery for the claims and defenses of this case.**

**Overbroad. This request for "[a]ll 2013-to-present documents relating to whether Texas Medicaid did, could, or should seek repayment of claims" from Defendants is overbroad because of the almost unlimited definition of "related to" as "involving in any way whatsoever the subject matter of the request" and the further definition that a "document may 'relate to' or [sic.] an individual or entity without specifically mentioning or discussing that individual or entity by name." Additionally, this RFP is overbroad because of the very broad definition of "documents." This RFP is also overbroad because of the very broad phrase "including without limitation internal communications and communications with Texas Medicaid."**

**STATEMENT OF PRIVILEGES:**

**Attorney-client, Common Interest, and Work Product. This request for "[a]ll 2013-to-present documents relating to whether Texas Medicaid did, could, or should seek repayment of claims" from Defendants necessarily asks for documents which are covered by the attorney-client, common interest, and work product privileges and protections. This is especially true with the almost unlimited definitions of "relating to," "documents," and the addition of "including without limitation internal communications and communications with Texas Medicaid."**

**Government Code Medicaid Investigative Privilege. This request, especially with its overbroad definitions of "documents" and "relating to," calls for documents which are privileged under the Government Code Medicaid Investigative Privilege. Texas Government Code § 531.102(k) and Texas Government Code § 531.1021 (g) ("All information and materials subpoenaed or compiled by the [OIG] office in connection with an audit or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under Chapter 552, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or the attorney general or their employees or agents involved in the audit or investigation conducted by the office or the attorney general, except that this information may be disclosed to the state auditor's office, law enforcement agencies, and other entities as permitted by other law.").**

**RESPONSE:**

*See* **The State's Objections, Statements of Privileges, and Responses to Defendants' First Set of Requests for Production, Response to RFP 1, served on July 1, 2022. Other than that Response, the State will stand on its Objections and Statements of Privileges and will not produce documents in response to this RFP.**

**REQUEST FOR PRODUCTION NO. 10**

All 2010-to-present documents relating to a Texas Medicaid provider's ability or inability to receive and retain payments for Texas Medicaid claims during the pendency of a litigation or administrative proceeding regarding the provider's qualifications under the Texas Medicaid program.

**OBJECTIONS:**

**Not Relevant. Texas's Complaint in Intervention is brought under Section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. "Texas Medicaid provider's ability or inability to receive and retain payments for Texas Medicaid claims during the pendency of a litigation or administrative proceeding" is not an element or defense to this TMFPA claim. The law concerning retention and repayment of payments to Texas Medicaid speaks for itself, and all documents "relating to" that cannot change the law. Documents going back to 2010 are outside the temporal scope of discovery for the claims and defenses of this case.**

Overbroad. This request for "[a]ll 2010-to-present documents relating to a Texas Medicaid provider's ability or inability to receive and retain payments for Texas Medicaid claims during the pendency of a litigation or administrative proceeding" is overbroad because of the almost unlimited definition of "relating to" as "involving in any way whatsoever the subject matter of the request" and the further definition that a "document may 'relate to' or [sic.] an individual or entity without specifically mentioning or discussing that individual or entity by name." Additionally, this RFP is overbroad because of the very broad definition of "documents."

**STATEMENT OF PRIVILEGES:**

**Attorney-client, Common Interest, and Work Product.** This request for "[a]ll 2010-to-present documents relating to" receiving and retaining Texas Medicaid payments necessarily asks for documents which are covered by the attorney-client, common interest, and work product privileges and protections. This is especially true with the almost unlimited definitions of "relating to" and "documents."

**Government Code Medicaid Investigative Privilege.** This request, especially with its overbroad definitions of "documents" and "relating to," calls for documents which are privileged under the Government Code Medicaid Investigative Privilege. Texas Government Code § 531.102(k) and Texas Government Code § 531.1021 (g) ("All information and materials subpoenaed or compiled by the [OIG] office in connection with an audit or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under Chapter 552, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or the attorney general or their employees or agents involved in the audit or investigation conducted by the office or the attorney general, except that this information may be disclosed to the state auditor's office, law enforcement agencies, and other entities as permitted by other law.").

**RESPONSE:**

*See* The State's Objections, Statements of Privileges, and Responses to Defendants' First Set of Requests for Production, Response to RFP 1, served on

July 1, 2022. Other than that Response, the State will stand on its Objections and Statements of Privileges and will not produce documents in response to this RFP.

**REQUEST FOR PRODUCTION NO. 11**

All 2010-to-present documents relating to a Texas Medicaid provider's ability or inability to receive and retain payments for Texas Medicaid claims during the pendency of a temporary restraining order or preliminary injunction barring termination of the provider from the Texas Medicaid program.

**OBJECTIONS:**

**Not Relevant. Texas's Complaint in Intervention is brought under Section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. "Texas Medicaid provider's ability or inability to receive and retain payments for Texas Medicaid claims during the pendency of a temporary restraining order or preliminary injunction" is not an element or defense to this TMFPA claim. The law concerning retention and repayment of payments to Texas Medicaid, and of action during temporary restraining orders or preliminary injunctions speaks for itself, and all documents "relating to" that cannot change the law. Documents going back to 2010 are outside the temporal scope of discovery for the claims and defenses of this case.**

**Overbroad. This request for "[a]ll 2010-to-present documents relating to a Texas Medicaid provider's ability or inability to receive and retain payments for Texas Medicaid claims" during temporary restraining orders or injunctions is overbroad because of the almost unlimited definition of "relating to" as "involving in any way whatsoever the subject matter of the request" and the further definition that a "document may 'relate to' or [sic.] an individual or entity without specifically mentioning or discussing that individual or entity by name." Additionally, this RFP is overbroad because of the very broad definition of "documents."**

**STATEMENT OF PRIVILEGES:**

**Attorney-client, Common Interest, and Work Product. This request for "[a]ll 2010-to-present documents relating to" receiving and retaining Texas Medicaid payments during temporary restraining orders and injunctions necessarily asks for documents which are covered by the attorney-client, common interest, and**

work product privileges and protections. This is especially true with the almost unlimited definitions of "relating to" and "documents."

**Government Code Medicaid Investigative Privilege.** This request, especially with its overbroad definitions of "documents" and "relating to," calls for documents which are privileged under the Government Code Medicaid Investigative Privilege. Texas Government Code § 531.102(k) and Texas Government Code § 531.1021 (g) ("All information and materials subpoenaed or compiled by the [OIG] office in connection with an audit or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under Chapter 552, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or the attorney general or their employees or agents involved in the audit or investigation conducted by the office or the attorney general, except that this information may be disclosed to the state auditor's office, law enforcement agencies, and other entities as permitted by other law.").

**RESPONSE:**

*See* **The State's Objections, Statements of Privileges, and Responses to Defendants' First Set of Requests for Production, Response to RFP 1, served on July 1, 2022. Other than that Response, the State will stand on its Objections and Statements of Privileges and will not produce documents in response to this RFP.**

## REQUEST FOR PRODUCTION NO. 12

All 2010-to-present documents relating to a Texas Medicaid provider's obligation or lack of obligation to repay claims received during the pendency of a temporary restraining order or preliminary injunction barring termination of the provider from the Texas Medicaid program.

## OBJECTIONS:

**Not Relevant. Texas's Complaint in Intervention is brought under Section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. A "Texas Medicaid provider's obligation or lack of obligation to repay claims received during" a temporary restraining order or injunction is not an element or defense**

to this TMFPA claim. The law concerning obligations to repay claims to Texas Medicaid, and of action during temporary restraining orders or preliminary injunctions speaks for itself, and all documents "relating to" that cannot change the law. Documents going back to 2010 are outside the temporal scope of discovery for the claims and defenses of this case.

**Overbroad.** This request for "[a]ll 2010-to-present documents relating to a Texas Medicaid provider's obligation or lack of obligation to repay claims received during" a temporary restraining order or injunction is overbroad because of the almost unlimited definition of "relating to" as "involving in any way whatsoever the subject matter of the request" and the further definition that a "document may 'relate to' or [sic.] an individual or entity without specifically mentioning or discussing that individual or entity by name." Additionally, this RFP is overbroad because of the very broad definition of "documents."

STATEMENT OF PRIVILEGES:

**Attorney-client, Common Interest, and Work Product.** This request for "[a]ll 2010-to-present documents relating to" receiving and retaining Texas Medicaid payments during temporary restraining orders and injunctions necessarily asks for documents which are covered by the attorney-client, common interest, and work product privileges and protections. This is especially true with the almost unlimited definitions of "relating to" and "documents."

**Government Code Medicaid Investigative Privilege.** This request, especially with its overbroad definitions of "documents" and "relating to," calls for documents which are privileged under the Government Code Medicaid Investigative Privilege. Texas Government Code § 531.102(k) and Texas Government Code § 531.1021 (g) ("All information and materials subpoenaed or compiled by the [OIG] office in connection with an audit or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under Chapter 552, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or the attorney general or their employees or agents involved in the audit or investigation conducted by the office or the attorney general, except that this information may be disclosed to the state auditor's office, law enforcement agencies, and other entities as permitted by other law.").

**RESPONSE:**

*See* **The State's Objections, Statements of Privileges, and Responses to Defendants' First Set of Requests for Production, Response to RFP 1, served on July 1, 2022. Other than that Response, the State will stand on its Objections and Statements of Privileges and will not produce documents in response to this RFP.**

**REQUEST FOR PRODUCTION NO. 13**

All 2013-to-present communications with Louisiana relating to PPFA or any of the Affiliate Defendants.

**OBJECTIONS:**

**Not Relevant. Texas's Complaint in Intervention is brought under Section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. "[C]ommunications with Louisiana" have nothing to do with any elements or defenses to this TMFPA claim. Documents going back to 2013 are outside the temporal scope of discovery for the claims and defenses of this case.**

**Overbroad. This request for "[a]ll communications with Louisiana" is overbroad because of the almost unlimited definition of "relating to" as "involving in any way whatsoever the subject matter of the request" and the further definition that a "document may 'relate to' or [sic.] an individual or entity without specifically mentioning or discussing that individual or entity by name." Additionally, this RFP is overbroad because of the very broad definition of "communications."**

**STATEMENT OF PRIVILEGES:**

**Attorney-client, Common Interest, and Work Product. This request for "[a]ll communications with Louisiana" necessarily asks for documents which are covered by the attorney-client, common interest, and work product privileges and protections. This is especially true with the almost unlimited definitions of "relating to" and "documents."**

**Government Code Medicaid Investigative Privilege. This request, especially with its overbroad definitions of "communications" and "relating to," calls for documents which are privileged under the Government Code Medicaid Investigative Privilege. Texas Government Code § 531.102(k) and Texas**

**Government Code § 531.1021 (g) ("All information and materials subpoenaed or compiled by the [OIG] office in connection with an audit or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under Chapter 552, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or the attorney general or their employees or agents involved in the audit or investigation conducted by the office or the attorney general, except that this information may be disclosed to the state auditor's office, law enforcement agencies, and other entities as permitted by other law.").**

**RESPONSE:**

**The State will stand on its Objections and Statements of Privileges and will not produce documents in response to this RFP.**

**REQUEST FOR PRODUCTION NO. 14**

All 2013-to-present communications between You and the Media relating to Your or Relator's allegations and claims in this litigation.

**OBJECTIONS:**

**Not Relevant. Texas's Complaint in Intervention is brought under Section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. Communications between Texas Medicaid, or anyone, have nothing to do with any elements or defenses to this TMFPA claim. Documents going back to 2013 are outside the temporal scope of discovery for the claims and defenses of this case.**

**Overbroad. This request for "[a]ll 2013-to-present communications between You and the Media relating to" the allegations in this litigation is overbroad because of the almost unlimited definition of "relating to" as "involving in any way whatsoever the subject matter of the request" and the further definition that a "document may 'relate to' or [sic.] an individual or entity without specifically mentioning or discussing that individual or entity by name." Additionally, this RFP is overbroad because of the very broad definition of "communications" and "You."**

**RESPONSE:**

**Subject to these Objections, the State will search for and produce press releases provided to the Media by Texas Medicaid or the Office of the Attorney General, if any, related to this litigation.**

## REQUEST FOR PRODUCTION NO. 15

All documents relating to the allegation in Paragraph 20 of Texas's Complaint that PPFA "provides significant monetary support to [the Affiliate Defendants] as well as other types of support and control."

## OBJECTIONS:

**Overbroad. This request for "[a]ll documents relating to the allegation in Paragraph 20 of Texas's Complaint" is overbroad because of the almost unlimited definition of "relating to" as "involving in any way whatsoever the subject matter of the request" and the further definition that a "document may 'relate to' or [sic.] an individual or entity without specifically mentioning or discussing that individual or entity by name." Additionally, this RFP is overbroad because of the very broad definition of "documents."**

## STATEMENT OF PRIVILEGES:

**Attorney-client, Common Interest, and Work Product. This request for "[a]ll relating to the allegation in Paragraph 20 of Texas's Complaint" necessarily asks for documents which are covered by the attorney-client, common interest, and work product privileges and protections. This is especially true with the almost unlimited definitions of "relating to" and "documents."**

**Government Code Medicaid Investigative Privilege. This request, especially with its overbroad definitions of "documents" and "relating to," calls for documents which are privileged under the Government Code Medicaid Investigative Privilege. Texas Government Code § 531.102(k) and Texas Government Code § 531.1021 (g) ("All information and materials subpoenaed or compiled by the [OIG] office in connection with an audit or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under Chapter 552, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or the attorney general or their employees**

or agents involved in the audit or investigation conducted by the office or the attorney general, except that this information may be disclosed to the state auditor's office, law enforcement agencies, and other entities as permitted by other law.").

**RESPONSE:**

*See* **Response to RFP 1 in The State's Objections, Statements of Privileges, and Responses to Defendants' First Set of Requests for Production, served on July 1, 2022, especially The Record on Appeal in the Federal Court Action. Other than that Response, the State will stand on its Objections and Statements of Privileges and will not produce documents in response to this RFP.**

## REQUEST FOR PRODUCTION NO. 16

All documents relating to any formal or informal statements regarding Your allegations and claims against PPFA in this litigation by any person who claims to have or You claim to have knowledge of facts relevant to this case, including without limitation any notes relating to such statements.

**OBJECTIONS:**

**Not Relevant. Texas's Complaint in Intervention is brought under Section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. Documents "relating to any formal or informal statements regarding" the claims in this case are not relevant to any elements or defenses to this TMFPA claim. Documents with no time limit are outside the temporal scope of discovery for the claims and defenses of this case.**

**Overbroad. This request for "[a]ll documents relating to any formal or informal statements regarding Your" claims in this case is overbroad because of the almost unlimited definition of "relating to" as "involving in any way whatsoever the subject matter of the request" and the further definition that a "document may 'relate to' or [sic.] an individual or entity without specifically mentioning or discussing that individual or entity by name." This RFP is also overbroad because it has no time limit, and because of the broad phrase "by any person who claims to have or You claim to have knowledge of facts relevant to this case, including without limitation any notes relating to such statements."**

Additionally, this RFP is overbroad because of the very broad definitions of "Your" and "documents."

**STATEMENT OF PRIVILEGES:**

**Attorney-client, Common Interest, and Work Product.** for "[a]ll documents relating to any formal or informal statements regarding Your" claims in this case necessarily asks for documents which are covered by the attorney-client, common interest, and work product privileges and protections. This is especially true with the almost unlimited definitions of "relating to" and "documents," and the very broad phrase "by any person who claims to have or You claim to have knowledge of facts relevant to this case, including without limitation any notes relating to such statements."

**Government Code Medicaid Investigative Privilege.** This request, especially with its overbroad definitions of "documents" and "relating to," and the very broad phrase "by any person who claims to have or You claim to have knowledge of facts relevant to this case, including without limitation any notes relating to such statements," calls for documents which are privileged under the Government Code Medicaid Investigative Privilege. Texas Government Code § 531.102(k) and Texas Government Code § 531.1021 (g) ("All information and materials subpoenaed or compiled by the [OIG] office in connection with an audit or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under Chapter 552, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or the attorney general or their employees or agents involved in the audit or investigation conducted by the office or the attorney general, except that this information may be disclosed to the state auditor's office, law enforcement agencies, and other entities as permitted by other law.").

**RESPONSE:**

*See* the State's Complaint in Intervention, filings in this case and other litigation, Response to RFP 1 in The State's Objections, Statements of Privileges, and Responses to Defendants' First Set of Requests for Production, served on July 1, 2022. Other than that Response, the State will stand on its Objections and Statements of Privileges and will not produce documents in response to this RFP.

## REQUEST FOR PRODUCTION NO. 17

All documents relating to Your claim for damages or penalties.

**Not Relevant. Texas's Complaint in Intervention is brought under Section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid, and asking for civil penalties but not for "damages." Documents "relating to . . . damages" are not relevant to any elements or defenses to this TMFPA claim. This request for documents with no time limit is outside the temporal scope of discovery for the claims and defenses of this case.**

**Overbroad. This request for "[a]ll documents relating to Your claim for damages or penalties" claims in this case is overbroad because of the almost unlimited definition of "relating to" as "involving in any way whatsoever the subject matter of the request" and the further definition that a "document may 'relate to' or [sic.] an individual or entity without specifically mentioning or discussing that individual or entity by name." This RFP is also overbroad because of the broad the very broad definitions of "Your" and "documents."**

**STATEMENT OF PRIVILEGES:**

**Attorney-client, Common Interest, and Work Product. This request for "[a]ll documents relating to Your claim for damages or penalties" necessarily asks for documents which are covered by the attorney-client, common interest, and work product privileges and protections. This is especially true with the almost unlimited definitions of "relating to, "documents," and "Your."**

**Government Code Medicaid Investigative Privilege. This request, especially with its overbroad definitions of "documents," "relating to," and "Your" calls for documents which are privileged under the Government Code Medicaid Investigative Privilege. Texas Government Code § 531.102(k) and Texas Government Code § 531.1021 (g) ("All information and materials subpoenaed or compiled by the [OIG] office in connection with an audit or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under Chapter 552, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or the attorney general or their employees or agents involved in the audit or investigation conducted by the office or the attorney general, except that this information may**

be disclosed to the state auditor's office, law enforcement agencies, and other entities as permitted by other law.").

**RESPONSE:**

*See* the Expert Report and Expert Production in this case; Response to RFP 1 in The State's Objections, Statements of Privileges, and Responses to Defendants' First Set of Requests for Production, served on July 1, 2022; the State's Complaint in Intervention, and filings in this case and other litigation. Other than that Response, the State will stand on its Objections and Statements of Privileges and will not produce documents in response to this RFP.

**REQUEST FOR PRODUCTION NO. 18**

To the extent not already produced in response to any of the above Requests, all documents on which the State of Texas relies to support any of the allegations in Texas's Complaint relating to PPFA.

**OBJECTIONS:**

**Overbroad.** This request for "all documents on which the State of Texas relies to support any of the allegations in Texas's Complaint' if not already produced in response to the RFPs above" is overbroad because of the broad definition of "documents."

**STATEMENT OF PRIVILEGES:**

**Attorney-client, Common Interest, and Work Product.** This request for "all documents on which the State of Texas relies to support any of the allegations in Texas's Complaint" necessarily asks for documents which are covered by the attorney-client, common interest, and work product privileges and protections. This is especially true with the almost unlimited definitions of "documents."

**Government Code Medicaid Investigative Privilege.** This request, especially with its overbroad definitions of "documents," calls for documents which are privileged under the Government Code Medicaid Investigative Privilege. Texas Government Code § 531.102(k) and Texas Government Code § 531.1021 (g) ("All information and materials subpoenaed or compiled by the [OIG] office in connection with an audit or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not

subject to disclosure under Chapter 552, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or the attorney general or their employees or agents involved in the audit or investigation conducted by the office or the attorney general, except that this information may be disclosed to the state auditor's office, law enforcement agencies, and other entities as permitted by other law.").

**RESPONSE:**

*See* the State's Complaint in Intervention, and filings in this case and other litigation; the Expert Report and Expert Production in this case; The State's Objections, Statements of Privileges, and Responses to Defendants' First Set of Requests for Production, especially Response to RFP 1, served on July 1, 2022. Other than that Response, and subject to the State's Objections and Statements of Privileges we will produce additional non-privileged relevant documents in discovery.

**REQUEST FOR PRODUCTION NO. 19:**

All documents provided by or on behalf of You to any person that You designate as an expert witness in this litigation.

**RESPONSE:**

See Expert Report and Expert Production in this case.

**REQUEST FOR PRODUCTION NO. 20**

To the extent not already produced in response to any of the above Requests, all documents that relate to any of the matters referenced in PPFA's First Set of Interrogatories to the State of Texas or Your responses to PPFA's First Set of Interrogatories.

**OBJECTIONS:**

**Not Relevant. Texas's Complaint in Intervention is brought under Section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. "[A]ll documents that relate to any of the matters referenced in the claims in PPFA's First Set of**

Interrogatories," especially those to which the State has objected or claimed privilege, are not necessarily relevant to any elements or defenses to this TMFPA claim. Documents with no time limit are outside the temporal scope of discovery for the claims and defenses of this case.

Overbroad. This request for "[A]ll documents that relate to any of the matters referenced in the claims in PPFA's First Set of Interrogatories to the State of Texas or Your responses to PPFA's First Set of Interrogatories" is overbroad because of the almost unlimited definition of "relate to" as "involving in any way whatsoever the subject matter of the request" and the further definition that a "document may 'relate to' or [sic.] an individual or entity without specifically mentioning or discussing that individual or entity by name." This RFP is also overbroad because of the broad the very broad definitions of "documents."

STATEMENT OF PRIVILEGES:

Attorney-client, Common Interest, and Work Product. This request for "[A]ll documents that relate to any of the matters referenced in the claims in PPFA's First Set of Interrogatories to the State of Texas or Your responses to PPFA's First Set of Interrogatories" not already produced necessarily asks for documents which are covered by the attorney-client, common interest, and work product privileges and protections. This is especially true with the almost unlimited definitions of "documents."

Government Code Medicaid Investigative Privilege. This request, especially with its overbroad definitions of "documents," calls for documents which are privileged under the Government Code Medicaid Investigative Privilege. Texas Government Code § 531.102(k) and Texas Government Code § 531.1021 (g) ("All information and materials subpoenaed or compiled by the [OIG] office in connection with an audit or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under Chapter 552, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or the attorney general or their employees or agents involved in the audit or investigation conducted by the office or the attorney general, except that this information may be disclosed to the state auditor's office, law enforcement agencies, and other entities as permitted by other law.").

**RESPONSE:**

***See*** **the State's Complaint in Intervention, and filings in this case and other litigation; the Expert Report and Expert Production in this case; The State's Objections, Statements of Privileges, and Responses to Defendants' First Set of Requests for Production, especially Response to RFP 1, served on July 1, 2022. Other than that Response, and to the production of other additional non-privileged relevant documents in discovery, the State will stand on its Objections and Statements of Privileges and not produce additional documents in response to this RFP.**

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN E. COWLES**
Deputy Attorney General for Civil Litigation

*/s/ Raymond Charles Winter*
**RAYMOND CHARLES WINTER**
Chief, Civil Medicaid Fraud Division
Texas Bar No. 21791950

**AMY S. HILTON**
Assistant Attorney General
General Litigation Division
State Bar No. 24097834

Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 / Fax (512) 320-0667
Raymond.Winter@oag.texas.gov
Amy.Hilton@oag.texas.gov

**Attorneys for State of Texas**

## CERTIFICATE OF SERVICE

I certify that on **July 5, 2022**, a true and correct copy of the foregoing document was sent by electronic mail to Defendants' counsel to the e-mail addresses below:

Christian Sheehan    christian.sheehan@arnoldporter.com

Christopher Mohr Odell    christopher.odell@arnoldporter.com

Craig D Margolis    craig.margolis@arnoldporter.com

Danny S Ashby    dashby@omm.com

Justin Roel Chapa    jchapa@omm.com

Leah Godesky    lgodesky@omm.com

Ryan Patrick Brown    brown@blackburnbrownlaw.com

Tirzah Lollar    tirzah.lollar@arnoldporter.com

**Attorneys for Defendant**


*/s/ **Raymond Charles Winter***

**Raymond Charles Winter**

# EXHIBIT 10

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ALEX DOE, Relator, | § § § | |
| THE STATE OF TEXAS, *ex rel.* ALEX DOE, Relator, | § § § | |
| THE STATE OF LOUISIANA, *ex rel.* ALEX DOE, Relator, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 2:21-CV-00022-Z |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., PLANNED PARENTHOOD GULF COAST, INC., PLANNED PARENTHOOD OF GREATER TEXAS, INC., PLANNED PARENTHOOD SOUTH TEXAS, INC., PLANNED PARENTHOOD CAMERON COUNTY, INC., PLANNED PARENTHOOD SAN ANTONIO, INC., | § § § § § § § § § § § § § | |
| Defendants. | § | |

## STATE OF TEXAS'S OBJECTIONS, STATEMENTS OF PRIVILEGE, AND ANSWERS TO PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.'S FIRST SET OF INTERROGATORIES

To:     Danny S. Ashby and Justin R. Chapa, O'Melveny & Myers LLP, 2501 N. Harwood Street Suite 1700, Dallas, Texas 75201 and Leah Godesky, O'Melveny & Myers LLP, 1999 Avenue of the Stars, 8th Floor, Los Angeles, California 90067.

The State of Texas serves these Objections, Statements of Privileges, and Responses to Planned Parenthood Federation of America, Inc.'s First Set of Interrogatories.

# OBJECTIONS

1.      The State objects to the Interrogatories, including the "Definitions" and "Instructions," where they exceed the requirements imposed by Federal Rule of Civil Procedure (FRCP) 33, other FRCPs, or elsewhere. The State will respond to the Interrogatories in accordance with FRCP 33, other FRCPs, and applicable law.

2.      The State objects to the Interrogatories where they seek disclosure of information protected by the attorney-client privilege, the work-product doctrine, the investigative-communications privilege, the common-interest privilege, and/or any other privileges and exemptions set forth in applicable law.

3.      The State objects to the Interrogatories where they seek information not within the State's possession, custody, or control.

4.      The State objects to the Interrogatories where they call for information to be disclosed that is protected by the HIPAA Privacy Rule or is confidential by law.

5.      The State objects to the Interrogatories where they are not properly limited to an appropriate time period. Answering Interrogatories outside of the State's Specified Time Period from February 1, 2017 to the present will be overly broad, unduly burdensome, and neither relevant to any party's claim or defense, nor proportional to the needs of the case, under FRCP 26(b)(1). Texas claims are only for the time period February 1, 2017 to the present.

6.      The responses made at this time are without prejudice to the State's rights to amend or supplement its responses as appropriate under FRCP 33 or other rules or law.

7.      By answering these Interrogatories, the State does not concede the relevance or admissibility of answers or other information. The State further does not waive, but instead, expressly preserves, the Objections here.

8.      The State incorporates by reference the Objections above into the responses set forth below. The failure to repeat any of the Objections above does not waive any Objection to the specific Interrogatory.

9.      The State intends to not produce documents which are privileged under the attorney-client privilege or work-product protection. Any production of documents which are privileged under the attorney-client privilege or work-product protection is inadvertent under Federal Rule of Evidence (FRE) 502.

## OBJECTIONS TO DEFENDANT'S DEFINITIONS

**1.    Defendant's Definition 5.** Defendant's definition of the term "Communication" is overly broad, vague, and answering Interrogatories by using this definition would be unduly burdensome. Defendant's definition of the term includes "the transmission or expression of any thought, word, statement, fact, thing, idea, opinion, document, instruction, demand, or question, whether written or oral, whether made in person, by telephone, in a meeting, transmitted electronically or telegraphically, or transmitted in any other fashion." The State will interpret the terms "communication" consistent with applicable FRCPs, rules, law, and common usage.

**2.    Defendant's Definition 7.** Defendant's definition of the term "Describe" is overly broad, vague, and answering Interrogatories by this definition or searching for and identifying "any document or communication" with this definition would be unduly burdensome. Defendant's definition of the term includes "to identify any document or communication concerning the item in question and to provide a complete factual summary chronologically setting forth the substance of, and identifying any person participating in, witnessing, or having knowledge of, whether firsthand or otherwise, any fact, action, occurrence, conduct, event, condition, or circumstance concerning the information in question." The State will interpret the terms "communication" consistent with applicable FRCPs, rules, law, and common usage.

**3.    Defendant's Definition 8.** Defendant's definition of the term "Document" is overly broad, vague, and answering Interrogatories with that definition would be unduly burdensome where the definition departs from the FRCPs and other applicable law; including but not limited to, for example, adding "including without limitation any designated tangible things," to the definition of "document." The State will interpret the term "document" consistent with FRCP 33 and other applicable FRCPs, rules, and law.

**4.    Defendant's Definition 13.** Defendant's definition of the terms "Regarding," "relating to," "related to," "in relation to," or "relates to" is overly broad, vague, and answering Interrogatories by searching for and producing documents with that definition would be unduly burdensome. Defendant's definition of the terms includes these unlimited descriptions: "relating in any way

to, referring to, arising from, dealing with, consisting of, mentioning, discussing, describing, reflecting, concerning, memorializing, supporting, constituting, evidencing, comprising, recording, or in any other way pertaining to the subject, either in whole or in part, whether directly or indirectly." The State will interpret the terms "Regarding," "relating to," "related to," "in relation to," or "relates to" consistent with applicable FRCPs, rules, law, and common usage.

5.      **Defendant's Definition 16.** Defendant's definition and use of the terms "Texas," "State of Texas," "You," and "Your" is overly broad and neither relevant to any party's claim or defense, nor proportional to the needs of the case, under FRCP 26(b)(1). Answering Interrogatories, and identifying and producing documents, with those terms as defined would be unduly burdensome. These terms as defined by Defendants include persons and entities with no relation to this matter. The terms' vagueness and overbreadth make any Interrogatory with the terms as defined by Defendant exceed the scope of the specific claims and issues in this case and therefore makes those Interrogatories objectionable. The Attorney General of Texas brings this suit on behalf of the Texas Medicaid program, which is part of the Texas Health and Human Services Commission ("HHSC"). In this suit, the plaintiff, the "State," does not represent any other "current or former subsidiary, division, affiliate, predecessor entity, agency, office, or department of the Texas Government," or individuals. Where Defendant uses those terms and overbroad definitions of the terms to seek information that is beyond the possession and reasonable control of the Office of the Attorney General as counsel for the HHSC; beyond the possession and reasonable control of the HHSC; or beyond the possession and reasonable control of the state agencies under the HHSC's organizational umbrella, or their successor agencies, the State requests that Defendant show cause as to why such information should be provided. Until such cause is shown, the State will only provide responses to Interrogatories on behalf of the Texas Medicaid Program and within the reasonable control of the Office of the Attorney General as counsel for the HHSC; within the reasonable control of the HHSC; or within the reasonable control of the state agencies under the HHSC's organizational umbrella, or their successor agencies. The State further objects to this definition to the extent its use in an Interrogatory seeks information protected by the attorney-client or work product privileges.

## OBJECTIONS TO DEFENDANT'S INSTRUCTIONS

1.      The State objects to all of Defendant's Instructions which exceed the requirements of FRCP 33, or other applicable Rules or law. The State will answer these Interrogatories as required by FRCP 33, and other applicable Rules and law.

2.      The State objects to all uses by Defendants of a Time Period which is irrelevant to the claims in this case.

Designated discovery in this case has not been completed.

The State is ready to confer or attempt to confer, in good faith, to resolve any disputes related to objections, claims of privilege, or other matters.

# ANSWERS TO INTERROGATORIES

## INTERROGATORY NO. 1

Identify each person with knowledge of the facts relevant to the allegations in Texas's Complaint. Your response should identify the facts about which each person has knowledge.

**ANSWER:**

*See* the State's Filings in this case including, but not limited to, the State's Initial Disclosures.

## INTERROGATORY NO. 2

For each 2017-present Texas Medicaid claim submitted by an Affiliate Defendant that You contend was a false or fraudulent claim, identify all facts that You contend demonstrate PPFA's knowledge of, involvement in, or control over such claim.

**OBJECTION:**

**Not Relevant. Texas's Complaint in Intervention is brought under Section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. This Interrogatory misstates the elements of the State's claims in its Complaint in Intervention and is therefore in large part irrelevant. The TMFPA does not require "false claims" but rather identifies "unlawful acts." *See* TMFPA 36.002 (defining "Unlawful Acts"). The TMFPA also has no requirement of "facts" to demonstrate a party's "knowledge of, involvement in, or control over" a claim. The State's Complaint has no allegations the Defendants "submitted" claims that were "false or fraudulent" in violation of the TMFPA, therefore this Interrogatory is irrelevant.**

**ANSWER:**

**Subject to the State's Objections, Texas does not allege that the Defendants submitted false or fraudulent claims to Texas in violation of the TMFPA. Rather, Texas alleges that Defendants failed to repay money to the State of Texas that they were obligated to repay. Defendants were paid for delivering Texas Medicaid services to Texas Medicaid patients during a time window when**

**Defendants were not eligible Texas Medicaid providers. The TMFPA unlawful act giving rise to the Texas suit is the obligation Defendants had to repay money that Defendants were paid for services delivered when they were not eligible Texas Medicaid providers. TMFPA § 36.002(12). For further information about the amounts of those payments** *see* **Expert Reports, Expert Discovery Production including claims data. The burden of deriving or ascertaining any relevant answers to this Interrogatory is substantially the same for the Defendants as it is for the State. Designated discovery has not been completed.**

**INTERROGATORY NO. 3**

For each 2017-present Texas Medicaid overpayment received by an Affiliate Defendant that You contend the Affiliate Defendant was obligated to report and repay, identify all facts that You contend demonstrate PPFA's knowledge of, involvement in, or control over the nonpayment of the claim, as well as all facts that You contend demonstrate that PPFA directed or controlled the Affiliate Defendant's alleged concealment of any overpayment or decision to not report or repay an overpayment.

**OBJECTION:**

**Not Relevant. Texas's Complaint in Intervention is brought under Section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. This Interrogatory misstates the elements of the State's claims in its Complaint in Intervention and is therefore in large part irrelevant. The basis of the State's allegations in this case is not Defendants' "nonpayment" of a claim or Defendants' "concealment of any overpayment or decisions to not report" an overpayment.**

**ANSWER:**

**Subject to the State's Objections,** *see* **Expert Reports, Expert Discovery Production including claims data;** *see also* **the State's Filings, and Discovery Responses in this case.**

**INTERROGATORY NO. 4**

Identify all facts in Texas's Complaint or the Relator's Complaint that the Relator disclosed to You and of which You did not have knowledge before February 5, 2021.

7

**OBJECTIONS:**

**Not Relevant. Texas's Complaint in Intervention is brought under Section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. What part of Texas's Complaint was disclosed by Relator to the State, and when, is not relevant to any of the State's claims or to defenses to the State's claims in this case.**

**Overbroad. This Interrogatory is overbroad because of the objectionably very broad definition of "You" here which encompasses untold persons and entities who have nothing to do with any claims or defenses in this case.**

**STATEMENT OF PRIVILEGES:**

**Core Work Product, Common Interest, and Attorney/Client: This Interrogatory inquiring into disclosures from Relator to Texas asks for information which is covered by the attorney-client, common interest, and work product privileges and protections. This is especially true with the almost unlimited definition of "you."**

**Government Code Medicaid Investigative Privilege. This Interrogatory inquiring into disclosures from Relator to Texas, especially with its overbreadth, asks for information which is privileged under the Government Code Medicaid Investigative Privilege. Texas Government Code § 531.102(k) and Texas Government Code § 531.1021(g) ("All information and materials subpoenaed or compiled by the [OIG] office in connection with an audit or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under Chapter 552, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or the attorney general or their employees or agents involved in the audit or investigation conducted by the office or the attorney general, except that this information may be disclosed to the state auditor's office, law enforcement agencies, and other entities as permitted by other law.").**

8

**ANSWER:**

**The State stands on its Objections and Statement of Privileges and will not answer this Interrogatory.**

**INTERROGATORY NO. 5**

For each fact identified in response to Interrogatory No. 4, please:
      i. identify the date on which You obtained knowledge of the information;
      ii. identify the source of the information; and
      iii. describe, in detail, why You could not have obtained such information before February 5, 2021.

**OBJECTIONS:**

**Not Relevant. Texas's Complaint in Intervention is brought under Section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. What part of Texas's Complaint was disclosed by Relator to the State, and when, is not relevant to any of the State's claims or to defenses to the State's claims in this case.**

**Overbroad. This Interrogatory – like Interrogatory 4, above – is overbroad because of the objectionably very broad definition of "You" here which encompasses untold persons and entities who have nothing to do with any claims or defenses in this case.**

**STATEMENT OF PRIVILEGES:**

**Core Work Product, Common Interest, and Attorney/Client: This Interrogatory – like Interrogatory 4, above – inquiring into disclosures from Relator to Texas asks for information which is covered by the attorney-client, common interest, and work product privileges and protections. This is especially true with the almost unlimited definition of "you."**

**Government Code Medicaid Investigative Privilege. This Interrogatory, and Interrogatory 4, above, inquiring into disclosures from Relator to Texas, especially with its overbreadth, ask for information which is privileged under the Government Code Medicaid Investigative Privilege. Texas Government Code § 531.102(k) and Texas Government Code § 531.1021(g) ("All information and**

**materials subpoenaed or compiled by the [OIG] office in connection with an audit or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under Chapter 552, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or the attorney general or their employees or agents involved in the audit or investigation conducted by the office or the attorney general, except that this information may be disclosed to the state auditor's office, law enforcement agencies, and other entities as permitted by other law.").**

**ANSWER:**

**The State stands on its Objections and Statement of Privileges and will not answer this Interrogatory.**

## INTERROGATORY NO. 6

Identify the first date on which the State of Texas communicated with the Relator regarding any of the Affiliate Defendants' submission of claims to Texas Medicaid that You contend were false or fraudulent, and describe, in detail, the State of Texas's communication regarding such claims (including without limitation the nature, circumstances, participants, and contents of the communication).

## OBJECTIONS:

**Not Relevant. Texas's Complaint in Intervention is brought under Section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. This Interrogatory misstates the elements of the State's claims in its Complaint in Intervention, and enquires into Relator communications, and is therefore irrelevant. The State does not contend in this case that Defendants' submissions of claims were "false or fraudulent." Communications with Relator are not relevant to the State's claims or to defenses to the State's claims.**

**Overbroad. This Interrogatory is overbroad because of the objectionably very broad definition of "communications" here.**

**STATEMENT OF PRIVILEGES:**

**Core Work Product, Common Interest, and Attorney/Client: This Interrogatory**

inquiring into communications between Relator and Texas asks for information which is covered by the attorney-client, common interest, and work product privileges and protections. This is especially true with the broad definition of "communication."

**Government Code Medicaid Investigative Privilege.** This Interrogatory inquiring into communications between Relator and Texas, especially with its overbreadth, ask for information which is privileged under the Government Code Medicaid Investigative Privilege. Texas Government Code § 531.102(k) and Texas Government Code § 531.1021(g) ("All information and materials subpoenaed or compiled by the [OIG] office in connection with an audit or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under Chapter 552, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or the attorney general or their employees or agents involved in the audit or investigation conducted by the office or the attorney general, except that this information may be disclosed to the state auditor's office, law enforcement agencies, and other entities as permitted by other law.").

**ANSWER:**

**The State stands on its Objections and Statements of Privileges and will not answer this Interrogatory.**

**INTERROGATORY NO. 7**

Identify the first date on which the State of Texas communicated with the Relator regarding PPFA's alleged knowledge of, involvement in, or control over any claim that You contend was false or fraudulent, and describe, in detail, the State of Texas's communication regarding such claim (including without limitation the nature, circumstances, participants, and contents of the communication).

**OBJECTIONS:**

**Not Relevant.** Texas's Complaint in Intervention is brought under Section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. This Interrogatory misstates the elements of the State's claims in its Complaint in Intervention, and enquires into Relator communications, and is therefore in

large part irrelevant. The State does not contend in this case that Defendants' submissions of claims were "false or fraudulent." Communications with Relator, about PPFA or otherwise,  are not relevant to the State's claims or to defenses to the State's claims.

Overbroad. This Interrogatory is overbroad because of the objectionably very broad definition of "communications" here.

STATEMENT OF PRIVILEGES:

Core Work Product, Common Interest, and Attorney/Client: This Interrogatory inquiring into communications between Relator and Texas asks for information which is covered by the attorney-client, common interest, and work product privileges and protections. This is especially true with the broad definition of "communication."

Government Code Medicaid Investigative Privilege. This Interrogatory inquiring into communications between Relator and Texas, especially with its overbreadth, ask for information which is privileged under the Government Code Medicaid Investigative Privilege. Texas Government Code § 531.102(k) and Texas Government Code § 531.1021(g) ("All information and materials subpoenaed or compiled by the [OIG] office in connection with an audit or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under Chapter 552, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or the attorney general or their employees or agents involved in the audit or investigation conducted by the office or the attorney general, except that this information may be disclosed to the state auditor's office, law enforcement agencies, and other entities as permitted by other law.").

ANSWER:

The State stands on its Objections and Statements of Privileges and will not answer this Interrogatory.

INTERROGATORY NO. 8

Identify the first date on which the State of Texas communicated with the Center for Medical Progress regarding any of the Affiliate Defendants' submission of claims

to Texas Medicaid that You contend were false or fraudulent, and describe, in detail, the State of Texas's communication regarding such claims (including without limitation the nature, circumstances, participants, and contents of the communication).

**OBJECTIONS:**

**Not Relevant. Texas's Complaint in Intervention is brought under Section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. This Interrogatory misstates the elements of the State's claims in its Complaint in Intervention and enquires into communications with the Center for Medical Progress and is therefore in large part irrelevant. The State does not contend in this case that Defendants' submissions of claims were "false or fraudulent." Communications with the Center for Medical Progress are not relevant to the State's claims or to defenses to the State's claims.**

**Overbroad. This Interrogatory is overbroad because of the objectionably very broad definition of "communications" here.**

**STATEMENT OF PRIVILEGES:**

**Core Work Product, Common Interest, and Attorney/Client: This Interrogatory inquiring into communications between the Center for Medical Progress and Texas asks for information which is covered by the attorney-client, common interest, and work product privileges and protections. This is especially true with the broad definition of "communication."**

**Government Code Medicaid Investigative Privilege. This Interrogatory inquiring into communications between the Center for Medical Progress and Texas, especially with its overbreadth, ask for information which is privileged under the Government Code Medicaid Investigative Privilege. Texas Government Code § 531.102(k) and Texas Government Code § 531.1021(g) ("All information and materials subpoenaed or compiled by the [OIG] office in connection with an audit or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under Chapter 552, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or the attorney general or their employees or agents involved in the audit or investigation conducted by the office or the attorney general, except**

13

that this information may be disclosed to the state auditor's office, law enforcement agencies, and other entities as permitted by other law.").

**ANSWER:**

The State stands on its Objections and Statements of Privileges and will not answer this Interrogatory.

**INTERROGATORY NO. 9**

Identify the first date on which the State of Texas communicated with the Center for Medical Progress regarding PPFA's alleged knowledge of, involvement in, or control over any claim that You contend was false or fraudulent, and describe, in detail, the State of Texas's communication regarding such claim (including without limitation the nature, circumstances, participants, and contents of the communication).

**OBJECTIONS:**

Not Relevant. Texas's Complaint in Intervention is brought under Section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. This Interrogatory misstates the elements of the State's claims in its Complaint in Intervention and enquires into communications with the Center for Medical Progress and is therefore irrelevant. The State does not contend in this case that Defendants' submissions of claims were "false or fraudulent." Communications with the Center for Medical Progress, about PPFA or otherwise, are not relevant to the State's claims or to defenses to the State's claims.

Overbroad. This Interrogatory is overbroad because of the objectionably very broad definition of "communications" here.

**STATEMENT OF PRIVILEGES:**

Core Work Product, Common Interest, and Attorney/Client: This Interrogatory inquiring into communications between the Center for Medical Progress and Texas asks for information which is covered by the attorney-client, common interest, and work product privileges and protections. This is especially true with the broad definition of "communication."

14

**Government Code Medicaid Investigative Privilege. This Interrogatory inquiring into communications between the Center for Medical Progress and Texas, especially with its overbreadth, ask for information which is privileged under the Government Code Medicaid Investigative Privilege. Texas Government Code § 531.102(k) and Texas Government Code § 531.1021(g) ("All information and materials subpoenaed or compiled by the [OIG] office in connection with an audit or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under Chapter 552, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or the attorney general or their employees or agents involved in the audit or investigation conducted by the office or the attorney general, except that this information may be disclosed to the state auditor's office, law enforcement agencies, and other entities as permitted by other law.").**

**ANSWER:**

**The State stands on its Objections and Statements of Privileges and will not answer this Interrogatory.**

**INTERROGATORY NO. 10**

If you contend that PPFA had or has an obligation to repay Medicare overpayments made to any Affiliate Defendant, describe all facts (and identify all statutes, regulations and judicial decisions) supporting Your contention, including all facts supporting Your belief that PPFA should have made such payments despite the injunctions against the termination of provider status that are described in Texas's Complaint and/or the Relator's Complaint.

**OBJECTIONS:**

**Not Relevant. Texas's Complaint in Intervention is brought under Section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. By referencing "Medicare" and not Medicaid overpayments, this Interrogatory misstates the elements of the State's claims in its Complaint in Intervention and is therefore irrelevant. Medicare is not relevant to the State's claims or to defenses to the State's claims.**

15

**ANSWER:**

**The State stands on its Objections and Statements of Privileges and will not answer this Interrogatory.**

**INTERROGATORY NO. 11**

Describe all facts supporting the allegation in Paragraph 20 of Texas's Complaint that PPFA "provides significant monetary support to [the Affiliate Defendants] as well as other types of support and control."

**ANSWER:**

*See* **The State's Objections, Statements of Privileges, and Responses to Defendants' First Set of Requests for Production, Response to RFP 1, served on July 1, 2022;** *see also* **the State's additional filings. The burden of deriving or ascertaining any additional and relevant answers to this Interrogatory is substantially the same for the Defendants as it is for the State. Designated discovery has not been completed.**

**INTERROGATORY NO. 12**

Identify and describe all facts demonstrating that PPFA knowingly and improperly avoided or decreased an obligation to pay money under the Texas Medicaid program.

**ANSWER:**

**Defendants, including PPFA, received final termination letters providing them notice of the potential issue of overpayment. Defendants received guidance from HHSC including, but not limited to – the Texas Medicaid Providers Procedure Manual (TMPPM), the Texas Medicaid Provider Agreement and regulations agreed to in the Provider Agreement – and based on this guidance Defendants, including PPFA, knew or should have know that they needed to repay payments received after their termination as Texas Medicaid providers. The TMPPM informed Defendants, including PPFA, that once they were terminated they were no longer Texas Medicaid providers. The Provider Agreement and TMPPM informed Defendants, including PPFA, they were obligated to repay Texas for payments for services provided when Defendants were not Texas Medicaid providers. For more details,** *see* **The State's Objections, Statements of Privileges,**

and Responses to Defendants' First Set of Requests for Production, Response to RFP 1, served on July 1, 2022; *see also* the State's additional filings. The burden of deriving or ascertaining any additional and relevant answers to this Interrogatory is substantially the same for the Defendants as it is for the State. Designated discovery has not been completed.

## INTERROGATORY NO. 13

For each false or fraudulent claim that You allege PPFA had knowledge of, involvement in, or control over, state the damages that You contend are associated with the claim, the basis for calculating those damages, the amount, if any, of Texas's contribution (a s opposed to federal contribution) to the associated Medicaid payment, and the amount of any penalties that You contend should be assessed for the claim.

## OBJECTION:

**Not Relevant. The remedies the State is entitled to in this TMFPA case are not "damages." *See In re Xerox*, 555 S.W.3d 518, 534 (Tex. 2018) (holding that "[c]onstruing the [TMFPA] as a whole" it "employs a penalty scheme" rather than an "action for the recovery of damages"); *Nazari v. State*, 561 S.W.3d 495, 502 (Tex. 2018) (citing *Xerox*, 555 S.W.3d at 534). This Interrogatory, asking the State to "state the damages" or otherwise answer questions about "damages" is asking for inapplicable, and irrelevant information. Additionally, the State does not contend in this case that Defendants' submissions of claims were "false or fraudulent."**

## ANSWER:

**Without waiving its Objections, Texas is not seeking damages here under its allegations of unlawful acts under the TMFPA. The State is seeking all available remedies under the TMFPA, which do not include damages. For the State's remedies model including civil penalties calculations *see* our Expert Report and Expert discovery production.**

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN E. COWLES**
Deputy Attorney General for Civil Litigation

*/s/ Raymond Charles Winter*
**RAYMOND CHARLES WINTER**
Chief, Civil Medicaid Fraud Division
Texas Bar No. 21791950

**AMY S. HILTON**
Assistant Attorney General
General Litigation Division
State Bar No. 24097834

Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 / Fax (512) 320-0667
Raymond.Winter@oag.texas.gov
Amy.Hilton@oag.texas.gov

**Attorneys for State of Texas**

## CERTIFICATE OF SERVICE

I certify that on **July 5, 2022**, a true and correct copy of the foregoing document was sent by electronic mail to Defendants' counsel to the e-mail addresses below:

Christian Sheehan     christian.sheehan@arnoldporter.com

Christopher Mohr Odell     christopher.odell@arnoldporter.com

Craig D Margolis     craig.margolis@arnoldporter.com

Danny S Ashby     dashby@omm.com

Justin Roel Chapa     jchapa@omm.com

Leah Godesky     lgodesky@omm.com

Ryan Patrick Brown     brown@blackburnbrownlaw.com

Tirzah Lollar     tirzah.lollar@arnoldporter.com

**Attorneys for Defendant**

                                        _/s/  Raymond  Charles  Winter_
                                        **Raymond C. Winter**

# EXHIBIT 11

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *EX REL.* DOE, *et al.*, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 2:21-CV-00022-Z |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., *et al.*, | § § § § | |
| Defendants. | § § | |

---

## RELATOR'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.'S FIRST SET OF INTERROGATORIES TO RELATOR

---

To:   Leah Godesky, O'Melveny & Myers LLP, 1999 Avenue of the Stars, 8th Floor, Los Angeles, California 90067, Amanda Santella, O'Melveny & Myers LLP, 1625 Eye Street NW, Washington, DC 20006, Danny S. Ashby, Justin R. Chapa, O'Melveny & Myers LLP, 2501 North Harwood Street, Suite 1700, Dallas, Texas 75201, Attorneys for Defendant Planned Parenthood Federation of America, Inc.

Relator Alex Doe serves these Supplemental Objections and Responses to Planned Parenthood Federation of America, Inc.'s First Set of Interrogatories to Relator.

## OBJECTIONS

1.      Relator objects to the Interrogatories, including the "Definitions" and "Instructions," where they exceed the requirements imposed by Federal Rule of Civil

1

Procedure (FRCP) 33, other FRCPs, or elsewhere. Relator will respond to the Interrogatories in accordance with FRCP 33, other FRCPs, and applicable law.

2.      Relator objects to the Interrogatories where they seek disclosure of information protected by the attorney-client privilege, the work-product doctrine, the investigative-communications privilege, the common-interest privilege, and/or any other privileges and exemptions set forth in applicable law. Relator will provide Defendants with a privilege log for any responsive relevant information withheld for privilege.

3.      Relator objects to the Interrogatories where they seek information not within Relator's possession, custody, or control.

4.      Relator objects to the Interrogatories where they call for information to be disclosed that is protected by the HIPAA Privacy Rule or is confidential by law.

5.      Relator objects to the Interrogatories where they are not properly limited to an appropriate time period. Answering Interrogatories outside of an appropriate time period will be overly broad, unduly burdensome, and neither relevant to any party's claim or defense, nor proportional to the needs of the case, under FRCP 26(b)(1).

6.      Defendants' definition of the term "Communication" is overly broad, vague, and answering Interrogatories by using this definition would be unduly burdensome. Defendants' definition of the term includes "the transmission or expression of any thought, word, statement, fact, thing, idea, opinion, document, instruction, demand, or question, whether written or oral, whether made in person,

2

by telephone, in a meeting, transmitted electronically or telegraphically, or transmitted in any other fashion." Relator will interpret the terms "communication" consistent with applicable FRCPs, rules, law, and common usage.

7.     Defendants' definition of the term "Describe" is overly broad, vague, and answering Interrogatories by this definition or searching for and identifying "any document or communication" with this definition would be unduly burdensome. Defendants' definition of the term includes "to identify any document or communication concerning the item in question and to provide a complete factual summary chronologically setting forth the substance of, and identifying any person participating in, witnessing, or having knowledge of, whether firsthand or otherwise, any fact, action, occurrence, conduct, event, condition, or circumstance concerning the information in question." Relator will interpret the terms "describe" consistent with applicable FRCPs, rules, law, and common usage.

8.     Defendants' definition of the term "Document" is overly broad, vague, and answering Interrogatories using that definition would be unduly burdensome where the definition departs from the FRCPs and other applicable law; including but not limited to, for example, adding "any designated tangible things," to the definition of "document." Relator will interpret the term "document" consistent with FRCP 33 and other applicable FRCPs, rules, and law.

9.     Defendants' definition of the terms "Regarding," "relating to," "related to," "in relation to," or "relates to" is overly broad, vague, and answering Interrogatories using that definition would be unduly burdensome. Defendants'

definition of the terms includes these unlimited descriptions: "relating in any way to, referring to, arising from, dealing with, consisting of, mentioning, discussing, describing, reflecting, concerning, memorializing, supporting, constituting, evidencing, comprising, recording, or in any other way pertaining to the subject, either in whole or in part, whether directly or indirectly." Relator will interpret the terms "Regarding," "relating to," "related to," "in relation to," or "relates to" consistent with applicable FRCPs, rules, law, and common usage.

10.    Defendants' definition and use of the terms "Relator," "You," and "Your" is overly broad and neither relevant to any party's claim or defense, nor proportional to the needs of the case, under FRCP 26(b)(1). Answering Interrogatories using that definition would be unduly burdensome. These terms as defined by Defendants include persons and entities with no relation to this matter. The terms' vagueness and overbreadth make any Interrogatory with the terms as defined by Defendants exceed the scope of the specific claims and issues in this case and therefore makes those Interrogatories objectionable. Relator will interpret and respond to Interrogatories consistent with applicable FRCPs, rules, law, and common usage.

11.    Relator objects to all of Defendants' Instructions which exceed the requirements of FRCP 33, or other applicable Rules or law. Relator will answer the Interrogatories as required by FRCP 33, and other applicable Rules and law.

12.     The answers made at this time are without prejudice to Relator's rights to amend or supplement its answers as appropriate under the FRCPs or other rules or law.

13.     By answering these Interrogatories, Relator does not concede the relevance or admissibility of the information. Relator further does not waive, but instead, expressly preserves, the objections here.

14.     Relator incorporates by reference the objections above into the answers set forth below. The failure to repeat any of the objections above does not waive any objection to the specific Interrogatory.

15.     Relator intends to not produce documents which are privileged under the attorney-client, common interest, work-product, and government investigative privileges and protections. Any production of documents which are covered by the attorney-client, common interest, work product and government investigative privileges and protections is inadvertent under Federal Rule of Evidence (FRE) 502.

## INTERROGATORIES

### INTERROGATORY NO. 1

Identify each person with knowledge of the facts relevant to the allegations in the Relator's Complaint. Your response should identify the facts about which each person has knowledge.

ANSWER:

Relator refers Defendants to the persons listed in the parties' Initial Disclosures and the facts set forth therein.

**INTERROGATORY NO. 2:**

For each 2010-to-present Texas Medicaid claim submitted by an Affiliate Defendant that You contend was a false or fraudulent claim, identify all facts that You contend demonstrate PPFA's knowledge of, involvement in, or control over the claim.

**ANSWER:**

Relator refers Defendants to the Expert Reports of Donald Lochabay and the documents cited therein and produced to Defendants, and further refers Defendants to the documents contained in the trial and appellate record in the s Defendants referenced in Relator's Complaint, including but not limited to documents and facts regarding the control and relationship between PPFA and PPFA Affiliates. The Expert Reports of Donald Lochabay and the documents and information cited and provided to PPFA and the PPFA Affiliates with those Expert Reports identify the Medicaid payments that PPFA and the PPFA Affiliates were obligated to repay to the government, as well as the civil penalties owed by PPFA and the PPFA Affiliates for violations of the False Claims Act, Texas Medicaid Fraud Prevention Act, and Louisiana Medical Assistance Program Integrity Law. In addition, if PPFA's new lawyers have questions or are unable to locate documents or information in the trial or appellate record from the prior federal court litigation referenced in Relator's Complaint, that information is available from their client PPFA. Jennifer Sandman, one of PPFA's in-house lawyers, was trial and appellate counsel for the PPFA Affiliates in the prior federal court litigation. Ms. Sandman handled a multi-day evidentiary

hearing in the trial court and twice argued the case to the Fifth Circuit Court of Appeals and can provide PPFA's new lawyers with information or documents to answer any questions they may have about the prior litigation. Relator will also supplement this Response to include reference to specific documents contained in Relator's document production as soon as practicable, as well as additional documents produced by PPFA and the PPFA Affiliates in response to Relator's discovery requests and pending Motion to Compel PPFA's production of documents concerning Medicaid, Texas Medicaid, and Louisiana Medicaid.

Relator further states that PPFA provides medical services through approximately 50 affiliates nationwide, including the PPFA Affiliates. PPFA Affiliates pay dues to PPFA and in exchange for these payments and provided that PPFA Affiliates comply with PPFA's policies, PPFA Affiliates can hold themselves out to the public using the named "Planned Parenthood" and receive other benefits like monetary support and legal representation. PPFA provided legal representation to the PPFA Affiliates in federal and state court litigation involving the PPFA Affiliates' termination from Medicaid. PPFA also exercises functional control over the PPFA Affiliates. It sets medical and operational standards for PPFA Affiliates and requires all PPFA Affiliates to provide certain core medical services. PPFA must review and approve all PPFA Affiliate research projects, including Planned Parenthood Gulf Coast's (PPGC) participation in the University of Texas Medical Branch study involving fetal tissue.

PPFA sets policies that govern their medical practices, mandates certain

informed consent forms to be used by PPFA Affiliates, and works with PPFA Affiliates to share best practices and industry information. PPFA Affiliates' medical services, including their enrollment and participation in Medicaid, are controlled by PPFA through PPFA's mandatory medical standards and guidelines, financial support, PPFA's counsel providing representation to the PPFA Affiliates in litigation over their termination from Medicaid and other matters, PPFA's leadership and managerial influence and control of the PPFA Affiliates, and PPFA's organizational structure. PPFA accordingly exerts extensive control over its Affiliates' participation in state Medicaid programs, including the Texas Medicaid program. A Medicaid provider who signs the Texas Provider Agreement "certifies its understanding of a willingness to comply with the terms of the Agreement," including that "any falsification, omissions, or misrepresentation in connection with the application for enrollment or with claims filed may result in all paid services declared as an overpayment." Complaint, ECF No. 2 at 16, ¶ 38. By signing this Agreement, a provider further "agrees that it has an affirmative duty to refund any overpayments, duplicate payments, and erroneous payments that are paid to the provider by Medicaid as soon as such payment is discovered or reasonably should have been known." *Id*. PPFA was aware or should have been aware of these statements and certifications to which Defendant Affiliates agreed.

The Texas Medicaid Provider Procedures Manual states that providers must be enrolled to participate in the Texas Medicaid Program and to receive reimbursement for services provided to Medicaid recipients, meet all program

requirements and licensing and certification requirements, and comply with all other requirements in accordance with all federal and state laws and rules and regulations. In addition, the Texas Provider Manual states that a provider agrees to comply with all state and federal laws and regulations and policies established by the federal Centers for Medicare and Medicaid Services and the Texas Health & Human Services Commission. The Texas Provider Manual also informs providers of their responsibility for knowing the terms of the Texas Provider Agreement, program standards, statutes and penalties for violations. PPFA was aware or should have been aware of these Texas Medicaid program requirements.

Federal regulations require that all Medicaid-provider claim forms be imprinted with the statements: "This is to certify that the foregoing information is true, accurate, and complete," and "I understand that payment of this claim will be from Federal and State funds, and that any falsification, or concealment of a material fact, may be prosecuted under Federal and State laws." 42 C.F.R. § 455.18. Alternatively, the check for payment of a claim may be imprinted with the statement: "I understand in endorsing or depositing this check that payment will be from Federal and State funds and that any falsification, or concealment of a material fact, may be prosecuted under Federal and State laws." *Id*. At § 455.19. PPFA was aware or should have been aware of these statements and certifications to which Defendant Affiliates agreed.

PPFA's documents concerning Medicaid, Texas Medicaid, and Louisiana Medicaid will provide further evidence to prove the extent of PPFA's control, oversight, and liability for the illegal acts alleged by Relator. Relator has moved to

9

compel PPFA to produce those documents and will further supplement its answer with the requested documents and information.

**INTERROGATORY NO. 3:**

For each 2010-to-present Texas Medicaid overpayment received by an Affiliate Defendant that You contend the Affiliate Defendant was obligated to report and repay, identify all facts that You contend demonstrate PPFA's knowledge of, involvement in, or control over the nonpayment of the claim, as well as all facts that You contend demonstrate that PPFA directed or controlled the Affiliate Defendant's alleged concealment of any overpayment or decision to not report or repay an overpayment.

**ANSWER:**

Relator refers Defendants to the Expert Reports of Donald Lochabay and the documents cited therein and produced to Defendants, and further refers Defendants to the documents contained in the trial and appellate record in the federal court litigation involving Defendants referenced in Relator's Complaint, including but not limited to documents and facts regarding the control and relationship between PPFA and PPFA Affiliates. The Expert Reports of Donald Lochabay and the documents and information cited and provided to PPFA and the PPFA Affiliates with those Expert Reports identify the Medicaid payments that PPFA and the PPFA Affiliates were obligated to repay to the government, as well as the civil penalties owed by PPFA and the PPFA Affiliates for violations of the False Claims Act, Texas Medicaid Fraud Prevention Act, and

10

Louisiana Medical Assistance Program Integrity Law. In addition, if PPFA's new lawyers have questions or are unable to locate documents or information in the trial or appellate record from the prior federal court litigation referenced in Relator's Complaint, that information is available from their client PPFA. Jennifer Sandman, one of PPFA's in-house lawyers, was trial and appellate counsel for the PPFA Affiliates in the prior federal court litigation. Ms. Sandman handled a multi-day evidentiary hearing in the trial court and twice argued the case to the Fifth Circuit Court of Appeals and can provide PPFA's new lawyers with information or documents to answer any questions they may have about the prior litigation. Relator will also supplement this Response to include reference to specific documents contained in Relator's document production as soon as practicable, as well as additional documents produced by PPFA and the PPFA Affiliates in response to Relator's discovery requests and pending Motion to Compel PPFA's production of documents concerning Medicaid, Texas Medicaid, and Louisiana Medicaid.

Relator further states that PPFA provides medical services through approximately 50 affiliates nationwide, including the PPFA Affiliates. PPFA Affiliates pay dues to PPFA and in exchange for these payments and provided that PPFA Affiliates comply with PPFA's policies, PPFA Affiliates can hold themselves out to the public using the named "Planned Parenthood" and receive other benefits like monetary support and legal representation. PPFA provided legal representation to the PPFA Affiliates in federal and state court litigation involving the PPFA Affiliates' termination from Medicaid. PPFA also exercises functional control over the PPFA

Affiliates. It sets medical and operational standards for PPFA Affiliates and requires all PPFA Affiliates to provide certain core medical services. PPFA must review and approve all PPFA Affiliate research projects, including PPGC's participation in the University of Texas Medical Branch study involving fetal tissue.

PPFA sets policies that govern their medical practices, mandates certain informed consent forms to be used by PPFA Affiliates, and works with PPFA Affiliates to share best practices and industry information. PPFA Affiliates' medical services, including their enrollment and participation in Medicaid, are controlled by PPFA through PPFA's mandatory medical standards and guidelines, financial support, PPFA's counsel providing representation to the PPFA Affiliates in litigation over their termination from Medicaid and other matters, PPFA's leadership and managerial influence and control of the PPFA Affiliates, and PPFA's organizational structure. PPFA accordingly exerts extensive control over its Affiliates' participation in state Medicaid programs, including the Texas Medicaid program. A Medicaid provider who signs the Texas Provider Agreement "certifies its understanding of a willingness to comply with the terms of the Agreement," including that "any falsification, omissions, or misrepresentation in connection with the application for enrollment or with claims filed may result in all paid services declared as an overpayment." Complaint, ECF No. 2 at 16, ¶ 38. By signing this Agreement, a provider further "agrees that it has an affirmative duty to refund any overpayments, duplicate payments, and erroneous payments that are paid to the provider by Medicaid as soon as such payment is discovered or reasonably should have been known." *Id*. PPFA was aware or should

have been aware of these statements and certifications to which Defendant Affiliates agreed.

The Texas Medicaid Provider Procedures Manual states that providers must be enrolled to participate in the Texas Medicaid Program and to receive reimbursement for services provided to Medicaid recipients, meet all program requirements and licensing and certification requirements, and comply with all other requirements in accordance with all federal and state laws and rules and regulations. In addition, the Texas Provider Manual states that a provider agrees to comply with all state and federal laws and regulations and policies established by the federal Centers for Medicare and Medicaid Services and the Texas Health & Human Services Commission. The Texas Provider Manual also informs providers of their responsibility for knowing the terms of the Texas Provider Agreement, program standards, statutes and penalties for violations. PPFA was aware or should have been aware of these Texas Medicaid program requirements.

Federal regulations require that all Medicaid-provider claim forms be imprinted with the statements: "This is to certify that the foregoing information is true, accurate, and complete," and "I understand that payment of this claim will be from Federal and State funds, and that any falsification, or concealment of a material fact, may be prosecuted under Federal and State laws." 42 C.F.R. § 455.18. Alternatively, the check for payment of a claim may be imprinted with the statement: "I understand in endorsing or depositing this check that payment will be from Federal and State funds and that any falsification, or concealment of a material fact, may be prosecuted

13

under Federal and State laws." *Id*. At § 455.19. PPFA was aware or should have been aware of these statements and certifications to which Defendant Affiliates agreed.

PPFA's documents concerning Medicaid, Texas Medicaid, and Louisiana Medicaid will provide further evidence to prove the extent of PPFA's control, oversight, and liability for the illegal acts alleged by Relator. Relator has moved to compel PPFA to produce those documents and will further supplement its answer with the requested documents and information.

**INTERROGATORY NO. 4:**

For each 2010-to-present Louisiana Medicaid claim submitted by an Affiliate Defendant that You contend was a false or fraudulent claim, identify all facts that You contend demonstrate PPFA's knowledge of, involvement in, or control over such claim.

**ANSWER:**

Relator refers Defendants to the Expert Reports of Donald Lochabay and the documents cited therein and produced to Defendants, and further refers Defendants to the documents contained in the trial and appellate record in the federal court litigation involving Defendants referenced in Relator's Complaint, including but not limited to documents and facts regarding the control and relationship between PPFA and PPFA Affiliates. The Expert Reports of Donald Lochabay and the documents and information cited and provided to PPFA and the PPFA Affiliates with those Expert Reports identify the Medicaid payments that PPFA and the PPFA Affiliates were obligated to repay to

14

the government, as well as the civil penalties owed by PPFA and the PPFA Affiliates for violations of the False Claims Act, Texas Medicaid Fraud Prevention Act, and Louisiana Medical Assistance Program Integrity Law. In addition, if PPFA's new lawyers have questions or are unable to locate documents or information in the trial or appellate record from the prior federal court litigation referenced in Relator's Complaint, that information is available from their client PPFA. Jennifer Sandman, one of PPFA's in-house lawyers, was trial and appellate counsel for the PPFA Affiliates in the prior federal court litigation. Ms. Sandman handled a multi-day evidentiary hearing in the trial court and twice argued the case to the Fifth Circuit Court of Appeals and can provide PPFA's new lawyers with information or documents to answer any questions they may have about the prior litigation. Relator will also supplement this Response to include reference to specific documents contained in Relator's document production as soon as practicable, as well as additional documents produced by PPFA and the PPFA Affiliates in response to Relator's discovery requests and pending Motion to Compel PPFA's production of documents concerning Medicaid, Texas Medicaid, and Louisiana Medicaid.

Relator further states that PPFA provides medical services through approximately 50 affiliates nationwide, including the PPFA Affiliates. PPFA Affiliates pay dues to PPFA and in exchange for these payments and provided that PPFA Affiliates comply with PPFA's policies, PPFA Affiliates can hold themselves out to the public using the named "Planned Parenthood" and receive other benefits like monetary support and legal representation. PPFA provided legal representation to the PPFA

Affiliates in federal and state court litigation involving the PPFA Affiliates' termination from Medicaid. PPFA also exercises functional control over the PPFA Affiliates. It sets medical and operational standards for PPFA Affiliates and requires all PPFA Affiliates to provide certain core medical services. PPFA must review and approve all PPFA Affiliate research projects, including Planned Parenthood Gulf Coast's participation in the University of Texas Medical Branch study involving fetal tissue.

PPFA sets policies that govern their medical practices, mandates certain informed consent forms to be used by PPFA Affiliates, and works with PPFA Affiliates to share best practices and industry information. PPFA Affiliates' medical services, including their enrollment and participation in Medicaid, are controlled by PPFA through PPFA's mandatory medical standards and guidelines, financial support, PPFA's counsel providing representation to the PPFA Affiliates in litigation over their termination from Medicaid, PPFA's leadership and managerial influence and control of the PPFA Affiliates, and PPFA's organizational structure. PPFA accordingly exerts extensive control over its Affiliates' participation in state Medicaid programs, including the Louisiana Medicaid program. A Medicaid provider who signs the Louisiana Provider Agreement "certifies its understanding and willingness to comply with the terms of the Agreement and all policies in regulations," and further certifies its understanding "that any false claims, statements or documents, or concealment of a material fact, may be prosecuted under applicable federal and state laws including the provisions of the federal FCA and any Louisiana laws and rules pertaining to civil or

criminal penalties for false claims and statements." Complaint, ECF No. 2 at 17–18, ¶ 43. PPFA was aware or should have been aware of these statements and certifications to which Defendant Affiliates agreed.

The Louisiana Medicaid Services Manual provides that—in order to receive reimbursement for healthcare services provided to Medicaid recipients—the provider must be enrolled to participate in the Louisiana Medicaid Program, meet all licensing and/or certification requirements inherent to the healthcare profession, and comply with all other requirements in accordance with all federal and state laws and Louisiana Bureau of Health Services Financing policies. The Louisiana Provider Manual further provides that when enrolled in the Louisiana Medicaid Program, a provider agrees to abide by all applicable state and federal laws and regulations and policies established by the federal Centers for Medicare and Medicaid Services and the Louisiana Department of Health. It also informs providers that they are responsible for knowing the terms of the Louisiana Provider Agreement, program standards, statutes and penalties for violations. PPFA was aware or should have been aware of these Louisiana Medicaid provider requirements.

Federal regulations require that all Medicaid-provider claim forms be imprinted with the statements: "This is to certify that the foregoing information is true, accurate, and complete," and "I understand that payment of this claim will be from Federal and State funds, and that any falsification, or concealment of a material fact, may be prosecuted under Federal and State laws." 42 C.F.R. § 455.18. Alternatively, the check for payment of a claim may be imprinted with the statement: "I understand

in endorsing or depositing this check that payment will be from Federal and State funds and that any falsification, or concealment of a material fact, may be prosecuted under Federal and State laws." *Id*. At § 455.19. PPFA was aware or should have been aware of these statements and certifications to which Defendant Affiliates agreed.

PPFA's documents concerning Medicaid, Texas Medicaid, and Louisiana Medicaid will provide further evidence to prove the extent of PPFA's control, oversight, and liability for the illegal acts alleged by Relator. Relator has moved to compel PPFA to produce those documents and will further supplement its answer with the requested documents and information.

**INTERROGATORY NO. 5:**

For each 2010-to-present Louisiana Medicaid overpayment received by an Affiliate Defendant that You contend the Affiliate Defendant was obligated to report and repay, identify all facts that You contend demonstrate PPFA's knowledge of, involvement in, or control over the nonpayment of the claim, as well as all facts that You contend demonstrate that PPFA directed or controlled the Affiliate Defendant's alleged concealment of any overpayment or decision to not report or repay an overpayment.

**ANSWER:**

Relator refers Defendants to the Expert Reports of Donald Lochabay and the documents cited therein and produced to Defendants, and further refers Defendants to the documents contained in the trial and appellate record in the federal court litigation

18

involving Defendants referenced in Relator's Complaint, including but not limited to documents and facts regarding the control and relationship between PPFA and PPFA Affiliates. The Expert Reports of Donald Lochabay and the documents and information cited and provided to PPFA and the PPFA Affiliates with those Expert Reports identify the Medicaid payments that PPFA and the PPFA Affiliates were obligated to repay to the government, as well as the civil penalties owed by PPFA and the PPFA Affiliates for violations of the False Claims Act, Texas Medicaid Fraud Prevention Act, and Louisiana Medical Assistance Program Integrity Law. In addition, if PPFA's new lawyers have questions or are unable to locate documents or information in the trial or appellate record from the prior federal court litigation referenced in Relator's Complaint, that information is available from their client PPFA. Jennifer Sandman, one of PPFA's in-house lawyers, was trial and appellate counsel for the PPFA Affiliates in the prior federal court litigation. Ms. Sandman handled a multi-day evidentiary hearing in the trial court and twice argued the case to the Fifth Circuit Court of Appeals and can provide PPFA's new lawyers with information or documents to answer any questions they may have about the prior litigation. Relator will also supplement this Response to include reference to specific documents contained in Relator's document production as soon as practicable, as well as additional documents produced by PPFA and the PPFA Affiliates in response to Relator's discovery requests and pending Motion to Compel PPFA's production of documents concerning Medicaid, Texas Medicaid, and Louisiana Medicaid.

Relator further states that PPFA provides medical services through

19

approximately 50 affiliates nationwide, including the PPFA Affiliates. PPFA Affiliates pay dues to PPFA and in exchange for these payments and provided that PPFA Affiliates comply with PPFA's policies, PPFA Affiliates can hold themselves out to the public using the named "Planned Parenthood" and receive other benefits like monetary support and legal representation. PPFA provided legal representation to the PPFA Affiliates in federal and state court litigation involving the PPFA Affiliates' termination from Medicaid. PPFA also exercises functional control over the PPFA Affiliates. It sets medical and operational standards for PPFA Affiliates and requires all PPFA Affiliates to provide certain core medical services. PPFA must review and approve all PPFA Affiliate research projects, including Planned Parenthood Gulf Coast's participation in the University of Texas Medical Branch study involving fetal tissue.

PPFA sets policies that govern their medical practices, mandates certain informed consent forms to be used by PPFA Affiliates, and works with PPFA Affiliates to share best practices and industry information. PPFA Affiliates' medical services, including their enrollment and participation in Medicaid, are controlled by PPFA through PPFA's mandatory medical standards and guidelines, financial support, PPFA's counsel providing representation to the PPFA Affiliates in litigation over their termination from Medicaid and other matters, PPFA's leadership and managerial influence and control of the PPFA Affiliates, and PPFA's organizational structure. PPFA accordingly exerts extensive control over its Affiliates' participation in state Medicaid programs, including the Louisiana Medicaid program. A Medicaid provider

who signs the Louisiana Provider Agreement "certifies its understanding and willingness to comply with the terms of the Agreement and all policies in regulations," and further certifies its understanding "that any false claims, statements or documents, or concealment of a material fact, may be prosecuted under applicable federal and state laws including the provisions of the federal FCA and any Louisiana laws and rules pertaining to civil or criminal penalties for false claims and statements." Complaint, ECF No. 2 at 17–18, ¶ 43.  PPFA was aware or should have been aware of these statements and certifications to which Defendant Affiliates agreed.

The Louisiana Medicaid Services Manual provides that—in order to receive reimbursement for healthcare services provided to Medicaid recipients—the provider must be enrolled to participate in the Louisiana Medicaid Program, meet all licensing and/or certification requirements inherent to the healthcare profession, and comply with all other requirements in accordance with all federal and state laws and Louisiana Bureau of Health Services Financing policies. The Louisiana Provider Manual further provides that when enrolled in the Louisiana Medicaid Program, a provider agrees to abide by all applicable state and federal laws and regulations and policies established by the federal Centers for Medicare and Medicaid Services and the Louisiana Department of Health. It also informs providers that they are responsible for knowing the terms of the Louisiana Provider Agreement, program standards, statutes and penalties for violations. PPFA was aware or should have been aware of these Louisiana Medicaid provider requirements.

Federal regulations require that all Medicaid-provider claim forms be imprinted

21

with the statements: "This is to certify that the foregoing information is true, accurate, and complete," and "I understand that payment of this claim will be from Federal and State funds, and that any falsification, or concealment of a material fact, may be prosecuted under Federal and State laws." 42 C.F.R. § 455.18. Alternatively, the check for payment of a claim may be imprinted with the statement: "I understand in endorsing or depositing this check that payment will be from Federal and State funds and that any falsification, or concealment of a material fact, may be prosecuted under Federal and State laws." *Id*. At § 455.19. PPFA was aware or should have been aware of these statements and certifications to which Defendant Affiliates agreed.

PPFA's documents concerning Medicaid, Texas Medicaid, and Louisiana Medicaid will provide further evidence to prove the extent of PPFA's control, oversight, and liability for the illegal acts alleged by Relator. Relator has moved to compel PPFA to produce those documents and will further supplement its answer with the requested documents and information.

**INTERROGATORY NO. 6:**

Identify the first date on which the Relator communicated with the State of Texas regarding any of the Affiliate Defendants' submission of claims to Texas Medicaid that You contend were false or fraudulent, and describe, in detail, the Relator's communication with the State of Texas regarding such claims (including without limitation the nature, circumstances, participants, and contents of the communication).

**ANSWER:**

This Interrogatory is overbroad because of the objectionably very broad definition of "communications." This Interrogatory asks for communications between Relator and the State of Texas and seeks information which is covered by the attorney-client, common interest, work product, and government investigative privileges and protections. This is especially true with the broad definition of "communications." Subject to Relator's objections and statements of privileges, Relator states that Relator provided information and evidence concerning the material facts and allegations set forth in Relator's Complaint to the State of Texas beginning in May 2015 and including on February 5, 2021 before filing Relator's Complaint. Relator disclosed to the government all of the material facts and information concerning Planned Parenthood's alleged violations of the Federal False Claims Act, the Texas Medicaid Fraud Prevention Act, and the Louisiana Medical Assistance Program Integrity Law as set forth in Relator's Complaint to the Louisiana Attorney General at 11:07 AM on February 5, 2021, to the United States Attorney for the Northern District of Texas at 11:10 AM on February 5, 2021, and to the Texas Attorney General at 11:13 AM on February 5, 2021. Non-privileged documents reflecting these disclosures to the government are being produced by Relator. Additional non-privileged emails and documents evidencing the dates of Relator's disclosures of material facts and allegations in Relator's Complaint are also being produced by Relator.  Relator will provide Defendants with a privilege log for any additional responsive relevant documents withheld for privilege.

**INTERROGATORY NO. 7:**

Identify the first date on which the Relator communicated with the State of Texas regarding PPFA's alleged knowledge of, involvement in, or control over any claim that You contend was false or fraudulent, and describe, in detail, the Relator's communication with the State of Texas regarding such claim (including without limitation the nature, circumstances, participants, and contents of the communication).

**ANSWER:**

This Interrogatory is overbroad because of the objectionably very broad definition of "communications." This Interrogatory asks for communications between Relator and the State of Texas and seeks information which is covered by the attorney-client, common interest, work product, and government investigative privileges and protections. This is especially true with the broad definition of "communications." Subject to Relator's objections and statements of privilege, Relator states that Relator provided information and evidence concerning the material facts and allegations set forth in Relator's Complaint to the State of Texas beginning in May 2015 and including on February 5, 2021 before filing Relator's Complaint. Relator disclosed to the government all of the material facts and information concerning Planned Parenthood's alleged violations of the Federal False Claims Act, the Texas Medicaid Fraud Prevention Act, and the Louisiana Medical Assistance Program Integrity Law as set forth in Relator's Complaint to the Louisiana Attorney General at 11:07 AM on February 5, 2021, to the United States Attorney for the Northern District of Texas at

24

11:10 AM on February 5, 2021, and to the Texas Attorney General at 11:13 AM on February 5, 2021. Non-privileged documents reflecting these disclosures to the government are being produced by Relator. Additional non-privileged emails and documents evidencing the dates of Relator's disclosures of material facts and allegations in Relator's Complaint are also being produced by Relator. Relator will provide Defendants with a privilege log for any additional responsive relevant documents withheld for privilege.

**INTERROGATORY NO. 8:**

Identify the first date on which the Relator communicated with the State of Louisiana regarding any of the Affiliate Defendants' submission of claims to Louisiana Medicaid that You contend were false or fraudulent, and describe, in detail, the Relator's communication with the State of Louisiana regarding such claims (including without limitation the nature, circumstances, participants, and contents of the communication).

**ANSWER:**

This Interrogatory is overbroad because of the objectionably very broad definition of "communications." This interrogatory asks for communications between Relator and the State of Louisiana and seeks information which is covered by the attorney-client, common interest, work product, and government investigative privileges and protections. This is especially true with the broad definition of "communications." Subject to Relator's objections and statements of Privilege, Relator

25

states that Relator provided information and evidence concerning the material facts and allegations set forth in Relator's Complaint to the State of Louisiana beginning in May 2015 and including on February 5, 2021 before filing Relator's Complaint. Relator disclosed to the government all of the material facts and information concerning Planned Parenthood's alleged violations of the Federal False Claims Act, the Texas Medicaid Fraud Prevention Act, and the Louisiana Medical Assistance Program Integrity Law as set forth in Relator's Complaint to the Louisiana Attorney General at 11:07 AM on February 5, 2021, to the United States Attorney for the Northern District of Texas at 11:10 AM on February 5, 2021, and to the Texas Attorney General at 11:13 AM on February 5, 2021. Non-privileged documents reflecting these disclosures to the government are being produced by Relator. Additional non-privileged emails and documents evidencing the dates of Relator's disclosures of material facts and allegations in Relator's Complaint are also being produced by Relator.  Relator will provide Defendants with a privilege log for any additional responsive relevant documents withheld for privilege.


**INTERROGATORY NO. 9:**

Identify the first date on which the Relator communicated with the State of Louisiana regarding PPFA's alleged knowledge of, involvement in, or control over any claim that You contend was false or fraudulent, and describe, in detail, the Relator's communication with the State of Louisiana regarding such claim (including without

limitation the nature, circumstances, participants, and contents of the communication).

**ANSWER:**

This Interrogatory is overbroad because of the objectionably very broad definition of "communications." This Interrogatory asks for communications between Relator and the State of Louisiana and seeks information which is covered by the attorney-client, common interest, work product, and government investigative privileges and protections. This is especially true with the broad definition of "communications." Subject to Relator's objections and statements of privilege, Relator states that Relator provided information and evidence concerning the material facts and allegations set forth in Relator's Complaint to the State of Louisiana beginning in May 2015 and including on February 5, 2021 before filing Relator's Complaint. Relator disclosed to the government all of the material facts and information concerning Planned Parenthood's alleged violations of the Federal False Claims Act, the Texas Medicaid Fraud Prevention Act, and the Louisiana Medical Assistance Program Integrity Law as set forth in Relator's Complaint to the Louisiana Attorney General at 11:07 AM on February 5, 2021, to the United States Attorney for the Northern District of Texas at 11:10 AM on February 5, 2021, and to the Texas Attorney General at 11:13 AM on February 5, 2021. Non-privileged documents reflecting these disclosures to the government are being produced by Relator. Additional non-privileged emails and documents evidencing the dates of Relator's disclosures of material facts and allegations in Relator's Complaint are also being produced by Relator. Relator will

provide Defendants with a privilege log for any additional responsive relevant documents withheld for privilege.


**INTERROGATORY NO. 10:**

Identify the first date on which the Relator communicated with the United States regarding any of the Affiliate Defendants' submission of claims to Texas or Louisiana Medicaid that You contend were false or fraudulent, and describe, in detail, the Relator's communication with the United States regarding such claims (including without limitation the nature, circumstances, participants, and contents of the communication).

**ANSWER:**

This Interrogatory is overbroad because of the objectionably very broad definition of "communications." This interrogatory asks for communications between Relator and the United States and seeks information which is covered by the attorney-client, common interest, work product, and government investigative privileges and protections. This is especially true with the broad definition of "communications." Subject to Relator's objections and statements of privilege, Relator states that Relator provided information and evidence concerning the material facts and allegations set forth in Relator's Complaint to the United States beginning in May 2015 and including on February 5, 2021 before filing Relator's Complaint. Relator disclosed to the government all of the material facts and information concerning Planned Parenthood's alleged violations of the Federal False Claims Act, the Texas Medicaid Fraud

Prevention Act, and the Louisiana Medical Assistance Program Integrity Law as set forth in Relator's Complaint to the Louisiana Attorney General at 11:07 AM on February 5, 2021, to the United States Attorney for the Northern District of Texas at 11:10 AM on February 5, 2021, and to the Texas Attorney General at 11:13 AM on February 5, 2021. Non-privileged documents reflecting these disclosures to the government are being produced by Relator. Additional non-privileged emails and documents evidencing the dates of Relator's disclosures of material facts and allegations in Relator's Complaint are also being produced by Relator.  Relator will provide Defendants with a privilege log for any additional responsive relevant documents withheld for privilege.

### INTERROGATORY NO. 11:

Identify the first date on which the Relator communicated with the United States regarding PPFA's alleged knowledge of, involvement in, or control over any claim that You contend was false or fraudulent, and describe, in detail, the Relator's communication with the United States regarding such claim (including without limitation the nature, circumstances, participants, and contents of the communication).

### ANSWER:

This Interrogatory is overbroad because of the objectionably very broad definition of "communications." This Interrogatory asks for communications between Relator and the United States and seeks information which is covered by the attorney-

client, common interest, work product, and government investigative privileges and protections. This is especially true with the broad definition of "communications." Subject to Relator's objections and statements of privilege, Relator states that Relator provided information and evidence concerning the material facts and allegations set forth in Relator's Complaint to the United States beginning in May 2015 and including on February 5, 2021 before filing Relator's Complaint. Relator disclosed to the government all of the material facts and information concerning Planned Parenthood's alleged violations of the Federal False Claims Act, the Texas Medicaid Fraud Prevention Act, and the Louisiana Medical Assistance Program Integrity Law as set forth in Relator's Complaint to the Louisiana Attorney General at 11:07 AM on February 5, 2021, to the United States Attorney for the Northern District of Texas at 11:10 AM on February 5, 2021, and to the Texas Attorney General at 11:13 AM on February 5, 2021. Non-privileged documents reflecting these disclosures to the government are being produced by Relator. Additional non-privileged emails and documents evidencing the dates of Relator's disclosures of material facts and allegations in Relator's Complaint are also being produced by Relator. Relator will provide Defendants with a privilege log for any additional responsive relevant documents withheld for privilege.

**INTERROGATORY NO. 12:**

Identify all facts in Texas's Complaint of which You contend the State of Texas did not have knowledge before February 5, 2021, and describe, in detail, why the

State of Texas could not have obtained knowledge of those facts before February 5, 2021.

**ANSWER:**

This Interrogatory seeks information that is within the knowledge, custody or control of the State of Texas and calls for speculation regarding how or why another person or party could or could not have obtained knowledge. This Interrogatory asks for communications between Relator and the State of Texas and seeks information which is covered by the attorney-client, common interest, work product, and government investigative privileges and protections. Subject to Relator's objections and statements of privilege, Relator states that Relator disclosed the material facts alleged in Relator's Complaint to the State of Texas prior to filing Relator's Complaint and that the State of Texas did not have knowledge of those material facts prior to Relator's disclosure.

**INTERROGATORY NO. 13:**

Identify all facts in Texas's Complaint of which You contend the State of Louisiana did not have knowledge before February 5, 2021, and describe, in detail, why the State of Louisiana could not have obtained knowledge of those facts before February 5, 2021.

**ANSWER:**

This Interrogatory seeks information that is within the knowledge, custody or control of the State of Louisiana and calls for speculation regarding how or why another

person or party could or could not have obtained knowledge. This Interrogatory asks for communications between Relator and the State of Louisiana and seeks information which is covered by the attorney-client, common interest, work product, and government investigative privileges and protections. Subject to Relator's objections and statements of privilege, Relator states that Relator disclosed the material facts alleged in Relator's Complaint to the State of Louisiana prior to filing Relator's Complaint and that the State of Louisiana did not have knowledge of those material facts prior to Relator's disclosure.

**INTERROGATORY NO. 14:**

Identify all facts in Texas's Complaint of which You contend You had knowledge and the United States had no knowledge before February 5, 2021, and describe, in detail, why the United States could not have obtained knowledge of those facts before February 5, 2021.

**ANSWER:**

This Interrogatory seeks information that is within the knowledge, custody or control of the United States and calls for speculation regarding how or why another person or party could or could not have obtained knowledge. This Interrogatory asks for communications between Relator and the United States and seeks information which is covered by the attorney-client, common interest, work product, and government investigative privileges and protections. Subject to Relator's objections and statements of privilege, Relator states that Relator disclosed the material facts

alleged in Relator's Complaint to the United States prior to filing Relator's Complaint and that the United States did not have knowledge of those material facts prior to Relator's disclosure.

**INTERROGATORY NO. 15:**

Identify all facts in the Relator's Complaint of which You contend the State of Texas did not have knowledge before February 5, 2021, and describe, in detail, why the State of Texas could not have obtained knowledge of those facts before February 5, 2021.

**ANSWER:**

This Interrogatory seeks information that is within the knowledge, custody or control of the State of Texas and calls for speculation regarding how or why another person or party could or could not have obtained knowledge. This Interrogatory asks for communications between Relator and the State of Texas and seeks information which is covered by the attorney-client, common interest, work product, and government investigative privileges and protections. Subject to Relator's objections and statements of privilege, Relator states that Relator disclosed the material facts alleged in Relator's Complaint to the State of Texas prior to filing Relator's Complaint and that the State of Texas did not have knowledge of those material facts prior to Relator's disclosure.

**INTERROGATORY NO. 16:**

Identify all facts in the Relator's Complaint of which You contend the State of Louisiana did not have knowledge before February 5, 2021, and describe, in detail, why the State of Louisiana could not have obtained knowledge of those facts before February 5, 2021.

**ANSWER:**

This Interrogatory seeks information that is within the knowledge, custody or control of the State of Louisiana and calls for speculation regarding how or why another person or party could or could not have obtained knowledge. This Interrogatory asks for communications between Relator and the State of Louisiana and seeks information which is covered by the attorney-client, common interest, work product, and government investigative privileges and protections. Subject to Relator's objections and statements of privilege, Relator states that Relator disclosed the material facts alleged in Relator's Complaint to the State of Louisiana prior to filing Relator's Complaint and that the State of Louisiana did not have knowledge of those material facts prior to Relator's disclosure.

**INTERROGATORY NO. 17:**

Identify all facts in the Relator's Complaint of which You contend You had knowledge and the United States had no knowledge before February 5, 2021, and describe, in detail, why the United States could not have obtained knowledge of those facts before February 5, 2021.

ANSWER:

This Interrogatory seeks information that is within the knowledge, custody or control of the United States and calls for speculation. This Interrogatory asks for communications between Relator and the United States and seeks information which is covered by the attorney-client, common interest, work product, and government investigative privileges and protections. Subject to Relator's objections and statements of privilege, Relator states that Relator disclosed the material facts alleged in Relator's Complaint to the United States prior to filing Relator's Complaint and that the United States did not have knowledge of those material facts prior to Relator's disclosure.

INTERROGATORY NO. 18:

If you contend that PPFA had or has an obligation to repay 2010-to-present Texas or Louisiana Medicare overpayments made to any Affiliate Defendant, describe all facts (and identify all statutes, regulations and judicial decisions) supporting Your contention, including all facts supporting Your belief that PPFA should have made such payments despite the injunctions against the termination of provider status that are described in Texas's Complaint and the Relator's Complaint.

ANSWER:

This Interrogatory calls for a legal conclusion and is an improper contention interrogatory. This Interrogatory asks for communications between Relator and the State of Texas and the State of Louisiana and seeks information which is covered by the attorney-client, common interest, work product, and government investigative

privileges and protections. Subject to Relator's objections and statements of privilege, Relator refers Defendants to the facts alleged in Relator's Complaint. In addition, this is a contention interrogatory seeking essentially all facts and evidence that support Relator's allegations as well as every legal basis and legal theory for those claims and allegations. Relator will supplement the answer to this interrogatory at a reasonable time with any additional facts or information produced by Defendants in discovery, deposition testimony provided by Defendants, and documents and information produced by PPFA in response to Relator's pending Motion to Compel the production of all of PPFA's documents and information concerning Medicaid, Texas Medicaid, and Louisiana Medicaid.

**INTERROGATORY NO. 19:**

Identify all 2010-to-present facts demonstrating PPFA's alleged involvement in or knowledge of the alleged provision of fetal tissue by Defendant Planned Parenthood Gulf Coast, Inc. to the University of Texas Medical Branch.

**ANSWER:**

This Interrogatory seeks information that is within the knowledge, custody or control of Defendants and calls for speculation. This Interrogatory asks for communications between Relator and the United States, the State of Texas, and the State of Louisiana, and seeks information which is covered by the attorney-client, common interest, work product, and government investigative privileges and protections. Subject to Relator's objections and statements of privilege, Relator refers

36

Defendants to the documents contained in the trial and appellate record in the federal court litigation involving Defendants referenced in Relator's Complaint, including statements by Melissa Farrell. In addition, if PPFA's new lawyers have questions or are unable to locate documents or information in the trial or appellate record from the prior federal court litigation referenced in Relator's Complaint, that information is available from their client PPFA. Jennifer Sandman, one of PPFA's in-house lawyers, was trial and appellate counsel for the PPFA Affiliates in the prior federal court litigation. Ms. Sandman handled a multi-day evidentiary hearing in the trial court and twice argued the case to the Fifth Circuit Court of Appeals and can provide PPFA's new lawyers with information or documents to answer any questions they may have about the prior litigation. Relator will also supplement this Response to include reference to specific documents contained in Relator's document production as soon as practicable, as well as additional documents produced by PPFA and the PPFA Affiliates in response to Relator's discovery requests and pending Motion to Compel production of all of PPFA's documents concerning Medicaid, Texas Medicaid, and Louisiana Medicaid.

Relator further states that all fetal tissue research had to be reviewed and approved by PPFA so PPFA was aware of the PPFA Affiliates' research projects. In addition, several of PPFA's most senior executives and physicians were involved in oversight and control of the PPFA Affiliates' fetal tissue research activities.

PPFA's documents concerning Medicaid, Texas Medicaid, and Louisiana Medicaid will provide further evidence to prove the extent of PPFA's control,

oversight, and liability for the illegal acts alleged by Relator. Relator has moved to compel PPFA to produce those documents and will further supplement its answer with the requested documents and information.

**INTERROGATORY NO. 20:**

Identify all 2010-to-present facts demonstrating PPFA's alleged knowledge of, involvement in, or control of any alleged violation of medical and ethical standards or state or federal law by any Affiliate Defendant in connection with the provision of fetal tissue to any third parties, including without limitation:

i.  the date of any alleged knowledge of, involvement in, or control by PPFA;

ii.  the specific persons that You allege acted on behalf of PPFA; and

iii.  the medical and/or ethical standard or state or federal law that You allege was violated by the Affiliate Defendant.

**ANSWER:**

This Interrogatory seeks information that is within the knowledge, custody or control of Defendants. This Interrogatory asks for communications between Relator and the United States, the State of Texas, and the State of Louisiana, and seeks information which is covered by the attorney-client, common interest, work product, and government investigative privileges and protections. Subject to Relator's objections and statements of privilege, Relator refers Defendants to the documents contained in the trial and appellate record in the federal court litigation involving Defendants referenced in Relator's Complaint, including but not limited to documents

and facts in the record regarding the organizational structure and relationship between PPFA and PPFA Affiliates. In addition, if PPFA's new lawyers have questions or are unable to locate documents or information in the trial or appellate record from the prior federal court litigation referenced in Relator's Complaint, that information is available from their client PPFA. Jennifer Sandman, one of PPFA's in-house lawyers, was trial and appellate counsel for the PPFA Affiliates in the prior federal court litigation. Ms. Sandman handled a multi-day evidentiary hearing in the trial court and twice argued the case to the Fifth Circuit Court of Appeals and can provide PPFA's new lawyers with information or documents to answer any questions they may have about the prior litigation. Relator will also supplement this Response to include reference to specific documents contained in Relator's document production as soon as practicable, as well as additional documents produced by PPFA and the PPFA Affiliates in response to Relator's discovery requests and pending Motion to Compel PPFA's production of documents concerning Medicaid, Texas Medicaid, and Louisiana Medicaid.

Relator further states that all fetal tissue research had to be approved by PPFA, so the date of alleged knowledge of, involvement in, or control by PPFA was the date research projects were reviewed and approved by PPFA, and the numerous medical and ethical standards and state or federal laws that were violated are described in trial and appellate record in the federal court litigation involving Defendants' termination from Medicaid. In addition, several of PPFA's most senior executives and physicians were involved in oversight and control of the PPFA Affiliates' fetal tissue research

activities. Further discovery will reveal that PPFA senior executives promoted fetal tissue research as a means to increase the PPFA Affiliates' revenue and profits.

PPFA's documents concerning Medicaid, Texas Medicaid, and Louisiana Medicaid will provide further evidence to prove the extent of PPFA's control, oversight, and liability for the illegal acts alleged by Relator. Relator has moved to compel PPFA to produce those documents and will further supplement its answer with the requested documents and information.


**INTERROGATORY NO. 21:**

Identify and describe all facts demonstrating that PPFA knowingly and improperly avoided or decreased an obligation to pay money under the Texas Medicaid program.

**ANSWER:**

This Interrogatory seeks information that is within the knowledge, custody or control of Defendants and calls for a legal conclusion. This Interrogatory asks for communications between Relator and the United States, the State of Texas, and the State of Louisiana, and seeks information which is covered by the attorney-client, common interest, work product, and government investigative privileges and protections. Subject to Relator's objections and statements of privilege, Relator refers Defendants to the documents contained in the trial and appellate record in the federal court litigation involving Defendants referenced in Relator's Complaint, including but not limited to documents and facts regarding the control and relationship between

40

PPFA and PPFA Affiliates. In addition, if PPFA's new lawyers have questions or are unable to locate documents or information in the trial or appellate record from the prior federal court litigation referenced in Relator's Complaint, that information is available from their client PPFA. Jennifer Sandman, one of PPFA's in-house lawyers, was trial and appellate counsel for the PPFA Affiliates in the prior federal court litigation. Ms. Sandman handled a multi-day evidentiary hearing in the trial court and twice argued the case to the Fifth Circuit Court of Appeals and can provide PPFA's new lawyers with information or documents to answer any questions they may have about the prior litigation. Relator will also supplement this Response to include reference to specific documents contained in Relator's document production as soon as practicable, as well as additional documents produced by PPFA and the PPFA Affiliates in response to Relator's discovery requests and pending Motion to Compel PPFA's production of documents concerning Medicaid, Texas Medicaid, and Louisiana Medicaid.

Relator further states that PPFA provides medical services through approximately 50 affiliates nationwide, including the PPFA Affiliates. PPFA Affiliates pay dues to PPFA and in exchange for these payments and provided that PPFA Affiliates comply with PPFA's policies, PPFA Affiliates can hold themselves out to the public using the named "Planned Parenthood" and receive other benefits like monetary support and legal representation. PPFA provided legal representation to the PPFA Affiliates in federal court litigation involving the PPFA Affiliates termination from Medicaid. PPFA also exercises functional control over the PPFA Affiliates. It sets medical and operational standards for PPFA Affiliates and requires all PPFA Affiliates

41

to provide certain core medical services. PPFA must review and approve all PPFA Affiliate research projects, including PPGC's participation in the University of Texas Medical Branch study. In addition, several of PPFA's most senior executives and physicians were involved in oversight and control of the PPFA Affiliates' fetal tissue research activities. Further discovery will reveal that PPFA senior executives promoted fetal tissue research as a means to increase the PPFA Affiliates' revenue and profits.

PPFA sets policies that govern their medical practices, mandates certain informed consent forms to be used by PPFA Affiliates, and works with PPFA Affiliates to share best practices and industry information. PPFA Affiliates' medical services, including their enrollment and participation in Medicaid, are controlled by PPFA through PPFA's mandatory medical standards and guidelines, financial support, PPFA's counsel providing representation to the PPFA Affiliates in litigation over their termination from Medicaid, PPFA's leadership and managerial influence and control of the PPFA Affiliates, and PPFA's organizational structure. PPFA accordingly exerts extensive control over its Affiliates' participation in state Medicaid programs, including the Texas Medicaid program. A Medicaid provider who signs the Texas Provider Agreement "certifies its understanding of a willingness to comply with the terms of the Agreement," including that "any falsification, omissions, or misrepresentation in connection with the application for enrollment or with claims filed may result in all paid services declared as an overpayment." Complaint, ECF No. 2 at 16, ¶ 38. By signing this Agreement, a provider further "agrees that it has an affirmative duty to

refund any overpayments, duplicate payments, and erroneous payments that are paid to the provider by Medicaid as soon as such payment is discovered or reasonably should have been known." *Id.* PPFA was aware or should have been aware of these statements and certifications to which Defendant Affiliates agreed.

The Texas Medicaid Provider Procedures Manual states that providers must be enrolled to participate in the Texas Medicaid Program and to receive reimbursement for services provided to Medicaid recipients, meet all program requirements and licensing and certification requirements, and comply with all other requirements in accordance with all federal and state laws and rules and regulations. In addition, the Texas Provider Manual states that a provider agrees to comply with all state and federal laws and regulations and policies established by the federal Centers for Medicare and Medicaid Services and the Texas Health & Human Services Commission. The Texas Provider Manual also informs providers of their responsibility for knowing the terms of the Texas Provider Agreement, program standards, statutes and penalties for violations. PPFA was aware or should have been aware of these Texas Medicaid program requirements.

Federal regulations require that all Medicaid-provider claim forms be imprinted with the statements: "This is to certify that the foregoing information is true, accurate, and complete," and "I understand that payment of this claim will be from Federal and State funds, and that any falsification, or concealment of a material fact, may be prosecuted under Federal and State laws." 42 C.F.R. § 455.18. Alternatively, the check for payment of a claim may be imprinted with the statement: "I understand

43

in endorsing or depositing this check that payment will be from Federal and State funds and that any falsification, or concealment of a material fact, may be prosecuted under Federal and State laws." *Id*. At § 455.19. PPFA was aware or should have been aware of these statements and certifications to which Defendant Affiliates agreed.

PPFA's documents concerning Medicaid, Texas Medicaid, and Louisiana Medicaid will provide further evidence to prove the extent of PPFA's control, oversight, and liability for the illegal acts alleged by Relator. Relator has moved to compel PPFA to produce those documents and will further supplement its answer with the requested documents and information.

**INTERROGATORY NO. 22:**

Identify and describe all facts demonstrating that PPFA knowingly and improperly avoided or decreased an obligation to pay money under the Louisiana Medicaid program.

**ANSWER:**

This Interrogatory seeks information that is within the knowledge, custody or control of Defendants and calls for a legal conclusion. This Interrogatory asks for communications between Relator and the United States, the State of Texas, and the State of Louisiana, and seeks information which is covered by the attorney-client, common interest, work product, and government investigative privileges and protections. Subject to Relator's objections and statements of privilege, Relator refers Defendants to the documents contained in the trial and appellate record in the federal

court litigation involving Defendants referenced in Relator's Complaint, including but not limited to documents and facts regarding the control and relationship between PPFA and PPFA Affiliates. In addition, if PPFA's new lawyers have questions or are unable to locate documents or information in the trial or appellate record from the prior federal court litigation referenced in Relator's Complaint, that information is available from their client PPFA. Jennifer Sandman, one of PPFA's in-house lawyers, was trial and appellate counsel for the PPFA Affiliates in the prior federal court litigation. Ms. Sandman handled a multi-day evidentiary hearing in the trial court and twice argued the case to the Fifth Circuit Court of Appeals and can provide PPFA's new lawyers with information or documents to answer any questions they may have about the prior litigation. Relator will also supplement this Response to include reference to specific documents contained in Relator's document production as soon as practicable, as well as additional documents produced by PPFA and the PPFA Affiliates in response to Relator's discovery requests and pending Motion to Compel PPFA's production of documents concerning Medicaid, Texas Medicaid, and Louisiana Medicaid.

Relator further states that PPFA provides medical services through approximately 50 affiliates nationwide, including PPFA Affiliates. PPFA Affiliates pay dues to PPFA and in exchange for these payments and provided that PPFA Affiliates comply with PPFA's policies, PPFA Affiliates can hold themselves out to the public using the named "Planned Parenthood" and receive other benefits like monetary support and legal representation. PPFA provided legal representation to the PPFA Affiliates in federal court litigation involving the PPFA Affiliates termination from

Medicaid. PPFA also exercises functional control over the PPFA Affiliates. It sets medical and operational standards for PPFA Affiliates and requires all PPFA Affiliates to provide certain core medical services. PPFA must review and approve all PPFA Affiliate research projects, including PPGC's participation in the University of Texas Medical Branch study.

PPFA sets policies that govern their medical practices, mandates certain informed consent forms to be used by PPFA Affiliates, and works with PPFA Affiliates to share best practices and industry information. PPFA Affiliates' medical services, including their enrollment and participation in Medicaid, are controlled by PPFA through PPFA's mandatory medical standards and guidelines, financial support, PPFA's counsel providing representation to the PPFA Affiliates in litigation over their termination from Medicaid, PPFA's leadership and managerial influence and control of the PPFA Affiliates, and PPFA's organizational structure. PPFA accordingly exerts extensive control over its Affiliates' participation in state Medicaid programs, including the Louisiana Medicaid program. A Medicaid provider who signs the Louisiana Provider Agreement "certifies its understanding and willingness to comply with the terms of the Agreement and all policies in regulations," and further certifies its understanding "that any false claims, statements or documents, or concealment of a material fact, may be prosecuted under applicable federal and state laws including the provisions of the federal FCA and any Louisiana laws and rules pertaining to civil or criminal penalties for false claims and statements." Complaint, ECF No. 2 at 17–18, ¶ 43. PPFA was aware or should have been aware of these statements and

certifications to which Defendant Affiliates agreed.

The Louisiana Medicaid Services Manual provides that—in order to receive reimbursement for healthcare services provided to Medicaid recipients—the provider must be enrolled to participate in the Louisiana Medicaid Program, meet all licensing and/or certification requirements inherent to the healthcare profession, and comply with all other requirements in accordance with all federal and state laws and Louisiana Bureau of Health Services Financing policies. The Louisiana Provider Manual further provides that when enrolled in the Louisiana Medicaid Program, a provider agrees to abide by all applicable state and federal laws and regulations and policies established by the federal Centers for Medicare and Medicaid Services and the Louisiana Department of Health. It also informs providers that they are responsible for knowing the terms of the Louisiana Provider Agreement, program standards, statutes and penalties for violations. PPFA was aware or should have been aware of these Louisiana Medicaid provider requirements.

Federal regulations further require that all Medicaid-provider claim forms be imprinted the statements: "This is to certify that the foregoing information is true, accurate, and complete," and "I understand that payment of this claim will be from Federal and State funds, and that any falsification, or concealment of a material fact, may be prosecuted under Federal and State laws." 42 C.F.R. § 455.18. Alternatively, the check for payment of a claim may be imprinted with the statement: "I understand in endorsing or depositing this check that payment will be from Federal and State funds and that any falsification, or concealment of a material fact, may be prosecuted

47

under Federal and State laws." *Id*. At § 455.19. PPFA was aware or should have been aware of these statements and certifications to which Defendant Affiliates agreed.

PPFA's documents concerning Medicaid, Texas Medicaid, and Louisiana Medicaid will provide further evidence to prove the extent of PPFA's control, oversight, and liability for the illegal acts alleged by Relator. Relator has moved to compel PPFA to produce those documents and will further supplement its answer with the requested documents and information.

**INTERROGATORY NO. 23:**

For each false or fraudulent claim that You allege PPFA had knowledge of, involvement in, or control over, state the damages that You contend are associated with such claim, the basis for calculating those damages, and the amount of any penalties that You contend should be assessed for the claim.

**ANSWER:**

This Interrogatory seeks information that is within the knowledge, custody or control of Defendants and calls for a legal conclusion. This Interrogatory asks for communications between Relator and the United States, the State of Texas, and the State of Louisiana, and seeks information which is covered by the attorney-client, common interest, work product, and government investigative privileges and protections. Subject to Relator's objections and statements of privilege, Relator refers Defendants to the Expert Reports of Donald Lochabay and the documents cited therein and produced to Defendants. The Expert Reports of Donald Lochabay and the

documents and information cited and provided to PPFA and the PPFA Affiliates with those Expert Reports identify the Medicaid payments that PPFA and the PPFA Affiliates were obligated to repay to the government, as well as the civil penalties owed by PPFA and the PPFA Affiliates for violations of the False Claims Act, Texas Medicaid Fraud Prevention Act, and Louisiana Medical Assistance Program Integrity Law.

Respectfully submitted.

/s/ Andrew B. Stephens
Andrew B. Stephens
Texas Bar No. 24079396
Heather Gebelin Hacker
Texas Bar No. 24103325
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
(512) 399-3022
andrew@hackerstephens.com
heather@hackerstephens.com

**Attorneys For Relator**

## VERIFICATION

I hereby certify under penalty of perjury that the foregoing answers are true

and correct to the best of my knowledge, information and belief.


_____
Alex Doe

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2022, a true and correct copy of the foregoing document was sent by electronic mail to Defendants' counsel to the e-mail addresses below:

Leah Godesky
Danny Ashby
Justin Chapa
Amanda Santella
O'MELVENY & MYERS LLP
lgodesky@omm.com
dashby@omm.com
jchapa@omm.com
asantella@omm.com

**Attorneys for Defendant Planned Parenthood Federation of America, Inc.**

Craig Margolis
Murad Hussain
Tirzah Lollar
Christopher Odell
ARNOLD PORTER KAY SCHOLER LLP
Craig.Margolis@arnoldporter.com
Murad.Hussain@arnoldporter.com
Tirzah.Lollar@arnoldporter.com
Christopher.Odell@arnoldporter.com

**Attorneys for Defendants Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc.**

/s/ Andrew B. Stephens
Andrew B. Stephens