**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| United States of America | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| The State of Texas | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| The State of Louisiana | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
|     Plaintiffs, | § | |
| v. | § | |
| Planned Parenthood Federation of America, Inc., | § | CIVIL ACTION NO. 2:21-CV- |
| Planned Parenthood Gulf Coast, Inc., Planned | § | 00022-Z |
| Parenthood of Greater Texas, Inc., Planned | § | |
| Parenthood South Texas, Inc., Planned Parenthood | § | |
| Cameron County, Inc., Planned Parenthood San | § | Date:      October 20, 2022 |
| Antonio, Inc., | § | |
|     Defendants. | | |

**AFFILIATE DEFENDANTS' MEMORANDUM IN SUPPORT OF
AFFILIATE DEFENDANTS' SECOND AND RENEWED
<u>MOTION TO COMPEL THE STATE OF TEXAS</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................. 1

RELEVANT BACKGROUND ............................................................................. 4

    I.   Affiliate Defendants' First Discovery Requests ................................................4

    II.  Texas's Lackluster Efforts to Comply with its Discovery Obligations Following the Court's Order ....................................................................................................5

    III. Texas's Refusal to Conduct a Relevant, Narrowly-Tailored Custodial Data Search .......7

LEGAL STANDARD ........................................................................................... 9

ARGUMENT ...................................................................................................... 10

    I.   Texas Should be Compelled to Produce Amended Interrogatory Responses and Documents Consistent with Texas's Agreement to do so. .............................................10

    II.  Texas Should be Compelled to Perform Relators' Requested Narrowly-Tailored Searches of David Maxwell's Custodial Data ................................................................11

        A.  The Texas Medicaid Investigative Privilege is Not *Per Se* Applicable to Maxwell's Communications with Relator ................................................................ 12

        B.  Common Interest Privilege is Not *Per Se* Available for All of Maxwell's Communications with Relator ................................................................ 17

        C.  Texas Cannot Make a Blanket Assertion of Privilege for All Communications and Documents Exchanged Between Relator and David Maxwell ................................. 21

CONCLUSION ................................................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*BCR Safeguard Holding, L.L.C. v. Morgan Stanley Real Est. Advisor, Inc.*,
  614 F. App'x 690 (5th Cir. 2015) ............................................................18

*Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.*,
  876 F.3d 690 (5th Cir. 2017) ...................................................................18

*Ferko v. NASCAR*,
  219 F.R.D. 396 (E.D. Tex. 2003)..............................................................17

*Gates Corp. v. CRP Indus.*,
  No. 1:16-cv-01145-KLM, 2018 WL 4697326 (D. Colo. Aug. 10, 2018) .............17

*iFLY Holdings LLC v. Indoor Skydiving Germany GmbH*,
  No. 2:14-cv-01080-JRG-RSP, 2016 WL 3854070 (E.D. Tex. Mar. 22, 2016) .......11

*Jacquez v. GEO Int'l Mgmt., LLC*,
  No. EP-20-CV-183-KC, 2022 WL 4127517 (W.D. Tex. Sept. 9, 2022)...............13

*James v. Harris Cnty.*,
  237 F.R.D. 606 (S.D. Tex. 2006)..............................................................13

*United States ex rel. Landis v. Tailwind Sports Corp.*,
  No. 1:10-cv-00976 (CRC), 2015 WL 13654029 (D.D.C. Jan. 12, 2015)..............20

*Luckenbach Tex., Inc. v. Engel*,
  No. 1:19-cv-00567-DH, 2022 WL 9530041 (W.D. Tex. Oct. 14, 2022) ..............19

*McCullough v. Fraternal Order of Police, Chicago Lodge 7*,
  304 F.R.D. 232 (N.D. Ill. 2014)...............................................................18

*MetroPCS v. Thomas*,
  327 F.R.D. 600 (N.D. Tex. 2018) .............................................................10

*Miller v. Holzmann*,
  CA No. 95-01231, 2007 WL 779393 (D.D.C. Mar. 8, 2007)........................18, 20

*Paxton v. Tex. Dep't of State Health Servs.*,
  500 S.W.3d 702 (Tex. App.-Austin 2016, no pet.)...................................14, 15

*United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.*,
  No. Civ. 99-3298, 01-MS-50 (MDL)(RCL), 2004 WL 2009413
  (D.D.C. May 17, 2004) .........................................................................20

*United States ex rel. Reddell v. DynCorp Int'l., LLC,*
  Civ. Action No. 1:14-cv-86, 2019 WL 12875494 (E.D. Tex. Sept. 17, 2019)........................22

*Rodriguez v. Seabreeze Jetlev LLC,*
  -- F. Supp. 3d --, 2022 WL 3327925 (N.D. Cal. 2022) ...........................................................19

*In re Royce Homes,*
  449 B.R. ........................................................................................................................................19

*In re Royce Homes, LP,*
  449 B.R. 709 (S.D. Tex. 2011) ....................................................................................................19

*S.E.C. v. Brady,*
  238 F.R.D. 429 (N.D. Tex. 2006) ................................................................................................10

*United States ex rel. Samandi v. Materials & Electrochemical Rsch. Corp.,*
  CV 05-124 TUC DCB, 2009 WL 10690273 (D. Ariz. July 14, 2009)..............................13, 21

*In re Santa Fe,*
  272 F.3d at 712–13 .......................................................................................................................17

*In re Santa Fe Int'l Corp.,*
  272 F.3d 705 (5th Cir. 2001) ..................................................................................................17, 21

*In re Teleglobe Commc'ns Corp.,*
  493 F.3d 345 (3d Cir. 2007)........................................................................................................19

*In re Tinsel Grp., S.A.,*
  No. H-13-2836, 2014 WL 243410 (S.D. Tex. Jan. 22, 2014)....................................................21

*In re United States,*
  397 F.3d 274 (5th Cir. 2005) ......................................................................................................22

*United States v. Cameron-Ehlen Grp., Inc.,*
  No. 13-cv-3003, 2019 WL 1453063 (D. Minn. Apr. 2, 2019)...................................................20

*United States v. Davis,*
  636 F.2d 1028 (5th Cir. 1981) ....................................................................................................10

*United States v. Hernandez Frieri,*
  No. 18-20685-cr-WILLIAMS/TORRES, 2021 WL 3772376
  (S.D. Fla. Aug. 25, 2021)............................................................................................................21

*United States v. Quinn,*
  No. 3:09-CR-00141-P, 2013 WL 12233928 (N.D. Tex. Aug. 30, 2013) ..................................19

*Windsor v. Olson,*
  No. 3:16-cv-934-L, 2019 WL 77228 (N.D. Tex. Jan. 2, 2019) .................................................17

*In re XL Specialty Ins. Co.*,
  373 S.W.3d 46 (Tex. 2012)..................................................................................18

**Statutes**

False Claims Act ......................................................................................................13, 20

Hum. Res. Code § 36.053 ..............................................................................................15

Hum. Res. Code § 36.054 ..............................................................................................15

Tex. Gov't Code § 531.1021..........................................................................13, 14, 15, 16

Texas Medicaid Fraud Prevention Act ...........................................................................13

**Other Authorities**

Fed. R. Civ. P. 26(b)(1).................................................................................................10

Fed. R. Civ. P. 37(a)(3)(B) ...........................................................................................10

Press Release, *ICYMI: Governor Abbott Discusses Ending Medicaid Funding To
  Planned Parenthood In Texas* (Oct. 20, 2015) ...........................................................16

*State Leaders Order Investigations Into Fetal Organ Preservation*,
  Tex. Trib. (July 15, 2015) ..........................................................................................15

Defendants Planned Parenthood Gulf Coast, Inc. ("PPGC"), Planned Parenthood of Greater Texas, Inc. ("PPGT"), Planned Parenthood South Texas, Inc. ("PPST"), Planned Parenthood Cameron County, Inc. ("PP Cameron County"), and Planned Parenthood San Antonio, Inc. ("PP San Antonio") (together, "Affiliate Defendants") respectfully move the Court pursuant to Federal Rule of Civil Procedure ("FRCP") 37 for an order overruling discovery objections asserted by the State of Texas ("Texas").

## INTRODUCTION

Two months have passed since Texas informed the Court that it would amend and verify its responses to Affiliate Defendants' interrogatories and that its efforts to search for and produce documents responsive to Affiliate Defendants' First Set of Requests for Production ("First RFPs") were "underway and ongoing."  ECF No. 137 at 6.  Based on these representations, the Court found that Defendants' Motion to Compel (the "Initial Motion") was moot as to any requests where Texas had agreed to amend its responses to Affiliate Defendants' interrogatories or requests for production, but stated that "[i]f Texas fails to amend its responses in a manner consistent with this Order, Affiliate Defendants may renew their Motion."  ECF No. 161 at 4-5.

In the month-and-a-half since the Court issued its Order, Texas has failed to amend its interrogatory responses or produce documents in a timely manner.  At the time of filing this Motion, Texas has only produced approximately 1,400 documents since the Court's Order, over four months after the requests were served and nearly three months after Affiliate Defendants' filing of their Initial Motion.  Throughout this process, Texas has established a pattern of empty promises and delinquent productions.  Over a month after Texas filed its opposition to the first Motion to Compel indicating that it was actively working to identify documents for production, Texas assured Affiliate Defendants that it "anticipate[d] beginning rolling production … next

1

week." Ex. C at 2. Texas's first custodial production occurred three weeks later on September 30. *See* Ex. F at 3-4.

Similarly, during a September 21 conference, Texas informed Affiliate Defendants that Texas's amended interrogatory responses and verified responses were "a work in progress" and that Texas hoped to provide them by the end of that week. Texas then followed up two days (September 23) later informing Affiliate Defendants that Texas "anticipate[d] providing supplemental responses to defendants' discovery requests—including verified interrogatory responses—next week." Ex. F at 4. On October 19, after Affiliate Defendants informed Texas that they intended to renew their Motion to Compel, Texas once again promised verified interrogatory responses "next week." *Id.* at 1. Every day, Texas's continued foot-dragging further prejudices Affiliate Defendants by impeding their ability to review documents in order to notice depositions and prepare for already-noticed depositions, serve follow-up written or document discovery, and determine if Affiliate Defendants need to challenge specific assertions of privilege as overbroad or otherwise inappropriate.

What is more, Texas has categorically refused—relying solely on blanket assertions of the Medicaid Investigative Privilege and common interest doctrine—to perform *any* searches of the custodial data of a former Texas Attorney General's Office employee, David Maxwell, who was identified by Relator as a potential fact witness regarding Relator's disclosures prior to the filing of this action, and who Affiliate Defendants have since determined has documents responsive to the First RFPs. As Affiliate Defendants have explained in their Motions for Reconsideration, Texas's expansive application of the Medicaid Investigative Privilege and common interest doctrine is inconsistent with the Federal Rules and case law, and is severely prejudicial to Affiliate Defendants' ability to defend themselves in this action. *See* ECF Nos. 196-197 & ECF Nos. 210-

2

211.  But even if the Court declines to reconsider its prior rulings on the scope of these privileges, those rulings would not justify Texas's blanket refusal to even perform searches in Maxwell's data, as neither privilege is *per se* applicable in these specific circumstances.  *See* ECF No. 161 at 8 (stating that "Texas cannot blanketly refuse to produce information or documents without allowing the Court or Affiliate Defendants to assess the applicability of the privilege.").  It is particularly unjustified here; communications between Relator and Maxwell in which Relator relayed Relator's factual findings and urged the Texas Office of the Attorney General ("Texas OAG") to adopt Relator's theories of criminal liability are a far cry from Texas's Health and Human Services Commission Office of Inspector General (Texas HHSC-OIG) directed audits and investigations of Medicaid fraud that the Medicaid Investigative Privilege is intended to reach.

As the November 30 discovery deadline nears,[1] Affiliate Defendants are increasingly disadvantaged by Texas's dilatory tactics and its overbroad assertions of privilege, and are left without any recourse short of judicial intervention.  Accordingly, this Court should grant Affiliate Defendants' Renewed Motion to Compel as to Interrogatories 4-7, 9, 14, and 15 and Requests for Production 3, 4, 6, 9-13, 15-18, 24, 33-35, 37-39, and 41-43, and require Texas to substantially complete production of non-privileged documents responsive to these requests and to provide verified (and as needed amended) interrogatory responses (that Texas agreed on August 8 to provide) within 7 days of the Court's Order within 7 days of the Court's Order.  In addition, this Court should order Texas to perform Affiliate Defendants' requested, narrowly-tailored searches in the custodial data of David Maxwell, produce any responsive documents, and provide a privilege log within 10 days of the Court's Order.

---

[1] In light of the nearing deadline, Affiliate Defendants have separately requested expedited briefing on this Motion.

## RELEVANT BACKGROUND

**I.    Affiliate Defendants' First Discovery Requests**

On June 1, 2022, Affiliate Defendants served their First Set of Interrogatories and Requests for Production of Documents on Texas.  *See* Exs. A & B, ECF No. 128.  A month later, Texas served its initial responses, stating a number of boilerplate objections, and produced 90 "responsive" documents, the majority of which were publicly available documents (including voluminous Texas Medicaid provider procedure manuals, various court orders, and copies of parts of the Texas code).[2]  ECF No. 128, Exs. C & D.  Affiliate Defendants promptly responded that Texas's response was grossly inadequate, and the parties were unable to resolve the dispute through subsequent meet and confer conferences.  *See* ECF No. 128 at 7-8.  However, after Affiliate Defendants filed a Motion to Compel on July 18, ECF 127,[3] Texas expressed a willingness to collect and search the data of agreed-upon custodians and to revise its interrogatory responses accordingly.

On August 3, Texas agreed to amend its responses for interrogatories 4, 5, 6, 7, 9, 14, and 15, and also agreed to search custodial files for relevant witnesses and circulate a set of proposed search terms.  Ex. A.  Texas thereafter informed the Court of its "compromise" offer to amend its responses and produce documents and argued that its change in tune mooted the motion to compel as to those requests and interrogatories.  *See* ECF No. 137 at 6.  Affiliate Defendants' Reply

---

[2] Texas's opposition to Affiliate Defendants' Initial Motion to Compel emphasized the number of pages produced by Texas, *see* ECF No. 137 at 4, omitting the fact that this page count is almost entirely comprised of publicly available documents, including over 70 copies of Texas Medicaid provider procedure manuals, each of which is between approximately 1,500 and 1,800 pages.

[3] Affiliate Defendants incorporate by reference their First Motion to Compel as if fully set forth herein, which establishes that the Discovery Requests are relevant and proportional to the needs of the case and that Texas does not have a valid objection for its failure to respond.

4

acknowledged that Texas had "finally begun the process of engaging" with Affiliate Defendants regarding their discovery requests, but disagreed that the requests or interrogatories were moot since Texas had not taken any concrete steps towards producing documents (such as identifying custodians or producing any custodial documents) or provided a timeline of when they would do so.  ECF No. 149 at 3.  Fearing continued delay, Affiliate Defendants asked the Court to require the production of custodial documents and verified interrogatory responses within 10 days of the Court's Order.  ECF No. 149 at 4.

On September 1, the Court granted Affiliate Defendants' Motion to Compel in part, but found that parts of the motion were moot in light of Texas's agreement to answer relevant interrogatories and search custodial files.  ECF 161.  In so ruling, the Court noted that "[i]f Texas fails to amend its responses in a manner consistent with [the Order], Affiliate Defendants may renew their Motion."  *Id.* at 5.

## II. Texas's Lackluster Efforts to Comply with its Discovery Obligations Following the Court's Order

On August 29, nearly a month after Texas initially agreed to search for and produce responsive custodial documents, and again on September 2 and September 7 following the Court's Order, counsel for Affiliate Defendants inquired with counsel for Texas about the list of Texas's proposed relevant custodians and the status of custodial productions.  Ex. B.  On September 9, Texas provided a list of its proposed relevant custodians and stated that the "searches ha[d] been underway for some time and [Texas] anticipate[d] beginning rolling production" by the following week, *see* Ex. C; however, Texas did not do so.  During the parties' meet and confer on September 21 regarding a separate request (discussed below), Affiliate Defendants' counsel asked again when they could expect Texas to start its production of custodial documents, as well as Texas's amended and verified interrogatory responses.  Texas was unable to provide a timeframe for when it would

5

start and conclude its rolling productions of responsive documents, but promised to follow up with Affiliate Defendants about Texas's estimated production schedule.  Texas also stated that its interrogatory responses were in progress and that it hoped to serve them by the end of the week. Texas's counsel followed up by email on September 23, informing Affiliate Defendants that Texas "anticipate[s] making additional rolling production[s] to defendants next week," and that it was working to provide "supplemental responses to defendants' discovery requests—including verified interrogatory responses—next week."  Ex. E.

On September 30, Texas served supplemental responses to Affiliate Defendants' requests for production and made an initial production of 795 custodial documents.  Affiliate Defendants' counsel confirmed receipt, and reiterated Affiliate Defendants' now long-pending request for a hit report for the agreed search terms.  *See* Ex. F at 3-4.  Texas subsequently served small productions of documents on October 7 and October 13.  On October 19, after Affiliate Defendants notified Texas of their intent to file this motion and once again inquired as to when Texas would send its hit report, Texas—for the first time—stated that it would not provide a hit report until after it completed its production of documents.[4]  *Id.* at 1.  With respect to amended and verified

---

[4] In July, the parties negotiated and agreed to an ESI Order which was approved by the court, see ECF Nos. 130 & 139, which provides that "[r]equests for data used to evaluate the utility of the search terms [employed to search for relevant and responsive documents] shall not be unreasonably withheld, including hit counts."  ECF No. 130 at 13. "Hit count" reports (sometimes referred to as "hit reports") are generated when search terms are run across one or more custodians' entire data, and, amongst other information, the report will reflect the number of documents containing those terms.  The report will not, or rather should not, change based on a party's subsequent responsiveness and privilege review of the document "hits."  As the ESI Order recognizes, it is extremely difficult for Defendants to evaluate whether the agreed-upon search terms are effectively identifying documents responsive to RFPs without hit reports.  The parties cannot have an informed discussion regarding the reasonableness of Texas's search terms and custodians—and if necessary start negotiations about additional terms or modifications to the existing terms—without this information.  If any changes are needed, these negotiations may take some time and could ultimately require Texas to run and produce documents using different search

interrogatories, Texas merely repeated its now month-long assurance that they will be served soon. *Id.*

### III.   Texas's Refusal to Conduct a Relevant, Narrowly-Tailored Custodial Data Search

After finally receiving Texas's list of proposed custodians on September 9 and comparing it to Relator's production of documents and interrogatory responses, Affiliate Defendants determined that the proposed list omitted two former Texas OAG employees, David Maxwell and Andrew Oldham, who were likely to have relevant, unique, and non-privileged information responsive to the First RFPs.  *See* ECF No. 211-2 (describing Relator's communications with Oldham and Maxwell about "violations of state and federal laws"); Exs. B-E, ECF Nos. 211; *see also* Compl. ¶ 79.  Counsel for Affiliate Defendants requested that Texas add Maxwell and Oldham to the list of custodians.  Ex. D.  In a good-faith attempt to minimize the burden on Texas in collecting data and reviewing it for privilege, Affiliate Defendants proposed an extremely narrowly tailored set of search terms targeting only those custodians' communications during a specific time period with non-government third parties, including Center for Medical Progress, relating to Relator's "investigation" of Defendants' alleged misconduct.  *Id.*

In a subsequent meet-and-confer conference on September 21, Texas advised Affiliate Defendants that it had not retained Oldham's custodial data.  Moreover, the State informed Affiliate Defendants that it was asserting common-interest privilege and Texas Medicaid investigative privilege for *all* communications that Maxwell may have had with Relator and related

---

terms.  Texas's newly-articulated position is unreasonable and outside the normal practice for ESI discovery.  Hit reports are typically exchanged early in the discovery process to minimize the likelihood that, should any modifications to the search terms become necessary, the responding party is required to re-review documents.  Further, since the discovery period is rapidly coming to a close, Texas's unexplained delay in providing the hit report likely pushes this process, and any subsequent production of documents, outside the discovery period.

non-counsel third parties during the time period in question.  Affiliate Defendants responded that Affiliate Defendants were likely moving for reconsideration on the Court's Order regarding the Texas Medicaid Privilege (now filed at ECF No. 196).  They also expressed skepticism that the common interest privilege applied to many of the communications sought given their understanding that Relator was unrepresented when Relator communicated with Maxwell and Oldham (and certainly not represented by counsel retained for the purpose of bringing a civil fraud suit).  Texas took the position that Relator's representation by counsel, or lack thereof, was not relevant.

Following this conference, Texas issued a claw-back of four emails between Maxwell and Relator about Defendants.  ECF No. 211-9.  On September 29, Affiliate Defendants filed a Motion requesting that this Court reconsider its Order regarding the Texas Medicaid investigative privilege, *see* ECF Nos. 196 & 197 (Motion for Reconsideration on the Medicaid Investigative Privilege and memorandum in support, collectively "Medicaid Privilege Reconsideration Motion"), and on September 30, Affiliate Defendants filed a Motion for Reconsideration relating to the Court's application of the common interest doctrine, *see* ECF Nos. 210 & 211 (Motion for Reconsideration on the common interest doctrine and memorandum in support, collectively "Common Interest Doctrine Reconsideration Motion").  Affiliate Defendants also asked the Court to find that Texas's claw-back of the Maxwell documents was improper, or in the alternative, to order review of these documents *in camera*.  ECF No. 211-1 at 14-15.  This Motion attached as sealed exhibits several produced documents in which Relator described to non-counsel third-parties Relator's communications with Maxwell.  *See* Exs. B-E, ECF No. 211.  Neither Texas nor Relator has asserted that these communications with third parties are privileged.

In light of the impending close of discovery and noticed depositions, Plaintiffs are forced to again seek this Court's intervention to compel Texas to comply with its discovery obligations in regard to both its generally delinquent responses and its specific refusal to search Maxwell's data.  In short, over two months after Texas represented to the Court that it was actively in the process of searching custodial data to produce responsive documents, ECF No. 137, Texas has produced fewer than 1,500 custodial documents, not provided a hit report regarding the searches it claims to have run across the agreed-upon custodians, continually failed to produce documents on or even near its estimated production dates, and *per se* refused to conduct targeted searches for inarguably relevant custodial data.  Texas has also not served amended interrogatory responses, see ECF No. 137 at 6 (stating that "Texas will amend its responses to Interrogatories 4-7, 9, 14 and 15 to provide additional details, provide additional evidence, and/or identify additional witnesses"), nor has Texas verified its existing responses.  *See* ECF No. 161 at 14 (ordering Texas to "verify its responses to the Interrogatories").  Now, with the close of fact discovery fast approaching, Affiliate Defendants respectfully request that the Court grant their Renewed Motion to Compel as to Interrogatories 4-7, 9, 14, 15, and Requests for Production 3, 4, 6, 9-13, 15-18, 24, 33-35, 37-39, and 41-43, and order Texas to provide amended and verified responses and substantially complete its productions within 7 days of the Court's Order.  The Court should also order Texas to search the custodial data of David Maxwell using Affiliate Defendants' proposed narrowly-tailored search terms, produce any responsive documents, and provide a privilege log within 10 days of the Court's Order for any responsive but legitimately privileged documents that are identified as a result of that search.

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 26(b)(1), a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the

needs of the case."   Courts analyze six factors to determine whether discovery requests are proportional to the needs of the case: (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.   Fed. R. Civ. P. 26(b)(1); *MetroPCS v. Thomas*, 327 F.R.D. 600, 609 (N.D. Tex. 2018).

"A party seeking discovery may move for an order compelling an answer, designation, production, or inspection."   Fed. R. Civ. P. 37(a)(3)(B).   Among other things, failure to answer interrogatories or to produce documents are appropriate bases for a motion to compel.   *Id.*   On a motion to compel, once the moving party establishes the materials requested are within the scope of permissible discovery, the party resisting discovery bears the burden of specifically objecting and showing that a discovery request would impose an undue burden or expense or is otherwise objectionable.   *S.E.C. v. Brady*, 238 F.R.D. 429, 436–37 (N.D. Tex. 2006).   "Blanket assertions of privilege before a district court are usually unacceptable."   *United States v. Davis*, 636 F.2d 1028, 1044 n.20 (5th Cir. 1981).

## **ARGUMENT**

## I.   **Texas Should be Compelled to Produce Amended Interrogatory Responses and Documents Consistent with Texas's Agreement to do so.**

Texas has had ample time to search for and produce custodial records and has repeatedly failed to do so.   Affiliate Defendants served their first set of discovery requests on Texas on June 1.   After numerous meet and confer conferences, Texas finally agreed to begin its search of custodial records and amend its interrogatory responses in early August.   Yet, Texas's response in the months since has, at best, demonstrated a lack of expediency and transparency.   Although Texas has had four months to respond to those discovery requests, to date, Texas has produced a

total of 4,437 documents, of which fewer than 1,500 were custodial documents (in contrast to the approximately 30,000 documents produced so far by Affiliate Defendants, with significant additional productions imminent) and offered only vague assertions that it will complete production by late October or early November.

Texas cannot avoid its obligations under the Federal Rules through dilatory and incomplete responses.  Given the fast-approaching end of discovery, Texas's dilatory tactics are grossly disadvantaging Affiliate Defendants and impeding their ability to identify deponents and prepare for depositions in this complex and high-stakes matter.  *Accord iFLY Holdings LLC v. Indoor Skydiving Germany GmbH*, No. 2:14-cv-01080-JRG-RSP, 2016 WL 3854070, at *2 (E.D. Tex. Mar. 22, 2016).  Accordingly, the Court should compel Texas to complete its productions and serve verified and amended interrogatory responses within 7 days of the Court's Order.

## II.    Texas Should be Compelled to Perform Relators' Requested Narrowly-Tailored Searches of David Maxwell's Custodial Data

As noted above, Texas has also unreasonably refused to conduct *any* search of the custodial data of a single additional requested custodian, David Maxwell, arguing that the Medicaid Investigative Privilege and the common interest doctrine protect *all* documents and communications exchanged between Maxwell and Relator, and between Maxwell and third parties related to Relator, such that Texas does not have to search Maxwell's data.

Texas has not disputed (nor could it) the relevance of David Maxwell  to this litigation.  By Relator's own admission (and corroborated by Relator's discussions with third-party individuals affiliated with the Center for Medical Progress), Maxwell was one of Relator's primary contacts during Relator's early efforts to broadly interest law enforcement in Relator's "investigation" into Defendants' alleged misconduct.  *See* ECF No. 211-2 (describing Relator's communications with Oldham and Maxwell about "violations of state and federal laws"); Exs. B-E, ECF Nos. 211; *see*

11

*also* Compl. ¶ 79.  Texas has also not argued that the searches requested by Affiliate Defendants are cumulative of documents and communications that have already been produced or will be produced from another custodian, or otherwise asserted that the review and production of responsive documents would be unduly burdensome.  *Compare* ECF No. 201 at 8-9 (citing cases rejecting a request for additional custodians).  Rather, Texas's refusal rests entirely on its assertions of privilege.  For the reasons laid out below and Affiliate Defendants' prior Motions for Reconsideration, ECF Nos. 196-97 & 210-11, this Court should reject Texas's attempts to broadly assert privilege over an entire category of relevant evidence, and should require Texas to complete the requested searches, produce any responsive, non-privileged documents and provide a privilege log reflecting any responsive but legitimately privileged documents.

A.     **The Texas Medicaid Investigative Privilege is Not *Per Se* Applicable to Maxwell's Communications with Relator**

It is a fundamental aspect of the federal judicial system that "[t]he party asserting a privilege has the burden to demonstrate that the privilege exists under the circumstances presented."  *James v. Harris Cnty.*, 237 F.R.D. 606, 609 (S.D. Tex. 2006) (citing *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001)).  Here, Texas's assertions of privilege rely in part on the Texas Medicaid Investigative Privilege, which protects "information and materials subpoenaed or compiled by [the office of the inspector general for HHSC] in connection with an audit, inspection, or investigation or by the office of the att*orney general in connection with a Medicaid fraud investigation[.]*"  Tex. Gov't Code § 531.1021(g) (emphasis added).  Affiliate Defendants' memorandum in support of its Motion for Reconsideration, ECF No. 196, details at length why this privilege does not and should not apply in federal court.  *See generally* ECF No.

197.[5]  The Court need not reach that question here, however, because the communications and documents at issue are far afield from those protected by the Texas Medicaid Investigative Privilege.

In its refusal to search the Maxwell data, Texas has not even attempted to satisfy its burden of demonstrating the privilege "exists under the circumstances presented." *James*, 237 F.R.D. at 609.  To justify its withholding of documents under the Medicaid Investigative Privilege, Texas must, *at a minimum*, establish that the communications and documents exchanged between Maxwell and Relator (and other third parties related to Relator) were "subpoenaed or compiled" for the purpose of furthering a Medicaid fraud investigation.  Rather than meet its burden to do so, Texas's position appears to be that *any* law enforcement investigation conducted by *any* entity within Texas into *any* events related to this litigation is privileged.  *See* ECF No. 141 at 12 (broadly opposing interrogatories because they "drive right to the heart of Texas's investigative efforts").  In doing so, Texas strays far outside the boundaries of the Medicaid Investigative Privilege.

---

[5]  The arguments against recognizing this privilege in federal court are covered in greater depth in Affiliate Defendants' motion, which notes that § 531.1021(g)'s blanket prohibition on discovery cannot be reconciled with the routine production and evidentiary use of documents from government fraud investigations.  *See, e.g., Jacquez v. GEO Int'l Mgmt., LLC*, No. EP-20-CV-183-KC, 2022 WL 4127517, at *5 (W.D. Tex. Sept. 9, 2022) (discussing FCA Civil Investigative Demand ("CID") records that had been produced and entered into evidence in subsequent litigation); *United States ex rel. Samandi v. Materials & Electrochemical Rsch. Corp.*, CV 05-124 TUC DCB, 2009 WL 10690273, at *4–5 (D. Ariz. July 14, 2009) (ruling that materials provided to the government by relator, who also served as a "confidential informant" in a related federal criminal investigation, prior to relator's decision to file a False Claims Action must be disclosed with limited redactions only to law enforcement sensitive material).  This Court also appears to be the first to have broadly applied § 531.1021(g) to limit discovery in False Claims Act litigation, despite the fact that since § 531.1021(g)'s enactment in 2003, federal courts have adjudicated many cases relating to Texas health care fraud allegations, including violations of the Texas Medicaid Fraud Prevention Act.

13

As previously noted by Affiliate Defendants, the privilege provided by § 531.1021(g) is a narrow one.  *See* ECF No. 197 at 6, 9-10.  The text of the statute and the legislative history make clear that this privilege only extends to materials and information that are sought out or generated specifically *in connection with a Medicaid fraud investigation*, and that the statute's purpose is protecting files generated by or for Texas HHSC-OIG.  *See Paxton v. Tex. Dep't of State Health Servs.*, 500 S.W.3d 702, 706–07 (Tex. App.-Austin 2016, no pet.) (discussing statutory text and legislative history).  The Texas legislature intentionally placed the statutory privilege in Chapter 531 of the Texas code governing the Texas HHSC, and organized it within a subchapter establishing the procedures by which the Texas HHSC-OIG can subpoena records when conducting an investigation.  *See* Tex. Gov't Code § 531.1021 (titled "Subpoenas").  The legislature then limited § 531.1021's bar on disclosure to materials "subpoenaed or compiled" for such a purpose.  *Id.*  Accordingly, the scope of 531.1021's language regarding "the office of the attorney general" and "Medicaid fraud investigations" must be evaluated in this context: it is part of a statute specific to Texas HHSC-OIG subpoenas.  *Accord Paxton*, 500 S.W. 3d at 706-07.

In contrast, actions undertaken by the Texas-OAG in OAG-led Medicaid fraud investigations are governed by an entirely separate part of the Texas Code, Chapter 36 of Texas's Human Resources Code, which also contains the provisions under which Texas's cause-of-action arises.  The disclosure provisions for OAG Medicaid fraud investigations are contained in a chapter appropriately titled "Action by Attorney General" and permit disclosure well beyond that allowed by § 531.1021.  *See* Hum. Res. Code §§ 36.053 & 36.054.  "When considered in its proper context, it becomes apparent that the [Texas] Legislature intended for [§ 531.1021] confidentiality to extend *only* to those *OIG audits and investigations* concerning 'fraud, waste, and abuse in the provision and delivery of all health and human services in the state.'" *Paxton*, 500 S.W.2d at 706.

14

Here, based on Relator's own descriptions of the communications, *Relator* voluntarily initiated the communications in order to provide Maxwell materials that Relator generated or created during Relator's independent "investigation," as part of Relator's effort to encourage law enforcement to criminally prosecute Planned Parenthood affiliates for their alleged sale of fetal tissue. *See, e.g.*, Ex. A-E, ECF No. 211.  There is no evidence whatsoever before the Court that at that time Texas OAG was participating in or assisting an investigation that could fall under the Medicaid Investigative Privilege, let alone that the communications and documents exchanged between Relator and Maxwell were "subpoenaed or compiled" for the purposes of that investigation.  Indeed, Relator did not file their case alleging Medicaid fraud until nearly six years later, and Relator's claims are based largely (and Texas's TMFPA claims are based wholly) on conduct that occurred well after Relator and Maxwell's communications.

Texas's July 2015 description of Texas OAG's then-ongoing investigation as "separate from" that of Texas HHSC-OIG further undercuts Texas's *post hoc* assertion of the Texas Medicaid Privilege for Maxwell's communications.  *See* Edgar Walters, *State Leaders Order Investigations Into Fetal Organ Preservation*, Tex. Trib. (July 15, 2015), *available at* https://bit.ly/3TbRLjL (quoting July 14, 2015 statement by Governor Greg Abbott that "The video of a high-level Planned Parenthood executive discussing the details of internal abortion procedures—including harvesting of baby body parts—is unnerving and appalling.  I have directed the Texas Health and Human Services Commission to conduct an immediate investigation of this alleged practice *in addition to a separate investigation* ordered by the Texas Office of the Attorney General") (emphasis added); *see also* Press Release, *ICYMI: Governor Abbott Discusses Ending Medicaid Funding To Planned Parenthood In Texas* (Oct. 20, 2015), *available at* https://bit.ly/3TCibLi (Governor Abbott stating that the "*Inspector General* for Medicaid in Texas

uncovered several legal violations," and describing the Inspector General's investigation). If, as appears to be the case here, Maxwell communicated with Relator either (1) not in the course of a particular investigation at all; or (2) as part of work that was not specifically related to a HHSC-OIG Medicaid fraud investigation, Relator and Maxwell's communications would fall outside the privilege even if they were "subpoenaed or compiled" (which they were not).

Similarly, citations to § 531.1021, and references to Medicaid fraud more generally, are conspicuously absent from a series of OAG administrative decisions issued in 2015 and 2016 justifying Texas's withholding of documents, demonstrating that Texas did not view the OAG investigation as falling under the Texas Medicaid Privilege. *See, e.g.* Ex. G, Open Records Letter, 2016-01540 (Jan. 21, 2016) (advising Texas Assistant Attorney General not to release documents and communications "related to a specific OAG investigation of Planned Parenthood" pursuant to regulations exempting information from disclosure if doing so would interfere with an active criminal investigation; the letter does not cite to or reference § 531.1021, the separate regulations governing OAG Medicaid fraud investigations, or any potential false claims action); *see also* Ex. H, Ofc of Texas Attorney Gen., Response to Public Info. Request (Aug. 17, 2015) (denying request for the Texas OAG to disclose unedited video footage because its release would interfere with "an active criminal investigation being conducted by the OAG's Criminal Investigation Division"; it does not cite to or reference § 531.2021, the separate regulations governing OAG Medicaid fraud investigations, or any false claim); Ex. I, Open Records Letter, 2015-21370 (same). In light of these circumstances, Texas has not satisfied its burden of establishing that the Medicaid Investigative Privilege applies to the specific communications sought; indeed, Texas has not offered any facts whatsoever showing this is the case.

16

**B.      Common Interest Privilege is Not *Per Se* Available for All of Maxwell's Communications with Relator**

Texas's attempt to assert common interest privilege for all communications between Maxwell and Relator fares even worse.  As discussed in Affiliate Defendants' recent Motion, *see* ECF Nos. 210 & 211, the common interest doctrine or common interest privilege is not a standalone privilege.  ECF No. 162 at 6 (noting that the function of the common interest doctrine is to 'extend[] certain privileges.");  *see also In re Santa Fe*, 272 F.3d at 712–13; ECF No. 211 (citing cases).  It extends "only to communications given in confidence and intended and reasonably believed to be part of an on-going and joint effort to set up a common legal strategy." *Gates Corp. v. CRP Indus.*, No. 1:16-cv-01145-KLM, 2018 WL 4697326, at *7 (D. Colo. Aug. 10, 2018) (citation omitted); *see also In re Santa Fe*, 272 F.3d at 713 (narrowly applying the requirement for a "common legal interest").  A litigant seeking to invoke it *must* initially "prove or argue with [ ] specificity that the documents are attorney-client privileged or work product." *Windsor v. Olson*, No. 3:16-cv-934-L, 2019 WL 77228, at *9 (N.D. Tex. Jan. 2, 2019); *see also Ferko v. NASCAR*, 219 F.R.D. 396, 401 (E.D. Tex. 2003).  Once they have done so, the withholding party must also establish not only that the parties involved shared a "common litigation interest,"  ECF No. 162 at 6 (citing *Windsor*, 2019 WL 77228, at *9), but also that the specific communications at issue were made to further that interest.  *See, e.g.*, *BCR Safeguard Holding, L.L.C. v. Morgan Stanley Real Est. Advisor, Inc.*, 614 F. App'x 690, 704 (5th Cir. 2015) (quoting *In re Santa Fe,* 272 F.3d at 711–12); *accord In re XL Specialty Ins. Co.*, 373 S.W.3d 46, 51–53 (Tex. 2012) (Texas Supreme Court noting that Texas interprets the "common interest" doctrine narrowly such that it requires actual pending litigation at the time of the communication, and protects only "communications made between a client, or the client's lawyer, to another party's

17

lawyer, not to the other party itself"). Texas has not attempted to do so with respect to the communications between Maxwell and Relator—because it cannot.

With respect to the attorney-client privilege, this privilege applies only when the communications were confidential and exchanged between an attorney and their client for the purpose of obtaining or providing legal assistance. *See, e.g.*, *Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 696 (5th Cir. 2017). Here, Plaintiffs cannot establish even the most basic element of the privilege; it is far from clear what, if any, "attorney-client relationship" existed in the context of Relator and Maxwell's communications. Texas cannot plausibly argue that a private citizen of California had an attorney-client relationship with an attorney for the State of Texas. *Accord Miller v. Holzmann*, CA No. 95-01231 (RCL/JMF), 2007 WL 779393, at *1 (D.D.C. Mar. 8, 2007) (noting that "attorney-client privilege" was "obviously inapplicable" to communications between witnesses and the FBI). Neither Texas (nor Relator) have stated that Relator was represented at the time of Relator's communications with Maxwell—a fact that is fatal both to any invocation of the attorney-client privilege and to Texas's assertion of common interest doctrine. *See* ECF No. 211-1 at 8-9 (citing cases holding that an unrepresented party cannot participate in a common interest arrangement); *see also McCullough v. Fraternal Order of Police, Chicago Lodge 7*, 304 F.R.D. 232, 240 (N.D. Ill. 2014) (noting the importance of counsel, and that "statements by parties concerning their personal views, recollections, and opinions unconnected with communications with counsel are not subject to protection under the common interest doctrine"); *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 365 (3d Cir. 2007) (noting that "[b]ecause the common-interest privilege is an exception to the disclosure rule, which exists to prevent abuse, the privilege should not be used as a *post hoc* justification for a client's impermissible disclosures. The attorney-sharing requirement helps prevent abuse by ensuring that

the common-interest privilege only supplants the disclosure rule when attorneys, not clients, decide to share information in order to coordinate legal strategies."); *Rodriguez v. Seabreeze Jetlev LLC*, -- F. Supp. 3d --, 2022 WL 3327925, at *5–6 (N.D. Cal. 2022) (citing cases and stating that "[r]estricting the application of the common-interest doctrine to represented parties is appropriate because the doctrine is based on the parties reaching an agreement to pursue a joint legal strategy").[6]   Texas has also not explained how Affiliate Defendants' requests, which specifically target documents and communications shared with third parties, implicate Texas OAG attorney work product.   In fact, Affiliate Defendants intentionally tailored their requests to exclude borderline privileged materials, such as Maxwell's notes about his communications with Relator, or any other work product internal to Texas OAG that was generated summarizing Maxwell's communications or analyzing the information received.[7]

---

[6] If Texas's assertion of common interest privilege relies upon attorney-client privilege, Texas must establish "*each and every element* of the definition of attorney-client privileged communications, including confidentiality and absence of waiver."  *In re Royce Homes, LP*, 449 B.R. 709, 725–26 (S.D. Tex. 2011) (citing cases) (emphasis added).   Relator's subsequent conversations with a non-attorney third party in which Relator described the Maxwell communications certainly suggest that at the time they were made, Relator did not believe the conversations with Maxwell to be privileged.  *See, e.g.*, *United States v. Quinn*, No. 3:09-CR-00141-P, 2013 WL 12233928, at *4 (N.D. Tex. Aug. 30, 2013) ("For a client's communications to be covered by the privilege, the client must have both a subjective and reasonable expectation of confidentiality.").   In the alternative, these emails indicate Relator may have waived any privilege applicable to Relator's communications with Maxwell, through Relator's disclosures to third parties.   *See also* ECF No. 211-1 at 13-14 (discussing waiver of attorney-client communications and citing cases); *see also In re Royce Homes*, 449 B.R. at 741–42 (explaining that "voluntary disclosure of one's privileged communications to third parties waives the attorney-client privilege"); *Luckenbach Tex., Inc. v. Engel*, No. 1:19-cv-00567-DH, 2022 WL 9530041, at *2 (W.D. Tex. Oct. 14, 2022) (citing cases and stating that "attorney-client privilege is waived if a confidential communication has been disclosed to a third party").

[7] Affiliate Defendants note that although they are not seeking such documents and communications at this time, there is case law supporting its production in similar circumstances.  *See United States v. Cameron-Ehlen Grp., Inc.*, No. 13-cv-3003 (WMW/DTS), 2019 WL 1453063, at *6 (D. Minn. Apr. 2, 2019) (noting that it is "less certain" that "materials produced early in the investigation" are work product and that notes or memoranda that an attorney "has not sharply focused or

Finally, even if Texas could establish an underlying privilege for *every single one* of the responsive documents and communications, Texas would still need to establish that Maxwell and Relator (and any other relevant third parties with whom Maxwell communicated) shared a common interest at the time of their communications. *See United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.*, No. Civ. 99-3298, 01-MS-50 (MDL)(RCL), 2004 WL 2009413, at *4 (D.D.C. May 17, 2004) ("The existence of a common interest is determined at the time that the confidential information is disclosed").  Texas cannot do so.

Texas's position appears to be that all communications at any point in time between the Relator and a state or federal government employee regarding PPGC's fetal tissue studies or Affiliate Defendants' alleged misconduct automatically falls under common interest doctrine. Such an expansive reading of "common interest" has been soundly and repeatedly rejected by the Fifth Circuit and courts across the country.  *See generally In re Santa Fe*, 272 F.3d 705 (describing the scope of common interest and rejecting expansion of the doctrine); *In re Tinsel Grp., S.A.*, No. H-13-2836, 2014 WL 243410, at *3 (S.D. Tex. Jan. 22, 2014) (noting that "the Fifth Circuit has instructed district courts to narrowly construe the common interest privilege in order to strike the proper balance between an 'obstacle to truthseeking' and 'effectuat[ing] necessary consultation between legal advisors and clients'") (quoting *In re Santa Fe*, 272 F.3d at 710); *United States ex rel. Samandi v. Materials & Electrochemical Rsch. Corp.*, CV 05-124 TUC DCB, 2009 WL

───────────────

weeded" may be discoverable fact work product) (citation omitted); *United States ex rel. Landis v. Tailwind Sports Corp.*, No. 1:10-cv-00976 (CRC), 2015 WL 13654029, at *3 (D.D.C. Jan. 12, 2015) (ordering law enforcement interview summaries were "fact work product" that could be disclosed based on a showing of substantial need by the defendant); *Miller*, 2007 WL 779393, at *1–2 (ordering materials disclosed in False Claims Act case because "even if one could consider a criminal investigation as potentially anticipating litigation [. . . FBI agents' written investigative summaries] are, at best, fact work product" and "[i]t is not fair for the government to sue someone and then hid[e] behind a privilege information that might exonerate that person").

10690273, at *4–5 (D. Ariz. July 14, 2009) (ruling that materials provided to the government by relator, who also served as a "confidential informant" in a related federal criminal investigation, prior to relator's decision to file a False Claims Action must be disclosed with limited redactions only to law enforcement sensitive material); *United States v. Hernandez Frieri*, No. 18-20685-cr-WILLIAMS/TORRES, 2021 WL 3772376, at *3–4 (S.D. Fla. Aug. 25, 2021) (noting that "the proponent of the [common interest privilege] must establish that, when communications were shared among individuals with common legal interests, the act of sharing was part of an *ongoing common legal enterprise*") (emphasis added) (citation omitted); *see also* ECF No. 211-1 at 12 (citing additional cases regarding the scope of common legal interest). This Court must reject Texas's overbroad interpretation of "common interest," which needlessly deprives the Court and Defendants of an entire category of relevant evidence. *See* ECF No. 161 at 7 (noting that application of state law privileges in federal court is disfavored "because there is almost always a cost to the hindrance of finding the truth in a federal proceeding.") (citing *Fairchild v. Liberty Indep. Sch. Dist.*, 466 F. Supp. 2d 817, 822 (E.D. Tex. Dec. 11, 2006)).

### C.   Texas Cannot Make a Blanket Assertion of Privilege for All Communications and Documents Exchanged Between Relator and David Maxwell

Even if this Court finds that some of Maxwell's communications with Relator and/or third parties related to Relator may be privileged, Texas cannot refuse to perform a search for the documents. This Court has already held that where a discovery request is relevant and proportional to the needs of the case, Texas cannot simply invoke privilege to avoid searching for documents responsive to that request. *See* ECF No. 161 at 5-9 ("[T]he Court agrees with Affiliate Defendants that 'Texas cannot blanketly refuse to produce information or documents' without allowing the Court or Affiliate Defendants to assess the applicability of the privilege."); *see also In re United States*, 397 F.3d 274, 285 (5th Cir. 2005); *United States ex rel. Reddell v. DynCorp Int'l., LLC*,

Civ. Action No. 1:14-cv-86, 2019 WL 12875494, at *2 (E.D. Tex. Sept. 17, 2019) (citing cases and rejecting relator's argument that the communications between relator and the government, made after the relator had sought advice of counsel, were *per se* privileged).  Texas's repeated attempts to shirk its discovery obligations by invoking privilege stand in contrast to Affiliate Defendants' current efforts to respond to requests for production propounded by Relator that are far more directed to privileged communications than Affiliate Defendants' proposed Maxwell searches.  *See, e.g.* Ex. J at 7-9 (Relator's requests for PPGC documents and communications that include "an in-house attorney or in-house lawyer for Planned Parenthood as a recipient").  Consistent with the Federal Rules, Affiliate Defendants are currently in the process of reviewing and producing non-privileged, relevant documents, and drafting a privilege log for any documents that are withheld.  Affiliate Defendants request only that the Court require Texas to do the same.

## **CONCLUSION**

For the foregoing reasons, this Court should grant Affiliate Defendants' Renewed Motion to Compel and order Texas to provide amended and verified interrogatories as to Interrogatories 4-7, 9, 14, 15, and substantially complete its production of documents responsive to Requests for Production 3, 4, 6, 9-13, 15-18, 24, 33-35, 37-39, and 41-43 within seven (7) days from the entry of an order.  This Court should also order Texas to search the custodial data of David Maxwell and produce within ten (10) days from an entry of an order all responsive documents that it is currently withholding on the basis of the Medicaid investigative and common interest privileges.

Dated:  October 20, 2022

Respectfully submitted,
ARNOLD & PORTER KAYE SCHOLER LLP

By:   */s/ Tirzah S. Lollar*
Craig D. Margolis
Craig.Margolis@arnoldporter.com
Tirzah S. Lollar

22

Tirzah.Lollar@arnoldporter.com
Christian Sheehan
Christian.Sheehan@arnoldporter.com
Emily Reeder-Ricchetti
Emily.Reeder-Ricchetti@arnoldporter.com
Megan Pieper
Megan.Pieper@arnoldporter.com
Alyssa Gerstner
Alyssa.Gerstner@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.5000
Fax: +1 202.942.5999

Christopher M. Odell
Texas State Bar No. 24037205
Christopher.Odell@arnoldporter.com
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: +1 713.576.2400
Fax: +1 713.576.2499


Paula Ramer
250 West 55th Street
New York, New York 10019-9710
T: +1 212.836.8474
Paula.Ramer@arnoldporter.com

Ryan Patrick Brown
Texas State Bar No. 24073967
brown@blackburnbrownlaw.com
1222 S. Filmore
Amarillo, TX 79101
Tel: (806) 371-8333
Fax: (806) 350-7716


*Attorneys for Defendants Planned Parenthood
Gulf Coast, Inc., Planned Parenthood of Greater
Texas, Inc., Planned Parenthood of South Texas,
Inc., Planned Parenthood Cameron County, Inc.,
and Planned Parenthood San Antonio, Inc.*

23

## **CERTIFICATE OF CONFERENCE**

On October 19, 2022, in accordance with Local Rule 7.1(b), counsel for Defendants certify that they conferred with counsel for Relator and counsel for Texas regarding the relief requested in this motion via email.

*/s/ Tirzah S. Lollar*
Tirzah S. Lollar

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on October 20, 2022, the foregoing document was electronically filed with the Clerk of Court using CM/ECF.

          */s/ Tirzah S. Lollar*
          Tirzah S. Lollar