IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| United States of America<br><br>*ex rel.* ALEX DOE, Relator,<br><br><br>The State of Texas<br><br>*ex rel.* ALEX DOE, Relator,<br><br><br>The State of Louisiana<br><br>*ex rel.* ALEX DOE, Relator,<br><br>    Plaintiffs,<br><br>v.<br><br>Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc.,<br><br>    Defendants. | NO. 2:21-CV-22-Z |

**DECLARATION OF JEFFREY A. N. KOPCZYNSKI**

I, Jeffrey A. N. Kopczynski, declare and state as follows:

    1.    I am a counsel at O'Melveny & Myers LLP and, under supervision of partners at O'Melveny, represent Defendant Planned Parenthood Federation of America, Inc. ("PPFA") in the above-captioned action (the "Litigation"). I am a senior counsel in O'Melveny's eDiscovery and Data Retention Practice. I have advised on or managed eDiscovery strategy in over five hundred adversarial matters. In a typical year I design and supervise the search, culling, and production of tens of millions of documents for O'Melveny's clients.

1

2.      I am familiar with the claims and allegations in the Litigation. I am over the age of 18 and have personal knowledge of the matters herein. If called upon to testify, I could and would testify to the facts in this declaration.

3.      PPFA developed a list of broad search terms designed to capture all documents relating to Texas and Louisiana Medicaid, or to PPFA's relationship with the Affiliate Defendants. The search terms run across PPFA's documents included (i) the word "Medicaid" in combination with either "LA" or "TX" or "Louisiana" or "Texas"; (ii) all the names of the Affiliate Defendants' CEOs; (iii) the email address domain names used by the Affiliate Defendants (e.g., *@ppgulfcoast.org*); and (iv) commonly used abbreviations for the Affiliate Defendants (e.g., "PPGT" and "PPST").

4.      To respond to the Relator's discovery requests, PPFA engaged a discovery vendor to process and host over 275,000 documents. To cull those documents and identify responsive documents PPFA employed over 60 attorneys to conduct a document-by-document linear review and deployed a technology-assisted review, including using Brainspace CMML, search models, and similar industry-standard automated workflows. Those workflows identified approximately 90,000 documents as responsive or related to responsive documents. 10,000 of those documents were identified as potentially privileged and were subsequently manually reviewed during a privilege-logging process. PPFA manually reviewed, logged, and redacted those documents for privilege and confidentiality. On October 11, 2022, PPFA served a privilege log with 2,267 entries. PPFA produced any documents identified during that privilege-logging process determined to be on closer examination not privileged (or, *e.g.*, a family member of a document confirmed privileged and withheld or redacted and produced).

5.To date, PPFA's attorneys have spent more than 10,000 attorney hours on document review, redaction, and logging, and PPFA has produced nearly 90,000 documents spanning more than 400,000 pages.

6.In addition to substantial attorneys' fees and costs, PPFA has also incurred significant e-discovery-vendor fees associated with processing and hosting a substantial volume of data for review and production.  In all, PPFA has incurred well over $1 million in fees and costs complying with document discovery in this matter.

***

7.PPFA produced a draft of the Planned Parenthood Medical Director Orientation Manual on September 9, 2023, at PPFA00237614.

8.PPFA produced communications and documents concerning the development of the PPFA Medicaid Toolkit, revisions to the Medicaid Toolkit, and communications between PPFA employees concerning the Toolkit, including the following documents:

| | | |
|---|---|---|
| PPFA00202785 | PPFA00203326 | PPFA00308183 |
| PPFA00203089 | PPFA00203334 | PPFA00308216 |
| PPFA00203097 | PPFA00203368 | PPFA00308265 |
| PPFA00203143 | PPFA00203377 | PPFA00308266 |
| PPFA00203178 | PPFA00203411 | PPFA00308308 |
| PPFA00203179 | PPFA00203414 | PPFA00308309 |
| PPFA00203211 | PPFA00203447 | PPFA00388687 |
| PPFA00203215 | PPFA00203449 | PPFA00388720 |
| PPFA00203249 | PPFA00203482 | PPFA00388798 |
| PPFA00203250 | PPFA00203486 | PPFA00391111 |

| | | |
|---|---|---|
| PPFA00203284 | PPFA00203519 | PPFA00395492 |
| PPFA00203291 | PPFA00203520 | PPFA00395589 |

9. PPFA collected, reviewed, and produced documents from Tamara Kramer, one of Health Care Investment Program's ("HCIP") directors, and PPFA's production includes nearly 4,000 documents involving HCIP.

10. PPFA collected, reviewed, and produced nearly 6,000 documents from Emily Schifrin, National Director, Accreditation, who directly reported to Katie Magill.

11. PPFA collected, reviewed, and produced nearly 20,000 documents from Teri Trivisonno, Vice President, Health Care Operations, to whom Cherie Stutesman reported during the relevant time period.

12. PPFA produced nearly 4,000 emails and attachments where Rosemary Coluccio was included on the *To*, *From*, *Cc*, or *Bcc* fields.

13. PPFA has conducted targeted electronic and hard-copy searches for non-custodial documents, such as accreditation files, grant agreements, financial documents, and policies and procedures responsive to Relator's requests, which PPFA produced at PPFA00000001–3006.

\*   \*   \*

14. PPFA's enterprise IT environment is disaggregated and consists of numerous on-premise and cloud-based platforms, applications, and systems, amounting to many terabytes of data. This includes SQL databases, SaaS, DFS's, and legacy systems that either have limited or no built-in searching capabilities. PPFA employs over 750 people, most of whom are assigned company workstations and reside all over the globe. In my experience, a forensic examination spanning all of these varied sources would take several months, and if necessary to collect large

exports of these sources in order to run searches, could cost hundreds of thousands of dollars in e-discovery processing and hosting fees. It would also likely require significant resources from PPFA and cause significant slowdowns and interruptions to enterprise IT operations while those platforms, applications, and systems are being searched or copied. A wide-ranging sweep of this amount of data also introduces significant cybersecurity risk that could increase PPFA's vulnerability to attacks of highly-sensitive information.

*   *   *

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on October 26, 2022 in Boise, Idaho.

_____
Jeffrey Kopczynski