IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| United States of America<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Texas<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Louisiana<br><br>*ex rel.* ALEX DOE, Relator,<br><br> Plaintiffs,<br><br>v.<br><br>Planned Parenthood Federation of America,<br>Inc., Planned Parenthood Gulf Coast, Inc.,<br>Planned Parenthood of Greater Texas, Inc.,<br>Planned Parenthood South Texas, Inc.,<br>Planned Parenthood Cameron County, Inc.,<br>Planned Parenthood San Antonio, Inc.,<br><br> Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § | NO. 2:21-CV-22-Z |

## DECLARATION OF BENJAMIN ZISK

I, Benjamin Zisk, declare and state as follows:

1. I am an associate at O'Melveny & Myers LLP and, under supervision of partners at O'Melveny, represent Defendant Planned Parenthood Federation of America, Inc. ("PPFA") in the above-captioned action (the "Litigation").

2. I am familiar with the claims and allegations in the Litigation. I am over the age of 18 and have personal knowledge of the matters herein. If called upon to testify, I could and would testify to the facts in this declaration.

3. On September 27, 2022, counsel for PPFA, the Defendant Affiliates, and Relator participated in a meet and confer telephone call. Danny Ashby and I participated in the call on

1

behalf of PPFA; Tirzah Lollar and Emily Reeder-Ricchetti participated on behalf of the Defendant Affiliates; and Andrew Stephens and Heather Hacker participated on behalf of the Relator.

4. I took contemporaneous notes for the duration of the call, and the facts contained in this declaration are supported by my recollection and notes for that call.

5. Mr. Stephens commenced the meet-and-confer by stating that he and Ms. Hacker had not looked at all of the documents that PPFA had produced, but that he had "concerns" about what had been produced or not produced and that it would be helpful to know the custodians and search terms PPFA used for its September 9 production.

6. In response, Mr. Ashby asked if Mr. Stephens had seen PPFA's cover letter to the September 9 production, and Mr. Stephens stated that he had not.

7. Mr. Ashby then proceeded to explain to Mr. Stephens that the cover letter disclosed all the custodians and search terms that PPFA used in its collection of documents for the September 9 production. Mr. Ashby noted that the search terms were extremely broad and were run across 16 custodians from all areas of the organization.

8. Mr. Ashby encouraged Mr. Stephens to review that list, and said that the parties could discuss more specifics if Mr. Stephens believed there was anything more that PPFA could or should have done in connection with its collection and production of documents.

9. Mr. Stephens mentioned that there were some documents in the production for which they knew more recent versions exist, and he did not know why older documents were produced while more recent documents were withheld. Mr. Ashby indicated that it would be helpful to know what those documents are, but Mr. Stephens refused to identify any documents to Mr. Ashby, stating that he wanted PPFA to comply with the Court's order and needed everything responsive.

10. Later in the conversation, Mr. Ashby again urged Mr. Stephens to provide something for PPFA to consider, saying, for example, that if there is a specific document from 2014 in the production and they think there's a version from 2018 that should have also been produced, PPFA would investigate further. Mr. Stephens and Ms. Hacker again declined to identify any specific documents, but Ms. Hacker said that "a good place to start" would be Relator's filing in opposition to PPFA's motion for protective order. Ms. Hacker stated that there were "report-type documents" cited in that briefing, including a draft of an unspecified "report" that was produced without the final, and that PPFA should start there.

11. Later in the call, Ms. Hacker stated that there is a PPFA intranet site that may potentially host certain responsive documents. Mr. Ashby responded that PPFA was in the process of responding to Relator's Sixth Requests for Production, which requested documents from PPFA's intranet site. On October 3, PPFA served its responses to those requests and agreed to produce non-privileged documents and communications concerning Texas Medicaid, Louisiana Medicaid, or the Affiliate Defendants' submissions to Medicaid from PPFA's intranet.

12. According to my recollection and my notes, neither Mr. Stephens nor Ms. Hacker ever mentioned the Medical Director Orientation Manual, the Medicaid Toolkit, or any of the additional custodians referenced in the Motion to appoint a forensic examiner. Nor were the Medical Director Orientation Manual or Medicaid Toolkit among the documents attached to Relator's opposition to PPFA's motion for protective order.

13. According to my recollection and my notes, in the more than 30 days between PPFA's September 9 disclosure of its custodians and Relator's October 14 Motion, Relator never once asked PPFA to add additional custodians to its production.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on October 26, 2022 in Los Angeles, California.

_____
Benjamin Zisk