**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| United States of America<br>*ex rel.* ALEX DOE, Relator, | § <br> § <br> § | |
| | § | |
| The State of Texas<br>*ex rel.* ALEX DOE, Relator, | § <br> § <br> § | CIVIL ACTION NO. 2:21-CV-00022-Z |
| | § | |
| The State of Louisiana<br>*ex rel.* ALEX DOE, Relator,<br>Plaintiffs, | § <br> § <br> § <br> § | Date:     October 26, 2022 |
| v. | § <br> § | |
| | § | |
| Planned Parenthood Federation of America, Inc.,<br>Planned Parenthood Gulf Coast, Inc., Planned<br>Parenthood of Greater Texas, Inc., Planned<br>Parenthood South Texas, Inc., Planned Parenthood<br>Cameron County, Inc., Planned Parenthood San<br>Antonio, Inc., | § <br> § <br> § <br> § <br> § <br> § <br> § | |
| | § | |
| Defendants. | § <br> § | |

**AFFILIATE DEFENDANTS' OPPOSITION TO
RELATOR'S MOTION TO COMPEL
<u>PRODUCTION AND APPOINTMENT OF FORENSIC EXAMINER</u>**

## **TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................................... 1

LEGAL STANDARDS ............................................................................................................... 2

    A.   Motion to Compel ........................................................................................................ 2

BACKGROUND ......................................................................................................................... 4

    A.   Relator's RFPs ............................................................................................................. 4

    B.   The Parties' Meet & Confer Efforts and Prior Motions Practice ................................ 5

ARGUMENT ............................................................................................................................... 8

    I.   Relator's Purported "Evidence" of Non-Compliance Misrepresents the Record ............ 8

       A.   Relator's Contentions About Custodians & Organizational Charts ........................... 8

       B.   Relator's Contentions About Search Terms ............................................................. 10

       C.   Relator's Contentions About Specific Documents .................................................... 12

    II.   Relator Does Not Come Close To Making A Showing That Could Support the
Extraordinary Remedy Sought ................................................................................................ 15

       A.   Relator Has Not Shown Any Material Deficiency And Certainly Has Not   Shown That
No Less Intrusive Means Could Rectify Any "Deficiency" ................................................ 15

       B.   Relator Has Not Met & Conferred On These Issues, As Is Required ....................... 19

       C.   The Remedy Relator Seeks Would be Disproportionate and Run Afoul of the Federal
Rules ...................................................................................................................................21

CONCLUSION......................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.M. Castle & Co. v. Byrne*,
123 F. Supp. 3d 895 (S.D. Tex. 2015) ...............................................................3, 16

*Bank of Mong. v. M&P Glob. Fin. Servs., Inc.*,
258 F.R.D. 514 (S.D. Fla. 2009) ................................................................................16

*Barton & Assocs., Inc. v. Liska*,
No. 9:19-cv-81023, 2020 WL 8299750 (S.D. Fla. May 11, 2020) .........................22

*Bradfield v. Mid-Continent Cas. Co.*,
No 5:13-cv-222-10PRL, 2014 WL 4626864 (M.D. Fla. Sept. 15, 2014) ...............23

*Brown v. Bridges*,
No. 12-cv-4947-P, 2015 WL 11121361 (N.D. Tex. Jan. 30, 2015) .......................19

*Compass Bank v. Shamgochian*,
287 F.R.D. 397 (S.D. Tex. 2012) ..............................................................................19

*Cory v. George Carden Int'l Circus, Inc.*,
No. 4:13-CV-760, 2016 WL 3460781 (E.D. Tex. Feb. 5, 2016) ...............................3

*Diepenhorst v. City of Battle Creek*,
No. 1:05-CV-734, 2006 WL 1851243 (W.D. Mich. June 30, 2006) ......................23

*In re Ford Motor Co.*,
345 F.3d 1315 (11th Cir. 2003) .................................................................................19

*Freedman v. Weatherford Int'l Ltd.*,
No. 12-Civ-2121, 2014 WL 4547039 (S.D.N.Y. Sept. 12, 2014) ....................21, 22

*Greinstein v. Granite Servs. Int'l*,
No. 18-cv-208, 2020 WL 10934898 (N.D. Tex. Aug. 25, 2020) ........................3, 20

*Henson v. Turn*,
No. 15-cv-01497, 2018 WL 5281629 (N.D. Cal. Oct. 22, 2018) ...........................23

*Hespe v. City of Chi.*,
No. 13 C 7998, 2016 WL 7240754 (N.D. Ill. Dec. 15, 2016) ............................4, 18

*John B. v. Goetz*,
531 F.3d 448 (6th Cir. 2008) ........................................................................... *passim*

*Lopez v. Don Herring Ltd.*,
    327 F.R.D. 567 (N.D. Tex. 2018) ......................................................................3

*McCurdy Grp. v. Am. Biomedical Grp., Inc.*,
    9 Fed. App'x 822 (10th Cir. 2001) ..............................................................3, 15

*NOLA Spice Designs, LLC v. Haydel Enters., Inc.*,
    No. 12-2515, 2013 WL 3974535 (E.D. La. Aug. 2, 2013) ...................................18

*Playboy Enters., Inc. v. Welles*,
    60 F. Supp. 2d 1050 (S.D. Cal. 1999) ....................................................17, 18, 23

*Realpage, Inc. v. Enter. Risk Control, LLC*,
    No. 4:16-CV-737, 2017 WL 1180420 (E.D. Tex. Mar. 30, 2017) ...................16, 23

*Ross v. Citifinancial, Inc.*,
    203 F.R.D. 239 (S.D. Miss. 2001) ....................................................................19

*S.E.C. v. Brady*,
    238 F.R.D. 429 (N.D. Tex. 2006) ......................................................................3

*Samsung Elecs. Am., Inc. v. Chung*,
    321 F.R.D. 250 (N.D. Tex. 2017) ....................................................................19

*Schreiber v. Friedman*,
    No. 15-CV-6861, 2017 WL 11508067 (E.D.N.Y. Aug. 15, 2017)........................16

*Simon Prop. Grp. L.P. v. mySimon, Inc.*,
    194 F.R.D. 639 (S.D. Ind. 2000).................................................................17, 23

*Tera II LLC v. Rice Drilling D LLC*,
    No. 19-cv-2221, 2022 WL 1114943 (S.D. Ohio April 14, 2022)..........................22

*VeroBlue Farms USA Inc. v. Wulf*,
    2021 WL 5176839 (N.D. Tex. Nov. 8, 2021).................................................15, 22

**Other Authorities**

Fed. R. Civ. P. 26(b)(2)(C)(i) ...........................................................................24

Fed. R. Civ. P. 34 ...........................................................................................21

Fed. R. Civ. P. 34(a) .......................................................................................22

Fed. R. Civ. P. 37(a)(1)...................................................................................3, 19

Fed. R. Civ. P. 37(a)(3)(B) ...............................................................................2

Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc. ("Affiliate Defendants") oppose Relator's Motion to Compel Production and Appointment of Forensic Examiner, Dkt. 220 ("the Motion").

## <u>INTRODUCTION</u>

Relator asks this Court to order a forensic examiner of Relator's choosing to search Defendants' computer systems, at Defendants' expense, to address alleged deficiencies that Relator has never raised in any meet and confer.  Indeed, Relator dropped this new request on Defendants by email, just hours before Relator filed the motion seeking this extraordinary remedy, failing to comply with the requirement to meet and confer in good faith.  But before appointing a forensic examiner, a court must find that there has been both a specific showing of a material deficiency in a party's production and that there are no less intrusive means available to remedy that material deficiency.

Relator has not come close to making such a showing.  Relator does not allege spoliation or other discovery misconduct that comes close to justifying the extraordinary remedy they seek. Affiliate Defendants have worked diligently to produce more than 86,000 documents on a compressed timeframe, and their rolling productions remain ongoing.  Moreover, Affiliate Defendants have disclosed their search terms and custodians, giving Relator a full opportunity to raise any objections to those terms or the custodians list and to resolve them through the ordinary discovery processes.  In contrast, Relator has refused for Relator's computer or electronic records to be searched by their own counsel, or to disclose the search terms, if any, used to identify responsive documents.

In their Motion, Relator alleges "deficiencies" that are inaccurate:  For example, Relator says—incorrectly—that Affiliate Defendants have not produced organizational charts (in reality, they produced more than 800 pages of organizational charts more than ten weeks ago) and that Affiliate Defendants have only produced documents hitting on the term "Medicaid" in conjunction with other search terms (in reality, Affiliate Defendants are in the process of producing all non-privileged documents hitting on the term "Medicaid" in the custodial files of 28 custodians). Relator alleges that Affiliate Defendants failed to produce "documents from training courses they are required to complete by managed care organizations," but Relator never requested these documents in any of Relator's *six* sets of RFPs. And Relator alleges that Affiliate Defendants have failed to produce certain documents that, to the extent they exist, are stored on the PPFA intranet (not in Affiliate Defendants' custodial files).  However, Relator assured Affiliate Defendants, on the *same day* that Relator filed the instant motion, that Relator does not expect that Affiliate Defendants produce documents from the PPFA intranet to the extent that PPFA produces the requested documents; PPFA has agreed to search its intranet.

All in, Relator's "evidence" of supposed deficiencies does not exist and is based on an inaccurate retelling of the course of discovery and the contents of Affiliate Defendants' productions.  Relator has alleged no actual deficiencies in Affiliate Defendants' productions, much less the types of deficiencies that (if true) could not be addressed by less intrusive means.  The Court should deny Relator's motion.

## LEGAL STANDARDS

### A.    Motion to Compel

"A party seeking discovery may move for an order compelling an answer, designation, production, or inspection."  Fed. R. Civ. P. 37(a)(3)(B).  Before filing a discovery motion, the

parties must fulfill their obligation to meet and confer in good faith to attempt to resolve the issue without intervention from the court. *See* Fed. R. Civ. P. 37(a)(1); *see also Greinstein v. Granite Servs. Int'l*, No. 18-cv-208, 2020 WL 10934898, at *4 (N.D. Tex. Aug. 25, 2020).  To prevail on a motion to compel, the moving party must make a showing that their requests are appropriate within "all of the proportionality factors, including the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in resolving the issues." *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 584 (N.D. Tex. 2018).  If the moving party's request is proportional, the party resisting discovery bears the burden of specifically objecting and showing that a discovery request would impose an undue burden or expense or is otherwise objectionable. *S.E.C. v. Brady*, 238 F.R.D. 429, 436–37 (N.D. Tex. 2006).

### B.    Appointment of a Forensic Examiner

Granting a party access to an opponent's electronic devices is "highly intrusive" so courts must be "very cautious about ordering mirror imaging of computers, especially where the request is overly broad." *A.M. Castle & Co. v. Byrne*, 123 F. Supp. 3d 895, 900 (S.D. Tex. 2015); *see also McCurdy Grp. v. Am. Biomedical Grp., Inc.,* 9 Fed. App'x 822, 831 (10th Cir. 2001) (affirming the district court's denial of a request to compel production of the opponent's computer hard drives as a "drastic discovery measure" in light of the movant's failure to explain why it should be allowed to inspect them).

Where the requesting party fails to present evidence that a party has failed in its discovery obligations, mirror imaging is an "unnecessary intrusion into [the party's] privacy and not proportional to the needs of the case." *Cory v. George Carden Int'l Circus, Inc.*, No. 4:13-CV-760, 2016 WL 3460781, at *2 (E.D. Tex. Feb. 5, 2016); *Hespe v. City of Chi.*, No. 13 C 7998,

2016 WL 7240754, at *4 (N.D. Ill. Dec. 15, 2016) ("'Mere suspicion' or speculation that an opposing party may be withholding discoverable information is insufficient to support an 'intrusive examination' of the opposing party's electronic devices or information systems.").

## **BACKGROUND**

### A.    **Relator's RFPs**

Relator has served six different sets of requests for production ("RFPs") on Affiliate Defendants.  Affiliate Defendants have undertaken significant efforts to produce tens of thousands of documents, during a short discovery window, in response to Relator's various RFPs.

Relator served their First RFPs on May 27, 2022, which sought certain documents and communications related to services provided under Medicaid, Medicaid claims, and certain communications related to Texas or Louisiana Medicaid (*i.e.*, communications either by specific chief executives or with State employees).  *See* Relator's First RFPs, Dkt. 221, App. 0001-0013

Relator served their Second RFPs on June 16, 2022, requesting organizational charts.  *See* Relator's Second RFPs, Dkt. 221, App. 0014-25.  On August 2, 2022, Affiliate Defendants produced documents in response to Relator's second RFPs, including more than 800 pages of organizational charts.  Relator never moved to compel responses to Relator's Second RFPs or raised concerns about Affiliate Defendants' production of organizational charts before filing their Motion.  Lollar Decl. ¶ 3, Ex. A.

On July 7, 2022, Relator served their Third RFPs, seeking certain documents related to training and compliance, plans for Medicaid services, and research activities.  *See* Relator's Third RFPs, Dkt. 221, App. 0038-49.  On August 19, 2022, Relator met and conferred with Affiliate Defendants related to Affiliate Defendants' objections to the Third RFPs.  On August 23, 2022, Relator moved to compel responses to Relator's Third RFPs, as well as responses to certain

requests directed to PPFA.  Dkt. 150.  The Court granted the motion in part, ordering only that PPFA produce documents in response to one of Relator's requests directed to PPFA.  *See* Dkt. 215 at 7.  Affiliate Defendants' produced documents responsive to these RFPs on September 15 and September 22.

On August 23, 2022, Relator served their Fourth RFPs, which seek various communications, including communications with certain federal authorities and communications related to fetal tissue.  *See* Relator's Fourth RFPs, Dkt. 221, App. 0089-101.  Affiliate Defendants served their responses to Relator's Fourth RFPs on September 22, 2022 and are working to produce responsive documents to this request; Relator never moved to compel as to these responses.

On August 31, 2022, Relator served their Fifth RFPs, which largely seek communications, agreements with, or other documents related to PPFA.  *See* Relator's Fifth RFPs, Dkt. 221, App. 0102-115.  Affiliate Defendants responded to Relator's Fifth RFPs on September 30, 2022, and are working diligently to produce responsive documents.

On September 1, 2022, Relator served their Sixth RFPs, which largely seek insurance-related documents and documents on PPFA's intranet.  *See* Relator's Sixth RFPs, Dkt. 221, App. 0116-130.  Affiliate Defendants responded to Relator's Sixth RFPs on October 3, 2022.

### B.    The Parties' Meet & Confer Efforts and Prior Motions Practice

On August 30, 2022, Relator and Affiliate Defendants met and conferred related to Affiliate Defendants' document production as to Relator's First RFPs; other parties to this litigation were present at the meet and confer too.  *See* Lollar Decl. ¶¶ 2-3, Ex. A.  During that meet and confer meeting, Affiliate Defendants asked Relator what, if anything, was missing from the production.  *Id.* ¶ 3.  Relator said that while Relator believed there were "gaps" in the production, Relator could not identify what those "gaps" were and identified no specific

deficiencies. *Id.* As the Court is aware, Relator filed a motion to compel regarding Relator's First RFPs on August 31, 2022, Dkt. 154, which the Court granted on September 20, 2022, Dkt. 184.

On September 27, 2022, PPFA met and conferred with Relator related to PPFA's document production. *See* Lollar Decl. ¶ 5, Ex. A. Affiliate Defendants were present at the meet and confer, however, Affiliate Defendants' document productions were not discussed during this meeting. *Id.*

On September 29, 2022, Affiliate Defendants met and conferred with Relator. *See* Lollar Decl. ¶ 6, Ex. A. Relator had requested the meet and confer to discuss Affiliate Defendants' responses to Relator's Fourth RFPs. *Id.* Affiliate Defendants then raised their efforts to comply with Dkt. 184, and explained that they were in the process of identifying a larger set of custodians most likely to have documents concerning Medicaid. *Id.* Relator said that he asked for and expected to receive any document or communication from every employee, every database, and every internal database that hit on the term Medicaid. *Id.* Affiliate Defendants explained that Affiliate Defendants were making a good-faith effort to identify relevant custodians and search for documents hitting on the term Medicaid. *Id.*

After the September 29 meet and confer and an exchange of additional emails, on September 30, Affiliate Defendants sought clarification of the scope of the September 20, 2022 Order. *See* Dkt. 201. This Court then entered an order clarifying that its September 20 order compelled the production of certain financial documents but noting that this Court had never held that Affiliate Defendants are "required to produce every document or communication from every individual or database associated with Affiliate Defendants during the 2010 to 2022 period which contains the word 'Medicaid.'" Dkt. 213 at 5. To date, Affiliate Defendants have produced more than 60,000 documents hitting on the search term "Medicaid," collected from twenty-eight

6

different custodians and anticipate making another significant production of over 90,000 documents hitting on the "Medicaid" search next week.

On October 14, 2022—the same day that Relator filed their instant motion, Relator and Affiliate Defendants conferred related to Affiliate Defendants' responses to Relator's Fifth and Sixth RFPs. *See* Lollar Decl. ¶ 7, Ex. A. When discussing the Sixth RFPs, Affiliate Defendants confirmed Affiliate Defendants' written responses indicating that they had searched for Medicaid-related training materials from the Center for Affiliated Learning and ARMS Connect, and that no such Medicaid-related training materials exist. *Id.* In addition, when discussing materials accessible on PPFA's intranet, Relator indicated that Relator does not expect that Affiliates will produce documents from PPFA's intranet if PPFA produces the documents. *Id.* PPFA has agreed to search its intranet.

Without ever raising the issues in Relator's motion in any meet and confer, Relator filed the instant motion to compel. Relator never raised any specific issues with Affiliate Defendants' custodians in any meet and confer, beyond noting that Relator expected Affiliate Defendants to collect documents from "everyone." *Id.*

When specific discovery concerns have been raised, Affiliate Defendants have worked in good faith to address the concerns; Affiliate Defendants have, for example, expanded their searches to locate documents containing the term "Medicaid" (rather than searching only for Medicaid in conjunction with other terms) and added additional custodians. Affiliate Defendants have also offered to confer about their specific custodians (shared on September 7 and September 26) and search terms (shared on August 25), which Relator declined. *See* Lollar Decl. ¶ 4, Ex. A; August 25, 2022 email attaching search terms, Ex. Q. Now, late in the process, Relator apparently wants additional search terms and custodians, raised for the first time in the unusual form of a

request for an intrusive forensic examination.  But belated complaints about Affiliate Defendants' long-disclosed custodians and search terms cannot justify the extraordinary remedy of a forensic examiner.  Discovery cannot be a moving target, particularly with discovery set to close on November 30 and depositions anticipated to begin soon.

## **ARGUMENT**

Relator has identified no actual deficiencies in Affiliate Defendants' productions.  Indeed, while Relator argues that Relator has "evidence of . . . non-compliance," Relator's statements in pages 12-14 of the instant Motion are inaccurate:  Relator misrepresents the contents of Affiliate Defendants' document productions, the search terms applied, and raises new issues that Relator has never before brought forward in any meet and confer.

### I.      Relator's Purported "Evidence" of Non-Compliance Misrepresents the Record

Relator's Motion is built on falsehoods about Affiliate Defendants' document productions and the parties' course of dealings through the meet and confer process, *see* Dkt. 220 at 12-14.  As described below, Affiliate Defendants are meeting their discovery obligations.  And Relator never raised the issues in Relator's Motion in the meet and confer process; if Relator had raised these issues in a meet and confer, Affiliate Defendants would have considered Relator's requests in good faith.

### A.      Relator's Contentions About Custodians & Organizational Charts

Affiliate Defendants have offered to discuss their lists of custodians with Relator.  *See* Lollar Decl. ¶ 3, Ex. A.  Despite these invitations, Relator has *never* engaged about discussions concerning custodians, beyond asserting the position that *all* employees, for each Affiliate, over a twelve-year period, should have their custodial files collected, searched and produced.  *Id.*  The Court ruled that Affiliate Defendants were not required to do this.  Dkt. 213 at 4-5.

Organizational Charts: Relator argues that Relator cannot "assess the Affiliates' chosen custodians because of their failure to produce the requested organizational charts." Dkt. 220 at 12. However, Affiliate Defendants have produced over 800 pages of organizational charts. *See, e.g.*, Sealed App'x, Exs. B-O (containing a sampling of the many organizational charts produced in this litigation). These charts were included in Affiliate Defendants' productions made on August 2. *See* Aug. 2 Production Letter, Ex. P; Sealed App'x, Exs. B-O (example organization charts produced by PPGC, PPGT, and PPST).[1] Relator's counsel has had these charts in their possession for more than ten weeks.

Medical Directors:  Relator, for the first time, in their Motion suggests that Affiliate Defendants should have collected custodial data for their Medical Directors. Dkt. 220 at 13. Had Relator asked Affiliate Defendants to collect and search data for their Medical Directors, Affiliate Defendants would have been happy to discuss with Relator the roles of Medical Directors at Affiliate Defendants' organizations.  Affiliate Defendants would have explained that Medical Directors oversee clinical care but do not ordinarily have responsibility for Medicaid-related issues and are unlikely to have unique documents related to the issues relevant to this case that would not be found in the custodial data of Affiliate Defendants' existing list of custodians.  Affiliate Defendants are, however, willing to meet and confer with Relator about the appropriateness of adding the Medical Directors as custodians, which should happen before any order to produce, let alone for appointment of a forensic examiner.

---

[1] Some of the PPST organizational charts contain information about the PPSA and PPCC organizations.

B.       **Relator's Contentions About Search Terms**

As an initial matter, Relator raises concerns about search terms for the first time in Relator's Motion.  Relator was provided with a list of search terms on August 25 and has met and conferred with Affiliate Defendants numerous times since that date.  *See* Lollar Decl. ¶¶ 2-3, 5-7, Ex. A.   In fact, the only thing Relator has ever said to Affiliate Defendants about their search terms is that Relator had *no concerns* about them.  *See* Lollar Decl. ¶ 3, Ex. A.  Had Relator shared their new concerns with Affiliate Defendants in a meet and confer, Affiliate Defendants of course would have met and conferred in good faith.

Relator's assertions about Affiliate Defendants' search terms are also incorrect.  Relator says that Affiliate Defendants "limited their search terms, . . . not searching for 'Medicaid,' but instead limiting it by searching only for 'Medicaid' in combination with certain terms."  Dkt. 220 at 13.  This assertion may have been true before the Court's September 20 order, but it has not been true since then, as Relator is well aware.  As Affiliate Defendants previously explained, Affiliate Defendants initially did not produce all documents hitting on their initial search that used the term "Medicaid" because many of these documents have no relation to this litigation — for example, information about COVID-19 guidance or employment issues.  *See* Dkt. 177 at 11.  However, since this Court's September 20 Order, *see* Dkt. 184, Affiliate Defendants have agreed to produce all non-privileged documents (plus family members) hitting on the broad term "Medicaid," without limitations based on relevance, from the data of twenty-eight custodians.  *See* Dkt. 201 at 6 & Ex. B; Dkt. 213 at 4.  And, as of filing, Affiliate Defendants have produced over 60,000 documents hitting on the term "Medicaid" plus family members and are working to complete their production from the twenty-eight custodians as quickly as possible.

10

Relator's contentions about the number of documents produced for specific custodians are likewise outdated and incorrect. Indeed, contrary to Relator's assertions, *see* Dkt. 220 at 12-13, as of the filing of this opposition, Affiliate Defendants have produced 25,746 documents from Sheila McKinney's custodial files and 12,964 from Ken Lambrecht's. For each of these custodians, includes *all* non-privileged documents hitting on the search term "Medicaid." Of course, as CEO and COO of PPGT, respectively, the vast majority of documents and communications in their custodial files have nothing to do with the Plaintiffs' claims or Defendants' defenses in this case, so even with expansive search terms, many documents and communications in their custodial files do not hit on any search terms and will accordingly not be produced. Relator also complains that PPGT's production "is particularly inadequate" because of its size relative to that of the other Defendants (Dkt. 220 at 14). PPGT, however, produced approximately 38,457 documents in the last two weeks and at this moment in time, it has produced *more* documents than PPGC and PPST. And Affiliate Defendants are still working to produce responsive documents, so any rough comparisons of the type made by Relator necessarily create a distorted view.

Relator also now apparently wants to add completely new terms to be run and results produced in their entirety (overpa* and repay*) (Dkt. 220 at 17), even though they have never asked for those to be produced in such a manner before and Affiliate Defendants already ran one of them (repay*) and something similar to the other (overpayment). *See* August 25, 2022 letter attaching search terms, Ex. Q. Again, if Relator wants to add new search terms, Relator should do so through a meet and confer process (which should have happened months ago), not by asking for appointment of a forensic examiner. And even if Relator's complaint that Affiliate Defendants did not search for certain particular terms were appropriate in the context of a Motion for a Forensic Examiner (which it is not), documents containing the "corrected" search terms would be already

11

covered by the search for "Medicaid" already being performed across custodians.[2]  Other terms do not relate to the First Set of RFPs.[3]  Relator's complaint related to the search involving former PPFA CEO Cecile Richards is misleading.  Affiliate Defendants searched for communications with Richards because Relator propounded a RFP that specifically called for such communications.  *See* Relator's First RFPs, Dkt. 221 at RFP No. 9 (App. 0011).  Had Relator wanted Affiliate Defendants to search for communications with other PPFA CEOs, Relator could have requested them.  And, in any event, Affiliate Defendants will be broadly searching for all communications with anyone using a @ppfa.org domain name in order to identify documents responsive to Relator's Fifth RFPs, so Relator will be getting the documents they requested once Affiliate Defendants complete the productions in response to the Fifth RFPs.

### C.   Relator's Contentions About Specific Documents

Training Courses Related to MCOs:  Relator states that Affiliate Defendants did not "produce documents from training courses they are required to complete by managed care organizations reimbursing for Medicaid services."  Dkt. 220 at 12.  But Relator never explicitly asked Affiliate Defendants for these documents, and these documents do not fall within the scope of their requests.  *See* Relator's 1st, 2nd, 3rd, 4th, 5th, & 6th RFPs, Dkt. 221, App. 0001–25, 0050–62, 0089–130.  Given that Relator never requested these documents, Relator cannot properly argue

---

[2] Those terms are "claim," "bill*," "defund," "fraud," "reimburs*," "pay," "pay back," "false claims," "LDH," "dh.louisiana.gov,"  or "hhs.texas.gov."

[3] For example, "compliance" and "training" are related to Relator's Third RFPs.  Affiliate Defendants already have conducted searches to find documents responsive to the Third RFPs. Regardless, documents related to Medicaid compliance or training are already being produced in connection with the "Medicaid" search.

that Affiliate Defendant's productions are deficient because they did not produce documents Relator never requested.

<u>Documents in PPFA's Possession or Control</u>: Relator further argues that Affiliate Defendants' productions are "missing documents that PPFA produced but that the Affiliates should also have produced, like responsive emails to/from PPFA and Affiliate employees," Dkt. 220 at 14, but Relator only requested such documents in Relator's Fifth RFPs, *see* Relator's Fifth RFPs Dkt. 221, App. 0102–115, to which Affiliate Defendants responded on September 30, 2022, just two weeks before Relator filed the instant Motion. Affiliate Defendants are working in good faith to produce non-privileged documents in response to Relator's Fifth RFPs as quickly as possible. Relator cannot argue that Affiliate Defendants' production of these communications are deficient when Affiliate Defendants have not yet finished their productions.

Relator also argues that Affiliate Defendants have failed to produce "responsive documents on the PPFA intranet, ARMS Connect, and the Center for Affiliated Learning, which are undoubtedly within the PPFA Affiliates' possession, custody, or control." Dkt. 220 at 12. These documents were requested in Relator's Sixth RFPs. Affiliate Defendants served their written responses, and the parties met and conferred about these requests on the morning of October 14. During that meet and confer, Affiliate Defendants confirmed, consistent with their written responses, that Affiliate Defendants do not intend to produce responsive documents from the PPFA Medical Services intranet site because PPFA will be producing such responsive documents. *See* Lollar Decl. ¶ 7, Ex. A. Relator stated that Affiliate Defendants should produce these documents unless Affiliate Defendants are willing to say that the documents produced by PPFA are accessible to the Affiliate Defendants. *Id.* Affiliate Defendants said that this seems acceptable: that they would review the documents PPFA produces from the Medical Services intranet site and confirm

13

whether Affiliate Defendants have access to such documents. *Id.* Relator indicated that this was satisfactory during the meet and confer. Relator's concerns about the lack of production of these documents is particularly curious since Relator filed their motion later on the *same day* as the October 14 meet and confer.

During the same October 14 meet and confer, Affiliate Defendants confirmed that they searched and found no documents responsive to Relator's Sixth RFPs, Request 3, seeking documents and communications concerning ARMS Connect and the Center for Affiliated Learning or training courses or materials concerning Medicaid, Texas Medicaid, and/Louisiana Medicaid rules and regulations. Relator's unsupported speculative belief that these documents exist and "are undoubtedly within the . . . Affiliates' possession, custody, or control" does not provide a grounds for the relief requested.

Relator also argues that Affiliate Defendants have failed to produce the "Medical Director Orientation Manual and Medicaid Toolkit." *See* Dkt. 220 at 12. But to the extent these exist and are reasonably accessible to Affiliates, Affiliate Defendants understand them to be located on the PPFA intranet, *see* Mot. 9-10, and not stored on Affiliate Defendants' systems. *See, e.g.*, Ex. R, Ex. S, Ex. T.

\*     \*     \*

In sum, Relator's supposed "evidence" of non-compliance is no evidence at all, since Relator's statements are incorrect. Relator has raised no specific deficiency in Affiliates' productions, and has failed to carry Relator's burden to support any motion to compel, and certainly has not met the burden for an extraordinary remedy. Because Relator has not identified any actual deficiencies, Relator's Motion must be denied for that reason alone. However, even if Relator had raised any cognizable deficiencies (though Relator has not), Relator has not come

14

close to showing the types of deficiencies that could support the extraordinary remedy sought, as is further discussed below.

## II.     Relator Does Not Come Close To Making A Showing That Could Support the Extraordinary Remedy Sought

Compelling a litigant to open its computers to an adversary's inspector is "drastic." *John B. v. Goetz*, 531 F.3d 448, 460 (6th Cir. 2008) (granting writ of mandamus to vacate such an order because it "constitute[d] a demonstrable abuse of discretion"); *McCurdy Grp.*, 9 F. App'x at 831. Relator falls well short of demonstrating their entitlement to such extreme relief.

First, Relator has not established the factual predicate for such an order—neither a "specific or material deficiency" in Affiliate Defendants' productions that would be a bare minimum requirement for *any* "discovery on discovery," nor the much more stringent showing, that no less intrusive means are available, which is required for this particularly invasive remedy.  Second, any production shortcomings of the kind Relator alleges could be rectified through ordinary processes, but Relator has failed to meet and confer as is required by the Federal Rules.  And third, the relief Relator seeks would run afoul of key precepts of the Federal Rules.

### A.     Relator Has Not Shown Any Material Deficiency And Certainly Has Not Shown That No Less Intrusive Means Could Rectify Any "Deficiency"

Relator's request is unwarranted. As the Court has held, *see* Dkt. 213 at 4, and as Relator concedes, *see* Dkt. 220 at 5, an order for even unintrusive discovery on discovery must be based on a demonstrated "specific or material deficiency." *VeroBlue Farms USA Inc. v. Wulf*, 2021 WL 5176839, at *9 (N.D. Tex. Nov. 8, 2021). That bar is far higher where, as here, the discovery sought is particularly invasive—indeed, forensic imaging should be ordered only when there is a material deficiency *and no "less intrusive means are available"* to rectify it.  *See John B.*, 531 F.3d at 460–61.  When, like here, the requesting party fails to show that their allegations are based

15

on anything more than speculation, allowing access to electronic devices amounts to "impermissible fishing expeditions." *A.M. Castle & Co.*,123 F. Supp. 3d at 907.

In their brief, Relator misrepresents the standard:  Relator cites to *Realpage, Inc. v. Enter. Risk Control, LLC*, No. 4:16-CV-737, 2017 WL 1180420, at *1 (E.D. Tex. Mar. 30, 2017), which Relator represents as permitting access to an adversary's computer on a showing that production has been "inadequate."  Dkt. 220 at 5 (quoting *Realpage*, 2017 WL 1180420, at *1).  But Relator omits the portion of the quoted sentence following "inadequate."  The entire statement reads: "The requesting party should also show that the responding party's production 'has been inadequate ***and*** that a search of the opponent's [electronic storage device] could recover ***deleted relevant materials.***'" *Realpage*, 2017 WL 1180420, at *1 (emphases added) (alteration in original) (quoting *Diepenhorst v. City of Battle Creek*, No. 1:05-CV-734, 2006 WL 1851243, at *3 (W.D. Mich. June 30, 2006)).

In line with *Realpage*, courts have determined the narrow instances when discovery on discovery may be warranted include when a party has utterly failed to comply with discovery obligations in good faith — and in particular, when there is a credible allegation that a party deleted relevant documents.  *See, e.g.*, *Schreiber v. Friedman*, No. 15-CV-6861, 2017 WL 11508067, at *5 (E.D.N.Y. Aug. 15, 2017) (citing "evidence of spoliation" as grounds for such an order); *Bank of Mong. v. M&P Glob. Fin. Servs., Inc.*, 258 F.R.D. 514 (S.D. Fla. 2009) (ordering computer imaging where party admitted it "had not attempted to search [its] deleted computer records").  The cases cited by Relator are consistent.  *See, e.g.*, *Realpage*, 2017 WL 1180420, at *2 (finding good cause for limited forensic imaging because a search of Defendants' electronic devices could recover important deleted materials); *Simon Prop. Grp. L.P. v. mySimon, Inc.*, 194 F.R.D. 639, 641 (S.D. Ind. 2000) (permitting party "to attempt (at its own expense) the task of recovering

16

deleted computer files" from the computers of four named individuals); *Playboy Enters., Inc. v. Welles*, 60 F. Supp. 2d 1050, 1054 (S.D. Cal. 1999) (ordering expert review of party's hard drive, based on her pattern of "continuously deleting incoming and outgoing e-mails, apparently without regard for this litigation").

Relator alleges neither deletion nor any remotely similar deficiencies, nor does Relator allege that a forensic examiner would be the least intrusive means to remedy any concerns about discovery.  Indeed, consistent with the lack of any allegations that could support the appointment of a forensic examiner, the proposed duties of Relator's forensic examiner do not include *any* forensic examining.  *See* Dkt. 220 at 16–17.  Instead, Relator would have the Court instruct Mr. Johnson to "retrieve responsive documents, files, and related material" by applying three specified search terms within a certain timeframe.  Dkt. 220 at 17.  But there is no reason to think that Affiliate Defendants are unable to conduct such a search and produce responsive documents (if such a search were warranted, which it is not).  That alone should doom Relator's quest for a type of relief that is available *only* when nothing else could achieve the result.

Far afield from any suggestion that *only* a forensic examiner could rectify Relator's concerns, Relator argues that Affiliate Defendants have failed to produce two specific documents — the "Medical Director Orientation Manual and Medicaid Toolkit."  *See* Dkt. 220 at 12.  As discussed above, Affiliate Defendants understand these to be documents which, to the extent they exist, are stored on the PPFA intranet and not in Affiliates' files.  *See* Dkt. 220 at 9-10 (discussing PPFA's production of these documents).  Relator has not made a showing (nor could they) that Affiliate Defendants have not yet produced these documents because the documents were destroyed or deleted; this is especially true considering that these are not documents stored within Affiliate Defendants' files.  Moreover, as explained above, Relator stated during the October 14

17

meet and confer that Relator does not expect Affiliate Defendants to produce documents from the PPFA intranet if PPFA does so and Affiliate Defendants subsequently confirm that they have access to the same documents.  PPFA has agreed to produce these documents.  Given that context, Relator has shown no deficiency, much less any deficiency that could support the appointment of a forensic examiner.

Relator then makes a conclusory assertion that there are other "responsive documents" that should be produced, without acknowledging that Affiliate Defendants' production remains ongoing.  Dkt. 220 at 12–14.  Again, Relator does not allege any deletion or other intentional or pervasive misconduct.  *See id.*  Nor does Relator identify any specific legitimate deficiencies. Relator's argument instead hinges on an untethered assertion that Relator thinks that more files should exist.  This cannot justify such an extreme remedy.  *See, e.g.*, *NOLA Spice Designs, LLC v. Haydel Enters., Inc.*, No. 12-2515, 2013 WL 3974535, at *3 (E.D. La. Aug. 2, 2013) (declining to order forensic computer examination where party had not "willfully defaulted on its discovery obligations in a way that would justify" such an order); *Hespe*, 2016 WL 7240754, at *4 ("speculation . . . insufficient to support an 'intrusive examination'").

At bottom, a forensic examination of an adversary's systems is inappropriate, absent credible allegations of document destruction, or other specific evidence that the party cannot be trusted to comply with their discovery obligations in good faith, such that no less intrusive means exist for remedying the deficiency.  *See John B.*, 531 F.3d at 459–60 (holding it was "clear error" for district court to order forensic imaging where party may have "persistent[ly] refus[ed] to produce ESI in violation of the [c]ourt's orders," but there was no "evidence that [the party] ha[d] intentionally destroyed" relevant materials or would "refuse[] to preserve and produce" such materials in the future).  Relator has not identified any cognizable deficiency, much less one that

could not be remedied through less intrusive means.  Ordering a forensic examination under these circumstances would be clear error.  *See id.*; *accord In re Ford Motor Co.*, 345 F.3d 1315 (11th Cir. 2003) (granting mandamus and vacating discovery order that had allowed "unlimited, direct access" to opposing party's databases).

### B.      Relator Has Not Met & Conferred On These Issues, As Is Required

If Relator believes that any documents are missing from Affiliate Defendants productions, or would like to discuss the custodian list or search terms, then the Federal Rules provide procedures for doing so: through good-faith conferring and, if necessary, seeking clarification from this Court.  *See* Dkt. 192 at 5; Fed. R. Civ. P. 37(a)(1).

The meet and confer "prerequisite is not an empty formality," *Ross v. Citifinancial, Inc.*, 203 F.R.D. 239, 240 (S.D. Miss. 2001), and parties "are not to treat the informal negotiation process as simply a formal prerequisite to judicial review of the discovery dispute."  *Compass Bank v. Shamgochian*, 287 F.R.D. 397, 399 (S.D. Tex. 2012).  Indeed, the meet and confer requirement is so important that failure to meet and confer in good faith is grounds for denial of the motion to compel, *Brown v. Bridges,* No. 12-cv-4947-P, 2015 WL 11121361, at *3 (N.D. Tex. Jan. 30, 2015), and can preclude the party seeking to compel discovery from being awarded sanctions, *see Samsung Elecs. Am., Inc. v. Chung*, 321 F.R.D. 250, 288 (N.D. Tex. 2017).

To satisfy the meet and confer requirement, parties must "deliberate, confer, converse, compare views, or consult with a view to resolve the dispute without judicial intervention," and if a party intends to raise a number of matters in any motion to compel, that party must confer on each matter at issue in good faith to comply with conference requirements.  *Brown,* 2015 WL 11121361 at *4.  Parties must make genuine efforts to resolve the dispute by "determining precisely what the requesting party is *actually seeking*; what responsive documents or information

19

the discovering party is *reasonably capable* of producing; and what specific, genuine objections or other issues, if any, cannot be resolved without judicial intervention." *Id.* (emphasis added).

Here Relator has failed to comply with the meet-and-confer requirements. Relator never brought the specific concerns raised in the instant motion to Affiliate Defendants' attention. Relator and Affiliate Defendants conferred on September 29, 2022, in a meet and confer that was primarily focused on the Affiliate Defendants' responses to Relator's Fourth RFPs, which are not at issue in the instant Motion. Lollar Decl. ¶ 6, Ex. A. During that meeting, Relator stated that Relator expected the production of every document containing the word "Medicaid" from every employee of all five entities from 2010-2022 and threatened to seek sanctions if Affiliate Defendants produced anything less. *Id.* Of course, this dispute has since been adjudicated by the Court in Affiliate Defendants' favor. Dkt. 213 at 4-5. Relator never shared their request that Medical Directors be added as custodians or suggested that the search terms should be revised before filing their motion. Lollar Decl. ¶ 8, Ex. A. Had Relator done so, Affiliate Defendants would have conferred in good faith, as they have done throughout the pendency of this case.

Relator should have, before seeking Court intervention (and certainly before seeking such an extraordinary and intrusive remedy), raised their concerns during a meet and confer if Relator wanted to discuss the custodians or search terms. *See Greinstein*, 2020 WL 10934898, at *4 (Kacsmaryk, J.) ("Failure to confer or attempt to confer may result in unnecessary motions. When the court must resolve a dispute that the parties themselves could have resolved, it must needlessly expend resources that it could better utilize elsewhere.").

Relator's Motion should be denied because Relator has failed to meet and confer with Affiliate Defendants about the contentions raised in the Motion, in violation of the Federal Rules.

**C.      The Remedy Relator Seeks Would be Disproportionate and Run Afoul of the Federal Rules**

There is good reason for limiting forced forensic examinations to situations where they are truly warranted: they are invasive.  Even where a party's productions are imperfect, "[c]ourts should guard against undue intrusiveness resulting from inspecting or testing" of computer systems by litigation adversaries.  *See* Fed. R. Civ. P. 34 advisory committee's note to 2006 amendment; *Freedman v. Weatherford Int'l Ltd.*, No. 12-Civ-2121, 2014 WL 4547039, at *3 (S.D.N.Y. Sept. 12, 2014) (declining to order discovery on discovery where party failed to produce 18 relevant documents, because the "Federal Rules of Civil Procedure do not require perfection").  The order Relator seeks would "disrupt[]" Affiliate Defendants' business and inevitably "result in the duplication of confidential and private information unrelated to [this] litigation . . . implicat[ing] significant privacy and confidentiality interests."  *See John B.*, 531 F.3d at 458.

This is of particular concern here because Affiliate Defendants provide a variety of confidential healthcare services to thousands of patients annually.  Imaging and examination of Affiliate Defendants' servers could compromise the security of patient data in digital storage.  *See* Sealed PPGC Decl. ¶¶ 5, 9, Ex. U; Sealed PPGT Decl. ¶ 6, Ex. V; Sealed PPST Decl. ¶ 6-7, Ex. W.   Moreover, the relief requested by Relator would be unduly burdensome on Affiliate Defendants' operations.  It would have a significant impact on operations, as it would be disruptive to their employees' work (many of whom have roles that are not in any way related to this litigation) while the forensic examiner searched their systems.  *See* Sealed PPGC Decl. ¶ 7, Ex. U; Sealed PPGT Decl. ¶ 7, Ex. V; Sealed PPST Decl. ¶¶ 5, 8, Ex. W.  Such disruption could impact Affiliate Defendants' ability to provide healthcare services to their patients.  *See id.*

And the time frame on which Relator suggests this review should occur is unworkable.  *See* Dkt. 220 at 17; Sealed PPGC Decl. ¶ 6, Ex. U; Sealed PPST Decl. ¶ 4, Ex. W.  Imaging Affiliate

21

Defendants' systems would be a massive undertaking.  Fourteen days (or less) would likely be too short a time period to just image Affiliate Defendants' data, *see id.*, and far too short of a timeframe to permit them to review the documents for privilege, create a privilege log, and apply any appropriate confidentiality designations.

In addition, even if the Court were to agree that a forensic examiner should be appointed (which it should not), Affiliate Defendants object to the individual unilaterally selected by Relator. *See e.g.*, *Tera II LLC v. Rice Drilling D LLC*, No. 19-cv-2221, 2022 WL 1114943, at *6 (S.D. Ohio April 14, 2022) (giving the party subject to the forensic examination discretion to select the examiner); *Barton & Assocs., Inc. v. Liska*, No. 9:19-cv-81023, 2020 WL 8299750, at *1, *3 (S.D. Fla. May 11, 2020) (giving each party opportunity to propose an examiner).

In any event, like any discovery, discovery on discovery must be relevant and proportional. *See* Fed. R. Civ. P. 34(a); *VeroBlue*, 2021 WL 5176839, at *9 (quoting Fed. R. Civ. P. 26(b)(1)). What Relator seeks here is neither.  First, it is irrelevant.  Relator tries to couch their allegations in terms of Affiliate Defendants' collection processes writ large, but (as discussed above), it is clear from Relator's briefing that the actual concerns are about the *implementation* of those processes, such as which specific search terms were used.  *See* Dkt. 220 at 12–14; *compare Freedman*, 2014 WL 4547039, at *3 (denying a "discovery-on-discovery" request seeking hit-term reports from a prior audit where it was "not suited" to determining whether the party had used appropriate search terms), *with Tera II,* 2022 WL 1114943, at *4 (permitting forensic imaging where sworn testimony showed that party's counsel had not provided any oversight of nonlawyers' collection efforts). The intrusive search Relator proposes—giving Relator's chosen inspector nearly unfettered access cabined only by three broad search terms—is not designed to search for documents that Affiliate Defendants looked for but failed, or that Affiliate Defendants deleted.  Rather, Relator would have

their selected inspector get access to the data to run different searches than those run by Defendants, when there is no basis to conclude that the inspector's findings would be any different than Affiliate Defendants if they ran the same search.

Indeed, there is a reason that the lion's share of the cases relied on in Relator's brief relate to misappropriation of trade secrets, where concerns about the potential destruction of evidence are directly relevant to the merits of the claim. *See, e.g.*, *Realpage*, 2017 WL 1180420, at *2 (requesting access to a computer that had been allegedly used to download and misappropriate trade secrets when, central to plaintiffs' claims, was an earlier version of defendants' code that had been deleted by former employees); *Simon Prop. Grp.*, 194 F.R.D. at 641 (similar); *Playboy Enters.*, 60 F. Supp. 2d at 1055 (similar). This case was brought pursuant to the FCA. It does not involve claims that Affiliate Defendants used their computers to misappropriate a trade secret or that Affiliate Defendants deleted documents directly relevant to the claims at issue in this case. Instead, Relator merely alleges that Relator had anticipated that the number of relevant documents might have been "more." This is not sufficient, and it does not support that the appointment of a forensic examiner could possibly be relevant, proportional, or necessary here.

In addition to being irrelevant, the intrusion Relator seeks is far out of proportion to the purported issues he identifies. Relator's fishing expedition would be particularly unnecessary because "[t]his is not a case in which the information is unavailable from another source." *Bradfield v. Mid-Continent Cas. Co.*, No 5:13-cv-222-10PRL, 2014 WL 4626864, at *4 (M.D. Fla. Sept. 15, 2014). Indeed, Relator's Motion explicitly lists documents Relator already has from PPFA's production, but thinks Affiliate Defendants should have also produced. *See* Dkt. 220 at 9-10, 12–13. But once a party has "the precise information [the party] seeks," "simply believ[ing] there is something more to find" does not suffice as a basis for a forensic review. *Bradfield*, 2014

23

WL 4626864, at *4.  Rather, forensic examination orders require "a strong showing" of wrongful discovery conduct in order to justify such an "extreme, expensive, or extraordinary means" of discovery.  *Diepenhorst*, 2006 WL 1851243, at *3; *see also Henson v. Turn*, No. 15-cv-01497, 2018 WL 5281629, at *5 (N.D. Cal. Oct. 22, 2018) (declining to order forensic cell phone exam because "privacy interests can be a consideration in evaluating proportionality") (citing, *inter alia*, *Areizaga v. ADW Corp.*, No. 3:14-cv-2899-B, 2016 WL 9526396, at *3 (N.D. Tex. Aug. 1, 2016)); *see generally* Fed. R. Civ. P. 26(b)(2)(C)(i) (requiring courts to limit "extent of discovery" where "less burdensome" alternatives exist).

## CONCLUSION

For the foregoing reasons, the Court should deny Relator's Motion [Dkt. 220].


Dated:  October 26, 2022                           Respectfully submitted,

                                                   ARNOLD & PORTER KAYE SCHOLER
                                                   LLP


                                                   By:   */s/  Tirzah S. Lollar____*
                                                   Craig D. Margolis
                                                   Craig.Margolis@arnoldporter.com
                                                   Tirzah S. Lollar
                                                   Tirzah.Lollar@arnoldporter.com
                                                   Christian Sheehan
                                                   Christian.Sheehan@arnoldporter.com
                                                   Emily Reeder-Ricchetti
                                                   Emily.Reeder-Ricchetti@arnoldporter.com
                                                   Megan Pieper
                                                   Megan.Pieper@arnoldporter.com
                                                   Alyssa Gerstner
                                                   Alyssa.Gerstner@arnoldporter.com
                                                   Meghan C. Martin
                                                   Meghan.Martin@arnoldporter.com
                                                   601 Massachusetts Ave, NW
                                                   Washington, DC 20001-3743
                                                   Telephone: +1 202.942.5000

Fax: +1 202.942.5999

Christopher M. Odell
Texas State Bar No. 24037205
Christopher.Odell@arnoldporter.com
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: +1 713.576.2400
Fax: +1 713.576.2499

Paula Ramer
250 West 55th Street
New York, New York 10019-9710
T: +1 212.836.8474
Paula.Ramer@arnoldporter.com

Ryan Patrick Brown
Texas State Bar No. 24073967
brown@blackburnbrownlaw.com
1222 S. Filmore
Amarillo, TX 79101
Tel: (806) 371-8333
Fax: (806) 350-7716

*Attorneys for Defendants Planned Parenthood
Gulf Coast, Inc., Planned Parenthood of
Greater Texas, Inc., Planned Parenthood of
South Texas, Inc., Planned Parenthood
Cameron County, Inc., and Planned
Parenthood San Antonio, Inc.*

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 26, 2022, the foregoing document was electronically filed with the Clerk of Court using CM/ECF.

*/s/ Tirzah S. Lollar*
Tirzah S. Lollar
