IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, § | | |
| *ex rel.* ALEX DOE, Relator, § | | |
| § | | |
| THE STATE OF TEXAS, § | | |
| *ex rel.* ALEX DOE, Relator, § | | |
| § | | |
| THE STATE OF LOUISIANA, § | | |
| *ex rel.* ALEX DOE, Relator, § | | |
| § | | |
| § | | |
| Plaintiffs, § | | |
| § | | |
| v. § | Civil Action No. 2:21-CV-00022-Z | |
| § | | |
| PLANNED PARENTHOOD § | | |
| FEDERATION OF AMERICA, INC., § | | |
| PLANNED PARENTHOOD GULF § | | |
| COAST, INC., PLANNED § | | |
| PARENTHOOD OF GREATER § | | |
| TEXAS, INC., PLANNED § | | |
| PARENTHOOD SOUTH § | | |
| TEXAS, INC., PLANNED § | | |
| PARENTHOOD CAMERON § | | |
| COUNTY, INC., PLANNED § | | |
| PARENTHOOD SAN ANTONIO, § | | |
| INC., § | | |
| § | | |
| Defendants. § | | |

**REPLY IN SUPPORT OF RELATOR'S MOTION TO COMPEL
PRODUCTION AND APPOINTMENT OF FORENSIC EXAMINER TO
CONDUCT A REVIEW AND EXAMINATION OF DEFENDANTS'
COMPUTER SYSTEMS AND ELECTRONIC DATA, AND FOR EXPEDITED
CONSIDERATION**

## INTRODUCTION

Despite constantly harping on the alleged deficiencies in the parties' meet-and-confer process, Defendants' latest responses illustrate why that process has been so pointless. Here's how it goes:

- The parties meet and confer, Defendants demand that Relator tell them exactly what they should have produced, Relator declines, Defendants either refuse to produce anything other than what they want to or claim they will supplement their production.

- Relator files a motion to compel. Defendants complain that there wasn't enough meet-and-confer and argue that they shouldn't have to produce the documents but claim they will do so anyway.

- Court grants motion to compel, Defendants start producing documents.

When Defendants clearly have no intention of producing responsive documents until they are forced to, that leaves Relator with no other choice, unless Relator allows Defendants use endless meet-and-confers as a delay tactic. The current dispute is no exception. Only now that this motion has been filed has PPFA committed to the Court that it will search obvious sources of responsive documents.

Defendants continually rely on their desired search terms and custodians to justify their noncompliance. But this Court's order compelling PPFA and the PPFA Affiliates to produce documents responsive to Relator's requests do not order them to produce only those documents that hit for Planned Parenthood's preferred search terms, and for only those custodians they wanted to search. The orders compelled

1

PPFA and the PPFA Affiliates to produce all responsive documents to Relator's First and Second RFPs to PPFA and to Relator's First RFPs to the PPFA Affiliates. Dkt. 153 at 6, Dkt. 184 at 8. As Relator's motion stated, *whatever the methodology used*, it was clearly deficient. Not searching PPFA's intranet (f/k/a extranet), as PPFA admitted it did not do, was a huge deficiency. Documents turned up in PPFA's production that involve the custodians the PPFA Affiliates elected but did not produce the same documents—that suggests that something is wrong with the methodology. And the PPFA Affiliates have not explained how their methodology could fairly lead to a tiny fraction of documents being produced out of the large number hitting for their previously narrow search terms.

## ARGUMENT

### I. Forensic Examination Is a Lesser Sanction for Noncompliance with a Discovery Order than those Proposed by Rule 37.

"[Fed. R. Civ. P.] 37(b) empowers the courts to impose sanctions for failures to obey discovery orders." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012). A district court "has broad discretion under Rule 37(b) to fashion remedies suited to the misconduct." *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir. 1990). Rule 37 authorizes sanctions for noncompliance with a discovery order:

> If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They include the following:

2

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except

an order to submit to a physical or mental examination.

In arguing that Relator's proposed sanction is "extreme," Defendants forget that this is not the first motion to compel, and they have already disobeyed this Court's orders compelling production of documents. That is sanctionable conduct. While the Court has discretion to enter "further just orders" for noncompliance with discovery orders, which include the powerful sanctions above, Relator has not requested such extreme measures, nor has Relator pursued monetary sanctions against Defendants related to the previous motions to compel. Instead, Relator is simply asking for the quickest, most efficient way to just get the documents the Court already ordered be produced, and to get them in time to depose witnesses and comply with the scheduling order.

## II. PPFA's Noncompliance.

The fact that PPFA claims it spent a great deal of money producing hundreds of thousands of documents related to Medicaid in their possession yet still claims they are uninvolved in Medicaid, and in their Affiliates' participation in Medicaid, is boggling. PPFA claims that Relator is on a "fishing expedition" because there is no evidence connecting PPFA to the wrongful conduct at issue here. But it is precisely because there *is* such evidence even with PPFA's inadequate searches that it shows there must be far more that PPFA is not producing. PPFA claims to have conducted an extensive search for all responsive documents, but it admits that it never searched the intranet/extranet, an important source of not only Medicaid documents that "concern" either Texas or Louisiana Medicaid by virtue of being accessible by or given to the PPFA Affiliates that participate in Texas or Louisiana Medicaid (*see* App.0010, 0023),[1] but also documents demonstrating PPFA's obviously extensive control over its affiliates (*see* App.0023).[2] And it also never searched Google Docs as a potential

---

[1] Relator's Requests for Production define "concerning" as meaning "any relationship or connection to, regarding, relating, constituting, discussing, considering, being connected to, commenting on, responding to, addressed to, sent to, containing, evidencing, showing, memorializing, describing, modifying, amending, confirming, endorsing, representing, supporting, substantiating, qualifying, negating, refuting, analyzing, reflecting, pertaining to, comprising, constituting, or otherwise establishing any reasonable, logical, or causal connection." App.0006.

[2] Relator later sent a request specifically requesting intranet documents, *see* App.0128, but the First and Second RFPs are broad enough to have fairly included documents from these sources, *see* App.0010-0012, 0023. Relator does not concede that Defendants' responses to Relator's other sets of requests for production are adequate, but if the Court requests the relief Relator is requesting, moving to compel separately on those requests would be unnecessary. Notably, Relator did move to compel on the fourth set of RFPs to PPFA, and PPFA claimed that it "does not maintain policies or procedures regarding the prevention, detection or reporting of healthcare fraud and abuse *by PPFA*," *see* Dkt. 215 at 6, but they certainly do with respect to *the Affiliates. See, e.g.,* App.0145-46; *see also* App.0073 (requesting "[a]ll documents and communications concerning policies and procedures for the prevention, detection and reporting of health care fraud and abuse by *Planned Parenthood*," (emphasis added); App.0071 (defining "Planned Parenthood" to include the PPFA Affiliates).

source of responsive documents, instead searching only their chosen custodians. These are major deficiencies. Only now that Relator has filed this motion has PPFA agreed to search these relevant sources.

PPFA defends their choice of custodians, but they are completely inconsistent, suggesting either no methodology or that they were selected as custodians because they had less damaging documents. For example:

- PPFA did not search the documents of VP of Health Outcomes and Performance Optimization Katie Magill but *did* search the documents of one her direct reports, Emily Schifrin.

- Conversely, PPFA *did* search the documents of the Director of the Affiliate Clinical Consulting-Business Operations Team Terri Trivisonno but *did not* search the documents of her direct report, Cherie Stutzman.

- The fact that there were 4,000 documents *involving* Rosemary Coluccio, Director of Affiliate Financial Consulting, but her documents were not searched, does not help PPFA.

- PPFA reviewed documents from "an" Health Care Investment Program (HCIP) Director, Tamara Kramer, PPFA Resp. 12, but she has only held that position since June 2021, and was associate director from 2019-2021. But PPFA did *not* search documents from other directors from the relevant time period, such as Alicia Dupre (HCIP Director 2017-18) and

5

Sydney Etheredge (HCIP Director 2018-2021, Associate Director Health Care Operations, 2016-18).[3]

It is clear from these deficiencies in PPFA's discovery process and document production that PPFA has failed to produce all documents and communications in its possession, custody or control responsive to Relator's requests as ordered by the Court. Regardless of the methodology chosen, money spent, custodians selected, and search terms used, PPFA has failed to comply with the Court's orders, which ordered them to "provide full and complete responses to Relator's First Requests for Production and Relator's Second Requests for Production, and to produce to Relator all requested non-privileged documents in its possession, custody, or control **on or before September 9, 2022**." Dkt. 153 at 6; *see also* App.0010-12, 0023.

## II. PPFA Affiliates' Noncompliance.

The PPFA Affiliates were ordered by this Court to "provide full and complete responses to Relator's First RFP." Dkt. 184 at 8, *see also* App.0010 (First RFP). The PPFA Affiliates should have produced documents like the PPFA Medical Director Orientation Manuals and the Medicaid Toolkit, in addition to responsive documents on the PPFA intranet, ARMS Connect, and the Center for Affiliated Learning, which are undoubtedly within the PPFA Affiliates' possession, custody, or control. *See* App.0010 (requesting "all documents and communications concerning Defendants' provision of services billed to Texas Medicaid" and "all documents and

---

[3] The fact that PPFA has such employees, whose entire job is helping Affiliates boost their revenue vis-à-vis Medicaid, disproves PPFA's claim that they had nothing to do with the wrongful conduct here. These individuals' documents are covered under the first and second RFPs to PPFA, *see* App.0010-0012, 0023, and are explicitly covered under Relator's fourth RFPs to PPFA, App.0073-74.

communications concerning Defendants' provision of services billed to Louisiana Medicaid.")[4] They do not dispute this, but now fall back on PPFA's promise to produce the same documents. This is problematic for two reasons. First, this demonstrates that regardless of the process, search terms, or custodians used, the PPFA Affiliates' methods for gathering responsive documents are inadequate because these documents should have already been produced.[5] Second, the fact that the PPFA Affiliates have possession or access to the documents is significant in and of itself and is relevant to how those documents will be used in a deposition or at summary judgment. Relator's counsel explained this to counsel for the PPFA Affiliates during the meet and confer.

The PPFA Affiliates also argue that Relator cannot say that their production is inadequate when they have not finished their production yet, Affiliate Resp. 13, but that's the same trick that Relator believed when waiting to move to compel on the first RFPs. Notably, even when the Affiliates claimed they had completed their production, it was still inadequate, and then the Affiliates argued that Relator's motion to compel was untimely because Relator waited for rolling productions. Dkt

---

[4] Relator also sent more specific requests later that mentioned some of these types of documents and sources more specifically, *see* App. 0060-61, 0113, 0128-29, but these documents are responsive to Relator's First RFP, *see* App.0010. Relator does not concede that Defendants' responses to Relator's other sets of requests for production are adequate, but if the Court requests the relief Relator is requesting, moving to compel separately on those requests would be unnecessary.

[5] The PPFA Affiliates point out that they produced organizational charts, but Relator had to file a motion to compel production of those, which this Court granted. Dkt. 215. But the deficiencies in the PPFA Affiliates' document productions are not limited to documents they failed to collect from custodians, but also documents and information form any other sources that the PPFA Affiliates maintain on their computer systems or have access to electronically.

184 at 3-4. The first deposition of an Affiliate witness, Jeffrey Hons, is set for next Thursday, November 3. When are the Affiliates planning on finishing their production?

To the extent that search terms matter, the PPFA Affiliates similarly limited their search terms, *see* App. 0173, not searching for "Medicaid," but instead limiting it by searching only for "Medicaid" in combination with certain terms. Only after a motion to compel was granted did the PPFA Affiliates agree to search for "Medicaid." But the PPFA Affiliates still do not explain how their supposedly adequate methodology for collecting and producing responsive documents somehow previously resulted in only 18 out of nearly 87,000 files for Sheila McKinney, or only 10 out of over 69,000 documents for Ken Lambrecht. App.0172. The PPFA Affiliates merely respond that they have since produced more documents, but that does not address the adequacy of the process used for search, collection, and production. Even if the PPFA Affiliates have now produced some documents that hit for the term "Medicaid," if they were identified and produced using the same process, that is still problematic because they are likely excluding from their production a large number of documents that hit for "Medicaid," as they were doing before.

### III. Alternative to Proposed Forensic Examination Process

"Courts have recognized that discrepancies or inconsistencies in the responding party's discovery responses may justify a party's request to allow an expert to create and examine a mirror image of a hard drive." *Hawkins v. Ctr. For Spinal Surgery*, No. 3:12-1125, 2015 WL 3795297, at *1 (M.D. Tenn. June 18, 2015);

*see also Tera II, LLC v. Rice Drilling D, LLC*, No. 2:19-CV-2221, 2022 WL 1114943, at *5 (S.D. Ohio Apr. 14, 2022). As explained above, Defendants' methodology was obviously inconsistent and questionable. But Relator did not propose mirror imaging, but rather forensic examination and search by a neutral third-party examiner. Regardless, in light of Defendants' commitments to this Court that they will search the PPFA intranet and Google Docs (PPFA) and search for "Medicaid" (PPFA Affiliates), and in light of Defendants' protestations that regardless of these deficiencies, their search and production was adequate, Relator proposes that the Court order the following alternative so that the adequacy of the search and production can be fairly assessed:

(1) On or before November 4, 2022, Defendants must produce both (a) a detailed report of all on-premises and cloud-based computer systems, file storage locations and databases, and any other sources of electronic data that were collected and searched by Defendants prior to October 14, 2022, and (b) a Data Map identifying all on-premises and cloud-based computer systems, file storage locations and databases, and any other sources of electronic data that are in Defendants' possession, custody, or control. These documents may be designated Attorney's Eyes Only.

(2) Relator will then compare the two and consult with the proposed Examiner, Jeffrey L. Johnson, CCE, as to the adequacy of the collection and search. If consulted, Mr. Johnson must sign the confidentiality agreement at Dkt.

129-1 and shall comply with the terms of the Protective Order entered in this case.

(3) If it appears from these two documents that Defendants' search and collection was inadequate, the parties shall meet and confer within three days of notification by Relator's counsel of same and attempt in good faith to compromise on the sources of data that should be searched, the method for doing so, and the date the additional documents will be produced.

(4) If the parties are unable to come to an agreement on these things at that meet and confer, Relator may seek further relief from the Court.

If Defendants are correct that their search was adequate, there should be no issue in providing this information.

## CONCLUSION

For the reasons stated above and in the original motion, Relator respectfully requests that the Court grant Relator's motion and (1) order a forensic examination of Defendants' computer systems, networks, and databases to identify all responsive documents and sources of electronic information and data that Defendants have failed to produce in response to Relator's discovery request and the Court's orders granting Relator's motions to compel, and (2) order Defendants to pay all costs of the forensic examination.

        Respectfully submitted.

        <u>/s/ Andrew B. Stephens</u>
        Andrew B. Stephens
        Texas Bar No. 24079396
        Heather Gebelin Hacker
        Texas Bar No. 24103325
        HACKER STEPHENS LLP
        108 Wild Basin Road South, Suite 250
        Austin, Texas 78746
        (512) 399-3022
        andrew@hackerstephens.com
        heather@hackerstephens.com

        **Attorneys for Relator**

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2022, the foregoing document was filed and served via CM/ECF.

<u>/s/ Andrew B. Stephens</u><br>
Andrew B. Stephens