**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| United States of America | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| The State of Texas | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| The State of Louisiana | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
|     Plaintiffs, | § | |
| v. | § | |
| Planned Parenthood Federation of America, Inc., | § | CIVIL ACTION NO. 2:21-CV- |
| Planned Parenthood Gulf Coast, Inc., Planned | § | 00022-Z |
| Parenthood of Greater Texas, Inc., Planned | § | |
| Parenthood South Texas, Inc., Planned Parenthood | § | |
| Cameron County, Inc., Planned Parenthood San | § | Date:    November 1, 2022 |
| Antonio, Inc., | § | |
|     Defendants. | | |

**AFFILIATE DEFENDANTS' REPLY IN SUPPORT OF**
**AFFILIATE DEFENDANTS' SECOND AND RENEWED**
**<u>MOTION TO COMPEL THE STATE OF TEXAS</u>**

Defendants Planned Parenthood Gulf Coast, Inc. ("PPGC"), Planned Parenthood of Greater Texas, Inc. ("PPGT"), Planned Parenthood South Texas, Inc. ("PPST"), Planned Parenthood Cameron County, Inc. ("PP Cameron County"), and Planned Parenthood San Antonio, Inc. ("PP San Antonio") (together, "Affiliate Defendants") respectfully submit this reply in support of their Motion to Compel the State of Texas ("Motion"), Dkt. 228 & 229.

## ARGUMENT

### I.    Affiliate Defendants' Motion to Compel Document Production is Not Moot

Affiliate Defendants' renewed Motion to Compel is neither premature nor moot as Texas suggests, nor does Affiliate Defendants' motion "ignore" Texas's supplemental productions. Affiliate Defendants' Motion acknowledged that Texas had made *some* supplemental productions in the four months since Affiliate Defendants filed their first Motion to Compel, *see* Dkt. 228 (noting that Texas had "only produced approximately 1,400 documents since the Court's [September 1, 2022] Order"). However, as Affiliate Defendants explained in their Motion, Texas's minimal progress and repeated delays forced Affiliate Defendants to renew the Motion based on Affiliate Defendants' well-founded and increasing concerns as to if or when Texas will actually meet its discovery obligations, as discovery closes in one month and the parties are moving into a period of rapid depositions.

The complete timeline of Texas's slow-moving discovery response is set out in Affiliate Defendants' Motion, but to briefly summarize here: far from "rolling, weekly" productions since the Court issued its Order, Texas made its first production of custodial documents approximately nine weeks after it first represented to the Court that Texas's review of the documents was "underway and ongoing," Dkt. 137 at 6, and nearly three weeks after Texas informed Affiliate Defendants that it anticipated beginning rolling productions "next week." *See* Dkt. 229 at 1-2

1

(citing Exs. C & F). Texas also assured Affiliate Defendants that its verified and amended interrogatory responses would be served "next week" no less than three times in the month following the Court's Order, and it was only after Affiliate Defendants filed their renewed Motion to Compel on October 20 that Texas followed through on its promise.[1]

 As this history makes clear, Texas's representations regarding when Affiliate Defendants can expect to receive the discovery to which they are entitled have been at best a moving target— and a target that has moved backwards once again with Texas's most recent briefing. After Affiliate Defendants made repeated inquiries as to Texas's progress and its anticipated timeline for completing its production of documents responsive to Affiliate Defendants' First RFPs, Texas told Affiliate Defendants that Texas would substantially complete its production of documents "by late October or early November." *See* Dkt. 229 at 11. This deadline has now become "November 11," without explanation. Dkt. 241 at 5. Even if Texas actually completes its productions by November 11, this leaves little time for Affiliate Defendants to review Texas's productions to determine and address any deficiencies.

 Further compounding this problem is Texas's puzzling and still-unexplained refusal to provide a hit count report until it has completed its document production. Affiliate Defendants requested this report on October 3, shortly after Texas's first production of custodial documents on September 30. *See* Dkt. 229-6. As Affiliate Defendants explained in their Motion, "hit count" reports are typically exchanged relatively early in discovery, and typically associated with collections from custodial documents. Hit count reports are a routine part of ESI discovery, *see*

---

[1] Because Affiliate Defendants are currently reviewing Texas's amended and verified interrogatory responses, they will withdraw the renewed Motion to Compel as to the interrogatory responses without waiving their right to renew the Motion if Affiliate Defendants determine that the responses are still deficient.

Dkt. 130 at 13 & Dkt. 139 (adopting parties' joint proposed ESI Order), and are by no means difficult to generate. The experienced litigators representing Texas in this action are presumably familiar with hit count reports, so it is unclear why, since Texas was "working on a Hit Report" on October 4, *see* Dkt. 229-6, it never provided it and is now withholding this information from Affiliate Defendants. As a result, Affiliate Defendants have no way of knowing what to substantively expect from Texas' future productions (because they do not know how many hits the agreed search terms returned), nor do they have any way of effectively evaluating if revisions to the search terms or agreed-upon custodians are needed. Texas's refusal to provide this information has the appearance of a deliberate strategy to "run out the clock" in discovery so that Affiliate Defendants have no opportunity to request supplemental discovery from Texas should its productions prove to be deficient.

Further, although Texas makes much of the fact that it has produced over "211,000 pages of documents" in total including "over 44,000 pages of documents" since the Court's September 1 Order, this repeated emphasis on the number of produced *pages* gives a misleading depiction of Texas's progress. As noted in Affiliate Defendants' prior briefing, the vast majority of Texas's initial production consisted of lengthy, publicly available materials, including approximately 118,000 pages of Medicaid Provider Manuals.

Accordingly, to avoid further prejudice and delay, the Court should compel Texas to provide a "Hit Count" report consistent with the parties' agreed ESI Protocol, *see* Dkt. 130 & 139, and order Texas to complete its productions within 7 days of the Court's Order.

## II.   Texas Should be Compelled to Perform Affiliate Defendants' Requested, Narrowly Tailored Searches of David Maxwell's Custodial Data

Texas continues to assert sweeping claims of privilege that require the dramatic expansion of multiple privileges to justify Texas's withholding of communications between a government

employee and an unrepresented third party. In accordance with the well-established principle that courts must "construe privilege exemptions narrowly" because the "assertion of privilege inhibits the search for truth," this Court should reject Texas's unsupported, blanket claims of privilege. *See City Bank v. Bancinsure, Inc.*, 2012 WL 13019589, at *3 (N.D. Tex. Jan. 23, 2012); *see also Trammel v. U.S.*, 445 U.S. 40, 50 (1980); *In re Santa Fe*, 272 F.3d at 710, 713.

## A.    The Texas Medicaid Investigative Privilege is Not Applicable

Texas's assertion that Affiliate Defendants' Motion "amounts to yet another motion for reconsideration" of the Court's prior privilege rulings misrepresents Affiliate Defendants' arguments regarding the applicability of the Medicaid Investigative Privilege to Affiliate Defendants' requested, narrowly targeted searches in the custodial data of David Maxwell. As Affiliate Defendants emphasized in their Motion, Texas has failed to comply with its discovery obligations regardless of whether the Court reconsiders its prior ruling on the application of the Texas Medicaid Investigative Privilege in federal court, *see* Dkt. 229 at 12-13. The Court determined that the Medicaid Investigative Privilege applies to information "*obtained during Medicaid fraud investigations*." Dkt. 161-7 (emphasis added). The issue here, however, is entirely different: Texas has not sustained its burden of establishing that the Medicaid Investigative Privilege is *per se* applicable to all of David Maxwell's communications with Relator about Affiliate Defendants, because it has not established that these specific communications were for the purpose of furthering a Medicaid fraud investigation—and certainly has not offered any evidence that they were "subpoenaed or compiled" for a Medicaid fraud investigation. *See* Tex. Gov't Code § 531.1021(g) (protecting only "information and materials subpoenaed or compiled by [the office of the inspector general for HHSC] in connection with an audit, inspection, or investigation or by the office of the attorney general *in connection with a Medicaid fraud investigation*[.]") (emphasis added).

4

Tellingly, Texas never states that the communications and documents exchanged between Maxwell and Relator occurred in the course of a Medicaid fraud investigation, as the text of the statute specifically requires. *Id.* Rather, Texas describes the communications as "concern[ing] information related to an investigation of Defendants' provision of services billed to the Medicaid program," Dkt. 241 at 8, and "involving an OAG investigator related to the subject matter of the investigations that preceded Defendants' termination from the Medicaid program." *Id.* at 6. This characterization is a thinly veiled attempt to disguise the true nature of the communications. Notably absent is any reference to a Medicaid fraud investigation at all—a foundational element of the *Medicaid Fraud Investigative Privilege*. Rather, Texas's description of the communications as "related to the subject matter" of unidentified "investigations" that occurred prior to the Medicaid termination makes clear that Texas's sweeping claim of privilege is based on the fact that the communications related to fetal tissue studies, which was a similar subject matter as facts related to the Medicaid terminations. This is further underscored by the metadata provided in Texas's privilege log, as well Relator's descriptions to a third party of Relator's communications with Maxwell. *See* Ex. A at 17 (noting July 2015 communications with subject of email described as "Fw: Fetal tissue quote" and "PP Gulf Coast fetal tissue buyers"); *see* Dkt. 229 at 8 (citing Dkt. 211-1); Dkt. 211-1 at 14 (describing emails where Relator conveyed the substance of Relator's conversations with Maxwell to other non-attorney third parties).

Critically, Texas has not provided evidence (or even asserted) that Maxwell's communications with Relator were part of the Texas HHSC-OIG investigation that culminated in the Medicaid terminations or a Texas OAG investigation in support of Texas HHSC-OIG. This is consistent with Texas OAG statements made closer-in-time to the Maxwell communications, which contemplate a broad range of potential criminal and civil offenses but no allegations of

5

Medicaid fraud. *See* Dkt. 229 at 16; *see also* Ex. B (July 24, 2015 "Request to Examine" from Texas OAG's office to PPST identifying investigation as relating to "possible violations" of Tex. Health & Safety Code ch. 170 (prohibitions on abortion), ch. 171 (abortion requirements), and ch. 245 (additional abortion restrictions and requirements); Tex. Admin Code ch. 25 (healthcare services); Tex. Bus. & Com. Code ch. 17 (deceptive trade practices), and noting "potentially other [violations], relating to possible unlawful trafficking in fetal tissue"). Texas dismisses the letter rulings as "having no applicability to this litigation" since they do not "inform the scope of discovery in litigation or the privileges that may apply in response," Dkt. 241 at 10, but this misses the point: Affiliate Defendants are not offering these administrative decisions as precedent, but as relevant circumstantial evidence undercutting Texas's *post hoc* attempt to re-characterize actions more than seven years after they occurred.

As discussed at length in Affiliate Defendants' Motion, § 531.1021(g) must be applied narrowly and consistent with its "surrounding context." *See Paxton v. Tex. Dep't of State Health Servs.*, 500 S.W.3d 702, 705-06 (Tex. App.-Austin 2016, no pet.). Texas does not engage with *Paxton*'s discussion of the Medicaid Investigative Privilege's legislative history, and thus does not address the statutory scheme in which § 531.1021(g)'s narrow, fact-specific privilege is codified— a subchapter of the Texas code establishing the procedures by which Texas *HHSC-OIG* can subpoena records when conducting an investigation. *Id.* at 706 (emphasizing that § 531.1021(g) must be considered "in the context of OIG's enabling provisions"). Nor does Texas even attempt to reconcile its reading of § 531.1021(g) with the Texas-OAG specific provisions codified in Chapter 36 of the Texas Human Resources Code. *See* Dkt. 229 at 14-15 (explaining that the Texas-OAG Medicaid fraud investigations are governed by separate section of the Texas Code). When the plain language of § 531.1021(g) is read properly and in context, it is clear that Texas's failure

6

to establish that the documents sought were "subpoenaed or compiled" in a Medicaid fraud investigation is fatal to its attempt to claim the Medicaid Investigative Privilege.

**B.  Common Interest Doctrine Does Not Cover Maxwell's Communications with Relator**

Texas effectively concedes that the common interest doctrine does not provide a standalone basis to withhold documents. Dkt. 241 at 19-20. Recognizing the flaws inherent to an application of attorney-client privilege to the communications and documents exchanged between Maxwell, a government attorney, and Relator, an unrepresented private citizen,[2] Texas pivots to claim that the underlying protection here is "work product privilege" because the documents reflect communications "Relator prepared for the State," *see* Dkt. 241 at 10-13.

Texas' argument is flawed for several reasons. Although Federal Rule 26(b)(3) does not require that a document be prepared by an attorney for the privilege to apply, this protection is limited to materials prepared by a party or a party's agent and extends to third parties only if the third party is acting as an established "representative" of the party. *See U.S. v. Nobles*, 422 U.S. 225, 237-39 (1975) *see also U.S. ex rel. Mitchell v. CIT Bank, N.A.*, 2021 WL 4439516, at *4 (E.D. Tex. Sept. 28, 2021) (citing *Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir. 1999)). For attorney work-product protection to apply to communications and documents drafted by Relator and/or exchanged between Relator and Maxwell, Relator (*a private citizen of another state*) would have to have been acting as an agent or representative of the State of Texas, which neither Texas nor Relator have ever claimed is the case, nor could they. *See, e.g.*, *U.S. ex rel. Minge v. TECT Aerospace, Inc.*, 2011 WL 1885934, at *8 (D. Kan. May 18, 2011) ("Communications from the individual Relators to Government agents or attorneys are not shown to be within the protection

---

[2] Because Texas does not offer any arguments in support of its prior assertion of attorney-client privilege, Affiliate Defendants will not address it here and instead refer the Court to the opening brief on this Motion. *See* Dkt. 229 at 19-20; *see also* Dkt. 211-1 at 8-10.

of Rule 26(b)(3)(A)"); *accord U.S. v. Cameron-Ehlen Grp., Inc.*, 2019 WL 6875354, at *2 (D. Minn. Dec. 17, 2019) (ruling that common interest was not appliable to relator's communications in cooperation with the government's criminal investigation and prior to retention of FCA counsel, because there was no underlying privilege); *see generally* Dkt. 239 at 18-21 (citing cases).

Texas' application of work-product protection to these communications is also convoluted and nonsensical. Texas has consistently acknowledged that Maxwell was communicating with a third party when Maxwell exchanged documents and communications with Relator. *See* Dkt. 241 at 6-12 (citing cases about materials communicated to third parties ); Dkt. 240 at 4-6 (same); Dkt. 211-9 (counsel email asserting Medicaid Investigative Privilege and Common Interest/Attorney-Client Privilege in clawback of produced documents reflecting communications between Relator and Maxwell); *see also* Dkt. 229 at 7-8 (describing Texas's assertion of common interest privilege during the parties meet-and-confers). Now, given its assertion of work-product protection over documents created by Relator, Texas is seemingly changing course and taking the position that Relator was not a third party at all, but was somehow acting as an agent or representative of Texas. Texas's briefing does not address this apparent contradiction, nor does it make a meaningful attempt to establish that Relator was an "agent" or "representative" of Texas at the time of the communications.

What is more, Texas' arguments regarding the common interest doctrine continue to overlook two foundational elements of the doctrine: the parties must have a specific "common litigation interest" *at the time of the communication*, *and* the communications at issue must have been made to further that specific common legal interest. *See* Dkt. 162 at 6 (citing *Windsor v. Olson*, 2019 WL 77228, at *9 (N.D. Tex. Jan. 2, 2019)); *see also BCR Safeguard Holding, L.L.C. v. Morgan Stanley Real Est. Advisor, Inc.*, 614 F. App'x 690, 704 (5th Cir. 2015); *Luckenbach*

*Tex., Inc. v. Engel*, 2022 WL 9530041, at \*4 (Oct. 14, 2022) (explaining that parties must share "a common legal interest with respect to the subject matter of the communication" with "a palpable threat of litigation at the time of the communication," and that courts must pay "careful attention . . . to determine that the communication at issue is directly related to their common legal interest" (citations and quotations omitted)). Texas has not explained whether Maxwell and Relator purportedly share a specific "common interest" in the 2015 Medicaid terminations and litigation, or if Texas's assertion of privilege arises from Maxwell and Relator's "common interest" in the eventual prosecution of false claims-based actions against Affiliate Defendants. Critically, however, neither would be a valid reason to withhold the communications at issue.

With respect to the 2015 Medicaid termination, Relator and Maxwell cannot have shared a common legal interest for a simple reason: Relator did not have a *legal* interest in that litigation at all. Relator had no legal standing or particular legal interests at stake in those proceedings, and the "mere fact of cooperation" in an investigation or assistance with litigation is not sufficient to create a common interest. Restatement (Third) of the Law Governing Lawyers § 76; *see also Ferko v. NASCAR*, 219 F.R.D. 403, 406 (E.D. Tex. 2003) (stating that the common interest doctrine should be construed narrowly and extended cautiously," so mere "similar interests do not constitute a common legal interest"); Dkt. 229 at 17-21 (citing cases). Even if that was the case, there is also no evidence before the Court that Maxwell's communications with Relator were in preparation for, or in assistance of, that litigation.

Texas fares no better to the extent that it is relying on a common legal interest between Relator and Maxwell with respect to the claims asserted in this action under the Texas Medicaid Fraud Prevention Act (TMFPA) and False Claims Act (FCA). Texas has not made any showing that, at the time of Relator and Maxwell's communications, Relator *or* Texas was even

contemplating pursuing a TMFPA or FCA case against Defendants, let alone that these communications were made to assist such litigation. The only evidence before the Court regarding Texas OAG's investigation during the time period in which Maxwell and Relator were communicating does not relate to Medicaid fraud or anything arguably resembling a FCA case. Common interest doctrine does not attach simply by virtue of Texas and Relator becoming co-plaintiffs *more than six years* after the communications at issue. Indeed, Texas's cause of action did not even accrue until *years* after the communications at issue. *See* Dkt. 22.

**C.      In the Alternative, the Court Should Order *In Camera* Review**

For the reasons stated above and detailed in Affiliate Defendants' Motion, *see generally* Dkt. 228 & 229, Texas' blanket assertion of privilege over Maxwell's communications with Relator is improper. This Court should order Texas to produce the 13 documents identified as responsive in its briefing. *See* Dkt. 241 at 6. In the alternative, should the Court determine that it needs to review the documents at issue, Affiliate Defendants respectfully request that this Court order Texas to produce those documents to the Court for *in camera* inspection.

<u>**CONCLUSION**</u>

For the foregoing reasons, this Court should grant Affiliate Defendants' Renewed Motion to Compel and order Texas to substantially complete its production of documents responsive to Requests for Production 3, 4, 6, 9-13, 15-18, 24, 33-35, 37-39, and 41-43 within seven (7) days from the entry of an order. This Court should also order Texas to search the custodial data of David Maxwell and to produce within ten (10) days from an entry of an order the 13 documents identified in its briefing as responsive and any other responsive communications between Maxwell and Relator that Texas is currently withholding on the basis of the Medicaid investigative and common interest privileges.

Dated:  November 1, 2022

Respectfully submitted,
ARNOLD & PORTER KAYE SCHOLER LLP

By:    */s/ Tirzah S. Lollar*
Craig D. Margolis
Craig.Margolis@arnoldporter.com
Tirzah S. Lollar
Tirzah.Lollar@arnoldporter.com
Christian Sheehan
Christian.Sheehan@arnoldporter.com
Emily Reeder-Ricchetti
Emily.Reeder-Ricchetti@arnoldporter.com
Megan Pieper
Megan.Pieper@arnoldporter.com
Alyssa Gerstner
Alyssa.Gerstner@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.5000
Fax: +1 202.942.5999

Christopher M. Odell
Texas State Bar No. 24037205
Christopher.Odell@arnoldporter.com
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: +1 713.576.2400
Fax: +1 713.576.2499

Paula Ramer
250 West 55th Street
New York, New York 10019-9710
T: +1 212.836.8474
Paula.Ramer@arnoldporter.com

Ryan Patrick Brown
Texas State Bar No. 24073967
brown@blackburnbrownlaw.com
1222 S. Filmore
Amarillo, TX 79101
Tel: (806) 371-8333
Fax: (806) 350-7716

*Attorneys for Defendants Planned Parenthood
Gulf Coast, Inc., Planned Parenthood of Greater*

*Texas, Inc., Planned Parenthood of South Texas,*
*Inc., Planned Parenthood Cameron County, Inc.,*
*and Planned Parenthood San Antonio, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 1, 2022, the foregoing document was electronically filed with the Clerk of Court using CM/ECF.

*/s/ Tirzah S. Lollar*
Tirzah S. Lollar