# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | |
|---|---|
| United States of America<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Texas<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Louisiana<br>*ex rel.* ALEX DOE, Relator,<br>    Plaintiffs,<br>v.<br>Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc.,<br>    Defendants. | CIVIL ACTION NO. 2:21-CV-00022-Z<br><br><br><br>Date:   November 2, 2022 |

## BRIEF IN SUPPORT OF AFFILIATE DEFENDANTS' MOTION FOR PROTECTIVE ORDER

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Barrington v. United Airlines, Inc.*,
   339 F.R.D. 644 (D. Colo. 2021) ..................................................................................15

*Dondi Props. Corp. v. Comm. Sav. & Loan Ass'n*,
   121 F.R.D. 284 (N.D. Tex. 1988) ..................................................................................6

*Eisai Inc. v. Sanofi-Aventis U.S., LLC*,
   2012 WL 1299701 (D.N.J. Apr. 16, 2012) ....................................................................7

*Giddy Up, LLC v. Prism Graphics, Inc.*,
   No. 3-06-CV-0948-B, 2007 WL 2460646 (N.D. Tex. Aug. 29, 2007) ...................4, 6

*Moore v. Ford Motor Co.*,
   755 F.3d 802 (5th Cir. 2014) .........................................................................................3

*Orthoflex, Inc. v. ThermoTek, Inc.*,
   No. 3:10-CV-2618-D, 2013 WL 3095106 (N.D. Tex. June 20, 2013) ........................3

*Paradigm All., Inc. v. Celeritas Tech., LLC*,
   248 F.R.D. 598 (D. Kan. 2008)......................................................................................4

*Procaps S.A v. Patheon Inc.*,
   12-24356-CIV, 2013 WL 4773433 (S.D. Fla. Sept. 4, 2013)............................4, 6, 8

*Riverkeeper v. Taylor Energy Co.*,
   LLC, 309 F.R.D. 381 (E.D. La. 2015) ........................................................................10

*Roark & Hardee LP v. City of Austin*,
   522 F.3d 533 (5th Cir. 2008) .......................................................................................15

*S.E.C. v. Merrill Scott & Assoc., Ltd.*,
   600 F.3d 1262 (10th Cir. 2010) ....................................................................................3

*Samsung Elec. Am., Inc. v. Yang Kun Chung*,
   321 F.R.D. 250 (N.D. Tex. 2017) .........................................................................4, 6, 7

*In re Seroquel Pross. Liab. Litig.*,
   No. 606MD-1769-ORL-22DAB, 2008 WL 508393 (M.D. Fla. Feb. 21, 2008) ......14

Defendants Planned Parenthood Gulf Coast, Inc. ("PPGC"), Planned Parenthood of Greater Texas, Inc. ("PPGT"), Planned Parenthood South Texas, Inc. ("PPST"), Planned Parenthood Cameron County, Inc. ("PP Cameron County"), Planned Parenthood San Antonio, Inc. ("PP San Antonio") (collectively, "Affiliate Defendants") move pursuant to Paragraph 7 of the Protective Order [ECF 133] for an order "to preserv[e] the designated status of [] disputed information" of Affiliate Defendants' document productions to Relator. Relator has objected to the designation of all documents Affiliate Defendants have produced and designated as "Confidential" that did not contain personal health information ("PHI") or as "Confidential Attorney Eyes Only Information" ("AEO") that did not contain personal information ("PII"). Because Relator has not identified any specific document that they believe to be improperly designated, this Motion addresses these documents by subject-matter categories and corresponding exemplars of each are included in Affiliate Defendants' concurrently filed Motion to Seal.[1]

Blanket objections like Relator's are only permitted if the objecting party can show that the proportion of documents the of producing party has designated as confidential is so high as to suggest that the designations were made in bad faith. But here, at the time of Relator's objection, only 33% of the documents Affiliate Defendants produced have the designations about which Relator complains, and that number has fallen to 24% following the Affiliate Defendants' revision of their designations in light of the Court's October 11 clarifications. This is well below the level that courts have found raises an inference of bad faith. And Relator has not challenged the designations of any specific documents. For these reasons, Affiliate Defendants respectfully ask this Court to enter a protective order to preserve their confidentiality designations.

---

[1] Affiliate Defendants have reached out to Relator about this motion but have not heard back. In the interest of time, Affiliate Defendants are filing this motion without confirmation from Relator if the motion is opposed or unopposed.

4

## BACKGROUND

The Court entered the Protective Order governing this case on July 25, 2022 (ECF 133) and issued an Order on October 11, 2022 that sought "to further clarify" the Protective Order (ECF 214 at 8 ("October 11 Clarifying Order")).  On October 19, 2022, Relator sent an email to Affiliate Defendants objecting to (1) any documents that Affiliate Defendants designated as Confidential that did not contain PHI and (2) any documents that Affiliate Defendants designated AEO that did not contain PII as listed in examples 1-6 of the Protective Order. *See* Ex. 1 at 4 (email chain between Relator and Affiliate Defendants).  Relator also objected to all AEO designations made for documents identifying a certain PPST employee on the grounds that the employee is publicly identified.  *Id.*

At the time of Relator's objection, Affiliate Defendants had produced 31,458 documents to Relator in nine rolling productions, including an October 7, 2022 production *before* the Court's October 11, 2022 Clarifying Order.  Of the 31,458 documents that had been produced at that time, 5,145 (16%) documents were designated "Confidential" that did not contain PHI and 5,376 (17%) documents were designated as AEO that did not contain PII.

Affiliate Defendants met and conferred with Relator on October 24, 2022.  During the meet and confer, Affiliate Defendants explained to Relator that they were revising the confidentiality designations made before the Court's October 11 Order to conform to the Order and would be producing revised designations shortly.  *Id.* at 2.  Affiliate Defendants also agreed, based on information presented by Relator during the meet and confer, to downgrade any documents identifying the PPST employee that received an AEO designation solely on the basis of a reference to her name.  *Id.*  Relator stated that there were other categories of documents that they believed were improperly designated, but did not provide any specific examples of such documents when Affiliate Defendants asked them to do so.  Affiliate Defendants requested that Relator hold their

5

concerns in abeyance until Relator reviewed the revised designations to avoid unnecessary motions practice. *Id.* Relator declined. *Id.*

Defendants have since produced revised designations to address the types of documents challenged by Relator in their October 19 email and the October 24 meet and confer. With these revisions, out of the total universe of 31,458 documents that had been produced as of October 19, only 4,117 (13%) documents were designated "Confidential" that did not contain PHI, and only 3,414 (11%) documents were designated as AEO that did not contain PII.

However, because Relator declined to hold their concerns in abeyance pending receipt of Affiliate Defendants' revised designations, Affiliate Defendants were forced to file this motion by November 2, fourteen days after Relator's October 19 challenge. (ECF 133 ¶ 7).

## LEGAL STANDARDS

"An agreed protective order may be viewed as a contract, and once parties enter an agreed protective order they are bound to its terms, absent good cause to modify or vacate the protective order." *Orthoflex, Inc. v. ThermoTek, Inc.*, No. 3:10-CV-2618-D, 2013 WL 3095106, at *3 (N.D. Tex. June 20, 2013) (internal citationsomitted). "The starting point for interpretation of a protective order lies in its plain language." *S.E.C. v. Merrill Scott & Assoc., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010); *see also Moore v. Ford Motor Co.*, 755 F.3d 802, 806 (5th Cir. 2014) ("Analysis begins with the plain language of the Protective Orders, and the textual interpretation of a court order is ultimately a legal question.") (cleaned up). As the Court has acknowledged, "[t]he case law 'supports the view that the general rule requires a targeted challenge, not a blanket demand to review all documents produced and designated.'" ECF 214 at 2-3 (quoting *Procaps S.A v. Patheon Inc.,* 12-24356-CIV, 2013 WL 4773433 at *8 (S.D. Fla. Sept. 4, 2013)).

For a blanket objection to be justified, the challenging party must demonstrate that the producing party did not act in good faith. *Paradigm All., Inc. v. Celeritas Tech., LLC*, 248 F.R.D.

6

598, 604-05 (D. Kan. 2008). Reliance on the percentage of documents designated in order to show bad faith requires a showing that the non-moving party designated *significantly* more than 50% of its documents to be persuasive. *Procaps S.A.*, 2013 WL 4773433, at *8 (finding a 35% document designation rate failed to justify a blanket challenge on lack of good faith and noting cases that have found a lack of good faith where 80 or 99% of documents were designated).

Where a blanket objection is not justified, objections must be made to specific documents to facilitate negotiations in "an acceptable resolution of them matter." *Giddy Up, LLC v. Prism Graphics, Inc.*, No. 3-06-CV-0948-B, 2007 WL 2460646, at *2 (N.D. Tex. Aug. 29, 2007). Failure to provide specific objections to specific designations frustrates parties' ability to confer on specific issues and resolve them without court intervention, and is cause to deny challenges to the confidential designations. *See Samsung Elec. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 287 (N.D. Tex. 2017).

## RELEVANT PORTIONS OF THE PROTECTIVE ORDER

Paragraph 2 of the Protective Order governs what information or documents may be designated "Confidential Information" or "Confidential Attorney Eyes Only Information."

The "Confidential Information" designation means:

> [T]he document is comprised of trade secrets or *commercial information that is not publicly known and is of technical or commercial advantage to its possessor*, in accordance with Federal Rule of Civil Procedure 26(c)(1)(G), or other information required by law or agreement to be kept confidential, including 'protected health information' as the such term is defined by the Standards for Privacy of Individually Identifiable Health Information, 45 C.F.R. Parts 160 and 164, promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996 ('HIPAA').

Protective Order at 2 (emphasis added).

Confidential documents can be reviewed by "the [receiving] party, if a natural person." Protective Order at 6.

7

The "Confidential Attorney Eyes Only Information" designation means:

> [T]he document is comprised of information that *the producing party deems especially sensitive, which may include, but is not limited to, confidential research and development, financial, technical, marketing, or any other sensitive trade secret information* and Personal Identification Information, which includes: (1) social security numbers of Relator, Planned Parenthood staff, or State employees; (2) any financial account numbers of Relator, Planned Parenthood and/or its staff, and the State and/or its employees; (3) birthdates of Relator, Planned Parenthood staff, or State employees; (4) drivers' license numbers of Relator, Planned Parenthood staff, or State employees; (5) home addresses of Relator, Planned Parenthood staff, or State employees; (6) personal email addresses of Relator, Planned Parenthood staff, or State employees; and (7) the names of non-publicly identified Planned Parenthood employees.

*Id.* at 2 (emphasis added).

Paragraph 7 of the Protective Order outlines the procedure for challenging and preserving the above-identified designations and provides, in relevant part, that:

> A receiving party may challenge a producing party's designation at any time. Any receiving party disagreeing with a designation may request in writing that the producing party change the designation. The parties shall promptly meet and confer and attempt in good faith to dispose of such dispute in accordance with Local Rule 7.l(a). If the parties are unable to reach an agreement through the meet and confer process, the producing party shall be required to move the court for an order preserving the designated status of the disputed information. Failure to file a motion with the Court within fourteen (14) days of the written objection shall terminate any restrictions and nullify any designation of "Confidential Information" or "Confidential Attorney Eyes Only Information" on the use of such information.

*Id.* at 5.

## **ARGUMENT**

Relator's improper reliance on blanket objections to Affiliate Defendants' designations prevents Affiliate Defendants from being able to engage and resolve any designation challenges in good faith. Affiliate Defendants have designated as confidential or AEO a proportion of documents that is reasonable in light of the scope of the production and the claims and defenses in this case, and that is far below levels that courts have found suggest bad faith. To the contrary, Affiliate Defendants made their confidentiality designations in good faith, based on the language

8

of the protective order and available guidance from the Court at the time of the designations. In addition, Relator's October 19 challenge was premature because Affiliate Defendants were in the process of, but had not yet completed, revisions to their designations in light of the Court's October 11 Order. For all these reasons, the Court should enter a protective order preserving Affiliate Defendants' confidentiality designations.

## I. Relator's Blanket Objections Are Not Justified Because Relator Has Not and Cannot Show the Designations Were Made in Bad Faith

As a general rule, a confidentiality challenge must be to specific documents and not sweeping, blanket challenges to all designations. ECF 214 at 4 ("The case law 'supports the view that the general rule requires a targeted challenge, not a blanket demand to review all documents produced and designated.'"); *see also Giddy Up, LLC,* 2007 WL 2460646, at *2. "Otherwise, there is no practical way for the parties to have a meaningful dialogue, as required, about the propriety of the designations." *Procaps SA.,* 2013 WL 4773433, at *7. Blanket objections run afoul of the purpose of the conference requirement written into the Protective Order, because counsel cannot attempt to "resolve issues by agreement or at least narrow and focus the matters in controversy before judicial resolution is sought" when counsel is not given specific objections to discuss. *Dondi Props. Corp. v. Comm. Sav. & Loan Ass'n,* 121 F.R.D. 284, 289 (N.D. Tex. 1988); *see also Samsung Elec. Am., Inc.* 321 F.R.D. at 287 (denying motion to alter the confidential status of disputed information for failing to "properly confer[] as to each item in dispute").

It is only once the challenging party has shown the designations were not made in good faith that a blanket challenge is appropriate. ECF 214 at 5. But when courts "find the number or proportion of designating [sic] to be the dominant factor in determining a lack of good faith by the producing party," the portions designated must be extremely high. *See id.* (collecting cases where

9

in which courts inferred bad faith 80%, 92%, 95%, 90%, 99%, and 79% of documents were designated).

Here, Relator has made no allegation that the designations were made in bad faith beyond their suggestion that the volume of documents designated indicated an improper "prophylactic" use of designations. Ex. 1 at 4 ("[I]t appears that a majority of your production is designated either 'Confidential' or 'Attorney Eyes Only,' with a majority of those being designated 'Attorney Eyes Only.'"). However, this argument fails for several reasons.

First, Relator made clear in their email and during the meet and confer that they were *only* challenging documents designated as confidential that *do not contain* PHI and documents designated as AEO that *do not contain* PII. Relator seems to agree that it is hardly surprising that there would be a fair number of documents in this case containing PHI and/or PII that are legitimately designated as confidential or AEO, respectively. *See also Eisai Inc. v. Sanofi-Aventis U.S., LLC*, 2012 WL 1299701, at *10 (D.N.J. Apr. 16, 2012) (finding that non-moving party's designation of high number of documents is "insufficient basis to warrant modification of the Confidentiality Order as the nature of the allegations in this case necessarily requires the exchange of" large number of confidential documents).

Moreover, as shown in the chart below, the proportion of documents that Affiliate Defendants had produced as of the time of Relator's October 19 challenge that were (1) designated as Confidential but do not contain PHI; or (2) designated as AEO but do not contain PII, were 16% and 17%, respectively, which is significantly lower than the proportions that courts have found suggests bad faith. And once Affiliate Defendants had a reasonable period of time to revise their designations based on the Court's October 11 Order (see Revised Production as of November 1 column), the proportions dropped even more to 13% and 11%, respectively.

10

|  | Production as of October 19 | Revised Production as of November 1[2] |
|---|---|---|
| **Confidential No PHI** | **5,145 (16%)** | **4,117 (13%)** |
| **AEO No PII** | **5,376 (17%)** | **3,413 (11%)**[3] |
| **Public Documents** | **11,285 (35%)** | **14,123 (45%)** |
| Total Number of Documents Produced | 31,458 (100%) | 31,458 (100%) |

These proportions (33% total as of October 19; just 24% as of November 1) are well below the 79%-98% levels cited by this Court and the *Procaps* court as suggesting bad faith. ECF 214 at 5; *Procaps SA.,* 2013 WL 4773433, at *8. It is also below the 35% that the *Procaps* court found failed to justify a blanket challenge. Following the November 1 revision, Relator is able to review 74% of the 31,458 documents, with only 26% of the production designated as AEO.

Relator cannot establish bad faith solely based on the percentage of documents designated. To the contrary, Affiliate Defendants have worked in good faith to comply with the protective order in making their confidentiality designations. Indeed, in an effort to reduce the number of AEO documents, Affiliate Defendants offered to redact certain PII from certain categories of documents. When the Court entered the October 11 Clarifying Order, Affiliate Defendants reviewed their previous confidentiality designations and downgraded: (1) financial or other commercially sensitive documents more than two years old; (2) documents that were designated

---

[2] Affiliate Defendants have produced 73,353 in total documents to date, but Relator's concerns relate only to the 31,458 documents Affiliate Defendants had produced as of Relator's October 19 email. This motion for protective order only discusses the categories of documents designated from the 31,458 set.

[3] Mindful of concerns about Relator's inability to show AEO-designated documents to their client (ECF 214 at 7), Affiliate Defendants have offered to redact certain PII from certain categories documents in order to reduce the number of AEO-designated documents, yet Relator refused. Ex. 2 (Sept 30, 2022 and Oct. 13, 2022 emails). Affiliate Defendants' attempts to reduce the amount of AEO-designated documents is entirely inconsistent with any suggestion of bad faith.

11

solely because they contained cell phone numbers; and (3) documents related to grants for non-security related programs.  And when Relator raised a concern about a PPST employee who they believed had been publicly identified, PPST determined that the employee had in fact been publicly identified and agreed to downgrade any documents that were designated AEO solely because they reflected her name.  This conduct is hardly consistent with bad faith.

The Court should reject Relator's blanket challenge and preserve Affiliate Defendants' designations.

### II.  Affiliate Defendants' Confidentiality Designations Are Consistent with the Protective Order and Should Be Preserved

#### A.  Affiliate Defendants' Confidentiality Designations by Category

In the absence of any challenges to designations of specific documents, Affiliate Defendants describe here the categories of documents they have designated and have provided the Court with examples of documents in each category in a sealed appendix.[4]  Affiliate Defendants expressly reserve all rights to respond to any future, document-specific challenges Relator may make.

Courts, including those in this circuit, have defined "trade secret" and "confidential commercial information" as "information which, if disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained." *Riverkeeper v. Taylor Energy Co.*, LLC, 309 F.R.D. 381, 388 (E.D. La. 2015) (collecting cases). Affiliate Defendants designated various documents in their nine productions before October 19,

---

[4] As noted above, this motion for protective order only discusses the categories of documents designated from the set of 31,458 documents Affiliate Defendants had produced as of Relator's October 19 email.  There are likely other categories of designated documents that have been produced in the additional roughly 42,000 documents Affiliate Defendants have produced *since* Relator's October 19 challenge.

12

2022 as Confidential or AEO under the Protective Order.  Affiliate Defendants designated documents they consider and treat as "especially sensitive" as AEO.  Protective Order at 2.

Although there is some variation among each Affiliate Defendants' documents, the non-PII AEO-designated documents generally fall into the following categories:

      1.    <u>Highly Sensitive Strategic, Programmatic, or Financial Information.</u>  The documents in this category are especially sensitive, non-public information regarding Affiliate Defendants' strategic or programing priorities, including: specific details about: (1) non-public programs and initiatives; and (2) relationships with business partners whose contracts require anonymity or non-disclosure of the business relationship.  Disclosures of this information could cause considerable financial harm to the Affiliate Defendants if it was to be obtained by the general public or by Affiliate Defendants' healthcare provider competitors, because it would impact their ability to retain skilled employees and key vendors and contractors.  Disclosure of certain strategic information in this category could disrupt the Affiliate Defendants' ability to recruit healthcare providers and by extension, their ability to provide the highest level of care to their patients.  For example, PPGC operates health centers in the Greater Houston area and competes with the more than 125 hospitals in the area for medical professionals.  Disclosure of certain highly sensitive strategic material, such as rates that PPGC pays its employees or strategic goals which include hiring plans would harm PPGC's ability to recruit and retain medical staff for its healthcare centers, causing financial and competitive harm.  Though PPGT does not operate facilities in markets with the same level of hospital density, disclosures of this highly sensitive strategic material could also impact PPGT in a similar way to PPGC.  Disclosures of information related to key business partners and/or vendors could lead to the loss of that business partner or vendor, causing Affiliate Defendants financial harm.  Disclosure of this information may also expose the Affiliate

Defendants, their employees, and/or business partners with increased harassment and the risk of personal harm. *See* Ex. 3, A. Curtis Decl. ¶ 9; Ex. 4, S. McKinney Decl. ¶ 9; Ex. 5, P. Barraza Decl. ¶ 9.[5]

    2. <u>Sensitive Real Estate Relationships</u>. The documents listed in this category contain information about how the Affiliate Defendants conduct business and structure their contractual relationships with real estate providers/contractors, including leases and real estate agreements. This includes the identities of certain key construction vendors, especially in markets with limited vendors. The release of this information would cause security risks and financial harm to the Affiliate Defendants if obtained by the general public or by Affiliate Defendants' competitors because information about any real estate agreements, Affiliate Defendants' real estate strategy, or ongoing real estate negotiations could impede the Affiliate Defendants' ability to secure real estate required to support their daily operations as healthcare providers. Additionally, Affiliate Defendants have previously experienced costly delays in construction when the identities of construction contractors, subcontractors, and vendors became public, leading to harassment and threats of violence against the contractors, subcontractors, and vendors. *See* Ex. 3, A. Curtis Decl. ¶ 10; Ex. 4, S. McKinney Decl. ¶ 10; Ex. 5, P. Barraza Decl. ¶ 10.

    3. <u>Internal Financial Information.</u> The documents listed in this category reflect sensitive confidential and proprietary financial information, including the financial performance of the Affiliate Defendants within the past two years, consistent with the October 11 Clarifying Order. ECF 214 at 9. The information contained in these documents is not information

---

[5] Employees of PPST manage the operations of PPSA and PPCC; PPSA and PPCC do not have their own employees. With regards to confidential documents, PPSA and PPCC have the same mission, operations, and business practices as PPST. Therefore, Ms. Barraza provided one declaration on behalf of PPST, PPSA, and PPCC.

that the Affiliate Defendants release to the public during the regular course of business, and the documents are sensitive enough that access to this data is also limited internally. Disclosures of this financial information could cause the Affiliate Defendants financial and competitive harm if obtained by the general public or by any of Affiliate Defendants' healthcare provider competitors, as it would reveal detailed information about the volume and variety of medical services provided, detailed information about the salaries they pay their employees, and information about the projected budgets of Affiliate Defendants. This information could also impact the public opinion of Affiliate Defendants, affecting their place in the market. *See* Ex. 3, A. Curtis Decl. ¶ 11; Ex. 4, S. McKinney Decl. ¶ 11.

Similarly, with some variation among each of the respective Affiliate Defendants' documents, the "Confidential" documents generally fall into the following category:

1. <u>Strategic Programming Information and Business Relationships</u>. These documents contain information that reflects Affiliate Defendants' strategic or programing information and certain business relationships that, while not so sensitive as to rise to the designation of AEO, is still "commercial information that is not publicly known" and is of a commercial advantage to Affiliate Defendants. This includes documents related to how Affiliate Defendants allocate various resources, programs, and initiatives, and documents related to assessments of the programs offered by Affiliate Defendants. This category also includes each Affiliate Defendants' Manual of Medical Standards and Guidelines ("MS&Gs") that detail the policies and procedures for the medical services they provide. This category also includes certain documents describing business relationships that an Affiliate Defendant is contractually obligated to keep confidential. Disclosure of this information could cause financial harm to the Affiliate Defendant at issue, particularly if obtained by its healthcare provider competitors, and could

15

disrupt current systems and disrupt Affiliate Defendants' provision of patient care. Disclosure of certain strategic material could also harm their ability to recruit and retain medical staff for Affiliate Defendants' healthcare clinics and offices, causing financial and competitive harm. Disclosure of this type of information is also likely to expose Affiliate Defendants, their employees, and/or business partners to increased harassment and the risk of personal harm. *See* Ex. 3, A. Curtis Decl. ¶ 13; Ex.4, S. McKinney Decl. ¶ 13; Ex. 5, P. Barraza Decl. ¶ 12.

### B. Affiliate Defendants Safeguard Their Confidential Information

Affiliate Defendants take reasonable measures to protective their especially sensitive information, which includes "confidential research and development, financial, technical, marketing, or any other sensitive trade secret information" from public disclosure during their ordinary course of business. Protective Order at 2. These measures include but are not limited to: (1) limiting the internal access and distribution of confidential information to those who specifically require the information to carry out their duties and responsibilities; (2) password protecting access to certain systems that contain confidential information, including financial systems, human resources systems, and development systems;(3) implementing security procedures, such as password protection for certain financial files; (4) storing the information electronically in secure drives and physical copies in locked filing cabinets and; (5) encrypting files before sending them externally or sending them via a fax machine. *See* Ex. 3, A. Curtis Decl. ¶ 6; Ex. 4, S. McKinney Decl. ¶ 6; Ex.5, P. Barraza Decl. ¶ 6. Affiliate Defendants do not share confidential documents with other Planned Parenthood entities (including other Affiliate Defendants) in their normal course of business. *See* Ex.3 A. Curtis Decl. ¶ 7; Ex. 4, S. McKinney Decl. ¶ 7; Ex. 5, P. Barraza Decl. ¶ 7. Documents designated as AEO are not shared with the public. *See* Ex. 3, A. Curtis Decl. ¶ 7; Ex. 4, S. McKinney Decl. ¶ 7; Ex .5, P. Barraza Decl. ¶ 7.

Affiliate Defendants similarly designated various documents that either "comprised of trade secrets" or comprised of "commercial information that is not publicly known and is of technical or commercial advantage to its possessor" as "Confidential" under the Protective Order. In the normal course of business, Affiliate Defendants take reasonable measures to protect this information from public disclosures similar to the steps used to protect the information designated as AEO and these documents also are not shared with the public. *See* Ex. 3, A. Curtis Decl. ¶¶ 6-7; Ex.4, S. McKinney Decl. ¶¶ 6-7; Ex. 5, P. Barraza Decl. ¶¶ 6-7.

### III. Relator's Challenges to Affiliate Defendants' Confidentiality Designations are Premature

As discussed above, Affiliate Defendants explained to Relator that they were willing to promptly revise their designations in light of the Court's October 11 Clarifying Order, but Relator declined to allow reasonable opportunity to do so before seeking this Court's intervention.. Relator's objections were therefore premature. It is axiomatic that to preserve judicial and party resources, there should be a controversy over the actual designations before there is a challenge to those designations. *See In re Seroquel Pross. Liab. Litig.*, No. 606MD-1769-ORL-22DAB, 2008 WL 508393, at *2 (M.D. Fla. Feb. 21, 2008) (holding that the inclusion of a designation-challenge still requires "a controversy which arises from or involves the documents marked confidential, something more than simply a controversy over the document's status as confidential"). Judicial resources would have been better preserved by allowing the parties to meet and confer to determine there is an actual dispute, rather asking the Court to intervene before Affiliate Defendants could revise their designations consistent with the October 11 Clarifying Order. *See Barrington v. United Airlines, Inc.,* 339 F.R.D. 644, 650 (D. Colo. 2021) (declining to preemptively consider whether a document merits designation prior to production); *see also Roark & Hardee LP v. City*

17

*of Austin,* 522 F.3d 533, 545 (5th Cir. 2008) ("A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required.").

The Court should find Relator's challenge premature, and Affiliate Defendants' designations should be preserved.

## **CONCLUSION**

For the foregoing reasons, Affiliate Defendants respectfully request that the Court enter an order preserving the confidentiality designations at issue.

Dated:  November 2, 2022                         Respectfully submitted,

                                                              ARNOLD & PORTER KAYE SCHOLER LLP

By:   *Tirzah S. Lollar*
       Craig D. Margolis
       Craig.Margolis@arnoldporter.com
       Tirzah S. Lollar
       Tirzah.Lollar@arnoldporter.com
       Christian Sheehan
       Christian.Sheehan@arnoldporter.com
       Emily Reeder-Ricchetti
       Emily.Reeder-Ricchetti@arnoldporter.com
       Megan Pieper
       Megan.Pieper@arnoldporter.com
       Alyssa Gerstner
       Alyssa.Gerstner@arnoldporter.com
       Meghan C. Martin
       Meghan.Martin@arnoldporter.com
       601 Massachusetts Ave, NW
       Washington, DC 20001-3743
       Telephone: +1 202.942.6127
       Fax: +1 202.942.5999

       Paula Ramer
       250 West 55th Street
       New York, New York 10019-9710
       T: +1 212.836.8474
       Paula.Ramer@arnoldporter.com

       Christopher M. Odell
       Texas State Bar No. 24037205
       Christopher.Odell@arnoldporter.com
       700 Louisiana Street, Suite 4000
       Houston, TX 77002-2755
       Telephone: +1 713.576.2400
       Fax: +1 713.576.2499

Ryan Patrick Brown
Texas State Bar No. 24073967
brown@blackburnbrownlaw.com
1222 S. Fillmore
Amarillo, TX 79101
Tel: (806) 371-8333
Fax: (806) 350-7716

*Attorneys for Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, and Planned Parenthood San Antonio*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 2, 2022, the foregoing document was electronically filed with the Clerk of Court using CM/ECF.

*/s/ Tirzah S. Lollar*
Tirzah S. Lollar