

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 2:21-CV-022-Z |
| | § | |
| PLANNED PARENTHOOD | § | |
| FEDERATION OF AMERICA, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is Affiliate Defendants' Motion for Reconsideration or Clarification of Order on Affiliate Defendants' Motion to Compel to Texas ("Motion") (ECF No. 196), filed on September 29, 2022. Having considered the Motion, briefing, and relevant law, the Court **GRANTS** the Motion **IN PART**.

### BACKGROUND

Relator Alex Doe alleges Defendant Planned Parenthood Federation of America, Inc. ("PPFA") and its Texas and/or Louisiana affiliates ("Affiliate Defendants") violated state and federal law by falsely certifying their compliance with Texas and Louisiana Medicaid rules and regulations, and by failing to repay the government millions of dollars of Medicaid funds that they knew or should have known they were obligated to repay. On September 1, 2022, the Court issued its Order (ECF No. 161) on Affiliate Defendants' Motion to Compel the State of Texas (ECF No. 127). The Court held Texas Human Resources Code §§ 531.102(k), 531.1021(g) ("Medicaid Investigative Privilege") applied to Interrogatory Nos. 8 and 10 and Request for Production No. 14. *See* ECF No. 161 at 5–9. The Court also did not compel Texas to amend its responses to Interrogatories 12 and 13 because it determined Texas had properly substantiated its assertion that

responding to the requests would be unduly burdensome. *Id.* at 11–12. Affiliate Defendants now seek reconsideration of the Order.

### LEGAL STANDARD

The Federal Rules of Civil Procedure do not recognize a general motion for reconsideration. *See St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997). But the Fifth Circuit has explained that courts should apply Rule 54(b) when considering a motion for reconsideration. *See Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). "Under Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Id.* (internal marks omitted). "Although the precise standard for evaluating a motion to reconsider under Rule 54(b) is unclear, whether to grant such a motion rests within the discretion of the court." *Dos Santos v. Bell Helicopter Textron, Inc. Dist.*, 651 F. Supp. 2d 550, 553 (N.D. Tex. 2009) (internal marks omitted). "Motions for reconsideration have a narrow purpose and are only appropriate to allow a party to correct manifest errors of law or fact or to present newly discovered evidence." *AMS Staff Leasing, NA, Ltd. v. Associated Contract Truckmen, Inc.*, No. Civ.A.3:04CV1344-D, 2005 WL 3148284, at *3 (N.D. Tex. Nov. 21, 2005) (internal marks omitted). "Such motions are not the proper vehicle for rehashing old arguments or advancing theories of the case that could have been presented earlier." *Arrieta v. Yellow Transp., Inc.*, No. CIV.A.3:05CV2271-D, 2009 WL 129731, at *1 (N.D. Tex. Jan. 20, 2009) (internal marks omitted).

ANALYSIS

## A. Interrogatories 12 and 13 Are Overbroad and Unduly Burdensome

Interrogatories 12 and 13 read:

12. Identify every Texas Medicaid provider that Texas has terminated from Texas Medicaid from 2010 to the present. Your response should state the name of the provider, the reason(s) for the termination, the date of the termination, whether Texas requested or required repayment of any Texas Medicaid dollars that had been paid to the provider, and the amounts the provider returned, if any.

13. For every former Texas Medicaid provider (whether affiliated to a Planned Parenthood Defendant or not) whose participation in Texas Medicaid was terminated from 2010 to the present on the basis that the provider was not qualified to provide medical services under Texas Medicaid, engaged in practices that violated generally accepted medical standards; and/or engaged in misrepresentations about its activity relating to fetal tissue procurements, identify the provider by name, state the date of the termination, describe the principal and material facts that lead to the provider's termination, state whether Texas asked or required the provider to return amounts reimbursed under Texas Medicaid, and state the provider returned, if any.

ECF No. 128-1 at 14–15. Put simply, the requests "span *all* providers of *all* services to *all* 4.3 million individuals enrolled in Texas Medicaid." ECF No. 227 at 7.

The Court previously held Texas need not amend its responses.[1] *See* ECF No. 161 at 11–12. This was because Interrogatory 12 provides no limitations for the type of provider, type of termination, or reason for termination. *Id.* at 11. Additionally, the Texas Health and Human Services Commission ("HHSC") does not maintain data in a form that captures this information. *Id.* at 11–12. Likewise, some of this data would no longer be in existence due to HHSC-OIG retention policies. *Id.* at 12. To that extent, responding to this request would be *impossible* and not merely unduly burdensome. Importantly, Texas provided the declaration of Cheryl Fee, the Case

---

[1] "Other courts have found similar discovery requests burdensome and disproportionate." *First Horizon Nat'l Corp. v. Hous. Cas. Co.*, No. 2:15-CV-2235-SHL-DKV, 2016 WL 5869580, at *9 (W.D. Tenn. Oct. 5, 2016) (collecting cases).

Manager for the Chief Counsel Division within HHSC-OIG, in support of its argument. *Id.* at 12. The Court held Interrogatory 13 was overbroad for essentially the same reasons. *Id.*

Affiliate Defendants urge the Court to reconsider by emphasizing "the importance of the materiality element in False Claims Act litigation." ECF No. 197 at 7 (citing *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176 (2016)). The Court has been aware of this case and accordingly held in its Order that Interrogatories 12 and 13 seek relevant information. ECF No. 161 at 9–10. Thus, the issue is whether the requests are proportional to the needs of the case. The Court held the requests are overbroad because Texas had met its burden in objecting under *Heller v. City of Dallas*, 303 F.R.D. 466 (N.D. Tex. 2014).[2] *Id.* at 11–12. But Affiliate Defendants have not identified any "manifest errors of law." *AMS Staff Leasing*, 2005 WL 3148284, at *3. Instead, Affiliate Defendants boldly argue *no burden* on Texas is "undue" in responding to Interrogatories 12 and 13. *See* ECF Nos. 197 at 9, 257 at 4.

The Court disagrees. Affiliate Defendant's cited authority does not assist in their argument. *See* ECF No. 197 at 8–9. For example, in *Fairholme Funds, Inc. v. Federal Housing Finance Agency*, the party resisting discovery made "only vague assertions" without providing "any details regarding the resources and effort required to produce the requested materials." No. 1:13-CV-1053-RCL, 2019 WL 5864595, at *3 (D.D.C. Nov. 8, 2019). But that is not what Texas has done here. Affiliate Defendants' reliance on *Southern Illinois Laborers' & Employers Health & Welfare Fund v. Pfizer Inc.* is distinguishable for similar reasons. No. 06 C 1818, 2007 WL 4557100, at *5 (N.D. Ill. Dec. 21, 2007) (burdensomeness argument lacked "any evidentiary support in the form

---

[2] *See Heller*, 303 F.R.D. at 490 ("A party resisting discovery must show specifically how each interrogatory or document request is overly broad, unduly burdensome, or oppressive. This requires the party resisting discovery to show how the requested discovery was overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." (internal marks omitted)).

of affidavit or declaration providing specifics" including, among other things, whether the resisting party-maintained records of the documents sought).

Similarly, in *Black Card, LLC v. Visa U.S.A., Inc.*, the court found it important that even though the resisting party did not physically have the documents, prior counsel could "turn over the documents with relative ease and little expense." No. 15-CV-027-S, 2016 WL 7344061, at *3 (D. Wyo. Sept. 12, 2016). Likewise, in *Williams v. C. Martin Co. Inc.*, the court held that requiring the government to review a 26,000-page document production for privilege would not be unduly burdensome because it was "unlikely that a deposition witness will need to review all 26,000 pages" and because "[a]ny concerns regarding privileged information in the document production are significantly reduced, if not eliminated, by the fact that the parties have entered into a protective order which specifically applies to depositions." No. CIV.A. 07-6592, 2014 WL 3095161, at *3 (E.D. La. July 7, 2014). And in *United States ex rel. Poehling v. UnitedHealth Grp., Inc.*, the court reasoned that requiring the resisting party to expend additional resources to revise its privilege log was "a very ordinary aspect of this type of litigation." No. CV 16-8697 MWF (SSX), 2018 WL 11350603, at *7 (C.D. Cal. Oct. 23, 2018). Finally, *United States ex rel. Goodman v. Arriva Medical, LLC* noted that "[a]lthough *Escobar* made clear that a healthcare program's treatment of other billers is relevant to materiality in ordinary false certification cases, bare relevance does not negate risk that such discovery, if granted too broadly, would deteriorate into 'extended mini-trials' regarding each arguable comparator." 471 F. Supp. 3d 830, 845 (M.D. Tenn. 2020) (quoting *First Horizon Nat'l Corp.*, 2016 WL 5869580, at *9).

In sum, Affiliate Defendants have not identified any manifest errors of law. For that reason, the Court finds no reason to correct its ruling. However, Affiliate Defendants are willing to "confer with Texas about reasonably narrowing the interrogatories" and ask the Court to order the parties

to meet and confer in good faith. ECF No. 257 at 4–5. If a responding party properly substantiates its assertion of undue burden, the party "should only answer or respond to the part or extent, if any, of the request that would not involve an undue burden." *Heller*, 303 F.R.D. at 489 (internal marks omitted). Accordingly, the Court hereby **ORDERS** Texas to promptly meet and confer with Affiliate Defendants as to reasonably narrowing the interrogatories.

### B. The Medicaid Investigative Privilege Applies in This Case

The Court held the Medicaid Investigative Privilege applies in this case, relying on the balancing test articulated in *ACLU of Mississippi v. Finch*, 638 F.2d 1336, 1343 (5th Cir. 1981). *See* ECF Nos. 161 at 6, 166 at 3. Affiliate Defendants made no argument as to why the Medicaid Investigative Privilege does not apply in the brief in support of their motion to compel. *See* ECF No. 128. And Affiliate Defendants' reply only argued generally that the federal law of privilege controls in a federal question case involving state law claims. *See* ECF No. 149 at 8–9. Affiliate Defendants now wish to relitigate the *Finch* test. But motions for reconsideration "are not the proper vehicle for rehashing old arguments or advancing theories of the case that could have been presented earlier." *Arrieta*, 2009 WL 129731, at *1. The Court also addressed the Medicaid Investigative Privilege in its order on Affiliate Defendant's second motion to compel. *See* ECF No. 261 at 3–4. The Court will therefore not reconsider the general applicability of the Medicaid Investigative Privilege in this case.

The Court will clarify — however — that it disagrees with Affiliate Defendants' assertion that the Court's ruling "rests heavily on the notion that federal and state law provide the 'same basic privilege.'" ECF No. 257 at 2. The *Finch* test considers two inquiries: (1) whether the fact that courts of Texas would recognize the privilege itself creates good reason for respecting the privilege; and (2) whether the privilege is intrinsically meritorious in the court's independent

judgment. *Finch*, 638 F.2d 1336, 1343 (5th Cir. 1981). The Court analogized the Medicaid Investigative Privilege to the privilege afforded by 31 U.S.C. § 3733(k) under the first prong of the *Finch* test. *See* ECF No. 161 at 7. But the Court explained this first inquiry is "almost always" answered in the negative. *Id.* In other words, the real substance of the *Finch* test goes to the second inquiry — whether the privilege is "intrinsically meritorious." Indeed, co-defendant PPFA conceded that an asserted state-law privilege may be recognized if the privilege is intrinsically meritorious. *See* ECF No. 151 at 5. The Court considered the four factors listed in *Finch* — along with relevant caselaw — in determining the Medicaid Investigative Privilege was intrinsically meritorious. ECF No. 161 at 7–8. Affiliate Defendants have made no argument as to how the Court erred in this analysis. Therefore, the Court remains convinced it did not err.

### C. Texas Must Produce a Document-By-Document Privilege Log

The Court's Order allowed Texas to produce a categorical privilege log in response to Affiliate Defendants' discovery requests. ECF No. 161 at 8–9. Affiliate Defendants seek reconsideration of this ruling — pointing out that parties agreed to produce document-by-document logs. ECF No. 197 at 12 (citing ECF No. 130-1 at 14). Texas does not challenge this request. Accordingly, the Court **ORDERS** Texas to produce a document-by-document log within 14 days of this Order.

CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion **IN PART**.

**SO ORDERED**.

November *4*, 2022

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE