IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION



| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *et al.*, | § § | |
| Plaintiffs, | § § | |
| v. | § § | 2:21-CV-022-Z |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, *et al.*, | § § § § | |
| Defendants. | § | |

## ORDER ON
## MOTION TO COMPEL
## & SHOW CAUSE

Before this Court is Relator's Motion to Compel Production and Appointment of Forensic Examiner to Conduct a Review and Examination of Defendants' Computer Systems and Electronic Data, and for Expedited Consideration ("Motion") (ECF No. 220), filed on October 14, 2022. Having considered the Motion, briefing, and relevant law, the Court will defer ruling on the Motion and **ORDERS** Defendants to show cause why their conduct is not sanctionable.

### BACKGROUND

Relator Alex Doe alleges Defendant Planned Parenthood Federation of America, Inc. ("PPFA") and its Texas and/or Louisiana affiliates ("Affiliate Defendants") violated state and federal law by falsely certifying their compliance with Texas and Louisiana Medicaid rules and regulations, and by failing to repay the government millions of dollars of Medicaid funds that they knew or should have known they were obligated to repay. Relator has filed three other motions to compel against Defendants, which the Court granted. *See* ECF Nos. 153, 184, 215. Relator now asks the Court to order: (1) a forensic examination of Defendants' computer systems, networks,

and databases to identify all responsive documents and sources of ESI[1] that Defendants have failed to produce in response to Relator's discovery request and the Court's orders granting Relator's motions to compel; and (2) Defendants to pay all costs of conducting the forensic examination. ECF No. 220 at 2–3. The Court granted Relator's request for expedited briefing. *See* ECF Nos. 223, 225.

LEGAL STANDARD

Federal Rule of Civil Procedure 37(a)(3)(B) provides that a party seeking discovery may move for an order compelling production against another party when the latter has failed to answer interrogatories under Rule 33 or produce documents requested under Rule 34. *See* FED. R. CIV. P. 37(a)(3)(B)(iii), (iv). "It is well-settled that discrepancies or inconsistencies in the responding party's discovery responses may justify a party's request to allow an expert to create and examine a mirror image of a hard drive." *Schreiber v. Friedman*, No. 15CV6861CBAJO, 2017 WL 11508067, at *5 (E.D.N.Y. Aug. 15, 2017) (collecting cases).

Forensic imaging of computers "is not uncommon in the course of civil discovery." *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008). "[A] third party investigation may be appropriate when the non-moving party fails to initiate a reasonable process to search for, collect and produce responsive ESI." *Belcastro v. United Airlines, Inc.*, No. 17 C 1682, 2019 WL 7049914, at *2 (N.D. Ill. Dec. 23, 2019). The non-moving party "may be required to submit to a forensic exam even if that party has not intentionally withheld" discoverable ESI. *Id.* The Court should consider "whether the responding party has withheld requested information, whether the responding party is unable or unwilling to search for the requested information, and the extent to which the

---

[1] *See* ECF No. 130-1 at 2–3.

responding party has complied with discovery requests." *Wynmoor Cmty. Council, Inc. v. QBE Ins. Corp.*, 280 F.R.D. 681, 687 (S.D. Fla. 2012) (internal marks omitted).

Courts are reluctant to permit forensic imaging "when the request is not proportional to the needs of the case," is "unduly burdensome," or "the information does not go to the heart of the matter." *Tireboots by Universal Canvas, Inc. v. Tiresocks, Inc.*, No. 20 CV 7404, 2022 WL 2316228, at *2 (N.D. Ill. June 28, 2022) (internal marks omitted). But "[c]ourts are more willing to require production where the electronic discovery sought is relevant to the claims and defenses in the suit." *A.M. Castle & Co. v. Byrne*, 123 F. Supp. 3d 895, 900 (S.D. Tex. Aug. 12, 2015) (collecting cases). When a requesting party demonstrates the responding party's failure to produce requested information, "the scales tip in favor of compelling forensic imaging." *Wynmoor*, 280 F.R.D. at 687 (collecting cases). The "ordinary course" is that the responding party must bear the cost of employing the third-party vendor. *Tera II, LLC v. Rice Drilling D, LLC*, No. 2:19-CV-2221, 2022 WL 1114943, at *6 (S.D. Ohio Apr. 14, 2022) (internal marks omitted).

ANALYSIS

A. **Evidence of PPFA's Noncompliance**

Relator argues PPFA's noncompliance is evidenced by its failure to produce several important documents and search the documents of several important custodians. Relator alleges PPFA did not produce the "Planned Parenthood Medical Orientation Manual" ("Manual"),[2] which explains "affiliate operations must comply with PPFA Accreditation Indicators as well as all applicable federal, state, and local laws and regulations," and informs medical directors of the Affiliates of their responsibility to ensure compliance with Medicaid regulations. ECF No. 220 at 7–8. The Manual specifically warns that "[c]laims submitted to Medicare or Medicaid for services

---

[2] Relator obtained a copy of the Manual through Relator's investigation of Defendants. ECF No. 220 at 8 n.1.

rendered by an excluded party are violations of the False Claims Act," and outlines the accreditation process and the function of PPFA departments and divisions. *Id.* at 8. Thus, the Manual "is compelling evidence" of PPFA's control over Affiliate Defendants, PPFA's direct involvement and oversight of Affiliate Defendants' participation in Medicaid, Defendants' knowledge of their obligation to comply with all state and federal Medicaid rules and regulations, as well as potential liability under the False Claims Act. *Id.* at 8–9. Relator further alleges this document demonstrates the inadequacy of PPFA's search terms and methodology. *Id.* at 9.

Relator also mentions the "Medicaid Toolkit," for which "PPFA produced a 2011 version, a 2019 draft, and what appears to be a 2020 final version . . . but no other drafts or communications that relate to the Toolkit, like PPFA's drafting, research, preparation, and distribution of the Toolkit to the [Affiliate Defendants]." *Id.* at 9–10. Likewise, "PPFA only collected documents from one director of this program, not the former directors or deputy directors, nor other individuals involved." *Id.* a 10. Relator alleges PPFA failed to search the documents of other employees extremely likely to have responsive documents — *e.g.*, PPFA's "Senior Director- Affiliate Financial Consulting," "VP Health Outcomes and Performance Optimization," and "Associate Director- Affiliate Clinical Operations Consulting- Business Operations Team."[3] *Id.* at 10–11; *see also* ECF No. 242 at 6–7. Finally, Relator asserts "PPFA's counsel admitted that PPFA did not search or collect documents from PPFA's intranet" or search Google Docs.[4] *See id.* at 11; ECF No. 242 at 5–6.

---

[3] PPFA reviewed documents from current Health Care Investment Program Director Tamara Kramer but did not search documents from other directors from the relevant period (2017–2018). ECF No. 242 at 6–7.

[4] PPFA has since agreed to search and collect documents from PPFA's intranet. *See, e.g.*, ECF No. 236-7 at 12. But this response occurred on October 3, 2022, which came after the September 9, 2022 deadline to comply with the Court's Order. *See id.* at 2; ECF No. 153 at 6.

The Court agrees that the documents mentioned in the Motion should have been produced. Regarding the Manual specifically, the Court finds it relevant and "probative of every issue in this case." ECF No. 153 at 3. That Relator could only obtain a copy through an undercover investigation and not through the nearly 90,000 documents PPFA has produced is telling. ECF No. 214 at 6. PPFA argues "Relator's identification of a single responsive document that was not produced in final form does not come close to warranting the appointment of a forensic examiner." ECF No. 236 at 30. But Relator identifies numerous examples of employees "extremely likely to have responsive documents" for which PPFA did not even search. ECF No. 220. The Court is unconvinced these searches were not "warranted in view of the voluminous discovery already produced from other custodians with similar responsibilities." ECF No. 236 at 19. The Court also disagrees with PPFA's argument that the request to run a search for the more generic terms "Medicaid," "overpa*," and "repay" is "completely divorced from both Relator's Requests for Production and the Court's August 25, 2022 Order." *Id.* at 20. To begin, the Court has never held documents relating strictly to Texas or Louisiana Medicaid are the only relevant documents that must be produced. *See* ECF No. 153 at 3–4. But more fundamentally, there is a clear difference between what should be *searched* and what should ultimately be *produced*. And a failure "to initiate a reasonable process to search for, collect and produce responsive ESI" may justify a third-party investigation. *Belcastro*, 2019 WL 7049914, at *2 (quoting *Procaps S.A. v. Patheon, Inc.*, No. 12-24356, 2014 WL 11498061, at *3 (S.D. Fla. Dec. 30, 2014)).

The Court granted Relator's first motion to compel and held that documents concerning PPFA's knowledge of violations of Texas and/or Louisiana Medicaid rules, its control over Affiliate Defendants, and its obligation to repay the government Medicaid funds received from Texas Medicaid and/or Louisiana Medicaid are relevant and must be produced. *See* ECF No. 153

at 4. The Court granted Relator's second motion to compel against PPFA after the Court determined PPFA was withholding relevant documents. *See* ECF No. 215. And the Court also determined PPFA abused the process of designated materials by using confidential designations in a purely prophylactic manner. *See* ECF No. 214. The position PPFA has taken on appropriate search terms also reflects its unwillingness to reasonably search for responsive documents. Relator's argument rises above "mere skepticism" that PPFA has not produced all relevant information. ECF No. 236 at 17. Relator has identified specific and highly relevant documents that were not produced. And Relator has identified numerous examples of employees likely to have relevant documents for which PPFA did not even search. Relator "has exhausted other less intrusive means of collecting the same information" by bringing these issues to PPFA's attention during the parties' meet-and-confer and by filing two prior motions to compel. *See Tireboots*, 2022 WL 2316228, at *2; ECF No. 220 at 11.

At bottom, PPFA's argument: (1) stresses (and perhaps overstates) how extraordinary of a remedy Relator seeks; (2) complains of Relator's counsel's approach during meet-and-confer; and (3) emphasizes the "nearly 90,000 documents" PPFA has produced. ECF No. 236 at 16. Yet PPFA cannot rely on "the magnitude of their own document production." *United States v. Quebe*, 321 F.R.D. 303, 307 (S.D. Ohio 2017).

### B. Evidence of Affiliate Defendants' Noncompliance

Relator argues Affiliate Defendants should have also produced documents like the Manual and the Medicaid Toolkit, "in addition to responsive documents on the PPFA intranet, ARMS Connect, and the Center for Affiliated Learning, which are undoubtedly within [Affiliate Defendants'] possession, custody, or control." ECF No. 220 at 12. Relator states Affiliate Defendants failed to produce documents from training courses they are required to complete by

managed care organizations reimbursing for Medicaid services. *Id.* Affiliate Defendants similarly limited their search terms by searching only for "Medicaid" in combination with certain terms. *Id.* at 13. Additionally, Affiliate Defendants produced only 18 of the approximately 86,870 files, emails, and attachments for custodian Shelia McKinney, who is COO of Planned Parenthood Greater Texas ("PPGT"). *Id.* Similarly, only 10 documents were produced for the approximately 69,058 documents hit for the search terms for custodian Ken Lambrecht, CEO of PPGT. *Id.* at 13–14. Relator asserts while PPGT's production is particularly inadequate, "the same is true for the other affiliates." *Id.* at 14. Finally, Relator argues "a date trend analysis of all the Affiliates' production received [as of last week] showed that very few emails or documents were produced from 2017, even though that was the year that the Affiliates were terminated from Medicaid." *Id.*

The Court previously held Affiliate Defendants' production was materially deficient because Affiliate Defendants produced "only 1,292 documents (and only 857 emails concerning Medicaid for a nearly twelve-year time period." ECF No. 184 at 4–5. This contrasted with PPFA's production — approximately 75,000 documents and emails at the time — even though PPFA claims it does not directly participate in Medicaid. *Id.* The Court further clarified its order after Affiliate Defendants unsuccessfully argued the order "does not require Affiliate Defendants to produce documents responsive to" Relator's RFP 10 and 11. *See* ECF Nos. 213, 201 at 16. Relator challenged Affiliate Defendants' desired limitations on their production and characterized their brief as "a naked attempt to relitigate the Motion to Compel." ECF No. 204 at 7. At least for the purposes of clarifying the order, the Court deferred on ruling whether Affiliate Defendants complied with the order. *See* ECF No. 213 at 5. The Court stated if Relator believes Affiliate Defendants' compliance with the order is inadequate, the proper course would be to seek sanctions under Rule 37(b)(2)(A). *Id.*

7

## C. Defendants Must Show Cause

The Court has already determined the information Relator seeks is both relevant and proportional to this case. *See, e.g.*, ECF No. 153. The Court also finds the documents mentioned above should have been produced and the identified custodians should have been searched for responsive ESI and/or documents. But the Court will defer on the appointment of a forensic examiner. Accordingly, Defendants are hereby **ORDERED** to show cause as to:

- The extent to which Defendants made mandatory disclosures under Federal Rule of Civil Procedure 26(a)(1)(A);

- The extent to which Defendants put in place a "litigation hold" to ensure the preservation of relevant ESI and/or documents, *see e.g., Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217–218 (S.D.N.Y. 2003);

- Why documents located in ARMS Connect and Center for Affiliate Learning are not within Defendants' "control" for the purposes of Rule 34(a)(1), *see Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 515 (D. Md. 2009) ("Rule 34 'control' would not require a party to have legal ownership or actual physical possession of any documents at issue. Instead, documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action." (internal marks omitted));

- Why Defendants did not search or produce documents from their intranet or Google Docs;

- Why PPFA's Senior Director of Affiliate Financial Consulting and VP of Health Outcomes and Performance Optimization's storage devices were not searched for responsive ESI and/or documents;

- Why PPFA only collected ESI from one director of the Health Care Investment Program;

- Why PPFA searched the ESI of Director of the Affiliate Clinical Consulting-Business Operations Team Terri Trivisonno but did not search the ESI of her direct report, Cherie Stutzman;

- Why Defendants limited their search terms by only searching for "Medicaid" in combination with certain terms — specifically, "Medicaid & Texas OR Medicaid & Louisiana";

8

- Why Affiliate Defendants' searches did not include terms such as "claim," "bill*," "defund," "fraud," "reimburs*," "pay," "pay back," "compliance," "training," "false claims," and "LDH";

- Why Affiliate Defendants did not search the correct web addresses for Texas and Louisiana entities administering Medicaid;

- Why Affiliate Defendants did not search for ESI and/or documents from the PPFA CEOs that post-dated Cecile Richards's tenure as PPFA CEO;

- Why Affiliate Defendants did not search for ESI and/or documents from the CMS Deputy Administrators that post-dated Vikki Wachino's tenure as CMS Deputy Administrator;

- Why only 18 out of 86,870 documents from Sheila McKinney, COO of PPGT were produced — or, in the alternative, why the actual number produced is 25,746, not 18;

- Why only 10 out of 69,058 documents from Ken Lambrecht, CEO of PPGT were produced — or, in the alternative, why the actual number produced is 12,964, not 10;

- Why a date-trend analysis of Affiliate Defendants' production revealed fewer documents produced from 2017, even though this year overlaps with the relevant Texas injunction;

- Why Affiliate Defendants did not produce documents from training courses they are required to complete by managed care organizations reimbursing for Medicaid services;

- How the omissions from Defendant's production complies with this Court's orders, *see* ECF Nos. 153, 184, 213, and 215; and

- If PPFA and Affiliate Defendants have the capacity and coordination necessary to generate a "system map" of *all* on-premise and off-premise sources of ESI within their possession, custody, or control — including servers, e-mail servers, Post Office Protocol (POP) servers, cloud-based systems, and ISP-based devices, to include mobile phones, smart phones, or other personal ESI devices.

Defendants are **ORDERED** to show cause why their conduct should not be sanctioned **on or before Friday, November 11, 2022.**

**SO ORDERED.**

November 8, 2022

_____

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE