# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>*ex rel.* ALEX DOE, Relator, | § <br> § <br> § | |
| THE STATE OF TEXAS,<br>*ex rel.* ALEX DOE, Relator, | § <br> § <br> § | |
| THE STATE OF LOUISIANA,<br>*ex rel.* ALEX DOE, Relator, | § <br> § <br> § <br> § | |
| Plaintiffs, | § <br> § | |
| v. | § <br> § | Civil Action No. 2:21-CV-00022-Z |
| PLANNED PARENTHOOD<br>FEDERATION OF AMERICA, INC.,<br>PLANNED PARENTHOOD GULF<br>COAST, INC., PLANNED<br>PARENTHOOD OF GREATER<br>TEXAS, INC., PLANNED<br>PARENTHOOD SOUTH<br>TEXAS, INC., PLANNED<br>PARENTHOOD CAMERON<br>COUNTY, INC., PLANNED<br>PARENTHOOD SAN ANTONIO,<br>INC., | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | |
| Defendants. | § <br> § | |

## PLANTIFFS' OPPOSITION TO DEFENDANTS' MOTION
## FOR LEAVE TO AMEND ANSWERS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iii

INTRODUCTION AND LEGAL STANDARD ................................................ 1

ARGUMENT ...................................................................................................... 3

I.    Defendants do not have good cause to modify the scheduling order
under Rule 16(a). .................................................................................... 3

    a.    Defendants lack an adequate explanation for their failure to
timely move to amend because Defendants knew the facts
underlying all their proposed amendments when they filed their
initial Answer. ................................................................................. 4

        i.    Defendants admit that they were aware of the facts
underlying the public-disclosure bar, government-action
bar, and government-intervention bar when they first
answered the Complaints. ....................................................... 4

        ii.    Defendants were also aware of the facts underlying their
proposed limitations and repose defenses when they
answered the Complaints. ....................................................... 7

        iii.    Defendants were aware of the facts underlying the
proposed defense under the excessive fines provision of
the Texas Constitution. .......................................................... 9

        iv.    Defendants' failure to assert claims they knew about at
the time they filed their initial Answers is fatal to
Defendants' motion. ............................................................... 10

    b.    Defendants' proposed amendments are unimportant because
most of the proposed amendments are unnecessary. ............................ 10

    c.    Allowing Defendants to amend their Answers will result in
prejudice to Plaintiffs. .................................................................. 12

    d.    Plaintiffs oppose any continuance due to Defendants'
inexcusably delayed motion to amend their Answers. ........................... 13

II.    Alternatively, this Court should deny Defendants leave to amend
under Rule 15(a). .................................................................................... 14

    a.    The Court should decline to grant Defendants leave to amend
because their request is unduly delayed. ............................................ 14

b.      The Court may infer that Defendants acted with dilatory motive........ 16

c.      Defendants' proposed amendments to add defenses are futile. ............. 17

        i.      Defendants' proposed amendments to add defenses under
                the statute of limitations and statute of repose are futile. ......... 17

        ii.     Defendants' proposed amendments to add defenses of
                public-disclosure, government-action, and government-
                intervention bars are also futile........................................ 18

        iii.    Defendants' proposed amendment to add a defense under
                the excessive fines provision of the Texas Constitution is
                futile........................................................................... 20

d.      Plaintiffs will suffer undue prejudice if Defendants are granted
        leave to amend. ............................................................... 22

CONCLUSION ................................................................................. 22

## TABLE OF AUTHORITIES

<u>Cases</u>

*Addington v. Farmer's Elevator Mut. Ins. Co.,*
    650 F.2d 663, 666 (5th Cir. 1981) ....................................................................... 3

*Agar Corp. v. Multi-Fluid Inc.,*
    No. H–95–5105, 1998 WL 425474 (S.D. Tex. Apr. 17, 1988).................... 15, 16

*Allied Chem. Corp. v. Mackay,*
    695 F.2d 854 (5th Cir. 1983) ............................................................................ 11

*Barrett v. Indep. Ord. of Foresters,*
    625 F.2d 73 (5th Cir. 1980) .............................................................................. 15

*E.E.O.C. v. Service Temps Inc.,*
    679 F.3d 323 (5th Cir. 2012) ................................................................... 4, 6, 10

*Howard v. Medicredit, Inc.,*
    No. 3:17-CV-3224-D, 2018 WL 3752366 (N.D. Tex. Aug. 8, 2018)............. 2, 10

*In re Xerox Corp.,*
    555 S.W.3d 518 (Tex. 2018) ............................................................................ 21

*Layfield v. Bill Heard Chevrolet Co.,*
    607 F.2d 1097 (5th Cir. 1979) .......................................................................... 15

*Lopez v. Reliable Clean-Up & Support Servs., LLC,*
    No. 3:16-CV-2595-D, 2018 WL 3609271 (N.D. Tex. July 27, 2018) .... 2, 4, 6, 10

*Pennington v. Singleton,*
    606 S.W.2d 682 (Tex. 1980) ...................................................................... 20, 21

*Razmzan v. Wal-Mart Stores, Inc.,*
    No. 4:16CV771-ALM-KPJ, 2017 WL 1654074 (E.D. Tex. Mar. 6, 2017) ........ 13

*Rosenzweig v. Azurix Corp.,*
    332 F.3d 854 (5th Cir. 2003) ........................................................................... 15

*Sabre, Inc. v. Lyn-Lea Travel Corp.,*
    No. Civ.A. 3:96-CV-2068R, 2003 WL 21339291
    (N.D. Tex. June 5, 2003) ........................................................................... 15, 17

*Shofner v. Shoukfeh,*
    30 F.4th 414 (5th Cir. 2022) ........................................................................ 2, 10

*Smith v. EMC Corp.,*
    393 F.3d 590 (5th Cir. 2004) ........................................................................ 3, 14

*STMicroelectronics, Inc. v. Motorola, Inc.,*
    307 F.Supp.2d 845 (E.D. Tex. 2004) ............................................................ 6, 10

*Sustainable Modular Mgmt., Inc. v. Travelers Lloyds Ins. Co.,*
    No. 3:20-CV-1883-D, 2021 WL 4822017 (N.D. Tex. Oct. 15, 2021) .................. 4

*Sw. Bell Tel. Co. v. City of El Paso,*
    346 F.3d 541 (5th Cir. 2003) ..................................................................... 1, 2, 3

*Vanderbilt Mortg. & Finance, Inc. v. Flores,*
    692 F.3d 358 (5th Cir. 2012) ........................................................................... 20

*Wimm v. Jack Eckerd Corp.,*
    3 F.3d 137 (5th Cir. 1993) ......................................................................... 16, 17

## **Statutes**

31 U.S.C. § 3731 ................................................................................................. 17

La. Rev. Stat. § 46:439.1 ..................................................................................... 17

Tex. Hum. Res. Code. § 36.104 ........................................................................... 17

Tex. Hum. Res. Code. § 36.113 ...................................................................... 6, 11

## INTRODUCTION AND LEGAL STANDARD

Defendants were aware of the relevant facts underlying every proposed amendment to their Answer at the time they filed their initial Answers on May 20, 2022. Defendants even admit that they knew of the facts underlying most of their proposed amendments when they moved to dismiss the Complaints on February 14. But now—on the eve of the close of discovery, with depositions scheduled to take place within the next several weeks, and only two months before the deadline for dispositive motions—Defendants seek to add six defenses to their Answers. Briefing on this motion will not even be completed until November 22, a mere *eight days* before the close of discovery. Such timing will no doubt prejudice Relator and the State of Texas.

Defendants cannot meet the threshold requirement to demonstrate "good cause" to modify the Court's scheduling order under Rule 16(b). Rule 16(b) "governs amendment of pleadings once a scheduling order has been issued by the district court.*" Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (citations omitted). "Rule 16(b) provides that a scheduling order 'shall not be modified except upon a showing of good cause and by leave of the district judge.'" *Id*. (citations omitted). "The good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Id*. (citations omitted). Accordingly, Defendants "must show good cause for not meeting the deadline before the more liberal standard of Rule 15(a) will apply." *Id*. (citations omitted). To determine good cause, the Court considers four factors: "(1)

1

the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Id.* (citations omitted).

Defendants meet none of these factors. Defendants lack any explanation for the delay in requesting leave to amend, despite knowing the facts underlying every proposed amendment at the time they filed their initial Answers. Defendants admit that they knew of the facts underlying the public-disclosure bar, government-action bar, and what they refer to as the "government-intervention" bar when they moved to dismiss. Defendants were also aware of relevant facts underlying their remaining proposed amendments of statute of limitations, statute of repose, and the prohibition on excessive fines under the Texas Constitution prior to answering Texas's and Relator's Complaint. This Court has repeatedly held that failure to assert defenses or claims known at the time a pleading was filed constitutes ground to deny leave to amend. *Lopez v. Reliable Clean-Up & Support Servs., LLC*, No. 3:16-CV-2595-D, 2018 WL 3609271 (N.D. Tex. July 27, 2018); *Howard v. Medicredit, Inc.*, No. 3:17-CV-3224-D, 2018 WL 3752366 (N.D. Tex. Aug. 8, 2018); *Shofner v. Shoukfeh*, 2017 WL 3841641 (N.D. Tex. Apr. 7, 2017). Defendants' proposed amendments are also not important. Allowing Defendants to amend at this late date will prejudice Relator and Texas and a continuance will not cure such prejudice.

Defendants should not be permitted leave under 15(a), even if Defendants could demonstrate "good cause" under Rule 16(b). "Rule 15(a) requires a trial court to grant leave to amend freely[.]" *Smith v. EMC Corp.,* 393 F.3d 590, 595 (5th Cir. 2004)

(citations omitted). The Fifth Circuit "examines five considerations to determine whether to grant a party leave to amend a complaint" under 15(a): "1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment". *Id.* (citations omitted). Defendants' motion is unduly delayed because Defendants were aware of the facts underlying their amendments when they filed their initial Answers. And because Defendants have been aware of these facts since at least May 2022 (if not when they were served with the Complaints in January 2022), this Court can infer that Defendants have acted with dilatory motive. Defendants' proposed amendments are also futile.

The "decision to grant or to deny a motion for leave to amend lies within the sound discretion of the trial court" and is subject to review only for abuse of discretion. *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981). Relator and Texas thus request that this Court deny Defendants' motion for leave to file amended answers.

## ARGUMENT

### I.   Defendants do not have good cause to modify the scheduling order under Rule 16(a).

Defendants cannot satisfy Rule 16(a) because Defendants cannot meet *any* of the factors required to establish "good cause" sufficient to modify a scheduling order. *See Sw. Bell*, 346 F.3d at 546 (citations omitted) (factors include: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the

availability of a continuance to cure such prejudice."). "The court considers the four factors holistically and 'does not mechanically count the number of factors that favor each side.'" *Sustainable Modular Mgmt., Inc. v. Travelers Lloyds Ins. Co.*, No. 3:20-CV-1883-D, 2021 WL 4822017, at *3 (N.D. Tex. Oct. 15, 2021) (citing *E.E.O.C. v. Service Temps Inc.*, 679 F.3d 323 (5th Cir. 2012)). "The 'good cause' standard focuses on the diligence of the party seeking to modify the scheduling order." *Id.* at *2 (citations omitted). "Mere inadvertence on the part of the movant is insufficient to constitute 'good cause.'" *Id.* (citations omitted).

### a. Defendants lack an adequate explanation for their failure to timely move to amend because Defendants knew the facts underlying all their proposed amendments when they filed their initial Answer.

Defendants were aware of the facts underlying every proposed additional defense at the time they answered the Complaints on May 20—*five months* before Defendants sought to add those amendments to their Answers. This factor alone allows this Court to deny Defendants' motion. *See Lopez*, 2018 WL 3609271, at *4 (finding that good cause was absent due solely to the fact that the party possessed information sufficient to support amendments at the time). This Court should thus find that Defendants lack good cause to modify the scheduling order.

### i. Defendants admit that they were aware of the facts underlying the public-disclosure bar, government-action bar, and government-intervention bar when they first answered the Complaints.

Defendants admit that much of the information that they seek to add to their Answers was known when they filed their initial Answers on May 20, 2022. But Defendants insist that the reason they never amended their Answers was because

4

the deadline to amend had passed by the time they filed their Answers. That is not true. Defendants' deadline to answer after the Court's ruling on the motions to dismiss was May 13, 2022, the same day as the original amendment deadline, Dkt. 72, but they failed to file their answer by that deadline. After Relator noted the default several days later, Dkt. 73, Defendants sought an extension and requested that their answer deadline be further delayed, *well after the amendment deadline they agreed to* in the original scheduling order, until after the Court ruled on their forthcoming motion for reconsideration of the motion to dismiss order. Dkt. 74; *see also* Dkt. 76. The Court denied that request and ordered Defendants to file their answers on May 20, 2022. Dkt. 78, 80, 81. Further, in June, Defendants filed a motion to extend the schedule of the case by four months, but specifically *did not ask* to extend the answer amendment date. Dkt. 107-1, *see also* Dkt. 107. If Defendants had been concerned about the amendment deadline passing or not being extended, or if that deadline had kept them from amending their Answers as they wanted to, they would have voiced those concerns at that time, not months later right before the close of discovery.

This explanation also ignores Defendants' own admission: They were aware of several of the defenses they now seek to assert as early as February 14, 2022—over eight months ago—the date Defendants filed their Motions to Dismiss. *See* Dkt. 226 at 2 ("Defendants seek to add the affirmative defenses first raised in their Rule 12 motions to dismiss," including the public-disclosure bar, government-action bar, and

government-intervention bar."); *id*. at 10.[1] Defendants should not thus be permitted to file an amended answer over eight months after they knew the facts underlying these proposed defenses. This Court has found that parties lacked "good cause" to amend a scheduling order where "at the time defendants filed their answer, they were aware of the facts on which they now rely to support their motion to amend[.]" *Lopez*, 2018 WL 3609271, at *6.

Defendants offer no reason why they did not include these defenses in their initial Answers, and therefore cannot demonstrate "good cause." *See, e.g., Service Temps Inc.*, 679 F.3d at 333 (affirming finding that there was not "good cause" to amend scheduling order where party could not "explain the delay" for failing to meet deadline in scheduling order); *STMicroelectronics, Inc. v. Motorola, Inc.*, 307 F.Supp.2d 845, 851 (E.D. Tex. 2004) (declining to find "good cause" to allow party to amend disclosures after the scheduling order's deadline and noting that it "cannot allow parties to ignore its orders, deadlines, and pretrial practices without any

---

[1] Defendants argue that they raised a defense based on the "government-intervention bar" in their combined motion to dismiss. Dkt. 226 at 2, 10. Defendants provide no details as to what constitutes "government intervention bar", nor is there any explicit "government-intervention bar" argument contained in the briefing on Defendants' motion to dismiss. *See* Dkt. 49 (filed Feb. 14, 2022); Dkt. 65 (filed Mar. 25, 2022). Relator speculates that Defendants are referring to a different component of the "government-action bar," which bars actions "based on allegations or transactions that are the subject of a civil suit or an administrative penalty proceeding in which the state is already a party," unless such dismissal is opposed by the attorney general. Dkt. 71 at 33 (citing Tex. Hum. Res. Code. § 36.113(a) & (b)). For ease of reference, Relator incorporates this definition when referring to a "government-intervention bar," though Defendants have not confirmed that this is the definition to which they are referring. In any event, Defendants' own admission reflects that they had the knowledge available to them to assert any alleged "government-intervention bar" at the time they moved to dismiss.

explanation."). Defendants do not claim that any information provided in discovery was new and that did not have it before. They simply chose not to include these defenses in their initial Answers.

### ii. Defendants were also aware of the facts underlying their proposed limitations and repose defenses when they answered the Complaints.

Defendants were aware of the facts underlying its proposed statute of limitations and statute of repose affirmative defenses at least at the time they answered the Complaints. The "new" information provided in discovery was only a small clarification of the existing record as already set forth in Relator's Complaint. Defendants thus could have included these affirmative defenses when they filed their initial Answers, and Defendants have failed to explain why they were not included then.

The videos created by Relator—leading to Defendants' termination from Medicaid relevant to this litigation—were publicly released in 2015. Defendants knew about these videos, the legal investigations that resulted, and the subsequent proceedings to terminate Defendants from the Texas and Louisiana Medicaid programs in 2015. Relator's Complaint also notes that Relator shared information relating to Defendants' liability with state and federal law enforcement in 2015 and before filing the Complaint. Dkt. 1 at ¶¶ 5, 12, 26, 29, 79, 111. Relator's Complaint contains allegations about the illegal activities of Defendants dating back to 2010. Dkt. 1 at ¶¶ 87, 89, 102. Defendants admit Relator's Complaint makes claims

beginning in 2010. Dkt. 226 at 9. Defendants were therefore aware of those underlying facts when they answered the Complaints on May 20.

And Defendants' filings show that they were aware of the relevant time periods involved here. In their motion to dismiss, Defendants argued that Relator was barred from litigating this case under government-action bar, arguing that the government knew the facts necessary to bring this action at least by the time the states moved to terminate Defendants from their Medicaid programs—Louisiana on September 15, 2015 and Texas on October 15, 2015. Dkt. 49 at 4-5. Defendants acknowledged in their Answer the existence of Relator's video footage from 2015. Dkt. 81 at ¶¶ 79, 81. Defendants have also admitted that they received Medicaid termination notices from Texas and Louisiana on September 15, 2015 and October 19, 2015, respectively. Dkt. 81 at ¶ 5. These allegations show that Defendant knew facts underlying any statute of limitations or repose affirmative defense when it answered Relator's Complaint.

The only "new" information that Defendants claim they have learned since the filing of their Answers is that "Relator provided information and evidence concerning the material facts and allegations set forth in Relator's Complaint to the State of Texas [and Louisiana] *beginning in* May 2015 and including on February 5, 2021 before filing Relator's Complaint." Dkt. 226-1 Exh. 11 at 24-26.[2] But these facts were directly pleaded in Relator's Complaint. Dkt. 1 at ¶¶ 5, 12, 26, 29, 79, 111. And as

---

[2] Contrary to Defendants' argument, Relator did not admit that Relator provided all material facts beginning in 2015. Dkt. 226 at 2. Rather, Relator admitted that material facts were provided *beginning* in 2015 and on February 5, 2021 before the filing of the Complaint.

noted, Defendants were aware of facts involved beginning in 2010 *before* Defendants filed their Answers and were therefore aware of the facts relevant to any limitations or repose defense.

### iii.   Defendants were aware of the facts underlying the proposed defense under the excessive fines provision of the Texas Constitution.

Defendants asserted an affirmative defense under the U.S. Constitution's Excessive Fines Clause in their initial Answers, and now propose to add a defense under the Texas Constitution's prohibitions on excessive fines due to Plaintiffs' claim under the Texas Medicaid Fraud Prevention Act ("TMFPA"). The facts underlying the companion state constitutional claim are identical. Relator's Complaint contains claims under the False Claims Act ("FCA") TMFPA, and the Louisiana Medical Assistance Programs Integrity Law ("LMAPIL"). Defendants' Answer addressed all three of these statutes, including TMFPA. *See, e.g.,* Dkt. 81 at ¶¶ 11, 12, 55. In Relator's prayer for relief, Relator requested "that the State of Texas be awarded damages" under the TMFPA—which Defendants then denied in their Answer. Dkt. 1 at ¶ 19; Dkt. 81 at ¶ 19. And Relator's Civil Cover Sheet listed $500,000,000.00 as the monetary demand. Dkt. 1 at 73. Defendants thus had the facts underlying their proposed defense under the Texas Constitution's guarantee against excessive fines when they were served with Relator's Complaint.

Likewise, in their Answer to the Complaint filed by the State of Texas, Defendants acknowledged the TMFPA claims brought by Texas. *See, e.g.,* Dkt. 80 at ¶¶ 1, 10, 18, 39, 40, 42 (filed May 20, 2022). Defendants were accordingly aware of

the potential for civil remedies and penalties under the TMFPA when Texas's Complaint was served on them.

### iv. Defendants' failure to assert claims they knew about at the time they filed their initial Answers is fatal to Defendants' motion.

Defendants have not established the requisite "good cause" under Rule 16(b) because they failed to pursue the proposed amendments at the time they filed their initial Answers, despite knowing facts sufficient to do so. See *Lopez*, 2018 WL 3609271, at *3-*6. This Court has repeatedly found a lack of good cause when the party already knew information sufficient to include it in an earlier pleading but failed to do so. *See id.; Howard*, 2018 WL 3752366, at *3 ("Where courts decline to grant leave to amend due to a lack of diligence, it is usually because the party retained the records related to the desired amendment.") (emphasis omitted); *Shofner*, 2017 WL 3841641, at *2 (declining to grant leave to amend where party "had access to all . . . [relevant] medical records early in the case, yet waited more than a year after filing suit to first hire expert witnesses to review the records.").

Defendants do not even attempt to explain their failure to assert these proposed defenses when they filed their Answers, and thus do not have "good cause" to amend the scheduling order. *See, e.g., Service Temps Inc.*, 679 F.3d at 333; *STMicroelectronics, Inc.,* 307 F. Supp. 2d at 851.

### b. Defendants' proposed amendments are unimportant because most of the proposed amendments are unnecessary.

Almost all of Defendants' proposed defenses are not affirmative defenses. Defendants admit that the statute of repose, public-disclosure bar, government-

10

action bar, and government-intervention bar are not affirmative defenses under Rule 8. Ds.' Mot. to Amend, Dkt. 226 at 8 & n.9. Thus, to assert these as a defense to liability, Defendants can make these arguments before trial, so long as it is in a way to avoid prejudice or unfair surprise to Plaintiffs. *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855-56 (5th Cir. 1983). Defendants know this, as they also argue that the public-disclosure bar and government-action bar are already preserved because Defendants raised them in their motions to dismiss. *See* Ds.' Mot. to Amend, Dkt. 226 at 10.[3] These defenses cannot be considered important to add to the Answers when Defendants concede it is unnecessary. Likewise, Defendants' proposed defense under the prohibition against excessive fines in the Texas Constitution does not constitute an affirmative defense under Rule 8.

The only remaining proposed amendment that is considered an affirmative defense under Rule 8 is the statute of limitations. But this amendment cannot be "important" where Defendants had sufficient knowledge of facts to assert this alleged defense in their initial Answers but failed to do so. *See* Sections I.a.iii, II.a

---

[3] Defendants also allege that it preserved the arguments related to the so-called "government-intervention bar," but Defendants have not explicitly raised such an argument. The briefs in support of Defendants' combined motion to dismiss discuss only the public-disclosure and government-action bars but make no mention of a "government-intervention" bar. Dkt. 49, 65. As noted above, Plaintiffs assume that Defendants are referring to a different component of the "government-action bar," which bars actions "based on allegations or transactions that are the subject of a civil suit or an administrative penalty proceeding in which the state is already a party," unless such dismissal is opposed by the attorney general. Dkt. 71 at 33 (citing Tex. Hum. Res. Code. § 36.113(a) & (b)). *See supra* note 1. If that is indeed the defense to which Defendants are referring, Defendants admit that they already preserved this argument.

Defendants' unexplained delay ultimately concedes that the proposed statute of limitations defense is unimportant.

### c. Allowing Defendants to amend their Answers will result in prejudice to Plaintiffs.

Relator and Texas will be prejudiced by the granting of Defendants' motion. Defendants' motion comes five months after Defendants filed their initial Answers, in which Defendants had sufficient knowledge to assert all proposed defenses. Briefing on Defendants' motion will not be completed until November 22, a mere *eight days* before discovery closes on November 30. There is precious little time to consider whether additional discovery will be necessary—much less completely *new* discovery—because of Defendants' proposed amendments, even if this Court acts immediately. Plaintiffs will no doubt be prejudiced by this poor timing. Because many depositions are scheduled to occur throughout November, if Defendants' motion is granted after these depositions take place, further questioning after these depositions might be necessary. This will require more expense and may require further Court intervention. If Plaintiffs must prepare or respond to further discovery requests because of these untimely proposed amendments, the cost of this litigation will increase.

Defendants argue that Plaintiffs were somehow aware of its proposed statute of limitations and statute of repose defenses (and therefore could not be prejudiced by Defendants' amendments), Dkt. 226 at 12, but Defendants only mentioned the statute of limitations in a response to a motion to compel in complaining about the timeframe for documents to search, and the Court agreed with Relator in pointing

12

out that any defense based on the statute of limitations had already been waived. Dkt. 184 at 4; Dkt. 180 at 5. At that point, it was abundantly clear to Defendants that they had failed to plead this defense and the Court would not recognize it, yet Defendants still waited over a month before filing the instant motion to amend.

This distinguishes this case from *Razmzan v. Wal-Mart Stores, Inc.*, No. 4:16CV771-ALM-KPJ, 2017 WL 1654074 (E.D. Tex. Mar. 6, 2017). There, Defendants raised their statute of limitations defense in their motion to dismiss and in a motion for leave. *Id.* at *3. And unlike here, the defendant in *Razmzan* filed its amended Answer several months before the deadline for amended pleadings, and thus did not need to satisfy the "good cause" standard to modify the scheduling order, the consideration here. *See id.* at *3.

### d. Plaintiffs oppose any continuance due to Defendants' inexcusably delayed motion to amend their Answers.

Defendants have already attempted to delay this case due to a reluctance to comply with appropriate discovery, resulting in this Court granting several motions to compel. While trial is not scheduled until April 2023, discovery is set to close on November 30, 2022 and the deadline for dispositive motions is less than a month later, on December 27. *See* Dkt. 192. If discovery is delayed due to Defendants' inexcusably delayed request to amend, it will inevitably delay the dispositive motion deadline and likely trial (to allow this Court sufficient time to decide any dispositive motions before the trial date). As already noted, Defendants were aware of the facts underlying all proposed amendments at the time they filed their initial Answers on May 20. *See* Sections I.a, II.a. A continuance will not cure the prejudice to Plaintiffs

but would in fact increase prejudice. Plaintiffs have expended significant resources to litigate the case on the schedule the parties agreed to and that the Court ordered. A continuance would increase expenses of litigation that Plaintiffs will have to bear due to Defendants' delay in asserting these proposed defenses.

## II.   Alternatively, this Court should deny Defendants leave to amend under Rule 15(a).

"Rule 15(a) requires a trial court to grant leave to amend freely[.]" *Smith,* 393 F.3d at 595 (citations omitted). The standard of Rule 15(a) applies only if Defendants can show good cause, but they cannot. That said, Defendants also cannot satisfy the requirements under 15(a). The Fifth Circuit "examines five considerations to determine whether to grant a party leave to amend a complaint" under 15(a): "1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment." *Id.*

### a. The Court should decline to grant Defendants leave to amend because their request is unduly delayed.

While Rule 15(a) does not impose a time limit "for permissive amendment, at some point, time delay on the part of a [party] can be procedurally fatal." *Smith*, 393 F.3d at 595 (cleaned up). "In such a situation, the [moving party] bears the burden of showing the delay to be due to oversight, inadvertence, or excusable neglect." *Id.* (cleaned up). "[I]n exercising its discretion to deny leave to amend a complaint, a trial court may properly consider (1) an 'unexplained delay' following an original [pleading], and (2) whether the facts underlying the amended [pleading] were known

14

to the party when the original complaint was filed." *Matter of Southmark Corp.*, 88 F.3d 311, 315 (5th Cir. 1996) (citations omitted). This Court has made clear that "undue delay may bar amendment if the underlying facts are known at the time the [pleading] was filed." *Sabre, Inc. v. Lyn-Lea Travel Corp.*, No. Civ.A. 3:96-CV-2068R, 2003 WL 21339291, at 5 (N.D. Tex. June 5, 2003) (citing *Southmark*, 88 F.3d at 316). "Liberality in pleading does not bestow on a litigant the privilege of neglecting [its] case for a long period of time." *Southmark*, 88 F.3d at 315-16 (citations omitted).

Courts in this Circuit routinely deny leave to amend where, as here, a party's proposed amendments were known at the time before the filing of their pleading. *See Barrett v. Indep. Ord. of Foresters*, 625 F.2d 73, 75 (5th Cir. 1980) (affirming denial of leave to amend where party waited nearly 10 months after the initial pleading to request leave to amend and there "appear[ed] to be no matters that appellant proposed to add which could not have been raised initially."); *Layfield v. Bill Heard Chevrolet Co.*, 607 F.2d 1097, 1099 (5th Cir. 1979) (affirming denial of leave to amend where "all of the facts relevant to the proposed amendment were known to the appellant at the time she filed her original complaint."); *Agar Corp. v. Multi-Fluid Inc.*, No. H–95–5105, 1998 WL 425474, *3 (S.D. Tex. Apr. 17, 1988) (denying leave to amend where "many of the proposed counterclaims are based on previously asserted affirmative defenses, which have been alleged from the outset of this litigation."). And here, "the motion to amend hardly presents any new information." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854 (5th Cir. 2003). Defendants "give no viable explanation, however, for failing to raise these counterclaims at an earlier date." *Agar,* 1998 WL

15

425474, at *3. The Court should accordingly decline to allow Defendants to amend to add these defenses.

As discussed in Section I.a.i, Defendants admit that they were aware of the facts underlying the public-disclosure bar, government-action bar, and so-called government-intervention bar on February 14, 2022, the date they moved to dismiss, and before the filing of Defendants' Answers on May 20. Likewise, Defendants were aware of the relevant facts underlying the proposed defenses under the statute of limitation and statute of repose. *See* Section I.a.ii. Defendants were further aware of the facts underlying their proposed excessive fines defense under the Texas Constitution at the time they answered the Complaints. *See* Section I.a.iii. Defendants have not explained why they did not assert these defenses at the time they answered the Complaints. Defendants' delay in asserting these defenses is thus fatal to Defendants' motion.

### b. The Court may infer that Defendants acted with dilatory motive.

The Fifth Circuit has held that seeking amendment when the amending party knew the underlying facts at the time the pleading was filed—such as here—supports an inference of dilatory motive. *See Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139-40 (5th Cir. 1993) (upholding trial court's finding of bad faith and dilatory motive where party sought to amend despite knowledge of the facts underlying the amendment at the time the action was filed.); *Agar*, 1998 WL 425474, at *3 (citing *Wimm*, 3 F.3d 141-42) ("Bad faith and dilatory motive may be inferred when the plaintiff or defendant was aware of the underlying facts at the outset of the action but delayed

16

inexplicably in bringing the claim or defense, making amendment improper even if leave to amend was sought in advance of the deadline for amending the pleadings."). "In such a case, where the movant first presents a theory difficult to establish but favorable and, only after that fails, a less favorable theory, denial of leave to amend on the grounds of bad faith may be appropriate." *See Wimm*, 3 F.3d at 141 (citations omitted). "Bad faith may bar amendment if the movant was aware of certain facts but failed to plead them in order to gain a tactical advantage." *Sabre*, 2003 WL 21339291, at *5 (citations omitted). This Court can thus infer that Defendant acted with dilatory motive when it failed to assert these defenses—of which Defendants had knowledge—when Defendants filed their initial Answers.

### c. Defendants' proposed amendments to add defenses are futile.

#### i. Defendants' proposed amendments to add defenses under the statute of limitations and statute of repose are futile.

The FCA, TMFPA, and LMAPIL all have the same limitations and repose provisions: claims must be brought by a private person at the later of (1) six years from the date of violation, or (2) three years after the date when facts material to the right of action are known or reasonably known by the government officials with responsibility to act under the relevant law, but (3) actions must be brought within ten years. 31 U.S.C. § 3731(b) (FCA), Tex. Hum. Res. Code § 36.104(b) (TMFPA), La. Rev. Stat. § 46:439.1 (LMAPIL). The limitations period for the TMFPA applies only "[i]f the state declines to take over the action." Tex. Hum. Res. Code § 36.104(b). Texas did intervene here, and the TMFPA limitations and repose provisions do not apply.

17

In any event, the limitations and repose provisions had not run when Relator filed his Complaint. In discovery, Relator stated: "Relator provided information and evidence concerning the material facts and allegations set forth in Relator's Complaint to the State of Texas [and Louisiana] beginning in May 2015 and including on February 5, 2021 before filing Relator's Complaint." Dkt. 226-1 Exh. 11 at 24-26. Relator provided this information beginning in May 2015 and all material facts were provided by February 5, 2021 before the case was filed. Because Relator's Complaint was filed on February 5, 2021, the statute of limitations bars none of the claims. Defendants' proposed limitations and repose defenses are thus futile.

### ii. Defendants' proposed amendments to add defenses of public-disclosure, government-action, and government-intervention bars are also futile.

This Court found that neither the public-disclosure, government-action, nor "government-intervention" bars apply here when it denied Defendants' motion to dismiss, and discovery since then has not changed the facts underlying Defendants' proposed defenses.

This Court found that Relator's claims are not barred by the public-disclosure bar, applying the stricter summary judgment standard. Dkt. 71 at 23-29. In so holding, the Court applied the Fifth Circuit's three-part test:

> First, a court must ask "whether there has been a public disclosure of allegations or transactions." [*US. ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168,] at 173 [(5th Cir. 2004)]. Second, the court asks "whether the qui tam action is based upon such publicly disclosed allegations." *Id*. Third, the Court asks "if so, whether the relator is the original source of the information." *Id*. The first two steps are often combined "because it allows the scope of the relator's action in step two to define the 'allegations or transactions' that must be publicly disclosed

18

in step one." *US. ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322,327 (5th Cir. 2011).

Dkt. 71 at 23-24. This Court found that Relator based neither of theory of recovery on public disclosures. *Id*. at 26-27 (Relator "does not base the false-certification theory on any prior public disclosures, and that "Relator's public-disclosure theory survives the summary judgment standard applied here.") ("Relator does not base the reverse-false claims theory on prior public disclosures."). Finally, this Court held that Relator qualifies as an "original source." *Id*. at 27-29.

Defendants argue that the government-action bar and "government-intervention" bar apply to Relator's TMFPA claims, but these alleged defenses fail. As to the government-action bar, this Court held that, because "Relator is an 'original source' of the information at issue," Relator is "exempt from TMFPA's 'government-action' bar." Dkt. 71 at 34. Accordingly, Relator's TMFPA claims are not barred by the government action bar. Likewise, a government-action bar defense based on the intervention of the government is futile. As noted in Section I.a and note 1, Defendants did not assert any explicit "government-intervention bar" in their motion to dismiss, but Defendant appears to be referring to a different component of the "government-action bar" that bars actions where a government has intervened in some cases. This component of the "government-action bar" bars actions "based on allegations or transactions that are the subject of a civil suit or an administrative penalty proceeding in which the state is already a party," unless such dismissal is opposed by the Attorney General. Dkt. 71 at 33 (citing Tex. Hum. Res. Code. § 36.113(a) & (b)). This Court held that this provision of the "government-action bar"

19

does not apply because "the Attorney General of Texas opposes dismissal based on TMFPA § 36.113(b)." *Id.* at 34 (citations omitted). Defendants' "government-intervention bar" defense is therefore futile.

### iii.   Defendants' proposed amendment to add a defense under the excessive fines provision of the Texas Constitution is futile.

"Under the Texas Constitution, a fine becomes constitutionally excessive only in an extraordinary case in which the fine becomes so manifestly violative of the constitutional inhibition as to shock the sense of mankind." *Vanderbilt Mortg. & Finance, Inc. v. Flores*, 692 F.3d 358, 373 (5th Cir. 2012) (citations omitted). "The wide latitude the state has in imposing fines is exceeded and denies due process only where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *Id.* (citations omitted). "A primary consideration in determining whether a fine is excessive is whether it is fixed with reference to the object it is to accomplish." *Id.* (citations omitted). "Generally, prescribing fines is a matter within the discretion of the legislature." *Pennington v. Singleton*, 606 S.W.2d 682, 690 (Tex. 1980).

Civil penalties and remedies provisions like those in TMFPA have been held not to violate the excessive fines clause of the Texas Constitution. *See Pennington*, 606 S.W.2d 682. For example, the Texas Deceptive Trade Practices Act—which has a similar public purpose to the TMFPA and contains a treble damages provision—has been upheld by the Texas Supreme Court in an excessive-fines challenge. The Court explained:

> DTPA's treble damages provisions is to encourage privately initiated consumer litigation, reducing the need for public enforcement. Probably

> the greatest obstacle to private consumer litigation is the high cost, in terms of money and time, that must be expended by the plaintiff. The small amount involved in the typical consumer claim does not justify these high costs of litigation. Recognition of this disincentive to sue may even encourage wrongful trade practices by some sellers. The legislature has provided for extra damage recovery so that consumers will have incentive to pursue their claims.

*Id*. "Another purpose of liability in excess of actual damages is to deter violations of the Act." *Id*. "Although liability for treble damages is harsh when imposed upon a seller who is not found to have made misrepresentations knowingly, we are unable to say that liability for unknowingly made misrepresentations goes beyond reasonableness in furthering the Act's purposes." *Id*.

TMFPA has a similar purpose to the DTPA: "[T]he Texas Medicaid Fraud Prevention Act is a powerful tool for targeting fraud against the Texas Medicaid program and securing the program's integrity." *In re Xerox Corp.*, 555 S.W.3d 518, 525 (Tex. 2018). "The statute imbues the attorney general with broad investigative and enforcement authority and—via qui tam provisions—deputizes private citizens to pursue a TMFPA action on the government's behalf." *Id*. "When multiple violations are aggregated, the potential financial exposure under Section 36.052(a) could be staggering." *Id*. at 526. Because the TMFPA and DTPA have nearly identical purposes, *Pennington* means that the TMFPA is very likely to be upheld against a constitutional excessive-fines challenge under the Texas Constitution. In fact, it is even likelier because the Texas Supreme Court has held that the TMFPA does not even involve damages but rather civil penalties. *Xerox*, 555 S.W. 3d at 527-30. Defendants' proposed amendment to add the defense of excessive fines is thus futile.

**d. Plaintiffs will suffer undue prejudice if Defendants are granted leave to amend.**

Defendants admit that they waited months to add defenses after the facts underlying those alleged defenses were known to Defendants. As discussed in Section I.c, Plaintiffs will suffer prejudice if the motion is granted. Plaintiffs should not suffer because Defendants strategically waited to move to amend at this late date.

## CONCLUSION

Plaintiffs respectfully request that the Court deny Defendants' motion for leave to amend their Answers.

Respectfully submitted.

/s/ Heather Gebelin Hacker
Heather Gebelin Hacker
Texas Bar No. 24103325
Andrew B. Stephens
Texas Bar No. 24079396
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
(512) 399-3022
andrew@hackerstephens.com
heather@hackerstephens.com

***Attorneys For Relator***

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN E. COWLES
Deputy Attorney General for Civil Litigation

22

/s/ Raymond Charles Winter
RAYMOND CHARLES WINTER
Chief, Civil Medicaid Fraud Division
Texas Bar No. 21791950

AMY S. HILTON
Assistant Attorney General
General Litigation Division
Texas Bar No. 24097834

Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 / Fax (512) 320-0667
Raymond.Winter@oag.texas.gov
Amy.Hilton@oag.texas.gov

***Attorneys for State of Texas***

**CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2022, this document was electronically filed and served via the Court's CM/ECF system.

/s/ Heather Gebelin Hacker