**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| United States of America | § | |
| | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| | § | CIVIL ACTION NO. 2:21-CV- |
| | § | 00022-Z |
| The State of Texas | § | |
| | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| | § | November 11, 2022 |
| | § | |
| The State of Louisiana | § | |
| | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| Planned Parenthood Federation of America, Inc., | § | |
| Planned Parenthood Gulf Coast, Inc., Planned | § | |
| Parenthood of Greater Texas, Inc., Planned | § | |
| Parenthood South Texas, Inc., Planned Parenthood | § | |
| Cameron County, Inc., Planned Parenthood San | § | |
| Antonio, Inc., | § | |
| | § | |
| Defendants. | § | |
| | § | |

**<u>AFFILIATE DEFENDANTS RESPONSE TO</u>**
**<u>NOVEMBER 8, 2022 SHOW CAUSE ORDER</u>**

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

SPECIFIC RESPONSES ................................................................................................... 2

I.   Affiliate Defendants Timely Served Initial Rule 26 Disclosures and Supplemented
Those Disclosures As Additional Information Was Discovered ...................................... 2

II.   Each Affiliate Defendant Retained All Relevant Documents and Communications ....... 3

III.   Affiliate Defendants Have Searched For Responsive Documents Located in ARMS
Connect and Center for Affiliate Learning, and None Exist ............................................. 4

IV.   Relator Has Not Alleged Deficiencies Related to Google Docs, and Relator Agreed
that PPFA (Not Affiliate Defendants) Would Produce Intranet Documents .................... 5

V.   Affiliate Defendants Have Not Limited their Productions to Search Terms for
"Medicaid" in Combination with Certain Terms ............................................................... 5

VI.   Affiliate Defendants' Comprehensive Search Terms Targeted Information
Responsive to Plaintiffs' First RFPs and Minimized "False Hits" ................................... 7

VII.   Affiliate Defendants' Inclusion of Incorrect Web Domains in their Search Terms
Was an Inadvertent and Harmless Error ......................................................................... 10

VIII. Affiliate Defendants Have Produced or Will Produce Affiliate Defendants'
Communications with PPFA (including PPFA CEOs) Responsive to Relator's
Requests ........................................................................................................................ 10

IX.   Affiliate Defendants Have Searched for and Produced Responsive CMS Data,
Without Limitation to Vicki Wachino's Tenure as CMS Deputy Administrator ............. 11

X.   PPGT Has Produced Over 27,000 Sheila McKinney Documents .................................. 12

XI.   PPGT Has Produced Nearly 13,000 Ken Lambrecht Documents .................................. 13

XII.   Affiliate Defendants Have Used the Same Data Collection and Production
Methods Across All Relevant Years, and Produced Roughly Equal Numbers of
Documents for 2017 as Other Years .............................................................................. 13

XIII. Relator Did Not Request Production of "Training Courses" by Managed Care
Organizations and if Such Documents Exist, They Were Captured by Affiliate
Defendants' "Medicaid" Productions ............................................................................ 14

XIV. Affiliate Defendants Have Complied With, and in Many Instances Gone Above
and Beyond, Requirements Set Out in this Court's Orders and the Federal Rules ......... 15

XV.   It is Burdensome for Affiliate Defendants to Generate a "System Map" as the Court
Suggests, and the Court's Suggested "System Map" Requires Data Specifically
Excluded from the Parties' ESI Agreement ................................................................... 19

CONCLUSION ................................................................................................................ 20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*BancPass, Inc. v. Highway Toll Admin., LLC,*
2016 WL 4031417 (W.D. Tex. July 26, 2016) ........................................................17

*Chen-Oster v. Goldman, Sachs & Co.,*
285 F.R.D. 294 (S.D.N.Y. 2012) ............................................................................15

*Enslin v. Coca-Cola Co.,*
2016 WL 7042206 (E.D. Pa. June 8, 2016) ...........................................................15

*Fisher v. Ciba Specialty Chem. Corp.,*
2007 WL 987457 (S.D. Ala. Mar. 30, 2007) ..........................................................16

*Kaneka Corp. v. JBS Hair, Inc.,*
2012 WL 12941120 (N.D. Tex Oct. 19, 2012) ..................................................7, 19

*Moss v. Princip,*
2017 WL 2879694 (N.D. Tex. June 1, 2017) ..........................................................19

*O'Donnell/Salvatori Inc. v. Microsoft Corp.,*
339 F.R.D. 275 (W.D. Wash. 2021) ........................................................................16

*Palmer v. Cognizant Tech. Solutions Corp.,*
2021 WL 3145982 (C.D. Cal. Jul. 9, 2021) ...........................................................17

*Penn Eng'g & Mfg Corp. v. Peninsula Components, Inc.,*
2022 Wl 254926 (E.D. Pa. Jan. 26, 2022) .............................................................16

*Prasad v. George Washington Univ.,*
323 F.R.D. 88 (D.D.C. 2017) ..................................................................................15

*Reinsdorf v. Skechers USA, Inc.,*
296 F.R.D. 604 (C.D. Cal. 2013) ...............................................................15, 17, 18

*Rivas v. Greyhound Lines, Inc.,*
2016 WL 11464796 (W.D. Tex. Jan. 11, 2016) .........................................................7

*Rostain v. Trustmark Nat'l Bank,*
2020 WL 6550501 (N.D. Tex. Nov. 6, 2020) ..........................................................17

*Sinegal v. Merti Energy Co.,*
2010 WL 695806 (W.D. La. Feb. 24, 2010) ............................................................19

*Treppel v. Biovail Corp.,*
233 F.R.D. 363 (S.D.N.Y. 2006) ............................................................................15

**Other Authorities**

Fed. R. Civ. P. 26 ..........................................................................................1, 2, 3, 15

Fed. R. Civ. P. 34 .....................................................................................................15

Defendants Planned Parenthood Gulf Coast, Inc. ("PPGC"), Planned Parenthood of Greater Texas, Inc. ("PPGT"), Planned Parenthood South Texas, Inc. ("PPST"), Planned Parenthood Cameron County, Inc. ("PP Cameron County"), Planned Parenthood San Antonio, Inc. ("PP San Antonio") (collectively, "Affiliate Defendants") file this response to the Court's November 8, 2022 Order to Show Cause ("Show Cause Order").

## INTRODUCTION

Throughout this case, Affiliate Defendants have acted in good faith and consistent with their obligations under the Federal Rules of Civil Procedure.  In the face of increasingly unreasonable demands by Plaintiffs (particularly Relator), Affiliate Defendants have made every effort to work cooperatively with Plaintiffs to resolve the parties' disagreements about discovery matters.  Where those efforts were unsuccessful (often because Relator refused to meaningfully participate in the meet and confer process), the Court has been required to resolve the disputes. And where the Court has resolved a dispute in favor of Plaintiffs, Affiliate Defendants have promptly complied with the Court's orders.  There is no lawful basis to impose sanctions on Affiliate Defendants here, nor is there any basis for Relator's extraordinary demand for an invasive forensic evaluation.

Affiliate Defendants respond below to the specific questions posed by the Court.  As set further detailed herein, Affiliate Defendants have:

- Served timely Rule 26 initial disclosures and supplemental Rule 26 disclosures;

- Taken measures to ensure ESI and other relevant documents are preserved for the duration of this litigation;

- Produced over 147,000 documents responsive to Plaintiffs' discovery requests, including 27,850 documents for custodian Sheila McKinney and 13,808 documents for Ken Lambrecht;

- Searched the portions of the ARMS Connect and Center for Affiliate Learning ("CAL") platforms accessible to Affiliate Defendants for responsive documents;

- Searched for and produced all nonprivileged documents in the data of 28 custodians that hit on the standalone term "Medicaid";

- Produced, or will produce in short order, Affiliate Defendants' custodians' non-privileged communications with PPFA (including PPFA CEOs other than Cecille Richards);

- Searched for and produced responsive CMS data, without limitation to Vicki Wachino's tenure as CMS Deputy Administrator; and

- Used the same data collection and production methods across all relevant years and produced a similar number of documents for 2017 as other years.

If the Court were to consider sanctions even after reviewing this comprehensive filing, Affiliate Defendants request that the Court hold an evidentiary hearing to ensure that any sanctions decision is based on a complete and accurate factual record.

## SPECIFIC RESPONSES

## I.   Affiliate Defendants Timely Served Initial Rule 26 Disclosures and Supplemented Those Disclosures As Additional Information Was Discovered

Affiliate Defendants' initial Rule 26 disclosures, served on March 9, 2022, disclosed several witnesses who may have discoverable information, described the categories and locations of documents that may be used to support Affiliate Defendants' defenses, and noted that subparts 26(a)(1)(A)(iii) and (iv) are not applicable here.  *See* Ex. 1.  As required by Rule 26, Affiliate Defendants promptly supplemented their initial disclosures as they became aware of additional

witnesses likely to have discoverable information that Affiliate Defendants may use to support their claims or defenses. *See* Ex. 2 (Aug. 25 Supplement); Ex. 3 (Oct. 6 Supplement); Ex. 4 (Nov. 8 Supplement). Affiliate Defendants' disclosures fully satisfy their obligations under Rule 26(a)(1)(A).

## II.    Each Affiliate Defendant Retained All Relevant Documents and Communications

Each Affiliate has established a litigation hold to ensure the preservation of ESI and other documents relevant to this litigation. PPGC and PPGT implemented litigation holds during the Medicaid exclusion litigation in Texas and Louisiana that remain in effect to this day. *See* Ex. 5 at ¶ 7 (PPGC Curtis Decl. ); Ex. 6 at ¶¶ 7-9 (PPGT McKinney Decl.). These specifically required the preservation of all documents and ESI relating to Medicaid health care services and participation in fetal tissue donation, among other topics. Ex. 5 at ¶ 5 (PPGC Curtis Decl.); Ex. 6 at ¶ 7 (PPGT McKinney Decl.). Out of an abundance of caution, both PPGC and PPGT have issued supplemental litigation holds specific to this case, reminding staff likely to have relevant records to retain all documents, communications, correspondence, and any other materials relating to or referencing a wide array of potentially relevant topics. *See* Ex. 5 at ¶¶ 5-6 (PPGC Curtis Decl.); Ex. 6 at ¶ 10 (PPGT McKinney Decl.). PPGC issued its supplemental litigation hold on February 18, 2022, and PPGT issued its supplemental litigation hold on May 20, 2022.[1] *See* Ex. 5 at ¶¶ 5-6 (PPGC Curtis Decl.); Ex. 6 at ¶ 10 (PPGT McKinney Decl.).

---

[1] All PPGT emails, ESI, and documents are retained indefinitely unless manually deleted or destroyed, and employees under a litigation hold are not permitted to manually delete or destroy any emails, ESI, or other documents. *See* Ex. 6 at ¶ 4 (PPGT McKinney Decl.). PPGT has been operating under different and overlapping litigation holds since 2013, and emails, ESI, and other documents relevant to this matter have been preserved pursuant to litigation holds since at least October 28, 2015. *Id.* at ¶¶ 5-10.

While PPST did not alert its staff of a litigation hold for this specific case due to inadvertent error, PPST has since done so and confirmed that all of the custodians in this case retained all potentially relevant documents. *See* Ex. 7 at ¶¶ 10, 15 (PPST Barraza Decl.).[2] Further, all PPST email communications are automatically retained indefinitely and the "deleted emails" folder was part of the data collected for Affiliate Defendants' electronic discovery production. *See id.* at 9-11; *see also* Ex. 8 at ¶¶ 5-8 (PPST Shelby Decl.).

## III.   Affiliate Defendants Have Searched For Responsive Documents Located in ARMS Connect and Center for Affiliate Learning, and None Exist

Relator's Sixth RFP requested "[a]ll documents and communications concerning ARMS Connect and the Center for Affiliated Learning concerning Medicaid, Texas Medicaid, and/or Louisiana Medicaid." *See, e.g.*, Ex. 9. As Affiliate Defendants informed Relator on October 3, Affiliate Defendants conducted a reasonable inquiry and search of the portions of the secure web-based platform ARMS Connect and the secure web-based platform Center for Affiliated Learning (CAL) accessible to Affiliate Defendants, and determined that there were no documents responsive to Relator's request. Affiliate Defendants use ARMS Connect and CAL to access training materials, and none of the training materials on these platforms concern Medicaid. Following the Court's Show Cause Order, Affiliate Defendants confirmed that no responsive documents exist through a second, identical search for the standalone term "Medicaid" on the portions of ARMS Connect and the Center for Affiliated Learning platforms available to Affiliate Defendants. Ex. 7 at ¶ 4 (PPST Barraza Decl.). Relator's speculative assertion that responsive documents exist lacks evidentiary support.

---

[2] The relevant PPST custodians are also subject to multiple litigation holds, and their emails, documents, and ESI remain on PPST servers. *See* Ex. 7 at ¶¶ 8-14 (PPST Barraza Decl.). Even though the litigation hold was not initially issued, the relevant custodians believed there was a hold in place and retained all potentially relevant documents. *Id.* at 8.

**IV.     Relator Has Not Alleged Deficiencies Related to Google Docs, and Relator Agreed that PPFA (Not Affiliate Defendants) Would Produce Intranet Documents**

Relator has not alleged any "Google docs" deficiencies as to Affiliate Defendants' productions.  *See* Dkt. 220 at 11-12 (concern related to Google docs directed at PPFA only). Moreover, Affiliate Defendants do not themselves maintain any intranets.  Accordingly, to the extent this provision of the Show Cause Order applies to Affiliate Defendants, Affiliate Defendants presume that the Court is referring to production of documents from PPFA's intranet.

Affiliate Defendants have not searched for or produced documents from PPFA's intranet because Relator represented to Affiliate Defendants that Relator did not expect them to do so. Relator's counsel—on the same day Relator filed the motion seeking a forensic examination— indicated that Relator did not expect Affiliate Defendants to produce documents from PPFA's intranet so long as, once PPFA produced those documents, Affiliate Defendants confirmed that they have or had access to the documents.  *See* Dkt. 237 at 13-14 (explaining the parties' agreement).[3]  PPFA produced these documents earlier this week; Affiliate Defendants will promptly review them and certify that Affiliate Defendants have access to the documents.

**V.      Affiliate Defendants Have Not Limited their Productions to Search Terms for "Medicaid" in Combination with Certain Terms - Specifically, "Medicaid & Texas OR Medicaid & Louisiana"**

Affiliate Defendants have not imposed any limitations on their search for the term "Medicaid."  Rather, utilizing the standalone term "Medicaid," Affiliate Defendants have produced over 139,000 documents (family complete) from the custodial files of 28 custodians. Affiliate Defendants' search does not include any limiting terms.  *See* Dkt. 213 (Court order noting Affiliate Defendants' efforts "to produce all documents, plus family members, that hit on the term

---

[3] Relator has not disputed this agreement.  *See* Dkt. 242.

'Medicaid' from the now 28 custodians.'"); *see also* Dkt. 237 at 6-7 (noting production of "more than 60,000 documents hitting on the search term 'Medicaid'" collected from more than 28 different custodians); Dkt. 209 (describing Affiliate Defendants' agreement to "produce all non-privileged documents and communications that contain[] the word 'Medicaid'" in Affiliate Defendants' custodial data); Dkt. 207 (same) Dkt. 201 (same).

If the Court is requesting additional information regarding why Affiliate Defendants did not *initially—i.e.,* prior to this Court's September 20 Order—use the standalone search term "Medicaid," Affiliate Defendants previously determined that the standalone term caused a substantial number of "false" hits that have nothing to do with this case (like documents related to COVID-19 and employment-related information). *See* Dkt. 177 at 11; Dkt. 237 at 10. For this reason, Affiliate Defendants originally used the search term "Medicaid" in conjunction with other terms, with the goal of narrowing their production to documents actually responsive to Plaintiffs' requests for production and relevant to this case, resulting in a production of approximately 6,000 documents (and more than 175,000 pages) of documents. Affiliate Defendants shared their search terms with Relator, and Relator did not raise any specific concerns about the terms. *See* Dkt. 237, Ex. A at ¶ 3 (Lollar Decl.); Dkt. 237 at Ex. Q (email to Plaintiffs' counsel attaching search terms).

Affiliate Defendants' considered judgment about which terms were most likely to identify relevant documents (and efforts to minimize irrelevant documents) is the sort of decision parties must make every day in discovery; that the Court subsequently determined that a broader search was appropriate does not mean that Affiliate Defendants' prior approach is sanctionable. *See, e.g. The Sedona Principles, Third Ed.: Best Practices, Recommendations & Principles for Addressing Electronic Doc. Prod.*, 19 Sedona Conf. J. 1, Cmt. 11, 164 (2018) ("A responding party may satisfy its good faith obligations to produce relevant electronically stored information by using technology

and processes such as sampling, searching, or the use of selection criteria."); *Kaneka Corp. v. JBS Hair, Inc.*, 2012 WL 12941120, at *1 (N.D. Tex Oct. 19, 2012) (noting that a party's discovery conduct is not sanctionable if the opposing party's conduct is "a response to a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action") (citation omitted); *Rivas v. Greyhound Lines, Inc.*, 2016 WL 11464796, at *4 (W.D. Tex. Jan. 11, 2016) (explaining that "[a] court should examine the quality of the justification and genuineness of the dispute" and that a party's nondisclosure does not need to be "justified to a high degree.") (citation omitted); *see also* Dkt. 209 at 9-10 (citing additional cases).  In any event, Affiliate Defendants promptly modified their approach to conform with the September 20 Order and have since produced all non-privileged document families containing the standalone term "Medicaid," as explained above.[4]

## VI.   Affiliate Defendants' Comprehensive Search Terms Targeted Information Responsive to Plaintiffs' First RFPs and Minimized "False Hits"

Affiliate Defendants developed a list of search terms to target documents containing information responsive to Plaintiffs' First Sets of RFPs, and shared their search terms with Plaintiffs on August 25.  *See* Dkt. 237 at 11-12; Dkt. 237, Exs. A & Q.  This list included 34 carefully crafted search terms encompassing, among other things, "recoup*," "repay," and "overpayment."  A complete search term list follows.

---

[4] Affiliate Defendants have now produced over 139,000 documents (family complete) from the custodial files of 28 custodians utilizing a search for the standalone term "Medicaid."  There is no support for Relator's speculation that Affiliate Defendants "are likely excluding from their production a large number of documents that hit for 'Medicaid,' as they were doing before." *Contra* Dkt. 242 at 9.

| Affiliate Defendants' Initial Search Terms (*see* Dkt. 237 at Ex. Q) | |
|:---:|:---|
| 1 | Medi-caid |
| 2 | "Managed care" |
| 3 | MCO |
| 4 | "Fee for service" OR fee-for-service |
| 5 | hhs.tx.gov |
| 6 | dhh.Louisiana.gov |
| 7 | FFS |
| 8 | DHH |
| 9 | TMHP |
| 10 | OIG |
| 11 | Recoup* |
| 12 | CMS |
| 13 | "provider agreement" |
| 14 | "qualified provider" |
| 15 | revocation OR revoke |
| 16 | "Cecile Richards" AND (termination OR medicaid OR texas OR louisiana) |
| 17 | injunct* |
| 18 | TRO |
| 19 | repay* |
| 20 | "en banc" |
| 21 | "grace period" |
| 22 | "fifth circuit" |
| 23 | HHSC |
| 24 | HHSC-OIG |
| 25 | Overpayment |
| 26 | HHS |
| 27 | Wachino |
| 28 | Centers w/5 (Medicare OR "Medicaid services") |
| 29 | Health w/2 "human services" |
| 30 | Kleibert |
| 31 | Termin* AND any other term in lines 1-30 |
| 32 | Refund* AND any other term in lines 1-30 |
| 33 | Medicaid AND any other term in lines 1-30 |
| 35 | Medicaid AND (enroll* OR participat* OR eligibil* OR accred* OR submit* OR submission OR receiv* OR receipt OR terminat* OR qualif* OR refund*) |

As noted above, after reviewing the list of search terms, Relator did not raise any specific

concerns about the terms.  Dkt. 237, Ex. A at ¶ 3 (Lollar Decl.).

The Court's Show Cause Order questions Affiliate Defendants' decision not to include other terms.  Specifically, the Court asked Affiliate Defendants to explain why they did not run terms such as "claim," "bill*," "defund," "fraud," "reimburs*," "pay," "pay back," "compliance," "training," "false claims," and "LDH."  As healthcare providers, Affiliate Defendants possess hundreds of thousands of documents that have nothing to do with this case, but include everyday terms like "claim," "bill," and "pay."  Use of such expansive terms, without limitation, would be detrimental to all parties.  Not only would the staging, review, confidentiality designation, and production of these documents be unduly burdensome to Affiliate Defendants; their production would require Plaintiffs to sift through an enormous amount of data to identify the small percentage of documents actually responsive to their discovery requests.  As for the terms "fraud," "defund," and "false claims," Affiliate Defendants did not include those terms for a very simple reason— Plaintiffs' RFPs did not ask for documents related to those topics, and documents relevant to this case (such as those relating to Medicaid compliance) were captured through existing terms.  With respect to the terms "compliance" and "training," these terms were not relevant to Relator's First RFPs (the subject of Relator's Third Motion to Compel).  *See* Dkt. 154, Ex. A (Relators' First RFPs).  However, many documents relating to compliance or training were nonetheless produced in response to Relator's First RFPs because a document family contained other terms, such as "Medicaid" or "Overpayment."  Additional documents relating to "compliance" or "training" were subsequently produced after being identified through targeted searches for documents responsive to Relator's Third Set of RFPs.  *See, e.g.* Ex. 10 (PPGC's Responses to Relator's Third RFPs)

Further, the focus on search terms overlooks that Affiliate Defendants have also collected and produced many documents identified through methods other than applying search terms to custodial ESI.  For example, Affiliate Defendants identified and produced responsive claims data,

employee training documents, risk management documents, internal audits, and relevant compliance materials using alternate search methods.

## VII.    Affiliate Defendants' Inclusion of Incorrect Web Addresses in their Search Terms Was an Inadvertent and Harmless Error

Relator is correct that Affiliate Defendants included "hhs.tx.gov" and "dhh.Louisiana.gov" in their initial search terms. *See* Dkt. 220 at 13. On August 25, Affiliate Defendants shared their initial terms with Plaintiffs for their review and comment. *See* Dkt. 237, Ex. Q. At that time, Relator said that they had "no concerns" about the terms, and Texas, who presumably was in the best position to evaluate search terms related to its own servers, did not raise any concerns or offer suggestions regarding alternative search terms. *See* Dkt. 237 at 10; Dkt. 237, Ex. A (Lollar Decl.). Affiliate Defendants have since learned that "hhs.tx.gov" and "dhh.Louisiana.gov" are not accurate email domain addresses, an inadvertent error that was apparently also missed by Plaintiffs at the time the parties were developing search terms. Regardless, all communications with Texas and Louisiana relating to Medicaid have now been produced through Affiliate Defendants' production of all documents containing the standalone search term "Medicaid." Therefore, Affiliate Defendants' unintentional use of incorrect email domains did not result in any production deficiencies.

## VIII.   Affiliate Defendants Have Produced or Will Produce Affiliate Defendants' Communications with PPFA (including PPFA CEOs) that are Responsive to Relator's Requests

Affiliate Defendants do not have custody or control of PPFA employee data and thus cannot search the ESI of any PPFA employee, including specific PPFA CEOs. Relator served an RFP specifically requesting the production of all communications between Affiliate Defendants' CEOs and former PPFA CEO Cecile Richards, and Affiliate Defendants searched for and produced documents responsive to that request. *See* Dkt. 154, Ex. A (Relators' First RFPs). Relator did not

request communications with other PPFA CEOs.  Nonetheless, Affiliate Defendants' productions have likely contained many of those communications because they contain other search terms, such as "Medicaid."

Several months after Relator served the Cecile Richards-specific RFP, Relator served a sixth set of RFPs seeking a broader range of PPFA-related documents.  *See, e.g.*, Ex. 9 (PPGC's responses to Relator's Sixth RFPs).  Affiliate Defendants are in the process of producing documents responsive to those RFPs, which will include *all* non-privileged communications (*i.e.*, without any search terms or responsiveness review) between Affiliate Defendants' custodians and persons using the @ppfa.org domain.  *Id.*  To the extent that Relator has not already received all potentially relevant communications between Affiliate Defendants and PPFA CEOs from the "Medicaid" search or Affiliate Defendants' other terms, Relator will soon receive them in the @ppfa.org productions.  Affiliate Defendants are making an initial production next week that will include over 100,000 documents.

## IX.    Affiliate Defendants Have Searched for and Produced Responsive CMS Data, Without Limitation to Vicki Wachino's Tenure as CMS Deputy Administrator

Affiliate Defendants do not have custody or control of CMS data and cannot search for the ESI of any CMS Deputy Administrator; Affiliate Defendants' response will necessarily be limited to communications that Affiliate Defendants had with CMS or its employees.  Affiliate Defendants have identified and produced documents in Affiliate Defendants' custodial files using search term such as "Wachino," "Centers w/5 (Medicare OR 'Medicaid services')," and "Health w/2 'human services.'"  Here again, it bears repeating that Affiliate Defendants shared their search terms with Plaintiffs, and Relator said they had no concerns about Affiliate Defendants' terms.  *See* Dkt. 237 at 10; *see also* Dkt. 237 at Exs. A & Q.  Notwithstanding that Relator did not take issue with Affiliate Defendants' approach, any relevant CMS documents that were not identified through

11

those initial searches were provided to Plaintiffs through Affiliate Defendants' production of all documents hitting on the term "Medicaid."

In addition, Affiliate Defendants have produced to Plaintiffs all documents Affiliate Defendants received from CMS pursuant to subpoena. *See* Ex. 11.  The only limitations on CMS's production were the result of restrictions *imposed by CMS* after it objected to Affiliate Defendants' original discovery requests, and Affiliate Defendants and CMS met and conferred to narrow Affiliate Defendants' requests. *See* Dkt. 106 & 126.  Affiliate Defendants can only produce what they received.  If Plaintiffs feel that they need additional CMS data, they are free to issue their own subpoenas to CMS.

## X.     PPGT Has Produced Over 27,000 Sheila McKinney Documents

As of the date of today's filing, Affiliate Defendants have produced 27,580 documents for which Sheila McKinney is a custodian ("McKinney ESI").  The 18 documents to which the Court is referring are the documents that were produced pursuant to the First RFPs and *prior to* the Court's September 20 Order.  Affiliate Defendants' initial search of the McKinney ESI identified 86,870 documents that either hit on a search term or had a family relationship to a document with a search term.  Affiliate Defendants conducted a relevance and responsive review of those documents consistent with the limitations set forth in PPGT's initial Responses and Objections to Relator's First RFPs, and Affiliate Defendants identified 149 documents as responsive to Relator's First RFPs.  Of that total, 18 were produced and 131 were withheld for privilege. *See* Ex. 12.  While Relator's Motion to Compel on the First RFPs was pending, Affiliate Defendants produced additional McKinney documents and communications responsive to other RFPs.  Affiliate Defendants further supplemented this response by searching for the term "Medicaid" after the Court's September 20 Order, culminating in the current total of 27,580 produced McKinney

documents. This figure will continue to grow as Affiliate Defendants make rolling productions of documents responsive to Relator's other RFPs.

## XI.    PPGT Has Produced Nearly 13,000 Ken Lambrecht Documents

As of filing, Affiliate Defendants have produced 13,808 documents for which Ken Lambrecht is a custodian. Similar to the McKinney documents identified above, the 10 documents referenced are a reflection of Affiliate Defendants' initial production of documents responsive to the First RFPs. Affiliate Defendants' initial search of the Lambrecht emails identified a total universe of 69,058 documents that either contained a search term or had a family relationship to a document with a search term hit. Affiliate Defendants reviewed these documents consistent with PPGT's Responses and Objections to the First RFPs, and determined that 10 non-privileged documents were responsive to the First RFPs. Affiliate Defendants also identified 98 documents as responsive but privileged. *See* Ex. 12. While Relator's Motion to Compel on the First RFPs was pending, Affiliate Defendants produced additional Lambrecht data responsive to other RFPs in the following weeks, and, after the Court's September 20 Order, further supplemented this response by producing all non-privileged documents in the Lambrecht custodial data containing the term "Medicaid." The current total of 13,808 produced Lambrecht documents will only grow larger as Affiliate Defendants continue to make rolling productions.

## XII.   Affiliate Defendants Have Used the Same Data Collection and Production Methods Across All Relevant Years, and Produced Roughly Equal Numbers of Documents for 2017 as Other Years

Affiliate Defendants are making productions on a rolling basis and have produced roughly 139,000 documents since the Court's September 20 Order. Because Relator's "date trend" contention was based on a snapshot in time that does not account for these more recent productions,

it is incomplete and inaccurate.  Indeed, looking at productions to date, Affiliate Defendants have produced 16,852 documents from 2017, which is not significantly less than other years.



Documents from 2017 have not been handled differently from any other year; Affiliate Defendants have applied the same methods and search terms across the data for all relevant years.

## XIII. Relator Did Not Request Production of "Training Courses" by Managed Care Organizations and if Such Documents Exist, They Were Captured by Affiliate Defendants' "Medicaid" Productions

The Court's Show Cause Order queries why Affiliate Defendants "did not produce documents from training courses they are required to complete by managed care organizations reimbursing for Medicaid services." *See* Dkt. 263.  Affiliate Defendants did not conduct a specific search for these documents because neither Relator nor Texas ever propounded such a request, and these documents do not fall within the scope of Plaintiffs' other requests.  *See* Dkt. 237 at 12; Dkt. 221, App. 0001–25, 0050–62, 0089–130 (Relator's RFPs).  However, if such documents exist, they would have been captured by Affiliate Defendants' search for all documents containing the term "Medicaid" and subsequent production of those documents.

14

### XIV. Affiliate Defendants Have Complied With, and in Many Instances Gone Above and Beyond, Requirements Set Out in this Court's Orders and the Federal Rules

Affiliate Defendants have produced or will produce all non-privileged documents in Affiliate Defendants' custodial data that are responsive to Plaintiffs' requests for production. As such, Affiliate Defendants are not aware of any omissions in their productions. However, assuming the Court is directing Affiliate Defendants to describe their compliance with this Court's Orders generally,[5] Affiliate Defendants' productions as described above and further detailed below demonstrate significant, comprehensive, and diligent efforts to comply with this Court's Orders and Affiliate Defendants' obligations under the Federal Rules.

It must "be remembered that the Federal Rules of Civil Procedure require only a reasonable search for responsive information pursuant to a reasonably comprehensive search strategy." *Enslin v. Coca-Cola Co.*, 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016) (citation omitted); *see also* Fed. R. Civ. P. 26(g); Fed. R. Civ. P. 34; *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 93 (D.D.C. 2017) ("To be adequate under the Federal Rules, a search in response to a discovery request must be reasonable."); *Reinsdorf v. Skechers USA, Inc.*, 296 F.R.D. 604, 615 (C.D. Cal. 2013) (noting that "while parties must impose a reasonable construction on discovery requests and conduct a reasonable search when responding to the requests, the Federal Rules do not demand perfection.") (citations and quotations omitted); *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 306 (S.D.N.Y. 2012) ("The standard for the production of ESI is not perfection. Rather, a responding party must use reasonable measures to . . . ensure completeness and accuracy of the data acquisition").[6] Affiliate Defendants have unquestionably satisfied that obligation.

---

[5] The orders at ECF Nos. 153 and 215 are directed at PPFA only, so Affiliate Defendants do not address them here.

[6] *See also Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006) (explaining that a "reasonably comprehensive search strategy" may "include identifying key employees" and using

Upon receiving Plaintiffs' discovery requests, Affiliate Defendants developed a process—that included both search terms for custodial ESI and other non-custodial searches—to identify responsive documents.  Affiliate Defendants were transparent with Plaintiffs about that process, and again, Plaintiffs did not express concerns about Affiliate Defendants' search terms.  *Supra* at 6, 8, 10-11.  While Affiliate Defendants continue to believe that their initial approach was appropriate, after the Court's September 20 Order Affiliate Defendants promptly modified their approach, searching for and producing *every* non-privileged document family for which at least one document contained the standalone search term "Medicaid."  Dkt. 237 at 6-7, 10; Dkt. 209; Dkt. 207; Dkt. 201; *see also* Dkt. 213 at 4-5.  This "Medicaid" search was conducted across the ESI of 28 custodians identified as most likely to have responsive documents.[7]  *Id.*  Affiliate Defendants produced every non-privileged document that hit on the term "Medicaid" without conducting a relevance review.  *Id.*[8]  Affiliate Defendants have now substantially completed this

---

"[d]efined search strategies" to identify relevant documents); *Penn Eng'g & Mfg Corp. v. Peninsula Components, Inc.*, 2022 WL 254926, at *2 (E.D. Pa. Jan. 26, 2022) ("The Federal Rules of Civil Procedure do not impose a duty upon litigants to examine every scrap of paper in its potentially voluminous files in order to comply with its discovery obligations. Instead, the [producing] party must conduct a diligent search, which involves developing a reasonably comprehensive search strategy.") (citation omitted); *Fisher v. Ciba Specialty Chem. Corp.*, 2007 WL 987457, at *3 (S.D. Ala. Mar. 30, 2007) ("The rules of discovery do not demand perfection, clairvoyance, or miracle workings in the production of documents.  Crying foul and casting aspersions whenever there's a hole in defendants' document productions . . .is not conducive to the timely, efficient resolution of this litigation.").

[7] The Court ruled that its September 20 Order did not require Affiliate Defendants to collect the data of *all* employee during the 2010 to 2022 time period and produce *all* documents containing the term "Medicaid."  Dkt. 213 at 4-5.

[8] Affiliate Defendants' decision to produce all documents with the term "Medicaid" without conducting a relevance review was another good-faith effort to expeditiously make productions consistent with Relator's sweeping interpretation of relevance.  This decision does not in any way call into question Affiliate Defendants' decision to perform a relevance or responsiveness review for other categories of documents.  *See, e.g.*  See, e.g. *O'Donnell/Salvatori Inc. v. Microsoft Corp.*, 339 F.R.D. 275, 277 (W.D. Wash. 2021) (holding that "a party's agreement to run search terms does not waive its right to review the resulting documents for relevance so long as the review can be done in a reasonably timely manner"); *Palmer v. Cognizant Tech. Solutions Corp.*, 2021 WL

production and produced more than 139,000 documents hitting on the standalone search term "Medicaid" and family members.

Affiliate Defendants' inclusion of 28 additional custodians with the standalone "Medicaid" productions noted above also resulted in the production of many documents responsive to RFPs 10 and 11, including documents and communications reflecting financial data and analysis throughout the relevant time period and for each of the respective Affiliate Defendants.  In addition, Affiliate Defendants are working to determine whether there are additional documents responsive to RFPs 10 and 11 that were not captured within Affiliate Defendants' custodial data, and Affiliate Defendants will produce any documents identified through that process.

To the extent that the Court considers Affiliate Defendants' responses to discovery requests other than Relator's First RFPs, Affiliate Defendants have worked tirelessly to promptly produce documents responsive to Relator' other requests, even where those sweeping requests encompassed information that is irrelevant to this litigation.  *Accord Rostain v. Trustmark Nat'l Bank*, 2020 WL 6550501, at \*7-8 (N.D. Tex. Nov. 6, 2020) (denying motion to compel documents that moving party argued were "obviously responsive" to request, because request was "overly broad" and did not put producing party on notice of information requested) (citing *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649-50 (10th Cir. 2008)); *Reinsdorf*, 296 F.R.D. at 616-17 ("Requests should be reasonably specific, allowing the respondent to readily identify what is wanted.").

---

3145982, at \*9 (C.D. Cal. Jul. 9, 2021) (denying motion to produce all documents that contained a search term without a responsiveness review, explaining that it would be improper to require production of a document "simply because it contains a search term[,] whether or not it is responsive to the discovery request, or, by extension, whether or not it is relevant and proportional to the needs of the action."); *BancPass, Inc. v. Highway Toll Admin., LLC*, 2016 WL 4031417, at \*3 (W.D. Tex. July 26, 2016) (holding that the parties were not obligated to produce documents that contained search terms, but were determined to be nonresponsive).

Further, while Relator lodges repeated and unfounded accusations of bad faith (conduct that itself is worthy of sanctions), *see* Dkt. 224 at 8-9, Dkt. 220 at 2, Dkt. 204 at 7-8, Dkt. 180 at 4-5, the record tells a very different story—one in which Affiliate Defendants have gone to great lengths to accommodate ever-changing demands by Relator, often without Relator offering a good faith meet and confer.   For example, in response to Relator's complaints about Affiliate Defendants' then-existing custodians, Affiliate Defendants undertook a comprehensive, good faith effort to identify the current or former employees most likely to have additional, non-cumulative documents potentially relevant to Relator's claims.  *See* Dkt. 201 at 6-7.  Relator responded by threatening sanctions for the "deficient" proposed custodians—before Relator had even reviewed the supplemental list.  *Id.*; *see also* Dkt. 201 at Ex. B.  Similarly, after Relator's counsel expressed concerns about the effect that "Attorney's Eyes Only" designations may have on their ability to discuss documents with their client, Affiliate Defendants offered to voluntarily undertake further time-consuming, labor intensive efforts to redact non-relevant but confidential information that would reduce the need for "Attorney's Eyes Only" designation.  *See* Dkt. 254 at App. 006-007 Those efforts too were rebuffed with little explanation.  *Id.*

Following the Court's clarifying Order against PPFA, Affiliate Defendants proactively initiated a review of their confidentiality designation, downgrading multiple categories of documents for which Relator or the Court had expressed concern.  Relator nonetheless maintained a blanket objection to Affiliate Defendants' designations, necessitating further motions practice. *See* Dkt. 253 at 5-6.  It would be manifestly unjust to sanction Affiliate Defendants when they have actually operated in good faith throughout discovery.  *See Alvarado v. Air Sys. Components LP*, 021 WL 4907033, at *6 (N.D. Tex. Oct. 21, 2021) (denying plaintiff's request for sanctions where discovery requests were broad in nature, Defendants sufficiently supplemented their responses,

and Defendant's objections were "substantially justified"); *Moss v. Princip*, 2017 WL 2879694, at *3 (N.D. Tex. June 1, 2017) (explaining that "although untimely and only upon being ordered by this Court, Defendants asserted valid objections to Plaintiffs' RFP. . . [t]he Court finds that Defendants sufficiently complied with the [court's] order[,]" when denying plaintiffs' motion for sanctions and civil contempt); *Kaneka Corp.*, 2012 WL 12941120, at * 2 (holding that sanctions were unwarranted where plaintiff's initial objections were "substantially justified" because "reasonable people could differ as to the appropriateness of Defendants" requests); *Sinegal v. Merti Energy Co.*, 2010 WL 695806, at *2 (W.D. La. Feb. 24, 2010) (upholding lower court's denial of plaintiff's request for sanctions, when defendant made "a good-faith legal argument" that specific written statements were protected from disclosure as work product, and acknowledging the "appreciation of the difficulty surrounding a determination of whether a specific document" is privileged).

**XV.   It is Burdensome for Affiliate Defendants to Generate a "System Map" as the Court Suggests, and the Court's Suggested "System Map" Requires Sources of Data Specifically Excluded from the Parties' ESI Agreement**

Each Affiliate Defendant has a different IT environment and each would need to generate its own system map. While the burden is different for each Affiliate —*see* Ex. 8 (Decl. of Shelby), Ex. 14 (Decl. of Holder), and Ex. 15 (Decl. of de la Cruz)—it is not a simple task to generate a system map.  Generating system maps requires identifying, collecting, and documenting a full inventory of all servers, cloud based applications, Microsoft 365 environments, and other sources of data maintained by each of the Affiliate Defendants.  *See* Ex. 8 at ¶ 10 (Decl. of Shelby); Ex. 14 at ¶ 6 (Decl. of Holder), and Ex. 15 at ¶ 6  (Decl. of de la Cruz).  Such a task would require an Information Technology (IT) professional, contractor, or staff member from each Affiliate to work full-time on this project for weeks.  Both PPGT and PPGC are understaffed in their IT departments

at this time and losing a full-time IT staff member will impact their IT staff's ability to conduct their normal daily duties.  *See* Ex. 14 at ¶ 6 (Decl. of Holder) and Ex. 15 at ¶ 6 (Decl. of de la Cruz).  PPST's outside IT firm would need to assign an IT professional to work on the project full-time at a significant cost to PPST. *See* Ex. 8 at ¶ 10 (Decl. of Shelby).

Additionally, the Court's proposed system map expressly requires the inclusion of mobile and personal devices.  The parties' ESI Agreement does not require production from such devices (Dkt. 130; Dkt. 139), nor does Relator request information from those sources in their Motion for Forensic Examiner (Dkt. 220; Dkt. 242).  Compiling such information would add at least 40 hours (one week of full-time work) to each Affiliate Defendants' task of generating the system map.  *See* Ex. 8 at ¶ 11 (Decl. of Shelby); Ex. 14 at ¶ 7 (Decl. of Holder), and Ex. 15 at ¶ 7  (Decl. of de la Cruz).

## **CONCLUSION**

For all of these reasons, Affiliate Defendants have conducted themselves appropriately and in good faith.  Sanctions are entirely unwarranted and inappropriate.

/s/  *Tirzah S. Lollar*
Craig D. Margolis
Craig.Margolis@arnoldporter.com
Tirzah S. Lollar
Tirzah.Lollar@arnoldporter.com
Christian Sheehan
Christian.Sheehan@arnoldporter.com
Emily Reeder-Ricchetti
Emily.Reeder-Ricchetti@arnoldporter.com
Megan Pieper
Megan.Pieper@arnoldporter.com
Alyssa Gerstner
Alyssa.Gerstner@arnoldporter.com
Meghan C. Martin
Meghan.Martin@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.5000

Fax: +1 202.942.5999

Christopher M. Odell
Texas State Bar No. 24037205
Christopher.Odell@arnoldporter.com
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: +1 713.576.2400
Fax: +1 713.576.2499

Paula Ramer
250 West 55th Street
New York, New York 10019-9710
T: +1 212.836.8474
Paula.Ramer@arnoldporter.com

Ryan Patrick Brown
Texas State Bar No. 24073967
brown@blackburnbrownlaw.com
1222 S. Filmore
Amarillo, TX 79101
Tel: (806) 371-8333
Fax: (806) 350-7716

*Attorneys for Defendants Planned
Parenthood Gulf Coast, Inc., Planned
Parenthood of Greater Texas, Inc.,
Planned Parenthood of South Texas, Inc.,
Planned Parenthood Cameron County,
Inc., and Planned Parenthood San
Antonio, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on  November 11, 2022, the foregoing document was electronically filed with the Clerk of Court using CM/ECF.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

/s/ *Tirzah S. Lollar*