IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| United States of America<br>*ex rel.* ALEX DOE, Relator, | §<br>§<br>§ | |
| The State of Texas<br>*ex rel.* ALEX DOE, Relator, | §<br>§<br>§ | No. 2:21-CV-00022-Z |
| The State of Louisiana<br>*ex rel.* ALEX DOE, Relator, | §<br>§<br>§ | |
| Plaintiffs, | §<br>§ | |
| v. | §<br>§<br>§ | |
| Planned Parenthood Federation of America,<br>Inc., Planned Parenthood Gulf Coast, Inc.,<br>Planned Parenthood of Greater Texas, Inc.,<br>Planned Parenthood South Texas, Inc.,<br>Planned Parenthood Cameron County, Inc.,<br>Planned Parenthood San Antonio, Inc., | §<br>§<br>§<br>§<br>§<br>§ | |
| Defendants. | §<br>§<br>§<br>§ | |

## DECLARATION OF MARINA SPYROU

I, Marina Spyrou, declare and state as follows:

1.      I am currently employed by Planned Parenthood Federation of America, Inc. ("PPFA") as the Chief Information Officer.  I have served as Chief Information Officer since July 2022.  Prior to that, I worked as PPFA's Chief Information Security Officer beginning in February 2019, and before joining PPFA, I worked in risk mitigation and cybersecurity positions in the private sector for more than 15 years.

2.       I am over the age of 18 and have personal knowledge of the matters herein or have acquired such knowledge by personally examining the business records kept in the normal course of business by PPFA.  If called upon to testify, I could and would testify to the facts in this declaration.

3.       I make this declaration in support of Planned Parenthood Federation of America, Inc.'s Response to the Order to Show Cause.

4.       As the Chief Information Officer (CIO) for PPFA, I oversee both the Information Technology ("IT") and Information Security ("IS") Departments.  In this role, I oversee the technology that PPFA needs to drive PPFA's business and company mission, as securely and privately as possible.  In that capacity, I have direct staff reports, and work with PPFA's outside contractors and vendors to support the technology that PPFA uses to drive its mission.

5.       As the CIO, I am familiar with the technology that PPFA and its employees use to support PPFA's day-to-day business, including oversight of multiple critical servers running Windows and Linux, management of network firewalls, core switches, access points within our infrastructure, complex SQL databases systems, cloud-based SaaS services, management and support of multiple user productivity applications, and over 800 employee desktops and laptops, as well as the efforts that PPFA takes to protect that technology from external cybersecurity threats.

6.       I have reviewed this Court's November 8, 2022 Order on Motion to Compel and to Show Cause, including the paragraph requiring PPFA to address whether it "ha[s] the capacity and coordination necessary to generate a 'system map' of *all* on-premise and off-premise sources of ESI [electronically stored information] within their possession, custody, or control—including servers, e-mail servers, Post Office Protocol (POP) servers, cloud-based systems, and ISP-based

devices, to include mobile phones, smart phones, or other personal ESI devices." Order at 9 (original emphasis).

7.      I understand that the Relator asked the Court to require PPFA to provide "a Data Map identifying all on-premise and cloud-based computer systems, file storage locations and databases, and any other sources of electronic data that are in Defendants' possession, custody or control," Motion at 147, as part of its request that the Court appoint a forensic examiner to search for documents responsive to Relator's discovery requests, *id*. at 2. Further, I understand that the Relator has requested documents generally concerning PPFA's knowledge of alleged violations of Texas and Louisiana Medicaid rules, any alleged duty to repay Medicaid funds, and PPFA's interactions with and alleged control over the Texas-based affiliates who are Defendants in the case. *See, e.g.,* Order at 5.

8.      I understand the term "system map" to refer an exhaustive list of every IT asset— servers, databases, drives, laptops, mobile devices—managed by PPFA. Since an inventory of these assets would be nothing but a series of asset numbers, such a list will not be useful without PPFA also investigating each asset's business purpose, whether it independently generates data, and if so, whether that data is stored in that asset or somewhere else. A usable system map would also need to include some brief explanation from PPFA employees familiar with each asset describing what each of these assets contain, including for example, whether they store user-generated data, or whether they are mere reporting tools that draw data from back-end locations. Presumably, a system map would also need some brief explanation of the type of data it stores (e.g., whether a SAP server cluster supports financial reporting data, human resources records, or cyber security incidents).

9.      PPFA's IT infrastructure includes many assets that do not store data of the type the Court describes in its Order and would not be relevant to this litigation.  For example, PPFA has an off-premise HR system containing individual employees' benefits information and elections; it also has a vast technology stack that supports fundraising and donor engagement, and multiple applications that provide back-end support to a variety of financial reporting systems.  PPFA's infrastructure also includes roughly 800 laptops, each identified by an electronic asset number, and it supports various mobile devices. In addition, PPFA's infrastructure supports applications for user education and women's health period tracking.

10.     Generating an inventory of all PPFA's computer assets would be very time consuming, manual process, and as mentioned above, would only be the first step.  The next would involve interviewing several hundred employees, either who manage the IT asset (e.g., financial databases) or possesses and use it (e.g., laptops) to draft descriptions of the type of data that exists on each asset.  I am informed and believe that lawyers for PPFA undertook an effort similar to this in order to respond to discovery in this matter, but instead of focusing on hundreds of IT systems and computers that were likely not relevant, they targeted their diligence on employees that were likely to have or could point the attorneys to relevant information.

11.     A broader effort to create a full-scale data map would take several weeks of diligence to create the asset list, identify the correct employees associated with each asset, schedule interviews, and create descriptions of each asset, including some—such as HR support systems—that I understand have nothing to do with this matter.

4

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on November 11, 2022 in Albuquerque, NM.

Marina Spyrou