Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

UNITED STATES OF AMERICA,                     §
*ex rel.* ALEX DOE, Relator,                  §
                                              §
THE STATE OF TEXAS,                           §
*ex rel.* ALEX DOE, Relator,                  §
                                              §
THE STATE OF LOUISIANA,                       §
*ex rel.* ALEX DOE, Relator,                  §
                                              §
                                              §
          Plaintiffs,                         §
                                              §
v.                                            §          Civil Action No. 2:21-CV-00022-Z
                                              §
PLANNED PARENTHOOD                            §
FEDERATION OF AMERICA, INC.,                  §
PLANNED PARENTHOOD GULF                       §
COAST, INC., PLANNED                          §
PARENTHOOD OF GREATER                         §
TEXAS, INC., PLANNED                          §
PARENTHOOD SOUTH                              §
TEXAS, INC., PLANNED                          §
PARENTHOOD CAMERON                            §
COUNTY, INC., PLANNED                         §
PARENTHOOD SAN ANTONIO,                       §
INC.,                                         §
                                              §
          Defendants.                         §

## PLAINTIFFS' NOTICE OF 30(b)(6) DEPOSITION OF PLANNED PARENTHOOD SOUTH TEXAS, INC.

Please take notice that pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, Plaintiffs will take the deposition of Planned Parenthood South Texas,

Inc. ("PPST") on November 1, 2022, beginning at 9:00 a.m., at the Office of the

Attorney General of Texas, 300 West 15th Street, Austin, Texas 78701. The

deposition will be stenographically and electronically recorded and will be videotaped. The deposition will be used for discovery and/or evidentiary purposes to the full extent allowed by the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

Pursuant to Rule 30(b)(6), PPST shall designate one or more individuals to testify as to all information reasonably available to PPST concerning the following subjects:

1.    PPST's formation, PPST's corporate and organizational structure from 2005 to 2021, and reorganizations or changes thereto.

2.    PPST's by-laws and articles of incorporation.

3.    PPST's Human Resources Department, Human Resource Organizational Structure, and Human Resource Reporting Requirements.

4.    PPST's training requirements from 2005-2021.

5.    PPST's status as a 501(c)(3) tax-exempt organization and obligation to protect the 501(c)(3) tax-exempt status of PPFA.

6.    PPST board of directors' role in adopting, monitoring, and reporting PPST's annual budget.

7.    PPST board members' personal financial contributions to PPST.

8.    PPST's knowledge and understanding of Medicaid program requirements.

9.    PPST's participation in Texas and Louisiana Medicaid, including, but not limited to:

    a.    PPGC's enrollment in Texas and Louisiana Medicaid;

    b.    PPGC's submission of claims for reimbursement to Texas and Louisiana Medicaid;

    c.      Communications between Texas and Louisiana Medicaid and PPGC; and

    d.      Termination of PPGC as a provider in Texas and Louisiana Medicaid.

10.    PPST's knowledge and understanding of the Texas Medicaid Provider Procedures Manual and the Louisiana Medicaid Provider Procedures Manual.

11.    PPST's knowledge and understanding of the Texas Medicaid Provider Agreements and the Louisiana Medicaid Provider Agreements executed and submitted by PPGC.

12.    PPST's regulatory compliance practices.

13.    PPST's compliance with Medicaid laws, rules, regulations, and policies.

14.    PPST's process for submission of claims for reimbursement to Texas Medicaid and Louisiana Medicaid from 2005-2021, including but not limited to:

    a.      The person(s) responsible for submitting claims; and

    b.      The process for reviewing and/or verifying the accuracy of claims.

15.    PPST's process for refunding or repaying overpayments to Texas Medicaid and Louisiana Medicaid from 2005-2021, including but not limited to:

    a.      The person(s) responsible for identifying overpayments;

    b.      The person(s) responsible for remitting overpayments; and

    c.      The person(s) responsible for reviewing, approving, and confirming the remittance of overpayments.

16.    PPST's Risk and Quality Management (RQM) program(s) from 2005-2021.

17.    PPST's Health Care Compliance Program(s) from 2005-2021.

18.    PPFA's knowledge, control, ownership, oversight, connection, relationship, and/or other involvement with PPST.

19.    PPST's knowledge, relationship, connection, and/or involvement with other Planned Parenthood affiliates or related entities, including but not limited to:

3

a.    Planned Parenthood of Greater Texas, Inc.;

b.    Planned Parenthood South Texas, Inc.;

c.    Planned Parenthood Cameron County, Inc.;

d.    Planned Parenthood San Antonio, Inc.;

e.    Planned Parenthood Action Fund;

f.    BetterHealth;

g.    Affiliate Risk Management Services (ARMS);

h.    Policyholders' Trust;

i.    Afaxys;

j.    Kaleido Health Systems;

k.    Planned Parenthood Direct;

l.    Online Health Services;

m.    Planned Parenthood Care; and

n.    Clinical Health Network for Transformation.

20.    Agreements between PPST and PPFA, including but not limited to agreements concerning the following:

a.    Affiliation;

b.    Revenue sharing;

c.    Fundraising;

d.    Legal representation; and

e.    Disposition of assets after dissolution of PPST.

21.    Agreements between PPST and any other Planned Parenthood affiliate or related entity, including but not limited to agreements concerning the following:

a.    Affiliation;

b.      Revenue sharing;

c.      Fundraising;

d.      Legal representation; and

e.      Disposition of assets after dissolution of PPST.

22.   PPFA's management, control, and/or oversight of PPST employees and/or other individuals hired by, assigned to, or who provide services to PPST.

23.   Requirements for PPST to report employee information to PPFA.

24.   Requirements for PPST to obtain approval from PPFA for PPST business operations.

25.   PPST's training requirements for PPST employees and/or other individuals hired by, assigned to, or who provide services to PPST.

26.   PPFA's audits of PPST from 2005-2021, including but not limited to PPFA's audits to identify fraud risk exposure.

27.   Standards, guidelines, rules, and/or regulations set by PPFA as conditions of affiliation by PPST, including but not limited to:

a.      PPFA's mission and priorities;

b.      PPFA's Standards of Affiliation;

c.      Planned Parenthood's Planned Parenthood Experience (PPX) and In This Together (ITT) Workplace Values and Service Standards;

d.      PPFA's financial benchmarks;

e.      Affiliate Development and Accreditation Committee Standard Operating Procedures;

f.      National Program Support (NPS) Plan;

g.      PPFA Accounting and Reporting Standards; and

h.      PPFA's Orientation and Training Requirements

28.   PPFA's review or evaluation of Planned Parenthood affiliates, including but not limited to:

5

a.    PPFA's accreditation review process;

b.    PPFA's review of PPST's business operations, financials, and clinical services;

c.    PPFA's review of PPST's critical programs;

d.    PPFA's Human Resources audits of PPST's personnel files and training records;

e.    Creation of accreditation reports concerning PPST;

f.    Creation and use of accreditation assessment tools and their contents;

g.    Assessment of PPST's compliance with PPFA's accreditation standards; and

h.    PPFA's on-boarding/training requirements for Planned Parenthood affiliate entities, including PPST.

29.    Documentation and information required to be provided to PPFA by PPST, including but not limited to:

a.    Affiliate Accreditation Attestation Forms;

b.    Quarterly Affiliate Financial Reports (QAFR);

c.    Quarterly Volume Reports (Q-VOL);

d.    Monthly Volume Reports (MVOL);

e.    Financial audits;

f.    A-133 compliance reports;

g.    Annual Affiliate Financial Reports (AAFR);

h.    Data and information in the Data Analytics Database (DAD);

i.    Annual Affiliate Services Censuses (AASC);

j.    Payments to the National Insurance Program;

k.    Affiliate Risk Management Services, Inc. (ARMS) reports; and

l.    Affiliate Accounting and Reporting Standards Assessment and Planning Tools.

30.    PPFA's authority to revoke PPST's status as a Planned Parenthood affiliate entity, the circumstances by which PPFA could exercise that authority, and any efforts by PPFA to revoke PPST's status as a Planned Parenthood affiliate entity.

31.    PPFA's authority to impose Corrective Action Plans on PPST, the circumstances by which PPFA could exercise that authority, and any efforts by PPFA to impose Corrective Action Plans on PPST.

32.    Current or former PPST employees, staff, contractors, directors, board members, and/or representatives of PPST who serve or have served on the PPFA Board of Directors and/or on any committee of the PPFA Board of Directors.

33.    Current or former PPFA employees, staff, contractors, directors, board members, and/or representatives of PPFA who serve or have served on the PPST Board of Directors and/or on any committee of the PPST Board of Directors.

34.    PPFA's relationships with PPST's CEO, employees, staff, contractors, directors, board members, and/or other representatives of PPST.

35.    PPFA's provision of legal services, legal advice, and legal representation to PPST.

36.    PPFA's role in litigation involving or on behalf of PPST.

37.    PPST's access to the PPFA Extranet, Intranet, and Affiliate Risk Management Services, Inc. (ARMS) website, and the content, documents and information on PPFA's Extranet, Intranet, and ARMS website concerning Medicaid.

38.    PPST's involvement with ARMS and the submission of claims for reimbursement for services provided under Texas Medicaid and/or Louisiana Medicaid.

39.    PPST's compliance program(s), including but not limited to:

    a.    Compliance program oversight by a compliance officer, internal compliance committee, and board of directors;

    b.    Written standard of conduct and policies and procedures;

    c.      Compliance education and training for employees and contracted individuals;

    d.      Reporting mechanisms for communicating concerns and suspected violations of applicable laws or internal policies;

    e.      Routine auditing and monitoring of compliance-related areas of risk;

    f.      Investigations of allegations of non-compliance, and corrective action implemented; and/or

    g.      Uniform disciplinary action to properly address non-compliant behavior.

40. PPST's policies and procedures for the prevention, detection and reporting of health care fraud and abuse, including but not limited to training provided to PPST staff for the prevention, detection and reporting of health care fraud and abuse.

41. Reports of Health Care Compliance Program activities provided by a Health Care Compliance Officer to the PPST Board of Directors, member(s) of the PPST Board of Directors, and/or committee(s) of the PPST Board of Directors.

42. PPST's access to ARMS Connect and the Center for Affiliated Learning, including the content of the learning or training courses and materials on ARMS Connect and/or the Center for Affiliated Learning concerning Medicaid.

43. PPST's access to the PPFA Medical Services blog, including the content of newly released materials, items of note, and information on the PPFA Medical Services Blog concerning Medicaid.

44. Financial support provided by PPFA to PPST, and conditions precedent to PPFA's financial support of PPST.

45. Services provided by PPFA to PPST, and conditions precedent to PPFA providing services to PPST.

46. PPFA's involvement with PPST's communications with the media and/or the public, including but not limited to "Talking Points" for PPST.

47. Revenue-sharing arrangements and/or agreements between PPFA and PPST.

48. Payments made to PPFA and/or any PPFA related entity (including but not limited to ARMS, Policyholders' Trust, Afaxys, Kaleido Health Systems,

Planned Parenthood Direct) by PPST and/or any PPST related entity, including but not limited to:

a.     Types of payments;

b.     Amounts of payments;

c.     Sources of payments;

d.     Requirements of payments;

e.     Timing of payments;

f.     How payments are calculated;

g.     The person(s) who makes payments;

h.     The person(s) who receive payments;

i.     Records reflecting payments;

j.     How PPFA utilizes payments; and

k.     Consequences for failure to make payments.

49.     Payments made to PPFA and/or any PPFA related entity of any monies or funds that were paid to or received by PPST and/or any PPST related entity from Texas Medicaid.

50.     Payments made to PPFA and/or any PPFA related entity of any monies or funds that were paid to or received by PPST and/or any PPST related entity from Louisiana Medicaid.

51.     Payments made to PPST and/or any PPST related entity by PPFA and/or any PPFA related entity, including but not limited to:

a.     Types of payments;

b.     Amounts of payments;

c.     Sources of payments;

d.     Requirements of payments;

e.     Timing of payments;

f.     How payments are calculated;

9

g.    The person(s) who makes payments;

h.    The person(s) who receives payments;

i.    Records reflecting payments;

j.    How Planned Parenthood affiliates utilize payments; and

k.    Consequences for failure to make payments.

52.   The Texas Health and Human Services Commission—Office of the Inspector General's ("HHSC-OIG") initiation of termination proceedings in October 2015 against one or more of the following Planned Parenthood affiliates:

a.    Planned Parenthood Gulf Coast, Inc.;

b.    Planned Parenthood of Greater Texas, Inc.;

c.    Planned Parenthood South Texas, Inc.;

d.    Planned Parenthood Cameron County, Inc.; and

e.    Planned Parenthood San Antonio, Inc.

53.   The Texas Health and Human Services Commission—Office of the Inspector General's ("HHSC-OIG") October 2015 decision to initiate termination proceedings against the Planned Parenthood affiliates, litigation in federal and state courts concerning termination of the Planned Parenthood affiliates from Texas Medicaid, and PPFA's role and involvement in litigation concerning the termination from Texas Medicaid.

54.   The Louisiana Department of Health's September 2015 decision to initiate termination proceedings against the Planned Parenthood affiliates, litigation in federal and state courts concerning termination of the Planned Parenthood affiliates from Louisiana Medicaid, and PPFA's role and involvement in litigation concerning the termination from Louisiana Medicaid.

55.   PPST's communications with PPFA concerning the matters described in paragraphs 52-54 above.

56.   PPST's claims for reimbursement submitted to Texas Medicaid and Louisiana Medicaid for services rendered between January 1, 2010 and March 12, 2021.

57. PPST's knowledge of whether payments from Texas Medicaid and Louisiana Medicaid for services rendered between January 1, 2010 and March 12, 2021 have been refunded or repaid to Texas Medicaid and Louisiana Medicaid.

58. PPFA's indemnification of PPST and/or any PPST related entity for acts or omissions arising from PPST's participation in, or any payments received from, any state or federal program.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN E. COWLES**
Deputy Attorney General for Civil Litigation

*/s/ Raymond Charles Winter*
**RAYMOND CHARLES WINTER**
Chief, Civil Medicaid Fraud Division
Texas Bar No. 21791950

**AMY S. HILTON**
Assistant Attorney General
General Litigation Division
State Bar No. 24097834

Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 / Fax (512) 320-0667
Raymond.Winter@oag.texas.gov
Amy.Hilton@oag.texas.gov

**Attorneys for State of Texas**

/s/ Andrew B. Stephens
**Heather Gebelin Hacker**
Texas Bar No. 24103325
**Andrew B. Stephens**
Texas Bar No. 24079396
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
(512) 399-3022
heather@hackerstephens.com
andrew@hackerstephens.com

**Attorneys for Relator**

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2022, this document was served on all counsel of record via email.

<u>/s/ Raymond Charles Winter</u>
Raymond Charles Winter

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ALEX DOE, Relator, | § § § |
| THE STATE OF TEXAS, *ex rel.* ALEX DOE, Relator, | § § § |
| THE STATE OF LOUISIANA, *ex rel.* ALEX DOE, Relator, | § § § § |
| Plaintiffs, | § § |
| v. | § § Civil Action No. 2:21-CV-00022-Z |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., PLANNED PARENTHOOD GULF COAST, INC., PLANNED PARENTHOOD OF GREATER TEXAS, INC., PLANNED PARENTHOOD SOUTH TEXAS, INC., PLANNED PARENTHOOD CAMERON COUNTY, INC., PLANNED PARENTHOOD SAN ANTONIO, INC., | § § § § § § § § § § § § § |
| Defendants. | § |

**PLAINTIFFS' NOTICE OF 30(b)(6) DEPOSITION OF PLANNED
PARENTHOOD SAN ANTONIO, INC.**

Please take notice that pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, Plaintiffs will take the deposition of Planned Parenthood San Antonio,

Inc. ("PPSA") on November 8, 2022, beginning at 9:00 a.m., at the Office of the

Attorney General of Texas, 300 West 15th Street, Austin, Texas 78701. The

deposition will be stenographically and electronically recorded and will be videotaped. The deposition will be used for discovery and/or evidentiary purposes to the full extent allowed by the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

Pursuant to Rule 30(b)(6), PPSA shall designate one or more individuals to testify as to all information reasonably available to PPSA concerning the following subjects:

1.    PPSA's formation, PPSA's corporate and organizational structure from 2005 to 2021, and reorganizations or changes thereto.

2.    PPSA's by-laws and articles of incorporation.

3.    PPSA's Human Resources Department, Human Resource Organizational Structure, and Human Resource Reporting Requirements.

4.    PPSA's training requirements from 2005-2021.

5.    PPSA's status as a 501(c)(3) tax-exempt organization and obligation to protect the 501(c)(3) tax-exempt status of PPFA.

6.    PPSA board of directors' role in adopting, monitoring, and reporting PPSA's annual budget.

7.    PPSA board members' personal financial contributions to PPSA.

8.    PPSA's knowledge and understanding of Medicaid program requirements.

9.    PPSA's participation in Texas and Louisiana Medicaid, including, but not limited to:

    a.    PPSA's enrollment in Texas and Louisiana Medicaid;

    b.    PPSA's submission of claims for reimbursement to Texas and Louisiana Medicaid;

    c.     Communications between Texas and Louisiana Medicaid and PPSA; and

    d.     Termination of PPSA as a provider in Texas and Louisiana Medicaid.

10.    PPSA's knowledge and understanding of the Texas Medicaid Provider Procedures Manual and the Louisiana Medicaid Provider Procedures Manual.

11.    PPSA's knowledge and understanding of the Texas Medicaid Provider Agreements and the Louisiana Medicaid Provider Agreements executed and submitted by PPSA.

12.    PPSA's regulatory compliance practices.

13.    PPSA's compliance with Medicaid laws, rules, regulations, and policies.

14.    PPSA's process for submission of claims for reimbursement to Texas Medicaid and Louisiana Medicaid from 2005-2021, including but not limited to:

    a.     The person(s) responsible for submitting claims; and

    b.     The process for reviewing and/or verifying the accuracy of claims.

15.    PPSA's process for refunding or repaying overpayments to Texas Medicaid and Louisiana Medicaid from 2005-2021, including but not limited to:

    a.     The person(s) responsible for identifying overpayments;

    b.     The person(s) responsible for remitting overpayments; and

    c.     The person(s) responsible for reviewing, approving, and confirming the remittance of overpayments.

16.    PPSA's Risk and Quality Management (RQM) program(s) from 2005-2021.

17.    PPSA's Health Care Compliance Program(s) from 2005-2021.

18.    PPFA's knowledge, control, ownership, oversight, connection, relationship, and/or other involvement with PPSA.

19.    PPSA's knowledge, relationship, connection, and/or involvement with other Planned Parenthood affiliates or related entities, including but not limited to:

      a.      Planned Parenthood of Greater Texas, Inc.;

      b.      Planned Parenthood South Texas, Inc.;

      c.      Planned Parenthood Cameron County, Inc.;

      d.      Planned Parenthood San Antonio, Inc.;

      e.      Planned Parenthood Action Fund;

      f.      BetterHealth;

      g.      Affiliate Risk Management Services (ARMS);

      h.      Policyholders' Trust;

      i.      Afaxys;

      j.      Kaleido Health Systems;

      k.      Planned Parenthood Direct;

      l.      Online Health Services;

      m.      Planned Parenthood Care; and

      n.      Clinical Health Network for Transformation.

20. Agreements between PPSA and PPFA, including but not limited to agreements concerning the following:

      a.      Affiliation;

      b.      Revenue sharing;

      c.      Fundraising;

      d.      Legal representation; and

      e.      Disposition of assets after dissolution of PPSA.

21. Agreements between PPSA and any other Planned Parenthood affiliate or related entity, including but not limited to agreements concerning the following:

      a.      Affiliation;

b. Revenue sharing;

c. Fundraising;

d. Legal representation; and

e. Disposition of assets after dissolution of PPSA.

22. PPFA's management, control, and/or oversight of PPSA employees and/or other individuals hired by, assigned to, or who provide services to PPSA.

23. Requirements for PPSA to report employee information to PPFA.

24. Requirements for PPSA to obtain approval from PPFA for PPSA business operations.

25. PPSA's training requirements for PPSA employees and/or other individuals hired by, assigned to, or who provide services to PPSA.

26. PPFA's audits of PPSA from 2005-2021, including but not limited to PPFA's audits to identify fraud risk exposure.

27. Standards, guidelines, rules, and/or regulations set by PPFA as conditions of affiliation by PPSA, including but not limited to:

a. PPFA's mission and priorities;

b. PPFA's Standards of Affiliation;

c. Planned Parenthood's Planned Parenthood Experience (PPX) and In This Together (ITT) Workplace Values and Service Standards;

d. PPFA's financial benchmarks;

e. Affiliate Development and Accreditation Committee Standard Operating Procedures;

f. National Program Support (NPS) Plan;

g. PPFA Accounting and Reporting Standards; and

h. PPFA's Orientation and Training Requirements

28. PPFA's review or evaluation of Planned Parenthood affiliates, including but not limited to:

    a.     PPFA's accreditation review process;

    b.     PPFA's review of PPSA's business operations, financials, and clinical services;

    c.     PPFA's review of PPSA's critical programs;

    d.     PPFA's Human Resources audits of PPSA's personnel files and training records;

    e.     Creation of accreditation reports concerning PPSA;

    f.     Creation and use of accreditation assessment tools and their contents;

    g.     Assessment of PPSA's compliance with PPFA's accreditation standards; and

    h.     PPFA's on-boarding/training requirements for Planned Parenthood affiliate entities, including PPSA.

29.    Documentation and information required to be provided to PPFA by PPSA, including but not limited to:

    a.     Affiliate Accreditation Attestation Forms;

    b.     Quarterly Affiliate Financial Reports (QAFR);

    c.     Quarterly Volume Reports (Q-VOL);

    d.     Monthly Volume Reports (MVOL);

    e.     Financial audits;

    f.     A-133 compliance reports;

    g.     Annual Affiliate Financial Reports (AAFR);

    h.     Data and information in the Data Analytics Database (DAD);

    i.     Annual Affiliate Services Censuses (AASC);

    j.     Payments to the National Insurance Program;

    k.     Affiliate Risk Management Services, Inc. (ARMS) reports; and

    l.     Affiliate Accounting and Reporting Standards Assessment and Planning Tools.

30. PPFA's authority to revoke PPSA's status as a Planned Parenthood affiliate entity, the circumstances by which PPFA could exercise that authority, and any efforts by PPFA to revoke PPSA's status as a Planned Parenthood affiliate entity.

31. PPFA's authority to impose Corrective Action Plans on PPSA, the circumstances by which PPFA could exercise that authority, and any efforts by PPFA to impose Corrective Action Plans on PPSA.

32. Current or former PPSA employees, staff, contractors, directors, board members, and/or representatives of PPSA who serve or have served on the PPFA Board of Directors and/or on any committee of the PPFA Board of Directors.

33. Current or former PPFA employees, staff, contractors, directors, board members, and/or representatives of PPFA who serve or have served on the PPSA Board of Directors and/or on any committee of the PPSA Board of Directors.

34. PPFA's relationships with PPSA's CEO, employees, staff, contractors, directors, board members, and/or other representatives of PPSA.

35. PPFA's provision of legal services, legal advice, and legal representation to PPSA.

36. PPFA's role in litigation involving or on behalf of PPSA.

37. PPSA's access to the PPFA Extranet, Intranet, and Affiliate Risk Management Services, Inc. (ARMS) website, and the content, documents and information on PPFA's Extranet, Intranet, and ARMS website concerning Medicaid.

38. PPSA's involvement with ARMS and the submission of claims for reimbursement for services provided under Texas Medicaid and/or Louisiana Medicaid.

39. PPSA's compliance program(s), including but not limited to:

    a. Compliance program oversight by a compliance officer, internal compliance committee, and board of directors;

    b. Written standard of conduct and policies and procedures;

    c.     Compliance education and training for employees and contracted individuals;

    d.    Reporting mechanisms for communicating concerns and suspected violations of applicable laws or internal policies;

    e.    Routine auditing and monitoring of compliance-related areas of risk;

    f.     Investigations of allegations of non-compliance, and corrective action implemented; and/or

    g.    Uniform disciplinary action to properly address non-compliant behavior.

40.    PPSA's policies and procedures for the prevention, detection and reporting of health care fraud and abuse, including but not limited to training provided to PPSA staff for the prevention, detection and reporting of health care fraud and abuse.

41.    Reports of Health Care Compliance Program activities provided by a Health Care Compliance Officer to the PPSA Board of Directors, member(s) of the PPSA Board of Directors, and/or committee(s) of the PPSA Board of Directors.

42.    PPSA's access to ARMS Connect and the Center for Affiliated Learning, including the content of the learning or training courses and materials on ARMS Connect and/or the Center for Affiliated Learning concerning Medicaid.

43.    PPSA's access to the PPFA Medical Services blog, including the content of newly released materials, items of note, and information on the PPFA Medical Services Blog concerning Medicaid.

44.    Financial support provided by PPFA to PPSA, and conditions precedent to PPFA's financial support of PPSA.

45.    Services provided by PPFA to PPSA, and conditions precedent to PPFA providing services to PPSA.

46.    PPFA's involvement with PPSA's communications with the media and/or the public, including but not limited to "Talking Points" for PPSA.

47.    Revenue-sharing arrangements and/or agreements between PPFA and PPSA.

48.    Payments made to PPFA and/or any PPFA related entity (including but not limited to ARMS, Policyholders' Trust, Afaxys, Kaleido Health Systems,

Planned Parenthood Direct) by PPSA and/or any PPSA related entity, including but not limited to:

    a.    Types of payments;

    b.    Amounts of payments;

    c.    Sources of payments;

    d.    Requirements of payments;

    e.    Timing of payments;

    f.    How payments are calculated;

    g.    The person(s) who makes payments;

    h.    The person(s) who receive payments;

    i.    Records reflecting payments;

    j.    How PPFA utilizes payments; and

    k.    Consequences for failure to make payments.

49.    Payments made to PPFA and/or any PPFA related entity of any monies or funds that were paid to or received by PPSA and/or any PPSA related entity from Texas Medicaid.

50.    Payments made to PPFA and/or any PPFA related entity of any monies or funds that were paid to or received by PPSA and/or any PPSA related entity from Louisiana Medicaid.

51.    Payments made to PPSA and/or any PPSA related entity by PPFA and/or any PPFA related entity, including but not limited to:

    a.    Types of payments;

    b.    Amounts of payments;

    c.    Sources of payments;

    d.    Requirements of payments;

    e.    Timing of payments;

    f.    How payments are calculated;

g.     The person(s) who makes payments;

h.     The person(s) who receives payments;

i.     Records reflecting payments;

j.     How Planned Parenthood affiliates utilize payments; and

k.     Consequences for failure to make payments.

52.    The Texas Health and Human Services Commission—Office of the Inspector General's ("HHSC-OIG") initiation of termination proceedings in October 2015 against one or more of the following Planned Parenthood affiliates:

a.     Planned Parenthood Gulf Coast, Inc.;

b.     Planned Parenthood of Greater Texas, Inc.;

c.     Planned Parenthood South Texas, Inc.;

d.     Planned Parenthood Cameron County, Inc.; and

e.     Planned Parenthood San Antonio, Inc.

53.    The Texas Health and Human Services Commission—Office of the Inspector General's ("HHSC-OIG") October 2015 decision to initiate termination proceedings against the Planned Parenthood affiliates, litigation in federal and state courts concerning termination of the Planned Parenthood affiliates from Texas Medicaid, and PPFA's role and involvement in litigation concerning the termination from Texas Medicaid.

54.    The Louisiana Department of Health's September 2015 decision to initiate termination proceedings against the Planned Parenthood affiliates, litigation in federal and state courts concerning termination of the Planned Parenthood affiliates from Louisiana Medicaid, and PPFA's role and involvement in litigation concerning the termination from Louisiana Medicaid.

55.    PPSA's communications with PPFA concerning the matters described in paragraphs 52-54 above.

56.    PPSA's claims for reimbursement submitted to Texas Medicaid and Louisiana Medicaid for services rendered between January 1, 2010 and March 12, 2021.

57.   PPSA's knowledge of whether payments from Texas Medicaid and Louisiana Medicaid for services rendered between January 1, 2010 and March 12, 2021 have been refunded or repaid to Texas Medicaid and Louisiana Medicaid.

58.   PPFA's indemnification of PPSA and/or any PPSA related entity for acts or omissions arising from PPSA's participation in, or any payments received from, any state or federal program.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN E. COWLES**
Deputy Attorney General for Civil Litigation

*/S/ Raymond Charles Winter*
**RAYMOND CHARLES WINTER**
Chief, Civil Medicaid Fraud Division
Texas Bar No. 21791950

**AMY S. HILTON**
Assistant Attorney General
General Litigation Division
State Bar No. 24097834

Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 / Fax (512) 320-0667
Raymond.Winter@oag.texas.gov
Amy.Hilton@oag.texas.gov

**Attorneys for State of Texas**

11

/s/ Andrew B. Stephens
**Heather Gebelin Hacker**
Texas Bar No. 24103325
**Andrew B. Stephens**
Texas Bar No. 24079396
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
(512) 399-3022
heather@hackerstephens.com
andrew@hackerstephens.com

**Attorneys for Relator**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 6, 2022, this document was served on all counsel of record via email.

<u>/s/ Raymond Charles Winter</u>
Raymond Charles Winter

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ALEX DOE, Relator, | § § § | |
| THE STATE OF TEXAS, *ex rel.* ALEX DOE, Relator, | § § § | |
| THE STATE OF LOUISIANA, *ex rel.* ALEX DOE, Relator, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 2:21-CV-00022-Z |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., PLANNED PARENTHOOD GULF COAST, INC., PLANNED PARENTHOOD OF GREATER TEXAS, INC., PLANNED PARENTHOOD SOUTH TEXAS, INC., PLANNED PARENTHOOD CAMERON COUNTY, INC., PLANNED PARENTHOOD SAN ANTONIO, INC., | § § § § § § § § § § § § § § | |
| Defendants. | § | |

**PLAINTIFFS' NOTICE OF 30(b)(6) DEPOSITION OF PLANNED**
**PARENTHOOD CAMERON COUNTY, INC.**

Please take notice that pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, Plaintiffs will take the deposition of Planned Parenthood Cameron

County, Inc. ("PPCC") on November 7, 2022, beginning at 9:00 a.m., at the Office of

the Attorney General of Texas, 300 West 15th Street, Austin, Texas 78701. The

deposition will be stenographically and electronically recorded and will be videotaped. The deposition will be used for discovery and/or evidentiary purposes to the full extent allowed by the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

Pursuant to Rule 30(b)(6), PPCC shall designate one or more individuals to testify as to all information reasonably available to PPCC concerning the following subjects:

1.  PPCC's formation, PPCC's corporate and organizational structure from 2005 to 2021, and reorganizations or changes thereto.

2.  PPCC's by-laws and articles of incorporation.

3.  PPCC's Human Resources Department, Human Resource Organizational Structure, and Human Resource Reporting Requirements.

4.  PPCC's training requirements from 2005-2021.

5.  PPCC's status as a 501(c)(3) tax-exempt organization and obligation to protect the 501(c)(3) tax-exempt status of PPFA.

6.  PPCC board of directors' role in adopting, monitoring, and reporting PPCC's annual budget.

7.  PPCC board members' personal financial contributions to PPCC.

8.  PPCC's knowledge and understanding of Medicaid program requirements.

9.  PPCC's participation in Texas and Louisiana Medicaid, including, but not limited to:

    a.  PPCC's enrollment in Texas and Louisiana Medicaid;

    b.  PPCC's submission of claims for reimbursement to Texas and Louisiana Medicaid;

2

    c.    Communications between Texas and Louisiana Medicaid and PPCC; and

    d.    Termination of PPCC as a provider in Texas and Louisiana Medicaid.

10.    PPCC's knowledge and understanding of the Texas Medicaid Provider Procedures Manual and the Louisiana Medicaid Provider Procedures Manual.

11.    PPCC's knowledge and understanding of the Texas Medicaid Provider Agreements and the Louisiana Medicaid Provider Agreements executed and submitted by PPCC.

12.    PPCC's regulatory compliance practices.

13.    PPCC's compliance with Medicaid laws, rules, regulations, and policies.

14.    PPCC's process for submission of claims for reimbursement to Texas Medicaid and Louisiana Medicaid from 2005-2021, including but not limited to:

    a.    The person(s) responsible for submitting claims; and

    b.    The process for reviewing and/or verifying the accuracy of claims.

15.    PPCC's process for refunding or repaying overpayments to Texas Medicaid and Louisiana Medicaid from 2005-2021, including but not limited to:

    a.    The person(s) responsible for identifying overpayments;

    b.    The person(s) responsible for remitting overpayments; and

    c.    The person(s) responsible for reviewing, approving, and confirming the remittance of overpayments.

16.    PPCC's Risk and Quality Management (RQM) program(s) from 2005-2021.

17.    PPCC's Health Care Compliance Program(s) from 2005-2021.

18.    PPFA's knowledge, control, ownership, oversight, connection, relationship, and/or other involvement with PPCC.

19.    PPCC's knowledge, relationship, connection, and/or involvement with other Planned Parenthood affiliates or related entities, including but not limited to:

a. Planned Parenthood of Greater Texas, Inc.;

b. Planned Parenthood South Texas, Inc.;

c. Planned Parenthood Cameron County, Inc.;

d. Planned Parenthood San Antonio, Inc.;

e. Planned Parenthood Action Fund;

f. BetterHealth;

g. Affiliate Risk Management Services (ARMS);

h. Policyholders' Trust;

i. Afaxys;

j. Kaleido Health Systems;

k. Planned Parenthood Direct;

l. Online Health Services;

m. Planned Parenthood Care; and

n. Clinical Health Network for Transformation.

20. Agreements between PPCC and PPFA, including but not limited to agreements concerning the following:

a. Affiliation;

b. Revenue sharing;

c. Fundraising;

d. Legal representation; and

e. Disposition of assets after dissolution of PPCC.

21. Agreements between PPCC and any other Planned Parenthood affiliate or related entity, including but not limited to agreements concerning the following:

a. Affiliation;

     b.      Revenue sharing;

     c.      Fundraising;

     d.      Legal representation; and

     e.      Disposition of assets after dissolution of PPCC.

22. PPFA's management, control, and/or oversight of PPCC employees and/or other individuals hired by, assigned to, or who provide services to PPCC.

23. Requirements for PPCC to report employee information to PPFA.

24. Requirements for PPCC to obtain approval from PPFA for PPCC business operations.

25. PPCC's training requirements for PPCC employees and/or other individuals hired by, assigned to, or who provide services to PPCC.

26. PPFA's audits of PPCC from 2005-2021, including but not limited to PPFA's audits to identify fraud risk exposure.

27. Standards, guidelines, rules, and/or regulations set by PPFA as conditions of affiliation by PPCC, including but not limited to:

     a.      PPFA's mission and priorities;

     b.      PPFA's Standards of Affiliation;

     c.      Planned Parenthood's Planned Parenthood Experience (PPX) and In This Together (ITT) Workplace Values and Service Standards;

     d.      PPFA's financial benchmarks;

     e.      Affiliate Development and Accreditation Committee Standard Operating Procedures;

     f.      National Program Support (NPS) Plan;

     g.      PPFA Accounting and Reporting Standards; and

     h.      PPFA's Orientation and Training Requirements

28. PPFA's review or evaluation of Planned Parenthood affiliates, including but not limited to:

    a.    PPFA's accreditation review process;

    b.    PPFA's review of PPCC's business operations, financials, and clinical services;

    c.    PPFA's review of PPCC's critical programs;

    d.    PPFA's Human Resources audits of PPCC's personnel files and training records;

    e.    Creation of accreditation reports concerning PPCC;

    f.    Creation and use of accreditation assessment tools and their contents;

    g.    Assessment of PPCC's compliance with PPFA's accreditation standards; and

    h.    PPFA's on-boarding/training requirements for Planned Parenthood affiliate entities, including PPCC.

29.    Documentation and information required to be provided to PPFA by PPCC, including but not limited to:

    a.    Affiliate Accreditation Attestation Forms;

    b.    Quarterly Affiliate Financial Reports (QAFR);

    c.    Quarterly Volume Reports (Q-VOL);

    d.    Monthly Volume Reports (MVOL);

    e.    Financial audits;

    f.    A-133 compliance reports;

    g.    Annual Affiliate Financial Reports (AAFR);

    h.    Data and information in the Data Analytics Database (DAD);

    i.    Annual Affiliate Services Censuses (AASC);

    j.    Payments to the National Insurance Program;

    k.    Affiliate Risk Management Services, Inc. (ARMS) reports; and

    l.    Affiliate Accounting and Reporting Standards Assessment and Planning Tools.

30.     PPFA's authority to revoke PPCC's status as a Planned Parenthood affiliate entity, the circumstances by which PPFA could exercise that authority, and any efforts by PPFA to revoke PPCC's status as a Planned Parenthood affiliate entity.

31.     PPFA's authority to impose Corrective Action Plans on PPCC, the circumstances by which PPFA could exercise that authority, and any efforts by PPFA to impose Corrective Action Plans on PPCC.

32.     Current or former PPCC employees, staff, contractors, directors, board members, and/or representatives of PPCC who serve or have served on the PPFA Board of Directors and/or on any committee of the PPFA Board of Directors.

33.     Current or former PPFA employees, staff, contractors, directors, board members, and/or representatives of PPFA who serve or have served on the PPCC Board of Directors and/or on any committee of the PPCC Board of Directors.

34.     PPFA's relationships with PPCC's CEO, employees, staff, contractors, directors, board members, and/or other representatives of PPCC.

35.     PPFA's provision of legal services, legal advice, and legal representation to PPCC.

36.     PPFA's role in litigation involving or on behalf of PPCC.

37.     PPCC's access to the PPFA Extranet, Intranet, and Affiliate Risk Management Services, Inc. (ARMS) website, and the content, documents and information on PPFA's Extranet, Intranet, and ARMS website concerning Medicaid.

38.     PPCC's involvement with ARMS and the submission of claims for reimbursement for services provided under Texas Medicaid and/or Louisiana Medicaid.

39.     PPCC's compliance program(s), including but not limited to:

 a.     Compliance program oversight by a compliance officer, internal compliance committee, and board of directors;

 b.     Written standard of conduct and policies and procedures;

c.     Compliance education and training for employees and contracted individuals;

d.     Reporting mechanisms for communicating concerns and suspected violations of applicable laws or internal policies;

e.     Routine auditing and monitoring of compliance-related areas of risk;

f.     Investigations of allegations of non-compliance, and corrective action implemented; and/or

g.     Uniform disciplinary action to properly address non-compliant behavior.

40.     PPCC's policies and procedures for the prevention, detection and reporting of health care fraud and abuse, including but not limited to training provided to PPCC staff for the prevention, detection and reporting of health care fraud and abuse.

41.     Reports of Health Care Compliance Program activities provided by a Health Care Compliance Officer to the PPCC Board of Directors, member(s) of the PPCC Board of Directors, and/or committee(s) of the PPCC Board of Directors.

42.     PPCC's access to ARMS Connect and the Center for Affiliated Learning, including the content of the learning or training courses and materials on ARMS Connect and/or the Center for Affiliated Learning concerning Medicaid.

43.     PPCC's access to the PPFA Medical Services blog, including the content of newly released materials, items of note, and information on the PPFA Medical Services Blog concerning Medicaid.

44.     Financial support provided by PPFA to PPCC, and conditions precedent to PPFA's financial support of PPCC.

45.     Services provided by PPFA to PPCC, and conditions precedent to PPFA providing services to PPCC.

46.     PPFA's involvement with PPCC's communications with the media and/or the public, including but not limited to "Talking Points" for PPCC.

47.     Revenue-sharing arrangements and/or agreements between PPFA and PPCC.

48.     Payments made to PPFA and/or any PPFA related entity (including but not limited to ARMS, Policyholders' Trust, Afaxys, Kaleido Health Systems,

Planned Parenthood Direct) by PPCC and/or any PPCC related entity, including but not limited to:

    a.    Types of payments;

    b.    Amounts of payments;

    c.    Sources of payments;

    d.    Requirements of payments;

    e.    Timing of payments;

    f.    How payments are calculated;

    g.    The person(s) who makes payments;

    h.    The person(s) who receive payments;

    i.    Records reflecting payments;

    j.    How PPFA utilizes payments; and

    k.    Consequences for failure to make payments.

49.    Payments made to PPFA and/or any PPFA related entity of any monies or funds that were paid to or received by PPCC and/or any PPCC related entity from Texas Medicaid.

50.    Payments made to PPFA and/or any PPFA related entity of any monies or funds that were paid to or received by PPCC and/or any PPCC related entity from Louisiana Medicaid.

51.    Payments made to PPCC and/or any PPCC related entity by PPFA and/or any PPFA related entity, including but not limited to:

    a.    Types of payments;

    b.    Amounts of payments;

    c.    Sources of payments;

    d.    Requirements of payments;

    e.    Timing of payments;

    f.    How payments are calculated;

g.     The person(s) who makes payments;

h.     The person(s) who receives payments;

i.     Records reflecting payments;

j.     How Planned Parenthood affiliates utilize payments; and

k.     Consequences for failure to make payments.

52.   The Texas Health and Human Services Commission—Office of the Inspector General's ("HHSC-OIG") initiation of termination proceedings in October 2015 against one or more of the following Planned Parenthood affiliates:

a.     Planned Parenthood Gulf Coast, Inc.;

b.     Planned Parenthood of Greater Texas, Inc.;

c.     Planned Parenthood South Texas, Inc.;

d.     Planned Parenthood Cameron County, Inc.; and

e.     Planned Parenthood San Antonio, Inc.

53.   The Texas Health and Human Services Commission—Office of the Inspector General's ("HHSC-OIG") October 2015 decision to initiate termination proceedings against the Planned Parenthood affiliates, litigation in federal and state courts concerning termination of the Planned Parenthood affiliates from Texas Medicaid, and PPFA's role and involvement in litigation concerning the termination from Texas Medicaid.

54.   The Louisiana Department of Health's September 2015 decision to initiate termination proceedings against the Planned Parenthood affiliates, litigation in federal and state courts concerning termination of the Planned Parenthood affiliates from Louisiana Medicaid, and PPFA's role and involvement in litigation concerning the termination from Louisiana Medicaid.

55.   PPCC's communications with PPFA concerning the matters described in paragraphs 52-54 above.

56.   PPCC's claims for reimbursement submitted to Texas Medicaid and Louisiana Medicaid for services rendered between January 1, 2010 and March 12, 2021.

57.   PPCC's knowledge of whether payments from Texas Medicaid and Louisiana Medicaid for services rendered between January 1, 2010 and March 12, 2021 have been refunded or repaid to Texas Medicaid and Louisiana Medicaid.

58.   PPFA's indemnification of PPCC and/or any PPCC related entity for acts or omissions arising from PPCC's participation in, or any payments received from, any state or federal program.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN E. COWLES**
Deputy Attorney General for Civil Litigation

*/S/ Raymond Charles Winter*
**RAYMOND CHARLES WINTER**
Chief, Civil Medicaid Fraud Division
Texas Bar No. 21791950

**AMY S. HILTON**
Assistant Attorney General
General Litigation Division
State Bar No. 24097834

Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 / Fax (512) 320-0667
Raymond.Winter@oag.texas.gov
Amy.Hilton@oag.texas.gov

**Attorneys for State of Texas**

/s/ Andrew B. Stephens
**Heather Gebelin Hacker**
Texas Bar No. 24103325
**Andrew B. Stephens**
Texas Bar No. 24079396
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
(512) 399-3022
heather@hackerstephens.com
andrew@hackerstephens.com

**Attorneys for Relator**

12

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2022, this document was served on all counsel of record via email.

/s/ Raymond Charles Winter
Raymond Charles Winter