# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

| | | |
|---|---|---|
| United States of America<br>*ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| | § | |
| The State of Texas | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| | § | CIVIL ACTION NO. |
| The State of Louisiana | § | 2:21-CV-00022-Z |
| *ex rel.* ALEX DOE, Relator, | § | |
|       Plaintiffs, | § | Date:     November 17, 2022 |
| v. | § | |
| Planned Parenthood Federation of America, Inc., | § | |
| Planned Parenthood Gulf Coast, Inc., Planned | § | |
| Parenthood of Greater Texas, Inc., Planned | § | |
| Parenthood South Texas, Inc., Planned Parenthood | § | |
| Cameron County, Inc., Planned Parenthood San | § | |
| Antonio, Inc., | § | |
|       Defendants. | § | |
| | § | |
| | § | |

# DEFENDANTS' OPPOSITION TO
# TEXAS'S MOTION TO QUASH AND FOR PROTECTIVE ORDER

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

LEGAL STANDARDS ......................................................................................................... 2

BACKGROUND .................................................................................................................... 2

ARGUMENT .......................................................................................................................... 6

  I. Texas Waived the Medicaid Investigative Privilege By Eliciting, and Not
    Objecting to, Mr. Bowen's and Dr. Spears's Privileged Testimony in Open Court ............... 6

    A.    Texas Statutory Privileges Can Be Waived .................................................... 6

    B.    Mr. Bowen and Dr. Spears's Testimony in Open Court Was Outside the Texas
        Medicaid Investigative Privilege's Permitted Disclosures ........................................... 9

    C.    Texas Waived the Medicaid Investigative Privilege .................................................. 12

        1.    Texas Waived the Privilege Through Voluntary Disclosure ................................. 12

        2.    Texas Has Also Waived the Medicaid Investigative Privilege By Attempting to
            Use It as a Sword and a Shield ........................................................................ 15

  II. Texas Has Waived Privilege Over the Subject Matter of Mr. Bowen's and Dr. Spears's
    Prior Testimony ............................................................................................................... 18

CONCLUSION ........................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams v. Mem'l Hermann*,
    973 F.3d 343 (5th Cir. 2020) ..............................................................................11

*Alford v. Bryant*,
    137 S.W.3d 916 (Tex. App.—Dallas 2004)...............................................8, 17, 18

*Alldread v. Grenada*,
    988 F.2d 1425 (5th Cir. 1993) ...............................................................................7

*Am. C.L. Union of Miss., Inc. v. Finch*,
    638 F.2d 1336 (5th Cir. 1981) ...............................................................................2

*Am. C.L. Union v. Dep't of Just.*,
    No. 15-civ-1954, 2016 WL 889739 (S.D.N.Y. Mar. 4, 2016)................................7

*Am. Oversight v. Dep't of Just.*,
    45 F.4th 579 (2d Cir. 2022) ...................................................................................7

*In re Application of Chevron Corp. v. 3TM Consulting, LLC*,
    No. MC-H-10-134, 2011 WL 13135155 (S.D. Tex. Jan. 10, 2011) .....................16

*Asset Funding Grp, LLC v. Adams & Reese, LP*,
    No. 07-2965, 2008 WL 4186884 (E.D. La. Sept. 9, 2008)...................................16

*U.S. ex rel. Banigan v. Organon USA, Inc.*,
    2013 WL 139735 (D. Mass. Jan. 9, 2013), *vacated in part*, 2013 WL
    12437578 (D. Mass. Oct. 8, 2013)........................................................................10

*Bliss v. Fisher*,
    743 F. Supp. 2d 25 (D. Mass. 2010) .....................................................................15

*Blue Lake Forest Prods., Inc. v. United States*,
    75 Fed. Cl. 779 (Fed. Cl. 2007) ...........................................................................14

*Christopher v. SmithKline Beecham Corp.*,
    567 U.S. 142 (2012).............................................................................................10

*Clark v. United States*,
    289 U.S. 1 (1933)...................................................................................................7

*In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*,
    293 F.3d 289 (6th Cir. 2002) ...............................................................................14

*Conkling v. Turner*,
    883 F.2d 431 (5th Cir. 1989) ...............................................................................16

*Coorstek Inc. v. Reiber*,
    No. 08-cv-01133, 2010 WL 1332845 (D. Colo. Apr. 5, 2010) ............................13

*Crosby v. Blue Cross Blue Shield of La.*,
    No. 08-0693, 2012 WL 5450040 (E.D. La. Nov. 7, 2012)...................................16

*David v. Signal Int'l, LLC,*
 No. 08-1220, 2009 WL 5215326 (E.D. La. Dec. 28, 2009) ...................................................13

*Doe 1 v. Baylor Univ.,*
 320 F.R.D. 430 (W.D. Tex. 2017) ........................................................................................19

*In re E.C.,*
 444 S.W.3d 760 (Tex. App.—Ft. Worth 2014) ....................................................................13

*Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.,*
 876 F.3d 690 (5th Cir. 2017) ........................................................................................2, 20

*FDIC v. Wise,*
 139 F.R.D. 168 (D. Co. 1991) .............................................................................................17

*Gen. Elec. Co. v. Mitsubishi Heavy Indus. Ltd.,*
 No. 10-cv-276-F, 2013 WL 12226037 (N.D. Tex. Apr. 5, 2013)........................................14

*Health Care Servs. Corp. v. Methodist Hosps. of Dallas,*
 814 F.3d 242 (5th Cir. 2016) ................................................................................................9

*In re Itron, Inc.,*
 883 F.3d 553 (5th Cir. 2018) ..............................................................................................13

*John Doe Co. v. United States,*
 350 F.3d 299 (2d Cir. 2003).........................................................................................17, 19

*Jordan v. Ct. of Appeals,*
 701 S.W.2d 644 (Tex. 1986)..................................................................................................8

*In re Kellogg Brown & Root, Inc.,*
 756 F.3d 754 (D.C. Cir. 2014) ............................................................................................14

*In re Kidder Peabody Sec. Lit.,*
 168 F.R.D. 459 (S.D.N.Y. 1996) .........................................................................................17

*Langham v. Gray,*
 227 S.W. 741 (Tex. Civ. App.—Beaumont 1920).................................................................13

*McClure v. Fall,*
 42 S.W.2d 821 (Tex. Civ. App.—Waco 1931), *aff'd,* 67 S.W.2d 231 (Tex.
 Comm'n App. 1934) .............................................................................................................14

*Meadows v. Latshaw Drilling Co. LLC,*
 No. 15-cv-01173-N, 2017 WL 11494495 (N.D. Tex. Mar. 8, 2017) ....................................16

*N.Y. Times v. Dep't of Just.,*
 939 F.3d 479 (2nd Cir. 2019)...............................................................................................7

*Nat'l Polymer Prods., Inc. v. Borg–Warner Corp.,*
 641 F.2d 418 (6th Cir.1981) ...............................................................................................13

*New Hampshire v. Maine,*
 532 U.S. 742 (2001) ...........................................................................................................10

*Nguyen v. Excel Corp.,*
 197 F.3d 200 (5th Cir. 1999) .........................................................................................13, 18

*In re Ortuno*,
No. 14–08–00457–CV, 2008 WL 2855028 (Tex. App.—Houston [14th Dist.]
July 24, 2008)....................................................................................................13

*Paxton v. Tex. Dep't of State Health Servs.*,
500 S.W.3d 702 (Tex. App.—Austin 2016) ...................................................9, 17

*Pearson v. Miller*,
211 F.3d 57 (3d Cir. 2000)......................................................................................7

*Planned Parenthood of Greater Tex. Fam. Planning & Preventative Health*
*Servs., Inc. v. Kauffman*,
981 F.3d 347 (5th Cir. 2019) ...............................................................................5

*Planned Parenthood of Greater Tex. Fam. Planning & Preventative Health*
*Servs., Inc. v. Smith*,
913 F.3d 551 (5th Cir. 2019) ...............................................................................5

*Ross v. St. Luke's Episcopal Hosp.*,
462 S.W.3d 496 (Tex. 2015)...............................................................................10

*SEC v. Microtune, Inc.*,
258 F.R.D. 310 (N.D. Tex. 2009) ......................................................................19

*SEC v. Brady*,
238 F.R.D. 429 (N.D. Tex. 2006) .................................................................14, 18

*Shields v. Sturm, Ruger & Co.*,
864 F.2d 379 (5th Cir. 1989) .............................................................................19

*Stroud Oil Props., Inc. v. Henderson*,
No. 02–03–003–CV, 2003 WL 21404820
(Tex. App.—Fort Worth June 19, 2003)............................................................14

*In re Subpoena Duces Tecum*,
738 F.2d 1367 (D.C. Cir. 1984) .........................................................................11

*Terrell State Hosp. v. Ashworth*,
794 S.W.2d 937 (Tex. App.—Dallas 1990).........................................................8

*Tex. Dep't of Pub. Safety Officers Ass'n v. Denton*,
897 S.W.2d 757 (Tex. 1995)...............................................................................17

*United States v. El Paso Co.*,
682 F.2d 530 (5th Cir. 1982) ...................................................................11, 15, 18

*United States v. Louisville & Nashville R.R. Co.*,
236 U.S. 318 (1915)...............................................................................................6

*United States v. Mann*,
61 F.3d 326 (5th Cir. 1995) ...................................................................................7

*United States v. Murra*,
879 F.3d 669 (5th Cir. 2018) ...............................................................................11

*United States v. Nixon*,
418 U.S. 683 (1974)......................................................................................2, 6, 7

*United States v. Nobles*,
    422 U.S. 225 (1975)............................................................................................18

*United States v. Suarez*,
    820 F.2d 1158 (11th Cir. 1987) ....................................................................14

*United States v. Zubaydah*,
    142 S.Ct. 959 (2022)..........................................................................................7

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981)....................................................................................6, 11

*Whitaker Chalk Swindle & Sawyer, LLP v. Dart Oil & Gas Corp.*,
    No. 08-cv-684-Y, 2009 WL 464989 (N.D. Tex. Feb. 23, 2009) ...............14

## Statutes

Tex. Gov't Code § 531.1021(g)...........................................................6, 9, 12, 13

## Other Authorities

Fed. R. Civ. P. 26(b) .............................................................................................20
Fed. R. Civ. P. 30(d)(3)...........................................................................................2
Fed. R. Civ. P. 501...................................................................................................7
Fed. R. Civ. P. 502(a) ............................................................................................19
Fed. R. Civ. P. 26(c) ................................................................................................2
Tex. R. Evid. 511...............................................................................................8, 14
Tex. Reply in Supp. of Mot. to Quash, *U.S. ex rel. Banigan v. Organon USA Inc.*,
    ECF 219, No. 07-12153 (D. Mass. Dec. 28, 2012) ...............................9, 10
Transcript of Hearing of January 18, 2017, *Planned Parenthood of Greater Tex.*
    *Fam. Planning & Preventative Health Servs., Inc. v. Smith*, ECF 134,
    No. 1:15-cv-01058 (W.D. Tex. May 4, 2017) ................................3, 4, 5

Planned Parenthood Federation of America, Inc. ("PPFA"), Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc. ("Affiliate Defendants") (all collectively, "Defendants") hereby oppose the State of Texas's Motion to Quash and for Protective Order, Dkt. 275 (the "Motion" or "Mot.").

## INTRODUCTION

Nearly six years ago, Texas called then-Inspector General for Texas Health and Human Services Commission, Office of Inspector General ("OIG"), Stuart Bowen, and OIG Chief Medical Officer Ted Spears to testify in open court about OIG's investigation of Affiliate Defendants that resulted in Affiliate Defendants' termination from Texas Medicaid. Texas affirmatively elicited on direct examination detailed descriptions of the conduct, methodology, and results of the OIG investigation and permitted extensive cross-examination on the same topics—never objecting that such information was protected by the Medicaid Investigative Privilege. Voluntary public disclosure of the details of OIG's investigation of Affiliate Defendants in open court is textbook privilege waiver (assuming any privilege existed in the first place). Despite this extensive, publicly available testimony, Texas has now taken the remarkable position—in a case based on Texas's termination of Affiliate Defendants from Medicaid—that testimony from Dr. Spears and Mr. Bowen on the same subject matter is absolutely privileged. Texas has even gone so far as to assert that it will prohibit those witnesses from answering *the exact same questions* they answered during their prior testimony. Texas's position has no basis in the law, which likely explains the complete absence of any authority supporting its position in the Motion to Quash. For these reasons and as discussed more fully below, the Court should overrule Texas's privilege claim as to the testimony of Mr. Bowen and Dr. Spears and deny Texas's Motion.

1

## LEGAL STANDARDS

Rule 26(c) of the Federal Rules of Civil Procedure permits a court "for good cause" to "issue an order to protect a party or person" by, among other things, "forbidding the disclosure or discovery [sought]" or "forbidding inquiry into certain matters." *See* Fed. R. Civ. P. 26(c).[1] "The movant bears the burden of showing that a protective order is necessary." *Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 698 (5th Cir. 2017). "Privileges are strongly disfavored in federal practice," *Am. C.L. Union of Miss., Inc. v. Finch*, 638 F.2d 1336, 1344 (5th Cir. 1981), and are narrowly construed because "they are in derogation of the search for truth," *United States v. Nixon*, 418 U.S. 683, 709–10 (1974). "[T]he party asserting the privilege bears the burden of proof," and any "[a]mbiguities" regarding applicability of privilege "are construed against the proponent." *BDO*, 876 F.3d at 695.

## BACKGROUND

Plaintiffs' claims in this action arise from OIG's investigation of Affiliate Defendants, which led to its initiation of "proceedings to terminate [certain Affiliate Defendants'] Medicaid provider credentials." Compl. in Intervention (Dkt. 22) ¶ 4; *see also* Tex. Opp'n to Mot. to Dismiss (Dkt. 62) at 20 (alleging that "PPFA directed and participated in Defendants' wrongdoing which led to their termination from the Medicaid Program"); Relator Compl. (Dkt. 2) ¶ 9 (stating that the "Plaintiff States," including Texas, "had relied upon [Relator's videos] in determining that Planned Parenthood was not qualified to participate in the Medicaid program."); *id.* ¶¶ 79–80, 84, 91 93, 97, 107-08 (additional allegations regarding Texas's investigation, including specific evidence it

---

[1] In addition to Rule 26(c), Texas purports to move pursuant to Rule 30(d)(3). *See* Mot. at 2. But this rule applies only to motions made "during a deposition." *See* Fed. R. Civ. P. 30(d)(3).

reviewed, and initiation of termination proceedings); *id.* at Exs. B & C (attaching Texas OIG termination letters to Relator's Complaint).

Prior to discovery in this lawsuit, Texas never made any effort to maintain the confidentiality of the OIG investigation.  In fact, numerous Texas officials have done precisely the opposite for more than seven years.  For example, in 2015, Governor Greg Abbott gave a nationally televised interview in which he explained the origins of the OIG investigation and disclosed that the Inspector General purportedly had "evidence that Planned Parenthood altered the abortion procedure in order to obtain fetal issue, allowed unsanitary conditions," [and] uncovered more instances" of allegedly fraudulent billing.[2]  A few days later, Mr. Bowen gave an interview about the investigation, providing details about the "process, inclusive of the development of evidence" undertaken by the OIG in response to Relator's "undercover" videos.[3]

Shortly thereafter, Affiliate Defendants filed suit in the U.S. District Court for the Western District of Texas to enjoin their termination from Texas Medicaid.  In January 2017, the district court held an extensive evidentiary hearing in open court, during which Texas presented several witnesses, including Mr. Bowen and Dr. Spears, who testified at length about the OIG investigation.  *See generally* Tr. of Jan. 18, 2017 Mot. Hr'g (Dkt. 134), *Planned Parenthood of Greater Tex. Fam. Planning & Preventative Health Servs., Inc. ("PPGT") v. Smith*, No. 1:15-cv-01058 (W.D. Tex. May 4, 2017) (attached as Ex. A).  Texas's counsel—now serving as Relator's counsel in this action—asked Mr. Bowen to "describe for the Court the substance generally of [OIG's] reviews" of Affiliate Defendants.  *Id.* at 16:12–13.  Texas elicited testimony specifically

---

[2] *ICYMI: Governor Abbott Discusses Ending Medicaid Funding To Planned Parenthood In Texas*, Office of the Texas Gov. (Oct. 20, 2015), https://gov.texas.gov/news/post/icymi_governor_abbott_discusses_ending_medicaid_funding_to_planned_parentho.

[3] *See, e.g.*, Ross Ramsey, *Official: Actions Against Planned Parenthood Are Not Final*, Tex. Tribune (Oct. 24, 2015).

about whether OIG had reviewed certain evidence and what "the result of [OIG's] review of" that evidence was.  *Id.* at 16:22–23.  Texas also repeatedly encouraged Mr. Bowen to testify about specific actions taken in the course of the investigation, including the substance of communications between Mr. Bowen and Dr. Spears and how those communications informed Mr. Bowen's decision to terminate the Texas Affiliates.  *Id.* at 19:20–21, 20:9.  Texas further elicited Mr. Bowen's testimony as to which "specific part of the [CMP] video" informed Mr. Bowen's conclusions, *id.* at 29:1–31:9, 32:5–21, details about any "other documentation" on which Mr. Bowen purportedly relied, *id.* at 34:18–36:3, 36:22–38:15, and how he came to the conclusion that PPFA was supposedly implicated in the conduct, *id.* at 39:24–40:6.  Mr. Bowen also answered a variety of probing, open-ended questions posed by Texas's counsel regarding the investigation.  *See, e.g.*, *id.* at 39:5–8 (Texas's counsel asking Bowen if "there [was] other evidence that was not in the video that you've considered in reaching your decision").

The lengthy cross-examination of Mr. Bowen focused chiefly on "[w]hat investigations [OIG conducted] of the Planned Parenthood entities" that it sought to terminate, *id.* at 50:4–5, including the evidence considered, *e.g., id.* at 44:2–16; 68:25–69:4, 69:17–20, particular investigative steps taken (or not taken) by OIG, *e.g., id.* at 52:6, and whether OIG had uncovered any misrepresentations during its investigation, *id.* at 51:6–16.  Texas never objected on the basis of the Medicaid Investigative Privilege.  *See generally id.* at 41–83.

Dr. Spears also testified regarding the OIG investigation, including his communications and interactions with Mr. Bowen in the course of the investigation.  *Id.* at 87:9–19; *see also id.* at 88:4–5 (Texas arguing to the Court that Dr. Spears's testimony should "be considered for his role he played in [Mr.] Bowen's decisionmaking.").  Texas elicited testimony from Dr. Spears about statements made to OIG about his medical judgment, *id.* at 88:22–23, and when Dr. Spears

4

answered, Texas asked him to elaborate. *Id.* at 89:16–90:20. Again, Texas did not voice any privilege concerns during Dr. Spears's direct examination, and did not lodge a single privilege objection during cross-examination. *Id.* at 90:24–93:3, 94:8–95:13. In addition, to Affiliate Defendants' knowledge, Texas made no effort to close the proceedings prior to or during either witness's testimony, and has never sought to seal these transcripts or other records. Indeed, media reported on Mr. Bowen and Dr. Spears's testimony at the time,[4] and the testimony was later discussed in the district court's preliminary injunction order, as well as the Fifth Circuit's eventual orders vacating that decision. *See PPGT*, 236 F. Supp. 3d 974, 981 (W.D. Tex. 2017) (citing Mr. Bowen's testimony that he "consulted with [Dr. Spears] in deciding to terminate the Provider Plaintiffs from the Texas Medicaid Program, but the ultimate decision to terminate was made by [Mr. Bowen] individually."); *PPGT v. Smith*, 913 F.3d 551, 557 (5th Cir. 2019) (noting testimony below); *PPGT v. Kauffman*, 981 F.3d 347, 352 (5th Cir. 2019) (same). To this day, transcripts of Mr. Bowen and Dr. Spears's testimony are available on the public docket.

Despite this extensive, voluntary, public testimony regarding the OIG investigation of Affiliate Defendants, Texas now takes the position that Affiliate Defendants are not entitled to depose Mr. Bowen and Dr. Spears about any aspect of that investigation because—Texas says— "[a]ny information [they] acquired in their respective capacities at the OIG is categorically protected from discovery by the Medicaid Investigation Privilege" Mot. 5. That position is meritless, for the reasons discussed below.

---

[4] *See, e.g.*, Chuck Lindell, *Texas Official: Video Justified Planned Parenthood Ouster*, Austin American-Statesman (Jan. 18, 2017); Madlin Mekelburg, *State Official Testifies He Has No Evidence Texas Planned Parenthood Clinics Altered Abortion Procedures*, Dallas Morning News (Jan. 18, 2017).

## ARGUMENT

I.   **Texas Waived the Medicaid Investigative Privilege By Eliciting, and Not Objecting to, Mr. Bowen's and Dr. Spears's Privileged Testimony in Open Court**

A.   **Texas Statutory Privileges Can Be Waived**

The Texas Medicaid Investigative Privilege, which this Court has found applicable in this case,[5] protects from disclosure "information and materials subpoenaed or compiled" by Texas OIG in an investigation of "fraud, waste, and abuse." Tex. Gov't Code § 531.1021(g).  As this Court has explained, the purpose of the privilege is to maintain the confidentiality of investigative information and to further the "important policies" served by such confidentiality.  Dkt. 161 at 7 (explaining that confidentiality safeguards confidential health information and ensures the government can fully investigate matters).  The Medicaid Investigative Privilege is therefore no different than any other privilege; it prevents compelled disclosure of otherwise relevant information to protect broader interests.  *See, e.g.*, *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (attorney-client privilege "encourage[s] full and frank communication between attorneys and their clients and thereby promote[s] broader public interests in the observance of law and administration of justice"); *United States v. Louisville & Nashville R.R. Co.*, 236 U.S. 318, 336 (1915) (exposing confidential attorney-client communications to "examination and publication" "would be a practical prohibition upon professional advice and assistance").  But like other privileges, it should be narrowly construed because it is "in derogation of the search for truth," *Nixon*, 418 U.S. at 709–10 (1974), and can be waived by conduct that is inconsistent with confidentiality—including voluntary disclosures to third parties.  *See Alldread v. Grenada*, 988

---

[5] Defendants continue to believe that the Medicaid Investigative Privilege should not apply in this action at all. *See, e.g.,* Dkt. 197.  Defendants understand, however, that the Court has resolved that issue and do not seek to rehash it here.  This brief is limited strictly to waiver through statements made by Texas government officials, which this Court has never addressed.

F.2d 1425, 1434 (5th Cir. 1993) ("Patently, a voluntary disclosure of information which is inconsistent with the confidential nature of [a privileged relationship] waives the privilege."). There is no such thing as an unwaivable privilege in federal court. *See, e.g.*, *Nixon*, 418 U.S. at 709–10 (rejecting argument that the president had an absolute privilege against disclosure of confidential communications and noting that common law privileges are "exceptions to the demand for every man's evidence [and] are not lightly created nor expansively construed"); *Clark v. United States*, 289 U.S. 1, 15 (1933) (examining other established privileges, and noting events causing waiver, in ruling that juror deliberations privilege can be waived); *N.Y. Times v. Dep't of Just.*, 939 F.3d 479, 494 (2nd Cir. 2019) (stating that "[l]ike the other civil discovery privileges, however, the protection afforded by [work product] privilege 'is not absolute'" and a party can waive privilege "by taking actions inconsistent with this its [sic] purpose"); *United States v. Mann*, 61 F.3d 326, 331–32 (5th Cir. 1995) (applying "general rules regarding waiver," including that "conduct that warrants an inference of . . . relinquishment" establishes waiver, even where Federal Rules made certain items "expressly nondiscoverable").[6]

To the extent waiver of the privilege is determined by reference to state law, Texas waiver law mirrors federal law and likewise provides no refuge for Texas. Texas courts have repeatedly

---

[6] *See also Am. Oversight v. Dep't of Just.*, 45 F.4th 579, 593 (2d Cir. 2022) (noting that "[l]ike other discovery privileges, work-product protection is waivable"); *Pearson v. Miller*, 211 F.3d 57, 70–71 (3d Cir. 2000) (holding that despite "very substantial" interests in favor of state-law privilege regarding child abuse reporting recognized in the law of all fifty states, court would not recognize it as "unwaivable" because "such a privilege would be unlike any currently recognized Rule 501 privilege"); *Am. C.L. Union v. Dep't of Just.,* No. 15-civ-1954, 2016 WL 889739, at *3 (S.D.N.Y. Mar. 4, 2016) (citing *In re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997)) (holding that the presidential communications privilege, "like all privileges, can be waived and is waived by the disclosure of the otherwise privileged information to third parties"); *accord United States v. Zubaydah*, 142 S.Ct. 959, 970 (2022) (noting that "information that has entered the public domain *may* nonetheless fall within the scope of the state secrets privilege," and discussing potential waiver standards).

held that "a statutory privilege may be waived by the holder of a privilege," *Alford v. Bryant*, 137 S.W.3d 916, 921 (Tex. App.—Dallas 2004), including through a "voluntary disclosure of the privileged [information]" to a third party. *Jordan v. Ct. of Appeals*, 701 S.W.2d 644, 649 (Tex. 1986). In *Jordan*, the Texas Supreme Court found that a hospital's production of otherwise-protected documents to a grand jury waived any absolute statutory protection, precluding the hospital from invoking it in a subsequent civil suit. *Id.* at 646 (quoting Tex. Civ. Stat. art. 4447d, § 3 (1976)), 649.[7] Like the Medicaid Investigative Privilege, the statutory language examined by the *Jordan* court seemingly barred protected materials from disclosure, including from court subpoena. *Id.* at 646 (describing the records at issue as "protected from discovery" and quoting a statute that provided that protected records "shall be confidential" and "shall not be available for court subpoena"). Texas courts have reaffirmed *Jordan*'s holding time and again, including in cases analyzing statutory privileges with similar construction. *See, e.g.*, *Alford*, 137 S.W.3d at 922 (declining to address whether the communications were protected by a statutory privilege that was "apparently absolute on its face" and another that "allow[ed] for an exception to the bar on disclosure" because privilege had been waived); *Terrell State Hosp. v. Ashworth*, 794 S.W.2d 937, 940 (Tex. App.—Dallas 1990) (applying Texas Rule of Evidence 511 to statutory privilege and affirming trial court ruling that voluntary partial disclosure resulted in an "implied waiver of the privilege as to additional material that has not been disclosed").

---

[7] In *Jordan*, it was not even clear that the disclosure to the grand jury had, in fact, been voluntary. The court nonetheless treated the disclosure as voluntary because the privilege-holder had not carried its burden to show otherwise. 701 S.W.2d at 649.

**B.      Mr. Bowen and Dr. Spears's Testimony in Open Court Was Outside the Texas Medicaid Investigative Privilege's Permitted Disclosures**

Perhaps recognizing that its unwaivable-privilege position is contrary to black-letter law, Texas argues that no waiver occurred here because Mr. Bowen and Dr. Spears's prior testimony was permitted pursuant to the statutory exception for disclosures to "other entities as permitted by other law." Mot.. at 4–5. But Texas's arguments are contrary to the statutory text and purpose of the Medicaid Investigative Privilege.

The Court must construe Section 531.1021(g) according to its plain meaning and consistent with the statutory structure and "surrounding context." *See Paxton v. Tex. Dep't of State Health Servs.*, 500 S.W.3d 702, 705-06 (Tex. App.—Austin 2016); *see also Health Care Servs. Corp. v. Methodist Hosps. of Dallas*, 814 F.3d 242, 248–49 (5th Cir. 2016) (explaining that courts interpreting Texas law must "follow the same rules of construction that a Texas court would apply," including  that "the court should consider a provision in the context of the broader statute"). That provision protects the confidentiality of "information and materials subpoenaed or compiled" as part of a Texas OIG investigation, and permits disclosure of those materials only "to the state auditor's office, law enforcement agencies, and other entities as permitted by other law." *See* Tex. Gov't Code § 531.1021(g).  Texas's strained argument that public testimony in open court is disclosure to an "other entit[y] as permitted by other law" does not withstand scrutiny.

As Texas has recognized elsewhere, "the context in which the phrase ['permitted by other law'] is inserted, as well as the word 'entity,'" are key to understanding the Medicaid Investigative Privilege's disclosure exception. *See* Tex. Reply in Supp. of Mot. to Quash at 4, ECF 219, *U.S. ex rel. Banigan v. Organon USA Inc.*, No. 07-12153 (D. Mass. Dec. 28, 2012) (attached as Ex. B). "The context for the exception is an investigation, and the entity is an agency that provides oversight." *Id.*  Therefore, "[t]he use of the word 'entity' in connection with two investigative

9

bodies indicates the legislature contemplated that the confidence could yield to other investigative organizations." *Id.*;[8] *see also Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 504 (Tex. 2015) ("Where the more specific items, [a] and [b], are followed by a catchall 'other,' [c], the doctrine of *ejusdem generis* teaches that the latter must be limited to things like the former."); *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 163–64 & n.19 (2012) (similar).

Here, Mr. Bowen and Dr. Spears testified about the details of OIG's investigation in an adversarial proceeding in which the healthcare providers investigated by OIG were parties. Their testimony was not limited to OIG's final conclusions; it addressed "tangible information acquired" in the course of the investigation and Mr. Bowen and Dr. Spears's "mental impressions, opinions, and conclusions"—all topics that Texas has expressly argued are privileged. *See, e.g.*, Dkt. 137 at 19-20. Texas did not object on privilege grounds and the testimony, which was given in an open proceeding accessible to the general public, was never sealed, and remains publicly available to this day. Mr. Bowen's and Dr. Spears's testimony thus plainly was not a disclosure to another investigative organization or entity, which is the only other permitted disclosure under the statute.

Moreover, disclosure of privileged information about an OIG investigation in open court (unlike a disclosure to another law enforcement agency) is entirely inconsistent with the statute's established purpose of "preventing disclosure of . . . information obtained during Medicaid during Medicaid fraud investigations." *See* Dkt. 161 at 7 (protecting communications because "[t]here are important policies mandating confidentiality"); *id.* at 7-8 (further emphasizing the centrality of confidentiality to the Medicaid Investigative Privilege."); Ex. B at 4-5 (Texas brief arguing for

---

[8] The court in *Banigan* relied on Texas's interpretation in denying the relator in that case access to privileged information. *See U.S. ex rel. Banigan v. Organon USA, Inc.*, 2013 WL 139735 (D. Mass. Jan. 9, 2013), *vacated in part*, 2013 WL 12437578 (D. Mass. Oct. 8, 2013). Texas is therefore judicially estopped from taking a different position here. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

application of the Medicaid Investigative Privilege in federal litigation and explaining that disclosure to another law enforcement entity was consistent with the purpose of the privilege because it would maintain the confidentiality of the information within law enforcement organizations). As discussed more fully below, voluntary disclosure in open court results in waiver precisely because it is inconsistent with the confidential relationship that privileges are designed to protect. *See In re Subpoena Duces Tecum*, 738 F.2d 1367, 1370 (D.C. Cir. 1984) ("[A] litigant who wishes to assert confidentiality must maintain genuine confidentiality."); *United States v. El Paso Co.*, 682 F.2d 530, 538 (5th Cir. 1982) (noting that "[t]he scope of the attorney-client privilege is shaped by its purposes" and that it "is vital to the privilege [ ] that the communication be made in confidence").

Moreover, contrary to Texas's assertion, Mot. at 6, finding waiver here would not impede Texas's ability to pursue Medicaid fraud enforcement actions. In any enforcement action, Texas can of course present the *facts* that it learned during a privileged investigation because underlying facts are not privileged. *See Upjohn*, 449 U.S. at 395; *United States v. Murra*, 879 F.3d 669, 680 (5th Cir. 2018). What Texas cannot do—without waiving privilege—is disclose information concerning the OIG investigation itself, such as "tangible information acquired" in the course of the investigation, communications between investigators, and "mental impressions, opinions, and conclusions" of investigators. *See, e.g.*, Dkt. 137 at 19–20; *Adams v. Mem'l Hermann*, 973 F.3d 343, 349–50 (5th Cir. 2020) (explaining that attorney-client and work-product privileges protect "communications," "analysis," and "mental impressions," but "not the underlying facts"). And there is no need for Texas to disclose such information to prove Medicaid fraud, just as there is no need for a client to disclose communications with his attorney as part of a factual investigation in preparation for litigation. All the client needs to present are the facts. So too with Texas in a

11

Medicaid fraud enforcement action; and it can present those facts without waiver. Critically, however, that is not what happened here.

Finally, Texas is wrong that the Court already decided the question presented by Texas's Motion to Quash.  In fact, the Court's prior ruling that Texas references demonstrates precisely why Texas's position here fails.  The Court held that communications between the Texas Attorney General's Office and Relator are protected by the common interest privilege—a doctrine that "extends" privileges to circumstances where "parties . . . would otherwise not enjoy such privilege."  Dkt. 250 at 3.  If Texas were right that the Medicaid Investigative Privilege can *never* be waived by Texas's voluntary communication of information to third parties, *see* Mot. at 6, there would have been no need for the Court to determine whether the common interest privilege protected Texas's communication of such information.

## C.    Texas Waived the Medicaid Investigative Privilege

Because Mr. Bowen's and Dr. Spears's testimony was not a permitted disclosure under Section 531.1021(g), ordinary waiver principles apply.  Here, Texas has waived privilege on not one but two bases: (1) Texas voluntarily disclosed privileged information by eliciting testimony about privileged aspects of the OIG investigation and allowing an adverse party to cross-examine Mr. Bowen and Dr. Spears about that information; and (2) Texas is now attempting to utilize the purportedly privileged information as both a sword and a shield, which is not permitted under federal or state law.

### 1.    Texas Waived the Privilege Through Voluntary Disclosure

Texas *voluntarily* called Mr. Bowen and Dr. Spears for the express purpose of eliciting specific, detailed privileged information about OIG's investigation, and permitted wide-ranging cross-examination of both witnesses regarding information within the scope of

Section 531.1021(g).  *See supra* at 2–5.  It is firmly established in federal common law that disclosure of privileged information in open court waives privilege.  *See In re Itron, Inc.*, 883 F.3d 553, 558 (5th Cir. 2018) (privilege is waived "[b]y disclosing such communications to third parties—such as by revealing them in open court" and "to prevent selective or misleading disclosures, fairness dictates that the waiver extend to related subject matter."); *Nat'l Polymer Prods., Inc. v. Borg–Warner Corp.,* 641 F.2d 418, 421 (6th Cir.1981) (beginning analysis "with the well-established principle of American jurisprudence that the release of information in open trial is a publication of that information and, if no effort is made to limit its disclosure, operates as a waiver of any rights a party had to restrict its further use"); *Coorstek Inc. v. Reiber*, No. 08-cv-01133, 2010 WL 1332845, at *9 (D. Colo. Apr. 5, 2010) (finding privilege waived where counsel "neither instruct[ed] the witness not to answer nor call[ed] for a recess" and then asserted privilege years later in a separate proceeding).[9]  Texas state courts abide by the same principles.  *See, e.g.*, *In re E.C.*, 444 S.W.3d 760, 769-70 (Tex. App.—Ft. Worth 2014) (citing cases and finding no abuse of discretion for trial court ruling that work-product privilege, attorney-client privilege, and a statutory mental-health privilege had been waived when the relators elicited testimony on related issues during another proceeding in open court); *In re Ortuno*, No. 14–08–00457–CV, 2008 WL 2855028, at *2 (Tex. App.—Houston [14th Dist.] July 24, 2008) ("A party waives a privilege if it voluntarily discloses the privileged information to an open court."); *Langham v. Gray,* 227 S.W.

---

[9] *See also Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir. 1999) ("By failing to assert the attorney-client privilege when privileged information was sought, [defendant] waived the privilege.  Then, [defendant] selectively disclosed portions of the privileged confidential communication, thereby implicitly waiving the privilege."); *David v. Signal Int'l, LLC*, No. 08-1220, 2009 WL 5215326 (E.D. La. Dec. 28, 2009) (privilege waived by failure to object at deposition, and through selective disclosure of privileged information).

741, 743 (Tex. Civ. App.—Beaumont 1920) ("[P]rivilege was clearly waived by plaintiff when, in his original testimony, he went into the details of his transactions with [his attorney.]").[10]

Having waived Medicaid Investigative Privilege during the prior litigation, Texas cannot assert it now. "[T]he very purpose [of a privilege] is to prevent the release of . . . confidential information." *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 761 (D.C. Cir. 2014) (Kavanaugh, J.). Once disclosure has been made, "the cat is out of the bag," and the privilege's protection has been vitiated. *Id.* Federal courts have therefore repeatedly held that a privilege cannot be "selectively" waived. *See, e.g.*, *SEC v. Brady*, 238 F.R.D. 429, 440 (N.D. Tex. 2006) (noting that the "Fifth Circuit has not yet considered [selective waiver]" but that "an overwhelming amount of authority has found this argument wholly unpersuasive and rejected the selective waiver doctrine" and citing cases).[11] Once privilege is waived for a particular subject matter, it has been waived for all time, in all forums, and as to all parties. *See Gen. Elec. Co. v. Mitsubishi Heavy Indus. Ltd.*, No. 10-cv-276-F, 2013 WL 12226037, at *3 (N.D. Tex. Apr. 5, 2013) ("Typically, Courts rule that it is black letter law that once the privilege is waived, and the horse is out of the barn, it cannot be reinvoked." (internal quotation and citation omitted)).[12]

---

[10] *See also McClure v. Fall*, 42 S.W.2d 821, 824 (Tex. Civ. App.—Waco 1931), *aff'd*, 67 S.W.2d 231 (Tex. Comm'n App. 1934) (applying waiver where, as here, the waiving testimony had occurred in a prior action); *Stroud Oil Props., Inc. v. Henderson*, No. 02–03–003–CV, 2003 WL 21404820, at *3 (Tex. App.—Fort Worth June 19, 2003) (disclosure of "alleged privileged information to an open court" waived the privilege, even where party later moved to seal the record to prevent the privileged information from becoming public); *accord Whitaker Chalk Swindle & Sawyer, LLP v. Dart Oil & Gas Corp.*, No. 08-cv-684-Y, 2009 WL 464989, at *4-5 (N.D. Tex. Feb. 23, 2009) ("[U]nder Texas Rule of Evidence 511, a party waives a privilege against disclosure if the party '*voluntarily* discloses or *consents* to disclosure.").

[11] *See also In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 302-03 (6th Cir. 2002)

[12] *United States v. Suarez*, 820 F.2d 1158, 1160 (11th Cir. 1987) ("[W]here there has been a disclosure of a privileged communication, there is no justification for retaining the privilege"); *Blue Lake Forest Prods., Inc. v. United States*, 75 Fed. Cl. 779, 793–94 (Fed. Cl. 2007) (finding

The result is no different where the party is a government investigative entity asserting a statutory privilege. In a case on nearly all fours with this one, a federal court rejected the Massachusetts OIG's attempt to cloak information in a sweeping statutory privilege that encompassed "all discovery," without exception, reasoning in its decision that OIG had already "disclosed substantial information about its investigation" through public reports and trial testimony. *See Bliss v. Fisher*, 743 F. Supp. 2d 25, 28-30 (D. Mass. 2010) (rejecting the state's argument that the state law protecting OIG records "encompass[es] an evidentiary privilege shielding all deposition testimony from discovery" and finding that "the blanket assertion of the privilege has been waived" since "some information has already been disclosed."). The Court should do the same here.

### 2. Texas Has Also Waived the Medicaid Investigative Privilege By Attempting to Use It as a Sword and a Shield

Although the voluntary disclosure of privileged information is more than sufficient to permit Defendants to depose Mr. Bowen and Dr. Spears, Texas's motion to quash should be denied for the additional reason that the State is impermissibly seeking to use privilege as both a sword and a shield. Where "[t]he privacy for the sake of which the privilege was created [is] gone by the [party's] own consent . . . privilege does not remain in such circumstances for the mere sake of giving the client an additional weapon to use or not at his choice." *El Paso*, 682 F.2d at 539 (quoting *Green v. Crapo*, 62 N.E. 956, 959 (Mass. 1902) (Holmes, C.J.)).

Here, Texas chose to use privileged information *against Affiliate Defendants* "for [its] own benefit" in a prior, non-confidential proceeding. Texas cannot now invoke privilege to shield that information from use in this litigation, where Plaintiffs are seeking a billion dollars in damages for

---

that the government waived privilege by "voluntarily filing" a privileged memorandum in another lawsuit and permitting testimony).

claims stemming from the terminations. *See supra.* at 2–3 (identifying allegations in Plaintiffs' respective complaints relating to the investigation); *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989) ("The great weight of authority holds that . . . privilege is waived when a litigant places information protected by [privilege] in issue through some affirmative act for [the party's] own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party."); *In re Application of Chevron Corp. v. 3TM Consulting, LLC*, No. MC-H-10-134, 2011 WL 13135155, at *2-3 (S.D. Tex. Jan. 10, 2011) (finding that privilege was waived and permitting depositions where a related party used the purportedly protected materials in another litigation to their benefit, because "[i]t would be fundamentally unfair" to "shield [such materials] from production after wielding the conclusions from disclosure of the communications as a multi-billion dollar damages sword.").[13]

Texas's reading of the Medicaid Investigative Privilege statute creates a world in which the government can exercise its immense, sweeping investigatory powers to collect information from private citizens and publicly weaponize that information against them, only to later try to cloak the same information (and every other aspect of its investigation) in total secrecy when disclosure no longer serves the state's current interests. *See* Mot. at 5-6 (arguing that the statute allows OIG to disclose materials while categorically protecting the same materials from *any* form

---

[13] *Accord Meadows v. Latshaw Drilling Co. LLC*, No. 15-cv-01173-N, 2017 WL 11494495, at *3 (N.D. Tex. Mar. 8, 2017) (finding waiver where party's argument about whether his attorney had been involved in certain conduct made otherwise-privileged communications "a material issue," such that it would be "manifestly unfair" not to disclose the communications to opposing party) ; *Crosby v. Blue Cross Blue Shield of La.*, No. 08-0693, 2012 WL 5450040, at *6–7 (E.D. La. Nov. 7, 2012) (finding that plaintiff's disclosure of purportedly privileged information to her doctors so that they could "act upon it in either crafting or modifying a treatment plan" waived the privilege because it was "an affirmative act for [her] own benefit"); *Asset Funding Grp, LLC v. Adams & Reese, LP*, No. 07-2965, 2008 WL 4186884, at *4 (E.D. La. Sept. 9, 2008) ("Waiver includes conduct which would make it unfair for the client to insist on the privilege thereafter.").

of compelled disclosure).  Such an interpretation is contrary to the statutory context, *accord Paxton*, 500 S.W.3d at 708-09 (rejecting an expansive interpretation of the Medicaid Investigative Privilege as contrary to the legislature's intent to promote transparency in government), not to mention fundamental fairness, and would expand the Medicaid Investigative Privilege far beyond any other privilege recognized by federal courts.  *See supra* at 7 & n.6.[14]

Further, Texas state courts have also held that "[w]hen a party uses a privilege as a sword rather than a shield, [it] waives the privilege."  *Alford v. Bryant*, 137 S.W.3d 916, 921 (Tex. Civ. App—Dallas 2004); *see also Tex. Dep't of Pub. Safety Officers Ass'n v. Denton*, 897 S.W.2d 757, 761 (Tex. 1995) (explaining that a "plaintiff who is seeking affirmative relief should not be permitted to maintain the action, and at the same time maintain evidentiary privileges that protect from discovery outcome determinative information not otherwise available to the defendant.").  For example, in *Alford*, the court considered waiver of the statutory mediation privilege, whose relevant language required the mediator "shall at all times maintain confidentiality with respect to the communications relating to the subject matter of the dispute," and further provided that "all matters . . . are confidential and may never be disclosed to anyone." 137 S.W.3d at 920 (quoting Tex. Civ. Prac. & Rem. Code § 154.053 (2004)).  The mediation communications' protection was—on its face—absolute, providing that communications "may not be used as evidence against the participant in any judicial or administrative proceeding," and participants "may not be required

---

[14] *See also John Doe Co. v. United States*, 350 F.3d 299, 302 (2d Cir. 2003) ("[C]ourts have ruled that it would be unfair for a party asserting contentions to an adjudicating authority to then rely on its privileges to deprive its adversary of access to material that might disprove or undermine the party's contentions."); *In re Kidder Peabody Sec. Lit.*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996) ("The waiver may be found even if the privilege holder does not attempt to make use of a privileged communication; he may waive the privilege if he makes factual assertions the truth of which can only be assessed by examination of the privileged communication."); *FDIC v. Wise*, 139 F.R.D. 168, 171–72 (D. Co. 1991) (citing cases and finding that plaintiff "injected into this controversy the actions, knowledge, and beliefs of the regulators").

to testify in any proceedings" about them. *Id.* (quoting Tex. Civ. Prac. & Rem. Code § 154.073 (2004)).  Nevertheless, in a malpractice lawsuit concerning an attorney's advice relating to mediation, the Court of Appeals found that the trial court had abused its discretion by failing to find waiver.  The same would be true here were the Court to grant Texas's motion to quash.

## II.   Texas Has Waived Privilege Over the Subject Matter of Mr. Bowen's and Dr. Spears's Prior Testimony

The public disclosures by two senior OIG officials of detailed information about OIG's investigation of Affiliate Defendants waived privilege over the entire subject matter of OIG's investigation, including over all documents created during that investigation and over aspects of the investigation in which Mr. Bowen and Dr. Spears were not involved.  However, the Court need not reach that issue to resolve Texas's motion.  It need only decide whether Affiliate Defendants are permitted to depose Mr. Bowen and Dr. Spears about the subject matter of their prior testimony, including their roles in the OIG investigation.  The answer to that question plainly is yes.

Mr. Bowen's and Dr. Spears's testimony was broad and included significant details about OIG's investigation, including the information collected and the communications and deliberations of investigators.  This sweeping public testimony, at a minimum, waived privilege as to those witnesses' knowledge of and roles in the investigation.  *See United States v. Nobles*, 422 U.S. 225, 239 (1975) ("Respondent, by electing to present the investigator as a witness, waived the privilege with respect to matters covered in his testimony."); *Nguyen v. Excel Corp.*, 197 F.3d 200, 208 (5th Cir. 1999) ("[D]isclosure of any significant portion of a confidential communication waives the privilege as to the whole."); *see also El Paso*, 682 F.2d at 539 (citing *Permian Corp. v. United States*, 665 F.2d 1214, 1219 (D.C. Cir. 1981), with approval and describing it as holding that "when confidential communications are voluntarily disclosed to one person, the privilege is waived as to all others"); *SEC v. Brady*, 238 F.R.D. 429, 440–441, 444–45 (discussing scope of

18

waiver from investigative disclosures and citing cases).  Federal Rule of Civil Procedure 502(a) provides that where a disclosure in a federal proceeding waives the privilege, "the waiver extends to an undisclosed communication or information in a federal or state proceeding" if the waiver is intentional, concerns the same subject matter, and the information "ought in fairness to be considered together."  Fed. R. Civ. P. 502(a).  As a Texas district court recently explained, where investigative information has been voluntarily disclosed by the privilege holder, it would not "be fair to allow [the privilege holder] to protect the remaining undisclosed details regarding the . . . investigation when it intentionally, publicly, and selectively released certain detail of the investigation, including [privilege] communications."  *Doe 1 v. Baylor Univ.*, 320 F.R.D. 430, 439–40 & n.5 (W.D. Tex. 2017);[15] *see also SEC v. Microtune, Inc.*, 258 F.R.D. 310, 317 (N.D. Tex. 2009) (where some otherwise-privileged investigatory documents had been disclosed, "fairness dictates that the defendants be allowed to review all documents relating to the internal investigation").  The same is true here, and Defendants should be permitted to depose Mr. Bowen and Dr. Spears regarding any details regarding the OIG investigation of which they have knowledge.

Finally, even if the Court upholds Texas's blanket assertion of privilege preventing Mr. Bowen and Dr. Spears from testifying on *any* aspect of the OIG investigation, Texas makes no

---

[15]  *Doe* declined to find waiver of work product protection, noting that "voluntary disclosure to a third person is insufficient in itself to waive the work product privilege."  *Id.* at 442 (quoting *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989)).  The Fifth Circuit case on which *Doe* relied, however, makes clear that work product protection "*is waived* when the attorney requests the witness to disclose the information or when the attorney discloses the information to the court voluntarily or makes no objection when it is offered."  *Shields*, 864 F.2d at 382 (emphasis added).  That is precisely what happened here.  Therefore, even if the Court were to apply the standard for work product waiver—which it should not because the Medicaid Investigative Privilege, unlike the work product doctrine, exists to "protect a confidential relationship"—Fifth Circuit precedent requires the Court to find a broad waiver here.  *See id.*

argument that Defendants should not be able to depose Mr. Bowen and Dr. Spears on other topics. Both witnesses, as key OIG officials during much of the relevant time period, possess relevant and discoverable information, including but not limited to their personal understanding of OIG's standard policies and procedures for investigations and termination proceedings, as well as their knowledge regarding Affiliate Defendants' status as Medicaid providers.  Accordingly, Texas is not entitled to a protective order precluding Defendants from taking these depositions altogether. *See* Fed. R. Civ. P. 26(b) (permitting discovery of any matter "that is relevant to any party's claim or defense"); *BDO*, 876 F.3d at 698 (holding that movant bears the burden of showing a protective order is necessary); *see also, e.g.,* Dkt. 153 at 3 (granting motion to compel discovery because "the scope of discovery is broad" and "relevancy is broadly construed" (citations omitted)).

## CONCLUSION

By permitting Mr. Bowen and Dr. Spears to testify in open court regarding information protected by the Medicaid Investigation Privilege, Texas waived any privilege that existed about the subject matter of their prior testimony, including their roles in the OIG investigation.  Texas's motion should be denied.

**ARNOLD & PORTER KAYE SCHOLER LLP**

*Tirzah. S. Lollar*
Craig D. Margolis
Craig.Margolis@arnoldporter.com
Tirzah S. Lollar
Tirzah.Lollar@arnoldporter.com
Christian Sheehan
Christian.Sheehan@arnoldporter.com
Emily Reeder-Ricchetti
Emily.Reeder-Ricchetti@arnoldporter.com
Megan Pieper
Megan.Pieper@arnoldporter.com

Alyssa Gerstner
Alyssa.Gerstner@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Tel: +1 202.942.5000
Fax: +1 202.942.5999

Christopher M. Odell
Texas State Bar No. 24037205
Christopher.Odell@arnoldporter.com
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Tel: +1 713.576.2400
Fax: +1 713.576.2499

Paula Ramer
Paula.Ramer@arnoldporter.com
250 West 55th Street
New York, New York 10019-9710
Tel: +1 212.836.8474

Ryan Patrick Brown
Texas State Bar No. 24073967
brown@blackburnbrownlaw.com
1222 S. Filmore
Amarillo, TX 79101
Tel: (806) 371-8333

*Attorneys for Defendants Planned
Parenthood Gulf Coast, Inc., Planned
Parenthood of Greater Texas, Inc., Planned
Parenthood of South Texas, Inc., Planned
Parenthood Cameron County, Inc., and
Planned Parenthood San Antonio, Inc.*

**O'MELVENY & MYERS LLP**

*/s/ Danny S. Ashby*
DANNY S. ASHBY
Texas Bar No. 01370960
dashby@omm.com
JUSTIN R. CHAPA
Texas Bar No. 24074019
jchapa@omm.com
MEGAN R. WHISLER
Texas Bar No. 24079565
mwhisler@omm.com
2501 N. Harwood Street, Suite 1700
Dallas, Texas 75201
T: (972) 360-1900
F: (972) 360-1901

LEAH GODESKY (*pro hac vice*)
lgodesky@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
T: (310) 553-6700
F: (310) 246-6779

**RYAN BROWN ATTORNEY AT LAW**
RYAN PATRICK BROWN
Texas Bar No. 24073967
ryan@ryanbrownattorneyatlaw.com
1222 S. Fillmore St.
Amarillo, Texas 79101
T: (806) 372-5711
F: (806) 350-7716

*Attorneys for Defendant Planned Parenthood*
*Federation of America, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2022, the foregoing document was electronically filed and served upon all parties and counsel of record via the Court's CM/ECF system.

*/s/ Tirzah S. Lollar*
Tirzah S. Lollar