# Exhibit B

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA <br> *ex rel.* James Banigan and Richard Templin, *et al.* <br> <br> Plaintiffs, <br> <br> v. <br> <br> ORGANON USA Inc., et al. <br> <br> Defendants. | § <br> § <br> § Civil Action No. 07-12153-RWZ <br> § <br> §      LEAVE TO FILE <br> §      GRANTED ON 12-27-12 <br> § <br> § <br> § <br> § <br> § <br> § <br> § |

**NON-PARTY TEXAS OFFICE OF THE ATTORNEY GENERAL'S REPLY TO
RELATORS' RESPONSE TO TEXAS' MOTION TO QUASH**

Non-party Texas Office of the Attorney General ("Texas OAG") respectfully submits this reply responding to specific issues raised in Relators' response to the Texas OAG's Motion to Quash the Relators' Rule 45 Subpoena and submits as follows:

On October 26, 2012, Relators served a subpoena on the Texas OAG pursuant to Rule 45 of the Federal Rules of Civil Procedure ("FRCP"), containing seven requests for information and materials that the Texas OAG obtained in connection with its confidential investigation of the Medicaid fraud allegations of this case (the "Subpoena"). On November 26, 2012, the Texas OAG filed a Motion to Quash the Subpoena.[1] On December 10, 2012, the Relators filed a Response to the Texas OAG's Motion to Quash. In the Response, Relators state that they will only seek to enforce Request No. 5 of the Subpoena at this time, which calls for transcripts of Examinations Under Oath ("EUOs") conducted by the Texas OAG. (Relators' Resp. at 1.)

---

[1] Capitalized terms in this Reply have the same meaning as those defined in the Texas OAG's Motion to Quash and corresponding Memorandum in Support of the Motion.

1

The Texas OAG would support any argument to narrow the scope of the Subpoena and thus the issues before the Court. However, Relators wish to "reserve the right" to request the other materials sought through the Subpoena at a later time. (Relator's Resp. at 1.) Relators have not withdrawn the additional requests to which the Texas OAG must object; instead, Relators attempt to abate the issues. Unless Relators actually withdraw their previous requests, the Texas OAG respectfully requests that the Court rule on the Subpoena in its entirety. However, for purposes of this reply, and without waiving the arguments set forth in its Motion to Quash, the Texas OAG will only address the issues Relators assert in their Response as they apply to the materials contained in Request No. 5 of the Subpoena.

**I.     Contrary to Relators' argument, the FCA does not authorize nationwide service of a subpoena *duces tecum*.**

Relators argue that the Federal False Claims Act ("FCA") authorizes service of a subpoena at any location in the United States; however, the quoted section does not apply to documents. (*See* Relators' Resp. at 3.) It is true that "[a] subpena (sic) *requiring the attendance of a witness at a trial or hearing* conducted under section 3730 of [the FCA] may be served at any place in the United States." Federal False Claims Act, 42 U.S.C. § 3731(a) (2012) (emphasis added). As made clear in Relators' response, the Subpoena is not sought to require a witness to appear at a proceeding. (*See* Relators' Resp. at 2.) Instead, Relators seek the production of EUOs in the custody of the Texas OAG. Service of standard discovery subpoenas is not covered by the FCA, and the FCA offers no basis for ignoring explicit service rules under the Federal Rules of Civil Procedure. Therefore,

Relators' argument that other law authorizes nationwide service of a subpoena *duces tecum* is invalid and misleading.[2]

**II. Even if service were permitted in Texas, the Texas Government Code explicitly provides that all documents in possession of the Texas OAG are confidential if they were obtained to investigate Medicaid Fraud.**

Relators claim that the requested information is not confidential because it is subject to an exception under the Texas Government Code. (*See* Relators' Resp. at 5.) An examination of the plain statutory text and accompanying legislative history demonstrates that the exception does not apply. The Texas Government Code states:

> All information and materials subpoenaed or compiled by the office in connection with an audit or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under Chapter 552, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or the attorney general or their employees or agents involved in the audit or investigation conducted by the office or the attorney general, except that this information may be disclosed to the state auditor's office, law enforcement agencies, and other entities as permitted by other law.

TEX. GOV'T CODE § 531.1021(g) (2011).

Relators suggest that Texas is attempting to obfuscate the meaning of the section of the code by using a period to end a sentence. (*See* Relators' Resp. at 5–6.) This claim is simply false. A plain reading of the code section shows that the confidential nature of information obtained by the Texas OAG in a Medicaid investigation is meant to yield

---

[2] In fact, the plain language of the FCA supports the Texas OAG's Motion to Quash. The FCA affords a variety of protections for oral testimony given under oath pursuant to a civil investigative demand. *Id.* § 3733(h). The FCA limits who can receive the transcript of an examination under oath, stating that the U.S. Attorney may "furnish a copy of the transcript to the witness only." *Id.* § 3733(h)(6). Furthermore, the U.S. Attorney must "designate a false claims law investigator to serve as custodian of . . . transcripts of oral testimony." *Id.* § 3733(h)(8)(a)(i)(1). The FCA also proscribes who can read examinations under oath: "Except as otherwise provided in this subsection, no . . . transcripts of oral testimony, or copies thereof, while in possession of the custodian, shall be available for examination by any individual other than a false claims law investigator or other officer or employee of the Department of Justice . . . ." *Id.* § 3733(h)(8)(a)(i)(2)(C).

3

only for the purposes of state investigation or law enforcement, and clearly not to "discovery, subpoena, or other means of legal compulsion." TEX. GOV'T CODE § 531.1021(g). The code lists exceptions for the "state auditor's office, law enforcement, and other entities permitted by other law," all of which are inapplicable to this dispute. *Id.* Relators claim the Federal Rules of Civil Procedure were contemplated as "other law" in the Code. (*See* Relators' Resp. at 6.) This claim is unaccompanied by any supporting evidence and completely ignores the unequivocal protection from disclosure in discovery stated earlier in the sentence. *See* TEX. GOV'T CODE § 531.1021(g). In fact, the Code's text and legislative history require the opposite conclusion. Relators miss the context in which the phrase is inserted, as well as the word, "entity." *Id.* The context for the exception is an investigation, and the entity is an agency that provides oversight. *See id.* The use of the word "entity" in connection with two investigative bodies indicates the legislature contemplated that the confidence could yield to other investigative organizations. *Id.* Relators' suggestion that the confidence should yield to a discovery request is illogical because it would make the rest of the section irrelevant.

Although it is unnecessary to resort to legislative history in this case because the statutory language is clear and unambiguous, legislative history fortifies Texas' argument that the material Relators seek is confidential and not subject to Relators' Subpoena:

> All information and materials subpoenaed or compiled by the HHSC during a Medicaid fraud investigation would be confidential and not subject to disclosure under the Public Information Act or by discovery or subpoena. The same information and materials collected by the attorney general during a Medicaid fraud investigation would be confidential and not subject to disclosure.

HOUSE RESEARCH ORGANIZATION, BILL ANALYSIS, Tex. S.B. 688, 82nd Leg., R.S. (May 17, 2011) at 3. Information collected by the Texas Attorney General during a Medicaid

4

fraud investigation is "confidential and not subject to disclosure . . . by discovery or subpoena." *Id.*

**III. Given the confidential nature of the materials in question, the identification and descriptions provided in the Texas OAG's Memorandum in Support of its Motion to Quash suffice as a privilege log.**

"On timely motion, the issuing court must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies . . . ." FED. R. CIV. P. 45(c)(3)(A).  The information Relators seek is plainly "other protected matter" under the Texas Government Code. *See id.*; TEX. GOV'T CODE § 531.1021 (protecting "[a]ll information and materials" obtained by the Texas Attorney General, subject to the exception explained in the previous section).  In its Motion to Quash, Texas identified the statutes that establish this protection. TEX. GOV'T CODE § 531.1021; TEX HUM. RES. CODE § 36.053(c)(B).  (*See* Texas' Mem. in Supp. at 7–8.)

Relators cite *In Re Grand Jury Subpoena*, 274 F.3d 563, 575 (1st Cir. 2001), for the proposition that Texas should have provided a privilege log which would identify and describe the protected and privileged information.  (Relators' Resp. at 7.)  Due to the Texas OAG's reliance on the Texas Government Code and the confidential nature of the information it deems to protect, all of the information sought through Relators' Subpoena is the protected matter.  Thus, the descriptions provided by the Texas OAG in its Memorandum in Support of its Motion to Quash—CID Materials, EUO Materials, Correspondence, and Remeron Data—sufficiently identify and describe the materials the Texas OAG gathered during the scope of the investigation.  (*See* Texas' Mem. in Supp. at 3–4.)  Given the confidential nature of the materials, these descriptions provide the Court

5

with the functional equivalent of a privilege log to the extent that Texas is able to do so. However, out of an abundance of caution, the Texas OAG is submitting a privilege log of the EUOs in connection with the investigation that are in its possession, which has been redacted to protect the names of the witnesses and is attached hereto as Exhibit A.

   **IV.   Because the information is protected under Texas law, Texas' Motion to Quash is not prophylactic.**

Relators cite *Cable v. Weinman (In re Public Offering PLE Antitrust Litig.)*, 233 F.R.D. 70 (D. Mass. 2006) (mem.), for the proposition that a subpoena cannot be prophylactic. (*See* Relators' Resp. at 5.)  In *Cable*, a non-party attorney attempted to quash a subpoena seeking his deposition testimony and certain documents. *Id.* at 73. Cable, the attorney, had previously written a scholarly article relevant to the underlying dispute. *Id.* at 72. His primary assertion was that the respondents were attempting to improperly obtain his expert testimony in violation of FRCP 45. *Id.* at 73. *See* FED. R. CIV. P. 45(c)(3)(B)(ii) (permitting a court to quash or modify a subpoena "disclosing an unretained expert's opinion"). Cable also argued that attorney-client privilege likely protected the information in "most instances." *Cable*, 233 F.R.D. at 78. The court concluded that Cable was not being called as an expert; rather, he possessed factual information relevant to a particular defendant in the underlying case. *Id.* at 77. As for the privilege argument, the respondents agreed to narrow their subpoena to testimony only. *Id.* at 79. The court permitted the respondents to question Cable, noting that he could invoke privilege whenever applicable. *Id.*

The subpoena in *Cable* differs from the subpoena in the present case in three respects:  First, a Texas statute makes all the information confidential.  Second, this is a subpoena for documents, not a subpoena compelling questioning.  This is pertinent

6

because Texas cannot simply invoke privilege when asked a particular question, "quashing a subpoena to produce documents is rather common," whereas quashing a subpoena for testimony is "very rare," and there is no basis for a motion to quash until a questioned is asked. *Cable*, 233 F.R.D. at 80 (quoting 9 James Wm. Moore et al., *Moore's Federal Practice*, § 45.04[3][a] (3d ed. 2005)). Third, the privilege and confidentiality Relators are attempting to breach in this case is actual, not hypothetical or potential, because all the information Texas retains fits under the umbrella of the statutes.

**V. If the Court does not agree that the requested material is confidential, then the law is unsettled, and either deferring to the Texas Attorney General or certifying the question to the Texas Supreme Court is proper.**

Under Texas law, the Texas OAG may not disclose documents obtained in the course of a Medicaid investigation when it chooses not to intervene. If this Court does not agree, then the law is necessarily unsettled. First, Texas urges this Court to defer to its interpretation of this statute. In the alternative, the issue should be determined by a Texas court. State courts are the proper arbiters of unsettled questions of state law; therefore, certification to the Texas Supreme Court would be proper. *See VanHaaren v. State Farm Mut. Auto. Ins. Co.*, 989 F.2d 1, 3 (1st Cir. 1993) ("Absent controlling state court precedent, a federal court sitting in diversity may certify a state law issue to the state's highest court"); *Pagan-Colon v. Walgreens of San Patricio, Inc.*, 697 F.3d 1, 18 n.12 (1st Cir. 2012) (noting the same logic applies in cases of supplemental jurisdiction). "Of course, 'even in the absence of controlling precedent, certification would be inappropriate where state law is sufficiently clear to allow us to predict its course.'" *Pagan-Colon*, 697 F.3d at 18 (quoting *Ropes & Gray LLP v. Jalbert (In Re Engage, Inc.)*, 544 F.3d 50, 53 (1st Cir. 2008)). "However, if 'the existing case law does not provide

7

sufficient guidance to allow us reasonably to predict' how the state's courts would resolve the question, the prudent course is to certify the question to that court better suited to address the issue." *Id.* (quoting *Ropes*, 544 F.3d at 57). By certifying the question, Texas would have the ability to determine the meaning of statutes codified by its own legislature.

Wherefore, the Court should consider the foregoing arguments in addition to those set forth in its Motion to Quash and Memorandum in Support and grant Texas OAG's Motion to Quash Relators' Rule 45 Subpoena.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

JOHN B. SCOTT
Deputy Attorney General for Civil
Litigation

RAYMOND C. WINTER
Chief, Civil Medicaid Fraud Division

/s/ *Susan J. Arenella*
Susan J. Arenella*
State Bar No. 24001320
Assistant Attorney General
Civil Medicaid Fraud Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 936-1448
(512) 936-0674 Fax
susan.arenella@texasattorneygeneral.gov

ATTORNEYS FOR THE STATE OF TEXAS

*Admitted *Pro Hac Vice*

Dated:  December 28, 2012

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing NEF) and paper copies will be sent to those indicated as non-registered participants on this 28th day of December 2012.

                                        /s/ *Susan J. Arenella*
                                        Susan J. Arenella