IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| United States of America<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Texas<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Louisiana<br><br>*ex rel.* ALEX DOE, Relator,<br><br>    Plaintiffs,<br><br>v.<br><br>Planned Parenthood Federation of America,<br>Inc., Planned Parenthood Gulf Coast, Inc.,<br>Planned Parenthood of Greater Texas, Inc.,<br>Planned Parenthood South Texas, Inc.,<br>Planned Parenthood Cameron County, Inc.,<br>Planned Parenthood San Antonio, Inc.,<br><br>    Defendants. | § § § § § § § § § § § § § § § § § § § § § § § | NO. 2:21-CV-22-Z |

**DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR LEAVE TO AMEND ANSWERS**

**PRELIMINARY STATEMENT**

Defendants' motion for leave to amend their answers [DE 226] is not a close call. Plaintiffs offer no compelling arguments, much less a showing of prejudice, that would justify denying Defendants leave to amend their answer. As to the non-limitations defenses, Plaintiffs concede that Rule 8 is not a bar to amendment, asserting instead that these need not even be pleaded. Nevertheless, in the abundance of caution and to forestall any later argument that Defendants cannot raise them at summary judgment or trial, Defendants seek to include these four defenses in their answers, and given Plaintiffs' position, there is surely no harm in doing so. As for Defendants' statute-of-limitations defense, Plaintiffs have been aware since the outset of the case that Defendants intended to assert that time-bar to the extent applicable, and Plaintiffs will not be prejudiced by its inclusion in Defendants' amended answers now that Plaintiffs' own discovery responses have only confirmed a good-faith basis for Defendants to assert it here.

The Federal Rules presumptively favor granting leave to amend unless doing so would cause undue delay or actual prejudice. Neither is present here. Plaintiffs' own authorities show that this case is far different from those in which courts have denied leave to amend, such as when parties have already repleaded or sought amendments during dispositive motion practice (to avoid summary judgment), after trial (to avoid adverse outcomes), or years into litigation (to fundamentally alter the nature of a long-pending case). Defendants sought leave to amend—for the first time—just three months after document discovery *commenced*, two months after Relator materially changed their interrogatory responses regarding the limitations period and the public-disclosure bar, and before Plaintiffs took a single deposition. Plaintiffs do not refute that they have long known about the proposed defenses based on motions to dismiss, discovery requests, and

1

extensive motion practice, and it is impossible to convincingly claim prejudice against that backdrop. The Court should grant Defendants leave to amend their answers.

## ARGUMENT

### I. DEFENDANTS' AMENDMENT REQUEST COMPLIES WITH RULE 15.

The Fifth Circuit's "bias in favor of granting leave to amend" has long supported the baseline rule that "unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597–98 (5th Cir. 1981). "Amendment can be appropriate as late as trial or even after trial," and "[i]nstances abound in which appellate courts on review have required that leave to amend be granted after dismissal or entry of judgment." *Id.* at 598.

The circumstances presented here sharply contrast to those presented in the cases cited by Plaintiffs. In *Southwestern Bell v. City of El Paso*, the Fifth Circuit affirmed a denial of a motion for leave to amend "for a third time" to add a counterclaim where amendment was sought after two prior extensions and the close of discovery. *See* 346 F.3d 541, 545–47 (5th Cir. 2003) (cited in Opp. at 1, 3 [DE 264]). In contrast, this is Defendants' first request to amend their pleadings. In *Agar Corp. v. Multi-Fluids Inc.*, the movant sought amendment in a *more-than-two-year-old* case where extensive discovery was already completed and the amendments would have reinstated affirmative defenses that the movant had dropped in a prior amendment. *See* 1998 WL 425474, at *3 (S.D. Tex. Apr. 17, 1998) (cited in Opp. 15–16). Here, the Complaint was unsealed only nine months before Defendants sought leave to amend, and Defendants have never suggested to Plaintiffs that they would not pursue the defenses at issue. In *Shofner v. Shoukfeh*, the movant sought to add a new party and claim that would have "fundamentally alter[ed] the nature of the lawsuit" from a negligence case to a conspiracy litigation—more than a year after the deadline and after the parties filed summary-judgment motions. *See* 2017 WL 3841641, at *2–3 (N.D. Tex.

Apr. 7, 2017) (cited in Opp. at 2, 10). Defendants' amended pleading, on the other hand, does not fundamentally change the nature of the case, given it does not add new parties or causes of action, but merely sets forth defenses of which Plaintiffs have long been aware.

Plaintiffs' other authorities are similarly inapposite. Some *granted* leave to amend, *see Howard v. Medicredit, Inc.*, 2018 WL 3752366, at *3, 5 (N.D. Tex. Aug. 8, 2018) (cited in Opp. at 2, 10), including in situations involving *much* longer periods of delay, *see Sabre, Inc. v. Lyn-Lea Travel Corp.*, 2003 WL 21339291, at *1–4, *11 (N.D. Tex. June 5, 2003) (cited in Opp. at 15, 17) (allowing leave to assert new affirmative defenses nearly *seven years* after case was filed, three years after judgment, and nearly one year after Fifth Circuit remand). Others involve amendment requests that arose after dispositive motion practice or entry of judgment.[1] *See Rosenzweig v. Azurix Corp.*, 332 F.3d 854 (5th Cir. 2003) (cited in Opp. at 15) (amendment sought after claims dismissed with prejudice); *Barrett v. Indep. Order of Foresters*, 625 F.2d 73 (5th Cir. 1980) (cited in Opp. at 15) (post-dismissal amendment); *Layfield v. Bill Heard Chevrolet Co.*, 607 F.2d 1097 (5th Cir. 1979) (cited in Opp. at 15) (amendment sought after summary judgment). Here, dispositive motions have not been filed and discovery is ongoing.

Nor will Plaintiffs be prejudiced. They offer no response to Defendants' showing that Plaintiffs have long known of Defendants' proposed amended defenses. *See* Mot. at 11–12 [DE 226]; *Williams v. Lampe*, 399 F.3d 867, 871 (7th Cir. 2005) ("The purpose of Rule 8(c) is to give the opposing party notice of the affirmative defense and a chance to rebut it. Thus, where the plaintiff has an opportunity to respond to a late affirmative defense, he cannot establish prejudice

---

[1] In any event, courts have granted summary judgment on statute-of-limitations defenses raised for the first time in or with a motion for summary judgment. *See, e.g., Fausset v. Mortg. First, LLC*, 2010 WL 1212085, at 6–7 (N.D. Ind. Mar. 23, 2010) (rejecting argument that defendant "should be estopped from raising the statute of limitations defense [at summary judgment] because [defendant] did not previously seek leave to amend its answer to plead [that] new affirmative defense"); *Swift v. Smith*, 2009 WL 1759696, at * 1 (E.D. Wis. June 22, 2009) (granting motion for leave to assert limitations defense concurrently filed with motion for summary judgment).

merely by showing that the case has progressed significantly since the defendants answered his complaint."). Even the Opposition observes (at 7–9) that all but one of the "new" defenses were the subject of Defendants' early-2022 motions to dismiss. The public-disclosure bar and original-source issue were even *again* presented in Defendants' summer-2022 Motion for Reconsideration [DE 83 at 13–19] and Reply in Support [DE 110 at 8–9].

Given Plaintiffs "fail[ure] to identify any information that [they] would need" or "any 'additional discovery' that is necessary," Plaintiffs' "conclusory statements do not establish prejudice sufficient to deny the motion to amend." *Affilaited FM Ins. Co. v. Liberty Mech. Contractors, Inc.*, 2013 WL 4526246, at *6 (S.D.N.Y. Aug. 27, 2013) (granting motion to add limitations defense because it "would require scant, if any, additional discovery"); *Groner v. Foot Clinic of New York*, 1994 WL 708136 (S.D.N.Y. Dec. 19, 1994) (granting motion to include limitations defense where "proposed defenses would likely not impose significant additional discovery burdens").

Plaintiffs are also wrong when they say that Defendants' limitations defense was not previously asserted, as shown in the below excerpt from Defendants' Motion to Dismiss Relator's Complaint, referencing the ten-year time bar:

> Relator identifies only one defendant (PPGC) that he alleges ever participated in fetal tissue donation. *See* Relator Compl. ¶ 87. And Relator identifies only one study, which he alleges occurred in 2010 and 2011, for which PPGC allegedly provided fetal tissue. *Id.* **_This lone allegation of a single violation of federal law that allegedly occurred, at least in part, outside of the FCA's statute of limitations_**, *see* 31 U.S.C. § 3731(b), does not provide reliable indicia that every claim PPGC submitted for the next decade was false, let alone the claims of other Affiliate Defendants.

Mot. to Dism. at 33 [DE 49] (emphasis added). At that time, Defendants lacked sufficient information to determine when the three-year limitations period commenced running—that is, when the government knew, or reasonably should have known, the facts material to Plaintiffs'

4

claims.² *See* Mot. at 8. In the months that followed, Defendants sought discovery from Plaintiffs relevant to the limitations defense. *See, e.g.*, PPFA's Mot. to Compel at 5, 11 [DE 131] (seeking discovery relevant to statute-of-limitations defense). And Defendants repeatedly asserted and referenced statute-of-limitations issues in response to Plaintiffs' discovery requests. *See* Mot. at 8–10. It was only upon receiving Relator's amended interrogatory answers in response to a motion to compel that Defendants learned that Relator purportedly disclosed the material facts concerning Relator's claims to the government in 2015 (and not 2021, as Relator initially indicated). *See* Mot. at 5–6.

No doubt recognizing their uphill climb on prejudice, Plaintiffs resort to asking the Court (at 17) to "infer" that Defendants acted in "bad faith" and with a "dilatory motive" here. Plaintiffs identify no basis for a finding of bad faith. And "the mere fact that [a party] could have moved at an earlier time to amend does not by itself constitute an adequate basis for denying leave to amend." *Howey v. United States*, 481 F.2d 1187, 1191 (9th Cir. 1973) (reversing mid-trial denial of motion for leave to amend where no showing of bad faith or prejudice); *see also Miranda de Villalba v. Coutts & Co.*, 250 F.3d 1351, 1353 (11th Cir. 2001) (rejecting argument that district court erred by permitting affirmative defense to be raised for first time in motion for summary judgment); *Budd Co. v. Travelers Indem. Co.*, 820 F.2d 787, 792 (6th Cir. 1987) ("Courts appear particularly hesitant to deny amendment, even at late stages in the proceedings, when the interest in resolving all related issues militates in favor of such a result and no prejudice is demonstrated."). Courts generally find bad faith or dilatory motive only in situations "[w]hen it appears that leave to amend is sought in anticipation of an adverse ruling on the original claims," *PI, Inc. v. Quality*

---

² Although Relator alleged that Relator shared their videos with "government officials and law enforcement entities, including the Texas Attorney General beginning in June 2015," Rel. Compl. ¶ 79, Relator did not allege when they shared the facts concerning Affiliate Defendants' *submission of allegedly false claims* with the government—which is the "*sine qua non*" of a false claim. *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 188 (5th Cir. 2009).

5

*Prods., Inc.*, 907 F. Supp. 752, 764 (S.D.N.Y. 1995) (collecting cases), such as amendments that are "'obviously . . . an attempt to avoid summary judgment,'" *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139–40 (5th Cir. 1993) (citation omitted).

Because Defendants sought leave to amend in the midst of discovery, there is no plausible argument that Defendants sought amendment for any purpose other than to ensure that the Court and parties had full notice of their defenses. *See generally* Opposition. "[C]ourts have granted leave to amend an answer to assert statute of limitations defense in cases where litigation has progressed significantly further than it has in this case" where "discovery is ongoing, and trial is not anticipated to begin for several months." *Affiliated FM*, 2013 WL 4526246, at *7; *see, e.g., Kelly v. A1 Tech.*, 2010 WL 1541585, at *17–18 (S.D.N.Y. Apr. 12, 2010) (recommending leave be granted to assert statute of limitations defense, and finding plaintiff would not be prejudiced where request to amend was filed at the same time as summary judgment motion); *White–Ruiz v. City of New York*, 1996 WL 744892, at *2 (S.D.N.Y. Dec. 31, 1996) (granting motion for leave to include limitations defense filed two weeks before trial where "no suggestion that plaintiff would have prepared her case differently or that she has lost any rights or claims that she might otherwise have retained"). And Defendants have not previously amended their answers. In the circumstances of this case, leave to amend is plainly appropriate. *See, e.g.*, *Salas v. City of Galena Park*, 2022 WL 1487024, at *7 (5th Cir. May 11, 2022) ("There has not been a failure to cure deficiencies through earlier amendments, as there have been no earlier amendments.").

Plaintiffs' futility arguments (at 17–21) fare no better. *First*, Relator's self-serving discovery responses cannot establish as a matter of law that Defendants' statute-of-limitations defenses lack merit. *Contra* Opp. at 17–18. Defendants are entitled to test Relator's side of the story; they continue to analyze Plaintiffs' (still ongoing) document productions; and they have not

yet deposed Relator or Texas. The Court's pleading-stage ruling that Plaintiffs pleaded claims that could proceed to discovery does not foreclose Defendants from raising factually supported defenses against those claims after discovery, at summary judgment, and at trial. *Contra* Opp. at 18–20; *see, e.g.*, *Lockheed Martin Corp. v. Network Sols.*, 141 F. Supp. 2d 648, 654 (N.D. Tex. 2001) (order denying motion to dismiss was determination that plaintiff should be allowed to proceed with claims and was "not determinative of anything" and did not "bar" the court from "reaching [] different conclusions" at subsequent stages of the litigation); *see also In re B&P Baird Holdings, Inc.,* 759 F. App'x 468, 477–78 (6th Cir. 2019) (affirming district court's ruling on motion to dismiss did not control summary-judgment determination given different legal standards); *Kaufman v. Alexander*, 625 F. App'x 129, 133 n.7 (3d Cir. 2015) ("The District Court's ruling on a motion to dismiss, however, could hardly foreclose a subsequent ruling on summary judgment where a different standard applies."). *Second*, it cannot be futile to add the four proposed defenses that the Opposition itself concedes need not be pled. *Third*, the fact that the Texas Supreme Court upheld a treble-damages provision in a *different* statute against a facial and as-applied challenge does not speak to whether the damages and penalties Plaintiffs seek here would violate the Texas Constitution's excessive-fines clause. *Contra* Opp. at 20–21. Assuming the TMFPA facially does not impose unconstitutionally excessive fines, the amount of damages and penalties remains unknown and will not be known unless and until assessed by a jury or the Court, as applicable.

Even if Defendants' proposed "defenses might ultimately be unavailing in whole or in part, that will depend on an assessment of evidence, and such evidentiary analysis not an appropriate basis on which to deny a motion to amend." *White-Ruiz*, 1996 WL 744892, at *2 (S.D.N.Y. Dec. 31, 1996); *see also Hoffner v. Bradshaw*, 2007 WL 3046464, at 2 (N.D. Ohio Oct. 16, 2007)

7

("While the Court rejects the Petitioner's futility argument with regard to granting leave to amend . . . , the Court will consider both the Respondent's and the Petitioner's arguments while addressing the statute of limitations defense on its merits.").

II.  **DEFENDANTS ESTABLISHED GOOD CAUSE UNDER RULE 16 TO AMEND THEIR PLEADINGS AFTER THE DEADLINE FOR AMENDED PLEADINGS REFLECTED IN THE ORIGINAL CASE-MANAGEMENT ORDER.**

Defendants provided a straightforward explanation for not moving to amend by the May 13, 2022 deadline in the case-management order: that was the same day their original answer was due, and Defendants filed their original answers on May 20, 2022 with the Court's permission. Mot. at 7–8. "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements," and Defendants could not have met the deadline to amend their pleading no matter their diligence. *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001); *see also* Fed. R. Civ. P. 16(b), advisory committee note (1983 Amendment) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). Unsurprisingly, the Opposition does not cite a single case enforcing an order that would have required a litigant to amend its pleading *before* it filed its initial pleading in the case. The oddities of the case-management order as applied to this case—which would effectively mean that no party could ever amend its pleading—counsels in favor of amendment, not wholesale denial of all amendment rights.

As Judge Fitzwater has explained, "[w]here courts decline to grant leave to amend due to a lack of diligence, it is usually because the party retained the *records* related to the desired amendment" long before seeking amendment. *Medicredit*, 2018 WL 3752366, at *3 (emphasis in original; collecting cases; granting leave to amend). That was the case in *Lopez v. Reliable Clean-Up and Support Services*, 2018 WL 3609271 (N.D. Tex. July 27, 2018), which the Opposition repeatedly cites for support. There, movants sought to add a counterclaim and affirmative defense,

8

as well as change important responses in their answers, almost nine months after the amendment deadline passed, *see id.* at *2–4, and *nearly 16 months* after receiving the discovery that purportedly prompted the need to seek leave, *see id.* at *3–6. What's more, the *Lopez* court had amended and substantially extended the scheduling order *three* times to accommodate the movants' discovery needs in that case. *See id.*

Here, in contrast, no discovery was taken at the time of the May 2022 deadline. Under the accelerated discovery schedule, the parties only began serving written discovery in mid-to-late May, with the first responses served in June, while the parties' document productions did not begin in earnest until August. With discovery on an extremely fast track, Defendants diligently pursued evidence to support the defenses raised in their motions to dismiss and repeatedly gave notice to Plaintiffs that they intended to pursue those defenses to the extent they were supported by the record. For example, PPFA sought documents and information directly related to limitations beginning with its first discovery requests served on June 3, Mot. at 4–6, and has continued to do so through its requests for admission served on October 28, given the inconsistent positions that Plaintiffs have taken in discovery concerning Relator's false claim disclosures.

Similarly, and contrary to Plaintiffs' contention (at 9–10), the Civil Cover Sheet attached to Relator's Complaint [DE 2] was patently insufficient to put Defendants on notice of the Texas-law excessive fine defense. The Civil Cover Sheet discloses nothing about how Relator calculated the "Demand" in the case—or how much of it was made up of a fine. It wasn't until July 1, 2022, more than 45 days after the May 2022 deadline for Defendants' Answers, that Texas and Relator served an expert report calculating the outer limit of penalties at issue in the case as in excess of $2 billion dollars. Plaintiffs supplemented those reports on September 16 and October 26—and continue to suggest that Defendants are liable for penalties of more than $1.6 billion.

9

The Opposition faults Defendants for not seeking leave to amend sooner. But, again, Plaintiffs concede that four of the five proposed defenses need not be affirmatively pled, and Plaintiffs were on notice of Defendants' intent to raise any potential statute-of-limitations defenses revealed through discovery. *See, e.g.*, *Saenz v. Allstate Ins. Corp.*, 2012 WL 13059740, at *2 (S.D. Tex. Jan. 26, 2012) (granting leave to assert limitations defense in response to amended interrogatory answers). In any event, Plaintiffs' apparent approach to amendments would promote the type of "piecemeal amendment" that courts disfavor, *see Brown v. Little*, 2022 WL 16951991, at *5 (W.D. Pa. Oct. 27, 2022); *Carroll v. Toele*, 2020 WL 3469363, at *6 (S.D. Cal. June 25, 2020). Even if Defendants had possessed the information necessary to assess and raise their proposed defenses in May, a five-month delay would not amount to undue delay in the absence of prejudice to Plaintiffs—and they have identified none. *See Nat'l Recovery Agency, Inc. v. AIG Domestic Claims, Inc.*, 2006 WL 1289545, at *4 (M.D. Pa. May 9, 2006) (eleven-month delay in raising statute of limitations defense did "not amount to undue delay justifying denial of leave to amend" "in the absence of prejudice" to non-movant); *see also Arthur v. Maersk*, 434 F.3d 196, 204–205 (3d Cir. 2006) (eleven-month delay in amending complaint not so egregious as to warrant refusal of leave to amend and noting research uncovered only one appellate case that approved denial of leave to amend based on a delay of less than one year (for a 9-month delay)).

## **CONCLUSION**

Defendants respectfully request that the Court grant them leave to file amended answers.

Dated: November 22, 2022					**O'MELVENY & MYERS LLP**

*/s/ Danny S. Ashby*
DANNY S. ASHBY
Texas Bar No. 01370960
dashby@omm.com
JUSTIN R. CHAPA
Texas Bar No. 24074019
jchapa@omm.com
MEGAN R. WHISLER
Texas Bar No. 24079565
mwhisler@omm.com
2501 N. Harwood Street, Suite 1700
Dallas, Texas 75201
T: (972) 360-1900
F: (972) 360-1901

LEAH GODESKY (*pro hac vice*)
lgodesky@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
T: (310) 553-6700
F: (310) 246-6779

**RYAN BROWN ATTORNEY AT LAW**
RYAN PATRICK BROWN
Texas Bar No. 24073967
ryan@ryanbrownattorneyatlaw.com
1222 S. Fillmore St.
Amarillo, Texas 79101
T: (806) 372-5711
F: (806) 350-7716

*Attorneys for Defendant Planned Parenthood Federation of America, Inc.*


**ARNOLD & PORTER KAYE SCHOLER LLP**
*/s/ Tirzah S. Lollar*
Craig D. Margolis
Craig.Margolis@arnoldporter.com
Tirzah S. Lollar
Tirzah.Lollar@arnoldporter.com
Christian Sheehan
Christian.Sheehan@arnoldporter.com

11

      Emily Reeder-Ricchetti
      Emily.Reeder-Ricchetti@arnoldporter.com
      Megan Pieper
      Megan.Pieper@arnoldporter.com
      Alyssa Gerstner
      Alyssa.Gerstner@arnoldporter.com
      Meghan C. Martin
      Meghan.Martin@arnoldporter.com
      601 Massachusetts Ave, NW
      Washington, DC 20001-3743
      Telephone: +1 202.942.5000
      Fax: +1 202.942.5999

      Christopher M. Odell
      Texas State Bar No. 24037205
      Christopher.Odell@arnoldporter.com
      700 Louisiana Street, Suite 4000
      Houston, TX 77002-2755
      Telephone: +1 713.576.2400
      Fax: +1 713.576.2499

      Paula Ramer
      250 West 55th Street
      New York, New York 10019-9710
      T: +1 212.836.8474
      Paula.Ramer@arnoldporter.com

      Ryan Patrick Brown
      Texas Bar No. 24073967
      ryan@ryanbrownattorneyatlaw.com
      1222 S. Fillmore St.
      Amarillo, Texas 79101
      T: (806) 372-5711
      F: (806) 350-7716

      *Attorneys for Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood of South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 22, 2022, the foregoing document was electronically filed and served upon all parties and counsel of record via the Court's CM/ECF system.

*/s/ Danny S. Ashby*
Danny S. Ashby