# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* | ) |
| ALEX DOE, Relator, *et al.*, | ) |
| | ) Civil Action No. 2:21-22 |
| Plaintiffs | ) |
| | ) |
| v. | ) |
| | ) |
| PLANNED PARENTHOOD FEDERATION | ) |
| OF AMERICA, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

## APPENDIX IN SUPPORT OF NON-PARTY LOUISIANA DEPARTMENT OF HEALTH ET AL's MOTION FOR PROTECTIVE ORDER AND TO QUASH

| Exh. | Description | Page Nos. |
|---|---|---|
| | St. John Declaration | 001 - 002 |
| 01 | PPGC Subpoena to Attorney General James Caldwell | 003 - 047 |
| 02 | Emails Between St. John (LADOJ) and Lollar (PPGC) | 048 - 054 |
| 03 | PPGC Subpoena to Attorney General Jeff Landry | 055 - 104 |
| 04 | Attorney General Jeff Landry's Responses and Objections | 105 - 136 |
| 05 | Letter from St. John (LADOJ) to Lollar (PPGC) | 137 - 141 |
| 17 | Order, No. 3:15-cv-565 (M.D. La.) | 142 - 143 |
| 18 | Emails Between St. John (LADOJ) and Lollar (PPGC) | 144 - 147 |
| | Sullivan Declaration | 148 - 150 |
| 06 | PPGC Complaint, No. 3:15-cv-565 (M.D. La.) | 151 - 167 |
| 07 | Notice of Voluntary Dismissal, No. 3:15-cv-565 (M.D. La.) | 168 - 171 |
| 08 | Lollar (PPGC) Public Record Request to LDH | 172 - 175 |
| 09 | LDH Responses and Objections | 176 - 200 |
| 10 | LDH Responses and Objections to Rev. Subpoena | 201 - 307 |
| 11 | LDH Supp. Responses and Objections to Rev. Subpoena | 308 - 312 |
| 12 | LDH Second Supp. Responses and Objections to Rev. Subpoena | 313 - 315 |
| 13 | Lollar (PPGC) Letter to Coleman (LDH) | 316 - 321 |
| 14S | PPGC Subpoena to LDH | 322 - 368 |
| | Russo Declaration | 369 - 371 |
| | Bozeman Declaration | 372 - 373 |
| 14B | PPGC Subpoena to Russo (depo for 12/8/22) | 374 - 383 |
| 15 | PPGC Subpoena to Sullivan (depo for 12/7/22) | 384 - 393 |
| 16 | PPGC Subpoena to LDH (depo for 12/9/22) | 394 - 409 |

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* | ) | |
| ALEX DOE, Relator, *et al.*, | ) | |
| | ) | Civil Action No. 2:21-22 |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PLANNED PARENTHOOD FEDERATION | ) | |
| OF AMERICA, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | | |

**DECLARATION OF ATTORNEY JOSEPH ST. JOHN**

I serve as a Deputy Solicitor General in the Louisiana Department of Justice. I am counsel for non-parties Louisiana Department of Health, Stephen Russo (in his official capacity), and Kimberly Sullivan (in her official capacity) in connection with the above-captioned litigation. I have personal knowledge of the facts stated herein.

1.     Attached as Exhibit 1 is a true and accurate copy of a document subpoena received by the Louisiana Department of Justice.

2.     Attached as Exhibit 2 is a true and accurate copy of an email chain between LADOJ and Planned Parenthood's counsel.

3.     Attached as Exhibit 3 is a true and accurate copy of a document subpoena and an accompanying letter received by the Louisiana Department of Justice.

4.     Attached as Exhibit 4 is a true and accurate copy of Responses and Objections to Planned Parenthood's Subpoena, together with a cover transmittal email.

5.     Attached as Exhibit 5 is a true and accurate copy of correspondence from LADOJ to Planned Parenthood's counsel.

1

6.      Counsel for Relator informed me that they received deposition notices for the Louisiana Department of Health, Stephen Russo, and Kimberly Sullivan at approximately 6:00 p.m. on October 31, 2022.

7.      At 6:12 p.m. on October 31, 2022, I received a copy of the Fifth Circuit's opinion in *In re Planned Parenthood Federation of American*, No. 22-11009, via an email form the Fifth Circuit's opinion subscription service. Metadata for that document indicates it was created at 3:46 p.m. on October 31, 2022, and last modified at 5:00 p.m. on October 31, 2022.

8.      Attached as Exhibit 17 is a true and accurate copy of an order entered by the Middle District of Louisiana.

9.      Attached as Exhibit 18 is a true and accurate copy of an email chain between LADOJ and counsel for Planned Parenthood.

10.      According to Google Maps, the distance from LDH Headquarters at 628 N. 4th Street, Baton Rouge, Louisiana, to the place of compliance specified in Planned Parenthood's subpoenas is 75.1 miles via Interstate 10.

11.      Further declarant sayeth naught.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND THE STATE OF LOUISIANA THAT THE FOREGOING IS TRUE AND CORRECT to the best of my knowledge.

Executed in New Orleans, Louisiana, this 30th day of November 2022.

/s/ Joseph S. St. John
_____
JOSEPH S. ST. JOHN

2

# EXHIBIT 1

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Northern District of Texas

| | |
|---|---|
| U.S. ex rel. ALEX DOE et al. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. NO. 2:21-CV-00022-Z |
| Planned Parenthood Federation of America, Inc., et al. | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:          Attorney General James D. Caldwell

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: described in Attachment A

| Place: 601 Massachusetts Ave. NW Washington, DC 20001 | Date and Time: 07/07/2022 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   06/17/2022

CLERK OF COURT

_____          OR    _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Planned Parenthood Gulf Coast, Inc. _____          , who issues or requests this subpoena, are:
Tirzah Lollar, 601 Massachusetts Ave. NW, Washington, DC 20001, 202-942-6199, tirzah.lollar@arnoldporter.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**Appx 004**

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A TO SUBPOENA TO STATE OF LOUISISANA

## DEFINITIONS AND TERMS

1.      The terms "Louisiana," "you," and "your" refer to the government of the State of Louisiana; any agency, office, division, or department of the Louisiana Government, including but not limited to the Louisiana Department of Health, Louisiana Office of State Inspector General, and Louisiana Attorney General's Office; and any attorneys, agents, representatives (including any auditors or investigators hired by the Louisiana Government) acting or purporting to act on its behalf.

2.      The term "Texas" "refers to the government of the State of Texas; any agency, office, division, or department of the Texas Government, including but not limited to the Texas Health & Human Services Commission, Texas Office of the Inspector General, Texas Attorney General's Office, Texas Department of State Health Services, and the Texas Department of Public Safety; and any attorneys, agents, representatives (including any auditors or investigators hired by the Texas Government) acting or purporting to act on its behalf.

3.      The term "Relator" refers to Relator Alex Doe, his agents, legal representatives, or anyone purporting to act on the named Relator's behalf.

4.      The term "Planned Parenthood Defendants" refers to Defendants Planned Parenthood Gulf Coast, Inc. ("PPGC"), Planned Parenthood of Greater Texas, Inc. ("PPGT"), Planned Parenthood South Texas, Inc. ("PPST"), Planned Parenthood Cameron County, Inc. ("PP Cameron County"), Planned Parenthood San Antonio,

1

Inc. ("PP San Antonio") and Planned Parenthood Federation of America, Inc. ("PPFA").

5.  The term "Affiliate Defendants" refers to Defendants PPGC, PPGT, PPST, PP Cameron County, and PP San Antonio.

6.  The term "Relator's Complaint" refers to Relator's Complaint filed on February 5, 2021.

7.  The term "Texas's Complaint" refers to Texas's Complaint filed on January 6, 2022.

8.  The term "Center for Medical Progress" refers to the entity headquartered in Irvine, California, including all predecessors, subsidiaries, parents and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, and others acting on its behalf.

9.  The term "Center for Medical Progress videos" refers to videos related to any Planned Parenthood Defendant or other Planned Parenthood entity created by the Center for Medical Progress and/or currently or previously posted to the website of the Center for Medical Progress and/or Center for Medical Progress's YouTube Channel from 2013 to the present.

10. The term "David Daleiden" refers to the founder and president of the Center for Medical Progress, including but not limited to any agents, representatives, employees, consultants, attorneys, or others acting on his behalf.

11. The terms "Person" and "Persons" include without limitation, natural persons, corporations, associations, unincorporated associations, partnerships, and any other governmental or non-governmental entity.

2

**Appx 007**

12.     The term "Government" refers to the government of the United States of America; any agency, office, or military branch of the U.S. Government; and any attorneys, agents, representatives (including any auditors or investigators hired by the U.S. Government) acting or purporting to act on its behalf.

13.     The term "Medicaid" refers to the federal Centers for Medicare & Medicaid Services administered Medicaid program and any officers, officials, employees, agents, attorneys, or other representatives acting or purporting to act on its behalf, including any Managed Care Organization.

14.     The term "Texas Medicaid" refers to the State of Texas administered Medicaid program and any officers, officials, employees, agents, attorneys, or other representatives acting or purporting to act on its behalf, including any Managed Care Organization.

15.     The term "Louisiana Medicaid" refers to the State of Louisiana administered Medicaid program and any officers, officials, employees, agents, attorneys, or other representatives acting or purporting to act on its behalf, including any Managed Care Organization.

16.     The term "generally accepted medical standards" has the meaning used in the Final Notice of Termination of Enrollment dated December 20, 2016.  Relator's Compl. [Dkt. 2] Ex. C.

17.     The term "fetal tissue procurement" and has the meaning used in the Final Notice of Termination of Enrollment issued by the Office of Inspector General, Texas Health & Human Service Commission dated December 20, 2016.  Relator's Compl. [Dkt. 2] Ex. C (referring to Planned Parenthood's alleged "policy of agreeing to

3

procure fetal tissue, potentially for valuable consideration, even it means altering the timing or method of abortion" and Planned Parenthood's alleged "misrepresentation about [its] activity related to fetal tissue procurements").

18.   The term "Medicaid's free choice of provider requirement" refers to the requirement for a state plan to allow a beneficiary to obtain Medicaid services from any institution, agency, pharmacy, person, or organization, including family planning services, that is qualified to furnish services and willing to furnish them to that particular beneficiary. *See* 42 CFR § 431.51.

19.   The term "including" shall mean "including, but not limited to."

20.   The term "overpayment" has the meaning as used in Paragraphs 17 and 40 of the Texas Complaint.

21.   The term "Grace Period" refers to the thirty-day period granted by Texas Health and Human Services Commission to Planned Parenthood through February 3, 2021, referenced in Texas's Complaint.  Tex. Compl. ¶ 6.

22.   The term "the Media" refers to any news organization or mass media organization, including print, internet, television, radio, or other media.

23.   "Documents" as used herein shall be construed to the full extent of Fed. R. Civ. P. 34, and shall include every original and every non-identical copy of any original of all mechanically written, handwritten, typed or printed material, electronically stored data, microfilm, microfiche, sound recordings, films, photographs, videotapes, slides, and other physical objects or tangible things of every kind and description containing stored information, including but not limited to, transcripts, letters, correspondence, notes, memoranda, tapes, records, telegrams, electronic

4

mail, facsimiles, periodicals, pamphlets, brochures, circulars, advertisements, leaflets, reports, research studies, test data, working papers, drawings, maps, sketches, diagrams, blueprints, graphs, charts, diaries, logs, manuals, agreements, contracts, rough drafts, analyses, ledgers, inventories, financial information, bank records, receipts, books of account, understandings, minutes of meetings, minute books, resolutions, assignments, computer printouts, purchase orders, invoices, bills of lading, written memoranda or notes of oral communications, and any other tangible thing of whatever nature.

24.    The terms "relate to," "related to," "relating to," and "concerning" shall mean mentioning, comprising, consisting, indicating, describing, reflecting, referring, evidencing, regarding, pertaining to, showing, discussing, connected with, memorializing, or involving in any way whatsoever the subject matter of the request, including having a legal, factual or logical connection, relationship, correlation, or association with the subject matter of the request. A document may "relate to" or an individual or entity without specifically mentioning or discussing that individual or entity by name.

25.    The terms "communication" and "communications" shall mean all meetings, interviews, conversations, conferences, discussions, correspondence, messages, telegrams, telefax, electronic mail, mailgrams, telephone conversations, and all oral, written and electronic expressions, or other occurrences whereby thoughts, opinions, information, or data are transmitted between two or more persons.

26.    The terms "communication" and "communications" shall mean all meetings, interviews, conversations, conferences, discussions, correspondence, messages,

5

telegrams, telefax, electronic mail, mailgrams, telephone conversations, and all oral, written, and electronic expressions, or other occurrences whereby thoughts, opinions, information, or data are transmitted between two or more persons.

## **INSTRUCTIONS**

1.    Furnish all documents and things within the possession, custody, or control of Louisiana that are responsive to these Requests, including information or items in the possession of their assignees, agents, legal representatives, employees, representatives, attorneys, other personnel thereof, or anyone purporting to act on behalf of Louisiana.

2.    If an objection is made to any request herein, all documents and things responsive to the request not subject to the objection should be produced. Similarly, if any objection is made to the production of a document, the portion(s) of that document not subject to the objection should be produced with the portion(s) objected to redacted and indicated clearly as such. Otherwise, no communication, document, file, or thing requested should be altered, changed, or modified in any respect. All communications, documents, and files shall be produced in full and unexpurgated form, including all attachments and enclosures either as they are kept in the ordinary course or organized to correspond with those requests.

3.    No communication, document, file, or thing requested should be disposed of or destroyed.

4.    If you object to any Document Request, or otherwise withhold responsive information because of a claim of privilege, work product, or other grounds:

    a.    identify the Document Request to which objection or claim of privilege is

6

made;

    b.    identify every document withheld; the author, the date of creation, and all recipients;

    c.    identify all grounds for objection or assertion of privilege, and set forth the factual basis for assertion of the objection or claim of privilege; and

    d.    identify the information withheld by description of the topic or subject matter, the date of the communication, and the participants.

5.  Unless otherwise specified, the relevant time period for these Document Requests is 2010 to the present.

6.  You are under an affirmative duty to supplement your responses to these Document Requests with documents you may acquire or discover after completing your production, if you learn your response is in some material respect incomplete or incorrect and the additional or corrective information has not been made known to Planned Parenthood.

## **DOCUMENTS TO BE PRODUCED**

1.    All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to PPGC's Louisiana Medicaid status from 2010 to the present including but not limited to:

    a.    documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to whether PPGC remains a Louisiana Medicaid Provider after November 23, 2020; and

    b.    documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to whether PPGC remains a Louisiana Medicaid Provider after January 20, 2022.

2.    All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to Louisiana's consideration and decision to terminate any Planned Parenthood Defendant from Louisiana Medicaid based on grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about August 3, 2015 (attached as Ex. A) or grounds asserted in the termination notices issued to Planned Parenthood by the

Louisiana Department of Health and Hospitals on or about September 15, 2015 (attached as Ex. B) including but not limited to:

    a.   documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to the August 11, 2016 letter from Vikki Wachino, Director, Centers for Medicare & Medicaid Services, addressed to Jen Steele, Medicaid Director, State of Louisiana, Department of Health and Hospitals (attached as Ex. C).and Louisiana's response to that letter on September 27, 2016 (attached as Ex. D); and

    b.   documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to the basis for Louisiana's termination/revocation of the Louisiana Medicaid Provider Agreements with PPGC, including but not limited to the alleged "mispresentations" by PPGC referenced in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about September 15, 2015 (attached as Ex. B).

3.    Documents sufficient to identify the instances when Louisiana "terminated other types of providers for similar violations of these provisions" as referenced in Louisiana's response to Question No. 2 in its September 27, 2016 response (attached as Ex. D). Your response should include for each termination, documents sufficient to identify the provider that was terminated, the date of the termination, the reason for the termination, the date of the conduct that resulted in the termination, whether the provider was asked or obligated to return any amounts reimbursed under Medicaid or Louisiana Medicaid, whether the provider did return any amounts reimbursed under Medicaid or Louisiana Medicaid, and the amount of any reimbursements that were returned.

4.    All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about August 3, 2015 (Ex. A).

5.    All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to Louisiana's decision to rescind the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about August 3, 2015 (Ex. A).

6.    All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about September 15, 2015 (Ex. B).

7.    All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to Texas's consideration and decision to terminate any Planned Parenthood Defendant from Texas Medicaid based on grounds asserted in the termination notices issued to Planned Parenthood by the Office of Inspector

General, Texas Health & Human Services Commission on or about October 19, 2015 and December 20, 2016 (Relator's Compl. [Dkt. 2] Exs. B, C).

8.  All documents relating to or reflecting communications with the Center for Medical Progress and/or David Daleiden from 2013 to present.

9.  All documents related to your decision to not intervene in Relator Doe's case.

10. All documents relating to or reflecting communications with any staff, attorneys, or investigators for Louisiana regarding the matters alleged Relator's Complaint, including but not limited to (i) information about any Planned Parenthood Defendant provided to the State of Louisiana by Relator, (ii) the termination of any Planned Parenthood Defendant from Louisiana Medicaid, and (iii) the litigation initiated by any Planned Parenthood Defendant regarding its potential termination from Medicaid, Texas Medicaid, and/or Louisiana Medicaid.

11. All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to any fetal tissue procurement or donation in which any Medicaid, Texas Medicaid, or Louisiana Medicaid provider unrelated to Planned Parenthood participated or facilitated or agreed to participate or facilitate.

12. All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to the participation or facilitation or alleged participation or facilitation of any Planned Parenthood Defendant in any fetal tissue procurement or donation.

13. All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to whether participation or an agreement to participate in any fetal tissue procurement or donation renders a Medicaid provider unqualified to provide service under Medicaid, Texas Medicaid, or Louisiana Medicaid.

14. All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to federal court injunctions and/or the effects of federal court injunctions related to the potential termination of any Planned Parenthood Defendant's participation in Medicaid, Texas Medicaid, and/or Louisiana Medicaid.

15. All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to state court injunctions and/or the effects of a state court injunction related to the potential termination of any Planned Parenthood Defendant's participation in Medicaid, Texas Medicaid, and/or Louisiana Medicaid.

16. All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to whether termination of PPGC violated Medicaid's free choice of provider requirement and why or why not.

17.   All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to the continued participation of any Planned Parenthood Defendant in Medicaid, Texas Medicaid, and/or Louisiana Medicaid.

18.   All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to whether any Planned Parenthood Defendant had an obligation to repay any amount paid by Medicaid, Texas Medicaid, and/or Louisiana Medicaid to any Planned Parenthood Affiliate.

19.   All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to whether Medicaid, Texas Medicaid, and/or Louisiana Medicaid could or should seek recoupment of amounts reimbursed to any Planned Parenthood Defendant from 2010 to the present.

20.   All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to termination by the United States, Texas, or Louisiana of any Medicaid provider unrelated to Planned Parenthood for violations of laws or regulations related to medical research, fetal tissue procurement or donation, or an agreement to engage in fetal tissue procurement or donation, including but not limited to whether any terminated federal, Texas, or Louisiana Medicaid provider was asked or obligated to return amounts reimbursed under federal, Texas, or Louisiana Medicaid.

21.   All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to termination by the United States, Texas, and/or Louisiana of any Medicaid, Texas Medicaid, or Louisiana Medicaid provider on basis that the entity was not a qualified provider, including but not limited to whether any terminated Medicaid provider was asked or obligated to return amounts reimbursed under Medicaid.

22.   All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to your understanding of relationships between affiliated companies under Medicaid, Texas Medicaid, or Louisiana Medicaid and any laws, regulations, policies, or guidance regarding whether and how a finding that one company is not a qualified provider may affect an affiliated company's qualifications as a provider.

23. All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to your views regarding whether a payment, to which a Medicaid provider is entitled at the time of payment, can become an overpayment based on a subsequent change in law and/or a judicial decision. *See, e.g.*, Centers for Medicare & Medicaid Services, Medicare Program; Reporting and Returning of Overpayments, 81 Fed. Reg. 7653, 7658 (Feb. 12, 2016) ("We agree that payments that were proper at the time the payment was made do not become overpayments at a later time due to changes in law or regulation, unless otherwise required by law.").

24. All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to any Planned Parenthood Affiliate's qualifications to provide services under Medicaid, Texas, Medicaid, and/or Louisiana Medicaid.

25. All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to information provided by you to the U.S. Congress related to any Planned Parenthood Defendant from 2015 to present regarding any Planned Parenthood Defendant's qualifications to provide service under Medicaid, Texas Medicaid, and/or Louisiana Medicaid; any Planned Parenthood Defendant's termination in Texas and/or Louisiana; continued participation of any Planned Parenthood Defendant in Louisiana Medicaid; whether participation in fetal tissue procurement or donation or agreeing to participate in fetal tissue procurement or donation renders a Medicaid provider unqualified to provide service under Medicaid, Texas Medicaid, or Louisiana Medicaid; and whether Medicaid, Texas Medicaid, and/or Louisiana Medicaid could or should seek recoupment for amounts reimbursed to any Planned Parenthood Defendant from 2010 to the present.

26. All communications between Louisiana and the Media relating to any Planned Parenthood Defendant's qualifications to provide service under Medicaid, Texas Medicaid, and/or Louisiana Medicaid; any Planned Parenthood Defendant's termination in Texas and/or Louisiana; continued participation of any Planned Parenthood Defendant in Louisiana Medicaid; whether participation in fetal tissue procurement or donation or an agreement to participate in fetal tissue procurement or donation renders a Medicaid provider unqualified to provide service under Medicaid, Texas Medicaid, or Louisiana Medicaid; and whether Medicaid, Texas Medicaid, and/or Louisiana Medicaid could or should seek recoupment for amounts reimbursed to any Planned Parenthood Defendant from 2010 to the present.

27. All documents or videos (both edited and unedited) provided to Louisiana by Relator, the Center for Medical Progress, or third parties acting on Relator's behalf, including staff, attorneys, or investigators.

28. All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to Louisiana's evaluation of the Center for Medical Progress videos, including but not limited to your response(s) to those videos and any public official or other public agency's response(s) to those videos.

**Appx 016**

29.    All communications between Louisiana and the Media relating to the Center for Medical Progress videos.

30.    All communications between Louisiana and members of the United States Congress (including their staff) related to the Center for Medical Progress videos.

31.    All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to allegations that Planned Parenthood submitted claims to the United States, Texas, or Louisiana in violation of the Louisiana Medical Assistance Programs Integrity Law based on grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about August 3, 2015 (Ex. A) or grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about September 15, 2015 (Ex. B).

32.    Documents sufficient to identify the Louisiana Medicaid claims for which Louisiana Medicaid paid any Planned Parenthood Defendant from 2010 to present, for which (a) you have concluded that the claim was submitted in violation of the Louisiana Medical Assistance Programs Integrity Law based on grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about August 3, 2015 (Ex. A) or grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about September 15, 2015 (Ex. B); and/or (b) you believe that the claim was submitted in violation of the Louisiana Medical Assistance Programs Integrity Law based on grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about August 3, 2015 (Ex. A) or grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about September 15, 2015 (Ex. B), excluding patient names, patient dates of birth, patient marital status, insured names, insured dates of birth, insured marital status, or other patient information.

33.    Documents sufficient to identify all unpaid Louisiana Medicaid claims that any Planned Parenthood Defendant presented or caused to be presented to Louisiana Medicaid from 2010 to present, for which (a) you have concluded that the claim was submitted in violation of the Louisiana Medical Assistance Programs Integrity Law based on grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about August 3, 2015 (Ex. A) or grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about September 15, 2015 (Ex. B); and/or (b) you believe that the claim was submitted in violation of the Louisiana Medical Assistance Programs Integrity Law based on grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about August 3, 2015 (Ex. A) or grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about September 15, 2015 (Ex. B), excluding patient names, patient dates of birth, patient marital status, insured names, insured dates of birth, insured marital status, or other patient information.

34. Documents sufficient to identify all Medicaid claims for which Medicaid paid any Planned Parenthood Defendant from 2010 to present, for which: (a) you have concluded that the Planned Parenthood Defendant has an obligation to repay the claim(s); and/or (b) you believe the Planned Parenthood Defendant has an obligation to repay the claim(s), excluding patient names, patient dates of birth, patient marital status, insured names, insured dates of birth, insured marital status, or other patient information.

35. Documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to the materiality of the alleged participation of any Medicaid, Texas Medicaid, or Louisiana Medicaid provider in fetal tissue procurement or donation or agreement to participate in fetal tissue procurement or donation to the payment of claims to that provider under Medicaid, Texas Medicaid, or Louisiana Medicaid.

*   *   *

13

**Appx 018**

# Exhibit A

Bobby Jindal
GOVERNOR

Kathy H. Kliebert
SECRETARY

# State of Louisiana
## Department of Health and Hospitals
### Bureau of Legal Services

### BUREAU OF LEGAL SERVICES — FAX TRANSMITTAL

| DATE: | 8·3·15 | | |
|---|---|---|---|
| TO: | Melaney Linton | | |
| | | | |
| FROM: | Steve Russo | | |
| RE: | Planned Parenthood | | |
| FAX NUMBERS: | 713 535 2618 | | |
| | | | |

**COMMENTS:**

**PAGES:** (INCLUDING COVER SHEET) 9

### PRIVACY AND CONFIDENTIALITY WARNING:

This facsimile is from an attorney and may contain information that is confidential or legally privileged. Further, this facsimile may contain Protected Health Information (PHI), Individually Identifiable Health Information (IIHI) and other information which is protected by law.

This message is only for the use of the intended recipient. Use by an erroneous recipient or any other unauthorized individual or entity of information contained in, or attached to, this or any other facsimile message may result in legal action.

If you are not the intended recipient, you are hereby notified any review, disclosure/re-disclosure, copying, storing, distributing or the taking of action in reliance on the content of this facsimile and any attachments thereto, is strictly prohibited.

If you are not the intended recipient and/or have received this facsimile in error, please (1) immediately advise the sender by telephone that this message has been inadvertently transmitted to you, and (2) destroy the contents of this facsimile and its attachments by deleting any and all electronic copies and any and all hard copies regardless of where they are maintained or stored.

Bienville Building • 628 North 4th Street • P.O. Box 3836 • Baton Rouge, Louisiana 70821-3836
Phone #: (225) 342-1128 • Fax #: (225) 342-2232 • WWW.DHH.LA.GOV
"An Equal Opportunity Employer"

Appx 020

**Bobby Jindal**
GOVERNOR

**Kathy H. Kliebert**
SECRETARY

## State of Louisiana

Department of Health and Hospitals
Office of the Secretary

August 3, 2015

Planned Parenthood of Louisiana
ATTN: Melaney Linton
4018 Magazine St.
New Orleans, LA 70115

**Certified Mail, Return Receipt Requested (7012 1640 0001 7222 5655)**

Re:     Medicaid Provider Agreement
        Provider Number 91338

Dear Mrs. Linton:

As you are aware, in order to participate in the Louisiana Medicaid Program (Medicaid),
providers are required to sign a Medicaid provider agreement with the Louisiana
Department of Health and Hospitals (LDHH). Pursuant to La. R.S. 46:437.11, each such
provider agreement shall be a voluntary contract between LDHH and the applicable
health care provider. According to subsection (D)(1) of the statute, a provider agreement
**SHALL** be terminable by either party 30 days after receipt of written notice. In
accordance with this statute, please consider this your written notice that LDHH is
exercising its right to terminate your provider agreement effective 30 days after your
receipt of this notice.

After any and all local, state, or federal investigations of your entity have been
concluded, LDHH expressly reserves the right to amend this notice and terminate your
provider agreement immediately, and without written notice, if you become the subject of
a sanction or of a criminal, civil, or departmental proceeding.

Pursuant to La. R.S. 46:107, you have an opportunity for a hearing at the state level based
on this termination of your provider agreement. All final decisions in cases of appeal are
rendered by the office of the secretary at the state level and such decisions exhaust your
administrative remedy. Your request for an Administrative Appeal must be in writing
and must set out the reasons for which you are seeking an appeal and the basis on which
you disagree with the department's decision. All requests for an Administrative Appeal
must be received within 30 calendar days of receipt of this letter.

Bienville Building • 628 North 4th Street • P.O. Box 629 • Baton Rouge, Louisiana 70821-0629
Phone #: 225/342-9509 • Fax #: 225/342-5568 • WWW.DHH.LA.GOV
"An Equal Opportunity Employer"

Appx 021

August 3, 2015
Page 2

Any such request must be sent to the address below:

Division of Administrative Law – HH Section
P.O. Box 4189
Baton Rouge, Louisiana 70821-4189
Phone: (225) 342-0443
Fax: (225) 219-9823

Please send a copy of any request for appeal to the Bureau of Legal Services at P.O. Box 3836, Baton Rouge, Louisiana 70821, Attention: Stephen Russo.

You may be represented by an attorney or authorized representative at the Administrative Appeal. Your attorney or authorized representative must file a written notice of representation identifying his/her name, address, and telephone number at the address given above.

If you have any questions regarding this correspondence, you may contact Stephen R. Russo, Executive Counsel at 225-342-1128.

Sincerely,

Kathy Kliebert
Secretary

Cc: Planned Parenthood Gulf Coast (7099 3400 0002 6023 8151)

**Bobby Jindal**
GOVERNOR

**Kathy H. Kliebert**
SECRETARY

# State of Louisiana

Department of Health and Hospitals
Office of the Secretary

August 3, 2015

Planned Parenthood of Houston
ATTN: Melaney Linton
4600 Gulf Fwy.
Houston, TX 77023

**Certified Mail, Return Receipt Requested (7012 1640 0001 7222 5594)**

Re:     Medicaid Provider Agreement
        Provider Number 45802

Dear Mrs. Linton:

As you are aware, in order to participate in the Louisiana Medicaid Program (Medicaid),
providers are required to sign a Medicaid provider agreement with the Louisiana
Department of Health and Hospitals (LDHH). Pursuant to La. R.S. 46:437.11, each such
provider agreement shall be a voluntary contract between LDHH and the applicable
health care provider. According to subsection (D)(1) of the statute, a provider agreement
**SHALL** be terminable by either party 30 days after receipt of written notice. In
accordance with this statute, please consider this your written notice that LDHH is
exercising its right to terminate your provider agreement effective 30 days after your
receipt of this notice.

After any and all local, state, or federal investigations of your entity have been
concluded, LDHH expressly reserves the right to amend this notice and terminate your
provider agreement immediately, and without written notice, if you become the subject of
a sanction or of a criminal, civil, or departmental proceeding.

Pursuant to La. R.S. 46:107, you have an opportunity for a hearing at the state level based
on this termination of your provider agreement. All final decisions in cases of appeal are
rendered by the office of the secretary at the state level and such decisions exhaust your
administrative remedy. Your request for an Administrative Appeal must be in writing
and must set out the reasons for which you are seeking an appeal and the basis on which
you disagree with the department's decision. All requests for an Administrative Appeal
must be received within 30 calendar days of receipt of this letter.

August 3, 2015
Page 2

Any such request must be sent to the address below:

Division of Administrative Law – HH Section
P.O. Box 4189
Baton Rouge, Louisiana 70821-4189
Phone: (225) 342-0443
Fax: (225) 219-9823

Please send a copy of any request for appeal to the Bureau of Legal Services at P.O. Box
3836, Baton Rouge, Louisiana 70821, Attention: Stephen Russo.

You may be represented by an attorney or authorized representative at the Administrative
Appeal. Your attorney or authorized representative must file a written notice of
representation identifying his/her name, address, and telephone number at the address
given above.

If you have any questions regarding this correspondence, you may contact Stephen R.
Russo, Executive Counsel at 225-342-1128.

Sincerely,

Kathy Kliebert
Secretary

Cc: Planned Parenthood Gulf Coast (7012 1640 0001 7222 5693)

Appx 024

Bobby Jindal
GOVERNOR

Kathy H. Kliebert
SECRETARY

## State of Louisiana
Department of Health and Hospitals
Office of the Secretary

August 3, 2015

Planned Parenthood
ATTN: Melaney Linton
4018 Magazine St.
New Orleans, LA 70115

## Certified Mail, Return Receipt Requested (7012 1640 0001 7222 5686)

Re:    Medicaid Provider Agreement
       Provider Number 133673

Dear Mrs. Linton:

As you are aware, in order to participate in the Louisiana Medicaid Program (Medicaid), providers are required to sign a Medicaid provider agreement with the Louisiana Department of Health and Hospitals (LDHH). Pursuant to La. R.S. 46:437.11, each such provider agreement shall be a voluntary contract between LDHH and the applicable health care provider. According to subsection (D)(1) of the statute, a provider agreement **SHALL** be terminable by either party 30 days after receipt of written notice. In accordance with this statute, please consider this your written notice that LDHH is exercising its right to terminate your provider agreement effective 30 days after your receipt of this notice.

After any and all local, state, or federal investigations of your entity have been concluded, LDHH expressly reserves the right to amend this notice and terminate your provider agreement immediately, and without written notice, if you become the subject of a sanction or of a criminal, civil, or departmental proceeding.

Pursuant to La. R.S. 46:107, you have an opportunity for a hearing at the state level based on this termination of your provider agreement. All final decisions in cases of appeal are rendered by the office of the secretary at the state level and such decisions exhaust your administrative remedy. Your request for an Administrative Appeal must be in writing and must set out the reasons for which you are seeking an appeal and the basis on which you disagree with the department's decision. All requests for an Administrative Appeal must be received within 30 calendar days of receipt of this letter.

August 3, 2015
Page 2

Any such request must be sent to the address below:

Division of Administrative Law – HH Section
P.O. Box 4189
Baton Rouge, Louisiana 70821-4189
Phone: (225) 342-0443
Fax: (225) 219-9823

Please send a copy of any request for appeal to the Bureau of Legal Services at P.O. Box 3836, Baton Rouge, Louisiana 70821, Attention: Stephen Russo.

You may be represented by an attorney or authorized representative at the Administrative Appeal. Your attorney or authorized representative must file a written notice of representation identifying his/her name, address, and telephone number at the address given above.

If you have any questions regarding this correspondence, you may contact Stephen R. Russo, Executive Counsel at 225-342-1128.

Sincerely,

Kathy Kliebert
Secretary

Cc: Planned Parenthood Gulf Coast (7012 1640 0001 7222 5679)

Appx 026

**Bobby Jindal**
GOVERNOR

**Kathy H. Kliebert**
SECRETARY

# State of Louisiana

Department of Health and Hospitals
Office of the Secretary

August 3, 2015

Planned Parenthood
ATTN: Melaney Linton
3955 Government Street, Ste. 2
Baton Rouge, LA 70806

## Certified Mail, Return Receipt Requested (7012 1640 0001 7222 5662)

Re:    Medicaid Provider Agreement
       Provider Number 133689

Dear Mrs. Linton:

As you are aware, in order to participate in the Louisiana Medicaid Program (Medicaid), providers are required to sign a Medicaid provider agreement with the Louisiana Department of Health and Hospitals (LDHH). Pursuant to La. R.S. 46:437.11, each such provider agreement shall be a voluntary contract between LDHH and the applicable health care provider. According to subsection (D)(1) of the statute, a provider agreement **SHALL** be terminable by either party 30 days after receipt of written notice. In accordance with this statute, please consider this your written notice that LDHH is exercising its right to terminate your provider agreement effective 30 days after your receipt of this notice.

After any and all local, state, or federal investigations of your entity have been concluded, LDHH expressly reserves the right to amend this notice and terminate your provider agreement immediately, and without written notice, if you become the subject of a sanction or of a criminal, civil, or departmental proceeding.

Pursuant to La. R.S. 46:107, you have an opportunity for a hearing at the state level based on this termination of your provider agreement. All final decisions in cases of appeal are rendered by the office of the secretary at the state level and such decisions exhaust your administrative remedy. Your request for an Administrative Appeal must be in writing and must set out the reasons for which you are seeking an appeal and the basis on which you disagree with the department's decision. All requests for an Administrative Appeal must be received within 30 calendar days of receipt of this letter.

Bienville Building • 628 North 4th Street • P.O. Box 629 • Baton Rouge, Louisiana 70821-0629
Phone #: 225/342-9509 • Fax #: 225/342-5568 • *WWW.DHH.LA.GOV*
"An Equal Opportunity Employer"

Appx 027

August 3, 2015
Page 2

Any such request must be sent to the address below:

Division of Administrative Law – HH Section
P.O. Box 4189
Baton Rouge, Louisiana 70821-4189
Phone: (225) 342-0443
Fax: (225) 219-9823

Please send a copy of any request for appeal to the Bureau of Legal Services at P.O. Box 3836, Baton Rouge, Louisiana 70821, Attention: Stephen Russo.

You may be represented by an attorney or authorized representative at the Administrative Appeal. Your attorney or authorized representative must file a written notice of representation identifying his/her name, address, and telephone number at the address given above.

If you have any questions regarding this correspondence, you may contact Stephen R. Russo, Executive Counsel at 225-342-1128.

Sincerely,

Kathy Kliebert
Secretary

Cc: Planned Parenthood Gulf Coast (7012 1640 0001 7222 5549)

Appx 028

# Exhibit B



Bobby Jindal
GOVERNOR

Kathy H. Kliebert
SECRETARY

## State of Louisiana
### Department of Health and Hospitals
Office of the Secretary

September 15, 2015

Planned Parenthood
ATTN: Melaney Linton
4018 Magazine Street
New Orleans, LA 70115

**Certified Mail, Return Receipt Requested (7012 2210 0001 6260 0080)**

Re:    Termination / Revocation of Louisiana Medicaid Provider Agreement
      Provider Number 91338

Dear Mrs. Linton:

Based on the initial findings of Louisiana's investigation into Planned Parenthood Gulf Coast (PPGC), you are hereby notified that the Department of Health and Hospitals (DHH) is hereby terminating / revoking the PPGC provider agreement referenced above. This action is being taken pursuant to La. R.S. 46:437.11 and 46:437.14. This action will take effect following final determination, judgment, completion, withdrawal from, or termination of all administrative and/or legal proceedings in this matter. Such proceedings include, but are not limited to, informal hearings, administrative appeals, appeals for judicial review, appellate judgments, and/or denials of writ applications.

Specifically, it is clear that PPGC entered into a Federal False Claims Act settlement signed on July 25, 2013, by Melaney A. Linton, President and CEO of PPGC agreeing to pay $4,300,000 to the United States who "contend[ed] that PPGC submitted false claims." Settlement Agreement, *Reynolds v. Planned Parenthood Gulf Coast*, No. 9:09-cv-124 (E.D. TX, Lufkin Div.)(July 25, 2013). In accordance with the Louisiana Administrative Code, Title 50, this is a violation. Further, under that same administrative code, PPGC had an affirmative duty to inform BHSF in writing of this violation. Since DHH, through BHSF, was not informed within ten (10) working days of when the provider knew or should have known of the violation, this constitutes a separate violation. Also under consideration in our departmental proceedings are provider audits and federal false claims cases against Planned Parenthood of America (PPFA) affiliates. Included among these are pending federal false claims cases against PPGC, one in which the presiding judge found that the information already provided "allows the court to draw the reasonable inference that Planned Parenthood knowingly filed false claims." Memorandum Opinion and Order at 17, *Carroll v. Planned Parenthood Gulf Coast*, 4:12-cv-03505 (S.D. TX, Houston Div.) (May 14, 2014). Providers and providers-in-fact are required to ensure that all their agents and affiliates are in compliance with all federal and state laws as well as rules, policies and procedures of the Medicaid program. PPGC and its parent organization PPFA has failed to do so and has failed to notify DHH of violations and misconduct by affiliates and providers-in-fact. These are also violations of La. Admin. Code, Title 50.

Bienville Building • 628 N. 4ᵗʰ Street • P.O. Box 629 • Baton Rouge, Louisiana 70821-0629
Phone #: 225/342-9509 • Fax #: 225/342-5568 • WWW.DHH.LA.GOV
"An Equal Opportunity Employer"

Appx 030

Further, in regard to the Center for Medical Progress (CMP) videos, DHH reviewed responses received from PPGC via letters dated July 24, 2015, and August 14, 2015, from Melaney Linton in response to DHH letters dated July 15, 2015, and August 4, 2015. After said review, DHH believes that PPGC misrepresented its actions therein and had contradictions within the body of the letter and with the statements and admissions made in the CMP videos, including but not limited to the video released on August 4, 2015 and taped in April of this year, containing conversations with PPGC senior management, including the PPGC director of research and PPCFC facility director.

According to La. R.S. 46:437.11(D)(2), the Secretary may terminate a provider agreement immediately and without written notice if a health care provider is the subject of a sanction or of a criminal, civil, or departmental proceeding. The Department determines that PPGC currently fits within this statute due to the investigations of PPGC by both DHH and the Louisiana Office of Inspector General. DHH expressly reserves the right to amend this notice and to terminate your provider agreement immediately and without written notice based on the further findings of the pending investigations by any department of Louisiana, any other State or state agency, or the pending investigations in the congressional committees. DHH has elected to provide PPGC with full due process rights as mentioned above and will not pursue immediate termination pursuant to this notice.

According to 46:437.14(A)(1), DHH may deny or revoke enrollment in the Medicaid program in cases of misrepresentation. As alleged above, DHH believes PPGC's responses to inquiries, when compared to clear representations in various videos, rises to the level of misrepresentation. Further, according to La. R.S. 46:437.14(A)(10) and (12), DHH may move to revoke enrollment if a provider is found in violation of licensing or certification conditions or professional standards relating to the licensure or certification of health care providers or the required quality of goods, services, or supplies provided. Also, a provider agreement can be revoked for failure to meet any condition of enrollment. As a Medicaid provider, PPGC is charged with maintaining compliance with all state statutes, rules and regulations, including the Louisiana Administrative Code mentioned above. PPGC's actions mentioned above are clear violations of applicable administrative code provisions and are clear violations of the statutes mentioned. Based on the conduct described, the above provider number is hereby being terminated / revoked.

You are entitled to an administrative review of this action and it is suspensive if you avail yourself of same. Initially, you should request an Informal Hearing at which you are entitled to both present information in writing or orally, present documents, and to further inquire as to the reasons for our determination. You must make your request for an Informal Hearing in writing and within fifteen (15) calendar days (including Saturdays and Sundays) of receipt of this notice. Your written request should be sent to:

Louisiana DHH, Office of Secretary
P.O. Box 3836
Baton Rouge, Louisiana 70821

15-30987.358

You may be represented by an attorney or authorized representative at the Informal Hearing. Your attorney or authorized representative must file a written notice of representation identifying himself by name, address, and telephone number at the address given above.

Following the Informal Hearing you will receive a written Notice of the Results of the Informal Hearing from which you are entitled to seek an appeal before the Division of Administrative Law. This hearing will also be suspensive in nature. Your request for Administrative Appeal must be in writing and set out the reasons for which you are seeking an appeal and the basis upon which you disagree with the results of the Informal Hearing. All requests for an Administrative Appeal must be received within thirty (30) calendar days (including Saturdays and Sundays) of the receipt of this notice. Request for Administrative Appeal must be sent to the address given below.

Division of Administrative Law – HH Section
P.O. Box 4189
Baton Rouge, Louisiana 70821-4189
Phone (225) 342-0443
Fax (225) 219-9823

You may be represented by an attorney or authorized representative at the Administrative Appeal. Your attorney or authorized representative must file a written notice of representation identifying himself by name, address, and telephone number at the address above.

You may choose to forego the Informal Hearing and instead request an Administrative Appeal of this action. If you choose this alternative, please follow the procedure described above for scheduling an Administrative Appeal.

If you do not request an Informal Hearing or an Administrative Appeal, your termination will become effective thirty (30) days (including Saturdays and Sundays) from the date of your receipt of this letter.

If you have any questions regarding this correspondence, you may contact Stephen R. Russo, Executive Counsel, at (225) 342-1115.

Sincerely,

Kathy Kliebert, Secretary
Louisiana Department of Health and Hospitals

Cc: Planned Parenthood Gulf Coast

15-30987.350

Bienville Building • 628 N. 4th Street • P.O. Box 629 • Baton Rouge, Louisiana 70821-0629
Phone #: 225/342-9509 • Fax #: 225/342-5568 • WWW.DHH.LA.GOV
"An Equal Opportunity Employer"

Appx 032



**Bobby Jindal**
GOVERNOR

**Kathy H. Kliebert**
SECRETARY

### State of Louisiana
Department of Health and Hospitals
Office of the Secretary

September 15, 2015

Planned Parenthood
ATTN: Melaney Linton
3955 Government Street, Suite 2
Baton Rouge, Louisiana 70806

**Certified Mail, Return Receipt Requested (7012 2210 0001 6260 0097)**

Re:    Termination / Revocation of Louisiana Medicaid Provider Agreement
       Provider Number 133689

Dear Mrs. Linton:

Based on the initial findings of Louisiana's investigation into Planned Parenthood Gulf Coast (PPGC), you are hereby notified that the Department of Health and Hospitals (DHH) is hereby terminating / revoking the PPGC provider agreement referenced above. This action is being taken pursuant to La. R.S. 46:437.11 and 46:437.14. This action will take effect following final determination, judgment, completion, withdrawal from, or termination of all administrative and/or legal proceedings in this matter. Such proceedings include, but are not limited to, informal hearings, administrative appeals, appeals for judicial review, appellate judgments, and/or denials of writ applications.

Specifically, it is clear that PPGC entered into a Federal False Claims Act settlement signed on July 25, 2013, by Melaney A. Linton, President and CEO of PPGC agreeing to pay $4,300,000 to the United States who "contend[ed] that PPGC submitted false claims." Settlement Agreement, *Reynolds v. Planned Parenthood Gulf Coast*, No. 9:09-cv-124 (E.D. TX, Lufkin Div.)(July 25, 2013). In accordance with the Louisiana Administrative Code, Title 50, this is a violation. Further, under that same administrative code, PPGC had an affirmative duty to inform BHSF in writing of this violation. Since DHH, through BHSF, was not informed within ten (10) working days of when the provider knew or should have known of the violation, this constitutes a separate violation. Also under consideration in our departmental proceedings are provider audits and federal false claims cases against Planned Parenthood of America (PPFA) affiliates. Included among these are pending federal false claims cases against PPGC, one in which the presiding judge found that the information already provided "allows the court to draw the reasonable inference that Planned Parenthood knowingly filed false claims." Memorandum Opinion and Order at 17, *Carroll v. Planned Parenthood Gulf Coast*, 4:12-cv-03505 (S.D. TX, Houston Div.) (May 14, 2014). Providers and providers-in-fact are required to ensure that all their agents and affiliates are in compliance with all federal and state laws as well as rules, policies and procedures of the Medicaid program. PPGC and its parent organization PPFA has failed to do so and has failed to notify DHH of violations and misconduct by affiliates and providers-in-fact. These are also violations of La. Admin. Code, Title 50.

15-309873.00

Bienville Building • 628 N. 4th Street • P.O. Box 629 • Baton Rouge, Louisiana 70821-0629
Phone #: 225/342-9509 • Fax #: 225/342-5568 • WWW.DHH.LA.GOV
"An Equal Opportunity Employer"

**Appx 033**

Further, in regard to the Center for Medical Progress (CMP) videos, DHH reviewed responses received from PPGC via letters dated July 24, 2015, and August 14, 2015, from Melaney Linton in response to DHH letters dated July 15, 2015, and August 4, 2015. After said review, DHH believes that PPGC misrepresented its actions therein and had contradictions within the body of the letter and with the statements and admissions made in the CMP videos, including but not limited to the video released on August 4, 2015 and taped in April of this year, containing conversations with PPGC senior management, including the PPGC director of research and PPCFC facility director.

According to La. R.S. 46:437.11(D)(2), the Secretary may terminate a provider agreement immediately and without written notice if a health care provider is the subject of a sanction or of a criminal, civil, or departmental proceeding. The Department determines that PPGC currently fits within this statute due to the investigations of PPGC by both DHH and the Louisiana Office of Inspector General. DHH expressly reserves the right to amend this notice and to terminate your provider agreement immediately and without written notice based on the further findings of the pending investigations by any department of Louisiana, any other State or state agency, or the pending investigations in the congressional committees. DHH has elected to provide PPGC with full due process rights as mentioned above and will not pursue immediate termination pursuant to this notice.

According to 46:437.14(A)(1), DHH may deny or revoke enrollment in the Medicaid program in cases of misrepresentation. As alleged above, DHH believes PPGC's responses to inquiries, when compared to clear representations in various videos, rises to the level of misrepresentation. Further, according to La. R.S. 46:437.14(A)(10) and (12), DHH may move to revoke enrollment if a provider is found in violation of licensing or certification conditions or professional standards relating to the licensure or certification of health care providers or the required quality of goods, services, or supplies provided. Also, a provider agreement can be revoked for failure to meet any condition of enrollment. As a Medicaid provider, PPGC is charged with maintaining compliance with all state statutes, rules and regulations, including the Louisiana Administrative Code mentioned above. PPGC's actions mentioned above are clear violations of applicable administrative code provisions and are clear violations of the statutes mentioned. Based on the conduct described, the above provider number is hereby being terminated / revoked.

You are entitled to an administrative review of this action and it is suspensive if you avail yourself of same. Initially, you should request an Informal Hearing at which you are entitled to both present information in writing or orally, present documents, and to further inquire as to the reasons for our determination. You must make your request for an Informal Hearing in writing and within fifteen (15) calendar days (including Saturdays and Sundays) of receipt of this notice. Your written request should be sent to:

Louisiana DHH, Office of Secretary<br>
P.O. Box 3836<br>
Baton Rouge, Louisiana 70821

You may be represented by an attorney or authorized representative at the Informal Hearing. Your attorney or authorized representative must file a written notice of representation identifying himself by name, address, and telephone number at the address given above.

Following the Informal Hearing you will receive a written Notice of the Results of the Informal Hearing from which you are entitled to seek an appeal before the Division of Administrative Law. This hearing will also be suspensive in nature. Your request for Administrative Appeal must be in writing and set out the reasons for which you are seeking an appeal and the basis upon which you disagree with the results of the Informal Hearing. All requests for an Administrative Appeal must be received within thirty (30) calendar days (including Saturdays and Sundays) of the receipt of this notice. Request for Administrative Appeal must be sent to the address given below.

Division of Administrative Law – HH Section
P.O. Box 4189
Baton Rouge, Louisiana 70821-4189
Phone (225) 342-0443
Fax (225) 219-9823

You may be represented by an attorney or authorized representative at the Administrative Appeal. Your attorney or authorized representative must file a written notice of representation identifying himself by name, address, and telephone number at the address above.

You may choose to forego the Informal Hearing and instead request an Administrative Appeal of this action. If you choose this alternative, please follow the procedure described above for scheduling an Administrative Appeal.

If you do not request an Informal Hearing or an Administrative Appeal, your termination will become effective thirty (30) days (including Saturdays and Sundays) from the date of your receipt of this letter.

If you have any questions regarding this correspondence, you may contact Stephen R. Russo, Executive Counsel, at (225) 342-1115.

Sincerely,

Kathy Kliebert, Secretary
Louisiana Department of Health and Hospitals

Cc: Planned Parenthood Gulf Coast

Bienville Building • 628 N. 4th Street • P.O. Box 629 • Baton Rouge, Louisiana 70821-0629
Phone #: 225/342-9509 • Fax #: 225/342-5568 • WWW.DHH.LA.GOV
"An Equal Opportunity Employer"

Appx 035



**Bobby Jindal**
GOVERNOR

**Kathy H. Kliebert**
SECRETARY

**State of Louisiana**
Department of Health and Hospitals
Office of the Secretary

September 15, 2015

Planned Parenthood
ATTN:Melaney Linton
4600 Gulf Hwy.
Houston, TX 77023

**Certified Mail, Return Receipt Requested (7012 2210 0001 6260 0073)**

Re:     Termination / Revocation of Louisiana Medicaid Provider Agreement
         Provider Number 45802

Dear Mrs. Linton:

Based on the initial findings of Louisiana's investigation into Planned Parenthood Gulf Coast (PPGC), you are hereby notified that the Department of Health and Hospitals (DHH) is hereby terminating / revoking the PPGC provider agreement referenced above. This action is being taken pursuant to La. R.S. 46:437.11 and 46:437.14. This action will take effect following final determination, judgment, completion, withdrawal from, or termination of all administrative and/or legal proceedings in this matter. Such proceedings include, but are not limited to, informal hearings, administrative appeals, appeals for judicial review, appellate judgments, and/or denials of writ applications.

Specifically, it is clear that PPGC entered into a Federal False Claims Act settlement signed on July 25, 2013, by Melaney A. Linton, President and CEO of PPGC agreeing to pay $4,300,000 to the United States who "contend[ed] that PPGC submitted false claims." Settlement Agreement, *Reynolds v. Planned Parenthood Gulf Coast*, No. 9:09-cv-124 (E.D. TX, Lufkin Div.)(July 25, 2013). In accordance with the Louisiana Administrative Code, Title 50, this is a violation. Further, under that same administrative code, PPGC had an affirmative duty to inform BHSF in writing of this violation. Since DHH, through BHSF, was not informed within ten (10) working days of when the provider knew or should have known of the violation, this constitutes a separate violation. Also under consideration in our departmental proceedings are provider audits and federal false claims cases against Planned Parenthood of America (PPFA) affiliates. Included among these are pending federal false claims cases against PPGC, one in which the presiding judge found that the information already provided "allows the court to draw the reasonable inference that Planned Parenthood knowingly filed false claims." Memorandum Opinion and Order at 17, *Carroll v. Planned Parenthood Gulf Coast*, 4:12-cv-03505 (S.D. TX, Houston Div.) (May 14, 2014). Providers and providers-in-fact are required to ensure that all their agents and affiliates are in compliance with all federal and state laws as well as rules, policies and procedures of the Medicaid program. PPGC and its parent organization PPFA has failed to do so and has failed to notify DHH of violations and misconduct by affiliates and providers-in-fact. These are also violations of La. Admin. Code, Title 50.

**Appx 036**

Further, in regard to the Center for Medical Progress (CMP) videos, DHH reviewed responses received from PPGC via letters dated July 24, 2015, and August 14, 2015, from Melaney Linton in response to DHH letters dated July 15, 2015, and August 4, 2015. After said review, DHH believes that PPGC misrepresented its actions therein and had contradictions within the body of the letter and with the statements and admissions made in the CMP videos, including but not limited to the video released on August 4, 2015 and taped in April of this year, containing conversations with PPGC senior management, including the PPGC director of research and PPCFC facility director.

According to La. R.S. 46:437.11(D)(2), the Secretary may terminate a provider agreement immediately and without written notice if a health care provider is the subject of a sanction or of a criminal, civil, or departmental proceeding. The Department determines that PPGC currently fits within this statute due to the investigations of PPGC by both DHH and the Louisiana Office of Inspector General. DHH expressly reserves the right to amend this notice and to terminate your provider agreement immediately and without written notice based on the further findings of the pending investigations by any department of Louisiana, any other State or state agency, or the pending investigations in the congressional committees. DHH has elected to provide PPGC with full due process rights as mentioned above and will not pursue immediate termination pursuant to this notice.

According to 46:437.14(A)(1), DHH may deny or revoke enrollment in the Medicaid program in cases of misrepresentation. As alleged above, DHH believes PPGC's responses to inquiries, when compared to clear representations in various videos, rises to the level of misrepresentation. Further, according to La. R.S. 46:437.14(A)(10) and (12), DHH may move to revoke enrollment if a provider is found in violation of licensing or certification conditions or professional standards relating to the licensure or certification of health care providers or the required quality of goods, services, or supplies provided. Also, a provider agreement can be revoked for failure to meet any condition of enrollment. As a Medicaid provider, PPGC is charged with maintaining compliance with all state statutes, rules and regulations, including the Louisiana Administrative Code mentioned above. PPGC's actions mentioned above are clear violations of applicable administrative code provisions and are clear violations of the statutes mentioned. Based on the conduct described, the above provider number is hereby being terminated / revoked.

You are entitled to an administrative review of this action and it is suspensive if you avail yourself of same. Initially, you should request an Informal Hearing at which you are entitled to both present information in writing or orally, present documents, and to further inquire as to the reasons for our determination. You must make your request for an Informal Hearing in writing and within fifteen (15) calendar days (including Saturdays and Sundays) of receipt of this notice. Your written request should be sent to:

Louisiana DHH, Office of Secretary
P.O. Box 3836
Baton Rouge, Louisiana 70821

You may be represented by an attorney or authorized representative at the Informal Hearing. Your attorney or authorized representative must file a written notice of representation identifying himself by name, address, and telephone number at the address given above.

Following the Informal Hearing you will receive a written Notice of the Results of the Informal Hearing from which you are entitled to seek an appeal before the Division of Administrative Law. This hearing will also be suspensive in nature. Your request for Administrative Appeal must be in writing and set out the reasons for which you are seeking an appeal and the basis upon which you disagree with the results of the Informal Hearing. All requests for an Administrative Appeal must be received within thirty (30) calendar days (including Saturdays and Sundays) of the receipt of this notice. Request for Administrative Appeal must be sent to the address given below.

Division of Administrative Law – HH Section
P.O. Box 4189
Baton Rouge, Louisiana 70821-4189
Phone (225) 342-0443
Fax (225) 219-9823

You may be represented by an attorney or authorized representative at the Administrative Appeal. Your attorney or authorized representative must file a written notice of representation identifying himself by name, address, and telephone number at the address above.

You may choose to forego the Informal Hearing and instead request an Administrative Appeal of this action. If you choose this alternative, please follow the procedure described above for scheduling an Administrative Appeal.

If you do not request an Informal Hearing or an Administrative Appeal, your termination will become effective thirty (30) days (including Saturdays and Sundays) from the date of your receipt of this letter.

If you have any questions regarding this correspondence, you may contact Stephen R. Russo, Executive Counsel, at (225) 342-1115.

Sincerely,

Kathy Kliebert, Secretary
Louisiana Department of Health and Hospitals

Cc: Planned Parenthood Gulf Coast

15-30087.365

Bienville Building • 628 N. 4th Street • P.O. Box 629 • Baton Rouge, Louisiana 70821-0629
Phone #: 225/342-9509 • Fax #: 225/342-5568 • WWW.DHH.LA.GOV
"An Equal Opportunity Employer"

# Exhibit C

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard
Baltimore, Maryland 21244-1850



---

August 11, 2016

Ms. Jen Steele, Medicaid Director
State of Louisiana
Department of Health and Hospitals
628 N. 4th Street
PO Box 91030
Baton Rouge, LA  70821-9030

Dear Director Steele:

This letter is in response to recent actions taken by the State of Louisiana to terminate its Medicaid provider agreements with Planned Parenthood Gulf Coast (PPGC).  As previously discussed with the state on August 4, 2016, the Centers for Medicare & Medicaid Services (CMS) would like to remind the state of its obligation to remain in compliance with the "free choice of provider" requirements specified in section 1902(a)(23) of the Social Security Act (the Act).  In addition, the state is obligated to ensure beneficiary access to covered services under section 1902(a)(30)(A) of the Act.   As highlighted below, CMS seeks a response from the state detailing its compliance with those requirements.

Under federal law, at section 1902(a)(23) of the Act, a Medicaid beneficiary may obtain medical services "from any institution, agency, community pharmacy, or person, qualified to perform the service or services required . . . who undertakes to provide him such services."  This provision is often referred to as the "any willing provider" or "free choice of provider" provision.  While states maintain the authority to establish reasonable standards for provider qualifications (in accordance with 42 C.F.R. § 431.51(c)(2)), any willing provider that is qualified to provide covered services according to the reasonable standards established by the state must be allowed to provide such services to Medicaid beneficiaries.  For further discussion of the "Free Choice of Provider Provisions," see State Medicaid Director Letter #16-005, published on April 19, 2016.

In addition, CMS is concerned about the effect the termination of the provider agreement with PPGC would have on Louisiana Medicaid beneficiaries' access to women's health services within the state.  Section 1902(a)(30)(A) of the Act requires that states have methods and procedures to ensure that there are sufficient providers so that care and services are available to Medicaid beneficiaries "at least to the extent that such care and services are available to the general population in the area."  It is not clear that this access requirement would be met for beneficiaries in several areas in Louisiana without the participation of PPGC, absent other changes in Louisiana's program.

Although states have authority to terminate providers from participating in Medicaid, this authority is limited to circumstances implicating the fitness of the provider to perform covered medical services or appropriately bill for them.  States must terminate those providers that have

Page 2 – Ms. Jen Steele, Medicaid Director

committed certain types of fraud or other criminal acts related to involvement with the Medicare, Medicaid or the Children's Health Insurance Program (CHIP) programs.  States must also terminate providers subject to federal disbarment or exclusion determinations.  As explained in the April 2016 guidance, states must have a valid reason for terminating a provider, related to the provider's ability to render covered services or to properly bill for those services – reasons, for instance, that bear on the individual's or entity's professional competence, professional performance, or financial integrity.

We are unaware of any basis for Louisiana to terminate PPGC's provider agreements, which would be consistent with these limited reasons for excluding providers from Medicaid participation.   Therefore, we ask that you provide information to CMS documenting the state's basis for termination, including documentation and supporting evidence that answers the following questions:

1. Why does the state believe that there were violations of La R.S. 46:437.11 and 46:437.14?

2. Has the state terminated other types of providers for similar violations of these provisions?

3. How do the state provisions located at La R.S. 46:437.11 and 46:437.14 relate to the fitness of the providers to furnish covered services or its ability to appropriately bill for them in accordance with the approved state plan?

4. Why does the state believe that there were violations of the State's Administrative Code Title 50?

5. How does the State's Administrative Code Title 50 relate to the fitness of the providers to furnish covered services or its ability to appropriately bill for them in accordance with the approved state plan?

6. Does the state have evidence that the provider has committed fraud or criminal action, was in material non-compliance with relevant requirements, or had material issues concerning its fitness to perform covered services or appropriately bill for them?  If so, please provide that evidence.

7. How will the state's actions affect access to women's health services in the state, including the state's ability to comply with the requirements set forth in section 1902(a)(30)(A)?

To the extent that Louisiana's actions conflict with federal law, CMS may take further actions to protect Medicaid beneficiaries using its authority under section 1904 of the Act, as implemented at 42 Code of Federal Regulations (CFR) 430.35 and 42 CFR Part 430, Subpart D.  Please submit a response to this letter explaining the reasons for the termination of PPGC, and the state's analysis of access issues, by September 6, 2016.  Absent a response by this date indicating how Louisiana is in compliance with section 1902(a)(23), CMS may initiate a compliance action that could result in the withholding of federal funds.

Page 2 – Ms. Jen Steele, Medicaid Director


Should the state have any questions or wish to discuss the federal requirements applicable to this matter, please feel free to contact me at (410)786-3870.


Sincerely,


Vikki Wachino
Director

# Exhibit D

**Williams, Reynaldo (CMS/OSORA)**

| | |
|---|---|
| **From:** | Kimberly Sullivan <Kimberly.Sullivan@LA.GOV> |
| **Sent:** | Tuesday, September 27, 2016 12:19 PM |
| **To:** | Schubel, Jessica L. (CMS/CMCS); Kress, Marielle J. (CMS/CMCS); Wachino, Victoria (CMS/CMCS) |
| **Cc:** | Lee, Gia (OS/OGC); Kimberly Humbles; Stephen Russo; Steele, Jen |
| **Subject:** | RE: CMS letter dated 8/11/16 to Louisiana |
| **Attachments:** | PPGC ltrs 9.15.15.pdf |

Ms. Wachino,

The Louisiana Department of Health (LDH) is in receipt of your letter of August 11, 2016 in regards to the actions taken on the Medicaid provider agreements with Planned Parenthood Gulf Coast (PPGC). We appreciate the extra time given to LDH to respond to the letter in light of the flooding event.

First, LDH takes its responsibility to administer the Medicaid Program in accordance with all federal and state laws very seriously. Cooperation by a Medicaid provider during an investigation into potential wrongdoing is a cornerstone to fulfilling this obligation. Second, LDH is well aware of the right of a Medicaid recipient to choose a Medicaid provider from the pool of eligible, qualified providers. However, a Medicaid provider that is disqualified from the program must exhaust the required administrative review process before seeking judicial review. Louisiana's Administrative Code protects the Medicaid recipients during the review by making the process suspensive, effectively staying the administrative action until the process concludes. The ruling by the Court to allow Medicaid recipients to challenge a disqualification decision in federal court during the administrative process, or after a provider abandons that process, will have a grave impact on Medicaid administration. Based on this recent Court decision, it is only a matter of time before disqualified Medicaid providers attempt to recruit Medicaid recipients to file lawsuits that a Medicaid provider may not be allowed to file.

With regard to the action referenced in the August 11, 2016 letter, LDH had a good faith basis to investigate PPGC following the revelations, in which you are aware. Any reasonable person would agree that the information in the video was concerning and warranted further investigation. Based in part on the position of CMS regarding the at-will termination, LDH voluntarily withdrew that action and proceeded with a termination for-cause. LDH fully anticipated that PPGC would proceed with the administrative review process, during which its Medicaid recipients were assured access. Regrettably, PPGC instead chose to abandon the administrative appeal process, risking the care to all of its Medicaid recipients and brought a lawsuit by three Medicaid recipients recruited by PPGC.

With regard to your specific questions, we offer the following:

1. Why does the state believe that there were violations of La R.S. 46:437.11 and 46:437.14?

   *Please see attached letters sent to PPGC on September 15, 2015.*

2. Has the state terminated other types of providers for similar violations of these provisions?

   *Yes.*

1

**Appx 044**

3.  How do the state provisions located at La R.S. 46:437.11 and 46:437.14 relate to the fitness of the providers to furnish covered services or its ability to appropriately bill for them in accordance with the approved state plan?

*Please see attached letters sent to PPGC sent on September 15, 2015. The provisions of La R.S. 46:437.11 and 46:437.14 are an important part of the authority structure that enables LDH to administer the state plan in a fiscally, professionally, and morally responsible manner that protects Medicaid recipients and public resources.*

4.  Why does the state believe that there were violations of the State's Administrative Code Title 50?

*Please see attached letters sent to PPGC on September 15, 2015.*

5.  How does the State's Administrative Code Title 50 relate to the fitness of the providers to furnish covered services or its ability to appropriately bill for them in accordance with the approved state plan?

*Please see attached letters sent to PPGC on September 15, 2015.*

6.  Does the state have evidence that the provider has committed fraud or criminal action, was in material non-compliance with relevant requirements, or had material issues concerning its fitness to perform covered services or appropriately bill for them?  If so, please provide that evidence.

*Please see attached letters sent to PPGC on September 15, 2015.*

7.  How will the state's actions affect access to women's health services in the state's ability to comply with the requirements set forth in section 1902(a)(30)(A)?

*The action taken by the state regarding PPGC did not affect Medicaid recipient access to health care because the action was not final and was subject to a fully suspensive administrative review.  PPGC inexplicably abandoned that process and, instead, obtained a preliminary injunction.  The result to the Medicaid recipient is the same; access to women's health services has not been disturbed.*

LDH believes this adequately addresses the issues raised in the letter of August 11, 2016.  As always, LDH's primary concern is the care and health of the Medicaid recipients it serves through the Louisiana Medicaid program.  None of the actions taken against PPGC affected the health or access to health care services of any Louisiana Medicaid recipients.

Sincerely,

*Kimberly Sullivan*
*LDH Deputy General Counsel*
*628 N. 4th Street*
*P.O. Box 3836*
*Baton Rouge, LA  70821*
*(225) 342-1128*
*Fax: (225) 342-2232*
*kimberly.sullivan@la.gov*

**Appx 045**



---

**From:** Schubel, Jessica L. (CMS/CMCS) [mailto:Jessica.Schubel@cms.hhs.gov]
**Sent:** Sunday, September 18, 2016 6:35 PM
**To:** Kimberly Sullivan; Kress, Marielle J. (CMS/CMCS); Wachino, Victoria (CMS/CMCS)
**Cc:** Lee, Gia (OS/OGC); Kimberly Humbles; Stephen Russo
**Subject:** RE: CMS letter dated 8/11/16 to Louisiana

Ms. Sullivan,

Apologies for the delayed response, but we will provide a one-week extension.  Your response is due Tuesday, September 27th.

Thanks,
Jessica

Jessica Schubel
Senior Policy Advisor
Office of the Director, Center for Medicaid and CHIP Services

---

**From:** Kimberly Sullivan [mailto:Kimberly.Sullivan@LA.GOV]
**Sent:** Thursday, September 15, 2016 10:30 AM
**To:** Kress, Marielle J. (CMS/CMCS) <Marielle.Kress@cms.hhs.gov>; Wachino, Victoria (CMS/CMCS) <Victoria.Wachino1@cms.hhs.gov>
**Cc:** Lee, Gia (OS/OGC) <Gia.Lee@hhs.gov>; Schubel, Jessica L. (CMS/CMCS) <Jessica.Schubel@cms.hhs.gov>; Kimberly Humbles <Kimberly.Humbles@LA.GOV>; Stephen Russo <Stephen.Russo@LA.GOV>
**Subject:** RE: CMS letter dated 8/11/16 to Louisiana

Ms. Kress and Ms. Wachino,

In light of the 5th Circuit ruling in the Planned Parenthood case yesterday, we are asking for a further extension to respond to this letter so the State can re-evaluate the actions taken in this case.

Sincerely,

*Kimberly Sullivan*
*LDH Deputy General Counsel*
*628 N. 4th Street*
*P.O. Box 3836*
*Baton Rouge, LA  70821*
*(225) 342-1128*
*Fax: (225) 342-2232*
*kimberly.sullivan@la.gov*



**Appx 046**

**From:** Kress, Marielle J. (CMS/CMCS) [mailto:Marielle.Kress@cms.hhs.gov]
**Sent:** Friday, September 02, 2016 2:59 PM
**To:** Kimberly Sullivan; Kimberly Humbles; Stephen Russo; Jen Steele
**Cc:** Wachino, Victoria (CMS/CMCS); Lee, Gia (OS/OGC); Schubel, Jessica L. (CMS/CMCS)
**Subject:** RE: CMS letter dated 8/11/16 to Louisiana

Ms. Sullivan,

Vikki asked me to respond to you on her behalf. We are granting you the two week extension you requested. Your response is due on Tuesday, September 20th.

Thanks,
Marielle


**Marielle Kress**
Senior Advisor
Office of the Director, Center for Medicaid and CHIP Services
224-234-7913 (blackberry) | marielle.kress@cms.hhs.gov


**From:** Kimberly Sullivan [mailto:Kimberly.Sullivan@LA.GOV]
**Sent:** Friday, September 2, 2016 1:18 PM
**To:** Wachino, Victoria (CMS/CMCS) <Victoria.Wachino1@cms.hhs.gov>
**Cc:** Kimberly Humbles <Kimberly.Humbles@LA.GOV>; Stephen Russo <Stephen.Russo@LA.GOV>; Steele, Jen <Jen.Steele@LA.GOV>
**Subject:** CMS letter dated 8/11/16 to Louisiana

Ms. Wachino,

The Department is in receipt of your letter dated August 11, 2016 in regards to the State's decision to terminate its Medicaid provider agreements with Planned Parenthood Gulf Coast. Currently, our response is due on September 6, 2016. Due to recent flooding events and the fact that this issue is currently in litigation, we would like to request a two week extension in which to respond.

Sincerely,

*Kimberly Sullivan*
*LDH Deputy General Counsel*
*628 N. 4th Street*
*P.O. Box 3836*
*Baton Rouge, LA 70821*
*(225) 342-1128*
*Fax: (225) 342-2232*
*kimberly.sullivan@la.gov*



4

**Appx 047**

# EXHIBIT 2

**St. John, Joseph**

| | |
|---|---|
| **From:** | Lollar, Tirzah <Tirzah.Lollar@arnoldporter.com> |
| **Sent:** | Tuesday, July 12, 2022 5:50 PM |
| **To:** | St. John, Joseph |
| **Cc:** | Theriot, Les; Born, Jayce; Hudson, Matt; Murrill, Elizabeth |
| **Subject:** | RE: U.S. ex rel Doe v. Planned Parenthood |

*CAUTION:  This email originated outside of Louisiana Department of Justice.  Do not click links or open attachments unless you recognize the sender and know the content is safe.*

Scott:

Yes, the subpoena is directed to Attorney Jeff Landry, in his official capacity to accept service on behalf of the State of Louisiana.  The Louisiana Code of Civil Procedure authorizes service of a subpoena "in the same manner and with the same effect as a service of and return on a citation."  La. C.C.P. Art. 1355(A).  Louisiana law authorizes service of citation "[i]n all suits filed against the state of Louisiana or a state agency . . . by citation and service on the attorney general of Louisiana, or on any employee in his office above the age of sixteen years."  La R.S. 13:5107(A)(1).

Thanks,
Tirzah

_____

Tirzah Lollar
Partner

Arnold & Porter
601 Massachusetts Ave., NW
Washington | District of Columbia 20001-3743
T: +1 202.942.6199
Tirzah.Lollar@arnoldporter.com | www.arnoldporter.com

**From:** St. John, Joseph <StJohnJ@ag.louisiana.gov>
**Sent:** Tuesday, July 12, 2022 4:52 PM
**To:** Lollar, Tirzah <Tirzah.Lollar@arnoldporter.com>
**Cc:** Theriot, Les <TheriotL@ag.louisiana.gov>; Born, Jayce <Jayce.Born@arnoldporter.com>; Hudson, Matt <Matt.Hudson@arnoldporter.com>; Murrill, Elizabeth <MurrillE@ag.louisiana.gov>
**Subject:** RE: U.S. ex rel Doe v. Planned Parenthood

External E-mail

Tirzah:

We accept service of the subpoena to Attorney General Jeff Landry, to the extent it is directed to AG Landry in his official capacity only.

Best regards,
Scott

**From:** Lollar, Tirzah <Tirzah.Lollar@arnoldporter.com>
**Sent:** Tuesday, July 12, 2022 3:40 PM
**To:** St. John, Joseph <StJohnJ@ag.louisiana.gov>

**Appx 049**

**Cc:** Theriot, Les <TheriotL@ag.louisiana.gov>; Born, Jayce <Jayce.Born@arnoldporter.com>; Hudson, Matt <Matt.Hudson@arnoldporter.com>
**Subject:** RE: U.S. ex rel Doe v. Planned Parenthood

***CAUTION:*** *This email originated outside of Louisiana Department of Justice.  Do not click links or open attachments unless you recognize the sender and know the content is safe.*

Scott, I received a bounce back because of size so am just attaching the cover letter and subpoena.  We can send you attachments B and C separately, but they are the same attachments B and C to the June 20 subpoena.  Please confirm that you are accepting service of the attached subpoena by email.

Thanks,
Tirzah

_____

Tirzah Lollar
Partner

Arnold & Porter
601 Massachusetts Ave., NW
Washington | District of Columbia 20001-3743
T: +1 202.942.6199
Tirzah.Lollar@arnoldporter.com | www.arnoldporter.com

**From:** Lollar, Tirzah <Tirzah.Lollar@arnoldporter.com>
**Sent:** Tuesday, July 12, 2022 4:00 PM
**To:** St. John, Joseph <StJohnJ@ag.louisiana.gov>
**Cc:** Theriot, Les <TheriotL@ag.louisiana.gov>; Born, Jayce <Jayce.Born@arnoldporter.com>; Hudson, Matt <Matt.Hudson@arnoldporter.com>
**Subject:** RE: U.S. ex rel Doe v. Planned Parenthood

Scott:

Respectfully, Rule 45's 14-day window to object serves the precise purpose of avoiding scenarios of this type, allowing a receiving party to object and put the serving party on notice of any deficiencies sooner rather than later.  We had no reason to believe that your office would object to serving a production at our office in DC, as many times parties agree to strictly electronic service of production, just as we had no reason to suspect that your office would take the position that the subpoena was directed to the wrong person given that it accepted service on June 20.  The cases you cited in your email last night do not address the situation where a receiving party fails to raise objections within 14 days of service of a subpoena.  To the contrary, "[c]ourts within the Fifth Circuit have consistently held that failure to serve timely objections to a Rule 45 subpoena generally results in a waiver of all ground for objection."  *La. Generating, L.L.C. v. Illinois Union Ins. Co.*, No. 10–516–JJB–SCR, 2011 WL 6259052, at *2 (M.D.La. Dec. 14, 2011).  And, regarding the inadvertent reference to former Attorney General Caldwell, misnomer does not render a subpoena fatally defective.  *See SEC v. Lines Overseas Management, Ltd.*, 04-302 RWR/AK, 2005 WL 3627141, at *10 (D.D.C. Jan. 7, 2005) ("[M]inor errors in subpoenas are insufficient to invalidate the subpoena as to the target entity, 'if it names them in such terms that every intelligent person understands who is meant . . . the misnomer of a corporation in a notice, summons . . . or other step in a judicial proceeding is immaterial if it appears that [the corporation] could not have been, or was not, misled.") (citations omitted) (alteration in original); *see also United States v. A.H. Fischer Lumber Co.*, 162 F.2d 872, 873 (4th Cir. 1947) ("As a general rule the misnomer of a corporation in a notice, summons, notice by publication, garnishment citation, writ of certiorari, or other step in a judicial proceeding is immaterial if it appears that it could not have been, or was not, misled.").  Louisiana clearly understood that the subpoena was directed to Louisiana since you contacted me yesterday, on the return date of the June 20 subpoena, about the subpoena.

**Appx 050**

In any event, given Louisiana's position and the abbreviated discovery schedule, we are willing to avoid litigation that would cause further delay and issue a new subpoena with a July 26 return date based on your representation yesterday that you are authorized to accept service of a new subpoena by email.  Once you confirm again that you accept service of the new subpoena by email, we will withdraw the June 20 subpoena.


Thanks,
Tirzah


_____
Tirzah Lollar
Partner

Arnold & Porter
601 Massachusetts Ave., NW
Washington | District of Columbia 20001-3743
T: +1 202.942.6199
Tirzah.Lollar@arnoldporter.com | www.arnoldporter.com

**From:** St. John, Joseph <StJohnJ@ag.louisiana.gov>
**Sent:** Monday, July 11, 2022 8:29 PM
**To:** Lollar, Tirzah <Tirzah.Lollar@arnoldporter.com>
**Cc:** Theriot, Les <TheriotL@ag.louisiana.gov>; Born, Jayce <Jayce.Born@arnoldporter.com>
**Subject:** RE: U.S. ex rel Doe v. Planned Parenthood


External E-mail


Tirzah:

I'm disappointed with your email.

As I indicated during our telephone conversation, our office is willing to comply with a facially valid subpoena. But courts have repeatedly rejected subpoenas calling for compliance more than 100 miles from where the recipient resides, etc., as "invalid" and "unenforceable." *See, e.g.*, *Cone v. Vortens, Inc.*, 2018 WL 295417 (E.D. Tex. Jan. 4, 2018) ("[A] subpoena requiring a nonparty to produce documents at a place more than 100 miles away is invalid."); *HCAPS Conroe Affiliation Inc. v. Angelica Textile Servs. Inc.*, 2015 WL 3867923, at *4 (N.D. Tex. June 22, 2015) ("[T]he subpoena . . . to produce documents . . . is invalid . . . ."). That your subpoena may be in connection with a False Claims Act claim does not change the analysis. *Miller v. Holzmann*, 471 F. Supp. 2d 119, 121 (D.D.C. 2007) (denying motion to compel: "There is no provision within the [False Claims] Act that could be read to vitiate the limitations imposed by Rule 45," and "the limitation in Rule 45 unequivocally applies . . . to being required to produce documents at a distance of more than 100 miles from one's home.").

In any event, your subpoena is directed to "Attorney General James D. Caldwell." Mr. Caldwell is, of course, a natural person, which the letter accompanying your subpoena recognizes by addressing him "c/o Attorney General's Office." Mr. Caldwell has not served in the Louisiana Attorney General's office since early 2016. We do not represent Mr. Caldwell, and we cannot accept a subpoena on his behalf. Fed. R. Civ. P. 45(b)(1). The last information we have is that Mr. Caldwell is serving as an interim city attorney in Tallulah, Louisiana.

Again, we will comply with a valid subpoena. But your suggestion that our office waived objections by not responding to a subpoena that is directed to someone else and that facially violates Rule 45 is specious. If you need documents from the Louisiana Attorney General's office, we ask for a facially valid subpoena directed to our office. If you need documents from Mr. Caldwell, you should serve him directly.

Appx 051

Out of an abundance of caution and consistent with your duty under Rule 45(d)(1), we ask you to promptly withdraw your current subpoena or confirm that you will not seek to enforce it against our office, which is not identified as the recipient.

Best regards,
Scott

---

**From:** Lollar, Tirzah <Tirzah.Lollar@arnoldporter.com>
**Sent:** Monday, July 11, 2022 4:31 PM
**To:** St. John, Joseph <StJohnJ@ag.louisiana.gov>
**Cc:** Theriot, Les <TheriotL@ag.louisiana.gov>; Born, Jayce <Jayce.Born@arnoldporter.com>
**Subject:** RE: U.S. ex rel Doe v. Planned Parenthood

*CAUTION:  This email originated outside of Louisiana Department of Justice.  Do not click links or open attachments unless you recognize the sender and know the content is safe.*

Scott,

Thank you for the email memorializing our conversations.  We understand your office's position, but Rule 45 is clear that Louisiana was required to provide any written objections to the subpoena within 14 days from the time of service, by July 5, 2022.  Rule 45(d)(2)(B).  Because Louisiana did not do so, it has waived any such objections.  *See, e.g., Moore v. Chase, Inc.*, 2015 WL 4393031, at *5 (E.D. Cal. July 17, 2015).

Nonetheless, we are willing to extend your time to comply with the subpoena until July 19, 2022—an additional 14 days from the time that your objections were due.  We are willing to re-issue the subpoena with a new return address or to agree to accept service of the production electronically.  However, because the State of Louisiana has, under Rule 45, waived any objections to the existing subpoena, we will re-issue a subpoena with a modified return address only on the understanding that the State of Louisiana will not attempt to assert any other objections to the subpoena.

Please let us know.

Thanks,
Tirzah


_____

Tirzah Lollar
Partner

Arnold & Porter
601 Massachusetts Ave., NW
Washington | District of Columbia 20001-3743
T: +1 202.942.6199
Tirzah.Lollar@arnoldporter.com | www.arnoldporter.com

**From:** St. John, Joseph <StJohnJ@ag.louisiana.gov>
**Sent:** Monday, July 11, 2022 12:49 PM
**To:** Lollar, Tirzah <Tirzah.Lollar@arnoldporter.com>
**Cc:** Theriot, Les <TheriotL@ag.louisiana.gov>
**Subject:** RE: U.S. ex rel Doe v. Planned Parenthood

External E-mail

**Appx 052**

Tirzah:

Thanks for taking the time to chat.

As we discussed, the Louisiana Attorney General's office believes your subpoena is invalid because it calls for production of documents more than 100 miles from where the Louisiana Attorney General "resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A). I made clear that we are willing to accept a revised subpoena via email, but we do need a facially valid subpoena before we can produce documents. You explained that you have a September discovery deadline, and you stated you could not give 20 days to respond to a reissued subpoena. I agreed we could respond to a revised subpoena with a 14 day deadline, as is customary. You stated that you wanted to touch base with your team, but you agreed the Louisiana Attorney General's obligation to respond would be tolled until 24 hours after you get back to me.

We spoke again a few minutes later. You raised a nation-wide service of process issue under the False Claims Act. I responded that your subpoena is facially under Rule 45, which restricts the place of response.

Please let me know if my recounting is in error.

Best regards,
Scott

---

**From:** St. John, Joseph
**Sent:** Monday, July 11, 2022 10:27 AM
**To:** 'tirzah.lollar@arnoldporter.com' <tirzah.lollar@arnoldporter.com>
**Subject:** U.S. ex rel Doe v. Planned Parenthood

Ms. Lollar:

I am reviewing your subpoena on behalf of the Louisiana Attorney General. I would appreciate your calling me at your earliest convenience.

Best regards,
Scott



**Joseph Scott St. John**
Deputy Solicitor General
Office of Attorney General Jeff Landry
Tel: (225) 485-2458
stjohnj@ag.louisiana.gov
www.AGJeffLandry.com

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. To reply to our e-mail administrator directly, please send an e-mail to postmaster@ag.state.la.us.

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

Appx 053

For more information about Arnold & Porter, click here:
http://www.arnoldporter.com

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. To reply to our e-mail administrator directly, please send an e-mail to postmaster@ag.state.la.us.

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

For more information about Arnold & Porter, click here:
http://www.arnoldporter.com

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. To reply to our e-mail administrator directly, please send an e-mail to postmaster@ag.state.la.us.

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

For more information about Arnold & Porter, click here:
http://www.arnoldporter.com

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

**Appx 054**

# EXHIBIT 3

# Arnold & Porter

Tirzah Lollar
+1 202.942.6199 Direct
Tirzah.Lollar@arnoldporter.com

July 12, 2022

Attorney General Jeff Landry
Attorney General's Office
1885 N 3rd St.  .
Baton Rouge, LA 70802

Re:    Subpoenas to Produce Documents, U.S. ex rel. Doe v. Planned
Parenthood, No. 2:21-cv-00022-Z (N.D. Tex.)

To Whom It May Concern:

We represent the Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc. (collectively, "the Planned Parenthood Affiliate Defendants") in the above-captioned False Claims Act lawsuit.

In the above-captioned lawsuit, Relator alleges violations of the Louisiana Medical Assistance Programs Integrity Law and the federal False Claims Act arising from Planned Parenthood Gulf Coast, Inc.'s provision of services under Louisiana Medicaid. Accordingly, with the enclosed subpoena, we request that you search for and produce the listed categories of documents. The attached subpoena (Attachment A hereto) sets out the requests in detail, and they are described briefly below. In light of the abbreviated discovery schedule that the Court has ordered in the above-captioned lawsuit, our September 30, 2022 deadline for all fact discovery, We request these documents be provided within 14 days of the receipt of this letter. This return date is more than reasonable in light of the abbreviated discovery schedule that the Court has ordered in the above-captioned lawsuit, our September 30, 2022 deadline for all discovery, and the fact that Louisiana received the very same document requests reiterated here on June 20, 2022.

In the above captioned lawsuit, there are two operative complaints (Attachments B and C hereto): one filed by a private *qui tam* relator asserting claims under the federal False Claims Act as well as Texas and Louisiana state law, and one filed by the State of Texas

Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave, NW  |  Washington, DC 20001-3743  |  www.arnoldporter.com

Appx 056

# Arnold&Porter

Attorney General James D. Caldwell
July 12, 2022
Page 2

asserting claims under Texas's analogue to the False Claims Act.[1]  The relator's *qui tam* complaint alleges that the Planned Parenthood Defendants made false claims for payment under Medicaid and concealed or improperly avoided an obligation to repay money obtained under Medicaid.  Specifically, Relator alleges that certain Planned Parenthood affiliates in Texas and Louisiana submitted claims for payment despite their supposed awareness that they were not qualified Medicaid providers because of a single affiliate's alleged participation in fetal tissue studies.

Beginning in 2015, Texas and Louisiana sought to terminate these Planned Parenthood affiliates, based almost entirely upon videos from the Center for Medical Progress, a California headquartered anti-abortion organization created by David Daleiden. Planned Parenthood affiliates sued in federal courts in Texas and Louisiana to enjoin termination.  Both Texas and Louisiana were enjoined from terminating the Planned Parenthood affiliates by the U.S. District Court for the Western District of Texas and U.S. District Court for the Middle District of Louisiana, respectively.  In December 2020, the Fifth Circuit vacated the Texas injunction.

Federal and state court injunctions barred the Texas Medicaid program from terminating these Planned Parenthood affiliates from January 19, 2017 to March 12, 2021. The October 29, 2015 federal court order preventing the Louisiana Medicaid program from terminating these Planned Parenthood affiliates is still in effect, and PPGC continues to provide services under the Louisiana Medicaid program.  Relator nevertheless alleges that any payments received by these affiliates during the pendency of the injunctions are overpayments that must be refunded.[2]

DOJ declined to intervene in the case, and Relator is actively litigating the lawsuit on behalf and in the name of the United States, with the aim of recovering government funds.  While Texas intervened and is litigating its claims under the Texas analogue to the

---

[1] Relator filed his lawsuit anonymously as "Alex Doe."  We are not permitted to provide you with Relator's name, because the Court issued a protective order sealing Relator's identity and recently denied the Planned Parenthood Defendants' request to unseal that information [Dkt. 79].  We assume that you are aware of the Relator's identity .  If not, please let us know and we will determine if the Court would permit us to disclose Relator's identity to you to aid you in responding to this subpoena.

[2] In fact, Relator alleges that Planned Parenthood Defendants submitted false claims for Medicaid reimbursement from at least 2010. Rel. Compl. (Attachment B hereto) ¶ 3.

# EXHIBIT 3

# Arnold&Porter

Attorney General James D. Caldwell
July 12, 2022
Page 3

federal False Claims Act, Louisiana has not intervened, so Relator is pursuing his claims under the Louisiana analogue to the federal False Claims Act.

Finally, documents produced will be subject to confidentiality designations pursuant to a stipulated protective order to be entered in the lawsuit and/or a separate protective order entered at your office's request. Subject to the constraints imposed by the Court's relatively short discovery schedule and given that Louisiana has had these document requests since June 20, 2022, we encourage you to contact us as soon as possible should you have any questions regarding the requests.

Please contact me if you have any questions concerning the enclosed subpoena, attachments, or this letter.

Sincerely,

Tirzah S. Lollar

Enclosures:   Subpoena
              Relator's ("Doe") Complaint
              Texas Complaint

cc:           Joseph Scott St. John (stjohnj@ag.louisiana.gov)
              Craig Margolis (Craig.Margolis@arnoldporter.com)
              Christopher Odell (Christopher.Odell@arnoldporter.com)
              Christian Sheehan (Christian.Sheehan@arnoldporter.com)
              Ryan Patrick Brown (brown@blackburnbrownlaw.com)

# Attachment A

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Northern District of Texas

| | | |
|---|---|---|
| U.S. ex rel. ALEX DOE et al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   NO. 2:21-CV-00022-Z |
| Planned Parenthood Federation of America, Inc., et al. | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                          Attorney General Jeff Landry

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  Described in Attachment A

| Place: U.S. Legal Support<br>12016 Justice Avenue<br>Baton Rouge, LA 70816 | Date and Time:<br><br>07/26/2022 5:00 pm |
|---|---|

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      07/12/2022

| CLERK OF COURT | | |
|---|---|---|
| | OR | |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*

Planned Parenthood Gulf Coast, Inc.                                    , who issues or requests this subpoena, are:

Tirzah Lollar, 601 Massachusetts Ave. NW, Washington, DC 20001, 202-942-6199, tirzah.lollar@arnoldporter.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**Appx 061**

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c)  Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d)  Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e)  Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g)  Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**ATTACHMENT A TO SUBPOENA TO STATE OF LOUISIANA**

**DEFINITIONS AND TERMS**

1.  The terms "Louisiana," "you," and "your" refer to the government of the State of Louisiana; any agency, office, division, or department of the Louisiana Government, including but not limited to the Louisiana Department of Health, Louisiana Office of State Inspector General, and Louisiana Attorney General's Office; and any attorneys, agents, representatives (including any auditors or investigators hired by the Louisiana Government) acting or purporting to act on its behalf.

2.  The term "Texas" "refers to the government of the State of Texas; any agency, office, division, or department of the Texas Government, including but not limited to the Texas Health & Human Services Commission, Texas Office of the Inspector General, Texas Attorney General's Office, Texas Department of State Health Services, and the Texas Department of Public Safety; and any attorneys, agents, representatives (including any auditors or investigators hired by the Texas Government) acting or purporting to act on its behalf.

3.  The term "Relator" refers to Relator Alex Doe, his agents, legal representatives, or anyone purporting to act on the named Relator's behalf.

4.  The term "Planned Parenthood Defendants" refers to Defendants Planned Parenthood Gulf Coast, Inc. ("PPGC"), Planned Parenthood of Greater Texas, Inc. ("PPGT"), Planned Parenthood South Texas, Inc. ("PPST"), Planned Parenthood Cameron County, Inc. ("PP Cameron County"), Planned Parenthood San Antonio,

1

Inc. ("PP San Antonio") and Planned Parenthood Federation of America, Inc. ("PPFA").

5.    The term "Affiliate Defendants" refers to Defendants PPGC, PPGT, PPST, PP Cameron County, and PP San Antonio.

6.    The term "Relator's Complaint" refers to Relator's Complaint filed on February 5, 2021.

7.    The term "Texas's Complaint" refers to Texas's Complaint filed on January 6, 2022.

8.    The term "Center for Medical Progress" refers to the entity headquartered in Irvine, California, including all predecessors, subsidiaries, parents and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, and others acting on its behalf.

9.    The term "Center for Medical Progress videos" refers to videos related to any Planned Parenthood Defendant or other Planned Parenthood entity created by the Center for Medical Progress and/or currently or previously posted to the website of the Center for Medical Progress and/or Center for Medical Progress's YouTube Channel from 2013 to the present.

10.   The term "David Daleiden" refers to the founder and president of the Center for Medical Progress, including but not limited to any agents, representatives, employees, consultants, attorneys, or others acting on his behalf.

11.   The terms "Person" and "Persons" include without limitation, natural persons, corporations, associations, unincorporated associations, partnerships, and any other governmental or non-governmental entity.

2

12.     The term "Government" refers to the government of the United States of America; any agency, office, or military branch of the U.S. Government; and any attorneys, agents, representatives (including any auditors or investigators hired by the U.S. Government) acting or purporting to act on its behalf.

13.     The term "Medicaid" refers to the federal Centers for Medicare & Medicaid Services administered Medicaid program and any officers, officials, employees, agents, attorneys, or other representatives acting or purporting to act on its behalf, including any Managed Care Organization.

14.     The term "Texas Medicaid" refers to the State of Texas administered Medicaid program and any officers, officials, employees, agents, attorneys, or other representatives acting or purporting to act on its behalf, including any Managed Care Organization.

15.     The term "Louisiana Medicaid" refers to the State of Louisiana administered Medicaid program and any officers, officials, employees, agents, attorneys, or other representatives acting or purporting to act on its behalf, including any Managed Care Organization.

16.     The term "generally accepted medical standards" has the meaning used in the Final Notice of Termination of Enrollment dated December 20, 2016.  Relator's Compl. [Dkt. 2] Ex. C.

17.     The term "fetal tissue procurement" and has the meaning used in the Final Notice of Termination of Enrollment issued by the Office of Inspector General, Texas Health & Human Service Commission dated December 20, 2016.  Relator's Compl. [Dkt. 2] Ex. C (referring to Planned Parenthood's alleged "policy of agreeing to

3

procure fetal tissue, potentially for valuable consideration, even it means altering the timing or method of abortion" and Planned Parenthood's alleged "misrepresentation about [its] activity related to fetal tissue procurements").

18.    The term "Medicaid's free choice of provider requirement" refers to the requirement for a state plan to allow a beneficiary to obtain Medicaid services from any institution, agency, pharmacy, person, or organization, including family planning services, that is qualified to furnish services and willing to furnish them to that particular beneficiary. *See* 42 CFR § 431.51.

19.    The term "including" shall mean "including, but not limited to."

20.    The term "overpayment" has the meaning as used in Paragraphs 17 and 40 of the Texas Complaint.

21.    The term "Grace Period" refers to the thirty-day period granted by Texas Health and Human Services Commission to Planned Parenthood through February 3, 2021, referenced in Texas's Complaint.  Tex. Compl. ¶ 6.

22.    The term "the Media" refers to any news organization or mass media organization, including print, internet, television, radio, or other media.

23.    "Documents" as used herein shall be construed to the full extent of Fed. R. Civ. P. 34, and shall include every original and every non-identical copy of any original of all mechanically written, handwritten, typed or printed material, electronically stored data, microfilm, microfiche, sound recordings, films, photographs, videotapes, slides, and other physical objects or tangible things of every kind and description containing stored information, including but not limited to, transcripts, letters, correspondence, notes, memoranda, tapes, records, telegrams, electronic

4

mail, facsimiles, periodicals, pamphlets, brochures, circulars, advertisements, leaflets, reports, research studies, test data, working papers, drawings, maps, sketches, diagrams, blueprints, graphs, charts, diaries, logs, manuals, agreements, contracts, rough drafts, analyses, ledgers, inventories, financial information, bank records, receipts, books of account, understandings, minutes of meetings, minute books, resolutions, assignments, computer printouts, purchase orders, invoices, bills of lading, written memoranda or notes of oral communications, and any other tangible thing of whatever nature.

24.      The terms "relate to," "related to," "relating to," and "concerning" shall mean mentioning, comprising, consisting, indicating, describing, reflecting, referring, evidencing, regarding, pertaining to, showing, discussing, connected with, memorializing, or involving in any way whatsoever the subject matter of the request, including having a legal, factual or logical connection, relationship, correlation, or association with the subject matter of the request. A document may "relate to" or an individual or entity without specifically mentioning or discussing that individual or entity by name.

25.      The terms "communication" and "communications" shall mean all meetings, interviews, conversations, conferences, discussions, correspondence, messages, telegrams, telefax, electronic mail, mailgrams, telephone conversations, and all oral, written and electronic expressions, or other occurrences whereby thoughts, opinions, information, or data are transmitted between two or more persons.

26.      The terms "communication" and "communications" shall mean all meetings, interviews, conversations, conferences, discussions, correspondence, messages,

telegrams, telefax, electronic mail, mailgrams, telephone conversations, and all oral, written, and electronic expressions, or other occurrences whereby thoughts, opinions, information, or data are transmitted between two or more persons.

## **INSTRUCTIONS**

1. Furnish all documents and things within the possession, custody, or control of Louisiana that are responsive to these Requests, including information or items in the possession of their assignees, agents, legal representatives, employees, representatives, attorneys, other personnel thereof, or anyone purporting to act on behalf of Louisiana.

2. If an objection is made to any request herein, all documents and things responsive to the request not subject to the objection should be produced. Similarly, if any objection is made to the production of a document, the portion(s) of that document not subject to the objection should be produced with the portion(s) objected to redacted and indicated clearly as such. Otherwise, no communication, document, file, or thing requested should be altered, changed, or modified in any respect. All communications, documents, and files shall be produced in full and unexpurgated form, including all attachments and enclosures either as they are kept in the ordinary course or organized to correspond with those requests.

3. No communication, document, file, or thing requested should be disposed of or destroyed.

4. If you object to any Document Request, or otherwise withhold responsive information because of a claim of privilege, work product, or other grounds:

    a.     identify the Document Request to which objection or claim of privilege is

6

made;

    b.    identify every document withheld; the author, the date of creation, and all recipients;

    c.    identify all grounds for objection or assertion of privilege, and set forth the factual basis for assertion of the objection or claim of privilege; and

    d.    identify the information withheld by description of the topic or subject matter, the date of the communication, and the participants.

5. Unless otherwise specified, the relevant time period for these Document Requests is 2010 to the present.

6. You are under an affirmative duty to supplement your responses to these Document Requests with documents you may acquire or discover after completing your production, if you learn your response is in some material respect incomplete or incorrect and the additional or corrective information has not been made known to Planned Parenthood.

## **<u>DOCUMENTS TO BE PRODUCED</u>**

1. All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to PPGC's Louisiana Medicaid status from 2010 to the present including but not limited to:

    a.    documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to whether PPGC remains a Louisiana Medicaid Provider after November 23, 2020; and

    b.    documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to whether PPGC remains a Louisiana Medicaid Provider after January 20, 2022.

2. All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to Louisiana's consideration and decision to terminate any Planned Parenthood Defendant from Louisiana Medicaid based on grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about August 3, 2015 (attached as Ex. A) or grounds asserted in the termination notices issued to Planned Parenthood by the

7

Louisiana Department of Health and Hospitals on or about September 15, 2015 (attached as Ex. B) including but not limited to:

    a.   documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to the August 11, 2016 letter from Vikki Wachino, Director, Centers for Medicare & Medicaid Services, addressed to Jen Steele, Medicaid Director, State of Louisiana, Department of Health and Hospitals (attached as Ex. C).and Louisiana's response to that letter on September 27, 2016 (attached as Ex. D); and

    b.   documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to the basis for Louisiana's termination/revocation of the Louisiana Medicaid Provider Agreements with PPGC, including but not limited to the alleged "mispresentations" by PPGC referenced in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about September 15, 2015 (attached as Ex. B).

3.    Documents sufficient to identify the instances when Louisiana "terminated other types of providers for similar violations of these provisions" as referenced in Louisiana's response to Question No. 2 in its September 27, 2016 response (attached as Ex. D). Your response should include for each termination, documents sufficient to identify the provider that was terminated, the date of the termination, the reason for the termination, the date of the conduct that resulted in the termination, whether the provider was asked or obligated to return any amounts reimbursed under Medicaid or Louisiana Medicaid, whether the provider did return any amounts reimbursed under Medicaid or Louisiana Medicaid, and the amount of any reimbursements that were returned.

4.    All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about August 3, 2015 (Ex. A).

5.    All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to Louisiana's decision to rescind the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about August 3, 2015 (Ex. A).

6.    All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about September 15, 2015 (Ex. B).

7.    All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to Texas's consideration and decision to terminate any Planned Parenthood Defendant from Texas Medicaid based on grounds asserted in the termination notices issued to Planned Parenthood by the Office of Inspector

General, Texas Health & Human Services Commission on or about October 19, 2015 and December 20, 2016 (Relator's Compl. [Dkt. 2] Exs. B, C).

8.    All documents relating to or reflecting communications with the Center for Medical Progress and/or David Daleiden from 2013 to present.

9.    All documents related to your decision to not intervene in Relator Doe's case.

10.    All documents relating to or reflecting communications with any staff, attorneys, or investigators for Louisiana regarding the matters alleged Relator's Complaint, including but not limited to (i) information about any Planned Parenthood Defendant provided to the State of Louisiana by Relator, (ii) the termination of any Planned Parenthood Defendant from Louisiana Medicaid, and (iii) the litigation initiated by any Planned Parenthood Defendant regarding its potential termination from Medicaid, Texas Medicaid, and/or Louisiana Medicaid.

11.    All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to any fetal tissue procurement or donation in which any Medicaid, Texas Medicaid, or Louisiana Medicaid provider unrelated to Planned Parenthood participated or facilitated or agreed to participate or facilitate.

12.    All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to the participation or facilitation or alleged participation or facilitation of any Planned Parenthood Defendant in any fetal tissue procurement or donation.

13.    All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to whether participation or an agreement to participate in any fetal tissue procurement or donation renders a Medicaid provider unqualified to provide service under Medicaid, Texas Medicaid, or Louisiana Medicaid.

14.    All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to federal court injunctions and/or the effects of federal court injunctions related to the potential termination of any Planned Parenthood Defendant's participation in Medicaid, Texas Medicaid, and/or Louisiana Medicaid.

15.    All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to state court injunctions and/or the effects of a state court injunction related to the potential termination of any Planned Parenthood Defendant's participation in Medicaid, Texas Medicaid, and/or Louisiana Medicaid.

16.    All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to whether termination of PPGC violated Medicaid's free choice of provider requirement and why or why not.

9

**Appx 071**

17.   All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to the continued participation of any Planned Parenthood Defendant in Medicaid, Texas Medicaid, and/or Louisiana Medicaid.

18.   All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to whether any Planned Parenthood Defendant had an obligation to repay any amount paid by Medicaid, Texas Medicaid, and/or Louisiana Medicaid to any Planned Parenthood Affiliate.

19.   All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to whether Medicaid, Texas Medicaid, and/or Louisiana Medicaid could or should seek recoupment of amounts reimbursed to any Planned Parenthood Defendant from 2010 to the present.

20.   All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to termination by the United States, Texas, or Louisiana of any Medicaid provider unrelated to Planned Parenthood for violations of laws or regulations related to medical research, fetal tissue procurement or donation, or an agreement to engage in fetal tissue procurement or donation, including but not limited to whether any terminated federal, Texas, or Louisiana Medicaid provider was asked or obligated to return amounts reimbursed under federal, Texas, or Louisiana Medicaid.

21.   All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to termination by the United States, Texas, and/or Louisiana of any Medicaid, Texas Medicaid, or Louisiana Medicaid provider on basis that the entity was not a qualified provider, including but not limited to whether any terminated Medicaid provider was asked or obligated to return amounts reimbursed under Medicaid.

22.   All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to your understanding of relationships between affiliated companies under Medicaid, Texas Medicaid, or Louisiana Medicaid and any laws, regulations, policies, or guidance regarding whether and how a finding that one company is not a qualified provider may affect an affiliated company's qualifications as a provider.

23.  All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to your views regarding whether a payment, to which a Medicaid provider is entitled at the time of payment, can become an overpayment based on a subsequent change in law and/or a judicial decision. *See, e.g.*, Centers for Medicare & Medicaid Services, Medicare Program; Reporting and Returning of Overpayments, 81 Fed. Reg. 7653, 7658 (Feb. 12, 2016) ("We agree that payments that were proper at the time the payment was made do not become overpayments at a later time due to changes in law or regulation, unless otherwise required by law.").

24.  All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to any Planned Parenthood Affiliate's qualifications to provide services under Medicaid, Texas, Medicaid, and/or Louisiana Medicaid.

25.  All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to information provided by you to the U.S. Congress related to any Planned Parenthood Defendant from 2015 to present regarding any Planned Parenthood Defendant's qualifications to provide service under Medicaid, Texas Medicaid, and/or Louisiana Medicaid; any Planned Parenthood Defendant's termination in Texas and/or Louisiana; continued participation of any Planned Parenthood Defendant in Louisiana Medicaid; whether participation in fetal tissue procurement or donation or agreeing to participate in fetal tissue procurement or donation renders a Medicaid provider unqualified to provide service under Medicaid, Texas Medicaid, or Louisiana Medicaid; and whether Medicaid, Texas Medicaid, and/or Louisiana Medicaid could or should seek recoupment for amounts reimbursed to any Planned Parenthood Defendant from 2010 to the present.

26.  All communications between Louisiana and the Media relating to any Planned Parenthood Defendant's qualifications to provide service under Medicaid, Texas Medicaid, and/or Louisiana Medicaid; any Planned Parenthood Defendant's termination in Texas and/or Louisiana; continued participation of any Planned Parenthood Defendant in Louisiana Medicaid; whether participation in fetal tissue procurement or donation or an agreement to participate in fetal tissue procurement or donation renders a Medicaid provider unqualified to provide service under Medicaid, Texas Medicaid, or Louisiana Medicaid; and whether Medicaid, Texas Medicaid, and/or Louisiana Medicaid could or should seek recoupment for amounts reimbursed to any Planned Parenthood Defendant from 2010 to the present.

27.  All documents or videos (both edited and unedited) provided to Louisiana by Relator, the Center for Medical Progress, or third parties acting on Relator's behalf, including staff, attorneys, or investigators.

28.  All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to Louisiana's evaluation of the Center for Medical Progress videos, including but not limited to your response(s) to those videos and any public official or other public agency's response(s) to those videos.

29.    All communications between Louisiana and the Media relating to the Center for Medical Progress videos.

30.    All communications between Louisiana and members of the United States Congress (including their staff) related to the Center for Medical Progress videos.

31.    All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to allegations that Planned Parenthood submitted claims to the United States, Texas, or Louisiana in violation of the Louisiana Medical Assistance Programs Integrity Law based on grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about August 3, 2015 (Ex. A) or grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about September 15, 2015 (Ex. B).

32.    Documents sufficient to identify the Louisiana Medicaid claims for which Louisiana Medicaid paid any Planned Parenthood Defendant from 2010 to present, for which (a) you have concluded that the claim was submitted in violation of the Louisiana Medical Assistance Programs Integrity Law based on grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about August 3, 2015 (Ex. A) or grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about September 15, 2015 (Ex. B); and/or (b) you believe that the claim was submitted in violation of the Louisiana Medical Assistance Programs Integrity Law based on grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about August 3, 2015 (Ex. A) or grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about September 15, 2015 (Ex. B), excluding patient names, patient dates of birth, patient marital status, insured names, insured dates of birth, insured marital status, or other patient information.

33.    Documents sufficient to identify all unpaid Louisiana Medicaid claims that any Planned Parenthood Defendant presented or caused to be presented to Louisiana Medicaid from 2010 to present, for which (a) you have concluded that the claim was submitted in violation of the Louisiana Medical Assistance Programs Integrity Law based on grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about August 3, 2015 (Ex. A) or grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about September 15, 2015 (Ex. B); and/or (b) you believe that the claim was submitted in violation of the Louisiana Medical Assistance Programs Integrity Law based on grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about August 3, 2015 (Ex. A) or grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about September 15, 2015 (Ex. B), excluding patient names, patient dates of birth, patient marital status, insured names, insured dates of birth, insured marital status, or other patient information.

12

34.   Documents sufficient to identify all Medicaid claims for which Medicaid paid any Planned Parenthood Defendant from 2010 to present, for which: (a) you have concluded that the Planned Parenthood Defendant has an obligation to repay the claim(s); and/or (b) you believe the Planned Parenthood Defendant has an obligation to repay the claim(s), excluding patient names, patient dates of birth, patient marital status, insured names, insured dates of birth, insured marital status, or other patient information.

35.   Documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to the materiality of the alleged participation of any Medicaid, Texas Medicaid, or Louisiana Medicaid provider in fetal tissue procurement or donation or agreement to participate in fetal tissue procurement or donation to the payment of claims to that provider under Medicaid, Texas Medicaid, or Louisiana Medicaid.

*   *   *

13

# Exhibit A

Bobby Jindal
GOVERNOR

Kathy H. Kliebert
SECRETARY

# State of Louisiana
## Department of Health and Hospitals
### Bureau of Legal Services

## BUREAU OF LEGAL SERVICES — FAX TRANSMITTAL

| DATE: | 8·3·15 | | |
|---|---|---|---|
| TO: | Melaney Linton | | |
| | | | |
| FROM: | Steve Russo | | |
| RE: | Planned Parenthood | | |
| FAX NUMBERS: | 713 535 2618 | | |
| | | | |

**COMMENTS:**

**PAGES:** (INCLUDING COVER SHEET) 9

### PRIVACY AND CONFIDENTIALITY WARNING:

This facsimile is from an attorney and may contain information that is confidential or legally privileged. Further, this facsimile may contain Protected Health Information (PHI), Individually Identifiable Health Information (IIHI) and other information which is protected by law.

This message is only for the use of the intended recipient. Use by an erroneous recipient or any other unauthorized individual or entity of information contained in, or attached to, this or any other facsimile message may result in legal action.

If you are not the intended recipient, you are hereby notified any review, disclosure/re-disclosure, copying, storing, distributing or the taking of action in reliance on the content of this facsimile and any attachments thereto, is strictly prohibited.

If you are not the intended recipient and/or have received this facsimile in error, please (1) immediately advise the sender by telephone that this message has been inadvertently transmitted to you, and (2) destroy the contents of this facsimile and its attachments by deleting any and all electronic copies and any and all hard copies regardless of where they are maintained or stored.

Bienville Building • 628 North 4ᵗʰ Street • P.O. Box 3836 • Baton Rouge, Louisiana 70821-3836
Phone #: (225) 342-1128 • Fax #: (225) 342-2232 • WWW.DHH.LA.GOV
"An Equal Opportunity Employer"

Appx 077



**Bobby Jindal**
GOVERNOR

**Kathy H. Kliebert**
SECRETARY

# State of Louisiana

Department of Health and Hospitals
Office of the Secretary

August 3, 2015

Planned Parenthood of Louisiana
ATTN: Melaney Linton
4018 Magazine St.
New Orleans, LA 70115

**Certified Mail, Return Receipt Requested (7012 1640 0001 7222 5655)**

Re:   Medicaid Provider Agreement
      Provider Number 91338

Dear Mrs. Linton:

As you are aware, in order to participate in the Louisiana Medicaid Program (Medicaid), providers are required to sign a Medicaid provider agreement with the Louisiana Department of Health and Hospitals (LDHH). Pursuant to La. R.S. 46:437.11, each such provider agreement shall be a voluntary contract between LDHH and the applicable health care provider. According to subsection (D)(1) of the statute, a provider agreement **SHALL** be terminable by either party 30 days after receipt of written notice. In accordance with this statute, please consider this your written notice that LDHH is exercising its right to terminate your provider agreement effective 30 days after your receipt of this notice.

After any and all local, state, or federal investigations of your entity have been concluded, LDHH expressly reserves the right to amend this notice and terminate your provider agreement immediately, and without written notice, if you become the subject of a sanction or of a criminal, civil, or departmental proceeding.

Pursuant to La. R.S. 46:107, you have an opportunity for a hearing at the state level based on this termination of your provider agreement. All final decisions in cases of appeal are rendered by the office of the secretary at the state level and such decisions exhaust your administrative remedy. Your request for an Administrative Appeal must be in writing and must set out the reasons for which you are seeking an appeal and the basis on which you disagree with the department's decision. All requests for an Administrative Appeal must be received within 30 calendar days of receipt of this letter.

Bienville Building • 628 North 4th Street • P.O. Box 629 • Baton Rouge, Louisiana 70821-0629
Phone #: 225/342-9509 • Fax #: 225/342-5568 • *WWW.DHH.LA.GOV*
"An Equal Opportunity Employer"

August 3, 2015
Page 2

Any such request must be sent to the address below:

Division of Administrative Law – HH Section
P.O. Box 4189
Baton Rouge, Louisiana 70821-4189
Phone: (225) 342-0443
Fax: (225) 219-9823

Please send a copy of any request for appeal to the Bureau of Legal Services at P.O. Box 3836, Baton Rouge, Louisiana 70821, Attention: Stephen Russo.

You may be represented by an attorney or authorized representative at the Administrative Appeal. Your attorney or authorized representative must file a written notice of representation identifying his/her name, address, and telephone number at the address given above.

If you have any questions regarding this correspondence, you may contact Stephen R. Russo, Executive Counsel at 225-342-1128.

Sincerely,

Kathy Kliebert
Secretary

Cc: Planned Parenthood Gulf Coast (7099 3400 0002 6023 8151)

Appx 079

**Bobby Jindal**
GOVERNOR

**Kathy H. Kliebert**
SECRETARY

# State of Louisiana
Department of Health and Hospitals
Office of the Secretary

August 3, 2015

Planned Parenthood of Houston
ATTN: Melaney Linton
4600 Gulf Fwy.
Houston, TX 77023

**Certified Mail, Return Receipt Requested (7012 1640 0001 7222 5594)**

Re:   Medicaid Provider Agreement
      Provider Number 45802

Dear Mrs. Linton:

As you are aware, in order to participate in the Louisiana Medicaid Program (Medicaid), providers are required to sign a Medicaid provider agreement with the Louisiana Department of Health and Hospitals (LDHH). Pursuant to La. R.S. 46:437.11, each such provider agreement shall be a voluntary contract between LDHH and the applicable health care provider. According to subsection (D)(1) of the statute, a provider agreement **SHALL** be terminable by either party 30 days after receipt of written notice. In accordance with this statute, please consider this your written notice that LDHH is exercising its right to terminate your provider agreement effective 30 days after your receipt of this notice.

After any and all local, state, or federal investigations of your entity have been concluded, LDHH expressly reserves the right to amend this notice and terminate your provider agreement immediately, and without written notice, if you become the subject of a sanction or of a criminal, civil, or departmental proceeding.

Pursuant to La. R.S. 46:107, you have an opportunity for a hearing at the state level based on this termination of your provider agreement. All final decisions in cases of appeal are rendered by the office of the secretary at the state level and such decisions exhaust your administrative remedy. Your request for an Administrative Appeal must be in writing and must set out the reasons for which you are seeking an appeal and the basis on which you disagree with the department's decision. All requests for an Administrative Appeal must be received within 30 calendar days of receipt of this letter.

Bienville Building • 628 North 4th Street • P.O. Box 629 • Baton Rouge, Louisiana 70821-0629
Phone #: 225/342-9509 • Fax #: 225/342-5568 • *WWW.DHH.LA.GOV*
"An Equal Opportunity Employer"

August 3, 2015
Page 2

Any such request must be sent to the address below:

Division of Administrative Law – HH Section
P.O. Box 4189
Baton Rouge, Louisiana 70821-4189
Phone: (225) 342-0443
Fax: (225) 219-9823

Please send a copy of any request for appeal to the Bureau of Legal Services at P.O. Box 3836, Baton Rouge, Louisiana 70821, Attention: Stephen Russo.

You may be represented by an attorney or authorized representative at the Administrative Appeal. Your attorney or authorized representative must file a written notice of representation identifying his/her name, address, and telephone number at the address given above.

If you have any questions regarding this correspondence, you may contact Stephen R. Russo, Executive Counsel at 225-342-1128.

Sincerely,

Kathy Kliebert
Secretary

Cc: Planned Parenthood Gulf Coast (7012 1640 0001 7222 5693)

**Bobby Jindal**
GOVERNOR

**Kathy H. Kliebert**
SECRETARY

# State of Louisiana
## Department of Health and Hospitals
### Office of the Secretary

August 3, 2015

Planned Parenthood
ATTN: Melaney Linton
4018 Magazine St.
New Orleans, LA 70115

## Certified Mail, Return Receipt Requested (7012 1640 0001 7222 5686)

Re:    Medicaid Provider Agreement
       Provider Number 133673

Dear Mrs. Linton:

As you are aware, in order to participate in the Louisiana Medicaid Program (Medicaid), providers are required to sign a Medicaid provider agreement with the Louisiana Department of Health and Hospitals (LDHH). Pursuant to La. R.S. 46:437.11, each such provider agreement shall be a voluntary contract between LDHH and the applicable health care provider. According to subsection (D)(1) of the statute, a provider agreement **SHALL** be terminable by either party 30 days after receipt of written notice. In accordance with this statute, please consider this your written notice that LDHH is exercising its right to terminate your provider agreement effective 30 days after your receipt of this notice.

After any and all local, state, or federal investigations of your entity have been concluded, LDHH expressly reserves the right to amend this notice and terminate your provider agreement immediately, and without written notice, if you become the subject of a sanction or of a criminal, civil, or departmental proceeding.

Pursuant to La. R.S. 46:107, you have an opportunity for a hearing at the state level based on this termination of your provider agreement. All final decisions in cases of appeal are rendered by the office of the secretary at the state level and such decisions exhaust your administrative remedy. Your request for an Administrative Appeal must be in writing and must set out the reasons for which you are seeking an appeal and the basis on which you disagree with the department's decision. All requests for an Administrative Appeal must be received within 30 calendar days of receipt of this letter.

Bienville Building • 628 North 4th Street • P.O. Box 629 • Baton Rouge, Louisiana 70821-0629
Phone #: 225/342-9509 • Fax #: 225/342-5568 • *WWW.DHH.LA.GOV*
"An Equal Opportunity Employer"

August 3, 2015
Page 2

Any such request must be sent to the address below:

Division of Administrative Law – HH Section
P.O. Box 4189
Baton Rouge, Louisiana 70821-4189
Phone: (225) 342-0443
Fax: (225) 219-9823

Please send a copy of any request for appeal to the Bureau of Legal Services at P.O. Box 3836, Baton Rouge, Louisiana 70821, Attention: Stephen Russo.

You may be represented by an attorney or authorized representative at the Administrative Appeal. Your attorney or authorized representative must file a written notice of representation identifying his/her name, address, and telephone number at the address given above.

If you have any questions regarding this correspondence, you may contact Stephen R. Russo, Executive Counsel at 225-342-1128.

Sincerely,

Kathy Kliebert
Secretary

Cc:  Planned Parenthood Gulf Coast (7012 1640 0001 7222 5679)

Appx 083

**Bobby Jindal**
GOVERNOR

**Kathy H. Kliebert**
SECRETARY

# State of Louisiana
Department of Health and Hospitals
Office of the Secretary

August 3, 2015

Planned Parenthood
ATTN: Melaney Linton
3955 Government Street, Ste. 2
Baton Rouge, LA 70806

## Certified Mail, Return Receipt Requested (7012 1640 0001 7222 5662)

Re:    Medicaid Provider Agreement
       Provider Number 133689

Dear Mrs. Linton:

As you are aware, in order to participate in the Louisiana Medicaid Program (Medicaid), providers are required to sign a Medicaid provider agreement with the Louisiana Department of Health and Hospitals (LDHH). Pursuant to La. R.S. 46:437.11, each such provider agreement shall be a voluntary contract between LDHH and the applicable health care provider. According to subsection (D)(1) of the statute, a provider agreement **SHALL** be terminable by either party 30 days after receipt of written notice. In accordance with this statute, please consider this your written notice that LDHH is exercising its right to terminate your provider agreement effective 30 days after your receipt of this notice.

After any and all local, state, or federal investigations of your entity have been concluded, LDHH expressly reserves the right to amend this notice and terminate your provider agreement immediately, and without written notice, if you become the subject of a sanction or of a criminal, civil, or departmental proceeding.

Pursuant to La. R.S. 46:107, you have an opportunity for a hearing at the state level based on this termination of your provider agreement. All final decisions in cases of appeal are rendered by the office of the secretary at the state level and such decisions exhaust your administrative remedy. Your request for an Administrative Appeal must be in writing and must set out the reasons for which you are seeking an appeal and the basis on which you disagree with the department's decision. All requests for an Administrative Appeal must be received within 30 calendar days of receipt of this letter.

Bienville Building • 628 North 4th Street • P.O. Box 629 • Baton Rouge, Louisiana 70821-0629
Phone #: 225/342-9509 • Fax #: 225/342-5568 • *WWW.DHH.LA.GOV*
"An Equal Opportunity Employer"

Appx 084

August 3, 2015
Page 2

Any such request must be sent to the address below:

Division of Administrative Law – HH Section
P.O. Box 4189
Baton Rouge, Louisiana 70821-4189
Phone: (225) 342-0443
Fax: (225) 219-9823

Please send a copy of any request for appeal to the Bureau of Legal Services at P.O. Box 3836, Baton Rouge, Louisiana 70821, Attention: Stephen Russo.

You may be represented by an attorney or authorized representative at the Administrative Appeal. Your attorney or authorized representative must file a written notice of representation identifying his/her name, address, and telephone number at the address given above.

If you have any questions regarding this correspondence, you may contact Stephen R. Russo, Executive Counsel at 225-342-1128.

Sincerely,

Kathy Kliebert
Secretary

Cc:  Planned Parenthood Gulf Coast (7012 1640 0001 7222 5549)

Appx 085

# Exhibit B


**Bobby Jindal**
GOVERNOR

**Kathy H. Kliebert**
SECRETARY

**State of Louisiana**
Department of Health and Hospitals
Office of the Secretary

September 15, 2015

Planned Parenthood
ATTN:Melaney Linton
4018 Magazine Street
New Orleans, LA 70115

**Certified Mail, Return Receipt Requested (7012 2210 0001 6260 0080)**

Re:     Termination / Revocation of Louisiana Medicaid Provider Agreement
        Provider Number 91338

Dear Mrs. Linton:

Based on the initial findings of Louisiana's investigation into Planned Parenthood Gulf Coast (PPGC), you are hereby notified that the Department of Health and Hospitals (DHH) is hereby terminating / revoking the PPGC provider agreement referenced above. This action is being taken pursuant to La. R.S. 46:437.11 and 46:437.14. This action will take effect following final determination, judgment, completion, withdrawal from, or termination of all administrative and/or legal proceedings in this matter. Such proceedings include, but are not limited to, informal hearings, administrative appeals, appeals for judicial review, appellate judgments, and/or denials of writ applications.

Specifically, it is clear that PPGC entered into a Federal False Claims Act settlement signed on July 25, 2013, by Melaney A. Linton, President and CEO of PPGC agreeing to pay $4,300,000 to the United States who "contend[ed] that PPGC submitted false claims." Settlement Agreement, *Reynolds v. Planned Parenthood Gulf Coast*, No. 9:09-cv-124 (E.D. TX, Lufkin Div.)(July 25, 2013). In accordance with the Louisiana Administrative Code, Title 50, this is a violation. Further, under that same administrative code, PPGC had an affirmative duty to inform BHSF in writing of this violation. Since DHH, through BHSF, was not informed within ten (10) working days of when the provider knew or should have known of the violation, this constitutes a separate violation. Also under consideration in our departmental proceedings are provider audits and federal false claims cases against Planned Parenthood of America (PPFA) affiliates. Included among these are pending federal false claims cases against PPGC, one in which the presiding judge found that the information already provided "allows the court to draw the reasonable inference that Planned Parenthood knowingly filed false claims." Memorandum Opinion and Order at 17, *Carroll v. Planned Parenthood Gulf Coast*, 4:12-cv-03505 (S.D. TX, Houston Div.) (May 14, 2014). Providers and providers-in-fact are required to ensure that all their agents and affiliates are in compliance with all federal and state laws as well as rules, policies and procedures of the Medicaid program. PPGC and its parent organization PPFA has failed to do so and has failed to notify DHH of violations and misconduct by affiliates and providers-in-fact. These are also violations of La. Admin. Code, Title 50.

Bienville Building • 628 N. 4th Street • P.O. Box 629 • Baton Rouge, Louisiana 70821-0629
Phone #: 225/342-9509 • Fax #: 225/342-5568 • WWW.DHH.LA.GOV
"An Equal Opportunity Employer"

Appx 087

Further, in regard to the Center for Medical Progress (CMP) videos, DHH reviewed responses received from PPGC via letters dated July 24, 2015, and August 14, 2015, from Melaney Linton in response to DHH letters dated July 15, 2015, and August 4, 2015. After said review, DHH believes that PPGC misrepresented its actions therein and had contradictions within the body of the letter and with the statements and admissions made in the CMP videos, including but not limited to the video released on August 4, 2015 and taped in April of this year, containing conversations with PPGC senior management, including the PPGC director of research and PPCFC facility director.

According to La. R.S. 46:437.11(D)(2), the Secretary may terminate a provider agreement immediately and without written notice if a health care provider is the subject of a sanction or of a criminal, civil, or departmental proceeding. The Department determines that PPGC currently fits within this statute due to the investigations of PPGC by both DHH and the Louisiana Office of Inspector General. DHH expressly reserves the right to amend this notice and to terminate your provider agreement immediately and without written notice based on the further findings of the pending investigations by any department of Louisiana, any other State or state agency, or the pending investigations in the congressional committees. DHH has elected to provide PPGC with full due process rights as mentioned above and will not pursue immediate termination pursuant to this notice.

According to 46:437.14(A)(1), DHH may deny or revoke enrollment in the Medicaid program in cases of misrepresentation. As alleged above, DHH believes PPGC's responses to inquiries, when compared to clear representations in various videos, rises to the level of misrepresentation. Further, according to La. R.S. 46:437.14(A)(10) and (12), DHH may move to revoke enrollment if a provider is found in violation of licensing or certification conditions or professional standards relating to the licensure or certification of health care providers or the required quality of goods, services, or supplies provided. Also, a provider agreement can be revoked for failure to meet any condition of enrollment. As a Medicaid provider, PPGC is charged with maintaining compliance with all state statutes, rules and regulations, including the Louisiana Administrative Code mentioned above. PPGC's actions mentioned above are clear violations of applicable administrative code provisions and are clear violations of the statutes mentioned. Based on the conduct described, the above provider number is hereby being terminated / revoked.

You are entitled to an administrative review of this action and it is suspensive if you avail yourself of same. Initially, you should request an Informal Hearing at which you are entitled to both present information in writing or orally, present documents, and to further inquire as to the reasons for our determination. You must make your request for an Informal Hearing in writing and within fifteen (15) calendar days (including Saturdays and Sundays) of receipt of this notice. Your written request should be sent to:

Louisiana DHH, Office of Secretary
P.O. Box 3836
Baton Rouge, Louisiana 70821

15-30987.358

You may be represented by an attorney or authorized representative at the Informal Hearing. Your attorney or authorized representative must file a written notice of representation identifying himself by name, address, and telephone number at the address given above.

Following the Informal Hearing you will receive a written Notice of the Results of the Informal Hearing from which you are entitled to seek an appeal before the Division of Administrative Law. This hearing will also be suspensive in nature. Your request for Administrative Appeal must be in writing and set out the reasons for which you are seeking an appeal and the basis upon which you disagree with the results of the Informal Hearing. All requests for an Administrative Appeal must be received within thirty (30) calendar days (including Saturdays and Sundays) of the receipt of this notice. Request for Administrative Appeal must be sent to the address given below.

Division of Administrative Law – HH Section
P.O. Box 4189
Baton Rouge, Louisiana 70821-4189
Phone (225) 342-0443
Fax (225) 219-9823

You may be represented by an attorney or authorized representative at the Administrative Appeal. Your attorney or authorized representative must file a written notice of representation identifying himself by name, address, and telephone number at the address above.

You may choose to forego the Informal Hearing and instead request an Administrative Appeal of this action. If you choose this alternative, please follow the procedure described above for scheduling an Administrative Appeal.

If you do not request an Informal Hearing or an Administrative Appeal, your termination will become effective thirty (30) days (including Saturdays and Sundays) from the date of your receipt of this letter.

If you have any questions regarding this correspondence, you may contact Stephen R. Russo, Executive Counsel, at (225) 342-1115.

Sincerely,

Kathy Kliebert, Secretary
Louisiana Department of Health and Hospitals

Cc: Planned Parenthood Gulf Coast

15-30987-350

Appx 089



**Bobby Jindal**
GOVERNOR

**Kathy H. Kliebert**
SECRETARY

#### State of Louisiana
Department of Health and Hospitals
Office of the Secretary

September 15, 2015

Planned Parenthood
ATTN: Melaney Linton
3955 Government Street, Suite 2
Baton Rouge, Louisiana 70806

**Certified Mail, Return Receipt Requested (7012 2210 0001 6260 0097)**

Re:   Termination / Revocation of Louisiana Medicaid Provider Agreement
        Provider Number 133689

Dear Mrs. Linton:

Based on the initial findings of Louisiana's investigation into Planned Parenthood Gulf Coast
(PPGC), you are hereby notified that the Department of Health and Hospitals (DHH) is hereby
terminating / revoking the PPGC provider agreement referenced above. This action is being
taken pursuant to La. R.S. 46:437.11 and 46:437.14. This action will take effect following final
determination, judgment, completion, withdrawal from, or termination of all administrative
and/or legal proceedings in this matter. Such proceedings include, but are not limited to,
informal hearings, administrative appeals, appeals for judicial review, appellate judgments,
and/or denials of writ applications.

Specifically, it is clear that PPGC entered into a Federal False Claims Act settlement signed on
July 25, 2013, by Melaney A. Linton, President and CEO of PPGC agreeing to pay $4,300,000 to
the United States who "contend[ed] that PPGC submitted false claims." Settlement Agreement,
*Reynolds v. Planned Parenthood Gulf Coast*, No. 9:09-cv-124 (E.D. TX, Lufkin Div.)(July 25,
2013). In accordance with the Louisiana Administrative Code, Title 50, this is a violation.
Further, under that same administrative code, PPGC had an affirmative duty to inform BHSF in
writing of this violation. Since DHH, through BHSF, was not informed within ten (10) working
days of when the provider knew or should have known of the violation, this constitutes a
separate violation. Also under consideration in our departmental proceedings are provider audits
and federal false claims cases against Planned Parenthood of America (PPFA) affiliates.
Included among these are pending federal false claims cases against PPGC, one in which the
presiding judge found that the information already provided "allows the court to draw the
reasonable inference that Planned Parenthood knowingly filed false claims." Memorandum
Opinion and Order at 17, *Carroll v. Planned Parenthood Gulf Coast*, 4:12-cv-03505 (S.D. TX,
Houston Div.) (May 14, 2014). Providers and providers-in-fact are required to ensure that all
their agents and affiliates are in compliance with all federal and state laws as well as rules,
policies and procedures of the Medicaid program. PPGC and its parent organization PPFA has
failed to do so and has failed to notify DHH of violations and misconduct by affiliates and
providers-in-fact. These are also violations of La. Admin. Code, Title 50.

**Appx 090**

15-309872.001

Further, in regard to the Center for Medical Progress (CMP) videos, DHH reviewed responses received from PPGC via letters dated July 24, 2015, and August 14, 2015, from Melaney Linton in response to DHH letters dated July 15, 2015, and August 4, 2015. After said review, DHH believes that PPGC misrepresented its actions therein and had contradictions within the body of the letter and with the statements and admissions made in the CMP videos, including but not limited to the video released on August 4, 2015 and taped in April of this year, containing conversations with PPGC senior management, including the PPGC director of research and PPCFC facility director.

According to La. R.S. 46:437.11(D)(2), the Secretary may terminate a provider agreement immediately and without written notice if a health care provider is the subject of a sanction or of a criminal, civil, or departmental proceeding. The Department determines that PPGC currently fits within this statute due to the investigations of PPGC by both DHH and the Louisiana Office of Inspector General. DHH expressly reserves the right to amend this notice and to terminate your provider agreement immediately and without written notice based on the further findings of the pending investigations by any department of Louisiana, any other State or state agency, or the pending investigations in the congressional committees. DHH has elected to provide PPGC with full due process rights as mentioned above and will not pursue immediate termination pursuant to this notice.

According to 46:437.14(A)(1), DHH may deny or revoke enrollment in the Medicaid program in cases of misrepresentation. As alleged above, DHH believes PPGC's responses to inquiries, when compared to clear representations in various videos, rises to the level of misrepresentation. Further, according to La. R.S. 46:437.14(A)(10) and (12), DHH may move to revoke enrollment if a provider is found in violation of licensing or certification conditions or professional standards relating to the licensure or certification of health care providers or the required quality of goods, services, or supplies provided. Also, a provider agreement can be revoked for failure to meet any condition of enrollment. As a Medicaid provider, PPGC is charged with maintaining compliance with all state statutes, rules and regulations, including the Louisiana Administrative Code mentioned above. PPGC's actions mentioned above are clear violations of applicable administrative code provisions and are clear violations of the statutes mentioned. Based on the conduct described, the above provider number is hereby being terminated / revoked.

You are entitled to an administrative review of this action and it is suspensive if you avail yourself of same. Initially, you should request an Informal Hearing at which you are entitled to both present information in writing or orally, present documents, and to further inquire as to the reasons for our determination. You must make your request for an Informal Hearing in writing and within fifteen (15) calendar days (including Saturdays and Sundays) of receipt of this notice. Your written request should be sent to:

Louisiana DHH, Office of Secretary
P.O. Box 3836
Baton Rouge, Louisiana 70821

15-30087-361

You may be represented by an attorney or authorized representative at the Informal Hearing. Your attorney or authorized representative must file a written notice of representation identifying himself by name, address, and telephone number at the address given above.

Following the Informal Hearing you will receive a written Notice of the Results of the Informal Hearing from which you are entitled to seek an appeal before the Division of Administrative Law. This hearing will also be suspensive in nature. Your request for Administrative Appeal must be in writing and set out the reasons for which you are seeking an appeal and the basis upon which you disagree with the results of the Informal Hearing. All requests for an Administrative Appeal must be received within thirty (30) calendar days (including Saturdays and Sundays) of the receipt of this notice. Request for Administrative Appeal must be sent to the address given below.

Division of Administrative Law – HH Section<br>
P.O. Box 4189<br>
Baton Rouge, Louisiana 70821-4189<br>
Phone (225) 342-0443<br>
Fax (225) 219-9823

You may be represented by an attorney or authorized representative at the Administrative Appeal. Your attorney or authorized representative must file a written notice of representation identifying himself by name, address, and telephone number at the address above.

You may choose to forego the Informal Hearing and instead request an Administrative Appeal of this action. If you choose this alternative, please follow the procedure described above for scheduling an Administrative Appeal.

If you do not request an Informal Hearing or an Administrative Appeal, your termination will become effective thirty (30) days (including Saturdays and Sundays) from the date of your receipt of this letter.

If you have any questions regarding this correspondence, you may contact Stephen R. Russo, Executive Counsel, at (225) 342-1115.

Sincerely,

Kathy Kliebert, Secretary
Louisiana Department of Health and Hospitals

Cc: Planned Parenthood Gulf Coast

Bienville Building • 628 N. 4th Street • P.O. Box 629 • Baton Rouge, Louisiana 70821-0629
Phone #: 225/342-9509 • Fax #: 225/342-5568 • WWW.DHH.LA.GOV
"An Equal Opportunity Employer"

Appx 092

15-30987.362



**Bobby Jindal**
GOVERNOR

**Kathy H. Kliebert**
SECRETARY

**State of Louisiana**
Department of Health and Hospitals
Office of the Secretary

September 15, 2015

Planned Parenthood
ATTN:Melaney Linton
4600 Gulf Hwy.
Houston, TX  77023

**Certified Mail, Return Receipt Requested (7012 2210 0001 6260 0073)**

Re:    Termination / Revocation of Louisiana Medicaid Provider Agreement
       Provider Number 45802

Dear Mrs. Linton:

Based on the initial findings of Louisiana's investigation into Planned Parenthood Gulf Coast (PPGC), you are hereby notified that the Department of Health and Hospitals (DHH) is hereby terminating / revoking the PPGC provider agreement referenced above. This action is being taken pursuant to La. R.S. 46:437.11 and 46:437.14. This action will take effect following final determination, judgment, completion, withdrawal from, or termination of all administrative and/or legal proceedings in this matter. Such proceedings include, but are not limited to, informal hearings, administrative appeals, appeals for judicial review, appellate judgments, and/or denials of writ applications.

Specifically, it is clear that PPGC entered into a Federal False Claims Act settlement signed on July 25, 2013, by Melaney A. Linton, President and CEO of PPGC agreeing to pay $4,300,000 to the United States who "contend[ed] that PPGC submitted false claims." Settlement Agreement, *Reynolds v. Planned Parenthood Gulf Coast*, No. 9:09-cv-124 (E.D. TX, Lufkin Div.)(July 25, 2013). In accordance with the Louisiana Administrative Code, Title 50, this is a violation. Further, under that same administrative code, PPGC had an affirmative duty to inform BHSF in writing of this violation. Since DHH, through BHSF, was not informed within ten (10) working days of when the provider knew or should have known of the violation, this constitutes a separate violation. Also under consideration in our departmental proceedings are provider audits and federal false claims cases against Planned Parenthood of America (PPFA) affiliates. Included among these are pending federal false claims cases against PPGC, one in which the presiding judge found that the information already provided "allows the court to draw the reasonable inference that Planned Parenthood knowingly filed false claims." Memorandum Opinion and Order at 17, *Carroll v. Planned Parenthood Gulf Coast*, 4:12-cv-03505 (S.D. TX, Houston Div.) (May 14, 2014). Providers and providers-in-fact are required to ensure that all their agents and affiliates are in compliance with all federal and state laws as well as rules, policies and procedures of the Medicaid program. PPGC and its parent organization PPFA has failed to do so and has failed to notify DHH of violations and misconduct by affiliates and providers-in-fact. These are also violations of La. Admin. Code, Title 50.

15-310987.363

**Appx 093**

Further, in regard to the Center for Medical Progress (CMP) videos, DHH reviewed responses received from PPGC via letters dated July 24, 2015, and August 14, 2015, from Melaney Linton in response to DHH letters dated July 15, 2015, and August 4, 2015. After said review, DHH believes that PPGC misrepresented its actions therein and had contradictions within the body of the letter and with the statements and admissions made in the CMP videos, including but not limited to the video released on August 4, 2015 and taped in April of this year, containing conversations with PPGC senior management, including the PPGC director of research and PPCFC facility director.

According to La. R.S. 46:437.11(D)(2), the Secretary may terminate a provider agreement immediately and without written notice if a health care provider is the subject of a sanction or of a criminal, civil, or departmental proceeding. The Department determines that PPGC currently fits within this statute due to the investigations of PPGC by both DHH and the Louisiana Office of Inspector General. DHH expressly reserves the right to amend this notice and to terminate your provider agreement immediately and without written notice based on the further findings of the pending investigations by any department of Louisiana, any other State or state agency, or the pending investigations in the congressional committees. DHH has elected to provide PPGC with full due process rights as mentioned above and will not pursue immediate termination pursuant to this notice.

According to 46:437.14(A)(1), DHH may deny or revoke enrollment in the Medicaid program in cases of misrepresentation. As alleged above, DHH believes PPGC's responses to inquiries, when compared to clear representations in various videos, rises to the level of misrepresentation. Further, according to La. R.S. 46:437.14(A)(10) and (12), DHH may move to revoke enrollment if a provider is found in violation of licensing or certification conditions or professional standards relating to the licensure or certification of health care providers or the required quality of goods, services, or supplies provided. Also, a provider agreement can be revoked for failure to meet any condition of enrollment. As a Medicaid provider, PPGC is charged with maintaining compliance with all state statutes, rules and regulations, including the Louisiana Administrative Code mentioned above. PPGC's actions mentioned above are clear violations of applicable administrative code provisions and are clear violations of the statutes mentioned. Based on the conduct described, the above provider number is hereby being terminated / revoked.

You are entitled to an administrative review of this action and it is suspensive if you avail yourself of same. Initially, you should request an Informal Hearing at which you are entitled to both present information in writing or orally, present documents, and to further inquire as to the reasons for our determination. You must make your request for an Informal Hearing in writing and within fifteen (15) calendar days (including Saturdays and Sundays) of receipt of this notice. Your written request should be sent to:

Louisiana DHH, Office of Secretary
P.O. Box 3836
Baton Rouge, Louisiana 70821

15-30087.304

You may be represented by an attorney or authorized representative at the Informal Hearing. Your attorney or authorized representative must file a written notice of representation identifying himself by name, address, and telephone number at the address given above.

Following the Informal Hearing you will receive a written Notice of the Results of the Informal Hearing from which you are entitled to seek an appeal before the Division of Administrative Law. This hearing will also be suspensive in nature. Your request for Administrative Appeal must be in writing and set out the reasons for which you are seeking an appeal and the basis upon which you disagree with the results of the Informal Hearing. All requests for an Administrative Appeal must be received within thirty (30) calendar days (including Saturdays and Sundays) of the receipt of this notice. Request for Administrative Appeal must be sent to the address given below.

Division of Administrative Law – HH Section
P.O. Box 4189
Baton Rouge, Louisiana 70821-4189
Phone (225) 342-0443
Fax (225) 219-9823

You may be represented by an attorney or authorized representative at the Administrative Appeal. Your attorney or authorized representative must file a written notice of representation identifying himself by name, address, and telephone number at the address above.

You may choose to forego the Informal Hearing and instead request an Administrative Appeal of this action. If you choose this alternative, please follow the procedure described above for scheduling an Administrative Appeal.

If you do not request an Informal Hearing or an Administrative Appeal, your termination will become effective thirty (30) days (including Saturdays and Sundays) from the date of your receipt of this letter.

If you have any questions regarding this correspondence, you may contact Stephen R. Russo, Executive Counsel, at (225) 342-1115.

Sincerely,

Kathy Kliebert, Secretary
Louisiana Department of Health and Hospitals

Cc: Planned Parenthood Gulf Coast

15-30987.365

Bienville Building • 628 N. 4th Street • P.O. Box 629 • Baton Rouge, Louisiana 70821-0629
Phone #: 225/342-9509 • Fax #: 225/342-5568 • WWW.DHH.LA.GOV
"An Equal Opportunity Employer"

Appx 095

Exhibit C

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard
Baltimore, Maryland 21244-1850



---

August 11, 2016

Ms. Jen Steele, Medicaid Director
State of Louisiana
Department of Health and Hospitals
628 N. 4th Street
PO Box 91030
Baton Rouge, LA  70821-9030

Dear Director Steele:

This letter is in response to recent actions taken by the State of Louisiana to terminate its Medicaid provider agreements with Planned Parenthood Gulf Coast (PPGC).  As previously discussed with the state on August 4, 2016, the Centers for Medicare & Medicaid Services (CMS) would like to remind the state of its obligation to remain in compliance with the "free choice of provider" requirements specified in section 1902(a)(23) of the Social Security Act (the Act).  In addition, the state is obligated to ensure beneficiary access to covered services under section 1902(a)(30)(A) of the Act.  As highlighted below, CMS seeks a response from the state detailing its compliance with those requirements.

Under federal law, at section 1902(a)(23) of the Act, a Medicaid beneficiary may obtain medical services "from any institution, agency, community pharmacy, or person, qualified to perform the service or services required . . . who undertakes to provide him such services."  This provision is often referred to as the "any willing provider" or "free choice of provider" provision.  While states maintain the authority to establish reasonable standards for provider qualifications (in accordance with 42 C.F.R. § 431.51(c)(2)), any willing provider that is qualified to provide covered services according to the reasonable standards established by the state must be allowed to provide such services to Medicaid beneficiaries.  For further discussion of the "Free Choice of Provider Provisions," see State Medicaid Director Letter #16-005, published on April 19, 2016.

In addition, CMS is concerned about the effect the termination of the provider agreement with PPGC would have on Louisiana Medicaid beneficiaries' access to women's health services within the state.  Section 1902(a)(30)(A) of the Act requires that states have methods and procedures to ensure that there are sufficient providers so that care and services are available to Medicaid beneficiaries "at least to the extent that such care and services are available to the general population in the area."  It is not clear that this access requirement would be met for beneficiaries in several areas in Louisiana without the participation of PPGC, absent other changes in Louisiana's program.

Although states have authority to terminate providers from participating in Medicaid, this authority is limited to circumstances implicating the fitness of the provider to perform covered medical services or appropriately bill for them.  States must terminate those providers that have

Page 2 – Ms. Jen Steele, Medicaid Director

committed certain types of fraud or other criminal acts related to involvement with the Medicare, Medicaid or the Children's Health Insurance Program (CHIP) programs. States must also terminate providers subject to federal disbarment or exclusion determinations. As explained in the April 2016 guidance, states must have a valid reason for terminating a provider, related to the provider's ability to render covered services or to properly bill for those services – reasons, for instance, that bear on the individual's or entity's professional competence, professional performance, or financial integrity.

We are unaware of any basis for Louisiana to terminate PPGC's provider agreements, which would be consistent with these limited reasons for excluding providers from Medicaid participation. Therefore, we ask that you provide information to CMS documenting the state's basis for termination, including documentation and supporting evidence that answers the following questions:

1. Why does the state believe that there were violations of La R.S. 46:437.11 and 46:437.14?

2. Has the state terminated other types of providers for similar violations of these provisions?

3. How do the state provisions located at La R.S. 46:437.11 and 46:437.14 relate to the fitness of the providers to furnish covered services or its ability to appropriately bill for them in accordance with the approved state plan?

4. Why does the state believe that there were violations of the State's Administrative Code Title 50?

5. How does the State's Administrative Code Title 50 relate to the fitness of the providers to furnish covered services or its ability to appropriately bill for them in accordance with the approved state plan?

6. Does the state have evidence that the provider has committed fraud or criminal action, was in material non-compliance with relevant requirements, or had material issues concerning its fitness to perform covered services or appropriately bill for them? If so, please provide that evidence.

7. How will the state's actions affect access to women's health services in the state, including the state's ability to comply with the requirements set forth in section 1902(a)(30)(A)?

To the extent that Louisiana's actions conflict with federal law, CMS may take further actions to protect Medicaid beneficiaries using its authority under section 1904 of the Act, as implemented at 42 Code of Federal Regulations (CFR) 430.35 and 42 CFR Part 430, Subpart D. Please submit a response to this letter explaining the reasons for the termination of PPGC, and the state's analysis of access issues, by September 6, 2016. Absent a response by this date indicating how Louisiana is in compliance with section 1902(a)(23), CMS may initiate a compliance action that could result in the withholding of federal funds.

**Appx 098**

Page 2 – Ms. Jen Steele, Medicaid Director

Should the state have any questions or wish to discuss the federal requirements applicable to this matter, please feel free to contact me at (410)786-3870.

Sincerely,

Vikki Wachino
Director

# Exhibit D

**Williams, Reynaldo (CMS/OSORA)**

| | |
|---|---|
| **From:** | Kimberly Sullivan <Kimberly.Sullivan@LA.GOV> |
| **Sent:** | Tuesday, September 27, 2016 12:19 PM |
| **To:** | Schubel, Jessica L. (CMS/CMCS); Kress, Marielle J. (CMS/CMCS); Wachino, Victoria (CMS/CMCS) |
| **Cc:** | Lee, Gia (OS/OGC); Kimberly Humbles; Stephen Russo; Steele, Jen |
| **Subject:** | RE: CMS letter dated 8/11/16 to Louisiana |
| **Attachments:** | PPGC ltrs 9.15.15.pdf |

Ms. Wachino,

The Louisiana Department of Health (LDH) is in receipt of your letter of August 11, 2016 in regards to the actions taken on the Medicaid provider agreements with Planned Parenthood Gulf Coast (PPGC). We appreciate the extra time given to LDH to respond to the letter in light of the flooding event.

First, LDH takes its responsibility to administer the Medicaid Program in accordance with all federal and state laws very seriously. Cooperation by a Medicaid provider during an investigation into potential wrongdoing is a cornerstone to fulfilling this obligation. Second, LDH is well aware of the right of a Medicaid recipient to choose a Medicaid provider from the pool of eligible, qualified providers. However, a Medicaid provider that is disqualified from the program must exhaust the required administrative review process before seeking judicial review. Louisiana's Administrative Code protects the Medicaid recipients during the review by making the process suspensive, effectively staying the administrative action until the process concludes. The ruling by the Court to allow Medicaid recipients to challenge a disqualification decision in federal court during the administrative process, or after a provider abandons that process, will have a grave impact on Medicaid administration. Based on this recent Court decision, it is only a matter of time before disqualified Medicaid providers attempt to recruit Medicaid recipients to file lawsuits that a Medicaid provider may not be allowed to file.

With regard to the action referenced in the August 11, 2016 letter, LDH had a good faith basis to investigate PPGC following the revelations, in which you are aware. Any reasonable person would agree that the information in the video was concerning and warranted further investigation. Based in part on the position of CMS regarding the at-will termination, LDH voluntarily withdrew that action and proceeded with a termination for-cause. LDH fully anticipated that PPGC would proceed with the administrative review process, during which its Medicaid recipients were assured access. Regrettably, PPGC instead chose to abandon the administrative appeal process, risking the care to all of its Medicaid recipients and brought a lawsuit by three Medicaid recipients recruited by PPGC.

With regard to your specific questions, we offer the following:

1. Why does the state believe that there were violations of La R.S. 46:437.11 and 46:437.14?

   *Please see attached letters sent to PPGC on September 15, 2015.*

2. Has the state terminated other types of providers for similar violations of these provisions?

   *Yes.*

1

**Appx 101**

3.  How do the state provisions located at La R.S. 46:437.11 and 46:437.14 relate to the fitness of the providers to furnish covered services or its ability to appropriately bill for them in accordance with the approved state plan?

*Please see attached letters sent to PPGC sent on September 15, 2015. The provisions of La R.S. 46:437.11 and 46:437.14 are an important part of the authority structure that enables LDH to administer the state plan in a fiscally, professionally, and morally responsible manner that protects Medicaid recipients and public resources.*

4.  Why does the state believe that there were violations of the State's Administrative Code Title 50?

*Please see attached letters sent to PPGC on September 15, 2015.*

5.  How does the State's Administrative Code Title 50 relate to the fitness of the providers to furnish covered services or its ability to appropriately bill for them in accordance with the approved state plan?

*Please see attached letters sent to PPGC on September 15, 2015.*

6.  Does the state have evidence that the provider has committed fraud or criminal action, was in material non-compliance with relevant requirements, or had material issues concerning its fitness to perform covered services or appropriately bill for them?  If so, please provide that evidence.

*Please see attached letters sent to PPGC on September 15, 2015.*

7.  How will the state's actions affect access to women's health services in the state's ability to comply with the requirements set forth in section 1902(a)(30)(A)?

*The action taken by the state regarding PPGC did not affect Medicaid recipient access to health care because the action was not final and was subject to a fully suspensive administrative review.  PPGC inexplicably abandoned that process and, instead, obtained a preliminary injunction.  The result to the Medicaid recipient is the same; access to women's health services has not been disturbed.*

LDH believes this adequately addresses the issues raised in the letter of August 11, 2016.  As always, LDH's primary concern is the care and health of the Medicaid recipients it serves through the Louisiana Medicaid program.  None of the actions taken against PPGC affected the health or access to health care services of any Louisiana Medicaid recipients.

Sincerely,

*Kimberly Sullivan*
*LDH Deputy General Counsel*
*628 N. 4th Street*
*P.O. Box 3836*
*Baton Rouge, LA  70821*
*(225) 342-1128*
*Fax: (225) 342-2232*
*kimberly.sullivan@la.gov*

**Appx 102**



**From:** Schubel, Jessica L. (CMS/CMCS) [mailto:Jessica.Schubel@cms.hhs.gov]
**Sent:** Sunday, September 18, 2016 6:35 PM
**To:** Kimberly Sullivan; Kress, Marielle J. (CMS/CMCS); Wachino, Victoria (CMS/CMCS)
**Cc:** Lee, Gia (OS/OGC); Kimberly Humbles; Stephen Russo
**Subject:** RE: CMS letter dated 8/11/16 to Louisiana

Ms. Sullivan,

Apologies for the delayed response, but we will provide a one-week extension. Your response is due Tuesday, September 27th.

Thanks,
Jessica

Jessica Schubel
Senior Policy Advisor
Office of the Director, Center for Medicaid and CHIP Services

**From:** Kimberly Sullivan [mailto:Kimberly.Sullivan@LA.GOV]
**Sent:** Thursday, September 15, 2016 10:30 AM
**To:** Kress, Marielle J. (CMS/CMCS) <Marielle.Kress@cms.hhs.gov>; Wachino, Victoria (CMS/CMCS)
<Victoria.Wachino1@cms.hhs.gov>
**Cc:** Lee, Gia (OS/OGC) <Gia.Lee@hhs.gov>; Schubel, Jessica L. (CMS/CMCS) <Jessica.Schubel@cms.hhs.gov>;
Kimberly Humbles <Kimberly.Humbles@LA.GOV>; Stephen Russo <Stephen.Russo@LA.GOV>
**Subject:** RE: CMS letter dated 8/11/16 to Louisiana

Ms. Kress and Ms. Wachino,

In light of the 5th Circuit ruling in the Planned Parenthood case yesterday, we are asking for a further extension to respond to this letter so the State can re-evaluate the actions taken in this case.

Sincerely,

*Kimberly Sullivan*
*LDH Deputy General Counsel*
*628 N. 4th Street*
*P.O. Box 3836*
*Baton Rouge, LA 70821*
*(225) 342-1128*
*Fax: (225) 342-2232*
*kimberly.sullivan@la.gov*



3

**Appx 103**

**From:** Kress, Marielle J. (CMS/CMCS) [mailto:Marielle.Kress@cms.hhs.gov]
**Sent:** Friday, September 02, 2016 2:59 PM
**To:** Kimberly Sullivan; Kimberly Humbles; Stephen Russo; Jen Steele
**Cc:** Wachino, Victoria (CMS/CMCS); Lee, Gia (OS/OGC); Schubel, Jessica L. (CMS/CMCS)
**Subject:** RE: CMS letter dated 8/11/16 to Louisiana

Ms. Sullivan,

Vikki asked me to respond to you on her behalf. We are granting you the two week extension you requested. Your response is due on Tuesday, September 20th.

Thanks,
Marielle

**Marielle Kress**
Senior Advisor
Office of the Director, Center for Medicaid and CHIP Services
224-234-7913 (blackberry) | marielle.kress@cms.hhs.gov

**From:** Kimberly Sullivan [mailto:Kimberly.Sullivan@LA.GOV]
**Sent:** Friday, September 2, 2016 1:18 PM
**To:** Wachino, Victoria (CMS/CMCS) <Victoria.Wachino1@cms.hhs.gov>
**Cc:** Kimberly Humbles <Kimberly.Humbles@LA.GOV>; Stephen Russo <Stephen.Russo@LA.GOV>; Steele, Jen <Jen.Steele@LA.GOV>
**Subject:** CMS letter dated 8/11/16 to Louisiana

Ms. Wachino,

The Department is in receipt of your letter dated August 11, 2016 in regards to the State's decision to terminate its Medicaid provider agreements with Planned Parenthood Gulf Coast. Currently, our response is due on September 6, 2016. Due to recent flooding events and the fact that this issue is currently in litigation, we would like to request a two week extension in which to respond.

Sincerely,

*Kimberly Sullivan*
*LDH Deputy General Counsel*
*628 N. 4ᵗʰ Street*
*P.O. Box 3836*
*Baton Rouge, LA 70821*
*(225) 342-1128*
*Fax: (225) 342-2232*
*kimberly.sullivan@la.gov*



**Appx 104**

# EXHIBIT 4

**St. John, Joseph**

---

| | |
|---|---|
| **From:** | St. John, Joseph |
| **Sent:** | Tuesday, July 26, 2022 4:24 PM |
| **To:** | 'clientsolutions@uslegalsupport.com' |
| **Cc:** | 'Lollar, Tirzah' |
| **Subject:** | USA v. Planned Parenthood, No. 2:21-cv-22 (N.D. Tex.) - AG Landry Subpoena Response |
| **Attachments:** | 2022.07.26 Non-Party AG Landry Subpoena Response.pdf |

Sir or Madame:

Per my telephone conversation with the Baton Rouge office of U.S. Legal Support, please see the attached subpoena response on behalf of Louisiana Attorney General Jeff Landry.

Best regards,
Scott



**Joseph Scott St. John**
Deputy Solicitor General
Office of Attorney General Jeff Landry
Tel: (225) 485-2458
stjohnj@ag.louisiana.gov
www.AGJeffLandry.com

Appx 106

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* | ) | |
| ALEX DOE, Relator, *et al.*, | ) | |
| | ) | Civil Action No. 2:21-22 |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PLANNED PARENTHOOD FEDERATION | ) | |
| OF AMERICA, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | | |

**NON-PARTY LOUISIANA ATTORNEY GENERAL JEFF LANDRY'S**
**RESPONSES AND OBJECTIONS**
**TO DEFENDANT PLANNED PARENTHOOD GULF COAST, INC.'S SUBPOENA**

Pursuant to the Federal Rules of Civil Procedure, non-party Louisiana Attorney General Jeff Landry ("AG Landry"), in his official capacity hereby provides his responses and objections to the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action ("the Subpoena") issued by Defendant Planned Parenthood Gulf Coast, Inc. ("PPGC").

**PRELIMINARY STATEMENT AND OFFER TO MEET AND CONFER**

Defendant PPGC's subpoena to non-party AG Landry appears to largely seek files from prior litigation involving PPGC. The relevance of the facts underlying that litigation to this litigation is dubious, at best. To the extent documents regarding AG Landry's prior litigation on behalf of the Louisiana Department of Health are relevant and not privileged, those documents are presumably in PPGC's possession. Several requests that don't target the Louisiana Department of Justice's litigation files facially seek documents providing legal advice or analysis; and other requests seek documents that are in the possession, custody, or control of the named parties, such

1

that propounding those requests to a non-party is generally improper. AG Landry notes PPGC appears to have propounded more document requests—35—on non-party AG Landry than it has on actual parties: only 15 requests to the relator, and only 20 requests to the State of Texas. *See* Dkt. 131-1, 132-1.

PPGC's subpoena as a whole is over broad, unduly burdensome, and not proportional to the needs of this case. It reflects an utter failure to "take reasonable steps to avoid imposing undue burden or expense" on non-party AG Landry. Fed. R. Civ. P. 45(d)(1). In view of the vast overbreadth and undue burden posed by PPGC's subpoena, AG Landry will not search for or produce documents other than claims data, *see* Request Nos. 32-34, until the parties confer and agree on the scope of a reasonable search.

## GENERAL OBJECTIONS

1.      AG Landry objects to the Subpoena, and each request, definition, and instruction therein to the extent that it is inconsistent with or attempts to impose burdens or obligations on AG Landry beyond those imposed by the Federal Rules of Civil Procedure and applicable law. AG Landry will comply with the Federal Rules of Civil Procedure, but assumes no further obligations in responding to the Subpoena.

2.      AG Landry objects to the Subpoena and each request, definition, and instruction therein to the extent that it seeks information that is protected from disclosure by the attorney-client privilege, work product doctrine, deliberative process privilege, common interest privilege, or any other applicable privilege or protection such as HIPAA ("privileged information"). The inadvertent disclosure of privileged information in response to these requests shall not be deemed a waiver of any privilege as to any privileged information inadvertently disclosed or any other information or documents relating to the subject matter of any inadvertently disclosed privileged

2

information.   To the extent any privileged information that is requested (a) is not otherwise objectionable, (b) was created or modified prior to August 3, 2015 (when LDH notified PPGC it was terminating PPG's Medicaid provider agreements), or alternatively August 25, 2015 (when PPGC sued LDH), or alternatively September 15, 2015 (when LDH terminated PPGC's Medicaid provider agreements), or alternatively February 5, 2021 (when relator filed this lawsuit), and (c) was transmitted to or received from outside the Louisiana Department of Justice, it will be identified in a privilege log of withheld documents, which shall be provided at a reasonable date in the future after the parties meet and confer.

3.    AG Landry asserts that documents not transmitted outside the Louisiana Department of Justice are categorically privileged under the attorney-client privilege, work product doctrine, and/or deliberative process privilege, and that requiring non-party AG Landry to search for, review, and prepare a log of such documents is not proportional to the needs of the case. AG Landry will neither search for nor prepare a log of such internal LADOJ documents.

4.    AG Landry objects to the Subpoena and each request, definition, and instruction therein as overbroad, unduly burdensome, and oppressive to the extent that it seeks documents or information that: (a) are already in PPGC's possession, custody, or control; (b) do not exist or are unlikely to be in AG Landry's possession, custody, or control; (c) are equally or more readily available from sources other than AG Landry; (d) PPGC can obtain from other sources that are more convenient, less burdensome, and/or less expensive than requiring non-party AG Landry to search for and provide the documents or information.

5.    AG Landry objects to the Subpoena and each request, definition, and instruction therein to the extent they call for information that is protected by HIPAA or is confidential by law.

6.      AG Landry objects to the Subpoena and each request, definition, and instruction therein as overbroad, unduly burdensome, and oppressive to the extent it seeks production of "all" documents, especially when supplemented by terms such as "including," "concerning," "relating to," or the like. AG Landry similarly objects to searching for and producing draft documents as unduly burdensome and beyond the scope of permissible discovery, particularly given AG Landry's status as a non-party. *See* Fed. R. Civ. P. 26(b)(1). AG Landry will produce such final, non-privileged documents as are located after a reasonable search.

7.      AG Landry objects to the Subpoena and each request, definition, and instruction therein to the extent that it:

     a.   is unduly burdensome, oppressive, overly broad, ambiguous, confusing, or vague;

     b.   is duplicative or unreasonably cumulative of other requests or discovery;

     c.   calls for AG Landry to draw a legal conclusion in order to respond; or

     d.   seeks disclosure of information that is the confidential information of, proprietary to, or the trade secret of, a third party to whom AG Landry owes a duty of confidentiality, or is protected by court order.

8.      AG Landry objects to the Subpoena and each request, definition, and instruction therein to the extent that it seeks information or documents that are not relevant to any claim or defense asserted in this action or otherwise beyond the scope of permissible discovery in this action.

9.      AG Landry objects to the Subpoena and each request, definition, and instruction therein to the extent that it does not specify a time period or seeks to impose an unreasonable time period.

4

**Appx 110**

10.     AG Landry's responses to these requests shall not be construed in any way as an admission that any definition provided by PPGC is either factually correct or legally binding upon AG Landry.

11.     AG Landry objects to each request, definition, and instruction to the extent that they contain numerous subparts, are compound, pose multiple requests and/or questions, and thereby render the set of requests unduly burdensome.

12.     AG Landry objects to the Subpoena and each request, definition, and instruction therein to the extent it uses words and phrases that are vague, ambiguous, not defined in an understandable manner, requires subjective knowledge, or involves issues of law subject to resolution by the court. To the extent feasible, AG Landry will interpret the terms and phrases used in the Subpoena as those terms and phrases are understood by AG Landry.

13.     AG Landry objects to the Subpoena and each request, definition, and instruction therein to the extent it seeks documents or things in a manner other than the manner in which such documents or things are kept in the usual course of business.

14.     AG Landry objects to the 35 request (plus numerous subparts) subpoena as facially overbroad, unduly burdensome, oppressive, and inconsistent with PPGC's and the issuing attorney's responsibility to take reasonable steps to avoid imposing undue burden or expense, particularly given AG Landry's status as a non-party. *See* Fed. R. Civ. P. 45(d)(1). Indeed, AG Landry notes that cursory investigation reveals that numerous requests are not applicable to AG Landry. AG Landry reserves the right to seek to quash the Subpoena, seek a protective order, seek cost shifting, and/or seek other relief.

15.     AG Landry objects to the Subpoena and each request, definition, and instruction therein as overly broad, unduly burdensome, and oppressive to the extent it seeks data found on

email, backup media, voicemails, PDAs, or mobile phones.  Pursuant to Fed. R. Civ. P. 45(e)(1), data found on email, backup media, voicemails, PDAs, and mobile phones will not be searched or produced. AG Landry identifies these sources of ESI as not reasonably accessible because of undue burden and cost particularly given AG Landry's status as a non-party.

16.     AG Landry objects to the Subpoena and each request, definition, and instruction therein as overly broad, unduly burdensome, oppressive, and outside the scope of discovery to the extent it seeks the production of metadata. Pursuant to Fed. R. Civ. P. 45(e)(1), metadata will not be searched or produced. AG Landry identifies metadata as not reasonably accessible because of undue burden and cost, particularly given AG Landry's status as a non-party.

17.     AG Landry objects to the specified time of production, particularly given the vast breadth of the Subpoena. After the parties agree on a reasonable scope of resposnes, AG Landry will conduct a reasonable search for responsive documents and will produce such responsive, nonprivileged documents as are located at a mutually convenient time and place, or via electronic transmission to the attorney who issued the Subpoena. AG Landry will produce responsive claims data, if any is located, in coming days.

## OBJECTIONS TO SPECIFIC DEFINITIONS

1. AG Landry objects to the definition of "Louisiana," "you," and "your" as vague and ambiguous to the extent it requires knowledge about agencies, offices, divisions, or departments other than the Louisiana Department of Justice, or the identities of persons acting on their behalf. AG Landry will respond based on his understanding of these terms. AG Landry objects to this term as used in the subpoena to the extent it purports to require him to search for or produce documents outside of his possession, custody, or control.

2. AG Landry objects to the definition of "Texas" as vague and ambiguous to the extent it

6

requires knowledge about the relationships of Texas, Texas agencies, other entities, persons, or persons acting on their behalf. AG Landry will respond based on his understanding of that term.

3. AG Landry objects to the term "Relator" as vague and ambiguous because no name is provided.

8. AG Landry objects to the term "Center for Medical Progress" as vague and ambiguous to the extent it requires knowledge about the relationships of other entities, persons, or persons acting on their behalf. AG Landry will respond based on his understanding of that term.

10. AG Landry objects to the term "David Daleiden" as vague and ambiguous to the extent it requires knowledge of knowledge about the relationships of other entities, persons, or persons acting on their behalf. AG Landry will respond based on his understanding of that term.

12. AG Landry objects to the term "Government" as vague and ambiguous to the extent it requires knowledge of knowledge about the relationships of other entities, persons, or persons acting on their behalf. AG Landry will respond based on his understanding of that term.

13. AG Landry objects to the term "Medicaid" as vague and ambiguous to the extent it requires knowledge of knowledge about the relationships of other entities, persons, or persons acting on their behalf. AG Landry will respond based on his understanding of that term.

14. AG Landry objects to the term "Texas Medicaid" as vague and ambiguous to the extent it requires knowledge of knowledge about the relationships of other entities, persons, or persons acting on their behalf. AG Landry will respond based on his understanding of that term.

15. AG Landry objects to the term "Louisiana Medicaid" as vague and ambiguous to the extent it requires knowledge of knowledge about the relationships of other entities, persons, or persons acting on their behalf. AG Landry will respond based on his understanding of that term.

16. AG Landry objects to the term "generally accepted medical standards" as vague and

ambiguous to the extent it is based on someone else's subjective understanding. AG Landry will respond based on his understanding of that term.

17. AG Landry objects to the term "fetal tissue procurement" as vague and ambiguous to the extent it is based on someone else's subjective understanding. AG Landry will respond based on his understanding of that term.

20. AG Landry objects to the term "overpayment" as vague and ambiguous to the extent it is based on someone else's subjective understanding. AG Landry will respond based on his understanding of that term.

## RESPONSES AND OBJECTIONS TO SPECIFIC REQUESTS

### REQUEST NO. 1:

All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to PPGC's Louisiana Medicaid status from 2010 to the present including but not limited to:
a. documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to whether PPGC remains a Louisiana Medicaid Provider after November 23, 2020; and
b. documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to whether PPGC remains a Louisiana Medicaid Provider after January 20, 2022.

### RESPONSE TO REQUEST NO. 1:

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry objects to this request to the extent it seeks privileged information. AG Landry objects to this request as overbroad, unduly burdensome, compound, indecipherable, and beyond the scope of discovery, particularly to the extent it seeks "all documents . . . related to . . . including by not limited to . . . ." multiple subjects. AG Landry objects to this request as over broad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks (a) publicly available documents or (b) documents in the possession of the parties.

Subject to the foregoing general and specific objections, AG Landry is willing to meet

8

and confer regarding an appropriate scope of non-privileged documents to search for in response

to this request.

**REQUEST NO. 2:**

All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to Louisiana's consideration and decision to terminate any Planned Parenthood Defendant from Louisiana Medicaid based on grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about August 3, 2015 (attached as Ex. A) or grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about September 15, 2015 (attached as Ex. B) including but not limited to:

a. documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to the August 11, 2016 letter from Vikki Wachino, Director, Centers for Medicare & Medicaid Services, addressed to Jen Steele, Medicaid Director, State of Louisiana, Department of Health and Hospitals (attached as Ex. C).and Louisiana's response to that letter on September 27, 2016 (attached as Ex. D); and

b. documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to the basis for Louisiana's termination/revocation of the Louisiana Medicaid Provider Agreements with PPGC, including but not limited to the alleged "mispresentations" by PPGC referenced in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about September 15, 2015 (attached as Ex. B).

**RESPONSE TO REQUEST NO. 2:**

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry

objects to this request to the extent it seeks privileged information. AG Landry objects to this

request as overbroad, unduly burdensome, compound, indecipherable, and beyond the scope of

discovery, particularly (a) to the extent it seeks "all documents . . . related to . . . including by not

limited to . . . ." multiple subjects, (b) as it seeks documents of marginal or no relevance, and (c)

to the extent it seeks documents that are publicly available or available from the parties.

Subject to the foregoing general and specific objections, AG Landry is willing to meet and

confer regarding an appropriate scope of non-privileged documents to search for in response to

this request.

## REQUEST NO. 3:

Documents sufficient to identify the instances when Louisiana "terminated other types of providers for similar violations of these provisions" as referenced in Louisiana's response to Question No. 2 in its September 27, 2016 response (attached as Ex. D). Your response should include for each termination, documents sufficient to identify the provider that was terminated, the date of the termination, the reason for the termination, the date of the conduct that resulted in the termination, whether the provider was asked or obligated to return any amounts reimbursed under Medicaid or Louisiana Medicaid, whether the provider did return any amounts reimbursed under Medicaid or Louisiana Medicaid, and the amount of any reimbursements that were returned.

## RESPONSE TO REQUEST NO. 3:

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry objects to this request to the extent it seeks privileged information. AG Landry objects to this request as inherently subjective in seeking "documents sufficient to identify" various circumstances. AG Landry objects to this request as overbroad, unduly burdensome, beyond the scope of discovery, and disproportionate to the needs of the case in seeking documents related to termination of providers other than any Defendant, *i.e.*, documents that are either marginally relevant or not relevant to the claims and defenses in this case.

Subject to the foregoing general and specific objections, AG Landry will neither search for nor produce documents in response to this request.

## REQUEST NO. 4:

All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about August 3, 2015 (Ex. A).

## RESPONSE TO REQUEST NO. 4:

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry objects to this request to the extent it seeks privileged information. AG Landry objects to this

10

request as unduly burdensome and disproportionate to the needs of the case, particularly (a) as it seeks documents of marginal or no relevance, and (b) to the extent it seeks documents available from the parties or publicly available documents.

Subject to the foregoing general and specific objections, AG Landry is willing to meet and confer regarding an appropriate scope of non-privileged documents to search for in response to this request.

**REQUEST NO. 5:**

All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to Louisiana's decision to rescind the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about August 3, 2015 (Ex. A).

**RESPONSE TO REQUEST NO. 5:**

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry objects to this request to the extent it seeks privileged information. AG Landry objects to this request as overbroad, unduly burdensome, and beyond the scope of discovery, particularly to the extent it seeks "all documents . . . related to . . ." a subject. AG Landry objects to this request as unduly burdensome and disproportionate to the needs of the case particularly (a) as it seeks documents of marginal or no relevance, and (b) to the extent it seeks documents available from the parties or publicly available documents.

Subject to the foregoing general and specific objections, AG Landry is willing to meet and confer regarding an appropriate scope of non-privileged documents to search for in response to this request.

**REQUEST NO. 6:**

All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or

11

about September 15, 2015 (Ex. B).

**RESPONSE TO REQUEST NO. 6:**

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry objects to this request to the extent it seeks privileged information. AG Landry objects to this request as overbroad, unduly burdensome, and beyond the scope of discovery to the extent it seeks "all documents . . . related to . . ." a subject. AG Landry objects to this request as overbroad, unduly burdensome, beyond the scope of discovery, and disproportionate to the needs of the case particularly (a) as it seeks documents of marginal or no relevance, and (b) to the extent it seeks documents available from the parties or publicly available documents.

Subject to the foregoing general and specific objections, AG Landry will produce responsive, non-privileged documents if any are located after a reasonable search.

**REQUEST NO. 7:**

All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to Texas's consideration and decision to terminate any Planned Parenthood Defendant from Texas Medicaid based on grounds asserted in the termination notices issued to Planned Parenthood by the Office of Inspector General, Texas Health & Human Services Commission on or about October 19, 2015 and December 20, 2016 (Relator's Compl. [Dkt. 2] Exs. B, C).

**RESPONSE TO REQUEST NO. 7:**

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry objects to this request to the extent it seeks privileged information. AG Landry objects to this request as overbroad, unduly burdensome, and beyond the scope of discovery to the extent it seeks "all documents . . . related to . . ." a subject. AG Landry objects to this request as overbroad, unduly burdensome, beyond the scope of discovery, and disproportionate to the needs of the case particularly (a) as it seeks documents of marginal or no relevance, and (b) to the extent it seeks documents available from the parties or publicly available documents.

Subject to the foregoing general and specific objections, AG Landry will produce responsive, non-privileged documents if any are located after a reasonable search.

**REQUEST NO. 8:**

All documents relating to or reflecting communications with the Center for Medical Progress and/or David Daleiden from 2013 to present.

**RESPONSE TO REQUEST NO. 8:**

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry objects to this request to the extent it seeks privileged information. AG Landry objects to this request as overbroad, unduly burdensome, and beyond the scope of discovery, particularly to the extent it seeks (a) "<u>all</u> documents relating to or reflecting . . . ." or (b) documents available from a party.

Subject to the foregoing general and specific objections, AG Landry is willing to meet and confer regarding an appropriate scope of non-privileged documents to search for in response to this request.

**REQUEST NO. 9:**

All documents related to your decision to not intervene in Relator Doe's case.

**RESPONSE TO REQUEST NO. 9**

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry objects to this request as facially seeking information protected by the attorney-client privilege, work product doctrine, and/or deliberative process privilege. AG Landry objects to this request as overbroad and unduly burdensome to the extent it seeks "all documents related to" a subject.

Subject to the foregoing general and specific objections, AG Landry will not produce documents in response to this request.

13

**REQUEST NO. 10:**

All documents relating to or reflecting communications with any staff, attorneys, or investigators for Louisiana regarding the matters alleged Relator's Complaint, including but not limited to (i) information about any Planned Parenthood Defendant provided to the State of Louisiana by Relator, (ii) the termination of any Planned Parenthood Defendant from Louisiana Medicaid, and (iii) the litigation initiated by any Planned Parenthood Defendant regarding its potential termination from Medicaid, Texas Medicaid, and/or Louisiana Medicaid.

**RESPONSE TO REQUEST NO. 10:**

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry objects to this request as facially seeking information protected by the attorney-client privilege, work product doctrine, and/or deliberative process privilege. AG Landry objects to this request as overbroad, unduly burdensome, vague, and beyond the scope of discovery to the extent it seeks "all documents . . . related to or reflecting communications . . . regarding the matters alleged in Relator's complaint, including but not limited to . . . ." various subjects. AG Landry objects to this request as overbroad, unduly burdensome, beyond the scope of discovery, and harassing to the extent it seeks production of files from prior litigations. AG Landry objects to this request as unduly burdensome and disproportionate to the needs of the case to the extent it seeks documents available from a party or publicly available documents.

Subject to the foregoing general and specific objections, AG Landry will neither search for nor produce documents in response to this request.

**REQUEST NO. 11:**

All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to any fetal tissue procurement or donation in which any Medicaid, Texas Medicaid, or Louisiana Medicaid provider unrelated to Planned Parenthood participated or facilitated or agreed to participate or facilitate.

**RESPONSE TO REQUEST NO. 11:**

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry objects to this request to the extent it seeks privileged information. AG Landry objects to this

14

request as overbroad, unduly burdensome, and beyond the scope of discovery to the extent it seeks "all documents  . . . relating to" various subjects. AG Landry objects to this request as unduly burdensome and disproportionate to the needs of the case to the extent it seeks publicly available documents. AG Landry objects to this request as beyond the scope of discovery and seeking information not relevant to any party's claim or defense.

Subject to the foregoing general and specific objections, AG Landry is willing to meet and confer regarding an appropriate scope of non-privileged documents to search for in response to this request.

### REQUEST NO. 12:

All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to the participation or facilitation or alleged participation or facilitation of any Planned Parenthood Defendant in any fetal tissue procurement or donation.

### RESPONSE TO REQUEST NO. 12:

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry objects to this request to the extent it seeks privileged information. AG Landry objects to this request as overbroad, unduly burdensome, and beyond the scope of discovery to the extent it seeks (a) "all documents  . . . relating to" multiple subjects, (b) documents of no relevance or marginal relevance, or (c) documents that are available from a party or publicly available.

Subject to the foregoing general and specific objections, AG Landry is willing to meet and confer regarding an appropriate scope of non-privileged documents to search for in response to this request.

### REQUEST NO. 13:

All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to whether participation or an agreement to participate in any fetal tissue procurement or donation renders a Medicaid provider unqualified to provide service under Medicaid, Texas Medicaid, or Louisiana Medicaid.

**RESPONSE TO REQUEST NO. 13:**

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry objects to this request as facially seeking information protected by the attorney-client privilege, work product doctrine, and/or deliberative process privilege. AG Landry objects to this request as overbroad, unduly burdensome, and beyond the scope of discovery to the extent it seeks "all documents . . . related to" a legal position. AG Landry objects to this request as overbroad, unduly burdensome, beyond the scope of discovery, and harassing to the extent it seeks production of files from prior litigations. AG Landry objects to this request as unduly burdensome and disproportionate to the needs of the case to the extent it seeks publicly available documents.

Subject to the foregoing general and specific objections, AG Landry will not search for or produce documents in response to this request.

**REQUEST NO. 14:**

All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to federal court injunctions and/or the effects of federal court injunctions related to the potential termination of any Planned Parenthood Defendant's participation in Medicaid, Texas Medicaid, and/or Louisiana Medicaid.

**RESPONSE TO REQUEST NO. 14:**

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry objects to this request as facially seeking information protected by the attorney-client privilege, work product doctrine, and/or deliberative process privilege. AG Landry objects to this request as overbroad, unduly burdensome, and beyond the scope of discovery to the extent it seeks "all documents . . . relating to" a legal position. AG Landry objects to this request as overbroad, unduly burdensome, beyond the scope of discovery, disproportionate to the needs of the case, and harassing to the extent it seeks production of (a) files from prior litigations, (b) documents that are available from a party or publicly available.

16

Subject to the foregoing general and specific objections, AG Landry is willing to meet and confer regarding an appropriate scope of non-privileged documents to search for in response to this request.

## REQUEST NO. 15:

All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to state court injunctions and/or the effects of a state court injunction related to the potential termination of any Planned Parenthood Defendant's participation in Medicaid, Texas Medicaid, and/or Louisiana Medicaid.

## RESPONSE TO REQUEST NO. 15:

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry objects to this request as facially seeking information protected by the attorney-client privilege, work product doctrine, and/or deliberative process privilege. AG Landry objects to this request as overbroad, unduly burdensome, and beyond the scope of discovery to the extent it seeks "all documents . . . relating to" a legal position. AG Landry objects to this request as overbroad, unduly burdensome, beyond the scope of discovery, disproportionate to the needs of the case, and harassing to the extent it seeks production of (a) files from prior litigations, (b) documents that are available from a party or publicly available.

Subject to the foregoing general and specific objections, AG Landry will not search for or produce documents in response to this request.

## REQUEST NO. 16:

All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to whether termination of PPGC violated Medicaid's free choice of provider requirement and why or why not.

## RESPONSE TO REQUEST NO. 16:

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry objects to this request as facially seeking information protected by the attorney-client privilege,

work product doctrine, and/or deliberative process privilege. AG Landry objects to this request as overbroad, unduly burdensome, and beyond the scope of discovery to the extent it seeks "all documents . . . relating to" a legal position. AG Landry objects to this request as overbroad, unduly burdensome, beyond the scope of discovery, disproportionate to the needs of the case, and harassing to the extent it seeks production of (a) files from prior litigations, (b) documents that are available from a party or publicly available.

Subject to the foregoing general and specific objections, AG Landry will not search for or produce documents in response to this request.

**REQUEST NO. 17:**

All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to the continued participation of any Planned Parenthood Defendant in Medicaid, Texas Medicaid, and/or Louisiana Medicaid.

**RESPONSE TO REQUEST NO. 17:**

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry objects to this request to the extent it seeks privileged information. AG Landry objects to this request as overbroad, unduly burdensome, and beyond the scope of discovery to the extent it seeks (a) "all documents . . . relating to" multiple subjects or (b) documents that are available from a party or publicly available.

Subject to the foregoing general and specific objections, AG Landry is willing to meet and confer regarding an appropriate scope of non-privileged documents to search for in response to this request.

**REQUEST NO. 18:**

All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to whether any Planned Parenthood Defendant had an obligation to repay any amount paid by Medicaid, Texas Medicaid, and/or Louisiana Medicaid to any Planned Parenthood Affiliate.

**RESPONSE TO REQUEST NO. 18:**

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry objects to this request as facially seeking information protected by the attorney-client privilege, work product doctrine, and/or deliberative process privilege. AG Landry objects to this request as overbroad, unduly burdensome, and beyond the scope of discovery to the extent it seeks "all documents . . . related to" a legal position. AG Landry objects to this request as overbroad, unduly burdensome, beyond the scope of discovery, disproportionate to the needs of the case, and harassing to the extent it seeks production of (a) files from prior litigations, (b) documents that are available from a party or publicly available.

Subject to the foregoing general and specific objections, AG Landry will not search for or produce documents in response to this request.

**REQUEST NO. 19:**

All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to whether Medicaid, Texas Medicaid, and/or Louisiana Medicaid could or should seek recoupment of amounts reimbursed to any Planned Parenthood Defendant from 2010 to the present.

**RESPONSE TO REQUEST NO. 19:**

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry objects to this request as facially seeking information protected by the attorney-client privilege, work product doctrine, and/or deliberative process privilege. AG Landry objects to this request as overbroad, unduly burdensome, and beyond the scope of discovery to the extent it seeks "all documents . . . relating to" a legal position. AG Landry objects to this request as overbroad, unduly burdensome, beyond the scope of discovery, disproportionate to the needs of the case, and harassing to the extent it seeks production of (a) files from prior litigations, (b) documents that are available from a party or publicly available.

19

Subject to the foregoing general and specific objections, AG Landry will not search for or produce documents in response to this request.

**REQUEST NO. 20:**

All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to termination by the United States, Texas, or Louisiana of any Medicaid provider unrelated to Planned Parenthood for violations of laws or regulations related to medical research, fetal tissue procurement or donation, or an agreement to engage in fetal tissue procurement or donation, including but not limited to whether any terminated federal, Texas, or Louisiana Medicaid provider was asked or obligated to return amounts reimbursed under federal, Texas, or Louisiana Medicaid.

**RESPONSE TO REQUEST NO. 20:**

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry objects to this request to the extent it seeks privileged information. AG Landry objects to this request as overbroad, unduly burdensome, vague incomprehensible, and beyond the scope of discovery, particularly to the extent it seeks "all documents . . . related to . . . related to . . . including but not limited to" multiple subjects. AG Landry objects to this request as overbroad, unduly burdensome, beyond the scope of discovery, and disproportionate to the needs of the case particularly (a) as it seeks documents of marginal or no relevance, and (b) to the extent it seeks documents available from the parties or publicly available documents.

Subject to the foregoing general and specific objections, AG Landry will not search for or produce documents in response to this request.

**REQUEST NO. 21:**

All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to termination by the United States, Texas, and/or Louisiana of any Medicaid, Texas Medicaid, or Louisiana Medicaid provider on basis that the entity was not a qualified provider, including but not limited to whether any terminated Medicaid provider was asked or obligated to return amounts reimbursed under Medicaid.

**RESPONSE TO REQUEST NO. 21:**

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry objects to this request to the extent it seeks privileged information. AG Landry objects to this request as overbroad, unduly burdensome, vague incomprehensible, and beyond the scope of discovery, particularly to the extent it seeks "all documents . . . related to . . . including but not limited to" multiple subjects. AG Landry objects to this request as overbroad, unduly burdensome, beyond the scope of discovery, and disproportionate to the needs of the case particularly (a) as it seeks documents of marginal or no relevance, and (b) to the extent it seeks documents available from the parties or publicly available documents.

Subject to the foregoing general and specific objections, AG Landry will not search for or produce documents in response to this request.

**REQUEST NO. 22:**

All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to your understanding of relationships between affiliated companies under Medicaid, Texas Medicaid, or Louisiana Medicaid and any laws, regulations, policies, or guidance regarding whether and how a finding that one company is not a qualified provider may affect an affiliated company's qualifications as a provider.

**RESPONSE TO REQUEST NO. 22:**

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry objects to this request as facially seeking information protected by the attorney-client privilege, work product doctrine, and/or deliberative process privilege. AG Landry objects to this request as overbroad, unduly burdensome, and beyond the scope of discovery to the extent it seeks "all documents . . . related to" a legal positions on multiple subjects. AG Landry objects to this request as overbroad, unduly burdensome, beyond the scope of discovery, disproportionate to the needs of the case, and harassing to the extent it seeks production of (a) files from prior litigations, (b) documents that are available from a party or publicly available.

21

Subject to the foregoing general and specific objections, AG Landry will not search for or produce documents in response to this request.

**REQUEST NO. 23:**

All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to your views regarding whether a payment, to which a Medicaid provider is entitled at the time of payment, can become an overpayment based on a subsequent change in law and/or a judicial decision. *See, e.g.,* Centers for Medicare & Medicaid Services, Medicare Program; Reporting and Returning of Overpayments, 81 Fed. Reg. 7653, 7658 (Feb. 12, 2016) ("We agree that payments that were proper at the time the payment was made do not become overpayments at a later time due to changes in law or regulation, unless otherwise required by law.").

**RESPONSE TO REQUEST NO. 23:**

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry objects to this request as facially seeking information protected by the attorney-client privilege, work product doctrine, and/or deliberative process privilege. AG Landry objects to this request as overbroad, unduly burdensome, and beyond the scope of discovery to the extent it seeks "all documents . . . related to" AG Landry's views on a legal position. AG Landry objects to this request as overbroad, unduly burdensome, beyond the scope of discovery, disproportionate to the needs of the case, and harassing to the extent it seeks production of (a) files from prior litigations, (b) documents that are available from a party or publicly available.

Subject to the foregoing general and specific objections, AG Landry will not search for or produce documents in response to this request. AG Landry does, however, direct your attention to La. R.S. 14:17.

**REQUEST NO. 24:**

All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to any Planned Parenthood Affiliate's qualifications to provide services under Medicaid, Texas, Medicaid, and/or Louisiana Medicaid.

**RESPONSE TO REQUEST NO. 24:**

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry objects to this request to the extent it seeks privileged information. AG Landry objects to this request as overbroad, unduly burdensome, and beyond the scope of discovery to the extent it seeks "all documents . . . relating to" multiple subjects. AG Landry objects to this request as unduly burdensome and disproportionate to the needs of the case to the extent it seeks publicly available documents.

Subject to the foregoing general and specific objections, AG Landry is willing to meet and confer regarding an appropriate scope of non-privileged documents to search for in response to this request.

**REQUEST NO. 25:**

All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to information provided by you to the U.S. Congress related to any Planned Parenthood Defendant from 2015 to present regarding any Planned Parenthood Defendant's qualifications to provide service under Medicaid, Texas Medicaid, and/or Louisiana Medicaid; any Planned Parenthood Defendant's termination in Texas and/or Louisiana; continued participation of any Planned Parenthood Defendant in Louisiana Medicaid; whether participation in fetal tissue procurement or donation or agreeing to participate in fetal tissue procurement or donation renders a Medicaid provider unqualified to provide service under Medicaid, Texas Medicaid, or Louisiana Medicaid; and whether Medicaid, Texas Medicaid, and/or Louisiana Medicaid could or should seek recoupment for amounts reimbursed to any Planned Parenthood Defendant from 2010 to the present.

**RESPONSE TO REQUEST NO. 25:**

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry objects to this request to the extent it seeks privileged information. AG Landry objects to this request as overbroad, unduly burdensome, and beyond the scope of discovery to the extent it seeks "all documents . . . related to" multiple subjects. AG Landry objects to this request as unduly burdensome and disproportionate to the needs of the case to the extent it seeks documents that are

available from a party or publicly available.

Subject to the foregoing general and specific objections, AG Landry is willing to meet and confer regarding an appropriate scope of non-privileged documents to search for in response to this request.

**REQUEST NO. 26:**

All communications between Louisiana and the Media relating to any Planned Parenthood Defendant's qualifications to provide service under Medicaid, Texas Medicaid, and/or Louisiana Medicaid; any Planned Parenthood Defendant's termination in Texas and/or Louisiana; continued participation of any Planned Parenthood Defendant in Louisiana Medicaid; whether participation in fetal tissue procurement or donation or an agreement to participate in fetal tissue procurement or donation renders a Medicaid provider unqualified to provide service under Medicaid, Texas Medicaid, or Louisiana Medicaid; and whether Medicaid, Texas Medicaid, and/or Louisiana Medicaid could or should seek recoupment for amounts reimbursed to any Planned Parenthood Defendant from 2010 to the present.

**RESPONSE TO REQUEST NO. 26:**

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry objects to this request to the extent it seeks privileged information. AG Landry objects to this request as overbroad, unduly burdensome, vague, and beyond the scope of discovery, and disproportionate to the needs of the case to the extent it seeks (a) "all communications . . . relating to" multiple subjects, (b) documents not relevant or marginally relevant to the claims or defenses of any party, or (c) documents that are available from a party or publicly available.

Subject to the foregoing general and specific objections, AG Landry is willing to meet and confer regarding an appropriate scope of non-privileged documents to search for in response to this request.

**REQUEST NO. 27:**

All documents or videos (both edited and unedited) provided to Louisiana by Relator, the Center for Medical Progress, or third parties acting on Relator's behalf, including staff, attorneys, or investigators.

**RESPONSE TO REQUEST NO. 27:**

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry objects to this request to the extent it seeks privileged information. AG Landry objects to this request as overbroad, unduly burdensome, vague, and beyond the scope of discovery, and disproportionate to the needs of the case to the extent it seeks (a) "all documents . . . provided," (b) documents not relevant or marginally relevant to the claims or defenses of any party, or (c) documents that are available from a party or publicly available. AG Landry further objects that this request facially seeks documents in the possession, custody, or control of a party.

Subject to the foregoing general and specific objections, AG Landry is willing to meet and confer regarding an appropriate scope of non-privileged documents to search for in response to this request.

**REQUEST NO. 28:**

All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to Louisiana's evaluation of the Center for Medical Progress videos, including but not limited to your response(s) to those videos and any public official or other public agency's response(s) to those videos.

**RESPONSE TO REQUEST NO. 28:**

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry objects to this request to the extent it seeks privileged information. AG Landry objects to this request as overbroad, unduly burdensome, vague, and beyond the scope of discovery, and disproportionate to the needs of the case to the extent it seeks (a) "all documents . . . relating to . . . including but not limited to" various subjects (b) documents not relevant or marginally relevant to the claims or defenses of any party, or (c) documents that are available from a party or publicly available.

Subject to the foregoing general and specific objections, AG Landry is willing to meet and

25

confer regarding an appropriate scope of non-privileged documents to search for in response to this request.

**REQUEST NO. 29:**

All communications between Louisiana and the Media relating to the Center for Medical Progress videos.

**RESPONSE TO REQUEST NO. 29:**

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry objects to this request as overbroad, unduly burdensome, vague, and beyond the scope of discovery, and disproportionate to the needs of the case to the extent it seeks (a) "all communications" on a subject, (b) documents not relevant or marginally relevant to the claims or defenses of any party, or (c) documents that are publicly available. AG Landry objects to this request to the extent it seeks documents outside of his possession, custody, or control.

Subject to the foregoing general and specific objections, AG Landry is willing to meet and confer regarding an appropriate scope of non-privileged documents to search for in response to this request.

**REQUEST NO. 30:**

All communications between Louisiana and members of the United States Congress (including their staff) related to the Center for Medical Progress videos.

**RESPONSE TO REQUEST NO. 30:**

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry objects to this request as overbroad, unduly burdensome, vague, and beyond the scope of discovery, and disproportionate to the needs of the case to the extent it seeks (a) "all communications . . . related to" a subject, (b) documents not relevant or marginally relevant to the claims or defenses of any party, or (c) documents that are publicly available.

Subject to the foregoing general and specific objections, AG Landry is willing to meet and confer regarding an appropriate scope of non-privileged documents to search for in response to this request.

**REQUEST NO. 31:**

All documents (including, but not limited to, communications involving one of your personnel and any other person or persons) related to allegations that Planned Parenthood submitted claims to the United States, Texas, or Louisiana in violation of the Louisiana Medical Assistance Programs Integrity Law based on grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about August 3, 2015 (Ex. A) or grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about September 15, 2015 (Ex. B).

**RESPONSE TO REQUEST NO. 31:**

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry objects to this request to the extent it seeks privileged information. AG Landry objects to this request as overbroad, unduly burdensome, vague, beyond the scope of discovery, and disproportionate to the needs of the case to the extent it seeks (a) "all documents . . . related to" multiple subjects, (b) documents not relevant or marginally relevant to the claims or defenses of any party, or (c) documents that are publicly available. AG Landry objects to this request to the extent it seeks documents outside of his possession, custody, or control.

Subject to the foregoing general and specific objections, AG Landry is willing to meet and confer regarding an appropriate scope of non-privileged documents to search for in response to this request.

**REQUEST NO. 32:**

Documents sufficient to identify the Louisiana Medicaid claims for which Louisiana Medicaid paid any Planned Parenthood Defendant from 2010 to present, for which (a) you have concluded that the claim was submitted in violation of the Louisiana Medical Assistance Programs Integrity Law based on grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about August 3, 2015 {Ex. A) or grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of

27

Health and Hospitals on or about September 15, 2015 {Ex. B); and/or (b) you believe that the claim was submitted in violation of the Louisiana Medical Assistance Programs Integrity Law based on grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about August 3, 2015 (Ex. A) or grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about September 15, 2015 (Ex. B), excluding patient names, patient dates of birth, patient marital status, insured names, insured dates of birth, insured marital status, or other patient information.

## RESPONSE TO REQUEST NO. 32:

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry objects to this request to the extent it seeks privileged information. AG Landry objects to this request as vague and requiring subjective interpretation in seeking "documents sufficient to identify." AG Landry objects to this request as requiring legal analysis or opinion. AG Landry objects to this request as seeking documents or information already in the possession, custody, or control of the Planned Parenthood Defendants.

Subject to the foregoing general and specific objections, AG Landry will produce responsive, non-privileged claims data if any is located after a reasonable search.

## REQUEST NO. 33:

Documents sufficient to identify all unpaid Louisiana Medicaid claims that any Planned Parenthood Defendant presented or caused to be presented to Louisiana Medicaid from 20IO to present, for which (a) you have concluded that the claim was submitted in violation of the Louisiana Medical Assistance Programs Integrity Law based on grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about August 3, 2015 (Ex. A) or grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about September 15, 2015 (Ex. B); and/or (b) you believe that the claim was submitted in violation of the Louisiana Medical Assistance Programs Integrity Law based on grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about August 3, 2015 (Ex. A) or grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about September 15, 2015 (Ex. B), excluding patient names, patient dates of birth, patient marital status, insured names, insured dates of birth, insured marital status, or other patient information.

**RESPONSE TO REQUEST NO. 33:**

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry objects to this request to the extent it seeks privileged information. AG Landry objects to this request as vague and requiring subjective interpretation in seeking "documents sufficient to identify." AG Landry objects to this request as requiring legal analysis or opinion. AG Landry objects to this request as seeking documents or information already in the possession, custody, or control of the Planned Parenthood Defendants.

Subject to the foregoing general and specific objections, AG Landry will produce responsive, non-privileged claims data if any is located after a reasonable search.

**REQUEST NO. 34:**

Documents sufficient to identify all Medicaid claims for which Medicaid paid any Planned Parenthood Defendant from 2010 to present, for which: (a) you have concluded that the Planned Parenthood Defendant has an obligation to repay the claim(s); and/or (b) you believe the Planned Parenthood Defendant has an obligation to repay the claim(s), excluding patient names, patient dates of birth, patient marital status, insured names, insured dates of birth, insured marital status, or other patient information.

**RESPONSE TO REQUEST NO. 34:**

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry objects to this request to the extent it seeks privileged information. AG Landry objects to this request as vague and requiring subjective interpretation in seeking "documents sufficient to identify." AG Landry objects to this request as requiring legal analysis or opinion. AG Landry objects to this request as seeking documents or information already in the possession, custody, or control of the Planned Parenthood Defendants.

Subject to the foregoing general and specific objections, AG Landry will produce responsive, non-privileged claims data if any is located after a reasonable search.

**REQUEST NO. 35:**

Documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to the materiality of the alleged participation of any Medicaid, Texas Medicaid, or Louisiana Medicaid provider in fetal tissue procurement or donation or agreement to participate in fetal tissue procurement or donation to the payment of claims to that provider under Medicaid, Texas Medicaid, or Louisiana Medicaid.

**RESPONSE TO REQUEST NO. 35:**

AG Landry incorporates his General Objections as if fully set forth herein. AG Landry objects to this request as facially seeking information protected by the attorney-client privilege, work product doctrine, and/or deliberative process privilege. AG Landry objects to this request as overbroad, unduly burdensome, and beyond the scope of discovery to the extent it seeks "documents . . . relating to" a legal determination on multiple subjects. AG Landry objects to this request as overbroad, unduly burdensome, beyond the scope of discovery, disproportionate to the needs of the case, and harassing to the extent it seeks production of (a) files from prior litigations, (b) documents that are available from a party or publicly available.

Subject to the foregoing general and specific objections, AG Landry will not search for or produce documents in response to this request.

Dated: July 26, 2022

Respectfully submitted:

/s/ Joseph S. St. John
JOSEPH S. ST. JOHN (LSB 36682)
 *Deputy Solicitor General*
LOUISIANA DEPT. OF JUSTICE
909 Poydras Street, Suite 1850
New Orleans, LA 70112
stjohnj@ag.louisiana.gov
tel: 225-485-2458

# EXHIBIT 5



**State of Louisiana**
DEPARTMENT OF JUSTICE
OFFICE OF THE ATTORNEY GENERAL
P.O. BOX 94005
BATON ROUGE
70804-9005

Jeff Landry
Attorney General

August 2, 2022

<u>*Via Electronic Mail*</u>

Ms. Tirzah Lollar
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, NW
Washington, DC 20001

Tirzah.Lollar@arnoldporter.com

  **Re:**  *U.S. ex rel Alex Roe v. Planned Parenthood*, **2:21-cv-22-Z (N.D. Tex.)**

Ms. Lollar:

  I write to memorialize our telephonic meet-and-confer of earlier today regarding Attorney General Jeff Landry's Responses and Objections to your subpoena. You and Kara Daniels participated for Defendants; I participated for Attorney General Landry. Our conversation lasted from 2:32 p.m. until 2:57 p.m.

**RECIPIENT OF SUBPOENA**

  Early in our conversation, we discussed the target of the subpoena. You stated that Defendants position is that the subpoena is directed to the entire State of Louisiana. I disagreed, noting that the subpoena facially identifies "Attorney General Jeff Landry" as "the person to whom [the] subpoena is directed."

  We briefly discussed La. R.S. 13:5107(A)(1), which you previously identified as the basis for your position that Defendants have served the State of Louisiana. You again claimed you "served the State" and pointed to that statute. In response to my inquiry, you acknowledged Defendants have not served any Louisiana agency other than the Attorney General. I explained that Defendants therefore have not complied with La. R.S. 13:5107(A)(1), and, in any event, federal case law rejects proceeding in that manner.

  You then claimed that the identity of the person to whom the subpoena is directed is "just a procedural issue," and you indicated that—given Attorney General Landry's position—the call would likely be a short one. We did, however, discuss a handful of individual requests.

**REQUEST NO. 1:**

  All documents (including, but not limited to, communications involving one of your

**Appx 138**

personnel and any other person or persons) related to PPGC's Louisiana Medicaid status from 2010 to the present including but not limited to:

  a. documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to whether PPGC remains a Louisiana Medicaid Provider after November 23, 2020; and

  b. documents (including, but not limited to, communications involving one of your personnel and any other person or persons) relating to whether PPGC remains a Louisiana Medicaid Provider after January 20, 2022.

## DISCUSSION OF REQUEST NO. 1:

I explained there has been extensive litigation regarding PPGC's Medicaid status, and Request No. 1 appeared to broadly cover materials connected with that litigation.[1] Further, the bulk of documents in the Attorney General's possession would be privileged, produced in that litigation (and thus already in Defendants' possession), or publicly filed (and thus already in Defendants' possession and also publicly available). I explained that burdening the State's law firm with a massive search of its litigation-related documents seemed unduly burdensome and disproportionate to the needs of your case. You did not dispute that point.

You did, however, assert that the time period for Request No. 1 extends beyond the time period of that litigation. I explained that any documents in the Attorney General's possession related to PPGC's Medicaid status subsequent to the start of the other litigation (which remains ongoing) would almost certainly be privileged and related to the provision of legal advice.

## REQUEST NO. 8:

All documents relating to or reflecting communications with the Center for Medical Progress and/or David Daleiden from 2013 to present.

## DISCUSSION OF REQUEST NO. 8:

You began by questioning the basis for Attorney General Landry's privilege objection. In response to my query, you confirmed that Mr. Daleiden is the relator in this case. I explained that any documents responsive to this request may be subject to the common interest privilege or work product doctrine, and that any documents created by Louisiana Department of Justice attorneys "relating to or reflecting communications" with Mr. Daleiden would almost certainly be work product. I made clear, however, that we have not searched for documents given Attorney General Landry's overarching overbreadth, undue burden, relevance, proportionality, and Rule 45(d)(1) objections.

---

[1] *See Planned Parenthood of Gulf Coast, Inc. v. Kliebert*, 141 F.Supp. 3d 604 (M.D. La. 2015) (granting preliminary injunction), *aff'd sub nom Planned Parenthood of Gulf Coast, Inc. v. Gee*, 862 F.3d 445 (5th Cir. 2017), *rehearing en banc denied by an equally divided court* 876 F.3d 699 (5th Cir. 2017), *cert denied* 139 S.Ct. 408 (2018); *see also Planned Parenthood of Greater Texas v. Kauffman*, 981 F.3d 347, 369-70 (5th Cir. 2020) ("The en banc court is today overruling the decision of a panel of this court in *Planned Parenthood of Gulf Coast, Inc. v. Gee*."). That litigation remains ongoing.

2

I inquired about the relevance of Request No. 8. You only identified a "public disclosure bar" defense in response.

## REQUEST NO. 9:

All documents related to your decision to not intervene in Relator Doe's case.

## DISCUSSION OF REQUEST NO. 9:

You confirmed that Request No. 9 covers "anything the State considered" in its decision. I explained that any such documents in Attorney General Landry's possession would almost certainly be privileged. You noted that a document is not privileged just because a lawyer reviews it. I explained that while that may be true as a general matter, in this context, the selection of documents would implicate work product. I further noted that searching the files of the State's law firm for documents that are available elsewhere seemed highly and unduly burdensome.

## REQUEST NO. 29:

All communications between Louisiana and the Media relating to the Center for Medical Progress videos.

## DISCUSSION OF REQUEST NO. 29:

I inquired about the relevance of Request No. 29. You again only identified a "public disclosure bar" defense in response.

I noted this request in particular seemed unduly burdensome given that any communications would presumably have resulted in a publication. You acknowledged that "we could look, of course," but you hypothesized that a publication might have been deleted.

## CLAIMS DATA (REQUEST NOS. 31-34)

At the end of our discussion, we discussed claims data. I again acknowledged that informal inquiries indicate investigators may have claims data. You responded that based on Attorney General Landry's objection to performing legal analysis, you don't think that data is responsive to Defendants' requests, and if Attorney General Landry is standing on that objection, there is nothing to produce and we should not bother our investigators.

* * * * *

After our discussion of claims data, you indicated that further discussion was unlikely to be fruitful, and the meet-and-confer ended.

* * * * *

If this memorialization is in any way inaccurate, please promptly let me know.

**Appx 140**

Best regards,

Joseph Scott St. John
 Deputy Solicitor General

4

# EXHIBIT 17

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

|  |  |
|---|---|
| PLANNED PARENTHOOD GULF COAST, INC., *et al*., <br><br>    Plaintiffs, <br><br>      *v.* <br><br> COURTNEY PHILLIPS, in her official capacity as Secretary of the Louisiana Department of Health, <br><br>    Defendant. | CIVIL ACTION <br><br> NO. 15-00565-JWD |

## ORDER

Considering the Notice of Voluntary Dismissal, (Doc. 131);

**IT IS ORDERD** that (1) the injunction entered in this case (Doc. 64) is hereby VACATED; (2) the Motion to Lift Stay, set a Briefing Schedule on Rule 12 Motions, and vacate Preliminary Injunction filed by Defendant Courtney Phillips, in her official capacity as Secretary of the Louisiana Department of Health (Doc. 123) is DENIED AS MOOT; and (3) the claims by Plaintiffs against Defendant are VOLUNTARILY DISMISSED WITH PREJUDICE.

Signed in Baton Rouge, Louisiana, on <u>November 10, 2022</u>.


_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

# EXHIBIT 18

**St. John, Joseph**

| | |
|---|---|
| **From:** | St. John, Joseph |
| **Sent:** | Wednesday, November 30, 2022 5:12 PM |
| **To:** | 'Lollar, Tirzah'; Pieper, Megan |
| **Subject:** | RE: US ex rel Doe v. Planned Parenthood, No. 2:21-cv-22 (N.D. Tex.) |

Tirzah:

Thank you for taking the time to chat. Our call lasted from 4:00 until approximately 4:15. I spoke on behalf of LDH; you spoke on behalf of Plaintiffs.

At the start of our call, I alerted you the invalidity of Planned Parenthood's subpoenas to LDH, Mr. Russo, and Ms. Sullivan for failure to tender witness fees and mileage. I pointed you to *In re Dennis*, 330 F.3d 696 (5th Cir. 2003), as controlling law on this issue. I then explained that district courts in the Fifth Circuit have repeatedly quashed or refused to enforce subpoenas that are delivered without the required fees. To make the situation clean, I asked you to withdraw Planned Parenthood's subpoenas to LDH, Mr. Russo, and Ms. Sullivan; you refused to do so. You asked if the witnesses would appear; I responded that no valid subpoena has been served, so LDH would not produce witnesses.

Turning to dates, I noted the dates Planned Parenthood set for the depositions were after the November 30 close of discovery. You responded that "the parties agreed to take depositions after the close of discovery." I explained that I have seen the Court's scheduling order, but I have not seen an order authorizing late depositions. You pointed to an order authorizing a deposition of Ms. Linton after the close of discovery. You then insisted "the parties had agreed" to post-close depositions. I explained that LDH was not involved in any such agreement, and it was only aware of the scheduling order.

I next explained that under Fifth Circuit law, Rule 45 subpoenas are subject to sovereign immunity. I directed you to *Russell v. Jones*, 49 F.4th 507 (5th Cir. 2022). You asked me to "break it down" for you. I explained that LDH is an agency of the State of Louisiana; LDH is therefore subject to sovereign immunity, as are its employees. Under *Russell*, that sovereign immunity applies to Rule 45 subpoenas. I further explained that sovereign immunity can be raised at any time, including for the first time before the Supreme Court. You acknowledged that Louisiana is "not actually a party," but you insisted Planned Parenthood is entitled to non-party discovery from Louisiana.

We next discussed Planned Parenthood's subpoenas to Mr. Russo and Ms. Sullivan. You appeared aware that both Mr. Russo and Ms. Sullivan are attorneys. With respect to Ms. Sullivan, you stated she is a "fact witness" because she sent a letter to CMS. With respect to Mr. Russo, you stated he is a "fact witness" with knowledge regarding a termination that was prospectively withdrawn. For both, you stated that you "don't intend to go into privileged information" during any deposition. You repeatedly refused to elaborate on what specific information you sought from Mr. Russo and Ms. Sullivan. When I asked what Planned Parenthood had done to get that information from other sources, you merely pointed to Planned Parenthood's document subpoena and public records request to LDH, then stated "some information you just can't get from documents."

Turning to Planned Parenthood's subpoena to LDH, I noted that much of the subpoena is directed to facts underlying LDH's termination of Planned Parenthood, and I asked you to explain the relevance. You responded that the Relator alleges all of Planned Parenthood Gulf Coast's claims reimbursements going back to 2010 are false because PPGC is not a qualified provider. Planned Parenthood seeks discovery of LDH's view of whether PPGC is a qualified provider. With respect to how LDH treated other providers, you asserted that it is relevant to materiality under *Escobar*.

At the end of our call, you said you would need to consult with your client, but you would get back to us.

**Appx 145**

I trust this is an accurate recounting of our conversation.

Best regards,
Scott

 **Joseph Scott St. John**
Deputy Solicitor General
Office of Attorney General Jeff Landry
Tel: (225) 485-2458
stjohnj@ag.louisiana.gov
www.AGJeffLandry.com

**From:** Lollar, Tirzah <Tirzah.Lollar@arnoldporter.com>
**Sent:** Wednesday, November 30, 2022 9:48 AM
**To:** St. John, Joseph <StJohnJ@ag.louisiana.gov>; Pieper, Megan <Megan.Pieper@arnoldporter.com>
**Subject:** RE: US ex rel Doe v. Planned Parenthood, No. 2:21-cv-22 (N.D. Tex.)

*CAUTION:  This email originated outside of Louisiana Department of Justice.  Do not click links or open attachments unless you recognize the sender and know the content is safe.*

Sure.  We can talk today at 4pm CST.  If that works, what number should we call for you?

_____
Tirzah Lollar
Partner | Bio

**Arnold & Porter**
601 Massachusetts Ave., NW
Washington,  DC 20001-3743
T: +1 202.942.6199
Tirzah.Lollar@arnoldporter.com
www.arnoldporter.com | LinkedIn | Twitter

**From:** St. John, Joseph <StJohnJ@ag.louisiana.gov>
**Sent:** Wednesday, November 30, 2022 10:15 AM
**To:** Lollar, Tirzah <Tirzah.Lollar@arnoldporter.com>; Pieper, Megan <Megan.Pieper@arnoldporter.com>
**Subject:** US ex rel Doe v. Planned Parenthood, No. 2:21-cv-22 (N.D. Tex.)

External E-mail

Tirzah and Megan:

If you have a minute, I'd appreciate a quick call regarding Planned Parenthood's deposition subpoenas to LDH, Ms. Sullivan, and Mr. Russo. I'm generally available after 2pm Central.

Best regards,
Scott



**Joseph Scott St. John**

Deputy Solicitor General
Office of Attorney General Jeff Landry
Tel: (225) 485-2458
stjohnj@ag.louisiana.gov
www.AGJeffLandry.com

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. To reply to our e-mail administrator directly, please send an e-mail to postmaster@ag.state.la.us.

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

For more information about Arnold & Porter, click here:
http://www.arnoldporter.com

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

**Appx 147**

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

UNITED STATES OF AMERICA *ex rel.*    )
   ALEX DOE, Relator, *et al.*,          )
                                  )    Civil Action No. 2:21-22
         Plaintiffs         )
                                  )
v.                                    )
                                  )
PLANNED PARENTHOOD FEDERATION   )
OF AMERICA, INC., *et al.*,        )
                                  )
         Defendants.       )

**DECLARATION OF LDH ATTORNEY KIMBERLY SULLIVAN**

I serve as Deputy General Counsel for the Louisiana Department of Health ("LDH"). I make this declaration in support of LDH's Motion for a Protective Order and to Quash in the above-captioned litigation. I have personal knowledge of the facts stated herein.

1.       I earned a juris doctor from the Louisiana State University in 2001. I was then admitted to the practice of law in 2001.

2.       From 2004 through 2010 and from 2012 through the present, I have been employed as an in-house attorney for LDH.

3.       On August 15, 2015, Planned Parenthood Gulf Coast, Inc. ("PPGC") filed a complaint in the Middle District of Louisiana challenging LDH's termination of PPGC's Medicaid provider agreements. Compl. (Dkt. 1), *Planned Parenthood Gulf Coast, Inc. v. Kliebert*, No. 3:15-cv-565 (M.D. La.) ("the Louisiana action"). A true and accurate copy of PPGC's complaint is attached as Exhibit 6, as obtained from Westlaw.

4.       On August 26, 2015, Stephen Russo and I appeared as counsel of record for LDH in the Louisiana action. Mr. Russo and I remained counsel of record through PPGC's November

1

9, 2022, voluntary dismissal with prejudice of the Louisiana action. A true and accurate copy of PPGC's notice of dismissal is attached as Exhibit 7, as obtained from Westlaw.

5.      Documents LDH filed in 2015 in the Louisiana action identified non-attorney fact witnesses with personal knowledge regarding the Louisiana Medicaid program and LDH's termination of PPGC as a Medicaid provider. *See* Declaration of Secretary Kathy Kliebert (Dkt. 13-1), *Planned Parenthood Gulf Coast, Inc. v. Kliebert*, No. 3:15-cv-565 (M.D. La.); Declaration of Ruth Kennedy (Dkt. 13-2); Amended Decl. of Ruth Kennedy (Dkt. 34-2), *Planned Parenthood Gulf Coast, Inc. v. Kliebert*, No. 3:15-cv-565 (M.D. La.). LDH's production of documents in connection with this litigation also identify non-attorney fact witnesses. To the best of my knowledge, Planned Parenthood has not sought to depose any of those fact witnesses.

6.      Although I from time-to-time signed outgoing correspondence, my knowledge of the events related PPGC's status as a Medicaid provider generally derives from my provision of legal advice to LDH and my development of information to further LDH's litigation positions. I believe that my deposition testimony on matters related to PPGC's status as a Medicaid provider (including its termination as a Medicaid provider) would largely consist of declining to answer questions on the basis of attorney-client privilege, the work product doctrine, and/or deliberative process.

7.      Attached as Exhibit 8 is a true and accurate copy of a public records request received by LDH.

8.      Attached as Exhibits 9 – 12 are true and accurate copies of subpoena responses and objections.

9.      Attached as Exhibit 13 is a true and accurate copy correspondence received by LDH, as obtained from LDH files kept in the ordinary course of LDH's business.

2

10.     Attached as Exhibit 14 is a true and accurate copy of a document subpoena received

by LDH.

11.     Further declarant sayeth naught.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED
STATES OF AMERICA AND THE STATE OF LOUISIANA THAT THE FOREGOING IS
TRUE AND CORRECT.

Executed in Baton Rouge, Louisiana, this 30th day of November 2022.

KIMBERLY SULLIVAN
LA. DEPT. OF HEALTH

3

# EXHIBIT 6

## IN THE U.S. DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF LOUISIANA

PLANNED PARENTHOOD GULF COAST,
INC.; JANE DOE #1; JANE DOE #2; and
JANE DOE #3,

               Plaintiffs,

      v.

KATHY KLIEBERT, Secretary, Louisiana
Department of Health and Hospitals,

              Defendant.

No. 3:15-cv-00565

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiffs, by and through their attorneys, bring this Complaint against the above-named

Defendant, her employees, agents, delegatees, and successors in office, and in support thereof

state the following:

## INTRODUCTORY STATEMENT

1.      This civil action is brought pursuant to 42 U.S.C. § 1983 to vindicate rights

secured by the federal Medicaid statutes, as well as the U.S. Constitution.

2.      Plaintiff Planned Parenthood Gulf Coast, Inc. ("PPGC") provides critically

needed family planning and preventive health services to thousands of women and men in

underserved Orleans and East Baton Rouge Parishes through the Medicaid program. As is

required by federal law, Medicaid enrollees may seek services from a participating provider of

their choice and have those services covered by Medicaid. Plaintiffs Jane Doe #1, Jane Doe #2,

and Jane Doe #3 are such women – patients of PPGC who are enrolled in Medicaid and who

**Appx 152**

prefer PPGC to other Medicaid providers. Louisiana Medicaid does not pay for abortions except in extremely narrow circumstances, and PPGC has not to date provided abortions in Louisiana at all.

3.      On August 3, 2015, without giving any warning or expressing any previous concerns about PPGC's participation in the Medicaid program, Defendant Kathy Kliebert, Secretary of the Louisiana Department of Health and Hospitals ("DHH") notified PPGC that DHH was terminating PPGC's Medicaid provider agreements, effective 30 days after the date of the notice. While the notice gave no reason for the termination, Governor Jindal referred in a press release that same day to heavily edited and misleading videos that opponents of Planned Parenthood have recently released with regard to Planned Parenthood's abortion practice in other states, and stated that he terminated the agreements because "Planned Parenthood does not represent the values of the State of Louisiana in regards to respecting human life." Press Release, Office of La. Governor Bobby Jindal, Governor Jindal Announces the Termination of Medicaid Contract with Planned Parenthood (Aug. 3, 2015), http://gov.louisiana.gov/index.cfm?md=newsroom&tmp=detail&articleID=5061. Notably, nothing in Governor Jindal's press release relates to the quality of Medicaid services provided by PPGC.

4.      Plaintiffs seek declaratory and injunctive relief to protect PPGC's patients' access to – and PPGC's own ability to provide – these critical medical services. Defendant's actions violate Section 1396a(a)(23) of Title 42 of the United States Code ("Medicaid freedom of choice provision") because, by barring PPGC from the Medicaid program, it prevents PPGC's patients, including Plaintiffs Jane Doe #1, Jane Doe #2, and Jane Doe #3, from receiving services from the qualified, willing provider of their choice. Defendant's actions further impermissibly

Appx 153

penalize Plaintiffs without adequate justification, in violation of the First and Fourteenth

Amendments, and deprive Plaintiff PPGC of property without sufficient due process.

5.      Unless enjoined, the termination of PPGC's Medicaid provider agreements will

take effect on September 2, 2015, immediately disqualifying PPGC from providing basic and

preventive health care services to over 5200 Louisiana women and men who depend on that care.

Defendant's actions will cause significant and irreparable harm to PPGC and to its Medicaid

patients, including Plaintiffs Jane Doe #1, Jane Doe #2, and Jane Doe #3, who will lose their

provider of choice, will find their family planning services interrupted, and will be left with few

or no alternative providers.

## JURISDICTION AND VENUE

6.      Subject-matter jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and

1343.

7.      Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C.

§§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the

general legal and equitable powers of this Court.

8.      Venue in this judicial district is proper under 28 U.S.C. § 1391.

## THE PARTIES

**A.      Plaintiffs**

9.      Plaintiff PPGC is a not-for-profit corporation organized under the laws of Texas

and licensed to do business in Louisiana. PPGC brings this action on behalf of itself and its

Louisiana patients.

10.     PPGC (or predecessor organizations) have provided high quality reproductive

health care for more than 30 years in Louisiana.  PPGC operates two health centers in Louisiana,

- 3 -

one in New Orleans and one in Baton Rouge, and participates in the Medicaid program,

providing medical services to low-income enrollees in both underserved communities. The

family planning and other preventive health services provided by PPGC at these and its other

health centers include physical exams, contraception and contraceptive counseling, screening for

breast cancer, screening and treatment for cervical cancer, testing and treatment for certain

sexually transmitted infections ("STIs"), pregnancy testing and counseling, and certain

procedures including colposcopy.

     11.     PPGC does not provide abortions in Louisiana. (An organization affiliated with

PPGC, Planned Parenthood Center for Choice, provides abortions only in Texas.)

     12.     In fiscal year (FY) 2014, PPGC provided more than 15,000 health care visits to

over 10,000 women, men and teens in New Orleans and Baton Rouge. Nearly 75% of those

visits were for patients enrolled in Medicaid in Baton Rouge, and nearly 40% of the visits in

New Orleans were for Medicaid patients. Those numbers have only increased in the last year–

over 60% of PPGC's Louisiana visits are currently for patients enrolled in the Medicaid

program.

     13.     During the FY 2014 visits, PPGC provided over 2100 well women exams, over

1200 pap smears, over 11,000 tests for STIs, and over 4100 long acting reversible contraceptives,

implant contraceptives, and injectible contraceptives to its Medicaid patients.

     14.     PPGC has been an excellent Medicaid provider. Indeed, PPGC was audited by the

State Legislative Auditor in 2014, pursuant to a politically motivated request from the

legislature, and he concluded that PPGC's Medicaid billings were appropriate and supported.

Letter from Daryl Purpera, La. Legis. Auditor, to Daniel Martiny, La. State Senator, and Frank

Hoffman, La. State Representative (Feb. 19, 2014),

**Appx 155**

http://app.lla.state.la.us/PublicReports.nsf/5256EC014378E02E86257D57005363A0/$FILE/000

37C6C.pdf..

15.     Plaintiff Jane Doe #1, a Louisiana resident and Medicaid patient, obtains her

reproductive health care at PPGC's Baton Rouge health center and desires to continue to do so.

16.     Plaintiff Jane Doe #2, a Louisiana resident and Medicaid patient, obtains her

reproductive health care at PPGC's New Orleans health center and desires to continue to do so.

17.     Plaintiff Jane Doe #3, a Louisiana resident and Medicaid patient, obtains her

reproductive health care at PPGC's Baton Rouge health center and desires to continue to do so.

18.     Plaintiffs Jane Doe #1, Jane Doe #2, and Jane Doe #3 appear pseudonymously

because of the private and personal nature of the medical care that they receive at PPGC, and

their desire not to have that information become public in order for them to assert their legal

rights.

**B.      Defendant**

19.     Defendant Kathy Kleibert is the Secretary of DHH. DHH is the agency that

administers Louisiana's state Medicaid program and has notified PPGC that it intends to

terminate its provider agreement. Defendant Kleibert is sued in her official capacity, as are her

employees, agents, and successors in office.

## THE MEDICAID PROGRAM

**A.      The Medicaid Statute**

20.     The Medicaid program, established under Title XIX of the Social Security Act of

1935, 42 U.S.C. § 1396 *et seq*., pays for medical care for eligible needy people. A state may elect

whether or not to participate; if it chooses to do so, it must comply with the requirements

imposed by the Medicaid statute and by the Secretary of the U.S. Department of Health and

**Appx 156**

Human Services ("HHS") in her administration of Medicaid. *See generally* 42 U.S.C. § 1396a(a)(1)-(83).

21.    To receive federal funding, a participating state must develop a "plan for medical assistance" and submit it to the Secretary of HHS for approval. 42 U.S.C. § 1396a(a).

22.    Among other requirements, the State plan must provide that: "[A]ny individual eligible for medical assistance . . . may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required . . . who undertakes to provide him such services." 42 U.S.C. § 1396a(a)(23)(A).

23.    Congress has singled out family planning services for special additional protections to ensure freedom of choice, specifically providing that, with respect to these services and with certain limited exceptions not applicable here, "enrollment of an individual eligible for medical assistance in a primary care case-management system . . ., a Medicaid managed care organization, or a similar entity shall not restrict the choice of the qualified person from whom the individual may receive services." 42 U.S.C. § 1396a(a)(23)(B).

24.    The federal government reimburses the state of Louisiana 90% of expenditures attributable to offering, arranging, and furnishing family planning services and supplies in Medicaid. 42 U.S.C. § 1396b(a)(5).

**B.    Implementation of the Medicaid Act**

25.    For decades, the Centers for Medicare & Medicaid Services ("CMS"), the agency within HHS that administers Medicaid (and its predecessor organization), has repeatedly interpreted the "qualified" language in Section 1396a(a)(23) to prohibit states from denying access to a provider for reasons unrelated to the ability of that provider to perform Medicaid-

- 6 -

**Appx 157**

covered services or to properly bill for those services, including reasons such as the scope of the medical services that the provider chooses to offer.

26.    CMS has explained that "[t]he purpose of the free choice provision is to allow [Medicaid] recipients the same opportunities to choose among available providers of covered health care and services as are normally offered to the general population." Ctrs. For Medicare & Medicaid Servs., CMS Manuals Publication #45, State Medicaid Manual § 2100.

27.    Consistent with this understanding, CMS has a long history of rejecting state plans that seek to limit the type of provider that can provide particular services. *See, e.g.*, 53 Fed. Reg. 8699 (Mar. 16, 1988) (noting rejection of a state plan that would limit providers to "private nonprofit" organizations); 67 Fed. Reg. 79121 (Dec. 27, 2002) (noting disapproval of a state plan amendment that would have limited "beneficiary choice . . . by imposing standards that are not reasonably related to the qualifications of providers").

28.    More recently, CMS rejected an Indiana plan that barred state agencies from contracting with or making grants to any entities that perform abortion because it violated the Medicaid freedom of choice provision. Letter from Donald M. Berwick, Adm'r., CMS, to Patricia Casanova, Dir., Ind. Office of Medicaid Policy and Planning (June 1, 2011), http://www.politico.com/static/PPM169_110601_indiana_letter.html.

29.    Moreover, even though CMS is permitted to waive § 1396a(a)(23) in demonstration projects approved under Social Security Act § 1115, CMS repeatedly rejects state requests to do so for family planning services, including twice in the last year: first in Pennsylvania, *see* Letter from Marilyn Tavenner, Adm'r, CMS, to Beverly Mackereth, Sec'y, Pa. Dep't of Public Welfare (Aug. 28, 2014), http://www.medicaid.gov/Medicaid-CHIP-Program-Information/By-Topics/Waivers/1115/downloads/pa/pa-healthy-ca.pdf ("No waiver of freedom

of choice is authorized for family planning providers."); and more recently in Iowa, *see* Letter

from Manning Pellanda, Dir., CMS Div. of State Demonstrations and Waivers, to Julie

Lovelady, Interim Medicaid Dir., Iowa Dep't of Human Servs. (Feb. 2, 2015),

http://www.medicaid.gov/Medicaid-CHIP-Program-Information/By-

Topics/Waivers/1115/downloads/ia/ia-marketplace-choice-plan-ca.pdf ("No waiver of freedom

of choice is authorized for family planning providers.").

### JINDAL ADMINISTRATION'S EFFORTS TO EXCLUDE PPGC

30.     On August 3, 2015, without prior notice, Defendant notified PPGC that it was

terminating PPGC's provider agreements, to be effective in 30 days.

31.     Therefore, absent an injunction, Defendant will terminate PPGC's provider

agreements on September 2, 2015.

32.     Defendant's letter provided no reason for the termination of the agreement.

However, that same day, Governor Jindal referred in a press release to heavily edited and

misleading videos that opponents of Planned Parenthood have recently released with regard to

Planned Parenthood's abortion practice in other states. Press Release, Office of Bobby Jindal.

The allegations in the misleading videos that Planned Parenthood abortion providers are

violating the law regarding the use of fetal tissue in scientific research are false.

33.     Governor Jindal further stated that he and DHH "decided to . . . terminate the

Planned Parenthood Medicaid provider contract because Planned Parenthood does not represent

the values of the State of Louisiana in regards to respecting human life." *Id.*

34.     On information and belief, the procedures used by Defendant in terminating

PPGC's provider agreements are highly irregular. Defendant has imposed a sanction of exclusion

**Appx 159**

from Medicaid on PPGC without a finding of a "violation" by PPGC and without providing

PPGC the opportunity for a pre-deprivation hearing as state law requires.

35.     Defendant's action is part and parcel of Governor Jindal's campaign against

abortion and to punish abortion providers, even though the only services PPGC provides in

Louisiana are family planning and other preventive health services to women, men and teens

who need them.

36.     CMS has advised Defendant that her actions to terminate PPGC's provider

agreements likely violate the Medicaid freedom of choice provision.

### THE IMPACT OF DEFENDANT'S ACTIONS ON PPGC AND ITS PATIENTS

37.     The need for publicly supported family planning services is great in Louisiana,

which regularly ranks among the worst states for reproductive care. In 2010, 60% of pregnancies

in Louisiana were unintended. Guttmacher Inst., State Facts About Unintended Pregnancy:

Louisiana (2014), https://www.guttmacher.org/statecenter/unintended-pregnancy/pdf/LA.pdf

(hereafter "State Facts: Louisiana"). The state ranks fifth highest among 50 states in teen

pregnancy rates. Kathryn Kost & Stanley Henshaw, Guttmacher Inst., U.S. Teenage Pregnancies,

Births and Abortions, 2010: National and State Trends by Age, Race and Ethnicity 4 (2014),

http://www.guttmacher.org/pubs/USTPtrends10.pdf. Nearly 80% of Louisiana's unplanned

births are publicly funded, higher than the national average of 68%. State Facts: Louisiana.

Moreover, Louisiana has high rates of STIs: the state ranks first in congenital syphilis and

gonorrhea, second in chlamydia, and third in primary and secondary syphilis. Ctrs. for Disease

Control and Prevention, 2013 Sexually Transmitted Diseases Surveillance, Table 41. Congenital

Syphilis - Reported Cases and Rates of Reported Cases in Infants, by State, Ranked by Rates

(2013) http://www.cdc.gov/std/stats13/tables/41.htm; Table 13. Gonorrhea - Reported Cases and

Rates of Reported Cases by State, Ranked by Rates (2013)

http://www.cdc.gov/std/stats13/tables/13.htm; Table 2. Chlamydia - Reported Cases and Rates of

Reported Cases by State, Ranked by Rates (2013) http://www.cdc.gov/std/stats13/tables/2.htm;

Table 26. Primary and Secondary Syphilis - Reported Cases and Rates of Reported Cases by

State, Ranked by Rates (2013).

38.    As DHH has recognized, "[i]n Louisiana, for 2002, there were an estimated

515,960 women, ages 13 to 44 years, needing contraceptive services and supplies. Of those, 59

percent needed publicly supported services." DHH, East Baton Rouge Parish Health Profile 30

(2005),

http://new.dhh.louisiana.gov/assets/docs/SurveillanceReports/php/PHP2005/PDF/EastBatonRou

ge/PHPEastBatonRouge.pdf (hereinafter "DHH, East Baton Rouge Parish Health Profile"). In

East Baton Rouge Parish alone, DHH estimated in 2005 that of the 54,980 women needing

contraceptive services and supplies, 31,770 (58%) were in need of publicly supported services

and supplies. *Id.*

39.    In spite of the great needs, there are simply not enough providers of the critical

care PPGC provides. PPGC's New Orleans health center is in an area that the federal

government has classified as "medically underserved" based on four variables: 1) the ratio of

primary medical care physicians per 1,000 population, 2) the infant mortality rate, 3) the

percentage of the population with incomes below the poverty level, and 4) the percentage of the

population age 65 or over. Both of PPGC's health centers are in areas classified as a "Primary

Care Health Professional Shortage Area," a designation for areas with a population to full-time

primary care physician ratio of 3500:1 – or a ratio between 3000-3500:1 in areas with unusually

high demand for primary care services – and in which primary care professionals in contiguous

**Appx 161**

areas are practically inaccessible.  *See* U.S. Dep't of Health and Human Servs., *Find Shortage Areas*, Health Resources and Services Administration, http://datawarehouse.hrsa.gov/GeoAdvisor/ShortageDesignationAdvisor.aspx (enter each clinic address and click "submit") (last accessed Aug. 21, 2015); U.S. Dep't of Health and Human Servs., *Guidelines for MUA and MUP Designation*, Health Resources and Services Administration, http://bhpr.hrsa.gov/shortage/muaps/index.html (last accessed Aug. 21, 2015); U.S. Dep't of Health and Human Servs., *Primary Medical Care HPSA Designation Overview*, Health Resources and Services Administration, http://bhpr.hrsa.gov/shortage/hpsas/designationcriteria/primarycarehpsaoverview.html (last accessed Aug. 21, 2015).

40.    With these significant provider shortages, PPGC plays a key role in providing needed care to Louisiana's low-income population, treating over 5200 Louisiana Medicaid patients annually. In East Baton Rouge Parish alone, 5460 female contraceptive clients were served by publicly funded health clinics in 2010, the latest year that data is available; Planned Parenthood—by far the largest provider—served over half (3130) of these women. Guttmacher Inst., Contraceptive Needs and Services, 2010 (2013) http://www.guttmacher.org/pubs/win/2010/WIN-2010-Louisiana.pdf.

41.    Many of PPGC's patients come only to PPGC for their health care. As DHH has itself recognized, "[w]ith the high rate of people living without health insurance in Louisiana, a family planning visit may be the only time that a woman ever has a preventive health clinic visit." DHH, East Baton Rouge Parish Health Profile 28.

42.    If Defendant's actions take effect, many of PPGC's Medicaid patients in Baton Rouge and New Orleans, who already have few or no alternative options, will find it difficult or

**Appx 162**

impossible to access the reproductive health care services they need. Those who are able to find

other providers will often have to wait unacceptable periods of time for an appointment. Those

who are unable to find an adequate alternative will not receive the medical services they need,

which will lead to higher rates of unintended pregnancies, STIs, and undiagnosed cancers.

43.    Other Medicaid providers in Baton Rouge and New Orleans are already stretched

to the breaking point, even with PPGC providing care. It is virtually impossible to locate a

private ob/gyn who will take a Medicaid patient who is not pregnant. At other clinics, it is

difficult to schedule appointments, and even if a patient can obtain one, they may be unable to

obtain the full range of FDA-approved contraceptives, including IUDs and Depo Provera, which

are the most effective forms of birth control. Other clinics are difficult for PPGC's low-income

patients to travel to, or have excessive waits to obtain critical cancer screenings. And, with cuts

and closures at local public hospitals and clinics, it is difficult for low-income patients in need of

medical care to obtain it.

44.    If PPGC is forced to stop providing care in the Medicaid program, a dire situation

will become critical. The remaining providers will be simply unable to absorb PPGC's patients,

leaving those patients without access to critical medical services.

45.    Even if other providers were available, patients insured through Medicaid choose

PPGC based on a number of factors that are generally not available at other providers. With its

evidence-based practices and up-to-date technology, PPGC is known as a provider of high-

quality medical care. Many individuals who receive other health care through community care

providers or other Medicaid providers choose to have a separate provider such as PPGC for their

reproductive health care because they are concerned about their privacy and because they fear

being judged by other providers.

**Appx 163**

46.    In addition, many low-income patients have unique scheduling constraints because they are juggling inflexible work schedules, childcare obligations, transportation challenges, and lack of childcare resources. To ensure that these patients have access to family planning services, PPGC offers extended hours. In addition, PPGC spaces patient appointments so as to minimize wait times. PPGC has either a full-time Spanish speaker on staff or translator services available to non-English speaking patients at all times.

47.    Defendant's actions will deprive all of PPGC's Medicaid patients, including Plaintiffs Jane Doe #1, #2, and #3, of access to the high-quality, specialized care that PPGC provides.

48.    All three individual Plaintiffs rely on PPGC as the place they can turn to for critical medical care and for prompt, efficient, and compassionate services. If PPGC is eliminated from Medicaid, they will be prevented from receiving services from their provider of choice, will have their health care interrupted, and may encounter difficulties finding alternative care.

49.    In FY 2014, PPGC's reimbursements for providing these critical health services to low-income patients totaled nearly $730,000. Without this revenue, PPGC may be unable to continue to provide services in the same manner, and may be forced to lay off staff members, reduce hours, or close the Baton Rouge health center, as Medicaid reimbursements amount to over 60% of the revenue at that health center. Should PPGC ever be allowed back as a Medicaid provider, it would be very expensive – if not impossible – for PPGC to resume operations as they are today. If PPGC closes its Baton Rouge health center, this will affect not only the Medicaid patients at the health center, but all of the patients who seek reproductive health care at that health center.

**Appx 164**

## CLAIMS FOR RELIEF

### CLAIM I – MEDICAID ACT (TITLE XIX OF SOCIAL SECURITY ACT)

50.    Plaintiffs hereby incorporate Paragraphs 1 through 49 above.

51.    Defendant's action violates Section 1396a(a)(23) of Title 42 of the United States

Code by denying PPGC's patients, including the Plaintiffs Jane Doe #1, Jane Doe #2, and Jane

Doe #3, the right to choose any willing, qualified healthcare provider in the Medicaid program.

### CLAIM II – FIRST AND FOURTEENTH AMENDMENTS – PENALIZING CONSTITUTIONALLY PROTECTED ACTIVITY

52.    Plaintiffs hereby incorporate Paragraphs 1 through 49 above.

53.    Defendant's action penalizes Plaintiffs for their constitutionally protected

association with Planned Parenthood and/or abortion, without adequate justification.

### CLAIM III – FOURTEENTH AMENDMENT EQUAL PROTECTION

54.    Plaintiffs hereby incorporate Paragraphs 1 through 49 above.

55.    Defendant's action violates Plaintiffs' rights by singling them out for unfavorable

treatment without adequate justification.

### CLAIM IV – PROCEDURAL DUE PROCESS

56.    Plaintiffs hereby incorporate Paragraphs 1 through 49 above.

57.    Defendant's action to terminate PPGC's provider agreements without pre-

deprivation notice, eliminating over 60% of the revenue of PPGC's Baton Rouge health center

and threatening the future of that health center, deprives PPGC of property without

constitutionally sufficient due process.

**Appx 165**

## RELIEF REQUESTED

WHEREFORE, Plaintiffs request that this Court:

58.    Issue a declaratory judgment that Defendant's action violates the Medicaid Act;

59.    Issue a declaratory judgment that Defendant's action violates the First and

Fourteenth Amendments;

60.    Issue preliminary and permanent injunctive relief, without bond, enjoining

Defendant, her agents, employees, appointees, delegates, or successors from terminating, or

threatening to terminate PPGC's Medicaid provider agreements;

61.    Grant Plaintiffs attorneys' fees, costs and expenses pursuant to 42 U.S.C. § 1988;

and

62.    Grant such further relief as this Court deems just and proper.


Dated:  August 25, 2015


/s/ William E. Rittenberg
William E. Rittenberg
Louisiana State Bar No. 11287
Charles M. (Larry) Samuel
Louisiana State Bar No. 11678
RITTENBERG, SAMUEL AND PHILLIPS, LLC
715 Girod St.
New Orleans, LA 70130-3505
(504) 524-5555
rittenberg@rittenbergsamuel.com
samuel@rittenbergsamuel.com

Carrie Y. Flaxman (*pro hac vice* pending)
PLANNED PARENTHOOD FEDERATION OF
AMERICA
1110 Vermont Ave., NW, Suite 300
Washington, DC 20005
(202) 973-4830
carrie.flaxman@ppfa.org

**Appx 166**

Melissa Cohen (*pro hac vice* pending)
PLANNED PARENTHOOD FEDERATION OF
AMERICA
434 West 33rd Street
New York, NY 10001
(212) 261-4649
melissa.cohen@ppfa.org

*Attorneys for Plaintiffs*
*Planned Parenthood Gulf Coast, Inc., Jane Doe #1,*
*Jane Doe #2, and Jane Doe #3.*

**Appx 167**

# EXHIBIT 7

## IN THE U.S. DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF LOUISIANA

PLANNED PARENTHOOD GULF COAST,
INC.; JANE DOE #1; JANE DOE #2; and
JANE DOE #3

Plaintiffs,

v.

COURTNEY PHILLIPS, Secretary, Louisiana
Department of Health and Hospitals,

Defendant.

No. 3:15-cv-00565-JWD-SCR

## <u>NOTICE OF VOLUNTARY DISMISSAL</u>

Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), Plaintiffs hereby give notice

that the above-captioned action is voluntarily dismissed, with prejudice.  Pursuant to the parties'

settlement agreement, Plaintiffs also hereby request that the injunction in place in this matter be

vacated.

Respectfully submitted,

Dated: November 9, 2022          By:     /s/ Charles M. Samuel III
New Orleans, LA                           Charles M. (Larry) Samuel, III
                                          (Bar # 11678)
                                          Rittenberg, Samuel & Phillips, LLC
                                          1539 Jackson Avenue Suite 115
                                          New Orleans, Louisiana, 70130
                                          T: (504) 524-5555
                                          samuel@rittenbergsamuel.com

**Appx 169**

Carrie Y. Flaxman (admitted *pro hac vice*)
Planned Parenthood Federation of America
1110 Vermont Ave, NW Suite 300
Washington, DC 20005
T: (202) 973-4830
carrie.flaxman@ppfa.org

Christine Clarke (admitted *pro hac vice*)
Reavis Page Jump LLP
41 Madison Avenue
41st Floor
New York, NY 10010
T: (212) 763-4100
Email: CClarke@rpjlaw.com

*Attorneys for Plaintiffs*

**Appx 170**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 9th day of November 2022, a copy of the foregoing has been

served upon all counsel of record in this action by electronic service through the Court's

CM/ECF system.

By:      /s/ Charles M. Samuel III
Charles M. (Larry) Samuel, III

# EXHIBIT 8

# Arnold & Porter

Tirzah Lollar
+1 202 942 6199 Direct
Tirzah.Lollar@arnoldporter.com

August 5, 2022

**VIA ONLINE PORTAL AND VIA CERTIFIED MAIL, RET. REC. REQUESTED**

Louisiana Department of Health
Attn: Public Records Requests
P.O. Box 629
Baton Rouge, LA 70821-0629

      Re:    Public Records Request

Dear Sir or Madam:

Pursuant to Louisiana's Public Records Law, La. R.S. 44:1 *et seq.*, and the Louisiana Constitution of 1974, Article XII, Section 3, I request from the Louisiana Department of Health ("LDH") copies of the following public records within the timeframe provided by Louisiana law:

1. Documents reflecting Planned Parenthood Gulf Coast, Inc.'s ("PPGC") Louisiana Medicaid status, *i.e.*, whether PPGC was a qualified Louisiana Medicaid Provider, from 2010 to the present, including but not limited to documents reflecting whether PPGC remained a Louisiana Medicaid Provider after November 23, 2020 and documents reflecting whether PPGC remains a Louisiana Medicaid Provider after January 20, 2022.

2. All documents and external communications from 2013 to the present related to the termination of PPGC from Louisiana Medicaid, including but not limited to communications between the Louisiana Department of Health with the Centers for Medicare & Medicaid Services related to the August 11, 2016 letter from Vikki Wachino, Director, Centers for Medicare & Medicaid Services, addressed to Jen Steele, Medicaid Director, State of Louisiana, Department of Health and Hospitals and the September 27, 2016 email sent by Kimberly Sullivan, Louisiana Department of Health Deputy General Counsel in response ("LDH Response").

3. Documents sufficient to identify the instances when Louisiana "terminated other types of providers for similar violations of these provisions" as referenced in the LDH Response, from 2010 to the present.

# Arnold&Porter

Louisiana Department of Health
August 5, 2022
Page 2

4. All documents reflecting communications between the Louisiana Department of Health with the Center for Medical Progress and/or David Daleiden from 2013 to present.

5. All documents reflecting information provided by the Louisiana Department of Health to the U.S. Congress regarding PPGC's qualifications to provide service under Medicaid or Louisiana Medicaid; PPGC's termination from Louisiana Medicaid; continued participation of PPGC in Louisiana Medicaid; whether participation in fetal tissue procurement or donation or agreeing to participate in fetal tissue procurement or donation renders a Medicaid provider unqualified to provide service under Medicaid or Louisiana Medicaid; and whether Medicaid or Louisiana Medicaid could or should seek recoupment for amounts reimbursed to PPGC. This request is limited to information provided by the Louisiana Department of Health to the U.S. Congress in connection with the 2015-16 Congressional hearings conducted by the House Judiciary Committee, the Senate Judiciary Committee, the House Energy and Commerce Committee, the House Oversight and Government Reform Committee and the House Subcommittee on Oversight and Investigations.

6. All communications between Louisiana and the media, to include any news organization or mass media organization, including print, internet, television, radio, or other media, from 2010 to the present relating to PPGC's qualifications to provide service under Medicaid or Louisiana Medicaid; PPGC's termination from Louisiana Medicaid; continued participation of PPGC in Louisiana Medicaid; whether participation in fetal tissue procurement or donation or agreeing to participate in fetal tissue procurement or donation renders a Medicaid provider unqualified to provide service under Medicaid or Louisiana Medicaid; and whether Medicaid or Louisiana Medicaid could or should seek recoupment for amounts reimbursed to PPGC.

Please produce all requested records in electronic format via the Records Center. Please produce electronic data in its native format, including all metadata. Also, to the extent you incur any fees for making copies of the above-requested records, please advise and I will provide a check in that amount to your office when the copies are ready for pick up.

Should LDH assert that any of the requested records are not public records pursuant to Louisiana's Public Records Law, please notify me in writing of your determination and the reasons therefor, including a "reference to the basis under law" which you determine

**Appx 174**

# Arnold&Porter

Louisiana Department of Health
August 5, 2022
Page 3

exempts the records, or any part thereof, from inspection, copying, or reproduction, pursuant to the provisions of La. R.S. 44:32(D).

Please contact me if you require additional information or if I can otherwise be of assistance in connection with this request.

Sincerely,

Tirzah S. Lollar

# EXHIBIT 9

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ALEX DOE, Relator, *et al.*, | ) ) ) |
| Plaintiffs | ) ) |
| v. | ) ) |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., *et al.*, | ) ) ) ) |
| Defendants. | |

Civil Action No. 2:21-22

**NON-PARTY LOUISIANA DEPARTMENT OF HEALTH'S
RESPONSES AND OBJECTIONS
TO DEFENDANT PLANNED PARENTHOOD GULF COAST, INC.'S SUBPOENA**

Pursuant to the Federal Rules of Civil Procedure, non-party State of Louisiana Department of Health ("LDH" or the "Department") hereby provides its responses and objections to the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action ("the Subpoena") issued by Defendant Planned Parenthood Gulf Coast, Inc. ("PPGC").

**<u>GENERAL OBJECTIONS</u>**

1.      LDH objects to the Subpoena, and each request, definition, and instruction therein to the extent that it is inconsistent with or attempts to impose burdens or obligations on LDH beyond those imposed by the Federal Rules of Civil Procedure and applicable law. LDH will comply with the Federal Rules of Civil Procedure, but assumes no further obligations in responding to the Subpoena.

2.      LDH objects to the Subpoena and each request, definition, and instruction therein to the extent that it seeks information that is protected from disclosure by the attorney-client

1

privilege, work product doctrine, deliberative process privilege, common interest privilege, or any other applicable privilege or protection such as HIPAA ("privileged information"). The inadvertent disclosure of privileged information in response to these requests shall not be deemed a waiver of any privilege as to any privileged information inadvertently disclosed or any other information or documents relating to the subject matter of any inadvertently disclosed privileged information. To the extent any privileged information that is requested (a) is not otherwise objectionable, (b) was created or modified prior to August 3, 2015 (when LDH notified PPGC it was terminating PPG's Medicaid provider agreements), or alternatively August 25, 2015 (when PPGC sued LDH), or alternatively September 15, 2015 (when LDH terminated PPGC's Medicaid provider agreements), or alternatively February 5, 2021 (when relator filed this lawsuit), and (c) was transmitted to or received from outside the Louisiana Department of Health, it will be identified in a privilege log of withheld documents, which shall be provided at a reasonable date in the future after the parties meet and confer.

3.      LDH asserts that documents not transmitted outside the LDH are categorically privileged under the attorney-client privilege, work product doctrine, and/or deliberative process privilege, and that requiring non-party LDH to search for, review, and prepare a log of such documents is not proportional to the needs of the case. LDH will neither search for nor prepare a log of such internal LDH documents.

4.      LDH objects to the Subpoena and each request, definition, and instruction therein as overbroad, unduly burdensome, and oppressive to the extent that it seeks documents or information that: (a) are already in PPGC's possession, custody, or control; (b) do not exist or are unlikely to be in LDH's possession, custody, or control; (c) are equally or more readily available from sources other than LDH; (d) PPGC can obtain from other sources that are more convenient,

less burdensome, and/or less expensive than requiring non-party LDH to search for and provide the documents or information.

5.      LDH objects to the Subpoena and each request, definition, and instruction therein to the extent they call for information that is protected by HIPAA or is confidential by law.

6.      LDH objects to the Subpoena and each request, definition, and instruction therein as overbroad, unduly burdensome, and oppressive to the extent it seeks production of "all" documents, especially when supplemented by terms such as "including," "concerning," "relating to," or the like. LDH similarly objects to searching for and producing draft documents as unduly burdensome and beyond the scope of permissible discovery, particularly given LDH's status as a non-party. *See* Fed. R. Civ. P. 26(b)(1). LDH will produce such final, non-privileged documents as are located after a reasonable search.

7.      LDH objects to the Subpoena and each request, definition, and instruction therein to the extent that it:

      a.   is unduly burdensome, oppressive, overly broad, ambiguous, confusing, or vague;

      b.   is duplicative or unreasonably cumulative of other requests or discovery;

      c.   calls for LDH to draw a legal conclusion in order to respond; or

      d.   seeks disclosure of information that is the confidential information of, proprietary to, or the trade secret of, a third party to whom LDH owes a duty of confidentiality, or is protected by court order.

8.      LDH objects to the Subpoena and each request, definition, and instruction therein to the extent that it seeks information or documents that are not relevant to any claim or defense asserted in this action or otherwise beyond the scope of permissible discovery in this action.

3

9.      LDH objects to the Subpoena and each request, definition, and instruction therein to the extent that it does not specify a time period or seeks to impose an unreasonable time period.

10.     LDH's responses to these requests shall not be construed in any way as an admission that any definition provided by PPGC is either factually correct or legally binding upon LDH.

11.     LDH objects to each request, definition, and instruction to the extent that they contain numerous subparts, are compound, pose multiple requests and/or questions, and thereby render the set of requests unduly burdensome.

12.     LDH objects to the Subpoena and each request, definition, and instruction therein to the extent it uses words and phrases that are vague, ambiguous, not defined in an understandable manner, requires subjective knowledge, or involves issues of law subject to resolution by the court. To the extent feasible, LDH will interpret the terms and phrases used in the Subpoena as those terms and phrases are understood by LDH.

13.     LDH objects to the Subpoena and each request, definition, and instruction therein to the extent it seeks documents or things in a manner other than the manner in which such documents or things are kept in the usual course of business.

14.     LDH objects to the 27 request (plus numerous subparts) subpoena as facially overbroad, unduly burdensome, oppressive, and inconsistent with PPGC's and the issuing attorney's responsibility to take reasonable steps to avoid imposing undue burden or expense, particularly given LDH's status as a non-party. *See* Fed. R. Civ. P. 45(d)(1). Indeed, LDH notes that cursory investigation reveals that numerous requests are not applicable to LDH. LDH reserves the right to seek to quash the Subpoena, seek a protective order, seek cost shifting, and/or seek other relief.

4

**Appx 180**

15.     LDH objects to the Subpoena and each request, definition, and instruction therein as overly broad, unduly burdensome, and oppressive to the extent it seeks data found on email, backup media, voicemails, PDAs, or mobile phones.  Pursuant to Fed. R. Civ. P. 45(e)(1), data found on email, backup media, voicemails, PDAs, and mobile phones will not be searched or produced. LDH identifies these sources of ESI as not reasonably accessible because of undue burden and cost particularly given LDH's status as a non-party.

16.     LDH objects to the Subpoena and each request, definition, and instruction therein as overly broad, unduly burdensome, oppressive, and outside the scope of discovery to the extent it seeks the production of metadata. Pursuant to Fed. R. Civ. P. 45(e)(1), metadata will not be searched or produced. LDH identifies metadata as not reasonably accessible because of undue burden and cost, particularly given LDH's status as a non-party.

17.     LDH objects to the specified time of production, particularly given the vast breadth of the Subpoena. After the parties agree on a reasonable scope of responses, LDH will conduct a reasonable search for responsive documents and will produce such responsive, nonprivileged documents as are located at a mutually convenient time and place, or via electronic transmission to the attorney who issued the Subpoena. LDH will produce responsive claims data, if any is located, in coming days.

18.     LDH objects to the production of documents under this subpoena because a duplicative public records request under Louisiana's Public Records Law (La. R.S. 44:1 *et seq.*) was submitted to LDH by Defendants Planned Parenthood Federation of America, Inc. *et al*. on August 8, 2022. The public records requests replicate the substance of the Request for Production of Documents contained within the Subpoena, particularly Request for Production Nos. 1, 2, 3, 8, 22, and 23; however, the breadth of the public records requests may encompass the documents

5

sought in all other Requests for Production contained in the Subpoena. In addition to the other objections raised by LDH herein, LDH objects to the production of documents under the Subpoena because such production is duplicative of the public records requests. The duplication of efforts is unduly burdensome to LDH.

## OBJECTIONS TO SPECIFIC DEFINITIONS

1. LDH objects to the definition of "Louisiana," "you," and "your" as vague and ambiguous to the extent it requires knowledge about agencies, offices, divisions, or departments other than the LDH, or the identities of persons acting on their behalf.  LDH will respond based on its understanding of these terms. LDH objects to this term as used in the subpoena to the extent it purports to require it to search for or produce documents outside of its possession, custody, or control.

2. LDH objects to the definition of "Texas" as vague and ambiguous to the extent it requires knowledge about the relationships of Texas, Texas agencies, other entities, persons, or persons acting on their behalf. LDH will respond based on its understanding of that term.

3. LDH objects to the term "Relator" as vague and ambiguous because no name is provided.

4. LDH objects to the term "Center for Medical Progress" as vague and ambiguous to the extent it requires knowledge about the relationships of other entities, persons, or persons acting on their behalf. LDH will respond based on its understanding of that term.

5. LDH objects to the term "David Daleiden" as vague and ambiguous to the extent it requires knowledge of knowledge about the relationships of other entities, persons, or persons acting on their behalf. LDH will respond based on its understanding of that term.

6. LDH objects to the term "Government" as vague and ambiguous to the extent it requires knowledge of knowledge about the relationships of other entities, persons, or persons acting on

6

their behalf. LDH will respond based on its understanding of that term.

7. LDH objects to the term "Medicaid" as vague and ambiguous to the extent it requires knowledge of knowledge about the relationships of other entities, persons, or persons acting on their behalf. LDH will respond based on its understanding of that term.

8. LDH objects to the term "Texas Medicaid" as vague and ambiguous to the extent it requires knowledge of knowledge about the relationships of other entities, persons, or persons acting on their behalf. LDH will respond based on its understanding of that term.

9. LDH objects to the term "Louisiana Medicaid" as vague and ambiguous to the extent it requires knowledge of knowledge about the relationships of other entities, persons, or persons acting on their behalf. LDH will respond based on its understanding of that term.

10. LDH objects to the term "generally accepted medical standards" as vague and ambiguous to the extent it is based on someone else's subjective understanding. LDH will respond based on its understanding of that term.

11. LDH objects to the term "fetal tissue procurement" as vague and ambiguous to the extent it is based on someone else's subjective understanding. LDH will respond based on its understanding of that term.

12. LDH objects to the term "overpayment" as vague and ambiguous to the extent it is based on someone else's subjective understanding. LDH will respond based on its understanding of that term.

## RESPONSES AND OBJECTIONS TO SPECIFIC REQUESTS

### REQUEST NO. 1:

All documents and communications related to PPGC's Louisiana Medicaid status from 2010 to the present including but not limited to whether PPGC remained a Louisiana Medicaid Provider after November 23, 2020 and whether PPGC remains a Louisiana Medicaid Provider after January 20, 2022.

## RESPONSE TO REQUEST NO. 1:

LDH incorporates its General Objections as if fully set forth herein. LDH objects to this request to the extent it seeks privileged information. LDH objects to this request as overbroad, unduly burdensome, compound, indecipherable, and beyond the scope of discovery, particularly to the extent it seeks "all documents . . . related to . . . including but not limited to . . . ." multiple subjects. LDH objects to this request as over broad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks (a) publicly available documents or (b) documents in the possession of the parties. LDH further objects to this request because the information sought is duplicative of a public records request submitted by Defendants.

Subject to the foregoing general and specific objections, LDH will produce responsive, non-privileged documents if any are located after a reasonable search through Defendants' public records request.

## REQUEST NO. 2:

All documents and communications related to Louisiana Department of Health's consideration and decision to terminate PPGC from Louisiana Medicaid based on grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health on or about August 3, 2015 (attached as Ex. A) or grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health on or about September 15, 2015 (attached as Ex. B) including but not limited to:

a. documents and communications related to the August 11, 2016 letter from Vikki Wachino, Director, Centers for Medicare & Medicaid Services, addressed to Jen Steele, Medicaid Director, State of Louisiana, Department of Health (attached as Ex. C).and Louisiana's response to that letter on September 27, 2016 (attached as Ex. D); and

b. documents and communications related to the basis for Louisiana Department of Health's termination/revocation of the Louisiana Medicaid Provider Agreements with PPGC, including but not limited to the alleged "mispresentations" by PPGC referenced in the termination notices issued to Planned Parenthood by the Louisiana Department of Health and Hospitals on or about September 15, 2015 (attached as Ex. B).

**RESPONSE TO REQUEST NO. 2:**

      LDH incorporates its General Objections as if fully set forth herein. LDH objects to this request to the extent it seeks privileged information. LDH objects to this request as overbroad, unduly burdensome, compound, indecipherable, and beyond the scope of discovery, particularly (a) to the extent it seeks "all documents . . . related to . . . including but not limited to . . . ." multiple subjects, (b) as it seeks documents of marginal or no relevance, and (c) to the extent it seeks documents that are publicly available or available from the parties.  LDH further objects to this request because the information sought is duplicative of a public records request submitted by Defendants.

      Subject to the foregoing general and specific objections, LDH will produce responsive, non-privileged documents if any are located after a reasonable search through Defendants' public records request.

**REQUEST NO. 3:**

Documents sufficient to identify the instances when Louisiana Department of Health "terminated other types of providers for similar violations of these provisions" as referenced in Louisiana Department of Health's response to Question No. 2 in its September 27, 2016 response (attached as Ex. D).  Your response should include for each termination, documents sufficient to identify the provider that was terminated, the date of the termination, the reason for the termination, the date of the conduct that resulted in the termination, whether the provider was asked or obligated to return any amounts reimbursed under Medicaid or Louisiana Medicaid, whether the provider did return any amounts reimbursed under Medicaid or Louisiana Medicaid, and the amount of any reimbursements that were returned.

**RESPONSE TO REQUEST NO. 3:**

      LDH incorporates its General Objections as if fully set forth herein. LDH objects to this request to the extent it seeks privileged information. LDH objects to this request as inherently subjective in seeking "documents sufficient to identify" various circumstances. LDH objects to this request as overbroad, unduly burdensome, beyond the scope of discovery, and disproportionate to the needs of the case in seeking documents related to termination of providers

other than any Defendant, *i.e.*, documents that are either marginally relevant or not relevant to the claims and defenses in this case.  LDH further objects to this request because the information sought is duplicative of a public records request submitted by Defendants.

Subject to the foregoing general and specific objections, LDH will produce responsive, non-privileged documents if any are located after a reasonable search through Defendants' public records request.

## REQUEST NO. 4:

All documents related to the termination notices issued to Planned Parenthood by the Louisiana Department of Health on or about August 3, 2015 (Ex. A).

## RESPONSE TO REQUEST NO. 4:

LDH incorporates its General Objections as if fully set forth herein. LDH objects to this request to the extent it seeks privileged information. LDH objects to this request as unduly burdensome and disproportionate to the needs of the case, particularly (a) as it seeks documents of marginal or no relevance, and (b) to the extent it seeks documents available from the parties or publicly available documents.

Subject to the foregoing general and specific objections, LDH will neither search for nor produce documents in response to this request.

## REQUEST NO. 5:

All documents and communications related to Louisiana's decision to rescind the termination notices issued to Planned Parenthood by the Louisiana Department of Health on or about August 3, 2015 (Ex. A).

## RESPONSE TO REQUEST NO. 5:

LDH incorporates its General Objections as if fully set forth herein. LDH objects to this request to the extent it seeks privileged information. LDH objects to this request as overbroad, unduly burdensome, and beyond the scope of discovery, particularly to the extent it seeks "all

documents . . . related to . . ." a subject. LDH objects to this request as disproportionate to the needs of the case particularly (a) as it seeks documents of marginal or no relevance, and (b) to the extent it seeks documents available from the parties or publicly available documents.

Subject to the foregoing general and specific objections, LDH will neither search for nor produce documents in response to this request.

**REQUEST NO. 6:**

All documents and communications related to the termination notices issued to Planned Parenthood by the Louisiana Department of Health on or about September 15, 2015 (Ex. B).

**RESPONSE TO REQUEST NO. 6:**

LDH incorporates its General Objections as if fully set forth herein. LDH objects to this request to the extent it seeks privileged information. LDH objects to this request as overbroad, unduly burdensome, and beyond the scope of discovery to the extent it seeks "all documents . . . related to . . ." a subject. LDH objects to this request as disproportionate to the needs of the case particularly (a) as it seeks documents of marginal or no relevance, and (b) to the extent it seeks documents available from the parties or publicly available documents.

Subject to the foregoing general and specific objections, LDH will neither search for nor produce documents in response to this request.

**REQUEST NO. 7:**

All documents and communications related to Texas's consideration and decision to terminate any Planned Parenthood Defendant from Texas Medicaid based on grounds asserted in the termination notices issued to Planned Parenthood by the Office of Inspector General, Texas Health & Human Services Commission on or about October 19, 2015 and December 20, 2016 (Relator's Compl. [Dkt. 2] Exs. B, C).

**RESPONSE TO REQUEST NO. 7:**

LDH incorporates its General Objections as if fully set forth herein. LDH objects to this

11

**Appx 187**

request to the extent it seeks privileged information. LDH objects to this request as overbroad, unduly burdensome, and beyond the scope of discovery to the extent it seeks "all documents . . . related to . . ." a subject. LDH objects to this request as overbroad, unduly burdensome, beyond the scope of discovery, and disproportionate to the needs of the case particularly (a) as it seeks documents of marginal or no relevance, and (b) to the extent it seeks documents available from the parties or publicly available documents.

Subject to the foregoing general and specific objections, LDH will produce responsive, non-privileged documents if any are located after a reasonable search.

## REQUEST NO. 8:

All documents relating to or reflecting communications with the Center for Medical Progress and/or David Daleiden from 2013 to present.

## RESPONSE TO REQUEST NO. 8:

LDH incorporates its General Objections as if fully set forth herein. LDH objects to this request to the extent it seeks privileged information. LDH objects to this request as overbroad, unduly burdensome, and beyond the scope of discovery, particularly to the extent it seeks (a) "all documents relating to or reflecting . . . ." or (b) documents available from a party. LDH further objects to this request because the information sought is duplicative of a public records request submitted by Defendants.

Subject to the foregoing general and specific objections, LDH will produce responsive, non-privileged documents if any are located after a reasonable search through Defendants' public records request.

## REQUEST NO. 9:

All documents related to your decision to not intervene in Relator Doe's case.

12

**Appx 188**

**RESPONSE TO REQUEST NO. 9:**

LDH incorporates its General Objections as if fully set forth herein. LDH objects to this request as facially seeking information protected by the attorney-client privilege, work product doctrine, and/or deliberative process privilege. LDH objects to this request as overbroad and unduly burdensome to the extent it seeks "all documents related to" a subject.

Subject to the foregoing general and specific objections, LDH will not produce documents in response to this request.

**REQUEST NO. 10:**

All documents and communication relating to or reflecting information about any Planned Parenthood Defendant provided to the Louisiana Department of Health by Relator.

**RESPONSE TO REQUEST NO. 10:**

LDH incorporates its General Objections as if fully set forth herein. LDH objects to this request to the extent it seeks privileged information. LDH objects to this request as overbroad, unduly burdensome, and beyond the scope of discovery to the extent it seeks "all documents . . . related to . . ." a subject. LDH objects to this request as overbroad, unduly burdensome, beyond the scope of discovery, and disproportionate to the needs of the case particularly (a) as it seeks documents of marginal or no relevance, and (b) to the extent it seeks documents available from the parties or publicly available documents.

Subject to the foregoing general and specific objections, LDH will neither search for nor produce documents in response to this request.

**REQUEST NO. 11:**

All documents and communications relating to any fetal tissue procurement or donation in which any Medicaid, Texas Medicaid, or Louisiana Medicaid provider unrelated to Planned Parenthood participated or facilitated or agreed to participate or facilitate.

13

**RESPONSE TO REQUEST NO. 11:**

LDH incorporates its General Objections as if fully set forth herein. LDH objects to this request to the extent it seeks privileged information. LDH objects to this request as overbroad, unduly burdensome, and beyond the scope of discovery to the extent it seeks "all documents . . . relating to" various subjects. LDH objects to this request as unduly burdensome and disproportionate to the needs of the case to the extent it seeks publicly available documents. LDH objects to this request as beyond the scope of discovery and seeking information not relevant to any party's claim or defense.

Subject to the foregoing general and specific objections, LDH will produce responsive, non-privileged documents if any are located after a reasonable search.

**REQUEST NO. 12:**

All documents and communications related to whether participation or an agreement to participate in any fetal tissue procurement or donation renders a Medicaid provider unqualified to provide service under Medicaid, Texas Medicaid, or Louisiana Medicaid.

**RESPONSE TO REQUEST NO. 12:**

LDH incorporates its General Objections as if fully set forth herein. LDH objects to this request as facially seeking information protected by the attorney-client privilege, work product doctrine, and/or deliberative process privilege. LDH objects to this request as overbroad, unduly burdensome, and beyond the scope of discovery to the extent it seeks "all documents . . . related to" a legal position. LDH objects to this request as overbroad, unduly burdensome, beyond the scope of discovery, and harassing to the extent it seeks production of files from prior litigations. LDH objects to this request as unduly burdensome and disproportionate to the needs of the case to the extent it seeks publicly available documents.

Subject to the foregoing general and specific objections, LDH will not search for or produce documents in response to this request.

14

**REQUEST NO. 13:**

All documents and communications relating to federal court injunctions and/or the effects of federal court injunctions related to the potential termination of any Planned Parenthood Defendant's participation in Medicaid, Texas Medicaid, and/or Louisiana Medicaid.

**RESPONSE TO REQUEST NO. 13:**

LDH incorporates its General Objections as if fully set forth herein. LDH objects to this request as facially seeking information protected by the attorney-client privilege, work product doctrine, and/or deliberative process privilege. LDH objects to this request as overbroad, unduly burdensome, and beyond the scope of discovery to the extent it seeks "all documents . . . relating to" a legal position. LDH objects to this request as overbroad, unduly burdensome, beyond the scope of discovery, disproportionate to the needs of the case, and harassing to the extent it seeks production of (a) files from prior litigations, (b) documents that are available from a party or publicly available.

Subject to the foregoing general and specific objections, LDH will not search for or produce documents in response to this request.

**REQUEST NO. 14:**

All documents and communications relating to state court injunctions and/or the effects of a state court injunction related to the potential termination of any Planned Parenthood Defendant's participation in Medicaid, Texas Medicaid, and/or Louisiana Medicaid.

**RESPONSE TO REQUEST NO. 14:**

LDH incorporates its General Objections as if fully set forth herein. LDH objects to this request as facially seeking information protected by the attorney-client privilege, work product doctrine, and/or deliberative process privilege. LDH objects to this request as overbroad, unduly burdensome, and beyond the scope of discovery to the extent it seeks "all documents . . . relating to" a legal position. LDH objects to this request as overbroad, unduly burdensome, beyond the scope of discovery, disproportionate to the needs of the case, and harassing to the extent it seeks

15

production of (a) files from prior litigations, (b) documents that are available from a party or publicly available.

Subject to the foregoing general and specific objections, LDH will not search for or produce documents in response to this request.

## REQUEST NO. 15:

All documents and communications relating to whether termination of PPGC violated Medicaid's free choice of provider requirement and why or why not.

## RESPONSE TO REQUEST NO. 15:

LDH incorporates its General Objections as if fully set forth herein. LDH objects to this request as facially seeking information protected by the attorney-client privilege, work product doctrine, and/or deliberative process privilege. LDH objects to this request as overbroad, unduly burdensome, and beyond the scope of discovery to the extent it seeks "all documents . . . relating to" a legal position. LDH objects to this request as overbroad, unduly burdensome, beyond the scope of discovery, disproportionate to the needs of the case, and harassing to the extent it seeks production of (a) files from prior litigations, (b) documents that are available from a party or publicly available.

Subject to the foregoing general and specific objections, LDH will not search for or produce documents in response to this request.

## REQUEST NO. 16:

All documents and communications related to whether any Planned Parenthood Defendant had an obligation to repay any amount paid by Medicaid, Texas Medicaid, and/or Louisiana Medicaid to any Planned Parenthood Affiliate.

## RESPONSE TO REQUEST NO. 16:

LDH incorporates its General Objections as if fully set forth herein. LDH objects to this request as facially seeking information protected by the attorney-client privilege, work product

doctrine, and/or deliberative process privilege. LDH objects to this request as overbroad, unduly

burdensome, and beyond the scope of discovery to the extent it seeks "all documents . . . related

to" a legal position. LDH objects to this request as overbroad, unduly burdensome, beyond the

scope of discovery, disproportionate to the needs of the case, and harassing to the extent it seeks

production of (a) files from prior litigations, (b) documents that are available from a party or

publicly available.

 Subject to the foregoing general and specific objections, LDH will not search for or

produce documents in response to this request.

**REQUEST NO. 17:**

All documents and communications relating to whether Medicaid, Texas Medicaid, and/or
Louisiana Medicaid could or should seek recoupment of amounts reimbursed to any Planned
Parenthood Defendant from 2010 to the present.

**RESPONSE TO REQUEST NO. 17:**

 LDH incorporates its General Objections as if fully set forth herein. LDH objects to this

request as facially seeking information protected by the attorney-client privilege, work product

doctrine, and/or deliberative process privilege. LDH objects to this request as overbroad, unduly

burdensome, and beyond the scope of discovery to the extent it seeks "all documents . . . relating

to" a legal position. LDH objects to this request as overbroad, unduly burdensome, beyond the

scope of discovery, disproportionate to the needs of the case, and harassing to the extent it seeks

production of (a) files from prior litigations, (b) documents that are available from a party or

publicly available.

 Subject to the foregoing general and specific objections, LDH will not search for or

produce documents in response to this request.

**REQUEST NO. 18:**

All documents and communications related to termination by the United States, Texas, or

17

**Appx 193**

Louisiana of any Medicaid provider unrelated to Planned Parenthood for violations of laws or regulations related to medical research, fetal tissue procurement or donation, or an agreement to engage in fetal tissue procurement or donation, including but not limited to whether any terminated federal, Texas, or Louisiana Medicaid provider was asked or obligated to return amounts reimbursed under federal, Texas, or Louisiana Medicaid.

**RESPONSE TO REQUEST NO. 18:**

LDH incorporates its General Objections as if fully set forth herein. LDH objects to this request to the extent it seeks privileged information. LDH objects to this request as overbroad, unduly burdensome, vague incomprehensible, and beyond the scope of discovery, particularly to the extent it seeks "all documents . . . related to . . . related to . . .  including but not limited to" multiple subjects. LDH objects to this request as overbroad, unduly burdensome, beyond the scope of discovery, and disproportionate to the needs of the case particularly (a) as it seeks documents of marginal or no relevance, and (b) to the extent it seeks documents available from the parties or publicly available documents.

Subject to the foregoing general and specific objections, LDH will not search for or produce documents in response to this request.

**REQUEST NO. 19:**

All documents and communications related to termination by the United States, Texas, and/or Louisiana of any Medicaid, Texas Medicaid, or Louisiana Medicaid provider on basis that the entity was not a qualified provider, including but not limited to whether any terminated Medicaid provider was asked or obligated to return amounts reimbursed under Medicaid.

**RESPONSE TO REQUEST NO. 19:**

LDH incorporates its General Objections as if fully set forth herein. LDH objects to this request to the extent it seeks privileged information. LDH objects to this request as overbroad, unduly burdensome, vague incomprehensible, and beyond the scope of discovery, particularly to the extent it seeks "all documents . . . related to . . . including but not limited to" multiple subjects. LDH objects to this request as overbroad, unduly burdensome, beyond the scope of discovery, and

18

disproportionate to the needs of the case particularly (a) as it seeks documents of marginal or no relevance, and (b) to the extent it seeks documents available from the parties or publicly available documents.

Subject to the foregoing general and specific objections, LDH will not search for or produce documents in response to this request.

## REQUEST NO. 20:

All documents and communications related to your views regarding whether a payment, to which a Medicaid provider is entitled at the time of payment, can become an overpayment based on a subsequent change in law and/or a judicial decision. *See, e.g.,* Centers for Medicare & Medicaid Services, Medicare Program; Reporting and Returning of Overpayments, 81 Fed. Reg. 7653, 7658 (Feb. 12, 2016) ("We agree that payments that were proper at the time the payment was made do not become overpayments at a later time due to changes in law or regulation, unless otherwise required by law.").

## RESPONSE TO REQUEST NO. 20:

LDH incorporates its General Objections as if fully set forth herein. LDH objects to this request as facially seeking information protected by the attorney-client privilege, work product doctrine, and/or deliberative process privilege. LDH objects to this request as overbroad, unduly burdensome, and beyond the scope of discovery to the extent it seeks "all documents . . . related to" LDH's views on a legal position. LDH objects to this request as overbroad, unduly burdensome, beyond the scope of discovery, disproportionate to the needs of the case, and harassing to the extent it seeks production of (a) files from prior litigations, (b) documents that are available from a party or publicly available.

Subject to the foregoing general and specific objections, LDH will not search for or produce documents in response to this request. LDH does, however, direct your attention to La. R.S. 14:17.

## REQUEST NO. 21:

All documents and communications relating to any Planned Parenthood Affiliate's qualifications

19

to provide services under Medicaid, Texas, Medicaid, and/or Louisiana Medicaid.

**RESPONSE TO REQUEST NO. 21:**

  LDH incorporates its General Objections as if fully set forth herein. LDH objects to this request to the extent it seeks privileged information. LDH objects to this request as overbroad, unduly burdensome, and beyond the scope of discovery to the extent it seeks "all documents . . . relating to" multiple subjects. LDH objects to this request as unduly burdensome and disproportionate to the needs of the case to the extent it seeks publicly available documents.

  Subject to the foregoing general and specific objections, LDH will produce responsive, non-privileged documents if any are located after a reasonable search.

**REQUEST NO. 22:**

All documents and communications related to information provided by you to the U.S. Congress related to any Planned Parenthood Defendant from 2015 to present regarding any Planned Parenthood Defendant's qualifications to provide service under Medicaid, Texas Medicaid, and/or Louisiana Medicaid; any Planned Parenthood Defendant's termination in Texas and/or Louisiana; continued participation of any Planned Parenthood Defendant in Louisiana Medicaid; whether participation in fetal tissue procurement or donation or agreeing to participate in fetal tissue procurement or donation renders a Medicaid provider unqualified to provide service under Medicaid, Texas Medicaid, or Louisiana Medicaid; and whether Medicaid, Texas Medicaid, and/or Louisiana Medicaid could or should seek recoupment for amounts reimbursed to any Planned Parenthood Defendant from 2010 to the present.

**RESPONSE TO REQUEST NO. 22:**

  LDH incorporates its General Objections as if fully set forth herein. LDH objects to this request to the extent it seeks privileged information. LDH objects to this request as overbroad, unduly burdensome, and beyond the scope of discovery to the extent it seeks "all documents . . . related to" multiple subjects. LDH objects to this request as unduly burdensome and disproportionate to the needs of the case to the extent it seeks documents that are available from a party or publicly available. LDH further objects to this request because the information sought is duplicative of a public records request submitted by Defendants.

Subject to the foregoing general and specific objections, LDH will produce responsive, non-privileged documents if any are located after a reasonable search through Defendants' public records request.

**REQUEST NO. 23:**

All communications between Louisiana Department of Health and the Media relating to any Planned Parenthood Defendant's qualifications to provide service under Medicaid, Texas Medicaid, and/or Louisiana Medicaid; any Planned Parenthood Defendant's termination in Texas and/or Louisiana; continued participation of any Planned Parenthood Defendant in Louisiana Medicaid; whether participation in fetal tissue procurement or donation or an agreement to participate in fetal tissue procurement or donation renders a Medicaid provider unqualified to provide service under Medicaid, Texas Medicaid, or Louisiana Medicaid; and whether Medicaid, Texas Medicaid, and/or Louisiana Medicaid could or should seek recoupment for amounts reimbursed to any Planned Parenthood Defendant from 2010 to the present.

**RESPONSE TO REQUEST NO. 23:**

LDH incorporates its General Objections as if fully set forth herein. LDH objects to this request to the extent it seeks privileged information. LDH objects to this request as overbroad, unduly burdensome, vague, and beyond the scope of discovery, and disproportionate to the needs of the case to the extent it seeks (a) "all communications . . . relating to" multiple subjects, (b) documents not relevant or marginally relevant to the claims or defenses of any party, or (c) documents that are available from a party or publicly available. LDH further objects to this request because the information sought is duplicative of a public records request submitted by Defendants.

Subject to the foregoing general and specific objections, LDH will produce responsive, non-privileged documents if any are located after a reasonable search through Defendants' public records request.

**REQUEST NO. 24:**

All documents or videos (both edited and unedited) provided to Louisiana Department of Health by Relator, the Center for Medical Progress, or third parties acting on Relator's behalf, including staff, attorneys, or investigators.

21

**RESPONSE TO REQUEST NO. 24:**

LDH incorporates its General Objections as if fully set forth herein. LDH objects to this request to the extent it seeks privileged information. LDH objects to this request as overbroad, unduly burdensome, vague, and beyond the scope of discovery, and disproportionate to the needs of the case to the extent it seeks (a) "all documents . . . provided," (b) documents not relevant or marginally relevant to the claims or defenses of any party, or (c) documents that are available from a party or publicly available. LDH further objects that this request facially seeks documents in the possession, custody, or control of a party.

Subject to the foregoing general and specific objections, LDH will produce responsive, non-privileged documents if any are located after a reasonable search.

**REQUEST NO. 25:**

All documents and communications relating to Louisiana Department of Health's evaluation of the Center for Medical Progress videos, including but not limited to your response(s) to those videos and any public official or other public agency's response(s) to those videos.

**RESPONSE TO REQUEST NO. 25:**

LDH incorporates its General Objections as if fully set forth herein. LDH objects to this request to the extent it seeks privileged information. LDH objects to this request as overbroad, unduly burdensome, vague, and beyond the scope of discovery, and disproportionate to the needs of the case to the extent it seeks (a) "all documents . . . relating to . . . including but not limited to" various subjects (b) documents not relevant or marginally relevant to the claims or defenses of any party, or (c) documents that are available from a party or publicly available.

Subject to the foregoing general and specific objections, LDH will not search for or produce documents in response to this request.

22

**REQUEST NO. 26:**

All communications between Louisiana Department of Health and the Media relating to the Center for Medical Progress videos.

**RESPONSE TO REQUEST NO. 26:**

LDH incorporates its General Objections as if fully set forth herein. LDH objects to this request as overbroad, unduly burdensome, vague, and beyond the scope of discovery, and disproportionate to the needs of the case to the extent it seeks (a) "all communications" on a subject, (b) documents not relevant or marginally relevant to the claims or defenses of any party, or (c) documents that are publicly available. LDH objects to this request to the extent it seeks documents outside of its possession, custody, or control.

Subject to the foregoing general and specific objections, LDH will produce responsive, non-privileged documents if any are located after a reasonable search.

**REQUEST NO. 27:**

All communications between Louisiana Department of Health and members of the United States Congress (including their staff) related to the Center for Medical Progress videos.

**RESPONSE TO REQUEST NO. 27:**

LDH incorporates its General Objections as if fully set forth herein. LDH objects to this request as overbroad, unduly burdensome, vague, and beyond the scope of discovery, and disproportionate to the needs of the case to the extent it seeks (a) "all communications . . . related to" a subject, (b) documents not relevant or marginally relevant to the claims or defenses of any party, or (c) documents that are publicly available.

Subject to the foregoing general and specific objections, LDH will produce responsive, non-privileged documents if any are located after a reasonable search.

Dated: August 19, 2022      Respectfully submitted:

_____ /s/ *Michelle Y. Christopher* _____

Michelle Y. Christopher, La. Bar No. 25619
Kimberly L. Sullivan, La. Bar No. 27540
Stanley J. Bordelon II, La. Bar No. 33022
**Attorneys for the Louisiana Department of Health**
628 North Fourth Street (70821)
Post Office Box 3836
Baton Rouge, Louisiana 70821-3836
Telephone: (225) 342-4090
Facsimile: (225) 342-2232
Email: michelle.christopher@la.gov

# EXHIBIT 10

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* | ) | |
| ALEX DOE, Relator, *et al.*, | ) | |
| | ) | Civil Action No. 2:21-22 |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PLANNED PARENTHOOD FEDERATION | ) | |
| OF AMERICA, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | | |

**NON-PARTY LOUISIANA DEPARTMENT OF HEALTH'S**
**RESPONSES AND OBJECTIONS**
**TO DEFENDANT PLANNED PARENTHOOD GULF COAST, INC.'S**
**REVISED SUBPOENA**

Pursuant to the Federal Rules of Civil Procedure, non-party State of Louisiana Department of Health ("LDH" or the "Department") hereby provides its responses and objections to the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action ("the Subpoena") issued by Defendant Planned Parenthood Gulf Coast, Inc. ("PPGC").

On September 12, 2022, PPGC propounded revised subpoena requests to LDH. Without waiving the General Objections, Objections to Specific Definitions, and Objections raised to each specific request in the original *Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of a Premises in a Civil Action* dated August 5, 2022, and incorporating the objections herein, LDH answers as follows to PPGC's revised subpoena requests:

**RESPONSES AND OBJECTIONS TO SPECIFIC REQUESTS**

**ORIGINAL REQUEST NO. 13:**

All documents and communications relating to federal court injunctions and/or the effects of

1

federal court injunctions related to the potential termination of any Planned Parenthood Defendant's participation in Medicaid, Texas Medicaid, and/or Louisiana Medicaid.

**REVISED REQUEST NO. 13:**

- Any external communications by LDH about the federal court injunction related to PPGC's participation in Louisiana Medicaid.

- Documents reflecting any nonprivileged guidance LDH provided (internally or externally) about the U.S. District Court for the Middle District of Louisiana federal court injunction related to PPGC's participation in Louisiana Medicaid.

**RESPONSE TO REVISED REQUEST NO. 13:**

To the best of LDH's knowledge, information, and belief there are no documents

responsive to Revised Request No. 13.

**ORIGINAL REQUEST NO. 16**

All documents and communications related to whether any Planned Parenthood Defendant had an obligation to repay any amount paid by Medicaid, Texas Medicaid, and/or Louisiana Medicaid to any Planned Parenthood Affiliate.

**REVISED REQUEST NO. 16**

Nonprivileged documents identifying those Medicaid providers that LDH recommended for repayment or recoupment sanctions from January 1, 2015 to present, and the rationale for each, and amount recouped.

**RESPONSE TO REVISED REQUEST NO. 16**

To the best of LDH's knowledge, information, and belief there are no documents

responsive to Revised Request No. 16.

**ORIGINAL REQUEST NO. 17:**

All documents and communications relating to whether Medicaid, Texas Medicaid, and/or Louisiana Medicaid could or should seek recoupment of amounts reimbursed to any Planned Parenthood Defendant from 2010 to the present.

**REVISED REQUEST NO. 17**

Nonprivileged documents reflecting any guidance or procedures (internal or external) about what circumstances trigger a repayment or recoupment remedy involving a Louisiana Medicaid provider.

**RESPONSE TO REVISED REQUEST NO. 17:**

Please refer to the following documents:

- Louisiana Revised Statutes 46:437.11 and 46:437.14.

- Louisiana Administrative Code 50:I.4147; 50:I.4161; 50:I.4163; 50:I.4167.

- Louisiana Medicaid Provider Manual, General Information and Administration, Chapter 1.3.

**ORIGINAL REQUEST NO. 19:**

All documents and communications related to termination by the United States, Texas, and/or Louisiana of any Medicaid, Texas Medicaid, or Louisiana Medicaid provider on basis that the entity was not a qualified provider, including but not limited to whether any terminated Medicaid provider was asked or obligated to return amounts reimbursed under Medicaid.

**REVISED REQUEST NO. 19**

- All nonprivileged documents explaining the rationale for termination of PPGC instead of some other sanction or consequence set forth in La. Admin Code Title 50, sections 4145 or 4161.

- Internal nonprivileged guidance documents addressing what sanction or consequence to impose on a provider including but not limited to when to impose a termination sanction instead of some other available sanction or consequence set forth in La. Admin Code Title 50, sections 4145 and 4161.

**RESPONSE TO REVISED REQUEST NO. 19:**

To the best of LDH's knowledge, information, and belief there are no documents responsive to Revised Request No. 19. Further answering, LDH submits that Louisiana Administrative Code 50:I.4165 controls on this issue.

**REQUEST NO. 25:**

All documents and communications relating to Louisiana Department of Health's evaluation of the Center for Medical Progress videos, including but not limited to your response(s) to those videos and any public official or other public agency's response(s) to those videos.

**REVISED REQUEST NO. 25:**

- All nonprivileged documents identifying what statements and admissions made in the Center for Medical Progress ("CMP") videos referenced on page 2 of the September 15, 2015 termination/revocation letters caused LDH to believe that PPGC's letters of July 24, 2015 and August 14, 2015 contained alleged misrepresentations.

- Any external communications by LDH related to the CMP videos referenced on page 2 of the September 15, 2015 termination/revocation letters.

**RESPONSE TO REVISED REQUEST NO. 25:**

To the best of LDH's knowledge, information, and belief there are no documents responsive to Revised Request No. 25.

Dated: September 28, 2022        Respectfully submitted:

Stanley J. Bordelon II, La. Bar No. 33022
Michelle Y. Christopher, La. Bar No. 25619
Kimberly L. Sullivan, La. Bar No. 27540
**Attorneys for the Louisiana Department of Health**
628 North Fourth Street (70821)
Post Office Box 3836
Baton Rouge, Louisiana 70821-3836
Telephone: (225) 342-4090
Facsimile: (225) 342-2232
Email: michelle.christopher@la.gov

4

**Appx 205**

# RESPONSE TO REVISED
# REQUEST NO. 17

# RS 46:437.11

§437.11.  Provider agreements

A.  The department shall make payments from medical assistance programs funds for goods, services, or supplies rendered to recipients to any person who has a provider agreement in effect with the department, who is complying with all federal and state laws and rules pertaining to the medical assistance programs, and who agrees that no person shall be subjected to discrimination under the medical assistance programs because of race, creed, ethnic origin, sex, age, or physical condition.

B.  Each provider agreement shall require the health care provider to comply fully with all federal and state laws and rules pertaining to the medical assistance programs, to licensure, if required, and the practice of medicine, osteopathy, surgery, and midwifery.  The provider agreement shall require the health care provider to provide goods, services, or supplies only if medically necessary and that are within the scope and quality of standard care.

C.  Each provider agreement shall be a voluntary contract between the department and the health care provider in which the health care provider agrees to comply with federal and state laws and rules pertaining to the medical assistance programs when furnishing goods, services, or supplies to a recipient and the department agrees to pay a sum, determined by fee schedule, payment methodology, or other method, for the goods, services, or supplies provided to the recipient.  However, a provider agreement shall not be construed to be a contract for the purposes of R.S. 42:1113(D).

D.(1)  Unless the provider agreement is terminated by the secretary for cause as provided in Paragraph (2) of this Subsection, a health care provider agreement shall be effective for a stipulated period of time, shall be terminable by either party thirty days after receipt of written notice, and shall be renewable by mutual agreement.

(2)  The secretary may terminate a provider agreement immediately and without written notice if a health care provider is the subject of a sanction or of a criminal, civil, or departmental proceeding.

E.  Each health care provider who has a provider agreement with the department shall receive at least one provider number but may receive more than one provider number.

Acts 1997, No. 1142, §2.

# RS 46:437.11

§437.11.  Provider agreements

A.  The department shall make payments from medical assistance programs funds for goods, services, or supplies rendered to recipients to any person who has a provider agreement in effect with the department, who is complying with all federal and state laws and rules pertaining to the medical assistance programs, and who agrees that no person shall be subjected to discrimination under the medical assistance programs because of race, creed, ethnic origin, sex, age, or physical condition.

B.  Each provider agreement shall require the health care provider to comply fully with all federal and state laws and rules pertaining to the medical assistance programs, to licensure, if required, and the practice of medicine, osteopathy, surgery, and midwifery.  The provider agreement shall require the health care provider to provide goods, services, or supplies only if medically necessary and that are within the scope and quality of standard care.

C.  Each provider agreement shall be a voluntary contract between the department and the health care provider in which the health care provider agrees to comply with federal and state laws and rules pertaining to the medical assistance programs when furnishing goods, services, or supplies to a recipient and the department agrees to pay a sum, determined by fee schedule, payment methodology, or other method, for the goods, services, or supplies provided to the recipient.  However, a provider agreement shall not be construed to be a contract for the purposes of R.S. 42:1113(D).

D.(1)  Unless the provider agreement is terminated by the secretary for cause as provided in Paragraph (2) of this Subsection, a health care provider agreement shall be effective for a stipulated period of time, shall be terminable by either party thirty days after receipt of written notice, and shall be renewable by mutual agreement.

(2)  The secretary may terminate a provider agreement immediately and without written notice if a health care provider is the subject of a sanction or of a criminal, civil, or departmental proceeding.

E.  Each health care provider who has a provider agreement with the department shall receive at least one provider number but may receive more than one provider number.

Acts 1997, No. 1142, §2.

Case 2:21-cv-00022-Z Document 319 Filed 11/30/22 Page 210 of 410 PageID 11269

La. Admin. Code tit. 50, Part I, § 4143 (§ I-4143. Introduction
(Louisiana Administrative Code (2022 Edition))

## § I-4143. Introduction

A. This Subchapter D pertains to:

1. the kinds of conduct which are violations;

2. the scope of a violation;

3. types of violations; and

4. elements of violations.

**History:**

Promulgated by the Department of Health and Hospitals, Office of the Secretary, Bureau of Health Services Financing, LR 25:1636 (September 1999), repromulgated LR 29:590 (April 2003).

**Note:**

AUTHORITY NOTE: Promulgated in accordance with R.S. 36:254, 46:437.4 and 46:437.1-46:440.3 (Medical Assistance Program Integrity Law).

Case 2:21-cv-00022-Z Document 319 Filed 11/30/22 Page 211 of 410 PageID 11270

La. Admin. Code tit. 50, Part I, §sec. 4145 Prohibited Conduct
(Louisiana Administrative Code (2022 Edition))

### § I-4145. Prohibited Conduct

A. Violations are kinds of conduct that are prohibited and constitute a violation under this regulation. No provider, provider-in-fact, agent of the provider, billing agent, affiliate of a provider or other person may engage in any conduct prohibited by this Chapter. If they do, the provider or provider-in-fact, agent of the provider, billing agent, affiliate of the provider or other person may be subject to:

1. corrective action;

2. withholding of payment;

3. recoupment;

4. recovery;

5. suspension;

6. exclusion;

7. posting bond or other security;

8. monetary penalties; or

9. any other sanction listed in this Chapter.

**History:**

Promulgated by the Department of Health and Hospitals, Office of the Secretary, Bureau of Health Services Financing, LR 25:1636 (September 1999), repromulgated LR 29:590 (April 2003).

**Note:**

AUTHORITY NOTE: Promulgated in accordance with R.S. 36:254, 46:437.4 and 46:437.1-46:440.3 (Medical Assistance Program Integrity Law).

Case 2:21-cv-00022-Z   Document 319   Filed 11/30/22   Page 212 of 410   PageID 11271

La. Admin. Code tit. 50, Part I, § 1-4147 Violations (Louisiana Administrative Code (2022 Edition))

### § I-4147. Violations

A. The following is a list of violations.

1. Failure to comply with any or all federal or state laws, regulations, policy, or rules applicable to the Medical Assistance Program or a program of the Medical Assistance Program in which the provider, provider-in-fact, agent of the provider, billing agent, affiliate or other person is participating.

a. Neither the secretary, director of BHSF, or any other person can waive or alter a requirement or condition established by statute.

b. Requirements or conditions imposed by a statute can only be waived, modified or changed through legislation.

c. Requirements or conditions imposed by a regulation can only be waived, modified, or changed through formal promulgation of a new or amended regulation, unless authority to do so is specifically provided for in the regulation.

d. Providers, providers-in-fact are required and have an affirmative duty to fully inform all their agents and affiliates, who are performing any function connected to the provider's activities related to the Medicaid Program, of the applicable laws, regulations, or rules.

e. Providers, providers-in-fact, agents of providers, billing agents, and affiliates of providers are presumed to know the law, regulations, or rules. Ignorance of the applicable laws, regulations, or rules is not a defense to any administrative action.

2. Failure to comply with any or all policies, criteria, or procedures of the Medical Assistance Program or the applicable program of the Medical Assistance Program in which the provider, provider-in-fact, agent of the provider, billing agent, or affiliate of the provider is participating.

a. Policies, criteria, and procedures are contained in program manuals, training manuals, remittance advice, provider updates or bulletins issued by or on behalf of the secretary or director of BHSF.

b. Policies, criteria, and procedures can be waived, amended, clarified, repealed, or otherwise changed, either generally or in specific cases, only by the secretary, undersecretary, deputy secretary, or director of BHSF.

c. Such waivers, amendments, clarifications, repeals, or other changes must be in writing and state that it is a waiver, amendment, clarification, or change in order to be effective.

fastcase®
Smarter legal research.

Appx 211

Case 2:21-cv-00022-Z   Document 319   Filed 11/30/22   Page 213 of 410   PageID 11272

La. Admin. Code tit. 50, Part I, § 2127 Violations (Louisiana Administrative Code (2022 Edition))

d. Notice of the policies, criteria, and procedures of the Medical Assistance Program and its programs are provided to providers upon enrollment and receipt of a provider number. It is the duty of the provider to obtain the policies, criteria, and procedures which are in effect while they are enrolled in the Medical Assistance Program.

e. Waivers, amendments, clarifications, repeals, or other changes may be mailed to the provider at the address given to BHSF or the fiscal intermediary by the provider for the express purpose of receiving such notifications. Waivers, amendments, clarifications, repeals, or other changes may also be posted on a BHSF or the fiscal intermediary's website for the express purpose of the provider receiving such notifications.

i. It is the duty of the provider to provide the above address and make arrangements to receive these mailings through that address. This includes the duty to inform BHSF or the fiscal intermediary of any changes in the above address prior to actual change of address. It is also the duty of the provider to check the BHSF or the fiscal intermediary's website to obtain policies, criteria, or procedures.

ii. Mailing to the provider's last known address or the posting to a BHSF or the fiscal intermediary's website of a manual, new manual pages, provider updates, bulletins, memorandums, or remittance advice creates a reputable presumption that the provider received it. The burden of proving lack of notice of policy, criteria, or procedure or waivers, amendments, clarifications, repeals, or other changes in same is on the party asserting it.

iii. Providers and providers-in-fact are presumed to know the applicable policies, criteria, and procedures and any or all waivers, amendments, clarifications, repeals, or other changes to the applicable rules, policies, criteria, and procedures which have been mailed to the address provided by the provider or posted to a BHSF or the fiscal intermediary's website for the purpose of receiving notice of same.

iv. Ignorance of an applicable policy, criteria, or procedure or any and all waivers, amendments, clarifications, repeals, or other changes to applicable policies, criteria, and procedures is not a defense to an administrative action brought against a provider or provider-in-fact.

f. Providers and providers-in-fact are required and have an affirmative duty to fully inform all of their agents and affiliates, who are performing any function connected to the provider's activities related to the Medicaid Program, of the applicable policies, criteria, and procedures and any waivers, amendments, clarifications, repeals, or other changes in applicable policies, criteria, or procedures.



Case 2:21-cv-00022-Z  Document 319  Filed 11/30/22  Page 214 of 410  PageID 11273

La. Admin. Code tit. 50, Part I, § 4167.27  Violations (Louisiana
Administrative Code (2022 Edition))

3. Failure to comply with one or more of the terms or conditions contained in the provider's provider agreement or any and all forms signed by or on behalf of the provider setting forth the terms and conditions applicable to participation in the Medical Assistance Program or one or more of its programs.

a. The terms or conditions of a provider agreement or those contained in the signed forms, unless specifically provided for by law or regulation or rule, can only be waived, changed, or amended through mutual written agreement between the provider and the secretary, undersecretary, deputy secretary or the director of BHSF. Those conditions or terms that are established by law or regulation or rule may not be waived, altered, amended, or otherwise changed except through legislation or rulemaking.

b. A waiver, change, or amendment to a term or condition of a provider agreement and any signed forms must be reduced to writing and be signed by the provider and the secretary, undersecretary, deputy secretary or the director of BHSF in order to be effective.

c. Such mutual agreements cannot waive, change, or amend the law, regulations, rules, policies, criteria, or procedures.

d. The provider and provider-in-fact are presumed to know the terms and conditions in their provider agreement and any signed forms related thereto, and any changes to their provider agreement or the signed forms related thereto.

e. The provider and provider-in-fact are required and have an affirmative duty to fully inform all their agents or affiliates, who are performing any function connected to the provider's activities related to the Medicaid Program, of the terms and conditions contained in the provider agreement and the signed forms related thereto and any change made to them. Ignorance of the terms and conditions in the provider agreement or signed forms or any changes to them is not a defense.

i. The department, BHSF, or the fiscal intermediary may, from time to time, provide training sessions and consultation on the law, regulations, rules, policies, criteria, and procedures applicable to the Medical Assistance Program and its programs. These training sessions and consultations are intended to assist the provider, provider-in-fact, agents of providers, billing agents, and affiliates. Information presented during these training sessions and consultations do not necessarily constitute the official stands of the department and BHSF in regard to the law, regulations, and rules, policies, or procedures unless reduced to writing in compliance with this Subpart.

fastcase®
Smarter legal research.

4. Making a false, fictitious, untrue, misleading statement or concealment of information during the application process or not fully disclosing all information required or requested on the application forms for the Medical Assistance Program, provider number, enrollment paperwork, or any other forms required by the department, BHSF, or its fiscal intermediary that is related to enrollment in the Medical Assistance Program or one of its programs, or failing to disclose any other information which is required under this regulation, or other departmental regulations, rules, policies, criteria, or procedures. This includes the information required under R.S.46:437.11-437.14. Failure to pay any fees or post security related to enrollment is also a violation of this Section.

a. The provider and provider-in-fact have an affirmative duty to inform BHSF in writing through provider enrollment of any and all changes in ownership, control, or managing employee of a provider and fully and completely disclose any and all administrative sanctions, withholding of payments, criminal charges, or convictions, guilty pleas, or no contest pleas, civil judgments, civil fines, or penalties imposed on the provider, provider-in-fact, agent of the provider, billing agent, or affiliates of the provider in this or any other state or territory of the United States.

i. Failure to do so within 10 working days of when the provider or provider-in-fact knew or should have known of such a change or information is a violation of this provision.

ii. If it is determined that a failure to disclose was willful or fraudulent, the provider's enrollment can be voided back to the date of the willful misrepresentation or concealment or fraudulent disclosure.

5. Not being properly licensed, certified, or otherwise qualified to provide for the particular goods, services, or supplies provided or billed for or such license, certificate, or other qualification required or necessary in order to provide a good, service, or supply has not been renewed or has been revoked, suspended, or otherwise terminated is a violation of this provision. This includes, but is not limited to, professional licenses, business licenses, paraprofessional certificates, and licenses or other similar licenses or certificates required by federal, state, or local governmental agencies, as well as, professional or paraprofessional organizations or governing bodies which are required by the Medical Assistance Program. Failure to pay required fees related to licensure or certification is also a violation of this provision.

6. Having engaged in conduct or performing an act in violation of official sanction which has been applied by a licensing authority, professional peer group, or peer review board or organization, or continuing such conduct

fastcase®
Smarter legal research.

Case 2:21-cv-00022-Z   Document 319   Filed 11/30/22   Page 216 of 410   PageID 11275

La. Admin. Code tit. 50, Part I, §4147.A.7 Violations (Louisiana Administrative Code (2022 Edition))

following notification by the licensing or reviewing body that said conduct should cease.

7. Having been excluded or suspended from participation in Medicare. It is also a violation of this provision for a provider to employ, contract with, or otherwise affiliate with any person who has been excluded or suspended from Medicare during the period of exclusion or suspension.

a. The provider and provider-in-fact after they knew, or should have known of same, have an affirmative duty to:

i. inform BHSF in writing of any such exclusions or suspensions on the part of the provider, provider-in-fact, their agents or their affiliates;

ii. not hire, contract with, or affiliate with any person or entity who has been excluded or suspended from Medicare; and

iii. terminate any and all ownership, employment and contractual relationships with any person or entity that has been excluded or suspended from Medicare.

b. Failure to do so on the part of the provider or provider-in-fact within 10 working days of when the provider or provider-in-fact knew or should have known of any violation of this provision by the provider, provider-in-fact, their agents, or affiliates is a violation of §4147. A.4.

8. Having been excluded, suspended, or otherwise terminated from participation in Medicaid or other publicly funded health care or insurance programs of this state or any other state or territory of the United States. It is also a violation of this Section for a provider to employ, contract with, or otherwise affiliate with any person who has been excluded, suspended, or otherwise terminated from participation in Medicaid or other publicly funded health care or health insurance programs of this state or another state or territory of the United States. It is also a violation of this provision for a provider to employ, contract with, or otherwise affiliate with any person who has been excluded from Medicaid or other publicly funded health care or health insurance programs of this state or any other state or territory of the United States during the period of exclusion or suspension.

a. The provider and provider-in-fact after they knew or should have known of same have an affirmative duty to:

i. inform BHSF in writing of any such exclusions or suspensions on the part of the provider, provider-in-fact, their agents or their affiliates;

Case 2:21-cv-00022-Z   Document 319   Filed 11/30/22   Page 217 of 410   PageID 11276

La. Admin. Code tit. 50, Part I, §4147 Violations (Louisiana Administrative Code (2022 Edition))

ii. not hire, contract with, or affiliate with any person or entity who has been excluded or suspended from any Medicaid or other publicly funded health care or health insurance programs; and

iii. terminate any and all ownership, employment and contractual relationships with any person or entity that has been excluded or suspended from any Medicaid or other publicly funded health care or health insurance programs.

b. Failure to do so on the part of the provider or provider-in-fact within 10 working days of when the provider or provider-in-fact knew or should have known of any violation of this provision by the provider, provider-in-fact, their agents, or affiliates is a violation of §4147. A.4.

9. Having been convicted of, pled guilty, or pled no contest to a crime, including attempts or conspiracy to commit a crime, in federal court, any state court, or court in any United States territory related to providing goods, services, or supplies or billing for goods, services, or supplies under Medicare, Medicaid, or any other program involving the expenditure of public funds. It is also a violation for a provider to employ, contract with, or otherwise affiliate with any person who has been convicted, pled guilty, or pled no contest to a crime, including attempts to or conspiracy to commit a crime, in federal court, any state court, or court in any United States territory related to providing goods, services, or supplies or billing for goods, services, or supplies under Medicare, Medicaid, or any other program involving the expenditure of public funds.

a. The provider and provider-in-fact after they knew or should have known of same have an affirmative duty to:

i. inform BHSF in writing of any such convictions, guilty pleas, or no contest plea to the above felony criminal conduct on the part of the provider, provider-in-fact, their agents or their affiliates;

ii. not hire, contract with, or affiliate with any person or entity who has been convicted, pled guilty to, or pled no contest to the above felony criminal conduct; and

iii. terminate any and all ownership, employment and contractual relationships with any person or entity that has been convicted, pled guilty to, or pled no contest to the above felony criminal conduct.

b. Failure to do so on the part of the provider or provider-in-fact within 10 working days of when the provider or provider-in-fact knew or should have

Case 2:21-cv-00022-Z   Document 319   Filed 11/30/22   Page 218 of 410   PageID 11277

La. Admin. Code tit. 50, Part I, §4147 Violations (Louisiana Administrative Code (2022 Edition))

known of any violation of this provision by the provider, provider-in-fact, their agents or affiliates is a violation of §4147. A.4.

c. If five years have passed since the completion of the sentence and no other criminal misconduct by that person has occurred during that five year period, this provision is not violated. Criminal conduct which has been pardoned does not violate this provision.

10. Having been convicted of, pled guilty, or pled no contest in federal court, any state court, or court in any United States territory to criminal conduct involving the negligent practice of medicine or any other activity or skill related to an activity or skill performed by or billed by that person or entity under the Medical Assistance Program or one of its programs or which caused death or serious bodily, emotional, or mental injury to an individual under their care. It is also a violation of this provision for a provider to employ, contract with, or otherwise affiliate with any person who has been convicted of, pled guilty, or pled no contest in federal court, any state court, or court in any United States territory to criminal conduct involving the negligent practice of medicine or any other activity or skill related to an activity or skill performed by or billed by that person or entity under the Medical Assistance Program or one of its programs or which caused death or serious bodily, emotional, or mental injury to an individual under their care.

a. The provider and provider-in-fact after they knew or should have known of same have an affirmative duty to:

i. inform BHSF in writing of any such convictions, guilty plea, or no contest plea to the above criminal conduct on the part of the provider, provider-in-fact, their agents or affiliates;

ii. not hire, contract with, or affiliate with any person or entity who has been convicted, pled guilty to, or pled no contest to the above criminal conduct; and

iii. terminate any and all ownership, employment and contractual relationships with any person or entity that has been convicted, pled guilty to, or pled no contest to the above criminal conduct.

b. Failure to do so on the part of the provider or provider-in-fact within 10 working days of when the provider or provider-in-fact knew or should have known of any violation of this provision by the provider, provider-in-fact, their agents or affiliates is a violation of §4147. A.4.

c. If five years have passed since the completion of the sentence and no other criminal misconduct by that person has occurred during that five-year

Case 2:21-cv-00022-Z   Document 319   Filed 11/30/22   Page 219 of 410   PageID 11278

La. Admin. Code tit. 50, Part I, §4147.27 Violations (Louisiana
Administrative Code (2022 Edition))

period, this provision is not violated. Criminal conduct which has been pardoned does not violate this provision.

11. Having been convicted of, pled guilty to, or pled no contest to, in any federal court, state court, or court in any territory of the United States to any of the following criminal conduct, attempt to commit or conspire to commit any of the following crimes:

a. bribery or extortion;

b. sale, distribution, or importation of a substance or item that is prohibited by law;

c. tax evasion or fraud;

d. money laundering;

e. securities or exchange fraud;

f. wire or mail fraud;

g. violence against a person;

h. act against the aged, juveniles or infirmed;

i. any crime involving public funds; or

j. other similar felony criminal conduct.

i. The provider and provider-in-fact after they knew or should have known of same have an affirmative duty to:

(a). inform BHSF in writing of any such criminal charges, convictions, or pleas on the part of the provider, provider-in-fact, their agents, or their affiliates;

(b). not hire, contract with, or affiliate with any person or entity who has engaged in any such criminal misconduct; and

(c). terminate any and all ownership, employment and contractual relationships with any person or entity that has engaged in any such criminal misconduct.

ii. Failure to do so on the part of the provider or provider-in-fact within 10 working days of when the provider or provider-in-fact knew or should have known of any violation of this provision by the provider, provider-in-fact, their agents or their affiliates is a violation of §4147. A.4.

La. Admin. Code tit. 50, Part I, §4127 Violations (Louisiana Administrative Code (2022 Edition))

Case 2:21-cv-00022-Z   Document 319   Filed 11/30/22   Page 220 of 410   PageID 11279

iii. If five years have passed since the completion of the sentence and no other criminal misconduct by that person has occurred during that five-year period, this provision is not violated. Criminal conduct that has been pardoned does not violate this provision.

12. Being found in violation of or entering into a settlement agreement under this state's Medical Assistance Program Integrity Law, the Federal False Claims Act, Federal Civil Monetary Penalties Act, or any other similar civil statutes in this state, in any other state, United States or United States territory.

a. Relating to violations of this provision, the provider and provider-in-fact after they knew or should have known have an affirmative duty to:

i. inform BHSF in writing of any violations of this provision on the part of the provider, provider-in-fact, their agents or their affiliates;

ii. not hire, contract with, or affiliate with any person or entity who has violated this provision; and

iii. terminate any and all ownership, employment or contractual relationships with any person or entity that has violated this provision.

b. Failure to do so on the part of the provider or provider-in-fact within 10 working days of when the provider or provider-in-fact knew or should have known of any violation of this provision by the provider, provider-in-fact, their agents or affiliates is a violation of §4147. A.4.

c. If a False Claims Act action or other similar civil action is brought by a Qui-Tam plaintiff, no violation of this provision has occurred until the defendant has been found liable in the action.

d. If five years have passed from the time a person is found liable or entered a settlement agreement under the False Claims Act or other similar civil statute and the conditions of the judgment or settlement have been satisfactorily fulfilled, no violation has occurred under this provision.

13. Failure to correct the deficiencies or problem areas listed in a notice of sanction, or failure to meet the provisions of a corrective action plan or failure to correct deficiencies in delivery of goods, services, or supplies after receiving written notice to do so from the secretary, director of BHSF, or director of Program Integrity.

14. Having presented, causing to be presented, attempting to present, or conspiring to present false, fraudulent, fictitious, or misleading claims or billings for payment or reimbursement to the Medical Assistance Program

Case 2:21-cv-00022-Z   Document 319   Filed 11/30/22   Page 221 of 410   PageID 11280

La. Admin. Code tit. 50, Part I, § 5013.17 Violations (Louisiana Administrative Code (2022 Edition))

through BHSF or its authorized fiscal intermediary for goods, services, or supplies, or in documents related to a cost report or other similar submission.

15. Engaging in the practice of charging or accepting payments, in whole or in part, from one or more recipients for goods, services, or supplies for which the provider has made or will make a claim for payment to the Medicaid Program, unless this prohibition has been specifically excluded within the program under which the claim was submitted or will be made, or the payment by the recipient is an authorized copayment or is otherwise specifically authorized by law or regulation. Having engaged in practices prohibited by R.S.46:438.2 or the federal anti-kickback or anti-referral statute is also a violation of this provision.

16. Having rebated or accepted a fee or a portion of a fee or anything of value for a Medicaid recipient referral, unless this prohibition has been specifically excluded within the program or is otherwise authorized by statute or regulation, rule, policy, criteria, or procedure of the department through BHSF. Having engaged in practices prohibited by R.S. 46:438.2 or the federal anti-kickback or anti-referral statute is also a violation of this provision.

17. Paying to another a fee in cash or kind for the purpose of obtaining recipient lists or recipients names, unless this prohibition has been specifically excluded within the program or is otherwise authorized by statute or regulation, rule, policy, criteria or procedure of the department through BHSF. Using or possessing any recipient list or information, which was obtained through unauthorized means, or using such in an unauthorized manner. Having engaged in practices prohibited by R.S. 46:438.2 or R.S. 46:438.4 or the federal anti-kickback or anti-referral statute.

18. Failure to repay or make arrangements to repay an identified overpayment or otherwise erroneous payment within 10 working days after the provider or provider-in-fact receives written notice of same. Failure to pay any and all administrative or court ordered restitution, civil money damages, criminal or civil fines, monetary penalties or costs or expenses is also a violation of this provision. Failure to pay any assessed provider fee or payment is also a violation of this provision.

19. Failure to keep or make available for inspection, audit, or copying records related to the Medicaid Program or one or more of its programs for which the provider has been enrolled or issued a provider number or has failed to allow BHSF or its fiscal intermediary or any other duly authorized governmental entity an opportunity to inspect, audit, or copy those records.



Case 2:21-cv-00022-Z   Document 319   Filed 11/30/22   Page 222 of 410   PageID 11281

La. Admin. Code tit. 50, Part I, §557 Violations (Louisiana Administrative Code (2022 Edition))

Failure to keep records required by Medicaid or one of its programs until payment review has been conducted is also a violation of this provision.

20. Failure to furnish or arrange to furnish information or documents to BHSF within five working days after receiving a written request to provide that information to BHSF or its fiscal intermediary.

21. Failure to cooperate with BHSF, its fiscal intermediary or the investigating officer during the post-payment or prepayment process, investigative process, informal hearing or the administrative appeal process or any other legal process or making, or caused to be made, a false or misleading statement of a material fact in connection with the post-payment or prepayment process, corrective action, investigation process, informal hearing or the administrative appeals process or any other legal process. The exercising of a constitutional or statutory right is not a failure to cooperate. Requests for scheduling changes or asking questions are not grounds for failure to cooperate.

22. Making, or causing to be made, a false, fictitious or misleading statement or making, or caused to be made, a false, fictitious or misleading statement of a fact in connection with the administration of the Medical Assistance Program which the person knew or should have known was false, fictitious or misleading. This includes, but is not limited to, the following:

a. claiming costs for non-covered non-chargeable services, supplies, or goods disguised as covered items;

b. billing for services, supplies, or goods which are not rendered to person(s) who are eligible to receive the services, supplies, or goods;

c. misrepresenting dates and descriptions and the identity of the person(s) who rendered the services, supplies, or goods;

d. duplicate billing that are abusive, willful, or fraudulent;

e. upcoding of services, supplies, or goods provided;

f. misrepresenting a recipient's need or eligibility to receive services, goods, or supplies ;

g. improperly unbundling goods, services, or supplies for billing purposes;

h. misrepresenting the quality or quantity of services, goods, or supplies;

i. submitting claims for payment for goods, services, and supplies provided to non-recipients if the provider knew or should have known that the

Case 2:21-cv-00022-Z   Document 319   Filed 11/30/22   Page 223 of 410   PageID 11282

La. Admin. Code tit. 50, Part I, §4237 Violations (Louisiana Administrative Code (2022 Edition))

individual was not eligible to receive the good, supply, or service at the time the good, service, or supply was provided or billed;

j. furnishing or causing to be furnished goods, services, or supplies to a recipient which:

i. are in excess of the recipient's needs;

ii. were or could be harmful to the recipient;

iii. serve no real medical purpose;

iv. are of grossly inadequate or inferior quality;

v. were furnished by an individual who was not qualified under the applicable Medicaid Program to provide the good, service, or supply;

vi. the good, service, or supply was not furnished under the required programmatic authorization; or

vii. the goods, services, or supplies provided were not provided in compliance with the appropriate licensing or certification board's regulations, rules, policies, or procedures governing the conduct of the person who provided the goods, services, or supplies;

k. providing goods, services, or supplies in a manner or form that is not within the normal scope and range of the standards used within the applicable profession; or

l. billing for goods, services, or supplies in a manner inconsistent with the standards established in relevant billing codes or practices.

23. In the case of a managed care provider or provider operating under a voucher, notwithstanding any contractual agreements to the contrary, failure to provide all medically necessary goods, services, or supplies of which the recipient is in need of and entitled to.

24. Submitting bills or claims for payment or reimbursement to the Medicaid Program through BHSF or its fiscal intermediary on behalf of a person or entity which is serving out a period of suspension or exclusion from participation in the Medical Assistance Program or one of its programs, Medicare, publicly funded health care, or publicly funded health insurance program in any other state or territory of the United States.

fastcase®
Smarter legal research.

Case 2:21-cv-00022-Z   Document 319   Filed 11/30/22   Page 224 of 410   PageID 11283

La. Admin. Code tit. 50, Part I, §4237 Violations (Louisiana Administrative Code (2022 Edition))

25. Engaging in a systematic billing practice which is abusive or fraudulent and which maximizes the costs to the Medicaid Program after written notice to cease such billing practice(s).

26. Failure to meet the terms of an agreement to repay or settlement agreement entered into under this state's Medical Assistance Program Integrity Law or this regulation.

**History:**

Promulgated by the Department of Health and Hospitals, Office of the Secretary, Bureau of Health Services Financing, LR 25:1637 (September 1999), repromulgated LR 29:590 (April 2003), amended by the Department of Health and Hospitals, Bureau of Health Services Financing, LR 38: 2778 (November 2012).

**Note:**

AUTHORITY NOTE: Promulgated in accordance with R.S. 36:254, 46:437.4 and 46:437.1-46:440.3 (Medical Assistance Program Integrity Law).

Case 2:21-cv-00022-Z  Document 315  Filed 11/30/22  Page 225 of 410  PageID 11284

La. Admin. Code tit. 50, Part I, § 101 to 4149 Scope of a Violation
(Louisiana Administrative Code (2022 Edition))

## § I-4149. Scope of a Violation

A. Violations may be imputed in the following manner.

1. The conduct of a provider-in-fact is always attributable to the provider. The conduct of a managing employee is always attributable to the provider and provider-in-fact.

2. The conduct of an agent of the provider, billing agent, or affiliate of the provider may be imputed to the provider or provider-in-fact if the conduct was performed within the course of his duties for the provider or was effectuated by him with the knowledge or approval of the provider or provider-in-fact.

3. The conduct of any person or entity operating on behalf of a provider may be imputed to the provider or provider-in-fact.

4. The provider and provider-in-fact are responsible for the conduct of any and all officers, employees, contractors, or agents of the provider. The conduct of these persons or entities may be imputed to the provider or provider-in-fact.

5. A violation under one Medicaid number may be extended to any and all Medicaid numbers held by the provider or provider-in-fact or which may be obtained by the provider or provider-in-fact.

6. Recoupments or recoveries may be made from any payments or reimbursement made under any and all provider numbers held by or obtained by the provider or provider-in-fact.

7. Any sanctions, including recovery or recoupment, imposed on a provider or provider-in-fact shall remain in effect until its terms have been satisfied. Any person or entity who purchases, merges or otherwise consolidates with a provider or employs or affiliates a provider-in-fact, agent of the provider or affiliate of a provider who has had sanctions imposed on it under this regulation assumes liability for those sanctions, if the person or entity knew or should have known about the existence of the sanctions, and may be subject to additional sanctions based on the purchase, merger, consolidation, affiliation or employment of the sanctioned provider or provider-in-fact.

8. A provider or provider-in-fact who refers a recipient to another for the purpose of providing a good, service, or supply to a recipient may be held responsible for any or all over-billing by the person to whom the recipient was referred provided the referring provider or person knew or should have known that such over-billing was likely to occur.

Case 2:21-cv-00022-Z  Document 315  Filed 11/30/22  Page 226 of 410  PageID 11285

La. Admin. Code tit. 50, Part I, § 4173/4179 Scope of a Violation
(Louisiana Administrative Code (2022 Edition))

9. Providers which are legal entities, i.e., clinics, corporations, HMOs, PPOs, etc., may be held jointly liable for the repayment or recoupment of any person within that legal entity if it can be shown that the entity received any economic benefit related to the overpayment.

10. Withholdings of payments imposed on a provider may be extended to any or all provider numbers held or obtained by that provider or any provider-in-fact of that provider.

11. A recoupment, fine, recovery or penalty, which is owed to the department by a provider or provider-in-fact, can be imputed to a group and/or entity to which the provider or provider-in-fact is linked.

B. Attributing, imputing, extension or imposing under this provision shall be done on a case-by-case basis with written reasons for same.

**History:**

Promulgated by the Department of Health and Hospitals, Office of the Secretary, Bureau of Health Services Financing, LR 25:1637 (September 1999), repromulgated LR 29:596 (April 2003), amended by the Department of Health and Hospitals, Bureau of Health Services Financing, LR 38: 2783 (November 2012).

**Note:**

AUTHORITY NOTE: Promulgated in accordance with R.S. 36:254, 46:437.4 and 46:437.1-46:440.3 (Medical Assistance Program Integrity Law).

Case 2:21-cv-00022-Z Document 319 Filed 11/30/22 Page 227 of 410 PageID 11286

Lac. Admin. Code tit. 50, Part I, § 4161 Sanctions for Prohibited Conduct (Louisiana Administrative Code (2022 Edition))

### § I-4161. Sanctions for Prohibited Conduct

A. Any or all of the following sanctions may be imposed for any one or more of the above listed kinds of prohibited conduct, except as provided for in this Chapter 41:

1. issue a warning to a provider or provider-in-fact or other person through written notice;

2. require that the provider or provider-in-fact, their affiliates, and agents receive education and training in laws, rules, policies, criteria and procedures, including billing, at the provider's expense;

3. require that the provider or provider-in-fact receive prior authorization for any or all goods, services or supplies under the Medicaid Program or one or more of its programs;

4. require that some or all of the provider's claims be subject to manual review;

5. require a provider or provider-in-fact to post a bond or other security or increase the bond or other security already posted as a condition of continued enrollment in the Medicaid Program or one or more of its programs;

6. require that a provider terminate its association with a provider-in-fact, agent of the provider, or affiliate as a condition of continued enrollment in the Medicaid Program or one or more of its programs;

7. prohibit a provider from associating, employing or contracting with a specific person or entity as a condition of continued participation in the Medicaid Program or one or more of its programs;

8. prohibit a provider, provider-in-fact, agent of the provider, billing agent or affiliate of the provider from performing specified tasks or providing goods, services, or supplies at designated locations or to designated recipients or classes or types of recipients;

9. prohibit a provider, provider-in-fact, or agent from referring recipients to another designated person or purchasing goods, services, or supplies from designated persons;

10. recoupment;

11. recovery;



Case 2:21-cv-00022-Z Document 319 Filed 11/30/22 Page 228 of 410 PageID 11287

La. Admin. Code tit. 50, Part I, §901 et 4161 Sanctions for Prohibited Conduct (Louisiana Administrative Code (2022 Edition))

12. impose judicial interest on any outstanding recovery or recoupment;

13. impose reasonable costs or expenses incurred as the direct result of the investigation or review including, but not limited to, the time and expenses incurred by departmental employees or agents and the fiscal intermediary's employee or agent;

14. exclusion from the Medicaid Program or one or more of its programs;

15. suspension from the Medicaid Program or one or more of its programs pending the resolution of the department's administrative appeals process;

16. require the forfeiture of a bond or other security;

17. impose an arrangement to repay;

18. impose monetary penalties not to exceed $10,000; or

19. impose withholding of payments.

**History:**

Promulgated by the Department of Health and Hospitals, Office of the Secretary, Bureau of Health Services Financing, LR 25:1644 (September 1999), repromulgated LR 29:598 (April 2003), amended by the Department of Health and Hospitals, Bureau of Health Services Financing, LR 38: 2783 (November 2012).

**Note:**

AUTHORITY NOTE: Promulgated in accordance with R.S. 36:254, 46:437.4 and 46:437.1-46:440.3 (Medical Assistance Program Integrity Law).

fastcase
Smarter legal research.

## § I-4163. Scope of Sanctions

A. Sanction(s) imposed can be extended to other persons or entities and to other provider numbers held, or obtained by the provider in the following manner.

1. Sanction(s) imposed on a provider or provider-in-fact may be extended to a provider or provider-in-fact.

2. Sanction(s) imposed on an agent of the provider or affiliate of the provider may be imposed on the provider or provider-in-fact if it can be shown that the provider or provider-in-fact knew or should have known about the violation(s) and failed to report the violation(s) to BHSF in a timely manner.

3. Sanction(s) imposed on a provider or provider-in-fact arising out of goods, services, or supplies to a referred recipient may also be imposed on the referring provider if it can be shown that the provider or provider-in-fact knew or should have known about the violation(s) and failed to report the violation(s) to BHSF in writing in a timely manner.

4. Sanction(s) imposed under one provider number may be extended to all provider numbers held by or which may be obtained in the future by the sanctioned provider or provider-in-fact, unless and until the terms and conditions of the sanction(s) have been fully satisfied.

5. Sanction(s) imposed on a person remains in effect unless and until its terms and conditions are fully satisfied. The terms and conditions of the sanction(s) remain in effect in the event of the sale or transfer of ownership of the sanctioned provider.

a. The entity or person who obtains an interest in, merges with or otherwise consolidates with a sanctioned provider assumes liability and responsibility for the sanctions imposed on the purchased provider including, but not limited to, all recoupments or recovery of funds or arrangements to repay that the entity or person knew or should have known about.

b. An entity or person who employs or otherwise affiliates itself with a provider-in-fact who has been sanctioned assumes the liability and responsibility for the sanctions imposed on the provider-in-fact that the entity or person knew or should have known about.

B. Exclusion from participation in the Medicaid Program precludes any such person from submitting claims for payment, either personally or through claims submitted by any other person or entity, for any goods, services, or supplies provided by an excluded person or entity. Any payments, made to a

fastcase

**Appx 228**

Case 2:21-cv-00022-Z Document 319 Filed 11/30/22 Page 230 of 410 PageID 11289

La. Admin. Code tit. 50, Part I, §9715.1263 Scope of Sanctions
(Louisiana Administrative Code (2022 Edition))

person or entity which are prohibited by this provision, shall be immediately repaid to the Medical Assistance Program through BHSF by the person or entity which received the payments.

C. No provider shall submit claims for payment to the department or its fiscal intermediary for any goods, services, or supplies provided by a person or entity within that provider who has been excluded from the Medical Assistance Program or one or more of its programs for goods, services, or supplies provided by the excluded person or entity under the programs which it has been excluded from. Any payments, made to a person or entity, which are prohibited by this provision, shall be immediately repaid to the Medical Assistance Program through BHSF by the person or entity which received the payments.

D. When these provisions are violated, the person or entity which committed the violations may be sanctioned using any and all of the sanctions provided for in this Chapter.

E. Extending of sanctions must be done on a case-by-case basis.

F. The provisions in R.S. 46:437.10 shall apply to all sanctions and withholding of payments imposed pursuant to this Chapter.

**History:**

Promulgated by the Department of Health and Hospitals, Office of the Secretary, Bureau of Health Services Financing, LR 25:1645 (September 1999), repromulgated LR 29:598 (April 2003), amended by the Department of Health and Hospitals, Bureau of Health Services Financing, LR 38: 2784 (November 2012).

**Note:**

AUTHORITY NOTE: Promulgated in accordance with R.S. 36:254, 46:437.4 and 46:437.1-46:440.3 (Medical Assistance Program Integrity Law).

Case 2:21-cv-00022-Z Document 319 Filed 11/30/22 Page 231 of 410 PageID 11290

La. Admin. Code tit. 50, Part I, § 1-4165 Imposition of Sanction(s) (Louisiana Administrative Code (2022 Edition))

### § I-4165. Imposition of Sanction(s)

A. The decision as to the sanction(s) to be imposed shall be at the discretion of the director of BHSF or his/her designee and the director of Program Integrity except as provided for in this provision, unless the sanction is mandatory. In order to impose a sanction, the director of BHSF or his/her designee and the director of Program Integrity must concur. One or more sanctions may be imposed for a single violation. The imposition of one sanction does not preclude the imposition of another sanction for the same or different violations.

B. At the discretion of the director of BHSF or his/her designee and the director of Program Integrity, each occurrence of misconduct may be considered a violation or multiple occurrences of misconduct may be considered a single violation or any combination thereof.

C. The following factors may be considered in determining the sanction(s) to be imposed:

1. seriousness of the violation(s);

2. extent of the violation(s);

3. history of prior violation(s);

4. prior imposition of sanction(s);

5. prior provision of education;

6. willingness to obey program rules;

7. whether a lesser sanction will be sufficient to remedy the problem;

8. actions taken or recommended by peer review groups or licensing boards;

9. cooperation related to reviews or investigations by the department or cooperation with other investigatory agencies; and

10. willingness and ability to repay identified overpayments.

**History:**

Promulgated by the Department of Health and Hospitals, Office of the Secretary, Bureau of Health Services Financing, LR 25:1645 (September 1999), repromulgated LR 29:599 (April 2003), amended by the Department of Health and Hospitals, Bureau of Health Services Financing, LR 38: 2784 (November 2012).

fastcase

Case 2:21-cv-00022-Z Document 319 Filed 11/30/22 Page 232 of 410 PageID 11291

La. Admin. Code tit. 50, Part I, §4165 Imposition of
Sanction(s) (Louisiana Administrative Code (2022 Edition))

**Note:**

AUTHORITY NOTE: Promulgated in accordance with R.S. 36:254, 46:437.4
and 46:437.1-46:440.3 (Medical Assistance Program Integrity Law)



Case 2:21-cv-00022-Z Document 319 Filed 11/30/22 Page 233 of 410 PageID 11292

La. Admin. Code tit. 50, Part I, § I-4167 Mandatory Sanctions
(Louisiana Administrative Code (2022 Edition))

### § I-4167. Mandatory Sanctions

A. Mandatory Exclusion from the Medical Assistance Program. Notwithstanding any other provision to the contrary, the director of BHSF and the director of Program Integrity have no discretion and shall exclude the provider, provider-in-fact or other person from the Medical Assistance Program if the violation involves one or more of the following:

1. a conviction, guilty plea, or no contest plea to a criminal offense(s) in federal or Louisiana state court-related, either directly or indirectly, to participation in either Medicaid or Medicare;

2. has been excluded from Medicare; or

3. has failed to meet the terms and conditions of a repayment agreement, settlement or judgment entered into under this state's Medical Assistance Program Integrity Law.

B. In these situations (Paragraphs A.1-3 above), the exclusion from the Medical Assistance Program is automatic and can be longer than, but not shorter in time than, the sentence imposed in criminal court, the exclusion from Medicaid or Medicare or time provided to make payment.

1. The exclusion is retroactive to the time of the conviction, plea, exclusion, the date the repayment agreement was entered by the department or the settlement or judgment was entered under this state's Medical Assistance Program Integrity Law.

2. Proof of the conviction, plea, exclusion, failure to meet the terms and conditions of a repayment agreement, or settlement or judgment entered under this state's Medical Assistance Program Integrity Law can be made through certified or true copies of the conviction, plea, exclusion, agreement to repay, settlement, or judgment or via affidavit.

a. If the conviction is overturned, plea set aside, or exclusion or judgment is reversed on appeal, the mandatory exclusion from the Medical Assistance Program shall be removed.

b. The person or entity that is excluded from the Medical Assistance Program under this Subsection B is entitled to an administrative appeal of a mandatory exclusion.

c. The facts and law surrounding the criminal matter, exclusion, repayment agreement or judgment which serves as the basis for the mandatory exclusion from the Medical Assistance Program cannot be collaterally attacked at the administrative appeal.

Case 2:21-cv-00022-Z  Document 319  Filed 11/30/22  Page 234 of 410  PageID 11293

La. Admin. Code tit. 50, Part I, §621 4167  Mandatory Sanctions
(Louisiana Administrative Code (2022 Edition))

**History:**

Promulgated by the Department of Health and Hospitals, Office of the Secretary, Bureau of Health Services Financing, LR 25:1646 (September 1999), repromulgated LR 29:599 (April 2003), amended by the Department of Health and Hospitals, Bureau of Health Services Financing, LR 38: 2784 (November 2012).

**Note:**

AUTHORITY NOTE: Promulgated in accordance with R.S. 36:254, 46:437.4 and 46:437.1-46:440.3 (Medical Assistance Program Integrity Law).

Case 2:21-cv-00022-Z Document 319 Filed 11/30/22 Page 235 of 410 PageID 11294

La. Admin. Code tit. 50, Part I, § 4169, Effective Date of a Sanction (Louisiana Administrative Code (2022 Edition))

### § I-4169. Effective Date of a Sanction

A. All sanctions, except exclusion, are effective upon the issuing of the notice of the results of the informal hearing. The filing of a timely and adequate notice of administrative appeal does not suspend the imposition of a sanction(s), except that of exclusion. In the case of the imposition of exclusion from the Medicaid Program or one or more of its programs, the filing of a timely and adequate notice of appeal suspends the exclusion. A sanction becomes a final administrative adjudication if no administrative appeal has been filed, and the time for filing an administrative appeal has run. Or in the case of a timely filed notice of administrative appeal, a sanction(s) becomes a final administrative adjudication when the order on appeal has been entered by the secretary. In order for an appeal to be filed timely it must be sent to the Division of Administrative Law within 30 days from the date of receipt of the letter informing the person of the results of the informal discussion.

### History:

Promulgated by the Department of Health and Hospitals, Office of the Secretary, Bureau of Health Services Financing, LR 25:1646 (September 1999), repromulgated LR 29:600 (April 2003), amended by the Department of Health and Hospitals, Bureau of Health Services Financing, LR 38: 2785 (November 2012).

### Note:

AUTHORITY NOTE: Promulgated in accordance with R.S. 36:254, 46:437.4 and 46:437.1-46:440.3 (Medical Assistance Program Integrity Law).



# GENERAL INFORMATION AND ADMINISTRATION PROVIDER MANUAL

### *Chapter One of the Medicaid Services Manual*

**Issued June 1, 2011**

Claims/authorizations for dates of service on or after October 1, 2015 must use the applicable ICD-10 diagnosis code that reflects the policy intent.  This includes ICD-10 surgical procedure codes for hospital claims.  References in this manual to ICD-9 diagnosis/surgical procedure codes only apply to claims/authorizations with dates of service prior to October 1, 2015.

**State of Louisiana**
 **Bureau of Health Services Financing**

# GENERAL INFORMATION AND ADMINISTRATION

## TABLE OF CONTENTS

**SUBJECT**                                    **SECTION**

**INTRODUCTION**                                    1.0

**Manual Purpose and Organization**
    Manual Maintenance

**The Medicaid Program**
    Administration
    Eligibility
    Funding
    Service Coverage
    Provider Participation
    The Fiscal Intermediary
    *The Provider Update*

**PROVIDER REQUIREMENTS**                           1.1

**Provider Agreement**

**Disclosure of Ownership**

**Acceptance of Recipients**

**Confidentiality**

**HIPAA**

**National Provider Identifier**

**Record Keeping**
    Electronic Records
    Right to Review Records
    Destruction of Records

**LOUISIANA MEDICAID PROGRAM**              **ISSUED:**   **06/30/14**
                                                      **REPLACED:**   **11/08/12**

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**

**SECTION:  TABLE OF CONTENTS**                               **PAGE(S) 5**

**SUBJECT**                                                        **SECTION**


**Changes to Report**
       **Contact Information**
       **Changes in the Internal Operations**
       **Change in Ownership**
       **Other Changes Required to be Reported**


**Linking Professionals to Group Practice**
       **Group Linkages Definitions**


**Taxpayer Identification**


**Electronic Funds Transfer/Direct Deposit**


**RECIPIENT ELIGIBILITY**                                              **1.2**


**Categorically Needy**
**Medically Needy**
**Retroactive Eligible**
**Medicaid Verification**
       **Medicaid Identification Cards**
       **Medicaid Eligibility Verification System**
         **MEVS Access Data**
       **Recipient Eligibility Verification System**
         **REVS Access Data**
         **MEVS and REVS Reminders**


**PROGRAM INTEGRITY**                                                 **1.3**


**Program Integrity Section**
       **Provider Enrollment Unit**
         **Fraud and Abuse Detection**
         **Investigations**

SUBJECT                                                  SECTION

**Administrative Actions**

**Enforcement/Sanctions**

**Grounds for Sanctioning Providers**

**Levels of Administrative Actions and Sanctions**

**Corrective Action Plans**

**Sanctions**

**Exclusions**

**Screenings for Exclusions and Sanctions**

**Background Checks**

**Fraud**

**Practice Restrictions**

**Informal Hearings and Appeals**

**Criminal Fraud**

**Provider Criminal Fraud**

**Recipient Criminal Fraud**

**Abuse and Incorrect Practices**

**Provider Abuse and Incorrect Practices**

**Recipient Abuse**

**Civil Causes of Action**

**Payment Error Rate Measurement**


**GENERAL CLAIMS FILING**                    **SECTION 1.4**

**Hard Copy/Paper Claim Forms**

**Attachments**

**Receiving and Screening Paper Claims**

**Returned Claims**

**Changes to Claim Forms**

**Data Entry**

**General Reminders**

**LOUISIANA MEDICAID PROGRAM**        **ISSUED:**      **06/30/14**
                                      **REPLACED:**    **11/08/12**

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**

**SECTION:  TABLE OF CONTENTS**                          **PAGE(S) 5**

**SUBJECT**                                               **SECTION**

**Electronic Claims**

>        Advantages of Electronic Claims

>        Available Electronic Transactions

**Timely Filing Guidelines**

>        Claims Exceeding the Initial Timely Filing Limit

>        Claims Beyond the Two Year Timely Filing Limit

>        Billing the Recipient

>        Recipient's Responsibility

**Third Party Liability**

>        Third Party Sources

>        Billing Medicare and Third Party Sources

>          Medicare/Medicaid Crossover

>                Dual Eligibles

>                Medicare Advantage Plan Claims

>        Discovery of Private Insurance Eligibility after Medicaid Payment

>        Discovery of Medicare Eligibility after Medicaid Payment

>        Resubmitting Claims following HMS Recoveries

>        Third Party Payment or Denial

>                Hardcopy Claims

>                Electronic Claims

>        Payment Methodology

>                Payment Changes for LAHIPP Claims

>                Payment of Non-LAHIPP Secondary Claims

>                Receipt of Duplicate Payments

>                Refund Checks

>        Trauma Recovery

>        Receipt of the Difference

**Request for Medical Information**

>        Request from Recipient or Family Member or Insurance Company

>        Request from Attorneys

**LOUISIANA MEDICAID PROGRAM**                    **ISSUED:**     **06/30/14**
                                                  **REPLACED:**   **11/08/12**

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**

**SECTION:  TABLE OF CONTENTS**                              **PAGE(S) 5**

**SUBJECT**                                                  **SECTION**

**Pay and Chase**
**Recoupment of Payments**
**Remittance Advice**
         **Electronic Remittance Advice**
         **Remittance Advice Copy and History Requests**

**Adjusting and Voiding Claims**
          **Information to Remember When Submitting Adjustments/Voids**

**BENEFITS FOR CHILDREN AND YOUTH**              **Section 1.5**

**DEFINITIONS AND ACRONYMS**                     **Appendix A**

**CONTACT/ REFERENCE INFORMATION**              **Appendix B**

**REVISION INDEX**                               **Appendix C**

**RESERVED**                                     **Appendix D**

**LOUISIANA MEDICAID PROGRAM**  ISSUED:  06/01/2011
REPLACED:

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**
**SECTION 1.0:  INTRODUCTION**  **PAGE(S) 3**

# INTRODUCTION

## Manual Purpose and Organization

The service provider manual has been developed to present useful information and guidance to providers participating in the Louisiana Medicaid Program.  The manual is divided into two major components, a general information and administration chapter and individual program chapters.  The "general information and administrative" chapter contains information to which **all** enrolled providers must adhere.  It encompasses the universal terms and conditions for a provider to deliver medical services and supplies to recipients of the Louisiana Medicaid Program.  This chapter also outlines the information and procedures necessary to file claims for reimbursement in accordance with Medicaid policy.

The other component is divided into the individual program chapters.  Each chapter is dedicated to a specific program and outlines the policies, procedures, qualifications and limitations specific to that program.  Providers are provided a copy of the chapter(s) for the program(s) in which they are enrolled.

Providers are encouraged to use this manual as a reference guide and training tool to assist in understanding what procedures and services are covered by the Louisiana Medicaid Program.  It is the provider's responsibility to assure that their employees have knowledge and understanding of and have access to the pertinent information in the manual which is necessary to perform their duties.

Medicaid program policies and procedures are revised based on developing health care initiatives and state and federal directives.  Providers are notified of these changes through publication of administrative rules, manual chapter revisions, *Provider Update* newsletters, remittance advice messages, correspondence, and/or training materials.  These changes may also be posted to the Louisiana Medicaid website.  All of these forms of communication shall constitute formal notice to providers.

## Manual Maintenance

To ensure that providers have current and accurate program information, changes or updates are made through quarterly manual revisions.  A form titled the **Revision Index (Appendix C)** will be issued with each manual chapter revision, as a means of documenting/cataloging each revision.  It is the responsibility of the provider to become familiar with each revision upon issuance.  Revisions can be obtained through the internet or as paper manual chapter revisions.

Those providers who find it necessary to maintain a hardcopy of a provider manual chapter may find it helpful to use a three ring binder to house the chapter and all revisions and clarifications issued.  When replacing a page in the manual, providers should retain the old page in the back of the manual for use with claims that originated under the old policy.

Case 2:21-cv-00022-Z   Document 319   Filed 11/30/22   Page 243 of 410   PageID 11302
**LOUISIANA MEDICAID PROGRAM**                              ISSUED:      06/01/2011
                                                           REPLACED:

**CHAPTER 1:   GENERAL INFORMATION AND ADMINISTRATION**
**SECTION 1.0:   INTRODUCTION**                                    **PAGE(S) 3**

## The Medicaid Program

The **Medicaid** Program was created in 1965 with the passage of Title XIX of the Social Security Act "for the purpose of enabling each State…to furnish medical assistance on behalf of families with dependent children and of aged, blind or disabled individuals whose income and resources are insufficient to meet the cost of necessary medical services".

**Medicaid** is governed by the regulations contained in Title 42 of the Code of Federal Regulations, Chapter IV, Subchapter C.  These regulations describe the groups of people and the services a state must cover to qualify for federal matching payments.  States must design their programs to meet these federal requirements, and to provide coverage and benefits to the groups specified under federal law.  States must also establish the reimbursement rates paid to providers for delivering care to eligible recipients.

## Administration

Louisiana implemented its Medicaid Program in 1966.  The **Department of Health and Hospitals (DHH)** administers the Medicaid Program through the **Bureau of Health Services Financing** (BHSF).  The BHSF is responsible for Medicaid eligibility determinations, licensure and certification of health care providers, payment to Medicaid providers, fraud and abuse investigations, and other administrative functions.

The **Centers for Medicare and Medicaid Services** (CMS) is the federal regulatory agency that administrates the Medicaid Program for the U.S. Department of Health and Human Services.  CMS authorizes federal funding levels and approves each state's Medicaid State Plan. It also enforces the general provisions of the Health Insurance Portability and Accountability Act (HIPAA) of 1996.

## Eligibility

Individuals are determined eligible for Medicaid by the BHSF field staff located in regional offices.  Supplemental Security Income (SSI) recipients are determined Medicaid eligible by the Social Security offices.

## Funding

Funding for the Medicaid Program is shared between the federal government and the state.  The federal government matches Louisiana's share of program funding at an authorized rate between 50 and 90 percent, depending on the program.  The contribution for the federal government is adjusted annually based on the per capita income of the state comparative to the nation as a whole.

**LOUISIANA MEDICAID PROGRAM**                     ISSUED:     06/01/2011
                                                   REPLACED:

**CHAPTER 1:   GENERAL INFORMATION AND ADMINISTRATION**
**SECTION 1.0:   INTRODUCTION**                                       PAGE(S) 3

## Service Coverage

The federal government requires that each state provides coverage of mandatory services in its Medicaid Program in order to receive federal funding.  In addition, states have the option to provide coverage of **optional services** that are recognized under federal regulations and approved by CMS.

States may also request approval from CMS to provide coverage for waiver and demonstration services that target a specific population.  Waivers permit states more flexibility in providing services and coverage to individuals who otherwise would not be eligible for Medicaid.

## Provider Participation

**Providers** supply health care services and/or medical equipment to Medicaid eligible recipients. In order to receive reimbursement for these services and equipment, the provider must be enrolled to participate in Louisiana Medicaid, meet all licensing and/or certification requirements inherent to his/her profession and comply with all other requirements in accordance with the federal and state laws and BHSF policies.

## The Fiscal Intermediary

The **fiscal intermediary (FI)** enters into a contract with DHH and BHSF to maintain the Medicaid Management Information System (MMIS), a computerized system with an extensive network of edits and audits for the effective processing and payment of all valid provider claims submitted to the Medicaid Program.  This system meets the requirements of the state and federal governments.  Other functions of the FI include provider enrollment, technical assistance to providers on claim submission and processing, prior authorization of designated services, distribution of information, provider training, and on-site visits to providers.  The FI's Provider Relations staff is also available to offer assistance and answer questions for providers when needed.

### *The Provider Update*

The Bureau of Health Services Financing, Policy Development and Implementation Section produces a bi-monthly Medicaid newsletter which is distributed by the fiscal intermediary.  This newsletter is produced for enrolled providers as a forum to disseminate pertinent Medicaid and health care information as well as to clarify current program policy and procedures.

It is the provider's responsibility to read this newsletter carefully.  Providers may view the ***Provider Update*** newsletter via the Internet or receive a paper copy.  Notification of programmatic changes through a Rule, manual chapter revision, provider notice, as well as the newsletter is considered formal notification and the provider can be held accountable for information contained therein.

Case 2:21-cv-00022-Z   Document 319   Filed 11/30/22   Page 245 of 410   PageID 11304
**LOUISIANA MEDICAID PROGRAM**                    **ISSUED:**        **04/22/16**
                                                 **REPLACED:**       **11/08/12**

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**
**SECTION 1.1:    PROVIDER REQUIREMENTS**                    **PAGE(S) 10**

## PROVIDER REQUIREMENTS

Provider participation in the Medicaid Program is voluntary. When enrolled in the Medicaid Program, a provider agrees to abide by all applicable state and federal laws and regulations and policies established by the Centers for Medicare and Medicaid Services (CMS) and the Department of Health and Hospitals (DHH). The provider manual assists providers with program operations and Medicaid reimbursement. The provider manual does not contain all Medicaid rules and regulations.  In the event the manual conflicts with a rule, the rule prevails.

Therefore, providers are responsible for knowing the terms of the provider agreement, program standards, statutes and the penalties for violations. The providers' signature on the Provider Enrollment Packet PE-50 Addendum - Provider Agreement serves as an agreement to abide by all policies and regulations. This agreement also certifies that to the best of the providers' knowledge the information contained on the claim form is true, accurate and complete.

Providers agree to the following requirements:

- To adhere to all the requirements of administrative rules governing the Medical Assistance Program found in the *Louisiana Register;*

- To comply with the Health Insurance Portability and Accountability Act of 1996 (HIPAA);

- To comply with Title VI and Title VII of the *1964 Civil Rights Act* (where applicable), not to discriminate based on race, color, creed  or national origin;

- To comply with Section 504 of the *Rehabilitation Act of 1973*; and

- To adhere to all federal and state regulations governing the Medicaid Program including those rules regulating disclosure of ownership and control requirements specified in the 42 CFR 455, Subpart B.

## Provider Agreement

The provider agreement is a contract between DHH and the provider that governs participation in the Louisiana Medicaid Program. This contract is statutorily mandated by the Medical Assistance Program Integrity Law (MAPIL) and is voluntarily entered into by the  provider.

**LOUISIANA MEDICAID PROGRAM**              **ISSUED:**        **04/22/16**
                                            **REPLACED:**      **11/08/12**

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**
**SECTION 1.1:    PROVIDER REQUIREMENTS**                    **PAGE(S) 10**

MAPIL contains a number of provisions related to provider agreements. Those provisions which deal specifically with provider agreements and the enrollment process are contained in RS 46:437.11 - 46:437:14.

The following is a brief outline of some of the terms and a condition imposed by MAPIL and is not an all-inclusive list.  The provider agrees to:

- Comply with all federal and state laws and regulations;
- Provide goods, services and supplies which are medically necessary in the scope and quality fitting the appropriate standard of care;
- Maintain all necessary and required licenses or certificates;
- Allow for inspection of all records by governmental authorities including, but not limited to, DHH, the State Attorney General's Medicaid Fraud Control Unit, and the Department of Health and Human Services;
- Safeguard against the disclosure of information in the recipient's medical records;
- Bill other insurers and third parties prior to billing Medicaid;
- Report and refund any and all overpayments;
- Accept the Medicaid payment as payment in full for services rendered to Medicaid recipients, providing for the allowances for co-payments authorized by Medicaid.  A recipient may be billed for services that have been determined as non-covered or exceeding the services limit for recipients over 21 years of age.  Recipients are also responsible for all services rendered after his/her eligibility has ended;
- Agree to be subject to claims review;
- Accept liability for any administrative sanctions or civil judgments by the buyer and seller of a provider;
- Allow inspection of the facilities; and
- Post bond or a letter of credit, when required.

**Note:** In order to bill a recipient for a non-covered service, the recipient must be informed both verbally and in writing that he/she will be responsible for payment of the services.

The provider agreement provisions of MAPIL also grant authority to the Secretary to deny enrollment or revoke enrollment under specific conditions.

**LOUISIANA MEDICAID PROGRAM**            **ISSUED:**            **04/22/16**
                                          **REPLACED:**          **11/08/12**

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**
**SECTION 1.1:    PROVIDER REQUIREMENTS            PAGE(S) 10**

## Disclosure of Ownership

Providers are required to update their ownership information preferably using a web-based application available at www.lamedicaid.com. Information must be disclosed on all owners with five percent or greater interest and all members of management/Board of Directors in the business/entity.  Information includes, but is not limited to:

- Name;
- Social Security Number;
- Tax Identification Number; and
- Address.

Currently, providers without internet access may contact the fiscal intermediary's Provider Enrollment Unit for paper forms.

## Acceptance of Recipients

Providers are not required to accept every recipient requesting service. When a provider does accept a recipient, the provider cannot choose which services will be provided. The same services must be offered to a Medicaid recipient as those offered to individuals not receiving Medicaid, provided the services are reimbursable by the Medicaid Program. Providers must treat Medicaid recipients equally in terms of scope, quality, duration and method of delivery of services (unless specifically limited by regulation).

## Confidentiality

All Medicaid recipient and applicant records and information are confidential. Providers are responsible for maintaining confidentiality of health care information subject to applicable laws.

## HIPAA

The **Health Insurance Portability and Accountability Act (HIPAA) of 1996** *Health Insurance Portability and Accountability Act (HIPAA) of 1996* requires more standardization and efficiency in the health care industry. HIPAA requires providers to:

- Use the  same health care transactions, code sets and identifiers;
- Release of patient protected health information without knowledge or consent;
- Provide safeguards to prevent unauthorized access to protected health care information; and

**LOUISIANA MEDICAID PROGRAM**              **ISSUED:**          **04/22/16**
                                            **REPLACED:**        **11/08/12**

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**
**SECTION 1.1:    PROVIDER REQUIREMENTS**              **PAGE(S) 10**

- To use a standard national provider number, called the National Provider Identifier (NPI), for identification on all electronic standard transactions.

## National Provider Identifier

As a provision of the HIPAA, providers must obtain and use their NPI number on all claims submissions. Providers who do not provide medical services are exempt from this requirement (i.e. non-emergency transportation, and some home and community-based waiver services). Although HIPAA regulations address only electronic transactions, Louisiana Medicaid requires both the NPI number and the legacy 7-digit Medicaid provider number on hard copy claims.

## Record Keeping

Providers must maintain and retain all medical, fiscal, professional and business records for services provided to all Medicaid recipients for a period of five years from the date of service. However, if the provider is being audited, records must be retained until the audit is complete, even if the five years is exceeded.  The records must be accessible, legible and comprehensible.

Any error made in the record must be corrected using the legal method which is to draw a line through the incorrect information, write "error" by it and initial the correction. Correction fluid must never be used.

These records may be paper, magnetic material, film or electronic, except as otherwise required by law or Medicaid policy. All records must be signed and dated at the time of service. Rubber stamp signatures must be initialed.

Providers who fail to comply with the documentation and retention policy are subject to administrative sanctions and recoupment of Medicaid payments. Payments will be recouped for services that lack the required signatures and documentation.

**NOTE**: Upon agency closure, all provider records must be maintained according to applicable laws, regulations and the above record retention requirements. DHH must be notified of the location of the records.

## Electronic Records

Providers that maintain electronic records must develop and implement a policy to comply with applicable state and federal laws and rules and regulations to ensure each record is valid and secure.

**LOUISIANA MEDICAID PROGRAM**                    **ISSUED:**            **04/22/16**
                                                  **REPLACED:**          **11/08/12**

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**
**SECTION 1.1:    PROVIDER REQUIREMENTS                    PAGE(S) 10**

### Right to Review Records

Authorized state and federal agencies or their authorized representatives may audit or examine a provider's or facility's records without prior notice. This includes but is not limited to the following governmental authorities: DHH, the State Attorney General's Medicaid Fraud Control Unit and the Department of Health and Human Services. Providers must allow access to all Medicaid recipient records and other information that cannot be separated from the records.

If requested, providers must furnish, at the provider's expense, legible copies of all Medicaid related information to the Bureau of Health Services Financing (BHSF), federal agencies or their representatives.

### Destruction of Records

Records may be destroyed, once the required record retention period has expired. Confidential records must be incinerated or shredded to protect sensitive information. Non-paper files, such as computer files, require special means of destruction. Disks or drives can be erased and reused, but care must be taken to ensure all data is removed prior to reuse. Commercially available software programs can be used to ensure all confidential data is removed.

In the event that records are destroyed or partially destroyed in a disaster such as a fire, flood or hurricane and rendered unreadable and unusable, such records must be properly disposed of in a manner which protects recipient confidentiality. A letter of attestation must be submitted to the fiscal intermediary documenting the event/disaster and the manner in which the records were disposed.

## Changes to Report

Providers have the responsibility to timely report all changes that may impact the provider's Medicaid enrollment status. Requests for changes to provider records must be submitted to the Provider Enrollment Unit in writing. Each change request requires the original signature (no stamped signatures or initials) of the individual provider or an  authorized representative of an enrolled entity. Third party billers/agents cannot request changes to a provider's enrollment records.

**NOTE:**  Faxes will not be accepted except for change of address  and Clinical Laboratory Improvement Amendments (CLIA) status.

Correspondence must be mailed to the Provider Enrollment Unit. (Refer to Appendix B of this manual chapter for contact information.)

**LOUISIANA MEDICAID PROGRAM**  ISSUED:  04/22/16
REPLACED:  11/08/12

| | |
|---|---|
| **CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION** | |
| **SECTION 1.1:    PROVIDER REQUIREMENTS** | **PAGE(S) 10** |

## Contact Information

Providers must notify the Provider Enrollment Unit when a mailing or physical address and/or telephone number changes. It is the provider's responsibility to keep all provider information current and accurate.

If the provider type requires a license, a copy of the updated license showing the new physical address must be submitted with the change request.

An individual Medicaid provider number can have only one pay-to address. This address **must** be the address where the provider wishes to receive all Medicaid documents related to claims billed under that particular provider number. For those providers who furnish services at multiple locations, the pay-to-address must be the address of the provider's main location.

Failure to furnish accurate information for the provider file may result in closure of the Medicaid provider number. If mail is returned and the provider cannot be located, the provider number will be closed pending updated information. Once the number has been closed, a complete enrollment packet may be required to re-activate the number.

## Changes in the Internal Operations

Providers must immediately notify the Provider Enrollment Unit of any changes in internal operations that affects the originally reported information. This includes changes in administrators, board of directors or other major management staff for federally qualified health centers, rural health clinics, nursing facilities, hospitals and any other facilities or programs in which the provider is enrolled.. The Provider Enrollment Unit must be notified in writing of these changes. Failure to timely notify the Provider Enrollment Unit could result in payment delays.

BHSF does not allow informal agreements between parties. The provider should contact the Provider Enrollment Unit for additional information regarding reporting changes in operational structure.

## Change in Ownership

A new provider enrollment packet must be completed when a change in ownership (CHOW) or change in business organization (change from corporation to LLC, partnership, etc.) and a transfer of stock greater than five percent occurs. A change of five percent or more in stock ownership or profit sharing may require a new provider number. If the name of the company changes with no change in ownership or tax identification number (EIN), a CHOW is not considered to have occurred.

**LOUISIANA MEDICAID PROGRAM**             **ISSUED:**         **04/22/16**
                                          **REPLACED:**       **11/08/12**

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**
**SECTION 1.1:    PROVIDER REQUIREMENTS             PAGE(S) 10**

The new owner shall be subject to any restrictions, conditions, penalties, sanctions or other remedial action taken by the BHSF, any federal agency or other state agency against the prior owner or facility.

The following steps should be taken when reporting a CHOW:

- Notify the Provider Enrollment Unit in writing 60 days prior to the anticipate date of the CHOW and include the seven-digit Medicaid ID number and other identifying  information.
- For providers who are enrolled to participate in the Medicare Program, notify DHH  Health Standards 60 days prior to the anticipated date of the CHOW.
- For providers who submit cost reports, notify the Rate Setting and Audit Section 60 days  prior to the anticipated date of the CHOW.
- Submit the completed enrollment application and the required documentation to the  Provider Enrollment Unit immediately after the CHOW occurs. For those providers  who are enrolled to participate in the Medicare Program, CMS approval must be  received prior to submitting the application to the Provider Enrollment Unit. The new provider agreement is subject, but not limited to prior statements of deficiencies cited  by BHSF including plans of compliance and expiration dates.

Failure to timely report a change in ownership may result in fines and/or recoupment of any and all payments made in the interim of the CHOW taking place and the agency approving the action.

**Other Changes Required to be Reported**

The following changes must be reported:

- Decision to discontinue accepting Medicaid;
- Business Closure;
- Any change in licensing status (a copy of the updated license must be submitted with the change request);
- Death of a provider. The Medicaid provider number of a deceased provider cannot be used for any reason;
- Any change in Medicare certification, provider number or status. A claim will not crossover unless the correct Medicare provider number is in the Medicaid Management Information System (MMIS);
- Any change in account information affecting **Electronic Funds Transfer** (EFT)/ (direct deposit);

**LOUISIANA MEDICAID PROGRAM**                    **ISSUED:**        **04/22/16**
                                                  **REPLACED:**      **11/08/12**

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**
**SECTION 1.1:    PROVIDER REQUIREMENTS**                    **PAGE(S) 10**

- Changes must be submitted with a copy of a voided check (deposit slips are not accepted);
- Failure to update EFT information may result in payments being sent to incorrect accounts;
- A hardcopy check will not be reissued until the inappropriately routed funds are returned to the Department's account;
- Any change in the pay-to mailing address. Official Medicaid documents, including any checks, are mailed to the provider's "pay-to" address as listed on Medicaid files, not to the address written on a claim form. Therefore, it is imperative that any change in address be reported to Provider Enrollment Unit immediately;
- Any change in provider name must be reported;
- The correspondence must include the current provider name, new provider name and the effective date of the change;
- If a license is required, the updated license must be submitted with the notification; and
- Any change in telephone number. This telephone number should be a number where the provider or authorized agent may be contacted for questions. It should not be the corporate office unless all information is maintained at that location.

## Linking Professionals to Group Practice

A request for linkage of an individual professional practitioner to a group practice provider number requires the submission of a completed provider enrollment (**PE-50) form**. If the provider has an active Medicaid provider number, a **group linkage (LNK-01) form** must be completed and must include the effective date of the linkage. The form must be signed by the professional practitioner who is officially enrolled under the number being linked. The PE-50 and the LNK-01 forms can be found at www.lamedicaid.com.

Professional practitioners who change group affiliation should notify the Provider Enrollment Unit to ensure payments are sent to the correct provider/group. Payments and remittance advices may be delayed due to incorrect mailing addresses on the Medicaid file. When submitting a change of address for linkage or office relocations, the request should include:

- A request that the provider's file be updated with the current information;
- The 7-digit provider number; and
- An indication of whether the change is for a physical address and/or a "pay-to" address. The request requires the original signature of the provider who is officially enrolled under the provider number (stamped signatures/initials are not accepted).

LOUISIANA MEDICAID PROGRAM                  ISSUED:          04/22/16
                                            REPLACED:        11/08/12

## CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION
## SECTION 1.1:    PROVIDER REQUIREMENTS                    PAGE(S) 10

**Group Linkages Definitions**

**Individual Provider Number** – a seven-digit identification number issued to individuals who meet all enrollment requirements.  This number is then used for billing purposes.

**Professional Group Provider Number** – a seven-digit Medicaid provider number issued to any professional group who meets all eligibility requirements. This number is then used for billing purposes.

**Linkages of Professionals to Groups –** an individual practitioner's provider number can be "linked" to a group provider number for purposes of billing services furnished through the relationship between the individual practitioner and the group. Claims submitted under the group number, with an individual's practitioner's provider number included as the attending provider, will be processed and the remittance will be sent directly to the group's pay-to address. It is not necessary for the individual practitioner's pay-to address to be the same as the group's pay-to address for these remittance advice notices to be sent to the group.

## Taxpayer Identification

An **Employer Identification Number (EIN),** also known as a **Federal Taxpayer Identification Number (TIN**), is assigned to a **business** by the Internal Revenue Service (IRS). The EIN must be exactly as it appears on the IRS file and the pay-to name must be exactly how it appears on the Medicaid provider file. All individuals must report their Social Security number to the Bureau of Health Services Financing, but may also use a TIN for tax reporting purposes. The IRS considers the TIN incorrect if either the name or number shown on an account does not match a name or number combination in their files. The IRS sends the Department a tape identifying mismatches from our Medicaid provider files and the IRS files for previous years.

If appropriate action is not taken to correct the mismatches, the law requires the Bureau to withhold 31percent of the interest, dividends, and certain other payments that are made to your account. This is called backup withholding. In addition to backup withholding, a provider may be subject to a $50.00 penalty by the IRS for failing to give the correct name, TIN and/or EIN combination.

Any change in the TIN must be reported to the Provider Enrollment Unit.  Providers who obtain a new TIN must send a letter to the Provider Enrollment Unit as  notification of the new number and include any provider number affected by the change. Any pre-printed IRS document that shows the name and TIN is acceptable verification and should be forwarded to the Provider Enrollment Unit upon receipt.  **W-9 forms are not acceptable.**

**LOUISIANA MEDICAID PROGRAM** ISSUED: 04/22/16
REPLACED: 11/08/12

**CHAPTER 1: GENERAL INFORMATION AND ADMINISTRATION**
**SECTION 1.1: PROVIDER REQUIREMENTS** PAGE(S) 10

### Electronic Funds Transfer/Direct Deposit

Electronic Funds Transfer (EFT), also referred to as direct deposit, is mandatory for the reimbursement of all Medicaid providers. All new applications will be returned if EFT information is not included. The EFT enrollment process requires that a voided check, or a letter from the bank identifying the provider's account and routing number, be submitted with the provider agreement papers. A deposit slip for the account will not be accepted.

It is the provider's responsibility to ensure that the information contained in his/her EFT record is accurate. The Provider Enrollment Unit must be notified prior to a change in the provider's bank account in order to ensure that payments are made to the appropriate account. EFT payments that are sent to incorrect accounts can result in extensive delays in the subsequent receipt of payments.

Providers should be aware that the processing time for information changes to the EFT is approximately two to three weeks. In the interim, paper checks are mailed to the provider's pay to address.

Providers should review their monthly bank statement to identify payments made by the Department. The deposit account number on the bank statement consists of the middle five digits of the Medicaid provider number with two leading zeros plus the remittance advice number. The amount of the deposit is the same as the total payment shown on the financial page of the remittance advice.

Providers should attempt to resolve deposit problems with their accounting department or bank before contacting the Provider Enrollment Unit. Providers should contact the Provider Enrollment Unit for inquiries regarding EFT and the Provider Relations Unit regarding missing checks. Refer to Appendix B of this manual chapter for contact information.

Case 2:21-cv-00022-Z   Document 319   Filed 11/30/22   Page 255 of 410   PageID 11314

# RECIPIENT ELIGIBILITY

The Bureau of Health Services Financing (BHSF), within the Louisiana Department of Health (LDH), is responsible for determining Medicaid eligibility.

Individuals may apply for Medicaid by mail, online, in person, or through a responsible authorized representative at any Medicaid office or application center.

Individuals who are certified for Medicaid are classified into various eligibility categories or groups based on specified criteria. These criteria may affect provider reimbursement.

The regulations contained in Title 42 of the Code of Federal Regulations define the groups of people and the services a state must cover to qualify for federal matching payments. States define their programs to meet these federal requirements, and coverage of groups and benefits specified under federal law.

## Categorically Needy

Recipients classified as Categorically Needy must meet all requirements, including the income, and resource requirements. Payment for all covered services or equipment furnished to these recipients and billed to BHSF shall be considered payment in full. However, these recipients are responsible for a co-payment for drugs.

Recipients determined to be categorically needy include:

- Families who meet Low-Income Families with Children (LIFC) eligibility requirements;
- Pregnant women with family income at or below 200 percent of the Federal poverty level;
- Children under age 19 with family income up to 250 percent of the Federal poverty level;
- Caretakers (relatives or legal guardians who take care of children under the age of 18, or 19 if still in high school);
- Supplemental Security Income (SSI) recipients; and
- Individuals and couples who are living in medical institutions and who have a monthly income up to 300 percent of the SSI income standard (Federal benefit rate).

## Medically Needy

Medically Needy is an optional program.  However, states that elect to include this program are required to include certain children under age 18 and pregnant women who would be eligible as Categorically Needy if not for their income and resources.

Recipients may qualify as regular **Medically Needy** or **Spend-down Medically Needy**.
Regular Medically Needy recipients are those individuals or families who meet all LIFC related categorical requirements and whose income is within the Medically Needy Income Eligibility Standard (MNIES).

Spend-down Medically Needy recipients are those individuals or families who meet all LIFC or SSI related categorical requirements **and** whose resources fall within the Medically Needy resource limits, but whose income has been spent down to the MNIES.

Medically Needy recipients are identified on the Medicaid Eligibility Verification System (MEVS) and Recipient Eligibility Verification System (REVS).  MEVS and REVS denote the appropriate eligibility information based on the provider type of the inquiring provider.

Service restrictions apply to Medically Needy benefits and eligibility for service coverage should be verified.

The following services are not covered in the Medically Needy Program:

- Adult Dental Services or Dentures;
- Mental Health Clinic Services;
- Home and Community Based Waiver Services;
- Home Health (Nurse Aide and Physical Therapy); and
- Case Management Services.

Information detailing the other recipient categories and eligibility groups may be obtained by accessing the Medicaid Eligibility Manual on the LDH website.

Providers should refer recipients with questions regarding eligibility to the Louisiana Medicaid and LaCHIP Assistance Line. (Refer to Appendix B for contact information)

## Retroactive Eligible

Recipients may be eligible for benefits for the three months prior to the date of their Medicaid application provided they meet the eligibility criteria.

**LOUISIANA MEDICAID PROGRAM**  **ISSUED:**  **12/18/18**

**REPLACED:**  **11/20/13**

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**

**SECTION 1.2:  RECIPIENT ELIGIBILITY**  **PAGE(S) 5**

When a recipient has paid a provider for a service for which he/she would be entitled to have payment made under Medicaid, the provider may opt to refund the payment to the recipient and bill Medicaid for the service.  The recipient must furnish a valid Medicaid identification card for the dates of services provided during the timely filing period.  If a provider chooses not to refund the payment to the recipient, the recipient should be directed to the MMIS Retroactive Reimbursement Unit to request a refund.  (Refer to Appendix B for contact information)

## Medicaid Verification

### Medicaid Identification Cards

A plastic Healthy Louisiana identification card, with a unique identifying number, is issued to each eligible recipient by LDH.

These permanent identification cards contain a card control number (CCN) that can be used by the provider to verify Medicaid eligibility.  Eligibility information for that recipient, including third party liability and any restrictions, may be obtained by accessing information through MEVS or calling REVS.

Some types of Medicaid eligibility, such as Illegal/Ineligible Aliens (eligible for emergency services only) do not receive permanent identification cards.  Their verification of eligibility is contained on the Notice of Eligibility Decision issued by the local Medicaid office.  Providers should call the Medicaid/Card Questions hotline (refer to the contact information) to verify presumptive eligibility (PE) eligibility.

## Medicaid Eligibility Verification System

**MEVS** is an electronic system used to verify Medicaid recipient eligibility and third party liability (TPL).  This information can be accessed through personal computer (PC) software, an "eligibility card device", or computer terminal.  MEVS is available seven days per week, 24 hours per day, except for occasional short maintenance periods.

Providers can also access MEVS by contracting with telecommunications vendors ("Switch Vendors") who will provide a magnetic card reader, PC software, or a computer terminal necessary for system access.

| LOUISIANA MEDICAID PROGRAM | ISSUED: | 12/18/18 |
|---|---|---|
| | REPLACED: | 11/20/13 |

**CHAPTER 1:     GENERAL INFORMATION AND ADMINISTRATION**
**SECTION 1.2:   RECIPIENT ELIGIBILITY                         PAGE(S) 5**

## MEVS Access Data

Any two of the following pieces of information may be used to access the system and receive eligibility information from MEVS:

- CCN and card issue date;
- Recipient name;
- Recipient ID number;
- Date of birth; and
- Social security number.

## Recipient Eligibility Verification System

**REVS** is a telephonic system used to verify Medicaid recipient eligibility. It is available seven days a week, 24 hours per day, except for occasional short maintenance periods. REVS provides basic eligibility, service limits and restrictions, TPL, and program eligibility information. It is accessible through any touch-tone telephone equipment. (Refer to Appendix B for contact information)

## REVS Access Data

Providers may access recipient eligibility by using the following pieces of information:

- CCN and date of birth;
- CCN and social security number;
- Medicaid ID Number (valid during the last 12 months) and date of birth;
- Medicaid ID Number (valid during the last 12 months) and social security number; and
- Social security number and date of birth.

## MEVS and REVS Reminders

Failure to comply with these procedures may result in problems with MEVS and REVS:

- A valid eight-digit date of birth (mm/dd/yyyy) must be entered when using REVS or MEVS;

- Eight-digit dates (mm/dd/yyyy) must be used when entering any dates through either system;

- Where applicable, providers should listen to the menu and press the appropriate keys to obtain Lock-In Information through REVS;

- When using a recipient's 13-digit Medicaid ID number, remember that both systems carry only recipient numbers that are valid for the last 12 months. If you are entering an old number (valid prior to the last 12 months), you will receive a response that indicates the recipient is not on file;

- When using a 13-digit Medicaid ID number or a 16-digit CCN for your inquiry into either system, you will receive the most current, valid 13-digit Medicaid ID number as part of the eligibility response; or

- Claims must be filed with the 13-digit Medicaid ID number.

Every effort is made to ensure that all recipients' dates of birth are accurate on the Medicaid file. A REVS or MEVS reply of "recipient not on file" may be the result of an incorrect recipient date of birth on Medicaid files. In this situation, the provider should refer the recipient to his/her parish office or have the recipient call the Medicaid/Card Question line.

**NOTE**: **Eligibility is date specific.** It is important to confirm eligibility prior to providing the service. Providers who do not confirm eligibility risk the denial of reimbursement for services provided.

**LOUISIANA MEDICAID PROGRAM**                      **ISSUED:        06/01/11**
                                                                    **REPLACED:**

**CHAPTER 1:     GENERAL INFORMATION AND ADMINISTRATION**
**SECTION:  1.3   PROGRAM INTEGRITY                              PAGE(S) 11**

# PROGRAM INTEGRITY

To maintain the programmatic and fiscal integrity of the Medicaid Program, the federal government and state government have enacted laws, promulgated rules and regulations, and the Department of Health and Hospitals (DHH) has established policies concerning fraud and abuse. It is the responsibility of the provider to become familiar with these laws, rules, regulations, and policies.  This section was developed to assist the provider in becoming familiar with this vital information; but it is not all-inclusive, nor does it constitute legal authority.

Providers, recipients, and others may be subject to criminal prosecution, civil action, and/or administrative action for the violation of laws, rules, regulations, or policies applicable to the Medicaid Program.  Federal laws and regulations and state laws require that the Medicaid Program establish criteria that are consistent with recognized principles that afford due process of law where there may be fraud, abuse or other incorrect practices.  These laws and regulations also stipulate as well as arrange for the prompt referral to the proper authorities for investigation or review and authorize the DHH to conduct reviews of claims before and after claims are paid.

Generally, suspected criminal activities are investigated and prosecuted by the Medicaid Fraud Control Unit (MFCU) of the Attorney General's (AG) Office.  Civil actions are investigated and initiated by the DHH and/or the AG's Office.  Administrative actions are investigated and initiated by the DHH.  Depending on whether the action is criminal, civil, or administrative, different standards of proof and levels of due process apply.

## Program Integrity Section

The purpose of the Program Integrity Section is to assure the programmatic and fiscal integrity of the Louisiana Medical Assistance Program.  In order for the DHH to receive federal funding for Medicaid services, federal regulations mandate that DHH perform certain program integrity functions.  The primary functions of the Program Integrity Section are:

- Provider Enrollment
- Fraud and Abuse Detection
- Investigations
- Enforcement
- Administrative Sanctions
- Payment Error Rate Measurement (PERM)

**LOUISIANA MEDICAID PROGRAM**　　　　**ISSUED:**　　**06/01/11**
　　　　　　　　　　　　　　　　　　　　　**REPLACED:**

**CHAPTER 1:　　GENERAL INFORMATION AND ADMINISTRATION**
**SECTION:　1.3　PROGRAM INTEGRITY**　　　　　　　　　　**PAGE(S) 11**

The mandates that direct the functions of the Program Integrity Section can be found in:

- Federal laws and the Code of Federal Regulations;
- RS 46:437.1 - 440.3, the Medicaid Assistance Program Integrity Law (MAPIL);
- Title 50, Part I, Subpart 5, Chapter 41 of the Louisiana Administrative Code (LAC 50:I.Chapter 41.) – the Surveillance Utilization Review System (SURS) Rule;

### Provider Enrollment Unit

The fiscal intermediary is responsible for processing completed **provider enrollment** packets submitted by health care services providers requesting enrollment to participate in the Medicaid Program to provide specific types of services to Medicaid recipients.  If eligible for enrollment, a provider is assigned a separate Medicaid provider number for each specific type of service. Provider enrollment packets and other forms are available online under the Provider Enrollment link on the Louisiana Medicaid website. (Refer to the Appendix B for contact information)

### Fraud and Abuse Detection

When providers bill Medicaid, claims are paid using the **Medicaid Management Information System (MMIS)**.  A monthly data extraction of the claims processing system information is put into a relational data base.  This data is then "mined" to detect abnormal billing practices.

Complaints may also be used to detect fraud or abuse.  Complaint procedures are designed for use by interested parties to bring problems encountered with providers to the attention of the Program Integrity Section.

The Program Integrity Section receives complaints from providers, private citizens, other agencies or offices within DHH through the Fraud and Abuse Hotline, the DHH website or through written reports

The state has a toll-free hotline for reporting possible fraud and abuse in the Medicaid Program. Providers are encouraged to provide the hotline number to individuals who want to report possible cases of fraud or abuse.  (Refer to Appendix B)

### Investigations

An investigation is a review process where documents are compared to the requirements established by law, regulations, written policies and directives for a particular service.  An investigation is opened:  when questionable information is received as a result of data mining, or based on the information received from a complaint, or at the request of the Department.

**LOUISIANA MEDICAID PROGRAM**                    **ISSUED:**        **06/01/11**
                                                  **REPLACED:**

**CHAPTER 1:    GENERAL INFORMATION AND ADMINISTRATION**
**SECTION:  1.3   PROGRAM INTEGRITY**                    **PAGE(S) 11**

The Program Integrity Section requests additional information from the provider when an investigation is opened.   The type of information requested is determined by the type of investigation that is opened.

Medicaid has an absolute right to the records that are related to Medicaid recipients.  If records are requested through written notification, the provider is responsible for the cost of copying and mailing the information to the Program Integrity office.  If records are requested at an on-site review, the provider must make all requested records available to the Program Integrity staff.

The following provider errors are commonly noted during investigations.

- **Services Not Documented** – No documentation to support the billed services were ever provided to the recipient.
- **Medical Necessity Not Supported** – Documentation in the record does not support the medical necessity of the service billed.
- **Inferior Record Keeping** – Provider records are not in compliance with the requirements of the Medicaid program.
- **Up-coding** – Documentation in the record does not support the higher level of service billed.
- **Unbundling of Services** – Services were billed individually when they should have been billed as part of a group of services.

**Administrative Actions**

Federal and state laws and regulations assign responsibility and authority to the Department to bring administrative actions against providers, recipients and others who engage in fraudulent, abusive and/or other incorrect practices.

**Enforcement/Sanctions**

To ensure the quality, quantity, and need for services, Medicaid payments may be reviewed either prior to or after payment is made by the Bureau.   Administrative sanctions may be imposed against any Medicaid provider who does not comply with laws, rules, regulations, or policies.

Sanctions refer to administrative actions taken by the Bureau against a provider.  Sanctions are designed to remedy inefficient and/or illegal practices that do not comply with the Department's policies and procedures, statutes, and regulations.

Sanctions which may be imposed through the administrative process include, but are not limited to the following actions.

- Denial or revocation of enrollment

**LOUISIANA MEDICAID PROGRAM**      **ISSUED:**     **06/01/11**

                                                     **REPLACED:**

**CHAPTER 1:   GENERAL INFORMATION AND ADMINISTRATION**
**SECTION:  1.3   PROGRAM INTEGRITY**                 **PAGE(S) 11**

- Recommendation of revocation of licenses and/or certificates

- Withholding of payments

- Exclusion from the Medicaid Program

- Recovery of overpayments and imposition of administrative fines

**Grounds for Sanctioning Providers**

The Bureau may impose sanctions against a provider if any of the following conditions occur:

- A provider is not complying with the Department's policies, rules, and regulations, or the provider agreement that establishes the terms and conditions applicable to each provider's participation in the program;
- A provider has submitted a false or fraudulent application for provider status;
- A provider is not properly licensed or qualified, or a provider's professional license, certificate, or other authorization has not been renewed or has been revoked, suspended, or otherwise terminated;
- A provider has engaged in a course of conduct; or has performed an act for which official sanction has been applied by the licensing authority, professional peer population, or peer review board or organization; or has continued the poor conduct after having received notification by a licensing or reviewing authority indicating that the conduct should cease;
- A provider has failed to correct deficiencies in the delivery of services or billing practices after having received written notice of these deficiencies from the Bureau;
- A provider has been excluded from participation in Medicare because of fraudulent or abusive practices pursuant to **Public Law 95-142**, or has been convicted of Medicaid fraud (**Louisiana R.S. 14:70.1);**
- A provider has been convicted of a criminal offense relating to performance of a provider agreement with the State, to fraudulent billing practices, or to negligent practice resulting in death or injury to the provider's patient;
- A provider has presented false or fraudulent claims for services or merchandise for the purpose of obtaining greater compensation than that to which the provider is legally entitled;
- A provider has engaged in a practice of charging and accepting payment (in whole or in part) from recipients for services for which Medicaid has already made a payment;

**LOUISIANA MEDICAID PROGRAM**                ISSUED:        06/01/11
                                             REPLACED:

**CHAPTER 1:     GENERAL INFORMATION AND ADMINISTRATION**
**SECTION:  1.3   PROGRAM INTEGRITY                        PAGE(S) 11**

- A provider has rebated or accepted a fee or a portion of a fee for a patient referral;

- A provider has failed to repay or arrange to repay an identified overpayment or otherwise erroneous payment within ten working days after the provider receives written notice;

- A provider has failed, after having received a written request from the Bureau, to keep or to make available for inspection and audit, copies of records regarding claims filed for payment for providing services;

- A provider has failed to furnish any information requested by the Bureau or the fiscal intermediary regarding payments for providing goods and services

- A provider has made, or caused to be made, a false statement or a misrepresentation of a material fact concerning the administration of the Louisiana Medicaid Program;

- A provider has furnished goods or services to recipients that are in excess of the recipient's needs, not medically necessary, harmful to the recipient, or of grossly inadequate or inferior quality (This determination would be based upon competent medical judgment and evaluation.);

- Being found in violation of or entering a settlement under MAPIL;

- Failure to cooperate with the Bureau, its fiscal intermediary or the investigation officer during the post-payment or pre-payment process, an investigatory discussion, informal hearing or the administrative appeal process or any other legal process;

- Submitting bills or claims for payment or reimbursement to the Louisiana Medicaid Program on behalf of a person or entity which is serving out a period of exclusion from Medicaid, Medicare or any other publicly funded health care program.

- Engaging a systematic billing practice, which is abusive or fraudulent and which maximizes costs to the Louisiana Medicaid Program after written notice to cease;

- Failure to meet the terms of an agreement to repay or a settlement agreement entered into under MAPIL or the SURS rule;

- A provider, or a person with management responsibility for a provider, an officer or person owning (either directly or indirectly) 5% or more of the shares of stock or other evidences of ownership in a corporation, an owner of a sole proprietorship, or a partner in a partnership that is found to fall into one or more of the following categories;

  - Was previously barred from participation in the Medicaid Program;
  - Was a person with management responsibility for a previously terminated provider during the time of conduct that was the basis for that provider's termination from participation in the Medicaid Program;

---

- Was an officer or owner (directly or indirectly) of 5% or more of the shares of stock or other evidences of ownership or owner of a sole proprietorship or a partner of a partnership that was a provider during the time of conduct that was the basis for that provider's termination from participation in the Medicaid Program;
- Was engaged in practices prohibited by federal or state law or regulation;
- Was a person with management responsibility for a provider at the time that the provider engaged in practices prohibited by state or federal law or regulation;
- Was convicted of Medicaid fraud under federal or state law or regulation;
- Was a person with management responsibility for a provider at the time that the provider was convicted of Medicaid fraud under federal or state law or regulation;
- Was an officer or owner (directly or indirectly) of 5% or more of the shares of stock or other evidences of ownership; or sole proprietorship or a partnership that was a provider at the time the provider was convicted of Medicaid fraud under federal or state law or regulation; or
- Was an owner of a sole proprietorship or partner in a partnership that was a provider at the time such a provider was convicted of Medicaid fraud under federal or state laws and regulations.

**NOTE**:  This list is not all-inclusive.

Federal laws and regulations also provide for administrative actions.  Providers should refer to applicable federal laws and regulation and applicable sanctions.


## Levels of Administrative Actions and Sanctions

The Bureau may impose corrective actions and/or administrative sanctions against a Medicaid provider.

### Corrective Action Plans

The Bureau may at any time issue a notice of corrective action to a provider.  The provider shall either comply with the corrective action plan within ten working days or request an informal hearing within that time.  The purpose of the corrective action plan is to identify potential problem areas and correct them before they become significant discrepancies, deviations or violations.

**LOUISIANA MEDICAID PROGRAM**                    ISSUED:        06/01/11
                                                  REPLACED:

**CHAPTER 1:    GENERAL INFORMATION AND ADMINISTRATION**
**SECTION:  1.3   PROGRAM INTEGRITY**                         **PAGE(S) 11**

**Sanctions**

Sanctions may include:

- Issuing a warning;
- Requiring education and training at the provider's expense;
- Limiting the services that may be provided or the individuals to whom the services are provided;
- Requiring recoupment;
- Requiring recovery;
- Imposing judicial interest on outstanding recoveries or recoupment;
- Imposing reasonable costs;
- Excluding an individual or entity from participation;
- Suspending an individual or entity from participation;
- Requiring forfeiture of a posted bond;
- Imposing an arrangement to repay;
- Imposing monetary penalties not to exceed $10,000;
- Imposing withholding of payments;
- Requiring the provider receive prior authorization for any or all goods, services or supplies;
- Imposing fines and costs; or
- Requiring bonds or other forms of security.

**NOTE:**  This list is not all-inclusive.

The provider should refer to the laws and regulations related to sanctions for each program for which enrolled and should review the LAC 50:I., Chapter 41, Subchapter E.

**Exclusions**

Exclusion from the Medicaid Program may be either mandatory or permissive.  Health care fraud is a mandatory exclusion.  Permissive exclusions include other crimes and activities as contained in the SURS Rule for which an individual and/or entity may be excluded from Medicaid.

**Screenings for Exclusions and Sanctions**

The Office of Inspector General (OIG), under its Congressional mandate, established a program to exclude individuals and entities affected by the various legal authorities, contained in Section 1128 and 1156 of the Social Security Act.  The OIG maintains a list of all currently excluded parties called the List of Excluded Individuals/Entities.

**LOUISIANA MEDICAID PROGRAM**                    **ISSUED:**        **06/01/11**
                                                                    **REPLACED:**

**CHAPTER 1:    GENERAL INFORMATION AND ADMINISTRATION**
**SECTION: 1.3   PROGRAM INTEGRITY**                              **PAGE(S) 11**

Under the SURS Rule, providers have an obligation to ensure their employees are not and have not been excluded, restricted or convicted of a crime relative to a government funded health program.  Providers should check the OIG and the Excluded Parties List System (EPLS) websites to determine if an individual has been excluded, restricted or convicted.  (Refer to Appendix B for contact information)

**Background Checks**

Providers should perform background checks on all managers and employees in addition to contacting licensing boards at the time of hire and periodically thereafter.  Failure to do these checks will result in the provider being sanctioned and subject to recovery, fines and possible exclusion from Medicaid.

**Fraud**

Federal regulations and the SURS Rule prohibit individuals and/or entities that have been excluded from a government funded health program and/or convicted of health care fraud from participating in Medicaid or any other federally funded health care program.

**Practice Restrictions**

The SURS Rule mandates that when a restriction is placed on an individual or entity by another governing board, Medicaid will place a restriction on the individual or entity as well.


**Informal Hearings and Appeals**

An informal hearing is held at the request of a provider and is generally conducted by Program Integrity.  This is not a court proceeding, but a discussion on what information and records were used in the review.  Providers may opt to have legal representation, but it is not required.

After the informal hearing, providers receive a written notice of the results of the hearing and the recommended action to be taken.  If the recommended action is accepted, the administrative process ends and the recommended action will be implemented.  If the recommended action is rejected, the provider may initiate an appeal hearing which will be scheduled by the Division of Administrative Law-Health and Hospitals Section.

The Department of Health and Hospitals offers an opportunity to have a hearing to any provider who feels that he/she has been unfairly sanctioned.  The Division of Administrative Law-Health and Hospitals Section are responsible for conducting hearings for providers who have complaints.  Requests for hearings should be made in writing and explain the reason for the request.  All requests should be sent directly to the Division.  (Refer to Appendix B for contact information)

**LOUISIANA MEDICAID PROGRAM**                    **ISSUED:**        06/01/11
                                                   **REPLACED:**

**CHAPTER 1:    GENERAL INFORMATION AND ADMINISTRATION**
**SECTION:  1.3   PROGRAM INTEGRITY**                    **PAGE(S) 11**

Information regarding the appeals procedure may also be obtained by contacting the Division.

## Criminal Fraud

Fraud, in all aspects, is a matter of law rather than of ethics or abuse of privilege.  In criminal proceedings, the definition of fraud that governs between citizens and state government agencies is found in Louisiana R.S. 14:67 and Louisiana R.S. 14:70.1.

Legal action may be mandated under Section 1909 of the Social Security Act as amended by Public Law 95-142.  Prosecution for fraud and the imposition of a penalty, if the individual is found guilty, are prescribed by law and are the responsibility of the law enforcement officials and the courts.  All legal action is subject to due process of law and to the protection of the rights of the individual under the law.

Federal law also defines what is considered criminal conduct within federally funded programs. All providers should be aware of the applicable federal laws and regulations.

## Provider Criminal Fraud

Cases involving one or more of the following situations shall constitute sufficient grounds for a provider fraud referral:

- Billing for services, supplies, or equipment that are not rendered to, or used for, Medicaid patients;
- Billing for supplies or equipment that are unsuitable for the patient's needs or are so lacking in quality or sufficiency as to be virtually worthless;
- Claiming costs for non-allowable supplies, or equipment disguised as covered items;
- Misrepresenting dates and descriptions of services rendered, the identity of the provider or of the recipient;
- Submitting duplicate billing to the Medicaid Program or to the recipient, which appears to be a deliberate attempt to obtain additional reimbursement; and
- Arrangements made by providers with employees, independent contractors, suppliers, and others (through various devices such as commissions and fee splitting) which appear to be designed primarily to obtain or conceal illegal payments, and/or additional or duplicate reimbursement from Medicaid.

**NOTE:**  The above list is not all inclusive, but is rather illustrative of practices which may be considered criminal activities.

**LOUISIANA MEDICAID PROGRAM**                **ISSUED:        06/01/11**
                                              **REPLACED:**

**CHAPTER 1:    GENERAL INFORMATION AND ADMINISTRATION**
**SECTION:  1.3   PROGRAM INTEGRITY                    PAGE(S) 11**

**Recipient Criminal Fraud**

Cases involving one or more of the following situations shall constitute sufficient grounds for a recipient fraud referral:

- The misrepresentation of facts in order to become eligible, remain eligible or to receive greater benefits under the Medicaid Program;
- The transfer of a Medicaid Eligibility Card to a person not eligible to receive services or to a person whose benefits have been restricted or exhausted, thus enabling the person to receive unauthorized medical benefits; and
- The unauthorized use of a Medical Eligibility Card by persons not eligible to receive medical benefits under Medicaid.

**NOTE:**  The above list is not all inclusive, but is rather illustrative of practices which may be considered criminal activities.

**Abuse and Incorrect Practices**

Abuse by providers, recipients, and others include practices that are not criminal acts, but still represent the inappropriate use of public funds.

**Provider Abuse and Incorrect Practices**

Cases involving one or more of the situations listed below may constitute sufficient grounds for investigation of a provider for incorrect practices or abuse.  Abuse includes:

- The unintentional misrepresentation of dates and descriptions of services rendered, of the identity of the recipient of the services, or of the individual who rendered the services and gained a larger reimbursement than is entitled; and
- The solicitation or subsidization of anyone by paying or presenting any person with money or anything of value for the purpose of securing patients.  Providers, however, may use lawful advertising that abides by the Bureau's rules and regulations.

**NOTE:**  This list is not all-inclusive, but is rather illustrative of practices that are abusive or improper.

**LOUISIANA MEDICAID PROGRAM**          **ISSUED:        06/01/11**
                                        **REPLACED:**

**CHAPTER 1:     GENERAL INFORMATION AND ADMINISTRATION**
**SECTION:  1.3   PROGRAM INTEGRITY                          PAGE(S) 11**

**Recipient Abuse**

Cases involving one or more of the following situations may constitute sufficient grounds for a recipient abuse referral.  Providers are required to report to the Bureau suspected cases of recipient abuse related to the unnecessary or excessive use of:

- Prescription medication benefits of the Medicaid Program;
- Physician benefits of the program; and
- Other medical services and/or medical supplies that are benefits of the program.

**Civil Causes of Action**

The Medical Assistance Program Integrity Law (MAPIL), RS 46:437.1-46:440.3 provides for civil causes of action that can be taken against providers and others who violate the provisions of MAPIL.  MAPIL prohibits illegal remuneration, false claims, illegal acts regarding eligibility, and recipient lists among other things.  These civil causes of action are set forth in RS 46:438.1-46:438.5.  Individuals who are found by a court of law to have violated the provision of MAPIL are subject to triple damages, fines, cost, and fees.

**Payment Error Rate Measurement**

The Improper Payments Information Act of 2002 directed federal agencies to annually review programs that are susceptible to significant erroneous payments and report these improper payment estimates to Congress.  The Centers for Medicare and Medicaid Services (CMS) uses a 17-state rotation for payment error rate measurement (PERM).

Each state is reviewed once every three years.  This rotation allows states to plan for the review as they know in advance when they will be measured.  CMS is using a national contracting strategy consisting of three contractors to perform statistical calculations, medical records collection, and medical/data processing review of selected State Medicaid and CHIP (Children's Health Insurance Plan) fee-for-service (FFS) and managed care claims.

States are responsible for performing their own eligibility reviews using state and federal criteria.  Reviews are made to determine the accuracy of recipient eligibility along with payments for services rendered.  This information is then sent to CMS to be used to determine a state and national error rate.

**LOUISIANA MEDICAID PROGRAM**                     **ISSUED:**      **04/01/21**
                                                   **REPLACED:**    **10/18/17**

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**
**SECTION 1.4:  GENERAL CLAIMS FILING**                     **PAGE(S) 23**

# GENERAL CLAIMS FILING

This section provides general information on the process of submitting claims for Medicaid services to the fiscal intermediary (FI) for adjudication. Program specific information for filing claims is provided in each program manual chapter.

Additionally, the fiscal intermediary offers support to providers, vendors, billing agents or clearinghouses (VBCs) in matters related to electronic data interchange (EDI). This includes providing support for transactions implemented as mandated by the Health Insurance Portability and Accountability Act (HIPAA).

## Hard Copy/Paper Claim Forms

The most current CMS-1500, UB-04, American Dental Association (ADA), and Pharmacy National Council for Prescription Drug Programs (NCPDP) claim forms are to be used when filing paper claims. These forms can be obtained through most business form vendors, some office supply stores, or by contacting the appropriate national claim form outlet. Some state- specific claim forms are also required for billing.

All paper claims are scanned and stored online. This process allows the Provider Relations Department to respond more efficiently to claim inquiries by facilitating the retrieval and research of submitted claims.

It is strongly encouraged that providers file claims electronically. However, if you cannot submit claims electronically, or if Medicaid policy does not allow the claim to be submitted electronically, prepare your paper claim forms according to the following instructions to ensure appropriate and timely processing.

- Submit original claim forms (including resubmission of corrected claim forms);

- Properly align forms in printer to ensure information is within the appropriate boxes;

- Use high quality printer ribbons and cartridges – black ink only;

- Use font types Courier 12, Arial 11, or Times New Roman, font sizes 10-12;

- Do not use italic, bold, or underline features;

**LOUISIANA MEDICAID PROGRAM**                    **ISSUED:**     **04/01/21**
                                                  **REPLACED:**   **10/18/17**

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**
**SECTION 1.4:  GENERAL CLAIMS FILING**                    **PAGE(S) 23**

- Do not submit two-sided documents;

- Do not use marking pens. **Use a black ballpoint pen (medium point)**;

- Do not use highlighters on claim forms.  Providers who want to draw attention to a specific part of a report or attachment should circle that particular paragraph or sentence;

- Do not submit carbon copies under any circumstances; and

- Ensure that claim forms are standard size of 8 ½" x 11", not smaller or larger.

**Attachments**

Claims with attachments must be billed hard copy.  All claim attachments should be standard 8 ½ X 11 sheets. Any attachments larger or smaller than this size should be copied onto standard sized paper. If it is necessary to attach documentation to a claim, the documents must be placed directly behind each claim that requires this documentation. Therefore, it may be necessary to make multiple copies of the documents if they must be placed with multiple claims.

**Receiving and Screening Paper Claims**

When a paper claim is received, it is screened for missing information. If the provider name, the provider number, recipient Medicaid identification number, and/or service dates are missing, the claim is rejected. The provider signature is optional on most claims. The Certification of Claims (paper and electronic) is signed by the provider at the time of enrollment in the Medicaid Program.

Claims which have all the necessary items completed for claims processing will proceed to the next part of the claims processing cycle, in which the claim is microfilmed, given a unique 13- digit internal control number (ICN) and entered into the computer for processing.

**Returned Claims**

If the claim is rejected because of missing or incomplete items, the original claim will be returned accompanied by a "reject" letter. The reject letter will indicate why the claim has been returned. A returned claim will not appear on the Remittance Advice (RA) because it will not have entered the claims processing system. The claim will not be microfilmed and given an ICN before being returned to the provider and it cannot be considered as proof of timely filing.

**LOUISIANA MEDICAID PROGRAM**                    **ISSUED:        04/01/21**
                                                  **REPLACED:      10/18/17**

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**

**SECTION 1.4:  GENERAL CLAIMS FILING**                    **PAGE(S) 23**

### Changes to Claim Forms

It is the policy of the Medicaid Program that the fiscal intermediary staff are not allowed to change any information on a provider's claim form. Therefore, if changes are required on a claim, the provider or its billing agent must make those changes and resubmit the claim.

### Data Entry

Data entry personnel do not make any attempts to interpret the claim form – they merely enter the data as found on the form. If the data is incorrect or is not in the correct location, the claim will not process correctly.

### General Reminders

- Signatures are optional on paper claim forms. Providers may choose to submit stamped or computer-generated signatures;

- Continuous feed forms must be torn apart before submission; and

- The recipient's 13-digit Medicaid ID number must be used to bill claims. **The 16-digit CCN number from the plastic ID card is NOT acceptable.**

The Medicaid Program is required to make payment decisions based on the documentation submitted on the claim.

## Electronic Claims

Providers are strongly encouraged to submit claims using the Electronic Data Interchange (EDI). Filing claims through EDI, allows a provider or a third party contractor (vendor, billing agent or clearinghouse) to submit Medicaid claims to the fiscal intermediary via telecommunications (modem). A list of VBCs that provide electronic billing services is available on the Louisiana Medicaid web site, www.lamedicaid.com, link HIPAA Information Center, VBC List.

Prior to billing electronically, providers must obtain a submitter ID number through the FI's Provider Enrollment Unit or contract with an approved submitter. Once the submitter number is loaded on the provider file, the FI will process test claims supplied by the provider to determine software formatting issues. Billing electronically requires software that complies with the HIPAA standards. Please refer to the HIPAA Transaction Companion Guide.

**LOUISIANA MEDICAID PROGRAM**                    **ISSUED:**        **04/01/21**
                                                 **REPLACED:**      **10/18/17**

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**
**SECTION 1.4:  GENERAL CLAIMS FILING**                    **PAGE(S) 23**

All claims received via electronic media must satisfy the criteria listed in the EDI Companion Guide for that type of service. Companion Guides are located on the Medicaid web site.

Providers that submit claims electronically must complete an EDI Certification form signed by the authorized Medicaid provider or billing agent. Failure to submit the required form will result in deactivation of the submitter number. If a number is deactivated, the certification form will have to be received hard copy (no faxes) in the fiscal intermediary EDI Department before the number is reactivated.  This will result in a delay in payment for providers.

Providers should verify with their submitter that this requirement has been met in order to ensure no delays in claims payment.

Certification forms are located on the Louisiana Medicaid web site, link EDI Information. Submitters must mail the Annual Certification Forms to the FI. (Refer to the Appendix B for contact information)

Providers, who wish to submit claims electronically may download and complete an EDI packet from this web site, link Provider Enrollment. Providers should select the certification form in the packet applicable to their provider type and make copies as necessary for submission.

**Advantages of Electronic Claims**

Submitting claims electronically has several advantages.  The advantages include:

- Increased cash flow and faster payment;

- Improved claims control;

- Automated receivables information;

- Improved claim reporting by observation of errors; and

- Reduced errors through pre-editing claims information.

**LOUISIANA MEDICAID PROGRAM**　　　　　　　**ISSUED:**　　**04/01/21**
　　　　　　　　　　　　　　　　　　　　　　**REPLACED:**　　**10/18/17**

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**

**SECTION 1.4:  GENERAL CLAIMS FILING**　　　　　　**PAGE(S) 23**

<br>

### Available Electronic Transactions

Available electronic transactions include the following documents:

- Health Care Claim: Professional ASC X12N 837

- Health Care Claim: Institutional ASC X12N 837

- Health Care Claim: Dental ASC X12N 837

- Health Care Payment/Advice ASC X12N 835

- Health Care Claim Status Request and Response ASC X12N 276/277

- Health Care Eligibility Benefit Inquiry and Response ASC X12N 270/271

- Health Care Services Review: Request for Review and Response ASC X12N 278

- Transmission Receipt Acknowledgment ASC X12 997

- Payroll Deducted and Other Group Premium Payment for Insurance Products ASC X12N 820

- Benefit Enrollment and Maintenance ASC X12N 834

### Timely Filing Guidelines

In order to be reimbursed for services rendered, providers must comply with the following timely filing guidelines established by Louisiana Medicaid:

- Medicaid only claims must be filed within 12 months of the date of service;

- Claims for recipients who have Medicare and Medicaid coverage must be filed with the Medicare fiscal intermediary within 12 months of the date of service in order to meet Medicaid's timely filing regulations;

- Claims which fail to cross over electronically from Medicare must be submitted hard copy to Medicaid within six months from the date on the Medicare Explanation of

**LOUISIANA MEDICAID PROGRAM**      **ISSUED:**      **04/01/21**
                                    **REPLACED:**    **10/18/17**

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**

**SECTION 1.4:  GENERAL CLAIMS FILING**                **PAGE(S) 23**

Medicare Benefits (EOMB), provided that they were filed with Medicare within one year from the date of service; and

- Claims with third-party payment must be filed with Medicaid within 12 months of the date of service.

**Claims Exceeding the Initial Timely Filing Limit**

Medicaid claims received after the initial one-year timely filing limit (one year from the date of service or date of retroactive certification) cannot be processed unless the provider is able to furnish documentation that verifies timely filing. Proof of timely filing may include one the following:

- An electronic Claims Status Inquiry (e-CSI) screen print indicating that the claim was processed within the specified time frame;

- A remittance advice indicating that the claim was processed within the specified timeframe; and

- Correspondence from the state or parish office concerning the claim and/or the eligibility of the recipient.

**All proof of timely filing documentation must reference the individual recipient and date of service.** RA pages and e-CSI screen prints must contain the specific recipient information, provider information, and date of service to be considered as proof of timely filing.

Louisiana Medicaid does not accept the following as proof of timely filing:

- Printouts of Medicaid Electronic Remittance Advice (ERA) screens;

- Rejection letters accompanying returned claims are not considered proof of timely filing as they do not reference a specific individual recipient or date of service; and

- Post Office "certified" mail receipts and receipts from other delivery carriers.

**NOTE**: To ensure accurate processing when resubmitting the claim and documentation, providers must be certain that the claim is legible.

**LOUISIANA MEDICAID PROGRAM**                   **ISSUED:**      **04/01/21**
                                                 **REPLACED:**    **10/18/17**

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**

**SECTION 1.4:  GENERAL CLAIMS FILING**                      **PAGE(S) 23**

---

**Claims beyond the Two Year Timely Filing Limit**

Claims with dates of service two years old must be submitted to Louisiana Department of Health (LDH) for review and must be submitted with proof of timely filing within the initial one-year filing limit. These claims must meet one of the following criteria:

- The recipient was certified for retroactive Medicaid benefits, and the claim was filed within 12 months of the date that retroactive eligibility was granted;

- The recipient won a Medicare or SSI appeal in which he or she was granted retroactive Medicaid benefits; and

- The failure of the claim to pay was the fault of the fiscal intermediary or the Louisiana Medicaid Program, rather than the provider's fault, each time the claim was adjudicated.

In order to be considered for the 2-year override, requests must include a cover letter describing the criterion that has been met and supporting documentation. Requests received that do not meet these requirements will be returned to the provider.

**Billing the Recipient**

The following is a non-inclusive list of situations when the recipient cannot be billed for services rendered:

- Charges above the Medicaid maximum allowable fee amount;

- Claims denied due to provider error;

- Errors made by BHSF, the FI, or the TPL collections contractor or changes in state and federal mandates;

- Service(s) denied because the provider failed to request prior authorization or failed to meet procedural requirements;

- Claim balances remaining after another third party source such as Medicare, health insurance, TRICARE, etc. has made payments;

---

**LOUISIANA MEDICAID PROGRAM**                    **ISSUED:**        **04/01/21**
                                                  **REPLACED:**      **10/18/17**

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**
**SECTION 1.4:  GENERAL CLAIMS FILING**                    **PAGE(S) 23**

- Completion and submission of a Medicaid claim form;

- Telephone calls and missed appointments; and

- Costs associated with copying medical records.

### Recipient's Responsibility

The following is a non-inclusive list of situations when a recipient may be billed for services rendered:

- The Medicaid recipient was ineligible on the date of service;

- The service is not covered under the scope of the Medicaid Program or exceeds the program benefit limitations; and

- The recipient may be liable for the entire claim or a portion of the claim when it is determined that the services were not medically necessary.

**NOTE:** A provider can only bill a recipient for non-covered services, if the recipient was informed in advance, verbally and in writing, that the service(s) were not covered by Medicaid and the recipient agrees to accept the responsibility for payment. **The provider should obtain a signed statement or form which documents that the recipient was verbally informed of the out- of-pocket expense.**

### Third Party Liability

**Federal regulations and applicable state laws require that Third Party resources be used before Medicaid is billed. Third Party Liability (TPL)** refers to those payment resources available from both private and public health insurance and from other liable sources, such as liability and casualty insurance, which can be applied toward the recipient's medical and health expenses **as** Medicaid, by law, is intended to be the payer of last resort. Providers should utilize REVS or MEVS to verify the recipient's eligibility which will include information about Third Party Liability (TPL) coverage if applicable. Information given includes the name and mailing address of the TPL carrier, the assigned TPL carrier code as well as any restrictions to or exclusions from the policy, if known. Providers may obtain an alpha or numeric listing of the TPL carrier codes to assist them in verifying the correct TPL carrier code for placement on their claims. The TPL Carrier Code Listings can be found on the Medicaid website at  www.lamedicaid.com  under "Forms/Files" or by contacting the FI.

---

**LOUISIANA MEDICAID PROGRAM**   ISSUED:   04/01/21
   REPLACED:   10/18/17

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**
**SECTION 1.4:  GENERAL CLAIMS FILING**   PAGE(S) 23

The provider should submit the "Medicaid Recipient Insurance Information Update" form to Health Management Systems (HMS) requesting an update when the insurance and carrier code are incorrect, the insurance coverage has ended, and/or the recipient's insurance coverage is not on the file.

The form may be found on the Louisiana Medicaid website. A denial letter or explanation of benefits (EOB) from the TPL carrier should accompany these requests. HMS will verify the information and correct the recipient's file. The fax and email information can be found on LaMedicaid.com along with follow up contact information.

When a TPL update is necessary, the associated claim(s) should not be submitted to the payer (MCO or FFS Medicaid) for processing until the TPL update is made on recipient's file in the payer's system. Providers should re-verify updates through REVS or MEVS to confirm that the TPL update has occurred in the fee-for-service system when FFS is the payer, and re-verify updates through the MCO provider portal to confirm the TPL update has occurred when the MCO is the payer.

If the TPL insurance and carrier code is correct, the provider should enter the carrier code on the claim in the designated area, and submit the claim along with the TPL carrier's EOB if the claim is being billed hard copy to the FI for processing.

Louisiana Medicaid now accepts TPL claims billed electronically (via Electronic Data Interchange (EDI). Providers are no-longer required to bill TPL claims hard copy with the primary payer's **explanation of benefits** attached. The primary benefit of electronically submitting these claims is the expedition of processing and payment.

Providers are responsible for entering and transmitting the accurate and appropriate TPL information from the primary payer's EOB and the 6-digit carrier code into the 837 Electronic Data Interchange (EDI) transactions before submission to Louisiana Medicaid.

It is very important that providers notify their vendors, billing agents and clearinghouses (VBC's) of this important capability and to coordinate with them to make all the needed changes to their software which will allow these transactions to be processed correctly and timely. Providers may contact the FI for testing or other EDI questions.

**Third Party Sources**

If a payment is received from any source **prior to billing** Medicaid the provider is **required** to inform Medicaid of such payment. Medicaid **will reduce** the Medicaid allowable fee amount by the prior payment.

**LOUISIANA MEDICAID PROGRAM**                    ISSUED:        04/01/21
                                                  REPLACED:      10/18/17

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**
**SECTION 1.4:  GENERAL CLAIMS FILING**                    PAGE(S) 23

The following third parties must be billed prior to billing Medicaid. This list is not inclusive.

- Medicare Parts A and B;

- Health insurance:

    - Policies and indemnity policies that make payment when a medical service is provided and that restrict payment to the period of hospital confinement.

    - Policies that pay income supplements for lost income due to a disability or policies that make a payment for a disability, such as a weekly disability policy, are not included;

- Major medical, drug, vision care and other supplements to basic health insurance contracts;

- TRICARE – provides coverage for off base medical services to dependents of uniformed service personnel, active or retired;

- Veteran Administration (CHAMP-VA) provides coverage for medical services to dependents of living and deceased disabled veterans;

- Railroad Retirement;

- Automobile medical insurance;

- Worker's compensation;

- Liability insurance – includes automobile insurance and other public liability policies, such as home accident insurance, etc.;

- Family health insurance carried by an absent parent;

- Black Lung Benefits; and

- United Mine Workers of America Health and Retirement Fund, and donated funds.

**LOUISIANA MEDICAID PROGRAM**        **ISSUED:**        **04/01/21**
                                                          **REPLACED:**        **10/18/17**

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**
**SECTION 1.4:  GENERAL CLAIMS FILING**                        **PAGE(S) 23**

**Billing Medicare and Other Third Party Sources**

**Medicare/Medicaid Crossover**

**Dual Eligibles**

Dual eligibles are recipients who have Medicare and Medicaid coverage. Medicaid will reimburse the provider an amount up to the full amount of Medicare's statement of liability for co-insurance and deductible for Qualified Medicare Beneficiaries (QMB)

For claims in which Medicare's reimbursement exceeds the maximum allowable by Medicaid, **Medicaid will "zero" pay the claim. This means that the claim will be shown in the Approved Claims section of the RA with a "$0" shown in the payment column**. This claim is considered "paid in full" and the provider may not seek additional remuneration from the recipient.

Medicaid will pay up to the Medicare deductible and coinsurance on Medicare approved claims for non-Qualified Medicare Beneficiaries (non-QMB) receiving both Medicare and Medicaid, provided the procedure is covered by Medicaid. Medicaid will reimburse the provider an amount up to the full amount of Medicare's statement of liability for co-insurance and deductible as long as it does not exceed Medicaid's allowable reimbursement for the service. Medicaid will "zero' pay the claim when Medicare's reimbursement exceeds the maximum allowable by Medicaid.

If a recipient has both Medicare and Medicaid coverage, providers should file claims in the appropriate manner with the regional Medicare intermediary/carrier, making sure the recipient's Medicaid number is included on the Medicare claim form.

Once the Medicare intermediary/carrier has processed/paid their percentage of the approved charges, Medicare will electronically submit a "crossover" claim to the Medicaid FI that includes the co-insurance and/or deductible. If the "crossover" claim is denied by Medicare, the provider must submit a corrected claim to Medicare, if applicable. If the "crossover" claim is not received by the FI from Medicare, then the provider must submit a hard copy claim to the FI for payment of Medicaid's responsibility.

To process hard copy Medicare crossover claims, the provider must do the following:

- Make a copy of the claim filed to Medicare;

- Put the Medicaid provider number and recipient Medicaid number in the appropriate form locators; and

**LOUISIANA MEDICAID PROGRAM**     **ISSUED:**      **04/01/21**

                                                  **REPLACED:**     **10/18/17**

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**

**SECTION 1.4:  GENERAL CLAIMS FILING**     **PAGE(S) 23**

- Attach a legible copy of the Medicare EOB including edit/denial descriptions to the claim.

In addition, all of the EOB data, such as patient name and dates of service must match. Mail the hard copy Medicare crossover claim to the Medicaid FI. Once a claim is received, the claim will be processed, and reimbursement will be made to the provider.

**NOTE**: The provider should receive the Medicaid payment four to six weeks after receiving the Medicare payment.

If a provider's crossover claim does not appear on the RA within six weeks of the Medicare date of pay, the claim has failed to crossover electronically and must be filed hard copy.

**Medicare Advantage Plan Claims**

All recipients participating in a Medicare Advantage Plan must have both Medicare Part A and Medicare Part B.

The Medicare Advantage Care Plans have been added to the Medicaid Third Party Resource File for the appropriate recipients with six-digit alpha-numeric carrier codes that begin with the letter "H". A list of carrier codes can be accessed on the Louisiana Medicaid website.

Providers must submit hard copy claims with the Medicare Advantage Plan EOB attached and the six-digit carrier code entered correctly on the form in order for the claim to process correctly.

Hard copy claims submitted without the plan EOB and without a six-digit carrier code will not be processed.

A Medicare Advantage Plan institutional or professional cover sheet **MUST** be completed in its entirety **for each claim** and attached to the top of the claim and EOB. Claims received without this cover sheet will be rejected. A copy of these cover sheets may be obtained from the Louisiana Medicaid website at www.lamedicaid.com under "Forms/Files".

**Discovery of Private Insurance Eligibility after Medicaid Payment**

Recoupment of any Medicaid payments made prior to discovery of a recipient's private insurance eligibility is routinely handled by Health Management Systems (HMS), a TPL collections contractor. This private company is contracted by LDH to review payments and recoup any payment issued as Medicaid being the primary payer when the recipient had Medicare or private insurance.

HMS identifies these claims and notifies the provider via letter with an attached claim report of Medicaid recipients whose claims paid as Medicaid primary when other resources were available.

One week after the letter is mailed; the provider is contacted to verify receipt of the letter, answer questions, and discuss documentation.  Ten days prior to date of recoupment, the provider will again be contacted by HMS to ensure that they understood the requirements and confirm the required process. At the end of the 60 days, information is sent to the FI to recoup the payments.

### Discovery of Medicare Eligibility after Medicaid Payment

Recoupment of any Medicaid payments made prior to discovery of a recipient's Medicare eligibility is routinely handled by the fiscal intermediary (FI) and HMS. Based on the information provided by LDH and the data from CMS with regard to Medicare retro-eligibility, the FI initiates a quarterly Medicare recoupment. HMS utilizes the same information and bills for any additional claims that they have identified. HMS identifies these claims and notifies the provider via letter with an attached claim report of Medicaid recipients whose claims paid as Medicaid primary when other resources were available.

One week after the letter is mailed; the provider is contacted to verify receipt of the letter, answer questions, and discuss documentation. The providers are allowed approximately 30 days to bill Medicare. Ten days prior to date of recoupment, the provider will again be contacted by HMS to ensure that they understood the requirements and timeframes. At the end of the 30 days, information is sent to the FI to recoup the payments.

When an "H" appears at the beginning of the medical records number found on the Medicaid remittance advice, it is a HMS recoupment. For further information, the provider may call the HMS Provider Recoupment Team (refer to Appendix B for contact information).

### Resubmitting Claims Following HMS Recoveries

In instances where HMS has recovered payments from providers due to Medicare or private insurance coverage, providers have six months from the date of payment of the primary payer (Medicare or private insurance) to file the secondary claim to Louisiana Medicaid for consideration. These claims should be submitted to the fiscal intermediary for processing.

There are times when the timely filing limit for submitting an original claim to the private insurance payer has expired. In cases where the claim cannot be submitted to the primary payer for consideration due to filing deadlines, providers have six months from the recoupment of the Medicaid payment by Medicaid's TPL contractor to re-submit the claim to Medicaid for reconsideration. The claim, along with documentation indicating that the timely filing limit has

**LOUISIANA MEDICAID PROGRAM** ISSUED: 04/01/21
REPLACED: 10/18/17

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**
**SECTION 1.4:  GENERAL CLAIMS FILING** PAGE(S) 23

expired with the primary payer, must be submitted to HMS for reconsideration.

**Third Party Payment or Denial**

Third Party Liability (TPL) claims must be billed to the FI. Effective with processing date March 1, 2008, Louisiana Medicaid will process TPL claims differently for all recipients, and the payment calculation will change.

**Hardcopy Claims**

Providers who bill hard copy claims must continue to do so and attach a copy of the EOB. In addition, remarks, comments, and/or edit descriptions from the TPL carrier must be legible and attached to the claim. With the exception of Medicare, the assigned six-digit carrier code must be entered correctly in the designated block/field/form locator of the claim form. The dates of service, procedure codes and total charges on the primary EOB must match the claim submitted to Medicaid or the claim will be rejected. In addition, all Medicaid requirements such as pre- certification or prior authorization **must** be met before payment will be considered.

Providers will continue to enter the total TPL payment amount in the "prior payments" field of the claim, but will no longer enter the contractual adjustment amount as a part of the TPL payment amount.

Refer to the specific program manual for instructions on entering these key pieces of information on the claim form.)

**Electronic Claims**

Louisiana Medicaid will accept and process TPL claims submitted electronically. It will no longer be necessary for providers to submit TPL claims hard copy with EOBs attached.

Providers must enter the appropriate and accurate information from the primary payer's EOB for transmission electronically to Louisiana Medicaid for processing and payment**.**

Post-payment reviews will be conducted to ensure that accurate information is being submitted by providers. Detailed information concerning correct entry of TPL data in the 837 electronic specifications may be found in the Companion Guide(s) located on the Louisiana Medicaid web site, link "HIPAA Billing Instructions and Companion Guides". Providers must choose the appropriate Companion Guide applicable to the 837 transaction that will be submitted.

Claims denied by the TPL carrier must be reconciled with the carrier before the claim is submitted

**LOUISIANA MEDICAID PROGRAM**                    **ISSUED:**        **04/01/21**
                                                  **REPLACED:**      **10/18/17**

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**
**SECTION 1.4:  GENERAL CLAIMS FILING**                    **PAGE(S) 23**

to Medicaid for processing.

Providers may contact the FI's EDI Department with questions concerning EDI transmissions (Refer to Appendix B for contact information).

## Payment Methodology

When a recipient has other insurance, the recipient must follow any and all requirements of that insurance since it is primary.  If a recipient does NOT follow their private insurance rules and regulations, Medicaid will not be responsible for considering payment of those services. Thus, the recipient is responsible for the payment of the services. Providers must determine prior to providing services, to which commercial plan the recipient belongs and if the provider of service is a part of the network of that particular plan.

Recipients must be informed prior to the service that they will be responsible for the payment if they choose to obtain the services of an out-of-network provider and their commercial plan does not offer out-of-network benefits.

Louisiana Medicaid will process these claims as they were processed by the primary payer. The payment information indicated on the primary payer's EOB will be used to process the claim.

Additionally, Medicaid TPL payments will be calculated differently for recipients enrolled through the Louisiana Health Insurance Premium Payment Program (LAHIPP).

**Claims Payment for LAHIPP Recipients**

For recipients enrolled in LAHIPP, once the claim has been processed and paid by the primary carrier, the Medicaid Program will process and pay the full patient responsibility (co- pay, coinsurance, and/or deductible) - regardless of Medicaid's allowed amount, billed charges, or TPL payment amount. However, recipients must follow the policies of the primary plan, and only in certain circumstances will Medicaid consider payment of claims that are denied by the primary payer.

**Payment of Non-LAHIPP Secondary Claims**

Medicaid will use a comparison methodology to pay TPL claims for non-LAHIPP recipients with primary insurance. TPL claims must be processed by the primary payer, and TPL payment amount will be applied just as the primary payer indicates on the EOB.  If there is only a total TPL amount on the EOB, "spend down" methodology will continue to be utilized. The payment will be made based on the lesser of:

**LOUISIANA MEDICAID PROGRAM**          **ISSUED:**          **04/01/21**
                                        **REPLACED:**        **10/18/17**

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**

**SECTION 1.4:  GENERAL CLAIMS FILING**                    **PAGE(S) 23**

- The Medicaid allowed amount minus TPL payment, or

- The total patient responsibility amount (co-pay, co-insurance, and/or deductible).

**NOTE:** For all TPL claims, Medicaid will never pay more than the total co-pay, coinsurance and/or deductible. If co-pay, co-insurance and/or deductible are not owed, Medicaid will zero pay the claim.

**Receipt of Duplicate Payments**

If a provider receives payment from a third party carrier and a Medicaid payment for the same service, the amount of the Medicaid payment must be returned to Medicaid within 30 days.

**Refund Process**

When errors in billing occur (e.g., duplicate payments), instead of simply refunding payments, **providers should initiate claim adjustments or voids.** However, providers who find it necessary to refund a payment; should make checks payable to LDH, Bureau of Health Services Financing, and mail the refund with sufficient documentation to the Payment Management Section. **Refund checks should not be made payable to the FI.** (Refer to Appendix B for contact information).

To reconcile an account with the Department, providers must attach a copy of the remittance advice to the return or refund check and indicate which claim payments are being refunded. In addition, providers must explain the reason for the return or refund payment.

To determine the amount of a refund, providers should consider the following rules:

- Whenever a duplicate payment is made, the full amount of the second payment must be refunded; and

- If another insurance company pays after Medicaid has made its payment, the full amount of the Medicaid payment must be refunded and the provider should file the claim with the EOB from the private insurance.

**Note:** Adjustment/voided claims should be the provider's initial consideration. A refund check should be a last option, as this process takes a much longer time period to be completed and does not provide a clear audit trail**.**

**LOUISIANA MEDICAID PROGRAM**                    **ISSUED:**       **04/01/21**
                                                   **REPLACED:**    **10/18/17**

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**
**SECTION 1.4:  GENERAL CLAIMS FILING**                    **PAGE(S) 23**

**Trauma Recovery**

A provider may not pursue a liable or potentially liable third party for payment in excess of the amount paid by Medicaid. (**LAC 50: I:8349**).

## Request for Medical Information

### Request from Recipient or Family Member or Insurance Company

If a provider receives a request for medical bills or other information from the recipient or someone acting on behalf of the recipient, such as an attorney, insurance company, etc., the information may be released with the proper authorization from the recipient. Information requested by an insurance company with whom a claim has been filed may be filed directly with the carrier.

### Request from Attorneys

Providers must promptly comply with requests from a recipient's attorney when requested in cases of personal injuries. Providers should follow the following procedures:

- Obtain a signed authorization from the recipient before giving any report; verbal or written;

- Compile the requested information. Forward this information to the attorney.  A statement may be enclosed for copying the records; and

- Mail a copy of the written request and authorization to the Bureau's TPL Trauma Unit.

**LOUISIANA MEDICAID PROGRAM**              **ISSUED:**      **04/01/21**
                                           **REPLACED:**    **10/18/17**

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**
**SECTION 1.4:  GENERAL CLAIMS FILING**                    **PAGE(S) 23**

Medical information concerning a recipient that is released by a provider must contain the following statements/information:

- The person is a Medicaid recipient;

- The recipient's Medicaid identification number; and

- The bill has been paid by Medicaid or will be submitted to Medicaid for payment.

Providers who furnish medical information to attorneys, insurers, or anyone else must obtain a 3" x 3" ANNOTATION STAMP and must ensure that all outgoing medical information bears the stamp, which notifies the receiver that services have been provided under Louisiana's Medicaid Program. A sample of this stamp is located on our web site along with the notification form.

## Methods of Payment for Child Support Enforcement Claims and Preventive Pediatric Care Pay and Chase

Louisiana Medicaid uses the "pay and chase" method of payment for **preventive pediatric care services and prescription drug services** for individuals with health insurance coverage.  This means that most providers are not required to file health insurance claims with private carriers when the service meets the pay and chase criteria.  The Bureau of Health Services Financing (BHSF) seeks recovery of insurance benefits from the carrier within 60 days after claim adjudication when the provider chooses not to pursue health insurance payments.

Service classes which do not require private health insurance claim filing by most providers are:

- Primary preventive pediatric care diagnoses are confined to those listed here: Diagnosis Codes related to Preventive Pediatric Care Services.  Individuals under 21 years of age qualify.  **Hospitals are not included and must continue to file claims with the health insurance carriers**;

- EPSDT (Early and Periodic Screening, Diagnostics and Treatment) medical, vision, and hearing screening services;

- EPSDT dental services;

- EPSDT services for children with special needs (formerly referred to as school health services) which result from screening and are rendered by school boards;

**LOUISIANA MEDICAID PROGRAM**                 **ISSUED:**        **04/01/21**
                                               **REPLACED:**      **10/18/17**

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**
**SECTION 1.4:  GENERAL CLAIMS FILING**                 **PAGE(S) 23**

- Services which are a result of an EPSDT referral, indicated by entering "Y" in block 24H of the HCFA-1500 claim form or "1" as a condition code on the UB-92 (form locators 24-30); and

- Services for Medicaid eligibles whose health insurance is provided by an absent parent who is under the jurisdiction of the State Child Support Enforcement Agency are now subject to a "wait and see period." Payment for these claims can only be made after the required documentation is attached to a hard copy claim and submitted to the state's Fiscal Intermediary demonstrating that 100 days have elapsed since the provider billed the responsible third party and the provider is still pending payment from the responsible third party.

-
    **NOTE**:  Documentation requirements can be found at:

    http://ldh.la.gov/assets/medicaid/MCPP/TPL/Wait_and_See_ProviderNotice_IBPayandChaseBBA.pdf

## Recoupment of Payments

The provider must reimburse Medicaid in situations where the third party resource payment is received after Medicaid has been billed and made payment. Reimbursement must be made immediately to comply with regulations. This refund process is applicable to other claim situations in which an overpayment occurred and corrective action needs to be made. Providers should submit an adjustment/void either electronically or paper when adjusting/voiding claims within three years from the date of payment of the claim. Refund checks should be submitted when adjusting/voiding claims with dates of service three years or older.

Providers may reimburse Medicaid by forwarding a check identifying the claim or claims to which the refund is to be applied. Identifying claims will help to reduce additional correspondence.  This information can be found on the RA as follows:

- Provider number;

- Date of payment;

- Control number;

**LOUISIANA MEDICAID PROGRAM**                    **ISSUED:**        **04/01/21**
                                                  **REPLACED:**      **10/18/17**

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**
**SECTION 1.4:  GENERAL CLAIMS FILING**                    **PAGE(S) 23**

- Recipient name and identification number;

- Date of service;

- Amount paid; and

- Reason for refund.

In cases where the provider sends in one refund check for multiple recipients/claims, providers should keep a current record of all claims associated with their refund check. The provider should closely monitor all subsequent RAs to ensure that all adjustments/voids associated with the one refund check have been posted and accounted for the provider.

Refunds should be made payable to LDH and mailed to the attention of LDH Payment Management Section (Refer to Appendix B for contact information).

**NOTE:** Checks are not to be made payable to the FI.

## Remittance Advice

The remittance advice (RA) plays an important role in that it is the primary communication tool between the provider, the BHSF, and the FI. Aside from providing a record of transactions, the RA assists providers in resolving errors and recording or posting paid claims.

The RA is a computer generated document that informs the provider of the current status of submitted claims – approved, pended, or denied. RAs are generated weekly for all providers who have submitted claims for processing during a weekly cycle. RA's are posted online on the Louisiana Medicaid web site, www.lamedicaid.com, link – Weekly Remittance Advices, on Tuesdays of each week. This link is located on the secure web portal. Providers must register with each provider number under which they receive payment and must log in with the appropriate provider number and login information to view the RA. Once registered, providers may grant logon access to appropriate staff and/or any business partner entity representing them. Individuals who are allowed to access RAs will have the ability to download and save the documents or print the documents for reconciling accounts.

Providers are strongly encouraged to have the account administrator be either the actual provider or a management level staff member designated by the provider. Once registered, the administrator may create logons for others needing access to the secure information.

**LOUISIANA MEDICAID PROGRAM**          ISSUED:         04/01/21
                                        REPLACED:       10/18/17

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**

**SECTION 1.4:  GENERAL CLAIMS FILING**               **PAGE(S) 23**

**Standard RAs are only available online through the web site for five weeks (five payment cycles).** Providers must implement procedures for appropriate individuals to access this information online and to print or download and save each RA for reconciling accounts for future reference, and to support the requirement to maintain Medicaid documents related to payment for a minimum of five years.

All providers with approved, denied, or pended claims receive an online RA whether billing hard copy or electronically.

### Electronic Remittance Advice

The electronic remittance advice (RA) is produced in the HIPAA-compliant format. All providers who bill electronically may elect to receive an electronic RA which contains all information regarding adjudicated (paid or denied) claims. Information regarding pended claims is reported electronically in the 277 Unsolicited Claim Status format. Providers must contact the EDI Department or their EDI vendor to receive electronic RAs.

### Remittance Advice Copy and History Requests

Provider participation in the Louisiana Medicaid Program is entirely voluntary. State regulations and policy establish certain requirements for providers who choose to participate in the program. **One of those requirements is the agreement to maintain any information regarding payments claimed by the provider for furnishing services for a period of five years. It is the responsibility of the provider to retain all RAs for five years.**

When it is necessary for a provider to request copies of RAs dated prior to November 1, 2011 (the effective date of online RAs) or claim histories, the FI will supply this information for a fee.

If providers are requesting RA prior to November 1, 2011 for multiple weeks or a large volume of RAs, the FI will determine whether RA copies or a claim history will be provided.

Requests for RAs or claims histories may be made through the Provider Relations Unit.

The provider name, number, address, date(s) of the RA being requested, and name of the individual requesting and authorizing the request must be included in the request. Upon receipt of the request, the provider will be notified of the number of pages to be copied and the cost of the request.  The RA/claims history will be forwarded to the provider once payment is received.

A fee of $0.25 per page, which includes postage, is charged to any provider who requests an additional copy of a Remittance Advice of one or more pages. Claims history fees may apply at the

**LOUISIANA MEDICAID PROGRAM**
           **ISSUED:**    **04/01/21**
           **REPLACED:**    **10/18/17**

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**
**SECTION 1.4:  GENERAL CLAIMS FILING**         **PAGE(S) 23**

time of order.

## Adjusting and Voiding Claims

An adjustment or void may be submitted electronically or paper.  Refer to the specific program provider manual and the EDI Companion Guides (if billing electronically) for detailed billing information."

**Only a paid claim can be adjusted or voided.  Denied claims must be corrected and resubmitted – not adjusted or voided.**

Only one claim line can be adjusted or voided on each adjustment/void form.

For those claims where multiple services are billed and paid by service line, a separate adjustment/void form is required for each claim line if more than one claim line on a multiple line claim form must be adjusted or voided.

The provider should complete the information on the **adjustment** exactly as it appeared on the original claim, **changing only the item(s) that was in error and noting the reason for the change in the space provided on the claim**.

If a paid claim is being voided, the provider must enter all the information on the **void** from the original claim exactly as it appeared on the original claim. After a voided claim has appeared on the Remittance Advice, a corrected claim may be resubmitted (if applicable).

Only the paid claim's most recently approved control number (ICN) can be adjusted or voided; thus:

- If the claim has been successfully adjusted previously, the most current ICN (the ICN of the adjustment) must be used to further adjust the claim or to void the claim; and

- If the claim has been successfully voided previously, the claim must be resubmitted as an original claim.  The ICN of the voided claim is no longer active in claims history.

If a paid claim must be adjusted, almost all data can be corrected through an adjustment with the exception of the Provider Identification Number and the Recipient/Patient Identification Number.  **Claims paid to an incorrect provider number or for the wrong Medicaid recipient cannot be adjusted.  They must be voided and corrected claims submitted.**

## Adjustments/Voids Appearing on the Remittance Advice

**LOUISIANA MEDICAID PROGRAM**                    **ISSUED:**      **04/01/21**
                                                  **REPLACED:**    **10/18/17**

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**

**SECTION 1.4:  GENERAL CLAIMS FILING**                    **PAGE(S) 23**

When an Adjustment/Void Form has been processed, it will appear on the Remittance Advice under ***Adjustment or Voided Claim***.  The adjustment or void will appear first.  The original claim line will appear in the section directly beneath the Adjustment/Void section.

The approved adjustment will replace the approved original and will be listed under the "Adjustment" section on the RA.  The original payment will be taken back on the same RA and appear in the "Previously Paid" column.

When the void claim is approved, it will be listed under the "Void" column of the RA.

An Adjustment/Void will generate Credit and Debit Entries which appear in the Remittance Summary on the last page of the Remittance Advice.

**LOUISIANA MEDICAID PROGRAM**            **ISSUED:**    **06/14/13**
                                          **REPLACED:**  **04/01/13**

## CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION

## SECTION 1.5:  BENEFITS FOR CHILDREN AND YOUTH          PAGE(S) 4

*Per Chisholm v Department of Health and Hospitals*, it is required that the following language concerning services to persons under 21 and children with disabilities be published in this manual.

**THE FOLLOWING SERVICES ARE AVAILABLE TO CHILDREN AND YOUTH WITH DEVELOPMENTAL DISABILITIES**
**TO REQUEST THEM - CALL THE OFFICE FOR CITIZENS WITH DEVELOPMENTAL DISABILITIES (OCDD)/DISTRICT/AUTHORITY IN YOUR AREA**
**(See listing of numbers on attachment)**

**DD MEDICAID WAIVER SERVICES**
To sign up for "waiver programs" that offer Medicaid and additional services to eligible persons (including those whose income may be too high for other Medicaid programs), ask to be added to the Developmentally Disabled (DD) Request for Services Registry (RFSR). The **New Opportunities Waiver (NOW)** and the **Children's Choice Waiver** both provide services in the home, instead of in an institution, to persons who have intellectual disabilities and/or other developmental disabilities.  Both waivers cover Family Support, Center-Based Respite, Environmental Accessibility Modifications, and specialized medical equipment and supplies. In addition, **NOW** covers services to help individuals live alone in the community or to assist with employment, and professional and nursing services beyond those that Medicaid usually covers.  The **Children's Choice Waiver** also includes Family Training. Children remain eligible for the Children's Choice Waiver until their nineteenth birthday, at which time they will be transferred to an appropriate Developmentally Disabled (DD) Waiver.

The **Supports Waiver** provides specific, activity focused services rather than continuous custodial care. This waiver offers Supported Employment, Day Habilitation, Pre-Vocational Services, Respite, Habilitation and the Personal Emergency Response System.  The **Residential Options Waiver (ROW)** is only appropriate for those individuals whose health and welfare can be assured via the support plan with a cost limit based on their level of support need.  This waiver offers Community Living Supports, Companion Care, Host Home, Shared Living, Environmental Modifications, Assistive Technology, Center Based Respite, Nursing, Dental, Professional, Transportation-Community Access, Supported Employment, Pre-Vocational Services and Day Habilitation.

(If you are accessing services for someone 0-3, please contact EarlySteps at 1-866-327-5978.)

**SUPPORT COORDINATION**
A support coordinator works with you to develop a comprehensive list of all needed services (such as medical care, therapies, personal care services, equipment, social services, and educational services) then assists you in obtaining them. **If you are a Medicaid recipient and under the age of 21 and it is medically necessary, you may be eligible to receive support coordination services immediately.** Contact Statistical Resources, Inc. (SRI) at 1-800-364-7828.

**THE FOLLOWING BENEFITS ARE AVAILABLE TO ALL MEDICAID ELIGIBLE CHILDREN AND YOUTH UNDER THE**
**AGE OF 21 WHO HAVE A MEDICAL NEED**
**TO ACCESS THESE SERVICES - CALL**
**MAGELLAN HEALTH SERVICES (TOLL FREE) 1-800-424-4399 (or TTY 1-800-424-4416)**

**LOUISIANA MEDICAID PROGRAM**

| | | |
|---|---|---|
| **ISSUED:** | **06/14/13** |
| **REPLACED:** | **04/01/13** |

## CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION

## SECTION 1.5:  BENEFITS FOR CHILDREN AND YOUTH          PAGE(S) 4

**PSYCHOLOGICAL AND BEHAVIORAL HEALTH SERVICES**
Children and youth may receive behavioral health services if it is medically necessary. These services include necessary assessments and evaluation; individual and/or group therapy; medication management; individual and parent/family intervention; supportive and group counseling; individual and group psychosocial skills training; behavior intervention plan development and service integration.  All behavioral health services must be approved by Magellan Health Services.

Coordinated System of Care (CSoC) helps at-risk children and youth who have serious behavioral health challenges and their families.  It offers services and supports that help these children and youth return to or remain at home.  Services include:  Youth Support and Training, Parent Support and Training, Independent Living Skill Building Services, Short-Term Respite and Crisis Stabilization.

Parents/guardians will be assisted in selecting a provider in their area to best meet the needs of the child/youth and family.


**THE FOLLOWING BENEFITS ARE AVAILABLE TO ALL MEDICAID ELIGIBLE CHILDREN AND YOUTH UNDER THE
AGE OF 21 WHO HAVE A MEDICAL NEED**


Chisholm Class Members (Medicaid eligible children who are on the DD Request for Services Registry) are exempt and cannot participate in Bayou Health.

Children enrolled in Bayou Health can access the listed services below through their individual health plan.

**EPSDT EXAMS AND CHECKUPS**
Medicaid recipients under the age of 21 are eligible for checkups (EPSDT screens). These checkups include a health history; physical exam; immunizations; laboratory tests, including lead blood level assessment; vision and hearing checks; and dental services. They are available both on a regular basis, and whenever additional health treatment or services are needed. EPSDT screens may help to find problems, which need other health treatment or additional services. **Children under 21 are entitled to receive all medically necessary health care, diagnostic services, and treatment and other measures covered by Medicaid to correct or improve physical or mental conditions. This includes a wide range of services not covered by Medicaid for recipients over the age of 21.**

**PERSONAL CARE SERVICES**
Personal care services (PCS) are provided by attendants when physical limitations due to illness or injury require assistance with eating, bathing, dressing, toileting and personal hygiene.  PCS do not include medical tasks such as medication administration, tracheostomy care, feeding tubes or catheters.  The Medicaid Home Health Program or Extended Home Health Program covers those medical services.  PCS must be ordered by a physician.  The PCS provider must request approval for the service from Medicaid.

**EXTENDED SKILLED NURSING SERVICES**
Children and youth may be eligible to receive skilled nursing services in the home.  These services are provided by a home health agency.  A physician must order this service.  Once ordered by a physician, the home health agency must request approval for the service from Medicaid.

**LOUISIANA MEDICAID PROGRAM**                    ISSUED:       06/14/13
                                                   REPLACED:     04/01/13

## CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION
## SECTION 1.5:  BENEFITS FOR CHILDREN AND YOUTH          PAGE(S) 4

**PHYSICAL THERAPY, OCCUPATIONAL THERAPY, SPEECH THERAPY and AUDIOLOGY SERVICES**
If a child or youth wants rehabilitation services such as Physical, Occupational, or Speech Therapy, or Audiology Service; these services can be provided at school, in an early intervention center, in an outpatient facility, in a rehabilitation center, at home, or in a combination of settings, depending on the child's needs.  For Medicaid to cover these services at school (ages 3 to 21), or early intervention centers and EarlySteps (ages 0 to 3), they must be part of the Individualized Education Program (IEP) or Individualized Family Service Plan (IFSP).  For Medicaid to cover the services through an outpatient facility, rehabilitation center, or home health, they must be ordered by a physician and be prior-authorized by Medicaid.

**FOR INFORMATION ON RECEIVING THESE THERAPIES CONTACT YOUR SCHOOL OR EARLY INTERVENTION CENTER OR OTHER PROVIDERS - EARLYSTEPS CAN BE CONTACTED (toll free) AT 1-866-327-5978 - CALL SPECIALTY RESOURCE LINE REFERRAL ASSISTANCE AT 1-877-455-9955 TO LOCATE OTHER THERAPY PROVIDERS**

**MEDICAL EQUIPMENT AND SUPPLIES**
Children and youth can obtain any medically necessary medical supplies, equipment and appliances needed to correct, or improve physical or mental conditions. Medical equipment and supplies must be ordered by a physician. Once ordered by a physician, the supplier of the equipment or supplies must request approval for them from Medicaid.

**TRANSPORTATION**
Transportation to and from medical appointments, if needed, is provided by Medicaid. These medical appointments do not have to be with Medicaid providers for the transportation to be covered. Arrangements for non-emergency transportation must be made at least 48 hours in advance.

The "Friends and Family" Program allows family members/friends to become Medicaid funded transportation providers for specific family members.  To assist someone that may benefit from this arrangement, call Medical Dispatch at 1-800-259-1944.

**Other Services Available to Medicaid Eligible Children Under 21**
If you are a Medicaid recipient under the age of 21, you may be eligible for the following services:

*Doctor's Visits
*Hospital (inpatient and outpatient) Services
*Lab and X-ray Tests
*Family Planning
*Home Health Care
*Dental Care
*Rehabilitation Services
*Prescription Drugs
*Medical Equipment, Appliances and
    Supplies (DME)
*Support Coordination
*Speech and Language Evaluations and
    Therapies
*Occupational Therapy
*Physical Therapy

*Residential Institutional Care or Home and
    Community-Based (Waiver) Services
*Medical, Dental, Vision and Hearing
    Screenings, both Periodic and
    Interperiodic
*Immunizations
*Eyeglasses
*Hearing Aids
*Psychiatric Hospital Care
*Personal Care Services
*Audiological Services
*Necessary Transportation: Ambulance
    Transportation, Non-ambulance
    Transportation
*Appointment Scheduling Assistance

**LOUISIANA MEDICAID PROGRAM**

| | | |
|---|---|---|
| **ISSUED:** | **06/14/13** |
| **REPLACED:** | **04/01/13** |

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**

**SECTION 1.5:  BENEFITS FOR CHILDREN AND YOUTH          PAGE(S) 4**

\*Psychological Evaluations and Therapy          \*Substance Abuse Clinic Services
\*Psychological and Behavior Services          \*Chiropractic Services
\*Podiatry Services          \*Prenatal Care
\*Optometrist Services          \*Certified Nurse Midwives
\*Hospice Services          \*Certified Nurse Practitioners
\*Extended Skilled Nurse Services          \*Mental Health Clinic Services
\*Mental Health Clinic Services          \*Ambulatory Surgery Services
\*Ambulatory Care Services, Rural Health Clinics, and Federally Qualified Health Centers
\*Developmental and Behavioral Clinic Services          \*Early Intervention Services
\*Nursing Facility Services          \*Prenatal Care Services
\*Sexually Transmitted Disease Screening          \*Pediatric Day Health Care

and any other medically necessary health care, diagnostic services, treatment, and other measures which are coverable by Medicaid, which includes a wide range of services not covered for recipients over the age of 21.

**If you need a service that is not listed above you can call the referral assistance coordinator at SPECIALTY RESOURCE LINE (toll free) 1-877-455-9955 (or TTY 1-877-544-9544). If they cannot refer you to a provider of the service you need call 225-342-5774.**

If you are a Medicaid recipient, under age 21, and are on the waiting list for the DD Request for Services Registry, you may be eligible for support coordination services.  To access these services, you must contact your regional Office for Citizens with Developmental Disabilities office.  If you are a Medicaid recipient under age 21, and it is medically necessary, you may be able to receive support coordination services immediately by calling SRI (toll free) at 1-800-364-7828.

Some of these services must be approved by Medicaid in advance.  Your medical provider should be aware of which services must be pre-approved and can assist you in obtaining those services.  Also, SPECIALTY RESOURCE LINE can assist you or your medical provider with information as to which services must be pre-approved.

Whenever health treatment or additional services are needed, you may obtain an appointment for a screening visit by contacting SPECIALTY RESOURCE LINE.  Such screening visits also can be recommended by any health, developmental, or educational professional.  To schedule a screening visit, contact SPECIALTY RESOURCE LINE at (toll-free) 1-800-259-4444 (or 928-9683, if you live in the Baton Rouge area), or you may contact your physician if you already have a SPECIALTY RESOURCE LINE provider.  If you are deaf or hard of hearing, please call the TTY number, (toll-free) 1-877-544-9544. If you have a communication disability or are non-English speaking, you may have someone else call SPECIALTY RESOURCE LINE and the appropriate assistance can be provided.

Louisiana Medicaid encourages you to contact the SPECIALTY RESOURCE LINE office and obtain a SPECIALTY RESOURCE LINE provider so that you may be better served.

**LOUISIANA MEDICAID PROGRAM**  ISSUED:  06/01/11
REPLACED:

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**
**APPENDIX A:  ACRONYMS/DEFINITIONS**  PAGE(S) 3

This appendix contains acronyms and definitions used in this chapter.

**Bureau of Health Services Financing (BHSF)**
The division within the Department of Health and Hospitals responsible for the
administration of the Medicaid Program.

**Center for Medicare and Medicaid Services (CMS)**
The federal organization that administers the Medicare program and oversees and monitors
the state Medicaid program.

**Change in Ownership (CHOW)**
Any change in the legal entity responsible for the operation of a provider agency.

**Crossover Medicare/Medicaid Claims**
Claims received on a Medicaid-eligible recipient who has both Medicare and Medicaid
coverage.

**Department of Health and Hospitals (DHH)**
The state agency responsible for administrating the Medicaid Program and health and
related services including public health, mental health, and developmental disabilities.

**Electronic Data Interchange (EDI)**
The communication of data from one computer system to another computer system.

**Electronic Funds Transfer (EFT)**
The payment of Medicaid claims that are deposited directly into a provider's bank account.

**Electronic Media Claims (EMC)**
The process used to file claims electronically.

**Employer Identification Number (EIN)**
A number assigned to a business by the Internal Revenue Service (IRS). Also known as a
Federal Taxpayer Identification Number (TIN).

**Explanation of Benefits (EOB)**
It provides detailed information about the services a person has used. It isn't a bill.

**Explanation of Medicare Benefits (EOMB)**
A notice sent to providers informing them of the services which have been paid by
Medicare.

**LOUISIANA MEDICAID PROGRAM**                    **ISSUED:**          **06/01/11**
                                                 **REPLACED:**

**CHAPTER 1:   GENERAL INFORMATION AND ADMINISTRATION**
**APPENDIX A:  ACRONYMS/DEFINITIONS**                         **PAGE(S) 3**

**Fiscal Intermediary (FI)**
> The fiscal agent contracted by DHH to operate the Medicaid Management Information System.  It processes Medicaid claims for services provided under the Medicaid Program and issues appropriate payment.

**Health Insurance Portability and Accountability Act (HIPPA) Privacy Rule**
> A federal regulation which is designed to establish uniformity and standards for transmission, storage and handling of data.

**Internal Control Number (ICN)**
> The **unique** 13-digit number given to each claim for tracking purposes.

**Mandatory Services**
> Services required by the federal government that each state must provide under Medicaid.

**Medicaid**
> A federal-state medical assistance entitlement program provided under a State plan approved under Title XIX of the Social Security Act.

**Medicaid Card**
> A medical eligibility card issued to each eligible recipient.

**Medicaid Management Information System (MMIS)**
> The computerized claims processing and information retrieval system which includes all providers eligible for participation in the Medicaid Program.  This system is an organized method of payment for claims for all Medicaid services.  It includes all Medicaid providers and recipients.

**Medical Assistance Program Law (MAPIL)**
> MAPIL outlines the provisions related to provider agreement.

**Medically Needy**
> A medical program designed to provide Medicaid coverage when an individual's or family's income and/or resources are sufficient to meet basic needs in a categorical assistance program but not sufficient to meet medical needs according to Medically Needy Program standards.

**Medicare**
> The health insurance program designed for aged and disabled under Title XVIII of the Social Security Act.

**LOUISIANA MEDICAID PROGRAM**                **ISSUED:**        **06/01/11**
                                              **REPLACED:**

**CHAPTER 1:   GENERAL INFORMATION AND ADMINISTRATION**
**APPENDIX A:  ACRONYMS/DEFINITIONS**                        **PAGE(S) 3**

**Optional Services**
  Services states choose to provide to Medicaid recipients.  These services must be approved
  by CMS.

**Pay and Chase**
  Recovery of full or partial payment from a financially responsible third party after Medicaid
  has paid the claim.

**Provider**
  Any individual or entity responsible for furnishing Medical services under a provider
  agreement with the Medicaid Program.

**Provider Agreement**
  A contract between the provider of services and the Bureau of Health Services Financing
  that specifies responsibilities with respect to the provision of services and payment under
  the Title XIX Medicaid Program.

**Provider Enrollment (PE)**
  The act of registering a licensed provider into the computerized system for payment of
  eligible services under the Medical Assistance Program.  Enrollment includes the execution
  of the provider agreement and assignment of the provider number used for payment.

**Recipient**
  An individual who has been certified for medical benefits by the Medicaid Program.

**Remittance Advice**
  A list of all claims paid, pending, or denied during a particular payment period.

**Revision Index**
  The form issued with each manual chapter to document chapter revisions.

**Spend – Down**
  A term used to describe a group in the Medically Needy Program.  The income for these
  Medicaid applicants/recipients is above the Medically Needy Income Eligibility Standards
  but they may qualify for the Medically Needy Program on the basis that countable income
  has been spent or is obligated to pay unpaid medical expenses.

**Third Party Liability (TPL)**
  Refers to the responsibility of another payer (Medicare, insurance, etc.) to pay benefits for
  services before Medicaid pays.  Medicaid is generally the payer of last resort.

**LOUISIANA MEDICAID PROGRAM**                    **ISSUED:**    **10/23/14**
                                                  **REPLACED:**   **11/20/13**

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**

**APPENDIX B:  CONTACT/REFERRAL INFORMATION          PAGE(S) 6**

## CONTACT/REFERRAL INFORMATION

### Molina Medicaid Solutions

The Medicaid Program's fiscal intermediary, Molina Medicaid Solutions can be contacted for assistance with the following:

| TYPE OF ASSISTANCE | CONTACT INFORMATION |
|---|---|
| **e-CDI technical support** | Molina Medicaid Solutions<br>(877) 598-8753 (Toll Free) |
| **Electronic Media Interchange (EDI)**<br>Electronic claims testing and assistance | P.O. Box 91025<br>Baton Rouge, LA  70898<br>Phone: (225) 216-6303<br>Fax: (225) 216-6335 |
| **Pre-Certification Unit (Hospital)**<br>Pre-certification issues and forms | P.O. Box 14849<br>Baton Rouge, LA  70809-4849<br>Phone:  (800) 877-0666<br>Fax:  (800) 717-4329 |
| **Pharmacy Point of Sale (POS)** | P.O. Box 91019<br>Baton Rouge, LA  70821<br>Phone:  (800) 648-0790 (Toll Free)<br>Phone:  (225) 216-6381 (Local)<br>*After hours, please call REVS* |
| **Prior Authorization Unit (PAU)** | Molina Medicaid Solutions – Prior Authorization<br>P.O. Box 14919<br>Baton Rouge, LA 70898-4919<br>Phone:  (800) 807-1320<br>Fax:  (225) 216-6476 |
| **Provider Enrollment Unit (PEU)** | Molina Medicaid Solutions-Provider Enrollment<br>P. O. Box 80159<br>Baton Rouge, LA 70898-0159<br>Phone:  (225) 216-6370<br>Fax:  (225) 216-6392 |
| **Provider Relations Unit (PR)** | Molina Medicaid Solutions – Provider Relations Unit<br>P. O. Box 91024<br>Baton Rouge, LA 70821<br>Phone:  (225) 924-5040 or (800) 473-2783<br>Fax:  (225) 216-6334 |
| **Recipient Eligibility Verification (REVS)** | Phone:  (800) 766-6323 (Toll Free)<br>Phone:  (225) 216-7387 (Local) |

**LOUISIANA MEDICAID PROGRAM**              **ISSUED:**      **10/23/14**
                                                           **REPLACED:**    **11/20/13**

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**

**APPENDIX B:  CONTACT/REFERRAL INFORMATION**          **PAGE(S) 6**

## Department of Health and Hospitals (DHH)

| TYPE OF ASSISTANCE | CONTACT INFORMATION |
|---|---|
| **General Medicaid Information** | General Hotline (888) 342-6207 (Toll Free) www.lamedicaid.com |
| **Division of Fiscal Management – Payment Management** | P.O. Box 91117 Baton Rouge, LA  70821-9117 Phone:  (225) 342-4163 Fax:  (225) 342-4478 |
| **Health Standards Section (HHS)** Licensing Standards | P.O. Box 3767 Baton Rouge, LA  70821 Phone:  (225) 342-0138 Fax: (225) 342-5073 http://new.dhh.louisiana.gov/index.cfm/newsroom/detail/1623 |
| **Long Term Care** Facility Care Home and Community-Based Care | P.O. Box 91030 Baton Rouge, LA  70821-9030 **Phone:** (877) 456.1146 **Fax:** (225) 342-9508 http://dhh.louisiana.gov/index.cfm/page/234 |
| **Louisiana Children's Health Insurance Program (LaCHIP)** | (225) 342-0555 (Local) (877) 252-2447 (Toll Free) http://new.dhh.louisiana.gov/index.cfm/page/222 |
| **Medicaid /Card Questions** | **Toll Free:**  1-800-834-3333 http://new.dhh.louisiana.gov/index.cfm/faq/category/72 |
| **MMIS Retroactive Reimbursement Unit** | P.O. Box 91030 Baton Rouge, LA  70821-9030 **Phone:** (225) 342-1739 **Toll Free:** 1-866-640-3905 http://dhh.louisiana.gov/index.cfm/page/1202 |

**LOUISIANA MEDICAID PROGRAM**    **ISSUED:**    **10/23/14**
                                  **REPLACED:**   **11/20/13**

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**

**APPENDIX B:  CONTACT/REFERRAL INFORMATION**         **PAGE(S) 6**

**DHH continued**

| | |
|---|---|
| **Office of Aging and Adult Services (OAAS)**<br>Waiver Assistance and Complaints | P.O. Box 2031<br>Baton Rouge, LA  70821-2031<br>Phone: (866) 758-5035<br>Fax:  (225) 219-0202<br>E-mail:  OAASInquiries@dhh.la.gov<br>http://dhh.louisiana.gov/index.cfm/subhome/12/n/327 |
| **Office of Behavioral Health** | P.O. Box 91030<br>Baton Rouge, LA  70821-9030<br>Phone:  225-342-2540<br>Fax:  225-342-1972 or 225-342-1973<br>Toll-free fax:  1-866-427-2148<br>http://www.mbhsla.org<br>* See web MBHS website for additional contact<br>information |
| **Office for Citizens with Developmental Disabilities (OCDD)** | P.O. Box 3117<br>Baton Rouge, LA  70821-3117<br>Phone:  (225) 342-0095 (Local)<br>Phone:  (866) 783-5553 (Toll-free)<br>E-mail:  ocddinfo@la.gov<br>http://new.dhh.louisiana.gov/index.cfm/subhome/11/n/8 |
| **OCDD – Region I - Metropolitan Human Services District**<br>(Serving Orleans, Plaquemines and St. Bernard parishes) | 1010 Common Street, 5th Floor, Suite 550<br>New Orleans, LA 70112<br>**Phone:** (504) 599-0245<br>**Fax:** (504) 568-4660<br>**Toll Free:** 1-800-889-2975 |
| **OCDD – Region II - Capital Area Human Services District**<br>(Serving Ascension, East Baton Rouge, East Feliciana, Iberville, Pointe Coupee, West Baton Rouge and West Felicians parishes) | 4615 Government St. – Building 2, Bin#16<br>Baton Rouge, LA 70806<br>**Phone:** (225) 925-1910<br>**Fax:** (225)  925-7080<br>**Toll Free:** 1-800-768-8824<br>www.cahsd.org |
| **OCDD – Region III - South Central Human Services Authority**<br>(Serving Assumption, Lafourche, St. Charles, St. James, St. John the Baptist, St. Mary and Terrebonne parishes) | 1000 Plantation Road, Suite E<br>Thibodaux, LA 70301<br>**Phone:** (985) 449-5167<br>**Fax:** (985) 449-5180<br>**Toll Free:** 1-800-861-0241 |

**LOUISIANA MEDICAID PROGRAM**                    ISSUED:    10/23/14
                                                 REPLACED:   11/20/13

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**

**APPENDIX B:  CONTACT/REFERRAL INFORMATION            PAGE(S) 6**

**DHH Continued**

| | |
|---|---|
| **OCDD – Region IV – Acadiana Area Human Service District**<br><br>(Serving Acadia, Evangeline, Iberia, Lafayette, St. Landry, St. Martin, and Vermillion parishes) | 302 Dulles Drive<br>Lafayette, LA 70506-3008<br>**Phone:** (337) 262-5610<br>**Fax:** (337) 449-4761<br>**Toll Free:** 1-800-648-1484 |
| **OCDD – Region V – Imperial Calcasieu Human Services District**<br><br>( Serving Allen, Beauregard, Calcasieu, Cameron, and Jeff Davis parishes) | 3501 Fifth Avenue, Suite C2<br>Lake Charles, LA 70607<br>**Phone:** (337) 475-8045<br>**Fax:** (337) 475-8055<br>**Toll Free:** 1-800-631-8810 |
| **OCDD – Region VI - Central Louisiana Human Services District**<br><br>(Serving Avoyelles, Catahoula, Concordia, Grant, LaSalle, Rapides, Vernon, and Winn parishes) | 429 Murray Street – Suite B<br>Alexandria, LA 71301<br>**Phone:** (318) 484-2347<br>**Fax:** (318) 484-2458<br>**Toll Free:** 1-800-640-7494 |
| **OCDD – Region VII - Northwest Louisiana Human Services District**<br><br>(Serving Bienville, Bossier, Caddo, Claiborne, DeSoto, Natchitoches, Red River, Sabine, and Webster parishes) | 3018 Old Minden Road – Suite 1211<br>Bossier City, LA 71112<br>**Phone:** (318) 741-7455<br>**Fax:** (318) 741-7487<br>**Toll Free:** 1-800-862-1409 |
| **OCDD - Region VIII -  Northeast Delta Human Services Authority**<br><br>(Serving Caldwell, East Carroll, Franklin, Jackson, Lincoln, Madison, Morehouse, Ouachita, Richland, Tensas, Union, and West Carroll parishes) | 122 St. John St. – Rm. 202<br>Monroe, LA 71201<br>**Phone:** (318) 362-3396<br>**Fax:** (318) 362-5306<br>**Toll Free:** 1-800-637-3113 |
| **OCDD – Region IX - Florida Parishes Human Services Authority**<br><br>(Serving Livingston, St. Helena, St. Tammany, Tangipahoa, and Washington parishes) | 835 Pride Drive – Suite B<br>Hammond, LA  70401<br>**Phone:**  (985) 543-4730<br>**Toll Free:** 1-800-866-0806<br>www.fphsa.org |

**LOUISIANA MEDICAID PROGRAM**                ISSUED:    10/23/14
                                            REPLACED:   11/20/13

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**

**APPENDIX B:  CONTACT/REFERRAL INFORMATION**         **PAGE(S) 6**

### DHH Continued

| | |
|---|---|
| **OCDD – Region X - Jefferson Parish Human Services Authority**<br>(Serving Jefferson parish) | 3610 S 1-10 Service Road<br>Metairie, LA 70002<br>**Phone:** (504) 838-5357<br>**Fax:** (504) 838-5400 |
| **Office of Management and Finance (Bureau of Health Services Financing) - MEDICAID** | P.O. Box 91030<br>Baton Rouge, LA  70810-9030<br>http://new.dhh.louisiana.gov/index.cfm/subhome/1 |
| **Provider Support Center** | http://www.lamedicaid.com/provweb1/default.htm |
| **Rate Setting and Audit**<br>Hospital Services | P.O. Box 91030<br>Baton Rouge, LA  70821-9030<br>Phone:  225-342-0127<br>225-342-9462 |
| **Recovery and Premium Assistance**<br>TPL Recovery, Trauma | P.O. Box 3588<br>Baton Rouge, LA  70821<br>Phone:  (225) 342-8662<br>Fax:  (225) 342-1376 |
| **Take Charge Plus** | P.O. Box 91030<br>Baton Rouge, LA  70821<br>Phone: (888) 342-6207<br>www.MakingMedicaidBetter.com |
| **Take Charge (Family Planning Waiver)** | P.O. Box 91278<br>Baton Rouge, LA  70821<br>Phone: (888) 342-6207<br>Fax: (877) 523-2987<br>medweb@la.gov<br>http://new.dhh.louisiana.gov/index.cfm/page/232 |

### Fraud Hotline

| TYPE OF ASSISTANCE | CONTACT INFORMATION |
|---|---|
| To report fraud | Program Integrity (PI) Section<br>P.O. Box 91030<br>Baton Rouge, LA 70821-9030<br>Fraud and Abuse Hotline:  (800) 488-2917<br>Fax:  (225) 219-4155<br>http://dhh.louisiana.gov/index.cfm/page/219 |

**LOUISIANA MEDICAID PROGRAM**     **ISSUED:**     **10/23/14**
                                   **REPLACED:**   **11/20/13**

**CHAPTER 1:  GENERAL INFORMATION AND ADMINISTRATION**

**APPENDIX B:  CONTACT/REFERRAL INFORMATION          PAGE(S) 6**

Appeals

| TYPE OF ASSISTANCE | CONTACT INFORMATION |
|---|---|
| To file an appeal | Division of Administrative Law (DAL) - Health and Hospitals Section<br>Post Office Box 4189<br>Baton Rouge, LA  70821-4189<br>Phone:  (225) 342-0263<br>Fax:  (225) 219-9823 |

**Other Helpful Contact Information:**

| TYPE OF ASSISTANCE | CONTACT INFORMATION |
|---|---|
| **Centers for Medicare and Medicaid** | www.cms.hhs.gov |
| **Excluded Parties List System (EPLS)**<br>Verification of exclusion or restriction from government funded health program | http://www.epls.gov/ |
| **Governor's Office of Homeland Security and Emergency Preparedness (GOHSEP)** | http://www.gohsep.la.gov |
| **Health Management Systems (HMS)**<br>Third party liability collections contractor | Phone:  (888) 831-2715<br>(214) 453-3000<br>http://www.hms.com/ |
| **Office of Inspector's General (OIG)** | http://oig.louisiana.gov/ |
| **Office of Population Affairs (OPA) Clearinghouse** | P.O. Box 30686<br>Bethesda, MD 20824-0686<br>Phone:  866-640-7827<br>Fax:  866-592-3299<br>E-mail:  Info@OPAclearinghouse.org |
| **Superintendent of Documents**<br>Forms | http://www.gpo.gov/<br>Phone:  (202) 512-1800 |

**LOUISIANA MEDICAID PROGRAM**                          **ISSUED:      06/01/11**
                                                        **REPLACED:**

**CHAPTER 1: GENERAL INFORMATION AND ADMINISTRATION**

**SECTION :  APPENDIX C**                                        **PAGE(S) 1**

| REVISION HISTORY LOG |
|:---:|

| Revised/ Issued Date | Section # | Section Title | Page # | Reason for Revision |
|---|---|---|---|---|
| 12/28/09 | 3.0 | Medicaid Identification  Cards | 5 | Updated Take Charge ID card information |
|  |  |  |  | . |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

**LOUISIANA MEDICAID PROGRAM**          ISSUED:          06/30/14
                                        REPLACED          06/01/11

**CHAPTER 1:  GENERAL INFORMTION AND ADMINISTRATION**

**APPENDIX D:  RESERVED**                    **PAGE(S) 1**

# EXHIBIT 11

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ALEX DOE, Relator, *et al.*, | ) ) ) |
| Plaintiffs | ) ) ) |
| v. | ) ) |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., *et al.*, | ) ) ) ) |
| Defendants. | |

Civil Action No. 2:21-22

## NON-PARTY LOUISIANA DEPARTMENT OF HEALTH'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANT PLANNED PARENTHOOD GULF COAST, INC.'S REVISED SUBPOENA

Pursuant to the Federal Rules of Civil Procedure, non-party State of Louisiana Department of Health ("LDH" or the "Department") hereby provides its supplemental responses and objections to the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action ("the Subpoena") issued by Defendant Planned Parenthood Gulf Coast, Inc. ("PPGC").

On August 5, 2022, PPGC's propounded subpoena requests on LDH. LDH initially responded to PPGC's subpoena on August 19, 2022. On September 12, 2022, PPGC propounded revised subpoena requests for Numbers 13, 16, 17, 19, and 25 on LDH. LDH responded to revised subpoena request Numbers 13, 16, 17, 19, and 25. LDH now submits supplemental responses to the following subpoena requests from PPGC:

1

## SUPPLEMENTAL RESPONSES AND OBJECTIONS TO SPECIFIC REQUESTS

**REQUEST NO. 11:**

All documents and communications relating to any fetal tissue procurement or donation in which any Medicaid, Texas Medicaid, or Louisiana Medicaid provider unrelated to Planned Parenthood participated or facilitated or agreed to participate or facilitate.

**RESPONSE TO REQUEST NO. 11:**

To the best of LDH's knowledge, information, and belief and after a diligent search of

records, there are no documents responsive to Request No. 11.

**REQUEST NO. 21:**

All documents and communications relating to any Planned Parenthood Affiliate's qualifications to provide services under Medicaid, Texas, Medicaid, and/or Louisiana Medicaid.

**RESPONSE TO REQUEST NO. 21:**

Please refer to the non-privileged documents uploaded to the public records request portal

on October 21, 2022.

**REQUEST NO. 22:**

All documents and communications related to information provided by you to the U.S. Congress related to any Planned Parenthood Defendant from 2015 to present regarding any Planned Parenthood Defendant's qualifications to provide service under Medicaid, Texas Medicaid, and/or Louisiana Medicaid; any Planned Parenthood Defendant's termination in Texas and/or Louisiana; continued participation of any Planned Parenthood Defendant in Louisiana Medicaid; whether participation in fetal tissue procurement or donation or agreeing to participate in fetal tissue procurement or donation renders a Medicaid provider unqualified to provide service under Medicaid, Texas Medicaid, or Louisiana Medicaid; and whether Medicaid, Texas Medicaid, and/or Louisiana Medicaid could or should seek recoupment for amounts reimbursed to any Planned Parenthood Defendant from 2010 to the present.

**RESPONSE TO REQUEST NO. 22:**

To the best of LDH's knowledge, information, and belief and after a diligent search of

records, there are no documents responsive to Request No. 22.

**REQUEST NO. 23:**

All communications between Louisiana Department of Health and the Media relating to

2

any Planned Parenthood Defendant's qualifications to provide service under Medicaid, Texas Medicaid, and/or Louisiana Medicaid; any Planned Parenthood Defendant's termination in Texas and/or Louisiana; continued participation of any Planned Parenthood Defendant in Louisiana Medicaid; whether participation in fetal tissue procurement or donation or an agreement to participate in fetal tissue procurement or donation renders a Medicaid provider unqualified to provide service under Medicaid, Texas Medicaid, or Louisiana Medicaid; and whether Medicaid, Texas Medicaid, and/or Louisiana Medicaid could or should seek recoupment for amounts reimbursed to any Planned Parenthood Defendant from 2010 to the present.

## RESPONSE TO REQUEST NO. 23:

Non-Privileged documents responsive to Subpoena Request No. 23 have been provided

through PPGC's public records request no. 6 to LDH and made available to Planned Parenthood

through LDH's public records request portal on October 12, 2022.

## REQUEST NO. 24:

All documents or videos (both edited and unedited) provided to Louisiana Department of Health by Relator, the Center for Medical Progress, or third parties acting on Relator's behalf, including staff, attorneys, or investigators.

## RESPONSE TO REQUEST NO. 24:

LDH reasserts its objection to the use of the term "Relator" as vague and ambiguous

because no name is provided and LDH does not know the identity of the Relator. Further answering

and without waiving any general or specific objections, to the best of LDH's knowledge,

information, and belief no documents or videos were provided to LDH by the Center for Medical

Progress.

## REQUEST NO. 26:

All communications between Louisiana Department of Health and the Media relating to the Center for Medical Progress videos.

## RESPONSE TO REQUEST NO. 26:

Non-privileged documents responsive to Subpoena Request No. 26 have been provided

through Planned Parenthood's public records request no. 6 to LDH and made available to Planned

3

Parenthood through LDH's public records request portal on October 12, 2022.

**REQUEST NO. 27:**

All communications between Louisiana Department of Health and members of the United States Congress (including their staff) related to the Center for Medical Progress videos.

**RESPONSE TO REQUEST NO. 27:**

The response to Subpoena Request No. 27 has been provided through LDH's response to

PPGC's public records request no. 5 to LDH. To the best of LDH's knowledge, information, and

belief and after a diligent search of records, there are no documents responsive to this request.

Dated: October 21, 2022                    Respectfully submitted:

Stanley J. Bordelon II, La. Bar No. 33022
Michelle Y. Christopher, La. Bar No. 25619
Kimberly L. Sullivan, La. Bar No. 27540
**Attorneys for the Louisiana Department of Health**
628 North Fourth Street (70821)
Post Office Box 3836
Baton Rouge, Louisiana 70821-3836
Telephone: (225) 342-4090
Facsimile: (225) 342-2232
Email: michelle.christopher@la.gov

4

# EXHIBIT 12

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* | ) | |
| ALEX DOE, Relator, *et al*., | ) | |
| | ) | Civil Action No. 2:21-22 |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PLANNED PARENTHOOD FEDERATION | ) | |
| OF AMERICA, INC., *et al*., | ) | |
| | ) | |
| Defendants. | | |

**NON-PARTY LOUISIANA DEPARTMENT OF HEALTH'S**
**SECOND SUPPLEMENTAL RESPONSES AND OBJECTIONS**
**TO DEFENDANT PLANNED PARENTHOOD GULF COAST, INC.'S**
**REVISED SUBPOENA**

Pursuant to the Federal Rules of Civil Procedure, non-party State of Louisiana Department

of Health ("LDH" or the "Department") hereby provides its second supplemental responses and

objections to the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection

of Premises in a Civil Action ("the Subpoena") issued by Defendant Planned Parenthood Gulf

Coast, Inc. ("PPGC"). Without waiving any general or specific objections previously raised by

LDH to PPGC's subpoena requests, LDH answers as follows:

**SUPPLEMENTAL RESPONSES AND OBJECTIONS TO SPECIFIC REQUESTS**

**REQUEST NO. 3:**

Documents sufficient to identify the instances when Louisiana Department of Health
"terminated other types of providers for similar violations of these provisions" as referenced
in Louisiana Department of Health's response to Question No. 2 in its September 27, 2016
response (attached as Ex. D).  Your response should include for each termination, documents
sufficient to identify the provider that was terminated, the date of the termination, the reason
for the termination, the date of the conduct that resulted in the termination, whether the
provider was asked or obligated to return any amounts reimbursed under Medicaid or
Louisiana Medicaid, whether the provider did return any amounts reimbursed under Medicaid
or Louisiana Medicaid, and the amount of any reimbursements that were returned.

1

**RESPONSE TO REQUEST NO. 3:**

Without waiving the general or specific objections previously raised by LDH to subpoena request number 3, LDH further answers by stating that a spreadsheet responsive to subpoena request number 3 and public records request number 3 was provided to PPGC on October 17, 2022, via email.

**REVISED REQUEST NO. 18:**

All documents and communications from January 1, 2015 to present related to termination by Louisiana of any Medicaid provider unrelated to Planned Parenthood for violations of laws or regulations related to medical research, fetal tissue procurement or donation, or an agreement to engage in fetal tissue procurement or donation, including but not limited to whether any terminated Louisiana Medicaid provider was asked or obligated to return amounts reimbursed under Louisiana Medicaid.

**RESPONSE TO REVISED REQUEST NO. 18:**

To the best of LDH's knowledge, information, and belief and after a diligent search of records, there are no documents responsive to Request No. 18.

Dated: November 1, 2022          Respectfully submitted:

_____

Stanley J. Bordelon II, La. Bar No. 33022
Michelle Y. Christopher, La. Bar No. 25619
Kimberly L. Sullivan, La. Bar No. 27540
**Attorneys for the Louisiana Department of Health**
628 North Fourth Street (70821)
Post Office Box 3836
Baton Rouge, Louisiana 70821-3836
Telephone: (225) 342-9286
Facsimile: (225) 342-2232
Email: stanley.bordelon@la.gov

2

# EXHIBIT 13

# Arnold & Porter

Tirzah S. Lollar
+1 202.942.6199 Direct
Tirzah.Lollar@arnoldporter.com

August 18, 2022

**VIA ONLINE PORTAL**

Michael Coleman
Louisiana Department of Health
P.O. Box 629
Baton Rouge, LA 70821-0629

   Re: Public Records Request P2570, Proposed Custodians and Search Terms

Dear Mr. Coleman:

   Thank you for the opportunity to discuss the above-mentioned public records request with you and your colleagues on Monday and for the productive call. We appreciate your assistance. As promised, below please find proposed custodians and search terms. I look forward to discussing this request on our next call on August 22nd.

**Proposed Custodians and Search Terms**

   **A.** **Suggested Custodians for All Requests**

Please let us know if you think any of these custodians are unlikely to have responsive documents and please supplement our list if you identify other custodians likely to have responsive documents.

   Tanya Joiner (Director of Legislative and Government Relations, LDH)
   Ruth Kennedy (Medicaid Director for LDH)
   Kathy Kliebert (Secretary, LDH)
   Steve Russo (LDH attorney who sent termination notices)
   Jennifer Steele (Medicaid Director at LDH after Ruth Kennedy)
   Kimberly Sullivan (Kimberly.Sullivan@LA.gov) (LDH Deputy GC who responded to Wachino)

   **B.** **Request 2**

*All documents and external communications from 2013 to the present related to the termination of PPGC from Louisiana Medicaid, including but not limited to*

---

Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave, NW  |  Washington, DC 20001-3743  |  **www.arnoldporter.com**

**Appx 317**

**Arnold&Porter**

Louisiana Department of Health
Public Records Request
August 18, 2022
Page 2

*communications between the Louisiana Department of Health with the Centers for Medicare & Medicaid Services related to the August 11, 2016 letter from Vikki Wachino, Director, Centers for Medicare & Medicaid Services, addressed to Jen Steele, Medicaid Director, State of Louisiana, Department of Health and Hospitals and the September 27, 2016 email sent by Kimberly Sullivan, Louisiana Department of Health Deputy General Counsel in response ("LDH Response").*

**Date Range: 1/JUN/2015 to 6/JAN/2022**

**Search Terms**
Planned w/5 parenthood
PPGC
PPFA
PPGT
PPST
PPCC
PPSA
PPH
LA R.S. 46:437.11
LA R.S. 46:437.14
"free choice of provider"
(provider* OR Medicaid) AND (terminat* OR dismiss* OR repay* OR refund* OR overpay* OR recoup* OR reimburse* OR status OR qualif* OR unqualif* OR participat*) AND (planned w/5 parenthood)
fetal w/5 tissue w/5 (procure* or donat*)
Melaney
Linton
91338 (provider number)
45802 (provider number)
133673 (provider number)
133689 (provider number)

**Emails sent by LDH to or received by LDH from:**
@hhs.gov
@cms.gov
Jessica Schubel, Marielle Kress, Victoria Wachino, Gia Lee (CMS/HHS employees copied on the LDH Sept 27, 2016 response to CMS; LDH should have their email addresses from the LDH response email)

# Arnold&Porter

Louisiana Department of Health
Public Records Request
August 18, 2022
Page 3

### C.    Request 4

*All documents reflecting communications between the Louisiana Department of Health with the Center for Medical Progress and/or David Daleiden from 2013 to present.*

**Date Range: 1/JAN/2013 to 6/JAN/2022**

**Search Terms**
n/a

**Email Addresses/Domains**
"@centerformedicalprogress.org"
david@daviddaleiden.com

### D.    Request 5

*All documents reflecting information provided by the Louisiana Department of Health to the U.S. Congress regarding PPGC's qualifications to provide service under Medicaid or Louisiana Medicaid; PPGC's termination from Louisiana Medicaid; continued participation of PPGC in Louisiana Medicaid; whether participation in fetal tissue procurement or donation or agreeing to participate in fetal tissue procurement or donation renders a Medicaid provider unqualified to provide service under Medicaid or Louisiana Medicaid; and whether Medicaid or Louisiana Medicaid could or should seek recoupment for amounts reimbursed to PPGC. This request is limited to information provided by the Louisiana Department of Health to the U.S. Congress in connection with the 2015-16 Congressional hearings conducted by the House Judiciary Committee, the Senate Judiciary Committee, the House Energy and Commerce Committee, the House Oversight and Government Reform Committee and the House Subcommittee on Oversight and Investigations.*

**Date Range: 1/JAN/2015 to 31/DEC/2016**

**Search Terms**
Planned w/5 parenthood
PPGC
PPFA
PPGT
PPST

**Arnold&Porter**

Louisiana Department of Health
Public Records Request
August 18, 2022
Page 4

PPCC
PPSA
PPH
(provider* OR Medicaid) AND (terminat* OR dismiss* OR repay* OR refund* OR overpay* OR recoup* OR reimburse* OR status OR qualif* OR unqualif* OR participat*) AND (planned w/5 parenthood)
fetal w/5 tissue w/5 (procur* or donat*)

**Email Addresses/Domains**
mail.house.gov
senate.gov
Marsha Blackburn (email address not known to Planned Parenthood)
Thomas Carper (email address not known to Planned Parenthood)
Jason Chaffetz (email address not known to Planned Parenthood)
Elijah Cummings (email address not known to Planned Parenthood)
Joni Ernst (email address not known to Planned Parenthood)
Chuck Grassley (email address not known to Planned Parenthood)
Sheila Jackson Lee (email address not known to Planned Parenthood)
Ron Johnson (email address not known to Planned Parenthood)
Patrick Leahy (email address not known to Planned Parenthood)
Tim Murphy (email address not known to Planned Parenthood)
Joe Pitts (email address not known to Planned Parenthood)
Andrew Slavitt (email address not known to Planned Parenthood)
Frank Upton (email address not known to Planned Parenthood)

E.    **Request 6**

*All communications between Louisiana and the media, to include any news organization or mass media organization, including print, internet, television, radio, or other media, from 2010 to the present relating to PPGC's qualifications to provide service under Medicaid or Louisiana Medicaid; PPGC's termination from Louisiana Medicaid; continued participation of PPGC in Louisiana Medicaid; whether participation in fetal tissue procurement or donation or agreeing to participate in fetal tissue procurement or donation renders a Medicaid provider unqualified to provide service under Medicaid or Louisiana Medicaid; and whether Medicaid or Louisiana Medicaid could or should seek recoupment for amounts reimbursed to PPGC.*

**Date Range: 1/JAN/2010 to 6/JAN/2022**

**Arnold&Porter**

Louisiana Department of Health
Public Records Request
August 18, 2022
Page 5

**Search Terms**
Planned w/5 parenthood
PPGC
PPFA
PPGT
PPST
PPCC
PPSA
PPH
(provider* OR Medicaid) AND (terminat* OR dismiss* OR repay* OR refund* OR overpay* OR recoup* OR reimburse* OR status OR qualif* OR unqualif* OR participat*) AND (planned w/5 parenthood)
fetal w/5 tissue w/5 (procur* or donat*)

**Email Addresses/Domains**
We are unable to identify email addresses/domain names at this point. We hope that LDH can identify the person(s) from LDH who would have been responsible for communications with media in the relevant time period whose emails can be searched.

       Please contact me if you have any questions or if I can otherwise be of assistance in connection with this request.

                          Sincerely,

                          Tirzah S. Lollar

# EXHIBIT 14S

# Arnold & Porter

Tirzah Lollar
+1 202.942.6199 Direct
Tirzah.Lollar@arnoldporter.com

August 5, 2022

Louisiana Department of Health
c/o Dr. Courtney N. Phillips
628 N. 4th Street.
Baton Rouge, LA 70802

Re:   **Subpoenas to Produce Documents,** *U.S. ex rel. Doe v. Planned*
      *Parenthood*, **No. 2:21-cv-00022-Z (N.D. Tex.)**

To Whom It May Concern:

We represent the Defendants Planned Parenthood Gulf Coast, Inc., Planned
Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned
Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc.
(collectively, "the Planned Parenthood Affiliate Defendants") in the above-captioned False
Claims Act lawsuit.

In the above-captioned lawsuit, Relator alleges violations of the Louisiana Medical
Assistance Programs Integrity Law and the federal False Claims Act arising from Planned
Parenthood Gulf Coast, Inc.'s provision of services under Louisiana Medicaid.
Accordingly, with the enclosed subpoena, we request that you search for and produce the
listed categories of documents. The attached subpoena (Attachment A hereto) sets out the
requests in detail, and they are described briefly below.  In light of the abbreviated
discovery schedule that the Court has ordered in the above-captioned lawsuit, and our
November 30, 2022 deadline for all fact discovery, we request these documents be
provided within 15 days of the receipt of this letter.

In the above captioned lawsuit, there are two operative complaints (Attachments B
and C hereto): one filed by a private *qui tam* relator asserting claims under the federal False
Claims Act as well as Texas and Louisiana state law, and one filed by the State of Texas
asserting claims under Texas's analogue to the False Claims Act.[1]  The relator's *qui tam*

---

[1] Relator filed his lawsuit anonymously as "Alex Doe."  We are not permitted to provide
you with Relator's name, because the Court issued a protective order sealing Relator's
identity and recently denied the Planned Parenthood Defendants' request to unseal that

Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave, NW  |  Washington, DC 20001-3743  |  www.arnoldporter.com

**Appx 323**

# Arnold & Porter

Dr. Courtney N. Phillips
August 5, 2022
Page 2

complaint alleges that the Planned Parenthood Defendants made false claims for payment under Medicaid and concealed or improperly avoided an obligation to repay money obtained under Medicaid. Specifically, Relator alleges that certain Planned Parenthood affiliates in Texas and Louisiana submitted claims for payment despite their supposed awareness that they were not qualified Medicaid providers because of a single affiliate's alleged participation in fetal tissue studies.

Beginning in 2015, Texas and Louisiana sought to terminate these Planned Parenthood affiliates, based almost entirely upon videos from the Center for Medical Progress, a California headquartered anti-abortion organization created by David Daleiden. Planned Parenthood affiliates sued in federal courts in Texas and Louisiana to enjoin termination. Both Texas and Louisiana were enjoined from terminating the Planned Parenthood affiliates by the U.S. District Court for the Western District of Texas and U.S. District Court for the Middle District of Louisiana, respectively. In December 2020, the Fifth Circuit vacated the Texas injunction.

Federal and state court injunctions barred the Texas Medicaid program from terminating these Planned Parenthood affiliates from January 19, 2017 to March 12, 2021. The October 29, 2015 federal court order preventing the Louisiana Medicaid program from terminating these Planned Parenthood affiliates is still in effect, and PPGC continues to provide services under the Louisiana Medicaid program. Relator nevertheless alleges that any payments received by these affiliates during the pendency of the injunctions are overpayments that must be refunded.[2]

DOJ declined to intervene in the case, and Relator is actively litigating the lawsuit on behalf and in the name of the United States, with the aim of recovering government funds. While Texas intervened and is litigating its claims under the Texas analogue to the federal False Claims Act, Louisiana has not intervened, so Relator is pursuing his claims under the Louisiana analogue to the federal False Claims Act.

Finally, documents produced will be subject to confidentiality designations pursuant to the stipulated protective order entered in the lawsuit and/or a separate protective order entered at your office's request. Subject to the constraints imposed by the Court's

---

information [Dkt. 79]. We assume that you are aware of the Relator's identity . If not, please let us know and we will determine if the Court would permit us to disclose Relator's identity to you to aid you in responding to this subpoena.

[2] In fact, Relator alleges that Planned Parenthood Defendants submitted false claims for Medicaid reimbursement from at least 2010. Rel. Compl. (Attachment B hereto) ¶ 3.

# Arnold&Porter

Dr. Courtney N. Phillips
August 5, 2022
Page 3

relatively short discovery schedule, we encourage you to contact us as soon as possible should you have any questions regarding the requests and to discuss the reasonable cost or fee that the Louisiana Department of Health requires in order to produce the requested documents. *See* La R.S.:5112.1(B).

Sincerely,

Tirzah S. Lollar

Enclosures:    Subpoena
               Relator's ("Doe") Complaint
               Texas Complaint

cc:            Craig Margolis (Craig.Margolis@arnoldporter.com)
               Christopher Odell (Christopher.Odell@arnoldporter.com)
               Christian Sheehan (Christian.Sheehan@arnoldporter.com)
               Paula Ramer (Paula.Ramer@arnoldporter.com)
               Ryan Patrick Brown (brown@blackburnbrownlaw.com)

# Attachment A

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Northern District of Texas

| | | |
|---|---|---|
| U.S. ex rel. ALEX DOE et al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   NO. 2:21-CV-00022-Z |
| Planned Parenthood Federation of America, Inc., et al. | ) | |
| *Defendant* | ) | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                              Louisiana Department of Health

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  Described in  Attachment A

| Place: U.S. Legal Support<br>12016 Justice Avenue<br>Baton Rouge, LA 70816 | Date and Time:<br><br>08/20/2022 5:00 pm |
|---|---|

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     08/05/2022

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Planned Parenthood Gulf Coast, Inc. _____ , who issues or requests this subpoena, are:

Tirzah Lollar, 601 Massachusetts Ave. NW, Washington, DC 20001, 202-942-6199, tirzah.lollar@arnoldporter.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**Appx 327**

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**ATTACHMENT A TO SUBPOENA**
**TO THE LOUISIANA DEPARTMENT OF HEALTH**

**<u>DEFINITIONS AND TERMS</u>**

1.   The terms "Louisiana Department of Health," "you," and "your" refer to the Louisiana Department of Health, the Louisiana Department of Health and Hospitals, and any attorneys, agents, representatives (including any auditors or investigators hired by the Louisiana Department of Health) acting or purporting to act on its behalf.

2.   The term "Louisiana" refers to the government of the State of Louisiana; any agency, office, division, or department of the Louisiana Government other than the Louisiana Department of Health, including but not limited to the Louisiana Office of the Inspector General and Louisiana Attorney General's Office; and any attorneys, agents, representatives (including any auditors or investigators hired by the Texas Government) acting or purporting to act on its behalf.

3.   The term "Texas" "refers to the government of the State of Texas; any agency, office, division, or department of the Texas Government, including but not limited to the Texas Health & Human Services Commission, Texas Office of the Inspector General, Texas Attorney General's Office, Texas Department of State Health Services, and the Texas Department of Public Safety; and any attorneys, agents, representatives (including any auditors or investigators hired by the Texas Government) acting or purporting to act on its behalf.

4.   The term "Relator" refers to Relator Alex Doe, his agents, legal representatives, or anyone purporting to act on the named Relator's behalf.

1

5.     The term "Planned Parenthood Defendants" refers to Defendants Planned Parenthood Gulf Coast, Inc. ("PPGC"), Planned Parenthood of Greater Texas, Inc. ("PPGT"), Planned Parenthood South Texas, Inc. ("PPST"), Planned Parenthood Cameron County, Inc. ("PP Cameron County"), Planned Parenthood San Antonio, Inc. ("PP San Antonio") and Planned Parenthood Federation of America, Inc. ("PPFA").

6.     The term "Affiliate Defendants" refers to Defendants PPGC, PPGT, PPST, PP Cameron County, and PP San Antonio.

7.     The term "Relator's Complaint" refers to Relator's Complaint filed on February 5, 2021.

8.     The term "Texas's Complaint" refers to Texas's Complaint filed on January 6, 2022.

9.     The term "Center for Medical Progress" refers to the entity headquartered in Irvine, California, including all predecessors, subsidiaries, parents and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, and others acting on its behalf.

10.    The term "Center for Medical Progress videos" refers to videos related to any Planned Parenthood Defendant or other Planned Parenthood entity created by the Center for Medical Progress and/or currently or previously posted to the website of the Center for Medical Progress and/or Center for Medical Progress's YouTube Channel from 2013 to the present.

11. The term "David Daleiden" refers to the founder and president of the Center for Medical Progress, including but not limited to any agents, representatives, employees, consultants, attorneys, or others acting on his behalf.

12. The terms "Person" and "Persons" include without limitation, natural persons, corporations, associations, unincorporated associations, partnerships, and any other governmental or non-governmental entity.

13. The term "Government" refers to the government of the United States of America; any agency, office, or military branch of the U.S. Government; and any attorneys, agents, representatives (including any auditors or investigators hired by the U.S. Government) acting or purporting to act on its behalf.

14. The term "Medicaid" refers to the federal Centers for Medicare & Medicaid Services administered Medicaid program and any officers, officials, employees, agents, attorneys, or other representatives acting or purporting to act on its behalf, including any Managed Care Organization.

15. The term "Texas Medicaid" refers to the State of Texas administered Medicaid program and any officers, officials, employees, agents, attorneys, or other representatives acting or purporting to act on its behalf, including any Managed Care Organization.

16. The term "Louisiana Medicaid" refers to the State of Louisiana administered Medicaid program and any officers, officials, employees, agents, attorneys, or other representatives acting or purporting to act on its behalf, including any Managed Care Organization.

3

17.    The term "generally accepted medical standards" has the meaning used in the Final Notice of Termination of Enrollment issued by the Office of Inspector General, Texas Health & Human Services Commission, dated December 20, 2016.  Relator's Compl. [Dkt. 2] Ex. C.

18.    The term "fetal tissue procurement" and has the meaning used in the Final Notice of Termination of Enrollment issued by the Office of Inspector General, Texas Health & Human Service Commission dated December 20, 2016.  Relator's Compl. [Dkt. 2] Ex. C (referring to Planned Parenthood's alleged "policy of agreeing to procure fetal tissue, potentially for valuable consideration, even it means altering the timing or method of abortion" and Planned Parenthood's alleged "misrepresentation about [its] activity related to fetal tissue procurements").

19.    The term "Medicaid's free choice of provider requirement" refers to the requirement for a state plan to allow a beneficiary to obtain Medicaid services from any institution, agency, pharmacy, person, or organization, including family planning services, that is qualified to furnish services and willing to furnish them to that particular beneficiary. *See* 42 CFR § 431.51.

20.    The term "including" shall mean "including, but not limited to."

21.    The term "overpayment" has the meaning as used in Paragraphs 17 and 40 of the Texas Complaint.

22.    The term "Grace Period" refers to the thirty-day period granted by Texas Health and Human Services Commission to Planned Parenthood through February 3, 2021, referenced in Texas's Complaint.  Tex. Compl. ¶ 6.

4

23.     The term "the Media" refers to any news organization or mass media organization, including print, internet, television, radio, or other media.

24.     "Documents" as used herein shall be construed to the full extent of Fed. R. Civ. P. 34, and shall include every original and every non-identical copy of any original of all mechanically written, handwritten, typed or printed material, electronically stored data, microfilm, microfiche, sound recordings, films, photographs, videotapes, slides, and other physical objects or tangible things of every kind and description containing stored information, including but not limited to, transcripts, letters, correspondence, notes, memoranda, tapes, records, telegrams, electronic mail, facsimiles, periodicals, pamphlets, brochures, circulars, advertisements, leaflets, reports, research studies, test data, working papers, drawings, maps, sketches, diagrams, blueprints, graphs, charts, diaries, logs, manuals, agreements, contracts, rough drafts, analyses, ledgers, inventories, financial information, bank records, receipts, books of account, understandings, minutes of meetings, minute books, resolutions, assignments, computer printouts, purchase orders, invoices, bills of lading, written memoranda or notes of oral communications, and any other tangible thing of whatever nature.

25.     The terms "relate to," "related to," "relating to," and "concerning" shall mean mentioning, comprising, consisting, indicating, describing, reflecting, referring, evidencing, regarding, pertaining to, showing, discussing, connected with, memorializing, or involving in any way whatsoever the subject matter of the request, including having a legal, factual or logical connection, relationship, correlation, or association with the subject matter of the request. A document may

5

"relate to" or an individual or entity without specifically mentioning or discussing that individual or entity by name.

26. The terms "communication" and "communications" shall mean all meetings, interviews, conversations, conferences, discussions, correspondence, messages, telegrams, telefax, electronic mail, mailgrams, telephone conversations, and all oral, written and electronic expressions, or other occurrences whereby thoughts, opinions, information, or data are transmitted between two or more persons.

27. The terms "communication" and "communications" shall mean all meetings, interviews, conversations, conferences, discussions, correspondence, messages, telegrams, telefax, electronic mail, mailgrams, telephone conversations, and all oral, written, and electronic expressions, or other occurrences whereby thoughts, opinions, information, or data are transmitted between two or more persons.

## **INSTRUCTIONS**

1. Furnish all documents and things within the possession, custody, or control of Louisiana Department of Health that are responsive to these Requests, including information or items in the possession of their assignees, agents, legal representatives, employees, representatives, attorneys, other personnel thereof, or anyone purporting to act on behalf of Louisiana Department of Health.

2. If an objection is made to any request herein, all documents and things responsive to the request not subject to the objection should be produced. Similarly, if any objection is made to the production of a document, the portion(s) of that document not subject to the objection should be produced with the portion(s) objected to redacted and indicated clearly as such. Otherwise, no communication, document,

US 172411463v1

**Appx 334**

file, or thing requested should be altered, changed, or modified in any respect. All communications, documents, and files shall be produced in full and unexpurgated form, including all attachments and enclosures either as they are kept in the ordinary course or organized to correspond with those requests.

3.      No communication, document, file, or thing requested should be disposed of or destroyed.

4.      If you object to any Document Request, or otherwise withhold responsive information because of a claim of privilege, work product, or other grounds:

    a.      identify the Document Request to which objection or claim of privilege is made;

    b.      identify every document withheld; the author, the date of creation, and all recipients;

    c.      identify all grounds for objection or assertion of privilege, and set forth the factual basis for assertion of the objection or claim of privilege; and

    d.      identify the information withheld by description of the topic or subject matter, the date of the communication, and the participants.

5.   Unless otherwise specified, the relevant time period for these Document Requests is 2010 to the present.

6.   You are under an affirmative duty to supplement your responses to these Document Requests with documents you may acquire or discover after completing your production, if you learn your response is in some material respect incomplete or incorrect and the additional or corrective information has not been made known to Planned Parenthood.

**<u>DOCUMENTS TO BE PRODUCED</u>**

7

1. All documents and communications related to PPGC's Louisiana Medicaid status from 2010 to the present including but not limited to whether PPGC remained a Louisiana Medicaid Provider after November 23, 2020 and whether PPGC remains a Louisiana Medicaid Provider after January 20, 2022.

2. All documents and communications related to the Louisiana Department of Health's consideration and decision to terminate PPGC from Louisiana Medicaid based on grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health on or about August 3, 2015 (attached as Ex. A) or grounds asserted in the termination notices issued to Planned Parenthood by the Louisiana Department of Health on or about September 15, 2015 (attached as Ex. B) including but not limited to:

   a. documents and communications related to the August 11, 2016 letter from Vikki Wachino, Director, Centers for Medicare & Medicaid Services, addressed to Jen Steele, Medicaid Director, State of Louisiana, Department of Health (attached as Ex. C).and Louisiana's response to that letter on September 27, 2016 (attached as Ex. D); and

   b. documents and communications related to the basis for the Louisiana Department of Health's termination/revocation of the Louisiana Medicaid Provider Agreements with PPGC, including but not limited to the alleged "mispresentations" by PPGC referenced in the termination notices issued to Planned Parenthood by the Louisiana Department of Health on or about September 15, 2015 (attached as Ex. B).

3. Documents sufficient to identify the instances when the Louisiana Department of Health "terminated other types of providers for similar violations of these provisions" as referenced in the Louisiana Department of Health's response to Question No. 2 in its September 27, 2016 response (attached as Ex. D).  Your response should include for each termination, documents sufficient to identify the provider that was terminated, the date of the termination, the reason for the termination, the date of the conduct that resulted in the termination, whether the provider was asked or obligated to return any amounts reimbursed under Medicaid or Louisiana Medicaid, whether the provider did return any amounts reimbursed under Medicaid or Louisiana Medicaid, and the amount of any reimbursements that were returned.

4. All documents and communications related to the termination notices issued to Planned Parenthood by the Louisiana Department of Health on or about August 3, 2015 (Ex. A).

5. All documents and communications related to Louisiana's decision to rescind the termination notices issued to Planned Parenthood by the Louisiana Department of Health on or about August 3, 2015 (Ex. A).

6. All documents and communications related to the termination notices issued to Planned Parenthood by the Louisiana Department of Health on or about September 15, 2015 (Ex. B).

7.    All documents and communications related to Texas's consideration and decision to terminate any Planned Parenthood Defendant from Texas Medicaid based on grounds asserted in the termination notices issued to Planned Parenthood by the Office of Inspector General, Texas Health & Human Services Commission on or about October 19, 2015 and December 20, 2016 (Relator's Compl. [Dkt. 2] Exs. B, C).

8.    All documents relating to or reflecting your communications with the Center for Medical Progress and/or David Daleiden from 2013 to present.

9.    All documents related to your decision to not intervene in Relator Doe's case.

10.   All documents and communications relating to or reflecting information about any Planned Parenthood Defendant provided to the Louisiana Department of Health by Relator.

11.   All documents and communications relating to any fetal tissue procurement or donation in which any Medicaid, Texas Medicaid, or Louisiana Medicaid provider participated in, facilitated, or agreed to participate or facilitate.

12.   All documents and communications related to whether participation or an agreement to participate in any fetal tissue procurement or donation renders a Medicaid provider unqualified to provide service under Medicaid, Texas Medicaid, or Louisiana Medicaid.

13.   All documents and communications relating to federal court injunctions and/or the effects of federal court injunctions related to the potential termination of any Planned Parenthood Defendant's participation in Medicaid, Texas Medicaid, and/or Louisiana Medicaid.

14.   All documents and communications relating to state court injunctions and/or the effects of a state court injunction related to the potential termination of any Planned Parenthood Defendant's participation in Medicaid, Texas Medicaid, and/or Louisiana Medicaid.

15.   All documents and communications relating to whether termination of PPGC violated Medicaid's free choice of provider requirement and why or why not.

16.   All documents and communications related to whether any Planned Parenthood Defendant had an obligation to repay any amount paid by Medicaid, Texas Medicaid, and/or Louisiana Medicaid to any Planned Parenthood Affiliate.

17.   All documents and communications relating to whether Medicaid, Texas Medicaid, and/or Louisiana Medicaid could or should seek recoupment of amounts reimbursed to any Planned Parenthood Defendant from 2010 to the present.

18.   All documents and communications related to termination by the United States, Texas, or Louisiana of any Medicaid provider unrelated to Planned Parenthood for violations of laws or regulations related to medical research, fetal tissue procurement or donation, or an agreement to engage in fetal tissue procurement or donation, including but not limited to whether any terminated federal, Texas, or Louisiana Medicaid provider was asked or obligated to return amounts reimbursed under federal, Texas, or Louisiana Medicaid.

9

19.     All documents and communications related to termination by the United States, Texas, and/or Louisiana of any Medicaid, Texas Medicaid, or Louisiana Medicaid provider on basis that the entity was not a qualified provider, including but not limited to whether any terminated Medicaid provider was asked or obligated to return amounts reimbursed under Medicaid.

20.     All documents and communications related to whether a payment, to which a Medicaid provider is entitled at the time of payment, can become an overpayment based on a subsequent change in law and/or a judicial decision. *See, e.g.*, Centers for Medicare & Medicaid Services, Medicare Program; Reporting and Returning of Overpayments, 81 Fed. Reg. 7653, 7658 (Feb. 12, 2016) ("We agree that payments that were proper at the time the payment was made do not become overpayments at a later time due to changes in law or regulation, unless otherwise required by law.").

21.     All documents and communications relating to any Planned Parenthood Affiliate's qualifications to provide services under Medicaid, Texas, Medicaid, and/or Louisiana Medicaid.

22.     All documents and communications related to information provided by you to the U.S. Congress related to any Planned Parenthood Defendant from 2015 to present regarding any Planned Parenthood Defendant's qualifications to provide service under Medicaid, Texas Medicaid, and/or Louisiana Medicaid; any Planned Parenthood Defendant's termination in Texas and/or Louisiana; continued participation of any Planned Parenthood Defendant in Louisiana Medicaid; whether participation in fetal tissue procurement or donation or agreeing to participate in fetal tissue procurement or donation renders a Medicaid provider unqualified to provide service under Medicaid, Texas Medicaid, or Louisiana Medicaid; and whether Medicaid, Texas Medicaid, and/or Louisiana Medicaid could or should seek recoupment for amounts reimbursed to any Planned Parenthood Defendant from 2010 to the present.  This request is limited to information provided by you to the U.S. Congress in connection with the 2015-16 Congressional hearings conducted by the House Judiciary Committee, the Senate Judiciary Committee, the House Energy and Commerce Committee, the House Oversight and Government Reform Committee and the House Subcommittee on Oversite and Investigations.

23.     All communications between the Louisiana Department of Health and the Media relating to any Planned Parenthood Defendant's qualifications to provide service under Medicaid, Texas Medicaid, and/or Louisiana Medicaid; any Planned Parenthood Defendant's termination in Texas and/or Louisiana; continued participation of any Planned Parenthood Defendant in Louisiana Medicaid; whether participation in fetal tissue procurement or donation or an agreement to participate in fetal tissue procurement or donation renders a Medicaid provider unqualified to provide service under Medicaid, Texas Medicaid, or Louisiana Medicaid; and whether Medicaid, Texas Medicaid, and/or Louisiana Medicaid could or should seek recoupment for amounts reimbursed to any Planned Parenthood Defendant from 2010 to the present.

US 172411463v1

24.    All documents or videos (both edited and unedited) provided to the Louisiana Department of Health by Relator, the Center for Medical Progress, or third parties acting on Relator's behalf, including staff, attorneys, or investigators.

25.    All documents and communications relating to the Louisiana Department of Health's evaluation of the Center for Medical Progress videos, including but not limited to your response(s) to those videos and any public official or other public agency's response(s) to those videos.

26.    All communications between the Louisiana Department of Health and the Media relating to the Center for Medical Progress videos.

27.    All communications between the Louisiana Department of Health and members of the United States Congress (including their staff) related to the Center for Medical Progress videos.  This request is limited to information provided by you to the U.S. Congress in connection with the 2015-16 Congressional hearings conducted by the House Judiciary Committee, the Senate Judiciary Committee, the House Energy and Commerce Committee, the House Oversight and Government Reform Committee and the House Subcommittee on Oversite and Investigations.

*   *   *

11

**Appx 339**

# Exhibit A

Bobby Jindal
GOVERNOR

Kathy H. Kliebert
SECRETARY

# State of Louisiana
## Department of Health and Hospitals
### Bureau of Legal Services

## BUREAU OF LEGAL SERVICES — FAX TRANSMITTAL

| | | | |
|---|---|---|---|
| **DATE:** | 8·3·15 | | |
| **TO:** | Melaney Linton | | |
| **FROM:** | Steve Russo | | |
| **RE:** | Planned Parenthood | | |
| **FAX NUMBERS:** | 713 535 2618 | | |
| | | | |

**COMMENTS:**

**PAGES:** (INCLUDING COVER SHEET) 9

### PRIVACY AND CONFIDENTIALITY WARNING:

This facsimile is from an attorney and may contain information that is confidential or legally privileged. Further, this facsimile may contain Protected Health Information (PHI), Individually Identifiable Health Information (IIHI) and other information which is protected by law.

This message is only for the use of the intended recipient. Use by an erroneous recipient or any other unauthorized individual or entity of information contained in, or attached to, this or any other facsimile message may result in legal action.

If you are not the intended recipient, you are hereby notified any review, disclosure/re-disclosure, copying, storing, distributing or the taking of action in reliance on the content of this facsimile and any attachments thereto, is strictly prohibited.

If you are not the intended recipient and/or have received this facsimile in error, please (1) immediately advise the sender by telephone that this message has been inadvertently transmitted to you, and (2) destroy the contents of this facsimile and its attachments by deleting any and all electronic copies and any and all hard copies regardless of where they are maintained or stored.

Bienville Building • 628 North 4th Street • P.O. Box 3836 • Baton Rouge, Louisiana 70821-3836
Phone #: (225) 342-1128 • Fax #: (225) 342-2232 • WWW.DHH.LA.GOV
"An Equal Opportunity Employer"

Appx 341



Bobby Jindal
GOVERNOR

Kathy H. Kliebert
SECRETARY

# State of Louisiana
Department of Health and Hospitals
Office of the Secretary

August 3, 2015

Planned Parenthood of Louisiana
ATTN: Melaney Linton
4018 Magazine St.
New Orleans, LA 70115

### Certified Mail, Return Receipt Requested (7012 1640 0001 7222 5655)

Re:     Medicaid Provider Agreement
        Provider Number 91338

Dear Mrs. Linton:

As you are aware, in order to participate in the Louisiana Medicaid Program (Medicaid), providers are required to sign a Medicaid provider agreement with the Louisiana Department of Health and Hospitals (LDHH). Pursuant to La. R.S. 46:437.11, each such provider agreement shall be a voluntary contract between LDHH and the applicable health care provider. According to subsection (D)(1) of the statute, a provider agreement **SHALL** be terminable by either party 30 days after receipt of written notice. In accordance with this statute, please consider this your written notice that LDHH is exercising its right to terminate your provider agreement effective 30 days after your receipt of this notice.

After any and all local, state, or federal investigations of your entity have been concluded, LDHH expressly reserves the right to amend this notice and terminate your provider agreement immediately, and without written notice, if you become the subject of a sanction or of a criminal, civil, or departmental proceeding.

Pursuant to La. R.S. 46:107, you have an opportunity for a hearing at the state level based on this termination of your provider agreement. All final decisions in cases of appeal are rendered by the office of the secretary at the state level and such decisions exhaust your administrative remedy. Your request for an Administrative Appeal must be in writing and must set out the reasons for which you are seeking an appeal and the basis on which you disagree with the department's decision. All requests for an Administrative Appeal must be received within 30 calendar days of receipt of this letter.

Bienville Building • 628 North 4ᵗʰ Street • P.O. Box 629 • Baton Rouge, Louisiana 70821-0629
Phone #: 225/342-9509 • Fax #: 225/342-5568 • WWW.DHH.LA.GOV
"An Equal Opportunity Employer"

August 3, 2015
Page 2

Any such request must be sent to the address below:

Division of Administrative Law – HH Section
P.O. Box 4189
Baton Rouge, Louisiana 70821-4189
Phone: (225) 342-0443
Fax: (225) 219-9823

Please send a copy of any request for appeal to the Bureau of Legal Services at P.O. Box 3836, Baton Rouge, Louisiana 70821, Attention: Stephen Russo.

You may be represented by an attorney or authorized representative at the Administrative Appeal. Your attorney or authorized representative must file a written notice of representation identifying his/her name, address, and telephone number at the address given above.

If you have any questions regarding this correspondence, you may contact Stephen R. Russo, Executive Counsel at 225-342-1128.

Sincerely,

Kathy Kliebert
Secretary

Cc: Planned Parenthood Gulf Coast (7099 3400 0002 6023 8151)

Appx 343

**Bobby Jindal**
GOVERNOR

**Kathy H. Kliebert**
SECRETARY

# State of Louisiana

Department of Health and Hospitals
Office of the Secretary

August 3, 2015

Planned Parenthood of Houston
ATTN: Melaney Linton
4600 Gulf Fwy.
Houston, TX 77023

**Certified Mail, Return Receipt Requested (7012 1640 0001 7222 5594)**

Re:  Medicaid Provider Agreement
     Provider Number 45802

Dear Mrs. Linton:

As you are aware, in order to participate in the Louisiana Medicaid Program (Medicaid),
providers are required to sign a Medicaid provider agreement with the Louisiana
Department of Health and Hospitals (LDHH). Pursuant to La. R.S. 46:437.11, each such
provider agreement shall be a voluntary contract between LDHH and the applicable
health care provider. According to subsection (D)(1) of the statute, a provider agreement
**SHALL** be terminable by either party 30 days after receipt of written notice. In
accordance with this statute, please consider this your written notice that LDHH is
exercising its right to terminate your provider agreement effective 30 days after your
receipt of this notice.

After any and all local, state, or federal investigations of your entity have been
concluded, LDHH expressly reserves the right to amend this notice and terminate your
provider agreement immediately, and without written notice, if you become the subject of
a sanction or of a criminal, civil, or departmental proceeding.

Pursuant to La. R.S. 46:107, you have an opportunity for a hearing at the state level based
on this termination of your provider agreement. All final decisions in cases of appeal are
rendered by the office of the secretary at the state level and such decisions exhaust your
administrative remedy. Your request for an Administrative Appeal must be in writing
and must set out the reasons for which you are seeking an appeal and the basis on which
you disagree with the department's decision. All requests for an Administrative Appeal
must be received within 30 calendar days of receipt of this letter.

Bienville Building • 628 North 4th Street • P.O. Box 629 • Baton Rouge, Louisiana 70821-0629
Phone #: 225/342-9509 • Fax #: 225/342-5568 • *WWW.DHH.LA.GOV*
"An Equal Opportunity Employer"

Appx 344

August 3, 2015
Page 2

Any such request must be sent to the address below:

Division of Administrative Law – HH Section
P.O. Box 4189
Baton Rouge, Louisiana 70821-4189
Phone: (225) 342-0443
Fax: (225) 219-9823

Please send a copy of any request for appeal to the Bureau of Legal Services at P.O. Box 3836, Baton Rouge, Louisiana 70821, Attention: Stephen Russo.

You may be represented by an attorney or authorized representative at the Administrative Appeal. Your attorney or authorized representative must file a written notice of representation identifying his/her name, address, and telephone number at the address given above.

If you have any questions regarding this correspondence, you may contact Stephen R. Russo, Executive Counsel at 225-342-1128.

Sincerely,

Kathy Kliebert
Secretary

Cc:  Planned Parenthood Gulf Coast (7012 1640 0001 7222 5693)

**Bobby Jindal**
GOVERNOR

**Kathy H. Kliebert**
SECRETARY

# State of Louisiana
Department of Health and Hospitals
Office of the Secretary

August 3, 2015

Planned Parenthood
ATTN: Melaney Linton
4018 Magazine St.
New Orleans, LA 70115

## Certified Mail, Return Receipt Requested (7012 1640 0001 7222 5686)

Re:     Medicaid Provider Agreement
        Provider Number 133673

Dear Mrs. Linton:

As you are aware, in order to participate in the Louisiana Medicaid Program (Medicaid), providers are required to sign a Medicaid provider agreement with the Louisiana Department of Health and Hospitals (LDHH). Pursuant to La. R.S. 46:437.11, each such provider agreement shall be a voluntary contract between LDHH and the applicable health care provider. According to subsection (D)(1) of the statute, a provider agreement **SHALL** be terminable by either party 30 days after receipt of written notice. In accordance with this statute, please consider this your written notice that LDHH is exercising its right to terminate your provider agreement effective 30 days after your receipt of this notice.

After any and all local, state, or federal investigations of your entity have been concluded, LDHH expressly reserves the right to amend this notice and terminate your provider agreement immediately, and without written notice, if you become the subject of a sanction or of a criminal, civil, or departmental proceeding.

Pursuant to La. R.S. 46:107, you have an opportunity for a hearing at the state level based on this termination of your provider agreement. All final decisions in cases of appeal are rendered by the office of the secretary at the state level and such decisions exhaust your administrative remedy. Your request for an Administrative Appeal must be in writing and must set out the reasons for which you are seeking an appeal and the basis on which you disagree with the department's decision. All requests for an Administrative Appeal must be received within 30 calendar days of receipt of this letter.

Bienville Building • 628 North 4th Street • P.O. Box 629 • Baton Rouge, Louisiana 70821-0629
Phone #: 225/342-9509 • Fax #: 225/342-5568 • *WWW.DHH.LA.GOV*
"An Equal Opportunity Employer"

Appx 346

August 3, 2015
Page 2

Any such request must be sent to the address below:

Division of Administrative Law – HH Section
P.O. Box 4189
Baton Rouge, Louisiana 70821-4189
Phone: (225) 342-0443
Fax: (225) 219-9823

Please send a copy of any request for appeal to the Bureau of Legal Services at P.O. Box 3836, Baton Rouge, Louisiana 70821, Attention: Stephen Russo.

You may be represented by an attorney or authorized representative at the Administrative Appeal. Your attorney or authorized representative must file a written notice of representation identifying his/her name, address, and telephone number at the address given above.

If you have any questions regarding this correspondence, you may contact Stephen R. Russo, Executive Counsel at 225-342-1128.

Sincerely,

Kathy Kliebert
Secretary

Cc: Planned Parenthood Gulf Coast (7012 1640 0001 7222 5679)

Bobby Jindal
GOVERNOR

Kathy H. Kliebert
SECRETARY

# State of Louisiana
Department of Health and Hospitals
Office of the Secretary

August 3, 2015

Planned Parenthood
ATTN: Melaney Linton
3955 Government Street, Ste. 2
Baton Rouge, LA 70806

**Certified Mail, Return Receipt Requested (7012 1640 0001 7222 5662)**

Re:    Medicaid Provider Agreement
        Provider Number 133689

Dear Mrs. Linton:

As you are aware, in order to participate in the Louisiana Medicaid Program (Medicaid), providers are required to sign a Medicaid provider agreement with the Louisiana Department of Health and Hospitals (LDHH). Pursuant to La. R.S. 46:437.11, each such provider agreement shall be a voluntary contract between LDHH and the applicable health care provider. According to subsection (D)(1) of the statute, a provider agreement **SHALL** be terminable by either party 30 days after receipt of written notice. In accordance with this statute, please consider this your written notice that LDHH is exercising its right to terminate your provider agreement effective 30 days after your receipt of this notice.

After any and all local, state, or federal investigations of your entity have been concluded, LDHH expressly reserves the right to amend this notice and terminate your provider agreement immediately, and without written notice, if you become the subject of a sanction or of a criminal, civil, or departmental proceeding.

Pursuant to La. R.S. 46:107, you have an opportunity for a hearing at the state level based on this termination of your provider agreement. All final decisions in cases of appeal are rendered by the office of the secretary at the state level and such decisions exhaust your administrative remedy. Your request for an Administrative Appeal must be in writing and must set out the reasons for which you are seeking an appeal and the basis on which you disagree with the department's decision. All requests for an Administrative Appeal must be received within 30 calendar days of receipt of this letter.

Appx 348

August 3, 2015
Page 2

Any such request must be sent to the address below:

Division of Administrative Law – HH Section
P.O. Box 4189
Baton Rouge, Louisiana 70821-4189
Phone: (225) 342-0443
Fax: (225) 219-9823

Please send a copy of any request for appeal to the Bureau of Legal Services at P.O. Box 3836, Baton Rouge, Louisiana 70821, Attention: Stephen Russo.

You may be represented by an attorney or authorized representative at the Administrative Appeal. Your attorney or authorized representative must file a written notice of representation identifying his/her name, address, and telephone number at the address given above.

If you have any questions regarding this correspondence, you may contact Stephen R. Russo, Executive Counsel at 225-342-1128.

Sincerely,

Kathy Kliebert
Secretary

Cc: Planned Parenthood Gulf Coast (7012 1640 0001 7222 5549)

# Exhibit B



**Bobby Jindal**
GOVERNOR

**Kathy H. Kliebert**
SECRETARY

**State of Louisiana**
Department of Health and Hospitals
Office of the Secretary

September 15, 2015

Planned Parenthood
ATTN:Melaney Linton
4018 Magazine Street
New Orleans, LA 70115

**Certified Mail, Return Receipt Requested (7012 2210 0001 6260 0080)**

Re:  Termination / Revocation of Louisiana Medicaid Provider Agreement
Provider Number 91338

Dear Mrs. Linton:

Based on the initial findings of Louisiana's investigation into Planned Parenthood Gulf Coast
(PPGC), you are hereby notified that the Department of Health and Hospitals (DHH) is hereby
terminating / revoking the PPGC provider agreement referenced above. This action is being
taken pursuant to La. R.S. 46:437.11 and 46:437.14. This action will take effect following final
determination, judgment, completion, withdrawal from, or termination of all administrative
and/or legal proceedings in this matter. Such proceedings include, but are not limited to,
informal hearings, administrative appeals, appeals for judicial review, appellate judgments,
and/or denials of writ applications.

Specifically, it is clear that PPGC entered into a Federal False Claims Act settlement signed on
July 25, 2013, by Melaney A. Linton, President and CEO of PPGC agreeing to pay $4,300,000 to
the United States who "contend[ed] that PPGC submitted false claims." Settlement Agreement,
*Reynolds v. Planned Parenthood Gulf Coast*, No. 9:09-cv-124 (E.D. TX, Lufkin Div.)(July 25,
2013). In accordance with the Louisiana Administrative Code, Title 50, this is a violation.
Further, under that same administrative code, PPGC had an affirmative duty to inform BHSF in
writing of this violation. Since DHH, through BHSF, was not informed within ten (10) working
days of when the provider knew or should have known of the violation, this constitutes a
separate violation. Also under consideration in our departmental proceedings are provider audits
and federal false claims cases against Planned Parenthood of America (PPFA) affiliates.
Included among these are pending federal false claims cases against PPGC, one in which the
presiding judge found that the information already provided "allows the court to draw the
reasonable inference that Planned Parenthood knowingly filed false claims." Memorandum
Opinion and Order at 17, *Carroll v. Planned Parenthood Gulf Coast*, 4:12-cv-03505 (S.D. TX,
Houston Div.) (May 14, 2014). Providers and providers-in-fact are required to ensure that all
their agents and affiliates are in compliance with all federal and state laws as well as rules,
policies and procedures of the Medicaid program. PPGC and its parent organization PPFA has
failed to do so and has failed to notify DHH of violations and misconduct by affiliates and
providers-in-fact. These are also violations of La. Admin. Code, Title 50.

**Appx 351**

Further, in regard to the Center for Medical Progress (CMP) videos, DHH reviewed responses received from PPGC via letters dated July 24, 2015, and August 14, 2015, from Melaney Linton in response to DHH letters dated July 15, 2015, and August 4, 2015. After said review, DHH believes that PPGC misrepresented its actions therein and had contradictions within the body of the letter and with the statements and admissions made in the CMP videos, including but not limited to the video released on August 4, 2015 and taped in April of this year, containing conversations with PPGC senior management, including the PPGC director of research and PPCFC facility director.

According to La. R.S. 46:437.11(D)(2), the Secretary may terminate a provider agreement immediately and without written notice if a health care provider is the subject of a sanction or of a criminal, civil, or departmental proceeding. The Department determines that PPGC currently fits within this statute due to the investigations of PPGC by both DHH and the Louisiana Office of Inspector General. DHH expressly reserves the right to amend this notice and to terminate your provider agreement immediately and without written notice based on the further findings of the pending investigations by any department of Louisiana, any other State or state agency, or the pending investigations in the congressional committees. DHH has elected to provide PPGC with full due process rights as mentioned above and will not pursue immediate termination pursuant to this notice.

According to 46:437.14(A)(1), DHH may deny or revoke enrollment in the Medicaid program in cases of misrepresentation. As alleged above, DHH believes PPGC's responses to inquiries, when compared to clear representations in various videos, rises to the level of misrepresentation. Further, according to La. R.S. 46:437,14(A)(10) and (12), DHH may move to revoke enrollment if a provider is found in violation of licensing or certification conditions or professional standards relating to the licensure or certification of health care providers or the required quality of goods, services, or supplies provided. Also, a provider agreement can be revoked for failure to meet any condition of enrollment. As a Medicaid provider, PPGC is charged with maintaining compliance with all state statutes, rules and regulations, including the Louisiana Administrative Code mentioned above. PPGC's actions mentioned above are clear violations of applicable administrative code provisions and are clear violations of the statutes mentioned. Based on the conduct described, the above provider number is hereby being terminated / revoked.

You are entitled to an administrative review of this action and it is suspensive if you avail yourself of same. Initially, you should request an Informal Hearing at which you are entitled to both present information in writing or orally, present documents, and to further inquire as to the reasons for our determination. You must make your request for an Informal Hearing in writing and within fifteen (15) calendar days (including Saturdays and Sundays) of receipt of this notice. Your written request should be sent to:

Louisiana DHH, Office of Secretary
P.O. Box 3836
Baton Rouge, Louisiana 70821

You may be represented by an attorney or authorized representative at the Informal Hearing. Your attorney or authorized representative must file a written notice of representation identifying himself by name, address, and telephone number at the address given above.

Following the Informal Hearing you will receive a written Notice of the Results of the Informal Hearing from which you are entitled to seek an appeal before the Division of Administrative Law. This hearing will also be suspensive in nature. Your request for Administrative Appeal must be in writing and set out the reasons for which you are seeking an appeal and the basis upon which you disagree with the results of the Informal Hearing. All requests for an Administrative Appeal must be received within thirty (30) calendar days (including Saturdays and Sundays) of the receipt of this notice. Request for Administrative Appeal must be sent to the address given below.

Division of Administrative Law – HH Section
P.O. Box 4189
Baton Rouge, Louisiana 70821-4189
Phone (225) 342-0443
Fax (225) 219-9823

You may be represented by an attorney or authorized representative at the Administrative Appeal. Your attorney or authorized representative must file a written notice of representation identifying himself by name, address, and telephone number at the address above.

You may choose to forego the Informal Hearing and instead request an Administrative Appeal of this action. If you choose this alternative, please follow the procedure described above for scheduling an Administrative Appeal.

If you do not request an Informal Hearing or an Administrative Appeal, your termination will become effective thirty (30) days (including Saturdays and Sundays) from the date of your receipt of this letter.

If you have any questions regarding this correspondence, you may contact Stephen R. Russo, Executive Counsel, at (225) 342-1115.

Sincerely,

Kathy Kliebert, Secretary
Louisiana Department of Health and Hospitals

Cc: Planned Parenthood Gulf Coast

Bienville Building • 628 N. 4th Street • P.O. Box 629 • Baton Rouge, Louisiana 70821-0629
Phone #: 225/342-9509 • Fax #: 225/342-5568 • WWW.DHH.LA.GOV
"An Equal Opportunity Employer"

15-30987-350



**Bobby Jindal**
GOVERNOR

**Kathy H. Kliebert**
SECRETARY

### State of Louisiana
Department of Health and Hospitals
Office of the Secretary

September 15, 2015

Planned Parenthood
ATTN: Melaney Linton
3955 Government Street, Suite 2
Baton Rouge, Louisiana 70806

**Certified Mail, Return Receipt Requested (7012 2210 0001 6260 0097)**

Re:     Termination / Revocation of Louisiana Medicaid Provider Agreement
        Provider Number 133689

Dear Mrs. Linton:

Based on the initial findings of Louisiana's investigation into Planned Parenthood Gulf Coast (PPGC), you are hereby notified that the Department of Health and Hospitals (DHH) is hereby terminating / revoking the PPGC provider agreement referenced above. This action is being taken pursuant to La. R.S. 46:437.11 and 46:437.14. This action will take effect following final determination, judgment, completion, withdrawal from, or termination of all administrative and/or legal proceedings in this matter. Such proceedings include, but are not limited to, informal hearings, administrative appeals, appeals for judicial review, appellate judgments, and/or denials of writ applications.

Specifically, it is clear that PPGC entered into a Federal False Claims Act settlement signed on July 25, 2013, by Melaney A. Linton, President and CEO of PPGC agreeing to pay $4,300,000 to the United States who "contend[ed] that PPGC submitted false claims." Settlement Agreement, *Reynolds v. Planned Parenthood Gulf Coast*, No. 9:09-cv-124 (E.D. TX, Lufkin Div.)(July 25, 2013). In accordance with the Louisiana Administrative Code, Title 50, this is a violation. Further, under that same administrative code, PPGC had an affirmative duty to inform BHSF in writing of this violation. Since DHH, through BHSF, was not informed within ten (10) working days of when the provider knew or should have known of the violation, this constitutes a separate violation. Also under consideration in our departmental proceedings are provider audits and federal false claims cases against Planned Parenthood of America (PPFA) affiliates. Included among these are pending federal false claims cases against PPGC, one in which the presiding judge found that the information already provided "allows the court to draw the reasonable inference that Planned Parenthood knowingly filed false claims." Memorandum Opinion and Order at 17, *Carroll v. Planned Parenthood Gulf Coast*, 4:12-cv-03505 (S.D. TX, Houston Div.) (May 14, 2014). Providers and providers-in-fact are required to ensure that all their agents and affiliates are in compliance with all federal and state laws as well as rules, policies and procedures of the Medicaid program. PPGC and its parent organization PPFA has failed to do so and has failed to notify DHH of violations and misconduct by affiliates and providers-in-fact. These are also violations of La. Admin. Code, Title 50.

**Appx 354**

Further, in regard to the Center for Medical Progress (CMP) videos, DHH reviewed responses received from PPGC via letters dated July 24, 2015, and August 14, 2015, from Melaney Linton in response to DHH letters dated July 15, 2015, and August 4, 2015. After said review, DHH believes that PPGC misrepresented its actions therein and had contradictions within the body of the letter and with the statements and admissions made in the CMP videos, including but not limited to the video released on August 4, 2015 and taped in April of this year, containing conversations with PPGC senior management, including the PPGC director of research and PPCFC facility director.

According to La. R.S. 46:437.11(D)(2), the Secretary may terminate a provider agreement immediately and without written notice if a health care provider is the subject of a sanction or of a criminal, civil, or departmental proceeding. The Department determines that PPGC currently fits within this statute due to the investigations of PPGC by both DHH and the Louisiana Office of Inspector General. DHH expressly reserves the right to amend this notice and to terminate your provider agreement immediately and without written notice based on the further findings of the pending investigations by any department of Louisiana, any other State or state agency, or the pending investigations in the congressional committees. DHH has elected to provide PPGC with full due process rights as mentioned above and will not pursue immediate termination pursuant to this notice.

According to 46:437.14(A)(1), DHH may deny or revoke enrollment in the Medicaid program in cases of misrepresentation. As alleged above, DHH believes PPGC's responses to inquiries, when compared to clear representations in various videos, rises to the level of misrepresentation. Further, according to La. R.S. 46:437.14(A)(10) and (12), DHH may move to revoke enrollment if a provider is found in violation of licensing or certification conditions or professional standards relating to the licensure or certification of health care providers or the required quality of goods, services, or supplies provided. Also, a provider agreement can be revoked for failure to meet any condition of enrollment. As a Medicaid provider, PPGC is charged with maintaining compliance with all state statutes, rules and regulations, including the Louisiana Administrative Code mentioned above. PPGC's actions mentioned above are clear violations of applicable administrative code provisions and are clear violations of the statutes mentioned. Based on the conduct described, the above provider number is hereby being terminated / revoked.

You are entitled to an administrative review of this action and it is suspensive if you avail yourself of same. Initially, you should request an Informal Hearing at which you are entitled to both present information in writing or orally, present documents, and to further inquire as to the reasons for our determination. You must make your request for an Informal Hearing in writing and within fifteen (15) calendar days (including Saturdays and Sundays) of receipt of this notice. Your written request should be sent to:

Louisiana DHH, Office of Secretary
P.O. Box 3836
Baton Rouge, Louisiana 70821

You may be represented by an attorney or authorized representative at the Informal Hearing. Your attorney or authorized representative must file a written notice of representation identifying himself by name, address, and telephone number at the address given above.

Following the Informal Hearing you will receive a written Notice of the Results of the Informal Hearing from which you are entitled to seek an appeal before the Division of Administrative Law. This hearing will also be suspensive in nature. Your request for Administrative Appeal must be in writing and set out the reasons for which you are seeking an appeal and the basis upon which you disagree with the results of the Informal Hearing. All requests for an Administrative Appeal must be received within thirty (30) calendar days (including Saturdays and Sundays) of the receipt of this notice. Request for Administrative Appeal must be sent to the address given below.

Division of Administrative Law – HH Section
P.O. Box 4189
Baton Rouge, Louisiana 70821-4189
Phone (225) 342-0443
Fax (225) 219-9823

You may be represented by an attorney or authorized representative at the Administrative Appeal. Your attorney or authorized representative must file a written notice of representation identifying himself by name, address, and telephone number at the address above.

You may choose to forego the Informal Hearing and instead request an Administrative Appeal of this action. If you choose this alternative, please follow the procedure described above for scheduling an Administrative Appeal.

If you do not request an Informal Hearing or an Administrative Appeal, your termination will become effective thirty (30) days (including Saturdays and Sundays) from the date of your receipt of this letter.

If you have any questions regarding this correspondence, you may contact Stephen R. Russo, Executive Counsel, at (225) 342-1115.

Sincerely,

Kathy Kliebert, Secretary
Louisiana Department of Health and Hospitals

Cc: Planned Parenthood Gulf Coast

Bienville Building • 628 N. 4th Street • P.O. Box 629 • Baton Rouge, Louisiana 70821-0629
Phone #: 225/342-9509 • Fax #: 225/342-5568 • WWW.DHH.LA.GOV
"An Equal Opportunity Employer"

Appx 356



**Bobby Jindal**
GOVERNOR

**Kathy H. Kliebert**
SECRETARY

**State of Louisiana**
Department of Health and Hospitals
Office of the Secretary

September 15, 2015

Planned Parenthood
ATTN: Melaney Linton
4600 Gulf Hwy.
Houston, TX 77023

**Certified Mail, Return Receipt Requested (7012 2210 0001 6260 0073)**

Re: Termination / Revocation of Louisiana Medicaid Provider Agreement
Provider Number 45802

Dear Mrs. Linton:

Based on the initial findings of Louisiana's investigation into Planned Parenthood Gulf Coast (PPGC), you are hereby notified that the Department of Health and Hospitals (DHH) is hereby terminating / revoking the PPGC provider agreement referenced above. This action is being taken pursuant to La. R.S. 46:437.11 and 46:437.14. This action will take effect following final determination, judgment, completion, withdrawal from, or termination of all administrative and/or legal proceedings in this matter. Such proceedings include, but are not limited to, informal hearings, administrative appeals, appeals for judicial review, appellate judgments, and/or denials of writ applications.

Specifically, it is clear that PPGC entered into a Federal False Claims Act settlement signed on July 25, 2013, by Melaney A. Linton, President and CEO of PPGC agreeing to pay $4,300,000 to the United States who "contend[ed] that PPGC submitted false claims." Settlement Agreement, *Reynolds v. Planned Parenthood Gulf Coast*, No. 9:09-cv-124 (E.D. TX, Lufkin Div.)(July 25, 2013). In accordance with the Louisiana Administrative Code, Title 50, this is a violation. Further, under that same administrative code, PPGC had an affirmative duty to inform BHSF in writing of this violation. Since DHH, through BHSF, was not informed within ten (10) working days of when the provider knew or should have known of the violation, this constitutes a separate violation. Also under consideration in our departmental proceedings are provider audits and federal false claims cases against Planned Parenthood of America (PPFA) affiliates. Included among these are pending federal false claims cases against PPGC, one in which the presiding judge found that the information already provided "allows the court to draw the reasonable inference that Planned Parenthood knowingly filed false claims." Memorandum Opinion and Order at 17, *Carroll v. Planned Parenthood Gulf Coast*, 4:12-cv-03505 (S.D. TX, Houston Div.) (May 14, 2014). Providers and providers-in-fact are required to ensure that all their agents and affiliates are in compliance with all federal and state laws as well as rules, policies and procedures of the Medicaid program. PPGC and its parent organization PPFA has failed to do so and has failed to notify DHH of violations and misconduct by affiliates and providers-in-fact. These are also violations of La. Admin. Code, Title 50.

Bienville Building • 628 N. 4th Street • P.O. Box 629 • Baton Rouge, Louisiana 70821-0629
Phone #: 225/342-9509 • Fax #: 225/342-5568 • WWW.DHH.LA.GOV
"An Equal Opportunity Employer"

**Appx 357**

15-30987.363

Further, in regard to the Center for Medical Progress (CMP) videos, DHH reviewed responses received from PPGC via letters dated July 24, 2015, and August 14, 2015, from Melaney Linton in response to DHH letters dated July 15, 2015, and August 4, 2015. After said review, DHH believes that PPGC misrepresented its actions therein and had contradictions within the body of the letter and with the statements and admissions made in the CMP videos, including but not limited to the video released on August 4, 2015 and taped in April of this year, containing conversations with PPGC senior management, including the PPGC director of research and PPCFC facility director.

According to La. R.S. 46:437.11(D)(2), the Secretary may terminate a provider agreement immediately and without written notice if a health care provider is the subject of a sanction or of a criminal, civil, or departmental proceeding. The Department determines that PPGC currently fits within this statute due to the investigations of PPGC by both DHH and the Louisiana Office of Inspector General. DHH expressly reserves the right to amend this notice and to terminate your provider agreement immediately and without written notice based on the further findings of the pending investigations by any department of Louisiana, any other State or state agency, or the pending investigations in the congressional committees. DHH has elected to provide PPGC with full due process rights as mentioned above and will not pursue immediate termination pursuant to this notice.

According to 46:437.14(A)(1), DHH may deny or revoke enrollment in the Medicaid program in cases of misrepresentation. As alleged above, DHH believes PPGC's responses to inquiries, when compared to clear representations in various videos, rises to the level of misrepresentation. Further, according to La. R.S. 46:437.14(A)(10) and (12), DHH may move to revoke enrollment if a provider is found in violation of licensing or certification conditions or professional standards relating to the licensure or certification of health care providers or the required quality of goods, services, or supplies provided. Also, a provider agreement can be revoked for failure to meet any condition of enrollment. As a Medicaid provider, PPGC is charged with maintaining compliance with all state statutes, rules and regulations, including the Louisiana Administrative Code mentioned above. PPGC's actions mentioned above are clear violations of applicable administrative code provisions and are clear violations of the statutes mentioned. Based on the conduct described, the above provider number is hereby being terminated / revoked.

You are entitled to an administrative review of this action and it is suspensive if you avail yourself of same. Initially, you should request an Informal Hearing at which you are entitled to both present information in writing or orally, present documents, and to further inquire as to the reasons for our determination. You must make your request for an Informal Hearing in writing and within fifteen (15) calendar days (including Saturdays and Sundays) of receipt of this notice. Your written request should be sent to:

Louisiana DHH, Office of Secretary<br>
P.O. Box 3836<br>
Baton Rouge, Louisiana 70821

You may be represented by an attorney or authorized representative at the Informal Hearing. Your attorney or authorized representative must file a written notice of representation identifying himself by name, address, and telephone number at the address given above.

Following the Informal Hearing you will receive a written Notice of the Results of the Informal Hearing from which you are entitled to seek an appeal before the Division of Administrative Law. This hearing will also be suspensive in nature. Your request for Administrative Appeal must be in writing and set out the reasons for which you are seeking an appeal and the basis upon which you disagree with the results of the Informal Hearing. All requests for an Administrative Appeal must be received within thirty (30) calendar days (including Saturdays and Sundays) of the receipt of this notice. Request for Administrative Appeal must be sent to the address given below.

Division of Administrative Law – HH Section
P.O. Box 4189
Baton Rouge, Louisiana  70821-4189
Phone (225) 342-0443
Fax (225) 219-9823

You may be represented by an attorney or authorized representative at the Administrative Appeal. Your attorney or authorized representative must file a written notice of representation identifying himself by name, address, and telephone number at the address above.

You may choose to forego the Informal Hearing and instead request an Administrative Appeal of this action. If you choose this alternative, please follow the procedure described above for scheduling an Administrative Appeal.

If you do not request an Informal Hearing or an Administrative Appeal, your termination will become effective thirty (30) days (including Saturdays and Sundays) from the date of your receipt of this letter.

If you have any questions regarding this correspondence, you may contact Stephen R. Russo, Executive Counsel, at (225) 342-1115.

Sincerely,

Kathy Kliebert, Secretary
Louisiana Department of Health and Hospitals

Cc:  Planned Parenthood Gulf Coast

Appx 359

# Exhibit C

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard
Baltimore, Maryland 21244-1850



---

August 11, 2016

Ms. Jen Steele, Medicaid Director
State of Louisiana
Department of Health and Hospitals
628 N. 4th Street
PO Box 91030
Baton Rouge, LA  70821-9030

Dear Director Steele:

This letter is in response to recent actions taken by the State of Louisiana to terminate its Medicaid provider agreements with Planned Parenthood Gulf Coast (PPGC).  As previously discussed with the state on August 4, 2016, the Centers for Medicare & Medicaid Services (CMS) would like to remind the state of its obligation to remain in compliance with the "free choice of provider" requirements specified in section 1902(a)(23) of the Social Security Act (the Act).  In addition, the state is obligated to ensure beneficiary access to covered services under section 1902(a)(30)(A) of the Act.  As highlighted below, CMS seeks a response from the state detailing its compliance with those requirements.

Under federal law, at section 1902(a)(23) of the Act, a Medicaid beneficiary may obtain medical services "from any institution, agency, community pharmacy, or person, qualified to perform the service or services required . . . who undertakes to provide him such services."  This provision is often referred to as the "any willing provider" or "free choice of provider" provision.  While states maintain the authority to establish reasonable standards for provider qualifications (in accordance with 42 C.F.R. § 431.51(c)(2)), any willing provider that is qualified to provide covered services according to the reasonable standards established by the state must be allowed to provide such services to Medicaid beneficiaries.  For further discussion of the "Free Choice of Provider Provisions," see State Medicaid Director Letter #16-005, published on April 19, 2016.

In addition, CMS is concerned about the effect the termination of the provider agreement with PPGC would have on Louisiana Medicaid beneficiaries' access to women's health services within the state.  Section 1902(a)(30)(A) of the Act requires that states have methods and procedures to ensure that there are sufficient providers so that care and services are available to Medicaid beneficiaries "at least to the extent that such care and services are available to the general population in the area."  It is not clear that this access requirement would be met for beneficiaries in several areas in Louisiana without the participation of PPGC, absent other changes in Louisiana's program.

Although states have authority to terminate providers from participating in Medicaid, this authority is limited to circumstances implicating the fitness of the provider to perform covered medical services or appropriately bill for them.  States must terminate those providers that have

Page 2 – Ms. Jen Steele, Medicaid Director

committed certain types of fraud or other criminal acts related to involvement with the Medicare, Medicaid or the Children's Health Insurance Program (CHIP) programs.  States must also terminate providers subject to federal disbarment or exclusion determinations.  As explained in the April 2016 guidance, states must have a valid reason for terminating a provider, related to the provider's ability to render covered services or to properly bill for those services – reasons, for instance, that bear on the individual's or entity's professional competence, professional performance, or financial integrity.

We are unaware of any basis for Louisiana to terminate PPGC's provider agreements, which would be consistent with these limited reasons for excluding providers from Medicaid participation.   Therefore, we ask that you provide information to CMS documenting the state's basis for termination, including documentation and supporting evidence that answers the following questions:

1. Why does the state believe that there were violations of La R.S. 46:437.11 and 46:437.14?

2. Has the state terminated other types of providers for similar violations of these provisions?

3. How do the state provisions located at La R.S. 46:437.11 and 46:437.14 relate to the fitness of the providers to furnish covered services or its ability to appropriately bill for them in accordance with the approved state plan?

4. Why does the state believe that there were violations of the State's Administrative Code Title 50?

5. How does the State's Administrative Code Title 50 relate to the fitness of the providers to furnish covered services or its ability to appropriately bill for them in accordance with the approved state plan?

6. Does the state have evidence that the provider has committed fraud or criminal action, was in material non-compliance with relevant requirements, or had material issues concerning its fitness to perform covered services or appropriately bill for them?  If so, please provide that evidence.

7. How will the state's actions affect access to women's health services in the state, including the state's ability to comply with the requirements set forth in section 1902(a)(30)(A)?

To the extent that Louisiana's actions conflict with federal law, CMS may take further actions to protect Medicaid beneficiaries using its authority under section 1904 of the Act, as implemented at 42 Code of Federal Regulations (CFR) 430.35 and 42 CFR Part 430, Subpart D.  Please submit a response to this letter explaining the reasons for the termination of PPGC, and the state's analysis of access issues, by September 6, 2016.  Absent a response by this date indicating how Louisiana is in compliance with section 1902(a)(23), CMS may initiate a compliance action that could result in the withholding of federal funds.

Page 2 – Ms. Jen Steele, Medicaid Director


Should the state have any questions or wish to discuss the federal requirements applicable to this matter, please feel free to contact me at (410)786-3870.



Sincerely,


Vikki Wachino
Director

# Exhibit D

**Williams, Reynaldo (CMS/OSORA)**

| | |
|---|---|
| **From:** | Kimberly Sullivan <Kimberly.Sullivan@LA.GOV> |
| **Sent:** | Tuesday, September 27, 2016 12:19 PM |
| **To:** | Schubel, Jessica L. (CMS/CMCS); Kress, Marielle J. (CMS/CMCS); Wachino, Victoria (CMS/CMCS) |
| **Cc:** | Lee, Gia (OS/OGC); Kimberly Humbles; Stephen Russo; Steele, Jen |
| **Subject:** | RE: CMS letter dated 8/11/16 to Louisiana |
| **Attachments:** | PPGC ltrs 9.15.15.pdf |

Ms. Wachino,

The Louisiana Department of Health (LDH) is in receipt of your letter of August 11, 2016 in regards to the actions taken on the Medicaid provider agreements with Planned Parenthood Gulf Coast (PPGC). We appreciate the extra time given to LDH to respond to the letter in light of the flooding event.

First, LDH takes its responsibility to administer the Medicaid Program in accordance with all federal and state laws very seriously. Cooperation by a Medicaid provider during an investigation into potential wrongdoing is a cornerstone to fulfilling this obligation. Second, LDH is well aware of the right of a Medicaid recipient to choose a Medicaid provider from the pool of eligible, qualified providers. However, a Medicaid provider that is disqualified from the program must exhaust the required administrative review process before seeking judicial review. Louisiana's Administrative Code protects the Medicaid recipients during the review by making the process suspensive, effectively staying the administrative action until the process concludes. The ruling by the Court to allow Medicaid recipients to challenge a disqualification decision in federal court during the administrative process, or after a provider abandons that process, will have a grave impact on Medicaid administration. Based on this recent Court decision, it is only a matter of time before disqualified Medicaid providers attempt to recruit Medicaid recipients to file lawsuits that a Medicaid provider may not be allowed to file.

With regard to the action referenced in the August 11, 2016 letter, LDH had a good faith basis to investigate PPGC following the revelations, in which you are aware. Any reasonable person would agree that the information in the video was concerning and warranted further investigation. Based in part on the position of CMS regarding the at-will termination, LDH voluntarily withdrew that action and proceeded with a termination for-cause. LDH fully anticipated that PPGC would proceed with the administrative review process, during which its Medicaid recipients were assured access. Regrettably, PPGC instead chose to abandon the administrative appeal process, risking the care to all of its Medicaid recipients and brought a lawsuit by three Medicaid recipients recruited by PPGC.

With regard to your specific questions, we offer the following:

1. Why does the state believe that there were violations of La R.S. 46:437.11 and 46:437.14?

   *Please see attached letters sent to PPGC on September 15, 2015.*

2. Has the state terminated other types of providers for similar violations of these provisions?

   *Yes.*

**Appx 365**

3.  How do the state provisions located at La R.S. 46:437.11 and 46:437.14 relate to the fitness of the providers to furnish covered services or its ability to appropriately bill for them in accordance with the approved state plan?

    *Please see attached letters sent to PPGC sent on September 15, 2015. The provisions of La R.S. 46:437.11 and 46:437.14 are an important part of the authority structure that enables LDH to administer the state plan in a fiscally, professionally, and morally responsible manner that protects Medicaid recipients and public resources.*

4.  Why does the state believe that there were violations of the State's Administrative Code Title 50?

    *Please see attached letters sent to PPGC on September 15, 2015.*

5.  How does the State's Administrative Code Title 50 relate to the fitness of the providers to furnish covered services or its ability to appropriately bill for them in accordance with the approved state plan?

    *Please see attached letters sent to PPGC on September 15, 2015.*

6.  Does the state have evidence that the provider has committed fraud or criminal action, was in material non-compliance with relevant requirements, or had material issues concerning its fitness to perform covered services or appropriately bill for them?  If so, please provide that evidence.

    *Please see attached letters sent to PPGC on September 15, 2015.*

7.  How will the state's actions affect access to women's health services in the state's ability to comply with the requirements set forth in section 1902(a)(30)(A)?

    *The action taken by the state regarding PPGC did not affect Medicaid recipient access to health care because the action was not final and was subject to a fully suspensive administrative review.  PPGC inexplicably abandoned that process and, instead, obtained a preliminary injunction.  The result to the Medicaid recipient is the same; access to women's health services has not been disturbed.*

LDH believes this adequately addresses the issues raised in the letter of August 11, 2016.  As always, LDH's primary concern is the care and health of the Medicaid recipients it serves through the Louisiana Medicaid program.  None of the actions taken against PPGC affected the health or access to health care services of any Louisiana Medicaid recipients.

Sincerely,

*Kimberly Sullivan*
*LDH Deputy General Counsel*
*628 N. 4th Street*
*P.O. Box 3836*
*Baton Rouge, LA  70821*
*(225) 342-1128*
*Fax: (225) 342-2232*
*kimberly.sullivan@la.gov*

**Appx 366**



---

**From:** Schubel, Jessica L. (CMS/CMCS) [mailto:Jessica.Schubel@cms.hhs.gov]
**Sent:** Sunday, September 18, 2016 6:35 PM
**To:** Kimberly Sullivan; Kress, Marielle J. (CMS/CMCS); Wachino, Victoria (CMS/CMCS)
**Cc:** Lee, Gia (OS/OGC); Kimberly Humbles; Stephen Russo
**Subject:** RE: CMS letter dated 8/11/16 to Louisiana

Ms. Sullivan,

Apologies for the delayed response, but we will provide a one-week extension. Your response is due Tuesday, September 27th.

Thanks,
Jessica

Jessica Schubel
Senior Policy Advisor
Office of the Director, Center for Medicaid and CHIP Services

---

**From:** Kimberly Sullivan [mailto:Kimberly.Sullivan@LA.GOV]
**Sent:** Thursday, September 15, 2016 10:30 AM
**To:** Kress, Marielle J. (CMS/CMCS) <Marielle.Kress@cms.hhs.gov>; Wachino, Victoria (CMS/CMCS) <Victoria.Wachino1@cms.hhs.gov>
**Cc:** Lee, Gia (OS/OGC) <Gia.Lee@hhs.gov>; Schubel, Jessica L. (CMS/CMCS) <Jessica.Schubel@cms.hhs.gov>; Kimberly Humbles <Kimberly.Humbles@LA.GOV>; Stephen Russo <Stephen.Russo@LA.GOV>
**Subject:** RE: CMS letter dated 8/11/16 to Louisiana

Ms. Kress and Ms. Wachino,

In light of the 5th Circuit ruling in the Planned Parenthood case yesterday, we are asking for a further extension to respond to this letter so the State can re-evaluate the actions taken in this case.

Sincerely,

*Kimberly Sullivan*
*LDH Deputy General Counsel*
*628 N. 4th Street*
*P.O. Box 3836*
*Baton Rouge, LA 70821*
*(225) 342-1128*
*Fax: (225) 342-2232*
*kimberly.sullivan@la.gov*



**Appx 367**

**From:** Kress, Marielle J. (CMS/CMCS) [mailto:Marielle.Kress@cms.hhs.gov]
**Sent:** Friday, September 02, 2016 2:59 PM
**To:** Kimberly Sullivan; Kimberly Humbles; Stephen Russo; Jen Steele
**Cc:** Wachino, Victoria (CMS/CMCS); Lee, Gia (OS/OGC); Schubel, Jessica L. (CMS/CMCS)
**Subject:** RE: CMS letter dated 8/11/16 to Louisiana

Ms. Sullivan,

Vikki asked me to respond to you on her behalf. We are granting you the two week extension you requested. Your response is due on Tuesday, September 20th.

Thanks,
Marielle

**Marielle Kress**
Senior Advisor
Office of the Director, Center for Medicaid and CHIP Services
224-234-7913 (blackberry) | marielle.kress@cms.hhs.gov

**From:** Kimberly Sullivan [mailto:Kimberly.Sullivan@LA.GOV]
**Sent:** Friday, September 2, 2016 1:18 PM
**To:** Wachino, Victoria (CMS/CMCS) <Victoria.Wachino1@cms.hhs.gov>
**Cc:** Kimberly Humbles <Kimberly.Humbles@LA.GOV>; Stephen Russo <Stephen.Russo@LA.GOV>; Steele, Jen <Jen.Steele@LA.GOV>
**Subject:** CMS letter dated 8/11/16 to Louisiana

Ms. Wachino,

The Department is in receipt of your letter dated August 11, 2016 in regards to the State's decision to terminate its Medicaid provider agreements with Planned Parenthood Gulf Coast.  Currently, our response is due on September 6, 2016.  Due to recent flooding events and the fact that this issue is currently in litigation, we would like to request a two week extension in which to respond.

Sincerely,

*Kimberly Sullivan*
*LDH Deputy General Counsel*
*628 N. 4th Street*
*P.O. Box 3836*
*Baton Rouge, LA  70821*
*(225) 342-1128*
*Fax: (225) 342-2232*
*kimberly.sullivan@la.gov*



4

**Appx 368**

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ALEX DOE, Relator, *et al.*, <br><br> Plaintiffs <br><br> v. <br><br> PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., *et al.*, <br><br> Defendants. | Civil Action No. 2:21-22 |

## DECLARATION OF LDH ATTORNEY STEPHEN RUSSO

I serve as Director of Legal, Audit and Regulatory Compliance (LARC) for the Louisiana Department of Health ("LDH"). I make this declaration in support of LDH's Motion for a Protective Order and to Quash in the above-captioned litigation. I have personal knowledge of the facts stated herein.

1.  I earned a juris doctor from Louisiana State University Law Center in 1994. I was then admitted to the practice of law in 1994.

2.  Since approximately 1996, I have been employed as an in-house attorney for LDH. Since approximately 2008, I have served as Executive Counsel to the Secretary of the Louisiana Department of Health. In that role, my principal responsibility is to provide legal advice to the Secretary in connection with his or her decision-making. Since early 2020, I have also served as Director of Legal, Audit, and Regulatory Compliance.

3.  On August 15, 2015, Planned Parenthood Gulf Coast, Inc. ("PPGC") filed a complaint in the Middle District of Louisiana challenging LDH's termination of PPGC's Medicaid provider agreements. Compl. (Dkt. 1), *Planned Parenthood Gulf Coast, Inc. v. Kliebert*, No. 3:15-

1

cv-565 (M.D. La.) ("the Louisiana action"). On August 26, 2015, Kimberly Sullivan and I appeared as counsel of record for LDH in the Louisiana action. Ms. Sullivan and I remained counsel of record through PPGC's November 9, 2022, voluntary dismissal with prejudice of the Louisiana action.

4.      Documents LDH filed in 2015 in the Louisiana action identified non-attorney fact witnesses with personal knowledge regarding the Louisiana Medicaid program and LDH's termination of PPGC as a Medicaid provider. *See* Declaration of Secretary Kathy Kliebert (Dkt. 13-1), *Planned Parenthood Gulf Coast, Inc. v. Kliebert*, No. 3:15-cv-565 (M.D. La.); Declaration of Ruth Kennedy (Dkt. 13-2); Amended Decl. of Ruth Kennedy (Dkt. 34-2), *Planned Parenthood Gulf Coast, Inc. v. Kliebert*, No. 3:15-cv-565 (M.D. La.). LDH's production of documents in connection with this litigation also identify non-attorney fact witnesses. To the best of my knowledge, Planned Parenthood has not sought to depose any of those fact witnesses.

5.      Kimberly Sullivan and I were intimately involved in developing the trial strategy for the Louisiana action, in developing the trial strategy for other litigation involving PPGC, and in responding to Planned Parenthood's document subpoena in this case.

6.      My knowledge of the events related to PPGC's status as a Medicaid provider derives from my provision of legal advice to LDH and my development of information to further LDH's litigation positions. I believe that my deposition testimony on matters related to PPGC's status as a Medicaid provider (including its termination as a Medicaid provider) would largely consist of declining to answer questions on the basis of attorney-client privilege, the work product doctrine, and/or deliberative process.

7.      Further declarant sayeth naught.

2

Appx 370

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND THE STATE OF LOUISIANA THAT THE FOREGOING IS TRUE AND CORRECT to the best of my knowledge.

Executed in Baton Rouge, Louisiana, this 30th day of November 2022.

STEPHEN RUSSO
LA. DEPT. OF HEALTH

3

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* ALEX DOE, Relator, *et al.*, | ) ) ) | |
| Plaintiffs | ) ) | Civil Action No. 2:21-22 |
| v. | ) ) | |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., *et al.*, | ) ) ) | |
| Defendants. | ) | |

## DECLARATION OF LDH EMPLOYEE KYLIE BOZEMAN

I am employed by the Louisiana Department of Health ("LDH"). I make this declaration in support of LDH's Motion for a Protective Order and to Quash in the above-captioned litigation. I have personal knowledge of the facts stated herein.

1.    On November 1, 2022, an individual delivered to LDH three documents that appear to be subpoenas. I received those documents on behalf of LDH. True and accurate copies of those documents are attached hereto as Exhibits 14-16.

2.    The documents I received were not accompanied by any cash, check, money order, or other monetary instrument.

3.    Neither Stephen Russo nor Kimberly Sullivan have authorized me to accept service of subpoenas directed to them in their individual capacity, as distinguished from their capacity as LDH employees.

4.    Further declarant sayeth naught.

1

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND THE STATE OF LOUISIANA THAT THE FOREGOING IS TRUE AND CORRECT.

Executed in Baton Rouge, Louisiana, this 30th day of November 2022.

*Kylie Bozeman*

PRINTED NAME

*Kylie Bozeman*

SIGNATURE

LA. DEPT. OF HEALTH

2

# EXHIBIT 14B

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Texas ▾

**RECEIVED**

NOV 0 1 2022

BUREAU OF
LEGAL SERVICES

| U.S. ex rel. ALEX DOE et al. | ) | |
|---|---|---|
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. NO. 2:21-CV-00022-Z |
| Planned Parenthood Federation of America, Inc., et al. | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                    Steve Russo
                              628 N. 4th Street, Baton Rouge, LA 70802
                          *(Name of person to whom this subpoena is directed)*

☑ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: Chehardy Sherman Williams,<br>1 Galleria Blvd., Suite 1100, Metairie, LA 70001 | Date and Time:<br>12/08/2022 9:30 a.m. |
|---|---|

The deposition will be recorded by this method:   stenographer, electronically recorded, videotaped

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    11/01/2022

                *CLERK OF COURT*

                                           OR

                                                    /s/ Tirzah Lollar

_____          _____
        *Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Planned Parenthood Gulf Coast, Inc., et al.                     , who issues or requests this subpoena, are:

Tirzah Lollar, 601 Massachusetts Ave. NW, Washington, DC 20001, 202-942-6199, tirzah.lollar@arnoldporter.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
 **(i)** is a party or a party's officer; or
 **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
 **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
 **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*

 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

 **(i)** fails to allow a reasonable time to comply;
 **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
 **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
 **(iv)** subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

 **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
 **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
 **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
 **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
 **(i)** expressly make the claim; and
 **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| United States of America | § | |
| *ex rel.* ALEX DOE, Relator, | § | CIVIL ACTION NO. 2:21-CV- |
| | § | 00022-Z |
| The State of Texas | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| The State of Louisiana | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| Plaintiffs, | § | |
| v. | § | |
| Planned Parenthood Federation of America, Inc., | § | |
| Planned Parenthood Gulf Coast, Inc., Planned | § | |
| Parenthood of Greater Texas, Inc., Planned | § | |
| Parenthood South Texas, Inc., Planned Parenthood | § | |
| Cameron County, Inc., Planned Parenthood San | § | |
| Antonio, Inc., | § | |
| Defendants. | | |

**DEFENDANTS' NOTICE OF ORAL**
**DEPOSITION OF STEVE RUSSO**

PLEASE TAKE NOTICE that pursuant to Rule 30 of the Federal Rules of Civil Procedure,

Defendants, by and through their attorneys, will take the oral and videotaped deposition of:

| | |
|---|---|
| Witness: | Steve Russo |
| Date: | December 8, 2022 |
| Time: | 9:30 a.m. (CST) |
| Location: | Chehardy Sherman Williams |
| | 1 Galleria Blvd., Suite 1100 |
| | Metairie, LA 70001 |

The deposition will be taken upon oral examination before a certified court reporter

authorized by law to take depositions upon oral examination and will be stenographically and

electronically recorded and will be videotaped. The oral examination will be taken pursuant to

Federal Rules of Civil Procedure and is being taken for the purpose of discovery, for use at trial,

or for such other purposes as are permitted under the Local Rules of the Court, the Federal Rules

of Civil Procedure, and/or the Federal Rules of Evidence.

1

Said deposition will commence at the time stated above and will continue from day to day until completed, Sundays and Holidays excluded.  Said deposition will be taken by a certified shorthand reporter and Notary Public or such other person authorized to administer oaths, at the place where the deposition is taking place or, should the deposition be undertaken remotely, will participate and administer the oath remotely.

Defendants reserve all rights regarding any documents or other written discovery that have not been timely provided in advance of depositions, including the right to question each witness about such materials at a later date.

2

Dated:  October 31, 2022

Respectfully submitted,
ARNOLD & PORTER KAYE SCHOLER LLP

By:   */s/ Tirzah S. Lollar*
Craig D. Margolis
Craig.Margolis@arnoldporter.com
Tirzah S. Lollar
Tirzah.Lollar@arnoldporter.com
Christian Sheehan
Christian.Sheehan@arnoldporter.com
Emily Reeder-Ricchetti
Emily.Reeder-Ricchetti@arnoldporter.com
Megan Pieper
Megan.Pieper@arnoldporter.com
Alyssa Gerstner
Alyssa.Gerstner@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.5000
Fax: +1 202.942.5999

Christopher M. Odell
Texas State Bar No. 24037205
Christopher.Odell@arnoldporter.com
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: +1 713.576.2400
Fax: +1 713.576.2499

Paula Ramer
250 West 55th Street
New York, New York 10019-9710
T: +1 212.836.8474
Paula.Ramer@arnoldporter.com

Ryan Patrick Brown
Texas State Bar No. 24073967
brown@blackburnbrownlaw.com
1222 S. Filmore
Amarillo, TX 79101
Tel: (806) 371-8333
Fax: (806) 350-7716

*Attorneys for Defendants Planned Parenthood*
*Gulf Coast, Inc., Planned Parenthood of Greater*

3

*Texas, Inc., Planned Parenthood of South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc.*

O'MELVENY & MYERS LLP

*/s/ Danny S. Ashby*
DANNY S. ASHBY
Texas Bar No. 01370960
dashby@omm.com
JUSTIN R. CHAPA
Texas Bar No. 24074019
jchapa@omm.com
MEGAN R. WHISLER
Texas Bar No. 24079565
mwhisler@omm.com
2501 N. Harwood Street, Suite 1700
Dallas, Texas 75201
T: (972) 360-1900
F: (972) 360-1901

LEAH GODESKY (pro hac vice)
lgodesky@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
T: (310) 553-6700
F: (310) 246-6779

RYAN BROWN ATTORNEY AT LAW
RYAN PATRICK BROWN
Texas Bar No. 24073967
ryan@ryanbrownattorneyatlaw.com
1222 S. Fillmore St.
Amarillo, Texas 79101
T: (806) 372-5711
F: (806) 350-7716

*Attorneys for Defendant Planned Parenthood Federation of America, Inc.*

4

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 31, 2022, the foregoing document was served on all counsel of record via e-mail.

*/s/ Tirzah S. Lollar*
Tirzah S. Lollar

# Arnold&Porter

**Tirzah S. Lollar**
+1 202.942.6199 Direct
**Tirzah.Lollar@arnoldporter.com**

November 1, 2022

**VIA HAND DELIVERY**

Steve Russo
Louisiana Department of Health
628 N. 4th Street
Baton Rouge, LA 70802

>              Re:    *United States of America ex rel. Doe v. Planned Parenthood Federation of America, Inc.*, No. 2:21-CV-00022-Z (N.D. Tex.)

Dear Mr. Russo:

We represent the Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc. ("Affiliate Defendants") in the above-captioned civil lawsuit.

We have issued the enclosed subpoena and notice, as authorized by the Federal Rules of Civil Procedure and under the authority of the United States District Court for the Northern District of Texas. The subpoena requires you to provide deposition testimony at Chehardy Sherman Williams, 1 Galleria Blvd., Suite 1100, Metairie, LA 70001, on December 8, 2022 at 9:30am.

# Arnold&Porter

Steve Russo
Page 2


We encourage you to contact the undersigned as soon as possible to discuss logistical arrangements for your deposition testimony.

Sincerely,


/s/ *Tirzah S. Lollar*
Tirzah S. Lollar
*Attorney for Affiliate Defendants*


Enclosures

CC:   Danny Ashby, O'Melveny & Myers, counsel for Defendant Planned Parenthood Federation of America, Inc.

# EXHIBIT 15

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Texas  ▼

**RECEIVED**

**NOV 0 1 2022**

BUREAU OF
LEGAL SERVICES

| | |
|---|---|
| U.S. ex rel. ALEX DOE et al. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.  NO. 2:21-CV-00022-Z |
| Planned Parenthood Federation of America, Inc., et al. | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                        Kim Sullivan
                 628 N. 4th Street, Baton Rouge, LA 70802
                 *(Name of person to whom this subpoena is directed)*

☑ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: Chehardy Sherman Williams, 1 Galleria Blvd., Suite 1100,Metairie, LA 70001 | Date and Time: 12/07/2022  9:30 a.m. |
|---|---|

   The deposition will be recorded by this method:   stenographer,electronically recorded,videotaped

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

   The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  ___11/01/2022___

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | /s/ Tirzah Lollar |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Planned Parenthood Gulf Coast, Inc., et al.                          , who issues or requests this subpoena, are:

Tirzah Lollar, 601 Massachusetts Ave. NW, Washington, DC 20001, 202-942-6199, tirzah.lollar@arnoldporter.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**Appx 385**

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| United States of America | § | |
| *ex rel.* ALEX DOE, Relator, | § | CIVIL ACTION NO. 2:21-CV- |
| | § | 00022-Z |
| The State of Texas | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| The State of Louisiana | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
|     Plaintiffs, | § | |
| v. | § | |
| Planned Parenthood Federation of America, Inc., | § | |
| Planned Parenthood Gulf Coast, Inc., Planned | § | |
| Parenthood of Greater Texas, Inc., Planned | § | |
| Parenthood South Texas, Inc., Planned Parenthood | § | |
| Cameron County, Inc., Planned Parenthood San | § | |
| Antonio, Inc., | § | |
|     Defendants. | | |

**DEFENDANTS' NOTICE OF ORAL
DEPOSITION OF KIM SULLIVAN**

PLEASE TAKE NOTICE that pursuant to Rule 30 of the Federal Rules of Civil Procedure,

Defendants, by and through their attorneys, will take the oral and videotaped deposition of:

| | |
|---|---|
| Witness: | Kim Sullivan |
| Date: | December 7, 2022 |
| Time: | 9:30 a.m. (CST) |
| Location: | Chehardy Sherman Williams |
| | 1 Galleria Blvd., Suite 1100 |
| | Metairie, LA 70001 |

The deposition will be taken upon oral examination before a certified court reporter

authorized by law to take depositions upon oral examination and will be stenographically and

electronically recorded and will be videotaped. The oral examination will be taken pursuant to

Federal Rules of Civil Procedure and is being taken for the purpose of discovery, for use at trial,

1

or for such other purposes as are permitted under the Local Rules of the Court, the Federal Rules of Civil Procedure, and/or the Federal Rules of Evidence.

Said deposition will commence at the time stated above and will continue from day to day until completed, Sundays and Holidays excluded. Said deposition will be taken by a certified shorthand reporter and Notary Public or such other person authorized to administer oaths, at the place where the deposition is taking place or, should the deposition be undertaken remotely, will participate and administer the oath remotely.

Defendants reserve all rights regarding any documents or other written discovery that have not been timely provided in advance of depositions, including the right to question each witness about such materials at a later date.

2

Dated: October 31, 2022

Respectfully submitted,
ARNOLD & PORTER KAYE SCHOLER LLP

By: */s/ Tirzah S. Lollar*
Craig D. Margolis
Craig.Margolis@arnoldporter.com
Tirzah S. Lollar
Tirzah.Lollar@arnoldporter.com
Christian Sheehan
Christian.Sheehan@arnoldporter.com
Emily Reeder-Ricchetti
Emily.Reeder-Ricchetti@arnoldporter.com
Megan Pieper
Megan.Pieper@arnoldporter.com
Alyssa Gerstner
Alyssa.Gerstner@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.5000
Fax: +1 202.942.5999

Christopher M. Odell
Texas State Bar No. 24037205
Christopher.Odell@arnoldporter.com
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: +1 713.576.2400
Fax: +1 713.576.2499

Paula Ramer
250 West 55th Street
New York, New York 10019-9710
T: +1 212.836.8474
Paula.Ramer@arnoldporter.com

Ryan Patrick Brown
Texas State Bar No. 24073967
brown@blackburnbrownlaw.com
1222 S. Filmore
Amarillo, TX 79101
Tel: (806) 371-8333
Fax: (806) 350-7716

*Attorneys for Defendants Planned Parenthood*
*Gulf Coast, Inc., Planned Parenthood of Greater*

3

*Texas, Inc., Planned Parenthood of South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc.*

O'MELVENY & MYERS LLP

*/s/ Danny S. Ashby*
DANNY S. ASHBY
Texas Bar No. 01370960
dashby@omm.com
JUSTIN R. CHAPA
Texas Bar No. 24074019
jchapa@omm.com
MEGAN R. WHISLER
Texas Bar No. 24079565
mwhisler@omm.com
2501 N. Harwood Street, Suite 1700
Dallas, Texas 75201
T: (972) 360-1900
F: (972) 360-1901

LEAH GODESKY (pro hac vice)
lgodesky@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
T: (310) 553-6700
F: (310) 246-6779

RYAN BROWN ATTORNEY AT LAW
RYAN PATRICK BROWN
Texas Bar No. 24073967
ryan@ryanbrownattorneyatlaw.com
1222 S. Fillmore St.
Amarillo, Texas 79101
T: (806) 372-5711
F: (806) 350-7716

*Attorneys for Defendant Planned Parenthood Federation of America, Inc.*

4

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2022, the foregoing document was served on all counsel of record via e-mail.

_/s/ Tirzah S. Lollar_
Tirzah S. Lollar

# Arnold & Porter

**Tirzah S. Lollar**
+1 202.942.6199 Direct
Tirzah.Lollar@arnoldporter.com

November 1, 2022

**VIA HAND DELIVERY**

Kimberly Sullivan
Louisiana Department of Health
628 N. 4th Street
Baton Rouge, LA 70802

Re:   *United States of America ex rel. Doe v. Planned Parenthood Federation of America, Inc.*, No. 2:21-CV-00022-Z (N.D. Tex.)

Dear Ms. Sullivan:

We represent the Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc. ("Affiliate Defendants") in the above-captioned civil lawsuit.

We have issued the enclosed subpoena and deposition notice, as authorized by the Federal Rules of Civil Procedure and under the authority of the United States District Court for the Northern District of Texas. The subpoena requires you to provide deposition testimony at Chehardy Sherman Williams, 1 Galleria Blvd., Suite 1100, Metairie, LA 70001, on December 7, 2022 at 9:30am.

**Arnold & Porter Kaye Scholer LLP**
601 Massachusetts Ave., NW | Washington, DC 20001-3743 | **www.arnoldporter.com**

Appx 392

# Arnold&Porter

Kimberly Sullivan
Page 2


      We encourage you to contact the undersigned as soon as possible to discuss logistical arrangements for your deposition testimony.

                    Sincerely,


                    */s/ Tirzah S. Lollar*
                    Tirzah S. Lollar
                    *Attorney for Affiliate Defendants*


Enclosures

CC:    Danny Ashby, O'Melveny & Myers, counsel for Defendant Planned Parenthood Federation of America, Inc.

# EXHIBIT 16

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Northern District of Texas  ▾

**RECEIVED**

**NOV 01 2022**

BUREAU OF
LEGAL SERVICES

| | |
|---|---|
| U.S. ex rel. ALEX DOE et al. | ) |
| _Plaintiff_ | ) |
| v. | ) Civil Action No.  NO. 2:21-CV-00022-Z |
| Planned Parenthood Federation of America, Inc., et al. | ) |
| _Defendant_ | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                              Louisiana Department of Health
                                 628 N. 4th St., Baton Rouge, LA 70802
_____
                     _(Name of person to whom this subpoena is directed)_

☑ _Testimony:_ YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: Chehardy Sherman Williams, 1 Galleria Blvd., Suite 1100,Metairie, LA 70001 | Date and Time: 12/09/2022  9:30 a.m. |
|---|---|

The deposition will be recorded by this method:   stenographer,electronically recorded,videotaped
_____

☐ _Production:_ You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _11/01/2022_

               _CLERK OF COURT_
                                                              OR
                                                              /s/ Tirzah Lollar
_____                    _____
     _Signature of Clerk or Deputy Clerk_                  _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ _____
Planned Parenthood Gulf Coast, Inc., et al. _____, who issues or requests this subpoena, are:

Tirzah Lollar, 601 Massachusetts Ave. NW, Washington, DC 20001, 202-942-6199, tirzah.lollar@arnoldporter.com
_____

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**Appx 395**

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | |
|---|---|
| United States of America<br><br>*ex rel.* ALEX DOE, Relator,<br><br><br>The State of Texas<br><br>*ex rel.* ALEX DOE, Relator,<br><br><br>The State of Louisiana<br><br>*ex rel.* ALEX DOE, Relator,<br><br>     Plaintiffs,<br><br>v.<br><br>Planned Parenthood Federation of America, Inc.,<br>Planned Parenthood Gulf Coast, Inc., Planned<br>Parenthood of Greater Texas, Inc., Planned<br>Parenthood South Texas, Inc., Planned Parenthood<br>Cameron County, Inc., Planned Parenthood San<br>Antonio, Inc.,<br><br>     Defendants. | CIVIL ACTION NO. 2:21-CV-00022-Z<br><br>Date:     October 31, 2022 |

**DEFENDANTS' NOTICE OF 30(b)(6) DEPOSITION OF LOUISIANA DEPARTMENT
OF HEALTH**

Please take notice that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure,

Defendants Planned Parenthood Gulf Coast, Inc. ("PPGC"), Planned Parenthood of Greater

Texas, Inc. ("PPGT"), Planned Parenthood South Texas, Inc. ("PPST"), Planned Parenthood

San Antonio, Inc. ("PPSA"), Planned Parenthood Cameron County ("PPCC") (collectively,

"Affiliate Defendants") and Planned Parenthood Federation of America, Inc. ("PPFA") will take

the deposition of the Louisiana Department of Health ("LDH") on December 9, 2022, beginning

at 9:00 a.m., at the office of Chehardy Sherman Williams, One Galleria Blvd., Suite 1100, Metairie, LA 70001. The deposition will be stenographically and electronically recorded and will be videotaped. The deposition will be used for discovery and/or evidentiary purposes to the full extent allowed by the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

As used in this Notice, the term "Defendants" refers to PPGC, PPGT, PPST, PPSA, PPCC, and PPFA. As used in this Notice, the term "LDH" refers to the Louisiana Department of Health and the Louisiana Department of Health and Hospitals. Unless otherwise noted, the relevant time period for each topic is January 2010 to January 2022.

Pursuant to Rule 30(b)(6), LDH shall designate one or more individuals to testify as to all information reasonably available to LDH concerning the following subjects:

1. LDH's knowledge and understanding of Louisiana Medicaid including:

    a. the Louisiana Medicaid Provider Manual;

    b. Louisiana Medicaid Provider Agreements; and

    c. Louisiana Medicaid enrollment and participation requirements;

2. LDH's knowledge and understanding of the administration of Louisiana Medicaid, including but not limited to:

    a. The process by which claims submitted by providers for Louisiana Medicaid patients covered by a "fee for service" Medicaid plan are submitted to and paid by LDH;

    b. The process by which LDH contracts with Managed Care Organizations ("MCOs") and determines the capitated amounts it will pay to each MCO;

    c. The process by which LDH collects encounter data from MCOs and how that data is used by LDH;

3. LDH's knowledge and understanding of the Defendants' participation in Louisiana Medicaid, including but not limited to:

    a. each Defendant's enrollment in Louisiana Medicaid;

2

    b.  each Defendant's provider status in Louisiana Medicaid;

    c.  any documentation reflecting each Defendant's provider status in Louisiana Medicaid, including but not limited to approved provider lists provided to MCOs;

    d.  each Defendant's submission of claims for reimbursement to Louisiana Medicaid;

    e.  whether PPST, PPGT, PPCC, PPST, or PPFA ever submitted claims for reimbursement to Louisiana Medicaid;

    f.  communications between Louisiana Medicaid and each Defendant; and

    g.  whether PPGC was ever terminated from Louisiana Medicaid;

4.      Communications between LDH and PPGC regarding whether PPGC was engaged in the donation or sale of fetal tissue and a video made on April 9, 2015 at a PPGC facility, including but not limited to:

    a.  July 15, 2015 letter from LDH Secretary Kathy Kliebert to PPGC CEO Melaney Linton;

    b.  July 28, 2015 letter from Linton to Kliebert;

    c.  August 4, 205 letter from Kliebert to Linton; and

    d.  August 15, 2015 letter from Linton to Kleibert;

5.      The LDH August 2015 decision to initiate termination proceedings pursuant to La. R.S. 46:437.11(D)(1) against one or more of the Affiliate Defendants, including but not limited to the:

    a.  Basis for the decision;

    b.  Information from non-LDH employees on which LDH relied in making its decision or with whom LDH consulted in making its decision;

    c.  Communications between LDH and employees of the State of Louisiana regarding LDH's consideration and ultimate decision to initiate termination proceedings; and

    d.  The identities of the LDH employees involved in the decision;

6.      The September 2015 LDH decision to rescind the termination notices issued to one or more of the Affiliate Defendants in August 2015, including but not limited to the:

    a.  Basis for the decision;

3

US 172770297v3

  b. Information from non-LDH employees on which LDH relied in making its decision or with whom LDH consulted in making its decision;

  c. Communications between LDH and employees of the State of Louisiana regarding LDH's consideration and ultimate decision to rescind termination proceedings; and

  d. The identities of the LDH employees involved in the decision;

7. The LDH September 2015 decision to initiate termination proceedings pursuant to La. R.S. 46:437.11 and 46:437.14 against one or more of the Affiliate Defendants, including but not limited to the:

  a. Basis for the decision;

  b. Information from non-LDH employees on which LDH relied in making its decision or with whom LDH consulted in making its decision;

  c. Communications between LDH and employees of the State of Louisiana regarding LDH's consideration and ultimate decision to initiate termination proceedings; and

  d. The identities of the LDH employees involved in the decision;

8. The LDH initiation of termination proceedings in August and September 2015 against one or more of the Affiliate Defendants, litigation in federal and state courts concerning termination of one or more of the Affiliate Defendants from Louisiana Medicaid, including but not limited to the:

  a. Basis for the termination proceedings; and

  b. The identities of the LDH employees involved in the termination proceedings;

9. LDH's knowledge and understanding of:

  a. The requirements of fetal transplantation research found in 42 U.S.C. §§ 289g, 289g-1, and 289g-2; and

  b. The ethical standards at issue in research involving fetal and placental tissue;

10. LDH's knowledge and understanding of the "free choice of provider" requirements specified in section 1902(a)(23) of the Social Security Act, including whether the termination of the Affiliate Defendants violated the free choice of provider requirements;

4

11.   LDH's knowledge and understanding of the procedure for terminating a provider from Louisiana Medicaid, including but not limited to any requirements that notice must be provided to Louisiana Medicaid Managed Care Organizations regarding the termination;

12.   LDH's knowledge and understanding of the potential Medicaid sanctions under Louisiana Administrative Code Title 50, sections 4145 and 4161, including the State of Louisiana's policies and procedures for investigating potential Medicaid violations to determine what, if any, sanction is appropriate;

13.   LDH's knowledge and understanding of recoupment and/or recovery of overpayments including:

    a.   LDH's knowledge and understanding of the definition of overpayment under Louisiana Administrative Code Title 50;

    b.   LDH's knowledge and understanding of the recoupment process; and

    c.   Efforts by LDH, the Office of the Attorney General's Medicaid Fraud Control Unit, or any other agency in the State of Louisiana to obtain recoupment of overpayments;

14.   LDH's authority to refer suspected fraud and abuse to the Office of the Attorney General's Medicaid Fraud Control Unit under the Louisiana Administrative Code, including LDH's knowledge and understanding of such authority, whether it exercised such authority with respect to any of the Affiliate Defendants, and the LDH employees who were involved in deciding whether or not to make the referral;

15.   LDH's knowledge and understanding of any Medicaid fraud investigations of any of the Affiliate Defendants (including but not limited to the "ongoing investigation" referenced in Kleibert's August 4, 2015 letter to Linton, and the "investigations of PPGC by both DHH and the Louisiana Office of Inspector General" referenced in the September 15, 2015 termination notices to PPGC conducted by any agency of the State of Louisiana, including but not limited to the dates, allegations, subjects, targets, persons involved in conducting the investigations, final reports issued, and outcomes of any such Medicaid fraud investigations;

16.   Any efforts made by LDH to determine whether any Louisiana Medicaid Providers have engaged in fetal tissue procurement or donation that might render the provider unqualified to provide medical services under Louisiana Medicaid or violate generally accepted medical standards or ethical standards, including but not limited to:

    a.   whether any providers that were identified were terminated from Louisiana Medicaid;

5

     b.  whether any providers that were identified were asked or required to repay amounts reimbursed under Louisiana Medicaid; and

     c.  whether any amounts were repaid;

17.    Circumstances under which LDH terminated a Louisiana Medicaid Provider other than PPGC on the basis that:

     a.  The provider entered into a federal False Claims Act settlement in connection with conduct unrelated to the provider's provision of services under Louisiana Medicaid (see LDH September 2015 notice of termination);

     b.  The provider did not adhere to its affirmative duty to provide written notice within 10 working days to LDH that the provider had entered into a federal False Claims Act settlement in connection with conduct unrelated to the provider's provision of services under Louisiana Medicaid (see LDH September 2015 notice of termination);

     c.  The provider's agents, affiliates, or providers-in-fact were subject to provider audits or federal false claims cases (see LDH September 2015 notice of termination);

     d.  The provider misrepresented its actions in response to an investigation initiated by either LDH or the Louisiana Office of Inspector General (see LDH September 2015 notice of termination); and

     e.  The provider engages in or follows a policy of agreeing to engage in fetal tissue procurement or donation;

18.    LDH's knowledge and understanding of any requests or demands from LDH, the Louisiana Attorney General's Office, the Medicaid Fraud Control Unit, or any other agency in the State of Louisiana that PPGC repay amounts PPGC had received from Louisiana Medicaid during the pendency of the injunction entered by the U.S. District Court for the Middle District of Louisiana in *Planned Parenthood Gulf Coast, Inc. v. Kliebert*, No. 3:15-cv-565-JWD-SCR;

19.    LDH's consideration of whether PPGC had an obligation or would be required to repay amounts received for Medicaid services provided;

20.    LDH's knowledge and understanding of the Louisiana Attorney General's Office's, the Medicaid Fraud Control Unit's, or any other agency in the State of Louisiana's consideration of whether any PPGC had an obligation or would be required to repay amounts received for Medicaid services provided;

6

21. LDH's consideration of whether Medicaid, Texas Medicaid, and/or Louisiana Medicaid could or should seek recoupment of amounts reimbursed to PPGC;

22. LDH's knowledge and understanding of the Louisiana Attorney General's Office's, the Medicaid Fraud Control Unit's, or any other agency in the State of Louisiana's consideration of whether Medicaid, Texas Medicaid, and/or Louisiana Medicaid could or should seek recoupment of amounts reimbursed to PPGC;

23. Any notices provided by LDH to Louisiana Medicaid Managed Care Organizations that PPGC had been terminated from Louisiana Medicaid;

24. Any notices provided by LDH to Louisiana Medicaid Managed Care Organizations that PPGC could no longer accept new Medicaid clients;

25. LDH's requests that a Louisiana Medicaid provider repay amounts received under a federal court injunction prohibiting the provider's termination from Louisiana Medicaid;

26. LDH's decision not to initiate administrative recoupment proceedings to recover amounts paid to a Louisiana Medicaid provider under a federal court injunction prohibiting the provider's termination from Louisiana Medicaid;

27. Providers other than PPGC that LDH has terminated "for similar violations of" La. R.S. 46:437.11 and 46:437.14 as mentioned in a September 27, 2016 email from LDH Deputy General Counsel to Vicki Wachino, CMS Director, including but not limited to for each provider:

    a. date of the termination;

    b. reason for the termination;

    c. date of the conduct that resulted in the termination;

    d. whether the provider was asked or obligated to return any amounts reimbursed under Medicaid or Louisiana Medicaid;

    e. whether the provider did return any amounts reimbursed under Medicaid or Louisiana Medicaid; and

    f. the amount of any reimbursements that were returned;

28. LDH's knowledge and understanding of any Louisiana Medical Assistance Programs Integrity Law actions brought by Louisiana based on alleged failure to repay funds received under a federal court injunction prohibiting the provider's termination from Louisiana Medicaid;

7

29.   LDH's communications and dealings with Relator, including but not limited to:

    a.   When LDH first had contact (if any) with Relator, the Center for Medical Progress, or third parties acting on Relator's behalf regarding allegations of potential misconduct by any of the Affiliate Defendants;

    b.   Information or documents provided by Relator, the Center for Medical Progress, or third parties acting on Relator's behalf regarding potential misconduct by any of the Affiliate Defendants; and

    c.   Any information or documents requested or received from Relator relating to any of the Affiliate Defendants;

30.   LDH's communications and dealings with the Louisiana Office of the Attorney General, including but not limited to the Office of the Attorney General's Medicaid Fraud Control Unit, regarding potential misconduct by any of the Affiliate Defendants;

31.   LDH's communications and dealings with the U.S. Department of Health & Human Services, Centers for Medicare and Medicaid Services, regarding

    a.   potential misconduct by any of the Affiliate Defendants;

    b.   the facts that form the basis for Louisiana's termination of any of the Affiliate Defendants from Louisiana Medicaid; and

    c.   whether Louisiana's termination of any of the Affiliate Defendants from Louisiana Medicaid violated the "free choice of provider" requirements specified in section 1902(a)(23) of the Social Security Act.

8

/s/ *Tirzah S. Lollar*
Craig D. Margolis
Craig.Margolis@arnoldporter.com
Tirzah S. Lollar
Tirzah.Lollar@arnoldporter.com
Christian Sheehan
Christian.Sheehan@arnoldporter.com
Emily Reeder-Ricchetti
Emily.Reeder-Ricchetti@arnoldporter.com
Megan Pieper
Megan.Pieper@arnoldporter.com
Alyssa Gerstner
Alyssa.Gerstner@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.5000
Fax: +1 202.942.5999

Christopher M. Odell
Texas State Bar No. 24037205
Christopher.Odell@arnoldporter.com
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: +1 713.576.2400
Fax: +1 713.576.2499

Paula Ramer
250 West 55th Street
New York, New York 10019-9710
T: +1 212.836.8474
Paula.Ramer@arnoldporter.com

Ryan Patrick Brown
Texas State Bar No. 24073967
brown@blackburnbrownlaw.com
1222 S. Filmore
Amarillo, TX 79101
Tel: (806) 371-8333
Fax: (806) 350-7716

*Attorneys for Defendants Planned Parenthood
Gulf Coast, Inc., Planned Parenthood of
Greater Texas, Inc., Planned Parenthood of
South Texas, Inc., Planned Parenthood
Cameron County, Inc., and Planned
Parenthood San Antonio, Inc.*

9

O'MELVENY & MYERS LLP

/s/ *Danny S. Ashby*
DANNY S. ASHBY
Texas Bar No. 01370960
dashby@omm.com
JUSTIN R. CHAPA
Texas Bar No. 24074019
jchapa@omm.cm
MEGAN R. WHISLER
Texas Bar No. 24079565
mwhisler@omm.com
2501 N. Harwood Street, Suite 1700
Dallas, Texas 75201
T: (972) 360-1900
F: (972) 360-1901

LEAH GODESKY (*pro hac vice*)
lgodesky@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
T: (310) 553-6700
F: (310) 246-6779

Ryan Patrick Brown
Texas State Bar No. 24073967
ryan@ryanbrownattorneyatlaw.com
1222 S. Fillmore
Amarillo, TX 79101
Tel: (806) 372-5711
Fax: (806) 350-7716

*Attorneys for Defendant Planned Parenthood
Federation of America, Inc.*

October 31, 2022

10

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Notice of Rule 30(b)(6) Deposition of the Louisiana Department of Health by Defendants has been served upon all attorneys of record in this case on this, the 31st day of October, 2022, by electronic email.

                                        s/ Tirzah S. Lollar
                                        Tirzah S. Lollar

11

# Arnold & Porter

Tirzah S. Lollar
+1 202.942.6199 Direct
Tirzah.Lollar@arnoldporter.com

November 1, 2022

**VIA HAND DELIVERY**

Louisiana Department of Health
c/o Dr. Courtney N. Phillips
628 N. 4th Street
Baton Rouge, LA 70802

      Re:    *United States of America ex rel. Doe v. Planned Parenthood Federation of America, Inc.*, No. 2:21-CV-00022-Z (N.D. Tex.)

To Whom It May Concern:

      We represent the Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc. ("Affiliate Defendants") in the above-captioned civil lawsuit.

      We have issued the enclosed subpoena and Rule 30(b)(6) deposition notice, as authorized by the Federal Rules of Civil Procedure and under the authority of the United States District Court for the Northern District of Texas. The subpoena and notice require the Louisiana Department of Health ("LDH") to provide deposition testimony on the matters for examination listed on the notice at Chehardy Sherman Williams, 1 Galleria Blvd., Suite 1100, Metairie, LA 70001, on December 9, 2022 at 9:30am.

**Arnold & Porter Kaye Scholer LLP**
601 Massachusetts Ave., NW | Washington, DC 20001-3743 | www.arnoldporter.com

Appx 408

# Arnold&Porter

Louisiana Department of Health
Page 2


We encourage you to contact the undersigned as soon as possible to discuss logistical arrangements for LDH's deposition testimony.  We are also available to meet and confer regarding the matters for examination on the enclosed notice.

Sincerely,


/s/ *Tirzah S. Lollar*
Tirzah S. Lollar
*Attorney for Affiliate Defendants*


Enclosures

CC:   Danny Ashby, O'Melveny & Myers, counsel for Defendant Planned Parenthood Federation of America, Inc.