IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| United States of America<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Texas<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Louisiana<br>*ex rel.* ALEX DOE, Relator,<br>    Plaintiffs,<br>v.<br>Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc.,<br>    Defendants. | CIVIL ACTION NO.<br>2:21-CV-00022-Z<br><br>Date:    December 2, 2022 |

**DEFENDANTS' OPPOSITION TO MOTION FOR A PROTECTIVE ORDER
AND TO QUASH DEPOSITION SUBPOENAS BY NON-PARTIES LOUISIANA
DEPARTMENT OF HEALTH, ATTORNEY STEPHEN RUSSO,
<u>AND ATTORNEY KIMBERLY SULLIVAN</u>**

**TABLE OF CONTENTS**

**INTRODUCTION** ........................................................................................................................... 1
**BACKGROUND** ............................................................................................................................ 2
**STANDARD OF REVIEW** ........................................................................................................... 3
**ARGUMENT** ................................................................................................................................. 4
    I.    Any Deficiency Regarding Witness Fees Has Been Rectified. ............................................ 4
    II.   Depositions On Or Before December 10 Comport With The Scheduling Order............. 7
    III.  State Sovereign Immunity Does Not Bar Enforcement of the Subpoenas....................... 8
    IV.  The Scope Of The Subpoenas Is Proper............................................................................ 10
**CONCLUSION** ............................................................................................................................ 13

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Adams v. Dolgencorp, LLC*,
   No. 11-784, 2012 WL 1867123 (M.D. La. May 22, 2012) ........................................................5

*Balakrishnan v. Bd. of Sup'rs of La. State Univ.*,
   No. 08-4315, 2009 WL 5169972 (E.D. La. Dec. 8, 2009) ........................................................5

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
   527 U.S. 666 (1999) ..................................................................................................................8

*In re Dennis*,
   330 F.3d 696 (5th Cir. 2003) ..................................................................................................6, 7

*Dimitric v. Tex. Workforce Comm'n*,
   No. G-07-0247, 2008 WL 687463 (S.D. Tex. Mar. 11, 2008) ............................................9, 10

*Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.*,
   876 F.3d 690 (5th Cir. 2017) ................................................................................................4, 12

*First Nat'l Bank v. Genina Marine Servs., Inc.*,
   136 F.3d 391 (5th Cir. 1998) ..................................................................................................5, 8

*Informd, LLC v. DoxRX, Inc.*,
   No. 16-83, 2016 WL 7478962 (M.D. La. Dec. 29, 2016) ........................................................5

*Lapides v. Bd. of Regents*,
   535 U.S. 613 (2002) ................................................................................................................10

*League of United Latin Am. Citizens v. Abbott*,
   No. 21-CV-00259, 2022 WL 3656395 (W.D. Tex. Aug. 23, 2022) ..................................10, 11

*MetroPCS v. Thomas*,
   327 F.R.D. 600 (N.D. Tex. 2018) .........................................................................................4, 12

*Morris v. Coker*,
   No. A-11-MC-712 (W.D. Tex. Aug. 26, 2011) .........................................................................5

*Pennhurst State Sch. & Hosp. v. Halderman*,
   465 U.S. 89 (1984) ....................................................................................................................8

*U.S. ex rel. Rigsby v. State Farm Fire & Cas. Co.*,
   794 F.3d 457 (5th Cir. 2015) .....................................................................................................6

*Russell v. Jones*,
    49 F.4th 507 (5th Cir. 2022) ...................................................................................................9

*Searcy v. Philips Elecs. N. Am. Corp.*,
    117 F.3d 154 (5th Cir. 1997) ...................................................................................................9

*Securs Tech., Inc. v. Global Tel\*Line Corp.*,
    331 F. Supp. 3d 633 (N.D. Tex. 2017) ...................................................................................12

*Shelton v. Am. Motors Corp.*,
    805 F.2d 1323 (8th Cir. 1986) ..........................................................................................11, 12

*U.S. ex rel. Stewart v. La. Clinic*,
    2002 WL 31819130 (E.D. La. Dec. 12, 2002) ........................................................................9

*Theriot v. Parish of Jefferson*,
    185 F.3d 477 (5th Cir. 1999) ............................................................................................11, 12

*TravelPass Grp., LLC v. Caesars Entertainment Corp.*,
    No. 18-cv-153, 2021 WL 2492858 (E.D. Tex. May 4, 2021) ..................................................6

**Statutes**

False Claims Act ............................................................................................................................9

La. Rev. Stat. § 46:439.2(A)(1) ......................................................................................................8

La. Rev. Stat. § 46:439.2(E) ...........................................................................................................9

Louisiana Medical Assistance Programs Integrity Law ................................................................8

**Other Authorities**

Fed. R. Civ. P. 1 .............................................................................................................................6

Fed. R. Civ. P. 26(c) ......................................................................................................................4

Fed. R. Civ. P. 45 .......................................................................................................................5, 12

Fed. R. Civ. P. 45(b)(1) ..................................................................................................................4

Fed. R. Civ. P. 45(c) ......................................................................................................................4

Fed. R. Civ. P. 45(d)(3)(A) ............................................................................................................3

Planned Parenthood Federation of America, Inc. ("PPFA"), Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc. ("Affiliate Defendants") (all collectively, "Defendants") hereby oppose nonparties Louisiana Department of Health ("LDH"), Stephen Russo, and Kimberly Sullivan's (collectively, "Movants") Motion for Protective Order and to Quash, Dkt. 318 (the "Motion" or "Mot.").

## INTRODUCTION

After saying nothing for an entire month, Movants rushed to this Court at the eleventh hour to seek to avoid their discovery obligations. Even if the Court were willing to overlook Movants' bad-faith conduct, their arguments on the merits are plainly insufficient. To begin with, the administrative oversight that Movants identify has now been rectified twice over. Moreover, their argument regarding the scheduling order in this matter flies in the face of an order this Court has already issued expressing no qualms with the proposed dates for Movants' depositions. And, after months of Movants responding to written discovery requests without even a hint that they might be immune from this Court's process, they now seek to claim the benefit of such immunity, despite an express provision of Louisiana law invoking this Court's jurisdiction. Finally, Movants' last-ditch efforts at claiming overbreadth miss the mark and, in any event, are not grounds for outright quashing a subpoena. Many of these points could well have been resolved if Movants' counsel had engaged with Defendants' counsel in good faith, rather than providing no response to multiple emails over a period of several weeks. Movants' unwillingness to discuss these matters with Defendants only highlights the plain reality that their positions regarding the validity of the subpoenas are untenable. The subpoenas should not be quashed and the Motion should be denied.

## BACKGROUND

The Court is familiar with the factual and legal background of this matter—in which Relator sues Defendants on behalf of Louisiana, among other governmental entities—and Defendants thus focus this section on details pertinent to the subpoenas issued to the Movants. Those details are rife with blatant gamesmanship through which Louisiana and its entities have sought to avoid their discovery obligations in a suit where they stand to win millions of dollars if Relator is successful.

More than five months ago, on June 17, 2022, Affiliate Defendants served the State of Louisiana with a subpoena for the production of documents. Ex. A. On July 26, the State submitted a thirty-page set of responses and objections, which were captioned as being part of this federal-court litigation and which purported to be "[p]ursuant to the Federal Rules of Civil Procedure." *See* Ex. B at 1. Nowhere in that document, which was signed by the same counsel who filed the instant Motion, and which raised voluminous objections, was there any suggestion that sovereign immunity might apply. On the contrary, the Attorney General of Louisiana committed to "comply with the Federal Rules of Civil Procedure." *Id.* at 2.

Following receipt of the objections, counsel for the Affiliate Defendants met and conferred with counsel for Louisiana on August 2. Shortly thereafter, on August 5, Affiliate Defendants withdrew that subpoena and served a largely similar subpoena on LDH. LDH provided its initial response on August 19. Ex. C. Again, LDH raised no sovereign-immunity objection, and committed to "comply with the Federal Rules of Civil Procedure." *See id.* at 1. Louisiana produced fewer than twenty documents in late August, and did not make any further document production until mid-October.

After finally having the chance to review document discovery from LDH, Defendants determined that depositions of LDH and certain of its employees would produce relevant discoverable information. As such, Defendants notified LDH of their intent to issue deposition subpoenas to the Movants, and asked whether LDH could accept service via email. LDH responded that all three Movants were represented by Louisiana's Attorney General's Office. Defendants' counsel emailed Movants' counsel at that office—with whom they were already acquainted from prior discussions regarding the document subpoenas—but he never responded. As such, Defendants had the subpoenas served in person on November 1.

Thereafter, Defendants heard nothing from Movants' counsel despite several attempts to reach him via email. He did not respond to further emails on November 1, nor to a follow-up email on November 8, nor to a follow-up letter sent via email on November 23. *See* Ex. D. Finally, on November 30, he emailed Affiliate Defendants' counsel asking to speak after 2:00 p.m. that day—that is, within a window beginning three hours before the close of business on what Movants claim to believe was the final day for discovery. The meet-and-confer occurred at 4:00 p.m. on November 30—a whole month since the subpoenas had been served, and more than a month since Movants were told they were forthcoming. *See* Ex. E.[1] Movants filed their fifteen-page Motion—in which they sought a briefing schedule giving Defendants barely 48 hours to respond—less than seven hours later.

## STANDARD OF REVIEW

Rule 45(d)(3)(A) of the Federal Rules of Civil Procedure requires a court to "quash or modify a subpoena that . . . fails to allow a reasonable time to comply[,] requires a person to

---

[1] While Defendants do not endorse every detail of the meet-and-confer as described in the email from Movants' counsel, it accurately reflects the time and general topics of the call.

3

comply beyond the geographical limits specified in Rule 45(c)[,] requires disclosure of privileged or other protected matter, if no exception or waiver applies[,] or subjects a person to undue burden." The person moving to quash or modify a subpoena "has the burden of proof." *MetroPCS v. Thomas*, 327 F.R.D. 600, 609 (N.D. Tex. 2018) (citing *Wiwa v. Royal Dutch Petroleum. Co.*, 392 F.3d 812, 818 (5th Cir. 2004)). When such a motion is made on the ground of overbreadth, the person resisting the subpoena "must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Id.* (quoting *Andra Grp. LP v. JDA Software Grp., Inc.*, 312 F.R.D. 444, 449 (N.D. Tex. 2015)). Quashing a subpoena outright is disfavored; modification is preferred. *Id.* (quoting *Wiwa*, 392 F.3d at 818).

Rule 26(c) permits a court "for good cause" to "issue an order to protect a party or person" by, among other things, "forbidding the disclosure or discovery [sought]" or "forbidding inquiry into certain matters." *See* Fed. R. Civ. P. 26(c). "The movant bears the burden of showing that a protective order is necessary." *Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 698 (5th Cir. 2017).

## ARGUMENT

**I.     Any Deficiency Regarding Witness Fees Has Been Rectified.**

Late in the afternoon of November 30—a month after accepting service of the subpoenas, and mere hours before any motion to quash would be due[2]—Movants' counsel notified Affiliate Defendants' counsel that the subpoenas had not included fees pursuant to Rule 45(b)(1). As Movants would have known if they had simply asked, this was an inadvertent administrative oversight, which Defendants endeavored to correct immediately once it was brought to their

---

[2] *See* Dkt. 192 at 5 (requiring motions to quash be filed not "less than five business days before the scheduled or noticed date of the deposition," absent "extraordinary circumstances").

4

attention. Indeed, within twenty-four hours of learning of it, Defendants served Movants with cured subpoenas including the appropriate fees and, out of an abundance of caution, also issued and served new subpoenas for the same dates, likewise including the appropriate fees. *See* Ex. F. For two independent reasons, the oversight regarding witness fees does not bar enforcement of the subpoenas.

*First*, a failure to include fees with a subpoena is curable if the fees are remitted in time for the recipient to use the fees to travel to the deposition. *See Adams v. Dolgencorp, LLC*, No. 11-784, 2012 WL 1867123, at *1 (M.D. La. May 22, 2012) (citing *Meyer v. Foti*, 720 F. Supp. 1234, 1244 (E.D. La. 1989)) (declining to quash a subpoena where failure to serve fees was rectified only two calendar days before the deposition, because "while a subpoena request without the witness fee is technically invalid, the defect can be cured"); *accord Informd, LLC v. DoxRX, Inc.*, No. 16-83, 2016 WL 7478962, at *7 (M.D. La. Dec. 29, 2016). This conclusion follows from the more general rule that the proper course of action when a subpoena suffers from a technical procedural defect is to cure the defect, not to quash the subpoena. *See Morris v. Coker*, No. A-11-MC-712, at *1 (W.D. Tex. Aug. 26, 2011) ("[I]t is neither cute nor clever to attempt to quash a subpoena for technical failures of service when notice is reasonably given[.]"); *Balakrishnan v. Bd. of Sup'rs of La. State Univ.*, No. 08-4315, 2009 WL 5169972, at *3 (E.D. La. Dec. 8, 2009) (issuing party "should first cure the procedural defects . . . before the Court will consider the parties' substantive arguments" about subpoena's scope).

This rule makes good sense. A contrary one would risk wasting the resources of litigants, courts, process servers, and witnesses.[3] Moreover, interpreting Rule 45 to permit the curing of

---

[3] Of course, that is exactly what happened here, as Movants' unexplained delay in raising the fees issue did not give Defendants time to seek guidance from the Court as to whether it would permit Defendants to cure their otherwise-valid subpoenas.

5

technical subpoena defects is in keeping with the exhortation that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." *See* Fed. R. Civ. P. 1; *see also, e.g., TravelPass Grp., LLC v. Caesars Entertainment Corp.*, No. 18-cv-153, 2021 WL 2492858 (E.D. Tex. May 4, 2021) (citing *Heartland Surgical Specialty Hosp. v. Midwest Div., Inc.*, No. 05-2164, 2007 WL 1112525 (D. Kan. Apr. 11, 2007)) (declining to find a subpoena unenforceable on the basis of a procedural defect because doing so would run afoul of Rule 1). "[T]here probably is no provision in the federal rules that is more important than [Rule 1's] mandate." *U.S. ex rel. Rigsby v. State Farm Fire & Cas. Co.*, 794 F.3d 457, 468 (5th Cir. 2015) (internal quotation marks omitted). That mandate should be honored here, especially in the face of Movants' bad-faith delay tactics.

Defendants' authorities do not refute this principle. They stand only for the proposition, with which Defendants do not quibble, that a subpoena is not enforceable when not accompanied by appropriate witness fees—but they do not answer the question at issue here, which is whether such a deficiency is curable. *See In re Dennis*, 330 F.3d 696, 704 n.7 (5th Cir. 2003) (noting that issuing party did not correct its failure to remit fees even when it reissued the subpoena); *id.* at 705 (issuing party "made no attempt" to comply with the rule). Here, Defendants promptly acted to cure the defect, and Movants do not suggest that they were prejudiced by it in any way (indeed, if they had been, one might expect that they would not have waited until the last minute to raise the issue).[4] The original subpoenas have therefore been cured.

---

[4] In any event, any assertion of prejudice would be illogical. Either movants knew of the administrative oversight and sat on their hands, or they did not know and thus had no reason to think the subpoenas were invalid. Either way, they are not prejudiced by enforcing the subpoenas as served over a month ago.

6

*Second*, even if the Court is not inclined to hold that service of the original subpoenas has now been cured, service of the new subpoenas is patently valid. As LDH requested in its motion filed earlier today with respect to those subpoenas, *see* Dkt. 322, Defendants intend to expound on this argument in their response to that motion tomorrow.

**II.     Depositions On Or Before December 10 Comport With The Scheduling Order.**

In attempting to construe this Court's scheduling order, Dkt. 192, as a bar to enforcement of the subpoenas, Movants read out a key provision of that order, and disregard a recent order of the Court applying it. The scheduling order provides, with respect to the deadline for completion of discovery, that "[t]he parties may agree to extend this discovery deadline," provided that doing so does not affect certain other deadlines and that "the parties give written notice of the extension to the Court." Dkt. 192 at 5. As the Court has already held, that is exactly what happened here.

On November 10, Defendant Planned Parenthood Gulf Coast ("PPGC") filed a motion seeking a protective order rescheduling its CEO's deposition to one of several proposed dates in December. *See* Dkt. 268. In their response to that motion, Relator provided the Court with "the current deposition schedule." Dkt. 286 at 5 (footnote omitted). That schedule included twelve depositions after November 30, including the three at issue here. *Id.*; *see generally* Dkt. 287 (appendix reproducing extensive communications among the parties evidencing agreement on the schedule). The Court granted the motion, noting that "depositions are currently scheduled through December 9," such that "the Court cannot agree that deposing Ms. Linton during the discovery period is 'critical.'" Dkt. 293 at 2. The Court ordered the deposition to occur on December 10, finding "no reason why December 10 is an unworkable date," and noting that it is "more than two weeks before the December 27 deadline for dispositive motions." *Id.* at 2–3.

Not only does the Court's prior order squarely foreclose Movants' interpretation of the scheduling order, but it also demonstrates the proper process for addressing scheduling concerns—

7

a process that Movants eschewed in favor of rank gamesmanship. Prior to moving for relief from this Court, the parties discussed their proposed schedules for Ms. Linton's deposition. Only after these good-faith discussions reached an impasse did PPGC seek relief. And rather than waiting until the last possible minute, PPGC did so two weeks before the scheduled deposition, so that it did not force Relator into having a mere 48 hours to respond to the motion. Had Movants pursued a similar tack here, Defendants would have gladly engaged with them in good faith to find mutually agreeable dates. Movants should not be permitted to benefit from their failure to operate with even a modicum of good faith.

### III.     State Sovereign Immunity Does Not Bar Enforcement of the Subpoenas.

A state waives sovereign immunity when it "makes a 'clear declaration' that it intends to submit itself to [federal] jurisdiction." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675–76 (1999) (quoting *Great N. Life Ins. Co. v. Reed*, 322 U.S. 57, 64 (1944)); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984) (citing *Clark v. Barnard*, 108 U.S. 436, 447 (1883)) ("[T]he Court consistently has held that a State may consent to suit against it in federal court."). With respect to enforcement of the Louisiana Medical Assistance Programs Integrity Law ("MAPIL"), under which Relator sues here on Louisiana's behalf, Louisiana has done just that. The act clearly states that a complaint to enforce it "shall be filed with the appropriate state *or federal* district court." La. Rev. Stat. § 46:439.2(A)(1) (emphasis added). This is exactly the "clear declaration of the state's intention to submit its fiscal problems to other courts than those of its own creation" that demonstrates a waiver of sovereign immunity. *See Pennhurst*, 465 U.S. at 99 n.9 (quoting *Great N. Life Ins.*, 322 U.S. at 64). Plainly, by giving blanket statutory authorization for individuals to file complaints on its behalf in federal court, Louisiana has waived its sovereign immunity as to discovery in those actions. *Cf. First Nat'l Bank v. Genina Marine Servs., Inc.*, 136 F.3d 391, 394 (5th Cir. 1998) (recognizing that sovereign

8

immunity can be waived "by specific statutory consent");[5] *see also Dimitric v. Tex. Workforce Comm'n*, No. G-07-0247, 2008 WL 687463, at *9 (S.D. Tex. Mar. 11, 2008) (holding that it was "inescapable" that a state waives sovereign immunity when it merely "consent[s] to" removing a case to federal court, even if it purports to maintain immunity while doing so).

Moreover, while LDH is formally a nonparty here, as the plaintiff in a qui tam suit it is not a stranger to Relator's case the same way other non-parties are in traditional actions. Interpreting language in the federal False Claims Act that is analogous to MAPIL, the Fifth Circuit has held that "the United States is a real party in interest even if it does not control the False Claims Act suit." *Searcy v. Philips Elecs. N. Am. Corp.*, 117 F.3d 154, 156 (5th Cir. 1997). This is so because the government "retains control over several aspects of the litigation." *See id.* Applying *Searcy*, courts have recognized that the real party in interest in a qui tam suit—even if it does not intervene—should be treated similarly to a party for discovery purposes. *See U.S. ex rel. Stewart v. La. Clinic*, 2002 WL 31819130, at *7 (E.D. La. Dec. 12, 2002) (permitting government to obtain discovery regarding confidential health documents that otherwise would not have been subject to distribution to nonparties). Indeed, MAPIL itself directs that the same is true as to Louisiana. *See* La. Rev. Stat. § 46:439.2(E) (state has the right to be served with all discovery in a MAPIL case, without reference to whether or not it has intervened, or what court it is in).

If there were any remaining doubt, LDH's conduct in responding to the document subpoenas previously issued in this matter demonstrates its own understanding that it is properly subject to process in this case. In its numerous subpoena responses, and in the state attorney general's response to the since-withdrawn subpoena, no Louisiana entity has ever suggested that

---

[5] Federal sovereign immunity cases such as *First National* can be instructive in resolving issues of state sovereign immunity. *Cf. Russell v. Jones*, 49 F.4th 507, 516–19 (5th Cir. 2022) (reviewing federal sovereign immunity case law in deciding a question of state sovereign immunity).

sovereign immunity has any role to play here. Indeed, in those responses LDH repeatedly committed itself to adhere to the Federal Rules—the exact opposite of what it would do if it were immune to their operation in the first place. As the Supreme Court has held, waiver of sovereign immunity "in the litigation context rests upon the [Eleventh] Amendment's presumed recognition of the judicial need to avoid inconsistency, anomaly and unfairness, and not upon a State's actual preference or desire, which might, after all, favor selective use of 'immunity' to achieve litigation advantages." *Lapides v. Bd. of Regents*, 535 U.S. 613, 620 (2002). Thus, even if (contrary to the plain text of MAPIL) Louisiana's involvement in this federal suit were "involuntary," it has since waived any claim to immunity by "voluntarily invok[ing]" the protections of the Federal Rules over many months' worth of subpoena responses. *See id.* (finding waiver where state defendant removed a case to federal court); *see also Dimitric*, 2008 WL 687463, at *9 (noting that the Fifth Circuit "broadly interpret[s] *Lapides* to extend the waiver of immunity," and thus finding it "inescapable" that waiver occurred as to entire action where state purported to only waive as to some claims).

**IV.    The Scope Of The Subpoenas Is Proper.**

"Prohibiting a deposition *ex ante* is an abnormal remedy." *League of United Latin Am. Citizens v. Abbott*, No. 21-CV-00259, 2022 WL 3656395, at *2 (W.D. Tex. Aug. 23, 2022) (citing *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979)) (denying motion to quash subpoena for deposition of non-party government attorney). A party's right to "seek all relevant and non-privileged information through discovery that is proportional to the needs of the case" encompasses "wide bandwidth" to depose non-parties. *Id.* (citing *Hickman v. Taylor*, 329 U.S. 495, 507–08 (1947); Fed. R. Civ. P. 26(b)(1), 45(d)(3)(A)).

While Movants identify potential areas of disagreement regarding the precise content of permissible questioning, these come nowhere close to stating grounds for quashing a subpoena, or

10

an *ex ante* protective order. As an initial matter, LDH does not even make an argument that the subpoena to it should be quashed outright on this basis. *See* Mot at 18 ("*Many of the topics* in [Defendants'] subpoena to LDH fail to meet the minimal burden of relevancy." (emphasis added)). LDH then waters down its argument further by claiming that the facts "do not appear to be . . . *disputable* in a way relevant to this litigation." Mot. at 19 (emphasis added). But that is not the standard. That facts may be undisputed (an assertion LDH fails to support with any specificity) has nothing to do with whether or not they are relevant. The scope of the dispute is not what makes a fact relevant—rather, that fact's role in a party's potential case is what determines relevancy.

Movants fare no better in arguing for the quashing of the subpoenas to Mr. Russo and Ms. Sullivan. Even where the person subpoenaed is an attorney with substantial privilege issues at play, quashing a subpoena is not ordinarily the appropriate remedy. Only some of an attorney's communications are privileged, and, crucially, *only* communications are privileged—not underlying facts. *See League of United Latin Am. Citizens*, 2022 WL 3656395, at *3 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1985); *Equal Emp. Opportunity Comm'n*, 876 F.3d 690, 695 (5th Cir. 2017); *In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998)). Tellingly, Movants do not invoke privilege per se as a reason to quash or even modify the subpoenas.

Instead, Movants rely on a line of cases that relates to "the practice of taking the deposition of a *party's* attorney." *See Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999) (citing *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)) (emphasis added). As Movants' brief reiterates numerous times, LDH is not a party to this action. Deposing someone who happens to be an attorney, even for an entity with some involvement in the litigation, simply does not present the same concerns as deposing opposing counsel. *Cf. Shelton*, 805 F.3d at 1327 ("Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the

standards of the profession, but it also adds to the already burdensome time and costs of litigation. . . . Counsel should be free to devote his or her time and efforts to preparing the client's case[.]"). Movants provide no authority to suggest that this line of cases is properly applied to an attorney for a non-party who is a fact witness to crucial occurrences underlying the case. Lacking any other argument for quashing or modifying the subpoenas to Mr. Russo and Ms. Sullivan, Movants are not entitled to any relief as to them. *See Equal Emp. Opportunity Comm'n*, 876 F.3d at 698; *MetroPCS*, 327 F.R.D. at 609 (citing *Wiwa*, 392 F.3d at 818) (holding that movants bear the burden of proof under Rules 45 and 26).

Even if Movants could successfully make the argument that *Theriot* and *Shelton* apply to attorneys for a non-party—an argument they do not even attempt—it would still not justify quashing or modifying the subpoenas to Mr. Russo and Ms. Sullivan. First, there is no other means to obtain the relevant information that Defendants seek. They are both fact witnesses to key events underlying LDH's termination of the Affiliate Defendants from Medicaid, and as such have observations that cannot be replicated by evidence obtained elsewhere. For example, Ms. Sullivan is the signatory of Louisiana's (patently non-privileged) response to the Centers for Medicare and Medicaid Services ("CMS"), and is the only person who can testify regarding its meaning. Likewise, Mr. Russo participated in multiple non-privileged telephone calls with CMS and in communications relating to rescinding the termination. Questions relating to these non-privileged interactions with other entities are not ones that Movants could properly decline to answer on the basis of privilege. In a case entirely based on Affiliate Defendants' conduct following initiation of termination proceedings, it is hard to imagine information that could be more "crucial to the preparation of the case." *See Securs Tech., Inc. v. Global Tel*Line Corp.*, 331 F. Supp. 3d 633, 637 (N.D. Tex. 2017). Defendants do not seek to depose these individuals to learn about their

12

mental processes as attorneys, but rather to learn about their observation of, and participation in, a series of events that is the very genesis of this litigation. At bottom, as with LDH, Movants' arguments regarding the Russo and Sullivan subpoenas go to the specifics of what questions might be asked of them—issues that could have been worked out between the parties if Movants' counsel had raised any objection earlier than the afternoon on which their motion was due.

## CONCLUSION

The Defendants' subpoenas to the Movants are valid. The Motion should be denied.

Dated: December 2, 2022                                          Respectfully Submitted,

**ARNOLD & PORTER KAYE SCHOLER LLP**

*/s/ Tirzah. S. Lollar*
Craig D. Margolis
Craig.Margolis@arnoldporter.com
Tirzah S. Lollar
Tirzah.Lollar@arnoldporter.com
Christian Sheehan
Christian.Sheehan@arnoldporter.com
Emily Reeder-Ricchetti
Emily.Reeder-Ricchetti@arnoldporter.com
Megan Pieper
Megan.Pieper@arnoldporter.com
Alyssa Gerstner
Alyssa.Gerstner@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Tel: +1 202.942.5000
Fax: +1 202.942.5999

Christopher M. Odell
Texas State Bar No. 24037205
Christopher.Odell@arnoldporter.com
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Tel: +1 713.576.2400
Fax: +1 713.576.2499

        Paula Ramer
Paula.Ramer@arnoldporter.com
250 West 55th Street
New York, New York 10019-9710
Tel: +1 212.836.8474

Ryan Patrick Brown
Texas State Bar No. 24073967
brown@blackburnbrownlaw.com
1222 S. Filmore
Amarillo, TX 79101
Tel: (806) 371-8333

*Attorneys for Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood of South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc.*

**O'MELVENY & MYERS LLP**

*/s/ Danny S. Ashby*
DANNY S. ASHBY
Texas Bar No. 01370960
dashby@omm.com
JUSTIN R. CHAPA
Texas Bar No. 24074019
jchapa@omm.com
MEGAN R. WHISLER
Texas Bar No. 24079565
mwhisler@omm.com
2501 N. Harwood Street, Suite 1700
Dallas, Texas 75201
T: (972) 360-1900
F: (972) 360-1901

LEAH GODESKY (*pro hac vice*)
lgodesky@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
T: (310) 553-6700
F: (310) 246-6779

**RYAN BROWN ATTORNEY AT LAW**
RYAN PATRICK BROWN
Texas Bar No. 24073967
ryan@ryanbrownattorneyatlaw.com
1222 S. Fillmore St.
Amarillo, Texas 79101
T: (806) 372-5711
F: (806) 350-7716

*Attorneys for Defendant Planned Parenthood Federation of America, Inc.*

**CERTIFICATE OF SERVICE**

    I hereby certify that on December 2, 2022, the foregoing document was electronically filed and served upon all parties and counsel of record via the Court's CM/ECF system.

*/s/ Tirzah S. Lollar*
Tirzah S. Lollar
