UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ALEX DOE, Relator, *et al.*, <br><br>    Plaintiffs <br><br> v. <br><br> PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., *et al.*, <br><br>    Defendants. | ) <br> ) <br> ) Civil Action No. 2:21-22 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**CONSOLIDATED REPLY IN SUPPORT OF NON-PARTY LOUISIANA DEPARTMENT OF HEALTH ET. AL.'S MOTIONS A PROTECTIVE ORDER AND TO QUASH**

This case is about Planned Parenthood's refusal to follow the rules in its dealings with the Government. Despite repeated warnings, Planned Parenthood now refuses to follow the rules governing Rule 45 subpoenas, too. Of course, litigants "must turn square corners when they deal with the Government." *Federal Crop. Ins. Corp. v. Merrill*, 332 U.S. 380 (1947). And it's not LADOJ's job to instruct Planned Parenthood on the basics of non-party discovery.

Planned Parenthood does not dispute that it consciously chose to delay discovery such that it had no time to correct its errors in service before the discovery deadline. Accordingly, this Court will not abuse its discretion by quashing Planned Parenthood's subpoenas.

Regardless, Planned Parenthood's subpoenas are subject to sovereign immunity, and Planned Parenthood fails to meet its burden to demonstrate waiver. Even were that not true, the limited proffer of relevance for the testimony Planned Parenthood seeks from LDH attorneys Russo and Sullivan can't support the burden of deposing them. Fed. R. Civ. P. 26(b)(2)(C). And Planned Parenthood doesn't dispute that much of the testimony sought from LDH itself is available

1

from the record in prior litigation, such that numerous topics should be quashed. *Id.*

## ARGUMENT

I. **PLANNED PARENTHOOD IMPROPERLY SERVED LDH WITH SHORT-NOTICE DEPOSITION SUBPOENAS AFTER THE DISCOVERY DEADLINE.**

**A. Planned Parenthood did not serve LDH with deposition subpoenas until Dec. 1.**

Planned Parenthood doesn't dispute the Louisiana Department of Justice ("LADOJ") rejected one subpoena as invalidly served, then repeatedly warned Planned Parenthood's counsel that Louisiana would only respond to facially valid subpoenas. Dkt. 318 at 8 (citing Appx. 51, 53). Planned Parenthood's primary argument is to blame LADOJ for doing just what it said by declining to respond to yet more facially invalid subpoenas. Dkt. 325 at 3. Of course, it has long been the rule that litigants "must turn square corners when they deal with the Government." *Federal Crop. Ins. Corp. v. Merrill*, 332 U.S. 380 (quoting *Rock Island, Ark. & La. R.R. v. United States*, 254 U.S. 141, 143 (1920)). It's simply not LADOJ's or LDH's job to instruct Planned Parenthood on the basics of non-party discovery.[1]

Planned Parenthood concedes its first set of subpoenas was never validly served. Dkt. 325 at 6. Indeed, it characterizes that fundamental failure as an "administrative oversight" that it corrected with a second set of subpoenas. *Id.* at 4-5. But under Fifth Circuit law, valid service "requires simultaneous tendering of witness fees and the reasonably estimated mileage" with the subpoena. *In re Dennis*, 330 F.3d 696, 704-05 (5th Cir. 2003). And the authority underlying *In re*

---

[1] This Court's opinion in *Traut v. Quantum Servicing, LLC,* 2018 WL 1035134 (N.D. Tex. Feb. 23, 2018), is instructive. In that case, Defendant Rushmore issued a subpoena to non-party RCS. *Id.* at *3. RCS emailed the subpoena to RCS's counsel, but it failed serve the subpoena until the day of the deposition. *Id.* at *3. RCS's counsel alerted Rushmore to the lack of service, and RCS did not appear. *Id.* at *4. Discovery closed the next day. *Id.* at *3. Rather than move for an extension of discovery so that it could issue a new subpoena, Rushmore moved to enforce, and it faulted RCS for not objecting sooner. *Id.* at *9. Magistrate Horan explained that RCS was not subject to the subpoena's command until it was formally served. *Id.* He accordingly denied the motion to enforce. *Id.*

2

*Dennis* holds that failure to tender witness fees and mileage with a subpoena cannot be corrected later. *CF&I Steel Corp. v. Mitsui & Co. (USA, Inc.)*, 713 F.2d 494, 495-96 (9th Cir. 1983).

Even under Planned Parenthood's view, the best that can be said is that it consciously chose to delay seeking discovery from witnesses that appeared on the face of the Relator's complaint, served untimely subpoenas on those witnesses after the November 30 deadline for completion of discovery, and those subpoenas accordingly call for depositions even further after the deadline. Such subpoenas are invalid and unenforceable. *See, e.g.*, *McMillan v. J.P. Morgan Chase Bank, N.A.*, 2017 WL 373447 (M.D. La. Jan. 25, 2017) (collecting cases and quashing subpoenas requiring compliance after close of discovery); *Jonas v. Roberge*, 2015 WL 12734169 (W.D. Tex. Mar. 11, 2015) (granting protective order and quashing third party subpoena served after discovery deadline).

### B. Planned Parenthood did not even try depose LDH before the Nov. 30 deadline, such that granting LDH's motion for a protective order and to quash cannot be an abuse of discretion.

Planned Parenthood thus argues that discovery has been extended past November 30, notwithstanding the plain text of this Court's Amended Scheduling Order and the Court's previous refusal to grant Planned Parenthood that same relief. Dkt. 325 at 7-8. In support, Planned Parenthood points to a deposition schedule filed with the Court. But Planned Parenthood itself notes the Court's statement that a deposition on December 10 would not be "during the discovery period." Dkt. 325 at 7 (quoting Dkt. 293 at 2). And in its Notice of Joinder, the Relator made clear that there is agreement to extend discovery beyond November 30:

> **Nor is there any agreement to permit discovery beyond the discovery period.** The Second Amended Scheduling Order does state that the parties may agree to continue the discovery deadline provided that it does not affect any other deadlines in the Order. Dkt. 192 at 5. But the Scheduling Order also clearly requires notice to the Court if there is such an agreement. Dkt. 192 at 5. No such notice has been given because there is no such agreement. Every deposition noticed by Relator or

3

> [Texas] in this case was originally noticed for a date during the discovery period, and every subpoena served by Relator or [Texas] was served within the discovery period. The only reason any depositions are taking place after the discovery deadline is because Defendants' counsel represented that those witnesses were unavailable during the discovery period. Accommodation of each witness's schedule was on a case-by-case basis and not pursuant to a broader agreement. Indeed, in Relator's opposition to Defendant PPGC's motion to quash the deposition notice of Melaney Linton, **Relator repeatedly emphasized the importance of noticing depositions within the discovery period, noted these facts, and reiterated that there was no agreement to extend the discovery period**.

Dkt. 328 at 1-2 (citing Dkt. 286 at 1 at n.1, 2, 9 at n.7).

"Rule 16(b) … authorizes [a] district court to control and expedite pretrial discovery through a scheduling order." *Turnage v. Gen. Elec. Co.*, 953 F.2d 206, 208 (5th Cir. 1992) (quoting *Gesierman v. MacDonald*, 983 F.2d 787, 790 (5th Cir. 1990)). "Consistent with the authority vested in [a] trial court by [R]ule 16, [the Fifth Circuit] gives [a] trial court broad discretion to preserve the integrity and purpose of the pretrial [scheduling] order" and reviews discovery rulings only for abuse of that discretion. *Id.*

Where, as here, a litigant delays seeking discovery, a trial court does not abuse its discretion by enforcing a discovery deadline, no matter how helpful the additional discovery may be for the litigant's case. *See id.* Thus, in *Grey v. Dallas ISD*, 265 F. App'x 342 (5th Cir. 2008), the Fifth Circuit found no abuse of discretion where a district court granted motions for protective orders and denied a motion to compel depositions noticed only days before the discovery deadline. *Id.* at 344, 348. The Fifth Circuit reached the same result in *Spencer v. FEI, Inc.*, 725 F. App'x 263, 266 (5th Cir. 2018) ("Given the imminence of trial, the impending discovery deadline, and Spencer's failure to make an earlier request for the deposition and production of documents, the district court did not abuse its discretion in denying Spencer's motion to compel."). Planned Parenthood gives no reason for this Court to do otherwise.

### C. Planned Parenthood identifies no prejudice and does not even hint at good cause to extend discovery.

Planned Parenthood does not dispute that it was long-aware that LDH and Ms. Sullivan were potential witnesses. Dkt. 318 at 8. Indeed, both are identifiable from the Relator's complaint. Planned Parenthood does not dispute it consciously chose to delay seeking discovery from LDH and Ms. Sullivan for tactical reasons. *See id.* at 13. That silence is deafening. Recognizing limits to its chutzpah, Planned Parenthood accordingly does not dispute it cannot show good cause as Rule 16(b)(4) requires for an extension of discovery. *See id.* at 13-15.

### D. Planned Parenthood's second subpoenas do not provide adequate notice.

Seeking to circumvent the short-notice provided by its December 1 subpoenas seeking depositions the following week, Planned Parenthood urges that a "'technical violation' or Rule 45 does not vitiate the recipient's obligations under" a subpoena. Dkt. 327 at 1. That is not the law of the Fifth Circuit, *In re Dennis*, 330 F.3d at 704, or even the law of the circuit in which Planned Parenthood points to an aberrant district court opinion, *In re Byrd, Inc.*, 927 F.2d 1135, 1137 (10th Cir. 1991) (explaining that notwithstanding some voluntary compliance, the nonparty "had no duty to appear at the deposition or to produce documents" absent a valid subpoena, and the issuing party could not reasonably believe otherwise); *Alexander v. Jesuits of Mo.*, 175 F.R.D. 556, 559 (D. Kan. 1997) (explaining that where no witness fee was tendered, "there was no duty on the witness to appear at the scheduled deposition," and "[t]he witness could have simply failed to appear."). Not surprisingly, timeliness and adequacy of notice are generally evaluated by the time of the jurisdictional act, *i.e.*, valid service of a subpoena, and courts do not bail out litigants from the consequences of their own delays. *See United States v. 43.412 Acres of Land*, 2021 WL 3732756 (S.D. Tex. Aug. 24, 2021).

## II. PLANNED PARENTHOOD CANNOT MEET ITS BURDEN OF DEMONSTRATING LOUISIANA WAIVED ITS SOVEREIGN IMMUNITY.

Planned Parenthood does not dispute that LDH and its in-house attorneys are subject to Louisiana's sovereign immunity, or that their sovereign immunity applies to Rule 45 subpoenas. *See* Dkt. 318 at 15-16 (citing *Russell v. Jones*, 49 F.4th 507 (5th Cir. 2022)). It instead urges that Louisiana waived its sovereign immunity. Dkt. 325 at 8-10. Planned Parenthood therefore bears the burden of demonstrating an unequivocal waiver by Louisiana. *See St. Tammany Parish ex rel. Davis v. FEMA*, 556 F.3d 307, 315 (5th Cir. 2009). Planned Parenthood fails to do so.

The "test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *Sossamon v. Texas*, 563 U.S. 277, 284 (2011) (quoting *College Sav. Bank v. Fla. Prepaid*, 527 U.S. 666, 675 (1999)). "A State's consent to suit must be 'unequivocally expressed' in the text of the relevant statute." *Id.* (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984)). "Waiver may not be implied." *Sossamon*, 563 U.S. at 284 (quoting *College Savings Bank*, 527 U.S. at 680). Moreover, any waiver "will be strictly construed, in terms of its scope, in favor of the sovereign." *Id.* at 285.

*First*, Planned Parenthood argues that the provision in the Louisiana MAPIL that a complaint "shall be filed with the appropriate state or federal district court" waives Louisiana's sovereign immunity. Dkt. 325 at 8 (quoting La. R.S. 46:439.2). However, the Fifth Circuit has "consistently held that a statute providing for district court jurisdiction over certain kinds of cases or controversies does not by itself waive sovereign immunity." *Delta Comm. Fisheries Ass'n v. Gulf of Mex. Fishery Mgmt. Council*, 364 F.3d 269, 274 (5th Cir. 2004).[2]

*Second*, and relatedly, Planned Parenthood argues that a qui tam statute inherently acts as

---

[2] Tellingly, Planned Parenthood points to dicta in *Pennhurst*, 465 U.S. at 99 & n.9 and *Great N. Life Ins. Co. v. Reed*, 322 U.S. 57, 64 (1944). Neither found a waiver of sovereign immunity for suit against a State in federal court.

a waiver of sovereign immunity. Dkt. 325 at 8. But federal courts have repeatedly rejected contentions that the federal False Claims Act waives the federal government's sovereign immunity. *See, e.g.*, *Shaw v. United States*, 213 F.3d 545, 548 (10th Cir. 2000); *Berge v. Regents of Univ. of Ala. Birmingham*, 203 F.3d 824, 2000 WL 123949 (4th Cir. Feb. 2, 2000) (table decision); *Galvan v. Fed. Prison Indus.*, 199 F.3d 461, 467-68 (D.C. Cir. 1999); *see also Cochise Consultancy, Inc. v. United States*, 139 S.Ct. 1507, 1514 (2019) (holding that the FCA "does not make the relator anything other than a private person"). Planned Parenthood provides no reason why a different result would follow under MAPIL.

*Third*, Planned Parenthood argues that "LDH's conduct in responding to the document subpoenas … demonstrates its own understanding that it is properly subject to process in this case." Dkt. 325 at 9. But LDH's voluntary compliance with a document subpoena — which has significant overlap with LDH's obligations under Louisiana's public record law — says little about whether a federal court can force LDH to comply with a separate deposition subpoena. *See In re Byrd*, 927 F.2d at 1137. Regardless, sovereign immunity can be raised at any time, even for the first time in the Supreme Court. *Edelman v. Jordan*, 415 U.S. 651, 658 (1974); *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 467 (1945).

### III. THE SUBPOENAS TO LDH SHOULD BE QUASHED OR NARROWED.

#### A. The subpoenas to LDH's in-house attorneys should be quashed in toto.

Planned Parenthood doesn't dispute that the Fifth Circuit disfavors depositions of attorneys. *See* Dkt. 318 at 16. Instead, after arguing that Louisiana's sovereign immunity should be waived because LDH is a real party in interest and controls aspects of the litigation, Dkt. 325 at 9, Planned Parenthood inconsistently urges that LDH is not a party, and that the disfavor of attorney depositions is limited to attorneys for parties, Dkt. 325 at 11. Setting aside its inconsistent

positions, Planned Parenthood cites no authority for that claimed limitation.[3]

Indeed, Judge Kinkeade suggested a broad rule in *Securus Technologies, Inc. v. Global Tel\*Link Corp.*, 331 F. Supp. 3d 633 (N.D. Tex. 2017). In that case, defendant GTL argued the widely-applied test in *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), for evaluating attorney depositions was not applicable because the subpoenaed attorneys "are not opposing counsel in this matter." *Id.* at 637. Judge Kinkeade nevertheless found the *Shelton* test instructive. *Id.* He explained that the subpoenaed attorneys represented the plaintiff in other matters on the same subject matter, such that "not applying the considerations of the *Shelton* test could result in the same problems raised by the court in *Shelton*." *Id.* at 638.

**a.** Ms. Sullivan was counsel for LDH in connection with its subpoena response in this case, Dkt. 319 at Appx 200, 205, 312, and **both Ms. Sullivan and Mr. Russo participated in communications with Planned Parenthood regarding this case**. St. John Third Decl. ¶ 1. Planned Parenthood makes clear that its discussions with Mr. Russo regarding "rescinding the termination" are the subject on which Planned Parenthood seeks testimony. Dkt. 325 at 12. Those discussions resulted in a written agreement; the agreement specifically recites that it "does not resolve and shall have no effect on any and all claims … which have or may be brought … by … any relator;" and it further recites that the agreement "does not resolve and shall have no effect on *U.S. ex rel. Doe et al v. Planned Parenthood Federation of America, et al.,* United States District Court for the Northern District of Texas docket number 2:21-cv-22," *i.e.*, this litigation. St. John Third Decl. ¶¶ 2-3.[4]

---

[3] Courts view *Shelton* as reversing the ordinary burden for a protective order when the deposition of an attorney is sought. Fifth Circuit law appears to be in accord. *See Nguyen*, 197 F.3d at 209 ("[O]ne would suspect that a request to depose opposing counsel generally would provide a district court with good cause to issue a protective order.")

[4] Further undermining the appropriateness of discovery, that agreement is "subject to Fed. R. Evid. 408," such that the agreement and the related negotiations are inadmissible to prove or

Regardless of whether the disfavor of attorney depositions and the *Shelton* test applies, Planned Parenthood's in-house attorney Carrie Flaxman was party to the discussions on which Planned Parenthood now seeks to depose Mr. Russo; much of the negotiation took place via email; and Planned Parenthood offers no explanation why the information it seeks cannot be obtained with more convenience and less burden from its own in-house counsel. *See* Fed. R. Civ. P. 26(b)(2)(C) (requiring court to issue protective order when "the discovery … can be obtained from source other source that is more convenient, less burdensome, or less expensive").

**b.** More broadly, Planned Parenthood doesn't dispute that attorneys Sullivan and Russo served as counsel for LDH in the related Louisiana action, that they were "intimately involved in developing the trial strategy for the Louisiana action," or that their "knowledge of events related to PPGC's status as a Medicaid provider generally derives from … provision of legal advice to LDH and … development of information to further LDH's litigation positions," such that any testimony "would largely consist of declining to answer questions on the basis of attorney-client privilege, the work product doctrine, and/or deliberative process." Dkt. 319 at Appx 148-149, 369-370. Planned Parenthood merely generalizes "only communications are privileged—not underlying facts." Dkt. 325 at 11. Planned Parenthood overstates its point: an attorney's knowledge of facts almost necessarily arises from his communications with his client, and the selection of which facts he developed implicates his litigation strategy. That's why attorney depositions are so disfavored, and why courts require other avenues of factual development to be exhausted before subjecting an attorney to the extreme burden of preparing for and testifying about his representation of a client.

**c.** With respect to Ms. Sullivan, the only information Planned Parenthood identifies as

---

disprove the validity of Relator's claims against Planned Parenthood. St. John Third Decl. ¶ 4.

being sought from Ms. Sullivan is her view of the "meaning" of a letter she signed on behalf of LDH. Dkt. 325 at 12. While the fact of Ms. Sullivan's words may be subject to inquiry, any inquiry into her understanding or opinions regarding those words is not. *Nguyen v. Excel Corp.*, 197 F.3d 200, 210 (5th Cir. 1999). Planned Parenthood notably does not suggest it sought to authenticate that letter via other discovery devices, which itself justifies a protective order quashing the deposition outright. *See* Fed. R. Civ. P. 26(b)(2)(C)(i), (ii). Alternatively, given Ms. Sullivan's status as an attorney to LDH and Planned Parenthood's limited proffer of relevance, the Court should limit any deposition of Ms. Sullivan to authenticating the letter in question, and accordingly either limit the deposition to written questions or to one hour of testimony.

### B. Certain topics in the subpoena to LDH should be quashed in toto.

Planned Parenthood doesn't dispute that the underlying facts and the general reasons for the terminations of Planned Parenthood have been litigated *ad nauseum*, such that—to the extent Planned Parenthood is permitted to re-litigate those facts act all—Planned Parenthood has an adequate record from its prior litigations. Dkt. 318 at 19. Planned Parenthood merely asserts *ipse dixit* that the underlying facts are relevant. Dkt. 325 at 11. But bare relevance says nothing about whether Planned Parenthood should be permitted to burden non-party LDH with a 31-topic corporate deposition in view of the undisputed availability of "voluminous information" from those prior litigations. Dkt. 318 at 19. Topics 4-12, 15-16, 17, 27, and 28 should therefore be quashed pursuant to Fed. R. Civ. P. 26(b)(2)(C)(i).

### CONCLUSION

For the foregoing reasons, the Court should grant a protective order and quash Planned Parenthood's subpoenas to LDH, LDH executive counsel Stephen Russo, and LDH deputy general counsel Kimberly Sullivan.

Dated: December 5, 2022                    Respectfully submitted:

/s/ Joseph S. St. John
JOSEPH S. ST. JOHN (LSB 36682)
 *Deputy Solicitor General*
LOUISIANA DEPT. OF JUSTICE
909 Poydras Street, Suite 1850
New Orleans, LA 70112
stjohnj@ag.louisiana.gov
Tel: 225-485-2458

*Counsel for Non-Parties Louisiana Department of Health*, Stephen Russo *in his official capacity, and Kimberly Sullivan in her official capacity*

## **CERTIFICATE OF SERVICE**

I certify that on December 5, 2022, I am causing the foregoing document to be filed via the Court's ECF system, which will serve all counsel of record.

/s/ Joseph Scott St. John