IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION



| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *et al.*, | § | |
| Plaintiffs, | § § § | |
| v. | § § | 2:21-CV-022-Z |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, *et al.*, | § § § § | |
| Defendants. | § | |

## ORDER

Before the Court is Affiliate Defendants' Motion for Protective Order ("Motion") (ECF No. 252), filed on November 2, 2022. Having considered the Motion, briefing, and relevant law, the Court **GRANTS** the Motion **IN PART**.

### BACKGROUND

On July 25, 2022, the Court entered the Protective Order governing this case. *See* ECF No. 133. After Relator made blanket challenges to PPFA's confidentiality designations, the Court issued an order on October 11 that sought to further clarify the Protective Order. ECF No. 214. On October 19, Relator's counsel sent a written objection to Affiliate Defendants' counsel regarding Affiliate Defendants' designations. ECF No. 310 at 3. Relator objected to: (1) all documents marked "Confidential" that do not contain "protected health information"; and (2) all documents marked "Attorney Eyes Only" that do not contain "Personal Identification Information" as defined by the Protective Order. *Id.* On October 24, Affiliate Defendants stated they would redesignate their previous productions considering the October 11 Order. *Id.* at 4. Affiliate Defendants produced the redesignation overlay on November 1 and filed the instant Motion on November 2.

*Id.* Affiliate Defendants ask the Court to enter a protective order to preserve their confidentiality designations. ECF No. 253 at 3.

### LEGAL STANDARD

"Because the [Protective] Order was part of a court-approved agreement, it must be construed according to general principles of contract law." *City of Hartford v. Chase*, 942 F.2d 130, 134 (2d Cir. 1991) (citing *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 238 (1975)). "An agreed protective order may be viewed as a contract, and once parties enter an agreed protective order they are bound to its terms, absent good cause to modify or vacate the protective order." *Orthoflex, Inc. v. ThermoTek, Inc.*, No. 3:10-CV-2618-D, 2013 WL 3095106, at *3 (N.D. Tex. June 20, 2013) (quoting *Paine v. City of Chicago*, No. 06C3173, 2006 WL 3065515, at *2 (N.D. Ill. Oct. 26, 2006)). "Analysis begins with the plain language of the Protective Order[], and the textual interpretation of a court order is ultimately a legal question." *Moore v. Ford Motor Co.*, 755 F.3d 802, 806 (5th Cir. 2014) (internal marks omitted).

Paragraph 2 of the Protective Order governs what information or documents may be designated "Confidential Information" or "Confidential Attorney Eyes Only" ("AEO"). "Confidential Information" means:

> [T]he document is comprised of trade secrets or commercial information that is not publicly known and is of technical or commercial advantage to its possessor, in accordance with Federal Rule of Civil Procedure 26(c)(1)(G), or other information required by law or agreement to be kept confidential, including "protected health information" as such term is defined by the Standards for Privacy of Individually Identifiable Health Information, 45 C.F.R. Parts 160 and 164, promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

ECF No. 133 at 2. AEO means:

> [T]he document is comprised of information that the producing party deems especially sensitive, which may include, but is not limited to, confidential research and development, financial, technical, marketing, or any other sensitive trade secret information and Personal Identification Information ("PII"), which includes: (1) social security numbers of Relator, Planned Parenthood staff, or State employees; (2) any financial account numbers of Relator, Planned Parenthood and/or its staff, and the State and/or its employees; (3) birthdates of Relator, Planned Parenthood staff, or State employees; (4) drivers' license numbers of Relator, Planned Parenthood staff, or State employees; (5) home addresses of Relator, Planned Parenthood staff, or State employees; (6) personal email addresses of Relator, Planned Parenthood staff, or State employees; and (7) the names of non-publicly identified Planned Parenthood employees.

*Id.* Paragraph 7 of the Protective Order outlines the procedure for challenging and preserving the above-identified designations and provides that:

> A receiving party may challenge a producing party's designation at any time. Any receiving party disagreeing with a designation may request in writing that the producing party change the designation. The parties shall promptly meet and confer and attempt in good faith to dispose of such dispute in accordance with Local Rule 7.1(a). If the parties are unable to reach an agreement through the meet and confer process, the producing party shall be required to move the court for an order preserving the designated status of the disputed information. Failure to file a motion with the Court within fourteen (14) days of the written objection shall terminate any restrictions and nullify any designation of "Confidential Information" or "Confidential Attorney Eyes Only Information" on the use of such information.

*Id.* at 5. Paragraph 8 of the Protective Order allocates the burden and prohibits abuse of the process or using designations in a prophylactic manner:

> The party that designated the information "Confidential Information" or "Confidential Attorney Eyes Only Information," shall have the burden of demonstrating the propriety of its designation. If the Court should find that a litigant and/or its counsel have unfairly and without reasonable justification abused the process of designated materials or testimony as "Confidential" or has used such designation in a purely prophylactic manner, the Court may hold some or all such designations as having been waived.

*Id.* at 6. Designations are "meant to be a rarity, reserved for only the most sensitive information, that properly worthy of segregation in the midst of the normal free flow of relevant discovery."

*Acuity Brands Lighting, Inc. v. Bickley*, No. 5:13-CV-366-DLB-REW, 2015 WL 12976102, at *4 (E.D. Ky. Sept. 4, 2015). Confidential or AEO designations "must be used sparingly and only when truly necessary because it limits the ability of the receiving party to view the relevant evidence, fully discuss it with counsel, and make intelligent litigation decisions." *Election Sys. & Software, LLC v. RBM Consulting, LLC*, No. 8:11CV438, 2015 WL 1321440, at *5 (D. Neb. Mar. 24, 2015) (internal marks omitted).

For a blanket objection to be justified, the challenging party must demonstrate that the producing party did not act in good faith. *Paradigm All., Inc. v. Celeritas Techs., LLC*, 248 F.R.D. 598, 604–05 (D. Kan. 2008). Courts generally require a designation rate of over 70% to support an inference of bad faith. *See* ECF No. 214 at 5–6 (collecting cases). Otherwise, "the general rule requires a targeted challenge, not a blanket demand to review all documents produced and designated." *Id.* at 4 (internal marks omitted). Courts have interpreted provisions like Paragraph 7, *e.g.* — that parties first attempt to resolve "such" challenges in "good faith" — as requiring a targeted challenge. *Id.* at 5 (internal marks omitted).

**ANALYSIS**

### A. The Protective Order Requires a Targeted Challenge to Affiliate Defendants' Designations

In the October 11 Order, the Court found Relator's blanket challenges to PPFA's designations were justified because PPFA designated 86% of its entire production as Confidential or AEO. *Id.* at 6. Here, Relator and Affiliate Defendants disagree as to the exact percentage of designations. Relator concedes Affiliate Defendants' designations "are not as egregious" as PPFA's. ECF No. 310 at 9. However, Relator claims that out of 321,125 documents, Affiliate Defendants designated 110,496 as AEO and 53,328 as Confidential (51%). *Id.* at 2. On the other hand, Affiliate Defendants aver that "at the time of Relator's objection, only 33% of the documents

Affiliate Defendants have the designations about which Relator complains, and that number has fallen to 24% following the Affiliate Defendants' revision of their designations in light of the Court's October 11 clarifications." ECF No. 253 at 3.

It is thus unclear to the Court precisely what percentage of documents have been designated Confidential or AEO. But even if Relator is correct that the answer is "over half," this falls well short of the threshold this Court and other courts have applied when finding instances of bad faith to justify blanket objections to designations. ECF No. 310 at 4. Accordingly, the Court does not hold Affiliate Defendants' designations have been waived under Paragraph 8 of the Protective Order. Similarly, the Court will not require Affiliate Defendants to review and re-label all their designations as was the case with PPFA in the October 11 Order. *See* ECF No. 214 at 7. The Court was clear that "[t]o the extent PPFA's re-designations are made in good faith, Relator must target specific documents when making objections." *Id.* at 10. The same is true here.

### B. Relator's Examples Show Improper Designations

Although Affiliate Defendants' designations do not justify blanket objections, Relator's response to the Motion does highlight some instances of improper designations. *See* ECF No. 310 at 11; *MasterObjects, Inc. v. Yahoo! Inc.*, No. C 11-02539 JSW LB, 2012 WL 2705018, at *3 (N.D. Cal. July 6, 2012) ("But no production is perfect, and some documents may be designated in error."). For example, Relator cites nearly 1,000 pages of grant agreements, public IRS forms, publicly available newsletters, complaints from other lawsuits, general announcements, blank contracts, and myriad other documents that do not seem to warrant any AEO or Confidential designation. *Id.* at 11–12.

In the October 11 Order, the Court clarified that designations must be used sparingly and only when truly necessary. ECF No. 214 at 8. Thus, "publicly available news articles," "general

announcements, "eight-year-old Affiliate Financial reports," "grant agreements between PPFA and Affiliates," "services provided," and documents containing personal cell phone numbers included in email signature blocks are not worthy of AEO-designation under the Protective Order. *Id.* at 9. Additionally, "the fact that the information is not publicly disclosed does not — without more — justify an AEO or Confidential designation under the Protective Order." *Id.* Rather, the Court held the AEO designation refers to "trade secret information" that is "especially sensitive" — while doubting much of PPFA's production could qualify as "trade secrets." *Id.* Finally, the Court clarified that to the extent parties justify designations because disclosure could cause financial harm, parties "must describe the alleged harm it will suffer from any disclosure with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Id.* at 9–10 (internal marks omitted); *see also Penn, LLC v. Prosper Bus. Dev. Corp.*, No. 2:10-CV-0993, 2012 WL 5948363, at *4 (S.D. Ohio Nov. 28, 2012) ("In the business context, such a showing requires specific demonstrations of fact, supported where possible by affidavits and concrete examples." (internal marks omitted)).

Here, Affiliate Defendants replied by downgrading 35 of the 44 documents identified by Relator. ECF No 339 at 2–3. For the remaining documents, Affiliate Defendants argue 4 should remain AEO because they contain PII. *Id.* at 3. The other 5 "will remain Confidential because they contain information about non-public business relationships that is 'commercial information that is not publicly known' and is of commercial advantage to Affiliate Defendants." *Id.* However, Affiliate Defendants have not made any specific demonstration of fact that they will suffer harm from disclosure.

Affiliate Defendants attempt to make such a showing as to their designations generally. *See* ECF No. 253 at 12. But Affiliate Defendants' showing "relies on general conclusory assertions

about future competitive harm." *Tinman v. Blue Cross & Blue Shield of Mich.*, 176 F. Supp. 2d 743, 745 (E.D. Mich. 2001). For example, Affiliate Defendants argue disclosures of their employees' pay rates could harm their ability to recruit employees. ECF No. 253 at 12. Likewise, Affiliate Defendants contend that disclosure of information related to key business partners could lead to the loss of that business partner or vendor. *Id.* at 12–13. And Affiliate Defendants argue disclosures that "would reveal detailed information about the volume and variety of medical services provided," and information about their projected budgets "could impact the public opinion of Affiliate Defendants" and affect their place in the market. *Id.* at 14.

Affiliate Defendants have not shown "that a clearly defined and very serious injury will result if a protective order is not issued." *Koster v. Chase Manhattan Bank*, 93 F.R.D. 471, 479 (S.D.N.Y. 1982) (internal marks omitted). "Apart from the general concept that disclosure of some types of sensitive information to a competitor may result in harm, [the Motion] contains no particularized argument . . . ." *Brown v. Tellermate Holdings Ltd.*, No. 2:11-CV-1122, 2014 WL 2987051, at *23 (S.D. Ohio July 1, 2014), *adopted as modified*, No. 2:11-CV-1122, 2015 WL 4742686 (S.D. Ohio Aug. 11, 2015); *see also Broadspring, Inc. v. Congoo, LLC*, No. 13-CV-1866 JMF, 2014 WL 4100615, at *21 (S.D.N.Y. Aug. 20, 2014) ("Over and over again, Defendants merely assert, in conclusory fashion, that the designations . . . are proper because the information concerns 'client acquisition strategy,' 'client retention strategy,' 'internal strategy and analysis of competition,' 'client descriptions,' or 'terms of its client agreement.'"). Therefore, the designations are improper under the Protective Order and the October 11 Order.

Affiliate Defendants have also not met their burden for demonstrating the propriety of the AEO designations.[1] *See* ECF No. 311-1 at 0131–143, 0860–865. Affiliate Defendants only argue PII includes "the names of non-publicly identified Planned Parenthood Employees." ECF No. 339 at 9. But Affiliate Defendants do not specify who the non-publicly identified Planned Parenthood employees named in these documents are. Thus, the Court can only guess. And the Court doubts the individuals named in these documents fall within this category. *See, e.g.*, ECF No. 311-1 at 861 (addressing email to "PPST board of directors, senior staff, and subsidiary board members"). Therefore, the Court will not order the designations preserved under this ground.

Of course, the Court understands Affiliate Defendants would rather not disclose the information at issue and may have non-frivolous reasons to support that position. As the Court explained, however, such requests implicate Relator's due process rights. ECF No. 214 at 7. Therefore, a Confidential or AEO designation is a "drastic remedy." *Id.* at 8. In other words, when the Court held such designations must be used sparingly and only when truly necessary — the Court meant what it said. Accordingly, the Court **ORDERS** Affiliate Defendants to promptly review the 9 remaining documents identified by Relator and meet and confer with Relator as to the propriety of the designations. *See* ECF No. 339 at 3. To the extent Relator objects to other designations, Relator must make a targeted challenge to the documents and meet and confer with Affiliate Defendants and attempt in good faith to dispose of such dispute. *See* ECF No. 133 at 5. The Court warns Relator that failure to do so will result in the rejection of those objections.

---

[1] Affiliate Defendants contend "Relator has not identified a *single* document's AEO designation in their 900-page appendix which has impacted their ability to litigate this case." ECF No. 339 at 7. But the Protective Order places the burden on the party making the designation — not the party challenging it. *See* ECF No. 133 at 6.

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Affiliate Defendants' Motion **IN PART**.

**SO ORDERED.**

December 15, 2022

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE