## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

United States of America
*ex rel.* ALEX DOE, Relator,

The State of Texas
*ex rel.* ALEX DOE, Relator,

The State of Louisiana
*ex rel.* ALEX DOE, Relator,
      Plaintiffs,
v.
Planned Parenthood Federation of America, Inc.,
Planned Parenthood Gulf Coast, Inc., Planned
Parenthood of Greater Texas, Inc., Planned
Parenthood South Texas, Inc., Planned Parenthood
Cameron County, Inc., Planned Parenthood San
Antonio, Inc.,
      Defendants.

§§§§§§§§§§§§§§§§§§§§§§§§§§§§

CIVIL ACTION NO.
2:21-CV-00022-Z

Date:     December 16, 2022

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO COMPEL THE STATE OF TEXAS TO REVISE ITS PRIVILEGE LOG
## AND PRODUCE CERTAIN DOCUMENTS

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

LEGAL STANDARD......................................................................................................... 7

ARGUMENT ...................................................................................................................... 8

**I.    The Glaring Deficiencies In Texas's Privilege Log Raise Serious Questions Regarding Its Privilege Log Process** ........................................................................................... 8

   **A.   Mass-Distribution Emails and Emails To and From Third Parties**........................... 8

   **B.   Absence Of Any Redactions Or Partial Family Productions**.................................... 10

   **C.   Vague Descriptions and Missing Information**.......................................................... 11

**II.    Texas's Assertion of Legislative Privilege Is Overbroad**........................................ 13

**III.    Appropriate Remedy** ................................................................................................ 17

CONCLUSION.................................................................................................................. 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acosta v. Target Corp.*,
  281 F.R.D. 314 (N.D. Ill. 2012)................................................................8

*Anaya v. CBS Broad., Inc.*,
  251 F.R.D. 645 (D.N.M. 2007)................................................................8

*United States ex rel. Barko v. Halliburton Co.*,
  74 F. Supp. 3d 183 (D.D.C. 2014)..........................................................8

*E.E.O.C. v. BDO USA, L.L.P.*,
  876 F.3d 690 (5th Cir. 2017) ........................................................6, 8, 9, 11

*Harding v. Cnty. of Dallas*,
  2016 WL 7426127 (N.D. Tex. Dec. 23, 2016) .......................................14

*Jackson Municipal Airport Auth. v. Bryant*,
  2017 WL 6520967 (S.D. Miss. Dec. 19, 2017) .................................15, 16

*Jefferson Community Health Care Ctrs., Inc. v. Jefferson Parish Gov't*,
  849 F.3d 615 (5th Cir. 2017) ......................................................13, 14, 15, 16

*Jolivet v. Compass Group USA, Inc.*,
  340 F.R.D. 7 (N.D. Tex. 2021) .................................................................5

*Kunze v. Scott*,
  No. 20-cv-01276, 2021 WL 4907064 (N.D. Tex. Oct. 21, 2021)............12

*La Unión del Pueblo Entero v. Abbott*,
  No. 21-cv-00844, 2022 WL 1667687 (W.D. Tex. May 25, 2022) ...........14, 16, 17

*Lanelogic, Inc. v. Great Am. Spirit Ins. Co.*,
  2010 WL 1839294 (N.D. Tex. May 6, 2010) .........................................12

*League of United Latin Am. Citizens v. Abbott*,
  No. 21-cv-00259, 2022 WL 3233406 (W.D. Tex. Aug. 10, 2022).........14

*League of United Latin Am. Citizens v. Abbott*,
  2022 WL 2713263 (5th Cir. May 20, 2022) .........................................14

*McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*,
  322 F.R.D. 235 (N.D. Tex. 2016) ..........................................................11

iii

*Motley v. Marathon Oil Co.*,
    71 F.3d 1547 (10th Cir. 1995) ................................................................8

*Muro v. Target Corp.*,
    250 F.R.D. 350 (N.D. Ill. 2007)..............................................................10

*Perez v. Perry*,
    No. SA-11-CV-360, 2014 WL 106927 (W.D. Tex. Jan. 8, 2014).........................16

*Raines v. Jones*,
    No. 16-cv-00208, 2017 WL 3579608, *aff'd*, 2017 WL 2905855 (E.D. Ark.
    2017) ........................................................................................11

*Ret. Sys. v. Walgreen Co.*,
    No. 15 C 3187, 2020 WL 3977944 (N.D. Ill. July 14, 2020) ................................8

*S.E.C. v. Brady*,
    238 F.R.D. 429 (N.D. Tex. 2006) ............................................................7

*Samsung Elecs. Am., Inc. v. Chung*,
    321 F.R.D. 250 (N.D. Tex. 2017) ..........................................................11

*Stoffels v. SBC Commc'ns, Inc.*,
    263 F.R.D. 406 (W.D. Tex. 2009) ............................................................9

*Thomas v. Kellogg Co.*,
    No. C13-5136-RBL, 2016 WL 2939099 (W.D. Wash. May 20, 2016)......................8

*TitleMax of Tex., Inc. v. City of Dallas*,
    No. 21-cv-1040, 2022 WL 326566 (N.D. Tex. Feb. 3, 2022) .........................14, 15

*Tonti Mgmt. Co., Inc. v. Soggy Doggie, LLC*,
    2020 WL 9172077 (E.D. La. June 25, 2020)................................................14

*United States v. Gillock*,
    445 U.S. 360 (1980)............................................................................15

**Statutes**

Tex. Gov't Code § 306.008............................................................................17

**Other Authorities**

Fed. R. Civ. P. 26 ......................................................................................10, 12

Fed. R. Civ. P. 26(b) ......................................................................................7

Fed. R. Civ. P. 26(b)(1)..................................................................................11

Fed. R. Civ. P. 26(b)(5)........................................................................................................4

Fed. R. Civ. P. 26(b)(5)(A)(ii)..........................................................................................11

Fed. R. Civ. P. 37(a)(3)(B) ...............................................................................................7

Fed. R. Civ. P. 26(b)(5)........................................................................................................4

Federal Rules of Evidence Rule 501....................................................................................13

Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc. (together, "Affiliate Defendants"), and Planned Parenthood Federation of America, Inc. (together with Affiliate Defendants, "Defendants"), respectfully move the Court pursuant to Federal Rule of Civil Procedure ("Rule") 37 for an order compelling the State of Texas ("Texas") to produce certain documents withheld as privileged, to submit affidavits explaining the process it used to determine which documents are privileged, and to revise its privilege logs in accordance with the Joint Proposed Order Regarding the Production of Electronically Stored Information and Hard Copy Documents [Dkt. 130], which was entered by the Court [Dkt. 139], and the Court's November 8, 2022 Order [Dkt. 262].

## INTRODUCTION

To date, Texas has produced privilege logs in this case that list more than 37,000 documents. These logs are grossly deficient and do not permit the Defendants to adequately assess Texas's privilege claims. Moreover, the large number of documents listed on the logs that on their face simply cannot be privileged call into question the adequacy of the process that Texas used to determine which documents it would withhold for privilege and how it would categorize those documents on its logs. Additionally, Texas's assertion of the legislative privilege is overbroad and unsupportable. For these reasons and as described in more detail below, the Court should grant the Defendants' motion.

1

## BACKGROUND

### I.   Texas's Privilege Logs

Texas produced its first privilege log on October 7, 2022.  On October 28, 2022, Texas produced a corrected and supplemented version of its first privilege log.  On November 20, 2022, Texas produced its second privilege log.  Together, those logs included 678 entries.

On November 22, 2022, Texas produced its third privilege log, which included 29,325 entries.  And on November 30, 2022, Texas produced its fourth privilege log, which included 7,625 more entries.  In total, Texas has withheld more than 37,000 documents for privilege, despite the fact that not a single one of its custodians is an attorney.  Its logs collectively span well over 4,000 pages.[1]

Each of Texas's privilege logs follows the same format, listing documents that have been withheld and providing the following information:

- No.

- Control Number

- Beg Doc Range

- End Doc Range

- Date Sent

- Doc Type

- From

- To

- CC

---

[1] Exhibit 1 contains the pages of the logs that are cited in this brief.  Defendants are contemporaneously filing a motion for leave to file that exhibit under seal.

2

- BCC

- Email Subject Line

- OAG Priv Claim

- General Subject Matter

It appears that Texas has withheld each and every privileged document in full without producing a single redacted document, and that families were withheld in their entirety. In other words, it appears that, if any portion of any document within a family contained any privileged information, Texas withheld the entire document—and all its family members—regardless of whether the rest of the document or its family members contained non-privileged information.

After receiving Texas's first privilege log, in late October 2022, counsel for the Affiliate Defendants requested a meet and confer with Texas to discuss initial concerns they had with the log that had been produced. Counsel for Texas agreed to provide dates for a meet and confer, but never did so. Shortly thereafter, counsel for the Affiliate Defendants again requested a meet and confer; counsel for Texas agreed to provide dates but again, never did so. The parties did not meet and confer for the first time on Texas's privilege logs until December 7, 2022.

## II. Texas Failed To Comply With The Court's Order That Texas Provide a Document-by-Document Privilege Log

On August 9, the Court entered the parties' Joint Proposed Order Regarding the Production of Electronically Stored Information and Hard Copy Documents. Dkts. 130 and 139. The Order makes clear that privilege logs produced in this case must contain, "for each document, . . . the type of document (*e.g.*, 'email reflecting legal advice . . .') and general subject matter of the document (*e.g.*, '. . . legal advice regarding [topic].'" Dkt. 130 at 14; Dkt 139. In addition, the Court made clear that Texas *could not* produce a "categorical privilege log" and is instead required to produce a "document-by-document privilege log." Dkt. 262.

3

Texas's privilege logs do not comply with these requirements in a number of ways.  First, Texas has identified only two kinds of documents on its logs—"Email" and "Eattach."  However, it fails to identify the type of each attachment, *e.g.*, whether the attachment was a spreadsheet, presentation or other type of document.  Second, although one of the fields on the log is "General Subject Matter," that field is populated with only a handful of generic phrases that fail to convey any meaningful information about the documents, such as "HHSC Legal Internal Communications" (used in more than 26,000 entries), "Related to Legislator's Request" (at least 42 entries), "OAG Medicaid Investigative Privilege" (roughly 15,000 entries), and, inexplicably, "Not Relevant But Privileged" (more than 3,000 times).  These generic phrases do nothing to describe the subject matter of any particular document, in direct contravention of the Court's requirement that Texas describe the documents it is withholding on a document-by-document basis.  Texas has made it nearly impossible for Defendants or the Court to properly assess Texas's privilege claims, contrary to Federal Rule of Civil Procedure 26(b)(5).  This is compounded by the fact that in more than 200 instances, Texas redacts identifying—and facially non-privileged—information, such as senders' and recipients' names, from the log itself, further hampering Defendants' ability to perform the assessment guaranteed under that Rule.

## III.   Deficiencies in Texas's Privilege Logs

Although the sheer volume of the documents listed on the privilege logs makes a meaningful review challenging, there are numerous deficiencies that are immediately apparent on the face of the logs.  Counsel for the Affiliate Defendants raised these issues during meet and confers on December 7 and 14, 2022, and via emails sent on December 14 and 15, 2022, but the parties were unable to reach agreement regarding the concerns raised by counsel for the Affiliate Defendants.

4

*First*, as discussed above, Texas has failed to produce any documents in redacted form or any non-privileged members of a family where part of the family contained privileged information. It defies belief that all 37,000 emails and attachments withheld by Texas are privileged in their entirety. For documents that are only privileged in part, the producing party is entitled to redact only privileged portions of the communications, and must produce the remainder. *See, e.g.*, *Jolivet v. Compass Group USA, Inc.*, 340 F.R.D. 7, 31-32 (N.D. Tex. 2021). When counsel for the Affiliate Defendants raised this issue during the parties' meet and confer on December 14, counsel for Texas said he did not know if Texas had redacted any documents or produced non-privileged documents from partially privileged families. Texas' inability to answer standard questions concerning its handling of allegedly privileged documents suggests an alarming practice of over-designation. In a December 16 email, counsel for Texas stated that Texas had redacted claims information in its expert production and the names of legislators in its privilege logs, but tellingly, did not say that Texas had redacted any documents for privilege, seemingly confirming that it has not done so and instead has chosen to withhold all documents (and families) in their entirety.

*Second*, the logs include a large number of documents that, based on the information in the log, simply cannot be privileged—and certainly not privileged in their entirety. For example, the logs include hundreds of emails sent by legal news websites and outside organizations, such as Law360 (74 entries), the National Health Care Anti-Fraud Association ("NHCAA") (28 entries) and the National Family Planning & Reproductive Health Association ("NFPRHA") (10 entries). *See, e.g.,* Entries 15271, 15299, 2692, 2795. The logs also include more than a hundred entries that reflect Open Records requests sent by outside individuals. *See, e.g.,* Entries 14700, 14701, 14702, 14703. After counsel for the Affiliate Defendants raised these issues during the parties' December 7 meet and confer, Texas produced 119 documents that had previously been withheld,

which consisted entirely of Law360 emails and emails with news clippings sent internally within HHSC.  When counsel for the Affiliate Defendants explained during the parties' December 14 meet and confer that the downgrade production had not resolved this global deficiency, counsel for Texas took the incredible position that emails from Law360—the same emails received by thousands of lawyers around the country on a daily basis—*could be privileged*.

*Third*, the categorical and bare-bones description that Texas uses to identify more than 26,000 of its documents—"HHSC Legal Internal Communications"—includes hundreds, if not thousands, of emails that do not include a single attorney and/or that include individuals from outside parties, which calls into question how Texas can claim in good faith that these emails are both "Legal" *and* "Internal."  *See, e.g.,* Entries 167, 679, 30199, 30259, 30321, 30323, 30325, 30328, 30410.  Relatedly, the log also includes emails sent to distribution lists that appear to contain outside recipients, as well as mass emails that include dozens of recipients with few or no lawyers present on the communication, suggesting it is unlikely that the emails are confidential. *See, e.g.*, Entries 58, 93, 99, 105, 116, 126, 130, 134, 141, 146, 150, 21373, 21375; *cf. E.E.O.C. v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017) (recognizing privilege may only attach to confidential communications).

Taken together, the presence of these documents on Texas's logs indicate that the process Texas used to determine which documents would be withheld as privileged, and then to describe those documents on its logs, was grossly deficient.  Therefore, Defendants respectfully request that the Court order Texas to:  (i) submit affidavits or other evidence sufficient to explain its process for determining which documents Texas withheld as privileged, and then to adequately describe those documents on its logs, and to justify and support its claims of privilege over the categories of materials identified above; and (ii) revise its privilege logs to bring them in compliance with the

Court's Orders, including by reconsidering the applicability of its assertions of privilege, so that Defendants can properly assess Texas's privilege claims.

## IV.   Texas's Legislative Privilege Claim

Finally, Texas has withheld more than 2,000 documents on the basis of a purported "legislative privilege."  As will be discussed in more detail below, the legislative privilege cannot apply in this case for a number of reasons, including that the legislators at issue are *state* legislators and because communications shared with employees of HHSC, which is part of the executive branch, would waive any privilege that might have existed.  Relatedly, Texas has even redacted the *names and email addresses* of legislators who would otherwise appear on the log.  Even if the documents themselves were privileged—which they are not—there is simply no precedent or authority that permits Texas to keep that information from being disclosed to Defendants in this case.

For these reasons, Defendants respectfully request that the Court order the production of all documents Texas has withheld pursuant to the legislative privilege.

## LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b).  When a party fails to produce documents within that broad scope, the requesting party "may move for an order compelling . . . production."  Fed. R. Civ. P. 37(a)(3)(B).  On a motion to compel, once the moving party establishes that the materials requested are within the scope of permissible discovery, the party resisting discovery bears the burden of specifically objecting and showing that a discovery request would impose an undue burden or expense or is otherwise objectionable.  *S.E.C. v. Brady*, 238 F.R.D. 429, 436–37 (N.D. Tex. 2006).

7

## ARGUMENT

I.     **The Glaring Deficiencies In Texas's Privilege Log Raise Serious Questions Regarding Its Privilege Log Process**

A.     **Mass-Distribution Emails and Emails To and From Third Parties**

It is well established that merely including an attorney on an email does not make it privileged.  *See, e.g.*, *BDO USA*, 876 F.3d at 696 ("There is no presumption that a company's communications with counsel are privileged."); *Motley v. Marathon Oil Co.,* 71 F.3d 1547, 1550–1551 (10th Cir. 1995) ("[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege."); *Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.*, No. 15 C 3187, 2020 WL 3977944, at *5 (N.D. Ill. July 14, 2020) ("[A] non-privileged communication containing business advice or information, or containing something other than legal advice, does not suddenly become cloaked with the privilege simply because the sender chose to copy an in-house lawyer on it."); *Thomas v. Kellogg Co.*, No. C13-5136-RBL, 2016 WL 2939099, at *2 (W.D. Wash. May 20, 2016) ("It is certainly not the case that adding an attorney to an email string or a distribution list makes widely disseminated, business communications privileged."); *United States ex rel. Barko v. Halliburton Co.*, 74 F. Supp. 3d 183, 188 (D.D.C. 2014) ("Parties. . .  may not shield otherwise discoverable documents from disclosure by including an attorney on a distribution list."); *Acosta v. Target Corp.*, 281 F.R.D. 314, 321 (N.D. Ill. 2012) ("Thus, the privilege does not apply to an e-mail 'blast' to a group of employees that may include an attorney, but where no request for legal advice is made and the input from the attorney is business-related and not primarily legal in nature); *Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 650 (D.N.M. 2007) ("Including an attorney as a "cc" addressee or on the distribution list of an interoffice e-mail communication sent to several people does not transform the e-mail into a privileged attorney-client communication.").

8

Instead, attorney-client privilege "'only protects disclosure of confidential communications between the client and attorney'" for the purpose of obtaining legal services. *Stoffels v. SBC Commc'ns, Inc.*, 263 F.R.D. 406, 411 (W.D. Tex. 2009) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 395-396 (1981)); *BDO USA*, 876 F.3d at 696 (recognizing that "[i]t is vital to a claim of [attorney-client] privilege that the communication have been made and maintained in confidence") (citing *United States v. Robinson*, 121 F.3d 971, 976 (5th Cir. 1997)).

Texas's privilege logs contain hundreds, if not thousands, of emails sent to or from third-parties and mass distribution emails sent to dozens of recipients with only a few or no lawyers. Texas claims these emails are attorney-client privileged and categorizes them as "HHSC Legal Internal Communications." For example, Texas has claimed attorney-client privilege protects numerous mass-distribution emails sent from Astho, a nonprofit health association, to numerous state health agencies, including Texas, and categorized them as HHSC Legal Internal Communications. *See e.g.* Entries 36484, 36489, 36495, 36585, 36652, 36727. That is, on its face, impossible. Texas has not claimed any Astho sender is a legal representative, a lawyer from Texas was not among the many third party recipients, and trainings sent to numerous state agencies are not privileged or internal legal communications. In yet another example of Texas's facially improper privilege claims, Texas asserted attorney-client privilege over documents between HHSC and CMS that do not have an attorney on the emails and have already been produced in this case. *See* Entries 37433, 37434, 37435, 37436, 37437.

Likewise, Texas has asserted privilege over hundreds of emails to or from the distribution list "HHSC MCO Communications." *See, e.g.*, Entries 58, 93, 99, 105, 116, 126, 130, 131, 150. Other courts have found that the failure to identify all people on distribution lists as a serious defect in a privilege log, as there is no way for a party to assess if the members are within the realm of

9

privilege.  *See Muro v. Target Corp.*, 250 F.R.D. 350, 364 (N.D. Ill. 2007).  In this instance, it is unclear if there are employees of outside managed care organizations in this distribution list, and if there are, these documents cannot be privileged.  Even if there are not employees of managed care organizations in this distribution list, merely having a lawyer in the distribution list is not enough to create privilege.

Texas has similarly claimed privilege over hundreds of documents sent from non-lawyers to dozens of recipients (a mix of people and either listservs or inboxes) which only included one or two lawyers, with the subject line "Media Contact: COVID-19."  *See e.g.*, Entries 4827, 4843, 4847, 4848.  Despite Texas's assertion, there is no way that these documents, seemingly indicating a Covid-19 press release, are attorney-client privileged, core work product, or covered under the Texas Medicaid Investigative Privilege.  These are just some of the examples of facially non-privileged documents that Texas has nevertheless asserted privilege over.  As mentioned, *supra,* Texas also originally asserted privilege on 133 emails containing Law360 articles and other external mass emails.

**B.    Absence Of Any Redactions Or Partial Family Productions**

Not a single one of more than 37,000 documents listed on Texas's privilege log was produced with redactions.  Nor has any one part of a family been partially produced.  During the parties' conversations, Texas has refused to state whether this is the case because it in fact believes that every single one of these documents and families is entirely privileged, or because it simply did not undertake the necessary review to ensure that it was only withholding privileged materials, and not otherwise discoverable materials that happen to coexist in the same document or document family.  Either way, that is insufficient.

Rule 26 requires the production of "*any* nonprivileged matter" that is relevant and proportional—there is no exception for such materials that happen to be adjacent to assertedly privileged materials.  *See* Fed. R. Civ. P. 26(b)(1) (emphasis added).  A party may not withhold more of a document than is properly subject to a privilege claim.  *See Samsung Elecs. Am., Inc. v. Chung*, 321 F.R.D. 250, 299 (N.D. Tex. 2017); *see also, e.g., Raines v. Jones*, No. 16-cv-00208, 2017 WL 3579608, at *2, *aff'd*, 2017 WL 2905855 (E.D. Ark. 2017) (ordering party to redact privileged portions of otherwise-discoverable legal bills on a line-by-line basis).  The rule is simple: parties "cannot properly redact nonprivileged information from any responsive document."  *McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 322 F.R.D. 235, 245 (N.D. Tex. 2016).  It is inconceivable that Texas has adhered to this rule without producing a single redacted document.  The Court should require Texas to produce any nonprivileged portions of any responsive documents.

### C.    Vague Descriptions and Missing Information

A "privilege log's description of each document and its contents must provide sufficient information to permit courts and other parties to 'test the merits of' the privilege claim."  *BDO USA, L.L.P.*, 876 F.3d at 697 (quoting *United States v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982)) (holding that, by allowing a party to submit a deficient log, the trial court "erred [by] inverting the burden" such that it required the non-producing party to prove that the producing party's privilege assertions were improper).  Each entry "must as to each document … set[] forth facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed."  *Id.* (quoting *N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 502 (4th Cir. 2011) (ellipsis and alteration in original)); *see also* Fed. R. Civ. P. 26(b)(5)(A)(ii) (privilege log must "enable other parties to assess the claim").

11

Texas's conclusory and often contradictory privilege log entries fail this basic test.  To begin, the descriptions on Texas's log are facially noncompliant with the ESI Order in this case, which requires certain information "for each document," including the "general subject matter of the document[,] *e.g.*, '. . .legal advice regarding [topic].'"  Dkt. 130-1 at 14 (bracketed word in original).  Descriptions such as "HHSC Legal Internal Communications"—the description for over two-thirds of the entries on the log—lack a topic and are thus noncompliant with the Order, and with the basic principles of privilege law that it embodies.  *See Kunze v. Scott*, No. 20-cv-01276, 2021 WL 4907064, at *3 (N.D. Tex. Oct. 21, 2021) (citing *Meador v. Starr Indem. & Liab. Co.*, 2020 WL 8256370, at *5 (E.D. La. Sept. 1, 2020) (stating that a "conclusory description labeling documents as 'email' or 'legal advice' [] renders a privilege log inadequate"); *Lanelogic, Inc. v. Great Am. Spirit Ins. Co.*, 2010 WL 1839294, at *3 (N.D. Tex. May 6, 2010) (mere assertion that all logged documents "contain or constitute confidential communications made for the purpose of facilitating the rendition of professional legal services to [the party]" is insufficient to "show[] how the attorney-client privilege applies to *each* document withheld").

As to attachments to emails, the situation is even worse—these log entries almost always contain *no* information other than (i) the vague description "Eattach," (ii) the type of privilege claimed, and (iii) a conclusory statement such as "HHSC Legal Internal Communications," with no further information about what type of file it is, its subject matter, or anything else.  *See, e.g.,* Entries 3342 to 3453 (in 111 consecutive lines, only *one* has any further information).  There is simply no way to test a privilege claim based solely on the information that (i) a document is not an email, and (ii) it assertedly constitutes "internal legal communications."  Similarly unhelpful are situations where the entire subject matter description is "HHSC/OAG Communications," which provides no information that could not already be gleaned from the presence of an Office

of the Attorney General employee in the "To" or "From" field.  *See, e.g.,*  Entry 18145.  Simply regurgitating information from other fields does not explain *why* a document is privileged.  That is Texas's burden under Rule 26 and binding Fifth Circuit law.

Not only are Texas's log entries facially insufficient, but they also contradict themselves with notable frequency.  For example, during an initial cursory review of Texas's third and fourth logs, Defendants identified hundreds of documents marked as "HHSC Legal Internal Communications" where the sender was the Law360 news service or another similar news provider.  Other times, these supposedly "internal" emails were plainly sent to email addresses outside of not only HHSC but the entire Texas state government.  *See, e.g.,* Entries 3557, 3640, 27850 ("HHSC Legal Internal Communication" with bcc to a Gmail address);[2] Entries 30321, 30323, 30325, 30328 (to and from private law firm).  Glaringly, *every* email (bar just one) on pages 88 to 101 of Texas's fourth log is marked as "Attorney Client" and "HHSC Legal Internal Communications" despite being sent to or from a private insurer or healthcare provider.  In short, even to the limited extent that Texas's logs do make it possible to test its claims of privilege, they fail that test time and again.

## II.    Texas's Assertion of Legislative Privilege Is Overbroad

Texas's conception of legislative privilege—which appears to extend to any document created by anyone and transmitted to anyone else, as long as it seeks to help a legislator do her job in any way—is far outside the bounds of any applicable privilege rule.  It encompasses documents well beyond the federal law legislative privilege as defined by the Supreme Court and recognized by the Fifth Circuit.  Moreover, Texas's stance is one that has been rejected time and again by other courts, including the Fifth Circuit in recent months.

---

[2] In Entries 3557 and 3640, the email's sender appears to bcc her own Gmail address.

Legislative privilege for state legislators "is an evidentiary privilege, 'governed by federal common law, as applied through Rule 501 of the Federal Rules of Evidence.'" *Jefferson Community Health Care Ctrs., Inc. v. Jefferson Parish Gov't*, 849 F.3d 615, 624 (5th Cir. 2017) (quoting *Perez v. Perry*, No. SA-11-CV-360, 2014 WL 106927, at *1 (W.D. Tex. Jan. 8, 2014) (three-judge court)).  Under federal privilege law, which applies here,[3] "the legislative privilege for state lawmakers is, at best, one which is qualified." *Id.*  It "must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." *Id.*

Despite Texas's attempts to suggest otherwise in conversations with Affiliate Defendants and in briefing in other matters[4]—where courts have consistently rejected its arguments[5]—the Supreme Court has "ruled that, in contrast to the privilege enjoyed by federal legislators, there is no absolute 'evidentiary privilege for state legislators for their legislative acts.'" *TitleMax of Tex., Inc. v. City of Dallas*, No. 21-cv-1040, 2022 WL 326566, at *4 (N.D. Tex. Feb. 3, 2022) (citing

---

[3] Although the Fifth Circuit has not addressed whether federal privilege law applies to all claims in a suit premised on federal-question jurisdiction with pendent state-law claims, nine other circuits are unanimous that federal privilege law applies to the entirety of such a case, "even where the evidence sought is relevant to a pendent state law claim to which a contrary state privilege law would otherwise apply." *Tonti Mgmt. Co., Inc. v. Soggy Doggie, LLC*, 2020 WL 9172077, at *2 & n. 5 (E.D. La. June 25, 2020) (collecting, and following, those circuit court cases).  The Court has proceeded on this understanding in prior rulings.  *See* Dkt. 262 at 6–7 (explaining that the Court performed the requisite federal law privilege analysis as to the Medicaid investigative privilege).

[4] *See, e.g.,* Opposition to Motion to Compel, *League of United Latin Am. Citizens v. Abbott*, No. 21-cv-00259, ECF No. 423 (W.D. Tex. July 11, 2022); Legislators' Response to Motion to Compel, *La Unión del Pueblo Entero v. Abbott*, No. 21-cv-00844, ECF No. 397 (W.D. Tex. May 9, 2022).

[5] *See, e.g., League of United Latin Am. Citizens v. Abbott*, No. 21-cv-00259, 2022 WL 3233406 (W.D. Tex. Aug. 10, 2022) (Guaderrama, J.); *La Unión del Pueblo Entero v. Abbott*, No. 21-cv-00844, 2022 WL 1667687 (W.D. Tex. May 25, 2022) (Rodriguez, J.).

*United States v. Gillock*, 445 U.S. 360, 373 (1980)).  On the contrary, the "Fifth Circuit embraces the qualified approach" to the state-legislator privilege.  *Id.* at *5 (citing *Jefferson*, 849 F.3d at 624); *accord Harding v. Cnty. of Dallas*, 2016 WL 7426127, at *2 (N.D. Tex. Dec. 23, 2016) (granting motion to compel legislative documents that did not fall under attorney-client privilege because state legislators lack an absolute privilege).  This approach does not change even if legislators might enjoy different protections in state court.  *See TitleMax*, 2022 WL 326566, at *4 ("[I]t appears that . . . the Court must apply the federal common law as to the legislative privilege, even though the privilege as applied under Texas law may offer more protection to [legislators] and their staffs."); *Jackson Municipal Airport Auth. v. Bryant*, 2017 WL 6520967, at *4 (S.D. Miss. Dec. 19, 2017) (similar, as to Mississippi); *cf. Gillock*, 445 U.S. at 370 (noting that a state legislative privilege is "a limit only on the prosecutorial powers of that State," and Congress has chosen not to create an analogous privilege for state legislators in federal court).

In other recent cases, Texas has trotted out similarly sweeping arguments about legislative privilege, and has lost consistently, even where evidence arguably much closer to the core of the privilege was at issue.  In *League of United Latin American Citizens v. Abbott* ("*LULAC*"), three Texas legislators sought to have the Fifth Circuit stay their depositions in a redistricting case.  *See* 2022 WL 2713263, at *1 (5th Cir. May 20, 2022).  After reviewing briefing in which it found that Texas "mischaracterize[d] the law of other circuits," the Court reiterated that it "and the Supreme Court have confirmed that the state legislative privilege is not absolute."  *Id.* at *1 & n.1.  The Fifth Circuit cautioned that the legislative "privilege must not be used as a cudgel to prevent the discovery of non-privileged information or to prevent the discovery of the truth in cases where the federal interests at stake outweigh the interests protected by the privilege."  *Id.* at *2.

15

Nevertheless, Texas has continued to unsuccessfully press its claims in the ongoing *LULAC* district court proceedings, including as to document discovery.  *See* 2022 WL 2921793, at *3 (W.D. Tex. July 25, 2022) (rejecting Texas's argument that *Jefferson Community* is dicta); *id.* at *4 (rejecting Texas's argument that "conversations with executive-branch officials" could be privileged); *id.* at *13–14 (ordering production of numerous documents over which Texas had attempted to assert legislative privilege).  Its arguments have fared no better in another redistricting case.  *See La Unión del Pueblo*, 2022 WL 1667687, at *3 (finding Texas's reliance on authorities interpreting the federal Speech and Debate clause "unpersuasive"); *id.* at *4 (finding it "clear that state legislators waive legislative privilege when they communicate with outsiders," including "executive branch officials"); *id.* at *8 (granting motion to compel production of nearly every document Texas withheld under purported legislative privilege).

With this background in mind, Texas's assertion of privilege as to any document in the possession of a Texas executive branch agency that has any nexus to a legislator's request for information, no matter how tenuous, is wildly overbroad.  To begin with, only legislators themselves—not state executive-branch entities like HHSC—even have standing to assert the privilege.  *Perez*, 2014 WL 106927, at *1–2 (holding that "neither the Governor, nor the Secretary of State of Texas has standing to assert the legislative privilege on behalf of any legislator or staff member").[6]  But even if the legislators themselves were to come forward to make a proper attempt to invoke the privilege—something that would be quite difficult given that Texas is unwilling to disclose even the *names* of the legislators who communicated with HHSC—it would not apply here.  The privilege does not extend to communications with state executive-branch officials.  *La*

---

[6] *Perez* was a decision of a three-judge district court panel that included Circuit Judge Smith.  The Fifth Circuit quoted heavily from *Perez* in its *Jefferson Community* decision.

*Unión del Pueblo*, 2022 WL 1667687, at \*2. The privilege is intended to "protect[] legislators from possible prosecution by an unfriendly executive and conviction by a hostile judiciary." *Id.* (quoting *Gilby v. Hughes*, 471 F. Supp. 3d 763, 766–67 (W.D. Tex. 2020)). Accordingly, it applies to "any documents or information that contains or involves opinions, motives, recommendations or advice about legislative decisions between legislators or between legislators and their staff"— not with just anyone affiliated with entirely different branches of government. *Id.* (quoting *Jackson Mun. Airport Auth*, 2017 WL 6520967, at \*7).

A legislative privilege that encompassed communications with the executive branch would not only contravene Supreme Court and Fifth Circuit precedent establishing narrow bounds for the privilege, but would be inconsistent with the very purpose of the privilege, which is to protect legislators *from* the executive branch. That would be an especially unwarranted outcome here, where an overbroad application of the legislative privilege would actually enlarge executive power by letting the State pursue high-stakes fraud allegations against its citizens while withholding evidence that might be crucial to their defense.[7]

## III.   Appropriate Remedy

*First*, Defendants respectfully request that the Court order Texas to submit affidavits or other evidence sufficient to justify and support its claims of privilege over the categories of materials identified above, as well as the process it used to determine which documents would be withheld as privileged and then to describe those documents on its logs.

---

[7] Moreover, the result would be the same under Texas's own state legislative privilege statute. *See* Tex. Gov't Code § 306.008 (extending legislative privilege to private communications "concern[ing] a legislative activity or function," but only if the communication occurred "among or between . . . a member of the house or senate[,] the lieutenant governor[,] an officer of the house or senate[,] a member of the governing body of a legislative agency[, or] a legislative employee"). And, regardless, that privilege explicitly does *not* supersede "the applicable rules of evidence governing a judicial proceeding." *Id.* § 306.008(d).

*Second*, Defendants respectfully request that the Court order Texas to revise its privilege logs to bring them in compliance with the Court's Orders, including by reconsidering the applicability of its assertions of privilege, so that Defendants can properly assess Texas's privilege claims.

*Third*, Defendants respectfully request that the Court order the production of all documents Texas has withheld pursuant to the legislative privilege.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' Motion to Compel.

Dated:  December 16, 2022

s/  *Tirzah Lollar*_____
Craig D. Margolis
Craig.Margolis@arnoldporter.com
Tirzah S. Lollar
Tirzah.Lollar@arnoldporter.com
Christian Sheehan
Christian.Sheehan@arnoldporter.com
Emily Reeder-Ricchetti
Emily.Reeder-Ricchetti@arnoldporter.com
Megan Pieper
Megan.Pieper@arnoldporter.com
Alyssa Gerstner
Alyssa.Gerstner@arnoldporter.com
Meghan C. Martin
Meghan.Martin@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.5000
Fax: +1 202.942.5999

Christopher M. Odell
Texas State Bar No. 24037205
Christopher.Odell@arnoldporter.com
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: +1 713.576.2400
Fax: +1 713.576.2499

Paula Ramer

18

250 West 55th Street
New York, New York 10019-9710
T: +1 212.836.8474
Paula.Ramer@arnoldporter.com

Ryan Patrick Brown
Texas State Bar No. 24073967
brown@blackburnbrownlaw.com
1222 S. Filmore
Amarillo, TX 79101
Tel: (806) 371-8333
Fax: (806) 350-7716

*Attorneys for Defendants Planned
Parenthood Gulf Coast, Inc., Planned
Parenthood of Greater Texas, Inc.,
Planned Parenthood of South Texas, Inc.,
Planned Parenthood Cameron County,
Inc., and Planned Parenthood San
Antonio, Inc.*

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Fed. R. Civ. P. 26(c)(1) and Local Rule 7.1(b), counsel for Defendants hereby certify that they conferred in good faith with counsel for Texas regarding the relief requested in this motion on both December 7 and December 14, 2022, in addition to written communications before and after those meetings, but the parties were unable to resolve their disagreements regarding the issues raised by Counsel for Defendants.

*/s/ Paula Ramer*_____

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 16, 2022, the foregoing document was electronically filed with the Clerk of Court using CM/ECF.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.


*/s/ Paula Ramer*_____

21