## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | |
|---|---|
| United States of America<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Texas<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Louisiana<br>*ex rel.* ALEX DOE, Relator,<br><br>    Plaintiffs,<br>v.<br>Planned Parenthood Federation of America, Inc.,<br>Planned Parenthood Gulf Coast, Inc., Planned<br>Parenthood of Greater Texas, Inc., Planned<br>Parenthood South Texas, Inc., Planned Parenthood<br>Cameron County, Inc., Planned Parenthood San<br>Antonio, Inc.,<br><br>    Defendants. | CIVIL ACTION NO.<br>2:21-CV-00022-Z<br><br>DATE: December 23, 2022 |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF
## THEIR MOTION TO COMPEL THE STATE OF TEXAS TO
## <u>REVISE ITS PRIVILEGE LOG AND PRODUCE CERTAIN DOCUMENTS</u>

Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc. (together, "Affiliate Defendants"), and Planned Parenthood Federation of America, Inc. (together with Affiliate Defendants, "Defendants"), respectfully submit this reply brief in support of their Motion to Compel the State of Texas to Revise its Privilege Log and Produce Certain Documents, ECF Nos. 347, 348 (the "Motion" or "Mot.").

## <u>INTRODUCTION</u>

Nothing in Texas's Opposition (ECF No. 371) ("Opp.") changes the fact that its privilege logs are woefully insufficient.  Indeed, Texas essentially concedes as much.  Texas provides no

insight into (and certainly no support for) whatever process led to its withholding of hundreds, if not thousands, of patently unprivileged documents.  Nor does it provide any commitment to meaningfully rectify these errors.  It has also failed to explain its failure to provide the basic amount of information called for by Rule 26, binding precedent, and this Court's ESI Order.  Simply put, Texas's privilege logs fail to perform their required function of allowing Defendants and the Court to test Texas's claims.

In addition, Texas does not contest that legislative privilege is waived by disclosure to the executive branch, and that *all* the documents it withholds under this meritless "privilege" claim are in possession of the executive branch—or, in some cases, created by it.  Accordingly, the Motion should be granted.

## **ARGUMENT**

**I.   The Court Should Order Texas To Undertake a Complete Review of the Documents It Has Withheld for Privilege and To Fix Its Logs In Short Order.**

"[W]hen confronted by a privilege log that is technically deficient," a court may "allow the party who submitted the log a short opportunity to amend" or "impos[e] the drastic remedy of waiver." *Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, C.A. No. 13-373, 2018 WL 326504, at *8 (M.D. La. Jan. 8, 2018).  Texas has conceded that its logs had "facial issues" "identified by Defendants," Opp. at 2, yet it has not remedied the widespread problems detailed below and in Defendants' opening brief.  Texas has thus failed to meet its burden to support its claims of privilege as to each document with *at a minimum* facially sufficient privilege log entries.  *See E.E.O.C. v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017).

### **A.   The Process Underlying Texas's Slapdash Privilege Log Remains a Mystery.**

Texas's decision to downgrade 387 documents and amend one of its four logs is a good start, but it is just that—a start.  The core issue raised by the Motion is the *process* that Texas used:

How could so many documents that are clearly not privileged be included on a privilege log? Texas conspicuously fails to provide even a cursory description of its process, let alone attempt to defend it. *Cf. Jolivet v. Compass Grp. USA, Inc.*, 340 F.R.D. 7, 23 (N.D. Tex. 2021) (citing Fed. R. Civ. P. 26(b)(5)) (explaining that in order to "assert[] privilege/protection," a party "must do so with particularity for each document," and that the party's "burden" is to provide "a *properly prepared* privilege log" (emphasis added)). This is not a situation where the parties have differing legal views about the applicability of privilege—rather, Texas's logs include hundreds, if not thousands, of *patently* unprivileged documents, the inclusion of which Texas does not even attempt to explain, let alone justify. As just one particularly egregious example among many, the materials downgraded two days ago include documents sent to Texas by Affiliate Defendants' counsel in the underlying termination litigation. *See* TXPP_1523285, 1523286, 1523302. With so many indicia of an inadequate process, *see* Mot. at 4–7, 8–13, it is incumbent on Texas to "bear[] [its] burden of establishing an evidentiary basis—by affidavit, deposition transcript, or other evidence—for each element of each privilege/protection claimed for each document or category of document." *Jolivet*, 340 F.R.D. at 23. Failing that, "the documents must be produced because of the failure of [Texas] to meet its burden." *Id.* Texas's piecemeal approach—downgrading 119 documents two weeks ago, and 387 now, while conceding that they have not undertaken any systemic re-review[1]—is wholly unjustified.

---

[1] Although Texas claims to have "re-reviewed" certain documents and log entries, its re-review fails to address the broader issues identified by Defendants. Opp. at 2 ("[Texas] has: (1) re-reviewed the documents identified by Defendants and included as part of Exhibit 1 to their motion; (2) re-reviewed its privilege logs for additional documents not identified by Defendants but that contain similar facial issues to hose identified in Defendants' Exhibit 1…" (citation omitted)). But as discussed below, the issues Defendants have identified with Texas's privilege logs indicate egregious deficiencies in the entire process Texas used to determine which documents to withhold for privilege; merely "re-reviewing" the documents Defendants have already identified does nothing to address those issues. In addition, although Texas has committed to doing a more

**B.      Texas Is Improperly Withholding Portions Of Documents and Entire Family Members That Texas Concedes Are Not Privileged.**

Texas admits that it did not redact any documents or produce any non-privileged family members of partially privileged families.  Opp. at  6.  Rather, if *any part* of a document within a family contained *any* privileged material, Texas, contravening the clear command of Rule 26, withheld the entirety of the document along with its entire family.  *See* Fed. R. Civ. P. 26(b)(1) (rendering all "nonprivileged matter" discoverable without exception).  The ESI Order in this case echoes Rule 26: "[I]f any part of an Email or its attachments is responsive, the Entire email and attachments will be produced, except for any attachments that must be withheld or redacted on the basis of privilege, immunity, or applicable privacy laws."  ECF No. 130-1 at 6.  The ESI Order reiterates that in such a situation, "the non-privileged portions of the family will be produced in their entirety.  *Id.* at 7.  The ESI Order also contains numerous references to redaction, making clear that it was an integral expectation of the parties' discovery obligations.  *See, e.g., id.* at 11 (documents in native formats "will be redacted to the extent reasonably and technically possible, and Producing Party will provide the basis for each redaction").

Texas has no response other than unavailing cases that were either (i) decided under state law that is inapplicable here, or (ii) merely observe that it can be burdensome in the context of certain documents (and thus not mandatory) to parse out which material is and is not privileged. *See* Opp. at 7–8.[2]  The cases in (i) are irrelevant and, as to (ii), Texas does not claim (nor plausibly could it) that *all* its documents fall into this category.  Perhaps there are close questions about

comprehensive review of its fourth privilege log, Texas has not committed to fixing its first three logs, even though its concession of "facial issues" covers all four logs.  *See* Opp. at 2.

[2] All the cases Texas cites on pages 7 and 8 are state-law cases except for *Nishnic*, which dealt with a single document where it would have been difficult to exfiltrate certain facts from the attorney's opinion about them.  *See Nishnic v. Dep't of Just.*, 671 F. Supp. 771, 773 (D.D.C. 1987).

specific documents where it may be difficult to parse privileged from non-privileged information. But, especially in view of the facially overbroad claims Texas concedes it made as to hundreds or thousands of documents, it defies belief to suggest that not even a single withheld document could have its privileged content readily segregated.[3]

The inclusion of at least hundreds of incontrovertibly non-privileged documents on Texas's privilege log is exacerbated by the logs' lack of the requisite detail (*see infra* Section I.C). Either problem—overbreadth or lack of detail—could on its own render a privilege log insufficient, but together they make Texas's log markedly so. Faced with this deficient log, Defendants have done the best they could to highlight the issues in a manner that both raised Defendants' broad general concerns while also providing numerous specific examples of them. And Texas provides no authority that legitimately suggests Defendants need to have done more, citing only one case on this point, which dealt with the lack of a document-by-document list of objections as to a set of fewer than 500 documents—about 1.3% the size of Texas's privilege log. *Cf. Nat'l Sec. Counselors v. C.I.A.*, 960 F. Supp. 2d 101, 174 n.42 (D.D.C. 2013) (cited at Opp. at 3). And even there, the court did not reject the party's objections on that basis. *See id.*

### C.     The Bare Bones Descriptions On Texas's Logs Renders Them Inadequate.

Texas's privilege logs are insufficiently detailed. Rule 26 requires that a privilege log "describe the nature of the [withheld] documents . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii); *see also BDO USA, L.L.P.*, 876 F.3d at 697 (logs "must provide sufficient

---

[3] Texas's circular argument about the Medicaid Investigative Privilege fares no better. *See* Mot. at 8 (citing Tex. Gov't Code § 531.1021(g)). Every privilege applies to "all" of a certain type of communication. The question here is what to do when communications falling within and outside that scope are maintained together. And that answer is the same for any type of privilege.

information to permit courts and other parties to 'test[] the merits of' the privilege claim . . . 'as to each document'" (citations omitted)).  The ESI Order contains provisions intended to implement these mandates, including the requirement that the "topic" of the legal advice in each withheld document be provided.  *See* ECF No. 130-1 at 14.

Texas suggests that it can avoid the specificity requirement because it included certain *other* information (email subject lines) not required by the Rule or Order.  But there is a reason that neither Rule 26 nor the Order include a "subject-line" requirement: it is not a reliable way to accomplish the necessary purpose of a privilege log, which is to permit the opposing party, and the Court, to conduct a meaningful review of the claims.  *See BDO USA, L.L.P.*, 876 F.3d at 697. It is common experience that email chains often diverge into areas not covered by their subject lines—that is why this datapoint is not the touchstone of either the Rule or Order.  *See, e.g.,* Mot. App'x at Entry 90 (subject: 'RE: Time to talk?"); *id.* at Entry 169 (subject: "FW: update"); *cf. Spoon v. Bayou Bridge Pipeline, LLC*, No. 19-516, 2022 WL 17683109, at *4 (M.D. La. Dec. 14, 2022) (rejecting as "flawed" and "nonsensical" the argument that a subject line alone is enough to describe an email's topic, because it "blindly assumes the author of every email chose a 'subject line' that complies [with the] definition of that term").  And even if subject lines were sufficient, thousands of entries on Texas's privilege logs (the vast majority of non-email documents) do not even have subject-line descriptions.

Texas is not saved by its assertion that the vague and highly generalized phrase "HHSC Legal Internal Communications"—which is repeated over and over throughout Texas's logs— satisfies the Order's requirement that the specific topic of the withheld communication be

identified in the log.[4]  *See* Opp. at 9 (quoting ECF No. 130-1 at 14 (logs must include a phrase like "legal advice *regarding [topic]*") (emphasis added)).  The fact that a document might reflect an "HHSC Legal Internal Communication" provides no information about the *topic* of that communication.  And even if there were some interpretation of the ESI Order under which this unspecified descriptor were sufficient, the log entries still would abjectly fail to satisfy the mandate of Rule 26 and Fifth Circuit precedent that a privilege log is only sufficient if it allows parties to "test" or "assess"—as to each document—the privilege assertion.  *See* Fed. R. Civ. P. 26(b)(5)(A)(ii); *BDO USA, L.L.P.*, 876 F.3d at 697.

## II.    No Document Withheld By Texas Is Subject To Legislative Privilege

On the topic of legislative privilege, Texas's opposition adds nothing new to—indeed, does not even mention—the arguments on which it has lost time and again in other courts.  *See, e.g., League of United Latin Am. Citizens ("LULAC") v. Abbott*, No. 22-50407, 2022 WL 2713263 (5th Cir. May 20, 2022); *LULAC v. Abbott*, No.21-cv-00259, 2022 WL 2921793 (W.D. Tex. July 25, 2022); *La Unión del Pueblo Entero v. Abbott*, No. 21-cv-00844, 2022 WL 1667687 (W.D. Tex. May 25, 2022).[5]

Two simple facts—neither of which Texas contests *at all*—dispose of the entirety of its legislative privilege claim.  First, legislative privilege is "waived by communicating with an outside party," including "non-legislators, or non-legislative staff."  *TitleMax of Tex., Inc. v. City of Dallas*, No. 21-cv-1040, 2022 WL 326566, at *6 (N.D. Tex. Feb. 3, 2022) (quoting *Perez v. Perry*, No. SA-11-CV-360, 2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014)).  Second, every single one of Texas's custodians is an employee of the Texas *executive* branch, meaning that by

---

[4] And Texas does not attempt to justify its use of any of its other non-descriptive phrases, such as "HHSC/OAG Communications." *See* Mot. at 12–13.

[5] Even more strange is Texas's attempt to criticize Defendants for "ignor[ing]" a single out-of-circuit district court case that takes a different approach than the Fifth Circuit requires. Opp. at 5.

definition *every* document on Texas's privilege logs has been sent to individuals who are outside the legislative branch.

And if that were not enough, Texas also does not contest that even if there were somehow a valid claim of legislative privilege, it could only be invoked by the relevant legislator herself, not by the Texas executive officials who purport to assert it here. *See Perez*, 2014 WL 106927, at *1–2. Shockingly, Texas admits some of the documents falling under the purported "legislative privilege" were internal executive branch communications. Opp. at 5.

Texas's attempts to avoid the plain inapplicability of legislative privilege to documents in the possession of—let alone *generated by*—an executive agency are unavailing. Texas spends the bulk of its discussion on a balancing test discussed in *TitleMax*. Opp. at 4–5. But that test only comes into play when a party is seeking to *overcome* a proper exercise of legislative privilege—not where, as here, the privilege has been entirely waived by disclosure to the executive branch. *See TitleMax*, 2022 WL 326566, at *6 ("If a document meets the requirements of the legislative privilege . . . it may be overcome, and production of the document compelled, based upon the Court's weighing of the five [balancing test] factors."); *see also id.* (noting that executive officials lack "standing to assert the legislative privilege" and it is "waived by communicating with an outside party").[6]

Nor has Texas identified a compelling escape hatch with its point that the Fifth Circuit has not yet joined the nine other circuits that unanimously hold federal privilege law controls in a

---

[6] Even if this test somehow applied, Defendants would satisfy it. This is very "serious" litigation in which the state has a key "role" pursuing fraud allegations against its citizens. *See* Mot. at 17. Disclosure will not increase "timidity" among legislative personnel, because these are communications to (and sometimes within) the executive branch that the privilege is supposed to protect legislative personnel *from*. *See id.* And the contemporaneous statements of HHSC personnel could be highly probative of a variety of issues relating to Texas's endeavors to terminate Affiliate Defendants from Medicaid, which are at the core of this litigation.

federal-question case with pendent state-law claims, like this one.  Texas identifies no authority suggesting that any district court in the Fifth Circuit or elsewhere has ever diverged from that consensus view.  *See Tonti Mgmt. Co., Inc. v. Soggy Doggie, LLC*, No. 19-13134, 2020 WL 9172077, at *2 & n.5 (E.D. La. June 25, 2020) (collecting, and following, nine circuit court cases).  Nor does Texas say anything about how the state legislative privilege operates—let alone how it would apply here.  *See* Opp. at 4–5.

### III.   Defendants' Motion Is Timely

Texas's attempt to portray Defendants' Motion as untimely begins by baldly misleading the Court about the scheduling order.  The scheduling order does not say that a motion to compel must be "filed by 15 days after the discovery response at issue was served," *see* Mot. at 2, but rather that such a motion must be "filed by 15 days after the discovery response at issue was served *or due to be served*."  ECF No. 346 at 5 (emphasis added).[7]  This omission is all the more egregious because Texas appears to have relied on the omitted portion of the Order in deciding to file its own challenge to Affiliate Defendants' September privilege logs more than 70 days after they were served.

The parties met and conferred via phone calls on December 7 and 14, and via emails exchanged on December 1, 5, 6, and 12.  During this time, Texas initially expressed a willingness to consider Defendants' concerns, and it was not until December 14 that it became clear they were not willing to undertake the comprehensive review Defendants believe is necessary.  Under its reading, Texas put Defendants in an impossible position of having to either violate their duty to

---

[7] The prior version of the order, which was in effect until the day Defendants filed their Motion, contained identical language.  *See* ECF No. 192 at 5.

meet and confer, or run out of time to file.[8]  *Cf. McAllister v. F.D.I.C.*, 87 F.3d 762, 767 (5th Cir. 1996) (a party is "estopped from asserting a limitations defense when its conduct induced or tricked [the other party] into allowing a filing deadline to pass").

And, even if Defendants' Motion is deemed to be late by one day (*see* ECF No. 371 at 2), almost every factor under the test the Court has previously applied weighs in favor of permitting the Motion to be considered.  *See* ECF No. 184 at 3 (citing *Days Inn Worldwide, Inc. v. Sonia Invs.*, 237 F.R.D. 395, 398 (N.D. Tex. 2006)).  If late, the Motion is late by only one day.  The vast majority of Texas's privilege determinations were served in the 24 days before the motion was filed, and Defendants only knew the parties were at an impasse two days before filing, because until then the parties had been conferring in good faith about these issues.  In addition, although the discovery deadline has not technically been extended, the last deposition was taken on December 13 and the parties are currently litigating Texas's own motion to compel against Defendants, so it is only fair that the Court also decide Defendants' motion to compel against Texas.  The deadline for dispositive motions was pushed back to January 6, 2023 (before Defendants filed their Motion) to provide time for the Court to adjudicate Texas's motion to compel, so adjudicating Defendants' Motion will not disrupt the Court's schedule.  Finally, there can be no prejudice to Texas from Defendants' attempts to confer in good faith before raising with the Court.

## CONCLUSION

For the reasons discussed above and in the Motion, the Court should grant the Motion.

---

[8] Texas's ability to identify 387 documents for downgrade a mere five days after Defendants filed their Motion also raises questions about why Texas did not do so while the parties were meeting and conferring and Defendants raised these very issues.

Dated: December 23, 2022                    Respectfully Submitted,

                                            ARNOLD & PORTER KAYE SCHOLER LLP


                                               s/   *Tirzah Lollar*
                                            Craig D. Margolis
                                            Craig.Margolis@arnoldporter.com
                                            Tirzah S. Lollar
                                            Tirzah.Lollar@arnoldporter.com
                                            Christian Sheehan
                                            Christian.Sheehan@arnoldporter.com
                                            Emily Reeder-Ricchetti
                                            Emily.Reeder-Ricchetti@arnoldporter.com
                                            Megan Pieper
                                            Megan.Pieper@arnoldporter.com
                                            Alyssa Gerstner
                                            Alyssa.Gerstner@arnoldporter.com
                                            Meghan C. Martin
                                            Meghan.Martin@arnoldporter.com
                                            601 Massachusetts Ave, NW
                                            Washington, DC 20001-3743
                                            Telephone: +1 202.942.5000
                                            Fax: +1 202.942.5999

                                            Christopher M. Odell
                                            Texas State Bar No. 24037205
                                            Christopher.Odell@arnoldporter.com
                                            700 Louisiana Street, Suite 4000
                                            Houston, TX 77002-2755
                                            Telephone: +1 713.576.2400
                                            Fax: +1 713.576.2499

                                            Paula Ramer
                                            250 West 55th Street
                                            New York, New York 10019-9710
                                            T: +1 212.836.8474
                                            Paula.Ramer@arnoldporter.com

                                            Ryan Patrick Brown
                                            Texas State Bar No. 24073967
                                            brown@blackburnbrownlaw.com
                                            1222 S. Filmore
                                            Amarillo, TX 79101
                                            Tel: (806) 371-8333
                                            Fax: (806) 350-7716

*Attorneys for Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood of South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc.*

**O'MELVENY & MYERS LLP**

/s/ *Danny S. Ashby*
DANNY S. ASHBY
Texas Bar No. 01370960
dashby@omm.com
JUSTIN R. CHAPA
Texas Bar No. 24074019
jchapa@omm.com
MEGAN R. WHISLER
Texas Bar No. 24079565
mwhisler@omm.com
2501 N. Harwood Street, Suite 1700
Dallas, Texas 75201
T: (972) 360-1900
F: (972) 360-1901

LEAH GODESKY (pro hac vice)
lgodesky@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
T: (310) 553-6700
F: (310) 246-6779

RYAN BROWN ATTORNEY AT LAW
RYAN PATRICK BROWN
Texas Bar No. 24073967
ryan@ryanbrownattorneyatlaw.com
1222 S. Fillmore St.
Amarillo, Texas 79101
T: (806) 372-5711
F: (806) 350-7716

*Attorneys for Defendant Planned Parenthood Federation of America, Inc.*

12

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2022, the foregoing document was electronically filed with the Clerk of Court using CM/ECF.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

/s/ *Tirzah Lollar*