**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| United States of America<br>*ex rel.* ALEX DOE, Relator, | §<br>§<br>§ | |
| | § | |
| The State of Texas<br>*ex rel.* ALEX DOE, Relator, | §<br>§<br>§ | CIVIL ACTION NO.<br>2:21-CV-00022-Z |
| | § | |
| The State of Louisiana<br>*ex rel.* ALEX DOE, Relator, | §<br>§<br>§ | Date:      December 23, 2022 |
| | § | |
| Plaintiffs, | §<br>§ | |
| v. | § | |
| | § | |
| Planned Parenthood Federation of America, Inc.,<br>Planned Parenthood Gulf Coast, Inc., Planned<br>Parenthood of Greater Texas, Inc., Planned<br>Parenthood South Texas, Inc., Planned Parenthood<br>Cameron County, Inc., Planned Parenthood San<br>Antonio, Inc., | §<br>§<br>§<br>§<br>§<br>§<br>§ | |
| | § | |
| Defendants. | §<br>§ | |

**APPENDIX IN SUPPORT OF DEFENDANTS'**
**REPLY BRIEF IN SUPPORT OF THEIR MOTION TO COMPEL THE STATE OF**
**TEXAS TO REVISE ITS PRIVILEGE LOG AND PRODUCE CERTAIN DOCUMENTS**

ARNOLD & PORTER KAYE SCHOLER LLP

Tirzah S. Lollar
Tirzah.Lollar@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.5000
Fax: +1 202.942.5999

| EX. NO. | DOCUMENT NAME | APP. PAGE NO. |
|---|---|---|
| 1 | <u>TXPP_1523285</u>: 2/3/21 Email from Tim Ribelin of Husch Blackwell LLP to Karen Ray and Dirk Johnson of HHSC | App_001 |
| 2 | <u>TXPP_1523286</u>: Original Petition for Writ of Mandamus, Application for Temporary Restraining Order, Temporary Mandatory Injunction, and Permanent Mandatory Injunction (attachment to TXPP_15238285) | App_002 to App_017 |
| 3 | <u>TXPP_1523302</u>: Exhibits attached to TXPP_1523286 | App_018 to App_100 |

# Exhibit 1

| Message | |
|---|---|
| **From:** | Ribelin, Tim [Tim.Ribelin@huschblackwell.com] |
| **Sent:** | 2/3/2021 5:40:27 PM |
| **To:** | Ray,Karen (Chief Counsel) (HHSC) [Karen.Ray@hhs.texas.gov]; Johnson,Dirk (HHSC) [Dirk.Johnson@hhs.texas.gov] |
| **CC:** | Crowe, Michael [Michael.Crowe@huschblackwell.com]; Rajaratnam, Sammy [Sammy.Rajaratnam@huschblackwell.com]; Werner, Cathy [Catherine.Werner@huschblackwell.com]; Watkins, Tom [Tom.Watkins@huschblackwell.com] |
| **Subject:** | In re: Planned Parenthood of Greater Texas Family Planning and Preventative Health Services, Inc., et al - Application for TRO |
| **Attachments:** | PP - TRO - Application.pdf; PP - TRO - Exhibits.pdf |

**WARNING:** This email is from outside the HHS system. Do not click on links or attachments unless you expect them from the sender and know the content is safe.

Ms. Ray and Mr. Johnson,

Husch Blackwell LLP represents Planned Parenthood of Greater Texas Family Planning and Preventative Health Services, Inc. and affiliated entities (collectively, "Planned Parenthood") in connection with the Texas Health and Human Services Commission's efforts to terminate Planned Parenthood from the Medicaid program in Texas.

Attached is a copy of the Original Petition for Writ of Mandamus, Application for Temporary Restraining Order, Temporary Mandatory Injunction, and Permanent Mandatory Injunction (with exhibits) we are filing with the District Clerk in Travis County today.

***We will request a hearing with the Court for 4:00 p.m. today for the Application for Temporary Restraining Order.*** I will copy you on my correspondence to the Court, but we wanted to give you a copy of the filing now so you can start to work on somebody to represent HHSC at the hearing this afternoon, should the Court grant our request for a hearing today at 4:00 p.m.

Should you wish to discuss the hearing, please contact us.

Sincerely,
Tim

**Timothy P. Ribelin**
**Senior Associate**

**HUSCH BLACKWELL LLP**
111 Congress Avenue,
Suite 1400
Austin, TX 78701-4093
Direct:  512.479.1153
Fax:  512.479.1101
Tim.Ribelin@huschblackwell.com
huschblackwell.com
View Bio | View VCard

**Husch Blackwell COVID-19 Toolkit**
Husch Blackwell has launched a COVID-19 response team providing insight to businesses as they address challenges related to the coronavirus outbreak. Content and programming to assist clients across multiple areas of operations can be found on our website via our Coronavirus toolkit.

App_001

# Exhibit 2

**CAUSE NO. _____**

| | | |
|---|---|---|
| IN RE: | § | IN THE DISTRICT COURT OF |
| | § | |
| PLANNED PARENTHOOD OF GREATER | § | |
| TEXAS FAMILY PLANNING AND | § | |
| PREVENTATIVE HEALTH SERVICES, INC., | § | |
| PLANNED PARENTHOOD OF GREATER | § | |
| TEXAS, INC., PLANNED PARENTHOOD SAN | § | |
| ANTONIO, PLANNED PARENTHOOD | § | TRAVIS COUNTY, TEXAS |
| CAMERON COUNTY, PLANNED | § | |
| PARENTHOOD SOUTH TEXAS SURGICAL | § | |
| CENTER, and PLANNED PARENTHOOD | § | |
| GULF COAST, | § | |
| | § | |
| *Relators*. | § | \_\_\_\_\_ JUDICIAL DISTRICT |

### ORIGINAL PETITION FOR WRIT OF MANDAMUS, APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY MANDATORY INJUNCTION, AND PERMANENT MANDATORY INJUNCTION

TO THE HONORABLE JUDGE OF THIS COURT:

Relators, Planned Parenthood of Greater Texas Family Planning and Preventative Health Services, Inc. ("PPGT") and Planned Parenthood of Greater Texas, Inc.; Planned Parenthood San Antonio, Planned Parenthood Cameron County, and Planned Parenthood South Texas Surgical Center (collectively, "PPST"); and Planned Parenthood Gulf Coast ("PPGC") (PPGT, Planned Parenthood of Greater Texas, Inc., PPST, and PPGC are, collectively, the "Providers"), respectfully ask this Court to grant mandamus relief directing Sylvia Hernandez Kauffman, Inspector General, the Office of Inspector General (jointly, the "OIG"); and Cecile Young, the Executive Commissioner of the Texas Health and Human Services Commission, and the Texas Health and Human Services Commission (jointly, "HHSC") to provide proper notice of termination to Providers based on the OIG and HHSC's intent to terminate Providers from participation in the Medicaid program.

---

ORIGINAL PETITION FOR WRIT OF MANDAMUS, APPLICATION FOR TRO, TEMPORARY MANDATORY INJUNCTION, AND PERMANENT MANDATORY INJUNCTION

App_002

TXPP_1523286

In support of this Original Petition for Writ of Mandamus, Application for Temporary Restraining Order, Temporary Mandatory Injunction, and Permanent Mandatory Injunction, Providers show the Court as follows:

## I.      INTRODUCTION

**A.      Nature of the Dispute.**

1.      HHSC sent Providers a letter on January 4, 2021, informing Providers that HHSC would allow them to continue to provide services in the Medicaid program through February 3, 2021, at which time Providers would be terminated from the program.

2.      In response, Providers requested that HHSC and the OIG comply with the statutory and regulatory mandates requiring them to issue a proper notice of termination under Tex. Hum. Res. Code § 32.034 and 1 Tex. Admin. Code § 371.1703(e) because, under a proper notice of termination, Providers would be entitled to request an informal resolution meeting or an administrative hearing regarding the imposition of the termination.

**B.      Respondents.**

3.      Respondents are the Texas Health and Human Services Commission, its Executive Commissioner Cecile Young, the Office of Inspector General, and its Inspector General Sylvia Hernandez Kauffman. The Texas Health and Human Services Commission is the "single state agency" with the chief responsibility for the Medicaid program in Texas. *See* Tex. Gov't. Code § 531.021. The Office of the Inspector General has the duty under the Texas Administrative Code to issue a proper termination notice. *See* 1 Tex. Admin. Code § 371.1703.

**C.      Respondents' Action or Omission from which Relators Seek Relief.**

4.      HHSC has failed to respond to Providers' request for a proper notice of termination and has failed to issue the same to Providers. The OIG has failed to comply with its regulatory

ORIGINAL PETITION FOR WRIT OF MANDAMUS, APPLICATION FOR TRO, TEMPORARY
MANDATORY INJUNCTION, AND PERMANENT MANDATORY INJUNCTION                          PAGE 2

App_003

TXPP_1523287

obligation to issue a proper notice of termination. Providers seek a writ of mandamus to compel HHSC and the OIG to perform this ministerial act.

## II.    DISCOVERY CONTROL PLAN

5.    Providers invoke Discovery Control Plan Level 3 under Texas Rule of Civil Procedure 190.4.

## III.    PARTIES

6.    Relators, the Planned Parenthood Providers, are Texas not-for-profit corporations that have collectively provided family planning and other preventative care through the Medicaid program at several health centers in Texas for decades.

7.    Respondent, the Texas Health and Human Services Commission, is a state agency that may be served with process through its Executive Commissioner, Cecile Young, at 4900 N. Lamar, Austin, Texas 78751.

8.    Respondent Cecile Young is the Executive Commissioner of the Texas Health and Human Services Commission and may be served with process at her office at 4900 N. Lamar, Austin, Texas 78751.

9.    Respondent, the Office of Inspector General, is a state agency that may be served with process through its Inspector General, Sylvia Hernandez Kauffman, at P.O. Box 85200, Austin, Texas 78708.

10.    Respondent Sylvia Hernandez Kauffman is the Inspector General and may be served with process at her office at P.O. Box 85200, Austin, Texas 78708.

## IV.    JURISDICTION & VENUE

11.    District courts have authority under Tex. Gov't Code § 24.011 to issue writs of mandamus, including a writ of mandamus to compel public officials to perform a ministerial act.

ORIGINAL PETITION FOR WRIT OF MANDAMUS, APPLICATION FOR TRO, TEMPORARY
MANDATORY INJUNCTION, AND PERMANENT MANDATORY INJUNCTION                                      PAGE 3

App_004

TXPP_1523288

*See* Tex. Const. Art. V, § 8. District courts also have authority under Article V, §§ 1 and 8 of the Texas Constitution to interpret statutes and issue declaratory judgments regarding the parties' relative rights and duties. Declaratory relief is proper under Tex. Civ. Prac. & Rem. Code § 37.001 *et. seq*.

12.    Venue is proper in Travis County, Texas, because the Respondents, who are public officials or state agencies, reside or conduct business in Travis County, Texas. *See* Tex. Civ. Prac. & Rem. Code § 15.002(a)(3).

## V.    BACKGROUND & FACTS

13.    For decades, the Planned Parenthood Providers have been an essential part of the public health safety net in Texas, providing high-quality and accessible preventative health care to Texans insured through the Medicaid program.

14.    In 2015, HHSC sought to terminate Providers from participation in the Medicaid program, not because they failed to provide high-quality health care services, but because of the political opportunity presented by an unlawfully filmed and widely debunked video made by a radical anti-abortion group. HHSC first informed Providers that they were being terminated from Medicaid on October 19, 2015, because of, among other reasons, allegedly unlawful conduct related to willingness to facilitate patients' donation of fetal tissue for research. Copies of the 2015 Notices of Termination are attached as **Exhibit A**.

15.    Two of the three Providers did not even appear on the video at issue. Instead, HHSC sought to terminate them because, while they are separate and independent entities, they share the name "Planned Parenthood" with the provider on the video.  *See* Ex. A (stating that entities may be terminated for sanctionable conduct by an entity "sharing any identifying information including . . . corporate or franchise name.").

---

ORIGINAL PETITION FOR WRIT OF MANDAMUS, APPLICATION FOR TRO, TEMPORARY
MANDATORY INJUNCTION, AND PERMANENT MANDATORY INJUNCTION                    PAGE 4

App_005

TXPP_1523289

16.     On November 23, 2015, Providers filed suit in federal court and moved for a preliminary injunction. *See* Case No. 1:15-CV-01058, styled *Planned Parenthood of Greater Texas Family Planning and Preventative Health Services, Inc. et al v. Charles Smith et al*, in the United States District Court for the Western District of Texas, Austin Division.

17.     HHSC then changed course, claiming litigation was premature because it "had not yet actually decided termination was in order." Order Granting Motion for Preliminary Injunction, Case No. 1:15-CV-01058, ECF No. 100. The Court dismissed the pending preliminary injunction motion and stayed the case pending issuance of a final termination notice, and the case "remained dormant for nearly a year." *Id.*

18.     During that year, HHSC did not rescind the termination letters, but instead, various Texas agencies, including HHSC, the Harris County District Attorney, the Texas Rangers and Houston Police Department, the State Attorney General's Office, and the Department of State Health Services conducted investigations of the Providers. Five federal congressional committees also launched investigations. None of these investigations found any evidence of wrongdoing.[1]

19.     Fourteen months after its initial notice, on December 20, 2016, HHSC issued a Final Notice of Termination to each provider, again based on claims of wrongdoing connected to the discredited video (which related to only one of the three Providers). Copies of the Final Notices are attached as **Exhibit B**.

20.     Providers then renewed their request for a preliminary injunction, which was granted by the federal district court on February 21, 2017. *See* Order Granting Motion for Preliminary Injunction, Case No. 1:15-CV-01058, ECF No. 100. Following a three-day

---

[1]  *See* Jennifer Bendery, *GOP Probe into Planned Parenthood Funding Comes Up Empty*, The Huffington Post (Oct. 12, 2015),
http://www.huffingtonpost.com/entry/jason-chaffetz-planned-parenthoodfunding_us_5616ed01e4b0dbb8000de134.

ORIGINAL PETITION FOR WRIT OF MANDAMUS, APPLICATION FOR TRO, TEMPORARY
MANDATORY INJUNCTION, AND PERMANENT MANDATORY INJUNCTION                                    PAGE 5

App_006

TXPP_1523290

evidentiary hearing, the district court concluded there was "not . . . even a scintilla of evidence" of wrongdoing by any of the Providers and that the terminations likely violated the Medicaid Act's Free Choice of Provider clause. *Id.* at 38–39, 35.

21.     HHSC appealed and, on appeal, a Fifth Circuit panel held that existing law required it to recognize a private right of action to enforce the Free Choice of Provider clause.[2] The en banc Fifth Circuit later reversed that decision, and on December 15, 2020, issued a mandate directing the district court to vacate the preliminary injunction. *See Planned Parenthood of Greater Texas Family Planning & Preventative Health Servs., Inc. v. Kauffman*, 981 F.3d 347, 370 (5th Cir. 2020).

22.     On December 14, 2020, Providers wrote a letter to the Commissioner requesting that—given the current public health crisis presented by the COVID-19 pandemic and the critical role Providers play in Texas's public health safety net—HHSC permit Providers to continue to participate in the Medicaid program or, in the alternative, provide a grace period of at least six months to allow Providers to continue serving patients during this time of crisis and to assist patients in transitioning their care to other providers. A copy of the December 14, 2020 letter is attached as **Exhibit C**.

23.     The next day, counsel for Providers sent a letter to HHSC and the OIG, detailing that the December 20, 2016 notice of termination had been enjoined by the federal court and seeking a new, proper notice of termination should HHSC and the OIG desire to continue the termination action. A copy of the December 15, 2020 letter is attached as **Exhibit D**. In an excess

---

[2]  *See Planned Parenthood of Greater Texas Family Planning & Preventative Health Servs., Inc v. Smith*, 913 F.3d 551, 560 (5th Cir.), *reh'g en banc granted sub nom. Planned Parenthood of Greater Texas Family Planning & Preventative Health Servs., Inc. v. Smith*, 914 F.3d 994 (5th Cir. 2019), *and on reh'g en banc sub nom. Planned Parenthood of Greater Texas Family Planning & Preventative Health Servs., Inc. v. Kauffman*, 981 F.3d 347 (5th Cir. 2020).

ORIGINAL PETITION FOR WRIT OF MANDAMUS, APPLICATION FOR TRO, TEMPORARY MANDATORY INJUNCTION, AND PERMANENT MANDATORY INJUNCTION                    PAGE 6

App_007

TXPP_1523291

of caution, counsel for Providers also requested a formal appeal of the termination to the extent HHSC believed the 2016 notice of termination continued to have legal effect. *See* Ex. D.

24.     HHSC responded to Providers on January 4, 2021, informing Providers that it would allow them to continue to provide services in the Medicaid program for 30 days from the date of the letter (through February 3, 2021), after which time Providers would be terminated from the program. A copy of the January 4, 2021 HHSC letter is attached as **Exhibit E**. The OIG also responded to Providers' counsel on January 4, 2021, informing Providers' counsel that the deadline to appeal had expired. A copy of the January 4, 2021 OIG letter is attached as **Exhibit F**.

25.     On information and belief, on the same date, HHSC also issued a notice to Medicaid Managed Care Organizations that Providers "have been terminated as providers in Texas Medicaid" "[a]s of January 4, 2020," again with a 30 day grace period to provide patient care through February 3, 2021. A copy of the MCO Notices is attached as **Exhibit G**. This notification did not mention any earlier termination. HHSC's January 4, 2021 letter appears to constitute a new notice of termination, as it states that Providers may participate in the Medicaid program until February 4, 2021.

26.     Logically, then, Providers were not, and have not been, terminated from the program before February 4, 2021, given they were still participating, and allowed to participate by HHSC, in the Medicaid program.[3]

27.     The letter, however, does not comply with Texas statutory or regulatory requirements. Texas Human Resources Code § 32.034 provides for cancellation of Medicaid provider contracts, reasonable notice and an opportunity for a hearing, and authority for HHSC to

---

[3]     As discussed *infra*, HHSC's position is that OIG's termination of Providers from the Medicaid program was effective in January 2017. This position is flawed—if Providers were terminated from Medicaid in 2017, HHSC would have no reason or need to send a notice of termination letter in January 2021 stating that Providers may participate in the Medicaid program until February 2021.

ORIGINAL PETITION FOR WRIT OF MANDAMUS, APPLICATION FOR TRO, TEMPORARY
MANDATORY INJUNCTION, AND PERMANENT MANDATORY INJUNCTION                    PAGE 7

App_008

TXPP_1523292

adopt regulations to implement the statute. Tex. Hum. Res. Code § 32.034 ("The executive commissioner shall adopt rules consistent with Chapter 2001, Government Code, to implement this section").

28.     These statutory duties were implemented and adopted through Texas Administrative Code Chapter 371, Subchapter G, which includes regulatory requirements HHSC must follow when it takes administrative actions against providers who participate in the Medicaid program. Among other requirements, the regulation spells out the situations in which HHSC and the OIG may or must terminate a provider from the Medicaid program and the procedures they must follow when they do so.

29.     Specifically, when the OIG or HHSC terminates a provider from the program, it must provide a proper notice of termination that includes six specified items:

> (1) a description of the termination;
> (2) the basis for the termination;
> (3) the effect of the termination;
> (4) the duration of the termination;
> (5) whether re-enrollment will be required after the period of termination; and
> (6) a statement of the person's right to request an informal resolution meeting or an administrative hearing regarding the imposition of the termination unless the termination is required under 42 C.F.R. §455.416.

1 Tex. Admin. Code § 371.1703(e).

30.     Providers, through their counsel, sent a letter to HHSC on January 19, 2021, demanding that HHSC comply with its regulatory obligation to issue a proper notice of termination containing all required elements. A copy of the January 19, 2021 letter is attached as **Exhibit H**. On January 29, 2021, counsel for Providers sent a follow-up letter regarding the deficiency of the attempted termination notice. A copy of the January 29, 2021 letter is attached as **Exhibit I**.

ORIGINAL PETITION FOR WRIT OF MANDAMUS, APPLICATION FOR TRO, TEMPORARY
MANDATORY INJUNCTION, AND PERMANENT MANDATORY INJUNCTION                    PAGE 8

App_009

TXPP_1523293

31.     HHSC responded to Providers' requests for a proper notice of termination on February 1, 2021, claiming that the OIG's December 2016 letter was the proper notice of termination and that "the termination became final 30 days after receipt of the notice, in January 2017." A copy of the February 1, 2021 letter is attached as **Exhibit J**. However, the December 20, 2016 Notice of Termination could not serve as the basis for the current termination action because, among other things, it failed to accurately reflect a "description", the "effect", or the "duration" of the termination, and therefore failed to comply with Tex. Human Resources Code § 32.034, or 1 Tex. Admin. Code § 371.1703(e).

## VI.     REQUEST FOR WRIT OF MANDAMUS

32.     Providers reallege and incorporate by reference the allegations contained in the paragraphs above as if fully stated herein.

33.     A writ of mandamus is appropriate to compel public officials or state agencies to perform a ministerial act. *Hawkins v. Cmty. Health Choice, Inc.*, 127 S.W.3d 322, 326 (Tex. App.—Austin 2004, no pet.) (citing *Anderson v. City of Seven Points*, 806 S.W.2d 791, 793 (Tex. 1991)). "An act is ministerial when the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion." *Anderson*, 806 S.W.2d at 793.

34.     Providers request that this Court issue a writ of mandamus to Respondents, compelling them to issue a proper notice of termination that complies with 1 Tex. Admin. Code § 371.1703(e). HHSC and OIG have not included the six enumerated regulatory requirements in their notice. Nor have they provided any reason for their failure to do so. Further, this regulation provides no discretion to HHSC or the OIG. HHSC and the OIG have a clear legal duty to issue a proper notice of termination.

ORIGINAL PETITION FOR WRIT OF MANDAMUS, APPLICATION FOR TRO, TEMPORARY
MANDATORY INJUNCTION, AND PERMANENT MANDATORY INJUNCTION                    PAGE 9

App_010

TXPP_1523294

35.      Providers are entitled to the performance of the OIG and HHSC's duty. Because these public officials and state agencies have failed to act in compliance with the regulation, mandamus relief is necessary and proper to compel the OIG and HHSC to perform this ministerial act.

## VII.    REQUEST FOR DECLARATORY JUDGMENT

36.      Providers reallege and incorporate by reference the allegations contained in the paragraphs above as if fully stated herein.

37.      Under Texas Civil Practice and Remedies Code Chapter 37, Providers request and are entitled to a declaratory judgment that: (1) HHSC and the OIG cannot terminate Providers from the Medicaid program without proper notice under the Texas Administrative Code; and (2) that the January 4, 2021 letter from HHSC to Providers does not constitute proper notice of termination under the Texas Administrative Code.

## VIII.    APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY MANDATORY INJUNCTION, AND PERMANENT MANDATORY INJUNCTION

38.      Providers reallege and incorporate by reference the allegations contained in the paragraphs above as if fully stated herein.

39.      Pursuant to Texas Rule of Civil Procedure 680 *et seq*. and Texas Civil Practice & Remedies Code § 65.011, Providers seek a temporary restraining order ("TRO") and a temporary mandatory injunction to enjoin HHSC and the OIG from terminating Providers from the Medicaid program until the Court rules on the request for writ of mandamus and/or Providers have exhausted their administrative and appellate remedies relating to the termination. This Application for a TRO and temporary mandatory injunction is supported and verified by the Declarations of Jeffrey Hons (**Exhibit K** attached and incorporated herein by reference), Ken Lambrecht (**Exhibit L** attached

ORIGINAL PETITION FOR WRIT OF MANDAMUS, APPLICATION FOR TRO, TEMPORARY
MANDATORY INJUNCTION, AND PERMANENT MANDATORY INJUNCTION                              PAGE 10

App_011

TXPP_1523295

and incorporated herein by reference), and Melaney Linton (**Exhibit M** attached and incorporated herein by reference).

40.     "To obtain a temporary injunction, the applicant[s] must ordinarily plead and prove three specific elements: (1) a cause of action against the defendant, (2) a probable right to the relief sought, and (3) a probable, imminent, and irreparable injury in the interim." *Texas Health & Human Servs. Comm'n v. Advocates for Patient Access, Inc.*, 399 S.W.3d 615, 629 (Tex. App.— Austin 2013, no pet.) (*citing Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 629 (Tex. 2002)). "The applicant[s] [are] not required to establish that [they] will prevail on final trial; rather, the only question before the trial court is whether the applicant[s] [are] entitled to preservation of the status quo pending trial on the merits." *Id.* (*citing Walling v. Medcalfe*, 863 S.W.2d 56, 57 (Tex. 1993)).

41.     The "'[s]tatus quo is defined as 'the last, actual, peaceable, non-contested status which preceded the pending controversy.'" *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 577 (Tex. App.—Austin 2000, no pet.) (quoting *Transp. Co. of Texas v. Robertson Transp., Inc.*, 152 Tex. 551, 261 S.W.2d 549, 553–54 (1953)). Here, the "last, actual, peaceable non-contested status which preceded the pending controversy" was Provider's participation in the Medicaid program.

42.     "If any act of [HHSC or the OIG] alters the relationship between [HHSC, the OIG,] and [Providers], and [Providers] contest[] the action, the status quo cannot be the relationship as it exists *after* the action." *Benavides ISD v.* Guerra, 681 S.W.2d 246, 249 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.). Providers contest HHSC's act of attempting to terminate Providers from the Medicaid program without a proper notice of termination. The status quo *cannot* be such that HHSC can continue with its termination of Providers from the Medicaid program on February 4, 2021. The status quo is Providers' continued participation in the Medicaid program. Importantly,

---

App_012

TXPP_1523296

if Providers are successful on their request for a writ of mandamus and are granted an administrative hearing, Providers' Medicaid agreements would not be terminated until the final outcome of the administrative action.

**A.      Providers have a right of action against HHSC and the OIG and a probable right to relief.**

43.      To show a probable right of recovery, applicants must merely present evidence that would tend to sustain the cause of action. *IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 197 (Tex. App.—Fort Worth 2005, no pet.).

44.      As discussed above, Providers have a probable right of recovery against HHSC and the OIG after a hearing on the writ of mandamus because they failed to perform a ministerial duty by complying with the Texas Administrative Code's clear and unequivocal requirements for a proper notice of termination when terminating a provider from the Medicaid program. Accordingly, Providers show a probable right to be entitled to a writ of mandamus and a declaratory judgment against HHSC and the OIG for the failure to comply with their regulatory obligations.

**A.      Providers will suffer a probable, imminent, and irreparable injury if immediate injunctive relief is not granted.**

45.      "'Probable injury' includes the elements of imminent harm, irreparable injury, and no adequate remedy at law." *Cold Spring Granite Co. v. Karrash*, 96 S.W.3d 514, 516 (citing *Univ. of Tex. Med. School v. Than*, 834 S.W.2d 425, 428 (Tex. App.—Houston [1st Dist.] 1992, no writ)).

46.      "An injury is irreparable if the injured part[ies] cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002).

ORIGINAL PETITION FOR WRIT OF MANDAMUS, APPLICATION FOR TRO, TEMPORARY
MANDATORY INJUNCTION, AND PERMANENT MANDATORY INJUNCTION                                    PAGE 12

App_013

TXPP_1523297

47.     With respect to the adequacy of a remedy at law, "[i]t is not enough for some legal remedy to exist, but the remedy at law must be as practicable, available, and effectual as the remedy at equity." *Liberty Mut. Ins. Co. v. Mustang Tractor & Equip. Co.*, 812 S.W.2d 663, 666 (Tex. App.—Houston [14th Dist.] 1991, no writ).

48.     Providers will suffer immediate and irreparable injury if HHSC terminates Providers from participating in the Medicaid program. Since 2017, when the Medicaid termination was first scheduled to go into effect, Providers have provided more than 51,000 health care visits to approximately 24,000 Medicaid patients. During this public health crisis, it is more important than ever that patients have access to uninterrupted health care. By cutting off Providers' participation in the Medicaid program, HHSC will interfere with Providers continuing to provide medical care to the most vulnerable Texans during this public health crisis.

49.     Terminating Providers from the Medicaid program before the Court rules on the request for writ of mandamus, or before Providers have exhausted their administrative and appellate remedies relating to the termination, will cause immediate and irreparable damage to Providers. Specifically, even if Providers are subsequently able to resume providing services in the Medicaid program because of relief from this Court, Providers' patients who were unable to obtain care at Providers in the interim will remain confused about their ability to do so, causing patients who prefer to obtain care at Providers to nevertheless attempt to obtain care elsewhere if they are able to do so, or forego care altogether; Providers will lose reimbursements for services they would otherwise have provided; and Providers' mission of providing care to underserved patients will be  irreparably harmed.

50.     Further, Providers need to allow their patients to take care of urgent health needs during this crisis stage of the pandemic and, at the least, help their patients attempt to find new

---

App_014

TXPP_1523298

providers willing to accept new patients insured through Medicaid. Abruptly discontinuing services on February 4, 2021 will leave Providers' patients with nowhere else to turn during a pandemic that has pushed the capacity of our health care system to the brink. It is Providers' mission to care for these patients, and termination from Medicaid would be denying Providers' their mission.

51.     Providers cannot continue to serve their patients insured through Medicaid if HHSC's attempt to terminate them from the program is allowed to take effect on February 4, 2021, as a result of HHSC's improper notice of termination and failure to comply with its regulatory obligations. Additionally, as stated above, if Providers are successful on their request for a writ of mandamus and are granted an administrative hearing, the terminations would not take effect until the final outcome of the administrative action. Allowing those terminations to go into effect now would leave Providers without an adequate remedy at law. Such terminations based on an insufficient notice would cause grave public health harms, specifically during the COVID-19 pandemic. Such damages cannot be measured by any pecuniary standard.

**B.     Because of the OIG and HHSC's failure to comply with its regulatory obligations, mandatory injunctive relief is necessary to preserve the status quo.**

52.     As detailed above, the status quo is Providers' continued participation in the Medicaid program. *See Benavides ISD*, 681 S.W.2d at 249. HHSC will alter the status quo when it improperly stops permitting Providers to provide services in the Medicaid program on February 4, 2021. Because of HHSC's insufficient notice of termination that will alter the status quo, a mandatory injunction is appropriate in this case:

> Generally, the preservation of the status quo can be accomplished by an injunction prohibitory in form, but it sometimes happens that the [status] quo is a condition not of rest, but of action, and the condition of rest is exactly what will inflict the irreparable injury on complainant. In such a case, courts of equity issue mandatory writs

ORIGINAL PETITION FOR WRIT OF MANDAMUS, APPLICATION FOR TRO, TEMPORARY
MANDATORY INJUNCTION, AND PERMANENT MANDATORY INJUNCTION                    PAGE 14

App_015

TXPP_1523299

> before the case is heard on its merits. This character of cases has been repeatedly held to constitute an exception to the general rule that temporary injunction may not be resorted to [] obtain all relief sought in the main action; such temporary injunction may be mandatory in character.

*Rhodia, Inc. v. Harris Cty.*, 470 S.W.2d 415, 419–20 (Tex. Civ. App.—Houston [1st Dist.] 1971). HHSC will alter the status quo by no longer permitting Providers to provide care in the Medicaid program—an action that will be done in violation of the Texas Administrative Code's requirements. Thus, the current "condition of rest is exactly what will inflict the irreparable injury" on Providers. *Id.* A mandatory injunction is appropriate to prevent HHSC's conduct from inflicting such irreparable injury on Providers.

**C.    Additional Factors.**

53.    Providers ask the Court to grant their request for a temporary restraining order and schedule the hearing for a temporary mandatory injunction. Providers further request that a permanent mandatory injunction be ordered on the final hearing of this cause requiring and enjoining HHSC and the OIG from attempting to terminate or otherwise hinder Providers' participation in the Medicaid program before Providers have exhausted their administrative and appellate remedies relating to the termination.

54.    Neither HHSC nor the OIG will suffer harm as a result of the requested temporary restraining order, temporary mandatory injunction, and permanent mandatory injunction.

55.    Providers request a bond in an amount to be determined by the Court.

## IX.    CONCLUSION & PRAYER

For all the reasons stated above, Relators Planned Parenthood of Greater Texas Family Planning and Preventative Health Services, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood San Antonio, Planned Parenthood Cameron County, Planned Parenthood

---

ORIGINAL PETITION FOR WRIT OF MANDAMUS, APPLICATION FOR TRO, TEMPORARY MANDATORY INJUNCTION, AND PERMANENT MANDATORY INJUNCTION                                                  PAGE 15

App_016

TXPP_1523300

South Texas Surgical Center, and Planned Parenthood Gulf Coast request that upon hearing, this Court issue the following:

    (a)    a temporary restraining order, temporary mandatory injunction, and permanent mandatory injunction enjoining Respondents Cecile Young, in her capacity as Executive Commissioner of the Texas Health and Human Services Commission, the Texas Health and Human Services Commission, Sylvia Hernandez Kauffman, in her capacity as Inspector General, and the Office of the Inspector General from terminating Providers from the Medicaid program until Providers have exhausted their administrative and appellate remedies relating to the termination;

    (b)    a writ of mandamus compelling HHSC and the OIG to comply with their regulatory obligations to issue a proper notice of termination under 1 Tex. Admin. Code § 371.1703(e);

    (c)    a declaratory judgment that neither HHSC nor OIG can terminate Providers from the Medicaid program without proper notice under 1 Tex. Admin. Code § 371.1703(e) and that the January 4, 2021 letter from HHSC to Providers does not constitute proper notice of termination under 1 Tex. Admin. Code § 371.1703(e); and

    (d)    all other and further relief, general and special, legal and equitable, to which Providers may be justly entitled.

Respectfully submitted,

**HUSCH BLACKWELL LLP**
111 Congress Avenue, Suite 1400
Austin, Texas 78701
(512) 472-5456
(512) 479-1101 (fax)

By: */s/ Thomas H. Watkins* _____
    Thomas H. Watkins
    Texas Bar No. 20928000
    tom.watkins@huschblackwell.com

**ATTORNEY FOR RELATORS**

TXPP_1523301

# Exhibit 3

# EXHIBIT A

TXPP_1523302



# OFFICE OF INSPECTOR GENERAL
## TEXAS HEALTH & HUMAN SERVICES COMMISSION

STUART W. BOWEN JR.
INSPECTOR GENERAL

October 19, 2015

### **** NOTICE OF TERMINATION ****

*Via Regular Mail and CMRRR No. 7015 1730 0000 9397 2170*

Planned Parenthood Association of Cameron and Willacy
Registered Agent: Jeffery Hons
2140 Babcock Road
San Antonio, Texas 78229-0000

Re:

      TPI Numbers:   1269599-11, 1269599-07, 2164360-01, 1269599-10, 2164345-01,
      1269599-06, 2187189-01, 2815037-01, 2815060-01

Dear Provider:

Your receipt of this Notice of Termination effects a process to end your enrollment in the Texas Medicaid program. *See* 1 TEX. ADMIN. CODE § 371.1703(e) (2014). We have begun terminating your enrollment because, based on the evidence outlined below, you are liable, directly or by affiliation, for a series of serious Medicaid program violations. The State has determined that you and your Planned Parenthood affiliates are no longer capable of performing medical services in a professionally competent, safe, legal, and ethical manner.

Your termination and that of all your affiliates will not affect access to care in this State because there are thousands of alternate providers in Texas, including federally qualified health centers, Medicaid-certified rural health clinics, and other health care providers across the State that participate in the Texas Women's Health Program and Medicaid. Our women's health programs, mostly State-funded since 2013, have increased overall funding for women's health services and access to these services for women across the State.

Therefore, in connection with this Notice of Termination and out of respect for the patients who otherwise would receive Medicaid services from you and your affiliates, the State of Texas requests your cooperation in informing all clients and potential clients about alternatives where

P. O. Box 85200, Austin, Texas  78708 • (512) 491-2000

App_019

TXPP_1523303

Notice of Termination
October 19, 2015
Page 2

they can obtain Medicaid services from providers in good standing with the State. HHSC staff will provide you with information you can share regarding those Medicaid providers.

## I. FINDINGS SUPPORTING TERMINATION

We have determined the bases for your termination are as follows:

A. Earlier this year, Planned Parenthood Gulf Coast (PPGC) committed and condoned numerous acts of misconduct captured on video that reveal repeated program violations and breach the minimum standards of care required of it as a Medicaid enrollee. PPGC is being terminated from the program because of these program violations, which include, but are not limited to, the following:

1. The videos indicate that PPGC follows a policy of agreeing to procure fetal tissue even if it means altering the timing or method of an abortion. These practices violate accepted medical standards, as reflected in federal law, and are Medicaid program violations that justify termination. *See* 42 U.S.C. § 289g-1; 1 TEX. ADMIN. CODE § 371.1659(2) and (6).

2. PPGC failed to prevent conditions that would allow the spread of infectious diseases among employees, as well as patients and the general public. Specifically, it allowed individuals posing as commercial buyers of fetal body parts to handle bloody fetal tissue while wearing only gloves. PPGC did not comply with mandatory "universal precautions," including the use of "protective barriers," required whenever anyone handles "blood," "non-intact skin," and "body fluids." *See* 25 TEX. ADMIN. CODE § 139.49; *see also* 29 CFR § 1910.1030. These program violations justify termination. *See* 1 TEX. ADMIN. CODE § 371.1659(2) and (6).

3. PPGC staff were not trained in infection control and barrier precautions with regard to the handling of fetal blood and tissue or they failed to comply with the minimum standards that mandatory training requires with regard to these critical public health and safety issues. *See* 25 TEX. ADMIN. CODE § 139.49(b)(3). These program violations justify termination. *See* 1 TEX. ADMIN. CODE § 371.1659(2) and (6).

As a Planned Parenthood affiliate, you have agreed to abide by mandatory medical and operational standards established by the Planned Parenthood Federation of America (PPFA) located in Washington, D.C. You are a legal affiliate of the PPFA and of all similarly situated Planned Parenthood providers in Texas.

Our rules provide that if you are affiliated with a provider that commits program violations subjecting it to enrollment termination, then you, as an affiliate, are subject to the same enrollment termination. *See* 1 TEX. ADMIN. CODE § 371.1703(c)(7).

App_020

TXPP_1523304

Notice of Termination
October 19, 2015
Page 3

The definitions section of our rule substantiates the conclusion that you are an affiliate of PPGC. It provides that an enrolled provider is an affiliate of another enrolled provider if it "shares any identifying information, including … corporate or franchise name." You share such identifying information with PPGC and are thus subject to termination. *See* 1 TEX. ADMIN. CODE § 371.1607(3)(I).

Our decision to terminate all affiliates in Texas finds support in the extensive video evidence filmed at PPGC and other Parenthood affiliates across the country, including video footage of the Medical Director of PPFA who appears to not only condone such program violations but also endorse them. This suggests that the program violations recorded at PPGC reflect PPFA national policy or accepted practice, which explains in part their widespread occurrence across the country among Planned Parenthood affiliates.  As an affiliate of PPGC, you are now being terminated from the Medicaid program.  *See* 1 Tex. Admin. Code Sec. 371.1703(c)(7).

B. My office has information suggesting that fraud and other related program violations have been committed by a number of Planned Parenthood affiliates enrolled in the Medicaid program in Texas. For example, there is reliable information indicating a pattern of illegal billing practices by Planned Parenthood affiliates across the State.

Our prima facie case of fraud is supported by related cases involving fraudulent practices identified by Whistleblowers from inside the Texas Planned Parenthood network. These Whistleblowers alleged in federal court that Planned Parenthood encourages employees to knowingly file false claims. *See, e.g*, Settlement Agreement, *Reynolds v. Planned Parenthood Gulf Coast*, No. 9:09-cv-124 (E.D. Tex. July 25, 2013) (lawsuit by a health care assistant who worked at Planned Parenthood Gulf Coast for 10 years alleging Medicaid fraud); Memorandum Opinion and Order, *Carroll v. Planned Parenthood Gulf Coast*, 4:12-cv-03505 (S.D. Tex. May 14, 2014) (lawsuit by a former accounts-receivable manager at Planned Parenthood Gulf Coast alleging Medicaid fraud).

In *Reynolds*, a Planned Parenthood Whistleblower alleged sufficient evidence of fraud to assure the federal court handling the matter that the case was worth pursuing, after which Planned Parenthood promptly settled the lawsuit for $4.3 million.  Furthermore when the United States Department of Justice (DOJ) announced the 2013 settlement in *Reynolds*, it openly and compellingly criticized PPGC for "abuse of programs that are extremely important to the well-being of many American women." Further, the DOJ was "particularly grateful to the Whistleblower" who came forward for revealing that PPGC had billed the Texas Medicaid program, Title XX, and the Women's Health

App_021

Notice of Termination
October 19, 2015
Page 4

Program "for items and services that were either medically unnecessary or were never actually provided."

The varied program violations by Planned Parenthood revealed in these two federal cases and the information my office has recently received regarding similar program violations supports this Notice of Termination. *See* 1 Tex. Admin. Code § 371.1653. As per Paragraph A, *supra*, your affiliation with Planned Parenthood entities in Texas about which there is reliable evidence of fraud and other program violations substantiates your termination as an enrollee in the Medicaid program. *See* 1 TEX. ADMIN. CODE §§ 371.1703(c)(6), (c)(7), and (c)(8).

## II. PROCESS

You may request an Informal Resolution Meeting (IRM) with my legal staff to discuss the findings in this Notice of Termination. If you wish to pursue an IRM, you must file a written request with my office <u>on or before the 30th calendar day from the date you received this Notice of Termination</u>.

Your request for an IRM must:

1. Be sent by certified mail to my office at the address specified below;
2. Include a statement as to the specific issues, findings, and legal authority in the Notice of Termination with which you disagree; and
3. Be signed by you or your attorney.

In the alternative, you may submit, <u>within 30 calendar days of receipt of this Notice,</u> any documentary evidence and written argument regarding whether this Notice of Termination is warranted. *See* 1 TEX. ADMIN. CODE § 371.1613 (d). You must state the specific issues, findings, and legal authority that support your contention that this Notice is improper.

In the further alternative, you may both request an IRM and submit documentary evidence and written argument to contest this Notice of Termination.

## III. FINAL TERMINATION

If you fail to respond to this Notice of Termination <u>within 30 calendar days of receipt</u>, then we will issue a Final Notice of Termination. Alternatively, if the IRM fails to resolve the case, then we will similarly issue a Final Notice of Termination. You have 15 days after receipt of the Final Notice of Termination to request an administrative hearing to appeal the Final Notice before an Administrative Law Judge at the Texas Health and Human Services Commission.

A. The effective date of your final termination from the Medicaid program will be either:

App_022

Notice of Termination
October 19, 2015
Page 5

    1. Upon the expiration of 15 calendar days after receipt of the Final Notice of Termination, if you do not timely request an administrative hearing before HHSC; or

    2. The date of any final order issued by an HHSC Administrative Law Judge affirming the Final Notice of Termination.

B. Once the Final Notice of Termination becomes effective, the following events immediately occur:

    1. Your enrollment in the Medicaid program terminates;

    2. Your Texas Provider Identification Number is revoked; and

    3. Your enrollment in the Medicaid program of any other state may be subject to revocation.

If, after your termination from the Texas Medicaid program, you wish to enter the program again, you must apply for re-enrollment.

## NOTICE

**IF YOU DO NOT RESPOND TO THIS NOTICE WITHIN 30 CALENDAR DAYS FROM THE DATE YOU RECEIVED IT, WE WILL ISSUE A FINAL NOTICE OF TERMINATION.**

Requests for an IRM and/or the provision of additional documentary evidence and written argument should be mailed via certified mail to the following address:

    Texas Health and Human Services Commission
    Office of Inspector General
    Mail Code 1358
    P.O. 85200
    Austin, Texas 78708-5200

Respectfully yours,

Stuart W. Bowen, Jr.

App_023



# OFFICE OF INSPECTOR GENERAL
TEXAS HEALTH & HUMAN SERVICES COMMISSION

STUART W. BOWEN JR.
INSPECTOR GENERAL

October 19, 2015

#### \*\*\*\* NOTICE OF TERMINATION \*\*\*\*

*Via Regular Mail and CMRRR No. 7015 1730 0000 9397 2187*

Planned Parenthood South Texas Surgical Center - Family Planning Associates of San Antonio
Registered Agent: Jeffery Hons
2140 Babcock Road
San Antonio, Texas 78229-0000

Re:    Planned Parenthood South Texas Surgical Center - Family Planning Associates of San Antonio
TPI Numbers: 1373391-01, 1373391-10, 2109696-01, 1373391-11, 3353781-01, 1373391-12, 2120669-01, 1373391-04, 2100489-01, 2121964-01, 2866873-01, 2096414-01, 2103566-01

Dear Provider:

Your receipt of this Notice of Termination effects a process to end your enrollment in the Texas Medicaid program. *See* 1 TEX. ADMIN. CODE § 371.1703(e) (2014). We have begun terminating your enrollment because, based on the evidence outlined below, you are liable, directly or by affiliation, for a series of serious Medicaid program violations. The State has determined that you and your Planned Parenthood affiliates are no longer capable of performing medical services in a professionally competent, safe, legal, and ethical manner.

Your termination and that of all your affiliates will not affect access to care in this State because there are thousands of alternate providers in Texas, including federally qualified health centers, Medicaid-certified rural health clinics, and other health care providers across the State that participate in the Texas Women's Health Program and Medicaid. Our women's health programs, mostly State-funded since 2013, have increased overall funding for women's health services and access to these services for women across the State.

Therefore, in connection with this Notice of Termination and out of respect for the patients who otherwise would receive Medicaid services from you and your affiliates, the State of Texas requests your cooperation in informing all clients and potential clients about alternatives where

P. O. Box 85200, Austin, Texas  78708 • (512) 491-2000

TXPP_1523308

Notice of Termination
October 19, 2015
Page 2

they can obtain Medicaid services from providers in good standing with the State. HHSC staff will provide you with information you can share regarding those Medicaid providers.

## I. FINDINGS SUPPORTING TERMINATION

We have determined the bases for your termination are as follows:

A. Earlier this year, Planned Parenthood Gulf Coast (PPGC) committed and condoned numerous acts of misconduct captured on video that reveal repeated program violations and breach the minimum standards of care required of it as a Medicaid enrollee. PPGC is being terminated from the program because of these program violations, which include, but are not limited to, the following:

1. The videos indicate that PPGC follows a policy of agreeing to procure fetal tissue even if it means altering the timing or method of an abortion. These practices violate accepted medical standards, as reflected in federal law, and are Medicaid program violations that justify termination. *See* 42 U.S.C. § 289g-1; 1 TEX. ADMIN. CODE § 371.1659(2) and (6).

2. PPGC failed to prevent conditions that would allow the spread of infectious diseases among employees, as well as patients and the general public. Specifically, it allowed individuals posing as commercial buyers of fetal body parts to handle bloody fetal tissue while wearing only gloves. PPGC did not comply with mandatory "universal precautions," including the use of "protective barriers," required whenever anyone handles "blood," "non-intact skin," and "body fluids." *See* 25 TEX. ADMIN. CODE § 139.49; *see also* 29 CFR § 1910.1030. These program violations justify termination. *See* 1 TEX. ADMIN. CODE § 371.1659(2) and (6).

3. PPGC staff were not trained in infection control and barrier precautions with regard to the handling of fetal blood and tissue or they failed to comply with the minimum standards that mandatory training requires with regard to these critical public health and safety issues. *See* 25 TEX. ADMIN. CODE § 139.49(b)(3). These program violations justify termination. *See* 1 TEX. ADMIN. CODE § 371.1659(2) and (6).

As a Planned Parenthood affiliate, you have agreed to abide by mandatory medical and operational standards established by the Planned Parenthood Federation of America (PPFA) located in Washington, D.C. You are a legal affiliate of the PPFA and of all similarly situated Planned Parenthood providers in Texas.

Our rules provide that if you are affiliated with a provider that commits program violations subjecting it to enrollment termination, then you, as an affiliate, are subject to the same enrollment termination. *See* 1 TEX. ADMIN. CODE § 371.1703(c)(7).

TXPP_1523309

Notice of Termination
October 19, 2015
Page 3

The definitions section of our rule substantiates the conclusion that you are an affiliate of PPGC. It provides that an enrolled provider is an affiliate of another enrolled provider if it "shares any identifying information, including ... corporate or franchise name." You share such identifying information with PPGC and are thus subject to termination. *See* 1 TEX. ADMIN. CODE § 371.1607(3)(I).

Our decision to terminate all affiliates in Texas finds support in the extensive video evidence filmed at PPGC and other Parenthood affiliates across the country, including video footage of the Medical Director of PPFA who appears to not only condone such program violations but also endorse them. This suggests that the program violations recorded at PPGC reflect PPFA national policy or accepted practice, which explains in part their widespread occurrence across the country among Planned Parenthood affiliates. As an affiliate of PPGC, you are now being terminated from the Medicaid program. *See* 1 Tex. Admin. Code Sec. 371.1703(c)(7).

B. My office has information suggesting that fraud and other related program violations have been committed by a number of Planned Parenthood affiliates enrolled in the Medicaid program in Texas. For example, there is reliable information indicating a pattern of illegal billing practices by Planned Parenthood affiliates across the State.

Our prima facie case of fraud is supported by related cases involving fraudulent practices identified by Whistleblowers from inside the Texas Planned Parenthood network. These Whistleblowers alleged in federal court that Planned Parenthood encourages employees to knowingly file false claims. *See, e.g,* Settlement Agreement, *Reynolds v. Planned Parenthood Gulf Coast*, No. 9:09-cv-124 (E.D. Tex. July 25, 2013) (lawsuit by a health care assistant who worked at Planned Parenthood Gulf Coast for 10 years alleging Medicaid fraud); Memorandum Opinion and Order, *Carroll v. Planned Parenthood Gulf Coast*, 4:12-cv-03505 (S.D. Tex. May 14, 2014) (lawsuit by a former accounts-receivable manager at Planned Parenthood Gulf Coast alleging Medicaid fraud).

In *Reynolds*, a Planned Parenthood Whistleblower alleged sufficient evidence of fraud to assure the federal court handling the matter that the case was worth pursuing, after which Planned Parenthood promptly settled the lawsuit for $4.3 million. Furthermore when the United States Department of Justice (DOJ) announced the 2013 settlement in *Reynolds*, it openly and compellingly criticized PPGC for "abuse of programs that are extremely important to the well-being of many American women." Further, the DOJ was "particularly grateful to the Whistleblower" who came forward for revealing that PPGC had billed the Texas Medicaid program, Title XX, and the Women's Health

App_026

TXPP_1523310

Notice of Termination
October 19, 2015
Page 4

Program "for items and services that were either medically unnecessary or were never actually provided."

The varied program violations by Planned Parenthood revealed in these two federal cases and the information my office has recently received regarding similar program violations supports this Notice of Termination. *See* 1 Tex. Admin. Code § 371.1653. As per Paragraph A, *supra*, your affiliation with Planned Parenthood entities in Texas about which there is reliable evidence of fraud and other program violations substantiates your termination as an enrollee in the Medicaid program. *See* 1 TEX. ADMIN. CODE §§ 371.1703(c)(6), (c)(7), and (c)(8).

## II. PROCESS

You may request an Informal Resolution Meeting (IRM) with my legal staff to discuss the findings in this Notice of Termination. If you wish to pursue an IRM, you must file a written request with my office <u>on or before the 30th calendar day from the date you received this Notice of Termination</u>.

Your request for an IRM must:

1. Be sent by certified mail to my office at the address specified below;
2. Include a statement as to the specific issues, findings, and legal authority in the Notice of Termination with which you disagree; and
3. Be signed by you or your attorney.

In the alternative, you may submit, <u>within 30 calendar days of receipt of this Notice,</u> any documentary evidence and written argument regarding whether this Notice of Termination is warranted. *See* 1 TEX. ADMIN. CODE § 371.1613 (d). You must state the specific issues, findings, and legal authority that support your contention that this Notice is improper.

In the further alternative, you may both request an IRM and submit documentary evidence and written argument to contest this Notice of Termination.

## III. FINAL TERMINATION

If you fail to respond to this Notice of Termination <u>within 30 calendar days of receipt</u>, then we will issue a Final Notice of Termination. Alternatively, if the IRM fails to resolve the case, then we will similarly issue a Final Notice of Termination. You have 15 days after receipt of the Final Notice of Termination to request an administrative hearing to appeal the Final Notice before an Administrative Law Judge at the Texas Health and Human Services Commission.

A. The effective date of your final termination from the Medicaid program will be either:

App_027

Notice of Termination
October 19, 2015
Page 5

1. Upon the expiration of 15 calendar days after receipt of the Final Notice of Termination, if you do not timely request an administrative hearing before HHSC; or

2. The date of any final order issued by an HHSC Administrative Law Judge affirming the Final Notice of Termination.

B. Once the Final Notice of Termination becomes effective, the following events immediately occur:

1. Your enrollment in the Medicaid program terminates;

2. Your Texas Provider Identification Number is revoked; and

3. Your enrollment in the Medicaid program of any other state may be subject to revocation.

If, after your termination from the Texas Medicaid program, you wish to enter the program again, you must apply for re-enrollment.

## NOTICE

**IF YOU DO NOT RESPOND TO THIS NOTICE WITHIN 30 CALENDAR DAYS FROM THE DATE YOU RECEIVED IT, WE WILL ISSUE A FINAL NOTICE OF TERMINATION.**

Requests for an IRM and/or the provision of additional documentary evidence and written argument should be mailed via certified mail to the following address:

Texas Health and Human Services Commission
Office of Inspector General
Mail Code 1358
P.O. 85200
Austin, Texas 78708-5200

Respectfully yours,

Stuart W. Bowen, Jr.

App_028

TXPP_1523312



# OFFICE OF INSPECTOR GENERAL
## TEXAS HEALTH & HUMAN SERVICES COMMISSION

STUART W. BOWEN JR.
INSPECTOR GENERAL

October 19, 2015

#### **** NOTICE OF TERMINATION ****

*Via First Class Mail & CMRRR No. 7015 1730 0000 9897 1876*

Planned Parenthood Gulf Coast
Registered Agent: Melaney Linton
4600 Gulf Freeway
Houston, Texas 77023-354

Re:     Planned Parenthood Gulf Coast
        TPI Numbers:  0834095-01, 1126104-08, 1126104-09, 3035461-01, 1126104-05,
        1126104-04, 1126104-12, 1126104-14, 1126104-11, 1126104-10, 1126104-06, 0834095-
        02, 1126104-02, 1126104-07

Dear Provider:

Your receipt of this Notice of Termination effects a process to end your enrollment in the Texas Medicaid program. *See* 1 TEX. ADMIN. CODE § 371.1703(e) (2014).  We have begun terminating your enrollment because, based on the evidence outlined below, you are liable, directly or by affiliation, for a series of serious Medicaid program violations.  The State has determined that you and your Planned Parenthood affiliates are no longer capable of performing medical services in a professionally competent, safe, legal, and ethical manner.

Your termination and that of all your affiliates will not affect access to care in this State because there are thousands of alternate providers in Texas, including federally qualified health centers, Medicaid-certified rural health clinics, and other health care providers across the State that participate in the Texas Women's Health Program and Medicaid. Our women's health programs, mostly State-funded since 2013, have increased overall funding for women's health services and access to these services for women across the State.

Therefore, in connection with this Notice of Termination and out of respect for the patients who otherwise would receive Medicaid services from you and your affiliates, the State of Texas

App_029

TXPP_1523313

Notice of Termination
October 19, 2015
Page 2

requests your cooperation in informing all clients and potential clients about alternatives where they can obtain Medicaid services from providers in good standing with the State. HHSC staff will provide you with information you can share regarding those Medicaid providers.

## I. FINDINGS SUPPORTING TERMINATION

We have determined the bases for your termination are as follows:

A. Earlier this year, you committed and condoned numerous acts of misconduct captured on video that reveal repeated program violations and breach the minimum standards of care required of a Medicaid enrollee. You are being terminated from the program because of these program violations, which include, but are not limited to, the following:

1. The videos indicate that you follow a policy of agreeing to procure fetal tissue even if it means altering the timing or method of an abortion. These practices violate accepted medical standards, as reflected in federal law, and are Medicaid program violations that justify termination. *See* 42 U.S.C. § 289g-1; 1 TEX. ADMIN. CODE § 371.1659(2) and (6).

2. You failed to prevent conditions that would allow the spread of infectious diseases among employees, as well as patients and the general public. Specifically, you allowed individuals posing as commercial buyers of fetal body parts to handle bloody fetal tissue while wearing only gloves. You did not comply with mandatory "universal precautions," including the use of "protective barriers," required whenever anyone handles "blood," "non-intact skin," and "body fluids." *See* 25 TEX. ADMIN. CODE § 139.49; *see also* 29 CFR § 1910.1030. These program violations justify termination. *See* 1 TEX. ADMIN. CODE § 371.1659(2) and (6).

3. Your staff were not trained in infection control and barrier precautions with regard to the handling of fetal blood and tissue or they failed to comply with the minimum standards that mandatory training requires with regard to these critical public health and safety issues. *See* 25 TEX. ADMIN. CODE § 139.49(b)(3). These program violations justify termination. *See* 1 TEX. ADMIN. CODE § 371.1659(2) and (6).

As a Planned Parenthood affiliate, you have agreed to abide by mandatory medical and operational standards established by the Planned Parenthood Federation of America (PPFA) located in Washington, D.C. You are a legal affiliate of the PPFA and of all similarly situated Planned Parenthood providers in Texas.

Our decision to terminate you and all affiliates in Texas finds support in the extensive video evidence filmed at your facility and other Planned Parenthood affiliates across the country, including video footage of the Medical Director of

App_030

Notice of Termination
October 19, 2015
Page 3

PPFA who appears to not only condone such program violations but also endorse them. This suggests that the program violations recorded at your facility reflect PPFA national policy or accepted practice, which explains in part their widespread occurrence across the country among Planned Parenthood affiliates.

B.  My office has information suggesting that fraud and other related program violations have been committed by a number of Planned Parenthood affiliates enrolled in the Medicaid program in Texas, including you. For example, there is reliable information indicating a pattern of illegal billing practices by Planned Parenthood affiliates, including you, across the State.

Our prima facie case of fraud is supported by related cases involving fraudulent practices identified by Whistleblowers from inside the Texas Planned Parenthood network. These Whistleblowers alleged in federal court that Planned Parenthood encourages employees to knowingly file false claims. *See, e.g*, Settlement Agreement, *Reynolds v. Planned Parenthood Gulf Coast*, No. 9:09-cv-124 (E.D. Tex. July 25, 2013) (lawsuit by a health care assistant who worked at Planned Parenthood Gulf Coast for 10 years alleging Medicaid fraud); Memorandum Opinion and Order, *Carroll v. Planned Parenthood Gulf Coast*, 4:12-cv-03505 (S.D. Tex. May 14, 2014) (lawsuit by a former accounts-receivable manager at Planned Parenthood Gulf Coast alleging Medicaid fraud).

In *Reynolds*, a Planned Parenthood Whistleblower alleged sufficient evidence of fraud to assure the federal court handling the matter that the case was worth pursuing, after which Planned Parenthood promptly settled the lawsuit for $4.3 million. Furthermore, when the United States Department of Justice (DOJ) announced the 2013 settlement in *Reynolds*, it openly and compellingly criticized PPGC for "abuse of programs that are extremely important to the well-being of many American women." Further, the DOJ was "particularly grateful to the Whistleblower" who came forward for revealing that Planned Parenthood Gulf Coast had billed the Texas Medicaid program, Title XX, and the Women's Health Program "for items and services that were either medically unnecessary or were never actually provided."

The varied program violations by Planned Parenthood revealed in these two federal cases and the information my office has recently received regarding similar program violations supports this Notice of Termination. *See* 1 Tex. Admin. Code § 371.1653.

Our rules provide that if you are affiliated with a provider that commits program violations subjecting it to enrollment termination, then you, as an affiliate, are subject to the same enrollment termination. *See* 1 TEX. ADMIN. CODE § 371.1703(c)(7). The definitions section of our rule substantiates this position. It provides that an enrolled provider is an affiliate of another enrolled provider if it

App_031

Notice of Termination
October 19, 2015
Page 4

"shares any identifying information, including … corporate or franchise name." You share such identifying information with other affiliates about which a prima facie case of fraud exists and are thus subject to termination. *See* 1 TEX. ADMIN. CODE § 371.1607(3)(I). Your affiliation with Planned Parenthood entities in Texas about which there is reliable evidence of fraud and other program violations - as well as your participation in such - substantiates your termination as an enrollee in the Medicaid program. *See* 1 TEX. ADMIN. CODE §§ 371.1703(c)(6), (c)(7), and (c)(8).

## II. PROCESS

You may request an Informal Resolution Meeting (IRM) with my legal staff to discuss the findings in this Notice of Termination.  If you wish to pursue an IRM, you must file a written request with my office <u>on or before the 30th calendar day from the date you received this Notice of Termination.</u>

Your request for an IRM must:

1. Be sent by certified mail to my office at the address specified below;
2. Include a statement as to the specific issues, findings, and legal authority in the Notice of Termination with which you disagree; and
3. Be signed by you or your attorney.

In the alternative, you may submit, <u>within 30 calendar days of receipt of this Notice,</u> any documentary evidence and written argument regarding whether this Notice of Termination is warranted. *See* 1 TEX. ADMIN. CODE § 371.1613 (d). You must state the specific issues, findings, and legal authority that support your contention that this Notice is improper.

In the further alternative, you may both request an IRM and submit documentary evidence and written argument to contest this Notice of Termination.

## III. FINAL TERMINATION

If you fail to respond to this Notice of Termination <u>within 30 calendar days of receipt</u>, then we will issue a Final Notice of Termination.  Alternatively, if the IRM fails to resolve the case, then we will similarly issue a Final Notice of Termination. You have 15 days after receipt of the Final Notice of Termination to request an administrative hearing to appeal the Final Notice before an Administrative Law Judge at the Texas Health and Human Services Commission.

A. The effective date of your final termination from the Medicaid program will be either:

1. Upon the expiration of 15 calendar days after receipt of the Final Notice of Termination, if you do not timely request an administrative hearing before HHSC; or

App_032

Notice of Termination
October 19, 2015
Page 5

    2.  The date of any final order issued by an HHSC Administrative Law Judge affirming the Final Notice of Termination.

B.  Once the Final Notice of Termination becomes effective, the following events immediately occur:

    1.  Your enrollment in the Medicaid program terminates;
    2.  Your Texas Provider Identification Number is revoked; and
    3.  Your enrollment in the Medicaid program of any other state may be subject to revocation.

If, after your termination from the Texas Medicaid program, you wish to enter the program again, you must apply for re-enrollment.

## NOTICE

**IF YOU DO NOT RESPOND TO THIS NOTICE WITHIN 30 CALENDAR DAYS FROM THE DATE YOU RECEIVED IT, WE WILL ISSUE A FINAL NOTICE OF TERMINATION.**

Requests for an IRM and/or the provision of additional documentary evidence and written argument should be mailed via certified mail to the following address:

    Texas Health and Human Services Commission
    Office of Inspector General
    Mail Code 1358
    P.O. 85200
    Austin, Texas 78708-5200

Respectfully yours,

Stuart W. Bowen, Jr.

App_033





# OFFICE OF INSPECTOR GENERAL

TEXAS HEALTH & HUMAN SERVICES COMMISSION

STUART W. BOWEN JR.
INSPECTOR GENERAL

October 19, 2015

**\*\*\*\* NOTICE OF TERMINATION \*\*\*\***

*Via Regular Mail and CMRRR No. 7015 1730 0000 9397 2194*

Planned Parenthood of Greater Texas / Planned Parenthood of North Texas / Planned Parenthood
of Texas
Registered Agent: Kenneth Lambrecht
7424 Greenville Ave.
Suite 206
Dallas, Texas 75231-4534

Re:    Planned Parenthood of Greater Texas / Planned Parenthood of North Texas / Planned
       Parenthood of Texas
       TPI Numbers:   1272197-03, 1272197-07, 1272197-10, 2999112-01, 2999112-02,
       2999112-03, 2999112-05, 2999112-08, 2999112-09, 3147803-01, 3150484-01, 3150385-
       01, 3159402-01, 1272197-05, 1272197-02, 1364812-13, 1364812-06, 1122699-01,
       1122699-06, 1131914-07, 1131914-05, 1131914-08, 1131914-06

Dear Provider:

Your receipt of this Notice of Termination effects a process to end your enrollment in the Texas
Medicaid program. *See* 1 TEX. ADMIN. CODE § 371.1703(e) (2014).  We have begun terminating
your enrollment because, based on the evidence outlined below, you are liable, directly or by
affiliation, for a series of serious Medicaid program violations.  The State has determined that
you and your Planned Parenthood affiliates are no longer capable of performing medical services
in a professionally competent, safe, legal, and ethical manner.

Your termination and that of all your affiliates will not affect access to care in this State because
there are thousands of alternate providers in Texas, including federally qualified health centers,
Medicaid-certified rural health clinics, and other health care providers across the State that
participate in the Texas Women's Health Program and Medicaid. Our women's health programs,
mostly State-funded since 2013, have increased overall funding for women's health services and
access to these services for women across the State.

Therefore, in connection with this Notice of Termination and out of respect for the patients who
otherwise would receive Medicaid services from you and your affiliates, the State of Texas

---

P. O. Box 85200, Austin, Texas  78708 • (512) 491-2000

App_034

TXPP_1523318

Notice of Termination
October 19, 2015
Page 2

requests your cooperation in informing all clients and potential clients about alternatives where they can obtain Medicaid services from providers in good standing with the State. HHSC staff will provide you with information you can share regarding those Medicaid providers.

## I. FINDINGS SUPPORTING TERMINATION

We have determined the bases for your termination are as follows:

A. Earlier this year, Planned Parenthood Gulf Coast (PPGC) committed and condoned numerous acts of misconduct captured on video that reveal repeated program violations and breach the minimum standards of care required of it as a Medicaid enrollee. PPGC is being terminated from the program because of these program violations, which include, but are not limited to, the following:

1. The videos indicate that PPGC follows a policy of agreeing to procure fetal tissue even if it means altering the timing or method of an abortion. These practices violate accepted medical standards, as reflected in federal law, and are Medicaid program violations that justify termination. *See* 42 U.S.C. § 289g-1; 1 TEX. ADMIN. CODE § 371.1659(2) and (6).

2. PPGC failed to prevent conditions that would allow the spread of infectious diseases among employees, as well as patients and the general public. Specifically, it allowed individuals posing as commercial buyers of fetal body parts to handle bloody fetal tissue while wearing only gloves. PPGC did not comply with mandatory "universal precautions," including the use of "protective barriers," required whenever anyone handles "blood," "non-intact skin," and "body fluids." *See* 25 TEX. ADMIN. CODE § 139.49; *see also* 29 CFR § 1910.1030. These program violations justify termination. *See* 1 TEX. ADMIN. CODE § 371.1659(2) and (6).

3. PPGC staff were not trained in infection control and barrier precautions with regard to the handling of fetal blood and tissue or they failed to comply with the minimum standards that mandatory training requires with regard to these critical public health and safety issues. *See* 25 TEX. ADMIN. CODE § 139.49(b)(3). These program violations justify termination. *See* 1 TEX. ADMIN. CODE § 371.1659(2) and (6).

As a Planned Parenthood affiliate, you have agreed to abide by mandatory medical and operational standards established by the Planned Parenthood Federation of America (PPFA) located in Washington, D.C. You are a legal affiliate of the PPFA and of all similarly situated Planned Parenthood providers in Texas.

Our rules provide that if you are affiliated with a provider that commits program violations subjecting it to enrollment termination, then you, as an affiliate, are

App_035

Notice of Termination
October 19, 2015
Page 3

subject to the same enrollment termination. *See* 1 TEX. ADMIN. CODE §
371.1703(c)(7).

The definitions section of our rule substantiates the conclusion that you are an
affiliate of PPGC. It provides that an enrolled provider is an affiliate of another
enrolled provider if it "shares any identifying information, including ... corporate
or franchise name." You share such identifying information with PPGC and are
thus subject to termination. *See* 1 TEX. ADMIN. CODE § 371.1607(3)(I).

Our decision to terminate all affiliates in Texas finds support in the extensive video
evidence filmed at PPGC and other Parenthood affiliates across the country,
including video footage of the Medical Director of PPFA who appears to not only
condone such program violations but also endorse them. This suggests that the
program violations recorded at PPGC reflect PPFA national policy or accepted
practice, which explains in part their widespread occurrence across the country
among Planned Parenthood affiliates.   As an affiliate of PPGC, you are now being
terminated from the Medicaid program.   *See* 1 Tex. Admin. Code Sec.
371.1703(c)(7).

B. My office has information suggesting that fraud and other related program
violations have been committed by a number of Planned Parenthood affiliates
enrolled in the Medicaid program in Texas. For example, there is reliable
information indicating a pattern of illegal billing practices by Planned
Parenthood affiliates across the State.

Our prima facie case of fraud is supported by related cases involving
fraudulent practices identified by Whistleblowers from inside the Texas
Planned Parenthood network. These Whistleblowers alleged in federal court
that Planned Parenthood encourages employees to knowingly file false claims.
*See, e.g,* Settlement Agreement, *Reynolds v. Planned Parenthood Gulf Coast*,
No. 9:09-cv-124 (E.D. Tex. July 25, 2013) (lawsuit by a health care assistant
who worked at Planned Parenthood Gulf Coast for 10 years alleging Medicaid
fraud); Memorandum Opinion and Order, *Carroll v. Planned Parenthood Gulf
Coast*, 4:12-cv-03505 (S.D. Tex. May 14, 2014) (lawsuit by a former accounts-
receivable manager at Planned Parenthood Gulf Coast alleging Medicaid
fraud).

In *Reynolds*, a Planned Parenthood Whistleblower alleged sufficient evidence
of fraud to assure the federal court handling the matter that the case was worth
pursuing, after which Planned Parenthood promptly settled the lawsuit for $4.3
million.   Furthermore when the United States Department of Justice (DOJ)
announced the 2013 settlement in *Reynolds*, it openly and compellingly
criticized PPGC for "abuse of programs that are extremely important to the
well-being of many American women." Further, the DOJ was "particularly
grateful to the Whistleblower" who came forward for revealing that PPGC had

App_036

TXPP_1523320

Notice of Termination
October 19, 2015
Page 4

billed the Texas Medicaid program, Title XX, and the Women's Health Program "for items and services that were either medically unnecessary or were never actually provided."

The varied program violations by Planned Parenthood revealed in these two federal cases and the information my office has recently received regarding similar program violations supports this Notice of Termination. *See* 1 Tex. Admin. Code § 371.1653. As per Paragraph A, *supra*, your affiliation with Planned Parenthood entities in Texas about which there is reliable evidence of fraud and other program violations substantiates your termination as an enrollee in the Medicaid program. *See* 1 Tex. Admin. Code §§ 371.1703(c)(6), (c)(7), and (c)(8).

## II. PROCESS

You may request an Informal Resolution Meeting (IRM) with my legal staff to discuss the findings in this Notice of Termination. If you wish to pursue an IRM, you must file a written request with my office <u>on or before the 30th calendar day from the date you received this Notice of Termination</u>.

Your request for an IRM must:

1. Be sent by certified mail to my office at the address specified below;
2. Include a statement as to the specific issues, findings, and legal authority in the Notice of Termination with which you disagree; and
3. Be signed by you or your attorney.

In the alternative, you may submit, <u>within 30 calendar days of receipt of this Notice,</u> any documentary evidence and written argument regarding whether this Notice of Termination is warranted. *See* 1 Tex. Admin. Code § 371.1613 (d). You must state the specific issues, findings, and legal authority that support your contention that this Notice is improper.

In the further alternative, you may both request an IRM and submit documentary evidence and written argument to contest this Notice of Termination.

## III. FINAL TERMINATION

If you fail to respond to this Notice of Termination <u>within 30 calendar days of receipt</u>, then we will issue a Final Notice of Termination. Alternatively, if the IRM fails to resolve the case, then we will similarly issue a Final Notice of Termination. You have 15 days after receipt of the Final Notice of Termination to request an administrative hearing to appeal the Final Notice before an Administrative Law Judge at the Texas Health and Human Services Commission.

A. The effective date of your final termination from the Medicaid program will be either:

TXPP_1523321

Notice of Termination
October 19, 2015
Page 5

1. Upon the expiration of 15 calendar days after receipt of the Final Notice of Termination, if you do not timely request an administrative hearing before HHSC; or
2. The date of any final order issued by an HHSC Administrative Law Judge affirming the Final Notice of Termination.

B. Once the Final Notice of Termination becomes effective, the following events immediately occur:

1. Your enrollment in the Medicaid program terminates;
2. Your Texas Provider Identification Number is revoked; and
3. Your enrollment in the Medicaid program of any other state may be subject to revocation.

If, after your termination from the Texas Medicaid program, you wish to enter the program again, you must apply for re-enrollment.

## NOTICE

**IF YOU DO NOT RESPOND TO THIS NOTICE WITHIN 30 CALENDAR DAYS FROM THE DATE YOU RECEIVED IT, WE WILL ISSUE A FINAL NOTICE OF TERMINATION.**

Requests for an IRM and/or the provision of additional documentary evidence and written argument should be mailed via certified mail to the following address:

Texas Health and Human Services Commission
Office of Inspector General
Mail Code 1358
P.O. 85200
Austin, Texas 78708-5200

Respectfully yours,

Stuart W. Bowen, Jr.

App_038

TXPP_1523322

# EXHIBIT B

TXPP_1523323



# OFFICE OF INSPECTOR GENERAL
TEXAS HEALTH & HUMAN SERVICES COMMISSION

STUART W. BOWEN, JR.
INSPECTOR GENERAL

December 20, 2016

**\*\*\*\*\* FINAL NOTICE OF TERMINATION OF ENROLLMENT \*\*\*\*\***

*Via First Class Mail and CMRRR Nos. 7011 2970 0004 0129 1228, 7011 2970 0004 0129 1235, 7011 2970 0004 0129 1242, 7011 2970 0004 0129 1259, 7011 2970 0004 0129 1266 and 7011 2970 0004 0129 1273*

Planned Parenthood Gulf Coast
Registered Agent: Melaney Linton
4600 Gulf Freeway
Houston, Texas 77023-3548

Planned Parenthood of Greater Texas / Planned Parenthood of North Texas
Registered Agent: Kenneth Lambrecht
7424 Greenville Avenue, Suite 206
Dallas, Texas 75231-4534

Planned Parenthood San Antonio / Planned Parenthood South Texas Surgical Center / Planned Parenthood Association of Cameron and Willacy County
Registered Agent: Jeffrey Hons
2140 Babcock Road
San Antonio, Texas 78229-0000

Re:    Planned Parenthood Final Notice of Termination

Dear Provider:

## I. FINAL NOTICE OF TERMINATION

This notice is to inform you that the Texas Health and Human Services Commission's Office of Inspector General (HHSC-IG) is hereby terminating the enrollment of the following providers and associated Texas Provider Identification (TPI) numbers from the Texas Medicaid program: Planned Parenthood Gulf Coast, Planned Parenthood of Greater Texas, Planned Parenthood of North Texas, Planned Parenthood San Antonio, Planned Parenthood South Texas Surgical Center, and Planned Parenthood Association of Cameron and Willacy County (hereafter Planned Parenthood, you, or your). 1 Tex. Admin. Code § 371.1703(e) (2016). *See* Attachment A for list of TPI numbers. Because of the violations listed below, HHSC-IG finds that you are not qualified

App_040

TXPP_1523324

Planned Parenthood
Final Notice of Termination
December 20, 2016
Page **2** of **6**

to provide medical services in a professionally competent, safe, legal and ethical manner under the relevant provisions of state and federal law pertaining to Medicaid providers.

The basis for your termination and the termination of your affiliates stems from an extensive undercover video obtained by the Center for Medical Progress at the Planned Parenthood Gulf Freeway facility in April 2015, which contains evidence that Planned Parenthood violated state and federal law. The evidence arises from detailed discussions with the Planned Parenthood Gulf Coast's staff. In addition, the United States House of Representatives' Select Investigative Panel (House Investigative Panel) uncovered evidence consistent with and supportive of this termination.[1]

The unedited video footage indicates that Planned Parenthood follows a policy of agreeing to procure fetal tissue, potentially for valuable consideration, even if it means altering the timing or method of an abortion. These practices violate accepted medical standards, as reflected in federal and state law, and are Medicaid program violations that justify termination. *See* 42 U.S.C. § 289g-1; 42 U.S.C. § 289g-2; 1 Tex. Admin. Code § 371.1659(2) and (6); 1 Tex. Admin. Code § 371.1661; 1 Tex. Admin. Code § 371.1703(c)(6); 1 Tex. Admin. Code § 371.1605(a); 1 Tex. Admin. Code § 371.1603(g)(5) and (7). The HHSC-IG's Chief Medical Officer reviewed the video and concluded that your willingness to engage in these practices violates generally accepted medical standards, and thus you are not qualified to provide medical services in a professionally competent, safe, legal and ethical manner.

The video reveals numerous violations of generally accepted standards of medical practice. Examples include:

1. a history of deviating from accepted standards to procure samples that meet researcher's needs;

2. a history of permitting staff physicians to alter procedures to obtain targeted tissue samples needed for their specific outside research;

3. a willingness to convert normal pregnancies to the breech position to ensure researchers receive intact specimens;

4. an admission that "we get what we need to do to alter the standard of care where we are still maintaining patient safety, still maintaining efficiency in clinic operations, but we integrate research into it";

5. an admission that Planned Parenthood gets requests for "information from our study sponsor on what data they need that is not our standard of care," and that you provide what

---

[1] On October 7, 2015, the U.S. House of Representatives passed H. Res. 461, which created the Select Investigative Panel, a bipartisan panel, to conduct a full and complete investigation of the medical practices of abortion providers and the practices of entities that procure and transfer fetal tissue. On December 1, 2016, the Investigative Panel referred its evidence to the Texas Attorney General.

App_041

TXPP_1523325

Planned Parenthood
Final Notice of Termination
December 20, 2016
Page 3 of 6

      is needed by creating a separate research protocol or template that can include medically unnecessary testing; and

6. a willingness to charge more than the costs incurred for procuring fetal tissue.

In addition, HHSC-IG has evidence that you engaged in misrepresentations about your activity related to fetal tissue procurements, as revealed by evidence provided by the House Investigative Panel. These misrepresentations show that you are not qualified to provide medical services in a professionally competent, safe, legal and ethical manner, and thus they support this termination. *See* 1 Tex. Admin. Code § 371.1661; 1 Tex. Penal Code § 37.08; 1 Tex. Admin. Code § 371.1603(g)(6); 42 U.S.C. § 1320a-7(b)(5); 42 U.S.C. § 1320a-7(b)(16); 1 Tex. Admin Code § 371.1651(15); 1 Tex. Admin. Code § 371.1655(7); 1 Tex. Admin. Code. § 371.1655(24); 1 Tex. Admin. Code § 371.1605(a).

In the *HHSC Medicaid Provider Agreement*, you agreed to comply with all of the requirements in Title 1, Part 15, Chapter 371 of the Texas Administrative Code, the Texas Medicaid Provider Procedures Manual, and all state and federal laws governing or regulating Medicaid. You further acknowledged in that agreement that failing to comply with any applicable law, rule, or policy of the Medicaid program or permitting circumstances that potentially threaten the health or safety of a client would be grounds for termination of your enrollment.

Your misconduct is directly related to whether you are qualified to provide medical services in a professionally competent, safe, legal and ethical manner. Your actions violate generally accepted medical standards, as reflected in state and federal law, and are Medicaid program violations that justify termination.

HHSC-IG rules provide that if you are affiliated with a provider that commits a program violation subjecting it to enrollment termination, then the affiliate is also subject to enrollment termination. *See* 1 Tex. Admin. Code §371.1703(c)(7); 1 Tex. Admin. Code §371.1605(a). Furthermore, the video and other evidence provide numerous indicia of affiliation, including:

1. common identifying information among affiliates;

2. individual providers working across affiliates;

3. a requirement that affiliates follow protocols and procedures prescribed by the Planned Parenthood Federation of America;

4. a requirement that affiliates report research studies to the Planned Parenthood Federation of America;

5. Planned Parenthood Federation of America provides for the legal review of research contracts;

6. Planned Parenthood Federation of America requires training for affiliates;

7. Planned Parenthood Federation of America provides certification of affiliates;

TXPP_1523326

Planned Parenthood
Final Notice of Termination
December 20, 2016
Page 4 of **6**

8. Planned Parenthood Federation of America centralizes the oversight, use, and review of research projects; and

9. Planned Parenthood affiliates may use research agreements at one affiliate to facilitate additional research at other affiliates.

## II. SCOPE OF TERMINATION

The termination of your enrollment means that:

1. Your contract with the Texas Medicaid program will be nullified on the effective date of the termination. 1 Tex. Admin. Code § 371.1703(g)(1);

2. The TPI Number(s) related to your contract will become ineffective on the effective date of the termination;

3. No items or services furnished under your TPI will be reimbursed by the Medicaid program, after your enrollment is terminated. 1 Tex. Admin. Code § 371.1703(g)(2);

4. You will be required to re-enroll in the Texas Medicaid program, if you wish to participate as a Texas Medicaid provider. 1 Tex. Admin. Code § 371.1703(g)(3);

5. Your enrollment or contract in the Medicare program may be subject to termination. 1 Tex. Admin. Code § 371.1703(g)(4);

6. Your enrollment or contract in the Medicaid program of any other state may be subject to termination. *Id.*; and

7. This termination will remain in effect until such time as you re-enroll and are approved to participate as a Texas Medicaid provider.

## III. APPEAL PROCESS

You may appeal this enrollment termination. In order to do so, **HHSC-IG must** <u>receive</u> **a written request from you asking for an administrative hearing before HHSC's appeals division on or before the 15th calendar day from the date you receive this notice.** 1 Tex. Admin. Code § 371.1703(f)(2).

All submissions, including your request for an administrative hearing, should be mailed to:

Texas Health and Human Services Commission
Office of Inspector General
Mail Code 1358
P.O. Box 85200
Austin, Texas 78708-5200

---

App_043

TXPP_1523327

Planned Parenthood
Final Notice of Termination
December 20, 2016
Page **5** of **6**

Pursuant to 1 Tex. Admin. Code §§ 371.1615(b)(2) and (4), any request for an administrative hearing must:

1. be sent by certified mail to the address specified above;

2. include a statement as to the specific issues, findings, and/or legal authority in the notice letter with which you disagree;

3. state the bases for your contention that the specific issues or findings and conclusions of HHSC-IG are incorrect;

4. be signed by you or your attorney; and

5. arrive at the address specified above on or before the 15th calendar day from the date you receive this Final Notice of Termination.

**IF HHSC-IG DOES NOT RECEIVE A WRITTEN RESPONSE TO THIS NOTICE WITHIN 15 CALENDAR DAYS FROM THE DATE YOU RECEIVE IT, YOUR FINAL NOTICE OF TERMINATION WILL BE UNAPPEALABLE.**

## IV. TERM OF ENROLLMENT TERMINATION

The effective date of this enrollment termination depends upon whether you choose to appeal:

- If you do not request a hearing as discussed above, the effective date of your enrollment termination will be the 30th calendar day following your receipt of this Final Notice of Termination. 1 Tex. Admin. Code §§ 371.1615(c), 371.1617(a)(1), 371.1703(g)(8); or

- If you request an administrative hearing, then the effective date will be the date the administrative law judge's decision to uphold your enrollment termination becomes final. 1 Tex. Admin. Code § 371.1703(g)(7).

This enrollment termination is permanent. If you want to participate as a provider in the Texas Medicaid program in the future, you will be required to submit a new provider enrollment application. 1 Tex. Admin. Code § 371.1703(g)(3).

Respectfully yours,

Stuart W. Bowen, Jr.
Inspector General

Attachment

App_044

TXPP_1523328

Planned Parenthood
Final Notice of Termination
December 20, 2016
Page **6** of **6**

Attachment A

These are the TPIs that Texas Medical Health Partnership reports as affiliated with Planned
Parenthood and which are believed to be active:
2164345-01, 2164360-01, 1269599-06, 1269599-07, 1269599-10, 1269599-11, 2187189-01,
2815037-01, 2815060-01, 1126104-02, 1126104-04, 1126104-06, 1126104-07, 1126104-08,
1126104-09, 1126104-14, 3035461-01, 0834095-01, 0834095-02, 0834095-04, 1126104-05,
1126104-10, 1126104-11, 1126104-12, 1122699-01, 1122699-06, 1272197-02, 1272197-03,
1272197-05, 1272197-07, 1272197-10, 1272197-12, 1364812-06, 1364812-13, 2999112-01,
2999112-02, 2999112-03, 2999112-05, 2999112-08, 2999112-09, 3147803-01, 3150385-01,
3150484-01, 3159402-01, 2100489-01, 2120669-01, 2121964-01, 2096414-01, 2103566-01,
2109696-01, 3353781-01, 1373391-01, 1373391-10, 1373391-04, 1373391-11, 1373391-12,
2866873-01

App_045

TXPP_1523329

# EXHIBIT C

App_046

TXPP_1523330



Planned Parenthood South Texas    Planned Parenthood of Greater Texas    Planned Parenthood Gulf Coast

December 14, 2020

Executive Commissioner Cecile Young
Texas Health and Human Services Commission
4900 N. Lamar Boulevard
Austin, TX 78751
P.O. Box 13247

Dear Executive Commissioner Young:

We write in light of the COVID-19 public health crisis facing Texas, to ask the Texas Health and Human Services Commission ("HHSC") to allow Planned Parenthood of Greater Texas, Planned Parenthood South Texas, and Planned Parenthood Gulf Coast (collectively, "Planned Parenthood providers") to continue serving Texans insured through the Medicaid program. At minimum, it is imperative that HHSC permit a brief grace period so that Planned Parenthood providers can provide continuity of care throughout the holiday season and the current crisis point of the pandemic.

### The Shortage of Texas Medicaid Providers in the Current Public Health Crisis and Planned Parenthood's Essential Role

As HHSC is well aware, Texas is one of the hardest-hit states in the worst public health crisis to face this country since the flu pandemic of 1918–19. More than 1.2 million Texans have been infected with COVID-19, and more than 23,000 have died from it.[1] As Governor Abbott has repeatedly recognized, including as recently as December 6, 2020, COVID-19 "poses an imminent threat of disaster for all counties in the State of Texas."[2] Indeed, on December 10, 2020, 12,211 new coronavirus cases were reported in Texas—a figure exceeding July's record high.[3] Hospitalization rates are currently highest in Northern and Western Texas, where many rural hospitals are "overwhelmed" and have "reported difficulty transferring patients to bigger, better-

---

[1] *COVID Data Tracker*, CDC, https://covid.cdc.gov/covid-data-tracker/ (last visited Dec. 11, 2020).

[2] Tex. Proclamation (Dec. 6, 2020), https://gov.texas.gov/uploads/files/press/DISASTER_renewing_covid19_disaster_proclamation_IMAGE_12-06-2020.pdf; *see also* Tex. Exec. Order GA 28 (June 26, 2020), https://gov.texas.gov/uploads/files/press/EO-GA-28_targeted_response_to_reopening_COVID-19.pdf.

[3] Tex. Trib. Staff, *Coronavirus in Texas*, Tex. Trib. (Dec. 11, 2020), https://archive.org/details/httpsapps.texastribune.orgfeatures2020texas-coronavirus-cases-map.

TXPP_1523331

equipped facilities in larger cities."[4] The virus has had a disproportionate toll on Black and Latinx Texans, who have died at rates higher than their share of the state's population.[5]

For decades, Planned Parenthood providers have been an essential part of the public health safety net in Texas, providing high-quality and accessible preventative health care to Texans insured through the Medicaid program. Since January 2017, when the Medicaid termination was first scheduled to go into effect, Texas's Planned Parenthood providers have provided more than 51,000 health care visits to approximately 24,000 Medicaid patients. Indeed, in those four years, Planned Parenthood's 30 health centers across the state have provided over 44,000 tests for sexually transmitted infections (including HIV screenings), more than 2,100 cancer screenings, more than 52,000 units of contraception (including hormonal birth control and long-acting reversible contraception), and more than 4,400 annual well visits to Medicaid-insured Texans, without any claim of wrongdoing by HHSC.

Texas has some of the most stringent Medicaid requirements in the country: to be eligible, a patient must not only have a low income, but also have dependent children or a disability that keeps them from working.[6] And the income restrictions are strict; for example, to qualify for Medicaid a single woman with a dependent child must have a monthly income of under $196, well below the federal poverty guideline.[7] Texas Medicaid patients are therefore an especially vulnerable population, who already face severe obstacles in accessing health care.

Moreover, it is well-documented that people of color in the United States are disproportionately unable to access quality health care due to the intersections of racism, sexism, classism, xenophobia, and other systemic barriers, making them more likely to rely on Medicaid.[8] Policies

---

[4] Shawn Mulcahy, *"We Are in a Very Dangerous Place": White House COVID-19 Task Force Pleads with Texas Health Officials to Warn the Public*, Tex. Trib. (Dec. 3, 2020), https://www.texastribune.org/2020/12/03/texas-coronavirus-white-house/.

[5] Emma Platoff & Carla Astudillo, *Across Texas and the Nation, the Novel Coronavirus is Deadlier for People of Color*, Tex. Trib. (July 30, 2020), https://www.texastribune.org/2020/07/30/texas-coronavirus-deaths/.

[6] Sophie Novak, *Who Really Gets Government Benefits in Texas?*, Tex. Observer (June 22, 2017), https://www.texasobserver.org/who-gets-benefits-texas-medicaid-cuts/; Shannon Najmabadi & Edgar Walters, *They Lost Their Jobs and Insurance in the Pandemic. Now They're Slipping Through Texas' Health Care Safety Net*, Tex. Trib. (May 22, 2020), https://www.texastribune.org/2020/05/22/texas-medicaid-health-insurance-coronavirus/.

[7] Tex. Health and Hum. Servs., *Medicaid for Parents & Caretakers*, https://hhs.texas.gov/services/health/medicaid-chip/programs-services/children-families/medicaid-parents-caretakers (last visited Dec. 11, 2020). The 2020 Federal Poverty Guideline for a family of two is $17,240 per year, or about $332 per week. *See* U.S. Dep't of Health and Hum. Servs., 2020 Poverty Guidelines (Jan. 21, 2020), https://aspe.hhs.gov/2020-poverty-guidelines.

[8] Hannah Katch et al., *Medicaid Works for Women–But Proposed Cuts Would Have Harsh, Disproportionate Impact*, Ctr. on Budget & Policy Priorities (May 11, 2017),

App_048

TXPP_1523332

that restrict Medicaid access, therefore, exacerbate these systemic barriers for Black and Latinx communities—the same groups who have been disproportionately affected by the COVID-19 crisis.

In part because of low reimbursement rates and onerous reimbursement policies, Texas suffers from a shortage of willing Medicaid providers. According to the Texas Medical Association, in 2014, only 34 percent of physicians were willing to take on new Medicaid patients.[9] Planned Parenthood providers know this first-hand, from the hours staff spend on the phone trying to find providers who will accept a referral to begin lifesaving medical care when patients receive a positive result from a cancer screening, or when Medicaid patients require referrals for other urgent care. In the pandemic, this crisis has only worsened, as economic turmoil and sky-high unemployment rates[10] have increased the number of Texans eligible for Medicaid.[11]

Planned Parenthood health centers, in Texas and across the country, serve an outsized role in meeting the health care needs for those who are enrolled in federally funded health programs like Medicaid. More than half of Planned Parenthood health centers provide care to underserved patient communities in Health Professional Shortage Areas, Medically Underserved Areas, or Rural

---

https://www.cbpp.org/research/health/medicaid-works-for-women-but-proposed-cuts-would-have-harsh-disproportionate-impact; David R. Williams & Toni D. Rucker, *Understanding and Addressing Racial Disparities in Health Care*, 21 Health Care Fin. Rev. 75 (2000); UCLA Ctr. for Health Policy Rsch. & Henry J. Kaiser Fam. Found., *Racial and Ethnic Disparities in Access to Health Insurance and Health Care* (Apr. 2000), https://www.kff.org/wp-content/uploads/2013/01/racial-and-ethnic-disparities-in-access-to-health-insurance-and-health-care-report.pdf.

[9] Ashley Lopez, *Texas Lawmakers Look for the Cure to Fewer Doctors Taking Medicaid Patients*, KUT 90.5 (Mar. 9 2016), https://www.kut.org/health/2016-03-09/texas-lawmakers-look-for-the-cure-to-fewer-doctors-taking-medicaid-patients.

[10] Tex. Workforce Comm'n, *Unemployment Rate Is 8.3 Percent in September* (Oct. 16, 2020), https://www.twc.texas.gov/unemployment-rate-83-percent-september; Anna Novak & Mitchell Ferman, *Texans Have Filed More Than 3.9 Million Unemployment Claims During the Coronavirus Pandemic*, Tex. Trib. (Dec. 10, 2020), https://apps.texastribune.org/features/2020/texas-unemployment/; Chris Mathews, *Texas Weekly Unemployment Claims Reach Lowest Level Since March–But Still Much Higher Than Normal*, Austin Bus. J. (Nov. 13, 200), https://www.bizjournals.com/austin/news/2020/11/13/texas-unemployment-claims-november-7-coronavirus.html; Erika Esquivel, *West Texas Unemployment Claims Increase in November*, KFOX14 (Nov. 24, 2020), https://kfoxtv.com/news/local/west-texas-unemployment-claims-increase-in-november; Diana Zoga & Eva Parks, *Up to 830,000 Texans Impacted by Expiring Unemployment Benefits*, NBCDFW (Dec. 3, 2020), https://www.nbcdfw.com/news/nbc-5-responds/up-to-830000-texans-impacted-by-expiring-unemployment-benefits/2496079/.

[11] Shannon Najmabadi & Edgar Walters, *They Lost Their Jobs and Insurance in the Pandemic. Now They're Slipping Through Texas' Health Care Safety Net*, Tex. Trib. (May 22, 2020), https://www.texastribune.org/2020/05/22/texas-medicaid-health-insurance-coronavirus/ ("In Texas and the other states that rejected Medicaid expansion, one-third of the newly jobless are estimated to get Medicaid, with 40% becoming uninsured.").

TXPP_1523333

Areas.[12] Planned Parenthood health centers are also considerably more likely to offer Medicaid patients a broader range of birth control methods than other providers.[13] In a study of Community Health Centers, 69 percent reported referring their patients to family planning providers, like Planned Parenthood health centers, for family planning care.[14] Indeed, Planned Parenthood Providers have continued to conduct STI testing and treatment for Medicaid patients in Texas while the pandemic has strained the capacity of other health care providers to offer these services across the country.

For many young women of reproductive age in Texas, Planned Parenthood is their only source of health care. Planned Parenthood designs its services around the reality that patients with low incomes face grave barriers to health care such as childcare and work obligations, limited transportation, and inflexible work schedules, and strive to accommodate these restrictions by offering evening and weekend hours, walk-in appointments, short wait times, bilingual staff or translation services, and same-day contraceptive services. Patients choose Planned Parenthood for its uniquely non-judgmental, high-quality and accessible care.

During this public health crisis, it is more important than ever that patients have access to uninterrupted health care. When people can't access Medicaid coverage or are unable to see the provider they know and trust, they may simply forgo critical health care. Indeed, Texas has gone down this road before with the Texas Women's Health Program in 2013; a study in the *New England Journal of Medicine* showed that blocking patients from going to Planned Parenthood providers in Texas was associated with a 35 percent decline in women in publicly funded programs using the most effective methods of birth control and a dramatic 27 percent increase in births among women who had previously accessed injectable contraception through those programs.[15] In other words, women who could not financially afford health care at other places were not able to receive health care at all.[16]

---

[12] Planned Parenthood Federation of America, *The Irreplaceable Role of Planned Parenthood Health Centers* (Jan. 2019), https://www.plannedparenthood.org/uploads/filer_public/33/63/3363814b-938e-4ad5-87d2-57ee98790766/190117-irreplaceable-role-pp-v01.pdf.

[13] *Id.*

[14] Susan Wood et al., George Washington University School of Public Health and Health Services, *Health Centers and Family Planning: Results of a Nationwide Study*, at 26 (Mar. 7, 2013), http://www.rchnfoundation.org/wp-content/uploads/2013/04/Health_Centers_and_Family_Planning-final-1.pdf.

[15] Amanda J. Stevenson et al., *Effect of Removal of Planned Parenthood from the Texas Women's Health Program*, New Eng. J. Med. (Mar. 3, 2016), https://www.nejm.org/doi/full/10.1056/NEJMsa1511902.

[16] *Id.*

4

TXPP_1523334

## The Medicaid Terminations

As HHSC is aware, over the past four years Texas has sought to terminate the Planned Parenthood Providers from the Medicaid program not because of any failure to provide high-quality health care, but because of a widely-debunked video about Planned Parenthood Gulf Coast made by a discredited group determined to end abortion access, even using unlawful tactics to pursue their goal. Indeed, those responsible for the video are currently awaiting trial on multiple felony charges in California for actions related to the smear campaign.[17]

Following the release of the unlawfully-recorded videos, a Harris County grand jury looked at the allegations made against Planned Parenthood Gulf Coast and found no wrongdoing. Likewise, investigations in at least 13 states concluded that Planned Parenthood engaged in no wrongdoing,[18] and eight other states declined to investigate at all, citing lack of evidence. What's more, none of the many heavily partisan congressional investigations[19]—including a select panel created for that sole purpose—concluded that any Planned Parenthood provider violated any laws or ethical obligations.[20]

At any rate, two of the three Texas Planned Parenthood providers (Planned Parenthood Greater Texas and Planned Parenthood South Texas) do not even appear on the discredited video. Texas has nevertheless sought to terminate them from Medicaid on the basis that they share the name "Planned Parenthood"—despite the grave public health harms such termination would cause, particularly during the COVID-19 pandemic.

---

[17] Moreover, in November 2019, a jury empaneled by a federal district court found that the Center for Medical Progress (CMP) and those who manufactured the discredited campaign broke multiple state and federal laws in their efforts to discredit Planned Parenthood. The jury awarded Planned Parenthood both compensatory and punitive damages, totaling more than $2 million, for the injuries that CMP and its co-conspirators caused. The trial court made clear that the only people who engaged in wrongdoing were those behind the smear campaign, explaining that "[t]he 'evidence' defendants actually gathered and then published as a result of the conduct the jury found was illegal did not itself show any illegal conduct by Planned Parenthood or plaintiff affiliates." *See* Order Resolving Unfair Competition Claim & Entering Judgment, *Planned Parenthood Federation of America v. Center for Medical Progress*, Case No. 16-cv-00236 (N.D. Cal. Apr. 29, 2020), https://www.plannedparenthood.org/uploads/filer_public/69/55/69556c 3a-cc90-4017-b43794a8857562f1/1073_order_resolving_unfair_comp_claim_and_entering_judgment _1.pdf.

[18] Kate Sarna, *Growing List of Planned Parenthood Investigations Hyped by Conservative Media Clears Organization of Any Wrongdoing*, Media Matters (Aug. 24, 2015), https://www.mediamatters.org/researc h/2015/08/24/growing-list-of-planned-parenthood- investigation/205116.

[19] Emily Crockett, *Congress Has Spent 15 Months "Investigating" Planned Parenthood Using McCarthy-Like Tactics*, Vox (Dec. 7, 2016), https://www.vox.com/2016/4/29/11469044/congress-planned-parenthood-witch-hunt-fetal-tissue-scientists.

[20] Meredith Wadman, *Fact-Checking Congress's Fetal Tissue Report,* Science Magazine (Jan. 5, 2017), https://www.sciencemag.org/news/2017/01/fact-checking-congress-s-fetal-tissue-report.

5

TXPP_1523335

\* \* \*

For these reasons, in light of the five years that have passed since the claimed wrongdoing in the videos (which two of the three Planned Parenthood providers were not on) and the high-quality services the Planned Parenthood providers have provided to approximately 24,000 Medicaid patients since then, we ask that you allow us to remain in the Medicaid program so that our skilled clinicians can continue providing medical care to the most vulnerable Texans during this public health crisis.

In the alternative, at minimum, we respectfully request a six-month grace period to allow our patients to take care of urgent health needs during this crisis stage of this pandemic, and to allow us to help our patients attempt to find new providers willing to accept new patients insured through Medicaid. The well-being of patients is our top priority and we fear that abruptly discontinuing services will leave patients with nowhere else to turn during a pandemic that has pushed the capacity of our health care system to the brink. We would very much like to continue to serve these patients, but hope that, at a minimum, we can work with HHSC to establish a smooth transition period for the thousands of Texans we serve every year through the Medicaid program.

Respectfully,

Ken Lambrecht
President & CEO, Planned
Parenthood Greater Texas

Jeffrey Hons
President & CEO, Planned
Parenthood South Texas

Melaney Linton
President & CEO, Planned
Parenthood Gulf Coast

Cc:    Stephanie Stephens, Deputy Executive Commissioner Medicaid/CHIP
       Karen Ray, HHSC Chief Counsel
       Patrick Sweeten, Associate Deputy Attorney General for Special Litigation
       Adam Biggs, Special Litigation Counsel

6

App_052

# EXHIBIT D

TXPP_1523337

# HUSCH BLACKWELL

Michael R. Crowe
Partner

111 Congress Avenue, Suite 1400
Austin, TX  78701
Direct:  512.703.5737
Fax:      512.480-5041
michael.crowe@huschblackwell.com

December 15, 2020

*Via Certified Mail*
*Return Receipt Requested*

Texas Health and Human Services Commission
Office of Inspector General
Mail Code 1358
PO Box 85200
Austin, Texas 78708

> RE:    Planned Parenthood of Greater Texas, Planned Parenthood of Greater Texas
> Family Planning and Preventative Health Services, Planned Parenthood San Antonio,
> Planned Parenthood South Texas Surgical Center, Planned Parenthood Cameron County,
> Planned Parenthood Gulf Coast
> APPEAL OF TERMINATION

To Whom It May Concern:

Husch Blackwell, LLP (the "Firm") represents Planned Parenthood of Greater Texas, Planned Parenthood of Greater Texas Family Planning and Preventative Health Services, Planned Parenthood San Antonio, Planned Parenthood South Texas Surgical Center,  Planned Parenthood Cameron County, and Planned Parenthood Gulf Coast (collectively, the "Providers") in connection with a letter dated December 20, 2016, as well as a letter dated October 19, 2015, (together, the "Notices of Termination"), copies of which are attached) from the Texas Health and Human Services Commission Office of Inspector General ("OIG") purporting to terminate the enrollment of Providers from the Texas Medicaid program and Texas Provider Identification Numbers associated with them. The termination action was subsequently enjoined by a federal district court. Recently, the 5th Cir. reversed that preliminary injunction, and mandate from that order issued today.

If the OIG desires to continue the termination action described in the Notice of Termination, we presume it will issue required notice pursuant to HRC 32.034 and 1 TAC 371.1703(e) to effectuate the termination process that was never completed in 2016.

**HOWEVER, IN AN EXCESS OF CAUTION, TO THE EXTENT HHSC MAY BELIEVE THE 2016 NOTICE OF TERMINATION TO CONTINUE TO HAVE LEGAL EFFECT,**

HB: 4828-4150-7028.2

App_054

# HUSCH BLACKWELL

**THE PROVIDERS HEREBY REQUEST A FORMAL APPEAL OF THE TERMINATION.
The basis for the appeal is as follows:**

The Providers dispute that they committed any wrongful conduct and/or program violations described in the Notices of Termination. The Providers dispute that the facts alleged in the Notice of Termination actually occurred and/or that those facts, as applied to the laws and program requirements in question, support a conclusion that wrongful conduct and/or program violations occurred. In the alternative, the Providers dispute whether the facts, as applied to the laws and program requirements in question, support the termination, including but not limited to because the Providers dispute their termination for the conduct of "affiliated" Providers and further dispute the validity of any provision purporting to authorize such termination. In the alternative, the Providers, based on information and belief, assert that the OIG failed to comply with applicable laws necessary for it to impose the termination action.  Finally, the Providers dispute the lawfulness of effectuating this termination process, which was initiated in 2015 and 2016, in light of the current public health crisis and given that in the years since the allegations in the Notices of Termination Providers have provided high-quality Medicaid services without claim of wrongdoing by OIG.

All future communications relating to this matter should be directed to:

> Husch Blackwell LLP
> Attn:  Michael R. Crowe
> 111 Congress Ave., Ste. 1400
> Austin, Texas 78701
> Direct Phone No.:     512-703-5737
> Facsimile No.:           512-480-5041
> michael.crowe@huschblackwell.com

who will act as the lead attorney of the Firm on behalf of the Providers.

If you have any questions or comments regarding this matter, please feel free to contact the undersigned.

Sincerely,

MICHAEL R. CROWE

Encls.

cc:     Providers

Page 2 of 2

HB: 4828-4150-7028.2

App_055

TXPP_1523339



# OFFICE OF INSPECTOR GENERAL
TEXAS HEALTH & HUMAN SERVICES COMMISSION

STUART W. BOWEN, JR.
INSPECTOR GENERAL

December 20, 2016

***** **FINAL NOTICE OF TERMINATION OF ENROLLMENT** *****

*Via First Class Mail and CMRRR Nos. 7011 2970 0004 0129 1228, 7011 2970 0004 0129 1235, 7011 2970 0004 0129 1242, 7011 2970 0004 0129 1259, 7011 2970 0004 0129 1266 and 7011 2970 0004 0129 1273*

Planned Parenthood Gulf Coast
Registered Agent: Melaney Linton
4600 Gulf Freeway
Houston, Texas 77023-3548

Planned Parenthood of Greater Texas / Planned Parenthood of North Texas
Registered Agent: Kenneth Lambrecht
7424 Greenville Avenue, Suite 206
Dallas, Texas 75231-4534

Planned Parenthood San Antonio / Planned Parenthood South Texas Surgical Center / Planned Parenthood Association of Cameron and Willacy County
Registered Agent: Jeffrey Hons
2140 Babcock Road
San Antonio, Texas 78229-0000

Re:   Planned Parenthood Final Notice of Termination

Dear Provider:

## I. FINAL NOTICE OF TERMINATION

This notice is to inform you that the Texas Health and Human Services Commission's Office of Inspector General (HHSC-IG) is hereby terminating the enrollment of the following providers and associated Texas Provider Identification (TPI) numbers from the Texas Medicaid program: Planned Parenthood Gulf Coast, Planned Parenthood of Greater Texas, Planned Parenthood of North Texas, Planned Parenthood San Antonio, Planned Parenthood South Texas Surgical Center, and Planned Parenthood Association of Cameron and Willacy County (hereafter Planned Parenthood, you, or your). 1 Tex. Admin. Code § 371.1703(e) (2016). *See* Attachment A for list of TPI numbers. Because of the violations listed below, HHSC-IG finds that you are not qualified

---

App_056

TXPP_1523340

Planned Parenthood
Final Notice of Termination
December 20, 2016
Page **2** of **6**

to provide medical services in a professionally competent, safe, legal and ethical manner under the relevant provisions of state and federal law pertaining to Medicaid providers.

The basis for your termination and the termination of your affiliates stems from an extensive undercover video obtained by the Center for Medical Progress at the Planned Parenthood Gulf Freeway facility in April 2015, which contains evidence that Planned Parenthood violated state and federal law. The evidence arises from detailed discussions with the Planned Parenthood Gulf Coast's staff. In addition, the United States House of Representatives' Select Investigative Panel (House Investigative Panel) uncovered evidence consistent with and supportive of this termination.[1]

The unedited video footage indicates that Planned Parenthood follows a policy of agreeing to procure fetal tissue, potentially for valuable consideration, even if it means altering the timing or method of an abortion. These practices violate accepted medical standards, as reflected in federal and state law, and are Medicaid program violations that justify termination. *See* 42 U.S.C. § 289g-1; 42 U.S.C. § 289g-2; 1 Tex. Admin. Code § 371.1659(2) and (6); 1 Tex. Admin. Code § 371.1661; 1 Tex. Admin. Code § 371.1703(c)(6); 1 Tex. Admin. Code § 371.1605(a); 1 Tex. Admin. Code § 371.1603(g)(5) and (7). The HHSC-IG's Chief Medical Officer reviewed the video and concluded that your willingness to engage in these practices violates generally accepted medical standards, and thus you are not qualified to provide medical services in a professionally competent, safe, legal and ethical manner.

The video reveals numerous violations of generally accepted standards of medical practice. Examples include:

1. a history of deviating from accepted standards to procure samples that meet researcher's needs;

2. a history of permitting staff physicians to alter procedures to obtain targeted tissue samples needed for their specific outside research;

3. a willingness to convert normal pregnancies to the breech position to ensure researchers receive intact specimens;

4. an admission that "we get what we need to do to alter the standard of care where we are still maintaining patient safety, still maintaining efficiency in clinic operations, but we integrate research into it";

5. an admission that Planned Parenthood gets requests for "information from our study sponsor on what data they need that is not our standard of care," and that you provide what

---

[1] On October 7, 2015, the U.S. House of Representatives passed H. Res. 461, which created the Select Investigative Panel, a bipartisan panel, to conduct a full and complete investigation of the medical practices of abortion providers and the practices of entities that procure and transfer fetal tissue. On December 1, 2016, the Investigative Panel referred its evidence to the Texas Attorney General.

App_057

TXPP_1523341

Planned Parenthood
Final Notice of Termination
December 20, 2016
Page 3 of 6

is needed by creating a separate research protocol or template that can include medically unnecessary testing; and

6. a willingness to charge more than the costs incurred for procuring fetal tissue.

In addition, HHSC-IG has evidence that you engaged in misrepresentations about your activity related to fetal tissue procurements, as revealed by evidence provided by the House Investigative Panel. These misrepresentations show that you are not qualified to provide medical services in a professionally competent, safe, legal and ethical manner, and thus they support this termination. *See* 1 Tex. Admin. Code § 371.1661; 1 Tex. Penal Code § 37.08; 1 Tex. Admin. Code § 371.1603(g)(6); 42 U.S.C. § 1320a-7(b)(5); 42 U.S.C. § 1320a-7(b)(16); 1 Tex. Admin Code § 371.1651(15); 1 Tex. Admin. Code § 371.1655(7); 1 Tex. Admin. Code. § 371.1655(24); 1 Tex. Admin. Code § 371.1605(a).

In the *HHSC Medicaid Provider Agreement*, you agreed to comply with all of the requirements in Title 1, Part 15, Chapter 371 of the Texas Administrative Code, the Texas Medicaid Provider Procedures Manual, and all state and federal laws governing or regulating Medicaid. You further acknowledged in that agreement that failing to comply with any applicable law, rule, or policy of the Medicaid program or permitting circumstances that potentially threaten the health or safety of a client would be grounds for termination of your enrollment.

Your misconduct is directly related to whether you are qualified to provide medical services in a professionally competent, safe, legal and ethical manner. Your actions violate generally accepted medical standards, as reflected in state and federal law, and are Medicaid program violations that justify termination.

HHSC-IG rules provide that if you are affiliated with a provider that commits a program violation subjecting it to enrollment termination, then the affiliate is also subject to enrollment termination. *See* 1 Tex. Admin. Code §371.1703(c)(7); 1 Tex. Admin. Code §371.1605(a). Furthermore, the video and other evidence provide numerous indicia of affiliation, including:

1. common identifying information among affiliates;

2. individual providers working across affiliates;

3. a requirement that affiliates follow protocols and procedures prescribed by the Planned Parenthood Federation of America;

4. a requirement that affiliates report research studies to the Planned Parenthood Federation of America;

5. Planned Parenthood Federation of America provides for the legal review of research contracts;

6. Planned Parenthood Federation of America requires training for affiliates;

7. Planned Parenthood Federation of America provides certification of affiliates;

App_058

TXPP_1523342

Planned Parenthood
Final Notice of Termination
December 20, 2016
Page 4 of **6**

8. Planned Parenthood Federation of America centralizes the oversight, use, and review of research projects; and

9. Planned Parenthood affiliates may use research agreements at one affiliate to facilitate additional research at other affiliates.

## II. SCOPE OF TERMINATION

The termination of your enrollment means that:

1. Your contract with the Texas Medicaid program will be nullified on the effective date of the termination. 1 Tex. Admin. Code § 371.1703(g)(1);

2. The TPI Number(s) related to your contract will become ineffective on the effective date of the termination;

3. No items or services furnished under your TPI will be reimbursed by the Medicaid program, after your enrollment is terminated. 1 Tex. Admin. Code § 371.1703(g)(2);

4. You will be required to re-enroll in the Texas Medicaid program, if you wish to participate as a Texas Medicaid provider. 1 Tex. Admin. Code § 371.1703(g)(3);

5. Your enrollment or contract in the Medicare program may be subject to termination. 1 Tex. Admin. Code § 371.1703(g)(4);

6. Your enrollment or contract in the Medicaid program of any other state may be subject to termination. *Id*.; and

7. This termination will remain in effect until such time as you re-enroll and are approved to participate as a Texas Medicaid provider.

## III. APPEAL PROCESS

You may appeal this enrollment termination. In order to do so, **HHSC-IG must receive a written request from you asking for an administrative hearing before HHSC's appeals division on or before the 15th calendar day from the date you receive this notice.** 1 Tex. Admin. Code § 371.1703(f)(2).

All submissions, including your request for an administrative hearing, should be mailed to:

Texas Health and Human Services Commission
Office of Inspector General
Mail Code 1358
P.O. Box 85200
Austin, Texas 78708-5200

App_059

TXPP_1523343

Planned Parenthood
Final Notice of Termination
December 20, 2016
Page **5** of **6**

Pursuant to 1 Tex. Admin. Code §§ 371.1615(b)(2) and (4), any request for an administrative hearing must:

1. be sent by certified mail to the address specified above;

2. include a statement as to the specific issues, findings, and/or legal authority in the notice letter with which you disagree;

3. state the bases for your contention that the specific issues or findings and conclusions of HHSC-IG are incorrect;

4. be signed by you or your attorney; and

5. arrive at the address specified above on or before the 15th calendar day from the date you receive this Final Notice of Termination.

**IF HHSC-IG DOES NOT RECEIVE A WRITTEN RESPONSE TO THIS NOTICE WITHIN 15 CALENDAR DAYS FROM THE DATE YOU RECEIVE IT, YOUR FINAL NOTICE OF TERMINATION WILL BE UNAPPEALABLE.**

## IV. TERM OF ENROLLMENT TERMINATION

The effective date of this enrollment termination depends upon whether you choose to appeal:

- If you do not request a hearing as discussed above, the effective date of your enrollment termination will be the 30th calendar day following your receipt of this Final Notice of Termination. 1 Tex. Admin. Code §§ 371.1615(c), 371.1617(a)(1), 371.1703(g)(8); or

- If you request an administrative hearing, then the effective date will be the date the administrative law judge's decision to uphold your enrollment termination becomes final. 1 Tex. Admin. Code § 371.1703(g)(7).

This enrollment termination is permanent. If you want to participate as a provider in the Texas Medicaid program in the future, you will be required to submit a new provider enrollment application. 1 Tex. Admin. Code § 371.1703(g)(3).

Respectfully yours,

Stuart W. Bowen, Jr.
Inspector General

Attachment

App_060

TXPP_1523344

Planned Parenthood
Final Notice of Termination
December 20, 2016
Page **6** of **6**

Attachment A

These are the TPIs that Texas Medical Health Partnership reports as affiliated with Planned
Parenthood and which are believed to be active:
2164345-01, 2164360-01, 1269599-06, 1269599-07, 1269599-10, 1269599-11, 2187189-01,
2815037-01, 2815060-01, 1126104-02, 1126104-04, 1126104-06, 1126104-07, 1126104-08,
1126104-09, 1126104-14, 3035461-01, 0834095-01, 0834095-02, 0834095-04, 1126104-05,
1126104-10, 1126104-11, 1126104-12, 1122699-01, 1122699-06, 1272197-02, 1272197-03,
1272197-05, 1272197-07, 1272197-10, 1272197-12, 1364812-06, 1364812-13, 2999112-01,
2999112-02, 2999112-03, 2999112-05, 2999112-08, 2999112-09, 3147803-01, 3150385-01,
3150484-01, 3159402-01, 2100489-01, 2120669-01, 2121964-01, 2096414-01, 2103566-01,
2109696-01, 3353781-01, 1373391-01, 1373391-10, 1373391-04, 1373391-11, 1373391-12,
2866873-01

App_061

TXPP_1523345

# EXHIBIT E

TXPP_1523346



**TEXAS**
Health and Human
Services

**Texas Health and Human Services Commission**

**Cecile Erwin Young**
*Executive Commissioner*

January 4, 2021

Mr. Ken Lambrecht
President & CEO
Planned Parenthood Greater Texas
Via e-mail: Ken.Lambrecht@ppgt.org

Mr. Jeffrey Hons
President & CEO
Planned Parenthood South Texas
Via e-mail: Jeffrey.Hons@ppsouthtexas.org

Ms. Melaney Linton
President & CEO
Planned Parenthood Gulf Coast
*Via e-mail*: Melaney.Linton@ppgulfcoast.org

Re: Termination of Planned Parenthood Clinics from Texas Medicaid

Dear Mr. Lambrecht, Mr. Hons, and Ms. Linton:

The Texas Health and Human Services Commission received your letter dated
December 14, 2020, expressing your requests (1) to continue in the Medicaid
program, or in the alternative, (2) for your Medicaid patients to be granted a grace
period to find other providers.  Your request to continue in the Medicaid program is
denied, as the Fifth Circuit Court of Appeal's December 15, 2020, mandate vacated
the District Court's injunction against the termination of your clinics from the
Medicaid program.

Your alternative request for a grace period will be granted in part.  Your clinics may
no longer accept any new Medicaid clients.  There will be a 30-day grace period
(from the date of this letter, or until February 3, 2021) to ensure that current

App_063

Mr. Ken Lambrecht
Mr. Jeffrey Hons
Ms. Melaney Linton
January 4, 2021
Page 2

Medicaid clients receiving services at your clinics can be transitioned to new providers.

Your clients who are members of a Managed Care Organization (MCO) will be notified by their MCO of the process to transition to a new provider. If your clients have questions, please have them reach out to their MCO member services help line for assistance.  Clients who are not members of an MCO may search for a new provider on the TMHP website at: http://opl.tmhp.com/ProviderManager/AdvSearch.aspx?_ga=2.258477834.120404 8620.1609338635-1213096652.1609338635.

Sincerely,


Karen Ray
Chief Counsel

App_064

# EXHIBIT F

TXPP_1523349



# OFFICE OF INSPECTOR GENERAL

### TEXAS HEALTH & HUMAN SERVICES COMMISSION

SYLVIA HERNANDEZ KAUFFMAN
INSPECTOR GENERAL

January 4, 2021

**VIA CERTIFIED MAIL NO.: 7020 0640 0000 9309 6268
AND VIA FIRST CLASS MAIL
AND VIA ELECTRONIC MAIL:** Michael.Crowe@huschblackwell.com

Michael R. Crowe
Husch Blackwell LLP
111 Congress Ave., Ste. 1400
Austin, Texas 78701

> **Re:**   Planned Parenthood of Greater Texas, OIG Case No.
> 2020D04235
> Planned Parenthood of Greater Texas Family Planning and
> Preventative Health Services
> Planned Parenthood San Antonio, OIG Case No. 2020D04237
> Planned Parenthood South Texas Surgical Center, OIG Case No.
> 2020D04236
> Planned Parenthood Cameron County, OIG Case No. 2020D0439
> Planned Parenthood Gulf Coast, OIG Case No. 2020D04234
> APPEAL OF TERMINATION

Dear Mr. Crowe,

On December 21, 2020, we received your request for an appeal. However, your deadline to appeal has expired. Therefore, your request for an appeal is denied.

Sincerely,

Sylvia H. Kauffman

Sylvia Hernandez Kauffman
Inspector General

P. O. Box 85200, Austin, Texas  78708  •  (512) 491-2000

App_066

TXPP_1523350

# EXHIBIT G

TXPP_1523351

**All MCOs & DMOs: Termination of Planned Parenthood Clinics from Texas Medicaid**

**Background:**

As of January 4, 2020, Planned Parenthood of North Texas, Planned Parenthood of South Texas and Planned Parenthood Gulf Coast have been terminated as providers in Texas Medicaid. These providers have been notified in writing that they cannot accept any new Medicaid clients and that there will be a 30-day grace period (until February 3, 2021) provided to ensure that their current Medicaid clients can be transitioned to new providers. Please follow your normal procedures to transition these clients to new providers.

**Key Details:**

The payment denial code (PDC) for these providers is effective February 4, 2021. Claims with dates of service as of this date should be denied as the provider is not enrolled in Texas Medicaid. MCOs should update their systems to deny claims with a date of service after February 3rd. The PDC for these providers will be reflected on the master provider file.

**Contact:**

Please contact your MCCO monitoring team, with copy to Camisha Banks at camisha.banks@hhs.texas.gov, with question regarding this notice.

---

**All MCOs: Additional Monoclonal Antibody Therapy Procedure Codes Approved for COVID-19 Treatment**

**Background:**

Effective December 3, 2020, for dates of service on or after November 9, 2020, procedure codes Q0239 and M0239 have been added for Texas Medicaid.

Effective December 15, 2020, for dates of service on or after November 21, 2020, procedure codes Q0243 and M0243 have been added for Texas Medicaid.

**Key Details:**

On November 9, 2020, the FDA issued emergency use authorization of the monoclonal antibody therapy drug Bamlanivimab for treatment of mild-to-moderate COVID-19. Effective December 3, 2020, for dates of service on or after November 9, 2020, procedure codes Q0239 (Bamlanivimab) and M0239 (administration of Bamlanivimab) have been added for Texas Medicaid.

On November 21, 2020, the FDA issued emergency use authorization of the monoclonal antibody therapy drug Casirivimab and Imdevimab for treatment of mild-to-moderate COVID-19. Effective December 15, 2020, for dates of service on or after November 21, 2020, procedure codes Q0243 (Casirivimab and Imdevimab) and M0243 (administration of Casirivimab and Imdevimab) have been added for Texas Medicaid.

App_068

- Procedure codes Q0239 and Q0243 are informational only while being distributed to providers free of charge.
- Procedure codes M0239 and M0243 are a benefit for clients who are 12 years of age and older, weigh at least 40kg and restricted to diagnosis code U071.
- Procedure code M0239 and M0243 are a benefit for the following providers and places of service:

| | |
|---|---|
| Office | Physician, Physician Groups, Physician Assistant, Nurse Practitioner, Clinical Nurse Specialist |
| Outpatient Hospital | Hospital Providers |

Denied claims for procedure codes Q0239 and M0239 with dates of service on or after November 9, 2020 and denied claims for procedure codes Q0243 and M0243 with dates of service on or after November 21, 2020, must be automatically reprocessed for appropriate payment no later than March 5, 2021 and providers may receive an additional payment. MCOs should also waive the 95-day filing deadline for any claims that were not submitted prior to these codes being established. No interest is due to providers in either scenario.

***Note:*** *Providers are not required to appeal the claims unless they are denied for other reasons after the claims reprocessing is complete.*

**Resources**:

Medicare Monoclonal Antibody COVID-19 Infusion Program Instruction

**Contact:**

Suzanne.Lakin@hhsc.state.tx.us

App_069

# EXHIBIT H

TXPP_1523354

# HUSCH BLACKWELL

Michael R. Crowe
Partner

111 Congress Avenue, Suite 1400
Austin, TX 78701
Direct:  512.703.5737
Fax:      512.480-5041
michael.crowe@huschblackwell.com

January 19, 2021

VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED
  AND ELECTRONIC MAIL
Karen Ray
Chief Counsel
Texas Health and Human Services Commission
4900 N. Lamar
Austin, Texas 78751
Karen.ray@hhsc.state.tx.us

RE:    Planned Parenthood of Greater Texas, Planned Parenthood of Greater Texas
Family Planning and Preventative Health Services, Planned Parenthood San Antonio,
Planned Parenthood South Texas Surgical Center, Planned Parenthood Cameron County,
Planned Parenthood Gulf Coast
APPEAL OF TERMINATION

Dear Ms. Ray:

Husch Blackwell, LLP (the "Firm") represents Planned Parenthood of Greater Texas, Planned Parenthood of Greater Texas Family Planning and Preventative Health Services, Planned Parenthood San Antonio, Planned Parenthood South Texas Surgical Center,  Planned Parenthood Cameron County, and Planned Parenthood Gulf Coast (collectively, the "Providers") in connection with a letter dated January 4, 2021, from the Texas Health and Human Services Commission ("HHSC") purporting to terminate the enrollment of the Providers from the Texas Medicaid program.

If HHSC desires to engage in the termination action described in the Notice of Termination, we presume it will issue the required notice pursuant to Tex. Human Resources Code  §32.034 and 1 TAC §371.1703(e) to effectuate the termination process.

**However, in an excess of caution, to the extent HHSC or a court determinates that the January 4, 2021, letter constituted valid notice of termination, the Providers hereby request a formal appeal of the termination.  The basis for the appeal is as follows:**

The Providers dispute that they committed any wrongful conduct and/or program violations that would give rise to a termination from the Medicaid program. The Providers dispute that there

# HUSCH BLACKWELL

are any facts that actually occurred that would give rise to a termination and/or that those facts, as applied to the laws and program requirements in question, support a conclusion that wrongful conduct and/or program violations occurred. In the alternative, the Providers dispute whether the facts, as applied to the laws and program requirements in question, support the termination, including but not limited to because the Providers dispute their termination for the conduct of "affiliated" Providers and further dispute the validity of any provision purporting to authorize such termination. In the alternative, the Providers, based on information and belief, assert that HHSC failed to comply with applicable laws necessary for it to impose the termination action. The Providers dispute the lawfulness of HHSC effectuating this termination process. The Providers further assert that even if it were held otherwise lawful to terminate any or all of the Providers on the basis of facts or allegations as of the October 2015 or December 2016 letters, HHSC's January 4, 2021, decision to remove the Providers from the program is arbitrary and capricious because HHSC will bar thousands of Texans from their established provider, during the COVID-19 pandemic and at a time when patients insured through Medicaid face grave difficulties in obtaining timely access to healthcare,– especially in light of the five years of care that Providers have provided to tens of thousands of Medicaid patients without incident since January of 2017.

If you have any questions or comments regarding this matter, please feel free to contact the undersigned.

Sincerely,

MICHAEL R. CROWE

cc:     Providers

Page 2 of 2

# EXHIBIT I

TXPP_1523357

# HUSCH BLACKWELL

Michael R. Crowe
Partner

111 Congress Avenue, Suite 1400
Austin, TX 78701
Direct: 512.703.5737
Fax: 512.479.1101
michael.crowe@huschblackwell.com

January 29, 2021

VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED
  AND ELECTRONIC MAIL
Karen Ray
Chief Counsel
Texas Health and Human Services Commission
4900 N. Lamar
Austin, Texas 78751
Karen.ray@hhsc.state.tx.us

Re:  Termination of Planned Parenthood Clinics from Texas Medicaid:

Dear Ms. Ray:

I hope this finds you well. I am writing to follow up on my letter of January 19, 2021, a copy of
which is attached. Neither I nor my clients (the Planned Parenthood Providers) have heard back
from Texas Health and Human Services Commission ("HHSC") regarding the issues raised in my
letter. Please know that if there is no response from HHSC to the January 19 letter on or before
February 1, 2021, we will assume that neither HHSC nor the Office of Inspector General will be
sending the Planned Parenthood Providers a termination notice pursuant to Tex. Human Resources
Code §32.034, and its implementing regulation, 1 Tex. Admin. Code § 371.1703(e), or otherwise
docketing an administrative hearing.

If you have any questions or comments regarding this issue, please feel free to contact me at any
time.

Sincerely,

Michael R. Crowe

Enc.

Cc:     Providers

# HUSCH BLACKWELL

Michael R. Crowe
Partner

111 Congress Avenue, Suite 1400
Austin, TX 78701
Direct: 512.703.5737
Fax:    512.480-5041
michael.crowe@huschblackwell.com

January 19, 2021

VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED
 AND ELECTRONIC MAIL
Karen Ray
Chief Counsel
Texas Health and Human Services Commission
4900 N. Lamar
Austin, Texas 78751
Karen.ray@hhsc.state.tx.us

>  RE:   Planned Parenthood of Greater Texas, Planned Parenthood of Greater Texas
>  Family Planning and Preventative Health Services, Planned Parenthood San Antonio,
>  Planned Parenthood South Texas Surgical Center, Planned Parenthood Cameron County,
>  Planned Parenthood Gulf Coast
>  APPEAL OF TERMINATION

Dear Ms. Ray:

Husch Blackwell, LLP (the "Firm") represents Planned Parenthood of Greater Texas, Planned Parenthood of Greater Texas Family Planning and Preventative Health Services, Planned Parenthood San Antonio, Planned Parenthood South Texas Surgical Center, Planned Parenthood Cameron County, and Planned Parenthood Gulf Coast (collectively, the "Providers") in connection with a letter dated January 4, 2021, from the Texas Health and Human Services Commission ("HHSC") purporting to terminate the enrollment of the Providers from the Texas Medicaid program.

If HHSC desires to engage in the termination action described in the Notice of Termination, we presume it will issue the required notice pursuant to Tex. Human Resources Code §32.034 and 1 TAC §371.1703(e) to effectuate the termination process.

**However, in an excess of caution, to the extent HHSC or a court determinates that the January 4, 2021, letter constituted valid notice of termination, the Providers hereby request a formal appeal of the termination. The basis for the appeal is as follows:**

The Providers dispute that they committed any wrongful conduct and/or program violations that would give rise to a termination from the Medicaid program. The Providers dispute that there

HB: 4843-4394-3128.2

App_075

# HUSCH BLACKWELL

are any facts that actually occurred that would give rise to a termination and/or that those facts, as applied to the laws and program requirements in question, support a conclusion that wrongful conduct and/or program violations occurred. In the alternative, the Providers dispute whether the facts, as applied to the laws and program requirements in question, support the termination, including but not limited to because the Providers dispute their termination for the conduct of "affiliated" Providers and further dispute the validity of any provision purporting to authorize such termination. In the alternative, the Providers, based on information and belief, assert that HHSC failed to comply with applicable laws necessary for it to impose the termination action.   The Providers dispute the lawfulness of HHSC effectuating this termination process. The Providers further assert that even if it were held otherwise lawful to terminate any or all of the Providers on the basis of facts or allegations as of the October 2015 or December 2016 letters, HHSC's January 4, 2021, decision to remove the Providers from the program is arbitrary and capricious because HHSC will bar thousands of Texans from their established provider, during the COVID-19 pandemic and at a time when patients insured through Medicaid face grave difficulties in obtaining timely access to healthcare,– especially in light of the five years of care that Providers have provided to tens of thousands of Medicaid patients without incident since January of 2017.

If you have any questions or comments regarding this matter, please feel free to contact the undersigned.

Sincerely,

MICHAEL R. CROWE

cc:     Providers

Page 2 of 2

# EXHIBIT J

TXPP_1523361



**TEXAS**
Health and Human
Services

**Texas Health and Human Services Commission**

**Cecile Erwin Young**
*Executive Commissioner*

February 1, 2021

VIA CERTIFIED MAIL, RECEIPT REQUESTED & ELECTRONIC MAIL

Michael R. Crowe
Husch Blackwell
111 Congress Avenue, Ste 1400
Austin, TX 78701
michael.crowe@huschblackwell.com

Dear Mr. Crowe,

This letter is in response to your letters dated January 19, 2021 and January 29, 2021.

The Office of Inspector General (OIG) issued Planned Parenthood a final notice of termination in December 2016. The final notice stated that if OIG did not receive a written request for an administrative hearing within 15 calendar days from the date of receipt, the final notice of termination would become unappealable. 1 Tex. Admin. Code § 371.1703(f)(2). Planned Parenthood failed to request an administrative hearing; therefore, the termination became final 30 days after receipt of the notice, in January 2017.[1] *Id.* § 371.1617(a)(1).

Planned Parenthood elected not to appeal the administrative matter and instead pursued its claims in federal court. The federal lawsuit did not alter or extend any of the administrative deadlines.

Sincerely,

Karen Ray
Chief Counsel

_____

[1] Planned Parenthood's Application for Temporary Restraining Order and Preliminary Injunction filed in federal court on January 4, 2017, included affidavits that three registered agents received the final notice of termination on different dates but all on or before December 28, 2016.

P.O. Box 13247 • Austin, Texas 78711-3247 • 512-424-6500 • *hhs.texas.gov*

App_078

TXPP_1523362

# EXHIBIT K

TXPP_1523363

CAUSE NO. _____

| | | |
|---|---|---|
| IN RE: | § | IN THE DISTRICT COURT OF |
| | § | |
| PLANNED PARENTHOOD OF GREATER | § | |
| TEXAS FAMILY PLANNING AND | § | |
| PREVENTATIVE HEALTH SERVICES, INC., | § | |
| PLANNED PARENTHOOD OF GREATER | § | |
| TEXAS, INC., PLANNED PARENTHOOD SAN | § | |
| ANTONIO, PLANNED PARENTHOOD | § | TRAVIS COUNTY, TEXAS |
| CAMERON COUNTY, PLANNED | § | |
| PARENTHOOD SOUTH TEXAS SURGICAL | § | |
| CENTER, and PLANNED PARENTHOOD | § | |
| GULF COAST, | § | |
| | § | |
| *Relators.* | § | _____ JUDICIAL DISTRICT |

### DECLARATION OF JEFFREY HONS IN SUPPORT OF RELATORS' ORIGINAL PETITION FOR WRIT OF MANDAMUS, APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY MANDATORY INJUNCTION, AND PERMANENT MANDATORY INJUNCTION

"I, Jeffrey Hons, declare the following:

1.      I am President and CEO of Relator Planned Parenthood South Texas, which is the sole member of three controlled subsidiaries that provide Medicaid services to Texas patients: Planned Parenthood San Antonio, Planned Parenthood Cameron County, and Planned Parenthood South Texas Surgical Center. (For simplicity, I will refer to these subsidiaries, collectively, as "PPST.") I am ultimately responsible for the leadership and management of these organizations, and therefore am familiar with our operations and finances, including the services we provide and the communities we serve. I submit this declaration in support of Relators' Original Petition for Writ of Mandamus, Application for Temporary Restraining Order, Temporary Mandatory Injunction, and Permanent Mandatory Injunction.

2.      PPST, a not-for-profit organization, is headquartered in San Antonio. PPST operates eight health centers in Texas that provide services through the Medicaid program. These

App_080

services include a range of family planning and other preventive health services, including physical exams, contraception and contraceptive counseling, screening for breast cancer, screening and treatment for cervical cancer, screening for sexually transmitted infections ("STIs"), pregnancy testing and counseling, and certain procedures including biopsies and colposcopies.

3. Planned Parenthood South Texas Surgical Center currently provides abortions at two health centers and one ambulatory surgical center. Texas does not pay for abortions through Medicaid except in extremely narrow circumstances.

4. Starting in 2015 and continuing in 2016, the Texas Health and Human Services Commission ("HHSC") sought to terminate PPST and other Planned Parenthood affiliates (together, "Providers") from participation in the Medicaid program in response to an illegally filmed and thoroughly discredited video produced by a radical anti-abortion group (despite that the video related to a different Planned Parenthood organization that is not part of PPST). Because an injunction blocked that termination from taking effect, however, PPST was able to continue to provide high-quality Medicaid care in Texas. That injunction was vacated in December 2020.

5. In calendar year 2020, PPST provided over 2750 visits to over 1800 Medicaid patients, including over 3050 STI tests and over 2675 units of contraception. In calendar year 2019, PPST provided 2177 visits to 1519 Medicaid patients, including 2529 STI tests and 2146 units of contraception. In calendar year 2018, PPST provided 2216 visits to 1571 Medicaid patients, including 2595 STI tests and 2746 units of contraception.

6. Before the injunction was vacated, Providers wrote a letter to the HHSC Commissioner requesting that—given the current public health crisis presented by the COVID-19 pandemic and the critical role Providers play in Texas's public health safety net—HHSC permit Providers to continue to participate in the Medicaid program or, in the alternative, provide a grace

2

TXPP_1523365

period of at least six months to allow Providers to continue serving patients during the pandemic and to assist patients in transitioning their care to other providers.

7.        HHSC responded to Providers on January 4, 2021, informing them that HHSC would allow Providers to continue to provide services through the Medicaid program through February 3, 2021, after which they would be terminated from the program.

8.        Unless PPST obtains a temporary restraining order or temporary mandatory injunction preventing the Medicaid termination from taking effect until the Court rules on Relators' request for a writ of mandamus directing HHSC and the OIG to issue a proper notice of termination, as of February 4, 2021, patients will no longer be able to obtain Medicaid Services at PPST. If Medicaid patients are not able to obtain care at PPST they will be immediately and irreparably harmed, as they will be forced to end their established relationship with health care providers at PPST's health centers and attempt to obtain care elsewhere—a particular challenge at a time when many Texas health care providers are unable or unwilling to accept new Medicaid patients.[1] These patients will be prevented from obtaining care from the health care provider of their choice, if they are able to obtain replacement care at all. During the COVID-19 public health crisis, it is more important than ever that patients have access to uninterrupted health care. By cutting off PPST's participation in the Medicaid program, HHSC threatens the most vulnerable Texans' access to basic medical care during a pandemic.

9.        Terminating PPST from the Medicaid program will also cause immediate and irreparable damage to PPST itself. It is part of PPST's mission to serve as a safety-net provider for

---

[1] Shannon Najmabadi, *Low-income Texans struggle to find new doctors as state officials boot Planned Parenthood off Medicaid*, The Texas Tribune (Jan. 19, 2021), https://www.texastribune.org/2021/01/19/texas-planned-parenthood-medicaid/ (citing statement by the president of the Texas Association of Obstetricians and Gynecologists that a large number of providers listed as participating in the Medicaid program online may not be taking new patients).

3

App_082

TXPP_1523366

Texas patients, particularly patients with urgent health needs during this crisis stage of the pandemic, and preventing PPST from providing that care by terminating it from Medicaid will directly undermine PPST's mission. At the very least, HHSC should allow sufficient time for PPST's patients to attempt to find new providers willing to accept new patients insured through Medicaid. Discontinuing services on February 4, 2021 will abruptly cut off PPST's doctor-patient relationship, leaving our patients without a provider or any time to identify a new provider and secure an appointment for continued care with the new provider, if indeed this can be accomplished at all.

10.     Though PPST has provided its patients with information to assist them in locating a new Medicaid provider in anticipation of the February 4, 2021 termination, I know that for many it will be difficult or impossible for them to locate an alternate Medicaid provider who is able to accept new patients. We know from patients that they have had trouble finding providers accepting new patients, especially for the provision of contraceptives. The Texas Tribune has reported that Texas has a scarcity of providers accepting new Medicaid patients due to the state's low reimbursement rates, and that even providers who are accepting new Medicaid patients may not be able to see patients for two or three months or more, a delay made even worse by the COVID-19 pandemic.[2] And due to years of underfunding, federally funded Title X clinics lack the capacity to absorb thousands of new clients.[3] Given these obstacles, the thirty-day period that HHSC allotted for patients to connect with new sources of care is woefully insufficient.

11.     I am concerned that after February 4, our Medicaid patients will experience the same drastic drop-off in access to basic health services that patients experienced in 2013, when

---

[2] *Id.*
[3] *Id.*

TXPP_1523367

Texas terminated Planned Parenthood affiliates from the Women's Health Program: according to a study in the *New England Journal of Medicine*,[4] researchers observed a 35% drop in Texas women accessing long-acting reversible contraceptives, the most effective methods of birth control, and a 27% increase in Medicaid-covered childbirths among women who had previously been able to access injectable contraceptives through the program.[5] Overall, without Planned Parenthood affiliates' participation, the state health program served nearly 40% fewer patients.[6]

12.     Moreover, even if PPST is eventually able to resume providing Medicaid services due to judicial relief or otherwise, PPST patients who were forced to seek care elsewhere may not realize that they can return to PPST, causing them to forgo care altogether, or to obtain care elsewhere even though they would prefer to obtain care from PPST. In turn, PPST will lose reimbursements for services it would otherwise have provided.

13.     In sum, terminating PPST from Texas's Medicaid program on February 4, 2021 will exacerbate what is already a public health disaster.

---

[4] Amanda J. Stevenson et al., *Effect of Removal of Planned Parenthood from the Texas Women's Health Program*, 374 N. Engl. J. Med. 853-860 (March 3, 2016), https://www.nejm.org/doi/full/10.1056/NEJMsa1511902.

[5] Mary Tuma, *The Five-Year Campaign to Take Away Health Care From Texans*, Rewire News Group (Jan. 25, 2021), https://rewirenewsgroup.com/article/2021/01/25/the-five-year-campaign-to-take-away-health-care-from-texans/.

[6] *Id.*

5

TXPP_1523368

My name is Jeffrey **Paul** Hons. My date of birth is **March 11, 1965**. My address is **2140 Babcock Road**, San Antonio, TX **78229**, USA.

I declare under penalty of perjury that the foregoing is true and correct."

Executed in **Nueces** County, State of **Texas**, on the **3rd** day of February, 2021.

_Jeffrey Hons_
Jeffrey Hons (Feb 3, 2021 08:15 CST)

Jeffrey Hons, Declarant

6

App_085

# EXHIBIT L

TXPP_1523370

**CAUSE NO. _____**

| | | |
|---|---|---|
| IN RE: | § | IN THE DISTRICT COURT OF |
| | § | |
| PLANNED PARENTHOOD OF GREATER | § | |
| TEXAS FAMILY PLANNING AND | § | |
| PREVENTATIVE HEALTH SERVICES, INC., | § | |
| PLANNED PARENTHOOD OF GREATER | § | |
| TEXAS, INC., PLANNED PARENTHOOD SAN | § | |
| ANTONIO, PLANNED PARENTHOOD | § | TRAVIS COUNTY, TEXAS |
| CAMERON COUNTY, PLANNED | § | |
| PARENTHOOD SOUTH TEXAS SURGICAL | § | |
| CENTER, and PLANNED PARENTHOOD | § | |
| GULF COAST, | § | |
| | § | |
| *Relators*. | § | _____ JUDICIAL DISTRICT |

## DECLARATION OF KEN LAMBRECHT IN SUPPORT OF RELATORS' ORIGINAL PETITION FOR WRIT OF MANDAMUS, APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY MANDATORY INJUNCTION, AND PERMANENT MANDATORY INJUNCTION

"I, Ken Lambrecht, declare the following:

1.      I am President and CEO of Relator Planned Parenthood of Greater Texas, Inc., as well as of its related entity, Planned Parenthood of Greater Texas Family Planning and Preventative Health Services. For the sake of simplicity I will refer to both collectively as "PPGT." I am responsible for the management of these organizations and therefore am familiar with our operations and finances, including the services we provide and the communities we serve. I submit this declaration in support of Relators' Original Petition for Writ of Mandamus, Application for Temporary Restraining Order, Temporary Mandatory Injunction, and Permanent Mandatory Injunction.

2.      PPGT is a Texas not-for-profit corporation headquartered in Dallas. PPGT and its predecessor organizations have provided Medicaid care in Texas for decades. We provide family planning services and other preventative care to Medicaid beneficiaries at seventeen health centers

App_087

in Texas, offering a range of family planning and other health services including physical exams, contraception (including long-acting reversible contraception ("LARCs")) and contraceptive counseling, clinical breast exams, screening and treatment for cervical cancer, testing for certain sexually transmitted infections ("STIs"), pregnancy testing and counseling, and certain procedures such as biopsies and colposcopies. Patients insured through Medicaid choose PPGT because of its specialization in family planning, evidence-based practices, and up-to-date technology, and because PPGT is known as a provider of high-quality, non-judgmental, culturally sensitive medical care.

3.      A related entity of PPGT, PPGT Surgical Health Services, provides abortion at five health centers in Texas. Texas does not pay for abortions through Medicaid except in extremely narrow circumstances.

4.      The Texas Health and Human Services Commission ("HHSC") notified PPGT on January 4, 2021, that it intends to terminate PPGT from the Medicaid program effective February 4, 2021. Unless enjoined, this termination will prevent PPGT from providing basic and preventative health care services through the Medicaid program to the over 3000 Medicaid beneficiaries who rely on us each year for family planning and other basic care, thereby irreparably harming those patients as well as PPGT itself.

5.      HHSC first sought to terminate PPGT and other Planned Parenthood affiliates (together, "Providers") from participation in the Medicaid program in 2015, in response to a now-debunked video produced by a radical anti-abortion group that baselessly accused an affiliate other than PPGT of wrongdoing. Because an injunction blocked that termination from taking effect, however, PPGT was able to continue to provide high-quality care to Texans insured through Medicaid.  That injunction was vacated in December 2020.

TXPP_1523372

6.      In calendar year 2018, PPGT provided over 5000 healthcare visits to 2885 Medicaid beneficiaries, including 1500 well-woman visits, 1800 STI/HIV tests, and 3454 units of contraception. In calendar year 2019, PPGT provided over 4400 healthcare visits to 2621 Medicaid beneficiaries, including over 700 well-woman visits, 1200 STI/HIV tests, and 3101 units of contraception. In calendar year 2020, PPGT provided over 3630 healthcare visits to 2159 Medicaid beneficiaries, including 640 STI/HIV tests and 2374 units of contraception.

7.      In anticipation of the injunction being vacated, and given the COVID-19 public health crisis and Providers' role as safety-net providers for Texas patients hit hardest by the pandemic, Providers wrote a letter to the HHSC Commissioner requesting that HHSC allow Providers to remain in the Medicaid program. Providers alternatively asked HHSC to provide a grace period of at least six months so that Providers could continue serving patients during the pandemic and assist patients in finding other Medicaid providers.

8.      HHSC responded to Providers on January 4, 2021, informing them that HHSC would allow Providers to continue to provide services through the Medicaid program through February 3, 2021, after which they would be terminated from the program.

9.      If PPGT is forced to stop providing Medicaid services services for thousands of Texas Medicaid beneficiaries will be disrupted, depriving these patients of continuity of care as well as access to their chosen provider.

10.     Medicaid patients are extremely vulnerable to begin with, even without this additional hardship. Texas has some of the most stringent Medicaid requirements in the country: in addition to having a low income, an individual must also possess a special characteristic, such as having dependent children or a disability that keeps them from working, to be eligible for Medicaid. And the income eligibility requirements are strikingly low: for example, a single woman

3

App_089

TXPP_1523373

with a dependent child qualifies for Medicaid only if she has a monthly income of under $196, well below the federal poverty guideline.[1] Texas Medicaid patients therefore already face severe obstacles in accessing health care. These are the patients whose care the February 4 termination will disrupt.

11.     Moreover, if HHSC succeeds in excluding PPGT and other Providers from Medicaid and those patients are no longer able to obtain care at PPGT, many patients may have a hard time finding the services they need at all (let alone from their preferred provider). In part because of low reimbursement rates and onerous reimbursement policies, Texas suffers from a shortage of willing Medicaid providers generally. In recent years, according to a survey by the Texas Medical Association,[2] the provider network available to Texas Medicaid patients has declined to just over 40% of practicing physicians and only 30% of obstetrician-gynecologists.[3] This shortage is a particular problem for family planning services. The need for publicly supported family planning services is great in Texas, which regularly ranks among the worst states for reproductive care.

12.     Other Medicaid providers are already stretched thin, with some not taking any non-pregnant Medicaid patients and others having long wait-times. Many providers offer more limited services than PPGT and other Planned Parenthood affiliates; for example, they do not offer LARCs, which are the most effective forms of birth control, or lifesaving cancer screening procedures, such

---

[1] Tex. Health and Hum. Servs., *Medicaid for Parents & Caretakers*, https://hhs.texas.gov/services/health/medicaid-chip/programs-services/children-families/medicaid-parents-caretakers (last visited Feb. 2, 2021).

[2] Texas Medical Association, *Survey of Texas Physicians 2016*, available at https://www.texmed.org/uploadedFiles/Current/2016_Advocacy/2016_Physician_Survey_Findings.pdf.

[3] Shannon Najmabadi, *Low-income Texans struggle to find new doctors as state officials boot Planned Parenthood off Medicaid*, The Texas Tribune (Jan. 19, 2021), https://www.texastribune.org/2021/01/19/texas-planned-parenthood-medicaid/.

4

TXPP_1523374

as colposcopies. Indeed, other Medicaid providers sometimes refer their patients to our health centers for those services.

13.     If PPGT is forced to stop providing care in the Medicaid program, this situation will worsen. I fear the remaining providers will be simply unable to absorb our patients, leaving those patients without access to critical medical services. During the COVID-19 public health crisis, it is particularly crucial that patients have uninterrupted access to basic health care. But when people cannot obtain Medicaid coverage for their health care or are unable to see known, trusted providers, they may simply forgo critical health care altogether.

14.     Terminating PPGT from the Medicaid program will also cause immediate and irreparable damage to PPGT itself. Turning away Medicaid patients fundamentally defeats the core of PPGT's mission: to be there for underserved women and men who need our help staying healthy and planning their families and future. At the very least, PPGT should be allowed to help our patients find alternate providers of Medicaid-covered care. Discontinuing services on February 4, 2021 will abruptly cut off PPGT's efforts to assist our patients in this way.

15.     Finally, the February 4 termination threatens to permanently alienate PPGT's patients from PPGT, even if PPGT is eventually able to resume providing Medicaid services at some point in the future. Once patients have stopped obtaining care from PPGT, they may have no way of knowing when PPGT is once again an option for them, leading them to continue to seek care elsewhere even if they prefer to obtain it at PPGT, or to forgo care altogether if they have not been able to find other acceptable alternatives. In turn, PPGT will suffer losses in the form of reimbursements it would otherwise have received had these patients remained in PPGT's care.

16.     Terminating PPGT from Texas's Medicaid program on February 4, 2021 will cause serious, irreparable harm to PPGT and its patients at a time when access to quality health

TXPP_1523375

care is more important than ever.

6

App_092

TXPP_1523376

My name is Ken _____ Lambrecht. My date of birth is Nov. 10, 1970.

My address is 7424 Greenville Ave #206 Dallas TX 75231, USA.

I declare under penalty of perjury that the foregoing is true and correct."

Executed in Travis County, State of TX, on the 2nd day of February, 2021.

Ken Lambrecht
Ken Lambrecht, Declarant

App_093

# EXHIBIT M

TXPP_1523378

CAUSE NO. _____

| | | |
|---|---|---|
| IN RE: | § | IN THE DISTRICT COURT OF |
| | § | |
| PLANNED PARENTHOOD OF GREATER | § | |
| TEXAS FAMILY PLANNING AND | § | |
| PREVENTATIVE HEALTH SERVICES, INC., | § | |
| PLANNED PARENTHOOD OF GREATER | § | |
| TEXAS, INC., PLANNED PARENTHOOD SAN | § | |
| ANTONIO, PLANNED PARENTHOOD | § | TRAVIS COUNTY, TEXAS |
| CAMERON COUNTY, PLANNED | § | |
| PARENTHOOD SOUTH TEXAS SURGICAL | § | |
| CENTER, and PLANNED PARENTHOOD | § | |
| GULF COAST, | § | |
| | § | |
| *Relators.* | § | _____ JUDICIAL DISTRICT |

## DECLARATION OF MELANEY LINTON IN SUPPORT OF RELATORS' ORIGINAL PETITION FOR WRIT OF MANDAMUS, APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY MANDATORY INJUNCTION, AND PERMANENT MANDATORY INJUNCTION

Melaney Linton declares the following:

1.      I am President and CEO of Plaintiff Planned Parenthood Gulf Coast, Inc. ("PPGC"). I am responsible for the management of PPGC and therefore am familiar with our operations and finances, including the services we provide and the communities we serve. I submit this declaration in support of Relators' Original Petition for Writ of Mandamus, Application for Temporary Restraining Order, Temporary Mandatory Injunction, and Permanent Mandatory Injunction.

2.      PPGC is a Texas not-for-profit corporation headquartered in Houston. We operate six health centers in the Houston Metropolitan area that provide services through the Medicaid program. These health centers provide a range of family planning services and other preventive care, including physical exams, contraception and contraceptive counseling (including long-acting reversible contraception or "LARCs"), screening for breast cancer, screening and treatment for

App_095

cervical cancer, screening and treatment for sexually transmitted infections ("STIs"), pregnancy testing and counseling, and certain procedures, including biopsies and colposcopy.[1] PPGC has a facilities and services agreement with a separate organization, Planned Parenthood Center for Choice, Inc. ("PPCFC"), which provides abortion services at two health centers.

3.      Starting in 2015 and continuing in 2016, the Texas Health and Human Services Commission ("HHSC") sought to terminate PPGC and other Planned Parenthood affiliates (together, "Providers") from participation in the Medicaid program in response to thoroughly discredited accusations of wrongdoing from a radical anti-abortion group. Due to an injunction blocking that termination from taking effect, however, PPGC has been able to continue to provide high-quality Medicaid care in Texas.  That injunction was vacated on appeal in December 2020.

4.      In calendar year 2018, PPGC provided over 7500 visits to over 4000 patients enrolled in the Texas Medicaid program, including over 7900 STI tests (including over 1200 HIV screenings). In calendar year 2019, PPGC provided over 6800 visits to over 3900 patients enrolled in the Texas Medicaid program, including over 8700 STI tests (including over 1900 HIV screenings). PPGC provided care to 3000 Medicaid patients in calendar year 2020.

5.      On December 14, 2020, knowing the injunction would shortly be vacated, Providers wrote a letter to the HHSC Commissioner requesting that, given the COVID-19 public health crisis, HHSC permit Providers to continue to participate in the Medicaid program or, in the alternative, provide a grace period of at least six months to allow Providers to continue serving patients during the pandemic and to assist patients in transitioning their care to other providers.

6.      HHSC responded to Providers on January 4, 2021, informing them that HHSC

---

[1] Colposcopy is a medical diagnostic procedure to examine the cervix as well as the vagina and vulva, and is used to detect pre-malignant and malignant lesions.

App_096

TXPP_1523380

would allow Providers to continue to provide services through the Medicaid program through February 3, 2021, after which they would be terminated from the program.

7.     Given this January 4, 2021 letter, unless PPGC obtains a temporary restraining order or temporary mandatory injunction preventing the Medicaid termination from taking effect, as of February 4, 2021 PPGC will no longer be able to provide basic and preventive health care services through the Medicaid program to the 3000-plus Texas women and men who depend on us for these services each year, thereby irreparably harming those patients as well as PPGC's own mission.

8.     Many of our Medicaid patients will find it much more difficult—or perhaps impossible—to obtain elsewhere the medical services we provide to them. The pool of providers who participate in Medicaid in Texas is already limited; I do not believe that there are adequate alternative providers to provide care to this many additional people, and I do not believe that the few alternative providers will be able to deliver services as promptly or effectively as our health centers do. Other Medicaid providers are already stretched thin, even with PPGC providing care. If PPGC and other Planned Parenthood Medicaid providers in Texas are forced to stop providing care to thousands of Medicaid patients each year, I fear the remaining providers will be simply unable to absorb these patients, leaving them without access to critical medical services or with increased wait times at the remaining Medicaid provider sites. Already, we see Medicaid patients who are experiencing urgent symptoms (such as bleeding, irregular discharge, or pelvic pain) but were told by their regular provider that they could not have an appointment for months.

9.     One patient who previously received care through Medicaid at PPGC has publicly shared her story of attempting to find a new Medicaid provider upon learning of PPGC's imminent

3

App_097

TXPP_1523381

Medicaid termination.[2] A mother of two, this patient requires regular screenings as a result of human papilloma virus ("HPV"), a sexually transmitted disease that can lead to cervical cancer. When the patient's abusive partner cut her off of her private health insurance plan, the patient enrolled in Medicaid.[3] She first came to PPGC because it was the only place that did not require her to wait months for a highly time-sensitive screening appointment. Indeed, the patient has found Planned Parenthood health centers to be the only sites where she is able to access same-day appointments as a Medicaid patient.[4]

10.     Now that PPGC and other Planned Parenthood affiliates face the February 4, 2021 termination from the Medicaid program, the patient has been calling other providers in an attempt to find a new provider of routine, time-sensitive screenings. But the providers she has spoken to have told her she would need to wait up to six months for the next available appointment.[5] Given the high-risk nature of the patient's HPV and the need for regular checkups, this delay is not only frustrating, but dangerous.

11.     Even for patients without such urgent treatment needs, the COVID-19 public health crisis has made it more vital than ever for patients to have prompt access to high-quality health care. This is especially so for Black and Latina Texans, who have been hit disproportionately hard by the pandemic.[6]

---

[2] Shannon Najmabadi, *Low-income Texans struggle to find new doctors as state officials boot Planned Parenthood off Medicaid*, The Texas Tribune (Jan. 19, 2021), https://www.texastribune.org/2021/01/19/texas-planned-parenthood-medicaid/.
[3] Mary Tuma, *The Five-Year Campaign to Take Away Health Care From Texans*, Rewire News Group (Jan. 25, 2021), https://rewirenewsgroup.com/article/2021/01/25/the-five-year-campaign-to-take-away-health-care-from-texans/.
[4] Najmabadi, *supra* note 1.
[5] *Id.*
[6] Emma Platoff & Carla Astudillo, *Across Texas and the Nation, the Novel Coronavirus is Deadlier for People of Color*, Tex. Trib. (July 30, 2020), https://www.texastribune.org/2020/07/30/texas-coronavirus-deaths/.

4

TXPP_1523382

12.     Additionally, if PPGC can no longer provide care to Medicaid patients, one of the most underserved populations in Texas, it will cause immediate harm to PPGC's mission, which is to protect and improve the health of underserved individuals, and to enable our patients to plan their families and protect their health and well-being. At the very least, PPGC should be allowed sufficient time to help our patients attempt to find new providers willing to accept new patients insured through Medicaid. Terminating PPGC from Medicaid on February 4, 2021 will abruptly cut off PPGC's efforts to help our patients with this process.

13.     PPGC has been contacting other Texas Medicaid providers in an attempt to find new sources of care for our Medicaid patients. Unfortunately, thus far our providers and staff have had significant trouble finding Medicaid providers who are able to see patients within a reasonable amount of time, if at all. Many providers are only accepting new Medicaid patients if they are pregnant; others do not offer the particular health care services our patients have been receiving at PPGC. I am certain that we will not be able to find alternative care for all of our Medicaid patients by February 4, 2021, and I am deeply concerned about what our patients are going to do when they can no longer obtain care from PPGC and have nowhere else to go.

App_099

TXPP_1523383

My name is Melaney Amber Linton. My date of birth is December 30, 1959. My address is 4600 Gulf Freeway, Houston, Texas, 77023, USA.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Harris County, State of Texas, on the 2nd day of February, 2021.

Melaney Linton, Declarant

6

App_100

TXPP_1523384