IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *et al.*, | § | |
| | § | |
|   Plaintiffs, | § | |
| | § | |
| v. | § | 2:21-CV-022-Z |
| | § | |
| PLANNED PARENTHOOD | § | |
| FEDERATION OF AMERICA, *et al.*, | § | |
| | § | |
|   Defendants. | § | |

**ORDER**

Before the Court is State of Texas's Motion to Compel Defendants' Production of Documents Identified on Defendants' Privilege Logs ("Motion") (ECF No. 354), filed on December 19, 2022. Having considered the Motion, briefing, and relevant law, the Court **DENIES** the Motion.

### BACKGROUND

Relator Alex Doe alleges Defendant Planned Parenthood Federation of America, Inc. ("PPFA") and its Texas and/or Louisiana affiliates ("Affiliate Defendants") violated state and federal law by falsely certifying their compliance with Texas and Louisiana Medicaid rules and regulations, and by failing to repay the government millions of dollars of Medicaid funds that they knew or should have known they were obligated to repay. Texas now moves to compel Defendants to produce non-privileged communications. Specifically, Texas argues Defendants' privilege logs contain two non-privileged categories of communications: (1) communications related to the issues in this or underlying litigation that include members of PPFA's Litigation and Law Department ("L&L") and PPFA non-L&L employees; and (2) communications that include a non-party to this or underlying litigation. ECF No. 354 at 3–4. Texas also filed a supplement to

the Motion challenging additional privilege log entries on the same bases. *See* ECF No. 357; *see also* ECF No. 360 ("Texas's Supplement includes no new bases for challenging Defendants' privilege claims.").

**LEGAL STANDARD**

Federal Rule of Civil Procedure 26 permits parties to obtain discovery regarding any non-privileged matters that are both: (1) relevant to a claim or defense in the case; and (2) proportional to the needs of the case. FED. R. CIV. P. 26(b)(1). Control of discovery "is committed to the sound discretion of the trial court." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (quoting *Mayo v. Tri-Bell Indus., Inc.*, 787 F.2d 1007, 1012 (5th Cir. 1986)). Rule 37(a)(3)(B) provides that a party seeking discovery may move for an order compelling production against another party when the latter has failed to answer interrogatories under Rule 33 or produce documents requested under Rule 34. *See* FED. R. CIV. P. 37(a)(3)(B)(iii), (iv).

**ANALYSIS**

**A. Texas Has Not Demonstrated Waiver of Work-Product Protection**

The first set of documents challenged by Texas concerns communications between L&L and PPFA. L&L "operates as a captive law firm that represents both PPFA and Planned Parenthood affiliates across the country," and represented Affiliate Defendants in the underlying litigation relating to Texas's and Louisiana's efforts to terminate Affiliate Defendants from participating in their respective programs. ECF No. 369-2 at 6. Affiliate Defendants asserted L&L "has an attorney-client privilege with PPFA, as well as the particular Planned Parenthood affiliate or affiliates representing in any given proceeding." ECF No. 354 at 4. But Texas argues deposition testimony from two corporate representatives of PPFA indicated PPFA *does not* have an attorney-client relationship with L&L. *Id.* Consequently, Texas avers that because "PPFA does not enjoy

2

an attorney-client relationship with L&L as to any matters at issue in this litigation, any communication involving PPFA individuals outside of L&L cannot be privileged." *Id.* at 5. Defendants insist the attorney-client privilege still applies. This is because courts have extended the privilege to "all other persons who act as the attorney's agents," including consultants like public relations experts. ECF No. 369-2 at 17 (quoting *Ferko v. NASCAR, Inc.*, 218 F.R.D. 125, 134 (E.D. Tex. 2003)). Alternatively, Defendants argue 81 of the 91 challenged documents are independently protected by the work-product doctrine. *Id.* at 14–16.

The Court need not decide whether the attorney-client privilege applies to most of these documents because Texas has not demonstrated waiver of work-product protection. "The work product doctrine protects from discovery materials prepared by an attorney in anticipation of litigation." *S.E.C. v. Brady*, 238 F.R.D. 429, 441 (N.D. Tex. 2006) (internal marks omitted). "Qualified protection extends to documents and tangible things including a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements." *Id.* (internal marks omitted). "Unlike the attorney-client privilege, the burden of proving waiver of work product immunity falls on the party asserting waiver." *Id.* at 444 (internal marks omitted). "Although work product immunity is not automatically waived by disclosure of protected material to third parties, disclosure does waive protection if it has substantially increased the opportunities for potential adversaries to obtain the information." *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 378 (5th Cir. 2010) (internal marks omitted).

Texas's Motion does not address Defendants' assertions of work-product protection. However, Texas's Reply argues the communications with L&L about Affiliate Defendants' termination from Medicaid were "ordinary public relations advice" that destroys the privilege. ECF No. 375-1 at 3 (quoting *Action Ink, Inc. v. Anheuser-Busch, Inc.*, No. CV 12-141, 2012 WL

3

12990577, at *7 (E.D. La. Dec. 19, 2012)). Under this exception, some courts have held the doctrine does not protect "documents which appear on their face to be routine suggestions from a public relations firm as to how to put the 'spin' most favorable to [their client] on successive developments in the ongoing litigation." *Calvin Klein Trademark Tr. v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000). "It does not follow, however, that an otherwise valid assertion of work-product protection is waived with respect to an attorney's own work-product simply because the attorney provides the work-product to a public relations consultant whom he has hired and who maintains the attorney's work-product in confidence." *Id.* at 55. This is especially so if "the public relations firm needs to know the attorney's strategy in order to advise as to public relations, and the public relations impact bears, in turn, on the attorney's own strategizing as to whether or not to take a contemplated step in the litigation itself and, if so, in what form." *Id.* That is the case here, where L&L "maintained strict confidentiality and treated all communications as privileged." ECF No. 369-2 at 18.

Texas offers only conclusory arguments that the communications were for "ordinary public relations advice." Texas claims there is "no evidence of any extraordinary circumstances surrounding PPFA's involvement in these communications that would support a finding of privilege." ECF No. 375-1 at 3. This argument is unconvincing for several reasons. First, Texas does not dispute that the documents "all contain the legal analysis, thoughts, and impressions concerning legal strategy" of L&L attorneys. ECF No. 369-2 at 10. Second, Texas cites no caselaw that would require Defendants to make a showing of "extraordinary circumstances" justifying disclosure of protected material to third parties. *See, e.g.*, *NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 142 (N.D.N.Y. 2007) ("Sharing work product with a third party with the intent of maintaining its secrecy and preventing it from falling into the hands of the adversary is a generally accepted

4

principle."). Third, it is clear Defendants' "daily public scrutiny" was "further heightened in the context of the Medicaid termination litigation." ECF No. 369-2 at 18. Thus, "media scrutiny made it important for Affiliates and [L&L] to consult and coordinate with public affairs specialists to respond to media inquiries, issue affirmative public statements about the litigation on Affiliates' behalf, or otherwise provide input on litigation strategy to the extent it related to or otherwise impacted Affiliates public affairs strategy." *Id.* Fourth, Texas has not shown the disclosures "substantially increase[d] the likelihood that an adversary will come into possession of the material." *TravelPass Grp., LLC v. Caesars Ent. Corp.*, No. 5:18-CV-153-RWS-CMC, 2021 WL 4027374, at *4 (E.D. Tex. Feb. 9, 2021) (internal marks omitted). And fifth, Texas also fails to make the required showing as to the "substantial need for the materials to prepare its case" or the fact that it "cannot, without undue hardship" obtain their equivalent by other means, as required under Federal Rule of Civil Procedure 26(b)(3)(ii). Accordingly, the Court does not compel Defendants to produce documents protected by the work-product doctrine.

### B. The PPTV Documents Are Protected by the Work-Product Doctrine

All 91 of the communications on PPFA's log include individuals from an organization called Planned Parenthood Texas Votes ("PPTV"). ECF No. 364 at 6. "PPTV is an organization formed, operated, and controlled by the Texas-based Affiliate Defendants that exists to advance the goals of the Affiliate Defendants." ECF No. 369-2 at 19. Several Affiliate Defendants leaders serve on PPTV committees. *Id.* And the current CEOs of Affiliate Defendants sit on the PPTV Board. *Id.* Texas argues PPTV shares no privileges with any party because it was never a party in the underlying litigation. ECF No. 354 at 6. However, "Texas fails to acknowledge that the Affiliate Defendants have also asserted work product protection over their communications with [L&L] that include PPTV." ECF No. 369-2 at 20. "Because Texas has not challenged Affiliate

5

Defendants' work product designations," Affiliate Defendants argue these documents should remain protected. *Id.* at 21.

Texas responds by arguing PPTV is an advocacy group — not a litigation support group or public relations group. ECF No. 375-1 at 7. Thus, communications involving PPTV "were almost all certainly made with the *intent* that PPTV would disclose the information through public disclosures and communications with government actors and the media." *Id.* Again, Texas argues the work-product doctrine "does not extend to communications made with an entity performing its ordinary purposes — even if those communications may involve an attorney." ECF No. 375-1 at 7–8. The Court finds this argument unpersuasive for the reasons stated above. Additionally, Texas cannot work around Defendants' work-product argument by merely construing PPTV as an "advocacy group" rather than a "public relations group." And in any case, PPTV understood and agreed that any communications or documents protected by Affiliate Defendants' privilege assertions could not be shared outside of Affiliate Defendants, PPTV, and certain individuals employed by PPFA. *See, e.g.*, ECF No. 369-1 at 15 (declaration of PPTV Board member Melaney Linton).

In sum, the Motion challenges Defendants' assertions of attorney-client privilege while ignoring Defendants' assertions of work-product protection that purport to cover almost all the challenged documents. Texas's Reply relies heavily on one court's exception to the doctrine for ordinary public relations advice. But the same court clarified the exception does not apply where: (1) the consultant maintains the work-product in confidence; and (2) the public relations impact bears on the attorney's own litigation strategy. *Calvin Klein*, 198 F.R.D. at 55. Because that is the case here, the PPTV documents are protected by the work-product doctrine.

### C. The PPTV Documents Are Protected by Attorney-Client Privilege

Of the 91 challenged documents, Defendants argue 10 are protected by only the attorney-client privilege. ECF No. 364 at 3. For these documents, Defendants argue the "related companies exception" to waiver of the privilege applies. ECF No. 369-2 at 21. Under this rule, "corporations related through common ownership or control are treated as one entity for attorney-client privilege purposes." *Pasadena Ref. Sys. Inc. v. United States*, No. 3:10-CV-0785-K BF, 2011 WL 1938133, at *2 (N.D. Tex. Apr. 26, 2011), *report and recommendation adopted*, No. 3:10-CV-785-K, 2011 WL 1960555 (N.D. Tex. May 19, 2011). Defendants argue the rule applies here because: (1) the entirety of PPTV's Board must consist of directors, CEOs, or other representatives of Affiliate Defendants; (2) the current CEOs of Affiliate Defendants currently sit on the PPTV Board; and (3) PPTV's entire mission is to advance the goals of Affiliate Defendants. ECF No. 369-2 at 22. The Court agrees.

Texas makes no argument as to the applicability of the related companies exception to waiver of the attorney-client privilege. Texas only argues PPTV is not a party to the underlying termination litigation or the current litigation. ECF No. 375-1. But this is unresponsive. The issue is not whether PPTV is or was a party to this case or the underlying litigation. Rather, the issue is whether PPTV should be "treated as one entity" with Affiliate Defendants for attorney-client privilege purposes. *Pasadena*, 2011 WL 1938133 at *2. Texas does not argue PPTV should not be treated as such. Accordingly, the documents are protected by attorney-client privilege.

7

**CONCLUSION**

For the foregoing reasons, the Court **DENIES** the Motion. Accordingly, the Court also **DENIES** the supplement to the Motion.

**SO ORDERED**.

January 2, 2023.

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE