**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ALEX DOE, Relator, THE STATE OF TEXAS, *ex rel.* ALEX DOE, Relator, THE STATE OF LOUISIANA, *ex rel.* ALEX DOE, Relator, | § § § § § § | |
| | § | No. 2:21-cv-022-Z |
| Plaintiffs, | § § | |
| | § | Date:      January 6, 2023 |
| v. | § § | ORAL ARGUMENT REQUESTED |
| | § | |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., PLANNED PARENTHOOD GULF COAST, INC., PLANNED PARENTHOOD OF GREATER TEXAS, INC., PLANNED PARENTHOOD SOUTH TEXAS, INC., PLANNED PARENTHOOD CAMERON COUNTY, INC., PLANNED PARENTHOOD SAN ANTONIO, INC., | § § § § § § § § § § § | |
| Defendants. | § § | |

**PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.'S**
**MOTION FOR SUMMARY JUDGMENT AND SUPPORTING BRIEF**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

STATEMENT OF UNDISPUTED FACTS ...................................................................... 2

  I.    Defendants' Corporate Forms .................................................................................. 2

  II.   PPFA Provides Certain Resources to its Affiliates in Exchange for Participation in a Rigorous Accreditation Process and Payment of Membership Dues .............................. 3

  III.  PPFA Does Not Submit Medicaid Claims or Participate in the Affiliate Defendants' Submission of Medicaid Claims ............................................................................. 4

  IV.  Expert Analysis of Alter-Ego Indicia .................................................................... 5

ARGUMENT ...................................................................................................................... 6

  I.    PPFA Is Not Directly Liable Under the FCA, TMFPA, or LMAPIL. ........................... 7

     A.   The Reverse-False-Claims Theory Fails as to PPFA Because PPFA Did Not Have an Obligation to Pay the Government, and Thus Did Not Knowingly and Improperly Avoid Such an Obligation. ............................................................................... 7

       1.   PPFA cannot have an obligation to repay money it never received. ........................ 7

       2.   This construction of the relevant regulatory scheme is at least reasonable, which negates the element of scienter as a matter of law. ............................................. 8

     B.   The Implied-False-Certification Theory Fails Because There Is No Evidence That PPFA Knowingly Presented or Caused the Affiliate Defendants to Present False Claims. ................................................................................................................ 9

  II.   PPFA Is Not Derivatively Liable for the Affiliate Defendants' Actions. ...................... 12

     A.   Plaintiffs May Not Argue Derivative Liability on Summary Judgment Because They Did Not Plead It. ................................................................................................ 12

     B.   There Is No Evidence That PPFA Dominated or Controlled the Affiliate Defendants or Used Them to Commit Fraud. .......................................................................... 12

  III.  There Is No Evidence That PPFA Engaged in a Conspiracy to Commit Health Care Fraud Under the TMFPA or the LMAPIL. .................................................................. 17

REQUEST FOR RELIEF .................................................................................................. 18

CERTIFICATE OF SERVICE .......................................................................................... 19

**TABLE OF AUTHORITIES**

**Page(s)**

## Cases

*Alberto v. Diversified Grp., Inc.*,
   55 F.3d 201 (5th Cir. 1995) ............................................................................. 13

*Amoco Chem. Co. v. Tex Tin Corp.*,
   925 F. Supp. 1192 (S.D. Tex. 1996) ............................................................... 13

*Bd. of Managers of 195 Hudson St. Condominium v. Jeffrey M. Brown Assocs., Inc.*,
   652 F. Supp. 2d 463 (S.D.N.Y. 2009) ............................................................ 13

*Bittle-Lindsey v. Seegars Fence Co.*,
   2020 WL 7265367 (E.D.N.C. Dec. 10, 2020) ................................................. 16

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
   2003 WL 21542491 (N.D. Ill. July 3, 2003) ................................................... 16

*Century Hotels v. United States*,
   952 F.2d 107 (5th Cir. 1992) ........................................................................... 13

*EsNtion Recs., Inc. v. JonesTM, Inc.*,
   2008 WL 2415977 (N.D. Tex. June 16, 2008) ............................................... 16

*Evans v. McDonald's Corp.*,
   936 F.2d 1087 (10th Cir. 1991) ................................................................ 16, 17

*Gardemal v. Westin Hotel Co.*,
   186 F.3d 588 (5th Cir. 1999) .............................................................. 14, 15, 16

*Gibraltar Savings v. LDBrinkman Corp.*,
   860 F.2d 1275 (5th Cir. 1988) ......................................................................... 16

*GuideOne Mut. Ins. Co. v. First United Methodist Church*,
   2020 WL 3485620 (N.D. Tex. Apr. 1, 2020) ................................................... 6

*In re Gulf Fleet Holdings, Inc.*,
   491 B.R. 747 (Bankr. W.D. La. 2013) ............................................................ 13

*Kuehne & Nagel (AG & Co) v. Geosource, Inc.*,
   874 F.2d 283 (5th Cir. 1989) ........................................................................... 12

*Ledford v. Keen*,
   9 F.4th 335 (5th Cir. 2021) ............................................................................. 12

*Lozada-Leoni v. MoneyGram Int'l, Inc.*,
   2020 WL 7000874 (E.D. Tex. Oct. 19, 2020) ................................................ 17

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Maiden Biosciences, Inc. v. Docs. Sec. Sys., Inc.*,
    2021 WL 5416603 (N.D. Tex. Nov. 19, 2021) ........................................................ 12

*Matter of Morris v. Dep't of Taxation & Fin.*,
    82 N.Y.2d 135 (1993) ........................................................ 14

*Matter of Sims*,
    994 F.2d 210 (5th Cir. 1993) ........................................................ 13, 14

*Ocampo v. 455 Hosp. LLC*,
    2021 WL 4267388 (S.D.N.Y. Sept. 20, 2021) ........................................................ 13

*Ross v. Colo. Outward Bound Sch., Inc.*,
    603 F. Supp. 306 (W.D.N.Y. 1985) ........................................................ 16, 17

*Safeco Ins. Co. of Am. v. Burr*,
    551 U.S. 47 (2007) ........................................................ 9

*Salomon v. Kroenke Sports & Ent., LLC*,
    2019 WL 10631256 (N.D. Tex. Feb. 27, 2019) ........................................................ 13

*SSP Partners v. Gladstrong Invs. (USA) Corp.*,
    275 S.W. 3d 444 (Tex. 2008) ........................................................ 14

*Sw. Airlines Co. v. BoardFirst, LLC*,
    2007 WL 4823761 (N.D. Tex. Sept. 12, 2007) ........................................................ 15

*United States ex rel. Dekort v. Integrated Coast Guard Sys.*,
    705 F. Supp. 2d 519 (N.D. Tex. 2010) ........................................................ 13

*United States ex rel. Farmer v. City of Houston*,
    523 F.3d 333 (5th Cir. 2008) ........................................................ 18

*United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*,
    498 F. Supp. 2d 25 (D.D.C. 2007) ........................................................ 10

*United States ex rel. Purcell v. MWI Corp.*,
    807 F.3d 281 (D.C. Cir. 2015) ........................................................ 8, 9

*United States ex rel. Ramsey-Ledesma v. Censeo Health, L.L.C.*,
    2016 WL 5661644 (N.D. Tex. Sept. 30, 2016) ........................................................ 18

*United States ex rel. Schaengold v. Mem'l Health, Inc.*,
    2014 WL 6908856 (S.D. Ga. Dec. 8, 2014) ........................................................ 11

*United States ex rel. Siewick v. Jamieson Sci. & Eng'g, Inc.*,
    214 F.3d 1372 (D.C. Cir. 2000) ........................................................ 9

iii

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*United States ex rel. Williams v. McKesson Corp.*,
2014 WL 3353247 (N.D. Tex. July 9, 2014) .................................................. 9, 10, 18

*United States ex rel. Wuestenhoefer v. Jefferson*,
105 F. Supp. 3d 641 (N.D. Miss. 2015) .......................................................... 10

*United States v. Exec. Health Res., Inc.*,
196 F. Supp. 3d 477 (E.D. Pa. 2016) ............................................................ 10

*United States v. Jon-T Chems., Inc.*,
768 F.2d 686 (5th Cir. 1985) .................................................................. 13, 14

*United States v. Napper*,
2021 WL 4992651 (M.D. Tenn. Oct. 27, 2021) ................................................ 9

*United States. ex rel. Hendrickson v. Bank of Am., N.A.*,
343 F. Supp. 3d 610 (N.D. Tex. 2018) ........................................................... 8

*Univ. Health Servs., Inc. v. United States ex rel. Escobar*,
579 U.S. 176 (2016) ............................................................................... 8

**Statutes**

31 U.S.C. § 3729(a)(1)(A) ........................................................................ 7, 9

31 U.S.C. § 3729(a)(1)(G) ........................................................................ 7

31 U.S.C. § 3729(b)(1)(A) ........................................................................ 8

31 U.S.C. § 3731(b)(2) ............................................................................ 12

42 U.S.C. § 1320a-7k(d)(1) ....................................................................... 7

42 U.S.C. § 1320a-7k(d)(2) ....................................................................... 7

42 U.S.C. § 1320a-7k(d)(3) ....................................................................... 7

42 U.S.C. § 1320a-7k(d)(4)(B) .................................................................... 8

42 U.S.C. § 1320a-7k(d)(4)(C) .................................................................... 8

La. Rev. Stat. § 46:437.3(11) ...................................................................... 8

La. Rev. Stat. § 46:438.3.C ........................................................................ 7

La. Rev. Stat. § 46:439.1.B ........................................................................ 12

Tex. Hum. Res. Code § 36.0011(a) ............................................................... 8

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

Tex. Hum. Res. Code § 36.002(12) ................................................................................ 7

Tex. Hum. Res. Code § 36.002(4) ................................................................................. 11

Tex. Hum. Res. Code. § 36.104 .................................................................................... 12

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 56, Defendant Planned Parenthood Federation of America, Inc. ("PPFA") moves for an order granting summary judgment on all claims asserted by Relator and Texas (collectively, "Plaintiffs") against PPFA.  As explained in the Affiliate Defendants' concurrently filed motion for summary judgment—which PPFA joins in full—each claim pressed by Plaintiffs fails as a matter of law on the undisputed facts and the Affiliate Defendants and PPFA are each entitled to summary judgment on those grounds.[1]  But even if the Court allows claims against one or more Affiliate Defendants to proceed, PPFA would still be entitled to summary judgment for the additional reasons set forth below.

PPFA cannot be directly liable under either Plaintiffs' reverse-false-claims or implied-false-certification theories.  Plaintiffs' reverse-false-claims theory is that Defendants improperly failed to repay government funds they had received from Medicaid.  But the undisputed facts show that PPFA is not a health care provider, does not participate in Medicaid, never received Medicaid payments, and thus never had any obligation to pay or repay the government.  Such a payment obligation is a necessary element of a reverse-false-claims cause of action, so PPFA is entitled to judgment as a matter of law.  At the very least, the relevant regulatory scheme is reasonably understood as not imposing any payment obligation on PPFA, which defeats the element of scienter as a matter of law and again requires summary judgment for PPFA.  Plaintiffs' implied-false-certification claim likewise fails because it requires the defendant to have made (or caused to be made) a Medicaid claim, which the undisputed facts show PPFA never did.

---

[1] The live pleadings in this action include (i) Relator's complaint, filed under seal on February 5, 2021, *see* ECF No. 2; (ii) Texas's complaint in intervention, filed under seal on January 6, 2022, *see* ECF No. 22; and (iii) Defendants' answers, both filed on May 20, 2022, *see* ECF Nos. 80, 81.  The Court unsealed the case on January 12, 2022.

Nor can PPFA be held derivatively liable for Affiliate Defendants' acts.  Plaintiffs have never pleaded, and thus waived, a derivative-liability theory.  But even absent Plaintiffs' waiver, any theory of derivative liability would fail as a matter of law.  The undisputed facts show that PPFA and the Affiliate Defendants are separate corporate entities; any overlap is the same as the overlap between any membership organization and its members.   If the undisputed facts here could support piercing the corporate veil, then corporate separateness would be destroyed for all manner of routine corporate relationships that are uniformly understood to be legally distinct.  Summary judgment for PPFA on all counts is required.

## STATEMENT OF UNDISPUTED FACTS

### I.    Defendants' Corporate Forms

1.      PPFA is a 501(c)(3) non-profit membership organization incorporated in New York, with offices in New York City, Washington, D.C., and San Francisco.  App. to PPFA's MSJ and Supporting Br. ("App.") 5-6, 310.[2]  PPFA seeks to ensure that people can receive comprehensive reproductive and complementary health care services.  App. 13.  PPFA does not itself provide these services, App. 56-60, 157, but it provides support to 49 member affiliates that do, App. 70-71.  These affiliates include Defendants Planned Parenthood Gulf Coast ("PPGC"), Planned Parenthood of Greater Texas ("PPGT"), and Planned Parenthood South Texas (together with its two subsidiaries,[3] "PPST") (collectively, the "Affiliate Defendants").  App. 2, 70-71.

2.      The affiliates are responsible for, among other things, appointing PPFA's board of directors; approving changes to PPFA's bylaws, certificate of incorporation, and Standards of

---

[2] PPFA's Appendix uses red boxes to identify "portions of the document on which [it] relies," as required by this Court's Third Amended Scheduling Order. *See* ECF No. 346 at 3.

[3] Planned Parenthood Cameron County and Planned Parenthood San Antonio are subsidiaries of Planned Parenthood South Texas and are defendants in this case because they had their own Medicaid-provider agreements.

Affiliation; and determining the amount each affiliate pays in annual dues to PPFA.  App. 15, 180-181.

3.      The Affiliate Defendants are incorporated in Texas and each maintains separate offices from PPFA, in different parts of Texas and (in the case of PPGC) Louisiana.  App. 92; App. to Affiliate Defs.' MSJ 482, 489, 494.  Each Affiliate Defendant is a separate 501(c)(3) organization with its own CEO and board of directors, and each coordinates with a local 501(c)(4) entity with its own board and mission.  App. 91-93, 211, 219.  PPFA and each of the Affiliate Defendants have separate governing bylaws.  App. 15, 92-93; App. to Affiliate Defs.' MSJ 482, 489, 494.  PPFA maintains payroll and employee rosters that are wholly separate from those maintained by the Affiliate Defendants.  App. 127.  PPFA does not pay the salaries of any employees of the Affiliate Defendants, nor do the Affiliate Defendants pay the salaries of any PPFA employees.  App. 127; App. to Affiliate Defs.' MSJ 483, 490, 495.  Employees of the Affiliate Defendants do not report to PPFA.  App. 310; App. to Affiliate Defs.' MSJ 483, 490, 495.  PPFA and the Affiliate Defendants submit separate audited financial statements and tax documents and maintain separate general ledgers in which they separately record and track transactions with each other.  App. 102-103, 250.

## II.   PPFA Provides Certain Resources to its Affiliates in Exchange for Participation in a Rigorous Accreditation Process and Payment of Membership Dues

4.      As a condition of membership, PPFA requires each affiliate to agree to meet its Standards of Affiliation (outlined in PPFA's bylaws and set by the membership) and provides them with support and services to ensure they are able to provide a standard of care consistent with the Planned Parenthood brand.  App. 15, 35-36, 38-40, 155, 159-160, 182.

5.      To maintain membership in PPFA, affiliates must undergo a regular and thorough accreditation process to assess adherence with the Standards of Affiliation.  App. 149-150.  Each

affiliate is required to affirm its compliance with all local, state, and federal laws, including

Medicaid regulations, as well as with PPFA's Manual of Medical Standards and Guidelines.

App. 39, 150-151, 156, 158, 185, 187.  Medicaid compliance is assessed by outside auditors with

requisite expertise—never by PPFA.  App. 151, 157.

6.      PPFA provides affiliates with technical assistance and consulting services.  App.

187-188, 204.  PPFA also provides certain public-policy-oriented legal services and

representation to affiliates through a captive law firm, distributes fundraising proceeds across

affiliates, and provides grants for specific purposes.  App. 198-199, 226, 231-232, 237.

Affiliates are not required to use the services of the captive law firm.  App. 48.

7.      For these benefits and the right to use the valuable Planned Parenthood trademark,

affiliates pay annual membership dues to PPFA.  App. 193.  Dues are based on an affiliate's

operating expenses and are calculated according to a formula set by the Revenue Committee.

App. 217, 220-221.  The Revenue Committee is a committee of the membership, made up of

affiliate CEOs, affiliate board leaders, and PPFA board directors.  App. 37-38.  Affiliates may

also pay PPFA additional fees for optional services, such as cybersecurity.  App. 193, 244-245.

### III.   PPFA Does Not Submit Medicaid Claims or Participate in the Affiliate Defendants' Submission of Medicaid Claims

8.      PPFA is not a health care provider and does not provide health care services.

App. 56-60, 157, 291.  As such, PPFA does not have—and has never had—a provider agreement

with Texas or Louisiana Medicaid.  App. 140, 142, 311.  PPFA does not bill any services to,

submit claims to, receive payments from, or otherwise participate in Texas's or Louisiana's

Medicaid programs.  App. 56-60, 77, 99-100, 140-143, 157, 178, 267-268, 311.

9.      PPFA does not direct affiliates to submit Texas or Louisiana Medicaid claims or

instruct them as to whether to make repayments to Texas or Louisiana Medicaid.  App. to

Affiliate Defs.' MSJ 482-83, 489-90, 494-95; App. 133-134, 162, 167, 257-258, 260.  Plaintiffs'

damages expert, Donald E. Lochabay, Jr., does not offer an opinion as to whether PPFA directed

or caused the Affiliate Defendants to submit Medicaid claims.  App. 97-99, 304.  He based his

assertions that PPFA "provides monetary and administrative support to" the Affiliate Defendants

solely on allegations in Plaintiffs' complaints and does not point to a single PPFA document to

support his conclusions.  App. 66-67, 299-303.

    10.    Neither Texas nor Louisiana sought to recoup Medicaid funds from PPFA or the

Affiliate Defendants.  App. 142, 275-276, 283-284, 311.  Indeed, no representative from Texas

or Louisiana ever contacted PPFA suggesting any funds were allegedly owed in connection with

the termination proceedings.  App. 311.  At no point did PPFA believe that it owed Texas or

Louisiana an obligation to repay any Medicaid funds.  App. 172-173, 311.

## IV.    Expert Analysis of Alter-Ego Indicia

    11.    An analysis by Louis G. Dudney, PPFA's financial expert, concluded that PPFA

and the Affiliate Defendants' "organizational and financial reporting structures and financial

transactions" were "inconsistent with the Affiliate Defendants being the alter ego of PPFA."

App. 97.  Mr. Dudney based this conclusion on a "review and analysis of financial statements,

tax returns, general ledger data and other transactional data for PPFA and the Affiliate

Defendants [that] demonstrate corporate separateness."  App. 103.

    12.    Mr. Dudney determined that funds provided by PPFA to the Affiliate Defendants

represented, on average, less than 10 percent of the Affiliate Defendants' revenue for fiscal years

2016 to 2021.  App. 110.  He also found that each Affiliate Defendant's year-end cash balance

was on average more than five times the amount of PPFA's expenses related to that Affiliate

Defendant for the same period.  App. 111-12.  Mr. Dudney concluded from these metrics that the

Affiliate Defendants are not financially dependent on PPFA.  App. 111-114.  Based on his

assessment that the Affiliate Defendants contributed just 0.3 percent of PPFA's total revenue during this period, Mr. Dudney also concluded that PPFA is not financially dependent on the Affiliate Defendants.  App. 113-114.

13.    Because Plaintiffs have not provided any expert analysis of PPFA's relationship to the Affiliate Defendants, Mr. Dudney's analysis is unrebutted.  Plaintiffs' sole expert, Mr. Lochabay, addressed only a damages calculation.  App. 64-66, 82-84.  Mr. Lochabay does not offer an opinion as to whether PPFA controls the Affiliate Defendants or whether any indicia of alter ego exist, and does not plan to do so.  App. 303-304.

## ARGUMENT

Because PPFA does not bear the burden of proof on the merits of Plaintiffs' claims, "it may obtain summary judgment by pointing a court to the *absence* of evidence on any essential element of the nonmovant's claim."  *GuideOne Mut. Ins. Co. v. First United Methodist Church*, 2020 WL 3485620, at *2 (N.D. Tex. Apr. 1, 2020).  At that point, the burden shifts to the nonmovant to demonstrate "that there is a genuine issue of material fact for trial."  *Id.*  "A genuine issue of material fact exists if the evidence"—viewed in the light most favorable to the nonmovant—"is such that a reasonable trier of fact could return a verdict for the nonmovant." *Id.*  If the nonmovant fails to meet its burden, summary judgment is "mandatory."  *Id.*

All Defendants are entitled to summary judgment because Plaintiffs' claims fail on the merits for the reasons discussed in the Affiliate Defendants' brief.  But even if they were not, PPFA would still be entitled to summary judgment for two additional reasons.  First, on the undisputed facts, PPFA is not directly liable under the FCA, TMFPA, or LMAPIL, under either of Plaintiffs' theories.  And second, the undisputed facts confirm that Plaintiffs cannot prevail on either theory via derivative liability.

I.     **PPFA Is Not Directly Liable Under the FCA, TMFPA, or LMAPIL.**

Plaintiffs seek to hold PPFA liable under two distinct theories.  Their reverse-false-claims theory alleges that PPFA had an obligation to repay monies that it received from the Medicaid program, but wrongfully failed to do so.  Relator Compl. ¶¶ 118-34; Tex. Compl. ¶¶ 36-41. Their implied-false-certification theory alleges that PPFA filed Medicaid claims while falsely certifying its compliance with applicable Medicaid regulations.  Relator Compl. ¶¶ 113-17, 122-34.  Both theories fail as a matter of law.

A.     **The Reverse-False-Claims Theory Fails as to PPFA Because PPFA Did Not Have an Obligation to Pay the Government, and Thus Did Not Knowingly and Improperly Avoid Such an Obligation.**

1.     **PPFA cannot have an obligation to repay money it never received.**

While other provisions of the FCA, TMFPA, and LMAPIL create liability for third parties who "cause[]" a violation, *see, e.g.*, 31 U.S.C. § 3729(a)(1)(A), the reverse-false-claims provisions apply only to parties who "knowingly" (LMAPIL) or "knowingly and improperly" (FCA and TMFPA) "avoid[] or decrease[] an obligation to pay or transmit money or property to the Government," 31 U.S.C. § 3729(a)(1)(G); Tex. Hum. Res. Code § 36.002(12); La. Rev. Stat. § 46:438.3.C.  Plaintiffs say PPFA had an obligation to repay the Texas and Louisiana governments under the Patient Protection and Affordable Care Act ("ACA").  ECF No. 71 at 9. The ACA states that "a person [who] has received [a Medicaid] overpayment … shall … report and return the overpayment" within 60 days, 42 U.S.C. §§ 1320a-7k(d)(1)-(2); ECF No. 71 at 6-7, and that retaining an overpayment "is an obligation" under the FCA, 42 U.S.C. § 1320a-7k(d)(3).

But PPFA never received any payment from the government at all, let alone an "overpayment."  The ACA defines "overpayment" as "any funds that a person receives or retains under [Medicaid or Medicare] to which the person, after applicable reconciliation, is not

entitled." *Id.* § 1320a-7k(d)(4)(B).  The ACA defines "person" as a "provider of services, supplier, medicaid managed care organization … Medicare Advantage organization … or [prescription drug plan] sponsor." *Id.* § 1320a-7k(d)(4)(C).  But the undisputed facts show that PPFA is not a provider of medical services or supplies, or a managed care or Medicare Advantage organization.  SUF ¶ 8.  Nor does it sponsor a prescription drug plan. *Id.*  PPFA therefore is not a "person" eligible to "receive[] or retain[]" Medicare or Medicaid funds under the ACA, 42 U.S.C. § 1320a-7k(d)(4)(B).  And at no point has PPFA submitted any Medicaid or Medicare claims to the government, much less received any Medicaid or Medicare payments from the government.  SUF ¶ 8.  Accordingly, PPFA had no obligation to pay the government.

**2.    This construction of the relevant regulatory scheme is at least reasonable, which negates the element of scienter as a matter of law.**

Even if the Court were somehow to construe this regulatory scheme to impose a repayment obligation on PPFA, summary judgment would still be required because Plaintiffs cannot demonstrate PPFA's scienter as a matter of law.

The FCA defines "knowingly" as acting with "actual knowledge," "deliberate ignorance," or "reckless disregard."  31 U.S.C. § 3729(b)(1)(A); *see also* Tex. Hum. Res. Code § 36.0011(a) and La. Rev. Stat. § 46:437.3(11) (similar).  This "rigorous" scienter requirement, *Univ. Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 192 (2016), is lacking as a matter of law when the defendant is accused of violating an ambiguous regulatory scheme. That is because "FCA liability does not attach when a defendant reasonably, yet erroneously, interprets its legal obligations."  *United States ex rel. Hendrickson v. Bank of Am., N.A.*, 343 F. Supp. 3d 610, 636 (N.D. Tex. 2018); *see also United States ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 287-88 (D.C. Cir. 2015) ("[T]he FCA does not reach an innocent, good-faith mistake about the meaning of an applicable rule or regulation" or "claims made based on reasonable but

erroneous interpretations of a defendant's legal obligations."); *see also Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 n.20 (2007) ("a defendant who merely adopts" a reasonable interpretation of a regulatory scheme is not "a knowing or reckless violator").[4]

Even if the Medicaid scheme could somehow be read to impose a repayment obligation on PPFA—which it cannot, *see supra* I.A.1—at the very least it could *also* reasonably be construed *not* to impose such an obligation.  Because PPFA does not provide medical services, file Medicaid claims, or receive Medicaid payments, construing Sections 1320a-7k(d)(4)(B) and (C) not to impose a repayment obligation, even if ultimately incorrect, could only be viewed as an "innocent, good-faith mistake about the meaning of an applicable rule or regulation."  *Purcell*, 807 F.3d at 287; SUF ¶ 8.  The reasonableness of PPFA's construction is confirmed by the fact that neither Texas nor Louisiana ever sought to recoup Medicaid funds from PPFA.  SUF ¶ 10. As a matter of law, PPFA cannot be held liable for violating what is at most an ambiguous obligation to pay the government.  *See, e.g.*, *Purcell*, 807 F.3d at 283-84; *United States ex rel. Siewick v. Jamieson Sci. & Eng'g, Inc.*, 214 F.3d 1372, 1377-78 (D.C. Cir. 2000) (affirming summary judgment for defendant where relator's theory hinged on "open" legal question that precluded showing of scienter).

**B.    The Implied-False-Certification Theory Fails Because There Is No Evidence That PPFA Knowingly Presented or Caused the Affiliate Defendants to Present False Claims.**

It is undisputed that PPFA does not submit Medicaid claims.  SUF ¶ 8.  Accordingly, to prevail on this claim, Relator must prove that PPFA somehow "cause[d]" the Affiliate Defendants to submit false or fraudulent claims.  *See* 31 U.S.C. § 3729(a)(1)(A); *Williams*, 2014

---

[4] Courts use "the FCA's well-defined legal requirements" to analyze claims under analogous provisions of the TMFPA and LMAPIL.  *United States ex rel. Williams v. McKesson Corp.*, 2014 WL 3353247, at *4 (N.D. Tex. July 9, 2014) (applying FCA cases to TMFPA claim); *United States v. Napper*, 2021 WL 4992651, at *5 (M.D. Tenn. Oct. 27, 2021) (Section 46:438.3 of LMAPIL is "modeled on the FCA.").

WL 3353247, at *4.  "To 'cause' the presentation of false claims … some degree of participation in the claims process is required."  *United States ex rel. Wuestenhoefer v. Jefferson*, 105 F. Supp. 3d 641, 681 (N.D. Miss. 2015) (citation omitted); *see also United States v. Exec. Health Res., Inc.,* 196 F. Supp. 3d 477, 513 (E.D. Pa. 2016) (noting that "[n]umerous courts have held that some level of direct involvement in causing the submission of false claims to the government is necessary for direct liability under the FCA" and collecting cases).  Participation requires "an 'affirmative act' going beyond 'mere passive acquiescence.'"  *Wuestenhoefer*, 105 F. Supp. 3d at 681.  "[M]erely '[b]eing a parent corporation of a subsidiary that commits a FCA violation, without some degree of participation by the parent in the claims process, is not enough to support a claim against the parent for the subsidiary's FCA violation.'"  *United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 59-60 (D.D.C. 2007) (citation omitted).

The *Hockett* court found a triable issue as to a parent company's participation in Medicare submissions based on evidence that the parent "was directly involved in the process of finalizing the cost report and billing the government."  *Id.* at 62.  This evidence included (i) testimony that an official of the parent company had "instructed an employee who was preparing the amended cost report to obscure the true nature of the cost overstatements in the original cost report"; (ii) "[c]orrespondence with the Medicare fiscal intermediary regarding [the subsidiary's] cost report [that] was conducted on [parent company] letterhead" and played "a central part in consummating the fraud, and then attempting to cover it up"; and (iii) frequent, detailed correspondence between officials at the parent and subsidiary regarding the need to increase the billing rate at issue in the litigation.  *Id.* at 62-63.  By contrast, allegations that a non-profit health system was "involved in setting up [] compensation arrangements" at a subsidiary hospital that allegedly violated a federal statute (and thus the FCA, through a false-

certification theory) were insufficient to show that the parent company was "*directly involved* with the submission of, or causing the submission of, falsely certified cost reports to the Government." *United States ex rel. Schaengold v. Mem'l Health, Inc.*, 2014 WL 6908856, at *14 (S.D. Ga. Dec. 8, 2014).

Here, the record contains no evidence that PPFA was involved with the Affiliate Defendants' submission of Medicaid claims. *See* SUF ¶ 9; App. to Affiliate Defs.' MSJ 482-83, 489-90, 494-95. In fact, the record is so lacking on this point that Plaintiffs' sole expert, Mr. Lochabay, did not even attempt to establish a causal link between the Medicaid submissions at issue and any action by PPFA. *Id.* Lochabay reviewed no PPFA-related documents, relying solely on Plaintiffs' pleading-stage *allegations*. *Id.* And he testified that he is not offering an opinion "that PPFA told the Affiliate Defendants to submit any claims to Texas or Louisiana Medicaid." *Id.*; App. 304. Relator has simply failed to offer any evidence that PPFA was involved in any way in the Affiliate Defendants' Medicaid claims, let alone "caused" the Affiliate Defendants to submit those claims.

Relator's claims under the TMFPA are no longer in this case. *See* ECF No. 71 at 35 (holding that "the state is primarily responsible for prosecuting Count III of Relator's Complaint"); ECF No. 141 at 2-3 (noting that Texas's "Complaint in Intervention supersedes Relator's TMFPA complaint and asserts the only live TMFPA claim in this action—Texas's 36.002(12) allegation"). But even if they were, they would similarly fail. Relator alleges that PPFA "knowingly . . . cause[d] to be made, induce[d], or s[ought] to induce" the Affiliate Defendants to impliedly and falsely certify compliance with federal and state law as provided in the Texas Medicaid provider agreement. *See* Relator Compl. ¶¶ 126, 105, 107-08; Tex. Hum. Res. Code § 36.002(4). But the record lacks any support for this claim—and in fact

demonstrates the opposite.  As PPFA's corporate representative testified, "*complying* with the relevant federal and state laws and regulations is a requirement that PPFA imposes on the affiliates that are receiving Medicaid funds."  SUF ¶ 5; App. 156 (emphasis added).

Lastly, any claims based on allegedly "causative" acts that occurred prior to February 5, 2011 are barred by the three statutes' non-waivable ten-year statutes of repose.  *See* 31 U.S.C. § 3731(b)(2); Tex. Hum. Res. Code. § 36.104; La. Rev. Stat. § 46:439.1.B.; Defs. Mot. for Partial Reconsideration or Clarification, ECF No. 378.

## II.     PPFA Is Not Derivatively Liable for the Affiliate Defendants' Actions.

### A.     Plaintiffs May Not Argue Derivative Liability on Summary Judgment Because They Did Not Plead It.

A party may not invoke a veil-piercing theory at summary judgment unless he has specifically pleaded it.  *See Maiden Biosciences, Inc. v. Docs. Sec. Sys., Inc.*, 2021 WL 5416603, at *3 (N.D. Tex. Nov. 19, 2021) (listing cases applying Texas law); *Kuehne & Nagel (AG & Co) v. Geosource, Inc.*, 874 F.2d 283, 292 n.5 (5th Cir. 1989).  Neither Relator nor Texas alleged a veil-piercing theory in their complaints or briefed such a theory on the motions to dismiss.  *See* ECF No. 51 at 28 n.6; ECF No. 49 at 42 n.13.  The argument is thus waived.

### B.     There Is No Evidence That PPFA Dominated or Controlled the Affiliate Defendants or Used Them to Commit Fraud.

Even if Plaintiffs had pleaded a veil-piercing theory, it would fail as a matter of law.

As a preliminary matter, alter ego law does not easily map onto a nonprofit membership organization.  One reason is because "whether veil-piercing may operate against a non-profit corporation" *at all* is "an open question under Texas law."  *Ledford v. Keen,* 9 F.4th 335, 341 n.10 (5th Cir. 2021).  Another is because the vast majority of veil-piercing cases involve a controlling shareholder or a parent-subsidiary relationship.  PPFA has not been able to find a single case applying alter ego principles to a membership organization.  And for good reason.

Unlike a parent corporation that owns subsidiaries, membership organizations like PPFA are made up of, and partially controlled by, their independent members.  SUF ¶¶ 1-2.  This relationship involves a reciprocal exchange of resources and expertise that differentiates it from the parent/subsidiary context.  *Id.* ¶¶ 4, 6-7.  But even if the parent/subsidiary case law applied, it would unambiguously preclude any veil piercing here.

The veil-piercing question in this case is governed by federal, Texas, and New York law.[5] Because "[s]tate and federal alter ego tests are essentially the same," the Fifth Circuit applies these standards "interchangeably."  *Century Hotels v. United States*, 952 F.2d 107, 110 n.4 (5th Cir. 1992); *see also United States v. Jon-T Chems., Inc.*, 768 F.2d 686, 690 n.6 (5th Cir. 1985) (equating Texas and federal alter ego standards); *Bd. of Managers of 195 Hudson St. Condominium v. Jeffrey M. Brown Assocs., Inc.*, 652 F. Supp. 2d 463, 478 n.10 (S.D.N.Y. 2009) (summarizing New York standard, which is similar to *Jon-T*).

It is a "fundamental" corporate principle "that a parent corporation and its subsidiaries are distinct legal entities."  *Salomon v. Kroenke Sports & Ent., LLC*, 2019 WL 10631256, at *8 (N.D. Tex. Feb. 27, 2019).  Piercing the corporate veil is thus a "truly exceptional" remedy, "reserved for those cases where the officers, directors or stockholders utilized the corporate entity as a sham to perpetuate a fraud, to shun personal liability, or to encompass other truly unique situations."  *Matter of Sims*, 994 F.2d 210, 218 (5th Cir. 1993) (citation omitted).

---

[5] Federal common law governs the question as to the FCA claims, *see United States ex rel. Dekort v. Integrated Coast Guard Sys.*, 705 F. Supp. 2d 519, 546 (N.D. Tex. 2010), while state choice-of-law rules control as to the state claims, *see, e.g.*, *Ocampo v. 455 Hosp. LLC*, 2021 WL 4267388, at *10 n.12 (S.D.N.Y. Sept. 20, 2021).  Both Louisiana and Texas's choice-of-law rules dictate that "the state of incorporation governs a request to pierce the corporate veil." *In re Gulf Fleet Holdings, Inc.*, 491 B.R. 747, 784 (Bankr. W.D. La. 2013); *see also Alberto v. Diversified Grp., Inc.*, 55 F.3d 201, 203-04 (5th Cir. 1995).  But courts are not always clear about which company's state of incorporation governs the inquiry.  *See, e.g.*, *Amoco Chem. Co. v. Tex Tin Corp.*, 925 F. Supp. 1192, 1201 (S.D. Tex. 1996) ("This Court looks to the law of the State of incorporation for *each* corporate Defendant to determine whether its corporate entity should be disregarded.") (emphasis added).  Because the Affiliate Defendants are incorporated in Texas and PPFA is incorporated in New York, SUF ¶¶ 1, 3, Texas and/or New York law governs the TMFPA and LMAPIL claims.

13

"[C]entralized control, mutual purposes, and shared finances" are insufficient to justify the remedy—rather, there must be "evidence of abuse" or "injustice and inequity." *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W. 3d 444, 455 (Tex. 2008); *see Matter of Morris v. Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 141-42 (1993) ("complete domination of the corporation … is not enough; some showing of a wrongful or unjust act toward plaintiff is required").

To assess "*total* domination and control," *Jon-T*, 768 F.2d at 693 (emphasis added), courts look to a "laundry list of factors," including "common stock ownership," whether "the subsidiary operates with grossly inadequate capital," and whether "the subsidiary does not observe the basic corporate formalities, such as keeping separate books and records and holding shareholder and board meetings," *id.* at 691-92.[6]  *See also Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 594 (5th Cir. 1999) (question is whether parent "dominates [subsidiary] to the extent that [subsidiary] has, for practical purposes, surrendered its corporate identity").  The plaintiff bears the burden of proving this degree of control.  *Matter of Sims*, 994 F.2d at 217.

Here, there is no evidence that PPFA or the Affiliate Defendants disregarded corporate formalities or "utilized the corporate entity as a sham to perpetuate a fraud."  *Id.* at 218.  Rather, PPFA and the Affiliate Defendants overlap only in ordinary ways inherent in the nature of their membership relationship.  SUF ¶¶ 1-2, 4-7.  Courts have for decades recognized that these sorts of routine relationships are perfectly lawful and do not collapse parent and subsidiary.  Allowing a veil-piercing theory to be submitted to a jury on these undisputed facts would strip the fundamental protection of limited liability from all membership organizations—from trade

---

[6] The other factors are whether "the parent and the subsidiary have common directors or officers"; "the parent and the subsidiary have common business departments"; "the parent and the subsidiary file consolidated financial statements and tax returns"; "the parent finances the subsidiary"; "the parent caused the incorporation of the subsidiary"; "the parent pays the salaries and other expenses of the subsidiary"; "the subsidiary receives no business except that given to it by the parent"; "the subsidiary uses the subsidiary's property as its own"; and "the daily operations of the two corporations are not kept separate."  *Jon-T*, 768 F.2d at 691-92.

associations to fraternities to religious organizations—as well as other entities that maintain and rely on appropriate corporate separation.

PPFA has presented unrebutted expert testimony that PPFA and the Affiliate Defendants' organizational structures and financial relationships are "inconsistent with the Affiliate Defendants being the alter ego of PPFA."  SUF ¶¶ 11-13; *see Sw. Airlines Co. v. BoardFirst, LLC*, 2007 WL 4823761, at *11 (N.D. Tex. Sept. 12, 2007) (plaintiff met its burden on summary judgment by presenting "essentially unrefuted" expert testimony).  PPFA and the Affiliate Defendants are, moreover, separately incorporated 501(c)(3) nonprofits with wholly different operations.  SUF ¶¶ 1, 3.  They adhere to all corporate formalities, such as maintaining separate boards with separate bylaws, *id.* ¶ 3, issuing separate consolidated financial statements and tax returns, *id.*, and separately recording transactions with each other in their books and records, *id.* Expert analysis of PPFA's and each Affiliate Defendant's revenue and expenses shows that they are not financially dependent on each other.  *Id.* ¶ 12.  There is no evidence that, despite these clearly separate existences, PPFA so dominates the Affiliates that they have "surrendered [their] corporate identit[ies]."  *Gardemal*, 186 F.3d at 594.

In fact, Plaintiffs' expert conceded that he is not offering an opinion that PPFA controls the Affiliate Defendants or that indicia of an alter-ego relationship exists, and stated that he does not plan to do so.  SUF ¶ 13.  Any overlap here is a natural consequence of PPFA's membership structure and does not undermine its distinct corporate form.  Indeed, courts routinely reject assertions of alter-ego liability for parents and subsidiaries with similar degrees of overlap.  In *Gardemal*, for example, where the subsidiary "function[ed] as an autonomous business entity" and "ha[d] its own staff, its own assets, and even … its own insurance policies," the fact that the parent "maintain[ed] quality control by requiring [the subsidiary] to use certain operations

15

manuals" and "overs[aw the subsidiary's] advertising and marketing operations" was evidence of "nothing more than a typical corporate relationship between a parent and subsidiary." 186 F.3d at 593-94.  And in *Gibraltar Savings v. LDBrinkman Corp.*, 860 F.2d 1275, 1291-92 (5th Cir. 1988), the Fifth Circuit held that the alter-ego issue "should not have been submitted to the jury" when a parent and subsidiary kept separate payroll and accounting departments, maintained separate books and bank accounts, filed separate tax returns, and had overlapping but not identical boards of directors.  This was true even where the parent had provided legal and financial services to the subsidiary, which the court deemed "neither unusual nor improper."  *Id.* at 1291; *see also Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 2003 WL 21542491, at \*5 (N.D. Ill. July 3, 2003) (because it is "common practice that certain functions, such as accounting and legal services, be shared within a corporate family," these "shared functions are insufficient to pierce the corporate veil").[7]

Planned Parenthood is not a franchise, and PPFA does not exercise the type of top-down control over its affiliates that franchisors typically exercise over franchisees.  *See* SUF ¶¶ 2-3. But cases applying alter ego principles to franchise organizations support PPFA's no-derivative-liability arguments because they establish that, even in that more controlling context, "franchisors [can]not be held liable for the actions of franchisees simply because the franchisor sets rules, shares names with, and provides marketing and other services for franchisees." *Bittle-Lindsey v. Seegars Fence Co.*, 2020 WL 7265367, at \*4 (E.D.N.C. Dec. 10, 2020) (citing *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090 (10th Cir. 1991)); *see also Ross v. Colo. Outward Bound Sch., Inc.*, 603 F. Supp. 306, 310 (W.D.N.Y. 1985) ("mere existence of a garden-variety

---

[7] While *Catalina Marketing* considered whether companies were alter egos for the purpose of establishing personal jurisdiction, not imputing liability, the standard for jurisdiction is "less stringent" than that for liability.  *EsNtion Recs., Inc. v. JonesTM, Inc.*, 2008 WL 2415977, at \*5 (N.D. Tex. June 16, 2008).  If allegations were insufficient to establish alter ego jurisdiction, they would necessarily be insufficient to establish liability.

parent-subsidiary or franchisor-franchisee relationship" insufficient to establish jurisdiction under test that required "an alter-ego or piercing the corporate veil theory").

In *Evans*, the Tenth Circuit evaluated whether McDonald's and one of its franchisees were a "single employer" for the purpose of Title VII of the Civil Rights Act.  936 F.2d at 1089. As with the alter ego analysis, control is central to the single-employer test, *id.* at 1090, which is "a sort of labor-specific veil-piercing test" that is "demonstrably easier on plaintiffs than traditional veil piercing," *Lozada-Leoni v. MoneyGram Int'l, Inc.*, 2020 WL 7000874, at \*22-23 (E.D. Tex. Oct. 19, 2020) (citations omitted).  The Tenth Circuit held that while "McDonald's may have stringently controlled the manner of its franchisee's operations, conducted frequent inspections, and provided training for franchise employees," it did not control the franchisee's labor relations, which were the source of its liability.  *Evans*, 936 F.2d at 1090.

For the protection of the Planned Parenthood brand and the benefit of all affiliates, PPFA holds each affiliate to certain standards and provides resources to help them meet these standards.  SUF ¶¶ 4-7.  But just as McDonald's had no control over its franchisee's labor relations, PPFA has no control over—or even participation in—the Affiliate Defendants' submission of claims to Medicaid.  *Id.* ¶ 9.  Holding PPFA liable for these submissions based solely on its accredited membership structure would be entirely unprecedented, and would strip limited liability not only from PPFA but from countless "garden-variety parent-subsidiary or franchisor-franchisee relationship[s]," *Ross*, 603 F. Supp. at 310.

III. **There Is No Evidence That PPFA Engaged in a Conspiracy to Commit Health Care Fraud Under the TMFPA or the LMAPIL.**

Finally, Relator's state-law claims against PPFA for conspiracy to commit health care fraud cannot survive summary judgment because the record contains no evidence of the requisite agreement between PPFA and the Affiliate Defendants, let alone scienter or an affirmative

act.  To prove conspiracy, Relator must show "(1) the existence of an unlawful agreement between the Defendants to violate the FCA, and (2) at least one act performed in furtherance of that agreement."  *United States ex rel. Ramsey-Ledesma v. Censeo Health, L.L.C.*, 2016 WL 5661644, at *11 (N.D. Tex. Sept. 30, 2016) (elements of FCA conspiracy); *see Williams*, 2014 WL 3353247, at *4.  "As part of that showing, the plaintiff must demonstrate that the defendants shared a specific intent to defraud the government."  *Ramsey-Ledesma*, 2016 WL 5661644, at *11 (citing *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 343 (5th Cir. 2008)).  "Negligence alone" is not enough.  *Farmer*, 523 F.3d at 343.

For the reasons explained in the Affiliate Defendants' brief, Relator can point to no evidence of an actual agreement between PPFA and the Affiliate Defendants, let alone that they shared a specific intent to defraud the government.  Affiliate Def. MSJ at 54; *Farmer*, 523 F.3d at 344 (evidence that defendant signed and submitted fraudulent claims was at most proof of negligence, not an agreement or specific intent to defraud).  And even if the evidence were otherwise sufficient to allow the conspiracy claims to proceed generally, they can under no circumstance proceed against PPFA because—given that PPFA undisputedly does not submit Medicaid claims and there is no evidence that it participates in the Affiliate Defendants' submission of Medicaid claims, SUF ¶¶ 8-9—Relator cannot show that PPFA took an act "in furtherance of" an agreement, *Ramsey-Ledesma*, 2016 WL 5661644, at *11-12 (rejecting allegations that defendant "direct[ed]" and "supervis[ed]" fraudulent billing scheme).

## REQUEST FOR RELIEF

For the foregoing reasons, PPFA respectfully requests that the Court enter an order granting summary judgment in its favor on all claims.


Dated:  January 6, 2023                              Respectfully submitted,

O'MELVENY & MYERS LLP

By: */s/ Danny S. Ashby*

DANNY S. ASHBY
Texas Bar No. 01370960
dashby@omm.com
MEGAN R. WHISLER
Texas Bar No. 24079565
mwhisler@omm.com
2501 N. Harwood Street, Suite 1700
Dallas, Texas 75201
T: (972) 360-1900
F: (972) 360-1901

LEAH GODESKY (*pro hac vice*)
lgodesky@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
T: (310) 553-6700
F: (310) 246-6779

RYAN BROWN ATTORNEY AT LAW
RYAN PATRICK BROWN
Texas Bar No. 24073967
ryan@ryanbrownattorneyatlaw.com
1222 S. Fillmore St.
Amarillo, Texas 79101
T: (806) 372-5711
F: (806) 350-7716

*Attorneys for Defendant Planned Parenthood
Federation of America, Inc.*

## CERTIFICATE OF SERVICE

 I hereby certify that on January 6, 2023, a copy of the foregoing was served pursuant to

the Court's ECF system.

     */s/ Danny S. Ashby*
     Danny S. Ashby