# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

|  |  |  |  |
|---|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ALEX DOE, Relator, THE STATE OF TEXAS, *ex rel.* ALEX DOE, Relator, THE STATE OF LOUISIANA, *ex rel.* ALEX DOE, Relator, | § § § § § § | | No. 2:21-cv-022-Z |
| Plaintiffs, | § § | | Date:  January 6, 2023 |
| v. | § § | | |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., PLANNED PARENTHOOD GULF COAST, INC., PLANNED PARENTHOOD OF GREATER TEXAS, INC., PLANNED PARENTHOOD SOUTH TEXAS, INC., PLANNED PARENTHOOD CAMERON COUNTY, INC., PLANNED PARENTHOOD SAN ANTONIO, INC., | § § § § § § § § § § § | | |
| Defendants. | § § | | |

## APPENDIX TO PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING BRIEF

# TABLE OF CONTENTS

| Exhibit | Description | Page |
|---|---|---|
| 1 | 12/03/2019 PPFA Federated Architecture | 1 |
| 2 | Excerpts from PPFA's Consolidated Financial Statements for 2020-2021 | 3 |
| 3 | 2022 PPFA Bylaws | 7 |
| 4 | Excerpts from PPFA's 6/27/2022 Responses to Relator's First Interrogatories | 54 |
| 5 | Excerpts from 7/1/2022 Expert Report of Donald E. Lochabay, Jr. | 61 |
| 6 | 9/13/2022 Declaration of V. Barrow-Klein (Dkt. 174-4) | 68 |
| 7 | 9/13/2022 Declaration of V. Barrow-Klein (Dkt. 176-1) | 75 |
| 8 | Excerpts from 9/16/2022 Supplemental Expert Report of Donald E. Lochabay, Jr. | 80 |
| 9 | Excerpts from 10/6/2022 Expert Report of Louis G. Dudney | 85 |
| 10 | 10/6/2022 Declaration of V. Barrow-Klein | 125 |
| 11 | Excerpts from 11/16/2022 R. Exnicious Deposition | 129 |
| 12 | Excerpts from Texas's 11/28/2022 Responses to PPFA's First Requests for Admission | 137 |
| 13 | Excerpts from 11/28/2022 K. Custer Deposition | 144 |
| 14 | Excerpts from 11/29/2022 V. Barrow-Klein Corporate Deposition | 207 |
| 15 | Excerpts from 11/30/2022 V. Barrow-Klein Individual Deposition | 240 |
| 16 | Excerpts from 12/01/2022 A. Curtis Deposition | 253 |
| 17 | Excerpts from 12/02/2022 A. Doe (Relator) Deposition | 263 |
| 18 | Excerpts from 12/06/2022 E. Zalkovsky Deposition | 271 |
| 19 | Excerpts from 12/07/2022 J. Goldstein Deposition | 279 |
| 20 | Excerpts from 12/08/2022 T. Kramer Deposition | 287 |
| 21 | Excerpts from 12/08/2022 D. Lochabay Deposition | 294 |
| 22 | 1/5/23 Declaration of V. Barrow-Klein | 308 |

# EXHIBIT 1

# EXHIBIT 1

## *FILED UNDER SEAL*

# EXHIBIT 2

**PLANNED PARENTHOOD FEDERATION
OF AMERICA, INC. AND RELATED ENTITIES**

Consolidated Financial Statements and Supplementary Information

June 30, 2021 and 2020

(With Independent Auditors' Report Thereon)

PPFA00000001

**PLANNED PARENTHOOD FEDERATION
OF AMERICA, INC. AND RELATED ENTITIES**

Notes to Consolidated Financial Statements

June 30, 2021 and 2020

**(1) Organization and Summary of Significant Accounting Policies**

*Organization*

**(a) *Planned Parenthood Mission Statement – A Reason for Being***

Planned Parenthood Federation of America, Inc. (PPFA) believes in the fundamental right of each individual, throughout the world, to manage their fertility, regardless of the individual's income, marital status, race, ethnicity, sexual orientation, age, national origin, or residence. PPFA believes that respect and value for diversity in all aspects of its organization are essential to its well-being. PPFA believes that reproductive self-determination must be voluntary and preserve the individual's right to privacy. PPFA further believes that such self-determination will contribute to an enhancement of the quality of life, strong family relationships, and population stability.

Based on these beliefs, and reflecting the diverse communities within which PPFA operates, the mission of PPFA and its affiliates is to provide leadership in:

i.  ensuring the provision of comprehensive reproductive and complementary health care services in settings which preserve and protect the essential privacy and rights of each individual;

ii.  advocating public policies which guarantee these rights and ensure access to such services;

iii.  providing educational programs which enhance understanding of individual and societal implications of human sexuality; and

iv.  promoting research and the advancement of technology in reproductive health care and encouraging the understanding of their inherent bioethical, behavioral, and social implications.

**(b) *Organizational Structure***

The accompanying consolidated financial statements include the financial position, changes in net assets, and cash flows of PPFA, Planned Parenthood Action Fund, Inc. and related entities (the Action Fund), and Planned Parenthood Global, Inc. and related entities (PP Global) (collectively, the Organization).

PPFA, which is the nation's oldest and largest voluntary family planning organization, maintains primary domestic offices in New York City, NY, Washington, DC, Miami, FL and San Francisco, CA. The Organization is also affiliated with 49 independent medical and related entities, the Planned Parenthood Affiliates (PP Affiliates), all of which are separately incorporated in their respective states and which along with PPFA collectively constitute PPFA's membership. The PP Affiliates in turn control 114 ancillary entities (including 61 Political Action Committees and 45 501(c)(4) organizations). The Organization, PP Affiliates and the ancillary organizations together comprise Planned Parenthood. The accompanying consolidated financial statements do not include the financial position or the changes in net assets and cash flows of these independent PP Affiliates or their ancillary organizations.

The Action Fund was incorporated in 1989 to encourage and protect informed individual choice regarding reproductive healthcare, to advocate public policies, which guarantee the right, as well as full and nondiscriminatory access, to such care, and to foster and preserve a social and political climate favorable to the exercise of reproductive choice.

9                                                                                          (Continued)

**PLANNED PARENTHOOD FEDERATION
OF AMERICA, INC. AND RELATED ENTITIES**

Notes to Consolidated Financial Statements

June 30, 2021 and 2020

On September 30, 2015, PP Global was incorporated to consolidate oversight and management of PPFA's international programs, maintain several international offices and to further its mission to support efforts to ensure that women, men, and young people in some of the world's most neglected areas have access to reproductive and sexual healthcare.

The individual entities have interrelated directors/trustees and share common facilities and personnel. Various expenses, including occupancy costs and salaries, have been allocated among PPFA, the Action Fund, and PP Global based upon services rendered by common personnel and usage of common facilities.

PPFA and PP Global are not-for-profit organizations exempt from federal income taxes under Section 501(c)(3) of the Internal Revenue Code (the Code) and from state and local taxes under comparable laws. The Action Fund is exempt from federal income taxes under Section 501(c)(4) of the Code and from state and local taxes under comparable laws. The Organization recognizes the effect of income tax positions only if those positions are more likely than not of being sustained. The Organization believes it has taken no significant uncertain tax positions.

*Summary of Significant Accounting Policies*

**(c)  Principles of Consolidation**

All significant intercompany accounts and transactions have been eliminated in consolidation.

**(d)  Basis of Accounting**

The accompanying consolidated financial statements of the Organization have been prepared using the accrual basis of accounting and to conform to U.S. generally accepted accounting principles as applicable to not-for-profit organizations.

**(e)  Functional Allocation of Expenses**

The consolidated statement of functional expenses presents expenses classified according to the programs and supporting services for which they were incurred. The Organization allocates a portion of general and administrative costs that benefit multiple functional areas across programs and supporting services based on square footage or headcount. The various programs and supporting services of the Organization are as follows:

*Healthcare* – programs designed to improve and protect the ability to provide high-quality reproductive healthcare for all.

*Education* – programs designed to educate the public regarding reproductive health.

*Advocacy* – programs designed to empower all people to build the future they want and change cultural attitudes about reproductive health.

*Research* – programs designed to promote clinical research.

*Management and general* – involves the direction of the overall affairs of the Organization, which includes accounting, legal, administration, and related areas.

**6**

PPFA00000012

# EXHIBIT 3

# EXHIBIT 3
## *FILED UNDER SEAL*

# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| United States of America | § | |
| | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| | § | CIVIL ACTION NO. 2:21-CV- |
| | § | 00022-Z |
| The State of Texas | § | |
| | § | Date:      June 27, 2022 |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| | § | |
| The State of Louisiana | § | |
| | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| Planned Parenthood Federation of America, Inc., | § | |
| Planned Parenthood Gulf Coast, Inc., Planned | § | |
| Parenthood of Greater Texas, Inc., Planned | § | |
| Parenthood South Texas, Inc., Planned Parenthood | § | |
| Cameron County, Inc., Planned Parenthood San | § | |
| Antonio, Inc., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## <u>DEFENDANT PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.'S RESPONSES AND OBJECTIONS TO RELATOR'S FIRST INTERROGATORIES</u>

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant Planned Parenthood Federation of America, Inc. ("PPFA") hereby submits its responses and objections to Relator Alex Doe's ("Relator") First Interrogatories (collectively, "Interrogatories," and, individually, "Interrogatory") as follows:

**55**

2.      PPFA objects to Relator's definition of "Person" as vague, ambiguous, and/or overbroad.  Relator's definition would render the Interrogatories unduly burdensome and oppressive and could result in responses that are largely irrelevant and/or not material to the issues in the current litigation.  PPFA further objects to Relator's definition of "Person" to the extent it refers to affiliates, divisions, controlled companies, subsidiaries, and/or otherwise related entities and all of his, her, or its current and former officers, directors, employees, agents, representatives, attorneys, and accountants.  In responding to the Interrogatories, PPFA will define "Person" to mean natural persons and legal entities.

3.      PPFA objects to Relator's definition of "Defendants" to the extent it is vague, ambiguous, and/or overbroad, or purports to require PPFA to respond to these Interrogatories on behalf of any other defendant, entities which PPFA does not control and within which PPFA is not able to search for information responsive to these Interrogatories.

4.      PPFA objects to Relator's definition of "Statement" as overly broad and unduly burdensome to the extent such definition purports to require PPFA to search for information neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence.  PPFA further objects to the definition as vague and ambiguous to the extent it includes statements "otherwise adopted or approved by the person making it."

## RESPONSES AND OBJECTIONS TO SPECIFIC INTERROGATORIES

### INTERROGATORY 1:

Identify each claim submitted by Defendants to Texas Medicaid for Fee For Service delivered on and between January 1, 2010 and the present, including but not limited to: (a) the date the service was provided; (b) the amount of the claim submitted to Texas Medicaid; (c) the

Texas Provider Identification Number of the Defendant that submitted the claim (the suffix as well as the base); (d) the address of the Defendant that submitted the claim; (e) the address of the location where the service was provided; (f) the amount of the payment you received for the claim and the identity of the payor; (g) the date you received the payment for the claim.

**RESPONSE TO INTERROGATORY 1:**

PPFA refers to and incorporates its Preliminary Statement, General Objections, and Objections to Definitions as though set forth fully in this Response.  In addition, PPFA objects to this Interrogatory to the extent (a) it is vague and ambiguous with respect to the undefined terms "claim," "you," "Fee for Service," and "delivered"; (b) it seeks information from PPFA more properly sought from other defendants; and (c) it is duplicative of an identical Interrogatory issued to other defendants.

Subject to and without waiving the foregoing objections, PPFA responds as follows: PPFA has not submitted any claims to Texas Medicaid for Fee for Service delivered on and between January 1, 2010 and the present.  PPFA does not provide any healthcare services and as such has never submitted any claims to Texas Medicaid.

**INTERROGATORY 2:**

Identify each claim submitted through a managed care organization for services provided by Defendants on and between January 1, 2010 and the present, including but not limited to: (a) the date the service was provided; (b) the amount of the claim submitted to the managed care organization; (c) the Texas Provider Identification Number of the Defendant that submitted the claim (the suffix as well as the base); (d) the address of the Defendant that submitted the claim; (e) the address of the location where the service was provided; (f) the amount of the payment you

**57**

received for the claim and the identity of the payor; (g) the date you received the payment for the claim.

**RESPONSE TO INTERROGATORY 2:**

PPFA refers to and incorporates its Preliminary Statement, General Objections, and Objections to Definitions as though set forth fully in this Response.  In addition, PPFA objects to this Interrogatory to the extent (a) it is vague and ambiguous with respect to the undefined terms "claim," "you," "managed care organization," and "services provided"; (b) it seeks information from PPFA more properly sought from other defendants, which have relevant information in their possession, custody, or control; (c) it is duplicative of an identical Interrogatory issued to other defendants; and (d) it is duplicative of Interrogatory No. 4.

Subject to and without waiving the foregoing objections, PPFA responds as follows: PPFA has not submitted any claims through a managed care organization for services provided on and between January 1, 2010 and the present.  PPFA does not provide any healthcare services and as such has never submitted any claims through a managed care organization.

**INTERROGATORY 3:**

Identify each claim submitted by Defendants to Louisiana Medicaid for Fee For Service delivered on and between January 1, 2010 and the present, including but not limited to: (a) the date the service was provided; (b) the amount of the claim submitted to Louisiana Medicaid; (c) the National Provider Identification Number and/or the Louisiana Provider Identification Number of the Defendant that submitted the claim (the suffix as well as the base); (d) the address of the Defendant that submitted the claim; (e) the address of the location where the service was provided; (f) the amount of the payment you received for the claim and the identity of the payor; (g) the date you received the payment for the claim.

**RESPONSE TO INTERROGATORY 3:**

PPFA refers to and incorporates its Preliminary Statement, General Objections, and Objections to Definitions as though set forth fully in this Response.  In addition, PPFA objects to this Interrogatory to the extent (a) it is vague and ambiguous with respect to the undefined terms "claim," "you," "Fee for Service," and "delivered"; (b) it seeks information from PPFA more properly sought from other defendants, which have relevant information in their possession, custody, or control; and (c) it is duplicative of an identical Interrogatory issued to other defendants.

Subject to and without waiving the foregoing objections, PPFA responds as follows: PPFA has not submitted any claims to Louisiana Medicaid for Fee for Service delivered on and between January 1, 2010 and the present.  PPFA does not provide any healthcare services and as such has never submitted any claims to Louisiana Medicaid.

**INTERROGATORY 4:**

Identify each claim submitted through a managed care organization for services provided by Defendants on and between January 1, 2010 and the present, including but not limited to: (a) the date the service was provided; (b) the amount of the claim submitted to Louisiana Medicaid; (c) the National Provider Identification Number and/or the Louisiana Provider Identification Number of the Defendant that submitted the claim (the suffix as well as the base); (d) the address of the Defendant that submitted the claim; (e) the address of the location where the service was provided; (f) the amount of the payment you received for the claim and the identity of the payor; (g) the date you received the payment for the claim.

**RESPONSE TO INTERROGATORY 4:**

PPFA refers to and incorporates its Preliminary Statement, General Objections, and Objections to Definitions as though set forth fully in this Response.  In addition, PPFA objects to this Interrogatory to the extent (a) it is vague and ambiguous with respect to the undefined terms "claim," "you," "managed care organization," and "services provided"; (b) it seeks information from PPFA more properly sought from other defendants, which have relevant information in their possession, custody, or control; (c) it is duplicative of an identical Interrogatory issued to other defendants; and (d) it is duplicative of Interrogatory No. 2.

Subject to and without waiving the foregoing objections, PPFA responds as follows: PPFA has not submitted any claims through a managed care organization for services provided on and between January 1, 2010 and the present.  PPFA does not provide any healthcare services and as such has never submitted any claims through a managed care organization.

**INTERROGATORY 5:**

Identify each payment you received from any state or federal program from January 1, 2010 to present that you returned or refunded to the state or federal government, including in your answer (a) the name of the federal program, (b) the date you received the payment, and (c) the date you returned the payment.

**RESPONSE TO INTERROGATORY 5:**

PPFA refers to and incorporates its Preliminary Statement, General Objections, and Objections to Definitions as though set forth fully in this Response.  In addition, PPFA objects to this Interrogatory to the extent (a) it is vague and ambiguous with respect to the undefined terms "you," "payment," and "program"; (b) it is overly broad, burdensome, and not calculated to lead to the production of admissible evidence or information; and (c) it seeks PPFA's sensitive,

60

# EXHIBIT 5

# EXHIBIT 5

*FILED UNDER SEAL*

# EXHIBIT 6

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

| | |
|---|---|
| United States of America<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Texas<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Louisiana<br>*ex rel.* ALEX DOE, Relator,<br><br>     Plaintiffs,<br><br>v.<br><br>Planned Parenthood Federation of America,<br>Inc., Planned Parenthood Gulf Coast, Inc.,<br>Planned Parenthood of Greater Texas, Inc.,<br>Planned Parenthood South Texas, Inc.,<br>Planned Parenthood Cameron County, Inc.,<br>Planned Parenthood San Antonio, Inc.,<br><br>     Defendants. | NO. 2:21-CV-00022-Z |

## DECLARATION OF VICKIE JANE BARROW-KLEIN

I, Vickie Jane Barrow-Klein, declare and state as follows:

1.     I am currently employed by Planned Parenthood Federation of America, Inc. ("PPFA") as the Chief Financial Officer and Chief Operating Officer. I have served as Chief Financial Officer since March 2018 and as Chief Operating Officer since January 2022. Prior to that, I spent more than 20 years in the international development non-profit sector with experience working in complex federated organizations at a global scale.

2.     I am over the age of 18 and have personal knowledge of the matters herein or have acquired such knowledge by personally examining the business records kept in the normal course of business by PPFA. If called upon to testify, I could and would testify to the facts in this declaration.

**69**

3.      I make this declaration in support of Planned Parenthood Federation of America, Inc.'s Motion for Protective Order in the above-captioned case.  I am familiar with the claims and allegations in the above-captioned case based on (among other things) my review of the Complaint filed by Relator and the Complaint in Intervention filed by the State of Texas.

4.      I am familiar with PPFA's business practices regarding the treatment of confidential information consisting of or relating to, among other things, PPFA's highly sensitive strategic and programming priorities; the operations of PPFA and its Affiliates; PPFA's finances or the finances of a PPFA Affiliate; internal analysis relating to the business and performance of PPFA or one of its Affiliates.

5.      PPFA has 49 member Affiliates, including Planned Parenthood Gulf Coast, Planned Parenthood of Greater Texas, and Planned Parenthood South Texas, that are, at their core, providers of healthcare services.  The same is true for former affiliates Planned Parenthood Cameron County and Planned Parenthood San Antonio.  As a Federation that connects these Affiliates with one another and with other Affiliates across the United States, PPFA competes with other organizations that facilitate the provision of healthcare services, including in facilitating the ability of its Affiliates to compete for patients in the market place.  As a 501(c)(3) non-profit organization, PPFA is also reliant on securing donations and other grants to fund its mission of facilitating high-quality reproductive healthcare to patients around the country.  In that context, PPFA is competing with similarly situated organizations to secure access to donations and grants, and to facilitate the access to donations and grants for its Affiliates.  In addition, PPFA's mission elicits strong opposition actors who have conducted acts against PPFA and Affiliates that range from harassing business and mission partners to acts of violence. Courts have recognized this in situations where parties have sought to publicly reveal PPFA's

2

**70**

internal documents. *See Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*, __ F. Supp. 3d __, 2020 WL 2067500, at *4 (N.D. Cal. Apr. 29, 2020) ("CMP's plan was to create a video campaign…against Planned Parenthood with the objective of creating 'maximum negative impact – legal, political, professional, public – on [Planned Parenthood] and to 'create public outrage towards' Planned Parenthood.")

6. I understand that the Relator has challenged the confidentiality and attorneys'-eyes-only designations that PPFA applied to certain documents that PPFA produced in this matter. I understand that under the Protective Order entered in this matter, the party producing a document can produce a document either with no confidentiality designation, with a designation of "Confidential," or with a designation of "Confidential – Attorneys' Eyes Only." I further understand that the Relator is challenging PPFA's designations for 43 documents. As explained below, those 43 documents all concern PPFA's accreditation process for, and analysis of, its Affiliates and fit in the below categories of confidential and highly or especially sensitive information. Attached as Exhibit 1 is a list of the 43 documents organized by category.

**Documents Designated Attorneys' Eyes Only**

7. PPFA considers and treats the information it has designated "Attorneys' Eyes Only" as especially confidential, proprietary, and/or competitively sensitive. Attached as Exhibit 2 is an illustrative selection of documents in this category. PPFA takes reasonable measures to protect this confidential, proprietary, or competitively sensitive information from public disclosure, including by storing the information in secure files, by limiting internal distribution to only those who require access to the information to carry out their duties and responsibilities, and implementing security procedures. The category of documents designated Attorneys' Eyes Only includes documents not shared with the public, as well as certain

3

71

documents and information which is not known by or routinely shared with PPFA Affiliates. PPFA's employees also acknowledge receipt of policy documents that require PPFA employees to keep confidential internal private information.

8.     The category of documents designated Attorneys' Eyes Only reflect PPFA's highly sensitive confidential information, including non-public information about the operations of PPFA and several of its Affiliates; analysis of the financial and other performance of PPFA Affiliates; PPFA's assessment of the success and performance of PPFA's Affiliates; and the strategic or programmatic priorities of PPFA and/or its Affiliates.  In the regular course of business, PPFA does not release publicly the information reflected in the documents listed in this category.

9.     Disclosure of this confidential and proprietary information could cause PPFA financial harm if it is obtained by the general public or PPFA's competitors, because it would reveal detailed information about the operations of PPFA and its Affiliates, and it could disrupt the ability of an Affiliate to provide care to its patients.

**Documents Designated "Confidential"**

10.     PPFA considers and treats the information designated "Confidential" as confidential, proprietary, and/or competitively sensitive.  Attached as Exhibit 3 is an illustrative selection of documents in this category.  PPFA takes reasonable measures to protect this confidential, proprietary, or competitively sensitive information from public disclosure, including by storing the information in secure files, implementing security procedures, and by limiting internal distribution to only those who require access to the information to carry out their duties and responsibilities.  PPFA's employees also acknowledge receipt of policy documents that require PPFA employees to keep confidential internal private information.

11.     The documents listed in this category contain information that reflects PPFA's confidential operational or competitive priorities and how PPFA performs analyses of those priorities that do not rise to the level of the "Attorneys' Eyes Only" designation but is nevertheless confidential and sensitive.  This is not information that PPFA ordinarily releases publicly.

12.     Disclosure of this confidential and proprietary information could cause PPFA financial harm if it is obtained by the general public or PPFA's competitors, such as by revealing non-public information revealing how PPFA assesses the efficacy of its programs, or the strategic and operating priorities of PPFA or its Affiliates.

**73**

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on September 13, 2022 in Mechanicsville, Maryland.

Vickie Jane Barrow-Klein

6

# EXHIBIT 7

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| United States of America<br>*ex rel.* ALEX DOE, Relator, | § § § | |
| | § | |
| The State of Texas<br>*ex rel.* ALEX DOE, Relator, | § § § | NO. 2:21-CV-00022-Z |
| | § | |
| The State of Louisiana<br>*ex rel.* ALEX DOE, Relator, | § § § | |
| | § | |
| Plaintiffs, | § § | |
| | § | |
| v. | § § | |
| | § | |
| Planned Parenthood Federation of America,<br>Inc., Planned Parenthood Gulf Coast, Inc.,<br>Planned Parenthood of Greater Texas, Inc.,<br>Planned Parenthood South Texas, Inc.,<br>Planned Parenthood Cameron County, Inc.,<br>Planned Parenthood San Antonio, Inc., | § § § § § § § | |
| | § | |
| Defendants. | § § | |

<u>**DECLARATION OF VICKIE JANE BARROW-KLEIN**</u>

I, VICKIE JANE BARROW-KLEIN, declare and state as follows:

1.       I am currently employed by Planned Parenthood Federation of America, Inc.

("PPFA") as the Chief Financial Officer and Chief Operating Officer.  I have served as Chief

Financial Officer since March 2018 and as Chief Operating Officer since January 2022.  Prior to

that, I spent more than 20 years in the international development non-profit sector with

experience working in complex federated organizations at a global scale.

2.       I am over the age of 18 and have personal knowledge of the matters herein or

have acquired such knowledge by personally examining the business records kept in the normal

course of business by PPFA.  If called upon to testify, I could and would testify to the facts in

this declaration.

**76**

3. I make this declaration in support of Planned Parenthood Federation of America, Inc.'s Opposition to Relator's Motion to Compel in the above-captioned case. I am familiar with the claims and allegations in the case based on my review of the Complaint filed by Relator and the Complaint in Intervention filed by the State of Texas.

4. PPFA does not maintain a central repository of current and historical organizational charts, and an ad-hoc search of electronically stored information ("ESI") for organizational charts covering a 7-year time period would be very burdensome. Organizational charts are created on an ad-hoc basis by employees in many different departments and groups at PPFA. To search for potentially responsive organizational charts, PPFA would therefore need to collect and search dozens of custodians' files. For example, between 2015 and 2022, PPFA has had between 13 and 20 employees in the human-resources department each year. As such, PPFA would need to collect and search at least 20 custodians' files just to determine how these charts were created and managed in a single department.

5. A keyword-based ESI collection and review is also unlikely to be reliable, given that organizational-chart documents are not always specifically identified as such when they are attached to email communications.

6. PPFA does not maintain policies or procedures regarding the prevention, detection, or reporting of healthcare fraud and abuse by PPFA, because PPFA does not provide healthcare services or receive Medicaid reimbursements.

7. PPFA does not provide training regarding the prevention, detection, or reporting of healthcare fraud and abuse, because PPFA does not provide healthcare services or receive Medicaid reimbursements.

8.      PPFA does not have a Health Care Compliance Program or Health Care

Compliance Officer.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on September 13, 2022 in Mechanicsville, Maryland.

_Vickie J. Barrow-Klein_
Vickie Jane Barrow-Klein

# EXHIBIT 8

# EXHIBIT 8

## *FILED UNDER SEAL*

# EXHIBIT 9

# EXHIBIT 9

## *FILED UNDER SEAL*

# EXHIBIT 10

**'LLIN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| United States of America<br>*ex rel.* ALEX DOE, Relator, | § § § | |
| The State of Texas<br>*ex rel.* ALEX DOE, Relator, | § § § | NO. 2:21-CV-00022-Z |
| The State of Louisiana<br>*ex rel.* ALEX DOE, Relator, | § § § | |
|     Plaintiffs, | § § | |
| v. | § § | |
| Planned Parenthood Federation of America,<br>Inc., Planned Parenthood Gulf Coast, Inc.,<br>Planned Parenthood of Greater Texas, Inc.,<br>Planned Parenthood South Texas, Inc.,<br>Planned Parenthood Cameron County, Inc.,<br>Planned Parenthood San Antonio, Inc., | § § § § § § § § | |
|     Defendants. | § § | |

## <u>DECLARATION OF VICKIE JANE BARROW-KLEIN</u>

I, Vickie Jane Barrow-Klein, declare and state as follows:

1.    I am currently employed by Planned Parenthood Federation of America, Inc.

("PPFA") as the Chief Financial Officer and Chief Operating Officer. I have served as Chief

Financial Officer since March 2018 and as Chief Operating Officer since January 2022. Prior to

that, I spent more than 20 years in the international development non-profit sector with

experience working in complex federated organizations at a global scale.

2.    I am over the age of 18 and have personal knowledge of the matters herein or

have acquired such knowledge by personally examining the business records kept in the normal

course of business by PPFA. If called upon to testify, I could and would testify to the facts in

this declaration.

**126**

3.      I make this declaration in support of the Expert Report of Louis G. Dudney, CPA, CFF.

4.      Subject to the Planned Parenthood Online ("PPOL") policies, PPFA Affiliates pay quarterly dues to PPFA.  Due to the substantial economic effects of the COVID-19 pandemic on healthcare providers, the PPFA Board waived quarterly PPOL dues for the quarter ending June 30, 2020.

5.      PPFA maintains payroll and employee rosters that are wholly separate from any payroll and employee rosters maintained by Planned Parenthood Gulf Coast, Inc.; Planned Parenthood of Greater Texas, Inc.; Planned Parenthood South Texas, Inc.; Planned Parenthood Cameron County, Inc.; and Planned Parenthood San Antonio, Inc. (the "Affiliate Defendants").

6.      PPFA's employees' salaries are paid by PPFA.  PPFA does not pay the salaries of any employees of the Affiliate Defendants, nor do the Affiliate Defendants pay the salaries of any PPFA employees.

2

PPFA00413151

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on October 6, 2022 in Mechanicsville, Maryland.

Vickie Jane Barrow-Klein

3

**128**

PPFA00413152

# EXHIBIT 11

# EXHIBIT 11

*FILED UNDER SEAL*

# EXHIBIT 12

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>*ex rel.* ALEX DOE, Relator, | § <br> § <br> § | |
| THE STATE OF TEXAS,<br>*ex rel.* ALEX DOE, Relator, | § <br> § <br> § | |
| THE STATE OF LOUISIANA,<br>*ex rel.* ALEX DOE, Relator, | § <br> § <br> § | |
| Plaintiffs, | § <br> § | |
| v. | § <br> § | Civil Action No. 2:21-CV-00022-Z |
| PLANNED PARENTHOOD<br>FEDERATION OF AMERICA, INC.,<br>PLANNED PARENTHOOD GULF<br>COAST, INC., PLANNED<br>PARENTHOOD OF GREATER<br>TEXAS, INC., PLANNED<br>PARENTHOOD SOUTH TEXAS,<br>INC., PLANNED PARENTHOOD<br>CAMERON COUNTY, INC.,<br>PLANNED PARENTHOOD SAN<br>ANTONIO, INC., | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | |
| Defendants. | § <br> § | |

**STATE OF TEXAS'S OBJECTIONS, STATEMENTS OF PRIVILEGES,
AND RESPONSES TO PLANNED PARENTHOOD FEDERATION OF
AMERICA, INC.'S FIRST SET OF REQUESTS FOR ADMISSION
TO THE STATE OF TEXAS**

To:   Danny S. Ashby, Justin R. Chapa and Megan R. Whisler, O'Melveny & Myers
      LLP, 2501 N. Harwood Street Suite 1700, Dallas, Texas 75201; Leah Godesky
      and Craig P. Bloom, O'Melveny & Myers LLP, 1999 Avenue of the Stars, 8th
      Floor, Los Angeles, California 90067; Ross Galin, O'Melveny & Myers, LLP,

7 Times Square, New York, New York 10036; and Amanda Santella, O'Melveny & Myers, LLP, 1625 Eye Street, NW, Washington, D.C. 20006.

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, Plaintiff, The State of Texas serves its Objections, Statements of Privilege, and Responses to Planned Parenthood Federation of America, Inc.'s First Set of Requests for Admission to the State of Texas.

### RESPONSES TO REQUESTS FOR ADMISSION

### REQUEST FOR ADMISSION NO. 1

Admit that PPFA does not issue stock.

**ANSWER: CANNOT TRUTHFULLY ADMIT OR DENY. The State of Texas has no direct knowledge, or any reason to have any direct knowledge, of whether or not PPFA issues stock. What information the State has regarding this RFA has solely been gathered during discovery in this litigation. The State lacks sufficient knowledge to either admit or deny this RFA because the information the State knows or can readily obtain is insufficient to enable the State to truthfully admit or deny this RFA.**

### REQUEST FOR ADMISSION NO. 2

Admit that PPFA does not own any stock issued by any Affiliate.

**ANSWER: CANNOT TRUTHFULLY ADMIT OR DENY. The State of Texas has no direct knowledge, or any reason to have any direct knowledge, of whether or not PPFA owns stock issued by any Affiliate. What information the State has regarding this RFA has solely been gathered during discovery in this litigation. The State lacks sufficient knowledge to either admit or deny this RFA because the information the State knows or can readily obtain is insufficient to enable the State to truthfully admit or deny this RFA.**

**REQUEST FOR ADMISSION NO. 12**

Admit that PPFA and the Affiliates maintain separate bank accounts.

**ANSWER: CANNOT TRUTHFULLY ADMIT OR DENY. The State of Texas has no direct knowledge, or any reason to have any direct knowledge, of whether or not PPFA and the Affiliates maintain separate bank accounts. What information the State has regarding this RFA has solely been gathered during discovery in this litigation. The State lacks sufficient knowledge to either admit or deny this RFA because the information the State knows or can readily obtain is insufficient to enable the State to truthfully admit or deny this RFA.**

**REQUEST FOR ADMISSION NO. 13**

Admit that PPFA and the Affiliates maintain separate books and records.

**ANSWER: CANNOT TRUTHFULLY ADMIT OR DENY. The State of Texas has no direct knowledge, or any reason to have any direct knowledge, of whether or not PPFA and the Affiliates maintain separate books and records. What information the State has regarding this RFA has solely been gathered during discovery in this litigation. The State lacks sufficient knowledge to either admit or deny this RFA because the information the State knows or can readily obtain is insufficient to enable the State to truthfully admit or deny this RFA.**

**REQUEST FOR ADMISSION NO. 14**

Admit that the Affiliates are not financially dependent upon PPFA.

**ANSWER: DENY**

**REQUEST FOR ADMISSION NO. 15**

Admit that PPFA does not have a provider agreement with Texas Medicaid.

**ANSWER: ADMIT**

**REQUEST FOR ADMISSION NO. 16**

Admit that PPFA does not provide medical services that are billed to Texas Medicaid.

**ANSWER: ADMIT**

**140**

**REQUEST FOR ADMISSION NO. 17**

Admit that PPFA does not submit claims to Texas Medicaid for Fee for Service.

**ANSWER: ADMIT that PPFA has not submitted claims to Texas Medicaid for Fee for Service.**

**REQUEST FOR ADMISSION NO. 18**

Admit that PPFA does not submit claims to Texas Medicaid through managed care organizations.

**ANSWER: ADMIT that PPFA has not submitted claims to Texas Medicaid through managed care organizations.**

**REQUEST FOR ADMISSION NO. 19**

Admit that PPFA does not receive payments from Texas Medicaid.

**ANSWER: ADMIT that PPFA has not directly received payments from Texas Medicaid.**

**REQUEST FOR ADMISSION NO. 20**

Admit that PPFA does not control the Affiliate Defendants' submission of claims through Texas or Louisiana Medicaid.

**ANSWER: DENY, as to Texas Medicaid; CANNOT TRUTHFULLY ADMIT OR DENY, as to Louisiana Medicaid. The State of Texas has no direct knowledge, or any reason to have any direct knowledge, of the submission of claims by any entity through Louisiana Medicaid. The State lacks sufficient knowledge to either admit or deny this RFA as to Louisiana Medicaid because the information the State knows or can readily obtain is insufficient to enable the State to truthfully admit or deny this RFA as to Louisiana Medicaid.**

141

**REQUEST FOR ADMISSION NO. 21**

Admit that You never asked PPFA to return any money to Texas Medicaid during the pendency of proceedings to terminate the Affiliates' provider credentials under Texas Medicaid.

**ANSWER: ADMIT that the State did not directly ask PPFA to return any money to Texas Medicaid during the pendency of proceedings to terminate the Affiliates' provider credentials under Texas Medicaid.**

**REQUEST FOR ADMISSION NO. 22**

Admit that You have never asked any provider to repay money to Texas Medicaid during the pendency of proceedings to terminate that provider's credentials under Texas Medicaid.

**ANSWER: DENY, since asking providers to repay money to Texas Medicaid is a separate process from proceedings to terminate a provider's Texas Medicaid credentials, and various provisions of the TMPPM, Provider Agreements, Texas Administrative Code, and Medicaid Rules and Regulations ask providers, either directly or indirectly, to repay money to Texas Medicaid.**

**REQUEST FOR ADMISSION NO. 23**

Admit that PPFA has never executed any Medicaid Provider Agreement with Texas.

**ANSWER: ADMIT**

**REQUEST FOR ADMISSION NO. 24**

Admit that PPFA has never presented a claim for payment to the Texas Medicaid program.

**ANSWER: ADMIT, that PPFA has never directly presented a claim for payment to the Texas Medicaid Program.**

**142**

**REQUEST FOR ADMISSION NO. 25**

Admit that You have never paid any funds to PPFA from the Texas Medicaid program.

**ANSWER: ADMIT that Texas has never paid any funds directly to PPFA from the Texas Medicaid program.**

**REQUEST FOR ADMISSION NO. 26**

Admit that Relator discussed their investigation into Defendants, as alleged in Relator's Complaint and Texas's Complaint in Intervention, with representatives of the State of Texas in 2013.

**ANSWER: DENY**

**REQUEST FOR ADMISSION NO. 27**

Admit that Relator discussed their investigation into Defendants, as alleged in Relator's Complaint and Texas's Complaint in Intervention, with representatives of the State of Texas in 2014.

**ANSWER: DENY**

**REQUEST FOR ADMISSION NO. 28**

Admit that Relator discussed their investigation into Defendants, as alleged in Relator's Complaint and Texas's Complaint in Intervention, with representatives of the State of Texas in 2015.

**ANSWER: ADMIT, if "representatives of the State of Texas" refers to State employees, without any implication that those State employees had authority to speak for, or bind, the State.**

**143**

# EXHIBIT 13

# EXHIBIT 13

*FILED UNDER SEAL*

# EXHIBIT 14

# EXHIBIT 14

*FILED UNDER SEAL*

# EXHIBIT 15

# EXHIBIT 15

## *FILED UNDER SEAL*

# EXHIBIT 16

# EXHIBIT 16

## *FILED UNDER SEAL*

# EXHIBIT 17

# EXHIBIT 17

**FILED UNDER SEAL**

# EXHIBIT 18

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
 2                    AMARILLO DIVISION
 3   United States of America    *
     ex rel. ALEX DOE, Relator,  * CIVIL ACTION NO. 2:21-CV-
 4                               * 00022-Z
                                 *
 5   The State of Texas          *
     ex rel. ALEX DOE, Relator   *
 6                               *
     The State of Louisiana      *
 7   ex rel. ALEX DOE, Relator   *
                                 *
 8           Plaintiffs,         *
     V.                          *
 9                               *
     Planned Parenthood          *
10   Federation of America,      *
     Inc., Planned Parenthood    *
11   Gulf Coast, Inc., Planned   *
     Parenthood of Greater       *
12   Texas, Inc., Planned        *
     Parenthood South Texas,     *
13   Inc., Planned Parenthood    *
     Cameron County, Inc.,       *
14   Planned Parenthood San      *
     Antonio, Inc.,              *
15                               *
             Defendants          *
16
17       *********************************************
18          ORAL AND VIDEOTAPED DEPOSITION OF
19       TEXAS HEALTH AND HUMAN SERVICES COMMISSION
20               AND THE STATE OF TEXAS
21            30(b)(6) EMILY ZALKOVSKY
22                DECEMBER 6, 2022
23       *********************************************
24
25
```

Page 96

1    amended those, and hence we've got the November 30th, '22

2    RFA responses that are Exhibit 12.  Does that make sense

3    to you?

4         A.  Yes.  I understand.

5         Q.  Okay.  So you probably discussed this with

6    counsel for the State for purposes of your deposition.

7    But a Request For Admission is just a discovery tool

8    where a defendant can ask a party to admit something, and

9    a party either needs to admit it or deny it.  Does that

10   jive with your understanding?

11              MR. BRISSENDEN:  Object to form.

12        A.  Yes, I understand that.

13        Q.  Okay.  So you would agree with me that HHSC

14   never requested that Planned Parenthood Gulf Coast repay

15   the amounts it received from Texas Medicaid during the

16   pendency of the injunction entered by the US District

17   Court For the Western District of Texas and Planned

18   Parenthood of Greater Texas V. Trailer.  Correct?

19              MR. STEPHENS:  Object to the form.

20        A.  Can you rephrase the question?

21        Q.  Sure.  And maybe I can try to make it a little

22   easier.  So in the topic where it refers to the case

23   caption, do you understand that the US District Court For

24   the Western District of Texas is a federal court that

25   issued an injunction regarding the termination of the

Page 97

1   Texas affiliates?

2         A.   I do.

3         Q.   So can we shorthand it and by just -- and for

4   this just refer to this as this the federal injunction?

5         A.   That's fine with me.

6         Q.   Okay.  So the question is, HHSC never asked the

7   Texas affiliates to repay the amounts that they received

8   under Medicaid while the federal injunction was in

9   effect.  Correct?

10              MR. BRISSENDEN:  Object to form.

11        A.   That is not -- the State is asking for

12   repayment of those fund with this lawsuit.

13        Q.   Okay.  But for this lawsuit, you would agree

14   with me that neither the State nor HHSC has ever asked

15   for the repayment of those fund?

16              MR. BRISSENDEN:  Object to form.

17        A.   I do not agree with the characterization of

18   that.

19        Q.   In what way did the -- did Texas or HHSC

20   request that the affiliates defendant repay the money

21   that they received from Texas Medicaid during the federal

22   injunctions, apart from this litigation?

23        A.   Via the rules and regulations that are in the

24   provider agreement in the TAC, which, you know, put the

25   onus on the provider to understand their status and what

Page 98

1   they have to do to be a qualified enrolled provider and
2   what they can and can't bill for.
3       Q.   The TAC is the Texas Administrative Code?
4       A.   Yes.
5       Q.   Anything else other than the rules and
6   regulations and the provider agreement in the Texas
7   Administrative Code?
8       A.   I have nothing else to add to that.
9       Q.   Okay.  You would agree that there was no
10  recoupment action initiated?
11              MR. BRISSENDEN:  Object to form.
12      A.   Can you restate that?
13      Q.   You would agree with me that there was no
14  recoupment action initiated seeking to recover the
15  amounts that the Texas affiliates received during the
16  pendency of the federal injunction?
17      A.   This -- other than this lawsuit.  I just wanted
18  to ask for clarification.
19      Q.   Sure.  Correct.  You would agree with me that
20  there was no recoupment action initiated by HHSC to
21  recover amounts the affiliates received during the
22  pendency of the federal injunctions, other than this
23  lawsuit.  Correct?
24      A.   There is no separate action aside from the
25  lawsuit and the regulations laid out in the provider

```
 1    agreement in the TAC.
 2        Q.  And just so I'm clear, so you view this lawsuit
 3    as a recoupment action?
 4        A.  Yes.  The State is requesting the funds back.
 5        Q.  And I think you testified this morning that
 6    you -- well, let me just ask you again.  Are you
 7    knowledgeable about the specifics of what a recoupment
 8    action is?
 9              MR. BRISSENDEN:  Object to form.
10        A.  Yeah.  I don't understand the question.  Can
11    you provide more detail?
12        Q.  What's a recoupment action?
13        A.  Generally --
14              MR. BRISSENDEN:  Object to form and scope.
15        Q.  You can go ahead.
16        A.  Can you tell me which topic you're on?
17        Q.  I mean, we talked about this morning about
18    general overview of the administration of Texas Medicaid,
19    and I think you told me that you didn't know anything
20    about recoupment beyond it being an action to recover
21    money or potentially to, like, take a credit.  That's all
22    I was trying to refresh on.
23              Do you recall that testimony?
24        A.  Yes, I do.
25        Q.  Okay.  So do you know anything about recoupment
```

Page 100

```
 1   actions beyond what you testified this morning?
 2        A.  Are you -- can I ask a clarifying question?
 3   Are you using "recoupment" as a -- like a specific
 4   definition?
 5        Q.  Yes, I am.
 6        A.  Because "repayment" is the word used in this
 7   document.
 8        Q.  Yes.  I specifically asked you about
 9   recoupment.
10        A.  I --
11             MR. BRISSENDEN:  Object to form and scope.
12        A.  Yeah.
13        Q.  You can answer, ma'am.
14        A.  I'm not sure how to answer that.
15        Q.  It's a simple question.  Do you know
16   anything -- do you know anything about recoupment beyond
17   what you testified to this morning?
18             MR. STEPHENS:  Object to the form.
19             MR. BRISSENDEN:  Object to form and scope.
20        A.  I understand -- and I think of -- you know,
21   recoupment and repayment in these cases have been used a
22   little bit interchangeably.  But I understand that the
23   State of Texas is requesting repayment of these amounts
24   with this lawsuit.
25        Q.  Thank you.  Now I'll just --
```

Page 101

1              THE VIDEOGRAPHER:  Excuse me,
2    Ms. Zalkovsky.  The mic just fell --
3              THE WITNESS:  Yeah, I just noticed that.
4         Q.  Yeah.  If I told you that under Texas
5    Administrative Code 371.1, recoupment was defined as --
6    sorry.  Recoupment of overpayment.  A sanction imposed to
7    recover funds provided to -- let me start that again.
8         Recoupment of overpayment.  A sanction imposed
9    to recover funds paid to a provider or person to which
10   the provider or person was not entitled.
11        A.  Yeah.  I actually have that, so let me -- I
12   think I have that part of TAC.  So let me get it so I can
13   look at it, too.
14             MR. BRISSENDEN:  Which section is that, to
15   help the witness?
16             MS. LOLLAR:  It's 371.1.  You have a copy.
17        A.  I'm sorry.  Could you read that again?
18        Q.  I will give it to you, but it is a long section
19   of the code.  I'm only going to ask you about recoupment.
20        A.  Can you --
21        Q.  I'm handing you what we've marked as
22   Exhibit 13.
23             (Exhibit No. 13 marked)
24        Q.  And you'll see that Recoupment of Overpayment
25   is referenced on the page ending in Bates 18.

# EXHIBIT 19

Page 1

1            IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
2                     AMARILLO DIVISION
3    United States of America    *
     ex rel. ALEX DOE, Relator,  * CIVIL ACTION NO. 2:21-CV-
4                                 * 00022-Z
                                  *
5    The State of Texas          *
     ex rel. ALEX DOE, Relator   *
6                                 *
     The State of Louisiana      *
7    ex rel. ALEX DOE, Relator   *
                                  *
8            Plaintiffs,         *
     V.                           *
9                                 *
     Planned Parenthood          *
10   Federation of America,      *
     Inc., Planned Parenthood    *
11   Gulf Coast, Inc., Planned   *
     Parenthood of Greater       *
12   Texas, Inc., Planned        *
     Parenthood South Texas,     *
13   Inc., Planned Parenthood    *
     Cameron County, Inc.,       *
14   Planned Parenthood San      *
     Antonio, Inc.,              *
15                                *
             Defendants          *
16
17   *********************************************
18        ORAL AND VIDEOTAPED DEPOSITION OF
19     TEXAS HEALTH AND HUMAN SERVICES COMMISSION
20           AND THE STATE OF TEXAS
21          30(b)(6) JEFFREY GOLDSTEIN
22              DECEMBER 7, 2022
23   *********************************************
24
25

Page 132

1    amounts that the Planned Parenthood Texas affiliates

2    received during the pendency of the federal and State

3    court injunctions were overpayments?

4              MS. KRIEG:  Object to the form.

5        A.  Actually under the Texas Medicaid Fraud

6    Prevention Act, it spells out the civil remedies that may

7    be obtained.  And that includes -- let's see, I think I

8    have that in here.  Let's see.  Where is that?  That is

9    under, on Exhibit 28, Tab 7.  Section 36.052 spells out

10   the civil remedies that are obtainable in this Texas

11   Medicaid Fraud Prevention Act proceeding.

12       Q.  Okay.  So are you saying that Texas does not

13   contend that the amounts the Planned Parenthood Texas

14   affiliates received during the injunctions were

15   overpayments?

16             MS. KRIEG:  Object to the form.  Misstates

17   testimony.

18       A.  They would still be overpayments under the TAC.

19   But the way to recoup them would be to -- to re -- to get

20   them back into the system would be through Section 36.052

21   in this case, since this is being brought as a Texas

22   Medicaid Fraud Prevention Act matter.

23       Q.  So Texas's view is they are overpayments, and

24   the mechanism for Texas to recover them is through

25   Section 36.052 of the Texas Medicaid Fraud Prevention

Page 133

1    Act?

2         A.   Yes.

3         Q.   What is a recoupment?

4              MS. KRIEG:   Object to the form.

5         A.   A recoupment is a recovery of money that was

6    wrongfully paid.

7         Q.   Is it -- is a recoupment a specific type of

8    action under Texas law?

9              MS. KRIEG:   Object to the form.

10        A.   Yes.

11        Q.   And what do you --

12        A.   Under Tab 13 of Exhibit 28.

13        Q.   Uh-huh.

14        A.   It's Section 371.1711 entitled Recoupment of

15   Overpayments and Debts.

16        Q.   Okay.  And this -- basically this section, TAC

17   371.1711, describes how OIG can recoup money from a

18   provider if OIG determines the provider committed an act

19   for which the provider is subject to administrative

20   actions or sanctions.  Right?

21             MS. KRIEG:   Object to the form.  Calls for

22   a legal conclusion.

23        Q.   Is that right, sir?

24        A.   That's partially correct.

25        Q.   Okay.

Page 134

1        A.   The reading of A specifically states that the

2   OIG recovers overpayments made to providers within the

3   Medicaid or other HHS programs, whether the overpayment

4   resulted from error by the provider, the claims

5   administrator or an operating agency, misunderstanding or

6   program violation.

7        Q.   Thank you for that clarification.   Okay.

8             And did Texas ever seek to recoup Medicaid

9   reimbursements provided to the Planned Parenthood

10  affiliates during the pendency of the federal and State

11  court injunctions?

12       A.   No, they did not, because the injunctions

13  prevented us from moving forward with anything.

14       Q.   Once the injunctions were lifted -- you recall

15  that in December of 2020, the mandate issued by the Fifth

16  Circuit in the preliminary injunction was lifted.   Right?

17       A.   Correct.

18       Q.   And then subsequent to that, there was a grace

19  period and a State court injunction.   Correct?

20       A.   Correct.

21             MS. KRIEG:   Object to the form.   Object to

22  scope for this witness.

23       Q.   But in or around March 10th, 2021, the

24  injunction were no longer lifted.   Right?   Sorry.   The

25  injunctions were no longer in place.   Right?

Page 135

1          MS. KRIEG:  Object to the form.  Object to

2     the scope.

3          A.  Correct.

4          Q.  Did Texas initiate a recoupment action to

5     recover amounts, Medicaid reimbursements that the Texas

6     affiliates had received during the pendency of the

7     injunction after on or about March 10th, 2021?

8          MS. KRIEG:  Object to the form.  Object to

9     scope.

10         A.  HHS and OIG did not.  However, this action, the

11    TMFPA case that we are -- that I'm being deposed on, is

12    that request.

13         Q.  It's a recoupment?

14         MS. KRIEG:  Object to the form.

15         A.  It is a -- not a recoupment, it is a recovery

16    of civil penalties under the Texas Medicaid Fraud

17    Prevention Act.

18         Q.  Okay.  So neither Texas nor HHSC initiated a

19    recoupment action, but Texas -- through the TMFPA action

20    that we're here about today is Texas's effort to recover

21    the money?

22         MS. KRIEG:  Object to the form.

23         A.  Correct.

24         Q.  Has HHSC ever asked a Texas Medicaid provider

25    to repay amounts the Texas Medicaid provider received

Page 136

```
 1    during a federal court injunction that prevented the
 2    provider's termination from Texas Medicaid?
 3              MS. KRIEG:  Object to form.
 4         A.  This is the first time when an injunction has
 5    been granted in a matter like this.
 6         Q.  Okay.  And same question for you regarding any
 7    requests from HHSC for a Texas Medicaid provider to repay
 8    amounts it received during the pendency of the State
 9    court injunction that prevented the termination of the
10    provider?
11         A.  Same answer.
12              MS. KRIEG:  Object to form.
13         Q.  Okay.  Similar question.  Any prior initiation
14    by HHSC of recoupment proceedings to recover amounts paid
15    to a Texas Medicaid provider under a federal or State
16    court injunction preventing the termination of the
17    provider?
18              MS. KRIEG:  Objection; form.
19         A.  Same answer.
20         Q.  Has Texas initiated any action under the Texas
21    Medicaid Fraud Prevention Act, other than the one that
22    we're about here -- that we're here for today, where
23    Texas was trying to recover monies that had been paid to
24    a provider during the pendency of a federal or State
25    court injunction that prevented the termination of the
```

Page 137

1    provider?

2              MS. KRIEG:  Object to the form.

3         A.  Not to my knowledge that -- this is the first

4    time this has happened.

5         Q.  Okay.  Does HHSC attempt to determine whether

6    Texas Medicaid providers have engaged in fetal tissue

7    procurement or donation?

8              MS. KRIEG:  What topic are we on?

9              MS. LOLLAR:  15.

10             MS. KRIEG:  15 in the Texas notice?

11             MS. LOLLAR:  HHSC.

12        A.  The only efforts I am aware of are in this

13   matter.

14        Q.  Okay.  And did you conduct a review in

15   preparation from your deposition -- for your deposition

16   to determine if HHSC attempts to determine whether Texas

17   Medicaid providers have engaged in fetal tissue

18   procurement or donation?

19             MS. KRIEG:  Object to the form.

20        A.  I did not see anything that showed that they --

21   that Texas has determined whether any Texas Medicaid

22   providers have engaged in fetal tissue procurement or

23   donation, other than Planned Parenthood affiliates.

24        Q.  Okay.  Thank you.  I have a slightly different

25   question, which is, does HHSC, in the course of

# EXHIBIT 20

# EXHIBIT 20

*FILED UNDER SEAL*

# EXHIBIT 21

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
 2                     AMARILLO DIVISION
 3      United States of America   )
        ex rel. ALEX DOE,          )
 4      Relator,                   )
                                   )
 5      The State of Texas ex      )
        rel. ALEX DOE, Relator,    )
 6                                 )
        The State of Louisiana ex  )
 7      rel. ALEX DOE, Relator,    )
                                   )
 8         Plaintiffs,             )
                                   ) CIVIL ACTION NO.
 9      v.                         ) 2:21-cv-00022-Z
                                   )
10      Planned Parenthood         )
        Federation of America,     )
11      Inc., Planned Parenthood   )
        Gulf Coast, Inc., Planned  )
12      Parenthood of Greater      )
        Texas, Inc., Planned       )
13      Parenthood South Texas,    )
        Inc., Planned Parenthood   )
14      Cameron County, Inc.,      )
        Planned Parenthood San     )
15      Antonio, Inc.,             )
                                   )
16         Defendants.             )
17
18      ********************************************************
19            ORAL AND VIDEOTAPED DEPOSITION OF
20                 DONALD E. LOCHABAY, JR.
21                   DECEMBER 8, 2022
22      ********************************************************
23
24
25
```

Page 152

1      Q.   Okay.

2                 MS. RAMER:  Can we go off the record?

3                 THE VIDEOGRAPHER:  Off the record, the

4      time is 2:26.

5                 (Break from 2:26 p.m. to 2:27 p.m.)

6                 THE VIDEOGRAPHER:  Back on the record,

7      the time is 2:27.

8                 MS. RAMER:  Mr. Lochabay, thank you very

9      much for your time today.  I am going to pass you over

10     to my colleague Mr. Ashby.

11                THE WITNESS:  Thanks.

12                     EXAMINATION

13     BY MR. ASHBY:

14     Q.   Mr. Lochabay, good afternoon.

15     A.   Hi.

16     Q.   I'm Danny Ashby representing Planned

17     Parenthood Federation of America.  I just have a few

18     questions for you.

19     A.   Okay.

20     Q.   I want to pick up with where Ms. Ramer left

21     off on overpayments.  So did I understand your testimony

22     to be that counsel asked you to assume that any payments

23     that you were calculating in the relevant period were

24     overpayments?

25     A.   I don't know if they put those exact words

Page 153

1  forth, but that was part of the description of the

2  assignment.  So I believe that it's fair to say that was

3  an implicit assumption that stemmed from the assignment

4  on this case.

5      Q.   That any payments that you analyzed

6  constituted overpayments?

7      A.   That any payments between the periods of time

8  that they asked me to calculate them were overpayments,

9  correct.

10     Q.   And you did make that assumption?

11     A.   I did.

12     Q.   And other than making that assumption and then

13  quantifying the amount of the overpayment, do you have

14  any separate basis to believe that these were

15  overpayments?

16     A.   I would say that that -- what we've discussed

17  is the only basis I have for that opinion.

18     Q.   Which -- which is the discussion with counsel

19  about what you should assume?

20     A.   The discussion coupled with the analysis that

21  I performed to quantify the overpayments.

22     Q.   And your analysis was limited to quantifying

23  the payments?

24     A.   That's correct.

25     Q.   Okay.  So see if we can do this economically.

Page 154

1    I want to ask you some questions about two of your

2    reports, Exhibit 2 and 3.  If you just would maybe put

3    those in front of you, and maybe we can do this

4    together.  I'm going to be focused in both of these

5    exhibits on paragraph 11.

6            Okay.  So do you have paragraphs 11 from

7    Exhibits 2 and 3 kind of side by side in front of you

8    there?

9        A.   I do.

10       Q.   Okay.  And let me just ask you at a high

11   level, would you agree that paragraph 11 in both

12   Exhibits 2 and 3 are largely identical, with the

13   exception being one's referring to Louisiana and

14   Louisiana Medicaid and one is referring to Texas and

15   Texas Medicaid?

16       A.   That's correct.

17       Q.   Is that fair?

18       A.   Fair.

19       Q.   Okay.  So maybe with that I can focus on

20   Exhibit 2, which is your Texas report.  Correct?

21       A.   Correct.

22       Q.   And can we have the agreement that, unless you

23   tell me otherwise, your answers to my questions about

24   paragraph 11 of Exhibit 2 would also fit for paragraph

25   11 for Exhibit 3?  Fair enough?

Page 155

1          A.    Fair.

2          Q.    Okay.  So I want to ask you about portions --

3     the portions of your report that refer to Planned

4     Parenthood Federation of America, which is what this

5     paragraph is focused on.  Correct?

6          A.    Correct.

7          Q.    And can we agree we'll just refer to it as

8     PPFA?  I think that's how you refer to it in your

9     report.

10         A.    Yes, that's fine.

11         Q.    Okay.  Now in paragraph 11, you say that PPFA

12    provides monetary and administrative support to its

13    affiliates.  Do you see that in paragraph 11, down maybe

14    four lines?

15         A.    I do.

16         Q.    Okay.  And it goes on to say including the

17    affiliate that provided service to Texas Medicaid

18    patients after Planned Parenthood's termination from the

19    Texas Medicaid program.  Did I read that right?

20         A.    Yes.

21         Q.    Okay.  Now what's the basis for that sentence

22    that I just read from your report?

23         A.    The basis or the source for that information

24    in my report is the complaint that was filed in this

25    case.

1        Q.    And I believe you cite -- is it Texas

2    complaint -- State of Texas complaint and intervention?

3    Is that right?

4        A.    Yes, in this report, that is correct.

5        Q.    Okay.  And then in the Louisiana report, the

6    only difference is you cite the Relator's complaint.

7    Correct?

8        A.    Correct.

9        Q.    Okay.  Now other than the complaint -- the two

10   complaints that we've just discussed, did you review any

11   other documents in connection with making this statement

12   in your report?

13       A.    No.

14       Q.    And can you name any administrative support

15   that PPFA provides to the affiliate defendants, as you

16   sit here today?

17       A.    No, I cannot.

18       Q.    Did you review any documents produced by

19   Planned Parenthood Federation of America in connection

20   with your reports?

21       A.    I don't know as I sit here, but if I did, it

22   would be on my Exhibit C, documents considered.

23       Q.    Your Attachment C?

24       A.    Or Attachment C, yes, that's correct.

25       Q.    I think we -- I think you testified earlier

Page 157

```
1    that the -- well, maybe not.  Are your Attachment Cs
2    iterative, or does the last one contain everything, the
3    last one in time?
4         A.   Let me confirm before I say that.
5              No, the Attachment Cs are -- you have to look
6    at all of them in combination.  They're not cumulative.
7    They are incremental to whatever else I reviewed since
8    the last report.
9         Q.   All right.  So -- and you've got all those
10   Attachment Cs and supplements in front of you if you
11   need to reference them.  Correct?
12        A.   Yes, I do.
13        Q.   All right.  So did you review any documents
14   produced by any of the affiliate defendants in
15   connection with your reports?
16        A.   Let me take a quick look.
17        Q.   Yes, please.
18        A.   I do not see anything other than the
19   interrogatory responses that would have been produced by
20   the affiliates, so I don't see document production, per
21   se.  And then if there were any documents that were
22   produced that were then attachments to any of the legal
23   filings, I may have seen something there.
24        Q.   Okay.  But other than those two things,
25   nothing else comes to mind and nothing else is listed on
```

Page 158

1   Attachment C?

2       A.   That's correct.

3       Q.   Okay.  Did you review any contracts between

4   PPFA and the affiliate defendants?

5       A.   I did not.

6       Q.   Did you review any grant agreements between

7   PPFA and the affiliate defendants?

8       A.   I did not.

9       Q.   Did you review Planned Parenthood Federation

10  of America's general ledger or any of the entries in its

11  general ledger?

12      A.   I did not.

13      Q.   Same question for Planned Parenthood Gulf

14  Coast.

15      A.   I don't believe so.

16      Q.   Okay.  Planned Parenthood South Texas?

17      A.   The question is back to the general ledger?

18      Q.   Yes, did you review any of the general ledger

19  entries in connection with the preparation of your

20  reports?

21      A.   I did not.

22      Q.   Planned Parenthood Greater Texas?

23      A.   Did not.

24      Q.   Did you review any emails from any employees

25  of PPFA to any affiliate defendant?

Page 159

1          A.   Not that I recall.

2          Q.   Did you review the bylaws of any PPFA or

3     affiliate defendant?

4          A.   I did not.

5          Q.   Consolidated financial statements of PPFA?

6          A.   I did not.

7          Q.   Consolidated financial statements of any of

8     the affiliate defendants?

9          A.   I don't believe so.

10         Q.   Did you review any of PPFA's tax returns?

11         A.   I did not.

12         Q.   The affiliate defendants' tax returns?

13         A.   I did not.

14         Q.   And the basis for the statement in your report

15    that PPFA provides monetary support to its affiliates,

16    if I understand it, is based on what is in the

17    complaint.  Correct?

18         A.   That's correct.

19         Q.   Okay.  And you're not offering an opinion that

20    PPFA controls the affiliate defendants.  Is that

21    correct?

22         A.   That is correct.

23         Q.   And you don't plan to offer an opinion to that

24    effect, do you?

25         A.   I do not.

Page 160

1      Q.   Okay.  Are you offering any opinion that PPFA

2    told the affiliate defendants to submit any claims to

3    Texas or Louisiana Medicaid?

4      A.   I am not.

5      Q.   Directed them to do that?

6      A.   I am not.

7      Q.   And I take it you have no opinion also --

8    you're not offering an opinion that PPFA is the alter

9    ego of the affiliate defendants, are you?

10     A.   I am not.

11     Q.   So, Mr. Lochabay, would you turn to paragraph

12   22 in Exhibit 2?  I just have a quick question for you

13   on this paragraph.  Are you there?

14     A.   I am.

15     Q.   So the third sentence in paragraph 22 says it

16   is my understanding that the State and Relator may not

17   be seeking an award at the high end of my range

18   calculated in Scenario 1.  Did I read that right?

19     A.   Yes.

20     Q.   What does that mean?

21     A.   That was a conversation that I had had with

22   counsel about the different ranges we were calculating

23   and how they were significantly different.  Scenario 1

24   is very high, and they said that we may not be actually

25   seeking that amount but we want to calculate it for the

Page 161

1    Court to see.  And so we talked about, well, we could

2    just put that comment in there.  It was their

3    perspective, so I shared it.

4         Q.   So was this -- who was this conversation with?

5         A.   It would -- I can't recall exactly who was on

6    the phone, but it could have included anyone from the

7    AG's office or Relator counsel.

8         Q.   Do you remember if it was both or --

9         A.   I don't recall.

10        Q.   Okay.  And whose idea was this to include this

11   sentence?

12        A.   I don't recall that for certain myself.

13        Q.   I mean, do you --

14        A.   I am stating my understanding that counsel

15   provided, so it is from counsel.

16        Q.   Would you have participated in this

17   conversation, or would it have been a member of your

18   team?

19        A.   No, I was on this conversation.

20        Q.   Okay.  Do you remember whose idea it was?  Was

21   this an idea suggested by counsel, or was it an idea

22   suggested by you?

23        A.   I think that the information that's contained

24   here was counsel's.  Whether to include it in the report

25   or not, I don't recall.

Page 162

1      Q.   So, in other words, the idea of -- the idea

2   that the State or the Relator may not be seeking

3   penalties at those levels was their idea, not you

4   looking at the numbers saying I think you guys might

5   want to think about this?

6      A.   I would say it was the first comment.

7      Q.   Okay.

8      A.   I think counsel shared -- because we were

9   talking about the scenarios and what are the

10   possibilities of penalties that the Court could award

11   that got us to these scenarios.  But recognizing how

12   large the penalty calculation Scenario 1 is, I'm sure we

13   were discussing that aspect.  But I think that that

14   opinion about it was shared by counsel, and whether I

15   said, well, can I put that in the report or whether they

16   said maybe you should put that in the report, I don't

17   recall.

18      Q.   Okay.  And is that still your understanding

19   today?

20      A.   It is.

21      Q.   So I think now if we could go to Exhibit 6,

22   which is your surrebuttal.  Is that right?

23      A.   That's correct.

24      Q.   And I want to direct you to paragraph 13 in

25   Exhibit 6.

Page 163

1          A.    Okay.

2          Q.    The first sentence there, would you read that

3    for the record, please?

4          A.    Sure.  I was not asked to estimate or provide

5    an analysis of a damages causation link for PPFA.

6          Q.    Okay.  And before I ask questions about that

7    sentence, you've testified as an expert on damages

8    causation before.  Right?

9          A.    Yes.

10         Q.    I think we talked about that earlier today.

11   Right?

12         A.    I don't recall specifically, but we could

13   have.

14         Q.    But nonetheless, you have testified as a

15   damages causation expert in the past?

16         A.    Yes.

17         Q.    But you're not doing so here?

18         A.    That's correct.

19         Q.    Okay.  Why not?

20         A.    I guess first level, it wasn't part of the

21   assignment of the remedy calculation that I was asked to

22   calculate, and a conversation about that issue included

23   talking about both the statutes in the states as well as

24   court cases and why that's not required for -- for the

25   State of Texas' lawsuit.  So that's what I've sort of

# EXHIBIT 22

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| United States of America<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Texas<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Louisiana<br>*ex rel.* ALEX DOE, Relator,<br><br>    Plaintiffs,<br><br>v.<br><br>Planned Parenthood Federation of America,<br>Inc., Planned Parenthood Gulf Coast, Inc.,<br>Planned Parenthood of Greater Texas, Inc.,<br>Planned Parenthood South Texas, Inc.,<br>Planned Parenthood Cameron County, Inc.,<br>Planned Parenthood San Antonio, Inc.,<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | NO. 2:21-CV-00022-Z |

<u>**DECLARATION OF VICKIE JANE BARROW-KLEIN IN SUPPORT OF PLANNED
PARENTHOOD FEDERATION OF AMERICA, INC.'S MOTION FOR SUMMARY
JUDGMENT**</u>

I, Vickie Jane Barrow-Klein, declare and state as follows:

1.    I am currently employed by Planned Parenthood Federation of America, Inc.

("PPFA") as the Chief Financial Officer and Chief Operating Officer.  I have served as Chief

Financial Officer since March 2018 and as Chief Operating Officer since January 2022.  Prior to

that, I spent more than 20 years in the international-development non-profit sector with experience

working in complex federated organizations at a global scale.

2.    I am over the age of 18 and have personal knowledge of the matters herein or have

acquired such knowledge by personally examining the business records maintained by PPFA in

the normal course of business.

**309**

3.      I make this declaration in support of PPFA's Motion for Summary Judgment.  If called upon to testify, I could and would testify to the facts in this declaration.

A.      **PPFA and the Affiliate Defendants**

4.      PPFA is a corporation organized under the laws of the State of New York.

5.      PPFA maintains its headquarters and principal place of business at 123 William Street, New York, NY 10038.  In addition, PPFA has two other offices in Washington, D.C., and San Francisco, California.

6.      PPFA does not have offices in either the State of Texas or the State of Louisiana.

7.      PPFA has 49 member affiliates, including Planned Parenthood Gulf Coast, Planned Parenthood of Greater Texas, and Planned Parenthood South Texas, that are providers of health care services.  Relevant to this litigation, Planned Parenthood South Texas has two subsidiaries, Planned Parenthood Cameron County and Planned Parenthood San Antonio, that I understand are also defendants in this case because they had their own Medicaid provider agreements.  I will refer to Planned Parenthood Gulf Coast, Planned Parenthood of Greater Texas, and Planned Parenthood South Texas (including its two subsidiaries) as the "Affiliate Defendants."

8.      PPFA does not share offices or office space with any Affiliate Defendant.  To the extent any PPFA employee might desire long-term use of some Affiliate Defendant's office space, PPFA would pay that Affiliate Defendant rent.

9.      Employees of the Affiliate Defendants do not report to PPFA.  PPFA does not control or otherwise dictate staffing or hiring choices for any Affiliate Defendant.  PPFA does not pay the salary of any employee of any Affiliate Defendant.  Conversely, no affiliate pays the salary of any PPFA employee.

**310**

10.     PPFA does not oversee or direct the financial decisions of any Affiliate Defendant.

11.     An affiliate's revenue—including any revenue derived from a federal or state Medicaid program—does not impact the amount that affiliate pays in annual dues to PPFA.

**C.    PPFA Is Not a Health Care Provider and Does Not Participate in Medicaid**

12.     Because PPFA is not a health care provider and does not provide health care services, PPFA does not participate in any state's Medicaid program.

13.     PPFA does not have—and has never had—a Medicaid provider agreement with either Texas or Louisiana.  PPFA also does not maintain or review any Medicaid provider agreement entered into by its affiliates.

14.     PPFA has never submitted a claim for reimbursement to Texas Medicaid or Louisiana Medicaid, either for Fee for Service or through a managed care organization.

15.     PPFA has never received any payment from either Texas Medicaid or Louisiana Medicaid.

16.     At no point in time has any representative from the State of Texas or the State of Louisiana requested that PPFA repay or return any funds owed to Texas Medicaid or Louisiana Medicaid by PPFA.

17.     Neither has any representative from the State of Texas or the State of Louisiana ever contacted PPFA concerning any Medicaid funds allegedly owed in connection with termination proceedings.

18.     At no point in time has PPFA believed that it owed the State of Texas or the State of Louisiana an obligation to repay or return any Medicaid funds.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on January 5, 2023 in Mechanicsville, Maryland.

_____
Vickie Jane Barrow-Klein

4

312