# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ALEX DOE, Relator, | § § § | |
| THE STATE OF TEXAS, *ex rel.* ALEX DOE, Relator, | § § § | |
| THE STATE OF LOUISIANA, *ex rel.* ALEX DOE, Relator, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 2:21-CV-00022-Z |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., PLANNED PARENTHOOD GULF COAST, INC., PLANNED PARENTHOOD OF GREATER TEXAS, INC., PLANNED PARENTHOOD SOUTH TEXAS, INC., PLANNED PARENTHOOD CAMERON COUNTY, INC., PLANNED PARENTHOOD SAN ANTONIO, INC., | § § § § § § § § § § § § § § | |
| Defendants. | § | |

## PLAINTIFFS' SUPPLEMENTAL BRIEF

Plaintiffs file this brief in response to the Court's order (Dkt. 409) requesting that they answer the following questions:

(1) Whether Defendants are still liable under the False Claims Act, assuming *arguendo* that the holding in *United States ex rel. Proctor v. Safeway, Inc.*, 30 F.4th 649, 652-563 (7th Cir. 2022), *cert. granted sub nom. U.S. ex rel. Proctor v. Safeway, Inc.*, No. 22-111, 2023 WL 178393 (U.S. Jan. 13, 2023), is affirmed by the Supreme Court; and

(2) Whether any Fifth Circuit precedent counsels against applying the *Safeway* precedent to this case.

## BACKGROUND

The Supreme Court recently granted a petition for certiorari in *Safeway* and consolidated it with a related case, *United States ex rel. Schutte v. SuperValu Inc.*, 9 F.4th 455 (7th Cir. 2021), *cert. granted sub nom. U.S. ex rel. Schutte v. SuperValu Inc.*, No. 21-1326, 2023 WL 178398 (U.S. Jan. 13, 2023). The question presented in the consolidated cases is "[w]hether and when a defendant's contemporaneous subjective understanding or beliefs about the lawfulness of its conduct are relevant to whether it 'knowingly' violated the False Claims Act." In both cases, the Relators accused the respondents—the operators of numerous pharmacies—of violating the FCA by submitting claims that knowingly overstated their "usual and customary" prices for prescription drugs reported to state Medicaid agencies, which led to reimbursement greater than what the pharmacies were lawfully entitled to receive. *See Safeway*, 30 F.4th at 654-57; *SuperValu*, 9 F.4th at 461-63. The respondents used

a price-match program to compete with discounts offered by other pharmacies, yet only reported the retail prices to the government agencies. *Id*. During discovery, the relators found evidence indicating that the respondents attempted to conceal the price-match program even though they knew it was relevant to identifying their "usual and customary" prices. *See id.*

The Seventh Circuit affirmed the district court's grant of summary judgment to the pharmacies because it held that they did not act "knowingly" under the FCA. In doing so, both *Safeway* and *SuperValu* imported the Supreme Court's interpretation of the word "willfully" in the Fair Credit Reporting Act (FCRA) in *Safeco Insurance Co. v. Burr*, 551 U.S. 47 (2007), into the FCA's definition of "knowingly"—even though the FCA itself defines "knowingly." 31 U.S.C. § 3729(b). *SuperValu* held that an FCA "defendant who acted under an incorrect interpretation" of governing legal requirements will avoid liability "if (1) the interpretation was objectively reasonable and (2) no authoritative guidance cautioned defendants against it." 9 F.4th at 464; *accord Safeway*, 30 F.4th at 658. *SuperValu* explained that, under its approach, "a defendant's subjective intent does not matter." 9 F.4th at 470. The court stated that "it is not enough that a defendant suspect or believe that its claim was false" because the standard is "objective" and turns on whether the defendant "know[s]" that its claims are false. *Id*. at 470. The court found it "irrelevant" whether the defendant actually "held [an objectively reasonable interpretation] at the time that it submitted its false claim" or instead was "concocting 'post-hoc arguments.'" *Id.*

2

Before granting the petition in *SuperValu*, the Court requested the views of the United States, and the Solicitor General submitted a brief arguing that the petition should be granted because the Seventh Circuit's decision is "contrary to the FCA's text, history, and common-law antecedents." Br. of the United States as Amicus Curiae 8, *SuperValu*, No. 21-1326 (U.S. Dec. 6, 2022). Senator Charles E. Grassley, the principal sponsor of the 1986 amendments to the FCA as well as a sponsor of the 2009 Fraud Enforcement and Recovery Act (FERA), also submitted a brief arguing that the Seventh Circuit's importation of the *Safeco*/FCRA scienter standard into the FCA was contrary to the text and history of the FCA and "radical[ly] depart[s]" from the statute itself. Br. for Amicus Curiae Senator Charles E. Grassley 2-3, *SuperValu*, No. 21-1326 (U.S. May 19, 2022).

## ARGUMENT

### I.   Defendants would still be liable under the FCA even if *Safeway* and *SuperValu* are affirmed.

As the Solicitor General and Senator Grassley argue, it was incorrect for the Seventh Circuit to substitute the judicial interpretation of the undefined scienter requirement in another statute for the clearly defined scienter standard in the FCA. But even if the Supreme Court affirms *Safeway* and *SuperValu*, Defendants here are still liable under the False Claims Act. The Seventh Circuit held that an FCA "defendant who acted under an incorrect interpretation" of governing legal requirements will avoid liability even if there is evidence of subjective intent to defraud "if (1) the interpretation was objectively reasonable and (2) no authoritative guidance cautioned defendants against it." But that is not the case here. Planned

Parenthood cannot be said to have acted under an "objectively reasonable" interpretation of legal requirements. In fact, Planned Parenthood can point to *no law* that supports their argument that their termination was not effective during the pendency of the preliminary injunctions and that they were immunized from any wrongdoing related to the receipt and retention of the Medicaid funds during the preliminary injunctions. It is indisputable that Planned Parenthood was terminated from Louisiana Medicaid no later than October 19, 2015, and that Planned Parenthood was terminated from Texas Medicaid no later than February 1, 2017. The letters of termination that the Planned Parenthood affiliates received make clear that termination is final 30 days after receipt of the notice if no administrative appeal is requested and Planned Parenthood does not dispute that they did not exercise their right to an administrative appeal. As the Travis County District Court noted when it rejected Planned Parenthood's attempt to revive its long-expired administrative remedies and argue that its termination was not effective, Planned Parenthood pointed to *no authority* supporting that position. Appx. 1091-92.

Further, even if Planned Parenthood's argument that it was "qualified" to receive the funds at the time it received them were correct, that does not mean there is any legal basis for retaining the money even after the sole basis for that purported qualification—the district court preliminary injunctions—are wiped away. As discussed extensively in Part I.C of the Plaintiffs' Memorandum in Support of Summary Judgment (Dkt. 391), it is hornbook law that vacatur of a preliminary injunction means that the law looks at the injunction as though it never existed. *See,*

*e.g., Ruppert v. Ruppert*, 134 F.2d 497, 500 (D.C. Cir. 1942); *Children's Hosp. Ass'n of Tex. v. Azar*, 507 F. Supp. 3d 249, 255 (D.D.C. 2020). Similarly, the fact that someone can later be held liable for something they do under a preliminary injunction is also well-established. *Edgar v. MITE Corp.*, 457 U.S. 624, 649-51 (1982) (Stevens, J., concurring). Nor do Defendants have any valid legal basis to believe that the States would not be able to seek to recover the sums paid under a wrongfully entered injunction because the courts—including this Court, *see* Dkt. 71 at 8—have similarly recognized the longstanding principle that "a party against whom an erroneous judgment or decree has been carried into effect is entitled, in the event of a reversal, to be restored by his adversary to that which he has lost thereby." *Arkadelphia Milling Co v. St. Louis S.W. Ry. Co.*, 249 U.S. 134, 145 (1919). Put simply, Planned Parenthood can point to *no* law, let alone an "objectively reasonable" legal position, that would overcome the evidence demonstrating that they knew or should have known that they owed the Medicaid funds received under the injunction back, or that they billed during the pendency of the injunction and certified compliance with Medicaid law and regulations at their own risk. Further, as evidence to be discussed in Plaintiffs' forthcoming response to Defendants' motions for summary judgment indicates, Planned Parenthood knew that litigating in federal court would not have suspensive effect on the operation of state law with respect to their termination, as engaging in the state administrative process would.

Further, *SuperValu* held that even if a defendant could point to a permissible interpretation of law that supports their position, that is no defense if "there existed

authoritative guidance that should have warned defendants away from their erroneous interpretation." 9 F.4th at 471. Such guidance "must come from a governmental source—either circuit court precedent or guidance from the relevant agency." *Id.* Certainly the Fifth Circuit's decision vacating the preliminary injunction as to Texas Medicaid and overruling *Planned Parenthood Gulf Coast v. Gee* would qualify as "authoritative guidance" that the only (temporary) basis for Planned Parenthood to continue receiving and retaining Medicaid funds from Texas and Louisiana was gone. *Planned Parenthood of Greater Tex. Family Planning & Preventative Health Servs., Inc. v. Kauffman*, 981 F.3d 347 (5th Cir. 2020). Nor is there any authoritative guidance from either HHS, HHSC, or LDH that supports Planned Parenthood's position. Quite simply, there is no legal support for Planned Parenthood's position that it was entitled to keep the money it received under the injunction or keep billing without facing potential consequences down the line if the injunctions were vacated, so Planned Parenthood cannot avoid FCA liability under *Safeway* and *SuperValu*, even if they applied here.

## II.    Fifth Circuit precedent does not support the application of *Safeway* and *SuperValu* to the FCA claims here.

The Fifth Circuit applies the statutory definition of "knowingly" in assessing scienter under the FCA. *See, e.g., United States v. Hodge*, 933 F.3d 468, 473 (5th Cir. 2019); *United States ex rel. Longhi v. United States*, 575 F.3d 458, 468 (5th Cir. 2009); *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 339 (5th Cir. 2008). Plaintiffs have located no Fifth Circuit precedent disregarding evidence of subjective intent to defraud under the FCA. There is one opinion that mentions *Safeco* in the context of

the False Claims Act, but it did so only to recount the defendant's argument in a section of the opinion that is dicta. *United States ex rel. Harman v. Trinity Indus. Inc.*, 872 F.3d 645, 657 n.39, 657-60 (5th Cir. 2017). The facts of *Trinity* are also distinguishable. There, the defendant—a guardrail manufacturer—argued that it could not have knowingly submitted false claims because it relied on numerous experts' opinions that the modifications it made to guardrails designed by those experts were not necessary to report and did not require further testing. *Id.* at 657-58. That position was also supported by a report adopted by the Federal Highway Administration that indicated that whether modifications to a design required additional safety testing was up to the manufacturer's discretion or "good engineering judgment." *Id.* at 656, 658. In contrast, as explained above and in Plaintiffs' Memorandum (Dkt. 391), Planned Parenthood here has *no* legal authority to rely on which makes their decision to avoid repayment and/or submit false claims reasonable, nor was their obligation to do so legally ambiguous or left to the "good judgment" of the recipient of Medicaid funds.

It is unlikely that the Fifth Circuit, given its typically heavy emphasis on statutory text, would adopt the approach taken by the Seventh Circuit and import a different, judge-made definition of scienter into the FCA even though it already has its own unambiguous definition. "'The preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what it says there.'" *Christiana Tr. v. Riddle*, 911 F.3d 799, 806 (5th Cir. 2018) (quoting *Asadi v. G.E. Energy (USA), LLC*, 720 F.3d 620, 622 (2013)) (cleaned

up). "If a statute's text is 'plain and unambiguous, it must be given effect.'" *Id.*
(quoting *BMC Software, Inc. v. C.I.R.*, 780 F.3d 669, 674 (5th Cir. 2015)); *see also*
*United States v. Ary*, 892 F.3d 787, 789 (5th Cir. 2018) ("Our inquiry begins with the
statutory text, and ends there as well if the text is unambiguous.") The FCA has a
clear definition of "knowingly" and thus Courts are bound to apply it, not rewrite it
by substituting judicial interpretations of another statute's scienter standard using a
completely different word ("willfully"), outside the context of defrauding the federal
government, where "those who seek public funds" have a heightened duty to "act with
scrupulous regard for the requirements of law." *Heckler v. Cmty. Health Servs. of*
*Crawford Cnty., Inc.*, 467 U.S. 51, 63 (1984).

III.   ***Safeway* and *SuperValu* have no applicability to the claims
brought under the TMFPA and LMAPIL.**

Even if there were a reason to apply *Safeway* and *SuperValu*'s interpretation
of the FCA's scienter requirement to the FCA claims here, there is no basis for
applying it to Relator and Texas's claims under the TMFPA, nor to Relator's claims
under LMAPIL. The state Supreme Court's interpretation of state statutes controls
here. *See Barfield v. Madison Cnty., Miss.*, 212 F.3d 269, 271-72 (5th Cir. 2000). The
Louisiana Supreme Court has applied the plain language of the Louisiana statutory
definition of "knowingly" and has not held that evidence of subjective intent to
defraud is irrelevant, nor has it applied *Safeco* or otherwise read in federal
interpretations to this part of LMAPIL. *See Caldwell v. Janssen Pharm., Inc.*, 144 So.
3d 898, 909 (La. 2014). Nor should the Court apply scienter requirements of the FCA

to its analysis of the TMPFA. The starting point for statutory analysis of the TMFPA should be its plain language:

> Though the parties make comparisons to analogous federal and state fraud-prevention acts as it suits their arguments—including the federal False Claims Act … these comparisons are not probative. These statutes, while similar in aim and tactic, employ materially different language, and the language of our statutes controls the outcome here.

*In re Xerox Corp.*, 555 S.W.3d 518, 535 (Tex. 2018). Further, if a statute is clear and unambiguous, a court must apply its words according to their common meaning without resort to rules of construction or extrinsic aids. *Fitzgerald v. Advanced Spine Fixation Sys.*, 996 S.W.2d 864, 865 (Tex. 1998).

While the TMFPA incorporates by reference some of the civil penalty provisions of the FCA, it does not incorporate the FCA in its scienter requirements. *Compare* Tex. Hum. Res. Code § 36.052, *with id*. § 36.0011. That the Texas Legislature chose to incorporate the FCA in some provisions but not others demonstrates that it did not intend that the scienter requirements of the FCA apply to the TMPFA. *See In re Xerox*, 555 S.W.3d at 527 ("We thus presume the Legislature selected statutory words, phrases, and expressions deliberately and purposefully and was just as careful in selecting the words, phrases, and expressions that were included or omitted."). Following the plain language approach articulated by the Texas Supreme Court, the Texas Eighth Court of Appeals recently held:

> Because the TMFPA does not define "conscious indifference" or "reckless disregard," we give each term its ordinary meaning. *City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 n.19 (Tex. 2006) (citing TEX. GOV'T CODE ANN. § 312.002). *The Texas Supreme Court has said these terms "require proof that a party knew the relevant facts but did not care about the result." Id.* (citing cases).

9

*Malouf v. State ex rels. Ellis*, No. 08-20-00235-CV, 2022 WL 8079246, at \*6 (Tex. App.—El Paso Oct. 14, 2022, no pet. h.) (emphasis added). Thus, it is the Texas Supreme Court's plain language definition of "reckless disregard" that controls here and not the FCA scienter standard. Accordingly, *Safeway* and *SuperValu* are of no consequence to Plaintiffs' claims under the TMFPA or LMAPIL.

### CONCLUSION

Even if the Supreme Court affirms *Safeway* and *SuperValu*, Defendants are still liable under the FCA. And while the Fifth Circuit has not directly answered the question presented to the Supreme Court in *Safeway* and *SuperValu*, Fifth Circuit precedent supports applying the FCA's statutory definition.

Respectfully submitted.

/s/ Heather Gebelin Hacker
Heather Gebelin Hacker
Texas Bar No. 24103325
Andrew B. Stephens
Texas Bar No. 24079396
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
(512) 399-3022
heather@hackerstephens.com
andrew@hackerstephens.com

***Attorneys For Relator***

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN E. COWLES

10

Deputy Attorney General for Civil Litigation

/s/ Amy Snow Hilton
Christopher D. Hilton
Chief, General Litigation Division
Texas Bar No. 24087727
Amy Snow Hilton
Assistant Attorney General
General Litigation Division
Texas Bar No. 24097834

Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 / Fax (512) 320-0667
Christopher.Hilton@oag.texas.gov
Amy.Hilton@oag.texas.gov

***Attorneys for State of Texas***

11

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2023, this document was electronically

filed and served via the Court's CM/ECF system.

/s/ Heather Gebelin Hacker
Heather Gebelin Hacker
