IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ALEX DOE, Relator, THE STATE OF TEXAS, *ex rel.* ALEX DOE, Relator, THE STATE OF LOUISIANA, *ex rel.* ALEX DOE, Relator, § § § § § § | No. 2:21-cv-022-Z | |
| Plaintiffs, § § | Date: | January 27, 2023 |
| v. § § | | |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., PLANNED PARENTHOOD GULF COAST, INC., PLANNED PARENTHOOD OF GREATER TEXAS, INC., PLANNED PARENTHOOD SOUTH TEXAS, INC., PLANNED PARENTHOOD CAMERON COUNTY, INC., PLANNED PARENTHOOD SAN ANTONIO, INC., § § § § § § § § § § | | |
| Defendants. § § | | |

**PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.'S
RESPONSE TO PLAINTIFFS' "STATEMENT OF UNDISPUTED FACTS"**

**PPFA's Response to Plaintiffs' "Statement of Undisputed Facts"**

What follows is Planned Parenthood Federation of America, Inc.'s ("PPFA") response to statements specific to PPFA within Plaintiffs' "Statement of Undisputed Facts" in support of Texas's Motion for Summary Judgment and Relator's Motion for Partial Summary Judgment.[1] ECF No. 391 at 13-37. Plaintiffs also made statements in the "Argument" section of their brief, *id.* at 45-108, about PPFA that could be construed as statements of purported fact—many blur the line between argument and fact—but are not contained in Plaintiffs' "Statement of Undisputed Facts." Many of these assertions are either unsupported by the cited portions of Plaintiffs' appendix or contain no supporting citations at all. And almost all of those assertions are either not relevant or not material to the issues before the Court.[2]

For these reasons, PPFA has not provided a statement-by-statement rebuttal to statements that are not included in Plaintiffs' "Statement of Undisputed Facts" and addresses them as argument in its opposition brief. To the extent the Court considers any of these factual assertions to be relevant or material, PPFA respectfully requests the opportunity to promptly provide a response to those specific statements.

One recurring theme in Plaintiffs' summary-judgment argument warrants discussion at the outset. Plaintiffs repeatedly equate legal services performed by attorneys within PPFA's Public Policy Litigation and Law department ("L&L") on behalf of their clients, the Affiliate Defendants,

---

[1] This response supplements PPFA's concurrently-filed brief in opposition to these motions, which disputes various statements of fact throughout Plaintiffs' brief.

[2] The majority of these purported facts relate to issues regarding corporate separateness, control, and the relationship between PPFA and the Affiliate Defendants (though Plaintiffs often fail to make any specific connection between the parties and instead rely on broad generalities applicable to the relationship between PPFA and *any* of its 49 affiliates). Because Plaintiffs are not arguing derivative liability, these facts have nothing to do with the claims at issue in this litigation. *See* PPFA Opp. Br. at I.

to action by PPFA. As PPFA explains more fully in its opposition brief, *see* PPFA Opp. Br. at II.A.2(3), this is incorrect and misleading. L&L is a captive law firm that provides legal counsel to affiliates, as well as to PPFA, about certain public policy-related legal matters. ECF No. 376 at 2; ECF No. 387-1 at 49. L&L has separate duties of loyalty and confidentiality to PPFA and to each affiliate, as reflected in PPFA's bylaws. ECF No. 387-1 at 50 (stating that confidential affiliate information "shall not be shared with … PPFA personnel outside of [L&L]" without the affiliate's "prior consent"). PPFA has no control over whether L&L represents an affiliate in a given matter, ECF No. 390-3 at 365, and "[t]he affiliates are the sole deciders" and "the sole authority" when it comes to "litigation strategy with [L&L]," *id.* at 366.[3]

Despite this, Plaintiffs repeatedly falsely state that "PPFA" took actions that PPFA, in fact, did not take. *See, e.g.*, ECF No. 391 at 33 ("Meanwhile, **PPFA**, on behalf of the Affiliate Defendants, **asked the Texas federal district court to stay their case** after it was remanded so that they could file a petition for writ of certiorari at the Supreme Court. Once that deadline passed with no petition filed, **PPFA voluntarily dismissed its case** on May 13, 2021.") (emphasis added). The clear and unrebutted evidence in this case is that the Affiliate Defendants were not required to retain L&L attorneys as counsel, ECF No. 387-1 at 49-50, that the Affiliate Defendants also had separate private counsel in Texas and Louisiana,[4] and that "PPFA does not get involved with the [Affiliate

---

[3] Throughout this Response and its opposition brief, PPFA cites and quotes portions of documents filed under seal by Plaintiffs. PPFA agrees to downgrade the cited and quoted portions of those documents from "Confidential" to no confidentiality designation under the Protective Order in this case. PPFA, however, opposes Plaintiffs' motion to unseal the entirety of their summary-judgment appendix. ECF No. 410. PPFA will file its opposition to that motion on February 8, 2023.

[4] *Planned Parenthood Gulf Coast, Inc., v. Kliebert*, No. 3:15-cv-00565 (M.D. La.), ECF No. 1 at 15 (William E. Rittenberg represented PPGC in the Louisiana termination proceedings); *Planned Parenthood of Greater Tex. Family Planning & Preventative Health Servs., Inc. v. Smith*, No. 1:15-cv-01058 (W.D. Tex.), ECF No. 1 at 19 (counsel from Husch Blackwell LLP represented the Affiliate Defendants in the Texas termination proceedings).

2

Defendants'] litigation, with their legal strategy.  That is completely, completely within their discretion," ECF No. 390-3 at 368.

And Plaintiffs are well aware of the distinction between PPFA and L&L.  Indeed, only six weeks ago, the State of Texas filed a motion to compel privileged communications premised *expressly* on the theory that PPFA and L&L are distinct and separate entities with respect to the termination proceedings.  *See* ECF No. 354 at 4 ("PPFA (through representative Kim Custer) expressly testified that . . . PPFA was 'not involved in their litigation discussions' (between L&L and the Affiliates), and that L&L 'represents the affiliates as their clients and they have attorney-client privilege.'") (citations omitted); *id.* at 5 ("PPFA (through representative Vicki [*sic*] Barrow-Klein) drew a clear distinction between PPFA and members of the L&L Department describing L&L as 'a captive [] law firm' and saying PPFA has 'very little access to their information.'"); *id.* ("PPFA also described the procedures in place to 'firewall' L&L off from PPFA and discussed PPFA's efforts 'to ensure [L&L's] independence from management of PPFA.'").

The evidence clearly demonstrates that PPFA did not control, influence, or otherwise direct the Affiliate Defendants' litigation strategy—and any actions that L&L took when representing the Affiliate Defendants were neither on behalf of nor by PPFA.

Plaintiffs further contend—without citing any evidence—that PPFA "has received and continues to receive Medicaid funds through the NPS payments from the PPFA Affiliates because Medicaid funds are part of the PPFA Affiliates' revenue." ECF No. 391 at 91.  This claim is not only logically unsound, *see* PPFA Opp. Br. at 28 n.9, but misleading.  While Plaintiffs assert that "Defendants' expert Louis Dudney admitted that the PPFA Affiliates have paid Medicaid funds to PPFA as part of their NPS payments," Mr. Dudney in fact testified:  "I'm unaware of any activity where Medicaid funds, which are only a part of what is received by a defendant affiliate, are

3

somehow earmarked for dues that are being paid to PPFA. That said cash is fungible. And so cash is received by the defendant affiliates based on what I've seen in their tax returns and other financial information from a variety of sources." ECF No. 390-3 at 484.

As detailed further in PPFA's motion for summary judgment, ECF No. 385, and its opposition to Plaintiffs' motion, the Court should deny Plaintiffs' motions for summary judgment as to PPFA and grant summary judgment for PPFA.

| Key | | |
|---|---|---|
| **DII** Disputed, But Irrelevant and Immaterial to Motion | **D** Disputed | **FTS** Failed to Support |

| Plaintiffs' Purported Fact and Citation | PPFA's Response |
|---|---|
| PPFA's health centers are operated by its 49 Affiliates.  Appx.1645–46 (Custer (PPFA) Depo. 29:7–30:2). | **DII.**  PPFA does not have "health centers" and is not a health care provider.  ECF No. 387-1 at 313.  Planned Parenthood-branded health care centers are owned and operated by PPFA's affiliates. |
| PPFA closely governs the operations of its Affiliates through its rigorous accreditation process, which Affiliates must satisfy to maintain their standing within the Federation and use the valuable "Planned Parenthood" name and mark. *See generally* Appx.2727-4021. | **DII.**  PPFA does not "closely govern[] the operations of its Affiliates" through the accreditation process.  The "affiliates agree to comply and meet the different elements of performance in the accreditation process," ECF No. 390-3 at 350, and the affiliates, as the membership, "set[] the standards of affiliation," *id.* at 347. |
| If Affiliates fail to meet PPFA's standards, they are required to undertake corrective actions or risk losing their status as a Planned Parenthood entity.  Appx.2728. | **DII** to the extent that these are not PPFA's standards; they are set by the membership, which is comprised of all 49 affiliates.  ECF No. 390-3 at 347.  Moreover, an affiliate may still be fully accredited so long as it is determined to have fewer than 20 Class II deviations from the Standards of Affiliation.  ECF No. 390-7 at 332-33. |
| The PPFA brand is extremely valuable, and it is unlikely that any of the affiliates would be able to stay in business if they did not have access to the PPFA brand or PPFA resources.  Appx.1957 (Lambrecht Depo. 25:8-9). | **D.**  The cited testimony does not support this purported fact, because Mr. Lambrecht merely stated: "Planned Parenthood is one of the strongest brands in the United States."  He did not opine about an affiliate's ability to stay in business without access to the brand or resources.  Moreover, PPFA's financial expert, Louis Dudney, "analyzed the financial statements and related financial activity of PPFA and the Affiliate Defendants to assess whether PPFA and the Affiliate Defendants are financially dependent on one another," ECF No. 387-1 at 105, and concluded that they were not.  *Id.* at 113-116.  Mr. Dudney's conclusion is unrebutted.  ECF No. 390-3 at 691. |

5

| Plaintiffs' Purported Fact and Citation | PPFA's Response |
|---|---|
| PPFA also has a large Healthcare Division which assists Affiliates with respect to their clinical operations. Appx. 1638-1703 (Custer (PPFA) Depo. 179:24-182:1). | **DII** to the extent that the purported fact suggests that PPFA is involved in the day-to-day clinical operations of its affiliates. PPFA provides "consulting or technical assistance on healthcare operations." ECF No. 390-3 at 375. |
| PPFA also employs physicians that run PPFA's Research Department, which approves research funded by PPFA or that takes place at any PPFA Affiliates. Appx.4875-4876. | **DII.** The cited document states only that PPFA "review[s] and approve[s] all affiliate-based research (70 studies per year) to ensure that affiliates, their clients[,] and the brand are adequately protected." ECF No. 390-10 at 16. Plaintiffs cite no evidence involving the Affiliate Defendants. |
| The Healthcare Division also has a Business Operations Team which assists Affiliates with their revenue cycle, among other things, which includes Medicaid billing. Appx.1542 (Coluccio Depo. 12:6-21); Appx.4869; *see also, e.g.*, Appx.4977-5009; Appx.5037-5055; Appx.4391-4570. | **DII.** The cited testimony and documents do not support the purported fact as it concerns "Medicaid billing." They merely establish that PPFA may sometimes assist an affiliate in managing its revenue cycle. ECF No. 390-3 at 234; ECF No. 390-10 at 9. While PPFA creates toolkits titled "Medicaid Reimbursement" and "Revenue Cycle," PPFA plays no role in the actual billing or claims-submission processes and the toolkits do not advise affiliates on how to submit claims. ECF No. 390-3 at 525 (119:20-120:9[5]); ECF No. 390-10 at 119-49, 177-95. Plaintiffs cite no evidence involving the Affiliate Defendants. |
| PPFA also gives a significant amount of money to the Affiliates each year, and the Affiliates in turn pay dues, or "National Program Support," which is determined according to the Affiliates' operating expenses and is required to maintain membership in the Federation and use of the Planned Parenthood name. Appx.1684 (Custer Depo. 183:1-7); Appx.1436 (Barrow-Klein Depo. 24:13-18); Appx.5067-5068; Appx.2749. | **DII.** As established in Mr. Dudney's financial assessment, "PPFA's total expenses related to the Affiliate Defendants (which, as discussed above, are primarily grants and awards provided by PPFA to the Affiliate Defendants) represented, on average, less than 10% of the Affiliate Defendants' revenue." ECF No. 387-1 at 112; ECF No. 390-3 at 457 (92:10-17). PPFA's affiliates vote on how PPFA and the affiliates "share revenue that [they] raise both online and offline." ECF No. 390-3 at 361 (125:14-25). Plaintiffs cite no evidence involving the Affiliate Defendants. |

---

[5] Affiliate Defendants have agreed to downgrade these pages (119-120) of the Exnicious Deposition from "Confidential Information" to no confidentiality designation.

| Plaintiffs' Purported Fact and Citation | PPFA's Response |
|---|---|
| If an Affiliate has a larger operation and provides more services, it pays more to PPFA. *Id.* | **DII.**  An affiliate's NPS dues are tied to operating expenses, but can be waived—larger operations do not always mean higher payments to PPFA.  ECF No. 387-1 at 219; ECF No. 390-3 at 191 (38:21-39:11). Plaintiffs cite no evidence involving the Affiliate Defendants. |
| PPFA gave over $250 million dollars to the Affiliates in grants and awards over the past two years.  Appx.4027; Appx.4041. | **DII.**  The cited evidence relates to PPFA's grants and awards to all 49 of its affiliates and the affiliates' ancillary organizations.  PPFA's expenses related to the Affiliate Defendants in FY2021 and FY2022 combined was just over $16 million.  ECF No. 387-1 at 107. |
| Kaleido was developed by PPFA and given to 415 [*sic*] Holdings.  [Appx. 1480-1482.] | **DII.**  The cited testimony does not support this purported fact.  Kaleido Health Solutions is a technology firm, wholly owned by 416 Holdings, that is responsible for two digital products created by PPFA:  PPDirect and PPCare.  ECF No. 390-3 at 172 (198:2-199:10). |
| PPTV must be accredited by PPFA. Appx.4014-4015. | **DII.**  Ancillary organizations like PPTV must have an "ancillary organization review" that is different than the affiliate accreditation process.  *Compare* ECF No. 390-7 at 432 ("The review process consists of the submission of a completed self-study (see attached) and supporting documents") *with id.* at 434 (describing the accreditation review process for a PPFA affiliate). |
| These officials verified Planned Parenthood's ability to provide intact or mostly intact fetuses through changing the way abortion procedures were performed and expressed a desire for monetary compensation for those fetuses.  *Id.* | **DII.**  *See* Aff. Defs. Opp. Br. at 5. |
| PPGC and PPFA instead chose to file suit in Louisiana federal court, with PPFA representing PPGC and several of PPGC's purported patients.  Complaint, *Planned Parenthood Gulf Coast, Inc., v. Kliebert*, No. 3:15-cv-00565 (M.D. La. Aug. 25, 2015), Dkt. 1 at 16. | **DII.**  PPFA was not a party to this lawsuit and Plaintiffs cite no evidence establishing that PPFA played any role in PPGC's choice to file suit in Louisiana federal district court.  *See supra* at 1-2. |
| PPGC's *patients*, through PPFA, obtained a preliminary injunction that did not impact the | **DII.**  PPGC was the named plaintiff in *Kliebert* and obtained an injunction while |

7

| Plaintiffs' Purported Fact and Citation | PPFA's Response |
|---|---|
| State's decision that PPGC's actions violated state law; rather, it temporarily prevented the State from giving effect to PPGC's termination, which became final by operation of state law 30 days from PPGC's receipt of the letter, on or around October 15, 2015. *Planned Parenthood Gulf Coast, Inc. v. Kliebert*, 141 F. Supp. 3d 604, 636 (M.D. La. 2015); *see also* 50 La. Admin. Code Pt I, §§ 4203, 4211, Appx.2684-2695. | "appearing **on behalf of both itself** and three patients." *Kliebert*, No. 3:15-cv-00565 (M.D. La.), ECF No. 63 at 1 (emphasis added). Further, the phrase "through PPFA" is misleading, as PPFA was not a party in *Kliebert*, and the evidence clearly establishes that L&L was not acting on behalf of PPFA. *See supra* at 1-2. |
| Affiliate Defendants and PPFA instead chose to file a lawsuit on November 23, 2015 on behalf of Affiliate Defendants and ten of their anonymous patients in federal court challenging the preliminary notice under the qualified-provider provision. ROA.31-59. | **DII.** PPFA was not a party to this lawsuit and Plaintiffs cite no evidence establishing that PPFA played any role in the Affiliate Defendants' choice to file suit in Texas federal district court. *See supra* at 1-2. |
| As in Louisiana, the Affiliate Defendants' *patients*, through PPFA, then obtained a preliminary injunction. *See Planned Parenthood of Greater Tex. Family Planning & Preventative Health Services, Inc. v. Smith*, 236 F. Supp. 3d 974, 988 (W.D. Tex. 2017). | **DII.** Affiliate Defendants, along with seven patients, were the named plaintiffs in *Smith* and successfully obtained an injunction. Further, the phrase "through PPFA" is misleading, as PPFA was not a party in *Smith*, and the evidence clearly establishes that L&L was not acting on behalf of PPFA. *See supra* at 1-2. |
| The day before the Fifth Circuit's mandate was issued, the Affiliate Defendants, in a letter drafted by PPFA, wrote to Texas HHSC requesting that Texas rescind the termination or grant a "grace period" of six months to allow Affiliate Defendants' patients to find new providers in light of the COVID-19 pandemic. Appx.002038 (Linton Depo. 67:12–68:7); Appx.000802–07. | **DII.** The cited documents do not show that PPFA drafted this letter. Jennifer Sandman, a L&L attorney, was acting as counsel to the Affiliate Defendants. The evidence is undisputed that "PPFA is not privy to any of the litigation strategy. The affiliates are the sole deciders, the sole authority of any decision-making[] that they make, including litigation strategy with Litigation and Law." ECF No. 390-3 at 366 (142:6-12); *see also supra* at 1-2. |
| Meanwhile, PPFA, on behalf of the Affiliate Defendants, asked the Texas federal district court to stay their case after it was remanded so that they could file a petition for writ of certiorari at the Supreme Court. **FTS.** | **DII.** PPFA was not a party in *Smith*, and the evidence clearly establishes that L&L was not acting on behalf of PPFA. *See supra* at 1-2. |
| Once that deadline passed with no petition filed, PPFA voluntarily dismissed its case on | **DII.** PPFA was not a party in *Smith*, and the notice of voluntary dismissal was signed by the Affiliate Defendants' local counsel at |

| Plaintiffs' Purported Fact and Citation | PPFA's Response |
|---|---|
| May 13, 2021.  CITE [*sic*] (Linton Depo Ex 26). | Husch Blackwell LLP.  ECF No. 390-4 at 470; *see also supra* at 1-2. |
| Nor did PPFA, on behalf of PPGC, update the Louisiana federal district court with the Fifth Circuit's ruling.  **FTS**. | **DII.**  PPFA was not a party in *Smith* or in *Kliebert*, and the evidence clearly establishes that L&L was not acting on behalf of PPFA. *See supra* at 1-2. |
| Instead, when Louisiana moved to vacate the preliminary injunction, which PPGC knew no longer had any valid legal basis, PPFA and PPGC opposed the request and urged the Court to keep the baseless injunction in place—and it did.  Order, *Kliebert*, No. 3:15-cv-00565 (M.D. La. Apr. 7, 2021), Dkt. 121. | **DII.**  PPFA was not a party in *Kliebert* and did not "oppose[] the request and urge[] the Court" to do anything.  PPGC, the sole plaintiff in that case, was represented in its opposition to Louisiana's motion to vacate both by attorneys from L&L and by private, local counsel, Charles M. Samuel III. *Kliebert*, No. 3:15-cv-00565 (M.D. La.), ECF No. 116 at 2.  PPGC prevailed in its opposition to Louisiana's motion. *Kliebert*, ECF No. 121.  Plaintiffs cite no evidence supporting that "PPGC knew [the preliminary injunction] no longer had any valid legal basis."  *See also supra* at 1-2. |
| The State later again requested the injunction to be lifted, and this time, on October 10, 2022, PPFA and PPGC simply noted that it did not oppose the request.  Appx. 2726. | **DII.**  PPFA was not a party in *Kliebert* and thus did not "note[] that it did not oppose the request."  *See supra* at 1-2. |

Dated:  January 27, 2023

Respectfully submitted,

O'MELVENY & MYERS LLP

By:   */s/ Danny S. Ashby*

DANNY S. ASHBY
Texas Bar No. 01370960
dashby@omm.com
MEGAN R. WHISLER
Texas Bar No. 24079565
mwhisler@omm.com
2501 N. Harwood Street, Suite 1700
Dallas, Texas 75201
T: (972) 360-1900
F: (972) 360-1901

9

        LEAH GODESKY (*pro hac vice*)
        lgodesky@omm.com
        1999 Avenue of the Stars, 8th Floor
        Los Angeles, California 90067
        T: (310) 553-6700
        F: (310) 246-6779

        RYAN BROWN ATTORNEY AT LAW
        RYAN PATRICK BROWN
        Texas Bar No. 24073967
        ryan@ryanbrownattorneyatlaw.com
        1222 S. Fillmore St.
        Amarillo, Texas 79101
        T: (806) 372-5711
        F: (806) 350-7716

        *Attorneys for Defendant Planned Parenthood Federation of America, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2023, a copy of the foregoing was served pursuant to the Court's ECF system.

*/s/ Danny S. Ashby*

Danny S. Ashby

11