**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | |
|---|---|
| United States of America<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Texas<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Louisiana<br>*ex rel.* ALEX DOE, Relator,<br><br>　　　Plaintiffs,<br>v.<br><br>Planned Parenthood Federation of America, Inc.,<br>Planned Parenthood Gulf Coast, Inc., Planned<br>Parenthood of Greater Texas, Inc., Planned<br>Parenthood South Texas, Inc., Planned Parenthood<br>Cameron County, Inc., Planned Parenthood San<br>Antonio, Inc.,<br><br>　　　Defendants. | CIVIL ACTION NO.<br>2:21-CV-00022-Z<br><br>DATE: February 1, 2023 |

**DEFENDANTS' MOTION TO STAY**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

LEGAL STANDARD ................................................................................................................. 2

ARGUMENT .............................................................................................................................. 4

    I.     The Balance of Equities Support a Stay ........................................................................ 4

        A.   The Public Interest and Judicial Economy Support a Stay ............................................ 4

        B.   All Parties Benefit From a Modest Stay ........................................................................ 6

    II.    The Pending Supreme Court Decision is Central to The Scienter Analysis .................... 7

CONCLUSION.......................................................................................................................... 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Hotel & Lodging Ass'n v. City of Los Angeles*,
   No. CV 14-09603-AB (SSX), 2015 WL 10791930 (C.D. Cal. Nov. 5, 2015) .........................3

*Astec Am., Inc. v. Power-One, Inc.*,
   No. 6:07-CV-464, 2008 WL 11441994 (E.D. Tex. July 15, 2008) .....................................5, 6

*Barnes v. E-Systems, Inc. Grp. Hosp. Med. & Surgical Ins. Plan*,
   501 U.S. 1301 (1991) ...........................................................................................................2

*Bluetooth SIG, Inc. v. FCA US LLC*,
   2022 WL 789480 (W.D. Wash. Feb. 24, 2022) ...................................................................3, 5

*Brutus Trading v. Standard Chartered Bank*,
   No. 20-cv-2578, ECF No. 121 (2d Cir. Jan. 24, 2023) ..........................................................3

*Cajun Offshore Charters, LLC v. BP Prod. N. Am., Inc.*,
   No. CIV.A.10-1341, 2010 WL 2160292 (E.D. La. May 25, 2010) .........................................6

*Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*,
   No. 5:18-CV-97, 2019 WL 13191609 (S.D. Tex. Aug. 26, 2019) ..........................................2

*Greco v. Nat'l Football League*,
   116 F. Supp. 3d 744 (N.D. Tex. 2015) .................................................................................3

*U.S. ex rel. Hendrickson v. Bank of Am., N.A.*,
   343 F. Supp. 3d 610 (N.D. Tex. 2018) .................................................................................7

*Hungerford v. Smith & Nephew, Inc*,
   No. 2:15 CV 2754, 2016 WL 4499461 (W.D. La. Aug. 23, 2016) .......................................11

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936)..........................................................................................................2, 6

*Nairne v. Ardoin*,
   No. CV 22-178-SDD-SDJ, 2022 WL 3756195 (M.D. La. Aug. 30, 2022) ..............................5

*Planned Parenthood of Greater Tex. Fam. Plan. & Preventative Health Servs.,
   Inc. v. Kauffman*,
   981 F.3d 347 (5th Cir. 2020) (en banc) .................................................................................9

*U.S. ex rel. Proctor v. Safeway, Inc.*,
   30 F.4th 649 (7th Cir. 2022) ...................................................................................... *passim*

*In re Ramu Corp.*,
    903 F.2d 312 (5th Cir. 1990) ........................................................................3

*Safeco Insurance Co. of America v. Burr*,
    551 U.S. 47 (2007)....................................................................................5, 7, 8, 10

*U.S. ex rel. Schutte v. SuperValu Inc., et al.*,
    No. 20-2241 (Jan. 31, 2023) ........................................................ *passim*

*U.S. ex rel. Sheldon v. Forest Lab'ys, LLC*,
    499 F. Supp. 3d 184 (D. Md. 2020), *aff'd sub nom. U.S. ex rel. Sheldon v.*
    *Allergan Sales*, LLC, 24 F.4th 340 (4th Cir. 2022), o*pinion vacated on reh'g*
    *en banc*, 49 F.4th 873 (4th Cir. 2022), *and aff'd sub nom. U.S. ex rel. Sheldon*
    *v. Allergan Sales*, LLC, 49 F.4th 873 (4th Cir. 2022) (en banc)................................7

*Sikhs for Just. v. Nath*,
    893 F. Supp. 2d 598 (S.D.N.Y. 2012)........................................................................3

*Sw. Airlines Co. v. Transp. Workers Union of Am. AFL-CIO Loc. 555*,
    No. 3:16-CV-3536-G, 2018 WL 2317710 (N.D. Tex. May 22, 2018)......................5

*Tex. Retailers Ass'n v. U.S. Dep't of Agric.*,
    752 F. App'x 202 (5th Cir. 2019) ..........................................................................3

*Treece v. Perrier Condo. Owners Ass'n, Inc.*,
    No. CV 17-10153, 2020 WL 759567 (E.D. La. Feb. 14, 2020) ................................4

*United States v. Dental Health Programs, Inc.*,
    No. 3:18-CV-00463-E, 2020 WL 3064712 (N.D. Tex. June 8, 2020) ..............................10, 11

*Universal Health Servs., Inc. v. U.S. ex rel. Escobar*,
    579 U.S. 176 (2016)..................................................................................................4

*Weingarten Realty Invs. v. Miller*,
    661 F.3d 904 (5th Cir. 2011) ....................................................................................6

*U.S. ex rel. Williams v. McKesson Corp.*,
    No. 3:12-CV-0371-B, 2014 WL 3353247 (N.D. Tex. July 9, 2014)......................10

*In re Xerox Corp.*,
    555 S.W.3d 518 (Tex. 2018)....................................................................................10

**Statutes**

31 U.S.C. §§ 3729(a)(1)(A), 3729(a)(1)(G) ................................................................4

False Claims Act ............................................................................... *passim*

La. Rev. Stat. § 46:438.3......................................................................................................10

Tex. Hum. Res. Code § 36.002(12), A ...............................................................................4

**Other Authorities**

Supreme Court of the United States, The Court and Its Procedures,
    https://www.supremecourt.gov/about/procedures.aspx (last visited Jan. 28,
    2023) ..................................................................................................................................2

Defendants Planned Parenthood Gulf Coast, Inc. ("PPGC"); Planned Parenthood of Greater Texas, Inc. ("PPGT"); Planned Parenthood South Texas, Inc. ("PPST"); Planned Parenthood Cameron County, Inc. ("PPCC"); Planned Parenthood San Antonio, Inc. ("PPSA"); and Planned Parenthood Federation of America ("PPFA") (collectively, "Defendants") respectfully move this Court to stay this matter pending the Supreme Court's decision in *U.S. ex rel. Schutte v. Supervalu Inc.* and *U.S. ex rel. Proctor v. Safeway, Inc.*[1]  Defendants also request expedited briefing in a separately filed motion.

## INTRODUCTION

As this Court is aware, the Supreme Court recently granted *certiorari* in two False Claims Act ("FCA") cases that will decide the important question of whether a defendant's objectively reasonable interpretation of a legal requirement, even if incorrect, precludes a finding that it acted "knowingly" under the FCA.  If the answer is yes, that objectively reasonable belief precludes liability, irrespective of a defendant's subjective intent—which would make FCA cases (including this one) more susceptible to adjudication at summary judgment.  Given that this is the Supreme Court's first foray into interpreting scienter under the FCA, regardless of how it resolves the question, it will undoubtedly provide guidance on the contours of what "knowingly" means under the statute.  Inevitably, the Supreme Court's decisions will impact how this Court (or potentially a jury) should evaluate scienter in this case.[2]  The Supreme Court will hear oral argument on April

---

[1] *See* Dkt. 417 (indicating that Defendants were considering filing a motion to stay).

[2]  To be clear, Defendants are also entitled to summary judgment on grounds other than scienter. Affiliate Defendants, for example, had no independent obligation to repay funds received for healthcare services they provided while the injunctions entitled them to provide those services through the Medicaid program.  Similarly, PPFA did not cause the Affiliate Defendants to engage in the allegedly wrongful conduct.  Neither issue turns on scienter, and it is therefore possible for this Court to grant summary judgment for all Defendants without parsing the issues presented in *Schutte* and *Proctor*.  However, as explained below, this Court could not deny Defendants

1

18, 2023 and render a decision before the end of the Term in June 2023.[3]   And the Court likely

will render a decision before the end of the Term in June 2023.  Judicial economy, and more

importantly, accuracy, will be best served by a stay of modest duration until after the decision is

handed down.  Plaintiffs will suffer no prejudice from a stay of a matter of months; indeed, this

case has already proceeded much faster than most complex FCA matters.  For these reasons, and

as discussed further below, the Court should stay this case pending the Supreme Court's resolution

of the *Schutte* and *Proctor* matters.[4]

## LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to

control the disposition of the causes on its docket with economy of time and effort for itself, for

counsel, and for litigants . . . , which must weigh competing interests[.]" *Landis v. N. Am. Co.*,

299 U.S. 248, 254–55 (1936).  "The appropriateness of a stay must . . . be evaluated in view of the

potential prejudice to Plaintiff, the hardship to Defendants caused by denying a stay, and judicial

efficiency." *Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*, No. 5:18-CV-97, 2019

WL 13191609, at \*2 (S.D. Tex. Aug. 26, 2019); *see also Barnes v. E-Systems, Inc. Grp. Hosp.*

---

summary judgment —or to grant it in favor of the Plaintiffs—without addressing scienter.
Accordingly, while the Court could grant summary judgment for Defendants without awaiting the
Supreme Court's decision later this Term, it cannot do the obverse (*i.e.*, either deny summary
judgment for Defendants or grant it for Plaintiffs).

[3] Supreme Court Dkt., *U.S. ex rel. Schutte v. SuperValu Inc., et al.*, No. 20-2241 (Jan. 31, 2023)
(setting oral argument for April 18, 2023); *see also* The Supreme Court of the United States, The
Court and Its Procedures, https://www.supremecourt.gov/about/procedures.aspx (last visited Jan.
28, 2023) (stating that the Court "maintains [its] schedule each Term until all cases ready for
submission have been heard and decided" an then "recesses at the end of June").

[4] In the interest of efficiency and trial readiness, Defendants suggest that the Court require that
Texas comply in the meantime with the Court's January 17, 2023 Order, Dkt. 408.  Texas informed
Defendants today, February 1, 2023, that its efforts to comply are underway but Defendants have
yet to receive an updated log or additional documents.

*Med. & Surgical Ins. Plan*, 501 U.S. 1301, 1305 (1991) (stating that when determining whether to issue a stay, courts "balance the equities – to explore the relative harms to applicant and respondent, as well as the interests of the public at large" (quotation marks and citation omitted)). "[U]ltimately, the Court maintains broad discretion in deciding whether 'it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.'" *Bluetooth SIG, Inc. v. FCA US LLC*, 2022 WL 789480, at *1 (W.D. Wash. Feb. 24, 2022) (quoting *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979)); *accord In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990) (a district court has "wide discretion to control the course of litigation").

Courts in similar circumstances routinely issue stays while the Supreme Court or the relevant Court of Appeals decides an issue important to the resolution of the case. *See, e.g.*, *Brutus Trading v. Standard Chartered Bank*, No. 20-cv-2578, ECF No. 121 (2d Cir. Jan. 24, 2023) (staying case *sua sponte* pending Supreme Court decision on FCA issue); *Tex. Retailers Ass'n v. U.S. Dep't of Agric.*, 752 F. App'x 202, 203 (5th Cir. 2019) (ordering "that the [district] court stay its hand from further activity until the Supreme Court's decision is rendered"); *Greco v. Nat'l Football League*, 116 F. Supp. 3d 744, 761 (N.D. Tex. 2015) (staying case when a forthcoming appellate decision "would potentially necessitate a retrial"); *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, No. CV 14-09603-AB (SSX), 2015 WL 10791930, at *3 (C.D. Cal. Nov. 5, 2015) (determining that there was "no reason to expend any additional resources" when a pending appeal would "likely be heard within a matter of months" and "could resolve the matter"); *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012) (collecting cases).

3

## ARGUMENT

### I.       The Balance of Equities Support a Stay

#### A.       *The Public Interest and Judicial Economy Support a Stay*

The public interest and judicial economy would be well served by staying this case to allow

the Court to "receive the benefit" of the Supreme Court's opinion in *Schutte* and *Proctor*. *See*

*Treece v. Perrier Condo. Owners Ass'n, Inc.*, No. CV 17-10153, 2020 WL 759567, at *18 (E.D.

La. Feb. 14, 2020).  Among the other key elements, Relator cannot prevail on their implied false

certification claims or Plaintiffs on their reverse false claims without (at a minimum) establishing

Defendants acted "knowingly." 31 U.S.C. §§ 3729(a)(1)(A), 3729(a)(1)(G); Tex. Hum. Res. Code

§ 36.002(12).[5] On January 13, 2023, the Supreme Court granted *certiorari* in two cases to interpret

that term under the FCA. *See* Dkt. 409.  As discussed in Defendants' summary judgment briefing,

evaluation of scienter in this case presents a question that the Supreme Court will address—

whether Defendants' objectively reasonable interpretation of a legal requirement (here, not to

repay monies obtained under various court orders and a state-conferred "grace period") precludes

a finding that they acted "knowingly" as a matter of law, without regard to evidence of subjective

intent. *See* Dkt. 382 at 31-36.  And, because this is the Supreme Court's first opportunity to address

FCA scienter, it doubtless will provide valuable guidance however it decides that particular issue.[6]

---

[5] A reverse FCA claim also requires a showing that Defendants acted "improperly," though this additional requirement is unlikely to be addressed by the Supreme Court as neither *Schutte* nor *Proctor* involve reverse FCA claims.

[6] For example, in *Escobar*, the Supreme Court reviewed the viability of "implied" false certification theory under the FCA, but in so doing provided important guidance on the application of the materiality element to such claims. *See Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 180 (2016); *id.* at 181 (defendant must have "knowingly violated a requirement that the defendant knows is material to the Government's payment decision").

Plaintiffs' recent Supplemental Brief (Dkt. 411) proves the point. By highlighting that they "have located no Fifth Circuit precedent disregarding evidence of subjective intent to defraud under the FCA," Dkt. 411 at 6, they concede the court of appeals has not addressed the issue. The Supreme Court has granted review of the Seventh Circuit's decisions in *Schutte* and *Proctor*, which held that *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007), applies to the FCA. Plaintiffs speculate that the Fifth Circuit would be unlikely to side with the Seventh, *id.* at 7, but that is beside the point. The question now is whether the Supreme Court of the United States will adopt the Seventh Circuit's view and apply the *Safeco* doctrine to *all* FCA cases wherever pending. There is no need for fruitless prediction on that score given that the case will be argued and decided in a matter of months.

For this reason, as noted above, courts routinely find a stay serves the public interest and judicial economy when an appellate court's decision "could significantly alter the contours of [a] case for trial." *See, e.g.*, *Bluetooth SIG*, 2022 WL 789480, at *2; *see also Sw. Airlines Co. v. Transp. Workers Union of Am. AFL-CIO Loc. 555*, No. 3:16-CV-3536-G, 2018 WL 2317710, at *3 (N.D. Tex. May 22, 2018) ("preserving the parties' valuable resources" serves public interest); *Astec Am., Inc. v. Power-One, Inc.*, No. 6:07-CV-464, 2008 WL 11441994, at *3 (E.D. Tex. July 15, 2008) ("Controlling litigation expenses and conservation of judicial resources serves not only the parties and the Court, but also the public as a whole."). A stay ensures that this case can be "litigated without the risk of draining the parties' and the Court's resources, only to start over if legal contours change." *Nairne v. Ardoin*, No. CV 22-178-SDD-SDJ, 2022 WL 3756195, at *2 (M.D. La. Aug. 30, 2022).

Those concerns are particularly heightened here, given the posture of the case. Absent a stay, under the current schedule, this Court will decide summary judgment and the case will be

tried, if necessary, before the Supreme Court's decision. Proceeding full steam ahead risks substantial error that would require motions for reconsideration or retrial (or could obviate the need for a trial at all). It would be prudent and in the public interest to briefly stay the matter pending the issuance of that decision.

### B. All Parties Benefit From a Modest Stay

The modest stay sought here would provide clarity to all parties and would be short in length. *See Cajun Offshore Charters, LLC v. BP Prod. N. Am., Inc.*, No. CIV.A.10-1341, 2010 WL 2160292, at *2 (E.D. La. May 25, 2010) (noting that a "delay of a few months" is "slight when compared to the hardship to the defendants and the interests of judicial economy"). Defendants do not seek a lengthy delay. The Supreme Court will hear argument in April 2023 and will issue its opinion in June. If this Court's calendar allows, it could reset the trial (currently set for April 24, 2023, *see* Dkt. 346) to occur in the second half of 2023. A stay therefore would be far afield from the type of "stay of indefinite duration" that courts have been hesitant to impose. *See Landis*, 299 U.S. at 255.

A modest stay would provide clarity for all parties, without causing harm to any party. Plaintiffs have no colorable prejudice claim from such a modest delay. A stay would cause Plaintiffs no "difficulties in presenting [their] case." *See Weingarten Realty Invs. v. Miller*, 661 F.3d 904, 913 (5th Cir. 2011). To the contrary, a stay will allow this litigation to proceed efficiently, as clarity about the contours of the FCA scienter element will allow for summary judgment determinations and any trial to proceed under the correct legal standard.

Defendants, by contrast, face substantial harm absent a stay. Defendants are non-profit entities that will incur significant costs in continuing to defend and try a case that could very well be reversed on appeal because of guidance from the Supreme Court. *See also, e.g., Astec Am.*,

2008 WL 11441994, at *3 (finding harm when separate litigation could have a "dramatic effect on how the parties conduct[ed] discovery and prepare[d] for trial," especially because "[l]itigation is expensive").  Proceeding without guidance from the Supreme Court would also likely waste summary-judgment and trial stage resources.  Given the benefits to all and that no party faces prejudice, the balance of equities strongly supports a stay.

## II.    The Pending Supreme Court Decision is Central to The Scienter Analysis

Even if this Court were in the business of predicting how the Supreme Court might rule, Plaintiffs are wrong as to the likely holding from the Supreme Court.  As this Court already noted in ordering supplemental briefing, "every . . . circuit" to address this issue has determined that a defendant cannot violate the FCA if its interpretation of its legal obligations was objectively reasonable.  *See* Dkt. 409 (citing *U.S. ex rel. Proctor v. Safeway, Inc.*, 30 F.4th 649, 652-53 (7th Cir. 2022), *cert. granted*, No. 22-111, 2023 WL 178393 (U.S. Jan. 13, 2023)).[7]  The issue has drawn wide interest from *amici* supporting the application of *Safeco* to the FCA, including the U.S. Chamber of Commerce.  *See, e.g.*, Amicus Br. of U.S. Chamber of Commerce, ECF No. 40, *U.S. ex rel. Schutte v. Supervalu, Inc.*, No. 20-2241 (7th Cir. Dec. 20, 2020).  And, though the Fifth Circuit has yet to address it, at least one court in this District has determined that "FCA liability does not attach when a defendant reasonably, yet erroneously, interprets its legal obligations." *U.S. ex rel. Hendrickson v. Bank of Am., N.A.*, 343 F. Supp. 3d 610, 636 (N.D. Tex. 2018).

---

[7] A district court in the Fourth Circuit likewise applied *Safeco* to the FCA, was affirmed by a panel of the court appeals, subsequently reviewed *en banc*, and affirmed by an equally divided court. *See U.S. ex rel. Sheldon v. Forest Lab'ys, LLC*, 499 F. Supp. 3d 184, 207 (D. Md. 2020), *aff'd sub nom. U.S. ex rel. Sheldon v. Allergan Sales*, LLC, 24 F.4th 340 (4th Cir. 2022), o*pinion vacated on reh'g en banc*, 49 F.4th 873 (4th Cir. 2022), *and aff'd sub nom. U.S. ex rel. Sheldon v. Allergan Sales*, LLC, 49 F.4th 873 (4th Cir. 2022) (en banc).

Asking Defendants to prove a negative, Plaintiffs assert "Planned Parenthood can point to *no* law" showing that it did not have an obligation to return payments Affiliate Defendants received during the pendency of the injunctions. *See* Dkt. 411 at 5. As discussed at length in Defendants' summary judgment brief, that is wrong: the overwhelming weight of authority demonstrates that there was no repayment obligation. *See* Dkt. 382 at 22-30. In fact, it is Plaintiffs (who of course bear the burden of proof) that can "point to *no* law" supporting their view that vacatur of an injunction triggers an automatic repayment obligation of a healthcare provider's reimbursement for healthcare services provided while the injunction was in place. At a minimum, the law is "less than pellucid," *Safeco*, 551 U.S. at 70, and there are "potential due process problems posed by penalizing a private party for violating a rule without first providing adequate notice of the substance of the rule." Amicus Br. of U.S. Chamber of Commerce at 24, ECF No. 40, *U.S. ex rel. Schutte v. Supervalu, Inc.*, No. 20-2241 (7th Cir. Dec. 20, 2020) (quoting *U.S. ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 287 (D.C. Cir. 2015)). This is precisely the sort of dispute for which the objective reasonableness test was made. *See Schutte*, 9 F.4th at 463 (granting summary judgment for defendant where defendant's obligations under Medicaid regulations were "unclear" "[b]ased on the available caselaw," defendant adopted reasonable interpretation of its obligations, and no authoritative guidance warned them away from that position).

As noted, there are many grounds to rule for Defendants on summary judgment besides scienter. But at a minimum, an objective reasonableness test would guarantee judgment in their favor. Plaintiffs have effectively conceded there is "no law" establishing an obligation to repay Medicaid payments received by Affiliate Defendants during the pendency of the injunctions. Defendants' summary judgment briefing demonstrates that Affiliate Defendants in fact had no obligation to repay, and that Affiliate Defendants' understanding to that effect was at the very least

reasonable. *See* Dkt. 382 at 22-36. Defendants will not rehash those arguments here, except they will address Plaintiffs' misconstruction of the objective reasonableness standard in their supplemental brief.

Plaintiffs argue that, even if the Supreme Court determined the the *Schutte/Proctor* standard applies, the Fifth Circuit's 2020 *en banc* decision vacating the Texas injunction constitutes authoritative guidance that should have warned Defendants away from their position. Dkt. 411 at 7. But "for guidance to be authoritative," it must be "binding precedent from the courts of appeals or appropriate guidance from the relevant agency," and "specific enough to put a defendant on notice that its conduct is unlawful." *Proctor*, 30 F.4th at 660-61. The Fifth Circuit's holding related to justiciability and standing, not the underlying merits of the terminations – much less to whether there was any obligation to repay funds they were reimbursed for the Medicaid services the injunctions entitled them to provide. There were no "warnings" whatsoever about repayment. *See Planned Parenthood of Greater Tex. Fam. Plan. & Preventative Health Servs., Inc. v. Kauffman*, 981 F.3d 347, 368 (5th Cir. 2020) (en banc).[8] Nor was there authoritative guidance from either Texas or Louisiana about repayment. Indeed there was no guidance at all—no notice of an overpayment to Defendants, no administrative efforts at recoupment, and no indication in years of litigation over the injunctions that if they were lifted, Affiliate Defendants would have to repay the funds they had been paid for medical care provided while the injunctions were in place. Indeed, all signs pointed to the States' belief that there was no repayment obligation, including Texas's assertion it would be irreparably harmed by the injunction if required to

---

[8] That several judges offered their views about the terminations' merits in concurrence is not "authoritative guidance" as it is not "binding precedent." *See Proctor*, 30 F.4th at 660. And even the concurrence did not address repayment.

reimburse Affiliate Defendants for ongoing Medicaid services while the injunction was in place and its later decision to grant a "grace period," among other things. *See* Dkt. 382 at 31-36. As for Louisiana, it actually withdrew the termination before it ever went into effect, and PPGC remains a Medicaid provider. *Id.* at 36.

The same scienter analysis applies to Plaintiffs' state law claims. Courts generally interpret state false claims statutes—including the TMFPA and LMAPIL—consistently with the FCA because the "claims depend on the same operative facts and legal requirements." *U.S. ex rel. Williams v. McKesson Corp.*, No. 3:12-CV-0371-B, 2014 WL 3353247, at *4 (N.D. Tex. July 9, 2014); *see also United States v. Dental Health Programs, Inc.*, No. 3:18-CV-00463-E, 2020 WL 3064712, at *7 (N.D. Tex. June 8, 2020) ("[T]he Fifth Circuit and several federal district courts have considered TMFPA claims analogous to claims brought under the FCA.") (collecting cases). That is particularly true with respect to the scienter standard because the state statutes use the very same term imported from the FCA, "knowingly," which in turn comes from common law understanding of *mens rea*. *See Schutte*, 9 F.4th at 459 ("no statutory indication that Congress meant its usage of 'knowingly,' or the scienter definitions it encompasses, to bear a different meaning that its common law definition"); *see also Safeco*, 551 U.S. at 57-58 (adopting objective reasonableness standard based on common law definitions of "knowingly"). Certainly, in the absence of contrary authority from the state courts, a United States Supreme Court decision construing the identical statutory term would be highly persuasive authority.[9] The Supreme Court's decision therefore directly bears on Plaintiffs' state law claims as well.

---

[9] *In re Xerox Corp.*, 555 S.W.3d 518 (Tex. 2018), did not hold to the contrary. It simply observed that the TMFPA may be interpreted differently from the FCA where the statutes "employ materially different language." *See id.* at 535 (determining that there is no fault allocation under the TMFPA where fault allocation would be incompatible with the plain text of the statute). But, as noted, the TMFPA and LMAPIL use the same definition of "knowingly" as the federal FCA.

Further, even if for some reason the Court were to interpret the TMFPA's and LMAPIL's scienter standards differently than the federal standard, staying the entire action is nonetheless appropriate because "judicial efficiency is best promoted by avoiding piecemeal litigation." *Hungerford v. Smith & Nephew, Inc*, No. 2:15 CV 2754, 2016 WL 4499461, at *2 (W.D. La. Aug. 23, 2016). That is particularly true since the state and federal claims turn on the same facts and trials on the state and federal claims would involve the same witnesses and evidence.

## CONCLUSION

For these reasons, Defendants respectfully respect that this Court stay litigation pending the Supreme Court's decision in *U.S. ex rel. Schutte v. Supervalu Inc.* and *U.S. ex rel. Proctor v. Safeway, Inc*.

Dated: February 1, 2023

Respectfully Submitted,

ARNOLD & PORTER KAYE
SCHOLER LLP

/s/ _Tirzah S. Lollar_____
Craig D. Margolis
Craig.Margolis@arnoldporter.com
Tirzah S. Lollar
Tirzah.Lollar@arnoldporter.com
Christian Sheehan
Christian.Sheehan@arnoldporter.com
Emily Reeder-Ricchetti
Emily.Reeder-Ricchetti@arnoldporter.com
Megan Pieper
Megan.Pieper@arnoldporter.com
Alyssa Gerstner
Alyssa.Gerstner@arnoldporter.com
Meghan C. Martin
Meghan.Martin@arnoldporter.com

---

*See* La. Rev. Stat. § 46:438.3; Tex. Hum. Res. Code. §§ 36.001, 36.002(12). Therefore, courts consider the requirements to be "analogous" and interpret them consistently. *See Dental Health*, 2020 WL 3064712, at *7.

601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.5000
Fax: +1 202.942.5999

Christopher M. Odell
Texas State Bar No. 24037205
Christopher.Odell@arnoldporter.com
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: +1 713.576.2400
Fax: +1 713.576.2499

Paula Ramer
250 West 55th Street
New York, New York 10019-9710
T: +1 212.836.8474
Paula.Ramer@arnoldporter.com


RYAN BROWN ATTORNEY AT LAW
RYAN PATRICK BROWN
Texas Bar No. 24073967
ryan@ryanbrownattorneyatlaw.com
1222 S. Fillmore St.
Amarillo, Texas 79101
T: (806) 372-5711
F: (806) 350-7716

*Attorneys for Defendants Planned Parenthood
Gulf Coast, Inc., Planned Parenthood of Greater
Texas, Inc., Planned Parenthood of South Texas,
Inc., Planned Parenthood Cameron County, Inc.,
and Planned Parenthood San Antonio, Inc.*

O'MELVENY & MYERS LLP

/s/ *Danny S. Ashby*
DANNY S. ASHBY
Texas Bar No. 01370960
dashby@omm.com
MEGAN R. WHISLER
Texas Bar No. 24079565
mwhisler@omm.com
2501 N. Harwood Street, Suite 1700
Dallas, Texas 75201

12

T: (972) 360-1900
F: (972) 360-1901

LEAH GODESKY (pro hac vice)
lgodesky@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
T: (310) 553-6700
F: (310) 246-6779

RYAN BROWN ATTORNEY AT LAW
RYAN PATRICK BROWN
Texas Bar No. 24073967
ryan@ryanbrownattorneyatlaw.com
1222 S. Fillmore St.
Amarillo, Texas 79101
T: (806) 372-5711
F: (806) 350-7716

*Attorneys for Defendant Planned Parenthood
Federal of America, Inc.*

13

## CERTIFICATE OF CONFERENCE

Prior to filing this motion, counsel for Defendants contacted counsel for Plaintiffs, who stated that they oppose the motion.

/s/ Tirzah S. Lollar
Tirzah S. Lollar

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2023, the foregoing document was electronically filed with the Clerk of Court using CM/ECF.

/s/ Tirzah S. Lollar
Tirzah S. Lollar