## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| THE STATE OF TEXAS, | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| THE STATE OF LOUISIANA, | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 2:21-CV-00022-Z |
| | § | |
| PLANNED PARENTHOOD | § | |
| FEDERATION OF AMERICA, INC., | § | |
| PLANNED PARENTHOOD GULF | § | |
| COAST, INC., PLANNED | § | |
| PARENTHOOD OF GREATER | § | |
| TEXAS, INC., PLANNED | § | |
| PARENTHOOD SOUTH | § | |
| TEXAS, INC., PLANNED | § | |
| PARENTHOOD CAMERON | § | |
| COUNTY, INC., PLANNED | § | |
| PARENTHOOD SAN ANTONIO, | § | |
| INC., | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................ 1

LEGAL STANDARD ..................................................................................................... 3

ARGUMENT ................................................................................................................... 4

I.    Defendants Have Not Met Their Burden to Establish That the Balance of Equities Favors Staying This Case. .................................................................... 4

II.   A Stay Is Unnecessary Because Defendants Are Liable Under the FCA Regardless of the Outcome in *Supervalu* and *Safeway*. ...................................... 7

      A.    Defendants did not act under an objectively reasonable interpretation of legal requirements when they failed to return Medicaid funds and continue to bill for Medicaid funds to which they were not entitled. .................................................................... 8

      B.    Defendants' actions contradicted authoritative guidance. ...................... 11

III.  Because the Supreme Court Decisions in *Supervalu* and *Safeway* Will Not Apply to TMFPA And LMAPIL Claims, a Stay Is Not Needed to Decide Plaintiffs' Claims Under Those Statutes. ................................................. 13

CONCLUSION ............................................................................................................. 15

CERTIFICATE OF SERVICE ..................................................................................... 15

i

# TABLE OF AUTHORITIES

**Cases**

*Arkadelphia Milling Co v. St. Louis S.W. Ry. Co.*,
  249 U.S. 134 (1919) ................................................................. 10

*Astec America, Inc. v. Power-One, Inc.*,
  2008 WL 11441994 (E.D. Tex. July 15, 2008) ..................................... 3, 6

*Barber v. Bryant*,
  833 F.3d 510 (5th Cir. 2016) ....................................................... 3

*Barfield v. Madison Cnty., Miss.*,
  212 F.3d 269 (5th Cir. 2000) ...................................................... 14

*Caldwell v. Janssen Pharm., Inc.*,
  144 So. 3d 898 (La. 2014) ......................................................... 14

*Children's Hosp. Ass'n of Tex. v. Azar*,
  507 F. Supp. 3d 249 (D.D.C. 2020) ................................................. 9

*Edgar v. MITE Corp.*,
  457 U.S. 624 (1982) ............................................................... 10

*Greco v. Nat'l Football League*,
  116 F. Supp. 3d 744 (N.D. Tex. 2015) .............................................. 3

*In re Planned Parenthood Fed'n of Am., Inc.*,
  52 F.4th 625 (5th Cir. 2022) ....................................................... 5

*In re Xerox Corp.*,
  555 S.W.3d 518 (Tex. 2018) ....................................................... 14

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ............................................................ 1, 3, 4

*Malouf v. State ex rels. Ellis*,
  No. 08-20-00235-CV, 2022 WL 8079246 (Tex. App.—El Paso Oct. 14, 2022,
  pet. filed) ....................................................................... 15

*Officeware Corp. v. Dropbox, Inc.*,
  2012 WL 3262760 (N.D. Tex. Aug, 10, 2012) ..................................... 3, 6

*Planned Parenthood of Greater Tex. Family Planning & Preventative Health Servs., Inc. v. Kauffman,*
981 F.3d 347 (5th Cir. 2020). ................................................................. 12

*Planned Parenthood of Greater Tex. Family Planning & Preventative Health Servs., Inc. v. Smith,*
236 F. Supp. 3d 974 (W.D. Tex. 2017). .............................................. 8, 9

*Planned Parenthood Gulf Coast, Inc. v. Gee,*
862 F.3d 445 (5th Cir. 2017). .............................................................. 12

*Planned Parenthood Gulf Coast, Inc. v. Kliebert,*
141 F. Supp. 3d 604 (M.D. La. 2015). .............................................. 8, 9

*Ruppert v. Ruppert,*
134 F.2d 497 (D.C. Cir. 1942) ................................................................ 9

*Safeco Ins. Co. v. Burr,*
551 U.S. 47 (2007) ......................................................................... 1, 14

*Sw. Airlines Co. v. Transport Workers Union of Am. AFL-CIO Local 555,*
2018 WL 2317710 (N.D. Tex. May 22, 2018) ........................................ 6

*U.S. ex rel. Proctor v. Safeway, Inc.,*
No. 22-111 (U.S. Jan. 13, 2023) ................................................. *passim*

*U.S. ex rel. Schutte v. SuperValu, Inc.,*
9 F.4th 455 (7th Cir. 2021) ......................................................... 1, 8, 11

*U.S. ex rel. Schutte v. SuperValu Inc.,*
No. 21-1326 (U.S. Jan. 13, 2023), ............................................. *passim*

**Statutes**

31 U.S.C.

§ 3729 .................................................................................................. 6

§ 3729(b)(1) ........................................................................................ 1

Tex. Hum. Res. Code

§ 36.0011 ........................................................................................... 13

§ 36.052 .......................................................................................................... 13

**<u>Other Authorities</u>**

Br. of the United States as Amicus Curiae, *U.S. ex rel. Schutte v. SuperValu Inc.*,
No. 21-1326 (U.S. Dec. 6, 2022) ................................................................... 2

Medicare Program; Reporting and Returning of Overpayments,
81 Fed. Reg. 7654-01 (Feb. 12, 2016) .......................................................... 13

Question Presented, *U.S. ex rel. Schutte v. SuperValu Inc.*, No. 21-1326,
https://www.supremecourt.gov/docket/docketfiles/html/qp/21-01326qp.pdf ............ 2

U.S. Supreme Court Docket, *U.S. ex rel. Proctor v. Safeway, Inc*, No. 22-111,
https://www.supremecourt.gov/docket/docketfiles/html/public/22-111.html ........... 5

U.S. Supreme Court Docket, *U.S. ex rel. Schutte v. SuperValu Inc.*, No. 21-1326,
https://www.supremecourt.gov/docket/docketfiles/html/public/21-1326.html ......... 5

## INTRODUCTION

After Plaintiffs filed nearly a 100-page brief and motions for summary judgment and demonstrating Defendants' liability, Dkt. 388, 389, 391, Defendants filed the instant motion, which is at least their *fifth* attempt to delay this case, *see* Dkt. 57, 107, 144, 243, 422. But Defendants have not met their burden to show that they will suffer "hardship or inequity in being required to go forward," and their latest attempt to delay the case, now on the eve of summary judgment, should be denied. *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).

Defendants claim a stay is warranted this time because the Supreme Court granted certiorari in consolidated cases *U.S. ex rel. Schutte v. SuperValu Inc.*, No. 21-1326 (U.S. Jan. 13, 2023), and *U.S. ex rel. Proctor v. Safeway, Inc.*, No. 22-111 (U.S. Jan. 13, 2023). In *SuperValu*, the Seventh Circuit held that a defendant can avoid liability under the False Claims Act (FCA)'s scienter requirement of committing violations "knowingly" if "(a) it has an *objectively* reasonable reading of the statute or regulation and (b) there was no authoritative guidance indicating that their practices are likely wrong." 9 F.4th 455, 468 (7th Cir. 2021) (emphasis in original). In doing so, it relied on the Supreme Court's decision in *Safeco Ins. Co. v. Burr*, 551 U.S. 47 (2007), which interpreted the term "willfully" (a different scienter requirement) in the Fair Credit Reporting Act (a different statute), even though the FCA itself defines "knowingly." 31 U.S.C. § 3729(b)(1). The court stated that subjective intent is irrelevant to this requirement, departing from both the text and legislative history of the FCA. *See SuperValu*, 9 F.4th at 468.

1

Over two weeks before the dispositive motion deadline in this case, the Supreme Court granted the petitions for certiorari in *SuperValu* and companion case *Safeway* for review. The question presented there is: "Whether and when a defendant's contemporaneous subjective understanding or beliefs about the lawfulness of its conduct are relevant to whether it 'knowingly' violated the False Claims Act."[1] Defendants' motion requests a stay pending resolution of these cases.

But a stay is not justified because the Supreme Court's decision in *SuperValu* and *Safeway* will not change the outcome in this case. Defendants are liable under the FCA regardless of whether the Supreme Court affirms the Seventh Circuit's definition of the FCA's scienter requirement in *SuperValu* and *Safeway*.[2] And the Court's decision will not even apply to Plaintiffs' state-law claims under the Texas Medicaid Fraud Prevention Act (TMFPA) and the Louisiana Medical Assistance Programs Integrity Law (LMAPIL), making a stay demonstrably unnecessary for this Court to decide those claims. A stay will only unnecessarily prolong this case, resulting in prejudice to Plaintiffs. Continuing this case on its current schedule will also promote judicial economy and serve the public interest. "Only in rare

---

[1] Question Presented, *U.S. ex rel. Schutte v. SuperValu Inc.*, No. 21-1326, https://www.supremecourt.gov/docket/docketfiles/html/qp/21-01326qp.pdf (last accessed Feb. 10, 2023).

[2] And in any event, as noted in Plaintiffs' Supplemental Brief (Dkt. 411), it is unlikely that the Supreme Court granted the petitions to affirm. The Court granted the petitions after requesting the views of the United States, and the Solicitor General submitted a brief arguing that the petition should be granted because the Seventh Circuit's decision is "contrary to the FCA's text, history, and common-law antecedents." Br. of the United States as Amicus Curiae 8, *SuperValu*, No. 21-1326 (U.S. Dec. 6, 2022).

2

circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255. A stay should not issue "if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id*. This Court should deny Defendants' motion to stay.

## LEGAL STANDARD

"A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right[.]" *Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016) (citing *Nken v. Holder*, 556 U.S. 418, 427 (2009)). "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Astec America, Inc. v. Power-One, Inc*., 2008 WL 11441994, at *2 (E.D. Tex. July 15, 2008) (citing *Landis*, 299 U.S. at 254). "Optimal management of the Court's docket calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id*. (cleaned up).

"A district court has wide discretion to stay a pending matter in order to control its docket and benefit the interests of justice." *Officeware Corp. v. Dropbox, Inc*., 2012 WL 3262760, at *2 (N.D. Tex. Aug, 10, 2012) (citing *In re Ramu Corp*., 903 F.2d 312, 318 (5th Cir.1990)). "A court is within its discretion" when it decides whether "to grant a stay when a related case with substantially similar issues is pending before a court of appeals." *Greco v. Nat'l Football League*, 116 F. Supp. 3d 744, 761 (N.D. Tex. July 21, 2015) (internal citations omitted). "However, in determining whether a

stay is proper, courts consider the interests of the parties and potential conservation of judicial resources." *Id.* (citing *Landis*, 299 U.S. at 254–55).

## ARGUMENT

### I. Defendants Have Not Met Their Burden to Establish That the Balance of Equities Favors Staying This Case.

The Defendants have not met their burden to establish that they will suffer hardship or inequity absent a stay. *See Landis*, 299 U.S. at 255. Rather, the balance of equities favors this case proceeding as currently scheduled.

Judicial economy favors expeditious disposition of the case. As explained in Section II, this Court can decide this case regardless of the outcome in *SuperValu* and *Safeway*.[3] And the Supreme Court's decision in the consolidated cases will have no impact on Plaintiffs' state-law claims. *See* Section III. The Court can decide the parties' motions for summary judgment on the record currently before it. Judicial economy thus favors deciding this case on the current schedule.

Plaintiffs will suffer prejudice if this case is stayed. The parties have proceeded on an expedited schedule at considerable time and expense on the assumption that summary judgment briefing would be completed in early 2023 and that trial would commence in April 2023. The petition for certiorari in *SuperValu* was filed on April

---

[3] Plaintiffs also address this issue extensively in Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, Section B.1, Dkt. #415 (filed Jan. 27, 2023), and Plaintiffs' Supplemental Brief, Dkt. #411 (filed Jan. 24, 2023).

4

1, 2022[4] and the petition in *Safeway* was filed on August 3, 2022.[5] Defendants therefore had the opportunity to request a stay pending the outcome of the petitions for certiorari *before* the parties engaged in substantial discovery and *before* the parties filed summary judgment briefing. But Defendants only now seek a stay, after the Plaintiffs have expended significant time, effort, and resources on discovery and to prepare summary judgment briefing, and waited until after briefing was underway to ask the Court once again to put on the brakes. That request says more about the strength of Plaintiffs' claims than it does about any relevance of *SuperValu* and *Safeway* to the outcome of this case. In any event, Plaintiffs should not suffer because Defendants seek a stay at this late date when they had the opportunity to do so as early as April 2022, which was well before the bulk of discovery (including the exchanges of hundreds of thousands of documents, numerous depositions, and several discovery disputes) occurred and ten months before summary judgment briefing was completed. *Cf. In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 631 (5th Cir. 2022) ("The district court was within its discretion to conclude that [Planned Parenthood's] failure to seek relief until late in the litigation weighed against transfer . . . This conclusion is only strengthened by the fact that Petitioners waited to seek

---

[4] U.S. Supreme Court Docket, *U.S. ex rel. Schutte v. SuperValu Inc.*, No. 21-1326, https://www.supremecourt.gov/docket/docketfiles/html/public/21-1326.html (last accessed Feb. 10, 2023).
[5] U.S. Supreme Court Docket, *U.S. ex rel. Proctor v. Safeway, Inc*, No. 22-111, https://www.supremecourt.gov/docket/docketfiles/html/public/22-111.html (last accessed Feb. 10, 2023).

transfer until after the district court denied their motion to dismiss and motion for reconsideration.").

This Court need not consider the public interest in deciding whether to deny a stay. In support of their motion, Defendants rely several on cases about motions to stay pending appeal in that case (or in a related case), but those cases do not concern motions to stay pending a decision in a separate, unrelated case. *See* Dkt. 422 at 5 (*citing Bluetooth SIG, Inc. v. FCA US LLC*, 2022 WL 789480, at *2 (W.D. Wash. Feb. 24, 2022); *Sw. Airlines Co. v. Transp. Workers Union of Am. AFL-CIO Loc. 555*, 2018 WL 2317710, at *3 (N.D. Tex. May 22, 2018); and *Astec Am., Inc.*, 2008 WL 11441994, at *3)). In motions to stay pending appeal, the Court must consider four factors, among those the public interest.[6] But consideration of public interest is not required on motions to stay pending the outcome of a separate, unrelated case. Rather, this Court has wide discretion in determining whether to deny a stay. *See Officeware*, 2012 WL 3262760, at *2.

In any event, the public interest is served by allowing this case to commence as scheduled. "The public interest is best served by *expedient* litigation that does not unnecessarily exhaust resources." *Sw. Airlines*, 2018 WL 2317710, at *3 (internal citations omitted) (emphasis added). This case involves claims that Defendants—tax-

---

[6] In deciding motions to stay pending an appeal being undertaken *in the case in which the motion is filed*, the Court must consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)

exempt nonprofit organizations—improperly retained taxpayer funding under the Medicaid program, in violation of the FCA, TMFPA, and LMAPIL. The public thus has a strong interest in the expeditious outcome of this litigation, which will result in the recovery of significant federal and state funds improperly received and retained, and will prevent further fraud from occurring. *See Bradley on behalf of AJW v. Ackal*, 954 F.3d 216, 233 (5th Cir. 2020) (matters involving "misspent government funds" are "of particularly public interest"); *Weingarten Realty Inv'rs v. Miller*, 661 F.3d 904, 913 (5th Cir. 2011) (finding that "public interest in speedy resolution of disputes prevails"). And because the decision in *SuperValu* and *Safeway* is unlikely to alter the outcome, there is no reason that the Court cannot proceed expeditiously, as currently scheduled.

Defendants have not met their burden to prove that the balance of equities favors staying this matter. Plaintiffs therefore request that this Court deny Defendants' motion.

## II.   A Stay Is Unnecessary Because Defendants Are Liable Under the FCA Regardless of the Outcome in *Supervalu* and *Safeway*.

Under the FCA, the term "knowingly" includes (1) actual knowledge of the information; (2) deliberate ignorance of the truth or falsity of the information; or (3) reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b)(1)(A). The FCA expressly states that "the terms 'knowing' and 'knowingly' require no proof of specific intent to defraud." 31 U.S.C. § 3729(b)(1)(B). *SuperValu* held that a defendant can avoid liability under the FCA if "(a) it has an *objectively* reasonable

7

reading of the statute or regulation and (b) there was no authoritative guidance indicating that their practices are likely wrong." 9 F.4th at 468 (emphasis in original).

As discussed extensively in Plaintiffs' summary judgment briefing, Defendants are liable for "knowingly and improperly" avoiding their obligation to repay Medicaid funds, in violation of the FCA. *See* Dkt. 391 at Section I.B; Dkt. 415 at Section I.B. And as explained in Plaintiffs' Opposition and Supplemental briefs, Dkt. 411, 415, that is true even if the Supreme Court affirms *SuperValu* and *Safeway* because Defendants did not rely on any objectively reasonable interpretation of the law and authoritative guidance cautioned them against their conduct.

### A. Defendants did not act under an objectively reasonable interpretation of legal requirements when they failed to return Medicaid funds and continue to bill for Medicaid funds to which they were not entitled.

Defendants could not have acted under an "objectively reasonable" interpretation of legal requirements. In fact, Defendants can point to *no law* that supports their argument that their terminations from Texas and Louisiana Medicaid were not final during the preliminary injunctions in *Planned Parenthood Gulf Coast, Inc. v. Kliebert,* 141 F. Supp. 3d 604 (M.D. La. 2015) and *Planned Parenthood of Greater Tex. Fam. Planning & Preventative Health Services, Inc. v. Smith*, 236 F. Supp. 3d 974 (W.D. Tex. 2017). These injunctions required Texas and Louisiana to continue reimbursing Medicaid claims, though the terminations became final while the injunctions were in effect. Defendants also cannot show that they were immunized from any wrongdoing related to the receipt and retention of the Medicaid funds during the preliminary injunctions. Planned Parenthood's actions meet the

scienter requirement—even under the narrow definition in *SuperValu* and *Safeway*—under the FCA for reverse-false-claim liability.

Defendants knew that their termination from Medicaid was final throughout the preliminary injunctions in *Kliebert* and *Smith*. Planned Parenthood's termination from Louisiana Medicaid was effective on October 19, 2015 and the termination from Texas Medicaid was effective no later than February 1, 2017. *See* Dkt. 391 at 16, 18. The letters of termination that the Planned Parenthood affiliates received make clear that termination is final 30 days after receipt of the notice if no administrative appeal is requested and Affiliate Defendants do not dispute that they did not exercise their right to an administrative appeal. *Id.* As the Travis County District Court noted when it rejected Planned Parenthood's attempt to revive its long-expired administrative remedies and argue that its termination was not effective, Planned Parenthood pointed to *no authority* supporting that position. *See* Ps' MSJ Appx. 1091–92.

Moreover, even if the Affiliate Defendants were entitled to receive the funds at the times they received them, that does not mean there is any legal basis for *retaining the money* even after the sole basis for that purported qualification—the district court preliminary injunctions—are wiped away. Vacatur of a preliminary injunction means that the law looks at the injunction as though it never existed. *See* Dkt. 391 at Section I.C; *see also e.g., Ruppert v. Ruppert*, 134 F.2d 497, 500 (D.C. Cir. 1942); *Children's Hosp. Ass'n of Tex. v. Azar*, 507 F. Supp. 3d 249, 255 (D.D.C. 2020). Similarly, the fact that someone can later be held liable for action taken under a preliminary injunction is also well-established, meaning Defendants cannot point to those preliminary

9

injunctions as a way to avoid liability for continued improper billing. *See Edgar v. MITE Corp.*, 457 U.S. 624, 649–51 (1982) (Stevens, J., concurring).

Further, Defendants have no valid legal basis to believe that the States would be unable to seek to recover the sums paid under a wrongfully entered injunction because the courts—including this Court, *see* Dkt. 71 at 8—have recognized the longstanding principle that "a party against whom an erroneous judgment or decree has been carried into effect is entitled, in the event of a reversal, to be restored by his adversary to that which he has lost thereby." *Arkadelphia Milling Co v. St. Louis S.W. Ry. Co.*, 249 U.S. 134, 145 (1919). Put simply, Defendants can point to *no* law—let alone an "objectively reasonable" legal position—that would overcome the evidence showing that they knew or should have known that they owed the Medicaid funds received under the injunction back, or that they billed throughout the injunction and certified compliance with Medicaid law and regulations at their own risk.

What's more, even if there were some legal argument or basis that could justify Planned Parenthood's actions, it was not *reasonable* for them to rely on it because the indisputable evidence shows that Defendants *knew* that their federal-court gambit would not be suspensive and could not erase or delay the effectiveness of their termination, *yet chose to do that rather than engage in a suspensive administrative process*. In an email dated September 14, 2015, PPFA employee Carrie Flaxman directly asked this question to the Louisiana Department of Health (LDH): "Secretary Kliebert's letters to Ms. Linton state that the termination action will take effect after

10

the termination of all 'administrative and/or legal proceedings.' Does this 'stay' apply if PPFC elects to continue in federal court?" Ps.' MSJ Appx. 6311. LDH counsel responds that "the suspensive nature only applies if you proceed through administrative process . . . . [M]y client does not believe you have an 'election' to continue in federal court. The administrative avenue is the agreed upon process to protect your clients rights." Ps.' MSJ Appx. 6310–11. Ms. Flaxman also asks for confirmation that the termination dates for PPGC are October 17 and 18, 2015. Ps.' MSJ Appx. 6311. LDH responds: "You are correct if Planned Parenthood does not exercise their right to an informal hearing or an administrative appeal." Ps.' MSJ Appx. 6311.

### B. Defendants' actions contradicted authoritative guidance.

Authoritative guidance also warned Defendants that their conduct violated the FCA. *SuperValu* held that even if a defendant could point to a permissible interpretation of law that supports their position, that is no defense if "there existed authoritative guidance that should have warned defendants away from their erroneous interpretation." 9 F.4th at 471. Such guidance "must come from a governmental source—either circuit court precedent or guidance from the relevant agency." *Id.*

Based on guidance from Texas HHSC-OIG, Affiliate Defendants knew that an administrative appeal in Texas would suspend the Medicaid termination, but they abandoned the administrative process in favor of litigating in federal court. Ps.' MSJ Appx. 6305. The Texas termination letter from HHSC-OIG had similar language

11

about the effectiveness of the termination if no appeal was requested. Ps.' MSJ Appx. 814 (Goldstein Decl., ¶ 8c); 867–72. In December 2020, the Affiliates belatedly tried to pursue an administrative appeal of their termination, but OIG denied it and informed the Affiliates on January 4, 2021 that their deadline had expired. Ps.' MSJ Appx. 6300. If that were not enough, HHSC's January 4, 2021 letter in response to Planned Parenthood's request to remain *in* the Medicaid program, Ps.' MSJ Appx. 807, communicated that the 2017 terminations were now in effect, *see* Ps.' MSJ Appx. 810–11. And as the Travis County District Court pointed out, Planned Parenthood could point to *no authority* showing otherwise. Ps.' MSJ Appx. 1091–92.

The Fifth Circuit's decision vacating the preliminary injunction as to Texas Medicaid and overruling *Planned Parenthood Gulf Coast, Inc. v. Gee,* 862 F.3d 445 (5th Cir. 2017), is certainly "authoritative guidance" that the only (temporary) basis for Planned Parenthood to continue receiving and retaining Medicaid funds from Texas and Louisiana was gone. *See Planned Parenthood of Greater Tex. Family Planning & Preventative Health Servs., Inc. v. Kauffman*, 981 F.3d 347 (5th Cir. 2020). And the retroactivity of legal judgments and the legal effect of a vacated injunction—a "'legal nullity'"—is well established. *Azar*, 507 F. Supp. 3d at 255 (internal citations omitted).

Further, "authoritative guidance" from U.S. Center for Medicare and Medicaid Services establishes that it is unreasonable for Defendants to believe that an obligation to repay the money would only arise after Texas or Louisiana sent a notice of overpayment or filed a recoupment action, as they now argue. Medicare Program;

12

Reporting and Returning of Overpayments, 81 Fed. Reg. 7654-01, 7664 (Feb. 12, 2016) ("section 1128J(d) of the [ACA] requires a person to report and return overpayments they have received. Thus, providers and suppliers have a clear duty to undertake proactive activities to determine if they have received an overpayment or risk potential liability for retaining such overpayment." (emphasis added)); 7668 ("Providers and suppliers cannot rely on . . . the OIG to point out their overpayments for them—providers and suppliers are obligated to identify the overpayments they have received.").

Nor is there any authoritative guidance from either HHS, HHSC, or LDH that *supports* Defendants' position. Quite simply, there is no legal support for Planned Parenthood's position that it was entitled to keep the money it received under the injunction or keep billing without facing potential consequences down the line if the preliminary injunctions were vacated. Defendants thus cannot avoid FCA liability under *Safeway* and *SuperValu*, even if they applied here.

Because Defendants are liable under the FCA under the Seventh's Circuit's narrow scienter definition, Defendants would still be liable if the Supreme Court adopts a broader view of the scienter requirement and reversed the decisions in *SuperValu* and *Safeway.* Staying this litigation thus has no benefit.

III. **Because the Supreme Court Decisions in *Supervalu* and *Safeway* Will Not Apply to TMFPA And LMAPIL Claims, a Stay Is Not Needed to Decide Plaintiffs' Claims Under Those Statutes.**

There is no basis for applying the scienter requirement of *SuperValu* or *Safeway* to Relator and Texas's claims under the TMFPA, nor to Relator's claims under LMAPIL. This Court should therefore deny Defendants' motion to stay.

13

The state Supreme Court's interpretation of state statutes controls here. *See Barfield v. Madison Cnty., Miss.,* 212 F.3d 269, 271–72 (5th Cir. 2000). The Louisiana Supreme Court has applied the plain language of the Louisiana statutory definition of "knowingly" and has not held that evidence of subjective intent to defraud is irrelevant, nor has it applied *Safeco* or otherwise read in federal interpretations to this part of LMAPIL. *See Caldwell v. Janssen Pharm., Inc.*, 144 So. 3d 898, 909 (La. 2014). Nor should the Court apply scienter requirements of the FCA to its analysis of the TMPFA. The starting point for statutory analysis of the TMFPA should be its plain language:

> Though the parties make comparisons to analogous federal and state fraud-prevention acts as it suits their arguments—including the federal False Claims Act … these comparisons are not probative. These statutes, while similar in aim and tactic, employ materially different language, and the language of our statutes controls the outcome here.

*In re Xerox Corp.*, 555 S.W.3d 518, 535 (Tex. 2018). Further, if a statute is clear and unambiguous, a court must apply its words according to their common meaning without resort to rules of construction or extrinsic aids. *Fitzgerald v. Advanced Spine Fixation Sys.*, 996 S.W.2d 864, 865 (Tex. 1998).

While the TMFPA incorporates by reference some of the civil penalty provisions of the FCA, it does not incorporate the FCA in its scienter requirements. *Compare* Tex. Hum. Res. Code § 36.052, *with id*. § 36.0011. That the Texas Legislature chose to incorporate the FCA in some provisions but not others demonstrates that it did not intend that the scienter requirements of the FCA apply to the TMFPA. *See In re Xerox*, 555 S.W.3d at 527 ("We thus presume the Legislature

14

selected statutory words, phrases, and expressions deliberately and purposefully and was just as careful in selecting the words, phrases, and expressions that were included or omitted."). Following the plain language approach articulated by the Texas Supreme Court, the Texas Eighth Court of Appeals recently held:

> Because the TMFPA does not define "conscious indifference" or "reckless disregard," we give each term its ordinary meaning. *City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 n.19 (Tex. 2006) (citing TEX. GOV'T CODE ANN. § 312.002). *The Texas Supreme Court has said these terms "require proof that a party knew the relevant facts but did not care about the result." Id.* (citing cases).

*Malouf v. State ex rels. Ellis*, No. 08-20-00235-CV, 2022 WL 8079246, at *6 (Tex. App.—El Paso Oct. 14, 2022, pet. filed) (emphasis added). Thus, it is the Texas Supreme Court's plain language definition of "reckless disregard" that controls under the TMFPA and not the FCA scienter standard. Accordingly, *Safeway* and *SuperValu* are irrelevant to Plaintiffs' claims under the TMFPA or LMAPIL.

## CONCLUSION

Plaintiffs accordingly request that this Court deny Defendants' motion to stay.

Respectfully submitted.

/s/Heather Gebelin Hacker
Heather Gebelin Hacker
Texas Bar No. 24103325
Andrew B. Stephens
Texas Bar No. 24079396
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
(512) 399-3022
heather@hackerstephens.com
andrew@hackerstephens.com

***Attorneys For Relator***

15

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN E. COWLES
Deputy Attorney General for Civil Litigation

/s/ Amy Snow Hilton
Christopher D. Hilton
Chief, General Litigation Division
Texas Bar No. 24087727
Amy Snow Hilton
Assistant Attorney General
General Litigation Division
Texas Bar No. 24097834

Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 / Fax (512) 320-0667
Christopher.Hilton@oag.texas.gov
Amy.Hilton@oag.texas.gov

***Attorneys for State of Texas***

16

**CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2023, this document was electronically filed and served via the Court's CM/ECF system.

/s/Heather Gebelin Hacker

17