IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| United States of America § <br> *ex rel.* ALEX DOE, Relator, § <br> § <br> The State of Texas § <br> *ex rel.* ALEX DOE, Relator, § <br> § <br> The State of Louisiana § <br> *ex rel.* ALEX DOE, Relator, § <br> § <br>    *Plaintiffs*, § <br> v. § <br> Planned Parenthood Federation of America, § <br> Inc., Planned Parenthood Gulf Coast, Inc., § <br> Planned Parenthood of Greater Texas, Inc., § <br> Planned Parenthood South Texas, Inc., Planned § <br> Parenthood Cameron County, Inc., Planned § <br> Parenthood San Antonio, Inc., § <br>    *Defendants*. § | CIVIL ACTION NO. 2:21-CV-00022-Z <br><br><br> Date:    February 16, 2023 |

**DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO STAY**

Defendants Planned Parenthood Gulf Coast, Inc. ("PPGC"); Planned Parenthood of Greater Texas, Inc. ("PPGT"); Planned Parenthood South Texas, Inc. ("PPST"); Planned Parenthood Cameron County, Inc. ("PPCC"); Planned Parenthood San Antonio, Inc. ("PPSA"); and Planned Parenthood Federation of America ("PPFA") (collectively, "Defendants") respectfully submit this reply in support of Defendants' Motion to Stay [Dkt. 422].

## **INTRODUCTION**

Plaintiffs' Opposition [Dkt. 427] underscores that a modest stay should be granted. Plaintiffs contend that this Court should decide scienter without waiting for the Supreme Court's guidance because they would prevail even under the *Safeco* rule adopted in *Schutte* and *Proctor*. But Plaintiffs misunderstand that rule, and seemingly the question before the Supreme Court. Plaintiffs repeatedly assert that Defendants are liable under the *Safeco* rule because Defendants *actually knew* that they had a repayment obligation. But the relevance of actual knowledge is precisely the issue that the Supreme Court is set to address – specifically whether a defendant's subjective beliefs can even be considered where (as here) there is an objectively reasonable interpretation of its legal obligations.[1] Plaintiffs' suggestion that the Court rely on Defendants' supposed actual knowledge to adjudicate their claims is, to use their phrase, quite a "risky proposition." *See* Dkt. 415 at 13. Plaintiffs also argue that termination letters, a Fifth Circuit opinion about standing, email correspondence with a Louisiana lawyer, and high-level CMS

---

[1] To be clear, were the Supreme Court to hold that subjective knowledge can be considered in an FCA case under certain circumstances, Plaintiffs still could not establish scienter. Undisputed evidence shows that Affiliate Defendants did not subjectively believe that they submitted any "false" claims, especially given that the federal government contemporaneously took the position that the terminations were unlawful and the district court found the terminations to be unlawful. *See* Dkt. 382 at 32 n.23. While the Fifth Circuit vacated the Texas injunction on standing grounds, it did not disturb the district court's findings that the terminations were unlawful. *Id.* However, if *Safeco* applies, the Court need not even reach questions regarding subjective knowledge.

1

guidance noting overpayments must be returned could constitute "authoritative guidance" that should have warned Defendants' away from their position. But those issues too will be significantly affected by the Supreme Court's decision. If the Supreme Court adopts *Safeco*'s objective reasonableness standard, it almost certainly also will consider the second part of the test – what constitutes "authoritative guidance." The Court and the parties would greatly benefit from the Supreme Court's guidance on that issue.

As to the balance of equities, Plaintiffs do not dispute that Defendants would be harmed if they expend the significant time, money, and resources to litigate this case through summary judgment to trial, only to have to do it all over again if the Court relies on a legal standard that the Supreme Court decides is wrong. So too would the Court, its staff, and potentially an entire jury. By contrast, Plaintiffs have articulated no actual prejudice they would suffer from a brief stay. They complain that they had to litigate quickly according to a schedule that they themselves pressed for, and suggest that Defendants somehow delayed in seeking a stay because they could have asked for one when *Schutte* and *Proctor* certiorari petitions were *filed*. Of course, seeking a stay based on a certiorari petition (which has less than a two percent chance of being granted) would have been far too speculative. Without *any* cognizable harm to Plaintiffs – and with considerable risk that all parties and the Court will have to "re-do" summary judgment and trial – the balance of equities clearly supports a stay.

Finally, with respect to the TMFPA and LMAPIL claims, state courts often look to federal FCA jurisprudence when analyzing claims under state FCA analogues and thus the Supreme Court's decision may well guide the Court's consideration of the state law claims as well. More importantly, however, those claims cannot be considered in a vacuum and it would frustrate

judicial economy to adjudicate the TMFPA and LMAPIL claims separately given that the very same facts underly both the state and federal claims.

For these reasons, and those articulated in Defendants' Motion to Stay, Defendants respectfully request that the Court stay this case pending the Supreme Court's decision in *U.S. ex rel. Schutte v. SuperValu Inc.*, No. 21-1326 (U.S. Jan. 13, 2023), and *U.S. ex rel. Proctor v. Safeway, Inc.*, No. 22-111 (U.S. Jan. 13, 2023).[2]

**ARGUMENT**

I.  **Plaintiffs' Brief Underscores The Need to Wait for the Supreme Court's Ruling on Scienter**[3]

Plaintiffs argue that this Court need not wait for the Supreme Court's decision in *Schutte* and *Proctor* because even if the Supreme Court affirms those decisions, Plaintiffs still win. But the reason Plaintiffs give shows they are wrong. Plaintiffs assert that "Defendants could not have acted under an 'objectively reasonable' interpretation of legal requirements" in large part because "Defendants *knew* that their termination from Medicaid was final." Dkt. 427 at 8-9 (emphasis added). Plaintiffs further argue that "Defendants *knew* that their federal-court gambit would not be suspensive and could not erase or delay the effectiveness of their termination, yet chose to do that" anyway. *Id.* at 10 (second emphasis omitted).[4]

---

[2] The stay should not affect Texas's ongoing review of its privilege log. *See* Dkt. 422 at 2 n.4. Despite repeated attempts to follow up with Texas about its progress in reviewing its documents, producing redacted or non-privileged documents, and updating its log, Defendants have not received a single document or revised log since the Court's January 17 Order [Dkt. 408].

[3] Affiliate Defendants have already briefed at length the merits of scienter in this case, *see* Dkt. 382 at 31-37, Dkt. 417 at 25-32, so Defendants will not rehash those arguments here. As the Court is aware, Defendants contend that Affiliate Defendants did not possess the requisite scienter under any legal standard.

[4] Although it is beyond the scope of this motion, Plaintiffs' arguments about what the Defendants "knew" are both wrong and beside the point. Affiliate Defendants never even considered that the payments they received for healthcare services provided during the pendency of the injunctions

3

The Supreme Court in *Safeco*, however, held that such subjective knowledge is *legally irrelevant* if there is an objectively reasonable interpretation of the law under which the defendant's conduct is lawful. The Supreme Court explained: "Where, as here, the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator." *Safeco*, 551 U.S. at 70 n.20. "Congress could not have intended such a result for those who followed an interpretation that could reasonably have found support in the courts, *whatever their subjective intent may have been*." *Id.* (emphasis added). The question the Supreme Court will decide in a few months is whether that rule applies to the FCA – that is, whether it applies *to this case*. *See* Petition for Certiorari, *U.S. ex rel. Proctor v. Safeway, Inc.*, No. 22-111 (U.S. Aug. 3, 2022) (question presented is: "Whether and when a defendant's contemporaneous subjective understanding or beliefs about the lawfulness of its conduct are relevant to whether it 'knowingly' violated the False Claims Act."). If the Supreme Court applies *Safeco* to the FCA, the evidence proffered by Plaintiffs as an ostensible basis for deciding this case without the benefit of Supreme Court guidance would be clearly out of bounds.[5] If the Court relies on that evidence on summary judgment, or permits the jury to consider it at trial, only to have the Supreme Court say it is off limits, the parties and the Court would have wasted valuable time and resources that

---

were amounts to which they were not entitled, let alone that anyone might claim that they were obligated to repay those amounts, prior to this litigation. Dkt. 383, App. 452-53, 455, 485-86, 491-92.

[5] The possible outcomes, of course, are not binary. The Supreme Court could very well adopt a more nuanced view about when subjective intent matters. Until the Court speaks, no one knows what that guidance will be. In fact, as it did in *Universal Health Services, Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176 (2016), the Court may even expound on contours of other (i.e., non-scienter) elements of the FCA.

could have been conserved with a modest stay. Accordingly, Plaintiffs' principal argument against a stay shows exactly why a stay should be granted.

So too does Plaintiffs' argument regarding authoritative guidance. Plaintiffs argue that they win even under *Safeco* because there was authoritative guidance that should have warned Defendants away from their position – specifically, the termination letters, other correspondence with HHSC, the Fifth Circuit's 2020 decision, and CMS guidance. Dkt. 427 at 11-13. But what constitutes "authoritative guidance" was also a key issue in *Schutte* and *Proctor*. *See Proctor*, 30 F.4th at 660-63; *Schutte*, 9 F.4th at 471-72. And it is discussed in the certiorari petitions. *See, e.g.*, Schutte Pet. at 26. If the Supreme Court applies *Safeco* to the FCA, it almost certainly will also weigh in what counts as "authoritative guidance."

The parties dispute whether there is authoritative guidance here that should have warned Defendants away from their position. The Seventh Circuit and other courts have held that only circuit court precedent or binding guidance from the relevant agency qualifies. Dkt. 382 at 31-33. Plaintiffs now argue, however, that something far less could qualify, like informal agency guidance in a policy statement, a letter from the agency, or even email correspondence with a State lawyer. Dkt. 427 at 11-13.[6] Courts that have adopted *Safeco* have held that such statements do not constitute authoritative guidance. *See, e.g.*, *Van Straaten v. Shell Oil Prods. Co.*, 678 F.3d 486, 488 (7th Cir. 2012) (agency bulletin not authoritative because "neither an exercise in notice-and-comment rulemaking nor the outcome of an administration adjudication"); *U.S. ex rel. Complin v. N. Carolina Baptist Hosp.*, 818 F. App'x 179, 184 n.6 (4th Cir. 2020) ("non-precedential and non-

---

[6] Plaintiffs also assert, without any legal support, that even though they bear the burden of proof, it is Defendants' obligation to point to authoritative guidance to support their position. Dkt. 427 at 13. That gets *Safeco* exactly backwards.

binding" agency decision insufficient to warn away).[7]  The parties and the Court will likely know in a few short months whether the Supreme Court agrees.  In the absence of controlling Fifth Circuit precedent, there is no reason for this Court to guess.  The Court should hold off on adjudicating this dispute so it, and possibly a jury, can have the benefit of any guidance from the Supreme Court.[8]

## II.  The Balance of Equities Clearly Favors a Stay

Plaintiffs' half-hearted claim of prejudice from a stay falls flat.  The fact that this case has proceeded on an "expedited schedule" thus far is not a reason to deny a modest stay of just a few months.  *See* Opp. at 4.  Defendants would have sought a stay had this case been pending for years; whatever may have happened in the past has nothing to do with whether it is prudent to wait a few months for the Supreme Court's guidance on an issue that could be case-dispositive.  Moreover,

---

[7] To be clear, under *existing* law, the sources identified by Plaintiffs do not constitute authoritative guidance.  Neither a Letter of Termination from Texas HHSC-OIG nor a Fifth Circuit decision addressing standing, *see* Dkt. 427 at 11-12, constitutes sufficiently specific authoritative guidance that could have possibly warned Affiliate Defendants away from an objectively reasonable belief that that Affiliate Defendants had no obligation to repay amounts they received for healthcare services provided during the pendency of the injunctions (Dkt. 417 at 28); indeed, neither the letter nor the Fifth Circuit decision discuss the effect of vacatur of an injunction at all.  Likewise, a CMS rule requiring providers must return overpayments, *see* Dkt. 427 at 12-13, cannot constitute authoritative guidance here; the rule certainly does not contemplate that payments lawfully received for medical services actually rendered could later become "overpayments" after an injunction had permitted the healthcare provider to provide such services is subsequently vacated.  Indeed, that same CMS final rule explicitly states that payments "proper at the time the payment was made do not become overpayments at a later time."  *See* Dkt. 382 at 32-33 (quoting 81 Fed. Reg. 7654, 7658 (2016)).

[8] Plaintiffs' speculation that the Supreme Court is unlikely to affirm is just that. Dkt. 427 at 2, n.2. Many members of the FCA and Supreme Court bars have predicted the opposite.  *See, e.g.*, Jeff Overley and Daniel Wilson, Law360, *High Court Legacy Of FCA Unity Teeters On Ideological Brink* (Jan 19, 2023) (analyzing *Schutte & Proctor* and discussing various reasons that Supreme Court observers think the Court is likely to affirm).  The reality is that no one can predict how the Supreme Court will rule, which is all the more reason to grant a brief stay so the parties and the Court can have the benefit of the opinion in less than four months.

Plaintiffs' suggestion that Defendants should have sought a stay when a petition for certiorari was *filed* is absurd. The Supreme Court grants certiorari on less than two percent of petitions filed. *See The Supreme Court 2016 Term, The Statistics*, 131 Harv. L. Rev. 403, 410, 414 (2017). Seeking a stay before the grant of certiorari would have required Defendants to read the tea leaves in a system where, for more than 98% percent of cases, the Supreme Court says no. Defendants had no reason to presume that the Supreme Court would grant certiorari, especially given that the Court has before declined to take up the very same issue presented in *Proctor* and *Schutte*. *See U.S. ex rel. Purcell v. MWI Corp.*, 137 S. Ct. 625 (Mem.) (2017) (denying petition for certiorari after D.C. Circuit held that an objectively reasonable interpretation precludes FCA liability).

Because of the low likelihood that the Supreme Court will grant review in any given case, courts typically do not issue stays pending the disposition of a petition for certiorari. *See, e.g.*, *Lindenbaum v. Realgy, LLC*, No. 1:19 CV 2862, 2021 WL 9541147, at *1 (N.D. Ohio Dec. 15, 2021) (holding that a stay shall not be granted "while the petition for certiorari is pending" because "[t]he Supreme Court accepts only approximately 80 of the 7,000-8,000 petitions it receives"); *Cashon v. Kindred Healthcare Operating, Inc.*, No. 16-CV-04889-RS, 2016 WL 6611031, at *2-3 (N.D. Cal. Nov. 9, 2016) (denying without prejudice motion to stay pending cert petition because of the "objectively unlikely conclusion that the Supreme Court will grant certiorari" but noting that "Defendants may renew their motion if the Supreme Court grants certiorari"); *cf. Miller v. C.H. Robinson Worldwide, Inc.*, No. 3:17-CV-00408-MMD, 2021 WL 8650491, at *3 (D. Nev. Jan. 25, 2021) (seeking a stay due to a possible cert. petition is "too speculative to be persuasive"). That Defendants did not seek a stay when the *Schutte* certiorari petition was filed in April 2022 was not dilatory; it was sensible.

But once the Supreme Court actually grants certiorari, the calculus on whether to grant a stay changes. As one district court has noted, "[t]he possibility that the Supreme Court would

7

grant cert and ultimately resolve the case on the merits was entirely speculative" and so a stay was not appropriate at the cert petition stage. *Robledo v. Randstad US, L.P.*, No. 17-CV-01003-BLF, 2017 WL 4934205, at *5-6 (N.D. Cal. Nov. 1, 2017). However, once the Supreme Court granted certiorari on an issue that would "impact the decision before the Court and could even be dispositive[,]" the court found that "all three of the *Landis* factors weigh[ed] in favor of granting a stay" because such a stay would "simplify the proceedings and avoid re-litigating" the case at hand. *Id.* at *4-6. "Ultimately, a stay of a short duration" pending a Supreme Court decision "lessen[ed] the hardship and costs for both sides and serve[d] the interests of judicial economy." *Id.* at *5; *see also Cuadras v. MetroPCS Wireless, Inc.*, No. 09-CV-7897-CAS, 2011 WL 227591, at *2 (C.D. Cal. Jan. 21, 2011) (after the Supreme Court granted certiorari, any "potential prejudice to the plaintiff due to delay" became "far outweighed by the potential prejudice to defendant that would result from the expense of continuing to litigate these claims"); Dkt. 422 at 3 (collecting cases demonstrating that courts routinely stay litigation pending the outcome of a controlling appellate decision on an issue important to the case).

In sum, Plaintiffs have articulated no cognizable prejudice or other reason that the balance of equities should tilt in their favor. Given the judicial economy and harm faced by Defendants in litigating this case under a currently unknown standard, the Court should grant a stay here.

### III. The State Law Claims Cannot Be Considered in a Vacuum

Finally, Plaintiffs arguments about their TMFPA and LMAPIL claims miss the mark. As a threshold matter, courts analyzing state FCA analogues routinely look to federal FCA jurisprudence and the Court may well decide to do so here if it defers proceeding with the case until after Supreme Court rules on the FCA's scienter requirement and potentially other elements of the FCA. Indeed the Texas Supreme Court has acknowledged that, where state statutes are

"modeled" after a federal statute, the Texas Supreme Court "presume[s] that [the Texas legislature] knew of the federal court's construction of the federal statute when it adopted the statute and intended to adopt that construction." *City of Garland v. Dall. Morning News*, 22 S.W.3d 351, 360 (Tex. 2000); *see also, e.g.*, *Barr v. City of Sinton*, 295 S.W.3d 287, 296 (Tex. 2009) (adopting interpretation from federal court statute with "common history, language, and purpose"); *Sharifi v. Young Bros.,* 835 S.W.2d 221 (Tex. App. 1992) (Texas courts often adopt federal interpretations if the state and federal acts are substantially similar and the state statute does not reflect a contrary legislative intent). It is no surprise, then, that courts often analyze the TMFPA and LMAPIL analogously to the FCA. *See, e.g.*, *United States v. Dental Health Programs, Inc.*, No. 3:18-CV-00463-E, 2020 WL 3064712, at *7 (N.D. Tex. June 8, 2020).

But the chance that this Court might later decide not to follow the Supreme Court's decision in ruling on similar issues under the TMFPA and LMAPIL is not a reason for this litigation to proceed piecemeal. *See Hungerford v. Smith & Nephew, Inc.*, No. 2:15 CV 2754, 2016 WL 4499461, at *2 (W.D. La. Aug. 23, 2016) (piecemeal litigation undermines judicial economy). This is particularly true when, like here, the federal and state claims are the same, meaning that there are reverse false claims and implied false certification claims brought under federal, Texas, and Louisiana law, that *all hinge on the same facts*. *See McPeters v. LexisNexis, a Div. of Reed Elsevier, Inc.*, No. SA-11-CA-154-FB, 2011 WL 13253948, at *4 (W.D. Tex. May 27, 2011) (noting that "preserv[ing] judicial economy and prevent[ing] piecemeal litigation" supported a transfer because the proceedings involved the "same facts and circumstances"); *Sousa ex rel. Sousa v. Prosser*, No. CIV.A. 03-2942, 2004 WL 1497764, at *4 (E.D. La. July 1, 2004) (granting stay pending resolution of "interrelated" claims to "avoid piecemeal resolution").

9

## **CONCLUSION**

For these reasons, Defendants respectfully request that the Court grant their Motion to Stay, Dkt. 422.

Dated: February 16, 2023                 Respectfully Submitted,

        ARNOLD & PORTER KAYE SCHOLER LLP

/s/ *Tirzah S. Lollar*
Craig D. Margolis
Craig.Margolis@arnoldporter.com
Tirzah S. Lollar
Tirzah.Lollar@arnoldporter.com
Christian Sheehan
Christian.Sheehan@arnoldporter.com
Emily Reeder-Ricchetti
Emily.Reeder-Ricchetti@arnoldporter.com
Megan Pieper
Megan.Pieper@arnoldporter.com
Alyssa Gerstner
Alyssa.Gerstner@arnoldporter.com
Meghan C. Martin
Meghan.Martin@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.5000
Fax: +1 202.942.5999

Christopher M. Odell
Texas State Bar No. 24037205
Christopher.Odell@arnoldporter.com
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: +1 713.576.2400
Fax: +1 713.576.2499

Paula Ramer
250 West 55th Street
New York, New York 10019-9710
T: +1 212.836.8474
Paula.Ramer@arnoldporter.com

RYAN BROWN ATTORNEY AT LAW
Ryan Patrick Brown

10

Texas Bar No. 24073967
ryan@ryanbrownattorneyatlaw.com
1222 S. Fillmore St.
Amarillo, Texas 79101
T: (806) 372-5711
F: (806) 350-7716

*Attorneys for Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood of South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc.*

O'MELVENY & MYERS LLP

/s/ *Danny S. Ashby*
DANNY S. ASHBY
Texas Bar No. 01370960
dashby@omm.com
MEGAN R. WHISLER
Texas Bar No. 24079565
mwhisler@omm.com
2501 N. Harwood Street, Suite 1700
Dallas, Texas 75201
T: (972) 360-1900
F: (972) 360-1901

LEAH GODESKY (pro hac vice)
lgodesky@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
T: (310) 553-6700
F: (310) 246-6779

RYAN BROWN ATTORNEY AT LAW
Ryan Patrick Brown
Texas Bar No. 24073967
ryan@ryanbrownattorneyatlaw.com
1222 S. Fillmore St.
Amarillo, Texas 79101
T: (806) 372-5711
F: (806) 350-7716

*Attorneys for Defendant Planned Parenthood Federation of America, Inc.*

11

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 16, 2023, the foregoing document was electronically filed with the Clerk of Court using CM/ECF.

                                                  */s/ Tirzah S. Lollar*
                                                  Tirzah S. Lollar