**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ALEX DOE, Relator, THE STATE OF TEXAS, *ex rel.* ALEX DOE, Relator, THE STATE OF LOUISIANA, *ex rel.* ALEX DOE, Relator, | § § § § § § | |
| | § § | No. 2:21-cv-022-Z |
| Plaintiffs, | § § | Date:        February 21, 2023 |
| v. | § § | ORAL ARGUMENT REQUESTED |
| | § § | |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., PLANNED PARENTHOOD GULF COAST, INC., PLANNED PARENTHOOD OF GREATER TEXAS, INC., PLANNED PARENTHOOD SOUTH TEXAS, INC., PLANNED PARENTHOOD CAMERON COUNTY, INC., PLANNED PARENTHOOD SAN ANTONIO, INC., | § § § § § § § § § § | |
| Defendants. | § § | |

**PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.'S
REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

    I.      PPFA Cannot Be Held Directly Liable for Reverse False Claims........................ 3

            A.     The Reverse-False-Claims Provisions Create Liability Only for Parties
                  Who Avoid Their Own Payment Obligation, Which PPFA Did Not Have
                  as a Matter of Law .................................................................................... 3

            B.     Even if PPFA Could Be Held Liable Under a "Causing" Theory, Plaintiffs
                  Have Produced No Evidence that PPFA Caused the Affiliate Defendants
                  to Avoid an Obligation................................................................................ 9

                  1.     A lawyer cannot be held liable to a third party for actions taken
                        within the scope of representation. .................................................. 9

                  2.     Every part of the "strategy" Plaintiffs claim L&L "masterminded"
                        fell within the scope of L&L's representation of the Affiliate
                        Defendants. .................................................................................... 12

                  3.     L&L's actions cannot be imputed to PPFA. ................................. 17

            C.     Plaintiffs Have Presented No Evidence that PPFA Acted With the
                    Required Scienter ...................................................................................... 19

    II.      PPFA Cannot Be Held Directly Liable for Implied False Certification ............. 22

            A.     Causal Liability Under the FCA and LMAPIL Requires Affirmative
                    Participation in the Submission of the Claims at Issue............................ 22

             B.     Plaintiffs Do Not Even Attempt to Present Evidence that PPFA
                    Affirmatively Participated in the Affiliate Defendants' Submission of the
                    Claims at Issue .......................................................................................... 23

    III.    PPFA Is Entitled to Summary Judgment on Relator's Conspiracy Claims .......... 25

CONCLUSION.................................................................................................................... 25

CERTIFICATE OF SERVICE ................................................................................................ 27

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alliance Dev., Inc. v. St. Paul Mercury Ins. Co.*,
   2012 WL 112612 (S.D. Tex. Jan. 11, 2012) ........................................................................ 9, 10

*Alpert v. Riley*,
   2008 WL 304742 (S.D. Tex. Jan. 31, 2008) ......................................................... 10, 12, 13, 15

*Anwar v. Dow Chem. Co.*,
   2016 WL 5070269 (E.D. Mich. Sept. 20, 2016) ............................................................... 18, 19

*City of N. Miami, Fla. v. Berger*,
   828 F. Supp. 401 (E.D. Va. 1993) ............................................................................................ 11

*Duke v. Wells Fargo Bank N.A.*,
   2018 WL 1157957 (N.D. Tex. Mar. 2, 2018) ........................................................................ 9, 13

*GuideOne Mut. Ins. Co. v. First United Methodist Church*,
   2020 WL 3485620 (N.D. Tex. Apr. 1, 2020) ........................................................................... 25

*Harris v. Olszewski*,
   442 F.3d 456 (6th Cir. 2006) .................................................................................................... 14

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
   2007 WL 2615928 (S.D.N.Y. Sept. 10, 2007) ......................................................................... 11

*Junot v. Lee*,
   372 So. 2d 707 (La. Ct. App. 1979) ............................................................................. 10, 11, 13

*Lusk v. Foxmeyer Health Corp.*,
   129 F.3d 773 (5th Cir. 1997) .................................................................................................... 18

*Ottah v. Bracewell LLP*,
   2021 WL 5910065 (S.D.N.Y. Dec. 10, 2021) .......................................................................... 13

*Planned Parenthood Ariz. Inc. v. Betlach*,
   727 F.3d 960 (9th Cir. 2013) .................................................................................................... 14

*Planned Parenthood of Gulf Coast, Inc. v. Gee*,
   862 F.3d 445 (5th Cir. 2017) .................................................................................................... 14

*Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*,
   699 F.3d 962 (7th Cir. 2012) .................................................................................................... 14

*Planned Parenthood of Kan. v. Andersen*,
   882 F.3d 1205 (10th Cir. 2018) ................................................................................................ 14

*Planned Parenthood S. Atl. v. Kerr*,
   27 F.4th 945 (4th Cir. 2022) ..................................................................................................... 14

*Safeco Ins. Co. of Am. v. Burr*,
   551 U.S. 47 (2007) ............................................................................................................... 20, 21

*Smith v. United States*,
   287 F.2d 299 (5th Cir. 1961) ...................................................................................................... 6

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Sondes v. Sears, Roebuck & Co.,*
501 So.2d 829 (La. Ct. App. 1986) .................................................................. 10, 13

*United States ex rel. Baker v. Cmty. Health Sys., Inc.,*
2014 WL 10212574 (D.N.M. May 16, 2014) ........................................................ 18

*United States ex rel. Frey v. Health Mgmt. Sys., Inc.,*
2021 WL 4502275 (N.D. Tex. Oct. 1, 2021) ........................................................... 6

*United States ex rel. Garbe v. Kmart Corp.,*
73 F. Supp. 3d 1002 (S.D. Ill. 2014) ...................................................................... 5

*United States ex rel. Hagood v. Sonoma Cnty. Water Agency,*
929 F.2d 1416 (9th Cir. 1991) ............................................................................. 21

*United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.,*
498 F. Supp. 2d 25 (D.D.C. 2007) ....................................................................... 22

*United States ex rel. Koch v. Koch Indus., Inc.,*
57 F. Supp. 2d 1122 (N.D. Okla. 1999) .................................................................. 5

*United States ex rel. Lamers v. City of Green Bay,*
168 F.3d 1013 (7th Cir. 1999) ............................................................................. 21

*United States ex rel. Martino-Fleming v. S. Bay Mental Health Ctrs.,*
2021 WL 2003016 (D. Mass. May 19, 2021) ........................................................ 23

*United States ex rel. Purcell v. MWI Corp.,*
807 F.3d 281 (D.C. Cir. 2015) ................................................................... 19, 20, 21

*United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg. Healthcare Sys.,*
274 F. Supp. 2d 824 (S.D. Tex. 2003) .................................................................. 25

*United States ex rel. Riley v. St. Luke's Episcopal Hosp.,*
355 F.3d 370 (5th Cir. 2004) ................................................................................. 6

*United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah,*
472 F.3d 702 (10th Cir. 2006) ........................................................................ 22, 24

*United States ex rel. Spay v. CVS Caremark Corp.,*
913 F. Supp. 2d 125 (E.D. Pa. 2012) ..................................................................... 5

*United States ex rel. Wallace v. Exachtech, Inc.,*
2020 WL 4500493 (N.D. Ala. Aug. 5, 2020) .......................................................... 6

*United States ex rel. Wuestenhoefer v. Jefferson,*
105 F. Supp. 3d 641 (N.D. Miss. 2015) ............................................................... 22

*United States v. Bestfoods,*
524 U.S. 51 (1998) ........................................................................................ 2, 18

*United States v. Caremark, Inc.,*
634 F.3d 808 (5th Cir. 2011) ................................................................................. 5

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*United States v. Omnicare, Inc.*,
  2021 WL 1063784 (S.D.N.Y. Mar. 19, 2021) .......................................................................... 23

*United States v. Pres. & Fellows of Harvard Coll.*,
  323 F. Supp. 2d 151 (D. Mass. 2004) ............................................................................ 22, 23

*United States v. SuperValu Inc.*,
  9 F.4th 455 (7th Cir. 2021) ........................................................................................... 20

*United States v. Vargas-Soto*,
  35 F.4th 979 (5th Cir. 2022) ............................................................................................ 4

*Williams v. Thaler*,
  2013 WL 1249773 (E.D. Tex. Mar. 26, 2013) ...................................................................... 11

*Wis. Cent. Ltd. v. United States*,
  138 S. Ct. 2067 (2018) .................................................................................................... 4

**Statutes**

31 U.S.C. § 3729(a)(1)(A) ......................................................................................... 4, 24

31 U.S.C. § 3729(a)(1)(B) .............................................................................................. 4

31 U.S.C. § 3729(a)(1)(D) ............................................................................................. 4

31 U.S.C. § 3729(a)(1)(G) ......................................................................................... 4, 5

31 U.S.C. § 3729(b)(3) .................................................................................................. 6

42 U.S.C. § 1320a-7k(d)(4)(C) ....................................................................................... 8

La. Rev. Stat. § 46:437.3(16) ......................................................................................... 6

La. Rev. Stat. § 46:438.3(A) ......................................................................................... 24

La. Rev. Stat. § 46:438.3.C ........................................................................................... 4

Tex. Hum. Res. Code § 36.001(7-a) ............................................................................... 6

Tex. Hum. Res. Code § 36.002(12) ................................................................................ 4

**Rules and Regulations**

Tex. R. Civ. Proc. 13 ................................................................................................... 15

**Other Authorities**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*
  (2012) ....................................................................................................................... 4

Restatement (Third) of the Law Governing Lawyers (2000) ..................................... 9, 13, 15, 17

## INTRODUCTION

Plaintiffs do not seek to hold PPFA derivatively liable under a veil-piercing theory, but rather directly liable for its own alleged violation of the False Claims Act ("FCA") and its Texas and Louisiana analogues.  And yet, as with their summary-judgment motion, Plaintiffs' opposition relies primarily on evidence of PPFA's purported "control" of its affiliates, which could only be relevant to (though insufficient to justify) piercing the corporate veil.  Plaintiffs have offered *no* evidence that PPFA is liable directly for either reverse false claims or implied false certification or that it participated in any conspiracy to defraud the government.[1]

Plaintiffs' reverse-false-claims theory as to PPFA is premised entirely on the assertion that the Affiliate Defendants' lawyers from PPFA's "Litigation & Law" Department ("L&L")—a captive law firm that provides legal advice both to Planned Parenthood affiliates and to PPFA—provided the Affiliate Defendants legal advice that "caused" the Affiliate Defendants to knowingly and improperly avoid their alleged payment obligations to the government.  That theory fails as a matter of law because (i) PPFA, which is not a Medicaid provider, had no obligation to repay money it never received, and the FCA does not create liability for "causing" another person to avoid a payment obligation; and (ii) the law is clear that an attorney cannot be held liable to a non-client based on legal advice provided to a client within the scope of a representation.

So too do Relator's implied-false-certification theories.  Plaintiffs must prove that PPFA was "directly involved" with the Affiliate Defendants' submission of the claims at issue in order to hold PPFA directly liable for causing the submission of those claims.  Yet Plaintiffs have not cited a single fact relevant to PPFA's alleged participation in the submission of the disputed claims, or even in the Affiliate Defendants' submission of Medicaid claims in general, relying instead on

---

[1] PPFA is also entitled to summary judgment for all the reasons stated in the Affiliate Defendants' reply brief, which PPFA joins in full.

the aforementioned, irrelevant allegations of PPFA's general "control" over the Affiliate Defendants.  ECF No. 415 at 69.

Because Plaintiffs have presented no evidence that could support a finding of direct liability for reverse false claims, implied false certification, or conspiracy, PPFA is entitled to summary judgment on all claims.

## ARGUMENT

As PPFA explained in its opposition to Plaintiffs' motions for summary judgment, Plaintiffs have repeatedly and unequivocally stated that they are asserting direct, not derivative, liability as to PPFA.  ECF No. 414 at 11-14.  That fact renders their evidence of PPFA's purported "control" over the Affiliate Defendants irrelevant.  *See* ECF No. 415 at 69-73.  Plaintiffs rely on *United States v. Bestfoods*, 524 U.S. 51, 64-65 (1998), *see* ECF No. 415 at 69-70, but that case makes clear that "'[c]ontrol of the subsidiary, if extensive enough, gives rise to *indirect liability* [for a parent company] under piercing doctrine,'" *Bestfoods*, 524 U.S. at 68 (emphasis added), but direct liability turns on "the parent's interaction with ... the source of any direct liability," not on "the relationship between the two corporations."  *Id.* at 67.  In *Bestfoods*, a CERCLA case, the source of direct liability was a pollution-producing facility.  *Id.*  In this case, the claimed source is the Affiliate Defendants' alleged submission of impliedly false claims and avoidance of a purported obligation to repay Medicaid funds they received as a result of those claims.

PPFA's allegedly "extensive control over the operations of the Affiliate Defendants," ECF No. 415 at 69, then, is not just sharply disputed but also beside the point.  What matters is whether PPFA itself avoided an obligation to repay Medicaid funds or "caused" the Affiliate Defendants to submit impliedly false claims.  Because Plaintiffs have not shown a dispute of material fact as to either question, PPFA is entitled to summary judgment on all claims.

I.      **PPFA Cannot Be Held Directly Liable for Reverse False Claims**

Plaintiffs argue that PPFA is liable under the FCA, TMFPA, and LMAPIL because it "caus[ed] the Affiliate Defendants to avoid their obligation to repay the Medicaid funds."  ECF No. 415 at 56.  For the reasons stated in the Affiliate Defendants' motion for summary judgment and brief in opposition to Plaintiffs' motions for summary judgment, which PPFA joined in full, the Affiliate Defendants cannot be held liable in the first place, which means that PPFA cannot be held liable either.  *See* ECF No. 384-1 at 34-50; ECF No. 419-2 at 25-45.

But the reverse-false-claims theory fails as to PPFA for three additional reasons.  First, even if there were a dispute of material fact as to whether the Affiliate Defendants knowingly and improperly avoided an obligation, the reverse-false-claims provisions Plaintiffs invoke only apply to a defendant who avoided its *own* payment obligation, and PPFA cannot be held liable when it is undisputed that PPFA did not itself owe an obligation to pay the government.  Second, even if the statute permitted liability for "causing" a third party to avoid a payment obligation, Plaintiffs have produced no evidence that PPFA caused the Affiliate Defendants to do so.  And third, Plaintiffs have produced no evidence that PPFA acted with the requisite scienter.

A.      **The Reverse-False-Claims Provisions Create Liability Only for Parties Who Avoid Their Own Payment Obligation, Which PPFA Did Not Have as a Matter of Law**

Plaintiffs' reverse-false-claims theory is premised on the assertion that PPFA "caused" the Affiliate Defendants to avoid a payment obligation.  *See*, *e.g.*, ECF No. 415 at 56.  But the FCA, TMFPA, and LMAPIL do not apply to parties who "cause" others to avoid an obligation; they only apply to parties who knowingly and improperly avoid their own obligation.

Section 3729(a)(1)(G) creates liability for:

any person who …. knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the

Government, or knowingly conceals or **knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government**[.]

31 U.S.C. § 3729(a)(1)(G) (emphasis added); *see also* Tex. Hum. Res. Code § 36.002(12); La. Rev. Stat. § 46:438.3.C.  Plaintiffs ground their reverse-false-claims theory solely on the second, bolded clause of this provision, as well as analogous language in the TMFPA and LMAPIL.  ECF No. 415 at 56; ECF No. 391 at 45; ECF No. 2 ¶¶ 120, 127, 133; ECF No. 22 ¶¶ 39-41.  Congress added Section 3729(a)(1)(G)'s second clause in 2009 in an attempt to "close[] [a] loophole" in the prior version of the FCA, which did not reach "actions to conceal, avoid, or decrease an obligation *directly to* the Government."  S. Rep. No. 111-10, at 14 (2009) (emphasis added).

The first clause of Section 3729(a)(1)(G)—which existed before the 2009 amendment— creates liability for someone who "causes to be made or used" a false record or statement material to an obligation to pay the government.  *See also* 31 U.S.C. §§ 3729(a)(1)(A), (B), (D) (using similar language to create causal liability). The second clause, which is stated in the disjunctive, markedly does *not* create liability for someone who "causes" another person to avoid or decrease an obligation.  Courts "usually presume differences in language like this convey differences in meaning," and that a "material variation in terms suggests a variation in meaning."  *United States v. Vargas-Soto*, 35 F.4th 979, 992 (5th Cir. 2022) (quoting *Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2071 (2018) and Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012)).  The second clause of Section 3729(a)(1)(G) thus cannot be read to extend to a defendant who causes another party to avoid an obligation.  Because the party who owes the obligation is the only one who can "avoid" it, the only way to be liable for knowingly and improperly avoiding an obligation is to knowingly and improperly avoid *one's own* obligation.

Plaintiffs claim that PPFA can be liable under "the indirect reverse false claim theory of liability," ECF No. 415 at 58, but they cite no cases supporting such a theory under the post-2009

4

FCA language at issue here.  In *United States v. Caremark, Inc.*, 634 F.3d 808, 811 (5th Cir. 2011) (cited at ECF No. 415 at 58), the Fifth Circuit held that Caremark, a pharmacy-benefits company, could be liable under the pre-2009 reverse-false-claims provision for unlawfully denying reimbursement requests from state Medicaid agencies for individuals insured by Caremark's plans. While Caremark did not owe any payment obligation to the federal government, the states alleged "that Caremark made false statements to the state Medicaid agencies ... that allowed Caremark to fraudulently avoid making payments to the state Medicaid agencies," which in turn caused those agencies to avoid their duty to return federal funds recovered from third parties.  *Id.* at 815-17. Because the reverse-false-claim provision at that time "provide[d] that a person who *causes* a false statement to be made 'to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government' is liable under the FCA," the Court held that "Caremark's actions ... could have impaired" the states' obligations.  *Id.* at 815-17.  The other cases Plaintiffs cite likewise involve the pre-2009 language.  *See* ECF No. 415 at 59; *United States ex rel. Spay v. CVS Caremark Corp.*, 913 F. Supp. 2d 125, 172-73 (E.D. Pa. 2012) (citing *Caremark* in analyzing pre-2009 reverse-false-claims provision); *United States ex rel. Koch v. Koch Indus., Inc.*, 57 F. Supp. 2d 1122, 1128-29 (N.D. Okla. 1999) (analyzing pre-2009 reverse-false-claims provision); *United States ex rel. Garbe v. Kmart Corp.*, 73 F. Supp. 3d 1002, 1012 n.4 (S.D. Ill. 2014) (citing *Spay*, *Koch*, and other cases analyzing pre-2009 reverse-false-claims provision).

While *Caremark* may still be relevant to claims under the first clause of Section 3729(a)(1)(G), which creates liability for "knowingly mak[ing], us[ing], or *caus[ing]* to be made or used, a false record or statement material to an obligation," it has no bearing on liability for "knowingly and improperly avoid[ing] or decreas[ing] an obligation."[2]  31 U.S.C. § 3729(a)(1)(G)

---

[2] Some of the cases Plaintiffs cite in support of this theory apply *Caremark*'s reasoning to the first clause of Section 3729(a)(1)(G), which is not at issue here.  *See United States ex rel. Wallace v. Exactech, Inc.*, 2020 WL

(emphasis added).  Unlike in *Caremark*, Plaintiffs do not argue that PPFA made false records or statements material to an obligation; they instead argue that PPFA caused the Affiliate Defendants to *avoid* an obligation.  ECF No. 415 at 56 ("PPFA ... knowingly and improperly avoided or decreased Affiliate Defendants' obligation"); *id.* at 57 ("PPFA orchestrated, planned, and executed the entire scheme that permitted Affiliate Defendants to ... avoid their obligation"); *id.* at 60 ("PPFA is liable for its own actions in causing the Affiliate Defendants to avoid their obligation"); *id.* ("PPFA helped the Affiliate Defendants avoid their obligation"); ECF No. 2 ¶ 120; ECF No. 22 ¶¶ 39-41.  But the FCA does not create liability for "causing" someone else to avoid their obligation.

Plaintiffs' attempts to evade this conclusion are futile.  Plaintiffs first argue that the FCA, TMFPA, and LMAPIL do not limit reverse-false-claim liability to "providers."  ECF No. 415 at 57-58.  But the problem with Plaintiffs' claims under all three statutes is that they require a direct obligation, defined as "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment."  31 U.S.C. § 3729(b)(3); *see also* Tex. Hum. Res. Code § 36.001(7-a) and La. Rev. Stat. § 46:437.3(16) (similar).  Plaintiffs point to the overpayment provisions of the Patient Protection and Affordable Care Act ("ACA") as the source of the Affiliate Defendants' obligation, ECF No. 415 at 21-22,

---

4500493, at *21 (N.D. Ala. Aug. 5, 2020) (*Caremark* recognizes "liability for such indirect reverse false claims where a defendant knowingly makes a false statement that it knows could cause a third party to impair its obligation to the government"); *United States ex rel. Frey v. Health Mgmt. Sys., Inc.*, 2021 WL 4502275, at *9 (N.D. Tex. Oct. 1, 2021) (analogizing *Caremark* to allegations that defendant "provided inaccurate and false information to ... state Medicaid agencies" that caused those agencies to "lie[] to the Government in potential violation of the FCA"). Others do not even involve the reverse-false-claims provision. *See United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004) (involving pre-2009 equivalents of Sections 3729(a)(1)(A) and (a)(1)(B)); *Smith v. United States*, 287 F.2d 299, 304 (5th Cir. 1961) (involving then-equivalent of Section 3729(a)(1)(A)).

6

but *those* provisions only apply to providers, *see* ECF No. 385 at 13-14.  Plaintiffs do not even attempt to rebut this fact, or to identify an alternative source of an obligation for PPFA.

Instead, Plaintiffs gesture at an argument that PPFA is in fact a provider, despite the abundant evidence PPFA has produced to the contrary—and despite the fact that Texas and Relator have admitted as much.  *See, e.g.*, ECF No. 387-1 at 59-62, 159, 293 (PPFA is not a health care provider); *id.* at 142-44 (Texas admits that PPFA does not provide medical services that are billed to Texas Medicaid, does not have a provider agreement with Texas Medicaid, and does not submit claims to or receive payments directly from Texas Medicaid); *id.* at 269-70 (Relator admits that PPFA does not itself submit claims to Medicaid).  Nevertheless, Plaintiffs claim that "PPFA refers to itself as 'Planned Parenthood' and purports to be 'the nation's leading women's health care provider and advocate and a trusted, nonprofit source of primary and preventive care for women, men, and young people in communities across the United States.'"  ECF No. 415 at 56 n.20 (citing ECF No. 416-2 at 495).  Plaintiffs' citation for this assertion is a single line in a single comment letter submitted by PPFA to the Centers for Medicare and Medicaid Services.  Commenting on the rulemaking process is one of the core public-policy services that PPFA provides to the affiliates. *See* ECF No. 390-10 at 4874 (including advocating to federal agencies in list of PPFA-provided services funded in part by membership dues).  When it does so, PPFA speaks on behalf of its affiliate members, who *do* provide health care services.  That is why the cited letter refers to "*Planned Parenthood*," not PPFA, as a "leading women's health care provider."  ECF No. 416-2 at 495 (emphasis added).

The fact that PPFA "managed a team responsible for clinical quality improvement, which monitored healthcare services its affiliates provided to patients and identified ways to clinically improve patient health outcomes," also does not transform it into a provider of health care services.

7

ECF No. 415 at 72.  Consulting with the affiliates on ways to streamline or improve health care services the affiliates provided is not the same as providing those services, much less billing them to Medicaid.  *See* ECF No. 387-1 at 59-62, 79, 101-02, 142-45, 159, 180, 269-70, 313 (PPFA does not bill services or submit claims to, receive payments from, or otherwise participate in Texas's or Louisiana's Medicaid programs).

Equally meritless is Plaintiffs' argument that "PPFA cannot establish that it never received Medicaid funds," based solely on the fact that the Affiliate Defendants receive Medicaid funds and also pay membership dues to PPFA.  ECF No. 415 at 57.  First, Plaintiffs do not explain how receiving membership dues from its affiliates could possibly bring PPFA within the purview of an ACA overpayment provision that applies only to a "provider of services, supplier, medicaid managed care organization … Medicare Advantage organization … or [prescription drug plan] sponsor."  42 U.S.C. § 1320a-7k(d)(4)(C).  And while Plaintiffs claim that Louis Dudney, Defendants' financial expert, "admitted that the Affiliates have paid Medicaid funds to PPFA as part of their National Program Support payments," ECF No. 415 at 57, this misrepresents his testimony.  Mr. Dudney in fact testified that he was "unaware of any activity where Medicaid funds, which are only a part of what is received by a defendant affiliate, are somehow earmarked for the dues that are being paid to PPFA.  That said, cash is fungible."  ECF No. 390-3 at 484.  The "admission" that cash is fungible would mean that any employee or vendor of the Affiliate Defendants likewise received Medicaid funds which, per Plaintiffs' theory, they had an obligation to repay.  That, obviously, is wrong.  Because Plaintiffs have not and cannot identify any source of an obligation for PPFA, their reverse-false-claims causes of action fail as a matter of law.

8

**B.      Even if PPFA Could Be Held Liable Under a "Causing" Theory, Plaintiffs Have Produced No Evidence that PPFA Caused the Affiliate Defendants to Avoid an Obligation**

Even if Section 3729(a)(1)(G) could somehow be read to create liability for "causing" another person to avoid that person's obligation to pay the government, Plaintiffs' assertion that PPFA "mastermind[ed] and orchestrat[ed]" a legal "strategy … to enable Affiliate Defendants to continue to seek reimbursement from Texas and Louisiana Medicaid after the effective date of their terminations," ECF No. 415 at 60, is precluded as a matter of law.  Plaintiffs' assertions about how PPFA "caused" the Affiliate Defendants to avoid their alleged obligations to repay Medicaid funds are predicated solely on L&L's legal representation of the Affiliate Defendants.  *See id.* at 60-69.  But it is black-letter law that a lawyer providing advice within the scope of her client representation cannot be held liable by a third party for actions the client takes based on that advice. Indeed, under Plaintiffs' theory, *any* lawyer representing a defendant in any number of administrative proceedings and/or FCA litigation—not to mention any other context—could be liable to a third party for the advice she provides.  This is not the law.

**1.      A lawyer cannot be held liable to a third party for actions taken within the scope of representation.**

"A lawyer, like other agents, is not as such liable for acts of a client that make the client liable."  Restatement (Third) of the Law Governing Lawyers § 56 (2000).  "As a general rule, attorneys are immune from civil liability to non-clients for actions taken in connection with representing a client." *Duke v. Wells Fargo Bank N.A.*, 2018 WL 1157957, at *3 (N.D. Tex. Mar. 2, 2018).  The common-law protections are especially vigorous in Texas, which "has long authorized attorneys to practice their profession, to advise their clients and interpose any defense or supposed defense, without making themselves liable for damages." *Alliance Dev., Inc. v. St. Paul Mercury Ins. Co.*, 2012 WL 112612, at *3 (S.D. Tex. Jan. 11, 2012) (citation omitted).  An

attorney may thus "'assert any of his client's rights without being personally liable for damages to the opposing party,' and '[u]nder Texas law, attorneys cannot be held liable for wrongful litigation conduct.'" *Id.* (citation omitted).

One exception to the rule is where "an attorney knowingly participates in fraudulent activities outside the scope of his legal representation of the client." *Id.* (citation omitted). But "[a]ctions that fall within the context of an attorney's duty to represent their client in litigation"—that is, those that "require the professional training, skill, and authority of an attorney"—"have been considered insufficient to form the basis of a fraud claim against an attorney by a non-client." *Id.* (citation omitted). Courts thus do not apply the fraud exception to "acts taken and communications made to facilitate the rendition of legal services," such as "the filing of lawsuits and pleadings" and "the providing of legal advice upon which the client acted"—even where the plaintiff "allege[s] that this conduct was fraudulent." *Alpert v. Riley*, 2008 WL 304742, at *17 (S.D. Tex. Jan. 31, 2008) (citation omitted).

Louisiana similarly protects lawyers from liability for "alleged wrongs committed while acting on [a client's] behalf," as long as the lawyer was acting within "the scope of his authority as [the client's] attorney." *Sondes v. Sears, Roebuck & Co.*, 501 So.2d 829, 832 (La. Ct. App. 1986). An attorney acts within the scope of his authority whenever he "urges a position" in support of his client, even one that "has little or no chance of winning." *Junot v. Lee*, 372 So. 2d 707, 710 (La. Ct. App. 1979). Given "changing jurisprudence," courts "must avoid second-guessing an attorney" by imposing third-party liability based on the presumed merits of the attorney's arguments. *Id.* "To hold that an attorney who files pleadings, numerous or otherwise, in support of his client's position has acted overzealously in his client's behalf, and therefore is liable in damages to the other litigant or litigants because those pleadings have little or no merit, would

result in an undesirable chilling effect on the attorney's efforts to properly represent and support his client." *Id.*

Plaintiffs have not cited a single case addressing an attorney's liability for causing a client's federal FCA violation. This argument is so far-fetched that PPFA has likewise found no authority directly on point. In an analogous context, a federal court held that an attorney does not "make or cause to be made false or misleading statements" under Section 18 of the Securities Exchange Act by "drafting, preparing and reviewing [her client's] SEC filings." *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 2007 WL 2615928, at *12 (S.D.N.Y. Sept. 10, 2007) (citation omitted). The court reasoned that "[i]n no sense can an attorney giving legal advice to a person or corporation making a statement, or assisting in its drafting, be understood to 'cause' the statement to be made" because an attorney does not "control" her client. *Id.*; *see also Williams v. Thaler*, 2013 WL 1249773, at *14 (E.D. Tex. Mar. 26, 2013) ("Once an attorney counsels his client, it is ultimately the client's choice whether to follow that advice."). A similar rationale drove a different federal court to hold that an attorney was not liable as an "operator" under CERCLA because his role was "completely subordinate" to his clients, who had "[u]ltimate decisionmaking authority" over the polluting facility. *City of N. Miami, Fla. v. Berger*, 828 F. Supp. 401, 410, 412 (E.D. Va. 1993). Holding otherwise "would impermissibly broaden the scope of CERCLA liability to include all lawyers who provide legal services to landfill owners and operators." *Id.* at 412.

Plaintiffs argue that by representing the Affiliate Defendants in the Texas and Louisiana termination proceedings, L&L "helped Affiliate Defendants to avoid fulfilling their obligation to repay money to Texas and Louisiana Medicaid, rendering PPFA liable under the FCA, TMFPA, and LMAPIL." ECF No. 415 at 61. By this logic, *any* lawyer or law firm (including those who represented the Affiliate Defendants in the termination litigations alongside L&L) who helps a

11

client contest a government decision that affects the client's entitlement to government funds—whether termination from a government program, a regulation changing the government's payment methodology, or the results of a government audit—could be liable for reverse false claims. But the same lawyer would be subject to disciplinary action for not fully and faithfully representing her client's best interests. *See Alpert*, 2008 WL 304742, at *14 ("If an attorney could be held liable to an opposing party for statements made or actions taken in the course of representing his client, he would be forced constantly to balance his own potential exposure against his client's best interest.") (citation omitted). This Court should reject this absurd result and grant PPFA summary judgment on reverse false claims.

### 2. Every part of the "strategy" Plaintiffs claim L&L "masterminded" fell within the scope of L&L's representation of the Affiliate Defendants.

Any action L&L took on behalf of the Affiliate Defendants therefore cannot result in "causing" liability unless it falls outside the scope of L&L's representation. But every single action Plaintiffs identify indisputably falls within that scope, and thus cannot be the basis for liability.

Plaintiffs rely on four different categories of legal advice or advocacy that L&L provided as part of its representation of the Affiliate Defendants regarding the Medicaid terminations: (i) pursuing relief in federal court instead of administrative forums; (ii) requesting a "grace period" from Texas after the Texas federal injunction was vacated; (iii) filing suit in Texas state court at the end of the grace period; and (iv) opposing Louisiana's motion to vacate the Louisiana federal injunction after the Fifth Circuit's en banc ruling. ECF No. 415 at 62. Plaintiffs also argue that L&L "*continues* to represent and assist Affiliate Defendants" in the instant action. *Id.* But all of this advice and representation is litigation conduct fully protected by the common law. Because advising how and where to seek relief and which motions to file are "acts taken and communications made to facilitate the rendition of legal services," the conduct Plaintiffs assert is

protected under Texas law.  *Alpert*, 2008 WL 304742, at *17 (citation omitted); *see also Duke*, 2018 WL 1157957, at *3.  PPFA is thus entitled to summary judgment on the TMFPA Section 36.002(12) claim.  The same rationale requires summary judgment for PPFA on the LMAPIL Section 46:438.3.C claim.  *See Sondes*, 501 So.2d at 832; *Junot*, 372 So.2d at 709-10.

The Texas and Louisiana doctrines also entitle PPFA to summary judgment on Plaintiffs' FCA Section 3729(a)(1)(G) claim.  *See Ottah v. Bracewell LLP*, 2021 WL 5910065, at *10 (S.D.N.Y. Dec. 10, 2021) (applying New York attorney-liability law to federal claim).  Even if those doctrines did not apply, the same outcome is required under first principles and general common-law limitations, which expressly allow a lawyer to "counsel or assist a client in conduct when the lawyer reasonably believes: (a) that the client's conduct constitutes a good-faith effort to determine the validity, scope, meaning, or application of a law or court order; or (b) that the client can assert a nonfrivolous argument that the client's conduct will not constitute a crime or fraud or violate a court order."  Restatement (Third) of the Law Governing Lawyers § 94 (2000).  Plaintiffs seem to be arguing that, by counseling the Affiliate Defendants during the termination proceedings, L&L "assist[ed] … in conduct that [it knew] to be … fraudulent."  *Id.*  If so, they must prove that L&L did not reasonably believe those proceedings to be "a good-faith effort to determine the validity" of the terminations or supported by "a nonfrivolous argument."  *Id.*  This they cannot do, as first evidenced by the fact that the relevant courts and agencies *granted* either in whole or in part the requests for relief that L&L sought on the Affiliate Defendants' behalf.

Plaintiffs cite no evidence that L&L acted frivolously or in bad faith when it provided any of the advice or made any of the filings discussed above.  As for L&L's purported advice to seek relief in court rather than through administrative avenues, Plaintiffs merely recount the procedural history of the Texas and Louisiana district-court actions and cite evidence showing that L&L

represented the Affiliate Defendants in those actions.  ECF No. 415 at 63-65.  They cite nothing

to support the argument that this advice was frivolous or given for an improper reason—and in

fact cite testimony from PPGT's CEO that "[i]t was a *legal* strategy decision at the time focusing

on the federal courts first," *id.* at 65 (citing ECF No. 390-13 at 119) (emphasis added).

Attempting to frame this legal strategy as improper is especially preposterous given that

the federal and state courts agreed with L&L's arguments and granted the Affiliate Defendants

injunctive relief for substantial periods of time.  *See* ECF No. 384-1 at 20-22.  The Texas action

ultimately failed in the Fifth Circuit for lack of subject-matter jurisdiction—a point on which the

Fourth, Sixth, Seventh, Ninth, and Tenth Circuits all disagree.  *See Planned Parenthood S. Atl. v.

Kerr*, 27 F.4th 945 (4th Cir. 2022), *cert. pet. pending*; *Harris v. Olszewski*, 442 F.3d 456 (6th Cir.

2006); *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962

(7th Cir. 2012), *cert. denied*, 569 U.S. 1004 (2012) (mem.); *Planned Parenthood Ariz. Inc. v.

Betlach*, 727 F.3d 960 (9th Cir. 2013), *cert. denied*, 571 U.S. 1198 (2014) (mem.); *Planned

Parenthood of Kan. v. Andersen*, 882 F.3d 1205 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 638

(2018) (mem.).  Indeed, the Fifth Circuit agreed at the time.  *See Planned Parenthood of Gulf

Coast, Inc. v. Gee*, 862 F.3d 445 (5th Cir. 2017), *reh'g en banc denied*, 876 F.3d 699 (5th Cir.

2017), *cert. denied*, 139 S. Ct. 408 (2018) (mem.) (finding subject-matter jurisdiction over

challenge to Louisiana's attempted termination and affirming preliminary injunction of that

termination).  The en banc ruling reversing the Fifth Circuit's prior jurisdictional rulings did not

disturb the district court's findings on the merits of the Affiliate Defendants' terminations from

the Texas or Louisiana Medicaid programs.  *See* ECF No. 384-1 at 22.

Plaintiffs' only argument about the Travis County action is that it was "meritless," ECF

No. 415 at 67, but just because a party does not obtain the relief it seeks does not mean the

arguments it made were frivolous. *See* Restatement (Third) of the Law Governing Lawyers § 94 ("A lawyer who proceeds reasonably to advise a client with the intent of providing the client with legal advice on how to comply with the law does not act wrongfully, even if … a tribunal later determines that the lawyer's advice was incorrect."). It is also notable that Texas never sought sanctions against PPGT for making arguments that were "in bad faith or groundless." *See* Tex. R. Civ. Proc. 13. As for the Louisiana case, Plaintiffs cite no evidence to support their argument that L&L "maneuver[ed]" to "prolong the [Louisiana] preliminary injunction and milk it to obtain additional Medicaid revenue PPGC was not entitled to." ECF No. 415 at 68. Plaintiffs simply cite filings in the Louisiana action, which are core attorney conduct that do not show bad faith. *See Alpert*, 2008 WL 304742, at *17.

Moreover, Plaintiffs misrepresent L&L's conduct in the Louisiana action. Plaintiffs claim that the Fifth Circuit's en banc ruling in *Kauffman* rendered the preliminary injunction in Louisiana "without legal basis and g[ave] 'the green light' for Louisiana to finally effectuate PPGC's termination." ECF No. 415 at 68. But the Louisiana district judge had stayed that litigation—at Louisiana's request—pending decisions in the en banc rehearing of *Kauffman* as well as a separate Fifth Circuit appeal bearing on other issues in the Louisiana case. *See Planned Parenthood Gulf Coast, Inc. v. Kliebert*, No. 3:15-cv-00565-JWD-RLB, ECF No. 121 at 1 (M.D. La. April 7, 2021). As the district judge noted when denying Louisiana's motion to vacate the preliminary injunction after *Kauffman*, that decision did not resolve the pending issues in the other case and thus did not justify lifting the stay in order to vacate the injunction. *Id.* at 1-2. The Affiliate Defendants' decision to oppose the motion to vacate—and L&L's implementation thereof—was thus not "without legal basis."[3] ECF No. 415 at 68.

---

[3] For this reason, Plaintiffs' assertion that PPFA "spearheaded efforts to create a public campaign and try to pressure Louisiana Governor John Bel Edwards to let PPGC stay in Medicaid despite the Fifth Circuit's ruling," ECF

15

The closest Plaintiffs come to arguing that L&L acted in bad faith is with respect to seeking a grace period, which they argue was "a pretext to continue to bill Texas Medicaid and advance media strategies to its own benefit." *Id.* at 65. But Plaintiffs misrepresent the purpose of the grace period and ignore evidence demonstrating that Affiliate Defendants in fact did take steps to transition patients during that period. As the Affiliate Defendants explained to Texas and Texas admitted it understood, the reason for the grace-period request was to provide "continuity of care" and "allow ... patients to take care of urgent health needs." ECF No. 390-3 at 640, 676; *see also* ECF No. 383 at 222 ("The State of Texas granted the Grace Period to help facilitate continuity of care for Medicaid clients who received Medicaid health services from the Defendants ...."); ECF No. 390-2 at 162 (asking Texas for "a brief grace period so that Planned Parenthood providers can provide continuity of care throughout the holiday season and the current crisis point of the pandemic"). While Plaintiffs cite an email from PPFA's Director of Healthcare Operations purportedly "express[ing] her *reluctance* … to refer patients to other providers," ECF No. 415 at 46 (citing ECF No. 390-13 at 97), the email is directly followed by a reply from PPFA's Vice President of Healthcare Operations saying that "Affiliates are all working [on referring] folks who want referred" (sic), ECF No. 390-13 at 97. This aligns with evidence that PPGC began providing patients with "a list of [other] providers" beginning "in December of 2020, after the 5th Circuit lifted the injunction," ECF No. 390-3 at 270, and prepared "[t]alking points for patients" as part of efforts to help its Medicaid patients transition to other providers, *id.* at 326. *See also id.* at 119 (COO of PPST testifies that "[w]e didn't take on any new patients [during the grace period] and we also were trying to help them find a new provider."); ECF No. 419-2 at 20-21.

---

No. 415 at 69 (citing ECF No. 390-10 at 299), does not support their argument that PPFA was "milking" a baseless injunction "to obtain additional Medicaid revenue PPGC was not entitled to," *id.* at 68. This argument is also undercut by the fact that, despite the Fifth Circuit's en banc ruling in the Texas case and the resultant lifting of that injunction, PPGC was never terminated from Louisiana Medicaid and remains an enrolled provider today. ECF No. 384-1 at 28.

16

Regardless, a lawyer is obligated to "proceed in a manner reasonably calculated to advance a client's lawful objectives, as defined by the client after consultation," Restatement (Third) of the Law Governing Lawyers § 16 (2000), and Plaintiffs have presented no evidence that the Affiliate Defendants' objective for seeking the grace period was unlawful. Nothing about pursuing a stipulated solution to allow continuity of care—or even to "advance media strategies," ECF No. 415 at 65—amounts to an unlawful objective.

Moreover, Plaintiffs' fraud argument, such as it exists, rests on the assumption that claims submitted during and after the grace period were fraudulent. For the reasons discussed in the Affiliate Defendants' brief in opposition, Plaintiffs have not met their burden to show that, by submitting these claims, the Affiliates knowingly and improperly avoided an obligation. ECF No. 419-2 at 25-45.

### 3.   L&L's actions cannot be imputed to PPFA.

Plaintiffs also wrongly conflate L&L with PPFA. L&L is a captive law firm that provides legal counsel to affiliates, as well as to PPFA, about certain public-policy-related legal matters that further their shared mission. ECF No. 376 at 2; ECF No. 387-1 at 49. In keeping with L&L's separate duties of loyalty to PPFA and to each affiliate, PPFA's bylaws mandate that confidential affiliate information "shall not be shared with … PPFA personnel outside of [L&L]" without their "prior consent." ECF No. 387-1 at 50.

Kim Custer, a corporate witness for PPFA, testified that PPFA does not "determine whether or not [L&L] is going to represent the affiliates in a lawsuit," and that when L&L does undertake such representation, the affiliates are L&L's "clients and they have attorney-client privilege." ECF No. 390-3 at 365. Information L&L shared with PPFA about its representation of the Affiliate Defendants in the Medicaid termination proceedings "was either public information ... or information that the affiliate may have requested that they communicate with" PPFA. *Id.* "The

17

affiliates are the sole deciders" and "the sole authority" when it comes to "litigation strategy with [L&L]." *Id.* at 366; *see also id.* at 368 ("PPFA does not get involved with [the affiliates'] litigation, with their legal strategy. That is completely, completely within their discretion.").

It is a "well established principle [of corporate law] that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership."[4] *Bestfoods*, 524 U.S. at 69 (quoting *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 779 (5th Cir. 1997)). Plaintiffs bear the burden of rebutting the "presumption ... that the directors are 'wearing their subsidiary hats' and not their 'parent hats' when acting for the subsidiary." *United States ex rel. Baker v. Cmty. Health Sys., Inc.*, 2014 WL 10212574, at *26 (D.N.M. May 16, 2014) (quoting *Bestfoods*, 524 U.S. at 69). "To rebut this presumption, a plaintiff must allege facts demonstrating that the dual status individuals were acting in the parent's interest, and not the subsidiary's, when they engaged in the challenged conduct." *Anwar v. Dow Chem. Co.*, 2016 WL 5070269, at *7 (E.D. Mich. Sept. 20, 2016).

Plaintiffs have presented no evidence that L&L attorneys were acting in PPFA's interest rather than the Affiliate Defendants' at any point during the litigation in question. While Plaintiffs claim that "L&L attorneys provided updates to PPFA about the [termination] litigation," ECF No. 415 at 61, the cited testimony shows those updates were limited to "information that was publicly available after the affiliate made decisions on courses of action," ECF No. 390-3 at 368. Nothing about sharing public information suggests that L&L was putting PPFA's interest above the Affiliate Defendants'. The testimony by PPFA's corporate representative that "PPFA would always consider the implication or the impact … of any action on the federation as a whole" is

---

[4] PPFA and the Affiliate Defendants do not have a parent-subsidiary relationship and PPFA cites to parent-subsidiary cases only by analogy. *See* ECF No. 385 at 8-9, 18-19.

18

sandwiched between her clear statements that "PPFA does not step in and make decisions for the affiliates," who must "make their own legal decision[s]," and that considering the impact of a particular decision on the federation "is not advising or making decisions for the affiliates." *Id.* at 367. And the email Plaintiffs cite in which PPFA's Assistant Director for State Policy Media describes the Texas termination action as "the case we're filing in Texas against efforts to block our patients' access to care through Medicaid," ECF No. 415 at 64 (quoting ECF No. 390-13 at 249), is imprecise language from a mid-level employee that does not show that PPFA was somehow driving that action at the expense of the Affiliate Defendants, but rather that L&L was pursuing its clients' best interests.

Plaintiffs, who have cited exclusively actions taken by L&L attorneys within the scope of their representation of the Affiliate Defendants, have not met their burden to show that L&L attorneys "were acting in [PPFA's] interest, and not the [Affiliate Defendants'], when they engaged in the challenged conduct." *Anwar*, 2016 WL 5070269, at *7. Because Plaintiffs have presented no evidence that PPFA caused the Affiliate Defendants to avoid an obligation, the Court should grant PPFA summary judgment as to reverse false claims.

### C.   Plaintiffs Have Presented No Evidence that PPFA Acted With the Required Scienter

Regardless of how the Supreme Court rules in *United States ex rel. Schutte v. SuperValu Inc.*, No. 21-1326 (U.S.), or *United States ex rel. Proctor v. Safeway, Inc.*, No. 22-111 (U.S.), Plaintiffs have not shown a genuine dispute of material fact as to PPFA's scienter. If the Court affirms *SuperValu*'s objective-knowledge standard, PPFA cannot be held liable because it was indisputably reasonable to construe the Medicaid statutes and regulations as not imposing a repayment obligation on an entity that does not submit Medicaid claims. *See United States ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 287-88 (D.C. Cir. 2015) ("[T]he FCA does not reach an

innocent, good-faith mistake about the meaning of an applicable rule or regulation" or "claims made based on reasonable but erroneous interpretations of a defendant's legal obligations."). And even in a world where PPFA could be liable—despite the statutory text—for "causing" the Affiliate Defendants to avoid an obligation, it is indisputable that the federal injunctions could reasonably be construed to prevent the terminations from going into effect, eliminating the possibility of any "overpayment" while they were in place. *See* ECF No. 419-2 at 38-43 (describing logical, precedential, and constitutional flaws in Plaintiffs' theory that Defendants had an obligation to return payments made pursuant to the terms of the injunctions).

Plaintiffs argue that it was not reasonable for PPFA to conclude that it did not have a repayment obligation given "authoritative guidance caution[ing PPFA] against" this interpretation. ECF No. 415 at 30 (quoting *United States v. SuperValu Inc.*, 9 F.4th 455, 464 (7th Cir. 2021), *cert. granted*, 143 S. Ct. 644 (2023) (mem.)). Under *SuperValu*, "a permissible interpretation is no defense [to an FCA claim] if there existed authoritative guidance that should have warned defendants away from their erroneous interpretation." 9 F.4th at 471. The Supreme Court has made clear that "informal guidance," such as "an informal letter from staff of the Federal Trade Commission" regarding a defendant's particular circumstance, "is not enough to warn a regulated defendant away from an otherwise reasonable interpretation it adopted," *Purcell*, 807 F.3d at 289-90 (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 n.19 (2007)).

The informal email exchange Plaintiffs cite between a L&L attorney, acting in her capacity as counsel for the Affiliate Defendants, and counsel for the Louisiana Department of Health ("LDH"), does not amount to "authoritative guidance" on the question here. ECF No. 415 at 30-31. First, it is nearly identical to the informal communications that could not constitute

20

"authoritative guidance" in *Safeco* and *Purcell*.[5]  551 U.S. at 70 n.19; 807 F.3d at 289.  Second, Plaintiffs have presented no evidence that the L&L attorney shared the emails with PPFA.  And third, the emails do not provide any "guidance"—authoritative or otherwise—concerning whether a Medicaid provider is entitled to retain Medicaid funds for services rendered when a federal injunction precluded the provider's termination from Medicaid.  It was more than reasonable for L&L (and everyone else) to understand the injunctions to allow the Affiliate Defendants to continue to receive Medicaid funds while a federal court required that they remain enrolled Medicaid providers.  Plaintiffs cite no guidance from anyone warning L&L away from that eminently reasonable (indeed, obviously correct) understanding, or indicating that there was an obligation to repay those funds after the injunctions were lifted.

For that reason, the cited email exchange also comes nowhere close to establishing subjective knowledge that could establish scienter even if the Supreme Court reverses *Supervalu* and holds that *Safeco* does not apply to the FCA.  PPFA and the Affiliate Defendants have presented undisputed evidence that they did *not* believe they owed Texas or Louisiana an obligation to repay any Medicaid funds.  *See* ECF No. 387-1 at 174-75; ECF No. 384-1 at 48 n.26. And FCA case law has long held that "[t]o take advantage of a disputed legal question … is to be neither deliberately ignorant nor recklessly disregardful."  *United States ex rel. Hagood v. Sonoma Cnty. Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991); *cf. United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1018 (7th Cir. 1999) ("imprecise statements or differences in interpretation growing out of a disputed legal question are ... not false under the FCA").

---

[5] It is also contradicted by LDH's briefing to the Fifth Circuit, wherein LDH argued that the dispute was not ripe because "[t]he restraining order … effectively suspends the administrative process with time remaining for PPGC to request a hearing," and that whether "PPGC's contracts *may* be terminated (and PPGC deemed disqualified)" was thus "purely speculative."  *Planned Parenthood Gulf Coast, Inc. v. Kliebert*, No. 15-30987, ECF No. 22-2 at 29 (5th Cir. Jan. 8, 2016).

21

## II.      PPFA Cannot Be Held Directly Liable for Implied False Certification

PPFA's motion for summary judgment outlined the standard for "causing" the submission of affirmative false claims.  Because Plaintiffs agree that this standard governs their implied-false-certification claims but do not even attempt to meet it, PPFA is entitled to summary judgment on those claims.

### A.      Causal Liability Under the FCA and LMAPIL Requires Affirmative Participation in the Submission of the Claims at Issue

As Plaintiffs acknowledge, a third party may only be liable for another party's submission of false claims where the third party "was directly involved in submitting false claims or causing them to be submitted to the government."  *United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 62 (D.D.C. 2007); *see* ECF No. 415 at 70; ECF No. 391 at 75.    Direct involvement requires "an 'affirmative act' going beyond 'mere passive acquiescence.'"  *United States ex rel. Wuestenhoefer v. Jefferson*, 105 F. Supp. 3d 641, 681 (N.D. Miss. 2015) (quoting *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 714-15 (10th Cir. 2006, *abrogated on other grounds by Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507 (2019))).  Courts look for "a nexus between the submission of a false [claim] and [the defendant's] role in causing claims to be presented" to the government.  *United States v. Pres. & Fellows of Harvard Coll.*, 323 F. Supp. 2d 151, 188 n.31 (D. Mass. 2004).

This nexus may be evidence that the third party approved expenses and invoices related to the claims at issue, *id.* at 187-88 & n.30, or that it "was directly involved in the process of finalizing the cost report and billing the government," *Hockett*, 498 F. Supp. 2d at 62.  Where a third party does "not take any actions to have claims submitted to the government," it cannot be held liable for causing claims to be submitted—"even if [it] knew or should have known about the claims

22

process, and even if [it] knew that false claims were going to be submitted." *Harvard Coll.*, 323 F. Supp. 2d at 188-89. Mere "failure to take steps to ensure that [the submitting party] discontinued the submission of the claims does not constitute 'causation' under the False Claims Act." *Id.* at 189.

> **B.      Plaintiffs Do Not Even Attempt to Present Evidence that PPFA Affirmatively Participated in the Affiliate Defendants' Submission of the Claims at Issue**

Plaintiffs make no attempt to show that PPFA participated in the Affiliate Defendants' submission of Medicaid claims in general, much less that it was directly involved in their submission of the claims at issue. Instead, Plaintiffs describe the accreditation process for PPFA's membership and generally assert that PPFA was involved "with all aspects of the Affiliate Defendants' business." ECF No. 415 at 70-72. Even if true, these assertions would be wholly irrelevant to PPFA's causal liability for implied false certification.

Plaintiffs argue that being "aware of investigations and unlawful conduct but [failing to] remedy it ... is enough to show direct involvement," ECF No. 415 at 70, but the cases they cite are readily distinguishable. In *United States v. Omnicare, Inc.*, 2021 WL 1063784 (S.D.N.Y. Mar. 19, 2021), the government alleged that "'CVS's Director of Regulatory Affairs was made aware' of a [state] investigation that had alerted [CVS's subsidiary] and CVS of medications being dispensed without valid prescriptions, and that they were serious violations of state law." 2021 WL 1063784, at *13. "CVS compliance staff were involved in responding to the investigations" and "conducted an audit of [the subsidiary's] 'Revenue Process'" that confirmed the problem. *Id.* Nevertheless, CVS "failed to take any steps to remedy the situation." *Id.* Likewise, in *United States ex rel. Martino-Fleming v. South Bay Mental Health Centers*, 2021 WL 2003016, at *130 (D. Mass. May 19, 2021), two employees of the parent company received a report confirming the ongoing nature

of the compliance issue but failed to take any action to address it, even though they sat on the subsidiary's board.

Ignoring a red flag is the type of affirmative act courts require to hold a third party liable for "causing" the submission of false claims. *See Sikkenga*, 472 F.3d at 715. But Plaintiffs have produced no evidence of a similar red flag here. Plaintiffs argue that the Affiliate Defendants' "unethical practices related to fetal tissue procurement" were "governed by PPFA policies" and "approved by PPFA," but their only citation for this is Texas's termination letter to the Affiliate Defendants, the conclusions of which are of course hotly disputed by Defendants and have never been accepted by a court of law. *See* ECF No. 415 at 42-43 (citing ECF No. 390-2 at 228-29). And the termination letter merely makes the general assertion that "affiliates follow protocols and procedures prescribed by [PPFA]" and "report research studies to [PPFA]"—not that PPFA knew about, much less approved, the particular practices at issue. ECF No. 390-2 at 229. This is not evidence that PPFA ignored a red flag as in *Omnicare* or *Martino-Fleming*.

Plaintiffs have likewise presented no evidence that PPFA ignored red flags as to the Affiliate Defendants' submission of Medicaid claims while the injunctions were in place or during the Texas grace period. As discussed in PPFA's and the Affiliate Defendants' briefs in opposition to Plaintiffs' summary-judgment motions, PPFA had no reason to believe that these claims were improper.[6] *See* ECF No. 414 at 29-31; ECF No. 419-2 at 45-53. And even if there were a disputed issue of material fact as to the Affiliate Defendants' scienter, the undisputed record shows an *absence* of red flags for PPFA. From PPFA's perspective, some of its affiliates had obtained injunctions preventing Medicaid terminations in Texas and Louisiana from taking effect. Because PPFA does not direct affiliates to submit Texas or Louisiana Medicaid claims or instruct them as

---

[6] For the same reasons, Plaintiffs have failed to produce any evidence that PPFA "knowingly" caused false claims to be submitted, as required for a violation of 31 U.S.C. § 3729(a)(1)(A) and La. Rev. Stat. § 46:438.3(A).

to whether to make repayments to Texas or Louisiana Medicaid, ECF No. 383 at 373-74, 380-81, 385-86; ECF No. 387-1 at 135-36, 164, 169, 259-60, 262, it had no reason or occasion to consider the legal status of any claims those affiliates submitted during the pendency of the injunctions.

### III.   PPFA Is Entitled to Summary Judgment on Relator's Conspiracy Claims

Relator has no meaningful response to PPFA's argument that it is entitled to summary judgment on Relator's conspiracy claims because Relator can present no evidence of an agreement between PPFA and the Affiliate Defendants, an act PPFA took in furtherance of that agreement, or that PPFA and the Affiliate Defendants shared a specific intent to defraud the government. *See* ECF No. 385 at 23-24. Rather than citing a single piece of evidence going to any of these elements, Relator attempts to shift the burden onto PPFA. ECF No. 415 at 74. But because PPFA "does not have the burden of proof on [these] claim[s], it may obtain summary judgment by pointing a court to the *absence* of evidence on any essential element." *GuideOne Mut. Ins. Co. v. First United Methodist Church*, 2020 WL 3485620, at *2 (N.D. Tex. Apr. 1, 2020). The burden then shifts to Relator to demonstrate "a genuine issue of material fact for trial." *Id.* Because Relator does not even attempt to meet this burden, "[s]ummary judgment is mandatory." *Id.*

To the degree Relator argues that PPFA and the Affiliates have a parent-subsidiary relationship, *see* ECF No. 415 at 69-70, these claims also fail as a matter of law because "[i]n th[e Fifth C]ircuit, it is a matter of law that a parent corporation cannot conspire with its own subsidiary." *United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg. Healthcare Sys.*, 274 F. Supp. 2d 824, 856 (S.D. Tex. 2003). This rule applies equally to "various 'components' and 'subsidiaries' of the same 'parent.'" *Id.*

### CONCLUSION

For the foregoing reasons, PPFA respectfully requests that the Court grant PPFA's motion for summary judgment on all claims.

Dated:  February 21, 2023

Respectfully submitted,

O'MELVENY & MYERS LLP

By:      */s/ Danny S. Ashby*

DANNY S. ASHBY
Texas Bar No. 01370960
dashby@omm.com
MEGAN R. WHISLER
Texas Bar No. 24079565
mwhisler@omm.com
2501 N. Harwood Street, Suite 1700
Dallas, Texas 75201
T: (972) 360-1900
F: (972) 360-1901

LEAH GODESKY (*pro hac vice*)
lgodesky@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
T: (310) 553-6700
F: (310) 246-6779

RYAN BROWN ATTORNEY AT LAW
RYAN PATRICK BROWN
Texas Bar No. 24073967
ryan@ryanbrownattorneyatlaw.com
1222 S. Fillmore St.
Amarillo, Texas 79101
T: (806) 372-5711
F: (806) 350-7716

*Attorneys for Defendant Planned Parenthood
Federation of America, Inc.*

26

**CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2023, a copy of the foregoing was served pursuant to the Court's ECF system.

*/s/ Danny S. Ashby*

Danny S. Ashby