IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| United States of America<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Texas<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Louisiana<br>*ex rel.* ALEX DOE, Relator<br><br>    *Plaintiffs*,<br>v.<br>Planned Parenthood Federation of America,<br>Inc., Planned Parenthood Gulf Coast, Inc.,<br>Planned Parenthood of Greater Texas, Inc.,<br>Planned Parenthood South Texas, Inc.,<br>Planned Parenthood Cameron County, Inc.,<br>Planned Parenthood San Antonio, Inc.,<br>    *Defendants*. | Civil Action No. 2:21-CV-00022-Z |

**STATEMENT OF INTEREST OF THE UNITED STATES**

The United States of America, as the real party in interest with respect to the federal claims at issue in this False Claims Act ("FCA") action, submits this Statement of Interest pursuant to 28 U.S.C. § 517.[1] After investigating relator's claim, the United States elected not to intervene to pursue the federal claims asserted by the relator. But because the relator has asserted claims on behalf of the United States for harms purportedly suffered by the government, the United States remains the real party in interest in this matter even where, as here, it has declined to intervene in the action. *United States ex rel. Eisenstein v. City of N.Y.*, 556 U.S. 928, 934 (2009); *Searcy v. Philips Electronics N. Am. Corp.*, 117 F.3d 154, 156 (5th Cir. 1997). The United States has a strong interest in the proper operation of the Medicaid program—which provides health care coverage to more than eighty-four million low-income people who otherwise would likely be unable to afford health care services—and in ensuring that States administer their federally subsidized Medicaid programs in a manner that is consistent with the Medicaid statute.

Many of the arguments in this case turn on questions of fact or questions of state law. This Statement of Interest does not address those issues. Rather, the United States respectfully submits this Statement of Interest to advise the Court of its views regarding the free choice of provider requirement in the Medicaid Act, which is relevant to the validity of the terminations from the Texas Medicaid program that underlie the claims against the Affiliate Defendants.[2]

---

[1] 28 U.S.C. § 517 allows "any officer of the Department of Justice . . . to attend to the interests of the United States in a suit pending in a court of the United States."

[2] Planned Parenthood Gulf Coast ("PPGC"), Planned Parenthood of Greater Texas, Inc. ("PPGT"), Planned Parenthood of South Texas, Inc. ("PPST"), Planned Parenthood Cameron County, Inc. ("PPCC"), and Planned Parenthood San Antonio, Inc. ("PPSA").

As part of their multi-pronged defense of this action, the Affiliate Defendants have argued that the lawfulness of their termination from the Texas Medicaid program is relevant to their potential FCA liability, including because it bears on whether plaintiffs can satisfy the FCA's scienter requirement. *See, e.g.*, Mem. in Support of Affiliate Defendants' Motion for Summary Judgment, Dkt. 382, at 14, 21, 26, 48 n.26, 57, 62; Mem. in Opposition to Texas's Motion for Summary Judgment and Relator's Motion for Partial Summary Judgment, Dkt. 417, at 42-43, 48-49.[3] The United States respectfully advises the Court of its view regarding Texas's termination of the Affiliate Defendants from the Texas Medicaid program in conjunction with the Medicaid statute's "free choice of provider" provision, 42 U.S.C. § 1396a(a)(23).

A.  **Background on Medicaid**

The Medicaid program, established under Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, is a cooperative program through which the federal government provides financial assistance to States so that they may furnish medical care to low-income individuals. "The Federal Government shares the costs of Medicaid with States that elect to participate in the program." *Atkins v. Rivera*, 477 U.S. 154, 156-57 (1986). "In return, participating States are to comply with requirements imposed by the Act and by the Secretary of Health and Human Services." *Id.* at 157.

---

[3] As this court is aware, the Supreme Court granted certiorari in *United States ex rel. Proctor v. Safeway, Inc.*, No. 22-111, 2023 WL 178393 (U.S. Jan. 13, 2023) and *U.S. ex rel. Schutte, et al. v. Supervalu Inc.*, No. 21-1326, 2023 WL 178398 (U.S. Jan. 13, 2023), to address whether a person can establish that he did not act "knowingly" by showing that his conduct was consistent with an incorrect but objectively reasonable interpretation of legal requirements. The United States argued in a brief filed at the petition stage that a person who subjectively believed or had strong reason to believe that he submitted a claim or statement that was false "cannot escape liability by identifying wrong-but-reasonable justifications after the fact." *See* Brief of the United States as Amicus Curiae, *SuperValu, Inc.*, No. 21-1326, at 12.

2

To be eligible for federal funds, a participating State must develop a plan for medical assistance that demonstrates compliance with the requirements of the Medicaid statute and regulations. *See* 42 U.S.C. § 1396a. If the Department of Health and Human Services ("HHS") approves the State plan, the federal government reimburses the State for a percentage of its qualified Medicaid expenditures (this percentage is often referred to as the federal matching rate). *See* 42 U.S.C. §§ 1396b(a), 1396d(b). The federal matching rate for most Medicaid services varies depending on a State's per capita income, but federal funds pay at least 50% of the cost of providing medical assistance to Medicaid beneficiaries. *See* 42 U.S.C. § 1396d(b). The federal matching rate may be even higher for particular services. For example, the federal government matches state expenditures on family planning services (such as contraception) at 90%, meaning that the State pays only 10% of the cost of such services. *See* 42 U.S.C. § 1396b(a)(5).[4]

Although State participation in the Medicaid program is voluntary, "once a State elects to join the program, it must administer a State plan that meets federal requirements." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 433 (2004). Among other requirements, the State plan "must" provide that beneficiaries have the freedom to receive services from a qualified and willing provider of their choice. 42 U.S.C. § 1396a(a)(23); *see also* 42 C.F.R. § 431.51(b)(1). The "free choice of provider" provision establishes additional protections for beneficiaries of family planning services (services which, as noted above, are funded almost entirely by the federal

---

[4] This case does not involve billing for abortion services, which are not considered family planning services under the Medicaid statute. The federal Hyde Amendment prohibits the use of Medicaid funding for abortions except where the pregnancy results from rape or incest or the life of the pregnant woman would be endangered if the fetus were carried to term. *See Harris v. McRae*, 448 U.S. 297, 302 (1980).

3

government rather than the States). Even in the context of managed care, where a State otherwise may place certain limits on a Medicaid beneficiary's free choice of providers, a State may not limit a beneficiary's free choice of providers of family planning services. *See* 42 U.S.C. § 1396a(a)(23)(B) (cross-referencing § 1396d(a)(4)(C)).[5]

The Medicaid statute also contains enforcement mechanisms to ensure States comply with federal requirements. HHS, through the Centers for Medicare & Medicaid Services ("CMS"), reviews a State's plan, including any plan amendments, and determines whether the State plan complies with statutory and regulatory requirements. *See* 42 U.S.C. § 1316(a)(1), (b). If the Secretary finds "that the plan has been so changed that it no longer complies" with § 1396a, or "that in the administration of the plan there is a failure to comply substantially with any such provision," the Secretary may initiate an enforcement action and "shall make no further payments to such State (or shall limit payments to categories under or parts of the State plan not affected by such failure)." 42 U.S.C. § 1396c; 42 C.F.R. § 430.35.

---

[5] The provision provides in full that a
> State plan for medical assistance must … provide that (A) any individual eligible for medical assistance (including drugs) may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required (including an organization which provides such services, or arranges for their availability, on a prepayment basis), who undertakes to provide him such services, and (B) an enrollment of an individual eligible for medical assistance in a primary care case-management system (described in section 1396n(b)(1) of this title), a medicaid managed care organization, or a similar entity shall not restrict the choice of the qualified person from whom the individual may receive services under section 1396d(a)(4)(C) of this title, except as provided in subsection (g), in section 1396n of this title, and in section 1396u–2(a) of this title, except that this paragraph shall not apply in the case of Puerto Rico, the Virgin Islands, and Guam, and except that nothing in this paragraph shall be construed as requiring a State to provide medical assistance for such services furnished by a person or entity convicted of a felony under Federal or State law for an offense which the State agency determines is inconsistent with the best interests of beneficiaries under the State plan or by a provider or supplier to which a moratorium under subsection (kk)(4) is applied during the period of such moratorium.

42 U.S.C. § 1396a(a)(23).

### B. Termination of a Qualified Provider Violates the Free Choice of Provider Requirement.

Under the Medicaid statute, a beneficiary may obtain medical assistance from any entity or person who is "qualified to perform the service or services required" and "who undertakes to provide him such services." 42 U.S.C. § 1396a(a)(23)(A); *see also* 42 C.F.R. § 431.51(b)(1). This free choice of provider requirement gives Medicaid beneficiaries "the right to choose among a range of qualified providers, without government interference." *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 785 (1980) (emphasis omitted).

A state does not have unfettered discretion to determine Medicaid provider qualifications. If states were permitted to define "qualified" in any manner they chose, it would effectively nullify the statutory free choice of provider provision. Rather, CMS has recognized a narrow exception to freedom of choice that permits a state to establish "reasonable standards relating to the qualifications of providers." 42 C.F.R. § 431.51(c)(2); *see also* CMS, State Medicaid Manual § 2100 (states may "impos[e] reasonable and objective qualification standards" for providers).

Longstanding Medicaid policy provides that these qualifications must relate to the health care provider's ability to provide the services or appropriately bill for them. *See* Declaration of Anne Marie Costello, Dkt. 383 at 325-27 ("Costello Decl."), at ¶ 7 ("[A]ny actions taken by a state to terminate a provider's participation as a Medicaid provider or otherwise limit the provider's ability to furnish services to beneficiaries must relate to the fitness of a provider to safely perform covered services or to properly bill for those services.").[6] In 2011, CMS sent an Informational Bulletin to State Medicaid Directors reminding them that states "are not . . .

---

[6] The Plaintiffs have argued that because Ms. Costello was not timely disclosed as a witness under Rule 26, her declarations are not admissible for purposes of the court's consideration of the parties' summary judgment motions. *See* Plaintiffs' Response to Defendants' Motions for Summary Judgment, Dkt. 415, at 34. The United States takes no position on this issue.

5

permitted to exclude providers from the program solely on the basis of the range of medical services they provide." CMCS Informational Bulletin (June 1, 2011). Subsequently, in the family planning context, in 2012, HHS affirmed the 2011 disapproval of an Indiana State plan amendment that would have prohibited the state Medicaid agency from entering into a contract or grant with providers that perform abortions or operate facilities where abortions are performed, except for hospitals or ambulatory surgical centers. CMS, Decision of the Administrator Disapproving the Indiana State Plan Amendment 11-011 (2012).

One means by which states may implement "reasonable standards relating to the qualifications of providers" as permitted under 42 C.F.R. § 431.51(c)(2) is via State authority to license practitioners that operate within its jurisdiction. The Medicaid statute authorizes a State to exclude or terminate an individual or entity from Medicaid for any reason for which the Secretary could exclude the individual or entity from the Medicare program. 42 U.S.C. § 1396a(p)(1), (3) (cross-referencing 42 U.S.C. §§ 1320a-7, 1320a-7a, 1395cc(b)(2)). These enumerated grounds for exclusion include conviction of specified criminal offenses or a determination that the provider furnished items or services of a quality that failed to meet professionally recognized standards of healthcare. Each enumerated ground for exclusion is consistent with CMS's longstanding interpretation of the free choice of provider requirement as limiting State authority to terminate provider participation to only those circumstances implicating the fitness of the provider to perform covered medical services or appropriately bill for them.

The Fifth Circuit's 2020 *en banc* decision vacating the injunction in Texas did not address what it means for a provider to be qualified or whether the terminations at issue were lawful. *See Planned Parenthood of Greater Tex. v. Kauffman*, 981 F.3d 347, 353 (5th Cir. 2020)

(*en banc*) ("Because the district court did not consider the Providers' claims, no aspect of those claims is before us in this interlocutory appeal.").[7] Federal circuit courts outside the Fifth Circuit, however, have consistently agreed with CMS's interpretation of the free choice of provider requirement. The Seventh Circuit concluded that, "[r]ead in context, the term 'qualified' as used in § 1396a(a)(23) unambiguously relates to a provider's fitness to perform the medical services the patient requires." *Planned Parenthood of Ind., Inc. v. Comm'r of the Ind. State Dep't of Health*, 699 F.3d 962, 978 (7th Cir. 2012). It reasoned that "[t]o be 'qualified' in the relevant sense is to be capable of performing the needed medical services in a professionally competent, safe, legal, and ethical manner. *Id.* The Ninth Circuit adopted the same reasoning. *See Planned Parenthood Ariz., Inc. v. Betlach*, 727 F.3d 960, 969 (9th Cir. 2013) ("We agree with the Seventh Circuit that '[r]ead in context, the term '"qualified"' as used in § 1396a(a)(23) unambiguously relates to a provider's . . . capab[ility] of performing the needed medical services in a professionally competent, safe, legal, and ethical manner.'") (quoting *Planned Parenthood of Ind.*, 699 F.3d at 978). Subsequent courts have agreed with the Seventh and Ninth Circuits. *See Planned Parenthood of Kan. v. Andersen*, 882 F.3d 1205, 1225 (10th Cir. 2018) ("States may not terminate providers from their Medicaid program for any reason they see fit, especially when that reason is unrelated to the provider's competence and the quality of the healthcare it provides"); *Planned Parenthood S. Atl. v. Baker*, 941 F.3d 687, 697 (4th Cir. 2019) ("[T]he term [qualified] is 'tethered to an objective benchmark: qualified to perform the service or services required.'") (quoting *Betlach*, 727 F.3d at 967-68).

---

[7] In her concurring opinion, Judge Elrod concluded that Texas did not act arbitrarily or capriciously in finding that under Texas law PPGC and its affiliates were not "qualified." *See Kauffman*, 981 F.3d at 379 (Elrod, J., concurring). By contrast, in his dissenting opinion, Judge Dennis concluded, consistent with the district court's findings, that Texas lacked prima facie evidence that the providers were not qualified. *See id.* at 404 (Dennis, J., dissenting).

7

Here, after learning of the actions taken by the Texas and Louisiana Medicaid programs to terminate the enrollment of the Planned Parenthood defendants, CMS wrote to those programs on August 11, 2016, advising that it was unaware of any basis for the termination of the defendants that would be consistent with the free choice of provider requirement. *See* Costello Decl. ¶ 11; *see also* Letter from Director of the Center for Medicaid & CHIP Services Vikki Wachino to Gary Jessee (Aug. 11, 2016) (Dkt. 383 at 181-183); Letter from Vikki Wachino to Jen Steele (Aug. 11, 2016) (Dkt. 383 at 184-186). CMS has since reviewed the response from Texas to the August 2016 letters, the factual findings in the district court order granting the preliminary injunction, the discussions of those findings in the opinions from the Fifth Circuit panel and *en banc* court regarding the injunction, and the factual allegations in Relator's complaint in this case and has been unable to identify Texas's and Louisiana's basis for termination related to the Affiliate Defendants' abilities to safely furnish covered services and properly bill for them. *See* Costello Decl.¶ 12.[8]

C. **Termination of Provider Affiliates Under the Social Security Act.**

Texas based its termination of PPGT, PPST, PPCC, and PPSA solely on their alleged affiliation with PPGC. Texas relied on state law under which a provider "affiliated with a person that commits a program violation" is subject to enrollment termination based upon that affiliation. 1 Tex. Admin. Code § 371.1703(c)(7); *see also* 1 Tex. Admin Code § 371.1605(a). A decision to terminate a provider, based upon evidence relating to the conduct of an affiliate rather than a separate determination regarding the qualification of the terminated provider to furnish or

---

[8] Notably, neither Texas nor Louisiana has taken action to revoke any of the Planned Parenthood defendants' licenses. Accordingly, those providers continue to furnish services to private-pay patients in both States.

properly bill for covered services, violates the free choice of provider requirement. Costello Decl. ¶ 10.

The Social Security Act, which authorizes the Medicaid program, does not generally treat affiliated providers as a single entity. Instead, the Social Security Act separately prescribes the scenarios under which the conduct of one affiliated person or entity may be imputed to another. *See, e.g.*, 42 U.S.C. § 1320a-7(b)(8) (permitting the Secretary to exclude "[e]ntities controlled by a sanctioned individual" from federal healthcare programs); 42 U.S.C. § 1320a-7(b)(15) (permitting exclusion of "[i]ndividuals controlling a sanctioned entity"); *see also* 42 U.S.C. § 1395cc(j)(5) (requiring providers applying to participate in Medicare to disclose "any current or previous affiliation" with excluded providers or providers with uncollected debt or a payment suspension and permitting the Secretary to deny an enrollment application of such an affiliated provider if the Secretary determines that such affiliation "poses an undue risk of fraud, waste, or abuse"); 42 U.S.C. § 1396a(kk)(3) (mandating that states require Medicaid providers to comply with the same disclosure provisions applicable to Medicare providers under § 1395cc(j)(5)).

Federal regulations further confirm that affiliated entities are not generally treated as a single entity under the Social Security Act. Under 42 U.S.C. § 1396a(a)(39) and implementing regulations, States are required to terminate the enrollment of any "individual or entity" that has had its enrollment terminated for cause by another State or by Medicare. Rather than extending this requirement to affiliates of terminated entities, however, federal regulations have limited it to situations in which the same entity has been terminated. 42 C.F.R. § 455.416(c). There may be circumstances under which States or the Secretary may properly ignore corporate separateness, such as in the case of successor or principal liability, or when a court could pierce the corporate veil. But in the absence of specific evidence supporting a determination that affiliates are so

9

indistinct from each other that allegedly disqualifying conduct of one affiliate must necessarily be imputed to the others, mere affiliation is not sufficient to override the free choice of provider requirement.

        Respectfully submitted,

        BRIAN M. BOYNTON
        PRINCIPAL DEPUTY ASSISTANT
        ATTORNEY GENERAL

        LEIGHA SIMONTON
        UNITED STATES ATTORNEY

        /s/ *Kenneth G. Coffin*
        KENNETH COFFIN
        Assistant United States Attorney
        Texas Bar No.
        1100 Commerce Street, Third Floor
        Dallas, Texas 75242
        Telephone:  214-659-8600
        Facsimile:   214-659-8807
        Email: kenneth.coffin@usdoj.gov

        JAMIE A. YAVELBERG
        ANDY MAO
        KIMBERLY I. FRIDAY
        Attorneys, Civil Division
        U.S. Department of Justice
        P.O. Box 261, Ben Franklin Station
        Washington, DC 20044
        Telephone:  202-451-7655
        Facsimile:  202-307-6364
        Email:  kimberly.i.friday@usdoj.gov

        Attorneys for the United States of America

<u>Certificate of Service</u>

On February 21, 2023, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ *Kenneth G. Coffin*
Kenneth G. Coffin
Assistant United States Attorney