**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| United States of America | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| The State of Texas | § | CIVIL ACTION NO. 2:21-CV-00022-Z |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| The State of Louisiana | § | |
| *ex rel.* ALEX DOE, Relator, | § | Date:      February 21, 2023 |
| | § | |
| _Plaintiffs_, | § | |
| v. | § | |
| Planned Parenthood Federation of America, | § | |
| Inc., Planned Parenthood Gulf Coast, Inc., | § | |
| Planned Parenthood of Greater Texas, Inc., | § | |
| Planned Parenthood South Texas, Inc., Planned | § | |
| Parenthood Cameron County, Inc., Planned | § | |
| Parenthood San Antonio, Inc., | § | |
| | § | |
| _Defendants_. | § | |
| | § | |

**SECOND SUPPLEMENTAL APPENDIX IN SUPPORT OF**
**AFFILIATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

ARNOLD & PORTER KAYE SCHOLER LLP

Tirzah S. Lollar
Tirzah.Lollar@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.5000
Fax: +1 202.942.5999

| DATE | DOCUMENT NAME | PAGE NO. |
|---|---|---|
| Feb. 17, 2017 | Tex. Mot., Dkt. 99, *PPGC v. Smith*, 1:15-cv-01058-LY (W.D. Tex.) | App. 885-96 |
| Oct. 14, 2015 | La. Mot., Dkt. 53-1, *PPGC v. Kleibert*, No. 3:15-cv-565 (M.D. La.) | App. 897-921 |
| Oct. 16, 2015 | Excerpts of Hr'g Tr., Dkt. 59, *PPGC v. Kleibert*, No. 3:15-cv-565 (M.D. La.) | App. 922-23 |
| Jan. 8, 2016 | La. Br., Dkt. 22-2, Kliebert v. PPGC, 15-30987 (5th Cir.) | App. 924-91 |
| Dec. 6, 2022 | Excerpts of Rule 30(b)(6) Deposition of Texas Health and Human Services Commission (HHSC) and the State of Texas (Zalkovsky) | App. 992-93 |
| Dec. 7, 2022 | Excerpts of Rule 30(b)(6) Deposition of Texas Health and Human Services Commission (HHSC) and the State of Texas (Goldstein) | App. 994-95 |
| Mar. 9, 2022 | Defendants' Rule 26 Disclosures | App. 996-1004 |
| Aug. 25, 2022 | Defendants' Supplemental Initial Disclosures | App. 1005-12 |
| Nov. 22, 2022 | Affiliate Defendants' Production of Documents | App. 1013-14 |
| n/a | Production Download Report | App. 1015 |
| Dec. 2, 2022 | Defendants' Fifth Supplemental Rule 26 Disclosures | App. 1016-19 |
| Jul. 1, 2022 | Texas's Answers to Affiliate Defendants' First Set of Interrogatories | App. 1020-45 |

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| PLANNED PARENTHOOD OF | § | |
| GREATER TEXAS FAMILY PLANNING | § | |
| AND PREVENTATIVE HEALTH | § | |
| SERVICES, INC., et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No.1:15-cv-01058-SS |
| v. | § | |
| | § | |
| CHARLES SMITH, et al., | § | |
| | § | |
| Defendants. | § | |

---

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

---

Aside from using their response as yet another opportunity to repeat their irrelevant and tired arguments as to the merits of the case, Plaintiffs' arguments against the actual motion at issue—Defendants' motion to dismiss—are incorrect. Plaintiffs' complaint is insufficient to state a claim under the Equal Protection Clause of the Fourteenth Amendment, and the Provider Plaintiffs' claim under 42 U.S.C. § 1396a(a)(23) should also be dismissed because there is no private right of action for providers under that provision of the Medicaid Act.

**I.     Plaintiffs Fail to Assert a Cognizable Claim for Equal Protection.**

**A.     Plaintiffs have not pleaded a valid claim under a class-of-one theory, and they have not properly pleaded any other basis for their equal protection claim.**

1

Perhaps in recognition of their pleading deficiency, Plaintiffs now attempt to recreate their bare-bones equal protection claim as based on the exercise of fundamental rights—namely, their provision of abortions and speech advocating for abortion rights. But that is not what they pleaded.  In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court "may not look beyond the pleadings." *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). There is no allegation in Plaintiffs' amended complaint that bases their equal protection claim on their exercise of fundamental rights, nor did Plaintiffs point the Court to one in their response.[1] Thus, their pleaded claim is properly viewed as a class-of-one claim, which they cannot sustain.

Plaintiffs first argue that their claim cannot be based on a class-of-one theory because they are not "one." Setting aside the parties' fundamental disagreement on that point for current purposes, Plaintiffs did not allege that they are members of a suspect class.[2] The amended complaint also does not allege that Plaintiffs were

---

[1] There was no allegation in the Amended Complaint that the Individual Plaintiffs have a cause of action under the Equal Protection Clause.  There were no allegations relating to any action taken against the Individual Plaintiffs by the Defendants. Plaintiffs appear to concede that. See Pls. Resp. Mot. Dismiss at 5 ("Plaintiffs have more than sufficiently pleaded that Defendants singled out the Provider Plaintiffs from all other Medicaid providers in the state…"); *see also* Pls. Resp. Mot. Dismiss at 6 (defining the supposed "class" as a "class of *entities* being singled out by Defendants" (emphasis added)). Thus, the rest of the discussion referring to "Plaintiffs" refers to the Planned Parenthood entities unless otherwise indicated.

[2] Plaintiffs' claim to be politically unpopular is transparently false, given that they receive half a billion dollars in government funding every year. *See* https://www.plannedparenthood.org/files/2114/5089/0863/2014-2015_PPFA_Annual_Report_.pdf at 33 ($553 million in 2014-2015). Merely suffering political opposition does not grant Plaintiffs membership in a suspect class and does not state a claim.

2

App.0886

treated differently based on the exercise of a fundamental right. That they believe they are members of a class—of three instead of one—makes no difference for purposes of the class-of one theory. The "one" in "class of one" is simply a term of art, and does not legally function to limit claims based on a class-of-one theory to merely *one* plaintiff. *See, e.g., Enquist v. Or. Dep't of Agric.*, 553 U.S. 591, 594 (2008) (an Equal Protection claim based on a class-of-one theory is simply one where there is "no assertion that the different treatment was based on the employee's membership in any particular class").

The Equal Protection Clause functions to prohibit differential treatment based on a suspect class or the exercise of a fundamental right without a compelling or substantial government interest, depending on the type of classification. Absent classification on either of those two grounds, the Equal Protection Clause merely prohibits arbitrary governmental classification without a rational basis. That is what is known as the class-of-one theory. *Id.* at 601-02. When the cases discuss discrimination based on membership in a "particular class", they mean a *suspect* class. *See e.g. id.* at 601 (citing *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979), which involved a claim of sex discrimination, as an example of an equal protection case where plaintiffs allege they "have been arbitrarily classified as members of an 'identifiable group'").

As the Supreme Court explained in *Enquist*, however, the class-of-one claim is limited to circumstances where there is a "clear standard against which departures, even for a single plaintiff, could be readily assessed." *Id.* at 603. In situations involving state action featuring "discretionary decisionmaking based on a vast array

3

App.0887

of subjective, individualized assessments," such as a state's decision to retain a particular contractor, a class-of-one claim is not cognizable because it would "undermine the very discretion that state officials are entrusted to exercise." *Id; Integrity Collision Ctr. v. City of Fulshear*, 837 F.3d 581 (5th Cir. 2016) (extending *Engquist* to the context of the state's discretionary authority in managing its contractors).

Contrary to Plaintiffs' assertion, states have discretion to exclude providers and decide whether or not a particular Medicaid provider is "qualified" for purposes of 42 U.S.C. § 1396a(a)(23). The Medicaid regulations recognize a state's authority to exclude a Medicaid provider as a state contractor "for any reason or period authorized by State law," 42 C.F.R. § 1002.2(b), and allow states to set "reasonable standards relating to the qualifications of providers." 42 C.F.R. § 431.51(c)(2). This expressly contemplates states filling in any gaps in the program's administration not addressed by the federal statutes and is exactly how programs based on cooperative federalism are designed to work.

In terms of § 1396a(a)(23), the Medicaid Act does not define "qualified." *Planned Parenthood Gulf Coast, Inc. v. Gee*, 837 F.3d 477, 492 (5th Cir. 2016). While *Gee* held that a state cannot terminate a Medicaid provider for reasons unrelated to their qualifications, it was clear in holding that a state has the authority to both make determinations regarding qualifications as well as to terminate unqualified providers. *Id.* According to Plaintiffs' argument, states would *never* be permitted to exclude a provider from Medicaid, but that is plainly inconsistent with the law.

4

Moreover, *Gee*'s definition of "qualified" is far from the "clear standard against which departures, even for a single plaintiff, could be readily assessed." *Gee* defined "qualified" for purposes of § 1396a(a)(23) as being capable of providing services in a "professionally competent, safe, legal, and ethical manner." *Id*. While what is "legal" may be fairly concrete (though in some circumstances can be reasonably debatable), the rest of the standard—professional competence, safety, and ethics—is certainly more fluid and involve a "subjective, individualized assessment" involving discretion. Thus, this is exactly the type of situation *Enquist* contemplated when it held that a plaintiff does not have a cognizable equal protection claim in situations where the government has discretion. Accordingly, Plaintiffs' equal protection claim should be dismissed.

> **B.** **Even if Plaintiffs could make out a cognizable class-of-one claim, they failed to include specific allegations of differential treatment compared to similarly situated entities, and there is a rational basis for OIG's actions.**

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to state a claim under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint does not suffice if it tenders only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). To state their equal protection claim, Plaintiffs failed to allege anything more particular than "Defendants' actions violate Plaintiffs' rights by singling them out for unfavorable treatment without adequate justification" and that Defendants' bases for termination are "highly irregular." Am. Compl. at ¶¶ 52, 89. But failing to allege a single example of a similarly situated

5

entity being treated more favorably is fatal to their claim. In the class-of-one context, there must be allegations of more favorable treatment to a party with high similarity to the plaintiff. *See Jennings v. City of Stillwater*, 383 F.3d 1199, 1210 (10th Cir. 2004). Plaintiffs continually state that "Defendants have identified no other instance" in which it has terminated a provider under a similar circumstance, but it is not Defendants' burden to prove Plaintiffs' case, nor do Defendants have to provide *anything* at the 12(b)(6) stage. The only question is whether the live pleading is sufficient to state a claim, and it is not.

In light of the weakness of their pleading, Plaintiffs attempt to bootstrap their claim to claims made by other Planned Parenthood entities in other states, arguing that their claims in those cases were not dismissed, so their claims here should survive. Aside from the fact that this is contradictory to Plaintiffs' oft-repeated—and incorrect—claim that all Planned Parenthood entities are completely separate, it is also an ineffective argument because those cases involve entirely different facts and different claims. *Planned Parenthood of Cent. N.C. v. Cansler*, for example, was a decision at the summary judgment phase in which the state failed to provide any evidence justifying its decision to withhold certain funding from the state other than its disagreement with Planned Parenthood's pro-choice viewpoint. 877 F. Supp. 2d 310, 328 (M.D.N.C. 2012). That is clearly not the case here, as Defendants supported their termination of Planned Parenthood's Medicaid provider agreements *for cause* with the video evidence as well as the evidence from the House Select Investigative Panel. Am. Compl. ¶¶49, 51.

App.0890

*Planned Parenthood Greater Memphis Region v. Dreyzehner* is similarly distinguishable, as the court stated that the state in that case "failed to offer any rationale *at all* for its decision to terminate Planned Parenthood's contracts," 853 F. Supp. 2d 724, 737 (M.D. Tenn. 2012) (emphasis added). The other case cited by Plaintiffs is distinguishable on the same basis. *See Planned Parenthood of Kan., Inc. v. City of Wichita*, 729 F. Supp. 1282, 1291 (D. Kan. 1990) ("The record fails to reveal that at the time of the resolution the defendants even made the pretense of attempting [to find] a rational distinction between Planned Parenthood and other family planning organizations"). The plaintiffs in *Dreyzehner* also supported their equal protection claim with a dozen examples of similarly situated entities given more favorable treatment, which Plaintiffs have not done here. *Id.*; *see also Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1257 n.5 (10th Cir. 2016) (noting same).

Importantly, at the 12(b)(6) juncture, courts will dismiss a plaintiff's class-of-one equal protection claim where there is a facially valid, rational explanation for the alleged differential treatment. *See, e.g., XP Vehicles, Inc. v. Dept. of Energy*, 118 F. Supp. 3d 38, 78 (D.C. Cir. 2015) (finding plaintiffs' complaint did not contain sufficient allegations to survive defendant's 12(b)(6) motion where there was no other similarly situated party and there was a rational basis for the differential treatment); *Miller v. City of Monona*, 784 F.3d 1113, 1121 (7th Cir. 2015) (affirming district court's dismissal of plaintiff's complaint on defendant's 12(b)(6) motion where there was a rational basis for the challenged action); *Jabary v. City of Allen*, 547 Fed. Appx. 600, 605 (5th Cir. 2013) (dismissing plaintiff's equal protection claim where

7

App.0891

government had an "obvious alternative explanation" for revocation of certificate); *Louisiana Cmty. Dev. Capital Inv. Fund, Inc.*, 2015 WL 1737954, \*9 (W.D. La. Mar. 16, 2015) (dismissing plaintiffs' class-of-one equal protection claim on a Rule 12(b)(6) motion where stated explanation for differential treatment was rational); *Dennis Melancon, Inc. v. City of New Orleans*, 2014 WL 1117881, \*7 (E.D. La. Mar. 19, 2014) (dismissing plaintiff's equal protection claim on a 12(b)(6) motion where local ordinances were rationally related to a legitimate government interest); *Bennet v. City of New Orleans*, 2004 WL 60316, \*5 (E.D. La. Jan. 9, 2004) (dismissing plaintiffs' equal protection claims on a Rule 12(b)(6) motion because the city's actions were rationally related to the city's interests).

Here, the Provider Plaintiffs' Medicaid agreements were terminated for cause, based on the reasons and the evidence stated in the final notice of termination. Am. Compl. at ¶¶49, 51. Failure to adhere to medical and ethical standards is a rational basis for terminating a provider's Medicaid agreement, no matter who the provider is. Because Plaintiffs have failed to allege any evidence of better treatment of similarly situated individuals—other entities found in violation of medical and ethical standards by the state—and because the proffered reason for the challenged treatment is rational, Plaintiffs' equal protection claim should be dismissed.

## II.   The Provider Plaintiffs Have No Private Right of Action Under Section 1396a(a)(23).

As set forth in Defendants' Motion to Dismiss, the Provider Plaintiffs are not the intended beneficiaries of the free-choice-of-provider provision and therefore do not have a private right of action. The Fifth Circuit in *Gee* held only that the free-choice-

8

of-provider provision creates a private right of action that the *Individual Plaintiffs*, not the *Provider Plaintiffs*, may enforce through 42 U.S.C. § 1983. Neither the Fifth Circuit nor any other case cited by Plaintiffs has held that the *Provider Plaintiffs* may enforce the free-choice-of-provider provision.

Plaintiffs' response to Defendants' Motion to Dismiss ignores the form and substance of their own pleadings, where they misleadingly conflated the claims being alleged by the Provider Plaintiffs with those being alleged by the Individual Plaintiffs. In other words, in Plaintiffs' amended complaint, the Provider Plaintiffs attempt to assert their own claim—not a third party claim on behalf of their patients—for violations of the free-choice-of-provider provision. The law does not support such a claim being brought by the Provider Plaintiffs because they are not the intended beneficiaries of the free-choice-of-provider provision:

> The notion that respondents have a right to sue derives, perhaps, from the fact that they are beneficiaries of the federal-state Medicaid agreement . . . We doubt, to begin with, that providers are *intended beneficiaries* (as opposed to mere incidental beneficiaries) of the Medicaid agreement, which was concluded for the benefit of the infirm whom the providers were to serve, rather than for the benefit of the providers themselves. . . . Our precedents establish that a private right of action under federal law is not created by mere implication, but must be "unambiguously conferred."

*Armstrong v. Exceptional Child Ctr., Inc.*, 135 S.Ct. 1378, 1387-88 (2015) (emphasis added) (citations omitted). To the extent that the Provider Plaintiffs are attempting to assert a cause of action under the free-choice-of-provider provision, their claim must be dismissed.

9

App.0893

The Provider Plaintiffs appear to concede that they cannot bring this claim to vindicate their own rights. *See* Pls. Resp. Mot. Dismiss at 12-13. But they continue to argue that they can bring a claim on behalf of their patients based on the doctrine of third party standing. Third party standing is irrelevant, however, because the Individual Plaintiffs—patients of the Provider Plaintiffs—are parties to this lawsuit. The cases cited by Plaintiffs in their response all involve claims alleged by providers where no individual patient or Medicaid recipient was a plaintiff in the case. In other words, in every case cited where courts have allowed abortion providers or other Medicaid providers to assert third-party claims on behalf of their patients, the patients were not themselves a party. Third party standing, therefore, is unnecessary and is not supported by any of the cases cited by Plaintiffs. Thus, there is no basis to allow any claim under 42 U.S.C. § 1396a(a)(23) by the Provider Plaintiffs.

## CONCLUSION

Defendants respectfully request that the Court grant Defendants' Motion to Dismiss.

> Respectfully submitted.
>
> KEN PAXTON
> Attorney General of Texas
>
> JEFFREY C. MATEER
> First Assistant Attorney General
>
> BRANTLEY STARR
> Deputy First Assistant Attorney General
>
> JAMES E. DAVIS
> Deputy Attorney General for Civil
> Litigation

App.0894

ANGELA V. COLMENERO
Chief, General Litigation Division

/s/ Andrew B. Stephens
ANDREW B. STEPHENS
Texas Bar No. 24079396
AMANDA J. COCHRAN-MCCALL
Texas Bar No. 24069526
ADAM A. BIGGS
Texas Bar No. 24077727
Assistant Attorneys General

Office of the Attorney General
300 West 15th Street
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2120 (phone)
(512) 320-0667 (fax)

*Attorneys for Defendants*

11

**CERTIFICATE OF SERVICE**

I certify that on February 17, 2017, this document was served through the

Court's CM/ECF Document Filing System or through e-mail, upon the following

counsel of record:

Thomas H. Watkins
Husch Blackwell LLP
111 Congress Ave., Suite 1400
Austin, TX  78701
(512) 472-5456
(512) 479-1101 (fax)

Jennifer Sandman
Mai Ratakonda
Planned Parenthood Federation of America
434 W. 33rd Street
New York, NY  10001
212-261-4584
212-247-6811 (fax)

Richard Muniz
Alice Clapman
Planned Parenthood Federation of America
1110 Vermont Ave., NW, Suite 300
Washington, DC  20005
202-973-4997
202-296-3480 (fax)

/s/ Andrew B. Stephens
ANDREW B. STEPHENS
Assistant Attorney General

12

App.0896

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

PLANNED PARENTHOOD GULF
COAST, INC.; JANE DOE #1; JANE
DOE #2; AND JANE DOE #3,                                        NO. 3:15-cv-00565-JWD-SCR
                                    *Plaintiffs,*

v.

KATHY KLIEBERT, SECRETARY,
LOUISIANA DEPARTMEN OF HEALTH AND
HOSPITALS,
                                    *Defendant*

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

NOW INTO COURT, through undersigned counsel, comes Defendant Kathy Kliebert in her official capacity as Secretary of the Louisiana Department of Health and Hospitals, who, after being served with a copy of Plaintiffs' Complaint (Doc. 1) and First Amended Complaint (Doc. 43) (collectively, the "Complaint"), files this Memorandum in Support of her contemporaneously filed Motion to Dismiss.  Defendant seeks dismissal of all claims brought in this lawsuit on the grounds that Plaintiffs fail to present a justiciable case or controversy (FED. R. CIV. P. 12(b)(1)) and fail to state claims as to which relief can be granted (FED. R. CIV. P. 12(b)(1)).

## I.     PROCEDURAL POSTURE

This lawsuit originally stemmed from notice sent by the Louisiana Department of Health and Hospitals ("LDHH") to Planned Parenthood Gulf Coast ("PPGC") on August 3, 2015, providing that, effective thirty (30) days from receipt of the notice, PPGC's four Louisiana Medicaid provider agreements would be terminated.  The notices of termination were provided pursuant to La. R.S. § 46:437.11, subsection D(1), which allows a provider agreement to be terminated by either party thirty (30) days after receipt of notice.

1

The August 3rd notices were then rescinded and PPGC was notified of this rescission by letters dated September 14, 2015. Letter from LDHH to Judge deGravelles, Doc. 46-1 at 27. Thereafter, on September 15, 2015, LDHH notified PPGC that DHH would be terminating/revoking PPGC's four Louisiana Medicaid provider agreements based on an investigation of PPGC and in accordance with Title 50 of the Louisiana Administrative Code and the Louisiana Revised Statutes. *See* Letters from DHH to PPGC dated September 15, 2015, Doc. 46-1 at 38-49. The notices explained that PPGC had a right to seek an informal hearing and/or administrative appeal of the termination, both suspensive. Specifically, the notices provided, "This action will take effect following final determination, judgment, completion, withdrawal from, or termination of all administrative and/or legal proceedings in this matter." *Id.* To date, there has been no final determination.

## II.     MEDICAID:  A COOPERATIVE FEDERAL-STATE PROGRAM

The Medicaid program, created by Title XIX of the Social Security Act, is a form of cooperative federalism. It is a program "through which the federal government provides financial aid to states that furnish medical assistance to eligible low-income individuals." *S.D. ex rel. Dickson v. Hood*, 391 F.3d 581 (2004). States which participate in the program must comply with the Medicaid Act's requirements and regulations imposed by the Secretary of Health and Human Services ("HHS"). *Id.* (citing *Evergreen Presbyterian Ministries, Inc. v. Hood*, 235 F.3d 908, 915 (5th Cir. 2000). To obtain federal funding, the state must submit a "State plan for medical assistance." 42 U.S.C.A. § 1396a. "The State plan is a comprehensive written statement . . . describing the nature and scope of its Medicaid program. . . ." 42 C.F.R § 420.10 (2010).[1]

---

[1] Louisiana's State Medicaid Plan was approved by the Center for Medicaid Services ("CMS"). CMS is the agency within the Department of Health and Human Services which administers Medicaid. *Hood*, 391 F.3d at 586 (citing *Louisiana v. United States Dep't of Health and Human Servs.*, 905 F.2d 877, 878 (5th Cir. 1990).

App.0898

Providers may be excluded from the Medicaid program by either the Secretary of HHS or the states themselves. The Social Security Act contains mandatory grounds upon which the Secretary of HHS must exclude providers from a federal health care program, including Medicaid. *See Guzman v. Shewry*, 552 F.3d 941 (9th Cir. 2008). Likewise, the Social Security Act contains discretionary grounds upon which the Secretary may exclude providers. *Id.; see also,* 42 U.S.C.A. § 1320a-7. Additionally, Part 1002 of the Medicaid regulations provide for "State-Initiated Exclusions from Medicaid." Section 1002.2 recognizes a state's authority to exclude a Medicaid provider;

> **General authority.** (a) In addition to any other authority it may have, a State may exclude an individual or entity from participation in the Medicaid program for any reason for which the Secretary could exclude that individual or entity from participation in the Medicare, Medicaid and other Federal health care programs under sections 1128, 1128A or 1866(b)(2) of the Social Security Act.
> (b) Nothing contained in this part should be construed to limit a State's own authority to exclude an individual or entity from Medicaid for any reason or period authorized by State law.

As part of the state-initiated provider exclusion process, the federal regulations require state Medicaid agencies, such as LDHH, to allow the provider "'the opportunity to submit documents and written argument against' such exclusion and 'any additional appeals rights that would otherwise be available under procedures established by the State.'" *Guzman*, 552 F.3d at 951 (quoting 42 C.F.R. § 1002.213). In other words, federal law requires that a state provide a state-determined appeals process.

Louisiana law sets forth several circumstances under which a provider may be terminated or excluded from participating in Medicaid. La. R.S. § 46:437.11; La. Admin. Code § 50:4147 (also referred to as Surveillance and Utilization Review Subsystem or "SURS"). Those reasons include but are not limited to failure to comply with federal or state laws and regulations, failure

3

to comply with the Medicaid provider agreement, entering into a settlement agreement under the Federal False claims Act, and making false or misleading statements.  *See* La. Admin. Code § 50:4147.

### III.    OVERVIEW OF THE LOUISIANA ADMINISTRATIVE APPEAL PROCESS

All Louisiana Medicaid providers must sign a provider agreement with the State of Louisiana providing, among other things, that they must abide by all federal and state laws, rules and regulations. La. Admin. Code § 50:10501; La. R.S. § 46:437.11. This includes the administrative process when LDHH seeks to terminate a provider agreement.  When LDHH seeks to terminate a provider agreement, the provider is given written notice of the adverse action with the initial opportunity to seek an informal reconsideration.  La. Admin. Code §§ 50:4161, 4203. As part of the informal reconsideration, providers are afforded the opportunity to seek more specific information as to the reasons for termination and are able to put forth evidence showing that termination was improper. La. Admin. Code § 50:4203.  Providers also have the opportunity to file a formal administrative appeal.  La. Admin. Code § 50:4211.  If an administrative appeal is filed, the actions of LDHH are *suspended* and a full evidentiary hearing, complete with the opportunity to conduct discovery, is held by an independent Division of Administrative Law Judge to determine whether adequate reasons exist for termination.  La. Admin. Code §§ 50:4169, 4211; *see also,* La. R.S. § 49:956. Because administrative review is suspensive, the failure to request review is tantamount to acceptance of the termination.

### IV.    LAW AND ARGUMENT

**A.  The Court Lacks Subject Matter Jurisdiction.**

A challenge to subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1) may be raised at any time, by any party, or by the court *sua sponte.  Giles v. NYLCare Health Plans, Inc.,* 172

F.3d 332, 336 (5th Cir. 1999). Whenever a FED. R. CIV. P. 12(b)(1) challenge is raised in conjunction with another Rule 12(b) motion, "the court should consider the jurisdictional attack before addressing any attack on the merits."  *Id.*

The burden of proof lies with the party invoking the court's jurisdiction.  *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001).  "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Id.*

1. *Plaintiffs' claims are not yet ripe for consideration; and thus, there is no case or controversy.*

Federal courts, pursuant to Article III, may only decide actual cases or controversies. *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 714-15 (5th Cir. 2012) (citing *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 833 F.2d 583, 586 (5th Cir.1987)).  Accordingly, "a court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical."  *Id*.  As recognized by the Fifth Circuit:

> Article III of the United States Constitution provides that federal courts have the power to decide only actual cases or controversies. The justiciability doctrines of standing, mootness, political question, and ripeness "all originate in Article III's 'case' or 'controversy' language ...." The ripeness doctrine also is drawn "'from prudential reasons for refusing to exercise jurisdiction.'" The ripeness doctrine's "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements ...."

*Choice Inc. of Texas*, 691 F.3d at 714-15 (internal citations omitted). The Fifth Circuit has repeatedly recognized that "[a] ripeness inquiry is often required when a party is seeking pre-enforcement review of a law or regulation."  *Roark & Hardee LP v. City of Austin*, 522 F.3d 533,

at 544 (5ᵗʰ Cir. 2008) (citing *Poe v. Ullman,* 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961); *Lake Carriers' Ass'n v. MacMullan,* 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972))

To determine whether claims are moot, a court must "evaluate (1) the fitness of the issues for judicial resolution, and (2) the potential hardship to the parties by declining court consideration." *Lopez v. City of Houston,* 617 F.3d 336, 342 (5ᵗʰ Cir 2010), *Choice Inc. of Texas,* 691 F.3d at 714-15 (citing *Abbott Labs v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed. 2d 781 (1967)). Generally, a case is ripe if purely legal questions remain and, conversely, not ripe "if further factual development is required." *Id.* (citing *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 833 F.2d 583, 586. Nevertheless, if an issue is purely legal, "the plaintiff must show some hardship in order to establish ripeness." *Id.* (citing *Cent. & S.W. Servs., Inc. v. EPA,* 220 F.3d 683, 690 (5th Cir. 2000). "In this sense, the doctrines of ripeness and standing 'often overlap in practice, particularly in an examination of whether a plaintiff has suffered a concrete injury." *Lopez,* 617 F.3d at 342 (citing *Texas v. United States*, 497 F.3d 491, 498 (5ᵗʰ Cir. 2007), *cert denied*, 55 U.S. 811 (2008)). "If the purported injury is 'contingent [on] future events that may not occur as anticipated, or indeed may not occur at all,' the claim is not ripe for adjudication." *Id.* (citing *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 580-81 (1985)).

### a.   Plaintiffs' claims are not fit for judicial resolution.

This lawsuit is not ripe for adjudication because Plaintiffs have suffered no injury and further procedural and factual development is required, as demonstrated by Plaintiffs' due process claim (challenging the sufficiency of a ***suspended*** process that has barely begun) and their request to conduct expedited discovery in this proceeding. To be clear, this jurisdictional challenge is based on ripeness, not exhaustion. *See Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson* City, 473 U.S. 172, 191-92 (1985) (recognizing that the judicial doctrine of

exhaustion of administrative remedies is conceptually distinct from the question of whether an "initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury.")  *see also* Rush *v. Barham*, -- Fed. Appx. --, 2015 WL 4467848 (5th Cir. 2015) (*per curiam*) (unpublished opinion affirming dismissal by Judge Brady based on lack of ripeness and noting that plaintiffs "confuse ripeness with an exhaustion requirement"), and *Alvin v. Suzuki*, 225 F.3d 107, 116 (3rd Cir. 2000) ("exhaustion … is analytically distinct from the requirement that the harm alleged has occurred …").

Plaintiffs' argument that their rights will be negatively impacted (in any way) "without an order from this Court prior to the morning of October 19, 2015" begs for an advisory opinion, which Plaintiffs can then use to decide their course of action.  Two facts are certain:  (1) Plaintiffs have not yet suffered any injury, and (2) Plaintiffs will not suffer any injury unless and until a decision is rendered at the end of the administrative review process to affirm the termination.  No doubt, Plaintiffs' rights may be impacted if PPGC inexplicably decides to forego the review process.  But that contingency and how it may alter the rights of the parties are not before the Court.

*Rush*, although unpublished, is instructive. In that case, the Fifth Circuit affirmed a decision by this Court (USDC No. 3:13-CV-723) dismissing a claim under 42 U.S.C. §1983 because further factual development was required to adjudicate the Plaintiffs' claims. In particular, there was a pending state court proceeding (following an administrative proceeding) that may produce "fact findings relating to the issues in this suit."  For example, according to the Fifth Circuit, the plaintiffs complained about the lack of a hearing, yet there was a pending proceeding in state court addressing that same issue. Further, the court noted that there may be no basis for a constitutional claim if the agency orders are nullified.

*Monk v. Huston*, 340 F.3d 279 (5th Cir. 2003), is further instructive.  In that case, the district court denied a motion to dismiss and entered a preliminary injunction enjoining state officials from considering permit applications relating to a landfill.  The Fifth Circuit reversed on ripeness, reasoning that "[e]ven assuming plaintiffs have identified constitutionally protected property interests that would be harmed by approval of the permit application, they have not suffered any deprivation, because the [state agency] permitting process has not yet run its course.  The application may or may not be granted, and thus plaintiffs may or may not be harmed." *Id*. at 282. *See also Pillar Panama v. Delape*, 326 Fed.Appx. 74 (5th Cir. 2009) (*per curiam*) (unpublished opinion finding Lanham Act claim unripe because of uncertainty regarding property rights being adjudicated in Panama), and *Zepeda v. Boerne Independent School District*, 294 Fed. Appx. 834 (5th Cir. 2008) (unpublished opinion finding claim against enrollment decision of school district both moot and unripe "when filed").

In the instant matter, PPGC is asserting a due process violation while simultaneously hinting that it may voluntarily elect ***not*** to participate in the process about which it complains.  The Court should not help PPGC develop its strategy by previewing its inclinations about legal issues that are not properly before the Court.

### b.  Plaintiffs will suffer no hardship by withholding judicial review.

The second factor in the test for ripeness is the hardship on the parties by withholding judicial review.  *Lopez,* 617 F.3d at 342.  The party seeking to invoke jurisdiction has the burden of demonstrating hardship.  *Choice Inc. of Texas*, 691 F.3d at 715-16.  That factor cannot be satisfied here because the review process is suspensive.  PPGC omits any mention of this critical fact, despite great care by the Secretary to emphasize it in the notice letters.

8

**2.** *Plaintiffs lack standing because they have suffered no injury.*

The doctrines of ripeness and standing are closely related as both are justiciability doctrines originating in Article III.[2]  Both consider "whether the harm asserted has matured sufficiently to warrant judicial intervention."  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). Specifically, they share the "requirement that the injury be imminent rather than conjectural or hypothetical." *Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.,* 462 F.3d 219, 225 (2nd Cir. 2006).

The central focus in evaluating standing is "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Mississippi State Democratic Party v. Barbour*, 529 F.3d 538, 544-45 (5th Cir. 2008) (quoting *Warth v. Seldin,* 422 U.S. 490, 498 (1975)).  To establish standing, "a plaintiff must show: (1) it has suffered, or imminently will suffer, a concrete and particularized injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable judgment is likely to redress the injury." *Id.* (quoting *Houston Chronicle Publ'g Co. v. City of League City, Tex.,* 488 F.3d 613, 617 (5th Cir. 2007) (citation omitted)). An injury in fact is an invasion of a legally protected interest which is "actual or imminent, not conjectural or hypothetical." *Id.* (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992)).

Plaintiffs have not suffered nor are they about to suffer an "injury in fact" which is concrete and particularized, or actual or imminent.  *See American Forest and Paper Ass'n. v. U.S. EPA*, 137 F.3d 291, at 296 (5th Cir. 1998).  The termination of PPGC's provider contracts has not gone into effect.  The Jane Doe Plaintiffs have not lost their ability to seek medical services from their

---

[2] Justiciability concerns not only the standing of litigants to assert particular claims, but also the appropriate timing of judicial intervention." *Renne v. Geary,* 501 U.S. 312, 320 (1991); *see also LeClerc v. Webb,* 419 F.3d 405, 413 (5th Cir. 2005).

9

provider of choice.  That PPGC's contracts *may* be terminated or that the Jane Doe Plaintiffs may lose their ability to seek medical services of their provider of choice is speculative and insufficient to establish standing. Plaintiffs' claims should be dismissed for a lack of standing.

**B.        Alternatively, Abstention is Appropriate.**

The purpose of abstention doctrines is to preserve the balance between state and federal sovereignty: "[T]he Supreme Court [has] 'instructed federal courts that the principles of equity, comity, and federalism in certain circumstances counsel abstention in deference to ongoing state proceedings.'" *Wightman v. Texas Supreme Court*, 84 F.3d 188, 189 (5th Cir.1996) (quoting *Fieger v. Thomas,* 74 F.3d 740, 743 (6th Cir. 1996)).

*Pullman* abstention applies where the state court has not been afforded "a reasonable opportunity to pass on underlying issues of state law and to construe the statutes involved." *Harman v. Forssenius*, 380 U.S. 528, 534 (1965), citing *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941):

> In applying the doctrine of abstention, a federal district court is vested with discretion to decline to exercise or to postpone the exercise of its jurisdiction in deference to state court resolution of underlying issues of state law.  Where resolution of the federal constitutional question is dependent upon, or may be materially altered by, the determination of an uncertain issue of state law, abstention may be proper in order to avoid unnecessary friction in federal/state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication.

*Burford* abstention is appropriate where there is a "possibility of unwarranted disruption of a state administrative process."  *England v. Louisiana State Bd. of Medical Examiners*, 375 U.S. 411, 415 (1964), citing *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943).  *Burford* abstention applies if the following two factors pertain, both of which are present in this case: "First, the presence of a complex state regulatory scheme which would be disrupted by federal court review; and,

secondly, the existence of a state-created forum with specialized competence in the particular area."

"[I]n the case of *Younger* abstention, the [Supreme] Court [is] concerned with federal court interference with a state's ability to function. By blocking proceedings involving state governments, federal courts could interfere unduly with the state's ability to govern." *Royal Ins. Co. of America v. Quinn-L Capital Corp*, 3 F.3d 877, 886 n.10 (5th Cir. 1993) (citing *Younger v. Harris*, 401 U.S. 37 (1971)). *Younger* abstention "is appropriate where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings or proceedings similar to criminal proceedings, such as nuisance proceedings antecedent to a criminal prosecution." *Towson v. Crain Bros., Inc.*, No. 06-10545, 2007 WL 2402634, *1, n.2 (E.D. La. Aug. 17, 2007) (quoting *Woodward v. Sentry Select Ins. Co.*, No. 03-2481, 2004 WL 834634, at *3 (E.D.La.2004)) (internal citations omitted).

*Colorado River* abstention holds that "Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 at 814 (1976)). *Colorado River* abstention is prudential and discretionary, resting on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." 424 U.S. at 817.

Because independent and adequate state agency and judicial proceedings exist to challenge LDHH's termination of a Medicaid provider agreement, the federal court should abstain in favor of such proceedings under settled doctrines enunciated in *Railroad Comm'n of Texas v. Pullman Co, Burford v. Sun Oil Co*., *Younger v. Harris and Colorado River Conservation District v. United States.*

Although these doctrines overlap to some degree in their scope and application, the principle animating them is clear, and has obvious application to the instant case: where state administrative proceedings and judicial review afford claimants adequate opportunity to test the constitutionality of state law, and the exercise of federal jurisdiction would jeopardize state efforts to establish state policy on matters of public concern, the court should abstain from hearing the case. The operation of abstention principles has been recognized by courts in the abortion context. *See, e.g., Roe v. Rampton*, 394 F.Supp. 677 (Dist. Utah 1975). Plaintiffs should not be indulged in their attempt to invoke the jurisdiction of this Court in the absence of State agency action against them that would delineate the LDHH's interpretation of the challenged provisions, and in the presence of adequate state administrative and judicial procedures if that eventuality were to occur.

## C.  FED. R. CIV. P. 12(b)(6) requires dismissal because Plaintiffs have failed to state a claim upon which relief can be granted.

Dismissal is proper under FED. R. CIV. P. 12(b)(6) when the moving party demonstrates that the complaint fails to assert a "legally cognizable claim" upon which relief could be granted. *Ramming*, 281 F.3d at 161. The court may not look beyond the pleadings,[3] which are to be considered by the Court "in a light most favorable to the plaintiff, and the allegations contained therein are taken as true." *Id.* The pleading standard recently elucidated by the Supreme Court in

---

[3] *Sonnier v. State Farm Mutual Auto Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996); *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000).

App.0908

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129

S.Ct. 1937 (2009), has retired the "no-set-of-facts test"[4] of *Conley v. Gibson*, 355 U.S. 41 (1957),

in favor of a "plausibility" standard, which demands more than "an unadorned… accusation" of

unlawful harm. *Iqbal*, 129 S.Ct. at 1949, citing *Twombly*, 550 U.S. at 555.   Determining whether

a complaint states a plausible claim for relief is a "common sense," "context-specific task," *Iqbal,*

129 S.Ct. at 1950; and "where the well-pleaded facts do not permit the court to infer more than a

mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the

pleader is entitled to relief.'"  *Id.* (quoting FED. R. CIV. P. 8(a)(2)).

### 1. *Plaintiffs have no property interest in the Medicaid provider contracts.*

The United States Supreme Court has held that the requirements of procedural due process

apply only to the deprivation of interest encompassed by the Fourteenth Amendment's protection

of liberty and property.  "To have a property interest in a benefit, a person clearly must have more

than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He

must, instead have a legitimate claim of entitlement to it."  *Board of Regents of State Colleges v.*

*Roth*, 408 U.S. 564, 569 (1972).  "Property interests, of course, are not created by the Constitution.

Rather they are created and their dimensions are defined by the existing rules or understandings

that stem from an independent source, such as state law – rules or understandings that secure

certain benefits and that support claims of entitlement to those benefits."  *Id.*  Other Federal circuits

have consistently held that no protected property rights are implicated when states take various

actions which may be adverse to Medicaid providers.  *Senape v. Constantino,* 936 F.2d 687 (2nd

Cir. 1991).

---

[4] *See, e.g.*, *Piotrowski v. City of Houston*, 51 F.3d 512, 514 (5th Cir. 1995) (holding dismissal  warranted if it appears certain that the Plaintiffs cannot prove any set of facts in support of their claims that would entitle them to relief) (citing *Lefall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994)).

Three decisions by the Second Circuit are particularly applicable to the matter before this Court.  In *Plaza Health Laboratories, Inc. v. Perales*, the court noted that, as in this case, "the combination of rights reserved by the State with regard to Medicaid providers, **allowing DSS to terminate without cause on 30 days' notice** or to terminate or suspend immediately in certain circumstances, casts doubt on whether the provider's interest in continuing as a provider, either indefinitely or for any period without interruption, is a property right that is protected by due process." *Plaza Health Laboratories, Inc. v. Perales*, 878 F.2d 577, 691 (2nd Cir. 1989) (emphasis added).  The Second Circuit later referred to this determination in *Senape v. Constantino*, where it found the same reservation of rights by the state, saying those circumstances "convince us that our doubts in *Plaza Health* were well-founded and that **appellant has no property right to continued enrollment as a qualified provider**."  *Senape,* 936 F.2d 687, 691 (2nd Cir. 1991) (emphasis added).[5]

Likewise, the Second Circuit referred to *Plaza Health* in the *Kelly Kare, Ltd. v. O'Rourke* case. 930 F.2d 170 (2nd Cir. 1991).  *Kelly Kare* involved termination of a Medicaid provider contract without cause. While distinguishing *Plaza Health*, the holding in *Kelly Kare* was the same:  a provider has no property interest in continued participation in the Medicaid program.  *Id.* at 176. The court explained that the state laws and regulations at issue allowed the provider to be terminated without cause.  "Such vast discretion over the conferral of a governmental benefit – namely, continued, uninterrupted participation in Medicaid – is fatal to a claim of entitlement to that benefit."  *Id.*  In the present matter and in regards to a "for convenience" or a "for cause" termination, the Medical Assistance Program Integrity Law (MAPIL) statute and the LDHH rules,

---

[5] *See also, Guzman*, 552 F.3d at 953 (quoting *Erickson v. United States ex rel. Dep't of Health & Human Servs.*, 64 F.3d 858, 862 (9th Cir. 1995))  ("a provider such as Guzman, does not 'possess a property interest in continued participation on Medicare, Medicaid, or the federally-funded state health care programs.'").

including SURS cited above, give the Secretary of LDHH various reasons for which a provider

agreement may be terminated. La. R.S.  46:437.1, *et seq*; 50 La. ADC Pt I, § 4147.  This right

subjects Louisiana Medicaid providers to the same type of regulatory framework governing the

New York Medicaid providers in *Plaza Health*, *Senape* and *Kelly Kare*

 Also relevant to the State's determination is the Medicaid exclusion statute, found at 42

U.S.C.A. § 1396a(p).  That statute provides in part:

> **(p) Exclusion power of State; exclusion as prerequisite for medical assistance payments; "exclude defined**
>
> (1) *In addition to any other authority*, a State may exclude any individual or entity for purposes of participating under the State plan under this subchapter for any reason for which the Secretary could exclude the individual or entity from participation in a program under section 1320a-7, 1320a-7a, or 1395cc (b)(2) of this title [Medicare].
>
>     . . . .
>
> (3) As used in this subsection, the term "exclude" includes the refusal to enter into or renew a participation agreement <u>or the termination of such an agreement</u>.

 The First Circuit has determined that the italicized language in the Medicaid exclusion

statute ("In addition to any other authority") "permit[s] a State to exclude an entity from its

Medicaid program for any reason established by state law."  *First Medical Health Plan v. Vega-*

*Ramos*, 479 F.3d 46, 53 (1st Cir. 2007) (emphasis added).  Such a conclusion is supported by 42

C.F.R. § 1002.2 which provides, "Nothing contained in this part should be construed to limit a

State's own authority to exclude an individual or entity from Medicaid for any reason or period

authorized by State law."  As recognized by *Vega-Ramos*, "[w]hile Medicaid is a state-run

program, [the state] accepts federal Medicaid funds and thus must comply with federal Medicaid

laws."  *Id.*  In reaching its conclusion, the First Circuit quoted from the legislative history of the

Medicaid Act:

15

> The [Medicaid exclusion] statute expressly grants states the authority to exclude entities from their Medicaid programs for reasons that the Secretary could use to exclude entities from participating in Medicare. But it also preserves the state's ability to exclude entities from participating in Medicaid under 'any other authority.' The legislative history clarifies that this 'any other authority' language was intended to permit a state to exclude an entity from its Medicaid program for *any* reason established by state law. The Senate Report states:
>
>> The Committee bill clarifies current Medicaid Law by expressly granting States the authority to exclude individuals or entities from participation in their Medicaid programs for any reason that constitutes a basis for an exclusion from Medicare. . . . *This provision is not intended to preclude a State from establishing, under State law, any other bases for excluding individuals or entities from its Medicaid program.*

*Id.* (emphasis by the court) (quoting S. Rep. 100-109, reprinted in 1987 U.S.C.C.A.N. at 700).

Pursuant to 42 C.F. R 1002.100, and the Medicaid Exclusion statute discussed above, it is clear that a state agency, such as LDHH, may impose broader sanctions against a provider if it has authority to do so under State law. Pursuant to state law, Louisiana Medicaid provider agreements can be terminated for a variety of reasons. Plaintiffs have not argued that LDHH is without authority to terminate provider agreements. The LDHH has stated several such reasons in its termination letters. Thus, by clear application of federal regulation, in concert with State authority, LDHH has the authority to proceed against PPGC.

In short, Medicaid providers do not have a property right in their Medicaid provider agreement and the income stream that it generates. Thus, PPGC has suffered no constitutional deprivation.

**2. *Even if Plaintiffs have a property interest, due process has been satisfied*.**

Even if Plaintiffs have a property interest, which they do not, due process has been satisfied. Due Process requires that a deprivation of life, liberty, or property "be preceded by notice and

16

opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313 (1950).  "The root requirement" of the Due Process Clause is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)).  Accordingly, the essence of due process is notice plus an opportunity to be heard.

The state plan in conjunction with the Louisiana Revised Statutes and Administrative Code, as set forth in previous sections of this memorandum, provide a detailed procedure by which providers may seek suspensive review of state adverse agency decisions.  The procedure complies with the mandates of due process as well as the requirements of 42 C.F.R. § 1002.210; it includes notice given by DHH as well as the opportunity to conduct discovery, participate in informal hearing and then appeal adverse decisions following the hearing.  In compliance with this process, PPGC was given notice that unless it requested an informal hearing or administrative appeal, its provider contracts would terminate thirty (30) days after notice of termination.  (*See* Letters from DHH to PPGC dated September 15, 2015, Doc. 46-1 at 38-49).

Additionally, the Jane Doe Plaintiffs cannot complain that their due process rights have been offended by virtue of not being given the opportunity to choose PPGC as its health care provider.  First and foremost, PPGC's provider agreements are still effective.  Thus, the Jane Doe Plaintiffs have suffered no interruption in their services.  Second, as recognized in *Kelly Kare* when Medicaid recipients urged a similar due process argument:

> [A] Medicaid recipient's freedom of choice rights are necessarily dependent on a provider's ability to render services. No cognizable property interest can arise in the Medicaid recipient unless the provider is both qualified and participating in the Medicaid program. When the source of government benefits runs dry through legitimate

App.0913

> state action, beneficiaries are hard-pressed to establish a legitimate entitlement to that benefit.

930 F.2d at 178 (citing *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 798 (1980)).  For these reasons, the Jane Doe Plaintiffs have no cognizable property interest in PPGC's provider contracts nor can they complain of a denial of their due process rights.

### 3.   *PPGC does not have a private right of action under 42 USC 1396a(a)(23) as a Medicaid provider.*

A plaintiff seeking §1983 redress must assert the violation of a federal right, not merely of federal law.  *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106 (1989).  Determining what remedies are available for violations of a statute is a matter of statutory construction. *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just the private right but also a private remedy").

There are three factors used to determine whether a statutory provision creates a privately enforceable right: (1) whether the plaintiff is an intended beneficiary of the statute; (2) whether the plaintiffs' asserted interests are not so vague and amorphous as to be beyond the competence of the judiciary to enforce; and (3) whether the statute imposes a binding obligation on the State. *Blessing v. Freestone*, 520 U.S. 329, 338 (1997).

In accord with the reasoning in the U.S. Supreme Court's recent pronouncement in *Armstrong v. Exceptional Child Center, Inc*., 135 S.Ct. 1378, the Medicaid Act's exclusive provision for the enforcement of 42 U.S.C.A. §1396a(a)(23) is the withholding of Medicaid funds by the Secretary of Health and Human Services.  *See* 42 U.S.C. § 1396c.

Medicaid regulations permit States to establish "reasonable standards relating to the qualifications of providers." 42 C.F.R. § 431.51(c)(2).  By conferring judgment of a State's

18

conduct upon the Secretary of Health and Human Services alone, Congress clearly "wanted to make the agency remedy that it provided exclusive," thereby achieving "the expertise, uniformity, widespread consultation, and resulting administrative guidance that can accompany agency decision-making," and avoiding "the comparative risk of inconsistent interpretations and misincentives that can arise out of an occasional inappropriate application of the statute in a private action." *Armstrong,* 135 S.Ct. at 1386, citing *Gonzaga Univ. v. Doe,* 536 U.S. 273, 292 (2002) (Breyer, J., concurring in judgment).

Issued by the U.S. Supreme Court on March 15, 2015, *Armstrong* held that the neither the Medicaid Act itself, nor the Supremacy Clause, provided a private right of action for Medicaid providers or recipients to seek a private remedy against a State official who has allegedly violated the terms of the Medicaid Act's provisions. *Id.* According to the Supreme Court "the Medicaid Act implicitly precludes private enforcement," 135 S.Ct. at 1385, of one of its provisions. Therefore the Court concluded:

> [T]he sole remedy Congress provided for a State's failure to comply with Medicaid's requirements—for the State's "breach" of the Spending Clause contract—is the withholding of Medicaid funds by the Secretary of Health and Human Services. 42 U. S. C. §1396c. As we have elsewhere explained, the 'express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.'

*Armstrong,* 135 S.Ct. at 1385 (*quoting Alexander* v. *Sandoval*, 532 U.S. 275, 290 (2001)).

As discussed in *Armstrong,* Section 1396a of the Medicaid Act establishes the requirements to which a State must adhere before the CMS will approve its Medicaid state plan. *Id.* at 1382. The state plan is an agreement between CMS and the State. Neither PPGC nor any of the individual recipient plaintiffs in this case are parties to that agreement. "Spending Clause

App.0915

legislation like Medicaid 'is much in the nature of a contract." *Armstrong*, 135 S.Ct. at 1387

(quoting *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17 (1981)).  Accordingly,

> . . . the modern jurisprudence permitting intended beneficiaries to
> sue does not generally apply to contracts between a private party and
> the government—**much less to contracts between two
> governments**. Our precedents establish that a private right of action
> under federal law is not created by mere implication, but must be
> 'unambiguously conferred,' *Gonzaga*, 536 U.S., at 283. Nothing in
> the Medicaid Act suggests that Congress meant to change that for
> the commitments made under §30(A).

*Armstrong*, 135 S.Ct. at 1388 (some internal quotes omitted) (emphasis added).

Thus, in accord with *Armstrong,* PPGC and the individual plaintiffs are not the intended

beneficiaries of 42 U.S.C. 1396a(a)(23) and may not pursue equitable relief pursuant to 42 U.S.C.

§ 1983.  *Armstrong*, 135 S.Ct. at 1387 ("We doubt, to begin with, that providers are intended

beneficiaries (as opposed to mere incidental beneficiaries) of the Medicaid agreement, which was

concluded for the benefit of the infirm whom the providers were to serve, rather than for the benefit

of the providers themselves.").

Similarly, the Tenth Circuit has considered the issue of whether a nursing facility is entitled

to a preliminary injunction "prior to a hearing to ascertain whether the facility is in compliance

with state and federal regulations."  *Geriatrics, Inc. v. Harris*, 640 F.2d 262 (10th Cir. 1981).  In

analyzing this issue, the *Geriatrics, Inc.* court recognized that "a protectable property interest must

be an interest secured by statute or legal rule or through a mutually explicit understanding."  *Id.* at

264.  In reaching its decision to reverse the preliminary injunction granted by the District Court,

the Court reasoned that the nursing facility "is not the intended beneficiary of the Medicaid

Program.  Instead, the purpose underlying the funding of the program is to extend financial benefits

to the patients eligible to receive their medical care at government expense."  *Id.* at 264.  The

App.0916

argument by the nursing facility that the termination of its provider agreement would require it to close was even unpersuasive to the Court.

The second prong of the test is whether the Plaintiffs' interests are vague and amorphous as to be beyond the competence of the judiciary to enforce. The Medicaid Act's "free choice of provider" provisions are found at §1902(a)(23) of the Social Security Act, 42 U.S.C. §1396a(a)(23). Under subsection (A), State Medicaid plans must allow beneficiaries to obtain medical care from "any institution, agency, community pharmacy or person, **qualified** to perform the service or services required." 42 U.S.C. §1396a(a)(23)(A)(emphasis added).

LDHH contends that the terms of §1396a(a)(23), like Section 30(a) in the *Armstrong* decision, are vague and subject to State interpretation in so far as the statute lacks any definition of "**qualified** to perform the service or services required." The term "qualified" could be interpreted by the State to mean that the provider simply holds the requisite license for the applicable scope of service. The term could also be interpreted by the State to mean that the entity is completely free of any government proceeding whether civil or criminal or departmental. The term could also be interpreted by the State to mean that the provider is free from any Medicaid billing problems amounting to fraud or abuse. The term could also be interpreted by the State to mean that the provider conforms to the ethical standards shared by the State in which it seeks to operate. Finally, the term could also be interpreted by the State to stand for the proposition that lack of a signed provider agreement evidences lack of being qualified. In short, the State's determination of "qualified" is a "judgment-laden standard" that was intended by Congress and the Medicaid statute to be enforced by CMS and the federal Secretary of Health and Human Services alone. *Armstrong*, 135 S.Ct. at 1385.

The final prong of the test is whether the statute imposes a binding obligation on the State. The purpose of §1396a(a) is to establish the parameters a State must be willing to agree to in order for CMS to approve its state plan.  LDHH agrees that it must comply with its approved state plan in order to received federal funds.  LDHH is indeed offering freedom of choice required by the statute.  In fact, as of the submission of this brief, the recipients can still choose PPGC.  The recipients will only be prohibited from choosing PPGC if PPGC is found unwilling or unqualified via the administrative process or the failure of PPGC to pursue their administrative remedies.  In either case, PPGC would no longer be a qualified provider pursuant to Louisiana law.  Therefore, none of the prongs of the test are sufficiently met in order for §1396a(a)(23) to create a privately enforceable right.

In the present matter, the agreed upon, and statutory process, is a suspensive administrative appeal. This process would allow PPGC the opportunity to continue providing care to its patients while administratively determining whether it is still "qualified" and "willing."  As it stands however, PPGC has refused to avail itself of the agreed upon procedure instead attempting to establish a federal right that simply does not exist.  It appears that PPGC is attempting to formulate a new process not followed by any other Louisiana Medicaid provider by trying to bypass the administrative process.  PPGC is attempting to "single themselves out" for a different process that has afforded due process to other Medicaid providers for decades while arguing on the other hand that DHH is singling them out in pursuing this termination.

Finally, PPGC wrongly argues that the State's authority is limited to determining whether a provider is competent to provide the services.  CMS has acknowledged that there may be other reasons a state may terminate a provider agreement in accordance with *state* law.  *See* CPI-CMCS Informational  Bulletin,  at  *http://www.medicaid.gov/Federal-Policy-Guidance/downloads/CIB-*

22

App.0918

*01-20-12.pdf*. Rather, the very cases cited by PPGC establish that under Medicaid law, the Secretary of LDHH has "broad authority" to determine whether a provider is "qualified" under 42 U.S.C. § 1396a(a)(23).

    The two cases that PPGC most heavily relies upon actually provide a roadmap for State Medicaid administrators to make determinations that a particular provider is not "qualified.  In *Planned Parenthood of Indiana v. Comm'r*, the Seventh Circuit concluded that while States could not exclude abortion providers as a class simply for their provision of abortion, states do have "broad authority to exclude unqualified providers from its Medicaid program."  Notably, the Seventh Circuit set forth an array of broad categories that may underlie the Secretary's judgment-laden decision of whether a provider is qualified:

> Although Indiana has broad authority to exclude unqualified providers from its Medicaid program, the State does not have plenary authority to exclude a class of providers for any reason— more particularly, for a reason unrelated to provider qualifications. <u>In this context, "qualified" means fit to provide the necessary medical services—that is, capable of performing the needed medical services in a **_professionally competent, safe, legal, and ethical manner_**</u>.

*Planned Parenthood of Indiana v. Comm'r*, 699 F.3d 962, 968, 978 (7th Cir. 2012), *cert. den*., 133 S.Ct. 2738 (2013)(emphasis added).  Here, LDHH termination letter set out several grounds based on the Secretary's determination that PPGC has violated various legal and ethical standards.

    PPGC also cites the Ninth Circuit decision in *Planned Parenthood Arizona v. Betlach*, 727 F.3d 960 (9th Cir. 2013). Notably both the District Court and the Ninth Circuit Court of Appeals in *Planned Parenthood Az. v. Betlach*, concluded that "[s]tates retain the authority to set standards for participation in the Medicaid program, but only reasonable standards related to the ability of the provider to perform Medicaid services." Notably, rather than stating that the standards are related to medical competency to provide services only, the Ninth Circuit explained that a provider

23

App.0919

can be terminated "'for reasons bearing on the individual's or entity's professional competence, professional performance, or *financial integrity*.'" *Id..* at 973 (quoting 42 U.S.C.A. § 1320a(7)(b)(5); *see also Planned Parenthood v. Betlach,* 922 F.Supp.2d at 865 (emphasis added).

Federal courts have also held that States may terminate a medical provider during a pending investigation. *Guzman*, 552 F.3d at 949. The Secretary's termination for cause letter provides notice of termination pursuant to La. R.S. 46:437.11(D)(2) based on the pending Louisiana investigations that make PPGC "the subject of a . . . departmental proceeding." LDHH also set forth a number of grounds for the termination and outlined the available administrative review process, including the opportunity to "further inquire as to the reasons for our determination." Letter of Secretary Kliebert to PPGC, September 15, 2015. That inquiry belongs in the state administrative review process, and not in any federal court.

A State participating in Medicaid retains the power to establish "reasonable standards relating to the qualifications of providers...." 42 C.F.R. § 431.51(c)(2). A State may also exclude health care providers from participation in Medicaid "for any reason for which the Secretary could exclude the [provider] from participation [in Medicare, such as fraud, misrepresentation or other malfeasance]," "[i]n addition to any other authority." 42 U.S.C. § 1396a(p)(1).

<strong>V.     CONCLUSION</strong>

For the reasons set forth above, Plaintiffs claims should be dismissed.


Respectfully submitted,


        **FAIRCLOTH, MELTON & KEISER, LLC**


      By:   _s/ Jimmy R. Faircloth, Jr._____
        Jimmy R. Faircloth, Jr. (La. #20645)
        jfaircloth@fairclothlaw.com

24

Brook Landry Villa (La. #31988)
bvilla@fairclothlaw.com
301 Main St., Suite 920
Baton Rouge, LA  70801
Phone 225-343-9535
Fax 225-343-9538

And

**LOUISIANA DEPARTMENT OF
HEALTH AND HOSPITALS**
Stephen Russo, T.A. (La. Bar No. 23284)
Kimberly Humbles (La. Bar No. 24465)
Kimberly Sullivan (La. Bar No. 27540)
Ryan Romero (La. Bar No. 35987)
628 N. 4th Street
Baton Rouge, LA  70802
Phone:  225-342-1128
Fax:  225-342-2232
stephen.russo@la.gov
kimberly.humbles@la.gov
kimberly.sullivan@la.gov
ryan.romero@la.gov

*ATTORNEYS FOR DEFENDANT, KATHY
KLIEBERT, IN HER OFFICIAL CAPACITY
AS SECRETARY OF THE LOUISIANA
DEPARTMENT OF HEALTH AND
HOSPITALS*

## CERTIFICATE OF SERVICE

I hereby certify on this 14th day of October, 2015, that the above and foregoing Motion to
Dismiss and Memorandum in Support was electronically filed by using the CM/ECF System.

        /s/ Jimmy R. Faircloth, Jr.
        JIMMY R. FAIRCLOTH, JR.

App.0921

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA


PLANNED PARENTHOOD GULF COAST,
INC.,ET AL                        : CIVIL ACTION

VERSUS                            : NO. 15-565

KATHY KLIEBERT                    : HON. JOHN W. DEGRAVELLES

                                  : OCTOBER 16, 2015
================================================================

MOTION HEARING

================================================================

A P P E A R A N C E S

BY PHONE:
FOR PLANNED PARENTHOOD GULF COAST INC.:

    MS. CARRIE Y. FLAXMAN
    PLANNED PARENTHOOD FEDERATION OF AMERICA
    1110 VERMONT AVENUE, NW
    SUITE 300
    WASHINGTON, DC 20005

BY PHONE:
FOR KATHY KLIEBERT:

    MR. JIMMY ROY FAIRCLOTH, JR.
    FAIRCLOTH, MELTON & KEISER
    105 YORKTOWN DRIVE
    ALEXANDRIA, LOUISIANA 71303




            REPORTED BY: GINA DELATTE-RICHARD,CCR

_____

UNITED STATES COURTHOUSE
BATON ROUGE, LOUISIANA 70801
(225) 389-3564

1   JUST GOING TO HAVE TO DO THE BEST WE CAN UNDER THE

2   CIRCUMSTANCES.   BUT LET'S START WITH THE MOTION TO DISMISS.

3           AND, MR. FAIRCLOTH, ARE YOU GOING TO ARGUE THAT FOR

4   THE DEFENDANT?

5           **MR. FAIRCLOTH:**  YES, YOUR HONOR.   THANK YOU.

6           **THE COURT:**  YOU MAY PROCEED.

7           **MR. FAIRCLOTH:**  YES, SIR.   THE MOTION TO DISMISS IS

8   BASED VERY SIMPLY ON THE LACK OF RIPENESS IN THIS PROCEEDING

9   AND I WANT TO POINT OUT ONE FACTUAL MATTER.   IN READING THE

10  MEMORANDUM THAT WAS FILED BY PLANNED PARENTHOOD YESTERDAY

11  STATING THAT -- ON THE ISSUE OF EXHAUSTION, I BECAME CONCERNED

12  THAT THEY DID NOT REALIZE THEY HAVE TILL MONDAY IN ORDER TO

13  MAKE THEIR REQUEST FOR REVIEW OF THE SECRETARY'S DECISION.

14  AND THAT'S NOT BASED ON THE DISCRETION OF THE SECRETARY, THAT

15  BY OPERATION OF LOUISIANA LAW WHICH SAYS THAT ANY LAW OR ORDER

16  OF THE COURT THAT HAS A FILING DATE THAT ENDS ON THE WEEKEND

17  OR A LEGAL HOLIDAY IT CONTINUES UNTIL THE NEXT DAY.   SO THE

18  CONTRACT, THE 30 DAY WINDOW, EXPIRES THIS WEEKEND, BUT BY

19  OPERATION OF LOUISIANA CODE OF CIVIL PROCEDURE THAT RULE, THAT

20  LOUISIANA RULE, GIVES THEM UNTIL MONDAY.

21          SO AS WE SIT HERE NOW ON THE FACE OF THE PLEADINGS

22  THERE IS ABSOLUTELY NO INJURY.   I MEAN THERE IS NO INJURY.

23  THEIR CONTRACT HAS NOT BEEN TERMINATED.   THE JANE DOE

24  PLAINTIFF HAS NOT BEEN DENIED CARE, AND I THINK IT'S HIGHLY

25  IMPROPER FOR -- FOR THE COURT TO TIP THE CAN ON HOW IT VIEWS

NO. 15-30987

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**PLANNED PARENTHOOD GULF COAST, INCORPORATED;
JANE DOE #1; JANE DOE #2; AND JANE DOE #3,**

Plaintiffs-Appellees

**V.**

**KATHY KLIEBERT, SECRETARY,
LOUISIANA DEPARTMENT OF HEALTH AND HOSPITALS,**

Defendant-Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA
NO. 3:15-cv-00565-JWD-SCR

_____

**ORIGINAL APPELLANT BRIEF OF KATHY KLIEBERT, SECRETARY,
LOUISIANA DEPARTMENT OF HEALTH AND HOSPITALS**

**FAIRCLOTH MELTON, L.L.C.**

Jimmy R. Faircloth, Jr.  (A.C.)  (#20645)
Brook L. Villa            (#31988)
301 Main St., Suite 920
Baton Rouge, LA  70801
Phone 225-343-9535
Fax 225-343-9538

## CERTIFICATE OF INTERESTED PERSONS

As required by Fifth Circuit Rule 28.2.1, the undersigned counsel of record submits the following:

A.  Number and Style of Case:

> No. 15-30987.   KATHY KLIEBERT, SECRETARY, LOUISIANA DEPARTMENT OF HEALTH AND HOSPITALS, *Defendant-Appellant*, v. PLANNED PARENTHOOD GULF COAST, INC.; JANE DOE #1; JANE DOE #2; AND JANE DOE #3, *Plaintiffs-Appellees*

B. The following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order for the judges of this Court to evaluate possible disqualifications or recusal.

1. Defendant-Appellant is a governmental party outside the scope of this certificate under Fifth Circuit Rule 28.2.1.

2. Counsel for Defendant-Appellant in this Court are the following:

   a. Faircloth Melton, LLC
   b. Jimmy R. Faircloth, Jr.
   c. Brook L. Villa

3. Counsel for Defendant-Appellant in the District Court also included the following attorneys for the Louisiana Department of Health and Hospitals:

   a. Stephen Russo
   b. Kimberly Humbles
   c. Kimberly Sullivan
   d. Ryan Romero

4. Plaintiffs-Appellees are the following:

- i -

    a.    Planned Parenthood Gulf Coast, Inc.
    b.    Jane Doe #1
    c.    Jane Doe #2
    d.    Jane Doe #3

5.    The Jane Does are Medicaid patients who use health centers operated by Planned Parenthood Gulf Coast, Inc.  Planned Parenthood Gulf Coast, Inc. is an affiliate of Planned Parenthood Federation of America.

6.    Counsel for Plaintiffs-Appellees in this Court are the following:

    a.    Carrie Y. Flaxman (Planned Parenthood Federation of America)
    b.    Melissa A. Cohen (Planned Parenthood Federation of America)
    c.    Rittenberg, Samuel & Phillips, LLC
    d.    William E. Rittenberg

7.    Counsel for Plaintiffs-Appellees in the District Court also included the following attorney:

    a.    Charles M. Samuel

8.    Counsel for the United States in the District Court included the following:

    a.    John J. Gaupp
    b.    Megan A. Crowley

9.    Pursuant to the fifth sentence of Rule 28.2.1, the following is a generic description of all persons who are or may be interested in the outcome of this litigation:  anyone who provides service for, receives health care services through, or is involved in the Medicaid program, including, but not limited to, state governments or departments that participate in the Medicaid program, Medicaid recipients, and health care providers that participate in the Medicaid program.

                       /s/ Jimmy R. Faircloth, Jr.
                    Jimmy R. Faircloth, Jr.
                    Attorney for Defendant-Appellant, Kathy Kliebert, Secretary, Louisiana Department of Health and Hospitals

App.0926

## REQUEST FOR ORAL ARGUMENT

Appellant, Kathy Kliebert, Secretary, Louisiana Department of Health and Hospitals, respectfully requests oral argument.  This is a case of national importance, involving important and complex issues concerning the Medicaid Act and program, separation of powers, and cooperative federalism.  The ruling below conflicts with Supreme Court precedent and is predicated on a misreading and misunderstanding of the Medicaid Act and program; accordingly, oral argument would aid the Court in reaching a decision.  Additionally, this Court's decision in this case may impact or conflict with the decision in a substantially similar case pending before the United States Court of Appeal for the Eight Circuit, *Planned Parenthood Ark. & E. Okla. v. Selig*, No. 15-3271.  For these reasons, this Court should grant oral argument.

- iii -

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...................................................... i

REQUEST FOR ORAL ARGUMENT .................................................................. iii

TABLE OF CONTENTS ..................................................................................... iv

TABLE OF AUTHORITIES ................................................................................ vi

JURISDICTIONAL STATEMENT ........................................................................1

ISSUES PRESENTED............................................................................................2

STATEMENT OF CASE .......................................................................................3

SUMMARY OF ARGUMENT ..............................................................................8

ARGUMENT ........................................................................................................10

    I.    The District Court Lacked Subject Matter Jurisdiction. ..........................10

    A.    Standard of Review ...............................................................................10

    B.    PPGC and the Individual Plaintiffs Lack Article III Standing................11

        1.    *Neither PPGC nor the Individual Plaintiffs have been injured.*...........14

        2.    *Plaintiffs' alleged injury is not traceable to LDHH.* ...........................17

    C.    The Claims are not Ripe for Judicial Review. ........................................18

        1.    *Fitness for judicial resolution* ...............................................................22

            a.    Plaintiffs have suffered no injury......................................................22

            b.    Further factual development is required. ...........................................23

        2.    *Plaintiffs will suffer no hardship by withholding judicial review at this early stage of the administrative process.* ...........................................24

    II.    Plaintiffs Do Not Have a Private Right of Action...................................25

    A.    Standard of Review ................................................................................25

App.0928

B.     The District Court's  expansive interpretation of  42 U.S.C. §
1396a(a)(23) – to provide for a private right of action  to challenge the
decertification of a provider – is at odds with *Armstrong* and in direct
conflict with *O'Bannon*....................................................................................25

C.     Under the Rationale of *Armstrong*, Section 1396a(a)(23) Does Not
Support a Private Right of Action. ....................................................................27

D.     Section 1396a(a)(23) does not create a private right of action for a
Medicaid recipient to challenge a State's decision to disqualify a
provider. ..............................................................................................................30

III.    The Court Erred in Issuing the Preliminary Injunction...........................36

A.     Standard of Review ....................................................................................36

B.     Plaintiffs are Not Likely to Succeed on the Merits of Their Claims........37

   *1.     The District Court erred in narrowly interpreting "qualified" to
   mere medical competence*.............................................................................37

   2.     *LDHH Provided Valid Reasons for Disqualifying PPGC.* ..................44

C.     Plaintiffs Cannot Prove Irreparable Harm.................................................49

D.     The Balance of Harm and Public Interest Factors Weigh in Favor
of Denying the Preliminary Injunction. ............................................................52

CONCLUSION.....................................................................................................53

CERTIFICATE OF SERVICE .............................................................................54

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) .....................................55

App.0929

## TABLE OF AUTHORITIES

**Cases:**

*Abbott Labs v. Gardner,*
    387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed. 2d 781 (1967) .................................21

*Alexander v. Sandoval,*
    532 U.S. 275 (2001).................................................................................29

*Apple Barrel Prods., Inc. v. Beard,*
    730 F.2d 384 (5th Cir. 1984) ..................................................................36

*Armstrong v. Exceptional Child Center, Inc.,*
    135 S.Ct. 1378 (2015)..............................................25, 26, 27, 28, 29, 31, 39

*Bayou Liberty Ass'n v. U.S. Army Corps of Eng'rs,*
    217 F.3d 393 (5th Cir. 2000) ..................................................................10

*Bethlehem Steel Corp. v. E.P.A.,*
    669 F.2d 903 (3d Cir. 1982) ...............................................................20, 23

*Blessing v. Freestone,*
    520 U.S. 329 (1997)..........................................................................25, 26, 30

*Burford v. Sun Oil Co.,*
    319 U.S. 315 (1943)................................................................................19

*Canal Auth. of State of Fla. v. Callaway,*
    489 F.2d 567 (5th Cir. 1974) ..................................................................51

*Carroll v. Planned Parenthood Gulf Coast,*
    No. 4:12-cv-03505 (S.D. TX, Houston Div.)...............................................45

*Cent. & S.W. Servs., Inc. v. EPA,*
    20 F.3d 683 (5th Cir. 2000). ...................................................................21

*Choice Inc. of Texas v. Greenstein,*
    691 F.3d 710 (5th Cir. 2012). ..........................................................18, 21, 24

*Clapper v. Amnesty Int'l USA,*
    133 S. Ct. 1138 (2013).....................................................................11, 15, 17

App.0930

*Colorado River Water Conservation Dist. v. United States*,
   424 U.S. 800 (1976).....................................................................................19

*Commonwealth Life Insurance Co. v. Neal,*
   669 F.2d 300 (5th Cir. 1982). .....................................................................36

*Dartez v. Owens-Illinois, Inc.*,
   910 F.2d 1291(5th Cir. 1990) .....................................................................43

*Dennis Melancon, Inc. v. City of New Orleans*,
   703 F.3d 262 (5th Cir. 2012). .....................................................................49

*Duarte ex rel. Duarte v. City of Lewisville, Tex.*,
   759 F.3d 514 (5th Cir. 2014) ......................................................................11

*Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana,*
   762 F.2d 464 (5th Cir. 1985). .....................................................................49

*F.T.C. v. Standard Oil Co. of California*,
   449 U.S. 232 (1980)....................................................................................23

*First Medical Health Plan v. Vega-Ramos*,
   479 F.3d 46 (1st Cir. 2007).................................................................. 40, 41

*Flynn v. Siren-BookStrand, Inc.*,
   2013 WL 53159595 (D. Neb. 2013)............................................................51

*Frew ex rel. Frew v. Hawkins*,
   540 U.S. 431 (2004).....................................................................................52

*Giles v. NYLCare Health Plans, Inc.,*
   172 F.3d 332 (5th Cir. 1999) ......................................................................10

*Gonzaga University v. Doe*,
   536 U.S. 273 (2002)....................................................... 25, 28, 29, 30, 35

*Guzman v. Shewry*,
   552 F.3d 941 (9th Cir. 2008). ............................................................. 12, 19

*Harris v. Olszewski*,
   442 F.3d 456 (6th Cir. 2005). ......................................................... 26, 27, 34

App.0931

*Heckler v. Ringer*,
      466 U.S. 602 (1984)........................................................................24

*Holland Am. Ins. Co. v. Succession of Roy*,
      777 F.2d 992 (5th Cir. 1985) .........................................................49

*In re Seabulk Offshore, Ltd.*,
      158 F.3d 897 (5th Cir. 1998) ...........................................................1

*Janvey v. Brown*,
      767 F. 3d 430 (5th Cir. 2014). .......................................................25

*Kelly Kare, Ltd. v. O'Rourke*,
      930 F.32d 170 (2d Cir. 1991). ................................................. 33, 34

Lake Carriers' Ass'n v. MacMullan,
      406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972). ...................21

*Lopez v. City of Houston*,
      617 F.3d 336 (5th Cir. 2010) ............................... 10, 18, 21, 22, 24

*Lujan v. Defenders of Wildlife*,
      504 U.S. 555 (1992)................................................ 11, 13, 14, 17

*Magnolia Marine Transp. Co., Inc. v. Laplace Towing Corp.*,
      964 F.2d 1571 (5th Cir. 1992) ..........................................................1

*Mazerek v. Armstrong*,
      520 U.S. 968 (1997)........................................................................36

*McCaig v. Wells Fargo Bank (Texas), N.A.*,
      788 F.3d 463 (5th Cir. 2015). .........................................................25

*Mississippi State Democratic Party v. Barbour*,
      529 F.3d 538 (5th Cir. 2008) ................................................. 12, 14

*Morgan v. Fletcher*,
      518 F.2d 236 (5th Cir. 1975). .........................................................49

*National Family Planning & Reproductive Health Assn., Inc.*,
      468 F.3d 826 (D.C. Cir. 2006)........................................................17

App.0932

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*,
 833 F.2d 583 (5th Cir. 1987) ..................................................................21

*Paulsson Geophysical Servs., Inc. v. Sigmar*,
 529 F.3d 303 (5th Cir. 2008) ..................................................................10

*Pennhurst State School and Hospital v. Halderman*,
 451 U.S. 1 (1981).............................................................................. 30, 35

*Pennsylvania v. New Jersey*,
 426 U.S. 660 (1976)................................................................................17

*Planned Parenthood Arizona v. Betlach*,
 727 F.3d 960 (9th Cir. 2013). ........................................ 26, 27, 34, 39, 42

*Planned Parenthood Ark. & E. Okla. v. Selig*,
 Doc. 45 (Amended and Substituted Preliminary Injunction Order),
 No. 15-cv-005566-KGB (E.D. Ark.)........................................................12

*Planned Parenthood of Indiana v. Commissioner of Indiana State
 Department of Health*,
 699 F.3d 962 (7th Cir. 2012). .................................. 26, 27, 29, 34, 38, 42

Poe v. Ullman,
 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961). ...................................21

*Railroad Comm'n of Texas v. Pullman Co.*,
 312 U.S. 496 (1941)................................................................................19

*Reynolds v. Planned Parenthood Gulf Coast*,
 9:09-cv-124 (E.D. TX, Lufkin Div. July 25, 2013).................... 45, 46, 47, 48

*Roark & Hardee LP v. City of Austin*,
 522 F.3d 533 (5th Cir. 2008). .................................................................21

*Romano v. Greenstein*,
 721 F.3d 373 (5th Cir. 2013). .................................................................28

*Rush v. Barham*,
 No. 14-30872, 2015 WL 4467848 (5th Cir. July 22, 2015). .........................23

*Salt Lake Tribune Pub. Co., LLC v. AT & T Corp.*,
 320 F.3d 1081 (10th Cir. 2003). ..............................................................50

App.0933

*Sample v. Morrison,*
    406 F.3d 310 (5th Cir. 2005) ......................................................18

*Sawyer v. Wright,*
    471 Fed.Appx. 260 (5th Cir. 2012) .............................................10

*Southwest Pharmacy Solutions, Inc. v. Centers for Medicare & Medicaid*
    *Servs.,*
    718 F.3d 436 (5th Cir. 2013). .....................................................24

*Tarrant Reg'l Water Dist. v. Herrmann,*
    656 F.3d 1222 (10th Cir. 2011). ..................................................22

*Texas v. United States,*
    497 F.3d 491 (5th Cir. 2007). .....................................................21

*Thomas v. Union Carbide Agric. Prods. Co.,*
    473 U.S. 568 (1985).....................................................................22

*United States v. Hays,*
    515 U.S. 737 (2007).....................................................................11

*United States v. Katz,*
    271 U.S. 354 (1926).....................................................................46

*Van Arsdel v. Texas A&M University,*
    628 F.2d 344 (5th Cir. 1980). .....................................................49

*Veldhoen v. U.S. Coast Guard,*
    35 F.3d 222 (5th Cir. 1994) .......................................................10

*Whitmore v. Arkansas,*
    495 U.S. 149 (1990).....................................................................15

*Wilder v. Virginia Hospital Association,*
    496 U.S. 498 (1990).....................................................................28

*Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson*
    City,
    473 U.S. 172 (1985).....................................................................20

*Wisconsin Gas Co. v. F.E.R.C.,*
    758 F.2d 669 (D.C. Cir. 1985)....................................................49

App.0934

*Younger v. Harris*,
   401 U.S. 37 (1971)..............................................................19

**Statutes:**

28 U.S.C. § 1292(a)(1).............................................................1

42 C.F.R. § 1002.2................................................................39

42 C.F.R. § 1002.2(a)............................................................29

42 C.F.R. § 1002.2(b)............................................................29

42 C.F.R. § 1002.213 ................................................... 12, 19, 24

42 C.F.R. § 431.51(c)(2).........................................................38

42 U.S.C. § 1320a-7(b)..........................................................29

42 U.S.C. § 1396a(a)(23)(A).....................................................37

42 U.S.C. § 1396a(a)(30)(A). .............................................. 28, 29

42 U.S.C. § 1396a(p) ....................................................... 29, 38

42 U.S.C. § 1396b(i)(4).........................................................28

42 U.S.C. § 1983................................... 1, 5, 6, 8, 19, 25, 26, 28, 30, 35

42 U.S.C. §1396a(a)(23)..................5-6, 8-9, 12-14, 25-27, 29-34, 36-37, 43-44, 50

Fed. R. Civ. P. 12(b)(1)..................................................... 7, 10

Fed. R. Civ. P. 12(b)(6)..........................................................7

La. Admin. Code § 50:4103.......................................................44

La. Admin. Code § 50:4147 ................................................. 39, 45

La. Admin. Code § 50:4147.A.12(c) ..............................................46

La. Admin. Code § 50:4147A.12.b................................................47

La. Admin. Code § 50:4169........................................................6

App.0935

La. Admin. Code § 50:4203................................................................6

La. Admin. Code § 50:4211................................................................6

La. Admin. Code § 50:4211(D)............................................................6

La. C.C.P. art. 5059.......................................................................6

La. R.S.  § 46.437.14(A)(12)............................................................45

La. R.S. § 437.14.........................................................................5

La. R.S. § 46:107........................................................................19

La. R.S. § 46:437.11................................................................. 5, 39

La. R.S. § 46:437.11(D)(1)...............................................................4

La. R.S. § 46:437.11(D)(2)..............................................................48

La. R.S. § 46:437.14....................................................................39

La. R.S. § 46:437.14(A)(1)..............................................................47

La. R.S. § 46:437.14(A)(10)............................................................45

- xii -

App.0936

## JURISDICTIONAL STATEMENT

Planned Parenthood Gulf Coast, Inc. ("PPGC") and the three Jane Doe plaintiffs (the "Individual Plaintiffs") (collectively referred to herein as the "Plaintiffs") asserted constitutional and statutory claims under 42 U.S.C. § 1983 against Defendant, Kathy Kliebert, Secretary, Louisiana Department of Health and Hospitals (referred to herein as the "Secretary" or "LDHH"). The District Court granted Plaintiffs' motion for temporary restraining order and preliminary injunction, enjoining DHH from terminating any of its Medicaid provider agreements with PPGC, and denied LDHH's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim.  ROA.886, 965.[1]  The corresponding Order was signed on October 29, 2015.  ROA. 966.  LDHH filed its notice of appeal on November 4, 2015.  ROA.972.  This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1292(a)(1).[2]

---

[1] After initially granting Plaintiffs' request for a temporary restraining order (ROA.746), the District Court converted the temporary restraining order to a preliminary injunction after the parties stipulated that neither further discovery nor further argument was necessary for the conversion and to allow for an immediate appeal.  ROA.886, 888.

[2] See also In re Seabulk Offshore, Ltd., 158 F.3d 897, 899 n. 2 (5th Cir. 1998) (quoting Magnolia Marine Transp. Co., Inc. v. Laplace Towing Corp., 964 F.2d 1571, 1580 (5th Cir. 1992)) ("Once an order under § 1292(a)(1) has been deemed appealable, the 'entire order, not merely the propriety of injunctive relief, comes within our scope of review.").

1

## ISSUES PRESENTED

1. Whether the District Court erred in finding subject matter jurisdiction, specifically that:

   a. Plaintiffs established Article III standing when:

      i. Plaintiffs have not been injured because PPGC's provider privileges have not been terminated and the Individual Plaintiffs have not been denied care from a qualified provider; and,

      ii. Plaintiffs alleged injury will be caused by PPGC's forfeiture of the administrative process and, therefore, is not traceable to LDHH;

   b. Plaintiffs' claims are ripe for judicial review:

      i. During the pendency of the suspensive state administrative review process which is required by the Medicaid program and could result in favor of PPGC thereby obviating any need for judicial review; and,

      ii. While additional factual development is necessary at the administrative level.

2. Whether the District Court erred in holding that Plaintiffs have a right of action pursuant to 42 U.S.C. § 1396a(a)(23) to collaterally attack an agency's decision to disqualify a provider as opposed to merely the right to choose from a pool of qualified providers, in conflict with a Supreme Court decision on point. *O'Bannon v. Town Court Nursing Center*, 446 U.S. 773 (1980).

3. Whether the District Court erred by issuing the preliminary injunction, specifically by:

   a. Narrowly defining "qualified" as used in 42 U.S.C. § 1396a(a)(23) as mere medical competence and rejecting the state's reasons for disqualification based on fraud, misrepresentations and pending investigations, as provided by Louisiana law;

   b. Finding that Plaintiffs are likely to suffer irreparable harm based solely on the risk that the termination of PPGC's provider agreements will become effective; and,

App.0938

    c.  Finding that the public interest would be disserved in the absence of an injunction.

## STATEMENT OF CASE

The case arises out of the disqualification of PPGC as a Medicaid provider by the State of Louisiana following an investigation that found violations of provisions of PPGC's provider agreements.  PPGC was initially disqualified "for convenience" or "at will" on April 3, 2015. This action was rescinded and replaced with a "for-cause" notice of termination on September 15, 2015.

During July 2015, amidst the release of a series of undercover videos and allegations that Planned Parenthood and its affiliates were contracting with companies to sell aborted human fetal tissue and body parts, Governor Bobby Jindal directed the Louisiana Department of Health and Hospitals ("LDHH") and the State Inspector General to investigate the activities of PPGC to ensure that it was not engaging in illegal practices.[3]   In response, LDHH began inquiring into PPGC's involvement or knowledge of the information and allegations contained in those videos. See Letter of July 15, 2015 from LDHH to PPGC requesting information

---

[3] On July 15, 2015, the Governor's Executive Counsel directed a letter to the Inspector General requesting a joint investigation with LDHH "to determine whether Planned Parenthood Gulf Coast ["PPGC"] is engaged in the illegal harvesting and trafficking of human body parts" or the violation of other provisions of state and federal law. The letter noted that Houston-based PPGC "is an affiliate of this parent organization" that is "currently building an abortion clinic on Claiborne Avenue in New Orleans, Louisiana." *See* Press Release (July 15, 2015), available at http://www.gov.louisiana.gov/ index.cfm?md=newsroom&tmp=detail&articleID=5031

3

concerning its activities. ROA.511-512. See also PPGC's response of July 24, 2015. ROA.514-518.

On August 3, 2015, with the Louisiana joint investigation on-going in consultation with Texas authorities, LDHH informed PPGC that it was exercising its statutory right to terminate PPGC's Medicaid provider agreements on an at-will basis, noting that each provider agreement is a "voluntary contract," and citing La. R.S. § 46:437.11(D)(1) providing that each agreement "shall be terminable by either party thirty days after receipt of written notice." ROA.478-485.[4]

Among other facts gathered in the Louisiana investigation, recorded statements made by senior management of PPGC raised concern about misrepresentations in PPGC's responses to LDHH's inquiries, prompting a second set of inquiries from LDHH to PPGC on August 4.   ROA.520-521.   PPGC's response of August 14 continued to deny participation in the sale or donation of fetal organs despite the apparently contrary statements on the PPGC-CMP videos. ROA. 523-526.

On August 25, 2015, rather than initiating an administrative appeal of LDHH's August 3, 2015 decision to terminate its Medicaid provider agreements

---

[4] Specifically, the letters advised PPGC that its four Louisiana Medicaid provider agreements would be terminated for the following provider types:  Laboratory (provider no. 45802); Physician Group-New Orleans (provider no.133673); Physician Group-Baton Rouge (provider no. 133689) and Family Planning Clinic (provider no. 91338).

App.0940

with Louisiana, PPGC, along with three Jane Doe patients, initiated this lawsuit seeking relief pursuant to 42 U.S.C § 1983 and contending that LDHH had violated the Medicaid free-choice-of provider requirement found at 42 U.S.C. §1396a(a)(23), as well as the United States Constitution.  ROA.13-28.  Plaintiffs also moved for entry of a Temporary Restraining Order and Preliminary Injunction on August 25, 2015.  ROA.49-51.  A hearing was held on September 2, 2015, and the matter was taken under advisement.  ROA.291, 533-558.

On September 14, 2015, LDHH voluntarily rescinded the August 4 at-will termination letters.[5]  ROA.342-351.  That same day, LDHH informed the District Court of its belief that the rescission mooted the pending Temporary Restraining Order and resolved all issues before the Court.  ROA. 342.  Accordingly, LDHH requested PPGC to dismiss the matter.  *Id.*

Thereafter, by certified letters dated September 15, 2015 (the "Second Termination Letters" or "September 15 Letters"), LDHH notified PPGC that it was "terminating/revoking" PPGC's Medicaid provider agreements with Louisiana for "cause" pursuant La. R.S. §§ 46:437.11, 437.14.  ROA.498-509.  In accord with its customary practice, LDHH broadly listed several grounds: fraud, misrepresentation,

---

[5] This action followed a telephone conference with the court on September 9 during which the District Court judge indicated that it would consider whether a "for cause" notice of termination with suspensive administrative appeal rights (allowing PPGC to continue to be reimbursed by the State during the administrative review process) would moot Plaintiffs' action challenging the "at-will" termination. ROA.339-343.

5

and pending investigations into PPGC's conduct.  LDHH again informed PPGC of its right to request an informal hearing and/or institute a suspensive administrative appeal. *See, e.g.,* ROA.500. Finally, in accord with La. Admin. Code § 50:4211(D), the September 15 letter made clear that "[i]f you do not request an Informal Hearing or an Administrative Appeal, your termination will become effective thirty (30) days (including Saturdays and Sundays) from the date of your receipt of this letter."[6] *Id.* Thirty days from PPGC's receipt of the letters fell Saturday, October 17 and Sunday, October 18.   *See* ROA. 992, Hr'g Tr. 4:9-20, Oct. 16, 2015.   By operation of Louisiana law, the deadline was extended to Monday, October 19, 2015.  La. C.C.P. art. 5059 (providing that in computing legal delays, "[t]he last day of the period is to be included, unless it is a legal holiday, in which event the period runs until the end of the next day which is not a legal holiday.").

On October 7, 2015, again, rather than initiating the process to suspensively appeal, Plaintiffs filed a motion to amend their complaint, still seeking relief pursuant to 42 U.S.C § 1983 and contending that LDHH violated the Medicaid free-choice-of provider provisions of the Medicaid Act (42 U.S.C. § 1396a(a)(23)), as

---

[6] La. Admin. Code § 50:4203 requires the party seeking an appeal of LDHH's decision to request an informal hearing in writing within fifteen (15) days of receipt of the notice.  Following the informal hearing, the party is entitled to seek an appeal before the Division of Administrative Law. La. Admin. Code § 50:4211.  The appeal must be requested within thirty (30) days of receipt of the notice of termination.  The appeal process is fully suspensive. La. Admin. Code §§ 50:4169, 4211.

well as the First and Fourteenth Amendments of the United States Constitution. ROA.369-392. Plaintiffs renewed their request for a Temporary Restraining Order and Preliminary Injunction on October 9, 2015. ROA.417-428.

In response, LDHH filed a motion to dismiss on October 14, 2015 based on Fed. R. Civ. P. 12(b)(1) and 12(b)(6). ROA.695-721. A hearing was held on Friday, October 16, 2015 on both Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction and LDHH's Motion to Dismiss. ROA.805-806. During that hearing, in response to LDHH's argument on ripeness, counsel for PPGC stated that PPGC did not intend to file a request for administrative appeal. ROA.1008-1009. On Sunday, October 18, 2015, the day before PPGC's filing deadline, the Court issued an Order denying LDHH's Motion to Dismiss and granting Plaintiffs' Renewed Motion for Temporary Restraining Order and Preliminary Injunction in part. ROA.746-804. The Court also set a telephone conference for October 19, 2015. ROA.804.

During the October 19, 2015 conference, counsel for both parties stated no objection to converting the temporary restraining order to a preliminary injunction to allow for an immediate appeal. ROA.809-810.[7]

---

[7] Counsel for LDHH did not agree that additional discovery or factual development was unnecessary on the merits, as wrongly stated by the District Court in its Amended Ruling. ROA.922. Rather, LDHH has consistently and repeatedly insisted that additional factual development is necessary but that such should occur in the administrative proceeding.

7

On October 29, 2015, the Court issued an Amended Ruling (ROA.886) and Order (ROA.966) denying LDHH's Motion to Dismiss and granting Plaintiffs' Renewed Motion for Temporary Restraining Order and for Preliminary Injunction. The District Court preliminarily enjoined LDHH from terminating its Medicaid provider agreements with PPGC.  ROA.966.

The District Court found that the case was ripe for review, that Plaintiffs had established Article III standing, and that 42 U.S.C. § 1396a(a)(23) creates a private right of action for Medicaid patients which can be enforced via § 1983, but noting that  "because the Court finds that the Individual Plaintiffs have a private right of action … it need (and will) not decide whether PPGC also has such a right, either on its own behalf or on behalf of its recipient patients."  ROA.935.  The District Court made no findings regarding the constitutional claims.  Finally, the District Court concluded that Plaintiffs were entitled to a preliminary injunction.  LDHH now appeals from the October 29, 2015 Amended Ruling (ROA.886) and Order (ROA.966).

## SUMMARY OF ARGUMENT

First, the Ruling at issue wrongly inserts the District Court into the early stages of a state-run administrative process that is effectively compelled by the Medicaid Act.  PPGC's provider agreements have not been terminated and will not be terminated unless and until PPGC forfeits its right to that process by inexplicably

App.0944

failing to timely appeal the Secretary's disqualification decision or until the decision becomes effective following completion of that process, which provides for discovery and a hearing before an administrative law judge. And even then, PPGC will have the right to challenge the decision in state court. Jurisdiction is lacking because Plaintiffs lack standing, and the matter is not ripe for adjudication.

Second, Medicaid's choice-of-provider provision, 42 U.S.C. 1396a(a)(23) ("Section 1396a(a)(23)") does not create a private right of action for Medicaid recipients to challenge qualification decisions by the agencies charged with determining provider eligibility. The District Court failed to recognize the important distinction between the right to choose from a pool of qualified providers and the right to challenge qualification decisions for providers in the pool, as was expressly recognized by the Supreme Court when evaluating the "contours" of the statute in *O'Bannon*, 446 U.S. 773.

Third, on the merits, the District Court's narrow interpretation of "qualified" under Section 1396a(a)(23) – to mean merely medical competence – is at odds with the broad discretion afforded by Congress to agencies to utilize their experience and expertise for successfully administering the Medicaid program and, in addition, the express language of the Act allowing states to exclude providers for any reason authorized by state law. The grounds for termination in this instance fall within the statute's broad meaning of "qualified." Moreover, Plaintiffs cannot demonstrate

9

App.0945

irreparable harm and the public will be disserved in the absence of injunctive relief. Again, PPGC's provider agreements have not been terminated and will not be terminated unless and until the administrative process required by the Medicaid Act is exhausted.   The public's interest will be protected by permitting the process envisioned by Congress to run its course.

## ARGUMENT

I.      **The District Court Lacked Subject Matter Jurisdiction**.

A.      **Standard of Review**

Issues related to subject matter jurisdiction such as standing and ripeness are legal questions for which review is *de novo*. *Lopez v. City of Houston*, 617 F.3d 336, 339 (5th Cir. 2010) (citing *Bayou Liberty Ass'n v. U.S. Army Corps of Eng'rs,* 217 F.3d 393, 396 (5th Cir. 2000)).   "As a court of limited jurisdiction, a federal court must affirmatively ascertain subject-matter jurisdiction before adjudicating a suit." *Sawyer v. Wright*, 471 Fed.Appx. 260, 261 (5th Cir. 2012).   A challenge to subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may be raised at any time, by any party, or by the court *sua sponte. Giles v. NYLCare Health Plans, Inc.,* 172 F.3d 332, 336 (5th Cir. 1999).   Further, it "may be raised for the first time on appeal." *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 306 (5th Cir. 2008) (quoting *Veldhoen v. U.S. Coast Guard,* 35 F.3d 222, 225 (5th Cir. 1994)).   The plaintiff bears the burden of establishing subject matter jurisdiction.   *United States*

*v. Hays*, 515 U.S. 737, 743 (2007).

### B. PPGC and the Individual Plaintiffs Lack Article III Standing.

"Article III of the Constitution limits federal courts' jurisdiction to certain Cases and Controversies. . . . One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013) (internal quotation marks and citations omitted). The "irreducible constitutional minimum of standing" requires satisfaction of each of three elements: (1) that the plaintiff has suffered "an injury in fact—an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of"; and (3) a likelihood that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks and alterations omitted); *accord, e.g.*, *Duarte ex rel. Duarte v. City of Lewisville, Tex.*, 759 F.3d 514, 518 (5th Cir. 2014). If a plaintiff lacks standing to bring an action, the court is without subject matter jurisdiction. *E.g.*, *Duarte*, 759 F.3d at 518. The plaintiff bears the burden of establishing standing to assert a claim. *Lujan*, 504 U.S. at 561.

The central focus in evaluating standing is "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Mississippi*

11

*State Democratic Party v. Barbour*, 529 F.3d 538, 544-45 (5th Cir. 2008).   While correctly noting that standing focuses on "***who*** may bring a ripe action," (ROA.924 (emphasis added)), the District Court failed to evaluate the individual standing of PPGC and the Individual Plaintiffs separately, which obscured the analysis.[8]  By tethering Plaintiffs' claims, the District Court avoided discussion of the frailty of PPGC's legal authority,[9] as well as the consequences of PPGC's decision to abandon an administrative process sanctioned by the Medicaid Act for the very purpose of preventing *inter alia* arbitrary disqualification of providers.[10]   At base, the ruling wrongly allowed PPGC to piggyback the standing of the Individual Plaintiffs on the "choice-of-provider" provision of Section 1396a(a)(23) but without addressing how

---

[8] For example, the District Court found that "Defendant's threat of harm is sufficiently clear to establish Plaintiff's standing."  ROA. 926.  However, it either grouped all Plaintiffs in the same class or failed to specify which "Plaintiff" established standing.

[9] PPGC has no right of action under 1396a(a)(23), as correctly concluded by the District Court in *Selig*, an opinion cited repeatedly by the District Court below.  *Planned Parenthood Ark. & E. Okla. v. Selig*, Doc. 45 (Amended and Substituted Preliminary Injunction Order), No. 15-cv-00566-KGB (E.D. Ark.).  Further, PPGC's constitutional claims are facially specious.

[10] States are required to allow Medicaid providers "'the opportunity to submit documents and written argument against' such exclusion and 'any additional appeal rights that would otherwise be available under procedures established by the State.'"  *Guzman v. Shewry*, 552 F.3d 941, 951 (9th Cir. 2008) (quoting 42 C.F.R. § 1002.213).

PPGC was entitled to such a free ride.[11]

A proper standing analysis begins with identification of the alleged injury suffered by each plaintiff.  In this case, PPGC alleges that its right to participate as a Medicaid provider has been or will be terminated by the Secretary's decision to disqualify PPGC from the Medicaid program.  The Individual Plaintiffs, on the other hand, allege that they have been or will be denied the right to receive care from a provider of their choice based on Section 1396a(a)(23). While both alleged injuries are rooted in the disqualification of PPGC, the protected interest of PPGC is materially different than that of the Individual Plaintiffs under the Medicaid Act. For purposes of Article III, this difference matters greatly because injury-in-fact is defined as "an invasion of a legally protected interest." *Lujan*, 504 U.S. at 560-61. Thus, the starting point for evaluating standing is to determine whether the plaintiff has a legally protected interest that has been or will be invaded by the defendant's alleged misconduct.

In this case, PPGC's legally protected interest is limited to enforcing its administrative rights under the Act, which has not been impaired and is not

---

[11] LDHH agrees that the Individual Plaintiffs have a private right of action under Section 1396a(a)(23) to receive care from any "qualified" Medicaid provider.  This right, however, does not extend to the determination of whether an individual provider is qualified or should be disqualified, for the reasons expressed in *O'Bannon v. Town Court Nursing Center*,  446 U.S. 773 (1980). See argument *infra* at page 25 on the District Court's failure to dismiss.

threatened in any way, shape or form.[12]  The Individual Plaintiffs' legally protected interest, as provided by Section 1396a(a)(23), is not threatened because the Individual Plaintiffs have not and will not be denied care from a qualified Medicaid provider.  The District Court's conflated analysis fails to account for this critical distinction.

When properly considered, the record reveals that PPGC and the Individual Plaintiffs lack standing because they have not suffered actual or threatened harm to their individual legally protected interests.  Moreover, the alleged harm – PPGC's disqualification from Medicaid and the Individual Plaintiffs' corresponding loss of PPGC services - is traceable to PPGC's inexplicable decision to abandon the fully suspensive administrative process, not to any wrongful conduct of the Secretary.

### 1.    *Neither PPGC nor the Individual Plaintiffs have been injured.*

To establish standing, a plaintiff must demonstrate an invasion of a legally protected interest which is "actual or imminent, not conjectural or hypothetical." *Mississippi State Democratic Party*, 529 F.3d at 544-45 (quoting *Lujan*, 504 U.S. at 560–61).  In this instance, Plaintiffs simply have not been harmed.  PPGC's provider privileges have not been terminated and the Individual Plaintiffs have not been

---

[12] The District Court repeatedly references PPCG's withdrawal of it due process claim while rejecting the authority cited by the Secretary, but failed to consider how such withdrawal impacts PPGC's standing to pursue PPGC's remaining claims.  It made no findings that PPGC has suffered, or will suffer, any interest protected by Section 1396a(a)(23) or by the Constitution.

14

denied care from a qualified provider. The District Court's finding that disqualification of PPGC is imminent because the Secretary "has made it clear she intends to terminate" PPGC's provider agreements (ROA.914) effectively declares the administrative review process required by the Medicaid Act a sham. The court arrived at this finding by drawing a negative inference from the Secretary's withdrawal of the initial at-will termination. Rather than correctly declare the at-will issues moot, the District Court instead used that event to bootstrap its erroneous findings on standing and ripeness.[13]

"Threatened injury must be certainly impending to constitute injury in fact." *Clapper*, 133 S.Ct. at 1147-48, 185 L.Ed.2d 264 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (internal quotation marks omitted)). None of the injuries alleged by Plaintiffs are impending, and the termination of PPGC's provider agreements was not certain to occur "but for this Court's intervention." ROA.916. Indeed, the process mandated by PPGC's provider agreements, state law and federal Medicaid law ensures that an interruption does not occur prior to the

---

[13] *See* ROA.895-903, 913-915, 947. The court's finding that the Secretary had "never retracted" the answer made by defense counsel at the hearing on September 2 concerning the competence of PPGC is plainly improper. ROA.948. In fact, the competence of PPGC was not an issue at that time because the notice to disqualify – and all issues raised by the pleadings – related to the at-will disqualification. Counsel's answer, "At this time, I would agree with that" in response to the question about PPGC's competence, was entirely accurate. ROA. 543 (Hr'g Tr. 11:11-16, Sept. 2, 2015). Similarly, the District Court improperly relied on the Statement of Interest filed by the US Department of Justice on August 31 (ROA.256-278) concerning whether the Secretary possessed the authority to disqualify PPGC at will.

administrative appeal process running its course. PPGC had until Monday, October 19, to file its request, which would have continued the administrative stay.

It is important that PPGC did not disavow the administrative process in its pleadings, but instead made vague allegations of injury while enjoying the administrative stay and hoping for a sign from the court regarding its inclination. PPGC got the signal it was hoping for when the court declined to dismiss the suit on the face of the pleadings and instead scheduled a hearing for October 16, three days before the deadline for PPGC to file its request for administrative review. Only then, during the hearing, did PPGC announce its intention to forego administrative review - after it appeared that the District Court was inclined to rule in favor of Plaintiffs.

The restraining order issued by the District Court on Sunday, October 18 (ROA.802) effectively suspends the administrative process with time remaining for PPGC to request a hearing. ROA.809, 884. At this stage of the process, affirmation of the disqualification and any resulting injury to PPGC and the Individual Plaintiffs is purely speculative and not certainly impending to constitute an injury in fact. Accordingly, the argument that PPGC's contracts *may* be terminated (and PPGC deemed disqualified) or that the Individual Plaintiffs *may* lose their ability to seek medical services from their provider of their choice is insufficient to establish standing and Plaintiffs' claims should be dismissed.

Neither PPGC nor the Individual Plaintiffs have a legally protected interest

16

injured or threatened by the disqualification decision.

### 2.     *Plaintiffs' alleged injury is not traceable to LDHH.*

An additional element of Article III standing is that the purported injury must be "fairly traceable" to the defendant's action.  *Lujan*, 504 U.S. at 560.  Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper,* 133 S.Ct. at 1151 (citing *Pennsylvania v. New Jersey,* 426 U.S. 660, 664 (1976) (*per curiam*); *National Family Planning & Reproductive Health Assn., Inc*., 468 F.3d 826, 831 (D.C. Cir. 2006)).  Moreover, to support standing, Plaintiffs' injuries must be "fairly traceable to [the defendant's actions]."  *Clapper*, 133 S.Ct. at 1151.

PPGC's provider agreements will be terminated only if (1) PPGC voluntarily forfeits its rights to an administrative appeal by allowing the remaining time on the clock to expire without requesting a hearing or (2) the disqualification decision is upheld following the full administrative process.  If PPGC allows the administrative appeal delay to expire without requesting review, its disqualification will occur by virtue of its voluntary and willful failure to participate in the process that it agreed to follow under its provider agreements.  Effectively, PPGC will have injured itself by forfeiting protection offered to it by the Medicaid Act.  And because the claims of the Individual Plaintiffs are derivative of PPGC's status as a qualified Medicaid provider, if PPGC forfeits its right to challenge the disqualification, the Individual

17

Plaintiffs will suffer no injury traceable to misconduct by the Secretary.

**C.   The Claims are not Ripe for Judicial Review.**

The doctrines of ripeness and standing are closely related as both are justiciability doctrines originating in Article III.  Ripeness is a component of subject matter jurisdiction because a court has no power to decide disputes that are not yet justiciable. *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010) (citing *Sample v. Morrison,* 406 F.3d 310, 312 (5th Cir. 2005) (per curiam)).  Accordingly, "a court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *Id*.

This Court has explained:

> Article III of the United States Constitution provides that federal courts have the power to decide only actual cases or controversies. The justiciability doctrines of standing, mootness, political question, and ripeness "all originate in Article III's 'case' or 'controversy' language".... The ripeness doctrine also is drawn "from prudential reasons for refusing to exercise jurisdiction." The ripeness doctrine's "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements ...."

*Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 714-15 (5th Cir. 2012) (internal citations omitted).  The doctrine of ripeness is somewhat akin to the doctrines of abstention, which likewise operate to discourage premature adjudication of claims

18

in federal court.[14]  Admittedly, the elements for abstention do not squarely fit the circumstances of this case, as concluded by the District Court.  ROA.932.  But the rationale for restraint based on abstention resonates because the State is following a state-law process required by a federal statutory scheme.  Congress plainly intended that provider eligibility challenges would be subject to administrative review in accordance with state law.[15]  A federal court should not interrupt that process lightly.

To be clear, this jurisdictional challenge is based on ripeness not exhaustion.  As recognized by the District Court, the focus in a ripeness determination, is ***when*** an action may be brought (ROA.924), not ***whether*** an action may be brought.  LDHH acknowledges that PPGC has a right to judicial review[16] and that the existence of an administrative review process does not in and of itself implicate a need to exhaust those procedures.  *See* ROA.921.  Likewise, LDHH takes no quarrel with the proposition that exhaustion is often not a barrier to a claim based on 42 U.S.C. § 1983.  Rather, LDHH asserts that Plaintiffs' resort to federal court is premature during the pendency of the state administrative process under these unique

---

[14] *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976); *Younger v. Harris*, 401 U.S. 37 (1971); *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943); *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941).

[15] States are required to allow Medicaid providers "'the opportunity to submit documents and written argument against' such exclusion and 'any additional appeal rights that would otherwise be available under procedures established by the State.'"  *Guzman*, 552 F.3d at 951  (quoting 42 C.F.R. § 1002.213).

[16] La. R.S. § 46:107 authorizes review in state court following the administrative process.

19

circumstances, where the Medicaid scheme obligates the state to provide an administrative remedy and further development of the case may moot a claim in federal court.[17]

Neither *Roach* nor *Bentley* cited in the District Court's Ruling discuss ripeness and therefore do not stand for the proposition that "…a congressional requirement that states establish administrative review procedures… rarely, if ever, implies that … a case is unripe when the process has not been invoked but an injury plainly looms." ROA.921. To the contrary, the Supreme Court has recognized that the judicial doctrine of exhaustion of administrative remedies is conceptually distinct from the question of whether an "initial decisionmaker [sic] has arrived at a definitive position on the issue that inflicts an actual, concrete injury." *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson* City, 473 U.S. 172, 191-92 (1985); *see also*, *Bethlehem Steel Corp. v. E.P.A.*, 669 F.2d 903, 908 (3d Cir. 1982) ("In general, exhaustion refers to the steps which the litigant must take, whereas finality refers to the conclusion of activity by the agency."). The initial decision maker, the State of Louisiana, through LDHH, has not taken final action on

---

[17] The District Court misinterpreted LDHH's position. "Defendant argues that the administrative appellate process, having been accepted as generally valid by CMS, essentially foreclosed both PPGC's and the Individual Plaintiffs' resort to this (and any other) court." ROA.920. LDHH recognizes that Plaintiffs may have a right to judicial review but that right has not yet come into existence.

App.0956

the issue of whether PPGC's provider contracts were properly terminated. Accordingly, the issue is not ripe for judicial review.

"[A] ripeness inquiry is often required when a party is seeking pre-enforcement review of a law or regulation." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 544 (5th Cir. 2008) (citing *Poe v. Ullman*, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961)); *Lake Carriers' Ass'n v. MacMullan,* 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972)). Ripeness hinges on "(1) the fitness of the issues for judicial resolution, and (2) the potential hardship to the parties by declining court consideration." *Lopez*, 617 F.3d at 341; *Choice Inc. of Texas*, 691 F.3d at 714-15 (citing *Abbott Labs v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed. 2d 781 (1967)). Generally, a case is ripe if purely legal questions remain and, conversely, not ripe "if further factual development is required." *Choice Inc. of Texas*, 691 F.3d at 715 (citing *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 833 F.2d 583, 586 (5th Cir. 1987)). Nevertheless, if an issue is purely legal, "the plaintiff must show some hardship in order to establish ripeness." *Id.* (citing *Cent. & S.W. Servs., Inc. v. EPA,* 220 F.3d 683, 690 (5th Cir. 2000)). "In this sense, the doctrines of ripeness and standing 'often overlap in practice, particularly in an examination of whether a plaintiff has suffered a concrete injury.'" *Lopez,* 617 F.3d at 342 (citing *Texas v. United States*, 497 F.3d 491, 498 (5th Cir. 2007), *cert denied*, 55 U.S. 811 (2008)). "If the purported injury is 'contingent [on] future events that may not occur

21

App.0957

as anticipated, or indeed may not occur at all,' the claim is not ripe for adjudication."
*Id.* (citing *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 580-81
(1985)).

This case is not fit for judicial review because Plaintiffs have suffered no
injury and further factual development is necessary. Further, Plaintiffs cannot
demonstrate hardship by being required to participate in a fully suspensive review
process in accordance with the terms of its Medicaid provider agreements.

### 1.      *Fitness for judicial resolution*

#### a.      Plaintiffs have suffered no injury.

The District Court erred in finding this case fit for judicial review. As
analyzed above, Plaintiffs have suffered no concrete injury. Their claims are based
solely on "uncertain or contingent future events that may not occur as anticipated,
or indeed may not occur at all." ROA.912 (quoting *Tarrant Reg'l Water Dist. v.
Herrmann*, 656 F.3d 1222, 1250 (10th Cir. 2011)). That is, the administrative
process, which was in place prior to the issuance of the preliminary injunction, may
result in a favorable ruling to PPGC.[18] Indeed, "'one of the principal reasons to
await the termination of agency proceedings' is the possibility that a dispute may be
mooted if the party ultimately prevails before the agency, thereby obviating all

---

[18] The District Court incorrectly concluded that "[N]o state proceeding predated the initiation of
this federal action…." ROA.921. While no state *judicial* proceeding predated the federal lawsuit,
there was a legitimate, parallel state administrative proceeding take place.

App.0958

occasion for judicial review." *Bethlehem Steel Corp. v. E.P.A.*, 669 F.2d 903, 908 (3d Cir.1982) (quoting *F.T.C. v. Standard Oil Co. of California*, 449 U.S. 232 (1980)). Further, discovery between the parties during the administrative process may prompt a different administrative outcome.

b.   <u>Further factual development is required.</u>

In addition to the missing injury component, this lawsuit is not ripe for judicial review because further factual development is required at the administrative level. LDHH agreed that no additional discovery was necessary and that the record was complete *solely* for the sole purpose of converting the temporary restraining order to a permanent injunction to allow for an appeal. ROA.886, 888. LDHH ***has not*** agreed that additional factual development is unnecessary for any purpose as concluded by the District Court. ROA.922. To the contrary, factual development is necessary as it may "affect the claims in this suit." *Rush v. Barham*, No. 14-30872, 2015 WL 4467848 (5th Cir. July 22, 2015) (*per curiam*).

The charges against PPGC include alleged misrepresentations, a failure to cooperate, and the circumstances and resolution of fraud charges elsewhere. ROA.498-509. LDHH has requested additional information from PPGC, and PPGC moved to propound discovery on LDHH. Clearly, there are facts to discover that bear upon whether PPGC should be deemed unqualified to participate as a plan provider. The court erred in accepting Plaintiffs' arguments that these charges have

23

nothing to do with PPGC's qualifications as a Medicaid provider without the benefit of a fully developed administrative record.

### 2.    *Plaintiffs will suffer no hardship by withholding judicial review at this early stage of the administrative process.*

The second factor in the test for ripeness is the hardship on the parties by withholding judicial review. *Lopez*, 716 F.3d at 342. Plaintiffs, as the parties seeking to invoke jurisdiction, have the burden of demonstrating hardship. *Choice Inc. of Texas*, 691 F.3d at 715-716. The District Court erred by effectively equating the administrative process to a hardship, flipping the burden to the Secretary to prove otherwise. ROA.918. This process is required by federal law and forms part of the state Medicaid plan. 42 C.F.R. § 1002.213. It is illogical to conclude that resort to this suspensive review process somehow creates hardship on the very parties it was designed to protect. By requiring that States provide an administrative process, Congress is presumed to have balanced the hardship of administrative delay against the need to avoid premature adjudication. *See Heckler v. Ringer*, 466 U.S. 602, 626 (1984). Further, proof of hardship surely requires more than alleging the potential results of an unfavorable outcome on the merits, particularly where the claim is grounded in the Medicaid Act, which has a severely restrictive exhaustion requirement for virtually all legal attacks. *See Southwest Pharmacy Solutions, Inc. v. Centers for Medicare & Medicaid Servs.*, 718 F.3d 436 (5th Cir. 2013) (rejecting a hardship claim to 42 U.S.C. § 1395ii).

24

The District Court erred in finding that Plaintiffs satisfied Article III's requirements of standing and ripeness.

## II.   Plaintiffs Do Not Have a Private Right of Action.

### A.   Standard of Review

The question of statutory standing in this case—which is antecedent to any evaluation of the preliminary injunction factors—is subject to *de novo* review. *McCaig v. Wells Fargo Bank (Texas), N.A.*, 788 F.3d 463, 472 (5th Cir. 2015) (citing *Janvey v. Brown*, 767 F. 3d 430, 437 (5th Cir. 2014)).

### B.   The District Court's  expansive interpretation of  42 U.S.C. § 1396a(a)(23) – to provide for a private right of action  to challenge the  decertification of a provider – is at odds with *Armstrong*[19] and in direct conflict with *O'Bannon*.[20]

To seek redress through § 1983, "a plaintiff must assert a violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone,* 520 U.S. 329, 340 (1997) (citation omitted) (emphasis added).  In Spending Clause cases that standard is very high.  The Supreme Court has insisted that "unless Congress speaks with a clear voice, and manifests an unambiguous intent to confer individual rights, federal funding provisions provide no basis for private enforcement." *Gonzaga University v. Doe*, 536 U.S. 273, 280 (2002).   The party asserting a right of action

---

[19] *Armstrong v. Exceptional Child Center, Inc.*, 135 S.Ct. 1378 (2015).

[20] *O'Bannon v. Town Court Nursing Center*, 446 U.S. 773 (1980).

must demonstrate that (1) "Congress . . . intended that the provision in question benefit the plaintiff;" (2) "the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence;" and (3) "the statute . . . unambiguously impose[s] a binding obligation on the States." *Blessing*, 520 U.S. at 340.  Moreover, a § 1983 claim does not lie if Congress has— expressly or impliedly—foreclosed a private remedy.  *Blessing* 520 U.S. at 340 (noting that Congress could impliedly foreclose a private remedy "by creating a comprehensive scheme of enforcement that is incompatible with individual enforcement under § 1983").

The District Court held that the Individual Plaintiffs have a private right of action pursuant to Section 1396a(a)(23) to collaterally attack LDHH's decision to disqualify PPGC from Medicaid.  This expansive holding is at odds with the Supreme Court's most recent analysis of a private enforcement action under the Medicaid Act.  *Armstrong,* 135 S.Ct. 1378 (2015).

Moreover, even assuming a private enforcement action exists, as found by three circuit courts prior to *Armstrong*,[21] the Supreme Court's 1980 decision in

---

[21] *Harris v. Olszewski,* 442 F.3d 456 (6th Cir. 2005) (challenge to single source provider contract that excluded certain incontinence products); *Planned Parenthood of Indiana v. Commissioner of Indiana State Department of Health,* 699 F.3d 962 (7th Cir. 2012) (challenge to constitutionality of state law prohibiting agencies from contracting with or making grants to any entity that performed abortions); *Planned Parenthood Arizona v. Betlach,*  727 F.3d 960 (9th Cir. 2013) (challenge to state law prohibiting any health care provider who performed elective abortions).

26

*O'Bannon* involving a disqualified nursing home makes clear Section 1396a(a)(23) does not authorize a Medicaid recipient to challenge a State's decision to disqualify a provider.  44 U.S. at 786.  The District Court did not consider *O'Bannon*,[22] and none of the opinions interpreting Section 1396a(a)(23) relied upon by the District Court considered the contours of the statute in the light of *O'Bannon,* as those cases did not involve disqualification decisions.[23]  That Section 1396a(a)(23) creates a private right of action in favor of individual Medicaid recipients does not end the analysis.  The more narrow question that must be answered is whether this right authorizes an action to challenge a State's decision to disqualify a provider. *O'Bannon* squarely answers that question in the negative.  At most, a private right of action under Section 1396a(a)(23) authorizes a Medicaid recipient to demand care from any provider in the pool of Medicaid-approved (i.e., qualified) providers.

### C.    Under the Rationale of *Armstrong*, Section 1396a(a)(23) Does Not Support a Private Right of Action.

The Supreme Court has acknowledged its evolution towards "reject[ing] attempts to infer enforceable rights from Spending Clause statutes."  *Gonzaga Univ.*,

---

[22] Presumably, the District Court found *O'Bannon* distinguishable because it involved a due process challenge, given that the court expressly declared a line of Second Circuit cases relying on *O'Bannon* "irrelevant."  The court was clearly wrong in this regard.  See discussion *infra* at pages 31 through 36.

[23] *See Harris,* 442 F.3d 456; *Planned Parenthood of Indiana,* 699 F.3d 962; *Betlach,* 727 F.3d 960.

27

536 U.S. at 280.[24]  The 2015 *Armstrong* decision is the most recent of these cases wherein the Court recognized this trend[25] and refused to find a private right of action to enforce 42 U.S.C. § 1396a(a)(30)(A).  *See Armstrong*, 135 S.Ct. at 1385 ("the Medicaid Act implicitly precludes private enforcement of [§ 1396a(a)(30)(A)[26]], and respondents cannot, by invoking our equitable powers, circumvent Congress's exclusion of private enforcement.").  The Court rejected a private right of action based on "[t]wo aspects of" the statute.  First, "the sole remedy Congress provided for a State's failure to comply with Medicaid's requirements—for the State's breach of the Spending Clause contract—is the withholding of Medicaid funds by the Secretary . . . " noting that "the 'express provision of one method of enforcing a

---

[24] The Supreme Court in *Gonzaga* held that the Family Educational Rights and Privacy Act did not create a private right of action to enforce under § 1983.

[25] The District Court did not acknowledge this trend.  Rather, it incorrectly asserted that *Wilder v. Virginia Hospital Association*, 496 U.S. 498 (1990), "remain[s] binding and undisturbed." ROA.937.  While not explicitly overruled, the Supreme Court has recognized that its decision in *Gonzaga* "plainly repudiates the ready implication of a § 1983 action that *Wilder* exemplifies." *Armstrong*, 135 S.Ct. at n.2 (citing *Gonzaga*, 536 U.S. at 283).  Similarly, the District Court found this Court's decision in *Romano v. Greenstein*, 721 F.3d 373 (5th Cir. 2013) "persuasive (and decisive). . . ." ROA.940.  However, *Romano* relied heavily on *Wilder*.  The District Court failed to reconcile the impact of the Supreme Court's announced movement away from *Wilder*-esque decisions on cases like *Romano*.

[26] 42 U.S.C. § 1396a(a)(30)(A) requires state Medicaid plans to "provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan (including but not limited to utilization review plans as provided for in section 1396b(i)(4) of this title) as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area[.]"

28

substantive rule suggests that Congress intended to preclude others." *Id.* at 1385 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001)). And second, the "judicially unadministrable nature" of Section 1396a(a)(30)(A) based on the statute's broad language and "judgment-laden standard."[27]

The language of 42 U.S.C. § 1396a(a)(23) warrants a similar conclusion when read in the context of the Act's provisions regarding disqualification. First, "qualified" is not defined in the Medicaid Act "and the term is not self-defining." *Planned Parenthood of Indiana*, 399 F.3d at 978. Second, the Act provides discretionary grounds upon which a State may exclude providers (42 U.S.C. § 1320a-7(b))[28] and authorizes a State to exclude providers "for any reason for which the Secretary could exclude that individual or entity from participation" and "for any reason or period authorized by State law." 42 U.S.C. § 1396a(p); 42 C.F.R. § 1002.2(a)-(b). The agency-based enforcement system Congress created allows for—indeed requires—the federal agency and state agency to use their technical and

---

[27] *Id.* The Court concluded that "[e]xplicitly conferring enforcement of this judgment-laden standard upon the Secretary alone establishes, we think, that Congress 'wanted to make the agency remedy that it provided exclusive,' thereby achieving 'the expertise, uniformity, widespread consultation, and resulting administrative guidance that can accompany agency decisionmaking' and 'avoiding the comparative risk of inconsistent interpretations and misincentives that can arise out of an occasional application of the statute in a private action.'" *Id.* (quoting *Gonzaga Univ.*, 536 U.S. at 292 (Breyer, J., concurring)).

[28] To name only a few, those grounds include convictions for certain crimes, license revocations or suspensions, exclusions or suspensions under federal or state health care programs, and making false statements or misrepresentations. 42 U.S.C. § 1320a-7(b).

29

experience-based expertise to collaborate on the meaning and application of these provisions.  The District Court's resort to a plain-meaning interpretation of the term "qualified" without the benefit of agency expertise oversimplifies the eligibility process for Medicaid participation, which requires more than mere medical competence.

### D.   Section 1396a(a)(23) does not create a private right of action for a Medicaid recipient to challenge a State's decision to disqualify a provider.

If there is a federal right to be enforced by §1983, it must be strictly limited to the right Congress intended.  That proposition follows logically from Congress's refusal to find a private right of action in a Spending Clause statute unless it clearly and unmistakably provided for it.  *Gonzaga Univ.*, 536 U.S. at 280 (citing *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 17, 28 and n. 21 (1981))) ("[U]nless Congress 'speak[s] with a clear voice,' and manifests an 'unambiguous' intent to confer individual rights, federal funding provisions provide no basis for private enforcement by § 1983.")  Moreover, the *Blessing* factors focus on what benefit Congress was trying to provide and to whom it was trying to provide that benefit.  *See, e.g.*, *id.* at 285-86.

The Medicaid Act sets forth the mandatory requirements of a state plan for medical assistance.  Among other requirements, a state plan must:

> provide that . . . any individual eligible for medical assistance (including drugs) may obtain such assistance

30

> from any institution, agency, community pharmacy, or person *qualified* to perform the service or services required . . . who undertakes to provide him [or her] such services.

42 U.S.C. § 1396a(a)(23) (emphasis added). If *Armstrong* leaves room for a private right of action under this provision, it does not extend to allow Medicaid recipients to dictate which providers are deemed qualified plan participants.  The right to receive care from any provider in a pool of providers fundamentally differs from the right to define the pool of providers. The former is authorization for access.  The latter is authorization for control, which has much broader implications.

Indeed, a quarter of a century ago, the Supreme Court in *O'Bannon v. Town Court Nursing Center* expressly recognized this distinction, holding that "while a patient has a right to continued care in the qualified institution of his choice, he has no enforceable expectation of continued benefits to pay for care in an institution that has been determined to be unqualified." 447 U.S. at 785 (expressly noting that 42 U.S.C. §1396a(a)(23) does not "confer a right on a recipient to continue to receive benefits for care [from a provider] that has been decertified").  The plaintiffs in *O'Bannon* were Medicaid residents of a nursing home whose provider agreement was revoked because it no longer qualified as a skilled nursing facility under Medicaid regulations.  *See id.* at 776-77.  The nursing home and several residents filed suit alleging that the residents were entitled to an evidentiary hearing on the merits of the revocation based on a constitutionally protected right grounded in 42

31

U.S.C. § 1396a(a)(23).  *See id.* at 784.  The Supreme Court rejected this argument,

explaining that Section 1396a(a)(23) only allows Medicaid recipients to choose from

a pool of qualified healthcare providers, and does not give Medicaid recipients the

right to participate in decisions regarding which providers are qualified. *See id.* at

785.  The Court explained:

> Title 42 U.S.C. § 1396a(a)(23) gives recipients the right to
> choose among a range of *qualified* providers, without
> government interference.  By implication, it also confers
> an absolute right to be free government interference with
> the choice to remain in a home that continues to be
> qualified.  But it clearly does not confer a right on a
> recipient to enter an unqualified home and demand a
> hearing to certify it, nor does it confer a right on a recipient
> to continue to receive benefits for care in a home that has
> been decertified.
>
> ***
>
> In holding that these provisions create a substantive right
> to remain in the home of one's choice absent specific
> cause for transfer, *the Court of Appeals failed to give
> proper weight to the contours of the right conferred by the
> statutes and regulation*.  As indicated above, while a
> patient has a right to continued benefits to pay for care in
> the qualified institution of his choice, he has no
> enforceable expectation of continued benefits to pay for
> care in an institution that has been determined to be
> unqualified.

*Id.* (emphasis in original).  This rationale is squarely on point to the instant case.

O'Bannon* was a 7-1 decision with Justice Blackmun issuing a cautious

concurrence more sympathetic to the rights of the residents who were uprooted by

App.0968

the revocation of the nursing home's provider agreement. Nevertheless, Justice Blackmun concluded: "I am willing to recognize in this case that 'the very legislation which 'defines' the 'dimension' of the [patient's] entitlement, while providing a right to [remain in a home] generally, does not establish this right free of [disqualification of the home] in accord with [federal statutory] law.'" 447 U.S. at 802. This same result is inescapable here.

The Second Circuit found *O'Bannon* dispositive of this issue in *Kelly Kare, Ltd. v. O'Rourke,* 930 F.32d 170 (2d Cir. 1991). In that case, a home health provider, its employees and patients sought an injunction to prevent the termination of a Medicaid provider agreement. [29] The court rejected the claims by the individual patients based Section 1396a(a)(23):

> Medicaid's freedom of choice provision is not absolute. *See O'Bannon v. Town Court Nursing Center,* 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980). In *O'Bannon,* the Supreme Court held that Medicaid-eligible nursing home patients did not have a vested right to choose a nursing home that was being decertified as a health-care provider. *Id.* at 785, 100 S.Ct. at 2475. The Court stated that the freedom of choice provision was intended to give beneficiaries "the right to choose among a range of *qualified* providers, without government interference." *Id.* (emphasis in original).

---

[29] The individual patients asserted the same statutory right as the Individual Plaintiffs in the instant case. "A separate group of plaintiffs, the 'McNulla plaintiffs,' several Kelly Kare patients, claimed, as they do now, that they had been deprived of their rights under the Medicaid program's so-called "freedom of choice" provision. *See* 42 U.S.C. § 1396a(a)(23)(A). They argued that since the Medicaid statute gives them the right to choose any qualified Medicaid provider, they must be allowed to choose Kelly Kare." 930 F.2d at 173.

33

> We read *O'Bannon* as holding that a Medicaid recipient's freedom of choice rights are necessarily dependent on a provider's ability to render services. No cognizable property interest can arise in the Medicaid recipient unless the provider is both qualified and participating in the Medicaid program. When the source of government benefits runs dry through legitimate state action, beneficiaries are hard-pressed to establish a legitimate entitlement to that benefit. *See O'Bannon,* 447 U.S. at 798, 100 S.Ct. at 2482 (Blackmun, J. concurring).

> We therefore conclude that the McNulla plaintiffs do not have a property interest in their freedom to choose Kelly Kare as their provider because Westchester County has properly cancelled Kelly Kare's contract.

970 F.2d at 177-78.  The court below categorically rejected the reasoning of *Kelly Kare* (and presumably *O'Bannon*) merely because it involved a due process claim.[30] This reasoning disregards that *Kelly Kare* followed the Supreme Court's interpretation of the "contours" of Section 1396a(a)(23), which is the same foundational issue in this case.  *O'Bannon*, 447 U.S. at 785. [31]

---

[30] The District Court concluded, "when statutes like Section 1396a(a)(23) provide the gravamen and no procedural due process claim is made, Defendant's cases cannot be legally relevant." ROA.920.

[31] The opinions relied upon by the District Court from the Sixth, Seventh and Ninth Circuits did not involve disqualification decisions about individual providers and thus are not directly at odds with *O'Bannon*. *Harris*, 442 F.3d 456 (challenge to single source provider contract that excluded certain incontinence products); *Planned Parenthood of Indiana,* 699 F.3d 962 (challenge to constitutionality of state law prohibiting agencies from contracting with or making grants to any entity that performed abortions); *Betlach,* 727 F.3d 960 (challenge to state law prohibiting any health care provider who performed elective abortions).

The District Court's decision wrongly conflicts with *O'Bannon* and disregards the Supreme Court's edict that private rights of action shall not be found in federal funding provisions unless Congress has "manifest[ed] an 'unambiguous' intent to confer individual rights." *Gonzaga Univ.*, 536 U.S. at 280 (quoting *Pennhurst State School and Hospital*, 451 U.S. at 17, 28 and n. 21). If Congress had intended Medicaid patients to have a right of action to collaterally challenge qualification determinations made by state or federal agencies, it would have done so in a more conspicuous and straight-forward manner. It would not have buried the provision in a long list of instructions on how to prepare a state Medicaid plan—especially given that Congress devised a specific federal agency-enforcement regime to apply and enforce the instructions in that list.

Certainly, the provision, viewed in the context and structure of the Medicaid Act, does not include an "unambiguously conferred right" to collaterally challenge a state or federal agency's determination that a specific provider should be excluded from the Medicaid program as unqualified based on misconduct. *See Gonzaga Univ.*, 536 U.S. at 283 (rejecting "the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action under § 1983"), at 280 (noting that "the key" to the very few prior decisions allowing a § 1983 action to enforce Spending Clause legislation was that "Congress spoke in terms that 'could not be clearer'").

At a minimum, the District Court erred in its broad interpretation of the private right of action conferred by Section 1396a(a)(23).

## III.   The Court Erred in Issuing the Preliminary Injunction

### A.   Standard of Review

A preliminary injunction is an "extraordinary and drastic remedy . . . that should not be granted unless the movant, by a clear showing, carries the burden of persuasion. *Mazerek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation and quotation omitted). The District Court correctly set forth the factors that must be established to secure a preliminary injunction:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest."

ROA.933 (internal citations omitted).   Because the four prerequisites are mixed questions of fact and law, the standard of review differs.   The District Court's factual conclusions will be upheld unless clearly erroneous while the legal conclusions "are subject to broad review and will be reversed if incorrect."   *Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384, 386 (5th Cir. 1984) (quoting *Commonwealth Life Insurance Co. v. Neal,* 669 F.2d 300, 304 (5th Cir. 1982)).

36

**B.      Plaintiffs are Not Likely to Succeed on the Merits of Their Claims**

The Medicaid Act gives a state agency, like LDHH, the power to exclude providers from the Medicaid program for a wide variety of reasons.  And because 42 U.S.C. § 1396a(a)(23)'s free-choice-of-provider provision is expressly limited to choosing among *qualified* providers, the statute does not give Medicaid patients the right to choose providers who have been legitimately removed from the Medicaid program.  Accordingly, the Individual Plaintiffs are not likely to succeed on the merits of their § 1396a(a)(23) claim.

*1.      The District Court erred in narrowly interpreting "qualified" to mere medical competence.*

The District Court erred in confining the term "qualified" in § 1396a(a)(23)(A) to *medical competence* (ROA.947-953) as that term is not so limited by federal or state law.[32]  The free choice of provider provision confers upon Medicaid recipients "the right to choose among a range of *qualified* providers,

---

[32] This holding was summarized in the following statement by the District Court:

> [I]t is clear that a provider 'qualified to perform the services or services required' is one who is 'capable and competent' of 'perform[ing]' the 'service or services' for which he, she, or it has been contracted by the Medicaid eligible individual seeking 'medical assistance. 42 U.S.C. § 1396a(a)(23).  If it is competent to offer those services, an individual "may" choose them without a state intruding . . . .

ROA.947.  *See also* ROA.906 ("This Free-Choice-of-Provider Provision bans Defendant from excluding PPGC from Medicaid for a reason unrelated to its fitness to provide medical services.").

37

without government interference." *O'Bannon*, 447 U.S. at 785 (emphasis added). The Medicaid Act does not define the term "qualified" in relation to a provider and "the term is not self-defining." *Planned Parenthood of Indiana*, 699 F.3d at 978. As the Seventh Circuit has explained, "'qualified' means fit to provide the necessary medical services—that is, capable of performing the needed medical services in a **professionally competent**, **safe**, **legal**, and **ethical** manner." *Planned Parenthood of Indiana*, 699 F.3d at 978 (emphasis added).

The Medicaid Act, its implementing regulations and federal courts have recognized that a state has "broad authority to exclude unqualified providers from its Medicaid program." *Planned Parenthood of Indiana*, 699 F.3d at 968.[33] Accordingly, a state participating in Medicaid retains the power to establish "reasonable standards relating to the qualifications of providers...." 42 C.F.R. § 431.51(c)(2). The Medicaid exclusion statute, found at 42 U.S.C. § 1396a(p), allows a state to exclude health care providers from participation in Medicaid "for any reason for which the Secretary could exclude the [provider] from participation [in Medicare, such as fraud, misrepresentation or other malfeasance]," "[i]n addition to

---

[33] "No one disputes that the states retain considerable authority to establish licensing standards and other related practice qualifications for providers – this residual power is inherent in the cooperative-federalism model of the Medicaid program and expressly recognized in the Medicaid regulations." *Planned Parenthood of Indiana*, 699 F.3d at 980.

38

any other authority."[34]   Further, federal law is clear that no provisions contained within the regulations pertaining to state-initiated exclusions from Medicaid "should be construed to limit a State's own authority to exclude an individual or entity from Medicaid for any reason or period authorized by State law."  42 C.F.R. § 1002.2. Essentially, the state's determination of "qualified" is a "judgment-laden standard" that was intended by Congress and the Medicaid statute to be enforced by CMS and the Secretary, not Medicaid participants as contended by Plaintiffs.  *Armstrong*, 135 S. Ct. at 1385.  As such, "[a] court applying the free-choice-of provider provision . . . does not usurp a state's authority to set medical qualifications; instead it defers to and applies the state's own determination of appropriate qualifications for the services provided."  *Betlach*, 727 F.3d at n.6.[35]

---

[34] Louisiana law sets froth several circumstances under which a provider may be terminated or excluded from participating in Medicaid.  La. R.S. § 46:437.11; La. Admin. Code § 50:4147 (also referred to as Surveillance and Utilization Review Subsystem or "SURS").  Those reasons include but are not limited to failure to comply with federal laws and regulations, failure to comply with the Medicaid provider agreement, entering into a settlement agreement under the Federal False claims Act, and making false or misleading statements.  *See* La. Admin. Code § 50:4147.  Further, La. R.S. § 46:437.14 sets forth several grounds for denying or revoking enrollment in the state's medical assistance programs, including but not limited to misrepresentations by the health care provider.

[35] This is assuming arguendo that the Individual Plaintiffs have a right of action in this lawsuit. *Betlach* was decided by the Ninth Circuit more than two years prior to the Supreme Court's decision in *Armstrong*.  As discussed in preceding sections of this brief, *Armstrong* applies by analogy to and makes clear that the Individual Plaintiffs do not have a right of action to enforce 42 U.S.C. § 1396a(a)(23).

39

For example, the First Circuit has determined that the language in the Medicaid exclusion statute, "in addition to any other authority," "permit[s] a State to exclude an entity from its Medicaid program *for any reason established by state law*." *First Medical Health Plan v. Vega-Ramos*, 479 F.3d 46, 53 (1st Cir. 2007) (emphasis added). *Vega-Ramos* recognized that "[w]hile Medicaid is a state-run program, [the state] accepts federal Medicaid funds and thus must comply with federal Medicaid laws." *Id.* In reaching its conclusion, the First Circuit quoted from the legislative history of the Medicaid Act:

> The [Medicaid exclusion] statute expressly grants states the authority to exclude entities from their Medicaid programs for reasons that the Secretary could use to exclude entities from participating in Medicare. But it also preserves the state's ability to exclude entities from participating in Medicaid under 'any other authority.' The legislative history clarifies that this 'any other authority' language was intended to permit a state to exclude an entity from its Medicaid program for *any* reason established by state law. The Senate Report states:
>
>> The Committee bill clarifies current Medicaid Law by expressly granting States the authority to exclude individuals or entities from participation in their Medicaid programs for any reason that constitutes a basis for an exclusion from Medicare. . . . *This provision is not intended to preclude a State from establishing, under State law, any other bases for excluding individuals or entities from its Medicaid program.*

App.0976

*Id.* (emphasis by the court) (quoting S. Rep. 100-109, reprinted in 1987 U.S.C.C.A.N. at 700).

Informational bulletins issued by CMS also reveal the broad discretion of States to define "qualified" beyond medical competence and acknowledge that States may terminate a provider agreement in accordance with state law.   For example, a May 31, 2011 bulletin discussing "for-cause" Medicaid exclusions explains, "For cause may include, but is not limited to, termination for reasons based upon fraud, integrity, or quality." CMS, CPI-CMCS Informational Bulletin (May 31, 2011), at https://downloads.cms.gov/cmsgov/archived-downloads/CMCS Bulletins/downloads/6501-Term.pdf. Additionally and even more persuasive is the CMS Bulletin issued on January 20, 2012 clarifying:

> CMS understands that States must follow their own State law regarding terminations.  CMS recognizes that there are numerous circumstances which may qualify as 'for cause' terminations and that States may have different interpretations of what constitutes 'for cause' terminations.

 CMS, CPI-CMCS Informational Bulletin, at 2 (January 20, 2012), at https://www.medicaid.gov/Federal-Policy-Guidance/downloads/CIB-01-20-12.pdf.

Neither the June 1, 2011 CMS Bulletin cited by the District Court (ROA.951-952 (citing CMS, CMCS Informational Bulletin (June 1, 2011), at https://www.medicaid.gov/Federal-Policy-Guidance/downloads/6-1-11-Info-Bulletin.pdf)) nor the Statement of Interest filed by CMS in this lawsuit (ROA.225)

41

stand for the proposition that CMS confines "qualified" to medical competence.   It is important to point out that the Statement of Interest filed by CMS was filed in response to the initial, at-will termination. CMS has offered no comment on the for-cause termination.

The June 1, 2011 CMS bulletin addressed the very narrow question of whether states may exclude providers based solely on the scope of services they provide. CMS, CMCS Informational Bulletin (June 1, 2011), at https://www.medicaid.gov/Federal-Policy-Guidance/downloads/6-1-11-Info-Bulletin.pdf.   This is the same issue later addressed by the Seventh and Ninth Circuits in *Planned Parenthood of Indiana* and *Betlach,* which is not at issue here.[36] Unlike those cases, the instant matter involves the disqualification of a single provider on the basis of misconduct.   LDHH has not categorically excluded an entire class of providers or services.

Statements made at the September 2 hearing regarding PPGC's medical competence do not support a finding that PPGC was a qualified provider.   The District Court found that "[LDHH] conceded that PPGC is competent to provide the services required by the Agreements and by the Medicaid Act" (ROA.948.), and that an injunction, at worst, "will halt [LDHH's] exercise of a particular power as to a single provider as to whose medical competency it has already admitted."   ROA.960-

---

[36] *Planned Parenthood of Indiana*, 699 F.3d 962; *Betlach*, 727 F.3d 960.

42

961.[37] Those statements were made in connection with the initial, at-will termination before PPGC's competence was at issue.

The District Court's finding that the "concession was never retracted" (ROA.948, citing Hr'g Tr. 22:4-23:5, Oct. 2, 2016) is incorrect. First, the rescission of the initial termination combined with the September 15 for-cause termination effectively retracted that statement. Second, assuming arguendo that the statement was not retracted, it was not a judicial admission as it was made in a different procedural context. *See Dartez v. Owens-Illinois, Inc.*, 910 F.2d 1291, 1294 (5th Cir. 1990). Third, during the October 16 hearing, counsel for LDHH attempted to explain that "qualified" for purposes of 42 U.S.C. § 1396a(a)(23) is much broader than medical competence. The District Court refused counsel's explanation while seemingly recognizing that whether a provider is qualified is "a whole different bag of snakes. . . ." (ROA. 1010, Hr'g Tr. 22:22-25, Oct. 2, 2016).

---

[37] Similarly, it explained:

> PPGC's competence to provide the Medicaid services was also discussed. In response to this Court's question regarding wither DHH had yet 'raised any suggestion or made any suggestion that the reason for terminating the contract has anything to do with competency or the adequacy of the care that is give' by PPGC 'to the patients who get their care at those facilities,' Plaintiffs' counsel answered, 'No.' (Hr'g Tr. 3:19-214, Sept. 2, 2015).

ROA.900.

43

App.0979

The September 15 Letters set forth several valid grounds for finding PPGC unqualified to maintain its provider agreements within the scope of Section 1396a(a)(23). ROA.498-509.[38]

## 2.      *LDHH Provided Valid Reasons for Disqualifying PPGC.*

In addition to erroneously concluding that "qualified to perform the service" translates to medically competent, the District Court likewise erred in concluding that "even if [LDHH's] definition of 'qualified' prevails, [LDHH's] reasons for disqualifying PPGC likely will not." ROA.953. LDHH provided several valid grounds to terminate PPGC's Medicaid provider agreements. ROA.498-509.

The first was fraud. The September 15 Letters stated that "under consideration in our departmental proceedings are provider audits and false claims cases against [PPFA] affiliates," including certain cases against PPGC. *See* La. Admin. Code § 50:4103 (defining "affiliate" and "provider-in-fact").[39] The letter

---

[38] The District Court's reliance on the February 19, 2014 report from the Louisiana Legislative Auditor is also misplaced. ROA.892. The Louisiana Legislative Auditor has no authority to interpret or enforce the law with regard to PPGC. La. R.S. §24.513. Further, that audit was in response to Senate Concurrent Resolution No. 57 and House Resolution No. 105 of the 2013 Regular Session. It was wholly unrelated to the facts and issues currently pending in this lawsuit and PPGC's qualifications. ROA.472-475. Specifically, the Auditor determined that payments were made to PPGC by the state for allowable family planning procedure codes under Medicaid and that there was no indication that PPGC had performed or recommended abortions to patients. *Id.*

[39] The Louisiana Administrative Code provides that program violations by an affiliate or provider-in-fact can subject a Louisiana enrolled provider (as an affiliate) to enrollment termination. *See, e.g.*, La. Admin Code § 50:4103 (Definition of "Exclusion from Participation," part b.).

44

cited a $4.3 million Federal False Claims Act settlement paid by PPGC to the State of Texas and the United States who "contended that PPGC submitted false claims" based on PPGC's qui tam claim that it "submitted false claims for medically unnecessary or unneeded items or services" over a six-year period. ROA.722-745, Settlement Agreement, *Reynolds v. Planned Parenthood Gulf Coast,* 9:09-cv-124 (E.D. TX, Lufkin Div. July 25, 2013).  The letter also cited PPGC's failure to inform LDHH of the *Reynolds* settlement as required by the Louisiana Administrative Code.[40]  Further, it cited an additional False Claims Action that is currently pending against PPGC, in which the judge concluded that the information already provided "allows the court to draw the reasonable inference that Planned Parenthood knowingly filed false claims." Memorandum Opinion and Order at 17, *Carroll v. Planned Parenthood Gulf Coast*, No. 4:12-cv-03505 (S.D. TX, Houston Div.) (May 14, 2014)(Docket Entry #74 sets final pretrial conference for 1/27/2016).

Louisiana law allows LDHH to disqualify providers for, among other reasons, "entering into a settlement agreement under . . . the Federal False Claims Act. . . ." La. Admin. Code § 50:4147.  PPGC did just that as a result of PPGC's settlement in

---

[40] LDHH cited La. Administrative Code, title 50, as well as La. R.S. § 46:437.14(A)(10) and (12) which allows LDHH to revoke enrollment if a provider is found in violation of licensing or certification conditions, or "any condition of enrollment," which includes fiscal integrity. *See, e.g.,* ROA.358.

the *Reynolds* case.  ROA.722-745.  The District Court erred in literally interpreting Louisiana Administrative Code § 50:4147.A.12(c) to discount the effect of the settlement and to disregard the appearances of the United States and of Texas based on a provision stating, "If a False Claims act action or other similar civil action is brought by a Qui-Tam plaintiff, no violation of this provision has occurred until the defendant has been found liable in the action."   The Supreme Court has long been of the opinion that "[a]ll laws are to be given a sensible construction; and a literal application of a statute, which would lead to absurd consequences, should be avoided whenever a reasonable application can be given to it, consistent with the legislative purpose."  *United States v. Katz*, 271 U.S. 354, 357 (1926).   That provision is designed to protect providers from being disqualified on the basis of unsubstantiated qui tam actions by competitors, aggrieved employees or the like.  ROA.1025-1026 (Hr'g Tr. 37:16-38:8, Oct. 16, 2015).   When the federal government or a state government approves of or participates in the qui tam action, that concern is dissipated. In *Reynolds*, both the United States government and the State of Texas contended "that PPGC submitted false claims and made false statements. . . ." ROA.727-728.  The District Court's interpretation of the regulation would exclude all qui tam actions unless there was a trial and a finding of liability.

Additionally, PPGC's ***failure to notify*** LDHH of violations arising out of the *Reynolds* settlement and the *Carroll* case is a violation of Louisiana Law.  LDHH's

46

knowledge of the *Reynolds* settlement long before October 14, 2015 is immaterial. *See* ROA.954. The failure to notify is a separate and independent ground for disqualification, and LDHH was not notified by PPGC in either case. La. Admin. Code § 50:4147A.12.b.[41]

The second ground for disqualification was PPGC's misrepresentations. The Second Termination Letters cited La. R.S. § 46:437.14(A)(1), which gives LDHH the authority to deny or revoke a provider's enrollment in the Medicaid program in cases of misrepresentation. Citing the PPGC letters in response to its inquiries, LDHH expressed its belief that

> PPGC misrepresented its actions therein and had contradictions within the body of the letter and with the statements and admissions made in the CMP videos, including but not limited to the video released on August 4, 2014 and taped in April of this year, containing conversations with PPGC senior management, including the PPGC director of research and the PPCFC facility director.

ROA.498-509. The District Court criticized LDHH's lack of specificity regarding the PPGC's misrepresentations; however, this should be addressed at an administrative hearing. PPGC has the right to request additional information regarding the reasons for its disqualification, to seek an informal hearing, to conduct

---

[41] The email cited by the District Court demonstrates that State did not have credible evidence of Medicaid fraud by PPGC at that time. (ROA.954, citing to email from Olivia Watkin to Kyle Plotkin, *et al.* on July 25, 2013 at ROA.531). Importantly, a finding of Medicaid fraud is not required to disqualify a provider from participation in the state's Medicaid program.

App.0983

discovery and to have a formal hearing before an administrative law judge. La. Admin. Code §§ 50:4169, 4203, 4211. This is precisely the reason for the administrative process.

Finally, the September 15 for-cause letter also cited La. R.S. § 46:437.11(D)(2), which provides that "[t]he secretary may terminate a provider agreement immediately and without written notice if a health care provider is the subject of a sanction or of a criminal, civil, or departmental proceeding." LDHH correctly determined that "PPGC currently fits within this statute due to the investigations by both [LDHH] and the Louisiana Office of Inspector General." *See, e.g.,* ROA.499.

Notably, the disqualification was consistent with the January 20, 2012 CMS Bulletin's list of "Examples of For Cause Terminations," such as "Providers that are terminated by State Medicaid Agencies because they have engaged in fraudulent conduct," or "due to abuse of billing privileges, e.g., billing for services not rendered" (as was the claim in the *Reynolds v. PPGC* $4.3 million False Claims settlement), or "due to falsification of information ... submitted to maintain enrollment" (such as the apparent misrepresentations made in the PPGC letters). *Id.*

At no point after LDHH's issuance of the September 15 "for cause" notice of termination did CMS ever contact LDHH with any complaints or guidance, nor did it communicate (as it did after the at-will termination) that LDHH may be in

48

App.0984

violation of the broad authority granted to the LDHH Secretary under the Medicaid Act.

**C.      Plaintiffs Cannot Prove Irreparable Harm.**

"An indispensable prerequisite to issuance of a preliminary injunction is prevention of irreparable injury." *Van Arsdel v. Texas A&M University*, 628 F.2d 344, 346 (5th Cir. 1980).   To succeed in demonstrating a threat of irreparable injury, the "injury must be both certain and great; it must be actual and not theoretical." *Holland Am. Ins. Co. v. Succession of Roy,* 777 F.2d 992, 997 (5th Cir. 1985) (quoting *Wisconsin Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C. Cir. 1985). "Speculative injury is not sufficient [to make a clear showing of irreparable harm]." *Id*.  Further, "[m]ere "injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of [an injunction], are not enough." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (quoting *Morgan v. Fletcher,* 518 F.2d 236, 240 (5th Cir. 1975)).  It is not "the magnitude [of the harm], but the *irreparability* that counts for purposes of a preliminary injunction." *Id*. (quoting *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana,* 762 F.2d 464, 472 (5th Cir. 1985)).

The District Court erroneously concluded that "Plaintiffs have met their burden of showing irreparable harm." ROA.958.   Despite expressly declining to address the PPGC's alleged right of action, the District Court found that PPGC was

49

likely to suffer irreparable harm.  ROA.958.  This analysis puts the cart before the horse.  Before reaching the merits of the preliminary injunction as to PPGC, the Court was required to evaluate the legal basis for PPGC's claims and to conduct a jurisdictional analysis in response to the LDHH's motion to dismiss.  Assuming that consideration of whether PPGC was irreparably harmed was proper, its harm was self-inflicted.  Self-inflicted harm is not irreparable.  As the Tenth Circuit has explained, purported harm resulting from:

> . . . [T]he express terms of a contract [the plaintiff] negotiated, and therefore the removal of [its] managers is a harm that it inflicted upon itself. We will not consider a self-inflicted harm to be irreparable, and we therefore reject [the plaintiff's] contention that [the acts complained of] constitute an irreparable harm.

*Salt Lake Tribune Pub. Co., LLC v. AT & T Corp.*, 320 F.3d 1081, 1106 (10th Cir. 2003).

Further, the District Court erred in finding that the Individual Plaintiffs will suffer irreparable harm. *First*, as noted above, to the extent the Individual Plaintiffs have a right of action, that right under 42 U.S.C. § 1396a(a)(23) does not encompass using a provider that is not in the Medicaid program.  Rather, the right entails a choice among a pool of *qualified* providers in the state Medicaid program.  LDHH has not interfered with the Individual Plaintiffs' right to choose such a *qualified* provider.  Indeed, LDHH provided a list of available providers and a map of provider locations in connection with this lawsuit.  ROA.321-326.

50

*Second*, and more fundamentally, irreparable harm may not be presumed merely from a statutory violation, even one enforceable by a private right of action. *See Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 574 (5th Cir. 1974) ("[W]here no irreparable injury is alleged and proved, denial of a preliminary injunction is appropriate."). Rather, courts must apply the usual test of whether a particular harm is concrete, great, and imminent enough to constitute irreparable harm. *See Flynn v. Siren-BookStrand, Inc.*, 2013 WL 53159595 at *5 (D. Neb. 2013). The Individual Plaintiffs have failed to establish the type of harm that is concrete, great, and imminent enough to constitute irreparable harm. The inability to exercise a "preference" for a disqualified provider does not meet this test.

The District Court did ***not*** find that patient plaintiffs would be unable to locate qualified providers to provide the services they sought. Instead, the District Court concluded that PPGC's current patients may not have a "ready and convenient outlet" for family planning services. ROA.959. This does not constitute the type of imminent, concrete, and great harm required for a finding of irreparable harm.

Whether or not the Individual Plaintiffs will face longer wait times after arriving for an appointment at other providers or longer lead times when scheduling appointments is speculative. Both depends on the provider each Individual Plaintiff chooses to visit, the time of year, and what services the patient needs. While, the difference in lead times needed to schedule an appointment may slightly increase the

51

difficulty of juggling family and work responsibilities, these inconveniences are common to everyone who needs to obtain healthcare. They are certainly not the type of great and concrete harm that would justify irreparable harm or necessitate the extraordinary relief of a preliminary injunction.

    **D.    The Balance of Harm and Public Interest Factors Weigh in Favor of Denying the Preliminary Injunction.**

The District Court erroneously concluded that Plaintiffs met their burden with regard to the final two factors of the preliminary injunction analysis. *See* ROA.960-962. As explained in the preceding section, the Individual Plaintiffs' harm is minimal. On the other hand, states have a substantial interest in administering their Medicaid program, overseeing the expenditure of state Medicaid funds and ensuring that Medicaid providers are complying with applicable laws and regulations. *See e.g.*, *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 441 (2004) (explaining that states have legitimate concerns regarding actions that "undermine the sovereign interests and accountability of state governments"). Similarly, the general public, whose tax dollars fund the Medicaid program, have an interest in the proper expenditure of those funds, including the oversight of providers who are receiving those funds. These concerns outweigh the mere inconvenience to the Individual Plaintiffs of having longer wait times or longer lead times for appointments for family planning services.

App.0988

Finally, the interest of the public was contemplated by Congress within the Medicaid Act when granting states authority to disqualify providers and in providing for administrative review.  Louisiana law makes that process suspensive.  Thus, the public interest is fully protected by allowing that process to run its course.

## CONCLUSION

For the foregoing reasons, LDHH respectfully requests this Court to reverse the District Court's decision and dismiss this case for lack of subject matter jurisdiction, or alternatively, reverse the District Court's entry of the preliminary injunction and remand for further proceedings.

Respectfully submitted,

**FAIRCLOTH MELTON, L.L.C.**

By:   /s/ Jimmy R. Faircloth, Jr.
          Jimmy R. Faircloth, Jr.  (A.C.)  (#20645)
          jfaircloth@fairclothlaw.com
          Brook L. Villa                       (#31988)
          bvilla@fairclothlaw.com
          301 Main St., Suite 920
          Baton Rouge, LA  70801
          Phone 225-343-9535
          Fax 225-343-9538

**ATTORNEYS FOR KATHY KLIEBERT,
IN HER OFFICIAL CAPACITY AS
SECRETARY OF THE LOUISIANA
DEPARTMENT OF HEALTH AND
HOSPITALS**

53

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Original Appellant Brief and record excerpts have this day been filed with the Clerk of Court for the Fifth Circuit Court of Appeals (and copies provided to the following opposing counsel) utilizing the CM/ECF System in accordance with Fed. R. App. P. Rule 25 and Fifth Circuit Rule 30:

> William E. Rittenberg
> RITTENBERG, SAMUEL AND PHILLIPS, LLC
> 715 Girod St.
> New Orleans, LA 70130-3505
> rittenberg@rittenbergsamuel.com
>
> Carrie Y. Flaxman
> PLANNED PARENTHOOD FEDERATION OF AMERICA
> 1110 Vermont Ave., NW, Suite 300
> Washington, DC 20005
> (202) 973-4830
> carrie.flaxman@ppfa.org
>
> Melissa Cohen
> PLANNED PARENTHOOD FEDERATION OF AMERICA
> 434 West 33rd Street
> New York, NY 10001
> (212) 261-4649
> melissa.cohen@ppfa.org

Baton Rouge, Louisiana, this 8th day of January, 2016.

_____/s/ Jimmy R. Faircloth, Jr._____
Jimmy R. Faircloth, Jr.

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32 (a)(7)(B) because this brief contains 13,509 words, excluding the parts of the brief exempted by Fed. R. App. P. 32 (a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32 (a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point font (Times New Roman).

3.  If the Court so requests, the undersigned will provide an electronic version of the Brief and/or a copy of the word count printout.


        /s/ Jimmy R. Faircloth, Jr.
        Jimmy R. Faircloth, Jr.

55

App.0991

Page 1

1               IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF TEXAS
2                        AMARILLO DIVISION
3    United States of America    *
     ex rel. ALEX DOE, Relator,  * CIVIL ACTION NO. 2:21-CV-
4                                * 00022-Z
                                 *
5    The State of Texas          *
     ex rel. ALEX DOE, Relator   *
6                                *
     The State of Louisiana      *
7    ex rel. ALEX DOE, Relator   *
                                 *
8            Plaintiffs,         *
     V.                          *
9                                *
     Planned Parenthood          *
10   Federation of America,      *
     Inc., Planned Parenthood    *
11   Gulf Coast, Inc., Planned   *
     Parenthood of Greater       *
12   Texas, Inc., Planned        *
     Parenthood South Texas,     *
13   Inc., Planned Parenthood    *
     Cameron County, Inc.,       *
14   Planned Parenthood San      *
     Antonio, Inc.,              *
15                               *
             Defendants          *
16
17       ********************************************
18           ORAL AND VIDEOTAPED DEPOSITION OF
19        TEXAS HEALTH AND HUMAN SERVICES COMMISSION
20               AND THE STATE OF TEXAS
21            30(b)(6) EMILY ZALKOVSKY
22               DECEMBER 6, 2022
23       ********************************************
24
25

Page 44

```
 1   claims for Texas Medicaid go through MCOs as opposed to

 2   Fee For Service?

 3              MR. BRISSENDEN:  Object to form.

 4        A.  Yes, I would agree.

 5        Q.  Okay.  Great.  So it's pretty important that

 6   the MCOs know which providers are enrolled.  Right?

 7              MS. STEPHENS:  Object to form.

 8        A.  Correct.

 9        Q.  Isn't it true that the Texas affiliates were on

10   the MPF well past February of 2017?

11        A.  That is correct.

12        Q.  Okay.  Into March of 2021?

13        A.  Let me check.  That is correct.

14        Q.  Okay.  What's -- are you familiar with the

15   acronym SAR, S-A-R?

16        A.  I am.

17        Q.  Okay.  What's a SAR?

18        A.  It's stands for, I believe, State Action

19   Request.

20        Q.  And what is that?

21        A.  That is a way for the State to give direction

22   to TMHP to take an action.

23        Q.  And I should have asked.  Just give me a high

24   level of what TMHP does as the State's Medicaid

25   contractor.
```

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF TEXAS
 2                    AMARILLO DIVISION
 3    United States of America    *
      ex rel. ALEX DOE, Relator,  * CIVIL ACTION NO. 2:21-CV-
 4                                 * 00022-Z
                                   *
 5    The State of Texas          *
      ex rel. ALEX DOE, Relator   *
 6                                 *
      The State of Louisiana      *
 7    ex rel. ALEX DOE, Relator   *
                                   *
 8            Plaintiffs,          *
      V.                          *
 9                                 *
      Planned Parenthood          *
10    Federation of America,      *
      Inc., Planned Parenthood    *
11    Gulf Coast, Inc., Planned   *
      Parenthood of Greater       *
12    Texas, Inc., Planned        *
      Parenthood South Texas,     *
13    Inc., Planned Parenthood    *
      Cameron County, Inc.,       *
14    Planned Parenthood San      *
      Antonio, Inc.,              *
15                                 *
              Defendants          *
16
17      ********************************************
18          ORAL AND VIDEOTAPED DEPOSITION OF
19       TEXAS HEALTH AND HUMAN SERVICES COMMISSION
20              AND THE STATE OF TEXAS
21            30(b)(6) JEFFREY GOLDSTEIN
22               DECEMBER 7, 2022
23      ********************************************
24
25
```

Page 96

1       Q.  And because it was federally mandated.

2   Correct?

3       A.  Correct.

4       Q.  Let's do the next one.  The next one is 37.

5               (Exhibit No. 37 marked)

6       Q.  Have you had a chance to review Exhibit 37?

7       A.  Yes.

8       Q.  Okay.  So I'll represent to you that Exhibit 37

9   is a printout of information that we obtained by doing a

10  provider search on the TMHP website.  Okay?

11      A.  Okay.

12      Q.  And you're familiar with TMHP?

13      A.  Yes.

14      Q.  What is TMHP?

15      A.  Texas Medicaid, I think, Health Partnership.

16      Q.  What does it -- what does it functionally do

17  with respect to Texas Medicaid?

18      A.  They are the entity that enrolls providers.

19      Q.  They're a contractor to HHSC?

20      A.  Yes, they are contracted.

21      Q.  Okay.  And you can tell from Exhibit 37 that

22  AOC TX, LLC is on Page 3 of 4 showing as a provider on

23  the TMHP website, and that it is accepting new patients

24  under traditional Medicaid.  Do you see that?

25      A.  Yes, I do.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| United States of America | § | |
| | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| | § | CIVIL ACTION NO. 2:21-CV-00022-Z |
| The State of Texas | § | |
| | § | Date:      March 9, 2022 |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| | § | |
| The State of Louisiana | § | |
| | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| Planned Parenthood Federation of America, Inc., Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., Planned Parenthood San Antonio, Inc., | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |
| | § | |

**<u>DEFENDANTS' RULE 26(a)(1) INITIAL DISCLOSURES</u>**

App.0996

Defendants Planned Parenthood Gulf Coast ("PPGC"), Planned Parenthood of Greater Texas, Inc., ("PPGT"), Planned Parenthood South Texas, Inc., ("PP South Texas"), Planned Parenthood Cameron County, Inc. ("PP Cameron County"), Planned Parenthood San Antonio, Inc. ("PP San Antonio") (collectively, the "Texas Affiliates"); and Planned Parenthood Federation of America, Inc. ("PPFA"), (together, the "Defendants") hereby submit their Initial Disclosures to Relator Doe and the State of Texas ("Plaintiffs") pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure.

These disclosures are made based on the information presently available to Defendants and are subject to supplementation or modification as more information becomes available. By making these disclosures, Defendants are not representing that they are identifying every document, tangible thing, or witness possibly relevant to this lawsuit. These disclosures are not intended to prejudice or waive any privileges or objections any of the Defendants may have with respect to any outstanding or subsequent requests for discovery.[1]

## I.      RULE 26(a)(1)(A)(i) WITNESSES

Defendants hereby disclose this list of persons who Defendants believe are likely to have discoverable information that Defendants may use to support their claims or defenses, unless solely for impeachment, based on Defendants' knowledge to date.

---

[1] Defendants understand that discovery will not begin until after the Court issues a Scheduling Order. Order (March 7, 2022) (finding that Defendants' outstanding motion to dismiss constitutes "good cause" for delay and stating that the "Court anticipates it will rule on the pending Motions to Dismiss (ECF Nos. 44, 47, 48, 50) before it issues a Scheduling Order that includes Rule 34 production and other relevant discovery deadlines").

1

| Name | Contact Information | Subject Matter |
|---|---|---|
| Melaney Linton<br><br>PPGC President & Chief Executive Officer | This witness should be contacted through undersigned counsel. | May have knowledge of facts related to PPGC's Texas and Louisiana Medicaid termination, Texas & Louisiana Medicaid claims process, and research agreements. |
| Melissa Farrell<br><br>Former PPGC Research Director | This witness should be contacted through undersigned counsel. | May have knowledge of facts related to PPGC's research agreements. |
| Alfred Curtis<br><br>PPGC Chief Operating Officer | This witness should be contacted through undersigned counsel. | May have knowledge of facts related to PPGC's Texas and Louisiana Medicaid termination, Texas & Louisiana Medicaid claims process, and research agreements. |
| Ronda Exnicious<br><br>Clinical Health Network for Transformation, Chief Revenue Officer<br><br>Former PPGC Vice President, Revenue Cycle Management | This witness should be contacted through undersigned counsel. | May have knowledge of facts related to PPGC's Texas and Louisiana Medicaid termination and Texas and Louisiana Medicaid claims process, including during the period covered by the injunction of the termination notice. |
| Jeffrey Hons<br><br>PP South Texas President & Chief Executive Officer | This witness should be contacted through undersigned counsel. | May have knowledge of facts related to PP South Texas' Texas Medicaid termination, Texas Medicaid claims process, including during the period covered by the injunction of the termination notice, and research agreements. |
| Polin Barraza<br><br>PP South Texas Senior Vice President & Chief Operating Officer<br><br>PP Cameron County President<br><br>PP San Antonio President | This witness should be contacted through undersigned counsel. | May have knowledge of facts related to PP South Texas, PP Cameron County, and PP San Antonio's Texas Medicaid termination, Texas Medicaid claims process, including during the period covered by the injunction of the termination notice, and research agreements. |

App.0998

| Name | Contact Information | Subject Matter |
|---|---|---|
| Ken Lambrecht<br><br>PPGT President & Chief Executive Officer | This witness should be contacted through undersigned counsel. | May have knowledge of facts related to PPGT's Texas Medicaid termination, Texas Medicaid claims process, including during the period covered by the injunction of the termination notice, and research agreements. |
| Sheila McKinney<br><br>PPGT Chief Operating Officer | This witness should be contacted through undersigned counsel. | May have knowledge of facts related to PPGT's Texas Medicaid termination, Texas Medicaid claims process, including during the period covered by the injunction of the termination notice, and research agreements. |
| Dan Sannes<br><br>PPGT Chief Financial Officer | This witness should be contacted through undersigned counsel. | May have knowledge of facts related to PPGT's Texas Medicaid termination, Texas Medicaid claims process, including during the period covered by the injunction of the termination notice, and research agreements. |
| Kasia White<br><br>PPGT Vice President Quality, Risk Management & Training | This witness should be contacted through undersigned counsel. | May have knowledge of facts related to PPGT's Texas Medicaid termination, Texas Medicaid claims process, including during the period covered by the injunction of the termination notice, and research agreements. |
| Beth Watson<br><br>PPGT Vice President Health Services | This witness should be contacted through undersigned counsel. | May have knowledge of facts related to PPGT's Texas Medicaid termination, Texas Medicaid claims process, including during the period covered by the injunction of the termination notice, and research agreements. |

App.0999

| Name | Contact Information | Subject Matter |
|---|---|---|
| Kim Custer<br><br>PPFA Executive Vice President & Chief Federation Engagement & Impact Officer | This witness should be contacted through undersigned counsel. | May have knowledge of facts related to PPFA's relationship with its member-affiliates. |
| Relator Alex Doe | | |
| Unknown individuals currently or formerly employed by the Center for Medicare and Medicaid Services ("CMS") | Unknown | May have knowledge of facts related to the administration of the federal Medicaid program. |
| Unknown individuals currently or formerly employed by the Texas Ranger Division of the Texas Department of Public Safety | Unknown | May have knowledge of facts related to a visit by the Texas Rangers to PPGC to discuss research contracts. |
| Unknown individuals currently or formerly employed by the Texas Health & Human Services | Unknown | May have knowledge of facts related to Texas Affiliates' eligibility to participate and participation in Texas Medicaid. |
| Unknown individuals currently or formerly employed by the Texas HHSC Office of Inspector General | Unknown | May have knowledge of facts related to the decision to terminate the Texas Affiliates from Texas Medicaid. |
| Senator Chuck Grassley<br><br>Former Chair of Senate Judiciary Committee | Unknown | May have knowledge of facts related to Relator's contact with the committee and other Members of Congress. |
| Senator Marsha Blackburn<br><br>Chair of 2015 House Select Panel of the Energy & Commerce committee | Unknown | May have knowledge of facts related to Relator's contact with the committee and other Members of Congress. |

4

| Name | Contact Information | Subject Matter |
|------|--------------------|-----------------|
| All Designated Fed. R. Civ. P. 30(b)(6) Witnesses | To be determined | Topics for which witnesses are or have been designated. |

Defendants also reserve the right to call any witness identified in Plaintiffs' complaints, any witnesses that Defendants identify in response to Plaintiffs' discovery requests, and any witness that Plaintiffs identify as persons with relevant knowledge.

## II.     RULE 26(a)(1)(A)(ii) DOCUMENTS AND TANGIBLE THINGS

Pursuant to Rule 26(a)(1)(A)(ii), Defendants identify the following categories of documents, electronically stored information, and tangible things that Defendants have in their possession that they may use to support their defenses presented in this case:

1.     Communications between Plaintiffs and Defendants;

2.     Communications between Relator and Texas Affiliates, their employees, and/or their staff members;

3.     Materials from Texas Affiliates regarding site visits by Relator or other "investigators" to any of the Texas Affiliates;

4.     Communications related to Texas Affiliates' Texas Medicaid claims after receiving termination notices;

5.     Communications related to Texas Affiliates' Louisiana Medicaid claims after receiving termination notices;

6.     Documents related to Texas Affiliates' Texas Medicaid claims submissions;

7.     Documents related to Texas Affiliates' Louisiana Medicaid claims submissions;

8.     Documents regarding Texas Affiliates' eligibility to participate in Texas Medicaid; and

5

App.1001

9. Documents regarding Texas Affiliates' eligibility to participate in Louisiana Medicaid.

## III. RULE 26(a)(1)(A)(iii) DAMAGES

Not applicable.

## IV. RULE 26(a)(1)(A)(iv) INSURANCE

Not applicable.

## V. Supplementation

Defendants' Initial Disclosures are made without prejudice to Defendants' rights to change or supplement their responses, Defendants' rights to assert privileges or objections with respect to any requests for discovery, and Defendants' rights to introduce at trial additional evidence and documents as warranted by the development of the facts underlying this lawsuit.

Dated: March 9, 2022

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP

By:   */s/ Craig D. Margolis*
Craig D. Margolis
Craig.Margolis@arnoldporter.comMurad Hussain
Murad.Hussain@arnoldporter.comTirzah S. Lollar
Tirzah.Lollar@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.6199
Fax: +1 202.942.5999

Christopher M. Odell
Texas State Bar No. 24037205
Christopher.Odell@arnoldporter.com
700 Louisiana Street,

6

App.1002

Suite 4000
Houston, TX 77002-2755
Telephone: +1 713.576.2400
Fax: +1 713.576.2499

Ryan Patrick Brown
Texas State Bar. No. 24073967
brown@blackburnbrownlaw.com
Blackburn & Brown, L.L.P.
1222 S. Fillmore
Amarillo, TX 79101
Tel: (806) 371-8333
Fax: (806) 350-7716

*Attorneys for Defendants*

7

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 9, 2022, the foregoing Defendants' Rule 26(a)(1) Initial

Disclosures were served upon all counsel of record for Plaintiffs by e-mail.


*/s/ Craig D. Margolis*
Craig D. Margolis

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| United States of America<br>*ex rel.* ALEX DOE, Relator, | §<br>§<br>§ | |
| The State of Texas<br>*ex rel.* ALEX DOE, Relator, | §<br>§<br>§ | CIVIL ACTION NO. 2:21-CV-00022-Z |
| The State of Louisiana<br>*ex rel.* ALEX DOE, Relator, | §<br>§<br>§ | |
| Plaintiffs, | §<br>§ | |
| v. | §<br>§ | |
| Planned Parenthood Federation of<br>America, Inc., Planned Parenthood Gulf<br>Coast, Inc., Planned Parenthood of Greater<br>Texas, Inc., Planned Parenthood South<br>Texas, Inc., Planned Parenthood Cameron<br>County, Inc., Planned Parenthood San<br>Antonio, Inc., | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| Defendants. | §<br>§ | |

## DEFENDANTS' SUPPLEMENTAL RULE 26(a)(1) INITIAL DISCLOSURES

Defendants Planned Parenthood Gulf Coast ("PPGC"), Planned Parenthood of Greater Texas, Inc. ("PPGT"), Planned Parenthood of South Texas, Inc. ("PP South Texas"), Planned Parenthood of Cameron County, Inc. ("PP Cameron County"), Planned Parenthood San Antonio, Inc. ("PP San Antonio") (collectively, the "Texas Affiliates") and Planned Parenthood Federation of America, Inc. ("PPFA" and, together with the Texas Affiliates, the "Defendants") hereby supplement Defendants' Rule 26(a)(1) Initial Disclosures as follows:

## I.     RULE 26(a)(1)(A)(i) WITNESSES

Defendants disclose the following list of persons who Defendants believe are likely to have discoverable information that Defendants may use to support their claims or defenses, unless solely for impeachment, based on Defendants' knowledge to date.

| Name | Contact Information | Subject Matter |
|---|---|---|
| Jeffrey Hons[1]<br><br>Former PP South Texas President & Chief Executive Officer | This witness should be contacted through Arnold & Porter. | See Initial Disclosures. |
| Vickie Barrow-Klein<br><br>PPFA Chief Financial Officer and Chief Operating Officer | This witness should be contacted through O'Melveny. | May have knowledge of PPFA operations, PPFA's relationship with the Texas Affiliates, and PPFA's general corporate structure. |
| Unknown individuals currently or formerly employed by the U.S. Department of Health & Human Services ("DHHS") | 200 Independence Avenue, S.W., Washington, D.C. 20201 | May have knowledge of facts related to the administration of the federal Medicaid program. |

---

[1] Defendants include Mr. Hons here merely to alert Plaintiffs to Mr. Hons's new status as a former employee of PP South Texas following his recent retirement.

| Name | Contact Information | Subject Matter |
|------|---------------------|----------------|
| Unknown individuals currently or formerly employed by the Louisiana Department of Health ("LDH") | 628 N. 4th Street, Baton Rouge, Louisiana 70802 | May have knowledge of facts related to PPGC's eligibility to participate and participation in Louisiana Medicaid and the Louisiana termination proceedings and related litigation. |
| Unknown individuals currently or formerly employed by the Centers for Medicare and Medicaid Services ("CMS") | 7500 Security Boulevard, Baltimore, Maryland 21244 | See Initial Disclosures. |
| Individuals currently employed by Texas Health & Human Services Commission ("HHSC"), which may include, for example, Cecile Erwin Young, HHSC's Executive Commissioner, or Stephanie Stephens, HHSC's Chief Medicaid & CHIP Services Officer | North Austin Complex, 4601 W. Guadalupe St., Austin, TX 78751-3146 | See Initial Disclosures. |
| Unknown individuals currently or formerly employed by the Texas HHSC Office of Inspector General ("HHSC-OIG") | 11501 Burnet Road, Building 902, Austin, Texas 78758 | See Initial Disclosures. |
| Stuart Bowen<br><br>Former Inspector General, HHSC-OIG | 4010 Long Champ Drive, #1, Austin, TX 78746 | May have knowledge of facts related to Texas's decision to terminate the Texas Affiliates from Texas Medicaid, the preliminary injunction proceedings, and the order enjoining Texas from terminating the Texas Medicaid Provider Agreements. |

App.1007

| Name | Contact Information | Subject Matter |
|---|---|---|
| Ted Spears, M.D.<br><br>Chief Medical Officer, HHSC-OIG | 11501 Burnet Road, Building 902, Austin, Texas 78758 | May have knowledge of facts related to Texas's decision to terminate the Texas Affiliates from Texas Medicaid. |
| Charles Smith<br><br>Former Executive Commissioner, HHSC | Unknown (Austin, Texas) | May have knowledge of facts related to Texas's Final Termination Notice, the preliminary injunction proceedings, and Texas's payment of Medicaid claims during the pendency of preliminary injunction. |
| Individuals or Fed. R. Civ. P. 30(b)(6) Witnesses for Baylor College of Medicine ("BCM") | One Baylor Plaza, Houston, TX 77030 | Defendants dispute BCM's relevancy to the claims alleged, but if the Court disagrees and deems BCM relevant, then BCM witnesses may have knowledge of facts related to the research studies and/or negotiations alleged in Relator's Complaint. |
| Individuals or Fed. R. Civ. P. 30(b)(6) Witnesses for University of Texas Medical Branch | 301 University Boulevard, Galveston, TX 77555 | May have knowledge of facts related to the research studies and/or negotiations alleged in Relator's Complaint. |
| Individuals or Fed. R. Civ. P. 30(b)(6) Witnesses for Texas Medicaid & Healthcare Partnership | Unknown (Austin, Texas) | May have knowledge of facts related to Medicaid claims submitted by the Texas Affiliates and Medicaid reimbursements. |

The Defendants also reserve the right to call any witness identified in Plaintiffs' complaints, any witnesses that Defendant identifies in response to Plaintiffs' discovery requests, and any witness that Plaintiffs identify as persons with relevant knowledge.

App.1008

These supplemental disclosures are made without prejudice to Defendants' rights to change or supplement the responses, Defendants' rights to assert privileges or objections with respect to any requests for discovery, and Defendants' rights to introduce at trial additional evidence and documents as warranted by the development of the claims and facts underlying this lawsuit.

App.1009

Dated:  August 25, 2022                     Respectfully submitted,

                                            **O'MELVENY & MEYERS LLP**

                                            /s/ *Danny S. Ashby*
                                            DANNY S. ASHBY
                                            Texas Bar No. 01370960
                                            dashby@omm.com
                                            JUSTIN R. CHAPA
                                            Texas Bar No. 24074019
                                            jchapa@omm.com
                                            MEGAN R. WHISLER
                                            Texas Bar No. 24079565
                                            mwhisler@omm.com
                                            2501 N. Harwood Street, Suite 1700
                                            Dallas, TX 75201
                                            Tel: (972) 360-1900
                                            Fax: (972) 360-1901

                                            LEAH GODESKY
                                            (admitted *pro hac vice*)
                                            lgodesky@omm.com
                                            1999 Avenue of the Stars, 8th Floor
                                            Los Angeles, CA 90067
                                            Tel: (310) 553-6700
                                            Fax: (310) 246-6779

                                            **BLACKBURN BROWN LLP**
                                            RYAN PATRICK BROWN
                                            Texas Bar No. 24073967
                                            brown@blackburnbrownlaw.com
                                            1222 S. Fillmore Street
                                            Amarillo, TX 79101
                                            Tel: (806) 371-8333
                                            Fax: (806) 350-7716

                                            *Attorneys for Planned Parenthood*
                                            *Federation of America, Inc.*

App.1010

**ARNOLD & PORTER KAYE SCHOLER LLP**

/s/ *Tirzah S. Lollar*
CRAIG D. MARGOLIS
(admitted *pro hac vice*)
Craig.Margolis@arnoldporter.com
TIRZAH S. LOLLAR
(admitted *pro hac vice*)
Tirzah.Lollar@arnoldporter.com
CHRISTIAN D. SHEEHAN
(admitted *pro hac vice*)
Christian.Sheehan@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Tel: (202) 942-6000
Fax: (202) 942-5999

CHRISTOPHER M. ODELL
Texas State Bar No. 24037205
Christopher.Odell@arnoldporter.com
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: +1 713.576.2400
Fax: +1 713.576.2499

**BLACKBURN BROWN LLP**
RYAN PATRICK BROWN
Texas State Bar No. 24073967
brown@blackburnbrownlaw.com
1222 S. Fillmore
Amarillo, TX 79101
Tel: (806) 371-8333
Fax: (806) 350-7716

*Attorneys for  Planned Parenthood Gulf
Coast, Inc., Planned Parenthood of Greater
Texas, Inc., Planned Parenthood South
Texas, Inc., Planned Parenthood Cameron
County, Inc., Planned Parenthood San
Antonio, Inc.*

App.1011

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 25, 2022, Defendants' Supplemental Rule 26(a)(1) Initial

Disclosures were served upon all counsel of record for Plaintiffs by e-mail.


*<u>/s/ Danny S. Ashby</u>*
Danny S. Ashby

8

RE: US ex rel Doe v. Planned Parenthood - CMS documents

 meghan.martin@arnoldporter.com

Nov 22, 2022, 9:59 PM

To:
carrie.killion@oag.texas.gov jennifer.rowell@oag.texas.gov sinty.chandy@oag.texas.gov rhonda.rodriguez@oag.texas.gov janice.garrett@oag.texas.gov andrew@hackerstephens.com amy.hilton@oag.texas.gov ana.aranda@oag.texas.gov eugenia.krieg@oag.texas.gov michael.moore@oag.texas.gov raymond.winter@oag.texas.gov drew.wright@oag.texas.gov heather@hackerstephens.com

Cc:
tirzah.lollar@arnoldporter.com craig.margolis@arnoldporter.com zachary.winter@arnoldporter.com catherine.hodges@arnoldporter.com

1 attachment · Expires: 1671857999000

Counsel -

Attached please find a zip file containing Affiliate Defendants' production of documents received from CMS. Any blank pages appear in the production as received Affiliate Defendants.

The encryption code is dhdFsMc4~-aR*#D

Regards,
Meghan

_____
Meghan Martin
Attorney and Advisor | Bio
Arnold & Porter LLP
601 Massachusetts Ave., NW
Washington,  DC 20001-3743
T: +1 202.942.5443
Meghan.Martin@arnoldporter.com
www.arnoldporter.com | LinkedIn | Twitter

File attachment expires: Dec 23, 2022

| Name | Size | |
|---|---|---|
| PPTHIRD008.zip | 13.8 MB | 544dd4b65b1d69cfb674e5536a7752afmd5 |

App.1013

Subject:                        RE: US ex rel Doe v. Planned Parenthood - CMS documents
Sent time:                      Nov 23 2022 02:59:18
Sent files:                     PPTHIRD008.zip

                                carrie.killion@oag.texas.gov,jennifer.rowell@
                                oag.texas.gov,sinty.chandy@oag.texas.gov,rh
                                onda.rodriguez@oag.texas.gov,janice.garrett
                                @oag.texas.gov,andrew@hackerstephens.co
                                m,amy.hilton@oag.texas.gov,ana.aranda@oa
                                g.texas.gov,eugenia.krieg@oag.texas.gov,mic
                                hael.moore@oag.texas.gov,raymond.winter@
                                oag.texas.gov,drew.wright@oag.texas.gov,he
To:                             ather@hackerstephens.com

                                tirzah.lollar@arnoldporter.com,craig.margolis
                                @arnoldporter.com,zachary.winter@arnoldp
                                orter.com,catherine.hodges@arnoldporter.co
CC:                             m

| Recipient name | Action | File name | Event time (GMT) | Event time (CST) |
|---|---|---|---|---|
| jennifer.rowell@oag.texas.gov | downloaded | PPTHIRD008.zip | Nov 28 2022 14:17:58 | Nov 28 2022 08:17:58 |
| heather@hackerstephens.com | view_mail | | Nov 25 2022 16:50:34 | Nov 25 2022 10:50:34 |
| jennifer.rowell@oag.texas.gov | downloaded | PPTHIRD008.zip | Nov 23 2022 19:58:30 | Nov 23 2022 13:58:30 |
| jennifer.rowell@oag.texas.gov | view_mail | | Nov 23 2022 19:58:06 | Nov 23 2022 13:58:06 |
| meghan.martin@arnoldporter.com | view_mail | | Nov 23 2022 03:05:24 | Nov 22 2022 21:05:24 |
| andrew@hackerstephens.com | downloaded | PPTHIRD008.zip | Nov 23 2022 03:04:34 | Nov 22 2022 21:04:34 |
| andrew@hackerstephens.com | view_mail | | Nov 23 2022 03:04:23 | Nov 22 2022 21:04:23 |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| United States of America | § | |
| | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| | § | CIVIL ACTION NO. 2:21-CV- |
| | § | 00022-Z |
| The State of Texas | § | |
| | § | Date:      December 2, 2022 |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| | § | |
| | § | |
| The State of Louisiana | § | |
| | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| Planned Parenthood Federation of America, Inc., | § | |
| Planned Parenthood Gulf Coast, Inc., Planned | § | |
| Parenthood of Greater Texas, Inc., Planned | § | |
| Parenthood South Texas, Inc., Planned Parenthood | § | |
| Cameron County, Inc., Planned Parenthood San | § | |
| Antonio, Inc., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## AFFILIATE DEFENDANTS' RULE 26(a)(1) FIFTH SUPPLEMENTAL INITIAL DISCLOSURES

Defendants Planned Parenthood Gulf Coast ("PPGC"), Planned Parenthood of Greater Texas, Inc. ("PPGT"), Planned Parenthood of South Texas, Inc. ("PP South Texas"), Planned Parenthood of Cameron County, Inc. ("PP Cameron County"), and Planned Parenthood San Antonio, Inc. ("PP San Antonio") hereby supplement their Rule 26(a)(1) Initial Disclosures as follows:

## I.      RULE 26(a)(1)(A)(i) WITNESSES

Defendants hereby disclose this list of persons who Defendants believe are likely to have

discoverable information that Defendants may use to support their claims or defenses, unless solely

for impeachment, based on Defendants' knowledge to date.

| Name | Contact Information | Subject Matter |
|------|--------------------|-----------------|
| Anne Marie Costello Deputy Director, Center for Medicaid & CHIP Services at Centers for Medicare & Medicaid Services[1] | U.S. Centers for Medicare & Medicaid Services 7500 Security Boulevard, Baltimore, MD 21244 | Knowledge of facts related to Affiliate Defendants terminations from Texas and Louisiana Medicaid, the administration of Medicaid, and CMS's recoupment practices. Declarant for CMS. |

Defendants also reserve the right to call any witness identified in the Plaintiffs' complaints,

any witnesses that Defendants identify in response to Plaintiffs' discovery requests, and any

witness that Plaintiffs identify as persons with relevant knowledge.

Dated: December 2, 2022

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP

By:    /s/ Tirzah S. Lollar_____

---

[1] Defendants disclosed CMS as a potential witness on March 9, 2022 and again on August 25, 2022. Plaintiffs have been aware of Ms. Costello specifically as a witness from CMS since November 22, 2022, when her declaration was produced to them by Defendants.  Out of an abundance of caution, however, Affiliate Defendants provide this supplemental disclosure to identify Ms. Costello as the individual likely to provide information on behalf of CMS in this proceeding.  Affiliate Defendants make this supplemental disclosure without prejudice to, and hereby reserve, their right to present another or different witness from CMS should Ms. Costello become unavailable.

Craig D. Margolis
Craig.Margolis@arnoldporter.com
Tirzah S. Lollar
Tirzah.Lollar@arnoldporter.com
Christian Sheehan
Christian.Sheehan@arnoldporter.com
Emily Reeder-Ricchetti
Emily.Reeder-Ricchetti@arnoldporter.com
Megan Pieper
Megan.Pieper@arnoldporter.com
Alyssa Gerstner
Alyssa.Gerstner@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.6127
Fax: +1 202.942.5999

Christopher M. Odell
Texas State Bar No. 24037205
Christopher.Odell@arnoldporter.com
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: +1 713.576.2400
Fax: +1 713.576.2499

Paula Ramer
250 West 55th Street
New York, New York 10019-9710
T: +1 212.836.8474
Paula.Ramer@arnoldporter.com

Ryan Patrick Brown
Texas State Bar No. 24073967
brown@blackburnbrownlaw.com
1222 S. Fillmore
Amarillo, TX 79101
Tel: (806) 371-8333
Fax: (806) 350-7716

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 2, 2022 the foregoing Affiliate Defendants' Rule

26(a)(1) Fifth Supplemental Disclosures were served upon all counsel record by e-mail.


/s/ Tirzah S. Lollar
Tirzah S. Lollar

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ALEX DOE, Relator, | § § § | |
| THE STATE OF TEXAS, *ex rel.* ALEX DOE, Relator, | § § § | |
| THE STATE OF LOUISIANA, *ex rel.* ALEX DOE, Relator, | § § § § | |
| Plaintiffs, | § § § | |
| v. | § § | Civil Action No. 2:21-CV-00022-Z |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., PLANNED PARENTHOOD GULF COAST, INC., PLANNED PARENTHOOD OF GREATER TEXAS, INC., PLANNED PARENTHOOD SOUTH TEXAS, INC., PLANNED PARENTHOOD CAMERON COUNTY, INC., PLANNED PARENTHOOD SAN ANTONIO, INC., | § § § § § § § § § § § § | |
| Defendants. | § § | |

# STATE OF TEXAS'S OBJECTIONS, STATEMENTS OF PRIVILEGES, AND RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES

The State of Texas files these objections, statements of privileges, and Responses to Defendants' First Set of Interrogatories.

## OBJECTIONS

1.     The State objects to the Interrogatories where they exceed the requirements imposed by Federal Rule of Civil Procedure (FRCP) 33, other FRCPs, or elsewhere. The State will respond to the Interrogatories in accordance with FRCP 33, other FRCPs, and applicable law.

2.     The State objects to the Interrogatories where they seek disclosure of information protected by the attorney-client privilege, the work-product doctrine, the investigative-communications privilege, the common-interest privilege, and/or any other privileges and exemptions set forth in applicable law.

3.     The State objects to the Interrogatories where they seek information not within the State's possession, custody, or control.

4.     The State objects to the Interrogatories where they call for information to be disclosed that is protected by the HIPAA Privacy Rule or is confidential by law.

5.     The State objects to the Interrogatories where they are not properly limited to an appropriate time period. Answering Interrogatories outside of the Specified Time Period from February 1, 2017 to the present will be overly broad, unduly burdensome, and neither relevant to any party's claim or defense, nor proportional to the needs of the case, under FRCP 26(b)(1). Texas claims are only for the time period February 1, 2017 to the present.

6.     The responses made at this time are without prejudice to the State's rights to amend or supplement its responses as appropriate under FRCP 33 or other rules or law.

7.     By answering these Interrogatories, the State does not concede the relevance or admissibility of answers or other information. The State further does not waive, but instead, expressly preserves, the objections here.

8.     The State incorporates by reference the Objections above into the responses set forth below. The failure to repeat any of the Objections above does not waive any Objection to the specific Interrogatory.

9.     The State intends to not produce documents which are privileged under

2

the attorney-client privilege or work-product protection. Any production of documents which are privileged under the attorney-client privilege or work-product protection is inadvertent under Federal Rule of Evidence (FRE) 502.

10.     The State reserves its rights to object under Texas Government Code 402.004 to any Response to these Interrogatories – or to any response to discovery – being used in this suit, either at trial, in hearings, or otherwise. Texas Government Code 402.004 reads: "An admission, agreement, or waiver made by the attorney general in an action or suit to which the state is a party does not prejudice the rights of the state."

11.     The State objects to all uses by Defendants of a Time Period which is irrelevant to the claims in this case.

3

## OBJECTIONS TO DEFENDANTS' DEFINITIONS

1.     **Defendants' Definition 1.** Defendants' definition and use of the terms "Texas," "you," and "your" is overly broad and neither relevant to any party's claim or defense, nor proportional to the needs of the case, under FRCP 26(b)(1). Answering Interrogatories, and identifying and producing documents, with those terms as defined would be unduly burdensome. These terms as defined by Defendants include persons and entities with no relation to this matter. The terms' vagueness and overbreadth make any Interrogatory with the terms as defined by Defendants exceed the scope of the specific claims and issues in this case and therefore makes those Interrogatories objectionable. The Attorney General of Texas brings this suit on behalf of the Texas Medicaid program, which is part of the Texas Health and Human Services Commission ("HHSC"). In this suit, the plaintiff, the "State," does not represent any other agency, office, division, department, program, commission, board, or administrator of the Texas Government, or individuals. Where Defendants use those terms and overbroad definitions of the terms to seek information that is beyond the possession and reasonable control of the Office of the Attorney General as counsel for the HHSC; beyond the possession and reasonable control of the HHSC; or beyond the possession and reasonable control of the state agencies under the HHSC's organizational umbrella, or their successor agencies, the State requests that Defendants show cause as to why such information should be provided. Until such cause is shown, the State will only provide responses to Interrogatories on behalf of the Texas Medicaid Program and within the reasonable control of the Office of the Attorney General as counsel for the HHSC; within the reasonable control of the HHSC; or within the reasonable control of the state agencies under the HHSC's organizational umbrella, or their successor agencies. The State further objects to this definition to the extent its use in an Interrogatory seeks information protected by the attorney-client or work product privileges.

2.     **Defendants' Definition 22.** Defendants' definition of the term "documents" is overly broad, vague, and answering Interrogatories with that definition would be unduly burdensome where the definition departs from the FRCPs and other applicable law; including but not limited to, for example, adding "any other tangible thing of whatever nature" to the definition of "documents." The State will interpret the term "documents" consistent with FRCP 33 and other applicable FRCPs, rules, and law.

4

3.    **Defendants' Definition 23.** Defendants' definition of the terms "related to," "relating to," and "concerning" is overly broad, vague, and answering Interrogatories with that definition would be unduly burdensome. Defendants' definition of the terms includes these unlimited descriptions: "involving in any way whatsoever the subject matter of the request" and "A document may 'relate to' or [sic.] an individual or entity without specifically mentioning or discussing that individual or entity by name." The State will interpret the terms "related to," "relating to," and "concerning" consistent with applicable FRCPs, rules, law, and common usage.

4.    **Defendants' Definitions 24 and 26.** Defendants' definitions of the terms "communication" and "communications" are overly broad, vague, and answering Interrogatories with those definitions would be unduly burdensome. Defendants' definitions of the terms include "all oral. . . expressions, or other occurrences whereby thoughts, opinions, information, or data are transmitted between two or more persons." The State will interpret the terms "communication" and communications" consistent with applicable FRCPs, rules, law, and common usage.

5.    **Defendants' Definition 27.**  Defendants' definitions of the terms "Identify" or "state the identity of" are overly broad, vague, and answering Interrogatories with those definitions would be unduly burdensome. Defendants' definitions of the terms include "state all dates, names of all persons with knowledge, descriptions of the knowledge of each person, and descriptions of all documents relating to your response" plus overbroad requirements for "meetings or communications," "invoices or payments," "persons," "companies," "documents," and "act[s] or event[s]." The State will interpret the terms "Identify" and "state the identity of" consistent with applicable FRCPs, rules, law, and common usage.

6.    **Defendants' Definition 28.** Defendants' definition of "Describe in detail" is overly broad, vague, and answering Interrogatories with that definition would be unduly burdensome. Defendants' definition of the phrase includes: "identify any document or communication concerning the item in question and to provide a complete, factual summary chronologically setting forth the substance of, and identifying any person participating in, witnessing, or having knowledge of, whether firsthand or otherwise, any fact, action, occurrence, conduct, event, condition, or circumstance concerning the item in question." The State will interpret the phrase "Describe in detail" consistent with applicable FRCPs, rules, law, and common usage.

5

## OBJECTIONS TO DEFENDANTS' INSTRUCTIONS

1.      The State objects to all of Defendants' Instructions which exceed the requirements of FRCP 33, or other applicable Rules or law. The State will answer these Interrogatories as required by FRCP 33, and other applicable Rules and law.

2.      The State objects to all uses by Defendants of a Time Period which is irrelevant to the claims in this case.

   Designated discovery in this case has not been completed.

   The State is ready to confer or attempt to confer, in good faith, to resolve any disputes related to objections, claims of privilege, or other matters.

6

## INTERROGATORIES

1.      Identify each claim for payment submitted by each of the Affiliate Defendants that you contend was submitted in violation of the Texas Medicaid Fraud Prevention Act. For each claim, state the date of submission; the name of the Affiliate Defendant that submitted the claim; the amount of the claim submitted; the person(s) who submitted or signed the claim; identify the recipient of the claim; state the amount paid to Affiliate Defendants on the claim; describe in detail what is allegedly fraudulent about the claim; identify the principal and material facts supporting your assertion that the claim was fraudulent; and identify all persons with knowledge concerning the allegedly fraudulent claim. This request does not seek patient names, patient dates of birth, patient marital status, insured names, insured dates of birth, insured marital status, or other patient information associated with the claims.

**OBJECTIONS:**

**Not Relevant. Texas's Complaint in Intervention is brought under Section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. This Interrogatory misstates the elements of the State's claims in its Complaint in Intervention and is therefore in large part irrelevant. The State's Complaint has no allegations the Defendants "submitted claims" that were "fraudulent" in violation of the TMFPA, therefore this Interrogatory is irrelevant.**

**ANSWER:**

**Without waiving its Objections, Texas does not allege that the Defendants submitted claims to Texas in violation of the TMFPA. Rather, Texas alleges that Defendants failed to repay money to the State of Texas that they were obligated to repay. Defendants were paid for delivering Texas Medicaid services to Texas Medicaid patients during a time window when Defendants were not eligible Texas Medicaid providers. The TMFPA unlawful act giving rise to the Texas suit is the obligation Defendants had to repay money that Defendants were paid for services delivered when they were not eligible Texas Medicaid providers. TMFPA § 36.002(12). For further information about the amounts of those payments *see* Expert reports and claims data. The burden of deriving or ascertaining any**

7

**relevant answers to this Interrogatory is substantially the same for the Defendants as it is for the State. Designated discovery has not been completed.**

2.     Identify each overpayment received by each of the Affiliate Defendants that you contend Affiliate Defendants were obligated to report and return, but did not. For each overpayment, identify any associated claim by stating the date of submission of the claim; the name of the Affiliate Defendant that submitted the claim, the amount of the claim; the person(s) who submitted or signed the claim; identify the recipient of the claim; state the amount paid to Affiliate Defendants on the claim; describe in detail what is allegedly fraudulent about the claim; identify the principal and material facts supporting your assertion that the claim was fraudulent; and identify all persons with knowledge concerning the allegedly fraudulent claim. This request does not seek patient names, patient dates of birth, patient marital status, insured names, insured dates of birth, insured marital status, or other patient information associated with any associated claims.

**OBJECTIONS:**

**Not Relevant. Texas's Complaint in Intervention is brought under Section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. This Interrogatory misstates the elements of the State's claims in the State's Complaint in Intervention and is therefore irrelevant. The State's Complaint alleges that the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. The Complaint has no allegations the Defendants "submitted claims" that were "fraudulent" in violation of the TMFPA, therefore this Interrogatory is irrelevant.**

**ANSWER:**

**Without waiving its Objections, Texas does not allege that the Defendants submitted claims to Texas in violation of the TMFPA. Rather, Texas alleges that Defendants failed to repay money to the State of Texas that they were obligated to repay. Defendants were paid for delivering Texas Medicaid services to Texas Medicaid patients during a time window when Defendants were not eligible Texas Medicaid providers. The TMFPA unlawful act giving rise to this Texas suit is the obligation Defendants had**

8

**to repay money that Defendants were paid for services delivered when they were not eligible Texas Medicaid providers. TMFPA § 36.002(12). For further information about the amounts of those payments** *see* **Expert reports and claims data. The burden of deriving or ascertaining any relevant answers to this Interrogatory is substantially the same for the Defendants as it is for the State. Designated discovery has not been completed.**

3.    For each violation of the Texas Medicaid Fraud Prevention Act that you allege in this case, state the damages that you believe Texas incurred as a result of the conduct you have alleged. Your answer should include a detailed description of how the damages are calculated, the facts supporting your contention that each Planned Parenthood Defendant is liable for those damages, and all persons with knowledge of the foregoing.

**OBJECTIONS:**

**Not Relevant. The remedies the State is entitled to in this TMFPA case are not "damages."** *See In re Xerox*, **555 S.W.3d 518, 534 (Tex. 2018) (holding that "[c]onstruing the [TMFPA] as a whole" it "employs a penalty scheme" rather than an "action for the recovery of damages");** *Nazari v. State*, **561 S.W.3d 495, 502 (Tex. 2018) (citing** *Xerox*, **555 S.W.3d at 534). This Interrogatory, asking the State to "state damages" is asking for inapplicable, and irrelevant information.**

**ANSWER:**

**Without waiving its Objections, Texas is not seeking damages here under its allegations of unlawful acts under the TMFPA. The State is seeking all available remedies under the TMFPA, which do not include damages. This remedies model is detailed in our Expert reports.**

4.    Identify and describe in detail the principal and material facts that form the basis for Texas's termination of each of the Planned Parenthood Affiliates from Texas Medicaid. Your response should include the basis of your contention that the affiliate: (A) is not qualified to provide medical services under Texas Medicaid, including but not limited to all laws, regulations, policies, agreements, manuals, or other guidance that you contend each of the Planned Parenthood Affiliates violated; (B) engaged in practices that violated generally accepted medical standards, including which generally

accepted medical standards you contend were violated and how they were violated; and/or (C) engaged in misrepresentations about its activity relating to fetal tissue procurements, including identifying any such misrepresentations.

**OBJECTIONS:**

**Not Relevant. Texas's Complaint in Intervention is brought under Section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. The "termination of each of the Planned Parenthood Affiliates" is not an issue in this case. That issue was decided as a matter of law when the Defendants did not properly contest their status as terminated from Texas Medicaid. This has been recognized by the Fifth Circuit and the Honorable Judge Lora Livingston in Travis County District Court. This question, therefore, asks for information that is irrelevant to any of the State's claims or to defenses to the State's claims in this case.**

**Improper collateral attack of decided issues. This Interrogatory seeks irrelevant information and is an improper collateral attack of Defendants termination from Texas Medicaid, which has been decided as a matter of law and which is not an issue in this case.**

**ANSWER:**

**The State stands on its Objections and will not answer this Interrogatory.**

5.      Identify and describe in detail the principal and material facts that form the basis of your contention that PPGT, PPST, PP Cameron County, and PP San Antonio are each "a person that is affiliated with a person who commits a program violation" under 1 Tex. Admin. Code Sec. 371.1703(c)(7) and/or are otherwise not qualified to provide medical services under Texas Medicaid.

**OBJECTIONS:**

**Not Relevant. Texas's Complaint in Intervention is brought under Section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas**

Medicaid. The "commission of program violations" is not an issue in this case. That issue, and the ensuing termination of the Defendants, was decided as a matter of law when the Defendants did not properly contest their status as terminated from Texas Medicaid. This has been recognized by the Fifth Circuit and the Honorable Judge Lora Livingston in Travis County District Court. This question, therefore, asks for information that is irrelevant to any of the State's claims or to defenses to the State's claims in this case.

Improper collateral attack of decided issues. This Interrogatory seeks irrelevant information and is an improper collateral attack of Defendants' termination from Texas Medicaid, which has been decided as a matter of law and which is not an issue in this case.

**ANSWER:**

The State stands on its Objections and will not answer this Interrogatory.

6.      State when you were first contacted by Relator, the Center for Medical Progress, or third parties acting on Relator's behalf regarding allegations that any Planned Parenthood Affiliate was improperly engaged in fetal tissue procurement or otherwise violating laws or regulations related to medical research or to fetal tissue procurement. Describe in detail the information provided to you by Relator, the Center for Medical Progress, or third parties acting on Relator's behalf, including but not limited to any documents or other evidence that was provided to you.

**OBJECTION:**

Not Relevant. Texas's Complaint in Intervention is brought under Section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. When the "Relator, the Center for Medical Progress, or third parties" first contacted the State, and "fetal tissue" are not relevant to the State's claims or to defenses to the State's claims in this case.

**STATEMENT OF PRIVILEGES:**

Core Work Product, Common Interest, and Attorney/Client: This Interrogatory inquiring into when Texas was first contacted by "Relator,

11

App. 1030

The Center for Medical Progress, or third parties acting on Relator's behalf regarding allegations" of "fetal tissue procurement or otherwise violating laws or regulations related to medical research or to fetal tissue procurement" asks for information which is covered by the attorney-client, common interest, and work product privileges and protections. This is especially true with the almost unlimited definitions of "related to," and "you."

**Government Code Medicaid Investigative Privilege.** This Interrogatory inquiring into when Texas was first contacted by "Relator, The Center for Medical Progress, or third parties acting on Relator's behalf regarding allegations" of "fetal tissue procurement or otherwise violating laws or regulations related to medical research or to fetal tissue procurement" especially with its overbreadth, asks for information which is privileged under the Government Code Medicaid Investigative Privilege. Texas Government Code § 531.102(k) and Texas Government Code § 531.1021(g) ("All information and materials subpoenaed or compiled by the [OIG] office in connection with an audit or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under Chapter 552, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or the attorney general or their employees or agents involved in the audit or investigation conducted by the office or the attorney general, except that this information may be disclosed to the state auditor's office, law enforcement agencies, and other entities as permitted by other law.").

**ANSWER:**

**The State stands on its Objections and Statement of Privileges and will not answer this Interrogatory.**

7.     Describe in detail your communications with the Government, if any, regarding the qualifications of each of the Planned Parenthood Affiliates to provide Medicaid or Texas Medicaid services, whether each of the Planned Parenthood Affiliates engaged in practices that violated generally accepted medical standards and if so which ones, whether each of the Planned Parenthood Affiliates engaged in misrepresentations about its activity relating to fetal tissue procurements and if so which misrepresentations, Texas's termination of each of the Planned Parenthood Affiliates from Texas

12

Medicaid, and whether the termination of each of the Planned Parenthood Affiliates from Texas Medicaid violates Medicaid's free choice of provider requirement. Your response should include, but not be limited to, a detailed description of any response from Texas to the August 11, 2016 letter from Vikki Wachino, Director, Centers for Medicare & Medicaid Services, addressed to Gary Jessee, Associate Commissioner for Medicaid/CHIP, Texas Health and Human Services Commission (attached as Ex. A).

**OBJECTIONS:**

**Not relevant. Texas's Complaint in Intervention is brought under Section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. Neither Defendants' "qualifications" and possible "misrepresentations," "generally accepted medical standards," "fetal tissue," Defendants' terminations from Texas Medicaid, nor "Medicaid's free choice of provider requirement" are relevant to the State's claims or to defenses to the State's claims in this case.**

**Lacking specificity. It is unclear what the term "the Government" means in this Interrogatory which is directed to the State, which is a "Government."**

**Improper collateral attack of decided issues. This Interrogatory seeks irrelevant information and is an improper collateral attack of Defendants termination from Texas Medicaid, which has been decided as a matter of law and which is not an issue in this case. This issue was decided when Defendants did not properly contest their status as terminated from Texas Medicaid. This has been recognized by the Fifth Circuit and the Honorable Judge Lora Livingston in Travis County District Court.**

**Overbroad. This request is overbroad because of the objectionably very broad definition of "your" here which encompasses untold persons and entities who have nothing to do with any claims or defenses in this case.**

**STATEMENT OF PRIVILEGES:**

**Core Work Product, Common Interest, and Attorney/Client: This Interrogatory inquiring into "your communications with the Government" "regarding" Defendants': "qualifications to provide**

13

Medicaid or Texas Medicaid services," engaging "in practices that violated generally accepted medical standards" and misrepresentations about "fetal tissue procurements,"  Texas's termination of Defendants, and "whether the termination of each of the Planned Parenthood Affiliates from Texas Medicaid violates Medicaid's free choice of provider requirement" asks for information which is covered by the attorney-client, common interest, and work product privileges and protections. This is especially true with the almost unlimited definition of "your."

Government Code Medicaid Investigative Privilege. This Interrogatory inquiring into "your communications with the Government" "regarding" Defendants': "qualifications to provide  Medicaid or Texas Medicaid services," engaging "in practices that violated generally accepted medical standards" and misrepresentations about "fetal tissue procurements," Texas's termination of Defendants, and "whether the termination of each of the Planned Parenthood Affiliates from Texas Medicaid violates Medicaid's free choice of provider requirement," especially with its overbreadth, asks for information which is privileged under the Government Code Medicaid Investigative Privilege. Texas Government Code § 531.102(k) and Texas Government Code § 531.1021(g) ("All information and materials subpoenaed or compiled by the [OIG] office in connection with an audit or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under Chapter 552, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or the attorney general or their employees or agents involved in the audit or investigation conducted by the office or the attorney general, except that this information may be disclosed to the state auditor's office, law enforcement agencies, and other entities as permitted by other law.").

**ANSWER:**

**The State stands on its Objections and Statement of Privileges and will not answer this Interrogatory.**

8.      Describe in detail all investigations, reviews, or other inquiries conducted by Texas related to Texas's termination of each of the Planned Parenthood Affiliates from Texas Medicaid. Your response should identify

14

the persons involved in such investigations, reviews, or other inquiries and describe each person's role in the investigations, reviews, or other inquiries.

**OBJECTIONS:**

**Not relevant. Texas's Complaint in Intervention is brought under Section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. Defendants' terminations from Texas Medicaid, is not relevant to the State's claims or to defenses to the State's claims in this case.**

**Improper collateral attack of decided issues. This Interrogatory seeks irrelevant information and is an improper collateral attack of Defendants termination from Texas Medicaid, which has been decided as a matter of law and which is not an issue in this case. This issue was decided when Defendants did not properly contest their status as terminated from Texas Medicaid. This has been recognized by the Fifth Circuit and the Honorable Judge Lora Livingston in Travis County District Court.**

**STATEMENT OF PRIVILEGES:**

**Core Work Product, Common Interest, and Attorney/Client: This Interrogatory inquiring into "all investigations, reviews, or other inquiries conducted by Texas related to Texas's termination" asks for information which is covered by the attorney-client, common interest, and work product privileges and protections. This is especially true with the almost unlimited definition of "Texas."**

**Government Code Medicaid Investigative Privilege. This Interrogatory inquiring into "all investigations, reviews, or other inquiries conducted by Texas related to Texas's termination" asks for information which is privileged under the Government Code Medicaid Investigative Privilege. Texas Government Code § 531.102(k) and Texas Government Code § 531.1021(g) ("All information and materials subpoenaed or compiled by the [OIG] office in connection with an audit or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under Chapter 552, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or the attorney general or their employees or agents involved in the audit or**

15

investigation conducted by the office or the attorney general, except that this information may be disclosed to the state auditor's office, law enforcement agencies, and other entities as permitted by other law.").

**ANSWER:**

**The State stands on its Objections and Statements of Privileges and will not answer this Interrogatory.**

9.      Identify each person with knowledge of the principal and material facts relevant to the allegations in your Complaint, including but not limited to, your allegations that any of the Planned Parenthood Affiliates are not qualified to provide medical services under Texas Medicaid, whether any of the Planned Parenthood Affiliates engaged in practices that violated generally accepted medical standards and if so which ones, whether any of the Planned Parenthood Affiliates engaged in misrepresentations about its activity relating to fetal tissue procurements and if so which misrepresentations, that Texas's decision to terminate each of the Planned Parenthood Affiliates' participation in Texas Medicaid was justified, that each of the Planned Parenthood Affiliates were effectively terminated from Texas Medicaid, at the latest, by February 1, 2017, that each of the Planned Parenthood Affiliates were obligated to repay to Texas Medicaid dollars it received in reimbursements, that each of the Planned Parenthood Affiliates were effectively terminated from Texas Medicaid, at the latest, by February 1, 2017. Your response should describe the facts about which each person has knowledge.

**OBJECTIONS:**

**Not relevant. Texas's Complaint in Intervention is brought under Section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. Neither Defendants' "qualifications" and possible "misrepresentations," "generally accepted medical standards," "fetal tissue," Defendants' terminations from Texas Medicaid, nor "Medicaid's free choice of provider requirement," let alone any person's knowledge of such, are relevant to the State's claims or to defenses to the State's claims in this case.**

**Improper collateral attack of decided issues. This Interrogatory seeks irrelevant information and is an improper collateral attack on**

16

Defendants' termination from Texas Medicaid, which has been decided as a matter of law and which is not an issue in this case. This issue was decided when Defendants did not properly contest their status as terminated from Texas Medicaid. This has been recognized by the Fifth Circuit and the Honorable Judge Lora Livingston in Travis County District Court.

**ANSWER:**

Without waiving any Objections, the Complaint speaks for itself. The burden of deriving or ascertaining any relevant answers to the discrete subparts of this Interrogatory is substantially the same for the Defendant as it is for the State. Designated discovery has not been completed.

10.    Identify the sources of all information underlying your allegations in this case and for each source, describe what Texas learned from that source, state when Texas received information from and/or consulted the source, and identify any documents the source showed Texas, provided to Texas, or directed Texas to.

**OBJECTIONS:**

Not relevant. Texas's Complaint in Intervention is brought under Section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. Neither "information" shared by "sources" nor "when Texas received that information" nor other requests are relevant to the State's claims or to defenses to the State's claims in this case.

Overbroad. This request is overbroad because of the very wide definition of "Texas" which encompasses persons and entities here who have nothing to do with any claims or defenses in this case. The request to "describe what Texas learned," and other details is also overbroad.

**STATEMENT OF PRIVILEGES:**

Core Work Product, Common Interest, and Attorney/Client: This Interrogatory inquiring into "what Texas learned from sources" and other details asks for information which is covered by the attorney-client, common interest, and work product privileges and protections.

17

**Government Code Medicaid Investigative Privilege. This Interrogatory inquiring into "what Texas learned from sources" and other details asks for information which is privileged under the Government Code Medicaid Investigative Privilege. Texas Government Code § 531.102(k) and Texas Government Code § 531.1021(g) ("All information and materials subpoenaed or compiled by the [OIG] office in connection with an audit or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under Chapter 552, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or the attorney general or their employees or agents involved in the audit or investigation conducted by the office or the attorney general, except that this information may be disclosed to the state auditor's office, law enforcement agencies, and other entities as permitted by other law.").**

**ANSWER:**

***See*** **the Answer to RFP 1 in the State's Responses to the Affiliated Defendants' First Set of Requests for Production, and the State's Complaint in Intervention. The burden of deriving or ascertaining any relevant and discoverable answers to the discrete subparts of this Interrogatory is substantially the same for the Defendant as it is for the State. Designated discovery has not been completed. Other than that Answer, the State stands on its Objections and Statements of Privileges and will not further answer this Interrogatory.**

11.     Describe in detail your views, including the basis for those views, regarding whether a payment, to which a Medicaid provider is entitled at the time of payment, can become an overpayment based on a subsequent change in law and/or a judicial decision. *See, e.g.*, Centers for Medicare & Medicaid Services, Medicare Program; Reporting and Returning of Overpayments, 81 Fed. Reg. 7653, 7658 (Feb. 12, 2016) ("We agree that payments that were proper at the time the payment was made do not become overpayments at a later time due to changes in law or regulation, unless otherwise required by law.").

**OBJECTIONS:**

18

**Not Relevant. Texas's Complaint in Intervention is brought under Section 36.002(12) of the TMFPA, alleging the Defendants, and not any other Medicaid provider, knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. No relevant claims or defenses in this suit are related to Texas's personnel's "views regarding" payments, subsequent changes in law, judicial decisions," etc. Such subsequent changes in law, judicial decisions, etc., speak for themselves and Texas personnel cannot change them, making the State's personnel's views not relevant to any of the State's claims or defenses to the State's claims in this case.**

**Overbroad. This request is overbroad because of the very wide definition of "your" here which encompasses untold persons and entities who have nothing to do with any claims or defenses in this case.**

**ANSWER:**

**The State stands on its Objections and will not answer this Interrogatory.**

12.     Identify every Texas Medicaid provider that Texas has terminated from Texas Medicaid from 2010 to the present. Your response should state the name of the provider, the reason(s) for the termination, the date of the termination, whether Texas requested or required repayment of any Texas Medicaid dollars that had been paid to the provider, and the amounts the provider returned, if any.

**OBJECTIONS:**

**Not relevant. Texas's Complaint in Intervention is brought under Section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. Defendants' terminations from Texas Medicaid – an issue which has been decided as a matter of law – is not relevant to the State's claims or to defenses to the State's claims in this case. Equally, the termination of Medicaid providers who are not Defendants is not relevant to the State's claims or to defenses to the State's claims in this case. The number of, reasons for termination of, and any other facts surrounding the termination of Medicaid providers who are not Defendants is not relevant to the State's claims or to defenses to the State's claims in this case. Those facts cannot be the basis of defenses of disparate treatment,**

19

**estoppel, or other common law defenses – which are not available against the State in this TMFPA action.**

**Improper collateral attack of decided issues. This Interrogatory seeks irrelevant information and is an improper collateral attack of Defendants termination from Texas Medicaid, which has been decided as a matter of law and which is not an issue in this case. This issue was decided when Defendants did not properly contest their status as terminated from Texas Medicaid. This has been recognized by the Fifth Circuit and the Honorable Judge Lora Livingston in Travis County District Court.**

**ANSWER:**

**The State stands on its Objections and will not answer this Interrogatory.**

13.    For every former Texas Medicaid provider (whether affiliated to a Planned Parenthood Defendant or not) whose participation in Texas Medicaid was terminated from 2010 to the present on the basis that the provider was not qualified to provide medical services under Texas Medicaid, engaged in practices that violated generally accepted medical standards; and/or engaged in misrepresentations about its activity relating to fetal tissue procurements, identify the provider by name, state the date of the termination, describe the principal and material facts that lead to the provider's termination, state whether Texas asked or required the provider to return amounts reimbursed under Texas Medicaid, and state the provider returned, if any.

**OBJECTIONS:**

**Not relevant. Texas's Complaint in Intervention is brought under Section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. The termination of Texas Medicaid providers "(whether affiliated to a Planned Parenthood Defendant or not)" is not at issue in this case. The issue of Defendants' termination has been decided as a matter of law and is not relevant to the State's claims or to defenses to the State's claims in this case. Equally, the termination of Medicaid providers who are not Defendants is not relevant to the State's claims or to defenses to the State's claims in this case. The number of, reasons for termination of, and any other facts surrounding the termination of Medicaid providers who are not Defendants is not relevant to the State's**

20

claims or to defenses to the State's claims in this case. Those facts cannot be the basis of defenses of disparate treatment, estoppel, or other common law defenses – which are not available against the State in this TMFPA action.

**Improper collateral attack of decided issues.** This Interrogatory seeks irrelevant information and is an improper collateral attack of Defendants' termination from Texas Medicaid, which has been decided as a matter of law and which is not an issue in this case. This issue was decided when Defendants did not properly contest their status as terminated from Texas Medicaid. This has been recognized by the Fifth Circuit and the Honorable Judge Lora Livingston in Travis County District Court.

**ANSWER:**

**The State stands on its Objections and will not answer this Interrogatory.**

14.    Describe in detail your efforts, if any, to determine whether providers under Texas Medicaid have engaged in fetal tissue procurement that, in your view, might render them unqualified to provide medical services under Texas Medicaid or might violate generally accepted medical standards. Your response should describe the extent to which Texas Medicaid providers are informed of any such efforts. Your response should also identify any Texas Medicaid providers identified as a result of these efforts and describe in detail Texas's consideration of potentially terminating such providers, whether such providers were terminated, whether such providers asked or required to repay amounts reimbursed under Texas Medicaid, and the amounts returned, if any.

**OBJECTIONS:**

**Not Relevant.** Texas's Complaint in Intervention is brought under Section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. "Fetal tissue," "generally accepted medical standards," and informing and terminating Medicaid providers are not relevant to the State's claims or to defenses to the State's claims in this case.

**Improper collateral attack of decided issues.** This Interrogatory seeks irrelevant information and is an improper collateral attack of

App. 1040

**Defendants' termination from Texas Medicaid, which has been decided as a matter of law and which is not an issue in this case. This issue was decided when Defendants did not properly contest their status as terminated from Texas Medicaid. This has been recognized by the Fifth Circuit and the Honorable Judge Lora Livingston in Travis County District Court.**

**ANSWER:**

**The State stands on its Objections and will not answer this Interrogatory.**

15.    Describe in detail why Texas granted the Grace Period, including but not limited to its basis for its apparent assertion that granting the Grace Period is not inconsistent with its contention in the Texas Complaint that the Planned Parenthood Affiliates were obligated to repay Texas Medicaid dollars that it received during the Grace Period.

**OBJECTIONS:**

**Not relevant. Texas's Complaint in Intervention is brought under Section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. Texas's Complaint does not seek payment of civil remedies from Defendants or any recovery of Texas Medicaid dollars paid to Defendants for services delivered during the Grace Period. This makes facts regarding that Grace period not relevant to any of the State's claims or to defenses to the State's claims in this case.**

**ANSWER:**

**The State stands on its Objections and will not answer this Interrogatory.**

16.    Describe in detail your view on whether each of the Planned Parenthood Affiliates' was a Texas Medicaid provider prior to January 4, 2021, whether each of the Planned Parenthood Affiliates' was a Texas Medicaid provider between January 4, 2021 and February 3, 2021, and whether each of the Planned Parenthood Affiliates' was a Texas Medicaid provider after February 3, 2021. Your response should describe the basis for your views regarding the status of each of the Planned Parenthood Affiliates for each of the three time periods.

22

**OBJECTIONS:**

**Irrelevant. Texas's Complaint in Intervention is brought under Section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas Medicaid. The "view" of Texas personnel is not relevant to the State's claims or to defenses to the State's claims in this case.**

**Improper collateral attack of decided issues. This Interrogatory seeks irrelevant information and is an improper collateral attack of Defendants' termination from Texas Medicaid, which has been decided as a matter of law and which is not an issue in this case. This issue was decided when Defendants did not properly contest their status as terminated from Texas Medicaid. This has been recognized by the Fifth Circuit and the Honorable Judge Lora Livingston in Travis County District Court. The "view" of Texas personnel cannot change that.**

**Overbroad. This request is overbroad because of the very wide definition of "your" here which encompasses untold persons and entities who have nothing to do with any claims or defenses in this case.**

**ANSWER:**

**Without waiving its Objections, by operation of Texas law, after January 2017 Defendants were not valid Texas Medicaid providers. For additional details, *see* the State's Complaint in Intervention, and the Answer to RFP 1, in the State's Responses to the Affiliated Defendants' First Set of Requests for Production. The burden of deriving or ascertaining any relevant answers to the discrete subparts of this Interrogatory from those sources is substantially the same for the Defendant as it is for the State.**

17.     Describe in detail why Texas believes that the termination of each of the Planned Parenthood Affiliates from Texas Medicaid does not violate Medicaid's free choice of provider requirement.

**OBJECTIONS:**

**Not relevant. Texas's Complaint in Intervention is brought under Section 36.002(12) of the TMFPA, alleging the Defendants knowingly and improperly avoided an obligation to repay money owed to Texas**

Medicaid. Why anyone "believes" the termination of Defendants from Texas Medicaid does not violate Medicaid's free choice of provider requirement" is not relevant to the State's claims or to defenses to the State's claims in this case.

Improper collateral attack of decided issues. This Interrogatory seeks irrelevant information and is an improper collateral attack of Defendants' termination from Texas Medicaid, which has been decided as a matter of law and which is not an issue in this case. This issue was decided when Defendants did not properly contest their status as terminated from Texas Medicaid. This has been recognized by the Fifth Circuit and the Honorable Judge Lora Livingston in Travis County District Court. The "belief" of Texas personnel, and certainly the details of that "belief," cannot change that.

Overbroad. This request is overbroad because of the very wide definition of "Texas" here which encompasses untold persons and entities who with their "beliefs" or otherwise  have nothing to do with any claims or defenses in this case.

ANSWER:

The State stands on its Objections and will not answer this Interrogatory.

18.    If you deny any of the Requests for Admission issued by any of the Defendants in this case in full or in part, describe in detail the basis for your denial.

OBJECTIONS:

Discrete subparts. Each RFA answer will be a discrete subpart, functioning as a separate Interrogatory, under FRCP 33(a)(1).

ANSWER:

Without waiving its Objections, the State will answer this Interrogatory under the Rules and law at a reasonable time. The State has not answered Requests for Admission in this case, as designated discovery has not been completed. Each RFA answer here will be a discrete subpart, functioning as a separate Interrogatory under FRCP 33(a)(1).

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN E. COWLES
Deputy Attorney General for Civil
Litigation

_____/s/   Raymond Charles Winter_____
RAYMOND CHARLES WINTER
Chief, Civil Medicaid Fraud Division
Texas Bar No. 21791950

AMY S. HILTON
Assistant Attorney General
State Bar No. 24097834

Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 / Fax (512) 320-0667
Raymond.Winter@oag.texas.gov
Amy.Hilton@oag.texas.gov

**Attorneys for State of Texas**

25

App. 1044

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was filed electronically via CM/ECF on July 1, 2022, causing electronic service on all counsel of record.

*/S/    Raymond Charles Winter*
**Raymond C. Winter**

26