**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| United States of America | § | |
| *ex rel.* Alex Doe, Relator, | § | |
| | § | |
| The State of Texas | § | No. 2:21-CV-00022-Z |
| *ex rel.* Alex Doe, Relator, | § | |
| | § | |
| The State of Louisiana | § | |
| *ex rel.* Alex Doe, Relator, | § | Date: June 4, 2023 |
| | § | |
|     *Plaintiffs*, | § | |
| v. | § | |
| | § | |
| Planned Parenthood Federation of America, | § | |
| Inc., Planned Parenthood Gulf Coast, Inc., | § | |
| Planned Parenthood of Greater Texas, Inc., | § | |
| Planned Parenthood South Texas, Inc., Planned | § | |
| Parenthood Cameron County, Inc., Planned | § | |
| Parenthood San Antonio, Inc., | § | |
| | § | |
|     *Defendants*. | § | |

## DEFENDANTS' BRIEF ADDRESSING
### *U.S. EX REL. SCHUTTE V. SUPERVALU INC.*, 598 U.S. ___ (JUNE 1, 2023)

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................... 5

I.    Plaintiffs Have Not Presented Any Evidence that Defendants Possessed the Subjective
      Knowledge that *Schutte* Requires ...................................................................................... 5

II.   Affiliate Defendants' Alleged Misrepresentations Are Not Actionable, Because They Are
      Purely Legal ....................................................................................................................... 11

CONCLUSION .............................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Delta Brands Inc. v. Danieli Corp.*, 99 F. App'x 1 (5th Cir. 2004)................................................ 11

*Evans v. Dynasty Transp., Inc.*, 133 S.W.3d 672 (Tex. App. 2003)...................................... 11, 12

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U. S. 93 (2016)............................................................. 3

*Malouf v. State ex rels. Ellis*, 656 S.W.3d 402 (Tex. App. 2022)............................................. 6, 11

*Olson v. Major League Baseball*, 29 F.4th 59 (2d Cir. 2022) ................................................. 11, 12

*Sterling Trust Co. v. Adderley*, 168 S.W.3d 835 (Tex. 2005).................................................... 6, 11

*United States ex rel. Farmer v. City of Houston*, 523 F.3d 333 (5th Cir. 2008)........................... 6

*United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458 (5th Cir. 2009)............ 6

*United States ex rel. Schutte v. SuperValu Inc.*, No. 21-1326, 598 U.S. __ (June 1, 2023) .. *passim*

*Universal Health Services, Inc. v. United States ex rel. Escobar*, 579 U.S. 176 (2016) .............. 12

**Statutes, Rules, and Other Authorities**

31 U.S.C. § 3729(b)(1)(A) ............................................................................................................... 2

42 C.F.R. § 433.316(b) .................................................................................................................... 8

La. Admin. Code § 4103(A) ............................................................................................................ 8

Tex. Gov. Code § 531.120................................................................................................................ 8

Restatement (Second) of Torts § 545............................................................................................. 12

W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 109

   (5th ed. 1984) ............................................................................................................................ 12

Pursuant to the Court's February 23, 2023 Order [Dkt. 446], Defendants Planned Parenthood Gulf Coast, Inc. ("PPGC"), Planned Parenthood of Greater Texas, Inc. ("PPGT"), Planned Parenthood South Texas, Inc. ("PPST"), Planned Parenthood Cameron County, Inc. ("PPCC"), and Planned Parenthood San Antonio, Inc. ("PPSA") (collectively, "Affiliate Defendants") and Defendant Planned Parenthood Federation of America, Inc. ("PPFA" and, together with the Affiliate Defendants, "Defendants") respectfully submit this brief addressing the Supreme Court's decision in *United States ex rel. Schutte v. SuperValu Inc.*, No. 21-1326, 598 U.S. __ (June 1, 2023).

## INTRODUCTION

In staying this case pending the decision in *Schutte*, the Court noted that the Supreme Court "will most likely provide valuable guidance for parties and the Court." Dkt. 446 at 3. *Schutte* delivered as expected. Although the Supreme Court declined to adopt an "objective reasonableness" standard for scienter under the False Claims Act ("FCA"), it made clear the FCA requires proof of the defendant's contemporaneous subjective knowledge and strongly suggested that purely legal misrepresentations are not actionable under the FCA. *Schutte* thus provides two independent bases to grant Defendants summary judgment here: (1) Plaintiffs have not identified any evidence of Defendants' contemporaneous subjective knowledge; and (2) Affiliate Defendants' allegedly wrongful failure to repay the Medicaid reimbursements they received during the pendency of the injunctions constitutes, if anything, a misrepresentation of law.

The issue in *Schutte* was whether the defendant pharmacies' objectively reasonable interpretation of an ambiguous regulation—which required pharmacies to disclose "usual and customary" drug prices when seeking reimbursement under Medicaid and Medicare—precluded a finding that the defendants acted "knowingly" under the FCA, irrespective of their subjective,

- 1 -

contemporaneous intent.  The legal question before the Court was: "If [defendants'] claims were false and they actually thought that their claims were false—because they believed that their reported prices were not actually their 'usual and customary' prices—then would they have 'knowingly' submitted a false claim within the FCA's meaning? Or is the [court of appeals] correct—that [defendants] could not have 'knowingly' submitted a false claim unless no hypothetical, reasonable person could have thought that their reported prices were their 'usual and customary' prices?"  *Schutte*, slip op. at 7-8.  In resolving the case by holding that "[t]he FCA's scienter element refers to [defendants'] knowledge and subjective beliefs—not to what an objectively reasonable person may have known or believed," *id.* at 8, *Schutte* left this Court with important signposts as to how to apply this subjective intent standard to this case.

In analyzing the three forms of "knowledge" under the FCA—actual knowledge, deliberate ignorance, and recklessness (*see* 31 U.S.C. § 3729(b)(1)(A))—the Court distinguished the case before it from one in which a defendant lacked a contemporaneous belief that its conduct was unlawful, emphasizing that to establish scienter under any of the three standards the plaintiff must present evidence of a defendant's actual subjective belief or awareness.  *Schutte*, slip op. at 11-12.  After reviewing the common law of fraud on which the FCA scienter standard is based, *id.* at 9-10, the Court noted that "[o]n their face and at common law, the FCA's standards focus primarily on what respondents thought and believed," *id.* at 10, and they "track[] traditional common-law fraud, which ordinarily 'depends on a subjective test' and the defendant's 'culpable state of mind,]'" *id.* at 11 (citation omitted).[1]

---

[1] In a footnote, the Court acknowledged that in "some civil contexts" recklessness may be established by a showing that a defendant "act[ed] in the face of an unjustifiably high risk of illegality that was so obvious that it should have been known, even if the defendant was not actually conscious of that risk," but declined to apply that standard to the FCA.  *Schutte*, slip op. at 10 n.5.

Further, the Court clarified that both the FCA's "text and the common law also point to what the defendant thought when submitting the false claim—not what the defendant may have thought *after* submitting it." *Id.* (emphasis in original). Accordingly, the "focus" is not on "*post hoc* interpretations" but on the defendant's contemporaneous subjective intent, *i.e.*, "what the defendant knew when presenting the claim." *Id.* (citing *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U. S. 93, 105 (2016) ("[C]ulpability is generally measured against the knowledge of the actor at the time of the challenged conduct.")).

Of final importance to this case, the Supreme Court also opined on the question of whether a purely legal misrepresentation can be actionable under the FCA. The Court catalogued various common law authorities that supported answering that question in the affirmative and assumed without deciding that the "FCA incorporates some version of th[e] rule" that misrepresentations of law are not actionable at common law. *Id.* at 15. It nonetheless held that the defendant pharmacies did not make a purely legal representation when reporting their "usual and customary" prices because that report implied facts about their prices. *Id.* at 16. In so doing, the Court distinguished between a "hypothetical legal advisor" that makes a representation about what a court would do based on the law and a "hypothetical plumber" who represents that the work

---

The Court held there was no need to decide how or even whether such a standard would apply to the FCA as it was enough "to say that the FCA's standards can be satisfied by a defendant's subjective awareness of the claim's falsity or an unjustifiable risk of such falsity." *Id.* Should Plaintiffs invite this Court to go where the Supreme Court would not, the Court should instead hew closely to the path laid by *Schutte*, focusing on a defendant's subjective intent. In any event, even an "objective recklessness" standard requires a finding of an "obvious" risk of illegality, and as described in Defendants' summary judgment briefing and below, the supposed obligation to repay monies reimbursed for services actually rendered during the pendency of court injunctions was far from "obvious." *See, e.g.*, Dkt. 382 at 23-30. Indeed, as previously argued, this Court should hold that the absence of a repayment obligation defeats Plaintiffs' FCA claims without reaching the question of scienter. *Id.*

performed complied with code. *Id.* at 15-16. The former is a purely legal representation while the latter speaks both to the legal code and the work performed. *Id.*

Thus, under *Schutte,* to survive summary judgment Plaintiffs must present evidence sufficient to support a finding by a jury that, at the time each claim was submitted (for Relator's implied false certification claims) or at the time the Affiliate Defendants' supposed repayment obligation arose (for Plaintiffs' reverse false claims), Affiliate Defendants (1) had a contemporaneous, subjective belief that their certifications for their claims were false or that they were required to repay the Medicaid funds they received during the pendency of the injunctions or (2) were subjectively aware of and disregarded a substantial risk that their certifications were false or that repayment was required. As for PPFA, even though it does not provide medical services, submit claims, or receive payment on such claims, Plaintiffs must show for the affirmative false claim theories that PPFA subjectively believed the Affiliate Defendants' claims were false when submitted (or at a minimum were subjectively aware of a substantial risk of such falsity), and for the reverse false claim theory that PPFA subjectively believed that it shared in the Affiliate Defendants' putative repayment obligation. There is no such evidence. The Court therefore should grant Defendants summary judgment on Plaintiffs' claims on this basis, in addition to the many independent bases discussed in Defendants' prior briefing. Further, the question of whether there was a repayment obligation is a pure question of law; therefore, Defendants' alleged failure to repay claims is not actionable as fraud at common law and, in turn, is not actionable under the FCA.

- 4 -

**ARGUMENT**

I.      **Plaintiffs Have Not Presented Any Evidence that Defendants Possessed the Subjective Knowledge that *Schutte* Requires**

*Schutte* made clear the FCA scienter standard this Court should apply:  To survive summary judgment on their reverse false claims counts, Plaintiffs must present evidence from which a reasonable jury could find in their favor that Defendants (1) *actually* knew that they were obligated to repay the monies Affiliate Defendants received for Medicaid services rendered during the pendency of the injunctions; (2) were aware of a substantial risk that they were required to repay those claims and *intentionally* avoided learning whether they indeed were required to do so; or (3) were aware of a substantial and unjustifiable risk of the same but failed to repay those claims. *Schutte*, slip op. at 16.  And to survive summary judgment on the implied false certification claims, Relator must present evidence from which a reasonable jury could find in its favor that, for each claim submitted by the Affiliate Defendants, Defendants (1) *actually* knew that the Affiliate Defendants' implied certifications were false; (2) were aware of a substantial risk that those implied certifications were false and intentionally avoided learning whether they indeed were false; or (3) were aware of a substantial and unjustifiable risk of the same but nevertheless submitted the claims.  *Id.*

All three types of knowledge require proof of a defendant's intent in some fashion—actual knowledge of an implied false certification or repayment obligation or subjective awareness of a substantial risk that there was such an implied false certification or repayment obligation.  And such knowledge or subjective awareness must be *contemporaneous*.  That is, it must have arisen at the time each claim was submitted or at the time the repayment obligation arose.  *See id.* at 11. It is not enough for Plaintiffs to argue that Defendants "should have known" that the implied

certifications were false or that they had to pay the money back.  Though there is no basis here to say even that Defendants "should have known" either of these things, predicating FCA liability on whether Defendants "should have known" their conduct was wrongful would impose fraud liability for mere negligence.  That is contrary to well-established Fifth Circuit precedent.  *See, e.g.*, *United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 468 (5th Cir. 2009) ("Though the FCA is plain that 'proof of specific intent to defraud' is not necessary, [the mens rea] requirement is not met by mere negligence or even gross negligence." (alteration in original) (quoting *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 338 (5th Cir. 2008))).

As the Supreme Court explained, the requirement that a plaintiff present evidence of subjective knowledge derives from the common law.  *Schutte*, slip op. at 9-10.  And *Schutte's* holding aligns with Texas law, which also requires evidence of subjective knowledge for fraud claims, including those under the TMFPA.  *See, e.g.*, *Malouf v. State ex rels. Ellis*, 656 S.W.3d 402, 412 (Tex. App. 2022) (TMFPA's use of "conscious indifference" and "reckless disregard" "require proof that a party knew the relevant facts but did not care about the result" (citation omitted)); *Sterling Trust Co. v. Adderley*, 168 S.W.3d 835, 841 (Tex. 2005) ("reckless disregard" is "intended to impose a requirement of 'recklessness in its subjective form'" (citation omitted)).  Plaintiffs' claims fail under the *Schutte* standard because there is no evidence that Affiliate Defendants (much less PPFA) knew any claim the Affiliate Defendants submitted contained an implied false certification or that they knew they had a repayment obligation, nor is there any evidence that they were aware of and disregarded a substantial (and for recklessness, unjustifiable) risk of any implied false certifications or repayment obligations, either.

First, with respect to Relator's assertion that Affiliate Defendants submitted claims with impliedly false certifications, Relator has not presented any evidence whatsoever that any of the

- 6 -

Defendants subjectively knew (or were subjectively aware of a substantial risk) that Affiliate Defendants' claims contained implied false certifications, let alone that they possessed that knowledge at the time *each and every* claim was submitted.  In opposing Defendants' motions for summary judgment on Relator's implied false certification theory for claims submitted after February 5, 2011, Relator's brief is entirely devoid of any mention of scienter and, in turn, any evidence that would support it.  *See* Dkt. 415 at 28-32, 39-43 (discussing only falsity and materiality).  And Relator did not separately move for summary judgment on that theory, either, meaning that again Relator did not present any evidence at summary judgment that would support a jury finding that Affiliate Defendants or PPFA subjectively believed *any* claim submitted after February 5, 2011 contained an implied false certification.  *See generally* Dkt. 391.[2]  Additionally, as noted in Defendants' prior briefing, Relator moved for summary judgment on three "alternative" theories of implied false certification that were not pled in the Complaint and therefore cannot be raised at summary judgment.  *See* Dkt. 419-2 at 34-42.  But even if these new theories *could* be raised at summary judgment, Relator's brief again is devoid of any evidence that supports Relator's conclusory assertion that Affiliate Defendants "knowingly" submitted false claims under any of the three new theories, or that PPFA had any knowledge or awareness of falsity.  *See* Dkt. 391 at 53-61 (discussing only falsity).  This dearth of evidence of scienter is fatal to Relator's implied false certification claims.

---

[2] Additionally, as noted in Affiliate Defendants' prior briefing, even if Relator had presented any evidence of PPGC's scienter (which Relator has not), Relator's implied false certification claims against PPGT and PPST would still fail: PPGT and PPST did not participate in any tissue studies; Relator has not alleged that either violated federal or state laws; and Relator has not alleged nor offered any evidence that PPGT or PPST had any knowledge of PPGC's supposedly unlawful conduct.  *See* Dkt. 382 at 48.

- 7 -

Second, Plaintiffs have not presented evidence of any Defendants' scienter when it comes to the alleged repayment obligation.  To the contrary, the only evidence in this case is that Defendants subjectively believed that they were *not* required to repay the claims Affiliate Defendants submitted for services rendered while the injunctions were pending.  Witnesses consistently testified that: Affiliate Defendants knew they were actively enrolled in Texas Medicaid until March 2021; PPGC knew it had never been terminated from Louisiana Medicaid; Affiliate Defendants believed that they were entitled to payment for services rendered while they remained actively enrolled in Texas and Louisiana Medicaid; Affiliate Defendants knew CMS had taken the position that the terminations were unlawful; Affiliate Defendants knew that neither Texas nor Louisiana had ever requested repayment; and PPFA is not a Medicaid provider and did not believe it had an obligation to repay Medicaid funds it never received.  *See* Dkt. 382 at 36 n.26 (citing relevant paragraphs of Affiliate Defendants' Statement of Facts); Dkt. 387-1 at 174-75, 311.  Indeed, both Texas and Louisiana have regulatory and statutory obligations to notify a provider of a repayment obligation, yet they never did so.  42 C.F.R. § 433.316(b); Tex. Gov. Code § 531.120; La. Admin. Code § 4103(A).[3]  There is no evidence that it ever even occurred to any Defendant that repayment might be required, let alone that any Defendant actually believed it.

That is consistent with applicable law.  As explained further in Defendants' prior briefing, courts consistently have held that vacatur of an injunction requires repayment *only* where there is an injunction bond or court order requiring repayment.  *See, e.g.*, Dkt. 382 at 23-24, 32.  There

---

[3] What is more, that Texas and Louisiana never notified Affiliate Defendants or PPFA of a repayment obligation suggests that, like Defendants, the states also did not subjectively believe repayment was required.  Indeed, as discussed in further detail in Defendants' prior briefing, *see, e.g.*, Dkt. 382 at 29 & n.21, 33-36, there is significant evidence in this case that both Texas and Louisiana shared Defendants' view that repayment was not required.

was no such injunction bond or court order requiring repayment here.  Moreover, neither a state's discretionary authority to seek recoupment nor the Affordable Care Act's 60-day rule gave rise to an obligation to repay, so the Defendants could not have been on notice of such an obligation.  *Id.* at 24-30.  And in Louisiana, the state ultimately withdrew its termination of PPGC after the injunction lifted, so PPGC was never actually terminated and remains a provider in good standing to this day. *Id.* at 10, 36.

Plaintiffs' purported "evidence" of subjective knowledge misses the mark.  Plaintiffs argue that Defendants "were aware of facts that made it 'substantial[ly]' or 'high[ly] likel[y]' that they could not keep the funds paid under the vacated injunctions" or that there was "at least a substantial risk that Defendants were not entitled to keep the money."  *See* Dkt. 440 at 13-14 (alterations in original).  But none of the "evidence" they cite actually supports the conclusion that Defendants *ever* subjectively believed they had a repayment obligation, let alone that they believed that at the time the alleged obligation arose.  In fact, much of the evidence Plaintiffs cite supports precisely the opposite conclusion: that Defendants never knew *or* subjectively believed there was a substantial risk they had a repayment obligation.  For example:

- Plaintiffs argue that PPGC knew that the date of termination "would not change because of federal court action," Dkt. 440 at 13, citing an email where counsel for the Louisiana Department of Health assured PPGC that LDH would "of course *follow any court orders*," Pls. Appx. 6311 (emphasis added).  Not only does this document not contain any evidence of Defendants' subjective knowledge or belief of a repayment obligation, but it also supports the consistent witness testimony in this case that Affiliate Defendants believed just the opposite.

- Plaintiffs also contend that Defendants knew "in November 2020 that the preliminary rulings forcing the States to continue reimbursing them had no basis in law and would be vacated," relying on a March 12, 2021 document in which PPGC discussed options available to it now that its status as a Medicaid provider had changed.  Dkt. 440 at 13 (citing Pls. Appx. 2707).  Again, this document is not evidence of Defendants' contemporaneous, subjective knowledge of a repayment obligation.

- 9 -

- Plaintiffs point to a March 13, 2021 document that states that "there are penalties for us billing when we are excluded from the program." Dkt. 440 at 14 (quoting Pls. Appx. 5577). That document, sent after the injunctions lifted, says nothing about Defendants' state of mind with respect to any obligation to repay the claims paid during the pendency of the injunctions. It simply recognized that once the terminations were finally effectuated, Affiliate Defendants could no longer bill Medicaid. To that end, this evidence demonstrates the opposite of Plaintiffs' contention: that Defendants subjectively understood that, once the injunctions were lifted, they could not bill, but before the injunctions were lifted, they could. And as discussed, Affiliate Defendants stopped billing Texas Medicaid after March 10, 2021. *See* Dkt. 382 at 5.

- Plaintiffs argue that instead of pursuing an administrative appeal, Defendants "made the strateg[ic] decision to go to federal court." Dkt. 440 at 13 (alteration in original) (citing Pls. Appx. 6148). This, of course, says *nothing* about Defendants' subjective belief about the effect of that federal court's later injunction on their obligation to repay claims that they submitted while they remained qualified Medicaid providers.

- And Plaintiffs argue that Defendants knew that "CMS has stated that self-identified overpayments must be turned around within 60 days of discovery along with an explanation of the overpayment" and that "Defendants have in fact had to repay other Medicaid reimbursements in the past." Dkt. 440 at 14-15. It is one thing to say that Defendants knew they were required to return overpayments (and had done so in the past), but another to say that Defendants subjectively knew or believed there was a substantial likelihood that the claims received during the pendency of the injunctions *were in fact overpayments*. Plaintiffs' contentions might support the former, but they certainly do not support the latter, and, under *Schutte*, it is the latter that matters.

At bottom, despite exhaustive discovery—including twenty-four total depositions (seventeen of which Plaintiffs took) and more than 450,000 documents produced by Defendants— Plaintiffs have not pointed to any evidence that Defendants subjectively knew they had a repayment obligation when the injunctions lifted, nor could they, because no such evidence exists. Accordingly, Plaintiffs have failed to present evidence of subjective knowledge sufficient to survive summary judgment. Even were this Court to conclude that Affiliate Defendants had an obligation to repay the claims they submitted during the pendency of injunctions while they remained qualified providers (which, for all of the reasons discussed in Defendants' prior briefing, it should not), there is absolutely no evidence of a subjective, contemporaneous belief held by

Affiliate Defendants that they had such an obligation (or by PPFA that is somehow shared in such an obligation, despite never receiving Medicaid funds) or that any Defendant even questioned the existence of such an obligation.  Therefore, following *Schutte*, this Court should grant Defendants summary judgment on Relator's FCA claims and Plaintiffs' analogous state law claims.[4]

## II.    Affiliate Defendants' Alleged Misrepresentations Are Not Actionable, Because They Are Purely Legal

As noted above, the *Schutte* Court assumed, without deciding, that the FCA incorporates the common law rule recognized by many courts, including Texas state courts, that misrepresentations of law are not actionable as fraud.  *See Schutte*, slip op. at 15; *see also, e.g.*, *Evans v. Dynasty Transp., Inc.*, 133 S.W.3d 672, 677 (Tex. App. 2003) (recognizing long-standing general rule that misrepresentation of law is to be "regarded as merely an expression of opinion and will not support an action for fraud and deceit"); *Delta Brands Inc. v. Danieli Corp.*, 99 F. App'x 1, 6 n.4 (5th Cir. 2004) (recognizing and applying Texas rule); *Olson v. Major League Baseball*, 29 F.4th 59, 74 (2d Cir. 2022) (collecting cases).

This Court should apply this common law rule as an additional basis to grant Defendants summary judgment.  As an initial matter, although the Supreme Court did not formally hold this common law rule applicable to the FCA, there is no reason to doubt its application.  As the Court observed, "[t]hat the text of the FCA tracks the common law is unsurprising because, as we have recognized, the FCA is largely a fraud statute."  *Schutte*, slip op. at 9.  Further, "[i]n the absence

---

[4] As noted in Defendants' Motion to Stay, the same scienter analysis that applies to the FCA should apply to Plaintiffs' state law claims, because "[c]ourts generally interpret state false claims statutes—including the TMFPA and LMAPIL—consistently with the FCA," particularly where the statutes use the same language, as they do with scienter. Dkt. 422 at 10.  That Texas law also requires a showing of subjective intent for recklessness further supports that Plaintiffs' failure to show subjective intent for any reverse false claim under any of the FCA's scienter prongs also dooms their state law claims. *See, e.g.*, *Malouf*, 656 S.W.3d at 412; *Sterling*, 168 S.W.3d at 841.

of statutory text to the contrary," the Court has interpreted the FCA consistently with well-settled definitions of fraud at common law.  *Id.* at 9-11 (interpretating FCA "knowledge" element consistent with common law of fraud); *Universal Health Services, Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 187 (2016) (interpreting "false and fraudulent" in FCA consistent with common law of fraud).  And at common law, "misrepresentations of law are not actionable" as fraud.  *Id.* at 15 (citing Restatement (Second) of Torts §545; W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts §109, pp. 758-59 (5th ed. 1984)); *see also, e.g.*, *Evans*, 133 S.W.3d at 677; *Olson*, 29 F.4th at 74.

Unlike in *Schutte*, the alleged "misrepresentations" here are purely legal.  Plaintiffs allege that Defendants wrongfully failed to repay the amounts Affiliate Defendants received for providing Medicaid services during the pendency of the injunctions.  Defendants' failure to repay effectively carried with it an implicit representation that the law does not require repayment of amounts paid while Affiliate Defendants remained qualified providers during the pendency of an injunction (and, as to PPFA, repayment of amounts it never billed or received).[5]  That is much more like the Supreme Court's hypothetical legal advisor than its hypothetical plumber.  This is especially true for PPFA given that Relator's reverse-false-claims theory as to PPFA is premised entirely on legal advice PPFA's "Litigation & Law" department provided to the Affiliate Defendants within their attorney-client relationship.  *See* Dkt. 414 at 18-23.  And, unlike the

---

[5] This principle would hold true as well for any of Relator's implied false certification claims for Medicaid claims submitted after the time that Relator asserts the Affiliate Defendants were terminated.  For such claims submitted following the purported terminations, the only implied "misrepresentation" was that Affiliate Defendants were not terminated by virtue of pending court injunctions at the time of claim submission.  The "falsity" of such claims therefore depends on the legal effect of the enjoined terminations on the Medicaid claims submitted, and as such, fits squarely in the rubric of legal misrepresentations not actionable under the FCA.

- 12 -

*Schutte* defendants, Affiliate Defendants' "representations" did not imply any facts about their claims at all, let alone facts that were not known to Texas or Louisiana Medicaid. *See Schutte*, slip op. at 16. As noted in Defendants' prior briefing, Texas and Louisiana were aware of the termination notices, the injunctions, and the Fifth Circuit's decision vacating the Texas injunction. *See* Dkt. 382 at 34. And of course they were aware that they had not been repaid by Affiliate Defendants or PPFA for the claims submitted while the injunctions were pending. Thus, Defendants are entitled to summary judgment as a matter of law.

## CONCLUSION

For the reasons above and for those in Defendants' prior summary judgment briefing [Dkts. 382, 385, 414, 417, 435, and 438], the Court should grant Affiliate Defendants' Motion for Summary Judgment [Dkt. 381] and PPFA's Motion for Summary Judgment [Dkt. 385] and deny Texas's Motion for Summary Judgment [Dkt. 388] and Relator's Partial Motion for Summary Judgment [Dkt. 389].

Dated: June 4, 2023                    Respectfully Submitted,

                                       ARNOLD & PORTER KAYE
                                       SCHOLER LLP

                                       /s/ *Tirzah S. Lollar*_____
                                       Craig D. Margolis
                                       Craig.Margolis@arnoldporter.com
                                       Tirzah S. Lollar
                                       Tirzah.Lollar@arnoldporter.com
                                       Christian Sheehan
                                       Christian.Sheehan@arnoldporter.com
                                       Jayce Born
                                       Jayce.Born@arnoldporter.com
                                       Megan Pieper
                                       Megan.Pieper@arnoldporter.com
                                       601 Massachusetts Ave, NW
                                       Washington, DC 20001-3743
                                       Telephone: +1 202.942.5000

- 13 -

Fax: +1 202.942.5999

Christopher M. Odell
Texas State Bar No. 24037205
Christopher.Odell@arnoldporter.com
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: +1 713.576.2400
Fax: +1 713.576.2499

Paula Ramer
250 West 55th Street
New York, New York 10019-9710
T: +1 212.836.8474
Paula.Ramer@arnoldporter.com

RYAN BROWN ATTORNEY AT LAW
Ryan Patrick Brown
Texas Bar No. 24073967
ryan@ryanbrownattorneyatlaw.com
1222 S. Fillmore St.
Amarillo, Texas 79101
T: (806) 372-5711
F: (806) 350-7716

*Attorneys for Defendants Planned Parenthood
Gulf Coast, Inc., Planned Parenthood of Greater
Texas, Inc., Planned Parenthood of South Texas,
Inc., Planned Parenthood Cameron County, Inc.,
and Planned Parenthood San Antonio, Inc.*

O'MELVENY & MYERS LLP

/s/ *Danny S. Ashby*
DANNY S. ASHBY
Texas Bar No. 01370960
dashby@omm.com
MEGAN R. WHISLER
Texas Bar No. 24079565
mwhisler@omm.com
2501 N. Harwood Street, Suite 1700
Dallas, Texas 75201
T: (972) 360-1900
F: (972) 360-1901

- 14 -

LEAH GODESKY (pro hac vice)
lgodesky@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
T: (310) 553-6700
F: (310) 246-6779

RYAN BROWN ATTORNEY AT LAW
Ryan Patrick Brown
Texas Bar No. 24073967
ryan@ryanbrownattorneyatlaw.com
1222 S. Fillmore St.
Amarillo, Texas 79101
T: (806) 372-5711
F: (806) 350-7716

*Attorneys for Defendant Planned Parenthood
Federation of America, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 4, 2023, the foregoing document was electronically filed with the Clerk of Court using CM/ECF.

/s/ Tirzah S. Lollar_____

Tirzah S. Lollar

- 16 -