**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| United States of America | § | |
| *ex rel.* Alex Doe, Relator, | § | |
| | § | |
| The State of Texas | § | No. 2:21-CV-00022-Z |
| *ex rel.* Alex Doe, Relator, | § | |
| | § | |
| The State of Louisiana | § | |
| *ex rel.* Alex Doe, Relator, | § | Date: June 20, 2023 |
| | § | |
|     *Plaintiffs*, | § | |
| v. | § | |
| | § | |
| Planned Parenthood Federation of America, | § | |
| Inc., Planned Parenthood Gulf Coast, Inc., | § | |
| Planned Parenthood of Greater Texas, Inc., | § | |
| Planned Parenthood South Texas, Inc., Planned | § | |
| Parenthood Cameron County, Inc., Planned | § | |
| Parenthood San Antonio, Inc., | § | |
| | § | |
|     *Defendants*. | § | |

**<u>AFFILIATE DEFENDANTS' BRIEF IN OPPOSITION
TO RELATOR'S MOTION TO COMPEL</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................................ 1

PROCEDURAL HISTORY........................................................................................................... 2

BACKGROUND .......................................................................................................................... 4

LEGAL STANDARD................................................................................................................... 6

ARGUMENT................................................................................................................................ 7

I.     The Court Has Already Decided This Issue, but Relator Does Not Attempt to Meet the
       Standard for a Reconsideration Motion .............................................................................. 7

       A.    The Court Rejected Relator's Argument When It Denied the December Motion........ 7

       B.    The Motion Fails to Address—Let Alone Satisfy—the Burden for a Motion to
             Reconsider................................................................................................................. 9

II.    The Motion Is Untimely ................................................................................................... 10

III.   The Document's Redacted Portions Are Protected by the Work Product Doctrine and the
       Attorney-Client Privilege................................................................................................. 13

       A.    The Redacted Portions of the Document Are Protected by the Work Product Doctrine
             ................................................................................................................................. 13

       B.    The Redacted Portions of the Document Are Also Protected by Attorney-Client
             Privilege, as Extended by the Common Interest Doctrine ......................................... 17

       CONCLUSION......................................................................................................... 22

# **TABLE OF AUTHORITIES**

**Page(s)**

<u>**Cases**</u>

*Addington v. Farmer's Elevator Mut. Ins. Co.*,
650 F.2d 663 (5th Cir. 1981) ..................................................................8

*Aiken v. Tex. Farm Bureau Mut. Ins. Co.*,
151 F.R.D. 621 (E.D. Tex. 1993)...........................................................18

*AMS Staff Leasing, NA, Ltd. v. Associated Contract Truckmen, Inc.*,
No. 04-cv-1344, 2005 WL 3148284 (N.D. Tex. Nov. 21, 2005) .............7

*Austin v. Kroger Tex., L.P.*,
864 F.3d 326 (5th Cir. 2017) ..................................................................6

*BCR Safeguard Holding, L.L.C. v. Morgan Stanley Real Estate Advisor, Inc.*,
614 F. App'x 690 (5th Cir. 2015) ....................................................19, 20

*Buchanan v. Sterling Constr. Co. Inc.*,
No. 16-cv-3429, 2018 WL 1305062 (S.D. Tex. Mar. 12, 2018) ............14

*Coughlin v. Lee*,
946 F.2d 1152 (5th Cir. 1991) ................................................................2

*Crosby v. La. Health Serv. & Indem. Co.*,
647 F.3d 258 (5th Cir. 2011) ..................................................................2

*Days Inn Worldwide, Inc. v. Sonia Invs.*,
237 F.R.D. 395 (N.D. Tex. 2006) .....................................................11, 12

*Doe 1 v. Baylor Univ.*,
320 F.R.D. 430 (W.D. Tex. 2017) ....................................................14, 22

*Dos Santos v. Bell Helicopter Textron, Inc.*,
651 F. Supp. 2d 550 (N.D. Tex. 2009) ...............................................9, 10

*EEOC v. BDO USA, L.L.P.*,
876 F.3d 690 (5th Cir. 2017) ..........................................................17, 22

*Fisher v. Nat'l R.R. Passenger Corp.*,
152 F.R.D. 145 (S.D. Ind. 1993).............................................................17

*Fisher v. United States*,
425 U.S. 391 (1976).................................................................................22

*FTC v. Grolier Inc.*,
   462 U.S. 19 (1983)................................................................................................16

*Hickman v. Taylor*,
   329 U.S. 495 (1947)...............................................................................................14

*Hodges, Grant, & Kaufmann v. IRS*,
   768 F.2d 719 (5th Cir. 1985) ................................................................................19

*Hudnall v. Payne*,
   No. 14-CV-133, 2015 WL 11112534 (E.D. Tex. Mar. 30, 2015) ...........................7

*In re Ad Valorem Tax Litig.*,
   216 S.W.3d 83 (Tex. J.P.M.L. 2006)......................................................................6

*In re Deepwater Horizon Incident Litig.*,
   387 S.W.3d 127 (Tex. J.P.M.L. 2011)..................................................................21

*In re Grand Jury Subpoenas*,
   902 F.2d 244 (4th Cir. 1990) ................................................................................18

*In re Int'l Sys. & Controls Corp. Sec. Litig.*,
   693 F.2d 1235 (5th Cir. 1982) ..............................................................................17

*In re Santa Fe Int'l Corp.*,
   272 F.3d 705 (5th Cir. 2001) ..........................................................................19, 20

*In re Tex. Heartbeat Act Litig.*,
   No. 21-0782 (Tex. J.P.M.L. filed Sept. 13, 2021) ............................................6, 22

*In re Volkswagen Clean Diesel Litig.*,
   516 S.W.3d 704 (Tex. J.P.M.L. 2016)..................................................................21

*Love v. Tyson Foods, Inc.*,
   677 F.3d 258 (5th Cir. 2012) ................................................................................19

*Luckenbach Tex., Inc. v. Engel*,
   No. 1:19-CV-00567-DH, 2022 WL 9530041 (W.D. Tex. Oct. 14, 2022).............20

*MyGatt v. Castro*,
   No. C-08-380, 2009 WL 129467 (S.D. Tex. Jan. 16, 2009)..................................11

*Nieman v. Hale*,
   No. 12-cv-2433, 2013 WL 6814789 (N.D. Tex. Dec. 26, 2013)............................18

*Norman v. Apache Corp.*,
   19 F.3d 1017 (5th Cir. 1994) ..................................................................................8

*Petersen v. Douglas Cnty. Bank & Tr. Co.*,
    967 F.2d 1186 (8th Cir. 1992) ................................................................14

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. City of Lubbock*,
    No. 21-cv-114, 2021 WL 4775135 (N.D. Tex. Oct. 13, 2021)........................................7, 9, 10

*SEC v. Brady*,
    238 F.R.D. 429 (N.D. Tex. 2006) ........................................13, 14, 16, 17

*SEC v. Cuban*,
    No. 08-cv-2050, 2013 WL 1091233 (N.D. Tex. Mar. 15, 2013)............................................17

*Soliz v. United States*,
    No. 16-cv-370, 2018 WL 6427342 (W.D. Tex. June 13, 2018) ............................................11

*St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*,
    123 F.3d 336 (5th Cir. 1997) ................................................................6

*TravelPass Grp., LLC v. Caesars Entm't Corp.*,
    No. 18-cv-153, 2021 WL 4027374 (E.D. Tex. Feb. 9, 2021)..................................................15

*Turk v. Pershing LLC*,
    No. 09-cv-2199, 2019 WL 13074701 (N.D. Tex. Aug. 1, 2019) ....................................10, 11

*United States v. Am. Tel. & Tel. Co.*,
    642 F.2d 1285 (D.C. Cir. 1980)................................................................20

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981)................................................................14, 16

*Wi-Lan, Inc. v. Acer, Inc.*,
    No. 07-cv-473, 2010 WL 4118625 (E.D. Tex. Oct. 18, 2010)................................................15

*Windsor v. Olson*,
    No. 16-cv-934, 2019 WL 77228 (N.D. Tex. Jan. 2, 2019) ................................................18, 20

## Statutes, Rules, and Other Authorities

11 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2810.1 ........................10

Fed. R. Civ. P. 26 ................................................................11, 14, 16

Fed. R. Civ. P. 54 ................................................................6, 9, 11

Fed. R. Civ. P. 59 ................................................................9, 11

Fed. R. Civ. P. 60 ................................................................9, 11

Fed. R. Evid. 502(d)................................................................2

*Restatement (Third) of the Law Governing Lawyers* § 76, Reporter's Note cmt. b .......................20

Tex. Gov't Code §§ 74.161–164........................................................................................6

Tex. R. Jud. Admin. 13 .................................................................................................6, 22

Defendants Planned Parenthood Gulf Coast, Inc. ("PPGC"), Planned Parenthood of Greater Texas, Inc. ("PPGT"), Planned Parenthood South Texas, Inc. ("PPST"), Planned Parenthood Cameron County, Inc. ("PPCC"), and Planned Parenthood San Antonio, Inc. ("PPSA") (collectively, "Affiliate Defendants") respectfully submit this brief in opposition to Relator's Motion to Compel Production of Document on Defendants' Privilege Log, ECF No. 433 (the "Motion" or "Mot.").

## **INTRODUCTION**

As Relator concedes, the Court in early January already denied a motion seeking the precise relief this Motion seeks.  Yet the Motion fails to mention the standard that applies when a party asks a court to reconsider a prior ruling—a standard that Relator has relied on previously in arguing against Affiliate Defendants' motions to reconsider on other issues.  The Motion's silence is telling because it plainly does not meet that standard, which requires either manifest error or intervening factual or legal developments.  Nothing of the sort is at issue here; Relator merely does not like the Court's prior ruling.  Even under the ordinary standard for a motion to compel (and even if the Motion were timely), the Motion fails today for the same reason it did when Relator first sought this relief in December 2022: The redacted portions of the document that Relator seeks to discover are core attorney-client privileged and work-product communications among a group of aligned entities and their lawyers who were discussing litigation strategy regarding parallel lawsuits in which they had a shared legal goal, and who had every expectation that their communications would be kept confidential and shielded from their adversaries.  The Court should reject Relator's second attempt at accessing these plainly undiscoverable communications, and deny the Motion in full.

## PROCEDURAL HISTORY

During discovery in this matter, Relator served Affiliate Defendants with six sets of requests for production ("RFPs"), on May 27, June 16, July 7, August 23, August 31, and September 1, 2022.  Relator filed three motions to compel (ECF Nos. 120, 150, 154) and one extraordinary motion to compel, seeking appointment of a forensic examiner of Relator's choosing to perform an intrusive inspection of Relator's design throughout Affiliate Defendants' computer systems (ECF No. 220).   Through these four motions, Relator fought to obtain Affiliate Defendants' production of documents hitting a broad set of search terms—such as "Medicaid" as a standalone term—only loosely tethered to Relator's specific allegations.  *See, e.g.*, ECF No. 220 at 13.  In granting certain of Relator's motions to compel, the Court made clear that "the scope of discovery is broad," and that "relevancy is broadly construed."  ECF No. 215 at 3 (citing *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011); *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991)).  Affiliate Defendants initially did a responsiveness review to cull out documents that were hit by a search term but not relevant to the litigation, but the Court subsequently determined that such a responsiveness review should not be done.  *See* ECF No. 184. As a result, Affiliate Defendants' productions were vast, including, for example, every document that contained the word "Medicaid," plus family members, from 28 custodians.

On October 24, 2022, Affiliate Defendants inadvertently produced a document spanning the bates range PPGT00015864 through -15871 (the "Document") without redactions.  On October 28, pursuant to Federal Rule of Evidence 502(d) and the Court's Scheduling Orders, Affiliate Defendants promptly clawed it back upon discovery of the inadvertent production and subsequently produced a version redacting three emails within the chain that are subject to the work product doctrine and attorney-client privilege.  Between October 28 and December 22, Relator expressed no objection to the clawback and on October 31 confirmed that they had

- 2 -

segregated the clawed back document until Affiliate Defendants could produce an overlay with a redacted version of the document.

On December 15, Texas filed its Motion to Compel Defendants' Production of Documents Identified on Defendants' Privilege Logs, and filed a supplement thereto on December 19 (collectively, the "December Motion"). *See* ECF Nos. 354, 357.[1] The December Motion sought to have the Court order Defendants to produce hundreds of documents meeting certain criteria, including the redacted portions of the Document. *See generally id.*; Mot. at 5 (conceding that the Document was one of the documents the December Motion sought). Pursuant to the Court's orders on motions to expedite, Affiliate Defendants' response to the December Motion was due on December 21. *See* ECF Nos. 345, 363. Affiliate Defendants timely filed their response on that date. *See* ECF No. 405. The following day, Relator filed a document entitled "Relator's Memorandum in Support of State of Texas's Motion to Compel Production of Documents on Defendants' Privilege Log" (the "December Brief"). *See* ECF No. 370. In the December Brief, Relator argued in favor of granting the December Motion "specifically" as applied to the Document. *See id.* The next day, Affiliate Defendants filed an opposition to the December Brief in which they explained, among other things, that the Document is protected by the attorney work product doctrine and the attorney-client privilege as extended by the common interest privilege. ECF No. 372. Relator filed no reply. Ten days later, on January 2, 2023, the Court issued an order denying the December Motion in its entirety. ECF No. 376.

Nearly five weeks later on February 3, 2023, Relator informed Defendants that they would be filing a motion to compel production of the Document. Ex. 3. Affiliate Defendants responded

---

[1] Some of the cited docket entry numbers may appear out of order because certain documents were initially filed under seal and then given new numbers after the relevant motion to seal was granted.

that day that they opposed the motion and the parties agreed to an expedited briefing schedule. *Id.* Then two weeks passed, during which time Relator did not file. On February 17, 2023, Relator informed Affiliate Defendants that "[t]his motion fell by the wayside" but they intended to file it that day. *Id.* Relator filed the motion later that day. ECF No. 433.

## BACKGROUND

Waters & Kraus has represented PPGT and its related entities continuously since August 2021, when the firm was retained in anticipation of litigation related to Texas's abortion-related legislation known as SB8. Ex. 1 ¶ 2 (Dec. 23, 2022 Declaration of Caitlyn Silhan). On September 2, 2021, Planned Parenthood of Greater Texas Surgical Health Services ("PPGTSHS") filed a legal challenge to SB8 in Texas state court. *Id.* ¶ 4. At the time, PPGTSHS was a separate but related entity of PPGT that provided reproductive health services, including abortion, miscarriage management, and contraception. *Id.* PPGT appointed all PPGTSHS board members, and Ken Lambrecht served as president and CEO of both entities. *Id.* Waters & Kraus was initially PPGTSHS's counsel of record in the Texas state court challenge to SB8, along with co-counsel at the Kaplan Law Firm, PLLC and attorneys from Planned Parenthood Federation of America's ("PPFA") Litigation & Law group. *Id.* Waters & Kraus withdrew as litigation counsel of record on September 15, 2021, but continued to serve as legal counsel to PPGT and PPGTSHS, including on matters related to SB8. *Id.* ¶ 6.

The Document is an email chain dated September 18, 2021 through September 20, 2021, among Alexandra Albright (PPGT board member and attorney with Alexander Dubose & Jefferson ("ADJ")), Ken Lambrecht (CEO of PPGT and PPGTSHS), Charles Siegel (Waters & Kraus attorney), Caitlyn Silhan (Waters & Kraus attorney), Peter Kraus (Waters & Kraus attorney), Kevin Dubose (ADJ attorney), Marcy Greer (ADJ attorney), Elizabeth Myers (Thompson Coburn attorney), Jennifer Eckland (Thompson Coburn attorney), and Susan Hays

(attorney and Jane's Due Process[2] legal advisory board member).  *Id.* ¶ 7.  As noted, at that time Waters & Kraus was (and to this day remains) counsel to PPGT on litigation-related matters.[3]  *Id.* ¶ 5.  ADJ and Thompson Coburn represented plaintiffs challenging SB8 in Texas state court and Susan Hays was an attorney and legal advisory board member of Jane's Due Process, who was a co-plaintiff to PPGTSHS in a federal challenge to SB8.  *Id.* ¶ 7.[4]  Accordingly, each participant in the communication was either a representative of an entity plaintiff challenging SB8 (Mr. Lambrecht, Ms. Albright, and Ms. Hays) or counsel for a plaintiff challenging SB8 (individuals from Thompson Coburn, Waters & Kraus, and ADJ).  *Id.* ¶¶ 7-8.  The purpose of the communication was to discuss strategy related to the SB8 litigation and the communications were made with the expectation that they would be kept confidential.  *Id.* ¶¶ 9-10; *see also* Ex. 2 ¶ 2 (Supplemental Declaration of Caitlyn Silhan).  The participants in the communication did not intend that the contents of the exchange would ever be disclosed to PPGT's adversaries in litigation.  Ex 1 ¶ 10; Ex. 2 ¶ 2.

Some of the defendants in the state court SB8 litigation sought to transfer the cases pursuant to a procedure provided under Texas law that permits transfer of "related" cases to a single court.

---

[2] Jane's Due Process is a 501(c)(3) nonprofit organization that, at the time of the emails at issue, assisted young women in Texas seeking to navigate parental consent and confidentiality laws related to abortion and birth control.  *Our Work*, Jane's Due Process, https://janesdueprocess.org/about/ (last visited June 19, 2023).

[3] Mr. Siegel also served on the board of Jane's Due Process.  *Id.* ¶ 7.  Ms. Silhan also serves on the board of the North Texas Equal Access Fund, which at the time was a plaintiff in SB8 litigation pending in both state and federal court.  *Id.*  Thompson Coburn and ADJ represented the North Texas Equal Access Fund in the state-court SB8 challenge.  *Id.* at n.3.  Thompson Coburn also represented Jane's Due Process in connection with anticipated state litigation challenging SB8.  Ex 2 ¶ 2.

[4] It is true that Ms. Hays is a lawyer who never represented any of the plaintiffs in any of the SB8 lawsuits (Mot. at 4), but that is beside the point because she was legal advisory board member of Jane's Due Process, which was a co-plaintiff to PPGTSHS in another challenge to SB8.

*See generally* Tex. Gov't Code §§ 74.161–164; Tex. R. Jud. Admin. 13.  "Related means that cases involve one or more common questions of fact."  Tex. R. Jud. Admin. 13.2(f); *In re Ad Valorem Tax Litig.*, 216 S.W.3d 83, at 85–86 (Tex. J.P.M.L. 2006) ("Rule 13 does not purport to strive for unanimity of law" and is instead "limited to cases involving common questions of fact.").  Certain of the plaintiffs in that litigation, including PPGTSHS, Planned Parenthood of South Texas Surgical Center, Planned Parenthood Center for Choice, and an individual physician, filed a brief on September 13, 2021, opposing the motion to transfer on the grounds that the cases were not "related" for purposes of that procedure because their common facts were undisputed, and also that transfer would be inefficient.  *See* Planned Parenthood Pls.' Opp. to Mot. for Transfer to a Multidistrict Litig. Pretrial Ct. & Opp. to Req. for a Stay of All Trial-Court Proceedings, *In re Tex. Heartbeat Act Litig.*, No. 21-0782 (Tex. J.P.M.L. filed Sept. 13, 2021) (attached as Exhibit C to the Motion, ECF No. 433-1).  The motion to transfer was ultimately granted.  Order of Oct. 14, 2021, *In re Tex. Heartbeat Act Litig.*, No. 21-0782 (Tex. J.P.M.L.).

## LEGAL STANDARD

The Federal Rules of Civil Procedure ("Rules") do not explicitly mention motions for reconsideration, but they are generally considered to fall under Rule 54(b).  *See* ECF No. 250 at 2 (citing *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017); *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997)).  That Rule permits courts to "revise[] at any time" any interlocutory order in a case prior to entry of final judgment. Fed. R. Civ. P. 54(b).  Although the Court is "free to reconsider and reverse its decision[s] for any reason it deems sufficient" in its discretion, "[m]otions for reconsideration . . .  are only appropriate to 'allow a party to correct manifest errors of law or fact or to present newly discovered evidence.'"  ECF No. 250 at 2 (first quoting *Austin*, 864 F.3d at 336; then quoting *AMS Staff Leasing, NA, Ltd. v.*

*Associated Contract Truckmen, Inc.*, No. 04-cv-1344, 2005 WL 3148284, at *3 (N.D. Tex. Nov. 21, 2005)).

"District courts grant motions to reconsider in limited circumstances."  ECF No. 121 at 3. As this Court has stated, in order to obtain reconsideration, a movant must demonstrate that the relief sought is *necessary* "to (1) correct manifest errors of law or fact upon which the judgment is based; (2) allow for consideration of newly discovered or previously unavailable evidence; (3) prevent a manifest injustice, such as that arising from serious misconduct by counsel; or (4) address an intervening change in controlling law."  *Id.* at 4 (quoting *Planned Parenthood of Greater Tex. Surgical Health Servs. v. City of Lubbock*, No. 21-cv-114, 2021 WL 4775135, at *2 (N.D. Tex. Oct. 13, 2021)).

## **ARGUMENT**

### I.  **The Court Has Already Decided This Issue, but Relator Does Not Attempt to Meet the Standard for a Reconsideration Motion**

#### A.  **The Court Rejected Relator's Argument When It Denied the December Motion**

Relator concedes that the December Motion "include[ed] this document," and that the Court denied that motion.  *See* Mot. at 5.  Yet, in an apparent attempt to avoid having the Motion construed as a motion to reconsider, Relator neither calls the Motion a "motion to reconsider," nor mentions the appropriate standard for such a motion.  Under any analysis, however, the instant Motion asks the Court to grant relief it has already denied, and it should therefore be evaluated under that rubric.  *Cf. Hudnall v. Payne*, No. 14-CV-133, 2015 WL 11112534, at *1 (E.D. Tex. Mar. 30, 2015) (applying Rule 60(b) to a motion "ask[ing] the Court to set aside its earlier Final Judgment," even though the motion was "not styled as a motion under Rule 60(b)").

To avoid this outcome, Relator asserts that the Court's order did not "address[] this particular document."  *See* Mot. at 5 (citing ECF No. 376).  This statement appears to rely on the

assumption that by not mentioning the Document by name, the Court did not address it. But that cannot be right, because the Order did not make specific reference to *any* document. *See* ECF No. 376. The Order instead gave broadly applicable reasons why the December Motion failed as to all documents it sought to discover—a ruling equally binding as to this Document as to all others at issue in that motion. By denying the December Motion without reservation, *see* ECF No. 376 at 8, the Court thus explicitly rejected the relief Relator now seeks.[5]

At a minimum, the Order constituted an implicit rejection of Relator's attempt to discover the unredacted portions of the Document. A "denial of a motion by the district court, although not formally expressed, may be *implied* by the entry of . . . an order inconsistent with the granting of the relief sought by the motion." *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citing *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981)). Here, the Court issued an Order (ECF No. 376) that on its face denies the entirety of the December Motion, and made no further statement about that motion. Such an Order is plainly inconsistent with granting—and thus, under *Norman*, amounts to denying—relief as to this specific document, which was undisputedly at issue in the December motion. *See also* ECF No. 213 at 3–4 (denying Affiliate Defendants' motion for clarification in relevant part and agreeing with Relator that there was "no reason to believe that the Court's Order somehow excused [Affiliate Defendants] from responding to [discovery requests that were not expressly referenced in the Court's Order]").

---

[5] It is also irrelevant that the Court "discussed only Defendants' assertions of privilege over communications between PPFA attorneys and the Affiliate Defendants and communications involving Planned Parenthood Texas Votes." *See* Mot. at 5. The Court's core holding was focused on work product protection (ECF No. 376 at 2–5), which applies equally to the Document as to all other documents at issue in the December Motion as to which Defendants asserted work-product protection. *See infra* Section III.

**B.      The Motion Fails to Address—Let Alone Satisfy—the Burden for a Motion to Reconsider**

Under Rule 54(b), a court may reconsider its earlier orders in a case prior to entry of final judgment.  The Court has previously held that "district courts grant motions to reconsider in limited circumstances."  ECF No. 121 at 3 (capitalization deleted).  In particular, as the Court has explained,

> *a movant must demonstrate that the motion is necessary* to (1) correct manifest errors of law or fact upon which the judgment is based; (2) allow for consideration of newly discovered or previously unavailable evidence; (3) prevent a manifest injustice, such as that arising from serious misconduct by counsel; or (4) address an intervening change in controlling law.

*Id.* at 4 (quoting *City of Lubbock*, 2021 WL 4775135, at *2) (emphasis added); *accord* ECF No. 262 at 2 (granting unopposed portion of motion to reconsider, and denying the remainder).  Relator fails to so much as suggest (let alone demonstrate) that *any* of these circumstances is present here.  The Motion should be denied on that basis alone.[6]

Further, the Court has held that even though "Rule 54(b) is 'less stringent' and 'more flexible' than Rule 59(e)"—which, like Rule 60, applies to post-judgment, rather than interlocutory, motions to reconsider—it is nevertheless "inform[ed]" by "[c]onsiderations similar to those under Rules 59 and 60."  ECF No. 121 at 3–4 (first quoting *Austin*, 864 F.3d at 336–37, then quoting *Dos Santos v. Bell Helicopter Textron, Inc.*, 651 F. Supp. 2d 550, 553 (N.D. Tex. 2009)).  Accordingly, these motions should be granted "sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays," and they should not be permitted

---

[6] To be clear, any attempt to argue that any of these circumstances is present here would be unavailing.  As described in Section III *infra*, the Court did not err in allowing Affiliate Defendants to withhold the redacted portions of the Document.  The Motion does not mention even a single fact that was not available to Relator in December.  *See* Mot. at 2–4.  There is no assertion that manifest injustice might arise from allowing the Document to remain privileged.  *See* Mot. at 6–10.  And the most recent judicial decision Relator cites is from 2019.  *See id.*

"to relitigate old matters or to present evidence or arguments that should have been offered" when the request for relief was initially considered. *Id.* at 4 (first quoting *Turk v. Pershing LLC*, No. 09-cv-2199, 2019 WL 13074701, at *1 (N.D. Tex. Aug. 1, 2019), then citing 11 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2810.1).

Just like Relator's failure to even mention the four circumstances identified in *City of Lubbock*, Relator's reliance on arguments that they raised previously is also fatal to the Motion. Relator's primary argument begins with a sentence substantively identical to one in Relator's December Brief. *Compare* Mot. at 7 ("This document cannot be withheld under attorney-client privilege because it was sent and/or received by attorneys who did not represent PPGT or its other entities at the time of the communications—September 19-20, 2021.")*, with* ECF No. 370 at 2 ("This document cannot be privileged because it was sent and received by attorneys who did not represent Defendants at the time of the communications."). This reliance on washed-up arguments requires rejection of the Motion. *Cf., e.g.,* ECF No. 250 at 3 (denying motion to reconsider where "Affiliate Defendants [were] 'rehashing old arguments or raising arguments that could have been presented earlier,'" and explaining that "the Court could deny the [m]otion for this reason alone") (quoting *Dos Santos*, 651 F. Supp. 2d at 553).[7]

## II.     The Motion Is Untimely

Whether viewed as a reconsideration motion or as a new motion to compel, Relator's Motion is untimely.  As an initial matter, the Court's scheduling orders make clear that a party seeking to challenge another party's clawback claim must "*promptly* present the information to the

---

[7] Relator's attempt to avoid confronting the Court's denial of the December Motion is all the more bizarre because Relator uses the Motion to attack arguments made by Affiliate Defendants in their December 21 opposition to the December Motion. *See* Mot. at 8–9. Relator did not attack these arguments in the December Brief, which Relator filed *after* Affiliate Defendants' opposition brief. *See* ECF No. 370.

- 10 -

court under seal for a determination of the claim." ECF No. 192 at 6 (quoting Fed. R. Civ. P. 26(b)(5)(B)) (emphasis added). At best, Relator waited nearly two months before raising this issue with the Court, and at worst, waited more than three months before filing the instant Motion.[8] Timeliness is especially important in the context of a motion that seeks reconsideration, because of the inherent potential of such motions to cause "burdens and delays." *See Turk*, 2019 WL 13074701, at *1 (cited with approval by the Court at ECF No. 121 at 4).

In accordance with the principle of being informed by Rules 59 and 60 when adjudicating motions to reconsider under Rule 54(b), courts in the Fifth Circuit look to the timeliness standards of those rules when addressing the timeliness of an interlocutory motion to reconsider. *See Soliz v. United States*, No. 16-cv-370, 2018 WL 6427342, at *2 (W.D. Tex. June 13, 2018); *MyGatt v. Castro*, No. C-08-380, 2009 WL 129467, at *1 (S.D. Tex. Jan. 16, 2009). Relator does not satisfy the time limit under either Rule. The standard under Rule 59 is 28 days. Fed. R. Civ. P. 59(e). That period is far less than the 46 days that elapsed between entry of the Court's order on January 2 and the filing of Relator's motion on February 17. Under Rule 60, the requirement is that the motion "must be made within a reasonable time." Fed. R. Civ. P. 60(b), 60(c)(1). Given the relatively straightforward issue at play, relating to the application of well-established legal principles to a single document, there is simply no reason that it would have been reasonable to wait seven weeks to seek reconsideration.

Even if viewed as a new motion in its own right, the Motion is untimely. "[C]ourts generally look[] to the deadline for completion of discovery in considering whether a motion to compel has been timely filed." *Days Inn Worldwide, Inc. v. Sonia Invs.*, 237 F.R.D. 395, 397

---

[8] As noted above, PPGT clawed portions of the email back on October 28, 2022 and produced a clawback log on November 4, 2022, yet Relator did not file their first brief until December 22, 2022 and only filed the instant Motion on February 17, 2023.

(N.D. Tex. 2006) (cited with approval by the Court at ECF No. 184 at 3).  Moreover, under the scheduling order governing this case, "[a]ny motion to compel discovery . . . must be filed by 15 days after the discovery response at issue was served or due to be served." ECF No. 346 at 5.[9]  The close of discovery was November 30, so any motion to compel was due at the very latest 15 days later on December 15.  Moreover, because the redacted portions of the Document were subject to a clawback, Relator was under an obligation to "promptly present" any objection to the Court.  *See* ECF No. 192 at 6.

To be sure, mere technical lateness does not always require a court to reject a motion.  *See, e.g.,* ECF Nos. 184 at 3-4, 408 at 2.  But unlike prior rulings in which the Court has excused arguable lateness in favor of considering motions to compel on their merits, the *Days Inn* factors do not counsel in favor of leniency here.  *See id.* (declining to reject motions to compel as untimely, pursuant to factors articulated in *Days Inn*, 237 F.R.D. at 398).  Here, "the length of the time since the expiration of the deadline" is significant—more than two months since December 15.  Second, Relator has "known about the discovery" even longer, having been notified on October 28, 2022 that the Document had been inadvertently produced without redactions.  Third, while the parties agreed to conduct certain limited discovery after the formal November 30 deadline, they never contemplated that motions to compel would be filed during (let alone just prior to the conclusion of) summary judgment briefing.  Fourth, Relator has provided no "explanation for the tardiness or delay"—indeed, Relator's counsel admitted that the Motion "fell by the wayside" for some time before they filed it.  *See* Ex. 3.  Fifth, dispositive motions have already been filed and were nearly fully briefed when Relator filed the Motion.  Finally, the Motion is prejudicial to Affiliate

---

[9] The prior version of the order, entered on September 21, 2022, contained identical language.  *See* ECF No. 192 at 5.

Defendants who, prior to the issuance of the stay (ECF No. 446), had to draft a response while preparing for a potential summary judgment hearing and trial.[10]

Further, in applying *Days Inn* to find that two prior motions were not untimely, the Court found that the moving party's delay in filing was reasonable because it was working in good faith to resolve the discovery dispute through the meet-and-confer process.  *See* ECF Nos. 184 at 3, 408 at 3.  But here, the parties were not "work[ing] in good faith to resolve [this] discovery dispute[]," *see* ECF No. 184 at 3, because it had already been resolved by the Court's January 2 Order.  Nor was it "unclear" whether Affiliate Defendants would agree to the relief sought.  *See* ECF 408 at 3.  To the contrary, Affiliate Defendants notified Relator within less than an hour that they remained opposed to discovery of the redacted portions of the Document.  *See* Ex. 3.  Relator still waited an additional two weeks before filing this Motion.[11]

## III.   The Document's Redacted Portions Are Protected by the Work Product Doctrine and the Attorney-Client Privilege

### A.   The Redacted Portions of the Document Are Protected by the Work Product Doctrine

Under Rule 26, work product consists of "documents and tangible things that are prepared in anticipation of litigation or for trial by or for [a] party or its representative (including the . . . party's attorney, consultant, surety, indemnitor, insurer, or agent)."  Fed. R. Civ. P. 26(b)(3)(A).  There are two subcategories of work product: ordinary work product, and opinion work product.  *See SEC v. Brady*, 238 F.R.D. 429, 442 (N.D. Tex. 2006).  The latter category consists of "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other

---

[10] The remaining factor, "age of the case," is neutral; the expedited discovery schedule in this matter makes reference to the age of the case in absolute terms unhelpful.

[11] That a stay was ultimately granted does not impact the analysis.  The stay was granted *after* Relator belatedly filed their motion, which was nearly seven weeks *after* the Court had already denied the motion to compel production of the Document.

representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). While all work product is "[o]rdinarily not subject to discovery," *ordinary* work product can be discovered if a party "has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id.* 26(b)(3)(A)(ii). *Opinion* work product, on the other hand, cannot be discovered even under that demanding standard. *See Upjohn Co. v. United States*, 449 U.S. 383, 401–02 (1981); Fed. R. Civ. P. 26(b)(3)(B).

The redacted portions of the Document are plainly opinion work product, as they reflect litigation strategy discussions.[12] *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947) (noting that "[p]roper preparation of a client's case demands" that counsel "prepare his legal theories and plan his strategy," and that this work is reflected in "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways"); *Doe 1 v. Baylor Univ.*, 320 F.R.D. 430, 444 (W.D. Tex. 2017) (describing "litigation strategy" as "core attorney work product"). And this is no less true for the portion of the Document that represents statements by Mr. Lambrecht soliciting legal advice— when information is "specifically selected and complied by a party or its representative in preparation for litigation[, it is] opinion work product because the mere acknowledgement of [its] selection would reveal mental impressions concerning the potential litigation." *Brady*, 238 F.R.D. at 442 (citing *Petersen v. Douglas Cnty. Bank & Tr. Co.*, 967 F.2d 1186, 1189 (8th Cir. 1992)); *see also Buchanan v. Sterling Constr. Co. Inc.*, No. 16-cv-3429, 2018 WL 1305062, at *2 (S.D. Tex. Mar. 12, 2018) (finding that the work product doctrine protected an email discussing litigation strategy sent by a company employee, even though the email was not authored by an attorney, nor

---

[12] As discussed below, Relator improperly attempts to apply the standard for discovering ordinary work product, but never even attempts to argue the Document is anything other than what it clearly is—opinion work product.

sent to or from an attorney, because the email nonetheless contained the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party").[13]

Relator claims that "Affiliate Defendants have not shown that the other parties presented impressions or opinions on the ongoing litigation that would create the work-product protections for the redacted portions." Mot. at 9. But there are only three emails redacted from the Document: one by Charles Siegel, a partner at Waters & Kraus, which provided legal compliance services and advice on litigation strategy to PPGT at the time PPGT was engaged in SB8 litigation; one by Ken Lambrecht, CEO of PPGT and PPGTSHS, at the time when PPGT and PPGTSHS were engaged in SB8 litigation; and one by Susan Hays, an attorney and legal advisory board member of Jane's Due Process, a co-plaintiff to PPGTSHS in a federal challenge to SB8 that was also represented by Thompson Coburn at the time. And this is exactly the explanation provided not only in the privilege log entry reproduced in the Motion itself, *see* Mot. at 2, but also in Ms. Silhan's sworn declarations, Ex. 1 ¶¶ 7–10; Ex. 2 ¶ 2. Of course Affiliate Defendants have not made this showing as to the *other* individuals in the email discussion, because Affiliate Defendants do not claim that *their* communications are subject to work-product or privilege protection.

And Relator's last-ditch attempt to overcome work-product protection despite its applicability fares no better. Relator claims that Affiliate Defendants' work product protection

---

[13] It is no surprise that Relator does not argue that work product protection was waived, because there clearly was no waiver here. Waiver of work product occurs only when the protected material "is given to adversaries or is 'treated in a manner that substantially increases the likelihood that an adversary will come into possession of the material.'" *TravelPass Grp., LLC v. Caesars Entm't Corp.*, No. 18-cv-153, 2021 WL 4027374, at *4 (E.D. Tex. Feb. 9, 2021) (quoting *Wi-Lan, Inc. v. Acer, Inc.*, No. 07-cv-473, 2010 WL 4118625, at *5 (E.D. Tex. Oct. 18, 2010)); *see also* ECF No. 250 at 6–7 (declining to find work-product waiver in absence of "disclosure to an adversary party"). Nothing of the kind happened here: every recipient of the emails in the Document was in alignment in opposition to SB8; they treated the communication as confidential and expected each other to do the same. Ex. 1 ¶¶ 8–10.

should be vitiated merely because Relator "believes" the Document "is highly relevant to the issues in this case."  Mot. at 9.  Relator bases this purported belief on the assertion that "Affiliate Defendants indicated that this document is responsive to Plaintiffs' requests even though Plaintiffs did not request materials related to SB8."  *Id.*  This argument is absurd on multiple fronts.

*First*, this argument attempts to apply the standard for *ordinary* work product to communications that are indisputably *opinion* work product.  *See id.* (citing Fed. R. Civ. P. 26(b)(3)).  The Supreme Court has squarely held that "a far stronger showing of necessity and unavailability by other means" is required when seeking to overcome opinion work product.  *See Upjohn Co.*, 449 U.S. at 401–02.  And Rule 26 itself contains the same requirement—even where a court orders production of ordinary work product, it mandates that courts "shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of a party's attorney or other representative concerning the litigation."  Fed. R. Civ. P. 26(b)(3)(B).  This Rule imposes a "compelling need" standard that "is nearly an absolute protection of opinion work product."  *Brady*, 238 F.R.D. at 443.

*Second*, even under the irrelevant lower standard that applies to ordinary work product, the mere fact that a document was produced in discovery cannot possibly give rise to a "substantial need" for the materials.  As the Supreme Court has explained, "work-product materials . . . are [] not 'routinely' or 'normally' available to parties in litigation."  *FTC v. Grolier Inc.*, 462 U.S. 19, 27 (1983).  Especially in cases such as this one where Affiliate Defendants were ordered to make broad productions over their relevancy objections, the mere production of a document does not demonstrate relevance, let alone the "substantial need" Relator claims they need to show (and certainly not the "compelling need" they must actually show).  Indeed, Relator invoked this very principle when submitting their own discovery responses.  *See* Ex. 4 at 4 ("By answering these

- 16 -

Requests and producing documents responsive to these Requests, Relator does not concede the relevance or admissibility of the documents, materials, or information.").   As did Affiliate Defendants.   *See, e.g.*, Ex. 5 at 6 ("These responses are given without conceding the relevancy, materiality, or admissibility of the subject matter of any Request for Production[.]").

Accordingly, courts do not accept "broad unsubstantiated assertions" of need; instead, the movant must point to "material facts known by the opposite party [that] can only be ascertained" by subversion of the work-product doctrine.  *Brady*, 238 F.R.D. at 443 (citing *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982)).  Moreover, Relator does not even address the other part of the test: whether they would have any other means of obtaining these unspecified material facts.  *Cf. SEC v. Cuban*, No. 08-cv-2050, 2013 WL 1091233, at *3 (N.D. Tex. Mar. 15, 2013) (quoting *Fisher v. Nat'l R.R. Passenger Corp.*, 152 F.R.D. 145, 152 (S.D. Ind. 1993)) ("Existence of a viable alternative to invading work product, will, in most situations . . . negate any substantial need.").  And to be clear, Relator has had free rein to take discovery from Mr. Lambrecht and PPGT.  Relator deposed Mr. Lambrecht for a full day in his personal capacity and a second full day in his capacity as the corporate representative for PPGT.  Relator had every opportunity to question Mr. Lambrecht concerning non-privileged factual information relevant to the litigation.  Notably absent from the Motion is any suggestion that PPGT or the Affiliate Defendants prevented Relator from seeking any factual information relevant to this case.

**B.**     **The Redacted Portions of the Document Are Also Protected by Attorney-Client Privilege, as Extended by the Common Interest Doctrine**

The attorney-client privilege protects from disclosure any document (or portion of a document) where the proponent (1) "made a confidential communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding."  *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir.

2017) (emphasis deleted).  The attorney-client privilege can be extended by the common-interest doctrine, such that it encompasses "documents that are prepared by parties sharing a common litigation interest," even though those parties would otherwise constitute third-parties to whom disclosure would waive privilege. *Windsor v. Olson*, No. 16-cv-934, 2019 WL 77228, at *5 (N.D. Tex. Jan. 2, 2019) (quoting *Nieman v. Hale*, No. 12-cv-2433, 2013 WL 6814789, at *2 (N.D. Tex. Dec. 26, 2013)) (cited with approval by the Court at ECF No. 250 at 3).  The redacted portions of the Document plainly meet each element required to show the protection of attorney-client privilege pursuant to the common-interest doctrine.

*First*, the Document was confidential within the common-interest sphere.  The common-interest doctrine applies "whether the jointly interested persons are defendants or plaintiffs," because "the rationale . . . remains unchanged: persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims."  ECF No. 250 at 4 (quoting *In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990)).  That is exactly what happened here.  Attorneys and party representatives for PPGT communicated with attorneys for and representatives of other plaintiffs regarding their common litigation strategy in lawsuits that raised common issues.  Such communications, made to advance a common legal interest, are clearly protected by the common interest privilege, as interpreted by this Court, and therefore immune from discovery.  *See In re Santa Fe Int'l Corp.*, 272 F.3d 705, 712 (5th Cir. 2001) (quoting with approval a district court's ruling that common interest "encompasses shared communications . . . to the extent they concern common issues and are intended to facilitate representation in possible subsequent proceedings, or whenever the communication was made in order to facilitate the rendition of legal services to each of the clients involved") (quoting *Aiken v. Tex. Farm Bureau Mut. Ins. Co.*, 151 F.R.D. 621, 624

(E.D. Tex. 1993)); *id.* at 711 (noting that the attorney-client privilege "is not . . . waived if a privileged communication is shared with a third person who has a common legal interest with respect to the subject matter of the communication") (quoting *Hodges, Grant, & Kaufmann v. IRS*, 768 F.2d 719, 721 (5th Cir. 1985)).  It is therefore irrelevant whether the attorneys for non-Planned Parenthood affiliates "had an attorney-client relationship with any Planned Parenthood entity at the time of the subject email communications."  *See* Mot. at 8.

To attempt to avoid the common-interest doctrine, Relator brazenly asks the Court to reverse its prior rulings and hold that the doctrine is categorically not available to parties in a matter where they are plaintiffs (rather than defendants), despite the Court's prior acceptance of Relator's own argument that it is.  *See, e.g.,* ECF No. 261 at 5.  Relator is estopped from making this argument.  *See Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012) (reciting the elements of judicial estoppel: "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently").  It is far too late to relitigate this issue, on which Relator's consistent-until-just-now position has been accepted by the Court.  *See* ECF No. 261 at 5 (holding that "[t]he Court will not relitigate the [common-interest] issue a third time").  And, in any event, the Fifth Circuit has never held that the common-interest doctrine is inapplicable to co-plaintiffs, and "[s]everal courts—including lower courts in this circuit—have held" that it is.  *BCR Safeguard Holding, L.L.C. v. Morgan Stanley Real Estate Advisor, Inc.*, 614 F. App'x 690, 703–04 (5th Cir. 2015) (declining to consider this question where privilege claim lacked other necessary elements).  Relator provides no reason to reject the consensus view on this issue.  *Cf. Restatement (Third) of the Law Governing Lawyers* § 76, Reporter's Note cmt. b (doctrine applies "to two or more separately represented persons whatever their denomination in pleadings").

Nor does it matter that some of the parties to the privileged common-interest communication were plaintiffs in parallel lawsuits rather than in the same proceeding. In *Windsor*, the court faced a much different situation where a third party who happened to be in litigation against one of the parties to the *Windsor* suit "generally asserted the existence of a 'Common Interest Agreement'" with the other party "without specifics or evidence." 2019 WL 77228, at *8. In describing as "unsettled" the question of whether the "common interest doctrine extends to communications between counsel for these plaintiffs in separate actions," the court cited *BCR Safeguard*, which did not deal with parallel litigations, but rather with a single litigation in which one entity was a party and one was not. *See Windsor*, 2019 WL 77228, at *9–10; *BCR Safeguard*, 614 F. App'x at 704 n.20 (expressing doubt that common-interest doctrine would have been applicable to communications at issue there between a party and an entity whose only interest in the litigation was as an investor in that party). Moreover, the Fifth Circuit's explicit holding that the common-interest doctrine can protect communications among "*potential* co-defendants and their counsel," *In re Santa Fe Int'l Corp.*, 272 F.3d at 710, necessarily precludes the bright-line rule that Relator posits. That is because potential co-defendants can never be sure if they will all be sued in the same action—just as plaintiffs pursuing the same interests in parallel lawsuits cannot be sure if those cases will be consolidated (as the SB8 cases were). Where parties "are proceeding on overlapping [legal] issues against a common adversary," they share a common interest. *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1300 (D.C. Cir. 1980); *see also Luckenbach Tex., Inc. v. Engel*, No. 1:19-CV-00567-DH, 2022 WL 9530041, at *4 (W.D. Tex. Oct. 14, 2022) (noting that "the policy underlying the extension of the [common interest doctrine]—encouraging collaboration and efficiency—is present whether the parties are sued in the same lawsuit or not").

- 20 -

As a fallback, Relator claims that Affiliate Defendants' current position on common-interest conflicts with the position taken in briefing before the Texas Multidistrict Litigation Panel that the SB8 lawsuits were not related. Mot. at 8. But the plaintiffs in that brief were not discussing relatedness as an abstract notion, but rather in reference to the way the term "related" is defined in Texas law with respect to the appropriateness of a transfer. *See, e.g.,* Mot. Ex. C at 7–8 (explaining that relatedness "turns on whether [the cases] 'involv[e] common questions of fact'") (quoting *In re Deepwater Horizon Incident Litig.*, 387 S.W.3d 127, 128 (Tex. J.P.M.L. 2011)) (second alteration in original). In making this argument, the SB8 plaintiffs explicitly acknowledged that there were "common issue[s]," "common goal[s]," and "common fact[s]" among the cases, but made the legal argument that these commonalities did not constitute relatedness *as defined for this purpose* in Texas law. *See* Mot. Ex. C at 8–10 (emphasis deleted in first quotation). That parties might think their cases should not be transferred under the relevant state law has nothing to do with whether their positions are sufficiently aligned to form a common interest.[14] And besides, the panel disagreed and the cases were transferred. Order of Oct. 14, 2021, *In re Tex. Heartbeat Act Litig.*, No. 21-0782 (Tex. J.P.M.L.).

*Second*, there is no genuine dispute that the communications were made "to a lawyer" and "for the primary purpose of securing either a legal opinion or legal services, or assistance in some

---

[14] The Motion misleadingly puts the word "unrelated" in quotation marks, as if to suggest it is a quote from the cited brief. *See* Mot. at 8. The brief never once uses the word "unrelated." *See* Mot. Ex. C. As discussed above, this is because the brief did not argue that the suits were unrelated in common parlance, but rather that they did not meet the relevant legal definition of relatedness. Relatedness, for this purpose, exists where "the cases involve 'one or more common questions of fact.'" *In re Volkswagen Clean Diesel Litig.*, 516 S.W.3d 704, 707 (Tex. J.P.M.L. 2016) (quoting Tex. R. Jud. Admin. 13.2(f)). The brief argued that despite the cases' obvious common features, there was no "common *question* of fact" because the key facts were *undisputed*—not because they were *unrelated* as that word is used in its non-technical sense. *See* Mot. Ex. C at 8. This type of argument is commonly made by parties opposing transfer under this rule. *See, e.g., Volkswagen*, 516 S.W.3d at 707 (rejecting argument "that the common liability facts are undisputed").

legal proceeding." *BDO USA, L.L.P.*, 876 F.3d at 695.  All the participants in the email chain are either lawyers for, or officers or board members of, the parties that shared the common interest. And as shown in both the privilege log and the subsequent sworn declaration of Ms. Silhan, the communications were for the purpose of legal advice.  Ex. 1 ¶¶ 8–9.

Relator's argument against the applicability of attorney-client privilege to the Document rests on drawing a false equivalency between counsel functioning as counsel of record in a specific court action, and counsel having an attorney-client relationship at all.  *See* Mot. at 7 (asserting that the attorneys on the Document "did not represent PPGT or its other entities" because "Waters & Kraus withdrew as counsel for PPGTSHS before the date of the email chain").  But "the attorney-client privilege extends to *all* situations in which counsel is sought on a legal matter"—not just those where the lawyer is actively representing a litigant in court.  *See Baylor Univ.*, 320 F.R.D. at 435 (emphasis added) (citing *Fisher v. United States*, 425 U.S. 391, 403 (1976)) (finding that communications could be privileged when they related to "a law firm['s] review [of its client's] compliance with federal law").  And as explained by Ms. Silhan, Waters & Kraus has served continuously as counsel to PPGT from August 2021 to the present.  Ex. 1 ¶¶ 2–3; Ex. 2 ¶ 2.

## CONCLUSION

For the reasons stated above, Relator's Motion should be denied in its entirety.

Respectfully Submitted,

ARNOLD & PORTER KAYE
SCHOLER LLP

/s/ *Tirzah S. Lollar*_____
 Craig D. Margolis
 Craig.Margolis@arnoldporter.com
 Tirzah S. Lollar
 Tirzah.Lollar@arnoldporter.com
 Christian Sheehan
 Christian.Sheehan@arnoldporter.com
 Jayce Born

- 22 -

Jayce.Born@arnoldporter.com
Megan Pieper
Megan.Pieper@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.5000
Fax: +1 202.942.5999

Christopher M. Odell
Texas State Bar No. 24037205
Christopher.Odell@arnoldporter.com
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: +1 713.576.2400
Fax: +1 713.576.2499

Paula Ramer
250 West 55th Street
New York, New York 10019-9710
T: +1 212.836.8474
Paula.Ramer@arnoldporter.com

RYAN BROWN ATTORNEY AT LAW
Ryan Patrick Brown
Texas Bar No. 24073967
ryan@ryanbrownattorneyatlaw.com
1222 S. Fillmore St.
Amarillo, Texas 79101
T: (806) 372-5711
F: (806) 350-7716

*Attorneys for Defendants Planned Parenthood
Gulf Coast, Inc., Planned Parenthood of Greater
Texas, Inc., Planned Parenthood of South Texas,
Inc., Planned Parenthood Cameron County, Inc.,
and Planned Parenthood San Antonio, Inc.*