**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ALEX DOE, Relator, THE STATE OF TEXAS, *ex rel.* ALEX DOE, Relator, THE STATE OF LOUISIANA, *ex rel.* ALEX DOE, Relator, | § § § § § § | |
| Plaintiffs, | § § | No. 2:21-cv-022-Z |
| v. | § § | Date:     February 8, 2023 |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., PLANNED PARENTHOOD GULF COAST, INC., PLANNED PARENTHOOD OF GREATER TEXAS, INC., PLANNED PARENTHOOD SOUTH TEXAS, INC., PLANNED PARENTHOOD CAMERON COUNTY, INC., PLANNED PARENTHOOD SAN ANTONIO, INC., | § § § § § § § § § § § | |
| Defendants. | § § | |

## OPPOSITION IN PART TO RELATOR'S MOTION TO UNSEAL MEMORANDUM AND APPENDIX IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

LEGAL STANDARD.................................................................................................... 4

ARGUMENT .................................................................................................................. 5

    I.     Defendants Do Not Oppose Unsealing Plaintiffs' Brief, Plaintiffs' Cited Documents, or Defendants' Cited Documents That Were Never Designated Confidential.......................................................................................................... 6

    II.    The Court Should Deny Relator's Motion to Unseal Documents That Plaintiffs Never Cited in Support of Their Summary Judgment Arguments. ....................... 7

    III.   The Materials Identified in Charts 3-6 Should Remain Sealed. ........................... 12

CONCLUSION .............................................................................................................. 20

TABLE OF AUTHORITIES

**Cases**

*Airboss Rubber Compounding (NC), Inc. v. Kardoes Rubber Co.*,
 2013 WL 12380267 (M.D.N.C. July 23, 2013) ...................................................................... 10

*Apple Inc. v. Samsung Elec. Co.*,
 727 F. 3d 1214 (Fed. Cir. 2013) ......................................................................................... 14

*Arrowpac Inc. v. Sea Star Line, LLC*,
 2014 WL 12617731 (M.D. Fla. May 1, 2014) ..................................................................... 17

*Baroness Small Ests., Inc. v. Round Hill Cellars*,
 2011 WL 6152969 (D. Colo. Dec. 12, 2011) ...................................................................... 20

*Brown v. Maxwell*,
 929 F.3d 41 (2d Cir. 2019) ................................................................................................... 4

*Carter v. Sw. Airlines Co.*,
 2022 WL 283025 (N.D. Tex. Jan. 31, 2022) ................................................................ 10, 16

*Chavez v. Standard Ins. Co.*,
 2020 WL 6382611 (N.D. Tex. Oct. 30, 2020) ............................................................... 5, 14

*City of Greenville v. Syngenta Crop Protection, LLC*,
 764 F.3d 695 (7th Cir. 2014) ................................................................................. 3, 8, 9, 11

*Cole v. Janssen Pharms., Inc.*,
 2017 WL 2929523 (E.D. Wisc. July 10, 2017) .................................................................. 19

*Collado v. City of New York*,
 193 F. Supp. 3d 286 (S.D.N.Y. 2016) ................................................................................ 19

*Combier v. Portelos*,
 2018 WL 4678577 (E.D.N.Y. Sept. 29, 2018) ................................................................... 19

*Decapolis Grp., LLC v. Mangesh Energy, Ltd.*,
 2014 WL 702000 (N.D. Tex. Feb. 24, 2014) ............................................................... 14, 18

*Fidelity Nat'l Financial, Inc. v. Attachmate Corp.*,
 2016 WL 9526337 (M.D. Fla. Nov. 7, 2016) ....................................................................... 4

*Goesel v. Boley Int'l (H.K.) Ltd.*,
 738 F.3d 831 (7th Cir. 2013) ................................................................................................. 8

*Haas Outdoors, Inc. v. Dryshod Int'l, LLC*,
 2019 WL 13159728 (W.D. Tex. Dec. 4, 2019) .................................................................... 5

*Hatch v. Demayo*,
 2021 WL 7162554 (M.D.N.C. Feb. 22, 2021) .................................................................... 17

*Herbert v. Unum Grp.*,
 2020 WL 13608412 (E.D. Tex. Aug. 25, 2020) ............................................................ 15, 16

*Ho v. Blue Mountain Mech., Inc.*,
 2020 WL 1866427 (D. Haw. Apr. 14, 2020) ...................................................................... 16

TABLE OF AUTHORITIES

*In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*,
   9 F.4th 768 (8th Cir. 2021) ............................................................ 13, 19

*In re Boston Herald, Inc.*,
   321 F.3d 174 (1st Cir. 2003) ............................................................ 11, 14

*In re Elec. Arts, Inc.*,
   298 Fed. App'x. 568 (9th Cir. 2008) ............................................................ 15

*In re NC Swine Farm Nuisance Litig.*,
   2017 WL 5178038 (E.D.N.C. Nov. 8, 2017) ............................................................ 12, 20

*In re Pol'y Mgmt. Sys.*,
   67 F.3d 296 (4th Cir. 1995) ............................................................ 4

*Johnson v. Quantum Learning Network, Inc.*,
   2016 WL 4472993 (N.D. Cal. Aug. 22, 2016) ............................................................ 17

*June Med. Servs., L.L.C. v. Phillips*
   22 F.4th 512 (5th Cir. 2022) ............................................................ 4, 6, 11

*Lima v. Wagner*,
   2018 WL 11198080 (S.D. Tex. Oct. 24, 2018) ............................................................ 12

*Neon Enter. Software, LLC v. Internat'l Bus. Machs. Corp.*,
   2011 WL 2964796 (W.D. Tex. July 20, 2011) ............................................................ 12

*Nixon v. Warner Commc'ns, Inc.*,
   435 U.S. 589 (1978) ............................................................ 5, 11

*NML Cap. Ltd. v. Repub. of Argentina*,
   2015 WL 727924 (D. Nev. Feb. 19, 2015) ............................................................ 16

*Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*,
   2022 WL 3566939 (S.D. Tex. Aug. 18, 2022) ............................................................ 5, 14, 19

*Planned Parenthood of Great Nw. & Hawaiian Islands, Inc. v. Azar*,
   352 F. Supp. 3d 1057 (W.D. Wash. 2018) ............................................................ 15

*Planned Parenthood of Wisc., Inc. v. Van Hollen*,
   94 F. Supp. 3d 949 (W.D. Wis. 2015) ............................................................ 18

*S.E.C. v. Van Waeyenberghe*,
   990 F.2d 845 (5th Cir. 1993) ............................................................ 4, 10

*Seaman v. Duke Univ.*,
   2018 WL 10446957 (M.D.N.C. June 6, 2018) ............................................................ 12, 20

*Seattle Times Co. v. Rhinehart*,
   467 U.S. 20 (1984) ............................................................ 8, 10, 11

*Slattery Co., Inc. v. Chesapeake La., LP*,
   2014 WL 12659587 (W.D. La. May 22, 2014) ............................................................ 17

*Stone v. U.S. Sec. Assocs., Inc.*,
   2018 WL 11344317 (N.D. Ga. May 31, 2018) ............................................................ 10

*Szany v. City of Hammond*,
    2019 WL 3812492 (N.D. Ind. Aug. 14, 2019) ............................................................. 3, 11

*Trans Tool, LLC v. All State Gear Inc.*,
    2022 WL 608945 (W.D. Tex. Mar. 1, 2022) .............................................................. 15, 20

*Udoewa v. Plus4 Credit Union*,
    754 F. Supp. 2d 850 (S.D. Tex. 2010) ........................................................................... 16

*United States v. Amodeo*,
    71 F.3d 1044 (2d Cir. 1995) ..................................................................................... 13, 16

*United States v. McDougal*,
    103 F.3d 651 (8th Cir. 1996) .......................................................................................... 11

*United States v. Sealed Search Warrants*,
    868 F.3d 385 (5th Cir. 2017) ............................................................................................ 4

*United States v. Wey*,
    256 F. Supp. 3d 355 (S.D.N.Y. 2017) ........................................................................... 17

*Vantage Health Plan, Inc. v. Willis Knighton Medical Ctr.*,
    913 F.3d 443 (5th Cir. 2019) ............................................................................................ 5

*Young v. Actions Semiconductor Co.*,
    2007 WL 2177028 (S.D. Cal. July 27, 2007) .................................................................. 9

**Rules**

Fed. R. Civ. P. 5(d)(1)(A) ....................................................................................................... 9

Fed. R. Civ. P. 56(c)(1) ......................................................................................................... 10

Loc. R. 5.2(d) ....................................................................................................................... 6, 9

Loc. R. 56.6 ............................................................................................................................. 9

Loc. R. 56.7 ............................................................................................................................. 9

## INTRODUCTION

Relator's motion to unseal Plaintiffs' summary judgment brief and Appendix is not an altruistic attempt to ensure the public's access to relevant judicial records; it is a transparent gambit to circumvent the Protective Order and paper over Plaintiffs' own violation of the Court's rules. Rather than grant a wholesale unsealing of an Appendix that is more than five times as long as *The Lord of the Rings* trilogy,[1] more than half of which was *never cited* in Plaintiffs' brief, the Court should reject Relator's attempt to publish confidential discovery materials in circumvention of the Protective Order, and maintain under seal Defendants' proprietary information, the private and sensitive information of non-parties, and other confidential information that has no bearing on this litigation.

Relator says they were forced to file Plaintiffs' summary judgment brief and Appendix under seal because "nearly every document in the Appendix (and discussed in the Memorandum) was designated by Defendants as either 'Confidential' or 'Attorney Eyes Only.'" ECF No. 410 at 1. Not so. To start, Plaintiffs could have publicly filed a redacted brief. The decision to instead file the entire brief under seal was one of their own making, and Relator's argument about a "one-sided narrative" arising out of the summary judgment filings (*see id.* at 5) has nothing to do with Defendants. And in any case, Defendants do not oppose the public filing of Plaintiffs' entire summary judgment brief.

As the chart below shows, Plaintiffs filed a stunningly overbroad ***13-volume, 6,295-page*** Appendix.

---

[1] The print length of J.R.R. Tolkien's seminal work, including maps and appendices, is just over 1,200 pages.

| Total Documents[2] | 255 |
|---|---|
| Document Not Cited | 137 |
| Documents Cited | 118 |
| Public or Non-Confidential Documents Cited | 41 |
| Plaintiffs' AEO or Confidential Documents Cited | 2 |
| Defendants' AEO or Confidential Documents Cited | 75 |

What's more, much of the material Plaintiffs cited is either publicly available or was not designated as confidential (41 documents)—and therefore did not need to be filed under seal in the first place—or are Plaintiffs' own confidential materials (two documents).  Defendants do not object to the unsealing of these documents.

But Defendants strongly object to Relator's baseless effort to make public 137 documents, *see* Exhibit A, and thousands of pages of deposition testimony that Plaintiffs did *not* cite in their summary judgment motion.  These documents and testimony are irrelevant, and Plaintiffs violated this Court's Local Rules by nevertheless including them in the Appendix.[3]

Relator has repeatedly tried to use this litigation as a vehicle to gain unfettered access to Defendants' confidential materials.  Relator unsuccessfully sought a blanket de-designation of those materials so that those materials would be publicly available—as demonstrated in no fewer than four rounds of briefing and well over 20 separate briefs on the topic.  Relator is now

---

[2] In reviewing Plaintiffs' Appendix to conduct the requisite document-by-document, line-by-line review, *see infra* at 4, Defendants identified 255 unique documents in Plaintiffs' Appendix, which does not strictly align with the number of documents listed on Plaintiffs' index (ECF No. 400) because, for example, Plaintiffs treated multiple emails as a single document.

[3] Plaintiffs' recently filed Opposition and Supplemental Appendix, which were completely filed under seal, also violated the Local Rules.  Once again, Plaintiffs filed an overly broad supplemental appendix of 77 documents, only 11 of which were actually cited in their Opposition brief.  Of those 11, three were not designated confidential at all, and eight were designated as AEO or Confidential. ECF Nos. 415, 416.  Defendants oppose Relator's recent motion to unseal Plaintiffs' Opposition brief and Supplemental Appendix (ECF No. 425) and will respond within the time provided for under the rules.

attempting to circumvent the Court's prior Protective-Order rulings with a "right of public access" plea that does not even apply to the documents that Plaintiffs did not cite in their brief. But courts––savvy to such gamesmanship—have time and again rejected similar efforts by parties to abuse the public-access doctrine. *See City of Greenville v. Syngenta Crop Protection, LLC*, 764 F.3d 695, 697-98 (7th Cir. 2014); *Szany v. City of Hammond*, 2019 WL 3812492, at \*4 (N.D. Ind. Aug. 14, 2019) ("If the mere fact of a document's filing were sufficient to render the document influential in a judicial decision, then unscrupulous parties would be able to abuse the system and force discovery out into the open by filing discovery documents at will."). Extraneous documents and testimony filed but not relied on do not constitute "judicial records" to which public-access principles apply, and Relator's motion to unseal them should be denied on that basis alone. That rule disposes of the 137 uncited documents, which is the majority of Relator's unsealing request.[4]

As for the remaining 75 documents (42 from PPFA and 33 from the Affiliate Defendants), Defendants have engaged in a detailed analysis to determine whether their unsealing would create harm that outweighs the public's general right of access. Based on that review, Defendants (i) do not oppose de-designating and unsealing the documents identified in **Charts 1 and 2** of **Exhibit B**, (ii) do not oppose partially unsealing (*i.e.*, applying redactions to) the documents identified in **Charts 3 and 4**, and (iii) oppose unsealing the limited number of remaining documents identified in **Charts 5 and 6**.

---

[4] To be clear, the 60 uncited documents designated by Defendants as AEO or Confidential should not only remain sealed because they are not part of the judicial record, but also because each one has independent reasons for being so designated and their unsealing would cause substantial harm to Defendants and third parties. *See* Declaration of Kim Custer ("Custer Decl.") ¶ 4, Declaration of Alfred Curtis ("Curtis Decl.") ¶¶ 5-6, 8; Declaration of Sheila McKinney ("McKinney Decl.") ¶¶ 5-6, 8; Declaration of Polin Barraza ("Barraza Decl.") ¶¶ 5, 7-8.

**LEGAL STANDARD**

Whether materials should be unsealed is a two-step inquiry. First, the Court must determine whether the material is a "judicial record" to which the public may have a right of access. *United States v. Sealed Search Warrants*, 868 F.3d 385, 396 n.4 (5th Cir. 2017) (whether a document is a "judicial record" subject to the public-access presumption is a "gateway question"); *see also June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 519 (5th Cir. 2022) (purpose of public-access right is to "promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system") (citation omitted). Critically, only documents that would reasonably tend to influence a district court's ruling constitute "judicial records" to which the public-access right applies. *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019). In contrast, materials that are merely filed with the court, but do not affect judicial decision making, do not constitute "judicial records" to which the public has any right of access. *Id.*; *In re Pol'y Mgmt. Sys.*, 67 F.3d 296, at *4 (4th Cir. 1995) (documents that "played no role in the court's adjudication . . . did not achieve the status of judicial documents to which the common law presumption of public access attaches"); *see also Fidelity Nat'l Financial, Inc. v. Attachmate Corp.*, 2016 WL 9526337, at *1 (M.D. Fla. Nov. 7, 2016) ("The presumption [of public access] applies to materials used to invoke judicial resolution on the merits but not to discovery documents irrelevant to the underlying issues.").

But materials are not unsealed merely because they qualify as a judicial record. Once the court identifies a true "judicial record," in the second step it "must undertake a document-by-document, line-by-line balancing of the public's . . . right of access" to that material "against the interests favoring nondisclosure." *June Med. Servs.*, 22 F.4th at 521 (internal quotations omitted); *S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 849 (5th Cir. 1993). Although the public has a common-law right to inspect "judicial records," the Supreme Court has long recognized that the

4

public's right of inspection is "not absolute." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). Rather, the right of access is a qualified right that must yield when, for example, a party seeks to use court filings to release "sources of business information that might harm a litigant's competitive standing." *Id.* Although "other circuits have held that the [public access] presumption is 'strong,'" the Fifth Circuit has "repeatedly refused to so characterize the public access presumption." *Vantage Health Plan, Inc. v. Willis Knighton Medical Ctr.*, 913 F.3d 443, 450 (5th Cir. 2019). "Rather, in this circuit the decision to seal or unseal records is to be analyzed on a case-by-case basis." *Id.* Thus, consistent with *Nixon*, courts in this circuit have applied a balancing test to seal judicial records to prevent the disclosure of confidential business information, protect the privacy interests of non-parties, and otherwise prevent "court files [from] becom[ing] a vehicle for improper purposes." *Chavez v. Standard Ins. Co.*, 2020 WL 6382611, at *1 (N.D. Tex. Oct. 30, 2020) (cleaned up) (sealing insurer's claims-handling guidelines that would harm defendant's competitive standing if unsealed); *see Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*, 2022 WL 3566939, at *7 (S.D. Tex. Aug. 18, 2022) ("Courts in this circuit have sealed documents to prevent the disclosure of confidential business information"); *Haas Outdoors, Inc. v. Dryshod Int'l, LLC*, 2019 WL 13159728, at *2 (W.D. Tex. Dec. 4, 2019) (allowing summary judgment exhibits to remain sealed).

## ARGUMENT

Plaintiffs filed a bloated, 13-volume, 6,295-page[5] Appendix containing 135 of Defendants' Confidential or AEO documents and thousands of pages of deposition testimony concerning

---

[5] In contrast, all six Defendants *collectively* filed fewer than 800 pages of material in their respective summary judgment appendices. *See* ECF No. 387-1 (PPFA's 312-page appendix); ECF Nos. 383, 384-2 (Affiliate Defendants' public and sealed appendices, totaling 418 pages). PPFA filed its summary judgment brief publicly, and the Affiliate Defendants filed a lightly redacted summary judgment brief in order to protect references to documents designated by Plaintiffs or that might reveal Relator's identity. *See* ECF Nos. 382, 385.

Defendants' confidential information, most of which Plaintiffs did not cite or rely on in their brief. Relator now seeks to unseal that sweeping Appendix in its entirety—not to advance the interests served by the public-access doctrine, *June Med. Servs*, 22 F.4th at 519, but to circumvent the Protective Order[6] and publicize Defendants' highly confidential documents. The Court should categorically deny Relator's Motion as to the 137 documents and thousands of pages of deposition transcripts that Plaintiffs never cited and filed without any proper purpose. *See* Loc. R. 5.2(d) ("[w]hen discovery materials are necessary for consideration of a pretrial motion, a party shall file *only the portions of discovery on which that party relies* to support or oppose the motion") (emphasis added); *infra* Section II. In addition, the Court should order redactions or keep sealed the materials identified in Charts 3-6 of Exhibit B. Public disclosure of those unredacted materials could competitively harm Defendants and non-parties to this litigation—and much of it is not relevant to the issues presented to the Court. *See infra* Section III.

## I.  Defendants Do Not Oppose Unsealing Plaintiffs' Brief, Plaintiffs' Cited Documents, or Defendants' Cited Documents That Were Never Designated Confidential.

Defendants have no objection to the unsealing of Plaintiffs' brief or the 41 public or non-confidential documents cited therein. Relator vastly overstates the Protective Order's restrictions in asserting that the entirety of "Plaintiffs' Memorandum and Appendix were required to be filed out of view of the public." ECF No. 410 at 4. Plaintiffs could have publicly filed a redacted version of their brief, just like the Affiliate Defendants did. *See* ECF No. 382. Indeed, many pages of Plaintiffs' brief contain no citations to *any* evidence in the appendix, s*ee, e.g.*, ECF No. 391 at 4-5, 26-35, 47-56, or refer only to documents that have no confidentiality designation, *see, e.g.*, *id.*

---

[6] Although Relator claims that it was not possible to challenge "every document that was improperly designated by Defendants," ECF No. 410 at 1, n.1, Relator does not explain why they did not (or could not) challenge the designations for *these particular documents*, consistent with this Court's prior Order, if they believed they had been mis-designated. *See* ECF No. 214 at 10 ("Relator must target specific documents when making [designation] objections").

at 1-2, 7, 14.  To the extent Plaintiffs' brief makes passing reference to documents that Defendants designated Confidential or AEO under the Protective Order, *see, e.g.*, *id.* at 36-46, Plaintiffs could have deployed narrow redactions and publicly filed the balance of their brief without even needing to seek leave to do so from Defendants or the Court.  Relator's complaints about the purported necessity of filing their brief under seal are therefore misplaced.  Nevertheless, since reviewing Plaintiffs' brief (ECF No. 391), Defendants have determined that they have no objection to the unsealing of Plaintiffs' brief in its entirety.

## II.   The Court Should Deny Relator's Motion to Unseal Documents That Plaintiffs Never Cited in Support of Their Summary Judgment Arguments.

As for Plaintiffs' entirely sealed Appendix, nothing required Plaintiffs to file under seal the two cited documents that *Plaintiffs* designated confidential under the Protective Order, much less the 41 cited documents that have no confidentiality designations.  Only 135 documents in the Appendix were designated Confidential or AEO by Defendants, and 60 of those documents—plus thousands of pages of deposition testimony from full transcripts submitted—should not have been filed *at all* because Plaintiffs did not rely on them in moving for summary judgment.

The Court should maintain under seal all of the uncited documents, *see* Exhibit A, and thousands of pages of uncited deposition testimony that Plaintiffs did not rely on in seeking summary judgment because those materials (i) do not constitute "judicial records" that could implicate the public's right of access, (ii) were filed for an improper purpose—*i.e.*, to seek an end-run around the Protective Order and the Court's prior rulings, and (iii) violate the Local Rules governing the submission of discovery materials in connection with filings.[7]

---

[7] The 137 uncited documents listed in Exhibit A include 60 documents that should remain sealed for the additional reason that they were designated Confidential or AEO by PPFA (31 documents) or the Affiliate Defendants (29 documents).

Confronted with a similar situation, the Seventh Circuit recognized how the "[t]ension between secrecy of discovery and disclosure of the record" may "tempt" parties "to use the latter to undermine the former" by filing discovery materials with the court so that an adversary's private communications may be publicly disclosed. *City of Greenville*, 764 F.3d at 697. "To resolve this tension," courts "have limited the presumption of public access to materials that affect judicial decisions." *Id.*; *see also Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013) ("the presumption of public access 'applies only to the materials that formed the basis of the parties' dispute and the district court's resolution'; other materials that may have crept into the record are not subject to the presumption."). Applying these principles, the Seventh Circuit affirmed a district court's decision to categorically maintain under seal documents that were not cited in the party's papers. *City of Greenville*, 764 F.3d at 698.

The public-access doctrine does not depend "on what the parties filed" but rather "on whether a document 'influenced or underpinned the judicial decision.'" *Id.* To apply the public-access presumption merely because a party filed a document with the court would "eviscerate" and render "toothless" the Supreme Court's holding in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984), that confidential discovery materials "were not open to the public at common law, and, in general, they are conducted in private as a matter of modern practice." *City of Greenville*, 764 F.3d at 697-98 (citing *Seattle Times*, 467 U.S. at 33); *see also id.* (because "much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action . . . restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information").

Moreover, applying public-access principles to court filings that append discovery materials not relied on "would needlessly increase the district court's workload" by "requiring

judges to vet *every* document in the record to determine whether it is covered by a privilege or some other basis of confidentiality." *Id.* at 697; *see also Young v. Actions Semiconductor Co.*, 2007 WL 2177028, at *5 (S.D. Cal. July 27, 2007) ("To the extent [an exhibit] is not relevant to the Motion to Dismiss, moving the court to review voluminous exhibits for purposes of sealing is an inefficient use of judicial resources because the court need not consider such materials.").  And "[t]he increased risk of releasing commercially valuable information to the public also would induce litigants to resist disclosure in the first instance." *City of Greenville*, 764 F.3d at 697.

The Court's Local Rules prohibit parties from including any uncited discovery materials in a filing—doubtless in part for this very reason.  Local Rule 5.2 states that, "[w]hen discovery materials are necessary for consideration of a pretrial motion, a party shall file *only the portions of discovery on which that party relies* to support or oppose the motion."  Loc. R. 5.2(d) (emphasis added); *see also* Fed. R. Civ. P. 5(d)(1)(A) ("discovery requests and responses must not be filed *until they are used* in the proceeding") (emphasis added).  Local Rules 56.6 and 56.7 similarly prohibit a party from including any materials in a summary judgment appendix beyond those that the party actually relies on to support or oppose a motion for summary judgment.  *See* Loc. R. 56.6(a) ("A party who relies on materials in the record . . . to support or oppose a motion for summary judgment must include the materials in an appendix"); Loc. R. 56.7 (a party may not, without permission of the presiding judge, file supplemental materials beyond the motions, responses, replies, briefs, and appendices required by rule).

And here, Plaintiffs' unnecessary larding of the Appendix is further exacerbated by Plaintiffs' inclusion of *thousands* of irrelevant pages of deposition testimony.  *Compare* ECF No. 391 (Plaintiffs cited 20 pages from the transcripts of Vickie Barrow-Klein's two depositions; 10 pages from the transcript of Rosemary Coluccio's deposition; and 4 pages from the transcript of

Louis Rossiter's deposition) *with* ECF No. 390-3 (Plaintiffs filed the full 421-page transcripts of Vickie Barrow-Klein's two depositions; filed the full 122-page transcript of Rosemary Coluccio's deposition; and filed the full 225-page transcript of Louis Rossiter's deposition).   Plaintiffs, moreover, did not cite a *single line* from the 104-page Emily Stewart deposition transcript, the 139-page Ronda Exnicious deposition transcript, or the 141-page Marianne DeJong deposition transcript, *see* ECF No. 391—but they nevertheless included each full transcript in the Appendix.

Because Plaintiffs did not cite these materials in moving for summary judgment, the Court need not consider them in adjudicating Plaintiffs' motion. *See Stone v. U.S. Sec. Assocs., Inc.*, 2018 WL 11344317, at \*2 (N.D. Ga. May 31, 2018) (documents not cited in papers "are of limited relevance to the merits of any substantive matters pending before the Court, and are not required to be analyzed or discussed in any significant detail in connection with the resolution of either motion"); *Airboss Rubber Compounding (NC), Inc. v. Kardoes Rubber Co.*, 2013 WL 12380267, at \*1 (M.D.N.C. July 23, 2013) ("to the extent the Court does not rely on the information in reaching its decision, no right of access applies") (citations omitted).   Plaintiffs bear the burden of pointing the Court to the relevant evidence supporting their summary judgment motion. *See* Fed. R. Civ. P. 56(c)(1).   Given that none of the uncited documents or uncited deposition testimony would shed any light on the functioning of the Court or the basis of any decision in this case, public disclosure would not advance any goal served by the public-access doctrine.   *See Van Waeyenberghe*, 990 F.2d at 849; *see Carter v. Sw. Airlines Co.*, 2022 WL 283025, at \*2 (N.D. Tex. Jan. 31, 2022).

To conclude otherwise would only "tempt" Plaintiffs and future litigants to use court filings to publish confidential discovery materials that, as the Supreme Court has observed, can and should be shielded from the public eye. *See Seattle Times*, 467 U.S. at 33; *see also City of*

*Greenville*, 764 F.3d at 697.  "If the mere fact of a document's filing were sufficient to render the document influential in a judicial decision, then unscrupulous parties would be able to abuse the system and force discovery out into the open by filing discovery documents at will." *Szany*, 2019 WL 3812492, at *4.  A party could, for example, file any number of confidential documents as "evidence in support" of a dispositive motion—without actually relying upon that "evidence" in their motion—and then move to unseal the record on public-access grounds and thereby render discovery protections meaningless.[8]  *City of Greenville*, 764 F.3d at 698 ("*Seattle Times*' protection of discovery materials would be toothless" if the presumption of public access was triggered by merely filing an uncited document).  Such a result—foreclosed by both common sense and Supreme Court precedent, *Nixon*, 435 U.S. at 598, *Seattle Times*, 467 U.S. at 33—is precisely what Relator seeks by way of this motion:  back-door publication-by-unsealing of hundreds of sensitive documents.

"[A]s a matter of public policy," the Court should "avoid becoming the instrumentalit[y]" of Relator's "private pursuits," *United States v. McDougal*, 103 F.3d 651, 658 (8th Cir. 1996).  *See also In re Boston Herald, Inc.*, 321 F.3d 174, 191 (1st Cir. 2003) (court "would be well within [its] discretion to consider" whether "to deny access where court files might have become a vehicle for improper purposes and to insure that its records are not used to gratify private spite or promote public scandal") (cleaned up).  Maintaining the sealing of testimony that Plaintiffs did not cite or rely on is also consistent with the "line-by-line" balancing test that the Fifth Circuit requires.  *See June Med. Servs.*, 22 F.4th at 521.  To the extent Plaintiffs did not cite that deposition testimony in their brief, it should not have been included in the Appendix, and "there is no public right of

---

[8] As another court noted, those protections "are valuable because they can expedite discovery." *Szany*, 2019 WL 3812492, at *4.

access to [those] portions of testimony."[9]  *In re NC Swine Farm Nuisance Litig.*, 2017 WL 5178038, at *12 (E.D.N.C. Nov. 8, 2017) ("Because plaintiffs did not cite to this deposition testimony in their response brief, the court has not considered the testimony in ruling on defendant's motion for partial summary judgment.  As such, there is no right of public access to these portions of testimony"); *see also Seaman v. Duke Univ.*, 2018 WL 10446957, at *2 n.2 (M.D.N.C. June 6, 2018) ("[I]t is obvious that the parties could have filed only the portion of the document that was relevant, and there is no reason to find the irrelevant portions of the document, which were not considered by the Court, to be a judicial record.").

## III.    The Materials Identified in Charts 3-6 Should Remain Sealed.

The materials identified in Charts 3-6 should be maintained under seal because they contain Defendants' confidential business and financial information and/or private and sensitive information of non-parties—much of which is not relevant to the summary-judgment-stage questions presented to the Court.

"It is not uncommon," even at summary judgment, "for a court to seal documents in a case when those records contain trade secrets, sensitive commercial information, privileged material, individual personal identifiers, personal medical information, or material impacting national security." *Neon Enter. Software, LLC v. Internat'l Bus. Machs. Corp.*, 2011 WL 2964796, at *1 (W.D. Tex. July 20, 2011); *see Lima v. Wagner*, 2018 WL 11198080, at *3 (S.D. Tex. Oct. 24, 2018) (noting that sensitive or personal information in judicial records associated with summary judgment could be redacted).  That is particularly true when, as here, the sensitive materials a party

---

[9] If, however, the Court concludes otherwise, Defendants respectfully request the Court afford them the opportunity to submit redacted copies of these transcripts for consideration, given that they contain confidential and sensitive information of Defendants and non-parties (including, for example, confidential information concerning unrelated matters involving PPFA's expert, Louis Dudney, that Plaintiffs' counsel acknowledged and agreed should not be disclosed, *see* Appx.001782 (160:23-161:13)).

seeks to seal include information that is largely irrelevant to the matters to be adjudicated. As the Eighth Circuit recently explained, "'the strong weight to be accorded the public right of access' . . . derives from the central role the documents in question play 'in determining litigants' substantive rights' and 'from the need for public monitoring of that conduct.'" *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, 9 F.4th 768, 792 (8th Cir. 2021) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)). "Where testimony or documents play only a negligible role in the performance of Article III duties . . . the weight of the [public-access] presumption is low." *Id.* (citation omitted).

In light of these considerations, Defendants conducted a renewed review of Defendants' designated documents in Plaintiffs' Appendix and cited in Plaintiffs' brief. Based on that review, Defendants (i) do not oppose de-designating and unsealing the documents identified in **Charts 1 and 2**, (ii) do not oppose partially unsealing (*i.e.*, applying redactions to)[10] the documents identified in **Charts 3 and 4**, and (iii) oppose unsealing the limited number of remaining documents identified in **Charts 5 and 6**. As further explained below, the limited materials that Defendants seek to maintain under seal are consistent with those that courts have relied upon as favoring nondisclosure, particularly when, as here, they are largely irrelevant to the Court's adjudication of the motions.

Trade Secret and Proprietary Information. The documents listed in **Charts 5 and 6** (and portions of certain documents listed in **Charts 3 and 4**) should remain under seal because they

---

[10] Defendants recognize that the Court's prior ruling (ECF No. 124) rejected the redaction of the names of non-public employees in favor of the production of unredacted "Confidential Attorney Eyes Only" production of documents that included names of those employees. If the Court's position on this issue remains the same for purposes of the (related but different) public-access balancing analysis, Defendants alternatively request that documents containing those names be maintained under seal in full.

contain highly sensitive business and financial information, which constitute trade secrets, *see* ECF No. 157-4 at 4-8, that are regularly sealed by courts. *See Apple Inc. v. Samsung Elec. Co.*, 727 F. 3d 1214, 1226, 1228 (Fed. Cir. 2013) (district court should have sealed Apple's and Samsung's detailed financial information and Apple's market research reports); *Occidental Petroleum Corp.*, 2022 WL 3566939, at *7 ("Courts in this circuit have sealed documents to prevent the disclosure of confidential business information"); *Decapolis Grp., LLC v. Mangesh Energy, Ltd*., 2014 WL 702000, at *2 (N.D. Tex. Feb. 24, 2014) (sealing documents that contained "sensitive information such as business strategies and the developmental progress of [the party's] oil and gas exploration"). As the First Circuit noted, "[r]ecognition of the importance of financial privacy is [] enshrined in public policy" and should be recognized here. *In re Boston Herald, Inc*., 321 F.3d at 190. "If trade secrets were not safeguarded by courts, litigants would be forced to choose between fully presenting their claims or defenses (losing trade secret protection) or foregoing their claims or defenses (potentially losing their case). Moreover, this would extend litigation and decrease efficiency of the discovery process." *Chavez*, 2020 WL 6382611, at *2.

Plaintiffs seek to unseal myriad, detailed accreditation templates and reports that include highly sensitive information about the performance and operation of Planned Parenthood affiliates. *See, e.g.*, Appx.002727-4021. These accreditation templates and reports, if made public, would reveal non-public information about PPFA's strategic priorities and initiatives, as well as information concerning the volume and variety of medical services provided by all 49 Planned Parenthood affiliates, 46 of which are not parties to this case. Custer Decl. ¶ 6; Curtis Decl. ¶ 7; McKinney Decl. ¶ 7; Barraza Decl. ¶ 6. Disclosure of financial information and fundraising strategy in the accreditation documents could cause financial harm to Affiliate Defendants, disrupt Affiliate Defendants' ability to provide patient care, and harm Affiliate Defendants' ability to

recruit and retain medical staff for their health care centers, causing financial and competitive harm. *Id.* Plaintiffs seek to unseal documents that include Affiliate Defendants' sensitive security information, including the accreditation reports. Curtis Decl. ¶¶ 7, 9; McKinney Decl. ¶ 7; Barraza Decl. ¶ 6. If made public, this information would put patients and employees of the Affiliate Defendants at risk of harassment and physical harm, and could also cause financial harm to the Affiliate Defendants, since their buildings have previously been targets for costly vandalism and arson. *Id.* Plaintiffs also seek to unseal documents containing recent detailed financial and grant information for each of the Affiliate Defendants, *see, e.g.*, Appx.004572-4821, which, if made public, would reveal information about Affiliate Defendants' revenues to its health care competitors and cause financial and competitive harm. Curtis Decl. ¶ 8; McKinney Decl. ¶ 8; Barraza Decl. ¶ 8. *Cf., e.g.*, *Planned Parenthood of Great Nw. & Hawaiian Islands, Inc. v. Azar*, 352 F. Supp. 3d 1057, 1064-65 (W.D. Wash. 2018) (sealing grant application that included "detailed information regarding, among other things: Plaintiffs' objectives and goals for the grant project, the communities and number of patients the project proposes to service, and proprietary information regarding Plaintiffs' pricing methodologies"); *In re Elec. Arts, Inc.*, 298 Fed. App'x. 568, 569-70 (9th Cir. 2008) (district court should have sealed trial exhibit with pricing terms, royalty rates, and minimum payment terms that constituted "trade secret" information).

Non-Party Names and Contact Information. Certain documents listed in **Charts 3 and 4** should remain under seal or be redacted because they contain personal and private information about non-parties to this litigation that, if made public, would put non-parties at risk of harassment and personal harm. Curtis Decl. ¶ 5; McKinney Decl. ¶ 5. *See Trans Tool, LLC v. All State Gear Inc.*, 2022 WL 608945, at *8 (W.D. Tex. Mar. 1, 2022) (instructing parties to redact invoices with non-public information about customers not party to case); *Herbert v. Unum Grp.*, 2020 WL

13608412, at *3 (E.D. Tex. Aug. 25, 2020) (granting defendants' request to redact names of outside brokers and brokerages because they "are not parties to [the] suit," "their names are not relevant to the claims presented in [the] case," and "[i]f their names were not redacted from the record, the documents in [the] case could harm [defendants'] competitive standing with these brokers"); *Udoewa v. Plus4 Credit Union*, 754 F. Supp. 2d 850, 883 (S.D. Tex. 2010) (exhibit containing "significant amounts of sensitive financial and personnel information, naming individual employees who are not parties to this case . . . should remain confidential . . . and filed under seal"). There is no significant public interest in the names or contact information of non-parties, and thus the public's right of access does not trump the privacy interests of those individuals. *See Carter*, 2022 WL 283025, at *2 ("the public's interest in knowing the names of the non-party [] does not outweigh the non-party['s] privacy interest"); *Ho v. Blue Mountain Mech., Inc*., 2020 WL 1866427, at *3 (D. Haw. Apr. 14, 2020) (sealing confidential personnel information concerning non-party employee that was irrelevant); *NML Cap. Ltd. v. Repub. of Argentina*, 2015 WL 727924, at *5 (D. Nev. Feb. 19, 2015) ("Redacting [personal identification information] from the public record will not infringe the quality or integrity of the judicial process, which the public right of access protects, because the information is irrelevant to the merits of [plaintiff's] action.").

Non-Party Financial and Commercial Information. The Court should maintain under seal documents in Plaintiffs' Appendix that also concern the confidential information of non-parties, *see, e.g.*, Appx.005190-5194 (identifying non-party pharmacies and distributors), because, if made public, it would subject these non-parties to increased risk of harassment, financial harm, and litigation. Curtis Decl. ¶ 6. *See Amodeo*, 71 F.3d at 1050 ("the privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation") (citation omitted); *see, e.g*.,

*United States v. Wey*, 256 F. Supp. 3d 355, 411 (S.D.N.Y. 2017) (granting motion to seal exhibits submitted with brief because "relevant materials reflect medical, financial, educational, and other personal information pertaining to non-parties"); *Johnson v. Quantum Learning Network, Inc*., 2016 WL 4472993, at *2 (N.D. Cal. Aug. 22, 2016) (sealing portions of declaration that contain "sensitive financial information of non-parties . . . as well as sensitive financial information of Defendant that, if made public, could harm Defendant's business interests"); *Hatch v. Demayo*, 2021 WL 7162554, at *2 (M.D.N.C. Feb. 22, 2021) (sealing information "to ensure the protection of financially sensitive information made available by non-parties"); *Arrowpac Inc. v. Sea Star Line, LLC*, 2014 WL 12617731, at *2 (M.D. Fla. May 1, 2014) (sealing loan documents containing "non-parties' confidential, competitively sensitive, private, and proprietary financial information"); *Slattery Co. v. Chesapeake La., LP*, 2014 WL 12659587, at *1 (W.D. La. May 22, 2014) (sealing agreements that contained "financial information of other entities (some of which are separate from, but related to, Defendant) and detailed information about how various rates were calculated.").

Documents Nominally Cited For Their Existence.  The Appendix also includes voluminous documents that Plaintiffs merely included to support the undisputed proposition that such documents exist.  For example, Plaintiffs cited over 200 pages of detailed, AEO-designated reports (Appx.004390-4546, Appx.004547-4570) to support the non-controversial proposition that: "PPFA also created and funded a program called the Health Care Investment Program (HCIP) to provide technical assistance to Planned Parenthood Affiliates on issues such as Medicaid."  ECF No. 391 at 85.  But, based on the Fifth Circuit's "line-by-line" balancing test, the pages and materials within those documents that are irrelevant to the claims in this case do not fall within the

17

public-access presumption or, at minimum, the public interest in them is low when balanced against those interests favoring nondisclosure of such sensitive information.  Custer Decl. ¶ 5.

Similarly, Plaintiffs cite—but do not meaningfully discuss—PPFA's "Medicaid Reimbursement Toolkit" (Appx.004979-5009) and "Revenue Cycle Toolkit" (Appx.005037-5055) to support the proposition that these documents were created and exist.  Plaintiffs cite no specific information from these documents, instead asserting without support that they exist to "advise[] best practices on billing."  ECF No. 391 at 85.  But these documents contain sensitive, confidential information reflecting PPFA's strategic priorities and specific details about non-public programs or initiatives, Custer Decl. ¶ 7, and should thus remain sealed.  *Cf., e.g.*, *Decapolis Grp.*, 2014 WL 702000, at \*2 (sealing document that contained "sensitive information such as business strategies and the developmental progress of [the party's] oil and gas exploration"); *Planned Parenthood of Wisc., Inc. v. Van Hollen*, 94 F. Supp. 3d 949, 960 (W.D. Wis. 2015) (sealing trial exhibits with excerpts of Planned Parenthood of Wisconsin's manuals because they contained "proprietary and sensitive business information" constituting trade secrets).  If Plaintiffs could cite—and to be clear, they cannot—limited, relevant portions of these documents to support their assertion that the "Medicaid Toolkit . . . advises best practices on billing," ECF No. 391 at 85, or that PPFA "assists Affiliates with their revenue cycle . . . includ[ing] Medicaid billing," *id.* at 9, PPFA would not object to unsealing such portions of these documents.

Plaintiffs' Appendix similarly includes nearly a thousand pages of accreditation and corrective action reports (Appx.003028-4010) simply to support the idea that PPFA has an accreditation process, ECF No. 391 at 8, and to support the statement that "PPFA has completed several comprehensive accreditation reviews" of each Affiliate Defendant, *id.* at 78.  As discussed above, these documents contain highly sensitive information about the performance and operation

of each Affiliate Defendant.  Custer Decl. ¶ 6; Curtis Decl. ¶ 7; McKinney Decl. ¶ 7; Barraza Decl. ¶ 6.  The accreditation documents should remain sealed.

Thus, while Defendants do not oppose Plaintiffs discussing the existence of these documents in a publicly filed brief, the documents themselves contain highly sensitive, proprietary business information that Plaintiffs did not rely upon and should remain under seal.  *Occidental Petroleum Corp.*, 2022 WL 3566939, at *7; *see also Combier v. Portelos*, 2018 WL 4678577, at *9 (E.D.N.Y. Sept. 29, 2018) (holding party's "voluminous, and at times irrelevant, filings in this matter implicate the private interests of Plaintiff and her husband sufficient to warrant the Court's order to seal"); *Cole v. Janssen Pharms., Inc*., 2017 WL 2929523, at *3 (E.D. Wisc. July 10, 2017) (sealing voluminous and detailed medical records except as to those portions relevant to party's claim cited by the parties or the court).

<u>Irrelevant, Confidential Information</u>.  Plaintiffs also included documents that contain confidential information that does not rise to the level of a trade secret but should nevertheless remain under seal because it is not relevant to this action and thus "the weight of the [public-access] presumption is low."  *In re Bair Hugger*, 9 F.4th at 792 (citation omitted).  Even a "small risk" of disclosure of sensitive information is "unwarranted" when the information sought to be sealed is irrelevant.  *Collado v. City of New York*, 193 F. Supp. 3d 286, 291-92 (S.D.N.Y. 2016) (granting request to seal because presumption of public access had "scant weight" with respect to irrelevant information).  One such example is PPFA's general ledger data, Appx.004572-4821.  The general ledger reflects thousands of confidential transactions, mostly with non-parties.  Plaintiffs cited this confidential document solely to support the proposition that "[t]here are thousands of financial transactions between the Affiliates and PPFA each year."  ECF No. 391 at 10.  But—as evidenced by Plaintiffs' failure to cite even a single specific transaction in their

19

brief—the confidential and detailed financial information contained in the document is irrelevant to the issues before the Court.

Sealing such information is consistent with the approaches taken by other courts that have, for example, maintained under seal excerpts of an email exchange that were not relevant and thus "no right of public access [attached] to the email exchange." *In re NC Swine Farm*, 2017 WL 5178038, at *10; *see also, e.g.*, *Trans Tool*, 2022 WL 608945, at *8 (if "pricing information is irrelevant to this litigation, the best course is to redact it from the exhibit"); *Seaman*, 2018 WL 10446957, at *1-2 (sealing pages containing party's "institution-wide and department-wide funding and budgeting information" that "have nothing to do with any of the legal or factual disputes before the Court" and thus were "not necessary for public understanding of the issues" to be adjudicated); *Baroness Small Ests., Inc. v. Round Hill Cellars*, 2011 WL 6152969, at *8 (D. Colo. Dec. 12, 2011) ("Entire e-mails are offered in order to present evidence of one statement contained therein; to the extent that the rest of the email contains sensitive information, it can be redacted.").

## CONCLUSION

Defendants do not oppose the unsealing of Plaintiffs' brief, Plaintiffs' own confidential documents, or Defendants' non-confidential documents cited in Plaintiffs' brief. But Relator's motion to unseal Plaintiffs' Appendix in full should be denied as to any uncited materials in Exhibit A and the materials identified in Charts 3-6 of Exhibit B. There is no legitimate public interest in the thousands of pages of highly sensitive documents that Plaintiffs included in their Appendix— a fact Relator must concede, because they are cited nowhere in Plaintiffs' brief. As to the limited universe of Defendants' documents that are actually referenced in support of Plaintiffs' summary judgment arguments, the Court should order a combination of redactions and continued sealing as reflected in Charts 3-6 of Exhibit B.

Dated:  February 8, 2023

Respectfully submitted,

O'MELVENY & MYERS LLP

By:     */s/ Danny S. Ashby*

DANNY S. ASHBY
Texas Bar No. 01370960
dashby@omm.com
MEGAN R. WHISLER
Texas Bar No. 24079565
mwhisler@omm.com
2501 N. Harwood Street, Suite 1700
Dallas, Texas 75201
T: (972) 360-1900
F: (972) 360-1901

LEAH GODESKY (*pro hac vice*)
lgodesky@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
T: (310) 553-6700
F: (310) 246-6779

RYAN BROWN ATTORNEY AT LAW
RYAN PATRICK BROWN
Texas Bar No. 24073967
ryan@ryanbrownattorneyatlaw.com
1222 S. Fillmore St.
Amarillo, Texas 79101
T: (806) 372-5711
F: (806) 350-7716

*Attorneys for Defendant Planned Parenthood Federation of America, Inc.*

ARNOLD & PORTER KAYE SCHOLER LLP

By:     */s/ Craig D. Margolis*

CRAIG D. MARGOLIS
Craig.Margolis@arnoldporter.com
TIRZAH S. LOLLAR
Tirzah.Lollar@arnoldporter.com
CHRISTIAN SHEEHAN
Christian.Sheehan@arnoldporter.com

21

EMILY REEDER-RICHETTI
Emily.Reeder-Ricchetti@arnoldporter.com
MEGAN PIEPER
Megan.Pieper@arnoldporter.com
ALYSSA GERSTNER
Alyssa.Gerstner@arnoldporter.com
MEGHAN C. MARTIN
Meghan.Martin@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.6127
Fax: +1 202.942.5999

PAULA RAMER
Paula.Ramer@arnoldporter.com
250 West 55th Street New York, New York
10019-9710
T: +1 212.836.8474

CHRISTOPHER M. ODELL
Texas Bar No. 24037205
Christopher.Odell@arnoldporter.com
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: +1 713.576.2400
Fax: +1 713.576.2499

RYAN BROWN ATTORNEY AT LAW
RYAN PATRICK BROWN
Texas Bar No. 24073967
ryan@ryanbrownattorneyatlaw.com
1222 S. Fillmore St.
Amarillo, Texas 79101
T: (806) 372-5711
F: (806) 350-7716

*Attorneys for Defendants Planned Parenthood
Gulf Coast, Inc., Planned Parenthood of Greater
Texas, Inc., Planned Parenthood South Texas,
Inc., Planned Parenthood Cameron County, and
Planned Parenthood San Antonio*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 8, 2023, a copy of the foregoing was served pursuant to

the Court's ECF system.

*/s/ Danny S. Ashby*
Danny S. Ashby

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| United States of America<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Texas<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Louisiana<br>*ex rel.* ALEX DOE, Relator,<br><br>　　　Plaintiffs,<br><br>v.<br><br>Planned Parenthood Federation of America,<br>Inc., Planned Parenthood Gulf Coast, Inc.,<br>Planned Parenthood of Greater Texas, Inc.,<br>Planned Parenthood South Texas, Inc.,<br>Planned Parenthood Cameron County, Inc.,<br>Planned Parenthood San Antonio, Inc.,<br><br>　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 2:21-CV-00022-Z |

## <u>DECLARATION OF POLIN BARRAZA</u>

I, Polin Barraza, declare and state as follows:

　　　1.　　　I am currently employed by Planned Parenthood South Texas, Inc. ("PPST") as

Senior Vice President and Chief Operating Officer.  I have been the Chief Operating Officer since

2013.  From 2010 to 2012, I was Senior Vice President-Healthcare & Compliance.  I also currently

volunteer at PPST subsidiaries Planned Parenthood San Antonio, Inc. ("PPSA") as President and

Board Chair, a position I have held since 2019, and Planned Parenthood Cameron County, Inc.

("PPCC") as President, a position I have served in since 2020.  I refer to PPST, PPSA, and PPCC

collectively as "PPST" in this declaration.  I am over the age of 18 and have personal knowledge

of the matters herein or have acquired such knowledge by personally examining business records

kept in the ordinary course of PPST's business.  If called upon to testify, I could and would testify thereto.

2.      I make this declaration in support of Defendants' Opposition to Relator's Motion to Unseal Memorandum and Appendix in Support of Motion for Summary Judgment.  I understand that the Relator is attempting to unseal Plaintiffs' brief and 13-volume, 6,295 page appendix, and that some of the documents in Plaintiffs' appendix were designated by PPST as "Confidential" or "Confidential Attorneys' Eyes Only" under the Protective Order entered in this matter.  Unsealing these materials would substantially and materially harm PPST and others by disclosing trade-secret level, non-public information.

3.      PPST is a healthcare provider, and competes with other healthcare organizations for medical professionals and patients in the market place.  As a 501(c)(3) non-profit organization, PPST is also reliant on securing donations and other grants to fund its mission of providing high-quality reproductive healthcare to its patients in Texas.  In that context, PPST is competing with similarly situated organizations to secure access to donations and grants.  In addition, PPST's mission elicits strong opposition actors who have conducted acts against PPST that range from harassing business and mission partners to acts of violence.

4.      The documents Relator is seeking to unseal were designated as "Confidential" or "Confidential Attorneys' Eyes Only Information" because they include non-party commercial information, detailed accreditation reports, trade secret and proprietary information, or information regarding grants PPST has received.

5.      <u>Non-Party Financial and Commercial Information.</u> The document in this category contain non-party board minutes, bylaws, and financial reports of a non-party for-profit corporation and its subsidiaries.  *See* APPX.004222-APPX.004385.  This document is not cited in

the brief and contains sensitive financial and commercial information of a non-party holding company and its subsidiaries with which PPST transacts business. Disclosure of this information may expose PPST's business partner to increased harassment, the risk of personal harm to the individuals identified, and potential financial harms.

6. <u>Detailed Accreditation Reports.</u> The documents in this category contain accreditation reports and corrective action reports for PPST. *See, e.g.,* APPX.003356-APPX.003446. The accreditation reports contain detailed information about all aspects of PPST's performance and operations, including information related to PPST's security measures, the volume and variety of medical services PPST provides, PPST's detailed financial information and accounting practices, fundraising strategy, strategic and programing priorities, staffing and human resources priorities, and any corrective actions taken by PPST. This information is highly sensitive and impacts every aspect of PPST's operations. Disclosure of confidential security measures that PPST has taken could lead to physical harm or harassment of employees and patients if those security measures, once public, are circumvented. Disclosures of financial information and fundraising strategy could affect donations, causing financial harm to PPST. Disclosures of this information could also cause financial harm to PPST if obtained by its healthcare provider competitors and could disrupt current systems and affect PPST's ability to provide patient care. Disclosure of certain strategic material could also harm PPST's ability to recruit and retain medical staff for its healthcare centers, causing financial and competitive harm. Disclosures of corrective actions needed, even from years previous, may be used by healthcare provider competitors to question the quality of PPST's care, causing financial and competitive harm.

7. <u>Trade Secret and Proprietary Information.</u> The documents in this category include a report to PPST board members on PPST operations, *see* APPX.005220-APPX.005285, and a

PPFA white paper related to PPFA proprietary information, *see* APPX.005289-APPX.005303. The report to PPST's board contains sensitive business risk and compliance information, as well as names of non-public facing PPST employees.  Disclosure of this information could lead to financial harm to PPST if obtained by its healthcare provider competitors and could disrupt current systems and affect PPST's ability to provide patient care.  Disclosure of non-publicly identified PPST employees' names could lead to physical harm or harassment of the individuals named.  The PPFA white paper includes PPFA's trade secret level, non-public information surrounding the business strategy of potential licensing of proprietary information.

8.      <u>Financial and Grant Information</u>.  The documents listed in this category contains proprietary information and propriety financial information about grants provided to PPST.  *See, e.g.,* APPX.004127-APPX.004130.   The information contained in the documents is not information that PPST releases to the public during the regular course of business.  Disclosure of this financial information could cause PPST financial and competitive harm if obtained by the general public or by any of PPST's healthcare provider competitors, as it would reveal information about PPST's revenues.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on February 8, 2023 in San Antonio, Texas.

_____
Polin Barraza

4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| United States of America<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Texas<br>*ex rel.* ALEX DOE, Relator,<br><br>The State of Louisiana<br>*ex rel.* ALEX DOE, Relator,<br><br>    Plaintiffs,<br><br>v.<br><br>Planned Parenthood Federation of America,<br>Inc., Planned Parenthood Gulf Coast, Inc.,<br>Planned Parenthood of Greater Texas, Inc.,<br>Planned Parenthood South Texas, Inc.,<br>Planned Parenthood Cameron County, Inc.,<br>Planned Parenthood San Antonio, Inc.,<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 2:21-CV-00022-Z |

**DECLARATION OF SHEILA MCKINNEY**

I, Sheila McKinney, declare and state as follows:

1.      I am a current employee and former Chief Operating Officer of Planned Parenthood of Greater Texas, Inc. ("PPGT"). I served as Chief Operating Officer from 2013 to April 2022. I am over the age of 18 and have personal knowledge of the matters herein or have acquired such knowledge by personally examining business records kept in the ordinary course of PPGT's business. If called upon to testify, I could and would testify thereto.

2.      I make this declaration in support of Defendants' Opposition to Relator's Motion To Unseal Memorandum and Appendix in Support of Motion for Summary Judgment. I understand that the Relator is attempting to unseal Plaintiffs' brief and 13-volume, 6,295 page

appendix, and that some of the documents in Plaintiffs' appendix were designated by PPGT as "Confidential" or "Confidential Attorneys' Eyes Only" under the Protective Order entered in this matter. Unsealing these materials would substantially and materially harm PPGT and others by disclosing trade-secret level, non-public information.

3.     PPGT is a healthcare provider, and competes with other healthcare organizations for medical professionals and patients in the market place.  As a 501(c)(3) non-profit organization, PPGT is also reliant on securing donations and other grants to fund its mission of providing high-quality reproductive healthcare to its patients in Texas.  In that context, PPGT is competing with similarly situated organizations to secure access to donations and grants.  In addition, PPGT's mission elicits strong opposition actors who have conducted acts against PPGT that range from harassing business and mission partners to acts of violence.[1]

4.     The documents Relator is seeking to unseal were designated as "Confidential" or "Confidential Attorneys' Eyes Only Information" because they include the names and contact information of non-publicly identified PPGT employees, non-party commercial information, detailed PPGT accreditation reports, and financial and grant information.

5.     <u>Non-Party Names and Contact Information.</u> The documents in this category include names and contact information for PPGT non-publicly identified employees and the personal email address of a PPGT board member.  *See, e.g.,* APPX.005577.  Our Senior Director of Security & Environmental Management advises employees about their exposure through open public searches

---

[1]     *See, e.g.,* Tex. Att. Gen. Open Records Letter Ruling, 2012-13509, https://www2.texasattorneygeneral.gov/opinions/openrecords/50abbott/orl/2012/pdf/or20121350 9.pdf (Aug. 24, 2012) (agreeing that a Planned Parenthood facility in Ft. Worth satisfied its burden to keep employee and patient information confidential in response to an Open Records request with evidence of harassment and threats, including two attacks involving explosives at similar locations).

and encourages them to use maximum privacy settings online.  Jordan Decl. ¶ 14, ECF No. 103-3.  During my tenure with PPGT, I have become of aware of several PPGT employees who have been exposed to threats, intimidation, and/or harassment by virtue of their work for and association with PPGT.   Our Senior Director of Security & Environmental Management encourages employees to take protections such as parking in different locations, traveling in different routes to and from work; varying their schedule as much as possible; and not to wear their ID name badges or any work clothes or uniforms that identify them as working for PPGT while off-site.  *Id.* We give this advice to all employees, volunteers, and board members. However, despite our non-publicly identified employees' best efforts to remain anonymous, they have at times received threats and harassment after their identities have become public.  *See id.* at ¶¶ 4-13.

6.    <u>Non-Party Financial and Commercial Information.</u> The documents in this category include financial information and operations/funding strategy for a PPGT vendor, *see* APPX.004216-APPX.004221*,* and details of a proprietary insurance policy provided by a non-party insurance broker to PPGT and other Planned Parenthood Affiliates that are not parties in this case, *see* APPX.005304-APPX.005317.  Disclosure of PPGT's vendors operational and funding strategy could cause the vendor competitive and financial harm.  Disclosure of the insurance policy could cause the insurance broker competitive and financial harm.  Disclosure of this information may also expose PPGT's vendor and insurance broker to increased risk of harassment.

7.    <u>Detailed Accreditation Reports.</u> The documents in this category contain accreditation reports and corrective action reports for PPGT.  *See, e.g.*, APPX.003793-APPX.003871.   These reports contain detailed information about all aspects of PPGT's performance and operations, including information related to PPGT's security measures, the volume and variety of medical services PPGT provides, PPGT's detailed financial information and

3

accounting practices, fundraising strategy, strategic and programing priorities, staffing and human resources priorities, and any corrective actions taken by PPGT. This information is highly sensitive and impacts every aspect of PPGT's operations. Disclosure of confidential security measures that PPGT has taken could lead to physical harm or harassment of employees and patients if those security measures, once public, are circumvented. Disclosures of financial information and fundraising strategy could affect donations, causing financial harm to PPGT. Disclosures of this information could also cause financial harm to PPGT if obtained by its healthcare provider competitors and could disrupt current systems and affect PPGT's ability to provide patient care. Disclosure of certain strategic material could also harm PPGT's ability to recruit and retain medical staff for its healthcare centers, causing financial and competitive harm. Disclosures of corrective actions needed, even from years previous, may be used by healthcare provider competitors to question the quality of PPGT's care, causing financial and competitive harm.

8. <u>Financial and Grant Information.</u> The documents listed in this category contains proprietary information and propriety financial information about grants provided to PPGT. *See* APPX.006142-APPX.006145. The information contained in the documents is not information that PPGT releases to the public during the regular course of business. Disclosure of this financial information could cause PPGT financial and competitive harm if obtained by the general public or by any of PPGT's healthcare provider competitors, as it would reveal information about PPGT's revenues.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on February 8, 2023 in Katy, Texas.

*Sheila McKinney*
Sheila McKinney (Feb 8, 2023 13:06 CST)
_____
Sheila McKinney

5

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

| | | |
|---|---|---|
| United States of America<br>*ex rel.* ALEX DOE, Relator, | § § § | |
| | § | |
| The State of Texas<br>*ex rel.* ALEX DOE, Relator, | § § § | CIVIL ACTION NO. 2:21-CV-00022-Z |
| | § | |
| The State of Louisiana<br>*ex rel.* ALEX DOE, Relator, | § § § | |
| | § | |
| Plaintiffs, | § § | |
| | § | |
| v. | § § | |
| | § | |
| Planned Parenthood Federation of America,<br>Inc., Planned Parenthood Gulf Coast, Inc.,<br>Planned Parenthood of Greater Texas, Inc.,<br>Planned Parenthood South Texas, Inc.,<br>Planned Parenthood Cameron County, Inc.,<br>Planned Parenthood San Antonio, Inc., | § § § § § § § | |
| | § | |
| Defendants. | § § | |

## DECLARATION OF ALFRED CURTIS

I, Alfred Curtis, declare and state as follows:

1.      I am currently employed by Planned Parenthood Gulf Coast, Inc. ("PPGC") as Chief Operating Officer.  I have held this position since September 2020, and prior to that I served as Chief Financial Officer of PPGC since December 2016.  I am over the age of 18 and have personal knowledge of the matters herein or have acquired such knowledge by personally examining business records kept in the ordinary course of PPGC's business.  If called upon to testify, I could and would testify thereto.

2.      I make this declaration in support of Defendants' Opposition to Relator's Motion to Unseal Memorandum and Appendix in Support of Motion for Summary Judgment.  I understand that the Relator is attempting to unseal Plaintiffs' brief and 13-volume, 6,295 page appendix, and

that some of the documents in Plaintiffs' appendix were designated by PPGC as "Confidential" or "Confidential Attorneys' Eyes Only" under the Protective Order entered in this matter. Unsealing these materials would substantially and materially harm PPGC and others by disclosing trade-secret level, non-public information.

3.      PPGC is a healthcare provider, and competes with other healthcare organizations for medical professionals and patients in the market place.  As a 501(c)(3) non-profit organization, PPGC is also reliant on securing donations and other grants to fund its mission of providing high-quality reproductive healthcare to its patients in Texas and Louisiana. In that context, PPGC is competing with similarly situated organizations to secure access to donations and grants.  In addition, PPGC's mission elicits strong opposition actors who have conducted acts against PPGC that range from harassing business and mission partners to acts of violence.

4.      The documents Relator is seeking to unseal were designated as "Confidential" or "Confidential Attorneys' Eyes Only Information" because they include the names and contact information of non-publicly identified PPGC employees, non-party commercial information, detailed PPGC accreditation reports, information regarding grants PPGC has received, or sensitive PPGC security information.

5.      <u>Non-Party Names and Contact Information.</u> The documents in this category include names and contact information for PPGC non-publicly identified employees. *See* APPX.002706-APPX.002711.  Our Senior Director of Security and Facilities advises employees about their exposure through open public searches and encourages them to use maximum privacy settings online.  Lindsay Decl. ¶ 13, ECF No. 103-4.  During my tenure with PPGC, I have become of aware of several PPGC employees who have been exposed to threats, intimidation, and/or harassment by virtue of their work for and association with PPGC.  Our Senior Director of Security

and Facilities encourages employees to take protections such as parking in different locations; traveling in different routes to and from work; varying their schedule as much as possible; and not to wear their ID name badges or any work clothes or uniforms that identify them as working for PPGC while off-site.  However, despite our non-publicly identified employees' best efforts to remain anonymous, they and their families have at times received death threats and harassment after their identities have become public.

6.      Non-Party Commercial Information. The documents in this category contain non-party distributor commercial information, *see* APPX.005190-APPX.005193, and provider agreements with Managed Care Organizations ("MCOs") that contain confidentiality clauses, *see e.g.* APPX.002620-APPX.002670.  Disclosure of this information could lead to the loss of those business partners, causing PPGC financial harm and impacting PPGC's ability to retain favorable pricing options for certain medications.  Disclosure of this information may also expose PPGC's business partners to increased harassment, the risk of personal harm to the individuals identified, and the risk of litigation.  Disclosure of the agreements with MCOs would be a violation of confidentiality clauses in those agreements.

7.      Detailed Accreditation Reports. The documents in this category contain accreditation reports and corrective action reports for PPGC.  *See* APPX.003211-APPX.003289. These reports contain detailed information about all aspects of PPGC's performance and operations, including information related to PPGC's security measures, the volume and variety of medical services PPGC provides, PPGC's detailed financial information and accounting practices, fundraising strategy, strategic and programing priorities, staffing and human resources priorities, and any corrective actions taken by PPGC.  This information is highly sensitive and impacts every aspect of PPGC's operations.  Disclosure of confidential security measures that PPGC has taken

could lead to physical harm or harassment of employees and patients if those security measures, once public, are circumvented. Disclosures of financial information and fundraising strategy could affect donations, causing financial harm to PPGC. Disclosures of this information could also cause financial harm to PPGC if obtained by its healthcare provider competitors and could disrupt current systems and affect PPGC's ability to provide patient care. Disclosure of certain strategic material could also harm PPGC's ability to recruit and retain medical staff for its healthcare centers, causing financial and competitive harm.

8.     Financial and Grant Information. The document listed in this category contains proprietary information and propriety financial information about grants provided to PPGC. *See* APPX.004115-APPX.004117. The information contained in the documents is not information that PPGC releases to the public during the regular course of business. Disclosure of this financial information could cause PPGC financial and competitive harm if obtained by the general public or by any of PPGC's healthcare provider competitors, as it would reveal information about PPGC's revenues.

9.     Sensitive Security Information. The documents in this category include information about building security measures and building plans.     *See* APPX.005188-APPX.005189. Disclosures of building plans and certain security measures could cause financial harm, as PPGC buildings have previously been targets for costly vandalism and arson. PPGC has recently had a trespasser fly a drone around one of its facilities. PPGC had to engage in civil litigation to receive an order that he not trespass again. He later returned, cutting down all the bushes on one side of the building to see into the building's loading dock. These acts of trespassing and vandalism led to criminal charges. Disclosure of confidential security measures could lead to physical harm or harassment of employees and patients if those security measures, once public, are circumvented.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on February 8, 2023 in Philadelphia, Pennsylvania.

_____

Alfred Curtis

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ALEX DOE, Relator, THE STATE OF TEXAS, *ex rel.* ALEX DOE, Relator, THE STATE OF LOUISIANA, *ex rel.* ALEX DOE, Relator, | § § § § § | |
| | § | No. 2:21-cv-022-Z |
| Plaintiffs, | § § | |
| v. | § § | |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., PLANNED PARENTHOOD GULF COAST, INC., PLANNED PARENTHOOD OF GREATER TEXAS, INC., PLANNED PARENTHOOD SOUTH TEXAS, INC., PLANNED PARENTHOOD CAMERON COUNTY, INC., PLANNED PARENTHOOD SAN ANTONIO, INC., | § § § § § § § § § § | |
| Defendants. | § § § § | |

## DECLARATION OF KIM CUSTER

I, Kim Custer, declare and state as follows:

1.     I am currently employed by Planned Parenthood Federation of America, Inc.

("PPFA") as Executive Vice President and Chief Federation Engagement & Impact Officer.  I

have served as Executive Vice President since 2015 and as Chief Federation Engagement & Impact Officer since the end of 2021.

2.    I am over the age of 18 and have personal knowledge of the matters herein or have acquired such knowledge by personally examining the business records kept in the normal course of business by PPFA.  If called upon to testify, I could and would testify to the facts in this declaration.

3.    I make this declaration in support of Defendants' Opposition in Part to Relator's Motion to Unseal Memorandum and Appendix in Support of Motion for Summary Judgment (the "Opposition").  I am familiar with the claims and allegations in the above-captioned case based on my review of the Complaint filed by Relator and the Complaint in Intervention filed by the State of Texas.

4.    I understand that Relator seeks to unseal in full the Appendix filed in support of Plaintiffs' Motion for Summary Judgment.  However, I also understand that the Appendix contains dozens of documents designated by PPFA as Confidential or Attorneys' Eyes Only under the Protective Order.  Unsealing these materials—specifically, those in **Exhibit A** to the Opposition and those listed in **Charts 3 and 5** of **Exhibit B** to the Opposition—would substantially and materially harm PPFA and others by disclosing trade-secret level, non-public information.

5.    **Non-Public and Confidential HCIP Documents.**  Relator proposes unsealing several documents related to PPFA's Health Care Investment Program ("HCIP") (*see, e.g.*, Appx.004390-4570, Appx.005083-5121).  These documents contain detailed and confidential information about dozens of third parties—namely, Planned Parenthood Affiliates which are not involved in this case.  Such reports are not released publicly and are not shared outside PPFA.

2

These are documents that summarize specific types of technical assistance and support that PPFA staff provide to all Affiliates. These documents include extensive details concerning these entities' public-affairs strategies, including sensitive relationships that are not public; their external consultants' business operations; and their government-reform efforts, including sensitive conversations with state administrators outside of Texas and Louisiana. Making such documents public would harm these non-parties' businesses, their third-party consultants, and individual staff members who are wholly unconnected to this case. Furthermore, the documents detail how the proprietary HCIP program operates, which is a sensitive trade secret and would create a commercial disadvantage for PPFA if made public, given the number of competitors in this unique market sector.

6.     **Detailed Accreditation Process Documents and Reports.** Relator further seeks to unseal highly detailed documents describing PPFA's method of assessing and accrediting Affiliates (*see, e.g.*, Appx.002730-3353, Appx.003447-3545, Appx.003583-3792, Appx.003970-4010). PPFA is a membership organization that requires Affiliates to be accredited as a condition of membership. The reports that result from accreditation visits are intended to help Affiliates improve operations and provide quality services and care to their patients. The scope of sensitive financial, marketing, clinical, and trade-secret information shared within the course of the review and included in reports is broad enough to cause financial harm to the Affiliates' businesses if it were released to the public or to the Affiliates' competitors. Making such confidential reports public could also cause extensive harm to the three Affiliate Defendants, which may have had opportunities for improvement highlighted by reviewers that could be taken out of context and used by competitors or adversaries to deter patients from seeking care at Planned Parenthood health centers, even if such reports are years old and even if they do not

3

suggest any violation of the standard of care. Analyses of Affiliate operations identify strengths and weaknesses; public disclosure of that information would allow competitors of Planned Parenthood health centers to target ostensible Affiliate weaknesses and harm them commercially. Because these reports are created in an effort to help Affiliates improve their services, making them public would also have a chilling effect on how PPFA conducts its accreditation work. Additionally, sharing details about PPFA's proprietary accreditation program could cause serious competitive and financial harm to PPFA and all 49 of its Affiliates that rely on this unique program. While PPFA is public about its accreditation model and the benefit that model provides to Affiliates, PPFA has invested decades of work into this program and worked diligently to keep the details confidential. Disclosing information about the process would jeopardize years of efforts on this front.

7. **Trade-Secret Level, Non-Public Documents.** Relator also seeks to unseal highly confidential, proprietary materials created by PPFA that contain information constituting a trade secret or otherwise highly confidential, non-public information about PPFA programs and procedures (*see, e.g.*, Appx.004977-5009, Appx.005037-5055). These materials were developed as confidential and proprietary resources for the benefit of Planned Parenthood Affiliates, as one of the numerous benefits of Planned Parenthood membership. Because the guidance and recommendations included in these documents are intended to be adaptable and used by Affiliates in all 50 states, it would be easy for competitors across the country to use them to the detriment of any Planned Parenthood Affiliate, including the 46 Affiliates which are not parties to this case. Making such documents available to the public could cause competitive harm to all Affiliates by making the expertise, guidance, and findings included in these materials available to anyone to use. It would also provide a detailed picture of how the Planned Parenthood

4

Affiliates—including those named in these materials as examples and case studies—operate their businesses, which would in turn put them at a competitive disadvantage.

8.  **Documents Containing Highly Sensitive Financial Information, Third-Party Financial Information, or Information About Sensitive or Confidential Business Relationships.**  Finally, Relator proposes unsealing an assortment of documents that include complex financial information about third parties, PPFA, and the Affiliate Defendants, and non-public information that is required to be kept confidential concerning PPFA's relationships with other third-party businesses and entities (*see, e.g.*, Appx.004571-4859, Appx.004863-4887, Appx.005066-5071, Appx.005155-5158, Appx.005214-5219).  Disclosure of this confidential and proprietary information could cause PPFA financial harm if it is obtained by the general public or PPFA's competitors, such as by revealing non-public information about how PPFA allocates resources between Affiliates and in support of various programs or initiatives, or by revealing how PPFA assesses the efficacy of its programs.  Releasing PPFA's detailed financial information and that of Planned Parenthood Affiliates (including 46 Affiliates which are not parties to this case) could cause them significant financial harm, as competitors—and other third parties—could use that data to evaluate their business and find places to exploit and undercut them in future transactions.  Public disclosure of this information could cause further harm and disruption to PPFA's current programs or standing in the marketplace, as well as expose the staff of PPFA, Affiliates, and/or their business partners to unwarranted harassment or personal harm.

5

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on February 8, 2023 in New York, New York.

Kim Custer

6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ALEX DOE, Relator, THE STATE OF TEXAS, *ex rel.* ALEX DOE, Relator, THE STATE OF LOUISIANA, *ex rel.* ALEX DOE, Relator, | § § § § § § | |
| Plaintiffs, | § § | No. 2:21-cv-022-Z |
| v. | § § | Date:      February 8, 2023 |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., PLANNED PARENTHOOD GULF COAST, INC., PLANNED PARENTHOOD OF GREATER TEXAS, INC., PLANNED PARENTHOOD SOUTH TEXAS, INC., PLANNED PARENTHOOD CAMERON COUNTY, INC., PLANNED PARENTHOOD SAN ANTONIO, INC., | § § § § § § § § § § § | |
| Defendants. | § § | |

**EXHIBIT A**

**Uncited Documents in Plaintiffs' Appendix[1]**

| Appendix Pages | Appendix Document Title[2] |
|---|---|
| Appx.000007-0066 | PPGC Medicaid Provider Agreement |
| Appx.000091-0098 | PPGC Medicaid Provider Agreement |
| Appx.000099-0106 | PPGC Medicaid Provider Agreement |
| Appx.000107-0114 | PPGC Medicaid Provider Agreement |
| Appx.000115-0183 | PPSA Medicaid Provider Agreement |
| Appx.000184-0261 | PPSA Medicaid Provider Agreement |
| Appx.000262-0269 | PPSA Medicaid Provider Agreement |
| Appx.000270-0321 | Family Planning Associate of San Antonio Medicaid Provider Enrollment |
| Appx.000322-0330 | PPST Medicaid Provider Agreement |
| Appx.000331-0408 | PPGT Medicaid Provider Agreement |
| Appx.000409-0416 | Planned Parenthood of Texas Medicaid Provider Agreement |
| Appx.000417-0436 | PPGT Electronic Funds Transfer (ETF) Notification |
| Appx.000437-0444 | PPGT Medicaid Provider Agreement |

---

[1] Among these 137 uncited documents are 77 documents that no Defendant designated Confidential or Attorneys' Eyes Only.  While such documents should never have been filed in the first place and are thus not properly "judicial records," *see* Loc. R. 5.2, Plaintiffs need never have sealed them in the first instance.

[2] To avoid confusion, Defendants have—where possible, given Plaintiffs' condensing of multiple documents from the Appendix into a single entry in the Index—used the document titles as written in Plaintiffs' Index (ECF No. 400).  However, Defendants' use of these titles does not constitute any agreement or concession that Plaintiffs' descriptions are accurate.  Indeed, many of them are not.

| Appendix Pages | Appendix Document Title[2] |
|---|---|
| Appx.000445-0520 | PPCC Medicaid Provider Agreement |
| Appx.000521-0596 | Planned Parenthood Association of Cameron & Willac Medicaid Provider Agreement |
| Appx.000597-0609 | 2015 Texas Medicaid Provider Procedures Manual |
| Appx.000622-0628 | 2016 Texas Medicaid Provider Procedures Manual |
| Appx.000629-0640 | 2016 Texas Medicaid Provider Procedures Manual Section 1.1 Excerpt |
| Appx.000641-0712 | 2017 Texas Medicaid Provider Procedures Manual |
| Appx.000713-0724 | 2017 Texas Medicaid Provider Procedures Manual Section 1.1 Excerpt |
| Appx.000725-0731 | 2018 Texas Medicaid Provider Procedures Manual |
| Appx.000732-0743 | 2018 Texas Medicaid Provider Procedures Manual Section 1.1 Excerpt |
| Appx.000744-0750 | 2019 Texas Medicaid Provider Procedures Manual |
| Appx.000751-0762 | 2019 Texas Medicaid Provider Procedures Manual Section 1.1 Excerpt |
| Appx.000763-0769 | 2020 Texas Medicaid Provider Procedures Manual |
| Appx.000782-0788 | 2021 Texas Medicaid Provider Procedures Manual |
| Appx.000816-0821 | THHSC (Bowen) Letter to PPGC (Linton) re Notice of Termination |
| Appx.000822-0827 | THHSC (Bowen) Letter to PPST (Hons) re Notice of Termination |
| Appx.000828-0834 | THHSC (Bowen) Letter to PPGT (Lambrecht) re Notice of Termination |
| Appx.000835-0840 | THHSC (Bowen) Letter to Planned Parenthood Association of Cameron and Willacy (Hons) re Notice of Termination |
| Appx.000873-0911 | Application for Temporary Restraining Order (PPGT vs Charles Smith, 1:15-CV-01058 [Dk5 55-2] |
| Appx.000912-0914 | Court Order (A-15-CA-1058-SS) [Dkt 84] |

| Appendix Pages | Appendix Document Title[2] |
|---|---|
| Appx.000915-0957 | Court Order (A-15-CA-1058-SS) [Dkt 100] |
| Appx.000958-0960 | Order of Judgment (A-15-CA-1058-SS_ [Dkt 101] |
| Appx.000961-1066 | 5th Circuit ruling |
| Appx.001067-1073 | Order Granting Relators Application for Temporary Restraining Order and Setting Hearing on Temporary Mandatory Injunction (D-1-GN-21-000528) |
| Appx.001074-1081 | Order Extending Relators Temporary Restraining Order and Setting Hearing for Temporary Mandatory Injunction (D-1-GN-21-000528) |
| Appx.001082-1089 | Second Order Extending Relators Temporary Restraining Order (D-1-GN-21-000528) |
| Appx.001093-1096 | Order Denying Original Petition for Writ of Mandamus and Application for Injunctive Relief (D-1-GN-21-000528) |
| Appx.001489-1538 | Deposition Transcript of Vickie Barrow-Klein |
| Appx.001704-1741 | Deposition Transcript of Marianne DeJong |
| Appx.001803-1839 | Deposition Transcript of Ronda Exnicious |
| Appx.002174-2201 | Deposition Transcript of Emily Stewart |
| Appx.002412-2438 | Louisiana Medicaid Take Charge Plus Family Planning Services) Provider Manual |
| Appx.002586-2593 | PPGC Louisiana Medicaid Provider Group Agreement (email with attachment) |
| Appx.002594-2619 | PPGC Participating Provider Agreement |
| Appx.002620-2670 | PPGC Louisiana Medicaid Participating Provider Agreement |
| Appx.002698-2703 | PPFA Affiliates' Unopposed Motion to Stay filed January 8, 2021 |
| Appx.002704-2705 | Travis County District Court Order Denying PPFA Affiliates' Application for Temporary Injunction and Petition for Writ of Mandamus dated March 10, 2021 |

| Appendix Pages | Appendix Document Title[2] |
|---|---|
| Appx.002709-2711 | PPGC Email re Texas Medicaid Update dated March 15, 2021 |
| Appx.002713-2716 | PPGC Memorandum of Law in Opposition to Motion to Vacate filed March 29, 2021 |
| Appx.002717-2719 | PPFA Affiliates' Joint Status Update filed May 7, 2021 |
| Appx.002720-2722 | PPFA Affiliates' Joint Status Update filed May 7, 2021 |
| Appx.002723-2725 | PPFA Affiliates' Notice of Voluntary Dismissal filed May 13, 2021 |
| Appx.004054-4057 | PPFA Summary of PPFA Cash Payments to Affiliates |
| Appx.004058-4077 | PPFA 2016 Financial Grant Renewal Application |
| Appx.004078-4112 | PPFA Consolidated Financial Statements and Supplementary Information |
| Appx.004113-4114 | Email from Hawkins to Curtis re Completed: Medicaid Grant for PPGC Planned Parenthood - For your Signature |
| Appx.004115-4117 | PPFA 2021 PPGT Access to Care Medicaid Gap Funding Grant Agreement |
| Appx.004118-4124 | PPFA 2021 PPGT Access to Care Medicaid Gap Funding Grant Agreement |
| Appx.004125-4126 | Email from Hawkins to Barraza re Completed: PPST Medicaid Grant Planned Parenthood - For your Signature |
| Appx.004127-4130 | PPFA 2021 PPST Access to Care Medicaid Gap Funding Grant Agreement |
| Appx.004131-4137 | PPFA 2021 PPGT Access to Care Medicaid Gap Funding Grant Agreement |
| Appx.004138-4140 | PPFA 2017 Email re Gap Funding Approach & Additional Contingency Planning Details |
| Appx.004143-4157 | PPFA Retirement Plan (Sponsored by PPGT) Financial Statements December 31, 2018 and 2017 |
| Appx.004158-4166 | PPFA 2020 Draft Funding Agreement between PPFA and BetterHealth: A Planned Parenthood Partnership |
| Appx.004167-4213 | PPFA 2016 OHS (Online Health Service) NewCo Business Plan |

4

| Appendix Pages | Appendix Document Title[2] |
|---|---|
| Appx.004214-4215 | PPFA Email Invitation for Epic Exploration Webinar |
| Appx.004216-4221 | PPFA Email re ACEC Call and Kaleido Fundraising Factsheet |
| Appx.004222-4385 | 416 Holdings Board of Directors Meeting Agenda and Materials |
| Appx.004386-4387 | Kaleido Health Solutions Email re PPDirect/Connect September Metrics |
| Appx.004388-4389 | PPFA Email to PPFA Affiliates re Healthcare Operations Team Service Expansion Support Grant Program |
| Appx.004822-4859 | PPFA Consolidated Financial Statements dated June 30, 2019 |
| Appx.004860 | PPFA PPOL Revenue Distribution to PPST |
| Appx.004861-4862 | PPFA Leadership Structure |
| Appx.004888-4942 | Planned Parenthood Medical Director Orientation Manual Draft |
| Appx.005010-5011 | Email from D. Singiser to K. Lambrecht re: Medicaid Follow-Up Questions; dated Jul. 6, 2017 |
| Appx.005012-5013 | Email from K. White to M. Turner re: Medicaid Element of Performance (EOP); dated Oct. 21, 2015 |
| Appx.005014 | Email from D. Singiser to H. Krasnoff, E. Stewart, K. Lambrecht re: Questions about defunding; dated Nov. 12, 2016 |
| Appx.005017-5024 | Email from PPFA to Affiliates re: Compliance & Medicaid, Health Care Reform Update Newsletter |
| Appx.005056-5058 | PPFA Email re: Gift to PPGT via PPFA |
| Appx.005059-5065 | PPFA Email re: Gift to PPGT via PPFA |
| Appx.005072-5075 | PPFA Email re: SAP Sustainability Model for Baton Rouge Clinic |
| Appx.005076-5082 | Health Care Investment Program Update for Oct. 2, 2014 |
| Appx.005122-5126 | Email from PPFA re: effect of Medicaid defunding on Louisiana Clinics and PPFA financial support |

| Appendix Pages | Appendix Document Title[2] |
|---|---|
| Appx.005127 | Email re: TX Medicaid termination and whether termination is "paused" during appeal, dated Dec. 21, 2016 |
| Appx.005128-5129 | Email from PPFA to Affiliate CEOs re: PPFA's Medicaid Gap Fund for Affiliates out of Medicaid |
| Appx.005130-5135 | PPGC Financial Operations Assessment 2012-2013 |
| Appx.005136-5140 | PPFA Email re: Talking points for Wendy Davis to discuss Texas Medicaid defunding and litigation; dated Oct. 20, 2015 |
| Appx.005150 | PPFA Emails to Board Chairs and Affiliate CEOs re: Meeting on Potential Future Options |
| Appx.005151 | PPFA Emails to Board Chairs and Affiliate CEOs re: Meeting on Potential Future Options |
| Appx.005152-5153 | PPFA Email to Nat'l All Staff re: Update from Foundational Group |
| Appx.005154 | PPFA Mtg Invite re: CEO bi-weekly COVID call |
| Appx.005163-5185 | PPFA Business Operations Team "Understanding Health Center Performance" PowerPoint |
| Appx.005198-5207 | PPFA PowerPoint Presentation, "Title X FOA Risk Assessment Initial Findings" |
| Appx.005208 | PPGT Acknowledgment of Receipt and Implementation of PPFA Clinical Research Standard Operating Procedures and Research Conduct Guidelines 2019 |
| Appx.005209-5211 | Email from PPFA to Texas Affiliate Medical Director welcoming to PPFA |
| Appx.005220-5285 | PPST Compliance, Quality Improvement & Risk Management Committee Meeting Agenda with materials; dated Nov. 10, 2016 |
| Appx.005286-5288 | Email to Jill Cobrin at ARMSInc.org re: accreditation of non-PP organization to provide health services if PPST loses Medicaid funding; dated Dec. 4, 2016 |
| Appx.005289-5303 | Email to J. Hons providing Affiliate Development and Accreditation Committee white paper re: licensing Medical Standards and Guidelines and use at non-PP organizations; dated Mar. 17, 2017 |
| Appx.005304-5317 | Email to K. Lambrecht RE: Directors and Officer's Policy with policy attached; dated May 21, 2021 |

| Appendix Pages | Appendix Document Title[2] |
|---|---|
| Appx.005318-5435 | Email from T. Trivisonno to M. Baxter with Powerpoint and information regarding PPFA Business Operations Team guidelines for assessing Health Center labor and performance; and NCL playbook attached |
| Appx.005436-5437 | PPFA Email to Affiliates re: Compliance Community Forum |
| Appx.005438-5440 | Email from PPFA to Affiliates re: No Surprises Act; Part II; Good Faith Estimate – Affiliate Guidance and Considerations; dated Dec. 7, 2021 |
| Appx.005441-5444 | PPFA Email to Affiliate CEOs sharing preview materials for upcoming National Conference; dated Mar. 17, 2021 |
| Appx.005443-5444 | National Conference Workshop List |
| Appx.005451-5519 | Research & Analysis: An Audit by Script Architecture prepared for PPFA re: facility upgrades to PP Affiliates; PowerPoint presentation; dated Mar. 30, 2020 |
| Appx.005520-5576 | Email to Affiliate Senior Leadership and Admins; Subject ACEC Meeting Agenda and Materials (with attachments); dated Feb. 24, 2016 |
| Appx.005577 | Email from S. McKinney directing PPGT not to bill specified charges to Medicaid while PPGT is excluded from the program; dated Mar. 13, 2021 |
| Appx.005578-5579 | Emails received by PPGT regarding the 60-Day Medicaid/Medicare Overpayment Repayment Rule |
| Appx.005580-5581 | Emails received by PPGT regarding the 60-Day Medicaid/Medicare Overpayment Repayment Rule |
| Appx.005582-5583 | Emails received by PPGT regarding the 60-Day Medicaid/Medicare Overpayment Repayment Rule |
| Appx.005584-5585 | Emails received by PPGT regarding the 60-Day Medicaid/Medicare Overpayment Repayment Rule |
| Appx.005586 | Email from S. McKinney to M. deJong re: Medicaid lawsuit info requested by auditors |
| Appx.005587-5588 | Email from R. Exnicious re: recouped Medicaid payments; dated Jan. 14, 2021 |
| Appx.005589 | Email from K. Lambrecht to S. Wheat re: Medicaid recoupment; dated Dec. 7, 2015 |

| Appendix Pages | Appendix Document Title[2] |
|---|---|
| Appx.005590-5594 | Email from PPFA re: difficult questions and talking points re: TX Affiliate OIG audits with attachments |
| Appx.005595 | Texas Health and Human Services Office of Inspector General Website Articles discussing HHSC-OIG encouraging providers to self-report overpayments and errors |
| Appx.005596 | Texas Health and Human Services Office of Inspector General Website Articles discussing HHSC-OIG encouraging providers to self-report overpayments and errors |
| Appx.005597 | Texas Health and Human Services Office of Inspector General Website Articles discussing HHSC-OIG encouraging providers to self-report overpayments and errors |
| Appx.005598-5605 | Texas Health and Human Services Commission Office of Inspector General Self-Disclosure Protocol; dated Feb. 2016 |
| Appx.005606 | Texas Medicaid Refund Information Form; effective date 08012014; revised date 06232014 |
| Appx.005607 | Texas Medicaid Refund Information Form; effective date 07302007; revised date 06012007 |
| Appx.005608 | Louisiana Medicaid list of Training Presentations, including copy of presentation titled Program Integrity 101; revised Mar. 2011 |
| Appx.005609-5637 | Louisiana Medicaid list of Training Presentations, including copy of presentation titled Program Integrity 101; revised Mar. 2011 |
| Appx.005638-5639 | Email from M. deJong re: financial report contingency footnote re: OIG audit of PPGT; dated Apr. 10, 2015 |
| Appx.005640 | Email from K. Lambrecht re: federal audit report of PPGT predecessor and conclusion that PPGT received overpayment; dated Mar. 7, 2016 |
| Appx.005641-5643 | Email from S. McKinney re: Talking re: OIG Medicaid Audit with attachment; dated Apr. 6, 2016 |
| Appx.005644-5651 | PPFA Email to Affiliates re: Health Care Reform Update Newsletter – June 2013 Issue |
| Appx.005652-5658 | Healthcare Reform Update |
| Appx.005659-5674 | Updated US Department of HHS OIG's Provider Self-Disclosure Protocol; issued Apr. 17, 2013 |

8

| Appendix Pages | Appendix Document Title[2] |
|---|---|
| Appx.006122-6125 | Email from K. Lambrecht with subject: 5th Circuit Ruling re: Planned Parenthood in Medicaid and attaching the Court's Opinion; dated Nov. 23, 2020 |
| Appx.006129-6131 | Email from K. Lambrecht re: Texas affiliates' termination from Medicaid and PPGT and PPFA talking points, dated Oct. 19, 2015 |
| Appx.006132 | Email from M. deJong re: legality of providing Medicaid services after termination and likelihood of success in fighting termination with attached [*sic*] OIG Notice of Termination; dated Dec. 2, 2015 |
| Appx.006139-6141 | Email from K. Ray at HHSC to TX Affiliate CEOs re: "grace period" request; dated Jan. 4, 2021 |
| Appx.006146-6147 | March 10, 2021 Letter Ruling from Judge Livingston Travis County 261st Dist. Ct. In D-1-GN-21-000528 |
| Appx.006173-6178 | Letter from Affiliate Defendant CEOs to HHSC Executive Commissioner Cecile Young requesting reinstatement or "grace period"; dated Dec. 14, 2020 |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 8, 2023, a copy of the foregoing was served pursuant to the Court's ECF system.

*/s/ Danny S. Ashby*
Danny S. Ashby

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

UNITED STATES OF AMERICA, *ex rel.*
ALEX DOE, Relator, THE STATE OF
TEXAS, *ex rel.* ALEX DOE, Relator, THE
STATE OF LOUISIANA, *ex rel.* ALEX DOE,
Relator,

      Plaintiffs,

v.

PLANNED PARENTHOOD FEDERATION
OF AMERICA, INC., PLANNED
PARENTHOOD GULF COAST, INC.,
PLANNED PARENTHOOD OF GREATER
TEXAS, INC., PLANNED PARENTHOOD
SOUTH TEXAS, INC., PLANNED
PARENTHOOD CAMERON COUNTY,
INC., PLANNED PARENTHOOD SAN
ANTONIO, INC.,

      Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

No. 2:21-cv-022-Z

Date:    February 8, 2023

**EXHIBIT B**

**CHART 1 – PPFA DOCUMENTS TO BE UNSEALED IN FULL[1]**

| Appendix Pages | Appendix Document Title[2] |
|---|---|
| Appx.002727-2729* | PPFA Accreditation Program Overview |
| Appx.004016-4017* | PPFA Email to PPST re 2015 PPST Accreditation |
| Appx.004018-4019* | PPFA Letter to PPST re 2015 PPST Accreditation |
| Appx.004022-4053 | PPFA Consolidated Financial Statements & Supplementary Information dated June 30, 2021 and 2020 |

---

[1] This list includes 1 document produced by PPFA that was cited by Plaintiffs but not designated as either Confidential or AEO and 3 documents that PPFA has agreed to downgrade (identified with an asterisk).

[2] To avoid confusion, PPFA has—where possible, given Plaintiffs' condensing of multiple documents from the Appendix into a single entry in the Index—used the document titles as written in Plaintiffs' Index (ECF No. 400).  However, PPFA's use of these titles does not constitute any agreement or concession that Plaintiffs' descriptions are accurate.  Indeed, many of them are not.

**CHART 2 – AFFILIATE DEFENDANT DOCUMENTS TO BE UNSEALED IN FULL[3]**

| Appendix Pages | Document Title |
|---|---|
| Appx.000801-0807 | PPST Letter to THHSC (Cecile Young) re COVID-19 |
| Appx.000808-0811 | Email from Ray to Lambrecht; Linton; Hons re Response to Letters of December 14, 2020 |
| Appx.000866-0872 | Final Notice of Termination of Enrollment letter to PPGC; PPGT; PPSA |
| Appx.001090-1092 | Judge Livingston (261st District Court) Letter re Relators Application for Temporary Mandatory Injunction |
| Appx.002335-2411 | General Information and Administration Provider Manual |
| Appx.002571-2572* | Letter to PPGC from Bureau of Health Services Financing Provider Enrollment Unit |
| Appx.002573* | Provider Enrollment letter to PPGC |
| Appx.002574-2581* | Letter to PPGC |
| Appx.002671-2677 | LA Department of Health letter to Linton re allegations against Planned Parenthood |
| Appx.002678-2683 | LA Department of Health letter to Linton re fetal tissue donation programs |
| Appx.002684-2695 | LA Department of Health letter to Linton re Termination/Revocation of LA Medicaid Provider Agreement |
| Appx.002696-2697 | Gottlieb letter to LeBlanc re Texas Medicaid Program Participation |
| Appx.002712 | Gottlieb letter to Coniglio re Texas Medicaid Program Participation |
| Appx.002726 | Letter to Judge deGravelles re Defendant's Motion to Lift Stay and Vacate Preliminary Injunction |
| Appx.003354-3355 | Binder 5(A) - PPST Accreditation Reports Cover Page & TOC |
| Appx.004977-4978* | Email from Exnicious to Etheredge fw Thank you for joining 'How Does This Get Paid: An Introduction to PPFA's Medicaid Reimbursement Toolkit' |
| Appx.005015-5016 | Email from Ehrmann re REMINDER: SAVE THE DATE: Medicaid Auditing and Compliance Webinar |
| Appx.005025-5028* | Email from McKinney to DeJong fw Upcoming Webinar on New Medicaid Managed Care Rule |
| Appx.005032-5034* | Email from Lambrecht to McKinney; DeJong et al fw Gap Funding Approach & Additional Contingency Planning Details |
| Appx.005035-5036 | Email from Singiser to Lambrecht re Title X and Medicaid Follow-Up Questions |
| Appx.005141-5146* | Email from Lambrecht to McKinney; Wheat; Sannes fw Previous Ltr of Interest for AEC SC and Governance |

---

[3] This list includes 17 documents produced by Affiliate Defendants that were cited by Plaintiffs but not designated as either Confidential or AEO and 10 documents that Affiliate Defendants have agreed to downgrade (identified with an asterisk).

| Appendix Pages | Document Title |
|---|---|
| Appx.005194-5195 | Email from Ayers to Affiliate CEOS, COOs, Chief Execs, CFOs, General Counsels re Flagging 340BESP Terms of Use |
| Appx.005212-5213* | Email from Brooks to Cowhard; Affiliate Chief Execs re ARMs insurance payment |
| Appx.006148 | Email from Lambrecht to McKinney re Medicaid administrative hearing |
| Appx.006160-6172* | Email from McKinney to Lambrecht re President Biden Takes Action on Sexual and Reproductive Health |
| Appx.006179-6277 | Original Petition for Writ of Mandamus, Application for Temporary Restraining Order, Temporary Mandatory Injunction, and Permanent Mandatory Injunction |
| Appx.006295* | Email from Hons to Barraza re the recent Medicaid ruling - Planned Parenthood South Texas |

**CHART 3 – PPFA DOCUMENTS TO BE UNSEALED IN PART**

| Appendix Pages | Appendix Document Title | Pages to Unseal | Seal / Redact | Reasons for Sealing |
|---|---|---|---|---|
| Appx.001430-1488 | 30(b)(6) Deposition Transcript of Vickie Barrow-Klein (PPFA) | Transcript pages: 24:13-18 32:16-20 38:4-19 75:16-76:11 93:7-94:8 147:11-150:10 151:5-17 198:2-200:5 200:6-201:12 208:8-22 | All other pages and lines | All other pages are not cited; the transcript contains Confidential and AEO information, including especially sensitive financial information and commercial information that is not publicly known. |
| Appx.001539-1571 | Deposition Transcript of Rosemary Coluccio | Transcript pages: 12:6-21 14:23-18:15 18:18-23:2 | All other pages and lines | All other pages are not cited; the transcript contains Confidential and AEO information, including especially sensitive financial information and commercial information that is not publicly known. |
| Appx.001638-1703 | 30(b)(6) Deposition Transcript of Kim Custer (PPFA) | Transcript pages: 29:7-30:2 72:8-22 148:23-149:7 151:1-7 168:16-23 179:24-182:1 183:1-7 188:6-10 191:5-16 203:8-17 | All other pages and lines | All other pages are not cited; the transcript contains Confidential and AEO information, including especially sensitive financial information and commercial information that is not publicly known. |

4

| Appendix Pages | Appendix Document Title | Pages to Unseal | Seal / Redact | Reasons for Sealing |
|---|---|---|---|---|
| | | 238:16-239:14<br>246:3-22<br>252:8-254:10<br>255:8-15 | | |
| Appx.001742-1802 | Deposition Transcript of Louis Dudney | Transcript pages:<br>199:8-201:7 | All other pages and lines | All other pages are not cited; the transcript contains Confidential and AEO information, including especially sensitive financial information and commercial information that is not publicly known. |
| Appx.001840-1894 | Deposition Transcript of Tamara Kramer | Transcript pages:<br>161:19-23<br>169:21-172:19<br>173:5-174:12<br>182:17-183:17 | All other pages and lines | All other pages are not cited; the transcript contains Confidential and AEO information, including especially sensitive financial information and commercial information that is not publicly known. |
| Appx.002202-2253 | Deposition Transcript of Teri Trivisonno | Transcript pages:<br>81:18-82:13<br>82:23-83:19<br>85:1-91:14<br>92:13-96:8<br>96:24-98:3<br>98:18-100:1<br>100:6-101:6<br>101:11-102:4<br>103:1-105:2<br>150:10-151:5<br>151:9-13<br>151:23-25<br>152:1-10 | All other pages and lines | All other pages are not cited; the transcript contains Confidential and AEO information, including especially sensitive financial information and commercial information that is not publicly known. |

| Appendix Pages | Appendix Document Title | Pages to Unseal | Seal / Redact | Reasons for Sealing |
|---|---|---|---|---|
| | | 153:16-155:9<br>155:19-25<br>156:1-11<br>157:5-13<br>157:19-25<br>158:1-161:5<br>161:17-20<br>172:5-21<br>174:20-176:18<br>176:24-177:3<br>177:7-12<br>177:17-20<br>178:21-180:21<br>181:9-11<br>181:13-184:20<br>185:9-11<br>187:7-25<br>189:9-190:23<br>192:10-193:14<br>193:18-24<br>194:3-6<br>195:4-12<br>195:23-25<br>196:1-4<br>196:17-197:4<br>197:9-12<br>197:23-25<br>198:1-4<br>198:12-14 | | |
| Appx.004011-4012 | PPFA Email and Letter re PPST conditional accreditation | 4012 | 4011 | **IRRELEVANT PERSONAL INFORMATION** |

| Appendix Pages | Appendix Document Title | Pages to Unseal | Seal / Redact | Reasons for Sealing |
|---|---|---|---|---|
| | status of PPST ancillary organizations | | | Contains personal cell phone contact information. |
| Appx.004013 | PPFA Email re approval of PPGC/PPGT/PPST shared ancillary organization Planned Parenthood Advocates of Texas | N/A | 4013 | **IRRELEVANT PERSONAL INFORMATION**<br><br>Contains personal cell phone contact information. |
| Appx.004014-4015 | PPFA Email re review of PPGC/PPGT/PPST shared ancillary organizations Planned Parenthood Advocates of Texas and Planned Parenthood Texas Votes | 4014 | 4015 | **IRRELEVANT PERSONAL INFORMATION**<br><br>Contains personal cell phone contact information. |
| Appx.004020-4021 | PPFA Email from PPST re 2020 PPST Mid-Cycle Self-Assessment | 4020 | 4021 | **IRRELEVANT PERSONAL INFORMATION**<br><br>Contains personal cell phone contact information. |
| Appx.005029-5031 | Email from PPFA to Affiliate CEOs re: Monthly CEO Policy Call, topic PP defund and HHS review of 1115 waivers | N/A | 5029-5031 | **IRRELEVANT PERSONAL INFORMATION**<br><br>Contains non-party contact information. |
| Appx.005083-5121 | Putting Women's Health Care on the Map: A Report on Year 3 of the Health Care Investment Program | 5094-5096 | 5083-5093, 5097-5121 | **IRRELEVANT CONFIDENTIAL INFORMATION**<br><br>Especially sensitive financial information; commercial information that is not publicly known. |

| Appendix Pages | Appendix Document Title | Pages to Unseal | Seal / Redact | Reasons for Sealing |
|---|---|---|---|---|
| | | | | Only three pages of this document are cited to support the following proposition: "One of the main goals of the HCIP was to maximize Medicaid revenue for the Affiliates." ECF No. 391 at 85. |
| Appx.005147-5149 | Email re: M. DeJong, PPGT CFO service on PPFA Fiduciary Committee Meeting | 5149 | 5147-5148 | **IRRELEVANT PERSONAL INFORMATION**<br><br>Contains personal cell phone contact information. |
| Appx.005159-5162 | PPFA Email re: pressure on LA Governor re: PPGC Medicaid status; dated Jan. 7, 2021 | 5160, 5162 | 5159, 5161 | **IRRELEVANT PERSONAL INFORMATION**<br><br>Contains personal cell phone contact information. |
| Appx.005186-5187 | PPFA Email to Affiliate CEOs re: Service Expansion Grant Awards to Affiliates from PPFA Healthcare Operations Team | 5186 | 5187 | **IRRELEVANT PERSONAL INFORMATION**<br><br>Contains personal cell phone contact information. |
| Appx.006126-6128 | Email from PPFA's R. Clawson to T. Trivisonno re: referring Texas Medicaid patients to PP competitors; dated Jan. 25, 2021 | 6127 | 6126, 6128 | **IRRELEVANT PERSONAL INFORMATION**<br><br>Contains personal cell phone contact information. |
| Appx.006149-6155 | PPFA emails re: press conference on TX Medicaid decision from Fifth Circuit; dated Dec. 16, 2020 | 6149-6151 | 6152-6155 | **IRRELEVANT PERSONAL INFORMATION** |

| Appendix Pages | Appendix Document Title | Pages to Unseal | Seal / Redact | Reasons for Sealing |
|---|---|---|---|---|
| | | | | Contains personal cell phone contact information; contains names of non-public employees. |
| Appx.006156-6159 | PPFA Email to Natl Exec Team re: strategy and goals after Texas affiliates terminated from Medicaid, dated Feb. 2, 2021 | 6156-6157, 6159 | 6158 | **IRRELEVANT PERSONAL INFORMATION**<br><br>Contains personal cell phone contact information. |
| Appx.006278-6292 | PPFA Email to CEO Cecile Richards re: Briefing for Press Call Tomorrow regarding Texas Medicaid lawsuit with Attachment; dated Nov. 22, 2015 | 6280-6292 | 6278-6279 | **IRRELEVANT PERSONAL INFORMATION**<br><br>Contains personal cell phone contact information. |
| Appx.006293-6294 | PPFA Email re: PPFA and TX Affiliates working with media to successfully pressure Texas Governor to give a "grace period" to buy time to see patients, dated Jan. 6, 2021 | 6294 | 6293 | **IRRELEVANT PERSONAL INFORMATION**<br><br>Contains personal cell phone contact information. |

**CHART 4 – AFFILIATE DEFENDANT DOCUMENTS TO BE UNSEALED IN PART**

| Appendix Pages | Document Title | Pages to Unseal | Seal / Redact | Reasons for Sealing |
|---|---|---|---|---|
| Appx.001309-1377 | Polin Barraza Deposition Transcript (Day 1) | Transcript pages: 25; 29; 184; 219–221 | All other pages | The remaining pages were not cited in the brief. In addition, uncited pages include non-party names; trade secret and proprietary information, including detailed accreditation information; and grant and financial information. |
| Appx.001378-1429 | Polin Barraza Deposition Transcript (Day 2) | Transcript pages: 306; 465–466 | All other pages | The remaining pages were not cited in the brief. In addition, uncited pages include non-publicly identified employee names; trade secret and proprietary information, including detailed accreditation information; and grant and financial information. |
| Appx.001572-1637 | PPGC 30b6 Deposition Transcript (Curtis) | Transcript pages: 21-24; 32-35; 121; 210-212; 219-220; 237-238 | All other pages | The remaining pages were not cited in the brief. In addition, uncited pages include non-publicly identified employee names; trade secret and proprietary information, including detailed accreditation information; and grant and financial information. |
| Appx.001895-1950 | Ken Lambrecht Deposition Transcript (December 6, 2022) | Transcript pages: 26-29; 31; 40; 46;140 | 72-73; all other pages | Pages 72-73 are designated as Confidential because they discuss grant and financial information. The remaining pages were not cited in the brief. In addition, uncited pages include trade secret and proprietary information, including detailed accreditation information; and grant and financial information. |
| Appx.001951-2020 | Ken Lambrecht Deposition Transcript (November 21, 2022) | Transcript pages: 25; 134; 141; 190-191; 244-245 | All other pages | The remaining pages were not cited in the brief. In addition, uncited pages include trade secret and proprietary information, including |

| Appendix Pages | Document Title | Pages to Unseal | Seal / Redact | Reasons for Sealing |
|---|---|---|---|---|
| | | | | detailed accreditation information; and grant and financial information. |
| Appx.002021-2089 | Melaney Linton Deposition Transcript | Transcript pages: 67-68; 115-116; 123; 190-191 | All other pages | The remaining pages were not cited in the brief. In addition, uncited pages include non-publicly identified employee names; trade secret and proprietary information, including detailed accreditation information; and grant and financial information. |
| Appx.002706-2708 | Email from Dixon to PPGC-PC-Patient Access Center fw Read me - Texas Medicaid Update | N/A | All non-public employee names[4] | **IRRELEVANT NON-PUBLIC PERSONAL INFORMATION**<br><br>Document contains non-public names and contact information. |
| Appx.005196-5197 | Email from Hitson to Affiliate Clinicians; IT; Quality Risk Management re Webinar Reminder: HER Guidelines: Referrals, HIPAA Omnibus Rule, & Granting Access in the EHR | N/A | All non-public PP employee names | **IRRELEVANT NON-PUBLIC PERSONAL INFORMATION**<br><br>Document contains non-public names and contact information. |
| Appx.005675-6029 | Affiliate Defendants' Third Privilege Log | N/A | All non-public PP employee names | **IRRELEVANT NON-PUBLIC PERSONAL INFORMATION**<br><br>Document contains non-public names and contact information. |
| Appx.006030-6121 | Affiliate Defendants' First Privilege Log | N/A | All non-public PP employee names | **IRRELEVANT NON-PUBLIC PERSONAL INFORMATION** |

---

[4] Affiliate Defendants are happy to provide chambers with a list of all the non-public facing employees redacted for *in camera* review.

| Appendix Pages | Document Title | Pages to Unseal | Seal / Redact | Reasons for Sealing |
|---|---|---|---|---|
|  |  |  |  | Document contains non-public names and contact information. |

**CHART 5 – PPFA DOCUMENTS THAT SHOULD REMAIN SEALED**

| Appendix Pages | Appendix Document Title | Reason for Sealing |
|---|---|---|
| Appx.002730-2740 | PPFA Accreditation & Evaluation Department Accreditation Introductory Call Overview, Script & Communications Template | **TRADE SECRET**<br><br>Sensitive trade secret information.<br>Cited to support the proposition that: "PPFA requires the Affiliate Defendants to be 'accredited' through a rigorous appraisal of their policies, practices, and programs to assess compliance with PPFA's standards." ECF No. 391 at 77-78; *id.* at 11 (similar). |
| Appx.002741-2776 | PPFA 2015 Accreditation Indicators and Elements of Performance | **TRADE SECRET**<br><br>Sensitive trade secret information.<br>Cited to support the proposition that: "PPFA requires the Affiliate Defendants to be 'accredited' through a rigorous appraisal of their policies, practices, and programs to assess compliance with PPFA's standards." ECF No. 391 at 77-78; *id.* at 11 (similar). |
| Appx.002777-2827 | PPFA 2017 Accreditation Indicators and Elements of Performance | **TRADE SECRET**<br><br>Sensitive trade secret information.<br>Cited to support the proposition that: "PPFA requires the Affiliate Defendants to be 'accredited' through a rigorous appraisal of their policies, practices, and programs to assess compliance with PPFA's standards." ECF No. 391 at 77-78; *id.* at 11 (similar). |
| Appx.002828-2878 | PPFA 2018 Accreditation Indicators and Elements of Performance | **TRADE SECRET**<br><br>Sensitive trade secret information.<br>Cited to support the proposition that: "PPFA requires the Affiliate Defendants to be 'accredited' through a rigorous appraisal of their policies, practices, and programs to assess compliance with PPFA's standards." ECF No. 391 at 77-78; *id.* at 11 (similar). |

| Appendix Pages | Appendix Document Title | Reason for Sealing |
|---|---|---|
| Appx.002879-3027 | PPFA 2022 Accreditation & Evaluation Department Accreditation Form/Template | **TRADE SECRET**<br><br>Sensitive trade secret information.<br>Cited to support the proposition that: "PPFA requires the Affiliate Defendants to be 'accredited' through a rigorous appraisal of their policies, practices, and programs to assess compliance with PPFA's standards." ECF No. 391 at 77-78; *id.* at 11 (similar). |
| Appx.003028-3111 | PPFA 2017 PPGC Accreditation Report | **TRADE SECRET**<br><br>Sensitive trade secret information.<br>Cited to support the proposition that: "PPFA requires the Affiliate Defendants to be 'accredited' through a rigorous appraisal of their policies, practices, and programs to assess compliance with PPFA's standards." ECF No. 391 at 77-78; *id.* at 11 (similar). |
| Appx.003112-3151 | PPFA 2019 PPGT Accreditation Report | **TRADE SECRET**<br><br>Sensitive trade secret information.<br>Cited to support the proposition that: "PPFA requires the Affiliate Defendants to be 'accredited' through a rigorous appraisal of their policies, practices, and programs to assess compliance with PPFA's standards." ECF No. 391 at 77-78; *id.* at 11 (similar). |
| Appx.003152-3210 | PPFA 2015 PPGT Accreditation Report | **TRADE SECRET**<br><br>Sensitive trade secret information.<br>Cited to support the proposition that: "Since 2015, PPFA has completed several comprehensive accreditation reviews of each of the Affiliate Defendants." ECF No. 391 at 78; *id.* at 11 (similar). |
| Appx.003211-3289 | PPFA 2012 PPGC Accreditation Report | **TRADE SECRET**<br><br>Sensitive trade secret information. |

14

| Appendix Pages | Appendix Document Title | Reason for Sealing |
|---|---|---|
| | | Cited to support the proposition that: "Since 2015, PPFA has completed several comprehensive accreditation reviews of each of the Affiliate Defendants." ECF No. 391 at 78; *id.* at 11 (similar). |
| Appx.003290-3353 | PPFA 2021 PPGC Accreditation Report | **TRADE SECRET**<br><br>Sensitive trade secret information.<br>Cited to support the proposition that: "Since 2015, PPFA has completed several comprehensive accreditation reviews of each of the Affiliate Defendants." ECF No. 391 at 78; *id.* at 11 (similar). |
| Appx.003447-3545 | PPFA 2016 PPST Accreditation Report | **TRADE SECRET**<br><br>Sensitive trade secret information.<br>Cited to support the proposition that: "Since 2015, PPFA has completed several comprehensive accreditation reviews of each of the Affiliate Defendants." ECF No. 391 at 78; *id.* at 11 (similar). |
| Appx.003583-3603 | PPFA 2019 PPST Accreditation Overview Presentation/Slides and Summary of Corrective Actions | **TRADE SECRET**<br><br>Sensitive trade secret information.<br>Cited to support the proposition that: "Since 2015, PPFA has completed several comprehensive accreditation reviews of each of the Affiliate Defendants." ECF No. 391 at 78; *id.* at 11 (similar). |
| Appx.003604-3661 | PPFA 2019 PPST Accreditation Report | **TRADE SECRET**<br><br>Sensitive trade secret information.<br>Cited to support the proposition that: "Since 2015, PPFA has completed several comprehensive accreditation reviews of each of the Affiliate Defendants." ECF No. 391 at 78; *id.* at 11 (similar). |
| Appx.003662-3737 | PPFA 2012 PPST Accreditation Report | **TRADE SECRET**<br><br>Sensitive trade secret information. |

| Appendix Pages | Appendix Document Title | Reason for Sealing |
|---|---|---|
| | | Cited to support the proposition that: "Since 2015, PPFA has completed several comprehensive accreditation reviews of each of the Affiliate Defendants." ECF No. 391 at 78; *id.* at 11 (similar). |
| Appx.003738-3792 | PPFA 2019 PPST Accreditation Report | **TRADE SECRET**<br><br>Sensitive trade secret information.<br>Cited to support the proposition that: "Since 2015, PPFA has completed several comprehensive accreditation reviews of each of the Affiliate Defendants." ECF No. 391 at 78; *id.* at 11 (similar). |
| Appx.003970-4010 | PPFA 2019 PPGT Accreditation Report | **TRADE SECRET**<br><br>Sensitive trade secret information.<br>Cited to support the proposition that: "Since 2015, PPFA has completed several comprehensive accreditation reviews of each of the Affiliate Defendants." ECF No. 391 at 78; *id.* at 11 (similar). |
| Appx.004390-4546 | PPFA Health Care Investment Program Year 1-4 Reports | **IRRELEVANT CONFIDENTIAL INFORMATION**<br><br>Especially sensitive financial and marketing information, including detailed information about non-parties.<br>Cited exclusively to support the proposition that: "PPFA also created and funded a program called the Health Care Investment Program (HCIP) to provide technical assistance to PPFA Affiliates on issues such as Medicaid." ECF No. 391 at 85. |
| Appx.004547-4570 | PPFA Health Care Investment Program Year 1-4 Reports (Cont.) | **IRRELEVANT CONFIDENTIAL INFORMATION**<br><br>Especially sensitive financial and marketing information, including detailed information about non-parties.<br>Cited exclusively to support the proposition that: "PPFA also created and funded a program called the Health Care Investment Program (HCIP) to provide technical assistance to PPFA Affiliates on issues such as Medicaid." ECF No. 391 at 85. |

| Appendix Pages | Appendix Document Title | Reason for Sealing |
|---|---|---|
| Appx.004571-4859 | 30(b)(6) Deposition of Vickie Barrow Klein: PPFA Transaction Ledger and PPFA Financial Documents | **IRRELEVANT CONFIDENTIAL INFORMATION**<br><br>Especially sensitive financial information, including detailed financial information about non-parties.<br>Pages 4572-4821 are cited exclusively to support the proposition that: "There are thousands of financial transactions between the Affiliates and PPFA each year."  ECF No. 391 at 10.<br>Note: Appx.004822-4859 is a separate document; it is uncited. |
| Appx.004863-4887 | Email from K. Custer to Affiliate CEOs; Subject: Information Request for NPS Motion; dated Mar. 10, 2015; attachments: Highlights from PPFA Program Support for Affiliates; PPFA National Office Services to Affiliates; NPS and Financial Comparison for Affiliates; Health Care Business Model Project | **IRRELEVANT CONFIDENTIAL INFORMATION**<br><br>Especially sensitive financial information; commercial information that is not publicly known. |
| Appx.004977-5009 | Email from R. Exnicious re: Introduction to PPFA's Medicaid Reimbursement Toolkit; dated Oct. 28, 2019; attachment: Medicaid Reimbursement Toolkit | **TRADE SECRET**<br><br>Especially sensitive trade secret information; commercial information that is not publicly known.<br>Cited exclusively to support the propositions that:  "The Healthcare Division also has a Business Operations Team which assists Affiliates with their revenue cycle, among other things, which includes Medicaid billing" and "PPFA's HCIP Team publishes a 'Medicaid Toolkit' that advises best practices on billing."  ECF No. 391 at 9, 85. |
| Appx.005037-5055 | Planned Parenthood Revenue Cycle Toolkit | **TRADE SECRET** |

| Appendix Pages | Appendix Document Title | Reason for Sealing |
|---|---|---|
| | | Especially sensitive trade secret information; commercial information that is not publicly known.<br>Cited exclusively to support the proposition that: "The Healthcare Division also has a Business Operations Team which assists Affiliates with their revenue cycle, among other things, which includes Medicaid billing." ECF No. 391 at 9. |
| Appx.005066-5071 | PPFA Email re: NPS Dues Forgiveness | **IRRELEVANT CONFIDENTIAL INFORMATION**<br><br>Especially sensitive financial information; commercial information that is not publicly known. |
| Appx.005155-5158 | PPFA Email re: New Clinic Budget Sheet | **IRRELEVANT CONFIDENTIAL INFORMATION**<br><br>Especially sensitive financial information; commercial information that is not publicly known; also contains personal cell phone contact information.<br>Cited exclusively to support the proposition that: "PPFA receives donations from outside funders to pay for the construction of new PPFA healthcare facilities, conducts financial analysis and market research for new potential PPFA healthcare facilities, and performs extensive design and construction review of nearly every detail of proposed PPFA healthcare facilities." ECF No. 391 at 82-83. |
| Appx.005214-5219 | Updated from ARMS dated Mar. 2016 re: portraying Planned Parenthood as excellent and stable amid media scrutiny | **IRRELEVANT CONFIDENTIAL INFORMATION**<br><br>Sensitive marketing information.<br>Cited exclusively to support the proposition that: "To be a PPFA Affiliate, Affiliates must also be insured by Affiliate Risk Management Services (ARMS), a company that only insures PPFA entities and affiliates. . . . ARMS' sole member, Policyholders' Trust, is a PPFA-related company and is controlled by PPFA Affiliate CEOs and PPFA directors 'to ensure that the organization will always support' PPFA and the PPFA Affiliates." ECF No. 391 at 10. |

**CHART 6 – AFFILIATE DEFENDANT DOCUMENTS THAT SHOULD REMAIN SEALED**

| Appendix Pages | Document Title | Reason for Sealing |
|---|---|---|
| Appx.003356-3446 | Final PPST Affiliate Accreditation Report (Binder 5(A) Tab 500) | **TRADE SECRET AND SENSITIVE NON-PUBLIC SECURITY INFORMATION**<br><br>Document is a detailed accreditation report, including sensitive security information.<br>Cited in 1300 page string cite to support the proposition that "The PPFA Affiliate Defendants are all Planned Parenthood entities and members of PPFA, so they are all required to go through PPFA's accreditation process in order to retain those privileges."  ECF No. 391 at 11.<br>Cited in 900 page string cite to support the proposition that "Since 2015, PPFA has completed several comprehensive accreditation reviews of each of the Affiliate Defendants."  ECF No. 391 at 78. |
| Appx.003546-3582 | PPST Corrective Action Report (Binder 5(A) Tab 506) | **TRADE SECRET AND SENSITIVE NON-PUBLIC SECURITY INFORMATION**<br><br>Document is a detailed accreditation report, including sensitive security information.<br>Cited in 1300 page string cite to support the proposition that "The PPFA Affiliate Defendants are all Planned Parenthood entities and members of PPFA, so they are all required to go through PPFA's accreditation process in order to retain those privileges."  ECF No. 391 at 11.<br>Cited in 900 page string cite to support the proposition that "Since 2015, PPFA has completed several comprehensive accreditation reviews of each of the Affiliate Defendants."  ECF No. 391 at 78. |
| Appx.003793-3871 | Email from Lambrecht to Olson fw Final accreditation report for Planned Parenthood of Greater Texas | **TRADE SECRET AND SENSITIVE NON-PUBLIC SECURITY INFORMATION**<br><br>Document is a detailed accreditation report, including sensitive security information. |

| Appendix Pages | Document Title | Reason for Sealing |
|---|---|---|
| | | Cited in 1300 page string cite to support the proposition that "The PPFA Affiliate Defendants are all Planned Parenthood entities and members of PPFA, so they are all required to go through PPFA's accreditation process in order to retain those privileges."  ECF No. 391 at 11. Cited in 900 page string cite to support the proposition that "Since 2015, PPFA has completed several comprehensive accreditation reviews of each of the Affiliate Defendants."  ECF No. 391 at 78. |
| Appx.003872-3884 | Email from White to PPFA re accreditation corrective action plan | **TRADE SECRET AND SENSITIVE NON-PUBLIC SECURITY INFORMATION**<br><br>Document is a detailed accreditation report, including sensitive security information. Cited in 1300 page string cite to support the proposition that "The PPFA Affiliate Defendants are all Planned Parenthood entities and members of PPFA, so they are all required to go through PPFA's accreditation process in order to retain those privileges."  ECF No. 391 at 11. Cited in 900 page string cite to support the proposition that "Since 2015, PPFA has completed several comprehensive accreditation reviews of each of the Affiliate Defendants."  ECF No. 391 at 78. |
| Appx.003885-3903 | Email from Johnson to Lambrecht; Frances attaching PPGT Draft Summary Outcome Presentation | **TRADE SECRET AND SENSITIVE NON-PUBLIC SECURITY INFORMATION**<br><br>Document is a detailed accreditation report, including sensitive security information. Cited in 1300 page string cite to support the proposition that "The PPFA Affiliate Defendants are all Planned Parenthood entities and members of PPFA, so they are all required to go through PPFA's accreditation process in order to retain those privileges."  ECF No. 391 at 11. Cited in 900 page string cite to support the proposition that "Since 2015, PPFA has completed several comprehensive accreditation reviews of each of the Affiliate Defendants."  ECF No. 391 at 78. |

| Appendix Pages | Document Title | Reason for Sealing |
|---|---|---|
| Appx.003904-3928 | Email from White to Lambrecht et al re Accreditation Resources | **TRADE SECRET AND SENSITIVE NON-PUBLIC SECURITY INFORMATION**<br><br>Document is a detailed accreditation report, including sensitive security information.<br>Cited in 1300 page string cite to support the proposition that "The PPFA Affiliate Defendants are all Planned Parenthood entities and members of PPFA, so they are all required to go through PPFA's accreditation process in order to retain those privileges."  ECF No. 391 at 11.<br>Cited in 900 page string cite to support the proposition that "Since 2015, PPFA has completed several comprehensive accreditation reviews of each of the Affiliate Defendants."  ECF No. 391 at 78. |
| Appx.003929-3969 | PPFA Accreditation and Evaluation Department - Guide for Accreditation Reviews | **TRADE SECRET AND SENSITIVE NON-PUBLIC SECURITY INFORMATION**<br><br>Document is a detailed accreditation report, including sensitive security information.<br>Cited in 1300 page string cite to support the proposition that "The PPFA Affiliate Defendants are all Planned Parenthood entities and members of PPFA, so they are all required to go through PPFA's accreditation process in order to retain those privileges."  ECF No. 391 at 11.<br>Cited in 900 page string cite to support the proposition that "Since 2015, PPFA has completed several comprehensive accreditation reviews of each of the Affiliate Defendants."  ECF No. 391 at 78. |
| Appx.005188-5189 | Email from Trivisonno re New PPFA Building Book for Health Centers | **SENSITIVE NON-PUBLIC SECURITY INFORMATION**<br><br>Document contains sensitive security information.<br>Cited exclusively to support the proposition that "Since 2014, PPFA has published and distributed a book called the "PPFA Building Book for Health Centers" providing comprehensive design and construction information, potential floor plans for different kinds of PPFA health |

| Appendix Pages | Document Title | Reason for Sealing |
|---|---|---|
| | | centers, color schemes, and other design considerations involved in constructing new PPFA healthcare facilities." ECF No. 391 at 83. |
| Appx.005190-5193 | Email from Sueyoshi to Affil COOs; Affil-PSDs; Affil Chief Execs; Affil CAPS AB; Affil Medical Directors re Direct to Patient Medication Abortion Mail Order Pharmacy Information | **SENSITIVE NON-PARTY INFORMATION**<br><br>Document contains non-party commercial information.<br>Cited exclusively to support the proposition that "PPFA has recently explored options for mail order pharmacies to provide direct-to-patient medication abortion to PPFA's patients." ECF No. 391 at 83. |
| Appx.006142-6145 | Email from McKinney to Sannes re 5th Circuit Ruling re Planned Parenthood in Medicaid | **SENSITIVE RECENT FINANCIAL INFORMATION**<br><br>Document contains financial and grant information.<br>Cited exclusively to support the proposition that "PPGT is working with Planned Parenthood Federation of America (PPFA) legal counsel regarding next steps in the courts and with the new administration in early 2021." ECF No. 391 at 71. |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 8, 2023, a copy of the foregoing was served pursuant to the Court's ECF system.

*/s/ Danny S. Ashby*
Danny S. Ashby