## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| THE STATE OF TEXAS, | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| THE STATE OF LOUISIANA, | § | |
| *ex rel.* ALEX DOE, Relator, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 2:21-CV-00022-Z |
| | § | |
| PLANNED PARENTHOOD | § | |
| FEDERATION OF AMERICA, INC., | § | |
| PLANNED PARENTHOOD GULF | § | |
| COAST, INC., PLANNED | § | |
| PARENTHOOD OF GREATER | § | |
| TEXAS, INC., PLANNED | § | |
| PARENTHOOD SOUTH | § | |
| TEXAS, INC., PLANNED | § | |
| PARENTHOOD CAMERON | § | |
| COUNTY, INC., PLANNED | § | |
| PARENTHOOD SAN ANTONIO, | § | |
| INC., | § | |
| | § | |
| Defendants. | § | |

## RELATOR'S MOTION TO COMPEL PRODUCTION OF DOCUMENT ON DEFENDANTS' PRIVILEGE LOG

Relator respectfully requests that the Court order the PPFA Affiliate

Defendants to submit to the Court for in camera review, and ultimately produce to

1

Plaintiffs, the document Bates-stamped PPGT00015864-PPGT00015871, also listed as document number 1647 on the PPFA Affiliates' Third Privilege Log.[1]:

| Logline | Date | Sender/Author | Recipients | CC | Other Recipients | Privilege Claim | Privilege Description | Privilege Redaction | PRODBEG |
|---|---|---|---|---|---|---|---|---|---|
| 1647 | 9/20/ 2021 | Peter A. Kraus <kraus@waterskraus.com> | Charles Siegel <siegel@waterskraus.com>; Kevin Dubose <kdubose@adjtlaw.com>; Susan Hays <hayslaw@me.com> | "Ecklund, Jennifer R." <jecklund@thompsoncoburn.com>; "Myers, Elizabeth G." <emyers@thompsoncoburn.com>; Alexandra Albright; Caitlyn Silhan <csilhan@waterskraus.com>; Ken Lambrecht; Marcy Greer <mgreer@adjtlaw.com> | Ecklund, Jennifer R. <JEcklund@thompsoncoburn.com>; Ken Lambrecht; Myers, Elizabeth G. <EMYERS@thompsoncoburn.com>; Peter Kraus <kraus@waterskraus.com> | AC;WP | Email chain requesting and providing legal advice of counsel re: potential SB8 related bounty suits | REDACTED | PPGT00015864 |

Relator previously raised this document in Relator's Memorandum in Support of State of Texas's Motion to Compel Production of Documents on Defendants' Privilege Log (Dkt. 370). The Court denied the State of Texas's Motion to Compel (Dkt. 354) but the Order did not address the document at issue in this Motion and in Relator's previous brief memorandum. *See* Dkt. 376.

## BACKGROUND

Affiliate Defendants' privilege log references SB8 litigation, and the Affiliate Defendants' abortion clinic entities were in fact involved in a lawsuit filed in Travis County District Court to block enforcement of the Texas Heartbeat Act (Senate Bill 8 from the Legislature's 2021 session). The Affiliate Defendants' abortion clinics along with PPFA filed the lawsuit on September 2, 2021 against Texas Right to Life (TRTL)

---

[1] The produced, redacted document is filed as Exhibit A to this motion. The document is labeled AEO but after conferring, counsel for Affiliate Defendants agreed to downgrade the designation of this document to public.

and one of its employees. *See* Ex. B. The Texas Planned Parenthood abortion clinics were represented in the lawsuit by the Kaplan Law Firm PLLC and PPFA Attorneys Julie Murray, Richard Muniz, and Sarah McDougall. Waters & Kraus LLP additionally represented PPGT's abortion clinic, Planned Parenthood of Greater Texas Surgical Health Services (PPGTSHS). *Id.* Waters & Kraus later withdrew from representation of PPGTSHS in that matter on September 15, 2021. *See* Dkt. 372 at 3-4.

In addition to the Planned Parenthood clinics' lawsuit, TRTL was also sued in 13 other lawsuits filed in late August and early September 2021 which also challenged the Heartbeat Act. The plaintiffs in those lawsuits were represented by Thompson Coburn LLP lawyers Jennifer Ecklund and Elizabeth Myers.[2] TRTL was represented by Relator's counsel and Mitchell Law PLLC in all 14 lawsuits. On September 11, 2021, TRTL filed a motion to have the Planned Parenthood abortion clinics' case, along with the 13 others, transferred to an MDL pretrial court.[3] On September 13, Affiliate Defendants' abortion clinics filed an opposition to that motion. *See* Ex. C. In that opposition, the Planned Parenthood clinics contended that transfer to the MDL court along with the other cases was inappropriate because the Planned Parenthood case was "not related to the others." Ex. C at 7-10. Alexander

---

[2] *See* Mot. Transfer to Multidistrict Litigation Pretrial Court at Tab 1, *In re: Tex. Heartbeat Act Litig.*, No. 21-0782 (Tex. Multidistrict Litigation Panel filed Sept. 13, 2021), *available at* https://search.txcourts.gov/SearchMedia.aspx?Media VersionID=eacd68d9-1d2e-4f34-960f-fb0c3c7b565e&coa=cossup&DT=BRIEFS& MediaID=0a2bea7c-b350-4150-bda6-11936d00e527.

[3] *Id.* at 14.

Dubose & Jefferson LLP lawyers Kevin Dubose, Alexandra Albright, and Marcy Greer later appeared in the MDL transfer matter on September 24 when the other plaintiffs filed their opposition to transfer.[4] The transfer was not granted until October 14, 2021.[5] Susan Hays is a lawyer but never represented any of the plaintiffs in any of the SB8 lawsuits, including the Planned Parenthood clinics. *See* Dkt. 372 at 4. There were never any SB8 enforcement or so-called "bounty lawsuits" filed against Affiliate Defendants' abortion clinics, nor had TRTL ever threatened to sue Planned Parenthood.

The document at issue was originally produced by PPGT, but later clawed back and re-produced with redactions. The few portions of the document that are redacted are the relevant portions. *See* Ex. A at PPGT00015867, PPGT00015869. Affiliate Defendants claim this document is privileged because it contains privileged information related to SB8 litigation. Even if that communication were privileged (it is not), that matter is not responsive to any of Plaintiffs' discovery requests. That this document is logged as privileged—and not simply non-responsive—means it must contain relevant information to Plaintiffs' claims. Yet, the redacted version does not include any relevant information. The relevant statement(s) that first prompted

---

[4] *See* Pls.' Opp. to Mot. to Transfer to MDL, *In re: Tex. Heartbeat Litig.*, (Tex. Multidistrict Litigation Panel filed Sept. 24, 2021), *available at* https://search.txcourts.gov/SearchMedia.aspx?MediaVersionID=6c909f80-4ef4-42e3-b9fd-3535c147ba98&coa=cossup&DT=BRIEFS&MediaID=ecd9b9cb-0844-4cb6-80f0-49a3631572a1.

[5] Order Granting Mot. to Transfer, *In re: Tex. Heartbeat Litig.*, (Tex. Multidistrict Litigation Panel Oct. 14, 2021), *available at* https://search.txcourts.gov/SearchMedia.aspx?MediaVersionID=c299fbcd-6673-4cac-a701-f1f9fa59b5f9&coa=cossup&DT=DISPOSITION&MediaID=ea2a3a57-2da9-4ca1-90c0-ee79106bf88a.

PPGT to produce this document must be contained in the (improperly) redacted portions of the document. Plaintiffs objected to Affiliate Defendants' assertion of privilege over this document, but Affiliate Defendants refused to re-produce the parts of this document that are obviously relevant.

Texas filed a motion to compel production of documents Defendants were asserting privilege over, including this document. Relator filed a memorandum supporting compelled production of this document. Dkt. 370. But the Court, without addressing this particular document, denied Texas's motion because it said that Texas did not explain why Defendants' assertion of work-product privilege did not apply. Dkt. 376. Additionally, the Court's order discussed only Defendants' assertions of privilege over communications between PPFA attorneys and the Affiliate Defendants and communications involving Planned Parenthood Texas Votes. *Id.* It did not address whether communications between the parties to the communication at issue here—which does not involve PPFA attorneys or PPTV—would be protected under attorney-client or work-product privilege. *Id.* Before filing this motion, Relator's counsel conferred again with Defendants' counsel about this document and Defendants are opposed to this motion.

## LEGAL STANDARD

A party is entitled to discovery regarding any non-privileged matter that is relevant to any party's claim or defense or that appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b). While this doctrine does have "ultimate and necessary boundaries," the district court has broad discretion over

5

discovery matters. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Attorney-client privilege "is the oldest of the privileges for confidential communication known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). But it applies "only where necessary to achieve its purposes." *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997). The party claiming the attorney-client privilege bears "[t]he burden of demonstrating [its] applicability." *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985). The attorney-client privilege protects confidential communications between an attorney and his or her client made "for the purpose of providing or procuring legal advice or services." *United States v. Robinson*, 121 F.3d 971, 874 (5th Cir. 1997). The one asserting attorney-client privilege "must prove: (1) that he made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." *Id.* 121 F.3d at 974. Without these necessary requirements, the interests of discovery and uncovering admissible evidence control, rather than an asserted privilege.

The work-product doctrine protects from discovery materials prepared by an attorney in anticipation of litigation. Fed. R. Civ. P. 26(b)(3); *In re Grand Jury Proceedings*, 601 F.2d 162, 171 (5th Cir.1979). "[T]he work product doctrine insulates a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements from an opposing counsel's inquiries." *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991). Like the attorney-client privilege, "[t]he burden of establishing that a document is work product is on

the party who asserts the claim." *Hodges, Grant & Kaufmann v. U.S. Gov't, Dept. of the Treasury, I.R.S.*, 768 F.2d 719, 721 (5th Cir. 1985). The party who asserts work-product protection must establish the following elements: (1) the materials sought are documents or tangible things; (2) the materials sought were prepared in anticipation of litigation or for trial; (3) the materials were prepared by or for a party's representative; (4) if the party seeks to show that the material is opinion work product, that party must show that the material contains the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party. *Id.*

## ARGUMENT

### A. The document may not be withheld under attorney-client privilege.

This document cannot be withheld under attorney-client privilege because it was sent and/or received by attorneys who did not represent PPGT or its other entities at the time of the communications—September 19-20, 2021. Waters & Kraus withdrew as counsel for PPGTSHS before the date of the email chain at issue in the Texas state court proceedings challenging SB8 and never represented PPGT, PPST, or PPGC in those proceedings. *See* Ex. B, C. But even if Waters & Kraus represented PPGT or PPGTSHS on other matters, *see* Dkt. 372 at 4, attorneys Jennifer Ecklund, Elizabeth Myers, Alexandra Albright, Kevin Dubose, Susan Hays, and Marcy Greer never represented any Planned Parenthood entity in the SB8 matter; rather, they were representing other "plaintiffs challenging SB8 in Texas state court." Dkt. 372 at 4. They were not "jointly involved" in litigation, Dkt. 372 at 6, and such an assertion

7

now would mean that Planned Parenthood untruthfully asserted to the Multidistrict Litigation Panel on September 13, 2021 that the other plaintiffs' case were "unrelated" to theirs. *See* Ex. C at 7-10. Defendants did not demonstrate that those other attorneys listed on the email communications had an attorney-client relationship with any Planned Parenthood entity at the time of the subject email communications. The mere fact that a person is an attorney does not create an attorney-client relationship and the related privilege.

Moreover, any communications or statements made by Mr. Lambrecht, CEO of PPGT and PPGTSHS, in this document that do not seek his attorneys' legal advice would not be privileged, even if other parts of the document are. *See* Ex. A at PPGT00015867. Mr. Lambrecht could not be seeking legal advice related to SB8 from lawyers who do not represent him, nor would such advice be responsive to Plaintiffs' requests in this case in any event. Thus, there is reason to believe that Mr. Lambrecht's email, at minimum, would not be privileged and is relevant to this case. The Court could therefore order disclosure of only non-privileged portions of the document, even if it finds that some portions are covered by the attorney-client privilege.

## B. The document may not be withheld as attorney work product or under the common-interest doctrine.

This document should also not be protected under the work-product doctrine. *See Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S.*, 768 F.2d 719, 721 (5th Cir. 1985) (laying out the boundaries of work-product privilege). Waters & Kraus withdrew from representing PPGTSHS in the SB8 litigation prior to these

emails and never represented PPGT, PPST, or PPGC, and Affiliate Defendants have not shown that the other parties presented impressions or opinions on the ongoing litigation that would create the work-product protections for the redacted portions. Defendants also did not address why any statements made by Mr. Lambrecht in the email exchange with attorneys who did not represent his companies warranted work-product protection.

Even if work-product protections did apply, Relator's counsel believes that this document is highly relevant to the issues in this case because Affiliate Defendants indicated that this document is responsive to Plaintiffs' requests even though Plaintiffs did not request materials related to SB8, and there is no other way for Relator's counsel to obtain this information. Fed. R. Civ. P. 26(b)(3) (documents otherwise protected by the work-product doctrine shall be produced upon a "showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means."). Further, Defendants should at minimum be required to produce portions of the document that are not work product, such as any statements or communications made by Mr. Lambrecht, a non-lawyer. *See* Ex. A at PPGT00015867.

Affiliate Defendants also may not rely on the common-interest doctrine. The Court previously applied the doctrine to communications between Texas and the qui tam Relator, *see* Dkt. 250, though it appears that the Fifth Circuit may have only applied the common-interest rule to co-defendants and potential co-defendants, and

Defendants' abortion clinics in the SB8 litigation were plaintiffs. *BCR Safeguard Holding, L.L.C. v. Morgan Stanley Real Estate Advisor, Inc.*, 614 Fed. Appx. 690, 703-04 (5th Cir. 2015).

Regardless, it is "unsettled" in the Fifth Circuit whether "the federal common law common interest doctrine extends to communications between counsel for these plaintiffs *in separate actions*…." *Windsor v. Olson*, 2019 WL 77228, at *10 (N.D. Tex. 2019) (emphasis added). The subject communications were between attorneys who no longer represented Planned Parenthood entities, and other parties or attorneys who never represented Planned Parenthood entities, but represented others in *separate lawsuits* that the Planned Parenthood abortion clinics contended at this time were "unrelated" to theirs. Ex. C. at 7-10. Defendants cannot argue now that their interests were so aligned with the other plaintiffs in different SB8 litigation that those communications are protected or that they had any expectation of protection because at the time they were made, Planned Parenthood apparently believed (and told the MDL panel) the opposite. *See* Ex. C. In addition, because the common-interest rule— as well as other privilege and work-product rules— are "obstacle[s] to truthseeking," the Fifth Circuit holds that such rules must "be construed narrowly." *In re Santa Fe*, 272 F.3d at 710 (citing cases).

## CONCLUSION

Relator respectfully requests that the Court review document Bates-stamped PPGT00015864-PPGT00015871 in camera and order immediate production of the document, or at minimum, any non-privileged portions of the document.

Respectfully submitted.

/s/ Heather Gebelin Hacker
Heather Gebelin Hacker
Texas Bar No. 24103325
Andrew B. Stephens
Texas Bar No. 24079396
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
(512) 399-3022
heather@hackerstephens.com
andrew@hackerstephens.com

**Attorneys For Relator**

11

**CERTIFICATE OF CONFERENCE**

On February 3, 2023, in accordance with Local Rule 7.1(b), the undersigned certifies that Relator's counsel conferred with counsel for Defendants and for Texas regarding the relief requested in this motion. Counsel for Defendants stated that they oppose the relief requested. Texas is unopposed.

/s/ Heather Gebelin Hacker
Heather Gebelin Hacker

**CERTIFICATE OF SERVICE**

I hereby certify that on February 17, 2023, this document was electronically filed and served via the Court's CM/ECF system.

/s/ Heather Gebelin Hacker
Heather Gebelin Hacker

Exhibit A

| | |
|---|---|
| **From:** | Peter A. Kraus <kraus@waterskraus.com> |
| **To:** | Kevin Dubose; Susan Hays; Charles Siegel |
| **CC:** | Myers, Elizabeth G.; Lambrecht, Ken; Alexandra Albright; Ecklund, Jennifer R.; Marcy Greer; Caitlyn Silhan |
| **Sent:** | 9/20/2021 2:00:11 PM |
| **Subject:** | [BULK] Re: Here we go! Maybe…. |
| **Importance:** | Low |

**EXTERNAL:** This email originated outside of Planned Parenthood of Greater Texas. **DO NOT CLICK** links or attachments unless you recognize the sender and know the content is safe.

Me too.

**waters**kraus

**Peter A. Kraus  | Partner**
3141 Hood Street, Suite 700 | Dallas, TX 75219
Toll Free 800-226-9880  | Phone 214-357-6244
Fax 214-357-7252
kraus@waterskraus.com | www.waterskraus.com.

_____

**From:** Kevin Dubose <kdubose@adjtlaw.com>
**Sent:** Monday, September 20, 2021 1:59:32 PM
**To:** Susan Hays <hayslaw@me.com>; Charles Siegel <siegel@waterskraus.com>
**Cc:** Peter A. Kraus <kraus@waterskraus.com>; Myers, Elizabeth G. <EMYERS@thompsoncoburn.com>; Lambrecht, Ken <Ken.Lambrecht@ppgt.org>; Alexandra Albright <Aalbright@adjtlaw.com>; Ecklund, Jennifer R. <JEcklund@thompsoncoburn.com>; Marcy Greer <mgreer@adjtlaw.com>; Caitlyn Silhan <csilhan@waterskraus.com>
**Subject:** RE: Here we go! Maybe….

| [CAUTION]: External Email |
|---|

Works for me.

Kevin Dubose |
Direct: 713.523.0667 | Mobile 713.820.3535
Alexander Dubose & Jefferson LLP | Houston Office
www.adjtlaw.com



IMPORTANT: This message from the law firm Alexander Dubose & Jefferson LLP is privileged, confidential, and exempt from disclosure under applicable law. If you are not the intended recipient or authorized to act on his/her/its behalf: (1) you may not disclose or use this message or its contents; and (2) you are requested to delete this message

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION

**From:** Susan Hays <hayslaw@me.com>
**Sent:** Monday, September 20, 2021 1:35 PM
**To:** Charles Siegel <siegel@waterskraus.com>
**Cc:** Peter Kraus <kraus@waterskraus.com>; Myers, Elizabeth G. <EMYERS@thompsoncoburn.com>; Lambrecht, Ken <Ken.Lambrecht@ppgt.org>; Alexandra Albright <Aalbright@adjtlaw.com>; Ecklund, Jennifer R. <JEcklund@thompsoncoburn.com>; Kevin Dubose <kdubose@adjtlaw.com>; Marcy Greer <mgreer@adjtlaw.com>; Caitlyn Silhan <csilhan@waterskraus.com>
**Subject:** Re: Here we go! Maybe….

2:30 pm tomorrow?


On Sep 20, 2021, at 1:31 PM, Charles Siegel <siegel@waterskraus.com> wrote:

Same here.

<image001.jpg>
**Charles S. Siegel | Partner**
3141 Hood Street, Suite 700 | Dallas, TX 75219
Toll Free 800-226-9880 | Phone 214-357-6244 | Fax 214-357-7252
www.waterskraus.com


**Charles Siegel | Partner**
3141 Hood Street, Suite 700 | Dallas, TX 75219
Toll Free **800-226-9880** | Phone 214-357-6244
**Fax 214-357-7252**
**siegel@waterskraus.com** | **www.waterskraus.com.**
**From:** Peter A. Kraus <kraus@waterskraus.com>
**Sent:** Monday, September 20, 2021 1:25 PM
**To:** Myers, Elizabeth G. <EMYERS@thompsoncoburn.com>; Susan Hays <hayslaw@me.com>; Charles Siegel <siegel@waterskraus.com>
**Cc:** Lambrecht, Ken <Ken.Lambrecht@ppgt.org>; Alexandra Albright <Aalbright@adjtlaw.com>; Ecklund, Jennifer R. <JEcklund@thompsoncoburn.com>; Kevin Dubose <kdubose@adjtlaw.com>; Marcy Greer <mgreer@adjtlaw.com>; Caitlyn Silhan <csilhan@waterskraus.com>
**Subject:** Re: Here we go! Maybe….

Tomorrow is better than today for me.

**Peter A. Kraus  | Partner**
3141 Hood Street, Suite 700 | Dallas, TX 75219
Toll Free **800-226-9880** | Phone 214-357-6244
**Fax 214-357-7252**
**kraus@waterskraus.com** | **www.waterskraus.com.**

**From:** Myers, Elizabeth G. <EMYERS@thompsoncoburn.com>
**Sent:** Monday, September 20, 2021 12:48:10 PM
**To:** Susan Hays <hayslaw@me.com>; Charles Siegel <siegel@waterskraus.com>
**Cc:** Lambrecht, Ken <Ken.Lambrecht@ppgt.org>; Alexandra Albright <Aalbright@adjtlaw.com>; Peter A. Kraus <kraus@waterskraus.com>; Ecklund, Jennifer R. <JEcklund@thompsoncoburn.com>; Kevin Dubose <kdubose@adjtlaw.com>; Marcy Greer <mgreer@adjtlaw.com>; Caitlyn Silhan <csilhan@waterskraus.com>
**Subject:** RE: Here we go! Maybe….

I'm tied up in a hearing for most of the afternoon today, but can make something tomorrow work.

**Elizabeth G. Myers**
emyers@thompsoncoburn.com
P: 972 629 7111
F: 972 629 7171

**Thompson Coburn LLP**
2100 Ross Avenue Suite 3200
Dallas, TX 75201
www.thompsoncoburn.com

**From:** Susan Hays <hayslaw@me.com>
**Sent:** Monday, September 20, 2021 12:41 PM
**To:** Charles Siegel <siegel@waterskraus.com>
**Cc:** Lambrecht, Ken <Ken.Lambrecht@ppgt.org>; Alexandra Albright <Aalbright@adjtlaw.com>; Myers, Elizabeth G. <EMYERS@thompsoncoburn.com>; Peter Kraus <kraus@waterskraus.com>; Ecklund, Jennifer R. <JEcklund@thompsoncoburn.com>; Kevin Dubose <kdubose@adjtlaw.com>; Marcy Greer <mgreer@adjtlaw.com>; Caitlyn Silhan <csilhan@waterskraus.com>
**Subject:** Re: Here we go! Maybe....

---
**RECEIVED FROM EXTERNAL SENDER - USE CAUTION**
---

Sure.  Shall we set up a Zoom?  (I'm traveling in the morning but can make this afternoon work or tomorrow afternoon)

Susan Hays
Law Office of Susan Hays, PC
P.O. Box 41647
Austin, Texas 78704
(214) 557-4819
(214) 432-8273 (fax)
hayslaw@me.com

On Sep 20, 2021, at 12:29 PM, Charles Siegel <siegel@waterskraus.com> wrote:

Would you all like to discuss further over the phone?

<image001.jpg>
**Charles S. Siegel | Partner**
3141 Hood Street, Suite 700 | Dallas, TX 75219

Toll Free 800-226-9880 | Phone 214-357-6244 | Fax 214-357-7252
www.waterskraus.com

**Charles Siegel | Partner**
3141 Hood Street, Suite 700 | Dallas, TX 75219
Toll Free **800-226-9880** | Phone 214-357-6244
**Fax 214-357-7252**
siegel@waterskraus.com | www.waterskraus.com

**From:** Susan Hays <hayslaw@me.com>
**Sent:** Saturday, September 18, 2021 11:39 PM

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION

**To:** Lambrecht, Ken <Ken.Lambrecht@ppgt.org>
**Cc:** Alexandra Albright <Aalbright@adjtlaw.com>; Myers, Elizabeth G. <EMYERS@thompsoncoburn.com>; Peter A. Kraus <kraus@waterskraus.com>; Charles Siegel <siegel@waterskraus.com>; Ecklund, Jennifer R. <JEcklund@thompsoncoburn.com>; Kevin Dubose <kdubose@adjtlaw.com>; Marcy Greer <mgreer@adjtlaw.com>; Caitlyn Silhan <csilhan@waterskraus.com>
**Subject:** Re: Here we go! Maybe....

[CAUTION]: External Email

> ### Redacted - Privileged

—Susan

Sent from my iPad

On Sep 18, 2021, at 10:06 PM, Lambrecht, Ken <Ken.Lambrecht@ppgt.org> wrote:

> # Redacted - Privileged

Thank you all for your efforts and counsel.

Sent from my iPhone

On Sep 18, 2021, at 9:46 PM, Alexandra Albright <Aalbright@adjtlaw.com> wrote:

EXTERNAL: This email originated outside of Planned Parenthood of Greater Texas. **DO NOT CLICK** links or attachments unless you recognize the sender and know the content is safe.

New York Times just now  looks Like RTL is trying to hold off the troops  "you got 4 years to sue.  It's a stunt."

Texas Right to Life, an anti-abortion group that had been seeking tips on any doctors who might be violating the new law, said in a statement that it was "looking into this claim but we are dubious that this is just a legal stunt."  "The abortion industry has struck out on their 16 previous attempts to stop this law from saving lives so far and this may be another attempt," the group said.  "However, there is a four-year statute of limitations for any violations and the Pro-Life movement is dedicated to ensuring that the Texas Heartbeat Act is fully enforced."

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION

Alex Wilson Albright
Alexander Dubose & Jefferson
AAlbright@adjtlaw.com

---

**From:** Alexandra Albright <Aalbright@adjtlaw.com>
**Sent:** Saturday, September 18, 2021 6:34:51 PM
**To:** Myers, Elizabeth G. <EMYERS@thompsoncoburn.com>; Peter A. Kraus <kraus@waterskraus.com>
**Cc:** Charles Siegel <siegel@waterskraus.com>; Ecklund, Jennifer R. <JEcklund@thompsoncoburn.com>; Kevin Dubose <kdubose@adjtlaw.com>; Marcy Greer <mgreer@adjtlaw.com>; Susan Hays <hayslaw@me.com>; Lambrecht, Ken <Ken.Lambrecht@ppgt.org>; Caitlyn Silhan <csilhan@waterskraus.com>
**Subject:** Re: Here we go! Maybe….

I agree re Mitchell.

 Every county has electronic filing now I think.  I'm betting on zealots by noon Monday bc they don't know about electronic filing….  They will walk it to the courthouse. Then scan.

Alex Wilson Albright
Alexander Dubose & Jefferson
AAlbright@adjtlaw.com

---

**From:** Myers, Elizabeth G. <EMYERS@thompsoncoburn.com>
**Sent:** Saturday, September 18, 2021 6:21:49 PM
**To:** Peter A. Kraus <kraus@waterskraus.com>
**Cc:** Charles Siegel <siegel@waterskraus.com>; Alexandra Albright <Aalbright@adjtlaw.com>; Ecklund, Jennifer R. <JEcklund@thompsoncoburn.com>; Kevin Dubose <kdubose@adjtlaw.com>; Marcy Greer <mgreer@adjtlaw.com>; Susan Hays <hayslaw@me.com>; Lambrecht, Ken <Ken.Lambrecht@ppgt.org>; Caitlyn Silhan <csilhan@waterskraus.com>
**Subject:** Re: Here we go! Maybe….

It won't be his people.  Until other doctors start doing the same.  But someone will sue him.

Sent from my iPhone

On Sep 18, 2021, at 6:19 PM, Peter A. Kraus <kraus@waterskraus.com> wrote:

---

| RECEIVED FROM EXTERNAL SENDER - USE CAUTION |
| --- |

---

My thought is he will try to keep his people from suing.

Get Outlook for iOS

**Peter A. Kraus | Partner**
3141 Hood Street, Suite 700 | Dallas, TX 75219
Toll Free **800-226-9880** | Phone 214-357-6244
**Fax 214-357-7252**
kraus@waterskraus.com | www.waterskraus.com.

---

**From:** Charles Siegel <siegel@waterskraus.com>
**Sent:** Saturday, September 18, 2021 5:02:39 PM
**To:** Alexandra Albright <Aalbright@adjtlaw.com>; Myers, Elizabeth G. <emyers@thompsoncoburn.com>; Ecklund, Jennifer R. <JEcklund@thompsoncoburn.com>; Kevin Dubose <kdubose@adjtlaw.com>; Marcy Greer <mgreer@adjtlaw.com>; Susan Hays <hayslaw@me.com>; Lambrecht, Ken <Ken.Lambrecht@ppgt.org>; Caitlyn

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION

Silhan <csilhan@waterskraus.com>; Peter A. Kraus <kraus@waterskraus.com>
**Subject:** RE: Here we go! Maybe….

Depends if they have electronic filing in Hockley/Smith/Coryell/etc. counties. If so, anytime now. If not, Monday morning.

# Redacted - Privileged

<image001.jpg>

**Charles Siegel | Partner**
3141 Hood Street, Suite 700 | Dallas, TX 75219
Toll Free 800-226-9880 | Phone 214-357-6244
Fax 214-357-7252
siegel@waterskraus.com | www.waterskraus.com.

**From:** Alexandra Albright <Aalbright@adjtlaw.com>
**Sent:** Saturday, September 18, 2021 5:57 PM
**To:** Charles Siegel <siegel@waterskraus.com>; Myers, Elizabeth G. <emyers@thompsoncoburn.com>; Ecklund, Jennifer R. <JEcklund@thompsoncoburn.com>; Kevin Dubose <kdubose@adjtlaw.com>; Marcy Greer <mgreer@adjtlaw.com>; Susan Hays <hayslaw@me.com>; Lambrecht, Ken <Ken.Lambrecht@ppgt.org>; Caitlyn Silhan <csilhan@waterskraus.com>; Peter A. Kraus <kraus@waterskraus.com>
**Subject:** Re: Here we go! Maybe….

[CAUTION]: External Email

Take bets?

Alex Wilson Albright
Alexander Dubose & Jefferson
AAlbright@adjtlaw.com

---

**From:** Charles Siegel <siegel@waterskraus.com>
**Sent:** Saturday, September 18, 2021 5:52:09 PM
**To:** Alexandra Albright <Aalbright@adjtlaw.com>; Myers, Elizabeth G. <emyers@thompsoncoburn.com>; Ecklund, Jennifer R. <JEcklund@thompsoncoburn.com>; Kevin Dubose <kdubose@adjtlaw.com>; Marcy Greer <mgreer@adjtlaw.com>; Susan Hays <hayslaw@me.com>; Lambrecht, Ken <Ken.Lambrecht@ppgt.org>; Caitlyn Silhan <csilhan@waterskraus.com>; Peter A. Kraus <kraus@waterskraus.com>
**Subject:** RE: Here we go! Maybe….

Wonderful. A true hero. How long until he's sued?

<image001.jpg>

**Charles Siegel | Partner**
3141 Hood Street, Suite 700 | Dallas, TX 75219
Toll Free 800-226-9880 | Phone 214-357-6244
Fax 214-357-7252
siegel@waterskraus.com | www.waterskraus.com.

**From:** Alexandra Albright <Aalbright@adjtlaw.com>

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION

**Sent:** Saturday, September 18, 2021 5:20 PM
**To:** Myers, Elizabeth G. <emyers@thompsoncoburn.com>; Ecklund, Jennifer R. <JEcklund@thompsoncoburn.com>; Kevin Dubose <kdubose@adjtlaw.com>; Marcy Greer <mgreer@adjtlaw.com>; Susan Hays <hayslaw@me.com>; Lambrecht, Ken <Ken.Lambrecht@ppgt.org>; Charles Siegel <siegel@waterskraus.com>; Caitlyn Silhan <csilhan@waterskraus.com>; Peter A. Kraus <kraus@waterskraus.com>
**Subject:** RE: Here we go! Maybe....

| [CAUTION]: External Email |
|---|

Here is a PDF.  The link did not work for most.


**From:** Alexandra Albright <Aalbright@adjtlaw.com>
**Sent:** Saturday, September 18, 2021 3:57 PM
**To:** Myers, Elizabeth G. <emyers@thompsoncoburn.com>; Ecklund, Jennifer R. <JEcklund@thompsoncoburn.com>; Kevin Dubose <kdubose@adjtlaw.com>; Marcy Greer <mgreer@adjtlaw.com>; Susan Hays <hayslaw@me.com>
**Subject:** Here we go! Maybe....

 I just landed. Haven't finished article.

Opinion | Why I violated Texas's extreme abortion ban - The Washington Post


https://apple.news/ALwegPn4SR2Sr5A2Rr5eJEg


Alex Wilson Albright
Alexander Dubose & Jefferson
AAlbright@adjtlaw.com
This electronic message contains information from WATERS & KRAUS, LLP that may be privileged and confidential attorney work product or attorney/client communication. The information is intended to be for the use of the addressee only. If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited. If you received this message in error, please notify the sender immediately.

Malicious phishing attempts continue to increase. Please be aware that scammers target firms by spoofing email domains and other sophisticated tactics. Our banking information rarely changes. If you receive a request to change wiring information associated with our firm, we request that you independently verify by calling a known contact within our firm or independently emailing a member of our firm before taking any action. Thank you
This electronic message contains information from WATERS & KRAUS, LLP that may be privileged and confidential attorney work product or attorney/client communication. The information is intended to be for the use of the addressee only. If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited. If you received this message in error, please notify the sender immediately.

Malicious phishing attempts continue to increase. Please be aware that scammers target firms by spoofing email domains and other sophisticated tactics. Our banking information rarely changes. If you receive a request to change wiring information associated with our firm, we request that you independently verify by calling a known contact within our firm or independently emailing a member of our firm before taking any action. Thank you

---

CONFIDENTIALITY NOTE: This message and any attachments are from a law firm. They are solely for the use of the intended recipient and may contain privileged, confidential or other legally protected information. If you are not the intended recipient, please destroy all copies without reading or disclosing their contents and notify the sender of the error by reply e-mail.

<image002.png>
DISCLAIMER:
This e-mail is for the sole use of the intended recipient(s) and contains information belonging to Planned Parenthood of Greater Texas, which is confidential and/or legally privileged. If you are not the intended recipient, you are hereby notified that any disclosure, copying,

distribution or taking of any action in reliance on the contents of this e-mail information is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by reply e-mail and destroy all copies of the original message.

This electronic message contains information from WATERS & KRAUS, LLP that may be privileged and confidential attorney work product or attorney/client communication. The information is intended to be for the use of the addressee only. If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited. If you received this message in error, please notify the sender immediately.

Malicious phishing attempts continue to increase. Please be aware that scammers target firms by spoofing email domains and other sophisticated tactics. Our banking information rarely changes. If you receive a request to change wiring information associated with our firm, we request that you independently verify by calling a known contact within our firm or independently emailing a member of our firm before taking any action. Thank you

---

CONFIDENTIALITY NOTE: This message and any attachments are from a law firm. They are solely for the use of the intended recipient and may contain privileged, confidential or other legally protected information. If you are not the intended recipient, please destroy all copies without reading or disclosing their contents and notify the sender of the error by reply e-mail.

This electronic message contains information from WATERS & KRAUS, LLP that may be privileged and confidential attorney work product or attorney/client communication. The information is intended to be for the use of the addressee only. If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited. If you received this message in error, please notify the sender immediately.

Malicious phishing attempts continue to increase. Please be aware that scammers target firms by spoofing email domains and other sophisticated tactics. Our banking information rarely changes. If you receive a request to change wiring information associated with our firm, we request that you independently verify by calling a known contact within our firm or independently emailing a member of our firm before taking any action. Thank you

This electronic message contains information from WATERS & KRAUS, LLP that may be privileged and confidential attorney work product or attorney/client communication. The information is intended to be for the use of the addressee only. If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited. If you received this message in error, please notify the sender immediately.

Malicious phishing attempts continue to increase. Please be aware that scammers target firms by spoofing email domains and other sophisticated tactics. Our banking information rarely changes. If you receive a request to change wiring information associated with our firm, we request that you independently verify by calling a known contact within our firm or independently emailing a member of our firm before taking any action. Thank you

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION

Exhibit B

CAUSE NO. _____

| | |
|---|---|
| **PLANNED PARENTHOOD OF GREATER TEXAS SURGICAL HEALTH SERVICES,** on behalf of itself, its staff, physicians, and patients; **PLANNED PARENTHOOD SOUTH TEXAS SURGICAL CENTER,** on behalf of itself, its staff, physicians, and patients; **PLANNED PARENTHOOD CENTER FOR CHOICE,** on behalf of itself, its staff, physicians, and patients; **BHAVIK KUMAR, M.D.,** on behalf of himself and his patients, | In the District Court of Travis County, Texas |
| *Plaintiffs,* | Judicial District _____ |
| v. | |
| **TEXAS RIGHT TO LIFE, an organization; JOHN SEAGO; and JANE/JOHN DOES 1– 100,** | |
| *Defendants.* | |

## PLAINTIFFS' ORIGINAL PETITION AND REQUEST FOR DECLARATORY JUDGMENT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND/OR ANTI-SUIT INJUNCTION

1.      On September 1, Texas Senate Bill 8, 87th Leg., Reg. Sess. (Tex. 2021) ("S.B. 8" or "the Act"), took effect, banning abortion at approximately six weeks in pregnancy, a point before many people even know they are pregnant. The law also bars anyone from assisting with abortions prohibited by the Act, or even intending to do so. A copy of S.B. 8 is attached as Exhibit 1.

2.      In so doing, S.B. 8 imposes a "statutory scheme" that "is not only unusual, but unprecedented." *Whole Woman's Health v. Jackson*, No. 21A24, 2021 WL 3910722, at *1 (U.S. Sept. 1, 2021) (Roberts, C.J., dissenting). It deputizes private citizens to enforce the law, allowing "any person" *other than government officials* to bring a civil lawsuit against anyone who provides

an abortion in violation of the Act, "aids or abets" such an abortion, or intends to do these things. S.B. 8 states that if a claimant prevails, the court shall award (1) "injunctive relief sufficient to prevent" future violations; (2) "statutory damages" of *at least* $10,000 per abortion; and (3) costs and attorney's fees. In effect, S.B. 8 places a bounty on people who provide or aid abortions, inviting random strangers to sue them.

3.    At every turn, S.B. 8 purports to replace normal civil-litigation rules and clearly established constitutional rules with distorted versions designed to maximize the harassing nature of the lawsuits and to make them impossible to fairly defend against. As former Texas judges and legal scholars have observed, S.B. 8 "weaponizes the judicial system by exempting the newly created cause of action from the normal guardrails that protect Texans from abusive lawsuits and provide all litigants a fair and efficient process in our state courts."[1]

4.    For example, S.B. 8 provides that persons sued under the Act can be forced into any Texas county to defend themselves, so long as at least one vigilante residing there is willing to bring suit (even if that suit is frivolous). And it prohibits transfer of the cases to any other venue without the parties' joint agreement. S.B. 8 also states that a person sued under the Act may not point to the fact that the claimant already lost an S.B. 8 lawsuit against someone else on equally applicable grounds, or that a court order permitted an abortion provider's conduct at the time when it occurred, if that court order was later overruled.

5.    If abortion providers and others subject to its prohibitions are sued under S.B. 8, it forces them to spend massive amounts of time and money to defend themselves across the state in lawsuits for which the deck is heavily stacked against them. Even if abortion providers and others

---

[1] Letter from Texas attorneys to Dade Phelan, Speaker of the Tex. House of Representatives (Apr. 28, 2021), *available at* https://npr.brightspotcdn.com/d5/51/a2eac 3664529a017ade7826f3a69/attorney-letter-in-opposition-to-hb-1515-sb-8-april-28-2021-1.pdf.

sued in S.B. 8 lawsuits ultimately prevail in them—as they should in every case if only they could mount a fair defense—the lawsuits against them will still accomplish S.B. 8's goal to harass abortion providers and others critical to a patient's support network and to chill the exercise of constitutional rights. The suits may also bankrupt those who are sued in the process, since S.B. 8 states they cannot recover their attorney's fees and costs against the vigilante.

6.      Because S.B. 8 does not, in fact, permit a fair defense, abortion providers and others targeted by the law are now exposed to the risk of ruinous liability and injunctions if they provide services banned by S.B. 8, get sued, and lose in any Texas courts. Other aspects of S.B. 8 are likewise targeted to chill the exercise of constitutional rights while systematically isolating abortion patients (including even the small number of patients whose abortions are permissible under S.B. 8). Unlike typical aiding-and-abetting provisions, S.B. 8 targets those it describes as aiders or abettors even if they did not know or have any reason to know that the abortion they assisted would be deemed unlawful under S.B. 8. A person weighing whether their activity might prompt a costly S.B. 8 lawsuit for aiding and abetting must also consider the fact that the law invites enforcement by *anyone*, no matter how hostile or untrained in the law.

7.      As a result, someone who accompanies her sister to an abortion clinic and pays for the abortion, or a sexual assault counselor who calls an abortion clinic on behalf of a patient, is at risk of being dragged into a court across the state. And although abortion patients cannot be sued under S.B. 8, the law provides any abusive partner, controlling parent, or disapproving neighbor with a ready tool to go after the patient's doctor for a court order to block that patient's abortion choice.

8.      Separate from the six-week abortion ban and its enforcement mechanism, S.B. 8 also imposes a draconian one-way fee-shifting penalty that is designed to deter *any* challenges,

including meritorious challenges, to state and local abortion restrictions in Texas, including this challenge to S.B. 8. Under this deterrence provision, Plaintiffs could be held liable for Defendants' attorney's fees and costs unless they sweep the table by prevailing on every single claim they bring. Defendants could recover fees, for example, if a court dismisses Plaintiffs' claim as moot, or rejects one of two claims pleaded in the alternative, and they could do so even if the challenged abortion restriction is ultimately declared unconstitutional and enjoined. This new fee-shifting provision purports to apply to civil-rights challenges brought in both federal and state court and to any causes of action. To further take aim at Plaintiffs, who are seeking to vindicate their and their patients' civil rights, Plaintiffs' attorneys and their law firms can be held jointly and severally liable for the Defendants' attorney's fees and costs.

9.      As with the six-week ban, S.B. 8 attempts to ensure that state-court proceedings to obtain attorney's fees under this new provision would be hopelessly stacked against abortion providers and others who attempt to vindicate constitutional rights. S.B. 8 provides that the person sued for attorney's fees would be barred from defending on the ground that an earlier court refused to award fees to the claimant, or held the fee penalty unconstitutional.

10.      The transparent purpose of S.B. 8's enforcement scheme is to make it so that abortion providers and people who assist with abortions cannot sue government officials for an injunction to block the law's enforcement. As Defendant John Seago, the legislative director for Texas Right to Life (the largest anti-abortion organization in the state), explained during the legislative proceedings, every six-week ban on abortion adopted by other states "has been enjoined or had at least some negative court action," and "it's because of the [government] enforcement

mechanism[]" provided for in those laws.[2] In adopting S.B. 8, the Legislature believed that it could evade court review by setting vigilantes loose to enforce its unconstitutional abortion ban.

11.     This cynical ploy has temporarily paid off: yesterday S.B. 8 was allowed to take effect, and abortions after six weeks are now banned throughout Texas—something that has not been allowed to occur in any other state of the nation in the decades since *Roe v. Wade*, 410 U.S. 113 (1973).

12.     S.B. 8 is already creating absolute chaos in Texas and inflicting ongoing irreparable harm on Texas abortion providers and Texans in need of abortion services. It is doing so by exposing abortion providers and those who assist them to a constant risk of lawsuits, should anyone file suit claiming they are providing or aiding and abetting banned abortions, or intend to do so. Because of these unacceptable litigation and harassment risks, abortion providers throughout the state have stopped providing abortion after six weeks of pregnancy. Further, some providers have even stopped offering abortion services entirely (restricting patients' access abortion even prior to six weeks).

13.     Moreover, the burdens of this cruel law are falling most heavily on Black, Latinx, and indigenous patients who, because of systemic racism, already encounter substantial barriers to obtaining health care, and face particular challenges and injuries if forced to attempt to seek care out of state or else carry an unwanted pregnancy to term. S.B. 8 is also causing irreparable harm to Plaintiffs, who are Texas abortion providers. Accordingly, Plaintiffs bring this action to challenge S.B. 8 on behalf of themselves; their staff, including physicians; and their patients.

---

[2] Hr'g on S.B. 8 Before the S. Comm. on State Affairs, 87th Leg., Reg. Sess., video at 7:30 45 (Tex. 2021) (statement of John Seago, Leg. Dir. of Tex. Right to Life), *available at* https://tlcsenate.granicus.com/MediaPlayer.php?view_id=49&clip_id=15469.

14.     For all these reasons, Plaintiffs bring claims challenging the six-week ban and its enforcement scheme against organizations and individuals who have been deputized to bring S.B. 8 enforcement claims, and from whom Plaintiffs face a credible threat of enforcement. These Defendants have already begun efforts to enforce this ban, including by announcing their intention to sue abortion providers and others who they believe are violating the ban and by launching a "whistleblower" website recruiting a network of additional enforcers willing to bring such suits, and/or to act as anonymous informants providing evidence of supposed S.B. 8 violations (again to be used in suits enforcing S.B. 8's unconstitutional ban). This petition and TRO request are brought to prevent these Defendants and those in active concert with them from stripping Plaintiffs, their staff, and patients of their constitutional rights, based on real or perceived violations of S.B. 8.

15.     At bottom, the question in this case is whether the Texas Legislature can set about to do exactly what the Texas Constitution forbids. *See Satterfield v. Crown Cork & Seal Co.*, 268 S.W.3d 190, 200 (Tex. Civ. App. 2008) (citing *Shepherd v. San Jacinto Junior Coll. Dist.*, 363 S.W.2d 742, 743 (Tex. 1962); *State v. Brownson*, 61 S.W. 114, 114 (1901)); *see also Terry v. Adams*, 345 U.S. 461, 469–70 (1953) (striking down a Texas law attempting to insulate white-only political primaries from court review because state legislature cannot "do precisely that which the [Constitution] forbids").

16.     The answer to that question must be no. *Satterfield*, 268 S.W.3d at 200. Plaintiffs urgently need this Court to put a stop to Texas's brazen defiance of the rule of law and the rights to which all Texans are entitled.

## PARTIES

### A.    PLAINTIFFS

17.    Plaintiff Planned Parenthood of Greater Texas Surgical Health Services ("PPGT Surgical Health Services") is a Texas not-for-profit corporation headquartered in Dallas. It operates licensed ambulatory surgical centers in Austin, Dallas, and Fort Worth, and licensed abortion facilities in El Paso, Lubbock, and Waco.[3] PPGT Surgical Health Services provides a range of reproductive health services, including medication and procedural abortions. Before S.B. 8 took effect, the vast majority of abortions that PPGT Surgical Health Services provided occurred at a point in pregnancy when a "fetal heartbeat," as defined in S.B. 8, could be detected, and it wishes to continue to provide such abortions if it may legally do so. PPGT Surgical Health Services sues on behalf of itself and its physicians, other staff, and patients.

18.    Plaintiff Planned Parenthood South Texas Surgical Center ("PPST Surgical Center"), is a not-for-profit corporation headquartered in San Antonio. It operates a licensed ambulatory surgical center and two licensed abortion facilities in San Antonio. PPST Surgical Center provides a range of reproductive health services, including—before S.B. 8 took effect— medication and procedural abortions. The vast majority of abortions that it provided occurred at a point in pregnancy when a "fetal heartbeat," as defined in S.B. 8, could be detected. Due to the overwhelming threat of S.B. 8 claims, including unfounded claims solely for the purpose of harassment, PPST Surgical Center is not currently offering abortion services at any gestational age

---

[3] The City of Lubbock recently passed an ordinance prohibiting all abortions in the municipality. That ban is subject to an ongoing legal challenge, and in the meantime, the Lubbock abortion facility is not currently providing abortion. *See Planned Parenthood of Greater Tex. Surgical Health Servs. v. City of Lubbock*, No. 5:21-CV-114-H, 2021 WL 2385110 (N.D. Tex. June 1, 2021) (dismissing case for lack of jurisdiction), *mot. for reconsideration filed* (N.D. Tex. June 29, 2021), ECF No. 51.

because of S.B. 8. However, it wishes to start providing abortions again if it may legally do so and be protected from harassment and ruinous litigation under S.B. 8. PPST Surgical Center sues on behalf of itself and its physicians, other staff, and patients.

19.     Plaintiff Planned Parenthood Center for Choice ("PP Houston"), is a Texas not-for-profit corporation headquartered in Houston. It operates a licensed ambulatory surgical center in Houston and a licensed abortion facility in Stafford. PP Houston provides a range of reproductive health services, including medication and procedural abortions. Before S.B. 8 took effect, the vast majority of abortions that it provided occurred at a point in pregnancy when a "fetal heartbeat," as defined in S.B. 8, could be detected. PP Houston would continue providing such abortions in Texas if it could legally do so and be protected from harassment and ruinous litigation under S.B. 8. PP Houston sues on behalf of itself and its physicians, other staff, and patients.

20.     Plaintiff Bhavik Kumar, M.D., is a board-certified family medicine physician who is licensed to practice medicine in Texas. He serves as a physician at PP Houston, where he provides medication and procedural abortions. Before S.B. 8 took effect, the vast majority of abortions that Dr. Kumar provided occurred at a point in pregnancy when a "fetal heartbeat," as defined in S.B. 8, could be detected. He wishes to continue providing such abortions in Texas if he could legally do so and be protected from harassment and ruinous litigation under S.B. 8. He sues on behalf of himself and his patients.

### B.     DEFENDANTS

21.     Defendant Texas Right to Life ("TRL") is a non-profit organization formed and operating under the laws of the State of Texas with its headquarters located in Bellaire, Texas.[4]

---

[4] TRL is made up of three related entities: the Texas Right to Life Educational Foundation, a 501(c)(3) nonprofit, Texas Right to Life Committee, Inc., a 501(c)(4) nonprofit corporation, and

TRL has been deputized to seek enforcement of S.B. 8 against Plaintiffs for providing prohibited abortions, aiding and abetting such abortions, or intending to do these things. TRL has announced its intention to bring lawsuits under S.B. 8 and launched a "whistleblower" website recruiting other S.B. 8 claimants, as well as "informants" to support S.B. 8 enforcement suits by providing information about Plaintiffs' perceived violations. *See infra* Section III. Plaintiffs face a credible threat that TRL will sue them under S.B. 8 if they perform or assist in the performance of abortions prohibited by the Act. TRL may be served through its registered agent, James J. Graham, at 4500 Bissonnet Street, Suite 305, Bellaire, TX 77401.

22. Defendant John Seago is an individual residing in Travis County, Texas, and serves as the Legislative Director for TRL. Mr. Seago has been deputized to seek enforcement of S.B. 8 against Plaintiffs for providing prohibited abortions, aiding and abetting such abortions, or intending to do these things. On information and belief, Defendant Seago is involved in TRL's recruitment of additional private citizens to enforce S.B. 8, and he has testified to his knowledge of individuals who intend to sue Plaintiffs if they violate S.B. 8. Plaintiffs face a credible threat that he will sue them under S.B. 8 if they perform or assist in the performance of abortions prohibited by the Act. He may be served at his home located at 2205 Marcus Abrams Blvd., Austin, TX 78748-4009.

23. Defendants Jane/John Doe 1–100 ("Doe Defendants") are those individuals or entities who have expressed to other Defendants, whether by words or actions, their intention to enforce S.B. 8 against Plaintiffs. The Doe Defendants have been deputized to seek enforcement of S.B. 8 against Plaintiffs for providing prohibited abortions, aiding and abetting such abortions, or

---

the Texas Right to Life PAC, a general purpose political action committee. All three entities are operated by the same individuals and may be served at the same address.

intending to do these things. Plaintiffs face a credible threat that the Doe Defendants will bring S.B. 8 petitions against Plaintiffs and their staff if they perform or assist in the performance of abortions prohibited by the Act. These individuals may be identified by any of the above-named Defendants. For example, Defendant Seago has provided a sworn statement that he has "personal knowledge that there are several individuals who intend to sue the abortion-Plaintiffs . . . if they defy Senate Bill 8" and that "Texas Right to Life is publicizing the availability of private civil-enforcement lawsuits under Senate Bill 8 through social media and other forms of advertising" and "encouraging individuals to sue abortion providers and abortion funds if they defy the law when it takes effect on September 1, 2021." Decl. of John Seago, *Whole Woman's Health v. Jackson*, No. 1:21-cv-00616-RP (W.D. Tex. Aug. 5, 2021), ECF No. 50-2. These Doe Defendants will be named and served upon their identification.

## JURISDICTION AND VENUE

24.     This Court has jurisdiction over this matter, pursuant to the Texas Uniform Declaratory Judgments Act ("UDJA"), Texas Civil Practice and Remedies Code § 37.001 *et seq*., Texas Government Code §§ 24.007 and 24.008, and Tex. Const. art. 5, § 8.

25.     Venue in Travis County is proper as to each Plaintiff under Tex. Civ. Prac. & Rem. Code §§ 15.002–.003 because (a) Defendant Seago resides in Travis County, and (b) all or a substantial part of the events or omissions giving rise to the claims occurred in Travis County, as described above and herein, including the denial of constitutional rights to Plaintiff PPGT Surgical Health Services, which operates an ambulatory surgical center that provides abortions in Travis County; the denial of constitutional rights to Plaintiffs' patients residing in Travis County or seeking an abortion there; and the ongoing threat of claims brought by persons residing in Travis County against each of the Plaintiffs.

26.     Plaintiffs' request for prospective relief is specifically authorized as a request for a declaratory judgment under the UDJA. An action for a declaratory judgment is neither legal nor equitable but is sui generis—that is, of its own kind. *Tex. Liquor Control Bd. v. Canyon Creek Land Corp.*, 456 S.W.2d 891, 895 (Tex. 1970). Without such declaratory judgment, Plaintiffs have no meaningful remedy for their state-law claims in accordance with Tex. Const. art. I, § 13.

27.     Defendants are proper parties to Plaintiffs' claims under the UDJA because they each have or claim an "interest that would be affected by the declaration[s]" sought by Plaintiffs. Tex. Civ. Prac. & Rem. Code § 37.006(a).

28.     Pursuant to Texas Rule of Civil Procedure 47(c)(5), Plaintiffs state that they seek non-monetary relief only. Plaintiffs' requests for costs and fees should not constitute monetary relief under Rule 47.

## FACTUAL ALLEGATIONS

## I.     ABORTION IN THE UNITED STATES

29.     Legal abortion is one of the safest medical procedures in the United States. A woman's risk of death associated with carrying a pregnancy to term is approximately 14 times higher than that associated with abortion, and every pregnancy-related complication is more common among women giving birth than among those having abortions.[5]

30.     Abortion is also very common: approximately one in four women in the United States has an abortion by age 45.

---

[5] References to "woman" or "women" are meant as shorthand for people who are or may become pregnant. However, people with other gender identities, including transgender men and gender-diverse individuals, may also become pregnant and seek abortion services.

31.     Those seeking an abortion do so for a variety of deeply personal reasons, including familial, medical, and financial ones. Deciding whether to keep or end a pregnancy implicates a person's core religious beliefs, values, and family circumstances.

## II.     Statutory Framework of S.B. 8

### A.     S.B. 8, Section 3: The Six-Week Ban and Liability for Violations

32.     Section 3 of S.B. 8 requires physicians who perform abortions in Texas to first determine whether "a detectable fetal heartbeat" is present. S.B. 8 § 3 (codified at Tex. Health & Safety Code § 171.203(b)); *see id.* (codified at Tex. Health & Safety Code § 171.201(1)) (hereinafter, S.B. 8 § 3 citations are to newly created sections of Tex. Health & Safety Code only). The Act prohibits the physician from providing an abortion after "detect[ing] a fetal heartbeat" or if the physician "failed to perform a test to detect a fetal heartbeat." *Id.* § 171.204(a). S.B. 8 contains no exception for pregnancies that result from rape or incest, or for fetal health conditions that are incompatible with sustained life after birth. The only exception is for a medical emergency. *Id.* §§ 171.204(a), 171.205(a). Sections 7 and 9 of S.B. 8 impose additional reporting requirements on abortions performed because of a medical emergency. S.B. 8 § 7 (adding Tex. Health & Safety Code § 171.008); S.B. 8 § 9 (adding Tex. Health & Safety Code § 245.011(c)).

33.     S.B. 8 defines "fetal heartbeat" as "cardiac activity or the steady and repetitive rhythmic contraction of the fetal heart within the gestational sac." S.B. 8 § 171.201(1). In a typically developing pregnancy, ultrasound can generally detect cardiac activity beginning at approximately six weeks of pregnancy, as measured from the first day of a patient's last menstrual period ("LMP").

34.     S.B. 8 thus prohibits virtually all abortions after approximately six weeks LMP—before many patients even know they are pregnant. Indeed, for patients with regular menstrual periods, six weeks of pregnancy is only two weeks after the patient's first missed period.

35.     A full-term pregnancy is approximately 40 weeks LMP.

36.     The cells that produce the early cardiac activity described in S.B. 8 have not yet formed a "heart." The term "heartbeat" in S.B. 8 thus covers not just a "heartbeat" in the lay sense, but also early cardiac activity—more accurately, electrical impulses—present before full development of the cardiovascular system. Similarly, a developing pregnancy is properly referred to as an "embryo" until approximately ten weeks LMP, when it becomes a "fetus." So, despite S.B. 8's use of the phrase "*fetal* heartbeat," the Act forbids abortion even when cardiac activity is detected in an embryo. *See id.* §§ 171.201(1), 171.201(7), 171.204(a) (emphasis added). Because neither "fetal" nor "heartbeat" is accurate medical terminology at this stage of pregnancy, Plaintiffs refer to the prohibition against providing an abortion after the detection of a "fetal heartbeat" as a "six-week ban."

37.     No embryo is viable at six weeks LMP, or at any other point when cardiac activity can first be detected by ultrasound. Instead, viability is generally understood as the point in pregnancy when a fetus, if born at that time, has a reasonable likelihood of sustained life after birth, with or without artificial support.

38.     Viability generally does not occur until approximately 24 weeks LMP. By prohibiting abortion after approximately six weeks LMP, S.B. 8 bans abortion roughly *four months* before viability.

39.     Although patients generally obtain an abortion as soon as they can, the overwhelming majority of abortions in Texas occur after six weeks of pregnancy. Many patients do not even realize they are pregnant before six weeks LMP—for instance, because they have irregular menstrual periods, or because they mistake the vaginal bleeding that is common in early pregnancy for a period. Even those patients who do confirm a pregnancy before six weeks LMP

13

and decide quickly that they want an abortion often encounter substantial financial and logistical difficulties in obtaining one before six weeks LMP. They must also navigate Texas's onerous legal scheme for abortion. *See, e.g.*, Tex. Health & Safety Code §§ 171.011–.016; Tex. Fam. Code §§ 33.001–.014.

40.    S.B. 8 creates liability for "perform[ing] or induc[ing] an abortion in violation of" the six-week ban. S.B. 8 § 171.208(a)(1).

41.    S.B. 8 also creates liability for "knowingly engag[ing] in conduct that aids or abets the performance or inducement of an abortion" that violates the six-week ban. *Id*. § 171.208(a)(2). Although S.B. 8 does not define what constitutes aiding or abetting, it expressly provides that "paying for or reimbursing the costs of an abortion" is prohibited activity. *Id*. S.B. 8's aiding-and-abetting liability would apply "regardless of whether the person knew or should have known that the abortion would be performed or induced in violation of" S.B. 8. *Id*.

42.    Even if someone does not actually perform a prohibited abortion or aid a prohibited abortion, the Act provides that they can still be sued if they merely intend to do so. *Id*. § 171.208(a)(3)

**B.    S.B. 8, Section 3: Enforcement Actions and Penalties**

43.    S.B. 8 expressly precludes the state or any political subdivision, as well as executive-branch officials and district and county attorneys, from directly enforcing the six-week ban. *Id*. § 171.207(a). Instead, S.B. 8 creates a private, civil enforcement action: "Any person, other than an officer or employee of a state or local governmental entity in this state, may bring a civil action against any person" who performs a prohibited abortion, aids or abets a prohibited abortion, or intends to engage in these activities. *Id.* § 171.208(a).

44.     Besides government officials, the only people not permitted to initiate an S.B. 8 enforcement action are those "who impregnated the abortion patient through an act of rape, sexual assault, incest," or certain other crimes. *Id.* § 171.208(j). However, because the six-week ban itself contains no exception for pregnancies resulting from rape, sexual assault, or incest, anyone *other* than the perpetrator could still sue a clinic, physician, friend, or family member who assists a patient in terminating a pregnancy that resulted from the offense.

45.     S.B. 8 does not permit suits against abortion patients. *Id.* § 171.206(b)(1). But it provides a ready tool for abusive and manipulative partners or family members to try to block a patient's abortion decision. Under S.B. 8, if such individuals know about a patient's plan to obtain an abortion, they could sue the patient's abortion provider, or anyone else who "intends" to assist with that abortion, to try to prevent the patient from accessing care. *Id.* § 171.208(a)(3).

46.     S.B. 8 imposes draconian penalties. Where an S.B. 8 claimant prevails, "the court shall award": (1) "injunctive relief sufficient to prevent" future violations or conduct that aids or abets violations; (2) "statutory damages" to the claimant "in an amount of not less than $10,000 for each abortion" that was provided or aided and abetted; and (3) the claimant's "costs and attorney's fees." *Id.* § 171.208(b). S.B. 8 does not expressly require the claimant to allege or prove any injury to obtain an award.

47.     At every turn, S.B. 8's rules for the enforcement proceedings sharply diverge from those normally applicable to Texas litigants and make it impossible for those sued to fairly defend themselves.

48.     ***Claims by uninjured parties:*** S.B. 8 allows "any person" to bring a claim alleging violation of S.B. 8's prohibitions. *Id.* § 171.208(a). It does not require S.B. 8 claimants to allege or prove injury or damages in order to file suit. It therefore allows the public at large, including

15

politically or economically motivated strangers, to interfere in the personal health decisions of Texans across the state.

49.     ***Statewide venue:*** S.B. 8 also allows claimants to file lawsuits in their home counties and then veto transfer to a more appropriate venue. As a result, because there is effectively no limit on private parties bringing S.B. 8 suits, abortion providers and alleged aiders and abettors could be forced to defend themselves in multiple, simultaneous enforcement proceedings in far-flung courts across the state. *See id.* § 171.210(a)(4) (permitting suit in the claimant's county of residence if "the claimant is a natural person residing in" Texas); *id.* § 171.210(b) (providing that S.B. 8 "action may not be transferred to a different venue without the written consent of all parties"). In contrast, venue in Texas is generally limited to where the events giving rise to a claim took place or where the defendant resides, *see* Tex. Civ. Prac. & Rem. Code § 15.002(a), and a Texas state court may generally transfer venue "[f]or the convenience of the parties and witnesses and in the interest of justice," *id.* § 15.002(b).

50.     ***Draconian fee-shifting in favor of S.B. 8 claimants:*** S.B. 8 provides that in enforcement proceedings, anyone who brings an S.B. 8 claim and prevails is entitled to recover costs and attorney's fees. S.B. 8 § 171.208(b)(3). Meanwhile, abortion providers and other people sued under S.B. 8 cannot be awarded costs or attorney's fees if they prevail, no matter how many times they are sued or the number of courts in which they must defend, irrespective of whether the claims against them on their face make out an S.B. 8 violation, and irrespective of the fact that *every* S.B. 8 claim is barred by binding federal law. *Id.* § 171.208(i).

51.     Moreover, S.B. 8 provides that Plaintiffs, who are seeking declaratory and injunctive relief can be forced to pay Defendants' attorney's fees unless they run the table, prevailing on every claim they make that is covered by S.B. 8's fee-shifting provision. If the Court

16

dismisses a claim, regardless of the reason, or enters judgment in Defendants' favor on that claim, the party defending the abortion restriction is deemed to have "prevail[ed]." S.B. 8 § 4 (adding Tex. Civ. Prac. & Rem. Code § 30.022(b)).

52.     What is more, this "prevailing party" could then seek fees not only against the Plaintiffs, but also against their attorneys and any corresponding law firms. *Id.* § 4 (adding Tex. Civ. Prac. & Rem. Code § 30.022(a)). The clear purpose of this statute is to make it difficult, if not impossible, for abortion providers and others challenging S.B. 8 (or sued under it) to identify counsel.

53.     ***Elimination of defenses:*** S.B. 8 purports to bar people who are sued from raising seven defenses under the Act, including that they believed the law was unconstitutional or that the patient consented to the abortion. *Id.* § 171.208(e)(2), (3). S.B. 8 also states that people who are sued may not rely on non-mutual issue or claim preclusion or rely as a defense on any other "state or federal court decision that is not binding on the court in which the action" was brought. *Id.* § 171.208(e)(4), (5). The clear import of these provisions is to cast a pall on constitutionally protected activity, to force abortion providers and others who assist them to defend themselves over and over again, and to hamstring that defense.

54.     S.B. 8 also purports to override binding federal law when applied in state-court enforcement proceedings. As one example, under S.B. 8, an abortion provider could not rely on the Act's practical effect on abortion access across the state, *id.* § 171.209(d)(2)), even though federal courts adjudicating undue-burden claims regularly do so, *see, e.g.*, *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2312–13 (2016).

55.     Moreover, S.B. 8 directs Texas judges to ignore judgments and injunctions issued by federal courts, for example, by telling Texas courts to refuse to apply non-mutual collateral

estoppel based on such judgments, and by mandating that they ignore whether a federal injunction expressly permitted activity by an abortion provider or other person sued in S.B. 8 proceedings. S.B. 8 § 171.208(e)(4), (5).

56.    ***Threat of retroactive liability:*** S.B. 8 also threatens retroactive liability on potential defendants. It expressly states that defendants may not rely for their defense on court decisions that are later overruled, "*even if that court decision had not been overruled when the defendant engaged in conduct*" challenged under S.B. 8. *Id.* § 171.208(e)(3) (emphasis added). S.B. 8 further eliminates as a defense to its punitive attorney's fee provision the fact that "the court in the underlying action held that any provisions of this section are invalid, unconstitutional, or preempted by federal law, notwithstanding the doctrines of issue or claim preclusion." *Id.* § 4 (adding Tex. Civ. Prac. & Rem. Code § 30.022).

## III.    DEFENDANTS' ENFORCEMENT ACTIONS

57.    Defendant TRL describes itself as "the oldest, largest, and only statewide Pro-Life organization in Texas."[6] Defendants TRL and John Seago, its legislative director, are deputized by the State of Texas to enforce S.B. 8, and they have made it clear that they intend to fulfill this role.

58.    TRL has announced its intention to bring lawsuits under S.B. 8, telling its supporters that, "after the Texas Heartbeat Act takes effect, we're going to sue the abortionists ourselves!"[7] It has solicited funding from the public for its "efforts to defend and enforce the Texas Heartbeat Act."[8]

---

[6] Tex. Right to Life, *Who We Are,* www.texasrighttolife.com/who-we-are/ (lasted visited July 23, 2021).
[7] Jim Graham, *The Abortion Industry Is Suing Texans!*, Tex, Right to Life (July 14, 2021), www.texasrighttolife.com/the-abortion-industry-is-suing-texans/.
[8] *Id.*

59.     In his capacity on behalf of TRL, Defendant Seago has provided a sworn statement that "Texas Right to Life is publicizing the availability of private civil-enforcement lawsuits under Senate Bill 8 through social media and other forms of advertising, and [is] encouraging individuals to sue abortion providers and abortion funds if they defy the law when it takes effect on September 1, 2021." He further testified that he had "personal knowledge" of "several individuals who intend to sue the abortion-Plaintiffs . . . if they defy Senate Bill 8, and those individuals will sue the plaintiffs for violating Senate Bill 8." Exhibit 2 ¶¶ 2, 6, Decl. of John Seago, *Whole Woman's Health v. Jackson*, No. 1:21-cv-00616-RP (W.D. Tex. Aug. 5, 2021), ECF No. 50-2.

60.     Defendant TRL launched a "whistleblower" website to gather information for its own enforcement actions and to recruit additional enforcers. That website, which can be found at www.prolifewhistleblower.com, states: "Any abortion performed in violation of the Texas Heartbeat Act is a criminal offense, and any individual or entity that aids or abets an abortion on a child with a detectable heartbeat in Texas is violating the law as well." Exhibit 3, at 2, Tex. Right to Life, *Help Enforce the Texas Heartbeat Act*, prolifewhistleblower.com (last visited Sept. 2, 2021). It further provides that "Texas Right to Life will ensure that these lawbreakers are held accountable for their actions." *Id.* at 3. The website further invites visitors to "[j]oin the Team of Pro-Lifers working to enforce the Texas Heartbeat Act," and to "[s]end an anonymous tip or information about potential violations of the Texas Heartbeat Act." *Id.*

61.     Recruits who click on the button inviting them to become a "team member" by submitting contact information in order to receive additional information and options are asked, "How are you interested in enforcing the Texas Heartbeat Act?," with response options of "Litigating[,] Plaintiff[,] Data Collection[, and] Other." They are also asked to provide the "[b]est time for a TRTL team member to call you to talk about enforcing the Texas Heartbeat Act." Exhibit

19

4, at 3–4, *Join the Team*, https://prolifewhistleblower.com/sign-up-page/ (last visited Aug. 30, 2021.

62.     Individuals who select the option to send an anonymous tip or information about potential S.B. 8 violations are asked to provide "as much detail as possible" on "how [they] think the law has been violated," as well as "how [they] obtain[ed] this evidence" and the "Clinic or Doctor this evidence relates to," so that TRL can fulfill its pledge to enforce S.B. 8. Exhibit 5, at 2, *Send an Anonymous Tip*, https://prolifewhistleblower.com/anonymous-form/ (last visited Sept. 2, 2021).

63.     TRL's enforcement activity is far-reaching. As of September 2, its website had been visited at least 2,060 times on Facebook, 1,626 times on Twitter, 3,733 times on Reddit, and 2,787 times by email.

64.     These facts demonstrate that the above-named defendants are working in concert with unnamed Does whose identities are likely to be discoverable.

## IV.     IRREPARABLE HARM CAUSED BY S.B. 8

### A.     Impact on Abortion Patients

65.     S.B. 8 took effect on September 1 and is causing irreparable harm by preventing patients from obtaining an abortion. Many Texans are already being forced to carry their pregnancies to term, to attempt to scrape together funds to obtain an abortion out of state, or possibly to attempt to self-manage their own abortions without access to accurate medical information. Prior to the law taking effect, approximately 85% to 90% of people who obtain abortions in Texas are at least six weeks into pregnancy.[9]

---

[9] *See* Kari White, et al., *Research Brief: Texas Senate Bill 8: Medical and Legal Implications*, Tex. Policy Evaluation Project, at 1 fig. 1 (July 2021), *available at* http://sites.utexas.edu/txpep/files/2021/07/TxPEP-research-brief-SB8.pdf.

66.     Accordingly, in the first month of S.B. 8's effectiveness alone, at least 3,800 pregnant Texans will be denied access to an abortion in the state.[10] Others will be denied access to even abortions within S.B. 8's legal limits, because the threat of ruinous suits is too great even for pre-six-week abortions.

67.     Being forced to continue a pregnancy against one's will jeopardizes a person's physical, mental, and emotional health, as well as the stability and well-being of their family, including existing children.

68.     Even for someone who is otherwise healthy and has an uncomplicated pregnancy, being forced to carry that pregnancy to term and give birth poses serious medical risks with both short- and long-term consequences for the patient's physical health and mental and emotional well-being. For someone with a medical condition caused or exacerbated by pregnancy, these risks are increased.

69.     For people experiencing intimate partner violence, forced pregnancy also often exacerbates the risk of violence and further tethers the pregnant person to their abuser.

70.     In addition, forced pregnancy will add to the anguish of patients and their families who receive fetal diagnoses that are incompatible with sustained life after birth—forcing patients to carry doomed pregnancies for months and suffer the physical and emotional pains of labor and delivery, knowing all the while that their child will not survive.

---

[10] Tex. Health & Hum. Servs., *2020 Selected Characteristics of Induced Terminations of Pregnancy YTD – 05/2021* (May 15, 2021), *available at* https://www.hhs.texas.gov/about-hhs/records-statistics/data-statistics/itop-statistics (recording 53,573 abortions performed in Texas for Texas residents in 2020).

71.     S.B. 8 is particularly devastating for Texans of color, particularly Black and Latinx populations, as well as for Texans with low incomes and those living in rural areas— communities that already face heightened barriers to medical care.[11]

72.     Low-income and Black and Latinx populations seek abortions at a higher rate than wealthier and white populations (both in Texas and nationally) due to inadequate access to contraceptive care, income inequity, and other facets of structural racism. These communities will thus necessarily bear an outsized share of S.B. 8's burdens.

73.     Black Texans will also disproportionately suffer the gravest consequences of forced pregnancy if litigations enforcing S.B. 8 are allowed to proceed in light of the significantly higher rates of maternal mortality in their communities.

74.     Those who attempt to travel out of state to access care will have to pay for and arrange transportation, childcare, and time off work. Because the majority of abortion patients are poor or have low incomes, these financial and other costs may be insurmountable or require them to forgo other basic needs for themselves and their existing families. One estimate predicts that S.B. 8 will increase the average one-way drive to a health center by 20 times, from 12 miles to 248—almost 500 miles round trip.[12]

75.     Even those able to amass funds and make arrangements to travel outside Texas for care will be delayed in obtaining an abortion. While abortion is very safe at all stages, the risks

---

[11] *See* White et al., *supra* note 9, at 1.

[12] Elizabeth Nash et al., *Impact of Texas' Abortion Ban: A 20-Fold Increase in Driving Distance to Get an Abortion*, Guttmacher Inst. (Aug. 4, 2021), https://www. guttmacher.org/article/2021/08/impact-texas-abortion-ban-20-fold-increase-driving-distance-get-abortion.

increase as pregnancy advances. Moreover, the cost of an abortion generally increases with gestational age.

76.     Additionally, by targeting individuals who provide financial, practical, or emotional support for abortion access, S.B. 8 is decimating the support system on which Texans with low incomes rely to access abortion. By imposing aiding-and-abetting liability "regardless of whether the person knew or should have known that the abortion would be performed or induced in violation" of S.B. 8, *id.* § 171.208(a)(2), it chills support even for those few early abortions that remain permissible under S.B. 8. For example, Planned Parenthood of South Texas has stated on its website that due to Texas's SB 8 law, it is unable to provide abortion procedures at this time. *See Whole Woman's Health*, 2021 WL 3910722, at *2 (Breyer, J., dissenting) (citing Planned Parenthood          South          Tex.,          *Make          a          Virtual          Appointment*, https://www.plannedparenthood.org/planned-parenthood-south-texas (Sept. 1, 2021)); *see also id.* at *3 n.1 (Sotomayor, J., dissenting).

77.     In the days before the Act took effect, pregnant Texans who were unable to secure an appointment in Texas began turning to providers in New Mexico for care because of how crowded health centers became. The President and CEO of Planned Parenthood of the Rocky Mountains ("PPRM") stated that PPRM's Albuquerque health center "only [saw] patients from Texas," and saw no patients from New Mexico, on August 31, the day prior to the law taking effect.[13] PPRM is not only preparing for an influx of Texas patients in its Albuquerque health

---

[13] Kai Porter, *How the Texas Abortion Ban Could Impact New Mexico*, KOB 4 Eyewitness News (Sept. 1, 2021), https://www.kob.com/albuquerque-news/how-the -texas-abortion-ban-could-impact-new-mexico/6224199/; Neelam Bohra, *Abortion Providers and Distraught Patients Confront Stark Realities of Texas' New Law*, Tex. Tribune (Sept. 1, 2021), https://www.texastribune.org/2021/09/01/texas-abortion-law-clinics-patients/ ("According to information from clinics in Oklahoma and even Minnesota, Texas patients began seeking information or even showing up weeks before SB 8 went into effect.").

center, but also to its health centers in Colorado, southern Nevada, and Wyoming, because those centers saw a similar influx when Governor Abbott banned abortion in Texas by executive order during the early COVID-19 pandemic.[14] *See* Executive Order No. GA-09. While some patients were able to leave the state while the executive order was in place, others were not. Oklahoma abortion health centers are also seeing an increased number of Texan patients; while Trust Women clinic in Oklahoma City usually receives three to five calls from Texans per day, on August 31 and September 1 they received approximately 50–55 calls from Texans.[15] For the clinic, this increase is untenable: Trust Women's acting co-executive director stated that "[n]ot everyone who needs an abortion at this time is going to be seen."[16]

78.     On September 1, the day the Act took effect, Plaintiff Dr. Bhavik Kumar of Planned Parenthood Center for Choice saw only six potential abortion patients and had to turn away three of them (he usually performs "between 20 to 30 abortions every day" at that center).[17] Dr. Kumar additionally stated that "[m]any of the patients that [he] take[s] care of will say, 'I can't be pregnant because my last delivery was very traumatic and I almost died' or 'I can't be pregnant because I have heart problems' or whatever medical condition that's eliminated their ability to continue the

---

[14] Erika Gonzalez, *Colorado Abortion Providers Expect Surge of Texas Patients after Heartbeat Law Goes in Effec*t, Fox 31 & Channel 2 News (Sept. 1, 2021), https://kdvr.com/news/local/colorado-abortion-providers-expect-surge-of-texas-patients-after-heartbeat-law-goes-in-effect/.

[15] Tahera Rahman, *Oklahoma Abortion Clinic Already Seeing a Surge in Texas Patients as Abortion Law Takes Effect*, KXAN (Sept. 1, 2021, updated Sept. 2, 2021), https://www.kxan.com/news/texas/oklahoma-abortion-clinic-already-seeing-a-surge-in-texas-patients-as-abortion-law-takes-effect/.

[16] *Id.*

[17] Bohra, *supra* note 13; *see also* Adam Liptak et al., *Supreme Court, Breaking Silence, Won't Block Texas Abortion Law*, N.Y. Times (Sept. 1, 2021), https://www.nytimes.com/2021/09/01/us/supreme-court-texas-abortion.html ("By Wednesday, the patient lists had shrunk, clinic workers said in interviews.").

pregnancy," which he worries will increase pregnancy-related mortality rates in the state.[18] Another clinic estimated that of the 79 people scheduled for care on September 1, only about 20 were perhaps eligible for an abortion.[19]

### B.   Impact on Plaintiffs and Their Physicians and Staff

79.   Since S.B. 8 went into effect September 1, Plaintiffs have been forced to stop providing abortions and engaging in activities that assist with abortion provision after six weeks of pregnancy.

80.   Even full compliance with S.B. 8 does not protect the Plaintiffs from frivolous and harassing S.B. 8 suits, a possibility all the more likely given the bounty offered by S.B. 8 and its one-sided enforcement scheme. That threat alone chills the exercise of constitutionally protected health care. For example, PPST Surgical Center suspended abortion services entirely when S.B. 8 took effect, or even earlier.

81.   If S.B. 8 remains in effect, many Plaintiffs will lose or lay off staff in light of the reduced services.

82.   In addition to these harms, S.B. 8's fee-shifting provisions will penalize and deter challenges to S.B. 8 in any enforcement proceedings that are brought, thus burdening the Plaintiffs' right to petition the courts and to speak freely, exposing them to potentially ruinous liability for attorney's fees and costs because they attempt to vindicate their own and others' constitutional rights through public-interest litigation.

83.   In sum, because of S.B. 8, the Plaintiffs have been forced to stop providing abortions starting at approximately six weeks in pregnancy, and the threat of ruinous litigation has

---

[18] *Id.*
[19] *Id.*

forced PPST to stop providing even abortions prior to six weeks of pregnancy. They and their staff suffer—and will continue to suffer—profound harm to their property, business, reputations, and a deprivation of their own constitutional rights. And their patients are being denied access to constitutionally protected health care, and will continue to be irreparably injured, unless this Court intervenes.

**CLAIMS FOR RELIEF**

**CLAIM 1: DECLARATORY JUDGMENT**

84.     The allegations in paragraphs 1 through 83 above are incorporated as if fully set forth herein.

85.     Plaintiff hereby petitions the Court pursuant to the UDJA.

86.     Section 37.002 of the UDJA provides that it is remedial and its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered.

87.     Under Section 37.003 of the UDJA, a court of proper jurisdiction has the power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed. The declaration may be either affirmative or negative in form and effect and the declaration has the force and effect of a final judgment or decree.

88.     Section 37.004 of the UDJA provides that a person whose rights, status, or other legal relations are affected by statute may have determined any question of construction or validity arising under the statute and obtain a declaration of rights, status, or other legal relations thereunder.

89.     Under the UDJA, Plaintiffs are entitled to a declaration that S.B. 8 violates the Texas Constitution in the manner set forth in Claims 2 through 10, which are incorporated as if fully set forth herein.

**CLAIM 2: EQUAL PROTECTION (SECTION 3 OF S.B. 8)**

90.     The allegations in paragraphs 1 through 83 above are incorporated as if fully set forth herein.

91.     The Equal Protection Clause of the Texas Constitution commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike.

92.     Section 3 of S.B. 8 singles out abortion providers and people who "aid or abet" the constitutionally protected right to abortion, or intend to do these things, and then treats this category of people differently from all other defendants in civil litigation in Texas.

93.     S.B. 8 alters the procedural rules and limits the substantive defenses and arguments available in S.B. 8 enforcement proceedings to skew those proceedings and harm those sued under S.B. 8 in violation of the constitutional guarantee of equal protection. The statute's venue and fee-shifting provisions, its openness to claimants without any connection to an abortion, its evisceration of defenses and arguments, and its attempt to redefine federal law, all work together to disadvantage abortion providers and supporters. And they do so toward the goal of enforcing a patently unconstitutional abortion ban that is unenforceable under binding U.S. Supreme Court precedent.

94.     The purpose for S.B. 8's enforcement provisions is animus and to burden the exercise of constitutional rights. Those are not legitimate government interests. Even if Defendants could assert a compelling government interest, S.B. 8's enforcement provisions are not narrowly

tailored. Accordingly, S.B. 8's enforcement scheme cannot survive any level of review, and it violates the equal protection rights of Plaintiffs and their staff.

## CLAIM 3: VOID FOR VAGUENESS (SECTION 3 OF S.B. 8)

95.     The allegations in paragraphs 1 through 83 above are incorporated as if fully set forth herein.

96.     Under the Texas Constitution, "[n]o citizen of this State shall be deprived of life, liberty, property, privileges, or immunities, or in any manner disfranchised, except by the due course of the law of the land." Tex. Const. art. I, § 19.

97.     S.B. 8 imposes quasi-criminal penalties on persons who provide an abortion in violation of the six-week ban, engage in conduct that aids or abets an abortion that violates the six-week ban, or intends to do these things.

98.     A law that imposes such penalties is void for vagueness, and thus inconsistent with the due process guaranteed by the Texas constitution, if it authorizes or encourages arbitrary and discriminatory enforcement, or fails to provide fair warning of its prohibitions so that ordinary people may conform their conduct accordingly.

99.     S.B. 8 unlawfully empowers arbitrary and discriminatory enforcement by deputizing private individuals to enforce state law in violation of clearly established constitutional rights. Its terms incentivize purely ideological plaintiffs to force their opponents into court to defend themselves, and to do so without the legal and practical checks that might otherwise temper government prosecutors or enforcement agencies. S.B. 8 also empowers arbitrary and discriminatory enforcement because its penalties are standardless.

100.    The Act also fails to adequately inform regulated parties and those charged with the law's enforcement of what conduct is prohibited and/or leads to penalties. S.B. 8 states that

abortion providers and others assisting them may be held liable for violating the Act if a court decision permitting their conduct at the time it occurred is later overruled on appeal or by a subsequent court. S.B. 8 § 171.208(e)(3). Similarly, under S.B. 8, aiding-and-abetting liability may attach "regardless of whether [a] person knew or should have known that the abortion" they aided "would be performed or induced in violation" of the six-week ban. *Id.* § 171.208(a)(2).

101.    In all of these circumstances, the only way for people to ensure they do not run afoul of S.B. 8 is by refusing to perform or assist with any abortions (and to "intend" to do either). Due process does not permit such uncertainty, particularly where, as here, the challenged law threatens to inhibit the exercise of constitutionally protected rights.

102.    S.B. 8 is, therefore, unconstitutionally vague and violates the due process rights of Plaintiffs and their staff.

### CLAIM 4: RIGHT OF PRIVACY (SECTION 3 OF S.B. 8)

103.    The allegations in paragraphs 1 through 83 above are incorporated as if fully set forth herein.

104.    The Texas Constitution protects personal privacy from unreasonable intrusion and unwarranted interference with personal autonomy. *See Tex. State Emps. Union v. Tex. Dep't of Mental Health & Mental Retardation*, 746 S.W.2d 203, 205 (Tex. 1987) (citing *Roe*, 410 U.S. at 152).

105.    For example, Section 19 of the Texas Bill of Rights protects against arbitrary deprivation of life and liberty. Tex. Const., art. I, § 19. In addition, Sections 9 and 25 guarantee the sanctity of the individual's home and person against unreasonable intrusion. *Id.* §§ 9, 25. Each of these provisions (and others) "gives rise to a concomitant zone of privacy." *Tex. State Emps. Union*, S.W.2d at 205 (citing *Griswold v. Connecticut*, 381 U.S. 479, 484 (1965)).

29

106.    Thus, "a right of individual privacy is implicit among those 'general, great, and essential principles of liberty and free government' established by the Texas Bill of Rights." *Id.* (quoting Tex. Const., art. I, Introduction to the Bill of Rights).

107.    The right to privacy should yield only when the government can demonstrate that an intrusion is reasonably warranted for the achievement of a compelling governmental objective that can be achieved by no less intrusive, more reasonable means.

108.    S.B. 8 violates Plaintiffs' patients' right of individual privacy by stripping them of the liberty and autonomy to make deeply personal and private decisions about their pregnancies and reproductive futures prior to viability. Not only does S.B. 8 lack a compelling governmental objective, the State's interest in potential fetal life can most certainly be achieved by less intrusive, more reasonable means. The total deprivation of the right to choose to terminate a pregnancy beginning at six weeks, when many do not know they are pregnant, cannot possibly be said to be the least intrusive means. Indeed, the oppressive nature of S.B. 8 is unprecedented and unlike any other abortion regulation in the country.

109.    S.B. 8 also violates Plaintiffs' patients' right to privacy by granting to S.B. 8 claimants an entitlement to put at issue in court litigation a patient's private health care decisions, irrespective of her wishes or consent. In so doing, S.B. 8 incentivizes the invasion of patient privacy by individuals with no connection to the patient. It also intrudes on the right to privacy held by patients who become pregnant from sexual assault or incest by putting private information about the circumstances of a patient's pregnancy at issue in litigation with respect to whether an S.B. 8 claimant may recover under the statute. *See* S.B. 8  §171.208(j).

## CLAIM 5: FREEDOM OF SPEECH (SECTION 3 OF S.B. 8)

110.   The allegations in paragraphs 1 through 83 above are incorporated as if fully set forth herein.

111.   Plaintiffs include a physician and three nonprofit organizations committed to ensuring that all Texas residents have access to safe abortion care regardless of their financial means or other sociodemographic characteristics.

112.   S.B. 8's broad prohibition on activity that "aids or abets" a covered abortion, and on an intent to engage in such activity even without corresponding action, burdens Plaintiffs' speech and expressive conduct, as described above. Because S.B. 8 does so without adequate justification, it cannot possibly survive the strict scrutiny that applies under the free speech clause of the Texas Constitution.

113.   Even if S.B. 8's prohibition were viewed as a regulation of conduct that only incidentally burdens speech, the prohibition would still be invalid because it serves no legitimate, much less important, governmental purpose and is otherwise not adequately justified.

## CLAIM 6: FREEDOM OF SPEECH (SECTION 4 OF S.B. 8)

114.   The allegations in paragraphs 1 through 83 are incorporated as if fully set forth herein.

115.   The legal services and litigation covered by Section 4 of S.B. 8 are a means for Plaintiffs and their attorneys to achieve lawful objectives through the court system, and they serve as a form of political expression protected under Article 1, Section 27 of the Texas Constitution.

116.   Under Section 4, only litigants motivated to block the enforcement of laws that "regulate[] or restrict[] abortion" or laws that provide funding to entities who "perform or promote" abortion are punished for their advocacy in litigation. S.B. 8 § 4 (adding Tex. Civ. Prac. & Rem.

Code § 30.022). In contrast, S.B. 8 does not impose a penalty on litigants whose goal is to uphold such laws, or to challenge laws that expand access to abortion or provide funding to abortion providers or advocates.

117.     In both its purpose and effect, Section 4 is a viewpoint- and content-based restriction on Plaintiffs' abortion-related advocacy, including their petitioning activity. By threatening Plaintiffs and their attorneys with massive liability for fees and costs, Section 4 will necessarily chill the exercise of rights to free speech and to petition activity protected by the Texas Constitution.

118.     Because S.B. 8 limits Plaintiffs' right to speak freely and to petition the courts for relief, without adequate justification, S.B. 8 violates rights guaranteed under the Texas Constitution and should be declared invalid and unenforceable.

### CLAIM 7: PROHIBITION ON RETROACTIVE STATUTES

119.     The allegations in paragraphs 1 through 83 are incorporated as if fully set forth herein.

120.     Article 1, Section 16 of the Texas Constitution provides: "No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made."

121.     The following provisions of S.B. 8 impair prior and settled rights, and thus violate the Texas Constitution's prohibition of retroactive statutes: (a) the elimination of defenses to liability under Section 171.208 and Section 171.209; and (b) Section 30.022's imposition of joint and several liability on attorneys or law firms that represent or defend clients in matters that seek injunctive or declaratory relief regarding abortion regulations and statutes.

122.     These provisions are not adequately justified.

123.    The retroactive reach of S.B. 8 burdens Plaintiffs by depriving them of their constitutional right to be apprised of laws that they may be held liable for and by impairing their ability to redress their rights in their defense.

## CLAIM 8: OPEN COURTS

124.    The allegations in paragraphs 1 through 83 are incorporated as if fully set forth herein.

125.    The Texas Constitution guarantees a right to open courts. Tex. Const. art. 1, § 13. Under this provision, citizens must have access to courts unimpeded by unreasonable financial barriers and a remedy for redress of constitutional violations.

126.    Section 171.211(b)'s purported maintenance of immunity for all state and political subdivisions or their employees in any action, claim, or counterclaim or any type of legal or equitable action that challenges the validity of S.B. 8 violates the Texas Constitution's guarantee of open courts by insulating state actors from suit necessary to remedy the deprivation of a state constitutional right.

127.    Section 30.022's imposition of joint and several liability for attorney's fees on litigants and attorneys/firms that challenge abortion laws violates the Texas Constitution's guarantee of open courts by penalizing without adequate justification the use of Texas courts for the redress of grievances.

## CLAIM 9: SEPARATION OF POWERS AND OPEN COURTS

128.    The allegations in paragraphs 1 through 83 are incorporated as if fully set forth herein.

129.    S.B. 8's rejection of traditional standing rules under the Texas Constitution violates well-established separation-of-powers and open-court principles.

33

130.     "Standing is a constitutional prerequisite to suit." *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). To establish standing, a plaintiff "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *In re Abbott*, 601 S.W.3d 802, 807 (Tex. 2020) (orig. proceeding) (per curiam) (quoting *Heckman*, 369 S.W.3d at 154). These standing requirements are constitutional limits on the subject-matter jurisdiction of Texas courts and cannot be expanded by legislative act or executive action.

131.     Standing "derives from the Texas Constitution's provision for separation of powers among the branches of government, which denies the judiciary authority to decide issues in the abstract, and from the open courts provision, which provides court access only to a 'person for an injury done him.'" *In re Abbott*, 601 S.W.3d at 807 (quoting *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 484 (Tex. 2018)); *Data Foundry, Inc. v. City of Austin*, 620 S.W.3d 692, 700 (Tex. 2021).

132.     The Texas Constitution divides the State's power into "three distinct departments": legislative, executive, and judicial. Tex. Const. art. II, § 1.

133.     The Texas Constitution also allows access to Texas courts only to a "person for an injury done him." Tex. Const. art. I, § 13.

134.     Despite well-settled constitutional limits on Texas courts' subject-matter jurisdiction, the Act invites the "public at large," *Heckman*, 369 S.W.3d at 155, including Defendants, to come to court to police Plaintiffs' conduct regardless of their connection to the Plaintiffs, their patients, or the conduct at issue—and despite the fact that they have neither suffered nor will likely suffer any personal injury.

34

135.    The Act thus purports to create jurisdiction where none can exist. Because the Legislature may not "create jurisdiction the Constitution does not permit," *Elec. Reliability Council of Tex., Inc. v. Panda Power Generation Infrastructure Fund, LLC*, 619 S.W.3d 628, 641 (Tex. 2021) (orig. proceeding), the Act is inconsistent with the Texas Constitution's separation-of-powers and open-courts principles.

## CLAIM 10: UNLAWFUL DELEGATION

136.    The allegations in paragraphs 1 through 83 are incorporated as if fully set forth herein.

137.    S.B. 8's delegation of enforcement authority to an unlimited number of private parties—who have no connection to the underlying prohibitions of S.B. 8 nor expertise in the area—violates bedrock principles of government.

138.    "The prohibition on unwarranted delegation of lawmaking power is 'rooted in the principle of separation of powers that underlies our tripartite system of Government.'" *Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 465 (Tex. 1997), *as supplemented on denial of reh'g* (Oct. 9, 1997) (quoting *Mistretta v. United States*, 488 U.S. 361, 371 (1989)).

139.    Further, "private delegations clearly raise even more troubling constitutional issues than their public counterparts." *Tex. Boll Weevil Eradication Found., Inc.*, 952 S.W.2d at 469. "[T]he basic concept of democratic rule under a republican form of government is compromised when public powers are abandoned to those who are neither elected by the people, appointed by a public official or entity, nor employed by the government." *Id.*

140.    The Act's delegation of enforcement authority to the public at large is particularly troubling given that S.B. 8 confers  on private deputies the authority to "apply the law to particular individuals," vests power in private individuals who have "pecuniary or other personal interest that

35

may conflict with [their] public function" but no "special qualifications or training," and provides no standards to cabin enforcement authority, such as for what constitutes aiding or abetting. *Id.* at 472.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER AND/OR ANTI-SUIT INJUNCTION

141.    The allegations in paragraphs 1 through 83 are incorporated as if fully set forth herein.

142.    Pursuant to Texas common law and Texas Civil Practice and Remedies Code Section 65.011 (1, 5), Plaintiffs are entitled to injunctive relief against Defendants, and all persons in active concert and participation with them, because Defendants' threatened implementation of the six-week ban and its enforcement scheme, as well as S.B. 8's fee-shifting provision, would cause imminent, irreparable injury to Plaintiff.

143.    Plaintiffs are likely to prevail on the merits of this case and receive the requested declaratory judgment, as well as equitable relief, attorney's fees, and costs of court.

144.    Plaintiffs also have no adequate remedy at law for Defendants' threatened actions. Specifically, money damages are insufficient to redress the threatened injury to Plaintiffs. Several of Plaintiffs' and their patients' constitutional rights are at stake and would be irreparably harmed by enforcement of S.B. 8.

145.    The threatened injury to Plaintiffs far outweighs any possible damages to Defendants. Indeed, Defendants are not harmed by Plaintiffs' conduct in any sense, nor by any alleged non-compliance with S.B. 8.

146.    Accordingly, Plaintiffs request that this Court issue a temporary restraining order pursuant to Texas Rule of Civil Procedure 680.

147.    Plaintiffs also request that this Court issue an anti-suit injunction, preventing lawsuits against them by Defendants and anyone in active concert or participation with them in other venues under S.B. 8 until such time as this case reaches its conclusion.

## RELIEF SOUGHT AND DISCOVERY LEVEL

148.    Pursuant to Texas Rule of Civil Procedure 190, Plaintiffs request that discovery in this case be conducted under Level 3. The remedy sought herein is within the jurisdictional limits of this Court. Plaintiffs seek non-monetary and all other relief to which they may show themselves entitled.

## ATTORNEY'S FEES

149.    Plaintiffs specifically request the recovery of reasonable attorney's fees in advancing this action under Texas Civil Practice and Remedies Code Section 37.009.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask this Court:

a.    To issue permanent and temporary injunctive relief as soon as possible that restrains Defendants, their agents, servants, employees, attorneys, and any persons in active concert or participation with them, from enforcing S.B. 8 in any way against Plaintiffs and staff;

b.    To enter a judgment against all Defendants declaring that S.B. 8 violates the Texas Constitution;

c.    To enter a judgment against all Defendants declaring that Plaintiffs' and their staffs' activities cannot be the basis for liability under S.B. 8;

d.    To award Plaintiffs their costs and expenses, including attorney's fees, pursuant to Texas Civil Practice and Remedies Code Section 37.009;

e.    To retain jurisdiction after judgment for the purposes of resolving any future fee disputes between the parties and issuing further appropriate injunctive relief if the Court's declaratory judgment is violated; and

f.    To grant such other and further relief as the Court deems just and proper.

DATED: September 2, 2021.

Respectfully submitted,

By: */s/ Austin Kaplan*
Austin Kaplan
State Bar No. 24072176
akaplan@kaplanlawatx.com

Peter A. Kraus
Texas Bar No. 11712980
kraus@waterskraus.com

**KAPLAN LAW FIRM, PLLC**
406 Sterzing St.
Austin, TX 78704
(512) 553-9390
Fax: 512-692-2788

Leslie C. MacLean
Texas Bar No. 00794209
lmaclean@waterskraus.com

Charles S. Siegel
Texas Bar No. 18341875
siegel@waterskraus.com

Julie Murray*
julie.murray@ppfa.org

Caitlyn E. Silhan
Texas Bar No. 24072879
csilhan@waterskraus.com

Richard Muniz*
richard.muniz@ppfa.org

**WATERS & KRAUS, LLP**
3141 Hood Street, Suite 700
Dallas, Texas 75214
(214) 357-6244
Fax: (214) 357-7252

**PLANNED PARENTHOOD FEDERATION OF AMERICA**
1110 Vermont Ave., NW Ste. 300
Washington, DC 20005
(202) 973-4800

**ATTORNEYS FOR PLAINTIFF PLANNED PARENTHOOD OF GREATER TEXAS SURGICAL HEALTH SERVICES**

Sarah Mac Dougall*
sarah.macdougall@ppfa.org

**PLANNED PARENTHOOD FEDERATION OF AMERICA**
123 William St., 9th Floor
New York, NY 10038
(212) 965-7000

**ATTORNEYS FOR ALL PLAINTIFFS**

\* Motion for admission *pro hac vice* forthcoming

CAUSE NO. _____

|  |  |
|---|---|
| **PLANNED PARENTHOOD OF GREATER TEXAS SURGICAL HEALTH SERVICES, on behalf of itself, its staff, physicians, and patients; PLANNED PARENTHOOD SOUTH TEXAS SURGICAL CENTER, on behalf of itself, its staff, physicians, and patients; PLANNED PARENTHOOD CENTER FOR CHOICE, on behalf of itself, its staff, physicians, and patients; BHAVIK KUMAR, M.D., on behalf of himself and his patients,** | **In the District Court of Travis County, Texas** |
| *Plaintiffs*, | |
| v. | |
| **TEXAS RIGHT TO LIFE, an organization; JOHN SEAGO; and JANE/JOHN DOES 1–100,** | **Judicial District _____** |
| *Defendants.* | |

## Declaration of Melaney A. Linton, President and CEO of Planned Parenthood Center for Choice

1.      My name is Melaney A. Linton. I am over the age of eighteen years, am of sound mind and capable of making this Declaration. My date of birth is ████████████ and my address is 4600 Gulf Fwy #300, Houston, TX 77023. I have personal knowledge of the facts stated in this Declaration, and they are true and correct.

2.      The facts contained in Plaintiffs' Original Petition and Request for Declaratory Judgment and Application for Temporary Restraining Order and/or Anti-Suit Injunction are within my personal knowledge, were provided to me by my staff in my capacity as President and CEO of Plaintiff Planned Parenthood Center for Choice, or are based on publicly available information.

3.      Pursuant to Texas Civil Practice and Remedies Code Section 132.001, I declare under penalty of perjury that the facts contained in Plaintiffs' Original Petition and Request for

Declaratory Judgment and Application for Temporary Restraining Order and/or Anti-Suit

Injunction are true and correct.

    Executed in Harris County, State of Texas, on the 2nd day of September, 2021.

Melaney A. Linton

Digitally signed by Melaney A.
Linton
Date: 2021.09.02 16:39:51 -05'00'

_____

Melaney A. Linton

Exhibit C

FILED
21-0782
9/13/2021 10:10 AM
tex-57173544
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

No. ___21-0782___


# BEFORE THE TEXAS MULTIDISTRICT LITIGATION PANEL

| | |
|---|---|
| In re Texas Heartbeat Act Litigation | ) |
| | ) |
| | ) |
| | ) |


## PLANNED PARENTHOOD PLAINTIFFS' OPPOSITION TO MOTION FOR TRANSFER TO A MULTIDISTRICT LITIGATION PRETRIAL COURT AND OPPOSITION TO REQUEST FOR A STAY OF ALL TRIAL-COURT PROCEEDINGS

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................... 1

BACKGROUND ....................................................................................................................... 2

ARGUMENT AND AUTHORITIES ........................................................................................ 7

   I.   THE PLANNED PARENTHOOD CASE IS NOT RELATED TO THE OTHERS .......... 7

   II.  TRANSFER OF PLANNED PARENTHOOD PLAINTIFFS' CASE TO A PRE-
       TRIAL COURT WOULD NOT FURTHER INTERESTS IN CONVENIENCE OR
       THE JUST AND EFFICIENT CONDUCT OF THE CASE ............................................ 10

   III. SHOULD THE PANEL BELIEVE THAT COORDINATION IS NECESSARY, IT
       SHOULD ESTABLISH A COMMITTEE OF LOCALLY ASSIGNED JUDGES ......... 12

CONCLUSION ......................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**                                                                                     *Pages(s)*

*In re Ad Valorem Tax Litig.*,
   216 S.W.3d 83 (Tex. J.P.M.L. 2006) ................................................................... 8, 11

*In re Cont'l Airlines Flight*,
   *1404*, 387 S.W.3d 925 (Tex. J.P.M.L. 2009) ........................................................... 11

*In re Deepwater Horizon Incident Litig.*,
   387 S.W.3d 127 (Tex. J.P.M.L. 2011) ................................................................... 7, 8

*In re Pers. Inj. Litig. Against Great Lakes Dredge & Dock Co., LLC*,
   283 S.W.3d 547 (Tex. J.P.M.L. 2007) ...................................................................... 8

*In re Vanderbilt Mortg. & Fin., Inc.*,
   166 S.W.3d 12 (Tex. J.P.M.L. 2005) ................................................................... 10, 11

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Tex. Right to Life*,
   No. D-1-GN-21-004632 (Travis Cnty. Dist. Ct., filed Sept. 2, 2021) ...................... 4

*Whole Woman's Health v. Jackson*,
   No. 1:21-cv-00616-RP (W.D. Tex. filed July 13, 2021)............................................ 4

*Whole Woman's Health v. Jackson*,
   No. 21A24, 2021 WL 3910722 (U.S. Sept. 1, 2021)................................................. 3

**Statutes**

Tex. Civ. Prac. & Rem. Code § 15.002 ........................................................................ 3

Tex. Gov't Code Ann. § 74.162..................................................................................... 8

**Rules**

Tex. R. Jud. Admin. 13.2(f) ......................................................................................... 8

Tex. R. Jud. Admin. 13.3(*l*) ......................................................................................... 7

**Other Authorities**

BeLynn *Hollers, Texas Right to Life Says It Plans to Restart Abortion Whistleblower Website*,
   Dallas Morning News (Sept. 9, 2021), https://www.dallasnews.com/news/2021/09/09/texas-
   right-to-life-says-it-plans-to-restart-abortion-whistleblower-website-tomor............................. 9

Jim Graham, *The Abortion Industry Is Suing Texans!*, Tex. Right to Life (July 14, 2021),
www.texasrighttolife.com/the-abortion-industry-is-suing-texans/ ............................................ 3

Letter from Tex. att'ys to Dade Phelan, Speaker of the Tex. House of Representatives (Apr. 28,
2021), *available at*
https://npr.brightspotcdn.com/d5/51/a2eac3664529a017ade7826f3a69/attorney-letter-in-
opposition-to-hb-1515-sb-8-april-28-2021-1.pdf ........................................................................ 2

## INTRODUCTION AND SUMMARY OF ARGUMENT

The motion and request to stay should be denied. The multi-district litigation (hereinafter "MDL") transfer process is wholly inappropriate here: the cases at issue are all pending in the District Court for Travis County; thirteen of the fourteen cases have already been functionally consolidated and are moving forward on a unified schedule; and counsel for plaintiffs in those thirteen cases have formally moved to consolidate them—a motion that defense counsel has, remarkably, stated it will oppose.

Moreover, the MDL transfer process would delay the efficient resolution of Planned Parenthood of Greater Texas Surgical Health Services, Planned Parenthood of South Texas Surgical Center, Planned Parenthood Center for Choice, and Dr. Bhavik Kumar's (hereinafter, "Planned Parenthood Plaintiffs") case. The Planned Parenthood Plaintiffs' case is not related to the other pending matters, which largely involve a range of state executive officials and legislative defendants who are not parties in the Planned Parenthood case. Moreover, unlike all of the remaining cases, the Planned Parenthood case directly challenges the constitutionality of S.B. 8's abortion ban, as opposed to only its enforcement mechanism.

For these reasons, a transfer would not further the ends of justice or efficiency. In fact, it would do precisely the opposite.

The request to stay trial-court proceedings should also be swiftly denied. A stay would irreparably harm the Planned Parenthood Plaintiffs, whose entitlement to a temporary restraining order against TRTL will expire on September 17 at 5:00 PM. Planned Parenthood Plaintiffs have fully prepared for a temporary injunction hearing set for today, September 13, a date about which Defendants' counsel have now known for eleven days. Although Defendants suggest that they made reasonable efforts to agree with the Planned Parenthood Plaintiffs to continue the temporary

injunction hearing, they rejected Plaintiffs' offer to do so on the condition that TRTL agree not to take steps that would interfere with the trial court's authority to enter a temporary injunction. Plaintiffs rightfully feared that Defendants' agreement to a short extension of the TRO would be rendered meaningless if followed by a motion to prevent the trial court from continuing relief through a temporary injunction. Defendants have now filed exactly that motion, and their brazen gamesmanship should not be rewarded.

## BACKGROUND

Planned Parenthood Plaintiffs are plaintiffs in one of several cases pending in the District Court of Travis County that challenge the constitutionality of Texas Senate Bill 8, 87th Leg., Reg. Sess. (Tex. 2021) ("S.B. 8" or "the Act"). S.B. 8 bans abortion at approximately six weeks of pregnancy, before many people even know they are pregnant. In an attempt to evade pre-enforcement judicial review, the Texas Legislature crafted S.B. 8 so that it does not rely on direct enforcement by executive officials or local prosecutors. Instead, S.B. 8 provides any *other* person the right to sue abortion providers who perform abortions at or after six weeks of pregnancy, and to sue anyone else who assists with such an abortion—from a nurse or ultrasound technician to a family member who helps pay for a patient's abortion. In this way, S.B. 8 delegates to uninjured strangers the unfettered power to enforce it by filing suits against Texans claiming its prohibitions have been violated.

S.B. 8 also "weaponizes the judicial system by exempting the newly created cause of action from the normal guardrails that protect Texans from abusive lawsuits and provide all litigants a fair and efficient process in our state courts." Letter from Tex. att'ys to Dade Phelan, Speaker of the Tex. House of Representatives (Apr. 28, 2021), *available at* https://npr.brightspotcdn.com/d5/51/a2eac3664529a017ade7826f3a69/attorney-letter-in-

opposition-to-hb-1515-sb-8-april-28-2021-1.pdf. For example, S.B. 8 purports to override normal Texas venue law, allowing claimants to file lawsuits in their home counties and to unilaterally veto a transfer, no matter how many cases involving the same party sued under S.B. 8 are then pending. *Compare* S.B. 8 § 171.210(a)(4), *with* Tex. Civ. Prac. & Rem. Code § 15.002. S.B. 8 also limits the defenses available to anyone sued under the Act, including by purporting to narrow federal constitutional defenses and by deeming it irrelevant whether a patient sought and consented to the abortion that any S.B. 8 claimants—including complete strangers—have placed at issue in the litigation. S.B. 8 § 171.208(e).

Because of S.B. 8's "unprecedented" statutory scheme, *Whole Woman's Health v. Jackson*, No. 21A24, 2021 WL 3910722, at *1 (U.S. Sept. 1, 2021) (Roberts, C.J., dissenting), the Planned Parenthood Plaintiffs and other abortion providers and advocates throughout Texas have to date been stymied in obtaining judicial review of this patently unconstitutional law. The Act took effect on September 1, 2021, threatening abortion providers and others who assist abortion patients with an unlimited number of abusive lawsuits in Texas courts if these individuals continue to perform or assist prohibited abortions. It has led to a total shutdown of abortion access in Texas starting at six weeks of pregnancy.

Defendants Texas Right to Life and John Seago (hereinafter, "TRTL") are among those who have credibly threatened to sue the Planned Parenthood Plaintiffs and others for any violation of S.B. 8. TRTL has told its supporters, for example, that "after the Texas Heartbeat Act takes effect, we're going to sue the abortionists ourselves."[1] In his capacity on behalf of TRTL, Defendant Seago has provided a sworn statement that TRTL "is publicizing the availability of private civil-enforcement lawsuits under Senate Bill 8 through social media and other forms of

---

[1] Jim Graham, *The Abortion Industry Is Suing Texans!*, Tex. Right to Life (July 14, 2021), www.texasrighttolife.com/the-abortion-industry-is-suing-texans/.

advertising, and [is] encouraging individuals to sue abortion providers and abortion funds if they defy the law when it takes effect on September 1, 2021." He further testified that he had "personal knowledge" of "several individuals who intend to sue the abortion-Plaintiffs . . . if they defy Senate Bill 8, and those individuals will sue the plaintiffs for violating Senate Bill 8." Decl. of John Seago ¶¶ 2, 6, *Whole Woman's Health v. Jackson*, No. 1:21-cv-00616-RP (W.D. Tex. Aug. 5, 2021), ECF No. 50-2. Defendant TRTL also launched a "whistleblower" website to gather information for its own enforcement actions and to recruit additional enforcers. Pet. Exs. 3–5.

Accordingly, on September 2, 2021, the Planned Parenthood Plaintiffs filed their petition against TRTL and unnamed John and Jane Does in *Planned Parenthood of Greater Texas Surgical Health Services v. Texas Right to Life*, No. D-1-GN-21-004632 (Travis Cnty. Dist. Ct., filed Sept. 2, 2021), along with a request for a temporary restraining order ("TRO"). The Planned Parenthood Plaintiffs brought suit in the District Court of Travis County, where one of the plaintiffs provides abortion services curtailed by S.B. 8 and where Defendant Seago resides. *See* Pet. ¶ 17, 22. The Planned Parenthood Plaintiffs seek temporary and permanent injunctive relief preventing TRTL from enforcing S.B. 8 against them and their staff and a declaration that S.B. 8, including its ban on abortion, violates the Texas Constitution.

After filing their petition, the Planned Parenthood Plaintiffs obtained a TRO against TRTL. The court simultaneously set a temporary-injunction hearing for tomorrow, September 13, 2021. TRO at 3, *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Tex. Right to Life*, No. D-1-GN-21-004632 (Sept. 3, 2021). The TRO will expire by its own terms this Friday, September 17, 2021. *Id.*

Thirteen other individuals and organizations (the "Non-Planned Parenthood Plaintiffs") have also filed lawsuits in District Court in Travis County to challenge a portion of S.B. 8 in the

past several weeks. These plaintiffs are all represented by the same counsel, and share no overlapping counsel with the Planned Parenthood Plaintiffs in these matters. The claims of the Planned Parenthood Plaintiffs and Non-Planned Parenthood Plaintiffs are distinct. Most importantly, unlike the Planned Parenthood Plaintiffs, the Non-Planned Parenthood Plaintiffs do not challenge S.B. 8's abortion ban directly, instead focusing only on the constitutionality of S.B. 8's enforcement mechanism. Moreover, although Texas Right to Life and Mr. Seago are defendants in each case, the Non-Planned Parenthood Plaintiffs have sued a range of executive officials and legislators as well, whereas the Planned Parenthood Plaintiffs have not done so.

Although the Non-Planned Parenthood Plaintiffs filed their petitions at varying times, thus resulting in a series of TRO hearings for those litigants, it is the Planned Parenthood Plaintiffs' understanding that following those initial filings the other set of plaintiffs has been litigating in lockstep through joint filings. *See, e.g.*, Plaintiff's Emergency Motion for Expedited Discovery, *Van Stean v. State of Texas*, No. D-1-GN-21-004179; *Faulkner v. State of Texas*, No. D-1-GN-21-004189; *Bridge Collective v. State of Texas*, No. D-1-GN-21-004303; *Tuegel v. State of Texas*, No. D-1-GN-21-004316; *Moayedi v. State of Texas*, No. D-1-GN-21-004489; *N. Tex. Equal Access Fund v. State of Texas*, No. D-1-GN-21-004503; *Lilith Fund for Reprod. Equity v. State of Texas*, No. D-1-GN-21-004504; *Clinic Access Support Network v. State of Texas*, No. D-1-GN-21-004544 (Travis Cnty. Dist. Ct. Sept. 7, 2021) (joint filing on behalf of eight plaintiffs). They also uniformly agreed to the continuation of a temporary-injunction hearing until October 4 to accommodate certain discovery for their claims. *See* Agreed Mot. to Continue Temporary Inj. Hr'g & Extend TROs, *Van Stean v. State of Texas*, No. D-1-GN-21-004179; *Faulkner v. State of Texas*, No. D-1-GN-21-004189; *Bridge Collective v. State of Texas*, No. D-1-GN-21-004303; *Tuegel v. State of Texas*, No. D-1-GN-21-004316; *Moayedi v. State of Texas*, No. D-1-GN-21-004489; *N.*

*Tex. Equal Access Fund v. State of Texas*, No. D-1-GN-21-004503; *Lilith Fund for Reprod. Equity v. State of Texas*, No. D-1-GN-21-004504; *Clinic Access Support Network v. State of Texas*, No. D-1-GN-21-004544 (Travis Cnty. Dist. Ct. Sept. 8, 2021) (same).

On September 8, TRTL's counsel asked by email whether the Planned Parenthood Plaintiffs would consent to a continuance of the temporary-injunction hearing until October 4, 2021. Although TRTL offered to extend the TRO by agreement to accommodate this continuance, it insisted that the TRO still expire by October 11. The Planned Parenthood Plaintiffs stated that they would agree to a continuance on the condition that the TRO remain in place until the trial court had an opportunity to rule on the temporary-injunction order, and that TRTL agree that it would not, through other filings, seek to interfere with the trial court's authority to issue such a ruling. TRTL refused to agree to those conditions and instead filed an opposed motion for a continuance. *See* Pls.' Ex. 1 (email exchange between counsel regarding continuance of the temporary injunction hearing). That motion was denied on September 8 during a hearing with Judge Maya Guerra Gamble. As Plaintiffs' counsel indicated during that hearing, their witnesses had already arranged to be available on September 13, and one of those witnesses would *not* be available on October 4.

Early Sunday morning, on September 12, TRTL filed its opposed motion with the MDL Panel to transfer all pending cases challenging S.B. 8 to an MDL pre-trial judge. They also included—without advance notice to the Planned Parenthood Plaintiffs or a request for their position—an emergency request to stay all trial-court proceedings, including the impending temporary-injunction hearing on Monday, September 13.

The Non-Planned Parenthood Plaintiffs subsequently filed a motion to consolidate all of their cases in the District Court for Travis County, an option that of course had been available to

TRTL itself in light of its stated interest in efficiency. Pls.' Mot. to Consolidate, *Van Stean v. State of Texas,* No. D-1-GN-21-004179; Fa*ulkner v. State of Texas, No.* D-1-GN-21-004189; Bridg*e Collective v. State of Texas,* No. D-1-GN-21-004303; T*uegel v. State of Tex*as, No. D-1-GN-21-004316; Moayedi v. State of Texas, No. D-1-GN-21-004489; *N. Tex. Equal Access Fund v. State of Texas*, No. D-1-GN-21-004503; *Lilith Fund for Reprod. Equity v. State of Texas*, No. D-1-GN-21-004504; *Clinic Access Support Network v. State of Texas*, No. D-1-GN-21-004544; *Fund Tex. Choice v. State of Texas*, No. D-1-GN-21-004606; *The Afiya Ctr. v. State of Texas*, No. D-1-GN-21-004605; *The W. Fund v. State of Texas*, No. D-1-GN-21-004648; *Frontera Fund v. State of Texas*, No. D-1-GN-21-004846; *Doe v. State of Texas*, No. D-1-GN-21-004193 (Travis Cnty. Dist. Ct. Sept. 12, 2021). Yet TRTL remarkably have stated they intend to *oppose* that motion, and its counsel expressly refused to bring to the MDL Panel's attention the motion and TRTL's position on it, claiming that this information had no "relevance" to the pending motion to transfer. *See* Pls.' Ex. 2 (email exchange between counsel regarding case consolidation).

## ARGUMENT AND AUTHORITIES

Texas Rule of Judicial Administration 13 authorizes use of a multi-district litigation transfer process through which cases can be transferred to a single judge for pre-trial proceedings. However, this process is available only upon a finding that the cases to be transferred are "related" and that transfer would further "the convenience of the parties and witnesses" and "promote the just and efficient conduct of the cases." Tex. R. Jud. Admin. 13.3(*l*). TRTL falls far short of meeting this standard here.

## I.   THE PLANNED PARENTHOOD CASE IS NOT RELATED TO THE OTHERS.

Whether cases sought to be transferred under Rule 13 are "related[]" is a "threshold" inquiry that turns on whether they "involv[e] common questions of fact." *In re Deepwater Horizon*

*Incident Litig.*, 387 S.W.3d 127, 128 (Tex. J.P.M.L. 2011). If cases are not related, the Panel "lack[s] authority" to assign them to a pretrial court "even if such an assignment would serve the interests of convenience and efficiency." *Id.* Despite TRTL's arguments to the contrary, the Planned Parenthood Plaintiffs' claims are not related to those of the other plaintiffs, which—as discussed above—are already functionally proceeding as a single matter anyway and are now subject to a formal motion to consolidate.

First, TRTL claims that the cases it seeks to transfer are related because they all challenge the constitutionality of S.B. 8. In this respect, however, TRTL conflates a common *issue* with a "common question[] of fact." *In re Ad Valorem Tax Litig.*, 216 S.W.3d 83, 84 (Tex. J.P.M.L. 2006) (citing Tex. R. Jud. Admin. 13.2(f); Tex. Gov't Code Ann. § 74.162). "Where only common ultimate *issues* are presented, transfer is improper." *In re Pers. Inj. Litig. Against Great Lakes Dredge & Dock Co., LLC*, 283 S.W.3d 547, 548 (Tex. J.P.M.L. 2007) (citation omitted) (emphasis added).

Here, the pending lawsuits all seek to invalidate all or a portion of S.B. 8 on its face, but that object of the litigation—even if shared in part by the Planned Parenthood and Non-Planned Parenthood Plaintiffs—is not a common question of fact. It is instead a common goal. *See In re Ad Valorem Tax Litig.*, 216 S.W.3d at 85–86 (holding that "Rule 13 does not purport to strive for uniformity of *law*" and is instead "limited to cases involving common questions of *fact*"). In addition, while the source of various plaintiffs' asserted harm stems in each case from S.B. 8, no one disputes that S.B. 8 was adopted by the Texas Legislature and is now in effect. Accordingly, that is simply a common fact, not a common *question* of fact to be resolved in litigation.

Moreover, as noted above, unlike the other plaintiffs, the Planned Parenthood Plaintiffs challenge not just S.B. 8's enforcement mechanism, but also its substantive ban on the provision

of abortion. Should they prevail on that latter challenge, they need not also prevail on the former. In contrast, the non-Planned Parenthood Plaintiffs do *not* challenge the ban. Moreover, the Planned Parenthood Plaintiffs also raise numerous additional claims that do not overlap with the other set of plaintiffs, including by alleging that S.B. 8 violates guarantees of equal protection and a right to privacy. *See* Pet. ¶¶ 90–94; 103–09.

Second, Defendants claim that the cases are related because all claims against TRTL arise from a single incident: TRTL's establishment of a website, www.prolifewhistleblower.com.[2] Yet the website is but one basis for the Planned Parenthood Plaintiffs' assertion that TRTL has threatened them with enforcement of S.B. 8 and thus given rise to these plaintiffs' claim for relief. *See* Pet. ¶¶ 58, 59 (relying on other threats beyond the website). Moreover, however TRTL attempts to defend against the Planned Parenthood Plaintiffs' claims, it cannot possibly use the same basis on which it has relied for the Non-Planned Parenthood Plaintiffs. *See, e.g.*, Decl. of John Seago ¶¶ 6, 8, *Van Stean v. State of Texas*, No. D-1-GN-21-004179 (Travis Cnty. Dist. Ct. Aug. 30, 2021) (asserting that he had "never heard of" the plaintiff before she sued him and taking the position that the plaintiff— as a non-abortion provider—could not possibly violate S.B. 8 because no abortion providers are performing abortions in violation of the Act); Decl. of John Seago ¶¶ 6, 8, *Tuegel v. State of Texas*, D-1-GN-21-004316 (Travis Cnty. Dist. Ct. Aug. 31, 2021) (same).

---

[2] Contrary to TRTL's portrayal, that website did not just "summarize[]" S.B. 8 and "invite[] individuals to report violations." Mot. for Transfer to a Multidistrict Litig. Pretrial Ct. & Emergency Req. for Stay of All Trial-Ct. Proceedings 7. Instead, it "gather[ed] information for its own enforcement actions" and "recruit[ed] additional enforcers." Pet. ¶ 60. And although Defendants suggest the website is a thing of the past, *see* MDL Mot. 7 n.2, TRTL has in fact stated that they intend to get the website back up. BeLynn Hollers, *Texas Right to Life Says It Plans to Restart Abortion Whistleblower Website*, Dallas Morning News (Sept. 9, 2021), https://www.dallasnews.com/news/2021/09/09/texas-right-to-life-says-it-plans-to-restart-abortion-whistleblower-website-tomorrow/.

Third, TRTL largely ignores the fact that the defendants named in the Non-Planned Parenthood Plaintiffs' cases and those in the Planned Parenthood Plaintiffs' cases are mostly not overlapping. Although all Plaintiffs have brought claims against TRTL, the Non-Planned Parenthood Plaintiffs also sued the State of Texas, its Governor, its Attorney General, and various Texas State Senators and Representatives. The claims against these additional defendants, and any justiciability and discovery disputes to which they give rise, are simply not present in the Planned Parenthood case, where Planned Parenthood has not sought discovery and intends to move for summary judgment in a matter of days.

## II.   TRANSFER OF PLANNED PARENTHOOD PLAINTIFFS' CASE TO A PRE-TRIAL COURT WOULD NOT FURTHER INTERESTS IN CONVENIENCE OR THE JUST AND EFFICIENT CONDUCT OF THE CASE.

Even if the Panel were to conclude that each of the cases at issue here is related under Rule 13, the Panel should nevertheless deny transfer because it does not serve any efficiency or convenience interest. Defendants contend that transfer would "prevent non-party witnesses from being subjected to repeated depositions, and prevent expert witnesses from being required to submit multiple reports or being subjected to repeated depositions." MDL Mot. 8; *see also id.* 9–10. Defendants' speculation about duplicative discovery cannot justify an MDL transfer, including because there is no indication that such discovery would ever be required in this case. *See, e.g.*, *In re Vanderbilt Mortg. & Fin., Inc.*, 166 S.W.3d 12, 15 (Tex. J.P.M.L. 2005) (denying transfer where the Panel had "not been told what fact or expert witnesses, if any, would be required to be deposed on multiple occasions without the order of transfer and intervention of a pretrial judge").

As noted above, the Planned Parenthood Plaintiffs' case involves a clear-cut constitutional challenge to S.B. 8, and it rests on public and direct threats by TRTL to sue the Planned Parenthood Plaintiffs if they violate the Act. For these reasons, the Planned Parenthood Plaintiffs do not believe

they need any discovery to move for—and be entitled to—summary judgment at the earliest possible date. Accordingly, the various pre-trial measures to which TRTL points are at a minimum speculative, and more likely entirely irrelevant, in the Planned Parenthood Plaintiffs' case, and application of the MDL process would only serve to delay resolution of a summary judgment motion that could well resolve these plaintiffs' claims quickly.

While, when there are common issues of fact and discovery, "Rule 13 provides a pretrial process that will allow cases to proceed efficiently toward trial," *In re Vanderbilt Mortg. & Fin., Inc.*, 166 S.W.3d at 14, here, application of the MDL process would have the opposite effect. Indeed, even if Defendants had established some risk of duplicative discovery, an MDL transfer would not be justified. *See, e.g.*, *In re Ad Valorem Tax Litig.*, 216 S.W.3d at 86 (denying MDL where 150 suits were filed in 42 counties, despite the fact that a party's "own corporate witnesses may be exposed to multiple demands," because "the bare assertion that witnesses might be inconvenienced" is inadequate to support transfer; "the circumstances of the litigation must at least make the assertion plausible.").

Defendants fare no better in trying to justify an MDL transfer with conclusory speculation that the pending cases could result in inconsistent rulings on matters that would be resolved by an MDL pretrial court. *See* Mot. for Transfer to a Multidistrict Litig. Pretrial Ct. & Emergency Req. for Stay of All Trial-Ct. Proceedings 12. "In cases arising from a common disaster, it makes sense to ensure unified treatment of the common issues and individualized treatment to the issues that differ." *In re Cont'l Airlines Flight 1404*, 387 S.W.3d 925, 930 (Tex. J.P.M.L. 2009). Here, the Planned Parenthood Plaintiffs have not sought discovery and intend to move for summary judgment quickly, which greatly reduces any risk of inconsistent rulings as to discovery issues. They have not sued the State of Texas, its Governor, its Attorney General, and various Texas State

Senators and Representatives (all of whom are defendants in the Non-Planned Parenthood Plaintiffs' suits), eliminating any risk of inconsistent rulings on justiciability or other issues implicated by these defendants' inclusion. And the *Non*-Planned Parenthood Plaintiffs, unlike the Planned Parenthood Plaintiffs, have not challenged the constitutionality of S.B. 8's abortion ban, and do not allege that S.B. 8 violates equal protection or privacy rights—eliminating the risk of inconsistent rulings arising from pretrial issues implicated by these claims.

As to the thirteen cases brought by the Non-Planned Parenthood Plaintiffs, to the degree that Defendants have concerns regarding convenience or efficiency despite that those cases (all of which are in Travis County) have already functionally been treated as consolidated, those concerns would be fully addressed by formal consolidation of those cases. Yet Defendants have stated their intent to oppose this motion, which counsel for the Non-Planned Parenthood Plaintiffs filed earlier today. Grant of that motion would leave one consolidated matter by Non-Planned Parenthood Plaintiffs (with all cases against identical defendants and involving close-to-identical claims), and the single Planned Parenthood case (involving different claims and defendants). Not surprisingly, Defendants point to no instance in which a panel has transferred such a small number of cases, both in a single county, to an MDL pretrial court.

## III. SHOULD THE PANEL BELIEVE THAT COORDINATION IS NECESSARY, IT SHOULD ESTABLISH A COMMITTEE OF LOCALLY ASSIGNED JUDGES.

Finally, if the Panel believes that MDL transfer is appropriate, Plaintiffs respectfully suggest that it establish a committee of locally assigned judges. As all of the pending cases are in Travis County, proceeding in this manner will appropriately protect the convenience of parties and witnesses and avoid any appearance that the MDL process has been used for purposes of improper forum shopping.

12

**CONCLUSION**

For the foregoing reasons, Defendants' motion for transfer to an MDL pretrial court and for a stay of all trial-court proceedings—including the TRO hearing scheduled for later this morning, of which Defendants have had notice for eleven days—should be denied.

Dated: September 13, 2021

By: */s/ Austin Kaplan*
Austin Kaplan
State Bar No. 24072176
KAPLAN LAW FIRM, PLLC
406 Sterzing St.
Austin, TX 78704
(512) 553-9390
Fax: 512-692-2788
akaplan@kaplanlawatx.com

Julie Murray*
Richard Muniz*
PLANNED PARENTHOOD FEDERATION OF AMERICA
1110 Vermont Ave., NW Ste. 300
Washington, DC 20005
(202) 973-4800
julie.murray@ppfa.org
richard.muniz@ppfa.org

Sarah Mac Dougall*
PLANNED PARENTHOOD FEDERATION OF AMERICA
123 William St., 9th Floor
New York, NY 10038
(212) 965-7000
sarah.macdougall@ppfa.org

*Attorneys for All Plaintiffs*

* *Pro hac vice motions pending*