IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ALEX DOE, Relator, | § § § | |
| THE STATE OF TEXAS, *ex rel.* ALEX DOE, Relator, | § § § | |
| THE STATE OF LOUISIANA, *ex rel.* ALEX DOE, Relator, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 2:21-CV-00022-Z |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., PLANNED PARENTHOOD GULF COAST, INC., PLANNED PARENTHOOD OF GREATER TEXAS, INC., PLANNED PARENTHOOD SOUTH TEXAS, INC., PLANNED PARENTHOOD CAMERON COUNTY, INC., PLANNED PARENTHOOD SAN ANTONIO, INC., | § § § § § § § § § § § § § § | |
| Defendants. | § § | |

**REPLY IN SUPPORT OF RELATOR'S MOTION TO COMPEL
PRODUCTION OF DOCUMENT ON DEFENDANTS' PRIVILEGE LOG**

**ARGUMENT**

**I.     Relator's motion is timely.**

Texas filed a motion to compel production of documents Defendants asserted privilege over, including this document. Dkt. 354. Relator filed a memorandum supporting compelled production of this document. Dkt. 370. In response, Affiliate Defendants argued that Relator's filing was improper, Dkt. 372, and the Court never addressed it. The Court, without addressing this particular document, denied Texas's motion. Dkt. 376. But PPGT did not even produce a redacted version of this document until December 21, 2022, which is *after* Texas filed its motion to compel. Ex. D. Under these circumstances, it is unclear that Relator's current motion should be a motion for reconsideration. If the Court finds that Relator is asking for reconsideration of something Relator asked the Court for previously, even though Relator did not have the redacted document at that time, Relator meets the standard because production of the redacted document is new evidence not previously available that justifies reconsideration. *Schiller v. Phys. Res. Grp., Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

Relator's motion was also filed in a reasonable time. PPGT did not even produce this redacted version until just before Christmas, well after the close of discovery, and shortly before the parties' dispositive motion deadline. Ex. D. After filing lengthy dispositive motions and appendices in early January, Plaintiffs were ordered to submit a supplemental brief on *Safeway* (Dkt. 409, 411), and then the parties filed dispositive motion responses in late January. Defendants then filed their motion to stay. Dkt. 422. Relator's counsel first conferenced the motion to compel on February 3, but the Court ordered an expedited response to the motion to stay (Dkt. 424), which Relator's counsel filed on February 14 (Dkt. 427), followed by this motion on February 17 (Dkt. 433) and a reply in support of summary judgment on February

1

21 (Dkt. 440). In short, Relator's counsel was kept busy with dispositive motion briefing, motions to unseal those documents (Dkt. 410, 425, 442), responding to the Court's request for supplemental briefing, and responding to Defendants' motion to stay, but got the motion on file as quickly as possible. The motion's delay to the middle of dispositive motion briefing is ultimately due to the delay in producing the document, which is PPGT's fault, but any further delay by Relator was not dilatory.

## II. The redacted portions of the document are not covered by attorney-client privilege.

Affiliate Defendants' privilege log claims this email chain involves "requesting and providing legal advice of counsel re: potential SB8 related bounty suits." PPGT claims that this document is covered by the attorney-client, attorney work-product, and joint-defense privilege. The Affiliate Defendants' abortion clinics were involved in a lawsuit filed in Travis County to block enforcement of the Texas Heartbeat Act (Senate Bill 8 from the 2021 session)—i.e., to block what Defendants refer to as "bounty suits." Some of the lawyers on the email chain represented plaintiffs in 13 other lawsuits also attempting to block enforcement of SB8. This has no relevance to the present lawsuit, yet PPGT produced this document (then clawed it back), meaning that it was responsive to Plaintiffs' discovery requests. A review of the unredacted portions of the document, which is dated September 20, 2021, shows that the unredacted content, is irrelevant to this lawsuit. Thus, the redacted portions, written by Susan Hays, Charles Siegel, and Ken Lambrecht, must be relevant. And given Affiliate Defendants' representations about their productions, it is highly likely that at least one of the redacted portions contained the word "Medicaid," which would

have caused the document to "hit" for that search term.[1] And since neither Hays nor Siegel are involved in Medicaid, and PPGT was, it is likelier that Lambrecht's email contains that term.[2] Defendants earlier admitted that the redactions contain "references to past government audits." Dkt. 372 at 2. Presumably, those government audits would have been in the context of Medicaid, which would be highly relevant here, especially to the issue of scienter. *See, e.g.,* Dkt. 440 at 24-25.

The party asserting attorney-client privilege "must prove: (1) that he made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." *United States v. Robinson*, 121 F.3d 971, 874 (5th Cir. 1997). The party claiming the attorney-client privilege bears "[t]he burden of demonstrating [its] applicability." *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985). "The proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the privilege exists." *S.E.C. v. Microtune, Inc.*, 258 F.R.D. 310, 315 (N.D. Tex. 2009).

To assess whether the redacted portions of this document are entitled to any privilege, the Court should first start by considering the recipients of the email and who they represented, as well as who actually represented Planned Parenthood entities in the litigation they were involved in. This is summarized in the chart below:

| Name(s) | Law Firm | Represented Party in Referenced Litigation | Part of Email Chain? |
|---|---|---|---|
| Alexandra Albright, Kevin Dubose, Marcy Greer | Alexander Dubose & Jefferson LLP | Represented (**as of September 24, 2021**) Allison Van Stean, Monica Faulkner, Jane Doe, Bridge Collective, Michelle | Yes (email initiated by Albright) |

---

[1] Earlier, Affiliate Defendants claimed to have produced tens of thousands of documents containing the word "Medicaid." Dkt. 237 at 14.

[2] If Lambrecht's email relates to or confesses liability for Medicaid fraud, the crime-fraud exception could apply, even if the email was otherwise privileged. *In re Burlington N., Inc.*, 822 F.2d 518, 524–25 (5th Cir. 1987).

3

| | | | |
|---|---|---|---|
| | | Tuegel, Ghazaleh Moayedi, North Texas Equal Access Fund, Lilith Fund, Clinic Access Support Network, Afiya Center, Fund Texas Choice, West Fund, and Frontera Fund, each Plaintiffs in 13 separate lawsuits filed in Travis County against Texas Right to Life (TRTL) | |
| Jennifer Ecklund, Elizabeth Myers | Thompson Coburn LLP | Represented (**at this time**) Allison Van Stean, Monica Faulkner, Jane Doe, Bridge Collective, Michelle Tuegel, Ghazaleh Moayedi, North Texas Equal Access Fund, Lilith Fund, Clinic Access Support Network, Afiya Center, Fund Texas Choice, West Fund, and Frontera Fund, each Plaintiffs in 13 separate lawsuits filed in Travis County against TRTL | Yes |
| Charles Siegel, Peter Kraus, Caitlyn Silhan | Waters & Kraus LLP | Planned Parenthood of Greater Texas Surgical Health Services (PPGTSHS) in *PPGTSHS v. TRTL* (**withdrew from case five days before email on September 15, 2021**) | Yes |
| Susan Hays | Law Office of Susan Hays PC | **None** | Yes |
| Ken Lambrecht | **Non-lawyer** | President/CEO of PPGTSHS | Yes |
| Julie Murray, Richard Muniz, Sarah McDougall | PPFA | PPGTSHS and other Texas PP abortion subsidiaries in *PPGTSHS v. TRTL* | **No** |
| Austin Kaplan | Kaplan Law Firm, PLLC | PPGTSHS and other Texas PP abortion subsidiaries in *PPGTSHS v. TRTL* | **No** |

None of the plaintiffs in any of these lawsuits, including PPGTSHS, were subject to SB8 enforcement actions at this time. If PPGT is claiming that this email involves legal advice related to the pending SB8 litigation, there can be no privilege because 1) the chain contains individuals who are not PPGT's attorneys, 2) contains an individual, Hays, who was not involved in the litigation, and 3) *does not contain* PPGT's actual attorneys. Thus, there would be no expectation of confidentiality, and any privilege would be waived. If PPGT is claiming that this email is privileged because it involves communication regarding anticipated possible SB8 enforcement actions against it and *not* the litigation that was pending at the time, it is essentially asking the Court to find that *all* communications among various abortion clinics or

4

providers, their board members, or some of their lawyers, are privileged if *some* of the communications discuss *possible* enforcement of an abortion law against *another* abortion provider who did something they did not. That stretches the relevant privileges far beyond what they were intended to protect and runs contrary to the rule that these privileges are to be construed narrowly. *In re Santa Fe*, 272 F.3d 705, 710 (5th Cir. 2001) (citing cases); *see also* Part IV *supra*.

The Court should also review the substance of the document (Ex. A) and evidence submitted by PPGT to see whether the chain had the "primary purpose" of seeking or obtaining legal advice or services. *Robinson*, 121 F.3d at 974. The chain started when Ms. Albright sent an op-ed to Myers, Ecklund, Greer, and Hays. The op-ed was written by a San Antonio abortion doctor (not associated with any of the plaintiff entities in the various litigation in Travis County) who claimed to have performed an abortion in violation of SB8. Albright then sends a PDF of the same article to the same people and adds Siegel, Silhan, Kraus, and Lambrecht, but not PPGTSHS's PPFA attorneys or Mr. Kaplan. Siegel, Albright, and Myers make brief, casual predictions about whether that abortion doctor will be sued. A portion of one of Siegel's responses is redacted. Albright responds with an excerpt from a New York Times article discussing a four-year statute of limitations and characterizing Texas Right to Life's statements in the excerpt as saying, "you got [sic] four years to sue." Lambrecht's following response to all recipients is redacted, as is Hays's following response. Siegel then suggests they discuss the matter on the phone, and the rest of the email chain involves discussion of the scheduling of that call. A fair reading of this context suggests that this was overall just an "FYI"-type email to other interested

5

parties about an op-ed, not communication for the "primary purpose" of obtaining or giving privileged legal advice.

Indeed, it could not have been anything else. Lawyers are prohibited by ethical rules from communicating with represented parties, especially on matters that could impact pending litigation. Every lawyer on that chain (with the possible exception of Hays, because she was uninvolved) knew that Lambrecht/PPGTSHS was being represented in SB8 litigation by PPFA attorneys and Kaplan, so it would likely be unethical for any of them to have offered legal advice to Mr. Lambrecht about SB8 without Kaplan's or the PPFA attorneys' knowledge or permission. It is also unclear why Lambrecht would have been seeking confidential legal advice from these attorneys on that topic rather than from his own attorneys in pending litigation. Regardless, PPGT offers no evidence to show that confidential legal advice is what Lambrecht sought in his redacted reply to Albright's email about the statute of limitations for SB8 enforcement, nor even any evidence to show that Lambrecht reasonably thought his email would be confidential. Ms. Silhan's general statement about the overall purpose of the email chain (which is belied by reading it) and *her* understanding of it, *see* Dkt. 462 (Defs' App.001-006) does not substitute for evidence demonstrating that *Lambrecht's* "primary purpose" for his redacted email was obtaining legal advice from people who were not his attorneys in the relevant matter, which would come from Lambrecht himself. Nor does it substitute for evidence from Hays or Siegel that the "primary purpose" of their emails was to *give* legal advice to a client. In fact, Silhan does not even appear to believe that the redacted portions of the document are attorney-client privileged, but rather only asserts that the entire

6

document is covered by work-product privilege. PPGT has thus failed to meet their burden to show that the redacted portions of the document are privileged.

### III. The redacted portions of the document are not protected by attorney work-product privilege.

"[T]he work product doctrine insulates a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements from an opposing counsel's inquiries." *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991).

> Like all privileges, the work product doctrine must be strictly construed. The burden is on the party who seeks work product protection to show that the materials at issue were prepared by its representative in anticipation of litigation or for trial. A general allegation of work product protection is insufficient to meet this burden. Instead, a clear showing must be made which sets forth the items or categories objected to and the reasons for that objection. *The proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the documents constitute work product.* Although a privilege log and an in camera review of documents may assist the court in conducting its analysis, a party asserting the work product exemption still must provide a detailed description of the materials in dispute and state specific and precise reasons for their claim of protection from disclosure.

*Ackerman McQueen, Inc. v. Stinchfield*, No. 3:19-CV-3016-X, 2020 WL 7645435, at *3 (N.D. Tex. Dec. 22, 2020) (emphasis added) (citation omitted).

PPGT cannot meet this burden because it offers no evidence to show that Lambrecht's email is attorney work-product. Lambrecht is not an attorney, and his attorneys in the SB8 litigation are not even copied on the email chain. If Lambrecht divulged the work-product or opinion of his attorneys to these other people, it was his own choice, not at the request of Relator's counsel. Attorneys can also assert the privilege over their work product, but Silhan's declarations, the only evidence PPGT submits, *see* Dkt. 462 (Defs' App.001-006), do not claim that Lambrecht's email

7

divulges *her* work product or opinion. If Lambrecht's email includes the term "Medicaid," or references past related audits, it is unlikely that it would divulge the work product of any of the attorneys on the email chain, since none of them represented PPGT in Medicaid litigation. Silhan also does not assert that Hays' and Siegel's emails divulge Silhan's work product. Silhan does not reference the redacted portions of the document at all but only claims that the *entire chain* is protected by work-product, even though it is evident from the unredacted portions that it is not. Silhan makes no distinction between those portions and the rest of the document.

Regardless, work-product privilege is generally waived when a party or their attorney discloses the work product. Such a "disclosure does waive protection if it has substantially increased the opportunities for potential adversaries to obtain the information." *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 378 (5th Cir. 2010) (citation omitted). The redacted messages were sent to a large group of lawyers and non-lawyers. Such a loose disclosure increases the chance that any work product would fall into the hands of others. And if the disclosure contained information irrelevant to potential SB8 bounty suits—i.e., past Medicaid audits of PPGT— Lambrecht was clearly not being careful to maintain the privacy of that information by putting it in writing to unrelated parties. Moreover, PPGT produced the entire document to Plaintiffs' counsel and agreed to allow them to file it on the public docket. Even if the initial production was inadvertent and did not waive the privilege, production of the redacted document was intentional, yet Silhan still claims the whole document broadly is work product. But any privilege that could be properly asserted by Silhan to any work product contained in this document has now been waived. And as to the redacted portions, the only evidence PPGT offers to support their claim of

8

privilege—Silhan's declarations—are insufficient to demonstrate that the redacted portions are covered, so PPGT failed to meet its burden.

Even if work-product protections did apply to the redacted portions, Relator's counsel believes that this document is highly relevant to the issues in this case because Affiliate Defendants indicated that this document is responsive to Plaintiffs' requests, it "references past government audits," Dkt. 372 at 2, it may contain the word "Medicaid," and there is no other way for Relator's counsel to obtain the redacted information in this document, which was not produced until December 21, 2022, after the close of discovery. Fed. R. Civ. P. 26(b)(3)(A).

### IV. The joint-defense or common-interest doctrine does not apply.

Even if work product is disclosed to a third party, it is true that it may still be protected under the joint-defense or common-interest doctrine. *F.T.C. v. Think All Pub., L.L.C.*, No. 4:07-CV-011, 2008 WL 687456, at *1 (E.D. Tex. Mar. 11, 2008). PPGT now claims the email chain is protected under this doctrine because the parties to the conversation were potential *defendants* in SB8 enforcement actions, but that does not carry the day. For communications between potential co-parties to be covered, "there must be a palpable threat of litigation at the time of the communication, rather than a mere awareness that one's questionable conduct might someday result in litigation, before communications between one possible future co-defendant and another . . . could qualify for protection." *Nieman v. Hale*, No. 3:12-cv-2433-L-BN, 2013 WL 6814789, at *2 (N.D. Tex. Dec. 26, 2013) (quoting *Santa Fe*, 272 F.3d at 711). Even if the parties to the email chain could be considered "potential co-parties" rather than just possible defendants in separate lawsuits involving different facts (since it is unlikely they were planning to all participate in the same illegal

9

abortions), there was no "palpable threat of litigation" at the time of the communication, and PPGT offers no evidence of any. In fact, PPGT stated at the time that it did not perform abortions that would violate SB8. *See* Ex. B (Dkt. 433-1 at 35).

If Lambrecht's email does reference Medicaid audits, none of the other parties to the emails are involved in Medicaid, so there could be no common interest there. Regardless, as explained above, if PPGT seeks to apply the common-interest doctrine in this context, it stretches the concept beyond reasonability. Because the common-interest rule—as well as other privilege and work-product rules— are "obstacle[s] to truthseeking," the Fifth Circuit holds that such rules must "be construed narrowly." *Santa Fe*, 272 F.3d at 710; *accord Think All*, 2008 WL 687456, at *1 ("The joint defense doctrine is to be narrowly construed because, although policy considerations support its use in some circumstances, it is an obstacle to truth seeking." (citation omitted)). And as stated above, even if the privilege does apply, the Court should still order disclosure under Rule 26(b)(3)(A) because Plaintiffs have no other way of obtaining the information in the redacted portions of the document. Defendants' documents concerning Medicaid, especially statements of the Defendants regarding Medicaid, are "probative of every issue in this case," as this Court has already determined. Dkt. 153 at 3.

## CONCLUSION

Relator respectfully requests that the Court review document PPGT00015864-PPGT00015871 in camera and order immediate production of the unredacted document, or at minimum, any non-privileged portions of the document.

Respectfully submitted.

<u>/s/ Heather Gebelin Hacker</u>
Heather Gebelin Hacker
Texas Bar No. 24103325
Andrew B. Stephens
Texas Bar No. 24079396
HACKER STEPHENS LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
(512) 399-3022
heather@hackerstephens.com
andrew@hackerstephens.com

***Attorneys For Relator***

11

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2023, this document was electronically filed and served via the Court's CM/ECF system.

/s/ Heather Gebelin Hacker
Heather Gebelin Hacker
