**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ALEX DOE, Relator, THE STATE OF TEXAS, *ex rel.* ALEX DOE, Relator, THE STATE OF LOUISIANA, *ex rel.* ALEX DOE, Relator, | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| Plaintiffs, | §<br>§ | No. 2:21-cv-022-Z<br><br>Date:      July 11, 2023 |
| v. | §<br>§ | |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., PLANNED PARENTHOOD GULF COAST, INC., PLANNED PARENTHOOD OF GREATER TEXAS, INC., PLANNED PARENTHOOD SOUTH TEXAS, INC., PLANNED PARENTHOOD CAMERON COUNTY, INC., PLANNED PARENTHOOD SAN ANTONIO, INC., | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| Defendants. | §<br>§ | |

**OPPOSITION IN PART TO RELATOR'S MOTION TO UNSEAL PLAINTIFFS'
REPLY IN SUPPORT OF PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT
AND SECOND SUPPLEMENTAL APPENDIX**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................... 1

LEGAL STANDARD..................................................................................................... 2

ARGUMENT.................................................................................................................. 4

      I.      Plaintiffs' Improperly Filed Second Supplemental Appendix and Other
             Documents Cited For The First Time on Reply Do Not Constitute "Judicial
             Records."................................................................................................... 5

      II.     The Materials Identified in Charts 3–6 Should Remain Sealed............................. 7

CONCLUSION............................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anderson v. N.Y.C. Health & Hosps. Corp.*,
2020 WL 1047054 (S.D.N.Y. Mar. 4, 2020) .......................................................................... 19

*Apple Inc. v. Samsung Electronics Co.*,
727 F.3d 1214 (Fed. Cir. 2013) ...................................................................................... 8, 11

*Arrowpac Inc. v. Sea Star Line, LLC*,
2014 WL 12617731 (M.D. Fla. May 1, 2014) .................................................................. 10, 20

*Benedict v. Hewlett-Packard Co.*,
2014 WL 233827 (N.D. Cal. Jan. 21, 2014) ........................................................................ 9

*BHI Energy I Power Servs., LLC v. KVP Energy Servs., LLC*,
2023 WL 223179 (N.D. Tex. Jan. 17, 2023) ........................................................................ 6

*Brown v. Maxwell*,
929 F.3d 41 (2d Cir. 2019) .................................................................................. 2, 3, 7

*Channel (H) Inc. v. Cquentia Series, LLC*,
2018 WL 10561906 (N.D. Tex. Jan. 29, 2018) ..................................................................... 7

*Chavez v. Standard Ins. Co.*,
2020 WL 6382611 (N.D. Tex. Oct. 30, 2020) ................................................................. 3, 17

*Crescent City Remodeling, LLC v. CMR Construction & Roofing, LLC*,
2023 WL 2950374 (E.D. La. Jan. 11, 2023) ....................................................................... 10

*Decapolis Grp., LLC v. Mangesh Energy, Ltd.*,
2014 WL 702000 (N.D. Tex. Feb. 24, 2014) ...................................................................... 16

*Delashaw v. Seattle Times Co.*,
2020 WL 6818720 (W.D. Wash. May 28, 2020) ................................................................. 14

*Dethrow v. Parkland Health Hosp. Sys.*,
204 F.R.D. 102 (N.D. Tex. 2001) ................................................................................. 5

*EEOC v. NFI Indus., Inc.*,
2015 WL 11022763 (N.D. Tex. Nov. 5, 2015) ..................................................................... 7

*Fidelity Nat'l Financial, Inc. v. Attachmate Corp.*,
2016 WL 9526337 (M.D. Fla. Nov. 7, 2016) ................................................................... 3, 7

*Hatch v. Demayo*,
2021 WL 7162554 (M.D.N.C. Feb. 22, 2021) ................................................................ 10, 20

*Ho v. Blue Mountain Mech., Inc.*,
2020 WL 1866427 (D. Haw. Apr. 14, 2020) ...................................................................... 18

*In re Elec. Arts, Inc.*,
298 Fed. App'x. 568 (9th Cir. 2008) ............................................................................. 13

*In re Pol'y Mgmt. Sys.*,
67 F.3d 296 (4th Cir. 1995) .................................................................................. 3, 7

*Johnson v. Quantum Learning Network, Inc.*,
  2016 WL 4472993 (N.D. Cal. Aug. 22, 2016) .............................................................. 10, 20

*June Med. Servs., L.L.C. v. Phillips*
  22 F.4th 512 (5th Cir. 2022) ............................................................................ 2, 3, 4, 9

*Kasilag v. Hartford Inv. Fin. Servs., LLC*,
  2016 WL 1394347 (D.N.J. Apr. 7, 2016) ....................................................................... 11

*Krieger v. Atheros Commc'ns, Inc.*,
  2011 WL 2550831 (N.D. Cal. Jun. 25, 2011) ................................................................. 16

*Last v. M-I, L.L.C.*,
  2022 WL 105107 (E.D. Cal. Jan. 11, 2022) ................................................................... 17

*Lima v. Wagner*,
  2018 WL 11198080 (S.D. Tex. Oct. 24, 2018) ................................................................ 9

*McDaniel v. Family Sleep Diagnostics, Inc.*,
  2017 WL 1062446 (N.D. Tex. Mar. 21, 2017) ................................................................ 7

*Miller v. York Risk Servs. Grp.*,
  2014 WL 936307 (D. Ariz. Mar. 11, 2014) .................................................................... 4

*N.H. Right to Life v. Dep't of Health & Hum. Servs.*,
  976 F. Supp. 2d 43 (D.N.H. 2013) .............................................................................. 19

*Nixon v. Warner Commc'ns, Inc.*,
  435 U.S. 589 (1978) ........................................................................................ 3, 8, 12

*NML Cap. Ltd. v. Repub. of Argentina*,
  2015 WL 727924 (D. Nev. Feb. 19, 2015) ................................................................ 18, 19

*Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*,
  2022 WL 3566939 (S.D. Tex. Aug. 18, 2022) ................................................................. 3

*Opperman v. Path, Inc.*,
  2017 WL 1036652 (N.D. Cal. Mar. 17, 2017) ................................................................. 9

*Philibotte v. Nisource Corp. Servs. Co.*,
  793 F.3d 159 (1st Cir. 2015) ..................................................................................... 6

*Planned Parenthood of Great Nw. & Hawaiian Islands, Inc. v. Azar*,
  352 F.Supp.3d 1057 (W.D. Wash. 2018) ...................................................................... 12

*Planned Parenthood of Wisc., Inc. v. Van Hollen*,
  94 F. Supp. 3d 949 (W.D. Wis. 2015) .......................................................................... 17

*Riley v. General Motors, LLC*,
  2023 WL 3172556 (M.D. Fla. May 1, 2023) ................................................................... 9

*Robles v. Eminent Med. Ctr., LLC*,
  619 F.Supp.3d 609 (N.D. Tex. 2022) ........................................................................... 5

*Ruby Slipper Café, LLC v. Belou*,
  2020 WL 4897905 (E.D. La. Jan. 8, 2020) ................................................................ 10, 11

*S.E.C. v. Van Waeyenberghe*,
  990 F.2d 845 (5th Cir. 1993) ................................................................ 3

*Saint Alphonsus Med. Ctr.—Nampa, Inc. v. St. Luke's Health Sys., Ltd.*,
  2014 WL 3101716 (D. Idaho July 3, 2014) ........................................... 16

*Slattery Co., Inc. v. Chesapeake La., LP*,
  2014 WL 12659587 (W.D. La. May 22, 2014) .................................. 10, 20

*Smith v. Wells Fargo Bank N.A*,
  2022 WL 4098031 (N.D. Tex. Aug. 2, 2022) .......................................... 7

*Springs Indus., Inc. v. Am. Motorists Ins. Co.*,
  137 F.R.D. 238 (N.D. Tex. 1991) ........................................................... 5

*Tovar v. United States*,
  2000 WL 425170 (N.D. Tex. Apr. 18, 2000) ........................................... 5

*Transperfect Global, Inc. v. Motionpoint Corp.*,
  2013 WL 209678 (N.D. Cal. Jan. 17, 2013) .......................................... 14

*U.S. Bank, N.A. as Trustee for Registered Holders of Aegis Asset Backed Securities Trust Mortg.*
  *Pass-Through Certificates, Series 2005-4 v. Richardson*,
  2020 WL 10050787 (N.D. Tex. June 1, 2020) ......................................... 6

*United States v. Amodeo*,
  71 F.3d 1044 (2d Cir. 1995) ............................................................. 8, 19

*United States v. Sealed Search Warrants*,
  868 F.3d 385 (5th Cir. 2017) ................................................................ 2

*United States v. Wey*,
  256 F.Supp.3d 355 (S.D.N.Y. 2017) .................................................... 20

*Vais Arms, Inc. v. Vai*,
  383 F.3d 287 (5th Cir. 2004) ................................................................ 7

*Vantage Health Plan, Inc. v. Willis Knighton Medical Ctr.*,
  913 F.3d 443 (5th Cir. 2019) ................................................................ 3

*Vesi Inc. v. Vera Bradley Designs, Inc.*,
  2021 WL 5104486 (S.D. Ohio Nov. 3, 2021) ........................................ 14

**Statutes**

N.D. Tex. R. 56.7 ....................................................................................... 6

## INTRODUCTION

Through a motion (ECF No. 459, the "Motion") substantially identical to Relator's two prior unsealing motions (ECF Nos. 479 and 487), Relator now asks the Court to unseal Plaintiffs' Reply in Support of Plaintiffs' Motions for Summary Judgment ("Reply") and the Second Supplemental Appendix.  Defendants do not oppose unsealing the Reply (ECF No. 495) in part, with the exception of the brief's discussion of clawed-back attorney client privileged information.[1] But for many of the same reasons detailed in Defendants' opposition to Relator's two prior motions,[2] Defendants request that the Court reject this latest attempt to publish thousands of pages of Defendants' confidential documents, most of which are largely or entirely irrelevant to any issue in this litigation.

To start, Relator's request to unseal the excessively broad ***1,564-page*** Second Supplemental Appendix and other documents cited for the first time in the Reply should be summarily denied because those documents were improperly filed in violation of this Court's orders and Local Rule 56.7 of the Northern District of Texas and thus do not constitute "judicial records" to which the public has any right of access.  Plaintiffs cited approximately 125 documents from Plaintiffs' Appendix and Supplemental Appendix for the first time in their Reply—often using random and haphazard string cites—*after* Defendants argued in their response to Relator's first motion to unseal that uncited documents should not be unsealed, *see* ECF No. 488 at 7-12, and in violation of the Local Rules.  As Defendants flagged in their response to Relator's second motion and as explained further below, *see* ECF No. 460 at 1 n.4, it would be improper to unseal 125 documents that Plaintiffs cited for the first time in the Reply.  Despite Relator's claim that "nearly every document" in the Appendix and Supplemental Appendix is cited in one or more of

---

[1] Attached hereto as **Exhibit A** is a proposed redacted copy of the Reply brief with this information redacted.
[2] Defendants hereby incorporate and adopt their arguments from those oppositions.  ECF Nos. 488 and 460.

the briefs Plaintiffs have filed, *see* ECF No. 496 at 1-2 (addressing the Appendix) and ECF No. 504 at 1-2 (addressing the Supplemental Appendix), dozens of documents have *never* been cited in *any* of Plaintiffs' summary judgment briefs.  *See* **Chart 7** on **Exhibit B**.  Because Relator seeks to unseal documents that do not constitute "judicial records," the Court need go no further in dispensing with the Motion.

Should the Court proceed to the next step, however, considerations of the public's right of access to judicial records must be balanced against the interests favoring nondisclosure.  In light of these considerations, Defendants undertook a review of the documents and (i) do not oppose unsealing the documents identified in **Charts 1 and 2** on **Exhibit B**, (ii) do not oppose partially unsealing (i.e., redacting) the documents identified in **Charts 3 and 4**, and (ii) oppose unsealing the remaining documents in **Charts 5, 6, and 7**.[3]  Those materials should remain under seal because the potential harm to the interests of Defendants and other non-parties from disclosure far outweighs the public's (non-existent) interest in accessing information largely irrelevant to the Court's adjudication of the summary judgment motions.

## LEGAL STANDARD

Whether materials should be unsealed is a two-step inquiry.  First, the Court must determine whether the material is a "judicial record" to which the public may have a right of access. *United States v. Sealed Search Warrants*, 868 F.3d 385, 396 n.4 (5th Cir. 2017); *see also June Med. Servs., LLC. v. Phillips*, 22 F.4th 512, 519 (5th Cir. 2022).  Only documents that would reasonably tend to influence a district court's ruling constitute "judicial records" to which the public-access right applies. *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019).  Materials that are

---

[3] Plaintiffs did not have to file the nine documents in the Second Supplemental Appendix that bear no confidentiality designation under seal, and Defendants do not object to unsealing those documents (i.e., Appx.008084-8424, Appx.009190, Appx.009210-9219).

merely filed with the court, but do not affect judicial decision making, are not "judicial records" to which the public has a right of access. *Id.*; *In re Pol'y Mgmt. Sys. Corp.*, 67 F.3d 296, at *4 (4th Cir. 1995); *see also Fidelity Nat'l Fin., Inc. v. Attachmate Corp.*, 2016 WL 9526337, at *1 (M.D. Fla. Nov. 7, 2016).

If the material constitutes a true "judicial record," then the court "must undertake a document-by-document, line-by-line balancing of the public's . . . right of access" to that material "against the interests favoring nondisclosure." *June Med. Servs.*, 22 F.4th at 521 (internal quotations omitted); *S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 849 (5th Cir. 1993). While the public has a common-law right to inspect "judicial records," the Supreme Court has long recognized that such a right is "not absolute." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). Rather, it is a qualified right that must yield when, for example, a party seeks to use court filings to release "sources of business information that might harm a litigant's competitive standing." *Id.* Although "other circuits have held that the [public access] presumption is 'strong,'" the Fifth Circuit has "repeatedly refused to so characterize the public access presumption." *Vantage Health Plan, Inc. v. Willis Knighton Med. Ctr.*, 913 F.3d 443, 450 (5th Cir. 2019). "Rather, in this circuit the decision to seal or unseal records is to be analyzed on a case-by-case basis." *Id.* Consistent with *Nixon*, courts in this circuit have applied a balancing test to seal judicial records to prevent the disclosure of confidential business information, protect the privacy interests of non-parties, and otherwise prevent "court files [from] becom[ing] a vehicle for improper purposes." *Chavez v. Standard Ins. Co.*, 2020 WL 6382611, at *1 (N.D. Tex. Oct. 30, 2020) (cleaned up); *see Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*, 622 F.Supp.3d 495, 507 (S.D. Tex. 2022).

## ARGUMENT

Plaintiffs had ample opportunity to identify favorable evidence in support of their motions for summary judgment and in opposition to Defendants' motions for summary judgment. Yet, Plaintiffs sought to add thousands of pages of evidence to the summary judgment record through their Reply that Relator now seeks to unseal—not to advance the interests served by the public-access doctrine, *June Med. Servs*, 22 F.4th at 519, but to circumvent the Protective Order[4] and publicize highly confidential documents and information that have no bearing on this case. *Cf. Miller v. York Risk Servs. Grp.*, 2014 WL 936307, at *2 (D. Ariz. Mar. 11, 2014) (noting that "if Plaintiffs seek to use materials which are subject to protective order, but not relevant to the trial, the court will rule that they are not relevant and their disclosure would continue to be subject to the Final Protective Order").[5]

The Court should categorically refuse to consider any evidence that was cited for the first time in the Reply that does not respond to arguments made in Defendants' opposition briefs because such evidence was improperly filed and thus does not fall into the category of "judicial records" to which public-access principles apply.[6] However, if the Court somehow determines it is appropriate to consider Plaintiffs' late-cited and late-filed evidence, Defendants respectfully request that the Court maintain under seal those materials identified in Section II because the

---

[4] Although Relator yet again claims that it was not possible to challenge "every document that was improperly designated by Defendants," ECF No. 459 at 1, n.1, Relator (for the third time) fails to explain why they did not (or purportedly could not) challenge the designations for *these particular documents*, consistent with this Court's prior Order, if they believed they had been mis-designated. *See* ECF No. 214 at 10 ("Relator must target specific documents when making [designation] objections").

[5] Plaintiffs did not confer with Defendants or seek leave of Court before filing their Reply brief or second supplemental appendix under seal. Had Plaintiffs conferred with Defendants, Defendants would have objected to the inclusion of documents not relevant to the summary judgment issues. Now that the documents have been filed under seal, however, they should remain under seal for the reasons discussed below.

[6] Affiliate Defendants appropriately cited evidence in their Reply (ECF No. 493) that responds to arguments made by Plaintiffs in their Opposition (ECF No. 481).

potential harm to Defendants and non-parties from disclosure far outweighs the public's interest (or lack thereof) in information that has no bearing on the merits of this case.

I.     **Plaintiffs' Improperly Filed Second Supplemental Appendix and Other Documents Cited For The First Time on Reply Do Not Constitute "Judicial Records."**

The Court should summarily deny Relator's request to unseal the Second Supplemental Appendix and the 125 other documents cited for the first time in the Reply because they do not constitute "judicial records" to which the public has a right of access.  As a general matter, a party may not raise new evidence for the first time in a reply brief—and for good reason because it deprives the nonmovant of a meaningful opportunity to respond.  *See Dethrow v. Parkland Health Hosp. Sys.*, 204 F.R.D. 102, 104 (N.D. Tex. 2001) (declining to consider any evidence cited for the first time in a reply brief); *Robles v. Eminent Med. Ctr., LLC*, 619 F.Supp.3d 609, 626 (N.D. Tex. 2022) (declining to consider movant's new arguments or new evidence on reply; "it is generally improper for a party to introduce new evidence at the reply stage of a motion proceeding because the purpose of a reply brief is to rebut the nonmovant's response, not to introduce new evidence"); *Springs Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239-40 (N.D. Tex. 1991) ("The office of the reply brief . . . is to rebut the nonmovant's response, thereby persuading the court that the movant is entitled to the relief requested by the motion.  The document is to contain argument, not new supporting materials.").  That principle is so fundamental that it is not only recognized in Northern District of Texas Local Rule 56.7, *see Tovar v. United States*, 2000 WL 425170, at *4, n.8 (N.D. Tex. Apr. 18, 2000), *aff'd*, 244 F.3d 135 (5th Cir. 2000),[7] but it is also explicitly included in this Court's Scheduling Orders.  The Third Amended Scheduling Order

---

[7] "The summary judgment local rules adopted in 1998 do not permit a party to submit additional evidence with a reply brief.  N.D. Tex. Civ. R. 56.5(c) confirms this, providing that '[a] party whose *motion* or *response* is accompanied by an appendix must include in its brief citations to each page of the appendix that supports each assertion that the party makes concerning the summary judgment evidence.'  (emphasis added).  Rule 56.5(c) does not refer to a *reply* that is accompanied by an appendix.  Additional summary judgment evidence may only be filed with leave of court.  *See* Rule 56.7."  *Tovar*, 2000 WL 425170, at *4, n.8.

made clear that "no supplemental pleadings, briefs, summary-judgment evidence, or other documents will be allowed in connection with [a] motion for summary judgment or response without leave of court."  ECF No. 346 at 4 (citing N.D. Tex. R. 56.7).

Despite having a full opportunity to identify any supporting evidence with their motions and responses on the cross-motions for summary judgment, Plaintiffs improperly and unilaterally sought to supplement the summary judgment record at the reply stage by filing a Second Supplemental Appendix containing *1,560 pages* of additional documents and referring, for the first time, to 125 uncited documents from prior appendices—all without seeking leave of Court.  The "sheer volume of materials" raised for the first time on reply is "akin to an unfair ambush," and it is unclear why Plaintiffs could not have raised these materials earlier or why they chose not to seek leave of Court.  *See BHI Energy I Power Servs., LLC v. KVP Energy Servs., LLC*, 2023 WL 223179, at *3 (N.D. Tex. Jan. 17, 2023).  Such conduct not only unfairly deprives Defendants of an opportunity to respond to Plaintiffs' new arguments and evidence, but also violates the Court's orders and Local Rules and, for that reason alone, should not be rewarded.  *See id.* at *4  (holding party's "failure to comply with the Local Rules constitutes an alternative or additional reason for the court to not consider the new reply evidence"); *Philibotte v. Nisource Corp. Servs. Co.*, 793 F.3d 159, 162 n.2 (1st Cir. 2015) (affirming district court's decision to "keep under seal portions of complaint that were filed in direct contravention of a state court order").  Indeed, given that leave to file new evidence in support of a reply is rarely granted even when sought (which Plaintiffs failed to do here), courts within the Northern District of Texas routinely refuse to consider evidence raised for the first time in a reply.  *See, e.g., U.S. Bank, N.A. as Trustee for Registered Holders of Aegis Asset Backed Securities Trust Mortg. Pass-Through Certificates, Series 2005-4 v. Richardson*, 2020 WL 10050787, at *2 n.4 (N.D. Tex. June 1, 2020); *Smith v. Wells Fargo Bank*

6

*N.A*, 2022 WL 4098031, at *1 (N.D. Tex. Aug. 2, 2022); *Channel (H) Inc. v. Cquentia Series, LLC*, 2018 WL 10561906, at *2 (N.D. Tex. Jan. 29, 2018); *EEOC v. NFI Indus., Inc*., 2015 WL 11022763, at *1 n.1 (N.D. Tex. Nov. 5, 2015).  To do otherwise would require that Defendants be given an opportunity to respond to the new evidence and corresponding arguments raised in the Reply before the Court rules on Plaintiffs' summary judgment motions.  *See McDaniel v. Family Sleep Diagnostics, Inc*., 2017 WL 1062446, at *2 n.1 (N.D. Tex. Mar. 21, 2017) (noting that "[t]he Fifth Circuit has said that a district court has discretion to rely on new evidence and arguments presented for the first time in a reply brief, but must 'give the non-movant an adequate opportunity to respond prior to ruling.'" (quoting *Vais Arms, Inc. v. Vai*, 383 F.3d 287, 292 (5th Cir. 2004)).

Because the Court need not (and should not) consider evidence raised for the first time in the Reply when adjudicating the summary judgment motions, the 125 newly cited documents and those included in the Second Supplemental Appendix do not constitute "judicial records" to which public-access principles apply.  *Brown*, 929 F.3d at 49 (explaining that "no presumption of public access attaches" to "documents filed by a party [that] are *not* relevant to the performance of a judicial function"); *In re Pol'y Mgmt. Sys. Corp.*, 67 F.3d 296, at *4 (concluding that "a document must play a relevant and useful role in the adjudication process in order for the common law right of public access to attach"); *see also Fidelity Nat'l Fin.*, 2016 WL 9526337, at *1.  The Court thus need go no further in its analysis and should categorically deny Relator's request to unseal the Second Supplemental Appendix or the other 125 documents raised for the first time in the Reply.

## II.   The Materials Identified in Charts 3–6 Should Remain Sealed.

Regardless of the Court's decision on the permissibility of the new evidence in the Second Supplemental Appendix and the 125 newly-cited documents under this Court's orders and Local Rules, many of the documents should remain sealed for the independent reason that any limited relevance and public interest those documents may have is outweighed by the harm their unsealing

would do to Defendants, their staff and patients, and third parties.  Should the Court consider this new evidence, Defendants do not oppose de-designating and unsealing the documents identified in **Charts 1 and 2** and certain portions of the documents in **Charts 3 and 4**.  However, the specific portions of documents identified in **Charts 3 and 4** and the limited number of remaining documents identified in **Charts 5 and 6** should remain sealed because of the strong interest in non-disclosure weighed against the extremely limited public interest.[8]

Contrary to Relator's assertions in reply to the prior unsealing motions (*see, e.g.*, ECF No. 504 at 2), Defendants' position is not grounded on the standard applicable to protective orders. Nor is "trade secret" status controlling of the inquiry.  *See, e.g., Apple Inc. v. Samsung Electronics Co.*, 727 F.3d 1214, 1225 n.3 (Fed. Cir. 2013) (district court did not need to make a formal determination of whether the information subject to seal are "trade secrets" "because documents may be sealed merely if they are 'sources of business information that might harm a litigant's competitive standing'" (quoting *Nixon*, 435 U.S. at 598)).  Rather, courts employ a balancing test that weighs the interests in nondisclosure against the public-access presumption, which varies based on the information's relevance to the Court's adjudicatory function.  *See United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) ("[T]he weight to be given the presumption must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.").  As the Second Circuit explained, "the strong weight to be accorded the public right of access" is largely derived from the role the documents in question play "in determining litigants' substantive rights" and "from the need for public monitoring of that conduct."  *Id*.  When the information sought to be sealed is

---

[8] The documents in **Chart 7** are not cited in any of Plaintiffs' motions and should remain under seal regardless of the confidentiality designations as they are not "judicial records" in any way.  *See* ECF No. 488 at 7-12; ECF No. 460 at 4-5.

determinative of the merits, then the public-access presumption is higher and may only be overcome upon a particularly strong interest in non-disclosure (e.g., by showing that the information constitutes a trade secret or would cause competitive harm if disclosed).  However, where the information sought to be sealed plays only a negligible role in the performance of Article III duties, then the weight of the public-access presumption is low and may be overcome by a correspondingly lower interest in non-disclosure that may fall short of trade secret status.  *See, e.g., Opperman v. Path, Inc*., 2017 WL 1036652, at *2 (N.D. Cal. Mar. 17, 2017) ("records attached to motions that are only 'tangentially related to the merits of a case' are not subject to the strong presumption of access").  For example, courts have sealed phone numbers—which are indisputably not "trade secrets"—from disclosure, recognizing an individual's privacy interests outweigh any public interest in a phone number that is irrelevant to the issues being litigated.  *See Benedict v. Hewlett-Packard Co*., 2014 WL 233827, at *3 (N.D. Cal. Jan. 21, 2014) (sealing confidential customer information, including address, phone number, and email address); *Riley v. General Motors, LLC*, 2023 WL 3172556, at *2 (M.D. Fla. May 1, 2023) (sealing employee and customer name, email and phone numbers).

As further explained below, the materials Defendants seek to maintain under seal are consistent with the Fifth Circuit's "line-by-line" balancing test, *June Med. Servs*., 22 F.4th at 521, and those grounds that courts have relied upon as favoring nondisclosure, particularly when, as here, the particular information that Defendants seek to seal is largely irrelevant to the Court's adjudication of the summary judgment motions, *see Lima v. Wagner*, 2018 WL 11198080, at *3 (S.D. Tex. Oct. 24, 2018).

**<u>Highly Sensitive Financial and Business Information.</u>**  The documents listed in **Charts 5 and 6** (and portions of certain documents listed in **Charts 3 and 4**) should remain under seal

because they contain highly sensitive business and financial information that is regularly sealed by courts—especially when, as here, the public has a relatively minimal interest in the particular details contained therein.  *See Ruby Slipper Café, LLC v. Belou*, 2020 WL 4897905, at *9 (E.D. La. Jan. 8, 2020) ("Courts in this Circuit have recognized "parties' strong interest in keeping their detailed financial information sealed" because the public has a "relatively minimal interest in [that] particular information.'" (citation omitted)).

For example, Plaintiffs cited over *300 pages* of detailed financial reports (Appx.007772-8083) solely for the proposition that "PPFA and its affiliates receive nearly $500 million in federal and state Medicaid funds each year."[9]  ECF No. 495 at 34.  Defendants do not object to unsealing the specific page that Plaintiffs appear to rely upon for this citation, i.e., Appx.007782, but the other *311 uncited pages* of these detailed financial reports should remain sealed under the Fifth Circuit's balancing test because (i) they contain highly confidential financial and commercial information about the financial condition, performance record, revenue streams, and expense structures of PPFA's affiliates that, if publicly released, could cause PPFA and its affiliates[10] competitive harm, given that disclosure would provide competitors insight into the affiliates' financial condition and performance record that would allow them to unfairly compete with or for those affiliates' business, *see* ECF No. 426-4 (Feb. 8, 2023 Declaration of Kim Custer) ¶ 8; Declaration of Kim Custer ("Custer Decl.") ¶ 6(a); Declaration of Melaney Linton ("Linton Decl.")

---

[9] Nothing in these documents suggests that *PPFA* receives any Medicaid funds—state or federal—but rather only supports the proposition that PPFA *affiliates* are enrolled in and receive funds from Medicaid.

[10] That the information at issue concerns sensitive financial information and year-over-year performance metrics for non-parties further merits keeping this confidential information under seal.  *See Crescent City Remodeling, LLC v. CMR Construction & Roofing, LLC*, 2023 WL 2950374, at *2 (E.D. La. Jan. 11, 2023) ("[A] private entity's interests in the continued privacy of its internal financial information (e.g., revenue, profit margin, etc.) justifies an order sealing same."); *Johnson v. Quantum Learning Network, Inc*., 2016 WL 4472993, at *2 (N.D. Cal. Aug. 22, 2016) (similar); *Hatch v. Demayo*, 2021 WL 7162554, at *2 (M.D.N.C. Feb. 22, 2021) (similar); *Arrowpac Inc. v. Sea Star Line, LLC*, 2014 WL 12617731, at *2 (M.D. Fla. May 1, 2014) (similar); *Slattery Co., Inc. v. Chesapeake La., LP*, 2014 WL 12659587, at *1 (W.D. La. May 22, 2014) (similar).

¶ 9, and (ii) the public interest in that particular information is especially low given that it bears no relevance to the Court's adjudication of the summary judgment motions. *See, e.g.*, *Ruby Slipper Cafe*, 2020 WL 4897905, at *9; *Apple Inc. v. Samsung Elec. Co., Ltd.*, 727 F.3d 1214, 1226 (Fed. Cir. 2013); *Kasilag v. Hartford Inv. Fin. Servs., LLC*, 2016 WL 1394347, at *7 (D.N.J. Apr. 7, 2016) ("Companies possess a legitimate private interest in keeping 'cost and profit information sealed from the public and their competitors, to ensure their competitiveness in the marketplace.'" (citation omitted)).

Plaintiffs also broadly cite PPFA's non-public financial statements and financial grant renewal application (Appx.004822-4859, Appx.004058-4112), *see* Custer Decl. ¶¶ 5(c), 6(c), for the proposition that PPFA's assets and annual revenue have increased significantly since 2012, *see* ECF No. 495 at 50 n.20, but do not rely on any particular information contained therein that would warrant disclosure over PPFA's interest in maintaining the confidentiality of its detailed financial information. Nor is it clear why public access principles should apply to the highly confidential details of PPGC's Financial Operations (Appx.005130-5135), *see* Custer Decl. ¶5(f), given that nothing in that document appears to support the proposition for which it is cited—that is, that "PPFA employs a large team of experts to help Affiliates maximize their Medicaid revenue." ECF No. 495 at 34.

The Court should also reject Relator's efforts to unseal documents that contain sensitive and confidential details concerning PPFA and affiliate funding that are irrelevant to this case. Plaintiffs cite a PPFA 2020 Draft Funding Agreement with BetterHealth (Appx.004158-4166) (along with a number of other documents discussed below) merely to support the proposition that "PPFA-developed or affiliate-CEO controlled entities provides [*sic*] products and prescription drugs to the affiliates." *See* ECF No. 495 at 32. The terms and conditions of PPFA's funding

11

agreements are confidential and proprietary, and those terms have nothing to do with the cited proposition that would merit public access to that confidential information. *See* Custer Decl. ¶ 5(a). Nor do the details of a PPGT-sponsored Retirement Plan (Appx.004143-4157) say anything about PPFA or the Affiliates' conduct vis-à-vis the Medicaid program that would give rise to any public interest in the minute details of the Plan's non-public financial statements.[11] Rather, Plaintiffs are clearly using the Court's docket for an improper purpose—to reveal confidential and sensitive financial details that have no bearing on this case—which independently merits retaining these documents under seal. *Cf. Nixon*, 435 U.S. at 598 (noting that "[e]very court has supervisory power over its own records and files" and that it may restrict public access to those records "where court files might ... become a vehicle for improper purposes," such as "gratify[ing] private spite" (quotation marks omitted)).

The Court should reject Relator's request to unseal documents containing recent detailed financial and grant information for each of the Affiliate Defendants. *See, e.g.*, Appx.004138- 4140 and Appx.005128-5129. Plaintiffs cite to these documents to support the proposition that PPFA created a "Medicaid Gap Fund" for Affiliates to provide services during a potential gap in Medicaid reimbursement but do not rely upon the specific amounts of those grants to warrant disclosing those details about Affiliate Defendants' revenues. ECF No. 495 at 34, 35. Making these documents public could cause Affiliate Defendants financial harm. *See* McKinney Decl. ¶ 8, ECF No. 488 at 36; Barraza Dec. ¶ 8, ECF No. 488 at 32; Curtis Decl. ¶ 8, ECF No. 488 at 41. *Cf., e.g.*, *Planned Parenthood of Great Nw. & Hawaiian Islands, Inc. v. Azar*, 352 F.Supp.3d 1057, 1064 (W.D. Wash. 2018) (sealing grant application that included "detailed information regarding, among other things: Plaintiffs' objectives and goals for the grant project, the communities and

---

[11] Moreover, the proposition for which Plaintiffs cite the Retirement Plan—that is, to note the existence of the retirement plan, *see* ECF No. 495 at 32—would, at most, only merit unsealing the cover page of that document.

number of patients the project proposes to service, and proprietary information regarding Plaintiffs' pricing methodologies"); *In re Elec. Arts, Inc.*, 298 Fed. App'x. 568, 569-70 (9th Cir. 2008) (district court should have sealed trial exhibit with pricing terms, royalty rates, and minimum payment terms that constituted "trade secret" information).

The Court should also reject Relator's efforts to unseal documents that contain sensitive and confidential details concerning affiliate fundraising and budgetary needs that are irrelevant to this case.  *See* Appx.006987-6992.  A description of Affiliate Defendants use of a fundraising campaign targeting an entirely separate litigation after leaving Texas Medicaid and details of an Affiliate Defendant's expenses are too far removed from the issues of this case to give rise to any public interest in unsealing this document.  Making this document public could harm Affiliate Defendants' business and fundraising abilities.  *See* Declaration of Sheila McKinney ("McKinney Decl.") ¶ 6; McKinney Decl. ¶ 8, ECF No. 488 at 36.

**Trade Secret & Proprietary Business Information.**  The documents listed in **Charts 5 and 6** (and portions of certain documents listed in **Charts 3 and 4**) should also remain under seal to the extent they contain detailed information concerning Defendants' proprietary programs and strategic business initiatives that, if disclosed, would reveal Defendants' trade secrets to competitors, as reflected in the accompanying declarations.  Given that Plaintiffs cite these documents for basic propositions that do not implicate most of the detailed information contained in those documents, the public interest (if any) is minimal and does not outweigh Defendants' interests (and the interests of affected non-party affiliates) against non-disclosure.

For example, Plaintiffs cite PPFA's OHS (Online Health Service) NewCo Business Plan (Appx.004167-4213)—which facially states that it contains "confidential, trade-secret information," *see* Appx.004169—simply to support the bare proposition that "PPFA-developed or

13

affiliate-CEO controlled entities provides [*sic*] products and prescription drugs to the affiliates." ECF No. 495 at 32. That document reflects the learnings, projections, and business plans following an intensive, collaborative effort undertaken by PPFA and several of its affiliates to research and experiment with different online care delivery models. *See* Custer Decl. ¶ 5(b). The details of that business plan have been restricted and kept confidential because public disclosure would provide a competitive advantage to competitors by (i) negating the time, ingenuity and resources expended by PPFA and its affiliates in creating the business plan and (ii) arming competitors with a roadmap for creating and delivering a competitive online care delivery model without incurring the same investment costs. *See id*. PPFA's interest in keeping the OHS NewCo Business Plan confidential thus outweighs the public's lesser interest in the particulars of that business plan—which, again, is not relevant to this lawsuit. *See id.*; *see also, e.g.*, *Vesi Inc. v. Vera Bradley Designs, Inc*., 2021 WL 5104486, at *1–2 (S.D. Ohio Nov. 3, 2021) (holding defendant's "trade secrets, such as business models, plans and proposals, financial analysis of proposed business relationships, and contractual agreements" should be sealed); *Delashaw v. Seattle Times Co*., 2020 WL 6818720, at *3 (W.D. Wash. May 28, 2020) (sealing employment contracts that "essentially contain [party's] 'playbook' for hiring and employing physicians" and "much of the information contained in the employment contracts is not relevant to this lawsuit, which limits the public interest in these contracts").

The Court should also maintain under seal the documents that detail how PPFA's proprietary Health Care Investment Program ("HCIP") operates (Appx.005076-5082, Appx.006653-6661, and Appx.006672-6691), which is a sensitive trade secret and would create a commercial disadvantage for PPFA and its affiliates if made public, given the number of competitors in this unique market sector. *See* Custer Decl. ¶¶ 5(e), 5(j), 5(k); *see also Transperfect*

*Global, Inc. v. Motionpoint Corp.*, 2013 WL 209678, at *1-2 (N.D. Cal. Jan. 17, 2013) (granting motion to seal exhibits that contained proprietary information about the sealing party's internal business operations). In addition, these documents contain detailed and confidential information about dozens of third parties—namely, PPFA affiliates that are not involved in this case—including extensive details concerning these entities' public-affairs strategies, including sensitive relationships that are not public; their external consultants' business operations; and their government-reform efforts. Making such documents public would harm these non-parties' businesses, their third-party consultants, and individual staff members who are wholly unconnected to this case. *See* Custer Decl. ¶ 5(k). Meanwhile, Plaintiffs only cite these documents for the proposition that "PPFA employs a large team of experts just to help Affiliates maximize their Medicaid revenue," which does not support any public interest in the particulars of PPFA's trade secrets surrounding its confidential and proprietary HCIP program. Because the interests of Defendants and non-party affiliates assertedly outweighs any purported public interest in that particular information, that detailed information should remain under seal.

Nor does Plaintiffs' citation to several documents containing confidential strategic priorities and nonpublic programs—for similarly basic propositions—support unsealing that sensitive information, which, if released, could cause PPFA and its affiliates competitive harm. For example, Plaintiffs cite nearly 100 pages of evidence—including an Org Chart and Leadership Teams Overview (Appx.009246-9278) (the "CXO Document") and two slide decks (Appx.009279-9335) (the "Board Reports") included in the Second Supplemental Appendix—merely to "describ[e] [Lit & Law's] place within CXO department." ECF No. 495 at 34-35 (citing Appx.009242-9335). While PPFA does not object to unsealing the two pages that Plaintiffs appear to rely on for this proposition (Appx.009248, Appx.009251), the remaining 90 pages in those

exhibits contain sensitive, confidential information reflecting PPFA's strategic priorities and specific details about nonpublic programs or initiatives, in addition to highly confidential financial and commercial information, that have nothing to do with Lit & Law's place within CXO (and are not cited to support any other assertion or argument in the Reply). Custer Decl. ¶¶ 5(n), 5(o). Because PPFA's interest in non-disclosure far outweighs the public interest (or lack thereof) in disclosure of that information, the remaining pages of the CXO Document and the Board Reports should remain sealed. *Cf., e.g.*, *Decapolis Grp., LLC v. Mangesh Energy, Ltd.*, 2014 WL 702000, at \*2 (N.D. Tex. Feb. 24, 2014) (sealing document that contained "sensitive information such as business strategies and the developmental progress of [the party's] oil and gas exploration"); *Krieger v. Atheros Commc'ns, Inc.*, 2011 WL 2550831, at \*1 (N.D. Cal. Jun. 25, 2011) (finding information regarding party's "long-term financial projections, discussions of business strategy, and competitive analyses" sealable).

Likewise, PPFA does not object to unsealing the bulleted paragraph on Appx.009235 of a bi-weekly briefing for PPFA's executive leadership team ("Bi-Weekly Briefing") that concerns a January 22, 2019 meeting of the Medical Legal Advisory Panel that the Reply discusses. *See* ECF No. 495 at 35. But PPFA has a legitimate competitive and business interest in preventing disclosure of the remainder of the Bi-Weekly Briefing, which contains sensitive, confidential information reflecting PPFA's strategic priorities and specific details about nonpublic programs or initiatives, as well as confidential information about third parties, that is not necessary to the public's understanding of this case and thus warrants maintaining that information under seal. *See* Custer Decl. ¶ 5(l); *cf., e.g.*, *Saint Alphonsus Med. Ctr.—Nampa, Inc. v. St. Luke's Health Sys., Ltd.*, 2014 WL 3101716, at \*4 (D. Idaho July 3, 2014) (sealing "sensitive financial information

and business strategy" information because it "contain[ed] nothing that the Court relied upon in its decision or that the public needs to understand this case").

PPFA's Medical Director Orientation Manual (Appx.004888-4942), National Office Review And White Paper (Appx.005289-5303), RCM Playbook Chapter and NCL Playbook Chapter (Appx.005318-5435), Research & Analysis (Appx.005451-5519), Medicaid Reimbursement Toolkit (Appx.006604-6634), Taking C.A.R.E. of Business, Introduction of the PPFA Compliance Initiative (Appx.006813-6848); PPFA Revenue Cycle Toolkit (Appx.006849-6867), and PPFA National Program Support (Appx.006965-6973) contain trade secrets that should remain under seal. Those documents contain confidential and proprietary commercial information that PPFA and its affiliates have collaborated on and developed through considerable time, effort (including their collective research and experience) and expense.  These documents are kept confidential and only shared between PPFA and its affiliates, because public disclosure would not only grant competitors an advantage—by allowing them to piggyback off of PPFA and its affiliates' investments and research in developing these materials—but also devalue PPFA's brand by making publicly available the very materials that PPFA markets as an exclusive benefit of membership.  *See* Custer Decl. ¶¶ 5(d), 5(g), 5(h), 5(i); Linton Decl. ¶ 7; McKinney Decl. ¶ 7; Barazza Decl. ¶ 7, ECF No. 488 at 31-32; *see also Planned Parenthood of Wisc., Inc. v. Van Hollen*, 94 F. Supp. 3d 949, 960 (W.D. Wis. 2015) (sealing Planned Parenthood manuals that contained "proprietary and sensitive business information" constituting trade secrets); *Last v. M-I, L.L.C.*, 2022 WL 105107, at *1-2 (E.D. Cal. Jan. 11, 2022) (sealing training manual that defendant developed over a number of years, treated as confidential and proprietary and, if disclosed, would disadvantage the defendant by granting competitors the benefits of the guide without incurring the administrative expense of developing their own materials); *Chavez*, 2020

17

WL 6382611, at *2  (denying plaintiff's motion to unseal documents where defendant "incurred substantial expense in the creation of [the documents], treats them as confidential and proprietary trade secrets, and does not willingly or voluntarily provide access to this information to individuals not affiliated with [defendant]").

Similarly, Plaintiffs' citations to several documents containing Affiliate Defendants' confidential strategic priorities and nonpublic programs—for similarly basic propositions—do not support unsealing that sensitive information, which, if released, could cause PPFA and its affiliates competitive harm.  For example, Plaintiffs cite to a document containing strategic discussions for healthcare clinic coding and certain funding decisions, Appx006431-6436, to support the claim that Affiliate Defendants have repaid Medicaid reimbursements in the past.  And, as discussed above, Plaintiffs cite to Appx.006987-6992 in a long chain as evidence that PPFA and Affiliate Defendants share revenue, *see* ECF No. 495 at n.10.  This document relates entirely to the use of a fundraising campaign for SB8 litigation and Affiliate Defendants' programmatic decisions and priorities months after leaving Texas Medicaid.  While there is little to no public interest in these documents related to the issues in this case, unsealing them could cause financial harm by impacting other fundraising campaigns, disrupt current systems and programs, and affect Affiliate Defendants' ability to provide patient care.  McKinney Decl. ¶ 7, ECF No. 488 at 36.

**Non-Party Names and Contact Information.**  Certain documents listed in **Charts 3 and 4** should remain under seal or be redacted[12] because they contain personal and private information about non-parties to this litigation, the information is irrelevant to any issue in this case, and, if released, would place those individuals at risk of harassment or personal harm.  *See, e.g.*, *Ho v.*

---

[12] Mindful of concerns about Relator's inability to show AEO-designated documents to their client (ECF No. 214 at 7) and in an attempt to avoid confidentiality issues, Affiliate Defendants offered to redact certain PII from certain categories of documents, yet Relator refused.  *See* ECF No. 253 at 11, n.3.

*Blue Mountain Mech., Inc*., 2020 WL 1866427, at *3 (D. Haw. Apr. 14, 2020); *NML Cap. Ltd. v. Repub. of Argentina*, 2015 WL 727924, at *5 (D. Nev. Feb. 19, 2015).  While Relator identifies no grounds that justify unsealing on public-access grounds, other courts have recognized that personal contact information "falls under the penumbra of Rule 5.2 because it raises the 'privacy and security concerns' Rule 5.2 protects," and redacting such "information from the public record will not infringe the quality or integrity of the judicial process, which the public right of access protects, because the information is irrelevant to the merits."  *NML Cap. Ltd*., 2015 WL 727924, at *5; *see also Anderson v. N.Y.C. Health & Hosps. Corp*., 2020 WL 1047054, at *3 (S.D.N.Y. Mar. 4, 2020) ("[T]he Court appreciates that there is certain information contained in the resumes, such as the applicants' home addresses, personal phone numbers, and email addresses, that is not public, has no bearing on this Court's Report and Recommendation on Defendants' Motion for Summary Judgment, and has been recognized by courts in this Circuit as the type of personal information that should be shielded from public disclosure" because it is "precisely the type of personal information that could give rise to an enhanced risk of substantial prejudice to their safety interests.").  Accordingly, Defendants do not oppose unsealing certain documents, provided that the personal contact information and names of non-publicly identified employees[13] is redacted to protect the privacy and security of those non-parties, which unquestionably outweighs any public interest (or lack thereof) in that information.[14]

**Non-Party Financial and Commercial Information.**  Certain documents listed in **Charts 5 and 6** should remain under seal or be redacted because they contain the confidential information

---

[13] Defendants will provide the names of non-publicly identified employees to the Court *in camera* if requested.

[14] Courts have similarly rejected attempts by parties to obtain the names and phone numbers of Planned Parenthood employees under FOIA, finding that releasing such information "would constitute a clearly unwarranted invasion of their personal privacy" that outweighs the public interest in such information.  *See N.H. Right to Life v. Dep't of Health & Hum. Servs.*, 976 F. Supp. 2d 43, 63-64 (D.N.H. 2013), *aff'd sub nom. N.H. Right to Life v. U.S. Dept. of Health & Hum. Servs.*, 778 F.3d 43 (1st Cir. 2015) ("Right to Life does not identify, and the court cannot conceive of, any public interest in that kind of information").

of non-parties (including non-party affiliates, *see supra* fn. 10). *See Amodeo*, 71 F.3d at 1050 ("the privacy interests of innocent third parties should weigh heavily in a court's balancing equation"); *see, e.g.*, *United States v. Wey*, 256 F.Supp.3d 355, 411 (S.D.N.Y. 2017) (granting motion to seal exhibits submitted with brief because "relevant materials reflect medical, financial, educational, and other personal information pertaining to non-parties"); *Johnson*, 2016 WL 4472993, at *2 (sealing portions of declaration that contain "sensitive financial information of non-parties . . . as well as sensitive financial information of Defendant that, if made public, could harm Defendant's business interests"); *Hatch*, 2021 WL 7162554 at *2 (sealing information "to ensure the protection of financially sensitive information made available by non-parties"); *Arrowpac*, 2014 WL 12617731, at *2 (sealing loan documents containing "non-parties['] confidential, competitively sensitive, private, and proprietary financial information"); *Slattery*, 2014 WL 12659587, at *1 (sealing agreements that contained "financial information of other entities (some of which are separate from, but related to, Defendant) and detailed information about how various rates were calculated").

Relator seeks to unseal over 150 pages of an Affiliate Defendant's business partner non-party for-profit corporation's board minutes, bylaws, and financial reports which contains sensitive financial and commercial information of the non-party holding company and its subsidiaries. *See* Appx.004222- 4385. They do this despite citing to only one page in a string cite to support the claim "PPFA-developed or affiliate-CEO controlled entities provides products and prescription drugs to the affiliates." ECF No. 495 at 32. Plaintiffs cite these sensitive financial documents of a third party for a basic proposition that does not implicate most, if any at all, of the detailed information contained therein. As such, the public interest (if any) is minimal and does not outweigh either the non-party's or Affiliate Defendant's interest against non-disclosure and

potential serious competitive harm to the non-party's business. *See* Barraza Decl. ¶ 5, ECF No. 488 at 30-31.

Similarly, in that same string cite, Plaintiffs include Appx.007042-7062, a group purchasing organization agreement with a non-party medical device and medication vendor that contains a confidentiality clause. ECF No. 495 at 32. Affiliate Defendants are bound by that contract to keep the terms and other information regarding the agreement confidential. Disclosure of this information could also cause Affiliate Defendants to lose this business partner, causing financial harm and impacting Affiliate Defendants' ability to retain favorable pricing, and could put Affiliate Defendants at risk of litigation for violating contractual terms. Plaintiffs fail to create a public interest in the terms of this group purchasing organization agreement, which has no bearing on the issues in this case, that would outweigh the financial harm to Affiliate Defendants and the vendor, to justify unsealing the document. *See* McKinney Decl. ¶ 8.

Relator also seeks to unseal irrelevant proprietary resources provided to Affiliate Defendants by a non-party insurance company. *See* Appx.007088-7140 and Appx.007141-7155. These documents, which focus on the non-party insurance company's suggested risk management best practices and procedures, are included in a lengthy string cite supposing to support the claim that PPFA exerts operational control over its affiliates. ECF No. 495 at 32. However, nothing in these documents supports this assertion and Affiliate Defendants' insurance company's risk management forms and best practices are only marginally connected to the issues of Affiliate Defendants' submission of Medicaid claims and retention of Medicaid funds. Disclosure of the insurance company's resources could cause competitive and financial harm to both the insurance company by making its strategies available to its competitors, and to Affiliate Defendants by making their risk management practices available to competitors. *See* McKinney Decl. ¶ 7;

21

McKinney Decl. ¶ 6, ECF No. 488 at 35.  These risks greatly outweigh the limited public interest in these documents.

**CONCLUSION**

Defendants do not oppose unsealing Plaintiffs' Reply in part, but do oppose unsealing the quoted attorney-client privileged material that has been clawed back.  The Court should order the unsealing of the redacted brief attached as **Exhibit A**.  The Court should not consider any of the late-filed evidence in the Second Supplemental Appendix or the 125 newly cited documents from their prior appendices, and Relator's Motion should be summarily denied on that front.  Should the Court elect to consider this new evidence despite Plaintiffs' violations of its orders and the Local Rules, then the Court should order a combination of redactions and continued sealing as reflected herein and in the accompanying charts on **Exhibit B**.

Dated:  July 11, 2023

Respectfully submitted,

O'MELVENY & MYERS LLP

By:    */s/ Danny S. Ashby*

DANNY S. ASHBY
Texas Bar No. 01370960
dashby@omm.com
MEGAN R. WHISLER
Texas Bar No. 24079565
mwhisler@omm.com
2501 N. Harwood Street, Suite 1700
Dallas, Texas 75201
T: (972) 360-1900
F: (972) 360-1901

LEAH GODESKY (*pro hac vice*)
lgodesky@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
T: (310) 553-6700
F: (310) 246-6779

ANTON METLITSKY (*pro hac vice*)
ametlitsky@omm.com
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

RYAN BROWN ATTORNEY AT LAW
RYAN PATRICK BROWN
Texas Bar No. 24073967
ryan@ryanbrownattorneyatlaw.com
1222 S. Fillmore St.
Amarillo, Texas 79101
T: (806) 372-5711
F: (806) 350-7716

*Attorneys for Defendant Planned Parenthood
Federation of America, Inc.*


ARNOLD & PORTER KAYE SCHOLER LLP

By:      */s/ Tirzah S. Lollar*

CRAIG D. MARGOLIS
Craig.Margolis@arnoldporter.com
TIRZAH S. LOLLAR
Tirzah.Lollar@arnoldporter.com
CHRISTIAN SHEEHAN
Christian.Sheehan@arnoldporter.com
EMILY REEDER-RICCHETTI
Emily.Reeder-Ricchetti@arnoldporter.com
MEGAN PIEPER
Megan.Pieper@arnoldporter.com
ALYSSA GERSTNER
Alyssa.Gerstner@arnoldporter.com
MEGHAN C. MARTIN
Meghan.Martin@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.6127
Fax: +1 202.942.5999

PAULA RAMER
Paula.Ramer@arnoldporter.com

250 West 55th Street New York, New York
10019-9710
T: +1 212.836.8474

CHRISTOPHER M. ODELL
Texas Bar No. 24037205
Christopher.Odell@arnoldporter.com
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: +1 713.576.2400
Fax: +1 713.576.2499

RYAN BROWN ATTORNEY AT LAW
RYAN PATRICK BROWN
Texas Bar No. 24073967
ryan@ryanbrownattorneyatlaw.com
1222 S. Fillmore St.
Amarillo, Texas 79101
T: (806) 372-5711
F: (806) 350-7716

*Attorneys for Defendants Planned Parenthood
Gulf Coast, Inc., Planned Parenthood of Greater
Texas, Inc., Planned Parenthood South Texas,
Inc., Planned Parenthood Cameron County, and
Planned Parenthood San Antonio*

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2023, a copy of the foregoing was served pursuant to the

Court's ECF system.

*/s/ Danny S. Ashby*
Danny S. Ashby