# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# AMARILLO DIVISION

| | |
|---|---|
| United States of America § | |
| *ex rel.* ALEX DOE, Relator, § | |
| § | |
| The State of Texas § | CIVIL ACTION NO. 2:21-CV-00022-Z |
| *ex rel.* ALEX DOE, Relator, § | |
| § | |
| The State of Louisiana § | |
| *ex rel.* ALEX DOE, Relator, § | Date:       August 25, 2023 |
| § | |
| *Plaintiffs*, § | |
| v. § | |
| Planned Parenthood Federation of America, § | |
| Inc., Planned Parenthood Gulf Coast, Inc., § | |
| Planned Parenthood of Greater Texas, Inc., § | |
| Planned Parenthood South Texas, Inc., Planned § | |
| Parenthood Cameron County, Inc., Planned § | |
| Parenthood San Antonio, Inc., § | |
| *Defendants*. § | |

## DEFENDANTS' SUPPLEMENTAL BRIEF
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants Planned Parenthood Gulf Coast, Inc. ("PPGC"); Planned Parenthood of Greater Texas, Inc. ("PPGT"); Planned Parenthood South Texas, Inc. ("PPST"); Planned Parenthood Cameron County, Inc. ("PPCC"); and Planned Parenthood San Antonio, Inc. ("PPSA") (collectively, "Affiliate Defendants") and Planned Parenthood Federation of America, Inc. ("PPFA"; collectively, "Defendants") respectfully submit this short, supplemental brief limited to the question of the appropriate construction of the term "improperly" in 31 U.S.C. § 3729(a)(1)(G) as invited by the Court at the August 15, 2023 summary judgment hearing. *See* Hr'g Tr. 34:19-35:3.

The FCA does not define "improperly." Plaintiffs appear to argue that the term "does [no] work," *see id.* 14:13, 14:21-22, and is somehow synonymous with "knowingly," even though the latter is used separately throughout the FCA and is specifically defined, *see* 31 U.S.C. § 3729(b)(1). But this reading would essentially erase "improperly" from the statute, contravening fundamental principles of statutory construction. Instead, these principles compel a reading of "improperly" that avoids surplusage and appropriately modifies the active verb "avoid." Read together, these terms mean that, to be held liable under the reverse false claim provision, a defendant must engage in conduct that keeps from the government money that it was obligated to pay with fraudulent intent—that is, by intentionally avoiding a known obligation to repay funds to the government. No other construction affords actual meaning to the operative terms "improperly," "knowingly," and "avoid." Because there is no evidence that Defendants acted here with the requisite scienter, the Court must grant summary judgment for all Defendants.

Courts strongly presume "that statutory language is not superfluous." *McDonnell v. United States*, 579 U.S. 550, 569 (2016). Where one interpretation gives effect "to every clause and word of a statute" and another does not, courts presume that Congress intended the former meaning, not

the latter. *Duncan v. Walker*, 533 U.S. 167, 174 (2001). The FCA makes it a violation to "*knowingly and improperly avoid[]* or decrease an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G) (emphasis added). The statute defines obligation, in turn, as "an established duty . . . arising from . . . the retention of any overpayment." *Id.* § 3729(b)(3). Accordingly, (1) the term "improperly" must mean something more than "knowingly"; and (2) the term "avoids" must mean something more than the mere "retention" of an overpayment. If "improperly" simply means "knowingly," as Plaintiffs suggest, the term would be meaningless. And "avoid[ing]" an obligation must mean more than merely retaining an overpayment since that is the conduct that created the obligation in the first place. The Affordable Care Act, which does not modify the FCA's statutory text requiring "knowingly and improperly avoid[ing]" an obligation to impose liability, does not change the analysis. The ACA simply makes an "identified" overpayment an "obligation" for purposes of the FCA sixty days after its identification. 42 U.S.C. § 1320a-7k(d).

To ascertain the meaning of the *entire* phrase "knowingly and improperly avoids," the Court must begin with the presumption that Congress intended for those terms to carry their common and ordinary meaning. *See Bond v. United States*, 572 U.S. 844, 861 (2014) (considering "ordinary meaning of a defined term" to resolve ambiguity); A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 228 (2012) ("[T]he meaning of the definition is almost always closely related to the ordinary meaning of the word being defined"). Black's Law Dictionary defines the term "improper" as "fraudulent or otherwise wrongful." Improper, Black's Law Dictionary (11th ed. 2019); *see Olson v. Fairview Health Servs. of Minn.*, 831 F.3d 1063, 1074 (8th Cir. 2016) ("it would be unreasonable to assume [the FCA] covers both fraudulent and nonfraudulent conduct"). "Fraudulent," in turn, requires a mental state akin to willfulness. *See*

Fraud, Merriam-Webster Dictionary, https://tinyurl.com/yxyk6ddy (last visited Aug. 25, 2023) (defined as "*intentional perversion* of truth in order to induce another to part with something of value or to surrender a legal right" (emphasis added)).

This understanding is also consistent with the way in which Congress has used the term "improper" in other statutes. *See Peter v. NantKwest, Inc.*, 140 S. Ct. 365, 373 (2019) (courts have typically looked at Congress' use of the same or similar terms "across various statutes" to guide the interpretation of the term in a similar statute); *see also Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 142 S. Ct. 941, 947 (2022) (relying on "nearby statutory provisions" to "confirm" interpretation of Copyright Act's knowledge requirement). Congress has used that term in statutes prohibiting and penalizing conduct to require proof of "willfulness." *See, e.g.*, 10 U.S.C. § 910 (providing that "improper hazarding of vessel or aircraft" occurs when a person "*willfully and wrongfully*, hazards or suffers to be hazarded any vessel or aircraft" (emphasis added)); 18 U.S.C. § 2520(g) (describing "improper disclosure" as "*willful* disclosure or use" (emphasis added)); 18 U.S.C. § 2707(g) (providing that "improper disclosure" requires the "*willful* disclosure of a 'record'" (emphasis added)); 42 U.S.C. § 1395cc(g) (imposing penalties for "improper billing" when a person "knowingly *and willfully* presents" a bill in violation of statute (emphasis added)); 42 U.S.C. § 18081(h)(2) (establishing a penalty for "improper use or disclosure of information" when a person "knowingly *and willfully* uses or discloses information" (emphasis added)); *cf.* 18 U.S.C. § 1839(6) (for purposes of trade secret theft, "the term 'improper means'" is defined to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means").[1]

---

[1] Defendants have scoured the U.S. Code and identified only two statutes in which the phrase "knowingly and improperly" is used. *See* HOUSE.GOV, U.S. Code search of "knowingly and improperly," https://tinyurl.com/mrra2e37 (last accessed Aug. 23, 2023). One is the FCA and the

3

Willfulness requires more than mere knowledge of the facts; it requires proof that the defendant "acted with knowledge that his conduct was unlawful." *Dixon v. United States*, 548 U.S. 1, 5 (2006). Therefore, the term "improperly" should be construed consistent with the term willfully to mean that the defendant actually knew both of the underlying facts that gave rise to an obligation and that it was unlawful to avoid that obligation. *See, e.g.*, *Bryan v. United States*, 524 U.S. 184, 191 (1998) ("[I]n order to establish a 'willful' violation of a statute, 'the Government must prove that the defendant acted with knowledge that his conduct was unlawful.'" (quoting *Ratzlaf v. United States*, 510 U.S. 135, 141 (1994)); *Wooden v. United States*, 142 S. Ct. 1063, 1076 (2022) (Kavanaugh, J., concurring) ("[W]ith respect to federal crimes requiring "willfulness," the Court generally requires the Government to prove that the defendant was aware that his conduct was unlawful."); Fifth Circuit Pattern Jury Instructions (Criminal Cases) § 1.43 (2019) ("The word 'willfully,' as that term has been used from time to time in these instructions, means that the act was committed voluntarily and purposely, with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law.").

The Sixth Circuit's decision in *U.S. ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 842 F.3d 430 (6th Cir. 2016), supports this interpretation. The court there noted that "[a]lthough there is little established case law, given that Congress only recently amended the reverse-false-claim provision, the term 'knowingly' must be interpreted to refer to a defendant's awareness of *both* an obligation to the United States *and* his violation of that obligation." *Id.* at 436. Although the court's analysis focused on the term "knowingly" in the phrase "knowingly and improperly," it is the most apposite precedent and makes clear that under Section

---

other is a statute enacted after the FCA that tracks its language. Therefore, neither is particularly instructive here.

4

3729(a)(1)(G) the defendant must actually know it has an obligation and actually know that its conduct constitutes an improper avoidance of that obligation.

Further, "knowingly and improperly" cannot be interpreted in a vacuum; those words must be read together with the term they modify—"avoids." That term can be used to refer to both active and passive conduct. On the one hand, it can mean "to keep away from." Avoid, Merriam-Webster Dictionary, https://tinyurl.com/ywrp56r6 (last visited Aug. 25, 2023). When used in this way, the term connotes some action—swerving to avoid a car accident, for example. On the other hand, the term "avoid" can mean "to refrain from," which connotes a lack of action, albeit a deliberate one. *Id.* Plaintiffs appear to jump to the later passive meaning without bothering to consider the former. But that position cannot be squared with the canon against surplusage. *See supra* at 1-2. If "avoid" meant "refrain from paying back," it would be redundant with "retain." The term must mean something more active.

Moreover, courts presume that where Congress uses different language in the same statute it intends for the terms to carry different meanings. *See Russello v. United States*, 464 U.S. 16, 23 (1983); *see Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 86 (2017) ("when we're engaged in the business of interpreting statutes we presume differences in language . . . convey differences in meaning"). Had Congress intended for the term "avoid" to carry the passive meaning that Plaintiffs suggest notwithstanding the surplusage issue, it would have used "retention" (or "retain") again in § 3729(a)(1)(G). But "Congress did not write the statute that way." *Russello*, 464 U.S. at 23 (citation omitted). This Court should "refrain from concluding here that the differing language in the two subsections[—§3729(a)(1)(G) and § 3729(b)(3)—has the same meaning in each." *See id.* As the Supreme Court has explained, courts should "not presume to ascribe" a difference in statutory language "to a simple mistake in draftsmanship." *Id.*

5

Accordingly, Congress's use of different terms in subsections 3729(a)(1)(G) and (b)(3) further supports that Congress intended for the term "avoid" to carry the active meaning and require proof that the defendant took steps to "keep away" from the government money that was owed.

Further, while Defendants are mindful that legislative history must be approached with caution, the legislative history supports Defendants' interpretation. *See Bostock v. Clayton Cnty., Ga.*, 140 S. Ct. 1731, 1750 (2020) (Gorsuch, J.) (noting that "while legislative history can never defeat unambiguous statutory text, . . . this Court has sometimes consulted the understandings of the law's drafters as some (not always conclusive) evidence" to help "ferret out" meaning "at the time of enactment"). The legislative history reflects that Congress intended to limit reverse false claims liability to circumstances in which a person acted with "improper motives" or "inherently improper means." 155 Cong. Rec. S4531, 4540 (Apr. 22, 2009) (Statement of Sen. Kyl). To act with improper motives is to act willfully. *See Bryan*, 524 U.S. at 191 (willful act is "one undertaken with a 'bad purpose'"). As Senate Judiciary Committee Ranking Member Senator Kyl explained, "improper means" refers to conduct that is "malum in se—that is, . . . inherently wrongful and constitute[s] an independent tort." 155 Cong. Rec. S at 4540; *see U.S. ex rel. Martino-Fleming v. S. Bay Mental Health Ctr.*, No. 15-cv-13065, 2018 WL 4539684, at *6 (D. Mass. Sept. 21, 2018) (adopting same formulation that "'improperly' denotes 'either improper motive or inherently improper means'"). Thus, borrowing from state-law concepts using the term "knowingly and improperly," Senator Kyl noted that then-current case law "consistently construed [the term] to mean that a person either acted with bad intent or that he employed means that are inherently tortious or illegal." 155 Cong. Rec. S at 4540. This is consistent with a reading of

"improperly" that is consistent with "willful" misconduct, that is, taking some act to avoid repayment of monies that the party knows it is obligated to repay.[2]

For all of these reasons and for the reasons discussed in Defendants' briefing and at the summary judgment hearing, the Court should grant Defendants summary judgment on the reverse false claim counts.

Dated: August 25, 2023

Respectfully Submitted,

ARNOLD & PORTER KAYE SCHOLER LLP

/s/ *Tirzah S. Lollar*
Craig D. Margolis
Craig.Margolis@arnoldporter.com
Tirzah S. Lollar
Tirzah.Lollar@arnoldporter.com
Christian Sheehan
Christian.Sheehan@arnoldporter.com
Jayce Born
Jayce.Born@arnoldporter.com
Emily Reeder-Ricchetti
Emily.Reeder-Ricchetti@arnoldporter.com
Megan Pieper
Megan.Pieper@arnoldporter.com
Alyssa Gerstner
Alyssa.Gerstner@arnoldporter.com
Meghan C. Martin
Meghan.Martin@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.5000
Fax: +1 202.942.5999

Christopher M. Odell
Texas State Bar No. 24037205
Christopher.Odell@arnoldporter.com
700 Louisiana Street, Suite 4000

---

[2] As discussed at the summary judgment hearing, all of these interpretive issues must be viewed through the lens of the rule of lenity, as civil punitive statutes must be strictly construed. *See* Hr'g Tr. at 124:3-21.

7

Houston, TX 77002-2755
Telephone: +1 713.576.2400
Fax: +1 713.576.2499

Paula Ramer
250 West 55th Street
New York, New York 10019-9710
T: +1 212.836.8474
Paula.Ramer@arnoldporter.com

RYAN BROWN ATTORNEY AT LAW
Ryan Patrick Brown
Texas Bar No. 24073967
ryan@ryanbrownattorneyatlaw.com
1222 S. Fillmore St.
Amarillo, Texas 79101
T: (806) 372-5711
F: (806) 350-7716

*Attorneys for Defendants Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood of South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc.*

O'MELVENY & MYERS LLP

/s/ *Danny S. Ashby*
DANNY S. ASHBY
Texas Bar No. 01370960
dashby@omm.com
MEGAN R. WHISLER
Texas Bar No. 24079565
mwhisler@omm.com
2501 N. Harwood Street, Suite 1700
Dallas, Texas 75201
T: (972) 360-1900
F: (972) 360-1901

LEAH GODESKY (pro hac vice)
lgodesky@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
T: (310) 553-6700
F: (310) 246-6779

8

ANTON METLITSKY (pro hac vice)
ametlitksy@omm.com
7 Times Square
New York, New York 10036
T: (212) 326-2000
F: (212) 326-2061

RYAN BROWN ATTORNEY AT LAW
Ryan Patrick Brown
Texas Bar No. 24073967
ryan@ryanbrownattorneyatlaw.com
1222 S. Fillmore St.
Amarillo, Texas 79101
T: (806) 372-5711
F: (806) 350-7716

*Attorneys for Defendant Planned Parenthood Federation of America, Inc.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 25, 2023, the foregoing document was electronically filed with the Clerk of Court using CM/ECF.

                                          */s/ Tirzah S. Lollar*
                                          Tirzah S. Lollar