**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| United States of America | § | |
| *ex rel.* Alex Doe, Relator, | § | |
| | § | |
| The State of Texas | § | No. 2:21-CV-00022-Z |
| *ex rel.* Alex Doe, Relator, | § | |
| | § | |
| The State of Louisiana | § | |
| *ex rel.* Alex Doe, Relator, | § | Date: September 1, 2023 |
| | § | |
| *Plaintiffs*, | § | |
| v. | § | |
| | § | |
| Planned Parenthood Federation of America, Inc., | § | |
| Planned Parenthood Gulf Coast, Inc., Planned | § | |
| Parenthood of Greater Texas, Inc., Planned | § | |
| Parenthood South Texas, Inc., Planned Parenthood | § | |
| Cameron County, Inc., Planned Parenthood San | § | |
| Antonio, Inc., | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ......................................................................................................... 1

RELEVANT BACKGROUND ....................................................................................... 5

LEGAL STANDARD .................................................................................................... 7

ARGUMENT ................................................................................................................ 8

I.   The *Qui Tam* Provisions in the Texas Medicaid Fraud Prevention Act Are Unconstitutional Under the Texas Constitution ............................................................................. 8

II.  The *Qui Tam* Provisions in the Louisiana Medical Assistance Programs Integrity Law Are Unconstitutional Under the Louisiana Constitution ........................................... 18

III. The False Claims Act's *Qui Tam* Provisions Are Unconstitutional Under Article II of the U.S. Constitution ................................................................................................. 21

   A.   The FCA's *Qui Tam* Provisions Violate Article II's Appointments Clause .............. 22

   B.   The FCA's *Qui Tam* Provisions Violate Article II's Take Care Clause .................... 23

CONCLUSION ............................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Liberty Pipe Line Co. v. Agey*,
 167 S.W.2d 580 (Tex. App. 1942), *aff'd* 172 S.W.2d 972 (Tex. 1943) .......................4, 10, 11

*Am. Liberty Pipe Line Co. v. Agey*,
 172 S.W.2d 972 (Tex. 1943)...................................................................................................10

*La. ex rel. Bd of Ethics for Elected Officials v. Green*,
 545 So.2d 1031 (1989), *rev'd on other grounds on reh'g*, 566 So.2d 623
 (1990)......................................................................................................................4, 19, 20, 21

*La. ex rel. Bd of Ethics for Elected Officials v. Green*,
 566 So.2d 623 (1990)...............................................................................................4, 20, 21

*Berger v. United States*,
 295 U.S. 78 (1935)..................................................................................................................13

*Better Business Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*,
 500 S.W.3d 26 (Tex. Ct. App. 2016) .......................................................................................14

*Brady v. Brooks*,
 89 S.W. 1052 (Tex. 1905).........................................................................................................12

*Braidwood Mgmt. Inc. v. Becerra*,
 No. 4:20-cv-00283-O, 2023 WL 2703229 (N.D. Tex. Mar. 30, 2023) ............................17, 18

*Buckley v. Valeo*,
 424 U.S. 1 (1976)............................................................................................................. *passim*

*Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co.*,
 386 U.S. 129 (1967)..................................................................................................................16

*Cochise Consultancy, Inc. v. U.S. ex rel. Hunt*,
 587 U.S. __, 139 S. Ct. 1507 (2019)........................................................................................23

*Collins v. Yellen*,
 594 U.S. __, 141 S. Ct. 1761 (2021).................................................................................17, 18

*Doe v. Columbia-Brazoria Ind. Sch. Dist. ex rel. Bd. of Trustees*,
 855 F.3d 681 (5th Cir. 2017) .....................................................................................................7

*Edmond v. United States*,
 520 U.S. 651 (1997)..................................................................................................................22

*U.S. ex rel. Eisenstein v. New York City*,
    556 U.S. 928 (2009).................................................................................................14

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    561 U.S. 477 (2010).........................................................................................22, 24

*Freytag v. Comm'r of Internal Revenue*,
    501 U.S. 868 (1991).........................................................................................22, 23

*Grace Ranch, L.L.C. v. BP Am. Prod. Co.*,
    989 F.3d 301 (5th Cir. 2021)..................................................................................21

*Guidry v. Roberts*,
    335 So.2d 438 (La. 1976) ...................................................................4, 19, 20, 21

*Hebert Abstract Co. v. Touchstone Props., Ltd.*,
    914 F.2d 74 (5th Cir. 1990) .....................................................................................7

*Heckler v. Chaney*,
    470 U.S. 821 (1985).................................................................................................12

*Hughes Aircraft Co. v. U.S. ex rel. Schumer*,
    520 U.S. 939 (1997).................................................................................................13

*Jaster v. Comet II Const., Inc.*,
    438 S.W.3d 556 (Tex. 2014) ....................................................................................8

*Johnson v. Johnson*,
    385 F.3d 503 (5th Cir. 2004) ...................................................................................7

*Louisiana v. Union Oil Co. of Cal.*,
    458 F.3d 364 (5th Cir. 2006) .................................................................................21

*Maryland v. United States*,
    460 U.S. 1001 (1983)..............................................................................................16

*Maud v. Terrell*,
    200 S.W. 375 (Tex. 1918).............................................................................. *passim*

*Meshell v. State*,
    739 S.W.2d 246 (Tex. Crim. App. 1987)..............................................................17

*U.S. ex rel. Milam v. Univ. of Tex. M.D. Anderson Cancer Ctr.*,
    961 F.2d 46 (4th Cir. 1992) ...................................................................................23

*Minotti v. Lensink*,
    895 F.2d 100 (2d Cir. 1990)...................................................................................15

*Nixon v. Adm'r of Gen. Servs.*,
    433 U.S. 425 (1977)................................................................................24

*Parish of Plaquemines v. Total Petrochemical & Refining USA, Inc.*,
    64 F. Supp. 3d 872 (E.D. La. 2014)................................................................21

*U.S. ex rel. Polansky v. Executive Health Resources Inc.*,
    599 U.S. 419 (2023)........................................................................ *passim*

*Riley v. St. Luke's Episcopal Hosp.*,
    252 F.3d 749 (5th Cir. 2001) (en banc) .................................................. *passim*

*Searcy v. Philips Elecs. N. Am. Corp.*,
    117 F.3d 154 (5th Cir. 1997) ....................................................................15

*Seila Law LLC v. CFPB*,
    591 U.S. __, 140 S. Ct. 2183 (2020)....................................................17, 24

*Staples v. State*,
    245 S.W. 639 (Tex. 1922) ...........................................................4, 9, 10, 18

*State v. Moore*,
    57 Tex. 307 (1882)...............................................................................9, 10

*State v. Stephens*,
    663 S.W.3d 45 (Tex. Crim. App. 2021)............................................................3, 9

*U.S. ex rel. Stone v. Rockwell Int'l Corp.*,
    282 F.3d 787 (10th Cir. 2002) ...................................................................17

*Town of Newton v. Rumery*,
    480 U.S. 386 (1987)...............................................................................16

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021)............................................................................22

*United States v. Dental Health Programs, Inc.*,
    No. 18-cv-463, 2021 WL 3213709 (N.D. Tex. July 29, 2021)..............................16

*United States v. Nixon*,
    418 U.S. 683 (1974)...............................................................................12

*U.S. ex rel. Vaughn v. United Biologics, L.L.C.*,
    907 F.3d 187 (5th Cir. 2018) ....................................................................15

*Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*,
    529 U.S. 765 (2000)...............................................................................23

*Wayte v. United States*,
    470 U.S. 598 (1985) ........................................................................................................16

*Williams v. Belle of Orleans, L.L.C.*,
    890 So.2d 670 (La. Ct. App. 2004) ................................................................................21

*In re Xerox*,
    555 S.W.3d 518 (Tex. 2018) ....................................................................................11, 12

**Constitutional Provisions**

La. Const. art. 2, § 1 .............................................................................................................4, 18

La. Const. art. 2, § 2 ....................................................................................................18, 20, 21

La. Const. art. 4, § 5 .............................................................................................................4, 19, 21

Tex. Const. art. II, § 1 ...................................................................................................................8

Tex. Const. art. IV, § 22 .............................................................................................................3, 9

Tex. Const. art. V, § 21 .............................................................................................................3, 9

U.S. Const. art. II, § 2, cl. 2 .........................................................................................................22

U.S. Const. art. II, § 3 ...................................................................................................................23

**Statutes**

31 U.S.C. § 3729

    (a)(1)(A) .................................................................................................................................5

31 U.S.C. § 3730

    (a) ............................................................................................................................................5

    (b)(1) .........................................................................................................................5, 6, 15

    (b)(2) .......................................................................................................................................5

    (b)(3) .......................................................................................................................................5

    (b)(4) .......................................................................................................................................6

    (c)(1) .......................................................................................................................................5

    (c)(2)(A) .................................................................................................................................6

(c)(2)(B) .................................................................................................................... 7

(c)(2)(C) .................................................................................................................... 5

(c)(3) ......................................................................................................................... 6

(c)(4) ......................................................................................................................... 6

31 U.S.C. § 3731(c)(2)(C) ............................................................................................ 6

La. Rev. Stat. § 46:438.1(A) ......................................................................................... 5

La. Rev. Stat. § 46:438.3(A) ......................................................................................... 5

La. Rev. Stat. § 46:439.1 ............................................................................................... 5

La. Rev. Stat. § 46:439.2

(A)(2) ........................................................................................................................ 5

(A)(4) ........................................................................................................................ 5

(B)(1) .................................................................................................................... 5, 6

(B)(3) ........................................................................................................................ 6

(B)(4)(a) .................................................................................................................... 6

(B)(4)(b) .................................................................................................................... 6

(B)(5) ........................................................................................................................ 7

Tex. Hum. Res. Code § 36.002(6) ................................................................................. 5

Tex. Hum. Res. Code § 36.101(a) ................................................................................. 5

Tex. Hum. Res. Code § 36.102

(a) .............................................................................................................................. 5

(c) .............................................................................................................................. 5

(d) .............................................................................................................................. 5

Tex. Hum. Res. Code § 36.104

(b) ....................................................................................................................... 6, 14

(b-1) ............................................................................................................... 6, 15, 21

Tex. Hum. Res. Code § 36.107 ...................................................................................8

    (a) ...................................................................................................5, 14, 15

    (b) ........................................................................................................6, 16

    (c) .........................................................................................................7, 16

    (d) ..............................................................................................5, 6, 14, 21

Tex. Hum. Res. Code § 36.108 ...................................................................................6

**Other Authorities**

1 Tex. Admin. Code § 371.1701(c) ...........................................................................12

1 Tex. Admin. Code § 371.1709 ...............................................................................12

1 Tex. Admin. Code § 371.1719 ...............................................................................12

2–12 Moore's Fed. Prac.—Civ. § 12.23 ......................................................................7

5C Wright & Miller, Federal Practice & Procedure, § 1367 (3d ed.)...........................7

Constitutionality of the Qui Tam Provisions of the False Claims Act,
    13 Op. O.L.C. 207, 220 (1989) ..........................................................................13

Fed. R. Civ. P. 12

    (b)(6) .......................................................................................................7

    (c) ........................................................................................................1, 7

    (g) ............................................................................................................7

    (h)(2)(b) ...................................................................................................7

Fed. R. Civ. P. 41(a) ...................................................................................................6

Defendants Planned Parenthood Federation of America, Inc. ("PPFA"), Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc. (together "Affiliate Defendants," and collectively with PPFA, "Defendants") respectfully submit this brief in support of their motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).

## INTRODUCTION

In dissenting from the Supreme Court's recent opinion in *U.S. ex rel. Polansky v. Executive Health Resources Inc.*, Justice Thomas wrote that "[t]here are substantial arguments that the [False Claims Act's] *qui tam* device is inconsistent with Article II [of the U.S. Constitution] and that private relators may not represent the interests of the United States in litigation."  599 U.S. 419, 449 (2023).  Justice Thomas observed that the *qui tam* provisions likely violate Article II because "'conducting civil litigation … for vindicating public rights' of the United States is an 'executive functio[n]' that 'may be discharged only by persons who are [duly appointed officers] of the United States'" and *qui tam* relators have been appointed to their positions by no one other than themselves.  *Id.* (quoting *Buckley v. Valeo*, 424 U.S. 1, 138-40 (1976) (alteration in original)).  Justices Kavanaugh and Barrett echoed these concerns in a concurring opinion, noting that "the Court should consider the competing arguments on the Article II issue in an appropriate case."  *Id.* at 442.

This is just such a case.  Relator, a private citizen, initiated this action "in the name of the [U.S.] Government" and the States of Texas and Louisiana (the "States") under the FCA, the Texas Medicaid Fraud Prevention Act ("TMFPA") and the Louisiana Medical Assistance Program Integrity Law ("LMAPIL"), respectively.  Relator seeks "to recover damages and civil penalties owed to the United States" and the States for alleged Medicaid fraud, Relator Compl.

¶ 1 [Dkt. 2], bringing suit without the approval of the federal or state governments, and after the federal government concluded there in fact had been no violations of federal law.  *See* Affiliate Defs.' Mot. for Sum. J. at 9 (SOF ¶¶ 14-15) (June 16, 2023) [Dkt. 466].

Without intervention by the United States and Louisiana, this anonymous Relator has exercised total control over litigation brought in the name of these sovereigns.  If either the federal government or Louisiana ever wishes to enter this litigation, the FCA and LMAPIL impose several procedural roadblocks.  The government must first demonstrate good cause to intervene and then, if it meets that initial burden, the Court must give Relator an opportunity to be heard before either the United States or Louisiana could move to dismiss the case or to settle it over Relator's objection.

What is more, even when the State of Texas partially intervened as to a portion of Relator's TMFPA claims, it did not, and could not, exercise complete control over the litigation. Relator retained the right to continue as a party, even as to the intervened claims.  Indeed, at the recent summary judgment hearing, Relator's counsel argued *on behalf of both Relator and Texas* for more than an hour and a half, with Texas's counsel arguing for only fifteen minutes.  *See* Hr'g Tr. 4:11-15 [Dkt. 527].

Relator's ability to bring suit depends entirely on the *qui tam* provisions of the FCA, the TMFPA, and the LMAPIL, which authorize private citizens to initiate, conduct, and resolve litigation on behalf of the United States, Texas, and Louisiana, respectively, while significantly limiting any of these governments' ability to control that litigation.  For these reasons and as discussed more fully below, the *qui tam* provisions of each statute are unconstitutional.

With respect to the federal FCA, Defendants acknowledge that the Fifth Circuit previously held—over the vigorous dissent of Judge Smith—that the FCA's *qui tam* provisions

are not unconstitutional. *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749 (5th Cir. 2001) (en

banc).[1]  Defendants respectfully submit, however, that *Riley* was incorrectly decided, and, in

light of the opinions of Justices Thomas, Kavanaugh, and Barrett, raise a challenge to the

constitutionality of the federal FCA to preserve it for appeal.   The constitutionality of the

TMFPA and LMAPIL, however, remains very much an open question.[2]   And unlike the U.S.

Constitution, the Texas and Louisiana Constitutions contain explicit separation-of-powers

provisions, leading state courts to observe that the States "would more aggressively enforce

separation of powers between its governmental branches than would the federal government.'"

*See State v. Stephens*, 663 S.W.3d 45, 49 (Tex. Crim. App. 2021) (quoting *State v. Rhine*, 297

S.W.3d 301, 315 (Tex. Crim. App. 2009) (Keller, P.J., concurring)).   Given the nature of the

state constitutions at issue, the separation-of-powers concerns raised by the state *qui tam* statutes

are at least as troubling as those presented by the federal FCA under the U.S. Constitution, if not

more so.

 The Texas Constitution assigns the Executive Branch—specifically the Attorney General

and County Attorneys—responsibility for representing the State in court.  Tex. Const. art. IV

§ 22, art. V § 21.   Texas courts have long interpreted these provisions to vest in these State

---

[1] Judge Smith concluded that the FCA's *qui tam* provisions "violate[] the Take Care Clause and the Appointments Clause of Article II."  *Riley*, 252 F.3d at 758.  With respect to the former, he observed that the FCA "diminishes the political accountability of the Executive"; "removes from the Executive Branch the prosecutorial discretion that is at the heart of the President's power to execute the laws"; "aggrandize[s] Congressional power and impermissibly undermin[es] Executive power" by "wresting control, from the President, of the initiation and prosecution of government lawsuits;" and "does not provide the Executive with enough control over the relator."  *Id.* at 761.  With respect to the Appointments Clause, Judge Smith reasoned that "Supreme Court precedent makes it plain" that relators who have not been appointed under Article II "may [not] prosecute claims owned by the United States."  *Id.* at 767-68.

[2] Because the federal FCA challenge is foreclosed in this Court, Defendants devote the bulk of this brief to the state claims.  In the event, however, that the Fifth Circuit reconsiders the constitutionality of the FCA *qui tam* provisions, there are numerous additional arguments that Defendants would raise in that forum.

officials the "*exclusive* power[] . . . to represent the state" in litigation. *Staples v. State*, 245 S.W. 639, 642 (Tex. 1922) (emphasis added). Texas courts have further held that the legislature "cannot devolve" the exclusive powers of Executive Branch attorneys, "[n]or can it interfere with the right to exercise them." *Maud v. Terrell*, 200 S.W. 375, 376 (Tex. 1918). Relying on these foundational principles, the Texas Court of Appeals has stated unequivocally that a *qui tam* statute that allows a private person to file suit on behalf of the State and receive a portion of the prescribed penalty would be unconstitutional. *Am. Liberty Pipe Line Co. v. Agey*, 167 S.W.2d 580, 583 (Tex. App. 1942), *aff'd* 172 S.W.2d 972. Because the TMFPA's *qui tam* provisions do precisely that, they violate the Texas Constitution.

The Louisiana Constitution also includes an express separation-of-powers provision, La. Const. art. 2 § 1, with a clause similar to the U.S. Constitution's Take Care Clause, mandating the Governor to "see that the laws are faithfully executed," La. Const. art. 4 § 5. The Louisiana Supreme Court has interpreted these provisions to prohibit the State legislature from vesting civil litigation authority to enforce the State's rights in a person or entity outside the State's Executive Branch. *Guidry v. Roberts*, 335 So.2d 438, 445-46 (La. 1976); *La. ex rel. Bd of Ethics for Elected Officials v. Green*, 545 So.2d 1031, 1036-37 (1989) ("*Green I*"), *rev'd on other grounds on reh'g*, 566 So.2d 623 (1990) ("*Green II*"). The LMAPIL's *qui tam* provisions, however, authorize a private citizen to bring and conduct civil litigation on behalf of the State. The LMAPIL therefore violates the Louisiana Constitution.

For these reasons, as discussed further below, the TMFPA, LMAPIL, and FCA's *qui tam* provisions are unconstitutional under their respective constitutions. Insofar as permitted by the Fifth Circuit's decision in *Riley*, this Court should grant Defendants' motion for judgment on the pleadings for Relator's and Texas's claims.

- 4 -

## RELEVANT BACKGROUND

The FCA, TMFPA, and LMAPIL each impose civil liability on any person who . . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval.  31 U.S.C. § 3729(a)(1)(A); La. Rev. Stat. § 46:438.3(A); Tex. Hum. Res. Code § 36.002(6).  Under these statutes, the government can bring an enforcement action itself, 31 U.S.C. § 3730(a); La. Rev. Stat. § 46:438.1(A); Tex. Hum. Res. Code § 36.002(6), or a private individual (referred to as a relator) can bring an action "in the name of the Government," 31 U.S.C. § 3730(b)(1); La. Rev. Stat. § 46:439.1; Tex. Hum. Res. Code § 36.101(a).  If a relator brings suit, he or she must file the complaint under seal and serve on the government a copy of the complaint and any material evidence.   31 U.S.C. § 3730(b)(2); La. Rev. Stat. § 46:439.2(A)(2); Tex. Hum. Res. Code § 36.102(a).  The government then has a designated period of time to decide whether to intervene (subject to an extension for good cause).  31 U.S.C. § 3730(b)(2), (3) (60 days); La. Rev. Stat. § 46:439.2(A)(4) (90 days); Tex. Hum. Res. Code § 36.102(c), (d) (180 days).

If the government elects to intervene, as Texas has done here with respect to Relator's reverse false claim theories under the TMFPA, *see* Dkt. 22, the relator retains "the right to continue as a party to the action." 31 U.S.C. § 3730(c)(1); La. Rev. Stat. § 46:439.2(B)(1); Tex. Hum. Res. Code § 36.107(a).  Under the FCA and TMFPA, the government may limit the relator's participation only if it shows that the relator's unrestricted participation "would interfere with or unduly delay the Government's prosecution of the case, or would be repetitious, irrelevant, or for purposes of harassment," 31 U.S.C. § 3730(c)(2)(C); Tex. Hum. Res. Code § 36.107(d).[3]   And even if the government makes such a showing, the court still retains

---

[3] The LMAPIL does not contain a similar provision permitting the State to limit the relator's participation in an intervened case.

discretion regarding whether and how to limit the relator's participation.   31 U.S.C. § 3731(c)(2)(C); Tex. Hum. Res. Code § 36.107(d).

If the government declines to intervene, on the other hand, the relator has the right to conduct the action, as Relator has done in this case for the FCA and LMAPIL claims.  31 U.S.C. § 3730(b)(4); La. Rev. Stat. § 46:439.2(B)(1); Tex. Hum. Res. Code § 36.104(b); *see* U.S. Declination Notice [Dkt. 18].  In this scenario, the relator has sole control over the litigation, including discovery and the presentation of evidence, *see* 31 U.S.C. § 3730(c)(3); La. Rev. Stat. § 46:439.2(B)(4)(a); Tex. Hum. Res. Code § 36.104(b), and the government's only rights are (1) to receive a copy of all pleadings and deposition transcripts at the government's expense (under the FCA and TMFPA); (2) to seek a temporary stay of discovery if it makes the requisite showing that discovery would interfere with the government's investigation or prosecution of another case (under all three statutes); or (3) to object to a dismissal (under the FCA and LMAPIL), 31 U.S.C. § 3730(c)(3)-(4), § 3730(b)(1); La. Rev. Stat. § 46:439.2(B)(4)(a), (5); Tex. Hum. Res. Code §§ 36.104(b-1), 36.108.

If the government later decides to intervene, it must demonstrate good cause to do so, and its intervention does not limit "the status and rights of the [relator]."  31 U.S.C. § 3730(c)(3); La. Rev. Stat. § 46:439.2(B)(4)(b); Tex. Hum. Res. Code § 36.104(b-1).  If the government wants to dismiss an action over the relator's objection, the relator must receive notice of the dismissal and an opportunity to be heard, 31 U.S.C. § 3730(c)(2)(A); La. Rev. Stat. § 46:439.2(B)(3); Tex. Hum. Res. Code § 36.107(b).[4]  Moreover, if the government wishes to settle the action over the relator's objection, it may do so only if the court determines after a hearing "that the proposed

---

[4] Additionally, as the Supreme Court held this term in *Polansky*, the government must intervene to settle or dismiss an FCA claim, and it must satisfy Federal Rule of Civil Procedure 41(a)'s standard for dismissal, *see Polansky*, 599 U.S. at 424.

settlement is fair, adequate, and reasonable under all the circumstances."   31 U.S.C.
§ 3730(c)(2)(B); La. Rev. Stat. § 46:439.2(B)(5); Tex. Hum. Res. Code § 36.107(c).

## **LEGAL STANDARD**

Under Rule 12(c), a party may move for judgment on the pleadings on the basis that the
plaintiff failed to state a claim upon which relief can be granted any time after the pleadings
close, so long as it does not delay trial.  Fed. R. Civ. P. 12(h)(2)(B).  "However, if it seems clear
that the motion may effectively dispose of the case on the pleadings, the district court should
permit it regardless of any possible delay consideration of the motion may cause."  5C Wright &
Miller, Federal Practice & Procedure, § 1367 (3d ed.).  Moreover, whether the party previously
moved to dismiss the plaintiff's complaint for failure to state a claim under Rule 12(b)(6) has no
effect on its ability to raise that same defense later, including any new arguments to support it, in
a Rule 12(c) motion.  *See, e.g.*, *Doe v. Columbia-Brazoria Ind. Sch. Dist. ex rel. Bd. of Trustees*,
855 F.3d 681, 686 (5th Cir. 2017) (permitting successive 12(b)(6) motion because it could have
been brought under Rule 12(c), and noting that Rule 12(h) does not prohibit the defendant from
raising new arguments for dismissal for failure to state a claim in a Rule 12(c) motion); *see also,
e.g.*, 2–12 Moore's Fed. Prac.—Civ. § 12.23 ("Rule 12 provides exceptions to the waiver
resulting from Rule 12(g)'s prohibition against successive motions in Rule 12(h)(2), because
certain defenses are considered so fundamental . . . .").

The standard for dismissal under Rule 12(c) is the same provided under Rule 12(b)(6):
the court should grant the motion if, after accepting well-pleaded facts as true, the plaintiff is not
entitled to relief.  *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004); *see also Hebert
Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam) ("A motion
brought pursuant to Fed. R. Civ. P. 12(c) is designed to dispose of cases where the material facts

are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts.").

## ARGUMENT

Defendants are entitled to judgment on the pleadings for all of Relator's and Texas's claims, subject to the constraints imposed by *Riley* as to the federal FCA claims.[5]  This motion will not delay trial because a trial date has not yet been set, and the Court has not yet decided the parties' summary judgment motions.  Defendants raise this issue now, rather than await the Court's ruling on summary judgment, to avoid any argument that this motion was filed to delay trial.  Of course, the Court need not consider this motion if it grants summary judgment to Defendants.  And, because this motion does not depend on the underlying factual allegations but present a pure question of federal and state constitutional law, its adjudication should not delay any trial.

## I.      The *Qui Tam* Provisions in the Texas Medicaid Fraud Prevention Act Are Unconstitutional Under the Texas Constitution

The Texas Constitution explicitly codifies the principle of separation of powers in Article II, Section 1, which provides:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: those which are Legislative to one, those which are Executive

---

[5] Texas has not intervened as to Relator's implied false certification claims under the TMFPA. For the reasons discussed in Defendants' summary judgment briefing, Relator cannot prosecute those claims after Texas' intervention because, in electing to proceed with the action, Texas "has the primary responsibility for prosecuting the action"—meaning the entire lawsuit—and Relator only has "the right to continue as a party to the *action*." Tex. Hum. Res. Code § 36.107 (emphasis added); *see Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 563–64 (Tex. 2014) ("The common meaning of the term 'action'" refers to an entire lawsuit or cause or proceeding, not to discrete 'claims' or 'causes of action' asserted within a suit, cause, or proceeding.  'The term 'action' is generally synonymous with 'suit,' which is a demand of one's rights in court.'" (citations omitted)).  Were the Court to conclude otherwise, however, it should dismiss the TMFPA implied false certification claims for the reasons discussed in this brief.

to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

This express separation-of-powers provision distinguishes the Texas Constitution from the U.S. Constitution, and "Texas courts thus have observed that 'this textual difference . . . suggests that Texas would more aggressively enforce separation of powers between its governmental branches than would the federal government.'"  *Stephens*, 663 S.W.3d at 49 (quoting *Rhine*, 297 S.W.3d at 315 (Keller, P.J., concurring)).  The Texas Constitution further provides in Article IV, Section 22 that "[t]he attorney general *shall* represent the state in all suits and pleas in the supreme court of the state in which the state may be a party" and in Article V, Section 21 that "County Attorneys *shall* represent the State in all cases in the District and inferior courts in their respective counties."  (emphases added).  The TMFPA's *qui tam* provisions violate these clauses.

The Texas Supreme Court has made clear that the State legislature may not interfere with the constitutionally-guaranteed powers of the Attorney General or County Attorneys.  *See, e.g.*, *State v. Moore*, 57 Tex. 307, 314 (1882) ("It must be presumed that the constitution, in selecting the depositaries of a given power, unless it be otherwise expressed, intended that the depositary should exercise an exclusive power, with which the legislature could not interfere by appointing some other officer to the exercise of the power."); *Maud*, 200 S.W. at 376 (Tex. 1918) (Legislature "cannot devolve" the powers of the Attorney General and County Attorneys "upon others. Nor can it interfere with the right to exercise them."); *Staples*, 245 S.W. at 642 ("Legislature is without authority . . . to restrict the exclusive powers of the county attorneys or district attorneys and the Attorney General to represent the state.").

Consistent with that prohibition, the Texas Court of Appeals has held that the Texas legislature cannot establish a *qui tam* action through which a private person, rather than the

Attorney General or County Attorneys, files a suit on behalf of himself and the State and receives a portion of the prescribed penalty. *Agey*, 167 S.W.2d 580. In *Agey*, the plaintiff asserted that he could maintain such an action because "qui tam actions" are "well known to the jurisprudence" of Texas and "do[] not deny the right of the state officers named to take complete charge of any suit filed by an aggrieved party to recover penalties." *Id.* at 581. The court rejected that contention, noting that the *qui tam* actions the plaintiff relied on "arose under constitutions prior to 1876, which did not contain" Article II, Section 1; Article IV, Section 22; or Article V, Section 21. *Id.* at 581-82. Because the statute at issue "create[d] a liability enforcible [sic] by civil action," the court concluded that "[t]he action is [] one which inures to the State, and is maintainable only in the State's name and by its authorized officials, regardless of the fact that one-half of the recovery may inure to the interested party." *Id.* at 582. The court further explained that its holding was consistent with numerous prior cases that "establish[ed], beyond controversy, . . . that the authority to bring and maintain actions in the courts to enforce the rights of the State is vested by the Constitution exclusively in the State's attorneys (General, district and county), and the legislature is without power to divest that authority or to delegate it to others." *Id.* at 583.[6]

---

[6] The Texas Supreme Court affirmed the Court of Appeals' decision in *Agey* on the basis that the statute did not authorize the plaintiff to file suit and therefore concluded that it was "not necessary . . . to here decide whether the Legislature was prohibited by the Constitution from permitting such suit to be filed. 172 S.W.2d at 975. The Supreme Court also noted, however that "[t]he Attorney General is the chief law officer of the State, and it is incumbent upon him to institute in the proper courts proceedings to enforce or protect any right of the public that is violated. . . . He has the right to investigate the facts and exercise his judgment and discretion regarding the filing of a suit." *Id.* at 974 (internal citations omitted). This statement is consistent with the court's prior decisions in *Moore, Maud,* and *Staples*, which together strongly suggest that, should the Texas Supreme Court have occasion to address whether *qui tam* statutes like the TMFPA's violate the Texas Constitution's separation of powers, it would reach the same conclusion as the Court of Appeals in *Agey*.

*Agey* is dispositive here.  "The TMFPA's *qui tam* provisions authorize private parties to institute a [civil] action on the State's behalf in exchange for a share in the recovery and reasonable expenses, attorney's fees, and costs." *In re Xerox*, 555 S.W.3d 518, 536 (Tex. 2018).  An action under the TMFPA "inures to the State, and is maintainable only in the State's name and by its authorized officials," *Agey*, 167 S.W.2d at 582, so it must be brought by the Attorney General or County Attorneys.  The Texas legislature's "deleg[ation] . . . to others" of the "State's attorneys[']" exclusive right to bring suit to "enforce the rights of the State" plainly violates the Texas Constitution.  *See id.* at 583.

While it is true that the Texas legislature can "provide assistance for the proper discharge by these officials of their duties," it cannot "for the performance of that function, obtrude other persons upon them and compel the acceptance of their services." *Maud*, 200 S.W. at 376.  The latter is exactly what the TMFPA does.  It thrusts private citizens upon the State's attorneys by granting those private citizens authority to litigate alleged violations of state law and compels the State to accept their services on their terms.  The statute does so in three principal ways: (1) relators can initiate lawsuits at any time in any place and on any subject without the State's input or approval; (2) the TMFPA curtails the State's control over relator-initiated TMFPA litigation even if the government chooses to intervene, and substantially more so if it declines to intervene; and (3) the TMFPA impermissibly limits the State's ability to dismiss or settle a TMFPA action over a relator's objection.

*First*, the TMFPA's *qui tam* provisions strip the State's attorneys of a fundamental feature of the Executive's enforcement authority—its prosecutorial discretion.  The U.S. Supreme Court has made clear that inherent to the Executive's law enforcement authority is the "exclusive authority and *absolute discretion* to decide whether to prosecute a case." *United*

*States v. Nixon*, 418 U.S. 683, 693 (1974) (emphasis added).  The same is true of the State's attorneys exclusive authority to decide whether (and when and how) to prosecute a case.  *See Maud*, 200 S.W. at 376 ("[T]he powers thus conferred by the Constitution upon these officials are exclusive."); *Brady v. Brooks*, 89 S.W. 1052, 1066 (Tex. 1905) (State's attorneys retain "exclusive authority to prosecute or defend every suit . . . in which the state may be a party"). Under the TMFPA's *qui tam* provisions, however, the State has no say in whether a case is filed, when it is filed, where it is filed, or the scope of its allegations.

The Executive's decision about how to address a purported violation of law can involve "a complicated balancing of a number of factors," *see Heckler v. Chaney*, 470 U.S. 821, 831 (1985), which only the Executive is equipped to weigh.  While it is not for the courts to second guess a State attorney's motives in deciding whether to bring suit, there are many good reasons the State might decline to bring a TMFPA suit.  State executive agencies have numerous tools at their disposal to address non-compliance with the law short of filing a lawsuit.  *See, e.g.*, 1 Tex. Admin. Code § 371.1701(c) (providing a dozen administrative actions Texas OIG may take – ranging from education sessions, to pre- or post- payment review, to requiring surety bonds); 1 Tex. Admin. Code § 371.1709 (discussing payment holds); 1 Tex. Admin. Code § 371.1719 (providing procedures for audits and recoupment proceedings).  The government may prefer to use one or more of these mechanisms instead of the TMFPA's "undeniably punitive" penalty scheme, *Xerox*, 555 S.W.3d at 555, because "it is frequently in the Government's interest, as it would be in the interest of any contracting party, to avoid excessive concern over minor failings that might threaten a useful course of dealing with the other party," particularly if "the

contractor's performance otherwise has been adequate."[7]   Constitutionality of the Qui Tam Provisions of the False Claims Act, 13 Op. O.L.C. 207, 220 (1989).  The Executive also might determine that State interests weigh against a public trial of a government contractor, or perhaps simply that the allegations lack sufficient indicia of merit to warrant subjecting the defendant to a serious accusation of fraud with the threat of treble damages and per-claim penalties.

But whatever the basis for the State's decision, under Texas's constitutional framework, it is the State's attorneys' decision to make.  The TMFPA's *qui tam* provisions take the decision about whether and when to file suit from the State's attorneys and put it entirely into the hands of a private citizen who has no incentive to carefully balance the relevant government interests (let alone the knowledge to do so) and is primarily motivated by the prospect of personal monetary gain.  *Compare Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 949, 952 n.5 (1997) (relators are "motivated primarily by prospects of monetary reward rather than the public good"), *with Berger v. United States*, 295 U.S. 78, 88 (1935) (government attorney's obligation is "not [to] win a case" but to ensure "that justice shall be done").

That the TMFPA provides an initial period after the relator files a complaint for the State to examine the claims and determine whether and how to intervene does not suffice to place prosecutorial discretion back into the hands of the State's attorneys.  This investigation period requires the investment of substantial time and resources to evaluate the relator's allegations that the State may have chosen not to invest if it had the choice in the first instance, thereby depriving the State of its ability to set its own investigation and litigation agenda.  Moreover, there may be circumstances in which the State's attorneys would have elected not to file a TMFPA suit, or at least to delay in filing suit, to allow a related investigation to proceed.  But because the relator

---

[7] Indeed, prior to the filing of this suit, Texas did not seek any administrative or legal remedies against the Defendants stemming from their termination from Medicaid.

has taken that decision out of the State's hands, to protect another investigation that the State considers a higher priority, the State must apply to the court for a stay, and that stay is not guaranteed.  Further, as discussed below, if the State wants to dismiss a case over a relator's objection, the State must first intervene and the relator then must have an opportunity to be heard.  Unlike the statute's settlement provisions, the TMFPA does not provide for an in camera dismissal hearing, meaning that, even if the State has an interest in keeping a meritless relator-initiated TMFPA suit out of the public domain, it cannot do so.

*Second*, the TMFPA's *qui tam* provisions impermissibly restrict the State's control over relator-initiated litigation regardless of the State's intervention decision, but substantially more so when the State declines to intervene.

If the State intervenes, the relator still has "the right to continue as a party to the action," including the right to take discovery, file its own responses to pleadings, and call and cross-examine witnesses—as Relator has done here.  *See* Tex. Hum. Res. Code § 36.107(a).  If the State desires to limit the relator's participation, it must show that the relator's participation "would interfere with or unduly delay the state's prosecution of the case, or would be repetitious, irrelevant, or for purposes of harassment."  Tex. Hum. Res. Code § 36.107(d).  And in all events, the courts still retain discretion to decide whether and how to limit the relator's participation.  *Id.*

If the State declines to intervene, it loses virtually all control over the litigation and the relator proceeds to conduct the action on behalf of the State.  *Id.* § 36.104(b).  The State is then bound by the judgment in the case regardless of its participation.  *See, e.g.*, *Better Business Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*, 500 S.W.3d 26, 41 (Tex. Ct. App. 2016) (res judicata operates against parties with identity of interests); *U.S. ex rel. Eisenstein v. New York City*, 556 U.S. 928, 936 (2009) ("[T]he United States is bound by the judgment in all FCA

- 14 -

actions regardless of its participation in the case."); *U.S. ex rel. Vaughn v. United Biologics, L.L.C.*, 907 F.3d 187, 193 (5th Cir. 2018) ("[A] final judgment on the merits of a relator's claim will have a binding effect on even the non-intervening Government.").  The State's only rights in a declined case are the ability to receive a copy of pleadings and deposition transcripts at its own expense, Tex. Hum. Res. Code § 36.104(b-1), or seek a temporary discovery stay, *id.* § 36.107(a).  With this degree of autonomy afforded to the relator, any divergence between the interests of the relator and the State creates a very real risk that the *qui tam* suit will frustrate the state's prerogatives.  *See Searcy v. Philips Elecs. N. Am. Corp.*, 117 F.3d 154 (5th Cir. 1997) ("[R]elators can manipulate settlements in ways that unfairly enrich them and reduce benefits to the government.").

If the State wishes to enter the case after its initial declination (whether to address a divergence of interests or otherwise), it must apply to the court for permission and demonstrate good cause.  Tex. Hum. Res. Code § 36.104(b-1).  And even if the court allows the State to intervene, such intervention does not "limit[] the status and right" of the relator.  *Id.*  Moreover, the State's ability to intervene with good cause shown may not always sufficiently protect the State's interests.  For example, if a court decides to involuntarily dismiss a relator's case, it does not need the State's consent to do so.  *See Minotti v. Lensink*, 895 F.2d 100, 103 (2d Cir. 1990) (requirement of government consent to dismissal under 31 U.S.C. § 3730(b)(1) applies only in cases where a relator seeks voluntary dismissal of a claim, "not where the court orders dismissal").

*Third*, the TMFPA impermissibly restricts the State's ability to terminate *qui tam* suits brought in its name.  The statute explicitly curtails the State's power to dismiss or settle relator-initiated litigation over the relator's objections.  The U.S. Supreme Court recently held under the

- 15 -

federal FCA that for the government to settle or dismiss a case, it must first intervene, which itself requires a showing of good cause. *See Polansky*, 599 U.S. at 423-24. There is no reason to think a different rule would apply under the TMFPA. *See United States v. Dental Health Programs, Inc.*, No. 18-cv-463, 2021 WL 3213709, at *7 (N.D. Tex. July 29, 2021) ("[T]he Fifth Circuit and several federal district courts have considered TMFPA claims analogous to claims brought under the FCA."). Then, if the relator objects to the State's decision to dismiss or settle the case, the TMFPA (1) entitles the relator to a hearing before dismissal, Tex. Hum. Res. Code § 36.107(b), and (2) requires a judicial determination of "fair[ness], adequa[cy] and reasonable[ness]" before a settlement can be approved, *id.* § 36.107(c).

Thus, for the State to dismiss or settle a case that it did not choose to bring and that "alleges injury to the Government alone," *Polansky*, 599 U.S. at 437, the State must obtain court approval, which in some instances entails a full evidentiary hearing. The purpose of such a hearing is to allow a *court*—not the State's attorneys—to determine whether the State has appropriately exercised its prosecutorial discretion. That is a non-judicial function. *See, e.g.*, *Town of Newton v. Rumery*, 480 U.S. 386, 396 (1987) (Supreme Court precedent "uniformly [recognizes] that courts normally must defer to prosecutorial decisions as to whom to prosecute."); *Wayte v. United States*, 470 U.S. 598, 607 (1985) (broad prosecutorial discretion "rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review" and "[j]udicial supervision in this area … entails systemic costs of particular concern"); *Maryland v. United States,* 460 U.S. 1001, 1005 (1983) (Rehnquist, J., dissenting) (raising concerns about the constitutionality of legislation that "imposes on the courts what is essentially nonjudicial function": "decid[ing] whether the Department of Justice has exercised its prosecutorial discretion to settle antitrust cases as well as it should"); *Cascade Nat. Gas Corp. v.*

- 16 -

*El Paso Nat. Gas Co.,* 386 U.S. 129, 156-57 (1967) (Stewart, J., dissenting) ("[T]he Court presumes to tell the Justice Department that it made tactical errors in conducting litigation, failed in its assessment of the public interest, and cannot settle a lawsuit which it has brought. This Court does not have the constitutional power to second-guess decisions of the Attorney General made within the bounds of his official discretion.").

For all these reasons, the TMFPA's *qui tam* provisions impermissibly restrict the State's attorneys' exclusive authority to bring and conduct civil litigation to vindicate the State's rights. *See Meshell v. State,* 739 S.W.2d 246, 257 (Tex. Crim. App. 1987) (finding that legislative action that impermissibly restricted the state's prosecutorial discretion violated the Texas Constitution's separation of powers).

That Texas partially intervened here does not avoid the constitutional problem. *See U.S. ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787 (10th Cir. 2002) (considering defendants challenge to the constitutionality of intervened FCA claims). Nor does it remedy the constitutional deficiencies in the TMFPA's *qui tam* provisions because Relator's filing of this action reflected an "exercise of power that [Relator] did not lawfully possess" and thus the entire action is "void ab initio." *See Collins v. Yellen*, 594 U.S. __, 141 S. Ct. 1761, 1788 (2021) (collecting cases in which Supreme Court vacated actions taken by those who exercised power they did not lawfully possess); *Braidwood Mgmt. Inc. v. Becerra*, No. 4:20-cv-00283-O, 2023 WL 2703229, at *13 (N.D. Tex. Mar. 30, 2023) ("[S]eparation-of-powers violations are . . . 'void *ab initio*'" because the actors being challenged "were vested with authority that was never properly theirs to exercise" (quoting *Collins v. Mnuchin*, 938 F.3d 553, 593 (5th Cir. 2019), *aff'd in part, rev'd in part, vacated in part sub nom. Collins v. Yellen*, 594 U.S. __, 141 S. Ct. 1761 (2021))); s*ee also e.g., Seila Law LLC v. CFPB*, 591 U.S. __, 140 S. Ct. 2183, 2196 (2020)

- 17 -

(when a provision "violates the separation of powers it inflicts a 'here-and-now' injury on affected third parties that can be remedied by a court").[8]

Moreover, even after Texas's intervention, the TMFPA continues to impose significant restrictions on the State's control over the litigation and ability to dismiss or settle the suit over the relator's objection.   Indeed, Relator has continued to have a significant role in litigating Texas's claims in this action, as demonstrated by *Relator's* counsel arguing *on behalf of Texas* at the recent summary judgment hearings in this case, *see* Hr'g Tr. 4:11-15 [Dkt. 527].   Only where the State initiates a suit itself can it constitutionally assert a TMFPA claim, because only then does the State have exclusive authority over its decisions to initiate, conduct, and terminate such litigation.   *Staples*, 245 S.W. at 642 ("Legislature is without authority . . . to restrict the exclusive powers of the county attorneys or district attorneys and the Attorney General to represent the state.").   Indeed, when faced with an inconvenient argument about the "grace period," Relator's counsel purported to "tak[e] off [her] Texas hat" and claimed the state's action was *ultra vires*, a contention the State itself has never made.   Hr'g Tr. 144:20-145:8 [Dkt. 527].

Accordingly, the Court should dismiss Texas's claims under the TMFPA as well as any non-intervened Texas state claims asserted by Relator, to the extent any such claims remain.

## II.   The *Qui Tam* Provisions in the Louisiana Medical Assistance Programs Integrity Law Are Unconstitutional Under the Louisiana Constitution

Louisiana's Constitution also contains an express separation of powers clause.   Article 2, Section 1 provides that "[t]he powers of government of the state are divided into three separate

---

[8] As the *Braidwood* Court recently explained, in cases where the constitutional injury stems from an exercise of power that the individual did not possess, a defendant need not show any other injury.   *See* 2023 WL 2703229 at *13; *see also Collins*, 594 U.S. at __, 141 S. Ct. at 1787-88 (distinguishing between cases in which a person exercises power they did not lawfully possess, which are void, and cases in which a statute unconstitutionally limited the President's removal power).   In any event, here Defendants remain subject to tangible harms that they would not be subject to had Texas brought this suit directly, namely the obligation to pay Relator's attorneys' fees and costs if Texas is successful.

- 18 -

branches: legislative, executive, and judicial," and Article 2, Section 2 states that "[e]xcept as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others."  With respect to the Executive Branch's power, Louisiana's Constitution further mandates that "[the Governor] shall faithfully support the constitution and laws of the state and of the United States and shall see that the laws are faithfully executed."  La. Const. art. 4 § 5.  This provision means that "the governor is responsible for executing the laws, and no other branch of government may impinge on this authority."  *Green I*, 545 So.2d at 1033.  One of the Executive's exclusive functions under the Louisiana Constitution is to institute civil proceedings to enforce the law.  *Green I*, 545 So.2d at 1035-36; *accord Buckley*, 424 U.S. at 150 ("conducting civil litigation in the courts of the United States for vindicating public rights" is a core executive function).

The Louisiana Supreme Court has held that the legislature's attempt to vest civil litigation authority in a person or entity outside the Executive Branch is unconstitutional.  In *Guidry v. Roberts*,  the Court rejected a separation of powers challenge to a committee created by Louisiana's Campaign Finance Disclosure Act because the powers granted to it "pertain[ed] only to receipt, dissemination, and investigation of reports, and referral of them to appropriate prosecutorial officers—government activities which [do not] fall within the exclusive power of the executive."  335 So.2d at 445-46 (citing *Buckley*, 424 U.S. at 137).  In reaching this conclusion, the Court emphasized that the committee was not granted "more substantial powers to enforce the law (such as the power to institute civil actions to enforce the act)," which, if exercised by a legislatively appointed body instead of an executive agency, would violate the power of the Executive branch.  *Id.* at 446.  Following the *Guidry* decision, however, the Louisiana legislature changed the membership of the committee and gave it authority to institute

civil proceedings to collect civil penalties for violations of the Campaign Finance Disclosure Act. *Green I*, 545 So.2d at 1035. In response to this change and following an inquiry from the Louisiana Secretary of State, the Louisiana Attorney General issued an opinion stating that "'under the Louisiana Supreme Court's holding in *Guidry* and the United States Supreme Court case of *Buckley v. Valeo*, ... it is clear that the granting of the power to institute civil actions in the Supervisory Committee is a violation of the separation of powers provision of the Louisiana Constitution.'" *Id.* (quoting Op. No. 80–1384, Jan. 23, 1981, p. 79).

The Louisiana legislature then changed the composition of the committee but left in place its power to institute civil actions, resulting in another constitutional challenge. *Id.* The Louisiana Supreme Court held the modified committee unconstitutional under Article 2, Section 2, reasoning that the legislature had impermissibly granted "authority to exercise functions exclusive to the executive branch, i.e., file civil proceedings" to legislatively appointed officials. *Id.* at 1036; *see also id.* at 1037 ("Seeking punishment for violation of the law," "whether by civil action or criminal prosecution," "is clearly an executive function."). On rehearing, the Court reversed its conclusion about the committee's constitutionality, but not because it changed course on the key constitutional question. Rather, it found instead that, based on the legislative amendments, the committee in fact resided within the Executive Branch and retained sufficient independence from the legislature such that it could exercise executive functions without violating separation of powers. *Green II*, 566 So.2d at 624.

*Guidry* and *Green* thus make clear that, under the Louisiana Constitution, the legislature cannot pass a law that vests the power to initiate and conduct civil litigation in a person or entity

outside the State's Executive Branch.[9]  But like the TMFPA, the LMAPIL vests authority in self-appointed private citizens, who are not members of the Executive Branch but nonetheless perform the core, exclusive executive function of initiating and conducting litigation.  *See supra* Sec. II.  In fact, the LMAPIL goes even further than the TMFPA in restricting the State's control over relator-initiated litigation.  While the TMFPA permits the State to ask the court to limit relator's continued participation in an intervened case and entitles the Executive to receive copies of pleadings and deposition transcripts, *see* Tex. Hum. Res. Code §§ 36.104(b-1), 36.107(d), the LMAPIL grants the State no such rights.  For all of these reasons, the LMAPIL violates Louisiana's Constitution.

## III.   The False Claims Act's *Qui Tam* Provisions Are Unconstitutional Under Article II of the U.S. Constitution

Because this Court is constrained by Fifth Circuit precedent to deny Defendants' motion as to the federal FCA counts, we only briefly discuss the federal arguments here to preserve them for appellate review.  In short, as Justice Thomas observed in his dissent in *Polansky*, 599 U.S. at 449, there are "substantial arguments" that the FCA's *qui tam* provisions violate Article II by impermissibly undermining the separation of powers between the coordinate branches of the

---

[9] Several cases from lower Louisiana courts and federal courts have noted the existence of Louisiana statutes that delegate authority to institute and conduct civil litigation to persons or entities outside the Executive Branch.  But none of these cases address whether those statutes are constitutional under Article 2, Section 2 or Article 4, Section 5, or even acknowledge *Guidry* or *Green*. In fact, whether that legislative delegation of executive authority unconstitutionally interfered with a core executive function was not raised in *any* of these cases.  *See Grace Ranch, L.L.C. v. BP Am. Prod. Co.*, 989 F.3d 301 (5th Cir. 2021) (evaluating whether State was party in interest for purpose of evaluating diversity jurisdiction); *Louisiana v. Union Oil Co. of Cal.*, 458 F.3d 364, 366 (5th Cir. 2006) (same); *Parish of Plaquemines v. Total Petrochemical & Refining USA, Inc.*, 64 F. Supp. 3d 872 (E.D. La. 2014) (same); *Williams v. Belle of Orleans, L.L.C.*, 890 So.2d 670, 675 (La. Ct. App. 2004) (holding that tax assessor had standing in her official capacity to petition for review of a tax commission decision).  These cases accordingly provide no basis to disregard the Louisiana Supreme Court's clear statements in *Guidry* and *Green* that only the Executive may initiate and pursue civil litigation on behalf of the State.

federal government—Article II, Section 2 (the Appointments Clause) and Section 3 (the Take Care Clause).  *See also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207 (2021) (observing that "a regime where Congress could freely authorize *unharmed* plaintiffs to sue defendants who violate federal law . . . would infringe on the Executive's Article II authority," because "the choice of how to prioritize and how aggressively to pursue legal actions against defendants who violate the law falls within the discretion of the Executive Branch, not within the purview of private plaintiffs (and their attorneys)" who "are not accountable to the people and are not charged with pursuing the public interest in enforcing a defendant's general compliance with regulatory law").

### A.    The FCA's *Qui Tam* Provisions Violate Article II's Appointments Clause

The Appointments Clause requires that the President appoint, subject to Senate confirmation, "Officers of the United States," and further requires the President, the heads of agencies, or the courts to appoint "inferior Officers."  U.S. Const. art. II, § 2, cl. 2.  The Clause is "among the significant structural safeguards of the constitutional scheme," "designed to preserve political accountability" of the President by "preventing the diffusion" of the Executive's power to oversee and control those who execute the laws.  *Edmond v. United States,* 520 U.S. 651, 659, 663 (1997); *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 878 (1991); *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 501 (2010) ("A key constitutional means vested in the President—perhaps the key means—was the power of appointing, overseeing, and controlling those who execute the laws." (cleaned up)).  Because "[a] lawsuit is the ultimate remedy for a breach of the law," the Supreme Court has held that "conducting civil litigation . . . for vindicating public rights" of the United States is an "executive functio[n]" that may be discharged only by duly-appointed officers under the Appointments Clause.  *Buckley*, 424 U. S. at 138-40 (cleaned up).

- 22 -

But conducting civil litigation to vindicate a purported violation of federal law is precisely what an FCA relator does; indeed, that is the entire point of the FCA's *qui tam* provisions.   *See Polansky*, 599 U.S. at 425 ("injury [relators] assert is exclusively to the Government"); *id.* (*qui tam* suit alleges "both an 'injury to the government's sovereignty arising from violation of its laws' and an injury to its 'proprietary interests resulting from a fraud' (cleaned up) (quoting *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000)). And "[a] relator is n[ot] appointed as an officer of the United States." *Cochise Consultancy, Inc. v. U.S. ex rel. Hunt*, 587 U.S. __, 139 S. Ct. 1507, 1514 (2019) (citing U.S. Const., art. II, § 2, cl. 2); *see also Stevens*, 529 U.S. at 773-74 (holding that a relator only has standing to bring an FCA claim because they are a partial assignee of the government's claim).   In fact, FCA relators are not "appointed" to their positions by anyone other than themselves.   Thus, when Congress unleashed a "posse" of self-appointed "*ad hoc* deputies to uncover and prosecute frauds against the government," *U.S. ex rel. Milam v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 961 F.2d 46, 49 (4th Cir. 1992), it impermissibly diffused the Executive's appointment power under Article II. *Freytag*, 501 U.S. at 885-86 (Congress violates the Appointments Clause not only when it arrogates appointment power to itself, but also when it "diffuse[s]" appointment power).

### B.    The FCA's *Qui Tam* Provisions Violate Article II's Take Care Clause

Article II's Take Care Clause provides that the President "shall take Care that the Laws be faithfully executed."   U.S. Const. art. II, § 3.   As noted above, the Executive's responsibility to ensure the laws are "faithfully executed" under the Take Care Clause includes the exclusive authority to bring and conduct "civil litigation in the courts of the United States [to] vindicat[e] public rights," *Buckley*, 424 U.S. at 138, 140.   Congress therefore cannot pass any law that interferes with the Executive's ability to accomplish this constitutionally assigned function by depriving the Executive of control over civil litigation conducted on behalf of the United States.

*See Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 443 (1977) (An Act of Congress cannot disrupt "the proper balance between the coordinate branches [by] prevent[ing] the Executive Branch from accomplishing its constitutionally assigned functions.").

But that is what Congress did through the FCA's *qui tam* provisions: the FCA impermissibly restricts the Executive Branch's prosecutorial discretion; control over relator-initiated litigation; and ability to dismiss or settle a suit over a relator's objection in many of the same ways that the TMFPA and LMAPIL impermissibly restrict their State officials' authority to do the same. *See supra* Sec. II. Moreover, although the government can intervene in relator-initiated litigation or seek to terminate it (subject to the above restrictions), it has no ability to remove a relator and proceed with the action. "[T]he Constitution . . . empower[s] the President to keep [] officers accountable—by removing them from office, if necessary," and "[w]ithout such power, the President could not be held fully accountable for discharging his own responsibilities; the buck would stop somewhere else." *Free Enter. Fund*, 561 U.S. at 483, 514. "[T]he President's removal power is the rule, not the exception," and thus the Supreme Court has expressly declined to "extend . . . congressional limitations" on that power beyond the for-cause removal provisions previously upheld by the Court. *Seila Law*, 591 U.S. at __, 140 S. Ct. at 2198, 2206 (quoting *Free Enter. Fund*, 561 U.S. at 483). The FCA does not just limit the Executive's removal power, however; it eliminates it altogether. *Riley*, 252 F.3d at 763 & n.19 (Smith, J., dissenting) (Attorney General cannot "remove the relator from the litigation under any circumstances").

- 24 -

Thus, the FCA's *qui tam* provisions violate Article II's Take Care Clause, and Relator's FCA claims should be dismissed.[10]

## CONCLUSION

For these reasons, the Court should grant Defendants' motion for judgment on the pleadings and dismiss Relator's and Texas's claims.

Dated:  September 1, 2023                    Respectfully Submitted,

ARNOLD & PORTER KAYE SCHOLER LLP

/s/ *Tirzah S. Lollar*
CRAIG D. MARGOLIS
Craig.Margolis@arnoldporter.com
TIRZAH S. LOLLAR
Tirzah.Lollar@arnoldporter.com
CHRISTIAN D. SHEEHAN
Christian.Sheehan@arnoldporter.com
JAYCE BORN
Jayce.Born@arnoldporter.com
EMILY REEDER-RICHETTI
Emily.Reeder-Ricchetti@arnoldporter.com
MEGAN PIEPER
Megan.Pieper@arnoldporter.com
ALYSSA GERSTNER
Alyssa.Gerstner@arnoldporter.com
MEGHAN C. MARTIN
Meghan.Martin@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.6127
Fax: +1 202.942.5999

PAULA RAMER
Paula.Ramer@arnoldporter.com
250 West 55th Street New York,
New York 10019-9710

---

[10] There are additional arguments to be made based on the historical use and existence of *qui tam* statutes at the time of the Constitution's adoption and the later enactment of the federal FCA during the Civil War, which Defendants omit here due to space constraints imposed by rule.  *See Riley*, 252 F.3d at 772-75 (Smith, J., dissenting).  Defendants would be pleased to make them if allowed further briefing by the Court and in any event will raise them in the court of appeals should it be presented with the constitutionality question.

T: +1 212.836.8474

CHRISTOPHER M. ODELL
Texas Bar No. 24037205
Christopher.Odell@arnoldporter.com
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: +1 713.576.2400
Fax: +1 713.576.2499

RYAN BROWN ATTORNEY AT LAW
RYAN PATRICK BROWN
Texas Bar No. 24073967
ryan@ryanbrownattorneyatlaw.com
1222 S. Fillmore St.
Amarillo, Texas 79101
T: (806) 372-5711
F: (806) 350-7716

*Attorneys for Defendants Planned Parenthood
Gulf Coast, Inc., Planned Parenthood of Greater
Texas, Inc., Planned Parenthood of South Texas,
Inc., Planned Parenthood Cameron County, Inc.,
and Planned Parenthood San Antonio, Inc.*


Respectfully submitted,

O'MELVENY & MYERS LLP

/s/ *Danny S. Ashby*
DANNY S. ASHBY
Texas Bar No. 01370960
dashby@omm.com
MEGAN R. WHISLER
Texas Bar No. 24079565
mwhisler@omm.com
2501 N. Harwood Street, Suite 1700
Dallas, Texas 75201
T: (972) 360-1900
F: (972) 360-1901

LEAH GODESKY (*pro hac vice*)
lgodesky@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
T: (310) 553-6700
F: (310) 246-6779

- 26 -

ANTON METLITSKY (*pro hac vice*)
ametlitksy@omm.com
7 Times Square
New York, New York 10036
T: (212) 326-2000
F: (212) 326-2061

RYAN BROWN ATTORNEY AT LAW
RYAN PATRICK BROWN
Texas Bar No. 24073967
ryan@ryanbrownattorneyatlaw.com
1222 S. Fillmore St.
Amarillo, Texas 79101
T: (806) 372-5711
F: (806) 350-7716

*Attorneys for Defendant Planned Parenthood
Federation of America, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 1, 2023, the foregoing document was electronically filed with the Clerk of Court using CM/ECF.

*/s/ Tirzah S. Lollar*
Tirzah S. Lollar