# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ALEX DOE, Relator, THE STATE OF TEXAS, *ex rel.* ALEX DOE, Relator, THE STATE OF LOUISIANA, *ex rel.* ALEX DOE, Relator, | § § § § § § | |
| Plaintiffs, | § § § | No. 2:21-cv-022-Z |
| v. | § § | |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., PLANNED PARENTHOOD GULF COAST, INC., PLANNED PARENTHOOD OF GREATER TEXAS, INC., PLANNED PARENTHOOD SOUTH TEXAS, INC., PLANNED PARENTHOOD CAMERON COUNTY, INC., PLANNED PARENTHOOD SAN ANTONIO, INC., | § § § § § § § § § § § | |
| Defendants. | § § § | |

## DEFENDANTS' MOTION FOR CLARIFICATION AND PARTIAL RECONSIDERATION OF UNSEALING ORDER

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................... 1

LEGAL STANDARD .............................................................................................. 2

ARGUMENT .......................................................................................................... 2

    I.    The Court Should Clarify The Unsealing Order's Redaction
        Requirements. ................................................................................... 2

        A.    Unredacted Non-Party Contact Information in Plaintiffs'
               Appendices ............................................................................. 3

        B.    Information Subject to Partial Redaction Under Rule 5.2(a)..................... 5

    II.    The Court Should Clarify Its Order to Unseal Information Subject to
        Attorney-Client and Attorney Work Product Privileges ......................... 6

        A.    The Redacted Language is Attorney-Client Privileged. ............................ 7

        B.    The Redacted Language is Protectable Attorney Work Product. .............. 8

    III.    The Court Should Reconsider Its Order To Unseal Non-Party Security
        Information And Certain Trade Secret Information. ............................... 9

        A.    PPFA Medical Standards & Guidelines (Appx. 7346-7771).................... 9

        B.    Kaleido Health Solutions Security Policy (Appx. 4293-4366)............... 13

        C.    Documents Disclosing PPFA's Proprietary Accreditation Program ....... 15

        D.    Medicaid Reimbursement Toolkit (Appx. 4998-5009 & Appx.
               6623–6634) .......................................................................... 21

CONCLUSION ..................................................................................................... 23

REQUEST FOR STAY IF DENIED ..................................................................... 23

## TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Apple Inc. v. Samsung,*
   727 F.3d 1214 (Fed. Cir. 2013) .............................................................. 13

*Berezowsky v. Rendon Ojeda,*
   652 F. App'x 249 (5th Cir. 2016) ............................................................. 2

*Carter v. Sw. Airlines Co.,*
   2022 WL 283025 (N.D. Tex. Jan. 31, 2022) ............................................ 3

*Cram v. Burger King Corporation,*
   2019 WL 4095570 (D.N.H. Aug. 29, 2019) ............................................ 20

*Dickey's Barbeque Pit, Inc. v. Neighbors,*
   2015 WL 13466613 (E.D. Tex. June 5, 2015) ........................................ 17

*Edmo v. Idaho Dep't of Correction,*
   2018 WL 4896717 (D. Idaho Oct. 9, 2018) ............................................ 11

*Edward H. Bohlin Co. v. Banning Co.,*
   6 F.3d 350 (5th Cir. 1993) ......................................................................... 2

*EEOC v. BDO USA, L.L.P.,*
   876 F.3d 690 (5th Cir. 2017) ..................................................................... 8

*Frechette v. Health Recovery Servs, Inc.,*
   2023 WL 2236477 (S.D. Ohio Feb. 27, 2023) ...................................... 14

*Hickman v. Taylor,*
   329 U.S. 495 (1947) ................................................................................... 9

*Home Depot, Inc. v. Steadfast Ins. Co.,*
   2022 WL 6764157 (S.D. Ohio Oct. 11, 2022) ...................................... 14

*In re Anthem, Inc. Data Breach Litig.,*
   2017 WL 9614789 (N.D. Cal. Aug. 25, 2017) ...................................... 15

*Johnson v. Diversicare Afton Oaks, LLC,*
   597 F.3d 673 (5th Cir. 2010) ..................................................................... 2

*June Medical Services, L.L.C. v. Phillips,*
   22 F.4th 512 (5th Cir. 2022) ...................................................................... 9

*Kitchen v. Corizon Health Inc.,*
   2017 WL 5099892 (W.D. Mich. Nov. 5, 2017) ...................................... 5

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Laatz v. Zazzle, Inc.*,
    2023 WL 4983670 (N.D. Cal. Aug. 3, 2023) .......................................................... 15

*Last v. M-I, L.L.C.*,
    2022 WL 105107 (E.D. Cal. Jan. 11, 2020) ........................................................... 22

*Mallet & Co. v. Lacavo*,
    16 F.4th 364 (3d Cir. 2021) ................................................................................... 17

*Music Grp. Macao Com. Offshore Ltd. v. Foote*,
    2015 WL 3993147 (N.D. Cal. June 30, 2015) ........................................................ 15

*N.H. Right to Life v. Dep't of Health & Human Servs.*,
    976 F. Supp.2d 43 (D.N.H. 2013) .......................................................................... 12

*Planned Parenthood of Wisc., Inc. v. Van Hollen*,
    94 F. Supp. 3d 949 (W.D. Wis. 2015) .................................................................... 22

*Schwimmer v. Presidio Industries, LLC*,
    2011 WL 13089398 (N.D. Tex. Feb. 11, 2011) ...................................................... 10

*SEC v. Brady*,
    238 F.R.D. 429 (N.D. Tex. 2006) ............................................................................. 8

*Sibley v. Citizens Bank & Trust Co. of Marks*,
    2021 WL 309135 (N.D. Miss. Jan. 29, 2021) ........................................................ 12

*Stafford v. Int'l Bus. Mach. Corp.*,
    --- F.4th ---, 2023 WL 5183546 (2d Cir. Aug. 14, 2023) ....................................... 13

*Stafford v. Int'l Bus. Machines Corp.*,
    2022 WL 1486494 (S.D.N.Y. May 10, 2022) ........................................................... 5

*Takata v. Hartford Comprehensive Employee Ben. Serv. Co.*,
    283 F.R.D. 617 (E.D. Wash. 2012) ........................................................................ 16

*United States ex rel. Markus v. Aerojet Rocketdyne Holdings, Inc.*,
    2021 WL 4951788 (E.D. Cal. Oct. 25, 2021) ........................................................ 15

*United States v. Avenatti*,
    550 F. Supp. 3d 36 (S.D.N.Y. 2021) ....................................................................... 5

*United States v. Hadden*,
    2020 WL 7640672 (S.D.N.Y. Dec. 23, 2020) ........................................................... 5

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) ........................................................................................................ 8

*Weakley v. Redline Recovery Services, LLC*,
    2011 WL 1522413 (S.D. Cal. Apr. 20, 2011) .......................................................... 6

*Wilkins v. Overall*,
    2021 WL 824954 (S.D. Ill. Mar. 4, 2021) ................................................................ 11

## Other Authorities

4B Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 1155 (4th ed.
    Apr. 2019) ........................................................................................................................ 5

## Rules

Fed. R. App. P. 4(a)(1)(A) ...................................................................................................... 23

Fed. R. App. P. 4(a)(3) ............................................................................................................ 23

Fed. R. Civ. P. 26(b)(3)(A) ...................................................................................................... 8

Fed. R. Civ. P. 26(b)(3)(A)(ii) ................................................................................................ 8

Fed. R. Civ. P. 26(b)(3)(B) ...................................................................................................... 8

Fed. R. Civ. P. 5.2(a) ......................................................................................................... 2, 5

Defendants Planned Parenthood Federation of America, Inc. ("PPFA"), Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood South Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc. (together, "Affiliate Defendants"; and collectively with PPFA, "Defendants") respectfully seek clarification and partial reconsideration of the Court's August 4, 2023 Order (ECF No. 517) ("Unsealing Order") pursuant to Federal Rule of Civil Procedure 59(e).

## INTRODUCTION

Defendants seek clarification of the Unsealing Order following Plaintiffs' public filing of summary judgment appendices that they claimed complied with the Unsealing Order, because Plaintiffs' submissions not only disclosed "non-party contact information" subject to redaction under the Unsealing Order—including names of non-public employees and third parties, personal cell phone numbers, home addresses, and personal email addresses—but also unredacted social security numbers, birth dates, and financial account information. Defendants also seek clarification of the Unsealing Order and August 11, 2023 Clarification Order (ECF No. 526), which ordered the sealing of Plaintiffs' Reply Brief containing attorney privileged information but unsealed the underlying privileged information.

In addition, Defendants respectfully request that the Court reconsider its order to unseal a discrete set of 24 documents,[1] which would disclose a non-party's detailed security policy (and, in turn, expose patient information to cybersecurity attacks) and trade secret information that is the foundation of the Planned Parenthood brand for providing family planning services that PPFA and its member Affiliates have spent *years* developing and protecting from disclosure.

---

[1] Twenty one (21) of these documents are different iterations of templates and reports that, if fully unsealed, would disclose the entire compilation of accreditation indicators and elements of performance that comprise PPFA's proprietary and confidential accreditation program.

1

## LEGAL STANDARD

Courts have broad discretion in deciding a motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e) to amend or alter a judgment "to correct a manifest error of law or fact." *Berezowsky v. Rendon Ojeda*, 652 F. App'x 249, 251 (5th Cir. 2016); *see also Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673 (5th Cir. 2010).  In considering such motions, courts "must strike the proper balance between two competing imperatives:  (1) finality, and (2) the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993).

## ARGUMENT

### I.   The Court Should Clarify The Unsealing Order's Redaction Requirements.

As the Court knows, on August 7, 2023, Relator filed on the public docket copies of Plaintiffs' Appendix (ECF No. 518), Supplemental Appendix (ECF No. 519), and Second Supplemental Appendix (ECF No. 520) (collectively, the "Appendices").  Although Relator represented that these submissions complied with the Court's Unsealing Order, *see* ECF No. 521 at 1–2, Defendants immediately identified several instances where the Appendices disclosed the names of non-public employees and third parties, personal cell phone numbers, home addresses, and personal email addresses that were not redacted in accordance with the Unsealing Order.  In addition, the Appendices revealed social security numbers, birth dates, and financial account numbers that were not properly redacted in accordance with Federal Rule of Civil Procedure 5.2(a), even though nothing in the Court's Unsealing Order indicated an intent to alter Rule 5.2(a)'s requirements.  *See* Fed. R. Civ. P. 5.2(a).  Defendants immediately notified the Court of their intent to seek reconsideration of the Unsealing Order, *see* ECF 522, and began preparing an emergency motion to request resealing of the Appendices, *see* ECF 523.  Later the same day, the Court issued a further order provisionally re-sealing the Appendices and directing the Clerk to

2

maintain Plaintiffs' summary judgment briefs under seal.[2]  *See* ECF 522.

Because Plaintiffs' redactions in the Appendices did not comport with the Unsealing Order or Rule 5.2(a), Defendants respectfully request an order (i) clarifying that all non-party employee names, personal cell phone numbers, and non-party contact information, including the information identified in Exhibits A and B attached hereto, must be redacted from the Appendices; (ii) confirming that the Appendices should be redacted in accordance with Rule 5.2; and (iii) requiring Plaintiffs to provide Defendants with any proposed redacted version of the Appendices not less than two business days before filing them on the public docket.

A.    Unredacted Non-Party Contact Information in Plaintiffs' Appendices.

First, Defendants seek clarification that the information in **Exhibit A** should be redacted in the Appendices in accordance with the Court's Unsealing Order.[3]  Defendants understood the Unsealing Order to require redaction of the "personal cell phone and non-party contact information outlined" in Defendants' opposition briefing and supporting exhibits—which included non-public employee and third-party names, personal cell phone numbers, home addresses, and/or personal email addresses—in order to protect the privacy interests of those non-parties.  *See* ECF No. 517 at 8 (citing *Carter v. Sw. Airlines Co.*, 2022 WL 283025, at *3 (N.D. Tex. Jan. 31, 2022) ("[T]he public's interest in knowing the names of the non-party employees does not outweigh the non-party employees' privacy interest.")).  However, Relator appears to have a different understanding of the Unsealing Order, given that they publicly filed Appendices without redacting the information identified on Exhibit A and have repeatedly stated

---

[2] Because Defendants agreed that Plaintiffs' summary judgment briefing could be unsealed in its entirety except for Plaintiffs' summary judgment reply brief, the Court subsequently directed the Clerk to unseal Plaintiffs' other summary judgment briefing (ECF Nos. 476, 481).  *See* ECF No. 526 at 2.

[3] While Plaintiffs applied some redactions to the Appendices, Exhibit A identifies additional non-party contact information that falls within the Unsealing Order's redaction requirement that was not redacted in the Appendices.

that their Appendices were consistent with the Unsealing Order.  ECF No. 521 at 1–2; ECF No. 524 at 3.  Defendants therefore ask that the Court clarify that the information identified in Exhibit A should be redacted consistent with the Court's Unsealing Order.

In addition, Defendants respectfully ask that the Court clarify that the Unsealing Order's redaction requirements extend to and include non-party contact information contained in documents that the Court has ordered unsealed in full, which Defendants have identified in **Exhibit B** for Plaintiffs' Appendices.  Although the Court's Unsealing Order identified those instances where Defendants took the position that a particular document should be unsealed subject to redactions for non-party contact information, the Unsealing Order did not specifically account for non-party contact information that merits redaction for the same reason in documents where Defendants took the position that a document in Plaintiffs' or Defendants' appendices should remain entirely under seal.  *See* ECF No. 517 at 8 (ordering redactions of non-party contact information in documents that Defendants agreed could be unsealed subject to redactions for non-party contact information identified by Defendants). While Defendants understand that the Court denied Defendants' request to maintain those documents entirely under seal, Defendants respectfully request that the Court clarify that non-party contact information that appears in those documents also merits redaction, including the non-party contact information that Defendants have identified in Exhibit B.

Doing so would vindicate the same interests that the Court recognized in its Unsealing Order to preserve the privacy interests of those non-parties and to protect them from potential harassment and harm.  *See* ECF No. 517 at 7–8.  And it is consistent with what other courts have done in circumstances where courts have denied a party's request to maintain documents entirely under seal.  *See., e.g., United States v. Hadden*, 2020 WL 7640672, at *2, n.2 (S.D.N.Y. Dec. 23,

2020) ("The Court will provide the defense the opportunity to redact personal information such as . . . home addresses."); *United States v. Avenatti*, 550 F. Supp. 3d 36, 54–55 (S.D.N.Y. 2021) (denying request to entirely seal documents but allowing defendant two weeks to offer redactions for Court's consideration); *Stafford v. Int'l Bus. Machines Corp.*, 2022 WL 1486494, at *3 (S.D.N.Y. May 10, 2022), *rev'd on other grounds*, 2023 WL 5183546 (2d Cir. Aug. 14, 2023) (directing parties to confer on any sensitive information about non-party employee and file proposed redactions under seal within two weeks of unsealing order).

    B.    <u>Information Subject to Partial Redaction Under Rule 5.2(a).</u>

Second, Defendants seek confirmation that the Unsealing Order does not alter Rule 5.2(a)'s requirement that a party making a filing must partially redact "an individual's social-security number, taxpayer-identification number, or birth date, the name of an individual known to be a minor, or a financial-account number." Fed. R. Civ. P. 5.2(a). Although a court may alter Rule 5.2(a)'s redaction requirement by "order[ing] otherwise," Relator's motions to unseal did not seek relief from Rule 5.2(a)'s requirements, which "places the obligation to redact the protected information on counsel and the party or non-party making the filing."[4]  4B Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 1155 (4th ed. Apr. 2019); *see Kitchen v. Corizon Health Inc*., 2017 WL 5099892, at *5 (W.D. Mich. Nov. 5, 2017). Defendants have identified several instances where the Appendices did not comply with Rule 5.2(a)'s requirement that a party "may include only . . . the last four digits of the social-security number," "the year of the individual's birth," and "the last four digits of the financial-account number," and instead disclosed individual social security numbers, birth dates, and financial

---

[4] To file a document using the Court's Electronic Case Filing system, an attorney must  check a box when they log in, acknowledging that "I understand that, if I file, I must comply with the redaction rules.  I have read this notice." In addition, upon submission of a pleading, but prior to finalization, a warning again appears to ask the filer if they have complied with the redaction rules.

account numbers in full.  *See, e.g.*, Appx. 473 (unredacted social security numbers and dates of birth); Appx. 475, 480, 501 (unredacted social security numbers); Appx. 461, 463, 466, 471 (unredacted taxpayer identification numbers); Appx. 467 (unredacted financial account numbers).   Accordingly, Defendants respectfully request that the Court confirm that the Unsealing Order does not relieve the parties of their obligation to comply with Rule 5.2(a).  *See Weakley v. Redline Recovery Services, LLC*, 2011 WL 1522413, at \*2 (S.D. Cal. Apr. 20, 2011) ("The Court need not detail the serious consequences individuals suffer when their social security numbers are publicly broadcast over the internet for any would-be identity thieves." (cleaned up)).

## II.   The Court Should Clarify Its Order to Unseal Information Subject to Attorney-Client and Attorney Work Product Privileges.

The Court has maintained the sealing of Plaintiffs' summary judgment Reply Brief (ECF No. 495), which discloses three lines of Affiliate Defendants' attorney-client privileged and attorney work product information.  ECF No. 526 at 2.[5]   However, both the Unsealing Order and the later August 11, 2023 Clarification Order are silent as to the underlying unredacted email (Appx. 6506-6507) containing the privileged information.   Affiliate Defendants respectfully request that the Court clarify that the Unsealing Order does not require the unsealing of the underlying unredacted email, which Affiliate Defendants clawed back months ago.

Pursuant to Federal Rule of Evidence 502(d) and the Court's Scheduling Orders[6], upon

---

[5] Affiliate Defendants would not object to the unsealing of most of Plaintiffs' Reply Brief, so long as those three lines were redacted and would remain under seal.  Affiliate Defendants have previously filed a public version of the brief with the redaction of those three lines.  *See* ECF No. 510-1.

[6] The Court's Scheduling Order states that the production of privileged or work-product documents, "whether inadvertent or otherwise," does not waive the privilege or work product protections.  ECF No. 123 at 5-6.  A party, upon being notified to a claim of privilege, "must promptly return, sequester, or destroy the specified information, and any copies it has; must not

realizing that attorney-client privileged and attorney work product protected information was inadvertently produced without redaction, Affiliate Defendants promptly notified Plaintiffs, clawed the document back, and produced a correctly redacted version of the document. *See* ECF No. 524-2. Both Relator and Texas confirmed that they destroyed the unredacted copies without objection. *See* Exhibit C, Exhibit D. Affiliate Defendants addressed the document in their Opposition in Part to Relator's Motion to Unseal Plaintiffs' Response to Defendants' Motions for Summary Judgment and Supplemental Appendix (ECF No. 460 at 1-2, n. 4) and in their Opposition to Relator's Motion to Unseal Documents Plaintiffs' Reply in Support of Plaintiffs' Motions for Summary Judgment and Second Supplemental Appendix. ECF No. 510 at 1 & n.1, ECF No. 510-1 (redacted copy of Plaintiffs' Reply in Support of Plaintiffs' Motions for Summary Judgment); ECF No. 510-3 (redacted copy of privileged email). Relator expressed no objection to clawing back this attorney-client privileged and attorney work product information over the past four months, and Relator was also silent about the email and the three lines of privileged information in their Reply in support of their unsealing motion. *See* ECF No. 511. As such, the three lines of attorney-client privileged and attorney work product protected information quoted in Plaintiffs' summary judgment Reply Brief should remain under seal, and the unredacted email should be substituted with the redacted copy to preserve the privilege.

A.   The Redacted Language is Attorney-Client Privileged.

The redacted language is attorney-client privileged. The attorney-client privilege protects from disclosure any document (or portion of a document) where the proponent (1) "made a confidential communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." *EEOC*

---

use or disclose the information until the claim is resolved" and "may promptly present the information to the court under seal for a determination of the claim." *Id.* at 6.

*v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017) (emphasis deleted).  The document in question is an email exchange between Planned Parenthood of Greater Texas, Inc. ("PPGT") and its outside counsel at Husch Blackwell discussing counsel's legal advice regarding a federal audit unrelated to the allegations in this case and the Health & Human Services Commission's subsequent actions based on that federal audit.  The redacted communications are quintessential attorney-client privileged communications and should remain under seal.

      B.     <u>The Redacted Language is Protectable Attorney Work Product.</u>

The redacted language also reflects attorney work product, which includes "documents and tangible things that are prepared in anticipation of litigation or for trial by or for [a] party or its representative (including the . . . party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A).  There are two subcategories of work product: ordinary work product and opinion work product. *See SEC v. Brady*, 238 F.R.D. 429, 442 (N.D. Tex. 2006).  The latter category consists of "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).  Although all work product is "[o]rdinarily not subject to discovery," ordinary work product can be discovered if a party "has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id.* 26(b)(3)(A)(ii).  Opinion work product, on the other hand, cannot be discovered even under that demanding standard.  *See Upjohn Co. v. United States*, 449 U.S. 383, 401–02 (1981); Fed. R. Civ. P. 26(b)(3)(B).  The redacted portions of the document quoted in the Reply Brief are plainly opinion work product, as they reflect strategy discussions and an attorney's opinion. *See, e.g., Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947) (noting that "[p]roper preparation of a client's case demands" that counsel "prepare his legal theories and plan his strategy," and that this work is reflected in "interviews, statements, memoranda, correspondence, briefs, mental impressions,

personal beliefs, and countless other tangible and intangible ways").

**III.    The Court Should Reconsider Its Order To Unseal Non-Party Security Information And Certain Trade Secret Information.**

Defendants respectfully submit that portions of the Unsealing Order do not comport with Fifth Circuit precedent requiring an individualized evaluation of the documents subject to sealing.  In *June Medical Services, L.L.C. v. Phillips*, the Fifth Circuit concluded that a district court erred by "failing to evaluate all of the documents individually," noting that "[i]t is the solemn duty of the judge to scrupulously examine each document sought to be sealed."  22 F.4th 512, 521 (5th Cir. 2022) ("It is not easy, but it is fundamental.").  "To decide whether something should be sealed," the Fifth Circuit emphasized that the court must undertake a "document-by-document," "line-by-line" balancing of "the public's common law right of access against the interests favoring non-disclosure."  *Id*. (cleaned up).  Given the sheer number of documents that Plaintiffs put at issue (almost 300 documents constituting more than 9,000 pages) and acknowledging the Court's reasoning in its Unsealing Order, Defendants ask that the Court reconsider its Unsealing Order and conduct an individual evaluation only as to a discrete set of documents.  These documents are highly sensitive protocols for securing patient information and/or some of PPFA's most important trade secrets.  Defendants respectfully submit that they indisputably warrant sealing.

A.    PPFA Medical Standards & Guidelines (Appx. 7346-7771)

PPFA respectfully requests that the Court reconsider unsealing the Medical Standards and Guidelines ("MS&Gs"), which were not specifically addressed in the Unsealing Order, because the interest in not disclosing a 433-page document detailing PPFA's proprietary standards and guidelines for providing family planning healthcare services plainly outweighs the public interest in that document, which Plaintiffs cited only for the generalized statement that

9

"[PPFA] also developed and enforced Medical Standards and Guidelines."  ECF No. 481 at 60.

PPFA respectfully submits that, given the competing interests between nondisclosure and public

access, the "Administrative Chapter 1: Introduction," which provides an introductory overview

of the MS&Gs, may be unsealed, *see* Appx. 7338-7345, but that the remainder of the MS&Gs

should remain under seal, *see* Appx. 7346–7771.

PPFA has described the alleged harm that would result from disclosure of the MS&Gs

"with particular and specific demonstration of fact, as distinguished from stereotyped and

conclusory statements."  ECF No. 214 at 9–10.  As PPFA explained in its opposition to

unsealing and supporting declaration, the MS&Gs include more than 400 pages of highly

confidential and proprietary materials that PPFA created and refined "over 40 years using

considerable time, effort, and expense, in consultation with dozens of medical professionals and

experts,"[7] and the MS&Gs constitute a trade secret and valuable benefit of PPFA membership

that Planned Parenthood Affiliates use "to provide high-quality, evidence-based health care

services for all patients."  Decl. of Kim Custer ¶ 6, ECF No. 460-4; Defs' Opp. to Mot. Unseal,

ECF 460 at 8; *see also Schwimmer v. Presidio Industries, LLC*, 2011 WL 13089398, at *6 (N.D.

Tex. Feb. 11, 2011) ("*Business methods*, customer lists, *know-how*, and marketing information

have all been held to be trade secrets." (emphasis added)).  "Because the guidance and

recommendations included in the MS&Gs are intended to be adaptable and used by Affiliates in

all 50 states," PPFA's declarant explained how disclosure of the MS&Gs could cause

competitive harm to PPFA and its Affiliates "by making the expertise, guidance, and findings

included in these materials available to anyone to use," including "other health care providers

[who] could easily appropriate Planned Parenthood's service and care model," which has been

---

[7] Additional details regarding the procedures by which the MS&Gs are created, revised, reviewed, approved, and updated may be found in Appx. 4892–4894.

refined over the past 40 years, "and, in so doing, could more directly compete for patients, funding, grants, staff and clinical providers." Decl. of Kim Custer ¶ 6, ECF No. 460-4; *see also* Defs' Opp. to Mot. Unseal, ECF 460 at 9. For that very reason, PPFA has marked the MS&Gs as "Proprietary and confidential property of Planned Parenthood" and "has a written policy prohibiting the reproduction, reprinting, and distribution of the MS&Gs, and it expects all Affiliates to treat the material as proprietary and highly confidential." *Id*.; *see also* Appx. 7341–44 (requiring any affiliate MS&Gs based on PPFA MS&Gs be labeled "proprietary and confidential property of Planned Parenthood" and specifying restrictions and written approval processes for citing or sharing MS&Gs).

The MS&Gs are fundamentally no different from the medical guidelines that the court in *Wilkins v. Overall* ordered sealed because they "were developed by Wexford at substantial monetary expense using a team of industry experts" and were "unique and tailored to the provision of medical care in correctional facilities" that, if disclosed, "would cause competitive harm." 2021 WL 824954, at *3 (S.D. Ill. Mar. 4, 2021) ("In light of this information, Defendant has sufficiently demonstrated that Exhibit L, the Medical Guidelines, contains information that qualify as trade secrets and that Wexford will incur undue harm if the information remains accessible to the public."); *see also Edmo v. Idaho Dep't of Correction*, 2018 WL 4896717, at *2 (D. Idaho Oct. 9, 2018) (sealing treatment and diagnosis document that "was the product of two years of Corizon's efforts to create a set of guidelines that Corizon medical providers working at the jails and prisons could use as a reference"). They also are substantially similar to those that another court concluded were exempt from disclosure under the Freedom of Information Act, finding disclosure of Planned Parenthood's "model for operating a family planning clinic" would "likely cause Planned Parenthood 'harm flowing from the affirmative use of proprietary

information by competitors'" who "'could easily copy the Planned Parenthood model and compete for patients, funding, staff, and providers.'"  *See N.H. Right to Life v. Dep't of Health & Human Servs.*, 976 F. Supp.2d 43, 56 (D.N.H. 2013).  Although the plaintiff there, like Relator here, deemed any such harm "speculative," the court rejected that position, noting a showing of actual competition and the likelihood of substantial competitive injury were sufficient.  *See id*. The same is true here.

By contrast, the public interest in the detailed information contained in the 433-page MS&Gs is insignificant.  *See also* Defs' Opp. to Mot. Unseal., ECF 460 at 8 (arguing public interest in details of MS&Gs is extremely low).  Plaintiffs only cite the MS&Gs for the undisputed proposition that PPFA has developed and enforced the MS&Gs.  *See* ECF No. 481 at 60.  They do not point to a single sentence, paragraph, or page in the MS&Gs as relevant to *any* issue in this litigation that would warrant unsealing even limited portions of the document, let alone the *whole* document, which would disclose to competitors PPFA's unique evidence-based model for operating a family planning clinic.  To take just two examples, PPFA's colposcopy documentation requirements, *see* Appx. 7398, and policies and procedures for pharmaceutical services, *see* Appx. 7425, are not relevant to this case.  By extension, the public interest in accessing that detailed information is non-existent and would be unaffected by sealing it.  *See Sibley v. Citizens Bank & Trust Co. of Marks*, 2021 WL 309135, at *1 (N.D. Miss. Jan. 29, 2021) (finding "details of the discussions of the CB&T board of directors which are unrelated to Plaintiff as reflected in the minutes of the board of directors' meetings are not relevant to the issues presented in the instant case, and sealing of the documents should not, accordingly, affect the public interest"); *see also Stafford v. Int'l Bus. Mach. Corp.*, --- F.4th ---, 2023 WL 5183546, at *6 (2d Cir. Aug. 14, 2023) ("[T]he 'weight of the presumption [of access] is a function of (1)

12

the role of the material at issue in the exercise of Article III judicial power and (2) the resultant value of such information to those monitoring the federal courts.'" (citation omitted)); *Apple Inc. v. Samsung*, 727 F.3d 1214, 1228 (Fed. Cir. 2013) (holding party's interest in non-disclosure of pages outweighed public's interest in information that was "neither cited nor discussed before the district court" and "irrelevant to the public's understanding of the judicial proceedings").

If Plaintiffs had cited to some particular information in the MS&Gs as relevant to refuting PPFA's claim that "it does not provide medical care and does not direct or control the operations of the PPFA Defendants Affiliates," Reply ISO Mot. to Unseal, ECF No. 504 at 4, the balance of interests might favor unsealing that particular information, given that disclosure of an isolated piece of information in the MS&Gs would not disclose PPFA's entire business model.  But they did not, and for that reason, PPFA respectfully submits that, at most, only the "Administrative Chapter 1: Introduction" (Appx. 7338-7345) describing the MS&Gs should be unsealed, and that the Court should maintain the remainder of the MS&Gs (Appx. 7346–7771) under seal.

B.    Kaleido Health Solutions Security Policy (Appx. 4293-4366)

Defendants also respectfully ask that the Court reconsider unsealing the Kaleido Health Solutions Security Policy, which is a 73-page security policy that appears in a 163-page compilation of "Board of Directors Meeting Agenda and Materials" in Plaintiffs' Appendix.  *See* Appx. 4293-4366.  It is both highly sensitive and irrelevant, and Plaintiffs did not cite or rely upon that document (or any particular information contained therein) to support their claims.

Kaleido Health Solutions, Inc. ("Kaleido") is a non-party that operates an online, software-based platform that supports the healthcare services provided to patients by Planned Parenthood Affiliates.  *See* Appx. 4300–4303.  As such, Kaleido handles personally identifiable information, protected health information, and personally identifiable financial information.  *Id*. The Kaleido Security Policy specifies, at length and in great detail, the security measures that

13

Kaleido follows to secure patients' information against data breaches and unauthorized disclosures, including, among other things, specifics about the infrastructure and system resources that Kaleido uses to secure its systems and information (e.g., Appx. 4301, 4336–4337), the individuals who have access to cryptographic keys (e.g., Appx. 4307), and maps detailing the encryption and key management workflow (e.g., Appx. 4308–4310). Revealing these security details could jeopardize the security of Kaleido's online, software-based platform by enabling third parties to undermine those security features, and thereby potentially harm Kaleido and non-party patients (whose information would be at risk of disclosure if Kaleido's security policy were misused to gain access to their information).

Courts routinely recognize that the risk of a security breach provides compelling reason for maintaining a party's (or in this case, a non-party's) security details under seal, even when such information is directly relevant to litigation (over a data breach, for example)—which is not the case here. *See Frechette v. Health Recovery Servs, Inc*., 2023 WL 2236477, at *3 (S.D. Ohio Feb. 27, 2023) (ordering redaction of letter that detailed corrective security measures defendant put in place after data breach); *Home Depot, Inc. v. Steadfast Ins. Co*., 2022 WL 6764157, at *2 (S.D. Ohio Oct. 11, 2022) ("If this information were made public, it could damage the cybersecurity efforts of Home Depot and VISA. As a result, there is a compelling reason to seal this document" that is "sufficiently compelling as to outweigh the public interest in this document."); *In re Anthem, Inc. Data Breach Litig*., 2017 WL 9614789, at *2 (N.D. Cal. Aug. 25, 2017) (finding "if specific information regarding Anthem's cybersecurity practices were disclosed, this could allow cyberattackers greater opportunity to defeat these defenses and substantially harm both Anthem and putative class members"); *see also Laatz v. Zazzle, Inc*., 2023 WL 4983670, at *2 (N.D. Cal. Aug. 3, 2023) (finding "Zazzle has established compelling

14

reasons to seal information that would reveal its network security information"); *United States ex rel. Markus v. Aerojet Rocketdyne Holdings, Inc*., 2021 WL 4951788, at *2 (E.D. Cal. Oct. 25, 2021) ("Courts have also held that cybersecurity is a compelling reason to seal documents." (collecting cases)); *Music Grp. Macao Com. Offshore Ltd. v. Foote*, 2015 WL 3993147, at *6 (N.D. Cal. June 30, 2015) ("[T]he Court finds a compelling reason to seal the portions of this exhibit that discuss Plaintiff's network infrastructure and security systems.").

Defendants respectfully submit that preserving Kaleido's security systems from cybersecurity attacks provides a compelling reason to seal its Security Policy, particularly when those security details are irrelevant to this litigation.

C.    Documents Disclosing PPFA's Proprietary Accreditation Program

Given that the Unsealing Order did not specifically address the accreditation documents, PPFA also respectfully requests that the Court reconsider unsealing those documents that would publicly disclose the details of PPFA's proprietary and trade secret Accreditation Program, which PPFA developed to help ensure that its member Affiliates provide high-quality health care consistent with the Planned Parenthood brand.

As with the MS&Gs, PPFA submitted a supporting declaration explaining that PPFA's Accreditation Program reflects "decades of work" to identify and compile best practices aimed at ensuring the institutional integrity of the membership and Planned Parenthood brand.  Decl. of Kim Custer ¶ 6, ECF No. 488 at 45.  The PPFA Accreditation Program—and particularly its compilation of Accreditation Indicators and Elements of Performance—essentially provides a checklist for the operation of family planning clinics that would provide a competitor a complete roadmap for running a highly successful health center in competition with Planned Parenthood Affiliates.  For example, the accreditation documents (i) identify the types of governance documents (including specific language or provisions) and policies the healthcare provider

should implement, *see, e.g.*, Appx. 2741–2745; (ii) outline performance metrics for a financially healthy clinic, including ratios of current assets and liabilities and metrics for profit margins, available assets, and expendable reserves, *see, e.g.*, Appx. 2746–2747; and (iii) identify best practices for supporting clinical practices and implementing a risk and quality management program, *see e.g.*, Appx. 2756–2762, among other things.   PPFA accreditation requirements constantly evolve based on PPFA's and the Affiliates' experiences, including "piloting" and testing different initiatives and elements of performance for their accreditation model. *See* Appx. 2744, 2750 (identifying "PILOT" accreditation requirements).   The Accreditation and Evaluation Department Report (at Appx. 2732–2733) specifically describes how the Accreditation and Evaluation Department comprehensively reviews PPFA's Accreditation Indicators and Elements of Performance every two years and proposes pilots for improving PPFA's Accreditation Program which, in some cases, are the "result of several years of PPFA staff, board, PPFA HR legal counsel and affiliate involvement," Appx. 2733 (cleaned up).   In sum, PPFA's Accreditation Indicators and Elements of Performance are a compilation of information that constitutes PPFA's "trade secret" for providing high-quality healthcare that PPFA has developed over decades and adopted as best practices for its brand and membership.   *See, e.g., Takata v. Hartford Comprehensive Employee Ben. Serv. Co.*, 283 F.R.D. 617, 621–22 (E.D. Wash. 2012) (manual containing "technical reference tools" and "best practices" for conducting defendant's business that was the result of "many years of business and 'extensive research'" that defendant actively kept confidential constituted trade-secret information); *see also Mallet & Co. v. Lacavo*, 16 F.4th 364, 386 (3d Cir. 2021) ("Courts have long recognized that a trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a

16

competitive advantage and is a protectable secret." (cleaned up)).

Consistent with the trade-secret nature of that program, PPFA "work[s] diligently to keep the details [of its Accreditation Program] confidential," Decl. of Kim Custer ¶ 6, ECF No. 488 at 46, by, among other things, including a confidentiality stamp on its accreditation documentation that explicitly states: "Information in this document is confidential and proprietary. Distribution is prohibited," *see, e.g.*, Appx. 2741.  Allowing a competitor to take and use this information at no cost (i.e., without incurring any equivalent investment in time and money to develop this roadmap for best practices) from a public court document would harm PPFA by jeopardizing years of time, effort, and money it has expended to compile, test, and develop this unique model for the Planned Parenthood brand.  *See* Decl. of Kim Custer ¶ 6, ECF No. 488 at 46.

Although PPFA is not a franchisor and its member Affiliates are not franchisees, the accreditation model that PPFA has developed as a qualification and metric for its membership is not unlike the franchise requirements that franchisors implement for franchisees in order to preserve and protect their brands—which courts have sealed in recognition of the fact that disclosure would work a competitive harm on the franchise.  *See, e.g., Dickey's Barbeque Pit, Inc. v. Neighbors*, 2015 WL 13466613, at *4 (E.D. Tex. June 5, 2015) (sealing franchise development agreement and operational training information that Dickey's invested time and money developing that, if disclosed, could result in harm to Dickey's and outweighed the public's common-law right of access).

On the other hand, the specific details of PPFA's Accreditation Program are not central to any claim or defense in this litigation.  Plaintiffs cite the accreditation documents only for the undisputed and basic proposition that "PPFA requires the Affiliate Defendants to be 'accredited' through a rigorous appraisal of their policies, practices, and programs to assess compliance with

17

PPFA's standards" and, "[s]ince 2015, PPFA has completed several comprehensive accreditation reviews of each of the Affiliate Defendants."  ECF No. 476 at 77–78; *see also id*. at 11 (stating "The PPFA Affiliate Defendants are all Planned Parenthood entities and members of PPFA, so they are all required to go through PPFA's accreditation process in order to retain those privileges.").

Given the proposition for which the accreditation materials are cited, PPFA does not object to unsealing a number of accreditation-related documents that discuss information *about* the Accreditation Program without disclosing the entire Accreditation Program itself—that is, all the Accreditation Indicators and Elements of Performance that comprise PPFA's trade secret. PPFA does not object to unsealing the PPFA Accreditation Program Overview (Appx. 2727-2729), which states that "[e]ach affiliate of Planned Parenthood Federation of America is accredited through a rigorous appraisal of its polices, practices, and programs" that is "conducted every three years through off-site and on-site reviews."  Appx. 2727.  Nor does PPFA object to unsealing the Accreditation and Evaluation Department Report (Appx. 2730–2740) or the PPGT "Accreditation 2019" Training PowerPoint (Appx. 3906–3928), which provide an overview of the accreditation process and additional particulars without revealing the entire Accreditation Program.  Likewise, the Court may unseal the "Planned Parenthood of Greater Texas Accreditation Review," which reflects PPFA's review of an Affiliate Defendant but only generically identifies the 20 accreditation categories and isolated items for corrective action.  *See* Appx. 3886–3903.  PPFA also does not object to unsealing the PPFA Accreditation and Evaluation Department (AED) Required Documents Guide for Accreditation Reviews (Appx. 3929–3937), which outlines the documentation that Affiliates are required to submit or have available during the accreditation review, and the PPFA Accreditation Interview Guide (Appx.

3939–3964), which addresses the types of questions Affiliates should be prepared to address during the accreditation process.

PPFA only asks that the following accreditation documentation—namely, the actual accreditation report templates and completed reports—should be sealed because unsealing those documents would result in a complete disclosure of the entire Accreditation Program by providing the minute details of *all* the Accreditation Indicators and Elements of Performance that PPFA has developed, compiled, and refined over the years.

| Appx. Pages | Document Title |
|---|---|
| 2741-2776 | PPFA 2015 Accreditation Indicators and Elements of Performance |
| 2777-2827 | PPFA 2017 Accreditation Indicators and Elements of Performance |
| 2828-2878 | PPFA 2018 Accreditation Indicators and Elements of Performance |
| 2879-3027 | PPFA 2022 Accreditation & Evaluation Dept. Accreditation Form |
| 3028-3111 | 2017 PPGC Accreditation Report |
| 3112-3151 | 2019 PPGT Accreditation Report |
| 3152-3210 | 2015 PPGT Accreditation Report |
| 3211-3289 | 2012 PPGC Accreditation Report |
| 3290-3353 | 2021 PPGC Final Accreditation Report |
| 3358-3370 | 2012 PPST Evidence of Standard Compliance Report |
| 3370-3445 | 2012 PPST Affiliate Accreditation Report |
| 3449-3511 | 2016 PPST Final Accreditation Report |
| 3513-3545 | 2016 PPST Corrective Action Report |
| 3548-3582 | 2016 PPST Corrective Action Report |
| 3607-3661 | 2019 PPST Accreditation Report |
| 3662-3737 | 2012 PPST Accreditation Report |
| 3738-3792 | 2019 PPST Accreditation Report |
| 3799-3856 | 2015 PPGT Accreditation Report |
| 3862-3870 | 2015 PPGT Corrective Action Report |
| 3876-3884 | 2016 PPGT Corrective Action Report |
| 3970-4010 | 2019 PPGT Final Accreditation Report |

Alternatively, PPFA submits that the foregoing documents could be unsealed subject to redacting the detailed information under each accreditation category as illustrated below.[8]




Appx. 3028 & Appx. 2741.

Again, if Plaintiffs had cited, quoted, or referred to any particular portion of those accreditation documents, PPFA may have been amenable to unsealing excerpts, consistent with what courts have done in the franchise context, because disclosure of an excerpt would not be a complete disclosure of PPFA's proprietary business model. *See, e.g., Cram v. Burger King Corp.*, 2019 WL 4095570, at *2 n.4 (D.N.H. Aug. 29, 2019) (noting court denied motion to seal copy of franchise agreement to the extent portions were quoted and referred to in public documents but otherwise sealing the remainder). But Plaintiffs did not do so, and full disclosure would effectively deprive PPFA of the competitive benefits of a proprietary Accreditation Program that it has spent *years* developing and protecting from disclosure. *See* Decl. of Kim Custer ¶ 6, ECF No. 488 at 45.

---

[8] Defendants are willing to undertake these redactions and provide redacted copies to Plaintiffs for this purpose.

PPFA therefore respectfully asks that the Court consider adopting the foregoing proposal as one narrowly tailored to prevent full disclosure of PPFA's Accreditation Program while allowing public access to several other accreditation-related documents (that PPFA does not object to unsealing) that more directly relate to the general and undisputed proposition for which Plaintiffs cite the accreditation documents.

### D.    Medicaid Reimbursement Toolkit (Appx. 4998-5009 & Appx. 6623–6634)

Finally, PPFA asks that the Court reconsider unsealing PPFA's Medicaid Reimbursement Toolkit in full and instead permit redaction of 12 pages (Appx. 4998-5009 and Appx. 6623–6634)[9] that disclose PPFA's compilation of confidential and proprietary information for understanding and negotiating Medicaid reimbursement rates with state governments (as well as "lessons learned") that was developed based on "the know-how and experience of Planned Parenthood Affiliates . . . [that] is not shared publicly." *See* Decl. of Kim Custer at 9, ECF No. 510-5 at 9; *see also* Opp. to Mot. Unseal, ECF No. 510 at 17 (explaining how "PPFA and its affiliates have collaborated on and developed" this information "through considerable time, effort (including their collective research and experience) and expense").   It is the type of information that, if disclosed, would provide competitors an advantage by supplying to them guidelines for negotiating Medicaid reimbursements without having to undertake the same work (or lessons learned) that PPFA and its Affiliates undertook to create the Toolkit—which PPFA also specifically created and provides as a membership benefit for Affiliates. *See* Decl. of Kim Custer at 9, ECF No. 510-5 at 9 ("PPFA has spent years and significant resources developing this Toolkit, and PPFA has worked diligently to maintain the confidentiality of this valuable resources, which is available only to its members.").   To allow others to obtain the same

---

[9] The Medicaid Reimbursement Toolkit appears twice in Plaintiffs' summary judgment appendices.

information not only undermines the work that PPFA invested to create the Toolkit, but also undermines the value of the PPFA membership model if a non-member can obtain the same information for free from the court's docket (much in the same way that posting literature created by a subscription-based service would undermine the value of the subscription service if non-subscribers could obtain the same literature at no cost from the court's docket).  *See* Decl. of Kim Custer at 9, ECF No. 510-5 at 9; *see also* ECF No. 510 at 17–18 (citing *Planned Parenthood of Wisc., Inc. v. Van Hollen*, 94 F. Supp. 3d 949, 960 (W.D. Wis. 2015) (sealing Planned Parenthood manuals that contained "proprietary and sensitive business information" constituting trade secrets); *Last v. M-I, L.L.C.*, 2022 WL 105107, at *1–2 (E.D. Cal. Jan. 11, 2020) (sealing training manual that defendant developed over a number of years, treated as confidential and proprietary and, if disclosed, would disadvantage the defendant by granting competitors the benefits of the guide without incurring the expense of developing their own materials)).

Plaintiffs only cited the Toolkit for the proposition that "PPFA's HCIP Team publishes a 'Medicaid Toolkit' that advises best practices on billing," ECF No. 476 at 85; the "Healthcare Division also has a Business Operations team which assists Affiliates with their revenue cycle, among other things, which includes Medicaid billing," ECF No. 476 at 9; and "PPFA employs a large team of experts just to help Affiliates maximize their Medicaid revenue," ECF No. 495 at 34.  In other words, Plaintiffs principally cite the Toolkit to note its existence and do not point to any specific information in the sections that PPFA seeks to redact—which address negotiating and understanding Medicaid reimbursement rates and "lessons learned"—as germane to the resolution of any issue in this case.

Accordingly, PPFA submits that unsealing the first half of the Toolkit, while redacting

the remainder, balances PPFA's interest in non-disclosure against the interest in public access, by permitting public access to those portions that do not implicate PPFA's confidential and proprietary material but reflect the existence of the Toolkit and summarize its contents (vis-à-vis the unsealed table of contents).

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant this Motion for Clarification and Partial Reconsideration of the Unsealing Order.

**REQUEST FOR STAY IF DENIED**

To the extent the Court is not inclined to grant the requested clarification and/or partial reconsideration of its Unsealing Order, Defendants respectfully request that the Court continue to maintain the Appendices and Plaintiffs' summary judgment reply brief under seal until the expiration of Defendants' time to seek an appeal. *See* Fed. R. App. P. 4(a)(1)(A) (notice of appeal to be filed "within 30 days after entry of the judgment or order appealed from"), 4(a)(3).

Dated: September 1, 2023                Respectfully Submitted,


                                        O'MELVENY & MYERS LLP

                                        /s/ *Danny S. Ashby*
                                        DANNY S. ASHBY
                                        Texas Bar No. 01370960
                                        dashby@omm.com
                                        MEGAN R. WHISLER
                                        Texas Bar No. 24079565
                                        mwhisler@omm.com
                                        2501 N. Harwood Street, Suite 1700
                                        Dallas, Texas 75201
                                        T: (972) 360-1900
                                        F: (972) 360-1901

                                        LEAH GODESKY (pro hac vice)

23

lgodesky@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
T: (310) 553-6700
F: (310) 246-6779

ANTON METLITSKY (pro hac vice)
ametlitksy@omm.com
7 Times Square
New York, New York 10036
T: (212) 326-2000
F: (212) 326-2061

RYAN BROWN ATTORNEY AT LAW
Ryan Patrick Brown
Texas Bar No. 24073967
ryan@ryanbrownattorneyatlaw.com
1222 S. Fillmore St.
Amarillo, Texas 79101
T: (806) 372-5711
F: (806) 350-7716

*Attorneys for Defendant Planned Parenthood
Federation of America, Inc.*

ARNOLD & PORTER KAYE SCHOLER LLP

/s/ *Tirzah S. Lollar*
Craig D. Margolis
Craig.Margolis@arnoldporter.com
Tirzah S. Lollar
Tirzah.Lollar@arnoldporter.com
Christian Sheehan
Christian.Sheehan@arnoldporter.com
Jayce Born
Jayce.Born@arnoldporter.com
Emily Reeder-Ricchetti
Emily.Reeder-Ricchetti@arnoldporter.com
Megan Pieper
Megan.Pieper@arnoldporter.com
Alyssa Gerstner
Alyssa.Gerstner@arnoldporter.com
Meghan C. Martin
Meghan.Martin@arnoldporter.com
601 Massachusetts Ave, NW

24

Washington, DC 20001-3743
Telephone: +1 202.942.5000
Fax: +1 202.942.5999

Christopher M. Odell
Texas State Bar No. 24037205
Christopher.Odell@arnoldporter.com
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: +1 713.576.2400
Fax: +1 713.576.2499

Paula Ramer
250 West 55th Street
New York, New York 10019-9710
T: +1 212.836.8474
Paula.Ramer@arnoldporter.com

RYAN BROWN ATTORNEY AT
LAW
Ryan Patrick Brown
Texas Bar No. 24073967
ryan@ryanbrownattorneyatlaw.com
1222 S. Fillmore St.
Amarillo, Texas 79101
T: (806) 372-5711
F: (806) 350-7716

*Attorneys for Defendants Planned Parenthood
Gulf Coast, Inc., Planned Parenthood of Greater
Texas, Inc., Planned Parenthood of South Texas,
Inc., Planned Parenthood Cameron County, Inc.,
and Planned Parenthood San Antonio, Inc.*

25

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 1, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all participating counsel of record.

*/s/ Danny S. Ashby*

**<u>CERTIFICATE OF CONFERENCE</u>**

On September 1, 2023, I emailed counsel for Plaintiffs, noting that it was Defendants' understanding that Plaintiffs were opposed to the relief requested in this motion based on previous discussions and related filings, and that Defendants would inform the Court accordingly unless Plaintiffs' counsel informed Defendants otherwise by 5pm Central Time. Having received no response from counsel for Plaintiffs by the stated time, Defendants hereby inform the Court that Plaintiffs are opposed to the relief requested in the motion.

*/s/  Danny S. Ashby*