# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# AMARILLO DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ALEX DOE, Relator, | § § § | |
| THE STATES OF TEXAS, *ex rel.* ALEX DOE, Relator, | § § § | |
| THE STATE OF LOUISIANA, *ex rel.* ALEX DOE, Relator, | § § § | Civil Action No. 2-21-CV-022-Z |
| Plaintiffs, | § § | |
| v. | § § | |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., PLANNED PARENTHOOD GULF COAST, INC., PLANNED PARENTHOOD OF GREATER TEXAS, INC., PLANNED PARENTHOOD SOUTH TEXAS, INC., PLANNED PARENTHOOD CAMERON COUNTY, INC., PLANNED PARENTHOOD SAN ANTONIO, INC., | § § § § § § § § § § § § | |
| Defendants. | § | |

## STATE OF TEXAS'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF CONTENTS

Table of Authorities ............................................................................................ iii

I.   Introduction ................................................................................................ 1

II.  Standard of Review .................................................................................... 3

III. Argument .................................................................................................... 4

    A.   The Defendants' Motion Should be Denied as Untimely. ...................... 4

    B.   Defendants' Theory Hinges on a Non-Dispositive Case. ........................ 5

    C.   The Texas Supreme Court Permits Private Rights of Action
        in Penalty Statutes ................................................................................... 8

    D.   *Qui Tam* Statutes Do Not Violate the Principle of Separation
        of Powers in Texas .................................................................................. 9

    E.   The TMFPA Specifically Does Not Run Afoul of the
        Texas Constitution ................................................................................ 12

IV.  Conclusion ................................................................................................ 19

# TABLE OF AUTHORITIES

## CASES

*Am. Liberty Pipe Line Co. v. Agey*, 167 S.W.2d 580
(Tex. App.—Austin 1942) ....................................................................... Passim

*Agey v. Am. Liberty Pipe Line Co.*, 172 S.W.2d 972 (Tex.1943) ................. Passim

*Bickham v. Dallas Co.*, 612 S.W.3d 663 (Tex. App.–Dallas 2020, pet. denied) ... 9

*Bittakis v. City of El Paso*, 480 F. Supp. 2d 895 (W.D. Tex. 2007) ...................... 8

*Brady v. Brooks*, 89 S.W. 1052 (Tex. 1905) ........................................................... 9

*Brown v. De La Cruz*, 156 S.W.3d 560 (Tex. 2004) ................................... Passim

*Burkett v. City of El Paso*, 513 F. Supp. 2d 800 (W.D. Tex. 2007) ...................... 8

*Camp v. Gulf Prod. Co.*, 61 S.W.2d 773 (Tex. 1933) ................................... 10, 11

*City of Houston v. Houston Pro. Fire Fighters' Ass'n, Loc. 341*,
664 S.W.3d 790 (Tex. 2023) ................................................................................ 3

*EBS Sols., Inc. v. Hegar*, 601 S.W.3d 744 (Tex. 2020) ......................................... 3

*El Paso Elec. Co. v. Tex. Dep't of Ins.*, 937 S.W.2d 432 (Tex. 1996) .................. 10

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
313 F.3d 305 (5th Cir. 2002) ............................................................................... 3

*Johnson v. Johnson*, 385 F.3d 503 (5th Cir. 2004) ............................................... 3

*Koy v. Schneider*, 221 S.W. 880 (Tex. 1920) ........................................................ 3

*Maud v. Terrell*, 200 S.W. 375 (Tex. 1918) ....................................... 5, 9, 10, 11

*Nazari v. State*, 497 S.W.3d 169 (Tex. App.—Austin 2016), *aff'd*,
561 S.W.3d 495 (Tex. 2018) ................................................................................ 2

*Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749 (5th Cir. 2001)................. 15, 18

*S&W Enterprises L.L.C. v. SouthTrust Bank of Alabama,*
   315 F.3d 533, 535 (5th Cir. 2003) ............................................................... 4

*Sankaran v. VFS Services (USA) Inc.*, 2023 WL 5543308
   (Tex. App.—Houston [14th Dist.] August 29, 2023, no pet. h.) ............... 9

*Scribner v. Treger*, No. 02-21-00277-CV, 2022 WL 714654
   (Tex. App.—Fort Worth Mar. 10, 2022, no pet.)...................................... 9

*Staples v. State*, 245 S.W. 639 (Tex. 1922)......................................... 5, 9, 10, 11

*State v. Moore*, 57 Tex. 307 (1882).................................................................. 5, 9

*Swift v. United States*, 318 F.3d 250 (D.C. Cir. 2003)...................................... 17

*United States, ex rel. Polansky v. Executive Health Res., Inc.*,
   599 U.S. 419 (2023)............................................................................Passim

*United States ex rel. Tex. v. Planned Parenthood Gulf Coast*, No. 9-09-CV-124,
   2012 WL 13036270 (E.D. Tex. Aug. 10, 2012)............................................. 2

*United States v. SavaSeniorcare LLC*, No. 3:18-CV-01202, 2021 WL 1663579
   (M.D. Tenn. Apr. 28, 2021) ....................................................................... 19

*United States v. UCB, Inc.*, 970 F.3d 835 (7th Cir. 2020) ................................ 19

*In re Xerox Corp.*, 555 S.W.3d 518 (Tex. 2018) ........................................... 2, 19

**STATUTES**

Texas Const. art. IV, § 22 ................................................................................ 9

Texas Const. art. V, § 21 ................................................................................. 9

Tex. Hum. Res. Code. Ch. 36 .......................................................................... 1

Tex. Hum. Res. Code § 36.101.................................................................. 2, 7, 8

Tex. Hum. Res. Code § 36.102...................................................................... 13, 16

Tex. Hum. Res. Code § 36.103........................................................................... 13

Tex. Hum. Res. Code § 36.104.................................................................... Passim

Tex. Hum. Res. Code § 36.107.................................................................... Passim

Tex. Hum. Res. Code § 36.108........................................................................... 16

Tex. Hum. Res. Code § 36.109...................................................................... 14, 16

31 U.S.C. § 3730 ........................................................................................... 14, 17

The State of Texas, by and through the Attorney General of Texas, Ken Paxton, files this Response in Opposition to Defendants' Motion for Judgment on the Pleadings ("Response"). For the reasons set forth in this Response, the State asks this Court to deny Defendants' Motion.

## I. INTRODUCTION

Relying almost exclusively on a single Texas appellate decision—whose reasoning was not adopted on review by the Texas Supreme Court—Defendants seek the extraordinary measure of upending decades of civil Medicaid fraud enforcement in Texas by asking the Court to declare the Texas Medicaid Fraud Prevention Act ("TMFPA")[1] unconstitutional.[2] Contrary to Defendants' incorrect assertions, the constitutionality of the TMFPA is not an open question. In 2004, the Texas Supreme Court affirmed the validity of *qui tam* statutes, holding that:

> [T]his is a penal statute that would in many instances impose a fine far beyond the damages that a purchaser is likely to suffer. As we held long ago in *Agey*, the ***Legislature may grant private standing to bring such actions***, but it must do so clearly.

---

[1] Tex. Hum. Res. Code Ch. 36. As amended on September 1, 2023, the Texas Medicaid Fraud Prevention Act is now known as the Texas Health Care Program Fraud Prevention Act.

[2] Despite leading their Motion with reference to dicta from a single Supreme Court Justice's dissent, Defendants do not appear to challenge the TMFPA as unconstitutional under the U.S. Constitution.

*Brown v. De La Cruz*, 156 S.W.3d 560, 566 (Tex. 2004) (citing *Agey v. Am. Liberty Pipe Line Co.*, 172 S.W.2d 972, 974 (Tex. 1943)) (emphasis added).[3] The TMFPA is an example of a civil penalty statute clearly granting a private right of action to a relator. *See* Tex. Hum. Res. Code § 36.101 ("ACTION BY PRIVATE PERSON AUTHORIZED"); *In re Xerox Corp.*, 555 S.W.3d 518, 526-27 (Tex. 2018) (describing TMFPA civil remedies as penalties). Accordingly, Defendants' constitutional challenge to the TMFPA is foreclosed by the Texas Supreme Court and should be rejected at the outset.

Independent of the clear mandate of the Texas Supreme Court in *Brown*, the TMFPA does not run afoul of the Texas Constitution's separation of powers. In pursuing TMFPA cases, the Office of the Attorney General retains full prosecutorial discretion, and the TMFPA does not impermissibly restrict the State's control over actions filed under the *qui tam* provision. Defendants fail to carry their heavy burden of showing that the TMFPA is unconstitutional, and their Motion for Judgment on the Pleadings should be denied.

---

[3] *Brown* involved a Texas Property Code statute described by the Court as "penal" because it provided for penalties, not because it was criminal. *See Brown*, 156 S.W.3d at 562, 566. While not itself a TMFPA case, *Brown* has been cited as authority on other issues besides the Texas Constitution in two TMFPA cases: *Nazari v. State*, 497 S.W.3d 169, 180 (Tex. App.—Austin 2016), *aff'd*, 561 S.W.3d 495 (Tex. 2018); and *United States ex rel. Tex. v. Planned Parenthood Gulf Coast*, No. 9-09-CV-124, 2012 WL 13036270, at *3 (E.D. Tex. Aug. 10, 2012). Both cites are for the holding that penalties are generally "not payable to a private litigant." *See Nazari*, 497 S.W.3d at 180; *U.S. ex. rel. Tex.*, 2012 WL 13036270, at *3.

## II.  STANDARD OF REVIEW

"The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002)). In examining a 12(c) motion, the court should "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Id.* "The motion to dismiss should not be granted unless the plaintiff would not be entitled to relief under any set of facts that he could prove consistent with the complaint." *Id.*

To find for Defendants on this Motion, the Court would need to determine that the TMFPA is unconstitutional—an extremely high bar in Texas. *See Koy v. Schneider*, 221 S.W. 880, 888 (Tex. 1920) ("Every intendment and presumption being in favor of the constitutionality of a statute, it should not be held invalid unless its unconstitutionality be made to appear beyond any reasonable doubt."); *City of Houston v. Houston Pro. Fire Fighters' Ass'n, Loc. 341*, 664 S.W.3d 790, 798 (Tex. 2023) ("In evaluating whether a statute is constitutionally infirm, we presume at the outset that it is constitutional. A party challenging a statute as unconstitutional bears a heavy burden to overcome this presumption."); *EBS Sols., Inc. v. Hegar*, 601 S.W.3d 744, 754 (Tex. 2020) ("In line with this presumption, if a statute is

susceptible to two interpretations—one constitutional and the other unconstitutional—then the constitutional interpretation will prevail.").

## III. ARGUMENT

**A.    The Defendants' Motion Should be Denied as Untimely.**

As an initial matter, Defendants' Motion should be denied as untimely. Defendants' Motion is a dispositive motion, which was required by this Court's Scheduling Order (Dkt. 346) to be submitted no later than January 6, 2023. Rather than make such a timely filing, Defendants submitted this Motion nearly nine months after the deadline, on September 1, 2023. Under Federal Rules of Civil Procedure 16(b)(4), a scheduling order "may be modified only for good cause and with the judge's consent." This good cause standard requires the "party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 535 (5th Cir. 2003) (citing 6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990)).

Defendants make no argument for how they satisfy the good cause standard for modifying this Court's Scheduling Order under Rule 16(b)(4). Instead, Defendants offer only a vague reference to the dissent in *Polansky* as explanation for their delay. However, even if *Polansky* provided good cause for such a delay, it is

irrelevant to the question of whether the TMFPA is unconstitutional under the Texas Constitution. The Texas case that Defendants cite as a primary authority in their Motion, *Am. Liberty Pipe Line Co. v. Agey*, 167 S.W.2d 580, 583 (Tex. App.—Austin 1942), *aff'd on other grounds*, 172 S.W.2d 972 (Tex. 1943), is over 80 years old. Many of the other Texas cases they rely on to support their argument are even older. *See, e.g., State v. Moore*, 57 Tex. 307 (1882), *Maud v. Terrell*, 200 S.W. 375 (Tex. 1918), and *Staples v. State*, 245 S.W. 639 (Tex. 1922). Given the age of these Texas cases, Defendants could have easily made their argument with respect to the TMFPA and the Texas Constitution prior to January 6, 2023.

Because Defendants failed to submit their Motion prior to the stated deadline and offer no argument for this failure, their Motion should be summarily denied

## B.  Defendants' Theory Hinges on a Non-Dispositive Case.

In their Motion, Defendants boldly proclaim that "*Agey* is dispositive here." Dkt. #534 at 11. Defendants are wrong. First, as referenced by Defendants, "*Agey*" in this context refers to the decision of the Court of Appeals, which was superseded by the Texas Supreme Court the following year. *See Am. Liberty Pipe Line Co. v. Agey*, 167 S.W.2d 580 (Tex. App.—Austin 1942), *aff'd on other grounds*, 172 S.W.2d 972

(Tex. 1943).[4] Importantly, the Texas Supreme Court explicitly declined to adopt the basis for the appellate decision, noting: "it is not necessary for this Court to here decide whether the Legislature was prohibited by the Constitution from permitting such suit to be filed without joinder of the Attorney General, or some county or district attorney, and we express no opinion upon that question." *Agey v. Am. Liberty Pipe Line Co.*, 172 S.W.2d 972, 974 (Tex. 1943). Thus, *Agey (Tex. App.—Austin 1942)* provides no precedent, binding or otherwise, that is helpful for this case.

Additionally, the statute at issue in *Agey* is distinguishable from the TMFPA, as the *Agey* statute was not a *qui tam* statute and had no private right of action. *See Agey (Tex. 1943)*[5], 172 S.W.2d at 974 ("If the Legislature had intended by this Act to authorize an individual to file a suit on behalf of himself and on behalf of the State, without the joinder of the Attorney General or some district or county attorney, it could have expressed such intention in clear language. This it did not do."). This

---

[4] Defendants' failure to properly cite *Agey* as "*aff'd on other grounds*" is inaccurate. Defendants' "*aff'd*" notation leaves the false impression that the Texas Supreme Court adopted the lower court's reasoning, which it did not. Six pages later, Defendants note that the Texas Supreme Court declined to adopt the Appeals Court *Agey* holding that Defendants assert is "dispositive." Dkt. #534 at 10 n.6.

[5] For clarity, in this Response, the Court of Appeals *Agey* opinion, *Am. Liberty Pipe Line Co. v. Agey*, 167 S.W.2d 580, 583 (Tex. App.—Austin 1942), *aff'd on other grounds*, 172 S.W.2d 972 (Tex. 1943), will be cited as "*Agey* (Tex. App.—Austin 1942)"; by contrast the Texas Supreme Court *Agey* opinion, *Am. Liberty Pipe Line Co. v. Agey*, 172 S.W.2d 972 (Tex. 1943), will be cited as "*Agey* (Tex. 1943)."

provides important context for the Texas Supreme Court's language in *Agey* (Tex. 1943), cited by Defendants,[6] that "it is incumbent upon [the Attorney General] to institute in the proper courts proceedings to enforce or protect any right of the public that is violated,"[7] as this necessity arose ***precisely because Agey*** (Tex. 1943) did not involve a statute with a private right of action.

The TMFPA, on the other hand, clearly contains a *qui tam* provision. *See* Tex. Hum. Res. Code § 36.101 ("ACTION BY PRIVATE PERSON AUTHORIZED. (a) A person may bring a civil action for a violation of Section 36.002 for the person and for the state. The action shall be brought in the name of the person and of the state."). Based on this clear *qui tam* language, the TMFPA satisfies the Texas Supreme Court's holding in *Agey* (Tex. 1943).

Therefore, not only is *Agey* (Tex. App.—Austin 1942) not dispositive, but the subsequent *Agey* (Tex. 1943) opinion supports the validity of the TMFPA as a *qui tam* statute.

---

[6] Dkt. #534 at 10 n. 6.

[7] *Agey* (Tex. 1943), 172 S.W.2d at 974.

**C.      The Texas Supreme Court Permits Private Rights of Action in Penalty Statutes.**

Repudiating the basis for Defendants' Motion, the Texas Supreme Court in 2004 wrote: "As we held long ago in *Agey*, the Legislature may grant private standing to bring such actions, but it must do so clearly." *Brown v. De La Cruz*, 156 S.W.3d 560, 566 (Tex. 2004) (citing *Agey* (Tex. 1943), 172 S.W.2d at 974). The Texas Supreme Court in *Brown* plainly permits *qui tam* provisions in penalty statutes, where such private rights of action are clearly articulated. As noted above, the TMFPA is an example of a statute providing for the recovery of penalties with a clear grant of standing for private whistleblowers to bring suit, either with or without the State's participation. *See* Tex. Hum. Res. Code §§ 36.101, 36.104, 36.052(a)(3). The *Brown* holding affirms the legitimacy of the TMFPA as a *qui tam* statute.

Further, the holding in *Brown*—which directly contradicts Defendants' interpretation of *Agey* (Tex. App.—Austin 1942)—has been cited repeatedly by both Texas and federal courts for the proposition that the legislature can grant standing for individuals to pursue actions for violations of a statute. *See e.g.*, *Burkett v. City of El Paso*, 513 F. Supp. 2d 800, 824-825 (W.D. Tex. 2007) (finding that "Plaintiff has failed to state a claim for a violation of a state constitutional or statutory right. *See Brown*[,] 156 S.W.3d [at] 567 (holding if the legislature grants private standing to bring an action for violation of a statute, it must clearly do so.)"); *Bittakis v. City of*

8

*El Paso*, 480 F. Supp. 2d 895, 922-923 (W.D. Tex. 2007) (citing *Brown*); *Bickham v. Dallas Co.*, 612 S.W.3d 663, 670 (Tex. App.—Dallas 2020, pet. denied) (citing *Brown*); *Sankaran v. VFS Services (USA) Inc.*, 2023 WL 5543308, at *4 (Tex. App.—Houston [14th Dist.] August 29, 2023, no pet. h.) (citing *Brown*); *Scribner v. Treger*, No. 02-21-00277-CV, 2022 WL 714654, at *10 (Tex. App.—Fort Worth Mar. 10, 2022, no pet.) (citing *Brown*).

## D.  *Qui Tam* Statutes Do Not Violate the Principle of Separation of Powers in Texas.

Separate and apart from the *Brown* decision, an independent analysis of the TMFPA statutory scheme shows that it does not violate separation of powers under the Texas Constitution.

Defendants wrongly assert that "*Moore*, *Maud*, and *Staples*, . . . together strongly suggest" that the TMFPA's *qui tam* provisions are unconstitutional. Dkt. #534 at 10 n. 6. Rather, *Maud, Staples*, and many other Texas cases support the constitutionality of the TMFPA.[8] For instance, *Maud v. Terrell*, 200 S.W. 375, 376

---

[8] *State v. Moore*, 57 Tex. 307 (1882), *overruled by Brady v. Brooks*, 89 S.W. 1052 (Tex. 1905), involved a statute that gave the Attorney General power to bring suits that were the County Attorneys' duty to file. *Moore* was overruled by *Brady v. Brooks* in 1905. *See* 89 S.W. 1052, 375-376. Even if *Moore* was not overruled, *Moore* is distinguishable since the issue there involved direct conflict between two branches of State government—the powers of County Attorneys (in the Judicial Branch) versus the powers of the Attorney General (representing the Executive Branch). *Moore*, 57 Tex. at 314–15. No such separation of powers issue between the Attorney General and County Attorneys exists with the TMFPA. *Moore* is therefore inapposite for this Motion.

(Tex. 1918) supports the constitutionality and validity of the TMFPA. *Maud* involved a statute authorizing the Texas Comptroller to appoint private individuals to collect inheritance taxes. *Id.* at 375-376. The *Maud* Court held that the statute at issue was constitutional and valid. *Id.* at 377-378. After reviewing the statute, the Court found that it—similar to the TMFPA—empowered the appointed person, among other things, to: "sue for and collect" inheritance taxes; "aid in every possible way in the collection of such taxes[;]" and "represent the State . . . to enforce the collection" of inheritance taxes. *Id.* at 377. The Court found that since "[t]hese provisions do not unequivocally supplant the county attorneys and the Attorney-General in their authority to prosecute the suits of the State for the recovery of the taxes" therefore the statute is constitutional, and "cannot be pronounced invalid." *Id.* at 377-378; *see also El Paso Elec. Co. v. Tex. Dep't of Ins.*, 937 S.W.2d 432, 439 (Tex. 1996) (citing *Maud*); *Camp v. Gulf Prod. Co.*, 61 S.W.2d 773, 777-778 (Tex. 1933) (citing *Maud*). The Texas Supreme Court in *Maud* therefore sets a demanding standard for a statute to violate separation of powers: that the legislation must "unequivocally supplant" the authority of the Attorney General. The TMFPA does no such thing.

At issue in *Staples v. State*, 245 S.W. 639 (Tex. 1922), was a *quo warranto* suit brought by individuals both "in the name of the state of Texas" and "in their own

names" under a statute attempting to prevent the placement of a Senate candidate's name on a ballot for a general election, which was challenged as being unconstitutional for infringing on the exclusive authority of the County Attorneys, District Attorneys, and the Attorney General. *Id.* at 639-40. Citing *Maud* extensively, the *Staples* court found that although the individuals in question did not have the "legal capacity or right to institute and maintain" their suit, the statute itself was "not in violation of section 21, art. 5, and section 22, art. 4, of the [Texas] Constitution." *Id.* at 643.

The Texas Supreme Court in 1933 cited *Maud* and *Staples* together to uphold a statute authorizing an individual to bring suit on behalf of the state. *Camp*, 61 S.W.2d at 777. The *Camp* Court held that under the holdings in *Maud* and *Staples*, "an act will not be held unconstitutional" under Texas Const. Section 22, Art. 4, and Section 21, Art. 5, "unless it, by plain and unambiguous language, deprives the county and district attorneys and the Attorney General of their authority to represent the state in the suits prosecuted under such act." *Id.* The TMFPA does no such thing.

As shown below, the TMFPA does not deprive the Attorney General of the authority to represent the State in any TMFPA case, including cases initiated by *qui tam* relators, and therefore, is constitutional.

11

**E.      The TMFPA Specifically Does Not Run Afoul of the Texas Constitution.**

In support of their Motion, Defendants list three ways in which they allege the TMFPA encroaches upon the Executive Branch's constitutional duties: 1) "relators can initiate lawsuits at any time in any place and on any subject without the State's input or approval;" 2) "the TMFPA curtails the State's control over relator-initiated TMFPA litigation even if the government chooses to intervene, and substantially more so if it declines to intervene;" and 3) "the TMFPA impermissibly limits the State's ability to dismiss or settle a TMFPA action over a relator's objection."[9] As explained below, Defendants' arguments largely misstate the State's authority under the TMFPA. Moreover, none of these arguments reaches anywhere near the high bar needed to overcome the TMFPA's presumption of constitutionality. Accordingly, and consistent with the Texas Supreme Court in *Brown*, Defendants' constitutional challenge to the TMFPA should be rejected.

First, the manner in which the TMFPA authorizes a relator's lawsuit to be initiated does not impermissibly strip the State of its prosecutorial discretion. As Defendants acknowledge in their Motion, relator-initiated cases are filed under seal, during which time the State may investigate the allegations to determine whether to

---

[9] Dkt. #534 at 11.

12

intervene, to decline, or to dismiss the action altogether.[10] *See* Tex. Hum. Res. Code §§ 36.102, 36.103, 36.104.[11] This is the State exercising prosecutorial discretion. That the State may choose to expend resources during the investigation to make an informed decision about intervention has no bearing on constitutionality, and Defendants cite no authority suggesting otherwise.

The bottom line is that the State has complete discretion to proceed only with the TMFPA cases that it chooses. For example, if the State deems a TMFPA case unmeritorious, the State can dismiss the relator's case even over the objections of the relator. *See* Tex. Hum. Res. Code § 36.107(b). Indeed, the government's power to dismiss and settle a *qui tam* action over the objection of the person who brought it was recently described by an 8-1 majority of the Supreme Court as being "uncommon, even extraordinary." *See United States, ex rel. Polansky v. Executive*

---

[10] Defendants in their Motion incorrectly assert that "[t]his investigation period requires the investment of substantial time and resources." Dkt. #534 at 13. Nothing in the TMFPA mandates the State spend a "substantial" amount of time or resources to investigate a relator's *qui tam* claims, and the State, at its discretion, may determine the appropriate time and resources to expend in each case.

[11] Additionally, upon intervention the State has "primary responsibility for prosecuting the action," including the ability to amend the petition. *See* Tex. Hum. Res. Code § 36.107(a). Thus, if the State elects to intervene and proceed with the case, the State has full control over the scope of its allegations. Defendants' claim that "the State has no say in … the scope of its allegations" is flatly wrong. Dkt. #534 at 12.

*Health Res., Inc.*, 599 U.S. 419, 430 (2023).[12] Defendants acknowledge the State's power to unilaterally dismiss a case but fail to explain how intervening to dismiss or settle an action amounts to the State being forced to ***prosecute*** the case.[13] To the contrary, when the State intervenes to dispose of a TMFPA case that is a far cry from usurping the State's executive decision-making. As such, the TMFPA does not erode the State's prosecutorial discretion.

Second, the TMFPA does not impermissibly curtail the State's control over a relator-initiated action. If the State exercises its right to intervene in a relator-initiated TMFPA action, the TMFPA dictates that "the state has **the primary responsibility** for prosecuting the action and **is not bound by an act of the person bringing the action**." Tex. Hum. Res. Code § 36.107(a) (emphasis added). As discussed above, this gives the State full control over the case at that point.[14] That

---

[12] While the *Polansky* opinion relates to the Federal False Claims Act ("FCA") which is different from the TMFPA in many ways, certain procedural aspects of the FCA closely mirror the TMFPA, including the government's ability to dismiss a lawsuit notwithstanding the objections of the relator. *Compare* 31 U.S.C. § 3730(c)(2)(A) *with* Tex. Hum. Res. Code § 36.107(b).

[13] Additionally, the TMFPA accounts for the situation proposed by Defendants where the State seeks an alternate or administrative remedy, rather than proceeding with litigation under the TMFPA. *See* Tex. Hum. Res. Code § 36.109 ("PURSUIT OF ALTERNATE REMEDY BY STATE").

[14] This opinion is further bolstered by Tex. Hum. Res. Code § 36.104(a), which provides two options for the State at the conclusion of its under seal investigation: 1) intervention, where the State "proceed[s] with the action," and 2) "declin[ing] to take over the action." Thus, the language of 2) suggests that when the State intervenes, it is "tak[ing] over the action." *See also*

the relator may conduct its own discovery (subject to Tex. Hum. Res. Code § 36.107(d)) does not limit the rights of the State as the entity with **primary responsibility** for prosecuting the case, and Defendants cite no authority to the contrary. Indeed, the Fifth Circuit was correct when it described the similarly broad authority of the government in prosecuting actions under the FCA:[15]

> [T]he powers of a *qui tam* relator to interfere in the Executive's overarching power to prosecute and to control litigation are seen to be slim indeed when the *qui tam* provisions of the FCA are examined in the broad scheme of the American judicial system.

*Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 756 (5th Cir. 2001).

In other situations, the State may in its prosecutorial discretion permit the case to go forward without the State's participation by declining to intervene. Where the State declines to intervene, Defendants are incorrect to assert that the State "loses virtually all control over the litigation."[16] Rather, the TMFPA provides numerous mechanisms by which the State can continue to monitor and influence the litigation. For instance, the State is entitled to ongoing information about such cases.

---

*Polansky*, 599 U.S. at 425 ("If the Government, during that so-called seal period, elects to intervene, **the relator loses control** … though the relator can continue as a party in a secondary role.") (emphasis added).

[15] While the two statutes are not identical, many procedural aspects of the TMFPA mirror the FCA, as required by the Federal Deficit Reduction Act of 2005.

[16] Dkt. #534 at 14.

Tex. Hum. Res. Code § 36.104(b-1). Moreover, the State remains the "real party in interest" despite declining to take over the action, *Polansky*, 599 U.S. at 419, and the State may submit Statements of Interest and appear at hearings to advocate for its rights separate from the relator. Further, the State may intervene even after initially declining, which allows it to dismiss or to settle the action notwithstanding the objections of the relator.[17] The State may also elect to pursue its claims through an alternate remedy in another proceeding;[18] can stay the relator's ability to conduct certain discovery if it would interfere with other of the State's civil or criminal investigations;[19] and must consent to—and can veto—a proposed settlement.[20] For these reasons, Defendants are wrong to claim that the TMFPA impermissibly restricts the State's control over relator-initiated actions.

Third, the TMFPA does not impermissibly limit the State's ability to settle or dismiss a relator-initiated action over the relator's objections. Where the State has intervened and taken control of the action, it may dismiss the TMFPA action over the objections of the relator so long as the relator is provided notice and the

---

[17] Tex. Hum. Res. Code §§ 36.104(b-1); 36.107(b), (c).

[18] Tex. Hum. Res. Code § 36.109.

[19] Tex. Hum. Res. Code § 36.108.

[20] Tex. Hum. Res. Code § 36.102(e).

opportunity to be heard. Tex. Hum. Res. Code § 36.107(b). Courts examining the analogous FCA provision of 31 U.S.C. § 3730(c)(2)(A) afford the government significant deference in choosing to dismiss. *See*, *e.g.*, *Swift v. United States*, 318 F.3d 250, 253 (D.C. Cir. 2003) ("Nothing in § 3730(c)(2)(A) purports to deprive the Executive Branch of its historical prerogative to decide which cases should go forward in the name of the United States."); *Polansky*, 599 U.S. at 437 (noting that, in the context of a 3730(c)(2)(A) motion, the "Government's views are entitled to substantial deference."). Given this degree of deference, it is wrong to suggest that either the TMFPA or FCA impermissibly restricts the government's authority to conduct civil litigation of its choice.

Similarly, where the State has intervened, it may settle the TMFPA action notwithstanding the objections of the relator, "if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances." Tex. Hum. Res. Code § 36.107(c). Defendants highlight this requirement of court approval as evidence of the judiciary usurping the executive's exclusive function.[21] Defendants ignore, however, that it is well settled in criminal

---

[21] Dkt. #534 at 16.

law to require court approval of pleas and the dismissal of indictments. *See, e.g.,*

*Riley*, 252 F.3d at 756-57:

> [W]hen the Executive has made the decision to initiate the criminal case, its large discretion is narrowed considerably and the power to dispose of the case is shared in part with the Third Branch.
>
> For example, Rule 48(a) of the Federal Rules of Criminal Procedure clearly states that although the Executive has the power to indict an individual, it may not dismiss such an indictment without "leave of court." FED.R.CRIM.P. 48(a). Similarly, Rule 11 of the Federal Rules of Criminal Procedure requires court approval of plea bargains, a judicial check that functions in a manner similar to that of Rule 48. FED.R.CRIM.P. 11(a)(2).

Because court approval of criminal dismissals and settlement-analogues survive

constitutional muster, so too should the scheme enumerated in the TMFPA—which

in this instance closely mirrors the FCA.[22]

Finally, that the *Polansky* court recently determined that intervention is

required prior to the government dismissing or settling an action under the FCA does

not change the analysis. As discussed earlier, such a situation would necessarily only

occur where the government had already declined to exercise its prosecutorial

discretion to pursue the case and instead allowed the relator to proceed without the

---

[22] As further noted by the Fifth Circuit in *Riley*, "Any intrusion by the qui tam relator in the Executive's Article II power is comparatively modest, especially given the control mechanisms inherent in the FCA to mitigate such an intrusion and the civil context in which qui tam suits are pursued." *Riley*, 252 F.3d at 757.

State. In any event, Defendants cite no authority to suggest that the State needing to show mere "good cause"—a low bar[23]—to intervene after-the-fact prevents the State from carrying out its Executive functions. As well, federal courts analyzing the FCA have considered and rejected this position. *See*, *e.g.*, *United States v. SavaSeniorcare LLC*, No. 3:18-CV-01202, 2021 WL 1663579, at *10 (M.D. Tenn. Apr. 28, 2021) (declining to find that the FCA's "good cause" requirement to intervene implicates the separation of powers doctrine); *United States v. UCB, Inc.*, 970 F.3d 835, 848 (7th Cir. 2020) (same).

Nothing in the TMFPA "unequivocally supplants" the State's constitutional authority to bring and conduct civil litigation. Rather, the State agrees with the Texas Supreme Court that the TMFPA "is a powerful tool for targeting fraud against the Texas Medicaid program and securing the program's integrity," which "imbues the attorney general with broad investigative and enforcement authority." *In re Xerox*, 555 S.W.3d at 525. Defendants' Motion should be denied.

## IV. CONCLUSION

The Texas Supreme Court has determined that it is within the Legislature's authority to create *qui tam* statutes such as the TMFPA. *See Brown*, 156 S.W.3d 560.

---

[23] *See United States v. UCB, Inc.*, 970 F.3d 835, 846 (7th Cir. 2020) (describing "good cause" as "a uniquely flexible and capacious concept.").

Furthermore, as a duly enacted statute, the TMFPA is entitled to a presumption of constitutionality. Defendants fail to meet the heavy burden required to overcome this presumption. The Court should deny Defendants' Motion for Judgment on the Pleadings.

Dated:  October 11, 2023                    Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General for Civil Litigation


*/s/ William D. Wassdorf*
**WILLIAM D. WASSDORF**
Assistant Attorney General
General Litigation Division
Texas Bar No. 24103022

Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 / Fax (512) 320-0667
Will.Wassdorf@oag.texas.gov

**COUNSEL FOR THE STATE OF TEXAS**

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2023, a true and correct copy of the foregoing document was served on the following persons via electronic mail:

Yolanda Y. Campbell
Trial Attorney
Civil Division, Fraud Section
U.S. Department of Justice
Yolanda.y.campbell@usdoj.gov

Scott Hogan
Civil Chief
United States Attorney's Office
Northern District of Texas
Scott.Hogan@usdoj.gov

Nicholas J. Diez
Assistant Attorney General
Medicaid Fraud Control Unit
Office of Attorney General Jeff Landry
Attorney General of Louisiana
DiezN@ag.louisiana.gov

Andrew B. Stephens
Heather Gebelin Hacker
Hacker Stephens, LLP
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
Counsel for Relator
Andrew@HackerStephens.com
Heather@HackerStephens.com

**ATTORNEYS FOR PLANNED PARENTHOOD:**

Christopher M. Odell
SBN 24037205
Arnold & Porter Kaye Scholer LLP

700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Christopher.Odell@arnoldporter.com

Craig D. Margolis*
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave, NW
Washington, DC 2001-3743
Craig.Margolis@arnoldporter.com

Tirzah Lollar*
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave, NW
Washington, DC 2001-3743
Tirzah.Lollar@arnoldporter.com

Murad Hussain*
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave, NW
Washington, DC 2001-3743
murad.hussain@arnoldporter.com

Ryan Patrick Brown
Blackburn & Brown LLP
1222 S. Fillmore St.
Amarillo, TX 79101
Brown@BlackburnBrownlaw.com

*/s/ William D. Wassdorf*
**WILLIAM D. WASSDORF**