# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

| | |
|---|---|
| United States of America<br>*ex rel.* Alex Doe, Relator,<br><br>The State of Texas<br>*ex rel.* Alex Doe, Relator,<br><br>The State of Louisiana<br>*ex rel.* Alex Doe, Realtor<br><br>     *Plaintiffs*,<br>v.<br><br>Planned Parenthood Federation of America,<br>Inc.,<br>Planned Parenthood Gulf Coast, Inc.,<br>Planned Parenthood of Greater Texas, Inc.,<br>Planned Parenthood of South Texas, Inc.,<br>Planned Parenthood of Cameron County, Inc.,<br>Planned Parenthood San Antonio, Inc.,<br><br>     *Defendants*. | No. 2:21-cv-00022-Z |

## BRIEF OF THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS IN SUPPORT OF MOTION TO INTERVENE AND UNSEAL SUMMARY JUDGMENT ORDER

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

I.    INTRODUCTION ................................................................................................. 1

II.    NATURE AND STAGE OF THE PROCEEDING ............................................... 2

III.    FACTUAL BACKGROUND ................................................................................ 3

IV.    ARGUMENT ....................................................................................................... 4

    A.    The Reporters Committee has standing to intervene and should be granted leave to intervene under Rule 24(b) and Rule 24(a) ............................................................. 4

    B.    Movant and the public are entitled to inspect the Summary Judgment Order under the common law and First Amendment. .......................................................................... 6

        1.    The Summary Judgment Order must be unsealed under the common law right of access to judicial records. ....................................................................... 7

        2.    The Summary Judgment Order must be unsealed under the First Amendment right of access to judicial records. ...................................................................... 9

    C.    The Court should unseal the Summary Judgment Order. ............................................. 11

        1.    Concerns about possible jury pool taint or harm to the parties and their employees do not justify the wholesale sealing of the Summary Judgment Order. ........................... 12

        2.    The Court's justification for sealing the Summary Judgment Order was not sufficiently specific. ....................................................................................... 13

        3.    The Court failed to perform a line-by-line review of the Summary Judgment Order before sealing it. ........................................................................................ 14

    D.    Should this Court, after conducting the requisite line-by-line review, find compelling reasons necessitate the sealing of portions of the Summary Judgment Order, a redacted version should be made available to the public. ................................................... 15

V.    CONCLUSION AND PRAYER ........................................................................... 16

CERTIFICATE OF SERVICE ....................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

*Alliance for Hippocratic Med. v. U.S. Food & Drug Admin.*,
  No. 2:22-CV-223-Z, ECF No. 175 (N.D. Tex. Jan. 12, 2024) .................................................. 5

*Belo Broadcasting Corp. v. Clark*,
  654 F.2d 423 (5th Cir. 1981) ........................................................................................ 14

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*,
  814 F.3d 132 (2d Cir. 2016)............................................................................................. 4

*Binh Hoa Le v. Exeter Fin. Corp.*,
  990 F.3d 410 (5th Cir. 2021) ............................................................................... passim

*BP Expl. & Prod., Inc. v. Claimant ID 100246928*,
  920 F.3d 209 (5th Cir. 2019) .................................................................................. 6, 14

*Bradley ex rel. AJW v. Ackal*,
  954 F.3d 216 (5th Cir. 2020) ........................................................................... 2, 8, 9, 14

*Davis v. E. Baton Rouge Par. Sch. Bd.*,
  78 F.3d 920 (5th Cir. 1996) ............................................................................................. 4

*Doe v. Public Citizen*,
  749 F.3d 246 (4th Cir. 2014) ......................................................................................... 15

*Doe v. Stegall*,
  653 F.2d 180 (5th Cir. 1981) ........................................................................................... 2

*Eshelman v. True the Vote, Inc.*,
  No. 4:20-cv-04034, ECF No. 66 (S.D. Tex. Sept. 26, 2023)........................................... 4

*Flynt v. Lombardi*,
  782 F.3d 963 (8th Cir. 2015) ........................................................................................... 5

*Ford v. City of Huntsville*,
  242 F.3d 235 (5th Cir. 2001) ........................................................................................... 6

*Globe Newspaper Co. v. Superior Court*,
  457 U.S. 596 (1982)......................................................................................................... 6

*Hartford Courant Co. v. Pellegrino*,
  380 F.3d 83 (2d Cir. 2004)............................................................................................. 15

*Henry v. Municipality of Anchorage,*
  No. 3:15-CV-00187-RRB, 2018 WL 11417375 (D. Alaska Sept. 25, 2018) .......................... 12

*In re Associated Press,*
  No. 5:22-mc-00111, 2023 WL 5671289 (S.D. Tex. Sept. 1, 2023) ......................................... 15

*In re Estelle,*
  516 F.2d 480 (5th Cir. 1975) ..................................................................................................... 5

*In re Hearst Newspapers, L.L.C.,*
  641 F.3d 168 (5th Cir. 2011) ................................................................................................ 7, 10

*June Med. Servs., L.L.C. v. Phillips,*
  22 F.4th 512 (5th Cir. 2022) ............................................................................................. passim

*Lawson v. Louisiana Eye Ctr. of New Orleans,*
  No. CIV.A. 93-2687, 1997 WL 375752 (E.D. La. July 3, 1997) ............................................. 12

*Leopold v. United States,*
  964 F.3d 1121 (D.C. Cir. 2020) ................................................................................................ 4

*Newby v. Enron Corp.,*
  443 F.3d 416 (5th Cir. 2006) ................................................................................................. 4, 5

*Nixon v. Warner Commc'ns, Inc.,*
  435 U.S. 589 (1978) ................................................................................................................. 4, 6

*Press-Enter. Co. v. Superior Court of Cal. for Riverside Cnty.,*
  478 U.S. 1 (1986) ................................................................................................................... 7, 10

*Richmond Newspapers, Inc. v. Virginia,*
  448 U.S. 555 (1980) ................................................................................................................... 9

*San Jose Mercury News, Inc. v. U.S. Dist. Ct.—N. Dist. (San Jose),*
  187 F.3d 1096 (9th Cir. 1999) ............................................................................................ 4, 5, 6

*SEC v. Van Waeyenberghe,*
  990 F.2d 845 (5th Cir. 1993) ............................................................................................. passim

*Trans Tool, LLC v. All State Gear Inc.,*
  No. SA-19-CV-1304-JKP, 2022 WL 608945 (W.D. Tex. Mar. 1, 2022) ................................. 16

*Tri-Cnty. Wholesale Distribs., Inc. v. Wine Grp., Inc.,*
  565 F. App'x 477 (6th Cir. 2012) ............................................................................................ 15

*United States ex rel. Hernandez v. Team Fin., L.L.C.*,
  80 F.4th 571 (5th Cir. 2023) .................................................................. 5

*United States v. Ahsani*,
  76 F.4th 441 (5th Cir. 2023) .................................................................. 7

*United States v. Aldawsari*,
  683 F.3d 660 (5th Cir. 2012) ................................................................. 5

*United States v. Holy Land Found. For Relief & Dev.*,
  624 F.3d 685 (5th Cir. 2010) ........................................................ 4, 8, 10

*United States v. Sealed Search Warrants*,
  868 F.3d 385 (5th Cir. 2017) ...................................................... 7, 10, 11

*Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*,
  913 F.3d 443 (5th Cir. 2019) .......................................................... passim

## Other Authorities

@NateRaymond, X (TWITTER) (Oct. 24, 2023, 7:19 AM),
  https://twitter.com/nateraymond/status/1716791578860167631 ................................. 3

Brendan Pierson & Nate Raymond, *Planned Parenthood Must Face Trial Over Texas Medicaid Fraud Claims*, REUTERS (Oct. 23, 2023), https://www.reuters.com/legal/planned-parenthood-must-face-trial-over-texas-medicaid-fraud-claims-2023-10-24/ ........................................... 1, 3

Brendon Oliver, *Unveiling the Trial: Holding Planned Parenthood Accountable for Texas Medicaid Fraud Allegations*, VIGOUR TIMES (Oct. 24, 2023), https://vigourtimes.com/unveiling-the-trial-holding-planned-parenthood-accountable-for-texas-medicaid-fraud-allegations/ ................................................................. 1

Caroline Wharton, *Always Up to Something Shady: Planned Parenthood Faces $1.8 Billion Lawsuit from Texas Over Alleged Medicaid Fraud*, STUDENTS FOR LIFE OF AMERICA (Oct. 31, 2023), https://studentsforlife.org/2023/10/31/always-up-to-something-shady-planned-parenthood-faces-1-8-billion-lawsuit-from-texas-over-alleged-medicaid-fraud/ ...................... 2

Hon. Jennifer Walker Elrod, Hon. Don Willett, & Brian M. Miller, *Walking in the Light: On the Overuse of Sealing in Court Records*, THE ADVOCATE (Fall 2022) ........................................ 10

Lawrence Richard, *Planned Parenthood Must Face $1.8B Trial Over Medicaid Fraud Claims, Federal Judge Says*, FOX BUSINESS (Oct. 24, 2023), https://www.foxbusiness.com/healthcare/planned-parenthood-face-1-8-billion-trial-medicaid-fraud-claims-federal-judge-says ................................................................. 1

Marin Wolf, *After Hearing Arguments, Future of Planned Parenthood in Texas Rests with Federal Judge*, DALL. MORNING NEWS (Aug. 15, 2023), https://www.dallasnews.com/news/public-health/2023/08/15/after-hearing-arguments-future-of-planned-parenthood-in-texas-rests-with-federal-judge/ ....................................................... 2

**Rules**

Tex. R. Civ. P. 76a ................................................................................................................. 12

## I.      INTRODUCTION

The Reporters Committee for Freedom of the Press ("Reporters Committee" or "Movant") seeks leave to intervene for the limited purpose of seeking an order unsealing a judicial record of great public interest: the forty-seven-page order entered on October 23, 2023, ruling on the parties' Motions for Summary Judgment, Defendants' Motion for Judgment on the Pleadings, and other expedited motions filed by the parties ("Summary Judgment Order"). The Summary Judgment Order, wholly shielded from public view, is also not reflected on the public docket in this case. As a result, the Reporters Committee—like other members of the press and public—has been unable to inspect it.

Numerous media outlets in Texas and across the country have covered this $1.8 billion lawsuit brought under the federal False Claims Act by pseudonymous Relator "Alex Doe" ("Relator") against Planned Parenthood and its affiliates. *See, e.g.*, Brendan Pierson & Nate Raymond, *Planned Parenthood Must Face Trial Over Texas Medicaid Fraud Claims*, REUTERS (Oct. 23, 2023), https://www.reuters.com/legal/planned-parenthood-must-face-trial-over-texas-medicaid-fraud-claims-2023-10-24/; Brendon Oliver, *Unveiling the Trial: Holding Planned Parenthood Accountable for Texas Medicaid Fraud Allegations*, VIGOUR TIMES (Oct. 24, 2023), https://vigourtimes.com/unveiling-the-trial-holding-planned-parenthood-accountable-for-texas-medicaid-fraud-allegations/; Lawrence Richard, *Planned Parenthood Must Face $1.8B Trial Over Medicaid Fraud Claims, Federal Judge Says*, FOX BUSINESS (Oct. 24, 2023), https://www.foxbusiness.com/healthcare/planned-parenthood-face-1-8-billion-trial-medicaid-fraud-claims-federal-judge-says; Caroline Wharton, *Always Up to Something Shady: Planned Parenthood Faces $1.8 Billion Lawsuit from Texas Over Alleged Medicaid Fraud*, STUDENTS FOR LIFE OF AMERICA (Oct. 31, 2023), https://studentsforlife.org/2023/10/31/always-up-to-something-

shady-planned-parenthood-faces-1-8-billion-lawsuit-from-texas-over-alleged-medicaid-fraud/;

Marin Wolf, *After Hearing Arguments, Future of Planned Parenthood in Texas Rests with Federal Judge*, DALL. MORNING NEWS (Aug. 15, 2023), https://www.dallasnews.com/news/public-health/2023/08/15/after-hearing-arguments-future-of-planned-parenthood-in-texas-rests-with-federal-judge/. Particularly in light of the intense public interest in this lawsuit brought on behalf of government entities alleging the misuse of public funds, the Summary Judgment Order should be unsealed. Movant has standing and meets the requirements for permissive intervention and intervention as of right, and sealing violates Movant's (and the public's) common law and First Amendment rights of access to judicial records, and contravenes Fifth Circuit authority.[1]

## II.      NATURE AND STAGE OF THE PROCEEDING

Relator filed a complaint under seal on behalf of the United States of America ("United States"), the State of Texas, and the State of Louisiana (collectively "Plaintiffs"), against Defendants Planned Parenthood Federation of America, Inc. ("PPFA"), Planned Parenthood Gulf Coast, Inc., Planned Parenthood of Greater Texas, Inc., Planned Parenthood Cameron County, Inc., and Planned Parenthood San Antonio, Inc. (collectively "Defendants") on February 5, 2021, asserting claims under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("FCA"), and state analogues, and seeking recovery of Medicaid funds allegedly overpaid to some or all Defendants from "at least 2010…through 2020." Dkt. 2.

---

[1] Movant focuses primarily on the common law right of access because it entitles Movant to the relief sought and, thus, the Court need not reach the constitutional question. *See Bradley ex rel. AJW v. Ackal*, 954 F.3d 216, 224 (5th Cir. 2020). But Movant also has a First Amendment right of access to the records. *See Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981) (finding a plaintiff proceeding anonymously in a civil case implicates the First Amendment guarantee of "public scrutiny of judicial proceedings").

### III.    FACTUAL BACKGROUND

On June 16, 2023, PPFA and the remaining defendants filed separate Motions for Summary Judgment. Dkt. 465; Dkt. 470. That same day, the State of Texas also filed a Motion for Summary Judgment and Relator filed a Motion for Partial Summary Judgment. Dkt. 473; Dkt. 474. All the parties' summary judgment briefing is open to the public, except only a redacted version of Plaintiffs' Reply Brief is publicly available. Dkt. 526, at 2. On October 23, 2023, the Court ruled on the parties' cross-motions for summary judgment and other expedited motions filed by the parties; it denied summary judgment and judgment on the pleadings.[2] The Court's forty-seven-page Summary Judgment Order is not only sealed from public view, but also the docket entry for it is unavailable on the public docket.[3]

No publicly available pleading or order explains the reason for sealing or the removal from the docket of the Summary Judgment Order. According to a published news report about the matter, however, the Court embedded in the last paragraphs of the sealed Summary Judgment Order a brief explanation of its sealing decision.[4]

---

[2] *See* Brendan Pierson & Nate Raymond, *Planned Parenthood Must Face Trial Over Texas Medicaid Fraud Claims*, REUTERS (Oct. 23, 2023), https://www.reuters.com/legal/planned-parenthood-must-face-trial-over-texas-medicaid-fraud-claims-2023-10-24/.

[3] @NateRaymond, X (TWITTER) (Oct. 24, 2023, 7:19 AM), https://twitter.com/nateraymond/status/1716791578860167631.

[4] "[J]ustification is predicated either on this Court's motivation to prevent jury pool taint – and thereby serve the interests of justice – and/or to protect the identity and physical safety of the parties and their employees." *See id.*

## IV.    ARGUMENT

### A.  The Reporters Committee has standing to intervene and should be granted leave to intervene under Rule 24(b) and Rule 24(a).

It is well-established under common law that nonparties, particularly journalists and media organizations, have standing to intervene to seek public access to sealed court documents. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."); *Eshelman v. True the Vote, Inc.,* No. 4:20-cv-04034, ECF No. 66, at 2 (S.D. Tex. Sept. 26, 2023) (holding a news organization has "standing to intervene as a member of the public to argue improper sealing of judicial records"). The Fifth Circuit has long acknowledged this right, as have other federal courts of appeals around the country. *See Davis v. E. Baton Rouge Par. Sch. Bd.*, 78 F.3d 920, 926–27 (5th Cir. 1996) (nonparty news agencies had standing to challenge court's confidentiality order); *Leopold v. United States*, 964 F.3d 1121, 1123 (D.C. Cir. 2020); *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016); *San Jose Mercury News, Inc. v. U.S. Dist. Ct.—N. Dist.* (*San Jose*), 187 F.3d 1096, 1102 (9th Cir. 1999). Nonparties "routinely access" sealed documents "in a civil case through motions for permissive intervention" under Rule 24(b). *Newby v. Enron Corp.*, 443 F.3d 416, 424 (5th Cir. 2006) (citing cases).

The Reporters Committee seeks access to the Summary Judgment Order—access that it is currently being denied. Because it seeks to (and cannot) inspect that judicial record, the Reporters Committee has standing to intervene for the limited purpose of moving to unseal. *See Davis*, 78 F.3d at 926–27; *United States v. Holy Land Found. For Relief & Dev.*, 624 F.3d 685, 690 (5th Cir. 2010) (nonparty had standing to intervene to unseal records); *see also United States v. Aldawsari*,

683 F.3d 660, 664–65 (5th Cir. 2012) (nonparty journalist had standing to intervene to challenge gag order).

All three requirements under Rule 24(b) for permissive intervention are met. *See generally Alliance for Hippocratic Med. v. U.S. Food & Drug Admin.*, No. 2:22-CV-223-Z, ECF No. 175, at 12 (N.D. Tex. Jan. 12, 2024) (granting motion to intervene). *First*, this motion to intervene is timely. Courts consider the time it took for the movant to realize that the documents would be sealed. Here, movant has filed this motion promptly. *See United States ex rel. Hernandez v. Team Fin., L.L.C.,* 80 F.4th 571, 579 (5th Cir. 2023) (holding district court significantly erred in overstating delay in filing motion); *San Jose*, 187 F.3d at 1101 ("[D]elay measured in years have been tolerated where an intervenor is pressing the public's right of access to judicial records."); *see also Flynt v. Lombardi*, 782 F.3d 963, 967 n.2 (8th Cir. 2015) (motion to intervene for unsealing purposes was timely in a case dismissed a year earlier). Whether intervention is timely is largely dependent on the actions of the litigants. *United States ex rel. Hernandez*, 80 F.4th at 578. Here, the docket reflects no filings or motions to unseal since the entry of the Summary Judgment Order. *Id.* at 579. *Second*, this motion satisfies Rule 24's "claim-or-defense" requirement, which is "construed liberally" for unsealing motions, *Newby*, 443 F.3d at 422–23 (citing *In re Estelle*, 516 F.2d 480, 485 (5th Cir. 1975)), because Movant seeks adjudication of whether the court properly sealed court documents from public view. *Third*, this motion does not unduly delay or prejudice any existing party's rights because Movant "do[es] not seek to disturb" the underlying resolution (or the scheduling) of this matter. *See id.* at *4. Rather, Movant is asserting its own right and the right of the broader public to access a ruling of this Court, and its underlying reasoning—a right that no existing party to this action has, to date, adequately asserted.

Moreover, in light of the Court's stay and administrative closure of the case pending one party's appeal, intervention for this limited purpose will not delay resolution of this case.

The Reporters Committee is also entitled to intervene as of right. "[A] news agency has a legal interest in challenging a confidentiality order" that satisfies Rule 24(a)'s need for "an interest relating to the property or transaction that is the subject of the underlying action." *Ford v. City of Huntsville,* 242 F.3d 235, 240 (5th Cir. 2001). That interest in transparency is not "adequately protected by the parties." *San Jose Mercury News,* 187 F.3d at 1101; *see also BP Expl. & Prod., Inc. v. Claimant ID 100246928,* 920 F.3d 209, 211 (5th Cir. 2019) ("Most litigants have no incentive to protect the public's right of access.")  Further, as explained above, intervention is timely.

Through either lens, because a "representative of the press and general public must be given an opportunity to be heard on the question of their exclusion" when access to records is at stake, *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 609 n.25 (1982) (citation and internal quotation marks omitted), the Reporters Committee's motion to intervene should be granted.

### B. Movant and the public are entitled to inspect the Summary Judgment Order under the common law and First Amendment.

Press and public access to judicial records "serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness." *SEC v. Van Waeyenberghe*, 990 F.2d 845, 849 (5th Cir. 1993). For these reasons, the public has the right to inspect and copy judicial records under both common law and the First Amendment. *Id.* at 848 (common law right) (citing *Nixon*, 435 U.S. at 597 (recognizing right to inspect and copy public records and documents, including judicial records and documents)).

Under the common law, the press and the public have a presumptive right to "inspect and copy judicial records." *Van Waeyenberghe*, 990 F.2d at 848. The Fifth Circuit has repeatedly noted that the inquiry into whether that right is overcome is "case-by-case": courts must balance the public's right of access against other competing interests. *See United States v. Sealed Search Warrants*, 868 F.3d 385, 395–96 (5th Cir. 2017).

To date, the Fifth Circuit has not applied the First Amendment's right of access to records outside the criminal context, but has held the constitutional right applies to many criminal proceedings and to some judicial records related to those proceedings. *United States v. Ahsani*, 76 F.4th 441, 451 (5th Cir. 2023) *(*citing *In re Hearst Newspapers, L.L.C.*, 641 F.3d 168, 176 (5th Cir. 2011) (noting that numerous other circuits have so extended the right)). Where applicable, the right is stronger under the First Amendment than is the right at common law.  *See Ahsani*, 76 F.4th at 452 ("The public's right to access documents under the First Amendment is narrower in scope but stronger in force."). The First Amendment presumption may be overcome "only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enter. Co. v. Superior Court of Cal. for Riverside Cnty.*, 478 U.S. 1, 9 (1986) (discussing access to court proceedings).

1. **The Summary Judgment Order must be unsealed under the common law right of access to judicial records.**

Under common law, courts must make detailed, clear, and specific findings when sealing a record to which there is a presumptive right of access. *See Sealed Search Warrants*, 868 F.3d at 397. Although each "court has supervisory power" over its own records, and may deny access "where court files might have become a vehicle for improper purposes," the discretion to seal judicial records and files should be exercised "charily." *Van Waeyenberghe*, 990 F.2d at 848. A court must at the very least "generally articulate its reasons to support sealing the [documents]

with a level of detail that will allow for [appellate] review." *Id.*; *see also Holy Land Found.*, 624 F.3d at 690. The degree of specificity required is case-specific. *Sealed Search Warrants*, 868 F.3d at 397. But the court's analysis must be "document-by-document" and "line-by-line." *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 521 (5th Cir. 2022) (quoting *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 419 (5th Cir. 2021)).

Here, the Court did not engage in a "line-by-line" analysis supporting its *sua sponte* decision to seal the Summary Judgment Order. *See June Med.*, 22 F.4th at 521; *Le*, 990 F.3d at 419. Rather, according to news reports, the Court provided only a terse explanation to justify sealing the lengthy Summary Judgment Order in the order itself.

Moreover, although a court must carefully balance the public's common law right of access against any countervailing interests, *Bradley*, 954 F.3d at 225, 227–28, "the working presumption is that judicial records should not be sealed." *Le*, 990 F.3d at 419.[5] And this presumption of access is insurmountable where, as here, most of the information on which the sealed record is based is public. *June Med.*, 22 F.4th at 520–21 (aligning with "the Supreme Court and our sister circuits" to find that "[p]ublicly available information cannot be sealed") (citing cases). "The secrecy of judicial records . . . must be justified and weighed against the presumption of openness that can be rebutted only by *compelling* countervailing interests favoring nondisclosure." *Le*, 990 F.3d at 421 (emphasis added).

Here, the Summary Judgment Order must be unsealed under the common law because the balancing of interests weighs overwhelmingly in favor of disclosure. *See Van Waeyenberghe*, 990

---

[5] The Summary Judgment Order and the docket entry for it are unquestionably "judicial records" for unsealing purposes. "Once a document is filed on the public record it becomes a 'judicial record.'" *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 451 (5th Cir. 2019). That the docket entry for the Summary Judgment Order was deleted does not change the analysis.

F.2d at 848. First, most of the information underlying the Summary Judgment Order is already public through the released transcript of the August 15, 2023 summary judgment hearing and the parties' publicly available briefs. *See* Dkt. 527; *June Med.*, 22 F.4th at 520–21. Second, even though the presumption of access is already "insurmountable" because much of the information contained in the Summary Judgment Order is public, the balancing test also mandates disclosure because there are no "compelling countervailing interests favoring nondisclosure." *See* Dkt. 527; *June Med.*, 22 F.4th at 520–21; *see also Bradley*, 954 F.3d at 225; *Le*, 990 F.3d at 421.

Here, speculative and factually unsupported concerns about tainting the jury pool or party safety are precisely the type of concerns that would be present in many cases and yet there is no tradition of sealing a dispositive order as a means of preventing either jury taint or other generalized harm. *Cf. Elbertson v. Chevron, U.S.A., Inc.*, No. H-10-0153, 2010 WL 4642963, at *2 (S.D. Tex. Nov. 9, 2010) (potential risk to job security and future employment does not outweigh public's right of access, particularly when "there is no tradition of sealing all such records"). In this case of intense public interest, the public deserves to know the Court's reasoning, and the Court should welcome the opportunity to explain its reasoning. For these reasons, the presumptive right of access to judicial records under the common law is not overcome, and the Summary Judgment Order should be unsealed.

## 2. The Summary Judgment Order must be unsealed under the First Amendment right of access to judicial records.

The First Amendment presumption also applies to the Court's dispositive Summary Judgment Order. The right of the press and public to access judicial records and proceedings is a "fundamental element of the rule of law." *June Med.*, 22 F.4th at 519; *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980) (recognizing "[p]eople in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited

from observing"). Furthermore, the public's right to monitor the exercise of judicial power is an essential feature of a functioning democracy and a right guaranteed by the First Amendment and common law. *See Le*, 990 F.3d at 418; *see also Holy Land Found.*, 624 F.3d at 690 (recognizing the right to public access "serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness"); Hon. Jennifer Walker Elrod, Hon. Don Willett, & Brian M. Miller, *Walking in the Light: On the Overuse of Sealing in Court Records*, THE ADVOCATE, at 27 (Fall 2022) ("[W]here much of the record is under seal, the public has almost no way to monitor the behavior of the parties to the case.").

The First Amendment presumption of access may be overcome "only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enter. Co.*, 478 U.S. at 9. As under the common law right, the inquiry is "case-by case," and any asserted interest in sealing must be "articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *See id.*; *Hearst*, 641 F.3d at 181. As under the common law right, a court must meet certain basic obligations in sealing or unsealing records. Namely, it must (1) "identify and apply the proper legal standard," and (2) "provide sufficient reasons for its decision to enable appellate review." *Vantage Health Plan*, 913 F.3d at 450–51 (citing *Sealed Search Warrants*, 868 F.3d at 396–98; *Van Waeyenberghe*, 990 F.2d at 848–49).

Here, the Court did not identify or apply the proper legal standard in sealing the Summary Judgment Order and failed to provide sufficient reasons for its decision to seal. *See Vantage Health Plan*, 913 F.3d at 450–51. The Court sealed the Summary Judgment Order *sua sponte*, rather than on the motion of any party, and did not provide notice or hearing to the parties or to the public.

Furthermore, according to public reports, the Court provided only a short explanation for sealing in the Summary Judgment Order itself, citing concerns about jury pool taint and protecting the identity and physical safety of the parties and their employees.[6] For the reasons above, this explanation is not adequate, much less compelling enough to outweigh the public's presumptive right of access to this judicial record under the First Amendment.  For these reasons, the right of access to judicial records under the more stringent standard required under the First Amendment is also not overcome, and the Summary Judgment Order should be unsealed.

### C.  The Court should unseal the Summary Judgment Order.

Under Fifth Circuit precedent, a party moving for sealing must "articulate a specific harm that would be caused by the disclosure of the documents." *See Vantage Health Plan*, 913 F.3d at 451 (affirming unsealing where party offered deficient motion to seal); *June Med.*, 22 F.4th at 521 (vacating district court's deficient sealing order). Any sealing order must be supported by specific factual findings. *See Sealed Search Warrants*, 868 F.3d at 397. Here, the Court's brief explanation for sealing—itself contained in the sealed Summary Judgment Order—falls short on three fronts. First, the generalized and speculative harms the Court identified, which are unsupported by any specific factual findings, do not justify the wholesale sealing of the Summary Judgment Order. Second, the Court's articulation of those harms lacks the necessary specificity to enable appellate

---

[6] *See supra* notes 2–4.

review. Third, the Court failed to conduct the requisite line-by-line review of the Summary Judgment Order before sealing it. [7]

### 1. Concerns about possible jury pool taint or harm to the parties and their employees do not justify the wholesale sealing of the Summary Judgment Order.

In sealing the Summary Judgment Order in its entirety, the Court did not cite any evidence or make any factual findings that would support its conclusion that public access to the order would risk tainting the potential jury pool or could jeopardize the physical safety of the parties and their employees. An order sealing judicial records cannot be based on speculative reasoning unsupported by facts. *See Vantage Health Plan*, 913 F.3d at 451; *June Med.*, 22 F.4th at 521.

Further, any risk of jury prejudice can be addressed through voir dire. Other federal district courts that have addressed this issue have held that concerns about possibly tainting the jury pool are an insufficient justification for sealing judicial records. *See, e.g.*, *Henry v. Municipality of Anchorage,* No. 3:15-CV-00187-RRB, 2018 WL 11417375, at *3 (D. Alaska Sept. 25, 2018) (rejecting the argument that there was a risk of tainting the jury pool because potential jurors will not be aware of mere access to a judicial record and more importantly, potential jurors who are allegedly "tainted before the trial even begins will be identified during jury selection and excused."); *Lawson v. Louisiana Eye Ctr. of New Orleans*, No. CIV.A. 93-2687, 1997 WL 375752, at *1 (E.D. La. July 3, 1997) (preservation of integrity of jury pool not a sufficient concern to

---

[7] The Court's sealing procedures were also constitutionally deficient. Here, the Court *sua sponte* sealed the Summary Judgment Order. But proper sealing procedures ensure that the public and the parties to the case have notice of and an opportunity to object to sealing or closure, as well as access to the written reasoning underlying any sealing order. The Texas Rules of Civil Procedure capture the required process well. The party moving to seal must file a motion that is open to public inspection, the court must then conduct a hearing on the motion that is open to the public, and the court's subsequent order on the motion must be public and must state the specific reasons for deciding whether to seal or not. Tex. R. Civ. P. 76a(3), (4), (6).

overcome the public's common law right of access to a record that had been public for nearly four years).

### 2. The Court's justification for sealing the Summary Judgment Order was not sufficiently specific.

Under Fifth Circuit precedent applying common law, the Court may not seal judicial records without specific, nonspeculative reasons for doing so. Indeed, with respect to any judicial record, "the working presumption is that [they] should not be sealed." *Le*, 990 F.3d at 419. Though that presumption applies to any stage of a judicial proceeding, it applies with particular force to adjudicative materials. As the Fifth Circuit explained in *Le*, the sealing of materials that supported summary judgment was "disquieting" because the resolution of the parties' substantive rights depended, at least in part, on records which the public could not access. *Id.* at 420. Consequently, the Fifth Circuit requires courts considering whether to seal an adjudicative record to weigh the need for secrecy "against the presumption of openness that can be rebutted only by compelling countervailing interests favoring nondisclosure." *Id.* at 421. Among the necessary considerations are the "public and private interests" at play, the availability of "less drastic alternatives," and whether "the extent of sealing was congruent to the need." *Id.* at 420. *See also Vantage Health Plan*, 913 F.3d at 451 (a court's "failure to provide sufficient reasons" to "enable appellate review" is an abuse of discretion).

The Summary Judgment Order failed to meet this well-established, and "far more arduous" burden. *Le*, 990 F.3d at 420. Instead, in a single sentence within the sealed Summary Judgment Order itself the Court stated its decision to seal was "predicated either on this Court's motivation to prevent jury pool taint – and thereby serve the interests of justice – and/or to protect the identity and physical safety of the parties and their employees, given the unique and delicate subject matter

at hand." Dkt. 554 at 47. The Summary Judgment Order did not contain sufficient detail to permit

appellate review. *See Le*, 990 F.3d at 419; *Vantage Health Plan*, 913 F.3d at 451.

### 3. The Court failed to perform a line-by-line review of the Summary Judgment Order before sealing it.

To properly seal records, the court must evaluate each sealing request and "undertake a

'document-by document,' 'line-by-line' balancing of 'the public's common law right of access

against the interests favoring nondisclosure.'" *June Med.*, 22 F.4th at 521 (cleaned up). "Judges,

not litigants" are responsible for this detailed review because "[m]ost litigants have no incentive

to protect the public's right of access." *BP Expl. & Prod.*, 920 F.3d at 211. "The 'relevant facts

and circumstances of the particular case' inform the factors that a court weighs on both sides."

*Bradley*, 954 F.3d at 225 (quoting *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 430 (5th Cir.

1981)).

The Court's decision to seal the Summary Judgment Order failed to satisfy this

requirement. The Summary Judgment Order does not reflect the requisite line-by-line evaluation

required under Fifth Circuit law. *June Med.*, 22 F.4th at 521. Had the Court balanced the public's

right of access against the generalized, speculative interests it identified in support of

nondisclosure, no portion of the Summary Judgment Order would have been sealed—let alone all

of it.

Sealing of the Summary Judgment Order stands in notable contrast to the Court's treatment

of other public filings in this case. On August 4, 2023, the Court entered an order granting Relator's

motions to unseal summary judgment memoranda and appendices. Dkt. 517. After Relator filed

the papers in the public domain, the Court had directed the Clerk's Office to provisionally seal

those documents. Dkt. 522. However, on August 11, 2023, the Court then clarified its prior orders

by entering a new order directing the Clerk's office to unseal Plaintiffs' summary judgment

briefing in its entirety, except for Plaintiffs' Reply Brief. Dkt. 526. As for the use of the remaining

sealed documents in court proceedings, the Court held that Plaintiffs' counsel could use those

during the summary judgment hearing, including by discussing the documents, quoting from them,

and displaying them in the courtroom. Dkt. 526. Then, importantly, the entire transcript of the

summary judgment hearing was released to the public on November 15, 2023. Dkt. 527. Therefore,

the underlying facts and substance of the sealed Summary Judgment Order are based on other

publicly filed records and transcripts. Consequently, even if this Court were to assume that there

is possible risk to either the integrity of the potential jury or the safety of parties and their

employees, the bulk of the arguments and facts underlying the Summary Judgment Order have

already been made public. Any concerns regarding these alleged risks are even more speculative

and attenuated.

Given these deficiencies, the Summary Judgment Order should never have been sealed,

and it should be unsealed now. Furthermore, the docket entry pertaining to the Summary Judgment

Order should be made available to the public.[8]

> **D. Should this Court, after conducting the requisite line-by-line review, find compelling reasons necessitate the sealing of portions of the Summary Judgment Order, a redacted version should be made available to the public.**

The Court did not narrowly tailor its sealing; it sealed the entire forty-seven-page Summary

Judgment Order. Sealing cannot be "perpetual" or "wholesale" and the discretion to seal judicial

---

[8] *See In re Associated Press*, No. 5:22-mc-00111, 2023 WL 5671289, at *10–11 (S.D. Tex. Sept. 1, 2023) (ordering docket sheet to be unsealed); *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 96 (2d Cir. 2004) ("We therefore hold that docket sheets enjoy a presumption of openness and that the public and the media possess a qualified First Amendment right to inspect them."); *Co. Doe v. Public Citizen*, 749 F.3d 246, 268 (4th Cir. 2014) ("[T]he public and press's First Amendment qualified right of access to civil proceedings extends to docket sheets."); *Tri-Cnty. Wholesale Distribs., Inc. v. Wine Grp., Inc.*, 565 F. App'x 477, 490 (6th Cir. 2012) (Gwin, J., concurring in part) ("The First Amendment access right extends to court dockets.").

records should be exercised "charily." *See Le*, 990 F.3d at 420 n.40 (discussing Seventh Circuit's rejection of sealing orders that are perpetual and wholesale); *Van Waeyenberghe*, 990 F.2d at 848. Courts must consider "less drastic alternatives" to complete sealing, such as redaction. *See Le*, 990 F.3d at 420. But even employing less drastic alternatives requires a compelling, countervailing interest and a "document-by-document and line-by-line" analysis. *Vantage Health Plan*, 913 F.3d at 451–52.

Redaction rather than wholesale sealing is the preferred means of protecting any specific, supported interests that outweigh the public's right of access. *Trans Tool, LLC v. All State Gear Inc.*, No. SA-19-CV-1304-JKP, 2022 WL 608945, at *9 (W.D. Tex. Mar. 1, 2022). This is reflected in the Court's August 4, 2023 order granting Relator's Motions to Unseal, which recognizes that judicial records are presumptively public, while simultaneously ordering the redaction of personal cell phone and non-party contact information. Dkt. 517.

## V.   CONCLUSION AND PRAYER

For these reasons, the Court should grant Movant leave to intervene, should unseal the Summary Judgment Order, and should reinstate the accompanying docket entry on the public docket. Movant prays for all other and further relief to which it is justly entitled.

Dated: May 8, 2024

Respectfully submitted,

/s/ Thomas S. Leatherbury
Thomas S. Leatherbury
Texas Bar No. 12095275
THOMAS S. LEATHERBURY LAW, PLLC
Cumberland Hill School Building
1901 N. Akard St.
Dallas, Texas 75201
Telephone: (214) 213-5004
tom@tsleatherburylaw.com

Peter B. Steffensen
Texas Bar No. 24106464
SMU DEDMAN SCHOOL OF LAW
FIRST AMENDMENT CLINIC[9]
P.O. Box 750116
Dallas, Texas 75275
Telephone: (214) 768-4077
Fax: (214) 768-1611
psteffensen@smu.edu

**Attorneys for Movant-Intervenor**
**The Reporters Committee for**
**Freedom of The Press**

---

[9] Counsel thank SMU Dedman School of Law 3L students Sean Griffith, Cam Ruk, and Emma Creedon for their assistance with this brief.

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2024, a true and correct copy of this document properly was served on all counsel of record via electronic filing in accordance with the USDC, Northern District of Texas Procedures for Electronic Filing.

/s/ Thomas S. Leatherbury
Thomas S. Leatherbury